**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

## DEBTORS' MOTION FOR
## ENTRY OF INTERIM AND
## FINAL ORDERS (I) AUTHORIZING
## THE DEBTORS TO (A) CONTINUE USE OF
## EXISTING BUSINESS FORMS AND RECORDS,
## (B) MAINTAIN EXISTING CORPORATE BANK
## ACCOUNTS AND CASH MANAGEMENT SYSTEM, (C) PAY
## PREPETITION BANK FEES ASSOCIATED WITH THE CASH
## MANAGEMENT SYSTEM, AND (D) CONTINUE PERFORMANCE OF
## INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY
BALANCES, AND (III) WAIVING CERTAIN U.S. TRUSTEE REQUIREMENTS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):

### Relief Requested

1.      The Debtors seek entry of orders, substantially in the forms attached hereto as

**Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing,

but not directing, the Debtors to (i) continue using their existing business forms and records in the

ordinary course of business, (ii) maintain the Bank Accounts (as defined below) and operate their

Cash Management System (as defined below), (iii) pay prepetition Bank Fees (as defined below)

associated with the Cash Management System, and (iv) continue performing Intercompany

Transactions (as defined below) consistent with historical practices; (b) granting superpriority

administrative expense status to postpetition intercompany balances; (c) granting interim and final

waivers of the Debtors' compliance with the deposit and investment guidelines set forth in section

345(b) of the Bankruptcy Code; and (d) scheduling a final hearing 21 days after commencement

of these Chapter 11 Cases to consider entry of an order approving the relief requested herein on a

final basis.[2]

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of

Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the
*Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day
Declaration").

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are sections 105, 345, 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5.    On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the First Day Declaration, filed substantially contemporaneously herewith and incorporated by reference herein.

6.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

## The Cash Management System

**I.      Overview**.

7.      The Debtors provide credit services to markets with limited access to financial products, and since entering the market in 2017, have served as a leading digital asset retail and institutional lender.  In the ordinary course of business, the Debtors maintain a complex cash and digital asset management system (the "Cash Management System") to manage the cash and digital assets on their platform.  The Cash Management System is critical to the Debtors' business, as it streamlines the Debtors' ability to collect, transfer, and disburse cash and digital assets generated from their operations and to facilitate cash and digital asset monitoring, forecasting, and reporting. While this Motion provides an overview of the Cash Management System, as of November 10, 2022, all trading and lending activities were halted, and the corresponding information is provided in the event that activity is restored.

8.      As of the Petition Date, the Cash Management System is comprised of forty-three bank accounts at Debtor and non-Debtor entities (each a "Bank Account" and, collectively, the "Bank Accounts").[3]  The Cash Management System is summarized in the diagram attached as Exhibit 1 to both **Exhibit A** and **Exhibit B** attached hereto.  The Bank Accounts are maintained at the following banks (each a "Cash Management Bank" and, together, the "Cash Management Banks"):  Signature Bank (six Bank Accounts); BCB Bank (four Bank Accounts); Capital Union Bank (one Bank Account); Silicon Valley Bank ("Silicon Valley") (six Bank Accounts); and Silvergate Bank ("Silvergate") (twenty-six Bank Accounts).  A table listing all the Bank Accounts is attached as Exhibit 2 to both **Exhibit A** and **Exhibit B** attached hereto.

---

[3]     There are four non-Debtor Bank Accounts in the Cash Management System, three of which are dormant.

9.      As discussed herein, the Cash Management System is a critical component of the Debtors' business.  Any interruption of the Cash Management System would have an immediate and material adverse effect on the Debtors' operations, resulting in harm to the Debtors' estates and creditors.  Accordingly, the Debtors seek authority to continue using their existing Cash Management System in the ordinary course of business on a postpetition basis in a manner consistent with past practice, and to pay any prepetition fees related to the Cash Management System.

**II.      The Debtors' Bank Accounts and Flow of Funds**.

10.      The Cash Management System consists of a complex system designed to facilitate transactions across the operation and administrative sectors of the business.

**A.      Operational Accounts**.

11.      Through the Debtors' web and mobile applications, the Debtors provide (a) retail customers and institutional investors with the ability to borrow cash or digital assets and (b) retail customers and institutional investors with the ability to buy and sell digital assets and stable coins using a BlockFi interest account ("BIA") (for international customers only),[4] BlockFi Wallet,[5] or directly from a linked bank account.  The Debtors are also able to deploy BIAs, BlockFi Private Clients ("BPC") accounts, and other types of individually negotiated borrowings for revenue generating activities.

---

[4]    As of February 14, 2022, BlockFi Lending LLC ceased offering new BIAs to U.S. persons and ceased permitting U.S. persons from adding assets to their BIAs that were in existence as of February 14, 2022.  On April 14, 2022, outstanding BIAs of U.S. persons held at BlockFi Lending LLC were exchanged for identical BIAs held at BlockFi Inc.

[5]    Digital assets transferred to a BlockFi Wallet account are not deployed by the Debtors for revenue generating activities.  However, digital assets transferred through BIA or BPC are used for revenue generating activities in the digital asset markets, which consists primarily of activities relating to lending to the Debtors' retail and institutional clients and facilitating digital asset trading on behalf of the Debtors' retail and institutional clients.

1.      **Trading Accounts**.

12.      Debtors BlockFi Trading LLC and BlockFi International Limited collectively maintain five active Bank Accounts that are used to facilitate trading activity through the Debtors' mobile application (the "<u>BlockFi App</u>" and the Bank Accounts, the "<u>Trading Accounts</u>").  The Debtors also maintain three ACH related trading accounts including (a) one ACH chargeback reserve account at Silvergate (the "<u>ACH Chargeback Reserve Account</u>"), (b) one ACH deposit receipt account at Silvergate (the "<u>ACH Deposit Account</u>"), and (c) one ACH withdrawal account at Silvergate (the "<u>ACH Withdrawal Account</u>", together with the ACH Chargeback Reserve Account and the ACH Deposit Account, the "<u>ACH Accounts</u>") to facilitate the deposits and withdrawal of funds in connection with the Debtors' trading activity, and to protect against ACH chargebacks.

13.      When a customer initiates a transaction through the BlockFi App, it can elect to either trade using existing digital assets, either by transferring existing digital assets to the BlockFi Wallet or using existing digital assets in the BlockFi Wallet, or initiate a trade by depositing cash to the BlockFi App.  Further, international customers may elect to trade through funds held in an existing BIA account.  If cash is transferred to fund a trade, the customer is immediately credited stablecoin in exchange for such cash, and the cash is deposited in BlockFi Trading LLC's proprietary account at Silvergate.  Then, the stablecoin may be converted to other digital assets, as designated by the customer when initiating the transaction, and in either case is transferred to a custodian account of BlockFi Trading LLC (either internal or third-party).  If the customer chose to trade on the Debtors' platform using existing digital assets, those digital assets are transferred to a custodian account of BlockFi Trading LLC (either internal or third-party) and then transferred to a custodian account of BlockFi Wallet LLC, if a U.S. transaction, or BlockFi International Ltd, if an international transaction.

6

14.    When retail customers buy, sell, or trade digital assets on the BlockFi App, the Debtors earn a profit from the variable trading spread, which is imbedded in the price quote a customer sees when buying or selling an asset.  The Debtors may also earn a spread on institutional trades and the spread may vary based on several factors including, but not limited to, the particular digital assets traded, the size of the order, and the client relationship.  The spreads may change from time to time based on market conditions and may vary across different digital assets.  Once the internal risk threshold is met for a trade book, the Debtors hedge the non-USD portion of the trade either through Coinbase or a similar exchange or through internally held assets.



**2.      Lending Accounts.**

**(1)      Retail Lending.**

15.    Debtors BlockFi Lending LLC and BlockFi International Ltd. collectively maintain four Bank Accounts that are used to facilitate access to U.S. dollar and stablecoin loans secured by digital asset collateral (the "<u>Lending Accounts</u>").  When a retail customer executes a loan agreement, the loan is first reviewed and verified by the Debtors' internal lending team.  Once approved, digital assets designated as collateral are transferred from a BIA or external wallet to BlockFi Wallet, or existing digital assets in a customer's BlockFi Wallet are pledged as collateral.

All retail loans are secured by digital asset collateral.  For retail customers borrowing cash from the Debtors, once the collateral securing such cash loan is locked, cash is wired from a BlockFi Lending LLC account held at Silicon Valley (the "Retail Loan Account" and the retail loans, the "Retail Loans").  If, instead of cash, a retail customer chooses to receive loan proceeds in the form of stablecoin, the stablecoin is transferred to the retail customer's wallet.  For cash loans, the Debtors maintain a detailed ledger tracking the amount of cash requested by retail borrowers in the aggregate for reconciliation purposes.

16.    Retail Loans issued by the Debtors typically mature in one year, subject to the retail customer's option to prepay without penalty.  Interest on these loans is generally payable on a monthly basis, with the principal due at maturity.[6]  The interest rates are determined based on the level of overcollateralization and the type of digital asset collateral.  Given the volatility in digital asset markets, the collateral provided by the Debtors' customers is subject to margin calls.  If the value of a digital asset decreases significantly, such that the loan to value ratio is above a specified threshold, the Debtors will make a margin call to the customer.  If the customer does not meet the margin call, the Debtors may liquidate a portion of the collateral and reduce the amount of the outstanding loan.  If the loan to value ratio increases to an accelerated threshold at any time, the Debtors are authorized, without providing the customer notice, to liquidate the collateral to reduce the amount of the outstanding loan.  Conversely, if collateral values increase, the Debtors may allow borrowers, upon request, to remove excess collateral.  When a retail customer repays its retail loan in cash, the amount of such payment is deposited into the Retail Loan Account, if international, or to a third-party service provider, such as Scratch, if domestic.  If a retail customer

---

[6]    International loans may be structured as "bullet loans" in which the principal and interest are due at the end of the loan term.

repays its retail loan in stablecoin, the stablecoin is transferred to a BlockFi Wallet and then to the Retail Loan Account.



### (2)   Institutional Lending.

17.     The Debtors also enable institutional clients such as hedge funds, market makers, proprietary trading firms, and corporations to obtain financing from the Debtors in the form of digital assets or fiat currency (the "Institutional Loans").   The terms and conditions of the Institutional Loans are included in master digital currency loan agreements and term sheets that set forth the detailed terms of any specific transaction (the "Master Digital Currency Loan Agreements").   The Debtors require some, but not all, of its institutional clients to post collateral before receiving any loan proceeds.   Whether institutional borrowers post collateral and, if so, the type and level of collateral required, depends on the borrower's credit profile and the size and composition of the loan portfolio.   Interest on Institutional Loans is typically fixed and payable in kind (monthly in arrears), and the average term is less than one year.   Institutional clients that are required to post collateral, transfer (using a unique electronic code for the client as provided by the Debtors) their collateral to an "institutional vault," specifically named for the institutional

client, which is managed using a third-party, Fireblocks Ltd. ("Fireblocks") workspace. The collateral is then available for redeployment for the Debtors' revenue generating activities. This system provides the Debtors with a simple way to account for the amount of collateral that enters onto its platform and to attribute which institutional client transferred such collateral. Institutional clients are also able to open a BlockFi Wallet account or to earn interest by transferring assets to BIAs, BPC accounts, or other individually negotiated borrowing arrangements.



### 3.    BlockFi Wallet.

18.    Each customer that opens an account with the Debtors is provided a BlockFi Wallet, a non-interest-bearing account to store supported digital assets. Once a customer creates an account with the Debtors, the customer must either: (a) transfer digital assets from their own external digital asset wallet to their BlockFi Wallet; or (b) use fiat currency to purchase digital assets to be deposited in their BlockFi Wallet. Once a customer funds a BlockFi Wallet, the customer may then elect to use other products and services provided by the Debtors. The BlockFi Wallet allows the customer to use the Debtors' products and services such as (i) opening interest earning accounts (for international customers only); (ii) trading digital assets through the Debtors' platform, (iii) receiving U.S. dollar and stablecoin loans secured by digital assets; and

(iv) receiving digital asset rewards through the BlockFi Rewards Visa Card. Digital assets transferred to a BlockFi Wallet are not deployed by the Debtors for revenue generating activities and, pursuant to the BlockFi Wallet terms of service, title to the digital assets in the BlockFi Wallet remains with the customer.

### B.    Administrative Accounts.

19.    Debtor BlockFi Inc. also maintains two accounts with Silicon Valley, including a checking account (the "BlockFi Checking Account") and one account at Silvergate, and Debtor BlockFi Services Inc. maintains one account at Silvergate to fund the Debtors' payroll and pay other operating expenses. Any amount over $1 million held in the BlockFi Checking Account is automatically swept to a BlockFi Inc. account held with Silicon Valley (the "SVB Cash Sweep Account"). The Debtors also remit other administrative expenses, such as payment of benefit plan obligations and office leases from the BlockFi Checking Account. Amounts are also transferred from the BlockFi Checking Account to BlockFi Services, Inc.'s Bank Account to remit payment funds for contractor expenses. Funds are also remitted in local currency from the BlockFi Checking Account to non-Debtor BlockFi Asia PTE Ltd. for payroll related to two employees in Asia.



20.    As of the Petition Date, the Debtors have approximately $260 million in unrestricted cash on hand.[7]  The Bank Accounts and Cash Management System are described further in the following table:

| Type of Account | Account Description |
|---|---|
| **Trading Accounts**<br><br>BlockFi Trading LLC<br>(-8523, -8531, -7937, -0586, -2277) | The Debtors maintain five Bank Accounts at Silvergate to facilitate trading of digital assets through the Debtors' platform.  These include a wire withdrawal account, a wire deposit account, a consolidation account, a custodial account, and a checking account. |
| **Lending Accounts**<br><br>BlockFi Lending LLC<br>(-4091, -5383, -1447)<br>BlockFi International Ltd (-4552) | The Debtors maintain two Bank Accounts at Silvergate and two Bank Accounts at Signature Bank to facilitate lending through the Debtors' platform. |
| **Retail Loan Account**<br><br>BlockFi Lending LLC (-8628) | The Retail Loan Account is used to (a) wire money to a customer's bank account once the collateral securing such cash loan is locked and (b) receive funds from international customers' once the interest on a loan is paid and principal is returned. |
| **Administrative Accounts**<br><br>BlockFi Inc. (-0719, -7263, -4183)<br>BlockFi Services, Inc. (-2201) | The Administrative Accounts for BlockFi Inc. fund the office lease payments, payroll-related disbursements, and all other employee compensation and benefits costs and expenses.  The BlockFi Services, Inc. account funds contractor payroll. |
| **BlockFi Asia Account**<br><br>BlockFi Asia PTE Ltd. (-0291) | Non-Debtor BlockFi Asia PTE Ltd. maintains one account for payroll related to two employees in Asia and such funds are remitted in local foreign currency. |
| **ACH Accounts**<br><br>BlockFi Trading LLC<br>(-4712, -4704, -6799) | The ACH Accounts encompass the ACH Chargeback Reserve Account which holds $10 million in reserve in the event of any chargebacks, the ACH Deposit Account to receive ACH funds through the retail trading process, and the ACH Withdrawal Account to return ACH funds to customers. |
| **SEN / SigNet Accounts**<br><br>BlockFi Inc. (-4191)<br>BlockFi Trading LLC (-7945, -8549)<br>BlockFi International Ltd (-0776, -4578)<br>BlockFi Lending LLC (-4109, -3eb4) | These Bank Accounts transfer cash to Silvergate's Exchange Network ("SEN") accounts (the "SEN Accounts") and to Signature Bank's SigNet platform (the "SigNet Account").  The SigNet and SEN Accounts are used to settle the purchase and sale of digital assets with market-makers, and are also occasionally used to settle loan principal and collateral with institutional lending clients. |
| **Collateral Accounts**<br><br>BlockFi Inc. (-2610, -3354, -7779) | The Debtors hold three Collateral Accounts.  The first account serves as collateral for the Debtors' office lease.  The second account serves as collateral for Ankura Trust Company, LLC, as trustee, for the benefit of the holders of BYs.  The third account serves as collateral on account of an agreement with non-Debtor BV Power Alpha LLC and its joint venture counterparty against certain power payables associated with mining of digital assets. |
| **Dormant Accounts**<br><br>BlockFi Cayman LLC (-9256, -9264)<br>BlockFi Lending LLC (-4768, -0230) | The dormant accounts are inactive. |

---

[7]    This amount is not inclusive of (a) the approximately $26 million that Debtor BlockFi International Ltd. has in cash holdings at a third-party custodian or (b) the $10 million in restricted cash in the ACH Chargeback Reserve Account.

| BlockFi Lending II LLC (-2705) BlockFi International Ltd (-4560, -4586, -8926, -9744, -9752, -2063, -2059, -2551, -2555) BlockFi Management LLC (-8615) | |

## III.   Intercompany Transactions.

### A.   Overview.

21.     The Debtors also engage in intercompany financial transactions with one another (the "Intercompany Transactions").   The Intercompany Transactions result in intercompany receivables and payables.   In the ordinary course of business, the Debtors make Intercompany Transactions to (a) reimburse certain Debtors for various expenditures associated with their business; (b) fund certain Debtors' accounts in anticipation of such expenditures as needed; or (c) facilitate trading and lending activity.[8]

### B.   Importance of the Intercompany Transactions.

22.     The Debtors' ability to engage in Intercompany Transactions is essential to the smooth and uninterrupted operation of the Debtors' business.   The Intercompany Transactions are crucial for the Debtors to facilitate the trading and lending process, process payroll,[9] pay vendors, and to otherwise operate their business.   The Debtors would be unduly burdened both financially and logistically if they were required to halt or otherwise modify the Intercompany Transactions at this time.   These third parties are accustomed to benefitting from the existing Cash Management System, which funnels payments on account of all Debtors through the various Bank Accounts.

---

[8]   As noted above, as of November 10, 2022, all trading and lending activities have been halted.   Accordingly, the Debtors are not seeking authority to continue Intercompany Transactions relating to lending and trading, but these Intercompany Transactions are included for completeness.

[9]   While the vast majority of employees are those of Debtor entities, non-Debtor BlockFi Asia PTE Ltd. has two employees that are paid through a transfer of payroll amounts from BlockFi Services Inc.'s Administrative Account to non-Debtor BlockFi Asia PTE Ltd.

Hasty changes to this established system likely would disrupt the Debtors' ability to timely and properly process receivables and payables and allocate them to the appropriate legal entity.

23.     Moreover, the Intercompany Transactions are comparable to those of other companies with similarly complex corporate structures and operate in a fashion typical of other digital asset exchange companies. Importantly, all Intercompany Transactions can be, and will be, tracked on a postpetition basis, and fully subject to monthly reviews by the Debtors. Any discrepancies can, and will be, addressed consistent with past practice.

**IV.     Corporate Cards**.

24.     As part of the Cash Management System, the Debtors have provided approximately 35 employees with corporate credit cards (the "Corporate Cards") issued by Airbase Inc. ("Airbase" and the credit cards, the "Airbase Cards") and Brex Inc. ("Brex", and the credit cards, the "Brex Cards"). The Airbase Cards are used to cover expenses at the Debtors' headquarter office such as team meals and refreshments and legitimate business expenses, including certain travel expenses, incurred in the ordinary course of business in connection with their employment. The Brex Cards are generally used to pay for certain vendor payments in the ordinary course of business. Historically, the Debtors have accrued and paid between $10,000 and $75,000 per month on account of the Airbase Cards and approximately $20,000 per month on account of the Brex Cards. Because the Airbase Cards are prepaid, there are no amounts outstanding, but there is approximately $10,000 outstanding related to the Brex Cards as of the Petition Date. The costs incurred through use of the Corporate Cards are billed directly to the Debtors and do not pass through the applicable employee's personal financial account. The Corporate Card payments are paid on a monthly basis.

25.     The Corporate Cards are an integral part of the Debtors' cash management and account functions.  The ability of the Debtors to use the Corporate Cards on a go-forward basis is essential to the continued operation of the Debtors' business.  Continuing the Corporate Cards program will allow relevant employees to have assurance that they will be able to purchase certain business expenses without having to pay for such expenses from their personal accounts and seek reimbursement from the Debtors.  Accordingly, the Debtors' inability to maintain the Corporate Cards would result in unnecessary hardship on the continued operation of the Debtors' business.  Out an abundance of caution, the Debtors seek authorization to continue honoring obligations in relation to the Corporate Cards on a postpetition basis in the ordinary course of business.

**V.     BlockFi Rewards Visa**.

26.     In 2021, the Debtors launched the world's first Bitcoin rewards credit card (the "BlockFi Rewards Visa") allowing eligible U.S. clients to earn rewards in Bitcoin or other digital assets for every qualifying purchase on the card.  The BlockFi Rewards Visa is issued by Evolve Bank & Trust ("Evolve"), which is FDIC insured, while Deserve, Inc. ("Deserve") handles the underwriting, issuance, and processing of the BlockFi Rewards Visa, which is collateralized by an account, which is not part of the Cash Management System, that holds approximately $4.8 million as of the Petition Date.  The Debtors administer the BlockFi Credit Card Rewards Program (the "Rewards Program"), which allows certain eligible U.S. clients to earn points that are then redeemed for digital asset rewards.  On November 16, 2022, Visa sent the Debtors a letter purporting to terminate the parties' relationship.  The Debtors have reserved all rights, but the BlockFi Rewards Visa is no longer active.

## VI.    Bank Fees.

27.    In the ordinary course of business, the Debtors incur periodic service charges and other fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees").  As of the Petition Date, the Debtors estimate that approximately $50,000 in prepetition amounts remain outstanding on account of Bank Fees, which the Debtors request authority to pay.  Moreover, to maintain the integrity of their Cash Management System, the Debtors request authority to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition and to continue to pay the Bank Fees in the ordinary course of business on a postpetition basis.

## VII.    Business Forms and Books and Records.

28.    As part of their Cash Management System, the Debtors use various preprinted business forms (the "Business Forms") in the ordinary course.  To minimize expenses to their estates and to avoid confusion during the pendency of these Chapter 11 Cases, the Debtors seek a waiver of the requirement that they open a new set of books and records as of the Petition Date. Opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay.  By virtue of the nature and scope of the business in which the Debtors are engaged and the numerous other parties with whom they deal, the Debtors need to use their existing business forms without alteration or change.  Printing new business forms would take an undue amount of time and expense.  Fulfillment of the requirement would likely delay the payment of postpetition claims and negatively affect operations and the value of these estates.  The Debtors submit that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtor in Possession," and with respect to any Business Forms that exist or

are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor in Possession."  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to use their existing business forms and to maintain their existing business records.

### Basis for Relief

**I.**    **Maintaining the Existing Cash Management System Is Essential to Maximizing the Value of the Debtors' Estates**.

29.    The U.S. Trustee has established its *Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtor in Possession and Chapter 11 Trustees* (the "Guidelines") in order to supervise the administration of chapter 11 cases.  The Guidelines require debtors-in-possession to, among other things: (a) close all existing bank accounts and open new accounts, including an operating account, a tax account, a payroll account, and, if required by the Court, a cash collateral account, (b) obtain checks for all debtor-in-possession accounts that have the designation "debtor-in-possession," and the bankruptcy case number, (c) close their books and records as of the petition date and to open new books and records, and (d) maintain their bank accounts with a depository bank approved by the U.S. Trustee.  The U.S. Trustee designed these requirements to provide, among other things, a clear demarcation between prepetition and postpetition transactions and operations, which would, in theory, prevent the inadvertent postpetition payment of a prepetition claim.  As explained in further detail below, the Debtors seek a waiver of certain of these requirements in this Motion.

30.    Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Courts have long recognized that the power granted by section 105(a) was expressly meant to be exercised to effectuate the rehabilitation of the debtor.

17

*See, e.g.*, *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (citing H.R. Rep.
No. 595, 95th Cong., 1st Sess. 16 (1977)).  The relief requested in this Motion is critical to the
Debtors' successful reorganization and is justified under section 105(a) of the Bankruptcy Code.

31.     Extensive authority supports the relief sought in this Motion.  In other chapter 11
cases, courts have recognized that strict enforcement of the Guidelines does not always serve the
purposes of chapter 11.  Accordingly, courts have often waived such requirements and replaced
them with alternative procedures.  *See, e.g.*, *In re Modell's Sporting Goods, Inc.*, Case No. 20-
14179 (VFP) (Bankr. D.N.J. June 24, 2020); *In re New England Motor Freight, Inc.*, Case No. 19-
12809 (Bankr. D.N.J. Feb. 13, 2019); *In re Aceto Corporation*, Case No. 19-13448 (Bankr. D.N.J.
Feb. 21, 2019); *In re Icon Eyewear, Inc.*, Case No. 18-34902 (Bankr. D.N.J. Dec. 21, 2018); *In re
Mountain Creek Resort, Inc.*, Case No. 17-19899 (Bankr. D.N.J. May 17, 2017); *In re Cinram
Group, Inc.*, Case No. 17-15258 (Bankr. D.N.J. Mar. 24, 2017); *In re SMMC Liquidation Corp.
(f/k/a Saint Michael's Medical Center)*, Case No. 15-24999 (Bankr. D.N.J. Aug. 12, 2015); *In re
Kid Brands, Inc.*, Case No. 14-22582 (Bankr. D.N.J. June 20, 2014); *In re RIH Acquisitions NJ,
LLC*, Case No. 13-34483 (Bankr. D.N.J. Nov. 8, 2013).

32.     Additionally, section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-
possession to "use property of the estate in the ordinary course of business without notice or a
hearing."  11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to
provide a debtor-in-possession with the flexibility to engage in the ordinary course transactions
required to operate its business without unneeded oversight by its creditors or the Court.  *In re
Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *Med. Malpractice Ins. Ass'n v. Hirsch (In re
Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Git-N-Go, Inc.*, 322 B.R. 164, 171 (Bankr. N.D.
Okla. 2004); *In re Enron Corp.,* No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y.

Mar. 21, 2003); *In re Atlanta Retail, Inc.,* 287 B.R. 849, 856 (Bankr. N.D. Ga. 2002); *Chaney v.*
*Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207
B.R. 406, 409 (S.D.N.Y. 1997).    Included within the purview of section 363(c)(1) of the
Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a
debtor's cash management system.   *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura*
*Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

33.    Bankruptcy courts routinely treat requests for authority to continue utilizing
existing cash management systems as a relatively "simple matter."   *See In re Baldwin-United*
*Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).   Additionally, courts have noted that an
integrated cash management system "allows efficient utilization of cash resources and recognizes
the impracticalities of maintaining separate cash accounts for the many different purposes that
require cash."   *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in*
*part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).   As a result, courts have concluded that the
requirement to maintain all accounts separately "would be a huge administrative burden and
economically inefficient."   *Id*. at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th
Cir. 1995) (noting that maintaining an existing cash management system allows debtors "to
administer more efficiently and effectively its financial operations and assets").

34.    Here, the Debtors respectfully request that the Court allow them to continue
operating each of the Bank Accounts identified on Exhibit 2 annexed to **Exhibit A** and **Exhibit B**
attached hereto.  The Bank Accounts will be maintained in the ordinary course as they were before
the Petition Date and are necessary to conduct the Debtors' routine postpetition transactions.  As
noted in the cases above, maintaining the Cash Management System and Bank Accounts allows

efficient utilization of the Debtors' cash resources and will enable the Debtors' businesses to continue operating.

## II.    Maintaining the Existing Cash Management System Will Not Harm Parties-in-Interest.

35.    The Debtors' continued use of their Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations.  The Debtors respectfully submit that parties-in-interest will not be harmed by the Debtors' maintenance of their existing Cash Management System, including maintenance of the Bank Accounts and continuance of the Intercompany Transactions, because the Debtors have developed and implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' accounting department.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

## III.    Authorizing the Debtors to Continue Using Debit, Wire, and ACH Transfers Is Warranted.

36.    The Debtors request that the Court grant further relief from the Guidelines to the extent they require the Debtors to make all disbursements by check.  The Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  The Debtors conduct a large number of transactions on a daily basis through ACH transfers and other similar methods, generally as those methods of payment are preferred by the recipients of those funds.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtors' day-

20

to-day activities may be unnecessarily disrupted, and the estates will incur additional costs. Therefore, the Debtors submit that authorizing the continuation of using debit, wire, and ACH transfers is warranted.

**IV.     Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course is Warranted**.

37.     The Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts, without interruption and in the ordinary course.  In this regard, the Debtors request that the Cash Management Banks be authorized to (a) receive, process, honor, and pay any and all checks, ACH transfers, and other instructions and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; and (b) accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.

38.     The Debtors also request that to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, such Cash Management Bank will not be deemed to be liable to the Debtors or to the estates on account of such prepetition check or other item honored postpetition.  This is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court

order or otherwise.  The Debtors also request that the Court authorize the Debtors to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition.

39.    The relief requested herein is consistent with relief regularly granted by Courts in this and other districts.  *See, e.g.*, *In re Aceto Corporation*, Case No. 19-13448 (VFP) (Bankr. D.N.J. Feb. 19, 2019); *In re Frank Theatres Bayonne/South Cove, LLC*, Case No. 18-34808 (Bankr. D.N.J. Dec. 21, 2018); *In re B. Lane, d/b/a re Fashion to Figure,* Case No. 17-32958 (Bankr. D. N.J. Nov. 14, 2017); *In re Mountain Creek Resort, Inc.,* Case No. 17-19899 (Bankr. D. N.J. June 5, 2017); *In re Cinram Group, Inc.*, Case No. 17-15258 (Bankr. D. N.J. Mar. 24, 2017); *In re Cubic Energy, Inc.*, No 15-12500 (CSS) (Bankr. D. Del. Jan. 12, 2016); *In re Offshore Group Investment Ltd.*, Case No. 15-12422 (BLS) (Bankr. D. Del. Jan. 5, 2016); *In re Hercules Offshore, Inc.*, Case No. 15-11685 (BLS) (Bankr. D. Del. Sept. 8, 2015).

**V.    The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**.

40.    To avoid disruption of the Cash Management System and the incurrence of unnecessary expense, the Debtors request that they be authorized to continue to use their existing Business Forms (including, without limitation, letterhead, checks, and other Business Forms) substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that parties-in-interest will not be prejudiced if they are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date.  Such parties will undoubtedly be aware of the Debtors' status as debtors in possession and, thus, changing Business Forms is unnecessary and would be unduly burdensome.  The Debtors further submit that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtors in Possession."  With respect to any Business Forms that exist or are generated electronically, the

Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtors in Possession."

**VI.     The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Superpriority Administrative Expense Status to Postpetition Intercompany Balances Among the Debtors**.

41.     The Debtors' funds move through the Cash Management System as described above.  At any given time, there may be intercompany balances owing among Debtor entities. Intercompany Transactions are made between and among Debtors in the ordinary course as part of the Cash Management System.[10]  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.  The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.

42.     If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls could be disrupted to the Debtors' and the estates' detriment.  In addition, a number of critical services, including centralized management services and cash management services, currently provided to Debtor entities on an intercompany basis would be interrupted.  Since these transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.

43.     To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request, pursuant to section 503(b)(1) of the

---

[10]   Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like it, the Debtors submit that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors seek express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

Bankruptcy Code, that all postpetition transfers and payments from a Debtor to another Debtor on account of an Intercompany Transaction be accorded superpriority administrative expense status. This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

**VII.    Cause Exists for Waiving the U.S. Trustee Guidelines Regarding Authorized Depositories on an Interim and Final Basis**.

44.     Although the Debtors believe that their cash management practices comply with section 345(b) of the Bankruptcy Code, to the extent that that the requirements of section 345(b) of the Bankruptcy Code are inconsistent, or otherwise conflict, with (a) the cash management practices under the Cash Management System or (b) any action taken by the Debtors in accordance with an order of this Court, the Debtors seek a waiver of the requirements of section 345(b) of the Bankruptcy Code to allow the Debtors to continue their existing cash management practices.  The Debtors will not place cash in accounts that are not insured by the FDIC.

45.     Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise."  Additionally, under the Guidelines, debtors in possession must, among other things,

close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more approved depositories.

46.    Courts may waive compliance with section 345 of the Bankruptcy Code and the Guidelines for "cause."  In evaluating whether "cause" exists, courts have considered a number of factors such as:

1.    the sophistication of the debtor's business;

2.    the size of the debtor's business operations;

3.    the amount of the investments involved;

4.    the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

5.    the complexity of the case;

6.    the safeguards in place within the debtor's own business for ensuring the safety of the fund;

7.    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

8.    the benefit to the debtor;

9.    the harm, if any, to the debtor;

10.    the harm, if any, to the estate; and

11.    the reasonableness of the debtors' request for relief from section 345(b) of the Bankruptcy Code requirements in light of the overall circumstances of the case.

See In re Serv. Merch. Co., Inc., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

47.    Because the Bank Accounts are vital to the Cash Management System, requiring the Debtors to transfer funds to other banks would be unduly burdensome to the Debtors' operations and potentially cause severe tax consequences to the detriment of the Debtors' estates. In addition, the Bank Accounts are maintained at well-capitalized, highly-rated FDIC-insured banks.  Further, two of the Cash Management Banks, Silicon Valley and Signature, where the

Debtors maintain 12 of their Bank Accounts and the vast majority of their cash—are authorized depositories under the U.S. Trustee Guidelines. Silvergate, while not an authorized depository, is the leading depository for the digital currency industry, is FDIC-insured, and is part of the publicly traded Silvergate Capital Corp. The Debtors believe that the Bank Accounts provide protections that are comparable to those contemplated by section 345 of the Bankruptcy Code. Therefore, the Debtors submit that cause exists to waive the Guidelines and allow the Debtors to continue to maintain the Bank Accounts in the ordinary course of business.

48.     Moreover, due to the significant amounts of money that may be in the Bank Accounts from time to time, it would take a large amount of time for the Debtors to locate and determine, where necessary, appropriate alternative accounts that satisfy section 345(b) of the Bankruptcy Code. Requiring the Debtors to further change their deposits and other procedures could result in harm to the Debtors, their estates, and creditors because such change would further disrupt the Cash Management System. Conversely, the Debtors' estates and creditors will not be harmed by the Debtors' maintenance of the status quo as modified by the relief requested herein because of the relatively safe and prudent practices already utilized by the Debtors.

49.     The Debtors do not believe that their crypto assets are subject to section 345 of the Bankruptcy Code. The Bankruptcy Code does not define "money," and, to date, no court or federal agency has concluded that cryptocurrency is money. The Debtors rely on custodians such as Gemini Trust Company LLC and Coinbase Custody Trust Company, LLC, and software solution providers that specialize in non-custodial storage of digital assets, such as Fireblocks and BitGo, in the ordinary course of business to secure their digital assets. These third-party custodians are leaders in the industry with respect to holding digital assets in a safe and secure manner. Requiring the Debtors to transfer their digital assets to a bank (if even possible) and/or collateralize their

digital asset holdings would be prohibitively expensive (if possible at all) and would be destructive to the Debtors and their estates.

### VIII. Cause Exists for Waiving the U.S. Trustee Guidelines Regarding Payroll and Tax Trust Accounts.

50.    The Debtors also seeks a waiver of the Guidelines insofar as they require the establishment of specific debtor-in-possession accounts for payroll.  The Debtors believe that their payroll obligations may be more efficiently met through their existing Cash Management System and their existing Bank Accounts, and that requiring the establishment of a new payroll account would be unnecessary and disruptive to their business.

51.    In addition, the Debtors seek a waiver of the Guidelines insofar as they require debtors to establish specific debtor-in-possession accounts for tax payments and to deposit in such tax accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtors' payroll.  The Debtors believe that they can pay their tax obligations most efficiently from the existing Bank Accounts in accordance with their existing practices, and that the U.S.  Trustee can adequately monitor the flow of funds into, between, and out of the Bank Accounts.  The creation of new accounts designed solely for tax obligations would be unnecessary and inefficient.  With the current system, the Debtors are current on their payroll tax obligations.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

52.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the

Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Request of Waiver of Stay

53.    To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

54.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

55.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or

28

otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **No Prior Request**

56.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## **Notice**

57.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; (g) the Cash Management Banks; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 28, 2022

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

30

**Exhibit A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

|  |  |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |
|  | **Hearing Date and Time:** |

## INTERIM ORDER (I) AUTHORIZING
## THE DEBTORS TO (A) CONTINUE USE OF
## EXISTING BUSINESS FORMS AND RECORDS,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**(B) MAINTAIN EXISTING CORPORATE BANK
ACCOUNTS AND CASH MANAGEMENT SYSTEM, (C) PAY
PREPETITION BANK FEES ASSOCIATED WITH THE CASH
MANAGEMENT SYSTEM, AND (D) CONTINUE PERFORMANCE OF
INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY
BALANCES, AND (III) WAIVING CERTAIN U.S. TRUSTEE REQUIREMENTS**

The relief set forth on the following pages, numbered three (3) through ten (11), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to (i) continue use of existing business forms and records, (ii) maintain existing corporate bank accounts and cash management system, (iii) pay prepetition bank fees associated with the cash management system, and (iv) continue performance of intercompany transactions, (b) granting superpriority administrative expense status to postpetition intercompany balances, (c) waiving certain U.S. Trustee Requirements, and (d) scheduling a final hearing to consider approval of the Motion on a final basis; all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estate, its creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT:**

1.    The Motion is **GRANTED** on an interim basis as set forth herein.

2.    The Final Hearing on the Motion will be held on _____, 2022 at _____ **(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____, **2022 at 4:00 p.m. (Eastern Time)**.  Any objection shall set forth in writing and with particularity the factual and legal basis of the objection.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

(Page | 5)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

3.        The Debtors are hereby authorized, on an interim basis and until the Final Hearing, to (b) use the Cash Management System, and (b) maintain and continue using the Bank Accounts with the same account numbers, in existence on the Petition Date, including, without limitation, those accounts identified on the exhibits to this Interim Order.

4.        The Debtors shall maintain records of all transfers within the Cash Management System, so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained prior to the commencement of the Chapter 11 Cases.

5.        The Debtors are authorized, but not directed, to (a) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, automated clearinghouse transfers, drafts, electronic fund transfers, or other items presented, issued or drawn on the Bank Accounts, (b) pay and/or reimburse the Cash Management Banks in the ordinary course of business for any claims arising prepetition or postpetition including ordinary-course bank fees, checks deposited which have been dishonored or returned for insufficient funds, and any reimbursement or other payment obligations such as overdrafts arising in connection with the Bank Accounts, (c) perform their obligations under the documents and agreements governing the Bank Accounts, and (d) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors-in-possession.

(Page | 6)

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

6.     Each of the Cash Management Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtor's accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors are responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System.

7.     The Cash Management Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

8.     Each of the Cash Management Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Cash

(Page | 7)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

Management Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

9.      In the course of providing cash management services to the Debtors, any Cash Management Bank, without further order of this Court, is authorized to (a) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Cash Management Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or after the Petition Date, in the ordinary course of business during the pendency of these Chapter 11 Cases.

10.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; provided that in the event the Debtors open a new bank account they shall open one at an authorized depository and shall timely indicate the opening of such account on the Debtors' monthly operating report and shall provide advance notice of the opening of any new bank accounts or closing of any Bank Account to the U.S. Trustee.

11.      The Debtors are authorized to continue using the Corporate Cards and to pay in the ordinary course of business any amounts owing prepetition or postpetition on account of the Corporate Cards.

(Page | 8)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

12.     The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; provided that once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-Possession"; provided, further, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

13.     To the extent that the Guidelines otherwise conflict with any action taken by the Debtors in accordance with this Interim Order or any other order entered in the Debtors' Chapter 11 Cases, such Guidelines are waived.

14.     Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; provided that each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices; and (b) beginning on the Petition Date, maintain (i) current records of intercompany balances; (ii) a Debtor by Debtor summary on a monthly basis of any postpetition

(Page | 9)

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month); and (iii) reasonable access to the Debtors' advisors with respect to such records.

15.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

16.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

(Page | 10)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

17.     All postpetition transfers and payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under section 503(b) of the Bankruptcy Code.

18.     Section 345 of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines requiring that the Bank Accounts be U.S. Trustee authorized depositories is waived with respect to the Bank Accounts existing as of the Petition Date.

19.     As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Cash Management Banks.

20.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

21.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to D.N.J. LBR 9013-5(f) within two (2) business days after the entry of this Interim Order.

22.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

24.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective

(Page | 11)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Interim Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

and enforceable immediately upon entry hereof.

25.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit 1**

**Diagram of the Cash Management System**



## **Exhibit 2**

### **Table of the Debtors' Bank Accounts**

| Name | Debtor / Non-Debtor | Bank | Account Number | Country | Balance at Petition Date |
|---|---|---|---|---|---|
| BlockFi Asia | Non-Debtor | FOMOpay | -0291 | Singapore | $9,800.00 |
| BlockFi Cayman LLC (Inactive) | Non-Debtor | Silvergate | -9256 | United States | $0.00 |
| BlockFi Cayman LLC (Inactive) | Non-Debtor | Silvergate | -9264 | United States | $0.00 |
| BlockFi Inc | Debtor | Silvergate | -4183 | United States | $0.00 |
| BlockFi Inc | Debtor | Silvergate | -4191 | United States | $0.00 |
| BlockFi Inc | Debtor | Silicon Valley | -0719 | United States | $1,000,000.00 |
| BlockFi Inc | Debtor | Silicon Valley | -2610 | United States | $330,022.00 |
| BlockFi Inc | Debtor | Silicon Valley | -3354 | United States | $750,000.00 |
| BlockFi Inc | Debtor | Silicon Valley | -7779 | United States | $4,000,000.00 |
| BlockFi Inc | Debtor | Silicon Valley | -7263 | United States | $254,056,136.00 |
| BlockFi International Ltd (Inactive) | Debtor | Signature | -9744 | United States | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | Signature | -9752 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -0586 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -0776 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -4552 | United States | $5,458.00 |
| BlockFi International Ltd (Inactive) | Debtor | Silvergate | -4560 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -4578 | United States | $1,500,000.00 |
| BlockFi International Ltd (Inactive) | Debtor | Silvergate | -4586 | United States | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | Silvergate | -8926 | United States | $0.00 |
| BlockFi Lending II LLC (Inactive) | Debtor | Silvergate | -2705 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Signature | -5383 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Signature | -1447 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Signature | -3eb4 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Silvergate | -4091 | United States | $508,508.00 |
| BlockFi Lending LLC | Debtor | Silvergate | -4109 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Silvergate | -4768 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Silicon Valley | -8628 | United States | $102.00 |

| BlockFi Lending LLC | Debtor | CUB | -0230 | United States | $0.00 |
|---|---|---|---|---|---|
| BlockFi Services, Inc | Debtor | Silvergate | -2201 | United States | $54,301.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -8523 | United States | $14,488.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -8531 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -2277 | United States | $11,973.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -4704 | United States | $289,144.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -4712 | United States | $10,000,000.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -6799 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -8549 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -7937 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -7945 | United States | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2063 | United Kingdom | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2059 | United Kingdom | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2551 | United Kingdom | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2555 | United Kingdom | $0.00 |
| BlockFi Management (Inactive) | Non-Debtor | Signature | -8615 | United States | $0.00 |

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

|  |  |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |
|  | **Hearing Date and Time:** |

### FINAL ORDER (I) AUTHORIZING
### THE DEBTORS TO (A) CONTINUE USE OF
### EXISTING BUSINESS FORMS AND RECORDS,

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**(B) MAINTAIN EXISTING CORPORATE BANK
ACCOUNTS AND CASH MANAGEMENT SYSTEM, (C) PAY
PREPETITION BANK FEES ASSOCIATED WITH THE CASH
MANAGEMENT SYSTEM, AND (D) CONTINUE PERFORMANCE OF
INTERCOMPANY TRANSACTIONS, (II) GRANTING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY
BALANCES, AND (III) WAIVING CERTAIN U.S. TRUSTEE REQUIREMENTS**

The relief set forth on the following pages, numbered three (3) through and including ten

(10), is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* (the "Motion" ),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an final order (this "Final Order") (a) authorizing the Debtors to (i) continue use of existing business forms and records, (ii) maintain existing corporate bank accounts and cash management system, (iii) pay prepetition bank fees associated with the cash management system, and (iv) continue performance of intercompany transactions, (b) granting superpriority administrative expense status to postpetition intercompany balances, and (c) waiving certain U.S. Trustee Requirements; all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of

---

1    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estate, its creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** on a final basis as set forth herein.

2.     The Debtors are hereby authorized, in its sole discretion, to (a) use the Cash Management System, and (b) maintain and continue using the Bank Accounts with the same account numbers, in existence on the Petition Date, including, without limitation, those accounts identified on the exhibits to this Final Order.

3.     The Debtors shall maintain records of all transfers within the Cash Management System, so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained prior to the commencement of these Chapter 11 Cases.

| | |
|---|---|
| (Page \| 5) | |
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

4.      Each of the Cash Management Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtor's accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors are responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System.

5.      The Debtors are authorized, but not directed, to (a) deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, automated clearinghouse transfers, drafts, electronic fund transfers, or other items presented, issued or drawn on the Bank Accounts, (b) pay and/or reimburse the Cash Management Banks in the ordinary course of business for any claims arising prepetition or postpetition including ordinary-course bank fees, checks deposited which have been dishonored or returned for insufficient funds, and any reimbursement or other payment obligations such as overdrafts arising in connection with the Bank Accounts, (c) perform their obligations under the documents and agreements governing the Bank

(Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

Accounts, and (d) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors-in-possession.

6.      The Cash Management Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

7.      Each of the Cash Management Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Cash Management Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

8.      In the course of providing cash management services to the Debtors, any Cash Management Bank, without further order of this Court, is authorized to (a) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Cash Management Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (b) charge-back returned

(Page | 7)
Debtors:              BLOCKFI INC., *et al*.
Case No.             22-
Caption of Order:    Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing
                     Business Forms and Records, (b) Maintain Existing Corporate Bank
                     Accounts and Cash Management System, (c) Pay Prepetition Bank
                     Fees Associated with the Cash Management System, and (d) Continue
                     Performance of Intercompany Transactions, (II) Granting Superpriority
                     Administrative Expense Status to Postpetition Intercompany Balances, and
                     (III) Waiving Certain U.S. Trustee Requirements

items to the Bank Accounts, whether such items are dated before, on, or after the Petition Date, in

the ordinary course of business during the pendency of these Chapter 11 Cases.

9.     The Debtors are authorized to open any new bank accounts or close any existing

Bank Accounts as they may deem necessary and appropriate in their sole discretion; provided that

in the event the Debtors open a new bank account they shall open one at an authorized depository

and shall timely indicate the opening of such account on the Debtors' monthly operating report

and shall provide advance notice of the opening of any new bank accounts or closing of any Bank

Account to the U.S. Trustee.

10.    The Debtors are authorized to continue using the Corporate Cards and to pay in the

ordinary course of business any amounts owing prepetition or postpetition on account of the

Corporate Cards.

11.    The Debtors are authorized, but not directed, to continue using, in their present

form, the Business Forms, as well as checks and other documents related to the Bank Accounts

existing immediately before the Petition Date, without reference to the Debtors' status as debtors

in possession; provided that once the Debtors have exhausted their existing stock of Business

Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-

Possession"; provided, further, with respect to any Business Forms that exist or are generated

electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic

Business Forms are clearly labeled "Debtor-In-Possession."

(Page | 8)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

12.     The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

13.     As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Cash Management Banks.

14.     Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; provided that each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices; and (b) beginning on the Petition Date, maintain (i) current records of intercompany balances; (ii) a Debtor by Debtor summary on a monthly basis of any postpetition Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month); and (iii) reasonable access to the Debtors' advisors with respect to such records.

15.     All postpetition transfers and payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under section 503(b) of the Bankruptcy Code.

(Page | 9)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

16.     To the extent that the Guidelines otherwise conflict with any action taken by the Debtors in accordance with this Final Order or any other order entered in the Debtors' Chapter 11 Cases, such Guidelines are waived.

17.     Section 345 of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines requiring that the Bank Accounts be U.S. Trustee authorized depositories is waived with respect to the Bank Accounts existing as of the Petition Date.

18.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

(Page | 10)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | Final Order (I) Authorizing the Debtors to (a) Continue Use of Existing Business Forms and Records, (b) Maintain Existing Corporate Bank Accounts and Cash Management System, (c) Pay Prepetition Bank Fees Associated with the Cash Management System, and (d) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements |

19.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

21.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

22.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

24.     The Debtors shall serve by regular mail a copy of this Final Order and the Motion on all parties required to receive such service pursuant to D.N.J. LBR 9013-5(f) within two (2) business days after the entry of this Order.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**<u>Exhibit 1</u>**

**Diagram of the Cash Management System**



## **Exhibit 2**

### **Table of Bank Accounts**

| Name | Debtor / Non-Debtor | Bank | Account Number | Country | Balance at Petition Date |
|------|---------------------|------|----------------|---------|--------------------------|
| BlockFi Asia | Non-Debtor | FOMOpay | -0291 | Singapore | $9,800.00 |
| BlockFi Cayman LLC (Inactive) | Non-Debtor | Silvergate | -9256 | United States | $0.00 |
| BlockFi Cayman LLC (Inactive) | Non-Debtor | Silvergate | -9264 | United States | $0.00 |
| BlockFi Inc | Debtor | Silvergate | -4183 | United States | $0.00 |
| BlockFi Inc | Debtor | Silvergate | -4191 | United States | $0.00 |
| BlockFi Inc | Debtor | Silicon Valley | -0719 | United States | $1,000,000.00 |
| BlockFi Inc | Debtor | Silicon Valley | -2610 | United States | $330,022.00 |
| BlockFi Inc | Debtor | Silicon Valley | -3354 | United States | $750,000.00 |
| BlockFi Inc | Debtor | Silicon Valley | -7779 | United States | $4,000,000.00 |
| BlockFi Inc | Debtor | Silicon Valley | -7263 | United States | $254,056,136.00 |
| BlockFi International Ltd (Inactive) | Debtor | Signature | -9744 | United States | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | Signature | -9752 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -0586 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -0776 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -4552 | United States | $5,458.00 |
| BlockFi International Ltd (Inactive) | Debtor | Silvergate | -4560 | United States | $0.00 |
| BlockFi International Ltd | Debtor | Silvergate | -4578 | United States | $1,500,000.00 |
| BlockFi International Ltd (Inactive) | Debtor | Silvergate | -4586 | United States | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | Silvergate | -8926 | United States | $0.00 |
| BlockFi Lending II LLC (Inactive) | Debtor | Silvergate | -2705 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Signature | -5383 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Signature | -1447 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Signature | -3eb4 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Silvergate | -4091 | United States | $508,508.00 |
| BlockFi Lending LLC | Debtor | Silvergate | -4109 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Silvergate | -4768 | United States | $0.00 |
| BlockFi Lending LLC | Debtor | Silicon Valley | -8628 | United States | $102.00 |

| | | | | | |
|---|---|---|---|---|---|
| BlockFi Lending LLC | Debtor | CUB | -0230 | United States | $0.00 |
| BlockFi Services, Inc | Debtor | Silvergate | -2201 | United States | $54,301.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -8523 | United States | $14,488.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -8531 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -2277 | United States | $11,973.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -4704 | United States | $289,144.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -4712 | United States | $10,000,000.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -6799 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -8549 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -7937 | United States | $0.00 |
| BlockFi Trading LLC | Debtor | Silvergate | -7945 | United States | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2063 | United Kingdom | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2059 | United Kingdom | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2551 | United Kingdom | $0.00 |
| BlockFi International Ltd (Inactive) | Debtor | BCB | -2555 | United Kingdom | $0.00 |
| BlockFi Management (Inactive) | Non-Debtor | Signature | -8615 | United States | $0.00 |