**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS
TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER
COMPENSATION, AND REIMBURSABLE EXPENSES, AND (B) CONTINUE
EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"):

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**Relief Requested**

1.      The Debtors seek entry of orders, substantially in the forms attached hereto as

**Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order") (a) authorizing the

Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable employee

expenses, and (ii) continue compensation and benefits programs in the ordinary course, including

payment of certain prepetition obligations related thereto, and (b) granting related relief.   In

addition, the Debtors request that the Court schedule a final hearing 21 days after the

commencement of these Chapter 11 Cases to consider entry of an order approving the relief

requested herein on a final basis.[2]

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).   The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a),

and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004

---

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the
*Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions*
(the "First Day Declaration").

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1, and

9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.      On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their

business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth

in greater detail in the First Day Declaration, filed substantially contemporaneously herewith and

incorporated by reference herein.

6.      The Debtors are operating their business and managing their property as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the

filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint

administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for

the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official

committees have been appointed or designated.

## The Debtors' Workforce

7.      As of the Petition Date, the Debtors employ approximately 292 employees (each,

an "Employee" and collectively, the "Employees").  Of the Debtors' Employees, 288 are based in

the United States, two are based in Bermuda, and two are based in Singapore.[3]  Additionally, the

Debtors employ 82 independent contractors (the "Independent Contractors") located in, among

---

[3]      The two Singapore-based Employees are employed by non-Debtor BlockFi Asia PTE Ltd.  The Debtors fund
amounts related to these Employees through intercompany transactions which are described in the *Debtors'
Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business
Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay
Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of*
Intercompany *Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition
Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* (the "Cash Management Motion")
filed contemporaneously herewith.

other places, Argentina, Brazil, Greece, Hong Kong, India, Ireland, Mexico, Netherlands, Poland, Portugal, Singapore, and the United Kingdom.  The Independent Contractors supplement the Debtors' workforce in roles including, among other things, engineering, operations, and sales.

8.      The Employees and Independent Contractors perform a wide variety of functions critical to the Debtors' business operations, are intimately familiar with the Debtors' business, processes, and systems, and possess unique skills and experience with respect to the Debtors' business.    Without the continued, uninterrupted services of their Employees and Independent Contractors, the Debtors' ability to conduct business and administer their estates will be substantially impaired, and the Debtors' ongoing business could be severely and adversely affected.  Maintaining a properly incentivized management team and workforce to fulfill the Debtors' obligations with respect to these Chapter 11 Cases, along with the Debtors' day-to-day business responsibilities, is vital to sustaining the high level of business performance required in order to maximize value for all of the Debtors' stakeholders.

9.      Moreover, the Employees and Independent Contractors rely on their compensation and benefits to pay their daily living expenses and to support their families.  These individuals could experience significant financial hardship were the Debtors not permitted to continue paying wages and salaries, provide employee benefits, or maintain existing employee programs on a postpetition basis in the ordinary course of business.  The Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these Chapter 11 Cases.

10.      Approximately two-thirds of the Employees and Independent Contractors received Worker Adjustment and Retraining Notification ("WARN") notices from the Debtors prior to the commencement of these Chapter 11 Cases as part of a liquidity-preserving "reduction in force" effort.  The WARN notices each contemplate a termination date for the relevant individual that is

in accordance with all notice periods under applicable law, which in New York provides for ninety days of continued employment.  Although those individuals who received WARN notices will continue to be employed by the Debtors through and until the expiration of the period set forth in their notices, upon the expiration of this period, such individuals will be terminated.  Once the reduction in force is complete, the Debtors anticipate that their obligations associated with Compensation and Benefits (as defined below) will be sharply reduced.

## **Compensation and Benefits**

11.     The Debtors seek to minimize the personal financial hardship their workforce would suffer if compensation and benefits-related prepetition obligations are not paid or remitted when due or as expected.  The Debtors seek authority to (a) pay and honor certain prepetition claims, if any, relating to, among other things, Wage Obligations, Withholding and Deduction Obligations, Health and Welfare Coverage and Benefits, the Workers' Compensation Program, the 401(k) Plans, Paid and Unpaid Leave, the Immigration Assistance Program, and certain other benefits that the Debtors have historically provided in the ordinary course (each as defined below, and collectively, the "Compensation and Benefits") and (b) pay all costs related to or on account of the Compensation and Benefits.  The Debtors' average monthly obligations related to Compensation and Benefits are approximately $6,118,496.  As of the Petition Date, approximately $2,165,232 is currently accrued and outstanding on account of Compensation and Benefits.

12.     Subject to Court approval, the Debtors intend to continue their applicable prepetition Compensation and Benefits on a postpetition basis in the ordinary course of business. Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Compensation and Benefits and/or to implement new programs, policies, and benefits on a postpetition basis in the ordinary course of business during these Chapter 11 Cases without the need for further Court approval, subject to applicable law.

I.  **Employee and Independent Contractor Wage Obligations**.

13.     In the ordinary course of business, the Debtors incur obligations to their Employees and Independent Contractors for base salaries and other compensation (excluding bonuses, reimbursable expenses, severance, and paid leave) (collectively, the "Wage Obligations").  The Debtors' average monthly Wage Obligations are approximately $5,829,363.  Employees are generally paid currently, while certain Independent Contractors are paid one month in arrears.  The Debtors estimate that they owe approximately $1,498,232 in accrued and unpaid Wage Obligations, all of which will become due and owing within the first 21 days of these Chapter 11 Cases, although additional Wage Obligations may be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees and Independent Contractors believe that they should have been paid, which, upon resolution, may reveal that additional amounts are owed.  No Employee or Independent Contractor is owed amounts in excess of the $15,150 priority cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  Accordingly, the Debtors request authority to pay all outstanding prepetition amounts incurred on account of Wage Obligations and to continue to make all payments on a postpetition basis in the ordinary course of business.

14.     The Debtors have partnered with TriNet Group, Inc., Papaya Global, Inc., Deel, Inc., PHINX Lab, and Details Management Ltd. (collectively, the "Wage and Service Providers"). For most Employees and Independent Contractors, compensation and benefits are paid through the Wage and Service Providers as part of a Professional Employer Organization model ("PEO Model").  In this PEO Model, TriNet Group, Inc. ("TriNet"), Papaya Global, Inc. ("Papaya"), and Details Management Ltd. ("Details Management") serve as the legal co-employer of the Debtors' Employees and Independent Contractors, as applicable.  Certain of the Wage and Service Providers also assist the Debtors in handling certain administrative responsibilities for

human-resources and payroll-related functions, as described in greater detail below, for the Debtors' Employees and Independent Contractors.

15.    TriNet handles certain administrative responsibilities, including payroll, processing, offer of employee health and welfare benefits, and withholding, remittance, and reporting of payroll taxes (including the employer-paid portion of payroll taxes) through accounts funded by the Debtors.  The Debtors pay TriNet approximately $142,681 a month for its services.  As of the Petition Date, the Debtors do not believe they owe any prepetition amounts to TriNet.

16.    Papaya handles certain administrative responsibilities, including payroll, processing, offer of employee health and welfare benefits, and withholding, remittance, and reporting of payroll taxes, as applicable (including the employer-paid portion of payroll taxes), through accounts funded by the Debtors, for certain of the Debtors' Independent Contractors located in the United Kingdom, Ireland, Singapore, and Hong Kong.  Papaya also facilitates the payment of two Singapore-based Employees through a separate third-party provider.  The Debtors pay Papaya approximately $35,000 a month for its services.  As of the Petition Date, the Debtors do not believe they owe any prepetition amounts to Papaya.

17.    Details Management handles certain administrative responsibilities, including payroll, processing, and withholding, remittance, and reporting of payroll taxes, as applicable, through accounts funded by the Debtors, for certain of the Debtors' Employees.  The Debtors pay Details Management approximately $15,500 a month for its services.  As of the Petition Date, the Debtors estimate that they owe approximately $49,000 in accrued and unpaid fees to Details Management for its services.

18.    The Debtors have also partnered with Deel, Inc. ("Deel"), a third-party payroll provider, to pay certain of the Debtors' Independent Contractors.  Unlike the Papaya and TriNet platforms, the Debtors' engagement with Deel is not a PEO Model but enables the Debtors to pay

their Independent Contractors through direct deposit. The Debtors pay Deel approximately $500 a month for its services. As of the Petition Date, the Debtors do not believe they owe any prepetition amounts to Deel.

19.     The Debtors retain certain Independent Contractors through the external staffing agency PHINX Lab ("PHINX"). Unlike certain of the Debtors' Employees and Independent Contractors, who are paid through the Wage and Service Providers, the PHINX Independent Contractors are recruited, retained, and compensated by PHINX. The Debtors pay PHINX approximately $34,500 a month. PHINX then allocates certain portions of the $34,500 payment to the PHINX Independent Contractors and retains the remainder as a fee for PHINX's services.

20.     While the Debtors handle the day-to-day management of their Employees and their Independent Contractors, the Wage and Service Providers support the Debtors in the administration of many critical personnel functions of the Debtors' business. The Debtors estimate that they owe approximately $49,000 in accrued and unpaid fees on account of their relationships with the Wage and Service Providers. As such, the Debtors request authority to pay all outstanding prepetition amounts incurred on account of Wage and Service Providers and to continue to make all payments on a postpetition basis in the ordinary course of business.

## II.     **Withholding and Deduction Obligations**.

21.     In the ordinary course of business, the Debtors routinely deduct certain amounts from Employees' paychecks for, among other things, garnishments, child support, and pre-tax and post-tax deductions payable pursuant in accordance with the Debtors' benefit plans (the "Withholding and Deduction Obligations"). These Withholding and Deduction Obligations are withheld and forwarded to various third-party recipients, including the appropriate federal, state, and local taxing authorities.

22.     As of the Petition Date, the Debtors estimate that the aggregate amount of accrued and unpaid Withholding and Deduction Obligations is approximately $378,774.  Moreover, the Debtors believe that the Withholding and Deduction Obligations are not property of their estates. The Debtors respectfully request that the Court authorize the Debtors to continue to remit the Withholding and Deduction Obligations to the respective third-party payees and to continue to honor and process the Withholding and Deduction Obligations on a postpetition basis in the ordinary course of business.

## III.    Employer Payroll Taxes.

23.     The Debtors are required by applicable statutory authority to remit certain taxes for medical and social insurance programs and other similar statutory obligations (the "Employer Payroll Taxes").  On average the Debtors remit approximately $250,000 per month on account of the Employer Payroll Taxes to taxing authorities in the jurisdictions where they operate.  The Debtors seek authority to pay all outstanding prepetition amounts incurred on account of the Employer Payroll Taxes and to continue to remit and process the Employer Payroll Taxes on a postpetition basis in the ordinary course of business.

## IV.    Health and Welfare Coverage and Benefits.

24.     The Debtors provide health and welfare coverage and benefits (the "Health and Welfare Coverage and Benefits") for certain of their Employees and Independent Contractors through their Wage and Service Providers TriNet and Papaya, as applicable.  The Health and Welfare Coverage and Benefits include, among other things:  medical care, dental care, vision care, and applicable coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); and Employee-funded flexible spending and health savings accounts; and life insurance, accidental death and dismemberment insurance.  The Debtors seek authority to pay their

Wage and Service Providers, including with respect to the Health and Welfare Coverage and Benefits, on a postpetition basis in the ordinary course of business.

**V.    The 401(k) Plan**.

25.    The Debtors maintain a 401(k) retirement savings plan for their Employees (the "401(k) Plans").  The 401(k) Plans are administered by TriNet and allow for automatic pre-tax salary contributions to an Employee's 401(k) plan and/or after-tax contributions to an Employee's Roth 401(k), up to the limits set forth by the Internal Revenue Code.  Approximately 225 Employees currently contribute to 401(k) Plans.  The Employee's contributions are always 100 percent vested.  The Debtors request authority to honor and process the 401(k) Plans on a postpetition basis in the ordinary course of business.

**VI.    Workers' Compensation Program**.

26.    The Debtors maintain a workers' compensation insurance policy administered by TriNet for their Employees at the statutorily required level for each jurisdiction in which they have Employees (collectively, the "Workers' Compensation Program").

27.    The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities were outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.

28.    As of the Petition Date, there are no open claims under the Workers' Compensation Program and the Debtors do not owe any amounts on account of the Workers' Compensation Program.  Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the chapter 11 process.  Thus, the Debtors request the authority to (a) continue the

Workers' Compensation Program in the ordinary course of business, and (b) modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

**VII.   Paid and Unpaid Leave**.

29.    The Debtors maintain several paid and unpaid leave benefit programs, including a flexible time off policy.  As part of the Debtors' paid and unpaid leave benefit programs, the Debtors' Employees and Independent Contractors are afforded the flexibility to take paid time off, as is consistent with their employment duties, customer needs, and the Debtors' obligations.  There is no cap or limit to the amount of flexible time off that the Employees and Independent Contractors are permitted to take under this policy.  The Debtors' other benefit programs include paid time off for the observance of specific holidays, sick and safe time leave, parental leave, jury and witness duty leave, and bereavement leave, and time off for work-related injuries as statutorily mandated compensation pursuant to applicable statutes (collectively, the "Paid and Unpaid Leave").

30.    The Debtors believe that the continuation of their Paid and Unpaid Leave policies in accordance with prior practice is essential to maintaining workforce morale during these Chapter 11 Cases.  Further, the policies are broad-based programs upon which all Employees and Independent Contractors have come to depend.  The Debtors anticipate that their Employees and Independent Contractors will utilize any Paid and Unpaid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.  As a result, the Debtors seek authority to continue their Paid and Unpaid Leave on a postpetition basis in the ordinary course of business.

**VIII.   Immigration Assistance**.

31.    The Debtors maintain an immigration assistance program (the "Immigration Assistance Program") whereby the Debtors provide certain eligible Employees temporary

(nonimmigrant) visa status authorizing their employment with the Debtors, including payment of associated costs. The Debtors seek authority to continue to make payments, as applicable, on account of the Immigration Assistance Program on a postpetition basis in the ordinary course of business.

## IX.    Reimbursable Expenses.

32.    In the ordinary course of business, the Debtors pay or reimburse certain Employees for certain reasonable and customary approved expenses that such Employees incur in the scope of their employment (the "Reimbursable Expenses"). Reimbursable Expenses include, among other things, travel and associated costs, such as the cost of meals and lodging. Generally, Employees incur Reimbursable Expenses through the use of personal funds, and the Employee may be held personally liable for any unpaid obligations.[4] The Employees must provide a receipt, fill out an expense report table, and submit an attestation for all Reimbursable Expenses, which are then approved by the Debtors prior to reimbursement. As of the Petition Date, the Debtors estimate that they owe approximately $6,912 in accrued and unpaid Reimbursable Expenses. The Debtors seek authority to pay all amounts owed in Reimbursable Expenses on a postpetition basis in the ordinary course of business.

33.    Reimbursable Expenses are incurred by the Employees as business expenses on the Debtors' behalf and with the understanding that such expenses will be reimbursed or otherwise covered by the Debtors. The Debtors' inability to reimburse the Reimbursable Expenses would impose a hardship on the Employees where such individuals incurred obligations for the Debtors' benefit. To avoid harming those Employees who incurred Reimbursable Expenses, the Debtors

---

[4]    In addition to Reimbursable Expenses, certain of the Debtors' Employees have been issued corporate credit cards that are used to cover certain business-related expenses. The Debtors' corporate card program (the "Corporate Cards") is further described in the Cash Management Motion.

seek authority to satisfy any accrued and unpaid prepetition Reimbursable Expenses and to continue to pay the Reimbursable Expenses on a postpetition basis in the ordinary course of business.

<u>**Non-Employee Director Workforce Obligations**</u>

34.    Certain of the Debtors' Boards of directors include non-Employee directors (the "<u>Non-Employee Directors</u>").  Certain of the Non-Employee Directors' fees are paid quarterly in arrears, while others are paid monthly in advance.  Certain Non-Employee Directors are also entitled to expense reimbursements for reasonable out-of-pocket expenses in connection with attendance at meetings of the Board, or committees of the Board, in accordance with the Debtors' generally applicable reimbursement policies.  The Debtors do not believe they owe any prepetition amounts on account of the Non-Employee Director Compensation.  As such, the Debtors seek authority to pay any prepetition amounts solely out of an abundance of caution, and to continue to pay the Non-Employee Director Compensation on a postpetition basis in the ordinary course of business, pursuant to the Final Order only.

<u>**Basis for Relief Requested**</u>

I.    **Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits Obligations**.

A.    **Certain of the Compensation and Benefits Are Entitled to Priority Treatment**.

35.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits owed to the Employees to priority treatment.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  11 U.S.C. § 1129(a)(9)(b).  *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  Granting the relief sought herein should only

affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors.  Payment of the Compensation and Benefits at this time enhances value for the benefit of all interested parties.  *See In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("The need to pay [employee wage] claims in an ordinary course of business time frame is simple common sense.  Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted.").

36.    Although the Debtors believe that no Employee is owed more than $15,150 on account of certain Compensation and Benefits, to the extent that an Employee is owed more than that amount, the Debtors submit that the full payment of such obligations in the ordinary course is warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of necessity.  As such, these claims would be entitled to payment in full under any plan.

37.    The Debtors' Employees are essential to the Debtors' business, and payment of the Compensation and Benefits at this critical time is necessary to avoid potential material disruption to the Debtors' ordinary-course operations and maximize value of the Debtors' estates.  Finding, attracting, and training new qualified talent would be extremely difficult, particularly given current labor market conditions.  Such recruitment efforts would most likely require, among other things, higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

**B.    Payment of Certain of the Employee Obligations and Benefits Is Required by Law.**

38.    The Debtors also seek authority to pay amounts for Withholding and Deduction Obligations to be provided to the appropriate entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Indeed, certain deductions, including Employee

contributions to the 401(k) Plans, among other things, are not property of the Debtors' estates because they will be withheld from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541(b). Further, federal and state laws require the Debtors and their officers to remit certain tax payments that have been withheld from Employees' paychecks. *See* 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich.* (*In re DuCharmes & Co.*), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding and Deduction Obligations are not property of the Debtors' estates, the Debtors request that this Court authorize them to remit all amounts relating to Withholding and Deduction Obligations.

### C. Payment of Compensation and Benefits and the Relief Sought Herein Is a Sound Exercise of the Debtors' Business Judgement and Necessary to Preserve the Value of the Estates.

39.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). Courts have relied on several legal theories, including legal theories based on Bankruptcy Code §§ 1107(a), 1108, 363(b), and 105(a), to authorize payments of certain prepetition obligations.

40.     Pursuant to Bankruptcy Code §§ 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of

[their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.*

41.    Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under Bankruptcy Code § 363(b) where a sound business purpose exists for doing so. *See e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to Bankruptcy Code § 363(b); relief appropriate where payment was needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also Armstrong*, 29 B.R. at 397 (relying on Bankruptcy Code § 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

42.    Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to Bankruptcy Code § 105(a). Bankruptcy Code § 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under Bankruptcy Code § 105(a), courts may permit preplan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and where nonpayment of a prepetition obligation would trigger a withholding

of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *In re Ionosphere Clubs*, 98 B.R. at 177 (finding that Bankruptcy Code § 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing payment of pre-petition amounts due, inter alia, for wages, benefits, health insurance premiums and per diem expenses under the "necessity of payment doctrine," without regard to statutory priorities of Bankruptcy Code § 507).

43.     This Court and others have recognized the importance of employees to a debtor's reorganization and the severe harm to employees that can arise if courts do not grant motions such as this one. *In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (approving payment of prepetition employee wage claims due to the vital role the employees play to the debtor's reorganization); *see also In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. Jan. 28, 2021); *In re SLT Holdco, Inc.*, Case No. 20-18368 (MBK) (Bankr. D.N.J. July 10, 2020); *In re Hollister Constr. Servs., LLC*, No. 19-27439 (MBK) (Bankr. D.N.J. Sept. 18, 2019); *In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D.N.J. Sept. 11, 2018).

44.     In order to maintain the continuity of their business and to preserve the morale of their vital labor force, it is essential that the Debtors be permitted to pay the funds requested through this Motion. The Debtors seek the relief requested in this Motion on an emergency basis because any delay or disruption in providing compensation will destroy the Debtors' relationship with the Employees and irreparably impair workforce morale at the very time when the dedication, confidence, and cooperation of these individuals is most critical. The Debtors face the risk that

their operations may be severely impaired if authority is not granted for the Debtors to make the payments described above.

45.     Because the amounts represented by Wage Obligations are needed to enable the Employees to meet their own personal obligations, absent the relief requested herein, they will suffer undue hardship and, in many instances, serious financial difficulties.  Moreover, without the requested relief, the Debtors' reorganization efforts would be undermined by the potential threat that otherwise loyal Employees would seek other employment.

**The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

46.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.  The Debtors' ability to pay prepetition wages, salaries, other compensation, and reimbursable expenses and to continue compensation and benefits programs is vital to a smooth transition into chapter 11.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

**Request of Waiver of Stay**

47.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested

18

in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

48.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

49.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**No Prior Request**

50.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

51.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 28, 2022

/s/  Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Hearing Date and Time:** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES, AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)
Debtors:        BLOCKFI INC., *et al.*
Case No.:       22-
Caption:        Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
                Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue
                Employee Benefits Programs and (II) Granting Related Relief

Upon the *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) continue employee benefits programs, and (b) scheduling a final hearing to consider approval of the Motion on a final basis; all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estate, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and

---

[2]        Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No.: | 22- |
| Caption: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief |

after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The Final Hearing on the Motion will be held on _____**, 2022 at** _____ **(Eastern Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the Debtor's proposed counsel on or before _____**, 2022 at 4:00 p.m. (Eastern Time)**.  Any objection shall set forth in writing and with particularity the factual and legal basis of the objection.  If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are hereby authorized, but not directed, to continue and/or modify, change, or discontinue the Compensation and Benefits and to honor and pay on a postpetition basis in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices, any obligations on account of the Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition; *provided*, that pending entry of the Final Order, the Debtors shall not make any payment to, or on account of, any individual with respect to any prepetition claim on account of the Compensation and Benefits in excess of the priority cap set forth in sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code; provided, further, that payments on account of the Non-Employee Director Compensation shall not be made by this Interim Order and shall be made pursuant to the Final Order.

(Page | 5)
Debtors:          BLOCKFI INC., *et al*.
Case No.:         22-
Caption:          Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
                  Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue
                  Employee Benefits Programs and (II) Granting Related Relief

4.      The Debtors are authorized to issue postpetition checks, or to effect postpetition
fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored
as a consequence of these Chapter 11 Cases with respect to any prepetition amounts owed to their
Employees and Independent Contractors.

5.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments,
including outstanding claims with respect to Reimbursable Expenses, not otherwise due prior to
the date of the Final Hearing.

6.      The Debtors shall not make any non-ordinary course bonus, incentive, or severance
payments to their Employees, Independent Contractors, or any Insiders (as such term is defined in
section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of
doubt, no bonus, incentive, or severance payments shall be made to any Insider without further
order of this Court.  Nothing in the Motion or this Interim Order shall constitute a determination
by the Court as to whether any individual seeking payment pursuant to this Interim Order is or is
not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  Nothing in the
Motion or this Interim Order should be construed as approving any transfer pursuant to section
503(c) of the Bankruptcy Code, and a separate motion will be filed for any requests that are
governed by section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice
the Debtors' ability to seek approval for such relief pursuant to section 503(c) of the Bankruptcy
Code at a later time.

7.      The automatic stay of section 362(a) of the Bankruptcy Code, to the extent
applicable, is hereby lifted to permit, without further order of this Court:  (a) current or former

| (Page | 6) | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22- |
| Caption: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief |

Employees to proceed with their claims (whether arising prior to or subsequent to the Petition Date) under the Workers' Compensation Programs in the appropriate judicial or administrative forum; (b) insurers and third-party administrators to handle, administer, defend, settle, and/or pay workers' compensation claims and direct action claims; (c) the Debtors to continue the Workers' Compensation Programs and pay any amounts relating thereto postpetition in the ordinary course of business; and (d) insurers and third-party administrators providing coverage for any workers' compensation or direct action claims to draw on any and all collateral and/or prefunded loss accounts provided by or on behalf of the Debtors therefor, if and when the Debtors fail to pay and/or reimburse any insurers and third-party administrators for any amounts in relation thereto. The modification of the automatic stay in this paragraph pertains solely to claims under the Workers' Compensation Programs and direct action claims.

8.      Nothing herein (a) alters or amends the terms and conditions of the Workers' Compensation Programs; (b) relieves the Debtors of any of their obligations under the Workers' Compensation Programs; (c) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Workers' Compensation Programs; or (d) creates a direct right of action against any insurers or third-party administrators where such right of action does not already exist under non-bankruptcy law.

9.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations or Employer Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22- |
| Caption: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief |

10.     The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

11.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

13.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion

(Page | 8)
Debtors:        BLOCKFI INC., *et al*.
Case No.:       22-
Caption:        Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
                Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue
                Employee Benefits Programs and (II) Granting Related Relief

are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection

or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not

intended and should not be construed as an admission as to the validity of any particular claim or

a waiver of the Debtors' rights to subsequently dispute such claim.

14.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents

of the Motion or otherwise deemed waived.

15.    The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Interim Order in accordance with the Motion.

16.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim

Order shall be effective and enforceable immediately upon entry hereof.

17.    Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

18.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

19.    The Debtors shall serve by regular mail a copy of this Interim Order and the Motion

on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two

(2) business days after the entry of this Interim Order.

20.    Any party may move for modification of this Interim Order in accordance with

Local Rule 9013-5(e).

(Page | 9)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No.: | 22- |
| Caption: | Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief |

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

## **Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Hearing Date and Time:** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES, AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The relief set forth on the following pages, numbered three (3) through seven (7), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No.: | 22- |
| Caption: | Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief |

Upon the *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (a) authorizing the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (ii) continue employee benefits programs; all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estate, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)
Debtors:      BLOCKFI INC., *et al*.
Case No.:    22-
Caption:      Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
              Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue
              Employee Benefits Programs, and (II) Granting Related Relief

after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED** on a final basis as set forth herein.

2.    The Debtors are hereby authorized, but not directed, to continue and/or modify, change, or discontinue the Compensation and Benefits and to honor and pay on a postpetition basis in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices, any obligations on account of the Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition.

3.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to any prepetition amounts owed to their Employees and Independent Contractors.

4.    The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees, Independent Contractors, or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.  Nothing in the Motion, the Interim Order, or this Final Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Final Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

5.    The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby lifted to permit, without further order of this Court:  (a) current or former

(Page | 5)
Debtors:          BLOCKFI INC., *et al*.
Case No.:        22-
Caption:        Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
                Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue
                Employee Benefits Programs, and (II) Granting Related Relief

Employees to proceed with their claims (whether arising prior to or subsequent to the

Petition Date) under the Workers' Compensation Programs in the appropriate judicial or

administrative forum; (b) insurers and third-party administrators to handle, administer, defend,

settle, and/or pay workers' compensation claims and direct action claims; (c) the Debtors to

continue the Workers' Compensation Programs and pay any amounts relating thereto postpetition

in the ordinary course of business; and (d) insurers and third-party administrators providing

coverage for any workers' compensation or direct action claims to draw on any and all collateral

and/or prefunded loss accounts provided by or on behalf of the Debtors therefor, if and when the

Debtors fail to pay and/or reimburse any insurers and third-party administrators for any amounts

in relation thereto. The modification of the automatic stay in this paragraph pertains solely to

claims under the Workers' Compensation Programs and direct action claims.

6.    Nothing herein (a) alters or amends the terms and conditions of the Workers'

Compensation Programs; (b) relieves the Debtors of any of their obligations under the Workers'

Compensation Programs; (c) precludes or limits, in any way, the rights of any insurer to contest

and/or litigate the existence, primacy, and/or scope of available coverage under the Workers'

Compensation Programs; or (d) creates a direct right of action against any insurers or third-party

administrators where such right of action does not already exist under non-bankruptcy law.

7.    The Debtors are authorized, but not directed, to forward any unpaid amounts on

account of Withholding and Deduction Obligations or Employer Payroll Taxes to the appropriate

third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and

practices.

(Page | 6)
Debtors:        BLOCKFI INC., *et al*.
Case No.:       22-
Caption:        Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
                Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue
                Employee Benefits Programs, and (II) Granting Related Relief

8.      The Debtors are authorized, but not directed, to pay costs and expenses incidental
to payment of the Compensation and Benefits obligations, including all administrative and
processing costs and payments to outside professionals.

9.      Nothing contained herein is intended or should be construed to create an
administrative priority claim on account of the Compensation and Benefits obligations.

10.     The banks and financial institutions on which checks were drawn or electronic
payment requests made in payment of the prepetition obligations approved herein are authorized
and directed to receive, process, honor, and pay all such checks and electronic payment requests
when presented for payment, and all such banks and financial institutions are authorized to rely on
the Debtors' designation of any particular check or electronic payment request as approved by this
Final Order without any duty of further inquiry and without liability for following the Debtors'
instructions.

11.     Notwithstanding the relief granted in this Final Order and any actions taken
pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the
validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute
any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;
(d) an implication or admission that any particular claim is of a type specified or defined in this
Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or
lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors'
rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors
that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion

(Page | 7)
Debtors:        BLOCKFI INC., *et al*.
Case No.:       22-
Caption:        Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages,
                Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue
                Employee Benefits Programs, and (II) Granting Related Relief

are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection

or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended

and should not be construed as an admission as to the validity of any particular claim or a waiver

of the Debtors' rights to subsequently dispute such claim.

12.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents

of the Motion or otherwise deemed waived.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Final Order in accordance with the Motion.

14.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final

Order shall be effective and enforceable immediately upon entry hereof.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

16.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Final Order.