# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

## JOINT PLAN OF REORGANIZATION OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (*pro hac vice* pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Christine A. Okike, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

## TABLE OF CONTENTS

Page

Introduction ............................................................................................................................. 1

**Article I. Defined Terms, Rules of Interpretation, Computation of Time, Governing Law,
and Other References** ..................................................................................................... 1

    A.    Defined Terms ............................................................................................. 1
    B.    Rules of Interpretation ............................................................................. 17
    C.    Computation of Time ............................................................................... 18
    D.    Governing Law ........................................................................................ 18
    E.    Reference to Monetary Figures ............................................................... 19
    F.    Reference to the Debtors or the Reorganized Debtors ........................... 19
    G.    Nonconsolidated Plan ............................................................................. 19

**Article II. Administrative and Priority Claims** ..................................................................... 19

    A.    Administrative Claims ............................................................................ 19
    B.    Professional Fee Claims .......................................................................... 20
    C.    Priority Tax Claims ................................................................................. 21

**Article III. Classification, Treatment, and Voting of Claims and Interests** ......................... 21

    A.    Classification of Claims and Interests ..................................................... 21
    B.    Summary of Classification ...................................................................... 21
    C.    Treatment of Classes of Claims and Interests ........................................ 23
    D.    Special Provision Governing Unimpaired Claims .................................. 34
    E.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ............ 34
    F.    Subordinated Claims ............................................................................... 34
    G.    Intercompany Interests ............................................................................ 34
    H.    Controversy Concerning Impairment ...................................................... 35
    I.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code ......................................................................................................... 35

**Article IV. Provisions for Implementation of the Plan** .......................................................... 35

    A.    General Settlement of Claims and Interests ............................................ 35
    B.    Restructuring Transactions ...................................................................... 35
    C.    Alternative Transaction ........................................................................... 41
    D.    Closing the Chapter 11 Cases .................................................................. 45
    E.    Employee Arrangements .......................................................................... 45

**Article V. Treatment of Executory Contracts and Unexpired Leases** .................................... 45

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ............... 45
    B.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
        Leases ...................................................................................................... 46
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ............... 46
    D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ............... 46
    E.    Indemnification Provisions ...................................................................... 48
    F.    Insurance Policies and Surety Bonds ...................................................... 48
    G.    Reservation of Rights ............................................................................... 49

i

H.   Nonoccurrence of Effective Date..................................................................49
I.   Contracts and Leases Entered into After the Petition Date................................49

**Article VI. Provisions Governing Distributions** ......................................................**49**

A.   Timing and Calculation of Amounts to Be Distributed ....................................49
B.   Rights and Powers of Distribution Agent .......................................................49
C.   Delivery of Distributions and Undeliverable or Unclaimed Distributions ........50
D.   Compliance Matters .....................................................................................52
E.   Foreign Currency Exchange Rate .................................................................52
F.   Claims Paid or Payable by Third Parties .......................................................52
G.   Setoffs and Recoupment ..............................................................................53
H.   Allocation between Principal and Accrued Interest.........................................53

**Article VII. The Plan Administrator** ......................................................................**53**

A.   The Plan Administrator.................................................................................53
B.   Wind Down..................................................................................................55
C.   Exculpation, Indemnification, Insurance, and Liability Limitation..................55
D.   Tax Returns.................................................................................................55

**Article VIII. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims and Interests**....................................................................................................**56**

A.   Disputed Claims Process ..............................................................................56
B.   Objections to Claims....................................................................................57
C.   Estimation of Claims....................................................................................57
D.   No Distributions Pending Allowance .............................................................57
E.   Distributions After Allowance ......................................................................57
F.   No Interest...................................................................................................58
G.   Adjustment to Claims and Interests without Objection ...................................58
H.   Time to File Objections to Claims .................................................................58
I.   Disallowance of Claims................................................................................58
J.   Amendments to Proofs of Claim....................................................................59

**Article IX. Effect of Confirmation of the Plan** ......................................................**59**

A.   Discharge of Claims and Termination of Interests ..........................................59
B.   Releases by the Debtors................................................................................59
C.   Releases by Holders of Claims and Interests .................................................60
D.   Exculpation.................................................................................................61
E.   Injunction ...................................................................................................61
F.   Release of Liens...........................................................................................62
G.   SEC ............................................................................................................62
H.   Protection against Discriminatory Treatment ................................................62
I.   Document Retention .....................................................................................63
J.   Reimbursement or Contribution ...................................................................63
K.   Term of Injunctions or Stays.........................................................................63

**Article X. Conditions Precedent to the Effective Date**...........................................**63**

A.   Conditions Precedent to the Effective Date....................................................63
B.   Waiver of Conditions Precedent ...................................................................64
C.   Effect of Non-Occurrence of Conditions to Consummation .............................64

**Article XI. Modification, Revocation, or Withdrawal of the Plan** ........................................................ **64**
    A.    Modification of Plan ................................................................................. 64
    B.    Effect of Confirmation on Modifications ................................................ 64
    C.    Revocation or Withdrawal of Plan .......................................................... 64

**Article XII. Retention of Jurisdiction** ........................................................................................ **65**

**Article XIII. Miscellaneous Provisions** ...................................................................................... **67**
    A.    Immediate Binding Effect ........................................................................ 67
    B.    Additional Documents .............................................................................. 67
    C.    Payment of Statutory Fees ....................................................................... 67
    D.    Dissolution of Statutory Committees ...................................................... 67
    E.    Reservation of Rights ............................................................................... 67
    F.    Successors and Assigns ............................................................................ 68
    G.    Service of Documents .............................................................................. 68
    H.    Entire Agreement; Controlling Document ............................................... 68
    I.    Plan Supplement ...................................................................................... 69
    J.    Non-Severability ...................................................................................... 69
    K.    Votes Solicited in Good Faith .................................................................. 69
    L.    Waiver or Estoppel .................................................................................. 69

## INTRODUCTION

BlockFi Inc. ("BlockFi") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") propose this joint plan of reorganization (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. The Plan does not contemplate substantive consolidation of any of the Debtors.

ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A.    **Defined Terms**

Capitalized terms used in this Plan have the meanings ascribed to them below.

1.      "*Account*" means any active account at a Debtor held by an Account Holder, which contains digital assets or Cash as of the Petition Date.

2.      "*Account Holder*" means any Person or Entity who maintains an Account with BlockFi Inc., BlockFi International Ltd., BlockFi Investment Products LLC, BlockFi Lending LLC, BlockFi Lending II LLC, BlockFi Services, Inc., BlockFi Trading LLC, BlockFi Ventures LLC, or BlockFi Wallet LLC as of the Petition Date.

3.      "*Account Holder Claim*" means any BlockFi Inc. Account Holder Claim, BlockFi International Ltd. Account Holder Claim, BlockFi Investment Products LLC Account Holder Claim, BlockFi Lending LLC Account Holder Claim, BlockFi Lending II LLC Account Holder Claim, BlockFi Services, Inc. Account Holder Claim; BlockFi Trading LLC Account Holder Claim, BlockFi Ventures LLC Account Holder Claim, or BlockFi Wallet LLC Account Holder Claim.

4.      "*Acquired Assets*" has the meaning ascribed to it in the Asset Purchase Agreement.

5.      "*Acquired Cash*" means any Cash acquired pursuant to the Asset Purchase Agreement.

6.      "*Administrative Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or after the Petition Date and prior to the Effective Date pursuant to section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business and (b) Allowed Professional Fee Claims.

7.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code), which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five days after the Effective Date.

8.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

9.      "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim or Interest Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court, or (d) a Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; *provided* that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order.  Any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after and subject to the Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest. "Allow" and "Allowing" shall have correlative meanings.

10.      "*Alternative Transaction*" means a restructuring under this Plan in accordance with Article IV.C of this Plan providing for the sale of all, or substantially all, of the Debtors' assets.

11.      "*Asset Purchase Agreement*" means one or more asset purchase agreements pursuant to which the Alternative Transaction is consummated.

12.      "*Assumed Executory Contract and Unexpired Lease List*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

13.      "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action or remedies that may be brought by or on behalf of the Debtors or their Estates or other parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under other similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

14.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

15.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey, or any other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Jersey.

16.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

17.      "*Bar Date*" means the applicable deadline by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

18.      "*Bar Date Order*" means a Final Order of the Bankruptcy Court establishing the Bar Date.

19.      "*Bermuda Court*" means the Supreme Court of Bermuda.

20.      "*Bermuda Insolvency Proceedings*" means the insolvency proceedings commenced on November 28, 2022 by BlockFi International Ltd. in the Bermuda Court.

21.      "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving bidding procedures for the Alternative Transaction.

22.      "*BlockFi*" means BlockFi Inc., a Delaware corporation.

23.      "*BlockFi Inc. Account Holder Claims*" means any Claim against BlockFi Inc. that is held by an Account Holder on account of such Holder's Account.

24.      "*BlockFi Inc. General Unsecured Claims*" means any Claim against BlockFi Inc. that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi International Ltd. Account Holder Claim; (d) a BlockFi International Ltd. General Unsecured Claim; (e) a BlockFi Investment Products LLC Account Holder Claim; (f) a BlockFi Investment Products LLC General Unsecured Claim; (g) a BlockFi Lending LLC Account Holder Claim; (h) a BlockFi Lending LLC General Unsecured Claim; (i) a BlockFi Lending II LLC Account Holder Claim; (j) a BlockFi Lending II LLC General Unsecured Claim; (k) a BlockFi Services, Inc. Account Holder Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC Account Holder Claim; (n) a BlockFi Trading LLC General Unsecured Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claim; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Inc. are BlockFi Inc. General Unsecured Claims.

25.      "*BlockFi International Ltd. Account Holder Claims*" means any Claim against BlockFi International Ltd. that is held by an Account Holder on account of such Holder's Account.

26.      "*BlockFi International Ltd. General Unsecured Claims*" means any Claim against BlockFi International Ltd. that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi Investment

Products LLC Account Holder Claim; (f) a BlockFi Investment Products LLC General Unsecured Claim; (g) a BlockFi Lending LLC Account Holder Claim; (h) a BlockFi Lending LLC General Unsecured Claim; (i) a BlockFi Lending II LLC Account Holder Claim; (j) a BlockFi Lending II LLC General Unsecured Claim; (k) a BlockFi Services, Inc. Account Holder Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC Account Holder Claim; (n) a BlockFi Trading LLC General Unsecured Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claim; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest. For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi International Ltd. are BlockFi International Ltd. General Unsecured Claims.

27.      "*BlockFi International Ltd. License*" means that certain class F digital assets business license under the Digital Assets Business Act, 2018.

28.      "*BlockFi Investment Products LLC Account Holder Claims*" means any Claim against BlockFi Investment Products LLC that is held by an Account Holder on account of such Holder's Account.

29.      "*BlockFi Investment Products LLC General Unsecured Claims*" means any Claim against BlockFi Investment Products LLC that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) a BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Lending LLC Account Holder Claim; (h) a BlockFi Lending LLC General Unsecured Claim; (i) a BlockFi Lending II LLC Account Holder Claim; (j) a BlockFi Lending II LLC General Unsecured Claim; (k) a BlockFi Services, Inc. Account Holder Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC Account Holder Claim; (n) a BlockFi Trading LLC General Unsecured Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claim; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest. For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Investment Products LLC are BlockFi Investment Products LLC General Unsecured Claims.

30.      "*BlockFi Lending LLC Account Holder Claims*" means any Claim against BlockFi Lending LLC that is held by an Account Holder on account of such Holder's Account.

31.      "*BlockFi Lending LLC General Unsecured Claims*" means any Claim against BlockFi Lending LLC that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) a BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Investment Products LLC General Unsecured Claim; (h) a BlockFi Lending LLC Account Holder Claim; (i) a BlockFi Lending II LLC Account Holder Claim; (j) a BlockFi Lending II LLC General Unsecured Claim; (k) a BlockFi Services, Inc. Account Holder Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC Account Holder Claim; (n) a BlockFi Trading LLC General Unsecured Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claim;

(q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest. For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Lending LLC. are BlockFi Lending LLC General Unsecured Claims.

32.    *"BlockFi Lending II LLC Account Holder Claims"* means any Claim against BlockFi Lending II LLC that is held by an Account Holder on account of such Holder's Account.

33.    *"BlockFi Lending II LLC General Unsecured Claims"* means any Claim against BlockFi Lending II LLC that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) a BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Investment Products LLC General Unsecured Claim; (h) a BlockFi Lending LLC Account Holder Claim; (i) BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi Lending II LLC Account Holder Claim; (k) a BlockFi Services, Inc. Account Holder Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC Account Holder Claim; (n) a BlockFi Trading LLC General Unsecured Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claims; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest. For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Lending II LLC are BlockFi Lending II LLC General Unsecured Claims.

34.    *"BlockFi Services, Inc. Account Holder Claims"* means any Claim against BlockFi Services, Inc. that is held by an Account Holder on account of such Holder's Account.

35.    *"BlockFi Services, Inc. General Unsecured Claims"* means any Claim against BlockFi Services, Inc. that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) a BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Investment Products LLC General Unsecured Claim; (h) a BlockFi Lending LLC Account Holder Claim; (i) BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi Lending II LLC Account Holder Claim; (k) BlockFi Lending II LLC General Unsecured Claim; (l) a BlockFi Services, Inc. Account Holder Claim; (m) a BlockFi Trading LLC Account Holder Claim; (n) a BlockFi Trading LLC General Unsecured Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claim; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest. For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Services, Inc. are BlockFi Services, Inc. General Unsecured Claims.

36.    "*BlockFi Trading LLC Account Holder Claims*" means any Claim against BlockFi Trading LLC that is held by an Account Holder on account of such Holder's Account.

37.    "*BlockFi Trading LLC General Unsecured Claims*" means any Claim against BlockFi Trading LLC that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Investment Products LLC General Unsecured Claim; (h) a BlockFi Lending LLC Account Holder Claim; (i) BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi Lending II LLC Account Holder Claim; (k) BlockFi Lending II LLC General Unsecured Claim; (l) a BlockFi Services, Inc. Account Holder Claim; (m) a BlockFi Services, Inc. General Unsecured Claim; (n) a BlockFi Trading LLC Account Holder Claim; (o) a BlockFi Ventures LLC Account Holder Claim; (p) a BlockFi Ventures LLC General Unsecured Claim; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Trading LLC are BlockFi Trading LLC General Unsecured Claims.

38.    "*BlockFi Ventures LLC Account Holder Claims*" means any Claim against BlockFi Ventures LLC that is held by an Account Holder on account of such Holder's Account.

39.    "*BlockFi Ventures LLC General Unsecured Claims*" means any Claim against BlockFi Ventures LLC that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) a BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Investment Products LLC General Unsecured Claim; (h) a BlockFi Lending LLC Account Holder Claim; (i) BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi Lending II LLC Account Holder Claim; (k) BlockFi Lending II LLC General Unsecured Claim; (l) a BlockFi Services, Inc. Account Holder Claim; (m) a BlockFi Services, Inc. General Unsecured Claim; (n) a BlockFi Trading LLC Account Holder Claim; (o) a BlockFi Trading LLC General Unsecured Claim; (p) a BlockFi Ventures LLC Account Holder Claim; (q) a BlockFi Wallet LLC Account Holder Claim; (r) a BlockFi Wallet LLC General Unsecured Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Ventures LLC are BlockFi Ventures LLC General Unsecured Claims.

40.    "*BlockFi Wallet LLC Account Holder Claims*" means any Claim against BlockFi Wallet LLC that is held by an Account Holder on account of such Holder's Account.

41.    "*BlockFi Wallet LLC General Unsecured Claims*" means any Claim against BlockFi Wallet LLC that is not Secured and is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Account Holder Claim; (c) a BlockFi Inc. General Unsecured Claim; (d) a BlockFi International Ltd. Account Holder Claim; (e) a BlockFi International Ltd. General Unsecured Claim; (f) a BlockFi Investment Products LLC Account Holder Claim; (g) a BlockFi Investment Products LLC General Unsecured Claim; (h) a BlockFi Lending LLC Account Holder Claim; (i) BlockFi

Lending LLC General Unsecured Claim; (j) a BlockFi Lending II LLC Account Holder Claim; (k) BlockFi Lending II LLC General Unsecured Claim; (l) a BlockFi Services, Inc. Account Holder Claim; (m) a BlockFi Services, Inc. General Unsecured Claim; (n) a BlockFi Trading LLC Account Holder Claim; (o) a BlockFi Trading LLC General Unsecured Claim; (p) a BlockFi Ventures LLC Account Holder Claim; (q) a BlockFi Ventures LLC General Unsecured Claim; (r) a BlockFi Wallet LLC Account Holder Claim; (s) a Secured Tax Claim; (t) an Other Priority Claim; (u) a FTX Loan Facility Claim; (v) a Section 510(b) Claim; (w) an Intercompany Claim; (x) an Intercompany Interest; (y) an Existing Equity Interest; or (z) an Existing Preferred Equity Interest. For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation, other than Section 510(b) Claims, against BlockFi Wallet LLC are BlockFi Wallet LLC General Unsecured Claims.

42.     "*Board*" means the board of directors of BlockFi Inc.

43.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

44.     "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

45.     "*Cash Allocation*" means all Cash at a Debtor to be distributed to Holders of Account Holder Claims at such Debtor.

46.     "*Cash Election*" means the election by an eligible Holder of an Allowed Account Holder Claim to increase its share of the Cash Allocation by exchanging New Common Stock for additional Cash from a Holder of an Allowed Account Holder Claim that makes the Coin Election or Equity Election, as applicable. The Cash Election shall not exceed [●]% of each Holder's Pro Rata share of the Cash Allocation. To the extent that the total Cash Election is greater than the total Coin Election or Equity Election, as applicable, each Holder's Cash Election shall be reduced Pro Rata

47.     "*Causes of Action*" mean any action, Claim, cross-claim, third-party claim, damage, judgment, cause of action, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, interest, guaranty, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise. For the avoidance of doubt, "Causes of Action" include: (a) any right of setoff, counterclaim, or recoupment and any claim arising from any contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any right to object to or otherwise contest Claims or Interests; (d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

48.     "*Certificate*" means any instrument evidencing a Claim or an Interest.

49.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and (b) when

used with reference to all Debtors, the procedurally consolidated cases filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

50.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

51.     "*Claims, Noticing, and Solicitation Agent*" means Kroll Restructuring Administration LLC, in its capacity as the claims, noticing, and solicitation agent in the Chapter 11 Cases for the Debtors and any successors appointed by an order of the Bankruptcy Court.

52.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) (i) with respect to Administrative Claims (other than Professional Fee Claims and Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code), sixty days after the Administrative Claims Bar Date or (ii) with respect to all other Claims (other than Professional Fee Claims),180 days after the Effective Date  and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

53.     "*Claims Register*" means the official register of Claims against, and Interests in, the Debtors maintained by the Clerk of the Bankruptcy Court or the Claims, Noticing, and Solicitation Agent.

54.     "*Class*" means a class of Claims against, or Interests in, the Debtors as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

55.     "*Coin*" or "*Coins*" means the specific Digital Assets or cryptocurrency(ies) deposited by, or purchased for, an Account Holder and held by, or on behalf of, a Debtor as of the Petition Date.

56.     "*Coin Allocation*" means all Coins at a Debtor to be distributed to Holders of Account Holder Claims at such Debtor.

57.     "*Coin Election*" means the election by an eligible Holder of an Allowed Account Holder Claim to increase its share of the Coin Allocation by exchanging New Common Stock for additional Coin from a Holder of an Allowed Account Holder Claim that makes the Equity Election or the Cash Election. The Coin Election shall not exceed [●]% of each Holder's Pro Rata share of the Coin Allocation.  To the extent that the total Coin Election is greater than the total Equity Election or the Cash Election, each Holder's Coin Election shall be reduced Pro Rata.

58.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

59.     "*Confirmation Date*" means the date on which Confirmation occurs.

60.     "*Confirmation Hearing*" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code at which the Debtors will seek Confirmation of the Plan.

61.     "*Confirmation Order*" means the Bankruptcy Court's order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

62.     "*Consummation*" means the occurrence of the Effective Date.

63.     "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under an Executory Contract or an Unexpired Lease assumed

by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

64.      "*D&O Liability Insurance Policies*" means all unexpired insurance policies maintained by the Debtors, the Reorganized Debtors, or the Estates as of the Effective Date that have been issued (or provide coverage) regarding directors', managers', officers', members', and trustees' liability (including any "tail policy") and all agreements, documents, or instruments relating thereto.

65.      "*Debtor Release*" means the releases set forth in Article IX.B of the Plan.

66.      "*Debtors*" means, collectively, each of the following: BlockFi Inc.; BlockFi Lending LLC, BlockFi Wallet LLC; BlockFi Ventures LLC; BlockFi International Ltd.; BlockFi Investment Products LLC; BlockFi Services, Inc.; BlockFi Trading LLC; and BlockFi Lending II LLC.

67.      "*Definitive Documents*" means those documents governing the Restructuring Transactions or the Alternative Transaction, as applicable, including the following: (a) the Plan (and any and all exhibits, annexes, and schedules thereto); (b) the Confirmation Order; (c) the Disclosure Statement and the other Solicitation Materials; (d) the Disclosure Statement Order; (e) all pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders), including the First Day Filings and all orders sought pursuant thereto; (f) the Plan Supplement; (g) the New Organizational Documents; (h) any key employee incentive plan or key employee retention plan; (i) all documentation with respect to any post-emergence management incentive plan; (j) any other disclosure documents related to the issuance of the New Common Stock; (k) any new material employment, consulting, or similar agreements; (l) all documents in connection with the Alternative Transaction, as applicable; and (l) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably desired or necessary to consummate the Restructuring Transactions or the Alternative Transaction, as applicable (including any exhibits, amendments, modifications, or supplements made from time to time thereto)

68.      "*Digital Asset*" means any digital token based on a publicly accessible blockchain.

69.      "*Digital Asset Business Act*" means the statutory basis for regulating digital asset businesses in Bermuda.

70.      "*Disclosure Statement*" means the *Disclosure Statement Relating to the Joint Plan of Reorganization of BlockFi, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan.

71.      "*Disclosure Statement Order*" means a Final Order of the Bankruptcy Court approving the Disclosure Statement.

72.      "*Disputed*" means a Claim or an Interest or any portion thereof: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order; and (c) with respect to which a party in interest has Filed a Proof of Claim, a Proof of Interest, or otherwise made a written request to a Debtor for payment.

73.      "*Disputed Claims Reserve*" means an appropriate reserve in an amount to be determined by the Reorganized Debtors for distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VIII.A hereof.

74.     "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity or Entities designated by the Reorganized Debtors to make or to facilitate distributions that are to be made pursuant to the Plan.

75.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Reorganized Debtors, on or after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

76.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is determined by the Debtors or designated by an order of the Bankruptcy Court.

77.     "*DTC*" means the Depository Trust Company.

78.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article X.A of the Plan have been satisfied or waived in accordance with Article X.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective.

79.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

80.     "*Equity Allocation*" means New Common Stock in an amount equal to 100% of all New Common Stock, less the Equity Allocation Pool, to be distributed to Holders of Account Holder Claims.

81.     "*Equity Allocation Pool*" means the maximum aggregate amount of Equity to be distributed to holders of Allowed General Unsecured Claims.

82.     "*Equity Election*" means the election by an eligible Holder of an Allowed Account Holder Claim to increase its share of the Equity Allocation by exchanging Cash or Coin, as applicable, for additional New Common Stock from a Holder of an Allowed Account Holder Claim that makes the Coin Election or the Cash Election, as applicable.  The Equity Election shall not exceed [●]% of each Holder's Pro Rata share of the Equity Allocation.  To the extent that the total Equity Election is greater than the total Coin Election or Cash Election, as applicable, each Holder's Equity Election shall be reduced Pro Rata.

83.     "*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2012 & Supp. V 2017), and the regulations promulgated thereunder.

84.     "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through and including the Effective Date.

85.     ["*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the Debtors; (b) each of the Reorganized Debtors; and (c) each Related Party of each Entity in clauses (a) through (b).][1]

---

[1]   This definition and any related provision in this Plan remain subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities.

86.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

87.    "*Existing Equity Interests*" means any Interest in BlockFi existing immediately prior to the occurrence of the Effective Date.

88.    "*Existing Preferred Equity Interests*" means, collectively, the (a) Series Seed Preferred, (b) Series Seed 2 Preferred Stock, (c) Series A-1 Preferred Stock, (d) Series A-2 Preferred, (e) Series A-3 Preferred, (f) Series B Preferred Stock, (g) Series C Preferred Stock, (h) Series D Preferred Stock, (i) Series E Preferred Stock, (j) Series E-1 Preferred Stock.

89.    "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

90.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing, respectively, in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim or Proof of Interest, file, filed, or filing, respectively, with the Claims, Noticing, and Solicitation Agent.

91.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

92.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal that has been or may be taken or any petition for certiorari or any motion for a new trial, reargument, reconsideration, or rehearing that has been or may be made or filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the motion for a new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order (if any such motion has been or may be granted), or have otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

93.    "*First Day Filings*" means the "first-day" filings that the Debtors made upon or shortly following the commencement of the Chapter 11 Cases.

94.    "*FTX*" means FTX Trading Ltd. and its affiliates.

95.    "*FTX Loan Agreement*" means that certain unsecured loan agreement dated June 30, 2022 between BlockFi Inc., as borrower, and West Realm Shires Inc. (d/b/a FTX US), as lender, and BlockFi Trading LLC and BlockFi Lending LLC, as guarantors, providing for up to $400 million in loans consisting of (a) $300 million for general corporate purposes and (b) $100 million to fund BlockFi Inc's obligations to its clients.

96.    "*FTX Loan Facility*" means that certain unsecured loan facility provided for under the FTX Loan Agreement.

97.    "*FTX Loan Facility Claims*" means any Claim against any Debtor derived from, based upon, or arising under the FTX Loan Agreement and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the FTX Loan Agreement.

98. "*FTX Purchase Option*" means the option to purchase the equity of the Debtors pursuant to the FTX Purchase Option Agreement, which option is unenforceable, null, and void.

99. "*FTX Purchase Option Agreement*" means the certain option agreement dated June 30, 2022 by and among West Realm Shires Inc. (d/b/a FTX.US) and with respect to certain matters, FTX, and certain other parties thereto.

100. "*General Unsecured Claim*" means a BlockFi Inc. General Unsecured Claim, BlockFi International Ltd. General Unsecured Claim, BlockFi Investment Products LLC General Unsecured Claim, BlockFi Lending LLC General Unsecured Claim, BlockFi Lending II LLC General Unsecured Claim, BlockFi Services, Inc. General Unsecured Claim, BlockFi Trading LLC General Unsecured Claim, BlockFi Ventures LLC General Unsecured Claim, and BlockFi Wallet LLC General Unsecured Claim.

101. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

102. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

103. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

104. "*Indemnification Provisions*" means the provisions in place before or as of the Effective Date, whether in a Debtor's bylaws, certificates of incorporation, limited liability company agreement, partnership agreement, management agreement, other formation or organizational document, board resolution, indemnification agreement, contract, or otherwise providing the basis for any obligation of a Debtor as of the Effective Date to indemnify, defend, reimburse, or limit the liability of, or to advance fees and expenses to, any of the Debtors' current and former directors, equity holders, managers, officers, members, employees, attorneys, accountants, investment bankers, and other professionals, and each such Entity's respective affiliates, as applicable.

105. "*Intercompany Claim*" means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor.

106. "*Intercompany Interest*" means, other than an Interest in BlockFi, an Interest in one Debtor held by another Debtor or a Debtor's Affiliate.

107. "*Interest*" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of an Entity, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in an Entity whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, and including any Claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to the foregoing.

108. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001 and the rules and regulations promulgated thereunder, as applicable to the Chapter 11 Cases.

109. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

110.   "*Money Transmitter Licenses*" means any license or similar authorization of a Governmental Unit that an Entity is required to obtain to operate as a broker of cryptocurrency or similar Digital Assets.

111.   "*New Board*" means the initial board of directors of Reorganized BlockFi immediately following the occurrence of the Effective Date, to be appointed in accordance with the Plan and the New Organizational Documents.

112.   "*New Common Stock*" means the common stock of Reorganized BlockFi to be issued on the Effective Date.

113.   "*New Organizational Documents*" means the organizational and governance documents for the Reorganized Debtors and any subsidiaries thereof, including, as applicable, the certificates or articles of incorporation, certificates of formation, certificates of organization, certificates of limited partnership, or certificates of conversion, limited liability company agreements, operating agreements, or limited partnership agreements, stockholder or shareholder agreements, bylaws, the identity of proposed members of the board of Reorganized BlockFi, indemnification agreements, and Registration Rights Agreements (or equivalent governing documents of any of the foregoing).

114.   "*Other Priority Claim*" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

115.   "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

116.   "*Petition Date*" means November 28, 2022.

117.   "*Plan*" means this joint chapter 11 plan and all exhibits, supplements, appendices, and schedules hereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with Article XI.A hereof, including the Plan Supplement (as altered, amended, supplemented, or otherwise modified from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

118.   "*Plan Administrator*" means the person selected by the Debtors to administer the Plan Administrator Assets.  All costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets.

119.   "*Plan Administrator Assets*" means, on the Effective Date, all assets of the Estates to be administered by the Plan Administrator.

120.   "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be Filed by the Debtors, as may be amended, supplemented, altered, or modified from time to time, and which includes: (a) the New Organizational Documents; (b) to the extent known, the identity and members of the New Board; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Schedule of Retained Causes of Action; (e) the Restructuring Transactions Memorandum; and (f) any additional documents necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.   If the Alternative Transaction occurs, the Plan Supplement shall include:  (a) the Assumed Executory Contract and Unexpired Lease List; (b) the Schedule of Retained Causes of Action; (c) the Asset Purchase Agreement; (d) the identity and compensation of the Plan Administrator, if any; and (e) any other necessary documentation related to the

Alternative Transaction and the Wind Down as contemplated under the Plan, subject to the Debtors' right to amend such documents related to the Alternative Transaction and the Wind Down contained in, and exhibits to, the Plan Supplement through the Effective Date.

121.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

122.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under the Plan, unless otherwise indicated.

123.    "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

124.    "*Professional Fee Claim*" means any Administrative Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

125.    "*Professional Fee Escrow Account*" means an escrow account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

126.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, which shall be estimated pursuant to the method set forth in Article II.B of the Plan.

127.    "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

128.    "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

129.    "*Registration Rights Agreement*" means any agreement providing registration rights to any parties with respect to the New Common Stock.

130.    "*Related Party*" means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees,

14

advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

131. ["*Released Parties*" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Releasing Parties; and (d) each Related Party of each Entity in clauses (a) through (d); *provided* that (i) FTX and (ii) any Holder of a Claim against or Interest in the Debtors that is not a Releasing Party shall not be a "Released Party."][2]

132. ["*Releasing Parties*" means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) all Holders of Claims that vote to accept the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims or Interests that are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (h) each Related Party of each Entity in clauses (a) through (g).][3]

133. "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, including Reorganized BlockFi and any intermediary holding company formed in the Restructuring Transactions through which Reorganized BlockFi holds any other Reorganized Debtor.

134. "*Reorganized BlockFi*" means the Entity that will be the issuer of the New Common Stock, which Entity shall be either (a) a Debtor (including, for the avoidance of doubt, potentially BlockFi), or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, or (b) a newly formed corporation, limited liability company, partnership, or other entity that may be formed to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Debtors, in each case, in accordance with the Restructuring Transactions Memorandum, on or after the Effective Date.

135. "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary to implement the transactions described in this Plan, as described in more detail in Article IV.B herein and the Restructuring Transactions Memorandum.

136. "*Restructuring Transactions Memorandum*" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Restructuring Transactions, the form of which shall be included in the Plan Supplement.

137. "*Sale Order*" means one or more orders of the Bankruptcy Court and the respective buyer under the Asset Purchase Agreement, approving the consummation of the Alternative Transaction.

---

[2]    This definition and any related provision in this Plan remain subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities.

[3]    This definition and any related provision in this Plan remain subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities.

138.   "*Sale Proceeds*" means the Cash and non-Cash consideration provided by an Entity in connection with any sale pursuant to the Alternative Transaction, net of expenses (including transaction costs, severance, and other costs and expenses arising from such sale).

139.   "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means a schedule that may be Filed as part of the Plan Supplement at the Debtors' option of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors or Reorganized Debtors, as applicable, in accordance with the Plan; *provided,* the FTX Purchase Option Agreement shall be included on the Schedule of Rejected Executory Contract and Unexpired Leases and thereby rejected.

140.   "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement.

141.   "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedule of Rejected Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by each of the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been or may be amended, modified, or supplemented from time to time.

142.   "*SEC*" means the United States Securities and Exchange Commission.

143.   "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code.

144.   "*Secured*" means, when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a secured Claim.

145.   "*Secured Tax Claim*" means any Secured Claim against a Debtor that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

146.   "*Securities Act*" means the U.S. Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

147.   "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

148.   "*Series A-1 Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 3,109,745 shares.

149.   "*Series A-2 Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 127,210 shares.

150.   "*Series A-3 Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 7,753,114 shares.

151.    "*Series B Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 9,837,208 shares.

152.    "*Series C Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 7,642,144 shares.

153.    "*Series D Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 9,739,310 shares.

154.    "*Series E Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 2,442,193 shares.

155.    "*Series E-1 Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 660,116 shares.

156.    "*Series Seed Preferred Stock*" means shares of Preferred Stock, par value $0.00001 per share, issued in an aggregate of 2,833,977 shares.

157.    "*Solicitation Materials*" means all solicitation materials with respect to the Plan.

158.    "*Third-Party Release*" means the releases set forth in Article IX.C of the Plan.

159.    "*Transfer of Control*" means the transfer of control of the Money Transmitter Licenses held by BlockFi or any of its subsidiaries as a result of the issuance of the New Common Stock to Holders of Account Holder Claims.

160.    "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that, within six months of outreach, has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check, (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution, (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution, or (d) taken any other action necessary to facilitate such distribution.

161.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

162.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

163.    "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

164.    "*Wind Down*" means, solely in the event of, and following the consummation of, an Alternative Transaction, the wind down of the Debtors' Estates following the Plan Effective Date as contemplated under the Alternative Transaction as set forth in Article VII.B hereof.

## B.    Rules of Interpretation

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite

form; (3) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (4) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter have been or may thereafter be validly amended, amended and restated, supplemented, or otherwise modified; (5) unless otherwise specified, any reference to an Entity as a Holder of a Claim or Interest, includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) unless otherwise specified, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases; (14) any effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (18) the use of "include" or "including" is without limitation unless otherwise stated.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      **Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

F.      **Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      **Nonconsolidated Plan**

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

# ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.      **Administrative Claims**

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), unless previously Filed, requests for payment of Allowed Administrative Claims (other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code) must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party by the Claims Objection Bar Date for Administrative Claims. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim or Priority Tax Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive an amount of Cash equal to the amount of the unpaid or unsatisfied portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than thirty (30) days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably

practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Objections to requests for payment of such Administrative Claims, if any, must be Filed with the Bankruptcy Court and served on the Reorganized Debtors and the requesting Holder no later than the Claims Objection Bar Date for Administrative Claims. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

**B.      Professional Fee Claims**

1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five days (45) after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules. The Reorganized Debtors shall pay Professional Fee Claims in Cash to such Professionals in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

2.      <u>Professional Fee Escrow Account</u>

No later than the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Reorganized Debtors. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3.      <u>Professional Fee Escrow Amount</u>

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five (5) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate

shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.    Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Reorganized Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.

## C.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION, TREATMENT,
## AND VOTING OF CLAIMS AND INTERESTS

## A.    Classification of Claims and Interests

Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

## B.    Summary of Classification

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is summarized in the following chart. The Plan constitutes a separate chapter 11 plan for each of the Debtors, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors

21

may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims or Interests shall be treated as set forth in Article III.E hereof.  Voting tabulations for recording acceptances or rejections of the Plan will be conducted on a Debtor-by-Debtor basis as set forth above.[4]

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3-a | BlockFi Inc. Account Holder Claims | Impaired | Entitled to Vote |
| 3-b | BlockFi International Ltd. Account Holder Claims | Impaired | Entitled to Vote |
| 3-c | BlockFi Investment Products LLC Account Holder Claims | Impaired | Entitled to Vote |
| 3-d | BlockFi Lending LLC Account Holder Claims | Impaired | Entitled to Vote |
| 3-e | BlockFi Lending II LLC Account Holder Claims | Impaired | Entitled to Vote |
| 3-f | BlockFi Services, Inc. Account Holder Claims | Impaired | Entitled to Vote |
| 3-g | BlockFi Trading LLC Account Holder Claims | Impaired | Entitled to Vote |
| 3-h | BlockFi Ventures LLC Account Holder Claims | Impaired | Entitled to Vote |
| 3-i | BlockFi Wallet LLC Account Holder Claims | Unimpaired | Not Entitled to Vote |
| 4-a | BlockFi Inc. General Unsecured Claims | Impaired | Entitled to Vote |
| 4-b | BlockFi International Ltd. General Unsecured Claims | Impaired | Entitled to Vote |

---

[4]   The Debtors reserve the right to separately classify Claims or Interests to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 4-c | BlockFi Investment Products LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 4-d | BlockFi Lending LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 4-e | BlockFi Lending II LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 4-f | BlockFi Services, Inc. General Unsecured Claims | Impaired | Entitled to Vote |
| 4-g | BlockFi Trading LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 4-h | BlockFi Ventures LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 4-i | BlockFi Wallet LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | FTX Loan Facility Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 9 | Existing Preferred Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

## C.    Treatment of Classes of Claims and Interests

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.

1.  <u>Class 1 —Secured Tax Claims</u>

(a)  *Classification*: Class 1 consists of all Secured Tax Claims.

(b)  *Treatment*: Each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction of such Allowed Secured Tax Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Secured Tax Claim or such other treatment rendering such Holder's Allowed Secured Tax Claim Unimpaired.

(c)  *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Allowed Secured Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.  <u>Class 2 — Other Priority Claims</u>

(a)  *Classification*: Class 2 consists of all Other Priority Claims.

(b)  *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)  *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.  <u>Class 3-a — BlockFi Inc. Account Holder Claims</u>

(a)  *Classification*: Class 3-a consists of all BlockFi Inc. Account Holder Claims.

(b)  *Treatment*: Each Holder of an Allowed BlockFi Inc. Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Inc. Account Holder Claim, its Pro Rata share of:

(i)  the Cash Allocation; and

(ii)  the Equity Allocation.

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Inc. Account Holder Claim shall receive:

(iii)  if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Inc. have been paid in full or have otherwise received such treatment as

such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

(c)    *Voting:*  Class 3-a is Impaired under the Plan.  Holders of Allowed BlockFi Inc. Account Holder Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 3-b — BlockFi International Ltd. Account Holder Claims</u>

(a)    *Classification*:  Class 3-b consists of all BlockFi International Ltd. Account Holder Claims.

(b)    *Treatment*:  Each Holder of an Allowed BlockFi International Ltd. Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi International Ltd. Account Holder Claim, its Pro Rata share of:

(i)    the Cash Allocation;

(ii)    the Coin Allocation; and

(iii)    the Equity Allocation.

*provided* that subclauses (i), (ii), and (iii) shall be subject to such Holder's Coin Election, Cash Election, or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi International Ltd. Account Holder Claim shall receive:

(iv)    if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi International, Ltd. have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

(c)    *Voting:*  Class 3-b is Impaired under the Plan.  Holders of Allowed BlockFi International Ltd. Account Holder Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 3-c — BlockFi Investment Products LLC Account Holder Claims</u>

(a)    *Classification*:  Class 3-c consists of all BlockFi Investment Products LLC Account Holder Claims.

(b)    *Treatment*:  Each Holder of an Allowed BlockFi Investment Products LLC Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Investment Products LLC Account Holder Claim, its Pro Rata share of:

(i)    the Cash Allocation; and

(ii)    the Equity Allocation.

25

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Investment Products LLC Account Holder Claim shall receive:

(iii) if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Investment Products LLC have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

(c) *Voting:*  Class 3-c is Impaired under the Plan.  Holders of Allowed BlockFi Investment Products LLC Account Holder Claims are entitled to vote to accept or reject the Plan.

6. <u>Class 3-d — BlockFi Lending LLC Account Holder Claims</u>

(a) *Classification*:  Class 3-d consists of all BlockFi Lending LLC Account Holder Claims.

(b) *Treatment*:  Each Holder of an Allowed BlockFi Lending LLC Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Lending LLC Account Holder Claim, its Pro Rata share of:

(i) the Cash Allocation; and

(ii) the Equity Allocation.

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Lending LLC Account Holder Claim shall receive:

(iii) if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Lending LLC have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

(c) *Voting:*  Class 3-d is Impaired under the Plan.  Holders of Allowed BlockFi Lending LLC Account Holder Claims are entitled to vote to accept or reject the Plan.

7. <u>Class 3-e — BlockFi Lending II LLC Account Holder Claims</u>

(a) *Classification*:  Class 3-e consists of all BlockFi Lending II LLC Account Holder Claims.

26

(b)     *Treatment*:  Each Holder of an Allowed BlockFi Lending II LLC Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Lending II LLC Account Holder Claim, its Pro Rata share of:

(i)      the Cash Allocation; and

(ii)     the Equity Allocation.

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Lending II LLC Account Holder Claim shall receive:

(iii)    if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Lending II LLC have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

(c)     *Voting:*  Class 3-e is Impaired under the Plan.  Holders of Allowed BlockFi Lending II LLC Account Holder Claims are entitled to vote to accept or reject the Plan.

8.     Class 3-f — BlockFi Services, Inc. Account Holder Claims

(a)     *Classification*:  Class 3-f consists of all BlockFi Services, Inc. Account Holder Claims.

(b)     *Treatment*:  Each Holder of an Allowed BlockFi Services, Inc. Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Services, Inc. Account Holder Claim, its Pro Rata share of:

(i)      the Cash Allocation; and

(ii)     the Equity Allocation.

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Services Inc. Account Holder Claim shall receive:

(iii)    if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Services, Inc. have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

27

(c)    *Voting:*  Class 3-f is Impaired under the Plan.  Holders of Allowed BlockFi Services, Inc. Account Holder Claims are entitled to vote to accept or reject the Plan.

9.    <u>Class 3-g — BlockFi Trading LLC Account Holder Claims</u>

(a)    *Classification*:  Class 3-g consists of all BlockFi Trading LLC Account Holder Claims.

(b)    *Treatment*:  Each Holder of an Allowed BlockFi Trading LLC Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Trading LLC Account Holder Claim, its Pro Rata share of:

(i)    the Cash Allocation; and

(ii)    the Equity Allocation.

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Trading LLC Account Holder Claim shall receive:

(iii)    if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Trading LLC have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

(c)    *Voting:*  Class 3-g is Impaired under the Plan.  Holders of Allowed BlockFi Trading LLC Account Holder Claims are entitled to vote to accept or reject the Plan.

10.    <u>Class 3-h — BlockFi Ventures LLC Account Holder Claims</u>

(a)    *Classification*:  Class 3-h consists of all BlockFi Ventures LLC Account Holder Claims.

(b)    *Treatment*:  Each Holder of an Allowed BlockFi Ventures LLC Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Ventures LLC Account Holder Claim, its Pro Rata share of:

(i)    the Cash Allocation; and

(ii)    the Equity Allocation.

*provided* that subclauses (i) and (ii) shall be subject to such Holder's Cash Election or Equity Election, as applicable.

If, and only if, the Alternative Transaction occurs, each Holder of a BlockFi Ventures LLC Account Holder Claim shall receive:

    (iii)    if and only if Holders of Allowed Claims in Class 1 and Class 2 at BlockFi Ventures LLC have been paid in full or have otherwise received such treatment as such Holders are entitled to under the Plan, its Pro Rata share of the Sale Proceeds up to the Allowed amount of such Claim.

    (c)    *Voting:* Class 3-h is Impaired under the Plan. Holders of BlockFi Ventures LLC Account Holder Claims are entitled to vote to accept or reject the Plan.

11.    <u>Class 3-i — BlockFi Wallet LLC Account Holder Claims</u>

    (a)    *Classification*: Class 3-i consists of all BlockFi Wallet LLC Account Holder Claims.

    (b)    *Treatment*: Each Holder of an Allowed BlockFi Wallet LLC Account Holder Claim will receive in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Wallet LLC Account Holder Claim, its Pro Rata share of the Coin Allocation.

    (c)    *Voting:* Class 3-i is Unimpaired under the Plan. Holders of Allowed BlockFi Wallet LLC Account Holder Claims are not entitled to vote to accept or reject the Plan.

12.    <u>Class 4-a — BlockFi Inc. General Unsecured Claims</u>

    (a)    *Classification*: Class 4-a consists of all BlockFi Inc. General Unsecured Claims.

    (b)    *Treatment*: Each Holder of an Allowed BlockFi Inc. General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Inc. General Unsecured Claim, its Pro Rata share of:

    (i)    Cash; or

    (ii)    the Equity Allocation Pool.

    (c)    *Voting*: Class 4-a is Impaired under the Plan. Holders of Allowed BlockFi Inc. General Unsecured Claims are entitled to vote to accept or reject the Plan.

13.    <u>Class 4-b — BlockFi International Ltd. General Unsecured Claims</u>

    (a)    *Classification*: Class 4-b consists of all BlockFi International Ltd. General Unsecured Claims.

    (b)    *Treatment*: Each Holder of an Allowed BlockFi International Ltd. General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi International Ltd. General Unsecured Claim, its Pro Rata share of:

    (i)    Cash; or

(ii)     the Equity Allocation Pool.

(c)     *Voting*:  Class 4-b is Impaired under the Plan.  Holders of Allowed BlockFi International Ltd. General Unsecured Claims are entitled to vote to accept or reject the Plan.

14.     <u>Class 4-c — BlockFi Investment Products LLC General Unsecured Claims</u>

(a)     *Classification*:  Class 4-c consists of all BlockFi Investment Products LLC General Unsecured Claims.

(b)     *Treatment*:  Each Holder of an Allowed BlockFi Investment Products LLC General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Investment Products LLC General Unsecured Claim, its Pro Rata share of:

(i)     Cash; or

(ii)     the Equity Allocation Pool.

(c)     *Voting*:  Class 4-c is Impaired under the Plan.  Holders of Allowed BlockFi Investment Products LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

15.     <u>Class 4-d — BlockFi Lending LLC General Unsecured Claims</u>

(a)     *Classification*:  Class 4-d consists of all BlockFi Lending LLC General Unsecured Claims.

(b)     *Treatment*:  Each Holder of an Allowed BlockFi Lending LLC General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Lending LLC General Unsecured Claim, its Pro Rata share of:

(i)     Cash; or

(ii)     the Equity Allocation Pool.

(c)     *Voting*:  Class 4-d is Impaired under the Plan.  Holders of Allowed BlockFi Lending LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

16.     <u>Class 4-e — BlockFi Lending II LLC General Unsecured Claims</u>

(a)     *Classification*:   Class 4-e consists of all BlockFi Lending II LLC General Unsecured Claims.

(b)     *Treatment*:   Each Holder of an Allowed BlockFi Lending II LLC General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Lending II LLC General Unsecured Claim, its Pro Rata share of:

      (i)      Cash; or

      (ii)     the Equity Allocation Pool.

(c)    *Voting*: Class 4-e is Impaired under the Plan. Holders of Allowed BlockFi Lending II LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

17.    <u>Class 4-f — BlockFi Services, Inc. General Unsecured Claims</u>

(a)    *Classification*: Class 4-f consists of all BlockFi Services, Inc. General Unsecured Claims.

(b)    *Treatment*: Each Holder of an Allowed BlockFi Services, Inc. General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Services, Inc. General Unsecured Claim, its Pro Rata share of:

      (i)      Cash; or

      (ii)     the Equity Allocation Pool.

(c)    *Voting*: Class 4-f is Impaired under the Plan. Holders of Allowed BlockFi Services, Inc. General Unsecured Claims are entitled to vote to accept or reject the Plan.

18.    <u>Class 4-g — BlockFi Trading LLC General Unsecured Claims</u>

(a)    *Classification*: Class 4-g consists of all BlockFi Trading LLC General Unsecured Claims.

(b)    *Treatment*: Each Holder of an Allowed BlockFi Trading LLC General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Trading LLC General Unsecured Claim, its Pro Rata share of:

      (i)      Cash; or

      (ii)     the Equity Allocation Pool.

(c)    *Voting*: Class 4-g is Impaired under the Plan. Holders of Allowed BlockFi Trading LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

19.    <u>Class 4-h — BlockFi Ventures LLC General Unsecured Claims</u>

(a)    *Classification*: Class 4-h consists of all BlockFi Ventures LLC General Unsecured Claims.

(b)    *Treatment*: Each Holder of an Allowed BlockFi Ventures LLC General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Ventures LLC General Unsecured Claim, its Pro Rata share of:

(i)    Cash; or

(ii)   the Equity Allocation Pool.

(c)    *Voting*:  Class 4-h is Impaired under the Plan.  Holders of Allowed BlockFi Ventures LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

20.    Class 4-i — BlockFi Wallet LLC General Unsecured Claims

(a)    *Classification*:  Class 4-i consists of all BlockFi Wallet LLC General Unsecured Claims.

(b)    *Treatment*:  Each Holder of an Allowed BlockFi Wallet LLC General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed BlockFi Wallet LLC General Unsecured Claim, its Pro Rata share of:

(i)    Cash; or

(ii)   the Equity Allocation Pool.

(c)    *Voting*:  Class 4-i is Impaired under the Plan.  Holders of Allowed BlockFi Wallet LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

21.    Class 5 — FTX Loan Facility Claims

(a)    *Classification*:  Class 5 consists of all FTX Loan Facility Claims.

(b)    *Treatment*:  FTX Loan Facility Claims shall be cancelled, released, discharged and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of FTX Loan Facility Claims will not receive any distribution on account of such FTX Loan Facility Claims.

(c)    *Voting*:  Class 5 is Impaired under the Plan.  Holders of FTX Loan Facility Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of FTX Loan Facility Claims are not entitled to vote to accept or reject the Plan.

22.    Class 6 — Section 510(b) Claims

(a)    *Classification*:  Class 6 consists of all Section 510(b) Claims.

(b)    *Allowance*:  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Section 510(b) Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

(c)    *Treatment*:  Allowed Section 510(b) Claims, if any, shall be cancelled, released, discharged, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)     *Voting*:  Class 6 is Impaired under the Plan.  Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders (if any) of Allowed Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

23.     Class 7 — Intercompany Claims

(a)     *Classification*:  Class 7 consists of all Intercompany Claims.

(b)     *Treatment*:  On the Effective Date, all Intercompany Claims shall be, at the option of the applicable Debtor, either (a) Reinstated or (b) converted to equity, otherwise set off, settled, distributed, contributed, cancelled, or released, in each case, in accordance with the Restructuring Transactions Memorandum.

(c)     *Voting*:  Holders of Intercompany Claims are either Unimpaired or Impaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

24.     Class 8 — Intercompany Interests

(a)     *Classification*:  Class 8 consists of all Intercompany Interests.

(b)     *Treatment*:  On the Effective Date, all Intercompany Interests shall be, at the option of Reorganized BlockFi, either (a) Reinstated in accordance with Article III.G of the Plan or (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, in each case, in accordance with the Restructuring Transactions Memorandum.

(c)     *Voting*:  Holders of Intercompany Interests are either Unimpaired or Impaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

25.     Class 9 — Existing Preferred Equity Interests

(a)     *Classification*:  Class 9 consists of all Existing Preferred Equity Interests.

(b)     *Treatment*:  On the Effective Date, all Existing Preferred Equity Interests will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of Existing Preferred Equity Interests will not receive any distribution on account of such Existing Preferred Equity Interests.

(c)     *Voting*:  Class 9 is Impaired under the Plan.  Holders of Existing Preferred Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Preferred Equity Interests are not entitled to vote to accept or reject the Plan.

26.   <u>Class 10 — Existing Equity Interests</u>

(a)   Classification:  Class 10 consists of all Existing Equity Interests.

(b)   *Treatment*:  On the Effective Date, all Existing Equity Interests will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of Existing Equity Interests will not receive any distribution on account of such Existing Equity Interests.

(c)   *Voting*:  Class 10 is Impaired under the Plan.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

**D.   Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**E.   Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

**F.   Subordinated Claims**

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**G.   Intercompany Interests**

To the extent Reinstated under the Plan, distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the existing intercompany systems connecting the Debtors and their Affiliates, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

## H.    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## I.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims or Interests.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

## A.    General Settlement of Claims and Interests

As otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

## B.    Restructuring Transactions

On or before the Effective Date, the applicable Debtors or Reorganized Debtors will take any action as may be necessary or advisable to effectuate the Restructuring Transactions described in the Plan and Restructuring Transactions Memorandum, including:  (1) the execution and delivery of any New Organizational Documents, including any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation, in each case, containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including the documents comprising the Plan Supplement; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) the filing of any New Organizational Documents, including any appropriate certificates or articles of incorporation, reincorporation, merger, amalgamation, consolidation, conversion, or dissolution pursuant to applicable state law; (4) such other transactions that are required to effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers,

35

formations, organizations, dissolutions, or liquidations; and (5) all transactions necessary to provide for the purchase of substantially all of the assets or Interests of any of the Debtors by one or more Entities to be wholly owned by Reorganized BlockFi, which purchase may be structured as a taxable transaction for United States federal income tax purpose; and (6) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

1.      Sources of Consideration for Restructuring Transaction

The Reorganized Debtors shall fund distributions under the Plan with: (a) Cash, (b) Coins, and (c) the New Common Stock. The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors of the applicable Reorganized Debtors deem appropriate.

(a)     Sale and Distribution of Coins.

On, or as soon as reasonably practicable after, the Effective Date, the Reorganized Debtors shall distribute Coins to the Holders of applicable Claims in exchange for such Holders' respective Claims against the Debtors as set forth in Article III.C hereof and consistent with the Restructuring Transactions Memorandum.

(b)     Issuance and Distribution of the New Common Stock

On, or as soon as reasonably practicable after, the Effective Date, Reorganized BlockFi shall issue the New Common Stock, the Existing Equity Interests in BlockFi shall be cancelled, and the New Common Stock (along with the other consideration described in this Plan) shall be transferred to the Holders of applicable Claims in exchange for such Holders' respective Claims against the Debtors as set forth in Article III.C hereof and consistent with the Restructuring Transactions Memorandum. The issuance of the New Common Stock by Reorganized BlockFi and the transfer of the New Common Stock to the Holders of applicable Claims is authorized without the need for any further corporate action and without the need for any further action by Holders of any Claims.

All of the New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. For the avoidance of doubt, the acceptance of New Common Stock by any Holder of any Claim shall be deemed such Holder's agreement to the New Organizational Documents, as may be amended or modified from time to time following the Effective Date in accordance with their terms.

(c)     Cash on Hand

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand, if any, to fund distributions to certain Holders of Claims.

2.     Corporate Existence

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) in effect prior to the Effective Date, except to the extent such certificates or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) are amended pursuant to the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings under applicable state or federal law). After the cancellation of the Existing Equity Interests in BlockFi, the former equityholders of BlockFi shall not, on account of their former ownership of Existing Equity Interests in BlockFi, own or be deemed to own any interest, directly or indirectly, in BlockFi, any Reorganized Debtor, or any of their assets.

3.     New Organizational Documents

To the extent advisable or required under the Plan or applicable non-bankruptcy law, on or prior to the Effective Date, except as otherwise provided in the Plan or the Restructuring Transactions Memorandum, the Reorganized Debtors will file their respective New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in the state, province, or country of incorporation or formation in accordance with the applicable corporate or formational laws of the respective state, province, or country of incorporation. The New Organizational Documents of Reorganized BlockFi shall, among other things: (1) authorize the issuance of the New Common Stock; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtors may amend, amend and restate, supplement, or modify the New Organizational Documents, and the Reorganized Debtors may file their respective certificates or articles of incorporation, certificates of formation, certificates of organization, certificates of limited partnership, or certificates of conversion, limited liability company agreements, operating agreements, or limited partnership agreements, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation or formation and the New Organizational Documents.

4.     Directors and Officers of the Reorganized Debtors

As of the Effective Date, the terms of the current members of the board of directors of BlockFi shall expire, and, without further order of the Bankruptcy Court, the New Board shall be appointed. For the avoidance of doubt, the existing board of directors of BlockFi will approve the appointment of the New Board.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent known, the identity of the members of the New Board will be disclosed in the Plan Supplement or prior to the commencement of the

37

Confirmation Hearing.  The directors of each of the subsidiary Debtors shall consist of either existing directors of such Debtor or such persons as designated in the Plan Supplement or prior to the commencement of the Confirmation Hearing, and remain in such capacities as directors of the applicable Reorganized Debtor until replaced or removed on or after the Effective Date in accordance with the New Organizational Documents of the applicable Reorganized Debtor; *provided* that, in the event a director of a subsidiary Debtor also holds a management position and is replaced or removed from such management position prior to the Effective Date, then any such director may be replaced or removed from his or her subsidiary director role prior to the Effective Date.

From and after the Effective Date, each director (or director equivalent) of the Reorganized Debtors shall serve pursuant to the terms of the respective Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.

5.    Transfer of Control of Money Transmitter Licenses and Other Related Approvals

The Plan and the Confirmation Order shall provide the Debtors or the Reorganized Debtors, as applicable, with the requisite authority to proceed with any Transfer of Control required under the Money Transfer Licenses and any other requirements for similarly situated state and/or federal regulatory approvals.

6.    Corporate Action

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Debtors, the Reorganized Debtors, or any other Entity, including: (1) selection of the directors, managers, members, and officers for the Reorganized Debtors, including the appointment of the New Board or any directors of a subsidiary Debtor; (2) the issuances, transfer, and distribution of the New Common Stock; (3) the formation of any entities pursuant to and the implementation of the Restructuring Transactions and performance of all actions and transactions contemplated hereby and thereby; (4) adoption and filing of the New Organizational Documents; (5) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (6) all other acts or actions contemplated by the Plan or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions (including effectuating the Restructuring Transactions Memorandum) (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the Coin and the New Common Stock, if applicable, and the New Organizational Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.B.5 shall be effective notwithstanding any requirements under non-bankruptcy law.

7.     Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), or in any agreement, instrument, or other document incorporated in the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property in each Debtor's Estate, all Causes of Action of the Debtors (unless otherwise released or discharged pursuant to the Plan), and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.   On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

8.     Cancellation of Notes, Instruments, Certificates, and Other Documents

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for  the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Restructuring Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the Reorganized Debtors, as applicable, any non-Debtor Affiliates shall be deemed satisfied in full, cancelled, released, discharged, and of no force or effect.

9.     Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtors, and the directors, managers, partners, officers, authorized persons, and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, the New Common Stock, the New Organizational Documents, and any other Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

10.    Section 1145 Exemption

The shares of New Common Stock being issued under the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon (a) section 1145 of the Bankruptcy Code (except with respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code) or (b) only to the extent that such exemption under section 1145 of the Bankruptcy Code is not available (including with respect to an entity that is an "underwriter") pursuant to section 4(a)(2) under the Securities Act and/or Regulation D thereunder.

Securities issued in reliance upon section 1145 of the Bankruptcy Code are exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable

U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities and (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act and (b) are freely tradable and transferable by any holder thereof that, at the time of transfer, (1) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (2) has not been such an "affiliate" within ninety (90) days of such transfer, (3) has not acquired such securities from an "affiliate" within one year of such transfer and (4) is not an entity that is an "underwriter."

To the extent any shares of New Common Stock are issued in reliance on section 4(a)(2) of the Securities Act or Regulation D thereunder, they will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable law.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Stock to be issued under the Plan through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Stock to be issued under the Plan under applicable securities laws. DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Common Stock to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

11.    Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Entity) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12.    Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article IX of the Plan.** Unless any Cause of Action of the Debtors against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Reorganized Debtors expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as otherwise provided in the Plan, including Article IX of the Plan. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

C.    **Alternative Transaction**

Following the Petition Date and in parallel with the Restructuring Transactions, the Debtors shall continue their sale and marketing process and solicit bids for the Alternative Transaction. At any point, the Debtors may terminate pursuit of the Alternative Transaction in accordance with the terms of the Bidding Procedures Order and solely effectuate the Restructuring Transactions.

Solely in the event that the Debtors determine to effectuate the Alternative Transaction before the Confirmation Hearing, the Confirmation Order shall be deemed to authorize all actions as may be necessary or appropriate to effectuate the Alternative Transaction, including, among other things, transferring any purchased assets and interests to be transferred to and vested in any purchaser free and clear of all Liens, Claims, charges or other encumbrances pursuant to the terms of any purchase agreement, approve the Asset Purchase Agreement, and authorize the Debtors, or Reorganized Debtors, as applicable, to undertake the

transactions contemplated by the Asset Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

Solely if the Alternative Transaction occurs, the following provisions shall govern:

1.    Sources of Consideration for Plan Distributions

The Reorganized Debtors will fund distributions under the Plan with (a) Cash on hand on the Effective Date and (b) the revenues and proceeds of all assets of the Debtors, including the proceeds of the Alternative Transaction pursuant to the Asset Purchase Agreement and proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Asset Purchase Agreement, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Reorganized Debtors and shall be subject to administration by the Plan Administrator.

2.    Corporate Existence

On and after the Effective Date, the Reorganized Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible; (b) resolving Disputed Claims; (c) making distributions on account of Allowed Claims as provided hereunder; (d) enforcing and prosecuting claims, interests, rights, and privileges under the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (e) filing appropriate tax returns; (f) complying with their continuing obligations under the Asset Purchase Agreement, if any; and (g) administering the Plan in an efficacious manner. The Reorganized Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator or the Reorganized Debtors to file motions or substitutions of parties or counsel in each such matter.

3.    Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) the implementation of the Alternative Transaction; (b) closing of the Asset Purchase Agreement; and (c) all other actions contemplated under or necessary to implement the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan or corporate structure of the Debtors or Reorganized Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors. The authorizations and approvals

contemplated by this Article IV.C.3 shall be effective notwithstanding any requirements under non-bankruptcy law.

      4.    <u>Vesting of Assets in the Reorganized Debtors</u>

Except as otherwise provided in the Plan, the Confirmation Order, the Asset Purchase Agreement, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the assets of the Debtors that are not transferred to the Purchaser pursuant to the Asset Purchase Agreement, if any, shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances.

      5.    <u>Effectuating Documents; Further Transactions</u>

Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Reorganized Debtors, the Plan Administrator, and the officers and members thereof, are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

      6.    <u>Preservation of Causes of Action</u>

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Plan Administrator all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan. The Plan Administrator may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Administrator may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them. The Debtors and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; *provided* that the Debtors, in consultation with the Plan Administrator after the Effective Date, may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Plan Administrator expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.C.6 include any Claim or Cause of Action with respect to, or against, a Released Party. The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file,

prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

7.    Release of Liens

Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, all Liens on any property of any Debtors or the Reorganized Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Reorganized Debtors shall be automatically discharged and released.

8.    Plan Administrator

The Plan Administrator shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, or sale director of the Reorganized Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtors, and shall succeed to the powers of the Reorganized Debtors' managers, directors, and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtors.  The foregoing shall not limit the authority of the Reorganized Debtors or the Plan Administrator, as applicable, to continue the employment any former manager or officer, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Reorganized Debtors and the Purchaser.

9.    Executory Contracts and Unexpired Leases

In the event of a conflict between the Plan and the Asset Purchase Agreement with respect to assumption or rejection of Executory Contracts or Unexpired Leases, the Asset Purchase Agreement shall apply.  Entry of a Sale Order and/or the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Asset Purchase Agreement and the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Plan Effective Date, and assumptions or rejections pursuant to the Asset Purchase Agreement are effective as of the closing of the Alternative Transaction pursuant to the terms of the Asset Purchase Agreement.

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed or assumed and assigned by the Debtors shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of such Cure costs in Cash on or about the closing of the Alternative Transaction, subject to the limitations described below and set forth in the Asset Purchase Agreement, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the buyer under the Asset Purchase Agreement or any assignee, to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption.

## D.        Closing the Chapter 11 Cases

On and after the Effective Date, the Debtors, or the Reorganized Debtors shall be permitted to classify all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of any one Debtor identified in the Restructuring Steps Memorandum as having its Chapter 11 Case remain open following the Effective Date, as closed, and all contested matters relating to any of the Debtors, including objections to Claims and any adversary proceedings, shall be administered and heard in the Chapter 11 Case of that applicable Debtor, irrespective of whether such Claim(s) were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

## E.        Employee Arrangements

After the Effective Date, the Debtors shall be permitted to make payments to employees pursuant to employment programs then in effect, and to implement additional employee programs and make payments thereunder, without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that such payments shall not adversely affect any distributions provided for under this Plan.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.        Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) was previously assumed, assumed and assigned, or rejected by the Debtors; (b)  previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume, assume and assign, or reject Filed on or before the Confirmation Date that is pending on the Effective Date; or (d) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, if any.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, shall have the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including forty-five (45) days after the Effective Date.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto.   To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

**B.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contract or Unexpired Lease.  Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy law to the contrary, the Debtors and Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Leases, if any, shall be served with a notice of rejection of Executory Contracts and Unexpired Leases with the Plan Supplement.  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims, Noticing, and Solicitation Agent and served on the Debtors or Reorganized Debtors, as applicable, no later than thirty days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article IX.E of the Plan, including any Claims against any Debtor listed on the Debtors' schedules as unliquidated, contingent, or disputed.**  All Allowed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim in accordance with Article III.C of the Plan.

**D.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed**

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date, with the amount and timing of payment of any such Cure dictated by the Debtors' ordinary course of business.  The Debtors shall provide notice of the amount and timing of payment of any such Cure to the parties to the applicable assumed Executory Contracts or Unexpired Leases no later than the Effective Date.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the ordinary course amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors shall be dealt with in the ordinary course of business and, if needed, shall be Filed with the Claims, Noticing, and Solicitation Agent on or before thirty days (30) after the Effective Date.  **If any counterparty to an Executory Contract or Unexpired Lease does not receive a notice of assumption and applicable cure amount, such counterparty shall have until on or before thirty days after the Effective Date to bring forth and File a request for payment of Cure.**  Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure in the Debtors' ordinary course of business or upon and in accordance with any resolution of a Cure dispute

(whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty); *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure.  The Reorganized Debtors may also settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before thirty days (30) after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' first scheduled omnibus hearing for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

In the event of a dispute regarding:  (1) the amount of any Cure Claim, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (3) any other matter pertaining to assumption or assignment, then any disputed Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.D, in the amount and at the time dictated by the Debtors' ordinary course of business, or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty), shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, in the amount and at the time dictated by the Debtors' ordinary course of business or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty), shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in the event that any counterparty to an Executory Contract or Unexpired Lease receives a notice of assumption and applicable proposed Cure amount, and disputes the Debtors' proposed Cure amount, such party shall not be required to File a Proof of Claim with respect to such dispute.  Any counterparty to an Executory Contract or Unexpired Lease that does not receive a notice or applicable proposed Cure amount, and believes a Cure amount is owed, shall have thirty days (30) after the Effective Date to File a Proof of Claim with respect to such alleged Cure amount, which Claim shall not be expunged until such Cure dispute is resolved.**

Notwithstanding anything to the contrary herein, in the event of an Alternative Transaction, the terms of the Bidding Procedures, Alternative Transaction Documents, and any other related orders of the Bankruptcy Court, to the extent inconsistent with the terms of this Plan, shall govern the assumption of executory contracts and unexpired leases; provided that if the Bidding Procedures, Alternative Transaction

Documents, and any other related order of the Bankruptcy Court do not provide for the assumption of an executory contract or unexpired lease, the terms of the Plan will govern the assumption or rejection of such executory contract on unexpired lease.

**E.     Indemnification Provisions**

On and as of the Effective Date, the Indemnification Provisions will be assumed by the Debtors, and shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date.  The Reorganized Debtors' governance documents shall provide for indemnification, defense, reimbursement, and limitation of liability of, and advancement of fees and expenses to, the Reorganized Debtors' current and former directors, managers, officers, members, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors to the fullest extent permitted by law and at least to the same extent as provided under the Indemnification Provisions against any Cause of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted; *provided* that the Reorganized Debtors shall not indemnify any Person for any Cause of Action arising out of or related to any act or omission that is a criminal act or constitutes actual fraud, gross negligence, bad faith, or willful misconduct.  None of the Reorganized Debtors will amend or restate their respective governance documents before, on, or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations to provide such rights to indemnification, defense, reimbursement, limitation of liability, or advancement of fees and expenses.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Indemnification Provisions.

**F.     Insurance Policies and Surety Bonds**

Each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) shall be assumed, in their entirety, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 105 and 365 of the Bankruptcy Code.

The Debtors or the Reorganized Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date, and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject to the terms thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors shall retain the ability to supplement such D&O Liability Insurance Policy as the Debtors or Reorganized Debtors may deem necessary.

The Debtors shall continue to satisfy their obligations under their surety bonds and insurance policies in full and continue such programs in the ordinary course of business.  Each of the Debtors' surety bonds and insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan.  On the Effective Date: (a) the Debtors shall be deemed to have assumed all such surety bonds and insurance policies and any agreements, documents, and instruments relating thereto in their entirety; *provided* that the Debtors have assumed all indemnity agreements and cash collateral agreements related to the surety bonds and (b) such surety bonds and insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Reorganized Debtor(s) unaltered.

## G.      Reservation of Rights

Nothing contained in the Plan or the Plan Supplement (unless otherwise explicitly provided) shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

## H.      Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## I.      Contracts and Leases Entered into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.      Timing and Calculation of Amounts to Be Distributed

Except (1) as otherwise provided herein, (2) upon a Final Order, or (3) as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Claim, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the next Distribution Date after such Claim becomes, as applicable, an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of distributions that the Plan provides for Allowed Claims in the applicable Class from the Distribution Agent.  In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Except as specifically provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## B.      Rights and Powers of Distribution Agent

1.      Powers of the Distribution Agent

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties and exercise its rights under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities and powers; and (d) exercise such other powers as may be vested in the Distribution

Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

2.  _Expenses Incurred on or after the Effective Date_

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date and any reasonable compensation and expense reimbursement claims (including reasonable attorney and/or other professional fees and expenses) made by such Distribution Agent shall be paid in Cash by the Reorganized Debtors.

## C.   **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.  _Distributions Generally_

Except as otherwise provided in the Plan (including in the next paragraph), the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder; _provided_ that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

Distributions of New Common Stock shall be made through the facilities of DTC in accordance with DTC's customary practices.  For the avoidance of doubt, DTC shall be considered a single Holder for purposes of distributions.

2.  _Distributions on Account of Obligations of Multiple Debtors_

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan.  Any such Claims shall be released and discharged pursuant to Article IX of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.

3.  _Record Date of Distributions_

On the Distribution Record Date, the various transfer registers for each Class of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims.  The Distribution Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

4.  _Special Rules for Distributions to Holders of Disputed Claims_

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, or as set forth in a Final Order, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all of the Disputed Claim has become an Allowed Claim or has otherwise been resolved by settlement or Final Order; _provided_ that, if the Reorganized Debtors do not dispute a portion

of an amount asserted pursuant to an otherwise Disputed Claim, the Distribution Agent may make a partial distribution on account of that portion of such Claim that is not Disputed at the time and in the manner that the Distribution Agent makes distributions to similarly situated Holders of Allowed Claims pursuant to the Plan. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

5.  De Minimis Distributions; Minimum Distributions

No fractional shares of New Common Stock shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts and such fractional amounts shall be deemed to be zero. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of greater than one-half shall be rounded to the next higher whole number and (b) fractions of one-half or less shall be rounded to the next lower whole number with no further payment therein. The total number of authorized shares of New Common Stock to be distributed to Holders of Account Holder Claims may (at the Debtors' discretion) be adjusted as necessary to account for the foregoing rounding; *provided* that DTC will be considered a single holder for purposes of distributions.

The Distribution Agent shall not make any distributions to any Holder of an Allowed Claim pursuant to Article III.C of this Plan on account of such Allowed Claim, New Common Stock, or Cash if such distribution is valued, in the reasonable discretion of the Distribution Agent, at less than $[●], and each Holder of an Allowed Claim to which this limitation applies shall be discharged pursuant to Article IX of the Plan and its Holder shall be forever barred pursuant to Article IX of the Plan from asserting that Allowed Claim against the Reorganized Debtors or their property.

6.  Undeliverable Distributions and Unclaimed Property

In the event that either (a) a distribution to any Holder is returned as undeliverable (other than a distribution to or through DTC) or (b) the Holder of an Allowed Claim does not respond to a request by the Debtors or the Distribution Agent for information necessary to facilitate a particular distribution, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder or received the necessary information to facilitate a particular distribution, at which time such distribution shall be made to such Holder without interest, dividends, or other accruals of any kind; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is six months after the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

7.  Manner of Payment Pursuant to the Plan

At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise provided in applicable agreements.

D.        **Compliance Matters**

In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, any Distribution Agent, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Reorganized Debtors, the Distribution Agent, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms that are reasonable and appropriate; *provided* that the Reorganized Debtors and the Distribution Agent, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond.  The Debtors, the Reorganized Debtors, the Distribution Agent, and any other applicable withholding and reporting agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

E.        **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim, other than any Account Holder Claim, asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

F.        **Claims Paid or Payable by Third Parties**

1.        Claims Paid by Third Parties

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives a payment on account of such Claim from a party that is not a Debtor or Reorganized Debtor (or other Distribution Agent), as applicable.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor (or other Distribution Agent), as applicable, on account of such Claim, such Holder shall, within ten Business Days of receipt thereof, repay, return, or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay, return, or deliver such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the ten-Business Day grace period specified above until the amount is repaid.

2.        Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such satisfaction, such Claim may be expunged

on the Claims Register by the Claims, Noticing, and Solicitation Agent to the extent of any such satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

        3.        <u>Applicability of Insurance Policies</u>

Except as otherwise provided herein, payments to Holders of Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any rights, defenses, or Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers, under any policies of insurance, agreements related thereto, or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under the applicable insurance policies, agreements related thereto, and applicable non-bankruptcy law.

## G.      Setoffs and Recoupment

Except as otherwise expressly provided for herein, each Debtor, Reorganized Debtor, or such Entity's designee as instructed by such Debtor or Reorganized Debtor, as applicable, may, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup from an Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature whatsoever that the Debtor or Reorganized Debtor, as applicable, may have against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised, settled, or released on or prior to the Effective Date (whether pursuant to the Plan or otherwise). Notwithstanding the foregoing, except as expressly stated in Article IX of this Plan, neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, rights, or Causes of Action the Debtors or Reorganized Debtors may possess against such Holder.

## H.      Allocation between Principal and Accrued Interest

Except as otherwise provided herein, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof and as determined for federal income tax purposes) and second, to the extent the consideration exceeds the principal amount of the Allowed Claims, to the remaining portion of such Allowed Claim, if any.

## ARTICLE VII.
## THE PLAN ADMINISTRATOR

The following provisions shall apply only if the Alternative Transaction occurs and a Plan Administrator is appointed.

## A.      The Plan Administrator

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and wind down the business and affairs of the Debtors or the Reorganized Debtors, as applicable, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Reorganized Debtors; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (c) making distributions as contemplated under the Plan;

(d) establishing and maintaining bank accounts in the name of the Reorganized Debtors; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Reorganized Debtors; (g) administering and paying taxes of the Reorganized Debtors, including filing tax returns; (h) representing the interests of the Reorganized Debtors or the Estates, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (i) closing the sale pursuant to the Asset Purchase Agreement; and (j) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Reorganized Debtors shall be terminated.

1.   Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.   Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of its duties, including any professionals previously retained by the Debtors.  The reasonable fees and expenses of such professionals shall be paid from the Plan Administrator Assets upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Plan Administrator Assets and shall not be subject to the approval of the Bankruptcy Court.

3.   Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes imposed on the Reorganized Debtors) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Plan Administrator Assets, as applicable, if such amounts relate to any actions taken hereunder.

4.   Plan Administrator Expenses

All reasonable costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Reorganized Debtors, or in any manner connected, incidental, or related thereto, shall be incurred and paid from the Plan Administrator Assets.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. In the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Plan Administrator Assets.

## B.       Wind Down

On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall: (a) cause the Debtors and the Reorganized Debtors, as applicable, to comply with, and abide by, the terms of the Asset Purchase Agreement and any other documents contemplated thereby; and (b) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

Notwithstanding anything to the contrary set forth in this Plan, the Plan Supplement, the Disclosure Statement or otherwise, at all times on and after the Effective Date through the date on which the General Unsecured Claims are paid in accordance with the Plan, (a) the Debtors, the Reorganized Debtors, and the Plan Administrator shall maintain the cash management system of the Debtors (including all deposit accounts, as in effect immediately prior to the Effective Date); and (b) assume, ratify, and reaffirm all agreements (including all deposit account control agreements) related to the deposit accounts of the Debtors, Reorganized Debtors, and Plan Administrator.

## C.       Exculpation, Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Reorganized Debtors.  The Plan Administrator may obtain, at the expense of the Reorganized Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Reorganized Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

## D.       Tax Returns

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate, for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS AND INTERESTS

### A.    Disputed Claims Process

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.  If a Holder of a Claim in Class disputes the amount of their Claim as listed in the Schedules, the Holder should notify of the Debtors of such dispute.  If the Debtors and the Holder agree to an amended Claim amount prior to the Effective Date, the Debtors shall file amended Schedules prior to the Effective Date.   If between the Confirmation Date and the Effective Date, the dispute cannot be consensually resolved, the Holder may seek (by letter to the Court) to have the claim dispute resolved before the Bankruptcy Court (and, with the consent of the Debtors, before any other court or tribunal with jurisdiction over the parties).  After the Effective Date, the creditor may seek to have the claim dispute resolved before the Bankruptcy Court or any other court or tribunal with jurisdiction over the parties.

Unless relating to a Claim expressly Allowed pursuant to the Plan, all Proofs of Claim filed in these Chapter 11 Cases shall be considered objected to and Disputed Claim without further action by the Debtors. Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below.  Notwithstanding anything in this Plan to the contrary:  (1) all Claims against the Debtors that result from the Debtors' rejection of an Executory Contract or Unexpired Lease; (2) Claims filed to dispute the amount of any proposed Cure pursuant to section 365 of the Bankruptcy Code; and (3) Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court, if not otherwise resolved through settlement with the applicable claimant.

On the Effective Date, the Debtors or Reorganized Debtors, as applicable, may establish one or more accounts or funds to hold and dispose of certain assets, pursue certain litigation, and/or satisfy certain Claims (including Claims that are contingent or have not yet been Allowed).  For any such account or fund, the Debtors may take the position that grantor trust treatment applies in whole or in part. To the extent such treatment applies to any such account or fund, for all U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations.  Accordingly, subject to the immediately foregoing sentence, if such intended U.S. federal income tax treatment applied, then for U.S. federal income tax purposes the beneficiaries of any such account or fund would be treated as if they had received an interest in such account or fund's assets and then contributed such interests (in accordance with the Restructuring Transactions Memorandum) to such account or fund.  Alternatively, any such account or fund may be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  If such rules apply, such assets would be subject to entity-level taxation, and the Debtors and Reorganized Debtors would be required to comply with the relevant rules.

**B.      Objections to Claims**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors, shall have the sole authority to: (1) File, withdraw, or litigate to judgment, any objections to Claims; and (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to Article IV.B.12 of the Plan.

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.  For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims set forth in this paragraph at any time, including before or after the expiration of 180 days after the Effective Date, in its discretion or upon request by the Debtors or any party in interest.

**C.      Estimation of Claims**

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Disputed Claim is estimated.

**D.      No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that if only a portion of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

**E.      Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the Holder of such Allowed

Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Allowed Claim unless required under applicable bankruptcy law.

**F.      No Interest**

Unless otherwise specifically provided for herein or by Final Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**G.      Adjustment to Claims and Interests without Objection**

Any Claim or Interest that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged on the Claims Register at the direction of the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.  Additionally, any Claim or Interest that is duplicative or redundant with another Claim or Interest against the same Debtor may be adjusted or expunged on the Claims Register at the direction of the Reorganized Debtors without the Reorganized Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

**H.      Time to File Objections to Claims**

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

**I.      Disallowance of Claims**

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors, as applicable.  All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**Except as otherwise provided herein or as agreed to by the Debtors or the Reorganized Debtors, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

### J.    Amendments to Proofs of Claim

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Proof of Claim or Proof of Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Proof of Claim or Proof of Interest Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

## ARTICLE IX.
## EFFECT OF CONFIRMATION OF THE PLAN

### A.    Discharge of Claims and Termination of Interests

As provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### B.    Releases by the Debtors[5]

**[Notwithstanding anything contained in the Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law,**

---

[5]    This definition and any related provision in this Plan remain subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities.

equity, contract, tort, or otherwise, that the Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the Alameda Loan Facility, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the administration and implementation of the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) and Bankruptcy Rule 9019, of the releases described in this Article IX.B by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article IX.B is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Debtors or Reorganized Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.]**

**C.      Releases by Holders of Claims and Interests**

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Alameda Loan Facility, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the administration and implementation of the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article IX.C, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article IX.C is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Releasing Parties or the Debtors or Reorganized Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.**

**D.    Exculpation[6]**

**[Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third-party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Plan, any Definitive Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.]**

**[The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.]**

**E.    Injunction[7]**

**[Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.B of this Plan; (c) have been released pursuant to Article IX.C of this Plan, (d) are subject**

---

[6]    This definition and any related provision in this Plan remain subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities.

[7]    This definition and any related provision in this Plan remain subject to the outcome of an ongoing investigation by the independent directors at the applicable Debtor entities.

**to exculpation pursuant to Article IX.D of this Plan, or (e) are otherwise discharged, satisfied, stayed, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors, the Reorganized Debtors, or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged, released, settled, compromised, or exculpated Claims, Interests, Causes of Action, or liabilities.]**

**[Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former directors, managers, officers, principals, predecessors, successors, employees, agents, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX.E.]**

**F.      Release of Liens**

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order on the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Debtor or Reorganized Debtor, as applicable, and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as requested by the Debtors or Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such documents evidencing such releases. The presentation or filing of the Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**G.      SEC**

Notwithstanding any language to the contrary herein, no provision shall (a) preclude the SEC from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

**H.      Protection against Discriminatory Treatment**

As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a debtor under chapter 11 of the Bankruptcy Code, may have been

insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## I.     Document Retention

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## J.     Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## K.     Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  **All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

## ARTICLE X.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.     Conditions Precedent to the Effective Date.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B of the Plan:

1.     The Bankruptcy Court shall have entered the Confirmation Order, and such order shall be a Final Order and in full force and effect.

2.     The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

3.     Each Definitive Document and each other document contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications or supplements thereto or other documents contained therein, shall have been executed or Filed, as applicable, in form and substance consistent in all respects with the Plan, and shall not have been modified in a manner inconsistent therewith;

4.     The Professional Fee Escrow Account shall have been established and funded with Cash in accordance with Article II.B.2 of the Plan.

5.       The Restructuring Transactions shall have been consummated or shall be anticipated to be consummated concurrently with the occurrence of the Effective Date in a manner consistent with the Plan, and the Plan shall have been substantially consummated or shall be anticipated to be substantially consummated concurrently with the occurrence of the Effective Date.

6.       The Debtors have obtained entry of an order in the Bermuda Insolvency Proceedings by the Bermuda Court recognizing the Confirmation Order.

## B.       Waiver of Conditions Precedent

The Debtors may waive any of the conditions to the Effective Date set forth in Article X.A of the Plan at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

## C.       Effect of Non-Occurrence of Conditions to Consummation

If the Effective Date does not occur, then the Plan will be null and void in all respects and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

# ARTICLE XI.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A.       Modification of Plan

Subject to the limitations and terms contained in the Plan, the Debtors reserve the right to (1) amend or modify the Plan before the entry of the Confirmation Order, in accordance with the Bankruptcy Code and the Bankruptcy Rules and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

## B.       Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications or amendments to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## C.       Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (1) the Plan will be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Classes

of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims or other Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases,  and other agreements or documents created in connection with the Plan; *provided* that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court;

7.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article IX of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) anything that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan and the Confirmation Order; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

13.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Entity's rights arising from or obligations incurred in connection with the Plan;

15.      hear and determine matters concerning local, state, federal, and foreign taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

16.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

17.      enforce all orders previously entered by the Bankruptcy Court; and

18.      hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or the Judicial Code.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

**A.      Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

**B.      Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.      Payment of Statutory Fees**

All fees and applicable interest payable pursuant to section 1930 of the Judicial Code and 31 U.S.C. § 3717, as applicable, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Distribution Agent on behalf of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**D.      Dissolution of Statutory Committees**

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

**E.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

### F.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each such Entity.

### G.      Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| **BlockFi Inc.**<br>21 Montgomery Street, Suite 263<br>Jersey City, New Jersey 07302 | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Joshua A. Sussberg, P.C., Christine Okike, P.C., and Francis Petrie<br><br>and<br><br>**Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attention: Alexander McCammon<br><br>and<br><br>**Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota, Esq. and Warren A. Usatine, Esq.<br><br>and<br><br>**Haynes and Boone, LLP**<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>Attention: Richard S. Kanowitz, Esq. and Kenric D. Kattner, Esq. |
| **United States Trustee** | |
| Office of The United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard<br>Suite 2100<br>Newark, NJ 07102 | |

### H.      Entire Agreement; Controlling Document

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan. Except as set forth in the Plan, in the event that any provision of the Plan Supplement, or any order (other

than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## I.      Plan Supplement

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims, Noticing, and Solicitation Agent at   https://cases.ra.kroll.com/BlockFi   or the Bankruptcy Court's website at http://www.njb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

## J.      Non-Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

## K.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties nor individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

## L.      Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, or papers Filed prior to the Confirmation Date.

Dated:  November 28, 2022          BLOCKFI INC.
                                   on behalf of itself and all other Debtors


                                   By: _____
                                   Zac Prince
                                   Chief Executive Officer
                                   BlockFi Inc.