**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (pro hac vice pending)
Christine A. Okike, P.C. (pro hac vice pending)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (pro hac vice pending)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

Order Filed on November 30, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

BLOCKFI INC., *et al*.,

Debtors.[1]

Chapter 11
Case No. 22-19361 (MBK)
(Joint Administration Requested)
**Hearing Date and Time:**

**ORDER PURSUANT TO 28 U.S.C. § 156(c) AND 11 U.S.C. § 105(a) FOR ENTRY OF AN ORDER AUTHORIZING THE APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT**
***NUNC PRO TUNC* TO THE PETITION DATE**

The relief set forth on the following pages, numbered two (2) through seven (7), is

hereby **ORDERED**.

**DATED: November 30, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A)); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

Page 2)

| Debtors: | BlockFi Inc. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE |

Upon the application (the "<u>Application</u>") of BlockFi Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), pursuant to section 156(c) of title 28 of the United States Code and section 105(a), for an order authorizing the appointment of Kroll Restructuring Administration LLC ("<u>Kroll</u>") as claims and noticing agent (the "<u>Claims and Noticing Agent</u>") in their chapter 11 cases, pursuant to the terms of the Engagement Agreement, *nunc pro tunc* to the Petition Date, as more fully set forth in the Application; and the Court having jurisdiction to decide the Application and the relief requested therein in accordance with 28. U.S.C. §§ 157(a)-(b) and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been given as provided in the Application, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Application need be provided; and the Court having held a hearing to consider the relief requested in the Application (the "<u>Hearing</u>"); and upon the *Declaration of Benjamin J. Steele, in Support of Debtors' Application Pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 105(a) for Entry of an Order Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date*, filed contemporaneously with the Application, and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application and granted herein is necessary and is in the best interests of the Debtors, their respective estates and creditors, and all parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

Debtors:                    BlockFi Inc.
Case No.                  22-19361 (MBK)
Caption of Order:        ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS
                              CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION
                              DATE

### IT IS HEREBY ORDERED THAT:

1.      The Application is **GRANTED** to the extent set forth herein.

2.      The Debtors are authorized to retain Kroll as Claims and Noticing Agent, *effective as of* the Petition Date, pursuant to the terms of the Engagement Agreement, in the form attached hereto as <u>Exhibit 1</u>, and Kroll is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

3.      Kroll shall serve as the custodian of Court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate of any and all proofs of claim upon the request of the Clerk.

4.      Kroll is authorized and directed to provide public access to every proof of claim unless otherwise ordered by the Court and to obtain a post office box or address for the receipt of proofs of claim.

5.      Kroll is authorized to take such other action to comply with all the duties set forth in the Application.

6.      Kroll is authorized to distribute notices from Ankura Trust Company, LLC ("<u>Ankura</u>"), as indenture trustee under that certain Indenture, dated as of April 14, 2022,  between BlockFi Inc. and Ankura, to US holders of BlockFi Inc.'s BlockFi Interest Account product at Ankura's reasonable request.

7.      The Debtors are authorized to compensate Kroll in accordance with the terms of the Engagement Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged therefor, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to

Page 4)
Debtors:    BlockFi Inc.
Case No.    22-19361 (MBK)
Caption of Order:  ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS
       CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION
       DATE

file fee applications or otherwise seek Court-approval for the payment of compensation for services rendered and reimbursement of expenses incurred.

  8.   Kroll shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any other party-in-interest that specifically requests service of the monthly invoices.

  9.   Parties shall have ten (10) days from receipt of the invoice to review such invoice and raise any objections, either formally through the filing of an objection with the Court or informally through a writing served on Kroll, to the fees and expenses being requested by Kroll. If an objection is interposed, the parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or Kroll's monthly invoices; provided that the parties may seek resolution of the matter from the Court if such efforts prove unsuccessful. If no objection has been raised, the Debtors are authorized to pay Kroll the full amount of the requested fees and expenses upon expiration of the ten (10) day review without further order of the Court. If an objection has been raised, the Debtors may not pay the objected to amount pending agreement of the parties or entry of an order of this Court authorizing payment.

  10.  Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates. Kroll may apply its advance to all pre-petition invoices, which advance shall be replenished to the original advance amount, and, thereafter, Kroll may hold its advance during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

  11.  The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

Page 5)
Debtors:              BlockFi Inc.
Case No.              22-19361 (MBK)
Caption of Order:     ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS
                      CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION
                      DATE

12.      Kroll shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

13.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Kroll, or provide contribution or reimbursement to Kroll , for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Kroll 's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Kroll's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Kroll should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified by this Order.

14.      If, before the earlier of the entry of an order (i) confirming a chapter 11 plan in these chapter 11 cases (that determination having become final) or (ii) closing these chapter 11 cases, Kroll believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement, as modified by this Order, including the advancement of defense costs, Kroll must file an application therefor in this Court, and the Debtors may not pay any such amounts to Kroll before the entry of an order of this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Kroll for indemnification,

Page 6)
Debtors:            BlockFi Inc.
Case No.            22-19361 (MBK)
Caption of Order:   ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS
                    CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION
                    DATE

contribution, or reimbursement and is not intended to limit the duration of the Debtors' obligation to indemnify Kroll. All parties-in-interest shall retain the right to object to any demand by Kroll for indemnification, contribution, or reimbursement.

15.     In the event Kroll is unable to provide the services set out in this Order, Kroll immediately shall notify the Clerk and counsel for the Debtors and, upon approval of the Court, shall cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and counsel for the Debtors.

16.     The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

17.     Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 6 thereof, by this Order the Court is not authorizing Kroll to establish accounts with financial institutions on behalf of the Debtors.

18.     Notwithstanding anything to the contrary contained in the Engagement Agreement, the 1.5% late charge in paragraph 2(c) of the Engagement Agreement shall not be assessed during the bankruptcy case.

19.     Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 15 thereof, the Court shall have exclusive jurisdiction over Kroll's engagement during the pendency of these chapter 11 cases and the Arbitration clause shall have no force or effect during the pendency of these Chapter 11 Cases.

20.     Notwithstanding anything to the contrary contained in the Engagement Agreement, including paragraph 2(h) thereof, Kroll shall provide at least ten (10) days' notice of any increases in its billing rates, subject to the parties-in-interest's right to object to any such increases.

Page 7)
Debtors:             BlockFi Inc.
Case No.             22-19361 (MBK)
Caption of Order:    ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS
                     CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION
                     DATE

21.     The Debtors may submit a separate retention application, pursuant to Section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Kroll but that is not specifically authorized by this Order.

22.     Kroll shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court.

23.     In the event of any inconsistency between the Engagement Agreement and Order, this Order shall govern.

24.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

25.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

26.     The requirements of Bankruptcy Rule 6004(a) are waived.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

28.     Any party may move for modification of this Order in accordance with D.N.J. LBR 9013-5(e).

29.     A true copy of this Order shall be served on all required parties pursuant to D.N.J. LBR 9013-5(f).

30.     The Debtors and Kroll are authorized to take all action necessary to carry out this Order.

31.     This Court shall retain jurisdiction to hear and determine all matters arising from or

Page 8)

| Debtors: | BlockFi Inc. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' APPLICATION TO RETAIN KROLL AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE |

related to the implementation, interpretation, and/or enforcement of this Order.

## EXHIBIT 1

**Kroll Engagement Agreement**



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of November 15, 2022 between Kroll Restructuring Administration LLC ("**Kroll**") and BlockFi Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**").  The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $150,000.  Kroll may use such advance against unpaid fees and expenses hereunder.  Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.   Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.   Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5.  **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

6.  **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Kroll's agreement with financial institutions, Kroll may receive compensation from such institutions for the services Kroll provides pursuant to such agreement.

7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d)  If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.  **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

    (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)  Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)  The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

    (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

    (a)  The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)  The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

    (c)  Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention; provided, however, that any solicitation in the form of a general advertisement or solicitation program shall not be a violation of the foregoing.

## 13. Force Majeure

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.



16. **Integration; Severability; Modifications; Assignment**

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

18. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC |
|  | 55 East 52nd Street, 17th Floor |
|  | New York, NY 10055 |
|  | Attn:    Legal Department |
|  | Tel:     (212) 257-5450 |
|  | Email:   Legal@kbs.kroll.com |
| If to the Company: | BlockFi Inc. |
|  | 201 Montgomery Street |
|  | Second Floor, Suite 263 |
|  | Jersey City, New Jersey 07302 |
|  | Attn: Legal Department |
|  | Email: legal@blockfi.com |



With a copy to:          Haynes Boone, LLP
                         30 Rockefeller Plaza 26th Floor
                         New York, NY  10112
                         Attn:    Richard S. Kanowitz
                         Tel:      (212) 918-8971
                         Email:   Richard.Kanowitz@haynesboone.com



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:   Shira Weiner

Title:  General Counsel

**BlockFi Inc.**

By:   Zac Prince

Title: Chief Executive Officer



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
| --- | --- |
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience. | $65 - $195 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# RATES

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

### Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | No charge |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

*Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.*

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

| | |
|---|---|
| On-line claim filing | No charge |

### Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services & Securities Eligibility Services

| | |
|---|---|
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106