**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>          Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br><br>**HEARING DATE AND TIME:**<br>**January 9, 2023, at 10:00 a.m. (EST)**<br><br>**ORAL ARGUMENT WAIVED UNLESS**<br>**OBJECTIONS TIMELY FILED** |

**NOTICE OF HEARING OF DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) HONOR WITHDRAWALS**
**FROM WALLET ACCOUNTS, (B) UPDATE THE USER INTERFACE TO PROPERLY**
**REFLECT TRANSACTIONS AND ASSETS AS OF THE PLATFORM PAUSE, AND (C) CONDUCT**
**ORDINARY COURSE RECONCILIATION OF ACCOUNTS, AND (II) GRANTING RELATED RELIEF**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* (the "Wallet Withdrawal Motion") will be held on **January 9, 2023 at 10:00 am (prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "Hearing") before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608.

**PLEASE TAKE FURTHER NOTICE** that the Wallet Withdrawal Motion sets forth the relevant factual bases upon which the relief requested should be granted.  A proposed Order granting the relief requested in the Wallet Withdrawal Motion is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that Objections, if any, to the relief requested in the Wallet Withdrawal Motion shall:  (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received on or before **January 2, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the Wallet Withdrawal Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Kroll Restructuring Administration, LLC at https://restructuring.ra.kroll.com/blockfi.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: December 19, 2022

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) HONOR**
**WITHDRAWALS FROM WALLET ACCOUNTS, (B) UPDATE THE USER**
**INTERFACE TO PROPERLY REFLECT TRANSACTIONS AND ASSETS**
**AS OF THE PLATFORM PAUSE, AND (C) CONDUCT ORDINARY COURSE**
**RECONCILIATION OF ACCOUNTS, AND (II) GRANTING RELATED RELIEF**

TO:    THE    HONORABLE    CHIEF    JUDGE    MICHAEL    B.    KAPLAN

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state the following in support of this motion (the "Motion"):[2]

### Preliminary Statement

1.      The Debtors have always prioritized doing right by their clients.  At its core, this
means respecting the terms of service governing the relationship between the Debtors and their
clients.  Through this motion, the Debtors seek to do just that, by permitting clients to access digital
assets that are owned by them and were held in their Wallet Accounts on BlockFi's platform as of
the Platform Pause (each as defined below).  The BlockFi Wallet Terms of Service are clear.  They
provide that "***title to the cryptocurrency held in your BlockFi Wallet shall at all times remain
with you and shall not transfer to BlockFi***."[3]  The Debtors have no legal or equitable interest in
cryptocurrency that was present in the Wallet Accounts as of Platform Pause, and clients should
be able to withdraw such assets from the platform if they choose.

2.      The Debtors also seek to reconcile and adjust the User Interface (as defined below)
to reflect the proper accounting of digital assets in the Wallet Accounts in connection with certain
attempted transactions that took place following the Debtors' decision to pause all platform activity
so that all clients are treated fairly.  As described more fully in the First Day Declaration, the
Debtors were subject to substantial exposure to FTX through the FTX Loan Agreement and FTX
Option Agreement, as well as loans that the Debtors made to Alameda Research Ltd.  Upon news
of FTX's bankruptcy filing, the Debtors recognized that they could not operate their business as
usual, and took swift, decisive action to protect their clients' interests and ensure equality of

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the
*Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 17]
(the "First Day Declaration").

[3]     BlockFi Wallet Terms of Service, https://blockfi.com/wallet-terms (emphasis added).

treatment among similarly situated clients. Chief among these measures was the pause of account withdrawals as permitted under the Debtors' Terms of Service (the "Platform Pause"), which was publicly announced via the Debtors' Twitter account and implemented on the evening of November 10, 2022 at 8:15 p.m. (prevailing Eastern Time) (the "Platform Pause Time Stamp"). On November 11, 2022, FTX began filing for chapter 11 bankruptcy in the District of Delaware[4] and the Debtors published an update on their website and emailed all clients alerting them to the fact that the Debtors were limiting platform activity.[5]

3.     The Platform Pause took effect the moment of the Platform Pause Time Stamp. Thereafter, a client's ability to effectuate a withdrawal, transfer, or trade on the platform was terminated in an effort to maintain the status quo for all clients' digital assets held on the platform as of the Platform Pause Time Stamp. In accordance with the Platform Pause, the Debtors immediately (a) ceased to record transactions in the U.S. Wallet Ledger and International Wallet Ledger and (b) discontinued the ongoing daily true-ups of the WLLC FBO Wallets, the International Vault Wallets, the U.S. Wallet Ledger, and the International Wallet Ledger (each as defined below), and ceased making digital asset transfers in connection therewith. Simply put, the Debtors' clients were unable to, and did not, effectuate any transactions on the BlockFi platform beginning the moment of the Platform Pause Time Stamp.

4.     As part of the Debtors' ordinary course of business, clients are able to view their account balances (e.g., the balance in their Wallet Account) and use various product offerings through the Debtors' client-facing web-based user interface system (the "User Interface"). Although the Platform Pause was effective as of the Platform Pause Time Stamp, it took the

---

[4]     @SBF_FTX, Twitter (Nov 11, 2022).

[5]     November 11, 2022 BlockFi Update (Nov. 11, 2022), https://blockfi.com/november-11-2022-blockfi-update.

Debtors a period of time to disable the client-facing transactional functionality of the User Interface (*i.e.*, a client's ability to enter transaction requests). Specifically, with respect to the requested client withdrawals and trades, it took the Debtors approximately five hours to fully disable such functionality on the User Interface between the Platform Pause Time Stamp and 1:15 a.m. (prevailing Eastern Time), on November 11, 2022 (the "Initial Pause Period"). With respect to transfers from BlockFi interest bearing accounts ("BIA") to the Wallet Accounts and transfers from the Wallet Accounts to BIAs, it took the Debtors up to eight days to fully disable transfer functionality on their web-based platform, iOS mobile application, and Android mobile application (the "Secondary Pause Period" and, together with the Initial Pause Period, the "Platform Pause Period").

5.      During the Platform Pause Period, a number of clients continued to attempt to enter transactions on the User Interface with respect to the digital assets in their Wallet Accounts. While the Debtors had immediately frozen all platform activity at the Platform Pause Time Stamp, the User Interface continued to improperly reflect the completion of the Attempted Platform Pause Transactions (as defined below) that were attempted during the Platform Pause Period. Accordingly, following the Platform Pause the User Interface does not properly reflect the actual digital assets that are in the Wallet Accounts and recorded on the U.S. Wallet Ledger and International Wallet Ledger as of the Platform Pause Time Stamp.

6.      As more fully described herein, the attempted transactions that occurred during the Platform Pause Period included the below (collectively, the "Attempted Platform Pause Transactions"):

    (a)      ***Pending Withdrawals***. Clients requested the withdrawal of digital assets from their Wallet Accounts;

    (b)      ***Attempted BIA to Wallet Transfers***. Clients attempted to transfer digital assets from their BIA into their Wallet Accounts;

(c)    ***Attempted Wallet to BIA Transfers***.  Clients attempted to transfer digital assets from their Wallet Accounts into their BIAs;

(d)    ***Pending Trades***.  Clients requested the purchase, sale, or trade of digital assets using their Wallet Account assets; and

(e)    ***Attempted Posting of Loan Collateral***.  Clients attempted to post loan collateral using their Wallet Account assets.

7.    But none of the Attempted Platform Pause Transactions actually took place. Accordingly, in connection with the Debtors' reconciliation efforts, the Debtors request authority to update the User Interface to properly reflect each Client's balance in their Wallet Accounts as of the Platform Pause Time Stamp.  This would be accomplished by deleting each Attempted Platform Pause Transaction from the User Interface.

8.    For the avoidance of doubt, the Debtors do not seek to reverse any client deposits from outside the platform into Wallet Accounts which were received following the Platform Pause Time Stamp.  Substantially contemporaneously with the Platform Pause, the Debtors caused a notice of the Platform Pause to be delivered to their clients, which advised them to discontinue depositing funds into their Wallet Accounts.  Notwithstanding this notice, certain clients *deposited* additional and new funds into their Wallet Accounts.

9.    If the relief requested herein is approved, clients who chose to deposit new funds from outside the platform into their Wallet Accounts following the Platform Pause Time Stamp will also have the ability to withdraw such funds in the ordinary course.

**Relief Requested**

10.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) authorizing the Debtors to (i) honor client withdrawals solely from the Wallet Accounts as of the Platform Pause Time Stamp,[6] (ii) update the User Interface to

---

[6]    With respect to withdrawal requests of the clients of BlockFi International, the Debtors request the authority to

5

properly reflect transactions and assets held in clients' accounts as of the Platform Pause Time Stamp, and (iii) conduct ordinary course reconciliation of client accounts, and (b) granting related relief.

### Jurisdiction and Venue

11.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The bases for the relief requested herein are sections 541, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

### Background

14.     On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 42].  The Debtors are operating their business and

---

honor withdrawal requests from the International Vault Wallet (as defined herein) subject to entry of an order authorizing such withdrawals in the parallel joint provisional liquidation proceedings (the "Bermuda JPL Proceedings") currently pending in the Supreme Court of Bermuda, together with related relief of the same or substantially similar nature as sought in this Motion.

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

### The Wallet Accounts

15.    The Debtors provide Wallet Accounts for domestic and international clients. BlockFi U.S. clients have the ability to store digital assets by opening accounts provided by Debtor BlockFi Trading LLC ("BlockFi Trading"), which are maintained by Debtor BlockFi Wallet LLC ("BlockFi Wallet"), on behalf of BlockFi Trading, "for the benefit of" the clients of BlockFi Trading (each, a "WLLC FBO Wallet").  Similarly, BlockFi international clients have the ability to store digital assets by opening accounts provided by Debtor BlockFi International Ltd. ("BlockFi International"), which are maintained by BlockFi International "for the benefit of" the clients of BlockFi International (each, an "International Vault Wallet,"[7] and together with the WLLC FBO Wallets, the "Wallet Accounts," and each individually, a "Wallet Account").

16.    A Wallet Account can be funded either:  (a) by transferring supported digital assets from an external personal wallet to a wallet address provided by BlockFi Trading or BlockFi International, as applicable, which will then immediately record the digital assets to the Wallet Account; or (b) by transferring U.S. dollar fiat currency via wire or ACH to BlockFi Trading's account at Silvergate Bank,[8] which is used to purchase supported digital assets immediately recorded in the Wallet Account.[9]

---

[7]    Until recently, BlockFi Wallet maintained wallet accounts on behalf of BlockFi International "for the benefit of" the clients of BlockFi International (the "International FBO Wallet") per the BlockFi Wallet Terms of Service. In connection with offering international clients the ability to store Trade-Only Assets (as defined below) in their Wallet Accounts, prior to the Petition Date, the digital assets in the International FBO Wallet were transferred from the International FBO Wallet to a separate, non-interest bearing, segregated vault account labeled the "No Sweep BFI (NIA)," which is maintained by BlockFi International for the benefit of the clients of BlockFi International.

[8]    Once a client transfers funds to BlockFi Trading's account at Silvergate Bank, BlockFi Trading then allocates

17.    Wallet Accounts are non-interest bearing, and the cryptocurrency held in a Wallet Account is *not* rehypothecated for the Debtors' lending activities.  Instead, all cryptocurrency recorded in the Wallet Accounts is held by BlockFi Wallet "for the benefit of" the clients of BlockFi Trading for U.S. clients, or by BlockFi International "for the benefit of" the clients of BlockFi International for international clients.  The digital assets in the Wallet Accounts are held through internal custodial solutions, such as those provided by Fireblocks or BitGo, or third party custodians.  The WLLC FBO Wallets and International Vault Wallets do not belong to and are not assets of BlockFi.  Instead, the WLLC FBO Wallets and International Vault Wallets are pooled custodial accounts that allow BlockFi Trading or BlockFi International, as applicable, to store digital assets on behalf of, or "for the benefit of," their clients without BlockFi Trading or BlockFi International ever assuming legal ownership of such accounts.  Only cryptocurrency recorded in Wallet Accounts is held in WLLC FBO Wallets or International Vault Wallets—there is no commingling of this cryptocurrency with assets used in the other BlockFi programs.

18.    A Wallet Account can be used by retail clients in connection with BlockFi's other products and services.  For example, after opening a Wallet Account, clients had the ability to, among other things, (a) direct the transfer of cryptocurrency recorded in their Wallet Account to an interest earning account (for non-U.S. clients), (b) buy and sell cryptocurrency on BlockFi's platform, (c) direct transfers of cryptocurrency or fiat cash to the client's external personal account, and (d) receive digital asset rewards through a BlockFi Rewards Visa® Signature Card.[10]

---

such funds to the appropriate U.S. Wallet Accounts and International Wallet Accounts.

[9]    The exception to this is residents of New York who have a crypto-backed loan but who do not have a BlockFi Wallet account because Wallet Accounts are not available in the state of New York.

[10]    BlockFi Rewards Visa® Signature Card is available for U.S. clients only.

8

19.    All transactions involving Wallet Accounts are reflected in the ledger for U.S. clients (the "U.S. Wallet Ledger") or in the ledger for international clients (the "International Wallet Ledger"). Each business day, the WLLC FBO Wallets, the International Vault Wallets, the U.S. Wallet Ledger, and the International Wallet Ledger are trued-up and any necessary transfers of cryptocurrency to or from the WLLC FBO Wallet or International Vault Wallet are made to bring the WLLC FBO Wallet or the International Vault Wallet and the U.S. Wallet Ledger and the International Wallet Ledger into balance to reflect all Wallet Account transactions. BlockFi Wallet, on behalf of the clients of BlockFi Trading, and BlockFi International, on behalf of the clients of BlockFi International, each maintain these strict controls to ensure compliance with the BlockFi Wallet Terms of Service, attached hereto as **Exhibit B**, which provide that:

> ***The title to the cryptocurrency held in your BlockFi Wallet shall at all times remain with you and shall not transfer to BlockFi.*** You hereby represent and warrant to us at all times during which you maintain a balance in your BlockFi Wallet that: (i) any cryptocurrency that you transferred into your BlockFi Wallet is owned by you at the time of transfer; and (ii) you are validly authorized to instruct us to carry out transactions relating to your BlockFi Wallet balance and that all transactions initiated with your BlockFi Wallet are for your own account (or, in the case of business accounts, for your business's account) and not on behalf of any other person or entity. Except as required by a valid court order or applicable law, **BlockFi shall not sell, transfer, loan, hypothecate or otherwise alienate cryptocurrency held in your BlockFi Wallet unless specifically instructed by you.[11]**

The BlockFi Wallet Terms of Service further provide that:

> You may make a request for a complete or partial withdrawal of cryptocurrency from your BlockFi Wallet at any time with appropriate time notice as stated above . . . **BlockFi initiates the withdrawal process instantly when possible,**

---

[11]    BlockFi Wallet Terms of Service, https://blockfi.com/wallet-terms (emphasis added).

**and we may require up to seven (7) days after you submit your withdrawal request to process the withdrawal.**[12]

20.       While title to cryptocurrency held in Wallet Accounts does not pass to the Debtors, the Terms of Service do grant the Debtors a security interest in the cryptocurrency held in Wallet Accounts to secure any obligations a client may have in connection with other BlockFi services and products.

### Wallet Account Withdrawals, Reconciliation, and Attempted Platform Pause Transactions

21.       By the motion, the Debtors seek authority to: (a) honor client withdrawals solely from the Wallet Accounts as of the Platform Pause Time Stamp, (b) update the User Interface to properly reflect transactions and assets held in clients' accounts as of the Platform Pause Time Stamp, and (c) conduct ordinary course reconciliation in respect of the Wallet Accounts.

22.       ***Withdrawals***.  In the ordinary course of business, the Debtors' clients can request the transfer of digital assets reflected in their Wallet Account to an external private wallet.  Clients can also request to transfer the notional value of stablecoin reflected in their Wallet Account, which can be traded for U.S. Dollar for purposes of withdrawal, subject to the ordinary withdrawal fees under the BlockFi Wallet Terms of Service.  When a client requests the transfer of digital assets to a private wallet, the pending transfer is immediately reflected in their Wallet Account and in the U.S. Wallet Ledger or International Wallet Ledger.

23.       Certain clients may have "trade-only" digital assets in their Wallet Accounts, meaning that such assets are only available for buying, selling and holding within the Debtors' platform (the "Trade-Only Assets").  Withdrawals of the Trade-Only Assets are not available on the Debtors' platform.  Accordingly, to ensure the equal treatment among the Debtors' clients and

---

[12]     BlockFi Wallet Terms of Service, https://blockfi.com/wallet-terms (emphasis added).

enable the Debtors to honor client withdrawals of the Trade-Only Assets from the Wallet Accounts, the Debtors request authority to dollarize the Trade-Only Assets that are requested to be withdrawn as soon as reasonably practicable following such a withdrawal request so that clients will receive the cash equivalent of their Trade-Only Assets, subject to the ordinary withdrawal fees under the BlockFi Wallet Terms of Service.

24.     ***The Attempted Platform Pause Transactions.***  The Debtors further seek authority to update the User Interface so that it properly reflects platform activity as of the Platform Pause Time Stamp.  This would be accomplished by deleting each Attempted Platform Pause Transaction from the User Interface.

25.     As described above, the Attempted Platform Pause Transactions occurred during the Platform Pause Period.  There are five categories of Attempted Platform Pause Transactions, as follows:

26.     <u>Pending Withdrawals</u>.  During the Platform Pause Period, certain clients attempted to withdraw assets from their Wallet Accounts.  As of the date hereof, there are approximately $291,673,009 of pending client withdrawals from Wallet Accounts (the "<u>Pending Withdrawals</u>"). Because such withdrawals were requested after the Platform Pause Time Stamp, the Debtors request authority to delete the Pending Withdrawals so that the User Interface properly reflects the digital assets contained in the Wallet Accounts as of the Platform Pause Time Stamp.  Permitting the Debtors to delete the Pending Withdrawals will allow the Debtors' clients to resubmit their withdrawals requests and update their external wallet addresses as may be necessary, thereby (a) preventing the Debtors' inadvertent transmission of digital assets to incorrect client wallets (where exchanges may no longer exist) and (b) limiting potential fraud resulting from the over-one-month lapse between withdrawals requests and the execution of such withdrawals.

27.    <u>Attempted BIA to Wallet Transfers</u>.  During the Platform Pause Period, certain clients attempted to transfer assets from BIAs to their Wallet Accounts (the "<u>Attempted BIA to Wallet Transfers</u>").  As of the date hereof, there are approximately $375,004,761 worth of digital assets that were requested to be transferred from clients' BIAs to their Wallet Accounts.  The Debtors request authority to delete the Attempted BIA to Wallet Transfers so that the User Interface properly reflects the digital assets contained in the Wallet Accounts as of the Platform Pause Time Stamp.  This will maintain the status quo as of the Platform Pause Time Stamp and ensure that all clients are treated equally.

28.    <u>Attempted Wallet to BIA Transfers</u>.  During the Platform Pause Period, certain clients attempted to transfer digital assets from their Wallet Accounts to their BIAs (the "<u>Attempted Wallet to BIA Transfers</u>").  As of the date hereof, there are approximately $7,423,926 worth of digital assets that were requested to be transferred from clients' Wallet Accounts to their BIAs.  The Debtors request authority to delete the Attempted Wallet to BIA Transfers so that the User Interface properly reflects the digital assets contained in the Wallet Accounts as of the Platform Pause Time Stamp.  This will maintain the status quo as of the Platform Pause Time Stamp and ensure that all clients are treated equally.

29.    <u>Pending Trades</u>.  During the Platform Pause Period, numerous clients attempted to engage in trading activity by either (a) selling the digital assets reflected in their Wallet Account for cash and/or stablecoin, or (b) purchasing digital assets using the cash and/or stablecoin balance in their Wallet Account (the "<u>Pending Trades</u>").  As of the date hereof, there is approximately $3,011,275 of Pending Trades that were initiated, but never effectuated, during the Platform Pause Period.  The Debtors request authority to delete the Pending Trades so that the User Interface properly reflects the digital assets contained therein as of the Platform Pause Time Stamp.

30.    <u>Attempted Posting of Loan Collateral</u>.   During the Platform Pause Period, numerous clients attempted to post some or all of the assets in their Wallet Accounts as collateral for certain loans that they have with the Debtors.   As of the date hereof, clients attempted to post approximately $868,843 in digital assets as loan collateral during the Platform Pause Period.   The Debtors request authority to delete the Attempted Posting of Loan Collateral so that the User Interface properly reflects the digital assets posted as collateral as of the Platform Pause Time Stamp.

31.    ***Ordinary Course Reconciliation.***   To ensure that clients are able to accurately access the digital assets contained in their Wallet Accounts, the Debtors also seek authority to continue to engage in various ordinary course reconciliatory practices related to client accounts, including, but not limited to, (i) reconciling digital asset and ACH deposits and withdrawals that currently hold an incomplete status, (ii) reconciling withdrawals of digital assets that were submitted prior to the Platform Pause Time Stamp, (iii) reconciling and fulfilling partially filled orders to buy or sell digital assets and otherwise canceling all open orders that were not filled or partially filled prior to the Platform Pause Time Stamp, (iv) reconciling closed accounts that no longer have a balance to disable user access to the Debtors' platform, (v) recovering client withdrawn or deposited funds that were sent to incorrect blockchains, and (vi) closing unfunded accounts that the Debtors deem fraudulent.

32.    The foregoing reconciliatory practices are primarily accounting related in nature and are commonplace in technology-focused platforms similar to the Debtors' platform.   The reconciliatory practices are also necessary to correctly reconcile client balances to ensure that client balances properly reflect all trading and transfer activity that took place prepetition.   Without the ability to reconcile the Wallet Accounts, one client could artificially benefit to the detriment of

others.  Accordingly, the Debtors seek authority to continue their ordinary course reconciliation efforts related to client accounts to promote the necessary functions that ensure the Debtors are able to provide their clients with access to the digital assets held in Wallet Accounts as of the Platform Pause Time Stamp.

**Basis for Relief**

**I.      Digital Assets Held in the Wallet Accounts Are Not Property of the Debtors' Estates and Should Be Returned to Clients.**

33.      Section 541 of the Bankruptcy Code generally provides that all property in which a debtor has a legal or equitable interest, including any interest in property that a debtor acquires postpetition, becomes property of the estate upon the commencement of a chapter 11 case. 11 U.S.C. § 541(a)(1), (a)(7).  Importantly, section 541 of the Bankruptcy Code does not by itself create new legal or equitable interests in property; instead, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54–55 (1979) (noting that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law").  Indeed, Congress was clear that section 541(a)(1) of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they existed at the commencement of the case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367–68 (1977); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (holding that the "rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less").  Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under section 541 and the debtor is prohibited from distributing such property to its creditors.  *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962) ("The Bankruptcy Act simply does not authorize a [debtor] to distribute other people's

14

property among a bankrupt's creditors . . . [S]uch property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.").

34.     Further, courts have interpreted section 541(d) to provide "expressly" that "property in which a debtor holds only bare legal title is not property of the estate." *Golden v. Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *see also In re S.W. Bach & Co.*, 435 B.R. 866, 878 (Bankr. S.D.N.Y. 2010) (holding that property held in trust, escrow, or as part of bailment is not property of the estate).  When a debtor holds legal title to but does not have equitable interest in certain property, the debtor must turn such property over to the holders with such equitable interest in the property.  *See MCZ, Inc. v. Andrus Res., Inc.* (*In re MCZ, Inc.*), 82 B.R. 40, 42 (Bankr. S.D. Tex. 1987) ("[w]here Debtor merely holds bare legal title to property as agent or bailee for another, Debtor's bare legal title is of no value to the estate, and Debtor should convey the property to its rightful owner." (citations omitted)).  A debtor who holds proceeds attributable to property owned by another holds only bare legal title to such property, and thus must turnover such proceeds to the interest holder of such property.  *See, e.g.*, *In re Columbia Pac. Mortg., Inc.*, 20 B.R. 259, 262–64 (Bankr. W.D. Wash. 1981) (awarding holder of participation ownership interest proceeds of a property sale because holder was beneficial owner, and debtor only held legal title to the proceeds).

35.     By the BlockFi Wallet Terms of Service, the Debtors do not have legal or equitable title to the digital assets held for the benefit of the Debtors' clients in the Wallet Accounts.  As described above, the BlockFi Wallet Terms of Service explicitly provide that, "[t]he title to the cryptocurrency held in [a Client's] BlockFi Wallet shall at all times remain with [the Client] and shall not transfer to BlockFi."  The Supreme Court has held that property held by debtors for a third party (such as funds held on account of a resulting trust) is not property of the estate.

15

*Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (noting that "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition" from the bankruptcy estate). Further, courts have held that property over which the debtor is merely exercising some "power ... solely for the benefit of an entity other than the debtor" is not property of the estate. *In re S.W. Bach & Co.*, 435 B.R. at 878. Thus, any property held by the Debtors on account of the Wallet Accounts is not property of the Debtors' estates.

36.     Because the Debtors do not have a legal or equitable interest in the digital assets held in the Wallet Accounts as of the Platform Pause Time Stamp, the Debtors should be permitted to honor withdrawal requests under the parameters described in this Motion. The authority to satisfy withdrawals from Wallet Accounts verifies the Debtors' position that client assets held in Wallet Accounts as of the Platform Pause Time Stamp are properly client property. These funds held in the Wallet Accounts as of the Platform Pause Time Stamp are owned by clients, not the Debtors, and therefore none of the Debtors' creditors will be prejudiced by the relief requested herein. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to satisfy their obligations to clients on account of withdrawals from those assets held in the Wallet Accounts as of the Platform Pause Time Stamp.

## II.     Updating the User Interface and Conducting Ordinary Course Reconciliation of Accounts are Authorized under Sections 1107(a) and 1108 of the Bankruptcy Code.

37.     The Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of

chapter 11 debtors in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

38.    Properly reflecting the fact that the Attempted Platform Pause Transactions did not actually occur is a matter of administrative cleanup necessary for the User Interface to properly reflect transactions on the Debtors' platform as of the Platform Pause Time Stamp.   Such reconciliation efforts ensure the Debtors' platform runs smoothly, efficiently, and that transactions and assets are accurately accounted for.   These practices are also necessary to ensure that all client balances properly reflect the trading and transfer activity that took place prior to the Platform Pause so that clients are not artificially advantaged or disadvantaged by improper reconciliation of their accounts.   If the Debtors are not able to reconcile the Attempted Platform Pause Transactions, the Debtors will not be able to satisfy client withdrawals from Wallet Accounts, as the amounts presently displayed on the User Interface for the Wallet Accounts do not properly reflect activity as of the Platform Pause Time Stamp.   Therefore, the Debtors submit that the relief requested is necessary to ensure the Debtors can carry out their duties under sections 1107(a) and 1108 of the Bankruptcy Code.

## **Waiver of Memorandum of Law**

39.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## **Reservation of Rights**

40.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to

dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Notice**

41.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e)  the United States Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

18

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: December 19, 2022

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date and Time:** |

### ORDER (I) AUTHORIZING THE DEBTORS TO (A) HONOR WITHDRAWALS FROM WALLET ACCOUNTS, (B) UPDATE THE USER INTERFACE TO PROPERLY REFLECT TRANSACTIONS AND ASSETS AS OF THE PLATFORM PAUSE, AND (C) CONDUCT ORDINARY COURSE RECONCILIATION OF ACCOUNTS, AND (II) GRANTING RELATED RELIEF

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The relief set forth on the following pages, numbered three (3) through six (6), is **ORDERED**.

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to (i) honor client withdrawals solely from the Wallet Accounts as of the Platform Pause Time Stamp, (ii) update the User Interface to properly reflect transactions and assets held in clients' accounts as of the Platform Pause Time Stamp, and (iii) conduct ordinary course reconciliation of client accounts, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the declaration filed in support of the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption: | Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief |

the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY**

**ORDERED THAT**:

1.      The Motion is **GRANTED** on a basis as set forth herein.

2.      The Debtors are authorized to honor client withdrawal requests solely from the Wallet Accounts as of the Platform Pause Time Stamp in accordance with the BlockFi Wallet Terms of Service; *provided, however,* that the withdrawal requests of the BlockFi International clients from the International Vault Wallets shall be honored subject to entry of an order authorizing such withdrawals in the parallel Bermuda JPL Proceedings currently pending in the Supreme Court of Bermuda.  For the avoidance of doubt, all complete or partial withdrawals from the Wallet Accounts, including Trade-Only Assets, shall be subject to the ordinary withdrawal fees provided for under the BlockFi Wallet Terms of Service and the cost of facilitating the withdrawals shall be mitigated insofar as reasonably practicable by the Debtors.

3.      The Debtors are authorized to dollarize the Trade-Only Assets as soon as reasonably practicable after a client makes a withdrawal request of such Trade Only Assets. Withdrawal of the Trade-Only Assets of BlockFi International shall be conducted subject to entry of an order authorizing such withdrawals in the parallel Bermuda JPL Proceedings currently pending in the Supreme Court of Bermuda.

4.      The Debtors are authorized to take any actions reasonably necessary to accurately reflect that the Attempted Platform Pause Transactions did not actually occur, so that the User Interface properly reflects the digital assets in the Wallet Accounts as of the Platform Pause Time Stamp.  With respect to Attempted Platform Pause Transactions for BlockFi International, this

(Page | 5)
Debtors:      BLOCKFI INC., *et al.*
Case No.:     22-19361 (MBK)
Caption:      Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet
              Accounts, (B) Update the User Interface to Properly Reflect Transactions and
              Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation
              of Accounts, and (II) Granting Related Relief

shall be carried out subject to entry of an order authorizing such relief in the parallel Bermuda JPL

Proceedings currently pending in the Supreme Court of Bermuda.

5.    The Debtors are authorized to conduct reconciliatory practices in the ordinary

course consistent with prepetition practices.  Reconciliatory practices for BlockFi International

shall be carried out subject to entry of an order authorizing such relief in the parallel Bermuda JPL

Proceedings currently pending in the Supreme Court of Bermuda.

6.    Notwithstanding the actual or threatened suspension or termination of any

transmission licenses by any U.S. state or governmental entity, any transfers or disbursements

made pursuant to this Order shall not be deemed an implication, admission, or determination that

the Debtors are operating with a suspended or terminated license, nor shall the Debtors or their

insurance providers be liable for any associated fines or penalties, including, but not limited to,

penalties related to the Arch Insurance Company money transmitter bonds or otherwise.

7.    Notwithstanding the relief granted in this Order and any actions taken pursuant to

such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any

particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular

claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication

or admission that any particular claim is of a type specified or defined in this Order or the Motion;

(e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365

of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy

Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual,

common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors

(Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No.: | 22-19361 (MBK) |
| Caption: | Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief |

expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit B**

**BlockFi Wallet Terms of Service**

On November 28, 2022, BlockFi filed voluntary cases under Chapter 11 of the U.S. Bankruptcy Code. Additional information about our filing can be found on our blog here.

 

 **Wallet Terms**

WALLET TERMS

# Wallet Terms

**BlockFi Wallet Terms (New)**

**INTRODUCTION**

Welcome to BlockFi. Our BlockFi Wallet is a non-interest-bearing crypto account that allows you to hold, transfer and manage your cryptocurrency held in your account. Please read and keep these BlockFi Wallet Terms ("Wallet Terms"). If you need a physical copy of these Wallet Terms or if you have any questions, you can submit a support ticket here or visit blockfi.com. These Wallet Terms are incorporated by reference into the BlockFi Terms of Service found here: https://blockfi.com/terms/

**OUR RELATIONSHIP**

In these Wallet Terms, holders of a BlockFi Wallet, including owners, employees, agents and affiliates of any business, corporation, partnership or other entity that is, or is considering becoming, an account holder are sometimes referred to in the Wallet Terms as "you" or "your." The provider of the BlockFi Wallet, which for U.S clients is BlockFi Trading LLC and for non-U.S clients is BlockFi International Ltd., a Bermuda exempted company which holds a Class F (full) license from the Bermuda Monetary Authority to conduct digital assets business, is referred to as "BlockFi," "we," "us" or "our" in these Wallet Terms. Together, you and we may be collectively referred to as "Parties."

**ACCEPTANCE OF TERMS**

By opening a BlockFi Wallet, you agree that the terms and conditions contained in these Wallet Terms, as modified from time to time, will govern your BlockFi Wallet. We reserve the right to

update these Wallet Terms at any time and may notify you of such changes via the Website or by email at the address specified on your account application, but we have no obligation to notify you of every update.

## A. Opening a BlockFi Wallet

1. Anyone residing in a jurisdiction where we offer a BlockFi Wallet and who is at least eighteen (18) years old can apply to open a BlockFi Wallet.  BlockFi Wallet can be opened at blockfi.com, the BlockFi app or by contacting us here. All crypto received will initially be transferred to an account at one of BlockFi's or its affiliates' institutional custodians. If you are a U.S client, your BlockFi Wallet will be opened and maintained by BlockFi Wallet LLC acting for and on behalf of BlockFi Trading LLC and if you are a non-U.S client, your BlockFi Wallet will be opened and maintained by BlockFi Wallet LLC acting for and on behalf of BlockFi International Ltd.

2. In order to open your account, we will first verify your identity and require you to provide acceptable forms of identification. To help the government fight the funding of terrorism and money laundering activities, United States federal law and Bermuda requires us to obtain, verify, and record information that identifies each person or entity that opens an account. We may also ask for your driver's license or other identifying documents. For business accounts, we may require identification information related to a controlling manager and/or equity owners of your business. You represent and warrant that all information provided to us pursuant to these Wallet Terms or otherwise is true, accurate and not misleading in any respect. If any such information changes, it is your obligation to update such information as soon as possible. Note that we may use credit reports or other information from third parties to help us determine if we should open or maintain your account.

3. BlockFi Wallet is not available in Cuba, Iran, North Korea, Sudan, Syria, or any other country to which the United States or Bermuda embargoes goods or imposes similar sanctions. BlockFi Wallet is not available in the State of New York, or any other jurisdiction which we determine we would not be able to offer or chose not to offer a BlockFi Wallet. Due to the dynamic nature of regulatory requirements and interpretations in the cryptocurrency market, we reserve the right to update the list of prohibited jurisdictions and reject applications to open accounts that we determine we would be unable to accept for regulatory or policy reasons in our sole and absolute discretion.

4. Your account is not deemed to be opened, and we have no responsibility to you unless and until you have received written (which may be electronic) confirmation from us that your account has been opened. We are not obligated to accept an application from any applicant, and we reserve the right not to open an account for any applicant in our sole and absolute discretion.

## B. How Accounts Can Be Owned

BlockFi Wallet can be held in the types of ownership described below. Each individual or business entity shall only be permitted to maintain a single BlockFi Wallet at any given time.

1. Individual Account. This account is owned by only one person or entity who can transfer or withdraw cryptocurrency held in the account. There is a 1 (one) individual BlockFi Wallet maximum per individual.

2. Business Account. This account is owned by a corporation, unincorporated association, limited liability company, limited liability partnership, fiduciary, partnership, sole proprietorship or other entity holding an account in any capacity other than an individual capacity. Each person or entity completing any account opening requirements represents and agrees that he or she (i) is fully authorized to execute all documents or otherwise complete our requirements in his or her stated capacity, (ii) has furnished all documents or other information necessary to demonstrate that authority, and (iii) will furnish other documents and complete other requirements as we may request from time to time. We may refuse to recognize any resolution affecting your business account that appears to us to be incomplete or improperly executed.

**C. Funding your BlockFi Wallet**

1. You can open your account by transferring eligible cryptocurrency to the wallet address provided in your BlockFi account. Your cryptocurrency will be accepted by BlockFi, and then will be transferred to BlockFi Wallet LLC, which will open and maintain your BlockFi Wallet, acting for and on behalf of BlockFi Trading LLC if you are U.S client.If you are non-U.S client your BlockFi Wallet will be opened and maintained by BlockFi Wallet LLC on behalf of BlockFi International Ltd.

2. The transfer of such eligible cryptocurrency to your BlockFi Wallet may not be deemed settled and completed until the transaction has met the specific protocol for a relevant cryptocurrency that BlockFi has defined.

3. In addition, you can open your account or add additional assets to your BlockFi Wallet by sending a wire transfer or ACH from a bank account to BlockFi to purchase certain cryptocurrencies as published on our website from time to time. Trading activity is governed by BlockFi Trading LLC's Trading Terms. If you have a BlockFi Wallet, all assets purchased through BlockFi, shall be immediately debited and credited to your BlockFi Wallet maintained by BlockFi Wallet LLC, acting for and behalf of BlockFi.

4. As of the date of these Wallet Terms, there is no minimum amount required to open a BlockFi Wallet. We may, in our sole discretion, institute a minimum balance in the future, and such minimum balance will apply to your BlockFi Wallet. Once your account has been opened and funded, BlockFi requires seven calendar days' notice prior to your complete or partial withdrawal of the eligible crypto in your BlockFi Wallet.

**D. Withdrawals**

1. You may make a request for a complete or partial withdrawal of cryptocurrency from your BlockFi Wallet at any time with appropriate time notice as stated above. Additionally, before a withdrawal is processed, you may be required to provide certain personally identifiable information so BlockFi can verify your identity. BlockFi initiates the withdrawal process instantly when possible, and we may require up to seven (7) days after you submit your withdrawal request to process the withdrawal.

2. Withdrawal limits based on frequency and amount may apply from time-to-time and will be described in your BlockFi Wallet interface and on our Website at https://blockfi.com/fees

3. In the case of any withdrawal, you will be required to provide the details for the account to

which you wish to transfer your cryptocurrency. Upon a withdrawal request, your cryptocurrency will first be transferred to BlockFi Trading LLC, and then will be transferred to your designated account. Assets subject to a withdrawal request cannot be traded.

4. If the details you provide are inaccurate or incomplete, your cryptocurrency may be permanently lost. When you withdraw all or any of your cryptocurrency, we will not be liable for any loss that results from inaccurate, incomplete or misleading details that you may provide for such transfer. If the account you specify is one to which we are unable to process transfers, we will have no liability for any failure or delay in processing your requested withdrawal.

5. BlockFi and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transfers and withdrawals of cryptocurrency either temporarily or permanently. BlockFi is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transfers or withdrawals.

6. For withdrawals of  cryptocurrency in any calendar month, the transaction fees described at https://blockfi.com/fees will be deducted from the amount of cryptocurrency you withdraw from your BlockFi Wallet. For example, if you withdraw one Ethereum from your account, and the Ethereum network charges a transaction fee equal to .01 Ethereum, you will receive .99 Ethereum. BlockFi may also charge a fee for withdrawals. We will publish any such withdrawal fees on our Website before they take effect, and thereafter the applicable withdrawal fee will be deducted from the amount of cryptocurrency you withdraw from your BlockFi Wallet.

7. Additionally, from time to time there may be withdrawal minimums at BlockFi's third party custodians which may limit your ability to withdraw un-tradable fractions or other small amounts of cryptocurrency without first increasing the amount of cryptocurrency in your BlockFi Wallet.

**E. Taxes**

1. You will be able to see a record of the transactions related to your BlockFi Wallet which you may wish to use for the purposes of making any required tax filings or payments. It is your responsibility to determine what, if any, taxes apply to the payments you make or receive, and to collect, report, and remit the correct tax to the appropriate tax authority.

2. We will make any tax withholdings or filings that we are required by law to make, but we are not responsible for determining whether taxes apply to your transaction, or for collecting, reporting, or remitting any taxes arising from any transaction. You are responsible for complying with all applicable law, whether federal, state, local, or non-U.S. You agree that BlockFi is not responsible for determining whether or which laws may apply to your transactions, including tax law. You are solely responsible for reporting and paying any taxes arising from your BlockFi Wallet.

**F. Ownership of Cryptocurrency**

The title to the cryptocurrency held in your BlockFi Wallet shall at all times remain with you and shall not transfer to BlockFi. You hereby represent and warrant to us at all times during which you maintain a balance in your BlockFi Wallet that: (i) any cryptocurrency that you transferred

into your BlockFi Wallet is owned by you at the time of transfer, and (ii) you are validly authorized to instruct us to carry out transactions relating to your BlockFi Wallet balance and that all transactions initiated with your BlockFi Wallet are for your own account (or, in the case of business accounts, for your business's account) and not on behalf of any other person or entity. Except as required by a valid court order or applicable law, BlockFi shall not sell, transfer, loan, hypothecate or otherwise alienate cryptocurrency held in your BlockFi Wallet unless specifically instructed by you.

**G. General Rules Governing BlockFi Wallet**

1. If you are U.S client, all our actions relating to your account, including these Wallet Terms, will be governed by the laws and regulations of the United States and, to the extent not preempted, the laws and regulations of the State of New Jersey. Any lawsuit regarding your account must be brought in a proper court in the State of New Jersey, City of Jersey City. If you are a non-U.S client, all our actions relating to your account, including these Wallet Terms, will be governed by the laws of Bermuda and any lawsuit regarding your account must be brought in the Bermuda courts. If any part of these Wallet Terms is determined to be invalid or unenforceable, such determination will not affect the remainder of these Wallet Terms.

2. We reserve the right at all times to monitor, review, retain and/or disclose any information as necessary to satisfy any applicable law, regulation, legal process or governmental request.

3. All transfers to your BlockFi Wallet must consist of eligible cryptocurrency and must be transferred to the wallet address provided in your BlockFi account application, unless we notify you otherwise. We have the right to reject any transfer and the right to return cryptocurrency already transferred into your BlockFi Wallet. Any contribution meeting the confirmation guidelines in Section C.2 on any day at or before 11:59 p.m. UTC-4 will be treated by us as being received on such day. If you attempt to transfer assets to an unsupported wallet or using an unsupported network, or if you attempt to transfer assets other than eligible cryptocurrency (including any unsupported digital assets) to your BlockFi Wallet, such assets may be permanently lost, and we will have no liability for any such loss.

4. These Wallet Terms and the relationship created hereby do not create a fiduciary relationship between us.

5. We may follow instructions regarding your BlockFi Wallet if we reasonably believe that you have authorized the instructions.

6. We will make statements for your BlockFi Wallet available to you by email and/or online at blockfi.com. All your accounts and (in our discretion) those of any of your affiliates may be combined into one statement.

7. We will make available to you a periodic statement showing the activity on your account and containing information sufficient to allow you to reasonably identify transactions. You must examine the statement and notify us of any unauthorized use or any error or irregularity on the statement within 30 calendar days after the statement is sent or made available to you. If notice is not received within the 30-calendar day period, then we will have no liability to you and any losses will be entirely yours.

8.  Your BlockFi Wallet is not transferable or assignable to another person in whole or in part.

9. BlockFi is required by law to turn over the assets in abandoned or unclaimed customer accounts to the state of your last known residence. You must promptly notify us of any change in your residential mailing or email address. Failure to notify us may result in delay or non-receipt of BlockFi correspondence.

10. We may record and monitor our telephone conversations with you and your electronic communications with us (chat, e-mail and other forms of electronic exchange). Unless the law requires otherwise, you consent in advance to such recording and monitoring, and we do not need to remind you of these activities.

11. For purposes of these Wallet Terms, our business days are Monday through Friday. Saturdays, Sundays and all federal and New York State holidays are not included.

12. We reserve the right to limit access to your accounts, which can include temporarily or permanently removing your online access, restricting your account and/or closing your accounts without prior notice to you unless prior notice is required by law. We do not bear liability for such actions. In addition, BlockFi reserves the right to withhold or delay the withdrawal of funds or assets belonging to you if you fail to comply with these Wallet Terms.

### H. Indemnification and Limitation of Liability; Attorney's Fees and Costs for Lawsuits

1. You will indemnify and hold us and our affiliates harmless from any losses, damages, suits and expenses, of whatever kind, including reasonable attorneys' fees, which we may incur in connection with or arising out of your use of your BlockFi Wallet or our activities in connection with such account, your violation of any law, regulation, order or other legal mandate, or the rights of a third party, or any act or omission by your agent, representative or third-party service provider while using your BlockFi Wallet, regardless of whether the specific use was expressly authorized by you.

2. We are not liable to you for claims, costs, losses or damages caused by an event that is beyond our reasonable control (e.g., the acts or omissions of third parties, natural disaster, emergency conditions, disease epidemics/pandemics such as Covid-19, government action, equipment or communications malfunction).

3. We are not liable for special, incidental, exemplary, punitive or consequential losses or damages of any kind.

4. Except for any setoff permitted by applicable law, any amounts owed, or liabilities incurred by us ("Obligations") may be satisfied solely from the assets of BlockFi and BlockFi Wallet LLC. Without limiting the generality of the foregoing, in no event shall you have any recourse, whether by setoff or otherwise, with respect to any amounts owed or liabilities incurred, to or against any assets of any person or entity other than BlockFi and BlockFi Wallet LLC for Obligations, including, without limitation, any member, affiliate, investor, employee, officer, agent or advisor of BlockFi and BlockFi Wallet LLC. For the avoidance of doubt, the foregoing shall not limit any setoff permitted by applicable law.

5. Our liability to you for a claim is limited to the face value of the item or transaction, or the actual value of any assets not properly credited or debited.

**I. Risk Disclosure**

1. Your BlockFi Wallet is not a checking or savings account, and it is not covered by insurance against losses. In certain jurisdictions, cryptocurrency is not legal tender, and is not backed by the government. Accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections. Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of cryptocurrency.

2. Transactions in cryptocurrency may be irreversible, and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.  If you attempt to transfer assets to an unsupported wallet or using an unsupported network, or if you attempt to transfer assets other than eligible cryptocurrency (including any unsupported digital assets) to your BlockFi Wallet, such assets may be permanently lost. We assume no liability, obligation or responsibility whatsoever with respect to any unsupported digital asset or any asset that is transferred using an unsupported network or to an unsupported wallet. Some cryptocurrency transactions shall be deemed to be made when recorded on a public ledger, which is not necessarily the date or time that the customer initiates the transaction. The value of cryptocurrency may be derived from the continued willingness of market participants to exchange government-issued currency for cryptocurrency, which may result in the potential for permanent and total loss of value of a particular cryptocurrency should the market for that cryptocurrency disappear.

3. There is no assurance that a person who accepts a cryptocurrency as payment today will continue to do so in the future. The volatility and unpredictability of the price of cryptocurrency relative to government-issued currency may result in significant loss over a short period of time. The nature of cryptocurrency may lead to an increased risk of fraud or cyber-attack, including rollback attacks or blockchain reorganizations. The nature of cryptocurrency means that any technological difficulties experienced by BlockFi may prevent the access or use of a customer's cryptocurrency. Any bond or trust account maintained by BlockFi for the benefit of its customers may not be sufficient to cover all losses incurred by customers. Considering these risks, you should carefully consider whether holding cryptocurrency in a BlockFi account is suitable.

**J. Conflict/Disputes Involving Your Account**

1. We are not liable to you for errors that do not result in financial loss to you. We may take any action authorized or permitted by these Wallet Terms without being liable to you, even if such action causes you to incur fees, expenses or damages.

2. If third parties make claims on your account, or if we receive conflicting instructions from authorized signers, or if we become involved in or concerned about a dispute between you and an authorized signer, we have discretion to act in ways we believe to be appropriate, including by closing your BlockFi Wallet and returning the cryptocurrency in such account. You are liable for all expenses and fees we incur for such conflicts or disputes, including internal costs and attorneys' fees, and we may charge them to your BlockFi Wallet.

3. Fraudulent activity, including any attempt to withdraw assets that you do not own, did not transfer into your BlockFi Wallet, or did not purchase, is strictly prohibited and may result in the closure of your BlockFi Wallet. Fraudulent activity includes any attempt to take advantage of errors on the BlockFi Website, systems, applications, or technology platforms. Any errors identified should be flagged to investigations@blockfi.com for appropriate compensation, where applicable.

### K. Legal Process Affecting Accounts

1. If legal action such as an attachment, garnishment, seizure, liquidation, levy or other state or federal legal process ("legal process") is brought against your BlockFi Wallet, we may refuse to permit (or may limit) withdrawals or transfers from your account until the legal process is satisfied or dismissed. We may also be required to transfer the assets in your BlockFi Wallet at the behest of governmental authorities pursuant to legal and regulatory actions. Regardless of the terms of such attachment, garnishment, levy or other state or federal process, we have first claim to all assets in your account.

2. We will not contest on your behalf any such legal process and may take action to comply with such legal process as we determine to be appropriate in the circumstances without liability to you. If we incur any expenses, including without limitation, reasonable attorney fees, in connection with any such legal process, we may charge any expenses and fees to your account or any other account you may have with us without prior notice to you, or we may bill you directly for such expenses and fees. Any garnishment, seizure, liquidation, or other levy against your account is subject to our right of setoff.

### M. Setoff and Security Interest Rights

1. You grant us a security interest in any and all of your BlockFi account(s) with us for obligations owing to us or any of our affiliates by any owner of any of your accounts. These obligations include both secured and unsecured debts and debts you owe individually or together with someone else, including debts and obligations under other transactions or agreements between you and us or any of our affiliates.

2. We may take or set off assets in your  BlockFi Wallet, or transfer  assets between any or all of your BlockFi Wallet, with us or any of our affiliates for direct, indirect and acquired obligations that you owe us or our affiliates, including any balances as a result of not having sufficient assets available or as a result of an erroneous transfer of  assets to an address under your control, or a return or other negative balance, regardless of the source of assets in an account.

3. These rights are in addition to other rights we have to take, transfer or charge assets in your account for obligations you owe us or our affiliates. We may consider these Wallet Terms as your consent to BlockFi's asserting its security interest or exercising its right of setoff should any laws governing your account require your consent.

4. If the law restricts our ability to take, transfer or setoff against assets in your account, or if some contributions are protected from attachment, levy or legal process to the extent that you may do so by contract, you waive those conditions and limits and authorize us to apply assets in any or all of your accounts with us to obligations you owe us. Exercising these rights may result in early withdrawal penalties.

5. We hereby agree that, to the extent permitted by applicable law, you may take or set off assets in your account, or any amounts we owe you with respect thereto, against the Obligations. If the law restricts your ability to take, transfer or setoff assets in your account, or if some contributions are protected from attachment, levy or legal process to the extent that we may do so by contract, we waive those conditions and limits and authorize you to apply assets in any or all of your accounts with us to the Obligations.

## M. Waiver

We may delay or waive any rights we have under these Wallet Terms. If we delay or waive our rights, you are still obligated to pay us fees and other amounts you may owe us under these Wallet Terms. Any delay or waiver of our rights applies only to the specific instance in which we decide to delay or waive the provision and does not affect our future rights in any way.

## N. Digital Images, e-Signatures, & Facsimile Signatures

1. We accept digital images, e-signatures, and facsimile signatures for documents that need to be signed. However, we will not be liable if use of a device was unauthorized or if the size, color or quality of the signature is different from that of any signature previously presented to us.

2. If a facsimile signature is used for a withdrawal from your account, you are responsible for any withdrawal from your account when the facsimile signature resembles or purports to be the signature of a person authorized to make withdrawals from your account. You agree to reimburse us (and we may charge your account) for all claims, costs, losses and damages, including reasonable attorneys' fees, that result from our payment of a withdrawal accompanied by a facsimile signature or by a facsimile or digital image that we otherwise believe you authorized.

## O. Closing an Account

We have the right to close your BlockFi Wallet at any time for any reason without advance notice. In addition, your account will be closed automatically if we do not receive your initial transfer of assets to your BlockFi Wallet within sixty (60) days of the date on which your account is opened. If your account has a balance when we close it, and you provide a valid wallet address to us, we will return the remaining crypto assets to that address, unless prohibited by applicable law. We will cooperate with any regulatory or governmental entity's instructions or requests regarding your BlockFi Wallet, including freezing it and seizing its assets if mandated.

## P. Liability for Failure to Make Transfers

If we do not complete a transfer to or from your BlockFi Wallet or in the correct amount as clearly instructed to us according to these Wallet Terms, we will be liable for your actual losses or damages, subject to certain exceptions. We will not be liable, for instance: (i) if, through no fault of ours, you do not have enough  assets in your account to make the transfer; (ii) if circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that we have taken; (iii) in the case of preauthorized credits, if the data from the third party is not received, is incomplete or erroneous; (iv) if your BlockFi Wallet is not in an active status; (v) due to legal requirements of regulatory restrictions; (vi) other exceptions stated in these Wallet Terms or in another agreement with you.

**Q. Disclosure of Account Information**

We will disclose information to third parties about your account or the transfers you make: (i) where it is necessary for completing transfers; (ii) in order to verify the existence and condition of your BlockFi Wallet for a third party, such as a credit bureau or merchant; (iii) in accordance with the BlockFi Terms of Service; (iv) if you give us your written permission; (v) if we close your BlockFi Wallet due to a deficient balance, excessive instances when you do not have sufficient assets in your account or to protect or enforce our legal rights; and (vi) in order to comply with government agency or court orders.

**R. Account Errors or Questions**

1. Our platform allows you to review your BlockFi Wallet and conduct certain other transactions online. You must maintain adequate security and control of all IDs, passwords, hints, or any other codes that you use to access your BlockFi Wallet through our online platform. Any loss or compromise of the foregoing information or your personal information may result in unauthorized access to your BlockFi Wallet. We assume no responsibility for any loss that you may sustain due to compromise of your sensitive information. You accept all risks of unauthorized access and use of your BlockFi Wallet.

2. Tell us promptly if you believe that an electronic transfer has been made without your permission. Telephoning is the best way of keeping your possible losses down. You could lose all the assets in your BlockFi Wallet (plus any other BlockFi account you own). If your statement shows transfers that you did not make, tell us immediately by contacting us here.

3. Please submit a support ticket here, as soon as you can, if you think your statement is wrong or if you need more information about an item listed on the statement. We must hear from you no later than thirty (30) days after we send you or make available to you the first statement on which the problem or error appeared.

4. If you tell us orally or via electronic means, we may require that you send us your complaint or question in writing, and we may request additional information within ten (10) business days. We will endeavor to determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question. For errors involving new accounts, we may take up to ninety (90) days to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) business days for the amount of the error, so that you will have the use of the assets during the time it takes us to complete our investigation. For new accounts, we may take up to twenty (20) business days to credit your account for the amount you think is in error.

5. If we ask you to put your complaint or question in writing, or request additional information, and do not receive it within ten (10) business days, we may not credit your account. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

Terms Last Modified: 7/1/2022

Products ⌄

Institutions ⌄

Resources ⌄

Company ⌄

Follow Us ⌄




Everything you need on-the go

**Download the BlockFi app**



Log in

BlockFi Lending LLC NMLS ID#1737520 | NMLS Consumer Access
BlockFi Trading LLC NMLS ID#1873137 | NMLS Consumer Access

Privacy Policy | Legal | Licenses | Disclosures and Complaints | NMLS Consumer Access

Digital currency is not legal tender, is not backed by the government, and crypto accounts held with BlockFi are not subject to FDIC or SIPC protections. Digital currency values are not static and fluctuate due to market changes. Not all products and services are available in all geographic areas and are subject to applicable terms and conditions. Eligibility for particular products and services is subject to final determination by BlockFi. Rates for BlockFi products are subject to change.

BlockFi Rewards Credit Card: For more information, please see BlockFi's Terms of Service. BlockFi is not a Bank. Cards are issued by Evolve Bank & Trust, Member FDIC, pursuant to a license from Visa® USA Inc. Rewards are not offered by Evolve Bank & Trust and are instead offered and managed by BlockFi.

BlockFi International Ltd. holds a Class F digital assets business license under the Digital Assets Business Act, 2018 (as amended) and is licensed by the Bermuda Monetary Authority to conduct the following digital assets business activities: (i) issuing, selling or redeeming virtual coins, tokens or any other form of digital assets (ii) operating as a digital asset exchange (iii) providing custodial wallet services (iv) operating as a digital asset derivative exchange provider and (v) operating as a digital assets services vendor.

See blockfi.com/terms for more information.

2022 © All Rights Reserved.