| | |
|---|---|
| **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq. (NJ Bar No. 014321986)<br>Warren A. Usatine, Esq. (NJ Bar No. 025881995)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>(201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Kenric D. Kattner, Esq. (admitted *pro hac vice*)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>kenric.kattner@haynesboone.com |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*[1] | Chapter 11<br><br>Case No. 22-19361<br><br>Jointly Administered |

### DECLARATION OF MARK A. RENZI IN SUPPORT OF DEBTORS' SECOND DAY MOTIONS

I, Mark A. Renzi, hereby declare under penalty of perjury:

1.  I am a Managing Director and the Head of the Corporate Finance Financial Institutions Group for Berkeley Research Group, LLC ("BRG"), the proposed financial advisor to the Debtors and Debtors in Possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I submit this declaration in support of the second day motions (the "Second Day Declaration") filed by the debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

2. Unless otherwise indicated, the statements set forth in this declaration are based upon (a) my personal knowledge of the Debtors' business, (b) information learned from my review of relevant documents, (c) information I received from the BRG team working under my supervision or the Debtors' management team and other advisors, or (d) my experience as a restructuring professional. I am not being specifically compensated for this testimony other than through payments proposed to be received by BRG as a professional retained by the Debtors.

3. Since the Debtors engaged BRG on November 12, 2022, I have worked closely with the Debtors' management and other professionals on the Debtors' restructuring efforts, including assisting the Debtors in preparing cash flow projections, budgets, and other reports. I lead the BRG team advising the Debtors.

**Evidentiary Basis for Relief Requested in the Second Day Motions**

4. On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code").[2] To minimize the adverse effects on their business and facilitate a "smooth landing" in Chapter 11, the Debtors filed motions seeking certain "first day" relief (the "First Day Motions").

5. To further minimize the adverse effects on their business and to allow the Debtors to continue operating their businesses in the ordinary course while pursuing a restructuring or other value-maximizing transaction, the Debtors have determined that it is in the best interests of the Debtors and their estates to file a number of motions seeking "second day" relief (the "Second Day Motions").[3] The Second Day Motions include the following:

---

[2] BlockFi Intl., a company organized in Bermuda, also filed a winding up petition in the Supreme Court of Bermuda (for restructuring purposes only), together with an application for the appointment of joint provisional liquidators on a "light touch provisional liquidation basis" to assist the board of BlockFi Intl. with this restructuring.

[3] Additional motions, such as the Debtors' Wallet Motion and Retention Programs Motion that are set for hearing with the Second Day Motions are supported by separate declarations.

- **Rejection Procedures Motion.** *Debtors' Motion for Entry of an Order Authorizing and Approving Procedures for Rejection of Executory Contracts and Unexpired Leases*

- **Ordinary Course Servicing and Loan Settlement Procedures Motion.** *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Continue Servicing and Administration Activities in the Ordinary Course of Business with Respect to the Debtors' Institutional Loan Portfolio and Granting Related Relief and (II) Authorizing and Establishing Procedures Regarding the Restructuring, Settlement, or Other Modifications of Institutional Loans and Loan Obligations*

- **Professional Fee Procedures Motion.** *Debtors' Motion for Entry of an Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court*

- **Ordinary Course Professional Motion.** *Debtors' Motion for Entry of an Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business*

6. These Second Day Motions seek authority to, among other things, establish procedures to reject executory contracts and unexpired leases, authorize the continued servicing and related administration of loans in the Debtors' institutional loan portfolio and establish procedures for the settlement of certain loans, establish procedures for the approval and payment of fees and expenses to the estates' restructuring professionals, and employ and pay professionals in the ordinary course of business.

7. I am familiar with the content and substance contained in each Second Day Motion and believe that the relief sought in each motion (a) is necessary to enable the Debtors to operate in Chapter 11 with minimal disruption or loss of productivity and value, (b) constitutes a critical element of the Debtors' successful reorganization, and (c) best serves the Debtors' estates.

8. As more fully described herein, I believe that approval of the relief requested in the Second Day Motions is critical to the Debtors' ability to continue operating their business with minimal disruption and thereby preserve value for the Debtors' estates and various stakeholders. I have reviewed each of the Second Day Motions and I believe that the relief sought therein is

3

necessary for the success of these Chapter 11 Cases and that the Debtors' and their estates would suffer immediate and irreparable harm absent the Bankruptcy Court's approval of the relief sought in the Second Day Motions.

### A. Rejection Procedures Motion

9. Contemporaneously with the filing of this Second Day Declaration, the Debtors have filed the *Debtors' Motion for Entry of an Order Authorizing and Approving Procedures for Rejection of Executory Contracts and Unexpired Leases* (the "Rejection Procedures Motion") pursuant to which the Debtors are requesting the approval of procedures for rejecting executory contracts and unexpired leases.

10. In the ordinary course of business, the Debtors are party to thousands of executory contracts (the "Contracts") and unexpired leases (the "Leases"), which include leases of real and personal property as well as agreements with vendors for the supply of goods and services and other Contracts related to the Debtors' businesses. In connection with their efforts to preserve and maximize the value of their estates through the prosecution of these Chapter 11 Cases, the Debtors, in their business judgment, may determine that certain burdensome Contracts and Leases should be rejected rather than allowing the Debtors' estate to accrue administrative expenses associated with such Contracts and Leases. In addition, the Debtors may determine, in their business judgment, that they no longer need certain Contracts or Leases related to their business as a whole.

11. Through the Rejection Procedures Motion, the Debtors request approval of their proposed process for the rejection of Contracts and Leases. The Debtors believe that the Rejection Procedures will streamline their ability to reject burdensome Contracts and Leases that no longer provide a benefit to the Debtors' estates while also providing parties in interest with adequate notice of the rejection of a Contract and/or Lease and an opportunity to object to such relief within

a reasonable time. Absent the relief requested in the Motion, the Debtors would be required to file separate motions to reject Contracts and Leases, resulting in substantial costs to, and administrative burdens on, the Debtors' estates.

12. Any Contract or Lease the Debtors seek to reject pursuant to the Rejection Procedures will be a contract or lease that is financially burdensome and unnecessary to the Debtors' operations. Moreover, before rejecting any of the Contracts or Leases, the Debtors will analyze where the applicable Contracts and Leases are of inconsequential value or benefit to the Debtors' estates. Accordingly, the Debtors will have determined that in the exercise of their sound business judgment continued performance under the Contracts and Leases to be rejected constitutes an unnecessary depletion of value of the Debtors' estates.

### B. Ordinary Course Servicing and Loan Settlement Procedures Motion

13. Contemporaneously with the filing of this Second Day Declaration, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Continue Servicing and Administration Activities in the Ordinary Course of Business with Respect to the Debtors' Institutional Loan Portfolio and Granting Related Relief and (II) Authorizing and Establishing Procedures Regarding the Restructuring, Settlement, or Other Modifications of Institutional Loans and Loan Obligations* (the "Loan Procedures Motion") pursuant to which the Debtors are requesting approval to continue conducting ordinary course servicing activities with respect to loans to institutional borrowers and approval of procedures for entry into loan settlements between the Debtors and institutional borrowers.

#### i. BlockFi's Institutional Loan Business

14. BlockFi's clients fall into two broad categories: retail clients and institutional clients. On the institutional client side, one of BlockFi's key business segments is originating and

5

servicing loans with institutional clients, or borrowing from institutional clients, including hedge funds, market makers, proprietary trading firms, over-the-counter trading desks, and other corporations (collectively, "Institutional Clients"). Through BlockFi's platform, Institutional Clients were able to obtain or provide digital asset or U.S. dollar financing on a secured or unsecured basis depending on BlockFi's assessment of a particular borrower's creditworthiness. BlockFi's[4] current institutional loan portfolio (the "BlockFi Institutional Loan Portfolio") [5] has a total aggregate notional value (as of December 19, 2022) of approximately $948,000,000.

15. One of the categories of loans in the BlockFi Institutional Loan Portfolio consists of loan agreements without a specified maturity date that remain subject to being called or prepaid at BlockFi's discretion (the "Callable Loans"). Prior to the Petition Date, BlockFi called a majority of the existing Callable Loans and began the process of unwinding these loans.

16. A second category of loans in the BlockFi Institutional Loan Portfolio consists of equipment loans made to crypto miners for the purchase or financing of crypto-mining equipment (the "Crypto Mining Loans"). In light of the general downturn in the crypto market, a number of borrowers under the Debtor's Crypto Mining Loans are in default and BlockFi is currently in the process of negotiating with certain of those defaulted borrowers to address the repayment of their loans and the potential need to exercise BlockFi's rights and remedies under those loans, including

---

[4] Debtor BlockFi International Ltd. ("BlockFi International") is the lender with respect to certain of the loans in the BlockFi Institutional Loan Portfolio. To the extent that BlockFi International is a party to an applicable loan, BlockFi International will further comply with all requirements for seeking and obtaining order(s) and/or approval(s) in the parallel joint provisional liquidation proceedings currently pending in the Supreme Court of Bermuda (the "Bermuda JPL Proceedings"), before taking any steps otherwise authorized by any order made on this Motion with regard to those loans.

[5] Although the Debtors' institutional loan portfolio includes a limited number of loans to certain qualified and eligible individuals, the Debtors are not requesting relief through the Motion with respect to any loans to such individuals. As such, the definition "BlockFi Institutional Loan Portfolio" herein includes only loans with BlockFi's Institutional Clients.

6

with respect to the collateral securing those loans. In some instances, BlockFi is pursuing (or may need to commence) collection efforts, including foreclosure, with respect to certain of the defaulted Crypto Mining Loans and the collateral securing those loans.

17. The remaining loans in the BlockFi Institutional Loan Portfolio are a combination of secured and unsecured loans to a variety of Institutional Clients.

18. BlockFi uses a third-party loan servicer to service its retail loan portfolio. In contrast, BlockFi services and administers the BlockFi Institutional Loan Portfolio in-house. BlockFi's loan servicing and administration functions fall into two general categories: (i) general loan servicing and administration activities in connection with performing loans and (ii) loan servicing and administration activities in connection with under-performing, delinquent, and/or defaulted loans.

### ii. BlockFi's Servicing Activities for Performing Loans

19. BlockFi's ordinary course loan servicing and administration activities for performing loans includes, among other things, the following (the "Performing Loan Servicing Activities"):

  i. collecting and accounting for loan payments received from borrowers, including payments of principal and interest;

  ii. collecting and accounting for collateral return from lenders where BlockFi is acting as a borrower;

  iii. executing rights under loan agreements for Callable Loans;

  iv. verifying borrower and lender compliance with loan terms;

  v. providing notices and engaging in other routine communications with borrowers;

  vi. responding to borrower inquiries; and

      vii.    all other matters of administration relating to the servicing and administering of performing loans in the BlockFi Institutional Loan Portfolio.

20. BlockFi's Performing Loan Servicing Activities are conducted by specific BlockFi employees whose day-to-day job descriptions include, among other things, carrying out the Performing Loan Servicing Activities. To avoid harm to BlockFi's business and preserve the value of the BlockFi estates, it is important for BlockFi to continue engaging in the Performing Loan Servicing Activities without disruption.

### iii. Servicing Activities for Non-Performing Loans

21. During the life of a loan, a borrower may experience financial difficulties or otherwise have difficulty in meeting the repayment obligations on a loan. In situations where a BlockFi institutional borrower has become delinquent in complying with its loan obligations, BlockFi's customary practice is to first attempt to counsel or otherwise work with its borrowers to address the defaults and facilitate payment through deferments, forbearances, or loan modifications ("<u>Deferment and Forbearance Arrangements</u>"), as opposed to immediately terminating the loan, accelerating the maturity, and/or commencing foreclosure proceedings or collections lawsuits against a borrower. The Deferment and Forbearance Arrangements may include adjustments to monthly payment amounts, payment deferrals, interest rate adjustments (both increases and decreases), and extensions of loan maturities. The Deferment and Forbearance Arrangements do not include reductions of the principal amount of a loan. The Deferment and Forbearance Arrangements may also include either the imposition or waiver of added fees and penalties. BlockFi's Deferment and Forbearance Arrangements are intended to maximize collections and to avoid litigation, foreclosure, and other more aggressive, and expensive, collection activities.

22. Only when BlockFi's Deferment and Forbearance Arrangements fail, or when a borrower's financial situation is such that Deferment and Forbearance Arrangements are unlikely to remediate the situation, does BlockFi declare a default and accelerate loan maturity. Once a loan has been declared in default and accelerated, BlockFi will work to collect on the loan by pursuing one or more of the following actions: (i) commencing a private or court-administered foreclosure process, as applicable, if the loan is collateralized (each, a "Foreclosure"); (ii) commencing a collection action in an applicable court of competent jurisdiction (each, a "Collection Suit"); or (iii) engaging in a loan restructuring, settlement, or other workout (each, a "Workout", and together with Foreclosures and Collection Suits, the "Enforcement and Collection Actions"). BlockFi typically engages outside counsel to assist it in conducting Enforcement and Collection Actions.

23. There are specific BlockFi employees whose day-to-day job descriptions include, among other things, working with delinquent borrowers and entering into Deferment and Forbearance Arrangements to maximize collections. Similarly, there are specific BlockFi employees tasked with Enforcement and Collection Actions, including retaining and working with outside counsel to pursue such Enforcement and Collection Actions. To maximize the value of their estates and continue operating their businesses in the ordinary course, it is important for BlockFi to continue engaging in Forbearance Arrangements and Enforcement and Collection Actions in the ordinary course of business.

### iv. Workouts and Settlements

24. In the course of pursuing Enforcement and Collection Actions, BlockFi, with the advice and assistance of counsel, may determine in its business judgment that it is in the best

9

interests of BlockFi and the BlockFi estates to enter into a Workout or other settlement[6] with respect to a defaulting borrower's loan obligations. Any such Workout or settlement may include an agreement to reduce the total principal amount owed by a particular borrower or otherwise include a compromise of such borrower's obligations under the applicable loan.

25. As a lender, BlockFi's entry into Workouts and settlements with defaulted borrowers is an action conducted in the ordinary course of BlockFi's business.

### v. **Confidentiality**

26. In the ordinary course of business, when working with defaulted borrowers and seeking to reach a workout or other settlement, BlockFi does not typically disclose the terms of a given settlement or workout. Workout and settlement information is highly confidential proprietary information the public disclosure of which would harm BlockFi and the BlockFi estates and would hamper BlockFi's ability to negotiate other workouts and settlements on the most favorable terms possible for BlockFi and the BlockFi estates.

27. Because the BlockFi may engage with multiple borrowers to resolve defaulted or otherwise unpaid loans, it is important for BlockFi to retain the specific terms, and in particular the financial terms, of any particular loan settlement confidential to allow BlockFi to negotiate and settle other defaulted loans on the most favorable terms possible. Notably, the financial terms of any particular settlement will likely be affected by numerous factors and variables that are likely to make each settlement unique and that may not be applicable in the context of other defaulted loans. As such, the settlement terms of one defaulted loan may differ from the terms of other defaulted loans for a wide variety of reasons and it would be detrimental to BlockFi and the

---

[6] For the avoidance of doubt, for loans where BlockFi International is the lender, BlockFi International will seek further relief in the Bermuda JPL Proceedings as appropriate.

BlockFi estates if the disclosed terms of a settlement are used by other borrowers as a basis for seeking settlement that, in BlockFi's business judgment, would not be in the best interests of the BlockFi and the BlockFi estates.

### C. Professional Fee Procedures Motion

28. Contemporaneously with the filing of this Second Day Declaration, the Debtors filed the *Debtors' Motion for Entry of an Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* (the "Fee Procedures Motion"). Through the Fee Procedures Motion, the Debtors are requesting the establishment and approval of procedures for compensating and reimbursing professionals retained under section 327 of the Bankruptcy Code and, to the extent applicable, sections 328(a) and 1103 of the Bankruptcy Code comparable to the procedures approved in other chapter 11 cases in this district and in accordance with the guidelines set forth in Local Rule 2016-3.

29. The Debtors are requesting authority to retain and employ (i) Haynes and Boone, LLP as their bankruptcy co-counsel, (ii) Kirkland & Ellis LLP and Kirkland & Ellis International LLP as their bankruptcy co-counsel, (iii) Cole Schotz P.C. as their local bankruptcy counsel, (iv) Berkeley Research Group as their financial advisors, (v) Moelis & Company, LLC as the Debtors' investment banker, and (vi) Kroll Restructuring Administration, LLC as the Debtors' claims and noticing agent. The Debtors, and any statutory committee appointed in these Chapter 11 Cases, may seek to retain additional professionals to render services in connection with these Chapter 11 Cases.

30. I believe that the Compensation Procedures (as defined in the Fee Procedures Motion) are similar to and consistent with the procedures approved in other similar chapter 11

cases and that the Compensation Procedures will enable the Debtors to closely monitor the costs of administration of these Chapter 11 Cases, maintain a level cash flow, and implement efficient cash management procedures. Moreover, I believe the Compensation Procedures will also enable the Court and parties-in-interest to ensure the reasonableness of the compensation and reimbursement sought by Professionals on a more regular basis.

### D. Ordinary Course Professional Motion

31. Contemporaneously with the filing of this Second Day Declaration, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business* (the "Ordinary Course Professional Motion") pursuant to which the Debtors are requesting authority to retain certain existing ordinary course professionals and the approval of procedures for obtaining approval of the retention of additional qualifying ordinary course professionals.

32. In the ordinary course of business, the Debtors have employed the professionals identified on Exhibit 1 attached to the Ordinary Course Professionals Motion (the "Initial Ordinary Course Professionals"). The Initial Ordinary Course Professionals perform services, including legal, tax, accounting, regulatory, and other matters, that are not intrinsically related to the Chapter 11 Cases. The Debtors require the services of the Initial Ordinary Course Professionals regardless of the pendency of the Chapter 11 Cases, and the services do not significantly impact the direction of the Debtors' reorganization. It is my understanding that to the best of the Debtors' knowledge, the Initial Ordinary Course Professionals have no interest materially adverse to the Debtors and their estates.

33. In the ordinary course of business, as a routine matter, the Debtors review all bills received from outside professionals to assess the reasonableness of the fees charged and the

12

necessity of the expenses incurred. This type of review will continue post-petition and I believe that this continued review, coupled with the proposed Monthly Fee Cap (as defined in the Ordinary Course Professional Motion), will protect the Debtors' estates against excessive and improper billings.

34. The Debtors' proposed employment and compensation of the Ordinary Course Professionals during the Chapter 11 Cases is consistent with the Debtors' pre-petition business practices. Prior to the Petition Date, the Debtors utilized the services of each of the Initial Ordinary Course Professionals in connection with the day-to-day operation of the Debtors' businesses. It is my understanding that it is standard practice for companies in the cryptocurrency industry to utilize the services of the kind and nature provided by the Initial Ordinary Course Professionals in connection with the day-to-day operations of their businesses.

35. Without procedures in place consistent with the procedures proposed in the Ordinary Course Professional Motion, I believe that there is a risk that some or all of the Initial Ordinary Course Professionals and additional Ordinary Course Professionals would be unwilling to provide services, and that others would suspend services pending a specific court order authorizing the services. Since many of the matters for which the Ordinary Course Professionals provide services are active on a day-to-day basis, I believe that any delay or need to replace professionals could have adverse consequences on the Debtors and their estates. In such a circumstance, the Debtors would likely need to retain other professionals and those professionals would likely lack the institutional knowledge specific to the Debtors and their estates held by the Debtors' existing Ordinary Course Professionals, which would likely lead to additional costs and disruptions to the Debtors and their estates.

36. It is my understanding that to the best of the Debtors' knowledge, none of the Ordinary Course Professionals represent or hold any interest materially adverse to the Debtors or to their estates with respect to the matter in which the Debtors employ such Ordinary Course Professional(s). Although certain of the Ordinary Course Professionals may hold claims against one or more of the Debtors, the Debtors do not believe that any of such claims constitute interests materially adverse to the Debtors, their estates, their creditors, or other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 19, 2022

By: */s/ Mark A. Renzi*
Name: Mark A. Renzi

Title: Managing Director and the Head of the Corporate Finance Financial Institutions Group

Berkeley Research Group, LLC