# EXHIBIT B

**Declaration of Benjamin J. Steele**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BlockFi Inc., *et al.,* | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF KROLL RESTRUCTURING ADMINISTRATION LLC AS
ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1. I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"),[2] a chapter 11 administrative services firm whose headquarters are located at 55 East 52nd Street, 17th Floor, New York, NY 10055.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. This Declaration is made in support of the above-captioned Debtors' *Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Administrative Advisor Nunc Pro Tunc to the Petition Date*, (the "Application")[3] which was filed contemporaneously herewith.

3. Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals have experience in noticing, claims administration, assisting with the preparation of Schedules, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Kroll's professionals have acted as debtors' counsel, official claims and noticing agent, and/or administrative advisor in many large bankruptcy cases in this district and in other districts nationwide.  *See, e.g.*, *In re The Diocese of Camden, New Jersey,* Case No. 20-21257 (JNP) (Bankr. D.N.J); *In re Modell's Sporting Goods, Inc.*, Case No. 20-14179 (VFP) (Bankr. D.N.J); *In re Hollister Construction Services, LLC*, Case No. 19-27439 (MBK) (Bankr. D.N.J.); *In re Aceto Corporation*, Case No. 19-13448 (CFP) (Bankr. D.N.J.); *In re Frank Theatres Bayonne/South Cove, LLC*, Case No. 18- 34808 (SLM) (Bankr. D.N.J.); *In re Mountain Creek Resort, Inc.*, Case No. 17- 19899 (SLM) (Bankr. D.N.J.); *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.); *In re GenapSys, Inc.*, No. 22-10621 (BLS) (Bankr. D.

---

[2] Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

2

Del.); *In re TPC Group Inc.*, No. 22-10493 (CTG) (Bankr. D. Del.); *In re Ruby Pipeline, LLC,* No. 22-10278 (CTG) (Bankr. D. Del.); *In re Endo International plc*, Case No. 22-22549 (JLG) (Bank. S.D.N.Y.); *In re SAS AB*, Case No. 22- 10925 (MEW) (Bankr. S.D.N.Y); *In re Revlon Inc.*, Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y.).

4.  As Administrative Advisor, Kroll will perform the bankruptcy administration services specified in the Application and the Engagement Agreement. In performing such services, Kroll will charge the Debtors the rates set forth in the Engagement Agreement.

5.  Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Kroll and its professional personnel:

    (a) are not creditors, equity security holders, or insiders of the Debtors;

    (b) are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

    (c) do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.  I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties-in-Interest") in these chapter 11 cases. The list of Potential Parties-in-Interest was provided by the Debtors and included, among other parties, (i) the Debtors, (ii) related non-debtor parties; (iii) the Debtors' equity holders, (iv) the Debtors' current and former (last three years) officers and directors; (v) the Debtors' 50 largest unsecured creditors and significant clients; (vi) the Debtors' landlords and significant vendors; (viii) the Debtors' banks, custodians, JV partners, litigation counterparties; and (ix) the Debtors' proposed professionals.

7.  The results of the conflict check were compiled and reviewed by Kroll professionals under my supervision. At this time, and as set forth in further detail herein, Kroll is

not aware of any connection that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to file promptly a supplemental declaration.

8. To the best of my knowledge, based solely upon information provided to me by the Debtors and except as provided herein, neither Kroll nor any of its professionals have any materially adverse connection to the Debtors, their creditors, or other relevant parties.  Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

9. Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties-in-interest in these cases.  Such firms include Kirkland & Ellis LLP ("K&E"); Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC.  Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

10. Kroll hereby discloses the following connections, each of which Kroll believes does not present an interest adverse to the Debtors and is disclosed solely out of an abundance of caution:

4

- I was previously an associate at K&E, proposed co-counsel to the Debtors in these chapter 11 cases. In addition, Brad Weiland, a Managing Director of Kroll, was previously a partner at K&E. I left K&E in August 2013, and Mr. Weiland left K&E in November 2021. Neither I nor Mr. Weiland worked on any matters involving the Debtors while employed by K&E.

- I understand that K&E has represented and currently represents Kroll in matters unrelated to the Debtors and these chapter 11 cases. I do not believe that these connections preclude Kroll from meeting the disinterestedness standard under the Bankruptcy Code.

- James Waldron, former Clerk of the United States Bankruptcy Court for the District of New Jersey joined Kroll as Senior Advisor in March 2017. Mr. Waldron was not employed as Clerk of the United States Bankruptcy Court for the District of New Jersey when these chapter 11 cases were filed.

- Oleg Bitman, a Senior Consultant at Kroll, was previously a paralegal at Linklaters LLP ("Linklaters"), one of the Debtors' ordinary course professionals. Mr. Bitman left Linklaters in 2017. Mr. Bitman did not work on any matters involving the Debtors during his time at Linklaters.

- Kroll has been made aware that three of its employees had opened accounts with the Debtors prior to the Petition Date. One of those employees did not fund their accounts and is not owed any amounts from the Debtors as of the Petition Date. The other two employees deposited de minimis amounts with the Debtors.

11. Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent"). Kroll Parent is the world's premier provider of services and digital products related to governance, risk and transparency. Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent. As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders.

12. Notwithstanding the foregoing, out of an abundance of caution, Kroll hereby discloses that certain Kroll employees and temporary employees under their general supervision have recently commenced providing administrative project management and data review services to a confidential client of Kroll Parent that appears on the Potential Parties in Interest List. The services provided to the confidential client by Kroll and Kroll Parent are unrelated to the Debtors

5

and these chapter 11 cases. Kroll therefore believes that this connection does not present an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders.

13.     Kroll has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, Kroll and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties-in-interest that may be involved in the Debtors' chapter 11 cases. Kroll may also provide professional services to entities or persons that may be creditors or parties-in-interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

14.     Kroll and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the Debtors or parties-in-interest. All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to these chapter 11 cases.

15.     As part of its conflicts check process, Kroll submitted for review by each of its partners and employees the list of Potential Parties in Interest provided by the Debtors to determine whether any partner or employee holds an adverse interest to any of the Debtors and/or is a "disinterested person," as such term is defined in the Bankruptcy Code. In addition, the partners and employees of Kroll were asked to review their investment holdings, to the extent possible, to determine whether they have any direct or indirect ownership of the Debtors' securities. Upon information and belief, and upon such reasonable inquiry by Kroll and the results thereof, except as otherwise disclosed herein, Kroll is not aware that any of its partners or employees directly or

indirectly own any debt or equity securities of a company that is a Debtor or of any of its affiliates. Moreover, Kroll has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to non-discretionary Investment Funds (as defined below), all Kroll partners and employees are barred from trading in securities with respect to matters in which Kroll is retained.

16.    As a general matter, in the infrequent case when a Kroll partner or employee may, directly or indirectly, own a debt or equity security of a company which may become or becomes a debtor or a debtor affiliate, such ownership would be substantially less than one percent of any such debtor or debtor affiliate.  Additionally, from time to time, Kroll partners or employees may personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals may indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates. Any partner or employee who has made any such investment does not manage or otherwise control such Investment Fund.  The Investment Funds are managed by third parties, and Kroll partners or employees that may invest in the particular Investment Fund have no influence, discretion, or control over the Investment Fund's decision to buy, sell or vote any particular debt or equity securities comprising the particular Investment Fund and in certain instances, partners or employees may not be aware of the particular debt or equity securities comprising the particular Investment Fund.

17.    Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

18.	Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest adverse to the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on December 22, 2022

/s/ Benjamin J. Steele
Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC