**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## APPLICATION OF THE
## DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF
## AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
## MOELIS & COMPANY LLC AS INVESTMENT BANKER, CAPITAL MARKETS
## ADVISOR, AND FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this application (the "<u>Application</u>"):

### <u>Relief Requested</u>

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"): (a) authorizing the employment and retention of Moelis & Company

LLC ("<u>Moelis</u>") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>") to serve as the Debtors' investment banker, capital markets advisor, and

financial advisor effective as of the Petition Date in accordance with the terms and conditions set

forth in that certain engagement letter between Moelis and the Debtors dated as of November 20,

2022 (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as <u>Exhibit 1</u> to the Order;

(b) approving the provisions of the Engagement Letter, including the compensation arrangements

and indemnification, exculpation, contribution and reimbursement provisions set forth therein;

(c) modifying certain timekeeping requirements of Rules 2014(a), 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the District of New Jersey (the "<u>Local Rules</u>"), the guidelines (the "<u>Trustee</u>

<u>Guidelines</u>") of the Office of the United States Trustee for Region 2 (the "<u>U.S. Trustee</u>") and any

other applicable procedures and orders of the Court in connection with Moelis's engagement; and

(d) granting such other relief as is just and proper.  In support of this Application, the Debtors

submit the declaration of Barak Klein (the "<u>Klein Declaration</u>"), a copy of which is attached hereto

as **<u>Exhibit B</u>** and incorporated herein by reference, and the *Declaration of Mark A. Renzi in*

*Support of Chapter 11 Petitions and First Day Motions* [Docket No. 17] (the "First Day

Declaration"), which was filed with the Court on the Petition Date.[2]

## Jurisdiction and Venue

2.        The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Application to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The bases for the relief requested herein are sections 327(a) and 328(a) of title 11

of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.        On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their

businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth

in greater detail in the First Day Declaration and incorporated by reference herein.

---

[2]    Capitalized terms used but not otherwise defined in this application shall have the meanings ascribed to them in
the First Day Declaration.

6.      The Debtors are operating their businesses and managing their properties as debtors
in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 29,
2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint
administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  On December 21,
2022, the U.S. Trustee appointed an official committee of unsecured creditors
(the "Committee").  No request for the appointment of a trustee or examiner has been made in
these Chapter 11 Cases.

### Moelis's Qualifications

7.      Moelis is an investment banking firm with its principal office located at 399 Park
Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the
United States Securities and Exchange Commission and is a member of the Financial Industry
Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis
& Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has
approximately 1,000 employees and geographic locations in North America, South America,
Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis &
Company, a public company listed on the New York Stock Exchange.

8.      Moelis provides a broad range of financial advisory and investment banking
services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and
divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital
raising.  Moelis and its senior professionals have extensive experience in the reorganization and
restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis's business
reorganization professionals have served as financial advisors, capital markets advisors, and/or
investment bankers in numerous cases both in this district and others, including:  *In re Revel AC,
Inc.*, No. 14-22654 (MBK) (Bankr. D.N.J. Aug. 1, 2014); *In re Voyager Digit. Holdings, Inc.*, No.

22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Aug. 11, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. June 29, 2021); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).[3]

9.    The Debtors have selected Moelis as their investment banker, capital markets advisor, and financial advisor based upon, among other things:  (a) the Debtors' need to retain a skilled investment banker, capital markets advisor, and financial advisor to provide advice with respect to the Debtors' restructuring activities; (b) Moelis's extensive experience and excellent reputation in providing investment banking, capital markets advisory, and financial advisory services in complex chapter 11 cases such as these; and (c) Moelis's extensive knowledge of the Debtors, as described below.  In light of the size and complexity of these chapter 11 cases, Moelis's resources, capabilities, and experience are crucial to the resolution of these chapter 11 cases.  An experienced investment banker, capital markets advisor, and financial advisor, such as Moelis, fulfills a critical service that complements the services provided by the Debtors' other professionals.

10.    Moelis began advising the Debtors on strategic and restructuring initiatives prior to the commencement of these chapter 11 cases.  Moelis was initially engaged as the Debtors' investment banker, capital markets advisor, and financial advisor in November 2022 and has

---

[3]    Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

provided advisory services in connection with the Debtors' restructuring efforts since its engagement.

11.     As a result of its prepetition work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, operations, capital structure, and other material information and has become well-acquainted with the Debtors' businesses, operations, and capital structure.

12.     Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient, and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors and their estates, their creditors, and all parties in interest.

## Services to be Provided

13.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached as Exhibit 1 to the Proposed Order, in consideration for the compensation contemplated therein, Moelis has and will perform the following services (the "**Services**"), as requested, for the Debtors:[4]

(a)     assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition, and business plan;

(b)     assist the Debtors in reviewing and analyzing any potential Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction;

(c)     assist the Debtors in negotiating any Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction;

---

[4]    The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined in this Application shall have the meanings ascribed to them in the Engagement Letter.

(d)     advise the Debtors on the terms of securities it offers in any potential Capital Transaction;

(e)     advise the Debtors on their preparation of information memoranda for a potential Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction (each, an "Information Memo");

(f)     assist the Debtors in contacting potential counterparties or purchasers of a Capital Transaction ("Purchasers") that Moelis and the Debtors agree are appropriate for the applicable Transactions, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties, or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

(g)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction as Moelis and the Debtors may mutually agree upon in writing.

14.     Such professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to the Bankruptcy Code.

## Professional Compensation

15.     Moelis's decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for its out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

16.     Moelis does not typically charge for its services on an hourly basis.  Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the financial advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

17.     As set forth more fully in the Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "**Fee Structure**") pursuant to section 328(a), and not section 330, of the Bankruptcy Code.  The Debtors have agreed to pay Moelis the following nonrefundable cash fees:

i.   **Retainer Fee.**  Promptly after execution of the Engagement Letter, a retainer fee of $500,000 (the "Retainer Fee").  The Retainer Fee shall be offset, to the extent previously paid, against the Restructuring Fee or the Sale Transaction Fee (each as defined below).  The Retainer Fee was funded by the Debtors before the Petition Date.

ii.  **Monthly Fee.**  During the term of the Engagement Letter, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month.  The Debtors paid the first Monthly Fee immediately upon the execution of the Engagement Letter, and will pay all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter.  Whether or not a Restructuring, Sale Transaction, or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter.  After three (3) months, 50% of the Monthly Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee.

iii. **Restructuring Fee.**  At the closing of a Restructuring, a fee (the "Restructuring Fee") of $8,000,000.  If, at the closing of a Restructuring, Moelis has not received a Mining Assets Sale Fee or a Claim Monetization Transaction Fee (each as defined below), the Restructuring Fee will increase to $9,000,000.

iv.  **Sale Transaction Fee.**  At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $8,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee.  To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Debtors shall pay the Restructuring Fee.  If, at the closing of a Sale Transaction, Moelis has not received a Mining Assets Sale Fee or a Claim Monetization Transaction Fee, the Sale Transaction Fee will increase to $9,000,000.

v.   **Capital Transaction Fee.**  At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") as follows:

      a.   1.00% of the amount Raised (as defined below)[5] in a Capital Transaction that is a first-lien debt financing, including a DIP financing; provided, however, that 50% of any fee earned on a DIP financing will be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee; plus

      b.   3.00% of the amount Raised in a Capital Transaction that is any other debt financing; plus

      c.   4.00% of the amount Raised in a Capital Transaction that is equity, equity-lined interests, options, warrants, or other rights to acquire equity interests.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.

    vi.   **Mining Assets Sale Fee.**  At the closing of a Mining Assets Sale, a non-refundable cash fee (the "Mining Assets Sale Fee") of $500,000, plus 5.0% of the total gross consideration received or to be received in connection with a Mining Assets Sale.

The Debtors will pay a separate Mining Assets Sale Fee in respect of each Mining Assets Sale in the event that more than one Mining Assets Sale occurs.

    vii.   **Claim Monetization Transaction Fee.**   At the closing of a Claim Monetization Transaction, a non-refundable cash fee (the "Claim Monetization Transaction Fee," and, together with the Restructuring Fee, Sale Transaction Fee, Capital Transaction Fee, and Mining Assets Sale Fee, the "Transaction Fees") of $500,000, plus 5.0% of the total gross consideration received or to be received in connection with a Claim Monetization Transaction.

18.    The Company will pay a separate Claim Monetization Transaction Fee in respect of each Claim Monetization Transaction in the event that more than one Claim Monetization Transaction occurs. If a Transaction triggers both a Claim Monetization Transaction Fee and a Capital Transaction Fee, the Company shall pay the Claim Monetization Transaction Fee only.

---

[5]   "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of its obligations.

Notwithstanding anything to the contrary in the Engagement Letter, the aggregate amount of Mining Assets Sale Fees and Claim Monetization Transaction Fees earned in connection with one or more Mining Assets Sales or Claim Monetization Transactions shall not exceed $4,000,000.

19.    If, at any time prior to the end of the Tail Period,[6] the Debtors consummate any Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction, or enter into an agreement or a Plan is filed regarding any Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction and a Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction is subsequently consummated, then the Debtors (or their estates) shall pay Moelis the applicable Transaction Fee(s) as specified above.

20.    In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for its out-of-pocket expenses as they are incurred in performing services pursuant to the Engagement Letter, whether or not the Debtors consummate a Restructuring. Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction.  Upon execution of the Engagement Letter, the Debtors paid, and will maintain, a $25,000 expense advance for Moelis (the "Expense Retainer").  Moelis will return the unused portion of the Expense Retainer to the Debtors following termination of the Engagement Letter.  Moelis agrees to provide the Debtors with reasonable support for its expenses at the Debtors' request or at the Court's direction.  Such expenses include, without limitation, insourced document production costs, travel costs, and the costs of Moelis's external legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

---

[6]    The "Tail Period" shall end 12 months following the expiration or termination of the Engagement Letter.

Case 22-19361-MBK    Doc 139    Filed 12/23/22    Entered 12/23/22 17:00:36    Desc Main
Document    Page 11 of 23

21.    The Debtors understand that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

22.    However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis's compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that Moelis's restructuring professionals who advise or provide professional services to, or on behalf of, the Debtors only be required to maintain records (in summary format) of the services rendered to the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services, consistent with its ordinary practice.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis's restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, or other applicable

procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

23.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis's own applications, both interim and final.  Such invoices and time records will be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

24.     The Debtors believe that the Fee Structure is reasonable, consistent with, and typical of compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Debtors also believe that the Fee Structure reflects a proper balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  The Fee Structure is consistent with Moelis's normal and customary billing practices for chapter 11 cases of this size and complexity that require the level of scope and services outlined herein.  After arm's-length negotiations, the Debtors believe that the Fee Structure is reasonable, market-based, and designed to compensate Moelis fairly for its work.

25.     Moelis's strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of

which have and will be required by the Debtors during the term of Moelis's engagement, were all important factors to the Debtors in agreeing to the Fee Structure. The Debtors believe that the ultimate benefit of Moelis's services hereunder cannot be measured by reference to the number of hours to be expended by Moelis's professionals in the performance of such services. The Debtors and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis, and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

26.     During the 90-day period prior to the Petition Date, the Debtors paid to Moelis in the ordinary course, certain fees and expense reimbursements due under the Engagement Letter. Specifically, according to the Debtors' books and records, the Debtors paid Moelis: (a) the Retainer Fee in the amount of $500,000; (b) Monthly Fees in the amount of $200,000; and (c) the Expense Retainer in the amount of $25,000. As of the Petition Date, the Debtors did not owe Moelis any fees for services performed or expenses incurred under the Engagement Letter in excess of the Expense Retainer, which Moelis is holding on account for prepetition expenses incurred in connection with the Engagement Letter.

## **Indemnification Provisions**

27.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and exculpate any and all Indemnified Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter,

including <u>Annex A</u> thereto (such provisions, collectively, the "<u>Indemnification Provisions</u>").  As set forth more fully therein, under the Indemnification Provisions, if any Indemnified Person becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for, and responding to such Action or enforcing the Engagement Letter, as they are incurred.  The Debtors will also indemnify and hold harmless any Indemnified Person from and against, and the Debtors each agree that no Indemnified Person shall have any liability to the Debtors or their affiliates, or their respective owners, directors, officers, employees, security holders, or creditors, for any losses, claims, damages, expenses, or liabilities (collectively, "<u>Losses</u>") (a)(i) related to the Debtors' actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees, and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein, or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtors or their agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtors to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (b) otherwise arising out of, related to, or in connection with the Engagement Letter or Moelis's performance thereunder, or any other services or advice the Debtors request any Indemnified Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (b) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of an Indemnified Person.[7]

---

[7]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this

28.     These Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Moelis.  The Debtors believe that the Indemnification Provisions in the Engagement Letter reflect the customary qualifications and limits on such terms for financial advisory engagements both out of court and in chapter 11 cases and respectfully submit that the Indemnification Provisions are reasonable, subject to the modifications set forth in the Proposed Order.  The Debtors believe that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

### Efforts to Avoid Duplication of Services

29.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including:  (a) Kirkland & Ellis LLP; (b) Haynes and Boone LLP; (c) Berkeley Research Group, LLC ("BRG"); and (d) Kroll Restructuring Administration LLC.  The Debtors do not believe that the services to be performed by Moelis on behalf of the Debtors will be duplicative of services provided by these additional professionals, including the services of BRG. BRG, although also a proposed financial advisor, is not being retained to perform the same services as Moelis, as set forth in both retention applications and engagement letters.  The Debtors and Moelis are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis's retention as investment banker, capital markets advisor, and financial advisor.  The Debtors understand that

Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

## Moelis's Disinterestedness

30.     Moelis has reviewed the list of parties in interest provided by the Debtors.  To the best of Moelis's knowledge, information, and belief, as of the date hereof, and except to the extent disclosed herein or in the Klein Declaration, Moelis:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or related parties except as disclosed in the Klein Declaration.

31.     Given the large number of parties in interest in these chapter 11 cases, and despite the efforts to identify and disclose Moelis's relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Klein Declaration.  Moelis has informed the Debtors that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

32.     The Debtors are informed that Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

## Basis For Relief

### I.    The Debtors Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code

33.     The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code

provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers,

auctioneers, or other professional persons, that do not hold or represent an interest adverse to the

estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying

out its duties.  11 U.S.C. § 327(a).

34.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that

debtors "with the court's approval, may employ or authorize the employment of a professional

person under section 327 . . . on any reasonable terms and conditions of employment, including on

a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11

U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of

professionals, including investment bankers, on more flexible terms that reflect the nature of their

services and market conditions.  As the United States Court of Appeals for the Fifth Circuit

recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc.  Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

35.     As discussed above and in the Klein Declaration, Moelis satisfies the

disinterestedness standard in section 327(a) of the Bankruptcy Code.  Moelis advised the Debtors

prior to the commencement of these chapter 11 cases and, to date has committed a significant

amount of time and effort assisting the Debtors with their restructuring efforts.  Additionally, given

the numerous issues that Moelis may be required to address in the performance of its services for

the Debtors pursuant to the Engagement Letter, Moelis's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Moelis's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

36.    Indeed, the Debtors believe that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by Moelis; (b) Moelis's substantial experience with respect to investment banking and financial advisory services; and (c) the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

37.    As set forth above, and notwithstanding approval of Moelis's Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein.  Furthermore, the Debtors propose that their obligation to pay any fee, expense or indemnity to Moelis or an Indemnified Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

38.    The Debtors request that the requirements of Local Rule 2016-1, the Trustee Guidelines, and any other applicable procedures and orders of the Court be tailored to the nature of Moelis's engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.

Additionally, it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys. As discussed above, however, Moelis's restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these chapter 11 cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks. As such, the Debtors request modification of the requirements under Local Rule 2016-1, the Trustee Guidelines, and any other applicable procedures and orders of the Court.

39.    Similar fixed and contingency fee arrangements have been approved and implemented by courts, including this one, in other large chapter 11 cases. *See In re Revel AC, Inc.*, No. 14-22654 (MBK) (Bankr. D.N.J. Aug. 1, 2014); *see also, e.g.*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

40.    The Debtors also believe that employment of Moelis effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases. Moelis has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated transactions. *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

## II.        The Indemnification Provisions Are Appropriate.

41.    The Indemnification Provisions, as modified by the Order attached hereto, were negotiated at arm's-length between the Debtors and Moelis.  The Debtors and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases.  *See In re Revel AC, Inc.*, No. 14-22654 (MBK) (Bankr. D.N.J. Aug. 1, 2014); *see also, e.g.*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

42.    Accordingly, the Debtors respectfully submit that the terms of the modified Indemnification Provisions are reasonable and customary and should be approved in these chapter 11 cases.

## III.       The Retention of Moelis is Critical to the Debtors' Chapter 11 Efforts.

43.    The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these chapter 11 cases.  As set forth above, Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Moelis is a preeminent investment banking, capital markets advisory, and financial advisory firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of Moelis's uniquely qualified professionals who

have served them since several weeks prior to the Petition Date and have continued to assist them following the Petition Date.  Indeed, if the Debtors were forced to engage a new investment banker, capital markets advisor, and financial advisor who lacks a thorough understanding of the Debtors' businesses, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost.  Based on services performed to date, Moelis was integral in preparing the Debtors for these chapter 11 cases.

44.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## **Request of Waiver of Stay**

45.    To the extent that the relief sought in the Application constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As explained herein, the relief requested in this Application is immediately necessary to assist the Debtors in their efforts to preserve the value of their estates

## **Waiver of Memorandum of Law**

46.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Application does not raise any novel issues of law.

## **Notice**

47.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey; (b) the Committee; (c) the United States Attorney's Office for the District of New

Jersey; (d) the Internal Revenue Service; (e)  the U.S. Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final

orders, in substantially the forms submitted herewith, granting the relief requested herein and such

other relief as is just and proper under the circumstances.

Dated:  December 23, 2022
        Jersey City, New Jersey

*/s/ Zachary Prince*
Zachary Prince
BlockFi Inc.
Chief Executive Officer and President