## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**ORDER AUTHORIZING**
**EMPLOYMENT AND RETENTION OF MOELIS &**
**COMPANY LLC AS INVESTMENT BANKER, CAPITAL**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**MARKETS ADVISOR, AND FINANCIAL ADVISOR TO THE DEBTORS
<u>AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE</u>**

The relief set forth on the following pages, numbered three (3) through and including eight (8), is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 |
| Caption of Order: | Order Authorizing Retention and Employment of Moelis & company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date. |

Upon the *Application of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Retention and Employment of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor* (the "Application")[1], filed on December 23, 2022, pursuant to 11. U.S.C. § 327(a) and 328(a), Federal Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the supporting declaration of Barak Klein, and its attached exhibits; all as more fully set forth in the Application; and upon the First Day Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); this Court being satisfied, based on the representations made in the Application and the Klein Declaration, that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

(Page | 4)

Debtors:              BLOCKFI INC. *et al*.

Case No.              22-19361

Caption of Order:     Order Authorizing Retention and Employment of Moelis & company LLC
                      as Investment Banker, Capital Markets Advisor, and Financial Advisor to
                      the Debtors and Debtors in Possession Effective as of the Petition Date.

as required by section 327(a) of the Bankruptcy Code; and this Court having determined that the

legal and factual bases set forth in the Application establish just cause for the relief granted herein;

and upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** as set forth in this Order, and the provisions set

forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent

provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy

Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ

and retain Moelis as their investment banker, capital markets advisor, and financial advisor in these

chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter,

as modified herein, to pay fees and reimburse expenses, and to provide indemnification,

contribution, and/or reimbursement to Moelis on the terms and at the times specified in the

Engagement Letter as modified herein, effective as of the Petition Date.

3.      Moelis shall be compensated for fees and reimbursed for its out-of-pocket expenses

by the Debtors in accordance with the terms of the Engagement Letter, as modified herein, and all

fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation

the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring

Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

4.      Moelis is authorized to apply the Expense Retainer to any unbilled or otherwise

remaining expenses that Moelis becomes aware of during its ordinary course billing review and

(Page | 5)

| | |
|---|---|
| Debtors: | BLOCKFI INC. *et al.* |
| Case No. | 22-19361 |
| Caption of Order: | Order Authorizing Retention and Employment of Moelis & company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date. |

reconciliation.  Moelis shall apply any remaining amounts of the Expense Retainer as a credit towards postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to Moelis.

5.    Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of its out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other procedures or orders of the Bankruptcy Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis's interim and final applications for compensation (including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis's interim and final fee applications pursuant to section 330 of the Bankruptcy Code; *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.    Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other procedures or orders of the Court are hereby modified such that Moelis's

(Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI INC. *et al*. |
| Case No. | 22-19361 |
| Caption of Order: | Order Authorizing Retention and Employment of Moelis & company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date. |

restructuring professionals shall be required only to maintain records (in summary format) of services rendered to the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services, consistent with its ordinary practice, Moelis's non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis's professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.      In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis's own applications, both interim and final, and such invoices and time records shall be subject to the approval of the Court pursuant to section 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Moelis in retention and fee application matters.  For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorneys' fees and/or expenses set forth in Annex A to the Engagement Letter with respect to indemnification.

8.      The indemnification, exculpation, contribution, and reimbursement provisions

(Page | 7)

| | |
|---|---|
| Debtors: | BLOCKFI INC. *et al*. |
| Case No. | 22-19361 |
| Caption of Order: | Order Authorizing Retention and Employment of Moelis & company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date. |

included in <u>Annex A</u> to the Engagement Letter are approved, subject during the pendency of these

chapter 11 cases to the following modifications:

> a. Subject to the provisions of subparagraphs (b), (c), and (d) below, the Debtors are authorized to indemnify, and shall indemnify, the Indemnified Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Moelis's performance of the services described in the Engagement Letter;

> b. All requests by Indemnified Persons for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Bankruptcy Court and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter; *provided, however*, that in no event shall any Indemnified Person be indemnified to the extent that a court determines by final order that such person acted in its own bad-faith, self-dealing, or breach of fiduciary duty (if any), gross negligence, or willful misconduct;

> c. In no event shall any Indemnified Person be indemnified to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Person's own bad-faith, self-dealing, or breach of fiduciary duty (if any), gross negligence, or willful misconduct; and

> d. If Moelis or any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Moelis's own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.     Moelis shall use its reasonable efforts to avoid any duplication of services provided

by any of the Debtors' other retained professionals in these chapter 11 cases.

(Page | 8)

| | |
|---|---|
| Debtors: | BLOCKFI INC. *et al.* |
| Case No. | 22-19361 |
| Caption of Order: | Order Authorizing Retention and Employment of Moelis & company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date. |

10.     Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

11.     None of the fees payable to Moelis shall constitute a "bonus" or fee enhancement under applicable law.

12.     To the extent that there is any inconsistency between the Engagement Letter, the Application, the Klein Declaration, and this Order, the provisions of this Order shall apply.

13.     The Debtors and Moelis are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

15.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

### Engagement Letter

November 20, 2022

<u>CONFIDENTIAL</u>

BlockFi Inc.
201 Montgomery Street, Second Floor, Suite 263
Jersey City, NJ 07032

Attention: Zachary Prince, Chief Executive Officer

Dear Mr. Prince:

This agreement confirms that, since  November 18, 2022, BlockFi Inc. and its direct and indirect subsidiaries (collectively, the "<u>Company</u>") have engaged Moelis & Company LLC ("<u>Moelis</u>") to act as the Company's financial advisor, capital markets advisor and investment banker in connection with any of the Company's proposed Transactions (as defined below).

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the  liabilities of the Company (or its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization (a "<u>Plan</u>") going effective or conversion to Chapter 7 or any other liquidation of the Debtors confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments.

"<u>Sale Transaction</u>" means (a) the sale, disposition or other transfer (in one or a series of transactions) (including to existing creditors of the Company), of a significant portion of (i) the equity securities of the Company, or (ii) the assets, properties or businesses of the Company; or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving the Company and any counterparty (including existing creditors of the Company) (each, a "Counterparty").

"<u>Capital Transaction</u>" means a transaction in which the Company (or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession ("<u>DIP</u>") financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

"<u>Mining Assets</u>" means any entities or assets related to the Company's mining business segment, including but not limited to any loans made to third-party mining or hosting companies, all or substantially all of the mining equipment owned by the Company (in a bulk transfer or other similar block sale), and any interest in mining operations including any joint ventures.

"<u>Mining Assets Sale</u>" means any sale, disposition or other transfer (regardless of form) (in one or a series of transactions) of the Mining Assets.

MOELIS & COMPANY

"Claim Assets" means any bankruptcy claims, litigation claims, or other claims against FTX US, Alameda, West Realm Shires, FTX Digital, or other FTX-affiliated entities (collectively, the "FTX Entities"), including but not limited to claims arising from loans made by the Company to the FTX Entities (and any related security interests provided) and claims related to fraudulent inducement.

"Claim Monetization Transaction" means (i) a sale of the Claim Assets, in whole or in part, (ii) a financing of the Claim Assets, (iii) any other conversion or exchange of the Claim Assets (or portions of the Claim Assets or collateral pledged or to be pledged against the Claim Assets (other than liquidation of collateral pledged to secure the loans made by the Company to the FTX Entities)), in each case, for cash, securities, assets or other consideration.

A "Transaction" means either a Restructuring, a Sale Transaction, a Capital Transaction, a Mining Assets Sale, and/or a Claim Monetization Transaction, as the context requires.

1. As part of our engagement, Moelis will if appropriate and requested:

(a)     assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)     assist the Company in reviewing and analyzing any potential Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction;

(c)     assist the Company in negotiating any Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction;

(d)     advise the Company on the terms of securities it offers in any potential Capital Transaction;

(e)     advise the Company on its preparation of information memoranda for a potential Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction (each, an "Information Memo");

(f)     assist the Company in contacting potential Counterparties or purchasers of a Capital Transaction ("Purchasers") that Moelis and the Company agree are appropriate for the applicable Transaction(s), and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

(g)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction as Moelis and the Company may mutually agree upon in writing.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis. Moelis' obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

MOELIS & COMPANY

2. (a)  As compensation for our services hereunder, the Company agrees to pay Moelis the following nonrefundable cash fees:

Retainer Fee

(i)      Promptly after execution of this agreement, a retainer fee of $500,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against the Restructuring Fee or the Sale Transaction Fee (each as defined below).

Monthly Fee

(ii)     During the term of this agreement, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement.  Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement. After three (3) months, 50% of the Monthly Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee.

Restructuring Fee

(iii)    At the closing of a Restructuring, a fee (the "Restructuring Fee") of $8,000,000.  If, at the closing of a Restructuring, Moelis has not received a Mining Assets Sale Fee or a Claim Monetization Transaction Fee (each as defined below), the Restructuring Fee will increase to $9,000,000.

Sale Transaction Fee

(iv)     At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $8,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Company shall pay the Restructuring Fee. If, at the closing of a Sale Transaction, Moelis has not received a Mining Assets Sale Fee or a Claim Monetization Transaction Fee, the Sale Transaction Fee will increase to $9,000,000.

Capital Transaction Fee

(v)      At the closing of any Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") as follows:

(a) 1.00% of the amount Raised (as defined below) in a Capital Transaction that is a first-lien debt financing, including a DIP financing; provided, however, that 50% of any fee earned on a DIP financing will be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee; plus

MOELIS & COMPANY

       (b) 3.00% of the amount Raised in a Capital Transaction that is any other debt financing, plus

       (c) 4.00% of the amount Raised in a Capital Transaction that is equity, equity-linked interests, options, warrants or other rights to acquire equity interests.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

Mining Assets Sale Fee

(vi)     At the closing of a Mining Assets Sale, a non-refundable cash fee (the "Mining Assets Sale Fee") of $500,000, plus 5.0% of the total gross consideration received or to be received in connection with a Mining Assets Sale.

The Company will pay a separate Mining Assets Sale Fee in respect of each Mining Assets Sale in the event that more than one Mining Assets Sale occurs.

Claim Monetization Transaction Fee

(vii)    At the closing of a Claim Monetization Transaction, a non-refundable cash fee (the "Claim Monetization Transaction Fee") of $500,000, plus 5.0% of the total gross consideration received or to be received in connection with a Claim Monetization Transaction.

The Company will pay a separate Claim Monetization Transaction Fee in respect of each Claim Monetization Transaction in the event that more than one Claim Monetization Transaction occurs. If a Transaction triggers both a Claim Monetization Transaction Fee and a Capital Transaction Fee, the Company shall pay the Claim Monetization Transaction Fee only.

The fees set forth in Section 2(a)(iii), (iv), (v), (vi), and (vii) shall be referred to herein as the "Transaction Fees". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof. Notwithstanding anything to the contrary in this agreement, the aggregate amount of Mining Assets Sale Fees and Claim Monetization Transaction Fees earned in connection with one or more Mining Assets Sales or Claim Monetization Transactions shall not exceed $4,000,000.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates any Transaction(s), or enters into an agreement (or a Plan is filed) regarding any Transaction(s) and any such Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) specified in Section 2(a) above immediately upon the closing of any such Transaction(s). The "Tail Period" shall end 12 months following the termination of this agreement.

       (b) Whether or not the Company consummates any Transaction, the Company will reimburse Moelis for all of its expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of its legal counsel. In connection therewith, the Company shall pay Moelis upon execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this agreement. Moelis agrees to

MOELIS & COMPANY

provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

(c)  The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under *Annex A* hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on *Schedule 1.*

(d)  If Moelis is required to render services not set forth in this agreement, including, without limitation, producing documents, being deposed, providing testimony, relating to this agreement or the transactions contemplated by this agreement, the Company will pay Moelis additional fees to be mutually agreed for such services, plus reasonable costs and expenses related thereto.

(e)  Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.  If a Bankruptcy Case is commenced:

(a)  The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all expenses that Moelis incurred prior to commencement in accordance with this agreement.

(b)  Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case.  If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall not be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c)  Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The

5

MOELIS & COMPANY

Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d)  The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.  The Company will furnish Moelis with all information concerning the Company and, to the extent available to the Company, any Counterparty as Moelis reasonably deems appropriate (collectively, the "Information") to execute this engagement and will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of any Counterparty. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise Moelis promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, any Counterparty that occurs during the term of this agreement. In performing our services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Moelis is not evaluating the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters. Moelis will be entitled to assume that financial forecasts and projections the Company or any Counterparty makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Counterparty, as the case may be, as to the matters covered thereby. The Company authorizes Moelis to transmit any Information Memos to potential parties to any Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

Moelis will keep Information concerning the Company provided to Moelis in connection with this agreement confidential pursuant to the Confidentiality Agreement between the Company and Moelis, dated November 15, 2022, for the term thereof; provided Moelis may provide such Information to prospective Transaction parties as contemplated by this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective Purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction, Capital Transaction, Mining Assets Sale, or Claim Monetization Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

MOELIS & COMPANY

At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to purchasers of any security,  (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act of 1933, as amended (the "Securities Act"), (iii) the Company shall deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in the form of *Annex B* and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request.  In addition, the Company hereby makes the representation, warranty and covenant with respect to bad actor disqualifications set forth in *Annex B.*

5.   The Company will not disclose, summarize or refer to any of Moelis' advice or our valuation or the terms of this agreement publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by subpoena or court order, the Company will, to the extent legally permitted, provide Moelis with reasonable advance notice and permit Moelis to comment on the form and content of the disclosure. Moelis consents to the inclusion of a summary of its valuation in the disclosure statement for a Plan, if required to be included in such disclosure statement; provided that Moelis and its counsel have approved any reference to or summary or description of the valuation in advance.  Moelis may, at our option and expense after announcement of any Transaction by the Company, announce or disclose publicly such Transaction and Moelis' role in it for marketing purposes, including, without limitation, on Moelis' website, utilizing only public information and/or stating in customary "tombstone" format that Moelis has acted as  financial advisor, capital markets advisor and/or investment banker, as applicable, to the Company in connection with any Transaction.  If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of any Transaction. Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Moelis may also announce or disclose publicly its role in the potential Transaction.

6.    Moelis is an independent contractor with the contractual obligations described herein owing solely to the Company. The parties agree that Moelis is not acting as an agent or fiduciary of the Company or any other party, and the Company agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Company and Moelis agree to the indemnity and other provisions set forth in *Annex A*. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The obligations hereunder (including *Annex A*) of the entities comprising the Company shall be joint and several.

7.   Either the Company or Moelis may terminate this agreement only upon written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses that became payable hereunder prior to termination and (ii) *Annex A*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the termination of this agreement.

8.   Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise.  Moelis and its affiliates may have interests that differ from the interests of the Company.  Moelis and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this

MOELIS & COMPANY

agreement.  Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.  Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

9.  This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Moelis. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This agreement shall be binding upon the Company and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

M O E L I S & C O M P A N Y

Moelis is delighted to accept this engagement and looks forward to working with the Company.  Please sign and return the enclosed duplicate of this agreement.  The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name:  Jared Dermont
Title: Managing Director

Agreed to as of the date first written above:

BLOCKFI INC. (ON BEHALF OF ITSELF AND ITS DIRECT AND INDIRECT SUBSIDIARIES)

By: _____

Name: Zachary Prince
Title: Chief Executive Officer

MOELIS & COMPANY

MOELIS & COMPANY

## ANNEX A

In the event that Moelis or its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein(including, without limitation, related matters prior to the date of this agreement), the Company will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the agreement or the matters referred to herein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the agreement or the matters referred to herein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the agreement), or (B) otherwise arising out of, related to or in connection with this agreement or Moelis' performance hereunder or any other services or advice the Company requests any Indemnified Person to provide (in each case, including prior to the date of this agreement), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Indemnified Person. To the extent it is subsequently finally judicially determined that any Losses resulted primarily from the bad faith, willful misconduct or gross negligence of an Indemnified Person, Moelis shall repay amounts previously paid to the Indemnified Persons by the Company pursuant to this *Annex A.*

If such indemnification or limitation on liability for any reason is not available or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Moelis, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with this agreement.  Relative benefits to the Company, on the one hand, and Moelis, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees received or proposed to be received by Moelis in connection with this agreement.

The Company will not without the prior written consent of Moelis (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action or participate in or facilitate a Settlement of any Action  in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement

MOELIS & COMPANY

includes a release of each Indemnified Person from any Losses arising out of such Action.  The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent.  No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.  The Company's obligations set forth herein shall be in addition to any rights that any Indemnified Person may have at law or otherwise.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

MOELIS & COMPANY

## ANNEX B

### Big Boy Representation

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any  investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

### Bad Actor Representation and Covenant

The Company represents and warrants to Moelis that, as of the date of this engagement letter, neither the Company nor any of its respective managing members, general partners, directors and executive officers, any other officers participating in the Capital Transaction, any 20% beneficial owners of the Company, calculated on the basis of total voting power, promoters connected to the Company, nor any persons compensated for soliciting investors, including their directors, general partners and managing members (each, a "Covered Person"), have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act and as of the closing date of any Capital Transaction, neither the Company nor any Covered Person will have been convicted of or otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act. Furthermore, the Company agrees to notify Moelis immediately if at any time it becomes aware that it or any of its Covered Persons have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act.

MOELIS & COMPANY

## SCHEDULE 1

Wire Instructions:
Beneficiary Account: Moelis & Company LLC
Routing Number: 122016066
Account Number: 412956230
International SWIFT Code: CINAUS6L

City National Bank
525 S. Flower Street
24th Floor
Los Angeles, CA 90071