**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' RESPONSE AND OBJECTION TO MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GEORGE J. GERRO FOR ENTRY OF AN ORDER (I) GRANTING PARTIAL RELIEF FROM THE AUTOMATIC STAY (11 U.S.C. §§ 362(d)(1)) AND DISCHARGE INJUNCTION (11 U.S.C. § 524(a)) WITH RESPECT TO CERTAIN NON-CORE PROCEEDINGS; AND (II) EXTENDING TIME TO FILE A PROOF OF CLAIM (F.R.B.P. 3002(c)(3))**

TO:   THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Debtors"), as debtors and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Debtors' Response and Objection to Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (I) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) With Respect to Certain Non-core Proceedings; and (II) Extending Time to File a Proof of Claim (F.R.B.P. 3002(c)(3))* (the "Objection") in response to movant George Gerro's ("Gerro") *Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (I) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) With Respect to Certain Non-core Proceedings; and (II) Extending Time to File a Proof of Claim (F.R.B.P. 3002(c)(3))* (the "Lift Stay Motion"). In support of the Objection, the Debtors respectfully represent as follows:

**Preliminary Statement**[2]

1. Movant, George Gerro, is unable to demonstrate that cause exists to lift the automatic stay and Gerro's request for relief from the discharge injunction is both unsupported and premature. However, before addressing the complexities and tortured process surrounding the Debtors' years-long litigation with Gerro, it is important to discuss the relatively simple and straightforward transaction that led to Gerro's suit in the first instance. As is discussed in greater detail below, Gerro, a lawyer who has proceeded *pro se* in his litigation against BF Lending, has to date brought three separate suits against BF Lending during the past two and a half years. While Gerro has proceeded *pro se*, BF Lending has incurred millions of dollars in legal fees and expenses

---

[2] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meaning ascribed to such terms elsewhere in the Lift Stay Motion.

2

in connection with Gerro's lawsuits. Gerro seeks stay relief with respect to only the first suit, "*Gerro I.*"

### A. Loan Agreement with Gerro

2. In February 2020, Gerro obtained an approximately $2.275 million Loan from Debtor BF Lending collateralized by bitcoin pledged by Gerro and posted as security for the Loan. The Loan Agreement required Gerro to maintain a certain loan-to-value ratio (LTV) and permitted BlockFi to liquidate Gerro's bitcoin collateral and pay down the Loan if Gerro failed to maintain the required LTV. In March 2020, the value of bitcoin dropped, and the LTV fell below the required threshold. After multiple unheeded alerts and requests from BF Lending to Gerro to resolve the LTV imbalance, BF Lending liquidated a majority of Gerro's bitcoin collateral and paid down a majority of the Loan in accordance with the terms of the Loan Agreement. At Gerro's subsequent request, BF Lending paid off the remaining Loan amount through a further liquidation of the bitcoin collateral and returned the remaining bitcoin to Gerro.

3. Over the next few weeks, the parties discussed the possibility of reinstating the loan, but no agreement was reached. Meanwhile, in the month after the liquidation of Gerro's bitcoin, the price of bitcoin increased. Apparently disappointed that he would not personally benefit from this increase due to the prior liquidation, Gerro—more than a month and a half after the liquidation, and more than a month after he had last communicated with BF Lending—sought to "reverse" the sales of bitcoin. BF Lending immediately explained that it could not reverse the liquidation, particularly given that it was more than a month and a half since the liquidation and that the value of bitcoin was much higher than at the time when Gerro's bitcoin was liquidated. BF Lending therefore refused Gerro's request, as it had complied with its contractual obligations

3

to Gerro, had properly exercised its rights under the Loan Agreement, and was under no obligation to reverse the liquidation and loan payoff.

4. When BF Lending did not agree to reverse the loan payoff, Gerro commenced a suit in the California Trial Court asserting claims for breach of contract, California Commercial Code violations, and similar claims against BF Lending and its retail loan servicer, Scratch Services.

5. Soon after *Gerro I* was commenced, BF Lending, relying on a Delaware forum selection clause in the Loan Agreement, filed a motion to stay the suit on the ground of *forum non conveniens*. The California Trial Court granted BF Lending's motion and Gerro appealed. The California Court of Appeals reversed the trial court, and BF Lending and Scratch petitioned the California Supreme Court for review.[3] The California Supreme Court granted the petition. At its essence, the issue on appeal is whether Gerro should pursue his possible claims against BF Lending in California or in Delaware.

### B. The Lift Stay Motion Should Be Denied

6. Gerro cannot meet his high burden to establish cause to lift the automatic stay (much less cause to grant an exception to the discharge injunction). Contrary to Gerro's assertions, Gerro is a general unsecured creditor in these Chapter 11 Cases and any claims Gerro holds against the Debtors are core claims, albeit disputed, contingent, and unliquidated, and therefore subject to bankruptcy court jurisdiction. As such, the filing of the Chapter 11 petitions has decreased the importance to BF Lending and its creditors of the issues on appeal in *Gerro I*—i.e., whether

---

[3] As is detailed below, for purposes of appeal the Court of Appeal consolidated *Gerro I* and the second lawsuit filed by Gerro against BF Lending (*Gerro II*), a litigation that the trial Court and Court of Appeal held was duplicative of *Gerro I*. For simplicity, this brief primarily refers to *Gerro I* despite this consolidation.

4

California or Delaware is the proper forum.[4] Gerro's claims can be effectively and efficiently adjudicated and administered through the bankruptcy claims administration process along with the thousands of other claims by the Debtors' general unsecured creditors. Indeed, the procedural posture of *Gerro I*, weighs heavily against lifting the automatic stay. It would be substantially more efficient, timely, and cost-effective for Gerro's claims to be adjudicated by the Bankruptcy Court. Even if the stay is lifted, it will likely be months or even years before the appeal in *Gerro I* is heard and decided. Upon receipt of the California Supreme Court's decision, the suit would either be sent back to the California Trial Court or Gerro would need to initiate a lawsuit in Delaware, either of which could require additional years as the litigation was only in its early stages when the California Trial Court first ruled that venue in California was improper.

7. As more fully discussed below, virtually none of the applicable factors support stay relief here. Moreover, Gerro's request for an exception to the discharge injunction is not only unsupported, but it is also premature. Gerro's Lift Stay Motion must therefore be denied.

## Relevant Background

8. Prior to the Petition Date, Debtor BlockFi Lending, LLC ("BF Lending") was a finance lender licensed in the State of California. As a lender, BF Lending made loans to customers secured by cryptocurrency, such as bitcoin, which customers pledged as collateral for such loans.

9. In February 2020, Gerro and BF Lending entered into a loan agreement (the "Loan Agreement") pursuant to which Gerro borrowed approximately $2.275 million (the "Loan") from BF Lending and transferred approximately 441 bitcoin to BF Lending as security (the "Collateral"). Pursuant to the terms of the Loan Agreement, Gerro was required to maintain a specified loan-to-value ratio (the "LTV") between the amount of the Loan and the value of the

---

[4] BF Lending takes no position on whether the issues on appeal in *Gerro I* remain of importance to other parties to that case or to Gerro's claims against them.

5

Collateral pledged to secure the Loan. The Loan Agreement provided that the value of the Collateral, for purposes of calculating the required LTV, was determined by the trading value of the Collateral. Under the terms and conditions of the Loan Agreement, if Gerro failed to maintain the required LTV, BF Lending was authorized to liquidate the Collateral pledged by Gerro to satisfy some or all of the outstanding amount of the Loan.

10. In March 2020, the value of bitcoin dropped. BF Lending contacted Gerro multiple times to inform him that, due to the drop in value of bitcoin, Gerro's Loan was out of compliance with the LTV requirements. BF Lending also informed Gerro that if he failed to post additional collateral, BF Lending would exercise its rights under the Loan Agreement and liquidate Collateral to pay down the Loan.

11. Gerro failed to post additional collateral or otherwise address his failure to comply with the LTV requirements under the Loan Agreement. As a result, BF Lending exercised its right to liquidate the pledged Collateral and used the proceeds to pay down a majority of the Loan balance. Rather than take issue with the liquidation, Gerro thanked BF Lending for the update, asked that BF Lending disregard "any previous request for a return of remaining collateral," and stated: "I appreciate that I have an opportunity to remain a client of Blockfi." After additional correspondence between BF Lending and Gerro, Gerro requested that BF Lending pay off the remainder of the Loan by liquidating additional Collateral. In response to Gerro's request, BF Lending liquidated enough Collateral to pay down the remainder of the Loan and transferred the remaining Collateral to Gerro.

12. Over the succeeding weeks, BF Lending and Gerro discussed the possibility of "reversing" the liquidation of Collateral and reinstating the Loan. However, no agreement was ever reached by the parties and the parties ceased discussions. In the meantime, the trading value

of bitcoin rebounded. In turn, more than a month after Gerro had last communicated with BlockFi at all, Gerro emailed BF Lending in an attempt to "reverse" the liquidation of the Collateral. BF Lending refused Gerro's request, as BF Lending was under no obligation to agree to a reversal and reinstatement, it had been more than a month since the parties had even corresponded, and a reversal would have resulted in a loss of over $1 million to BF Lending.

13. Soon thereafter, acting *pro se*, Gerro filed a lawsuit in the Los Angeles Superior Court (the "*Gerro I* Trial Court" or "California Trial Court") against BF Lending for breach of contract, California Commercial Code violations, negligence, conversion, trespass to chattels, quantum valebant, and even claims that BF Lending somehow violated California pawnbroker laws ("*Gerro I*"). In the same suit, Gerro asserted similar claims against Scratch Services, BF Lending's loan servicer.

14. The Loan Agreement contains a forum selection clause requiring that any litigation brought in connection with the Loan Agreement be brought in an applicable Delaware court (the "Forum Selection Clause"). Citing the Forum Selection Clause, BF Lending filed a motion to stay *Gerro I* on the ground of *forum non conveniens* (the "FNC Motion"). The *Gerro I* Trial Court granted the FNC Motion and entered an order staying *Gerro I* (the "California Stay Order"). Gerro thereafter filed an appeal of the California Stay Order (the "*Gerro I* Appeal") before the California Court of Appeal (the "California Appeals Court").

15. Rather than simply proceed with his appeal in *Gerro I*, and immediately after filing the *Gerro I* Appeal, Gerro commenced a second action ("*Gerro II*") in a California Superior Court raising nearly identical claims to the claims raised in *Gerro I*, but this time seeking injunctive relief under Section 17200 of the California Business and Professions Code. In light of the substantial overlap between the issues raised in *Gerro I* and *Gerro II*, BF Lending filed a motion for a stay in

7

abeyance pending a decision in *Gerro I*. The trial court granted that motion. Gerro is not seeking stay relief with respect to *Gerro II* through his Lift Stay Motion.

16.    Not to be deterred, Gerro (continuing to act *pro se*) filed a third action, this time a petition for writ of mandate to revoke BF Lending's lending license in California ("Gerro III") with BF Lending as a real party in interest and the Commissioner of the California Department of Financial Protection and Innovation (the "DFPI") as the respondent. BF Lending filed a demurrer as to Gerro's first amended writ petition, and the trial court sustained the demurrer. Gerro thereafter sought and was granted leave to amend. In response Gerro filed a complaint for declaratory relief, and that complaint and corresponding demurrers resulted in *Gerro III* being split into two separate cases. The demurrers from BlockFi and the DFPI in their respective cases were ultimately sustained, and both *Gerro III* cases were dismissed. Gerro has appealed those dismissals. He is not seeking stay relief with respect to *Gerro III* through his Lift Stay Motion.

17.    On June 14, 2022, after consolidation of *Gerro I* and *Gerro II* for purposes of appeal, the California Appeals Court reversed the *Gerro I* Trial Court's entry of the California Stay Order in *Gerro I* while affirming the stay in abeyance in *Gerro II* (the "California Appeals Court Decision"). BF Lending thereafter petitioned the California Supreme Court to review the California Appeals Court Decision, and the California Supreme Court granted that petition, stating that the issue under consideration was "whether the Court of Appeal correctly [held] that this action must remain in California despite the contractual forum selection clause?"[5] *Gerro I* and *Gerro II* (as noted, consolidated for purposes of appeal) were on appeal to the California Supreme Court on the Petition Date. Briefing of the issues on appeal has been partially completed, but proceedings

---

[5] *See* Docket Entry for 09/14/2022 of the *Gerro I* California Supreme Court Docket accessible at: https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2387411&doc_no=S275530&request_token=OCIwLSEmPkw2WyBdSCM9SENIUEg0UDxTJCNOUzlTPDtLCg%3D%3D

have now been stayed by the filing of the Chapter 11 Cases. If the stay is lifted to allow the *Gerro I* appeal to move forward, based on the California Supreme Court's current docket, the Debtors estimate that the California Supreme Court will issue a ruling in *Gerro I* in approximately 24 months.[6]

## Objection and Basis Therefor

### A. Gerro's Request for Stay Relief Must Be Denied

18. Section 362(a) of the Bankruptcy Code provides that the filing of a petition for relief operates as a stay of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> …
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a).

19. The scope of the automatic stay is broad and stays all proceedings against the debtors or relating to property of the estate. *In re Gardner*, 2016 Bankr. LEXIS 1059, **8, 12 (Bankr. D. N.J. Mar. 31, 2016). While Section 362(a) stays a broad range of actions against a debtor, relief from the automatic stay may be granted for "cause." See 11 U.S.C. § 362(f). A movant for stay relief has the initial burden of establishing that cause exists to lift the stay. *See, e.g.*, *In re Score Board, Inc.*, 238 B.R. 585, 593 (D. N.J. 1999). Courts are typically reluctant to lift the stay to allow general unsecured creditors to pursue litigation outside the bankruptcy claims

---

[6] *See*, *e.g.*, the following sources describing ruling times by the California Supreme Court. https://www.sfbar.org/wp-content/uploads/2021/03/ca-supreme-court.pdf; https://www.atthelectern.com/how-long-does-it-take-the-california-supreme-court-to-decide-a-case-on-the-merits/; https://www.californiasupremecourtreview.com/2018/04/how-long-do-civil-cases-take-to-argument-and-decision/.

administration process absent "extraordinary circumstances." *See In re Eagle Enterprises, Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) ("Generally, unsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances."). As one court noted:

> If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. '[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief.'"

*In re Res. Cap., LLC*, 2012 Bankr. LEXIS 3641, at *16 (Bankr. S.D.N.Y. Aug. 8, 2012) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

20. Cause is not defined in the Bankruptcy Code and has been interpreted by courts as a broad and flexible concept determined based on "the totality of the circumstances in each particular case." *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 129-30 (Bankr. D. N.J. 2003) (quoting *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). Courts have applied a variety of tests and considered a wide range of factors to assist in deciding whether cause exists to lift the stay.

### a. Three-Part Balancing Test

21. One test that has been applied by courts within the Third Circuit is a three-part balancing test comprised of the following considerations:

> (1) [whether] [a]ny 'great prejudice' to either the bankrupt estate or the debtor will result from continuation of a civil suit; (2) [whether] the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor; and (3) [whether] the creditor has a probability of prevailing on the merits of his case.

See e.g. *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D. N.J. 1999) (applying the three-part balancing test to determine whether to lift the automatic stay to allow the litigation to continue); *In re Leatherman*, Case No. 18-24818 (Docket No. 27) (Bankr. D. N.J. Apr. 15, 2019) (same); *In re F-Squared Inv. Management, LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016) (applying the three-

part test to assess whether the stay should be lifted to allow litigation to continue in another forum); *In re Scarborough-St. James Corp.*, 535 B.R. 60, 67-68 (Bankr. D. Del. 2015) ("When a party seeks relief from stay to continue with prepetition litigation, this Court generally applies the following three prong balancing test: [citing factors]"); *In re Stone Res., Inc.*, 448 B.R. 361, 371 (Bankr. E.D. Pa. 2011) (applying the three-part test).

22. Here, each of the three factors weighs decisively in favor of denying the Lift Stay Motion. First, the Debtors and their estates will continue to incur significant costs, delays, and the diversion of critical human resources if the stay is lifted and *Gerro I* continues forward in California. The Debtors have been litigating with Gerro for more than two years and have already incurred significant legal expenses while defending themselves in *Gerro I*, *Gerro II*, and *Gerro III*. Despite the expenses incurred and the time spent, and largely due to Gerro's serial litigation, the Debtors and Gerro are no closer to a resolution of Gerro's asserted claims now than they were when *Gerro I* was first commenced. If the stay is lifted and Gerro is allowed to continue the litigation in California, the Debtors will continue to incur significant expenses and the procedural posture of the case guarantees that there will be no resolution of Gerro's claims for years.

23. Second, Gerro will not suffer any relevant hardships if the stay remains in place, and Gerro will benefit from a less costly and more streamlined and efficient claims resolution process in the Bankruptcy Court. If the stay remains in place, Gerro may liquidate his claims against the Debtors through the claims-administration process in the Bankruptcy Court on the same terms and under the same procedures as the Debtors' other general unsecured creditors. A resolution of Gerro's claims may be achieved much more quickly in the Bankruptcy Court than in California and at a lower cost for all parties involved, including Gerro. In any event, any hardship Gerro may suffer will be much less than the hardship, inconvenience, expense, and uncertainty

that will be suffered by the Debtors and their estates if the stay is lifted and *Gerro I* is allowed to continue forward.

24. <u>Finally</u>, Gerro is unlikely to succeed on the merits of his underlying claims. As discussed previously, the Debtors complied with their obligations and appropriately exercised their rights under the Loan Agreement when they liquidated the Collateral to pay down the Loan when the LTV requirements were not achieved. It was only after the price of bitcoin rebounded (and more than a month after Gerro last communicated with BlockFi at all) that Gerro ultimately demanded to have the liquidation of his bitcoin Collateral reversed, which BF Lending had no obligation to do. Moreover, in rulings on BF Lending's demurrer's in *Gerro III*, the trial judge in two instances has expressed skepticism regarding the validity of certain claims raised by Gerro in preliminary findings.[7]

25. In any event, no court, whether in California or Delaware, has yet addressed the merits of Gerro's underlying claims, and therefore, the courts of California or Delaware are in no position to render a speedy or efficient judgment on the underlying merits of Gerro's claim. The Bankruptcy Court is best positioned to make an ultimate determination on the merits of Gerro's claims. Indeed, Gerro's actions to date, filing multiple suits asserting the same or similar claims, and pursuing multiple appeals, seem more focused on punishing or harassing the Debtors than seeking a resolution of Gerro's underlying claims.

---

[7] *See*, *Gerro v. Shultz*, Case No. 21STCP02023, Tentative Decision on Demurrers to Petition for Writ of Mandate (Cal. Super. Ct. Nov. 16, 2021); *Gerro v. Shultz*, Case No. 21STCP02023, Tentative Decision on Demurrers to Petition for Writ of Mandate (Cal. Super. Ct. Apr. 21, 2022).

### b. Twelve-Factor *Sonnax* Text

26. In addition to the three-part test described above, Courts often consider the following twelve factors when determining whether cause exists to lift the stay to allow litigation to proceed in a separate forum:

1) whether relief would result in a partial or complete resolution of the issues;

2) lack of any connection with or interference with the bankruptcy case;

3) whether the other proceeding involves the debtor as a fiduciary;

4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5) whether the debtor's insurer has assumed full responsibility for defending it;

6) whether the action primarily involves third parties;

7) whether litigation in another forum would prejudice the interests of other creditors;

8) whether the judgment claim arising from the other action is subject to equitable subordination;

9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10) the interests of judicial economy and the expeditious and economical resolution of litigation;

11) whether the parties are ready for trial in the other proceeding; and

12) impact of the stay on the parties and the balance of the harms.

*See, e.g.*, *Cortuk v. Banco Turco Romana (In re Cortuk)*, 2019 U.S. Dist. LEXIS 84618, *9 (D. N.J. May 20, 2019) (citing *Sonnax Indus., Inc., v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990)); *In re Mid-Atlantic*, 304 B.R. at 130 (citations omitted); *Ledgemont Int'l Media Holdings LLC v. Barksdale (In re Barksdale)*, 2015 Bankr. LEXIS 3865, (Bankr. D. N.J. Nov. 10, 2015) (analyzing 12 *Sonnax* factors to determine whether stay relief was appropriate to allow litigation to continue in another forum); *In re Patriot Contr. Corp.*, 2006

Bankr. LEXIS 4133, **7-8 (Bankr. D. N.J. May 31, 2006) (citing 12 *Sonnax* factors as relevant factors for determining whether to lift the stay to allow litigation in another forum to continuum). Notably, "[a]ll twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay." *In re Mid-Atlantic*, 304 B.R. at 130.

27. As discussed below, the factors weigh heavily against lifting the automatic stay.

1) Whether relief would result in a partial or complete resolution of the issues.

    a. Granting stay relief will not result in a resolution of Gerro's claims against the Debtors. By lifting the stay, the appeal will be allowed to go forward, but resolution of the appeal will only resolve the forum issue. To date, no discovery or significant motion practice has been completed in *Gerro I*, as *Gerro I* was stayed promptly after filing when the California Trial Court granted BlockFi's motion to stay on the ground of *forum non conveniens* (only minimal discovery occurred in the related *Gerro II* action). Indeed, BlockFi has yet to have its pleading challenges to the adequacy of Gerro's complaint heard. Therefore, resolving the appeal will not resolve any substantive issues on the merits of Gerro's claims. Rather than lifting the stay and litigating the claims raised in *Gerro I* in a California or Delaware trial court, Gerro's claims can be litigated or resolved through the claims administration process in the Bankruptcy Court along with the claims of the Debtors' other general unsecured creditors.

2) Lack of any connection with or interference with the bankruptcy case.

    a. This factor weighs in favor of denying the Lift Stay Motion. Contrary to Gerro's assertion otherwise, the determination of Gerro's disputed, contingent, and unliquidated claims against the Debtors is a core proceeding and falls squarely within the Bankruptcy Court's jurisdiction as a component of the claims administration process. The only other party to the suit is Scratch, in its capacity as BlockFi's loan servicer for retail loans. Although Scratch is not a debtor, as BlockFi's loan servicer, and as set forth in more detail below, Scratch may assert indemnity claims against the Debtors with respect to the claims asserted by Gerro in *Gerro I*.

3) Whether the other proceeding involves the debtor as a fiduciary.

    a. This factor weighs in favor of denying the Lift Stay Motion, as BF Lending is being sued on its own behalf and not as a fiduciary. Where a debtor is acting as a fiduciary in litigation, this factor will typically favor lifting the stay. When a debtor is being sued in its own capacity, however, this factor

14

weighs against the lifting of the automatic stay. *See In re Res. Cap.*, 2012 Bankr. LEXIS 3641 at * 19 ("Generally, proceedings in which the debtor is a fiduciary…need not be stayed because they bear no relationship to the purpose of the automatic stay.") (quoting *In re Curtis*, 40 B.R. 795, 799 (Bankr. Utah 1984)).

4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action.

   a. This factor weighs in favor of denying the Lift Stay Motion as no specialized tribunal has been established for litigating the claims asserted in *Gerro I*. Moreover, the Bankruptcy Court is well situated to address claims of the type asserted in *Gerro I*.

5) Whether the debtor's insurer has assumed full responsibility for defending it.

   a. This factor weighs in favor of denying the Lift Stay Motion. The Debtors' insurer has not assumed full responsibility for defending BlockFi in *Gerro I* and all the other litigation brought by Gerro. To date, the Debtors have expended millions of dollars in attorneys' fees and related costs defending the claims brought by Gerro. If the Debtors are required to continue litigating *Gerro I* in the California Supreme Court, and then in whichever jurisdiction the California Supreme Court determines is appropriate, the Debtors are likely to incur similar costs and expenses, and potentially even more. The claims asserted in *Gerro I* will be resolved much more efficiently and cost-effectively in the Bankruptcy Court.

6) Whether the action primarily involves third parties.

   a. This factor weighs in favor of denying the Lift Stay Motion. BlockFi is the primary defendant in *Gerro I*. The only other party besides Gerro is Scratch, BlockFi's loan servicer. As discussed previously, Scratch may seek to assert indemnification claims against BlockFi for costs, expenses, and any ultimate liability associated with *Gerro I*. Any indemnification claims Scratch may assert would also be general unsecured claims subject to the Bankruptcy Court's jurisdiction and the bankruptcy claims administration process.

7) Whether litigation in another forum would prejudice the interests of other creditors.

   a. This factor weighs in favor of denying the Lift Stay Motion. If the stay is lifted, the Debtors are likely to incur substantially greater costs and expenses than would be incurred if the claims raised in *Gerro I* are resolved through the bankruptcy claims administration process. As a result, BlockFi's other creditors and the Debtors' estates generally will be worse off if the stay is lifted and Gerro is permitted to continue to pursue *Gerro I* in the California courts.

15

8) Whether the judgment claim arising from the other action is subject to equitable subordination.

   a. This factor is not relevant.

9) Whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor.

   a. This factor is not relevant. Because the claims Gerro is asserting in *Gerro I* are prepetition general unsecured claims, Gerro will not be able to obtain a judicial lien against the Debtors and, regardless, any such lien would be avoidable pursuant to Bankruptcy Code § 544 and applicable state law.

10) The interests of judicial economy and the expeditious and economical resolution of litigation.

    a. This factor weighs in favor of denying the Lift Stay Motion. For the reasons previously stated, it would be much more efficient and expeditious to resolve Gerro's claims in the Bankruptcy Court rather than to lift the stay to liquidate those claims in the California or Delaware Courts. Moreover, it will be much more economical to adjudicate the claims asserted in *Gerro I* in the Bankruptcy Court. The bankruptcy process provides the most efficient centralized forum for resolving all claims against the Debtors.

11) Whether the parties are ready for trial in the other proceeding.

    a. This factor weighs in favor of denying the Lift Stay Motion. To date, no discovery or significant motion practice has been completed in *Gerro I*, as *Gerro I* was stayed promptly after filing when the California Trial Court granted BF Lending's FNC Motion. Therefore, resolving the appeal will not resolve any substantive issues on the merits of Gerro's claims. If the stay is lifted, a trial on the merits of the claims asserted in *Gerro I* will not proceed for several years. Gerro's claims can be litigated or resolved much more expeditiously and efficiently through the claims administration process in the Bankruptcy Court along with the claims of the Debtors' other general unsecured creditors. It is simply not efficient or economical to allow litigation related to alleged unsecured claims to proceed in another forum where the litigation has not progressed beyond appeals related to venue.

12) Impact of the stay on the parties and the balance of the harms.

    a. This factor weighs in favor of denying the Lift Stay Motion. All parties, including Gerro, will be best served by having the claims asserted in *Gerro I* adjudicated by the Bankruptcy Court through the claims administration process. Gerro's claims are against the Debtors and Gerro can assert those claims in the Bankruptcy Court like all of the Debtors' other general unsecured creditors. Moreover, those claims can be resolved much more

quickly in the Bankruptcy Court and likely at a lower cost which will inure to the benefit of Gerro, the Debtors, and the Debtors' estates.

28. An analysis of each of the twelve factors makes clear that cause does not exist to grant the Stay Motion to allow Gerro to continue pursuing the claims asserted in *Gerro I* in the California or Delaware courts. It is contrary to judicial economy, general efficiency, and fairness to the Debtors, their estates, and their other general unsecured creditors to have Gerro's claims adjudicated in California or Delaware instead of by the Bankruptcy Court.

29. For the reasons stated above, the Court should deny Gerro's request to have the automatic stay lifted.

### B. Gerro's Request for Relief from the Discharge Injunction Must Be Denied

30. If the stay is not lifted, Gerro's request for relief from the discharge injunction will be moot as Gerro will be able to assert his claims in the Bankruptcy Case.

31. Even if the stay is lifted, Gerro's request for relief from the discharge injunction is premature as the Debtors have not yet sought approval of a disclosure statement, much less requested confirmation of a plan.

32. Gerro's request for relief from the discharge injunction should therefore be denied without prejudice to allow Gerro to request appropriate relief at such time as the Debtors have requested the imposition of a discharge injunction in connection with a plan.

### C. Gerro's Request to Extend the Time to File a Proof of Claim Should Be Denied

33. Gerro has requested an extension of his deadline to file a proof of claim under Bankruptcy Rule 3003(c)(3) until such time as a final judgment has been entered in *Gerro I*. Gerro's request for such an extension highlights one of many reasons why the Court should deny Gerro's request for stay relief. For the reasons stated previously, if the automatic stay is lifted it will likely be several years before the claims asserted in *Gerro I* can be liquidated. Specifically, it

17

will likely be two years before the California Supreme Court enters a ruling on the California Trial Court's decision to stay *Gerro I* for *forum non conveniens*. Only once the California Supreme Court has ruled would the parties be in a position to move forward with litigating the underlying merits of the claims raised in *Gerro I*, either in California or Delaware. Because *Gerro I* was stayed by the California Trial Court before significant motion practice or discovery had taken place, it could be another year (and likely more) before a final decision on the merits is reached in a California or Delaware Court. In other words, if Gerro's request to extend the bar date is granted, Gerro is unlikely to file a claim for several years, by which time the Debtors cases could conceivably be closed.

34.   On the other hand, if the Lift Stay Motion is denied, Gerro will be entitled to have his claims resolved in the claims administration process along with the claims of the Debtors' thousands of other creditors.

35.   For the reasons stated above, Gerro's request to extend the bar date should be denied.

**WHEREFORE**, the Debtors respectfully request entry of an order denying the Lift Stay Motion and granting the Debtors such other and further relief as the Court may deem just and appropriate.

[*Remainder of page intentionally left blank*]

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: December 30, 2022 | /s/ *Michael D. Sirota* |

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*