## EXHIBIT C

## CRO ENGAGEMENT LETTER

**BRG**

INTELLIGENCE THAT WORKS

CONFIDENTIAL

December 27, 2022

Via Email

Zachary Prince
Chief Executive Officer
BlockFi Inc.
201 Montgomery St #263
Jersey City, NJ 07302

### Re: BlockFi – CRO Advisory Services

Dear Zac:

This letter confirms the engagement of Mark A. Renzi of Berkeley Research Group, LLC ("BRG") as Chief Restructuring Officer ("CRO") for BlockFi Inc. and its debtor affiliates (collectively with its debtor affiliates, the "Company"). It is understood that the CRO appointment is subject to approval of the Company's Board. The CRO's engagement team will include professional staff from BRG (the "Additional Personnel"). This letter and any attachments set forth the agreement ("Agreement") between the parties. This letter replaces and supersedes in all respects the engagement letter dated November 17, 2022 by and between BRG and BlockFi Inc., as amended from time to time.

### SCOPE OF SERVICES

The Company has requested that the CRO and Additional Personnel provide the following professional services as independent consultants ("Services"):

      a.      In consultation with management of the Company and subject to the approval of the Board of Directors of the Company, develop and implement a chosen course of action to preserve asset value and maximize recoveries to stakeholders.

      b.      Oversee the activities of the Company in consultation with other advisors and the management team to effectuate the selected course of action.

      c.      Assist the Company and its management in developing cash flow projections and related methodologies and assist with planning for alternatives as requested by Company.

      d.      Assist the Company in preparing for and operating in a Chapter 11 bankruptcy proceeding, including negotiations with stakeholders and the formulation of a reorganization strategy and plan of reorganization directed to preserve and maximize value.

      e.      Assist as requested by management in connection with the Company's development of its business plan, and such other related forecasts as may be required by creditor constituencies in connection with negotiations.

**BRG**

f.	Provide information deemed by the CRO to be reasonable and relevant to stakeholders and consult with key constituents as necessary.

g.	To the extent reasonably requested by the Company, offer testimony before the Bankruptcy Court with respect to the services provided by the CRO and the Additional Personnel and participate in depositions, including by providing deposition testimony, related thereto.

h.	Such other services as mutually agreed upon by the CRO, BRG and the Company.

The Company agrees that (i) Mr. Renzi will provide Services as CRO as required, and (ii) the CRO may retain as consultants on behalf of the Company other members or employees of BRG. The Company agrees that the CRO will continue as an employee of BRG and may continue to provide his services at other companies during the term of this Agreement. The Company acknowledges that since the CRO is an employee of BRG, BRG must release the CRO from his full-time obligations to BRG in order for the CRO to perform Services hereunder, and therefore to compensate BRG for the loss of full-time access to the CRO or any Additional Personnel providing Services hereunder, all payments for the time charges of the CRO or Additional Personnel providing Services hereunder at Company shall be made to BRG.

The CRO and Additional Personnel who provide Services to the Company under this Agreement are independent contractors and are not, and will not be deemed to be employees of the Company.

## FEES & EXPENSES

The CRO's fees for provision of the services set forth in this Agreement will be $180,000 per month, and fees for the Additional Personnel will be based on the actual hours charged at BRG's standard hourly rates which are in effect when the services are rendered ("Professional Fees"). Hourly rates may change in the future from time to time and are typically adjusted annually. BRG's current hourly rates are as follows:

| | |
|---|---|
| Managing Directors | $1,030 – $1,250 |
| Directors & Associate Directors | $810 – $990 |
| Professional Staff | $395 – $795 |
| Support Staff | $175 – $350 |

In addition to Professional Fees, BRG will be reimbursed for direct annual product expenses including, but not limited to, travel, research, legal counsel, any applicable sales or use taxes, and other direct expenses, provided that the aggregate expenses shall not exceed $25,000 in the aggregate without Client's prior written consent (such consent not to be unreasonably withheld or delayed). BRG will provide a reasonably itemized statement of expenses incurred on this engagement, and shall provide copies of original invoice or other documentation on itemized expenses over $75 upon request. Client shall reimburse BRG for reasonable itemized expenses less than $75 without a copy of the original invoice or other documentation.

---

[1] Milestone date subject to change with the consent the Company if delay is driven by factors outside of BRG's control.

**BRG**

BRG will provide Client a summary of fees and expenses for Services rendered on a weekly basis. BRG will bill for Services every two (2) weeks and will provide customary descriptions regarding the Services rendered. BRG will provide additional details regarding Services rendered upon request by Client. BRG's invoice statements shall be paid within seven (7) days of the invoice date. Client agrees that it will review BRG's invoices upon receipt and will advise BRG of any objection to or dispute with the invoice and the work reflected in the invoice within seven (7) days of the invoice date.

Without liability, BRG reserves the right to withhold delivery of Services (including reports or data (written or oral)), or suspend work if the account on this engagement is not current. A late payment charge of one percent (1%) per month (or the maximum rate permitted by law, whichever is less) may be added to any outstanding invoices before past due.

Please remit payments by wire to:
Account Name: Berkeley Research Group, LLC
Account No: 8020786677
Bank: PNC Bank, N.A.
ABA No: 031207607
remitadvice@thinkbrg.com

## COMPLETION FEE

A Completion Fee is a customary and integral component of compensation in an engagement of this type. The Company will pay BRG a Completion Fee of 1) $750,000 if a going concern or sale of a majority of the assets of the Company) Chapter 11 Plan is confirmed (or approval to a self-liquidating Chapter 11 Plan) (for the avoidance of doubt, 363 sales which in the aggregate do not represent a majority of the assets of the Company shall not constitute an asset sale) Chapter 11 Plan; and 2) an additional $750,000 if a Chapter 11 Plan is confirmed on or before July 15, 2023¹. Any earned Completion Fee will be credited against any Professional Fees incurred following July 15, 2023.

Notwithstanding the foregoing, in no event shall BRG be entitled to any Completion Fee in respect of any transaction consummated after a termination of BRG's engagement if this Agreement is terminated (i) by BRG or (ii) as the result of BRG's (or any other Indemnified Person's) material breach of this Agreement, gross negligence, fraud, or willful misconduct. The Completion Fee will be due and payable upon consummation of the plan of reorganization or upon the close of such sale transaction. BRG understands that any compensation arrangement as set forth in this Agreement shall be subject to the approval of the Bankruptcy Court.

## CASH ON ACCOUNT

Initially, the Company will forward to BRG the amount of $250,000, which funds will be held "on account" to be applied to BRG's Professional Fees, charges and disbursements for this engagement (the "Initial Cash on Account"). To the extent that this amount exceeds BRG's fees, charges and disbursements upon the completion of the engagement, BRG will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the engagement in such amounts as the Company and BRG mutually

¹ Milestone date subject to change with the consent the Company if delay is driven by factors outside of BRG's control

**BRG**

shall sums are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Professional Fees, charges, and disbursements to be incurred.

Upon transmission of an invoice, BRG may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees, upon submission of each such invoice to promptly wire the invoice amount to BRG as replenishment of the Initial Cash on Account (together with any supplemental amount to which BRG and the Company mutually agree), without prejudice to the Company's right to advise BRG of any differences it may have with respect to such invoice. BRG has the right to apply to any outstanding invoice (including amounts billed prior to the date hereof) up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review BRG's invoice.

## COMPANY RESPONSIBILITIES

The Company will undertake responsibilities to (a) provide reliable and accurate requisite information, materials, and documentation and (b) make decisions and take final actions, as the Company determines in its sole discretion, on any recommendations made by the CRO in connection with this Agreement. BRG's delivery of services and the fees charged are dependent on the Company's timely and effective completion of its responsibilities and timely decisions and approvals made by the Company's management.

In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of the CRO and BRG under the terms of this Agreement. The form of retention application and proposed order shall be reasonably acceptable to BRG. BRG shall have no obligation to provide any further Services unless BRG's retention under the terms of this Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to BRG. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to BRG's fee and expense applications. The CRO and BRG reserve the right to request approval of additional compensation in circumstances where extraordinary results may warrant such additional compensation.

## CONFIDENTIALITY

BRG shall not disclose any confidential or privileged information to any third party; provided, however, that BRG may disclose confidential or privileged information (a) to BRG's employees, affiliates, vendors or agents (collectively, "Representatives") who provide Services in connection with this engagement on a confidential and need-to-know basis and BRG shall be responsible for any breach of these confidentiality terms by such Representatives, (b) with Client's written consent, or (c) when legally required to do so. Both parties agree that confidential and proprietary information will not be construed to include information that is available from public sources or sources not subject to obligations of confidentiality to Client. Work papers associated with BRG's consulting Services are the confidential property of BRG.

## CONFLICTS OF INTEREST

**BRG**

BRG is engaged by many other companies and individuals. It is possible that some of client's past, current or future clients and have or may have disputes or other matters that are adverse to or may not be consistent with the interests of Client. BRG reserves the right to undertake unrelated engagements during and after this engagement by Client, consistent with BRG's internal policies. BRG will not be required to disclose any such unrelated engagements to Client. BRG will institute procedures to protect the confidentiality of information provided by Client in the course of this engagement.

## ARBITRATION

This Agreement shall be interpreted and controlled by the laws of the State of Delaware. Any controversy, dispute, or claim between Client on the one hand and BRG on the other hand of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this agreement, including any claim based on contract, tort, or statute ("Claims"), shall be resolved at the request of any party to this agreement by final and binding arbitration administered by Judicial Arbitration & Mediation Services, Inc. (JAMS), or its successor entity, pursuant to its established Arbitration Rules & Procedures, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof. Any such arbitration shall take place exclusively in Massachusetts. The prevailing party shall be entitled to reasonable attorney fees and costs incurred in any arbitration or litigation brought in connection with this Agreement, as well as reasonable attorneys' fees and costs incurred in appealing ... in connection with any action to enforce any judgment entered by the arbitrator by any court having jurisdiction. If a party to any arbitration proceeding ... in connection with this agreement fails to pay any costs of the arbitration required to be paid by such party at the time required for payment, the arbitrator is authorized to provide an appropriate remedy, including an entry of a default and an arbitration award on the merits against such party.

## INDEMNIFICATION & LIMITATION OF LIABILITY

The Company shall indemnify, hold harmless and defend the CRO, Additional Personnel, and BRG and its affiliates, partners, directors, officers, employees and agents (collectively, the "BRG Parties") from and against all claims, liabilities, losses, expenses and damages (collectively, "Liabilities") arising out of or in connection with the engagement of the CRO and BRG that is the subject of this Agreement, except such Liabilities that result from the gross negligence or willful misconduct of the BRG Parties. The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.

In addition to the above indemnification and advancement, any BRG employee serving as a director or officer of the Company or affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise.

The Company shall specifically include and cover the CRO and any other employees and agents serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O insurance"). Prior to accepting any officer position,

---

[footnote] Milestone date subject to change with the consent the Company if delay is driven by factors outside BRG's control.

**BRG**

The Company shall, at the request of BRG, provide BRG a copy of Company's current D&O policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolution, and any other documents as BRG may reasonably request evidencing the appointment and coverage of the indemnitee(s). Company will maintain such D&O insurance coverage for the period through which claims can be made against such persons. Company disclaims a right to distribution from the D&O insurance coverage with respect to such persons. In the event that the Company is unable to include BRG employees and agents under the Company's policy, or does not have five dollars in insurance acceptable to BRG in effect for at least $10 million (e.g., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), BRG may, at its option, attempt to purchase a separate D&O insurance policy that will cover BRG employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. If BRG is unable or unwilling to purchase such D&O insurance, then BRG reserves the right to terminate the Agreement.

Notwithstanding any other provision in this Agreement to the contrary, the Company's indemnification and advancement obligations shall be primary to (and without allocation against any) similar indemnification and advancement obligations of BRG, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by BRG or otherwise).

IN NO EVENT SHALL THE COMPANY, THE CRO, ADDITIONAL PERSONNEL, BRG OR BRG PERSONNEL WHO SERVE AS OFFICERS OF THE COMPANY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES OF ANY KIND IN CONNECTION WITH THIS AGREEMENT, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE CRO AND BRG SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE BAD FAITH, SELF-DEALING, OR INTENTIONAL MISCONDUCT OF BRG. BRG'S AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO TWO TIMES THE AMOUNT OF FEES PAID TO BRG FOR SERVICES UNDER THIS AGREEMENT (THE "LIABILITY CAP"). THE LIABILITY CAP IS THE TOTAL LIMIT OF BRG'S AGGREGATE LIABILITY FOR ANY AND ALL CLAIMS OR DEMANDS BY ANYONE PURSUANT TO THIS AGREEMENT, INCLUDING LIABILITY TO THE COMPANY, TO ANY OTHER PARTIES HERETO, AND TO ANY OTHERS MAKING CLAIMS RELATING TO THE WORK PERFORMED BY BRG PURSUANT TO THIS AGREEMENT. ANY SUCH CLAIMANTS SHALL ALLOCATE ANY AMOUNTS PAYABLE BY BRG AMONG THEMSELVES IN AN APPROPRIATE, BUT IF THEY CANNOT AGREE ON THE ALLOCATION IT WILL NOT AFFECT THE ENFORCEABILITY OF THE LIABILITY CAP. UNDER NO CIRCUMSTANCES SHALL THE AGGREGATE OF ALL SUCH ALLOCATIONS OR OTHER CLAIMS AGAINST BRG PURSUANT TO THIS AGREEMENT EXCEED THE LIABILITY CAP.

**TERMINATION**

**BRG**

Client or BRG may terminate this engagement upon seven (7) days' written notice. In the event the engagement is terminated prior to the completion of Services, Client agrees to pay BRG for all Professional Fees and expenses incurred through the termination date.

## OTHER TERMS

The Company agrees that if any members or employees of BRG are required to testify at any administrative or judicial proceeding relating to this engagement, whether during or after the term, the CRO and BRG will be compensated by the Company for associated time charges at the regular hourly rates for such personnel, in effect at the time, and reimbursed for reasonable out of pocket expenses, including counsel fees and expenses.

The interpretation and application of the terms of this Agreement shall be governed and construed in accordance with the laws of the state of Delaware. The prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in any litigation brought in connection with this Agreement as well as reasonable attorneys' fees and costs incurred in appealing or in connection with any action to enforce any judgment entered in any court having jurisdiction.

The waiver by any party and the breach of any of the provisions of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns, legal representatives, executors, administrators and heirs. The parties may not assign this Agreement or any rights or obligations hereunder to any party without the prior written consent of the other parties. Each of the provisions of this Agreement is a separate and distinct agreement and independent of all others, so that if any provision hereof shall be held to be invalid or unenforceable for any reason, such invalidity or enforceability shall not affect the validity or enforceability of any other provisions hereof. No amendment or modification of this Agreement shall be effective unless in writing and signed by both parties hereto.

The Company warrants that it has all necessary right, power and authority to enter into and perform this Agreement and that the execution, delivery and performance by the Company of this Agreement will not, with or without the giving of notice or the passage of time or both, (a) violate the provisions of any law, rule or regulation applicable to the Company; (b) violate any judgment, decree, order or award of any court, governmental body or arbitrator applicable to the Company; or (c) conflict with or violate any agreement to which the Company is a party or by which it is bound.

* * * *

We look forward to working with you on this matter. Please sign and return a copy to the settlement signifying your agreement with the terms and provisions herein.

Sincerely,

Eric B. Miller
General Counsel

AGREED AND ACCEPTED

BlockFi Inc.

By: _____        Dated ___12.27.22_____
      Zachary Prince, CEO