# *Exhibit C*

1

2  John M. Gerro (SBN 85900)
   George J. Gerro (SBN 325168)
3  LAW OFFICES OF GERRO & GERRO
   530 South Glenoaks Boulevard, Suite 200
4  Burbank, California 91502
   Telephone: (818) 840-0000
5

6  Attorney for Plaintiff
   George J. Gerro
7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           COUNTY OF LOS ANGELES, NORTH CENTRAL DISTRICT

10

| | |
|---|---|
| 11  GEORGE J. GERRO, an individual | Case No. 20STCV31493 |
| 12                    Plaintiff, | *[Assigned for all purposes to Judge Stewart, Burbank Courthouse, Dept. A]* |
| 13           vs. | *[Deemed related to case no. 20BBCV00308]* |
| 14  BLOCKFI LENDING LLC, a Delaware Limited Liability Company; | |
| 15  BLOCKFI INC., a Delaware Corporation; | FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF ONLY |
| 16  SCRATCH SERVICES, LLC, a Delaware Limited Liability Company; and DOES 1-100 | [CAL. CIV. PROC. § 472] |
| 17  | 1) Unfair Competition [BUSINESS & PROFESSIONS CODE Section 17200 *et seq.*] |
| 18                    Defendants. | 2) False Advertising Law [BUSINESS & PROFESSIONS CODE Section 17500 *et seq.*] |
| 19  | 3) Civil Conspiracy |
| 20  | 4) Aiding and Abetting |
| 21 | |

22  Plaintiff, GEORGE J. GERRO, alleges as follows:

23                          **THE PARTIES**

24      1.      Plaintiff, GEORGE J. GERRO ("PLAINTIFF") is an individual and is now, and

25  at all times mentioned in this complaint was, a resident of Los Angeles County, California.

26      2.      Defendant, BLOCKFI LENDING LLC ("BLOCKFI LLC") is, and at all times

27  mentioned in this complaint was, a limited liability company formed under the laws of

28

                                    1
           FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

1  Delaware, with its principal place of business at 201 Montgomery Street, Second Floor, Suite

2  263, Jersey City, New Jersey, 07302.  The California Secretary of State granted permission for

3  Defendant to conduct business as a foreign entity within the State of California, as entity

4  number 201803110036.  Defendant is licensed by the California Department of Business

5  Oversight, license number 60DBO-81955, as a Finance Lender.  On information and belief,

6  BLOCKFI LLC holds no other licenses from the State of California, or its political

7  subdivisions thereof.

8         3.      Defendant BLOCKFI, INC. ("BLOCKFI INC") is, and at all times mentioned in

9  the complaint was, a corporation incorporated under the laws of Delaware, with a principal

10  place of business at 201 Montgomery Street, Second Floor, Suite 263, Jersey City, New

11  Jersey, 07302.  BLOCKFI INC hosts and controls the interactive website, "Blockfi.com."

12  BLOCKFI LLC is the alter ego and a mere instrumentality of BLOCKFI INC (collectively

13  referred to as "BLOCKFI").

14         4.      Defendant, SCRATCH SERVICES, LLC ("SCRATCH") is, and at all times

15  mentioned in this complaint was, a limited liability company formed under the laws of the

16  State of Delaware, with a principal place of business at 375 Alabama St., Suite 360, San

17  Francisco, California 94110.  The California Secretary of State granted permission for

18  Defendant to conduct business as a foreign entity within the State of California, as entity

19  number 201613010412.  SCRATCH is licensed by the California Department of Business

20  Oversight as a California Residential Mortgage Lender, license no. 41DBO-111141.  On

21  information and belief, SCRATCH holds no other licenses from the State of California, or its

22  political subdivisions thereof.

23         5.      PLAINTIFF does not know the true names and capacities of the Defendants sued

24  in this complaint as Doe 1 through Doe 100, inclusive, and therefore sues these defendants by

25  fictitious names under Section 474 of the CALIFORNIA CODE OF CIVIL PROCEDURE.

26  PLAINTIFF will amend this Complaint to allege the true names and capacities of Doe 1

27  through Doe 100, inclusive, when ascertained.  PLAINTIFF is informed and believes, and on

28  that basis alleges, that each of the defendants named herein as Doe 1 through Doe 100,

2

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

1   inclusive, is responsible in some manner for the occurrence, injury, and other damages alleged

2   in this Complaint, or were the agents and employees of the other named defendants, and in

3   doing the things alleged in this Complaint were acting within the course and scope of that

4   agency and employment and with the knowledge and consent of their principal and employer.

5

6                            **FACTUAL ALLEGATIONS**

7   **Defendants Engage in a Systematic Effort to Acquire Possession of the Public's Bitcoin**

8       6.      Plaintiff alleges that Defendants offer, solicit and advertise the following services

9   to the public at large, in an attempt to acquire possession of the public's Bitcoin:

10  (1) Defendants originate, service, and foreclose upon loans of money, for interest, secured by

11  Defendants' receipt of Bitcoin ("Pledged Bitcoin"); (2) Defendants offer for sale bitcoin and

12  similar digital commodities (collectively "Bitcoin"); and (3) Defendants take possession of,

13  and pay "interest" upon Bitcoin, in their capacity as a custodian ("Deposited Bitcoin").

14      7.      Plaintiff alleges that Defendants act in a manner calculated to increase and

15  maximize the amount of the public's Bitcoin in Defendants' possession.

16      8.      Plaintiff alleges on information and belief that Defendants have taken possession

17  of Bitcoin belonging to the public, with a market value of approximately $1 billion.

18      9.      Plaintiff alleges on information and belief that Defendants are engaging in a

19  systematic campaign of advertising, marketing, and soliciting the aforementioned services to

20  the public, to convince the public to relinquish possession of their money and Bitcoin to

21  Defendants.

22      10.     Plaintiff alleges on information and belief that once Defendants obtain

23  possession of the public's assets, Defendants intend to dispossess, rent, and/or sell the public's

24  assets without the informed consent of, or prior notice to, the owners of the Bitcoin.

25      11.     This complaint alleges that Defendants are engaging in the unlawful business of

26  an unlicensed pawnbroker in the State of California; second, this complaint alleges that

27  Defendants unlawfully intend to dispossess themselves of the public's Bitcoin upon receipt;

28  third, this complaint alleges that Defendants' representations are fraudulent and deceptive;

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

1  fourth, this complaint alleges that Defendants' activities threaten the State of California's

2  economy, markets, and consumers.

3

4  **Defendants are Illegally Engaging in the Business of an Unlicensed Pawnbroker**

5      12.    Plaintiff alleges that on or about January 31, 2018, Defendants applied to the

6  California Department of Business Oversight (hereinafter "Department of Business

7  Oversight" or "DBO") for a Finance Lending License.

8      13.    Plaintiff alleges that on or about March 8, March 28, April 6, and April 10 of

9  2018, the DBO notified Defendants that under California's Financing Law (CAL. FIN. CODE

10  § 22000 *et seq*.) Defendants' proposed activities—taking possession of a the public's Bitcoin

11  to secure a loan—were unauthorized and disallowed.

12      14.    For example, in a letter dated April 10, 2018, the Department of Business

13  Oversight stated: "we have obtained legal counsel....the business plan and method of

14  operation are not allowed under the CFL [California Financing Law]. **The collateral must**

15  **remain with the borrower: Applicant cannot hold the borrower's digital assets as**

16  **collateral.  Based upon the business plan and explanation provided, the Applicant is**

17  **conducting or will be conducting activities not authorized under the CFL.**" (emphasis

18  added).

19      15.    Plaintiff alleges that Defendants had constructive notice—and *actual notice*—

20  their loan business requires a pawnbroker license.

21      16.    Plaintiff alleges that Defendants confidentially requested an Interpretive Opinion

22  from the Commissioner of the DBO, pursuant to the Commissioner's authority under 10

23  C.C.R. § 250.12 (hereinafter "Confidentially Requested Interpretive Opinion").

24      17.    Plaintiff alleges that Defendants' Confidentially Requested Interpretive Opinion

25  requested an interpretation of the California Financing Law that would allow Defendants to

26  "take[] a security interest in collateral" and "possess such collateral".

27      18.    Plaintiff alleges that in Defendants' Confidentially Requested Interpretive

28  Opinion stated: **"if the Department [DBO] reaches a preliminary conclusion in its review**

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

1    **of this request that a finance lender may not hold collateral, [… then we request that we]**

2    **be permitted to withdraw this request for the interpretive opinion."**

3        19.    Plaintiff alleges that **Defendants withdrew their Confidentially Requested**

4    **Interpretive Opinion**.

5        20.    Plaintiff alleges on information and belief that the California DBO concluded

6    that a California Finance Lender's License does not allow Defendants to possess Bitcoin as

7    collateral.

8        21.    Plaintiff alleges on information and belief that the California Department of

9    Business Oversight would have ruled against Defendants, if Defendants had not prematurely

10    withdrawn their Confidentially Requested Interpretive Opinion.

11        22.    Plaintiff alleges on information and belief that Defendants have intentionally,

12    knowingly, willfully, and negligently violated the California Pawnbroker Law [CAL. FIN.

13    CODE § 21000 *et seq*.].

14        23.    Plaintiff alleges that Defendants are conducting activity which falls outside the

15    scope of a Finance Lending License.  (*See* CAL. FIN. CODE § 22009 (a finance lender excludes

16    lenders who take possession of collateral in which it has a forfeiture interest)).

17        24.    Plaintiff alleges on information and belief that Defendants agreed, either

18    expressly or tacitly, to originate, service, and enforce loans which are void for illegality, and

19    intentionally violate the statutory scheme of California's Financing and Pawnbroker Laws.

20

21              **Bitcoin is a Good which can be Exclusively Possessed**

22        25.    Plaintiff alleges that Bitcoin is a good.

23        26.    Plaintiff alleges that Bitcoin is not a service, security, or official government

24    money.

25        27.    Plaintiff alleges that Bitcoin is personal property which may be possessed,

26    transferred, and moved.

27        28.    Plaintiff alleges that Defendants' business involves the receiving of exclusive

28    possession of Bitcoin and similar digital commodities (collectively "Bitcoin").

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

29.     Plaintiff alleges that Bitcoin may be exclusively possessed by anyone with access to its password, which is commonly referred to as a "Private Key."

30.     Plaintiff alleges that Bitcoin is a "bearer asset," because anyone with access to its Private Key(s) can unilaterally and permanently lose, steal, or destroy the Bitcoin.

31.     Plaintiff alleges that Bitcoin's quality as a bearer asset has resulted in many instances where large amounts of Bitcoin have been lost or stolen by centralized entities in control of Bitcoin belonging to others.

### Types of Bitcoin Wallets

32.     Plaintiff alleges that, the Bitcoin Private Key is contained, accessed, and utilized by software or hardware referred to as a "Wallet" (hereinafter "Bitcoin Wallet").

33.     Plaintiff alleges that, when a Bitcoin Wallet is disconnected from the internet, it is the safest method of storing Bitcoin.  This type of Bitcoin Wallet is referred to as "Cold."

34.     Plaintiff alleges that, if the Bitcoin Wallet is intermittently or continuously connected to the internet, it is less secure, and liable to be hacked over the internet.  This type of Bitcoin Wallet is referred to as "Hot."

35.     Plaintiff alleges that, if a Bitcoin Wallet in the dominion and control of a third-party, is referred to as a "Custodial" Bitcoin Wallet.

36.     Plaintiff alleges that, a Custodial Bitcoin Wallet delegates the possession of, and responsibility for, the Bitcoin to a Custodian.

37.     Plaintiff alleges that, the Custodial Wallet creates a relationship whereby the Bitcoin is held by the Custodian on behalf of, and for the benefit of, its legal owner.

38.     Plaintiff alleges that a transfer into a Custodial Wallet deprives the Bitcoin's owner of possession, not title, to the Bitcoin.

39.     Plaintiff alleges that the user of a Custodial Wallet entrusts the Custodian to preserve, protect, and defend their Bitcoin.

40.     Plaintiff alleges that, if the Custodian refuses to return the Bitcoin upon request, then the Bitcoin's owner may be deprived of the possession of their Bitcoin, permanently.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

41.     Plaintiff alleges that the public entrusts Custodians with their Bitcoin, because they lack the knowledge, education, or sophistication to obtain their own Bitcoin Wallet.

42.     Plaintiff alleges that the public entrusts Custodians with their Bitcoin, because they believe that the Custodian will implement a very secure Bitcoin Wallet for the preservation of their Bitcoin.

43.     Plaintiff alleges that a Custodial Bitcoin Wallet is like a safe-deposit box.  The safe-deposit box owner expects that their assets will not be removed from the safe-deposit box without their authorization, case-by-case.

44.     Plaintiff alleges that the public expects Custodians to primarily employ the use of Cold Bitcoin Wallets, because Cold Bitcoin Wallets are more secure than Hot Bitcoin Wallets.

45.     Plaintiff alleges that Defendants advertise and offer what appears to be a Custodial Wallet service to the general public, thereby creating the impression that Defendants, as custodians, will retain the public's Bitcoin in Cold Wallets, and upon demand, will return the identical Bitcoin to the public which was deposited with Defendants for safekeeping.

### Defendants are Unlicensed Pawnbrokers

46.     Plaintiff alleges that Defendants are engaging in the well-defined business of receiving Bitcoin in pledge, as security for loans of money, offered to the public by Defendants, within the meaning of CALIFORNIA FINANCIAL CODE Section 21000 (defining "pawnbroker").

47.     Plaintiff alleges that Defendants advertise their services as an unlicensed pawnbroker to the public at large, including California residents, businesses, and consumers.

48.     Plaintiff alleges that Defendants have no licenses sufficient to allow them to take pre-default possession of the Bitcoin in which Defendants have purportedly obtained a forfeiture interest.

49.     Plaintiff alleges that although BLOCKFI LLC holds a Finance Lending License, this license does not allow Defendants to routinely receive Bitcoin in pledge for its loans.

7

1    50.    Plaintiff alleges on information and belief that Defendants are <u>not</u> licensed

2    pawnbrokers, trust companies, building and loan associations, credit unions, broker dealers,

3    state chartered banks, or federal chartered banks.

4    51.    Plaintiff alleges that the California Pawnbroker Law (Cal. Fin. Code § 21000, *et*

5    *seq*. (hereinafter "Pawnbroker Law")) contains a statutory scheme which was intended by the

6    California Legislature to, in part: (A) protect the public from pawnbrokers; (B) assist law

7    enforcement in detecting theft from the public; and (C) regulate the possession and

8    dispossession of collateral by the pawnbroker.

9    52.    Plaintiff alleges on information and belief that Defendants are engaging in black-

10    market business which the California Legislature has deemed, in its presumptively conclusive

11    wisdom, as too dangerous to exist.

12    53.    Plaintiff alleges that the Pawnbroker Law is penal in nature, derived from the

13    California's police powers, enacted for the safety and welfare of the public, and administered

14    by the local police and the California Attorney General, not the DBO.

15    54.    Plaintiff alleges that Defendants are systematically committing misdemeanors

16    against the public.

17

18    **Defendants Advertise Unlawful Contracts for Pledge to the Public**

19    55.    Plaintiff alleges that Defendants are actively engaging in the business of loaning

20    money for interest, pursuant to the condition precedent that the public transfer to Defendants

21    exclusive possession of the public's collateral for the entire duration of the loan, for the

22    purpose of securing Defendants' loans of money to the public.

23    56.    Plaintiff alleges that the legal consequences of this scheme are that of a pledge.

24    (*See* CAL. CIV. CODE § 2924(a) ("Every transfer of an interest in property, other than in trust,

25    made only as a security for the performance of another act, is to be deemed a mortgage, except

26    when in the case of personal property it is accompanied by actual change of possession, in

27    which case it is to be deemed a pledge."))

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

57.     Plaintiff alleges that Defendants are not vendees of the Bitcoin; rather, Defendants are bailees and/or trustees of the Bitcoin.

58.     Plaintiff alleges that Defendants do receive take title to the Bitcoin which is held in pledge for loans or in deposit for safekeeping.

59.     Plaintiff alleges that Defendants represent that the public will retain ownership of their Bitcoin and the appreciation thereof.

60.     Plaintiff alleges that Defendants represent that the public will retain title to, but not possession of, the Bitcoin that they pledge as security for their loan.

61.     Plaintiff alleges that Defendants advertise, solicit, and induce the public to borrow money pursuant to its contracts for pledge, while representing that their contracts for pledge are lawful.

62.     Plaintiff alleges that Defendants engage in no due diligence about the public's ability to repay, and originates loans without regard for the public's ability to repay.

63.     Plaintiff alleges that Defendants require over-collateralization of consumer loans, because Defendants wish to maximize the amount of Bitcoin which they possess.

64.     Plaintiff alleges on information and belief that Defendants intend to use the public's Bitcoin to satisfy Defendants' existing obligations.

65.     Plaintiff alleges that Defendants require the public to transfer exclusive possession of their Bitcoin to Defendants, after the public has signed Defendants' loan documents, but before the loan is funded.

66.     Plaintiff alleges on information and belief that Defendants intend to retain the public's Bitcoin for as long as possible, and at least for so long as the loan is outstanding.

67.     Plaintiff alleges that Defendants intend to take possession of the public's Bitcoin, by and through their agents, and to dispossess themselves of the public's Bitcoin to earn a profit which will immediately be converted to Defendants' own use.

68.     Plaintiff alleges on information and belief that Defendants intend to further transfer possession of the public's Bitcoin to financial speculators.

9

**Defendants Intend to Transfer Possession of the Public's Bitcoin to Third-Parties**

69.    Plaintiff alleges on information and belief that Defendants arbitrarily, routinely, and without sufficient notice dispossess themselves of the Bitcoin held in Defendant's capacity as a secured party, depositary, and/or trustee.

70.    Plaintiff alleges on information and belief that Defendants transfer possession of the Bitcoin to *undisclosed entities*, at *undisclosed times*, on *undisclosed terms*, for *undisclosed purposes*.

71.    Plaintiff alleges on information and belief that Defendants intend to dispossess themselves of the public's Bitcoin, for Defendants' profit.

72.    Plaintiff alleges on information and belief that **Defendants intend to transfer exclusive possession of Bitcoin belonging to the public to third-parties, and will therefore subject the Bitcoin to risk of loss, including but not limited to, liens (both tax liens, judgment liens, and Uniform Commercial Code liens), replevy, attachment, execution, bankruptcy proceedings, civil asset forfeiture, criminal asset forfeiture, sales to *bona fide* purchasers for value, market risk, Acts of God, destruction, theft, loss, or default.**

73.    Plaintiff alleges on information and belief that Defendants intend to transfer the public's Bitcoin to third-parties who engage in activities which are risky and undisclosed to Defendants and the public, including but not limited to confidential and proprietary trading by speculators.

74.    Plaintiff alleges on information and belief that Defendants will not return the identical Bitcoin which was deposited by the public for safekeeping purposes.

75.    Plaintiff alleges on information and belief that the Bitcoin that Defendants intend to return—if at all—to the public may be subjected to undisclosed and unknown encumbrances or liens.

76.    Plaintiff alleges on information and belief that Defendants endeavor to receive more Bitcoin to satisfy its existing Bitcoin denominated obligations and liabilities

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

77.    Plaintiff alleges on information and belief that if Defendants' depositors all requested the return of their Bitcoin at the same time, Defendants would be unable to satisfy those obligations in full.

78.    Plaintiff alleges on information and belief that Defendants intend to transfer possession of the public's Bitcoin to third-parties, exposing the public to credit risk, insolvency risk, and counter-party risk of unknown and undisclosed third-parties.

79.    Plaintiff alleges on information and belief that Defendants and their privies do not intend to properly title or segregate Bitcoin received from the public.

80.    Plaintiff alleges on information and belief that Defendants do not intend to disclose to their transferees the ownership of the Bitcoin, such that Defendants' transferees cannot property title the Bitcoin in favor of its true ownership.

81.    Plaintiff alleges on information and belief that the speculators which Defendants intend to entrust the public's Bitcoin do not insure the Bitcoin for its full market value.

82.    Plaintiff alleges on information and belief that the speculators which Defendants intend to entrust the public's Bitcoin will not primarily store the Bitcoin in Cold Wallets.

83.    Plaintiff alleges on information and belief that the speculators to which Defendants intend to entrust the public's Bitcoin may, in turn, transfer the Bitcoin to further third-parties, without disclosing the identity of the third-party transferees.

84.    Plaintiff alleges on information and belief that Defendants do not know the identity, credit risk, or intended use of the Bitcoin, because possession of the Bitcoin will be transferred and re-transferred to domestic and international third-parties, including entities which are operating unlawful businesses, to whom Defendants have no knowledge or privity.

85.    Plaintiff alleges on information and belief that most of the third-parties who will obtain possession of the Bitcoin are neither regulated, insured, nor licensed custodians.

86.    Plaintiff alleges on information and belief that the entities in possession of the Bitcoin are confidential and undisclosed, such that the Bitcoin's owner will never be able to recover possession of the Bitcoin by legal process.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

**Defendants' Representations are False and Mislead the Reasonable Consumer**

1

2     87.    Plaintiff alleges that Defendants advertise untrue, misleading, and deceptive

3     representations to the public.

4     88.    Plaintiff alleges that Defendants advertise, solicit, and induce the public to enter

5     into transactions, by misrepresenting that Defendants have complied with all applicable laws

6     and regulations.

7     89.    Plaintiff alleges that Defendants mislead the public by creating the impression

8     that Defendants' prospective pledgors and depositors will retain title to their Bitcoin.

9     90.    Plaintiff alleges on information and belief that Defendants mislead the public by

10    creating the impression that Defendants will custody the public's pledgors and depositors'

11    Bitcoin for their benefit, by Defendants, in a Custodial Wallet.

12    91.    Plaintiff alleges that Defendants misrepresent their financing charge and

13    annualized percentage rate ("APR").

14    92.    Plaintiff alleges that Defendants do not disclose that they intend to indirectly

15    charge prospective pledgors all net rents, profits, monetary and non-monetary proceeds earned

16    on account of the pledged collateral.

17    93.    Plaintiff alleges on information and belief that Defendants do not disclose the

18    amount of indirect charges to their pledgors of all net rents, profits, monetary and non-

19    monetary proceeds earned on account of the pledged collateral.

20    94.    Plaintiff alleges that Defendants' advertisements mislead the public by

21    comparing its proposed contract for pledge to an ordinary secured transaction; however, it is

22    strange, atypical and unusual for a secured lender to receive possession of collateral pre-

23    default, or to obtain a forfeiture interest which may be foreclosed upon merely due to a

24    fluctuation in the market price of the collateral.

25    95.    Plaintiff alleges that Defendants mislead the public by representing that

26    Defendants will possess the public's Bitcoin primarily in Cold Bitcoin Wallets.

27    96.    Plaintiff alleges on information and belief that Defendants fail to honor their

28    fiduciary duties of loyalty, accounting, segregation, and proper titling of the public's Bitcoin.

97.    Plaintiff alleges that Defendants employ hidden terms and obfuscated conditions to purportedly permit their leasing, hypothecating, re-hypothecating, selling, transferring and investing the Pledged Bitcoin for Defendants' own benefit.

98.    Plaintiff alleges that Defendants' website layout deceives the public into thinking that their depositary service will allow title to remain in the public.

99.    Plaintiff alleges that Defendants fail to disclose that depositing Bitcoin with Defendants might pass title.

100.    Plaintiff alleges that Defendants fails to disclose that depositing Bitcoin with Defendants will reduce the depositors' property rights to a mere unsecured claim.

101.    Plaintiff alleges that Defendants' website layout deceives the public into thinking that their service is a Custodial Bitcoin Wallet.

102.    Plaintiff alleges on information and belief that Defendants intend to mislead the public, through subterfuge or device, as to its contemplated use of the public's Bitcoin.

103.    Plaintiff alleges on information and belief that Defendants fail to disclose the indirect charges associated with its loans.

104.    Plaintiff alleges on information and belief that Defendants' unlawful and deceptive business acts and practices detract lawful loans from competitors who do not take possession of the borrowing public's Bitcoin.

105.    Plaintiff alleges on information and belief that Defendants represent that the public's Bitcoin will be held by licensed custodians who will provide the public's Bitcoin with "top-tier protection" of a "best-in-class compliance program."

106.    Plaintiff alleges that Defendants represent that the public's Bitcoin will primarily be held by a qualified and licensed custodian, Gemini Trust, a limited purpose New York trust company (hereinafter "Gemini Trust").

107.    Plaintiff alleges that Defendants represent that Gemini Trust is regulated by the New York Department of Financial Services.

13

108.    Plaintiff alleges that Defendants represent that Gemini Trust's custodial procedures successfully passed an audit, referred to as a Service Organization Controls 2 examination, administered by one of the big-four accounting firm, Deloitte.

109.    Plaintiff alleges that Defendants represent that the Gemini Trust will custody their Bitcoin primarily in Cold Bitcoin Wallets.

110.    Plaintiff alleges that Defendants represent that Bitcoin held in custody by Gemini Trust on behalf of pledgors and depositors is adequately insured at all times.

111.    Plaintiff alleges that Defendants represent that their loans will allow the public to obtain cash without selling their Bitcoin.

112.    Plaintiff alleges that Defendants represent that pledging or depositing Bitcoin will enable the public to avoid a capital gains tax realization event.

113.    Plaintiff alleges that Defendants encourage the public to buy Bitcoin.

114.    Plaintiff alleges that Defendants encourage, convince and implore the public to purchase Bitcoin from Defendants, so that Defendants may retain possession of the Bitcoin as a deposit until the purchaser demands possession.

115.    Plaintiff alleges that Defendants represent that the public will enjoy and obtain all appreciation in value of any Pledged or Deposited Bitcoin.

116.    Plaintiff alleges on information and belief that Defendants represent they will return possession of their Deposited Bitcoin upon demand.

117.    Plaintiff alleges on information and belief that Defendants represent they will return possession of their Pledged Bitcoin upon satisfaction of the associated loan.

118.    Plaintiff alleges on information and belief that Defendants create the impression that the public will retain legal and beneficial ownership of their Pledged or Deposited Bitcoin.

119.    Plaintiff alleges on information and belief that Defendants represent that Defendant Blockfi Inc., a Delaware Corporation, is a very well-capitalized entity; however, Defendants attempt to limit liability to a wholly dominated subsidiary and alter ego, Blockfi

1  Lending LLC, a Delaware Limited Liability Company, thereby limiting the ability of the

2  public to recover from Blockfi Inc.

3       120.   Plaintiff alleges on information and belief that Defendants fail to disclose that

4  their services require additional licenses under local, state, and federal laws.

5       121.   Plaintiff alleges on information and belief that Defendants represent that they

6  have the approval of the California Department of Business Oversight to receive possession of

7  the public's Bitcoin on a routine basis, as security for a loan, when Defendants have no such

8  regulatory approval.

9       122.   Plaintiff alleges on information and belief that Defendants fail to disclose that

10  they intend to claim ownership of Bitcoin received in pledge or deposit.

11       123.   Plaintiff alleges on information and belief that Defendants fail to disclose the

12  legal rights, duties, and consequences of a pledge or deposit Bitcoin with Defendants.

13       124.   Plaintiff alleges on information and belief that Defendants fail to disclose the

14  risks as set forth in this complaint, that will be suffered by the public, if they decide to pledge

15  or deposit Bitcoin with Defendants.

16       125.   Plaintiff alleges that Defendants attempt to bind the public to unduly oppressive

17  contractual terms without providing the any actual or constructive notice of those terms.

18       126.   Plaintiff alleges on information and belief that Defendants use complicated

19  language, such as "rehypothecation," to confuse consumers.

20       127.   Plaintiff alleges on information and belief that Defendants do not explain terms

21  such as "rehypothecation" while obtaining the uninformed consent of pledgors and depositors.

22       128.   Plaintiff alleges on information and belief that Defendants retain all profits,

23  proceeds, and rents earned on account of Pledged Bitcoin, without voluntary consent by

24  pledgors to assume all risks described herein.

25       129.   Plaintiff alleges that Defendants cannot obtain valid consent to convert the

26  Pledged Bitcoin's profits, proceeds, and rents to its own use, without remitting, crediting, or

27  accounting to the pledgor for the proceeds attributable to the Pledged Bitcoin, since pledgors

28  may not consent to a violation of law.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

130.    Plaintiff alleges on information and belief that Defendants fail to disclose the risks, described herein, which accompany Defendant's dispossession of Bitcoin.

**<u>Defendants Affirmatively Misrepresent the Finance Charge for its Loans</u>**

131.    Plaintiff alleges that Defendants charge monthly interest payments in connection with their loans of money.

132.    Plaintiff alleges that Defendants advertise a false financing charge, and false APR (annual percentage rate) numerical interest rate, because Defendants' exclude the forfeited interest to which the borrower is otherwise entitled.

133.    Plaintiff alleges on information and belief that Defendants' advertised financing charge and interest rates are false, and understate the cost of interest by excluding all charges of net profits, rents, or proceeds attributable to the pledged collateral.

134.    Plaintiff alleges on information and belief that Defendants' loans are advertised as costing the public an origination fee of two (2) points, or two percent (2%), plus an annualized interest rate ranging between 4.5% to 9.75%, for a total APR of 6.5% to 11.75%.

135.    Plaintiff alleges on information and belief that Defendants actually charge consumers up to ten (10) times more than Defendants advertise.

136.    Plaintiff alleges that, by way of example, if Defendants lend $10,000 to a California consumer at 11.75% APR and require possession of $20,000 worth of Bitcoin, then if Defendants lend the $20,000 worth of Bitcoin to a third-parties for 11.75% APR, the actual interest rate directly and indirectly charged exceeds 30% APR.

**<u>Defendants Charge Hidden Fees</u>**

137.    Plaintiff alleges that Defendants affirmatively represent to the public that they charge "no hidden fees."

138.    Plaintiff alleges on information and belief that Defendants charge their borrowers hidden fees of net profits, rents, and proceeds attributable to the borrowers' Pledged Bitcoin.

139.    Plaintiff alleges on information and belief that Defendants charge their borrowers hidden fees by debiting and credit different prices than actually incurred by Defendants.

16

140.    Plaintiff alleges that Defendants do not disclose the nature, extent, or purpose of these hidden fees.

**Defendants Induce the Public to Transfer Bitcoin to "Interest Accounts"**

141.    Plaintiff alleges that Defendants advertise what they refer to as "Blockfi Interest Accounts," yet Defendants are neither a state nor federal charted bank.

142.    Plaintiff alleges on information and belief that Defendants do not have any licenses, charters, or regulatory licenses sufficient to allow them to engage in the business of providing banking services to the public.

143.    Plaintiff alleges that Defendants advertise a rate of return, or "interest," in favor of their depositors, to induce the public to transfer exclusive possession of their Bitcoin unto Defendants.

**Defendants Commingle, and Dispossess Themselves of, Pledged and Deposited Bitcoin**

144.    Plaintiff alleges on information and belief that Defendants earn a profit on Deposited or Pledged Bitcoin by dispossessing themselves of the Bitcoin for a profit.

145.    Plaintiff alleges on information and belief that Defendants maintain the appearance of a Custodial Bitcoin Wallet, meaning that the Deposited or Pledged Bitcoin should remain in the possession of Defendants, and that legal title should remain with the depositor.

146.    Plaintiff alleges on information and belief that Defendants lead the public to believe that their Deposited or Pledged Bitcoin will be custodied by Gemini Trust, an insured, regulated, and licensed custodian; however, Defendants will subsequently transfer possession of the public's Bitcoin to third-parties who are neither insured, regulated, nor licensed custodians.

147.    Plaintiff alleges on information and belief that Defendants fail to disclose that they will subsequently transfer possession or title to the Deposited or Pledged Bitcoin to undisclosed third-parties who are not licensed, insured, or bonded.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

148.    Plaintiff alleges on information and belief that the third-parties to which Defendants intend to convey possession of the Deposited or Pledged Bitcoin will not observe any legal duties and responsibilities that Defendants owe to their depositors, including but not limited to the duty of ordinary care.

149.    Plaintiff alleges on information and belief that Defendants fail to disclose to the public that the entities in possession of Deposited or Pledged Bitcoin will not observe any legal duties or responsibilities owed to depositors, including but not limited to the duty of ordinary care.

150.    Plaintiff alleges on information and belief that Defendants fail to disclose the identity of the entities in possession of the Deposited or Pledged Bitcoin, thereby preventing depositors from knowing, assessing, or consenting to quantity and quality of risk exposure.

151.    Plaintiff alleges on information and belief that the entities which will take possession or title to the Deposited or Pledged Bitcoin will not hold the Bitcoin in trust, and will not act for the benefit of the depositor who reasonably believes that they retain legal and/or beneficial ownership thereof.

152.    Plaintiff alleges on information and belief that the third-parties to whom Defendants convey possession or title of the Deposited or Pledged Bitcoin may, in turn, confidentially and unbeknownst to the parties, transfer exclusive possession and title of the public's bitcoin to fourth-parties; and the fourth-parties may transfer possession and title to fifth-parties, and so on, while failing to observe any legal and equitable duties to the Bitcoin's depositor, and acting solely to maximize the expected profit and financial self-interest themselves.

153.    Plaintiff alleges on information and belief that Defendants do not disclose to their depositors and pledgors any information regarding the identity of the third, fourth and fifth-parties, the terms pursuant to which the third, fourth, and fifth-parties hold the Bitcoin, or the profits earned by the third, fourth, and fifth-parties on account of the Bitcoin.

154.    Plaintiff alleges that Defendants make disclosures, if any, in a manner that is intentionally deceptive, uninformative, and vague.

18

155.    Plaintiff alleges on information and belief that Defendants covertly commandeer the entire bundle of rights in Deposited or Pledged Bitcoin, leaving depositors and pledgors with no remaining rights in their Bitcoin.

156.    Plaintiff alleges on information and belief that Defendants fail to disclose the magnitude of risk to which the Deposited or Pledged Bitcoin is exposed.

157.    Plaintiff alleges on information and belief that Defendants do not disclose any financial information about the depositors' and pledgors' actual or legal counterparties, such as BLOCKFI LLC; consequently, the public cannot make an informed decision regarding the risk they are incurring.

158.    Plaintiff alleges on information and belief that Defendants expose the Pledged or Deposited Bitcoin to excessive risk, violating Defendants' duties, including but not limited a violation of their duty of ordinary care.

## BLOCKFI LENDING LLC is the Alter Ego of BLOCKFI INC

159.    Plaintiff alleges on information and belief that BLOCKFI INC. is the sole member and manager of BLOCKFI LLC.

160.    Plaintiff alleges on information and belief that BLOCKFI INC and BLOCKFI LLC are subject to common control, agents, offices, and share the same website, "Blockfi.com."  (hereinafter ""BLOCKFI.COM")

161.    BLOCKFI.COM displays a "BLOCKFI" logo which does not differentiate between legal entities.

162.    BLOCKFI uses only a singular "Blockfi" brand and logo to confuse customers into thinking that they are conducting business with the well-capitalized BLOCKFI INC.

163.    Plaintiff alleges on information and belief that, at all times alleged in the complaint, BLOCKFI LLC was an alter ego of BLOCKFI INC, and that all Defendants were acting as agents for each other, assisting each other, providing encouragement, and agreeing to engage in the violations of California Law described herein.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

**BLOCKFI.COM Targeted Plaintiff and Targets the Public of California**

164.    BLOCKFI LLC and BLOCKFI INC. (collectively "BLOCKFI") jointly control,
maintain, and benefit from the website found at BLOCKFI.COM.

165.    Plaintiff alleges that BLOCKFI disseminates audio and video publications for the
purpose of soliciting business from the public in California, which is how Plaintiff heard of
BLOCKFI.

166.    Plaintiff has used BLOCKFI.COM to enter information, submit loan
applications, receive quotes, review and execute loan documentation, track payment history,
view a static account balance, and deposit, pledge, and withdraw Bitcoin from BLOCKFI.

167.    Plaintiff alleges that Defendants invite the public to access BLOCKFI.COM for
the purpose of conducting business, and entering into contracts which are offered to the public
at large.

168.    Plaintiff alleges that BLOCKFI.COM offers all services of BLOCKFI in a single
location, without differentiation based upon the legal entity employed by BLOCKFI INC as its
mere instrumentality.

**Blockfi Unlawfully Requires and Permits Waivers of the California Financing Law**

169.    Plaintiff alleges that Defendants unlawfully require and permit depositors and
pledgors to waive their unwaivable California rights, pursuant to Delaware forum selection
and choice of law clauses in Paragraph 31 of BLOCKFI's contract for pledge (hereinafter
"PARAGRAPH 31"), which provides:

> **Governing Law; Acceptable Forums; Waiver of Jury Trial** . EXCEPT FOR
> THE ARBITRATION PROVISION, WHERE APPLICABLE, WHICH SHALL
> BE GOVERNED BY FEDERAL LAW, THIS AGREEMENT WILL BE
> GOVERNED BY THE LAWS OF THE STATE OF DELAWARE WITHOUT
> REGARD TO ITS CONFLICTS OF LAW PROVISIONS. BORROWER
> UNDERSTANDS    THAT    BORROWER'S    AGREEING    TO    THE
> APPLICABILITY OF DELAWARE LAW AND VENUE ARE A MATERIAL
> FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THIS
> AGREEMENT. Any suit, action or proceeding arising hereunder, or the
> interpretation, performance or breach of this Agreement, shall, if Lender so elects,
> be instituted in any court sitting in New Castle County, Delaware, (the "**Acceptable**

20

Forums"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum. Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement or any Related Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).

170.    Plaintiff alleges that BLOCKFI intends to require and permit the public in California to agree to the above clause when accepting a contract for pledge by Defendants.

171.    Plaintiff alleges on information and belief that the clause in PARAGRAPH 31 constitutes a mandatory, exclusive, and unconditional forum selection clause, requiring Delaware Courts, pursuant to 6 DEL. C. § 2708, to apply Delaware Law.

172.    Plaintiff alleges on information and belief that PARAGRAPH 31 effectively waives important California rights and remedies which are unwaivable.

173.    Plaintiff alleges on information and belief that the clause in PARAGRAPH 31 is an unlawful waiver of the California Financing Law (Cal. Fin. Code § 22000 *et seq.*), and regulations promulgated thereunder, including but not limited to 10 C.C.R. § 1408,

174.    Plaintiff alleges on information and belief that PARAGRAPH 31 constitutes an unlawful waiver of California's unwaivable right to a jury trial.

175.    Plaintiff alleges on information and belief that the clause in PARAGRAPH 31 was intended to evade and avoid California Laws, avoid judicial scrutiny of the California Courts, and to deprive the California pledgors of their unwaivable California rights.

176.    Plaintiff alleges on information and belief that Defendants invite the public to enter into PARAGRAPH 31, for the purpose of evading or avoiding California law.

177.    Plaintiff alleges that he is a borrower who has been required and permitted to waive the application of the California Financing Law, and the regulations promulgated thereunder, intended to operate in his favor, and for his benefit.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

178.    Plaintiff alleges that the California Financing Law, which Defendants attempt to evade, has as one of its purposes "[t]o encourage and foster a sound economic climate in this state." (CAL. FIN. CODE § 22001(a)(6)), a purpose which is undermined by PARAGRAPH 31.

### BLOCKFI's Unlawful Business Practices Harm the Public

179.    According to the California Supreme Court, a pawnbroker "has always been regarded as subject to police regulation *for the benefit of the public*, and to prevent frauds upon it. Thus, touching a pawnbroker act, the Court of Common Pleas of England said: 'It is quite evident that the statute was passed not only for the purpose of protecting the numerous parties who borrow money on small pledges, *but also the public*, against frauds committed on third persons, the real owners of goods, by pledging their property without their consent." (*Levison v. Boas* (1907) 150 Cal. 185, 191 (emphasis added)).

180.    The California Supreme Court has elaborated upon the Legislative intent of the Pawnbroker Laws: "It is well known that persons frequenting the offices of pawnbrokers are generally the reckless and needy and improvident, who require the protection of the law. To no other class of money-lenders do the same reasons apply. Men driven by the necessities of their situation resort to the pawnbroker, and pledge any and all articles in their possession in order to raise money, and they are not particular about the rate of interest charged them. The pawnbroker, also, does a business peculiar to himself. He *always* requires a deposit as security for the amounts loaned, which are usually small; and, in that respect at least, his is a business not carried on by any other person in the state. Pawnbrokers are not allowed to do a certain act, because the legislature in its wisdom deemed it *injurious and harmful to the community* to permit them to do the prohibited act." (*Ex parte Lichenstein* (1885) 67 Cal. 359, 361–362).

181.    Plaintiff alleges that Defendants' unlawful business practices constitute a systematic and ongoing violations of the Pawnbroker Law, or crimes against the public.

182.    Plaintiff alleges on information and belief that Defendants' future victims reside, consume, and invest in California.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

1   183. Plaintiff alleges on information and belief that California's economy will be

2 negatively impacted by the financial consequences of Defendants' unlawful business

3 practices.

4   184. Plaintiff alleges on information and belief that Defendants target the public by

5 advertising within California, receiving property from the public, and transporting that

6 property outside of the territorial *in rem* jurisdiction of California Courts.

7   185. Plaintiff alleges on information and belief that Defendants' actions threaten

8 severe harm to the public, since Defendants' failure to return Bitcoin to the public will

9 consequentially result in a severe negative impact upon the public.

10   186. Plaintiff alleges on information and belief that Defendants can become insolvent

11 or illiquid, thereby permanently depriving the public of their Bitcoin.

12   187. Plaintiff alleges on information and belief that Defendants may fail to return

13 possession of the Bitcoin to the public if the value of the Bitcoin increases faster than the

14 value of Defendants' current assets.

15   188. Plaintiff alleges on information and belief that Defendants may fail to return

16 possession of the Bitcoin to the public if Defendants, or its agents, pledgees, or lessees are

17 hacked, attacked, or otherwise suffer from an Act of God.

18   189. Plaintiff alleges on information and belief that Defendants are exposed to

19 leverage, risk, derivatives, and liabilities which may operate to prohibit Defendants from

20 returning the public's Bitcoin.

21   190. Plaintiff alleges on information and belief that Defendants may fail to return the

22 public's Bitcoin if Defendants or their debtors, creditors, and/or lessees default or become

23 insolvent.

24   191. Plaintiff alleges on information and belief that Defendants have previously

25 declared pledgors to be in default, accelerated their loan balances, and unreasonably or

26 arbitrarily foreclosed upon Bitcoin, merely due to foreseeable and temporary market declines

27 over which the pledgor has no control.

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

192.    Plaintiff alleges that Bitcoin (BTC) prices are extremely volatile, crash periodically, trade non-stop, and are subject to market manipulation, especially when traditional markets are closed, market makers are asleep, and liquidity is scarce.

193.    Plaintiff alleges that Defendants intend to deprive the public of the use, possession, control, and proceeds of their Bitcoin prior to any default.

194.    Plaintiff alleges on information and belief that the public will suffer material losses if Defendants fail to return their Bitcoin, for any reason, whether intentionally or unintentionally, resulting in significant damage to California's markets, California's consumers, and California's supply of credit to California borrowers.

195.    Plaintiff alleges on information and belief that Defendants are bound to disclose the aforementioned risks to the public, since the Defendants owe fiduciary and other duties to their pledgors and depositors, by virtue of its receipt of the Bitcoin, informational asymmetry about their activities, and vulnerability of the depositors and pledgors of the Bitcoin.

196.    Plaintiff alleges on information and belief that in the event of a default by BLOCKFI, their California victims will be reduced to that of BLOCKFI LLC's unsecured creditors.

### **BLOCKFI'S Unlicensed Pawnbroker Activities Threaten California's Economy**

197.    Plaintiff alleges that Defendants' overcollateralized loans deplete consumers of assets within their control, thereby decreasing the assets held by California consumers.

198.    Plaintiff alleges that every unlawful pawn increases Defendants' capital, and decreases the public's capital, creating an incentive for Defendants to originate loans which are subsidized by other consumers.

199.    Plaintiff alleges on information and belief that Defendants misrepresents the legal arrangement of their services, because Defendants represent that the public can retain title and ownership of their Bitcoin; however, Defendants intend to exercise all incidents of ownership, by selling, leasing, or otherwise dispossessing itself of the Pledged or Deposited Bitcoin.

24

200.    Plaintiff alleges on information and belief that Defendants will temporarily dispossess the public of their Bitcoin until they are no longer indebted to Defendants, and may permanently dispossess its pledgors of their Bitcoin in the event that the Bitcoin market price declines.

201.    Plaintiff alleges on information and belief that Defendants commingle, dispossess, sell, take title, and engage in other acts and omissions which are inconsistent with Defendants' duty to preserve the Bitcoin.

202.    Plaintiff alleges on information and belief that Defendants sell Bitcoin, and pass title to third-parties, without disclosure, notice, or consent of their pledgors and depositors.

203.    Plaintiff alleges on information and belief that Defendants use Deposited or Pledged Bitcoin for the purpose of making risky bets, such as short-selling Bitcoin.

204.    Defendants' intend to offer contracts to the public which purportedly provide Defendants with forfeiture rights in the Bitcoin, such that Defendants' rights in the Bitcoin may be summarily forfeited, or foreclosed upon, with neither legal process, judicial oversight, nor a public sale, such that the arbitrary and hasty foreclosure sale will evade legitimate scrutiny.

205.    Plaintiff alleges that Defendants have no statutory authority for their abnormal practice of taking pre-default possession of collateral.

206.    Plaintiff alleges on information and belief that Defendants' foreclosure activities are outside the scope of its Finance Lending License, since fluctuating market values of the collateral purportedly place the pledgors in default, and then Defendants may arbitrarily accelerate the pledgor's principal due, resulting in an extra-judicial foreclosure sale notwithstanding the pledgors' ability to make timely monthly interest payments.

207.    Plaintiff alleges on information and belief that Defendants know, and should know, that a pawnbroker license is required for them to routinely receive pre-default possession of the public's Bitcoin.

208.    Plaintiff alleges on information and belief that Defendants' California competitors suffer unfair competition, because they refuse possession of Bitcoin collateral.

25

209.    Plaintiff alleges on information and belief that as an unlicensed pawnbroker, Defendants' advertise contracts for pledge and are void for illegality.

210.    Plaintiff alleges on information and belief that since Defendants' contracts for pawn are void for illegality, Defendants' security interests are void.

211.    Since Defendants' security interests are void, Defendants have no right to collect interest payments, and no right to possess the public's Bitcoin.

## Related Litigation and Proposition 64 Standing

212.    To recover possession of his personal property and the proceeds thereof, PLAINTIFF filed the case of *Gerro v. Blockfi Lending LLC, et al.* (Los Angeles Superior Court case number 20BBCV00308 (*pending appeal* California Court of Appeal, Second District, case number B307156) (hereinafter "*Gerro I*")) which has been stayed on the basis of *forum non conveniens* due to PARAGRAPH 31 in Plaintiff's unlawful contracts for pledge with Defendants.

213.    Plaintiff alleges that *Gerro I* and the instant action (hereinafter "*Gerro II*") assert different causes of action, arising from different primary rights.

214.    Plaintiff alleges that *Gerro II* seeks to *enjoin* Defendants' *future* unlawful, fraudulent, or unfair business practices and deceptive, false, or misleading advertisements which *harm the public* only. (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 955 (Unwaivable right to seek a "public injunction")).

215.    Plaintiff alleges that *Gerro I* seeks to recover damages, restitution, and possession of plaintiff's personal property. *Gerro II* seeks to obtain an injunction which primarily benefits the public, and an injunction which protects the public from harm.

216.    Plaintiff alleges on information and belief that since Plaintiff has already fell victim to Defendant's violations asserted herein, Plaintiff will not directly benefit from an injunction, except insofar as Plaintiff incidentally benefits as a member of the public.

217.    Plaintiff alleges that *Gerro I* arises from facts which occurred in the past. *Gerro II* arises from facts which are ongoing and occurring in the future.

26

218.    Plaintiff alleges that *Gerro I* asserts Plaintiff's right to the possession of his personal property and the proceeds therefrom.  *Gerro II* asserts the right of himself and the public to receive legally required disclosures, to be protected from advertisements which are deceptive, false, or misleading, and to be free of business practices which are unfair, fraudulent, and unlawful.

219.    Plaintiff alleges that *Gerro I* and *Gerro II* employ will different evidence, contracts, defendants, legal theories, and remedies.

220.    Plaintiff alleges that he has transferred his Bitcoin into the possession of Defendants, pursuant to an unlawful contract for pledge; and on separate occasions, Plaintiff has transferred exclusive possession of his Bitcoin to Defendants as a depositary for safekeeping.

221.    Plaintiff alleges that before transferring possession of his Bitcoin, Plaintiff relied in part upon each of the following of Defendants' deceptive business practices described herein, including but not limited to the following misrepresentations: (A) that Defendants had obtained, maintained, and operated within the scope of, all licenses required by the laws of the State of California; (B) that Plaintiff's interest expense would be limited to Defendants' advertised financing costs and APR interest rates; (C) that Plaintiff's Bitcoin would remain within the custody of Defendants' agent, Gemni Trust, in its capacity as an insured, regulated, and licensed custodian; (D) that Plaintiff would retain title and ownership of his Bitcoin; (E) that BLOCKFI was a well-capitalized entity which would expose Plaintiff to little counter-party default risk; and (F) that Defendants would never charge any "hidden fees."

222.    Plaintiff alleges on information and belief that he would not have entered into transactions with Defendants if it were not for the fraudulent representations complained of in this complaint.

223.    Plaintiff alleges on information and belief that Plaintiff's Bitcoin was subjected to dispossession, liens, and risks of unknown parties.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

224.   Plaintiff alleges on information and belief that his actual financing cost exceeded Defendants' advertised financing cost, because Defendants charged Plaintiff the net rents, profits and proceeds, earned on account of Plaintiff's Bitcoin and belonging to Plaintiff.

225.   Plaintiff alleges on information and belief that Defendants transferred Plaintiffs' Bitcoin from Gemini Trust to third-parties who were not licensed, insured, or regulated custodians.

226.   Plaintiff alleges on information and belief that Defendant BLOCKFI INC limited its liability to Plaintiff by utilizing an improperly dominated and less well capitalized entity, BLOCKFI LLC.

227.   Plaintiff alleges on information and belief that Plaintiff was not returned the identical bitcoin which he had deposited with Defendants for safekeeping.

228.   Plaintiff alleges on information and belief that Defendants transferred Plaintiff's Bitcoin to third-parties, without prior notice to Plaintiff and without Plaintiff's consent or ratification.

229.   Plaintiff alleges that Defendants never disclosed to Plaintiff the identity of the transferees of Plaintiff's Bitcoin.

230.   Plaintiff alleges that Defendants never accounted to Plaintiff for the profits earned on account of his Bitcoin.

231.   Plaintiff alleges on information and belief that Defendants converted the profits, rents, and proceeds from Plaintiff's Bitcoin to their own use.

232.   Plaintiff alleges on information and belief that Plaintiff was charged hidden, undisclosed and indirect interest, by consequence of Defendants' unlawful retention of the rents, profits and proceeds attributable to his Bitcoin.

233.   Plaintiff alleges on information and belief that Plaintiff was unlawfully permitted or required to waive the application of California law in a California forum, including but not limited to unwaivable rights contained in the California Commercial Code, California Financing Law and California Pawnbroker Law.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

234.   Plaintiff alleges that Plaintiff is a consumer, since he borrowed from Defendants for personal purposes only.  Plaintiff purchased and held his Bitcoin for personal purposes.

235.   Plaintiff alleges that Plaintiff invests in Bitcoin for personal purposes only; Plaintiff does not invest on behalf of any third-parties; Plaintiff is not engaged in a business related to Bitcoin; Plaintiff does not purchase Bitcoin for resale; Plaintiff does not use Bitcoin to create products or services.

236.   Plaintiff alleges on information and belief that Defendants returned different Bitcoin to Plaintiff that the Bitcoin which he deposited into Defendants' possession for safekeeping.

237.   Plaintiff alleges that Defendants refused to return almost all of Plaintiff's Bitcoin which he pledged and transferred exclusive possession of to Defendants.

238.   Plaintiff alleges on information and belief that after filing *Gerro I*, but before filing *Gerro II*, Plaintiff exercised his statutory right of redemption under the California Pawnbroker Law, and demanded the return of his Bitcoin and the proceeds earned on account thereof.  Defendants refused this demand.

239.   Plaintiff alleges that Plaintiff exercised his statutory right of redemption, and unnecessarily tendered return of all benefits bestowed by Defendants onto Plaintiff, which Defendants again refused.

240.   These facts are recited for standing purposes only, and Plaintiff does not seek any individualized relief as a result of this complaint.

**FIRST COUNT**
(Against All Defendants and Does 1-100)
Unfair Competition Law
[CAL. BUS. & PROF. CODE § 17200 *et seq.*]

241.   Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 240 hereof, as if fully set forth herein.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

242.   Defendants are engaging in the unlawful business act or practice of receiving goods in pledge, as security for a loan, within the meaning of CALIFORNIA FINANCIAL CODE Section 21000 ("Every person engaged in the business of receiving goods... in pledge as security for a loan is a pawnbroker....") without obtaining required pawnbroker licenses under CALIFORNIA FINANCIAL CODE Section 21300.1, which provides, in part:

It is unlawful for any person who is not duly licensed under this section to act as a pawnbroker...

243.   Defendants are engaging in the unlawful business practice of knowingly and negligently violating the pawnbroker laws, including CALIFORNIA FINANCIAL CODE Section 21209, which provides in full:

The violation of any provision of this chapter [§§ 21200-21009] under circumstances where a person knows or should have known that a violation was being committed is a misdemeanor.

244.   Defendants are engaging in the unlawful business practice of knowingly and negligently violating the pawnbroker laws, including CALIFORNIA FINANCIAL CODE Section 21307, which provides in full:

Except as otherwise specifically provided, the violation of any provision of this chapter [§§ 21300-21307] under circumstances where a person knows or should have known that a violation was being committed is a misdemeanor.

245.   Defendants are engaging in the unlawful business practice of accepting and obtaining forfeiture interests in collateral which it uses and possesses, in violation of CALIFORNIA FINANCIAL CODE Section 21009 (italics added), which provides, in part:

'Finance lender' includes any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans may include lending money and taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to personal property, *the use and possession of which property is retained by other than the... lender...*

30

246.    Defendants are engaging in the unlawful business act or practice of taking possession of collateral pre-default, in violation of CALIFORNIA COMMERCIAL CODE Section 9609(a)(1), which provides, in full:

"After default, a secured party may… Take possession of the collateral."

247.    Defendants are engaging in the unlawful business act or practice of taking possession of the public's Bitcoin pre-default without statutory authority as enumerated by CALIFORNIA COMMERCIAL CODE Section 9207(c):

"…a secured party having possession of collateral or control of collateral under [CALIFORNIA COMMERCIAL CODE] Section 7106, 9104, 9105, 9106, or 9107…"

248.    Defendants are engaging in the unlawful business act or practice of dispossessing itself of pledged property, during the loan term, in violation of CALIFORNIA FINANCIAL CODE Section 21201(c), which provides, in part:

Every pawnbroker shall retain in their possession every article pledged to them for the duration of the loan period….

249.    Defendants are engaging in the unlawful business act or practice of selling the pledged property without complying with the statutory requirements under CALIFORNIA FINANCIAL CODE Section 21201(g), which provides, in full:

"The sale of pledged property is a misdemeanor pursuant to Section 21209."

250.    Defendants are engaging in the unlawful business act or practice of failing to provide a written, contractual right of redemption of pledged property for the full term of the loan, in violation of CALIFORNIA FINANCIAL CODE Section 21201(a)), which provides, in part:

…The loan contract… shall clearly inform the pledgor of their right to redeem the pledge during the loan period.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

251.    Defendants are engaging in the unlawful business act or practice of failing to

provide or comply with the public's right of redemption of pledged property for the entire loan

term, as required by CALIFORNIA FINANCIAL CODE Section 21201(c), which provides, in part:

> During [the loan] period, the pledgor may redeem the articles upon payment of the
> amount of the loan and the applicable charges… the pawnbroker shall return the
> pledged property to the pledgor the next calendar day when both the pawnbroker's
> store and the storage facility are open, not to exceed two business days.

252.    Defendants are engaging in the unlawful business act or practice of using or

operating the Pledged Bitcoin for purposes which are not allowed by CALIFORNIA

COMMERCIAL CODE Section 9207(b)(4), which provides, in full:

> The secured party may use or operate the collateral for any of the following
> purposes:
> (A) For the purpose of preserving the collateral or its value.
> (B) As permitted by an order of a court having competent jurisdiction.
> (C) Except in the case of consumer goods, in the manner and to the extent
>     agreed by the debtor.

253.    Defendants are engaging in the unlawful business act or practice of inserting

unconscionable clauses in their contracts for pledge which purport to provide them with all

ownership rights over the Pledged Bitcoin, in violation of CALIFORNIA FINANCIAL CODE

Section 22302(a), which provides in full:

> Section 1670.5 of the CIVIL CODE applies to the provisions of a loan contract that
> is subject to this division.

254.    Defendants are engaging in the unlawful business act or practice of converting

the monetary proceeds received on account of the Pledged Bitcoin to its own use, in violation

of CALIFORNIA COMMERCIAL CODE Section 9207(c)(2), which provides, in part:

> [A] secured party having possession of collateral… may or shall, as the case may be, do
> all of the following…
> (2) Shall apply money or funds received from the collateral to reduce the secured
>     obligation, unless remitted to the debtor.

32

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

255.   Defendants are engaging in the unlawful business act or practice of converting to its own use the non-monetary proceeds received on account of the Pledged Bitcoin, in violation of CALIFORNIA COMMERCIAL CODE Section 9207(c)(1), which provides, in part:

> [A] secured party having possession of collateral... May hold as additional security any proceeds, except money or funds, received from the collateral.

256.   Defendants are engaging in the unlawful business act or practice of indirectly charging, contracting for, and receiving consideration greater than permitted under the CALIFORNIA COMMERCIAL CODE, thereby violating CALIFORNIA FINANCIAL CODE Section 22326, which provides, in full:

> No person, except as authorized by this division, shall directly or indirectly charge, contract for, or receive any interest, discount, or consideration greater than the lender would be permitted by law to charge if he or she were not a licensee hereunder, upon the loan, use, or forbearance of money, goods, or things in action, or upon the loan, use, or sale of credit. This section applies to any person, who by any device, subterfuge, or pretense charges, contracts for, or receives greater interest, consideration, or charges than is authorized by this division for any loan, use, or forbearance of money, goods, or things in action or for any loan, use, or sale of credit.

257.   Defendants are engaging in the unlawful business act or practice of misrepresenting and miscalculating the finance charge and annual percentage rate (APR) of its loans, in violation of Truth in Lending Act [15 U.S.C. § 1638(a)(3-4)], Regulation Z [12 C.F.R. § 226.4], and CALIFORNIA FINANCIAL CODE § 22346(b, d), which provides in part:

> Any licensee that violates any provision of any of the following federal acts or regulations violates this division:
> (b) The federal Truth in Lending Act, as amended (15 U.S.C. Sec. 1601 et seq.).
> (d) Any regulation promulgated under any of the federal acts in subdivision... (b)...

258.   Defendants are engaging in the unlawful business act or practice of misrepresenting, concealing, and failing to disclose the amount of foregone interest indirectly

33

1   charged to pledgors on account of their Bitcoin, and the risks involved with Defendants'

2   dispossession of Pledged Bitcoin, violating Defendants' disclosure duties under CALIFORNIA

3   FINANCIAL CODE Sections 22161(a)(1, 3), which provides, in full:

4       A person subject to this division shall not do any of the following:
5       (1) Make a materially false or misleading statement or representation to a borrower
        about the terms or conditions of that borrower's loan, when making or brokering
6       the loan....
7       (3) Advertise, print, display, publish, distribute, or broadcast, or cause or permit to
        be advertised, printed, displayed, published, distributed, or broadcast in any
8       manner, any statement or representation with regard to the business subject to the
        provisions of this division, including the rates, terms, or conditions for making or
9       negotiating loans, or for making or negotiating assessment contracts, that is false,
        misleading, or deceptive, or that omits material information that is necessary to
10      make the statements not false, misleading, or deceptive, or in the case of a licensee,
11      that refers to the supervision of the business by the state or any department or
        official of the state.
12

13

14      259.    Defendants are engaging in the unlawful business practice of offering illegal,

15  unlawful, and void contracts for pawn without a pawnbroker license, in violation of

16  CALIFORNIA CIVIL CODE Sections 1550, 1598, 1667, 1668, and *Levison v. Boas* (1907) 150

17  Cal. 185, 191-95, which provides, in part:

18      It being thus established that defendant was a pawnbroker, and it being admitted
19      that, in the conduct of his business, he neither procured the license required by law,
        nor observed the regulations prescribed by the statutes of the state and by municipal
20      ordinance for the conduct of the business of pawnbroker, there is presented the
        second question: What legal consequences followed this dereliction in the matte of
21      these contracts of pledge? And first, as having to do with the question, it is to be
        noted that the business of a pawnbroker is one which has always been regarded as
22      subject to police regulation for the benefit of the public, and to prevent frauds upon
        it. Thus, touching a pawnbroker act, the Court of Common Pleas of England said:
23      'It is quite evident that the statute was passed not only for the purpose of protecting
24      the numerous parties who borrow money on small pledges, but also the public,
        against frauds committed on third persons, the real owners of goods, by pledging
25      their property without their consent.'.... Where the contract is void, the right of the
        pledgee to hold the property, which right depends upon a valid contract, is, of
26      course, lost.... in the case at bar, the illegality and the prohibition goes to the whole
        substance of the contract. It is a prohibition of the law from entering into such a
27      contract at all, and the illegality affects the whole transaction from its inception.
28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

260.    Defendants are engaging in the unlawful business act or practice of requiring and permitting pledgors to waive the California Financing Law (CAL. FIN. CODE § 22000 *et seq.*) and the regulations promulgated thereunder, in violation of Title 10 of the CALIFORNIA CODE OF REGULATIONS, Section 1408, which provides, in part:

> A finance company shall not require or permit a borrower to waive any statutory provision of the Law for his/her benefit, including any notice which the law requires to be given to the borrower... nor shall a finance company require or permit a borrower to waive any mandatory provision of these rules and regulations.

261.    Defendants are engaging in the unlawful business act or practice of soliciting the public to waive their constitutional right to a trial by jury, before any dispute has arisen, in violation of *Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729 (*review dismissed, cause remanded sub nom. Handoush v. Lease Finance Group* (Cal., Aug. 12, 2020, No. S259523) __ Cal.5th ___), which found that "enforcing the forum selection clause here would be contrary to California's fundamental public policy protecting the jury trial right."

262.    Defendants are engaging in the unlawful business practice of contracting or negotiating in the State of California loans with unqualified Delaware choice of law and mandatory Delaware forum selection clauses, for purposes evading or avoiding the California Financing Law (CAL. FIN. CODE § 22000 *et seq.*) in violation of CALIFORNIA FINANCIAL CODE Section 22324, which provides, in full:

> Any person who contracts for or negotiates in this state a loan to be made outside the state for the purpose of evading or avoiding the provisions of this division is subject to the provisions of this division.

263.    Defendants are engaging in the unlawful business act or practice of requiring and permitting the public to waive CALIFORNIA COMMERCIAL CODE Section 9626(b), in violation of CALIFORNIA COMMERCIAL CODE Section 9602(13), which provides, in part:

> [T]o the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections.... (13) [CAL. COM. CODE Section 9626]...

35

264.    Defendants are engaging in the unlawful business act or practice of knowingly misrepresenting, circumventing, and concealing, through subterfuge or device, material aspects and information regarding its transactions in violation of CALIFORNIA FINANCIAL CODE Section 22161(a)(6), which provides, in full:

> A person subject to this division shall not do any of the following… Knowingly misrepresent, circumvent, or conceal, through subterfuge or device, any material aspect or information regarding a transaction to which the person is a party.

265.    Defendants are engaging in the unlawful business act or practice of engaging in acts which constitute fraud or dishonest dealings, in violation of CALIFORNIA FINANCIAL CODE Section 22161(a)(7), which provides, in full:

> A person subject to this division shall not do any of the following… Commit an act that constitutes fraud or dishonest dealings.

266.    Defendants are engaging in the unlawful business practice act or practice of violating the Unfair Competition Law, in violation of CALIFORNIA FINANCIAL CODE Section 22161(a)(5), which provides, in full:

> A person subject to this division shall not do any of the following… Engage in any act in violation of Section 17200 of the Business and Professions Code

267.    Defendants are engaging in the unlawful business act or practice of failing to familiarize, train, and inform its employees as to the requirements of the California Financing Laws (Cal. Fin. Code § 22000 *et seq.*) and regulations promulgated pursuant to CALIFORNIA FINANCIAL CODE Section 22150, in violation of Title 10 of the CALIFORNIA CODE OF REGULATIONS Section 1446, which provides that:

> Every employee of a finance company who negotiates for or makes any loan pursuant to the Law shall familiarize oneself with the laws, rules, and regulations governing such loan business. No office shall be left in charge of any person who is not informed concerning such laws, rules, and regulations.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

268.    Defendants are engaging in the unlawful business act or practice of willfully violating the aforementioned provisions of the California Financing Law (CAL. FIN. CODE § 22000 *et seq.*), with respect to the consumer public, in violation of CALIFORNIA FINANCIAL CODE Section 22750(b), which provides, in full:

If any provision of this division is willfully violated in the making or collection of a loan, whether by a licensee or by an unlicensed person subject to this division, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction.

269.    Defendants are engaging in the unlawful business act or practice of violating the aforementioned provisions of the California Financing Laws (CAL. FIN. CODE § 22000 *et seq.*), with respect to the consumer public, in violation of CALIFORNIA FINANCIAL CODE Section 22752(a), which provides, in full:

If any provision of this division is violated in the making or collection of a loan, for any reason other than a willful act of the licensee, the licensee shall forfeit all interest and charges on the loan and may collect or receive only the principal amount of the loan.

270.    Defendants are engaging in the unlawful business act or practice of failing to exercise ordinary care for the preservation of Deposited Bitcoin, in violation of CALIFORNIA CIVIL CODE § 1852, which provides, in full:

A depositary for hire must use at least ordinary care for the preservation of the thing deposited.

271.    Defendants are engaging in the unlawful business act or practice of failing to exercise great care for the preservation of Pledged Bitcoin, in violation of CALIFORNIA CIVIL CODE § 1886, which provides, in full:

A borrower for use must use great care for the preservation in safety and in good condition of the thing lent.

37

272.    Defendants are engaging in the unlawful business act or practice of failing to remit the profits earned on account of Pledged Bitcoin to the pledgor, in violation of CALIFORNIA CIVIL CODE § 1885, which provides, in full:

A loan for use does not transfer the title to the thing; and all its increase during the period of the loan belongs to the lender.

273.    Defendants are engaging in the unlawful business act or practice of misrepresenting the source of its custody services, by transferring possession of Deposited or Pledged Bitcoin to third, fourth, and fifth-parties other than its represented source of custodial services, Gemini Trust, in violation of CALIFORNIA CIVIL CODE § 1770(a)(2).

274.    Defendants are engaging in the unlawful business act or practice of failing to disclose their affiliation, connection, or association with others, in violation of CALIFORNIA CIVIL CODE § 1770(a)(3).

275.    Defendants are engaging in the unlawful business act or practice of misrepresenting that their custodial services provide with the benefits and characteristics of custodial services by a regulated, insured, audited, domestic, and licensed custodian in violation of CALIFORNIA CIVIL CODE § 1770(a)(5).

276.    Defendants are engaging in the unlawful business act or practice of misrepresenting the quality of their custodial services, by failing to disclose the risks involved with transferring the Deposited or Pledged Bitcoin to undisclosed entities for undisclosed purposes, in violation of CALIFORNIA CIVIL CODE § 1770(a)(7).

277.    Defendants are engaging in the unlawful business act or practice of misrepresenting rights, remedies and obligations, by failing to disclose that title to the Deposited Bitcoin will pass to Defendants, in violation of CALIFORNIA CIVIL CODE § 1770(a)(14).

278.    Defendants are engaging in the unlawful business act or practice of inserting unlawful provisions in their contracts, which purportedly allows Defendants to retain the rents,

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

profits, and monetary or nonmonetary proceeds attributable to the Pledged Bitcoin, in violation of CALIFORNIA CIVIL CODE § 1770(a)(14).

279.    Defendants are engaging in the unlawful business act or practice of misrepresenting that their loans constitute lawful transactions, while unlicensed pawnbroking is prohibited by law, in violation of CALIFORNIA CIVIL CODE § 1770(a)(14).

280.    Defendants are engaging in the unlawful business act or practice of inserting unconscionable provisions in their contracts, including provisions which purportedly provide Defendants with ownership rights over Pledged Bitcoin, and purportedly allow Defendants to retain all profits from Pledged Bitcoin, and waiving the pledgor's rights to notice, accounting and other unwaivable legal duties, in violation of CALIFORNIA CIVIL CODE § 1770(a)(19).

281.    Defendants are engaging in the deceptive business act or practice of advertising, in connection with their loans offered to the public, falsely represented finance charges and annual percentage rates (APR), which fail to include indirect interest charges and foregone interest on Pledged Bitcoin.

282.    Defendants are engaging in the deceptive business practice of representing that they are licensed by the Department of Business Oversight to offer contracts for pledge, and failing to disclose that their proffered loans may require a pawnbroker license.

283.    Defendants are engaging in the deceptive business act or practice of advertising to the public that their contracts for pledge are ordinary and lawful transactions.

284.    Defendants are engaging in the deceptive business practice of failing to disclose that they, their privies, and third-, fourth-, or fifth-parties intend to take legal title to Deposited or Pledged Bitcoin.

285.    Defendants are engaging in the deceptive business practice of representing that the Deposited or Pledged Bitcoin will be held by a licensed custodian, when the Bitcoin will be held, in part, by entities who refuse to recognize any legal or equitable obligations to Defendants' pledgors and depositors.

286.    Defendants are engaging in the deceptive business act or practice of concealing, through subterfuge or device, clauses whereby pledgors and depositors purportedly consent to or waive the Defendants' unlawful business practices described herein.

287.    Defendants are engaging in the deceptive business act or practice of misrepresenting the risks that the public will be exposed to, by transferring possession of the public's Bitcoin to third-parties.

288.    Defendants are engaging in the deceptive business act or practice of concealing from Defendants' pledgors the profits, rents, and proceeds attributable to Pledged Bitcoin.

289.    Defendants are engaging in the deceptive business act or practice of affirmatively misrepresenting that that Defendants will not charge their pledgors with any hidden fees.

290.    Defendants are engaging in the unfair business practice of depriving pledgors of the rents, profits, and proceeds attributable to the Pledged Bitcoin.

291.    Defendants are engaging in the unfair business act or practice of taking away business from their lawful competitors.

292.    Defendants are engaging in the deceptive business act or practice of representing that the public will retain ownership of Deposited Bitcoin, while Defendants intend to exercise all incidents of ownership.

293.    Defendants are engaging in the deceptive business act or practice of failing to disclose that Defendants are not licensed, as a bank, to provide banking services.

294.    Defendants are engaging in the deceptive business act or practice of failing to disclose to the public the risks described herein, which result from Defendants' undisclosed transfer of the Deposited or Pledged Bitcoin to unknown and undisclosed transferees.

295.    Defendants are engaging in the deceptive business act or practice of causing the public to believe that they can waive their unwaivable rights under California law.

296.    Defendants are engaging in the unfair business act or practice of tricking the public into providing consent to the leasing, re-pledging, and selling of their Pledged Bitcoin.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

1
2
3

## SECOND COUNT
(Against All Defendants and Does 1-100)
False Advertising Law
[BUSINESS & PROFESSIONS CODE Section 17500 *et seq.*]

4
5

297.    PLAINTIFF incorporates by this reference each and all of the allegations

contained in Paragraphs 1 through 296 hereof, as if fully set forth herein.

6
7

298.    Defendants intend to perform services, by receiving possession of Bitcoin and

providing custody services thereto.

8
9

299.    Defendants intend to dispose of personal property, by selling, leasing, pledging,

and otherwise disposing of Deposited or Pledged Bitcoin.

10
11
12

300.    Defendants publicly disseminate advertisements concerning their services which

are untrue or misleading, and which Defendants knew or should have known were untrue or

misleading.

13
14
15

301.    Defendants publicly disseminate advertisements concerning their services, which

are untrue or misleading, and which Defendants knew or should have known were untrue or

misleading.

16
17
18

## THIRD COUNT
(Against All Defendants and Does 1-100)
Civil Conspiracy

19
20

302.    Plaintiff incorporates by this reference each and all of the allegations contained

in Paragraphs 1 through 301 hereof, as if fully set forth herein.

21
22

303.    Defendants were aware of, and have tacitly agreed to participate in, unlawful

business practices as described herein.

23
24

304.    Defendants have agreed to the common scheme and plan of originating and

enforcing unlawful contracts for pledge.

25

305.    Defendants have each benefitted and profited from those unlawful business acts.

26
27

306.    Defendants are operating pursuant to the common plan and design to violate the

law for their own gain.

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

**FOURTH COUNT**
(Against All Defendants and Does 1-100)
Aiding and Abetting

307.    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 306 hereof, as if fully set forth herein.

308.    Defendants knew that unlawful business practices were going to be committed by each other against the public.

309.    Defendants gave substantial assistance and encouragement to each other in the commission and omissions which violated California law.

310.    Defendants' conduct was a substantial factor in causing harm to the public.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for a judgment against Defendants as follows:

1.    For a preliminary and permanent injunction pursuant to CALIFORNIA BUSINESS AND PROFESSIONS CODE sections 17203 and 17535, restraining and enjoining Defendants from continuing their unlawful, unfair, and fraudulent business acts and practices, untrue or misleading advertising, and restraining and enjoining Defendants from making, disseminating, or causing to be made or disseminated before the public in this state, any false advertisements;

2.    An award of attorney fees for enforcement of an important right affecting the public interest, pursuant to CALIFORNIA CODE OF CIVIL PROCEDURE section 1021.5;

3.    An order that Defendants cease their violations of law, set forth herein;

4.    For an award of attorney fees and costs; and

5.    For any and all other relief the Court deems just and proper.


Dated:  September 28, 2020             THE LAW OFFICES OF GERRO & GERRO


                                       /s/ George Gerro
                              By: _____
                                       George J. Gerro
                                       Attorney and Plaintiff

42
FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

1.   At the time of service I was at least 18 years of age and **not a party to this legal action.**

2.   My business address is 530 South Glenoaks Blvd., Suite 200, Burbank, CA 91502

3.   I served copies of the following documents (specify the exact title of each document served):

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

4.    I served the documents listed above in item 3 on the following persons at the addresses listed:

David Clark
Haynes and Boone, LLP
600 Anton Blvd., Suite 700
Costa Mesa, CA 92626

Scott J. Hyman
Severson & Werson, APC
19100 Von Karman Ave., 7TH Floor
Irvine, CA 92612

5.   a.   ____   **By personal service**. I personally delivered the documents on the date shown below to the persons at the addresses listed above in item 4.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.  (2) For a party delivery was made to the party or by leaving the documents at the party's residence between the hours of eight in the morning and six in the evening with some person not less than 18 years of age.

b.   ____   **By United States mail**. I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and *(specify one):*

(1)   ____   deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid on the date shown below, or

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

(2) ___   placed the envelope for collection and mailing on the date shown below, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Burbank, California.

c.  __X__   **By overnight delivery.**  I enclosed the documents on the date shown below in an envelope or package provided by an overnight delivery carrier and addressed to the person at the addresses in item 4.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d.  ___   **By messenger service.**  I served the documents on the date shown below by placing them in an envelope or package addressed to the person on the addresses listed in item 4 and providing them to a professional messenger service for service.

e.  ___   **By fax transmission.**  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents on the date shown below to the fax numbers of the persons listed in item 4.  No error was reported by the fax machine that I used.  A copy of the fax transmission, which I printed out, is attached to my file copy.

f.  ___   **By e-mail or electronic transmission.**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent on the date shown below to the e-mail addresses of the persons listed in item 4.  I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

6.    I served the documents by the means described in item 5 on *(date): SEE BELOW*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| 9/28/20 | | |
|---|---|---|
| DATE | (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

44

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF