# *Exhibit F*

1  | George J. Gerro (SBN 325168)
2  | John M. Gerro (SBN 85900)
   | Gerro & Gerro
3  | 530 S. Glenoaks Blvd., Suite 200
   | Burbank, CA 91502
4  | Telephone: (818) 840-0000

5  | Attorney for Petitioner
   | George J. Gerro

6

7  | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8  | **COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

9

10 | GEORGE J. GERRO, an individual,                    ) Case No.: 21STCP02023
   |                                                    )
11 |          Petitioner,                               ) *(Assigned for all purposes to the Honorable*
   |                                                    ) *Judge Mary H. Strobel, Department 82.)*
12 |    vs.                                             )
   |                                                    )
13 | CHRISTOPHER S. SHULTZ, as Commissioner            ) **FIRST AMENDED VERIFIED PETITION**
   | of Financial Protection and Innovation of the     ) **FOR WRIT OF MANDATE**
14 | State of California,                               ) **(CIV PROC., § 1085)**
   |                                                    )
15 |          Respondent.                               )
   |                                                    ) <u>Trial Setting Conference</u>
16 |                                                    )
   | _____        ) Date:  October 7, 2021
17 |                                                    ) Time:  1:30pm
   |                                                    ) Dept.: 82
18 | BLOCKFI LENDING LLC, a Delaware Limited           )
   | Liability Company; BLOCKFI TRADING LLC, a          )
19 | Delaware Limited Liability Company; and            )
   | BLOCKFI, INC., a Delaware Corporation,             )
20 |                                                    )
   |          Real Parties in Interest.                 )
21 | _____        )

22 |                          **<u>INTRODUCTION</u>**

23 | Petitioner brings this First Amended Petition for Writ of Mandate, pursuant to Code of Civil Procedure

24 | section 1085, as amended by right (Civ. Proc., § 472(a),) to compel Respondent Christopher S. Shultz,

25 | in his capacity as Commissioner of the California Department of Financial Protection and Innovation

26 | (Commissioner), to revoke or suspend the Finance Lender and Broker License No. 60DBO-81955

27 | (License) issued on August 16, 2018 to Real Party in Interest, BlockFi Lending LLC, a Delaware

28 | Limited Liability Company.  That License was invalidly issued in excess of statutory authority.

---

Therefore, the Commissioner has a mandatory duty to revoke such license, or to suspend such license until the licensee relinquishes all use and possession of personal property collateral belonging to its California borrowers and unwinds all prior forfeitures thereunder.

## PARTIES

1.    At all relevant times, George J. Gerro was an individual residing in the County of Los Angeles. And, George J. Gerro is an attorney at law in the State of California (State Bar Number 325168).

2.    Respondent Christopher S. Shultz (Commissioner) is the Acting Commissioner of the California Department of Financial Protection and Innovation, formerly known as the California Department of Business Oversight (Department).

3.    Real Party in Interest BlockFi Lending LLC, a Delaware Limited Liability Company, (BlockFi) is a California Finance Lender and Broker (license no. 60DBO-81955, issued on Aug. 16, 2018) making loans, secured by its possession of Bitcoin, pursuant to the Commissioner's license.

4.    Real Party in Interest BlockFi Inc., a Delaware Corporation, (BlockFi Inc.) wholly owns, and is the sole member of, BlockFi Lending LLC.  BlockFi Inc. is the alter ego of BlockFi.

5.    Real Party in Interest BlockFi Trading LLC, a Delaware Limited Liability Company, (BlockFi Trading LLC) is a wholly owned subsidiary of BlockFi Inc.

6.    Real Parties in Interest are headquartered at 201 Montgomery St #263, Jersey City, NJ 07302.

## GENERAL ALLEGATIONS

7.    Bitcoin is personal property that is capable of actual, constructive, or exclusive possession.

8.    On the Bitcoin Network, no entity is able to unilaterally reverse a Bitcoin transaction.

9.    If the private key (i.e. password) to Bitcoin is lost, copied, or stolen, then the corresponding Bitcoin may be permanently lost, transferred, or stolen.

10.    By March 31, 2021, BlockFi had taken possession of Bitcoin, and other digital goods, belonging to others, including California residents, businesses, and entities, with a market value of about $15 billion. (*See* Rec.[1] at 132 (BlockFi's use of the Bitcoin that it controls is "completely unregulated").)

---

[1] Citations to "Rec." refer to the Record attached to this Petition.  Exhibits "1" through "17" were obtained through Petitioner's Public Records Act request to the Commissioner's Department.  (A true and correct copy of the Department's Public Records Act response, attaching, in part, Exhibits "1" through "17" is attached hereto as Exhibit "22.") (Rec. at 122.)

11.   Online Bitcoin markets never close.

12.   Bitcoin has a very volatile market price.

13.   There is evidence that Bitcoin prices are manipulated.

14.   Unlike the stock market, Bitcoin markets do not temporarily pause to temper sudden declines.

15.   Bitcoin's price is affected by highly leveraged (up to 125x leverage) Bitcoin-derivative markets.

16.   The majority of Bitcoin-derivative trading volumes occur on websites, without domestic headquarters, that are subject to little or no oversight by United States regulators.

17.   Due to the leverage and nascence of Bitcoin markets, the price of Bitcoin may significantly decline in the short-term as some Bitcoin traders are forced to sell during a Bitcoin price crash.

18.   **BlockFi retains use and possession of Bitcoin securing its loans to California borrowers.**

19.   BlockFi profits by lending United States Dollars to California residents, natural persons, consumers, unaccredited investors, and retail traders (collectively, Consumers).

20.   BlockFi and Blockfi Inc. advertise their loans to California residents on https://BlockFi.com.

21.   BlockFi secures its loans to Consumers by exercising dominion and control over the Consumers' Bitcoin as collateral securing BlockFi's loan (Collateral).  (Rec. at 074, ¶¶ 4(c), 5(a).)

22.   When BlockFi declares a Consumer to be in default of their loan, then BlockFi may foreclose upon the Collateral, by selling the Collateral to repay the Consumer's accelerated loan balance.  (Rec. at 078, ¶ 9(a).)

23.   As a condition of its loans, BlockFi requires Consumers to relinquish use and possession of their Collateral securing the Consumer's loan.  (Rec. at 073-074, ¶ 4.)

24.   BlockFi requires Consumers to transfer actual possession of their Bitcoin to BlockFi as collateral for its loan.  (Rec. at 074, ¶ 4(d).)

25.   BlockFi typically requires Consumers, as collateral for repayment of the Consumers' loan, to transfer Bitcoin worth at least twice (2x) the principal amount of the loan to BlockFi.  (*See* Rec. at 077, ¶ 7(a).)

26.   Once in possession of the California Consumers' Collateral, BlockFi intermittently leases, transfers, hypothecates, rehypothecates, buys, or sells Collateral.  (*See* Rec. at 130, 141, 150, 156, 165.)

27.    BlockFi uses the Collateral without accounting to the Consumers for the profits or details of BlockFi's use.  (Rec. at 074, ¶ 4(c).)

28.    Petitioner is informed and believes, and on that basis alleges that, for the duration of the Consumers' loans, BlockFi claims legal title to Collateral.

29.    Petitioner is informed and believes, and on that basis alleges that, for the duration of the Consumers' loans, BlockFi does not use or possess Collateral in the capacity as the Consumer's agent.

30.    For the duration of the Consumers' loans, BlockFi retains any and all rents, profits, or proceeds earned on account of, received from, or factually caused by its use or possession of Collateral.

31.    BlockFi does not account, disclose, or report to Consumers, regarding their Collateral: "(a) the amount of money devoted to each of these investment activities; (b) the nature and creditworthiness of the borrowers, as well as the identity of any borrowers to whom BlockFi has lent material amounts of cryptocurrency; (c) the terms and duration of the loans; (d) the types of equities, options, and futures it trades; or (e) the profits or losses derived from these activities." (*See* Rec. at 141.)

32.    BlockFi takes possession of the Collateral by and through its express agents, including but not limited to Gemini Trust Company LLC, a New York Limited Liability Company (doing business in California as Gemini Exchange, LLC), Bitgo, Inc., a Delaware Corporation, and BlockFi Trading LLC (collectively, "BlockFi's Agents") (*See* Rec. at 014, 025-026, 074, 109, 138, 148.)

33.    BlockFi's Agents hold the Collateral for the benefit of BlockFi.

34.    BlockFi's Agents hold the Collateral in BlockFi's name.

35.    BlockFi's Agents do not segregate the Bitcoin in a separate account for each Consumer.

36.    BlockFi's Agents do not take orders, relating to the Collateral, from California Consumers.

37.    BlockFi's Agents do not hold the Collateral pursuant to a trust for the benefit of Consumers.

38.    BlockFi treats the Collateral as an asset on its balance sheet.

39.    BlockFi treats its obligation to return the Collateral as BlockFi's unsecured liability.

40.    BlockFi Inc. does not guarantee BlockFi's said unsecured liability to Consumers.

41.    BlockFi does not insure against potential losses of the Consumers' Collateral by purchasing cyber-security insurance or similar insurance.

42.    Upon receipt of Collateral, BlockFi commingles the Collateral with other Bitcoin that BlockFi obtains through its sale of unregistered securities.  (*See* Rec. at 130, 140, 158, 165.)

43.    Periodically, and for BlockFi's own benefit, BlockFi leases portions of the Collateral to third-parties.  (*See* Rec. at 141 ("according to BlockFi...").)

44.    Periodically, and for BlockFi's own benefit, BlockFi uses portions of the Collateral to "purchase equities, options, and futures for its own account."  (*See* Rec. at 141 ("according to BlockFi...").)

45.    Like the investments in its unregistered securities, BlockFi does not disclose the activities, nature, risks, or proceeds from its use of Collateral.  (*See* Rec. at 141.)

46.    BlockFi's "management of these assets," including but not limited to Collateral received from California Consumers, is "completely unregulated, and is not subject to any government oversight or approval." (*See* Rec. at 132.)

47.    If BlockFi fails to return the Collateral for any reason, whether insolvency, theft, negligence, or even an Act of God, then California Consumers may lose their Collateral forever.  (*See* Rec. at 132 ("Failure ... to enter a cease and desist order in this case could result in extensive financial losses... and consumers harmed in this way may have little to no recourse whatsoever").)

48.    Multiple States have found and alleged that Real Parties in Interest BlockFi Lending LLC, BlockFi Trading LLC, and BlockFi Inc. offer and sell such unregistered securities.

49.    A true and correct copy of relevant excerpts of the State of Kentucky's Emergency Cease and Desist Order is attached hereto as Exhibit "24." (Rec. at 127-133) (July 29, 2021.)

50.    A true and correct copy of relevant excerpts of the State of New Jersey's Summary Cease and Desist Order is attached hereto as Exhibit "25." (Rec. at 134-144). (July 19, 2021.)

51.    A true and correct copy of relevant excerpts of the State of Alabama's Order to Show Cause *et cet.* is attached hereto as Exhibit "26." (Rec. at 145-153) (July 20, 2021.)

52.    A true and correct copy of relevant excerpts of the State of Texas' Notice of Hearing is attached hereto as Exhibit "27."  (Rec. at 154-161) (July 22, 2021.)

53.    A true and correct copy of relevant excerpts of the State of Vermont's Show Cause Order is attached hereto as Exhibit "28."  (Rec. at 162-169) (July 22, 2021.)

54.    Petitioner is informed and believes, and on that basis alleges that, BlockFi uses and possesses Consumer's Collateral in the same way as the Bitcoin that BlockFi receives through its sale of unregistered securities.

55.    **BlockFi Claims a Contingent Right to Forfeiture of the Consumer's rights to Collateral.**

56.    BlockFi uses a substantially similar Loan and Security Agreement for its loans to Consumers. (A true and correct copy of relevant excerpts of the Loan and Security Agreement as accessed from https://blockfi.com/sample-contract/ is attached hereto as Exhibit "18.")  ((Rec. at 072-082) (BlockFi's Contract).)

57.    Real Parties in Interest intentionally evade the application and Consumer enforcement of California law through the operation of a mandatory Delaware forum selection clause and unconditional Delaware choice of law clause in BlockFi's Contracts.  (Rec. at 082, ¶ 31.)

58.    BlockFi's Contract states that a failure to maintain a loan-to-value ratio of Seventy Percent (70%) for more than Seventy-Two (72) hours subjects the California borrower to default under the terms of BlockFi's Contract.  (Rec. at 077.)

59.    After an alleged default, BlockFi may immediately foreclose upon the Collateral.  (Rec. at 075.)

60.    Furthermore, BlockFi's Contract states that a failure to maintain a loan-to-value ratio of Eighty Percent (80%) gives BlockFi the right to immediately sell, liquidate, or foreclose upon enough collateral to restore the loan-to-value ratio to Seventy Percent (70%).  (Rec. at 077, ¶ 7(a).)

61.    **After BlockFi declares the Consumer to be in default, BlockFi may "liquidate the Collateral in whole or in part, at is sole discretion."  (Rec. at 078 (emphasis added).)**

62.    Under the BlockFi Contract, Consumers may lose rights to their Collateral due to a temporary decline in the short-term price of Bitcoin.

63.    If a California consumer borrows One-Hundred Dollars ($100) from BlockFi, secured by BlockFi's possession of Two-Hundred Dollars ($200) worth of Bitcoin as Collateral, then:

    a.    If the price of Bitcoin declines by a net total of Twenty Nine Percent (29%) or more, to One-Hundred Forty-Two Dollars ($142) or less, for seventy-two (72) hours or longer, then the borrower is in default and subject to liquidation. (*See* Rec. at 077.)

b.    If the price of Bitcoin declines by a net total of Thirty Eight Percent (38%) or more, to One Hundred Twenty-Five Dollars ($125) or less, then BlockFi may immediately foreclose upon One-Third (1/3rd) of the Collateral. (*See* Rec. at 077.)

c.    If the price of Bitcoin declines by a net total of Forty-Seven Percent (47%), to One Hundred Five Dollars ($105) or less, then BlockFi may BlockFi may liquidate a vast majority of the Collateral; specifically, BlockFi may sell about Eighty-Three Percent (83%) of the Collateral.

d.    If the price of Bitcoin declines by a net total of Fifty Percent (50%), to One Hundred Dollars ($10) or less, then BlockFi may BlockFi may liquidate *all* of the Collateral.

64.    Due to volatility, instability, and leverage, Bitcoin's price routinely draws-down a net total of Fifty Percent (50%) to Ninety Percent (90%).

65.    On March 12, 2020, the price of Bitcoin declined by more than Fifty Percent (50%) in one day.

66.    On or about that day, BlockFi claims that it liquidated about Nine-Tenths (9/10th's) of Petitioner's Collateral. (*See* Rec. at 105-120.)

67.    Petitioner is informed and believes, and on that basis alleges that, BlockFi liquidated many Consumers on or about March 12, 2020 in a mass foreclosure event.

68.    Petitioner was unable to independently verify the veracity of BlockFi's purported liquidations, because BlockFi had asymmetric information, dominion and control over Petitioner's Collateral.

69.    BlockFi never responded to Petitioner's request for details regarding the sale of his collateral, other than to say that BlockFi sold Petitioner's Bitcoin when there was "very little liquidity in the market." (Rec. at 111.)

70.    In sum, BlockFi took possession of Petitioner's Bitcoin as collateral for his loan and refused to return almost all of Petitioner's collateral.

71.    After purportedly foreclosing upon Petitioner, BlockFi offered to "reverse" the foreclosure sales, but only if Petitioner would agree to send more money or Bitcoin to BlockFi. (Rec. at 113-117.)

72.    (A true and correct copy of relevant excerpts of communications between BlockFi and Petitioner are attached hereto as Exhibit "21.")

73.    BlockFi claims that Petitioner forfeited his rights to his Bitcoin pursuant to a substantially similar version of BlockFi's Contract entered into between Petitioner and BlockFi.

---

FIRST AMENDED VERIFIED PEITION FOR WRIT OF MANDATE

7

74.    **Respondent's Predecessor-in-Interest Invalidly Licensed BlockFi.**

75.    The Department of Financial Protection and Innovation is responsible for regulating and issuing licenses to "finance lenders," as defined in Financial Code section 22009.

76.    Respondent's predecessor-in-interest, Jan Lynn Owen, issued a Finance Lender License to Real Party in Interest, BlockFi, even though the Commissioner found that BlockFi intended to retain use and possession of Collateral securing repayment of its loans.

77.    On or about January 11, 2018, BlockFi was organized under the laws of Delaware. (Rec. at 059.)

78.    On or about February 1, 2018, BlockFi applied to the Department for a Finance Lender License. (A true and correct copy of relevant excerpts of BlockFi's February 1, 2018 application, as obtained pursuant to the Public Records Act, is attached hereto as Exhibit "1.") (Rec. at 002-007 (Application).)

79.    BlockFi sought to do business in the State of California, by lending money to Consumers in California.

80.    The Application requested from BlockFi, "any information necessary . . . to have an understanding of the type of business that applicant [BlockFi] plans to conduct under this license." (Rec. at 003.)

81.    In response, BlockFi's Application stated BlockFi's intent to make "secured loans collateralized by digital assets (Bitcoin and Ether)," whereby California borrowers would "put[] up their digital assets as collateral." (Rec. at 003.)

82.    On or about February 14, 2018, the Department wrote a letter to BlockFi. (A true and correct copy of the February 14, 2018 letter from the Department to BlockFi, as obtained by Gerro from the Department, pursuant to the Public Records Act, is attached hereto as Exhibit "2.") (Rec. at 009-012 (February 14, 2018 Letter).)

83.    The Department's February 14, 2018 Letter requested clarification from BlockFi of its proposed lending activities. (Rec. at 010.)

84.    On or about March 7, 2018, the Department received a response from BlockFi. (A true and correct copy of the letter from BlockFi to the Department, dated March 5, 2018, as obtained pursuant to the Public Records Act, is attached hereto as Exhibit "3.") (Rec. at 014-016 (March 5, 2018 Letter).)

85. BlockFi's March 5, 2018 Letter notified Respondent that BlockFi intended to retain use and possession of the personal property collateral securing BlockFi's loans. (Rec. at 014-015.)

86. BlockFi's March 5, 2018 Letter notified Respondent that BlockFi "requires that its clients store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust Company, LLC." (Rec. at 014.)

87. BlockFi's March 5, 2018 Letter notified Respondent that "BlockFi holds each borrower's digital assets in escrow as collateral." (Rec. at 015.)

88. BlockFi's March 5, 2018 Letter notified Respondent that "In the event that the value of the borrower's digital assets falls below a prescribed threshold, BlockFi reserves the right to liquidate some or all those digital assets in order to recoup the outstanding loan balance." (Rec. at 015.)

89. On or about March 8, 2018, the Department wrote a letter to BlockFi. (A true and correct copy of the March 8, 2018 letter from the Department to BlockFi, as obtained from the Department, is attached hereto as Exhibit "4.") (Rec. at 018-021 (March 8, 2018 Letter).)

90. The Department's March 8, 2018 Letter informed BlockFi that it was not allowed to retain use or possession of collateral securing its loans. (Rec. at 018.)

91. The Department's March 8, 2018 Letter stated that "the collateral must remain with the borrower" and that BlockFi "cannot hold the borrower's digital assets in escrow as collateral." (Rec. at 019.)

92. On or about March 23, 2018, the Department received a response from BlockFi. (A true and correct copy of relevant excerpts of the letter from BlockFi to the Department, dated March 23, 2018, as obtained by Gerro from the Department, pursuant to the Public Records Act, is attached hereto as Exhibit "5.") (Rec. at 023-025 (March 23, 2018 Letter).)

93. In BlockFi's March 23, 2018 Letter, BlockFi notified Respondent that it intends to take possession of Collateral so as to prevent BlockFi's borrowers from transferring their collateral to any third-parties. (Rec. at 025.)

94. On or about March 27, 2018, the Department received a response from BlockFi. (A true and correct copy of relevant excerpts of the letter from BlockFi to the Department, dated March 26, 2018, as

obtained pursuant to the Public Records Act, is attached hereto as Exhibit "6.") (Rec. at 027-028 (March 26, 2018 Letter.)

95.   In BlockFi's March 26, 2018 Letter, **BlockFi notified Respondent of BlockFi's intent to "take, in the name of the lender, in part, as security for the loan, possession of each borrower's assets."** (Rec. at 028 (emphasis added).)

96.   On or about March 28, 2018, the Department wrote a letter to BlockFi.  (Rec. at 030.)

97.   A true and correct copy of relevant excerpts of the March 28, 2018 letter from the Department to BlockFi, as obtained by Gerro from the Department, pursuant to the Public Records Act, is attached hereto as Exhibit "7." (Rec. at 030-031 (March 28, 2018 Letter).)

98.   In the Department's March 28, 2018 Letter, the Department again informed BlockFi that it "cannot hold the borrower's digital assets as collateral," because these "activities are not authorized under the [Financing Law]." (Rec. at 031.)

99.   On or about April 6, 2018, the Department wrote a letter to BlockFi.  (A true and correct copy of relevant excerpts of the April 6, 2018 letter from the Department to BlockFi, as obtained by Gerro from the Department, pursuant to the Public Records Act, is attached hereto as Exhibit "8.") (Rec. at 033-034 (April 6, 2018 Letter).)

100. The Department's April 6, 2018 Letter again informed BlockFi that its proposed practice of retaining use or possession of Collateral is "not allowed." (Rec. at 033.)

101. On or about April 10, 2018, the Department received a response from BlockFi.  (Rec. at 023.)

102. A true and correct copy of the email from BlockFi to the Department, dated April 10, 2018, as obtained by Gerro from the Department, pursuant to the Public Records Act, is attached hereto as Exhibit "9." (Rec. at 036-038 (April 10, 2018 Email.)

103. In BlockFi's April 10, 2018 Email, BlockFi attempted to justify and/or distinguish its practice of taking possession of collateral securing its loans.  (Rec. at 037.)

104. On or about April 10, 2018, the Department wrote a letter to BlockFi.  (A true and correct copy of relevant excerpts of the April 10, 2018 letter from the Department to BlockFi, as obtained pursuant to the Public Records Act, is attached hereto as Exhibit "10.") (Rec. at 040-041 (April 10, 2018 Letter).)

105. In the Department's April 10, 2018 Letter, the Department informed BlockFi that, pursuant to Financial Code section 22009, a finance lender may not take possession of collateral. (Rec. at 041.)

106. The Department's "legal counsel" rejected BlockFi's legal arguments contained in BlockFi's April 10, 2018 Email. (Rec. at 041.)

107. Plaintiff is informed and believes, and on that basis alleges that, on or about April 10, 2018, the Department and BlockFi communicated via telephone. (Rec. at 043, 045.)

108. On or about April 11, 2018, the Department received a follow-up email from BlockFi. (A true and correct copy of the email from BlockFi to the Department, dated April 11, 2018, as obtained pursuant to the Public Records Act, is attached hereto as Exhibit "11.") (Rec. at 043-045 (April 11, 2018 Email).)

109. In BlockFi's April 11, 2018 Email, BlockFi stated that it would make loans based upon its valuation of cryptocurrencies that its borrowers possess. (*See* Rec. at 043.)

110. On or about May 15, 2018, Respondent's predecessor-in-interest received a request for interpretive opinion from BlockFi. (A true and correct copy of the request for interpretive opinion, with exhibits omitted, from BlockFi to the Department, dated May 14, 2018, as obtained pursuant to the Public Records Act, is attached hereto as Exhibit "12.") (Rec. at 047-051 (May 14, 2018 Request).)

111. BlockFi asked the Department to keep its May 14, 2018 Request confidential (Rec. at 053.)

112. The Department agreed to keep BlockFi's request confidential until June 7, 2020 (Rec. at 055.)

113. In its May 14, 2018 Request, BlockFi requested Respondent's permission for BlockFi to "possess . . . collateral . . . . held in its name with a third party depository." (Rec. at 047-048.)

114. In its May 14, 2018 Request, BlockFi acknowledged Respondent's prior disapprovals of its proposed lending practice of possessing collateral. (Rec. at 048.)

115. In its May 14, 2018 Request, BlockFi notified Respondent that BlockFi takes possession of collateral securing its loans to borrowers in other states. (Rec. at 048.)

116. In its May 14, 2018 Request, BlockFi incorrectly construed Financial Code section 22009 as allowing a finance lender to take possession of Collateral. (Rec. at 049.)

117. In its May 14, 2018 Request, BlockFi erroneously argued that the Commercial Code allows a finance lender to routinely possess collateral prior to any default by the borrower. (Rec. at 049.)

118.  Plaintiff is informed and believes, and on that basis alleges that, by May 14, 2018, the issue of whether BlockFi could possess collateral was the "only obstacle to approval of the application for a CFL license submitted by BlockFi." (Rec. at 051.)

119.  At the end of BlockFi's May 14, 2018 Request, BlockFi "request[ed] that, if the Department reaches a preliminary conclusion in its review of this request that a finance lender may not hold collateral, the Department contact the undersigned and at our option we be permitted to withdraw this request for the interpretive opinion." (Rec. at 051.)

120.  BlockFi withdrew its May 14, 2018 Request before any interpretive opinion was issued in response to BlockFi's May 14, 2018 Request.

121.  Petitioner is informed and believes, and upon that basis alleges that, Respondent considered and agreed with BlockFi's May 14, 2018 Request in a series of intra-agency communications, withheld by the Department pursuant to the Public Records Act.  (A true and correct copy of the itemized communications is attached hereto as Exhibit "29.")  (Rec. at 170-172.)

122.  Charles E. Washburn, Jr. (Mr. Washburn), on behalf of Manatt, Phelps & Phillips, LLP, acted an attorney for BlockFi in connection with BlockFi's application for a finance lender's license from the Department.  (A true and correct copy of the Declaration of Mr. Washburn, filed with the Los Angeles Superior Court on March 23, 2021, is attached hereto as Exhibit "19.")  (Rec. at 083-099.)

123.  Plaintiff is informed and believes, and on that basis alleges that, BlockFi "consistently made the [Department] aware that BlockFi intended, as a licensed finance lender, to hold cryptocurrency as collateral (whether directly or through a third party)." (Rec. at 085-088.)

124.  Plaintiff is informed and believes, and on that basis alleges that, the Department agreed with BlockFi's legal conclusion that BlockFi could hold collateral securing its loans consistently with Financial Code section 22009.  (*See* Rec. at 085-088.)

125.  Plaintiff is informed and believes, and on that basis alleges that, the Department issued a finance lending license to BlockFi upon the understanding that BlockFi would use the license to make loans secured by personal property that BlockFi uses and possesses.  (Rec. at 085-088.)

126.  The Department found that BlockFi's use and possession of personal property securing its loans with a forfeiture interest in favor of BlockFi was consistent with the Financing Law. (Rec. at 085-088.)

127.  The Department issued BlockFi's finance lending license upon the legal conclusion that a finance lender may retain use and possession of collateral consistently with Financial Code section 22009.  (Rec. at 085-088.)

128.  **On August 16, 2018, the Department licensed BlockFi as a "'finance lender' . . . as defined in [California Financial Code section 22009]."** (license no. 60DBO-81955).  (Rec. at 059 (emphasis added) (License).)

129.  The Department's issuance of BlockFi's license indicated its agreement with BlockFi's legal conclusion that a finance lender may "hold cryptocurrency as collateral for loans."  (Rec. at 085-088.)

130.  When the Department issued the finance lender's license to BlockFi, the Department had reason to believe that BlockFi would rely upon the authority of its finance lending license to make loans secured by BlockFi's use and possession of collateral securing its loans.

131.  On at least one occasion, BlockFi was notified that its lending activities required a pawnbroker's license.  (*Compare* Fin. Code, § 21000 *with id*., at § 22009.)  (*See* John Kim and Flori Marquez – Crypto Regulations, Security, and Saving Crypto from Pawn Shops!, YouTube, (published on Feb. 20, 2020) (last accessed on August 5, 2021) accessible at https://www.youtube.com/watch?v=KPW7KsRzcy0.)

132.  Nevertheless, BlockFi operates as an unlicensed pawnbroker in the State of California.

133.  The Department issued BlockFi's finance lender license upon the erroneous legal conclusion that a finance lender may retain use and possession of personal property collateral.  (Rec. at 085-088.)

134.  Upon information and belief, the Department has adopted a policy of issuing "finance lender" licenses to lenders that retain use or possession of digital assets.  (Rec. at 103.)

135.  Upon information and belief, the Department has adopted a policy of issuing "finance lender" licenses to lenders that retain use or possession of intangible assets.  (Rec. at 103.)

136.  Jan Lynn Owen (Ms. Owen) was the Commissioner of the Department when BlockFi's License was issued, and is currently a "senior advisor" to the law firm of Manatt, Phelps & Phillips, LLP—the same law firm that represented BlockFi when she issued its finance lending License.  (Rec. at 101.)

137.  A true and correct copy of the Declaration of Ms. Owen, filed with the Los Angeles Superior Court on March 23, 2021, is attached hereto as Exhibit "20."  (Rec. at 100-104.)

---

138. Petitioner is informed and believes, and on that basis alleges that, Ms. Owen accurately declared that the Department "permit[s]" BlockFi, "as a finance lender," to "hold or use cryptocurrency (or other collateral) as security for the loans it gives to borrowers." (Rec. at 103.)

139. Petitioner is informed and believes, and on that basis alleges that, Ms. Owen accurately declared that the Department "granted many licenses to finance lenders whose planned business operations included the holding and/or use of collateral that was being used to secure loans." (Rec. at 103.)

140. Petitioner is informed and believes, and on that basis alleges that, Ms. Owen accurately declared that the Department adopted a policy, whether formal or informal, of issuing finance lender licenses to applicants intending to make loans secured by their possession of collateral securing their loans. (Rec. at 102-104.)

### Petitioner has Brought Suit for Private and Public Injunctive Relief

141. Petitioner George J. Gerro (Gerro) is a California resident who borrowed money from BlockFi for non-commercial purposes.

142. BlockFi lent money to Gerro under color of authority of Commissioner's License.

143. On or about May 8, 2020, after BlockFi claimed that Gerro forfeited nearly all of his Bitcoin transferred to BlockFi as collateral for his loan, Gerro brought suit to recover possession of his personal property. (*Gerro v. BlockFi Lending LLC, et al.* (Los Angeles Superior Court, case no. 20BBCV00308 (pending app. California Court of Appeal, Second District, Division 1, case no. B307156) (*Gerro I*).)

144. Before any answer was filed, *Gerro I* was stayed on the grounds of a Delaware forum selection clause contained in BlockFi's Contract, so that procedural decision is currently pending appeal.

145. On or about August 18, 2020, Gerro brought suit for **public injunctive relief only**. (*Gerro v. BlockFi Lending LLC, et al.* (Los Angeles Superior Court, case no. 20STCV31493 (pending app. California Court of Appeal, Second District, Division p, case no. B312647) (*Gerro II*).)

146. Before any answer was filed, *Gerro II* was stayed on the grounds that it constituted the same cause of action as *Gerro I*, so that procedural decision is currently pending appeal.

147. This instant action was brought, because Petitioner has no other legal remedy to revoke or suspend BlockFi's finance lending license.

148.  As long as BlockFi continues to retain use and possession of collateral securing its loans, BlockFi practice of retaining use and possession of Collateral will continue to harm, endanger, and expose California Consumers to massive risk.

149.  Real Parties in interest are not chartered banks.

150.  Real Parties in interest are not regulated by the Securities and Exchange Commission as brokers or dealers.

151.  Real Parties in Interest are not licensed pawnbrokers.

152.  Real Parties in Interest are not insured by the Federal Deposit Insurance Corporation.

153.  Real Parties in Interest are not protected by the Securities Investor Protection Corporation.

## FIRST CAUSE OF ACTION
WRIT OF MANDATE (CIV. PROC., § 1085)

154.  Gerro refers to and realleges all of the above paragraphs and by this reference incorporates those paragraphs as though fully set forth at length.

155.  Respondent, in his capacity as Commissioner of Financial Protection and Innovation of the State of California, has a mandatory duty to revoke or suspend BlockFi's finance lending license.

156.  The Department was informed by Gerro that BlockFi took possession of Gerro's collateral to secure a loan from BlockFi to Gerro.  (Rec. at 061.)

157.  Over a period of time and a series of communications with the Department (true and correct excerpts thereof attached hereto as Exhibit "16") Gerro demanded that the Department take administrative action to prevent BlockFi from using or possessing collateral belonging to California borrowers.  (Rec. at 061-068.)

158.  On June 11, 2020, Gerro submitted a complaint to the Department regarding BlockFi's pre-default possession of collateral, demanding "Revocation of [BlockFi's] License."  (*E.g.* Rec. at 070.)

159.  On or about February 19, 2021, Petitioner sent a complaint to state regulators, which Respondent's Department received and ignored.  (A true and correct copy of the letter from Petitioner to state regulators is attached hereto as Exhibit "23.")  (Rec. at 123-126.)

160.  The Department refused to take any administrative action in response to Gerro's numerous consumer complaints.

161.  BlockFi continues to enter into, and enforce, contracts substantially similar to Exhibit "18." (Rec. at 072-082 (BlockFi's Contract).)

162.  Gerro, in his capacity as a California consumer, and BlockFi, in its capacity as a finance lender, entered into contracts substantially similar to Exhibit "18."

163.  BlockFi took possession of Gerro's collateral to secure its monetary loans to Gerro.

164.  BlockFi claims that it exercised its contractual forfeiture interest in most of Gerro's personal property collateral that BlockFi retained use and possession thereof.

165.  BlockFi continues to claim a forfeiture interest in personal property that BlockFi uses or possesses, belonging to residents of California.

166.  BlockFi's Contract requires that BlockFi shall have "actual possession of, and a first priority security interest in, the Collateral" for the entire duration of BlockFi's loan.  (Rec. at 074.)

167.  BlockFi continues to retain use and possession of collateral securing its outstanding loans.  (Rec. at 074.)

168.  Gemini Trust Company, LLC, in its capacity as an agent of BlockFi, receives possession of collateral, including but not limited to Gerro's collateral.  (Rec. at 074.)

169.  Respondent has the duty to suspend or revoke BlockFi's License.

170.  Gerro has no plain, speedy or adequate remedy at law, because there is no other legal proceeding whereby Gerro can compel the revocation of BlockFi's License.

171.  In this First Amended Petition, Petitioner only requests the issuance of a Writ to the Commissioner, directing him to comply with his mandatory duty to revoke and/or suspend the License.

172.  BlockFi's License was issued in violation of statute.

173.  BlockFi's License was issued in dereliction of duty.

174.  BlockFi's License was issued in excess of jurisdiction.

175.  BlockFi's License is void ab initio.

//

//

## **PRAYER FOR RELIEF**

WHEREFORE, PETITIONER respectfully prays that the Court enter judgment against Respondent as follows:

1.      That a Peremptory Writ of Mandate be issued commanding Respondent to revoke, cancel, or annul BlockFi's Finance Lender and Broker License No. 60DBO 81955 (License);

2.      That a Peremptory Writ of Mandate be issued commanding Respondent to suspend said License until BlockFi no longer retains any use and possession of collateral securing its loans to California borrowers;

3.      That a Peremptory Writ of Mandate be issued commanding Respondent to suspend said License until BlockFi unwinds all of its prior forfeitures of California Collateral and restores possession to Consumers;

4.      That an Alternative Writ of Mandate be issued commanding Respondent to revoke, suspend, or condition said License by a date certain, or to show cause before this court why it has not done so and to determine whether Respondent is in contempt of Court;

5.      For a Declaration that BlockFi's retention of use or possession of personal property collateral securing its loans is and was outside the scope of said License;

6.      For an injunction prohibiting Respondent from issuing any further finance lending licenses to lenders that retain use or possession of personal property collateral;

7.      That any Writ be issued with a return date of three (3) months after service thereof;

8.      That Petitioner be awarded his costs of suit;

9.      That Petitioner be awarded attorney fees pursuant to Civil Code section 1021.5; or

10.     For such other and further Writ relief as to the Court deems just and proper.

Dated:  August 5, 2021                              Respectfully Submitted
                                                    GERRO & GERRO


                                          By:  _George J. Gerro_____
                                                    George J. Gerro
                                                    Attorney and Plaintiff

---

**VERIFICATION**

I, George J. Gerro, the undersigned, says:  he is the Petitioner in the above entitled action; he has read the above FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE (CIV PROC., § 1085), and is familiar with its contents; that the same is true of his own knowledge except as to the matters which are therein stated on his information and belief, and as to those matters that he believes it to be true.  I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this verification is executed on August 5, 2021, in Burbank, California.

_George J. Gerro_

_____

GEORGE J. GERRO

FIRST AMENDED VERIFIED PEITION FOR WRIT OF MANDATE

18

## INDEX OF EXHIBITS TO FIRST AMENDED VERIFIED PETITION FOR WRIT GERRO V. SHULTZ ET AL. (LOS ANGELES SUP. CT. CASE NO. 21STCP02023

| Ex. | Page | DESCRIPTION |
|---|---|---|
| "1" | 1 | Application to the Department of Financial Protection and Innovation (formerly known as the Department of Business Oversight) (Department) by Blockfi Lending LLC (BlockFi) for a Finance Lender's License |
| "2" | 8 | Letter from Department to Blockfi dated February 14, 2018, requesting clarification of Blockfi's business plan. |
| "3" | 13 | Letter from Blockfi to Department dated March 5, 2018, notifying the Department that Blockfi intends to retain use and possession of personal property collateral. |
| "4" | 17 | Letter from Department to Blockfi dated March 8, 2018, notifying Blockfi that its proposed business plan falls outside the scope of a finance lending license. |
| "5" | 22 | Letter from Blockfi to Department dated March 23, 2018, arguing that it must take possession of collateral to prevent borrowers from transferring it. |
| "6" | 26 | Letter from Blockfi to Department dated March 26, 2018, expressing its intent to take possession of its borrower's assets as security for Blockfi's loans. |
| "7" | 29 | Letter from Department to Blockfi dated March 28, 2018, stating that Blockfi's possession of its borrower's collateral is unauthorized by the Financing Law. |
| "8" | 32 | Letter from Department to Blockfi dated April 6, 2018, reiterating that Blockfi's proposed lending activities are not allowed by the Financing Law. |
| "9" | 35 | Email from Blockfi to Department dated April 10, 2018, construing the Commercial Code to allow a finance lender to take possession of collateral. |
| "10" | 39 | Letter from Department to Blockfi dated April 10, 2018, rejecting Blockfi's legal conclusion that a finance lender may possess collateral in accordance with the Commercial Code. |
| "11" | 42 | Email from Blockfi to Department dated April 11, 2018, modifying Blockfi's proposed business plan. |
| "12" | 46 | Request for Confidential Interpretive Opinion from Blockfi to Department dated May 14, 2018, requesting a legal interpretation that would allow a finance lender to use and possess collateral securing its loan. |
| "13" | 52 | Request for Confidential Treatment from Blockfi to Department dated May 14, 2018, requesting confidentiality. |
| "14" | 54 | Grant of Request for Confidential Treatment from Department to Blockfi dated June 7, 2018, extending confidentiality. |

## INDEX OF EXHIBITS TO FIRST AMENDED VERIFIED PETITION FOR WRIT
## (CONTINUED)
## GERRO V. SHULTZ ET AL. (LOS ANGELES SUP. CT. CASE NO. 21STCP02023

| Ex. | Page | DESCRIPTION |
|---|---|---|
| "15" | 56 | Letter from Department to Blockfi dated August 16, 2018, issuing a finance lending license to Blockfi. |
| "16" | 60 | Emails from George J. Gerro (Gerro) to Department dated July 7, 2020, March 25, 2021, October 28, 2020, July 7, 2020, March 31, 2021, and April 2, 2021, demanding that the Department take action against Blockfi. |
| "17" | 69 | Consumer Complaint Form from Gerro to the Department, requesting that the Department revoke Blockfi's license. |
| "18" | 71 | Blockfi's Contract, requiring Blockfi's borrowers to transfer actual possession of their collateral to Blockfi. |
| "19" | 83 | Declaration of Charles J. Washburn, Jr., an attorney for Blockfi, filed on March 23, 2021 in Gerro v. Blockfi Lending LLC, et al. (Los Angeles Superior Court Case Number 20STCV31493,) stating that the Department issued Blockfi's license upon the legal conclusion that Blockfi may possess collateral. |
| "20" | 100 | Declaration of Jan Lynn Owen, former Commissioner of the Department, filed on March 23, 2021 in Gerro v. Blockfi Lending LLC, et al. (Los Angeles Superior Court Case Number 20STCV31493,) stating that the Department has a policy of issuing licenses to finance lenders that take possession of collateral. |
| "21" | 105 | Communications between Blockfi and Petitioner, indicating Blockfi's control, possession, and foreclosure upon Petitioner's collateral securing his loan. |
| "22" | 121 | Disclosure of Exhibits "1" through "17" from the Department to Petitioner, pursuant to California's Public Records Act, in an email dated May 20, 2020. |
| "23" | 123 | Letter dated February 19, 2021 from Petitioner to various state regulators. |
| "24" | 127 | Kentucky Public Protection Cabinet, Division of Securities, Emergency Cease and Desist Order (issued on July 29, 2021) |
| "25" | 134 | New Jersey Office of the Attorney General, Bureau of Securities, Summary Cease and Desist Order (issued on July 19, 2021) |
| "26" | 145 | Alabama Securities Commission, Order to Show Cause *et cet.*, (issued on July 20, 2021) |
| "27" | 154 | Texas State Securities Board, Notice of Hearing (issued on July 22, 2021) |
| "28" | 162 | Vermont Department of Financial Regulation, Show Cause Order (Issued July 22, 2021) |
| "29" | 170 | List of Documents withheld by the Department notwithstanding Petitioner's Public Records Act Request. |

# EXHIBIT "1"

# EXHIBIT "1"

# EXHIBIT "1"

(Department of Business Oversight Use Only)

Fee Paid $ _SS8_

Receipt No. _CF147-02_

FEB 0 2 2018

DEPARTMENT OF BUSINESS OVERSIGHT

File No._____

## STATE OF CALIFORNIA
## DEPARTMENT OF BUSINESS OVERSIGHT

### APPLICATION FOR A LICENSE UNDER THE
### CALIFORNIA FINANCE LENDERS LAW

Received
LA Mailroom

FEB 0 1 2018

Department of
Business Oversight

*APPLICATION FOR A LICENSE AS A:*      [ ] LENDER      [ ] BROKER      ☑ BOTH

The application must be accompanied by a non-refundable application fee of $200, a non-refundable investigation fee of $100, and non-refundable fingerprint processing fees (Departments of Business Oversight and Justice).  The application (together with the fees payable to the Department of Business Oversight) must be filed in the Los Angeles office of the Department of Business Oversight, located at 320 West 4th Street, Suite 750, Los Angeles, CA  90013.

1.    a. Name of Applicant: _BlockFi Lending LLC_

      b. Fictitious Business Name: _NA_

      c. Fictitious Business Name filed in the County of: _NA_

2.    Applicant is organized and will do business as (check as applicable):

      [ ] an individual (a sole proprietor)

      [ ] a general partnership

      [ ] a limited partnership

      [ ] a corporation

      [☑] a limited liability company

      [ ] other (please specify such as joint venture, association, joint stock company, trust, unincorporated organization, government, or political subdivision of a government): _____

3.    Applicant's proposed licensed place of business:

| 86 Chambers Street, Suite 205 | New York, | New York, NY | | 10007 |
|---|---|---|---|---|
| (Number and Street) | (City) | (County) | (State) | (Zip) |

*1422 – CFLL Application Long Form (Rev.5/16)*          1

    b.     Provide a short description of the applicant's business plan that includes any information necessary for the Commissioner of Business Oversight to have an understanding of the type of business that the applicant plans to conduct under this license.

BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the needs of consumers and corporations across the globe.  We build bridges between traditional finance and digital markets that enable growth for all participants.  Our first product is secured loans collateralized by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up their digital assets as collateral.  Leveraging a sophisticated infrastructure that integrates with multiple blockchains, we plan to expand our product set based on our retail and institutional client's needs.

11.    Has the applicant's offer and sale of securities been qualified in California?

    ☐ Yes    ☑ No

If no, check as applicable:
☐ Applicant is exempt from qualification, and has filed any applicable notice of exemption with the Department.
☑ Applicant has never offered or sold its securities in California or to a California resident.

## REQUIRED EXHIBITS:

**EXHIBIT A.**  Provide a balance sheet of the applicant prepared in accordance with generally accepted accounting principles and dated no more than 90 days prior to the date this application is filed.  Label the balance sheet as Exhibit A.

**EXHIBIT B.**  Provide the original surety bond, including riders and endorsements in the amount of $25,000. The instructions and bond form are enclosed.

**EXHIBIT C.**  Provide for each individual (natural person) named in Items 4, 5, and 6, a Statement of Identity and Questionnaire, along with fingerprint information and the cost of fingerprint processing.  The Statement of Identity and Questionnaire form is enclosed.

**EXHIBIT D.**  SOLE PROPRIETOR ONLY: Complete the enclosed form entitled "Statement of Citizenship, Alienage, and Immigration Status for Application of Department of Business Oversight License or Certificate."

**EXHIBIT E.**  Complete the enclosed form entitled "Customer Authorization for Disclosure of Financial Records."

**EXHIBIT F.**  Provide a copy of the current Fictitious Business Name Statement filed with the county clerk. Label the document as Exhibit F.

## EXECUTION SECTION

In the matter of the Application for a License under the California Finance Lenders Law, I, the undersigned, authorized to act on behalf of the applicant, declare that the following statements are true and correct:

1. That the applicant has obtained and read copies of the California Finance Lenders Law (Division 9 of the California Financial Code) and the Finance Company Rules (Chapter 3, Title 10, California Code of Regulations) and is familiar with their content.

2. That the applicant agrees to comply with the requirements of the California Finance Lenders Law, the rules adopted, and the orders issued by the Commissioner of Business Oversight.

3. That in the event of any change of its officers, directors, or any other persons named in this application, the applicant will file an amendment to the application containing the same information in relation to the new person(s) as is required in the application, within thirty days from the date of the change, with the Commissioner of Business Oversight.

4. That the applicant will file with the Commissioner of Business Oversight an amendment to this application prior to any material change in the information contained in the application for licensure, including, without limitation, the plan of operation.

5. That the applicant agrees to report any change of business location at least 10 days prior to the change.

6. That the applicant for a brokers license agrees that a license issued pursuant to the California Finance Lenders Law does not provide the authority to broker loans to lenders that are not licensed as finance lenders as defined in Financial Code Section 22009, that loans will only be brokered to lenders licensed pursuant to the California Finance Lenders Law, and that finance lenders may not pay compensation for brokerage services (i.e., brokerage commission, finder's fee, referral fees, etc.) to anyone not licensed as a broker under this Division, except for those exempt persons as provided for in Section 1451 of the Rules (10 C.C.R. § 1451).

7. For purposes of Financial Code Sections 22340 and 22600, when selling loans secured by real property to institutional investors, the applicant agrees that the source of funds will be exclusive of any funding advances from an institutional investor committed to purchasing the note. The practice commonly known as "table funding" is not permitted under the California Finance Lenders Law.

8. That the applicant agrees that a license issued pursuant to the California Finance Lenders Law permits only employees to work under the license. Persons engaged in lending that are not employees may need to obtain a license under the California Finance Lenders Law.

9. That the applicant agrees that a license issued pursuant to the California Finance Lenders Law does not permit a licensee to authorize locations operated by persons other than employees of the licensee under some form of franchise or license agreement (e.g., net branching).

10. That the applicant agrees to obtain a new license issued pursuant to the California Finance Lenders Law for each additional location.

11. That the applicant agrees to comply with limitations on rates and charges for loans under the California Finance Lenders Law.

12. That the applicant agrees to obtain the Commissioner of Business Oversight's approval prior to engaging in other business at a licensed location, unless that other business is providing products or services of an affiliated supervised financial institution.

13. That the applicant agrees that real estate may not be taken as security for a consumer loan of less than $5,000.

14. That the applicant agrees that commercial loans of less than $5,000 are treated as consumer loans under the law.

15. For high interest rate loans secured by real estate, the applicant agrees to comply with the additional disclosure and consumer protection requirements of the Covered Loan Law and higher-price mortgage loans (Financial Code Section 4970 et seq., Financial Code Section 4995 and Part 226 of Title 12 of the Code of Federal Regulations).

16. That the applicant agrees to not share borrower information with third parties without obtaining the express written consent of the borrower, as required by the California Financial Information Privacy Act (Financial Code Section 4050 et seq.).

17. That the applicant agrees to not charge interest on a consumer loan secured by real estate for more than one day prior to the date the loan proceeds are disbursed from escrow in accordance with Civil Code Section 2948.5.

18. That the applicant will maintain adequate staff to meet the requirements of the California Finance Lenders Law, as prescribed by rule or order of the Commissioner of Business Oversight.

19. That the applicant agrees to maintain accounting records that meet generally accepted accounting principles and demonstrate a net worth of at least $25,000 at all times.

20. That the applicant will file with the Commissioner of Business Oversight any report required by the Commissioner.

21. That the applicant agrees to maintain books and records sufficient to document compliance with the California Finance Lenders Law.

22. That the applicant will keep and maintain for 36 months from the date of final entry on any loan the business records and other information required by law or rules of the Commissioner of Business Oversight.

23. That the applicant will maintain a register of all loans made or brokered under this license that will be updated at least monthly, and that the information maintained in the register will include the name and address of the borrower, account number, amount of loan, date of loan, terms, total of payments and the annual percentage rate, and that the register will also show the account number, name of borrower and payoff date of all loans paid in full.

24. That the applicant will submit to periodic examinations by the Commissioner of Business Oversight as required by the California Finance Lenders Law.

25. That the applicant agrees to pay for the costs of each examination.

26. That the applicant, if located outside of the State of California, agrees to make available to the Commissioner of Business Oversight or the Commissioner's representatives, at a location in this state designated by the Commissioner of Business Oversight, or the Commissioner's representatives, the books, accounts, papers, records and files within 10 calendar days of any request from the Commissioner; or to pay the reasonable expenses for travel, meals, and lodging of the Commissioner of Business Oversight or the Commissioner's representatives incurred during any investigation or examination made at the licensee's location outside this state.

27. That the applicant agrees to pay an annual assessment each year of a minimum of $250 per location.

28. That the applicant agrees to file an annual report by March 15 of each year.

29. That the applicant agrees to maintain a surety bond of $25,000 at all times.

30. That the applicant hereby attests that the applicant (including officers, directors, general partners, persons responsible for the applicant's lending activities in California and persons owning or controlling directly or indirectly, 10% or more of the applicant) has not engaged in conduct that would be cause for denial of a license. (Only one declaration required for each applicant.)

31. That, if applicable, the applicant will comply with the rules governing the filing of a fictitious business name as set forth in the Business and Professions Code, beginning at Section 17900.

32. That the applicant will comply with the examination requirements concerning advertising pursuant to California Code of Regulations Section 1550.

33. By signing the application, the applicant hereby irrevocably appoints the Commissioner of Business Oversight of the State of California, or the Commissioner's successor in office, to be the undersigned's attorney to receive service of any lawful process in any noncriminal suit, action or proceeding against the undersigned, or the undersigned's successor, executor, or administrator which arises under the California Finance Lenders Law or any rule or order thereunder after this consent has been filed, with the same force and validity as if served personally on the undersigned. For the purpose of compliance with the California Finance Lenders Law of the State of California, notice of the service and a copy of process must be sent by registered or certified mail to the undersigned at the following address:

Florencia Maria Marquez
_____
(Name)

86 Chambers Street, Suite 205       New York       NY       10007
_____
(Number and Street)       (City)       (State)       (Zip Code)

*1422 – CFLL Application Long Form (Rev.5/16)*       10

Indicate the name, title, address, telephone number, and e-mail address of the person who should be contacted for information regarding this application. The license will also be mailed to this person *unless otherwise instructed.*

Attention: <u>Stacey Batzar, Regulatory Counsel Group, Inc. Preparer</u>          <u>678-393-1925</u>
              (Name)                        (Title)            (Telephone Number)

<u>219 Roswell Street, Suite 200</u>          <u>Alpharetta,</u>          <u>GA</u>          <u>30009</u>
(Number and Street)            (City)          (State)         (Zip Code)

<u>sbbatzar@rcgteam.com</u>
                  (Email Address)

WHEREFORE, applicant requests that a license be issued by the Commissioner of Business Oversight authorizing applicant to engage in business under the California Finance Lenders Law within the State of California.

The applicant has duly caused this application to be signed on its behalf by the undersigned, thereunto duly authorized.

The undersigned, on behalf of the applicant, acknowledges that this application and all exhibits thereto which are not designated as confidential are subject to public inspection pursuant to Section 250.9.1, Chapter 3, Title 10, California Code of Regulations. A request for confidentiality of certain documents may be requested pursuant to Section 250.10. If a request for confidential treatment is granted (or denied), the person making such request will be notified in writing.

The undersigned also acknowledges on behalf of the applicant that the State Board of Equalization and the Franchise Tax Board are authorized to share taxpayer information with the Department of Business Oversight, and in the event the state tax obligation is not paid by licensee after a license is issued, the Department of Business Oversight may be required to suspend the license (Business and Professions Code Sections 31 and 494.5).

I declare under penalty of perjury under the laws of the State of California that I have read the foregoing application, including all Exhibits attached thereto, or filed therewith, and know the contents thereof, and that the statements therein are true and correct. **The signor of this declaration must be named in either Section 4, 5, or 6 of this application.**

                                                                  <u>BlockFi Lending LLC</u>
                                                                    (Applicant)

Executed at <u>New York, New York, NY</u>
                       (City, County, and State)                                (Signature of Declarant)

Date <u>1/25/18</u>
                                                 Florencia Maria Marquez
                                                          (Typed Name of Declarant)

                                                                    Vice President
                                                                            (Title)

*1422 – CFLL Application Long Form (Rev.5/16)*          11

# EXHIBIT "2"

# EXHIBIT "2"

# EXHIBIT "2"

009

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                        EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

February 14, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE: CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under
the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the
"California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.) A reference to
the California Financing Law means the California Finance Lenders Law before October 4, 2017
and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any
additional deficiency items identified during the review process, is due on May 21, 2018.
Failure to meet this deadline will result in your pending application being ABANDONED
WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not
acceptable and will result in the application being abandoned.**

1.    Item #6e of the Application was left blank. Please resubmit Item #6e (and all other items
      included on the same page as 6e) without any blanks; if necessary, indicate ("N/A") but do
      not leave blanks.

2.    Item #8 of the application indicated that there are no other business activities taking place
      at the Applicant's proposed place of business. However, BlockFi Inc. is also noted to be
      operating out of the same business address as the Applicant. Please revise and resubmit
      Item #8 of the Application so that it indicates the other business (BlockFi Inc.) and provides
      a description of its activities.

3.    Item #10b of the application did not describe any lending and/or brokering activities that
      fall under the purview of the California Financing Law ("CFL"). The business plan also

| 1515 K Street, Suite 200 | One Sansome Street, Suite 600 | 320 West 4th Street, Suite 750 | 1350 Front Street, Room 2034 |
| Sacramento, CA 95814-4052 | San Francisco, CA 94104-4428 | Los Angeles, CA 90013-2344 | San Diego, CA 92101-3697 |
| (916) 445-2705 | (415) 972-8565 | (213) 576-7500 | (619) 525-4233 |

45 Fremont Street, Suite 1700        300 S. Spring Street, Suite 15513        7575 Metropolitan Drive, Suite 108
San Francisco, CA 94105                   Los Angeles, CA 90013                       San Diego, CA 92108
(415) 263-8500                                 (213) 897-2085                                (619) 682-7227

www.dbo.ca.gov • 1-866-275-2677

indicated that, "BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the need of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our product is secured loans collateralized by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up digital assets as collateral." What are fiat currencies? How are these assets securing any loans made by the Applicant? It is unclear what lending activities will be conducted by the Applicant. In addition, no brokering activities were described. Based on the description of the Applicant's planned lending and brokering activities, it does not appear that the Applicant is making or brokering any loans. A finance lender is defined by California Financial Code Section 22009 as any person who is engaged in the business of making consumer or commercial loans. Based on the description of your planned business activities, it is not clear how this falls within the definition of a lender.

Also, a licensed broker under the CFL may only broker loans to licensed CFL lenders.

Please revise and respond accordingly.

4.    A business plan was also submitted under ("Exhibit L"), however, it was indicated to be Exhibit N on the cover letter submitted with the Application. The business plan submitted was indicated as ("Confidential Business Plan"). The business plan is a public document and not confidential. Please remove any reference to confidentiality and resubmit this section.

5.    The Statement of Identity and Questionnaire (SIQ) submitted for Kavita Gupta was not an original SIQ, and the signature page did not include an original, wet-ink signature. Please resubmit Kavita Gupta's SIQ and make sure the verification page includes an original, wet-ink, signature.

6.    Exhibit A: The balance sheet, statement of cash flows and all other financials submitted indicated, ("Draft"). Please remove ("Draft") from the financials and resubmit. The balance sheet should be prepared in accordance with generally accepted accounting principles, with no indications of ("Draft") or any other statements that may give the impression that the information presented may be incorrect.

Exhibit J: The Certificate of Good Standing submitted from the Secretary of State from Delaware did not indicate the date of formation. Please resubmit Exhibit J and ensure that it states the date of formation, state of organization and a statement that the entity is in good standing.

8.    Exhibit K: A certificate of Good Standing from the California Secretary of State was not submitted. Please submit Exhibit K.

9.    Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s) are/is. The organizational chart of the CFL application requires the submission of an organizational chart of the Applicant as follows:

     a.     This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

     b.     Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

     c.     Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

     d.     Please submit the limited partnership agreement for ConsenSys Fund I, L.P.

10.     Please provide a detailed description of the following:

     a.     Who is involved with the Applicant's CFL lending and brokering activities? Please list the names of the individuals and their duties and responsibilities.

     b.     Who makes the CFL loan decisions for the Applicant?

     c.     Who negotiates the terms, rates, and fees with California borrowers?

     d.     Who takes in the loan applications from the California borrowers?

In addition, please list the duties and responsibilities for the individuals named in the application.

11.     The Commissioner requires each licensee to establish a designated e-mail address in order to have rapid, direct communication of vital and time sensitive information, such as Commissioner's Orders, consumer complaint filings, bulletins, surveys and other pertinent information. This e-mail account must be monitored daily by members of the company's executive staff to ensure prompt attention is paid to electronic communications from the Commissioner and the Department of Business Oversight.

You must register for access to the Department's portal. Once this access has been granted, then you must log back into the portal to set up your designated e-mail address. The Department requires that this be established prior to the approval of the application. Delays in requesting portal access and establishing the designated e-mail will result in a delay in the application being approved by the Department.

DESIGNATED E-MAIL: An e-mail address dedicated to receiving electronic mail from the Commissioner and the Department must be established. To begin this process, visit the DBO's Self-Service DOCQNET Portal at https://docqnet.dbo.ca.gov/ and click on the instructions provided in PDF format. Follow the instructions to register your company's e-mail address.

The designated email must use a generic address, not an individual's email (for example, dbo@sbcfinancial.com or govcompliance@abc.com). The designated email address may be an address already in use by your company Inc., but should not be an address provided to the public for general communications. Spam settings must be modified to allow emails form the domains "@dbo.ca.gov" and @Service.GOVDelivery.com." Security setting should also be modified or confirmed to allow for attachments to be received. Also, the designated email should not be an address of a third-party representative. Licensees should review emails sent by the DBO and then determine if they would like to forward the information to a third-party representative.

Please send your response to Daniel Balian at 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

Jan Lynn Owen
Commissioner
Department of Business Oversight


By _____
    Daniel Balian
    Daniel.Balian@dbo.ca.gov
    Corporation Examiner
    California Financing Law
    (213) 576-7687

# EXHIBIT "3"

# EXHIBIT "3"

# EXHIBIT "3"

**PCG**

**Regulatory Counsel Group, Inc.**
*Mortgage Licensing & Compliance Advisors*

March 5, 2018

Received
LA Mailroom

MAR 0 7 2018

Department of
Business Oversight

Department of Business Oversight

320 West 4th Street

Suite 750

Los Angeles, CA  90013

1-866-275-2677

RE:    **BlockFi Lending LLC/CA CFL License Application/60DBO 81955**

Dear Mr. Balian:

Per your request, this provides you with the responses to your inquiries in relation to BlockFi Lending LLC's submission for a CFL License.  Regulatory Counsel Group, Inc. is submitting this on behalf of our client.

1.  Please see enclosed page 4, 6e which we discussed.

2.  BlockFi Inc., as the parent company of BlockFi Lending LLC, employs the full time employees that work on BlockFi Inc. and BlockFi Lending LLC and holds material contracts that relate to the non-lending side of the business, such as office leases, marketing contracts and contracts with other vendors.

3.  *What are fiat currencies?*

   A fiat currency is a currency that is backed by a government. In the case of BlockFi Lending LLC, the term fiat currency is used to describe the U.S. Dollar.

   *b. How are these assets securing any loans made by the Applicant?*

   The assets are secured two ways. First, BlockFi Lending LLC requires that its clients store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust Company, LLC ("Gemini") (NMLS #1518126), throughout the life of the loan. Gemini is a New York trust company licensed by the New York State Department of Financial Services. Gemini is a fiduciary under §100 of the New York Banking Law and held to specific capital reserve requirements and banking compliance standards.

   Second, BlockFi Lending LLC files a UCC-1 with the secretary of state of the primary state of operation or residence of each borrower. The language utilized in our UCCs to describe the collateral is below:

1

*All of Debtor's right, title and interest in the [AMOUNT OF CRYPTOCURRENCY] [TYPE OF CRYPTOCURRENCY] at [GEMINI DEPOSIT ADDRESS], and all [TYPE OF CRYPTOCURRENCY] that is thereafter deposited by Debtor to such address pursuant to the terms of that certain Loan and Security Agreement, dated as of [DATE OF AGREEMENT], by and between Debtor and Secured Party.*

**c.      Please explain how BlockFi Lending LLC is engaged in the business of making consumer and commercial loans.**

BlockFi issues consumer and commercial loans to cryptocurrency holders who require liquidity but do not wish to sell their digital assets. BlockFi holds each borrower's digital assets in escrow as collateral, and provides interest-only, U.S. Dollar-denominated loans borrowers. The product is an installment loan with a 12% interest rate on consumer loans and a 13.5% interest rate on commercial loans. Currently, both types of loans are paid back over a period of 12 months. In the event that the value of the borrower's digital assets falls below a prescribed threshold, BlockFi reserves the right to liquidate some or all those digital assets in order to recoup the outstanding loan balance.

4.   Please see attached business plan without the reference to "confidential".

5.   Kavita Gupta's SIQ with a wet-ink signature is being sent directly to your attention.

6.   Please see the non-draft financials enclosed (BlockFi Inc. and BlockFi Lending LLC).

7.   Please see the attached, Certificate of Good Standing with formation date, state of organization and good standing of entity (Exhibit J).

8.   Please see the attached, Certificate of Good Standing from the Secretary of State of California (Exhibit K).

9.   Per our discussion, please see the enclosed updated organizational chart clarifying the ultimate owner.

10. **Who is involved with the Applicant's CFL lending and brokering activities?  Please list the names of the individuals and their duties and responsibilities.**

Currently, Flori Marquez and Zac Prince are involved in CFL lending activities. Zac Prince is involved in customer outreach efforts. His responsibilities include handling inbound customer questions, developing materials to explain our loan products to prospective clients, and managing our marketing efforts to help initiate applications through marketing efforts.

Flori Marquez is involved in the underwriting, approval and funding of loans. From time to time, Flori Marquez also assists in answering inbound questions from prospective clients.

**b.   Who makes the CFL loan decisions for the Applicant?**
All decisions are approved by Flori Marquez in accordance with BlockFi's underwriting policy. All applicants are evaluated on a pass / fail basis.

2

**c.   Who negotiates the terms, rates, and fees with CA borrowers?**

Because each loan is fully collateralized by an asset, BlockFi Lending LLC's terms are standard across its consumer and business applicants respectively. BlockFi's terms, rates and fees are outlined below:

| Borrower | Term | Rate | Fee |
|----------|------|------|-----|
| Consumer | 12 months | 12.0% | 1.0% |
| Commercial | 12 months | 13.5% | 2.0% |

**d.   Who takes in the loan applications from the CA borrowers?**

All of BlockFi Lending LLC's loan applications are submitted online at https://blockfi.com/apply. Applications are processed by BlockFi's Credit Underwriting team, which currently consists of Flori Marquez.

**e.   List the duties and responsibilities for the individuals named in the application.**

Flori Marquez is responsible for the company's credit operations which include underwriting, funding and tracking of loan applications.

Zac Prince is responsible for the company's investors and helping BlockFi's marketing efforts to help inform potential clients about BlockFi's Lending LLC's lending products.

11.  Please note that the designated email will be set up with legal@blockfi.com.

**If you should have any questions or need any information expeditiously, please do not hesitate to contact me at 678-393-1925 by phone or at sbbatzar@rcgteam.com via email.**

Thank you in advance for your attention to the enclosed.

Regards,


Stacey B. Batzar

219 Roswell Street, Suite 200, Alpharetta, GA 30009

Phone: 678-393-1925/Fax: 678-393-1908

3

017

# EXHIBIT "4"

# EXHIBIT "4"

# EXHIBIT "4"

017

018

STATE OF CALIFORNIA – BUSINESS, CONSUMER _  VICES AND HOUSING AGENCY                    EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

March 8, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE: CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.) A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.      Item #8 of the application indicated that there are no other business activities taking place at the Applicant's proposed place of business. However, BlockFi Inc. is also noted to be operating out of the same business address as the Applicant. Please revise and resubmit Item #8 of the Application so that it indicates the other business (BlockFi Inc.) and provides a description of its activities.

2.      Item #10b of the application did not describe any lending and/or brokering activities that fall under the purview of the California Financing Law ("CFL"). The business plan also indicated that, "BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the need of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our product is secured loans collateralized

---

*1515 K Street, Suite 200*
*Sacramento, CA 95814-4052*
*(916) 445-2705*

*One Sansome Street, Suite 600*
*San Francisco, CA 94104-4428*
*(415) 972-8565*

*320 West 4th Street, Suite 750*
*Los Angeles, CA 90013-2344*
*(213) 576-7500*

*1350 Front Street, Room 2034*
*San Diego, CA 92101-3697*
*(619) 525-4233*

*45 Fremont Street, Suite 1700*
*San Francisco, CA 94105*
*(415) 263-8500*

*300 S. Spring Street, Suite 15513*
*Los Angeles, CA 90013*
*(213) 897-2085*

*7575 Metropolitan Drive, Suite 108*
*San Diego, CA 92108*
*(619) 682-7227*

**www.dbo.ca.gov • 1-866-275-2677**

018

by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up digital assets as collateral."

The business plan provided does not indicate any lending and/or brokering activities that fall under the purview of the CFL. It is unclear what lending activities will be conducted by the Applicant. In addition, no brokering activities were described. Based on the description of the Applicant's planned lending and brokering activities, it does not appear that the Applicant is making or brokering any loans. A finance lender is defined by California Financial Code Section 22009 as any person who is engaged in the business of making consumer or commercial loans. Based on the description of your planned business activities, it is not clear how this falls within the definition of a lender. In addition, a licensed broker under the CFL may only broker loans to licensed CFL lenders. Also, the CFL license is for lending and brokering within the State of California and is not a license to conduct lending and/or brokering activities across the globe.

Please revise your business plan and submit a business plan that falls under the purview of the CFL. Also, please indicate the lending and brokering activities that will be conducted by the Applicant under the CFL in the State of California with California commercial and consumer borrowers. The business plan does not indicate whether the Applicant will be involved with commercial and/or consumer borrowers within the State of California.

Lastly, the collateral must remain with the borrower. Your response indicated that the clients store the assets posted as collateral with the Applicant's licensed custodian, Gemini Trust Company, throughout the life of the loan. This is not allowed. The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets in escrow as collateral.

Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

3.  *The Statement of Identity and Questionnaire (SIQ) submitted for Kavita Gupta was not an original SIQ, and the signature page did not include an original, wet-ink signature. Please resubmit Kavita Gupta's SIQ and make sure the verification page includes an original, wet-ink, signature.*

    No

    Your response to the above item indicated that the SIQ is attached; however, an SIQ was not included with the mail received by the Department.

4.  Exhibit A: The balance sheet submitted indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.

    No

    The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.

    No

    Is the balance sheet prepared under the cash basis or accrual basis?

    Please respond accordingly.

5.    Exhibit J: The Certificate of Good Standing submitted from the Secretary of State from
Delaware did not indicate the date of formation. Please resubmit Exhibit J and ensure that
it states the date of formation, state of organization and a statement that the entity is in good
standing.

6.    Exhibit K: A certificate of Good Standing from the California Secretary of State was not
submitted. Please submit Exhibit K.

7.    Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s)
are/is. The organizational chart of the CFL application requires the submission of an
organizational chart of the Applicant as follows:

    a.    This chart should depict the ownership structure of the Applicant with the
percentages included until the ultimate owner of the Applicant is reached.

    b.    Please list the officers, directors, members, partners, managing members, general
partners, trustees, etc., of each entity in the ownership chain from the Applicant to
the ultimate owners. They are subject to the submission of their SIQs,
fingerprints, and applicable fingerprint processing fees as required.

    c.    Any individuals who own or control, directly or indirectly, 10% or more
outstanding interests of the listed entities in the ownership chain have to submit
their SIQs, fingerprints, and applicable fingerprint processing fees as required by
Exhibit C of the application.

    d.    Please submit the limited partnership agreement for ConsenSys Fund I, L.P.

8.    The Commissioner requires each licensee to establish a designated e-mail address in order
to have rapid, direct communication of vital and time sensitive information, such as
Commissioner's Orders, consumer complaint filings, bulletins, surveys and other pertinent
information. This e-mail account must be monitored daily by members of the company's
executive staff to ensure prompt attention is paid to electronic communications from the
Commissioner and the Department of Business Oversight.

You must register for access to the Department's portal. Once this access has been
granted, then you must log back into the portal to set up your designated e-mail address.
The Department requires that this be established prior to the approval of the application.
Delays in requesting portal access and establishing the designated e-mail will result in a
delay in the application being approved by the Department.

DESIGNATED E-MAIL:  An e-mail address dedicated to receiving electronic mail from
the Commissioner and the Department must be established. To begin this process, visit
the DBO's Self-Service DOCQNET Portal at https://docqnet.dbo.ca.gov/ and click on the
instructions provided in PDF format. Follow the instructions to register your company's
e-mail address.

The designated email must use a generic address, not an individual's email (for example, dbo@sbcfinancial.com or govcompliance@abc.com), The designated email address may be an address already in use by your company Inc., but should not be an address provided to the public for general communications. Spam settings must be modified to allow emails form the domains "@dbo.ca.gov" and @Service.GOVDelivery.com." Security setting should also be modified or confirmed to allow for attachments to be received. Also, the designated email should not be an address of a third-party representative. Licensees should review emails sent by the DBO and then determine if they would like to forward the information to a third-party representative.

Please send your response to Daniel Balian at 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

Jan Lynn Owen
Commissioner
Department of Business Oversight


By _____
      Daniel Balian
      Daniel.Balian@dbo.ca.gov
      Corporation Examiner
      California Financing Law
      (213) 576-7687

022

# EXHIBIT "5"

# EXHIBIT "5"

# EXHIBIT "5"

**Flori Marquez**
**Co-Founder, VP of Operations**

March 23, 2018

VIA OVERNIGHT COURIER

Daniel Balian

Corporation Examiner
California Financing Law
Department of Business Oversight
320 West 4th Street, Suite 750
Los Angeles, California 90013-2344

**RE: California Financing Law License Application 60DBO 81955**

Dear Mr. Balian,

This letter is in reference to the letter sent by the Department on March 8, 2018 to BlockFi
Lending LLC (Applicant) in regards to our application for a license under the California
Financing Law (CFL).

We have set forth below each item in your letter for ease of reference, followed by our
responses:

1. **Item #8 of the application indicated that there are no other business activities taking
   place at the Applicant's proposed place of business. However, BlockFi Inc. is also
   noted to be operating out of the same business address as the Applicant. Please
   revise and resubmit Item #8 of the Application so that it indicates the other business
   (BlockFi Inc.) and provides a description of its activities.**

   Applicant has updated Item #8 of the attached application by checking the "yes" box and
   providing the following description of BlockFi Inc.'s activities:

   Applicant shares its office with BlockFi Inc., the parent company and sole owner of
   Applicant. BlockFi Inc. does not conduct any lending-related activities, and customers
   generally never visit the space, so the shared space should not cause any customer
   confusion. As a parent company, BlockFi Inc. employs the employees that work for
   BlockFi Inc. and Applicant and holds material contracts that relate to the non-lending
   side of the business, such as office leases, marketing contracts and contracts with other
   vendors.

2. **Item #10b of the application did not describe any lending and/or brokering activities
   that fall under the purview of the California Financing Law ("CFL"). The business**

plan also indicated that, "BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the need of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our product is secured loans collateralized by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up digital assets as collateral."

The business plan provided does not indicate any lending and/or brokering activities that fall under the purview of the CFL. It is unclear what lending activities will be conducted by the Applicant. In addition, no brokering activities were described. Based on the description of the Applicant's planned lending and brokering activities, it does not appear that the Applicant is making or brokering any loans. A finance lender is defined by California Financial Code Section 22009 as any person who is engaged in the business of making consumer or commercial loans. Based on the description of your planned business activities, it is not clear how this falls within the definition of a lender. In addition, a licensed broker under the CFL may only broker loans to licensed CFL lenders.

Also, the CFL license is for lending and brokering within the State of California and is not a license to conduct lending and/or brokering activities across the globe. Please revise your business plan and submit a business plan that falls under the purview of the CFL. Also, please indicate the lending and brokering activities that will be conducted by the Applicant under the CFL in the State of California with California commercial and consumer borrowers. The business plan does not indicate whether the Applicant will be involved with commercial and/or consumer borrowers within the State of California.

As you note above, Item #10b did state that "our product is secured loans," indicating that we intend to engage in the business of lending. Nevertheless, we are revising Item #10b in the attached application to distill and clarify our business plan as follows:

Applicant plans to make one-year, fixed interest rate, consumer and commercial loans. The loans will be secured by security interests in crypto currencies owned by the borrower.

In the event that Applicant determines that it will not make a loan, Applicant may refer the applicant or otherwise broker the loan under the authority of its CFL license to other CFL licensed lenders in the State of California.

Lastly, the collateral must remain with the borrower. Your response indicated that the clients store the assets posted as collateral with the Applicant's licensed custodian, Gemini Trust Company, throughout the life of the loan. This is not allowed. The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets in escrow as collateral. Based on the

business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

Responding to the foregoing comment, we note that a crypto currency is not a tangible asset like an automobile or house that a borrower will possess and use while a loan is outstanding, subject to the lender's security interest. Instead, as its name suggests, a crypto currency is more like money or a deposit account, and a lender that takes a security interest in such an asset must exercise control over the asset to protect itself. For example, if a lender takes a security interest in cash, it cannot allow the borrower to have possession of the cash to spend, of course. The way Applicant will exercise this control to protect itself is by having the crypto currency held by a third party custodian pursuant to an agreement between the Applicant, the borrower and the custodian, which agreement among other things will provide that the borrower cannot sell or transfer the crypto currency until the loan that it secures is paid in full.

3. **Your response to the above item indicated that the SIQ is attached; however, an SIQ was not included with the mail received by the Department.**

   Kavita Gupta is sending her SIQ to the Department separately.

4. **Exhibit A: The balance sheet submitted indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.**

   **Please find the Operating Agreement attached as Exhibit A.**

   **The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.**

   Please find updated financials attached as Exhibit B1 and B2. The Fixed Assets are owned by BlockFi Lending LLC. Please find a current breakdown of all loans owned by BlockFi Lending LLC in exhibit B3. These loans were made in states outside of California in accordance with each state's licensing regulations.

   **Is the balance sheet prepared under the cash basis or accrual basis?**

   The balance sheet is prepared under an accrual basis.

5. **Exhibit J: The Certificate of Good Standing submitted from the Secretary of State from Delaware did not indicate the date of formation. Please resubmit Exhibit J and ensure that it states the date of formation, state of organization and a statement that the entity is in good standing.**

   Please find an updated Certificate of Good Standing attached as Exhibit C.

# EXHIBIT "6"

# EXHIBIT "6"

# EXHIBIT "6"

**PCG**

**Regulatory Counsel Group, Inc.**
*Mortgage Licensing & Compliance Advisors*

March 26, 2018

Daniel Balian

Department of Business Oversight

320 West 4th Street

Suite 750

Los Angeles, CA  90013

1-866-275-2677

Received
LA ...

MAR 27 2018

Department  of
Business Oversight

RE:    **BlockFi Lending LLC/CA CFL License Application/60DBO 81955**

Dear Mr. Balian:

Per your request, this provides you with the responses to your inquiries in relation to BlockFi Lending LLC's submission for a CFL License.  Regulatory Counsel Group, Inc. is submitting this on behalf of our client.

1.  Please see attached, page5, #8 of the application.
2.  Please see attached,  page 6, #10b of the application.
3.  Per your request, please see Z. Prince's and F. Marquez's page 1, SIQs with full social security numbers.
4.  Please note that the designated email was set up with legal@blockfi.com.

**If you should have any questions or need any information expeditiously, please do not hesitate to contact me at 678-393-1925 by phone or at sbbatzar@rcgteam.com via email.**

Thank you in advance for your attention to the enclosed.

Regards,

Stacey B. Batzar

219 Roswell Street, Suite 200, Alpharetta, GA 30009

Phone: 678-393-1925/Fax: 678-393-1908

1

b.  Provide a short description of the applicant's business plan that includes any information necessary for the Commissioner of Business Oversight to have an understanding of the type of business that the applicant plans to conduct under this license.

BlockFi Lending LLC plans to make one-year, fixed interest rate, consumer and commercial loans.  In accordance with California Financial Code Section 2209, BlockFi

will take, in the name of the lender, in part, as security for the loan, possession of each borrowers' assets.
The assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

11.  Has the applicant's offer and sale of securities been qualified in California?

☐ Yes      ☑ No

If no, check as applicable:
☐ Applicant is exempt from qualification, and has filed any applicable notice of exemption with the Department.
☑ Applicant has never offered or sold its securities in California or to a California resident.

## REQUIRED EXHIBITS:

**EXHIBIT A.**  Provide a balance sheet of the applicant prepared in accordance with generally accepted accounting principles and dated no more than 90 days prior to the date this application is filed.  Label the balance sheet as Exhibit A.

**EXHIBIT B.**  Provide the original surety bond, including riders and endorsements in the amount of $25,000. The instructions and bond form are enclosed.

**EXHIBIT C.**  Provide for each individual (natural person) named in Items 4, 5, and 6, a Statement of Identity and Questionnaire, along with fingerprint information and the cost of fingerprint processing.  The Statement of Identity and Questionnaire form is enclosed.

**EXHIBIT D.**  SOLE PROPRIETOR ONLY: Complete the enclosed form entitled "Statement of Citizenship, Alienage, and Immigration Status for Application of Department of Business Oversight License or Certificate."

**EXHIBIT E.**  Complete the enclosed form entitled "Customer Authorization for Disclosure of Financial Records."

**EXHIBIT F.**  Provide a copy of the current Fictitious Business Name Statement filed with the county clerk. Label the document as Exhibit F.

*1422 – CFLL Application Long Form (Rev.5/16)*          6

029

# EXHIBIT "7"

# EXHIBIT "7"

# EXHIBIT "7"

029

030

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                    EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*



**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

March 28, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE:    CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.)  A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.    Item #2 of the SIQ for Kavita Gupta did not indicate her employment with BlockFi Inc.
      *OK*    Please revise and resubmit Item #2 of her SIQ so that BlockFi Inc. is indicated.

2.    Item #10b of the application did not describe any brokering activities that fall under the purview of the California Financing Law ("CFL").

      *No*    The collateral must remain with the borrower. Your response indicated that, "Blockfi will take, in the name of the lender, in part, as security for the loan, possession of each borrower's assets. The Assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

---

1515 K Street, Suite 200          One Sansome Street, Suite 600        320 West 4th Street, Suite 750        1350 Front Street, Room 2034
Sacramento, CA 95814-4052          San Francisco, CA 94104-4428        Los Angeles, CA 90013-2344          San Diego, CA 92101-3697
(916) 445-2705                    (415) 972-8565                      (213) 576-7500                      (619) 525-4233

45 Fremont Street, Suite 1700                          300 S. Spring Street, Suite 15513                7575 Metropolitan Drive, Suite 108
San Francisco, CA 94105                                Los Angeles, CA 90013                            San Diego, CA 92108
(415) 263-8500                                        (213) 897-2085                                    (619) 682-7227

www.dbo.ca.gov + 1-866-275-2677

030

This is not allowed under the CFL The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets as collateral.

Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

3.   Exhibit A: The balance sheet submitted, dated January 31, 2018, indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.

The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.

Please respond accordingly.

4.   Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s) are/is. The organizational chart of the CFL application requires the submission of an organizational chart of the Applicant as follows:

   a.   This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

   b.   Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

   c.   Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

   d.   Please submit the limited partnership agreement for ConsenSys Fund I, L.P. The agreement submitted did not indicate a date and any signatures; it was a draft and not the original agreement.

Please submit an organization chart that clearly indicates the information requested above.

Please send your response to Daniel Balian at 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

Jan Lynn Owen
Commissioner
Department of Business Oversight

032

# EXHIBIT "8"

# EXHIBIT "8"

# EXHIBIT "8"

032

033

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY      EDMUND G. BROWN JR., Governor

# DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

April 6, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE: CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.) A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.     Item #10b of the application did not describe any brokering activities that fall under the purview of the California Financing Law ("CFL").

   
   The collateral must remain with the borrower. Your response indicated that, "Blockfi will take, in the name of the lender, in part, as security for the loan, possession of each borrower's assets. The Assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

   This is not allowed under the CFL The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets as collateral.

*1515 K Street, Suite 200*    *One Sansome Street, Suite 600*    *320 West 4th Street, Suite 750*    *1350 Front Street, Room 2034*
*Sacramento, CA 95814-4052*    *San Francisco, CA 94104-4428*    *Los Angeles, CA 90013-2344*    *San Diego, CA 92101-3697*
*(916) 445-2705*    *(415) 972-8565*    *(213) 576-7500*    *(619) 525-4233*

*45 Fremont Street, Suite 1700*    *300 S. Spring Street, Suite 15513*    *7575 Metropolitan Drive, Suite 108*
*San Francisco, CA 94105*    *Los Angeles, CA 90013*    *San Diego, CA 92108*
*(415) 263-8500*    *(213) 897-2085*    *(619) 682-7227*

**www.dbo.ca.gov • 1-866-275-2677**

033

Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

2.  Exhibit A: The balance sheet submitted, dated January 31, 2018, indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.

The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.

Please respond accordingly.

3.  Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s) are/is. The organizational chart of the CFL application requires the submission of an organizational chart of the Applicant as follows:

a.  This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

b.  Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

c.  Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

d.  Please submit the limited partnership agreement for ConsenSys Fund I, L.P. The agreement submitted did not indicate a date and any signatures; it was a draft and not the original agreement.

Please submit an organization chart that clearly indicates the information requested above.

Please send your response to Daniel Balian at 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

Jan Lynn Owen
Commissioner
Department of Business Oversight


By  _____
       Daniel Balian

# EXHIBIT "9"

# EXHIBIT "9"

# EXHIBIT "9"

## Balian, Daniel@DBO

| | |
|---|---|
| **From:** | Washburn, Charles <cwashburn@manatt.com> |
| **Sent:** | Tuesday, April 10, 2018 11:41 AM |
| **To:** | Balian, Daniel@DBO |
| **Cc:** | Flori Marquez; Zac Prince |
| **Subject:** | BlockFi Lending LLC (File Number 60DBO-81955) |
| **Attachments:** | BlockFi Lending LLC_3rd DL_Follow-up Supplemental Questions.pdf; COM_9313..pdf; COM_9312..pdf; BlockFi Lending LLC - Balance Sheet 2018-03.pdf; Screenshot of Bank Account Balance.pdf; BlockFi Lending LLC Loans Receivable.pdf; BlockFi Capitalization Table.pdf |
| **Importance:** | High |

Dear Mr. Balian,

BlockFi Lending LLC, file number 60DBO-81955 ("Applicant"), has asked this law firm to assist them in resolving the last remaining items with respect to their application for licenses under the California Financing Law ("CFL") set forth in your March 28 letter, in order that their application can be approved and CFL licenses can promptly issue.  After you have reviewed this message, I would be happy to discuss with you and other Department representatives any of these items with respect to which the Department might still have questions, so all of the items can be quickly and finally resolved.

The responses below follow the numbering in your March 28 letter, a copy of which is attached for ease of reference.

1. I understand that the Applicant has sent to you by overnight courier an updated page of the SIQ for Ms. Gupta, so this item should be resolved.  Please let me know if it is not.

2. The Applicant believes that its March 23 response addressed the matters discussed in Item 2 of your letter, and we hope the following additional response clarifies and resolves this item.

As discussed in the Applicant's March 23 response, the Applicant has revised and replaced in its entirety its business plan for Item 10(b) of the application to read as follows:

> Applicant plans to make one-year, fixed interest rate, consumer and commercial loans.  The loans will be secured by security interests in crypto currencies owned by the borrower.

> In the event that Applicant determines that it will not make a loan, Applicant may refer the loan applicant or otherwise broker the loan under the authority of its CFL license to other CFL licensed lenders in the State of California.

We are confused by the statements in your March 28 letter that the foregoing business plan is outside of the purview or authority of the CFL.  The business plan states that the Applicant will be engaged in the business of making consumer and commercial loans, which business is clearly within the definition of "finance lender" set forth in the first sentence of Section 22009 of the CFL.  The business plan also states that, under the authority of a CFL license, the Applicant will broker to other CFL lenders applications for loans that the Applicant chooses not to make.  This activity likewise is clearly within the scope of the definition of "broker" in Section 22004 of the CFL.  Please explain to us why these activities are not covered by the CFL, and also please let us know if your letter is therefore advising the Applicant that the Applicant can engage in the activities described in the revised business plan above in California without obtaining a CFL license.

1

We did note that your letter states that "the collateral must remain with the borrower" and a lender "is not allowed under the CFL" to take possession of collateral. Subject to the next paragraph, we are not aware of the basis in the CFL for these statements. Also as we trust the Department is aware, the California Commercial Code provides that a creditor may perfect a security interest in several types of collateral, including "tangible negotiable documents, goods, instruments, money, or tangible chattel paper" as well as "certificated securities," by taking "possession" of the collateral. See Section 9313 of the California Commercial Code, attached. Indeed, in the case of a security interest in "money" a creditor can <u>only</u> perfect its security interest in collateral by taking possession. See Section 9312(a) and (b)(3) of the California Commercial Code, attached. We are sure that the Department does not mean to forbid finance lenders from perfecting security interests as authorized and, in the case of "money," required by California law. Also, a crypto currency of course functions much like "money" in terms of a secured creditor wishing to control it to protect the creditor from the collateral being spent by the borrower.

We do note that the second sentence of Section 22009 states that the business of making consumer and commercial loans "<u>may</u>" (emphasis added) include lending money and entering into a contract with the borrower pursuant to which the borrower agrees that it may forfeit rights in personal property, "the use and possession of which property is retained by other than the mortgagee or lender." Although this is only a guess, perhaps the statements in your letter are based on this clause. If so, we respectfully believe this is a misreading of that second sentence. As the Department is also aware, the CFL has its origins in the Personal Property Brokers' Act of 1909, which included language substantially similar to the second sentence to define a "personal property broker." That definition among other things prevented a personal property broker from making unsecured loans, or loans secured by real estate, which loans of course are permissible today for a finance lender. See in this regard Robert E Stone, *Small Loans in California*, 29 California Law Review 332–365 at 342-343 (1941). Accordingly, the second sentence apparently has been retained over the years by the Legislature as a vestige of the 1909 law, but based on the separate first sentence and the use of the word "may" in the second sentence, a "finance lender" under the CFL is simply "any person who is engaged in the business of making consumer loans or making commercial loans," period, and a finance lender is not prohibited from entering into a security agreement pursuant to which the borrower agrees that the lender may possess the collateral in order to protect the lender and in some cases (not including crypto currency) perfect the security interest.

We would also like to point out that we understand from the Department's web site that the Department recently issued a CFL license to Unchained Capital, Inc., license number 60DBO-78867 ("Unchained"). Unchained is also engaged in the business of lending on the security of crypto currency, and likewise through a different method takes control of the crypto currency securing their loans. See this page on the Unchained web site, stating that collateral is sent from the borrower's crypto currency wallet "to your new loan's vault address," and upon repayment of the loan "we [(i.e., Unchained)] will return your collateral to an address of your choosing": https://www.unchained-capital.com/how_it_works/ Accordingly, if Unchained's practices with respect to control of crypto currency collateral are acceptable to the Department, the Applicant's practices should be equally acceptable.

3. Attached please find a balance sheet as of March 2018 provided by the Applicant that shows a net worth well in excess of $25,000. Assets supporting that net worth include cash of over $388,000, and I have enclosed a screenshot of the Applicant's bank balance provided by the Applicant confirming an amount of over $389,000 as of April 5. Additional supporting documents include a breakdown of the loans payable assets. We trust these materials confirm for the Department that the Applicant has a net worth far in excess of regulatory requirements.

4. The last item in your letter reiterates requests for information that were in your March 8 letter regarding ownership of the Applicant. We similarly are confused by this item, as the response sent by the Applicant on March 23 addressed each of the matters in this item. Specifically:

    a. The capitalization tables included in the Applicant's March 23 letter show that the Applicant's 100% owner is BlockFi Inc. ("Parent"), and then discloses the owners of Parent. In the interests of supervisory cooperation, I have attached an expanded cap table for Parent provided by the Applicant that shows the percentage ownership interest in Parent of every individual and entity. I note that Applicant has redacted the names of employees and private individual

investors and advisors with interests of less than 10% to protect their privacy. Many of these interests are less than 1%, and none are over 8%.

b. The March 23 response included the Applicant's statement regarding all officers, directors and managing members of each entity in the ownership chain that owns or controls, directly or indirectly, 10% or more of the Applicant. In this regard, and pursuant to Section 22105 of the CFL, the list requirement should only apply to entities having such a 10% or more interest in an applicant, and not entities above the applicant in the chain with smaller interests.

c. As stated in the March 23 response, the Applicant listed all qualifying individuals, and SIQs and fingerprints were previously submitted by the Applicant for these individuals.

d. The limited partnership agreement for ConsenSys Fund I, L.P. was submitted with the Applicant's March 23 response.

We trust that the foregoing resolves all outstanding items, but again I would be happy to discuss any remaining questions with you and other Department representatives at your earliest convenience.

Respectfully submitted,

Chuck

**Charles Washburn**
Partner

---

**Manatt, Phelps & Phillips, LLP**
11355 W. Olympic Blvd
Los Angeles, CA 90064
**D** (310) 312-4372  **F** (310) 914-5761

cwashburn@manatt.com
manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

039

# EXHIBIT "10"

# EXHIBIT "10"

# EXHIBIT "10"

040

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                    EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

April 10, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE:   CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under
the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the
"California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.)  A reference to
the California Financing Law means the California Finance Lenders Law before October 4, 2017
and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any
additional deficiency items identified during the review process, is due on May 21, 2018.
Failure to meet this deadline will result in your pending application being ABANDONED
WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not
acceptable and will result in the application being abandoned.**

1.       Item #10b of the application did not describe any brokering activities that fall under the
         purview of the California Financing Law ("CFL"). The business plan provided indicates
         that the Applicant plans to make one-year consumer and commercial loans. I do not see a
         description in the business plan regarding any brokering activities. Your response indicated
         that you are confused and that the business plan has clearly indicated brokering activities.
         Please let me know where it indicates brokering activities. Also, a licensed CFL broker is
         only allowed to broker California commercial and/or consumer loans to CFL licensed
         lenders

         In addition, under California Financial Code Section 22009, states that, "The business of
         making consumer loans or commercial loans may include lending money and taking, in the
         name of the lender, or any other name, in whole or in part, as security for a loan, any

*1515 K Street, Suite 200*
*Sacramento, CA 95814-4052*
*(916) 445-2705*

*One Sansome Street, Suite 600*
*San Francisco, CA 94104-4428*
*(415) 972-8565*

*320 West 4th Street, Suite 750*
*Los Angeles, CA 90013-2344*
*(213) 576-7500*

*1350 Front Street, Room 2034*
*San Diego, CA 92101-3697*
*(619) 525-4233*

*45 Fremont Street, Suite 1700*
*San Francisco, CA 94105*
*(415) 263-8500*

*300 S. Spring Street, Suite 15513*
*Los Angeles, CA 90013*
*(213) 897-2085*

*7575 Metropolitan Drive, Suite 108*
*San Diego, CA 92108*
*(619) 682-7227*

**www.dbo.ca.gov ♦ 1-866-275-2677**

040

contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender...."
Under the California Financial Code, the Applicant is not allowed to hold possession of the borrower's collateral.

Your emailed dated April 10, 2018, indicated references to a different law, and not the California Financial Code. I do understand your confusion; however, we have obtained legal counsel and the laws under the California Commercial Code do not apply or trump the laws under the California Financial Code.

Therefore, the business plan and method of operation are not allowed under the CFL. The collateral must remain with the borrower: Applicant cannot hold the borrower's digital assets as collateral. Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

Please address all the issues and respond accordingly.

2.      Please indicate whether any of the receivable noted on the balance sheet are from California borrowers.

3.      Please submit an organizational chart. You have not submitted an organizational chart depicting the ownership structure of the Applicant. A table was submitted; however, please submit an organization chart as follows:

   a.   This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

   b.   Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

   c.   Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

   d.   Please submit the limited partnership agreement for ConsenSys Fund I, L.P. The agreement submitted did not indicate a date and any signatures; it was a draft and not the original agreement. The limited partnership agreement you have submitted does not appear to be the original limited partnership agreement. Please submit a copy of the limited partnership agreement that includes the signatures of the partners and limited partners and general partners, and all other signers.

Please submit an organization chart that clearly indicates the information requested above.

042

# EXHIBIT "11"

# EXHIBIT "11"

# EXHIBIT "11"

**Balian, Daniel@DBO**

| | |
|---|---|
| **From:** | Flori Marquez <flori@blockfi.com> |
| **Sent:** | Wednesday, April 11, 2018 12:41 PM |
| **To:** | Balian, Daniel@DBO |
| **Cc:** | Washburn, Charles; Stacey Batzar; Zac Prince |
| **Subject:** | Re: BlockFi Lending LLC (File Number 60DBO-81955) |
| **Attachments:** | Organizational Chart.pdf; BlockFi Capitalization Table - For California.xlsx |

Dear Mr. Balian,

Thank you for continued attention and responsiveness to our application. We appreciate your mindfulness of our deadline for application expiration on May 21, 2018. The phone call we had yesterday was extremely useful in helping us understand your outstanding questions. Please find our answers below. I have included the details as discussed in our conversation.

1. **Question 1**

Brokering Loans

BlockFi Lending LLC will engage in the business of brokering loans under the purview of the California Financing Law ("CFL").

In the event that BlockFi Lending LLC cannot work with a consumer or commercial applicant for a loan, BlockFi Lending LLC will refer the denied consumer or commercial applicant to other CFL licensed lenders. At each customer's request, BlockFi Lending LLC will refer the customer by sending their contact information and loan application request details to other CFL licensed lenders.

Updated Business Plan

Because of regulations in California Financing Law, BlockFi Lending LLC has revised its business plan. Please find its updated business plan for operations in the state of California below:

BlockFi Lending LLC will make one-year, fixed rate, consumer and commercial loans. As part of our underwriting, we will prescribe value to commercial and consumer applicants' holdings of cryptocurrencies, which they possess.

2. **Question 2**

The receivables noted on the balance sheet submitted with our previous response are not from California borrowers. Each borrower is either from New York, New Jersey or Florida. BlockFi Lending LLC has not made any loans to California consumer or commercial borrowers.

3. **Question 3**

Please find the following documents attached:

1

a.  We have revised our organizational chart to depict the ownership structure of BlockFi
Lending LLC with all percentages until the ultimate owner is reached. Please see the attached
ownership chart "BlockFi Organizational Chart.pdf"

b.  The officers and directors for each entity in the ownership chain are below. The only people
that are subject to the submission of SIQs based on these titles are Florencia Marquez, Zachary
Lee Prince and Kavita Gupta. We confirm that SIQs, fingerprints and applicable fingerprint
processing fees have been submitted for each of these individuals, as required.

Officers of BlockFi Lending LLC
Zachary Prince – President
Florencia Marquez – Vice President

Board of Directors for BlockFi Inc.
Zachary Prince
Kavita Gupta

Officers of BlockFi Inc.
Zachary Prince – CEO
Florencia Marquez – VP of Operations

There are no other directors, members, partners, managing members, general partners or trustees
for either BlockFi Lending LLC or BlockFi Inc. All officers and directors are listed here.

c.  There are three individuals that control, directly or indirectly, 10% or more of the outstanding
interests of the listed entities in the ownership chain: Florencia Marquez and Zachary Prince each
own more than 10% of BlockFi Inc. Kavita Gupta does not own any percentage of BlockFi
Lending LLC or BlockFi Inc. individually. Kavita Gupta, as an individual, serves as a member of
BlockFi Inc.'s Board of Directors.

Each of these three individuals have submitted their SIQs, fingerprints and applicable fingerprint
processing fees as required by Exhibit C of the application.

d.  As discussed over our phone call on April 10, 2018 and as illustrated in the attached
"Organizational Chart.pdf" ConsenSys Fund I, L.P. does not own 10% or more of BlockFi Inc.
Furthermore, the entity is not involved in the day-to-day operations of BlockFi Lending LLC or
BlockFi Inc. The entity also does not control directly or indirectly 10% or more of the
outstanding interests of any of the listed entities. As such, it is not under purview of BlockFi
Lending LLC's application to the CFL.

Please let me know if you have any further questions or comments. Thank you again for your time and
attention.

Best,

Flori

2

045



**Flori Marquez**
Co-Founder & VP of Operations
646.779.9688

**blockfi.com**
86 Chambers Street, Suite 205, New York, NY 10007

On Tue, Apr 10, 2018 at 4:16 PM, Flori Marquez <flori@blockfi.com> wrote:

Hi Daniel,

Thank you for getting back to us so quickly. We appreciate your careful review.

Would it be helpful for us to schedule a call? I am available now and later this week.

Best,

Flori



**Flori Marquez**
Co-Founder & VP of Operations
646.779.9688

**blockfi.com**
86 Chambers Street, Suite 205, New York, NY 10007

On Tue, Apr 10, 2018 at 3:56 PM, Balian, Daniel@DBO <daniel.balian@dbo.ca.gov> wrote:

Hello,


Please see attached.


Thank you,

Daniel Balian

213-576-7687


**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Tuesday, April 10, 2018 11:41 AM
**To:** Balian, Daniel@DBO <daniel.balian@dbo.ca.gov>
**Cc:** Flori Marquez <flori@blockfi.com>; Zac Prince <zac@blockfi.com>

046

# EXHIBIT "12"

# EXHIBIT "12"

# EXHIBIT "12"

# manatt

**Charles E. Washburn, Jr.**
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4372
E-mail: cwashburn@manatt.com

<u>CONFIDENTIAL TREATMENT REQUESTED</u>

May 14, 2018                                               Client-Matter: 63758-030

<u>VIA OVERNIGHT COURIER</u>

Jan Lynn Owen
Commissioner of Business Oversight
in care of the Legal Division
Department of Business Oversight
1515 K Street, Suite 200
Sacramento, California 95814

    Re:   <u>Request for Interpretive Opinion</u>

Dear Commissioner Owen:

<u>Request for Opinion and Legal Question Presented</u>

    This letter is a request for an interpretive opinion with respect to the specific legal question of whether a "finance lender" under the California Financing Law (the "CFL")[1] that takes a security interest in collateral to secure a loan made by the finance lender may possess such collateral. As discussed in more detail below, we believe a finance lender may do so, including in order to perfect a security interest in certain categories of collateral in accordance with the California Commercial Code or otherwise to protect the finance lender.[2]

<u>Principal Party and Relevant Facts and Circumstances</u>

    The principal party interested in this matter is our client, BlockFi Lending LLC ("BlockFi"). BlockFi has submitted an application to the Department to obtain a license as a "finance lender" under the CFL. (The file number of its application is 60DBO 81955.) As discussed in the business plan included in its application, BlockFi makes loans denominated in U.S. dollars. The loans are secured by crypto currency assets of the borrower. We understand that the crypto currency securing a loan made by BlockFi is held in its name with a third party

---

[1]    As you know, the CFL is codified at Section 22000 <u>et seq.</u> of the California Financial Code.

[2]    We note that much of the substance of this letter was included in prior e-mail communications to certain Department representatives, but these representatives advised us that a request for an interpretive opinion must be submitted in order to obtain a response to this question.

11355 West Olympic Boulevard, Los Angeles, California 90064-1614 Telephone: 310.312.4000 Fax: 310.312.4224
Albany | Chicago | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.

**manatt**

048

Jan Lynn Owen
May 14, 2018
Page 2

depository. Crypto currency of course can be spent or transferred like money, and therefore the depository arrangement protects BlockFi as a secured creditor by preventing the borrower from spending or transferring the crypto currency collateral until the loan is repaid.

BlockFi currently extends loans in other states, including holding collateral with the depository. BlockFi desires to make such loans to California residents, and so it has applied for a finance lender license under the CFL.

In a letter from Daniel Balian of the Department to Stacey Batzar dated April 10, 2018, a copy of which is enclosed, Mr. Balian quoted a portion of wording included in the definition of "finance lender" in Section 22009 of the California Financial Code discussed below and then stated that, "[u]nder the California Financial Code, the Applicant is not allowed to hold possession of the borrower's collateral." Other communications from Department representatives to BlockFi have similarly stated that a finance lender may "never hold the assets of the California borrowers it makes loans to under the CFL license," "assets/collateral [may] not be held by BlockFi or any other third party," "the collateral ha[s] to remain with the borrower" and "the CFL license does not permit you to take possession of the collateral."

It is important to note that this Department position prevents any lender that needs to obtain a license under the CFL in order to lend in California, and that because of the nature of the collateral either must or desires to hold the collateral, from doing business in California.

<u>Legal Analysis and Reasoned Conclusion</u>

Based on Mr. Balian's letter and other communications with the Department, we understand that the Department's position that a finance lender may not take possession of collateral is based on certain wording in the definition of "finance lender" in Section 22009. Section 22009 reads as follows for ease of reference, with certain key words and punctuation highlighted:

> "Finance lender" includes any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans <u>may</u> include lending money <u>and</u> taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to personal property, <u>the use and possession of which property is retained by other than the mortgagee or lender</u>, or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission. (Emphasis added.)

**manatt**

Jan Lynn Owen
May 14, 2018
Page 3

It is the intent of the Legislature that the definition of finance lender shall be interpreted to <u>include</u> a personal property broker as referenced in Section 1 of Article XV of the California Constitution.

We understand that the statements from Mr. Balian and other Department representatives quoted above are based solely on the phrase "the use and possession of which property is retained by other than the mortgagee or lender" included in the second sentence of Section 22009.  We respectfully believe this is a misinterpretation of Section 22009.

Specifically, the first sentence of the definition simply defines a finance lender as "<u>any</u> person who is engaged in the business of making consumer loans or making commercial loans." (Emphasis added.)  That is a standalone definition of a finance lender, without any limits as to how collateral is held or if collateral is even required in order to be a finance lender.

The second sentence that follows and that includes the phrase at issue begins by saying that "[t]he business of making consumer loans or commercial loans <u>may</u> include" certain activities described in that sentence (emphasis added).  The second sentence therefore is not an exclusive definition of what is the business of making consumer or commercial loans, and so that business could include taking possession of collateral, pursuant to the broad definition in the first sentence.

Also, that second sentence continues by providing that such activities may include lending money "<u>and</u>" taking collateral for the loan.  Based on that conjunction and applying the Department's reasoning to the entire sentence, it would follow that a finance lender must take security for a loan, and finance lenders may not make unsecured loans.  That of course is not the case, as Item 10.a. in the application for a license under the CFL set forth in Section 1422 of the Commissioner's regulations includes "unsecured" lending as an option for finance lenders.

In this regard, and as discussed in a message sent to Mr. Balian on April 10, the CFL as the Department is aware has its origins in the Personal Property Brokers' Act of 1909, which included language substantially similar to the second sentence in Section 22009 to define a "personal property broker."  That definition among other things prevented a personal property broker from making unsecured loans, or loans secured by real estate, which loans of course are permissible today for a "finance lender" under the CFL.  See in this regard Robert E Stone, *Small Loans in California,* 29 California Law Review 332–365 at 342-343 (1941), a copy of which excerpt is also enclosed.  Accordingly, it appears that the second sentence, including that phrase, has been retained over the years by the California Legislature only as a vestige of the 1909 law, and based on the separate first sentence and the use of the word "may" in the second sentence, a "finance lender" under the CFL is simply "any person who is engaged in the business of making consumer loans or making commercial loans," period, and a finance lender is not prohibited from

**manatt**

Jan Lynn Owen
May 14, 2018
Page 4

entering into a security agreement pursuant to which the borrower agrees that the lender may possess the collateral in order to protect the lender and in some cases perfect the security interest. See in this regard the second paragraph of Section 22009, which states that it was the Legislature's intent that the term finance lender "include" (i.e., not be limited only to) a "personal property broker."

It also is important to bear in mind that possession of collateral is expressly authorized by the California Commercial Code, and in fact is the only way that a creditor may perfect a security interest in certain collateral. Specifically, Section 9313(a) of the California Commercial Code provides that a creditor may perfect a security interest in several types of collateral, including "tangible negotiable documents, goods, instruments, money, or tangible chattel paper" by taking "possession" of the collateral (emphasis added). In fact, in the case of a security interest in "money" a creditor can only perfect its security interest in collateral by taking possession. See Section 9312(a) and (b)(3) of the California Commercial Code. Although not "money" as defined in Section 1201(b)(24) of the California Commercial Code, a crypto currency of course functions much like money in terms of a secured creditor wishing to control it to protect the creditor from the collateral being spent or transferred by the borrower. In any event, the Department's position would appear to prevent lenders from doing business in California in accordance with permitted ways of perfecting security interests under the Commercial Code, and indeed we suspect that a significant number of lenders licensed under CFL lend on the security of collateral such as money, securities and negotiable instruments and are in fact taking possession of collateral today.

We also point out that the pawnbroker license is not an alternative to a lender making loans on the security of crypto currency assets, because Section 21000 of the California Financial Code defines a "pawnbroker" as a person receiving "goods," which term would not include intangible property like crypto currency.

<u>Requests for Confidential and Expedited Treatments</u>

This letter discusses BlockFi's operations and is being submitted in the context of the Department's review of BlockFi's application for a license under the CFL, including disclosing a deficiency item raised by the Department during that review, and as indicated by the legend above we are requesting confidential treatment of this request for an interpretive opinion. A separate request for confidential treatment is enclosed. If the Department declines to provide confidential treatment of this letter, please contact the undersigned promptly.

# manatt

051

Jan Lynn Owen
May 14, 2018
Page 5

We understand that resolution of this issue is the only obstacle to approval of the application for a CFL license submitted by BlockFi.[3]  We also understand based on press reports and the Department's web site that a competitor of BlockFi that is holding crypto currency collateral has been granted a CFL license and is currently operating in California.  Accordingly, this Department's position, which for the reasons discussed above we believe is incorrect, is causing significant, daily harm to BlockFi.  We therefore respectfully request expedited review of this request for an interpretive opinion.

We also request that, if the Department reaches a preliminary conclusion in its review of this request that a finance lender may not hold collateral, the Department contact the undersigned and at our option we be permitted to withdraw this request for the interpretive opinion.

Thank you in advance for your consideration.  We would be happy to discuss with you any of the matters set forth in this letter, or provide additional information regarding BlockFi and its operations.

Respectfully submitted,

Charles E. Washburn, Jr.
Manatt, Phelps & Phillips, LLP

CEW
Enclosures

204499933.2

---

[3]      We note that the Department has established a deadline of May 21, 2018, for resolution of all outstanding issues with respect to BlockFi's application, but we also understand that the Department will not deny the application while this request for a legal opinion is pending, and we assume that a reasonable opportunity to respond to any such opinion will be provided to BlockFi by the Department.

052

# EXHIBIT "13"

# EXHIBIT "13"

# EXHIBIT "13"

Received

MAY 15 2018

Department of Business Oversight
Legal Division

Request for Confidential Treatment

May 14, 2018

Pursuant to Subsection (b) of Section 250.10 of the Commissioner's Regulations, Manatt, Phelps & Phillips, LLP ("Manatt") hereby respectfully requests that the Commissioner withhold from public inspection and otherwise accord confidential treatment to that certain application for interpretive opinion submitted by Manatt to the Department of Business Oversight of even date herewith (the "Request").

1.    _Information Subject to Request._   The Request discusses BlockFi, Inc. ("BlockFi"), 60DBO 81955, including certain matters regarding its operations as well as the status of its application for a license under the California Financing Law (the "CFL").

2.    _Provisions Under Which Request Is Made._   The request for confidential treatment of the Investor Materials is made pursuant to the following provisions of Subsection (a) of Section 250.10 of the Commissioner's Regulations:

- Paragraph (1), which applies to "[i]nformation which is of a proprietary business nature and is in fact confidential, including but not limited to trade secrets"; and
- Paragraph (2), which applies to "[i]nformation which is of a confidential business nature and which is in fact confidential, the release of which would be damaging or prejudicial to the business concerned."

3.    _Grounds For Request._   The information in the Request regarding BlockFi, including regarding its business plan and status of its application for a license under the CFL, is confidential. Disclosure of the information would reveal proprietary business information and would be damaging and prejudicial to the interests of the BlockFi. Disclosure would also reveal matters relating to a pending CFL license application before the Department.

4.    _Time Period._   Because BlockFi's business operations and the status of its CFL license application are not public, confidential treatment is requested on a continuing basis.

If the Commissioner reaches a preliminary determination to deny this request for confidential treatment, Manatt respectfully requests that the undersigned be contacted immediately.

Manatt, Phelps & Phillips, LLP

By:    _____
Charles E. Washburn, Jr.

204504212.1

054

# EXHIBIT "14"

# EXHIBIT "14"

# EXHIBIT "14"

054

055

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                    EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
Commissioner of Business Oversight



IN REPLY REFER TO:
FILE NO: OP 7612

June 7, 2018

Charles E. Washburn, Jr.
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064

Re:      Request for Confidential Treatment

Dear Mr. Washburn:

The Department of Business Oversight ("Department") has received the letter you
submitted on behalf of BlockFi Lending, LLC ("BlockFi") dated May 14, 2018, requesting
confidential treatment of your request for an interpretive opinion under the California
Financing Law, formerly the California Finance Lenders Law.

Your letter states that information supplied to the Department as part of the interpretive
opinion request, such as its business plan and the status of its license, are confidential. You
assert that disclosure of information provided by BlockFi to the Department would be
damaging and prejudicial to the interests of BlockFi. You also note that confidentiality is
necessary to protect information related to BlockFi's pending application for a CFL license.
You request confidential treatment of the request for an interpretive opinion on a
"continuing basis."

Section 250.10, subsection (a), of title 10, California Code of Regulations provides that the
Commissioner of Business Oversight will withhold from public inspection for such time as
in the Commissioner's judgment is necessary information received concerning requests for
interpretive opinions.  Based on the information provided in your correspondence and the
authority provided in Section 250.10, subsection (a)(1) and (2), the Commissioner hereby
grants your request for confidential treatment. The Department will withhold the request
for interpretive opinion dated May 14, 2018 from public inspection for two years from the
date of this letter.

If you have any questions, please contact the undersigned at (415) 263-8503.

1515 K Street, Suite 200              320 West 4th Street, Suite 750              1350 Front Street, Room 2034
Sacramento, CA  95814-4052            Los Angeles, CA  90013-2344                San Diego, CA  92101-3697

055

056

# EXHIBIT "15"

# EXHIBIT "15"

# EXHIBIT "15"

057

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                    EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

AUGUST 16, 2018

ZAHARY PRINCE
BLOCKFI LENDING LLC
86 CHAMBERS STREET, SUITE 205
NEW YORK, NEW YORK 10007

RE: IMPORTANT INFORMATION ABOUT YOUR FINANCE LENDERS LICENSE

Dear Licensee:

The filing of your application under the California Financing Law is complete and has been approved. Enclosed you will find the license issued in the above entitled matter.

As you know, one of the documents you provided when you filed your application for this license was a statement that you understood certain obligations and responsibilities as a licensee under the California Financing Law. We would like to direct your attention to these items one more time. We find that they are the ones that cause the largest number of licensees the most difficulties including the loss of their licenses.

For your reference, we have provided that information below:

1. Every licensee (broker or lender) whether or not any business has been conducted pursuant to their license, is subject at any time to an examination of their books and records. The scope of the examination may extend beyond the records pertaining to business conducted pursuant to the license. The licensee will be billed for actual cost of the examination. This includes any licensed time used to contact a licensee that cannot be reached during normal business hours at the licensed location and time used to prepare for and to conduct the examination.

Two hours is the minimum amount of time billed for any examination. Failure to pay the examination bill may subject the licensee to administrative action including the revocation of the license.

Our examiners' work day begins at 8:30 am. If it will not be possible to start an examination by arriving at the licensed location during normal business hours, the licensee should provide the Department in writing with the telephone number and current address at which the licensee can be reached during normal business hours to arrange an examination. (See Financial Code sections 22701, 22707 and 22714).

2. Licensees are required to notify the Department of any change in location at least ten (10) days prior to the move. Failure to do so may subject the licensee to a civil penalty not to exceed $500. (See Financial Code section 22153). The notification must be in writing and sent to Department of Business Oversight, Attention: CFL Licensing Unit, 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

3. Each licensee is required to file an "annual report" by March 15th of each year, even if no business has been conducted with the license. Failure to file the report will result in the summary revocation of the license. (See Financial Code

---

*1515 K Street, Suite 200*
*Sacramento, CA 95814-4052*
*(916) 445-7205*

*One Sansome Street, Suite 600*
*San Francisco, CA 94104-4428*
*(415) 972-8565*

*320 West 4th Street, Suite 750*
*Los Angeles, CA 90013-2344*
*(213) 576-7500*

*300 S. Spring Street, Suite 15513*
*Los Angeles, CA 90013*
*(213) 897-2085*

*1350 Front Street, Room 2034*
*San Diego, CA 92101-3697*
*(619) 525-4233*

*7575 Metropolitan Drive, Suite 108*
*San Diego, CA 92108*
*(619) 682-7227*

**www.dbo.ca.gov • 1-866-275-2677**

057

section 22159).    The report must be completed online on the Department of Business Oversight's website at
https://docqnet.dbo.ca.gov.  Licensees must log in to the self-service portal in order to complete the report.  Pursuant to
Financial Code section 22715, failure to file by March 15 may result in an imposed penalty not to exceed one hundred
dollars ($100) for each business day for the first five business days the report or information is overdue, and thereafter
shall not exceed five hundred dollars ($500) for each business day the report or information is overdue, not to exceed
twenty-five thousand dollars ($25,000) in the aggregate.

4. Licensees are required to maintain a net worth of at least $25,000 at all times.  Mortgage Brokers are required to
maintain a net worth of at least $50,000 at all times.  Mortgage Lenders are required to maintain a net worth of at least
$250,000 at all times.  (See Financial Code section 22104).

5. Each year every licensee is required to pay an assessment of at least $250 per licensed location. Failure to pay the
assessment will result in the loss of the license.  The assessment is due and payable when billed.  (See Financial Code
section 22107).  By law, assessment notices must be mailed by the 30th of September.  If you do not receive a notice by
the end of the first week in October, contact the Department's accounting office in Sacramento at (916) 323-7383.

6. Every finance company shall maintain a surety bond in accordance with Financial Code section 22112.

The surety bond amount for those applicants who engage in consumer lending or brokering (where the collateral is other
than real estate) and commercial lending and brokering is $25,000.  For those applicants who engage in consumer real
estate lending or brokering the bond amount varies between $25,000 and $200,000 depending on the aggregate amount of
residential mortgage loans originated and or brokered in the preceding year.

A mortgage lender, mortgage broker, or mortgage and broker applicant without a prior year operating history shall make a
good faith estimate of the aggregate amount of loans anticipated to be originated in the upcoming year to determine the
amount of the surety bond.

Questions regarding the use of your license can be directed to a CFL licensing specialist in the Los Angeles Office at 213-
576-7690.


Jan Lynn Owen
Commissioner
Department of Business Oversight

By_____
DEBBIE STOPECK
Licensing Supervisor
(213) 576-7690

ENCLOSURE (1)

THIS LICENSE MUST BE CONSPICUOUSLY POSTED AT LOCATION HEREIN PROVIDED.

## *Department of Business Oversight*

### *State of California*

# *License*

### FINANCE LENDER AND BROKER

File No: 60DBO 81955

BLOCKFI LENDING LLC


PURSUANT TO, AND IN COMPLIANCE WITH, THE CALIFORNIA FINANCING LAW:

I, THE UNDERSIGNED, AS COMMISSIONER OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, DO HEREBY ISSUE THIS LICENSE TO THE ABOVE NAMED LIMITED LIABILITY COMPANY.

ORGANIZED JANUARY 11, 2018, IN THE STATE OF DELAWARE TO ENGAGE IN THE BUSINESS OF "FINANCE LENDER" AND "BROKER" AS DEFINED IN SAID LAW, AT THE FOLLOWING LOCATION:

86 CHAMBERS STREET, SUITE 205
NEW YORK, NEW YORK 10007

TO CONTINUE IN EFFECT UNTIL SURRENDERED, SUSPENDED, OR REVOKED AS PROVIDED BY LAW.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL ON THE DATE APPEARING BELOW.

Date:    August 16, 2018



JAN LYNN OWEN

Commissioner of Business Oversight

By _____

CHARLES AGBONKPOLOR
Special Administrator
California Financing Law

THIS LICENSE IS NOT TRANSFERABLE OR ASSIGNABLE

060

# EXHIBIT "16"

# EXHIBIT "16"

# EXHIBIT "16"

M Gmail

061
George Gerro <george@gerrolaw.com>

## Consumer Complaint

3 messages

**George Gerro** <george@gerrolaw.com>                                              Tue, Jul 7, 2020 at 11:10 PM
To: Manuel.Alvarez@dbo.ca.gov
Cc: John Gerro <john@gerrolaw.com>

Hello Commissioner Alvarez:

I am a self-represented consumer plaintiff, currently engaged in litigation with a licensee who
is attempting to enforce a Delaware forum selection clause to evade the consumer protections
contained in California's Financial Code.

The licensee, Blockfi Lending LLC, (license no. 60DBO-81955) takes possession of its
borrower's collateral, leases the collateral to third parties, and keeps all of the profits. In
March, they purportedly sold all my bitcoin in a dishonest manner.

Concerningly, *the licensee is representing to Judge William Stewart of the Los Angeles
Superior Court* (Case No. 20BBCV00308) *that the Department of Business Oversight has
"expressly" deemed that it is not a pawnbroker.*   Alarmingly, the licensee is asking the judge
to defer to this interpretation.

The licensee requested an interpretive opinion on May 14, 2018.  We would like to see that
request and the internal deliberations of the Department, but an attorney from the Department,
Ms. Miranda LeKander ( Miranda.LeKander@dbo.ca.gov ), has refused my public records
request (even though the Department's grant of confidentiality for the request for interpretive
opinion has already expired).

Bitcoin is a volatile bearer asset.  The licensee should not be taking possession of its
borrowers' collateral.

If you are interested in more details please call me and I will give you a personal update on
the litigation, or at your request I will provide my Opposition to the licensee's Request to
Dismiss.

I appreciate your time,

**George J. Gerro**
Attorney at Law
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
(818) 840-0000
Available via phone 4:00pm to 6:00pm

George@GerroLaw.com

CONFIDENTIAL: Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or
provisions of law.

M Gmail

George Gerro <georgejgerro@gmail.com>

## Automatic reply: Consumer Complaint
1 message

**Alvarez, Manuel@DBO** <Manuel.Alvarez@dbo.ca.gov>                    Tue, Jul 7, 2020 at 11:11 PM
To: George Gerro <george@gerrolaw.com>

I will be out of pocket with limited access to email through July 7. If this is an emergency, please contact Chief Deputy, Chris Shultz. Otherwise I will respond when possible.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

063

M **Gmail**

George Gerro <george@gerrolaw.com>

## Re: Gerro v. Blockfi Lending LLC et al., Los Angeles Superior Court, Case no. 20STCV31493

4 messages

**George Gerro** <george@gerrolaw.com>                                      Thu, Mar 25, 2021 at 9:11 AM
To: Manuel.Alvarez@dbo.ca.gov, "Ladine, Bret@DBO" <Bret.Ladine@dbo.ca.gov>, John Gerro <john@gerrolaw.com>

Dear Commissioner Alvarez and General Counsel Ladine,

Attached to this email is a Declaration from former Commissioner Jan Lynn Owen, filed with the Los Angeles Superior Court this Tuesday.

Owen's declaration states that the Department permits Finance Lenders to possess and use collateral securing their loans. (¶¶ 5-6). Then, the declaration says that "licensees may reasonably conclude that holding collateral is appropriate." (*Id.* at ¶ 7). The Declaration claims that a finance lender may retain use and possession of collateral, insinuating that the Declaration constitutes the Department's express policy. (*Contra* Fin. Code § 22009; *see* Civ. Code § 1667(2).)

Also attached to this email is a Declaration of Charles Washburn Jr., the attorney for Blockfi Lending LLC (60DBO-81955), who submitted a confidential request for interpretive opinion no. OP_7612.

The Department never issued an interpretive opinion in response to OP_7612. Nevertheless, Washburn declares that "DBO legal staff agreed that a licensee may hold collateral" (¶ 10). Washburn declares that "the DBO's agreement with BlockFi's position on CFL Section 22009 and its ability to hold cryptocurrency as collateral for loans would simply be evidenced by the granting of BlockFi's licenses." (¶ 9). Washburn's Declaration attempts to fabricate an interpretive opinion, even though no opinion was ever issued.

Please provide me with a declaration stating that: (1) neither Washburn nor Owen are speaking on behalf of the Department; (2) the Declarations do not contain or constitute official interpretations of your Department; and (3) the Department does not expressly permit finance lenders to retain use and possession of collateral.

Note, the Department has previously forbidden Blockfi from taking use or possession of bitcoin collateral. (See Exs. 1-3, 5-6 of the brief attached hereto). Feel free to call me for any additional details, documents, or legal analysis. I look forward to hearing from you.

**George J. Gerro**
Attorney at Law
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
(818) 840-0000
George@GerroLaw.com

CONFIDENTIAL: Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law.
064

On Wed, Oct 28, 2020 at 6:37 PM George Gerro <george@gerrolaw.com> wrote:

Dear Commissioner Alvarez and General Counsel Ladine,

I write to request your assistance against Finance Lender license no. **60DBO-81955** (Blockfi Lending LLC, a Delaware LLC).

The Licensee routinely receives possession of bitcoin to secure its loans to California consumers. In my capacity as a consumer, I pledged 448.15 bitcoins to the licensee to secure a $2.275M loan from the licensee. On March 12, 2020, the licensee summarily foreclosed upon my collateral, attempted to extort more collateral from me, and breached its contract with me to redeem the collateral.

How many California consumers were foreclosed upon by the Licensee on March 12th? I don't know. Since the Licensee considers a declining price of bitcoin to be a default event, it forecloses without oversight, upon bitcoin already in the Licensee's possession. Although Bitcoin is now over $13,000 each, the March 12th foreclosures occurred at $5,000 per Bitcoin.

**Before, during and after the licensee's purported foreclosure, the licensee demanded that I send them hundreds of thousands of dollars or hundreds of bitcoin to prevent and "reverse" the foreclosure.** Why would the licensee offer to "reverse" the foreclosure sales upon my pledging of additional collateral unless the sales never occurred? Despite my repeated requests, the licensee has never presented me with any proof that they actually sold my bitcoin to a third-party. **In response to my discovery request for production of documents in *Gerro I*, the licensee produced nothing.**

I demanded arbitration but the licensee refused, so I sued it in the Los Angeles Superior Court. The case was stayed on the grounds of *forum non conveniens*, due to the licensee's motion to enforce its mandatory Delaware forum selection clause. (*Gerro v. Blockfi Lending LLC, et al.*, Los Angeles Superior Court Case No. 20BBCV00308 (*pending appeal* **California Court of Appeal, Second District, Case No. B307156** (hereinafter "*Gerro I*").

On appeal, I will argue that *Gerro I* must remain in California to protect my unwaivable and fundamental California rights. (*See generally Brack v. Omni Loan* (2008) 164 Cal.App.4th 1312, 1316 (CFL is fundamental and unwaivable) *and Verdugo v. Alliantgroup LP* (2015) 237 Cal.App.4th 141). Since a Delaware court must apply Delaware law (*see* 6 Del.C. § 2708 and *Fdg v. A&R* (2016) 131A.3d 842, 854), my unwaivable California rights will be diminished in Delaware . **If the licensee prevails on appeal in *Gerro I*, then the**

**Licensee will have successfully required and permitted me to waive the California Financing Law in violation of the Commissioner's regulation, 10 C.C.R. § 1408.**

**The statutory construction of California Financial Code § 22009 compels the conclusion that finance lenders are not allowed to possess collateral.** On May 15, 2018,

the licensee confidentially requested an arbitrary interpretive opinion from the Commissioner **(OP 7612)**. In its request, the licensee requested permission to take possession of its borrowers' collateral, or permission to withdraw its request to avoid an adverse opinion. **Subsequently, the licensee withdrew its request, implying that the Department was prepared to rule against them in 2018.**

**Although profits derived from the collateral belongs to the borrower under Cal. Com. Code § 9207(c)(1-2),** the Licensee has routinely leased its borrower's bitcoin to third-parties for its own profit. **The licensee never accounts to its borrowers for this implicit interest expense.**

While the appeal in *Gerro I* is pending, we initiated related litigation of *Gerro v. Blockfi Lending LLC, et al.*, Los Angeles Superior Court, Case no. 20STCV31493 (hereinafter "*Gerro II*"). *Gerro I* and *Gerro II* invoke different primary rights. In *Gerro II*, we are requesting a "public injunction" against the licensee under Bus. & Prof. Code § 17204, within the meaning of (*McGill v. CitiBank* (2018) 2 Cal.5th 945). In response, **the Licensee is requesting sanctions of nearly $30,000 against me** (the motion for sanction is yet to be filed with the court, due to Cal. Civ. Proc. 128.7(c)(1)).

**I request that you submit an *amicus curiae* brief in *Gerro I*, or to intervene as a plaintiff in *Gerro II*.** (*See* Fin. Code § 320(b)). You can also help me by providing more documentation under the CA Public Records Act, or examining the licensee's books and records.

At your convenience, please call me and my Father, John M. Gerro, Esq., at (818) 840-0000 to discuss the above matter. The assistance of the Department will protect me and all California borrowers.

Attachments:
*Gerro I* First Amended Complaint (20BBCV00308)
*Gerro I* Appealed Order (B307156)
*Gerro II* First Amended Complaint (20STCV31493)
Licensee's Confidential Interpretive Opinion Request (OP 7612)

**George J. Gerro**
Attorney at Law
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
(818) 840-0000
George@GerroLaw.com

CONFIDENTIAL: Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law.

On Tue, Jul 7, 2020 at 11:10 PM George Gerro <george@gerrolaw.com> wrote:
Hello Commissioner Alvarez:

I am a self-represented consumer plaintiff, currently engaged in litigation with a licensee who is attempting to enforce a Delaware forum selection clause to evade the consumer

protections contained in California's Financial Code.

The licensee, Blockfi Lending LLC, (license no. 60DBO-81955) takes possession of its borrower's collateral, leases the collateral to third parties, and keeps all of the profits. In March, they purportedly sold all my bitcoin in a dishonest manner.

Concerningly, *the licensee is representing to Judge William Stewart of the Los Angeles Superior Court* (Case No. 20BBCV00308) *that the Department of Business Oversight has "expressly" deemed that it is not a pawnbroker.* Alarmingly, the licensee is asking the judge to defer to this interpretation.

The licensee requested an interpretive opinion on May 14, 2018. We would like to see that request and the internal deliberations of the Department, but an attorney from the Department, Ms. Miranda LeKander ( **Miranda.LeKander@dbo.ca.gov** ), has refused my public records request (even though the Department's grant of confidentiality for the request for interpretive opinion has already expired).

Bitcoin is a volatile bearer asset. The licensee should not be taking possession of its borrowers' collateral.

If you are interested in more details please call me and I will give you a personal update on the litigation, or at your request I will provide my Opposition to the licensee's Request to Dismiss.

I appreciate your time,

**George J. Gerro**
Attorney at Law
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
(818) 840-0000
Available via phone 4:00pm to 6:00pm
George@GerroLaw.com

CONFIDENTIAL: Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law.

---

**3 attachments**

📄 **Gerro Supplemental Brief, 20STCV31493.pdf**
6625K

📄 **Jan Lynn Owen Declaration.pdf**
499K

📄 **Charles E. Washburn Jr. Delcaration.pdf**
1825K

---

**George Gerro** <george@gerrolaw.com>                                  Wed, Mar 31, 2021 at 12:23 PM
To: Manuel.Alvarez@dbo.ca.gov

Dear Commissioner Alvarez,

Please let me know when I can call you to discuss. Thank you

**George J. Gerro**
Attorney at Law
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
(818) 840-0000
George@GerroLaw.com

067

CONFIDENTIAL: Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law.

[Quoted text hidden]

**3 attachments**

  📄 **Gerro Supplemental Brief, 20STCV31493.pdf**
    6625K

  📄 **Jan Lynn Owen Declaration.pdf**
    499K

  📄 **Charles E. Washburn Jr. Delcaration.pdf**
    1825K

---

**Ladine, Bret@DFPI** <Bret.Ladine@dfpi.ca.gov>                Thu, Apr 1, 2021 at 8:03 AM
To: George Gerro <george@gerrolaw.com>
Cc: John Gerro <john@gerrolaw.com>

George,

I appreciate your situation here, but the Department will not be weighing in with a declaration.


-Bret

[Quoted text hidden]

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**George Gerro** <george@gerrolaw.com>                Fri, Apr 2, 2021 at 9:37 AM
To: Manuel.Alvarez@dbo.ca.gov
Bcc: John Gerro <john@gerrolaw.com>

Dear Commissioner Alvarez,

I understand that you may not have enough time to speak with me. I want you to know that my offer to speak is an open offer and you can call me directly at any time.

I am a California consumer that was economically devastated by the unlawful activities of an out-of-state lender, Blockfi Lending LLC. It appears that your predecessors knew about Blockfi's plans to use and possess collateral, but chose to look the other way. (See OP_7612). For the time being, you can still remedy the wrongs of your predecessors. For example, during the litigation of *Brack v. Omni Loan Co., Ltd.* (2008) 164 Cal.App.4th 1312,

1320, the Commissioner of your Department relied upon the Department's prior letter that was relied upon by the defendant to justify unlicensed lending in that case.

You have many statutory options and I am willing to discuss those options with you at any time.  I believe it is your duty to stand up against the unlawful business practices of Blockfi before more California consumers are hurt.  Please let me know if there is anything I can do for you or the Department.

**George J. Gerro**
Attorney at Law
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
(818) 840-0000
George@GerroLaw.com

CONFIDENTIAL: Emails and attachments received from us may be protected by the attorney-client privilege, as attorney work-product or based on other privileges or provisions of law.

[Quoted text hidden]

069

# EXHIBIT "17"

# EXHIBIT "17"

# EXHIBIT "17"

069

STATE OF CALIFORNIA - DEPARTMENT OF BUSINESS OVERSIGHT
**CONSUMER COMPLAINT FORM**
DBO-801  (Rev. 1-20)



*Thank you for taking time to submit a consumer complaint to the Department of Business Oversight. By informing us of potentially improper or illegal activity in the financial services marketplace, your input helps us protect you and other Californians.*

1.   **Your Information** (type or print clearly):
     *(We collect the following information so that we can contact you for follow up information and to determine who else may be affected by the issue raised in your complaint.)*

George J. Gerro
_____
Full Name (First, MI, Last)

530 S. Glenoaks Blvd. Suite 200, Burbank, CA 91502
_____
Address (Street, City, State and Zip Code)


_____
Property Address (Street, City, State and Zip Code)

(818) 840-0000                          George@GerroLaw.com
_____
Daytime Phone Number              E-Mail Address

What is the best way to contact you?   ☐Phone      ☐Mail      ☑E-mail
Your age (optional):   ☐Under 21   ☐21 - 30   ☐31 - 40   ☐41 - 50   ☐51 - 55   ☐Over 55
Are you currently in the United States Military?   ☐Yes  (Branch:_____).   ☑No

2.   **Information on the individual or organization about which you have a complaint:**

Blockfi Lending LLC, a Delaware Limited Liability Company
_____
Full Name of Financial Institution, Business, Company, Firm, or Person


_____
Business Address (include Room #, Suite #, or Apt. #), City, State, Zip Code

_____
Business Phone              Full Name of Salesperson, Agent or Other Representative (if applicable)

3.   **Have you contacted the financial institution, business, firm or individual(s) regarding your complaint?**
     ☐Yes  ☑No
     If **yes**, include names, dates and results of your contact(s) in #4 below. Attach **copies** of all related documents.

4.   **Describe your complaint.** Please clearly describe the events in the order in which they occurred. Include full names, addresses, a description of the problem with the amount(s), date(s) of any transaction(s) and the contact information of any witnesses to the transactions, and any other relevant information that may assist us in resolving your complaint. Finally, please state if you have filed a lawsuit or arbitration for this complaint. For your protection, DO NOT INCLUDE PERSONAL CONFIDENTIAL INFORMATION SUCH AS YOUR SOCIAL SECURITY NUMBER. **Include extra pages as necessary.**

Licensee No. 60DBO 81955 required that I transfer possession and use of my collateral to them, pre-default, in violation of California Financial Code Section 22009, which provides for "use and possession of which property is retained by other than the... lender."

5.   **What do you believe would be a fair resolution to this matter?**
Revocation of the License

*In submitting this complaint, you agree the information provided is true and correct to the best of your knowledge and that the information may be used by the Department for its investigation. Consumer complaints are considered to have been received by the Department in confidence. However, the Department may, at its sole discretion, disclose your complaint to the person or entity for the purpose of corrective action. The Department may also choose to disclose your complaint to others for the purpose of facilitating an investigation of the person or entity complained against or initiating legal proceedings against the same under the Department's investigation.*

071

# EXHIBIT "18"

# EXHIBIT "18"

# EXHIBIT "18"

071

**BlockFi Loan No.** _____

## LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (this "**Agreement**") is made on _____, by and between

_____,

_____,

_____

("**Borrower**") and **BlockFi Lending LLC**, with its principal place of business located at **150 Broadway, 19ᵗʰ Floor, New York, NY 10038** ("**Lender**").

   1.  **The Loan.** Upon the terms and subject to the conditions set forth in this Agreement, Lender agrees to make a single loan to Borrower in the principal;

dollars ($_____) (the "**Loan**") on the date all of the terms and conditions to making such Loan have been satisfied in Lender's sole discretion (the "**Closing Date**"). Upon disbursement of the Loan proceeds, Lender shall collect an origination fee equal to _____% of the principal sum of the Loan (the "**Loan Origination Fee**"), which is fully earned by Lender on the date it is collected. Lender shall deduct the Loan Origination Fee from the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. This is a closed-end loan. Amounts repaid in respect of the Loan may not be reborrowed. The indebtedness of Borrower to Lender on account of the Loan ("**Indebtedness**") includes the Loan, the Loan Origination Fee, advances, debts, expense reimbursement, fees, liabilities, and obligations (whether or not such amounts are then required or contingent, or are liquidated or determinable) at any time owing by Borrower to Lender, of any kind or nature, present or future, whether or not evidenced by any note, agreement or other instrument including, without limitation, all principal, interest (including interest accruing at the then applicable rate provided herein after the Maturity Date (as defined below) and interest accruing at the then applicable rate provided herein after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, whether or not a claim for post-filing or post-petition  interest is allowed in such proceeding), fees, charges, expenses, attorneys' fees and any other sum chargeable to Borrower under any of the Related Documents (as defined below) to the extent permitted by applicable law. Capitalized terms not otherwise defined in this Agreement shall have the meanings provided by the Uniform Commercial Code as in effect in the State of Delaware ("**UCC**") to the extent such terms are defined therein.

   2.  **Related Documents**. This Agreement and such other agreements, certificates, instruments, guaranties, authorizations or other documents executed to further, permit, effect or promote any purpose set forth in this Agreement, as such may be amended, restated, supplemented or otherwise modified from time to time (collectively with this Agreement, the "**Related Documents**"), including, without limitation, any UCC-1 financing statements naming Borrower as debtor and Lender as the secured party (the "**UCC-1 Financing Statement**"), and any other security agreement relating to the Collateral, memorialize the terms and conditions pursuant to which Lender is willing to provide the Loan. Borrower understands and agrees that this Agreement and the other Related Documents shall apply to the Loan and the Indebtedness, including, without limitation, the granting, renewing or extending of the Loan as provided herein.

   3.  **Repayment Terms**. Borrower agrees to repay the Loan in installments as set forth below, provided that any principal balance and any unpaid accrued interest thereon shall be due and payable not later than _____ (the "**Maturity Date**"). All payments of principal and interest and other sums due hereunder shall be made in immediately available funds to the Lender at such account or place as the Lender may specify for such purpose by written notice to Borrower from time to time. Borrower agrees that Lender's internal records shall,

073

BlockFi Loan No. _____

absent manifest error, serve for all purposes as conclusive evidence of the outstanding principal balance of loans, as well as the amount of interest, fees and charges that may be owed to Lender at any time.  Lender may apply Borrower's payments in any manner permitted by applicable law, but generally shall apply payments first to interest then due, then to any outstanding fees, charges or other expenses, and then to principal.

      (a)    **Interest.**  The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be _____%.  All interest accrued hereunder shall be calculated on a simple interest basis.  Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each.  If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable with such interest upon demand by Lender and absent such demand, as otherwise provided herein.[1]

      (b)    **Interest Only Payments**. Until the Maturity Date, Borrower agrees to make payments of interest accrued on the outstanding principal balance of the Loan. The first payment will be due one month after the date of this agreement and every month thereafter (for example, if the agreement is signed on January 5th, the first payment will be due on February 5th, and subsequent payments will be due on the 5th of each month). Borrower's first payment may be higher depending on the actual funding date of the loan, and the amount of interest payable may vary in certain instances such as a payment due date change.[2]

      (c)    **Final Maturity Date Payment**. Borrower agrees to pay the entire principal amount (which is inclusive of the Loan Origination Fee) and all accrued and unpaid interest at the rate expressed herein on the Maturity Date, unless earlier accelerated pursuant to the terms and conditions of this Agreement, or the other Related Documents.

      (d)    **Prepayments**. Borrower may prepay the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.[3]

      (e)    **Late Payments**. To the extent permitted under applicable law, Borrower agrees that if any payment pursuant to Section 3(b) or Section 3(c) is not made within ten (10) days of the due date, (i) Borrower will be charged a late charge of fifteen dollars ($15.00) or five percent 5.00% of the amount of the past due payment, whichever is greater; and (ii) Lender may liquidate a portion of the Collateral in an amount equal to any late payment and corresponding late charge.

    4.    **Conditions to Lender's Obligations**.  Lender's obligation to advance funds under this Agreement shall be subject to the satisfaction of all of the conditions set forth in this Agreement and the Related Documents, including, without limitation, the following specific conditions precedent:

      (a)    **Related Documents.** Borrower shall electronically execute all Related Documents, in form and substance acceptable to Lender.

---

[1] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your interest rate definition.

[2] Unless you are a resident of the state of Illinois, in which case, payments will be fully-amortizing. Please see, "Appendix B: Loan Disclosures," at the end of this agreement for more details. If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please disregard this section.

[3] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your Prepayments definition.

073

(b)    **Representations and Warranties.** The representations and warranties set forth in this Agreement and the other Related Documents are true and correct in all material respects; provided, however, that those representations and warranties expressly referring to another specific date shall be true and correct in all material respects as of such date.

(c)    **No Event of Default.** There shall not exist at the time of the advance, and after giving effect thereto, a condition which would constitute an Event of Default under this Agreement.

**Collateral.** Borrower shall have transferred the Collateral into Lender's digital asset depository account at Gemini Trust Company, LLC ("**Gemini**" or the "**Depository**"), deposit address _____

_____

(such account or any other account at the Depository to which Lender may transfer the Collateral, the "**Depository Account**"). Lender may change the location of the Depository Account without notice to Borrower. Borrower agrees that Lender may, for its own account, pledge and repledge from time to time, without notice to the Borrower, either separately or in common with other such cryptocurrency, any or all of the Collateral and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral. The parties agree that the holding of cryptocurrencies through the Depository constitutes the use of reasonable care with respect to the custody and preservation of the Collateral.

(d)    **Priority.** Lender shall have actual possession of, and a first priority security interest in, the Collateral.

Notwithstanding the above, Borrower's failure to meet any of the conditions set forth in this Section 4 shall not provide any basis for Borrower to contest the enforceability of the Loan.

5.    **Grant of Security Interest in Collateral**.  For valuable consideration, the adequacy and receipt of which is hereby acknowledged, Borrower hereby:

(a)    pledges, assigns, transfers and delivers to Lender, and grants to Lender a continuing and unconditional first priority security interest in all of Borrower's present and future rights, title and interest in the following (collectively referred to as the "**Collateral**") as security for the payment and performance of the Indebtedness:

(i)    the Depository Account;

(ii)    all cryptocurrency now or in the future held in, on deposit in or otherwise allocated to the Depository Account (including, without limitation, any cryptocurrency transferred to the Depository Account after the date hereof by the Borrower pursuant to Section 7 or otherwise);

(iii)    any other cryptocurrency now or in the future issued with respect to any of the foregoing cryptocurrency as a result of a fork or other event that results in the holders of cryptocurrency receiving additional or replacement cryptocurrency (whether or not such other cryptocurrency is held in, on deposit in or otherwise allocated to the Depository Account);

(iv)    _____;

(v)    all rights to receive delivery of or withdraw any of the foregoing cryptocurrency from the Depository and all rights against the Depository with respect to the Depository Account, any of the

075

**BlockFi Loan No.** _____

foregoing cryptocurrency, and the proceeds thereof; and

(vi)    all proceeds of the foregoing.

(b)    agrees that such security interest granted by Borrower to Lender constitutes a valid, first priority security interest in the Collateral, and will constitute a valid, first priority security interest in later-acquired Collateral.  Notwithstanding any termination of this Agreement, Lender's security interest in the Collateral shall remain in effect for so long as any Indebtedness remains outstanding under this Agreement or any of the Related Documents.

(c)    agrees that Lender has the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

(d)    authorizes Lender at any time and from time to time, at Borrower's expense, to file in any jurisdiction any financing statements and amendments that: (i) name the Collateral as collateral thereunder, regardless of whether any particular Collateral falls within the scope of the UCC; (ii) contain any other information required by the UCC for sufficiency or filing office acceptance, including organization identification numbers; and (iii) contain such language as Lender determines helpful in protecting or preserving rights against third parties. Borrower ratifies any such filings made prior to the date hereof.

(e)    acknowledges and agrees that the obligations of Borrower under this Agreement shall be full recourse obligations of Borrower and that Borrower is and shall remain personally liable to Lender for the payment in full of all Indebtedness and performance of all obligations hereunder.

6.    **Borrower's Representations, Warranties and Covenants**. To induce Lender to enter into this Agreement and to make the Loan, Borrower hereby makes the following representations, warranties and covenants to Lender:

(a)    With respect to the Collateral, Borrower will, at all times, maintain a loan to value ratio where the outstanding principal balance of the Loan is less than or equal to seventy percent (70.0%) of the market value of the Collateral in the Depository Account calculated as either (i) the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (ii) the market value determined by Lender in its reasonable discretion (the "**Required Loan to Value Ratio**").

(b)    Except for the security interest in the Collateral granted by Borrower to Lender under this Agreement, Borrower is the sole, legal and equitable owner of the Collateral and no other security agreement, financing statement, or other security instrument covering the Collateral exists.

(c)    Borrower has rights in or the power to transfer the Collateral, and its title to the Collateral is free and clear of liens, adverse claims, and restrictions on transfer or pledge, other than those created by this Agreement or the Related Documents.

(d)    There are no actions, suits, litigation or proceedings, at law or in equity, pending by or against Borrower before any court, administrative agency, or arbitrator.

(e)    Borrower is, and at all times prior to the Maturity Date will be, in compliance with all applicable federal and state laws, regulations and ordinances.

(f)    Borrower will not sell, dispose or otherwise transfer the Collateral or any interest in the

076

**BlockFi Loan No.** _____

Collateral without the prior written consent from Lender.

(g)     Borrower will not create or allow any other security interest or lien on the Collateral, other than those created by this Agreement or the Related Documents.

(h)     Upon Lender's request, Borrower will execute any financing statement or other document necessary to perfect or otherwise record Lender's security interest in the Collateral.

(i)     Borrower will notify Lender in writing prior to making any change in Borrower's: (i) residence, if such Borrower is an individual or sole proprietorship, (ii) principal place of business, if such Borrower is a business entity that is created without any state filings, or (iii) state of organization, if such Borrower is a business entity that is created by state filings.

(j)     Borrower will promptly pay all taxes and assessments due on the Collateral.

(k)     Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock, and no proceeds of the Loan will be used to extend credit to others for the purpose of purchasing or carrying any margin stock.

(l)     Borrower is not, and is not required to be, registered as an "investment company" under the Investment Company Act of 1940, as amended. Borrower is not subject to regulation under any law that limits the ability to incur debt or which may otherwise render all or any portion of the obligations hereunder unenforceable.

(m)     Neither Borrower nor any of its affiliates or officers, directors, brokers or agents of Borrower or its affiliates (i) has violated any anti-terrorism laws, (ii) has engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering, (iii) is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("**OFAC**") or resides, is organized or chartered, or has a place of business in a country or territory subject to OFAC sanctions or embargo programs, (iv) is publicly identified as prohibited from doing business with the United States under the International Emergency Economic Powers Act, the Trading With the Enemy Act, or any other law, (v) conducts any business or engages in making or receiving any contribution of goods, services or money to or for the benefit of any person described in clauses (iii) or (iv) above, (vi) deals in, or otherwise engages in any transaction related to, any property or interests in property blocked pursuant to any anti-terrorism law or (vii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any anti-terrorism law.

(n)     Borrower will use the proceeds of the Loan solely for lawful purposes and all representations and warranties set forth in Borrower's credit application are true, correct and complete as of the date of such credit application and the date of this Agreement.

Each representation, warranty and covenant shall be made by Borrower as of the date of this Agreement and as of the date of any renewal, extension or modification of the Loan.

7.     **Valuation; Additional Collateral**. At any time, the market value of the Collateral in the Depository Account shall be either (a) the product of amount of Collateral times the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (b) the market value determined by Lender in its reasonable discretion (the "**Collateral Market Value**"). Borrower agrees that for purposes of

calculating the Collateral Market Value Lender may take into account or disregard, at its sole discretion, the value of any new cryptocurrency held in the Depository Account created as the result of a forking or similar event that occurs after the date of this Agreement.

(a)    Upon notice by Lender to Borrower of the occurrence of a Trigger Event (hereinafter defined), Borrower shall promptly, and in no case later than seventy-two (72) hours after notice is provided, deposit additional Collateral into the Depository Account in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than fifty percent (50.0%) of the Collateral Market Value, provided that if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty percent (80.0%) of the Collateral Market Value (the "**Accelerated Maximum Loan to Value Ratio**"), Lender has the right to immediately liquidate Collateral in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than seventy percent (70.0%) of the Collateral Market Value.  Any Collateral liquidated by Lender is subject to a 3% processing fee.  Any additional Collateral posted by Borrower pursuant to this Section 7 must be based in the same kind of cryptocurrency as the original Collateral.

For purposes of this Section 7, (i) a "**Trigger Event**" means an event where Lender becomes aware that Borrower has failed to maintain the Required Loan to Value Ratio and the outstanding principal balance of the Loan is greater than seventy percent (70.0%) of the Collateral Market Value (the "**Maximum Loan to Value Ratio**"), and (ii) "**notice is provided**" at the earliest of (x) the time Lender transmits an electronic communication to the Borrower of such Trigger Event, (y) the following day if sent by UPS, FedEx or other express mail overnight delivery, or (z) four (4) days from the date posted if sent by U.S. Mail, all in accordance with the Notices provisions of Section 25 hereof.

8.    **Default**.  Borrower shall be in default under this Agreement upon the occurrence of, and continuation of any of the following events, after giving effect to any applicable cure period (each, an "**Event of Default**"):

(a)    Borrower's failure to timely pay any payment when due, including any payments owed pursuant to Section 3(b) and Section 7(a);

(b)    A Trigger Event occurs and is continuing and Borrower fails to deposit additional Collateral as required pursuant to Section 7;

(c)    The Accelerated Maximum Loan to Value Ratio is then in effect and has not been cured pursuant to Section 7;

(d)    If Borrower is an entity, the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any levy, garnishment, attachment or similar proceeding is instituted against any property of Borrower held by Lender;

(e)    Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any Collateral securing the Loan. However, the Event of Default specified in this Section 8(e) shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined

**BlockFi Loan No.** _____

by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute;

(f)    If Borrower is an individual, Borrower dies or becomes incompetent;

(g)    Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, any Related Document or any other agreement between Borrower and Lender;

(h)    Any warranty, representation or statement made or furnished to Lender by Borrower, or on Borrower's behalf, under this Agreement or any Related Document is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter;

(i)    A material adverse change occurs in the financial condition of Borrower, or the ability of Borrower to repay the Loan or perform under this Agreement or any other Related Document is impaired;

(j)    A change or material development in applicable law (including case law) or regulation makes the Loan unlawful, unless grandfathered; or

(k)    A general suspension in buying, selling or owning Bitcoin or Ethereum by U.S. federal governmental authorities or a suspension in buying, selling or owning digital assets or cryptocurrencies on at least three (3) major exchanges (including Gemini, GDAX / Coinbase, Kraken, or Bitstamp), with such disruption lasting at least five (5) days.

Borrower agrees to promptly notify Lender in writing upon the occurrence of any of the events described in this Section 8, in no case later than two (2) business days after the occurrence of such event.

9.    **Remedies**.

(a)    Upon an Event of Default and at any time thereafter, Lender may declare all amounts due under this Agreement immediately due and payable and shall have all the rights and remedies of a Lender under the UCC or as otherwise provided under applicable law. Without limiting the generality of the foregoing, Borrower expressly agrees that in any such default Lender may take immediate and exclusive possession of the Collateral and that Lender may liquidate the Collateral in whole or in part, at its sole discretion.

(b)    The proceeds of any sale or disposition of any part of the Collateral shall be distributed by Lender in the following order of priorities:

(i)    to Lender for any reasonable costs, fees, or expenses incurred in connection with the sale or disposition of the Collateral, including any legal, accounting or other fees incurred;

(ii)    to Lender in an amount equal to any outstanding and unpaid Indebtedness under this Agreement and the Related Documents; and

(iii)    any remaining surplus to Borrower, in accordance with the UCC or as a court of competent jurisdiction may direct.

10.    **Arbitration Provision.** If this contract is made to a business domiciled in the U.S. or Canada, please see Appendix A for the applicable Arbitration Provision.

**BlockFi Loan No.** _____

11.     **Payment Failure.** Borrower agrees that Lender may assess a fee (a "**Payment Failure Fee**") of fifteen dollars (US$15.00) if any attempted payment by Borrower to Lender is not collected by Lender for any reason, including if wire transfers or checks are returned or fail due to insufficient funds in any account from which a payment is to be made to Lender. The amount of any Payment Failure Fee will be added to the balance due and payable on the relevant payment due date. Each business processing day in which a new non-payment occurs shall be deemed an "occurrence," with a maximum of one occurrence per day per deposit account, including single or multiple checks or drafts submitted or wire transfers attempted for payment on any payment due date.

12.     **Lender Appointed Attorney-In-Fact.** Borrower hereby appoints Lender Borrower's attorney-in-fact, with full authority in the place and stead of Borrower and in the name of Borrower or otherwise, from time to time during the continuance of an Event of Default to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement (but Lender shall not be obligated to and shall have no liability to Borrower or any third party for failure to do so or take action). This appointment, being coupled with an interest, shall be irrevocable. Borrower hereby ratifies all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof.

13.     **Security Interest Absolute.** To the extent permitted by law, Borrower hereby waives demand, notice, protest, notice of acceptance of this Agreement, Collateral received or delivered and all other demands and notices of any description. To the extent permitted by law, all rights of Lender and liens and security interests hereunder, and all Indebtedness of Borrower hereunder, shall be absolute and unconditional irrespective of:

          (a)     any illegality or lack of validity or enforceability of any Indebtedness or any related agreement or instrument;

          (b)     any change in the time, place or manner of payment of, or in any other term of, the Indebtedness, or any amendment or other modification of this Agreement or any other agreement, including any increase in the Indebtedness resulting from any extension of additional credit or otherwise;

          (c)     any taking, exchange, substitution, release, impairment or non-perfection of any Collateral or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Indebtedness;

          (d)     any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Indebtedness;

          (e)     any default, failure or delay, willful or otherwise, in the payment of the Indebtedness;

          (f)     any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, Borrower against Lender; or

          (g)     any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Loan or any existence of or reliance on any representation by Lender that might vary the risk of Borrower or otherwise operate as a defense available to, or a legal or equitable discharge of, Borrower or any guarantor or surety.

14.     **Survival of Representations and Warranties.** Borrower understands and agrees that in making this Loan, Lender is relying on all representations, warranties and covenants made by Borrower in this Agreement, the Related Documents and in any certificate or other instrument delivered by Borrower to Lender under this

080

BlockFi Loan No. _____

Agreement. Such Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the execution of this Agreement and the funding of the advance, shall be continuing in nature, and shall remain in full force and effect until such time as all of Borrower's obligations under this Agreement shall be fully satisfied, or until this Agreement shall be terminated in the manner provided herein, whichever is the last to occur.

15.    **Account Authorization**. In order to satisfy Borrower's obligations under this Agreement, Borrower expressly authorizes Lender to initiate an electronic funds transfer ("**EFT**") debit from Borrower's designated bank account (including any subsequent designated account identified to Lender by the Borrower) in accordance with the Authorization Agreement for Electronic Funds Transfer (EFT) Payments attached as <u>Exhibit A</u> (the "**EFT Authorization**") for all amounts due and owing by Borrower to Lender under this Agreement, including, without limitation, all payments to be made by Borrower pursuant to <u>Section 3</u> of this Agreement. In connection with such payments, Borrower further agrees to complete the EFT Authorization. Borrower authorizes Lender to resubmit any EFT debit authorized by Borrower that is returned for insufficient or uncollected funds, except as otherwise provided by NACHA – The Electronic Payment Association's EFT rules or applicable law.

16.    **Cost of Collection**. To the extent permitted by law, Borrower agrees to pay all costs and expenses, including collection expenses, court costs, and reasonable attorneys' fees, incurred by Lender in the collection or enforcement of this Agreement. Borrower also agrees to pay any and all withholding taxes applicable to the Collateral, including any withholding taxes on any amounts so paid and, upon written request by Lender, shall furnish Lender with evidence of payment thereof.

17.    **Termination**. This Agreement shall terminate upon the payment in full of all Indebtedness and performance of all obligations hereunder. At such time, Lender's sole obligations shall be to direct the Depository to transfer the remaining Collateral in the Depository Account to Borrower, at a wallet address provided by Borrower to Lender, and to authorize Borrower to terminate any UCC financing statements filed by Lender against Borrower with respect to the Collateral.

18.    **Binding Effect**. All representations, warranties, covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender. Any such assignment in violation of this Section 18 shall be null and void.

19.    **Caption Headings**. Caption headings in this Agreement and the Related Documents are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement or the Related Documents.

20.    **Cumulative Rights; Non-Exercise**. Lender's rights under this Agreement are cumulative, and shall not be construed as exclusive of each other unless otherwise required by law. The non-exercise by Lender of any rights or remedies under this Agreement shall not constitute a waiver thereof in that or any subsequent instance.

21.    **Waiver**. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower shall constitute a waiver of any of Lender's rights or of the Borrower's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by

080

081

**BlockFi Loan No.** _____

Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

22.    **Entire Agreement; Integration**. This Agreement and the other Related Documents constitute the entire agreement among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. Each Related Document, and any exhibit, schedule or similar addition to this Agreement or any Related Document, is hereby incorporated into this Agreement by this reference as though fully set forth herein.

23.    **Severability**. If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

24.    **Usury Savings Clause**. Lender and Borrower intend to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof, Lender and Borrower stipulate and agree that none of the terms and provisions contained in the Loan Documents shall ever be construed to create a contract to pay for the use, forbearance or detention of money or interest in excess of the maximum amount of interest (including all charges and fees) permitted to be charged by applicable law, from time to time.

25.    **Notices**. Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, delivered by overnight delivery service, or via electronic mail, addressed as follows:

If to Lender:

BlockFi Lending LLC
150 Broadway, 19th Floor
New York, NY 10038
support@blockfi.com

If to Borrower:

Either party may change such addresses from time to time by providing notice as set forth above.

26.    **USA Patriot Act Notice**. Lender hereby notifies Borrower that, pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

27.    **Credit Report and Other Authorizations**. Borrower authorizes Lender, its agents and representatives and any credit reporting agency engaged by Lender, to (a) investigate any references given or any other statements or data obtained from or about Borrower or any guarantor for the purpose of this Loan Agreement,

081

082

BlockFi Loan No. _____

(b) obtain consumer and business credit reports on Borrower and any guarantor, (c) contact personal and business references provided by Borrower, at any time now or for so long as any Indebtedness remains unpaid, and (d) share information regarding Borrower's performance under this Agreement with affiliates and unaffiliated third parties.

28. **Counting of Days**. Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days and not business days.

29. **Amendment**. This Agreement and the Related Documents constitute the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration, amendment, modification, termination, discharge or waiver of any provision of this Agreement or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration, amendment, modification, termination, discharge or waiver. Any such alteration, amendment, modification, termination, discharge or waiver shall be effective only for the specific purpose for which given.

30. **Bankruptcy**. The rights and priorities set forth in this Agreement shall remain binding irrespective of the terms of any plan of reorganization in any proceeding commenced by or against Borrower under any provision of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended, and any successor statute (the "**Bankruptcy Code**") or under any other federal or state bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other similar relief, and all converted or succeeding cases in respect thereof or other provisions of the Bankruptcy Code or any similar federal or state statute.

31. **Governing Law; Acceptable Forums; Waiver of Jury Trial**. EXCEPT       FOR       THE ARBITRATION PROVISION, WHERE APPLICABLE, WHICH SHALL BE GOVERNED BY FEDERAL LAW, THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS. BORROWER UNDERSTANDS THAT BORROWER'S AGREEING TO THE APPLICABILITY OF DELAWARE LAW AND VENUE ARE A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THIS AGREEMENT. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Lender so elects, be instituted in any court sitting in New Castle County, Delaware, (the "**Acceptable Forums**"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum. Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement or any Related Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).

32. **Facsimile Acceptance**. This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission (whether directly from one facsimile device to another by means of a dial-up connection or whether mediated by the worldwide web), by e-mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

082

083

# EXHIBIT "19"

# EXHIBIT "19"

# EXHIBIT "19"

083

Electronically FILED by Superior Court of California, County of Los Angeles on 03/23/2021 02:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Hankins, Deputy Clerk

084

1  HAYNES AND BOONE, LLP
   David Clark/Bar No. 275204
2    david.clark@haynesboone.com
   Andrea Levenson/Bar No. 323926
3    andrea.levenson@haynesboone.com
   600 Anton Boulevard, Suite 700
4  Costa Mesa, CA 92626
   Telephone:    (949) 202-3000
5  Facsimile:    (949) 202-3001

6  Attorneys for Defendants
   BLOCKFI LENDING, LLC
7  BLOCKFI INC.

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10             **COUNTY OF LOS ANGELES, BURBANK COURTHOUSE**

11

12  GEORGE GERRO, an individual,      )  **CASE NO.: 20STCV31493**
                                      )
13             Plaintiff,             )  **ASSIGNED FOR ALL PURPOSES TO:**
                                      )      Honorable William D. Stewart
14      vs.                           )      Department A
                                      )
15  BLOCKFI LENDING LLC, a Delaware   )  **DECLARATION OF CHARLES E.**
    limited liability company; SCRATCH )  **WASHBURN, JR. RE: SUPPLEMENTAL**
16  SERVICES, LLC, a Delaware limited )  **REPLY BRIEF OF BRIEF**
    liability company; and DOES 1 through )  **DEFENDANTS BLOCKFI LENDING,**
17  100,                              )  **LLC AND BLOCKFI, INC. IN SUPPORT**
                                      )  **OF FORUM NON CONVENIENS**
18             Defendants.            )  **MOTION AND DEMURRER**
                                      )
19

20

21                                        Hearing Date: April 8, 2021
                                          Time:        9:30 a.m.
22                                        Department:   A

23                                        *First Amended*
                                          *Complaint Filed: May 13, 2020*
24

25

26

27

28

084

**DECLARATION OF CHARLES E. WASHBURN JR.**

# DECLARATION OF CHARLES E. WASHBURN, JR.

1    

2    

3       I, CHARLES E. WASHBURN, JR., declare as follows:

4       1.  I am an attorney at law duly admitted to practice in the State of California and am a

5    partner with the law firm of Manatt, Phelps & Phillips, LLP.  I have personal knowledge of the

6    matters set forth herein and, if called upon to testify, I could and would testify competently

7    thereto.

8       2.  I have practiced law in California for over 40 years, and the primary focus of my practice

9    during my career has been the regulation of financial services.  A significant part of that practice

10   has been advising clients regarding the California Financing Law (the "CFL"), including with

11   respect to applying for licenses under that law.  That work has included interfacing with the

12   application review staff as well as the legal staff of the California Department of Business

13   Oversight (the "DBO") (which agency is now called the Department of Financial Protection and

14   Innovation or "DFPI") when issues have arisen in connection with license applications.

15      3.  On or about March 15, 2018, BlockFi Lending LLC ("BlockFi") retained me to assist

16   BlockFi in responding to a letter received by BlockFi from the DBO with respect to BlockFi's

17   then pending application for Finance Lender and Broker licenses under the CFL.  My duties

18   included corresponding and otherwise communicating directly with the DBO in connection with

19   that letter in an effort to correct DBO application review staff's misunderstanding of the CFL so

20   that the licenses would issue in accordance with the business plan disclosed in the original

21   application.  .  Specifically, the letter sent by DBO staff included an incorrect preliminary

22   statement that BlockFi was prohibited by the CFL from holding collateral for loans, including

23   cryptocurrency as discussed in BlockFi's business plan included in its application.

24      4.  I have read the contention in plaintiff George Gerro's March 19, 2021 brief that the DBO

25   was somehow unaware of BlockFi's  disclosed intention to hold (whether directly or through a

26   third-party custodian) cryptocurrency as collateral for loans extended to California borrowers

27   when the DBO issued BlockFi's Finance Lender and Broker licenses.  Mr. Gerro's assertion is

28   incorrect.

5.    I personally communicated with the DBO on BlockFi's behalf with respect to the letter BlockFi received from the DBO regarding its license application, including specifically the issue raised by the DBO regarding the holding of collateral.  Those communications included e-mail messages sent to application review staff and, when such staff advised that the issue would need to be resolved with DBO legal staff, the submission to legal staff of the opinion request.  Throughout this process, I consistently made clear to the DBO that BlockFi intended to hold cryptocurrency as collateral for the loans it issued, and indeed the DBO was well aware of that business plan based on the issue being raised by the DBO itself in its letter to BlockFi.  For example, on July 24, 2018, I sent an email to Alexander Nourafshan, Counsel, Financial Institutions Division, DBO raising those exact issues.  A true and correct copy of the email chain between myself and Mr. Nourafshan is attached hereto as **Exhibit A**.  At the time of that correspondence, a lower-level application review staff member at the DBO had expressed the view in the original deficiency letter (which, as I explain below, more senior personnel at the DBO legal department later corrected) that BlockFi could not hold cryptocurrency as collateral for loans.  Accordingly, in that email I specifically addressed the flaws in the DBO's preliminary position, BlockFi's intent to hold cryptocurrency as collateral for loans, and CFL Section 22009. I stated:

> As discussed in more detail in the opinion request, the position taken by the Department to-date that a licensee under the California Financing Law ("CFL") cannot hold collateral I respectfully believe is based on a clear misreading of vestigial language in Section 22009 of the CFL defining the term "finance lender," which hopefully you see as well.

I similarly informed the DBO in my July 24th email that the DBO had already granted a Finance Lender license to BlockFi's competitor, Unchained Capital, Inc. ("Unchained"), and that Unchained was performing "lending business in California and *is still holding crypto currency as collateral in connection with those loans.*" (emphasis added).  In other words, I also informed Mr. Nourafshan that BlockFi's competitor had already been licensed to perform the exact business operations for which BlockFi was asking to be approved, including holding cryptocurrency as collateral.

2

**DECLARATION OF CHARLES E. WASHBURN JR.**

6.  In my correspondence and discussions with him, Mr. Nourafshan did not express any issues with BlockFi's intended business operations, including BlockFi's intent to hold cryptocurrency as collateral, in response to my emails and opinion request.  Mr. Nourafshan also never expressed any possible distinction between BlockFi's operations and those of Unchained, for which the DBO had already granted a Finance Lender license.

7.  On August 20, 2018 (after a few brief emails checking on the status of BlockFi's request for an opinion), Mr. Nourafshan called me and advised that BlockFi's Finance Lender and Broker license application had been approved.  Mr. Nourafshan stated that BlockFi's opinion request "hit all the right notes" and explained that the DBO agreed with BlockFi's analysis of CFL Section 22009 and BlockFi's right under Section 22009 and the CFL to hold cryptocurrency as collateral for loans.  Mr. Nourafshan also apologized for the delay in responding to the opinion request and granting the licenses and stated that BlockFi would receive the licenses in the mail in 7 to 10 days.

8.  In particular, Mr. Nourafshan did not state that the disclosed business plan of BlockFi must change to eliminate holding of collateral as a condition to the licenses issuing.  In my experience the DBO would not issue licenses to BlockFi if BlockFi's business plan as clearly disclosed to the DBO, including the holding of collateral, would violate the CFL.

9.  Mr. Nourafshan also explained to me in our August 20th call that the DBO would not be issuing a formal opinion in response to our request, and that instead the DBO's agreement with BlockFi's position on CFL Section 22009 and its ability to hold cryptocurrency as collateral for loans would simply be evidenced by the granting of BlockFi's licenses.  Thus, while I did not withdraw BlockFi's request for an interpretive opinion, the DBO elected not to issue one because it had decided to approve BlockFi's Finance Lender and Broker license application.

10. In this regard, I have reviewed the e-mail message from Miranda LeKander to Mr. Gerro attached as Exhibit 7 to his submission in which she states that in August 2018 I verbally withdrew my request for an opinion, which statement by Ms. LeKander should be clarified.  As stated in the request for the opinion included in Exhibit 6 to Mr. Gerro's submission, as a routine matter I ask that the DBO legal staff contact me if it reaches a "preliminary" conclusion that it

3

**DECLARATION OF CHARLES E. WASHBURN JR.**

1   will issue an adverse opinion and, in such event, extend to me the courtesy of allowing me to

2   withdraw the opinion request.  The DBO legal staff never reached a negative opinion with

3   respect to the ability of a licensee to hold collateral, "preliminary" or otherwise, with respect to

4   my request.  Instead, DBO legal staff agreed that a licensee may hold collateral, a determination

5   that was evidenced by the issuance of licenses to BlockFi when BlockFi had disclosed it would

6   hold collateral.  Because the goal of the request was for the licenses to issue, and with that goal

7   achieved no formal opinion was then needed, I acquiesced in Mr. Nourafshan's desire to avoid

8   DBO having to go to the trouble of issuing a formal opinion.  My acceptance is likely what Ms.

9   LeKander referred to as a withdrawal.  But again, my agreement with the DBO's view that an

10  opinion was no longer needed does not reflect any adverse determination made by DBO legal

11  staff regarding the permissibility of holding collateral under the CFL.

12      11. To be clear, never in my correspondence or discussions with the DBO did I indicate that

13  BlockFi somehow did not plan to hold cryptocurrency as collateral for loans it issued.  To the

14  contrary, I consistently made the DBO aware that BlockFi intended, as a licensed finance lender,

15  to hold cryptocurrency as collateral (whether directly or through a third party), and that it was

16  entitled to do so under any applicable statutes.  (*See, e.g.*, Exhibit A, July 24th and July 26th

17  emails to the DBO.)  This, among other reasons, is why during my August 20th phone call with

18  the DBO, Mr. Nourafshan expressly stated that the DBO agreed with BlockFi's position on CFL

19  Section 22009 and BlockFi's right to hold cryptocurrency as collateral for loans.

20

21      I declare under penalty of perjury under the laws of the State of California that the

22  foregoing is true and correct and that this Declaration was executed this 22rd day of March,

23  2021, at Manhattan Beach, California.

24

25

26  CHARLES E. WASHBURN JR.

27

28

4

**DECLARATION OF CHARLES E. WASHBURN JR.**

# EXHIBIT "A"

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Monday, August 20, 2018 2:15 PM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi


Hi Charles,


I will call in a few minutes.


Best,


Alex



Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e*  alexander.nourafshan@dbo.ca.gov

---

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Monday, August 20, 2018 2:12 PM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi


Thank you, Alex, and I am available any time this afternoon until 6:30 p.m., including now.


**Charles Washburn**

Partner

————————————————

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Monday, August 20, 2018 1:20 PM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi

Hi Charles,

Sincere apologies for my delayed reply. Are you available this afternoon or anytime tomorrow to chat for a few minutes? Please let me know your availability for a brief phone call. Thanks!

Best,

Alex

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e*  alexander.nourafshan@dbo.ca.gov

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Thursday, August 16, 2018 2:24 PM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi

Alex,

I thought I would check in on the status of management review of the opinion request, and also my question regarding whether you could share your view on the issue. Thank you.


**Charles Washburn**

Partner

_____


**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761


cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Washburn, Charles
**Sent:** Thursday, July 26, 2018 5:05 PM
**To:** 'Nourafshan, Alexander@DBO'
**Subject:** RE: Confidential Treatment Re: BlockFi


I appreciate your prompt review of the request, and I also appreciate your conveying to management the urgency here.  Would you be able to share your view with me, which I would of course recognize is subject to management review and so is not binding on the Department?


**Charles Washburn**

Partner

_____


**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761


cwashburn@manatt.com

manatt.com                                                                          093

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential
information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby
notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you
have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading
them or saving them to disk. Thank you.

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, July 26, 2018 4:35 PM
**To:** Washburn, Charles
**Subject:** Re: Confidential Treatment Re: BlockFi

Hi Charles,

I have completed my review and sent my analysis to management for approval. I am not sure when management review will
be completed, but I will send a note along requesting expedited review. Hopefully that will help speed the process along,
though I cannot provide any more specific timeline.

Best,

Alex

Alexander M. Nourafshan
Counsel, Financial Institutions Division
Department of Business Oversight

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Thursday, July 26, 2018 4:07:35 PM
**To:** Nourafshan, Alexander@DBO
**Subject:** RE: Confidential Treatment Re: BlockFi

I appreciate the quick response, Alex. Again, due to the urgency of the request from the client's perspective,
can you give me a feel for when the review will be completed, and whether there is anything that can be done
to expedite the review?

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

093

**D** (310) 312-4372  **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, July 26, 2018 4:07 PM
**To:** Washburn, Charles
**Subject:** Re: Confidential Treatment Re: BlockFi

Dear Charles,

Thank you for your email. We are still reviewing your request. I will let you know if we have any questions or can provide a more detailed update. Thank you for your patience.

Best,

Alex

Alexander M. Nourafshan
Counsel, Financial Institutions Division
Department of Business Oversight

---

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Thursday, July 26, 2018 3:42:53 PM
**To:** Nourafshan, Alexander@DBO
**Subject:** FW: Confidential Treatment Re: BlockFi

Alex,

Sorry to bother you (and I got a bounce back to my message on Tuesday), but again I want to check in on the status of this request.  As noted below, the client has been placed at a severe disadvantage due to a competitor with a similar business that apparently is being allowed to operate under the CFL by the Department.  If the Department sees a distinction between the two operations, please let me know as soon as possible.

Chuck

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Washburn, Charles
**Sent:** Tuesday, July 24, 2018 10:57 AM
**To:** 'Nourafshan, Alexander@DBO'
**Subject:** RE: Confidential Treatment Re: BlockFi
**Importance:** High

CONFIDENTIAL

Alex,

I hope this message finds you well.

I am following up to check on the status of our request for an interpretive opinion, a copy of which request I have attached for ease of reference.  As you know, it was received by the Department on May 15.

As discussed in more detail in the opinion request, the position  taken by the Department to-date that a licensee under the California Financing Law ("CFL") cannot hold collateral I respectfully believe is based on a clear misreading of vestigial language in Section 22009 of the CFL defining the term "finance lender," which hopefully you see as well.

As also discussed in the request, this incorrect Department position is causing substantial harm to our client BlockFi Lending LLC.  In particular and as noted in the request for expedited treatment, I understand from the client that a competitor, Unchained Capital, Inc., was granted a CFL license by the Department (60DBO-78867) and based on the Department's web site that license is still active.  The client further advises that Unchained Capital is still doing a lending business in California and is still holding crypto currency as collateral in connection

with those loans, while at the same time BlockFi Lending is unable to lend in California on similar terms with respect to holding collateral based on this Department position.

Thank you in advance for your assistance, and I would again be happy to discuss any questions you may have regarding the analysis.

Best regards,

Chuck

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, June 28, 2018 1:44 PM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi

Interpretive opinion requests generally take at least 60-90 days. I will do my best to provide any updates that I can.

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

_t_ (415) 263-8503 |  _e_  alexander.nourafshan@dbo.ca.gov

Case 22-19361-MBK    Doc 204-6    Filed 01/06/23    Entered 01/06/23 18:06:09    Desc
Exhibit Mail - Confidential Death Re: BlockFi    Page 118 of 194

097

**From:** Washburn, Charles [mailto:cwashburn@manatt.com]
**Sent:** Thursday, June 28, 2018 11:47 AM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi

Thank you, Alex.  Is it possible to give me an idea when the initial review may be completed?

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential
information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby
notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you
have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading
them or saving them to disk. Thank you.

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, June 28, 2018 11:24 AM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi

Hi Mr. Washburn,

Thank you for your email. Your request is currently under review. I will let you know if we have any further
questions or need additional information.

Best,

Alex

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e* alexander.nourafshan@dbo.ca.gov

---

**From:** Washburn, Charles [mailto:cwashburn@manatt.com]
**Sent:** Thursday, June 28, 2018 11:08 AM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi

Alex,

I thought I would take the liberty of checking on the status of our request for an interpretive opinion, and reiterate my offer to discuss any questions you may have regarding our analysis.  Please let me know, and thank you.

Best regards,

Chuck

**Charles Washburn**

Partner

---

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

099

**From:** Washburn, Charles
**Sent:** Friday, June 15, 2018 3:25 PM
**To:** 'Nourafshan, Alexander@DBO'
**Subject:** RE: Confidential Treatment Re: BlockFi

Thank you very much, Alex. (I have yet to receive the letter sent by USPS, so I appreciate the PDF.) Also, I would be happy to discuss with you the request for an interpretive opinion, including any questions you may have regarding the legal analysis. Again, thank you, and have a good weekend.

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA 90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Friday, June 15, 2018 3:20 PM
**To:** Washburn, Charles
**Subject:** Confidential Treatment Re: BlockFi

Dear Mr. Washburn,

A letter granting confidential treatment of your request regarding BlockFi Lending LLC was sent in the mail on Monday, June 11, 2018. Please find a copy of this letter attached. I will let you know if any additional information is needed in connection with this request.

Best regards,

Alex

099

# EXHIBIT "20"

# EXHIBIT "20"

# EXHIBIT "20"

Electronically FILED by Superior Court of California, County of Los Angeles on 03/23/2021 02:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Hankins, Deputy Clerk

1   HAYNES AND BOONE, LLP
    David Clark/Bar No. 275204
2     david.clark@haynesboone.com
    Andrea Levenson/Bar No. 323926
3     andrea.levenson@haynesboone.com
    600 Anton Boulevard, Suite 700
4   Costa Mesa, CA  92626
    Telephone:    (949) 202-3000
5   Facsimile:     (949) 202-3001

6   Attorneys for Defendants
    BLOCKFI LENDING LLC
7   BLOCKFI INC.

8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                    COUNTY OF LOS ANGELES, BURBANK COURTHOUSE
10

11
    GEORGE GERRO, an individual,        )   CASE NO.: 20STCV31493
12                                       )
                    Plaintiff,           )   ASSIGNED FOR ALL PURPOSES TO:
13                                       )   Honorable William D. Stewart
            vs.                          )   Department A
14                                       )
    BLOCKFI LENDING LLC, a Delaware      )   DECLARATION OF JAN LYNN
15  limited liability company; SCRATCH   )   OWEN RE: SUPPLEMENTAL
    SERVICES, LLC, a Delaware limited    )   REPLY BRIEF OF BRIEF
16  liability company; and DOES 1 through)   DEFENDANTS BLOCKFI LENDING,
    100,                                 )   LLC AND BLOCKFI, INC. IN SUPPORT
17                                       )   OF FORUM NON CONVENIENS
                    Defendants.          )   MOTION AND DEMURRER
18                                       )

19

20
                                         Hearing Date: April 8, 2021
21                                       Time:          9:30 a.m.
                                         Department:    A
22
                                         *First Amended
23                                       Complaint Filed: May 13, 2020*
24

25

26

27

28

                                                                          101

            DECLARATION OF CHARLES E. WASHBURN JR.

## DECLARATION OF JAN LYNN OWEN

I, JAN LYNN OWEN, declare as follows:

1. I am the former Commissioner of the Department of Business Oversight, and I am currently a senior advisor in the Financial Services Group at Manatt, Phelps & Phillips, LLP. I have personal knowledge of the matters set forth herein and, if called upon to testify, I could and would testify competently thereto.

2. In December 2011, I was appointed by Governor Edmund G. Brown Jr. to be the Commissioner of the California Department of Corporations. In July 2013, the Department of Corporations combined with the California Department of Financial Institutions to form the Department of Business Oversight (the "DBO," now called the Department of Financial Protection and Innovation, or "DFPI"). I therefore became the first Commissioner of the DBO when those two entities combined in 2013, and I remained Commissioner of the DBO until I left on May 31, 2019. I was therefore Commissioner of the DBO when BlockFi Lending, LLC ("BlockFi") applied for and was granted its Finance Lender and Broker License application in 2018, although I do not recall personally working on BlockFi's application.

3. As Governor Brown's appointment as Commissioner of the DBO, my responsibilities at the DBO included supervision of the entirety of the DBO's operations, including supervision of the DBO's processing and consideration of license applications in approximately 22 different areas of California law, including, without limitation, the California Financing Law ("CFL") (Division 9 of the California Financial Code. Specifically as to license applications, at times I would review those applications in order to monitor the DBO's application process generally and evaluate the performance of our agency as a whole and its individual employees. At other times, I would personally review individual applications and have the authority to make ultimate determinations on whether the DBO should grant or deny certain licenses.

4.  Particularly given the size of California's economy and its significant influence well outside California, my responsibilities as Commissioner included critical issues such as ensuring that the DBO correctly applied the law when evaluating license applications as well as considering the public policy issues when reviewing the practical impact of DBO decisions inside California as well as nationwide. During my tenure as Commissioner of the DBO, our agency licensed and chartered approximately 368,000 licensees, including many thousands of finance lender licensees alone.

5.  I have read the contention in plaintiff George Gerro's March 19, 2021 brief that us a finance lender, BlockFi is somehow not permitted to hold or use cryptocurrency (or other collateral) as security for the loans it gives to its borrowers.  I have also read Mr. Gerro's contention that by doing so, BlockFi is somehow acting as a pawnbroker rather than a finance lender and should be licensed and regulated accordingly.  Each of these contentions is incorrect.

6.  As for Mr. Gerro's first contention, during my tenure as Commissioner the DBO granted many licenses to finance lenders whose planned business operations included the holding and/or use of collateral that was being used to secure loans.  The business practice of holding and using collateral—including the rehypothecation of that collateral—is common both in California and throughout the United States in connection with secured lending.  As Commissioner, I was required to become intimately familiar with California law including, but not limited to, the CFL (including section 22009) as well as the Uniform/California Commercial Code, and the argument that the holding or use of collateral by a finance lender is somehow inconsistent with either of these laws is incorrect.  Indeed, a rule to the contrary —that finance lenders were somehow not permitted to hold or use collateral securing loans— would not only be contrary to established California law, it would significantly and detrimentally hamper lending activities and related business operations throughout the State. Accordingly, during my tenure as Commissioner, the DBO granted finance lender licenses to businesses planning to hold and/or use collateral securing loans, including but not limited to licenses which I approved as DBO Commissioner.

2

DECLARATION OF JAN LYNN OWEN

7.   Mr. Gerro's pawnbroker assertions are likewise incorrect.  BlockFi's stated business operations—holding and/or using collateral in the form of cryptocurrency for secured loans, falls squarely under the umbrella of business activities performed by a finance lender licensed by the DBO.  Depending on the business model of any particular entity, finance lenders use a wide variety of collateral to secure loans, including traditional U.S. dollars, physical precious metals (which are typically vaulted with the lender or a third party custodian), stocks and other securities, and (more recently) cryptocurrency such as Bitcoin, Ethereum and Litecoin.  Among other instances, licensees may reasonably conclude that holding collateral is appropriate in situations where traditional collateral controls such as Uniform Commercial Code filings are insufficient to provide effective restrictions on permanent alienation and disposal of the collateral, for example with digital assets and cryptocurrency.  A finance lender license is the appropriate license in California for such operations, and the holding and use of these various types of collateral is not only consistent with California finance lender laws, but is also the standard commercial lending practice for finance lending on easily transferrable collateral.  A pawnbroker license is neither appropriate nor required.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 23rd day of March, 2021, at _West Sacramento_, California.

JAN LYNN OWEN

3

DECLARATION OF JAN LYNN OWEN

# EXHIBIT "21"

# EXHIBIT "21"

# EXHIBIT "21"

 Gmail

George Gerro <georgejgerro@gmail.com>

---

**BlockFi | Your Collateral Could Be Sold**

---

**BlockFi Support** <support@blockfi.com>                    Thu, Mar 12, 2020 at 3:43 AM
To: georgejgerro@gmail.com



# Your BlockFi Loan is in Default:
# Collateral Eligible for Sale

George,

The value of your collateral has dropped since we last notified you and as a result, your LTV ratio has risen to or above an 80% LTV. In accordance with your loan and security agreement, your loan is now in default and BlockFi reserves the right to initiate a sale of your collateral to bring your loan to a 70% LTV ratio.

If your collateral has been sold, the details of the sale will be made available. Please reach out and let us know if you have any questions or concerns.

**Loan Id:** 41725c18

-- The BlockFi Team

 **BlockFi**

www.blockfi.com
(646) 779-9688
support@blockfi.com

107

# M Gmail

George Gerro <georgejgerro@gmail.com>

---

## Your Collateral Is Being Sold

---

**Flori Marquez** <support@blockfi.com>                                          Thu, Mar 12, 2020 at 5:26 AM
Reply-To: support@blockfi.com
To: georgejgerro@gmail.com

Hi George,

You are receiving this email because your BlockFi loan is close to or beyond an 80% LTV. What this
means is that due to the recent drop in prices, you currently do not have enough collateral posted with
BlockFi and your loan is in default. If your loan is above a 95% LTV your collateral may have already
been sold.

Our objective is to avoid selling client collateral as long as possible, but due to the continued drop in
the price of crypto, our risk management team will be liquidating additional collateral today at 9AM
EST. If your loan moves or remains above an 80% LTV at any point over the following hour, your
loan's collateral will be sold and we will use the proceeds of the sale to pay down your BlockFi loan.

In order to avoid a sale, please post the additional collateral required as detailed in the emails you
have received from us titled:

1. BlockFi | Your Loan Is In Margin Call
2. BlockFi | Your Collateral Could Be Sold

You must post the additional collateral by 9AM EST today 3/12/20. Please note, if market prices
continue to drop, we may sell prior to 9AM EST.

Please do not hesitate to call 646-779-9688 or email support@blockfi.com with any questions.

Best,

Flori

BlockFi, 201 Montgomery Street, Second Floor, Suite 263, Jersey City, NJ 07302, USA, 646-779-9688

Unsubscribe Manage preferences

108

# M Gmail

George Gerro <georgejgerro@gmail.com>

---

## BlockFi Loan - Margin Action Required Immediately

3 messages

---

**Jake Gargiulo from BlockFi** <support@blockfi.com>          Thu, Mar 12, 2020 at 5:05 AM
Reply-To: Jake Gargiulo from BlockFi <support@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>

Hi George,

Your LTV is currently ~85%. Our objective is to avoid selling client collateral as long as possible, but due to the continued drop in the price of crypto, our risk management team must take action in accordance with your loan agreement.

In order to avoid a sale, please immediately post the additional collateral required as detailed in the emails you have received from us titled:
1. BlockFi | Your Loan Is In Margin Call
2. BlockFi | Your Collateral Could Be Sold

Please note, if market prices continue to drop, we may sell prior to 5PM EST.

Please do not hesitate to call 646-779-9688 or email support@blockfi.com with any questions.

Best,
Jake

---

**Jake Gargiulo from BlockFi** <support@blockfi.com>          Thu, Mar 12, 2020 at 10:11 AM
Reply-To: Jake Gargiulo from BlockFi <support@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>

Hi George,

Hoping to follow up on this as I haven't seen any additional collateral come in and you're still at 84% LTV. Please note the system will auto liquidate at ~4PM Eastern *so please if possible post additional collateral or pay down a portion of the balance asap in order to avoid the sale*.

The best and quickest way to avoid liquidation is to send additional BTC collateral to your loan wallet ASAP. Any loans above 80% LTV will be subject to liquidation so please cure as soon as you can.

Best,
[Quoted text hidden]

---

**Jake Gargiulo from BlockFi** <support@blockfi.com>          Thu, Mar 12, 2020 at 12:24 PM
Reply-To: Jake Gargiulo from BlockFi <support@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>

Hi George,

LTV is still above 85% - please let me know if and when you cure in order to avoid liquidation. As much as we do not want to, any/all loans above an 80% LTV will be liquidated this afternoon before 5PM Eastern.

Best way to cure is sending BTC to your Loan Wallet (35Casa2gANkTV32CV8iLmkhWt2uMqcPhJD) - alternatively you can send us stabelcoin or wire USD.

# M Gmail

George Gerro <georgejgerro@gmail.com>

---

## Thank you for your email

---

**BlockFi** <support@blockfi.com>
Reply-To: support@blockfi.com
To: georgejgerro@gmail.com

Thu, Mar 12, 2020 at 3:18 PM

Hi George,

Thank you for reaching out to BlockFi.  We are experiencing a high volume of inquiries, however our team of dedicated client service specialists are reviewing your inquiry and will respond as soon as possible. Responses may be slightly delayed.

**If you are reaching out regarding your USD Loan in Margin, any loans above 80% LTV are at immediate risk of auto liquidation. The best and quickest way to cure your margin is to send crypto to your unique loan wallet address. We recommend curing your margin to 50% LTV as soon as possible.**

For more information, please see our Help Center here and our FAQs here.

Please see frequent questions/answers below:

### Q1. Are my funds safe/secure?

A1. Gemini is BlockFi's primary custodian. Gemini keeps 95% of their assets in cold storage and 5% in hot wallets that are covered by insurance provided by Aon. Gemini is a licensed custodian and regulated by the NYDFS. Deloitte recently completed a SOC2 examination of Gemini's custody solution -- you can read more about Gemini's SOC2 compliance here and about their security here.

 Gmail

### BlockFi Loan ID 41725c18 - Margin Liquidation
36 messages

---

**Jake Gargiulo** <jake@blockfi.com>                                                    Fri, Mar 13, 2020 at 12:04 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

I hope this message finds you well. Given the recent market activity and your Loan being in Default, a liquidation was triggered on your Loan to cure your margin.

Please see transaction details below:

Crypto Sold: -81.1555 BTC
USD Raised: 386300.1962

| Loan IDs | Collateral | Pre-Liquidation | | Post Liquidation | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | 802357.2062 | 183.57771 | -81.1555 | 416057.01 | 102.4222026 |

Our backend and Risk Management systems have been updated and reflect this information. If your frontend dashboard does not reflect this information, it should be updated shortly.

You may notice that the price at the time of the automated sale yesterday is slightly different than the current price at this moment. This difference is a result of our loan portfolio as a whole and liquidity at the time of sale when the market dropped last night.

For BlockFi's view on current market conditions, please read this Blog Post written by our CEO Zac Prince.

Please email support@blockfi.com if you have any questions, and thank you for choosing BlockFi.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302



Unless specifically indicated, this e-mail is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

---

**George Gerro** <georgejgerro@gmail.com>                                                    Fri, Mar 13, 2020 at 1:06 PM
To: Jake Gargiulo <jake@blockfi.com>, support@blockfi.com
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Blockfi,

Thank you for this update.  Please disregard any previous requests for a return of remaining collateral.  I was under the mistaken impression that the loan was fully paid off.

I appreciate that I have an opportunity to remain a client of Blockfi.

- George Gerro
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                    Fri, Mar 13, 2020 at 1:20 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Support <support@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Absolutely George. It's been a tough ~36 hours for us all.

Please let us know if you have any questions, we'll try to respond as quickly as possible given the higher volume of inquiries.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302

111



[Quoted text hidden]
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                    Fri, Mar 13, 2020 at 6:10 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

I hope this message finds you well. Given the recent market activity and your Loan being in Default, a liquidation was triggered on your Loan to cure your margin. Please note this liquidation was triggered late Thursday March 12th evening when LTV was above 80% and quickly deteriorating.

Please see transaction details below:

Crypto Sold: -59.1995 BTC
USD Raised: $275,336.87

| Loan IDs | Collateral | Pre-Liquidation | | Post Liquidation | | |
|---|---|---|---|---|---|---|
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | $416,057.01 | 102.4222 | -59.1995 | $140,720.14 | 43.2227 |

Our backend and Risk Management systems have been updated and reflect this information. If your frontend dashboard does not reflect this information, it should be updated shortly. If you have any questions about your loan in the interim please email support@blockfi.com.

You may notice that the price at the time of the automated sale yesterday is slightly different than the current price at this moment. This difference is a result of our loan portfolio as a whole and liquidity at the time of sale when the market dropped last night.

For BlockFi's view on current market conditions, please read this Blog Post written by our CEO Zac Prince.

Please email support@blockfi.com if you have any questions, and thank you for choosing BlockFi.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302

[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                               Fri, Mar 13, 2020 at 7:27 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Jake,

Please let me know the UTC time, exchanges or brokers, types of orders and its price, and how the bitcoins sold were attributable to my collateral specifically.  I am mainly concerned because price is one thousand dollars higher at this time.

Thank you. - George Gerro

[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                   Sat, Mar 14, 2020 at 7:03 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi George,

Our trading team was placing orders Thursday night when there was very little liquidity in the market, which affects the trading price available to us, especially when placing larger trades, such as yours.

We'll be reviewing these trades next week and seeing if there's anything we can do to ameliorate the negative experience you've had with us of having your collateral liquidated.

Best,

Flori

Flori Marquez
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

---

**George Gerro** <georgejgerro@gmail.com>                                          Sat, Mar 14, 2020 at 11:20 AM
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Flori,

Thank you. I am appreciative of you and your team (especially Jake). All of my experiences with Blockfi have been positive and meaningful.

I am open to any ideas.
- George
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                          Sun, Mar 15, 2020 at 3:24 PM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

I have an idea, and I would like to hear your's too. Since solutions are time sensitive, please call me at your convenience.

Sincerely,

George Gerro
(818) 568-6380

On Mar 14, 2020, at 7:03 AM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                               Sun, Mar 15, 2020 at 5:15 PM
To: George Gerro <georgejgerro@gmail.com>

Hey George -

Please share over email if okay. Currently working on some internal projects with engineering so a call is not possible until tomorrow.

Best,

Flori

**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

   

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                          Sun, Mar 15, 2020 at 5:48 PM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

Thank you for responding on a Sunday.

My idea is to redeem the loan, since the average sale price for the collateral was approximately the same market price as BTC now. Blockfi would extend total credit of $2.275M to buy the approx. 400 BTC of sold collateral back off the open market. Then, I can possibly add more collateral to return the LTV ratio to 80%. Let me know if this works, or if you have any different ideas.

- George
[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                               Mon, Mar 16, 2020 at 7:59 AM
To: George Gerro <georgejgerro@gmail.com>

Hi George -

Unfortunately we cannot extend uncollateralized loans. We can reverse sales if there is enough collateral on the loan to maintain a healthy LTV after the trade reversal.

Let me know if I'm misunderstanding you.

Best,

Flori
**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

   

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Mon, Mar 16, 2020 at 8:24 AM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

I think we are both referring to the same intuition.  Can you provide details of how this can work?

Sincerely,

George Gerro
**(818) 568-6380**

On Mar 16, 2020, at 7:59 AM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                    Mon, Mar 16, 2020 at 8:44 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>

Hi George,

You need to post enough collateral to bring the loan's LTV below 60% after the trade is reversed. I'm adding Jake who can help with the math on this.

Best,

Flori
**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

   

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Mon, Mar 16, 2020 at 8:52 AM
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>

Hi Flori and Jake,

A 60% LTV is too high for me to comply.  I need another option.

Sincerely,

George Gerro
**(818) 568-6380**
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                    Mon, Mar 16, 2020 at 9:29 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hey George,

Kindly noted. The Implied LTV if we reversed the trades would bring you to ~103% LTV at current levels, which is why we cannot do that.

In order to reverse trades, we would need you to bring LTV down to at least 60% which would require an additional ~317 BTC to be posted as collateral. The situation we're trying to avoid is reversing the trades, then you being right back in margin/liquidation again, and then you get liquidated again at an even lower price.

Again we appreciate all of your patience and understanding throughout these trying times, it's certainly been difficult for all. I hope you are staying safe.                114

Please let us know if you have any questions.


Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302


[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                          Mon, Mar 16, 2020 at 10:36 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hello Jake,

I appreciate your explanation.  And yes, I am safe, but find the closure of restaurants to be inconvenient!

Regarding LTV, since the price has already fallen tremendously, less collateral is necessary (especially since we just sold into capitulation).  If the price continues to fall, additional margin could be required on a graduated basis.  Thus, I recommend additional collateral of $500k or 99 BTC at this time.   Otherwise, please propose other alternatives such as a personal guarantee.

- George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                Mon, Mar 16, 2020 at 10:54 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Agreed, it's the same in NYC.

Unfortunately that would put you at a ~84% LTV, which would be subject to immediate liquidation (the scenario we're trying to avoid). Unfortunately the best we can do is a 60% LTV at this time given all the volatility in the market. It would be rather pointless to reverse the trades just to get liquidated again.

Again we know these are difficult times and apologize for any inconvenience.


Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302


[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                          Mon, Mar 16, 2020 at 11:11 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

Why do we need to reverse the trades, rather than buy at today's lower market prices?

Sincerely,

George Gerro
(818) 568-6380

        On Mar 16, 2020, at 10:54 AM, Jake Gargiulo <jake@blockfi.com> wrote:


        [Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                          Mon, Mar 16, 2020 at 12:30 PM
Cc: Flori Marquez <flori@blockfi.com>

Hello Flori,

You mentioned that you potentially have some ideas to ameliorate this situation.  Can you opine at this time?

- George
[Quoted text hidden]

---

Flori Marquez <flori@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>

Mon, Mar 16, 2020 at 12:37 PM<br>115

Hi George,

Everything Jake said is accurate (and what I asked him to share with you, as I cannot respond as quickly). If you cannot post additional collateral as required, and we reverse the trades, we will end up liquidating more crypto at a lower price.

We can absolutely work to reverse trades, but only if it leaves the client with a healthy loan.

Let me know if that makes sense.

Best,

Flori
Flori Marquez
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

   

[Quoted text hidden]
[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>, Flori Marquez <flori@blockfi.com>

Tue, Mar 17, 2020 at 12:47 PM

Hello all,

This market crash has caused me to reevaluate my situation. In the bitcoin ethos, I would like to once again hold my own UTXO's.

As such, please calculate the payoff amount for my loan. Let the payoff reflect the fact that interest has only accrued for about one week, and that the loan balance has been substantially lower for the past few days. Go ahead and payoff the loan with proceeds from the remaining collateral, send the remaining bitcoin to me, and confirm my bitcoin address telephonically.

Thank you - George Gerro
[Quoted text hidden]

---

Flori Marquez <flori@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Tue, Mar 17, 2020 at 1:16 PM

Thanks, George. In order for BlockFi to proceed with liquidating collateral to payoff your loan, please complete the form attached here.

Flori Marquez
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

   

[Quoted text hidden]
[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Tue, Mar 17, 2020 at 1:54 PM

Hi All,

The form did not request a withdrawal address.

Sincerely,

George Gerro
(818) 568-6380

On Mar 17, 2020, at 1:16 PM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

Jake Gargiulo <jake@blockfi.com>

Tue, Mar 17, 2020 at 1:59 PM<br>115

To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi George,

Once the payoff is processed, remaining collateral will automatically sweep to your Interest Account. From there you can submit a withdrawal request to an external wallet!

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Tue, Mar 17, 2020 at 2:04 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Since the price is fluctuating, please send me confirmation immediately after the trade.

Sincerely,

George Gerro
(818) 568-6380

> On Mar 17, 2020, at 1:59 PM, Jake Gargiulo <jake@blockfi.com> wrote:
>
>
>    [Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Thu, Mar 19, 2020 at 11:45 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hello Jake,

At $7500 per BTC, I will be able to bring the LTV to 60% for 63.7 btc additional collateral. Please confirm the math. Thank you.

Sincerely,

George Gerro
(818) 568-6380
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                         Thu, Mar 19, 2020 at 2:50 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hey George,

Thank you so much for your patience and my apologies for the delay in getting this over to you. Flori caught me up to speed, and I wanted to provide the full breakdowns for you in terms of options available to reinstate some of your loan/collateral. I'm providing a breakdown of what would be needed to reverse all trades that occurred, as well as what is needed to reverse the final trade that occurred to fully payoff the loan. If there are any other iterations you would like to review, please let me know and I can calculate.

As it stands now, the loan is fully paid off backed by 0 collateral. As I'm sure you can imagine, the situation we must avoid is reversing any trades and then you being right back in Margin/Default territory which would trigger another liquidation, so we would require the reinstated balance be brought to a 60% LTV by either paying USD, or posting additional collateral.

| Trades | | | |
|---|---|---|---|
| | Loan ID | USD Raised | Crypto Sold | Asset |
| All Trades | 41725c18 | $2,275,000.00 | 426.0741673 | BTC |
| Final Trade | 41725c18 | $140,720.14 | 27.4469 | BTC |

| Reinstate - Post Reversal | | | | |
|---|---|---|---|---|
| | Loan ID | Principal Balance | Collateral Type | Collateral After Reversal | Implied LTV |
| Reverse All Trades | 41725c18 | $2,275,000.00 | BTC | 426.07416732 | 90.65% |
| Reverse Final Trade | 41725c18 | $140,720.14 | BTC | 27.44687732 | 87.05% |

| Option 1. Additional Collateral Required | | | | |
|---|---|---|---|---|
| | Loan ID | Principal Balance | Collateral Type | Collateral for 60% LTV | Need to Post |
| Reverse All Trades | 41725c18 | $2,275,000.00 | BTC | 643.746 | 217.672 |
| Reverse Final Trade | 41725c18 | $140,720.14 | BTC | 39.819 | 12.372 |

117

| | Loan ID | Principal Balance | Reinstated Collateral | Loan Available at 60% | Payment Needed |
|---|---|---|---|---|---|
| | | | Option 2. USD Payment Required | | |
| Reverse All Trades | 41725c18 | $2,275,000.00 | 426.07416732 | $1,505,746.11 | $769,253.89 |
| Reverse Final Trade | 41725c18 | $140,720.14 | 27.447 | $96,997.26 | $43,722.88 |

Please feel free to read through this and let myself and/or Flori know if you have any questions. Long story short, a payment of $769,253.89 would reinstate your loan to ~$1.5M backed by the full 426 BTC.

I hope you're staying safe out there in LA! My brother is down in San Diego and has been keeping me updated. The last week (feels like much longer) been wild to say the least.

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
--

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery St, 263, Jersey City NJ 07302



[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Tue, Mar 24, 2020 at 2:16 AM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello Jake,

Thank you very much for running the numbers.  I am in the due diligence phase with a traditional source of capital.

The multiple options you provided are helpful and appreciated.  What is the formula for calculating the USD principal pay-down?

- George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                         Tue, Mar 24, 2020 at 6:25 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

That's great news.

Formula is: Reinstated Principal Balance minus Loan Available at 60% (based on reinstated collateral + price of BTC).

Example 1.
Reinstated Principal Balance: $2,275,000.00
Reinstated Collateral: 426.07416732 BTC
Loan Available at 60% (subject to fluctuate slightly based on BTC, assuming 426 BTC collateral at 60% LTV): $1,505,746.11
Payment Needed: $2,275,000.00 - $1,505,746.11 = $769,253.89

That payment would bring new principal balance to $1,505,746.11 backed by 426 BTC.

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Mon, Apr 27, 2020 at 6:41 AM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello Jake and Flori,

I accept Blockfi's offer to reverse my collateral sales.

Reinstated Principal Balance ($2275000) - Loan Available at 60% ($1,968,120 i.e. (426 BTC * $7700 * 0.6)) = $306,880 loan pay down / $7700 per BTC = 39.854545 BTC

New principal balance of $1,968,120 backed by 426 BTC collateral, with a post-reversal LTV of 60%.

I will send the BTC today. Please confirm Blockfi's bitcoin address.

Thank you, George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                      Mon, Apr 27, 2020 at 7:36 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi George,

Followed up via text but wanted to follow up here as well. Reviewing with the Team and will revert back. To be transparent and manage your expectations, given that it's been well over a month since the liquidation (almost two) and BTC is much higher now, my outlook is doubtful. On initial review, there would be very steep losses (BlockFi sold over 400 BTC at ~$5k, so we would have to buy back BTC at current prices, incurring a loss of at least ~$1M, if not more) and those losses would very likely need to be added to your outstanding principal balance.

Again, just want to maintain full transparency. I will revert back to you as soon as possible.



| Jake Gargiulo
| Head of Client Service
|
| jake@blockfi.com
| 646.779.9688

[Quoted text hidden]

[Quoted text hidden]
For more information, please see BlockFi's Terms of Service.

---

**George Gerro** <georgejgerro@gmail.com>                                 Mon, Apr 27, 2020 at 7:52 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

This is the first time I have heard anything about increasing the loan amount. Please note the offer was affirmed on March 24th when the price of bitcoin was between $6400 and $6860 per coin.

I might be open to an increase in the loan, but only if the additional amount is non-recourse, excluded for purposes of calculating margin, and calculated using the difference between today's price and the March 24th price.

- George
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                 Mon, Apr 27, 2020 at 8:17 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

I respectfully request Blockfi to honor the terms of the deal as agreed. The $1M in losses are my losses, not Blockfi's.

The past month has been depressing for me. Now, I can be made whole again.

- George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                      Mon, Apr 27, 2020 at 12:25 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi George,

Thanks for your patience. I've spoken with our two founders and our Finance team to see if there is anything we can do, but unfortunately the offer expired in March after your Loan defaulted and cannot be extended.

If you'd like to originate a new loan, we can certainly work with you on that and can offer a discount from standard rack terms.

Please let me know if you have any questions.

Best,
Jake



| Jake Gargiulo
| Head of Client Service
|
| jake@blockfi.com
| 646.779.9688

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

Unless specifically indicated, this e-mail is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its

affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client

privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by

telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

For more information, please see BlockFi's Terms of Service.

[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                      Mon, Apr 27, 2020 at 12:49 PM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Jake,

With all due respect, that is a ridiculous argument.  I recommend that you and the team take time to think it over.  I would prefer a constructive, cooperative, mutually beneficial solution.

Please do not force me to demand arbitration in this matter.  As you calculated earlier today, my damages are in excess of $1 million.

Respectfully, George
[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                          Mon, Apr 27, 2020 at 1:01 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Zac Prince <zac@blockfi.com>

Hi George,

Unfortunately what Jake said was accurate. We had a window of time in which we were able to reverse trades, but as the original liquidations due to your loan's default happened over 45 days ago, and we've concluded our accounting for the quarter, there's not much more we can do here. As you know, even the original offer to reverse the trade is outside of the limitations of your loan agreement and something that I do not think any other lender does.

You're welcome to seek arbitration if you wish, but I would caution that as your loan defaulted, I'm not certain that it would lead to any other conclusion. What we can do is ensure you have favorable terms on any of our products going forward, although I understand that's not the same as having your position be reinstated. I am very sorry that we don't have another answer for you here. I've cc'd my cofounder, Zac, so that he's in the loop as well.

Sincerely,

Flori




Flori Marquez
Founder, SVP Operations

flori@blockfi.com
Twitter @founderflori

C I 646.389.0709
O I 646.779.9688

[Quoted text hidden]
[Quoted text hidden]

### M Gmail

George Gerro <georgejgerro@gmail.com>

---

## BlockFi | ACTION REQUIRED: Withdrawal Request Identity Verification
1 message

---

**BlockFi Support** <support@blockfi.com>                    Wed, Mar 18, 2020 at 8:13 PM
To: withdrawals@blockfi.com
Cc: georgejgerro@gmail.com



George,

Your withdrawal request was flagged for additional review and will require you to verify your identity before we can process your withdrawal. This added security measure is our system's way to prevent against suspicious account activity and protect your crypto.

Complete the steps provided in the following link to verify your identity: BlockFi Identity Verification Form

You have **48 hours** from the time you receive this email to complete the Identity Verification form or your withdrawal request may be canceled to protect your account from fraud.

Once verified, your withdrawal request should be processed within the next business day. If you have any questions, please reach out to support@blockfi.com or call us at 646-779-9688 during our business hours.

**WITHDRAWAL REQUEST**
from georgejgerro@gmail.com

**Date:** 2020-03-19 03:13:21
**Requested Amount:** 15.77582527
**Fee:** 0

# EXHIBIT "22"

# EXHIBIT "22"

# EXHIBIT "22"

 Gmail

122

George Gerro <georgejgerro@gmail.com>

---

## PRA 3147 BlockFi Lending, LLC

**Mercado, Albert@DBO** <albert.mercado@dbo.ca.gov>                    Wed, May 20, 2020 at 2:48 PM
To: "georgejgerro@gmail.com" <georgejgerro@gmail.com>

Hello George Gerro,

Thank you for contacting the Department of Business Oversight with your Public Records Act Request.  According to your request, you wish to inspect the files for BlockFi Lending, LLC and its affiliates and persons.  Under normal circumstances, you would be able to come to our office and view those in person, however, with the COVID-19 pandemic ongoing, we are restricting person to person contact as much as possible.  For your convenience, however, I'm going to attach to this email the PDF documents of everything that is in the public file in regards to BlockFi Lending LLC.

Thank you,

*Albert Mercado*

CFL Licensing Analyst

Department of Business Oversight

320 West 4th Street, Suite 750

Los Angeles, CA 90013-2344

(213) 576-7595



CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

📎 **BlockFi Lending LLC File.pdf**
30051K

# EXHIBIT "23"

# EXHIBIT "23"

# EXHIBIT "23"

# GEORGE J. GERRO

*Attorney at Law*
530 S. Glenoaks Blvd., Suite 200
Burbank, California 91502
(818) 840-0000
George@GerroLaw.com

February 19, 2021
*via first class mail only*

Subject:    Blockfi Lending LLC
201 Montgomery St.
Suite 263
Jersey City, NJ 07302
(646) 779-9688

Dear Regulator:

I write to inform you about an entity that may be lending to consumers in your jurisdiction. Pursuant to any applicable public records act, I request all available information relating to Blockfi Lending LLC, a Delaware Limited Liability Company ("Blockfi") and Blockfi Inc., a Delaware Corporation ("Blockfi Inc."), including but not limited to any consumer complaints which have been filed by the residents of your state.

As a condition of its loans, Blockfi requires its borrowers to transfer exclusive use and *actual possession* of their collateral to Blockfi for the duration of the loan.[1]  Blockfi's loans are secured by digital goods, like bitcoin (collectively "Bitcoin").

Blockfi requires consumers to transfer possession of $2 worth of Bitcoin for every $1 borrowed.[2] In substance, the borrower becomes Blockfi's *creditor*.  As Blockfi's creditor, the consumer will be exposed to additional risks above and beyond that of an ordinary borrower.  Blockfi's borrowers are exposed to counter-party risk, loss of collateral, and liens by other creditors, etc.

Also increasing the types and scope of risks incurred by consumers, Blockfi leases the Bitcoin to third-parties for a profit.  Blockfi then converts those rents to its own use, even though the proceeds belong to the debtor by law.  (*E.g.* Uniform Commercial Code § 9-207(c)(2)).  Blockfi does not account to its borrowers for this indirect interest expense.  Blockfi does not disclose this additional interest expense in its advertised interest rates.  Technically, the actual interest rates charged may be *usurious*.

Further exposing consumers to market risks, the Blockfi Contract claims that a mere decline of the price of the Bitcoin may constitute the consumers' default, (Blockfi Contract, ¶ 7(a)) even if the consumer is otherwise current on all interest payments.  Thus, a decline in the volatile price of Bitcoin may result in foreclosure; severely and adversely affecting consumers.  These clauses are tantamount to *forfeiture* clauses.

When the Bitcoin price declines, Blockfi may declare that numerous consumers are in default. On a day like March 12, 2020, Blockfi may engage in mass foreclosures without judicial process.

February 19, 2021
Page 2

That night, the price of bitcoin substantially declined.  As one of Blockfi's borrowers, Blockfi sent me three (3) separate foreclosure notifications relating to that price decline.

In the first foreclosure notice, Blockfi reduced the amount realized by its foreclosure sale during the course of its communications with me.  In the second foreclosure notice, Blockfi notified me the next afternoon of March 13th (the day after the purported foreclosure sale occurred).  In the third foreclosure notice, Blockfi notified me on the evening of March 13th, when the price of bitcoin was about $1,000, or 20%, higher per bitcoin than Blockfi's purported foreclosure price. I asked Blockfi:

> Please let me know the UTC time, exchanges or brokers, types of orders and its price, and how the bitcoins sold were attributable to my collateral specifically. I am mainly concerned because price is one thousand dollars higher at this time.

The requested information was never provided to me.  Blockfi has never provided me with any objectively verifiable proof that *bona fide* foreclosure sales actually occurred.

After the alleged foreclosure sales, I asked Blockfi to sell some of my collateral to pay off my remaining loan and thereafter return any excess collateral.  To conduct this sale, I was charged at least Five Percent (5%) in total fees, but Blockfi disclosed only a One Percent (1%) fee.

In my subsequent litigation, Blockfi strenuously refuses to provide me with any documentation about my foreclosure, collateral, or leases thereof.  During discovery, Blockfi asserts under penalty of perjury that the loan deprived me legal title to my collateral.  Blockfi vaguely admits that they "rehypothecated" my collateral, yet fails to provide any further details.  Blockfi's counsel repeatedly stonewalls and objects to my discovery requests for production of documents.

Perplexingly, three days after the purported foreclosure notifications, Blockfi offered to "reverse" the sales, but only if I would send them an additional amount of money or Bitcoin.  This would place an additional burden on any consumer or borrower.

Blockfi's business model may pose a systemic risk to consumers in your state.  A future decline in the price of bitcoin may result in further foreclosures upon consumers in your jurisdiction.  Also, if Blockfi fails to return Bitcoin belonging to your consumers for any reason, including but not limited to theft, acts of God, insolvency, default or bankruptcy of Blockfi or its transferees, regulatory enforcement actions, execution of judgments, attachment of its assets, criminal forfeiture, civil forfeiture, attachment of liens, or material decline in the price of bitcoin, then the consumers of your state may suffer an impairment or loss of their collateral.

Blockfi is neither a licensed pawnbroker, chartered bank, nor federally licensed broker-dealer.  Blockfi, in its capacity as a lender, is neither regulated by the U.S. Securities and Exchange Commission, U.S. Federal Reserve Board, U.S. Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation, nor the Commodities Futures Trading Commission.  As a result, state regulators have jurisdiction and responsibility to enforce applicable state laws.  This letter does not constitute an opinion as to whether Blockfi has violated your state's laws.

February 19, 2021
Page 3

Your Department may have the statutory authority to audit the books and records of Blockfi, and/or seek injunctive relief, restitution, and otherwise enforce the laws of your state. I am not privy to how many consumers from your state are borrowers of Blockfi, or how many were foreclosed upon by Blockfi on March 12, 2020. Accordingly, you will have to conduct your own investigation to uncover these matters.

As an attorney, I have filed a private attorney general action in California, requesting an injunction to protect the public of California. (*Gerro v. Blockfi Lending LLC, et al.* (Los Angeles Superior Court, Case No. 20STCV31493; *see also Gerro v. Blockfi Lending LLC, et al.* (Los Angeles Superior Court Case No. 20BBCV00308 (Cal. Court of Appeal Case No. B307156).

I am requesting contact information, complaints, and reports relating to consumers who suffered similar foreclosures by Blockfi. Accordingly, I hereby request that you provide me with all available documents and information relating to either Blockfi Lending LLC, or Blockfi Inc.

Please contact the undersigned with any questions, comments, or concerns.

Respectfully,


George J. Gerro
_____

[1] (*See* Blockfi, Loan and Security Agreement (template), ¶ 4(d) https://blockfi.com/wp-content/uploads/2019/09/ALO-Template-9.30.19.pdf ("Blockfi Contract") (accessed 2/18/21).

[2] Assume a consumer borrows $50 from BlockFi. For $50 of loan principal, BlockFi requires the consumer to transfer possession of at least $100 worth of collateral to BlockFi.

If the value of the consumer's collateral declines more than 30%, from $100 to $70 or less, then the consumer is in default. If the consumer fails to send more money or bitcoin to BlockFi, then BlockFi can foreclose upon the consumer after 72 hours. In this example, BlockFi may foreclose upon up to $30 worth of collateral, leaving $20 of debt to BlockFi and $40 of collateral.

Furthermore, if the value of the consumer's collateral declines by 37.5%, from $100 to $62.50 or less, then BlockFi may immediately accelerate the loan balance, and foreclose immediately. BlockFi may sell up to $37.50 worth of consumer's collateral, leaving the consumer with $12.50 of debt to BlockFi and $25 worth of collateral.

As bitcoin's price declines, the consumer suffers from "negative convexity." For example, if the value of the consumer's collateral declines 45%, from $100 to $55.55 (90% loan-to-value ratio), then BlockFi may sell up to $44.45 worth of collateral to re-balance the consumer's loan to a 50% loan-to-value ratio. A is left with $5.55 of debt to Blockfi, and $11.10 of collateral. This last example is most similar to the author's personal experience.

These calculations were deduced from the Blockfi Contract, which expresses the above numbers in terms of "loan-to-value" ratios and refers to the foreclosures as "liquidations."

# EXHIBIT "24"

# EXHIBIT "24"

# EXHIBIT "24"



**COMMONWEALTH OF KENTUCKY**
**PUBLIC PROTECTION CABINET**
**DIVISION OF SECURITIES**
**ADMINISTRATIVE ACTION NO. 2021-AH-00020**

DEPARTMENT OF FINANCIAL INSTITUTIONS                    COMPLAINANT

vs.

BLOCKFI, INC.;
BLOCKFI LENDING, LLC; and
BLOCKFI TRADING, LLC                                    RESPONDENTS

## EMERGENCY CEASE AND DESIST ORDER

Comes now the Department of Financial Institutions (DFI, or the "Department"), pursuant

to Kentucky Revised Statute (KRS) 292.470, KRS 292.500, and 808 Kentucky Administrative

Regulation (KAR) 10:225, and hereby enters this **Emergency Cease and Desist Order** against

BlockFi, Inc., BlockFi Lending, LLC, and BlockFi Trading, LLC, ("Respondents"). In support

thereof, DFI states as follows:

## PARTIES

1.      The Commissioner is responsible for administering the provisions of KRS Chapter

292, the Securities Act of Kentucky ("the Act"), as well as any applicable rules, regulations and

orders entered pursuant to the Act.

2.      BlockFi, Inc., BlockFi Lending, LLC, and BlockFi Trading, LLC (collectively

"BlockFi", or the "Company") are Delaware companies with principal offices located at 1209

Orange Street, Wilmington, Delaware, 19801. BlockFi's registered agent for service of process is

National Registered Agents, Inc. at the same address. BlockFi Lending, LLC, and BlockFi

Trading, LLC, are wholly owned subsidiaries of BlockFi, Inc.

3.      BlockFi Lending, LLC is also registered as a Foreign Limited Liability Company in Kentucky, with a principal office at 155 2nd Street, Suite 112, Jersey City, New Jersey 07302. BlockFi Lending, LLC's registered agent for service of process in Kentucky is National Registered Agents, Inc., at 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

4.      BlockFi Trading, LLC is also registered as a Foreign Limited Liability Company in Kentucky, with a principal office at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302. BlockFi Trading, LLC's registered agent for service of process in Kentucky is National Registered Agents, Inc., at 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

## STATEMENT OF FACTS

5.      On May 27, 2021, DFI became aware that BlockFi was engaging in securities-related activities. Subsequently, the Department conducted an investigation into BlockFi which determined the facts and circumstances described herein.

6.      On June 24, 2021, as a part of its investigation DFI searched BlockFi's website, http://blockfi.com. On this website, BlockFi offers cryptocurrency lending and borrowing services. The website states, among other things, "Earn more from your crypto. With a BlockFi Interest Account (BIA), your cryptocurrency can earn up to 8.6% APY. Interest accrues daily and is paid monthly. There are no hidden fees, no minimum balances, and no reason to wait." Furthermore, BlockFi's website states that a BIA "provides clients with the ability to earn more crypto while holding for long-term investments. Interest is paid monthly and compounds. This significantly increases the potential earnings of long-term account holders."

7.      BIAs are offered on BlockFi's website to anyone over the age of eighteen (18), except for residents of New York and certain foreign jurisdictions. Registering for a BIA also requires a user to verify that they have read and accepted BlockFi's "Terms & Conditions,"

"Interest Account Terms," and "Privacy Policy." These documents are available on the website via hyperlink, although the user is not required to read them when accepting these terms. The website is also available through BlockFi's own proprietary app via smartphone.

8.      BlockFi offers and sells BIAs through individual and business accounts. Through these accounts, investors may deposit certain cryptocurrencies with the Company in exchange for a specified interest rate. The rates currently advertised by BlockFi are well above those offered by similar short-term investment securities or similar certificates of deposit offered by banking institutions.

9.      The BIA "Terms & Conditions" (as available on BlockFi's website) require that a BIA holder completely relinquish control over the assets deposited in their account. Further, the "Interest Account Terms" grant BlockFi the unilateral right to hold the deposited assets, "and to pledge, re-pledge, hypothecate, re-hypothecate, sell, lend, or otherwise transfer, invest or use any amount of such cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining in BlockFi's possession and/or control a like amount of cryptocurrency, and to use or invest such cryptocurrency at its own risk." Under these terms, all BIA holders must be passive investors.

10.      Once an investor's assets have been deposited with the Company, BlockFi pools these assets and uses them to fund the Company's lending and trading operations. The proceeds of these operations are then used to fund interest payments back to the original investor. These interest payments appear to be the motivating factor behind a customer's initial investment.

11.      Through its investigation of the foregoing, DFI has become aware that the Company is offering securities in the form of investment contracts in exchange for the deposit of

assets with the Company. These investment contracts allow passive investors to earn interest on

the assets deposited with the Company, and qualify as securities under the Act.

12.    As these BIAs amount to an "an investment of money in a common enterprise with

profits to come solely from the efforts of others," they qualify as investment contracts and thus

securities under the Act. *See* S.E.C. v. W.J. Howey Co., 328 U.S. 293, 301 (1946).

13.    A review of DFI's records revealed that neither BlockFi nor the securities offered

on its website are registered with the Department as required under the Act. Additionally, neither

BlockFi nor these securities appear to be entitled to any exemption from registration under the Act.

## STATUTORY AUTHORITY

14.    KRS 292.310(19) defines a "security," in relevant part, as:

> "any note, stock, treasury stock, bond, debenture, evidence of indebtedness,
> certificate of interest or participation in any profit-sharing agreement,
> collateral-trust certificate, preorganization certificate or subscription,
> transferable share, investment contract, life settlement investment, voting-
> trust certificate, certificate of deposit for a security; fractional undivided
> interest in oil, gas, or other mineral rights; or, in general, any interest or
> instrument commonly known as a 'security.'"

15.    KRS 292.340 makes it "unlawful for any person to offer or sell any security in this

state, unless the security is registered under this chapter, or the security or transaction is exempt

under this chapter, or the security is a covered security."

16.    Under KRS 292.470, "[w]henever it appears to the commissioner that any person

has engaged or is about to engage in any act or practice constituting a violation of any provision

of this chapter or any rule or order under this chapter, the commissioner may in his or her

discretion:

> Issue a cease and desist order, with or without a prior hearing, appealable to
> Franklin Circuit Court, against the person or persons engaged in the prohibited
> activities directing that person or persons to cease and desist from illegal activity.

In order to issue an order without prior hearing, the commissioner must find that the delay in issuing a final cease and desist order will cause harm to the public. "

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

17.    Based on the facts set forth above, Respondents offered unregistered securities in Kentucky through a publicly available website in violation of the Act. These securities were not registered with the Department as required, and do not qualify for an exemption from registration.

18.    By reason of the foregoing, Respondents have violated the Act and, unless enjoined, will continue to violate the law.

19.    The emergency nature of this Order is required as the delay in issuing a final cease and desist order in this case would cause direct harm to the public due to the Company's current and foreseeable conduct.

20.    Respondents claim to currently hold approximately fifteen billion dollars' ($15,000,000,000) worth of BIAs. Respondents' management of these assets is completely unregulated, and is not subject to any government oversight or approval. Respondents are not currently subject to any disclosure requirements regarding the risks of investing with the Company, or the potential losses than an investor can suffer after opening a BIA. Accounts opened with Respondents are not insured by the Federal Deposit Insurance Corporation, or any other government entity. This lack of oversight coupled with the extremely volatile nature of the cryptocurrencies used to fund Respondents' BIAs has resulted in an unregulated market which represents an unprecedented risk to consumers. Failure of DFI to enter a cease and desist order in this case could result in extensive financial losses to the citizens of the Commonwealth, and consumers harmed in this way may have little to no recourse whatsoever. Accordingly, the emergency nature of this order is essential to protect the interests of the citizens of the Commonwealth.

<u>Violation of KRS 292.340</u>

21.    Per KRS 292.340, it is unlawful for any person to solicit or sell securities in Kentucky without first being registered with the Department to do so.

22.    Through their publicly available website and app, Respondents have solicited securities in Kentucky.

23.    The Department's records show that Respondents have never been registered with the Department, nor have they ever sought registration.

24.    Neither Respondents nor the securities they offered qualify for an exemption from registration.

25.    Therefore, Respondents have violated KRS 292.340 by soliciting securities in Kentucky without being appropriately registered to do so.

## **ORDER**

In light of the foregoing, IT IS HEREBY ORDERED that:

1.    Respondents BlockFi, Inc., BlockFi Lending, LLC, and BlockFi Trading, LLC, shall **CEASE AND DESIST** from soliciting or selling any security in Kentucky unless that security is registered with the Department pursuant to KRS 292.340.

IT IS SO ORDERED on this the 29th day of July, 2021.

CHARLES A. VICE, COMMISSIONER
Department of Financial Institutions
500 Mero Street, Frankfort, Kentucky 40601

Page 6 of 8

134

# EXHIBIT "25"

# EXHIBIT "25"

# EXHIBIT "25"

STATE OF NEW JERSEY
BUREAU OF SECURITIES
P.O. Box 47029
Newark, New Jersey 07101
(973) 504-3600

---

**IN THE MATTER OF:**

·BlockFi Inc.,
BlockFi Lending, LLC, and
BlockFi Trading, LLC,

Respondents.

**SUMMARY CEASE
AND DESIST ORDER**

---

Pursuant to the authority granted to Christopher W. Gerold, Chief of the New Jersey Bureau of Securities ("Bureau Chief"), under the Uniform Securities Law (1997), N.J.S.A. 49:3-47 to -89 ("Securities Law") and certain regulations thereunder, and based upon documents and information obtained during the investigation by the New Jersey Bureau of Securities ("Bureau"), the Bureau Chief hereby finds that there is good cause and it is in the public interest to enter this Summary Cease and Desist Order ("Order") against BlockFi, Inc., BlockFi Lending, LLC, and BlockFi Trading, LLC.

The Bureau Chief makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.      BlockFi, Inc. ("BFI") is a financial services company that generates revenue through cryptocurrency trading, lending, and borrowing, as well as engaging in propriety trading. Since March 4, 2019, BFI, through its affiliates BlockFi Lending, LLC ("BlockFi") and BlockFi Trading, LLC ("Trading") has been, at least in part, funding its lending operations and proprietary trading through the sale of unregistered securities in the form of cryptocurrency interest-earning

accounts.  BlockFi refers to these unregistered securities as its "Crypto Interest Account" or the

"BlockFi Interest Account" (the "BIAs").

2.      BlockFi allows investors to purchase the BIAs by depositing certain eligible

cryptocurrencies into accounts at BlockFi.  BlockFi then pools these cryptocurrencies together to

fund its lending operations and proprietary trading.   In exchange for investing in the BIAs,

investors are promised an attractive interest rate that is paid monthly in cryptocurrency.  The BIAs

are not protected by Securities Investor Protection Corporation (the "SIPC") or insured by the

Federal Deposit Insurance Corporation (the "FDIC").   The BIAs are subject to additional risk,

compared to assets held at SIPC member broker-dealers, or assets held at banks and savings

associations, almost all of which carry FDIC insurance.  Nor are they registered with the Bureau

or any other securities regulatory authority, or exempt from registration.  Despite the additional

risk, and lack of safeguards and regulatory oversight, as of March 31, 2021, BlockFi held the

equivalent of $14.7 billion from the sale of these unregistered securities in violation of the

Securities Law.

3.      The Bureau Chief enters this Order to protect the investing public by halting the

offer and sale of these unregistered securities.   Nothing in this order shall preclude BlockFi,

Trading, or BFI from paying interest on the existing BIAs or refunding principal to the BIA

Investors consistent with the BIA Terms and BlockFi Terms and Conditions.

A.      **The Respondents**

4.      BFI is a Delaware corporation, incorporated on August 1, 2017, with offices at 201

Montgomery Street, Suite 263, Jersey City, New Jersey.  On March 12, 2019, BFI filed as a foreign

corporation with the State of New Jersey, Division of Revenue and Enterprise Services.  BlockFi

and Trading are wholly-owned subsidiaries of BFI.

2

5.      BlockFi is a Delaware limited liability company formed on January 11, 2018, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.  On December 9, 2019, BlockFi filed as a foreign limited liability company with the State of New Jersey, Division of Revenue and Enterprise Services.

6.      Trading is a Delaware limited liability company formed on May 28, 2019, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.  On May 29, 2019, Trading filed as a foreign limited liability company with the State of New Jersey, Division of Revenue and Enterprise Services.

7.      BFI conducts its business on the internet, through a website accessible to the general public at https://www.blockfi.com/ (the "BFI Website"), which is also accessible through BFI's own proprietary app via smartphone.

8.      None of BFI, BlockFi or Trading is presently registered, nor have any of them ever been registered in any capacity with the Bureau.

**B.      The BlockFi BIA Securities**

**a.      BlockFi BIAs**

9.      BlockFi offers and sells BIAs through individual and business accounts.  Investors in these accounts ("BIA Investors") deposit certain popular cryptocurrencies with BlockFi to purportedly earn "up to 7.5 APY."  The purported interest rates advertised by BlockFi are well in excess of the rates currently being offered by short-term investment grade fixed income securities or on bank savings accounts.

10.      BlockFi offers the BIAs to anyone over the age of eighteen, except for residents of New York and certain foreign jurisdictions.

11.      When an investor signs up with BlockFi, they check a box in which they certify that they (i) are 18 years or older and (ii) have read and accepted the "Terms & Conditions",

3

"Interest Account Terms," and "Privacy Policy," which are available via hyperlinks.  Links to these documents also appear in small font type at the bottom of each BFI Website page.

12.     The BIA Interest Account Terms ("BIA Terms") state that BlockFi does not require a minimum amount of cryptocurrency for deposit in a BIA, but reserves the right to institute a minimum deposit amount in the future.

13.     BlockFi only accepts certain types of cryptocurrencies for deposit in a BIA. According to the BFI Website, BIAs can be opened by depositing eligible cryptocurrency with BlockFi's affiliate, Trading, who then transfers the deposited cryptocurrency to BlockFi, or by sending a wire transfer to Trading to purchase eligible cryptocurrency, which Trading then immediately transfers to BlockFi.

14.     According to the BFI Website, BlockFi uses Gemini Trust Company, LLC, a New York trust company; BitGo, an institutional digital asset custodian, as its primary digital asset custodians for the BIAs.

15.     According to the BlockFi Interest Account Agreement for business accounts, corporate BIA Investors are offered a fixed interest rate on a certain minimum amount of digital currency deposits and then for any cryptocurrency deposited in the BIA in excess of the minimum amount, interest accrues at the interest rate "announced" by BlockFi pursuant to the BIA Terms. Despite the BIA Terms indicating that BlockFi does not require a minimum amount of cryptocurrency for deposit in the BIA, the BlockFi Interest Account Agreement for corporate accounts requires a certain minimum amount of digital currency deposits to be maintained in the account at all times until a stated maturity date.

4

16.     BIA Investors with individual accounts earn a variable interest rate on their investment and may withdraw their digital assets at any time, subject to a maximum seven-day processing time specified by BlockFi.

17.     The variable interest rates for the individual account BlockFi BIA Investors are posted on the BFI Website.  How interest is calculated and credited to BIAs is illustrated on the BFI Website and specified in the BIA Terms:



140

**b.**    **BlockFi's Use of the BIA Funds**

25.    The BlockFi BIA Terms provide that a BlockFi BIA Investor relinquishes control over the deposited cryptocurrency to BlockFi and BlockFi is free to use those assets as it sees fit, including commingling cryptocurrency with those of other BIA Investors, investing those assets in the market, and lending those assets to institutional and corporate borrowers.  Without any control over the investments once deposited, the BIA Investors are passive investors.

9

26.      Specifically, Section H, Paragraph 1 of the BIA Terms, "Consent to Utilize

Assets" provides:

> Except where prohibited or limited by applicable law, in
> consideration for the cryptocurrency earned on your account, you
> grant BlockFi the right, without further notice to you, to hold the
> cryptocurrency held in your account in BlockFi's name or in another
> name, and to pledge, repledge, hypothecate, rehypothecate, sell,
> lend, or otherwise transfer, invest or use any amount of such
> cryptocurrency, separately or together with other property, with all
> attendant rights of ownership, and for any period of time and without
> retaining in BlockFi's possession and/or control a like amount of
> cryptocurrency, and to use or invest such cryptocurrency at its own
> risk.

27.      BlockFi then pools these cryptocurrencies together, where according to BlockFi, it

(1) reserves a portion of the cryptocurrencies to meet investor withdrawal demands, (2) lends some

or all of the balance to third parties, or (3) purchases equities, options, and futures for its own

account.  BlockFi uses the revenue from those activities to pay the BIA Investors the agreed-upon

interest rate, and keeps the remainder for itself as profit.

28.      BlockFi does not disclose to investors: (a) the amount of money devoted to each of

these investment activities; (b) the nature and creditworthiness of the borrowers, as well as the

identity of any borrowers to whom BlockFi has lent material amounts of cryptocurrency; (c) the

terms and duration of the loans; (d) the types of equities, options, and futures it trades; or (e) the

profits or losses derived from these activities.

    **c.**      **The BIAs Are Unregistered Securities**

29.      The BFI Website claims that BFI is a "US regulated" entity, and that "[BlockFi]

play[s] by the rules, to the benefit of [BlockFi] and [its] clients." While certain of BlockFi's loan

products appear to be licensed under various state licensing requirements for money services

businesses or money transmitters, the BlockFi BIAs are not currently registered with any federal

10

or state securities regulator, or exempt from registration – as required by law, even though the BIAs are "securities" and subject to such requirements.

30.     BlockFi fails to disclose to BIA Investors that its BIA product is not currently registered by federal or state securities regulatory authorities, even though the BIA is a "security" and should be registered as such.

31.     Further, the BFI Website contains a "Disclosure and Complaints" page which states, "To File a complaint, please contact BlockFi's Customer Service at https://blockfi.com/contact before contacting your jurisdiction with a complaint." It then provides a list of state banking regulators and contact information including the New Jersey Department of Banking and Insurance.  However, BlockFi fails to explain that the New Jersey Department of Banking and Insurance does not license the BIA, or that complaints should be filed with the New Jersey Bureau of Securities, because the BIA is a security.

## CONCLUSIONS OF LAW

### BLOCKFI, TRADING AND BFI OFFERED AND SOLD UNREGISTERED SECURITIES
### N.J.S.A. 49:3-60

32.     The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

33.     The BIAs are securities as defined in N.J.S.A. 49:3-49(m).

34.     The BIAs were and are required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60.

35.     The BIAs have not been registered with the Bureau, are not exempt from registration, and are not federally covered.

36.    BlockFi, Trading and BFI have offered and sold unregistered securities in violation of N.J.S.A. 49:3-60 and continue to do so.

37.    Each violation of N.J.S.A. 49:3-60 is a separate violation of the Securities Law and is cause for the denial of certain exemptions.

38.    N.J.S.A. 49:3-69(a)(1) empowers the Bureau Chief to issue a cease and desist order against persons engaged in prohibited activities, directing them to cease and desist from further illegal activity or doing acts in furtherance thereof.

## **CONCLUSION**

**THEREFORE,** it is on this 19th day of July 2021, **ORDERED** that:

39.    Effective on July 22, 2021, BlockFi, Trading and BFI and any person, agent, employee, broker, partner, officer, director, affiliate, successor, or stockholder thereof, under any of their direction or control shall **CEASE AND DESIST** from:

   a)   offering for sale any security, including any BIA, to or from New Jersey unless the security is registered with the Bureau, is a covered security, or is exempt from registration under the Securities Law; and

   b)   violating any other provisions of the Securities Law and any rules promulgated thereunder for the sale of any security in New Jersey.

40.    Nothing in this order shall preclude BlockFi, Trading, or BFI from paying interest on the existing BIAs or refunding principal to the BIA Investors consistent with the BIA Terms and BlockFi Terms and Conditions.

41.    All exemptions contained in N.J.S.A. 49:3-50 subsection (a) paragraph 9, 10, and 11 and subsection (b) are hereby **DENIED** as to BlockFi, Trading, and BFI.

42.     All exemptions to the registration requirements provided by N.J.S.A. 49:3-56(b),

N.J.S.A. 49:3-56(c), and N.J.S.A. 49:3-56(g) are hereby **DENIED** as to BlockFi, Trading, and

BFI.

Christopher W. Gerold
Chief, New Jersey Bureau of Securities

# EXHIBIT "26"

# EXHIBIT "26"

# EXHIBIT "26"

## STATE OF ALABAMA
## ALABAMA SECURITIES COMMISSION

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| BlockFi Inc. | ) | **ADMINISTRATIVE ORDER** |
| BlockFi Lending, LLC | ) | SC- 2021-0006 |
| BlockFi Trading, LLC | ) | |
| | ) | |
| RESPONDENT | ) | |

## ORDER TO SHOW CAUSE WHY THE ALABAMA SECURITIES COMMISSION SHOULD NOT ORDER RESPONDENTS TO CEASE AND DESIST FROM FURTHER OFFERS OR SALES OF SECURITIES IN THIS STATE

The Alabama Securities Commission ("Commission"), having the authority to administer and provide for the enforcement of all provisions of Title 8, Chapter 6, Code of Alabama 1975, the Alabama Securities Act ("Securities Act"), and Title 8, Chapter 7A, Code of Alabama 1975, the Alabama Monetary Transmission Act ("AMTA"), upon due consideration of the subject matter hereof, has determined as follows:

## RESPONDENTS

1.      **BlockFi Inc. ("BFI")** is a Delaware corporation, incorporated on August 1, 2017, with offices at 86 Chambers Street, Suite 205, New York, New York.

2.      **BlockFi Lending, LLC ("BlockFi")** is a Delaware limited liability company formed on January 11, 2018, with offices at 155 2nd St. Suite 112, Jersey City, New Jersey.  On August 7, 2018, **BlockFi** filed as a foreign corporation with the State of Alabama, Secretary of State.

3.      **BlockFi Trading, LLC ("Trading")** is a Delaware limited liability company formed on May 28, 2019, with offices at 201 Montgomery Street, Suite 263, Jersey City, New

Jersey. On September 24, 2019, **Trading** filed as a foreign corporation with the State of Alabama, Secretary of State.

## SUMMARY

**BFI** is a financial services company that generates revenue through cryptocurrency trading, lending, and borrowing, as well as engaging in propriety trading.  Since March 4, 2019, **BFI**, through its affiliates **BlockFi** and **Trading** has been, in part, funding its lending operations and proprietary trading through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts.  **BlockFi** refers to these unregistered securities as its "Crypto Interest Account" and the "BlockFi Interest Account" (together "BIAs").

**BlockFi** allows investors to purchase the BIAs by depositing certain eligible cryptocurrencies into accounts at **BlockFi**.  **BlockFi** then pools these cryptocurrencies together to fund its lending operations and proprietary trading.  In exchange for investing in the BIAs, investors are promised an attractive interest rate that is paid monthly in cryptocurrency.  The BIAs are not protected by SIPC or insured by the FDIC.  The BIAs are not registered with the Commission or any other securities regulatory authority, or subject to a perfected exemption from registration as required by the Securities Act.  Despite the lack of safeguards and regulatory oversite, as of March 31, 2021, **BlockFi** had received the equivalent of $14.7 billion from the sale of these unregistered securities in violation of the Securities Law.[1]

---

[1] What are the risks with depositing my crypto at BlockFi? – BlockFi

## STATEMENT OF FACTS
### The BlockFi BIA Securities

4.     **BlockFi** offers and sells BIAs as individual and corporate accounts.  Investors in these accounts ("**BlockFi** Investors") deposit certain popular cryptocurrencies with **BlockFi** to purportedly earn "up to 8.6 APY."

5.     **BlockFi** offers the BIAs to anyone (including residents of this state) over the age of eighteen, except for residents of New York and certain foreign jurisdictions.

6.     When an investor signs up with **BlockFi**, they check a box in which they certify that they (i) are 18 years or older and (ii) have read and accepted the "Terms & Conditions", "Interest Account Terms," and "Privacy Policy," which are available via hyperlinks.  Links to these documents also appear in small font type at the bottom of each BlockFi Website page.

7.     According to the **BlockFi** Website, BIAs can be opened by depositing eligible cryptocurrency with **BlockFi's** affiliate, **Trading**. **Trading** then transfers the deposited cryptocurrency to **BlockFi**. Investors may also send a wire transfer to **Trading** to purchase eligible cryptocurrency, which **Trading** then immediately transfers to **BlockFi**.[2],[3]

8.     **BlockFi** uses Gemini Trust Company, LLC, a New York trust company, BitGo, an institutional digital asset custodian, or Coinbase, another institutional digital asset custodian, as its primary digital asset custodians for the BIAs.[4]

9.     BIA investors are offered a fixed interest rate for a certain minimum amount and then for any cryptocurrency deposited in the BIA exceeding the set minimum, interest accrues at

---

[2] BIA Terms at B. 1, 3.
[3] BIA Terms at B. 1, 3.
[4] Bitcoin Savings Accounts: How Do BlockFi Crypto Savings Work?; How is BlockFi different from competitors? – BlockFi

a variable interest rate "announced" by **BlockFi** pursuant to the BIA Interest Account Terms ("BIA Terms").

10.    Individual BIA investors earn a variable interest rate on investment and may withdraw their digital assets at any time, subject to a seven-day processing time specified by **BlockFi**.[5]

11.    The variable interest rates for the individual **BlockFi** BIA investors are posted on the **BlockFi** Website.[6] How interest is calculated and credited to BIAs is illustrated on the **BlockFi** Website and specified in the BIA Terms.[7]

12.    **BlockFi** states that the interest rates payable by **BlockFi** on BIAs are subject to change in BlockFi's sole discretion and may change monthly.[8] **BlockFi**'s current policy is to notify BIA customers of interest rate changes before they are implemented. **BlockFi** notes that changes are typically effective the first business day of the month.

13.    **BlockFi** advertises that interest on the BIAs is paid to investors in cryptocurrency, is calculated on the daily balance method, and is credited to the BIA customers' accounts monthly.[9]

14.    The **BlockFi** Website advertises that the BIA "provides market-leading yields to crypto investors"[10] and currently advertises an annual return of up to 8.6% on certain digital assets deposited in a BIA.

15.    The **BlockFi** Website advertises the BIAs as part of a long-term investment strategy for investors, claiming that the BIAs:

---

[5] Bitcoin Savings Accounts: How Do BlockFi Crypto Savings Work?
[6] Crypto Interest Rates | BlockFi Interest Account (BIA) Rate
[7] BIA Terms at D paras 1,2.
[8] BIA Terms at D, paras. 1, 2.
[9] BIA Terms at D paras. 1, 2 and E, para. 1.
[10] What is the BlockFi Interest Account (BIA)? – BlockFi

"provides clients with the ability to earn more crypto while holding for long-term investments. Interest is paid monthly and compounds. This significantly increases the potential earnings of long-term account holders."[11]

The **BlockFi** Website includes a chart stating "**BlockFi's** Interest Account works hardest for you as a long-term investment," which claims to illustrate the projected effect of holding a BIA as a long-term investment.

### BlockFi's Use of the BIA Funds

16.    The **BlockFi** BIA Terms provide that a **BlockFi** BIA investor relinquishes control over the deposited cryptocurrency to **BlockFi** and **BlockFi** is free to use those assets as it sees fit including, commingling cryptocurrency with those of other BIA investors, investing those assets in the market, and lending those assets to institutional and corporate borrowers.

17.    Specifically, Section H, Paragraph 1 of the BIA Terms, "Consent to Utilize Assets" provides:

> Except where prohibited or limited by applicable law, in consideration for the cryptocurrency earned on your account, you grant **BlockFi** the right, without further notice to you, to hold the cryptocurrency held in your account in **BlockFi's** name or in another name, and to pledge, repledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, invest or use any amount of such cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining in **BlockFi's** possession and/or control a like amount of cryptocurrency, and to use or invest such cryptocurrency at its own risk.[12]

18.    **BlockFi** then pools these cryptocurrencies together, where according to **BlockFi**, it (1) reserves a portion of the cryptocurrencies to meet investor withdrawal demands, (2) lends some or all of the balance to third parties, or (3) purchases equities, options, and futures for its own account.[13]  **BlockFi** uses the revenue from those activities to pay the BIA investors the agreed upon interest rate, and keeps the remainder for itself as profit.

---

[11] What are the benefits of using BlockFi's services? – BlockFi
[12] BIA Terms at Section H, Paragraph 1
[13] https://blockfi.com/earn-bitcoin

19.    **BlockFi** does not disclose to investors: (a) the amount of money devoted to each of these investment activities; (b) the nature and creditworthiness of the borrowers, as well as the identity of any borrowers to whom **BlockFi** has lent material amounts of cryptocurrency; (c) the terms and duration of the loans; (d) the types of equites, options, and futures it trades; or (e) the profits or losses derived from these activities.

## The BIAs Are Unregistered Securities

20.    The **BlockFi** Website claims that it is a "US regulated" entity, and that "[BlockFi] play[s] by the rules, to the benefit of [BlockFi] and [its] clients."[14]  While certain of **BlockFi's** loan products appear to be licensed under various state licensing requirements for money services businesses or money transmitters, the **BlockFi** BIAs are not currently registered with any federal or state securities regulator, or exempt from registration – as required by law, even though the BIAs is a "security" and subject to such requirements.

21.    **BlockFi** fails to disclose to BIA investors that its BIA product is not currently registered by federal or state authorities, even though the BIA is a "security".

## CONCLUSIONS OF LAW

22.    Pursuant to Section 8-6-2(10), <u>Code of Alabama 1975</u>, the definition of security includes any "investment contract." The investment programs, identified as the "BIAs", constitute the solicitation of an investment of money; from which an investment return is expected; with such investment return based on the managerial efforts of **RESPONDENTS**. The solicited investments, identified as the "BIAs", are "investment contracts" and are securities under the Securities Act.

23.    Pursuant to Section 8-6-4, <u>Code of Alabama 1975</u>, it is unlawful for any person to offer or sell any security in this state unless said security is: (1) registered under the Securities Act; (2) the security is exempt from registration under section 8-6-10; or (3) the transaction is exempt under section 8-6-11. The securities offered by **RESPONDENTS**; to wit: the investment contracts

---

[14] <u>How is BlockFi different from competitors? – BlockFi</u>

described as "BIAs", are neither registered nor subject to a perfected exemption from registration in Alabama and are being offered and/or sold in violation of the Securities Act.

24.    Pursuant to Section 8-6-30, Code of Alabama 1975, the burden of proving an exemption from registration or an exception from a definition under the Act is on the person claiming the exemption or exception.  **RESPONDENTS** must demonstrate compliance with the registration provisions of the Act or demonstrate why such instruments should not be required to be registered.

25.    Pursuant to Section 8-6-16, Code of Alabama 1975, the Commission may issue a cease and desist order, with or without prior hearing, against any person whom the Commission has reason to believe is participating in any act or practice constituting a violation of the Act.

This Order is appropriate in the public interest for the protection of investors and consistent with the purposes of the Act.

This Order does not prevent the Commission from seeking such other civil or criminal remedies that may be available to it under the Act.

If the allegations set forth herein are found to be true, through either administrative adjudication or default of the **RESPONDENTS**, it is the intention of the Commission to impose sanctions upon the **RESPONDENTS**.  Such sanctions may include, inter alia, an administrative assessment imposed on **RESPONDENTS**, an additional administrative assessment for investigative costs arising from the investigation of the violation(s) described herein against **RESPONDENTS**, and a permanent order to bar **RESPONDENTS** from participation in any securities related industry in the state of Alabama.  Failure to respond within 28 days of service of this Order shall be deemed a waiver of the right to a hearing and will result in the entry of a final order directing **RESPONDENTS** to cease and desist from violating the Alabama Securities Act and permanently barring **RESPONDENTS** from participation in any securities related industry in the state of Alabama.

**ACCORDINGLY, IT IS HEREBY ORDERED** that **RESPONDENTS SHOW
CAUSE** to the Commission within 28 days of the date of this **ORDER**, why **RESPONDENTS**
should not be ordered to cease and desist from any further violations of the Alabama Securities
Act.

Entered at Montgomery, AL, this ___30th___ day of ___July___, 2021.

ALABAMA SECURITIES COMMISSION
P.O. Box 304700
Montgomery, AL 36130-4700
(334)242-2984
BY:

Joseph P. Borg
Director

# EXHIBIT "27"

# EXHIBIT "27"

# EXHIBIT "27"

155

TRAVIS J. ILES
SECURITIES COMMISSIONER

CLINTON EDGAR
DEPUTY SECURITIES COMMISSIONER

Mail: P.O. BOX 13167
AUSTIN, TEXAS 78711-3167

Phone: (512) 305-8300
Facsimile: (512) 305-8310



## Texas State Securities Board

208 E. 10th Street, 5th Floor
Austin, Texas 78701-2407
www.ssb.texas.gov

E. WALLY KINNEY
CHAIR

KENNY KONCABA
MEMBER

ROBERT BELT
MEMBER

MELISSA TYROCH
MEMBER

EJIKE E OKPA II
MEMBER

SOAH DOCKET NO. 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

| | | |
|---|---|---|
| TEXAS STATE SECURITIES BOARD,<br>Petitioner | § | BEFORE THE STATE OFFICE |
| | § | |
| | § | |
| v. | § | OF |
| | § | |
| BLOCKFI, INC., BLOCKFI LENDING, | § | |
| LLC, AND BLOCKFI TRADING, LLC, | § | |
| Respondents | § | ADMINISTRATIVE HEARINGS |

**BLOCKFI, INC.**
Service by (1) certified mail, return receipt requested, addressed to 155 2nd Street, Suite 112, Jersey City, New Jersey 07302; (2) certified mail, return receipt requested, addressed to 86 Chambers Street, New York, New York 10007; (3) certified mail, return receipt requested, addressed to its counsel Kit Addleman, Partner, Haynes and Boone LP, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219; and (4) electronic mail to its counsel, Kit Addleman, at kit.addleman@haynesboone.com.

**BLOCKFI LENDING, LLC**
Service by (1) certified mail, return receipt requested, addressed to 155 2nd Street, Suite 112, Jersey City, New Jersey 07302; (2) certified mail, return receipt requested, addressed to 86 Chambers Street, New York, New York 10007; (3) certified mail, return receipt requested, addressed to its counsel Kit Addleman, Partner, Haynes and Boone LP, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219; and (4) electronic mail to its counsel, Kit Addleman, at kit.addleman@haynesboone.com.

**BLOCKFI TRADING, LLC**
Service by (1) certified mail, return receipt requested, addressed to 155 2nd Street, Suite 112, Jersey City, New Jersey 07302; (2) certified mail, return receipt requested, addressed to 86 Chambers Street, New York, New York 10007; (3) certified mail, return receipt requested, addressed to its counsel Kit Addleman, Partner, Haynes and Boone LP, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219; and (4) electronic mail to its counsel, Kit Addleman, at kit.addleman@haynesboone.com.

## NOTICE OF HEARING

This is your OFFICIAL NOTICE that a hearing will commence at **9:00 AM on OCTOBER 13, 2021,** before an Administrative Law Judge. The hearing is being held via videoconference for the purpose of determining whether to issue a proposal for decision for the entry of a CEASE AND DESIST ORDER against BlockFi, Inc. ("Respondent BlockFi"), BlockFi Lending, LLC ("Respondent BlockFi Lending"), and BlockFi Trading, LLC ("Respondent BlockFi Trading").

This hearing will be held pursuant to the Securities Act, Tex. Rev. Civ. Stat. Ann. arts. 581-1-581-45 (the "Securities Act"), the Rules and Regulations of the State Securities Board, 7 Tex. Admin. Code §§101.1-139.27 (2019) (Tex. State Sec. Bd.) (the "Board Rules"), the Administrative Procedure Act, Tex. Gov't Code Ann. §§2001.001-2001.902 (the "Administrative Procedure Act"), and the Rules of Practice and Procedure of the State Office of Administrative Hearings, 1 Tex. Admin. Code Chapter 155 (2019) (State Ofc. of Admin. Hearings) (the "SOAH Rules").

### BLOCKFI AND THE CRYPTO INTEREST ACCOUNTS

1.      Respondent BlockFi is a financial services company that generates revenue through cryptocurrency trading, lending, and borrowing, as well as engaging in propriety trading and other types of transactions.

2.      Respondent BlockFi, through its wholly owned subsidiaries Respondent BlockFi Lending and Respondent BlockFi Trading, is, in part, illegally funding its lending operations and proprietary trading through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts.

3.      Respondent BlockFi refers to the cryptocurrency interest-earning accounts as "BlockFi Interest Accounts" (the "BIAs").

4.      Respondent BlockFi permits Texans and other investors at least eighteen years old to apply to purchase the BIAs through its website or smartphone application. Signing up for a BIA takes less than 2 minutes.

5.      Investors open accounts by transferring eligible cryptocurrency to a wallet address. The cryptocurrency is then accepted by Respondent BlockFi Trading and transferred to Respondent BlockFi Lending, and Respondent BlockFi Lending acts as the holder of the BIA.

6.      Investors relinquish control over their cryptocurrencies and Respondent BlockFi Lending reserves a portion of the cryptocurrencies to meet investor withdrawal demands. It is otherwise free to use the cryptocurrencies consistent with the terms of the BIAs, including commingling cryptocurrencies with cryptocurrencies deposited by other investors, investing those cryptocurrencies in the market, purchasing equities, and lending those cryptocurrencies to institutional and corporate borrowers.

7.    In exchange for consideration received in the present, Respondent BlockFi is promising to pay lucrative interest rates in the future. Respondent BlockFi is currently promoting the interest rates through its website, which recently advertised an annual return of up to 8.6 percent on certain cryptocurrencies for retail investors - well in excess of the rates currently being offered for short-term, investment grade, fixed income securities or for bank savings accounts.

8.    The accrual of interest begins the day after investors transfer cryptocurrencies to Respondent BlockFi Trading, and interest is compounded monthly.

9.    Retail investors may withdraw their cryptocurrencies at any time, subject to certain processing times.

10.   As of March 31, 2021, Respondent BlockFi has more than $15,000,000,000.00 in assets under management and more than 350,000 funded accounts from the sale of BIAs.

11.   As of June 9, 2021, Respondent BlockFi has more than $691,000,000.00 in assets under management from more than 25,000 Texas residents.

## THE LACK OF REGISTRATION AND PUBLIC PROTECTIONS

12.   Respondent BlockFi Trading is licensed only as a Money Service Business in Texas. The license is limited to and extends only to conducting currency exchange or money transmission activities defined by Chapter 151 of the Texas Finance Code.

13.   Respondents are not licensed with the United States Securities and Exchange Commission. Additionally, they are not registered with the Texas State Securities Board to offer or sell securities in Texas, as required by Section 12 of the Securities Act, and the BIAs are not registered or permitted for sale in Texas, as required by Section 7 of the Securities Act. Accordingly, Respondents are violating laws designed to protect Texans.

14.   The BIAs are also not protected by Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers.

15.   The BIAs are also not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions.

## THE UNDISCLOSED RISKS

16.   Respondent BlockFi is not disclosing material information necessary for investors to make an informed decision, including critical material information about the risks associated with purchasing its unregistered securities.

17.     This material information includes, without limitation, the amount of money devoted to permissive uses, the identity, nature, and creditworthiness of borrowers, the type and nature of transactions involving equities, options and futures, the risks associated with individual equities, options and futures, the profits and/or losses derived from transactions, and financial information reflecting the assets and liabilities and cashflow.

## THE VIOLATIONS OF THE SECURITIES ACT

18.     The Securities Act regulates the offer and sale of securities in Texas.

19.     Section 4.A of the Securities Act defines the term securities to include traditional products such as stocks and bonds. The statute also broadly defines the term securities to include investment contracts, notes, and evidences of indebtedness – broad categories of products that capture the endless number of unique and innovative investment schemes continuously introduced into the market.

20.     The mere fact an investment is tied to a cryptocurrency, blockchain technology, or some type of digital asset does not remove it from securities regulation if it constitutes an investment contract, note, evidence of indebtedness, or other type of security.

21.     Based on the information and allegations set forth herein, the BIAs constitute investment contracts, notes, or evidences of indebtedness regulated as securities as that term is defined by Section 4.A of the Securities Act.

22.     Based on the information and allegations set forth herein, Respondents are violating Section 7 of the Securities Act by offering and selling securities in Texas that are not registered or permitted for sale in Texas.

23.     Based on the information and allegations set forth herein, Respondents are also violating Section 12 of the Securities Act by offering and selling securities in Texas without first being registered as dealers or agents.

## THE NOTIFICATION AND REQUEST FOR COMPLIANCE

24.     On or about April 20, 2021, the Enforcement Division of the State Securities Board (the "Enforcement Division") notified Respondent BlockFi that Respondents may have offered securities in Texas that may not comply with the Securities Act.

25.     The Enforcement Division also explained the regulation of the securities market in Texas, including the identification of laws that require the registration of securities, the registration of dealers and agents, and the truthful disclosure of all known material facts.

26.     Nevertheless, Respondents have continued to offer the BIAs to Texans in violation of Sections 7 and 12 of the Securities Act.

## REMEDIES

27. The Enforcement Division is praying for a proposal for decision for the entry of an order that Respondents immediately cease and desist from violating Sections 7 and 12 of the Securities Act.

28. Although this Notice of Hearing is praying for a proposal for decision for an order to cease and desist from violating Sections 7 and 12 of the Securities Act, nothing set forth herein shall preclude the Enforcement Division, consistent with applicable law and rule, from pursuing other enforcement remedies, such as filing an amended Notice of Hearing praying for a proposal for decision that orders the assessment of an administrative fine or the payment of a refund/restitution to Texans.

## EXISTING CLIENT ACCOUNTS

29. This Notice of Hearing, and the prayers contained herein, do not preclude Respondents from paying interest or returns to existing clients, refunding principal to investors consistent with the terms of the BIAs, or otherwise lawfully dealing with existing clientele.

## THE HEARING

30. The hearing will be held before the State Office of Administrative Hearings. It will commence at **9:00 AM on OCTOBER 13, 2021**.

31. The State Office of Administrative Hearings may conduct the hearing via Zoom. Zoom is a video conferencing platform for meetings held through the internet. The State Office of Administrative Hearings will provide instructions for accessing the hearing via Zoom.

32. At the hearing, the Enforcement Division will present testimony and other admissible evidence in support of its prayer for a proposal for decision for the entry of a CEASE AND DESIST ORDER against Respondents. Respondents will be afforded the right to present such testimony and other evidence related thereto.

## LEGAL NOTIFICATIONS

33. Legal authority and jurisdiction for this matter exist under Section 23 of the Securities Act, Section 2003.021(b) of the Texas Government Code and Rule 155.51 of the SOAH Rules.

34. **IF YOU DO NOT FILE A WRITTEN ANSWER OR OTHER WRITTEN RESPONSIVE PLEADING TO THIS NOTICE OF HEARING ON OR BEFORE THE 20TH DAY AFTER THE DATE ON WHICH THIS NOTICE WAS MAILED TO YOU OR PERSONALLY SERVED ON YOU, THE FACTUAL ALLEGATIONS IN THIS NOTICE COULD BE DEEMED ADMITTED, AND THE SECURITIES COMMISSIONER MAY DISPOSE OF THIS CASE WITHOUT A HEARING AND MAY GRANT THE RELIEF SOUGHT IN THIS NOTICE. THE RESPONSE MUST BE FILED IN AUSTIN, TEXAS, WITH THE SECURITIES COMMISSIONER AND THE STATE OFFICE OF ADMINISTRATIVE HEARINGS, AND ALSO SERVED ON THE STAFF OF THE STATE SECURITIES BOARD. IF YOU FAIL TO**

160

**ATTEND THE HEARING, EVEN IF A WRITTEN ANSWER OR OTHER RESPONSIVE PLEADING HAS BEEN FILED AND SERVED, THE FACTUAL ALLEGATIONS IN THIS NOTICE COULD BE DEEMED ADMITTED, AND THE SECURITIES COMMISSIONER MAY DISPOSE OF THIS CASE WITHOUT A HEARING AND MAY GRANT THE RELIEF SOUGHT IN THIS NOTICE.**

**35.** **PARTIES THAT ARE NOT REPRESENTED BY AN ATTORNEY MAY OBTAIN INFORMATION REGARDING CONTESTED CASE HEARINGS ON THE PUBLIC WEBSITE OF THE STATE OFFICE OF ADMINISTRATIVE HEARINGS AT WWW.SOAH.TEXAS.GOV, OR IN PRINTED FORMAT UPON REQUEST TO THE STATE OF ADMINISTRATIVE HEARINGS.**

36.   Respondents may access the Securities Act and the Board Rules through the website of the State Securities Board at www.ssb.texas.gov. Respondents may also access the SOAH Rules through the website of the State Office of Administrative Hearings at www.soah.texas.gov and the Administrative Procedure Act through Texas Legislature Online at statutes.capitol.texas.gov.

37.   The Securities Act authorizes the Texas State Securities Board to pursue administrative, civil, or criminal enforcement cases. The Securities Act and Board Rules also authorize the Texas State Securities Board to share information with and refer cases to other governmental agencies with administrative, civil, or criminal jurisdiction. These other governmental agencies include, without limitation, state and federal regulatory agencies, law enforcement agencies and prosecutors' offices. Therefore, any information provided, filed, or otherwise supplied by Respondents may be shared with these other government agencies and/or used in other cases. Whether the Texas State Securities Board makes its files available to other governmental agencies or refers cases to other government agencies is typically confidential pursuant to Section 28 of the Texas Securities Act.

38.   Pursuant to Board Rule 105.13, the Enforcement Division is now respectfully requesting and will continue to respectfully request the State Office of Administrative Hearings order all costs charged to the Texas Securities Board by any court reporting service be assessed against Respondents.

39.   Persons with disabilities who need special accommodations at the hearing, whether held at the State Office of Administrative Hearings or through an audio or video conferencing platform, should contact the Docketing Department of the State Office of Administrative Hearings at 512-475-4993 at least one week prior to the hearing.

<u>CONTACT AND FILING INFORMATION</u>

40.   The Enforcement Division is represented by Rachel Anderson Rynders, Attorney, Enforcement Division. Ms. Anderson Rynders' State Bar Card Number is 24103132, her work address 208 E. 10th Street, 5th Floor, Austin, Texas 78701, her telephone number is 512-305-8392, her facsimile number is 512-355-0404, and her email address is rrynders@ssb.texas.gov.

41. The Docketing Office of the State Office of Administrative Hearings is located at 300 W. 15th Street, Austin, Texas 78701, and it may be contacted by telephone at 512-745-3445 and by facsimile at 512-475-4994.

42. The State Office of Administrative Hearings may conduct the hearing via audio or video conferencing. The audio and video conferencing platforms are secure, free meetings held telephonically or through the internet. The State Office of Administrative Hearings will provide instructions for all hearings held telephonically or through a video conferencing platform.

43. Persons with disabilities who need special accommodations at the hearing, whether held at the State Office of Administrative Hearings or through an audio or video conferencing platform, should contact the Docketing Department of the State Office of Administrative Hearings at 512-475-4993 at least one week prior to the hearing.

44. Pursuant to Board Rule 105.8, all documents filed by any party, other than business records and transcripts, must be contemporaneously served upon Marlene Sparkman, General Counsel and Securities Commissioner's Representative. Ms. Sparkman's address is 208 E. 10th Street, 5th Floor, Austin, Texas 78701, her telephone number is 512-305-8300, her facsimile number is 512-305-8336, and her email address is msparkman@ssb.texas.gov.

Signed on this, the 22nd day of July 2021

By: _____

Joe Rotunda
State Bar No. 24029808
Division Director, Enforcement Division
Texas State Securities Board
208 E. 10th Street, 5th Floor
Austin, Texas 78701
T: 512-305-8392
F: 512-355-0404
E: jrotunda@ssb.texas.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 22nd day of July 2021, true and correct copies of this Notice of Hearing are being served on the following parties through the means set forth below:

MARLENE SPARKMAN, General Counsel for the State Securities Board and the Securities Commissioner's Representative, is being served by electronic mail addressed to msparkman@ssb.texas.gov.

Notice of Hearing/BlockFi Inc., et al./Page 7

# EXHIBIT "28"

# EXHIBIT "28"

# EXHIBIT "28"

**STATE OF VERMONT
DEPARTMENT OF FINANCIAL REGULATION**

|  |  |  |
|---|---|---|
| IN RE:<br>BLOCKFI INC., BLOCKFI LENDING LLC, AND<br>BLOCKFI TRADING LLC | ) ) ) ) ) ) | DOCKET NO. 21-025-S |

**SHOW CAUSE ORDER**

The Vermont Department of Financial Regulation (the "Department"), having the authority to administer and provide for the enforcement of all provisions of 9 V.S.A. Chapter 150, the Vermont Uniform Securities Act of 2002 (the "Securities Act"), upon due consideration of the subject matter hereof, has determined as follows:

**JURISDICTION**

1.  The Commissioner of Financial Regulation is responsible for administering and enforcing the securities laws of the State of Vermont and is authorized to investigate companies to determine compliance with Vermont law and issue orders imposing remedial actions and civil administrative penalties, pursuant to 9 V.S.A. §§ 5601-5605.

2.  Pursuant to 9 V.S.A. § 5604(a)(1), the Commissioner may issue orders or directives to any person to cease and desist from specific conduct if the Commissioner finds that the person has engaged, is engaging or is about to engage in an act, practice or course of business which constitutes a violation of the Securities Act.

3.  Pursuant to 9 V.S.A. § 5604(b) and Section 13 of Department Regulation 82-1 (Revised), the Commissioner may issue such orders without prior notice or an opportunity to be heard.

4.  Pursuant to 9 V.S.A. § 5604, the Commissioner may: (1) impose a civil administrative penalty for each violation of the Securities Act, an administrative rule of the Department,

or an order of the Commissioner relating to securities, of up to $15,000 per violation; and

(2) require a company to make restitution or provide disgorgement of any sums shown to

have been obtained in violation of the Securities Act, plus interest at the legal rate.

## <u>RESPONDENTS</u>

5.    BlockFi Inc. ("<u>BlockFi</u>") is a Delaware corporation that conducts business in the State of

Vermont.  BlockFi's principal place of business is located at 201 Montgomery Street, Suite

263, Jersey City, NJ 07302.

6.    BlockFi Lending LLC ("<u>BlockFi Lending</u>"), a wholly owned subsidiary of BlockFi, is a

Delaware limited liability company that conducts business in the State of Vermont.

BlockFi Lending's principal place of business is located at 155 2nd Street, Suite 112, Jersey

City, NJ 07302.  BlockFi Lending is registered with the Vermont Secretary of State as a

foreign limited liability company.

7.    BlockFi Trading LLC ("<u>BlockFi Trading</u>"), a wholly owned subsidiary of BlockFi, is a

Delaware limited liability company that conducts business in the State of Vermont.

BlockFi Trading's principal place of business is located at 201 Montgomery Street, Suite

263, Jersey City, NJ 07302.  BlockFi Trading is registered with the Vermont Secretary of

State as a foreign limited liability company.

8.    BlockFi, BlockFi Lending, and BlockFi Trading are referred to herein collectively as the

"<u>Respondents</u>."

## <u>BACKGROUND AND FINDINGS OF FACT</u>

### <u>The Crypto Interest Accounts</u>

9.    BlockFi is a financial services company that generates revenue through cryptocurrency

trading, lending, and borrowing, as well as propriety trading and other types of transactions.

10.  BlockFi, through its wholly owned subsidiaries BlockFi Lending and BlockFi Trading, is, in part, funding its lending operations and proprietary trading through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts to residents of Vermont and investors in other states.

11.  BlockFi refers to the cryptocurrency interest-earning accounts as "BlockFi Interest Accounts" (the "BIAs").

12.  BlockFi permits Vermont residents and other investors at least eighteen years old to invest in the BIAs through its website or smartphone application.

13.  Investors open their BIAs by transferring eligible cryptocurrency to a digital wallet address. The cryptocurrency is then accepted by BlockFi Trading and transferred to BlockFi Lending, which acts as the issuer of the BIA.

14.  When investors contribute cryptocurrency to their BIAs, they exchange that digital asset for a contractual obligation of BlockFi Lending to return the same amount of that cryptocurrency, plus any interest earned.

15.  Investors relinquish control over cryptocurrencies but retain a right to withdraw; BlockFi Lending purports to reserve a portion of the cryptocurrencies to meet investor withdrawal demands.  BlockFi Lending is otherwise free to use the cryptocurrencies consistent with the terms of the BIAs, including commingling cryptocurrencies with cryptocurrencies deposited by other investors, investing those cryptocurrencies in the market, purchasing equities, and lending those cryptocurrencies to institutional and corporate borrowers.

16.  In exchange for consideration (i.e. deposits) received in the present, BlockFi is promising to pay lucrative interest rates in the future.  BlockFi is currently promoting the interest rates through its website, which advertises annual returns on cryptocurrencies for retail investors

well in excess of the rates currently being offered by short-term investment grade fixed income securities or on bank savings accounts.

17.  The accrual of interest begins the day after investors transfer cryptocurrencies to BlockFi and interest is compounded monthly.

18.  Retail investors may withdraw their cryptocurrencies at any time, subject to certain processing times.

19.  As of March 31, 2021, BlockFi had over $14.3 billion in outstanding BIA liabilities and more than 300,000 funded accounts from the sale of BIAs, including the sale of BIAs to Vermont residents.

<u>The Lack of Registration and Public Protections</u>

20.  Respondents are not registered with the Vermont Department of Financial Regulation to offer or sell securities in Vermont.

21.  The BIAs are not registered or permitted for sale in Vermont, nor do they qualify for any exemption from registration pursuant to the Securities Act.

22.  Respondents are not registered with the United States Securities and Exchange Commission (the "SEC").

23.  Respondents did not file or cause to be filed a registration statement with the SEC in connection with the offer and sale of the BIAs.

24.  Respondents are not disclosing material information to BIA investors that issuers of registered securities must include in a registration statement and provide to prospective investors in the form of a prospectus pursuant to the Subchapter 3 of the Securities Act and Section 6-1 of the Vermont Securities Regulation.

25.    The BIAs are not protected by Securities Investor Protection Corporation, otherwise known

as the SIPC, a federally mandated, non-profit, member-funded United States corporation

created under the Securities Investor Protection Act of 1970 that mandates membership of

most US-registered broker-dealers.

26.    The BIAs are also not insured by the Federal Deposit Insurance Corporation, otherwise

known as the FDIC, an agency that provides deposit insurance to depositors in the United

States, or the National Credit Union Administration, otherwise known as the NCUA, an

agency that regulates and insures credit unions.

### The Department's Notice to BlockFi of Potential Registration Violations

27.    On or about August 28, 2020, BlockFi Lending applied for a Vermont lender license.

28.    As part of its review of BlockFi Lending's application for a Vermont lender license, the

Department requested that Respondents provide information regarding all BIAs held by

Vermont residents.  Respondents complied with this request, which confirmed that many

Vermont residents hold BIAs.

29.    On or about January 7, 2021, the Department notified BlockFi Lending that the BIAs

appear to be securities and requested that BlockFi Lending explain how Respondents'

offering of BIAs complies with or is exempt from the registration and reporting

requirements of the Securities Act, as well as the Securities Act of 1933, and the Securities

Exchange Act of 1934. Respondents provided an unsatisfactory response to the

Department's request.

30.    Respondents have continued to offer the BIAs to Vermonters without complying with the

registration requirements set forth in this Show Cause Order.

## CONCLUSIONS OF LAW

31.    Pursuant to 9 V.S.A. § 5301, "[i]t is unlawful for a person to offer or sell a security in this

State unless: (1) the security is a federal covered security; (2) the security, transaction, or

offer is exempted from registration under sections 5201 through 5203 of this chapter; or

(3) the security is registered under this chapter."

32.    Pursuant to 9 V.S.A § 5102(28), the term "security" includes notes, investment contracts,

evidence of indebtedness, and related types of participation in profit-sharing agreements.

Section 5102(28)(D) specifies that the Securities Act's definition of security includes "an

investment in a common enterprise with the expectation of profits to be derived primarily

from the efforts of a person other than the investor and a 'common enterprise' means an

enterprise in which the fortunes of the investor are interwoven with those of either the

person offering the investment, a third party, or other investors." *Id.* (adopting the

definition set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), commonly referred to

as the "*Howey* test").

33.    The BIAs offered by Respondents are securities within the meaning of Section 5102(28).

34.    The BIAs were neither federal covered securities nor registered with the Department nor

exempted from registration when Respondents offered or sold them to Vermont investors.

35.    Accordingly, Respondents are in violation of 9 V.S.A. § 5301.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED that Respondents show cause to the

Commissioner, within thirty (30) days of the date of this Order, why an order should not be entered

by the Commissioner directing Respondents to cease and desist offering BIAs in Vermont, and

further, as a condition of such order, to pay restitution and meet such other terms and conditions

as the Commissioner deems appropriate under 9 V.S.A. § 5604, including, but not limited to a civil

penalty of not more than $15,000.00 for each violation.


Dated at Montpelier, Vermont this 22nd day of July, 2021.


By: _____

Michael S. Pieciak
Commissioner of Financial Regulation
Vermont Department of Financial Regulation

# EXHIBIT "29"

# EXHIBIT "29"

# EXHIBIT "29"

 Gmail

George Gerro <georgejgerro@gmail.com>

---

## Fw: PRA 3147

---

**LeKander, Miranda@DBO** <Miranda.LeKander@dbo.ca.gov>          Fri, Jul 3, 2020 at 6:59 PM
To: George Gerro <george@gerrolaw.com>

Resending.

Miranda LeKander
Deputy Commissioner
Department of Business Oversight
Legal Division
916-322-6567

---

**From:** LeKander, Miranda@DBO
**Sent:** Friday, July 3, 2020 3:51 PM
**To:** John Gerro <john@gerrolaw.com>
**Subject:** PRA 3147

Mr. Gerro,

As requested, I have reviewed all records maintained by the Department of Business Oversight (DBO) that may be responsive to your California Public Records Act (PRA) request. I have determined that the below listed records are exempt from the PRA as follows:

| Document Type | Description | Date of Document | PRA Exemption |
|---|---|---|---|
| License Application | Statement of Identification of Kavita Gupta | 2/1/18 | Records contained in applications filed with a state agency responsible for supervision or regulation of financial institutions; Information received in confidence by agency (Gov. Code sections 6254(d)(1)&(4)) |
| License Application | Statement of Identification of Zachary Lee Prince | 2/1/18 | Records contained in applications filed with a state agency responsible for supervision or regulation of financial institutions; Information received in confidence by agency (Gov. Code section 6253(d)(1)&(4)) |
| | | | Records contained in applications filed |

| License Application | Statement of Identification of Florencia Maria Marquez | 2/1/18 | with a state agency responsible for supervision or regulation of financial institutions; Information received in confidence by agency (Gov. Code section 6254(d)(1)& (4)) |
|---|---|---|---|
| Correspondence | Request for Interpretive Opinion and Confidential Treatment from Charles Washburn, Esq. | 5/14/18 | Information received in confidence (10 CCR, section 250.10(a); Gov. Code section 6254(d)(4)) |
| Internal Communications | Emails between Counsel in DBO's Legal Division | 5/16/18 5/21/18 7/2/18 7/16/18 7/19/18 7/22/18 7/27/18 8/2/18 8/20/18 | Preliminary drafts, notes or intra-agency communications; records exempted by provisions of the Evidence Code related to privilege (Gov. Code section 6254(d)(3) 7 (k)); Attorney Work Product (Code Civ. Proc. section 2018.30(a)&(b)) |
| Internal Communications | Emails between Staff in DBO's Licensing Division and Counsel in DBO's Legal Division | 8/2/18 8/3/18 8/15/18 8/16/18 | Preliminary drafts, notes or intra-agency communications; records exempted by provisions of Evidence Code related to privilege (Gov. Code section 6254(d)(3)&(k)); Attorney-Client Privilege (Evid. Code section 954) |
| Licensing File | New Application Review Form, Checklist and Notes to File | 2/1/18 8/16/18 | Preliminary drafts, notes or intra-agency communications (Gov. Code section 6254(d)(3)) |

In reviewing the above confidential records, I came across an additional public document identified as an undated cover letter to the DBO from the Regulatory Counsel Group, Inc. received on 3/12/18, which is attached to this email.

Should you have any questions, please feel free to contact the undersigned.

Miranda LeKander
Deputy Commissioner

1

## PROOF OF SERVICE

2

3    I am over 18 years of age and not a party to this action. My business address is 530 S. Glenoaks Blvd., Suite 200, Burbank, CA 91502.

4

On the date below, I served true copies of the following document:

5

6    **FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE**
**(CIV. PROC. § 1085)**

7    The document was served by the following means:

8    **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the person set forth below and placed the envelope for collection and mailing, following

9    ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing with the United States Postal Service. On the same day

10   that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

11

12

TJ Fox
13   California Attorney General
600 West Broadway, Suite 1800
14   San Diego, CA 92101

15

*Attorney for Respondent, Christopher S. Shultz*
16

17   David Clark
Haynes and Boone, LLP
18   600 Anton Blvd., Suite 700
Costa Mesa, CA 92626
19

20   *Attorney for Real Party in Interest, Blockfi Lending LLC*

21

I am a resident or employed in the county where the mailing occurred. The envelope or package
22   was placed in the mail at Burbank, California.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Burbank, California.

23

24

| August 5, 2021 | Ethan Poytress | /s/ Ethan Poytress |
25  | DATE | (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

26

27

28

**FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE (CIV. PROC. § 1085)**