# *Exhibit J*

HAYNES AND BOONE, LLP
David Clark/Bar No. 275204
  david.clark@haynesboone.com
Marco A. Pulido/Bar No. 308074
  marco.pulido@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, CA  92626
Telephone:    (949) 202-3000
Facsimile:    (949) 202-3001

Attorneys for Real Parties in Interest
BLOCKFI LENDING LLC; BLOCKFI
TRADING LLC and BLOCKFI INC.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE

| | |
|---|---|
| GEORGE GERRO,<br><br>　　　　Petitioner,<br><br>vs.<br><br>Cristopher S. Shultz, as Commissioner of Financial Protection and Innovation of the State of California,<br><br>　　　　Respondent.<br><br>BLOCKFI LENDING LLC, a Delaware limited liability company; BLOCKFI TRADING LLC, a Delaware Limited Liability Company; and BLOCKFI, INC., a Delaware Corporation<br><br>　　　　Real Parties in Interest. | CASE NO.: 21STCP02023<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>　　Honorable Mary H. Strobel<br>　　Department 82<br><br>NOTICE OF RULING ON DEMURRERS OF RESPONDENT CHRISTOPHER S. SHULTZ AND REAL PARTIES IN INTEREST TO PETITIONER'S FIRST AMENDED PETITION FOR WRIT<br><br>Hearing Date:　　November 16, 2021<br>Time:　　　　　　9:30 a.m.<br>Department:　　　82<br><br>*Amended Writ Petition Filed August 6, 2021* |

**TO PETITIONER GEORGE GERRO AND TO HIS ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that, on November 16, 2021, the hearing on the demurrers to Petitioner George Gerro's ("Gerro") First Amended Petition for Writ (the "Petition") of Respondent Christopher S. Shultz ("Shultz") and Real Parties in Interest BlockFi Lending LLC,

1

**NOTICE OF RULING ON DEMURRERS OF RESPONDENT CHRISTOPHER S. SHULTZ AND REAL PARTIES IN INTEREST TO PETITIONER'S FIRST AMENDED PETITION FOR WRIT**

1  BlockFi trading LLC, and BlockFi Inc. (collectively, "BlockFi") came on regularly for hearing
2  before the Honorable Mary H. Strobel in Department 82 of the above-entitled Court. Mark D.
3  Erickson and David B. Clark appeared via LA Connect for BlockFi, Leanna C. Costantini
4  appeared via LA Connect for Shultz, and John Gerro and George Gerro appeared via LA
5  Connect for Gerro.
6      Following the oral argument of counsel, the Court adopted its Tentative Ruling as its
7  Final Ruling, sustaining the demurrers and granting Petitioner 20 days' leave to amend from the
8  date of this Notice. A true and correct copy of the Court's Tentative Ruling is attached hereto as
9  Exhibit "A".

11  DATED: November 16, 2021        HAYNES AND BOONE, LLP

13  By: _____
        David Clark
        Attorneys for Real Parties in Interest
14         BLOCKFI LENDING LLC; BLOCKFI
        TRADING LLC and BLOCKFI INC.

**NOTICE OF RULING ON DEMURRERS OF RESPONDENT CHRISTOPHER S. SHULTZ AND REAL PARTIES IN INTEREST TO PETITIONER'S FIRST AMENDED PETITION FOR WRIT**

# EXHIBIT A

![THE SUPERIOR COURT OF CALIFORNIA - COUNTY OF LOS ANGELES]

| Home | Online Services<br>Pay Fines, Search Records... | Forms, Filings & Files<br>Forms, Filing Fees... | Self-Help<br>Self-Rep, Info, FAQs... | Divisions<br>Civil, Criminal, Family... | Jury<br>Jury Duty Portal, Q&A... | General Info<br>Courthouses, ADA ... |

ONLINE SERVICES

# Tentative Rulings

## DEPARTMENT 82 LAW AND MOTION RULINGS
Hon. Mary H. Strobel

The clerk for Department 82 may be reached at (213) 893-0530.

**Case Number:** 21STCP02023    **Hearing Date:** November 16, 2021    **Dept:** 82

George J. Gerro,                                                       Judge Mary Strobel

v.                                                                     Hearing: November 16, 2021

Christopher S. Shultz, as Commissioner of

Financial Protection and Innovation of the State

of California,

21STCP02023                                                             Tentative Decision on Demurrers to Petition for

                                                                        Writ of Mandate: Sustained

        Christopher S. Shultz, as Commissioner of the California Department of Financial Protection and Innovation ("Respondent" or "Commissioner") and Real Parties in Interest BlockFi Lending LLC, BlockFi Trading LLC, and BlockFi, Inc. (collectively, "Real Parties" or "BlockFi") generally demur to the petition for writ of mandate filed by Petitioner George J. Gerro ("Petitioner") for failure to state a cause of action.

**Judicial Notice**

Real Parties' RJN Exhibits A-E – Granted.

Petitioner's RJN Exhibits A-B – Granted.

Background

For purposes of demurrer, the following factual allegations from the petition are taken as true. (See *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal. App. 4th 531, 538.)

Real Party BlockFi Lending, LLC ("BlockFi") "is a California Finance Lender and Broker (license no. 60DBO-81955, issued on Aug. 16, 2018) making loans, secured by its possession of Bitcoin, pursuant to the Commissioner's license." (First Amended Petition ("FAP") ¶ 3.)

Petitioner "is a California resident who borrowed money from BlockFi for non-commercial purposes." (Id. ¶ 141.) BlockFi held Bitcoin purchased by Petitioner as collateral. (See Id. ¶¶ 65-73 and Exh. 21.)

"Bitcoin is personal property that is capable of actual, constructive, or exclusive possession. On the Bitcoin Network, no entity is able to unilaterally reverse a Bitcoin transaction. If the private key (i.e. password) to Bitcoin is lost, copied, or stolen, then the corresponding Bitcoin may be permanently lost, transferred, or stolen…. Online Bitcoin markets never close. Bitcoin has a very volatile market price. There is evidence that Bitcoin prices are manipulated. Unlike the stock market, Bitcoin markets do not temporarily pause to temper sudden declines. Bitcoin's price is affected by highly leveraged (up to 125x leverage) Bitcoin-derivative markets. The majority of Bitcoin-derivative trading volumes occur on websites, without domestic headquarters, that are subject to little or no oversight by United States regulators. Due to the leverage and nascence of Bitcoin markets, the price of Bitcoin may significantly decline in the short-term as some Bitcoin traders are forced to sell during a Bitcoin price crash." (Id. ¶¶ 7-17.)

Respondent "is responsible for regulating and issuing licenses to 'finance lenders,' as defined in Financial Code section 22009." (Id. ¶ 75.) In February 2018, BlockFi applied to the Department of Financial Protection and Innovation ("Department") for a Finance Lender License. (Id. ¶ 78.) On August 16, 2018, Department licensed BlockFi as a finance lender pursuant to section 22009. (Id. ¶ 128.)

"BlockFi secures its loans to Consumers by exercising dominion and control over the Consumers' Bitcoin as collateral securing BlockFi's loan (Collateral)." (Id. ¶ 21; see generally Id. ¶¶ 19-73.)

"On March 12, 2020, the price of Bitcoin declined by more than Fifty Percent (50%) in one day. On or about that day, BlockFi claims that it liquidated about Nine-Tenths (9/10th's) of Petitioner's Collateral.  Petitioner is informed and believes, and on that basis alleges that, BlockFi liquidated many Consumers on or about March 12, 2020 in a mass foreclosure event." (Id. ¶¶ 65-67.)

In this writ action, Petitioner seeks *inter alia* a writ of ordinary mandate directing Respondent to revoke or suspend the Finance Lender and Broker License No. 60DBO-81955 (License) issued on August 16, 2018, to BlockFi.  Petitioner alleges that Department's issuance of the license violated the Financial Code for reasons set forth at length in the petition and discussed below. (See Id. ¶¶ 74-140.)

Procedural History

On June 25, 2021, Petitioner filed the original petition for writ of mandate.  On August 6, 2021, Petitioner filed the first amended petition ("FAP").

On September 8 and 9, 2021, Respondent and Real Parties filed their demurrers and meet and confer declarations.  The court has received Petitioner's opposition to the demurrers, Respondent's reply, and Real Parties' reply.

Analysis

-

A demurrer tests the sufficiency of a pleading, and the grounds for a demurrer must appear on the face of the pleading or from judicially noticeable matters.  The demurrer admits all material facts properly pleaded.  (CCP 430.30(a); *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "A demurrer tests the pleadings alone and not the evidence or other extrinsic matters." (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 747.)   The allegations in the petition must be liberally construed in favor of Petitioner on demurrer.  (*Mobil Oil Corp. v Exxon Corp.* (1986) 177 Cal.App.3d 942, 947.)  A demurrer accepts as true "all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact." (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal. App. 4th 531, 538.)

-

Judicial Review of Respondent's Official Acts Under CCP Section 1085

As Respondent acknowledges, "the California Financial Code provides limited judicial review" of his official acts. (Resp. Dem. 14.) Financial Code section 22718 states: "Every order, decision, license, or other official act of the commissioner is subject to judicial review in accordance with law."[1]

Petitioner seeks judicial review of Respondent's issuance of a license in this action for ordinary mandate pursuant to CCP section 1085. There are two essential requirements to the issuance of an ordinary writ of mandate: (1) a clear, present and ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty. (*California Assn. for Health Services at Home v. Department of Health Services* (2007) 148 Cal.App.4th 696, 704.)

Respondent contends that the petition "should be dismissed without leave to amend because it seeks to control the Commissioner's discretion rather than enforce a clear, ministerial duty." (Resp. Dem. 12.) According to Respondent, the issuance of a license to BlockFi was "wholly discretionary" and Petitioner has not alleged facts showing an unreasonable or arbitrary exercise of such discretion. (Id. at 12-13.) Real Parties make a similar argument. (RP Dem. 9-11.)

"Normally, mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner. However, it will lie to correct abuses of discretion. In determining whether a public agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld. A court must ask whether the public agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires." (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 654.)

"'On questions of law arising in mandate proceedings, [the court] exercise[s] independent judgment.' …. Interpretation of a statute or regulation is a question of law." (*Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1251.)

As discussed further below, Petitioner contends that Respondent's issuance of a license to BlockFi was illegal and void because BlockFi does not meet the definition of "finance lender" under section 22009. If Respondent issued a license in a manner that violated the law, as Petitioner contends, such official act could be subject to writ of ordinary mandate as an illegal and void act. "An action in ordinary mandamus is proper where … the claim is that an agency has failed to act as required by law." (*California Assn. for Health Services at Home v. Department of Health Services* (2007) 148 Cal.App.4th 696, 705.) In addition, if Respondent issued a license in a manner that violated the law, such official act could be an arbitrary and capricious abuse of discretion. In either case, judicial review could be available under CCP section 1085.

Respondent and Real Parties cite Financial Code sections 22109 and 22714, which set forth Respondent's general authority to issue licenses and also to suspend or revoke licenses. However, those statutes do not constrain a court in equity from issuing a writ of mandate should it be shown that Respondent issued a license that is illegal and void.[2] (See *Board of Trustees of Leland Stanford Junior University v. State Bd. of Equalization* (1934) 1 Cal.2d 784, 787 [Board of Equalization had legal duty to set aside liquor license that was prohibited by law and therefore "illegal and void"; court issued writ].)

The court does not sustain the demurers on the theory that the FAP improperly seeks to control Respondent's discretion. However, judicial review under section 1085 is limited. To allege a claim for writ of ordinary mandate, Petitioner must allege standing and also a ministerial duty owed by Respondent or an abuse of discretion by Respondent. The court analyzes those issues below.

Standing

Respondent and Real Parties contend that Petitioner lacks standing to bring this writ action against BlockFi's license because "Petitioner's purported harm—the loss of his Bitcoin—will not be remedied even if BlockFi's finance lending license is suspended or revoked." (Resp. Dem. 11.)

To have standing to seek a writ of mandate, a party must be "beneficially interested." (CCP § 1086.) "A petitioner is beneficially interested if he or she has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal. App. 4th 899, 913; accord *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796-97.) "This standard … is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.''" (*Associated Builders and Contractors, Inc. v. San Francisco* (1999) 21 Cal.4th 352, 361-362.) "One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable." (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.)

As relevant to standing, the FAP alleges that Petitioner "is a California resident who borrowed money from BlockFi for non-commercial purposes." (Pet. ¶ 141.) BlockFi held Bitcoin purchased by Petitioner as collateral. (See Id. ¶¶ 65-73 and Exh. 21.) "BlockFi's Contract states that a failure to maintain a loan-to-value ratio of Seventy Percent (70%) for more than Seventy-Two (72) hours subjects the California borrower to default under the terms of BlockFi's Contract.… After an alleged default, BlockFi may immediately foreclose upon the Collateral.… Furthermore, BlockFi's Contract states that a failure to maintain a loan-to-value ratio of Eighty Percent (80%) gives BlockFi the right to immediately sell, liquidate, or foreclose upon enough collateral to restore the loan-to-value ratio to Seventy Percent (70%)." (Id. ¶¶ 58-60.)

"On March 12, 2020, the price of Bitcoin declined by more than Fifty Percent (50%) in one day. On or about that day, BlockFi claims that it liquidated about Nine-Tenths (9/10th's) of Petitioner's Collateral." (Id. ¶¶ 65-67.) "After purportedly foreclosing upon Petitioner, BlockFi offered to 'reverse' the foreclosure sales, but only if Petitioner would agree to send more money or Bitcoin to BlockFi." (Id. ¶ 71.)

In the prayer, Petitioner seeks the following writ relief:

1. That a Peremptory Writ of Mandate be issued commanding Respondent to revoke, cancel, or annul BlockFi's Finance Lender and Broker License No. 60DBO 81955 (License);

2. That a Peremptory Writ of Mandate be issued commanding Respondent to suspend said License until BlockFi no longer retains any use and possession of collateral securing its loans to California borrowers. (FAP p. 17.)

Petitioner does not allege how he would benefit if the court issued the requested writs in paragraphs 1 and 2 of the Prayer, or how he would be harmed if the court declined to issue such writs. Petitioner does not allege factually, or cite legal authority, that the liquidation and foreclosure of his Bitcoin by BlockFi would be reversed if Respondent suspended or revoked BlockFi's license. Petitioner does not allege that he presently has a loan with BlockFi or that BlockFi presently holds his Bitcoin or other assets as collateral. "A writ of mandate is granted 'only where necessary to protect a substantial right and only when it is shown that some substantial damage will be *suffered by the petitioner* if said writ is denied.' " (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 707-708.)

In paragraph 3 of the Prayer, Petitioner also seeks a writ "commanding Respondent to suspend said License until BlockFi unwinds all of its prior forfeitures of California Collateral and restores possession to Consumers." (FAP p. 17.) If granted, such writ could benefit Petitioner, as he alleges BlockFi foreclosed on his Bitcoin. However, Petitioner does not cite any statute or other law under which the court would have authority to issue a writ compelling Respondent to cause the suspension of a license until the licensed party unwinds certain transactions or returns collateral. The gravamen of the FAP is that Respondent invalidly issued BlockFi's license and has a mandatory duty to revoke or suspend the license. Inclusion of Paragraph 3 of the Prayer is not sufficient to confer standing on Petitioner for that writ claim. Moreover, to the extent the petition seeks money damages or return of Bitcoin liquidated or foreclosed by BlockFi pursuant to the parties' contract, Petitioner has an adequate remedy at law, as discussed *infra*.

In opposition, Petitioner contends that he has standing because "BlockFi acted under authority of its invalid License to deprive Gerro of his bitcoin" and "BlockFi continues to deprive Gerro of his personal property under color of authority of the License." (Oppo. 10.) Petitioner does not cite allegations of the petition that support these statements. The court's ruling on demurrer is limited to the

four corners of the pleading.  As discussed, Petitioner does not allege that suspension or revocation of BlockFi's license would result in a return of his Bitcoin.  Nor does Petitioner allege that BlockFi presently holds any of his assets as collateral, such that suspension of BlockFi's license might directly impact Petitioner as a customer.  Accordingly, Petitioner has not alleged a beneficial interest in the requested writ.

Public-Interest Exception to Standing Requirement; and Petitioner's Contentions that Respondent Violated Section 22009 By Issuing a License to BlockFi

Petitioner contends that he has alleged public-interest standing because "Respondent continues to violate its public duty to issue licenses in accordance with law" and BlockFi's "current borrowers" are being harmed, but lack sufficient incentive to challenge BlockFi's license.  (Oppo. 11-12.)

"A petitioner who is not beneficially interested in a writ may nevertheless have 'citizen standing' or 'public interest standing' to bring the writ petition under the 'public interest exception' to the beneficial interest requirement. [Citations.] The public interest exception 'applies where the question is one of public right and the object of the action is to enforce a public duty—in which case it is sufficient that the plaintiff be interested as a citizen in having the laws executed and the public duty enforced.'" (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal. App. 4th 899, 913-914.)  In a citizen standing analysis, "[t]he courts balance the applicant's need for relief (i.e., his beneficial interest) against the public need for enforcement of the official duty. When the duty is sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal interest than that of a citizen who wants the law enforced."  (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App. 5th 1159, 1174.)

"Judicial recognition of citizen standing is an exception to, rather than repudiation of, the usual requirement of a beneficial interest."  (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 873-874.)  "[E]ven if a plaintiff otherwise meets the requirements of the public right/public duty exception in a mandamus proceeding, he is not entitled to proceed 'as a matter of right.'"  (Id. at 874.) "When the public need is less pointed, the courts hold the petitioner to a sharper showing of personal need."  (*Reynolds, supra* at 875.)

The court must assess whether Petitioner has sufficiently alleged that Respondent's duty to revoke RPI's license is "sharp" and that there is a "weighty" public need for issuance of the writ.

Here, Petitioner alleges that "[t]he Department issued BlockFi's finance lender license upon the erroneous legal conclusion that a finance lender may retain use and possession of personal property collateral."  (Id. ¶ 133.)  Petitioner alleges that "BlockFi

secures its loans to Consumers by exercising dominion and control over the Consumers' Bitcoin as collateral securing BlockFi's loan (Collateral)." (Id. ¶ 21; see generally Id. ¶¶ 19-73.)  In these circumstances, Petitioner contends that Respondent's issuance of a license to BlockFi violated section 22009. (See Oppo. 1.)

Section 22100(a) states that "[n]o person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner."  Section 22009 defines "finance lender" as "any person who is engaged in the business of making consumer loans or making commercial loans."  Section 22009 further states that "[t]he business of making consumer loans or commercial loans *may include lending money and taking*, in the name of the lender, or in any other name, in whole or in part, *as security* for a loan, *any contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender*, or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission."   (emphasis added.)

Petitioner raises a question of statutory construction.  "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.)

When interpreting a statute, the court must construe the statute, if possible to achieve harmony among its parts.  (*People v. Hall* (1991) 1 Cal. 4th 266, 272; *Legacy Group v. City of Wasco* (2003) 106 Cal.App. 4th 1305, 1313).  "When the legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111.) "When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted." (See *People v. National Auto. and Cas. Ins. Co.* (2002) 98 Cal.App.4th 277, 282.)

Petitioner contends that, as defined by section 22009, "a finance lender does not retain use or possession of personal property securing its loans." (Oppo. 7-8.) However, the statutory language upon which Petitioner relies is not mandatory in nature (i.e., "shall include"), but rather permissive ("may include").  Section 22009 does not clearly or explicitly prohibit a finance lender from using or possessing collateral.  Petitioner has not developed an argument based on the statutory scheme as a whole that a finance lender cannot, in any circumstance, use or possess the personal property that secures its loan.

Petitioner does not submit or request judicial notice of any legislative history that supports his interpretation of section 22009. Thus, even if there was some ambiguity in section 22009 (which Petitioner does not identify), Petitioner has not provided the court extrinsic aids that could suggest Respondent illegally issued a license to BlockFi.

Respondent, which has authority for issuing finance lender licenses, may also be entitled to deference in his interpretation of section 22009. Petitioner attaches to the petition a declaration of the former Commissioner, who was at the helm of Department when BlockFi's license was issued in 2018. (FAP ¶ 137, Exh. 20.) In her declaration, the former Commissioner concludes, among other things, that (1) Petitioner's argument about section 22009 "is incorrect"; (2) the "business practice of holding and using collateral—including the rehypothecation of that collateral—is common both in California and throughout the United States in connection with secured lending"; (3) during her tenure, the Commissioner issued "many licenses to finance lenders whose planned business operations included the holding and/or use of collateral that was being used to secure loans"; (4) BlockFi's business model does not somehow make it a "pawnbroker"; and (5) "holding and/or using collateral in the form of cryptocurrency for secured loans[ ] falls squarely under the umbrella of business activities performance by a finance lender licensed by [Department]." (FAP Exh. 20.)

To the extent "purely legal issues involve the interpretation of a statute an administrative agency is responsible for enforcing, [the court] exercise[s] [its] independent judgment, 'taking into account and respecting the agency's interpretation of its meaning.'" (*Housing Partners I, Inc. v. Duncan* (2012) 206 Cal.App.4th 1335, 1343; see also *Yamaha Corp. of America v. State Bd. Of Equalization* (1998) 19 Cal.4th 1, 11.) How much weight to accord an agency's construction is "situational," and depends on the circumstances. (See *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 461-462.) If Petitioner contends that Respondent is not entitled to deference in his interpretation of section 22009, Petitioner has not sufficiently developed such argument in the petition or opposition. The petition implies that Department has taken inconsistent positions in its interpretation of section 22009, but Petitioner does not discuss any factors that would suggest Respondent or his predecessor commissioners are not entitled to deference in their interpretation of section 22009. (See FAP ¶¶ 74-140.) Thus, on this record and briefing, it appears Respondent may be owed substantial deference in his interpretation of section 22009.

Petitioner's reliance on *W. Pico Furniture Co. v. Pac. Fin. Loans* (1970) 2 Cal. 3d 594 is misplaced. (Oppo. 8.) That case did not address the question presented here of whether section 22009 *requires*, in all circumstances, that use and possession of collateral be retained by other than a finance lender. "'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.'" (*People v. Knoller* (2007) 41 Cal.4th 139, 154-55.) For that same reason, Petitioner's discussion of a 1948 Attorney General opinion is not persuasive. (Oppo. 8.)

Petitioner contends that "[u]nder California law, lenders that usurp possession of collateral must be licensed as pawnbrokers.… BlockFi is not a licensed pawnbroker …, and Respondent does not have any authority to issue pawnbroker licenses." (Oppo. 9.) In his

arguments about the pawnbroker laws, Petitioner begs the question – he assumes the truth of his underlying premise that Respondent lacked authority to issue a finance lender license to BlockFi. Since Petitioner does not adequately support that underlying premise, the court need not analyze Petitioner's contention that BlockFi should be considered an unlicensed pawnbroker.

The court stresses that, for purposes of this demurrer, the court does not make a final determination regarding Petitioner's statutory arguments related to section 22009. Based on this record and briefing, the court preliminarily finds Petitioner's statutory interpretation unpersuasive. However, the court has not been presented with all relevant legal argument, legislative history, and extrinsic aids. For purposes of this demurrer, the court concludes only that Petitioner has not shown a "sharp" duty owed by Respondent to suspend or revoke BlockFi's license, nor a "weighty" public need for the requested writ. As discussed, Petitioner has alleged no personal interest in the writ relief that he seeks. Balancing the interests, the court presently finds no grounds to apply the public-interest exception to Petitioner's writ claim.

Petitioner has not alleged sufficient facts to satisfy the public-interest exception to the standing requirement.

Judicial Abstention

Respondent and Real Parties contend that the doctrine of judicial abstention requires dismissal because Respondent has "exclusive regulatory authority" over the subject matter of the petition. (Resp. Dem. 13-15; RP Dem. 7-9.)

"Under the abstention doctrine, 'a trial court may abstain from adjudicating a suit that seeks equitable remedies if 'granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.' [Citation.] Abstention may also be appropriate if 'the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency,' or if 'granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress.'"  (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 147-148.)

Significantly here, however, "abstention is not appropriate where resolution of the issues involves solely the judicial function of resolving questions of law based on facts before the court." (*Hambrick, supra* at 152.) "To 'abstain' in situations where the Legislature said [the court] should act would be impermissible shirking." (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 989-990.)

In the petition, Petitioner raises a pure question of law concerning Respondent's authority under the California Financing Law, specifically section 22009, to issue a finance lender license to a lender that uses or possesses personal property collateral, and

specifically Bitcoin, given by the borrower. Based on the current allegations, the court finds no reason to apply judicial abstention to this narrow question of statutory interpretation.

Does Petitioner Have an Adequate Legal Remedy?

Respondent and Real Parties contend that Petitioner has an adequate remedy at law in two pending actions for breach of contract and injunctive relief. (Resp. Dem. 15-16; RP Dem. 11-12.)

"The extraordinary remedy of mandate is not available when other remedies at law are adequate." (See *Agosto v. Board of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 336.)

Petitioner has filed two other cases against BlockFi in the Los Angeles Superior Court. (See FAP ¶¶ 143, 145.)

In *Gerro I* (Case No. 20BBCV00308), Petitioner sued BlockFi and his loan servicer "to recover possession of his personal property," specifically Bitcoin that BlockFi liquidated after Petitioner failed to maintain loan-to-value ratios specified in his contract with BlockFi. (See FAP ¶ 143; RP RJN Exh. B.) The complaint alleged multiple claims against BlockFi, including breach of contract, conversion, and violation of several Commercial Code sections. In opposition to a demurrer, Petitioner asserted that his contract with BlockFi was illegal based on his statutory interpretation of the definition of finance lender in section 22009. (RP RJN Exh. C at 7.) The trial court enforced a Delaware forum selection clause and stayed the action. (RP RJN Exh. A.) Petitioner appealed, and his appeal is presently pending. (FAP ¶ 144.)

In *Gerro II* (Case No. 20STCV31493), Petitioner sued BlockFi for injunctive relief based on claims of unfair competition, false advertising, and civil conspiracy. Petitioner alleged, as he does in this writ action, that BlockFi is illegally engaging in the business of an unlicensed pawnbroker and activity that falls outside the scope of a finance lender license pursuant to section 22009. (RP RJN Exh. E.) The trial court stayed *Gerro II* based on the pending action in *Gerro I*, concluding that *Gerro II* constituted the same cause of action as *Gerro I*. (FAP ¶¶ 145-146.) Contrary to Real Parties' assertion, the judicially noticed record does not prove that the trial court ruled on the merits of Petitioner's claims in *Gerro II*. (See RP Dem. 3-4, citing RJN Exh. E.) Petitioner appealed the stay in *Gerro II,* and that appeal is pending. (FAP ¶ 146.)

In paragraph 3 of the Prayer, Petitioner seeks a writ "commanding Respondent to suspend said License until BlockFi unwinds all of its prior forfeitures of California Collateral and restores possession to Consumers." (FAP p. 17.) In this requested writ, Petitioner

effectively seeks return of Bitcoin liquidated or foreclosed by BlockFi. Petitioner has an adequate remedy at law in *Gerro I* and *Gerro II* to obtain return of his Bitcoin or a corresponding amount of money damages.

Petitioner also seeks a writ commanding Respondent to revoke, cancel, or annul BlockFi's Finance Lender and Broker License No. 60DBO 81955 (License). Petitioner could not obtain that exact relief in *Gerro I* or *Gerro II*. Nonetheless, *Gerro II* alleges that BlockFi is "engaging in the unlawful business practice of accepting and obtaining forfeiture interests in collateral which it uses and possesses, in violation of California Financial Code Section 21009 [sic]" and "knowingly and negligently violating the pawnbroker laws." (RP RJN Exh. D, ¶¶ 244-245.) Petitioner seeks to enjoin this alleged unlawful conduct pursuant to Business and Professions Code section 17200. If Petitioner proved his claims in *Gerro II* and the court enjoined conduct of BlockFi that he contends violates section 22009, that would provide him an adequate remedy for the harm alleged in the instant petition.

Petitioner has not made a persuasive argument to the contrary. (See Oppo. 6.) Petitioner's reliance on *Covert v. State Bd. of Equalization* (1946) 29 Cal.2d 125 is misplaced. (Ibid.) In *Covert*, a statute specifically authorized the petitioner, a citizen, to file a complaint with the board against a liquor licensee. In those circumstances, the Court held that abatement proceedings were not an adequate remedy. The Court did not hold that actions for contract damages or injunctive relief can never provide an adequate, alternative remedy for a petition for writ of mandate. "An opinion is not authority for propositions not considered."' (*People v. Knoller* (2007) 41 Cal.4th 139, 154-55.)

Even if it could be concluded that Petitioner had standing or public-interest standing, this writ action is barred because Petitioner has other, adequate remedies at law.

Leave to Amend

A demurrer may be sustained without leave to amend when there is no reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Courts generally allow at least one time to amend a complaint after sustaining a demurrer. (*McDonald v. Superior Court* (1986) 180 Cal.App.3d 297, 303.) In assessing whether leave to amend should be granted, the burden is on the complainant to show the court that a pleading can be amended successfully. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348-349.)

This is the court's first ruling on the demurrer. However, Petitioner has not requested leave to amend or made an offer of proof of amendments that could address the pleading defects analyzed above. Counsel should address at the hearing whether leave to amend should be permitted.

#### Conclusion

The demurrers are SUSTAINED.  Counsel should address at the hearing whether leave to amend should be permitted.

[1] Unless otherwise stated, all statutory references as to the Financial Code.

[2] Section 22109 sets forth the Respondent's duty to deny an application for a finance lender license in specified circumstances, none of which appear directly relevant here.  Section 22714 states in relevant part: "(a) The commissioner shall suspend or revoke any license, upon notice and reasonable opportunity to be heard, if the commissioner finds any of the following: … (3) A fact or condition exists that, if it had existed at the time of the original application for the license, reasonably would have warranted the commissioner in refusing to issue the license originally."

Privacy Statement  |  Disclaimer  |  Employment  |  ADA  |  Holidays  |  Comment on our Website        Copyright © 2021 Superior Court of California, County of Los Angeles

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Orange, State of California. I am over the age of 18 and am not a party to the within action; my business address is 600 Anton Boulevard, Suite 700, Costa Mesa, California 92626.

On **November 16, 2021**, I served a true and correct copy of the document entitled: ***NOTICE OF RULING ON DEMURRERS OF RESPONDENT CHRISTOPHER S. SHULTZ AND REAL PARTIES IN INTEREST TO PETITIONER'S FIRST AMENDED PETITION FOR WRIT*** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, as indicated below and addressed as follows:

| | |
|---|---|
| John M. Gerro, Esq.<br>George J. Gerro, Esq.<br>Law Offices of Gerro & Gerro<br>530 S. Glenoaks Boulevard, Suite 200<br>Burbank, CA  91502<br>Telephone:     (818) 840-0000<br>E-Mail:          john@gerrolaw.com<br>                     george@gerrolaw.com<br><br>*[Attorneys for Petitioner GEORGE GERRO]* | Rob Bonta, Esq., Attorney General of California<br>Leanna C. Costantini, Esq., Dep. Atty. General<br>California Department of Justice<br>300 South Spring Street<br>Suite 1702<br>Los Angeles, CA 90013<br>Telephone:     (213) 269-6231<br>Facsimile:      (619) 738-9000<br>E-Mail:          rob.bonta@doj.ca.gov<br>                     leanna.costantini@doj.ca.gov<br><br>*[Attorneys for Respondent CHRISTOPHER S. SHULTZ, as Commissioner of Financial Protection and Innovation of the State of California]* |

☒ **(By Personal Delivery)** I served true and correct copies of the foregoing document by personal delivery through First Legal Network to the offices of the interested parties as indicated above.

☐ **(By U.S. Mail)** I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit. I caused such envelope, with postage thereon fully prepaid, to be placed in the United States Mail at Costa Mesa, California as indicated above.

☐ **(By Electronic Delivery)** Pursuant to C.C.P. § 1010.6, I served true and correct copies of the foregoing document by electronic delivery to the interested parties in this action as indicated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on ***November 16, 2021***, at Costa Mesa, California.

*/s/ Kelley L. Saunders*
_____
Kelley L. Saunders