**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al*.,<br>　　　　　　　　Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered) |

**DEBTORS' SUR-REPLY TO GEORGE J. GERRO'S REPLY AND TO DEBTOR'S OBJECTION TO MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GEORGE J. GERRO FOR ENTRY OF AN ORDER (I) GRANTING PARTIAL RELIEF FROM THE AUTOMATIC STAY (11 U.S.C. §§ 362(d)(1)) AND DISCHARGE INJUNCTION (11 U.S.C. § 524(a)) WITH RESPECT TO CERTAIN NON-CORE PROCEEDINGS; AND (II) EXTENDING TIME TO FILE A PROOF OF CLAIM (F.R.B.P. 3002(c)(3))**

TO:  THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

---

[1]　The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Debtors"), as debtors and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Debtors' Sur-Reply to George J. Gerro's Reply and Response to Debtor's Objection to Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (I) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) With Respect to Certain Non-core Proceedings; and (II) Extending Time to File a Proof of Claim (F.R.B.P. 3002(c)(3))* (the "Sur-Reply") in response to movant George Gerro's ("Gerro") *George J. Gerro's Reply and Response to Debtor's Objection to Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (I) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) With Respect to Certain Non-core Proceedings; and (II) Extending Time to File a Proof of Claim (F.R.B.P. 3002(c)(3))* (the "Reply") in connection with the *Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (I) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) With Respect to Certain Non-core Proceedings; and (II) Extending Time to File a Proof of Claim (F.R.B.P. 3002(c)(3))* (the "Lift Stay Motion"). In support of the Sur-Reply, the Debtors respectfully represent as follows:

**Introduction**

1. The Debtors file this Sur-Reply to address certain matters raised in Gerro's Reply that were not addressed in the Lift Stay Motion. For example, in the Reply Gerro appears to seek a modification of the relief originally requested in the Lift Stay Motion such as: (a) ostensibly withdrawing his request to extend the deadline for filing proofs of claim; (b) requesting pursuant to 28 U.S.C. § 157(b)(2)(B) that a timely proof of claim filed by Gerro be subject to estimation for

2

purposes of plan confirmation; (c) suggesting that Gerro and BF Lending should engage in mediation pursuant to the local rules of the applicable California Courts; and (d) suggesting that the Bankruptcy Court grant relief from the stay but reconsider any relief ordered in connection with the Lift Stay Motion after the California Supreme Court has issued an opinion on the matters currently on appeal. Gerro also raises certain additional arguments and makes certain additional assertions not originally raised in the Lift Stay Motion that the Debtors believe should be addressed in advance of the hearing on the Lift Stay Motion.

2. Gerro makes a number of unfounded and unsupported statements, including a number of statements that ignore the scale and extent of the claims that the Debtors need to address in these Chapter 11 Cases, the nature of the bankruptcy process, and the benefit of dealing with all claims and issues in a single forum. For example, Gerro suggest that lifting the stay will be beneficial to the Debtors, creditors, and the Bankruptcy Court and that the delay resulting from the parties need to wait on a ruling from the California Supreme Court will give the Debtors a "breathing spell". Requiring the Debtor to continue litigating the claims of a single claimant (who asserts a disputed unsecured claim) in California, where it has already incurred millions of dollars of fees without even addressing the merits of the underlying claims, would not be beneficial to the Debtors and their creditors and Gerro's suggestion to the contrary ignores the scale of claims that the Debtors must address in these Chapter 11 Cases.

3. The Debtors have hundreds of thousands of creditors and one of the primary benefits of bankruptcy, is that it provides the Debtors with a single centralized forum where it can deal with all of those claims. Lifting the stay will prevent the Debtors from resolving Gerro's claims on a timeline consistent with the resolution of these Chapter 11 Cases and the resolution of the hundreds of thousands of other claims that will likely be asserted in these Chapter 11 Cases.

By lifting the stay, the Debtors will have to wait for what could be years on a ruling from the California Supreme Court on the preliminary issue of what the appropriate forum is for adjudicating Gerro's claims. Because Gerro's claims can unquestionably be liquidated and administered by this Court, it does not make sense to lift the stay and delay a resolution of Gerro's claims simply to have the California Supreme Court weigh in on an issue that will be moot if Gerro's claims are liquidated and administered in the Debtors' Chapter 11 Cases.

## Sur-Reply

### A. Gerro's Request to Have His Claim Estimated for Purposes of Plan Confirmation Is Premature and Procedurally Improper

4. Gerro originally requested an indefinite extension of the deadline for Gerro to file a proof of claim in these Chapter 11 Cases. Based on statements made in Gerro's Reply, it appears that Gerro agrees with the Debtors that such an extension is inappropriate and that Gerro is no longer seeking to extend the claims bar date. Instead, Gerro has proposed the following: "Gerro will file a timely proof of claim for this Court to 'estimate[e]' his claim 'for purposes of confirming a plan under chapter 11.'" Gerro Reply at p. 1 (quoting 28 U.S.C. § 157(b)(2)(B)). Gerro proposes to have an estimation procedure for Gerro's claim integrated into the lift stay order as a "reasonable compromise". Reply at p. 5.

5. The Debtors object to Gerro's request to a procedure for estimating his claim on the basis that (a) any request by Gerro to have his as-yet unfiled claim estimated for purposes of plan confirmation is premature and (b) 28 U.S.C. § 157(b)(2)(B) does not authorize creditors to seek prospective authorization to have a claim estimated. If and when Gerro files a timely proof of claim in accordance with section 502 of the Bankruptcy Code and the applicable Bankruptcy Rules in one or more of the Debtors' Chapter 11 Cases, Gerro's claim will be an allowed claim for purposes of voting pursuant to section 1126(a) unless and until an objection to Gerro's claim is

4

filed. If an objection to Gerro's claim is filed before the deadline for voting on a plan, at Gerro's request, and after notice and hearing, the Bankruptcy Court may "temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Bankruptcy Rule 3018(a). Similarly, section 502(c) provides that the court may estimate contingent or unliquidated claims to the extent "the fixing or liquidation of [such claims], as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). At the present time, before Gerro has even filed a proof of claim, and before the Debtors have requested approval of a disclosure statement or confirmation of a plan, it is premature to enter any order regarding the estimation of Gerro's claim for purposes of plan confirmation or otherwise.

### B. Gerro's Request that the Debtors Engage in Mediation of Gerro's Claims Pursuant to the California Local Rules Should Be Denied

6. Gerro suggests that Gerro and BF Lending should "mediate pursuant to the local rules and continue their negotiations". Reply p. 1. Gerro also stated that BF Lending refused to participate in the California Court of Appeal's official mediation program which "offered 4.5 hours of free mediation." Reply p. 4. Notably, Gerro failed to disclose that BF Lending was amenable to mediation and proposed using a private mediator, which would not have been subject to the 4.5 hour restriction and would have allowed the parties to identify a mediator with an appropriate background to act as mediator, but Gerro refused. In any event, BF Lending is not opposed, in principal, to engaging in mediation with Gerro if mediation is appropriate at the appropriate time in connection with the claims administration process in this case. However, the Debtors, will need to address the claims of hundreds of thousands of creditors and should not be subjected to engage in mediation of a disputed unsecured and unliquidated claim pursuant to the local rules of a California Court unless they decide it is an appropriate and efficient use of their time and resources.

### C. Stay Relief for Unsecured Creditors Should Only Be Granted in "Extraordinary Circumstances"

7. Gerro, relying on a case quoting legislative history from the 1970s and an undated secondary source, suggests that the relief he is requesting is "routinely" granted by bankruptcy courts. Reply at pp. 5-6. The Debtors do not wish to quibble over the meaning of the word routine, but irrespective of whether stay relief is routine, BF Lending has cited case law expressly stating that stay relief for unsecured creditors should only be granted "in extraordinary circumstances." Response at ¶ 19.[2] Gerro has not shown the existence of extraordinary circumstances and his request for stay relief should therefore be denied.

### D. Granting Stay Relief Will Not Benefit the Debtors, the Debtors' Estates, or the Debtors' Creditors

8. Gerro suggests that the Debtors will benefit if the stay is lifted because lifting the stay will give them a "breathing spell" and because there is no assurance that the Debtors will save on legal fees if Gerro's claims are litigated in the Bankruptcy Court. Gerro is wrong on both counts.

9. Gerro's framing of the significant delays associated with adjudicating Gerro's claims in the California courts as "promoting the bankruptcy policy of giving the Debtor a 'breathing spell'" is a transparent attempt to use wordplay to distract from the real disruptions lifting the stay can create for the Debtors. By filing for bankruptcy, the Debtors have already been granted the breathing spell contemplated by the Bankruptcy Code and the automatic stay which allows the Debtors to resolve all of their claims in a single forum and on a timeframe that is consistent with the Debtors' goal of reorganizing. The purpose of the breathing spell contemplated

---

[2] *See In re Eagle Enterprises, Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) ("Generally, unsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances."); *In re Res. Cap., LLC*, 2012 Bankr. LEXIS 3641, at *16 (Bankr. S.D.N.Y. Aug. 8, 2012) ("If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. '[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief.'").

by the Bankruptcy Code is not delay for delay's sake, but rather to stay all actions outside the bankruptcy and to allow the Debtors to resolve all claims in a single centralized forum on a relatively expedited timeline. Lifting the stay here would go against the policies underlying the bankruptcy process by preventing the Debtors from resolving all claims in a single forum and making the Debtors subject to the whims and delays of the California Supreme Court and to a California or Delaware trial court thereafter for a resolution on the merits.

10. Gerro's suggestion that it may not be less expensive to resolve his claim in the Bankruptcy Court is unsupported and irrelevant. In the face of the significant costs already incurred by the Debtors, Gerro must do more than make unsupported conclusory statements that there is a theoretical possibility that adjudicating Gerros' claims in the Bankruptcy Court would result in a similar amount of legal fees. The Debtors have not suggested there will be no expense and no delay if Gerro's claims are adjudicated by the Bankruptcy Court. The Debtors have, however, highlighted to the Court that they have already been required to incur millions of dollars in legal fees and they are still years away from any substantial progress towards an adjudication of Gerro's claims on the merits. In light of the history of the Debtors' litigation with Gerro, there can be little doubt that Gerro's claims will be litigated on a more timely basis and in a more cost-effective manner in the Bankruptcy Court rather than in California.

### E. Gerro's Contentions Regarding Choice of Law, Jury Trial, and Comity Do Not Support Stay Relief

11. Gerro contends that the stay should be lifted because "[t]he choice of law issue may need to be re-litigated in the bankruptcy forum." Reply at p. 7. Gerro thereafter proceeds to make conclusory statements about his view of the appropriate choice of law. Choice of law is applicable in virtually every legal dispute and this Court, much like most bankruptcy courts, is no stranger to dealing with choice of law issues. The fact that the Bankruptcy Court may have to determine the

proper choice of law to be applied in adjudicating a claim is not a proper basis for lifting the automatic stay and Gerro's contentions relating to choice of law should be rejected out of hand.

12. Gerro's arguments regarding his potential right to a jury trial do not weigh in favor of granting stay relief and Gerro cites no legal authority in favor of his position that his purported right to a jury trial requires the stay to be lifted. To the extent Gerro wishes to assert claims against the Debtors and obtain a distribution from the Debtors' or their estates, Gerro must assert a claim through the claims administration process like the hundreds of thousands of the Debtors other creditors and potential creditors.

13. Gerro's contention that the Bankruptcy Court should lift the automatic stay out of deference to the California Supreme Court and in furtherance of comity does not support lifting the automatic stay. Notably, it was BF Lending, not Gerro, that filed the appeal to the California Supreme Court. Furthermore, while comity is a consideration in the context of a motion to abstain, comity is not one of the factors identified under either of the tests most commonly used within the Third Circuit and cited in the Debtors' original response.

### F. If Gerro Asserts Claims Against the Debtors in the Bankruptcy Case, Adjudication of Those Claims Will Be a Core Proceeding

14. Gerro contends that the resolution of the claims he holds against BF Lending would not be a core proceeding in the Bankruptcy Court and would merely be "related to" the Bankruptcy Case. The resolution of pre-petition claims against a Chapter 11 debtor is a core proceeding and falls squarely within the Bankruptcy Court's core jurisdiction to administer the process of allowance and disallowance of claims. The only way that Gerro's claims will not be a core claim is if Gerro opts to not file a proof of claim in BF Lending's Chapter 11 Case. If Gerro's claim is unscheduled or scheduled as contingent, disputed, or unliquidated, and Gerro chooses to not file a proof of claim, Gerro will "not be treated as a creditor with respect to such claim for the purposes

of voting and distribution." Bankr. Rule 3003(c)(2). In that case, provided a chapter 11 plan is confirmed, Gerro's claim will be discharged and he will be enjoined from asserting his claim against the Debtors and reorganized debtors.

### G. Gerro's Contentions Regarding the Application of Abstention Standards Are Not Relevant and In Any Event Mandatory Abstention Would Not Apply

15. In Gerro's Lift Stay Motion and in the Reply, Gerro argues that the abstention factors apply. While the Debtors disagree with Gerro's analysis of the abstention factors, application of the abstention factors is irrelevant to a determination of whether cause exists to lift the stay. In their Response, the Debtors identified two separate tests applied by courts within the Third Circuit – i.e. a three-part balancing test and the twelve-part test from *Sonnax*. Rather than addressing the factors raised in those two tests, Gerro has opted to focus on the factors for abstention, including mandatory abstention. Not only are the abstention factors irrelevant, mandatory abstention would not apply to Gerro's prepetition claims against BF Lending even if Gerro's litigation were removed. As noted above, the resolution of prepetition unsecured claims asserted against a debtor falls squarely within the core jurisdiction of the bankruptcy courts. Mandatory abstention only applies to claims "related to" the bankruptcy case, not core claims. Therefore, even if Gerro's suit was removed, which it has not been, mandatory abstention would not apply.

**WHEREFORE**, the Debtors respectfully request entry of an order denying the relief requested in the Lift Stay Motion and granting the Debtors such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

Respectfully Submitted,

Dated: January 6, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*