**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION SEEKING ENTRY**
**OF AN ORDER (I) APPROVING THE BIDDING**
**PROCEDURES AND RELATED DATES AND DEADLINES,**
**(II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT,**
**AND PLAN CONFIRMATION, AND (III) GRANTING RELATED RELIEF**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (the "Motion"): [2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) authorizing and approving the proposed bidding procedures attached

as Exhibit 1 to the Order (the "Bidding Procedures"), (b) establishing certain dates and deadlines

relating to the potential sale of the Debtors' equity and/or certain of the Debtors' assets

(the "Assets") and scheduling an auction (the "Auction"), if any, (c) approving the manner of

notice of the Auction, if any, (d) scheduling dates and deadlines in connection with the approval

of a disclosure statement (the "Disclosure Statement"), a sale pursuant to section 363 of the

Bankruptcy Code (a "Sale"), and/or confirmation of a chapter 11 plan of reorganization, and

(e) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
      Bidding Procedures, First Day Declaration (as defined herein), or the *Joint Plan of Reorganization of BlockFi*
      *Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 22] (as amended,
      supplemented, or modified, the "Plan"), as applicable.

final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are sections 105, 363, 1123, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 3016, 3017, 3018, 3020, 6004, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 3016-1, 3018-1, 3020-1, and 6004-2 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.    On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 17] (the "First Day Declaration") and incorporated by reference herein.

6.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On November 29, 2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].   No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**Introduction**

7.      As described more fully in the First Day Declaration, the Debtors commenced these Chapter 11 Cases to stabilize their enterprise, preserve the value of their businesses, and maximize the value returned to their stakeholders, including clients, as soon as possible.

8.      Intent on moving expeditiously through chapter 11, the Debtors filed the Plan on the first day of these Chapter 11 Cases.  The Plan provides the Debtors with a path to exit chapter 11 on an expedited timeline, without an investment from, or sale to, a third party.  That Plan also serves as a "floor" that third parties may bid against.  If the Debtors identify a transaction with a third party that provides stakeholders with greater value than the value provided under the Plan, then the Debtors would toggle to that path.

9.      Prior to the Petition Date, the Debtors engaged Moelis & Company LLC ("Moelis") to assist the Debtors in, among other things, analyzing the viability of certain strategic alternatives, including a sale of certain of the Debtors' Assets.  Shortly after its engagement, Moelis crafted a comprehensive marketing strategy designed to identify Potential Bidders for each of the Assets. This process included initial outreach by Moelis to approximately 106 potential financial and strategic partners globally (the "Potential Counterparties")—a process which commenced shortly after the Petition Date and has continued over the past two months.  These Potential Counterparties consist of domestic and international strategic buyers in the crypto space, as well as private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry.

10.     As of the filing of this Motion, over thirty-five Potential Counterparties have entered into confidentiality agreements with the Debtors and have been granted access to a virtual data room containing volumes of information regarding the Debtors' business operations, finances, and material contracts.   In addition, Potential Counterparties that have signed confidentiality agreements have been permitted to submit additional questions and to request additional diligence from the Debtors in addition to the information contained in the virtual data room.

11.     Accordingly, by this Motion, the Debtors seek to establish formal Bidding Procedures to set the guidelines for a potential Sale.  The Bidding Procedures provide for substantial flexibility with respect to the structure of any Sale, and the Debtors believe that the Bidding Procedures are the best path to garner interest in the Assets and provide for the highest recovery available for all stakeholders.

12.     The Bidding Procedures proposed herein provide appropriate time for the Debtors to complete their comprehensive marketing process, receive and evaluate bids, and, if necessary, hold an Auction to determine the highest or otherwise best bid.  The proposed dates and deadlines are critical to driving the Debtors' restructuring to an efficient and value-maximizing conclusion, particularly in light of the volatile industry in which the Debtors operate.  At the same time, the proposed Bidding Procedures seek to minimize the time and expense in chapter 11.   The Bidding Procedures will provide the Debtors with optionality, expedite resolution of these Chapter 11 Cases, reduce the expenses associated with administering these cases, and permit the Debtors to restructure in a timely manner.

**Proposed Sale Process and Selection of Stalking Horse Bidder**

I.      **The Bidding Procedures**.

13.      The Debtors are seeking approval of the Bidding Procedures to establish an open

process for the solicitation, receipt, and evaluation of bids on a timeline that allows the Debtors to

consummate a sale of the Debtors' equity and/or Assets pursuant to section 363 of the

Bankruptcy Code or to consummate a sale through confirmation of a Plan.      The

Bidding Procedures contemplate that all parties that execute confidentiality agreements in

accordance with the Bidding Procedures will continue to have access to the virtual data room

throughout the sale process.

14.      The timeline set forth in the Bidding Procedures was calculated to balance the need

to provide adequate notice to parties in interest and Potential Bidders with the need to run an

expeditious and efficient sale process.  The Bidding Procedures are designed to generate the

highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging

prospective bidders to submit competitive, value-maximizing bids.  The Debtors believe that the

Bidding Procedures and the timeline set forth therein are in the best interests of the Debtors'

estates, will establish whether and to what extent any additional market for the Assets exists, and

provide interested parties with sufficient opportunity to participate.      Because the

Bidding Procedures are attached as <u>Exhibit 1</u> to the Order, they are not restated in their entirety

herein.  Generally speaking, however, the Bidding Procedures establish the following, among other

things:[3]

---

[3]    This summary is provided in accordance with Local Rule 6004-2(b) and for the convenience of the Court and
parties in interest.  To the extent there is any conflict between this summary and the Bidding Procedures, the latter
governs in all respects.

a.   **Bidder Qualifications**.  The requirements that Potential Bidders must satisfy to participate in the bidding process and become "Acceptable Bidders" including:

1. the identity and a description (including entity type, jurisdiction of formation or organization, credit rating, and regulators, if applicable) of the Potential Bidder;

2. An executed confidentiality agreement on terms reasonably acceptable to the Debtors, to the extent not already executed;

3. A statement of which specific Assets the Potential Bidder intends to acquire and the proposed Purchase Price to be paid, with reasonable specificity, including treatment for the Account Holder Claims; and

4. A detailed description of the intended sources of any financing required for the proposed Sale and any contingencies related thereto, as well as an indication of the timing and steps, if any, required to secure such financing, or a statement that the Potential Bidder has available all of the funds necessary to perform all obligations regarding the proposed Sale;

*See* Bid. Proc., at ¶ A.

b.   **Bid Qualifications**.  The deadlines and requirements for submitting bids and the method and criteria by which such bids are deemed to be "Qualified Bids" sufficient to trigger an Auction, including:

1. A cash deposit equal to the greater of:  (a) ten percent of the net asset Purchase Price of the Bid; or (b) $5 million, which shall be refundable in the event that the Debtors determine that the Bid is not a Qualified Bid, or that the Qualified Bidder is not selected as the Winning Bidder;

2. The deadline that must be met by any Acceptable Bidder to be considered a "Qualified Bidder" and the circumstances for curing any deficiencies preventing a Bid from being a Qualified Bid;

3. The form of and required attachments to the Bid, including whether the Bid applies to some or all of the Assets and identifies the Assets with reasonable specificity.

*See* Bid. Proc., at ¶¶ D, E, and L.

c.   **Stalking Horse Bid Protections**.  The deadline and criteria by which the Debtors may select one or more Acceptable Bidders to act as a stalking horse bidder (each, a "<u>Stalking Horse Bidder</u>") and may provide customary

bid protections contemplated by any stalking horse agreement (the "Bid Protections") to such Stalking Horse Bidder (if any), including:

1. A breakup fee in an amount not to exceed three percent of the proposed Purchase Price (the "Breakup Fee") and expense reimbursement for reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement");

2. Minimum bidding increments taking into account payment of the Bid Protections to any Stalking Horse Bidders.

See Bid. Proc., at ¶¶ C and G.

d. **Modification of the Bid Procedures**. A reservation of the rights of the Debtors to modify the Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale. The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders. *See* Bid. Proc., at ¶ M.

e. **Designation of Back-Up Bid**. The procedure for designation of a Back-Up Bidder or Back-Up Bidders and procedures for consummating a transaction pursuant thereto. *See* Bid. Proc., at ¶ K.

15.     Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all Qualified Bid proposals, and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for their estates. Moreover, the Debtors will provide information about the ongoing sale process to the Committee to ensure that the Debtors' stakeholders are apprised of the status and determinations related to the Sale.

## II.     The Sale and Confirmation Schedules.

16.     The Debtors are seeking approval of the Bidding Procedures and the following proposed timeline for the sale and related plan process in parallel (the dates set forth below, respectively, the "Sale Schedule" and the "Confirmation Schedule") to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that allows the

Debtors to consummate a Sale through a standalone order or through a Plan. The Debtors respectfully request that the Court approve the Sale Schedule and Confirmation Schedule.

17.    Further, to the extent that the Debtors receive Qualified Bids for certain of the Debtors' other assets, the Debtors request authorization to hold such subsequent auctions as the Debtors deem necessary and proper. The Debtors will hold any such subsequent auctions on a substantially similar timeline as has been proposed in this Motion, and consistent with the Bidding Procedures.[4]

a.    **The Sale Schedule**.

| Action | Description | Deadline |
|---|---|---|
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received. | January 24, 2023 at 12:00 p.m. prevailing Eastern Time |
| Bidding Procedures Hearing | The hearing before the Court to consider this Motion. | January 30, 2023 at 10:00 a.m. prevailing Eastern Time |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures. | February 13, 2023 at 12:00 p.m. prevailing Eastern Time |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Moelis & Company LLC, 399 Park Ave., 4th Floor, New York, NY 10022. | February 17, 2023 at 10:00 a.m. prevailing Eastern Time, if needed. |
| Deadline to File Sale Motion | The deadline for the Debtors to file a motion seeking entry of an order approving the sale of certain of the Debtors' Assets to the Successful Bidder or Successful Bidders (the "Sale Motion"). | February 20, 2023 |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"). | 7 calendar days before the Sale Hearing. |
| Sale Hearing | The hearing before the Court to consider approval of the Successful Bid or Successful Bids, pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale. | March 13, 2023 at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |

---

[4]    To the extent a Sale implicates any Assets of BlockFi International Ltd., the Sale Schedule may be subject to approval and/or modification by the Bermuda Supreme Court.

b.  **The Confirmation Schedule**.

| Action | Description | Deadline |
|---|---|---|
| Deadline to file Disclosure Statement | The deadline for the Debtors to file the Disclosure Statement. | April 10, 2023 |
| Disclosure Statement Objection Deadline | The deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Disclosure Statement Objection Deadline"). | 7 calendar days before the Disclosure Statement Hearing. |
| Disclosure Statement Hearing | The date for the hearing for the Court's approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Hearing"). | May 8, 2023 at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |
| Solicitation Deadline | The deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the Plan (the "Solicitation Deadline"). | 14 days after the entry of the order approving the Disclosure Statement, or as soon as reasonably practicable thereafter. |
| Plan Objection and Plan Voting Deadlines | The deadline by which (a) objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline"), and (b) all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent (the "Plan Voting Deadline"). | 7 calendar days before the Confirmation Hearing. |
| Confirmation Hearing | The hearing before the Court to consider approval of the Successful Bid or Successful Bids and confirmation of the Plan (the "Confirmation Hearing"). | June 19, 2023 at 10:00 a.m. prevailing Eastern Time, or a soon thereafter as the Debtors may be heard. |

18.    The timelines contemplated in the foregoing Sale Schedule and Confirmation Schedule are essential for the Debtors' swift emergence from chapter 11 and preserving the value of the Debtors' estates.  Accordingly, the Debtors believe the relief requested herein is in the best interest of the Debtors' estates, will provide interested parties with sufficient opportunity to participate, and, therefore, should be approved.

**III.    Form and Manner of Transaction Notice**.

19.    The Auction, if needed, will be held on February 17, 2023 at 10:00 a.m. prevailing Eastern Time (or such other date as selected by the Debtors) at the offices of the proposed

investment banker to the Debtors: Moelis & Company LLC, 399 Park Ave., 4th Floor, New York, NY 10022.

20.     As soon as practicable after entry of the Order, the Debtors will cause a notice of the Auction, the Order, and the Bidding Procedures, substantially in the form attached as <u>Exhibit 2</u> to the Order (the "<u>Transaction Notice</u>"), to be served on the parties that receive notice of this Motion. In addition, as soon as practicable after entry of the Order, the Debtors will post the Transaction Notice on their restructuring website, https://restructuring.ra.kroll.com/blockfi and publish the Transaction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition), *CoinDesk* (CoinDesk.com), and the Royal Gazette (if applicable), to provide notice to any other potential interested parties. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

21.     The Transaction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including the date, time, and place of the Auction (if any), the Bidding Procedures, and the dates and deadlines related thereto. Accordingly, the Debtors request that the form and manner of the Transaction Notice be approved and no other or further notice of the Auction be required.

## **Basis for Relief**

**I.     The Relief Sought in the Order Is in the Best Interests of the Debtors' Estates and Should Be Approved**.

22.     "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold." John J. Jerome & Robert D. Drain, <u>Bankruptcy Court is Newest Arena for M&A Action</u>, N.Y.L.J., June 3, 1991; *see In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Adams Res.*

15

*Expl. Corp.*, No. 17-10866, 2017 WL 5493616, at \*12 (Bankr. D. Del. May 24, 2017) ("The relief

requested in the Sale Motion is a necessary and appropriate step toward enabling the Debtor to

maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate

and its creditors.").   In furtherance of that goal, bidding procedures and bid protections, such as

those proposed here, may be used in court-supervised asset sales because they streamline the

acquisition process, "help to provide an adequate basis by which to compare offers," and maximize

value.  Jerome & Drain (1991) at 8, col. 4; *see In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa.

1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale

designed to maximize value for the estate."); *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 535

(3d Cir. 1999) (recognizing that bid protections "encourage a prospective bidder to do the due

diligence that is the prerequisite to any bid by assuring the prospective bidder that it will receive

compensation for that undertaking if it is unsuccessful"); *In re Dura Automotive Sys., Inc.*,

No. 06-11202, 2007 WL 7728109, at \*90 (Bankr. D. Del. Aug. 15, 2007) (recognizing that bidding

procedures "intended to enhance competitive bidding are consistent with the goal of maximizing

the value received by the estate and therefore are appropriate in the context of bankruptcy sales");

*Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147

B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to

encourage bidding and to maximize the value of the debtor's assets"); *In re Metaldyne Corp.*, 409

B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides

a floor for bidding by expending resources to conduct due diligence and allowing its bid to be

shopped around for a higher offer").   In overseeing an asset sale subject to an auction process, the

bankruptcy court must weigh:

> on the one hand, providing for an orderly bidding process, recognizing the danger
> that absent such a fixed and fair process bidders may decline to participate in the

auction; and, on the other hand, retaining the liberty to respond to differing circumstances so as to obtain the greatest return for the bankrupt estate.

*In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992).  Because the bankruptcy court must perform this balancing act, "a bankruptcy judge's broad discretionary power in conducting the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed" that "reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance the value of the estates before it."  *Id.* at 169–70; *see Dura Automotive*, 2007 WL 7728109, at *90 ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.").

23.    Here, the Debtors submit that the Bidding Procedures are a valid exercise of their business judgment, fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this district, and in the best interest of their estates.  Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In  re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.'  If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *Schipper*, 933 F.2d at 515 (internal citations and quotations omitted) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see Integrated Res.*, 147 B.R. at 656 (applying business judgment

rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence");.

24.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of their assets for the benefit of the Debtors' estates.  The proposed Bidding Procedures will allow the Debtors to conduct any Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Sale or consummate a Plan.  In particular, the Bidding Procedures contemplate an open and public marketing process with minimum barriers to entry and provide Potential Counterparties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

25.     The Debtors respectfully submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings in bankruptcy proceedings, and are consistent with the controlling legal standard in the Third Circuit.  Accordingly, the Debtors request that the Court approve the Bidding Procedures as a valid exercise of the Debtors' business judgment.

**II.     The Bid Protections Are Necessary and Appropriate and Should Be Approved**.

26.     In the event the Debtors seek to appoint a Stalking Horse Bidder, the Debtors seek authority to offer customary bid protections, including the Breakup Fee and Expense Reimbursement.  The use of a stalking horse in a public auction process for the sale of a debtor's assets is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *Off. Comm. of*

18

*Unsecured Creditors v. Interforum Holding LLC*, No. 11-CV-219, 2011 WL 2671254, No. 11-219, *1 (E.D. Wis. July 7, 2011).

27.    Generally, bidding protections, such as breakup fees, are a normal and, in many cases, necessary component of significant sales under the Bankruptcy Code.  *See Integrated Res.*, 147 B.R. at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets. . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be ***necessary*** to discharge [such] duties to maximize value.") (emphasis added).  As a result, courts routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) (holding that "[T]he allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees [a]re actually necessary to preserve the value of the estate.") (internal quotations omitted) (alterations in original); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *O'Brien*, 181 F.3d 527.  The Debtors believe that the allowance of the Bid Protections are in the best interests of the Debtors' estates and their creditors, as a Stalking Horse Bidder, if designated, will establish a floor for further bidding that may increase the consideration given in exchange for the Assets for the benefit of the Debtors' estates.

28.    In the Third Circuit, bidding protections, such as those proposed here, are subject to the general standard used for administrative expenses under section 503 of the Bankruptcy Code. *Energy Future*, 904 F.3d at 313 (citing *O'Brien*, 181 F.3d at 535); *Reliant Energy*, 594 F.3d at 206 (holding that the general standard used for all administrative expenses applies to break-up fees). Thus, "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of

the estate." *Reliant Energy*, 594 F.3d at 206 (internal quotations omitted) (quoting *O'Brien*, 181 F.3d at 535).

29.      The Debtors propose to pay the Bid Protections only in the event they determine, after good faith, arm's-length negotiations, and in consultation with the Committee, that designating a Stalking Horse Bidder would be necessary and beneficial for their estates.  Courts in this district have routinely approved breakup fees and/or expense reimbursements offered to stalking horse bidders.  *See, e.g.*, *In re Alliant Techs., L.L.C.*, No. 21-19748 (JKS) (Bankr. D.N.J. Jan. 21, 2022) [Docket No. 101] (approving bidding procedures and bidding protections including an expense reimbursement payable to the stalking horse bidder); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) [Docket No. 192] (approving bidding procedures and bidding protections including a breakup fee payable to the stalking horse bidder); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) [Docket No. 72] (same); *In re New England Motor Freight, Inc.*, No. 19-12809 (JKS) (Bankr. D.N.J. April 8, 2019) [Docket No. 427] (same); *In re Aceto Corp.*, No. 19-13448 (VFP) (Bankr. D.N.J. Mar. 19, 2019) [Docket No. 174] (same).

30.      Without the Bid Protections, a potential bidder may elect not to participate in the process at all to the detriment of the Debtors' estates.  The Bidding Procedures do not require the payment of the Bid Protections.  Rather, the Debtors have the option of paying or otherwise incurring such obligations in the event that offering such Bid Protections is necessary to foster a competitive bidding process that will maximize the value of the Debtors' estates.  In that instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Bid Protections.  In any case, granting the Debtors authority to offer the Bid Protections sends a

strong signal to the market that the Debtors are serious about running a competitive sale process to generate the best result for the Debtors and their estates.

31.    The Breakup Fee will not exceed three percent of any proposed purchase price. This is an amount that is well within market for transactions of this type, and which has been routinely approved by courts in this district.  *See, e.g.*, *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) [Docket No. 192] (approving breakup fee of up to three percent of the proposed purchase price); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) [Docket No. 72] (same); *In re New England Motor Freight, Inc.*, No. 19-12809 (JKS) (Bankr. D.N.J. April 8, 2019) [Docket No. 427] (same); *In re Aceto Corp.*, No. 19-13448 (VFP) (Bankr. D.N.J. Mar. 19, 2019) [Docket No. 174] (approving breakup fee of up to two percent of the cash component of the proposed purchase price); *In re East Orange Gen. Hosp.*, No. 15-31232 (VFP) (Bankr. D.N.J. Dec. 15, 2015) [Docket No. 171] (approving breakup fee of approximately four percent of the proposed aggregate consideration).

32.    Accordingly, for the reasons set forth above, the Debtors respectfully submit that the Court grant the Debtors the authority to incur and pay the Bid Protections to the extent the Bid Protections are necessary to preserve the value of the Debtors' estates.

### III.    The Form and Manner of Notice Should Be Approved.

33.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to such a sale.

34.    As soon as reasonably practicable following entry of the Order, the Debtors will cause the Transaction Notice to be served upon (a) the United States Attorney's Office for the District of New Jersey, (b) the Internal Revenue Service, (c) the attorneys general for the states in

which the Debtors operate, (d) any parties known or reasonably believed to have expressed an interest in the Debtors' assets, (e) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets, and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.

35.    The Debtors submit that the Transaction Notice constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the notice of the Transaction Notice.

**IV.    The Court Should Approve the Disclosure Statement Filing Deadline, Disclosure Statement Objection Deadline, and the Disclosure Statement Hearing.**

36.    Bankruptcy Rule 3017(a) requires that notice of the hearing to consider the proposed disclosure statement be provided to creditors and other parties in interest.  *See Fed. R. Bankr. P.* 3017(a) (providing that after a disclosure statement is filed, it must be mailed with the notice of the hearing to consider the disclosure statement and any objections or modifications thereto on no less than 28 days' notice thereof); *see also Fed. R. Bankr. P.* 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement).  The Debtors intend to file the Disclosure Statement on or before April 10, 2023.  Additionally, at least 28 days prior to the Disclosure Statement Objection Deadline, the Debtors will serve all known creditors with a copy of a notice for the hearing on the Disclosure Statement.

37.    Accordingly, the proposed Disclosure Statement Objection Deadline and Disclosure Statement Hearing date will provide parties in interest with sufficient notice of the Disclosure Statement Hearing and time to object to the Disclosure Statement.

**V.    The Court Should Approve the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing Date.**

38.    Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation.  11 U.S.C. § 1128.  Additionally, Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c); *see also* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).

39.    In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court (a) establish the Solicitation Deadline, (b) require all objections to the Plan be filed with the Court and served upon the applicable notice parties so as to be actually received on or before the Plan Objection Deadline, (c) require all ballots to accept or reject the Plan be properly executed, completed, and delivered so that they are actually received by the notice, claims, and solicitation agent on or before the Plan Voting Deadline, and (d) establish the date for the Confirmation Hearing.  The Debtors further request that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than such adjournment announced in open court and/or a notice of adjournment filed with the Court and served on the parties that have requested notice pursuant to Bankruptcy Rule 2002.

40.    The timeline contemplated in the Confirmation Schedule provides the Debtors with the requisite flexibility to pursue a Transaction that can be consummated through a Plan.

Scheduling the Confirmation Hearing on the date requested provides the Debtors with an outside date for implementation and effectuation of any Transaction on an expedient, but carefully calculated timeline.

### Request of Waiver of Stay

41.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their business and preserve the value of their estates.

### Waiver of Memorandum of Law

42.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### Reservation of Rights

43.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order

is not intended and should not be construed as an admission as to the validity of any particular

claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### **No Prior Request**

44.     No prior request for the relief sought in this Motion has been made to this Court or

any other court.

### **Notice**

45.     The Debtors will provide notice of this Motion to the following parties and/or their

respective counsel, as applicable: (a) the office of the U.S. Trustee; (b) the Committee; (c) the

United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service;

(e)  the U.S. Securities and Exchange Commission; (f) the attorneys general in the states where the

Debtors conduct their business operations; and (g) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no

other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: January 9, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*