**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' RESPONSE TO U.S. TRUSTEE'S OBJECTION TO DEBTORS' CONSOLIDATION AND REDACTION MOTION**

TO THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

BlockFi Inc. ("BlockFi") and its debtor affiliates (collectively, the "Debtors"), as debtors and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases") hereby file this *Debtors' Response to the U.S. Trustee's Objection to Debtors' Consolidation and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

3

*Redaction Motion* (the "Response"). In support of the Response, the Debtors respectfully state as follows:

### Preliminary Statement[2]

1. The Court should deny the U.S. Trustee's objection and authorize the Debtors to redact personally identifiable information from public filings. The U.S. Trustee is the lone objector to the Consolidation and Redaction Motion, seeking a one size fits all, mechanical application of sections 107(b) and (c) of the Bankruptcy Code and ignoring the application of the GDPR and unique privacy concerns presented here.

2. The Debtors, joined by the Committee, seek relief critical to maintaining the physical and financial security of BlockFi's clients and mitigating the ability of bad actors to target them. The evidence before this Court demonstrates that the risk of undue harm to BlockFi's clients from public disclosure of certain information is real. BlockFi clients must not be forced to face risks of cyberattacks, physical threats, and other harm from bad actors who seek to gain access to digital-asset information. The threats are real, not imagined or speculative. The more accessible a BlockFi client's name and personally identifiable information become, the more that client becomes a target. **BlockFi has always prioritized the safety and security of its clients and asks this Court to do the same by granting the Consolidation and Redaction Motion on a final basis.**

3. In addition, BlockFi asks this Court to grant the Consolidation and Redaction Motion to protect the integrity of the sale process and allow BlockFi to maximize the value of its client list in any potential asset sale. The value of the client list depends on it remaining confidential.

---

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings provided to them in the body of this Response.

4. In its objection, the U.S. Trustee ignores the evidence and asks this Court to limit the relief sought in the Consolidation and Redaction Motion[3], relying largely on the *Celsius* court's denial of similar relief. BlockFi, however, is not Celsius, and the U.S. Trustee fails to disclose the negative aftermath resulting from the ordered disclosures in *Celsius*. Moreover, the Debtors have already given the U.S. Trustee unredacted copies of the pleadings and papers filed to date, and parties in interest may make reasonable requests for the unredacted documents, so there is no benefit to be derived from public disclosure of the Protected Parties' information. To the extent any benefit to public disclosure exists, such benefit is outweighed by the harm that could be caused to the BlockFi estates and creditors. The Consolidation and Redaction Motion, and accompanying final order, strikes the proper balance between debtor transparency and client protection. In sum, this Court should overrule the U.S. Trustee's objection.

## General Background

5. On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed on the Petition Date and incorporated by reference herein.

6. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, this Court entered an order granting the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 42]. No request for the

---

[3] While the U.S. Trustee does not object to Debtors filing under seal the addresses or e-mail addresses of clients or other creditors who are individuals, it is requesting the public disclosure of the names, addresses and other contact information of BlockFi's clients and creditors who are not individuals.

appointment of a trustee or examiner has been made in these Chapter 11 Cases. On December 21, 2022, the Court appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases.

7. As described in the First Day Declaration, the Debtors conduct their business in the ordinary course on an international level, operating and maintaining clients in numerous countries other than the United States.

**Specific Background Related to this Response**

8. On the Petition Date, the Debtors filed *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Top 50 Unsecured Creditors and Consolidated List of Creditors, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information of Individual Creditors, Clients, Equity Holders, and Current and Former Employees, (III) Authorizing Client Name Redaction, (IV) Waiving the Requirement to File an Equity List and Provide Notices Directly to Equity Security Holders and (V) Granting Related Relief* [Docket No. 4] (the "Consolidation and Redaction Motion")[4] and the First Day Declaration, which provides the initial support for the Consolidation and Redaction Motion.

9. Through the Consolidation and Redaction Motion, the Debtors request authority to (i) file a consolidated list of the top 50 unsecured creditors (the "Top 50 List") and a consolidated list of creditors (the "Consolidated Creditor Matrix") and (ii) redact from the creditor matrix,[5] Top 50 List, Schedules and Statements,[6] any other document filed with the Court (a) the names, home

---

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Consolidation and Redaction Motion.

[5] The Debtors filed a short form creditor matrix with the Court following the Petition Date. The Debtors represented that they would file the larger .pdf creditor list once the Schedules and Statements were filed. The Schedules and Statements were filed on January 11, 2023. To avoid duplicative matrix filings, the Debtors intend to file the creditor matrix after the Court rules on the Consolidation and Redaction Motion.

[6] As described in note 4, the Schedules and Statements were filed on January 11, 2023 in compliance with the Interim Order.

6

and email addresses and other personal data of individuals who are citizens of the United States located in the United States, (b) the names, home and email addresses, and other personal data of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state or whose address is unknown, and (c) the names of the Debtors' clients (collectively, the Protected Parties").

10. At the first day hearing on November 29, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee"), objected to the Consolidation and Redaction Motion, specifically concerning the redaction of individual and client names. The Court granted the Consolidation and Redaction Motion on an interim basis over this objection. [Docket No. 53] (the "Interim Order"). As offered in the Consolidation and Redaction Motion and required under the Interim Order, the Debtors provided an unredacted Top 50 List to both the Court and the U.S. Trustee. The Debtors also agreed, and the Interim Order provides, that the Debtors will provide unredacted lists to any party in interest upon a request to the Debtors or the Court that is reasonably related to these Chapter 11 Cases, provided that the receiving party shall not transfer or otherwise distribute the unredacted documents to any other person or entity.

11. On January 10, 2023, the U.S. Trustee filed a formal objection to the Consolidation and Redaction Motion [Docket No. 232] (the "Objection"). Like the Office of the United States Trustee's objections in other cryptocurrency bankruptcy cases, the U.S. Trustee takes the position that the Court should deny the relief requested in the Consolidation and Redaction Motion because the Debtors have failed to establish the necessity for redaction under sections 107(b) and/or 107(c) of the Bankruptcy Code.

12. Aside from the U.S. Trustee's Objection, the Debtors did not receive any formal or informal objection to the Consolidation and Redaction Motion. On January 10, 2023, the

Committee filed a joinder to the Debtors' Consolidation and Redaction Motion [Docket No. 234] (the "Committee Joinder"). In its Joinder and supporting Galka Declaration, the Committee supports the relief requested in the Consolidation and Redaction Motion and agrees that cause exists to grant such relief pursuant to sections 107(b) and (c) of the Bankruptcy Code. Committee Joinder ¶¶ 4–15.

13. In further support of the Consolidation and Redaction Motion and this Response, the Debtors have filed the *Supplemental Declaration of Mark Renzi in Support of Debtors' Consolidation and Redaction Motion* (the "Supplemental Renzi Declaration") and *Declaration of Brian Tichenor of Moelis & Company, LLC in Support of Debtors' Consolidation and Redaction Motion and Declaration in Support of Debtors' Sealing Motion* (the "Tichenor Declaration") contemporaneously with this Response.

**Response**

**A. Cause Exists to Grant the Consolidation and Redaction Motion Pursuant to Section 107(c)**

14. Redaction is necessary to protect information that would create "undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1). The undue risk associated with publicly disclosing the Protected Parties' personally identifiable information is real, "[a]nd while this Court has authority to permit redaction of names and personal information in any bankruptcy case, BlockFi's case uniquely requires it." Supp. Renzi Decl. ¶ 9.

15. The overwhelming majority of BlockFi's creditors are their clients, most of whom are individuals. *Id.* Additionally, the cryptocurrency industry operates on the assumption and necessity that private information remains private. *See id.* Users of digital assets are in possession of the private keys to permit blockchain transactions to be initiated and completed, making these users targets of hacking, phishing, and other types of scamming. *Id.*; *see also* Committee Joinder

8

¶ 5 (explaining that denying the redaction relief would put "BlockFi account holders [at] an unreasonable risk of, among other things: (i) identity theft, (ii) verbal and physical harassment, (iii) theft and/or robbery, and (iv) hacking."). The names and other personally identifiable information of the BlockFi clients "in the wrong hands can pose significant risks (both in terms of monetary loss and personal safety) to account holders." Committee Joinder ¶ 5.

16. Courts in this Circuit and others have recognized the risk of harm in disclosing the names and personal information of the parties impacted by the current state of the cryptocurrency industry and have granted similar relief to that requested in the Debtors' Consolidation and Redaction Motion. *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del. Nov. 23, 2022 and Jan. 11, 2023) [Docket No. 157 and Hr'g. Tr. 102-105] (granting interim order and extended order authorizing debtors to redact the names, addresses and e-mail addresses of cryptocurrency clients from any filings with the court or made publicly available in the debtors' chapter 11 cases); *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) [Docket No. 54] (authorizing redaction of names and personally identifiable information for Voyager customers and creditors); *In re Cred Inc.*, *et al.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) [Docket Nos. 34 and 264] (authorizing the debtors to redact or withhold publication of customer and creditor names and addresses).

17. Out of the cryptocurrency bankruptcy cases, only the *Celsius* court has required disclosure of client names. *In re Celsius Network, LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. Sept. 28, 2022) [Docket No. 910]. The *Celsius* court allowed the debtors to redact individual addresses and email addresses but required disclosure of individual names and institutional names and addresses. The consequences of the ordered disclosures in *Celsius* were "severe." Committee Joinder ¶ 6. "In addition to causing outrage and panic amongst the creditors, some creditors became the victim of phishing scams. Scammers posed as debtors' counsel using

9

fake email accounts from Kirkland & Ellis and requested that the creditors reply with their account information." Supp. Renzi Decl. ¶ 14 and Ex. B; *also* Committee Joinder ¶ 6 (explaining that searchable lists were created from the unredacted *Celsius* filings listing the *Celsius* customer information including names and transaction histories).[7]

18.  For the Debtors, "client and creditor protection remain paramount." Supp. Renzi Decl. ¶ 9. The last thing the Debtors desire is for their clients to suffer harm due to mandated disclosures, especially given that, as the Committee noted, such clients are already "reeling from instability of recent weeks." Committee Joinder ¶ 11. The situation in *Celsius* could have been avoided, and the same fate for the BlockFi clients can be avoided here. Supp. Renzi Decl. ¶ 15. Thus, the Debtors submit that this Court should grant the Consolidation and Redaction Motion on a final basis pursuant to section 107(c).

**B. Cause Exists to Grant the Consolidation and Redaction Motion Pursuant to Section 107(b)**

19.  This Court should also grant the Consolidation and Redaction Motion based on section 107(b) of the Bankruptcy Code. The Debtors' client list is a valuable asset that, if publicized, would thwart the Debtors' ability to reorganize or realize value from the client list. Section 107(b)(1) is designed to protect against this kind of threat to the Chapter 11 Cases. FED. R. BANKR. P. 9018 (". . . the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential . . . commercial information . . . .").

20.  Since the beginning, BlockFi has spent significant time and resources building its client base. Supp. Renzi Decl. ¶ 8. The time and resources spent on developing the BlockFi client

---

[7] Judge Glenn recently recognized the *Celsius* aftermath in his XClaim opinion, which emphasized the importance of protecting PII. In re Certain Claims and Noticing Agents' Receipt of Fees in Connection with Unauthorized Arrangements with XClaim Inc., Misc. Pro. No. 22-00401 (MG), *Mem. Op. and Order Striking the XClaim Submission and Sanctioning the XClaim Accountholders* [Docket No. 50] (Bankr. S.D.N.Y. Dec. 8, 2022).

10

list make it a valuable asset. *Id.* Indeed, the client list is one of "the Debtors' most valuable assets, and it is valuable **precisely because it is not public, and not available to the Debtors' competitors**." Tichenor Decl. ¶ 9 (emphasis added). Keeping the client list and accompanying personal information redacted is necessary to preserve the value of the client list in the Debtors' marketing process. "[D]isclosure of the client list would diminish any value it would have in the sale process." *Id.*

21. The U.S. Trustee asserts that the BlockFi client list is "not secret or confidential" because the Privacy Policy provides for instances in which the Debtors may disclose certain information to others. But there is nothing in the BlockFi Privacy Policy that negates the Debtors' ability to maintain the confidentiality of the client list. "While the Privacy Policy details circumstances in which BlockFi **may** disclose certain client information, the Privacy Policy does not provide, **and BlockFi's clients have never consented to**, unrestricted, public disclosure of their personally identifiable information." Supp. Renzi Decl. ¶ 5 and Ex. A (emphasis added).

22. The U.S. Trustee further asserts that the Privacy Policy "allows the Debtors to share information if legally required to do so, as they are here, under the statutory requirements of the Bankruptcy Code." Objection ¶¶ 64–65. The language in the Privacy Policy regarding disclosure to comply with the law or law enforcement plainly contemplates maintaining confidentiality where possible. Moreover, the Bankruptcy Code does not flatly obligate the Debtors to disclose this information. Rather, this Court has the discretion to authorize the Debtors to redact this information under section 107. This Court should exercise that discretion and grant the Consolidation and Redaction Motion on a final basis to preserve the value of the estates for the benefit of all parties in interest. "Redacting the Protected Parties' personal information will protect the client list asset and help preserve trust in the platform." Supp. Renzi Decl. ¶ 8.

11

### C. Cause Exists to Authorize the Debtors to Redact Individual Creditor and Equity Holder Names and Addresses Pursuant to the GDPR

23. There is also cause to authorize the redaction of individual non-client creditor and equity holder names to comply with the GDPR. The Court should permit the names, in addition to the home addresses and email addresses, of EU and UK citizens, and those individuals whose citizenship is unknown, to be redacted. Failure to comply with the GDPR may subject the Debtors to substantial potential fines and penalties to the detriment of the estates and the Debtors' creditors. Moreover, the U.S. Trustee has fundamentally misinterpreted and misunderstood the the intention and legal effect of the GDPR and the Privacy Policy in relation to both the Debtors' obligations and an individual data subject's rights under the GDPR.

24. *First*, the U.S. Trustee mischaracterizes the Debtors' desire to comply with the GDPR as an attempt to "eviscerate" the long-standing disclosure requirements of the Bankruptcy Code and Bankruptcy Rules and supplant them with the GDPR. Objection ¶ 80. This is not true. The redaction relief requested in the Consolidation and Redaction Motion is a merely a less intrusive way for the Debtors to share Personal Data of GDPR subjects while still complying with the requirements of the Bankruptcy Code. By redacting names on the public docket, the Debtors are protecting creditors' interests and right to privacy while also abiding by one of the foundational principles of the EU GDPR and UK GDPR by minimizing processing to that which is necessary to achieve the relevant purpose. Article 5(1)(c) UK GDPR and EU GDPR.[8]

25. *Second*, the U.S. Trustee argument that the GDPR only applies to the processing of the Personal Data of citizens of the UK or a member state of the EU is misplaced. Article 3 of the GDPR is clear that the GDPR applies to the processing of Personal Data as follows: (i) in the context of the activities of an establishment of a controller or a processor in the UK or EU; and

---

[8] Personal data shall be: . . . (c) adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed ('data minimisation'). Article 5(1)(c) UK GDPR and EU GDPR.

12

(ii) of "data subjects who are in" the UK or the EU where the processing activities are related to the offering of goods or services or the monitoring of behaviour.[9] There is no limitation on the application of the GDPR to citizens of the UK or an EU member state.

26. **_Third_**, the U.S. Trustee's argument that Debtors can eliminate their GDPR risk if they obtain consent from the relevant GDPR supervisory authorities is misleading. Objection ¶ 86. Regardless of whether the Debtors are able—whether in the available period or at all—to obtain the consent of all relevant GDPR supervisory authorities for their disclosure of unredacted Personal Data in the context of these proceedings, the U.S. Trustee does not appreciate that GDPR supervisory authorities are not the sole source of GDPR risk to the Debtors. In addition, breaches of the GDPR are directly enforceable by data subjects both individually and as part of class actions. Such actions do not require any financial loss to have been suffered, and the commencement of such actions can cause substantial disruption and cost implications even if ultimately unsuccessful.

27. **_Fourth_**, the U.S. Trustee's position that Personal Data may be lawfully processed (*i.e.*, lawfully provided to the Court) by the Debtors in the context of these cases *because of* the Debtors' Privacy Policy is incorrect. Objection ¶¶ 24, 64, 65, 73. Again, the U.S. Trustee misunderstands the purpose and effect of the Privacy Policy. In particular, the U.S. Trustee asserts that "*the Privacy Policy allows the Debtors to share privacy information if legally required to do so, as they are here, under the statutory requirements of the Bankruptcy Code.*" Objection ¶ 65 (emphasis added). This is an incorrect application of the GDPR. The purpose and effect of such a privacy notice under the GDPR is to provide processing information to the relevant individuals

---

[9] This Regulation applies to the relevant processing of personal data of data subjects who are in the United Kingdom by a controller or processor not established in the [European Union or United Kingdom] where the processing activities are related to: (a) the offering of goods or services, irrespective of whether a payment of the data subject is required, to such data subjects in the [European Union or United Kingdom]; or (b) the monitoring of their behaviour as far as their behaviour takes place within the [European Union or United Kingdom]. Article 3(2) of UK GDPR and EU GDPR.

13

that is sufficient to discharge the controller's "transparency obligation" under Articles 5(1)(a), 12 and 13 of the GDPR. A privacy notice is not determinative of whether a controller has a lawful basis for the processing described, which is a free-standing obligation under the GDPR.

28. ***Finally***, the U.S. Trustee misunderstands the GDPR in arguing that Personal Data may be lawfully processed by the Debtors in the context of these proceedings (*i.e.*, lawfully provided to the Court) pursuant to the so-called Legal Claim Exception under Article 44 of the GDPR and that the GDPR "facially appears to permit the disclosure" of the Personal Data of covered individuals because the "transfer" is "necessary for the establishment, exercise or defence of legal claims" citing Article 49(1)(e) of the GDPR. Objection ¶ 82. One cannot read Article 44 in a vacuum. As the U.S. Trustee expressly acknowledges in paragraph 51 of the Objection, the application of the Legal Claim Exemption is subject to the other provisions of the GDPR. Moreover, the U.S. Trustee conflates "processing" and "transferring," which are subject to separate and independent requirements in the GDPR. The "Legal Claim Exception" contained in Article 49 of the GDPR applies only to the ***transfer*** of personal data from an EU member state or the UK to another country. *Id*. (emphasis added). It does not provide an independent basis for a company subject to the GDPR to ***process*** personal data under Article 6 of the GDPR, which includes public disclosure. Rather, Article 6 of the GDPR explicitly states that processing "shall be lawful only if and to the extent that at least one of the" legal bases set out in Article 6 applies. *GDPR* Art. 6. The Legal Claim Exception is not one of those listed legal bases.

## Conclusion

**WHEREFORE**, based on the foregoing, the Debtors respectfully request that the Court (i) grant the Motion, (ii) overrule the U.S. Trustee's objection, and (iii) grant such other and further relief as is just and proper.

14

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 13, 2023 | /s/ *Michael D. Sirota* |

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and
Debtors in Possession*