**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al.*,<br><br>　　　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

# DECLARATION OF BRIAN TICHENOR OF MOELIS & COMPANY, LLC IN SUPPORT OF DEBTORS' CONSOLIDATION AND REDACTION MOTION AND DECLARATION IN SUPPORT OF DEBTORS' SEALING MOTION

---

[1]　　　　The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

I, Brian Tichenor, pursuant to 28 U.S.C. § 1746, declare:

1.       My name is Brian Tichenor. I am over the age of 21. I am a Managing Director of Moelis & Company, LLC ("Moelis"), the proposed investment banker, capital markets advisor, and financial advisor for the debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "BlockFi" or the "Debtors"). Accordingly, I am in all respects competent to make this Declaration (the "Declaration").

2.       I have over 10 years of investment banking experience advising companies, equity investors, financial vehicles, and creditors across a broad range of industries and geographies in a broad range of transactions. Prior to joining Moelis, I was in the corporate and investment banking group at Citigroup Inc. where I focused on investment banking advisory transactions in the Financial Institutions Group. I hold Bachelor of Science degrees in finance and computer science from Boston College and have a Master's of Business Administration degree from Georgetown University.

3.       I have been involved in several notable chapter 11 cases and restructuring assignments, including as advisor to the ad hoc group of senior unsecured noteholders in Walter Investment Management Corporation's $4.1 billion restructuring; and as advisor to New Residential Investment Corporation's $1.2 billion acquisition of select assets from Ditech Holding Corporation pursuant to a section 363 asset sale. I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including advising New Residential Investment Corporation in its $600 million recapitalization and restructuring, Ambac Financial Group in its $18 billion restructuring of Puerto Rico's sales tax financing corporation (COFINA), Syncora Guarantee Inc. in its $13.5 billion reinsurance of financial guarantee policies to Assured Guarantee Corporation and other liability management including the sale of its operating business

to GoldenTree Asset Management, Ambac Financial Group on its $557 million exchange offer of its Auction Market Preferred Shares, Ambac Financial Group on its $538 million exchange of Corolla Trust obligations and Junior Surplus Notes, an approximately $10 billion ad hoc group of non-litigating preferred shareholders in a proposed $6.9 trillion restructuring of Fannie Mae and Freddie Mac, secured lenders of AG Mortgage Investment Trust in its $3.0 billion restructuring of its repurchase agreement portfolio and secured lenders of MFA Financial, Inc. in its $5.8 billion restructuring of its repurchase agreement portfolio.

4.      Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the other professionals in this case and/or employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations. I am authorized to submit this Declaration on the Debtors' behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## **Moelis' Qualifications**

5.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,000 employees with geographic locations in North and South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

6.     Moelis provides a broad range of financial advisory and investment banking services to its clients, including:  (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as financial advisors, and/or investment bankers in numerous cases, including:  *In re Revel AC, Inc.*, No. 14-22654 (MBK) (Bankr. D.N.J. Aug. 1, 2014); *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Aug. 11, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. June 29, 2021); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).[2]

**The Consolidation and Redaction Motion**

7.     On the Petition Date, the Debtors filed *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Top 50 Unsecured Creditors and Consolidated List of Creditors, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information of Individual Creditors, Clients, Equity Holders, and Current and Former Employees, (III) Authorizing Client Name Redaction, (IV) Waiving the Requirement to File an Equity List and Provide Notices Directly to Equity Security Holders and (V) Granting Related*

---

[2]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

*Relief* [Docket No. 4] (the "Consolidation and Redaction Motion")[3] and the *Declaration of Mark Renzi in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 17] (the "First Day Declaration"), which provides the initial support for the Consolidation and Redaction Motion. Through the Consolidation and Redaction Motion, the Debtors requested authority to file a consolidated list of the top 50 unsecured creditors (the "Top 50 List") and a consolidated list of creditors (the "Consolidated Creditor Matrix"), (ii) redact from the creditor matrix, Top 50 List, Schedules and Statements, any other document filed with the Court (a) the names, home and email addresses and other personal data of individuals who are citizens of the United States located in the United States, (b) the names, home and email addresses, and other personal data of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state or whose address is unknown, and (c) the names of the Debtors' clients (collectively, the "Protected Parties").

8.      At the hearing on the first day motions on November 29, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee"), objected to the Consolidation and Redaction Motion, specifically with respect to the redactions of individual and client names. Over the U.S. Trustee's objection, the Court granted the Consolidation and Redaction Motion on an interim basis. [Docket No. 53] (the "Interim Order"). As offered in the Consolidation and Redaction Motion and required under the Interim Order, the Debtors provided an unredacted Top 50 List to both the Court and the U.S. Trustee.  The Debtors also agreed, and the Interim Order provides, that the Debtors will provide unredacted lists to any party in interest upon a request to the Debtors or the Court that is reasonably related to these Chapter 11 Cases; provided that the

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Consolidation and Redaction Motion and the Sealing Motion.

receiving party shall not transfer or otherwise distribute the unredacted documents to any other person or entity.

### BlockFi's Client List is an Asset Requiring Protection

9.        As a result of the difficulty of building client lists in this industry and the time and expense that it takes any cryptocurrency business to create a client list, the Debtors' client list is a valuable asset, and disclosure of the client list would diminish any value it would have in the sale process. The Debtors are currently engaged in an active and ongoing marketing process to obtain the highest value reasonably available under the circumstances.  The Debtors' client list is one of the Debtors' most valuable assets, and it is valuable precisely because it is not public, and not available to the Debtors' competitors.  As such, the BlockFi client list should be protected from publication to ensure the Debtors' estates receive value for the client list in any proposed sale arising out of the marketing process.

### The Sealing Motion Protects the Sale Process

11.        On December 19, 2022, the Debtors also filed the *Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal the Names of Certain Confidential Parties in Interest Related to the Debtors' Professional Retention Applications* [Docket No. 127] (the "Motion to Seal"). Through the Motion to Seal, the Debtors seek authority to redact and file under seal the names of the Confidential Transaction Parties in connection with the Debtors' Professional Applications.

12.        The Sealing Motion should be granted to protect the integrity of the sale process. As noted above, the Debtors are currently engaged in an active and ongoing marketing process for obtaining the highest value reasonable available under the circumstances. I understand that, to protect the Debtors' commercially sensitive information while providing the necessary disclosures

required under the Bankruptcy Code and the Bankruptcy Rules for their retention, the Debtors' Professionals disclosed in their schedules their relationships with certain of the Debtors' potential transaction counterparties (the "<u>Confidential Transaction Parties</u>") without disclosing the names of such entities and individuals.

13.     Due to the inherently competitive nature of the marketing process, I believe revealing potential counterparties may chill the marketing process by preventing current potential counterparties from moving forward with negotiations and deterring potential counterparties from getting involved in the sale process. Additionally, I understand that certain of the Confidential Transaction Parties have executed non-disclosure agreements with the Debtors that require that their identities remain confidential, and I believe disclosure of their identities may unduly disrupt the Debtors' efforts to consummate a transaction with the highest value reasonably available under the circumstances. Disclosing the identities of the potential counterparties before a transaction is negotiated in violation of the underlying confidentiality agreements could severely hamper the sensitive negotiations between the Debtors and the potential counterparties, to the detriment of the marketing process, and interfere with the Debtors' ability to obtain the highest value reasonably available under the circumstances for the benefit of their estates and all stakeholders. As such, I believe the relief requested in the Sealing Motion is in the best interest of the Debtors' estates and their creditors and should be granted.

*[Remainder of page intentionally left blank]*

I hereby declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2023

By: /s/ *Brian Tichenor*
      Brian Tichenor
      Managing Director
      Moelis & Company, LLC