| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| BROWN RUDNICK LLP <br> Robert J. Stark, Esq. <br> Kenneth J. Aulet, Esq. <br> Bennett S. Silverberg, Esq. <br> Seven Times Square <br> New York, NY 10036 <br> Telephone: (212) 209-4800 <br> Fax: (212) 209-4801 <br> Email: rstark@brownrudnick.com <br>        kaulet@brownrudnick.com <br>        bsilverberg@brownrudnick.com <br> *Proposed Counsel for the Official Committee of Unsecured Creditors* <br>  -and- <br> GENOVA BURNS LLC. <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> Gregory S. Kinoian, Esq. <br> 110 Allen Rd., Suite 304 <br> Basking Ridge, NJ 07920 <br> Telephone: (973) 230-2095 <br> Fax: (973) 533-1112 <br> Email: DStolz@genovaburns.com <br>        DClarke@genovaburns.com <br>        GKinoian@genovaburns.com <br> *Proposed Local Counsel for the Official Committee of Unsecured Creditors* | BROWN RUDNICK LLP <br> Stephen D. Palley, Esq. <br> 601 Thirteenth Street, NW <br> Washington, DC 20005 <br> Telephone: (202) 536-1700 <br> Fax: (202) 536-1701 <br> Email: spalley@brownrudnick.com |
| In re: <br><br> BLOCKFI INC., *et al.,* <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 22-19361 (MBK) <br><br> Jointly Administered |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

64949316 v5

**REPLY IN OPPOSITION TO THE UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO FILE A CONSOLIDATED LIST OF TOP 50 UNSECURED CREDITORS AND CONSOLIDATED LIST OF CREDITORS, (II) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUAL CREDITORS, CLIENTS, EQUITY HOLDERS, AND CURRENT AND FORMER EMPLOYEES, (III) AUTHORIZING CLIENT NAME REDACTION, (IV) WAIVING THE REQUIREMENT TO FILE AN EQUITY LIST AND PROVIDE NOTICES DIRECTLY TO EQUITY SECURITY HOLDERS, AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned Chapter 11 cases of BlockFi, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or "**BlockFi**"), respectfully files this reply in opposition to the *United States Trustee's Objection to the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidation List of Top 50 Unsecured Creditors and Consolidated List of Creditors, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information of Individual Creditors, Clients, Equity Holders, and Current and Former Employees, (III) Authorizing Client Name Redaction, (IV) Waiving the Requirement to File an Equity List and Provide Notices Directly to Equity Security Holders, and (V) Granting Related Relief* [Docket No. 232] (the "**UST Objection**" and the underlying Debtors' motion, the "**Consolidation and Redaction Motion**").[2]  In support of this reply, the Committee states as follows:

**Preliminary Statement**

1.  This is not a typical Chapter 11 case.  The personal safety of the Debtors' individual clients is at serious risk.  Any potentially favorable outcome for the Debtors' clients in this case will be all for naught if their safety cannot be ensured.  If the UST Objection is sustained,

---

[2]  Docket No. 4; the Committee previously filed a Joinder in support of the Consolidation and Redaction Motion [Docket No. 234].

the names of all individual clients will provide a roadmap for attacks by the unscrupulous predators already known to prey on similarly situated customers in similar cases. This is not a phantom threat or mere paranoia: attacks on cryptocurrency customers have already occurred.

2. The public's right of access to judicial records in these Chapter 11 cases is not absolute, and the Bankruptcy Code expressly contemplates situations, like here, where overriding interests must come first. The dissemination of account holders' personally identifiable information (even just their name) leaves the Debtors' individual clients acutely susceptible to a whole host of dangers, primarily (a) identity theft, (b) verbal and physical harassment, (c) theft and/or robbery, and (d) hacking. Even worse, once released, this disclosure cannot be undone and leaves individual clients at ongoing risk of harm.

3. The severe consequences that will result if the UST Objection is sustained can, and must be, avoided. The Committee urges this Court to grant the Consolidation and Redaction Motion.

**Argument**

4. The United States Trustee (the "**UST**") downplays the risks of the Court denying the Consolidation and Redaction Motion, characterizing "speculative harm" and that "[a]s to customers who are individuals, it is difficult to imagine how they could be poached if all that is disclosed is their name, with no contact information." *See* UST Objection at ¶ 66. The UST's position is demonstrably incorrect and insensitive to the Debtors' clients.

5. The UST incorrectly contends that it seeks only "the mere disclosure of [customer] names" and that such disclosure does not create an undue risk of theft, unlawful injury, or identity theft of individual customers. UST Objection at ¶ 75. The reality is that the UST seeks to require client names *and associated account balances* to be disclosed. The UST seeks to unredact the

3

Debtors' schedules, which associate each name with a specific account balance, which will enable any party to scrape the relevant data and quickly determine BlockFi's clients with significant cryptocurrency holdings. This risk is not merely theoretical: it happened nearly immediately following the unredaction of customer names in Celsius.

6. After individual customer names (along with their corresponding holdings) were released in the Celsius bankruptcy, searchable lists containing such information were then created online, where investors were subject to harassment and mockery.[3] Even at that time, it was observed that the exposure subjected customers to unreasonable risks of hacking and physical harm, especially due to the ability of hackers and thieves to cross-reference bankruptcy disclosures (of nothing more than names) with information leaked into the public domain following breaches of unrelated databases.[4]

7. Crypto investors are notoriously at risk of not only getting hacked or having their identity stolen, but also physically attacked so bad actors can gain access to their crypto wallets.[5] In one notable case, an entrepreneur was targeted by masked robbers targeting his bitcoin, who physically tortured him to force him to reveal passwords to bank accounts and electronic wallets.[6]

---

[3] *See, e.g., Mack DeGeurin, New Tool Shows the Biggest Losers in the Celsius Crypto Meltdown,* Gizmodo, Oct. 10, 2022, available at https://gizmodo.com/crypto-celsius-1849637951zmodo.com/crypto-celsius-1849637951.

[4] *See Samuel Wan, 'Horrendous' KYC risks on show as website detailing Celsius users' losses goes live*, CryptoSlate, Oct. 10, 2022, available at https://cryptoslate.com/horrendous-kyc-risks-on-show-as-website-detailing-celsius-users-losses-goes-live/ (explaining that Celsius account holders are subject to the risk that Celsius' information could be cross-referenced with details from the recent Ledger hack to identify and target specific crypto holders).

[5] *See Nathaniel Popper, Bitcoin Thieves Threaten Real Violence for Virtual Currencies,* The New York Times, Feb. 18, 2018, available at https://www.nytimes.com/2018/02/18/technology/virtual-currency-extortion.html (outlining the troubling rise of dangerous crypto robberies in large part due to the nuanced difficulties associated with recovering stolen crypto).

[6] *See, e.g., Zahra Tayeb, An entrepreneur told police he was tortured for several hours by masked criminals attempting to steal his bitcoin millions*, Business Insider, Nov. 7, 2021, available at https://www.businessinsider.com/masked-robbers-attempted-to-steal-bitcoin-millions-from-entrepreneur-

8. Describing the risks present in this case as "speculative" is beyond insensitive; it is reckless. The dangers are known and the fears of BlockFi's clients are real. It is not speculative to suggest that history might repeat itself.

9. In the face of evidence, the UST relies heavily on the recent decision in the Celsius bankruptcy, where the SDNY Bankruptcy Court sustained the UST's objection to Celsius' request to have names of its individual customers redacted in its public filings. *See In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. Sep. 28,2022) (ECF Doc. #910) (the "Celsius Opinion"). Respectfully, the Celsius Opinion was wrong, and it exposed customers to significant harm as discussed above.

10. Regardless, reliance on the Celsius Opinion is misplaced. In that non-binding opinion, the court conceded that it was departing from recent trending decisions – including a decision within this Circuit - permitting redaction in crypto bankruptcy cases.[7] *Id*. The concerns raised by the UST in Celsius and in these cases, that these trending decisions lead down a "slippery slope," arises from its misunderstanding of these cases: Neither Celsius nor this case are commercial Chapter 11 cases designed to resolve disputes with money center banks, distressed

---

spain-2021-11 (shedding light on the disturbing story of an entrepreneur who was tortured by masked robbers targeting his bitcoin millions and forced to reveal the passwords to his bank accounts and electronic wallets).

[7] Celsius Opinion at p. 24:

> The Court recognizes that in sustaining the U.S. Trustee's objection to sealing, the Court declines to follow decisions in several other recent bankruptcy cases, including one in this district. *See In re Voyager Digital Holdings, Inc., et al.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) (ECF Doc. ## 112, 113) (authorizing debtor in another crypto case to redact the names of "Confidential Parties," including customers, in addition to authorizing the debtors to redact home addresses of individuals listed on the creditor matrix or other documents filed with the court, and the names and addresses of individuals protected by the GDPR; *In re Cred, Inc*., No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) (sealing confidential information including the names, mailing and email addresses of customers); *see also In re Altegrity, Inc*., No. 15- 10226 (LSS), 2015 WL 10963572, at *3 (Bankr. D. Del. July 6, 2015) (holding that the identities of the debtor's independent contractors were commercial information under section 107(b) where "[the debtor] has expended considerable effort and money to develop its network of Independent Contractors, and the Independent Contractors are highly susceptible to solicitation").

debt investors, or real property lessors. This case is easily more akin to recent "mass tort" cases common to this Circuit, where victims of assault and environmental harms with significant reason to fear traumatization, reprisal, and exposure of financial and medical information are routinely protected by the courts.[8]

11. Along those lines, much of the concerns advanced by the UST (*i.e.*, "Do the Debtors intend to conduct all of their claim objections under seal? … Will objections to the disclosure statement and confirmation also be sealed?") miss the point. *See* UST Objection at ¶ 4. It remains to be seen how claims objections might be handled, and indeed, in past cases in this Circuit, bankruptcy courts have protected claimant identities even in such circumstances.[9] Regardless, there may come a time when clients may come forward and identify themselves to seek relief before the Court (and some have done so already); it is neither necessary nor equitable to require them to be identified without their consent at this stage.

12. Finally, the Committee reiterates that while the personal safety of the Debtors' individual account holders remains its primary concern, the release of account holders' personally identifiable information would unnecessarily deplete estate value to the detriment of all stakeholders. To maximize the value of the estate it is critical that BlockFi preserve the value of all remaining assets, and BlockFi's client list (and the estate itself) would immediately lose value if the UST's objection were sustained and the information made publicly available.

13. The Delaware bankruptcy court in *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del.) is instructive, regarding similar balancing concerns in a cryptocurrency context. In

---

[8] *See, e.g.*, *In re Boy Scouts of America*, Case No. 20-10343 (LSS) (Bankr. D. Del.) Docket No. 799 (protective order restricting access to claimant identifying information).

[9] *See, e.g.*, *id.* at Docket No. 10316 (order confirming plan providing for resolution of tort claims through trust).

overruling the UST's objection, the bankruptcy court noted that "there is at least some credible argument that the . . . customer list of the – of the debtors is – has some intrinsic value, and that disclosure of that list could affect the ability of the debtors to market and sell that list as a part of their going toward a plan of reorganization here." Hr'g Tr. at 113:20–25; 114:1–16, ECF Doc. # 277). As in *Cred*, the economic benefit of sealing the information, alone, outweighs the transparency interests at stake.

14. The Debtors' clients have been harmed enough. This bankruptcy should not increase that harm. The Consolidation and Redaction Motion should be granted.

WHEREFORE, this Court should grant the Consolidation and Redaction Motion, overrule the UST Objection thereto, and grant related relief.

Dated: January 13, 2023

By: */s/ Daniel M. Stolz*
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Fax:         (973) 533-1112
Email:     DStolz@genovaburns.com
               DClarke@genovaburns.com
         GKinoian@genovaburns.com
*Proposed Local Counsel for the Official*
*Committee of Unsecured Creditors*