**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap (NJ Bar No. 030942003)
875 Third Avenue
New York, NY 10022
(212) 808-2726
deborah.kovsky@troutman.com

*Counsel for the Ad Hoc Committee of
Wallet Account Holders*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 Case No. 22-19361 (MBK) |
| BLOCKFI INC., *et al.*[1] | (Jointly Administered) |
| Debtors. | |

**STATEMENT OF THE AD HOC COMMITTEE OF WALLET ACCOUNT HOLDERS IN RESPONSE TO THE DEBTORS' STATEMENT REGARDING THEIR WALLET WITHDRAWAL MOTION [DOCKET NO. 339]**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**Statement**

1.  The Debtors' protestation that they seek only to "do right by their clients" rings completely hollow. *See* Debtors' Statement, Docket No. 339, ¶ 1. What the Debtors actually seek to do is obtain a judgment that as much as $375 million in assets transferred out of BlockFi Interest Accounts by their clients – including the members of the Ad Hoc Committee – are property of the estate, without commencing an adversary proceeding and without affording clients the basic due process or the ability to take discovery to challenge the Debtors' factual assertions. This is not "doing right" by their clients. It is trying to bulldoze over one set of clients for the benefit of another, apparently purely for the purpose of expedience. What the Debtors seek to do here is totally at odds with the letter and spirit of the Bankruptcy Code and Rules.

2.  In their Wallet Withdrawal Motion, the Debtors squarely raise the question of the validity of the $375 million in transfers and ask the Court to allow them to reverse those transactions. The Debtors now profess shock that clients who the Debtors previously confirmed in writing did in fact transfer out of BIA have objected, and fault the Ad Hoc Committee for standing in the Debtors' way of accomplishing their goal. Given that the Debtors' goal appears to be ***trampling on the rights of their clients***, the Ad Hoc Committee intends to continue to stand in their way.

3.  The Ad Hoc Committee absolutely agrees that assets that belong to customers should be returned to their rightful owners as soon as possible. In order for that to happen, there first must be a determination whether the assets that the Ad Hoc Committee members and others transferred out of BIA belong to them.

4.  The Debtors' statement that the Ad Hoc Committee has "initiated needless, burdensome, and wasteful discovery and litigation," Debtors' Statement ¶ 3, has no basis in fact.

#141984910 v1

As an initial matter, the Ad Hoc Committee is entitled to obtain discovery from the Debtors in this contested matter before their rights to their assets are summarily terminated. Any discovery that the Ad Hoc Committee may initiate in this regard is neither needless nor wasteful—and if it is burdensome, the Ad Hoc Committee respectfully points out that the *Debtors* are the ones who initiated this dispute and created the burden.

5. Furthermore, notwithstanding the Debtors' baseless allegations, the Ad Hoc Committee has not yet requested so much as a scrap of paper from the Debtors. To the contrary, counsel for the Ad Hoc Committee proposed to counsel for the Debtors a streamlined process for obtaining targeted information through submission of a list of questions to be answered by declaration. Counsel for the Debtors as recently as Friday indicated that this process would be acceptable, and the Ad Hoc Committee is in the process of formulating its questions.

6. The Debtors also falsely claim that the schedule proposed by the Ad Hoc Committee to decide the critical issue of whether $375 million in digital assets are property of customers or property of the estate "would burn a substantial amount of the Debtors' cash on hand on legal fees over the course of several months." *Id*. Despite the fact that the Ad Hoc Committee members are entitled to the full protections of an adversary proceeding, the Ad Hoc Committee nonetheless proposed to the Debtors a modest briefing schedule, with limited discovery, that would conclude by February 24, 2023. The Debtors' histrionic response to that reasonable proposal demonstrates that their interest is *not* in protecting their customers' rights, but in running roughshod over them.

7. It is, of course, the Debtors' right to choose to withdraw their Wallet Withdrawal Motion. Doing so will not make the question of ownership of the $375 million of assets disappear, as that is a gating issue for these cases. If the Debtors withdraw their Motion, the Ad

Hoc Committee reserves its right to seek a determination that assets transferred out of BIA are not property of the estate, whether by adversary proceeding, in the context of a plan, or otherwise.

Respectfully submitted,

Dated: January 23, 2023

/s/ Deborah Kovsky-Apap
Deborah Kovsky-Apap (NJ Bar No. 030942003)
875 Third Avenue
New York, New York 10022
(212) 704-6000
deborah.kovsky@troutman.com

*Counsel for the Ad Hoc Committee of
Wallet Account Holders*