UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-19361-MBK |
| | . | |
| BLOCKFI INC., et al., | . | |
| | . | |
| Debtors. | . | 402 East State Street |
| | . | Trenton, NJ 08608 |
| | . | |
| | . | January 23, 2023 |
| . . . . . . . . . . . . .. | | 12:00 p.m. |

TRANSCRIPT OF INFORMAL SCHEDULING SESSION
BEFORE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          By: ROBERT J. STARK, ESQ.
                              JOSHUA A. SUSSBERG, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022

                          Kirkland & Ellis LLP
                          By:  MICHAEL B. SLADE, ESQ.
                          300 North LaSalle
                          Chicago, IL 60654

                          Cole Schotz, P.C.
                          By:  MICHAEL D. SIROTA, ESQ.
                          25 Main Street
                          Hackensack, NJ 07601


Audio Operator            Kiya Martin


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

| For the Official Committee of Unsecured Creditors: | Genova Burns, LLC<br>By: MARK M. STOLZ, ESQ.<br>494 Broad Street<br>Newark, NJ 07102 |
| --- | --- |
| | Brown Rudnick, LLP<br>By: JEFFREY L. JONAS, ESQ.<br>7 Times Square<br>New York, NY 10036 |
| For the United States Trustee: | Office of the United States Trustee<br>By:  LAUREN BIELSKIE, ESQ.<br>One Newark Center<br>Newark, NJ 07102 |

- - -

1    THE COURT:  Good afternoon, everyone.

2    UNIDENTIFIED ATTORNEY:  Good morning, Judge.

3    THE COURT:  Thank you for joining me remotely.

4    UNIDENTIFIED ATTORNEY:  Good afternoon, Your Honor.

5    THE COURT:  This is the BlockFi, Inc. matter and

6  we're having a call on the request by correspondence on behalf

7  of the Committee -- Mr. Stolz's correspondence.  And let me

8  just make sure I see who's on.

9    All right.  Essentially, we are having an informal,

10  although we are on record, scheduling discussion.  And let's

11  start with -- I see a lot of faces that I've known over the

12  past decade -- Mr. Stolz and Mr. Sirota.  I see faces of those

13  who have appeared in front of me recently -- Mr. Jonas and Mr.

14  Stark and other and, of course, our U.S. Trustee's counsel.

15    It's always a pleasure for the Court to work with the

16  best of the best and I see the best of the best in front of me

17  as far as expertise and professionalism.  The problem with

18  working with the best of the best is that they're there for a

19  reason.  They are the most strident, the most ardent in their

20  advocacy and they work the hardest to produce for their

21  respective clients.

22    So, I know, as well, that we're talking about two

23  types of hearings -- a retention application for Moelis and

24  we're talking about a KERP.  And if I gave you all two hours to

25  argue those, you would do it effectively and if I gave you all

1  two days you would do it effectively.  Problem is I don't have

2  and it's difficult to find two days to allow for that.  But I

3  need to give you more than two hours.  So, it's trying to come

4  to what is a reasonable midway point.

5          I'm going to hear from you all.  I'm going to first

6  lay out my thinking about how to best go about this and,

7  hopefully, it will comport or you'll view it as workable.  I

8  actually tried to contribute by clearing a two day mediation

9  that I had this week off my calendar to the chagrin of several

10  attorneys.  That mediation was scheduled for Thursday, the 26th

11  and the 27th.  I already knew the 27th I was going to have to

12  push them, but I tried to make time.

13          This is a KERP motion and this is an objection to a

14  retention.  As I said, the Court finds it hard to allow for

15  multiple days of hearings on these.  I don't think that works

16  well for the case, for the estate as well, for the cost

17  involved.  I would envision that this could be done in a day.

18  Here's my outline of how to do about it and then we could talk

19  about it.

20          We would start with the KERP because I know the

21  witness availability is an issue.  We would use the

22  declarations that have been on file starting, I think, the last

23  one I saw was six o'clock this morning filed.  I know of three

24  potential witnesses -- Josephine Gartrell, Megan Crowell and

25  for the Committee possibly Matthew Manning.  Those are the

1 names that I've seen on the declarations.  We would use those

2 as direct testimony.  We would then allow for cross

3 examination.

4         I think four hours of testimony would suffice,

5 leaving an hour and half of argument on the KERP.  That's a

6 total of five and a half hours.  And I don't believe we need

7 testimony on the retention application.  I have some thoughts

8 on that as well I'll talk about later.  But I would leave an

9 hour and a half for argument.  That's seven hours.  That would

10 be starting at 9, taking a half hour lunch break because

11 there's nowhere in Trenton that you can go anyway, and that

12 would leave -- and you've all experienced that -- and that

13 would leave going until 4:30.

14         If we did that on January 26th, that would leave the

15 Friday, the 27th, for a limited matter of spillover if we need

16 it.  I understand calendar is tough.  If we do it on the 27th,

17 we would get it done on the 27th.  I'm not glued to -- staff

18 here is workable.  We could stay longer.  But that's my time

19 frame and that's what I think could be done.

20 I know you all have been at it longer than I have on these

21 issues and have, possibly, different ideas.

22         Finally, with respect to the -- and I don't even know

23 if I'm pronouncing it right -- Moelis retention application,

24 I've reviewed the proposal.  I've reviewed the counter

25 proposal.  It's not a huge gap, although it's significant.  I

1  would think the parties may went to consider, with respect to

2  three types of fees -- the restructuring, the sale fee

3  transaction fee and the mining asset sale fee, maybe employing

4  a sliding scale that takes into account the numbers you have in

5  your proposal, in the counter proposal, as a minimum and

6  maximum and just tie it to a performance gauge, you know,

7  dollars or potential recovery or transaction results.

8  Something along those lines.

9          I don't want to dictate it to you all again.  You all

10  have more expertise in these areas.  But it's not something

11  that I think we should spend countless hour, expensive hour

12  attorney time on trying to litigate.

13          So, with those thoughts, since it was the Committee's

14  initial request for -- by letter -- let me first turn to the

15  Committee and then I'll turn to debtors' counsel.  I don't know

16  who wants to chime in for the Committee.  Mr. --

17          MR. STOLZ:  Mr. Jonas is assigned to that, Your

18  Honor.  And thank you for accommodating us for this.  I asked

19  for the call because my experience has been that these calls

20  with Your Honor are always productive and I know Your Honor

21  always offers, maybe may offer less the more we accept, but we

22  appreciate Your Honor's availability and turn to Mr. Jonas.

23          THE COURT:  Mr. Jonas?

24          MR. JONAS:  Thank you, Your Honor.  Jeff Jonas of

25  Brown Rudnick for the Committee.  And we do appreciate your

1   taking the time, Your Honor.  And let me say at the outset, I

2   think our adversaries at all the firms would agree with me we

3   don't like to have to take up the Court's time with procedural

4   matters.  We work hard to resolve these indis12:08:57

5   sometimes -- most of the time we do, but sometimes we can't and

6   that's why we're here.

7           And I also want to be responsive to some of the

8   things you said, so let me just start with those because I

9   think they are helpful and instructive.  Your comments on

10  Mowlis -- you say Moalis -- somewhere in between we'll get it

11  right.  With respect to Moelis, Your Honor, I hope your

12  comments can actually help us get to a consensual resolution.

13  I think they were instructive.

14          Frankly, what we've, you know, what we wanted to come

15  out on that is somewhat akin to what you said, which is a

16  results-based or performance-based metric in terms of

17  compensation.  So, I won't say anything more about that but I'm

18  hopeful that your comments might help us get to a consensual

19  resolution.  We'll see.

20          I also agree, Your Honor, with what you said about a

21  one day trial on both of these motions.  I agree wholeheartedly

22  with that.  And although I think it might be difficult, we

23  think we could do that.  The problem, Your Honor, is -- I'll

24  call the problem, this week is the problem and let me tell you

25  why.  And, again, all we really want is to have a level playing

1  field.  That's all we ever want.  As you know, sometimes we

2  take on very much uphill battles in cases and something I'd

3  like to do and that may be the case here, but we will take it

4  on but we just want to have a level playing field and a fair

5  opportunity to present our case, both argument and the

6  evidentiary record.

7          So, let me just tell you why trying to do that this

8  week is virtually impossible -- I think impossible.  We

9  received last night, as you know, or this morning, the debtor's

10 filed a 14-page expert declaration and a 23-page witness

11 declaration.  That was at about two o'clock this morning.

12 Those related to the KERP, we're told that they will, I don't

13 know if they'll be similar in length or what, but there will be

14 other declarations filed by tomorrow on Moelis -- on the Moelis

15 retention.  And, Your Honor, we did file Mr. Manning's

16 declaration.

17         We do expect to have what I'd call a more fulsome

18 declaration probably from somebody more senior at M3 which we

19 expect to be able to file today at some point, or this evening.

20 Those would be the declarations that you had before you.  But

21 we would also expect, Your Honor -- and we have no documents.

22 We tried to do this informally and just asked for any documents

23 that were either supportive of the motions or that would be

24 used at trial in support of the motions.  We don't have those -

25 - I'm not complaining about it, but we need to get those in

1  fairly short order so that we can properly prepare.

2       We have not been able to do any depositions as you, I

3  think, Your Honor, you were close to correct but just reviewing

4  the witnesses, even accepting the deps that have been filed,

5  there would be Ms. Gartrell, there would be Ms. Crowell. There

6  would be, on our side there would be the M3, our expert

7  deposition.  We also were considering, Your Honor, having a

8  Committee member testify.  Obviously, somebody whose interests

9  are directly affected in both cases, the KERP and Moelis.

10      But that's been somewhat under consideration, Your

11  Honor.  And if we do have that person, that would be at least

12  four depositions that have to take place.  And we would need to

13  get the documents, even if that were to happen today or

14  tomorrow, we would then need to conduct four depositions and

15  get ready for trial.

16      I've done a lot of crazy stuff on compressed time,

17  Your Honor.  I don't think we can do that.  By Thursday,

18  certainly not.  I really don't think we can do it by Friday

19  and, I'll be honest, Your Honor, having a weekend to properly

20  get ready for trial often is critical because even if we finish

21  the last deposition Thursday, we wouldn't have a transcript til

22  Thursday night and then we need time, obviously, to review the

23  transcript, prepare our examinations, our cross examinations,

24  and get ready.

25      So, long story short, Your Honor, I'm not complaining

1 about the time compression here. I thought where you were

2 going to go was there's a hearing scheduled on the 30th, on

3 Monday, and my realistic hope out of today, while I would have

4 hoped for even a better result, what I thought was going to

5 happen was you would tell us we'll move everything -- we'll

6 hear everything on Monday. That would give us a reasonable

7 period of time to do what we need to do and get ready for, you

8 know, for everything on trial on Monday.

9 So, I'll just stop there and take a breath, Your

10 Honor, and see if you have questions or want to hear from

11 others. And I'm happy to, you know, I didn't want to address

12 any of the substance today, I didn't think that's what we were

13 here for or appropriate. If you have question, Your Honor, I'm

14 happy to address them.

15 MR. STARK: Your Honor, it's Robert Start. I didn't

16 want to say anything -- I think I can offer something that

17 might be helpful in some context. If Your Honor will allow me?

18 THE COURT: Yes.

19 MR. STARK: I know that that's not normal --

20 THE COURT: Go ahead.

21 MR. STARK: Is that okay?

22 THE COURT: Go ahead.

23 MR. STARK: Okay. Thank you, Your Honor.

24 All I wanted to say was I am very, very cognizant

25 when Your Honor was saying, look, it's a KERP and it's a

11

1  retention application.  We should be able to work these things

2  out.  And I fully embrace this formality of that.  We haven't

3  been able to work it out.  And I think it's important that Your

4  Honor appreciate -- it's in the text of the documents but it's

5  more in the subtext of the documents and I think this is really

6  what informs the evidentiary presentation.

7       What we have here, Your Honor, is not an operational

8  company.  Today it doesn't make anything, it doesn't sell

9  anything, it doesn't really provide services.  There are a

10 hundred employees that are getting paid to, sort of, maintain

11 idle.  And then the retention is to convert idle into something

12 that folks in headquarters believe could be more valuable in

13 terms of pleading the estate than turning it off.  They may be

14 right.  They may not be right.

15      Our position is, then, we just kind of want to

16 understand it before the decision has been made.  But this is

17 not the normal debtor and the expenses that we're talking to

18 are now increasing to double digits, double tens of millions of

19 dollars as we're trying to figure that out.

20      And maybe this contested matter will help elucidate

21 if discovery is produced and we learn through discovery and a

22 trial that, ultimately, is the risk more a profile of

23 expending 15, 20, 25 million more because it's more expensive

24 about an idle company in this industry environment is it sell-

25 able, is it reorganize-able because I ask the question, it's

1  not just these expenses.  It's the hole that you have to fill

2  on top of that in terms of money that's there to, kind of, move

3  the company forward.  Is it 20 million, is it 50 million on top

4  of the 20, 25 million, 30 million that you have to expend.  And

5  we started with 260 million of customer deposits and no one's

6  asked them what they think about this.  That's the subtext of

7  it all.

8          So, Your Honor, the evidentiary presentation is not

9  just a KERP in the normal way is this person going to leave.

10 Is this person an engineer that's necessary?  It's really

11 maintaining idle so that if the strategy that the debtor wants

12 to have is moved forward does that yield more value and the

13 people whose money is at stake are not -- have not really been

14 able to understand the answer to the question.  That's the

15 issue that undergirds the evidentiary presentation because

16 that's the dispute that undergirds this whole contested matter.

17 We simply said we don't understand where you're going with this

18 case.  We kind of want to understand it before you spend all

19 the money.  That's the pig in the poke.

20          THE COURT:  Fair enough.

21          MR. STARK:  Hope that was helpful, Your Honor.

22          THE COURT:  No, fair enough, thank you.

23          Anyone else on the Committee side?

24          Ms. Bielskie, for the U.S. Trustee, did you want to

25 weigh in before I go turn to the debtor?

1          MS. BIELSKIE:  Please, Your Honor.  Thank you.

2          And I echo the appreciation for the Court hearing us

3 today.  Part of the reason I think we're here is because of the

4 conference that Jeffrey Sponder, in my office, had with regard

5 to tomorrow's hearing.  And that's because he's traveling for

6 something work-related and he will not be available until

7 Friday, the 27th.

8          So, he's not the only one that can argue this, but he

9 has been the primary attorney on this issue so, if at all

10 possible, I'd like to have him present to do that.  And Friday

11 would be the earliest date.  There's no other conflicts on the

12 near radar that he would have.

13          THE COURT:  All right.  Thank you.

14          Let me turn to the debtor -- Mr. Sirota or Mr.

15 Sussberg?

16          MR. SIROTA:  Yes, thank you, Your Honor.

17          You started off today's hearing by referencing,

18 appropriately so, best in class professionals and before I

19 introduce Mr. Sussberg to address the Court, who clearly falls

20 into that category, just a few observations.

21          I mean, my friend, Mr. Stark, references, and Mr.

22 Jonas, the need for additional time.  You know, we were

23 involved in the Sears case and there were, you know, God knows

24 how many depositions conducted within a very short period of

25 time and Judge Drain was quick to understand the declarations

1  as direct evidence could clearly make the process go faster.

2  And we have it here.

3          So, I would just, before Mr. Sussberg addresses the

4  Court, I would, respectfully, suggest to Your Honor that let's

5  get the show on the road.  These are big firms with a lot of

6  talent and they can put the resources that are necessary to

7  present to Your Honor in exactly the day that you described.

8          There's nothing unique about the retention of an

9  investment banker.  There's nothing unique about the KERP

10  indis12:20:05.  We had the pleasure of doing it before Your

11  Honor, I think, in two or three hours in the indis case.  So,

12  delay doesn't help anybody and I'll now turn it over to my

13  friend, Mr. Sussberg.

14          THE COURT:  Thank you, Mr. Sirota.

15          Mr. Sussberg?

16          MR. SUSSBERG:  Thank you, Your Honor, and very much

17  appreciate the time.

18          I think originally we had scheduled the KERP for

19  Monday.  In light of the comments from the U.S. Trustee, I

20  think, from our perspective, it is critically important to echo

21  Mr. Sirota's comments that we get these calendered.  And we've

22  been prepared to go forward with the KERP on Friday and, if

23  necessary, Moelis on Monday.  Or if we could do Moelis on

24  Friday, we're happy to do that, too.

25          I think, you know, from the substantive perspective

1   and Mr. Stark walked into it a bit, there's a fundamental

2   disconnect between the company and the Committee at this point

3   and it's incumbent upon our team to try to correct that over

4   the course of this week, which we'll do.  And we can do that at

5   the same time that the discovery is ongoing.  Mr. Jonas is not

6   correct, documents have been produced and Mr. Slade can address

7   all that if necessary, but I don't think it is.

8          At its core and at its bottom, I think the Committee

9   believes we will ultimately end up in a liquidation.  And we,

10  as the debtors, have a fiduciary obligation to run out every

11  single ground ball, as I like to say.  And that's exactly what

12  we're doing.  And that's what we've done in other similar

13  cases.

14         And everybody needs to understand that even if,

15  ultimately, the result is a return of customer money, the

16  amount of time, the cost and the energy, including at the

17  investment banker level, is so substantial.  And it's not as

18  simple as simply giving people their money back.  And I lived

19  this through Voyager and everyone is going to hear through the

20  direct testimony, any argument exactly that concept.

21         And from this company's perspective, we have severed

22  most all of our workforce as Mr. Stark had said.  We need these

23  people to be employed.  This is a KERP, it not a KEIP.  All the

24  executives have taken themselves out of the reign.  And in

25  order for us to either pursue a value maximizing the main

1  concern or third-party sale, or even a self-liquidation, these

2  employees are critical.  And delay in having this approved, and

3  more so with Moelis who's out in the marketplace does no one

4  any benefit.

5       So, Your Honor, we will spend time with the advisors

6  like we always do.  We have a good working relationship.

7  Doesn't necessarily mean we always agree and that's part of the

8  process.  But we will work to see if we can get to a result.

9  But have the KERP hearing on Friday and the Moelis retention no

10  later than Monday is very, very important in these cases and we

11  would ask Your Honor to set those hearings today.

12       Thank you.

13       THE COURT:  All right.  Thank you, Mr. Sussberg.

14       Any response or anything else anyone wishes to add?

15       MR. SLADE:  Your Honor, just real quick.

16       This is Mike Slade for the debtors also.  I'll be the

17  one handling the discovery and I've worked with Mr. Jonas on

18  many, many cases before and we've gone through this a number of

19  times.  I just want to confirm for the Court that we have, you

20  know, made our witnesses available for depositions on Wednesday

21  with respect to the KERP.  We've identified who they are and

22  there's no reason that can't go forward.

23       With respect to documents, I mean, what he said he

24  wanted is all documents that support the KERP.  That's not a

25  particularly, you know, direct request for information.  But if

1 there's any information he wants, I'm happy to have a

2 conversation and get him anything else he wants.

3       There's no reason that those depositions can't go

4 forward on Wednesday.  We're prepared to depose Mr. Manning and

5 I think there's not reason that this can't go forward and get

6 done before the hearing on Friday.  We've done it many times

7 before and this is not brain surgery.  We can do it.

8       MR. STARK:  Your Honor, if I may?

9       THE COURT:  Yes.

10       MR. STARK:  Again, we're not talking about whichever

11 debtors that Mr. Sirota mentioned to you or it's not brain

12 surgery in the usual case and, no, the Committee has not drawn

13 a conclusion about whether or not this company is re-

14 organizable, sellable  or will liquidate.  We've been very

15 clear that we want to study the issues because they took all of

16 the crypto, converted it into cash, put it in a bank account

17 and want to use about ten percent of it to run, as Mr. Sussberg

18 said, on all of the ground balls.

19       And my Committee is pretty clear in their view that

20 that's a lot of money relative to the entirety estate and we

21 kind of want to understand if we're reorganizing, if this is

22 ask number one, what does ask number two look like?  We asked

23 that a couple of weeks ago and we've yet to see a business

24 plan, yet to find out what the whole is, but now the fee that's

25 being proposed for Moelis is to compensate them if that were to

1 happen.

2      And the sale, I think we all can read the newspaper

3 and look outside and sort of see which way the wind is blowing

4 on a sale and we're paying people to stay in that possibility.

5 It doesn't look very likely looking at the present transactions

6 out there that we will get any money for it, but we have to

7 sign up to a very large fee.

8      We totally want to work this out.  We've never wanted

9 to have a contested matter.  I said it the first hearing that I

10 was at, we'll present all issues orderly and have a fair

11 hearing on everything and we want to minimize it.  But, you

12 know, that's got to go both ways, too.  If this is actually an

13 issue that's sort of in its own way sets the tonality of what

14 we're doing, isn't it fair that we at least ask the questions

15 because not only to be able to understand it after asking.

16      If we have to do it in depositions or do it by expert

17 opinion, okay, I guess that's how we're going to do it.  But

18 this is not a small matter.  This is not just any old KERP and

19 this is not just any old retention.  This is ten percent of the

20 estate in its present format before anybody's had an ability to

21 assess whether or not the path and task that is being allocated

22 to these people actually is just burning their money.  That's

23 the question.  Nothing more to it than that.  We wanted a

24 little bit of time to ask questions, that's all.

25      MR. SLADE:  Judge, I would just ask that Mr. Stark,

1 my friend, spend more time preparing for the argument,

2 hopefully, this week as opposed to doing what we're doing now

3 so we can all get down to business.

4       MR. STARK:  I'll take his suggestion under

5 advisement.  Thank you, Your Honor.

6       THE COURT:  I can feel the love of the friendship.

7       So, anyone else?  All right.

8       MR. JONAS:  It's Jeff Jonas, Your Honor.

9       THE COURT:  Yes.

10       MR. JONAS:  I won't belabor it, I'll just say I just

11 don't think it's reasonable for us to have at least three,

12 maybe four, depositions on Wednesday and Thursday and be

13 required to be ready for trial on Friday.

14       THE COURT:  Understood.  I guess I'm going to put you

15 all to the task, though.  I don't think the estate, I don't

16 think the employees, I don't think the debtor and I don't

17 necessarily think the creditors are going to benefit by delay

18 and having more time.  That I lose the Thursday, the Friday

19 that we set aside for this week and the Monday.

20       I will, certainly, I'll put off the Moelis.  We're

21 not going to do that as part of the day on Friday.  We'll put

22 that on for the Monday.  That gives us the full day on that

23 Friday.  It gives you all, unfortunately, the burden of getting

24 your ducks in order on Tuesday, Wednesday and Thursday.  And

25 then we'll hear argument and we'll get a better picture and

1 maybe some of those answers will occur over the next three

2 days.  And maybe it calls for additional time, but we don't get

3 anywhere if we don't start, so let's start.

4         I appreciate the concerns.  We have to start.  This

5 was scheduled a long time ago.  The case was filed in November,

6 the end of November, and we're already in the end of January.

7 So, it's time.

8         Now, as far as the pending motions to seal, and I

9 know the U.S. Trustee has objected.  Both the debtor and the

10 Committee filed their recent declarations under seal.  I'll

11 rule on the motion at the outset on Friday.  For purposes of

12 the hearing, let's proceed.  Use initials instead of names.

13 And we'll be able to go forward and protect interests going

14 forward.  At least prepare for that.

15        And in the interim if there are concerns as they tend

16 to -- if there are discovery issues, if there's something that

17 arises that you need my attention, reach out for chambers.

18 We'll have a, probably not a Zoom call, we'll have just a

19 series of calls.

20        Mr. Stolz, I see your hand raised?

21        MR. STOLZ:  Thank you, Your Honor.  Two housekeeping

22 matters.  Our motion to seal is currently listed, I think, for

23 Tuesday morning, so we're going to adjourn that until Friday?

24        THE COURT:  Yes.  I'm moving everything that was on

25 for the 24th, except the Moelis matter will be on for the 30th,

1   that Monday, we'll move everything to the Friday, the 27th.

2       Oh, and on Friday, let's start at nine o'clock, if

3   you don't mind, so we have most of the day.  And, again, we'll

4   just plan on a half hour break for lunch.  But if issues arise

5   or you need the Court's assistance, just reach out.  All right?

6       ATTORNEYS:  Thank you, Your Honor.

7       THE COURT:  Thank you.

8         * * * * *

9       **C E R T I F I C A T I O N**

10       I, ALYCE H. STINE, court approved transcriber,

11   certify that the foregoing is a correct transcript from the

12   official electronic sound recording of the proceedings in the

13   above-entitled matter, and to the best of my ability.

14

15   /s/ Alyce H. Stine

16   ALYCE H. STINE

17   J&J COURT TRANSCRIBERS, INC.     DATE:  January 25, 2023

18

19

20

21

22

23

24

25