**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

# DECLARATION
# OF MARK A. RENZI IN
# SUPPORT OF DEBTORS' REPLY
# TO OBJECTION OF THE OFFICIAL COMMITTEE
# OF UNSECURED CREDITORS TO APPLICATION OF THE
# DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF
# AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
# MOELIS & COMPANY LLC AS INVESTMENT BANKER, CAPITAL MARKETS
# ADVISOR, AND FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1

I, Mark A. Renzi, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1. I am the Chief Restructuring Officer (the "CRO") to the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases. I submit this declaration (this "Declaration") in support of the relief requested in the *Debtors' Reply to Objection of the Official Committee of Unsecured Creditors to Application of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Retention and Employment of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor Effective as of the Petition Date* (the "Reply").[2] Unless otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge, belief, and opinion; (b) information learned from my review of relevant documents, books, and records; (c) information I have received from the Debtors' employees or advisors and/or employees of Berkeley Research Group, LLC ("BRG") working directly with me or under my supervision and direction; or (d) my experience as an industry professional.

2. I am authorized to submit this Declaration on behalf of the Debtors, and, if I were called upon to testify, I could and would testify to the facts set forth herein.

**Background and Qualifications**

3. I am the Debtors' CRO and also a Managing Director and the Head of the Corporate Finance Financial Institutions Group for BRG. I have over twenty years of experience in the practice of turnarounds and restructurings. I have considerable experience in providing restructuring advisory and restructuring management services in reorganization proceedings, and

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Reply or in the *Application of the Debtors and Debtors in Possession for Entry of an Order Authorizing the Retention and Employment of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor* [Docket No. 139], as applicable.

working with senior management teams in the areas of financial and operational restructuring, loan workouts, and business planning. I have advised and served in management positions involving numerous turnaround engagements. Most recently, I was the Chief Restructuring Officer of Lucky Brand Dungarees, LLC.

### Necessity of Retaining Moelis as Investment Banker

4. The Debtors are a sophisticated operation, made up of several business lines and product offerings. By virtue of the market in which the Debtors operate, there are a number of idiosyncratic complexities that feed into the overall complexity of these Chapter 11 Cases.

5. The Objection makes reference to the cases of Voyager Digital Holdings, Inc. and its affiliates in their bankruptcy cases currently pending in the Southern District of New York ("Voyager") in an effort to show that the services of Moelis are off-market or otherwise unnecessary. My firm was also retained as financial advisor to Voyager. Through this engagement, in my role as Managing Director for BRG, I became familiar with the Voyager entities, their financial affairs, their debt structure, and their operations. Comparatively speaking, I believe that the Debtors' operations are larger and measurably more complex than those of Voyager.

6. The respective product offerings are illustrative of the relative complexity of each company. Voyager historically offered: (1) brokerage services via its customer platform; (2) custodial crypto services; (3) a loyalty program; (4) a cobranded debit card; (5) staking pools; and (6) primarily institutional lending. The Debtors historically offered: (1) non-interest bearing custodial Wallet accounts; (2) BlockFi interest-bearing accounts; (3) the BlockFi Private Client Program, a crypto wealth management service; (4) retail client loans collateralized by crypto; (5) a retail client trading platform; (6) the BlockFi Rewards Credit Card program, which offered clients

crypto assets in a rewards structure; (7) a custom suite of services for institutional clients including lending and trading platforms, which includes mining loans, and (8) a joint venture interest in mining operations.

7. Beyond that, there are stark differences in the make-up of Voyagers' and the Debtors' respective originated loan portfolios. The Debtors' loans are collateralized by a large number of different cryptocurrencies. The Debtors' borrowers also represent a diffuse and diverse population of retail and institutional clients. Voyager's loan portfolio, on the other hand, is comparatively simpler—largely concentrated in six institutional borrowers. And Voyager's operations are almost exclusively domestic, whereas the Debtors' clients are both domestic and international and therefore subject to multiple regulatory schemes.

8. The Debtors' salable assets (the "Assets") may be roughly divided into three buckets:

   a. Physical cryptocurrency mining assets, a portfolio of loans made to third-party mining or hosting companies, and interests in certain mining operations pursuant to joint ventures;

   b. The customer platform consisting of (i) an end-to-end digital asset platform that offers a wide array of product offerings to retail and institutional users domestically and internationally; (ii) a portfolio of funded U.S. customer accounts; and (iii) a portfolio of funded international customer accounts; and

   c. Bankruptcy claims, litigation claims, and other claims against certain of the debtors in the FTX Trading Ltd. chapter 11 cases (Bankr. D. Del. 1:22-bk-11068), including claims arising from loans made by the Debtors to certain of the FTX debtors.

9. Each of these buckets of Assets presents a host of unique sale process issues and considerations for which the Debtors require the advice of capable professionals to achieve the highest possible returns to generate value for their stakeholders.

10. Moreover, there may exist additional value-generating options in the marketplace

of which the Debtors are not currently aware, and the Debtors may encounter unexpected opportunities that they are unequipped to handle without the aid of professionals who are qualified and experienced at chasing down options and opportunistically crafting solutions.

11. Moelis' services are essential to the Debtors and are necessary to ensure that such options and opportunities can be capitalized to return value to the Debtors' clients. I believe Moelis' services will provide the Debtors with a market test that will be essential to maximizing value. I am familiar with the reputation of Moelis and the services Moelis has provided and continues to provide to its clients in this and comparable other engagements. A discussion on the reasonableness of Moelis' fees and services is set forth in detail in the *Supplemental Declaration of Jared Dermont* in support of the Reply [Docket No. 391].

12. Without the services provided by Moelis, and the continued employment of the Debtors' employee base, the distribution of the Debtors' assets in any organized fashion would become very challenging. I believe that the Debtors would likely be forced into a chapter 7 liquidation scenario, which would be the worst case for all parties-in-interest and would almost certainly lead to years of significant litigation prior to any material distributions, which would not occur in kind. Such litigation would be time consuming and capital-intensive, and massively wasteful. Protracted litigation would likely leave all stakeholders in a substantially worse position than they would be in if the Debtors were to evaluate and pursue other available alternatives, including one or more sales of the Debtors' Assets, a chapter 11 self-liquidation, and/or a standalone reorganization.

13. It is highly unlikely that the process advocated for by the Committee would be any faster or result in any greater recoveries than a path provided by a chapter 11 plan. To the contrary, the proposed sale process will not materially extend the course of the case and is far more likely

to lead to a quicker return of assets to customers than any alternative identified to date. With the Debtors remaining in control of the process in chapter 11, the Debtors, with the assistance of Moelis, instead can simultaneously evaluate the various alternatives to determine the most value maximizing path for client recoveries on an expedited timeline.

14. I am also familiar with the services proposed by both Moelis as investment banker, and BRG as financial advisor. I believe that the services to be provided by each firm are non duplicative. Moelis and BRG have fundamentally different roles in these Chapter 11 Cases. Moelis is out in the marketplace marketing sale transactions or actively pursuing other value maximizing alternatives. BRG, on the other hand, as set forth in the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Berkeley Research Group, LLC as Financial Advisors to the Debtors, Effective as of the Petition Date Through the CRO Appointment Date, and (II) Authorizing Berkeley Research Group, LLC to Provide a Chief Restructuring Officer and Additional Personnel, Effective as of the CRO Appointment Date* [Docket No. 174] has provided the Debtors with a CRO and additional personnel to assist the CRO. BRG is, among other things, responsible for assisting the Debtors with preparing for and operating while in chapter 11, assisting the Debtors and their management in developing cash flow projections and related methodologies, and assisting in the preservation of asset value. These services do not duplicate any services that Moelis is providing to the Debtors. I understand that Moelis, BRG, and the Debtors' other advisors coordinate, and will continue to coordinate, in an effort to avoid inefficiency and unnecessary duplication of efforts in these cases, and the Debtors' management, including myself in my capacity as CRO, actively monitors the division of labor between all retained professionals to avoid duplication.

15. I believe that the services Moelis has provided and proposes to continue to provide

to the Debtors are necessary to bring these Chapter 11 Cases to a successful resolution. For these reasons, I believe that the retention of Moelis is reasonable and appropriate and should be approved.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: January 25, 2023  
New York, New York

By: */s/ Mark A. Renzi*  
Name: Mark A. Renzi  
Title: Chief Restructuring Officer