| | |
|---|---|
| **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq. (NJ Bar No. 014321986)<br>Warren A. Usatine, Esq. (NJ Bar No. 025881995)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>(201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Kenric D. Kattner, Esq. (admitted *pro hac vice*)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>kenric.kattner@haynesboone.com |
| **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (admitted *pro hac vice*)<br>Christine A. Okike, P.C. (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 446-4800<br>jsussberg@kirkland.com<br>christine.okike@kirkland.com | *Proposed Attorneys for Debtors and Debtors in Possession* |

*Proposed Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

# DECLARATION OF BRIAN TICHENOR
# IN SUPPORT OF THE DEBTORS' MOTION SEEKING
# ENTRY OF AN ORDER (I) APPROVING THE BIDDING
# PROCEDURES AND RELATED DATES AND DEADLINES, (II)
# SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH
# RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT,
# AND PLAN CONFIRMATION, AND (III) GRANTING RELATED RELIEF

I, Brian Tichenor, declare as follows under penalty of perjury:

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1. I am a Managing Director of Moelis & Company LLC ("Moelis"), an investment banking firm that has its principal office at 399 Park Avenue, 4th Floor, New York, New York 10022. I am a member of Moelis' Financial Institutions Group ("FIG"). Among the businesses and products that fall within the purview of the FIG Group are cryptocurrency, banks, asset managers, securities exchanges, and insurance companies.

2. I submit this declaration (this "Declaration") in support of the relief requested in the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 226] (the "Motion") and the *Debtors' Reply to the United States Trustee's Objection to the Debtors' Bidding Procedures Motion* filed contemporaneously herewith (the "Reply").[2]

3. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge, belief, and opinion; (b) information I have received from the Debtors' employees or advisors and/or employees of Moelis working directly with me or under my supervision, direction, or control; or (c) from the Debtors' records maintained in the ordinary course of their business. I am not being specifically compensated for this testimony other than through payments that are proposed to be received by Moelis as a professional retained by the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

**Background and Qualifications**

4. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion. The material terms of the Bidding Procedures are set forth in greater detail in the Motion.

in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 1,100 employees based in offices in North America, South America, Europe, the Middle East, and Asia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

5.    Moelis provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 26, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re The Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. July 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020); *In re The McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 1, 2019); *In re Aegerion Pharms., Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Joerns*

*WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re FTD Cos.*, No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re Parker Drilling Company, Inc.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 31, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); *In re Global A&T Electronics Ltd.*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Toys "R" US, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017); *In re TK Holdings, Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017); *In re Basic Energy Servs., Inc.*, No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016); *In re UCI Int'l, LLC*, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016); *In re AOG Ent., Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re SFX Ent., Inc.*, No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016); *In re Am. Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014); *In re GSE Envt'l, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014).

6. I have over 10 years of investment banking experience advising companies, equity investors, financial vehicles, and creditors across a broad range of industries and geographies in a broad range of transactions. Prior to joining Moelis, I was in the corporate and investment banking group at Citigroup Inc. where I focused on investment banking advisory transactions in the Financial Institutions Group. I hold Bachelor of Science degrees in finance and computer science

from Boston College and have a Master's of Business Administration degree from Georgetown University.

7. I have been involved in several notable chapter 11 cases and restructuring assignments, including as advisor to the ad hoc group of senior unsecured noteholders in Walter Investment Management Corporation's $4.1 billion restructuring; and as advisor to New Residential Investment Corporation's $1.2 billion acquisition of select assets from Ditech Holding Corporation pursuant to a section 363 asset sale. I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including advising New Residential Investment Corporation in its $600 million recapitalization and restructuring, Ambac Financial Group in its $18 billion restructuring of Puerto Rico's sales tax financing corporation (COFINA), Syncora Guarantee Inc. in its $13.5 billion reinsurance of financial guarantee policies to Assured Guarantee Corporation and other liability management including the sale of its operating business to GoldenTree Asset Management, Ambac Financial Group on its $557 million exchange offer of its Auction Market Preferred Shares, Ambac Financial Group on its $538 million exchange of Corolla Trust obligations and Junior Surplus Notes, an approximately $10 billion ad hoc group of non-litigating preferred shareholders in a proposed $6.9 trillion restructuring of Fannie Mae and Freddie Mac, secured lenders of AG Mortgage Investment Trust in its $3.0 billion restructuring of its repurchase agreement portfolio and secured lenders of MFA Financial, Inc. in its $5.8 billion restructuring of its repurchase agreement portfolio.

**Marketing Process**

8. On November 18, 2022, the Debtors engaged Moelis to advise the Debtors as to strategic alternatives in light of their efforts to navigate the recent challenges affecting the cryptocurrency industry. I have been involved as a senior member of the Moelis team throughout our engagement.

9. Shortly after its engagement, Moelis crafted a marketing campaign to solicit interest in several general deal structures involving the sale of certain of the Debtors' Assets.

10. To that end, Moelis performed an initial outreach to approximately 106 potential financial and strategic partners globally (the "Potential Counterparties")—a process which commenced shortly after the Petition Date and has continued over the past two months. These Potential Counterparties consist of domestic and international strategic buyers in the crypto space, as well as private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry. As of the date of this Declaration, Moelis has reached out to more than 200 potential parties about potential transactions for certain of the Debtors' Assets and over seventy Potential Counterparties have entered into confidentiality agreements with the Debtors and have been granted access to a virtual data room containing volumes of information regarding the Debtors' business operations, finances, and material contracts. In addition, Potential Counterparties that have signed confidentiality agreements have been permitted to submit additional questions and to request additional diligence from the Debtors in addition to the information contained in the virtual data room.

11. The Debtors' efforts have already resulted in the receipt of bids for certain of the Debtors' Assets. Accordingly, the Debtors seek to establish the proposed Bidding Procedures to set the guidelines for a potential Sale. The proposed Bidding Procedures provide for substantial flexibility with respect to the structure of any Sale, and the Bidding Procedures are the best path to garner interest in the Assets and provide for the highest recovery available for all stakeholders.

### The Bidding Procedures

12. As noted in the Motion, the timeline set forth in the proposed Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and Potential Bidders with the need to run a fast and efficient sale process. The proposed Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders under the circumstances by encouraging prospective bidders to submit competitive bids. Based on my experience, I believe that the proposed Bidding Procedures and the timeline set forth therein are in the best interests of the Debtors' estates, will establish whether and to what extent any additional market for the Assets exists, and provide interested parties with sufficient opportunity to participate.

13. As more fully described in the proposed Bidding Procedures, the proposed Bidding Procedures contain provisions relating to, among other things: (a) requirements to participate in the bidding process; (b) access to due diligence by Acceptable Bidders; (c) Bid Protections for any Stalking Horse Bidder (if any), (d) Bid Requirements, (e) the evaluation of Qualified Bids by the Debtors, (f) an Auction, (g) the acceptance of any Successful Bids, and (h) the designation of any Back-Up Bidders.

14. The Debtors' proposed dates and deadlines to pursue a Transaction that may be consummated either pursuant to section 363 of the Bankruptcy Code or under a chapter 11 plan (the "Proposed Bidding Procedures") are as follows:

a. **The Sale Schedule**

| Action | Description | Deadline |
|---|---|---|
| Indications of Interest Deadline | The deadline by which all indications of interest must be actually received. | January 24, 2023 at 12:00 p.m. prevailing Eastern Time |
| Bidding Procedures Hearing | The hearing before the Court to consider the Motion. | January 30, 2023 at 10:00 a.m. prevailing Eastern Time |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures. | February 20, 2023 at 12:00 p.m. prevailing Eastern Time |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Moelis & Company LLC, 399 Park Ave., 4th Floor, New York, NY 10022. | February 24, 2023 at 10:00 a.m. prevailing Eastern Time, if needed. |
| Deadline to File Sale Motion | The deadline for the Debtors to file a motion seeking entry of an order approving the sale of certain of the Debtors' Assets to the Successful Bidder or Successful Bidders (the "Sale Motion"). | February 27, 2023 at 4:00 p.m. prevailing Eastern Time |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"). | 7 calendar days before the Sale Hearing. |
| Sale Hearing | The hearing before the Court to consider approval of the Successful Bid or Successful Bids, pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale. | March 20, 2023 at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |

b. **The Confirmation Schedule**

| Action | Description | Deadline |
|---|---|---|
| Deadline to file Disclosure Statement | The deadline for the Debtors to file the Disclosure Statement. | April 3, 2023 at 4:00 p.m. prevailing Eastern Time |
| Disclosure Statement Objection Deadline | The deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Disclosure Statement Objection Deadline"). | 7 calendar days before the Disclosure Statement Hearing. |

8

| Disclosure Statement Hearing | The date for the hearing for the Court's approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Hearing"). | May 8, 2023 at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |
|---|---|---|
| Plan Objection and Plan Voting Deadlines | The deadline by which (a) objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline"), and (b) all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent (the "Plan Voting Deadline"). | 7 calendar days before the Confirmation Hearing. |
| Confirmation Hearing | The hearing before the Court to consider approval of the successful Bid or Bids and confirmation of the Plan (the "Confirmation Hearing"). | June 19, 2023 at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |

15.  Based on my experience, I believe that the proposed Bidding Procedures are designed with the intent to enhance the value for customers and all stakeholders by facilitating a competitive bidding process in which potential bidders are encouraged to participate and submit competing bids within the specified timeframe. The proposed Bidding Procedures provide appropriate time for the Debtors to complete their marketing process, receive and evaluate bids, and, if necessary, hold an Auction to determine the highest or otherwise best bid. The proposed dates and deadlines are critical to driving the Debtors' restructuring to an efficient conclusion, particularly in light of the volatile industry in which the Debtors operate. At the same time, the proposed Bidding Procedures seek to minimize the time and expense in chapter 11 and expediently capture value for the Debtors' Assets in a highly volatile industry. The Bidding Procedures are designed to provide the Debtors with optionality in determining the best path forward and expedite resolution of these chapter 11 cases, thereby reducing administrative expenses and providing the highest or otherwise best available recoveries to the Debtors' stakeholders under the circumstances.

16. It is my view that the proposed Bidding Procedures, including, without limitation, the timelines, are reasonable and appropriate under the circumstances. Under the proposed Bidding Procedures, the Debtors will have an opportunity to consider all offers and select the offer that they deem to be the highest or otherwise best.

17. While the market is currently primed for a transaction or series of transactions of the Debtors' Assets, the Debtors' window to maximize such value is rapidly closing. Any delay to the Auction or Sale Hearing would be detrimental to the Debtors' estates. As such, I believe the timeline presented herein is in the best interests of the Debtors' estates under the circumstances.

**Bid Protections**

18. In the event the Debtors seek to appoint one or more Stalking Horse Bidders, the Debtors seek authority to offer customary Bid Protections, including a Breakup Fee and Expense Reimbursement, to such Stalking Horse Bidders. The use of a stalking horse in a public auction process for the sale of a debtor's assets and providing certain bid protections is customary and is beneficial to obtaining the highest value available under the circumstances for the Debtors' estates. I believe that a Stalking Horse Bidder and the Bid Protections offer the Debtors the necessary flexibility to pursue a value-enhancing transaction in this highly volatile market in which the Debtors' operate. In my experience, bidding protections, such as breakup fees and expense reimbursements, are required by informed stalking horse bidders to invest the requisite time, money, and effort into diligence and entry into a binding agreement that sets a floor for other potential bidders in the process. For these reasons, I believe the Debtors should act quickly to enter into an agreement with a Stalking Horse Bidder, should one emerge. In addition, I believe that starting the Auction with one or more Stalking Horse Bidders will benefit the Debtors' estates and enhance value by ensuring a minimum starting bid with respect to the covered assets.

Moreover, based on my experience, I believe that the Bid Protections will not serve their intended purpose in setting a bid floor on the Assets and encouraging competitive bidding if the Bid Protections are not approved in advance of the Auction.

19. The proposed Bid Protections, in my experience, are customary and market with bid protections that informed stalking horse bidders typically require. I believe the Debtors' proposed Bidding Procedures and timeline with respect to the proposed Bid Protections are appropriate under the circumstances.

20. Accordingly, for the reasons set forth herein, I believe the proposed Bidding Procedures are reasonable and appropriate in the context of these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: January 29, 2023  By:   */s/ Brian Tichenor*
New York, New York  Name: Brian Tichenor
 Title: Managing Director
 Moelis & Company LLC