```
                   UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF NEW JERSEY

IN RE:                       .    Case No. 22-19361-MBK
                             .
BLOCKFI INC., et al.,        .
                             .
         Debtors.            .    402 East State Street
                             .    Trenton, NJ 08608
                             .
                             .    January 27, 2023
. . . . . . . . . . . . . ..      10:27 a.m.


                       TRANSCRIPT OF HEARING
                 BEFORE HONORABLE MICHAEL B. KAPLAN
                 UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:         Kirkland & Ellis LLP
                         By:  JOSHUA A. SUSSBERG, ESQ.
                         601 Lexington Avenue
                         New York, NY 10022

                         Kirkland & Ellis LLP
                         By:  RICHARD HOWELL, ESQ.
                              MICHAEL B. SLADE, ESQ.
                         300 North LaSalle
                         Chicago, IL 60654

                         Cole Schotz, P.C.
                         By:  MICHAEL D. SIROTA, ESQ.
                         25 Main Street
                         Hackensack, NJ 07601



Audio Operator           Kiya Martin


 Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

| | |
|---|---|
| For the Official Committee of Unsecured Creditors: | Brown Rudnick, LLP<br>By: ROBERT J. STARK, ESQ.<br>7 Times Square<br>New York, NY 10036 |
| For the United States Trustee: | Office of the United States Trustee<br>By: JEFFREY M. SPONDER, ESQ.<br>    LAUREN BIELSKIE, ESQ.<br>One Newark Center<br>Newark, NJ 07102 |

- - -

1            THE COURT: All right, everyone. Thank you, again.
2 I appreciate everybody's cooperation, and as always should you
3 need to be heard, please use the raise hand function, and I
4 will be sure, and my staff will be sure, to spotlight you.
5            This is the BlockFi, Inc. matter. We have just what
6 I anticipate is essentially a report. It seems that you all
7 met all of my expectations as far as productivity and
8 efficiency and have reached certain resolutions.
9            I'm going to turn to debtors' counsel, Mr. Sussberg,
10 and ask that you update the Court as to what resolutions have
11 been reached and what remains out there.
12           MR. SUSSBERG: Yes, Your Honor and thank you. For
13 the record, Joshua Sussberg from Kirkland & Ellis on behalf of
14 BlockFi.
15           First and foremost, I want to thank Your Honor for
16 the status conference on Monday and the setting of the hearing
17 on Friday and Monday because I think that's really something
18 that spurred everybody into action.
19           We did something a bit unorthodox for all of us, and
20 I could speak for Mr. Stark when I say this, we actually had
21 principals and advisors on a call on Tuesday ahead of
22 depositions that actually went forward on Wednesday, but we
23 were able to cancel the remaining depositions because we worked
24 collectively and collaboratively to reach an agreement on both
25 the KERP as well as the Moelis retention.

1          So, we have complete agreement on all sides, and as
2  you've seen, the United States Trustee withdrew its objection
3  after reviewing the terms of the settlement, and Mr. Howell
4  will walk the Court through the proposed order that we've
5  reviewed with the parties and believe everyone has signed off
6  on.
7          So, I did again want to thank the Court and obviously
8  want to thank the Committee and the BlockFi team for everybody
9  working collaboratively.  These are difficult circumstances,
10 and not everyone is always going to agree, but here the process
11 will work the way it's supposed to work, and kudos to the
12 professionals involved for helping everybody get to a good
13 solution.
14         I think we feel comfortable that the KERP will serve
15 its intending purpose, and I think we conveyed to the Committee
16 and its members some of the thinking behind that, which is
17 frankly what led to a productive resolution.  So thank you,
18 Your Honor, for that.
19         I did want to address one brief issue before I turn
20 it over to Mr. Howell.  It's been a source of some unrest on
21 the BlockFi side, and it was in the media, and, unfortunately,
22 it was reported inaccurately.
23         And I'll start by saying that I always tell my kids
24 that we have pencils that have erasers on them for a reason and
25 all humans make mistakes.  I know I certainly make several

1  probably each and every day, and what happened here was purely
2  a mistake.
3           And I know Mr. Stark, and I know Mr. Meghji, and I
4  know everyone involved here, and, again, while we may not
5  always agree on everything, I know these people to be of the
6  utmost integrity, and there was nothing nefarious in my view
7  that went on here.
8           But as Your Honor I think is aware, there was an
9  affidavit from Mr. Meghji filed on January 24th at 12:10 a.m.,
10 and that document was redacted, but it was incorrectly
11 redacted, and this goes beyond my knowledge base, but someone
12 was able to access the document that was posted and copied the
13 data underneath the redaction.
14          Later that afternoon there was a motion to seal the
15 document, which probably got people out there in the universe
16 looking at the document and peeling away the redactions.  And
17 then we had an unfortunate CNBC story that broke, and that
18 story is wrong.  The story said there are secret financials
19 that weren't otherwise relayed and conveyed in our SOFAs and
20 our schedules, and I want to be very clear, there are no such
21 secret financials.  The financials that we reported are
22 entirely accurate.  In fact, BlockFi's numbers showed a net
23 exposure whereas the ones in the M3 declaration showed a gross.
24          And so when Blockfi made the loan to Alameda that was
25 the source of in all the reporting prior to the Robinhood share

1  that Your Honor is aware of being pledged, the pledged
2  collateral was FTT coins, and as everybody who's familiar with
3  FTX knows, the FTT collateral was marked down to zero, and the
4  gap that remained was just the Alameda loan.
5         And so the gap in the M3 presentation looks bigger
6  because it shows the gross exposure and adds together assets
7  and liabilities, and those numbers are accurate.  Again, those
8  secret financials, it just depends on the corresponding
9  footnotes.
10         I will also note that the CNBC article inaccurately
11 reported some management compensation that is outstanding.
12 That was wrong, and it was false.  We've put out a statement as
13 such.  I know that the document on the docket at Docket Number
14 363 has been removed.  We appreciate the Court and Kroll doing
15 so, and 388 is a revised declaration from Mr. Meghji that has,
16 in fact, been redacted appropriately.
17         So, again, it's just a snafu.  Mr. Stark and Mr.
18 Meghji called me immediately after realizing this, and I
19 totally understand this can happen at any time, and it's
20 unfortunate, but we're moving on.
21         THE COURT:  Understood.  As you said, these things do
22 happen, especially with technology that we're all not
23 necessarily facile with.
24         Mr. Stark, do you want to weigh in?
25         MR. STARK:  I do, Your Honor, and I don't want to --

1  can Your Honor hear me okay?
2              THE COURT:  Yes.
3              MR. STARK:  Thank you.  I do want to confirm a couple
4  of things on the record, although I think Mr. Sussberg stated
5  the facts on the ground quite well.  This was a late night
6  drafting, and the redaction unfortunately did not have the
7  encryption software.  We've all seen this encryption issue
8  before where a late night mistake by somebody lower in the
9  chain on a redaction that the software was not used we didn't
10 find out about it.  The problem of not using the redaction is
11 that it can be reverse engineered, and the person inadvertently
12 who filed it doesn't realize because of the failure to use the
13 encryption software that they inadvertently put out there
14 something that can be reverse engineered.
15             As soon as we found that out, we pulled the pleading
16 and notified chambers.  We called Kirkland & Ellis and told
17 them and replaced it with the encryption redaction, but in that
18 intervening window the CNBC reporter was able to reverse --
19 pull the pleading and reverse engineer it, so we couldn't stop
20 that.  All we could do was own up to the error which I fully
21 take responsibility for.
22             I think the report, as Mr. Sussberg quite aptly said,
23 it sensationalized something that's a bit of a (indiscernible)
24 and so -- but you never want -- it's crestfallen for me that an
25 error like that happened in any event.

1        As soon as I figured it out, I found out about it, I
2   called Mr. Sussberg, who could not have been more gracious and
3   professional about that.  I'm not surprised.  That's how he is,
4   and -- but I do think it's important to acknowledge and
5   recognize that that conversation happened in the heat of a
6   hurry, significant battle between our respective clients.
7        So, again, I'm not surprised by the professionalism,
8   but I am quite thankful for it.  We don't have an issue to
9   resolve, but I did want to acknowledge and be thankful for it
10  in front of Your Honor.
11       THE COURT:  Thank you, Mr. Stark.  I appreciate those
12  comments, and everything I've seen is really, as I've said,
13  matched, if not exceeded, expectations about the quality and
14  the efforts going on in this case.
15       Mr. Sussberg, I do have a question.  Just before we
16  get into the details, and it was my understanding that the U.S.
17  Trustee has for lack of a better term signed off on the
18  resolution, the KERP resolution.  I thought it was still an
19  open issue on the Moelis retention.  Has something developed
20  that I'm unaware of?  In other words, I thought they had until
21  Sunday at certain -- Sunday afternoon right before game start
22  to file objections.
23       MR. SUSSBERG:  Yes, my understanding is that we are
24  resolved with the U.S. Trustee for today.  So, the objections
25  to the KERP and for the sealing of information have been

1 withdrawn.

2 　　　　　As it relates to Moelis, we will circulate, if we
3 haven't already, a copy of the revised Moelis order to reflect
4 the settlement with the Committee, and the U.S. Trustee has
5 until Sunday to object to the Moelis retention.  And to the
6 extent there's an objection, we will of course respond and then
7 be in a position to deal with it on Monday, Your Honor.

8 　　　　　THE COURT:  All right.  That comports with my
9 understanding.  That's great.  Let's then proceed and let's
10 hear of the resolution that's been reached.  Mr. Howell.

11 　　　　　MR. HOWELL:  Yes, thank you, Your Honor.  Russ Howell
12 from Kirkland & Ellis.  Can you hear me okay?

13 　　　　　THE COURT:  Yes, fine.  Thank you.

14 　　　　　MR. HOWELL:  Okay.  First, I want to echo Mr.
15 Sussberg's comment and thank the Court for its time and
16 assistance in helping us get to the resolution that we've
17 reached, as well as to thank the Committee and the Office of
18 the United States Trustee for its professionalism in the
19 sometimes hard fought battle that led to where we are now.

20 　　　　　I'll take us through the agenda today briefly, which
21 of course we're happy to say is entirely uncontested, and so
22 I'd like to start with the debtors' motion to seal at Docket
23 351 to seal certain confidential information related to Ms.
24 Kroll's declaration in support of the retention programs
25 motion.  As Mr. Sussberg indicated, all objections to this

1  motion have been withdrawn, and it is highly important to the
2  company and to its employees to keep their personal information
3  confidential.
4          So, unless Your Honor has any questions, we ask that
5  that motion be granted, and I can turn to the retention
6  programs motion, which would be last item on the docket.
7          THE COURT:  Well, before do that, there's the
8  Committee's motion docketed at 311, which is referenced in the
9  agenda, which essentially sought redaction of their pleadings
10 in opposition to the KERP.  Are we treating those in the same
11 fashion?  In other words, is the Court being asked to grant
12 their motion to redact and to seal?
13         MR. HOWELL:  The U.S. Trustee has withdrawn
14 objections to any of those motions.  I do think it's moot with
15 respect to the -- for instance, the declarations.  It won't be
16 put into the evidentiary record on behalf of -- as part of
17 retention programs motion, but, yes, all of that should remain
18 under seal.
19         THE COURT:  Well, that's fine.  For our records and
20 for the docket I want to reflect that the motions are granted,
21 and that ensures that the documents remain sealed and not
22 either returned or unsealed.  So, we'll then mark as well the
23 Committee's motion to seal at Docket 311 is granted.
24         And, Mr. Sponder, Ms. Bielskie, whoever's weighing
25 in, you'll let me -- you'll advise if the U.S. Trustee is

1 taking or has any additional concerns as we go along.  Good
2 morning to both of you.
3           MR. SPONDER:  Thank you, Your Honor.  Yes, we will
4 advise.
5           THE COURT:  All right.  Thank you.  Mr. Howell,
6 please continue.
7           MR. HOWELL:  Thank you, Your Honor.  So, turning to
8 the debtors' motion for entry of an order approving the
9 debtors' retention program and granting related relief, we're
10 pleased to say that we've reached a settlement with the
11 Official Committee of Unsecured Creditors, and that that
12 settlement also allowed the United States Trustee to resolve
13 and withdraw its objection.
14           And, as Mr. Sussberg said, it's not for right now,
15 but that settlement with the Official Committee also addressed
16 the Moelis issues as was just discussed.
17           But the debtors have proposed two retention programs,
18 one Key Employee Retention Program, or KERP, and one Targeted
19 Retention Program or TRP, and in support of those motions I'd
20 like to now offer two supporting declarations, one from the
21 debtors' chief people officer, Megan Kroll, that's at Docket
22 350, and the other from Josephine Gartrell, a senior director
23 at Willis Towers Watson, and that is at Docket 349.
24           MR. STARK:  Your Honor, may I be heard, please?
25           THE COURT:  Yes, please.

1        MR. STARK:  The Committee most assuredly does not
2 object to the admission of those declarations.  I only asked,
3 if we can, sort of a first evidentiary issue kind of matter
4 where I asked the Court as we're going forward contested
5 matters as sort of a rule that what we admit in one contested
6 matter is not necessarily applicable in the next contested
7 matter, so we don't have to worry about things like that.  We
8 haven't sort of gone through any declarations with that in
9 mind.  It's just sort of the normal rules of road as I
10 understand them, if Your Honor is willing to agree to that.
11        THE COURT:  I don't have any issue with that
12 approach.  We're limiting the evidence to the discrete motions
13 that are before the Court.  The parties reserve their rights.
14 Obviously for impeachment purposes down the road what's in a
15 filed sworn declaration is going -- will retain its relevance,
16 but for purposes of today, we understood -- the Court
17 understands that given the consensual nature of the resolution
18 that are being offered and for purposes of support of the
19 resolution itself.
20        MR. STARK:  Thank you, Your Honor.
21        THE COURT:  You're welcome.  And unless I hear
22 another objection, the Court will accept the declarations into
23 evidence.
24        MR. HOWELL:  Thank you, Your Honor. So, as laid out
25 in the declarations, as well as in our pleadings, both of these

1  plans, the KERP and the TRP, are retention plans and neither
2  includes any of the debtors' insiders.  These are sound
3  exercises of the debtors' business judgment and justified based
4  on the facts and circumstances of these cases.
5          And in the end I'll come to the specific alterations
6  that were made as a result of settlement, but I did want to
7  say, Your Honor, that in particular the facts and circumstances
8  of this case are somewhat remarkable.  These employees have
9  faced a remarkable storm of events over the past year that have
10 created attrition already and high risk of further attrition.
11         These employees have already seen three major
12 downsizing events since last January, including a reduction of
13 force of nearly two thirds of the total workforce immediately
14 preceding the petition date.  Most of these employees have
15 legacy retention payments that were wiped out by the filing of
16 the bankruptcy, and all of them had lost equity in the company.
17         In short, this was a perfect mix for potential
18 attrition, and unfortunately the debtors have seen that
19 attrition, including 11 exits since the petition alone, nearly
20 10 percent of the remaining workforce.
21         So, against that backdrop, it's essential that the
22 debtors institute these retention programs to keep critical
23 workers with the company.
24         Now, anyone reviewing Ms. Kroll's declaration or
25 frankly anyone listening to Ms. Kroll's deposition would

1  recognize the depth of effort that went into designing these
2  programs and the depth of knowledge and passion that she and
3  her team brought to understanding the debtors' workforce and
4  making sure the right skeleton crew remained to go forward.
5         And these employees that are part of these retention
6  programs are critical to the debtors' success, no matter what
7  the path forward, whether that be through a sales process, a
8  standalone reorganization or otherwise.  And when I say
9  success, I mean, maximizing recoveries to stakeholders, here of
10 course critically to the BlockFi customers or clients as they
11 call them.
12        And so I'm happy to walk through the Dana factors,
13 Your Honor, but I thought given it's uncontested I would move
14 through quickly.  That support is laid out in the declarations
15 as well as in our motion and in our reply.
16        In short though, the plan was designed to retain the
17 critical employees, which is necessary here, while also making
18 sure to make the best effort to control costs.  The plan design
19 is consistent with industry standards.  The costs are
20 reasonable given the facts and circumstances of this case, and
21 the debtors did an incredible amount of diligence working
22 frankly around the clock immediately preceding the bankruptcy
23 to design these plans and to consult with outside advisors,
24 including counsel and Willis Towers Watson.
25        So, as we've said, we're pleased to have reached this

1  negotiated resolution, and we have provided a revised order at
2  Docket 419 that lays out the salient settlement terms.  Those
3  terms are as follows, first, the total cost of the plan of both
4  programs was reduced to a total of a maximum of $9.98 million.
5  That amount reflects the bonuses.  Retention payments to the
6  Tier 1 employees shall be 42.5 percent of the base salary
7  amount, and with respect to the Tier 2 participants in the
8  retention program, that amount shall be nine percent, which
9  again arrives at a maximum of $9.98 million.
10          Secondly, there's a change to the timing for the Tier
11 1 participants.  The Tier 2 participants have no change to the
12 timing of their payments, but the Tier 1 is now payable.  One
13 third will be payable upon approval of the retention program
14 subject to clawback until the three-month anniversary of that
15 same court approval.
16          The second third will be payable at the earlier of
17 confirmation or sale approval.  So, the earlier of either
18 confirmation or sale approval on the one hand or the six-month
19 anniversary of court approval of the retention programs on the
20 other hand.
21          And the final third will be payable at the earlier of
22 either 30 days after emergence or 12 months -- or the 12-month
23 anniversary of the court approval date.
24          Also, one other change to the order is that the
25 debtors may now add a replacement participant to the retention

1  program only with the consent of the Committee.
2           So, those are the changes.  Those are reflected in
3  the order at 419.  So, with that, Your Honor, I respectfully
4  request that the debtors' motion be granted.
5           UNIDENTIFIED ATTORNEY:  I'm sure he's going to say,
6  you know, it's seven.
7           MR. SUSSBERG:  Michael, you're not on mute.
8           MR. HOWELL:  So, Your Honor, with that, I
9  respectfully request that the debtors' motion be granted.
10 Thank you.
11          THE COURT:  Thank you, Mr. Howell.  I appreciate the
12 recitation of the changes.  Let me hear from anyone else who
13 wishes to offer up any comments or concerns.
14          MR. STARK:  Excuse me, Your Honor.
15          THE COURT:  Yes.
16          MR. STARK:  Robert Stark.
17          THE COURT:  Yes.
18          MR. STARK:  Okay -- we agree with Mr. Howell's
19 recitation of the settlement, and that with the settlement we
20 are supportive of the relief requested.
21          THE COURT:  All right.  I thank the Committee, and I
22 thank the U.S. Trustee's Office, as well.  The objections have
23 been well laid out and raise concerns, and I think the manner
24 in which it was addressed as far as the sliding scale and the
25 scheduling makes sense and the amounts.  I think it offers the

1  debtor and the employees an opportunity to move forward and
2  maximize the estate.
3           All involved were in agreement as to the applicable
4  law and the recitation of the Dana factors.  I'm not going to
5  go through it at this juncture.  I'm satisfied that the
6  proposal as amended and as agreed upon comports with applicable
7  law with respect to the KERP and the TRP, and I'm happy to
8  approve it going forward.  I appreciate, again, the efforts and
9  the professionalism in reaching the compromises.
10          Thus, I guess we're left with a hearing on Monday.
11 Well, let me go back.  Before we approach Monday.  Will the
12 debtor be submitting final forms of orders on these?
13          MR. HOWELL:  Yes, we will, Your Honor.
14          THE COURT:  All right.  So, I'm willing to mark it
15 order to be submitted.  The motions to seal will just be marked
16 granted.  I don't need orders.  We'll use the orders that
17 accompanied the motions.
18          And now for Monday, my understanding is we have the
19 Moelis application still pending.  We also have the sale and
20 bidding procedures motion, correct?
21          MR. SUSSBERG:  Correct, Your Honor.  We've got an
22 objection from the United States Trustee on the bidding
23 procedures.  I am hopeful, maybe even cautiously optimistic
24 that we can try to reduce the amount of objections from the
25 U.S. Trustee, although I'm not sure we'll solve them all.  So,

1  if we need to, we'll address that Monday, and we also have the
2  bar date motion, and as you mentioned, Your Honor, the Moelis
3  retention to the extent the U.S. Trustee has an objection.
4        THE COURT:  All right.  That slipped my mind, the bar
5  date motion.  All right.  We are on for ten o'clock I believe
6  Monday.  My only concern --
7        MR. SUSSBERG:  Yes, sir.
8        THE COURT:  -- is scheduling.  As I've indicated, I
9  am participating in a town hall remote seminar for one hour
10 from 12 to 1.  You all are welcome to watch.  If we're --
11 hopefully we'll be done; if not, we'll continue on after one
12 o'clock, depending upon how the arguments go.  Any other issues
13 or concerns that anyone wants to raise?
14        UNIDENTIFIED ATTORNEY:  No, Your Honor.  Thank you.
15        THE COURT:  Well, again, I appreciate the efforts.
16 Thank you all.  Take care.  We are adjourned.
17                        * * * * *

## **C E R T I F I C A T I O N**

    I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.    DATE:  January 30, 2023