| |
|---|
| UNITED STATES BANKRUPTCY COURT <br> DISTRICT OF NEW JERSEY |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> **DUANE MORRIS LLP** <br> Wendy M. Simkulak (wmsimkulak@duanemorris.com) <br> Catherine B. Heitzenrater (cheitzenrater@duanemorris.com) <br> Roxanne J. Indelicato (rindelicato@duanemorris.com) <br> 30 South 17th Street <br> Philadelphia, PA 19103-4196 <br> Telephone: (215) 979-1000 <br> Facsimile: (215) 979-1020 <br><br> *Attorneys for the Chubb Companies* |

| | |
|---|---|
| In re: <br><br> BLOCKFI INC., *et al.*,[1] <br><br><br><br> Debtor | Chapter 11 <br><br> Case No. 22-19361 (MBK) <br><br> (Jointly Administered) <br><br> Honorable Michael B. Kaplan |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO ANY SALE TRANSACTION CONTEMPLATED BY THE DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED DATES AND DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT, AND PLAN CONFIRMATION, AND (III) GRANTING <u>RELATED RELIEF</u>**

ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, Chubb Insurance Company of New Jersey, and each of their respective U.S.-based affiliates and successors (collectively, the "<u>Chubb Companies</u>"), by and through their undersigned counsel, hereby file this Reservation of Rights (the "<u>Reservation of

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

Rights") with respect to any sale transaction contemplated by the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 226] (the "Motion"),[2] and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A.  The Bankruptcy Case

1. On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

2. On January 9, 2023, the Debtors filed the Motion, seeking, *inter alia*, entry of an order (a) approving the Bidding Procedures; (b) establishing certain dates and deadlines relating to the potential Sale of the Debtors' equity and/or certain of the Debtors' assets; and (c) scheduling and approving the manner of notice of an auction, if any.

3. On January 30, 2023, the Bankruptcy Court entered the *Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 441] (the "Bidding Procedures Order"), approving, *inter alia*, the Bidding Procedures.

---

[2]  Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

2

4. As of the date hereof, the Winning Bidder(s) has not yet been identified and a proposed asset purchase agreement has not yet been filed.

### B. The Insurance Program

5. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors, or their affiliates or predecessors, as named insureds.

6. Pursuant to the Policies and any agreements related thereto (collectively, the "Chubb Insurance Program"),[3] the Chubb Companies provide, *inter alia*, certain general liability, commercial liability, special events liability, directors' and officers', and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Obligations").

7. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

### RESERVATION OF RIGHTS

8. The Motion and the Bidding Procedures do not mention the Insurance Program or any portion thereof, the Winning Bidder(s) has not yet been identified, and a proposed asset purchase agreement has not yet been filed. Accordingly, the Chubb Companies cannot determine

---

[3] The descriptions of the Chubb Insurance Program set forth herein is not intended to, and shall not be deemed to, amend, modify or waive, any of the terms or conditions of the Chubb Insurance Program. Reference is made to the Chubb Insurance Program for a complete description of their terms and conditions.

or confirm at this time whether the potential Sale contemplates the sale of all or a portion of the Insurance Program (and/or its proceeds). The Chubb Companies, therefore, reserve their rights with respect to any Sale to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, and/or any rights thereunder or proceeds thereof.

9. With respect to any Sale contemplated by the Motion, the Chubb Companies assert that (i) the Insurance Program must be assumed and assigned, if at all, as a whole, and in order to be entitled to any of the benefits of the Insurance Program, the Winning Bidder(s) must remain liable for all of the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, the Insurance Program cannot be assigned or otherwise transferred without the consent of the Chubb Companies, which consent has not been sought or given; and (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and the Winning Bidder(s), is entitled to coverage or proceeds under the Insurance Program.

I. **The Insurance Program and the Obligations Thereunder Are Indivisible.**

10. To the extent that the Debtors purport to assign or transfer only a portion of the Insurance Program (but not the entirety of such Insurance Program) to the Winning Bidder(s), such a potential split of the Insurance Program is improper.

11. It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Tompkins* ex. rel. *A.T. v. Troy Sch. Dist.*, 199 Fed. App'x 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan*

4

*v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Tr. Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . . ."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

12. It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th

5

Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

13. Moreover, the Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Hldgs., Inc. (In re Physiotherapy Hldgs., Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*,

6

326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

14. Accordingly, any sale or other transfer of only a portion of the Insurance Program is improper, and any purported transfer of the Insurance Program to the Winning Bidder(s) must be in its entirety, and the Winning Bidder(s) must remain liable for all of the Obligations thereunder.[4]

15. The Chubb Companies therefore reserve their rights with respect to any purported assumption and assignment or other transfer of any portion of the Insurance Program in connection with the Motion and any proposed Sale

**II. The Insurance Program Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.**

16. To the extent that the Debtors seek to assign the Insurance Program in connection with the Motion or any Sale, such assignment cannot occur without the express written consent of the Chubb Companies.

---

[4] Additionally, to the extent the Debtors seek to assign or transfer the Insurance Program pursuant to a Sale, any cure amount must be evaluated at the time of assumption. As more particularly described in the Insurance Program, the Debtors are required to pay the Obligations, and therefore, amounts may become due and owing under the Insurance Program either prior to or after the assumption thereof. The Chubb Companies also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Program and the Obligations. The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies. Accordingly, any cure amount must be determined at the time of assumption and further, as a condition for the assignment of the Insurance Program, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Program, including, without limitation, paying the Obligations as they become due.

17. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

18. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

19. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

20. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does no consent to assignment.").

21. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Mercedes-Benz of W. Chester v. Am. Family Ins.*,

Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898, at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

22.  Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to

---

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Program cannot be assigned without the prior written consent of the Chubb Companies.

23. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment or other transfer of the Insurance Program, the Debtors and the assignee may be required to execute an assumption agreement, in form and substance acceptable to the Chubb Companies. In the event that the Debtors do attempt to transfer all or any part of the Insurance Program in connection with the Motion, any proposed assignee will also need to satisfy the Chubb Companies' extensive underwriting and financial review process, which takes substantial time to complete.

24. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program, the Chubb Companies reserve their rights with respect to any and all such assignments at this time.

### III. The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and the Winning Bidder(s).

25. As of the date hereof, it is not clear exactly what, if any, portions of the Insurance Program the Debtors intend to transfer to the Winning Bidder(s) pursuant to the Motion.

26. While it is improper, as discussed above, to split the Insurance Program itself, or to split the rights under the Insurance Program from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Program in connection with any Sale is likely to result in coverage disputes between the Winning Bidder(s) and the Debtors.

27. To the extent that the Chubb Companies agree to the assignment of the Insurance Program, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Winning Bidder(s), which entity is entitled to coverage thereunder in connection

with a particular claim. Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Winning Bidder(s), which entity is entitled to proceeds under the Insurance Program.

WHEREFORE, the Chubb Companies reserve their rights with respect to the Motion and any proposed Sale in connection therewith.

Dated: February 16, 2023                                          Respectfully submitted,

**DUANE MORRIS LLP**

/s/ Catherine B. Heitzenrater
Wendy M. Simkulak, Esq.
Catherine B. Heitzenrater, Esq.
Roxanne J. Indelicato, Esq.
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com
CHeitzenrater@duanemorris.com
RIndelicato@duanemorris.com

*Counsel for the Chubb Companies*