UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                        .      Case No. 22-19361-MBK
                              .
BLOCKFI INC., et al.,         .
                              .
          Debtors.            .      402 East State Street
                              .      Trenton, NJ 08608
                              .
                              .      January 30, 2023
. . . . . . . . . . . . . ..         10:01 a.m.


TRANSCRIPT OF MOTIONS HEARING
BEFORE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          By:  FRANCIS PETRIE, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022

                          Haynes and Boone, LLP
                          By:  RICHARD KANOWITZ, ESQ.
                          30 Rockefeller Plaza, 26th Floor
                          New York, NY 10112


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

For the Official                Brown Rudnick, LLP
Committee of Unsecured          By:  ROBERT J. STARK, ESQ.
Creditors:                           KENNETH AULET, ESQ.
                                7 Times Square
                                New York, NY 10036


For the United States           Office of the United States Trustee
Trustee:                        By:  JEFFREY M. SPONDER, ESQ.
                                     LAUREN BIELSKIE, ESQ.
                                One Newark Center
                                Newark, NJ 07102


For the Liquidates of           Morgan, Lewis & Bockius, LLP
Emergent Fidelity               By:  JOSHUA DORCHAK, ESQ.
Technologies, LTD.,             101 Park Avenue
Angela Barkhouse and            New York, NY 10178-0060
Toni Shukla:

- - -

# **I N D E X**

| **EXHIBITS** | **PAGE** |
|---|---|
| Declaration of Brian Tichenor | 5 |
| Declaration of Mark Renzi | 13 |

1          THE COURT:  Good morning, everyone.  This is Judge

2   Kaplan.  Hopefully you all can hear me, and we don't have any

3   glitches.  This is the BlockFi hearings.  And it looks like I

4   -- bear with me.  I spent my weekend reading the pleadings, and

5   you all spent your weekend settling the matters.  I guess you

6   were more productive than me.  So, we will see where we're at.

7   Let me -- bear with me one moment.  All right.

8          Let me turn to debtor's counsel, and let's hear where

9   we stand with all the pending matters.

10         MR. PETRIE:  That would be me, Your Honor.  Good

11  morning.  Can you hear me clearly?

12         THE COURT:  Yes, I -- we hear you.

13         MR. PETRIE:  Great.  Good morning, Your Honor.

14  Francis Petrie, of Kirkland, on behalf of the debtors.  So, I

15  am pleased to report that as of this morning we've resolved all

16  outstanding objections for the items that are up for hearing

17  today, including their bidding procedures as of late last

18  night, and we're going forward on a consensual basis today.

19         THE COURT:  Always good to hear.  I think every judge

20  would rather spend the time preparing and then hearing a

21  settlement in any event -- or a resolution.

22         MR. PETRIE:  Exactly.  Happy to report that then.  So

23  let's turn to the first item on the agenda, which would be the

24  bidding procedures motion.  That was filed on -- originally a

25  Docket Number 226.  And this morning we filed a further revised

1 proposed form of order, at Docket Number 435, that reflects the

2 agreement that we reached with the U.S. Trustee and the UCC.

3      In addition, we filed a declaration of Mr. Brian

4 Tichenor from Moelis in support at Docket Number 429.  Mr.

5 Tichenor is on Zoom and available to testify if needed.  At

6 this time, I'd like to ask Your Honor to admit his declaration

7 into evidence.

8      THE COURT:  All right.  Let me ask if there are any

9 objections to admitting Document 429, which is the declaration

10 of Brian Tichenor in support of the debtor's motion.

11      All right.  I hear no objections.  I would assume

12 there's no request for the opportunity to cross-examine Mr.

13 Tichenor with respect to his declaration.

14      I will ask counsel if you can advise me as to the

15 details of the resolution with the U.S.T.  In other words, lay

16 out for me how the process has changed, or what the agreements

17 are.

18      MR. PETRIE:  Gladly, Your Honor.  Okay.  So first, at

19 a high level -- okay, well, I just want to be sure the

20 declaration is admitted now --

21      THE COURT:  Yes --

22      MR. PETRIE:  -- at this point.

23      THE COURT:  -- correct.

24      MR. PETRIE:  Okay.  So the bidding procedures before

25 the Court today at a high level, set forth requirements to

1  participate in the bidding process provides parameters for

2  access to due diligence by acceptable bidders.  It sets up the

3  requirements to participate in the bidding process, and the

4  circumstances to appoint a stalking horse bidder, as well as

5  the timing of an auction and final sale hearing.

6          As noted in our pleadings, we've received substantial

7  interest in the market for (indiscernible) packages.  We expect

8  to receive even more bids going forward.  But given the

9  practical realities of the debtor's circumstances and the

10  current volatility in the cryptocurrency markets, we need to

11  act quickly to preserve the value of our assets.  So the

12  bidding procedures are designed to promote a competitive

13  bidding environment, while minimizing the time spent in the

14  sell process.

15          So we work closely with the Committee and the U.S.

16  Trustee to land on the dates and the sale calendar that aligns

17  with the goals of all parties, and ensures that we can move

18  quickly and efficiently through this process.  So through this

19  order, I think this is clear that we're looking to engage in

20  multiple sale processes.

21          The first relates to the debtor's crypto-money

22  assets.  So that's the one that's set forth in the sale time-

23  line in the order.  And I would have a final bid deadline of

24  February 20th, with an auction to be held at the end of

25  February.

1          The current version of the order had the auction

2     scheduled as February 27th.  In the version we submit to

3     chambers we will likely be moving that to February 28th, with

4     the sale hearing to be heard the week of March 20th, at the end

5     of the week, whenever we're able to get an order on file.

6          As further noted in the motion, we'd like the

7     flexibility to sell the remaining assets through a plan.  And

8     the motion illustrates certain dates that would adhere to that

9     time-line as well, all subject to any sort of disclosure

10    statement motion and solicitation schedule that we'd get

11    ordered from this Court before we enter.

12         However the high level time-line basically has for

13    the customer platform, indication of interest due in mid-

14    February, with final proposals due at the end of March, with a

15    second auction to be held on March 27th.  So the redline

16    attached to the proposed order, if Your Honor has that handy, I

17    can highlight some of the more exciting changes here --

18              THE COURT:  Yes.

19              MR. PETRIE:  -- that helped resolve our issues with

20    the U.S.T.  So --

21              THE COURT:  Go ahead.

22              MR. PETRIE:  So first, in Paragraph 24, to address

23    the feedback received from the U.S. Trustee with regard to

24    customer privacy and their objection.

25              I think it's been well established before this Court

1  that the company's commitment to privacy is second to none.

2  And although BlockFi's terms of service permit a transfer of

3  customer data in the event of a sale, we agreed with the U.S.

4  Trustee nonetheless on the appointment of a consumer privacy

5  ombudsman with respect to any sale of assets that contains

6  personally identifiable information.

7            The sale the debtors are currently engaged in is the

8  sale of mining assets.  So the appointment of an ombudsman is

9  somewhat premature.  So accordingly, we worked out language

10 with the U.S. Trustee to continue to engage with them on the

11 timing of appointment of a CPO, and we will agree to have one

12 appointed once a sale implicates personal information.

13            THE COURT:  All right.

14            MR. PETRIE:  Second, to alleviate the U.S. Trustee's

15 concerns about the appointment of a stalking horse, we built in

16 a notice concept under which, at the point the debtors seek to

17 designate one or more stalking horse bidders, we'll file a

18 notice with the Court, subject to a certain objection period.

19 That notice will include several things.  But a proposed order,

20 the notice will set out the identity of the stalking horse and

21 who they are affiliated with.

22            Whether the stalking horse bidder has any connection

23 to the debtors, other than the bid itself, they'll specify any

24 proposed bid protections, and attach the stalking horse

25 agreement.  And then that will be subject to objection.  In the

1  event there are no objections, we plan to submit an order to

2  the Court without a hearing.  If there are objections, then we

3  would seek to set a hearing with this Court as to the

4  appropriateness of that stalking horse.  So --

5          THE COURT:  Is there still -- I'm sorry.  Is there

6  still the two-day limit as to holding a hearing that was in one

7  of the initial -- earlier drafts?

8          MR. PETRIE:  So in the -- so there's a two-day notice

9  period, but we seek to have a hearing with the Court when you

10  are available.  We obviously can't limit your schedule.  So in

11  the draft that we submit to chambers it'll be no earlier than

12  two business days to account for the notice period, but

13  obviously we cannot make that decision on Your Honor's behalf.

14          THE COURT:  All right.  Because that was my concern.

15  In Paragraph 7 of a prior version, it said, we'll hold the

16  hearing on the first date that the court is available, that is

17  no later than two business days after the notice.

18          MR. PETRIE:  Right, but there will be no --

19          THE COURT:  And my obvious question is what I'm not

20  available in two days?  I don't want somebody to argue that

21  there's a breach or a default.

22          MR. PETRIE:  No, it would be no earlier to account

23  for the notice period.  We'll amend that in the version we

24  submit to chambers.

25          THE COURT:  All right, thank you.  Go ahead,

1  continue.

2          MR.  PETRIE:  So anyway, to account for that notice

3  period too, we'll have the auction listed as the 28th, but

4  we're working to select a stalking horse well in advance of an

5  auction, and working through the actual documentation with

6  parties to ensure that we're prepared as soon as possible.  So

7  in a perfect world, this notice period won't run till the

8  actual outside date.

9          Anyway, Your Honor, those are the major changes that

10 we made to the bidding procedures.  As a whole, we think they

11 represent a sound exercise of the debtor's business judgment.

12 They also reflect the expectations of the market.  And we

13 believe they are necessary to maximum the value of our estates.

14 Does Your Honor have any questions?

15         THE COURT:  Do you need as far as the order approving

16 the procedures to have the March date all ready for the sale

17 hearing on the mining?

18         MR. PETRIE:  So, we have spoken with chambers about

19 -- so this is the date of the sale hearing --

20         THE COURT:  Right.

21         MR. PETRIE:  -- which is the week of March 20th,

22 correct?

23         THE COURT:  Right.  Do you need a --

24         MR. PETRIE:  If we are --

25         THE COURT:  Go ahead.  I can give you a specific

11

1  date, if you need to insert it.  I don't --

2         MR. PETRIE:  I think we'll be seeking the 23rd or

3  24th, if either of those dates are possible.

4         THE COURT:  Let's see.  Yes, we can make either work.

5         MR. PETRIE:  Great.

6         THE COURT:  So --

7         MR. PETRIE:  Okay.  So we'll just put those dates,

8  ask the Committee and make sure it works with everyone's

9  schedules on our side.  But in the version we submit to

10 chambers they will be one of those.

11        THE COURT:  Fine.  Thank you.  Let me hear from both

12 the Committee and the U.S. Trustee that they are comfortable

13 with the process.  Let me first turn to Mr. Stark.  If you want

14 to just weigh in.

15        MR. STARK:  Thank you, Your Honor.  I'd like to defer

16 to my partner, Ken Aulet, if I may?

17        THE COURT:  Absolutely.

18        MR. AULET:  Good morning, Your Honor.  Ken Aulet, of

19 Brown Rudnick for the Committee.  The Committee has no

20 concerns.  We had a number of informal comments that have been

21 incorporated into the order in agreement with the debtors.

22        THE COURT:  All right.  Thank you, counsel.  Ms.

23 Bielskie or Mr. Sponder?

24        MS. BIELSKIE:  Good morning, Your Honor.

25        THE COURT:  Good morning.

12

1          MS. BIELSKIE:  If counsel for the debtor accurately

2   represented all the changes, the major changes that we

3   requested, there was a little bit of the time that we agreed to

4   each provision, which is why they were working on it over the

5   weekend.  But we did have a lot of back and forth, and we're

6   pleased with the additions and to be able to do this

7   consensually.

8          THE COURT:  All right.  Thank you.  Is there anyone

9   else who wishes to be heard?  Okay, then, do we anticipate

10  having a final version sent to us?

11         MR. PETRIE:  Yes, Your Honor.

12         THE COURT:  All right.

13         MR. PETRIE:  We'll send that after this.

14         THE COURT:  Send it down to chambers.  I think it's a

15  workable and certainly an expeditious and efficient process

16  that's contemplated, and we'll all keep our fingers crossed

17  that it produces a significant result.  Thank you.

18         MR. PETRIE:  Thank you, Your Honor.  And thank you to

19  the U.S. Trustee and counsel for the Committee for working on

20  it with us, on this, especially over the weekend, if I hadn't

21  said that formally yet.

22         THE COURT:  Well, all right.

23         MR. PETRIE:  So let's move on to the next item on

24  today's agenda, the debtor's bar date motion.

25         THE COURT:  Yes.

1           MR. PETRIE:  First, we filed a second declaration

2   here by Mark Renzi, who's the debtor's chief restructuring

3   officer in support of the bar date motion.  Mr. Renzi's

4   declaration was filed at Docket Number 429.  Mr. Renzi is on

5   the line and available to testify if need be.

6           And so unless Your Honor has any questions, or

7   anybody would like to cross-examine Mr. Renzi as to the

8   reasonableness of the bar date, I'd like to move Mr. Renzi's

9   declaration into evidence as well.

10          THE COURT:  All right.  Well, let me open it up to

11  counsel.  Are there any issues or concerns with the Court

12  accepting into evidence the declaration?  All right.  Thank

13  you, Mr. Renzi.  I appreciate your time, and we'll mark the

14  declaration as admitted.

15          MR. PETRIE:  Thank you, Your Honor.

16          THE COURT:  You're welcome.

17          MR. PETRIE:  The bar date motion was filed at Docket

18  Number 225.  In the motion we seek an order setting the bar

19  dates, approving the form and manner of service of the bar date

20  notices, and improving procedures for submitting proofs of

21  claim.

22          We didn't receive any formal objections to this

23  motion, but we worked collaboratively with the U.S. Trustee and

24  the Committee to incorporate their suggestions into the revised

25  proposed order, which was filed yesterday at Docket Number 431.

14

There are a couple of changes that are reflected in the redline
that I'd like to briefly address for Your Honor.

THE COURT:  Yes, please.

MR. PETRIE:  First we extended the general claims bar
date by approximately two weeks from our original request to
March 31st, to allow creditors additional time to fill out and
submit their proof of claim forms.  So that will allow for a
total of 79 days after January 11th, which was the date we
filed schedules and SOFAs.

And later, in Paragraph 7, we incorporated language
that makes it clear the debtors will not seek to disallow
proofs of claims solely on the basis that a client submitted it
against the wrong debtor.  In the event that that happens, we
would instead work to modify that proof of claim, so the
liability sits at the appropriate box rather than to wholesale
disallow them.

Third, in Paragraph 12, we extended the supplemental
deadline for a claimant to file a proof of claim, if for some
reason we have to re-serve those individuals to 30 days after
they finally get re-served.

And finally, in Paragraph 14, we've included language
surrounding Kroll's authority to maintain a redacted public
claims register, which is consistent with the interim redaction
order filed at Docket Number 53, and subject to Your Honor's
entry of a final order with respect to redactions at a later

1  date.

2          THE COURT:  All right.

3          MR. PETRIE:  But I'd also like to take --

4          THE COURT:  Go ahead.

5          MR. PETRIE:  I'd also like to take a brief moment to

6  flag for the Court that we've attached three client's specific

7  proof of claim forms to the proposed order at Exhibits 1, 2,

8  and 3.  I think that these are pretty novel.

9          Each of the specific product proof of claim forms is

10  a customized version of the official form, and it was designed

11  to be as user friendly as possible for the debtor's thousands

12  of clients, some of whom are only aware of their holdings and

13  alternative currency aside from U.S. dollars.

14          So each of these three proof of claim forms tie to

15  one of the debtor's product offerings.  So if you look, there's

16  one for wallet accounts holders, one for interest bearing

17  account holders, and one for those clients who posted loan

18  collateral.

19          So, first to be clear, any creditor can choose not to

20  use these personalized proof of claim forms, and can use the

21  official form instead.  But these supplemental proof of claim

22  forms will ultimately streamline the claims process on the back

23  end, so the debtors can make distributions more quickly, and

24  will allow clients to more easily submit their claims in a way

25  that makes sense to them.

1          So each client will receive the applicable form by

2     mail or e-mail, based on how their claims are scheduled.  And

3     if a client has more than one of these, they will receive

4     multiple versions of the form.

5          I also would like to note that they'll have the

6     ability in Item 7(a) on the form itself, to put the dollarized

7     value of their claim.  And they'll also in 7(b), have the

8     opportunity to put the type of cryptocurrency that they believe

9     they are owed in kind.

10          We included also in Item 7(b), the price of each type

11     of crypto-coin on the bidder's platform as of the petition

12     date, so debtors will be able to use multiplication to

13     calculate their dollarized claim if they're so inclined, and

14     (indiscernible) to how the debtors are -- what went into the

15     debtor's scheduling and understanding of their claim.

16          And I'd just also like to point out that any non-

17     client creditors, so somebody like a vendor, would receive the

18     official proof of claim form and none of these things.  But

19     we've made efforts to basically make this as client friendly

20     and user friendly as possible.

21          THE COURT:  All right.  I have a couple of inquiries,

22     and I'm not sure you all have the answers.  Well, first,

23     Paragraph 13, with respect to the publication of the bar dates.

24     And I won't editorialize as to my thoughts on using the New

25     York Times.  But I don't see any reference to social media,

1 whether it be Twitter --

2          MR. PETRIE:  Oh --

3          THE COURT:  -- whether it be Instagram.  Is that also

4 contemplated?  And the reason I ask, and my -- I've also been

5 familiar -- I've been reading some articles on some of the

6 stumbling blocks for customers and creditors who are

7 internationally based.  And they're not facile with the English

8 language, and they're struggling with the forms.

9          And so, my thoughts are, as far as notice, I want to

10 make sure that we go beyond the Times -- I do see CoinDesk, but

11 what outreach is contemplated?

12          MR. PETRIE:  Well, we regularly do communicate with

13 our clients via our Twitter platforms, and put banners on the

14 user interface on the app and website as well.  We could

15 communicate -- I hear you loud and clear, Your Honor, that

16 you'd like to see some things along those lines, so we will

17 certainly be doing one, if not many of those, to make sure that

18 there's proper outreach to clients.

19          We recruited communications advisors to make sure

20 that these are digestible messages and disseminated widely.

21 And we can definitely do that with the submission of proof of

22 claims form.  We did have a communications package put

23 together, so that people can actually understand what this is.

24 And as always, we'll have, you know, forms of communication and

25 outreach and hotlines in the event that anybody needs

1 assistance with filling these things out.

2         THE COURT:  Great.  Any other -- anybody else want to

3 weigh in or have any thoughts?  All right.  I want to make sure

4 because I've learned of some stumbling blocks that in the other

5 cryptocurrency bankruptcy filing, Celsius, I think, that

6 there's been some burdens on foreign customers.  I just want to

7 make sure that we get sufficient notice, and support those

8 efforts so they understand the process.  Mr. Stark?

9         MR. STARK:  Your Honor, I only wish to raise my hand

10 to say that we are also extremely in tune to this issue.  We

11 have our own media process that we're beginning to think

12 through.  It's obviously something we want to be very cautious

13 and work with the debtors about.

14         But we have our own Twitter account up and running.

15 We have something that we're going to start to try to

16 communicate better to community -- we too have read about the

17 issues that Your Honor has as well, and we're very concerned

18 about them as well.  But we won't do this without the debtor's

19 support and understanding, so that we don't send mixed messages

20 or improper messages to the community.

21         But I only wanted to raise my hand to say we too will

22 be working towards the social media outlets as well.  We try to

23 achieve (indiscernible) the issue that Your Honor has just

24 touched upon.

25         THE COURT:  Great.  I appreciate it.  Thank you.  Mr.

1  Petrie, continue, or is there anything else you wish to add to

2  the motion?

3       MR. PETRIE:  No, that's it, Your Honor.  Unless Your

4  Honor has any more questions, we respectfully ask that you

5  enter the order.

6       THE COURT:  All right.  Does anyone else wish to be

7  heard on the matter?  U.S. Trustee, Ms. Bielskie, are you

8  comfortable with the changes?

9       MS. BIELSKIE:  Thank you, Your Honor.  Yes, one of

10  the things we were most concerned about was that the creditors

11  wouldn't be harmed if they selected the wrong debtor,

12  (indiscernible) the debtor (indiscernible) again.  So the

13  language that we've agreed to resolved that issue.

14       THE COURT:  Great.  Thank you, Ms. Bielskie.  Anyone

15  else?  All right.  Again, I am -- I appreciate the work that

16  went into reaching resolutions.  I think the proposed process

17  is innovative and also will hopefully produce the greatest

18  exposure and notice available for the creditor body to take

19  part in this process and to ensure transparency.  I thank all

20  of the professionals.  I'll await a final form of order be

21  submitted to chambers.

22       MR. PETRIE:  Great.  Thank you, Your Honor.  One

23  other agenda item that's on here is the Moelis retention

24  application.  That is not scheduled for hearing today now.

25  Since the Committee's objection has been resolved, they've --

1  we -- and they've extended the objection deadline with respect

2  to the U.S. Trustee, as the workout language to getting an

3  amenable form of order.

4         That item is not up for hearing today.  The extension

5  deadline extends past the point of this hearing.  In the event

6  that it needs to be heard, we plan to set it for another

7  hearing, but we're hopeful that they'll reach consensus and we

8  can just submit an order to chambers.

9         THE COURT:  I'm hopeful as well.  My understanding is

10  that our next date that we have is February 21.  I think it's

11  an omnibus date, and then followed by March.  Obviously, if we

12  need dates in advance of that, I'd rather ensure that all

13  professionals are onboard, and we resolve the matters.  We can

14  adapt, otherwise, February 21.

15         One thing I would ask, the -- I believe the wallet --

16  the release of the customer funds and the wallet, that motion

17  has been carried to the 21st.  I think it would be important to

18  have, at a bare minimum, if -- I'm assuming we address it.  If

19  we don't address it on that day, an update as to where we are

20  to answer the concerns that are out there for the public and

21  for the customers.

22         This chambers as well as you all are receiving

23  substantial number of inquiries as to the timing, and I think

24  we need to address it, or at least give an update.

25         MR. PETRIE:  Thank you, Your Honor.  Definitely

1  noted.

2            THE COURT:  All right.  Any other issues that anyone

3  wishes to put before the Court?

4            MR. PETRIE:  I believe my co-counsel at Haynes and

5  Boone, Mr. Kanowitz, would like to provide a status update with

6  regards to the adversary proceeding.

7            THE COURT:  That's correct.  Yes, thank you.  Good

8  morning, Mr. Kanowitz.

9            MR. KANOWITZ:  Good morning, Your Honor.  Richard

10 Kanowitz, Haynes and Boone, co-counsel for the debtors and

11 debtors in possession.  Thank you, Your Honor, for hearing us

12 on such short notice as to the update.

13           A couple things.  But just to keep you in the loop

14 and keep everyone apprised of what's going on in this

15 jurisdiction and others.

16           So, on January 27, the court in Antigua granted Sam

17 Bankman-Fried's motion to stay the liquidation proceedings.

18 There'd be granted leave to appeal, which he must file within

19 21 days of that order.  And then they also stayed the

20 liquidation proceedings.  So there's no decision expected

21 anytime soon out of that court --

22           THE COURT:  Okay.

23           MR. KANOWITZ:  -- concerning whether or not Emergent

24 will be wound up, and that the petition that was filed and

25 sought to be heard last week would be granted.  We understand

1 that there may be additional litigation coming out of Antigua

2 between Mr. Sam Bankman-Fried, as well as the JPLs there

3 concerning their powers.

4        So notwithstanding the fact that there's a stay

5 pending appeal on the liquidation, the JPLs are still empowered

6 under certain prior orders, and the scope of those powers as we

7 discussed previously, touched upon whether or not they were

8 going to bring any action against the pledge, and guarantee

9 that Emergent provided the BlockFi.  So we're on a wait and see

10 approach to see what unfolds there.

11        I can tell you that the JPLs have also sought a

12 funding agreement with Fulcrum Distressed Enterprises, to be

13 able to fund their litigation and wind down.  Not surprising

14 that they're seeking to pay back Fulcrum with any and all value

15 that they received from the Robinhood shares.  I will see --

16 we'll see how that plays out now given the fact that there is a

17 stay pending appeal, and that liquidation proceeding is, I

18 guess, on hold until such further order of that court.

19        As to the proceedings here, Your Honor, we're still

20 working on the amended complaint.  Our anticipatory filing is

21 this week.  We are discussing with the DOJ certain issues that

22 they have raised, so our dialogue with the DOJ is continuing.

23        I note for Your Honor, that we do have a scheduling

24 order of December 30th that will need to be amended.  The goal

25 hopefully will be once we file the amended complaint, is to

1  have the parties who are involved in the adversary proceeding

2  agree to a new scheduling order.  If we can't agree to a

3  schedule order, we'll ask for a chamber's conference.

4  Hopefully Your Honor would grant that by Zoom, and we can

5  discuss the issues that might arise between the parties.

6  Hopefully there won't be any, but I just want to, you know, put

7  -- point that out there.

8        Right now under the scheduling order, the original

9  date to move our answer against the original complaint is

10  February 15th.  We've agreed in writing to extend that to March

11  15th.  Like I said before, we do not plan to hold up anybody or

12  to jam them.

13        As when we file the independent complaint, likewise,

14  our goal is to have that be determined or at least responded to

15  by March 15th.  Of course, Your Honor, to further discussion

16  with parties in interest and getting before Your Honor a

17  proposed scheduling order.

18        THE COURT:  All right.  I thank you.  I appreciate

19  the progress report and the developments as they unfold.  I

20  think it's a complicated issue, on several issues.  All right.

21  Anyone else?  Mr. Dorchak?

22        MR. DORCHAK:  Good morning, Your Honor.  Can you hear

23  me?

24        THE COURT:  Yes, I can.  Thank you.  Good morning.

25        MR. DORCHAK:  I'm Joshua Dorchak, Morgan, Lewis and

24

1 Bockius, LLP.  We're counsel to the JPLs of the Antigua entity.

2 I just want to speak up to say, my understanding of what's

3 happened recently is different from Mr. Kanowitz's slightly.

4         For example, I believe it was the Appellate Court

5 that issued a stay, not the court below.  That there was a

6 stay, and there may be further activity, I (indiscernible) the

7 funding issue.  I believe that's all been ex parte, so I don't

8 know why Mr. -- how Mr. Kanowitz knows about it, but I don't

9 want to speak to it.

10         And the issue of whether there's going to be a debate

11 about the shares down in Antigua, I mean, it's been weeks now.

12 We keep getting these suspicious comments, Your Honor, but

13 there's nothing going on in Antigua now and there's a stay.  So

14 nothing's happening about the shares in Antigua, Your Honor, as

15 I keep repeating every time I show up there.  So, there may be

16 further activity, but it's not going to be in the nature of

17 asking if Antiguan court to decide (indiscernible), Your Honor.

18         THE COURT:  All right, fair enough.  Thank you.

19 Anyone else wish to be heard?  All right then.  I think that

20 does it for the items on the agenda.  I appreciate your time,

21 and I guess we'll be speaking again on the 21st, unless

22 something pops up sooner.  All right.  Thank you, all.  Take

23 care.  Court is adjourned.

24         MR. DORCHAK:  Thank you, Your Honor.

25                 *  *  *  *  *

# C E R T I F I C A T I O N

I, KIM WEBER, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Kim Weber

KIM WEBER

J&J COURT TRANSCRIBERS, INC.      DATE: February 22, 2023