```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW JERSEY


IN RE:                       .     Case No. 22-19361-MBK
                             .
BLOCKFI INC., et al.,        .
                             .     402 East State Street
                             .     Trenton, NJ 08608
          Debtors.           .
                             .     February 21, 2023
. . . . . . . . . . . . . .        10:00 a.m.


              TRANSCRIPT OF STATUS CONFERENCE HEARING
                BEFORE HONORABLE MICHAEL B. KAPLAN
                UNITED STATES BANKRUPTCY COURT JUDGE



TELEPHONIC APPEARANCES:

For the Debtors:         Kirkland & Ellis, LLP
                         By:  CHRISTINE A. OKIKE, ESQ.
                         601 Lexington Avenue
                         New York, NY 10022

                         Haynes and Boone, LLP
                         By:  JORDAN CHAVEZ, ESQ.
                         2323 Victory Avenue, Suite 700
                         Dallas, TX 75219

For the Official         Brown Rudnick, LLP
Committee of Unsecured   By:  KENNETH AULET, ESQ.
Creditors:                    ROBERT J. STARK, ESQ.
                         7 Times Square
                         New York, NY 10036



Audio Operator:          Kiya Martin


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

```
TELEPHONIC APPEARANCES (Cont'd):

For the Ad Hoc            Troutman Pepper
Committee of Wallet       By:  DEBORAH KOVSKY-APAP, ESQ.
Account Holders:          875 Third Avenue
                          New York, NY 10022

For the Liquidates of     Morgan, Lewis & Bockius, LLP
Emergent Fidelity         By:  JOSHUA DORCHAK, ESQ.
Technologies, Ltd.:       101 Park Avenue
                          New York, NY 10178

For Deferred 1031, LLC:   Loeb & Loeb, LLP
                          By:  DANIEL B. BESIKOF, ESQ.
                          345 Park Avenue
                          New York, NY 10154

                                - - -
```

1         THE COURT: Okay. Good morning, everyone. This is
2 Judge Kaplan. We will start our hearing on BlockFi. As
3 always, those who wish to be heard, if I haven't called upon
4 you, please use the raise hand function and I will do my best
5 to spot you. We already have somebody already. Let me turn to
6 debtors' counsel. Ms. Okike.
7         MS. OKIKE: Good morning, Your Honor. Christine
8 Okike of Kirkland & Ellis on behalf of the debtors.
9         Your Honor, we have two matters on today's agenda, an
10 update on the Wallet motion and an update on the Emergent
11 proceeding. We would propose to proceed in that order, if
12 that's okay with Your Honor?
13        THE COURT: That's fine. I thought it would, and I
14 agree with debtors' counsel, I thought it would be important
15 since we're not hearing the Wallet motion and it has been
16 always a stir, to have an update for those who are interested
17 in its disposition, so please feel free to go ahead.
18        MS. OKIKE: Thank you, Your Honor. Your Honor, we
19 filed the Wallet Motion early on in these cases because we
20 believed that the cryptocurrency that was in customers' Wallet
21 accounts before the platform pause belongs to customers and
22 should be returned to them.
23        We received a host of objections to the requested
24 relief. Most of the objectors, including the Ad Hoc Group,
25 believe that they should be treated as if the cryptocurrency

1  was in Wallet as of the platform pause because they attempted
2  to move cryptocurrency to the Wallet after the platform pause.
3  We don't agree with their position and it would not be possible
4  to grant the relief that they are seeking.
5           Separately, we've been working with the UCC to
6  respond to their diligence request regarding the Wallet
7  account.  As we sit here today the UCC is also not on board
8  with releasing all of the cryptocurrency that was in the
9  Wallets as of the platform pause because they believe that some
10 of that cryptocurrency could be subject to preferences.
11          Your Honor, the debtors do not believe that transfers
12 to Wallet in the 90 days prior to the filing are preferences,
13 but that topic creates another legal issue that depending on
14 what happens with the case going forward, may or may not be one
15 that people want to litigate.
16          The UCC, like us, wants to get funds to clients as
17 quickly as possible and may ultimately be supportive of
18 releasing some portion of the Wallet funds customers once they
19 complete their diligence, but that process is ongoing.
20          So where we stand today is that we are providing
21 diligence to the Ad Hoc Group, Deferred 1031, and the UCC.  The
22 Ad Hoc Group and Deferred 1031 sent us a list of approximately
23 60 questions that they wants answers to in writing and we have
24 compiled written answers that we plan to send to them and the
25 UCC later today.

1  We are also working through the UCC's request for
2 additional data so they have the granular detail on potential
3 preference exposure.
4  So, Your Honor, once everyone has all the information
5 they need we are going to try to work this out amicably, and if
6 we can't, we'll tee these related issues up for Your Honor in
7 advance of our confirmation hearing.
8  Your Honor, but the debtors' position is that the
9 motion on file is not the right vehicle to address all of the
10 nuances that have been raised by the Ad Hoc Group and the UCC's
11 positions.
12  So we have decided that you know instead of keeping
13 people in suspense, we are going to withdraw the Wallet motion
14 without prejudice.  And if there's no agreement after diligence
15 is complete, the questions raised will be teed up for the Court
16 in a more direct way that gets to the specific answers to the
17 specific questions that all parties will need answered in order
18 for us to propose a plan and hopefully confirm it.
19  So, Your Honor, I'll pause there to answer any
20 questions, but I'm sure counsel for the Committee and the Ad
21 Hoc Group will also want to weigh in.
22  THE COURT:  All right.  Thank you, Ms. Okike.  Let me
23 turn to first counsel for the Committee.  Do you wish to weigh
24 in?
25  MR. AULET:  Yes, Your Honor.  This is Kenneth Aulet

1  of Brown Rudnick for the Committee.
2         Your Honor, the Committee continues to believe that
3  Wallet's funds belonged to Wallet holders, subject to potential
4  holdbacks for preference claims.  And Ms. Okike referenced one
5  of the main issues is, who is the Wallet customer?  And because
6  there are not funds in the Wallet accounts to pay out both the
7  pre-November 10th and the post-November 10th people, that's
8  just a blocking issue that has to be resolved before the Wallet
9  funds can be released.
10         Our understanding is that it's just not practicable
11 based on the debtors' systems to do a partial withdrawal like
12 the Committee supported in our earlier filing.
13         So we understand that this is a very important issue
14 for people.  Every day that goes by that people are separated
15 from their money compounds the damage.  And cryptocurrency is
16 volatile, people may want to be able to trade their positions
17 and we recognize that this thing froze and hurts their ability
18 to do that.
19         So the Committee is going to continue to explore all
20 ways to get these blocking issues resolved as quickly as
21 possible and the Committee continues to support the release of
22 Wallet funds to Wallet holders that are not subject to
23 potential preference holdbacks.  But we're going to need to get
24 the issue teed up of exactly who the Wallet holders are as
25 quickly as possible.

1           THE COURT: Has the Committee identified potential
2  holdbacks yet or are you in the process of doing that,
3  targeting specific Wallet holders and those that may have
4  received preferences?
5           MR. AULET: We have received diligence from the
6  debtors that gives us a general understanding of the potential
7  universe of claims. The issue is is that there is you know
8  millions of transactions that have to be sorted through.
9           And the Committee has been looking to see -- our
10 understanding of the debtors' systems is you can, it's probably
11 possible to turn distributions on for specific parties but not
12 others, but it has to be 100 percent. So we've been trying to
13 identify the customers that would have no preference exposure
14 and that funds could be entirely released.
15          That said, if the post-November 10th customers are
16 considered Wallet holders, there just aren't enough funds for
17 everybody so partial distributions would be required, and our
18 understanding is that just isn't possible.
19          We have a general sense of the potential magnitude of
20 the preference claims, but there are certainly issues that we
21 have not been able to filter out at this time like the 7,575 de
22 minimus cap. We have not removed those sorts of transactions
23 from our data set yet.
24          THE COURT: All right. Thank you. Ms. Kovsky-Apap,
25 for the Ad Hoc, do you want to be heard?

1          MS. KOVSKY-APAP:  Yes, Your Honor.  Thank you and
2  good morning.  Deb Kovsky for the Ad Hoc Committee of Wallet
3  account holders.
4          Like Mr. Aulet and Ms. Okike, we believe that
5  Wallet's funds (indiscernible) ultimately belong to the Wallet
6  customers and not to the estate.  But as Mr. Aulet said, there
7  is a real important dating issue here as to whether the
8  transfers that occurred while the debtor allowed users to
9  continue to transfer assets from BIA to Wallet, whether those
10 should be recognized as part of the Wallet universe.
11         We certainly take issue with Ms. Okike's
12 characterization that these transfers were either attempts,
13 that there was a platform like pause.  We don't think that that
14 (indiscernible).
15         We look forward to receiving answers to the questions
16 that we posed.  This is definitely an important gating issue
17 and while we hope that a consensual resolution can be reached,
18 of course the Ad Hoc Committee reserves its right to bring its
19 own motion to put these matters before the Court in order to
20 get them resolved.
21         We absolutely believe that Wallet assets to the
22 greatest extent possible need to be returned to customers as
23 soon as possible, but they need to be returned to the right
24 customers in the right proportion.
25         THE COURT:  All right.  I appreciate your input.

1  Thank you.  Ms. Okike, I guess I'm inclined, I want to keep my
2  thumb on the process and the parties.  Our next date that we
3  have, omnibus date, is March 13th.  I think that would be
4  appropriate to have, since there will be information supplied
5  this week, maybe we can have another update on the 13th.
6          But from what I'm hearing, the Court should go ahead
7  and mark as withdrawn the current motion just for clarity for
8  all parties, is that correct?
9          MS. OKIKE:  Yes, correct, Your Honor.  We're happy to
10 provide an update at the next omnibus hearing.
11         THE COURT:  Great.  So we'll do that for 3/13, that's
12 at 10:00.  Does anyone else wish to be heard on the status of
13 the now withdrawn Wallet motion?  All right.  Then thank you, I
14 appreciate all of your input.
15         Let's move forward to the only other status matter,
16 Ms. Okike, which would be on the pending litigation with
17 Emergent.
18         MS. OKIKE:  Yes, Your Honor.  I believe my co-counsel
19 Ms. Chavez is going to provide an update on that.
20         THE COURT:  All right.  Ms. Chavez, good morning.
21         MS. CHAVEZ:  Yes, good morning, Your Honor.  Jordan
22 Chavez on behalf of the debtors and as Ms. Okike mentioned we
23 did want to provide just a brief status update on the Emergent
24 adversary.
25         On February 3rd Emergent filed its own bankruptcy

1  case in the District of Delaware and on February 16th BlockFi
2  filed a motion to dismiss Emergent's case which is currently
3  set for hearing on March 15th.
4         We recognize the automatic stay is in place until
5  such time when Emergent may no longer be a debtor or the stay
6  is lifted and so we are continuing to coordinate with the
7  parties involved and submitted a stipulation and scheduling
8  order to Your Honor extending Marex's deadline to answer or
9  otherwise respond in the adversary to March 15th, which Your
10 Honor entered at Docket Number 59.  And we'll of course
11 continue to keep the Court apprised of the status of the
12 Emergent case.
13         THE COURT:  So my understanding from what I've read
14 and heard, there's a pending motion in Delaware, correct, to
15 dismiss the Emergent proceeding?
16         MS. CHAVEZ:  Yes, Your Honor.  We filed it last week
17 at Docket Number 32 in the Emergent case.
18         THE COURT:  Okay.  All right.  Does anyone wish to --
19 thank you, counsel.
20         MS. CHAVEZ:  Thank you.
21         THE COURT:  Does anybody wish to be heard otherwise
22 on this?  Mr. Dorchak?  There you are.
23         MR. DORCHAK:  Good morning, Your Honor.  If I may,
24 just quickly.  Joshua Dorchak on behalf of the Joint
25 Provisional Liquidators of the Emergent (indiscernible).  My

1  firm Morgan Lewis is also proposed counsel to Emergent as a
2  Chapter 11 debtor.
3       That's an inaccurate recital as the current state of
4  affairs in that Chapter 11 case (indiscernible) opposing the
5  motion to dismiss. And I just want to say for the record that
6  we disagree with a lot of the characterizations made in the
7  motion to dismiss about what the (indiscernible) including what
8  the JPLs (indiscernible) Your Honor's court and we learned
9  about those things along the way (indiscernible) the merits of
10 the motion.
11      And because there wasn't more commentary from
12 counsel, I don't have to say anything further at this point I
13 think.  Thank you.
14      THE COURT:  All right.  Well, we'll let the issues
15 play out as they progress.  Thank you.  Thank you, counsel.
16      Well it looks like it's going to be a short morning.
17 Are there any other issues that the debtor or Committee wish to
18 bring to the Court's attention?  Ms. Aulet or I see Mr. Stark?
19      MR. STARK:  Your Honor, may I?  I'm trying to do this
20 standing up.
21      THE COURT:  That's all right.
22      MR. STARK:  I had a terrible problem accessing the
23 Zoom today so my apologies.  I tried to speak earlier and I
24 couldn't do it.
25      THE COURT:  No problem.

1                MR. STARK:  Can you hear me okay?

2                THE COURT:  Yes.  Go ahead, please, Mr. Stark.

3                MR. STARK:  And I was raising my hand ineffectually
4   as you were asking at the end of the last contested matter
5   about the Wallet matter, does anybody else wish to be heard.
6   And you could have heard me like banging my keyboard all the
7   way in New Jersey.  I only want to raise this one point and
8   this is intended to be procedural, not substantive.

9                As we said in our papers you know way back when, when
10  we first addressed the whole Wallet issue, there is some
11  analysis that needs to get done, factual and legal.  Obviously
12  Your Honor asked some questions of my partner and got some
13  answers.

14               But really it still is a work in progress and applaud
15  the debtor for sort of engaging with us about trying to find an
16  intellectually, disciplined, rigorous solution here for a
17  complex problem.

18               The worry that I have from a procedural prospective
19  is withdrawing the motion as a mechanical means to move to the
20  next step.  On a very technical level we have joined
21  (indiscernible) as the Ad Hoc Committee in connection with that
22  motion and in our papers we've said look, there's a lot of
23  difficult stuff we've got to get through, and the Ad Hoc
24  Committee agreed with that.

25               Not to be you know very technical, but generally

1  speaking when you joint issue on a matter it takes consent of
2  all sides to withdraw a motion.
3         But leaving that issue aside for the minute, I don't
4  want to be in a situation where because the motion is withdrawn
5  we now have to start the process over again to find a solution
6  because I think people are working awfully hard to try to find
7  a solution.  And to tee it up in connection with the present
8  contested matter so Your Honor can deal with it in a you know
9  logical way, and I think Your Honor's request to Ms. Okike
10 about having sort of a carryover status conference for a motion
11 that has been withdrawn, kind of reflects the weirdness of the
12 procedural posture.
13        My proposal is instead just put it on a suspense
14 docket.  Let's adjourn it, we know we have issues, let's all
15 continue to kind of work our way through those issues.  If we
16 can find a solution where maybe it's a briefing schedule that
17 we all agree to, maybe it's a discovery matter.  I just don't
18 want to be in a situation where if there are discovery disputes
19 but we don't have a contested matter, that's an odd procedural
20 posture to go in front of Your Honor.
21        If we want to put a briefing schedule in place, do we
22 have to file it on an adversary proceeding to move forward?
23 We're the Official Committee, we're not the debtor, so one
24 could read the Bankruptcy Code as saying only debtors can bring
25 these types of matters, not Committees.

1        So just to make sure that there's clarity of purpose
2   to get to the next stages in the most efficient way possible, I
3   would propose that the better way, rather than withdrawing the
4   motion so to speak, is sort of put it by all parties' agreement
5   on a suspense docket and let's keep working under that
6   contested matter.  And as issues mature, if there are any
7   issues, we can then bring it under that contested matter.  That
8   was my proposal.
9        THE COURT:  All right.  Ms. Okike, does it make sense
10  to you?
11       MS. OKIKE:  Your Honor, I don't think we have an
12  issue necessarily, I just don't think that the motion actually
13  tees up some of the issues that are in dispute, so I think we
14  could work with the various parties to the extent that we're
15  not able to reach consensus on a consensual path forward.
16       But for instance the Ad Hoc Group is seeking relief
17  that the 375 attempted transactions are actually in Wallet, and
18  that's just outside the scope of our current motion and so I
19  don't think procedurally it's the proper means to have that
20  issue decided.  But we're happy to continue working with the
21  parties.
22       To the extent that we're not able to reach you know a
23  consensual resolution, to tee these issues up before Your Honor
24  which I think is what I tried to say maybe inartfully in my
25  opening remarks.

1              THE COURT:  All right.  Ms. Kovsky.

2              MS. KOVSKY-APAP:  Thank you, Your Honor.  Deb Kovsky
3    for the Ad Hoc Committee.  I think that Mr. Stark's proposal is
4    very sensible.  I have no objection to it.

5              I'm not quite certain I understand Ms. Okike's point
6    that the status of the Wallet transfers is not part of their
7    motion.  That was the entire basis of our objection because the
8    motion is to reverse transfers that occurred and figuring out
9    the status of those transfers I think is squarely within the
10   bounds of that motion.  So I think that (indiscernible) we
11   provide an appropriate vehicle, at least on that issue.

12             Where we might have a gap is I understand the
13   Committee desires to figure out potential preference claims and
14   defenses and I don't think that's been raised in the debtors'
15   motion.

16             But leaving that piece aside and solely with respect
17   to the issue of what is the status of these Wallet transfers, I
18   think it's raised in the motion and putting the motion on a
19   suspense docket makes perfect sense to me.

20             THE COURT:  All right.  Thank you.  This is not the
21   first --

22             MS. OKIKE:  Your Honor --

23             THE COURT:  Go ahead.

24             MS. OKIKE:  If I could just respond?

25             THE COURT:  Yes.  Yes, go ahead.

1          MS. OKIKE:  Your Honor, I just disagree with that
2  characterization.  The motion is seeking to release funds that
3  are currently in Wallet and the Ad Hoc Group is seeking that
4  transactions which the debtors don't believe occurred.  These
5  are transactions, attempted transfers that were effectuated on
6  the user interface but not on the back end of the system are
7  actually in Wallet, and our motion doesn't address that at all.
8          Our motion is seeking to release in full the funds
9  that are currently in Wallet based off of our books and
10 records.  It's not seeking to have 375 million of attempted
11 transfers deemed to be in Wallet.  So I just disagree with that
12 characterization that this is teed up in the context of the
13 motion that we filed.
14         THE COURT:  I'm just -- Mr. Besikof?
15         MR. BESIKOF:  Yeah, thank you, Your Honor.  Dan
16 Besikof of Loeb & Loeb for Deferred 1031, LLC.  I just want to
17 briefly respond to this whole thing about what is and what
18 isn't teed up under the motion.
19         The motion has a whole section, and it was the entire
20 basis of our objection, that seeks to invalidate the transfers
21 of funds into Wallet post-November 10th.  You know the
22 corollary to that is that you know if not invalidated, they're
23 valid.  And so you know certainly it seems to us it's teed up.
24 It seems to be the central issue of the entire dispute.  I
25 agree with Ms. Kovsky, the preference issue is not.  It is you

1 know not even mentioned once in the motion.

2 And so you know whether anything is teed up under 3 this motion or not, it seems that if we can get to a resolution 4 of all the issues that makes sense to everybody, keeping the 5 motion on track, you know on suspense as Mr. Stark suggested, 6 makes sense because you know a settlement could certainly fall 7 under this broader umbrella of these issues.

8 THE COURT: All right. Mr. Stark, did you want to be 9 heard again?

10 MR. STARK: Very briefly, Your Honor. Only from the 11 standpoint that we have a nucleus of operative facts, we all 12 know the issues. Is the transfer effective? Is there 13 preferences? Can you get the money now? Is it an asset of the 14 estate?

15 Parsing what's in and what's out is to me a little 16 silly. We have a contested matter. We all have issues that 17 are being thoughtfully advanced in discovery, formal and 18 informal. We're working on it, we're talking a briefing 19 schedule, we're trying to resolve it. And yes, probably this 20 thing all need to be resolved in the settlement format one way 21 or the other.

22 All I'm talking about and my entire proposal was, I 23 don't want to be in a weird situation where perhaps Ms. 24 Kovsky-Apap and Mr. Besikof reach agreement on something. How 25 do I get it in front of Your Honor in a weird way because the

18

1 procedure has been changed and who are we because we're not a
2 debtor and if there's discovery disputes how do we resolve
3 them?
4 　　　　　That's all I'm trying to accomplish here without
5 having to file an adversary proceeding and start the clock all
6 over again.  It seems awfully wasteful and silly.  That's all
7 we're doing.  It doesn't really matter if it's in or it's not
8 in because of course it's going to be all resolved as part of
9 the same issues that we all know what the issues are.
10 　　　　　THE COURT:  All right.  Fair enough.  Thank you all.
11 This, as I was going to say, this is not the first time a
12 motion in front of me morphs into more than what was
13 anticipated at the outset.
14 　　　　　It makes the most sense to keep the motion pending at
15 this juncture simply for status purposes.  So at one point we
16 will put together a briefing schedule which may indeed include
17 a deadline to file cross motions seeking specific relief that
18 is outside the purview of the current motion.
19 　　　　　I will carry the debtors' motion and we will mark it
20 for status only March 10th so that, I'm sorry March 13th, so
21 that it's clear that the Court is not going to be reviewing the
22 pending pleadings and the Court anticipates a boatload of
23 additional pleadings when the time comes, when the issues are
24 crystallized, and when potential cross motions for additional
25 relief and that are outside the scope of the initial motion are

Case 22-19361-MBK    Doc 539    Filed 02/22/23    Entered 02/22/23 10:41:43    Desc Main
Document      Page 19 of 20

19

1  filed.
2         We can talk about scheduling and that does leave the
3  door open if the Court needs to address pending discovery
4  concerns.  It's the middle ground between I think what the
5  debtor has proposed and what makes sense for judicial economy.
6         So we will leave it pending in status, for status
7  purposes only, and then hopefully on the 13th maybe we can
8  start addressing what needs to happen to bring it -- to
9  progress the issues because they are time sensitive and they
10 are important.
11        All right.  With that said, I also was hoping we
12 could schedule a new omnibus date.  The only date I have right
13 now for BlockFi is March 13th.  If we want to keep roughly
14 another 30-day date, I would propose April 11th at 10:00, it's
15 a Tuesday.
16        And again, needless to say, it doesn't stop anyone
17 from coming in on shortened time, we'll see what happens with
18 the other motions, but I just want to have a date out there
19 that we can use to carry matters or to schedule matters.  Does
20 anybody have any concerns?
21        MS. OKIKE:  None for the debtors, Your Honor.
22        THE COURT:  All right.  Great, thank you.  Ms.
23 Kovsky?
24        MS. KOVSKY-APAP:  Sorry, Your Honor, I'm just trying
25 to check the calendar and I just wanted to make sure that that

1 wasn't conflicting with Passover.

2 　　　　THE COURT:  I'm going to get in trouble.

3 　　　　UNIDENTIFIED SPEAKER:  I think Passover is the 2nd,
4 Your Honor.

5 　　　　THE COURT:  Oh, yes, I knew that.  All right.  So,
6 all right, then we're good.  Thank you, folks.  All right.  I
7 appreciate your time and efforts.  We're in recess.

8 　　　　UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

9 　　　　THE COURT:  Thank you.

10 　　　　　　　　　　　　　　* * * * *

11 　　　　　　　　　　　**C E R T I F I C A T I O N**

12 　　　　I, JANET D. PERSONS, court approved transcriber,
13 certify that the foregoing is a correct transcript from the
14 official electronic sound recording of the proceedings in the
15 above-entitled matter, and to the best of my ability.

16

17 /s/ Janet D, Persons

18 JANET D. PERSONS

19 J&J COURT TRANSCRIBERS, INC.    DATE:  February 22, 2023

20

21

22

23

24

25