**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice* g)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO DIRECT SCRATCH TO RETURN POST-PAUSE PAYMENTS ON RETAIL CLIENT LOANS AND (B) GRANTING RELATED RELIEF

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "<u>BlockFi</u>" or the "<u>Debtors</u>"), as debtors

and debtors-in-possession in the above-referenced Chapter 11 cases (the "<u>Chapter 11 Cases</u>"),

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

hereby file this *Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Direct Scratch to Return Post-Pause Payments on Retail Client Loans and (B) Granting Related Relief* (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.    The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

## Relief Requested

4.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing the Debtors to direct Scratch to return Post-Pause Payments made on certain Retail Client Loans (each defined below) and (b) granting related relief.

## Background

5.    On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases and the Motion are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors'*

*Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed on the

Petition Date and is incorporated by reference herein.

6.      The Debtors are operating their businesses and managing their property as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29,

2022, this Court entered an order [Docket No. 42] authorizing the procedural consolidation and

joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These

Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

7.      On December 21, 2022, the United States Trustee for the District of New Jersey

(the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section

1102 of the Bankruptcy Code (the "Committee") [Docket No. 130]. No request for the appointment

of a trustee or examiner has been made in these Chapter 11 Cases.

**A.  The Debtors' Retail Loans and Scratch Subservicing Agreement**

8.      As described fully in the First Day Declaration, many of BlockFi's retail clients

(the "Retail Clients") borrowed U.S. dollar or stablecoins from BlockFi secured by certain types

of digital asset collateral (the "Retail Client Loans"). The U.S. based Retail Client Loans are

serviced by an outside provider, Scratch Services, LLC ("Scratch"). First Day Declaration at ¶ 43;

*see also Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue*

*Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and*

*Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management*

*System, and (D) Continue Performance of Intercompany Transactions, (II) Granting Superpriority*

*Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain*

*U.S. Trustee Requirements* [Docket No. 7] (the "Cash Management Motion") at ¶ 16 (explaining

that Scratch serves as a third-party service provider for the U.S. Retail Client Loans).

9.      To document the contractual relationship authorizing Scratch to provide third-party loan subservicing to the Debtors, the Debtors and Scratch entered into that certain loan subservicing agreement on January 24, 2018 (the "Scratch Subservicing Agreement").[2] As this Court is well aware, on November 10, 2022, all activities on the BlockFi platform, including trading and lending, were halted (the "Platform Pause"). Pursuant to the terms of the Scratch Subservicing Agreement and prior to the Platform Pause, when a U.S. Retail Client made a payment on a Retail Client Loan, the amount of such payment was deposited with Scratch. In turn, Scratch would service the payment and coordinate with BlockFi to transfer the payment to BlockFi and apply the payments to the respective Retail Client Loan.[3]

**B.  Post Platform Pause Payments**

10.      Following the Platform Pause, BlockFi made the business decision to place the Retail Client Loans into administrative forbearance. No interest or late fees have been charged on the Retail Client Loans since the Platform Pause, and no margin calls or other liquidations have taken place. Prior to the Petition Date, BlockFi distributed communications to Retail Clients informing them of the administrative forbearance due to the Platform Pause.

11.      Following the Petition Date, Scratch informed BlockFi that it is not possible to stop clients from making online payments via wire transfer, automated clearing house ("ACH"), and mailed checks. Specifically, since the Retail Client Loans are still active loans, the Retail Clients can, on their own accord, make payments to Scratch. Based on BlockFi's communications with

---

[2] Nothing in this Motion or any actions taken pursuant to the relief requested, if granted, is intended to, or should be construed as, the Debtors requesting to assume the Scratch Subservicing Agreement to the extent it is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Debtors are still in the process of evaluating all executory contracts.

[3] BlockFi independently managed the margin calls related to the Retail Client Loans. *See* First Day Declaration at ¶ 16.

Scratch, the only way Scratch would be able to entirely prevent Retail Client Loan payments on the Scratch system would be if Scratch deactivated the Retail Client Loans. Given that BlockFi does not wish to deactivate the Retail Client Loans at this time and Scratch's inability to prevent payments on active Retail Client Loans, Retail Clients have made approximately $585,100.03[4] in payments to Scratch after the Platform Pause as of February 6, 2023 (the "<u>Post-Pause Payments</u>").

12.     Scratch is currently holding the Post-Pause Payments and has requested instruction from BlockFi on what to do with the funds. BlockFi believes it is both improper and inequitable for BlockFi to accept the Post-Pause Payments and therefore files this Motion requesting the Court to authorize BlockFi to exercise its business judgment and direct Scratch to return the Post-Pause Payments to the respective Retail Clients.

**<u>Basis for Relief Requested</u>**

13.     This Court should grant the requested relief based on sections 105, 363(b), 1107(a), and 1108 of the Bankruptcy Code, along with general principles of equity. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. As such, BlockFi has a fiduciary duty to manage its business and property prudently and with due regard for the interests of creditors and other stakeholders. Additionally, Section 363(b) of the Bankruptcy Code authorizes the debtor in possession to seek relief to use property of the estate outside of the ordinary course of business based on a reasonable exercise of the debtors' business judgment. 11 U.S.C. § 363(b). Further, Section 105(a) of the Bankruptcy Code authorizes this Court to issue any order or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *Id.* at § 105(a).

---

[4] This amount may be updated in advance of entry of the proposed Order to reflect any additional payments made to Scratch.

**A. It is a Sound Exercise of the Debtors' Business Judgment to Direct Scratch to Return the Post-Pause Payments**

14.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). To obtain approval under Section 363(b)(1) of the Bankruptcy Code to use estate property outside of the ordinary course of business, a debtor must show that, in the debtor's business judgment, the proposed use of estate property will benefit the estate, rather than just one or more of the parties to the transaction. *See, e.g.*, *In re Beth Israel Hosp. Ass'n of Passaic*, Case No. 06-16186 (NLW), 2007 WL 2049881, at *15 (Bankr. D.N.J. July 12, 2007) ("The requirement of notice and hearing and court approval for transactions that are out of the ordinary course of business . . . is an obvious safeguard imposed to insure that such transactions actually benefit the estate rather than just one or more of the parties to the transaction."); *In re Mallinckrodt PLC*, Case No. BR 20-12522-JTD, 2022 WL 906458, at *9 (D. Del. Mar. 28, 2022) ("Section[] 363(b) . . . permit[s] debtors (or trustees) to take actions for the benefit of the estate going forward based on their own business judgment.") (emphasis omitted); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153–54 (Bankr. D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions."); *Meyers v. Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification.") (citation omitted); *Ionosphere Clubs*, 100 B.R. at 675 (noting that the standard for determining a section 363(b) motion is "a good business reason"); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (S.D.N.Y. 2011) ("In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment.").

15.     The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the company. *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quotations and citations omitted); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code. *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 KJC, 2007 WL 7728109, at *92 (Bankr. D. Del. Aug. 15, 2007).

16.     The Debtors submit that directing Scratch to return the Post-Pause Payments reflects a reasonable exercise of their business judgment. The only alternative to Scratch returning the Post-Pause Payments to the respective Retail Clients is for Scratch to send these payments to BlockFi. Even if it were administratively possible for the Debtors to accept the Post-Pause Payments from Scratch and apply the funds to the applicable Retail Client Loans, this subset of Retail Clients would receive an unfair advantage over other Retail Clients while also being disadvantaged in comparison to similarly situated creditors. With respect to the unfair advantage, the BlockFi Retail Clients that honored the Debtors' instructions to cease making loan payments after the Platform Pause have not had the ability to reduce their loan obligations to BlockFi in the same way that applying the Post-Pause Payments would reduce the loan obligations for those Retail Clients that made such payments to Scratch if BlockFi directed Scratch to deliver the funds to BlockFi and BlockFi applied the funds to the loan balances.

17.     In contrast, it could also be a disadvantage to the Retail Loan Clients that made the Post-Pause Payments if Scratch delivers the Post-Pause Payments to BlockFi because the Post-Pause Payments would be subject to distribution to the broader group of BlockFi creditors through the claim reconciliation process in these Chapter 11 Cases. The Retail Clients that made the Post-Pause Payments would be essentially increasing the overall amount of BlockFi funds available for creditor distribution when it is possible that those Retail Clients will not receive a 100% distribution on their claim depending on the outcome of these Chapter 11 Cases. All Retail Clients should be on equal footing based on their respective loan positions with the Debtors as of the Petition Date, which is what this Motion seeks to accomplish.

**B.  It is Necessary and Appropriate for the Debtors to Direct Scratch to Return the Post-Pause Payments**

18.     Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). BlockFi believes its acceptance of the Post-Pause Payments would be inequitable and that the proper solution is for BlockFi to direct Scratch to return the Post-Pause Payments.

19.     Additionally, applying the Post-Pause Payments to the respective retail loan balances would create significant administrative problems in these Chapter 11 Cases. For example, reducing certain Retail Client Loans postpetition by applying the Post-Pause Payments to the loan balances would (i) invalidate BlockFi's schedules and statements, (ii) alter any potential setoff and/or recoupment rights of BlockFi or the Retail Client that existed as of the Petition Date, and (iii) add further complications to the claim reconciliation process, which is already expected to be complex given the volume of claims and the nature of the Debtors' business. The Retail Client

claims should be reconciled based on the amounts that existed as of the Petition Date and should be dealt with at the appropriate juncture in these Chapter 11 Cases.

20.     Because it would be improper and inequitable for Scratch to deliver the Post-Pause Payments to BlockFi, this Court should grant the requested relief and permit the Debtors to instruct Scratch to return the Post-Pause Payments to the respective Retail Clients.

## Reservation of Rights

21.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any transfer made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Waiver of Memorandum of Law

22.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**No Prior Request**

23.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

24.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the attorneys general in the states where the Debtors conduct their business operations; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**WHEREFORE**, the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

Respectfully Submitted,

Dated: February 24, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*