UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                    .    Case No. 22-19361-MBK
                          .
BLOCKFI INC., et al.,     .
                          .    402 East State Street
                          .    Trenton, NJ 08608
          Debtors.        .
                          .    March 13, 2023
. . . . . . . . . . . . ..      10:01 a.m.


TRANSCRIPT OF STATUS CONFERENCE HEARING
BEFORE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  CHRISTINE A. OKIKE, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022

                          Haynes and Boone, LLP
                          By:  RICHARD S. KANOWITZ, ESQ.
                          30 Rockefeller Plaza, 26th Floor
                          New York, NY 10112

                          Haynes and Boone, LLP
                          By:  JORDAN CHAVEZ, ESQ.
                          2323 Victory Avenue, Suite 700
                          Dallas, TX 75219



Audio Operator:           Kiya Martin


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

APPEARANCES (Cont'd):

For the Official          Brown Rudnick, LLP
Committee of Unsecured    By:  KENNETH AULET, ESQ.
Creditors:                     ROBERT J. STARK, ESQ.
                          7 Times Square
                          New York, NY 10036


For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  JEFFREY M. SPONDER, ESQ.
                               ANDREW R. VARA, ESQ.
                               LAUREN E. BIELSKIE, ESQ.
                          1 Newark Center
                          Newark, NJ 07102


TELEPHONIC APPEARANCES:

For the Ad Hoc            Troutman Pepper
Committee of Wallet       By:  DEBORAH KOVSKY-APAP, ESQ.
Account Holders:          875 Third Avenue
                          New York, NY 10022


- - -

1           THE COURT:  Let me get myself situated here.  Ready,

2  Wendy?

3           THE CLERK:  Yes.

4           THE COURT:  All right.  Okay.  Good morning,

5  everyone.  This is Judge Kaplan, and we will be starting our

6  hearings on BlockFi, et al.  And before I hear from debtor's

7  counsel let me just make note, I anticipate this morning to be

8  virtually all informational, no arguments are scheduled, but

9  it's an important opportunity to allow all parties to update

10  the Court and all parties in interest on where matters stand.

11  And in that regard I did want to express my appreciation to the

12  debtor and both the Official and Ad Hoc Committees on putting

13  together a joint correspondence to stakeholders trying their

14  best in these trying times to update the parties on where

15  matters stand to try to lessen the confusion that's out there.

16  And I think it was a great step in that direction.

17           Today those in court will unfortunately not have the

18  benefit of our technology of seeing who is on Zoom.  Our screen

19  is not working in that regard.  However, we do have Zoom

20  participants.  Oh, approximately 120 or so at the moment.  For

21  those who are on Zoom who want to be heard please just, as

22  always, use the raise hand function.  I can certainly see you

23  all.  And those in court will be able to hear you.  So, at this

24  juncture let me turn to debtor's counsel.  Ms. Okike?

25           MS. OKIKE:  Good morning, Your Honor.  Christine

1  Okike of Kirkland & Ellis on behalf of the debtors.

2         Your Honor, we wanted to provide just a brief update

3  on the debtors' cash and the current situation.  So, Your

4  Honor, there have been a lot of reports of BlockFi's potential

5  exposure to Silicon Valley Bank.  We have been all over this

6  situation, and the short answer is BlockFi is fine.  We have

7  access to cash to operate in the normal course, including

8  paying our employees and vendors, and we expect to have access

9  to $37 million of the $278 million at SVB later today.

10         Your Honor, the vast majority of the debtors' funds

11  at SVB, approximately $236 million, are invested in highly

12  rated money market funds.  Fifty percent is allocated to the

13  BlackRock Liquidity FedFund Admin, and 50 percent is allocated

14  to Morgan Stanley ILF Government Insel (phonetic), both of

15  which are invested in government securities with SVB acting as

16  agent on behalf of BlockFi.

17         Once we get access to those money market funds we

18  will work with the U.S. Trustee and the Committee to make sure

19  that we are in compliance with Section 345(b).  I know the U.S.

20  Trustee filed a motion on Friday, and we have every intention

21  of complying with our obligations with respect to 345(b).

22         We want to thank the U.S. Trustee and the committee,

23  who we have been in constant contact with, as the SVB situation

24  developed, and over the weekend, and who we have continued to

25  have productive conversations with leading up to this morning's

1    hearing.

2          So, Your Honor, the short answer again is we are

3    fine.  There is nothing to be worried about here.  And again,

4    we thank the committee and the U.S. Trustee for their

5    cooperation in this matter.

6          Once we have access to those funds and we determine

7    next steps in terms of the bank account and making sure that

8    we're protected, and it's in a safe place we will update the

9    Court, and I anticipate we'll have news on that, you know,

10   within a week or so.

11         THE COURT:  Thank you.  I appreciate that.  I'm sure

12   it's a significant sigh of relief to those who are listening

13   and who have an interest in the financial wherewithal of the

14   debtor, and are relieved to know that it's not as desperate as

15   it seems probably to a lot of people in the room Thursday

16   afternoon and Friday, and during the weekend, and I do

17   appreciate all counsel working together.

18         In that regard I know there's other matters on for

19   today, but I would like to give the U.S. Trustee an opportunity

20   if they wish to weigh in on where we stand again to either

21   supplement or to modify what's been placed on the record.

22         MR. SPONDER:  Good morning, Your Honor.  Thank you.

23   Jeff Sponder, together with Andy Vara, the United States

24   Trustee.

25         THE COURT:  Thank you.

1          MR. SPONDER:  And Lauren Bielskie, all on behalf of

2   Andy Vara, the United States Trustee.  Your Honor, at all

3   levels of the United States Trustee program we have been

4   engaged to ensure estate funds are available and protected.  We

5   do appreciate the cooperation of all counsel in these cases.

6   We have worked diligently with debtor and committee counsel

7   throughout this case, and especially this weekend, and will

8   continue to work with the debtors as they become 345 compliant

9   so that all estate funds will be protected.  Thank you, Your

10  Honor.

11         THE COURT:  Thank you.  Would it be best to keep a --

12  date going forward for these -- the compliance issues so that

13  we can have a follow up conference, or if need be, hearing?

14         MR. SPONDER:  Your Honor, Jeff Sponder again from the

15  U.S. Trustee.  I think that would be appropriate.  I know

16  counsel for the debtor has advised within a week, so I don't

17  know if we have a hearing scheduled?

18         UNIDENTIFIED ATTORNEY:  I think we have a hearing on

19  the 23rd.

20         THE COURT:  Let's see.  We do have -- we have you all

21  on for the 23rd.  So, why don't we just carry the U.S.

22  Trustee's motion to that date?  We can always adjust the

23  schedule from there if we need more time.  And obviously,

24  again, my thanks to the U.S. Trustee, who was able to put this

25  matter on, get papers filed on short notice on Friday, and we

1 were able to schedule the hearing.  If there is a need to do

2 that again the Court will make itself available, but otherwise

3 we'll carry the U.S. Trustee's motion to 3/23 with two other

4 matters that are on.  Then let me -- is there anyone else who

5 wants to be heard on the cash management issues before we move

6 on to other issues?  I see no one -- no hands raised.  So, let

7 me, again, go to debtor's counsel for the next matter.

8        MS. OKIKE:  Thank you, Your Honor.  Christine Okike

9 again on behalf of the debtors.  Your Honor, the next item on

10 the agenda is a status update on the Wallet withdrawal motion

11 which was filed at Docket Number 121.  So, last Wednesday, as

12 Your Honor noted, the debtors filed a joint letter among the

13 debtors, the committee and the Ad Hoc Committee of Wallet

14 Holders to provide an update to BlockFi's clients with respect

15 to BlockFi's request to return the digital assets in the Wallet

16 accounts as of the platform pause to their clients as soon as

17 possible.

18        The debtors understand that our clients want the

19 Wallet withdrawal motion resolved promptly, and so do we, and

20 we are actively working with the Committee, the Ad Hoc

21 Committee, and Deferred 1031 to achieve that goal.

22        Your Honor, when we filed the Wallet withdrawal

23 motion two things happened.  First, the committee advised the

24 debtors that it was supportive of returning some Wallet

25 holdings to clients, but only if BlockFi clients with those

1  Wallet holdings were not subject to potential avoidance claims

2  or clawbacks.  Determining which clients might be subject to

3  clawbacks is a very complex issue, and the debtors understand

4  that the committee's diligence with respect to that is ongoing.

5         Second, the members of the Ad Hoc Committee and

6  Deferred 1031, who are BlockFi clients who attempted to

7  transfer digital assets from their interest-bearing accounts,

8  or BIA's, to Wallet after the platform pause, which was 8:15

9  p.m. eastern on November 10th, 2022, contended that their

10 holdings should be treated the same as those clients who had

11 Wallet holdings in Wallet at the time of the platform pause.

12        Both the debtors and the committee dispute that

13 position, but the Ad Hoc Committee and Deferred 1031 have the

14 right to have their arguments heard before the Court.  The

15 debtors have provided the Ad Hoc Committee and Deferred 1031

16 with a substantial amount of information.  We responded to

17 about 60 questions that they had with respect to the platform

18 pause and actions that the debtors took to help resolve this

19 issue.  But the debtors understand that the Ad Hoc Committee

20 and Deferred 1031's diligence also continues.  There are no

21 open diligence requests from our perspective, and to the extent

22 that they do have additional diligence requests, we would ask

23 that they provide them promptly.

24        Your Honor, we have reserved time on the Court's

25 calendar on April 19th to resolve the issue of whether the

1     attempted transfers of the Ad Hoc Committee and Deferred 1031

2     after the platform pause should be treated as Wallet holdings

3     as of the platform pause.  We really view that as an initial

4     issue that should be decided before you even get to the

5     question of dealing with potential preferences for people who

6     are in Wallet.  So we expect to go forward on April 19th absent

7     a resolution or agreement between the parties before then, and

8     we are happy to continue to work with the Ad Hoc Group, as well

9     as Deferred 1031 to reach a consensual resolution.

10        THE COURT:  So I believe that's Docket Number 559,

11     the pause motion.  So that's going to be -- in essence that's

12     going out on the 19th to be argued unless there's a resolution?

13        MS. OKIKE:  Correct, Your Honor.

14        THE COURT:  Okay.  Great.

15        MS. OKIKE:  So we will submit a supplemental briefing

16     schedule to Your Honor.  We continue to have discussions with

17     the Committee, the Ad Hoc Group, as well as Deferred 1031 on

18     that schedule.

19        THE COURT:  All right.  Great.  Thank you.  Does the

20     committee wish to be heard?

21        MR. AULET:  Good morning, Your Honor.  Kenneth Aulet

22     of Brown Rudnick for the Committee.  Just to reiterate, the

23     Committee does view it as important to return these funds to

24     Wallet Holders as quickly as possible and as soon as it can be

25     determined by Your Honor, or hopefully by agreement who the

1    Wallet Holders are.  Ms. Okike mentioned the preference

2    diligence.  We fully expect that that will be done by April

3    19th, and the Committee has completed its diligence into all of

4    the factual issues surrounding the issues to be decided on the

5    19th.  And unless Your Honor has any other questions, thank you

6    for your time.

7            THE COURT:  No.  Thank you, Mr. Aulet.  Ms. Kovsky, I

8    see your hand raised?

9            MS. KOVSKY:  Thank you, Your Honor.  Deb Kovsky,

10   Troutman Pepper, for the Ad Hoc Committee.  I wanted to just

11   clarify a couple of things for the record.  (indiscernible)

12   referred to my client's transfers as attempted transfers,

13   obviously we dispute that characterization.  With respect to

14   diligence that remains ongoing, the debtors have answered some

15   but not all of the questions that were posed to them.  We

16   appreciate that information, but our diligence is ongoing, and

17   we are attempting to work out a schedule that enables the Ad

18   Hoc Committee and Deferred 1031s to take appropriate discovery

19   in order to be able to put all of the facts before Your Honor,

20   and though we have reserved time on April 19th, we do reserve

21   the right to seek an extension of that date should it be

22   necessary in order for us to complete our discovery.

23           THE COURT:  All right.  I hear you.  Obviously with

24   respect to outstanding discovery I will just ask that counsel

25   do their best to confer as quickly as possible so we can move

1    the process and not have a hold up over discovery issues.

2             All right.  I don't see --

3             MR. STARK:  Your Honor?

4             THE COURT:  Mr. Stark?

5             MR. STARK:  Thank you, Your Honor.  With Your Honor's

6    indulgence, I know that normally we handle each matter with one

7    lawyer, but I want to be constructive, and so --

8             THE COURT:  That's fine.

9             MR. STARK:  Thank you.  It's very important to the

10   Committee that issues move along quickly, and that this case

11   moves along quickly.  And this is an important issue, and I

12   make -- and I have absolute respect for the position Ms. Kovsky

13   is raising.  I just want to rise, put a stake in the ground for

14   maybe -- we'll come back to it at a different date, we want to

15   move this issue along.  So I know we got our diligence done

16   quickly.  She has a job to do, and I fully respect the job.  I

17   just -- if there are issues in terms of discovery, if there are

18   issues in terms of diligence let's learn about them now, let's

19   obviate them now so we can resolve this issue once and for all,

20   in due course, and due course being on the nearer side, not the

21   farther side.  So that's all I wanted to say, Your Honor.

22            THE COURT:  No.  I appreciate that.  And I was going

23   to follow up, I thank you, follow up I'd rather be -- that we

24   have quick calls to resolve discovery issues in the short term.

25   The Court will always make itself available for a call rather -

1  - and we don't need motion practice, we don't need letter

2  writing as much as just reach out and we can talk about these

3  issues.

4          MR. STARK:  Thank you, Your Honor.

5          THE COURT:  All right.  Thank you.  Thank you, Ms.

6  Kovsky.  All right.  I think -- Mr. Kanowitz?

7          MR. KANOWITZ:  Yes, Your Honor.

8          THE COURT:  We come to the emergent matter?

9          MR. KANOWITZ:  Yes, Your Honor.  May it please the

10 Court, Richard Kanowitz of Haynes and Boone, co-counsel to the

11 debtors and debtors-in-possession.  Your Honor, I just wanted

12 to give you a quick status of the emergent matters.  There were

13 a lot of things going on behind the scenes that I want you to

14 be apprized of so that if and when we get in front of Your

15 Honor you are not surprised.

16          So, as you see as you entered the order on Docket 61,

17 we extended the time for Marex to move her answer to 5/1.

18          THE COURT:  Right.

19          MR. KANOWITZ:  Likewise, on Docket Number 60 we

20 extended the pretrial conference date to April 19th.  I expect

21 that potentially to move again.

22          THE COURT:  That was one of the matters I was going

23 to raise.  It doesn't make much sense if we are extending the

24 answer until 5/1.

25          MR. KANOWITZ:  We were going to take it in chunks

1   because, you know, tomorrow is a trial in the emergent

2   bankruptcy case.  Let me get to that point.

3          THE COURT:  Sure.

4          MR. KANOWITZ:  So, you know, coming out of the

5   hearing on January 9th you directed us to file an amended

6   complaint, and we worked on that.  And the DOJ took interest in

7   that and asked us for a copy, and we sent it to them.  And that

8   took weeks of discussions with them, and coming out of their

9   review they said to us in no uncertain terms your amended

10  complaint interferes with the criminal prosecution of Sam

11  Bankman-Fried and other investigations and potential

12  prosecutions, and that you also, by virtue of some of the

13  issues raised in the adversary proceeding complaint interfere

14  with what they believe is the current civil and criminal

15  forfeiture proceedings.  We obviously looked at the law.  We

16  came to a conclusion, and the outcome of our discussions,

17  because it's not an agreement with the DOJ, but you have

18  discussions with the DOJ and they tell you what they think, and

19  you decide what to do next.

20         Well, what we decided to do was file the amended

21  complaint but then ask Your Honor to stay it.  Right?  And go

22  through those issues as to why it matters for us to file an

23  amended complaint and for us to stay it pending prosecution of

24  Sam Bankman-Fried, and the civil and criminal forfeiture

25  proceedings, which unfortunately will be many years down the

1  road, and occur in the Southern District of New York if in fact

2  we agree, and, you know, we looked at the law, that the

3  Southern District of New York really has jurisdiction over the

4  disputes, all of the disputes.

5          We never got to that point, to filing and seeking a

6  stay because Emergent filed for bankruptcy.

7          THE COURT:  Right.

8          MR. KANOWITZ:  So we have taken the next step to move

9  to dismiss the emergent bankruptcy case for a host of reasons.

10 They're public records.  I don't need to argue them here or

11 point them out.  Obviously we're raising two key issues, the

12 good faith of that filing by the JPLs in Antigua, as well as

13 the fact that the money has been -- and the assets have been

14 seized.  And if the government is right, and I believe they

15 are, then these disputes are not going to happen in any

16 bankruptcy court, but they are going to happen in the Southern

17 District of New York at some time in the future.

18         So, we are going tomorrow and we're going to have a

19 whole trial, witnesses, et cetera.  We'll see what Judge Dorsey

20 does.  In the meantime we are talking to the DOJ and Emergent,

21 and I believe FTX is also involved because they have tried to

22 intervene in our motion to dismiss, to see if maybe fiduciaries

23 can come to the table and actually figure out the right path to

24 not waste legal fees, estate resources, et cetera.

25         I'm hopeful we get there.  If not, well, we'll have

1    our trial tomorrow, and we will proceed accordingly.

2          The one thing that I want to put on the record that's

3    crystal clear, Your Honor was very, very clear that you believe

4    you have jurisdiction over the debtors' interest in the

5    guarantee and pledge agreement, and the shares to the extent

6    now you have it, or don't have it, by virtue of the seizure.

7    We are going to defend that jurisdiction, and we're going to

8    defend property of the estate no matter where it's litigated.

9    And I just wanted to leave that on the record, so that everyone

10   is clear that we are vigilant in protecting what we believe are

11   the victims of the FTX, Sam Bankman-Fried/Emergent fraud.

12          THE COURT:  Thank you, Mr. Kanowitz.

13          MR. KANOWITZ:  Thank you.

14          THE COURT:  I appreciate the update.  I don't see

15   anybody on Zoom looking to comment further.  I don't see any

16   raised hands.  Let me just ask, with respect to that pretrial

17   date, do you want to leave it on for now, or should I be moving

18   it into May?

19          MR. KANOWITZ:  We didn't have a May court hearing --

20          THE COURT:  Right.

21          MR. KANOWITZ:  -- to suggest that.  But once we do

22   establish it, yes, we should make an application, however you

23   want it on the record, like we did -- or in pleading like we

24   did last time to move it.  But, yes, it has to be moved pending

25   what happens in Emergent's own bankruptcy case.

1          THE COURT:  All right.  We're going to get to

2    scheduling.  I have some suggested dates.  And we'll talk about

3    it before the end of the hearing this morning.

4          MR. KANOWITZ:  Thank you, Your Honor.

5          THE COURT:  Thank you.

6          MR. KANOWITZ:  I'll cede podium to Ms. Chavez.

7          THE COURT:  Ms. Chavez, good morning.

8          MS. CHAVEZ:  Good morning, Your Honor.  Jordan Chavez

9    with Haynes and Boone, on behalf of the debtors.  Just two

10   procedural motions that are both uncontested that we wanted to

11   take up with Your Honor today.  The first one is the motion we

12   filed to extend the removal deadline at Docket Number 500,

13   which was followed by this Court's bridge order at Docket

14   Number 514.  In that motion we're asking for an extension of

15   the removal deadline to May 27th, 2023, and we received no

16   objections or informal comments to this motion or the proposed

17   order, so we would ask that Your Honor grant the motion and we

18   will get with local counsel to submit the proposed order to

19   chambers.

20          THE COURT:  That's fine.  I have gone through it.

21   There are no issues with it.  We'll mark it granted, and we'll

22   mark it order to be submitted.

23          MS. CHAVEZ:  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          MS. CHAVEZ:  The second motion is the motion for the

1  claims procedures that we filed at Docket Number 535, which is

2  designed to streamline the claims reconciliation and objection

3  process.  The proposed order that we filed with the motion

4  already incorporated the constructive comments that we received

5  from Committee counsel.  And then we received some informal

6  comments after filing the motion from Arch, which is one of the

7  debtors' insurers, and we filed a notice of revised proposed

8  order for that at Docket Number 586.  There were no additional

9  comments and no other objections received, and the only change

10 that we reflected in the revised proposed order was we had a

11 basis for an objection if the insurers were obligated to make

12 the payment rather than the debtors, and the insurer

13 understandably just wanted a clarification that that would only

14 be after a determination by this Court or another court of

15 competent jurisdiction.

16         So with that I would ask Your Honor to grant the

17 motion, and again, we will get with local counsel to submit the

18 proposed order to chambers.

19         THE COURT:  I only had one question, and I think it

20 all makes sense in how it's laid out.  Service of the omnibus

21 objections, and we're relaxing our local and the federal rule

22 as far as grouping and hundreds and the like.  But how is

23 service being undertaken on an individual claimant.  I thought

24 I saw -- we went through it, and it referenced both mail and e-

25 mail.  Can you be more specific as to how -- what's the

1 intention as far as service on the claimants?

2         MS. CHAVEZ:  Yes, Your Honor.  To the extent we have

3 both mail and e-mail information we are having Kroll serve them

4 via both methods of process, and so that would be the measure

5 we would take here, as well.  Given the interim redaction order

6 we are serving them directly and trying to keep all of their

7 personal information confidential while doing so.

8         THE COURT:  And I understood in reading through

9 you're also trying to make a point to the -- to the claimants

10 that they should, in their responses, respect the

11 confidentiality, as well.

12        MS. CHAVEZ:  Yes, Your Honor.

13        THE COURT:  And redaction.  It may be that

14 individuals need some assistance, and I think you included

15 contact information, as well, both at Kroll and at the firms,

16 correct?

17        MS. CHAVEZ:  Yes, Your Honor.  We included my direct

18 contact information, as well as one of my colleagues, Mr.

19 Zavala, so they can directly reach out to us if they have

20 questions or need assistance, and of course to hopefully

21 informally resolve the objections so we don't have to take up

22 court time.

23        THE COURT:  I'm just judging from some of the e-mail

24 that my chambers received from claimants, unfortunately the --

25 claimants tend to be more liberal or loose unintentionally with

1  their own personal identifiable information.  We end up sealing

2  and redacting their information we're not putting on the docket

3  to protect them, so it's a difficult issue, but I think the

4  notices are there to -- to admonish them to be careful on their

5  own end.

6          I don't have any other issues.  Anyone in court have

7  any issues on the objection, claims procedure motion?  I know

8  you have gone through it with all the parties.  I see no

9  questions, so it will be -- an order to be submitted?

10         MS. CHAVEZ:  Yes, Your Honor.  Thank you.

11         THE COURT:  All right.  Thank you.  All right.  That

12 goes through I think what we had on our agenda.  Let -- oh, Mr.

13 Stark?

14         MR. STARK:  If Your Honor will allow me --

15         THE COURT:  Yes.

16         MR. STARK:  -- I wanted to spend a minute on

17 something that Your Honor just touched upon which Your Honor

18 touched upon at the beginning of the hearing, as well, and I

19 wanted to do something, if Your Honor will allow me.

20         THE COURT:  Sure.

21         MR. STARK:  Your Honor mentioned the letter that the

22 debtors and the committee and others circulated to the

23 customers, and Your Honor made reference again to the customer

24 creditor outreaches to the Court, perhaps with chambers.  I'd

25 like to address that just for a moment if I can.

1          We as a committee acknowledge not only do we have a

2    statutory and fiduciary obligation to talk to customers and

3    creditors in the normal case, this is not the normal case.

4          THE COURT:  Right.

5          MR. STARK:  Customers and creditors here lost their

6    life savings, lost their wages, and they are worried, and we

7    get that.  We've been in existence, at least with

8    professionals, for under three months.  It seems like for the

9    people who lost their money that seems like an eternity, and we

10   are very sensitive to that, but for bankruptcy there's a lot

11   that has to go on in the initial stages of bankruptcy and

12   especially in a sensitive case, disables the kind of direct

13   communication that I know folks are really thirsting for and

14   need.

15         We set up a website, we have a Twitter feed, but we

16   acknowledge, and we have to acknowledge that a number of -- of

17   inbound calls and e-mails that I know Your Honor's chambers

18   have been receiving, we want to put a stop to that.  We want to

19   help the community more.  The first thing I can do right now is

20   on the record to those who are listening in, my name is Robert

21   Stark.  I work at a firm, Brown Rudnick.  My e-mail is

22   Rstark@brownrudnick.com.  My telephone number is 212-209-4862.

23   Any customer or creditor who is listening in who wants to find

24   out information about this case please call or e-mail me, and

25   we will respond within 48 hours.  It is not the Court's job to

1  respond, it is mine, and we will do that.

2       The second thing that I can do for Your Honor and for

3  all those who are listening, the committee understands and has

4  spent an awful lot of time in the last two weeks specifically

5  to come forward with a program for reaching out to the

6  customers and consumers.  There are a whole host of different

7  ways that we can try to do it, from town hall meetings to

8  Reddit Q&A's, to inbounds and outflows.  We have to be

9  thoughtful and we have to be disciplined.  There's an awful lot

10 going on, and again, it's a very sensitive case.  We have our

11 own confidentiality issues and fiduciary issues.  But we know

12 that there's more that we can be doing, and so we are right

13 about to launch.  But for the issues of last week it probably

14 would have happened last week.

15       THE COURT:  Right.

16       MR. STARK:  We are about to launch a program where we

17 are going to be much more communicative with the community

18 outside, and they will have much easier access to us.  They

19 will know our names.  They will know that we are standing by.

20 They will have information, much more information, but it won't

21 be sensitive information that we believe might inhibit our

22 ability to resolve this case quickly, but they will have

23 greater understanding and less confusion.  And so that's about

24 to get launched right now.  I just want Your Honor and everyone

25 listening to know that.

1            THE COURT:  That's great.  I appreciate that, Mr.

2    Stark.  I know my law clerks appreciate it.

3            MR. STARK:  You've been dealing with a lot.  I

4    apologize.

5            THE COURT:  Reducing the burdens on the Court.  But

6    -- because we would just defer it to you all, and send the

7    names along.  I think -- I look forward to the enhanced

8    communication, and I think it will be worthwhile.  I appreciate

9    it.  Thank you.

10            Let's talk about some calendar events.

11            MR. KANOWITZ:  Your Honor?

12            THE COURT:  Yes?

13            MR. KANOWITZ:  Just one item to tag along.

14            THE COURT:  Sure.

15            MR. KANOWITZ:  And we appreciate, you know, the

16    Committee, and especially Mr. Stark taking the laboring oar on

17    communicating with his constituency, but just so you know, we

18    get daily inbounds both at Haynes and Boone and Kirkland &

19    Ellis, and we respond by e-mail and we have a team working to

20    get those creditors information about the Kroll website, the

21    process for filing proofs of claim.  So the debtors' estate

22    recognizes that this is a -- I would say a choppy process, but

23    one that needs to have all resources devoted so it's

24    transparent and people have confidence that this case is moving

25    forward and one day, you know, they will be taken care of as

1 best we can.

2          THE COURT:  No.  I appreciate that.  I appreciate the

3 debtors' efforts.  It -- I'd just remark the Chapter 11 process

4 -- practice has certainly changed in a decade.  The ability

5 through the use of these claims agents, the websites, the --

6 what we -- what I can't help but see and hear on You Tube and

7 Twitter, it changes the landscape, and I think for the better

8 in transparency, even the ability to make our hearings

9 available on Zoom.  So -- and I thank the professionals for

10 their work.  I know it's difficult given that these are

11 personal -- this impacts the lives of many.  Thank you.

12          MR. KANOWITZ:  You're welcome.  And on behalf of the

13 estate and all the professionals we do appreciate chambers

14 dealing with these issues, and we're happy to be as responsible

15 as you want us to be in connection with inbounds to the Court.

16          THE COURT:  Great.  All right.  Thank you.  Thank you

17 again.  So, let me go through what I have coming up, and you

18 can all correct me where we have missed something.  Our next

19 date is March 23rd.  We have two matters that had been

20 scheduled, the sale motion and the extension of time to assume

21 or reject.  I think that's 571 and 572.  Those are still

22 scheduled for March 23rd.  We have added the carry trustee 345

23 motion.  The next date after that is April 19th, in which we

24 have what I call the pause motion, as well as the pause motion,

25 as well as the first -- that's Number 559.  And the first

1  omnibus claims objection motion that was filed, that's 573.

2  Did I miss --

3        MR. KANOWITZ:  And then there's another motion, Your

4  Honor, where we are seeking to return the ACH payments that are

5  held by Scratch to customers in California.

6        THE COURT:  Correct.

7        MR. KANOWITZ:  Oh.  And then it's anticipated that

8  that date will also be a motion for exclusivity, to extend the

9  debtor's exclusivity.

10        THE COURT:  All right.  So, a motion --

11        MR. KANOWITZ:  Will be filed in due course.

12        THE COURT:  -- for exclusivity -- those are all

13  intended for 4/19?

14        MR. KANOWITZ:  Correct.

15        THE COURT:  We have a date that I converted to an

16  omnibus date.  It was the date for the initial disclosure

17  statement, and -- disclosure statement hearing.  That's May

18  8th.  No.  We need May dates.  I just turned that May 8th date

19  into an omnibus date, so that's available for parties.  And we

20  have to place -- we have what I'll call the redaction motions,

21  including the confidential party -- it's -- early on, number

22  four on the docket, as well as I believe 127, confidential

23  party status, and also I think redaction relative to Kroll,

24  Number 443.  Those three redaction motions, sealing motions, we

25  need to put on a date.  So, we have now through -- we have

25

1   4/19.  We have through 5/8.  And I can make two other dates

2   available in May.  Do you have a preference?

3           MR. KANOWITZ:  I think May 8th is fine.

4           THE COURT:  Then we'll carry those.

5           MR. KANOWITZ:  Yeah.  I can give you a status update

6   as to the counterparty sealing as well as the PIA redaction.

7           THE COURT:  Yes.

8           MR. KANOWITZ:  Mr. Sponder?  Oh.  There you are.

9           THE COURT:  There he is.

10          MR. KANOWITZ:  Sneaking up on me.  So, the PIA

11  redaction motion obviously a huge concern for not only the

12  debtors but the committee, as well as the Ad Hoc Group, who

13  have filed joinders.  We'll try to have a discussion with the

14  U.S. Trustee to see if we can resolve it.  If not we are going

15  to have to have a hearing.  As to the counterparty redaction

16  motion, what we agreed to with the U.S. Trustee for the

17  adjournment is we'll take it in chunks, meaning once we have

18  completed a sale and the counterparty disclosure is not any

19  more prejudicial to the estate and the process, we will file

20  supplemental retention, you know, declarations and all those

21  things to make those disclosures.

22          The issue becomes, though, and a lot of professionals

23  who are going to file supplemental papers, so we've got to work

24  out a process so that we don't have 20 filings for every minor

25  transaction.

1          THE COURT:  All right.

2          MR. KANOWITZ:  So we've got to figure that one out,

3 but that's our goal.  It is on a rolling basis to actually make

4 those disclosures when they are not prejudicial to the estate

5 of the counterparties who are no longer vying for estate assets

6 in one way or another.

7          THE COURT:  All right.

8          MR. KANOWITZ:  So I think carrying it to the 8th is

9 important.  That particular counterparty sealing motion may get

10 kicked again based on what's happening.  And if we don't come

11 to an agreement on the PIA redaction motion in whole or part we

12 are probably going to have to have a hearing on that.

13          THE COURT:  Fair enough.

14          MR. KANOWITZ:  With witnesses.

15          THE COURT:  Then Docket Number -- the matters

16 reflected by Docket Numbers 4, 127 and 443 will be carried to

17 5/8 at ten o'clock.  And then as far as other May dates I have

18 -- it doesn't make sense to have one a week later, 5/15.  I

19 have 5/15 and 5/29 available.

20          MR. KANOWITZ:  I think we should hold the 5/29, just

21 in case --

22          UNIDENTIFIED ATTORNEY:  That's Memorial Day?

23          THE COURT:  Reserve it, because, you know, if I get

24 booked --

25          MR. KANOWITZ:  Yes.

1            THE COURT:  -- you know, future filings --

2            MR. KANOWITZ:  It's Memorial Day.  Your Honor, it's

3   Memorial Day.

4            THE COURT:  Memorial Day?  And that's a problem?

5            MR. KANOWITZ:  Well, hopefully I'll be on a golf

6   course somewhere, but yes.

7            THE COURT:  Then -- let's see.  Well, we can do 5/22

8   in the afternoon, or then the next Monday is 6/5, June 5th.

9   I'm trying to spread it out.

10            MR. KANOWITZ:  Why don't we do 6/5, if we need to

11   come back to court.  You know, some of these hearings may very

12   well be Zoom --

13            THE COURT:  Right.

14            MR. KANOWITZ:  -- as opposed to being in person.

15   While we like being in person, to the extent we need relief we

16   can always set something up.

17            THE COURT:  That's fine.  And to the extent that

18   emergent matters may arise, we'll schedule it either on my

19   motion day, normal motion day, or as needed.

20            MR. KANOWITZ:  Yes.  So, just to bring something to

21   the Court's attention on the record, two class action

22   complaints were filed, some of which have been served.  The

23   debtor intends on filing today an adversary proceeding

24   complaint seeking to stay those pending confirmation in the

25   usual course, you know, under 105, 362, and for all the

1  arguments that have been made before we get to our complaint

2  filed, and that others have made.  You know, we are going to

3  reach out to the plaintiff firms who started the class action

4  lawsuits.  There are two, one in Jersey in the district court,

5  and one in Massachusetts, and we are going to see if they will

6  voluntarily stay these proceedings, whether we do it in chunks

7  or whether we do it wholesale.  You know, we'll discuss it with

8  them.  But if they do not agree to avoid prejudice to the

9  estate in any defaults or admissions which we believe is

10  prejudicial we will come before Your Honor seeking a TRO in the

11  first instance, so that might be later on this week, depending

12  on how our discussions go.  And we just wanted to alert Your

13  Honor because we may be making that request, and then Your

14  Honor can direct whether that be in person or by Zoom.

15       THE COURT:  All right.  Great.  Then we will see if

16  there's a need, and then we'll decide how to go about as far as

17  the hearing, I would anticipate Zoom would make the most sense.

18       MR. KANOWITZ:  That would be fine with us, Your

19  Honor.

20       THE COURT:  So, are there any other matters that

21  anyone wishes to raise?  Mr. Sponder?

22       MR. SPONDER:  Thank you, Your Honor.  I just wanted

23  to piggyback off of Mr. Stark's comments to customers, and just

24  set forth on the record also that if customers do receive

25  correspondence requesting their personal information that they

1    should reach out to the United States Trustee's Office.

2            THE COURT:  Great.  Thank you.  I appreciate that, as

3    well.  A quick question on the sale motion.  Can we give a

4    short update?  Are we going forward with the motion?  I don't

5    know what transpired with the transaction.

6            MS. OKIKE:  Yes, Your Honor.  We do anticipate going

7    forward with the motion.  And to my knowledge it will not be

8    contested, but I don't believe the objection deadline has run.

9            THE COURT:  Okay.  All right.  Then we're good.  I

10   appreciate everybody's efforts.  And reach out for chambers as

11   the need arises.  Otherwise, be safe.  Take care.

12           MR. KANOWITZ:  Thank you, Your Honor

13           MS. OKIKE:  Thank you, Your Honor

14           UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

15           THE COURT:  And we're done.  Goodbye.  Okay.  Great.

16   Thank you.  Thank you all.

17           MS. OKIKE:  Thank you.

18                        *  *  *  *  *

19

20

21

22

23

24

25

# **C E R T I F I C A T I O N**

I, TAMMY DeRISI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Tammy DeRisi
_____

TAMMY DeRISI

J&J COURT TRANSCRIBERS, INC.          DATE:  March 14, 2023