**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

# DECLARATION OF
# MICHAEL DIYANNI IN SUPPORT OF THE DEBTORS' MOTION
# FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF CERTAIN OF
# THE DEBTORS' SELF-MINING ASSETS FREE AND CLEAR OF ALL CLAIMS,
# LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE
# DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER
# THE ASSET PURCHASE AGREEMENT, AND (III) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1. I, Michael DiYanni, hereby declare under penalty of perjury:

2. I am a Managing Director and Head of Risk Advisory Group at Moelis & Company LLC ("**Moelis**"), the investment banker, capital markets advisor, and financial advisor to the above-captioned debtors and debtors-in-possession (the "**Debtors**") in the above-captioned Chapter 11 Cases, which has its principal office at 399 Park Avenue, 4th Floor, New York, New York 10022.

3. I submit this declaration (this "**Declaration**") in support of the relief requested in the *Debtors' Motion for Entry of an Order (I) Approving the Sale of Certain of the Debtors' Self-Mining Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, and (III) Granting Related Relief* [Docket No. 571] (the "**Sale Motion**").[2]

4. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the facts described herein, (b) information I have received from the Debtors' employees or advisors and/or employees of Moelis working directly with me or under my supervision, direction, or control; or (c) from the Debtors' records maintained in the ordinary course of their business. I am not being specifically compensated for this testimony other than through payments that are to be received by Moelis as a professional retained by the Debtors as set forth in the *Order Authorizing Employment and Retention of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date* [Docket No. 526].

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Sale Motion.

**Qualifications**

5. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 1,100 employees based in offices in North America, South America, Europe, the Middle East, and Asia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

6. Moelis provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Voyager Digit. Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 26, 2022); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re The Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. July 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020); *In re The McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D.

Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 1, 2019); *In re Aegerion Pharms., Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Joerns WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re FTD Cos.*, No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re Parker Drilling Company, Inc.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 31, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); *In re Global A&T Electronics Ltd.*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Toys "R" US, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017); *In re TK Holdings, Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017); *In re Basic Energy Servs., Inc.*, No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016); *In re UCI Int'l, LLC*, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016); *In re AOG Ent., Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re SFX Ent., Inc.*, No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016); *In re Am. Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014); *In re GSE Envt'l, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014).

7. I have over twenty years of investment banking and trading experience, including work advising companies, equity investors, financial vehicles, and creditors across a broad range of industries and geographies in a broad range of transactions. Since joining Moelis, I have been

involved in the execution of numerous market-leading structured credit transactions and advisor assignments. Prior to joining Moelis, I was an Executive Director at J.P. Morgan in the Fixed Income Group, where I led the North American Franchise Structuring Group and the Credit Hybrids Pricing and Execution Group. Prior to J.P. Morgan, I was a Director in the Fixed Income Group at Citigroup on the Credit Derivatives Trading Desk in New York and London. I hold a Bachelor of Arts degree in Economics from Yale University and a Master of Science in Finance and Economics from the London School of Economics.

8. I have been involved in several notable chapter 11 cases and restructuring assignments, including as advisor to the debtors in Voyager Digital's ~$1.9 billion restructuring; as advisor to the debtors in Genesis Global Trading's ~$5.1 billion restructuring; as advisor to the debtors in Hertz Global Holding's ~$7.0 billion restructuring; and as advisor to the financier in Obra Capital's ~$600 million replacement DIP financing and exit facility in GWG's chapter 11 restructuring. I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including, as advisor to secured financing counterparties in MFA Financial's ~$5.8 billion restructuring of its repurchase agreement portfolio; as advisor to the debtors in Ambac Financial Group's ~$5.0 billion restructuring; as advisor to secured financing counterparties in AG Mortgage Investment Trusts' ~$3.0 billion restructuring of its repurchase agreement portfolio; as advisor to Citigroup in its ~$1.7 billion settlement with Lehman Brothers; and as advisor to the Pan-Canadian Investors Committee for Third-Party Structured ABCP noteholders in their ~$30 billion restructuring and CCAA plan implementation.

## Background

9. Prior to the Petition Date, the Debtors engaged Moelis to conduct a marketing and sale process to solicit proposals for each of the Debtors' assets, including a material portion of the

Debtors' physical self-mining equipment and operations related to their digital coin mining segment (the "**Self-Mining Assets**"). To that end, the Debtors and Moelis developed a list of over 140 parties they believed might be interested in consummating a sale transaction for the Debtors' digital coin mining business, including strategic parties, private equity firms, other companies in the cryptocurrency ecosystem, scaled fintech companies, and traditional financial institutions. As part of that process, the Debtors executed over seventy confidentiality agreements with prospective bidders. These prospective bidders were granted access to a virtual data room populated with diligence materials to facilitate their evaluation and assessment of the various assets being marketed, including the Self-Mining Assets. As the Debtors' marketing process progressed, the Debtors determined that the assets should be divided into distinct categories to achieve the highest value available under the circumstances—namely, the Debtors' hosting joint venture, mining equipment loans, and the Self-Mining Assets.

10. With respect to the Self-Mining Assets available for purchase at the February 28 Auction, the Debtors' marketing process ultimately produced five binding bids for all of the Self-Mining Assets. In addition, there were seven parties that submitted bids for various subsets of the Self-Mining Assets. These subsets included machines located in the U.S. (divided into the Blockstream Self-Mining Assets (the "**Blockstream Self-Mining Assets**") and the Gilley Self-Mining Assets (the "**Gilley Self-Mining Assets**", together the "**U.S. Self-Mining Assets**") and machines located in Norway (the "**Norway Self-Mining Assets**"). Throughout the process, the Debtors and their advisors, together with the advisors representing the Unsecured Creditors Committee (the "**Committee**"), engaged with potential bidders to maintain interest, respond to diligence requests, and increase competitive tension to realize the highest value available under the circumstances for the Self-Mining Assets. Specifically, my team and the Debtors endeavored

6

to supplement the virtual data room and answer questions that the bidders had about the Self-Mining Assets and/or the sale process as a whole.

11. The Debtors, in consultation with their advisors and the Committee's advisors, thoroughly examined each bid and eventually determined that the sale to U.S. Farms & Mining (the "**Successful Bidder**") would achieve the highest value available under the circumstances for the estates, their clients, and other stakeholders. Notably, only the Successful Bidder contemplated becoming the sole purchaser all of the Self-Mining Assets at once—each of the other bids for the Self-Mining Assets were parties who sought to purchase some combination of the Norway Self-Mining Assets and/or U.S. Self-Mining Assets, requiring the Debtors to assemble multiple bids to sell all of the Self-Mining Assets. The Debtors and their advisors weighed multiple factors in determining that a transaction with the Successful Bidder represents the highest value available under the circumstances, including, most prominently, the amount and timing of consideration and the timeframe required to consummate the sale and full transfer of the Self-Mining Assets.

12. In the weeks leading up to the Auction, the Debtors and their advisors worked tirelessly in an effort to consummate the Sale, including weighing the costs and benefits of proceeding to the Auction with or without a Stalking Horse Bidder. To that end, the Debtors and their advisors held several rounds of meetings with bidders and the Committee's advisors. Parties exchanged numerous proposals and document markups and engaged extensively on the material terms of a Sale transaction. Ultimately, the Debtors decided, in consultation with the Committee, that, given the quantum of consideration in the bids received, and based on the timing and notice needed to appoint a Stalking Horse Bidder, that the best path forward under the circumstances for the Self-Mining Assets was to proceed to the Auction without a Stalking Horse Bidder. Nonetheless, the Auction generated substantial interest in the Self-Mining Assets. Due in no small

part to the extensive engagement over the past several months, following the Auction, the Debtors reached an agreement and executed the APA with the Successful Bidder.

**I.        The Proposed Sale Offers the Debtors the Highest Possible Value Available Under the Circumstances for the Self-Mining Assets.**

13.    As set forth in the Sale Motion, the APA contemplates that BlockFi will convey the Self-Mining Assets to the Successful Bidder in exchange for $4,675,000 (collectively, the "**Purchase Price**"). Given the volatility in the digital asset market and the accelerated timeline on which the APA was negotiated, I believe the APA represents the highest value available under the current circumstances.

14.    The Successful Bidder presented the most advantageous terms, taking into account headline price as well as other terms, including but not limited to, contractual APA items such as a ten percent holdback on the Norway Self-Mining Assets, a twenty percent holdback on the U.S. Self-Mining Assets, and a forty-five day inspection period after the Closing Date. These APA terms were more competitive than other bids for either individual categories or a combination of U.S. Self-Mining Assets and Norway Self-Mining Assets, and were determined by the Debtors, in consultation with their advisors and the Committee's advisors, to represent the highest value available under the circumstances.

15.    Further, the Successful Bidder is a well-capitalized counterparty who provided evidence of funds. The Purchase Price will be paid in cash, with no contingency financing required. The Successful Bidder is operated by parties with experience in the cryptocurrency mining industry. Consistent with the Bidding Procedures Order, the Successful Bidder provided a ten percent deposit and expects the Closing Date to occur promptly after approval of the Sale Order.

16. Accordingly, I believe that approval of the Motion, permitting the Debtors to enter into the APA and related documents and agreements with the Successful Bidder will realize the highest value available under the circumstances for the Self-Mining Assets, to the benefit of the Debtors' estates.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

| | |
|---|---|
| Dated: March 17, 2023<br>New York, New York | */s/ Michael DiYanni*<br>Name: Michael DiYanni<br>Title: Managing Director<br>Moelis & Company LLC |