**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) EXTENDING THE DEBTORS'
EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (the "Motion"):

## Introduction

1. Despite having very little runway before filing these cases, the Debtors managed to transition into chapter 11 and, in the time since the Petition Date, have made substantial progress in these chapter 11 cases in stabilizing the Debtors' operations and running a marketing and sale process for the Debtors' assets. The Debtors' efforts allowed for operations to safely continue uninterrupted, and allowed for clients' assets held on the Debtors' platform to remain secure, which ultimately preserved the value of the estates. In the approximately four months since the Petition Date, the Debtors have also worked towards negotiating the terms of a sale or standalone transaction that will maximize value for all parties, and have taken steps to test the market for each of their assets and engaged with the Committee and all stakeholders in an effort to build consensus surrounding a path forward.

2. The Debtors have accomplished a great deal during their brief time in chapter 11. Specifically, the Debtors have:

- obtained important procedural and operational relief in the form of "first day" and "second day" relief, stabilizing the Debtors' business and their relationships with their stakeholders following the commencement of these chapter 11 cases;

- contemporaneously commenced parallel liquidation proceedings in Bermuda, and coordinated with the joint provisional liquidators appointed in those proceedings to ensure efficient administration of BlockFi International Ltd.'s chapter 11 and Bermuda cases;

- prepared and submitted the Debtors' extensive schedules of assets and liabilities and statements of financial affairs;

- filed a *Joint Plan of Reorganization of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 22] (as may be supplemented or amended from time to time, the "Plan");[2]

- obtained Court approval of the Debtors' employee retention programs (the "Retention Programs") on a fully consensual basis after resolving objections from the Committee and U.S. Trustee, which authorized the Debtors to make retention payments to certain non-insider employees to preserve the value of the Debtors' estates;

- negotiated and consensually resolved the Committee's objection to the retention of Moelis & Company LLC as the Debtors' investment banker, financial advisor, and capital markets advisor;

- negotiated the consensual resolution of, and obtained Court authority for, bidding procedures and a timeline for interested parties to submit bids for an acquisition of the Debtors' assets;

- initiated a marketing process for each of Debtors' major asset packages, including their self-mining assets and customer platform;

- engaged in negotiations with multiple potential transaction parties, including providing diligence and entering into confidentiality agreements with over one hundred potential counterparties;

- conducted a competitive auction for the Debtors' self-mining assets, resulting in a sale price of $4.675 million;

- performed regular analysis of dozens of cryptocurrency coin values and price movements in connection with evaluating available transaction options and value-maximizing alternatives, and analysis surrounding the development of a corresponding platform infrastructure for efficient distribution to clients;

- conducted an investigation into estate claims and causes of action;

- conducted a comprehensive analysis of intercompany claims between Debtor entities;

- filed a motion to allow for the assets held in the Wallet platform to be returned to clients, and negotiated extensively with the Committee and other objecting parties surrounding the process for doing so;

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 17] (the "First Day Declaration"), as applicable.

3

- filed a motion to allow for the assets held by Scratch Services, LLC to be returned to clients;

- defended the Debtors' estates against multiple attempts to lift the automatic stay, including the motion filed by George J. Gerro seeking to lift the stay and continue his litigation against the estates for release of his cryptocurrency [Docket Nos. 173, 195, 204, 205, and 238];

- commenced an adversary proceeding against Emergent Fidelity Technologies, Ltd. ("Emergent") to recover the Debtors' shares of Robinhood, Inc.;

- advocated for the Debtors' interests in the FTX chapter 11 cases[3], including negotiating for the entry of a standstill stipulation with the FTX/Emergent debtors regarding competing claims over ownership interest in shares of Robinhood, Inc. and related collateral and the governmental seizure of those shares and collateral;

- engaged Antiguan counsel to protect the Debtors' legal rights, claims, and interests in the Emergent wind up proceeding;

- negotiated with multiple governmental agencies, including the Department of Justice and state authorities, on the Debtors' regulatory requirements for continued operations, including the government's seizure warrants and licensing requirements;

- filed motions and appeared in the Core Scientific, Inc., chapter 11 cases[4] on the Debtors' behalf, including making motions to preserve the Debtors' liens and security interests;

- obtained Court approval to negotiate and enter into loan restructuring and settlement agreements [Docket No. 299] and negotiated and entered into several such agreements;

- filed a motion to protect the redaction of individuals' personally identifiable information from public filings and engaged in discussions with the U.S. Trustee about the scope of redaction [Docket No. 232];

- obtained Court approval to establish procedures and deadlines for filing Proofs of Claim [Docket No. 440] (the "Bar Date Order") and corresponded with numerous creditors regarding the proof of claim process;

---

[3] *In re FTX Trading Ltd., et al.*, Case No. 22-11068 (Bankr. D. Del 2022) (JTD).
[4] *In re Core Scientific, Inc., et al.*, Case No. 22-90341 (Bankr. S.D. Tex. 2022) (DRJ).

- obtained Court approval to establish omnibus claims objection procedures [Docket No. 535];

- filed a motion seeking entry of an order extending the deadline to remove certain litigation and ongoing causes of action to federal court;

- commenced an adversary proceeding to stay two class action litigations against certain of the Debtors' directors, officers, and former employees [Docket No. 608];

- expeditiously worked to find solutions in the face of a series of unforeseen bank failures, including those of Silicon Valley Bank, Silvergate, and Signature, and are continuing to actively work to establish a cash management system to protect estate value in the face of this uncertainty;

- maintained extensive communication with the Debtors' large client base;

- complied with all reporting requirements, including filing monthly operating reports and responding to U.S. Trustee inquiries;

- maintained weekly telephonic meetings with key parties in interest and their respective advisors; and

- engaged meaningfully with the Committee and its advisors on a regular basis, including providing extensive diligence, holding numerous telephonic and in-person meetings, and producing hundreds of thousands of pages of data, information, and documents and making witnesses available for deposition in connection with the Committee's Bankruptcy Rule 2004 investigation.

3. Despite this meaningful progress, given the size and complexity of these chapter 11 cases, much work remains. As such, the Debtors request an extension of the Debtors' exclusive right to file a chapter 11 plan by 90 days through and including June 26, 2023 (the "<u>Filing Exclusivity Period</u>"), and to solicit votes thereon by 90 days[5] through and including August 28, 2023 (the "<u>Soliciting Exclusivity Period</u>," and together with the Filing Exclusivity Period, the "<u>Exclusivity Periods</u>") to ensure that the Debtors have necessary runway to effectuate one or more transactions to maximize creditor recoveries with minimal disruption.

---

[5] For the avoidance of doubt, section 1121 of the Bankruptcy Code provides for a 60-day extension of the exclusivity period for purposes of solicitation. The Debtors request a 90-day extension of the already extended deadline.

5

4. The Debtors' progress to date has been achieved in no small part due to the breathing room provided by chapter 11. The Debtors believe that maintaining their exclusive right to file and solicit votes on a plan is critical to their ability to complete a value-maximizing process and achieve their remaining restructuring goals. Accordingly, the Debtors request the extension of the Exclusivity Periods as described herein to allow the Debtors to continue the Plan confirmation process without the costly disruption that would occur if competing plans were to be proposed.

### Relief Requested

5. The Debtors seek entry of orders, substantially in the form attached hereto as **Exhibit A** (the "Order") and **Exhibit B** (the "Bridge Order"): (a) extending (i) the Debtors' Filing Exclusivity Period by 90 days through and including June 26, 2023, and (ii) the Debtors' Soliciting Exclusivity Period by 90 days through and including August 28, 2023, without prejudice to the Debtors' right to seek further extensions to the Exclusivity Periods; and (b) granting related relief.

### Jurisdiction and Venue

6. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested herein are section 1121 of title 11 of the United States Code (the "Bankruptcy Code"), rule 9006 of the Federal Rules of Bankruptcy Procedure

6

(the "Bankruptcy Rules"), and rule 9013 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

9. On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

10. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

## Basis for Relief

11. A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional sixty days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Burns and Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005). In these chapter 11 cases, the Exclusivity Periods set forth in sections 1121(b) and 1121(c) of the Bankruptcy Code will

7

expire on March 28, 2023, and May 30, 2023,[6] respectively, absent further order of the Court. The Debtors seek an extension of the Exclusivity Periods to continue working toward their goal of confirming a value-maximizing chapter 11 plan.

12. Section 1121(d)(1) permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here. Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." Although the term "cause" is not defined by the Bankruptcy Code, such term should be viewed flexibly in this context "to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[Section] 1121(d) provides a 'for cause' standard in determining exclusivity extension requests. As might be inferred from such a general standard, the legislative intent has been construed to leave the question to the reorganization court in the exercise of its discretion and to promote maximum flexibility . . . ."). Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

13. Courts within the Third Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should

---

[6] Although 180 days from November 28, 2022 is May 27, 2023, Bankruptcy Rule 9006(a)(1)(C) provides the last day of a period stated in days continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See* Fed. R. Bankr. P. 9006(a)(1)(C). Therefore, the current Soliciting Exclusivity Period will expire on May 30, 2023, absent further order of the Court.

8

be based on the totality of circumstances in each case. *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. *See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65 (identifying the below factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same). These factors include the following:

(a) the size and complexity of the case;

(b) the existence of good faith progress toward reorganization;

(c) the necessity of sufficient time to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

(d) whether the debtor is paying its debts as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress negotiating with creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension to pressure creditors; and

(i) whether an unresolved contingency exists.

14. Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *In re Express One Int'l Inc.*, 194 B.R. 98, 100

(Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Texaco, Inc.*, 76 B.R. at 327 (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity). For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231–232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."). *See also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

15. The Debtors submit that sufficient "cause" exists pursuant to section 1121(d) of the Bankruptcy Code to extend the Exclusivity Periods as provided herein. Each of the relevant factors weighs in favor of an extension of the Exclusivity Periods, as follows:

- *The Debtors' Chapter 11 Cases Are Large and Complex.* These chapter 11 cases involve nine Debtor entities who operate a cryptocurrency trading platform in the complex and evolving cryptocurrency industry. The Debtors provide trading services for numerous unique digital assets and, as of the Petition Date, had approximately 700,000 clients with funded accounts. Further, the Debtors have numerous active constituents, including the Committee, clients, various contractual and litigation counterparties, creditors, shareholders and other parties in interest, and state and federal governmental units.

- *The Debtors Have Made Good Faith Progress Toward Exiting Chapter 11.* The Debtors have already satisfied several key milestones in these chapter 11 cases, including filing a chapter 11 plan, gaining approval for their Bidding Procedures, and initiating the Asset Sales.

10

- *An Extension of the Exclusivity Periods Will Not Prejudice Creditors.* Continued exclusivity will permit the Debtors to maintain flexibility so competing plans do not derail the Debtors' process. Being required to dual-track negotiations across multiple plans could give rise to uncertainty to the detriment of all stakeholders and could cause substantial delay in returning value to the Debtors' creditors. Moreover, throughout these chapter 11 cases, the Debtors have had ongoing and transparent communications with their major creditor groups, the Committee, and the U.S. Trustee, and continue to meet their postpetition obligations in the ordinary course. Ultimately, extending the Exclusivity Periods will benefit the Debtors' estates, their creditors, and all other key parties in interest.

- *The Debtors Are Paying Their Bills as They Come Due.* Since the Petition Date, the Debtors have paid their vendors in the ordinary course of business or as otherwise provided by orders of the Court. The Debtors continued to pay their bills even when faced with an unprecedented bank failure and retooling of their cash management system in the midst of these chapter 11 cases.

- *The Debtors Have Filed a Viable Plan.* During their short time in chapter 11, the Debtors have already taken significant steps toward resolving these chapter 11 cases, including by filing a toggle-style chapter 11 plan (one that contemplates both a sale transaction and standalone option depending on whichever path will ultimately maximize value) that the Debtors believe to be viable, and will continue to work with stakeholders on finalizing the terms of such Plan.

- *These Cases Are Approximately Four Months Old.* The Debtors' request for an extension of the Exclusivity Periods is the Debtors' first such request and comes approximately four months after the Petition Date. During this time, the Debtors have accomplished a great deal and continue to work diligently towards a timely resolution of these chapter 11 cases.

- *An Extension Will Not Pressure Creditors.* The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders. All creditor groups or their advisors have had an opportunity to actively participate in substantive discussions with the Debtors throughout these chapter 11 cases. The Debtors are seeking an extension of the Exclusivity Periods to preserve and capitalize on the progress made to date.

16. An objective analysis of the relevant factors demonstrates that the Debtors are making meaningful progress in these chapter 11 cases. Accordingly, the Debtors respectfully submit that sufficient cause exists to extend the Exclusivity Periods as provided herein. Similar relief is regularly granted in large chapter 11 cases in this district. *See, e.g.*, *In re National Realty*

11

*Investment Advisors, LLC,* No. 22-14539 (JKS) (Bankr. D.N.J. October 5, 2022) [Docket No. 903] (extending exclusivity periods by 120 days); *In re LTL Management LLC*, No. 21-30589 (MBK) (Bankr. D.N.J. February 7, 2022) [Docket No. 1405] (extending exclusivity periods by three months); *In re Diocese of Camden, New Jersey,* No. 20-21257 (JNP) (Bankr. D.N.J. May 12, 2021) [Docket No. 628] (extending exclusivity periods by 90 days); *In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. May 24, 2021) [Docket No. 327] (extending exclusivity periods by 90 days); *In re Modell's Sporting Goods, Inc.,* No 20-14179 (VFP) (Bankr. D.N.J. July 10, 2020) [Docket No 495] (extending filing exclusivity period 120 days and soliciting exclusivity period 115 days).[7]

### Waiver of Memorandum of Law

17. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

### No Prior Request

18. No prior request for the relief sought in this Motion has been made to this or any other court.

### Notice

19. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey; (b) the Committee; (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys

---

[7] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

general in the states where the Debtors conduct their business operations; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

| | |
|---|---|
| Dated: March 21, 2023 | /s/ Michael D. Sirota |
| | **COLE SCHOTZ P.C.** |
| | Michael D. Sirota, Esq. (NJ Bar No. 014321986) |
| | Warren A. Usatine, Esq. (NJ Bar No. 025881995) |
| | Court Plaza North, 25 Main Street |
| | Hackensack, New Jersey 07601 |
| | (201) 489-3000 |
| | msirota@coleschotz.com |
| | wusatine@coleschotz.com |
| | |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| | Christine A. Okike, P.C. (admitted *pro hac vice*) |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | (212) 446-4800 |
| | jsussberg@kirkland.com |
| | christine.okike@kirkland.com |
| | |
| | **HAYNES AND BOONE, LLP** |
| | Richard S. Kanowitz, Esq. (NJ Bar No. 047911992) |
| | Kenric D. Kattner, Esq. (admitted *pro hac vice*) |
| | 30 Rockefeller Plaza, 26th Floor |
| | New York, New York 10112 |
| | (212) 659-7300 |
| | richard.kanowitz@haynesboone.com |
| | kenric.kattner@haynesboone.com |
| | |
| | *Attorneys for Debtors and Debtors in Possession* |