**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice* g)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' STATEMENT WITH RESPECT TO THE**
**AD HOC LOAN COMMITTEE LETTER [DOCKET NO. 693]**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Debtors"), as debtors and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Debtors' Statement with Respect to the Ad Hoc Loan Committee Letter [Docket*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1

*No. 693]* (the "Statement"). In support of the Statement, the Debtors respectfully represent as follows:

### Statement

1.     On March 28, 2023, Weber McGill and Tonkon Torp LLP filed a letter on the docket on behalf of their clients, "the Ad Hoc Committee of Collateralized Loan Account Holders" [Docket No. 693] (the "March 28 Letter").

2.     The March 28 Letter provides that the loan group has been working behind the scenes with the Debtors and Committee, but it felt compelled to file the March 28 Letter to assert three positions with respect to their claims.[2] First, the March 28 Letter states that the loan collateral is not property of the estate. Second, if the loan account holders have unsecured claims against the Debtors, they all have valid setoff and recoupment rights. Third, the loans cannot be sold free and clear of setoff and recoupment rights. The loan group also raises a "sub-issue" that the agreements are executory contracts.[3]

3.     **The loan collateral is property of the estate.** The Debtors' bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."[4] The agreement attached to the March 28 Letter is the standard loan and security agreement ("LSA") for retail client loans. The LSA provides, *inter alia*, that BlockFi is authorized to "pledge, repledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Collateral, separately or together with other property, with all attendant rights of

---

[2] March 28 Letter at ¶ 2.

[3] *Id.* at ¶ 10.

[4] 11 U.S.C. § 541(a)(1).

ownership from time to time, without notice to the Borrower" including without retaining possession or control a like amount of similar collateral.[5]

4. A primary advantage of rehypothecation is to allow the secured party to finance operations while offering less costly funding to the borrower (i.e., it allows for lending at lower rates of interest because the secured party is generating returns with the subject assets).[6] Rehypothecation rights are one part of the overall financing relationship, but it is not without risk because there is always a possibility that the lender could become insolvent and unable to return the collateral, especially in instances where the value of the collateral exceeds the borrower's unrealized losses.[7] The language in the LSA is clear: BlockFi may take any action, including rehypothecation, with respect to the collateral at any time until the repayment in full of the borrower's obligations and termination of the LSA.[8] Courts addressing similar issues with respect to rehypothecated assets have concluded that such posted collateral is property of the estate, and the obligation to return a like amount of cash or property is a monetary debt that entitles the creditor to an unsecured claim against the estate.[9]

---

[5] LSA at § 4(d).

[6] *FirstBank Puerto Rico v. Barclays Capital Inc. (In re Lehman Brothers Holdings, Inc.)*, 526 B.R. 481, 486 (S.D.N.Y. 2014).

[7] *Id.*

[8] LSA at § 33.

[9] *See, e.g.*, *FirstBank Puerto Rico v. Barclays Capital Inc. (In re Lehman Brothers Holdings, Inc.)*, 492 B.R. 191, 195 (Bankr. S.D.N.Y. 2013), *aff'd sub nom*. *In re Lehman Bros. Holdings Inc.*, 526 B.R. 481 (S.D.N.Y. 2014), as corrected (Dec. 29, 2014), *aff'd sub nom*. *In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016) (holding the bank could only have pursued a claim for money damages in a breach of contract action, or, in the case of bankruptcy, filed a proof of claim for breach of contract, and that the sales and transfers of the collateral were permissible under the language in the security agreement even if defaults under the swap); *In re MJK Clearing, Inc.*, 286 B.R. 109, 121-23 (Bankr. D. Minn. 2002), aff'd, No. 01-4257 RJK, 2003 WL 1824937 (D. Minn. Apr. 7, 2003), aff'd, 371 F.3d 397 (8th Cir. 2004) (holding funds held by bankrupt broker were property of the estate and the obligation to return collateral amounted to an unsecured claim for the monetary debt).

5. Similarly, in *In re Celsius Network LLC*, the bankruptcy court considered an argument by "Earn" account holders that the cryptocurrency they provided to Celsius in order to earn significant returns of interest was in the nature of a loan to the company and did not transfer title of those cryptocurrencies to Celsius.[10] The Celsius court held that transfer of title of the crypto was unambiguously granted to Celsius under the terms and conditions of the Earn program and pointed out that, even in a scenario where Earn account holders were simply temporarily lending the use of their crypto to Celsius, "absent a perfected security interest [in favor of the account holders], in the event of the debtor's bankruptcy, the creditor holds only an unsecured claim."[11] "[A]lthough general creditors can claim an interest in their debtors' estates, they cannot claim an interest in any particular asset that makes up that estate."[12] Likewise in *Voyager*, the bankruptcy court rejected an argument made by several customers that the cryptocurrency they transferred to Voyager was their property. Judge Wiles noted the following:

> Once the Debtors entered bankruptcy, they … have taken the position that the cryptocurrency holdings [,] that customers only have general unsecured claims as to those, because the customer agreements say that the Debtor can rehypothecate and otherwise treat the cryptocurrency as the Debtors' property. Okay? So nobody has been allowed to withdraw their cryptocurrency.[13] To the extent that you want the Debtor to release cryptocurrencies in your account, I can't authorize that. You've got to be treated like any other customer. And I haven't seen anything in the papers that would authorize a different result.[14]

---

[10] *In re Celsius Network LLC*, 647 B.R. 631 (Bankr. S.D.N.Y. 2023), *leave to appeal denied sub nom.*, *In re Celsius Network LLC,* No. 23-CV-523 (JPO), 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023).

[11] *Id.* at 657.

[12] *Id.* at 658 (internal citations omitted).

[13] *In re Voyager Digital Holdings, Inc.*, Case 22-10943 (MEW) (Bankr. S.D.N.Y. 2022), Sept. 29, 2022 Hr'g Tr. at 28:14-22.

[14] *In re Voyager Digital Holdings, Inc.*, Case 22-10943 (MEW) (Bankr. S.D.N.Y. 2022), Nov. 15, 2022 Hr'g Tr. at 16:14-18.

6. **Setoff and recoupment rights, to the extent valid, are preserved.** Contrary to the loan group's assertion, the Debtors have not ignored that certain claims may be subject to setoff or recoupment, and such setoff and recoupment claims, if legitimate, are already preserved by operation of law. The Bankruptcy Code preserves setoff rights to the extent valid under applicable non-bankruptcy law, and recoupment is an equitable doctrine.[15] In Schedule F for BlockFi Lending, the Debtors marked the loan claims as subject to setoff. To the extent loan account holders believe they have legitimate setoff or recoupment rights under the LSA, it is their prerogative, not the Debtors' obligation, to assert those individual rights at the appropriate time. The schedules are not the appropriate place to acknowledge the validity or invalidity of such rights, but creditors are welcome to file a proof of claim to the extent they disagree with or wish to provide additional details with respect to scheduled claims.[16] Moreover, setoff rights are not restricted to creditors, and a debtor may possess setoff rights that may be exercised by a debtor in possession on behalf of the estate.[17] As such, the Debtors' schedules as filed, and with the unredacted information provided to each creditor, provide the appropriate information with respect to the loan amounts. The Debtors' plan and disclosure statement will provide additional (and adequate) information regarding the treatment of these claims in due course.

7. **Sale of the LSAs**. The final issue raised in the March 28 Letter is the loan group's assertions that while it *would support* a sale of the LSAs, such sale could not be free and clear of

---

[15] *See* COLLIER ON BANKR. ¶ 553.03[4] (explaining claims are eligible for setoff only to the extent valid under (i) applicable non-bankruptcy law and (ii) the Bankruptcy Code); *see also United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983) (explaining the Bankruptcy Code does not provide an independent source of law for setoff but rather preserves the right of setoff arising out of non-bankruptcy law).

[16] In fact, the Debtors may have valid defenses to such claims and therefore would not assert that certain setoff or recoupment rights are valid in their schedules.

[17] *See generally In re Petroleum Conversion Corp.*, 99 F. Supp. 899, 906 (D. Del. 1951) (permitting debtor to exercise setoff rights against creditor), *aff'd*, 196 F.2d 728 (3d Cir. 1952), appeal denied, 344 U.S. 917 (1953).

the members' setoff/recoupment rights and that the LSAs are executory. The loan group cites to a Third Circuit case, *In re Revel AC Inc.*, for the position that it is entitled to setoff/recoupment rights that survive a sale process. The *Revel* case involved a real property lease that was afforded (i) the protections of section 365(h) of the Bankruptcy Code and the terms of the underlying lease, and (ii) specific language was baked into the court's sale order reserving the tenant's rights of recoupment.[18] The *Revel* case is inapplicable to the LSAs, which are clearly loan agreements. BlockFi's extension of credit to the borrowers is governed by the LSA's terms and conditions.

8.      It is elementary in the bankruptcy space that the executory nature of an agreement is measured as of the bankruptcy petition date.[19] Section 18 of the LSA provides that upon payment of the indebtedness to BlockFi, the agreement automatically terminates, and such payment springs forth BlockFi's sole obligation to return the *remaining* Collateral to the borrower.[20] Despite the assertion in the March 28 Letter that "one could argue" BlockFi's obligation only arises upon full repayment of the indebtedness – that is expressly what the LSA provides.[21] As such, if a loan was paid off prepetition, the applicable LSA terminated and thus cannot be executory. To the extent the remaining LSAs are executory, they are financial accommodations.[22] Again, the treatment of the loan account holders' claims against BlockFi and BlockFi's setoff rights against the outstanding loan balances will be dealt with at the appropriate juncture in this case.

---

[18] *In re Revel AC Inc.*, 909 F.3d 597, 600-04 (3d Cir. 2018).

[19] *Spyglass Media Group, LLC v. Cohen (In re Weinstein Company Holdings, LLC)*, 997 F.3d 497, 501 (3d Cir. 2021).

[20] LSA at § 18.

[21] *See* March 28 Letter at ¶ 11 ("One could argue that Debtors' obligation to return the Loan Account Holders' collateral does not arise until a Holders' corresponding loan repayment obligations are paid in full. If that is so, the Loan Agreements are executory contracts.").

[22] 11 U.S.C. § 365(c)(2). The Code does not define "financial accommodation." As such, courts have turned to the legislative history to define the term narrowly as "the extension of money or credit to accommodate another." *E.g.*, *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013 (11th Cir. 1992); *In re Placid Oil Co.*, 72 B.R. 135 (Bankr. N.D. Tex. 1987).

9.  The Debtors participated in early-stage initial discussions with this loan group. Subsequently, the March 28 Letter was filed on this Court's docket, leaving the Debtors with no choice but to respond publicly. The Debtors welcome future discussions with all creditors, including this group, to efficiently administer the bankruptcy estates and maximize value for their constituencies.

Respectfully Submitted,

Dated: March 31, 2023    /s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*