**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| BROWN RUDNICK LLP<br>Robert J. Stark, Esq.<br>Kenneth J. Aulet, Esq.<br>Bennett S. Silverberg, Esq.<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: rstark@brownrudnick.com<br>         kaulet@brownrudnick.com<br>         bsilverberg@brownrudnick.com<br>*Counsel for the Official Committee of Unsecured Creditors*<br>  -and-<br>GENOVA BURNS LLC.<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Telephone: (973) 230-2095<br>Fax: (973) 533-1112<br>Email: DStolz@genovaburns.com<br>         DClarke@genovaburns.com<br>         GKinoian@genovaburns.com<br>*Local Counsel for the Official Committee of Unsecured Creditors* | BROWN RUDNICK LLP<br>Stephen D. Palley, Esq.<br>601 Thirteenth Street, NW<br>Washington, DC 20005<br>Telephone: (202) 536-1700<br>Fax: (202) 536-1701<br>Email: spalley@brownrudnick.com |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>Jointly Administered |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**OBJECTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' MOTION TO EXTEND EXCLUSIVITY PERIOD**

The Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), by and through undersigned counsel, hereby submits this objection (the "Objection") pursuant to sections 105(a) and 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**") to the *Debtors' Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Dkt. No. 659] (the "**Motion**").  In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Let's begin by properly characterizing this bankruptcy.  First, BlockFi is not a viable business enterprise.  The company ceased operations months ago, and there is zero prospect for rehabilitating the defunct business.  Second, BlockFi's M&A process is now largely finished, and any resulting transaction will (or will not) materialize around the Motion's hearing date.  Third, the bulk of BlockFi's distributable value is liquid, either cash or cryptocurrency.  All that needs to happen now is to give it back to customers/creditors.  Fourth, BlockFi has a relatively simple capital structure and, in turn, no real obstacles to creating an appropriate value-allocation and distribution scheme for a plan.  Finally, the Debtors and the Committee have now completed all other investigations and analyses necessary to wrap up the bankruptcy.  The list of remaining case "to do's" just isn't very long, and most of it (e.g., pursuing recoveries from the FTX bankruptcy) can – and should – be entrusted to a post-confirmation liquidation trust controlled by customers/creditors.  This bankruptcy is, in sum, at its end.

2. Yet, the Motion demands plan filing exclusivity all the way out to June 26 and solicitation exclusivity all the way out to August 28. What on earth would the Debtors even do with all that time? BlockFi's creditors have one overriding goal: to get their money back, as much as possible, and as quickly as possible. Allowing this case to languish in bankruptcy assists neither.

3. It is worth observing that Bankruptcy Courts do not often have to address questions like these. That is because, in most Chapter 11 cases, the debtor's lust for case control is "put in check" by DIP loan covenants, strict milestones, and near-term maturity. Here, however, there is no DIP loan. That is because BlockFi liquidated more than $225 million in cryptocurrency just prior to the Chapter 11 filings, and it has since been spending that money at a very fast clip. BlockFi, it seems, is asking for prolonged exclusivity because here, unlike almost all other cases, it can. That is about all the substantive rationale the Committee can glean from underlying case circumstances.

4. The limited periods set forth in the Bankruptcy Code are intended to pressure Debtors to move expeditiously. This case – where each day in bankruptcy merely accrues additional costs, and separates customers from their savings one day longer, for no benefit – calls out for speed. The Committee holds the Debtors strictly to their burdens of proof and persuasion, respectfully requesting that the relief requested be denied.

## BACKGROUND

5. On November 28, 2022 (the "**Petition Date**"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate (to the extent described below) and manage their business as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

6. On December 21, 2022, the Office of the United States Trustee appointed the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket

No. 130].

7. Immediately prior to the Petition Date, BlockFi undertook a number of key transactions: First, it liquidated approximately two hundred and forty million dollars ($240,000,000) of cryptocurrency and moved it to parent company accounts at, primarily, Silicon Valley Bank.

8. Second, it purchased thirty million dollars ($30,000,000) of director and officer liability insurance coverage for nearly the same amount.

9. One hundred thirty-five (135) days have now passed since the Petition Date. The Debtors' platform auction has been delayed but is anticipated to take place in the near future, at which point the M&A process will end.

10. During this time, the Committee has been conducting an investigation of the facts and circumstances of BlockFi's collapse and any causes of action that may exist for the benefit of BlockFi's creditors to be pursued by a liquidating trust – outside of bankruptcy. Moreover, the Committee has been evaluating case exit options and is ready to negotiate the structure of a liquidating plan.

11. The docket and the record before the Court establish that these cases are pretty much over. There is nothing to do but formulate a liquidating plan, either through self-liquidation or a sale transaction. Neither requires much time to formulate.

12. There is absolutely nothing in the record before the Court suggesting a need for three additional months to formulate a plan. The Debtors have cash. They need a vehicle to distribute it to creditors. If they haven't developed such a vehicle in the last 135 days, the Committee should have the opportunity to assist them.

## ARGUMENT

13. Section 1121 of the Bankruptcy Code states, in relevant part:

(b) Except as otherwise provided in this section, only the debtor may file a plan until 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including . . . a creditors' committee . . . may file a plan if and only if—

   (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

   (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, . . . .

(d)

   (1) . . . [O]n request of a party in interest . . . and after noticing and a hearing, the court may for cause reduce . . . the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121. "This provision curbs the unfair disadvantage to creditors of giving the debtor perpetual exclusive rights to initiate a plan." *Jasik v. C.S. Conrad (In re Jasik)*, 727 F.2d 1379, 1380 (5th Cir. 1984).

14. Congress intended Section 1121 to create an appropriate balance between a debtor and its creditors that would lead to the efficient administration and speedy conclusion of a chapter 11 case:

> [Section 1121] recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, [Section 1121] recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company. [Section 1121] gives the debtor an exclusive right to propose a plan for 120 days. In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors.

H.R. Rep. No. 595, at 231-32 (1978); *see In re Tony Downs Foods Co.*, 34 B.R. 405, 407-08 (Bankr. D. Minn. 1983) (Congress intended limited exclusivity to impose pressure on debtors to push the reorganization process forward).

15. If a debtor is unable to file a plan within 120 days, it may seek an extension of the exclusivity period for "cause." *See* 11 U.S.C. § 1121(d) ("after notice and a hearing, the court may for cause reduce or increase the 120-day period").

16. "Cause" is not defined in section 1121 (or elsewhere in the Code), reflecting Congress's intention that "cause" "be determined by the facts and circumstances in each individual case." *In re Sharon Steel Corp.*, 78 B.R. 762, 764 (Bankr. W.D. Pa. 1987). Accordingly, the Court has discretion to modify the exclusivity period. *See Geriatrics Nursing Home, Inc. v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home, Inc.)*, 187 B.R. 128, 132 (D.N.J. 1995) (section 1121(d)(1) "grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause'").

17. The debtor bears the burden of showing the requisite "cause" for the extension it seeks. *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) ("While the granting or denial of [an exclusivity extension] request is within the discretion of the bankruptcy court, the moving party bears the burden of proving that 'cause' exists justifying the grant of an extension.").

18. This should not be a perfunctory exercise. A bankruptcy court should grapple with the facts, and should not lightly find the debtors' purported cause to be sufficient. *See In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) ("[i]n passing upon a request for a change in the debtor's exclusivity period, the court needs to consider more than just the articulated cause presented to it. It must also consider the history and purpose of § 1121 and the competing interests which Congress sought to balance when it enacted these time tables."). Rather, "a request to either extend or reduce the period of exclusivity is a serious matter[,]" and should

6

"'be granted neither routinely nor cavalierly.'" *Id.* (quoting *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)).

19. Typically, courts consider the following factors in deciding whether to modify the exclusivity period, including:

    1) the size of the debtor and the difficulty of formulating a plan of reorganization;
    2) the need of creditors' committee to negotiate with the debtor;
    3) whether there has been good-faith progress towards reorganization;
    4) the existence of unresolved contingency;
    5) the fact that the debtor is paying operating expenses as they become due;
    6) the length of any previous extensions of exclusivity;
    7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity periods would give the debtor an unfair bargaining position over creditors;
    8) any failure by the debtor to resolve fundamental reorganization matters essential to its survival;
    9) any mismanagement of the debtor; and
    10) whether the debtor's plan would require a competing plan.

*See In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *accord In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

20. The same courts have cautioned, however, that in "determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate **moving the case forward**. And that is a practical call that can override a mere toting up of the factors." *Dow Corning*, 208 B.R. at 670 (emphasis added); *see also Adelphia Commc'ns*, 352 B.R. at 590 ("practical considerations, or other considerations in the interests of justice, could override . . . the result after analysis of the nine factors") (emphasis added). It is critical "to draw back from the narrow focus on individual factors and scan the big picture." *Dow Corning*, 208 B.R. at 669 (emphasis added).

21. Even if cause is shown, a bankruptcy court may nonetheless deny a motion to extend exclusivity or grant a shorter extension than is sought by the debtor. *See In re Sharon Steel*

*Corp.*, 78 B.R. 762, 763-65 (Bankr. W.D. Pa. 1987) (explaining that Congress's use of the permissive term "may" permits a court to decline to extend exclusivity even upon a showing of "cause"); *see also In re Mirant Corp.*, Nos. 4-04-CV-476, 4-04-CV-530-A, 2004 WL 2250986, at *3 (N.D. Tex. Sep. 30, 2004) (granting a shorter exclusivity extension than requested by the debtor).

I. **The Debtors' Claims For "Cause" For Exclusivity Are Incorrect and Insufficient To Prevail; Moreover, <u>Allowing the Committee To File A Plan Will Move The Case Forward</u>.**

22. The Debtors provide a number of bullet-point statements in support of "cause" to extend exclusivity. These statements are, largely, wrong and misleading:

  a. **Exclusivity will prejudice creditors.** BlockFi is continuing to employ dozens of individuals who perform no value-generating services, for a company with no prospect of rehabilitation. It is employing numerous professional firms. It is not collecting revenue. The administrative burn of these cases is immense and must be curtailed as soon as possible. The Debtors are simply not correct in asserting that exclusivity will not prejudice creditors: the Debtors are burning creditors' deposited assets, with no hope of increasing returns. That is prejudice.

  b. **The complexity of these cases is overstated.** Yes, these cases are complex. There are, for instance, complex questions to be resolved regarding resolution and avoidance of intercompany transfers, avoidance of payments to and on behalf of insiders, litigation claims, and claims against bankrupt entities, all of which must be resolved. The Committee has been investigating these issues and underlying facts since it was appointed and is eager to negotiate an appropriate plan structure with the Debtors. But the complexity of the situation is limited, because BlockFi is not operating and has no hope of continued operation. It needs a liquidating plan. It has many professionals capable of designing such a plan, and the Committee is ready to propose a confirmable plan if the Debtors will not.

  c. **The Debtors have not filed a viable plan.** The Debtors trumpet the filing of a "viable" chapter 11 plan. The plan may be viable in the sense that it might be legally confirmable if it had financial backing and the support of creditors. But it does not have either and the Debtors have not pursued it. The plan was filed at the onset of the cases and contemplates a rehabilitation of BlockFi's business through a sale or reinvestment, with according protections for BlockFi's management. The plan on file is a non-starter; it makes no sense given the facts now established and has no support from

8

voting classes. If BlockFi wants to confirm a plan it has to engage with the Committee and its constituents.

23. Continuing exclusivity *only preserves the one outcome that is most harmful* to the victims of BlockFi's "best in class" customer protections – one where the company continues to burn the cash proceeds of customer deposits. Such extended deadlines will not move the cases along, which is the ultimate dispositive question the Court should ask when considering whether to confer the benefit of extended exclusivity on the Debtor. *See Dow Corning*, 208 B.R. at 669-70; *see also Adelphia Commc'ns*, 352 B.R. at 90 ("[the] test is better expressed as determining whether terminating exclusivity would move the case forward materially, to a degree that wouldn't otherwise be the case. Certainly, practical considerations, or other considerations in the interests of justice, could override, in certain cases, the result after analysis of the nine factors.").

## II. Ending and Modifying Exclusivity Does Not Prejudice the Debtors, It Benefits the Debtors and Their Creditors.

24. Termination of exclusivity will benefit this Case, generally. A plan proposed by the Committee may encourage BlockFi to negotiate more seriously, bringing them closer to the bargaining table and making a resolution of this Case more likely. *See, e.g.*, *In re Public Svc. Co.*, 99 B.R. 155 (Bankr. D.N.H. 1989) (reasoning that termination of exclusive period created a level playing field and fostered the negotiation of a consensual plan of reorganization).

25. History is replete with cases in which termination of exclusivity prompted a negotiated case resolution. This is particularly true where the Debtors have a limited ability to cram down creditor classes, such as in mass tort cases requiring supermajority voting to support third-party releases, or as here, where the absence of secured or priority debt classes prohibits a realistic cramdown plan. For instance, in *In re PG&E, Corp*, it was not until the Bankruptcy Court terminated exclusivity to permit the Official Committee of Tort Claimants to file a competing plan

9

that the committee and the debtors reached a mediated settlement of the debtors' tort liability.[2] The record in *PG&E* strongly suggests it was the Court's termination of exclusivity that kick-started negotiations in earnest for a global resolution, leading to a mediated settlement that resulted in the confirmation of a consensual plan of reorganization. By contrast, the adjustment proceedings of the Puerto Rico Electric Power Authority, in which exclusivity is a statutory mandate that may not be terminated, are approaching their seventh year without a confirmation hearing.[3]

26. This Court and all the customers will also benefit from reviewing a plan, proposed by BlockFi's customers, that customers believe to be feasible and confirmable. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 102 (3d Cir. 1988) ("[T]he ability of a creditor to compare the debtor's proposals against other possibilities is a powerful tool by which to judge the reasonableness of the proposals."); *In re Rook Broadcasting of Idaho, Inc.*, 154 B.R. 970, 976 (Bankr. D. Idaho 1993) ("It is in the interests of creditors that they have a choice between competing plans.").

27. It is the customer creditors who vote and control the outcome of this case. Simply put, "it is sufficient for [the Court] to recognize and express the judgment that opening up the

---

[2] *Compare Order Granting Joint Motion of the Official Committee of Tort Claimants and Ad Hoc Committee of Senior Unsecured Noteholders to Terminate the Debtors' Exclusive Periods Pursuant to Section 1121(d)(11) of the Bankruptcy Code*, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D. Cal. Oct. 9, 2019) [Dkt. No. 4167] (granting motion to terminate exclusivity and finding that a "dual-track plan course going forward may facilitate negotiations for a global resolution and narrow the issues which are in legitimate dispute") and *Order Denying Debtors' Second Exclusivity Extension Motion*, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D. Cal. Oct. 9, 2019) [Dkt. No. 4168]; *with Order Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 (I) Authorizing the Debtors and TCC to Enter into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents, and (II) Granting Related Relief*, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D. Cal. Dec. 19, 2019) [Dkt. No. 5174] (approving mediated settlement providing for global resolution of tort claims against the debtors, as implemented through a consensual plan of reorganization).

[3] *See In re Financial Oversight and Management Board for Puerto Rico*, Nos. 17-3283-LTS (Jointly Administered), 17-4780 (Bankr. D.P.R.); 48 U.S.C. § 2172(a) ("Only the Oversight Board…may file a plan of adjustment of the debts of the debtor").

process to those alternative approaches in this particular case is desirable. The market will tell us the answer and I think that is appropriate on the facts of this case." *In re EUA Power Corp.*, 130 B.R. 118, 119 (Bankr. D.N.H. 1991). Here, the "market" is the customers and their vote.

28. The Debtors are not prejudiced if exclusivity is terminated; in fact, continued exclusivity only preserves the most harmful outcome to victims. *See, e.g., In re Southwest Oil Co.*, 84 B.R. 448, 454 (Bankr. W.D. Tex. 1987) ("by denying the extension, the Court does not prejudice the debtors' coexistent right, nor dilute the debtors' duty to file a plan."). The creditors here can move forward with a plan they believe will be feasible and confirmable, while the Debtors can also attempt to cram-down claims and seek releases of third parties that will never receive creditor votes and will not be confirmable. *See In re Akbari-Shahmirzadi*, (2015 U.S. Dist. LEXIS 164737, at *19-20 (D.N.M. Nov. 25, 2015) (a provisional or draft plan with "important details yet to be figured out" does not qualify as a plan for purposes of extending exclusivity); *see also Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 443, 474 (D. Utah 1998) (concurring with the bankruptcy court's finding that an "incomplete and unconfirmable" plan filed just to protect the exclusivity period was not filed in good faith).

29. The hard part of these cases is over: the parties understand the lay of the land, the legal issues, and if not all the facts, enough of the facts to ask the right questions and negotiate a structure that permits post-effective date resolution of liabilities. Continued exclusivity does not force these cases to an end. BlockFi customers want, and deserve, their money back as soon as possible.

## RESERVATION OF RIGHTS

30. If the Court is inclined to extend exclusivity over this objection, the Committee believes that the Debtor's' requested extension is too generous. The Committee would support an

11

extension of two weeks to facilitate negotiation of plan structure and terms (and a corresponding 60 days of "solicitation" exclusivity), and/or a limited modification of exclusivity permitting the Committee alone to proceed with the ability to file a plan alongside the Debtors. *See In re Red Rose, Inc.*, Case No. 20-12814-mkn, [Dkt. No. 1229] (Bankr. D. Nev. Oct. 28, 2020) (modifying and terminating exclusivity on consent to allow for official committee to also file a plan). Such modifications are appropriate to permit these cases to move forward while avoiding additional distraction. The Committee reserves all rights to seek to terminate or modify exclusivity at any time.

## **CONCLUSION**

**WHEREFORE**, for foregoing reasons, the Committee respectfully requests that the Court (i) deny the Motion; (ii) enter an order consistent with the relief requested herein and (iii) grant such other and further relief as is just and proper.

Dated: April 12, 2023

By: */s/ Robert J. Stark*
**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Email:  rstark@brownrudnick.com

601 Thirteenth Street, NW
Washington, DC  20005
Telephone: (202) 536-1700
Email: spalley@brownrudnick.com
*Counsel for the Official*
*Committee of Unsecured Creditors*

By: */s/ Daniel M. Stolz*
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Email: DStolz@genovaburns.com
          DClarke@genovaburns.com
          GKinoian@genovaburns.com
*Local Counsel for the Official*
*Committee of Unsecured Creditors*