**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Rick Anigian (admitted *pro hac vice*)
Charlie Jones (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
rick.anigian@haynesboone.com
charlie.jones@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>                     Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**APPLICATION IN LIEU OF MOTION IN SUPPORT OF ENTRY OF AN ORDER APPROVING THE STIPULATION STAYING LITIGATION AND RELATED DISCOVERY CONCERNING THE ROBINHOOD ASSETS**

TO:    HONORABLE MICHAEL B. KAPLAN
          Chief United States Bankruptcy Judge

The above-captioned debtors and debtors-in-possession (the "<u>BlockFi Debtors</u>" or

"<u>BlockFi</u>") in the above-referenced Chapter 11 cases (these "<u>Chapter 11 Cases</u>"), by and through

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

their undersigned counsel, hereby submit this application in lieu of motion (the "Application"),

pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),

the Court's inherent powers, and D.N.J. LBR 9021-1(b), in support of entry of an *Order Approving*

*the Stipulation Staying Litigation and Related Discovery Concerning the Robinhood Assets* (the

"Stipulation"), a copy of which is attached hereto as **Exhibit 1**, and respectfully state as follows:

1. On November 28, 2022 (the "Petition Date"), each of the BlockFi Debtors filed

voluntary petitions for relief commencing these Chapter 11 Cases in the United States Bankruptcy

Court for the District of New Jersey (the "Bankruptcy Court").

1. Also on the Petition Date, Debtors BlockFi Inc., BlockFi Lending LLC, and

BlockFi International Ltd. (collectively, the "BlockFi Adversary Plaintiffs") filed an adversary

proceeding in the Bankruptcy Court, Adv. Pro. 22-01382-MBK (the "BlockFi Adversary

Proceeding"), against Emergent Fidelity Technologies Ltd. ("Emergent") and Marex Capital

Markets Inc., formerly known as ED&F Man Capital Markets Inc. ("Marex").

2. The central focus of the BlockFi Adversary Proceeding is the recovery of certain

assets that Emergent pledged to the BlockFi Adversary Plaintiffs as security for hundreds of

millions of dollars in loans from BlockFi Lending and BlockFi International.  Compl. [Adv. Dkt.

No. 1], ¶¶ 19–49.  Those assets consisted primarily of (i) approximately 55 million shares of

common stock of Robinhood Markets Inc. (NASDAQ ticker symbol: HOOD) and (ii) certain

proceeds therefrom, including approximately $20.7 million in cash (the "Robinhood Assets").  As

of the Petition Date, Marex held the Robinhood Assets in one or more accounts in Emergent's

name.

3. On December 30, 2022, the Honorable Katherine H. Parker, United States

Magistrate Judge for the Southern District of New York, signed a Warrant of Seizure for the

Robinhood Assets.  Then, on January 6, 2023, the United Stated of America (the "Government")

filed a Notice of Asset Seizures in the Chapter 11 Cases [Dkt. No. 203], stating that the

Government had seized the Robinhood Assets (the "Seizure").

4.      On January 20, 2023, the Government filed its Forfeiture Bill of Particulars in its

pending criminal case against Mr. Samuel Bankman-Fried—*United States of America v. Samuel

Bankman-Fried a/k/a "SBF," et al.*, 22 Cr. 673, pending in the United States District Court for the

Southern District of New York (the "SBF Criminal Proceeding")—identifying specific assets that

it seized from various sources, including the Robinhood Assets "held in the name of 'Emergent

Fidelity Technologies'" in certain Marex accounts.[2]  The Robinhood Assets are now in the

Government's possession, custody, and control pending the outcome of the SBF Criminal

Proceeding and, if Mr. Bankman-Fried is convicted of or pleads guilty to certain offenses, a

subsequent forfeiture proceeding (the "Forfeiture Proceeding").[3]

5.      On February 3, 2023, Emergent filed its own voluntary petition for relief under

Chapter 11 of the Bankruptcy Code, commencing the case styled *In re Emergent Fidelity

Technologies, Ltd.*, Case No. 23-10149-JTD, pending the in the United States Bankruptcy Court

for the District of Delaware (the "Emergent Bankruptcy Case").  Emergent asserts certain claims

and rights with respect to the Robinhood Assets.  On February 16, 2023, the Debtors moved to

dismiss the Emergent Bankruptcy Case (the "BlockFi Motion to Dismiss").[4]

---

[2] Government's Forfeiture Bill of Particulars, SBF Criminal Proceeding, Dkt. No. 49 (Jan. 20, 2023).

[3] Ex. 2, Mot. to Dismiss Tr., at 25:24-27:25 (presentation of Mr. Seth Shapiro, Senior Trial Counsel, U.S. Department of Justice-Civil Division, Commercial Litigation Branch).  As explained below, **Exhibit 2** is a transcript of a proceeding held in the Emergent Bankruptcy Case on March 14, 2023, before the Hon. John T. Dorsey, United States Bankruptcy Judge for the District of Delaware, Case No. 23-10149-JTD.

[4] BlockFi's Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case, Emergent Bankruptcy Case, Dkt. No. 32 (Feb. 16, 2023).

6.    Subsequently, on March 2, 2023, the debtors in the Chapter 11 cases jointly administered under the case styled *In re FTX Trading, Ltd., et al.*, Case No. 22-11068-JTD, pending in the United States Bankruptcy Court for the District of Delaware (collectively, the "FTX Debtors"), filed an opposition to BlockFi's Motion to Dismiss and asserted that one FTX Debtor, Alameda Research, Ltd., "claims ownership of the [Robinhood] Shares," i.e., the Robinhood Assets.[5]

7.    On this background, the Delaware Bankruptcy Court, the Hon. John T. Dorsey presiding, held a hearing on March 14, 2023, on the BlockFi Motion to Dismiss the Emergent Bankruptcy Case.  A transcript of that hearing is attached to this Application as **Exhibit 2** for the Court's reference.

8.    Several important developments occurred at the March 14 hearing, including:

- Judge Dorsey indicated that he would do "nothing that is going to effect the ownership of [the Robinhood Assets]" as such determinations were before the U.S. District Court for the Southern District of New York in the Forfeiture Proceeding.[6]

- Counsel for the U.S. Department of Justice stated that "under 21 U.S.C. 853, the exclusive jurisdiction for determining who has the interests in the [Robinhood Assets] at issue is the [S.D.N.Y.] District Court, it is not this Court or any other Bankruptcy Court."[7]

- Counsel for the U.S. Department of Justice further stated the "criminal prosecutors [in the SBF Criminal Proceeding] have indicated that they believe that the Southern District of New York will adjudicate all of these issues related to the criminal forfeiture."[8]

- Judge Dorsey then issued guidance to the Parties—BlockFi, FTX, and Emergent— and directed them to conference privately in the hallway to see if they could come to an agreement on staying litigation and discovery over the Robinhood Assets

---

[5] FTX Debtors' Opposition to BlockFi's Motion to Dismiss, Emergent Bankruptcy Case, Dkt. No. 41 (Mar. 2, 2023).

[6] Ex. 2 at 13:15-20, *see also id. at* 23:17-20.

[7] Ex. 2 at 26:17-27:2

[8] Ex. 2 at 27:3-15.

while, at the same time, allowing the Parties to exchange information relevant concerning the claims to those assets and otherwise protect their respective claims.[9]

- While the Parties were unable to reach a final agreement at the hearing, BlockFi did agree to withdraw its Motion to Dismiss without prejudice, and the Parties committed to working to reach a final agreement on a stay of litigation related to the Robinhood Assets in advance of an April 12, 2023 status hearing in the Emergent Bankruptcy Case.[10]

9.      Following the March 14 hearing, counsel for the BlockFi Debtors, the FTX Debtors, and Emergent worked diligently and cooperatively over the next several weeks to come to an agreement on a stipulation that stayed further litigation and discovery concerning the Robinhood Assets while still (i) permitting a reasonable exchange of information regarding those assets, (ii) providing various other protections to the Parties regarding the Robinhood Assets, and (iii) allowing the Parties to otherwise administer their respective bankruptcy cases on issues not directly related to the Robinhood Assets.

10.      On April 11, 2023, the Parties reached their final agreement on the Stipulation.  The Parties submitted the Stipulation to Judge Dorsey in the FTX Debtors bankruptcy cases on the same day.[11] During the April 12, 2023 omnibus hearing in the FTX Debtors bankruptcy cases Judge Dorsey indicated he had reviewed the stipulation and would enter it.

11.      The Stipulation is the result of significant good-faith, arm's-length negotiations among counsel for the BlockFi Debtors, the FTX Debtors, and Emergent.  In the BlockFi Debtors' business judgment, the Stipulation benefits, and is in the best interest of, the BlockFi Debtors' estates because is curtails unnecessary and expensive litigation over the Robinhood Assets in

---

[9] Ex. 2 at 31:25-32:20.

[10] Ex. 2 at 32:23-37:24.

[11] *In re FTX Trading LTD., et al.*, Case No. 22-11068-JTD, Dkt. Nos. 1261, 1261-1 (Bankr. D. Del. Apr. 11, 2023). The Emergent Bankruptcy Case is being jointly administered under the same case number.

multiple forums while at the same time: (i) providing the BlockFi Debtors access to important information regarding the Robinhood Assets; (ii) allowing the BlockFi Debtors to focus on developing a plan of reorganization, administering other claims, addressing other issues in the Chapter 11 Cases, and potentially recovering other assets; and (iii) preserving all of the BlockFi Debtors' rights and ability to litigate its claims to the Robinhood Assets in the proper forum at the proper time.

12.    The Stipulation also required that it "shall be filed and submitted for approval by the respective debtor(s) in the BlockFi Adversary Proceeding, the BlockFi Bankruptcy Cases, the Emergent Bankruptcy Case, and the FTX Bankruptcy Cases."[12]

13.    Counsel for the BlockFi Debtors has informed the United States Trustee (the "Trustee") and the Committee of Unsecured Creditors (the "Committee") of BlockFi's intention to submit this Application to the Court in both the Chapter 11 Cases and the BlockFi Adversary Proceeding. As of the time of filing neither the UCC nor the Committee has taken a position on the filing of this Application.

14.    For these reasons, the BlockFi Debtors respectfully request that the Court review and approve the Stipulation and adopt the Stipulation as an Order of this Court for all proper purposes.

15.    This Application is submitted pursuant to D.N.J. LBR 9021-1(b) in lieu of a motion in support of the Debtors' request that the Court enter the Stipulation as presented.  The Debtors submit that the Stipulation is in the best interests of the Debtors and their bankruptcy estates because it will prevent unnecessary and expensive litigation and allow the Debtors to instead continue focusing on the administration of these Chapter 11 Cases.  No previous application for

---

[12] Stipulation, ¶ 2.

the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order Approving the Stipulation and grant such other relief as the Court deems just and appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

Respectfully Submitted,

Dated: April 14, 2023

/s/  *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Rick Anigian (admitted pro hac vice)
Charlie Jones (admitted pro hac vice)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
rick.anigian@haynesboone.com
charlie.jones@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## **EXHIBIT 1**

**Stipulation**

## STIPULATION STAYING LITIGATION AND RELATED DISCOVERY

This stipulation (the "Stipulation") is being entered into among the following: (i) BlockFi, Inc. and its affiliated debtors, debtors-in-possession, and their respective bankruptcy estates (collectively, "BlockFi"); (ii) Emergent Fidelity Technologies, Ltd. and its bankruptcy estate ("Emergent"); and (iii) FTX Trading Ltd. and its affiliated debtors, debtors-in-possession, and their respective bankruptcy estates (collectively, "FTX").  BlockFi, Emergent, and FTX are each a "Party" and collectively, the "Parties."

## RECITALS

**WHEREAS,** BlockFi are debtors in the Chapter 11 cases jointly administered under the case styled *In re BlockFi, Inc., et. al*, Case No. 22-19361 (MBK), pending in the United States Bankruptcy Court for the District of New Jersey (the "BlockFi Bankruptcy Cases");[1]

**WHEREAS,** Emergent is the debtor in a Chapter 11 case styled *In re Emergent Fidelity Technologies, Ltd.*, Case No. 23-10149 (JTD), and jointly administered under the case styled *In re FTX Trading, Ltd., et. al*, Case No. 22-11068 (JTD) pending in the United States Bankruptcy Court for the District of Delaware (the "Emergent Bankruptcy Case");[2]

**WHEREAS,** FTX are debtors in the Chapter 11 cases jointly administered under the case styled *In re FTX Trading, Ltd., et. al*, Case No. 22-11068 (JTD), pending in the United States Bankruptcy Court for the District of Delaware (the "FTX Bankruptcy Cases");[3]

---

[1] The Debtors in the BlockFi Bankruptcy Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

[2] Emergent Fidelity Technologies Ltd, is a company formed under the laws of Antigua and Barbuda with registration number 17532 as identified by the Antigua and Barbuda Financial Services Regulatory Commission.  Emergent's principal place of business is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[3] The last four digits of Debtors FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in the FTX Bankruptcy Cases, a complete list of the

1

**WHEREAS,** on November 28, 2022, BlockFi Inc. and two of its affiliated debtors in the BlockFi Bankruptcy Cases filed an adversary proceeding complaint against Emergent and Marex Capital Markets Inc., formerly known as ED&F Man Capital Markets Inc. ("Marex"), Adversary Proceeding No. 22-01382 (MBK), pending in the United States Bankruptcy Court for the District of New Jersey (the "BlockFi Adversary Proceeding");

**WHEREAS,** prior to the Seizure (as defined below), Emergent had accounts at Marex that held, among other things, 55,273,469 shares of common stock of Robinhood Markets Inc. (NASDAQ ticker symbol: HOOD) and certain proceeds therefrom, including approximately $20.7 million in cash (the "Robinhood Assets");

**WHEREAS,** BlockFi asserts that it has rights, title, ownership of, and/or claims and liens to and against the Robinhood Assets, arising from a certain Pledge Agreement entered into between Emergent and BlockFi with respect to debt owed by FTX debtor Alameda Research Ltd. to BlockFi;

**WHEREAS,** FTX asserts that it has rights, title, and ownership of the Robinhood Assets, or in the alternative asserts that it is a creditor of Emergent with respect to the Robinhood Assets;

**WHEREAS,** the United States of America (the "Government"), acting through the United States Attorney for the Southern District of New York, has a criminal case against Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, and Nishad Singh in the action styled *United States of America v. Samuel Bankman-Fried a/k/a "SBF," et al.,* 22 Cr. 673, pending in the United States District Court for the Southern District of New York (the "SBF Criminal Proceeding"). Mr. Bankman-Fried is currently scheduled for trial beginning on October 2, 2023;

---

FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**WHEREAS**, on December 30, 2022, the Honorable Katherine H. Parker, United States Magistrate Judge for the Southern District of New York, signed a Warrant of Seizure for the Robinhood Assets;

**WHEREAS,** on January 6, 2023, and January 11, 2023, the Government filed a Notice of Asset Seizures in the BlockFi Bankruptcy Cases and the FTX Bankruptcy Cases, respectively, stating that it had seized the Robinhood Assets (the "Seizure");

**WHEREAS,** on January 20, 2023, the Government filed its Forfeiture Bill of Particulars in the SBF Criminal Proceeding, identifying specific assets that it seized from various sources, including the Robinhood Assets "held in the name of 'Emergent Fidelity Technologies'" in Marex accounts numbered *9*-***00 and *2*-***00.   The Robinhood Assets, which are in the Government's possession, custody, and control pending the outcome of the SBF Criminal Proceeding and, if Mr. Bankman-Fried is convicted of or pleads guilty to certain offenses, a subsequent forfeiture proceeding (the "Forfeiture Proceeding");

**WHEREAS,** BlockFi intends to amend the complaint in the BlockFi Adversary Proceeding to further substantiate, supplement, and add to its current claims against Emergent and Marex;

**WHEREAS,** Emergent intends to file an adversary proceeding in the Emergent Bankruptcy Case seeking, among other things, avoidance of all transfers of any interests (including security interests) in Emergent's property made to BlockFi, the disallowance of BlockFi's claims against Emergent, and a declaration that BlockFi has no rights, title, ownership interests, or security interests to or in the Robinhood Assets;

**WHEREAS,** FTX intends to file an adversary proceeding in the FTX Bankruptcy Cases seeking, among other things, to establish ownership of the Robinhood Assets and avoidance of the transfer of the Robinhood Assets to Emergent and/or their pledge to BlockFi;

**WHEREAS,** the Government has advised BlockFi, Emergent, and FTX that the BlockFi

3

Adversary Proceeding and any further litigation among the Parties with respect to claims, rights, interests, liens, or ownership with respect to the Robinhood Assets could potentially interfere with the SBF Criminal Proceeding and/or the Forfeiture Proceeding;

**WHEREAS,** at a hearing on March 14, 2023, in the Emergent Bankruptcy Proceeding, the Delaware Bankruptcy Court informed the Parties that it will not issue rulings with respect to ownership of the Robinhood Assets for so long as the District Court hearing the SBF Criminal Proceeding and potentially the Forfeiture Proceeding asserts jurisdiction over the Robinhood Assets;

**WHEREAS,** the Parties agree that, except as set forth herein, it is in the best interests of justice and the Parties and their respective bankruptcy estates to agree to stay and not to seek or otherwise commence or pursue litigation (in the United States or any other jurisdiction), or otherwise pursue a ruling or judgment from any court, determining interests in, ownership of, rights or claims to, or liens with respect to the Robinhood Assets, including without limitation litigation among any of the Parties to determine the validity or allowance of any Party's claims against Emergent or any Party's alleged interests in the Robinhood Assets (collectively "Robinhood Assets Litigation"), outside of (i) the SBF Criminal Proceeding and (ii) if any, the Forfeiture Proceeding (each exclusive of any appeals) (the satisfaction of both conditions being the "Criminal Proceedings Conclusion");

**WHEREAS,** the Parties acknowledge they may deem it necessary to file claims, motions or objections to protect their rights in any or all of the BlockFi Bankruptcy Cases, the Emergent Bankruptcy Case, and the FTX Bankruptcy Cases, both related and unrelated to the Robinhood Assets, and that nothing in this Stipulation shall prevent any Party from doing so; provided that any claims, motions, or objections concerning the Robinhood Assets shall be consistent with the provisions of this Stipulation; and

**WHEREAS,** the Parties have engaged in arm's length negotiations regarding a stay of the Robinhood Assets Litigation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the undersigned counsel for the Parties, as follows:

1.      <u>Recitals Incorporated</u>.  The recitals and paragraphs set forth above are hereby incorporated in full and made part of this Stipulation.

2.      <u>Approval of the Stipulation by the Bankruptcy Courts</u>.  This Stipulation shall be filed and submitted for approval by the respective debtor(s) in the BlockFi Adversary Proceeding, the BlockFi Bankruptcy Cases, the Emergent Bankruptcy Case, and the FTX Bankruptcy Cases. The effectiveness and enforceability of this Stipulation is conditioned on the respective Bankruptcy Courts approving the respective stipulations filed before them (and the provisions of Paragraphs 4 and 5 of this Stipulation are conditioned on both Bankruptcy Courts granting all the relief contemplated therein).  The submission of this Stipulation for approval in any bankruptcy court shall not constitute a submission by any Party to the jurisdiction of that court, and all jurisdictional rights and arguments of the Parties with respect to any such proceeding are expressly reserved.  No Party shall argue that any other Party consented to the jurisdiction of any court, or waived any jurisdictional argument involving the Robinhood Assets due to the filing and approval of the terms and conditions of this Stipulation.

3.      <u>Stay of the Robinhood Assets Litigation</u>.  Subject only to Paragraphs, 4, 5, and 7 below, the relevant Parties shall in good faith seek a stay of the BlockFi Adversary Proceeding and no Party shall commence or prosecute any other Robinhood Assets Litigation before any domestic or foreign tribunal, outside of the SBF Criminal Proceeding and Forfeiture Proceeding, until the Criminal Proceedings Conclusion; <u>provided</u>, <u>however</u>, nothing in this Stipulation shall restrict or prevent any Party from (i) filing proofs of claim with respect to the Robinhood Assets in any of the

5

BlockFi Bankruptcy Cases, the FTX Bankruptcy Cases, or the Emergent Bankruptcy Case; or (ii) filing pleadings or other documents in any bankruptcy proceeding or other forum necessary to preserve a Party's rights in the Robinhood Assets, including in response to any plan of reorganization that may be filed in any of the Parties' Bankruptcy Cases, or to safeguard a Party's rights and protections as a debtor in any insolvency proceeding. For the avoidance of doubt, unless otherwise set forth herein, until the Criminal Proceedings Conclusion, no Party shall file any pleadings or other documents requesting affirmative relief with respect to the Robinhood Assets outside of the Forfeiture Proceeding. For the further avoidance of doubt, nothing in this Stipulation shall prohibit any of the Parties from discussing, negotiating, or settling any disputes related to the Robinhood Assets or otherwise as among themselves, subject to any approvals or other procedures that would apply independently of this Stipulation.

4.    Emergent Stay Stipulation.  If BlockFi requests, Emergent shall stipulate to relief from the automatic stay in the Emergent Bankruptcy Case for the limited purpose of permitting BlockFi to file and serve an amended complaint in the BlockFi Adversary Proceeding, including against Emergent.  If the Delaware Bankruptcy Court approves such stipulation and modifies the stay, and if BlockFi files an amended complaint in the BlockFi Adversary Proceeding, then BlockFi shall thereafter immediately seek a stay of the BlockFi Adversary Proceeding from the New Jersey Bankruptcy Court until after the Criminal Proceedings Conclusion.

5.    BlockFi Stay Stipulation.  If Emergent requests, BlockFi shall stipulate to relief from the automatic stay in the BlockFi Bankruptcy Case for the limited purpose of permitting Emergent to file and serve a complaint commencing an adversary proceeding against BlockFi in the Delaware Bankruptcy Court related to the Robinhood Assets (the "Emergent Adversary Proceeding").  If the New Jersey Bankruptcy Court approves such stipulation and modifies the stay, and if Emergent files such a complaint, then Emergent shall thereafter immediately seek a stay of

6

that adversary proceeding from the Delaware Bankruptcy Court until after the Criminal Proceedings Conclusion.

6.    <u>Discovery</u>.  Consistent with a stay of all Robinhood Assets Litigation, the Parties agree that they will not seek discovery before any domestic or foreign tribunal from (i) any other Party or (ii) any defendant in the SBF Criminal Proceeding, in each case only with respect to interests in, ownership of, rights or claims to, or liens with respect to, the Robinhood Assets (the "<u>Robinhood Assets Subject Matter</u>") until the conclusion of the SBF Criminal Proceeding. Notwithstanding any other provisions of this Stipulation:

a.    within 90 days after the effectiveness of this Stipulation, each Party shall provide to the other Parties those documents and communications (including electronically stored information) within such Party's possession, custody, or control that, in such Party's good faith determination, relate to the Robinhood Assets Subject Matter (including, without limitation, documents and communications that, in such Party's good faith determination, relate to any claim or defense in the BlockFi Adversary Proceeding or the Emergent Adversary Proceeding);

b.    if at any time thereafter a Party discovers or receives any document or communication (including electronically stored information) not already provided hereunder that, in such Party's good faith determination, relates to the Robinhood Assets Subject Matter, such Party shall provide such document or communication reasonably promptly to the other Parties;

c.    within 90 days after the effectiveness of this Stipulation, Emergent shall identify to BlockFi and FTX all defenses it intends to assert in the BlockFi Adversary Proceeding (and, if BlockFi files an amended complaint in the BlockFi Adversary Proceeding, within 45 days after such filing, identify all additional defenses Emergent

intends to assert);

      d.    with respect to the obligations set forth in Paragraph 6 of this Stipulation, no Party shall be required to re-produce documents that have already been publicly filed in any of the BlockFi Bankruptcy Cases, the FTX Bankruptcy Cases, and/or the Emergent Bankruptcy Case;

      e.    aside from the provisions set forth in Paragraphs 6 and 7 of this Stipulation, no Party may seek any formal discovery from any other Party concerning the Robinhood Assets Subject Matter prior to the Criminal Proceedings Conclusion without leave of Court for good cause shown; and

      f.    any Party may seek from or provide to any other Party information on an informal basis relating to any subject.

7.    <u>Forfeiture Proceeding Rights Reserved</u>.  Nothing in this Stipulation affects or encumbers in any way a Party's procedural or substantive rights, claims, or defenses that may be asserted in any Forfeiture Proceeding involving the Robinhood Assets or any existing right to participate in such Forfeiture Proceeding.  For the avoidance of doubt, no Party shall object to any other Party raising any rights, claims, or defenses in the Forfeiture Proceeding that the other Party could have raised in any of the litigations being stayed pursuant to this Stipulation.  Nothing in this Stipulation affects or encumbers in any way a Party's procedural or substantive rights, claims, or defenses that may be asserted in any other criminal, civil, or forfeiture proceedings not specifically included in this Stipulation.

8.    <u>Proofs of Claim</u>.  If a bar date for filing a proof of claim in the BlockFi Bankruptcy Cases, the Emergent Bankruptcy Case, and/or the FTX Bankruptcy Cases occurs before the Criminal Proceedings Conclusion, any Party may file such proof or proofs of claim.  BlockFi, Emergent, and FTX may object to any such claims to preserve rights as necessary, but the relevant

8

Parties shall work in good faith, and shall seek the appropriate Bankruptcy Court's permission, to defer all prosecution and adjudication of any objection to any portion of such claim asserting interests in, ownership of, rights or claims to, or liens with respect to the Robinhood Assets within the applicable Bankruptcy Case until after the Criminal Proceedings Conclusion.

9.    <u>General Reservations of Rights</u>.  Nothing in this Stipulation (including the recitals incorporated herein) shall constitute an admission on a factual issue or a concession on a legal issue or shall in any way affect or encumber any Party's claims and defenses against another Party or any Party's interests in, ownership of, rights or claims to, or liens with respect to the Robinhood Assets.  Neither this Stipulation, nor the provision of documents and communications hereunder, shall constitute an admission as to the relevance of any document or communication to any claim, defense, or proceeding.  Nothing in this Stipulation shall affect, encumber, or restrict any Party from seeking discovery from any person (i) in the Forfeiture Proceeding or after the conclusion of the SBF Criminal Proceeding or (ii) at any time on any subject or issue, including in any bankruptcy proceeding, except as set forth in Paragraph 6.  Further, nothing in this Stipulation shall affect, encumber, or restrict any inter-estate discovery occurring within the Parties' respective bankruptcy cases.  Nothing in this Stipulation in any way affects or encumbers any Party's rights to assert or otherwise pursue any claims, causes of action, interests, rights, or defenses against another Party, including in the BlockFi Bankruptcy Cases, the Emergent Bankruptcy Case, or the FTX Bankruptcy Cases, other than with respect to the Robinhood Assets prior to the Criminal Proceedings Conclusion as set forth in this Stipulation.  Nothing in this Stipulation shall preclude any party from complying with requests from the Government or cooperating with any government investigation.  Nothing in this Stipulation prohibits the Parties from taking procedural or administrative actions to maintain their respective Bankruptcy Cases.  Nothing in this Stipulation shall prevent Emergent's Liquidators from acting (or causing Emergent to act) in accordance with

their duties as court-appointed liquidators (i) in connection with litigation between Emergent and

Mr. Bankman-Fried in Antigua (including without limitation litigation in claims ANUHCV

0456/2022 and ANUHCV 0480/2022 and any appeals therefrom), and (ii) insofar as they may be

ordered or directed by any court with jurisdiction over the Emergent's liquidation proceeding

provided, however, in doing so Emergent's liquidators may not pursue a ruling or judgment

determining interests in, ownership of, rights or claims to, or liens with respect to the Robinhood

Assets, including without limitation to determine the validity or allowance of any Party's claims

against Emergent or any Party's alleged interests in the Robinhood Assets, beyond what is provided

for in this Stipulation, while this Stipulation is in effect.

10.    Jurisdiction.  Each of the Courts presiding over the BlockFi Bankruptcy Cases, the

Emergent Bankruptcy Case, and the FTX Bankruptcy Cases shall retain concurrent jurisdiction to

hear and determine matters arising from or relating to the implementation, interpretation, and

enforcement of this Stipulation.  Any Party may apply to the Court in which that Party's bankruptcy

proceedings are pending for relief from the terms of this Stipulation at any time, and such relief

shall be granted only upon a showing of good cause upon notice to all Parties.  Nothing in this

Stipulation shall prevent Emergent from filing a proposed cross-border administration protocol

and/or seeking instructions from the courts in the U.S. and/or in Antigua insofar as consistent with

this Stipulation.

11.    Governing Law.  This Stipulation shall be governed by, and construed in accordance

with, the law of the State of New York, without regard to conflict-of-law principles.

12.    Entire Agreement.  This Stipulation constitutes the entire agreement among the

Parties, and may not be changed, modified or altered in any manner, except in writing, signed by

each Party.

13.    Execution in Counterparts.  This Stipulation may be executed in one or more

counterparts, each of which shall be deemed an original but all of which together shall constitute

one and the same instrument.  Any signature delivered by a Party electronically shall be deemed

an original signature hereto.

**STIPULATED AND AGREED TO BY:**


Dated: April 11, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Adam G. Landis*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware  19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:       landis@lrclaw.com
                  brown@lrclaw.com
                  pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:      dietdericha@sullcrom.com
                  bromleyj@sullcrom.com
                  gluecksteinb@sullcrom.com
                  kranzleya@sullcrom.com

*Counsel to FTX Trading Ltd. and its Affiliated Debtors*

Dated: April 11, 2023
Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**

/s/  *Jody C. Barillare*
Jody C. Barillare (Bar No. 5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
Email: jody.barillare@morganlewis.com

- and -

John C. Goodchild, III (admitted *pro hac vice*)
Matthew C. Ziegler (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Email: john.goodchild@morganlewis.com
Email: matthew.ziegler@morganlewis.com

- and -

Craig A. Wolfe (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
David K. Shim (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Email: craig.wolfe@morganlewis.com
Email: joshua.dorchak@morganlewis.com
Email: david.shim@morganlewis.com

*Proposed Counsel for Emergent Fidelity
Technologies Ltd as Debtor and Debtor-in-
Possession*

Dated: April 11, 2023
Wilmington, Delaware

**MORRIS NICHOLS ARSHIT & TUNNELL LLP**

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
1201 North Market Street, Suite 1600
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbot@morrisnichols.com

and

**HAYNES AND BOONE, LLP**
Richard Kanowitz (admitted *pro hac vice*)
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989
Email: Richard.Kanowitz@haynesboone.com

Richard D. Anigian (admitted *pro hac vice*)
Charles M. Jones II (admitted *pro hac vice*)
Brian Singleterry (admitted *pro hac vice*)
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email:  Rick.Anigian@haynesboone.com
          Charlie.Jones@haynesboone.com
          Brian.Singleterry@haynesboone.com

*Counsel for BlockFi Inc. and its Affiliated Debtors*

## EXHIBIT 2

**Transcript**

```
1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3   IN RE:                      .  Chapter 11
                                 .
4   EMERGENT FIDELITY           .  Case No. 23-10149 (JTD)
    TECHNOLOGIES LTD.,          .
5                                .
                                 .
6                                .  Courtroom No. 5
                                 .  824 Market Street
7           Debtor.             .  Wilmington, Delaware 19801
                                 .
8                                .  Tuesday, March 14, 2023
    . . . . . . . . . . . . .    .  10:00 a.m.
9
                        TRANSCRIPT OF HEARING
10           BEFORE THE HONORABLE JOHN T. DORSEY
                UNITED STATES BANKRUPTCY JUDGE
11
    APPEARANCES:
12
    For the Debtor:             Jody C. Barillare, Esquire
13                              MORGAN, LEWIS & BOCKIUS LLP
                                1201 N. Market Street
14                              Suite 2201
                                Wilmington, Delaware 19801
15
                                John C. Goodchild, III, Esquire
16                              MORGAN, LEWIS & BOCKIUS LLP
                                1701 Market Street
17                              Philadelphia, Pennsylvania 19103

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:            Jermaine Cooper

21   Transcription Company:     Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.
```

2

```
 1   APPEARANCES (CONTINUED):

 2   For the Debtor:          Joshua Dorchak, Esquire
                              MORGAN, LEWIS & BOCKIUS LLP
 3                            101 Park Avenue
                              New York, New York 10178

 4
     For the U.S. Trustee:    Benjamin Hackman, Esquire
 5                            OFFICE OF THE UNITED STATES TRUSTEE
                              844 King Street, Suite 2207
 6                            Lockbox 35
                              Wilmington, Delaware 19801

 7
     For BlockFi:             Derek Abbott, Esquire
 8                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                              1201 North Market Street
 9                            Suite 1600
                              Wilmington, Delaware 19801

10
                              Charles Jones, Esquire
11                            HAYNES & BOONE LLP
                              2323 Victory Avenue, Suite 700
12                            Dallas, Texas 75219

13                            Richard Kanowitz, Esquire
                              HAYNES & BOONE LLP
14                            30 Rockefeller Plaza
                              26th Floor
15                            New York, New York 10112

16   For the Department
     of Justice:              Seth Shapiro, Esquire
17                            U.S. DEPARTMENT OF JUSTICE –
                                CIVIL DIVISION
18                            COMMERCIAL LITIGATION BRANCH
                              P.O. Box 875, Ben Franklin Station
19                            Washington, DC 20044

20   For FTX:                 Brian Glueckstein, Esquire
                              SULLIVAN & CROMWELL LLP
21                            125 Broad Street
                              New York, New York 10004

22

23

24

25
```

1                                  INDEX

2    MOTION:                                                PAGE

3    Agenda
4    Item 1: BlockFi's Motion for Entry of an Order         8
             Dismissing the Debtor's Chapter 11 Case
5            [D.I. 32, filed on February 16, 2023]

6    Agenda
7    Item 2: Debtor's Motion for Entry of an Order (I)
             Directing Joint Administration of Its Chapter
8            11 Case and (II) Granting Related Relief
9            [D.I. 38, filed on February 28, 2023]

10           Court's Ruling:                               39

11

12   RELATED MATTERS:                                       PAGE

13   I. FTX Debtors' Objection to BlockFi's Motion to
14      Strike [D.I. 73, filed on March 13, 2023]

15      Court's Ruling:                                     4

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 10:02 a.m.)

2          (Call to order of the Court)

3                THE COURT:  Please be seated.

4          I will go ahead and turn it over to debtor's

5  counsel to run the agenda -- well, before we begin, on the

6  motion to strike I have read the papers and I am going to

7  deny that motion.  Clearly, the FTX debtors and, by

8  extension, the FTX creditor's committee has standing.  The

9  facts of this case are pretty convoluted, but they can be

10 broken down, I think, fairly succinctly.

11         Emergent claims that it owns certain Robinhood

12 shares. Alameda asserts those shares were purchased with

13 their assets and, therefore, belong to them.  The other FTX

14 debtors assert that Alameda used their assets to purchase the

15 shares and, therefore, they belong to them.  BlockFi asserts

16 it owns the shares by virtue of a pledge agreement whereby

17 Emergent pledged the shares as collateral on Emergent's

18 guarantee of a $600 million loan from BlockFi to Alameda.

19 And Emergent claims that the pledge agreement is invalid and

20 that even if it is valid those shares can be recovered as a

21 fraudulent transfer.

22         It seems pretty clear to me there is standing all

23 around.  So, that motion is denied.

24         In connection with the motion to dismiss I am going

25 to need some help here because it seems to me that -- well,

1   let me backup.  At this point the shares are being held by

2   the Federal Government.  They were seized by the Government

3   in connection with the criminal case against Mr. Sam Bankman-

4   Fried.  If Mr. Fried is convicted, there will then be a

5   process to determine whether the shares are the proceeds of

6   his criminal activity.  And if so, then the shares will be

7   forfeited; however, those asserting an interest in those

8   shares will have an opportunity to participate in the

9   forfeiture proceeding to claim that the shares do not belong

10  to the Government, that they have a superior claim to those

11  shares.

12          Who is going to participate in that proceeding?  Is

13  it going to be BlockFi?  Alameda?  Emergent?  The other FTX

14  debtors?  What is the District Court going to decide?

15          The District Court has exclusive jurisdiction.  So,

16  what is the District Court going to decide?  Is it going to

17  say -- is it going to pick amongst all those entities which

18  one's own the shares or is the District Court just going to

19  say those shares -- the Government does not -- these parties

20  clearly have some interest superior to the Governments, so go

21  back from whence you came, and figure out who amongst you is

22  the one who owns them.

23          Where does it go?  Does it go to the District Court

24  -- excuse me, the Bankruptcy Court in New Jersey where

25  Emergent's bankruptcy is pending, or does it come back here

1  where FTX's and Alameda's bankruptcy is pending.  All

2  unanswered questions. I don't know what is going to happen.

3          So, everything is up in the air at this point.  So,

4  I am struggling with why in the world I would dismiss the

5  case at this point in time.  Those are all unanswered

6  questions that have to be answered before anybody is going to

7  know whose assets these are.  And it could turn out that they

8  are Emergent's, and if they're Emergent's then they have to

9  be administered here in this Court.  If they are BlockFi's

10 then they have to be administered in BlockFi's bankruptcy in

11 New Jersey.

12          So, with that I will go ahead and turn it over.

13 Are we starting with the motion to dismiss?

14          MR. BARILLARE:  Good morning, Your Honor.  Jody

15 Barillare from Morgan, Lewis in Wilmington on behalf of the

16 debtor.  With me today are my colleagues Josh Dorchak from

17 New York and John Goodchild from Philadelphia.  Also with us

18 today is Angela Barkhouse, one of the joint provisional

19 liquidators.

20          THE COURT:  Thank you.

21          MR. BARILLARE:  Thank you.

22          MR. DORCHAK:  Your Honor, I just wanted to take two

23 seconds.  Joshua Dorchak of Morgan, Lewis on behalf of the

24 proposed counsel for the debtors.

25          Just to introduce, again, John Goodchild and Angela

1  Barkhouse are potential witnesses today, and also to thank

2  the Court, the Courtroom Deputy, the whole staff for helping

3  us deal with the travel problems we had.  I just want to

4  express our appreciation to everyone including counsel to the

5  other parties for helping us work through those last minute

6  problems.  We managed to make new arrangements, and we're

7  here, and we're ready to go.

8           THE COURT:  Thank you.

9           MR. ABBOTT:  Good morning, Your Honor.  Derek

10 Abbott of Morris Nichols here for BlockFi.

11          Your Honor, Charlie Jones from Haynes & Boone is

12 going to be handling the motion to dismiss.  I believe his

13 *pro hac* has been signed, so I just wanted to introduce him to

14 the Court.

15          THE COURT:  Okay. Thank you.

16          MR. JONES:  Good morning, Your Honor.  Charlie

17 Jones with Haynes & Boone on behalf of BlockFi.

18          I'm happy to proceed however the Court would like.

19 I think it is our motion.  I can make some introductory

20 remarks then move some small pieces of evidence into the

21 record and then let the debtor proceed with its argument, and

22 evidence, and then they can cross-examine the witnesses as

23 they are presented.

24          THE COURT:  All right.  Go ahead -- well, go ahead

25 and do your opening.  I will give the debtors an opportunity

1   to do an opening, and then we will go from there.

2           MR. JONES:  Thank you, Judge.

3           So, we are here on BlockFi's motion to dismiss this

4   bankruptcy under Docket 32.  We move under two independent

5   prongs, Your Honor; one that Emergent has not property in the

6   United States and what I really think is the larger focus of

7   this petition. Its not filed in good faith.  Specifically,

8   under the Integrated case.

9           As you said, this all stems from a two-party

10  dispute that was started when BlockFi filed its bankruptcy

11  and its adversary on November 28th seeking a declaration,

12  among other things, that its pledge agreement with Emergent

13  with valid and enforceable, and sought disposition of the

14  shares.  BlockFi has a secured interest in those shares and

15  that's at Exhibit A-6 through the pledge agreement.

16          Since that time on the 9th of January Judge Kaplan,

17  at a hearing in the adversary proceeding, has found that

18  BlockFi has demonstrated a property interest in those shares

19  and that property interest is protectable under 361, entitled

20  to protection under 361.

21          It is undisputed, as Your Honor said, that the

22  Government has seized the shares and some proceeds from

23  there, about $55 million worth of the shares and $20 million

24  of proceeds from those shares from merits.  The Government's

25  detailed seizure is at Exhibit B-3-1 in Docket 32-3 in this

 1 | case.

 2 | So, now we have two courts other then this one that

 3 | are overseeing the Emergent shares.  As you said, the

 4 | Southern District of New York District Court in a

 5 | civil/criminal forfeiture proceeding and the New Jersey

 6 | Court.  I wish I had a better answer to Your Honor's question

 7 | what happens in the forfeiture proceeding.  There is just not

 8 | a lot of authority that we have been able to locate in that

 9 | regard.

10 | Whether the District Court in New York will, as you

11 | say, adjudicate whether the Government has superior rights,

12 | vis-à-vis other parties, or whether the District Court is

13 | actually going to adjudicate the claims amongst the parties

14 | in this case including the FTX debtors.  I think that is

15 | still up in the air a little bit, Your Honor.

16 | THE COURT:  I agree. I think its -- I think the

17 | District Court might have a problem with trying to decide

18 | amongst various debtor entities, including bringing in issues

19 | of fraudulent transfer and preferences.

20 | MR. JONES:  I don't disagree with Your Honor.  We

21 | have looked at that.  We are still in the process of

22 | analyzing those issues and, you know, whether we have to

23 | brief them in the Bankruptcy Court in front of Your Honor in

24 | either this case or the FTX case, Judge Kaplan in the New

25 | Jersey BlockFi action, or the District Court, the other Judge

1    Kaplan.  It is just a little bit unclear right now.

2         What I can say is that there are two actions filed

3    before this case and there is no reason why the validity and

4    enforceability of Emergent/BlockFi pledge agreement should

5    not be litigated in the New Jersey Court if the Southern

6    District of New York Court decides not to take up that

7    action.

8         THE COURT:  That is not the issue in front of me

9    today.  The issue in front of me today is do I dismiss this

10   case.

11        MR. JONES:  I understand, Your Honor.  But you were

12   asking what might happen either way there, but that is how I

13   see that particular issue playing out and whether, you know,

14   BlockFi has a superior right, at least vis-à-vis the pledge

15   agreement, to those shares.  As Judge Kaplan has said, you

16   know, his courtroom is open to litigate those issues and he

17   intends to exercise his jurisdiction in that adversary

18   proceeding over the pledge agreement.

19        I will say the DOJ has not been shrinking violet on

20   these issues. They have contacted counsel for BlockFi.  And I

21   am fairly certain, although I can't swear to it, that they

22   contacted counsel for Emergent, the debtor here, and counsel

23   for the FTX debtors and they have made it clear, at least

24   very clear to us, that they do not want anything in the

25   Bankruptcy Courts, any litigation over these HOOD shares to

1  interfere with the prosecution of Mr. Bankman-Fried in the

2  Southern District of New York.

3        They don't want the litigation over those rights.

4  Particularly they are very much opposed to discovery being

5  taken with respect to the HOOD shares and they have signaled

6  that they don't believe any order of any of these Bankruptcy

7  Courts is going to be binding on the Government with respect

8  to the Emergent shares.

9        THE COURT:  Well, isn't that what you are asking me

10 to do today?  You're asking me to rule that Emergent has no

11 property in the United States because BlockFi owns those

12 shares, right?

13        MR. JONES:  No, sir.  What we are saying is that

14 Emergent has no property in the United States because the

15 property has been seized prior to the bankruptcy filing by

16 the United States Government; meaning that that property is

17 not property of the estate.  I will get to that point in a

18 minute.  We are not asking for dismissal of this case.

19        THE COURT:  Then wouldn't that also mean your case

20 needs to be dismissed in New Jersey because the Government

21 seized -- unless you have other assets, I don't know, maybe

22 you do.

23        MR. JONES:  Yes.  That is a good point, Your Honor.

24 BlockFi has significant other assets and other claims and

25 other real creditors that have to be administered

1    irrespective of the Emergent shares, the HOOD shares.

2    Emergent doesn't, and that is the real difference here.

3    There is no property in the United States other then a

4    retainer that was wired from a litigation fund.

5              Our understanding, in talking to Mr. Goodchild

6    about this, directly to Mr. Goodchild's firm the same day, at

7    least based on what we know in the schedules, the same day

8    this action was filed.  So, that is their basis of their

9    property in the United States.

10             We think, and I can flip to it, that the In Re

11   Thane [phonetic] and the VPH Pharma [phonetic] case are

12   pretty clear that property seized by the Government prior to

13   the filing of the bankruptcy is not property of the

14   bankruptcy estate because they can't use it.  The debtor

15   can't use it, it can't be disposed of, it can't be

16   transferred, its just not there.

17             So, they may have some legal right to it, although

18   we contend that the legal right was transferred when we

19   demanded a merits turnover of the shares pursuant to our

20   power of attorney.  Regardless, they only have some legal

21   right to it.  They don't have equitable right to it.  They

22   can't use it.  They can't pay anybody with it. So, it is not

23   property of their estate.

24             BlockFi would agree to the stay of this proceeding,

25   Your Honor, under the right conditions primarily that the

1   initial claims in the forfeiture proceeding are left to the

2   decision of the Government -- the Court in the Southern

3   District of New York after which time if we need to reopen

4   these various cases to deal with the issues that you have

5   raised in your opening we would be willing to that.  I know

6   we have been in discussions with counsel for the debtor here,

7   counsel for the FTX debtor, and the Government has actually

8   circulated a proposed stipulation.  Everyone is working on

9   comments to that.

10          It has got to be a situation where our adversary is

11   stayed, this case is stayed, the FTX debtors participate in

12   the agreement.  And, you know, we all go to the Southern

13   District of New York for, at least, the initial

14   determinations.

15          THE COURT:  Well, I can guarantee you I'm doing

16   nothing that is going to effect the ownership for those

17   shares.  I am not going to make any rulings one way or the

18   other on who owns those shares.  That is not my decision at

19   this point.  That is up to the forfeiture proceeding int eh

20   Southern District.

21          MR. JONES:  I appreciate --

22          THE COURT:  So, why am I wasting my time here.  Why

23   don't you go out in the hallway, and agree to that, and we

24   can just go -- we will stay this proceeding and we can go our

25   merry way.

1           MR. KANOWITZ:  May I be heard, Your Honor?

2           THE COURT:  Sure.

3           MR. KANOWITZ:  For the record Richard Kanowitz of

4    Haynes & Boone.  We are debtor's counsel, as you are aware –

5    for BlockFi.

6           Thank you, Your Honor.  Thank you very much for

7    that direction because since I've had the initial discussion

8    with the FTX debtors about being a fiduciary to victims,

9    because that is really who is going to get this money.  It is

10   not going to be a corporation, its not going to be FTX

11   debtors, it's not going to be Emergent. Its not even going to

12   be BlockFi.  It is going to be the victims of the fraud.  And

13   the victims of the fraud, if the Government decides it's the

14   FTX debtor's creditors, plus BlockFi creditors, which we

15   believe it should be, that won't be determined by you, by

16   Judge Kaplan, or anyone else.

17          So, from the beginning of the time that we filed

18   our adversary proceeding I have been asking for some

19   fiduciaries to come up and stop the waste of resources both

20   judicial as well as legal.  We have agreed with the DOJ, and

21   this happened before Emergent filed their bankruptcy.  I will

22   just walk you back of what happened.

23          January 9th we had a hearing in front of Judge

24   Kaplan and Judge Kaplan made it clear to the FTX debtors who

25   participated as well as to the JPL's by Morgan Lewis who were

1  just JPL's in Antigua that he had jurisdiction, that the

2  automatic stay under 362 applied, and that his doors were

3  open.  So, he also directed that we needed to file an amended

4  adversary proceeding complaint.  So, we drafted that.

5      Then the Government called us and they said we want

6  to see a copy of that adversary proceeding  complaint.  We

7  shared it to them.  And ensuing weeks happened where we were

8  discussing it and we didn't file it.  We didn't file the

9  amended complaint.  We had it.  The Government made it very

10 clear to us filing the amended complaint, which would raise

11 all of the issues that we are highlighting at the beginning,

12 would be two problems for them:

13      One, an interference with criminal prosecution of

14 Sam Bankman-Fried because all of the witnesses on the

15 FTX/Emergent side are either indicted, plead guilty, or

16 something is going to interfere with the prosecution itself.

17      Second, the determination of any of the merits on

18 the validity of the BlockFi pledge and guarantee are going to

19 be raised in the forfeiture proceedings, nowhere else.  They

20 will come down on everybody either through contempt sanctions

21 or otherwise to handle anybody's attempt to try to move the

22 cases forward.

23      With that knowledge we went to our client and we

24 said, okay, this is what we are going to do.  We are going to

25 file the amended complaint and we're going to seek a stay,

 1   okay, stay of the adversary proceeding complaint.  Why were

 2   we going to do that; Judge Kaplan directed us to file an

 3   amended complaint, we didn't want to violate his ruling.  We

 4   didn't want to fight with the DOJ about where these issues

 5   should be decided after we did all of the case law that Your

 6   Honor knows and has read in our brief to stop the madness.

 7         Why fight if we are not going to get a resolution.

 8   We are fiduciaries.  We have creditors who are owed over a

 9   billion dollars.  We have a billion dollars tied up in FTX's

10   bankruptcy case.  So, we agreed to stay.

11         Now what happened, Emergent filed bankruptcy.  So,

12   they get the benefit of the (indiscernible).  I told Judge

13   Kaplan this yesterday, and I said exactly what would happen

14   that if Your Honor dismissed this case we would file the

15   amended complaint and we would seek to stay that pending

16   determination of the forfeiture proceeding.

17         My understanding is that while I have had multiple

18   agreements with the DOJ to proceed that way, Emergent hasn't

19   agreed and especially the FTX debtors don't agree.  We

20   drafted the stipulation.  We gave it to Mr. Goodchild.  He

21   sent back a copy.  Couldn't read it just yet because we're in

22   the midst of this litigation and we have, you know, Silicon

23   Valley Bank and other issues that popped up over the weekend.

24   The point is we understand that the FTX debtors won't sign

25   it.

1          Now there is no doubt that in the FTX bankruptcy

2    case BlockFi will come to Your Honor at some point and say we

3    have claims against them, but we don't have to argue over the

4    HOOD shares and whether we're a secured creditor on those

5    shares.  We have other collateral and one day we will do that

6    when Your Honor submits a bar date.

7          The determination of the validity of the pledge or

8    security of the HOOD shares, whether it be against Alameda or

9    against Emergent, doesn't need to be decided and shouldn't be

10   decided.  And if we try to decide it the Government is going

11   to do things to all of us.

12         So, again, I harken back, you ask why dismiss the

13   case you don't have to if you stay everything.  If we don't

14   get stuck with a claims objection process where we have to

15   come to this Court and then potentially ask Your Honor to

16   stay that claim objection process they have to come to our

17   Court if they want to lift the automatic stay to allege

18   fraudulent transfer litigation.  They can't just sue us in

19   your Court.  They have to come to Judge Kaplan.

20         Why go through all of those resources for the

21   detriment of the victims of the fraud.  Why don't we just

22   stay everything, put placeholders in each other's Court if we

23   have to that doesn't prejudice anybody's rights and let's see

24   what happens in the Southern District of New York either

25   through the prosecution or the forfeiture.

1          I suspect that the DOJ at the end of the process,

2  many years from now, when some estate fiduciary from BlockFi,

3  or Emergent, or FTX stands up they may say I don't want to

4  hear you guys.  We have victims that we are going to

5  compensate.

6          So, I would say, Your Honor, yes, we should stop

7  the madness and we should enter a stipulation that doesn't

8  create prejudice to anybody's rights, doesn't drain resources

9  and allows both BlockFi because, like Mr. Jones said, we may

10 sell our platform.  Emergent is in a HOOD share is a

11 microscopic issue.  Important, but its not going to change

12 whether BlockFi emerges from bankruptcy or not.  It will

13 change whether our creditors get a huge distribution because

14 there's $500 million at stake and we're owed a billion

15 dollars from Emergent, Alameda, and BlockFi.

16         So, I would agree with Your Honor.  We should stop,

17 we should stay, we should agree to proceed as fiduciaries to

18 protect clients.

19         THE COURT:  Let me hear from the debtors on this

20 stay issue.

21         MR. DORCHAK:  Your Honor, if we're going to hear on

22 this subject --

23         THE COURT:  You can come up to the podium.

24         MR. DORCHAK:  Joshua Dorchak again, Your Honor.

25         My partner, John Goodchild, is the person who has

1  been having the conversations on our side including

2  conversations with BlockFi's counsel.  So, if you don't mind,

3  Your Honor, we are saving the legal argument and the formal

4  presentation for later.  I will let him, sort of, give the

5  counter.

6         THE COURT:  Well, if we even get there today

7  because I might just tell you to go away and work this out,

8  and come back.

9         MR. DORCHAK:  One step at a time, Your Honor.  Can

10  John Goodchild --

11         THE COURT:  Yeah, absolutely.

12         MR. GOODCHILD:  Your Honor, John Goodchild, Morgan,

13  Lewis, on behalf of the debtors.  Good morning.

14         THE COURT:  Go ahead.

15         MR. GOODCHILD:  A few things.  First, part of what

16  has been going on has been driven by BlockFi's aggressive

17  moves.  You heard part of that story, but what wasn't said

18  was we, on behalf of Emergent, reached out to BlockFi

19  immediately after BlockFi raised the issue back in December

20  and had a conversation in which we discussed not having

21  litigation and having an exchange of information.  We thought

22  we were on our way to a constructive conversation along those

23  lines.  That is one.

24         Two, we, on behalf of Emergent and on behalf of the

25  Joint provisional liquidators, asked BlockFi and the New

1   Jersey Bankruptcy Court for more time to respond to the

2   litigation that BlockFi brought and BlockFi objected to that,

3   and hauled us to Trenton New Jersey only to have Judge Kaplan

4   give us the time we were asking for.

5           Then, after that the Department of Justice did get

6   in touch with us and did express the concern that litigation

7   between the parties -- and, Your Honor, I'm emphasizing the

8   word "litigation" because we have a Chapter 11 bankruptcy

9   before you today versus an adversary proceeding in a Chapter

10  11 bankruptcy in New Jersey.  The DOJ's concern, as expressed

11  to us, was litigation between the parties in the various

12  bankruptcy courts would interfere with the prosecution.  And

13  they expressed a much narrower concern then Mr. Kanowitz

14  expressed.

15          When the DOJ articulated those concerns in a draft

16  stipulation quite recently those concerns were expressed in

17  terms of preventing the litigation toward a judgement on the

18  very thing Your Honor has already said Your Honor is not

19  willing to do which is adjudicate who has rights in and who

20  has superior rights in the HOOD shares.  That is not before

21  you today, Your Honor.

22          The issue is one that has been talked about among

23  the parties.  It is true, Mr. Kanowitz sent me a proposed

24  stipulation that was a re-write of the DOJ's on Saturday

25  morning. It is true that I worked very hard to come up with

1   what I thought we could live with and sent that back to him

2   on Sunday.  It is also true, Your Honor, that in a

3   conversation with Mr. Kanowitz on Sunday I asked him if he

4   would withdrawal the motion to dismiss the Chapter 11 because

5   where he, himself, thinks things are headed is that whether

6   Emergent is in bankruptcy or not is not really the central

7   issue with respect to the HOOD shares.

8          So, my comment to Mr. Kanowitz was why put

9   everybody through the trip to Wilmington.  Why have Angela

10  Barkhouse get on a plane from the Cayman Islands to come up

11  here to testify.  Why do all for that.  Why not just

12  withdrawal.

13         Mr. Kanowitz, who has said to you he is primarily

14  concerned about stopping the madness and keeping the

15  attorney's fees down, said, no, we're going forward on

16  Tuesday.  So, here we are.

17         And before I pass the podium I should also mention

18  that part of the reason why Emergent filed for bankruptcy is

19  that BlockFi and Sam Bankman-Fried have been agitating and

20  litigating in Antigua.  So, at the very same time that

21  BlockFi is litigating in New Jersey forcing Emergent to spend

22  resources there, BlockFi is throwing in with Sam Bankman-

23  Fried in front of the High Court in Antigua forcing the JPL's

24  to spend money to remain in control of the company so that

25  Sam Bankman-Fried doesn't get control.

1          All of which I have found no reason to say to Your

2     Honor until Mr. Kanowitz just did what he just did which I

3     found to be extraordinary.  So, Your Honor, nobody here is

4     standing in the way of trying to reach a deal that would

5     limit the litigation.

6          I don't think staying a Chapter 11 is the right

7     answer.  My personal view is, the Chapter 11 should continue;

8     my personal view is, the Chapter 11 should be administered as

9     efficiently as possible -- and we have a motion on for that

10    today as well -- and personal view, Your Honor, is the deal

11    that should be reached by the parties should be one in which

12    the parties don't interfere with the criminal prosecution,

13    but the parties do exchange information, so that when the

14    time comes in front of the appropriate court to hash out

15    which entity should be representing the HOOD shares at the

16    hypothetical table around what happens next, that we all have

17    the same fact set and we're prepared to have that litigation,

18    wherever it happens, as efficiently as possible.

19          Thank you, Your Honor.

20          THE COURT:  So what else is there to do in this

21    Chapter 11, other than joint administration, which is on for

22    today, what else is there?  What other assets does Emergent

23    have that need to be administered at this point?

24          MR. GOODCHILD:  Emergent doesn't have any other

25    assets to be administered, that's true, Your Honor, but there

1   is a very significant question with respect to who is a

2   legitimate creditor of Emergent, separate and apart from the

3   BlockFi issue.

4        Your Honor mentioned that FTX has a claim, that's

5   an intercompany and we can deal with that without the bar

6   date process, but you can see -- if you read in Angela

7   Barkhouse's affidavit, the whole reason the Antiguan

8   proceeding came to be in the first place was the submission

9   of the claim by a creditor who is also a customer of FTX.

10  And the allegation is that that customer can trace assets

11  stolen from that customer's account through Alameda into the

12  HOOD shares.

13        Figuring out whether that creates a claim against

14  Emergent and whether there are other people out there who are

15  similarly situated, that is something that could legitimately

16  be done efficiently in the Chapter 11 process.

17        THE COURT:  Well, that's still going to affect the

18  issue of who owns those shares and that is something I'm not

19  prepared to do until the forfeiture proceeding is terminated

20  in New York.

21        MR. GOODCHILD:  Your Honor, I certainly understand

22  what you're saying, but I guess I am a little confused.  I

23  would have said, understanding who the creditors are of

24  Emergent puts Emergent in a position to be able to talk about

25  why it has rights in whatever proceeding comes next with

 1  respect to the shares.

 2          In other words, I anticipate that one of the

 3  things that will be important in that proceeding, whether

 4  it's in the Southern District of New York or elsewhere, is

 5  who are the entities and whose interests do they really

 6  represent.  It's one thing if Emergent is just a proxy for

 7  FTX, I mean, it's another thing if Emergent is just a proxy

 8  for BlockFi, but it's a third thing and a much different

 9  thing, I would expect, if Emergent stands as the proxy for

10  creditors who are themselves victims who would not otherwise

11  be claiming and collecting through the FTX estate.

12          So, Your Honor, with respect, I actually think the

13  question of who Emergent's creditors are has a bearing on

14  Emergent's role down the line.

15          THE COURT:  Well, to the extent you're saying you

16  want to exchange information so that the parties are prepared

17  to make those arguments when the time comes, I don't have an

18  issue with that, but to the extent you're telling me you want

19  me to rule on those issues, I'm hesitant to do that.

20          MR. GOODCHILD:  I think I'm saying the first thing

21  you said, absolutely, which is, I do think there should be a

22  forum for exchange of information.  I think being in Chapter

23  11 helps with that and that's one of the reasons why we

24  filed.  But I'm also saying knowing who comes forward to

25  claim an interest as a creditor is itself important, not the

 1  act of asking Your Honor to adjudicate those claims, that --

 2  we have a lot of time for that -- it's more the act of

 3  understanding who thinks they are a creditor and why, and the

 4  mere submission of claims I don't think would interfere with

 5  the DOJ or the criminal prosecution in any way.

 6          THE COURT:  So who else is claiming to be a

 7  creditor of Emergent other than BlockFi --

 8          MR. GOODCHILD:  FTX?

 9          THE COURT:  -- that you're aware of right now --

10  and FTX, okay.

11          MR. GOODCHILD:  What I'm aware of is FTX; Alameda;

12  Mr. Ben Shimon (ph), who is the petitioning creditor in

13  Antigua.  There may be other people who have come forward and

14  identified themselves to the JPLs because, remember, there

15  was an Antigua proceeding, so the JPLs may be getting inbound

16  that I'm not aware of.  But my view is that, because of the

17  way that Ben Shimon claims an interest, it's reasonable to

18  believe that others could claim a similar interest.

19          THE COURT:  All right.  Let me ask, before I go

20  back to Mr. Kanowitz, I see Mr. Shapiro is on the line for

21  the Department of Justice.

22          Does the DOJ have any position on this issue, Mr.

23  Shapiro?

24          MR. SHAPIRO:  Good morning, Your Honor, Seth

25  Shapiro for the United States.  The Government is not taking

1  a position on the motion to dismiss, Your Honor; however, we

2  would encourage an exchange of information among the parties,

3  but we agree with the Court that the criminal forfeiture

4  proceeding and the criminal trial should be concluded so that

5  the Southern District of New York can adjudicate these

6  issues.  And if the District Court in its view decides to

7  transfer any of these issues or assign them back to a

8  Bankruptcy Court, I think Your Honor is correct that we

9  should leave that to the District Court to decide.

10         THE COURT:  Do you have an issue, Mr. Shapiro, if

11  the debtors, for example, were to -- the Emergent debtors I'm

12  talking about -- there are so many debtors involved here --

13  if the Emergent debtors were to proceed with setting a bar

14  date so that they could receive proofs of claim, so they know

15  who all their alleged creditors are, is that an issue the DOJ

16  would have a concern about?

17         MR. SHAPIRO:  Well, I can't speak for the Office

18  of the U.S. Trustee, I don't work for them, but as far as the

19  criminal prosecutors are concerned, I mean, there's been a

20  bar date set in the FTX bankruptcy, there's been a bar date

21  set in the BlockFi case.  So I do not have an issue with a

22  bar date being set in this case.  However, you know, the

23  Court should keep in mind, as I think the parties intimated

24  that, under 21 U.S.C. 853, the exclusive jurisdiction for

25  determining who has the interests in the shares and the funds

1  at issue is the District Court, it is not this Court or any

2  other Bankruptcy Court.

3          THE COURT:  Do you have any insight on what the

4  District Court might do with regard to when we have multiple

5  parties claiming that they are the owners of the the asset,

6  what's going to happen?  Is the District Court going to

7  decide between the multiple parties who has the right claim

8  or are they going to send it back down to the Bankruptcy

9  Courts?

10          MR. SHAPIRO:  The information I have from the

11  criminal prosecutors, Your Honor -- I'm bankruptcy attorney

12  for the Government, but the criminal prosecutors have

13  indicated that they believe that the Southern District of New

14  York will adjudicate all of these issues related to the

15  criminal forfeiture.

16          There was some comment made earlier, I think, by

17  counsel for BlockFi that this was going to be a civil

18  forfeiture; that is not the plan.  There is some hypothetical

19  academic possibility it could be, but down the road -- but,

20  more likely than not, it is going to be a criminal forfeiture

21  and all these issues will be adjudicated by the U.S. District

22  Court for the Southern District of New York, which is

23  currently pending before Judge Kaplan.

24          THE COURT:  Okay.  Thank you, Mr. Shapiro.

25          MR. SHAPIRO:  Thank you.

1          THE COURT:  Does the U.S. Trustee have a position?

2          MR. HACKMAN:  Good morning, Your Honor.  May it

3  please the Court, Ben Hackman for the U.S. Trustee.

4          I don't know that we have a position on this

5  point.  I think we would want to defer to Mr. Shapiro as a

6  Government partner about the propriety of establishing a bar

7  date to receive proofs of claim in Emergent's case.  At this

8  point, I think that's all I would submit to Your Honor.

9          THE COURT:  Okay.  Thank you.

10          MR. HACKMAN:  Thank you.

11          THE COURT:  Let me hear from --

12          MR. GLUECKSTEIN:  Your Honor, may I be heard?

13          THE COURT:  -- the FTX debtors.  Go ahead.

14          MR. GLUECKSTEIN:  Good morning, Your Honor.  For

15  the record, Brian Glueckstein, Sullivan & Cromwell, on behalf

16  of the FTX debtors.

17          To address a few of the points here from Mr.

18  Kanowitz's speech, Your Honor, from our perspective, I think

19  the Court summarized the situation correctly at the outset.

20  There are competing claims between the parties as to

21  ultimately who should be the beneficiary of the Robinhood

22  shares that have been seized.  But let's be clear, everything

23  that has happened up until today with respect to attempting

24  to litigate the rights prematurely of those shares has been

25  driven by BlockFi.  They have filed an adversary proceeding

 1   on the first day of their case, they have repeatedly tried to

 2   drag everybody to New Jersey, and have taken the position --

 3   we heard it this morning -- that this is a two-party dispute;

 4   despite Your Honor's comments that preceded it, it is not.

 5          The questions, we think, are relatively

 6   straightforward in terms of once we get into litigation that

 7   BlockFi does not hold the position that it holds, that's

 8   obviously for another day.  I think Your Honor is correct

 9   that nobody here right now knows whether the Southern

10   District of New York is going to adjudicate not just the

11   questions as between creditor versus the Government, but the

12   inter-creditor disputes, or whether those ultimately will

13   come back before either this Court or Judge Kaplan in New

14   Jersey.

15          It will not surprise you, as Your Honor knows, we

16   believe vis-a-vis the FTX debtors that those issues should be

17   litigated before Your Honor, that these issues implicate the

18   rights of many, if not all, of our millions of creditors.

19          But we do not have an issue and have never taken

20   an issue with needing to litigate the rights with respect to

21   the Robinhood shares now; we would be okay with putting that

22   off.  We have, despite Mr. Kanowitz's characterizations --

23   and we haven't spoken directly to him on this topic, but we

24   have talked to the Government, and Mr. Shapiro and his

25   colleagues, and conveyed our views as to what would work.

1   But, in a nutshell, Your Honor, we have to be sure -- nobody

2   knows better than Your Honor as to the issues that the FTX

3   debtors are facing.

4          It was described a few moments ago that this issue

5   is a microscopic issue in the BlockFi case; I don't know what

6   that makes it here then.  It's $500 million, but we have much

7   bigger issues that we need to address before Your Honor in

8   the FTX cases and we need those cases to be able to proceed,

9   and so any stay needs to be narrowly tailored to simply the

10  adjudication of the respective rights between the Robinhood

11  shares and any related discovery on that particularized

12  issue.

13         And one of the big problems that we have is some

14  sort of general discovery bar.  And we've conveyed that to

15  the Government and we don't believe that ultimately will be

16  an issue, but, as Your Honor knows, the fact that numerous

17  witnesses are going to testify in Mr. Bankman-Fried's trial

18  cannot prevent what we need to do as the FTX debtors progress

19  in the cases in this Court and the Government understands

20  that, we're in contact with the Government regularly.

21         And so the question today that was presented was

22  driven by BlockFi.  Again, they moved to dismiss Emergent's

23  case.  Emergent filed a case, ostensibly, to preserve assets

24  and, importantly, Your Honor -- and it was referred to by

25  counsel for the debtor -- Mr. Bankman-Fried is proceeding in

1  Antigua to try to take back control of Emergent.  That is a

2  problem for us.

3        We certainly welcome, as we said in our papers,

4  this filing from the perspective of it put a stay in place,

5  it stopped the unnecessary litigation -- it didn't start it,

6  it stopped it.  Mr. Kanowitz talks about how he wants to stop

7  the waste of resources.  They're the ones that filed a motion

8  to strike our pleading and made us respond to it on the idea

9  that we didn't have standing, which Your Honor addressed at

10 the outset of this hearing.  So the idea that BlockFi is the

11 party who's here trying to come up with a rational path

12 forward is disingenuous.

13        From our perspective, Your Honor, I hear you loud

14 and clear that Your Honor is not going to address the

15 ownership issues prior to the criminal trial and those

16 issues, I think, certainly can be put to the side.  But I

17 think, from our perspective, having the Emergent case

18 pending, having Your Honor overseeing all of the issues

19 relating to the FTX debtors, to the extent there are any

20 issues to address with respect to Emergent, makes sense, but

21 certainly we don't need to be proceeding with figuring out

22 the questions between us and BlockFi and Emergent on the

23 Robinhood shares today.

24        Thank you, Your Honor.

25        THE COURT:  All right, here's what I want to do.

1  Clearly, there's some tension between the parties involved in

2  this case and I want you to take a break now.  My view is, as

3  I've said, I am not going to make any ruling at all that will

4  affect the ownership issue of the Robinhood shares, that's

5  completely off the table.  I agree that there needs to be an

6  exchange of information and I agree that Emergent needs to

7  have the ability to go forward with at least the bare minimum

8  of what is required in the Chapter 11 to find out who's going

9  to claim to be a creditor of their estate, and just filing a

10  proof of claim to say they're a creditor doesn't have any

11  impact on the ownership of those shares.

12          So, with that, with that guidance, I'm going to

13  ask the parties to go talk.  You can go in the hallway for a

14  little bit.  You can let me know whether there's a potential

15  deal or whether there's not.  If there is a potential deal,

16  I'll send you home and see if you can come up with a

17  stipulation; if there's not a potential deal, then we'll go

18  forward with the hearing on the motion to dismiss.  Okay?

19          All right, we'll recess.  Just let chambers know

20  when you're ready.

21      (Recess taken at 10:44 a.m.)

22      (Proceedings resumed at 11:35 a.m.)

23          MR. KANOWITZ:  Your Honor, Richard Kanowitz,

24  Haynes and Boone, counsel for the BlockFi debtors and

25  debtors-in-possession.

1            We want to thank Your Honor for giving us the time

2    to try to work through what the next steps are in connection

3    with this case and the litigations that we have before you.

4    I am hopeful that we are ultimately going to satisfy Your

5    Honor that, at least for today, we have made progress.  And I

6    want to thank counsel for Emergent, as well as counsel for

7    the FTX debtors, for undertaking the time we spent to

8    constructively figure out, as we should as fiduciaries, the

9    right way forward to get the most value for all our

10   constituencies one day.

11           So, with that, Your Honor, what we'd like, subject

12   to Your Honor's approval, of course, is the following.  We'd

13   like to use April 12th, which is the omnibus hearing in

14   Emergent and I believe the FTX case, for a status conference,

15   a status conference on whether or not we've accomplished what

16   we seek to do, which is to enter a stipulation which

17   basically shuts down any and all litigation concerning the

18   HOOD shares and the requisite collateral from the HOOD

19   shares.  Obviously, the language we attempt to do that will

20   have many permutations and I think we're all, I think,

21   diligent enough and smart enough to get to that deal before

22   April 12th.  If we don't get a deal by April 12th, we're

23   going to come to Your Honor potentially a couple days earlier

24   with drafts of what each side believes should be the path

25   forward for a true and complete stay with no gotchas.

1             And that's the issue, right?  No gotchas.  No

2   filing claims within claim objections that raise the same

3   issue, no filing different types of proceedings and then

4   using HOOD as a weapon.

5             So our view is we're going to get to a

6   stipulation, it's going to drive the path forward for the FTX

7   debtors, the BlockFi debtors, as well as Emergent, and

8   hopefully that gets done by April 12th.  Each estate will

9   ultimately have their court approve it.  I mean, we have a

10  creditors committee who's very vocal in our case, represented

11  by Brown Rudnick and others, and we're going to have to pass

12  that through, but we're hopeful that each estate will come to

13  a resolution that Your Honor will ultimately approve in

14  connection with Emergent and FTX and Judge Kaplan will

15  approve in connection with BlockFi.

16            As to today's proceeding, Your Honor, we've heard

17  from Emergent, they would like us to withdraw the motion, and

18  we are willing to withdraw the motion without prejudice.  But

19  what we said to the parties, subject, again, to Your Honor's

20  approval to allow us to withdraw it without prejudice, is if

21  we're not making progress, we're going to re-file this for

22  the May omnibus hearing here in Emergent because that is just

23  an utter failure of all of us to our constituency.

24            And, look, we understand what Your Honor said.

25  While we don't necessarily have to debate the merits of

1   having Emergent exist for purposes of claim process, but

2   we'll address that if we ever have to, but the bottom line is

3   my goal for my client and their constituencies is to stop the

4   bleeding relative to HOOD.  And we recognize we're going to

5   come back to Your Honor in connection with FTX, our issues

6   with FTX on other things other than HOOD.

7           So we'll see where we are and we're hopeful that

8   Your Honor will agree that that should be the path forward

9   for today.

10          THE COURT:  All right.  Let me hear from debtors.

11          MR. GOODCHILD:  Your Honor, John Goodchild on

12  behalf of the debtors -- or debtor, Emergent.

13          The way I understand it is very much as what was

14  said with a couple of additions.  First, and most

15  importantly, the motion to dismiss will be withdrawn.  If it

16  is to be re-filed, obviously, BlockFi is within its rights to

17  make whatever filing it wishes, but the motion is withdrawn,

18  number one.

19          Number two, I believe the agreement is BlockFi

20  also withdraws whatever objection it has to the joint

21  administration motion.  So that, if Your Honor sees fit to

22  rule on that today, the way is clear in that regard.

23          It is true, the parties agreed the April 12 omni,

24  if Your Honor is willing to hold a status, the parties would

25  like that.  It is also true the parties have talked about, if

1  they're having difficulty with an issue or two, submitting

2  either competing drafts or a description of where their

3  disagreements are to Your Honor in the hopes that Your Honor

4  might be able to help us get over the line if we're just that

5  close.  But for today's proceedings, the most important is

6  that the motion to dismiss is withdrawn and the objection to

7  the joint administration is withdrawn.

8           THE COURT:  All right.

9           MR. GOODCHILD:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          FTX?

12          MR. GLUECKSTEIN:  Thank you, Your Honor, Brian

13  Glueckstein, Sullivan & Cromwell, for the FTX debtors.

14          We agree, we do think there's a path forward.

15  Hearing Your Honor this morning and appreciate Your Honor's

16  guidance on what the Court is and is not going to do prior to

17  the criminal trial, I think that makes good sense.  I agree

18  with Mr. Kanowitz that we should be able to reach a

19  stipulation that deals with that issue.

20          Of great import to us, as I noted in my remarks

21  earlier, is making sure that this is limited to the Robinhood

22  shares issues and doesn't collaterally, or intentionally or

23  unintentionally, impact things we need to do in the FTX

24  debtors' case or claims we need to assert against BlockFi on

25  other issues, as they have claims against us and we certainly

 1  have claims against them.

 2          I think the April 12th date for a status makes

 3  sense.  I would hope that we're able to get something done

 4  before then.  Of course, it will need to be reviewed by the

 5  Government, both the United States Trustee and the Department

 6  of Justice will need to see it, but we expect that that

 7  timeline should work.

 8          Thank you.

 9          THE COURT:  All right, thank you.

10          Does anyone else wish to be heard?

11      (No verbal response)

12          THE COURT:  All right.  Well, I think the

13  resolution for today is a good one.  The parties should meet

14  and confer and submit a form of order withdrawing the motion

15  to dismiss without prejudice and setting April 12th as a

16  status conference, and giving the parties the opportunity to

17  make submissions ahead of that conference, if necessary.  I

18  assume they would be submitted simultaneously.

19          And we'll go from there.  We'll see where we are

20  on April 12th.

21          I appreciate the parties taking the time to

22  address the issue and coming up with at least a temporary

23  resolution.  We'll see how it all works out in the end, but

24  I'm glad to see we were able to get something done today.

25          Yes, sir?

 1           MR. DORCHAK:  If I may, Your Honor, just to

 2   clarify, the motion for administration, we've filed a revised

 3   interim order for the Court's approval.  I don't think

 4   there's any objection to that.  That interim order will

 5   provide for noticing to go out both in the Emergent case and

 6   in the FTX case, so that the entire FTX universe will know

 7   and have an opportunity to protest, if they want to, and then

 8   -- assuming nothing of that sort -- then would come back and

 9   present a final order.

10           I assume that's okay with everyone because the

11   objection has been withdrawn, but I just want to make sure.

12           Thank you.

13           MR. KANOWITZ:  Again, for the record, Richard

14   Kanowitz, Haynes and Boone.

15           Your Honor, our -- we filed a limited objection

16   just for purposes of saying the joint administration motion

17   can't wag the motion to dismiss, right?  Just because there's

18   a joint administration doesn't mean Your Honor can't dismiss

19   it.

20           So, yes, we withdraw the limited reservation of

21   rights or whatever we filed in connection with the joint

22   administration and whatever the proposed order is that the

23   debtor of Emergent worked out with the U.S. Trustee and

24   others, we're not standing in that way, we will fall onto

25   whatever rights we have as a noticed party there.

1          THE COURT:  All right, thank you.  I did review it

2    and reviewed the revised order.

3          Does anyone else wish to be heard on the joint

4    administration order?

5       (No verbal response)

6          THE COURT:  All right, I'm satisfied that that

7    relief is appropriate, I will enter that interim order and,

8    if need be, obviously, it's only an interim order, so maybe

9    at the April 12th hearing we can see where we are and maybe

10   use that as the final hearing if we're resolved on all the

11   other issues.  Okay?

12          MR. KANOWITZ:  Thank you.

13          THE COURT:  All right, anything else for today

14   before we adjourn?

15       (No verbal response)

16          THE COURT:  All right.  Thank you all very much, I

17   appreciate it.  We are adjourned.

18          COUNSEL:  Thank you, Your Honor.

19       (Proceedings concluded at 11:43 a.m.)

20

21

22

23

24

25

1                                     <u>CERTIFICATION</u>

2              We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    <u>/s/ Tracey J. Williams</u>                      <u>March 14, 2023</u>

8    Tracey J. Williams, CET-914

9    Certified Court Transcriptionist

10   For Reliable

11

12   <u>/s/ Mary Zajaczkowski</u>                       <u>March 14, 2023</u>

13   Mary Zajaczkowski, CET-531

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25