**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) EXTENDING THE**
**DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN**
**AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION**
**1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this reply (this "Reply") in support of the *Debtors' Motion for Entry of an Order (I) Extending the*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

*Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 659] (the "Motion")[2] and in response to the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion to Extend Exclusivity Period* (the "Objection") [Docket No. 733] filed by the official committee of unsecured creditors appointed in the Debtors' Chapter 11 Cases (the "Committee").  In support of this Reply, the Debtors state the following:

### Reply

1.     The Committee and its counsel think it is healthy to have a good, cathartic hearing every now and then.  And that is a direct quote.  That is the sole reason customer resources are being wasted on pleadings regarding exclusivity and the hearing set for April 19, 2003.  The reality here is the negotiation came down to a mere 11 days (*i.e.,* July 31 or August 11).  All the more reason a pleading seeking to terminate exclusivity is outrageous.

2.     Since the start of these chapter 11 cases, the Committee has asserted that their relationship with the Debtors should be adversarial in nature.  The Debtors have resisted this approach.  Nearly three months ago, the Debtors' management team met with the Committee members to introduce themselves and begin a dialogue.  The Debtors were seeking a partnership on the shared objective of an expeditious, efficient, and cordial process.  Unfortunately, however, almost immediately thereafter, the Committee's counsel subverted this accord by declaring that the parties should no longer have additional direct communication.

3.     Regardless, the Debtors were pleased that on April 10, 2023, the Debtors and their advisors met with the Committee's advisors for over five hours to walk through an 88-page deck outlining certain contours of a proposed chapter 11 plan that contemplated a standalone transaction

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

structure.  During that meeting, the Debtors' advisors and the Committee's advisors engaged in productive discussions on key issues fundamental to the formulation of any plan.  At this same meeting, the Debtors' advisors provided the Committee's advisors with an update on the status of the sale process (which is ongoing) and both parties acknowledged the need to evaluate and compare the potential third party transactions versus any standalone options.  The Committee's advisors asked numerous questions regarding the sale process and self-liquidating plan and acknowledged the work that still needs to be done to determine the path forward.

4.      At the same meeting, the Debtors revealed their case confirmation schedule and outlined considerations underlying their proposed timeline, including the time needed to evaluate whether to proceed with a self-liquidating plan or a third-party transaction, the desire to engage with regulators in formulating the plan, and the sheer number of parties that need to be solicited. The Committee advisors **_agreed_** with the Debtors' advisors on this timeline.

5.      In an about-face just two days later, the Committee suggests that exclusivity needs to be terminated to "kick-start" plan negotiations.  The Committee's Objection is an unfortunate waste of estate resources for no reason.  The Debtors have been making significant progress on all available potential paths and have been engaging with the Committee and all key constituencies on the terms of a chapter 11 plan.  And as the Committee is aware, these discussions are far from complete.

6.      It is imperative that the Debtors have a reasonable amount of time to propose and prosecute a chapter 11 plan.  The Debtors also recognize that these cases must progress quickly. As such, the Debtors have planned an aggressive confirmation schedule, summarized below:

| Revised Confirmation Schedule | | |
|---|---|---|
| **Action** | **Original Timing** | **New Timing** |
| Target date for filing of Disclosure Statement and Chapter 11 Plan | April 17, 2023 | **May 1, 2023** |
| Proposed Filing Exclusivity Expiration | June 26, 2023 | **May 15, 2023** |
| Proposed Disclosure Statement Objection Deadline | May 18, 2023, at 4:00 p.m., prevailing Eastern Time | **May 30, 2023, at 4:00 p.m., prevailing Eastern Time** |
| Proposed Disclosure Statement Hearing | May 25, 2023, at 11:30 a.m., prevailing Eastern Time | **June 8, 2023, subject to Court availability** |
| Proposed Confirmation Objection Deadline | July 6, 2023, at 4:00 p.m., prevailing Eastern Time | **July 20, 2023, at 4:00 p.m., prevailing Eastern Time** |
| Proposed Confirmation Hearing | July 20, 2023, at 11:30 a.m., prevailing Eastern Time | **August 7, 2023, subject to Court availability** |
| Proposed Soliciting Exclusivity Expiration | August 28, 2023 | **August 11, 2023** |

7.      Notably, in the spirit of compromise, the Debtors have agreed to reduce the proposed Filing Exclusivity Period by *forty-two days*, from June 26, 2023, to May 15, 2023, and the proposed Soliciting Exclusivity Period by *seventeen* days from August 28, 2023, to August 11, 2023.

8.      This proposed timeline would be ambitious for any debtor.  Here, it is even more ambitious in the face of several obstacles the Debtors will have to overcome.  The sheer number of clients who will be solicited and eligible to participate in the plan voting process in these cases is daunting.  There are more than 300,000 clients and other creditors who ultimately will be eligible to cast a vote and will receive solicitation packages.  Tabulating the votes received after solicitation will require even more time.    In the suggested timeline above, the days between Disclosure Statement approval and the Confirmation Hearing are dictated by the statutory notice period and the time it will take the Debtors' claims agent to solicit and tabulate votes.  In an ordinary chapter 11 case, solicitation and tabulation takes slightly over a month.  When accounting

for the bare minimum of days it will take to send and count ballots, the above timeline has virtually

no additional cushion.

9.      The Debtors are navigating a hugely complex case, notwithstanding the

Committee's suggestions to the contrary.  The Debtors also need time to appropriately plan for

and address the concurrent Bermuda proceedings related to Debtor BlockFi International Ltd.,

including gaining that Court's approval (and potentially the approval of the Bermuda Monetary

Authority) of any contemplated transaction and reaching resolution surrounding the intercompany

arrangements and intricacies between Debtors.  This is taking place simultaneously with the issues

surrounding custodial cryptocurrency—the Ad Hoc Committee of Wallet Account Holders has

propounded, and the Debtors have responded to, over 100 requests for information in relation to

the legal status surrounding the "Platform Pause," a legal question currently sitting on the Court's

docket in "suspense."  All of this is in addition to prosecuting multiple adversary proceedings,

each of which has its own set of litigants, discovery, and motion schedules, and all of which will

inform final plan recoveries.

10.      The Committee acknowledges that these cases are complex while also

characterizing the Debtors as having a "relatively simple capital structure" and "no real obstacles

to creating an appropriate value-allocation and distribution scheme for a plan."[3]  In the Objection,

the Committee minimizes the truly massive amount of diligence it has received to-date in

connection with its ongoing Bankruptcy Rule 2004 investigation—including receiving responses

to well in excess of 100 diligence requests and taking seven depositions so far.  Surely, in a case

that they assert is "relatively simple," such a massive discovery process would be unwarranted.

Nevertheless, the Debtors have engaged with the Committee on all fronts, including responding to

---

[3]    *See* Objection ¶ 1.

a series of duplicative questions, holding meetings on their data structure, historical transactions, business lines, and providing them with other interviews with management.

11.     Quite frankly, it is astonishing that the Committee somehow asserted in its Objection that "the Debtors and the Committee have now completed all other investigations and analyses necessary to wrap up the bankruptcy."[4]  On the contrary, the Committee filed this Objection in the middle of an ongoing deposition of the Debtors' Chief Risk Officer, while the Committee was simultaneously scheduling two additional depositions for the week of April 24th and asking additional diligence questions.  In addition, the Committee has served subpoenas on two third-party accounting firms, both of which remain open.  This ongoing discovery demonstrates one of two conclusions: either (a) contrary to its representation to the Court, the Committee's investigation is ongoing, or (b) the Committee continues to waste time and estate assets on discovery and depositions it does not need because it has already concluded its investigation.[5]  Either answer (among other things) substantially undercuts the credibility of the Committee's "investigation."  The Committee has yet to locate any "there-there," yet it marches on—all to the detriment of its own constituency.

12.     Against this backdrop, the Debtors formulated the proposed extensions of the Exclusivity Periods and the revised confirmation timeline to balance the necessary expediencies of these Chapter 11 Cases against the remaining obstacles described above.  This is the first exclusivity extension that the Debtors have requested, a request that is routinely granted, especially when a Debtor has met their legal burden based on the progress made in these cases to date.

---

[4]    Objection ¶ 1.

[5]    The Committee suggests that some issues to be addressed and resolved involve "resolution and avoidance of intercompany transfers, [and] avoidance of payments to and on behalf of insiders," Objection ¶22(b), yet it has chosen to ask nearly zero relevant questions on any of these topics of any of the seven witnesses it has spent more than 30 hours of on-the-record time deposing so far.

Notwithstanding that progress, the Committee is clearly trying to bring these Chapter 11 Cases to a screeching halt for the opportunity to put forth its own competing plan, which would be based on nothing more than conjecture and jumping to conclusions regarding open issues. That was made clear in the Objection. The Committee is merely seeking to assert inappropriate control under the guise of inaccurate and misleading statements as to the status of these Chapter 11 Cases and the complexities facing the Debtors at this stage. This is exactly why an extension of exclusivity is appropriate.

13.     ***First***, the Committee suggests that in formulating a chapter 11 plan, the Debtors need only consider the fact that they "have cash" and "need a vehicle to distribute it to creditors."[6] As described herein and in the Motion, this is a massive oversimplification. There are many complexities that must be resolved before the Debtors, or any party, can propose a plan that can reliably make any distributions to creditors. Such issues include the treatment of potential preferences; the treatment of digital assets held in Wallet accounts and the legal status of the Platform Pause; resolving all issues surrounding BlockFi International Ltd.; the treatment of intercompany claims; running a fulsome sale process; determining whether the results of that process yield a value maximizing alternative transaction that will provide more value to creditors than a self-liquidating plan; assessing precisely what an alternative transaction, a self-liquidating plan, or some combination thereof would require; and ensuring that the Debtors have resources in place to ensure that their chosen plan can be effectuated while maximizing recoveries to creditors.[7] There is no spigot that can just be turned on for the Debtors' assets to be distributed. Notably, the Debtors attempted to immediately distribute client assets held in Wallet accounts, which the

---

[6]     Objection ¶ 11.

[7]     Objection ¶ 22(b).

Debtors do not believe is property of the estate, but were met with opposition from the Committee who wants to explore potential preference claims for these assets.  These complexities alone support the extensions the Debtors seek in their Motion.[8]

14.     ***Second***, the Committee miscites the support for its argument that the only question that matters here is whether the proposed extensions will move these Chapter 11 Cases forward.[9] As an initial matter, the court in *Dow Corning* refused to terminate the debtor's exclusivity period. *See generally In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich. 1997).  Instead, the court granted the debtor an extension of its exclusivity period despite the debtor ***expressly admitting*** that it filed an initial plan and disclosure statement "not . . . for the purpose of proceeding to confirmation, but merely as a tactic." *Id.* at 670.  (emphasis added).  Moreover, the court did not make this test "dispositive" writ large, as the Committee appears to suggest.[10]  Rather, the court found it to be an "overriding factor that weigh[ed] heavily against" terminating exclusivity ***in that case***. *Id.* at 670.  Thus, the Committee's reliance on *Dow Corning* is, at best, misplaced and, at worst, disingenuous.  There is ***zero*** authority for a case as complex as this proceeding without even a single extension of the exclusivity period (and the Committee cites no such authority).

15.     Contrary to the Committee's assertion, termination of exclusivity at this juncture would immediately imperil these cases rather than accelerate them toward a positive resolution.

---

[8]     *See* H.R. No. 95-595, at 231–32, 406 (1978), *preprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

[9]     Objection ¶¶ 20, 23 (repeatedly citing *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *accord In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006)).

[10]    Objection ¶ 23.

A rush to file a plan on the Committee's preferred timeline will effectively end the possibility of a sale transaction. Due to the regulatory complexities surrounding migrating a customer platform, and the concurrent international proceeding, any bid or deal structure will be built into a plan that the Debtors solicit and ultimately submit to the Court for confirmation. Hastily throwing together a plan that does not account for these complexities, or worse, introducing the uncertainty of potential competing plans, will significantly hamper all bidder discussions and may shut down one of the only remaining viable avenues to allow the Debtors to make distributions in kind, rather than in cash.

16.    The suggestion that there is only one possible path forward here—a liquidation—is wholly false, and the Committee knows it.[11] The Committee has received weekly updates from the Debtors since its appointment and, as recently as of this Monday, actively engaged in discussions with the Debtors regarding the contours of a go-forward business in the event the Debtors choose to pursue a third-party transaction. The Committee laments that it "should have the opportunity to assist" the Debtors in formulating a plan and that competing plans "may encourage [the Debtors] to negotiate more seriously, bringing them closer to the bargaining table."[12] These negotiations are ongoing, and the Committee has been an active participant. The Committee's protestations that the Debtors have not sufficiently engaged with them in the course of these Chapter 11 Cases are unfortunate, because they are simply untrue. The statements by the Committee are irresponsible.

---

[11]    *See* Objection ¶¶ 1, 10, 22(b).

[12]    Objection ¶¶ 12, 24.

17.     As far as the Debtors' legal burden is concerned, the Committee cherry-picks which *Dow Corning* factors[13] to (incorrectly) analyze, failing to address four of the seven other major factors that support the extensions of the Exclusivity Periods here—namely, that:  (a) the Debtors have made good faith progress, and plenty of it, toward exiting chapter 11; (b) the Debtors are paying their bills as they come due; (c) the Debtors' cases remain less than six months old and are well ahead of the pace set by comparable cryptocurrency bankruptcies;[14] and (d) an extension will not, and is not intended to, pressure creditors.[15]

18.     The Committee's concerns regarding the "burn" of professional fees in these cases are comical in the face of this back and forth and the reality that the Committee has itself imposed a truly massive sum of professional fees on the Debtors (and continues to do so).  And as the Committee's objection here vividly illustrates, the Committee objecting to nearly every motion the Debtors file (as has been the path to date) is the most significant contributor thus far to the burn. How allowing the Committee advisors to draft a competing plan would stem the flow of professional fees is a question the Committee does not and cannot answer, because it well knows that path would have exactly the opposite result.  BlockFi's clients should be concerned with this behavior.

---

[13]    *See In re Dow Corning Corp.*, 208 B.R. 661 at 664−65.

[14]    *See, e.g.*, *Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, *In re Voyager Digit. Holdings, Inc.*, No. 22-10943-MEW (Bankr. S.D.N.Y. Mar. 8, 2023) [Docket No. 1157] (confirming the debtor's plan more than eight months after the petitions were filed on July 5, 2022); *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief, In re Celsius Network LLC*, No. 22-10964-MG (Bankr. S.D.N.Y. Mar. 9, 2023) [Docket No. 2203] (granting an extension of the debtor's exclusivity period to file a plan and disclosure statement to a total of 261 days from the debtor's petition date).

[15]    Motion ¶ 15.

19.     As described herein, these cases have progressed at an aggressive pace since they were filed, especially when compared to similar cryptocurrency cases.  The Debtors have crafted the proposed timeline to minimize unnecessary delay, which is an effort to reduce the professional fee spend.  Each of the Debtors' decisions in these cases, including formulating an actionable plan, filing the Wallet Withdrawal Motion, initiating the Emergent Adversary Proceeding, and cooperating with the Committee's truly massive diligence requests (rather than fighting them or forcing the Committee to seek a Court Order attempting to justify them) were crafted to return the most value to the Debtors' stakeholders as quickly as possible.  The Debtors' professionals remain aligned toward this goal.  The notion that the Debtors are asking for extension of the Exclusivity Periods simply because "they can" is a tacit, if not an explicit, admission that Committee has no leg to stand on.  The Committee cannot credibly argue that a termination of exclusivity at this critical juncture will benefit the estates, or that the Debtors are seeking to extend the timeline associated with this case for no tactical reason.  On the contrary, the Debtors have been clear regarding their goal of returning client funds as soon as possible, as evidenced by the Wallet Withdrawal Motion, which would have returned approximately $300 million worth of funds back to Wallet clients had the Debtors' proposed path been accepted.

20.     Rather than assist the Debtors in this goal and work to progress these cases quickly, the Committee has instead imposed significant costs on the Debtors through a legal strategy of obstructionism, whether through its objections to many of the Debtors' fairly straightforward requests to date (including this one) or the continued prosecution of a Bankruptcy Rule 2004 examination for an "investigation" the Committee already says in its Objection is "complete."  The Debtors have been willing to indulge the Committee on a truly massive sum of requests to allow an investigation to be completed in earnest, and in an effort to reach a consensual agreement on a

plan. Based on the Committee's continued discovery efforts, while representing to the Court that its investigation is complete, there appears to be little if any legitimacy to its ongoing process. More broadly, taking their Objection on its face, the Committee appears blissfully ignorant to the complexities and realities of a plan process and the inefficiencies it has been the cause of.

21.     The Debtors have demonstrated ample cause to preserve exclusivity at this important juncture. Allowing any competing plans to be proposed at this stage would introduce chaos and waste precious resources at a time when the Debtors simply cannot afford it.

22.     For these reasons, as well as the reasons set forth in the Motion, the Court should grant the extension of the Filing Exclusivity Period for forty-eight days and the Solicitation Period for seventy-three days and overrule the Objection.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors submit that the Court should overrule the Objection and grant

the relief requested in the Motion.

Dated: April 14, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*