**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br><br>**HEARING DATE AND TIME:**<br>**April 27, 2023, at [●] a.m./ p.m. (EST)** |

**NOTICE OF HEARING ON DEBTORS'**
**EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) GRANTING**
**A LIMITED WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION**
**345(B) OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

     **PLEASE TAKE NOTICE** that a hearing on the *Debtors' Emergency Motion for Entry of*

*an Order (I) Granting a Limited Waiver of the Deposit Requirements of Section 345(b) of the*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

*Bankruptcy Code and (II) Granting Related Relief* (the "<u>Motion</u>") will be held on **April 27, 2023 at [●] [a.m./ p.m.] (prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "<u>Hearing</u>") before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608.

**PLEASE TAKE FURTHER NOTICE** that the Motion sets forth the relevant factual bases upon which the relief requested should be granted.  A proposed order granting the relief requested in the Motion is attached as <u>Exhibit A</u> to the Motion.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion may be presented orally at the hearing.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Kroll Restructuring Administration, LLC at https://restructuring.ra.kroll.com/blockfi.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: April 21, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) GRANTING A LIMITED WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

TO:  THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (the "Motion"):[2]

## Preliminary Statement

1.      As detailed in the Cash Management Motion, as of the Petition Date, of the Debtors' 43 bank accounts in existence, 38 bank accounts were held at either Silvergate Bank ("Silvergate"), Silicon Valley Bank ("SVB"), or Signature Bank ("Signature").  On March 8, 2023, Silvergate, the leading bank in the cryptocurrency sector and the first casualty in the financial system collapse, announced it would wind down operations and return deposits to customers.[3]  The following week, on March 10, 2023, the Federal Deposit Insurance Corporation (the "FDIC") took control of SVB in what became the second largest bank failure in the history of the United States, and the largest since the collapse of Washington Mutual during the 2008 financial crisis.[4]  This was almost entirely unforeseeable:  SVB collapsed in approximately 24 hours,[5] just two weeks after its external auditor, KPMG LLC, gave it a clean bill of health.[6]  Two days later, the FDIC also took control of Signature.[7]

---

[2]   Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the *Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 17] (the "First Day Declaration").

[3]   Rachel Louise Ensign, Crypto Bank Silvergate to Shut Down, Repay Deposits, Wall St. J. (March 8, 2023), https://www.wsj.com/articles/crypto-bank-silvergate-to-shut-down-repay-deposits-4bc2a469.

[4]   Rachel Louise Ensign, *et al.*, *Silicon Valley Bank Closed by Regulators, FDIC Takes Control*, Wall St. J. (March 10, 2023), https://www.wsj.com/articles/svb-financial-pulls-capital-raise-explores-alternatives-including-possible-sale-sources-say-11de7522?mod=article_inline; David French, *et al.*, *SVB is largest bank failure since 2008 financial crisis*, Reuter's (Mar. 11, 2023), https://www.reuters.com/business/finance/global-markets-banks-wrapup-1-2023-03-10/.

[5]   Ensign, *supra* note 1 (noting that depositors attempted to withdraw approximately 25 percent of SVB's total deposits on Thursday, March 9, 2023).

[6]   Jonathan Weil and Jean Eaglesham, *KPMG Gave SVB, Signature Bank Clean Bill of Health Weeks Before Collapse*, Wall St. J. (Mar. 13, 2023), https://www.wsj.com/articles/kpmg-faces-scrutiny-for-audits-of-svb-and-signature-bank-42dc49dd?mod=article_inline.

[7]   Hannah Lang and Nupur Anand, *Signature Bank becomes next casualty of banking turmoil after SVB*, Reuters

2.       The Debtors have steadfastly sought to protect their cash.  The Debtors negotiated

and filed the *Application in Lieu of Motion in Support of Entry of Stipulation and Order Between*

*the Debtors and Silvergate Bank Regarding Silvergate Bank's Release of Funds from the Reserve*

*Account* [Docket No. 576] (the "Silvergate Stipulation") which provided for the immediate release

of $9.85 million in cash from an ACH chargeback reserve account held at Silvergate.  The Court

approved the Silvergate Stipulation on March 3, 2023.[8]  Five days later, on March 8, 2023,

Silvergate's parent holding company announced it would wind down and voluntarily liquidate the

bank.[9]  Although approximately $150,000 of the Debtors' cash is still held at Silvergate, the bank

has committed to return those funds by the end of May 2023.

3.       Similarly, as soon as the Debtors became aware of a potential run on the bank at

SVB, the Debtors evaluated their accounts at SVB and determined to move approximately

$37 million in cash from SVB to limit the Debtors' exposure to the bank in the event of a collapse.

The Debtors determined not to move approximately $235 million held in shares of money market

funds, for which SVB was custodian only.   Specifically, the cash sweep account agreement

provided that "Shares in the Fund(s) are held by the Bank as your agent.  In the event of the Bank's

failure, the FDIC should recognize your ownership interest in the shares.  Instead of being a general

creditor of the Bank, you should be entitled to the return in full of your shares in the Fund(s) after

completing any procedures required by the FDIC." Accordingly, the Debtors, in consultation with

---

(March 13, 2023), https://www.reuters.com/business/finance/new-york-state-regulators-close-signature-bank-2023-03-12/.

[8]  *Stipulation and Order Between the Debtors and Silvergate Bank Regarding Silvergate Bank's Release of Funds from the Reserve Account* [Docket No. 577].

[9]  *Silvergate Capital Corporation Announces Intent to Wind Down Operations and Voluntarily Liquidate Silvergate Bank*, Silvergate Capital Corp. (Mar. 8, 2023), https://ir.silvergate.com/news/news-details/2023/Silvergate-Capital-Corporation-Announces-Intent-to-Wind-Down-Operations-and-Voluntarily-Liquidate-Silvergate-Bank/default.aspx.

their advisors, determined that the safest course of action to protect their cash was to leave the money market funds alone instead of liquidating them into cash, at which point those funds would be subject to SVB counterparty risk.

4.      During and since these bank failures, the Debtors have worked with the U.S. Trustee and the Committee to find a safe depository for their funds.  Over the past month, the Debtors, their management team, and the Committee have collectively reached out to over 50 banks in an effort to open new accounts at authorized depositories for the District of New Jersey to ensure compliance with section 345(b) of the Bankruptcy Code.  Although many banks refuse to offer services to companies in the cryptocurrency industry, ultimately, the Debtors established new accounts at Webster Bank, Western Alliance Bank, and Peapack-Gladstone Bank, each of which is an authorized depository in the District of New Jersey.

5.      Following the collapse of SVB, the U.S. Trustee filed the *Motion of the United States Trustee to Compel the Debtors to Comply with: (i) Section 345(b) of the Bankruptcy Code; and (ii) the Final Cash Management Order* [Docket No. 599] (the "Motion to Compel"), in which the U.S. Trustee maintains that money market funds are not compliant with section 345(b) of the Bankruptcy Code as a matter of policy.  At the U.S. Trustee's urging, the Debtors agreed to convert the money market funds into cash that is now being held at SVB Bridge Bank.  Although SVB Bridge Bank was once guaranteed by the full faith and credit of the United States government, after its acquisition by First Citizens Bank, the standard FDIC insurance went back into effect, leaving the Debtors with significant uninsured amounts (the "Remaining Funds").

6.      In an effort to come into compliance with section 345(b) of the Bankruptcy Code, the Debtors have requested a surety bond from all depositories with which they hold funds, but such efforts have met with little success to date:  the surety bond market as we once knew it simply

4

no longer exists in the face of the precarious market conditions currently facing the banking system.  Given that insurance is limited, surety bonds cannot be obtained at this juncture, and banks have expressed no desire to collateralize the full amount of the Debtors' funds with securities, the Debtors have come to the conclusion that the safest places for these funds are in (a) an insured cash sweep program with Webster Bank for an amount up to $25 million (the "ICS Funds") and (b) one or more money market funds that only invest in U.S. government obligations and/or U.S. government obligations themselves in an amount up to $275 million with Webster Bank (the "Money Market Funds").

7.    Accordingly, the Debtors seek a waiver of section 345(b) of the Bankruptcy Code to safeguard the Remaining Funds, to the extent they are in excess of the FDIC insurance limit, through ICS Funds and Money Market Funds.  The requested relief will not only afford the Debtors the necessary protection to safeguard the Remaining Funds but will also help advance their primary goal of maximizing recoveries for their clients.  The Debtors believe that in light of the historic financial turmoil affecting all businesses, especially those in the cryptocurrency industry, the movement of the Remaining Funds to ICS Funds and Money Market Funds satisfies this objective and should be authorized.

8.    For these reasons, as well as the reasons further detailed herein, the Court should grant the Debtors' request for a limited waiver of section 345(b) of the Bankruptcy Code.

### **Requested Relief**

9.    The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) granting a limited waiver of the requirements of section 345(b) of the Bankruptcy Code and (b) granting related relief.

**Jurisdiction and Venue**

10.    The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

11.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.    The statutory bases for the relief requested herein are sections 105(a) and 345 of

title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002(a)

and 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule

9013-2(c) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey

(the "Local Rules").

**Background**

13.    On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their

businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth

in greater detail in the First Day Declaration and incorporated by reference herein.

14.    The Debtors are operating their businesses and managing their properties as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29,

2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint

administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

On December 21, 2022,  the  United  States  Trustee  for  the  District  of  New  Jersey

(the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

## Basis for Relief

I.      **The Court Should Waive Strict Compliance with Section 345(b) for Cause**.

15.     Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposit or investment of money of bankruptcy estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). Pursuant to section 345(b) of the Bankruptcy Code, any deposit or other investment made by a debtor, except those that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," must be secured by a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the United States Trustee or by the deposit of securities of the kind specified in 31 U.S.C. § 9303. *See* 11 U.S.C. § 345(b). Section 9303 of title 31 of the United States Code provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. *See* 31 U.S.C. § 9303. Moreover, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16.     Courts may waive compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines "for cause." 11 U.S.C. § 345(b). "Cause," for purposes of section 345(b), is not defined in the Bankruptcy Code. Courts apply a "totality of the circumstances" test when determining whether cause exists to waive compliance with section 345(b). *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999); *see also In re Ditech Holding Corp.*, 605

7

B.R. 10, 17–18 (citing *Serv. Merch.*).[10]  Courts have found the following factors relevant to this

inquiry:

> (a) the sophistication of the debtor's business;
>
> (b) the size of the debtor's business operations;
>
> (c) the amount of investments involved;
>
> (d) the bank ratings of the financial institutions where debtor-in-possession funds are held;
>
> (e) the complexity of the case;
>
> (f) the safeguard in place within the debtor's own business of insuring the safety of funds;
>
> (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
>
> (h) the benefit to the debtor;
>
> (i) the harm, if any, to the estate; and
>
> (j) the reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*Serv. Merch.*, 240 B.R. at 896; *see Ditech*, 605 B.R. at 19–20 (applying, but declining to

be bound by, the *Serv. Merch.* Factors).

17.    Ample cause exists here to waive the requirements under section 345(b) of the

Bankruptcy Code.  **First**, these chapter 11 cases are large and complex due in no small part to,

among other things, the Debtors' large and sophisticated business that comprises a complex cash

---

10  The Court's ability to excuse strict performance of the deposit and investment requirements of section 345(b) "for cause" arises from the 1994 amendments to the Bankruptcy Code.  *See* H.R. Rep. 103-834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994) ("Section 345 of the Code governs investments of funds of bankruptcy estates. The purpose is to make sure that funds of a bankrupt that are obliged to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankruptcy estate. Under current law, all investments are required to be FDIC insured, collateralized or bonded. While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors.  This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Systems, Inc.*, 33 F.3d 294 (3d Cir. 1994).").

and cryptocurrency management system allowing the Debtors to serve over 300,000 U.S. and international clients.

18. **Second**, as noted above, section 9303 of title 31 of the United States Code provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead place funds into U.S. treasuries. *See* 31 U.S.C. § 9303. Here, the Debtors' proposal is non-controversial. The Debtors are proposing to move the Money Market Funds to highly-rated money market funds like the BlackRock Liquidity FedFund, which invests in "U.S. treasury bills, notes and other obligations issued or guaranteed by the U.S. government, its agencies or instrumentalities."[11] Thus, not only do the Debtors believe that the Money Market Funds will be safeguarded in securities that are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," but they also believe that such securities are the kind of securities specified in 31 U.S.C. § 9303.

19. Furthermore, the ICS Funds, by function of inclusion in such program, will be fully insured. In an ICS Fund, the Remaining Funds will be held across multiple banks in amounts covered by FDIC insurance. Even if each of these banks is not an authorized depository in the District of New Jersey, this program ensures the ICS Funds' protection by virtue of FDIC insurance alone.[12] This obviates the need for any additional insurance or collateral need for the Debtors.

---

[11]  BLF FedFund, BlackRock, https://www.blackrock.com/cash/en-us/products/282760/blf-fedfund (last visited Apr. 20, 2023).

[12]  "No depositor has ever lost a penny of insured deposits since the FDIC was created in 1933." FDIC, *When a Bank Fails – Facts for Depositors, Creditors, and Borrowers*, https://www.fdic.gov/consumers/banking/facts/#:~:text=No%20depositor%20has%20ever%20lost,FDIC%20was%20created%20in%201933 (last visited Apr. 20, 2023).

20.      **_Finally_**, in light of the potential harm to the Debtors' estates if a bank where they are holding funds above the FDIC limit fails, the Debtors believe the relief requested herein is reasonable.  The difficulty that the Debtors have faced in finding a home that is in strict compliance with section 345(b) for the Remaining Funds represents the exact circumstances under which Congress granted the Court discretion to provide relief from section 345(b).  As discussed above, three of the Debtors' banks have collapsed over the course of the last month and the surety bond market has all but evaporated.  Further, most banks are reluctant to take on a new cryptocurrency client, notwithstanding that the Remaining Funds are in fiat currency.  The Debtors have over 300,000 clients and other creditors who depend on the safety of the Remaining Funds for the ultimate distribution under a chapter 11 plan.  The Debtors' primary goal is to safeguard all of its funds for the benefit of its clients, and the Debtors request flexibility to deposit the Remaining Funds in accounts that are either backed by the FDIC, in the case of ICS Funds, or invested in money market funds holding U.S. government obligations and/or U.S. government obligations themselves, in the case of the Money Market Funds, as they evaluate the ever-changing banking system.

21.      The Debtors believe that this relief is narrowly tailored to protect the Debtors' Remaining Funds amid significant financial uncertainty.  In light of these factors and the safety of the investment vehicles that the Debtors propose to utilize, the Debtors believe that sufficient cause exists to allow the Debtors to deviate from the investment guidelines set forth in section 345(b) of the Bankruptcy Code.

## Waiver of Memorandum of Law

22.     The Debtors request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

23.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

24.     No prior request for the relief sought in this Motion has been made to this or any other court.

**<u>Notice</u>**

25.      The Debtors will provide notice of this Motion to the following parties and/or their

respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey;

(b) the Committee; (c) the United States Attorney's Office for the District of New Jersey; (d) the

Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys

general in the states where the Debtors conduct their business operations; and (g) any party that

has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the

nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter an order, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: April 21, 2023

/s/ Michael D. Sirota
_____
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## ORDER (I) GRANTING A LIMITED WAIVER OF
## THE DEPOSIT REQUIREMENTS OF SECTION 345(B)
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) GRANTING A LIMITED WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF |

Upon the *Debtors' Emergency Motion for Entry of an Order (I) Granting a Limited Waiver of the Deposit Requirements of Section 345(a) of the Bankruptcy Code and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) granting a limited waiver of the requirements of section 345(b) of the Bankruptcy Code and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estate, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) GRANTING A LIMITED WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF |

1.      The Motion is **GRANTED** on a basis as set forth herein.

2.      Notwithstanding anything to the contrary in the *Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions, (II) Granting Administrative Expense Status To Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* [Docket No. 306], or elsewhere, the requirements of section 345 of the Bankruptcy Code, to the extent applicable and solely in connection with these chapter 11 cases, are waived solely with respect to the Remaining Funds.

3.      The Debtors are authorized to deposit the ICS Funds in the requisite insured cash sweep program through Webster Bank.

4.      The Debtors are authorized to invest the Money Market Funds in one or more money market funds that only invest in U.S. government obligations and/or U.S. government obligations themselves through Webster Bank.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

(Page | 5)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) GRANTING A LIMITED WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF |

8.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

9.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

10.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.