**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and
Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DECLARATION OF
MARK A. RENZI IN SUPPORT OF DEBTORS' <u>EMERGENCY</u>
MOTION FOR ENTRY OF AN ORDER (I) GRANTING A LIMITED
WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION 345(B)
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

1.  I, Mark A. Renzi, hereby declare under penalty of perjury:

2.  I am the Chief Restructuring Officer (the "<u>CRO</u>") to the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned Chapter 11 Cases.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

3. I submit this declaration (this "Declaration") in support of the relief requested in the *Debtors' Emergency Motion for Entry of an Order (I) Granting a Limited Waiver of the Deposit Requirements of Section 345(a) of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 770] (the "Motion").[2] Unless otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge, belief, and opinion; (b) information learned from my review of relevant documents, books, and records; (c) information I have received from the Debtors' employees or advisors and/or employees of Berkeley Research Group, LLC ("BRG") working directly with me or under my supervision and direction; or (d) my experience as an industry professional.

4. I am authorized to submit this Declaration on behalf of the Debtors, and, if I were called upon to testify, I could and would testify to the facts set forth herein.

### Background and Qualifications

5. I am the Debtors' CRO. I am also a Managing Director and the Head of the Corporate Finance Financial Institutions Group for BRG. I have over twenty years of experience in the practice of turnarounds and restructurings. I have considerable experience in providing restructuring advisory and restructuring management services in reorganization proceedings and working with senior management teams in the areas of financial and operational restructuring, loan workouts, and business planning. I have advised and served in management positions involving many turnaround engagements.

6. In the current cryptocurrency space in particular, in addition to serving as CRO of the Debtors, I lead the engagement for BRG as financial advisor to the Debtors in *In re Voyager Digital Holdings, Inc.* No. 22-10943 (MEW) (Bankr. S.D.N.Y.) and co-lead the engagement for

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

BRG as financial advisor to the Official Committee of Unsecured Creditors in *In re Genesis General HoldCo LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y.).

### **The Debtors' Efforts at Safeguarding Their Cash**

7.      Throughout these Chapter 11 Cases, and particularly in the wake of the unforeseen collapse of Silvergate Bank, SVB, and Signature Bank, I have advised the Debtors on available banking options and have overseen the Debtors' steadfast efforts to protect their cash.  In early March, after getting news about Silvergate's financial situation, the Debtors negotiated and filed the Silvergate Stipulation, which provided for the immediate release of $9.85 million in cash from an ACH chargeback reserve account held at Silvergate prior to Silvergate's eventual collapse five days later.  On March 8, 2023, Silvergate's parent holding company announced it would wind down and voluntarily liquidate the bank.  At that time, the Debtors maintained $150,000 of cash in the reserve account at Silvergate, which funds the bank has committed to return by the end of May 2023.

8.      Similarly, as soon as the Debtors became aware of issues at SVB, the Debtors swiftly evaluated their accounts at SVB and determined to move approximately $37 million in cash from SVB to limit the Debtors' exposure to the bank in the event of a collapse.  Ultimately, after much discussion with the Debtors' and Committee's advisors, the Debtors determined not to move approximately $235 million held in shares of money market funds, for which SVB was custodian only.  Specifically, the cash sweep account agreement governing the money market funds provided that "Shares in the Fund(s) are held by the Bank as your agent.  In the event of the Bank's failure, the FDIC should recognize your ownership interest in the shares.  Instead of being a general creditor of the Bank, you should be entitled to the return in full of your shares in the Fund(s) after completing any procedures required by the FDIC."  Accordingly, the Debtors, in

3

consultation with their advisors, determined that the safest course of action to protect their cash was to leave the money market funds alone instead of liquidating them into cash, at which point those funds would be subject to SVB counterparty risk.

9. In the wake of the SVB collapse, the Debtors, their advisors, and the Committee worked together to attempt to open new bank accounts at authorized depositories in the District of New Jersey but faced obstacles due to the unwillingness of many banks to open accounts with a cryptocurrency company. Ultimately, the Debtors established new accounts at Webster Bank, Western Alliance Bank, and Peapack-Gladstone Bank, each of which is an authorized depository in the District of New Jersey. After deposits at SVB became fully guaranteed by the FDIC, at the U.S. Trustee's urging, the Debtors converted the shares held in money market funds into cash, which they are currently holding at SVB Bridge Bank after its acquisition by First Citizens Bank.

10. Over the course of the last two months, the Debtors and their advisors have remained in frequent communication with the U.S. Trustee and the Committee regarding the difficulties faced in coming into strict compliance with section 345(b) including providing updates on where the Debtors' cash is being held, the opening of new bank accounts at authorized depositories, and the status of the new banks' attempts to secure security bonds and/or post collateral. As we have repeatedly relayed to the U.S. Trustee, surety bonds are no longer available for many due to bank volatility and each of the Debtors' banks have rejected any proposal to collateralize the Debtor funds held.

11. In light of the hardships and repeated frustrations in seeking to strictly comply with section 345(b), the Debtors and their advisors now believe it is safest to place these funds in (a) an insured cash sweep program with Webster Bank, Peapack-Gladstone Bank, or other similar authorized depository for an amount up to $125 million per tax identification number (the "<u>ICS</u>

4

Funds") and (b) one or more money market funds that only invest in U.S. government obligations and/or U.S. government obligations themselves in an amount up to $275 million with Webster Bank or other similar authorized depository (the "Money Market Funds").[3] Based on my experience, I believe that these options are not only the most secure options available under the circumstances but offer the least disruption to the Debtors' cash management system and best preserve the Debtors' ability to access their liquid assets.

12. Accordingly, the Debtors seek a waiver of section 345(b) of the Bankruptcy Code to safeguard the Remaining Funds, to the extent they are in excess of the FDIC insurance limit, through ICS Funds and Money Market Funds. The requested relief will not only afford the Debtors the necessary protection to safeguard the Remaining Funds but will also help advance their primary goal of maximizing recoveries for their clients. The Debtors believe that in light of the historic financial turmoil affecting the banking industry, the movement of the Remaining Funds to ICS Funds and Money Market Funds satisfies this objective and should be authorized.

**Cause Exists to Grant a Limited Waiver of Section 345(b) Under the Circumstances**

13. Ample cause exists here to waive the requirements under section 345(b) of the Bankruptcy Code. *First*, these chapter 11 cases are large and complex due in no small part to, among other things, the Debtors' large and sophisticated business that comprises a complex cash and cryptocurrency management system allowing the Debtors to serve over 300,000 U.S. and

---

[3] In the Motion, the Debtors requested authority to place an amount up to $25 million in an insured cash sweep program with Webster Bank and an amount up to $275 million in one or more money market funds that only invest in U.S. government obligations and/or U.S. government obligations themselves with Webster Bank. In light of continuing conversations with banks, the Debtors request authority to place an amount up to $125 million per tax identification number in an insured cash sweep program with Webster Bank, Peapack-Gladstone Bank, or other similar authorized depository and an amount up to $275 million in one or more money market funds that only invest in U.S. government obligations and/or U.S. government obligations themselves with Webster Bank or other similar authorized depository. These changes are also reflected in a revised proposed order filed contemporaneously herewith.

5

international clients.  **Second**, the Debtors' proposal to invest in highly-rated money market funds like the BlackRock Liquidity FedFund, in my view, presents a low risk way to safeguard the Debtors' assets against future instability in the financial system and counterparty risk associated therewith.

14. Furthermore, the ICS Funds, by function of inclusion in such program, will be fully insured.  Even if each of these banks is not an authorized depository in the District of New Jersey, this program ensures the ICS Funds' protection by virtue of FDIC insurance alone.  This obviates the need for any additional insurance or collateral need for the Debtors.

15. **Finally**, in light of the potential harm to the Debtors' estates if a bank where they are holding funds above the FDIC limit fails, and based on my experience, I believe the relief requested herein is reasonable.  As discussed above, three of the Debtors' banks have collapsed over the course of the last month and the surety bond market has all but evaporated.  Further, most banks are reluctant to take on a new cryptocurrency client, notwithstanding that the Remaining Funds are in fiat currency.  The Debtors have over 300,000 clients and other creditors who depend on the safety of the Remaining Funds for the ultimate distribution under a chapter 11 plan.  The Debtors' primary goal is to safeguard all of its funds for the benefit of its clients, and the Debtors request flexibility to deposit the Remaining Funds in accounts that are either backed by the FDIC, in the case of ICS Funds, or invested in money market funds holding U.S. government obligations and/or U.S. government obligations themselves, in the case of the Money Market Funds.

16. I believe that this relief is narrowly tailored to protect the Debtors' Remaining Funds amid significant financial uncertainty.  In light of these factors and the safety of the investment vehicles that the Debtors propose to utilize, I believe that sufficient cause exists to

allow the Debtors to deviate from the investment guidelines set forth in section 345(b) of the Bankruptcy Code.

[remainder of page left intentionally blank]

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

April 25, 2023                                    */s/ Mark A. Renzi*
                                                  Mark A. Renzi
                                                  Chief Restructuring Officer