UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:       jeffrey.m.sponder@usdoj.gov
                  lauren.bielskie@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>BlockFi Inc., *et al.*[1]<br><br>                                   Debtor. | Chapter 11<br><br>Case No. 22-19361 (MBK)<br>Jointly Administered<br><br>Hearing Date: April 27, 2023 at 1:00 p.m.<br><br>Honorable Michael B. Kaplan, Chief Judge |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) GRANTING A LIMITED WAIVER OF THE DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPCY CODE AND (II) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three and Nine ("U.S. Trustee"), through his undersigned counsel, files this objection ("Objection") to the Debtors' *Emergent Motion for Entry of an Order (I) Granting a Limited Waiver of the Deposit Requirements of Section 345(b) of the Bankruptcy Code and (II) Granting Related Relief* ("Motion") (Dkt. 770) for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).

authority to enter into (a) an insured cash sweep program with Webster Bank for an amount up to $25 million (the "ICS Funds") and (b) one or more money market funds that only invest in U.S. government obligations and/or U.S. government obligations themselves in an amount up to $275 million with Webster Bank (the "Money Market Funds"), and respectfully states:

## PRELIMINARY STATEMENT

The U.S. Trustee objects to the Debtors' Motion for a limited waiver of the requirements of 11 U.S.C. § 345(b). Through the Motion, the Debtors request the ability to place deposits into an insured cash sweep program as well as money market funds, both with Webster Bank. The U.S. Trustee submits that cause does not exist to waive the requirements of section 345(b). Requiring the Debtors' compliance with section 345(b) is necessary to protect estate property and to provide the appropriate reporting, monitoring and oversight of the Debtors' post-petition financial transactions as contemplated and required by the Chapter 11 process. Debtors' current bank, First Citizens Bank, recently executed a Uniform Depository Agreement ("UDA") and the U.S. Trustee continues to work with First Citizens Bank to open an account with the Federal Reserve Bank and fully collateralize all current balances. Accordingly, under the facts and circumstances, the request to waive the requirements of section §345(b) should be denied.

## JURISDICTION

1. The Court has jurisdiction to hear this Motion.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes

2

beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Moreover, 11 U.S.C. § 345 sets forth a statutory role for the U.S. Trustee in ensuring compliance with obligations imposed on the Debtors to protect funds of the estate.

## STATEMENT OF RELEVANT FACTS AND BACKGROUND

### General Case Background

3. On November 28, 2022 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). *See* Case Nos. 22-19361, 22-19363, 22-19365, 22-19366, 22-19367, 22-19368, 22-19370, 22-19371 and 22-19374 at Dkt. 1.

4. On November 29, 2022, the Court entered an Order directing that these cases be jointly administered. *See* Dkt. 42.

5. The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. No trustee or examiner has been appointed in these chapter 11 cases.

7. On December 21, 2022, the U.S. Trustee appointed an Official Committee of Unsecured Creditors. *See* Dkts. 130 and 131.

8. BlockFi "provide[s] credit services to markets with limited access to simple financial products." *See* Dkt. 17 at ¶ 22. "BlockFi acquires clients by offering custom products and services that enable its clients to meet their financial goals, and continuously expands its product suite to deepen its relationship with its clients over time." *See id.* at ¶ 29. "BlockFi serves retail clients through web and mobile applications, and its products enable individuals and small businesses to store and/or earn interest on, buy and sell, borrow U.S. Dollars secured by, and earn (via credit card rewards program)

digital assets." *See id*. at ¶ 30. On the institutional side, "BlockFi provides hedge funds, market makers, proprietary trading firms, trading desks, cryptocurrency miners, exchanges, and corporations with bespoke financing, trading, and treasury solutions relating to digital assets." *See id*.

**Cash Management Motion and Order**

9. On November 28, 2022, the Debtors filed a *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated With the Cash Management System, and (D) Continue Performance of Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* ("Cash Management Motion"). *See* Dkt. 7.

10. On January 17, 2023, the Court entered the Final Cash Management Order. *See* Dkt. 306.

11. The Final Cash Management Order includes the following paragraph as requested by the U.S. Trustee:

> With respect to all Bank Accounts, the Debtors shall have 30 days from entry of this Final Order or such longer time as agreed with the U.S. Trustee to either comply with section 345(b) of the Bankruptcy Code, make such other arrangements as agreed with the U.S. Trustee or obtain the Court's approval for any deviation from section 345(b), without prejudice to the Debtors' right to seek an extension of the time to comply; provided the Debtors' and the U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Cash Management Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully preserved.

*See* Dkt. 306, ¶ 18.

**Debtors' Motion for a Limited Waiver of Section 345(b)**

12. On April 21, 2023, the Debtors filed the Motion seeking a waiver of section 345(b) and authority to hold certain funds as ICS Funds and Money Market Funds. *See* Dkt. 770.

13. Specifically, the Debtors seek to deposit up to $25 million at Webster Bank in an insured cash sweep program ("ICS Program") and invest up to an additional $275 million at Webster Bank in one or more money market funds ("Money Market Funds") (and collectively, the "Remaining Funds"). *See id*. at ¶ 6.

14. The Remaining Funds are currently held at First Citizens Bank after its acquisition of SVB Bridge Bank. The Debtors state that "[a]lthough SVB Bridge Bank was once guaranteed by the full faith and credit of the United States government, after its acquisition by First Citizens Bank, the standard FDIC insurance went back into effect, leaving the Debtors with significant uninsured amounts." *See id*.

15. The Debtors represent that they requested surety bonds from their depositories but "[g]iven that insurance is limited, surety bonds cannot be obtained at this juncture[.]" *See id*. Further, "banks have expressed no desire to collateralize the full amount of Debtors' funds with securities[.]" *See id*.

16. As a result, the Debtors seek relief from section 345(b).

17. On April 25, 2023, the Debtors filed the *Declaration of Mark A. Renzi in Support of Debtors' Emergency Motion for Entry of an Order (I) Granting a Limited Waiver of the Deposit Requirements of Section 345(B) of the Bankruptcy Code and (II) Granting Related Relief* ("Renzi Decl."). *See* Dkt. 784.

18. The Renzi Decl. sets forth: "we have repeatedly relayed to the U.S. Trustee [that] surety bonds are no longer available for many due to bank volatility and each of the Debtors' banks have rejected any proposal to collateralize the Debtor funds held." *See* Dkt. 784 at ¶ 10.

**Webster Bank**

19. The Debtors correctly set forth that Webster Bank is an Approved Depository in the State of New Jersey. Webster Bank only recently entered into a Uniform Depository Agreement ("UDA") with the U.S. Trustee, having executed the UDA on or about March 29, 2023.

20. As with any Approved Depository, Webster Bank agreed under the UDA that for any funds that exceed the FDIC insurance limits, it would obtain a surety bond, or pledge sufficient collateral.

21. If, as the Debtors say, Webster Bank cannot obtain surety bonds or is unwilling to put up the necessary collateral, Webster Bank will be non-compliant under the UDA. *See* Dkt. 770 at ¶ 6 ("banks have expressed no desire to collateralize the full amount of the Debtors' funds[.]").

**First Citizens Bank**

22. The Remaining Funds are held at First Citizens Bank, formerly SVB Bridge Bank. *See* Dkt. 770 at ¶ 5 and Dkt Nos. 761 and 764.

23. At the time First Citizens Bank acquired SVB Bridge Bank, First Citizens Bank was not an approved depository for New Jersey. *See* Certification of William Ziemer, CIRA ("Ziemer Cert.") filed in support of this Objection, at ¶ 5.

24. Following a call on April 25, 2023, with representatives of First Citizens Bank and representatives of the U.S. Trustee, First Citizens Bank executed a UDA and provided the executed document to the OUST. *See id.* at ¶ 6.

25. On April 26, 2023, First Citizens Bank provided the U.S. Trustee with a breakdown of all Debtor funds on deposit with First Citizens Bank. *See id.* at ¶ 7.

26. The U.S. Trustee continues to work with First Citizens Bank to open an account with the Federal Reserve Bank ("FRB") and fully collateralize all current balances. *See id.* at ¶ 8.

27. The U.S. Trustee anticipates the process to open the account with the FRB will begin today, April 27, 2023, and can be completed in 48 hours. *See id.* at ¶ 9.

28. Once the FRB account is open, collateralization can occur. *See id.* at ¶ 10.

29. On April 26, 2023, the undersigned relayed to the Debtors the progress made with First Citizens Bank in executing the UDA and progress towards collateralizing all current balances.

## ARGUMENT

### A. Statutory Framework

30. Section 345(b) [2] of the Bankruptcy Code imposes certain requirements as to where

---

[2] Bankruptcy Code § 345(b) provides that:

(b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1) a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

estate funds can be held in order to protect the funds for the benefit of all creditors. Unless a deposit or investment is insured or guaranteed by the United States (or a federal department, agency, or instrumentality) or backed by the full faith and credit of the United States, the trustee or debtor in possession must require from an entity with whom estates funds are deposited to post a bond in favor of the United States or, in the alternative, deposit securities of the type specified in section 9303 of title 31 of the United States Code as security for the investment or deposit. *See* 11 U.S.C. § 345(b). *Id.*

31. Section 345(a) of the Bankruptcy Code requires the trustee or a debtor in possession to deposit or invest money of the estate so that it will result in the "maximum reasonable net return. . . [while] taking into account the safety of such deposit or investment." Section 345(b) requires that estate funds be deposited or invested so as to ensure that the funds are protected for the benefit of creditors. *See* 11 U.S.C. § 345(b). A court may waive the requirements of § 345 upon the showing of "cause." *Id.*

32. Generally, unless the funds are insured, guaranteed, or backed by the full faith and credit of the United States Government or its agencies, the institution holding the estate funds must post a bond in favor of the United States or, in the alternative, deposit securities pursuant to 31 U.S.C. § 9303 as security. To ensure that trustees and debtors in possession meet their responsibilities to safeguard funds in accordance with section 345, the U.S. Trustee monitors fiduciaries and depositories, and requires that chapter 11 estate assets be held in debtor-in-possession accounts at "authorized depositories," *i.e.*, those that have entered into a UDA with the U.S. Trustee. *See* United States Trustee Program Policy and Practices Manual, Volume 7, "Banking and Bonding," ("Manual"), §§ 7-1.1 – 7-1.2.[3]

---

[3] Available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual

33. The Uniform Depository Agreement between the depository and the U.S. Trustee requires the depository to maintain collateral, unless an order of the bankruptcy court provides otherwise, in an amount of no less than 115 percent of the aggregate bankruptcy funds on deposit in each bankruptcy estate that exceeds the FDIC insurance limit. *See* Manual, § 7- 1.2.1. Pursuant to the UDA, each authorized depository is required to provide quarterly reports for all bankruptcy estate accounts on deposit at all branches of the depository within the district. *See* Manual, § 7-1.3.2.

34. Pursuant to the U.S. Trustee's responsibilities under 11 U.S.C. § 345 and 28 U.S.C. § 586, the U.S. Trustee entered into UDAs with multiple financial institutions. The UDA requires the signatory bank to collateralize or obtain a surety bond for all estate monies exceeding FDIC insurance limits, pursuant to Section 345(b) of the Bankruptcy Code. The UDA also requires banks to provide the U.S. Trustee with reports of all accounts that a debtor maintains at the bank on a quarterly basis.

35. The UDA also aims to safeguard estates monies on deposit at UDA banks if those banks encounter difficulties during a case. Specifically, the UDA makes all estate monies on deposit immediately due and payable if the depository bank fails, suspends active operations or becomes insolvent, or if a receiver, conservator or liquidator is appointed for the bank. In such events, the UDA gives the U.S. Trustee the immediate right to seek recourse against any surety bond the bank obtained, or unilaterally demand turnover and take actual or constructive possession of all securities the bank had pledged as collateral with the Federal Reserve, without notice to the bank. The U.S. Trustee would then pay such surety bonds or pledged securities to the debtor or hold them in trust for the debtor. Without the depository bank's compliance with a UDA, the U.S. Trustee would be unable to proceed as expeditiously to protect estate assets.

**B. The Debtor Has Not Shown Cause for Relief from 11 U.S.C. § 345(b)**

36. 11 U.S.C. § 345(b) provides that the Court may exercise its discretion to waive the requirements under section 345(b), but only for cause. Here, the Debtors make blanket statements that "surety bonds cannot be obtained at this juncture" and "banks have expressed no desire to collateralize[.]" The Debtors also do not provide any specifics with regard to the ICS Program or Money Market Fund(s).

37. The relief requested by the Debtors is premised on a perceived inability to find a bank that will collateralize the Debtors' Remaining Funds. As set forth in the Ziemer Cert., the U.S. Trustee has been working with First Citizens Bank, which recently acquired SVB Bridge Bank, and is the bank currently holding the Remaining Funds. As of April 25, 2023, First Citizens Bank executed a UDA with the U.S. Trustee. To that end, First Citizens Bank provided a breakdown of all Debtor funds on deposit with First Citizens Bank and the U.S. Trustee is now assisting to open an account with the FRB so that the balances can be fully collateralized. The U.S. Trustee anticipates the process to open the account with the FRB can be completed in 48 hours and subsequently, collateralization can occur. Given this significant development, the Debtors can no longer establish cause to waive the requirements of section 345. The very bank that is holding the Remaining Funds has executed a UDA and the process to collateralize can be completed in the very near term.

38. With regard to the alternatives proposed by the Debtors, the Motion lacks any information at all regarding the ICS Program. The Motion does not so much as describe how an ICS Program works and certainly does not include any specifics, such as how many banks will be utilized as part of the ICS Program, the names of such banks, whether those banks entered into UDAs with the U.S. Trustee, and how estate funds will be protected. As a practical matter, if the

Debtors are going to put up to $25M into an ICS Program, in order to keep deposits below the FDIC limit of $250,000, the program would have to involve at least 100 banks.[4] One of the concerns of the U.S. Trustee is that without the required UDAs, the banks would not be approved depositories, would not be obligated to provide reporting to the U.S. Trustee, and would not be subject to the same monitoring. And even if all receiving banks were parties to a UDA, it is not clear if they would have the ability to provide reporting for funds that are "swept."

39. Likewise, the Motion lacks information concerning the Money Market Funds. The Debtors seek relief to move up to $275 million to Money Market Funds "like" BlackRock Liquidity Fed Fund but does not identify any other potential funds. And while the Debtors represent that the Money Market Funds will invest in U.S. treasury bills, that is not the same as the Debtors investing in actual treasury bills since there is no information on the actual portfolio of any of these funds. And again, there is no reporting to the U.S. Trustee that would allow for the necessary monitoring, oversight and ability to safeguard the funds.

40. Given that First Citizens Bank recently signed a UDA and is working with the U.S. Trustee towards collateralization of the Remaining Funds, the Debtors can no longer rely on their argument that "banks have rejected any proposal to collateralize the Debtor funds[.]" If the Debtors move the Remaining Funds to Webster Bank, and Webster Bank does not obtain surety bonds or collateralize the funds, but instead proceeds to put the Remaining Funds in an ICS Program or Money Market Fund, Webster Bank will be non-compliant under the UDA.

41. The U.S. Trustee reserves any and all rights, remedies, duties, and obligations found at law, equity or otherwise, including the right to complement, supplement, augment, alter and/or modify this Objection.

---

[4] There are currently less than fifty Approved Depositories for the District of New Jersey.

WHEREFORE, the U.S. Trustee respectfully submits that the Court deny the Motion and grant such other relief as the Court deems just and necessary.

                                        Respectfully submitted,

                                        ANDREW R. VARA
                                        UNITED STATES TRUSTEE
                                        REGIONS 3 & 9

                             By:    */s/ Jeffrey M. Sponder*
                                        Jeffrey M. Sponder
                                        Trial Attorney

                             By:    */s/ Lauren Bielskie*
                                        Lauren Bielskie
                                        Trial Attorney

Dated: April 27, 2023