```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW JERSEY

IN RE:                        .    Case No. 22-19361-MBK
                              .    (Jointly Administered)
BLOCKFI INC., et al.,         .
                              .
         Debtors.             .
                              .    April 27, 2023
 . . . . . . . . . . . . .         1:02 p.m.

              TRANSCRIPT OF MOTION FOR A LIMITED
                  WAIVER OF SECTION 345(B)
             BEFORE THE HONORABLE MICHAEL B. KAPLAN
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Debtors:                  Kirkland & Ellis LLP
                              BY:  CHRISTINE A. OKIKE, ESQ.
                              601 Lexington Avenue
                              New York, NY 10022

For the Official              Brown Rudnick, LLP
Committee of Unsecured        By:  TRISTAN AXELROD, ESQ.
Creditors:                    One Financial Center
                              Boston, MA 02111


For the United States         Office of the U.S. Trustee
Trustee:                      By:  LAUREN BIELSKIE, ESQ.
                              One Newark Center
                              Newark, NJ 07102




Audio Operator:               Kiya Martin


 Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```
───────────────────────────────────────────────────────────────

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: [jjcourt@jjcourt.com](mailto:jjcourt@jjcourt.com)**

**(609) 586-2311    Fax No. (609) 587-3599**

1            THE COURT:  All right.  Good afternoon, everyone.
2   I'll let everybody pop in.  This is Judge Kaplan and we have
3   the Blockfi, Inc. matter and, specifically, the debtors'
4   emergent motion seeking a limited waiver of the deposit
5   requirements of the Section 345(b).
6            MS. OKIKE:  Good afternoon, Your Honor.  Christine
7   Okike of Kirkland & Ellis on behalf of the debtors.  Can you
8   hear me okay?
9            THE COURT:  I can hear you loud and clear.  Good
10  afternoon.
11           And --
12           MS. OKIKE:  Your Honor --
13           THE COURT:  Go ahead.
14           MS. OKIKE:  I was just going to say we have one
15  matter on today's agenda, which is the motion for a limited
16  waiver of Section 345(b) which was filed at Docket Number 770.
17           THE COURT:  And I've had an opportunity to review Mr.
18  Renzi's declaration in support of the motion as well as the
19  opposition filed by the U.S. Trustee, I think, earlier ths
20  morning.
21           And let me then turn to the debtor and --
22           MS. OKIKE:  Yes, Your Honor.
23           THE COURT:  -- if you want to address the opposition
24  or where we go from here.
25           MS. OKIKE:  Thank you, Your Honor.

1       So, Your Honor, we filed the declaration of Mr. Renzi
2  in support of the motion at Docket Number 784.  Mr. Renzi is on
3  the line, so if Your Honor has any questions for him, or anyone
4  wants to cross him, he's available.  But otherwise we would
5  offer his declaration as his direct testimony.
6       THE COURT:  All right.
7       Good afternoon, Mr. Renzi, I see you there.
8       Any objection to the declaration coming in as direct
9  testimony -- in lieu of direct testimony?
10                (No audible response)
11      Thank you.
12      All right.  Continue on.
13      MS. OKIKE:  Thank you, Your Honor.
14      Your Honor, since the commencement of these cases,
15 the debtors' three main banking partners, Silvergate Bank,
16 Silicon Valley Bank and Signature Bank have collapsed.  The
17 debtors have 38 of their 43 pre-petition bank accounts with
18 those three banks.  And the remaining five accounts were
19 dormant accounts with Union Bank, BCB Bank and FOMO Pay that
20 the debtors closed shortly following the petition date at the
21 request of the U.S. Trustee.
22      The debtors were able to navigate these bank failures
23 and successfully protect the debtors' cash.  And the debtors
24 have worked closely with the U.S. Trustee and the Committee to
25 find a safe depository for their funds.  Over the past month,

4

the debtors and the Committee have, collectively, reached out to over 50 banks in an effort to open new accounts at authorized depositories for the District of New Jersey and to ensure compliance with Section 345 of the Bankruptcy Code.

The process to find new banking partners has been challenging.  Many banks are refusing to offer services to crypto companies given the uncertain regulatory environment. While the debtors have been successful in establishing new accounts at Webster Bank, Western Alliance Bank and Peapack-Gladstone Bank, each of which is an authorized depository in the District of New Jersey, none of those banks to date have been able to secure surety bonds and/or expressed a willingness to post securities to satisfy Section 345(b) of the Bankruptcy Code.

Your Honor, the U.S. Trustee notified the debtors yesterday that First Citizens, which acquired SBP Bridge Bank has recently signed an authorized depository agreement and has agreed to post collateral to protect funds in the District of New Jersey.  However, the debtors have reached out First Citizens multiple times and, immediately following our call with the U.S. Trustee yesterday, but have still not received a response and/or confirmation from First Citizens that they are going to collateralize the debtors' funds in this case.

While we are hopeful that First Citizens will be able to procure a surety bond and/or pose collateral, they have not

1  done so to date and the debtors need to protect their cash now.
2  They need the flexibility of having multiple options to secure
3  their cash given the risk associated with non-diversification
4  at this time.
5          Your Honor, the debtors take seriously the U.S.
6  Trustee's motion to compel the debtors to comply with Section
7  345(b), but the reality is we have not been able to do so given
8  the turmoil in the banking system.  So, we're seeking
9  flexibility, after having carefully evaluated our options to
10 safeguard funds in three different ways.  One is an insured
11 cash sweep program with Webster Bank or another authorized
12 depository for an amount up to a hundred and twenty-five
13 million.
14         The second is through one or more money market funds
15 that only invest in U.S. government obligations and/or U.S.
16 government obligations themselves in an amount up to 275
17 million either with Webster Bank or another authorized
18 depository.  And the third is at First Citizens to the extent
19 that they are able to pose collateral and/or secure a surety
20 bond as the U.S. Trustee has alluded to.
21         Your Honor, the debtors submit that cause exists to
22 modify the 345(b) requirements.  The money market funds that
23 the debtors intend to invest in are highly rated money market
24 funds which invest in U.S. Treasury bills, notes and other
25 obligations issued or guaranteed by the U.S. government, its

1  agents or instrumentalities.  And the ICS funds by function of
2  inclusion in that program, will be fully insured.  They will be
3  held across multiple banks in amounts covered by FDI Insurance,
4  thus posing no risk with respect to the debtors' funds.
5           Your Honor, even if some of these banks that are in
6  the ICS program are not authorized depositories, we believe
7  that the structure of the program provides protection by virtue
8  of the FDI insurance only and that this obviates the need for
9  any additional insurance or collateral to protect the debtors'
10 funds.  Your Honor, the debtors believe that these are safe
11 options for holding the debtors' cash and, in light of the
12 potential harm to the debtors' estates, if a bank where they
13 are holding funds above the FDIC limit fails, the debtors
14 believe that the relief requested is reasonable and
15 appropriate.
16          The difficulty that the debtors have faced in finding
17 a home for their funds in strict compliance with Section
18 345(b), represents the exact circumstances under which the
19 Court has discretion to provide relief from that section.  The
20 debtors' primary goal is to safeguard all of our funds for the
21 benefit of our clients and we believe that we've narrowly
22 tailored the relief to do that and that cause exists to grant
23 us limited relief from Section 345(b).
24          So, Your Honor, I'm happy to answer any questions,
25 otherwise, I would, you know, let the U.S. Trustee make their

1 argument and ask for time for a rebuttal.

2       THE COURT:  All right.  Before I turn to Ms.
3 Bielskie, let me ask, we're talking about a hundred and twenty-
4 five million in the ICS.  Is that in addition to the two
5 seventy-five or is that included as part of the two hundred and
6 seventy-five that was otherwise referenced as going into the
7 money market funds?

8       MS. OKIKE:  Yes, Your Honor, so they overlap.  And we
9 have not made a determination as to any of these options,
10 right?  I just think we're just seeking flexibility.  But the
11 one twenty-five overlaps with the two seventy-five.  I think
12 we're just seeking, you know, full flexibility, you know, to
13 the extent that we need it so that all the funds can be
14 protected.

15       THE COURT:  So, the debtors on hand we're talking
16 about trying to protect $275 million -- that's the number?

17       MS. OKIKE:  Correct, Your Honor.  Correct.

18       THE COURT:  And either you can speak to it or Mr.
19 Renzi, is it possible, in lieu of the money market fund, simply
20 to acquire the treasuries directly as a solution?

21       MS. OKIKE:  Yes, Your Honor, it is possible but it's
22 a more complicated process.  Mr. Renzi probably has more detail
23 on what that would entail.  We have spoken with our banking
24 partners about that process and I know that it is more
25 complicated than just investing in the money market funds but I

1  do think it is feasible.
2              THE COURT: Mr. Renzi, do you want to touch on it?
3              MR. RENZI: Yes, good afternoon, Your Honor.
4  Christine is exactly right -- Ms. Okike is exactly right.  I
5  think, ultimately, what we're trying to do here is we can go
6  back to back against the treasury directly but it is fairly
7  cumbersome to do that.  You know, meaning that the systems
8  where you do that are not easy to do.  I think using it through
9  a brokerage account or working with, you know, Webster Bank is
10 -- does help facilitate some of that.  But ultimately you have
11 to invest in four to eight week securities.
12             Our view is that if you're invested in a money market
13 account with government securities it's one beta clear and so
14 just having that flexibility is helpful and, ultimately, you
15 know, the systems -- I don't know if you've gone straight up
16 against the Treasury's interface, you know, it's not the
17 smoothest interface to work with.
18             So, I think that, you know, with the assistance of
19 Webster's, you know, brokerage account or others, we can go and
20 buy, you know, money market funds that are backed by, you know,
21 essentially, the government and having, you know, those
22 securities of the government.  And that provides one day, one
23 day transition if need be.  And so, having that flexibility,
24 having that security of the government and having that
25 safeguard is really what we think, you know, really provides,

1  you know, the best option.  And the ICS is just another great
2  option that has been used before.  It seems very
3  straightforward and we've been in discussions with Webster
4  about that also.
5        So, both of those solutions are easier than just
6  going straight up against the Treasury and providing the
7  flexibility that I just described.
8        THE COURT:  All right.  Thank you.
9        Ms. Bielskie, do you wish to be heard on behalf of
10 the UST?
11       MS. BIELSKIE:  Yes, Your Honor.  Thank you.  Lauren
12 Bielskie with the Office of the United States Trustee.
13       Your Honor, I'll just touch on the first issue that
14 you raised with them -- the debtor obtained T-Bills directly.
15 We would have no objection to that.  We think that's
16 appropriate under the Code and I think that the debtor has
17 enough sophisticated professionals that even if the process is
18 cumbersome, that they can certainly do that.
19       Turning to the objection that we filed this morning,
20 Your Honor, and I appreciate that you read that in advance of
21 the hearing and I appreciate that Your Honor is aware of the
22 challenges and concerns that have arisen with regards to the
23 banking issues especially in this case and recently.  And as
24 Your Honor knows, Section 345 obligates the debtors to require
25 from an entity which holds estate money that they're either

invested and have a bond having the features identified in Section 345(b), a surety bond, or the deposits of securities consistent with 31 U.S.C. Section 9303 unless the Court orders otherwise.

The debtor represents to this Court that the surety bonds are no longer available due to bank volatility and that each of the debtors' banks rejected any proposal to collateralize the debtors' funds and that this is cause to waive the Section 345 requirements. But Section 345 places the obligation on the debtors to require protections for its money from the institutions that hold such money.

And while Section 345 does not mention the U.S Trustee's Office, the office, in its supervisory role under 28 U.S.C. Section 586, assists with the protection of debtors' funds by its entry into the uniform depository agreements. The UDAs obligate depositories to maintain collateral for bankruptcy funds on deposit in an amount no less than 115 percent of the debtor deposits that exceed the FDIC insurance limits.

The funds at issue in this motion, referred to by the debtors as the remaining funds, are the funds that were held by Silicon Valley Bridge Bank which was then acquired by First Citizens Bank where the funds remain. At the time of acquisition, First Citizens Bank was not a party to a UDA but our office has been working with them and as of April 25th,

1  First Citizens Bank executed a UDA.  That means they have
2  agreed to protect debtors' funds as required under the UDA and
3  the next step to open an account with a federal reserve bank is
4  underway.  Based on past experience, this can be done in 48
5  hours and then the collateral can be pledged.  As counsel
6  indicated, when we relayed this information to them yesterday,
7  the debtors still are seeking the waiver from the Court today.
8           Counsel also mentions that Webster Bank is an
9  approved depository, having signed a UDA.  But if Webster Bank
10 is unwilling to either obtain surety bonds or collateralize,
11 then they would be noncompliant under the UDA.
12          The U.S. Trustee has concerns regarding the proposed
13 alternatives, the insured cash sweep program and the money
14 market funds, and does not believe they are acceptable because
15 they do not allow for the necessary monitoring, oversight,
16 reporting and ability to safeguard the funds.
17          So, while we believe the Court should deny the motion
18 because cause has not been established and because the ICS
19 program and money market fund are unacceptable alternatives, at
20 the very least, in light of the progress that's been made with
21 First Citizens Bank, relief under this motion should be delayed
22 for just a very short window, Your Honor, to give First
23 Citizens an opportunity to pledge the necessary collateral.
24          Thank you, Your Honor.
25          THE COURT:  All right.  Thank you.

1               Ms. Okike, any response?

2               MS. OKIKE:  Yes, Your Honor.  Thank you.

3               Your Honor, again, we have reached out to First
4   Citizens.  We've contacted them several times.  They have been
5   non-responsive, at least to the company, in terms of
6   collateralization or surety bonds.  And, again, we remain
7   hopeful that that happens but that being said, you know, just
8   taking SVB, they were also an authorized depository for the
9   District of New Jersey at the time that they went under and
10  they had not pledged any collateral, right?  So, I don't know
11  sitting here today that we know for sure whether First Citizens
12  is going to be able to satisfy their obligations under the UDA.

13              As we've said, you know, the three new bank accounts
14  that we've opened, none of those banks have been able to secure
15  surety bonds.  And so, while I don't question Ms. Bielskie's
16  statements, we just don't know sitting here today whether
17  they're going to be successful or not.  And the debtors
18  currently have funds sitting that are, you know, not protected.
19  We believe what we proposed provides more protection than what
20  we currently have and we believe we've established cause, you
21  know, to utilize these (indiscernible).

22              We would, of course, work with the UCC and the U.S.
23  Trustee before, you know, actually moving funds to identify,
24  you know, any money market funds or the ICS banks that we were
25  going to use, but we're requesting flexibility given the

1  financial turmoil right now.  I think, you know, having all our
2  funds in one bank, even if First Citizens is able to
3  collateralize is probably not the best option just given
4  everything going on.  And so we would, respectfully, request
5  approval of the motion.
6           MR. RENZI:  Your Honor, if I may or, Ms. Okike, if I
7  may?
8           THE COURT:  Yes.
9           MR. RENZI:  I also, you know, I'll just note that in
10 terms of bank accounts, we do not have an account for
11 international entities at FCD and that's another issue that we
12 would have.  So, I know it's technical but it's something that
13 we don't have a solution for international and we're
14 responsible for those entities also.
15          THE COURT:  So, let me clarify then.  You're saying
16 that if First Citizens Bank was collateralized and it would
17 sign the EDA but if the arrangements with the Federal Reserve
18 had been made and they're collateralized, you still cannot keep
19 international funds there?
20          MR. RENZI:  Your Honor, we do not have a bank account
21 set up at FCB for the international entity, so we would have to
22 go the KYC process to do that, you know, and then have them
23 agree to post collateral or a surety bond for that to work and
24 I think that's just additional time that, you know, we're
25 concerned about.  We have international accounts open at

1  Webster Bank and we would be able to effectuate that much more
2  quickly and it just heightens the point that Ms. Okike had just
3  stated.  I just wanted to make sure you were also aware of
4  that.
5           Thank you.
6           MS. OKIKE:  Your Honor, and one point just to add on
7  that, you may recall that in kind of all this turmoil, the
8  debtors transferred money out of Signature to a Haynes Boone
9  account.  And that is international money which we are not able
10 to move anywhere right now because we don't have an
11 international bank account other than at Webster and Webster
12 has not been able to collateralize or secure a surety bond.
13 And so there is an urgent need for this relief as I think we
14 have laid out for you.
15          THE COURT:  Can those funds be transferred into the
16 proposed money market funds?
17          MS. OKIKE:  Yes, Your Honor.
18          THE COURT:  All right.
19          MS. BIELSKIE:  Your Honor?
20          MS. BIELSKIE:  Thank you, Your Honor.
21          This is the first we're hearing about any concerns
22 with regards to international funds in international accounts
23 or of the issues that Mr. Renzi just raised, so we have not had
24 a chance to review that.  But I would say to the ability to get
25 the T-Bills is still there.

1            And, again, we've been told by First Citizens Bank
2   that they're moving toward -- well, we're working with them to
3   get the account open with the Federal Reserve Bank and that
4   they're prepared to collateralize.  And at the very least, if
5   we can allow a few days for that process to happen and the
6   debtor could also start working on obtaining the T-Bills
7   directly, I think that would be, certainly, an acceptable
8   solution for the very short term.
9            THE COURT:  All right.  Thank you.
10           Mr. Renzi, you have your hand raised again?
11           MR. RENZI:  Yes.  I mean, we've sent a few e-mails in
12  regards to some of the details here to the U.S. Trustee.  I
13  actually did it myself directly and I think, ultimately, my
14  concern is just I want to make sure that we're doing everything
15  possible to do this as quickly as possible to protect these
16  funds.  And my concern is, is just given the nature of the
17  industry that, as Ms. Okike went through, we went through a
18  number of banks to get to where we are.  And it was cumbersome
19  to open up new accounts, as you can imagine.  You know, at the
20  end of the day, I just want to deliver results for the company
21  and for our system altogether and to do that quickly is
22  important so that we can protect these assets.
23           So, that's all I would add, Your Honor.
24           THE COURT:  All right.
25           Mr. Axelrod?

1           MR. AXELROD:  Thank you, Your Honor.  Before I begin,
2  I believe this is my first appearance before Your Honor and our
3  counsel, Genova Burns, will be filing a pro hac vice
4  application shortly.  I'd just ask that I'd be permitted to
5  speak pending that.
6           THE COURT:  Welcome to New Jersey, remotely.
7           MR. AXELROD:  Thank you very much.
8           I think we're in general agreement, the Committee is
9  in general agreement with the debtors and the United States
10 Trustee as to the importance of safeguarding these funds.  I
11 don't think it's been stated but this is not an operating
12 company and this is a large volume of cash that is expected to
13 be a very significant source of distributions to creditors.
14          If surety or collateralization is not available, then
15 -- it is available, excuse me, then our preference would be to
16 keep the money where it is.  But First Citizens is not here
17 today to say that that's a possibility and it sounds like
18 there's more digging to be done on that front.
19          We and our representatives have spoken with the
20 debtors over the last few days about the options on the table.
21 Based on our discussions about the ICS and money market
22 accounts, we were able to get comfortable with those options.
23 I suspect we could also get comfortable with purchasing
24 treasury bills directly as well but glad to hear on the record
25 the commitment of the debtors to continue discussing these

1  options before any money does move.  And that's our primary
2  request at this point.  We don't object to the debtors having
3  some optionality, particularly at this moment based on facts
4  that seem to be in flux and we look forward to participating in
5  discussions as things seem to be developing.
6           That's all I have, Your Honor.  Thank you.
7           THE COURT:  All right.  Thank you.
8           Thank you, all.
9           I think it's important to adhere as closely as
10 possible with the statutory requirements set forth in the Code
11 in Section 345, but I recognize that flexibility is need in
12 this situation.  Most importantly, it's a task of all of us --
13 the debtor, the Committee, the UST and the Court, to do what it
14 can to preserve the funds for the benefit of creditors.
15          I'm going to give my ruling but ask that it --
16 parties think it can be tweaked -- not to hesitate to raise
17 their hand.  I'm going to direct the debtor to use the debtors'
18 best efforts and good faith to transfer the funds to First
19 Citizens Bank once they have confirmed collateralization.  And
20 that is to be done no later than Monday -- close of business
21 Monday.  In other words, it gives two full days on top of the
22 time that's already been undertaken to get that done.
23          If not, if for whatever reasons they cannot confirm
24 collateralization, I'm going to authorize that all the money be
25 transferred into the money market funds.  I'm not comfortable

18

1  with the sweep -- ICS sweep.  I agree and concur with the U.S.
2  Trustee concerns regarding the, essentially, the accounting for
3  it and the monitoring of the -- all of the accounts.  And
4  there's no reason not to just move all of the funds into the
5  money market accounts that are accessible.
6       Now, if the debtor wants to substitute for either of
7  those alternatives, purchasing these treasuries directly, I
8  don't think anyone can complain about that option.  But I
9  understand the obstacles and burdens and the time commitment in
10 doing so.  But either way, I don't want to be in a position
11 where this goes past the close of business Monday without us
12 doing -- taking the steps to protect the funds.
13      But I'm open to suggestions if anybody wants to tweak
14 that pathway.  And you can consider it and discuss it.  If you
15 need, I'm available tomorrow as well in a quick phone call if
16 something has to be tweaked in order to satisfy everyone's
17 concerns and expectations.
18      MS. OKIKE:  Your Honor, your proposal works for the
19 debtors.  I think it makes sense and, as we said, we're happy
20 to continue working with, you know, the U.S. Trustee and the
21 UCC on these issues.
22      THE COURT:  Anyone else?
23      MS. BIELSKIE:  Your Honor, Lauren Bielskie.  I
24 appreciate Your Honor's ruling as well and we would also like
25 the opportunity to talk with people in my office about any

1  particular tweaking as Your Honor mentioned.  If we could bring
2  that to debtors' counsel's attention first.
3           THE COURT:  Yes, technical jargon.
4           MS. BIELSKIE:  And if there are any issues, that we
5  could bring that to Your Honor as well, we would appreciate
6  that.
7           THE COURT:  Everybody knows where to find me.
8           MS. BIELSKIE:  Thank you, Your Honor.
9           THE COURT:  Anything else I could assist with?
10          MS. OKIKE:  No, that's it, Your Honor.  Thank you
11 very much.  We appreciate you taking the time.
12          THE COURT:  All right.  Good luck.  Take care
13 everyone.

\* \* \* \* \*

## **C E R T I F I C A T I O N**

I, ALYCE H. STINE, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Alyce H. Stine
ALYCE H. STINE

J&J COURT TRANSCRIBERS, INC.    DATE:  April 29, 2023