IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:                        .     Case No. 22-19361-MBK
                              .     (Jointly Administered)
BLOCKFI INC., *et al.*,       .
                              .
          Debtors.            .
                              .     May 11, 2023
. . . . . . . . . . . . .     .     10:31 a.m.


TRANSCRIPT OF DECISION ON DEBTORS' MOTION FOR ENTRY OF AN ORDER
   (I) AUTHORIZING THE DEBTORS TO (A) HONOR WITHDRAWALS FROM
    WALLET ACCOUNTS, (B) UPDATE THE USER INTERFACE TO PROPERLY
REFLECT TRANSACTIONS AND ASSETS AS OF THE PLATFORM PAUSE, AND
   (C) CONDUCT ORDINARY COURSE RECONCILIATION OF ACCOUNTS, AND
          (II) GRANTING RELATED RELIEF [DOCKET NO. 121]

**BEFORE THE HONORABLE MICHAEL B. KAPLAN**
**UNITED STATES BANKRUPTCY COURT JUDGE**




APPEARANCES:

  No appearances taken


Audio Operator:              Kiya Martin






Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

1          THE COURT:  Okay.  Good morning, everyone.  This is

2     Judge Kaplan.  And I will be reading my ruling with respect to

3     the Blockfi LLC matter.  Given that I am currently at the Third

4     Circuit conference, I'm not in a position to have a hearing,

5     therefore, there will be no opportunity for questions or

6     further discussion.  I am happy to arrange for a subsequent

7     telephone conference as needed if there are any issues that

8     need clarification.  I see there are still participants joining

9     remotely but I'm going to start my ruling.  It'll take a few

10    minutes, not too long, but it will take some time.

11         Before the Court is the debtors' motion for entry of

12    an order authorizing the debtors to honor withdrawals from

13    Wallet accounts, update the user interface to properly reflect

14    transactions and assets as of the platform pause, conduct

15    ordinary course reconciliation of accounts and other related

16    relief.  This Court has jurisdiction over this matter pursuant

17    to 11 U.S.C. Section 1334.  This is a core matter under 28

18    U.S.C. Sections 157(b)(2)(A), (B), (M) and (O).  Venue is

19    proper under 28 U.S.C. Sections 1408 and 1409.  Pursuant to

20    Federal Rule of Bankruptcy Procedure 7052, the Court makes the

21    following findings of fact and conclusions of law.

22         To the extent the parties have argued that this

23    matter should proceed through an adversary proceeding in lieu

24    of a contested matter, the Court exercises its discretion to

25    relax the requirements of the Federal Rule of Bankruptcy

1 Procedure 7001 as permitted by Federal Rule of Bankruptcy

2 Procedure 1001 and in light of the opportunity all parties had

3 to engage in discovery, briefing and oral argument.  This is

4 consistent with the approach taken by other Courts in this

5 district and I will refer the parties as example to In re Gain

6 Electronics, 117 B.R. 805.

7        The Court incorporates into this ruling by reference

8 the stipulated facts filed by the parties at Docket 842 and

9 employs the same terms and definitions as defined in the

10 stipulated facts.  The Court heard oral argument on May 8th,

11 2023 and has reviewed the written submissions by all parties as

12 identified in the notice of amended agenda filed by the

13 debtors' counsel at Docket Number 845.  The Court notes that in

14 addition to all submissions by counsel on behalf of all

15 parties-in-interest, the Court has reviewed every pro se

16 submission forwarded to this Court by e-mail and regular mail.

17        At the outset the Court notes that during oral

18 argument the phrase picking winners and losers was used by

19 counsel and the Court.  That phrase is not wholly applicable

20 inasmuch as in this matter there are no true winners among

21 creditors, customers or equity holders.  No one has gone

22 unscathed either in delays, loss of funds, loss of access to

23 funds or other contractual rights to which they are entitled.

24        There clearly has been a loss of bargained-for

25 interest and rights.  The task for the Court today is not to

4

1  select winners and losers but to determine how best to preserve

2  all stakeholders' contracted rights with the least prejudice or

3  harm possible.  That task begins and ends with the language of

4  the various applicable terms of agreement to which the debtors

5  and its customers agreed in advance of entering into a business

6  relationship.

7          The Court finds that all digital assets held by the

8  debtors in custodial omnibus Wallets are indeed client property

9  and not property of the bankruptcy estates subject, of course,

10 to possible avoidance and clawback rights.  The BlockFi terms

11 of service including the notice provisions found in the general

12 terms of service as well as the specific terms of service

13 associated with BlockFi Wallet, BlockFi Interest Account,

14 BlockFi private client, BlockFi ACH and BlockFi Debit are

15 binding on customers with respect to all of the aspects of the

16 BlockFi platform.

17         These terms of service form the Court's analysis and

18 determination that the debtors in their sole discretion had the

19 authority to discontinue, pause and/or refuse all current and

20 future access for customers with respect to all account

21 activity, meaning withdrawals, transfers or trading without

22 advance notice.  Currently, advance notice is not required

23 under the terms of agreement in order to effectuate a pause on

24 the platform.  With limited exceptions detailed in the amended

25 Cheela declaration the debtors paused all activity on this

5

platform for all accounts as of November 10th, 2022 at 8:15
p.m.

Customer activity on the debtors' platform through
use of the customer user interface along with back operation
undertaken on the company interface by debtors' employees are
distinct and separate from the manual true-up and batching
processes necessary to effectuate and complete client
withdrawals, trades or transfer requests initiated on the user
interface.  Quite simply, a customer's withdrawal or transfer
request on the customer user face did not and does not
automatically transfer digital assets to or from the debtors'
rehypothicatable Wallets or custodial omnibus Wallets or create
legally, protectable interests in assets held in such Wallets.

The Court acknowledges that after the platform pause
customers who were able to use the app and the user interface
continued to show screens saying their transaction was complete
and that they had received also confirming e-mails.  The Court
understands that the continued functionality of the platform
directly conflicts with the platform pause and recognizes that
the contradiction was confusing, misleading and frustrating.
Nevertheless, it does not change this Court's ruling or the
underlying concept that the manual true-up and batching
processes were required to actually effectuate and complete the
transfer or withdrawal requests.

The fact that the user interface did not accurately

1  reflect the situation is unfortunate, however, debtors

2  adequately explained the delay and the unexpected difficulty

3  that was encountered in disabling the functionality of the

4  platform.  Debtors also took action to inform its user clients

5  of the effect and meaning of the platform pause by posting

6  in/out messages.  As a result of the platform pause, debtors

7  did not undertake manually out of the true-up or batching

8  processes necessary to effectuate and complete transfer or

9  withdrawal requests made on the company's user interface after

10 the pause.  As the Committee has noted, these back end steps

11 are indeed the lynchpin for completing such transactions.

12          Post-platform pause the debtors have engaged in a

13 requisite true-up or batching processes with respect only to

14 transfers, trades or withdrawal requests initiated on the user

15 interface prior to the platform pause.  Put simply, no transfer

16 request by customers between the BIA and the custodial Wallet

17 accounts initiated after 8:15 p.m. on November 10th, 2022 were

18 effectuated and completed.

19          As a matter of both New Jersey and Bermuda contract

20 law as cited in debtors' reply submissions, the plain, ordinary

21 and unambiguous language of the reference terms of service

22 agreements as applied to the facts herein require that this

23 Court overrule all of the objections raised to the debtors'

24 motion.  To do otherwise would authorize an invasion of the

25 very contract rights of custodial Wallet holders with respect

1  to non-estate property and prefer certain general unsecured

2  creditors.

3        BIA account holders deposited their assets into these

4  accounts with the full knowledge that they were undertaking

5  certain risk in exchange for the chance at greater returns.

6  The risk included a potential platform pause at any moment's

7  time.  The custodial Wallet holders, even those that undertook

8  to transfer funds shortly before the platform pause did not

9  share this risk or return and should not have their ownership

10  of non-estate property diluted by those who took on such risk.

11        The Court bottoms its ruling as well on the following

12  specific provisions of the reference, debtors' general terms of

13  agreement.

14        First paragraph.  Pursuant to the BlockFi general

15  terms of service clients must, among other things, acknowledge

16  and agree that BlockFi in its sole discretion may suspend or

17  discontinue your and refuse any and all current and future

18  access to or use of your BlockFi accounts at any time without

19  notice to you.

20        Second.  Clients agree that BlockFi and our third

21  party partners may experience cyber attacks, extreme market

22  conditions or other operational or technical difficulties which

23  could result in the immediate halt of transfers and withdrawals

24  of crypto currency either temporarily or permanently.

25        And the third general term of service of import.  The

1  BlockFi general terms of service further provide that BlockFi

2  reserves the right to refuse service, terminate relationships

3  and cancel orders or transactions in its discretion.

4        This last provision is particularly important

5  inasmuch as to the extent any customer may contend that a

6  particular transaction escaped the intended restraint under the

7  platform pause.  The terms of the agreement permit the debtors

8  to employ at their discretion to simply cancel the transaction.

9  An improper cancellation may give rise to a claim for breach of

10 contract but it neither creates nor resurrects any property

11 interests in crypto currency held in a particular account.

12       The debtors' motion is granted and all objections are

13 overruled.  The debtor may submit a form of order.  Thank you.

14 We are adjourned.

15                    *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T I O N**

I, MARY POLITO, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Mary Polito

MARY POLITO

J&J COURT TRANSCRIBERS, INC.      DATE:  May 12, 2023