Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 1 of 63

1

```
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2
                                     . Chapter 11
 3    IN RE:                         .
                                     . Case No. 20-10343 (LSS)
 4    BOY SCOUTS OF AMERICA AND      .
      DELAWARE BSA, LLC,             .
 5                                   .
                                     . Courtroom No. 2
 6                                   . 824 North Market Street
                                     . Wilmington, Delaware 19801
 7                                   .
                      Debtors.       . Wednesday,November 17, 2021
 8    . . . . . . . . . . . . . . . .  10:00 A.M.

 9              TRANSCRIPT OF STATUS ON EMERGENCY MOTION
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                   UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12
      For the Debtor:          Derek Abbott, Esquire
13                             MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                               1201 North Market Street, 16th Floor
14                             Wilmington, Delaware 19899

15                             - and -

16                             Jessica C. Lauria, Esquire
                               Glenn Kurtz, Esquire
17                             WHITE & CASE LLP
                               1221 Avenue of the Americas
18                             New York, New York 10020

19
20    Audio Operator:         Brandon J. McCarthy, ECRO

21    Transcription Company:   Reliable
                               1007 N. Orange Street
22                             Wilmington, Delaware 19801
                               (302)654-8080
23                             Email:  gmatthews@reliable-co.com

24    Proceedings recorded by electronic sound recording; transcript
      produced by transcription service.
25
```

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 2 of 63

2

```
 1   APPEARANCES (Cont'd):

 2   For Century:              Tancred Schiavoni, Esquire
                               O'MELVENY & MYERS LLP
 3                             Times Square Tower
                               7 Times Square
 4                             New York, New York 10036

 5
     For the FCR:              Robert Brady, Esquire
 6                             YOUNG CONAWAY STARGATT & TAYLOR LLP
                               Rodney Square
 7                             1000 North King Street
                               Wilmington, Delaware 19801
 8
     For the Coalition of      David Molton, Esquire
 9   Abused Scouts for         Cameron Moxley, Esquire
     Justice:                  BROWN RUDNICK LLP
10                             7 Times Square
                               New York, New York 10036
11
                              - and -
12
                               Kenneth Rothweiler, Esquire
13                             EISENBERG, ROTHWEILER, WINKLER,
                                 EISENBERG & JECK, P.C.
14                             1634 Spruce Street
                               Philadelphia, Pennsylvania 19103
15
16   For the U.S. Trustee:     David Buchbinder, Esquire
                               UNITED STATES DEPARTMENT OF JUSTICE
17                             OFFICE OF THE UNITED STATES TRUSTEE
                               844 King Street, Suite 2207
18                             Lockbox 35
                               Wilmington, Delaware 19801
19
20   For Zalkin Law Firm:      Thomas Patterson, Esquire
                               KTBS LAW LLP
21                             1801 Century Park East, 26th Floor
                               Los Angeles, California 90067
22
     For Eisenberg             Daniel Hogan, Esquire
23   Rothweiler, Winkler,      HOGAN MCDANIEL
     Eisenberg & Jeck:         1311 Delaware Avenue
24                             Wilmington, Delaware 19806

25
```

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 3 of 63

3

```
 1   APPEARANCES (Cont'd):

 2   For Tort Claimants:       Debra Grassgreen, Esquire
                               PACHULSKI STANG ZIEHL & JONES LLP
 3                             One Market Plaza, Spear Tower
                               40th Floor
 4                             San Francisco, California 94105

 5                             - and -

 6
                               Alan Kornfeld, Esquire
 7                             PACHULSKI STANG ZIEHL & JONES LLP
                               10100 Santa Monica Blvd., 13th Floor
 8                             Los Angeles, California 90067

 9                             - and -

10                             Jeffrey Schulman, Esquire
                               PASICH LLP
11                             757 Third Avenue, 20th Floor
                               New York, New York 10017
12
13   For Zurich Insurers:      Mark Plevin, Esquire
                               CROWELL & MORING LLP
14                             3 Embarcadero Center, 26th Floor
                               San Francisco, California 94111
15

16

17

18

19

20

21

22

23

24

25
```

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 4 of 63

4

1    <u>MATTERS GOING FORWARD</u>:

2    Debtors' Emergency Motion for Entry of an Order (I) Enforcing
     the Solicitation Procedures Order, (II) Enforcing Section 1103
3    of the Bankruptcy Code Against the Tort Claimants' Committee,
     and (III) Granting Related Relief (D.I. 7118, filed
4    11/10/2021)

5        **Court's Ruling:   Matter Continued**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 5 of 63

5

```
 1           (Proceedings commence at 10:02 a.m.)

 2               THE COURT:  Good morning.  This is Judge

 3    Silverstein.  We're here in the Boy Scouts of America, Case

 4    No. 20-10343.

 5               I'll turn it over to Mr. Abbott.

 6           (No verbal response)

 7               THE COURT:  Does anyone hear me?

 8           (No verbal response)

 9               THE COURT:  No.

10           (Pause)

11               THE COURT:  This is Judge Silverstein.  Can parties

12    hear me?

13           (No verbal response)

14               THE COURT:  No.

15               MR. ABBOTT:  This is Derek Abbott for the debtors.

16    There are a number of lines that appear to be unmuted.  If

17    people could be careful to mute their phones it will be a lot

18    less distracting during this hearing.

19               THE COURT:  Thank you.

20               Mr. Abbott, can you hear me?

21               MR. ABBOTT:  Yes, Your Honor, I can.  Thank you.

22               THE COURT:  Okay.  Thank you.  This is Judge

23    Silverstein. We're here in the Boy Scouts of America

24    bankruptcy, Case 21-10343.

25               I am going to turn it over to Mr. Abbott, but, yes,
```

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 6 of 63

6

1  please, everyone who is not speaking please mute your audio.

2          Mr. Abbott.

3          MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott

4  of Morris Nichols here for the debtors.

5          Your Honor, I wanted to make sure that chambers had

6  received the third amended agenda that was filed this morning.

7          THE COURT:  I have.

8          MR. ABBOTT:  Thank you, Your Honor.  We will turn

9  right to item number one and I will hand the podium over to

10  Ms. Lauria.

11          THE COURT:  Thank you.

12          MS. MERSKY:  Your Honor, Rachel Mersky.  I

13  apologize for interrupting.  We have been advised that, at

14  least, one member, Ken Rothweiler, of the coalition, state

15  court counsel, is unable to get onto this call.  He did pre-

16  register, but its saying at the bottom that he did not

17  register.

18          THE COURT:  Okay.  Brandon, can you check and see

19  if Mr. Rothweiler is registered?

20      (Pause)

21          THE COURT:  He is going to need to re-register.

22  Let's continue and when Mr. Rothweiler joins we will make sure

23  he is connected.

24          MS. LAURIA:  Thank you, Your Honor.  This is

25  Jessica Lauria, White & Case, on behalf of the debtors.

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 7 of 63

7

1        Your Honor, thank you for holding the status

2  conference today with respect to the debtors' motion

3  concerning the email that was sent from the official tort

4  claimants committee official email address on November 6th or

5  around that time.  This is critically important to the debtors

6  and their reorganization efforts because as you know, Your

7  Honor, we are at a very sensitive time in the Chapter 11 case.

8        We are about four weeks -- in fact, less than four

9  weeks from our voting deadline.  The voting deadline was four

10  weeks from yesterday.  We have the intervening Thanksgiving

11  holiday.  So we are, in effect, three weeks out from the

12  voting deadline.  As the court is, I think, very well aware

13  our timeline is immovable.  Due to the debtors'' liquidity

14  situation if we prolong these Chapter 11 cases there simply

15  will not be any funds for distribution to the trust. So we

16  have to hold our end of January confirmation hearing.

17        In addition to this being critically important

18  because of the timeline, the debtors have expended millions of

19  dollars in connection with the solicitation process.  Omni

20  estimates that in the month of October alone the launch of the

21  solicitation will cost the debtors' bankrutpcy estates $4.5

22  million; that is just for the month of October.  That does not

23  include professional time that was spent on assisting with the

24  solicitation from White & Case and other estate professionals.

25  And it doesn't include the dollars that are going to be

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 8 of 63

8

1   expended in tabulating the votes.

2          So we have got the timeline.  We have a lot of

3   dollars that have been spent and in the midst of all of that

4   the professionals for the estates and, frankly, the plan

5   supporters have been subjected to a campaign of cyber-bullying

6   and it was that cyber-bullying that was, in our view,

7   effectively endorsed when the official tort claimants

8   committee sent out the twitter feed from the official tort

9   claimants committee email address.

10          Now when we were last before the court, Your Honor,

11   we had just received the night before discovery from the TCC.

12   That discovery had been comprised of responses to

13   interrogatories as well as 68 documents that were produced to

14   us from the time period November 5th through November 7th.

15          I will come back to the discovery, Your Honor,

16   because we think that that was inadequate.  We have worked

17   with the Pachulski firm to agree to a timeline for additional

18   discovery which I will walk the court through in a moment.

19   But what we saw in that initial discovery was, frankly, very

20   disturbing.  It confirmed our fears that the tort claimants

21   committee's firm was, in fact, behind the TCC/Kosnoff

22   communications.

23          One of the emails that was produced, which we

24   pointed out in our filings, demonstrates that counsel for the

25   TCC, in fact, read the cover email and made a modification to

1   that email, and it was that cover email that contains, again,

2   the twitter feed link that has been used to, what I can only

3   describe as, cyber-bully the professionals in this case and it

4   was that email that, in effect, made derogatory, if not

5   defamatory statements about one of the lawyers for the

6   coalition.

7          The TCC filed a pleading yesterday, I guess their

8   version of a status report, in which they want to --

9       (Audio interruption)

10          MS. LAURIA:  Excuse me, sir, your phone is not

11  muted.

12          UNIDENTIFIED SPEAKER:  Oh, I'm sorry.  I didn't

13  know.  I apologize.

14          MS. LAURIA:  Thank you.

15          It was in that email.  That email was addressed in

16  the TCC's filing yesterday and the filing yesterday is

17  particularly concerning to us because, and I will go through

18  it in a moment, Mr. Molton pointed out to me late last night,

19  and so it did not make it into our status report, that in

20  connection with the TCC's document production related to the

21  plan generally there was further production related to the

22  Kosnoff communications.

23          I am going to come back to that in a moment.  We

24  didn't see it, Your Honor.  It wasn't -- it was produced in,

25  what I think was called, tranche 5 of the TCC's general

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 10 of 63

10

1  production.  Again, Mr. Molton's team at Brown Rudnick found

2  that in the production last night and altered the debtors late

3  last night.  So I will come to that in a moment.

4        In the filing that the TCC filed yesterday, this is

5  Docket No. 7255, signed by Mr. Stang, Ms. Grassgreen, Mr.

6  Kornfeld, Mr. O'Neil and Mr. Lucas.  The TCC says, and I'll

7  quote, at Paragraph 7, page 4, second, the coalition asserts

8  that counsel for the TCC,

9        "Reviewed and edited the Kosnoff communication

10  before it was sent."

11        The debtors also point to this as a "concern" and

12  this is critically important language.  The evidence, however,

13  shows that counsel for the TCC did not change a word of the

14  Kosnoff communication, rather counsel added emphasis bold and

15  underscore to one word "reject."

16        Now we think that's bad enough, but what we saw in

17  the discovery last night, Your Honor, is that on Sunday,

18  October 17th in the Kosnoff letter that was appended to the

19  official TCC communication that went out was a Kosnoff letter

20  from October 18th.  On Sunday, October 17th there is an email

21  exchange between Mr. Lucas and Mr. Kosnoff.  And I would

22  screen share, Your Honor, but this was marked highly

23  confidential in connection with discovery.  Since we're not in

24  court I can't hand it up for the court to see.

25        What I will represent to Your Honor is that this

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 11 of 63

11

1   was an email communication between Mr. Kosnoff and Mr. Lucas

2   where Mr. Kosnoff solicits Mr. Lucas's comments with respect

3   to that letter and Mr. Lucas sends back a mark-up of the

4   letter.  And I am just going to hold it up to my screen, Your

5   Honor. I am not going to read it.  This is the level of

6   blacklining, its not really showing up, but I think you can

7   see the red and the blue, that Mr. Lucas added to the letter.

8          In effect, Mr. Lucas rewrote Mr. Kosnoff's letter

9   that was circulated by Mr. Kosnoff on October 18th and that

10  was late circulated yet again by the TCC on November 6th that

11  was represented to us that they didn't do anything other than

12  bold a word.  That is patently false, Your Honor.  They wrote

13  the letter.

14         So it is in the face of that that we are in this

15  critically important time in connection with solicitation.  In

16  connection with a solicitation that has cost the estate

17  millions of dollars. I ask why this happened.  We don't have

18  an answer yet.

19         I will come back to the discovery in a moment, but

20  suffice it to say this, Your Honor, you will recall at the

21  solicitation procedures hearing the debtors represented that

22  they would provide interim solicitation reports on a

23  confidential basis to parties in interest in this case.  And,

24  indeed, since launching solicitation every Friday the debtors

25  have provided an interim solicitation report to the parties in

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 12 of 63

12

1   this case.

2            Friday, November 5th was no different.  Around

3   noon, East Coast time, that day the parties distributed the

4   interim solicitation report.  It's interim.  It showed, at

5   that point, what I would describe as overwhelming support for

6   the plan and within seven hours of that distribution Mr. Lucas

7   emails Mr. Kosnoff and asks if he can send out the letter from

8   the official TCC email address.

9            We will be taking depositions of the individuals in

10  question.  The TCC has agreed to make those individuals

11  available Monday through, I believe, Wednesday of next week

12  over the Thanksgiving week.  They have agreed to provide

13  additional document discovery, but based upon where we are in

14  this case and while we appreciate that they worked with us on

15  the interim remediation efforts that were reflected in the

16  form of agreed order that we presented to the court I would be

17  remiss, Your Honor, if I did not mention that that has not

18  gone far enough.  We have not gone far enough with remediation

19  efforts particularly in light of the email that was pointed

20  out to us last night.

21           I think first and foremost the debtors are going to

22  have to work with the court to figure out what we are going to

23  do with voting. I don't have an answer to that yet.  The dust

24  has not yet settled on the damage that has been caused by this

25  email, but above and beyond that, Your Honor, notwithstanding

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 13 of 63

13

1   the fact that the TCC was not a plan supporter --

2          (Audio interruption)

3                MS. LAURIA:  Sir --

4                THE COURT:  Excuse me, people need to make sure

5   their audio is muted.

6                MS. LAURIA:  Thank you, Your Honor.

7                In addition, Your Honor, even though the TCC --

8          (Audio interruption)

9                MS. LAURIA:  -- is not a supporter of the plan we

10  did include the TCC's advisors in the plan's exculpation

11  provisions.  I think given what we know right now we are going

12  to have to take the advisors for the TCC out of the

13  exculpation.  We will be filing a plan amendment to reflect

14  that.

15                Your Honor, we do not think the TCC should continue

16  to use its list serve or the email addresses that were

17  supplied to the TCC by Mr. Kosnoff.  Effectively, we got the

18  fox in the hen house at this point and we don't think it's

19  appropriate for them to continue to use that list serve.  We

20  don't believe they should continue to have town hall meetings.

21  We don't think we should be circulating voting reports to the

22  parties anymore.  And we have represented to the Pachulski

23  firm that prior to filing any relief for sanctions we will

24  meet and confer with them which we will do in due course.

25                We are not asking for further remediation today

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 14 of 63

14

1  because this is simply a status conference, Your Honor, but we

2  did think it was critically important that we address this

3  real time given what we're looking at for a voting deadline

4  and the amount of money the debtors are continuing to expend

5  on this solicitation process.

6        Your Honor, that is all I had for today. I know a

7  number of folks want to be heard.  Unless you have any

8  questions I guess I can hand the podium over to Mr. Brady.

9        THE COURT:  I do not have any questions.  And, yes,

10 I will hear from Mr. Brady.

11        MR. BRADY:  Thank you, Your Honor.  Robert Brady on

12 behalf of the FCR.

13        Judge, we have been reviewing the discovery as it's

14 come in and we share many of the same concerns expressed by

15 Ms. Lauria.  Really the key, Your Honor, at this stage is for

16 the court to regain control over the information that is going

17 to survivors.  And the consent order that was submitted is a

18 start.  The integrity of the vote is paramount.  We

19 collectively can't allow anything else to happen that could

20 undermine the vote or even create the appearance of

21 impropriety.

22        The FCR has been very concerned since the TCC's

23 circulation of what has been called the Kosnoff letter first

24 came to light.  Your Honor, nothing we have seen since in

25 discovery has alleviated that concern.  If anything, the facts

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 15 of 63

15

1   appear to be worse.  But discovery is ongoing and we have to

2   see the whole picture and then determine what remedy to seek.

3   And we have to do it quickly, Your Honor, because as Ms.

4   Lauria indicated, we are in the middle of the vote.

5           It's unfortunate, but I think we may need the

6   court's help to stop the personal attacks and to prevent

7   efforts to pit lawyer against lawyer, and survivor against

8   survivor.  Your Honor, there is nothing wrong with not liking

9   this plan. Reasonable minds can differ, but everyone has to

10  play fair.  We owe it to the survivors to make sure they get

11  the facts, they get the counsel of their own lawyer and they

12  can make a reasoned and informed decision on how to vote on

13  this plan.

14          Thank you, Your Honor.  I'm available for any

15  questions.

16          THE COURT:  Thank you.  I don't have any questions.

17          Mr. Molton.

18          MR. MOLTON:  Can you hear me?

19  Yea.

20          MR. MOLTON:  Thank you.  Judge, before I get into

21  the substance of what I would call shocking developments I

22  want to speak briefly upon the designation of the materials as

23  highly confidential by the Pachulski firm.  We have filed, as

24  you know, our supplemental joinder, Document No. 7235.  We had

25  to file it under seal because we did not get, as the debtor

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 16 of 63

16

1   did, an agreement from the committee to designate the highly

2   confidential designation off what may be embarrassing and

3   shocking disclosures, but certainly are not subject to

4   confidentiality.  Truly are the sort of things that the public

5   forum in the era of transparency should shine its light on.

6           We asked yesterday for the de-designation.  We were

7   told we would get a response promptly.  We didn't get it.  And

8   I would ask and urge the Pachulski firm on this call, on this

9   zoom hearing to allow us to do that so we can file our

10   pleading publicly as the debtor filed theirs.

11           I do note, as Ms. Lauria mentioned, there is a new

12   document which is designated as highly confidential that I

13   will be eluding to as well, but we cannot share publicly at

14   this time.  Again, I would urge the Pachulski firm and the

15   committee to de-designate that document promptly.

16           Your Honor, our two concerns, getting to the

17   merits, are, number one, the corruption of the voting process,

18   and, number two, all of this done via and through a

19   partnership of the TCC and its counsel with Mr. Kosnoff

20   against Mr. Rothweiler, the other law firms of the coalition,

21   and in the end this case all in blatant breach of their

22   fiduciary duty, and I'm talking about the estate professionals

23   that I referred to, to all survivors in this case; many of

24   whom, and without getting into what I know about voting which

25   is confidentially, disagree with the TCC and their view.

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 17 of 63

17

1          That raises to me, Your Honor, two clear principals

2    that are undisputed, but which have been compromised.  Number

3    one, the duty of candor and truthfulness with this court.  And

4    I am going to say that again, number one is the duty of candor

5    and truthfulness with this court.  Two, the integrity of this

6    case, of this district, of this court, and of the bankruptcy

7    court's need to make sure that everything is right, appears

8    right, and will be right.

9          I believe, Your Honor, that both have been

10   implicated by the actions in this case that I have seen over

11   the past two weeks by counsel to the TCC.  I believe the duty

12   of candor has been disregarded.  And I believe the integrity

13   of this case has been seriously undermined.

14        Yesterday, Your Honor, my discovery team, our discovery

15   team, the coalition's discovery team in connection with

16   looking at plan discovery, not directed discovery with respect

17   to this issue, but plan discovery, Tranche 5 that I think was

18   produced last Wednesday after this issue occurred, it wasn't

19   produced before this issued occurred, but an email that was

20   buried within a thousand or so other documents.  And I will

21   get to that in a minute.  That piece of information that email

22   exchange and its attachment, raises and elevates all of the

23   concerns that I just mentioned, Your Honor; the duty of candor

24   and the integrity of this case.

25        I am going to refer, and Ms. Lauria did, to the

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 18 of 63

18

1  TCC's supplemental statement 7255 on the Docket.  I was

2  planning to come up in front of Your Honor in saying it was

3  utterly tone deaf to what Your Honor has said last week and I

4  was going to comment on some of the things that Ms. Lauria

5  commented on with respect to what was known at the point that

6  pleading was filed yesterday, early, before we found out some

7  further information.  I am going to get to that in a minute.

8         What the information we found yesterday shows is

9  not only was that pleading tone deaf, tone deaf in light of

10  numerous comments Your Honor made on the record last week, but

11  it was misleading and we can only believe or submit that under

12  the circumstances it looks like it might have been or was

13  intentionally misleading.

14         How many times in pleadings in this court, to this

15  court on this subject or in this court in this hearing have we

16  heard counsel say, for the TCC say, well, we just resent the

17  letter.  It was like a retweet.  We just re-transmitted it.  I

18  think -- and when the discovery showed no, no, no, no, Mr.

19  Kosnoff -- Mr. Lucas actually asked Mr. Kosnoff, Exhibit A to

20  the debtors' pleading, status conference pleading we filed

21  yesterday, do you want us to send it, to send the letter

22  again.

23         The email was sent which was read by Mr. Lucas, the

24  entire email, with the defamatory and inflammatory material.

25  Mr. Lucas made, what he called, an innocent change of, what

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 19 of 63

19

1    the TCC's counsel said an innocent change, they emphasized

2    every single word.  He read that defamatory and inflammatory

3    material and then sent it out on a creditor facing, survivor

4    facing TCC email with what, I suggested last week, was

5    endorsement all knowing, all knowing, you know, the effect

6    that this would have.

7             Last night we found the October 17th email.  The

8    October 17th email, Your Honor, was an email between Mr.

9    Kosnoff and Mr. Lucas, and I am not going to go through what

10   it says or what it does.  Hopefully, the public light will be

11   on it, as it should.  It is was attachments which constituted

12   the letter that Mr. Kosnoff sent to his AIS clients who are

13   also represented by Mr. Rothweiler's firm and Mr. Van

14   Arsdale's firm a day or two later on October 19th.

15            What Ms. Lauria said this was not, in the end, a

16   letter that was written by Mr. Kosnoff.  Indeed, we can say --

17   I can say it was co-authored.  Indeed, if you want my view on

18   it, it was principally written by Mr. Lucas. And Your Honor

19   will have a chance to make your own conclusions on that

20   yourself.

21            What does this letter contain or doesn't contain,

22   Your Honor, I think, has the Kosnoff letter in the public

23   docket, the final Kosnoff letter, but Your Honor will note

24   that it contains vitriol, invective and discouraging

25   statements against Mr. Rothweiler -- directed against Mr.

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 20 of 63

20

1   Rothweiler and the coalition law firms, all in connection with

2   the voting.  I am going to leave it to Your Honor to read the

3   markup so Your Honor can see whose words those were and whose

4   words those weren't.

5          I want to say, Your Honor, that getting back to the

6   November 5th and 6th situation that led us here its important

7   because Ms. Lauria referred to voting in general, and the fact

8   that the voting report came out on November 5th.  But if Your

9   Honor looks at what is on the public transparent docket in

10  full sunlight, Exhibit A to the TCC's -- not the TCC, the

11  debtors' pleading of yesterday, 7235.  Look at the subject

12  line because that is what this is about, Judge, it's about

13  voting corruption.  It says,

14         "Re: Eisenberg, Rothweiler P.C., Boy Scouts of

15  America plan voting."

16         This email chain was the result of Mr. Rothweiler

17  and his firm's confidential attorney/client communications

18  with their clients, who he shares with Mr. Kosnoff, I'm not

19  debating that, instructing them, giving them advice, guiding

20  them through the voting process.  This was after solicitation

21  began and it referred exactly to Eisenberg, Rothweiler letter

22  or communication that went to those 18,000 clients regarding

23  the mechanics of voting.

24         If you take a look at Mr. Lucas's November 5th

25  letter it goes we want us to help you resend your letter.

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 21 of 63

21

1   Really, from my point of view, his letter as well.  If you

2   look at Exhibit C, which is Mr. Kosnoff's response, and,

3   again, the same subject line regarding Eisenberg, Rothweiler

4   P.C., Boy Scouts of America bankruptcy plan voting; Yes! Send

5   it.  Can you append it to your two dashboards?  Is there more

6   I should add to the letter says Mr. Kosnoff.  Then he says

7   critically, Your Honor, I think it's imperative to get it out

8   immediately.  This was a dive bomb, torpedo attack, however

9   you want to talk about it on voting, the integrity of this

10  plan and confidential attorney/client communications with

11  their counsel regarding all of the above.

12          To tell you the truth, Your Honor, I was shocked

13  when I first appeared in front of you last Wednesday after a

14  weekend which I know everybody on our coalition got no sleep

15  and were reacting to chaos, you know, on the ground.  I can't

16  tell you how utterly outraged I am by what our team found last

17  night.

18          Taking back, Your Honor, I'm going to go back a

19  little bit to what I was going to talk about before last night

20  the TCC pleading and just make a couple of quick points before

21  I conclude.

22          First, Your Honor, they continue to call this a

23  mistake of sending it to the 7,000 non-AIS addresses, but the

24  fact is that they became involved in an attorney/client issue

25  with 15,000 survivors and their co-counsel, became a partner

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 22 of 63

22

1   to one of those co-counsel and then hid that from the court.

2          Two, even the wording of their statement, Your

3   Honor, isn't clear.  I am going to direct Your Honor to

4   Paragraph 11 when they failed to admit that they made a wrong

5   decision and then Paragraph 5 where they apologize solely for

6   the confusion they caused.  Again, tone deaf; they're not

7   realizing or accepting that anything improper happened here.

8          Three, they continue to believe that they made no

9   ethical obligation to heed our letter of November 1st and that

10  was part of our pleading, Your Honor. On November 1st we sent

11  the Pachulski firm, as you know, a letter cautioning them not

12  to have unauthorized attorney/client communications with

13  coalition firm clients.  Clearly, they had disregarded that

14  even before we said it and they disregarded it and ignored it

15  after we said it.

16         Fourth, and importantly, Your Honor, something we

17  still don't know, it's unclear whether TCC counsel was acting

18  with the approval of their committee, of those nine men, when

19  they undertook the sorted partnership and outrageous action.

20         What are we going to do, Your Honor?  I am going to

21  go back to the beginning, the two "concerns."  I am using the

22  "concerns" in quotes because that is how the TCC in their

23  pleading yesterday characterized a real legitimate issue

24  voting and the conduct of counsel.  On voting I am going to

25  stand with Ms. Lauria and say we're assessing on a daily basis

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 23 of 63

23

1 both generally case wide as we're able to get information from

2 Omni, but also coalition wide as we're assessing the damage

3 that has been inflicted on our constituents and our member

4 firms, our affiliated firms' further clients, and on AIS.

5        We must recognize, Your Honor, that the harm here

6 may never be known, but we have a duty to monitor and we're

7 all reserving rights.  And I do want to say, Your Honor, we're

8 continuing on a daily basis to receive communications from

9 coalition clients and our coalition law firms are receiving

10 communications from -- I would rather say the coalition law

11 firms are receiving communications from their clients who

12 continue to be confused and have real serious questions about

13 what is going on in this case and with these communications.

14 So that is voting.

15        Second, TCC counsel. Discovery is progressing, Your

16 Honor.  I know in their pleading they said good people make

17 mistakes sometimes; no doubt.  No doubt every lawyer on this

18 zoom video can have, you know, some -- can say that as well.

19 You know, all of sometimes make mistakes.  We try to deal with

20 them.  We try to recognize them.  We try to be honest about

21 them. When we're in front of a court we disclose them, but

22 this is something else.

23        You know, I am going to refer back a couple hundred

24 years or 400 years to Shakespeare and Hamlet "Something is

25 rotten in the state of Denmark," Your Honor, and then I am

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 24 of 63

24

1  going to refer to a little more contemporary source Justice

2  Stewart "You know it when you see it, something is rotten in

3  the state of Denmark."

4          We cannot let this go, Your Honor.  This is not

5  just a mere mistake.  The discovery is showing that.  The

6  discovery is showing also that there seem to have been or

7  there was a conscious effort not to provide candor to the

8  court regarding the Kosnoff email bundle which not only

9  includes the defamatory and inflammatory email, but also, Your

10 Honor, the similarly defamatory and inflammatory letter that

11 was appended to it that, at a minimum, was co-written by TCC

12 counsel.

13         After discovery, Judge, with all the plan

14 fiduciaries, the FCR and the debtor, and with all, you know,

15 talking to other plan supporters and talking to our

16 constituency and talking to getting information from our

17 coalition law firm and their clients.  We will have to come

18 address this, but it's important, Your Honor, to note that,

19 again, going back to something I said a couple weeks ago or a

20 month ago (indiscernible) it seems to become more so with

21 every hearing.

22         If Your Honor has no questions I will pass the

23 baton.

24         THE COURT:  No, I don't have any questions.  Thank

25 you.

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 25 of 63

25

1             Mr. Hogan?

2             MR. HOGAN:  Good morning, Your Honor.  Daniel

3  Hogan.

4             Can you hear me, Your Honor?

5             THE COURT:  I can.

6             MR. HOGAN:  Thank you.  Good morning.

7             Daniel Hogan of Hogan McDaniel, on behalf of

8  Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck.

9             Your Honor, so the Court is completely informed,

10 yesterday, or I'm sorry, two days ago, Eisenberg filed a

11 joinder to the debtors' emergency motion.  We reserved all of

12 our rights in accordance with the rules and we made some basic

13 arguments about what happened, why it happened, what the

14 justifications were for it.

15            And to that end, Your Honor, I'm on the call here

16 today.  Mr. Rothweiler is on the call and available and would

17 like to address the Court.

18            THE COURT:  Certainly.

19            Mr. Rothweiler?

20            MR. ROTHWEILER:  Thank you, Your Honor.

21            Can you hear me?

22            THE COURT:  I can.

23            MR. ROTHWEILER:  Your Honor, this will be somewhat

24 tough for me to get through, Your Honor.  I did not expect to

25 address the Court today, but the events of the last

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 26 of 63

26

1  (indiscernible) has necessitated me addressing the Court

2  again.  I sat last night and thought about the comments that I

3  would make today and quite candidly, Your Honor, it made me

4  extremely uncomfortable.

5          I've been in court hundreds, if not thousands of

6  times in my 40-year career.  I have always represent the

7  catastrophically injured, but this is the first time that I've

8  actually had to represent myself.  I cannot even express my

9  level of discomfort.

10          I heard the Court during the last hearing asking

11  what my position was.  I did not speak up because I needed to

12  reflect; I needed to take everything in.

13          This is not about me.  It is about (indiscernible).

14  It's about how the events over the last 10 days have tainted

15  the voting process.  This is about the survivors and it's

16  about the survivors getting a fair shake, which they haven't

17  gotten over the last 50 years.  I don't want it to happen to

18  them again.

19          Your Honor, I have fine lawyers and they have

20  expressed the facts of what happened here, but I think my

21  participation today needs to, I need to tell you the

22  backstory, because if I were sitting where you are sitting,

23  Your Honor, I would say to myself:  What's going on here?

24  What's the why in this?  Why is all of this going on?

25          So, I need to take you back to July 2020.  My law

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 27 of 63

27

1  firm, Eisenberg Rothweiler, broke off from the TCC over

2  philosophical differences.  The TCC was not pleased with my

3  departure; it wasn't an amicable departure.  But we departed

4  because we had differences.

5          Eisenberg Rothweiler, along with Kosnoff Law, and

6  ADA Law, and several other law firms formed a Coalition

7  because we wanted to go it alone.  We had our own thoughts

8  about what we wanted to.  I said this during the first

9  hearing, we didn't want to leave any survivors behind and that

10 was the philosophical difference.

11         Soon after forming the Coalition, both, Kosnoff and

12 Van Arsdale then quit the Coalition.  Eisenberg Rothweiler

13 took a leadership position in the Coalition as one of three

14 law firms negotiating on behalf of our 16,800 survivors and on

15 behalf of all of the 84,000 survivors.  Eisenberg Rothweiler

16 represented the largest group of survivor clients in the

17 Coalition.

18         Then came the Kosnoff tweets.  It started soon

19 after they quit the Coalition, Your Honor.  The tweets

20 attacked everybody.  It started out with the BSA lawyers, Ms.

21 Lauria; insurance counsel, Mr. Schiavoni; Coalition counsel,

22 Mr. Molton; the three mediators, Judge Carey, Timothy

23 Gallagher, Paul Finn; this Honorable Court; and me and my law

24 firm.

25         The most repeated, derogatory, inflammatory,

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 28 of 63

28

1  defamatory tweets were aimed at me.  Why was I the target?

2         The Court needs to know.  As the spokesperson for

3  the Coalition, I interacted with the media.  I was the person

4  out front.  I also moderated our town hall meetings for

5  thousands of survivors.  I do that every Tuesday night, Your

6  Honor.  I put it together and I moderate it.

7         In my role as spokesperson, I touted the

8  accomplishments of the Coalition, which the TCC, quite

9  frankly, did not like.  They responded to a lot of my messages

10 with their own video messages where they said things about me.

11        I'm a big boy, Your Honor.  I've been doing this

12 for 40 years.  As I said, it's not about me; it's about the

13 integrity of the process.

14        But when I touted the accomplishments of the

15 Coalition, I would just like to go through quickly, Your

16 Honor, what they were, because this is at the heart of why I

17 have been attacked and my law firm has been attacked.  The

18 Coalition has put together the largest compensation fund in

19 the history of the United States to compensate survivors of

20 childhood sexual abuse, which stands at almost $1.9 billion.

21 We are proud of that.

22        That fund is on the verge of growing significantly

23 larger, which will likely be the target of future tweets.

24 Over the last two days, a lot of people on the Zoom call were

25 in New York City, negotiating, working around the clock,

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 29 of 63

29

1   putting together that largest fund.  It doesn't matter how

2   high we make that fund.  I will still be criticized.  The

3   Coalition will still be criticized and Mr. Kosnoff will keep

4   on tweeting.

5          Besides building the largest compensation fund, the

6   Coalition has also been the leader in establishing trial

7   protection measures; just as important to us is that this

8   never happens again to any child.  The Coalition has pushed

9   for Board seats on both, the BSA National Executive Board and

10  on the individual boards of the 250 local councils.  What the

11  Coalition has done is historic.

12         Survivors are going to serve on the boards of all

13  the local councils and of the national board and they're going

14  to protect children in the future; that's their charge.

15  Moving forward, survivors will prioritize the protection of

16  children in their roles as voting board members.

17         These board seats, Your Honor, were procured

18  through discussions with the BSA and the ad hoc committee of

19  local councils.  There's a real dialogue going on, a real

20  dialogue.

21         The Coalition has also formed a survivor Advisory

22  Group that has met with the CEO of the Boy Scouts and the

23  executives of the BSA.  We just had that meeting a week ago;

24  it was one of the most dynamic and productive conversations I

25  have ever been a part of in my entire career.  Every one of

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 30 of 63

30

1   the decision-makers from the BSA was on the Zoom call just

2   like this with 15 survivors, and it was an honest exchange.

3   But the goal of that group was, we have got to make this

4   better for the children, and people are listening and hearts

5   are opening, and it was really just an unbelievable experience

6   for everybody involved.

7         All of the BSA people that are decision-makers were

8   on that call, Your Honor, and this group will continue to meek

9   with the BSA on a regular basis over the next year.  This is

10  not just something for this bankruptcy.  This group is going

11  to meet for years and years into the future that make sure

12  that child safety is a priority.  And the goal of the group is

13  to make child safety a gold standard.

14        I have said to the BSA, you have an opportunity

15  here.  The light is shining on you:  Make child safety the

16  gold standard.  Not just for the Boy Scouts; for every group

17  that involves children.  Change the world.  You have an

18  opportunity.  Change the world.

19        With these accomplishments, Your Honor, the reason

20  I ticked them off is I believe the TCC felt threatened.  They

21  needed to attack.  It's like when I'm in a courtroom and I'm

22  advocating on behalf of my client.  The defense needs, then,

23  to attack.  They need to attack my argument.  I think the TCC

24  also knew that survivors overwhelmingly were in support of not

25  only the fund that was being built, but the child-protection

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 31 of 63

31

1   matters that we were instituting.

2          The Coalition is clearly in favor of the plan

3   approval.  We have made no secret about that.  I talk about

4   that every week in our town halls.

5          Kosnoff and the TCC want the plan to fail.  They've

6   not hidden that fact either.  But what they did, Your Honor,

7   was they developed to coordinate a strategy between Mr.

8   Kosnoff, Mr. Stang, and Mr. Lucas to destroy the messenger in

9   order to destroy the message.  Let me just repeat that.  It

10  bears repeating:  Destroy the messenger --

11          UNIDENTIFIED:  God bless all y'all.

12          MR. ROTHWEILER:  -- and you destroy the message.

13          Unfortunately, for me, I'm the messenger.  But more

14  importantly, what the message is.  They are trying to destroy

15  the message.  They don't want this plan to pass.

16          They instituted a "win it all" core strategy that

17  they implemented to defeat the plan.  Discovery has revealed

18  and will continue to reveal that this was a planned attack by

19  the TCC.  Ms. Lauria has already laid out the email chain

20  between Mr. Kosnoff after Mr. Lucas.  The result was the

21  dissemination of Mr. Kosnoff's letters, one of which was

22  defamatory.

23          The words used in the Kosnoff letter, sent by Mr.

24  Stang, to 20,000 survivors; all of my clients, Your Honor, and

25  outside of my group, another 7,000 or so.  On a personal

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 32 of 63

32

1   level, I can't tell you how that affected me.  I can't put it

2   into words.

3        But here is what was said in the letter.  Eisenberg

4   Rothweiler used deceit -- deceit -- skewed, patently false,

5   and misleading statements.  Actions were possibly illegal.

6   The motivation was greed.  Greed.

7        Nothing worse could be said to discredit a lawyer.

8   Nothing.  I can't imagine stronger words against a lawyer.

9   Nothing could be worse to discredit a lawyer than the words in

10  that letter sent by Mr. Stang to 20,000 survivors.

11        In our profession, Your Honor, reputation is

12  everything.  Everything.  It's the only currency we have with

13  lawyers:  what our reputation is.  Everybody on this Zoom call

14  cherishes their reputation and so do I.  But they knew that

15  destroying my reputation helped serve their purpose.

16        Mr. Stang sending the Kosnoff letter was a clear

17  endorsement and gave legitimacy to the Kosnoff tweets, because

18  that's what Mr. Stang did.  As a lawyer for the TCC, court-

19  appointed by the U.S. Trustee, he gave legitimacy to the

20  Kosnoff tweets.  And, Your Honor, I try not to look at them

21  because they're daily.  On a personal note, I have a wife and

22  children that read those tweets.

23        I picked out three of them for the Court.  This was

24  by Mr. Kosnoff:

25        "Watch the Ken Show, starring Ken, featuring the

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 33 of 63

33

1  shysters tonight at 8:00 Eastern.  Watch how a true

2  professional liar shamelessly lies through his teeth about the

3  Coalition plan and how great it is.  Aside from the lies,

4  behold the abusive fear monitoring.  Vote no.  Reject."

5          That was given the *imprimatur* of the TCC when

6  Mr. Stang sent out his letter to those 20,000 people.

7          Another tweet, and he put a picture of me on his

8  Twitter feed:

9          "Liar, whose lies to survivors constitute abuse and

10  re-victimization.  Stop lying, Ken.  Save your tattered

11  reputation and abandoned support for this sell-out plan."

12          That tweet was sanctioned by Mr. Stang when he sent

13  out that letter by Mr. Kosnoff, putting an endorsement on all

14  of the Kosnoff tweets.

15          And finally, Your Honor, not to belabor the fourth

16  point, Mr. Kosnoff tweeted:

17          "I was not the first to call, 'Liar, pants on

18  fire,' on Ken Rothweiler.  The TCC led the way."

19          Just think about that.  And Mr. Stang endorsed that

20  tweet when he sent out the letter.

21          As a result of Mr. Stang sending out the Kosnoff

22  letter, he gave the Kosnoff tweets the legitimacy and the

23  *imprimatur* of the TCC, the official committee appointed by the

24  U.S. Trustee.  The intention -- if the intention of sending

25  the Kosnoff letter was to destroy the messenger, to destroy

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 34 of 63

34

1   the message, I say to Mr. Stang and Mr. Lucas:  Mission

2   accomplished.  You set out to hurt me, destroy me, impugn my

3   integrity.  Mission accomplished.  Congratulations.

4           More importantly, forget about what it did to me,

5   Your Honor.  I'll recover.  Being a trial lawyer in a

6   courtroom is a tough thing for anybody to do, and having tried

7   over 100 cases, I know what it is like to win and I know what

8   it is like to lose.  I know what it's like to go to a family

9   that has suffered extreme hardship, devastation of a family

10  member.  I have been through hundreds of those conversations.

11  But this is different because this involves the survivors, a

12  group that we've vigorously and zealously tried to represent

13  throughout this 20-month time period.

14          Now, Mr. Stang and Mr. Lucas' action has been an

15  endorsement of the Kosnoff letter and tweets, and clearly,

16  Your Honor, it has tainted the vote.  I can't say it any other

17  way:  It has tainted the vote.

18          How do I come back from this?

19          What I have been the spokesperson for this group

20  and I try to convince people to vote for the plan when I have

21  been called the things that I have been called, how do I do

22  it?

23          The survivors' reactions, Your Honor, we get

24  hundreds and hundreds and hundreds of calls every day.

25  They're angry.  That's the best way for me to characterize it.

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 35 of 63

35

1  They're angry.

2          Some of them have called me a liar and have used

3  the words that Mr. Kosnoff has used in his tweets.  They

4  called me a sellout, a liar, and more horrible things that I

5  won't even express on this call.  But people are angry, and if

6  they're not angry, they're really confused.  They didn't

7  understand why the TCC, why the lawyer for the TCC sent out

8  that letter.

9          The effect on the vote, Your Honor, we can't unring

10  the bell.  That's the problem here; we can't unring the bell.

11          The remediation letter that went out, it didn't

12  serve to do any purpose, Your Honor.  All it did was to serve

13  to confuse my clients and I'm sure a lot more clients.  After

14  the remediation letter went out, we got more and more and more

15  calls expressing confusion.

16          Mr. Stang and Mr. Lucas' action were, Your Honor,

17  they were unethical.  They were intentional.  And they were

18  prejudicial.

19          So, what's the remedy?

20          I actually sympathize with the Court, because I've

21  tried to put myself in the position of a judge, and I've been

22  doing that for 40 years, and I try to say to myself, what

23  would the judge do?  What would I do if I was in the judge's

24  position?

25          Quite frankly, Your Honor, Mr. Stang and Mr. Lucas

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 36 of 63

36

1   have caused a mess for this Court, a cataclysmic mess for this

2   Court, and I don't know how the Court is going to remedy it.

3   No remedy can completely remove the taint that was caused.

4   You can't unring that bell.  It can't happen.

5          If I was in State Court, Your Honor, as I am most

6   of the time, under similar circumstances, I would request to

7   the Court a mistrial, a mistrial, because I know at this

8   point, I can't get a fair trial.  And that mistrial, Your

9   Honor, in my belief, would be granted by a Trial Court under

10  similar circumstances, but this is Bankruptcy Court.

11         To remove the taint, Your Honor, you have to remove

12  those that caused the taint; otherwise, the taint will always

13  remain.  The only possible remedy is the disqualification of

14  Mr. Stang and Mr. Lucas.  That will send a message that what

15  they did tainted the voting process.  I can see no other

16  remedy.  They cannot have impunity; otherwise, the integrity

17  of the vote will always be in question.  Disqualification,

18  Your Honor, is a heavy sanction, but this is a situation that

19  by their own conduct, Mr. Stang and Mr. Lucas have

20  disqualified themselves.  They have disqualified themselves,

21  Your Honor.  All you have to do is move to effectuate that.

22         I don't think I have anything else to say, Your

23  Honor.  When I was preparing these remarks last night, I had a

24  lot more to say, but I think I covered everything I want to

25  say.  The last thing I'll tell you is we care, the Coalition

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 37 of 63

37

 1   cares passionately for the survivors; it's the reason we got

 2   into this in the first place.

 3          Now, we think that they're being -- they actually

 4   are being re-victimized with this whole process being tainted.

 5   I think we can go on, but I think the remedial action that I

 6   pointed out must be instituted in order to attempt to correct

 7   the taint that Mr. Stang and Mr. Lucas have put on this

 8   proceeding.

 9          Thank you, Your Honor.  I really appreciate you

10   giving me the time to express myself.  Thank you very much.

11          THE COURT:  Thank you.

12          Ms. Grassgreen?

13          MS. GRASSGREEN:  Good morning, Your Honor.

14          Deborah Grassgreen, Pachulski Stang Ziehl & Jones,

15   on behalf of the Official Committee of Tort Claimants.

16          I have to take a deep bankruptcy estate, Your

17   Honor, because this is a status conference.  We asked if there

18   was anything else that anyone wanted us to do and we haven't

19   had anything presented to us and we just heard, basically, an

20   hour and five minutes of open argument, essentially, Your

21   Honor, on a substantive motion that is very, very serious,

22   that we take very seriously -- we are not tone deaf -- and I

23   will respond to some of the comments.

24          I really wasn't planning on it because, from my

25   perspective, there were a few things that I heard that we

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 38 of 63

38

1  actually agree with completely.  Completely.

2          But the integrity of the voting is paramount.  The

3  integrity of the voting is paramount.  We, 100 percent, agree

4  with that.

5          The covering email was inappropriate.  It was

6  wrong.  It was a mistake.  We accepted it.  We've owned it.

7  We've apologized.

8          Mr. Rothweiler, I'm sorry.  Our firm is sorry.  Mr.

9  Stang is sorry.  Mr. Lucas is sorry.  We've said it.  I'm

10  saying it again.  I'll say it loud and clear.

11          I know that you invited your clients to be on this

12  call and I assume a lot of them are and they can hear it from

13  you now, and I'm telling you it and it comes from me and it

14  comes from the highest levels of our firm:  The cover and

15  email had language that was not appropriate and we shouldn't

16  have done it and we shouldn't have directed people to the

17  Twitter and we don't endorse the Twitter and Mr. Stang said

18  it.

19          Putting that aside, this is about the integrity of

20  voting and sensationalizing all of this is not helping.  It's

21  like, you know, it's the holidays, Your Honor, right.  I'm

22  ordering early because of the supply chain, presents for my

23  kid.  If I took an unwrapped gift and put it in the closet and

24  said to my son, Don't look at it -- don't open it -- it's

25  there, but don't look at it, what's he going to do?

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 39 of 63

39

1          He's going to go look at it.

2          So all of this going on, rather than doing this in

3   an orderly way, in the context of relief being requested, full

4   responses.  We haven't even had discovery and we just heard

5   argument.  So, I mean, this isn't helping.  It really isn't

6   helping.

7          And we do want to help.  We do want to help.  We

8   are not running from this.  We are owning it and we have said

9   to everyone, and you can ask, I have had the conversations

10  with Ms. Lauria, with Mr. Andolina.  I haven't spoken to

11  Mr. Molton about this, but if he calls me out, I'll have the

12  conversation with him.

13         What else would you like us to do?

14         That is what we are focused on.  And I will ask

15  you, Your Honor, what else you would like us to do.

16         But before I get to that, I really don't want to go

17  point by point, because I think we're just exasperating it,

18  but there's been a couple of things that have been said that I

19  just can't leave unsaid, unresponded to.  So I'm just going to

20  address a couple of points.  I'm not even looking at any notes

21  that I had before this hearing.

22         When we said in our pleading that all Mr. Lucas did

23  was change or capitalize, reject, I think is what was actually

24  done, we were responding directly to what they were responding

25  to:  the email about the covering email.  We weren't talking

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 40 of 63

40

1 | about the underlying letter.

2 | So, if that was unclear, I apologize, but we were

3 | not -- it wasn't a fraud on the Court, Your Honor.  This is

4 | moving really quickly.  We responded to discovery.  We have

5 | more discovery.  We haven't hidden anything.

6 | And the implication that was in the pleadings that,

7 | oh, this big revelation, newly discovered evidence, that this

8 | was Mr. Lucas' idea, that's not a secret either.  Because in

9 | the very first response that Mr. Stang sent that's attached as

10 | Exhibit 20 to the declaration in support of the motion, he

11 | told everyone what happened.  He said we offered and Kosnoff

12 | accepted.  He didn't run from it.  He didn't run from it that

13 | Sunday.  So, I know it's helpful to try to attack the

14 | messenger; in that case, Mr. Stang.

15 | But none of this is helping, Your Honor.  None of

16 | this is going to help the voting process.  We need to put our

17 | heads together and figure out what will -- you need to tell us

18 | what will.

19 | I don't think I need to respond to the oral motion

20 | to disqualify Mr. Lucas and Mr. Stang, unless you tell me that

21 | I do today, because I wasn't prepared for it, and I think that

22 | is a very serious issue and we should have an opportunity to

23 | respond appropriately.

24 | But what we need to focus on is what we can do.

25 | And I really, I'm almost at a loss at this point, because all

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 41 of 63

41

1  of this discussion in the public forum, right, where people

2  can go and hear about it, is just making it worse.

3        There is another story, Your Honor.  I'm sure

4  you're not surprised to hear me say that what you have heard

5  about what they believe the motivations were and the way the

6  voting was coming out and everything else, that there is

7  another side.  But I don't really think now is the time.

8        If you want me to, I can tell you what my

9  understanding is.  We're putting up four lawyers -- three

10  lawyers and a staff member for deposition.  We understand

11  Mr. Kosnoff is going to be deposed on Friday so people will

12  have a chance to ask him his side of it.  And then we can set

13  up a briefing schedule on whatever further motion is going to

14  be brought.

15        But we're not tone deaf.  We take it seriously.

16  We're sorry, but at this point, I'm not quite sure the point

17  of going point by point through everything that has been said.

18        I do want to address the attached letter, which is

19  not what we were referring to in our motion.  Absolutely,

20  Mr. Lucas edited that.  State Court counsel call us all the

21  time and ask us to look at things:  Is this right?  Is it

22  wrong?

23        He was trying to make it more accurate.  And when

24  you look at the redline, you're going to see that.

25        And the words that were quoted, the terrible words,

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 42 of 63

42

1   that's not in that letter, and we don't think there's anything

2   wrong with editing a State Court counsel's letter if they

3   asked us to.  It's not in that letter.  The issue is the

4   covering email.  We acknowledge that the issue is the covering

5   email and we have apologized for it.

6        So, Your Honor, I am more than happy to answer any

7   questions, to have a conversation about what we can do at this

8   point, about how you would like this handled at this point, to

9   be constructive, to be thoughtful, to be professional.  That

10  is a commitment that we have made to the Court.  It's a

11  commitment that we have made to the parties.  It is a

12  commitment that I will make every single time that I am here.

13       But I am at a bit of a loss at what to do with the

14  statements.  I mean, clearly, we disagree, but going point by

15  point, again, this is not --

16       THE COURT:  I don't think you should and the reason

17  I don't think you should going point by point is because

18  you're unprepared to do so.  And I will tell you that I am

19  very surprised to learn that Mr. Lucas edited

20  Mr. Kosnoff's letter, the underlying October 18th, I think it

21  was, letter.  Based on what has been said in court, that

22  surprises me.  And I would have to go back and look at

23  specific representations, but that surprises me.

24       So, my suggestion is you not say anything further,

25  because I don't think you're fully apprised of the involvement

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 43 of 63

43

1   of others in your firm in this situation.  So, that's my

2   thought.

3           I will also say that tone deaf is probably a very

4   good characterization of the supplemental statement when I

5   read it.  I don't know that that was the exact word that

6   sprang to mind, but it was a similar word that sprang to mind.

7           And so, quite frankly, my concern is, on a go-

8   forward basis, what's going to happen and what is the TCC

9   counsel going to be doing, given that -- I'm not sure, just,

10  notwithstanding the apology which, from you, Ms. Grassgreen,

11  is, I believe, heartfelt might be an incorrect word for a

12  professional setting, but I think it is truly spoken and an

13  honest apology.  But my concern is what is going to happen

14  going forward.

15          I, quite frankly, have given this thought and don't

16  know what we can do to rectify the vote.  Maybe it won't be an

17  issue.  We'll have to see once the vote comes in and people

18  have an opportunity to assess it and put some parameters

19  around it.

20          But I am concerned, going forward, and do think

21  that this is a very serious situation.  I expressed that at

22  the hearing where I first heard about this, that I had

23  significant concerns, and I continue to have significant

24  concerns.

25          And what I've seen in the submissions that were

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 44 of 63

44

1   made prior to this hearing don't give me a lot of comfort.

2           MS. GRASSGREEN:  Your Honor, we're open to any

3   constructive approach.  The other thing that everyone has said

4   here is it is about the survivors.  We're still getting dozens

5   and dozens of emails.  It probably won't surprise you that we

6   are very carefully considering every response, but this

7   morning I got an email forwarded to me by one of our staff

8   saying, "How do I respond to this?"  And the survivor

9   basically said, "I've emailed my counsel four or five times, I

10  don't have a ballot yet, I can't get a ballot, they're not

11  responding to me."

12          These are the kinds of things we got.  I asked one

13  of our staff members how many inbound emails we've gotten

14  since we set up that email account and the answer was almost

15  9,000.

16          So -- and I'm working on compiling the nature of

17  the communication and putting them into buckets, and some of

18  them are, you know, most recently, "I need a ballot, I need a

19  ballot."  Some of them are, "My lawyer is not returning my

20  call; I don't know who my lawyer is.  I need a copy of my

21  claim.  How do I amend my claim?"  Some of them are more

22  substantive.

23          One of them last week -- and one of the lawyers in

24  our firm took a call that shook them from the bone -- was from

25  a survivor that was facing serious mental health issues that

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 45 of 63

45

1   moment.

2          So, yes, it's heartfelt from us about all of this,

3   but this whole case, it's so important that we get the

4   communication right and we didn't get it right, Your Honor, in

5   that covering email, we didn't get it right.  And you're

6   right, heartfelt is right, because some of the people here

7   know me, I'm an emotional person and I do speak from my heart,

8   and I'm speaking from my heart today.  We just need to sit

9   down -- nobody should weaponize this to make it worse.  We

10  need to take the temperature down; we need to put our heads

11  together.  I see Mr. Buchbinder's hand up.  Maybe the U.S.

12  Trustee can get involved and we can try to figure out if

13  there's some way to do it.

14         I think there's a lot of voting issues, Your Honor,

15  this is not the only one, we're hearing about it in our

16  emails.  This isn't the place to present it.  We'll present it

17  all to you, but we do need to figure out something

18  constructive and I said we're open to anything constructive.

19         THE COURT:  Thank you.  I don't know that I have

20  that constructive thought today.  I will say that, having had

21  the job of committee counsel in the past, my former life, but

22  not certainly in a case like this -- this case really is

23  somewhat, if not unique, it's an emotionally-charged case --

24  the line between sending people the helpful information and

25  answering their questions and giving advice needs to be drawn.

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 46 of 63

46

1 Okay?  And I remember saying on any number of occasions, I

2 cannot give you legal advice, I am not your lawyer.

3          And so I think I'll just put that out there that

4 maybe parties disagree, but I certainly think that's an

5 appropriate line.  Committee counsel is not the lawyer for any

6 individual survivor.  They have a client, their client is the

7 committee; the committee is the committee counsel's client.

8 Just like every other lawyer on this call has a client, the

9 committee does and that's who the committee gives advice to.

10          Mr. Buchbinder?

11          MR. BUCHBINDER:  Thank you, Your Honor.  David

12 Buchbinder on behalf of the United States Trustee.

13          I've waited to comment because the United States

14 Trustee is still waiting to see all of the facts in the case

15 and we are reserving our rights on all of the issues that are

16 raised by these facts, but I would add that we would share the

17 same concerns expressed a few moments ago by the Court.

18          Thank you, Your Honor.

19          THE COURT:  Thank you.  I do not know who Mr.

20 Terterisi (ph) is, but I see a hand.

21      (Pause)

22          THE COURT:  I cannot hear you.

23      (Pause)

24          THE COURT:  I'm sorry, Mr. Terterisi, I cannot hear

25 you.

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 47 of 63

47

1          I'll hear from Mr. Molton now.

2          MR. MOLTON:   Judge, just three very quick points.

3   First of all, we didn't expect as we prepared for this hearing

4   yesterday to be in a position where we had to report to you

5   what we found yesterday -- and night, but we think that we had

6   to, it was our obligation under Model Rule 8.3(a).  And I'd

7   refer you to In re Universal Product Building Products, Judge

8   Walrath, 486 B.R. 650, 660, attorneys have that obligation and

9   it was all of our obligation, in light of the pleadings that

10  were filed and the statements that were made on the record, to

11  bring this to your attention, first.

12          Second, Judge, I do note -- and I know that one of

13  the things that Ms. Lauria and I were going to talk about and

14  raise and I think got lost in the shuffle of what happened

15  last night is we're still waiting, unless I'm told otherwise,

16  Mr. Lucas apparently on November 6th took all the responses to

17  the emails that the TCC sent out to those 20,000 survivors and

18  others and sent them to Mr. Kosnoff, I don't think we have

19  that.  And I'm just putting you on awares that we expect that,

20  we expect that promptly and before the depositions that are

21  going to happen in a few days, if not earlier.

22          And, third, Your Honor, I raised at my earliest

23  point today the D designation issue, and I would really -- I

24  know that TCC's counsel had a lot that she had to deal with,

25  but this should be a relatively easy one, and I would ask that

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 48 of 63

48

1    she affirm, you know, that the Coalition's pleadings, that the

2    confidentiality designation that we've put on them or that we

3    abided by by filing that under seal is confirmed to be

4    withdrawn and we can file that on the public docket.  And I

5    would also like to hear whether we can have a D designation of

6    the confidentiality that inures over or is presently over the

7    October 17th email exchange as well.            Those are my

8    three points, Judge.

9            THE COURT:  Thank you.  And I just did note that I

10   had highlighted that in my notes but didn't get back to it.

11           Ms. Grassgreen, why is any of the communications

12   around this -- these events highly confidential?

13           MS. GRASSGREEN:  Your Honor, I'm going to pass that

14   off to Mr. Kornfeld.  I'm not sure that we think that they

15   are, I think we just hadn't gotten to responding.  We got

16   about four different requests yesterday for D designation and

17   we were trying to review everything at the same time, and we

18   responded to some and we didn't get to the others.  But I'm

19   going to let him respond.  He's handling all of the discovery

20   matters, so he's better positioned to respond to it.

21           THE COURT:  Mr. Kornfeld?

22           MR. KORNFELD:  Good morning, Your Honor, Alan

23   Kornfeld for the TCC.  Those communications are not

24   confidential.  I was in the middle of responding to three or

25   four pleadings yesterday, for better or for worse, and I got

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 49 of 63

49

```
 1   to two of the requests for D designation, I didn't get to the
 2   third one, I apologize to Mr. Molton.  Any communications
 3   between Mr. Kosnoff and us are not confidential.  I hope that
 4   takes care of the issue.
 5             MR. MOLTON:  Thank you.
 6             THE COURT:  Thank you.
 7             Mr. Patterson?
 8             MR. PATTERSON:  Good morning, Your Honor.  I just
 9   wanted to let the Court know that we -- that our clients, as
10   the Court knows, have opposed the plan and we are very
11   concerned by the course of events, and we are also involving
12   ourselves in investigating what has transpired with regard to
13   solicitation.  So we're actually the ones who noticed the
14   deposition of Tim Kosnoff that Ms. Grassgreen alluded to.  I
15   believe now it is going to go forward Monday, pursuant to
16   conversations that I had with Mr. Wilks this morning.
17             And we are very concerned about the manner in which
18   this has taken place and I just wanted to advise the Court
19   that, you know, from our point of view, there's a lot of
20   adjectives, but not yet a lot of facts.  And, you know, we're
21   trying to develop the facts as well, I know others are too,
22   and when we have all those facts developed to our satisfaction
23   I think will be the appropriate time to consider what
24   additional remedies there may be required with regard to the
25   solicitation process.
```

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 50 of 63

50

1           Thank you, Your Honor.

2           THE COURT:  Thank you.

3           And let me add this as well and then we're going to

4    move on to the agenda -- or the next matter -- well, the

5    continued, the order that should be entered -- and somebody

6    said this before and this is very true.  Parties can disagree

7    on whether this plan should be confirmed or not, parties do

8    disagree about whether this plan should be confirmed or not,

9    and I, of course, have no view on that at this point.  Those

10   disagreements need to take place within the bounds of

11   professional obligations, professional ethics, decency, and

12   civility.

13          All parties need to be able to express their views

14   in a way that puts their views out there, but doesn't

15   denigrate anyone else.  Certainly in front of the Court, it's

16   wholly unhelpful to your position to be inflammatory,

17   defamatory, anything other than professional and civil, which

18   I know, I know the parties at this hearing and counsel to this

19   hearing are quite aware of because they conduct themselves

20   that way every day and should.

21          And, quite frankly, I agree with Mr. Rothweiler.

22   As an attorney, your currency is your credibility and those

23   who don't act professionally, those who don't act civilly and

24   with basic decency, do nothing for their credibility either in

25   front of this Court or generally.

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 51 of 63

51

1          So there are things I can control that happen

2    during hearings and in front of this Court, and there's a

3    thousand times more things that happen outside of this

4    courtroom that I may or may not be able to comment on -- well,

5    I can comment on it, but I can't control it necessarily.  But

6    I expect utmost professionalism certainly from every lawyer,

7    every lawyer, whether they're appearing in front of me or,

8    tangentially, out in the world in this case, that's what I

9    expect, whether I can control it or not.  And I would think

10   that the attorneys would expect nothing less of themselves.

11          Okay.  We have an agreed form of order, correct?

12          MS. GRASSGREEN:  We do, Your Honor.

13          MS. LAURIA:  Yes, Your Honor.  This is Jessica

14   Lauria from White & Case.  We worked with the TCC's counsel

15   over the weekend, as well as with the Coalition and FCR,

16   leading into, I believe it was Monday.  I think we transmitted

17   that form of order to chambers and then also filed it on the

18   public docket yesterday.

19          That form of order does make it clear that it is an

20   interim order and it is without prejudice to any party in this

21   case's rights to seek additional relief as the facts continue

22   to unfold.  We also separately -- I'll speak on behalf of the

23   debtors -- committed to following up with Ms. Grassgreen and

24   Mr. Kornfeld concerning certain aspects of additional relief

25   that we may be seeking and we will do that.

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 52 of 63

52

1          THE COURT:  Okay.  Has it been uploaded?  Mr.

2  Abbott, do you know?

3          MR. ABBOTT:  Your Honor, I do not believe it's been

4  uploaded yet, but I'll ask my colleagues in my office to do

5  that immediately -- well, I'm sure they just heard that, so

6  I'm sure it will happen quickly, Your Honor.

7  ** 1.    THE COURT:  Okay.  Thank you.  That order will be

8  entered as an agreed to interim order.

9  ** 2.    MR. ABBOTT:  Thank you, Your Honor.  I think that

10  (indiscernible) number 2 on the agenda, which is Century's

11  letter regarding the deposition of Mr. Kosnoff.  I'll turn it

12  over to Schiavoni, if I may.

13          THE COURT:  Okay.  I had some difficult with some

14  feedback with you, Mr. Abbott, but not with others.  So,

15  hopefully, that won't be an issue.

16          Mr. Schiavoni?

17          MR. SCHIAVONI:  Your Honor, I think we have an

18  agreement with Mr. Kosnoff's counsel and others about him

19  appearing for deposition.  I'm glad to say, we had noticed it

20  for Friday, I spoke to Mr. Wilks this morning and Mr.

21  Patterson, we're going to just move it to Monday by agreement

22  between the three of us.  And there's some document issues

23  that we thought that need to be resolved, I think we can do

24  that offline without the intervention of the Court with that

25  extra day of moving it to Monday.  So that's what we're going

1  to do.

2          So, unless there's an objection heard, you know, we

3  intend to move it, with Mr. Wilks' consent and Mr. Patterson's

4  consent, to Monday.

5          And, Your Honor, if I may, just indulge me for just

6  one second, I just would add one thing.  I think you were

7  alluding with civility to what I have known for 20 years is

8  the practice in Delaware.  There actually is, to my surprise,

9  a code of civility that the Supreme Court has actually

10 adopted, which I don't think Delaware lawyers would look at

11 because they know the practice.  But it does strike me that

12 that code of civility, to the extent it's been adopted by the

13 Supreme Court, is one that may give some enforceable guidance

14 on the bounds of the First Amendment or have other, you know,

15 useful effect that you might consider on a going-forward

16 basis.  But certainly if, you know, Mr. Kosnoff perhaps had

17 abided by it, like we might not have been in some of the areas

18 where we are now.

19         But, in an event, I just wanted -- I know Your

20 Honor is probably aware of that, I just wanted to point it

21 out, but I think we have agreement on this Mr. Kosnoff

22 deposition issue.

23 ** 2.    THE COURT:  Okay.  Thank you.  I'm not hearing any

24 disagreement, so certainly that's fine.

25         And, yes, I would guess my expectations of civility

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 54 of 63

54

1  are informed and formed by my upbringing in the Delaware bar,

2  which I'm quite fortunate enough to be a part of.

3          Okay.  Let me ask -- that's all that's on our

4  agenda today, correct?

5          MR. ABBOTT:  That is correct, Your Honor.

6          THE COURT:  Okay.  Let me ask a question, because

7  we have a lot of discovery disputes scheduled to be heard on

8  Friday and just, I think, this morning, or perhaps it came in

9  yesterday, I've gotten a request to put off hearing certain

10 discovery disputed filed by the TCC and by what's called the

11 joining insurers, which are 22 of the debtors' liability

12 insurers, certain disputes.  And along with that request came

13 a request that the fact discovery deadline as it relates to

14 the depositions of the joining insurers' corporate designees

15 and individual witnesses be extended for 11 days to December

16 10, or 11 days after I can hear these motions.

17         And I bring this up because I don't view the fact

18 discovery cutoff deadline or any part of the scheduling as

19 particular to -- I view it as global and that it all impacts

20 everyone else.  And I may be wrong on that, but my concern in

21 -- well, my concern in putting off the discovery disputes is

22 that we know we're on a tight deadline and those matters need

23 to be heard.  Of course, I don't want to -- well, if the

24 parties can resolve things, that would be better.  But,

25 second, my concern is a request that one party or a couple of

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 55 of 63

55

1    parties somehow get outside of our deadlines and that creates

2    a problem for everyone else.

3           So I'd like to know if people have read that

4    request and if people have thoughts with respect to that

5    request, and I'll start with Mr. Kurts.

6           MR. KURTS:  Good morning, Your Honor, Glenn Kurts

7    from White & Case on behalf of the debtors.

8           We reviewed the communication and we don't have any

9    particular issue with interim dates.  What we care about, as

10   Your Honor knows, is that we hold our confirmation hearing

11   date.  And we do think that there is some room to allow some

12   movement in the dates if it allows parties more time to

13   resolve disputes and if it allows more time for people to take

14   the discovery, appropriate discovery that they seek.

15          We agree with Your Honor, though, that it doesn't

16   make sense to have piecemeal deadlines, the deadlines do have

17   to be global.  So we don't object to modifying the scheduling

18   order to provide everybody with some additional time, but I

19   don't think it makes a lot of sense to have a handful of

20   parties treated differently than the other parties.

21          THE COURT:  Well -- thank you -- and my concern is

22   I'm certain that more than one party has noticed the

23   deposition of an insurance company, so that's why it's more of

24   a global impact.  Okay.

25          MR. KURTS:  You're exactly right.  Everybody is

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 56 of 63

56

1  sort of noticing the same depositions and, even if they don't,

2  there's coordination protocols in our agreements and our

3  stipulations which require people to reach out and coordinate

4  and split time and do things like that.  So you're absolutely

5  right that movement on one deposition or a resolution on one

6  affects everybody.

7            THE COURT:  Mr. Moxley?

8            MR. MOXLEY:  Thank you, Your Honor.  Cameron Moxley

9  of Brown Rudnick on behalf of the Coalition.

10            I want to thank the Court for raising that issue.

11  We did note that request was made and we would just echo Mr.

12  Kurts that we think that extension deadlines in the schedule

13  should apply globally to all parties.

14            Thank you, Judge.

15            THE COURT:  Thank you.

16            Mr. Schulman?

17            MR. SCHULMAN:  Good morning, Your Honor, Jeffrey

18  Schulman from Pasich LLP.  My firm is insurance recovery

19  counsel to the TCC and I am the signatory of that letter,

20  along with the joint insurers.

21            We would certainly agree with Your Honor that the

22  intent and request was not necessarily to put some groups of

23  discovery disputes ahead of or behind others, or to

24  necessarily change the discovery cutoff for some as opposed to

25  others, and if this Court so decides to extend that for

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 57 of 63

57

1  everyone, we would certainly have no issue with it.  But the

2  fundamental purpose behind the letter is the TCC and those 22

3  insurers, and I believe that there are other parties working

4  with the insurers also on parallel tracks.

5          The ultimate objective here is in recognition of

6  Your Honor's observance of how many insurer depositions have

7  been noticed and how much insurance-related discovery and

8  insurance-related discovery disputes there presently are.  The

9  parties are -- and I say this with the utmost confidence --

10 working with the utmost good faith to try to resolve those

11 issues to potentially eliminate a significant number of

12 depositions or, if nothing else, to streamline the number of

13 topics that would be the subject of inquiry.

14         So the additional time that we're asking for we are

15 hoping would, if successful -- and we're all optimistic it

16 will be successful -- will likely alleviate a lot of the pain

17 that everybody on this call is feeling with regard to

18 discovery and the impending deadline.

19         Thank you, Your Honor.

20         THE COURT:  Thank you.

21         Mr. Plevin?  You're still muted.

22         MR. PLEVIN:  Thank you, Your Honor.  I wanted to

23 point out that we are working with the Coalition and the goal,

24 as Mr. Schulman said, is to try to reach agreements that could

25 either take certain depositions off calendar or at least limit

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 58 of 63

58

1   them.

2           And as we noted in our motion -- one of our motions

3   to quash that's going to be heard on Friday, the debtors also

4   made a proposal that I thought was constructive and that would

5   not apply to all the insurers, but some of them.  And I don't

6   know where the other insurers are who qualify under the terms

7   of the debtors' offer as to whether they're going to accept

8   that or not.  Unfortunately, my client doesn't qualify, so we

9   have to work with the debtors on a different track.

10          I wanted to make two things clear about my

11  understanding of the letter from Mr. Schulman.  One is that

12  the -- the motions to quash will still go forward on Friday

13  except with respect to the Coalition.  And I say that without

14  prejudice to whether we reach an agreement with the other

15  parties between now and Friday, but as of right now the

16  motions to quash continue because we do have deposition

17  requests from the debtors, from the FCR, and from the TCC --

18  rather, from the Coalition that are not resolved by the

19  agreement with Mr. Schulman.

20          So, barring further developments, those motions to

21  quash will be going forward except as to the TCC.

22          Second, I wanted to point out that there's already

23  been some leakage past the December 1 cutoff by agreement --

24  at least I believe it's by agreement.  Under the schedule that

25  I have, there are already nine depositions scheduled for

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 59 of 63

59

1  December 2 and 3, and there are 20 depositions in total,

2  according to my calendar, that have been noticed but have not

3  been scheduled.  And one can imagine that if we're already

4  leaking to December 3 that we're going to take some of those

5  days to have depositions that late.

6           The last thing I wanted to say is, the schedule, as

7  you know and as I've argued to the Court before, is very

8  compressed, and the next date after the discovery cutoff is

9  December 5, which is the day when expert reports are due.  And

10 so if we were to expand the discovery cutoff generally and

11 then take the 20 depositions that are still on schedule and

12 have many of those go through December 10 or 11, it makes it

13 almost impossible to have expert reports due on December 5

14 because the experts, to the extent they need the results of

15 depositions or other discovery, won't have that.  And then,

16 you know, it just goes on from there, it snowballs from there.

17          So I didn't want to be the only one to say that we

18 should not extend the cutoff, but I did want to point out that

19 if we do extend the cutoff for depositions generally, it does

20 have that snowball effect and that's something that maybe the

21 parties need to talk about offline, but it's an issue that I'm

22 concerned about.

23          THE COURT:  That's why I raised it because I don't

24 think you can have a one-off extension and it not impact

25 others.  And I did pull out the schedule this morning to take

Case 22-19361-MBK    Doc 895-9    Filed 05/15/23    Entered 05/15/23 19:11:09    Desc
Exhibit 4.3 to Declaration of Tristan Axelrod    Page 60 of 63

60

1  a look at it, so I do see what you're referencing.

2          Mr. Moxley?

3          MR. MOXLEY:  Yes, thank you, Your Honor.  Cameron

4  Moxley, again, from Brown Rudnick for the Coalition.

5          Just to clarify one point I think that Mr. Plevin

6  was making.  I think that at a couple of instances in his

7  remarks he referenced the Coalition and the TCC.  Mr. Schulman

8  wrote on behalf of the TCC.  I think that Mr. Plevin and the

9  other insurers' motion to quash, as regards to the Coalition,

10  is going forward on Friday, I believe our deadline to respond

11  to that is today and we plan to respond to that, Your Honor.

12          So just to clarify that for the Court.  Thank you.

13          THE COURT:  Thank you.

14          Mr. Schulman?

15          MR. PLEVIN:  Your Honor, to the extent I got

16  confused between the different parties, I think I do that a

17  lot and I apologize.

18          THE COURT:  Okay.  Mr. Schulman?

19          MR. SCHULMAN:  Your Honor, thank you.  Jeffrey

20  Schulman for the TCC.  I lowered my hand because Mr. Moxley

21  addressed the issue I wanted to raise.  Thank you.

22          THE COURT:  Okay.  Thank you.

23          Mr. Kurts?

24          MR. KURTS:  Thank you, Your Honor.  I just wanted

25  to make sure we were really clear here that we're amenable to

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 61 of 63

61

1  working with parties in a reasonable way to ensure that the

2  work can be performed in a way that they want, without

3  prejudice to our confirmation date, obviously.  If Mr. Plevin

4  thinks that there's a particular deposition that needs to take

5  place -- and any other party believes there's a particular

6  deposition that needs to take place in support of an expert

7  report, then that deposition should be scheduled and taken

8  before the experts.

9            The ability to accommodate to some extent people's

10 schedules, which is sometimes a witness' schedule, to fit

11 something in is of course without prejudice to our schedule.

12 And there is certainly an ability to reach expert opinions and

13 draft reports, which I'm sure are already being undertaken,

14 without completing every deposition.

15           If people think that they need to complete

16 something prior to the experts, then they need to do so sort

17 of now, and I just don't want anybody to leave this hearing

18 having set up any argument that, by reason of our cooperation

19 on dates now, that we have in some way compromised our ability

20 to hold our confirmation hearing date.

21           THE COURT:  Okay.  Thank you.

22           Well, I have a busy couple of days preparing for

23 Friday, so I will be prepared to address the discovery issues.

24 And, in the meantime, if people are also talking about the

25 schedule or any particular depositions, if something needs to

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 62 of 63

62

 1  be addressed, we can address it then.  At the moment, the

 2  schedule is what it is, but what I hear is what I think to be

 3  a reasonable offer to work with parties by the debtors on some

 4  interim dates to see -- to accommodate where people can be

 5  accommodated, but we're on our schedule.

 6        I will -- I do have other days open to address

 7  discovery issues as needed, but I'd like to get as much as I

 8  can get out of the way on Friday, given your schedule and the

 9  need to have answers.  But I would of course encourage the

10  parties to continue to talk and see if discovery issues can be

11  streamlined.

12        Oh, and speaking of Friday, so you know, we'll

13  start -- well, I'll keep it at 10:00 for the benefit of the

14  people on the West Coast.  We will take a break at somewhere

15  between 12:00 and 12:15, because I have a commitment, and

16  we'll be back say quarter to 2:00.  So we'll have an hour and

17  a half, 12:15 to 1:45.  So you have the schedule.

18        Okay.  Thank you very much.  I believe that's all

19  we have on today's calendar.

20        MR. ABBOTT:  Your Honor, Derek Abbott.  That is all

21  we have, and I've been informed that that consensual order has

22  been uploaded.

23        THE COURT:  Thank you.  We're adjourned.

24        COUNSEL:  Thank you, Your Honor.

25     (Proceedings concluded at 11:47 a.m.)

Case 22-19361-MBK   Doc 895-9   Filed 05/15/23   Entered 05/15/23 19:11:09   Desc
Exhibit 4.3 to Declaration of Tristan Axelrod   Page 63 of 63

63

1                          <u>CERTIFICATE</u>

2

3        We certify that the foregoing is a correct transcript

4   from the electronic sound recording of the proceedings in the

5   above-entitled matter.

6
    <u>/s/Mary Zajaczkowski</u>            November 17, 2021
7   Mary Zajaczkowski, CET**D-531

8
    <u>/s/William J. Garling</u>          November 17, 2021
9   William J. Garling, CE/T 543

10

11  <u>/s/ Tracey J. Williams</u>         November 17, 2021
    Tracey J. Williams, CET-914
12

13

14

15

16

17

18

19

20

21

22

23

24

25