**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND**
**EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER**
**EFFECTIVE AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF**

TO:  THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES

BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (the "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) authorizing the Debtors to retain and employ Deloitte Tax LLP ("Deloitte Tax") as their tax services provider in accordance with the terms and conditions set forth in: (i) that certain engagement agreement, dated April 3, 2023, a copy of which is attached as Exhibit 1 to the Order (the "Section 382 Compliance Engagement Agreement"); (ii) that certain engagement agreement, dated April 3, 2023, a copy of which is attached as Exhibit 2 to the Order (the "Tax Compliance Engagement Agreement"); and (iii) that certain engagement agreement dated April 5, 2023, a copy of which is attached as Exhibit 3 to the Order (the "Restructuring Services Engagement Agreement" and together with the Section 382 Compliance Engagement Agreement and the Tax Compliance Engagement Agreement, the "Engagement Agreements"), each of which is incorporated herein by reference; and (b) granting related relief. In support of this Application, the Debtors submit the *Declaration of Kenneth Schulhof in Support of Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of March 1, 2023 and (II) Granting Related Relief* (the "Schulhof Declaration"), which is attached hereto as **Exhibit B** and incorporated herein by reference.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## **Background**

4.      On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 17] (the "First Day Declaration")[2] and incorporated by reference herein.

5.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 29, 2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## Deloitte Tax's Qualifications

6.      Deloitte Tax is a tax services firm with offices across the United States. Deloitte Tax has significant experience performing tax services, and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States.  Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these Chapter 11 Cases in a cost-effective, efficient, and timely manner.

7.      Deloitte Tax provides, and has provided, tax services in numerous large chapter 11 cases, including:  *In re Pipeline Health Sys., LLC*, No. 22-90291 (Bankr. S.D. Tex. Feb. 2, 2023); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Oct. 20, 2022); *In re Revlon, Inc.,* No. 22-10760 (DSJ) (Bankr. S.D.N.Y. Aug. 23, 2022); *In re ION Geophysical Corp.*, No. 22-30987 (MI) (Bankr. S.D. Tex. July 19, 2022); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 1, 2022); *In re Limetree Bay Serv's, LLC*, No. 21-32351 (DRJ) (Bankr. S.D. Tex. May 26, 2022); *In re Basic Energy Serv's, Inc.*, No. 21-32351 (DRJ) (Bankr. S.D. Tex. Nov. 8, 2021); *In re 24 Hour Fitness, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. Sept. 11, 2020); *In re Washington Prime Group, Inc.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 27, 2021); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020).[3] Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.  Accordingly, Deloitte Tax is both well-qualified and able to provide the Services (as defined herein) for the Debtors during these Chapter 11 Cases in an efficient and timely manner.

---

[3]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to the Debtors' counsel.

8.      In addition, since approximately November 2020, Deloitte Tax has provided certain tax services to the Debtors.  In providing such prepetition professional services to the Debtors, Deloitte Tax is familiar with the Debtors and their businesses, including the Debtors' financial affairs, operations, and related matters.  Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors' businesses to provide effective and efficient services during these Chapter 11 Cases.  Accordingly, Deloitte Tax is both well-qualified and able to provide the aforementioned services for the Debtors in these Chapter 11 Cases in an efficient and timely manner.

9.      Absent the relief requested herein, the Debtors' ability to, among other things, thoroughly analyze the tax consequences during the pendency of these Chapter 11 Cases would be diminished.  As stated above, Deloitte Tax's experience in advising clients on tax issues related to digital assets makes Deloitte Tax well-positioned to advise the Debtors of the unique tax issues the Debtors will need to address during the pendency of these Chapter 11 Cases.  Additionally, finding a replacement for Deloitte Tax with similar experience would be expensive, time consuming, and would delay and disrupt the progress of these Chapter 11 Cases.  Accordingly, Deloitte Tax is both well-qualified and able to advise the Debtors during these Chapter 11 Cases.

## Scope of Services

10.      Subject to the Court's approval, Deloitte Tax will provide tax advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements.

11.      Pursuant to the terms and conditions of the Section 382 Compliance Engagement Agreement, Deloitte Tax has been engaged to assist the Debtors with assessing whether and to what extent the Debtors experienced historical ownership changes for purposes of section 382 of the Internal Revenue Code (the "IRC") during the period January 1, 2021 through December 31, 2023, and to the extent any ownership changes are identified, calculating the amount

of the Debtors' section 382 ownership change limitation(s) and preparing a utilization schedule of net operating losses (the "NOLs").  Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Section 382 Compliance Engagement Agreement, among other things, Deloitte Tax will provide the following services (the "Section 382 Services"):

a.   analyze the capitalization tables, financial statements, and other documents provided by the Debtors, to identify, and in certain cases, eliminate, a shareholder as a 5-percent shareholder for purposes of section 382 of the IRC;

b.   identify and analyze the segregation rules under section 382 of the IRC (*e.g.*, redemptions, reorganizations involving the issuance of the Debtors' stock, transfers by 5-percent shareholders, etc.) resulting in certain less than 5-percent shareholders being aggregated and treated as separate 5-percent shareholders;

c.   apply the small issuance and/or cash issuance exceptions to any transaction subject to the segregation rules;

d.   identify testing dates including:  (i) the purchase or disposition of the Debtors' stock by a 5-percent shareholder, and/or (ii) the redemption, recapitalization, issuance, or other equity event that affects the percentage of stock owned by a 5-percent shareholder;

e.   apply consolidated return rules as required;

f.   consider non-stock instruments that may be considered stock for purposes of section 382 of the IRC;

g.   consider higher-tier shifts for 5-percent shareholders;

h.   consider whether it is necessary to develop a methodology to account for ownership shifts attributable solely to fluctuation of value among the Debtors' multiple classes of stock and apply such methodology to capture only those shifts directly attributable to actual equity activity;

i.   consider the impact of the final regulations pursuant to Treas. Reg. §1.382-3(j) for the open testing period following October 22, 2013;

j.   compute the Debtors' Section 382 ownership change percentages on a test date by test date basis and calculate whether one or more ownership changes occurred;

k.   summarize the methodology utilized and assumptions relied upon in preparing the section 382 analysis;

l.      calculate the among of the Debtors' IRC section 382 base limitation(s) based upon the date of any ownership change(s), the applicable federal rate, and adjustments to value as proscribed by IRC section 382 or the accompanying regulations;

m.      calculate whether and to what extent the Debtors may have a net unrealized built-in gain or net unrealized built-in loss;

n.      calculate an estimate of the amount of recognized built-in gain or loss for each ownership change date; and

o.      prepare a schedule detailing the yearly rollout of the Debtors' federal net operating losses and other income tax attributes available for utilization prior to expiration, incorporating limitations as described above.

12.     Pursuant to the terms and conditions of the Tax Compliance Engagement Agreement, Deloitte Tax has been engaged to provide certain tax return preparation services. Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Tax Compliance Engagement Agreement, among other things, Deloitte Tax will provide the following services (the "Compliance Services"):

a.      prepare the 2022, as well as the 2021 amended, federal, state, and local income tax returns;

b.      assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 tax returns;

c.      electronically file the Debtors' federal and state income tax returns; and

d.      provide assistance in connection with the Debtors' use of electronic funds withdrawals.

13.     Pursuant to the terms and conditions of the Restructuring Services Engagement Agreement, Deloitte Tax has been engaged to provide certain tax advisory services in connection with these Chapter 11 Cases.  Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Restructuring Services Engagement Agreement, among other things, Deloitte Tax will provide the following services (the "Restructuring Services", and collectively with the Section 382 Services and the Compliance Services, the "Services"):

a.  advise the Debtors on post-restructuring tax attributes and post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors' operating projections;

b.  advise the Debtors regarding tax basis calculation methodologies to account for disposed digital assets, particularly the determination of cost basis and calculations of gain/loss on disposition;

c.  advise the Debtors regarding potential U.S. tax information reporting obligations and withholding obligations that may arise relating to distributions to claimants;

d.  advise the Debtors on responding to tax notices and audits from various taxing authorities;

e.  advise the Debtors on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

f.  advise the Debtors with their efforts to calculate tax basis in assets by entity; and

g.  advise the Debtors of the impacts of repatriation of digital assets to the United States, including identifying the relevant entities holding the digital assets in question; understanding the U.S. tax classification of entities for which the digital assets are being held; and assisting with the treatment of distributions from a U.S. federal income tax perspective with consideration around the relevant classification of entities.

14.   The Services are necessary to the Debtors' efforts to administer their Chapter 11 Cases.

### Professional Compensation

15.   Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangement, set forth in the Engagement Agreements.

16.   Pursuant to the terms of the Tax Compliance Engagement Agreement, the Debtors and Deloitte Tax agreed that Deloitte Tax will bill the Debtors a fixed fee of $526,000 for the preparation of the 2022 tax returns, including preparation of extension requests, and a fixed fee of $246,700 for the preparation of the 2021 amended tax returns for a total of $772,700. Additionally,

Deloitte Tax estimates that the fees for the preparation of additional state and local tax returns not listed on Exhibit A to the Tax Compliance Engagement Agreement will be $3,500 for each separate return and between $7,500 and $8,000 for each combined return based on the level of information requested on the tax return.  Deloitte Tax will bill the Debtors in accordance with the agreed-upon billing schedule, as follows:

| Date to be Billed | Amount |
| --- | --- |
| May 1, 2023 | $154,540 |
| June 1, 2023 | $154,540 |
| July 1, 2023 | $154,540 |
| August 1, 2023 | $154,540 |
| Upon Delivery of Federal Return | $154,540 |
| **Total:** | **$772,700** |

17.    Pursuant to the terms of the Section 382 Compliance Engagement Agreement and Restructuring Services Engagement Agreement, Deloitte Tax will charge the Debtors for its Section 382 Services and Restructuring Services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates[4] |
| --- | --- |
| Partner/Principal/Managing Director | $1,160 |
| Senior Manager | $1,020 |
| Manager | $870 |
| Senior | $750 |
| Staff | $630 |

18.    In the event that Deloitte Tax performs any tax consulting services or other services outside the scope of the Services, Deloitte Tax will bill the Debtors for such services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table above.

---

[4]    In the ordinary course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials, and increased costs of doing business.  Deloitte Tax shall advise the Debtors of any new rates should it institute a rate change during the Chapter 11 Cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

19.     In addition, reasonable expenses, including travel, and an allocation of estimated administrative and technology costs incurred (*e.g.*, report production, research materials, document delivery services, and other expenses) in providing Deloitte Tax's services, will be included in the total amount billed.

20.     Some services related to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax such as Deloitte & Touche, Deloitte FAS, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. For example, a portion of the Services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax India Private Limited ("Deloitte Tax India"). A specifically assigned team of personnel from Deloitte Tax India will assist in the services under the supervision, and with the input, of personnel of Deloitte Tax. The hourly rates charged to clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India.

21.     In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte Tax approximately $269,196 on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte Tax prior to such date.

22.     Deloitte & Touche LLP ("Deloitte & Touche"), an affiliate of Deloitte Tax, performed services for the Debtors prior to the Petition Date. In the ninety (90) days prior to the Petition Date, the Debtors did not pay Deloitte & Touche any amounts on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche prior to such date.

## **Indemnification**

23.     As part of the overall compensation payable to Deloitte Tax under the terms of the Engagement Agreements, the Debtors have agreed to certain indemnification obligations (the "Indemnification Provisions"), subject to modification by the Order.

24.     Specifically, the Section 382 Compliance Engagement Agreement and the Tax Compliance Engagement Agreement provide:

> The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the gross negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

25.     The Restructuring Services Engagement Agreement provides:

> The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the recklessness, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

26.     The Engagement Agreements were negotiated by the Debtors and Deloitte Tax at arm's length and in good faith. The Debtors believe that the Indemnification Provisions are appropriate and reasonable for the type of engagement covered by the Engagement Agreements, both out-of-court and in chapter 11 cases, and in the best interest of the Debtors, their estates, and stakeholders. Accordingly, the Debtors request that the Court approve the Indemnification Provisions, subject to the modifications in the proposed Order.

**Applications for Compensation**

27.     Deloitte Tax intends to file interim and final fee applications to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable fee guidelines provided by the U.S. Trustee (collectively, the "Fee Guidelines"), and any other applicable procedures and orders of the Court, including any order approving this Application and consistent with the proposed compensation set forth in this application and the Engagement Agreements.  Deloitte Tax has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.

**No Duplication of Services**

28.     The Debtors do not believe that the Services provided by Deloitte Tax will duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. The Debtors will coordinate with Deloitte Tax and the Debtors' other professionals to avoid duplication of services among the Debtors' professionals in these Chapter 11 Cases.

**Deloitte Tax's Disinterestedness**

29.     As set forth in the Schulhof Declaration, to the best of the Debtors' knowledge, Deloitte Tax is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

30.     Further, to the best of the Debtors' knowledge, except as set forth in the Schulhof Declaration, (a) neither Deloitte Tax nor any partner, principal, or managing director of Deloitte Tax that is anticipated to provide the services for which Deloitte Tax is to be retained holds any interest adverse to the Debtors, (b) Deloitte Tax has no relationship to the Debtors, their

significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in these Chapter 11 Cases, and (c) there is no connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these Chapter 11 Cases, the U.S. Trustee for Region 3 and Region 9, the Assistant U.S. Trustee for the District of New Jersey, and the attorneys therefore assigned to these Chapter 11 Cases.

31.    As set forth in the Schulhof Declaration, if any new material facts or relationships are discovered or arise, Deloitte Tax will promptly file a supplemental disclosure with the Court.

## Basis for Relief

32.    The Debtors submit that the retention of Deloitte under the terms described herein is appropriate under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers a debtor in possession, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

33.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

34.    Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

35.     For the reasons set forth in the Schulhof Declaration, Deloitte Tax does not "hold or represent an interest adverse to the estate."  Moreover, Deloitte Tax is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

36.     Bankruptcy Rule 2014(a) requires that an application for retention include the following:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Additionally, Local Rule 2014-1 requires an entity seeking approval of employment under section 327(a) of the Bankruptcy Code to file an application for retention, a supporting certification of professional support, and a proposed order.  All of those requirements have been satisfied by this Application, the Schulhof Declaration, and the Order attached hereto.

37.     Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the

case." 11 U.S.C. § 1107(b).  Deloitte Tax's prepetition relationship with the Debtors therefore does not preclude Deloitte Tax's retention as the Debtors' postpetition tax services provider.

## **Relief as of March 1, 2023 is Appropriate**

38.     Finally, the Court also has discretion to issue an order approving the employment of an estate professional effective as of an earlier date.  *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) (collecting cases) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power."); *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1288-89 (5th Cir. 1983).  The Debtors believe that employment of Deloitte Tax effective as of March 1, 2023 is warranted to compensate Deloitte Tax for the professional services it has provided before this Application is heard by the Court.  Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors in anticipation that its retention would be approved as of March 1, 2023.   In tandem with these Services, Deloitte Tax has been working diligently to undertake its connections checking processes as detailed in the Schulhof Declaration in support of this Application.  To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest, because, among other things, the services provided by Deloitte Tax will assist the Debtors in their restructuring efforts, as well as their compliance with their taxation requirements and other tax matters, which are necessary and in the best interest of the Debtors' estates, their creditor constituencies, and other parties in interest.

## **No Prior Request**

39.     No prior request for the relief sought in this Application has been made to this or any other court.

**Notice**

40.     The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the office of the U.S. Trustee for the District of New Jersey; (b) the Committee; (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys general in the states where the Debtors conduct their business operations; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:  May 16, 2023

/s/  *Mark A. Renzi*

Mark A. Renzi
Chief Restructuring Officer

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**ORDER (I) AUTHORIZING THE
DEBTORS TO RETAIN AND EMPLOY DELOITTE
TAX LLP AS TAX SERVICES PROVIDER EFFECTIVE AS
OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of March 1, 2023, and (II) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte Tax LLP ("Deloitte Tax") as their tax services provider, effective as of March 1, 2023 pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules"); and the Court having reviewed the Application, the supporting declaration of Kenneth Schulhof (the "Schulhof Declaration"); and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Schulhof Declaration that (a) Deloitte Tax does not hold or represent an interest adverse to the Debtors' estates and (b) Deloitte Tax is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

Bankruptcy Code; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** on a basis as set forth herein.

2.      The Debtors are authorized pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 to retain and employ Deloitte Tax as tax services provider on the terms and conditions set forth in the Engagement Agreements attached hereto as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively, to the extent set forth herein, effective as of March 1, 2023.

3.      The services to be provided by Deloitte Tax as set forth in the Engagement Agreements are reasonable and are approved.

4.      The terms and conditions of the Engagement Agreements, including without limitation, the compensation structures, are reasonable and are hereby approved in all respects, as modified by this Order.

5.      Deloitte Tax shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any applicable orders of this Court.

(Page | 5)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

6.      Deloitte Tax shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

7.      In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Agreements, Deloitte Tax will provide at least ten (10) business days notice prior to the effective date of such increases to the Debtors, the U.S. Trustee, and the Committee, and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increases pursuant to section 330 of the Bankruptcy Code.

8.      Notwithstanding anything in the Engagement Agreements to the contrary, the respective Indemnification Provisions set forth in the Engagement Agreements are hereby approved, subject to the following modifications with respect to the services performed thereunder from March 1, 2023 through the effective date of any chapter 11 plan:

a.      neither Deloitte Tax nor any Deloitte Entity shall be entitled to indemnification pursuant to the Engagement Agreements for services, unless such services and the indemnification therefor are approved by this Court;

b.      notwithstanding subparagraph (a) above or any provisions of the Engagement Agreements to the contrary, the Debtors shall have no obligation to indemnify any Deloitte Entity or Deloitte Tax for any claim or expense to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from any Deloitte Entity's or Deloitte Tax's gross negligence, willful misconduct or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of any Deloitte Entity's or Deloitte Tax's contractual obligations, unless this Court determines that indemnification would be permissible pursuant to *In re United Artists Theatre*

5

(Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

*Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which a Deloitte Entity or Deloitte Tax should not receive indemnity under the terms of the Engagement Agreements, as modified by this Order; and

c.      if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, any Deloitte Entity believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Engagement Agreements, as modified by this Order, a Deloitte Entity must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Deloitte Entity before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request by the Deloitte Entity for compensation and expenses by such Deloitte Entity for indemnification and is not a provision limiting the duration of the Debtors' obligation to indemnify.

9.      With respect to services performed under the Engagement Agreements after March 1, 2023 and prior to the effective date of any chapter 11 plan, the last sentence of paragraph 1(c) of the General Business Terms attached to each Engagement Agreement shall be deemed deleted and replaced with the following:

Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services provided under the Engagement Letter. It is understood and agreed that Deloitte Tax is an independent contractor and that Deloitte Tax is not, and will not be considered to be, an agent, partner, or representative of the Client. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create an obligation on behalf of, or in the name of, the other.

10.      If Deloitte Tax seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and/or the Engagement Agreements, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Deloitte Tax's

(Page | 7)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

own applications, both interim and final, and such invoices and time records shall be in compliance with Rule 2016-1(f) of the Local Rules of this Court and shall be subject to the U.S. Trustee guidelines and approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330 (a)(3)(C) of the Bankruptcy Code; *provided*, *however*, that Deloitte Tax shall not seek reimbursement of any attorney fees incurred defending any objection filed with respect to any of Deloitte Tax's fee applications in these cases.

11.    If the Debtors and Deloitte Tax enter into any supplemental agreements, engagement agreements, or statements of work for additional services, the Debtors will file any such supplemental agreements, engagement agreements, or statements of work with the Court and serve the same upon the applicable notice parties.  Absent any objection filed within fourteen days after the filing and service of any such supplemental agreement, engagement agreements, or statement of work, Deloitte Tax shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such supplemental agreement, engagement agreement, or statement of work.  If any parties object to such proposed supplemental agreement, engagement agreement, or statement of work, the Debtors will promptly schedule a hearing before the Court within ten (10) days of receipt of any such objection or as soon thereafter as is practicable.  Any additional services shall be subject to the provisions of this Order.

12.    Notwithstanding anything in the Application or the Engagement Agreements to the contrary, Deloitte Tax shall, to the extent that Deloitte Tax uses the services of third-party subcontractors, who are not a subsidiary of, or otherwise affiliated with, Deloitte Tax

7

(Page | 8)

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

(collectively, the "Contractors") in these Chapter 11 Cases, Deloitte Tax shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Deloitte Tax pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Deloitte Tax, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

13.     Deloitte Tax shall coordinate with the Debtors to minimize unnecessary duplication of efforts regarding their services and those other professionals will be providing to the Debtors in these Chapter 11 Cases.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Schulhof Declaration, the Engagement Agreements, and this Order, the terms of this Order shall govern.

15.     Upon entry of a final order on the D*ebtors' Motion for Entry of an Order (I) Authorizing the Debtors to File A Consolidated List of Top 50 Unsecured Creditors and Consolidated List of Creditors, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information of Individual Creditors, Clients, Equity Holders, and Current and Former Employees, (III) Authorizing Client Name Redaction, (IV) Waiving the Requirement to File an Equity List and Provide Notices Directly to Equity Security Holders, and (V) Granting Related Relief* [Docket No. 4]*,* Deloitte Tax will disclose the information that the Court orders to be unredacted, if any, through a supplemental declaration.  Further, if the Court denies the *Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal the Names of Certain Confidential Parties in Interest Related to the Debtors' Professional Retention Applications* [Docket No. 127], Deloitte Tax will, through a supplemental declaration, disclose the identities of

(Page | 9)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF |

all counterparties that were filed under seal, and the connections of Deloitte Tax to such potential counterparties.

16.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

17.     The Debtors and Deloitte Tax are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

**Section 382 Compliance Engagement Agreement**

# Deloitte.

Deloitte Tax LLP
555 Mission St.
San Francisco, CA 94105
USA

Tel: +1 415 783 4642
Fax: +1 415 783 0166
www.deloitte.com

April 3, 2023

Rob Loban
Chief Accounting Officer
BlockFi, Inc.
201 Montgomery Street, 2nd Floor
Jersey City, New Jersey 07302

Dear Rob:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax", or "our") to provide certain tax advisory services as set forth below for BlockFi, Inc. and its subsidiaries and/or affiliates ("Client") during the period through December 31, 2023.

This engagement letter ("Engagement Letter") describes the scope of the Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

SCOPE OF SERVICES

The Services to be performed by Deloitte Tax under this Engagement Letter are as follows:

Deloitte Tax has agreed to provide section 382 tax consulting services ("Services") to Client with respect to analyzing the existence of Internal Revenue Code ("IRC") section 382 ownership change(s) and limitation(s) on the utilization of federal net operating loss ("NOL") carryforwards and other income tax attributes for Client with respect to the period from January 1, 2021 through December 31, 2023 (the "Study Period"). To the extent one or more additional ownership changes are identified during the Study Period, Deloitte Tax will assist Client with calculating the section 382 limitation(s) as of the identified ownership change date(s).

Specifically, in Phase I, Deloitte Tax will assist Client with assessing whether and to what extent the Client experienced historical ownership changes for purposes of section 382 during the Study Period. In Phase II, Deloitte Tax will assist Client with calculating the amount of any section 382 federal limitations for the ownership change dates identified during Phase I. Upon request of Client and as agreed to by Deloitte Tax, which would include an additional fee for services provided, Deloitte Tax would also assist Client with Phases III and IV, as described below.

It is our understanding that the Client has common stock and at least ten classes of preferred stock (Seed, Seed 2, Series A-1, Series A-2, Series A-3, Series B, Series C, Series D, Series E, and Series E-1 preferred stock) issued and outstanding during the Study Period, none of which are publicly traded. The scope of the Services does not include a separate section 382 analysis for any historic NOLs that the Client may have obtained as a result of the acquisition of other entities. To the extent such acquired NOLs are identified and a separate section 382 analysis is requested to be performed and as agreed to by Deloitte Tax, such services will be provided under a separate engagement letter or an addendum to this Engagement Letter.

Specifically, we will assist Client with the section 382 services in the following phases:

Phase I – Section 382 Shift Analysis

DocuSign Envelope ID: F8E237F4-2763-488D-8514-E88E56A47848

BlockFi, Inc.
April 3, 2023
Page 2

Deloitte Tax will research, analyze, compute, and model data to calculate whether Client has had one or more prior ownership changes. Specifically, Deloitte Tax will:

• Analyze the capitalization tables, financial statements, and other documents provided by the Client, to identify, and in certain cases, eliminate, a shareholder as a 5-percent shareholder for purposes of section 382;

• Identify and analyze the segregation rules under section 382 (e.g., redemptions, reorganizations involving the issuance of Client stock, transfers by 5-percent shareholders, etc.) resulting in certain less than 5-percent shareholders being aggregated and treated as separate 5-percent shareholders;

• Apply the small issuance and/or cash issuance exceptions to any transaction subject to the segregation rules;

• Identify testing dates including (i) the purchase or disposition of Client stock by a 5-percent shareholder and/or (ii) the redemption, recapitalization, issuance, or other equity event that affects the percentage of stock owned by a 5-percent shareholder;

  o The equity activity for each testing date and total stock outstanding as well as the holdings of specific 5-percent shareholders will be analyzed by relying primarily upon the capitalization tables and financial statements, as well as any information provided by Client. Each time the Client's equity changes, the "event" will generally be treated as an additional testing date.

  o Deloitte Tax anticipates that it may be necessary to make inquiries and/or apply certain assumptions of Client's indirect owners. For purposes of section 382, a reporting 5-percent shareholder that is an entity (such as a fund) may not be the ultimate shareholder(s) that must be tracked for purposes of the ownership change analysis. Deloitte Tax may require management assistance for communications and/or access to its shareholders for this purpose.

• Apply consolidated return rules as required;

• Consider non-stock instruments that may be considered stock for purposes of section 382;

• Consider higher-tier shifts for 5-percent shareholders;

• Consider whether it is necessary to develop a methodology to account for ownership shifts attributable solely to fluctuation of value among the Client's multiple classes of stock and apply such methodology to capture only those shifts directly attributable to actual equity activity;

• Consider the impact of the final regulations pursuant to Treas. Reg. §1.382-3(j) for the open testing period following October 22, 2013;

• Compute the Client's Section 382 ownership change percentages on a test date by test date basis and calculate whether one or more ownership changes occurred; and

• Summarize the methodology utilized and assumptions relied upon in preparing the Section 382 analysis.

## Phase II – Federal Section 382 Limitation Calculation, if necessary

To the extent Deloitte Tax identifies any ownership changes under Phase I, we will calculate the amount of Client's section 382 ownership change limitation(s) and prepare a utilization schedule of NOLs. Specifically, Deloitte Tax will:

DocuSign Envelope ID: F8E5237F4-9763-498D-8514-E88F56A47848

BlockFi, Inc.
April 3, 2023
Page 3

- Calculate the Client's section 382 base limitation(s) based upon the date of any ownership change(s), the applicable federal rate ("AFR"), and adjustments to value as proscribed by section 382 or the accompanying regulations;

- Calculate whether and to what extent the Client may have a net unrealized built-in gain ("NUBIG") or net unrealized built-in loss ("NUBIL");

- Calculate an estimate of the amount of recognized built-in gain or loss ("RBIG" or "RBIL") for each ownership change date. This will include RBIG computations for intangibles and an estimate of RBIG on depreciable assets on an asset class by asset class basis, if necessary. This does not include asset by asset RBIG computations for fixed assets or any other assets or valuation services with respect to allocation of any NUBIG/NUBIL by asset; and

- Prepare a schedule detailing the yearly rollout of the Client's NOLs and other income tax attributes available for utilization prior to expiration, incorporating limitations as described above.

To the extent that Client requires state limitation calculations or miscellaneous ad-hoc section 382 assistance, Deloitte Tax is available to provide such services under the terms and conditions of this Engagement Letter.

The performance of the Services by Deloitte Tax may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information, and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

Our analysis will address only the federal income tax implications of IRC section 382 of Client. Unless specifically requested, our analysis will not address any state tax issues, if any, that should be considered related to utilization of Client's attributes for state income tax purposes.

The scope of Services above does not include any valuation or valuation related assessments with respect to the stand-alone equity value of the Client or the value of its assets at the time of any identified ownership change. Client acknowledges that its management is solely responsible for all valuations undertaken in connection with the Services, including, but not limited to, (i) valuations of the Client's outstanding stock interests (and non-stock interests that may be treated as stock interests) for purposes of IRC section 382 and (ii) valuations necessary to analyze whether and to what extent the Client may have a NUBIG or NUBIL under IRC section 382. To the extent the Client is in a NUBIL position, the scope of Services does not include any detailed RBIL computations. The scope of Services also does not include IRC section 382 services related to any acquired NOLs that the Client may have obtained as a result of merger or acquisition. To the extent such services are requested, a separate engagement letter or an addendum to this Engagement Letter will be provided.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a

DocuSign Envelope ID: 58523751-9761-488D-8514-E88E56A47848

BlockFi, Inc.
April 3, 2023
Page 4

tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

Our Services do not include representation of you in administrative taxing authority proceedings. However, Deloitte Tax would generally be willing to represent you in such proceedings for an additional fee that is mutually agreed upon.

ACKNOWLEDGMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

a) The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

b) Deloitte Tax's assumption that there will be timely execution, delivery, and performance, as may be required, by any representation or documents submitted by Client with respect to the Deloitte Tax Services;

c) Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.);

d) Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

e) Client's understanding that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion;

f) Client's understanding that the review of documents under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board;

DocuSign Envelope ID: 58523754-9763-488D-8514-E88E56A47848

BlockFi, Inc.
April 3, 2023
Page 5

g) Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax may be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon; and

h) Client's understanding that Client will maintain ultimate responsibility for all management decisions and management functions. Client understands and agrees that the ultimate responsibility with respect to the appropriate application and interpretation of any oral or written communications rests with management of Client. Deloitte Tax will not be held liable for any misinterpretations of oral or written communications regarding the application of tax advice.

Although Deloitte Tax may in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued. Any part of our analysis, including the recommendations or conclusions may change between the time of any draft and the issuance of a final deliverable.

CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

FEES AND EXPENSES

The Deloitte Tax fees for Services are based on the amount of professional time incurred and the below agreed upon hourly rates in the engagement letter. The hourly rates (in $ US) vary depending upon the experience level of the professionals involved. Subject to any applicable Bankruptcy Court orders, rules or procedures, Deloitte Tax will also bill reasonable out-of-pocket expenses.

| | |
|---|---|
| Partner/Principal/Managing Director | $1,160 |
| Senior Manager | $1,020 |
| Manager | $870 |
| Senior | $750 |
| Staff | $630 |

Deloitte Tax will bill periodically as Services are performed. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable.

DocuSign Envelope ID: 585237F4-9761-488D-8514-E88E56A47848

BlockFi, Inc.
April 3, 2023
Page 6

In the course of providing these Services, Deloitte Tax may identify additional issues or considerations, which may require Deloitte Tax to discuss a change in our fee estimate with you. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the work, Deloitte Tax will contact Client to discuss the billing arrangement related to such out-of-scope services prior to providing additional service.

In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials, and increased costs of doing business.  Changes in the foregoing agreed-upon hourly rates will be subject to Client's approval in advance and will be noted on the invoices for the first time period in which the revised rates become effective.

In addition, in connection with the engagement Deloitte Tax will be entitled to compensation for any time and actual reasonable out-of-pocket expenses including, without limitation, reasonable legal fees and expenses that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Client, including, without limitation, those relating to Client but arising other than as a result of or in connection with this agreement.

Deloitte Tax expects to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330.  We understand that payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below).  However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses.  Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter.  The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court.  In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Engagement Letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

DocuSign Envelope ID: F8E237F4-9763-488D-8514-E88E56A47948

BlockFi, Inc.
April 3, 2023
Page 7

## CLIENT RESPONSIBILITIES

1. To provide information in a timely manner as requested by Deloitte Tax sufficient to permit the agreed upon Services to be completed by the time agreed to by the parties.
2. To answer in a timely manner any Deloitte Tax inquiries with respect to the information being provided to Deloitte Tax or with regard to issues or questions raised by Deloitte Tax pertaining to its Services.
3. To the extent necessary, assist in facilitating communications with third-party shareholders to obtain certain stock ownership information.

Client agrees and acknowledges that the Services may include advice and recommendations, and that Deloitte Tax shall have no responsibility for decision making and the implementation of such advice and recommendations. Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating a competent member of management to oversee Deloitte Tax's services hereunder; (c) evaluating on behalf of the Client the adequacy and results of such services; (d) accepting responsibility for the results of such services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

## ACCEPTANCE

This Engagement Letter, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

BlockFi, Inc.
April 3, 2023
Page 8

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact Jason Richter at (415) 783-4642 or Valerie Velazco at (813) 619-4639.

Very truly yours,                                        AGREED AND ACCEPTED

DELOITTE TAX LLP                                BlockFi, Inc. on behalf of itself and its subsidiaries
                                                          and/or affiliates.

By: _____                    By: _____
    Jason Richter                                      Rob Loban
    Tax Principal


                                                       Title:  Chief Accounting Officer

                                                       Date:   4/10/2023

DocuSign Envelope ID: F8E5237F4-9763-498D-8514-E88E56A47848

<u>DELOITTE TAX LLP GENERAL BUSINESS TERMS</u>

**1.   Contract and Parties.**

(a)  The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)  This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)  Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)  Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

DocuSign Envelope ID: 58523754-9763-488D-8514-E88E56A47848

(e) "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

2.    Responsibilities of the Client and of Deloitte Tax.

(a)  Responsibilities of the Client

(i)   The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)  The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

(b)  Responsibilities of Deloitte Tax

(i)   The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)  Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii)  In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv)  Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)   Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

## 3.   Payment of Invoices.

Subject to any applicable Bankruptcy Court orders, rules and procedures, Deloitte Tax's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within thirty (30) days of the invoice date or such later date as payment is permitted under any applicable Bankruptcy Court orders, rules or procedures ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

## 4.   Term.

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than fifteen (15) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 15 days of receipt of notice of such breach.

(c)  Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

DocuSign Envelope ID: F8523754-2763-488D-8514-E88F56A47248

(d)   Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)   Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

## 5.   Ownership of Deloitte Property & Work Products.

(a)   To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)   Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)   The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services. As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)   To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e)   "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

## 6.   Limitations on Damages.

(a)  Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the gross negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.  For purposes of the Contract and these terms, "gross negligence" shall have the meaning provided it under the laws of the State of New York as of the effective date hereof.

(b)  In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)  In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)  Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)  The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)  If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)  The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

7.  Limitation on Warranties.

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8.  Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers,

directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.  Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10.  Confidentiality.

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with reasonable advance written notice of disclosures required by law, regulation, judicial or administrative process. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any

Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)   The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the gross negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

## 13.  Electronic Communications.

(a)   Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)  It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

## 14.  Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of

DocuSign Envelope ID: 58E523F54-97631-498D-8514-E88E56A47848

confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

### 15.  Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

### 16.  Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

### 17.  Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

### 18.  Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

### 19.  Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

DocuSign Envelope ID: F8E2327F1-9761-488D-8514-E88E56A47848

(d)   To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)   In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)   The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

## 19.1 If Deloitte Tax Is Acting As Data Controller

(a)   Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)   The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)   The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)   Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a)   Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of

DocuSign Envelope ID: F8E523F54-9763-488D-8514-E88E56A47848

security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)  To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)  The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)  Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

## 20. Anti-corruption and Sanctions.

(a)  Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the

Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

(b) Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in (or having an impact on) providing and receiving the Services under this Contract. The parties recognize that such laws and regulations restrict the export and reexport of the Services and Deliverables to jurisdictions subject to territorial economic sanctions (currently, e.g., Russia).

21.  Disclosure Laws.

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

22.  Counterparts and Language.

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

23.  Entire Agreement, Modification and Effectiveness.

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

24.  Survival and Interpretation and Third-Party Beneficiary.

(a)  Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)  If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort**

**(including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)  Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

### 25.  Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

### 26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

### 27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

# Deloitte Tax LLP Privacy Statement

Last revised: January 1, 2023

## Introduction

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

## To whom does this Privacy Statement apply and what does it cover?

This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our"), an entity within the Deloitte Network. As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it asset out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

## What personal information do we collect?

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to access personal information about you that may be considered special category (or "sensitive") personal information under certain U.S. State laws (special category personal information is considered to include information about your social security, driver's license, state identification card, or passport numbers; non-Deloitte account username or number or financial account, debit card, or credit card number in combination with credentials allowing access to such accounts; racial or ethnic origin; immigration or citizenship status; religious or philosophical beliefs; trade union membership; genetic or biometric data for identification purposes; precise geolocation; political opinions; medical or health conditions; or sex life or sexual orientation. Sensitive personal information also includes the contents of your personal mail, email, or text messages unless we are the intended recipient). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will, where required by law, require explicit consent in order to process it.

## How do we collect personal information?

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

## Disclosing personal information to us relating to third parties

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals(including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

## How do we use your personal information?

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

Any personal information that we have about you may be de-identified and maintained and used by us without re-identifying such information. Such de-identified information is not subject to the terms of this Privacy Statement.

## On what basis do we process personal information about you?

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a) where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests;

or (c) we are subject to legal, regulatory or professional obligations.

## To whom will we disclose your personal information?

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement
- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

© 2023. For information, contact Deloitte Touche Tohmatsu Limited.

## Deloitte Tax LLP Privacy Statement

Last revised: January 1, 2023

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You may have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you
  - the categories and/or specific pieces of personal information we collected
  - the categories of sources from which personal information is collected
  - the business or commercial purpose for collecting personal information
  - the categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect maybe that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, complete our Personal Information Request Form or call us at this toll-free number +1-844-919-0711. When calling us, please provide your full name, mailing address, email address and the specific type of request you are making. You also have a right to appeal a denial of your request by completing the Personal Information Request Appeal Form (available at https://datasubject.deloitte.com/appeal-form).

For individuals in the EU and Switzerland, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending On your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please complete our Personal Information Request Form (https://datasubject.deloitte.com/) and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S.

Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom%20_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844-919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

## **Exhibit 2**

**Tax Compliance Engagement Agreement**



**Deloitte Tax LLP**
30 Rockefeller Plaza
New York, NY 10112
USA

Tel: +1 212 492 4000
www.deloitte.com

April 3, 2023

Rob Loban
Chief Accounting Officer
BlockFi, Inc.
201 Montgomery Street, 2nd Floor
Jersey City, NJ 07302

Dear Rob:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax return preparation services ("Services") for **BlockFi, Inc.** and its subsidiaries and/or affiliates ("Client"). This engagement letter ("Engagement Letter") describes the scope of the Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services provided by Deloitte Tax to Client during the period beginning March 1, 2023, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

SCOPE OF SERVICES

Deloitte Tax will prepare the 2022, as well as the 2021 amended, federal, state and local income tax returns ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Engagement Letter and incorporated herein by reference.

**Extensions:**
In addition to the preparation of Client's 2022 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 tax returns identified in Exhibit A.

**Estimated Taxes:**
Deloitte Tax has not been engaged to prepare any quarterly estimated tax payments for the 2023 tax year. You have assumed responsibility for the preparation of these filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

**Foreign Bank Account Reporting:**
If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by April 18, 2023 with an automatic extension available until October 16, 2023. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

### Electronic Return Filing:

Client has engaged Deloitte Tax to electronically file ("e-file") its federal and state income tax returns identified in Exhibit A. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide signed e-file authorizations to Deloitte Tax at least seven (7) days prior to transmission to the IRS, state, and local jurisdictions indicated in Exhibit A. Upon receipt of the signed e-file authorizations, Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of the signed e-file authorizations will be deemed by Deloitte Tax as authorization by Client to e-file Client's returns. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

### Electronic Funds Withdrawal

The IRS allows for payment of federal income taxes due or estimated tax payments via electronic funds withdrawal ("EFW"). In addition, certain states provide or mandate EFW for payment of taxes due and/or estimated tax payments. You have requested that Deloitte Tax provide assistance in connection with your use of EFW. Our assistance will be limited to entering the requisite bank account information, tax payment amount, etc. ("EFW Information") into the tax compliance software used to prepare your Returns. Your signed approval for Deloitte Tax to transmit your Returns will serve as your acknowledgement that the EFW Information is correct. Deloitte Tax will transmit the EFW Information to the IRS and state authorities as required without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. You retain responsibility for bank account accessibility and for confirming that the necessary funds are available in your bank account to pay the taxes due on the date prescribed for withdrawal, including those for quarterly estimated taxes. Deloitte Tax assumes no responsibility for any interest or penalties arising from your use of EFW under this Engagement Letter. Deloitte Tax will not remind you of future quarterly estimated tax payments that you have directed to be withdrawn by taxing authorities using EFW.

### State Tax Return Apportionment Information:

Deloitte Tax will prepare state tax returns based upon the state information, apportionment data provided by the client and the apportionment methodologies utilized by Client on its 2021 tax returns. Client will address and correct instances where apportionment data is incomplete, inaccurate or does not reconcile to the book and tax balances reflected on the federal tax return. In the course of performing the Services, if Deloitte Tax becomes aware of such incomplete or inaccurate data, Deloitte Tax will inform Client. Deloitte Tax will discuss with and obtain Client's input for addressing apportionment methodologies used in 2021 that may be inappropriate to utilize for the 2022 tax return(s).

### Engagement Technology:

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

### Potential Impact of U.S. Supreme Court Decision in *Wayfair*

In light of the Court's statement in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair"*) that physical presence is not a necessary element for "substantial nexus" , guidance from the Multistate Tax Commission, and the potential state adoption and/or application of their guidance (e.g., California Technical Advice Memorandum 2022-01), Client may need to revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA76

BlockFi, Inc.
April 3, 2023
Page 3

assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

## Potential Impact of State Elective Pass-Through Entity Taxes

Many states have enacted an elective state pass-through entity income tax. Client may need to evaluate whether to make the election, if available in states listed in Exhibit A. The scope of our Services may need to be expanded to include an analysis of whether to make the applicable elections. Such services will be the subject of a separate written agreement between Client and Deloitte Tax.

## Changes in reporting requirements on Form 1065 and Schedules K-1, K-2 and K-3 and related State/Local Returns

The IRS has incorporated several significant changes to the Form 1065 Schedule K-1 reporting requirements since the 2019 year, including:

- Tax basis capital account for each partner starting with the 2020 tax year;
- A partner's amount of net unrecognized built-in gain (BIG) or loss (BIL) under section 704(c);
- Codes for adjustments to basis made under section 743;
- Disclosure of decreases in a partner's share of profit, loss, or capital sharing due to a sale or exchange of the interest in the partnership;
- A breakout between guaranteed payments for services and guaranteed payments for use of capital;
- Check boxes for noting whether there is more than one activity for purposes of sections 465 and 469;
- Additional section 465 at-risk reporting starting with the 2020 tax year;
- Potential additional Schedule K-1 footnote reporting for taxpayers who either want to follow or are required to follow provisions in final and/or proposed regulations (e.g., section 163(j), section 1061);
- Required reporting of section 751 "hot asset" information to partners who transfer a partnership interest; and
- Additional changes that may be made to the 2022 Form 1065 and its related Instructions.

In addition, beginning with tax year 2021, Schedules K-2 and K-3 apply to any persons required to file Form 1065, Form 1120-S, or Form 8865 if the entity for which the form is being filed has items of international tax relevance (generally foreign activities or foreign partners – direct or indirect). The information required (as will be requested under separate cover) on these schedules may include information that has not previously been required to be reported. Compliance with this reporting requirement likely will require additional analysis and time to complete. Penalties may apply for filing Form 1065, Form 1120-S, or Form 8865 without all required information or for furnishing Schedule K-3 to partners or shareholders without all required information. Note that new Schedules K-2 and K-3 **do not** replace existing US international tax information reporting requirements of the partnership, S corporation, or US persons required to file Form 8865, Form 5471, or Form 8621.

In order to gather the required information to meet the IRS's (and any applicable state and/or local jurisdictions) reporting requirements on Schedule K-1, Schedules K-2 and K-3, and prepare the updated forms, we anticipate that we will incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. While our fees for these additional hours will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, the specific scope of services needed to assist Client with these requirements will depend upon the information that Client has historically tracked and maintained. Once determined, the actual scope of services to be performed, and the corresponding fees, will be mutually agreed upon between Client and Deloitte Tax, and evidenced by an additional engagement letter/work order or an addendum to this Engagement Letter prior to commencement of those Services.

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA76

BlockFi, Inc.
April 3, 2023
Page 4

The enactment of the Inflation Reduction Act of 2022 may have an impact on IRS (and applicable state and/or local jurisdictions) reporting requirements for Form 1065 and Schedules K-1, K-2 and K-3. We anticipate that we may incur additional hours for services above and beyond the base fees included herein and which cannot be estimated at this time. *See* "Unanticipated Out-of-Scope Services," below.

### Tax Consulting Services

Additionally, Deloitte Tax may perform consulting services (also, "Services") throughout the year, for which a separate engagement letter should generally be issued. If Client and Deloitte Tax fail to execute a separate engagement letter with respect to such services, the terms of this Engagement Letter will apply to all services rendered with respect thereto. Unless otherwise agreed, Deloitte Tax will bill for these services at mutually agreed-upon hourly rates.

## OTHER MATTERS

### Tax Positions, Potential Penalties, Taxing Authority Audits

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either you or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with you these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. You should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to you. In those instances where Deloitte Tax is aware of tax return positions that may trigger an accuracy-related tax preparer penalty under Internal Revenue Code ("IRC") sections 6662 or 6694 (or comparable state provisions), Deloitte Tax will include in the returns we prepare the disclosures necessary to avoid such penalties.

Our Services do not include representation of you in administrative taxing authority proceedings. However, Deloitte Tax would generally be willing to represent you in such proceedings for an additional fee that is mutually agreed upon.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## ENGAGEMENT TIMETABLE AND MILESTONES

### Target Completion Date for Returns:

The target date for completion of the federal tax return is September 15, 2023. The target date for completion of the state and local tax returns will be on a weekly (rolling) basis with all state and local tax returns estimated to be delivered by October 9, 2023. To meet these target dates, Deloitte Tax must receive from Client complete

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81F240EAA76

BlockFi, Inc.
April 3, 2023
Page 5

and organized data needed to prepare the tax returns no later than June 1, 2023. The initial information needed by Deloitte Tax to complete the returns will be requested under separate cover by May 1, 2023.

Deloitte Tax will notify Client of circumstances encountered that could change the timetable or the targeted completion date.

## FEES AND EXPENSES:

The Deloitte Tax fees for the preparation of the 2022 tax returns, including preparation of extension requests, are $526,000. The Deloitte Tax fees for the preparation of the 2021 amended tax returns are $246,700.

Subject to any applicable Bankruptcy Court orders, rules or procedures, Deloitte Tax will also bill reasonable out-of-pocket expenses, including travel (with air travel based on coach fares). If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

In addition, in connection with the engagement Deloitte Tax will be entitled to compensation for any time and actual reasonable out-of-pocket expenses including, without limitation, reasonable legal fees and expenses that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Client, including, without limitation, those relating to Client but arising other than as a result of or in connection with this agreement.

Additionally, Deloitte Tax estimates that the fee for the preparation of additional state and local tax returns not listed on Exhibit A will be $3,500 for each separate return and between $7,500 and $8,000 for each combined return based on the level of information requested on the tax return. Deloitte Tax will prepare such additional state and local tax returns as requested by Client.

### Impact on Fees Due to Failure to Provide Requested Information

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task in accordance with the above timetable. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

## UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, specified tax reporting for transactions arising in the year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts, separate computations of attribute

DocuSign Envelope ID: 8147BA2B-AF54-428F-B97C-B91E240EAA76

BlockFi, Inc.
April 3, 2023
Page 6

allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2022 tax return(s). Therefore, consideration may need to be given to filing an initial original return followed by an amended return once the state has issued final guidance.

### IRC Section 174 expenditure calculation

Any calculations or analyses related to the mandatory amortization of IRC Section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.

### Billing Schedule

The Deloitte Tax fees for the Services referred to above are billed as indicated in the billing schedule below:

|  | Date to be Billed | Amount |
|---|---|---|
| First Progress Bill | May 1, 2023 | $154,540 |
| Second Progress Bill | June 1, 2023 | $154,540 |
| Third Progress Bill | July 1, 2023 | $154,540 |
| Fourth Progress Bill | August 1, 2023 | $154,540 |
| Final Progress Bill | Upon Delivery of Federal Return | $154,540 |
|  | Total | $772,700 |

The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Additionally, as noted above, Deloitte Tax may perform consulting services throughout the year, for which a separate engagement letter should generally be issued. If Client and Deloitte Tax fail to execute a separate engagement letter with respect to such services, the terms of this Engagement Letter will apply to all services rendered with respect thereto. Unless otherwise agreed, Deloitte Tax will bill for these services at mutually agreed-upon hourly rates.

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B91E240EAA75

BlockFi, Inc.
April 3, 2023
Page 7

These rates are as follows:

| | |
|---|---|
| Partner/Principal/Managing Director | $1,160/hour |
| Senior Manager | $1,020/hour |
| Manager | $870/hour |
| Senior | $750/hour |
| Staff | $630/hour |

## ACCEPTANCE AND BANKRUPTCY MATTERS

Deloitte Tax expects to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330.  We understand that payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below).  However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses.  Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter.  The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court.  In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Engagement Letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

This Engagement Letter including all exhibits, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA76

BlockFi, Inc.
April 3, 2023
Page 8


Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.


Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact Ken Schulhof at (212) 436-5370 or Jordon Gardyn at (718) 508-6033.

BlockFi, Inc.
April 3, 2023
Page 9

Very truly yours,

DELOITTE TAX LLP

By: _Kenneth Schulhof_ _____
       Kenneth Schulhof
       Partner

AGREED AND ACCEPTED

BlockFi, Inc., on behalf of itself and its subsidiaries and/or affiliates

By: _Robert Loban_ _____
       C0DBBD97C47E4FE...
       Robert Loban

Title: Chief Accounting Officer _____

Date: 4/10/2023 _____

Enclosures:
       Exhibit A
       Deloitte Tax LLP General Business Terms
       Deloitte Tax LLP Privacy Notice

cc:    Heather Powers, BlockFi, Inc.

Exhibit A – BlockFi, Inc. and its subsidiaries and/or affiliates

Listing of Federal and State and Local Income Tax Returns Included in Scope of 2022 Tax Return Preparation and 2021 Preparation of Amended Tax Returns

| Entity Name | Jurisdiction | Form Number | Form Name |
| --- | --- | --- | --- |
| BlockFi, Inc. & Subsidiaries | Federal | 1120 | U.S. Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Alaska | 6000 | Alaska Corp Net Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Arizona | 120 | Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | California | 100 | California Corporation Franchise or Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Colorado | 112 | Colorado C Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Connecticut | CT-1120 | Corporation Business Tax Return |
| BlockFi, Inc. & Subsidiaries | District of Columbia | D-20 | Corporation Franchise Tax Return |
| BlockFi, Inc. & Subsidiaries | Hawaii | N-30 | Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Idaho | 41 | Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Illinois | IL-1120 | Corporation Income and Replacement Tax Return |
| BlockFi, Inc. & Subsidiaries | Indiana | IT-20 | Indiana Corporate Adjusted Gross Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Kansas | K-120 | Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Maine | 1120ME | Maine Corporate Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Kentucky | 720-U | Kentucky Unitary Combined Corporation Income Tax and LLET Return |
| BlockFi, Inc. & Subsidiaries | Massachusetts | 355 | Business of Manufacturing Corporation Excise Return |
| BlockFi, Inc. & Subsidiaries | Michigan | 4891 | Michigan Corporate Income Tax Annual Return |
| BlockFi, Inc. & Subsidiaries | Minnesota | M4 | Corporation Franchise Tax Return |
| BlockFi, Inc. & Subsidiaries | Montana | CIT | Montana Corporate Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Nebraska | 1120N | Nebraska Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | New Hampshire | NH 1120 | Business Tax Return |

| BlockFi, Inc. & Subsidiaries | New Jersey | CBT-100 | New Jersey Corporation Business Tax Return |
| BlockFi, Inc. & Subsidiaries | New Mexico | CIT-1 | Corporate Income & Franchise Tax Return |
| BlockFi, Inc. & Subsidiaries | New York | CT-3 | General Business Corporation Franchise Tax Return |
| BlockFi, Inc. & Subsidiaries | New York City | NYC-2 | Business Corporation Tax Return |
| BlockFi, Inc. & Subsidiaries | North Dakota | 40 | Corporation Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Oregon | OR-20 | Oregon Corporation Excise Tax Return |
| BlockFi, Inc. & Subsidiaries | Rhode Island | RI-1120C | Business Corporation Tax Return |
| BlockFi, Inc. & Subsidiaries | Texas | 05-158-A | Franchise Tax Report |
| BlockFi, Inc. & Subsidiaries | Utah | TC-20 | Utah Corporation Franchise and Income Tax Return |
| BlockFi, Inc. & Subsidiaries | Vermont | CO-411 | Vermont Corporate Income Tax Return |
| BlockFi, Inc. & Subsidiaries | West Virginia | CIT-120 | Corporation Net Income Tax |
| BlockFi, Inc. & Subsidiaries | Wisconsin | 6 | Wisconsin Combined Corporation Franchise or Income Tax Return |
| BlockFi, Inc. | Alabama | 20C | Corporation Income Tax Return |
| BlockFi, Inc. | Alabama | CPT | Secretary of State Corporation Annual Report |
| BlockFi, Inc. | Arkansas | AR1100CT | Corporation Income Tax Return |
| BlockFi, Inc. | Florida | F-1120 | Florida Corporation Business Tax Return |
| BlockFi, Inc. | Georgia | 600 | Georgia Corporation Tax return |
| BlockFi, Inc. | Iowa | IA1120 | Iowa Corporation Income Tax Return |
| BlockFi, Inc. | Louisiana | CIFT-620 | Louisiana Corporation Income/Franchise Tax Declaration |
| BlockFi, Inc. | Maryland | 500 | Corporation Income Tax Return |
| BlockFi, Inc. | Mississippi | 83-105 | Corporate Income and Franchise Tax Return |
| BlockFi, Inc. | Missouri | MO-1120 | Corporation Income Tax Return |

| BlockFi, Inc. | North Carolina | CD-405 | C Corporation Tax Return |
| BlockFi, Inc. | Ohio | FIT-10 | Financial Institutions Tax Report |
| BlockFi, Inc. | Oklahoma | 512 | Corporation Income and Franchise Tax Return |
| BlockFi, Inc. | Pennsylvania | RCT-101 | PA Corporate Net Income Tax Report |
| BlockFi, Inc. | South Carolina | SC-1120 | C Corporate Income Tax Return |
| BlockFi, Inc. | Tennessee | FAE-170 | Tennessee Franchise and Excise Tax Return |
| BlockFi, Inc. | Virginia | 500 | Virginia Corporation Income Tax Return |
| BlockFi Lending, LLC | Alabama | PPT | Alabama Business Privilege Tax Return and Annual Report |
| BlockFi Lending, LLC | California | 568 | Limited Liability Company Return of Income |
| BlockFi Trading, LLC | Alabama | PPT | Alabama Business Privilege Tax Return and Annual Report |
| BlockFi Trading, LLC | California | 568 | Limited Liability Company Return of Income |

**Listing of Federal and State and Local Income Tax Returns Included in 2022 Tax Compliance Preparation Only:**

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| BlockFi NB LLC | Federal | 1065 | U.S. Return of Partnership Income |
| BlockFi NB LLC | New Jersey | NJ-1065 | State of NJ Income Tax- Partnership Return |

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| BlockFi Bitcoin Trust | Federal | 1041 | U.S. Income Tax Return for Estates & Trusts |

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81F240EAA7E

<u>DELOITTE TAX LLP GENERAL BUSINESS TERMS</u>

**1.    Contract and Parties.**

(a)  The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)  This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)  Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)  Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e)  "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

2.    Responsibilities of the Client and of Deloitte Tax.

(a)  Responsibilities of the Client

(i)   The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)  The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

(b)  Responsibilities of Deloitte Tax

(i)   The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)  Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA75

(iii)  In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv)  Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)   Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

## 3.   Payment of Invoices.

Subject to any applicable Bankruptcy Court orders, rules or procedures, Deloitte Tax's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within thirty (30) days of the invoice date or such later date as payment is permitted under any applicable Bankruptcy Court orders, rules or procedures ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

## 4.   Term.

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than fifteen (15) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 15 days of receipt of notice of such breach.

(c)  Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

DocuSign Envelope ID: 8147BA2B-AE54-408F-B97C-B81E240EAA75

(d)   Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)   Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

## 5.    Ownership of Deloitte Property & Work Products.

(a)   To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)   Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)   The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services. As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)   To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e)   "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

## 6.    Limitations on Damages.

(a)  Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the gross negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.  For purposes of the Contract and these terms, "gross negligence" shall have the meaning provided it under the laws of the State of New York as of the effective date hereof.

(b)  In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)  In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)  Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)  The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)  If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)  The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

7.    Limitation on Warranties.

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8.    Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers,

DocuSign Envelope ID: 8147BA2B-AF54-428F-B97C-B81F240EAA75

directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.   Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10.   Confidentiality.

(a)   To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with reasonable advance written notice of disclosures required by law, regulation, judicial or administrative process. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)   The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA75

Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)   The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the gross negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

## 13.  Electronic Communications.

(a)   Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)   It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

## 14.  Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of

DocuSign Envelope ID: 8147BA2B-AE54-408F-B97C-B81E240EAA76

confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

### 15. Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

### 16. Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

### 17. Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

### 18. Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

### 19. Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)   To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)   In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)   The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

## 19.1 If Deloitte Tax Is Acting As Data Controller

(a)   Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)   The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)   The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)   Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a)   Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA75

Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)   To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)   The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)   Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

DocuSign Envelope ID: 8147BA2B-AF54-408F-B97C-B81E240EAA76

**20.  Anti-corruption and Sanctions.**

(a) Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

(b) Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in (or having an impact on) providing and receiving the Services under this Contract.  The parties recognize that such laws and regulations restrict the export and reexport of the Services and Deliverables to jurisdictions subject to territorial economic sanctions (currently, e.g., Russia).

**21.  Disclosure Laws.**

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

**22.  Counterparts and Language.**

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

**23.  Entire Agreement, Modification and Effectiveness.**

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

**24.  Survival and Interpretation and Third-Party Beneficiary.**

(a)  Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)  If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)  Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

## 25.  Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

## 26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

## 27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or

DocuSign Envelope ID: 8147BA2B-AE54-408F-B97C-B81E240EAA76

for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

# Deloitte Tax LLP Privacy Statement

Last revised: January 1, 2023

## Introduction

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

## To whom does this Privacy Statement apply and what does it cover?

This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our"), an entity within the Deloitte Network. As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it asset out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

## What personal information do we collect?

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information under certain U.S. State laws (special category personal information is considered to include information about your social security, driver's license, state identification card, or passport numbers; non-Deloitte account username or number or financial account, debit card, or credit card number in combination with credentials allowing access to such accounts; racial or ethnic origin; immigration or citizenship status; religious or philosophical beliefs; trade union membership; genetic or biometric data for identification purposes; precise geolocation; political opinions; medical or health conditions; or sex life or sexual orientation. Sensitive personal information also includes the contents of your personal mail, email, or text messages unless we are the intended recipient). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will, where required by law, require explicit consent in order to process it.

## How do we collect personal information?

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

## Disclosing personal information to us relating to third parties

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals(including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

## How do we use your personal information?

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

Any personal information that we have about you may be de-identified and maintained and used by us without re-identifying such information. Such de-identified information is not subject to the terms of this Privacy Statement.

## On what basis do we process personal information about you?

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a) where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests;

or (c) we are subject to legal, regulatory or professional obligations.

## To whom will we disclose your personal information?

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement
- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

## Deloitte Tax LLP Privacy Statement

Last revised: January 1, 2023

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You may have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you
  - the categories and/or specific pieces of personal information we collected
  - the categories of sources from which personal information is collected
  - the business or commercial purpose for collecting personal information
  - the categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect maybe that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, complete our Personal Information Request Form or call us at this toll-free number +1-844-919-0711. When calling us, please provide your full name, mailing address, email address and the specific type of request you are making. You also have a right to appeal a denial of your request by completing the Personal Information Request Appeal Form (available at https://datasubject.deloitte.com/appeal-form).

For individuals in the EU and Switzerland, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending On your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please complete our Personal Information Request Form (https://datasubject.deloitte.com/) and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S.

Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom%20_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844-919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

## Exhibit 3

**Restructuring Services Engagement Agreement**

DocuSign Envelope ID: 49B63756-9307-45E4-B494-1D4F06D2123F

# Deloitte.

**Deloitte Tax LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: 212-492-4000
Fax: 212-489-1687
www.deloitte.com

April 5, 2023

Rob Loban
Chief Accounting Officer
BlockFi, Inc.
201 Montgomery Street, 2nd Floor
Jersey City, NJ 07302

Dear Rob:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory services (the "Services") to BlockFi, Inc. and its subsidiaries and/or affiliates ("Client") in connection with Client's financial restructuring and bankruptcy filing under Chapter 11 of Title 11 the U.S. Code. This engagement letter (the "Engagement Letter") describes the scope of our Services, the respective responsibilities of Deloitte Tax and Client, and the fees associated with such Services.

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services provided by Deloitte Tax to Client during the period beginning March 1, 2023, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

## SCOPE OF SERVICES

Deloitte Tax has agreed to perform the Services set forth below related to tax matters arising in connection with Client's debt restructuring and/or bankruptcy filing. The Services, as requested by Client and agreed to by Deloitte Tax, are as follows:

a) Advise Client on post-restructuring tax attributes and post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on Client's operating projections;

b) Advise Client regarding tax basis calculation methodologies to account for disposed digital assets, particularly the determination of cost basis and calculations of gain/loss on disposition;

c) Advise Client regarding potential U.S. tax information reporting obligations and withholding obligations that may arise relating to distributions to claimants;

d) Advise Client on responding to tax notices and audits from various taxing authorities;

e) Advise Client on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

f) Advise Client with its efforts to calculate tax basis in assets by entity;

g) Advise Client of the impacts of repatriation of digital assets to the United States. It is contemplated that the Services requested may include identification of the relevant entities holding the digital assets in question; understanding the U.S. tax classification of entities for which the digital assets

DocuSign Envelope ID: 49B63755-9307-45E4-B494-1D4F06D2123F

BlockFi, Inc.
April 5, 2023
Page 2

are being held; assistance with the treatment of distributions from a U.S. federal income tax perspective with consideration around the relevant classification of entities.

The performance of the Services by Deloitte Tax may be based upon a review of various documentation including, but not limited to, legal opinions and books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

## TAX POSITIONS AND POTENTIAL PENALTIES

In accordance with our professional standards, should Deloitte Tax become aware during the performance of our Services of tax positions for which Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss whether such penalties may be avoided through adequate disclosure to taxing authorities. Client should be aware that in certain instances, the disclosure requirements applicable to Deloitte Tax, as a tax return preparer, may exceed those applicable to Client.

## REPORTABLE TRANSACTIONS

The IRS and several states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy of that disclosure form with the IRS and/or the applicable state authority. These rules impose significant disclosure obligations that may encompass transactions entered into in the normal course of business. The Services that are the subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any reportable transactions or disclosure obligations. Any services regarding reportable transactions will be provided under the terms of a separate engagement letter. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosure will result in substantial penalties. Deloitte Tax will not be liable for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

## ACKNOWLEDGMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

DocuSign Envelope ID: 49B637F5-9397-45F4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 3

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

a) The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

b) Deloitte Tax's assumption that there will be timely execution, delivery, and performance, as may be required, by any representation or documents submitted by Client with respect to the Deloitte Tax Services;

c) Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.);

d) Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

e) Client's understanding that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion;

f) Client's understanding that the review of documents under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board;

g) Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax may be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon; and

h) Client's understanding that Client will maintain ultimate responsibility for all management decisions and management functions. Client understands and agrees that the ultimate responsibility with respect to the appropriate application and interpretation of any oral or written communications rests with management of Client. Deloitte Tax will not be held liable for any misinterpretations of oral or written communications regarding the application of tax advice.

Although Deloitte Tax may in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued. Any part of our analysis, including the recommendations or conclusions may change between the time of any draft and the issuance of a final deliverable.

BlockFi, Inc.
April 5, 2023
Page 4


## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body.  Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for Services are based on the amount of professional time incurred and the below agreed-upon hourly rates.  The hourly rates (in $ US) vary depending upon the experience level of the professionals involved.

| | |
|---|---|
| Partner/Principal/Managing Director | $1,160 |
| Senior Manager | $1,020 |
| Manager | $870 |
| Senior | $750 |
| Staff | $630 |

In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials, and increased costs of doing business.  Changes in the foregoing agreed-upon hourly rates will be subject to Client's approval in advance and will be noted on the invoices for the first time period in which the revised rates become effective.

Reasonable out-of-pocket expenses, including travel (with air travel based on coach fares), and an allocation of estimated administrative and technology costs incurred (e.g., report production, research materials, document delivery services, and other administrative and technology costs) are reflected as additional amounts on the bills.

In addition, in connection with the engagement Deloitte Tax will be entitled to compensation for any time and actual reasonable out-of-pocket expenses including, without limitation, reasonable legal fees and expenses that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Client, including, without limitation, those relating to Client but arising other than as a result of or in connection with this agreement.

DocuSign Envelope ID: 49B63756-2397-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 5

Deloitte Tax expects to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330. In such event, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below). However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses. Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Engagement Letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

## ACCEPTANCE

This Engagement Letter, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact Ken Schulhof at (212) 436-5370.

BlockFi, Inc.
April 5, 2023
Page 6


Very truly yours,

DELOITTE TAX LLP


By:   _Kenneth Schulhof_

Ken Schulhof

Partner


AGREED AND ACCEPTED

BlockFi, Inc., on behalf of itself and its subsidiaries and/or affiliates


By:   Robert Loban
      CODB5D97C47E4FE...
      Robert Loban Chief Accounting Officer


Date:   4/10/2023

DocuSign Envelope ID: 49B637F5-9397-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 7

## DELOITTE TAX LLP GENERAL BUSINESS TERMS

### 1.    Contract and Parties.

(a) The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b) This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c) Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d) Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e) "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their

DocuSign Envelope ID: 49B637F5-9307-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 8

predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

**2.  Responsibilities of the Client and of Deloitte Tax.**

**(a)  Responsibilities of the Client**

(i)  The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)  The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

**(b)  Responsibilities of Deloitte Tax**

(i)  The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)  Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii) In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or

BlockFi, Inc.
April 5, 2023
Page 9

oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv) Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v) Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

**3. Payment of Invoices.**

Deloitte Tax's invoices are due and payable by the Client upon presentation subject to any applicable Bankruptcy Court orders, rules or procedures. If payment of an invoice is not received within thirty (30) days of the invoice date or such later date as payment is permitted under any applicable Bankruptcy Court orders, rules or procedures ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

**4. Term.**

(a) This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than fifteen (15) days before the effective date of termination.

(b) Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 15 days of receipt of notice of such breach.

(c) Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d) Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

DocuSign Envelope ID: 49B637F5-9397-45E4-B494-1D4F06D2123F

BlockFi, Inc.
April 5, 2023
Page 10

(e) Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

**5.   Ownership of Deloitte Property & Work Products.**

(a) To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b) Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c) The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services.  As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d) To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e) "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

**6.   Limitations on Damages.**

(a) Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally

DocuSign Envelope ID: 49B63755-9307-45E4-B494-1D4F06D2123F

BlockFi, Inc.
April 5, 2023
Page 11

determined to have resulted primarily from the recklessness, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.

(b)  In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)  In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)  Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)  The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)  If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)  The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

**7.   Limitation on Warranties.**

**THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

**8.   Force Majeure.**

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

**9.   Limitation on Actions.**

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

DocuSign Envelope ID: 49B637F5-9397-45E4-B494-1D4F06D2123F

BlockFi, Inc.
April 5, 2023
Page 12


## 10. Confidentiality.

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with reasonable advance written notice of disclosures required by law, regulation, judicial or administrative process.  The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)  The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

DocuSign Envelope ID: 49B63756-2307-45E4-B494-1D4F06D21B3F

BlockFi, Inc.
April 5, 2023
Page 13

## 11. Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12. Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the recklessness, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

## 13. Electronic Communications.

(a)  Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)  It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

## 14. Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

## 15. Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

DocuSign Envelope ID: 49B63F56-0307-45E4-B494-1D4F06D2123F

BlockFi, Inc.
April 5, 2023
Page 14

**16.  Destruction of Working Papers.**

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

**17.  Marketing Material & Use of Name.**

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

**18.  Spreadsheets, Models and Tools.**

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

**19.  Data Protection.**

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)  To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)  In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

DocuSign Envelope ID: 49B637F5-9397-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 15

(f) The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

## 19.1 If Deloitte Tax Is Acting As Data Controller

(a) Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b) The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c) The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d) Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a) Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by

DocuSign Envelope ID: 49B63756-9397-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 16

applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)  To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)  The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)  Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

## 20.  Anti-corruption.

Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

## 21.  Disclosure Laws.

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be

DocuSign Envelope ID: 49B63756-9397-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 17

obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

## 22. Counterparts and Language.

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

## 23. Entire Agreement, Modification and Effectiveness.

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

## 24. Survival and Interpretation and Third-Party Beneficiary.

(a)  Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)  If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)  Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

## 25. Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from

DocuSign Envelope ID: 49B637F5-2397-45E4-B494-1D6F06D2123F

BlockFi, Inc.
April 5, 2023
Page 18

commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

### 26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

### 27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

BlockFi, Inc.
April 5, 2023
Page 19

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

**Introduction**

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

**To whom does this Privacy Statement apply and what does it cover?**

**This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our")**, an entity within the Deloitte Network. As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

**What personal information do we collect?**

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information (special category personal information is considered to include information about your health, racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, genetic data, biometric data or sexual orientation). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will require explicit consent in order to process it.

**How do we collect personal information?**

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

**Disclosing personal information to us relating to third parties**

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals (including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

**How do we use your personal information?**

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

**On what basis do we process personal information about you?**

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a)   where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests.

or (c) we are subject to legal, regulatory or professional obligations.

**To whom will we disclose your personal information?**

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement

© 2020. For information, contact Deloitte Touche Tohmatsu Limited.

BlockFi, Inc.
April 5, 2023
Page 20

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information about your:
  the personal information we hold about you:
  - The categories and/or specific pieces of personal information we collected
  - The categories of sources from which personal information is collected
  - The business or commercial purpose for collecting personal information
  - The categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect may be that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, please complete our Personal Information Request Form (available at https://datasubject.deloitte.com/) or call us at this toll-free number **+1-844-919-0711**. When calling us, please provide your full name, mailing address and email address.

Applicable laws may also give you the right to lodge a complaint with a local supervisory authority related to this Privacy Statement. For individuals in the EU, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending on your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please contact us at USPrivacyQuestions@deloitte.com and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S. Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of these Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844- 919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

## Exhibit B

**Schulhof Declaration**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF KENNETH SCHULHOF IN**
**SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND**
**EMPLOY DELOITTE TAX LLP AS TAX SERVICES PROVIDER**
**EFFECTIVE AS OF MARCH 1, 2023 AND (II) GRANTING RELATED RELIEF**

I, Kenneth Schulhof, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, as follows:

1.      I am a partner of the firm of Deloitte Tax LLP ("<u>Deloitte Tax</u>"), which has an office

at 30 Rockefeller Plaza, New York, NY 10112.  I am duly authorized to make and submit this

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification
number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet
LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC
(2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service
address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

declaration (the "Declaration") on behalf of Deloitte Tax in accordance with sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") in support of the *Application of Debtors for Entry of an Order (I) Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of March 1, 2023 and (II) Granting Related Relief* (the "Application").[2]

2.     The Debtors seek to retain and employ Deloitte Tax as their tax services provider in accordance with the terms and conditions set forth in:  (i) that certain engagement agreement, dated April 3, 2023, a copy of which is attached as Exhibit 1 to the Order (the "Section 382 Compliance Engagement Agreement"); (ii)  that certain engagement agreement, dated April 3, 2023, a copy of which is attached as Exhibit 2 to the Order (the "Tax Compliance Engagement Agreement"); and (iii) that certain engagement agreement dated April 5, 2023, a copy of which is attached as Exhibit 3 to the Order (the "Restructuring Services Engagement Agreement" and together with the Section 382 Compliance Engagement Agreement and the Tax Compliance Engagement Agreement, the "Engagement Agreements").

3.     The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and/or upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

## Deloitte Tax's Qualifications

4.      Deloitte Tax is a tax services firm with offices across the United States.  Deloitte Tax has significant experience performing tax services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States.  Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these Chapter 11 Cases in a cost-effective, efficient, and timely manner.

5.      Deloitte Tax provides, and has provided, tax services in numerous large chapter 11 cases, including:  *In re Pipeline Health Sys., LLC*, No. 22-90291 (Bankr. S.D. Tex. Feb. 2, 2023); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Oct. 20, 2022); *In re Revlon, Inc.,* No. 22-10760 (DSJ) (Bankr. S.D.N.Y. Aug. 23, 2022); *In re ION Geophysical Corp.*, No. 22-30987 (MI) (Bankr. S.D. Tex. July 19, 2022); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 1, 2022); *In re Limetree Bay Serv's, LLC*, No. 21-32351 (DRJ) (Bankr. S.D. Tex. May 26, 2022); *In re Basic Energy Serv's, Inc.*, No. 21-32351 (DRJ) (Bankr. S.D. Tex. Nov. 8, 2021); *In re 24 Hour Fitness, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. Sept. 11, 2020); *In re Washington Prime Group, Inc.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 27, 2021); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020).[3] Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.  Accordingly, Deloitte Tax is both well qualified and able to provide the Services for the Debtors during these Chapter 11 Cases in an efficient and timely manner.

6.      In addition, since approximately November 2020, Deloitte Tax has provided certain tax services to the Debtors.  In providing such prepetition professional services to the Debtors,

---

[3]      Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to the Debtors' counsel.

Deloitte Tax is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these Chapter 11 Cases. Accordingly, Deloitte Tax is both well-qualified and able to provide the aforementioned services for the Debtors in these Chapter 11 Cases in an efficient and timely manner.

<u>Disinterestedness</u>

A.    ***Background Information Related to Deloitte Tax***

7.    Deloitte Touche Tohmatsu Limited ("<u>DTTL</u>") is a UK private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each, a "<u>DTTL Member Firm</u>") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis, and operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries, or branch offices of each other or of a global parent. Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines. DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms. There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm. Profits are not shared between or among the DTTL Member Firms.

8.    In the United States, Deloitte LLP is a DTTL Member Firm. Like DTTL, Deloitte LLP does not provide services to clients. Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte Tax, Deloitte & Touche LLP ("<u>Deloitte & Touche</u>"), Deloitte Consulting LLP ("<u>Deloitte Consulting</u>"), Deloitte Financial Advisory Services LLP

4

("Deloitte FAS"), and Deloitte Transactions and Business Analytics LLP ("DTBA") (Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries, collectively, the "Deloitte U.S. Entities"). The partners and/or principals of each operating affiliate of Deloitte LLP are owners of their respective affiliate along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

### B.    *Conflicts Check Process, Generally*

9.    As described below, for the most part, the conflicts searches conducted by Deloitte Tax involves checking client and other databases of the Deloitte U.S. Entities. Given the separateness of the various DTTL Member Firms as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates or subsidiaries. However, notwithstanding the separateness of the DTTL Member Firms, as described below, the Deloitte U.S. Entities' checking procedures in bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms.

10.    When any of Deloitte LLP's operating affiliates, such as Deloitte Tax, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors). With the assistance of the Deloitte U.S. Entities' conflicts team (the "Conflicts Team"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections. Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

(i)    With respect to the debtor and debtor affiliates, the Conflicts Team will:

(a)    Initiate cross border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based upon information provided by the debtors and research by the Conflicts Team of publicly available information.  The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement).

(b)    Perform a search of the cross border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[4]  This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business relationship entities or third parties associated with a client engagement).

(c)    Perform a search of the database system associated with audit and other related independence requirements (the "Independence Database") to identify possible connections with debtor and debtor affiliates with respect to whom such requirements are actually or potentially implicated.  Each DTTL Member Firm is required to input its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[5]  Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree. The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

(ii)    With respect to the debtor's parties in interest, the Conflicts Team will:

(a)    Perform a search of the cross border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct

---

[4]    These cross border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

[5]    Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

attest or litigation client or business relationship entity.

(b)      Perform a search of the Independence Database to determine whether a party in interest is identified therein.

11.      Based upon the foregoing, it is my understanding that the overall design and implementation of Deloitte U.S. Entities' current procedures provide a reasonable level of comfort that relationships and potential conflicts related to a debtor will be identified.

### C.      *Disinterestedness of Deloitte Tax*

12.      Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte Tax, nor any partner, principal, or managing director of Deloitte Tax that is anticipated to provide the Services for which Deloitte Tax is to be retained (the "Deloitte Tax Engagement Partners/Principals/Managing Directors") holds any interest adverse to the Debtors with respect to the matters on which Deloitte Tax is to be retained in their Chapter 11 Cases; and (b) Deloitte Tax has no relationship to the Debtors, their significant creditors, certain other parties-in-interest, or to the attorneys that are known to be assisting the Debtors in their Chapter 11 Cases, except as stated herein or in any attachment hereto.

13.      In connection with the Debtors proposed retention of Deloitte Tax in their Chapter 11 Cases, Deloitte Tax undertook searches to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "Potential Parties-in-Interest"), whose specific names were provided to Deloitte Tax by the Debtors, listed on **Schedule 1** attached hereto.  To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these Chapter 11 Cases, Deloitte Tax researched its

7

client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or significant Potential Parties-in-Interest.

14.     Deloitte Tax and/or its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest.  Accordingly, Deloitte Tax and/or its affiliates have or may have provided professional services, may currently provide professional services, and/or may in the future provide professional services in matters unrelated to the Chapter 11 Cases to certain of the Potential Parties-in-Interest.  Additionally, certain of these Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte Tax and/or its affiliates and the Deloitte Tax Engagement Partners/Principals/Managing Directors in matters unrelated to the Chapter 11 Cases.  A listing of parties with such connections to Deloitte Tax and/or its affiliates is attached to this Declaration as **Schedule 2**.

15.     With respect to Deloitte Tax's conflicts checks conducted in these Chapter 11 Cases, if a database query identified a potential connection between a Potential Party-in-Interest and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party-in-Interest to confirm whether or not the relationship with such Potential Party-in-Interest related or currently relates to the Chapter 11 Cases.  Responses to these emails were consolidated and subsequently reviewed.  As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties-in-Interest that do not relate to the Chapter 11 Cases.  The identified potential connections to the

Potential Parties-in-Interest are included on **Schedule 2** appended hereto, and such connections do not relate to the Chapter 11 Cases.

16.    Deloitte Tax believes that the relationships described herein or reflected on **Schedule 2** have no bearing on the Services for which Deloitte Tax's retention is being sought by the Debtors in these Chapter 11 Cases.    Furthermore, such relationships do not impair Deloitte Tax's disinterestedness, and Deloitte Tax does not represent an adverse interest in connection with these Chapter 11 Cases.

17.    To the best of my knowledge, based on the searches discussed above, Deloitte Tax has determined that certain relationships should be disclosed as follows.

a.    Deloitte Tax and its affiliates provide services in matters unrelated to the Chapter 11 Cases to certain of the Debtors' largest unsecured and secured creditors and other Potential Parties-in-Interest or their affiliates listed on Schedule 2.

b.    Law firms identified on Schedule 2, including Allen & Overy LLP; Bradley Arant Boult Cummings LLP; Brown Rudnick LLP; CohnReznick LLP; Cole Schotz P.C.; Covington & Burling LLP; Davis Polk & Wardwell LLP; Fox Rothschild LLP; Gibbons P.C.; Hodgson Russ LLP; Hogan Lovells International LLP; Hogan Lovells US LLP; Holland & Knight LLP; King & Spalding LLP; Kirkland & Ellis International LLP; Kirkland & Ellis LLP; Linklaters LLP; Linklaters Singapore Pte. Ltd.; Littler Mendelson P.C.; Locke Lord LLP; Loeb & Loeb LLP; Manatt Phelps & Phillips LLP; McCarter & English LLP; Mintz Levin Cohn Ferris Glovsky & Popeo P.C.; Morgan Lewis & Bockius LLP; Osler Hoskin & Harcourt LLP; Perkins Coie LLP; Quinn Emanuel Urquhart & Sullivan LLP; Reed Smith LLP; Simmons & Simmons LLP; Stikeman Elliot LLP; Sullivan & Cromwell LLP; Troutman Pepper Hamilton Sanders LLP; Venable LLP; and White & Case LLP, have provided, currently provide, and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to their Chapter 11 Cases, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c.    In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in their Chapter 11 Cases.    For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d.  DTBA is engaged by Kirkland & Ellis LLP, in its capacity as the Debtors' bankruptcy counsel, to perform certain e-discovery services pursuant to a privileged engagement letter in connection with these chapter 11 cases.

e.  Deloitte Tax performed queries regarding whether any of the Deloitte Tax Engagement Partners/Principals/Managing Directors and other professional personnel performing services for the Debtors has bought, sold, traded, or stored cryptocurrency through or on the Debtors' platform.  In making such inquires, I understand, and Deloitte Tax represents, that it did not receive any affirmative responses to any of the aforementioned questions.[6]

f.  Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to the Chapter 11 Cases.

g.  Deloitte Tax and Deloitte & Touche have provided and continue to provide certain tax services and audit services, respectively, to certain Potential Parties-in-Interest and/or their affiliates, in matters unrelated to these Chapter 11 Cases. In its capacity as independent auditor, Deloitte & Touche provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such Potential Parties-in-Interests' business arrangements with the Debtors.  Similarly, Deloitte Tax, in its capacity as tax services provider, provides such clients with ordinary course tax services which may arise from or reflect such Potential Parties-in-Interests' business arrangements with the Debtors.

h.  Deloitte Consulting and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these Chapter 11 Cases.

18.  Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in their Chapter 11 Cases, the United States Trustee for Regions 3 and 9, the Assistant United States Trustee for the District of New Jersey, and the attorneys therefor assigned to these Chapter 11 Cases.

19.  Despite the efforts described above to identify and disclose Deloitte Tax's connections with the Potential Parties-in-Interest in the Chapter 11 Cases, because Deloitte Tax is

---

[6]  Other Deloitte U.S. Entities' personnel may have such a relationship with the Debtors; however, Deloitte Tax's inquiry did not encompass all such personnel.

a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

20.    Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

## Scope of Services

21.    Subject to the Court's approval, Deloitte Tax will provide tax advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements.

22.    Pursuant to the terms and conditions of the Section 382 Compliance Engagement Agreement, Deloitte Tax has been engaged to assist the Debtors with assessing whether and to what extent the Debtors experienced historical ownership changes for purposes of section 382 of the Internal Revenue Code (the "IRC") during the period January 1, 2021 through December 31, 2023, and to the extent Deloitte Tax identifies any ownership changes, calculating the amount of the Debtors' section 382 ownership change limitation(s) and preparing a utilization schedule of NOLs. Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Section 382 Compliance Engagement Agreement among other things, Deloitte Tax will provide the following services (the "Section 382 Services"):

    a.    analyze the capitalization tables, financial statements, and other documents provided by the Debtors, to identify, and in certain cases, eliminate, a shareholder as a 5-percent shareholder for purposes of section 382 of the IRC;

b.      identify and analyze the segregation rules under section 382 of the IRC (*e.g.*, redemptions, reorganizations involving the issuance of the Debtors' stock, transfers by 5-percent shareholders, etc.) resulting in certain less than 5-percent shareholders being aggregated and treated as separate 5-percent shareholders;

c.      apply the small issuance and/or cash issuance exceptions to any transaction subject to the segregation rules;

d.      identify testing dates including: (i) the purchase or disposition of the Debtors' stock by a 5-percent shareholder, and/or (ii) the redemption, recapitalization, issuance, or other equity event that affects the percentage of stock owned by a 5-percent shareholder;

e.      apply consolidated return rules as required;

f.      consider non-stock instruments that may be considered stock for purposes of section 382 of the IRC;

g.      consider higher-tier shifts for 5-percent shareholders;

h.      consider whether it is necessary to develop a methodology to account for ownership shifts attributable solely to fluctuation of value among the Debtors' multiple classes of stock and apply such methodology to capture only those shifts directly attributable to actual equity activity;

i.      consider the impact of the final regulations pursuant to Treas. Reg. §1.382-3(j) for the open testing period following October 22, 2013;

j.      compute the Debtors' section 382 ownership change percentages on a test date by test date basis and calculate whether one or more ownership changes occurred;

k.      summarize the methodology utilized and assumptions relied upon in preparing the Section 382 analysis;

l.      calculate the among of the Debtors' IRC section 382 base limitation(s) based upon the date of any ownership change(s), the applicable federal rate, and adjustments to value as proscribed by IRC section 382 or the accompanying regulations;

m.      calculate whether and to what extent the Debtors may have a net unrealized built-in gain or net unrealized built-in loss;

n.      calculate an estimate of the amount of recognized built-in gain or loss for each ownership change date; and

o. prepare a schedule detailing the yearly rollout of the Debtors' federal net operating losses and other income tax attributes available for utilization prior to expiration, incorporating limitations as described above.

23. Pursuant to the terms and conditions of the Tax Compliance Engagement Agreement, Deloitte Tax has been engaged to provide certain tax return preparation services. Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Tax Compliance Engagement Agreement, among other things, Deloitte Tax will provide the following services (the "Compliance Services"):

a. prepare the 2022, as well as the 2021 amended, federal, state and local income tax returns;

b. assist in calculating the amounts of extension payments and preparing the extension requests for the 2022 tax returns;

c. electronically file the Debtors' federal and state income tax returns; and

d. provide assistance in connection with the Debtors' use of electronic funds withdrawals.

24. Pursuant to the terms and conditions of the Restructuring Services Engagement Agreement, Deloitte Tax has been engaged to provide certain tax advisory services in connection with these Chapter 11 Cases. Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Restructuring Services Engagement Agreement, among other things, Deloitte Tax will provide the following services (the "Restructuring Services", and collectively with the Section 382 Services and the Compliance Services, the "Services"):

a. advise the Debtors on post-restructuring tax attributes and post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors' operating projections;

b. advise the Debtors regarding tax basis calculation methodologies to account for disposed digital assets, particularly the determination of cost basis and calculations of gain/loss on disposition;

c.    advise the Debtors regarding potential U.S. tax information reporting obligations and withholding obligations that may arise relating to distributions to claimants;

d.    advise the Debtors on responding to tax notices and audits from various taxing authorities;

e.    advise the Debtors on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

f.    advise the Debtors with their efforts to calculate tax basis in assets by entity; and

g.    advise the Debtors of the impacts of repatriation of digital assets to the United States, including identifying the relevant entities holding the digital assets in question; understanding the U.S. tax classification of entities for which the digital assets are being held; and assisting with the treatment of distributions from a U.S. federal income tax perspective with consideration around the relevant classification of entities.

25.    The Services are necessary to the Debtors' efforts to administer their Chapter 11 Cases.

## **Professional Compensation**

26.    Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangement, set forth in the Engagement Agreements.

27.    Pursuant to the terms of the Tax Compliance Engagement Agreement, the Debtors and Deloitte Tax agreed that Deloitte Tax will bill the Debtors a fixed fee of $526,000 for the preparation of the 2022 tax returns, including preparation of extension requests, and a fixed fee of $246,700 for the preparation of the 2021 amended tax returns, for a total of $772,700. Additionally, Deloitte Tax estimates that the fees for the preparation of additional state and local tax returns not listed on Exhibit A to the Tax Compliance Engagement Agreement will be $3,500 for each separate return and between $7,500 and $8,000 for each combined return based on the level of information

requested on the tax return.  Deloitte Tax will bill the Debtors in accordance with the agreed-upon billing schedule, as follows:

| Date to be Billed | Amount |
|---|---|
| May 1, 2023 | $154,540 |
| June 1, 2023 | $154,540 |
| July 1, 2023 | $154,540 |
| August 1, 2023 | $154,540 |
| Upon Delivery of Federal Return | $154,540 |
| **Total:** | **$772,700** |

28.     Pursuant to the terms of the Section 382 Compliance Engagement Agreement and Restructuring Services Engagement Agreement, Deloitte Tax will charge the Debtors for its Section 382 Services and Restructuring Services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates[7] |
|---|---|
| Partner/Principal/Managing Director | $1,160 |
| Senior Manager | $1,020 |
| Manager | $870 |
| Senior | $750 |
| Staff | $630 |

29.     In the event that Deloitte Tax performs any tax consulting services or other services outside the scope of the Services, Deloitte Tax will bill the Debtors for such services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table above.

30.     In addition, reasonable expenses, including travel, and an allocation of estimated administrative and technology costs incurred (*e.g.*, report production, research materials, document

---

[7]     In the ordinary course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials, and increased costs of doing business.  Deloitte Tax shall advise the Debtors of any new rates should it institute a rate change during the Chapter 11 Cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

delivery services, and other expenses) in providing Deloitte Tax's services, will be included in the total amount billed.

31.    Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche, Deloitte FAS, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States.  For example, a portion of the Services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax India Private Limited ("Deloitte Tax India").  A specifically assigned team of personnel from Deloitte Tax India will assist in the services under the supervision, and with the input, of personnel of Deloitte Tax.  The hourly rates charged to clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India.  The connections of Deloitte Tax India (along with the connections of Deloitte Tax and its other affiliates) to the Potential Parties-in-Interest searched by Deloitte Tax are set forth in **Schedule 2** to this Declaration.

32.    Deloitte Tax intends to file interim and final fee applications with the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the Engagement Agreement, the Application and this Declaration, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the applicable U.S. Trustee guidelines, and the orders of this Court.

33.    Deloitte Tax requests that it be permitted to submit monthly invoices for services rendered and expenses incurred under each Engagement Agreement.  Such invoices will contain reasonable detail consistent with any rules, guidelines and/or administrative orders promulgated by

the Court that apply to these Chapter 11 Cases. Deloitte Tax requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments. I understand that all payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an order of this Court, and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

34.    In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte Tax approximately $269,196 on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte Tax prior to such date.

35.    Deloitte & Touche performed services for the Debtors prior to the Petition Date. In the ninety (90) days prior to the Petition Date, the Debtors did not pay Deloitte & Touche any amounts on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche prior to such date.

36.    Deloitte Tax has received no promises regarding compensation in these Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these Chapter 11 Cases.

<strong><u>No Duplication of Services</u></strong>

37.    To my knowledge, I believe that the Services Deloitte Tax provides to the Debtors will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. Specifically, I believe that Deloitte Tax will perform unique services and will

17

use reasonable efforts to avoid duplication of services by any of the Debtors' other retained professionals and to coordinate with the Debtors to avoid the unnecessary duplication of services.

### **Relief as of March 1, 2023 is Appropriate**

38.    Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors in anticipation that its retention would be approved as of March 1, 2023.  In tandem with these Services, Deloitte Tax has been working diligently to undertake its connections checking processes as detailed in this Declaration.  I do not believe that approval of the Application will prejudice any parties in interest.  The services provided by Deloitte Tax will assist the Debtors in their restructuring efforts, as well as, compliance with their taxation requirements and other tax matters, which are necessary and in the best interest of the Debtors' estates, their creditor constituencies, and other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2023

By: */s/ Kenneth Schulhof*
       Kenneth Schulhof
       Partner
       Deloitte Tax LLP

## Schedule 1

## Potential Parties-in-Interest List

| |
|---|
| 2021 Fintech Industry Fund LLC |
| REDACTED |
| 3 Arrows Capital (3AC) |
| A210Z Capital LLC |
| REDACTED |
| REDACTED |
| Accertify Inc. |
| Accuity Inc. |
| ACE American Insurance Co. (Chubb) |
| Acrew Diversify Capital Executive Fund (A), L.P. |
| Acrew Diversify Capital Executive Fund, L.P. |
| Acrew Diversify Capital Fund (A) LP |
| Acrew Diversify Capital Fund (G), L.P. |
| Acrew Diversify Capital Fund LP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Advokatfirmae Schjodt AS |
| Airbase Inc. |
| Airgas Inc. |
| Akuna Capital |
| Akuna Digital Assets LLC |
| Akuna Ventures LLC |
| Alabama, State of, Attorney General |
| Alabama, State of, Department of Labor |
| Alabama, State of, Department of Revenue |
| REDACTED |
| REDACTED |
| Alan Carr |
| Alaska, State of, Attorney General |
| Alaska, State of, Department of Labor & Workforce Development |
| Alaska, State of, Department of Revenue |
| REDACTED |
| REDACTED |

| |
|---|
| Alder |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Allen & Overy LLP |
| REDACTED |
| Altana Strategy 1 |
| REDACTED |
| Alteryx Inc. |
| Altive Master Fund SPC - Altive Pisces Fund SP |
| REDACTED |
| REDACTED |
| Amazon Web Services Inc. |
| Amazon.com Inc. |
| REDACTED |
| REDACTED |
| Anchorage Digital Bank NA |
| Andco Consulting |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Aniket Ltd. |
| Ankura Trust Co LLC |
| Ankura Trust Co. LLC, as Trustee for the Indenture dated as of February 28,2022 |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Aon (Bermuda) Ltd. |
| Aon plc |

| |
|---|
| Apollo Global Management Inc. |
| AP Capital |
| Arch Insurance Company |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Ares Management Corp. |
| Arizona, State of, Attorney General |
| Arizona, State of, Department of Revenue |
| Arizona, State of, Industrial Commission |
| REDACTED |
| Arkansas, State of, Attorney General |
| Arkansas, State of, Department of Finance & Administration |
| Arkansas, State of, Department of Labor |
| Arrington XRP Capital |
| Arrington XRP Capital Cayman SPV, Ltd. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Aspen Creek Digital |
| AT&T Inc. |
| Atlantic Specialty Insurance Company |
| Atlas Technology Group |
| Atlassian Corp. |
| REDACTED |
| Atreides Foundation Master Fund LP |
| Auros Tech Limited |
| REDACTED |
| Auth0 Inc. |
| AVG - PAV BlockFi 2020 Trust |
| AVGF-PAV1-BLOCKFI 2018, LLC |
| Avon Venture Fund I LP |
| Avon Ventures |
| AXA XL Specialty Insurance Company |
| AXIS Insurance Company |

| |
|---|
| REDACTED |
| REDACTED |
| Backbone Mining Solutions |
| Bain Capital LP |
| Bain Capital Venture Coinvestment Fund II, LP |
| Bain Capital Venture Fund 2021, LP |
| Bain Capital Ventures |
| BambooHR LLC |
| Bandalier Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| Base10 Advancement Initiative I, L.P. |
| Baupost Group LLC, The |
| BC/BL Holdco LLC |
| BCB Bancorp Inc. |
| BCIP Venture Associates II, LP |
| BCIP Venture Associates II-B, LP |
| BCV 2019-MD Coinvestment II, LP |
| BCV 21 Innovators Fund, LP |
| Beazley Group |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Berkeley Research Group |
| Berkley Insurance Co. |
| Berkshire Hathaway Specialty Insurance |
| Bermuda Monetary Authority |
| BF, a series of Factorial Funds I LLC |
| REDACTED |
| REDACTED |
| Binance |
| Binance.com |
| Binance US |
| REDACTED |
| Bitdeer |
| BitFinex |
| BitGo |
| BitGo Holdings Inc. |
| BitMex |

| |
|---|
| BK Offshore Fund Ltd. |
| BL Fund I, (a series of AHP Investments, LP) |
| BL Fund II, (a Series of AHP Investments, LP) |
| BLF 107, (a series of SAX Capital Series Fund V, LP) |
| BlackRock Inc. |
| Blackstone Inc. |
| Blockchain Capital LLC |
| Blockdaemon |
| BlockFi Asia PTE. Ltd (Singapore) |
| BlockFi Cayman LLC |
| BlockFi Holding UK Limited (England and Wales) |
| BlockFi Inc. |
| BlockFi International Ltd |
| BlockFi Investment Products |
| BlockFi Lending II LLC |
| BlockFi Lending LLC |
| BlockFi Management LLC |
| BlockFi Services Inc. |
| BlockFi Trading LLC |
| BlockFi Ventures LLC |
| BlockFi Wallet LLC |
| BlockFi, Inc. |
| Bloomberg Finance LP |
| Blue Owl Capital Inc. |
| Blythe Ventures Pty Ltd |
| REDACTED |
| Boyle & Valenti Law PC |
| Bracket Capital |
| Bradley Arant Boult Cummings LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Brevan Howard |
| Brex Inc. |

| |
|---|
| REDACTED |
| REDACTED |
| Brigade Capital |
| Brody & Browne LLP |
| Brown Rudnick LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| BV Power Alpha LLC |
| ByBit |
| C Street Advisory |
| Cadenza Ventures Opportunities Fund, LP (Series B) |
| California, State of, Attorney General |
| California, State of, Division of Labor Standards Enforcement & the Office of the Labor Commissioner |
| California, State of, State Board of Equalization |
| REDACTED |
| REDACTED |
| CANON INC. |
| Capital Properties Inc. |
| Capital Union Bank Ltd. |
| REDACTED |
| Carta Inc. |
| REDACTED |
| Castle Island Ventures I, L.P. |
| Castle Island Ventures I-A, L.P. |
| Castlelake |
| REDACTED |
| REDACTED |
| REDACTED |
| Celsius Network Ltd |
| Centerbridge |
| Centre Consortium |
| Cerberus Capital Management |
| CF Benchmarks Ltd. |
| CFGI, LLC |
| REDACTED |
| Chainalysis Inc. |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Chicago Atlantic |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| CIV Opportunity Series Co-Invest I, L.P. |
| Clark Hill plc |
| REDACTED |
| Cloudflare Inc. |
| CMS Holdings, LLC |
| CMT Digital Investments I LLC – Series 3 |
| CMT Digital Ventures Fund I LLC |
| REDACTED |
| Cogency Global Inc. |
| Cogent Communications |
| Cogent Communications Holdings Inc. |
| Cognitive LLC |
| REDACTED |
| CohnReznick LLP |
| REDACTED |
| Coinbase |
| Coinbase Global, Inc. |
| Coinbase Ventures |
| CoinLoan |
| Cole Schotz P.C. |
| Colorado, State of, Attorney General |
| Colorado, State of, Department of Labor & Employment |
| Colorado, State of, Department of Revenue |
| Compound Treasury |

| |
|---|
| Connecticut, State of, Attorney General |
| Connecticut, State of, Department of Labor |
| Connecticut, State of, Department of Revenue Services |
| ConsenSys Fund I, L.P. |
| REDACTED |
| Conyers Dill & Pearman LLP |
| Coralisle Pension Services Ltd. |
| Core Scientific |
| REDACTED |
| REDACTED |
| Covington & Burling LLP |
| REDACTED |
| REDACTED |
| CrowdStrike Inc. |
| Crown Castle Inc. |
| Crypto.com |
| REDACTED |
| CSC |
| REDACTED |
| Culture Amp Inc. |
| Cumberland DRW LLC |
| REDACTED |
| REDACTED |
| Cushman Management Co. |
| REDACTED |
| REDACTED |
| D.E. Shaw |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| Datadog Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Davidson Kempner |
| Davis Polk & Wardwell LLP |
| REDACTED |
| Deel |
| REDACTED |
| REDACTED |
| REDACTED |
| Delaware, State of, Attorney General |
| Delaware, State of, Department of Labor |
| Delaware, State of, Division of Revenue |
| Delaware, State of, Franchise Tax |
| Delly VC LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Deribit |
| Deserve Inc. |
| Details Management Ltd. |
| REDACTED |
| REDACTED |

| |
|---|
| DHL |
| REDACTED |
| DigiCert Inc. |
| REDACTED |
| Disrupt Ventures |
| Disruptive Innovation Fund, L.P. |
| REDACTED |
| Docker Inc. |
| Dolly VC LLC |
| REDACTED |
| REDACTED |
| Donnelley Financial Solutions Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| Dovetail Digital Ltd. |
| Downs Rachlin Martin PLLC |
| Druk Holding & Investments Limited |
| REDACTED |
| Duco Tech Inc. |
| DVORA |
| REDACTED |
| REDACTED |
| ED&F Man Capital Markets, Inc. |
| Eden Network |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Elementus Inc. |
| REDACTED |
| Elevated Returns LLC |
| REDACTED |
| Elliott Investment Management |
| REDACTED |
| Elwood Technologies Services Ltd |
| Embroker Inc. |
| Emergent Fidelity Technologies Ltd |
| Endurance American Insurance Company (Sompo) |
| EQT |

| |
|---|
| EquityZen Growth Technology Fund LLC - Series 1054 |
| EquityZen Growth Technology Fund LLC - Series 1070 |
| EquityZen Growth Technology Fund LLC - Series 1189 |
| EquityZen Growth Technology Fund LLC - Series 1274 |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Evolve Bank & Trust |
| EY Bermuda Ltd. |
| EY Cayman Ltd. |
| REDACTED |
| REDACTED |
| Fasanara Investments Scrap |
| FedEx Corp. |
| REDACTED |
| Fernhill Corp. |
| Fidelity Digital Assets Services LLC |
| Fidelity Prime |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Financial Action Task Force |
| Financial Conduct Authority |
| Fireblocks International |
| Fireblocks Lending |
| Fireblocks Wallet |
| Fireblocks, Inc. |
| First & 42nd |

| |
|---|
| REDACTED |
| Flori Marquez |
| Florida, State of, Attorney General |
| Florida, State of, Department of Revenue |
| Florida, State of, Division of Workforce Services |
| Flow Traders B.V. |
| Fly Over the City |
| REDACTED |
| FOMO PAY |
| REDACTED |
| Formic Ventures LLC |
| Fort Schuyler Ventures LLC |
| Fortress Investment Group |
| Fox Rothschild LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| FTX |
| FTX International |
| FTX Trading Ltd. |
| REDACTED |
| REDACTED |
| Gaingels |
| Gaingels BlockFi 2021 LLC |
| Gaingels BlockFi LLC |
| Gaingels Gill BlockFi LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Gemini Investments, L.P. |
| Gemini Lending LLC |
| REDACTED |
| REDACTED |
| Genova Burns LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| Georgia, State of, Attorney General |
| Georgia, State of, Department of Labor |
| Georgia, State of, Department of Revenue |
| REDACTED |
| Germano Law LLC |
| REDACTED |
| Gibbons PC |
| REDACTED |
| REDACTED |
| REDACTED |
| GitHub |
| Global PPL Pte. Ltd. |
| Global X Management Co. LLC |
| Goanna Capital 21Q LLC |
| GoldenCoin Cayman LLC |
| GoldenCoin LLC |
| GoldenTree Asset Management LP |
| Google Cloud |
| Google G Suite |
| Google Voice Inc. |
| Google Workspace |
| Gorski & Knowlton PC |
| GoTo Technologies USA Inc. |
| REDACTED |
| Grant Thornton LLP |
| REDACTED |
| REDACTED |
| Great-West Trust Co. LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| Gunderson Dettmer Stough Villeneuve Franklin & Hachigian LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Harvard Management Private Equity Corporation |
| Harvey Tepner |
| Hashkey |
| HashKey Fintech Investment Fund LP |
| Hawaii, State of, Attorney General |
| Hawaii, State of, Department of Labor & Industrial Relations |
| Hawaii, State of, Department of Taxation |
| REDACTED |
| HDR Cadenza Management Limited |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Hodgson Russ LLP |
| Hogan Lovells International LLP |
| Hogan Lovells US LLP |
| REDACTED |
| Holland & Knight LLP |
| REDACTED |
| HRT |
| HRT Research LLC |
| HRTJ Limited |
| HS Investments IV Limited |
| Hudson Bay Capital Management LP |
| REDACTED |
| Hummingbird Regtech Inc. |
| Huobi |
| Hyperion Capital, LLC |
| Hyperion Capital, Ltd. |
| iConnections LLC |
| Idaho, State of, Attorney General |
| Idaho, State of, Department of Labor |
| Idaho, State of, State Tax Commission |

| |
|---|
| REDACTED |
| IL2BF a series of Investlink Holdings |
| REDACTED |
| Illinois National Insurance Co. (AIG) |
| Illinois, State of, Attorney General |
| Illinois, State of, Department of Labor |
| Illinois, State of, Department of Revenue |
| Impact Tech Inc. |
| Indiana, State of, Attorney General |
| Indiana, State of, Department of Labor |
| Indiana, State of, Department of Revenue |
| Intralinks Inc. |
| Iowa, State of, Attorney General |
| Iowa, State of, Department of Revenue & Finance |
| Iowa, State of, Labor Services Division |
| Irish Life |
| Iron Mountain Inc. |
| Ironclad |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| JAMF Software |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| JCDP-6 AI LLC |
| JCDP-6 QP LLC |

| |
|---|
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Jennifer Hill |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Jill Frizzley |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Johnson Gardiner, Attorneys At Law |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| REDACTED |
| JSCT Cayman |
| REDACTED |
| REDACTED |
| REDACTED |
| Judge Michael B. Kaplan |
| Jump Capital |
| REDACTED |
| REDACTED |
| REDACTED |
| KKR & Co. Inc. |
| Kansas, State of, Attorney General |
| Kansas, State of, Department of Labor |
| Kansas, State of, Department of Revenue |
| Kaplan, Judge Michael B. |
| REDACTED |
| Katten Muchin Rosenman LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Kenetic |
| Kenetic Advisors Limited |
| Kenetic Holdings Limited |
| REDACTED |
| REDACTED |
| Kentucky, Commonwealth of, Attorney General |
| Kentucky, Commonwealth of, Labor Cabinet |
| Kentucky, Commonwealth of, Revenue Cabinet |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| King & Spalding LLP |
| Kirkland & Ellis International LLP |
| Kirkland & Ellis LLP |
| KISI Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| KPMG LLP |
| REDACTED |
| Kraken |
| Kristal Advisors (SG) PTE. LTD. |
| Kroll Inc. |
| Kroll Legal |
| Kroll Restructuring Administration LLC |
| REDACTED |
| REDACTED |
| KryptoVault |
| REDACTED |
| KuCoin |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Lake Kentish & Bennett Inc. |
| Lakeside Trading LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| LBP FI III LLP |
| LeadBlock Partners (GP) Sarl |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Liec Invest AG |

| |
|---|
| REDACTED |
| Linklaters LLP |
| Linklaters Singapore Pte. Ltd. |
| Linqto Liquidshares LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Littler Mendelson PC |
| LMAX |
| Locke Lord LLP |
| Loeb & Loeb LLP |
| LooksRare |
| Louisiana, State of, Attorney General |
| Louisiana, State of, Department of Revenue |
| Louisiana, State of, Workforce Commission |
| REDACTED |
| Luna |
| REDACTED |
| Luxor Technologies Inc. |
| M3 Partners, LLC |
| Maine, State of, Attorney General |
| Maine, State of, Department of Labor |
| Maine, State of, Revenue Services, Compliance Division |
| REDACTED |
| REDACTED |
| Manatt Phelps & Phillips LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Marex Capital Markets Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Maryland, State of, Attorney General |
| Maryland, State of, Comptroller |
| Maryland, State of, Department of Labor, Licensing & Regulation |
| REDACTED |
| Massachusetts, Commonwealth of, Attorney General |
| Massachusetts, Commonwealth of, Department of Revenue |
| Massachusetts, Commonwealth of, Executive Office of Labor & Workforce Development |
| Massachusetts, Commonwealth of, Fair Labor Division, Office of The Attorney General |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| MaxBoring |
| Maynard Cooper & Gale PC |
| McAfee & Taft, a Professional Corp. |
| McCarter & English, LLP |
| REDACTED |
| McElroy Deutsch Mulvaney & Carpenter LLP |
| REDACTED |

| |
|---|
| REDACTED |
| McLeod Law LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| Merkle Standard |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Michigan, State of, Attorney General |
| Michigan, State of, Department of Licensing & Regulatory Affairs |
| Michigan, State of, Department of Treasury |
| Microsoft Corp. |
| REDACTED |
| REDACTED |
| REDACTED |
| Minnesota, State of, Attorney General |
| Minnesota, State of, Department of Labor & Industry |
| Minnesota, State of, Department of Revenue |

| |
|---|
| Mintz Levin Cohn Ferris Glovsky & Popeo PC |
| Mississippi, State of, Attorney General |
| Mississippi, State of, Department of Employment Security |
| Mississippi, State of, Tax Commission |
| Missouri, State of, Attorney General |
| Missouri, State of, Department of Revenue |
| Missouri, State of, Labor & Industrial Relations Commission |
| REDACTED |
| Modern Treasury Corp. |
| Moelis |
| REDACTED |
| Monday.com Ltd. |
| Montana, State of, Attorney General |
| Montana, State of, Department of Labor & Industry |
| Montana, State of, Department of Revenue |
| REDACTED |
| REDACTED |
| REDACTED |
| Morgan Creek Blockchain Opportunities Fund II, LP |
| Morgan Creek Blockchain Opportunities Fund, LP |
| Morgan Creek Capital Management |
| Morgan Creek Consumer Opportunities Fund, LP |
| Morgan Creek Digital Fund III, LP |
| Morgan Creek Private Opportunites Fund, LLC Series H - BlockFi |
| Morgan Creek Private Opportunities, LLC Series K- BlockFi |
| Morgan Lewis & Bockius LLP |
| Morgan Stanley |
| REDACTED |
| Morris Nichols Arsht & Tunnell LLP |
| Mountain Cloud Global Limited |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| MyAsiaVC BLF 157, (a series of SAX Capital Series Fund III, LP) |
| REDACTED |
| REDACTED |
| National Association of Attorneys General |
| REDACTED |
| REDACTED |
| Nebraska, State of, Attorney General |
| Nebraska, State of, Department of Labor |
| Nebraska, State of, Department of Revenue |
| REDACTED |
| Nest Workplace Pension Scheme |
| Nevada, State of, Attorney General |
| Nevada, State of, Department of Business & Industry |
| Nevada, State of, Department of Taxation |
| New Hampshire, State of, Attorney General |
| New Hampshire, State of, Department of Labor |
| New Hampshire, State of, Department of Revenue - Administration Unit |
| New Jersey, State of, Attorney General |
| New Jersey, State of, Department of Labor & Workforce Development |
| New Jersey, State of, Department of Treasury |
| New Mexico, State of, Attorney General |
| New Mexico, State of, Department of Taxation & Revenue |
| New Mexico, State of, Department of Work Force Solutions |
| New York, State of, Attorney General |
| New York, State of, Department of Financial Services |

| |
|---|
| New York, State of, Department of Labor |
| New York, State of, Department of Taxation & Finance Bankruptcy Section |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Nifty Gateway |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| NMLS |
| NO Investments, LLC |
| Nomics Inc. |
| Noom Limited |
| REDACTED |
| NordVPN SA |
| North Carolina, State of, Attorney General |
| North Carolina, State of, Department of Labor |
| North Carolina, State of, Department of Revenue |
| North Dakota, State of, Attorney General |
| North Dakota, State of, Department of Labor |
| North Dakota, State of, Tax Department |
| North River Global LLC |
| REDACTED |
| OÃœ Notorious |
| Oak Hill Capital Management LLC |
| Oaktree |
| REDACTED |
| Ocean Fidelity GmbH |
| Ohio, State of, Attorney General |
| Ohio, State of, Department of Commerce |
| Ohio, State of, Department of Taxation |

| |
|---|
| Oklahoma, State of, Attorney General |
| Oklahoma, State of, Department of Labor |
| Oklahoma, State of, Tax Commission |
| Okta Inc. |
| OKX |
| REDACTED |
| REDACTED |
| Olola Investments Pty Ltd |
| OpenSea |
| REDACTED |
| Oregon, State of, Attorney General |
| Oregon, State of, Bureau of Labor & Industries |
| Oregon, State of, Department of Revenue |
| REDACTED |
| Osler Hoskin & Harcourt LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| Pamela Corrie |
| REDACTED |
| Papaya Global Inc. |
| Paperless Inc. |
| REDACTED |
| Paradigm |
| Paradigm Fund L.P. |
| Parafi Capital |
| ParaFi Private Opportunities LLC – Series F |
| Park West Investors Master Fund, Limited |
| Park West Partners International, Limited |
| REDACTED |
| REDACTED |
| REDACTED |
| Patrick, County of (VA) |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| Paxos |
| Payward, Inc. |
| Pennsylvania, Commonwealth of, Attorney General |
| Pennsylvania, Commonwealth of, Department of Labor & Industry |
| Pennsylvania, Commonwealth of, Department of Revenue, Office of Chief Counsel |
| Pensionmark Financial Group |
| Perkins Coie LLP |
| Persona Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Phinx Consultants |
| Phinx/Fleet |
| PJC |
| PJC Blockfi SPV, LLC |
| PKF O'Connor Davies LLP |
| Point Judith Venture Fund IV, L.P. |
| POINT95 Global (Hong Kong) Limited |
| REDACTED |
| Polka Dot Ventures Pty Limited |
| Pomp Bracket Digital Assets I, LLC |
| Pomp Bracket Digital Assets II, LLC |
| Pomp Bracket Digital Assets III, LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| PrimeBlock Operations LLC |
| REDACTED |
| Puerto Rico, Commonwealth of, Attn: Bankruptcy Department |

| |
|---|
| Puerto Rico, Commonwealth of, Department of The Treasury |
| REDACTED |
| Pulumi Corp. |
| Purple Arch Ventures |
| QED Capital LLC |
| Quadriga |
| Quantuma Advisory Limited |
| Quench USA Inc. |
| REDACTED |
| REDACTED |
| Quinn Emanuel Urquhart & Sullivan LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Rath Young & Pignatelli PC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| RCapital BlockFi I, (a Series of Republic Capital Master Fund, LP) |
| REDACTED |
| Recruit Strategic Partners |
| Redwood Capital Management LLC |
| Reed Smith LLP |
| Regus plc |
| REDACTED |
| Relm Insurance Ltd. |
| REDACTED |
| REDACTED |
| REDACTED |
| Rhode Island, State of, Attorney General |
| Rhode Island, State of, Department of Labor & Training |
| Rhode Island, State of, Department of Revenue |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| REDACTED |
| Richards & Co. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Robinhood |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Rose Law Firm |
| REDACTED |
| REDACTED |
| REDACTED |
| Round Robin App |
| RSP Fund VI. LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Sage Intacct Inc. |
| REDACTED |
| REDACTED |
| Sand Dune Investments LLC |
| REDACTED |

| |
|---|
| REDACTED |
| REDACTED |
| SCB 10X Co., Ltd. |
| Schjodt LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| Scott Vogel |
| Scottsdale Insurance Company |
| Scratch Services LLC |
| REDACTED |
| Securities and Exchange Commission (SEC) |
| REDACTED |
| REDACTED |
| Severson & Werson PC |
| SGP Governance |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Signature Bank |
| Silicon Valley Bank |
| Silver Point Capital LP |
| Silvergate Bank |
| Simmons & Simmons LLP |
| REDACTED |
| Sixth Street |
| SkyBridge Capital |
| Slack Technologies LLC |
| SLV BlockFi Holding, LLC |
| Social Finance, Inc. |
| REDACTED |
| SoFi |
| REDACTED |
| REDACTED |

| |
|---|
| South Carolina, State of, Attorney General |
| South Carolina, State of, Department of Labor, Licensing & Regulations |
| South Carolina, State of, Department of Revenue |
| South Dakota, State of, Attorney General |
| South Dakota, State of, Department of Labor & Regulation |
| South Dakota, State of, Department of Revenue |
| REDACTED |
| REDACTED |
| Splunk Inc. |
| REDACTED |
| REDACTED |
| Starn O'Toole Marcus & Fisher |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Stikeman Elliott LLP |
| REDACTED |
| REDACTED |
| Stoll Keenon Ogden PLLC |
| REDACTED |
| Straffi & Straffi Attorneys at Law |
| Stripe Inc. |
| REDACTED |
| REDACTED |
| Sullivan & Cromwell LLP |
| REDACTED |
| REDACTED |
| Susquehanna Governance Partners LLC |
| Susquehanna Government Products, LLLP |
| REDACTED |
| T.B. Asset Management GmbH |
| REDACTED |
| Tagomi Systems Inc. |
| Taller Technologies |

| |
|---|
| REDACTED |
| TaxBit Inc. |
| Tayenthal Ventures UG |
| REDACTED |
| REDACTED |
| Temasek |
| Tennessee, State of, Attorney General |
| Tennessee, State of, Department of Labor & Workforce Development |
| Tennessee, State of, Department of Revenue |
| Terra |
| Texas, State of, Attorney General |
| Texas, State of, Department of Revenue |
| Texas, State of, Workforce Commission |
| REDACTED |
| REDACTED |
| REDACTED |
| The Midnight, a Third Prime Series LLC (Series: BlockFi) |
| REDACTED |
| The Princeton Excess and Surplus Lines Insurance Co. (Munich Re) |
| The Trustees of Columbia University in the City of New York |
| The Vanderbilt University |
| REDACTED |
| REDACTED |
| Third Prime |
| Thoma Bravo LP |
| REDACTED |
| Thomas H. Lee Partners LP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Thomson Reuters - West |
| Tiger Consulting Ltd. |
| Tiger Global Management LLC |
| Tiger Global PIP 14-7 LLC |
| REDACTED |

| |
|---|
| REDACTED |
| Tiny Orange, LLC |
| REDACTED |
| REDACTED |
| Tokio Marine HCC |
| REDACTED |
| TONA Investments, L.P. |
| REDACTED |
| Tony Lauro |
| REDACTED |
| REDACTED |
| TriNet Group Inc. |
| Troutman Pepper Hamilton Sanders LLP |
| REDACTED |
| REDACTED |
| TVC |
| TVC X, (a series of The Venture Collective Holdings LLC) |
| TVC XVII, (a series of The Venture Collective Holdings LLC) |
| REDACTED |
| REDACTED |
| REDACTED |
| U.S. Farms and Mining Opportunity Fund LLC |
| United States Postal Service |
| United States, Government of the, Attorney General |
| United States, Government of the, Commodities Futures Trading Commission |
| United States, Government of the, Department of Justice |
| United States, Government of the, Department of Labor, Division of Labor Standards Enforcement |
| United States, Government of the, Department of the Treasury, Internal Revenue Service |
| United States, Government of the, Department of Treasury |

| |
|---|
| United States, Government of the, Department of Treasury, Office of Comptroller of Currency |
| United States, Government of the, Employment Services |
| United States, Government of the, Environmental Protection Agency Region 1 (CT, MA, ME, NH, RI, VT) |
| United States, Government of the, Environmental Protection Agency Region 10 (AK, ID, OR, WA) |
| United States, Government of the, Environmental Protection Agency Region 2 (NJ, NY, PR, VI) |
| United States, Government of the, Environmental Protection Agency Region 3 (DC, DE, MD, PA, VA, WV) |
| United States, Government of the, Environmental Protection Agency Region 4 (AL, FL, GA, KY, MS, NC, SC, TN) |
| United States, Government of the, Environmental Protection Agency Region 5 (IL, IN, MI, MN, OH, WI) |
| United States, Government of the, Environmental Protection Agency Region 6 (AR, LA, NM, OK, TX) |
| United States, Government of the, Environmental Protection Agency Region 7 (IA, KS, MO, NE) |
| United States, Government of the, Environmental Protection Agency Region 8 (CO, MT, ND, SD, UT, WY) |
| United States, Government of the, Environmental Protection Agency Region 9 (AZ, CA, HI, NV) |
| United States, Government of the, Pension Benefit Guaranty Corp. |
| United States, Government of the, Securities and Exchange Commission |
| Unqork Inc. |
| UPS Store Inc., The |
| REDACTED |
| Utah, State of, Attorney General |

| |
|---|
| Utah, State of, Labor Commission |
| Utah, State of, Department of Revenue |
| Valar Co-Invest 10 LP |
| Valar Co-Invest 11 LP |
| Valar Co-Invest 12 LP |
| Valar Fund V LP |
| Valar Fund VII LP |
| Valar Principals Fund V LP |
| Valar Velocity Fund 2 LP |
| Valar Ventures LP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| VCV Digital Infrastructure Alpha LLC |
| REDACTED |
| Venable LLP |
| Vermont, State of, Attorney General |
| Vermont, State of, Department of Labor |
| Vermont, State of, Department of Taxes |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Virginia, Commonwealth of, Attorney General |
| Virginia, Commonwealth of, Department of Labor & Industry |
| Virginia, Commonwealth of, Department of Revenue |
| Virtu Financial Singapore PTE, Ltd. |
| Visa Inc. |
| Visa USA Inc. |
| REDACTED |
| REDACTED |
| Vistra Group |
| Voyager Digital |
| Vrai Nom Investment Limited |
| REDACTED |
| REDACTED |
| Walkers (Bermuda) Ltd. |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| Ward & Smith PA |
| Washington, D.C., Attorney General |
| Washington, D.C., Department of Employment Services |
| Washington, D.C., Office of Tax & Revenue |
| Washington, State of, Attorney General |
| Washington, State of, Department of Labor & Industries |
| Washington, State of, Department of Revenue, Taxpayer Account Administration |
| REDACTED |
| REDACTED |
| REDACTED |
| Webber McGill LLC |
| REDACTED |
| West Realm Shires Inc. |
| West Realm Shires Inc. (FTX US) |
| West Virginia, State of, Attorney General |
| West Virginia, State of, Division of Labor |
| West Virginia, State of, Department of Revenue |
| Westchester Surplus Lines Insurance Company |
| WeWork Nashville |
| White & Case LLP |
| REDACTED |
| REDACTED |
| Willis Towers Watson PLC |
| Winklevoss Capital |
| Winklevoss Capital Fund, LLC |
| Winklevoss Capital Management LLC |
| Wintermute |
| Wisconsin, State of, Attorney General |
| Wisconsin, State of, Department of Workforce Development |
| Wisconsin, State of, Department of Revenue, Customer Service Bureau |

| |
|---|
| Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP |
| REDACTED |
| REDACTED |
| Wyoming, State of, Attorney General |
| Wyoming, State of, Department of Workforce Service |
| Wyoming, State of, Department of Revenue |
| Y Partners |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Zac Prince |
| Zapier Inc. |
| Zendesk Inc. |
| REDACTED |
| REDACTED |
| ZVI Brener Enterprises |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Ansell Grimm & Aaron, P.C. |
| REDACTED |
| REDACTED |
| Aspen Creek Digital Corporation |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| Cumberland DRW LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Ellison Bank |
| REDACTED |
| First Citizens Bank |
| REDACTED |
| Hunting Hill Global Capital, LLC |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Metavesco, Inc. |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| |
|---|
| REDACTED |
| Outset Global Trading Limited |
| ParaFi Capital LP |
| REDACTED |
| Payward Inc. |
| Peapack-Gladstone Bank |
| Pepper Hu LTD |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| Stevens & Lee, P.C. |
| REDACTED |
| Talos Trading, Inc. |
| Thunder Bridge Capital LLC |
| REDACTED |
| REDACTED |
| Towards Equilibrium, LLC |
| REDACTED |
| Cumberland DRW LLC |
| REDACTED |
| REDACTED |
| Webster Bank |
| REDACTED |
| Wisdom Tree |
| Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| REDACTED |
|----------|
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| REDACTED |
|----------|
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| REDACTED |
| --- |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

**Schedule 2**

**Potential Parties-in-Interest with Connections**

Potential parties-in-interest or their affiliates for whom Deloitte Tax LLP or its affiliates, or certain non-U.S. member firms of Deloitte Touche Tohmatsu Limited, has provided or is currently providing services in matters unrelated to these chapter 11 cases, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| Accertify Inc. |
| Accuity Inc. |
| ACE American Insurance Co. (Chubb) |
| Airbase Inc. |
| Airgas Inc. |
| Akuna Capital |
| Akuna Digital Assets LLC |
| Akuna Ventures LLC |
| Alabama, State of, Attorney General |
| Alabama, State of, Department of Labor |
| Alabama, State of, Department of Revenue |
| Alaska, State of, Attorney General |
| Alaska, State of, Department of Labor & Workforce Development |
| Alaska, State of, Department of Revenue |
| REDACTED |
| Allen & Overy LLP |
| Alteryx Inc. |
| Amazon Web Services Inc. |
| Amazon.com Inc. |
| Anchorage Digital Bank NA |
| Andco Consulting |
| REDACTED |
| Ankura Trust Co. LLC, as Trustee for the Indenture dated as of February 28,2022 |
| Aon (Bermuda) Ltd. |
| Aon plc |
| AP Capital Investment Limited |
| Apollo Global Management Inc. |
| Ares Management Corp. |
| Arizona, State of, Attorney General |
| Arizona, State of, Department of Revenue |
| Arizona, State of, Industrial Commission |
| Arkansas, State of, Attorney General |
| Arkansas, State of, Department of Finance & Administration |

| |
|---|
| Arkansas, State of, Department of Labor |
| Arrington XRP Capital |
| Arrington XRP Capital Cayman SPV, Ltd. |
| AT&T Inc. |
| Atlantic Specialty Insurance Company |
| Atlas Technology Group LLC |
| Atlassian Corp. |
| Atreides Foundation Master Fund LP |
| Auth0 Inc. |
| Avon Venture Fund I LP |
| Avon Ventures |
| AXA XL Specialty Insurance Company |
| AXIS Insurance Company |
| Bain Capital LP |
| Bain Capital Venture Coinvestment Fund II, LP |
| Bain Capital Venture Fund 2021, LP |
| Bain Capital Ventures |
| BambooHR LLC |
| Baupost Group LLC, The |
| BCIP Venture Associates II, LP |
| BCIP Venture Associates II-B, LP |
| BCV 2019-MD Coinvestment II, LP |
| BCV 21 Innovators Fund, LP |
| Beazley Group |
| Berkeley Research Group |
| Berkley Insurance Co. |
| Berkshire Hathaway Specialty Insurance |
| Bermuda Monetary Authority |
| Binance |
| Binance US |
| Binance.com |
| BitGo |
| BitGo Holdings Inc. |
| BitMex |
| BlackRock Inc. |
| Blackstone Inc. |
| REDACTED |
| Blockdaemon |
| BlockFi Asia PTE. Ltd (Singapore) |
| BlockFi Cayman LLC |
| BlockFi Holding UK Limited (England and Wales) |

| |
|---|
| BlockFi Inc. |
| BlockFi International Ltd |
| BlockFi Investment Products |
| BlockFi Lending II LLC |
| BlockFi Lending LLC |
| BlockFi Management LLC |
| BlockFi Services Inc. |
| BlockFi Trading LLC |
| BlockFi Ventures LLC |
| BlockFi Wallet LLC |
| BlockFi, Inc. |
| Bloomberg Finance LP |
| Blue Owl Capital Inc. |
| Bradley Arant Boult Cummings LLP |
| Brevan Howard |
| Brex Inc. |
| Brigade Capital |
| Brown Rudnick LLP |
| BV Power Alpha LLC |
| Cadenza Ventures Opportunities Fund, LP (Series B) |
| California, State of, Attorney General |
| California, State of, Division of Labor Standards Enforcement & the Office of the Labor Commissioner |
| California, State of, State Board of Equalization |
| CANON INC. |
| Capital Union Bank Ltd. |
| Carta Inc. |
| Castlelake |
| Castle Island Ventures I, L.P. |
| Castle Island Ventures I-A, L.P. |
| Celsius Network Ltd |
| Centerbridge |
| Centre Consortium |
| Cerberus Capital Management |
| CFGI, LLC |
| Chainalysis Inc. |
| Chicago Atlantic |
| Clark Hill plc |
| Cloudflare Inc. |
| CMS Holdings, LLC |

| |
|---|
| CMT Digital Investments I LLC – Series 3 |
| CMT Digital Ventures Fund I LLC |
| Cogent Communications |
| Cogent Communications Holdings Inc. |
| CohnReznick LLP |
| Coinbase |
| Coinbase Global, Inc. |
| Coinbase Ventures |
| Cole Schotz P.C. |
| Colorado, State of, Attorney General |
| Colorado, State of, Department of Labor & Employment |
| Colorado, State of, Department of Revenue |
| Connecticut, State of, Attorney General |
| Connecticut, State of, Department of Labor |
| Connecticut, State of, Department of Revenue Services |
| REDACTED |
| Coralisle Pension Services Ltd. |
| Covington & Burling LLP |
| CrowdStrike Inc. |
| Crown Castle Inc. |
| Crypto.com |
| CSC |
| Culture Amp Inc. |
| Cushman Management Co. |
| D.E. Shaw |
| Datadog Inc. |
| REDACTED |
| Davidson Kempner |
| Davis Polk & Wardwell LLP |
| Deel |
| Delaware, State of, Attorney General |
| Delaware, State of, Department of Labor |
| Delaware, State of, Division of Revenue |
| Delaware, State of, Franchise Tax |
| Deserve Inc. |
| DHL |
| DigiCert Inc. |
| Docker Inc. |
| Donnelley Financial Solutions Inc. |
| ED&F Man Capital Markets, Inc. |
| Elliott Investment Management |
| Embroker Inc. |

| |
|---|
| Endurance American Insurance Company (Sompo) |
| EQT |
| REDACTED |
| Evolve Bank & Trust |
| EY Bermuda Ltd. |
| EY Cayman Ltd. |
| Fasanara Investments Scrap |
| FedEx Corp. |
| Fidelity Digital Assets Services LLC |
| Fidelity Prime |
| Financial Conduct Authority |
| Fireblocks International |
| Fireblocks Lending |
| Fireblocks Wallet |
| Fireblocks, Inc. |
| Florida, State of, Attorney General |
| Florida, State of, Department of Revenue |
| Florida, State of, Division of Workforce Services |
| Flow Traders B.V. |
| FOMO PAY |
| Fortress Investment Group |
| Fox Rothschild LLP |
| FTX |
| FTX International |
| FTX Trading Ltd. |
| REDACTED |
| Gemini Investments, L.P. |
| Gemini Lending LLC |
| Gemini Trust Company, LLC |
| REDACTED |
| Georgia, State of, Attorney General |
| Georgia, State of, Department of Labor |
| Georgia, State of, Department of Revenue |
| Gibbons PC |
| GitHub |
| Global X Management Co. LLC |
| GoldenTree Asset Management LP |
| Google Cloud |
| Google G Suite |
| Google Voice Inc. |
| Google Workspace |

| |
|---|
| GoTo Technologies USA Inc. |
| Grant Thornton LLP |
| Great-West Trust Co. LLC |
| Harvard Management Private Equity Corporation |
| Hashkey |
| HashKey Fintech Investment Fund LP |
| Hawaii, State of, Attorney General |
| Hawaii, State of, Department of Labor & Industrial Relations |
| Hawaii, State of, Department of Taxation |
| HDR Cadenza Management Limited |
| Hodgson Russ LLP |
| Hogan Lovells International LLP |
| Hogan Lovells US LLP |
| Holland & Knight LLP |
| HRT |
| HRT Research LLC |
| HRTJ Limited |
| Hudson Bay Capital Management LP |
| Hyperion Capital, LLC |
| Hyperion Capital, Ltd. |
| Idaho, State of, Attorney General |
| Idaho, State of, Department of Labor |
| Idaho, State of, State Tax Commission |
| REDACTED |
| Illinois National Insurance Co. (AIG) |
| Illinois, State of, Attorney General |
| Illinois, State of, Department of Labor |
| Illinois, State of, Department of Revenue |
| Impact Tech Inc. |
| Indiana, State of, Attorney General |
| Indiana, State of, Department of Labor |
| Indiana, State of, Department of Revenue |
| Intralinks Inc. |
| Iowa, State of, Attorney General |
| Iowa, State of, Department of Revenue & Finance |
| Iowa, State of, Labor Services Division |
| Irish Life |
| Iron Mountain Inc. |
| Ironclad |
| JAMF Software |
| KKR & Co. Inc. |
| Kansas, State of, Attorney General |

| |
|---|
| Kansas, State of, Department of Labor |
| Kansas, State of, Department of Revenue |
| Katten Muchin Rosenman LLP |
| Kentucky, Commonwealth of, Attorney General |
| Kentucky, Commonwealth of, Labor Cabinet |
| Kentucky, Commonwealth of, Revenue Cabinet |
| King & Spalding LLP |
| Kirkland & Ellis International LLP |
| Kirkland & Ellis LLP |
| KPMG LLP |
| Kraken |
| Kroll Inc. |
| Kroll Legal |
| Kroll Restructuring Administration LLC |
| Linklaters LLP |
| Linklaters Singapore Pte. Ltd. |
| Littler Mendelson PC |
| LMAX |
| Locke Lord LLP |
| Loeb & Loeb LLP |
| Louisiana, State of, Attorney General |
| Louisiana, State of, Department of Revenue |
| Louisiana, State of, Workforce Commission |
| Maine, State of, Attorney General |
| Maine, State of, Department of Labor |
| Maine, State of, Revenue Services, Compliance Division |
| Manatt Phelps & Phillips LLP |
| REDACTED |
| Maryland, State of, Attorney General |
| REDACTED |
| Maryland, State of, Department of Labor, Licensing & Regulation |
| Massachusetts, Commonwealth of, Attorney General |
| Massachusetts, Commonwealth of, Department of Revenue |
| Massachusetts, Commonwealth of, Executive Office of Labor & Workforce Development |

| |
|---|
| Massachusetts, Commonwealth of, Fair Labor Division, Office of The Attorney General |
| McCarter & English, LLP |
| REDACTED |
| REDACTED |
| Michigan, State of, Attorney General |
| Michigan, State of, Department of Licensing & Regulatory Affairs |
| Michigan, State of, Department of Treasury |
| Microsoft Corp. |
| Minnesota, State of, Attorney General |
| Minnesota, State of, Department of Labor & Industry |
| Minnesota, State of, Department of Revenue |
| Mintz Levin Cohn Ferris Glovsky & Popeo PC |
| Mississippi, State of, Attorney General |
| Mississippi, State of, Department of Employment Security |
| Mississippi, State of, Tax Commission |
| Missouri, State of, Attorney General |
| Missouri, State of, Department of Revenue |
| Missouri, State of, Labor & Industrial Relations Commission |
| Modern Treasury Corp. |
| Moelis |
| Monday.com Ltd. |
| Montana, State of, Attorney General |
| Montana, State of, Department of Labor & Industry |
| Montana, State of, Department of Revenue |
| Morgan Lewis & Bockius LLP |
| Morgan Stanley |
| Nebraska, State of, Attorney General |
| Nebraska, State of, Department of Labor |
| Nebraska, State of, Department of Revenue |
| Nevada, State of, Attorney General |
| Nevada, State of, Department of Business & Industry |
| Nevada, State of, Department of Taxation |
| New Hampshire, State of, Attorney General |
| New Hampshire, State of, Department of Labor |

| |
|---|
| New Hampshire, State of, Department of Revenue - Administration Unit |
| New Jersey, State of, Attorney General |
| New Jersey, State of, Department of Labor & Workforce Development |
| New Jersey, State of, Department of Treasury |
| New Mexico, State of, Attorney General |
| New Mexico, State of, Department of Taxation & Revenue |
| New Mexico, State of, Department of Work Force Solutions |
| New York, State of, Attorney General |
| New York, State of, Department of Financial Services |
| New York, State of, Department of Labor |
| New York, State of, Department of Taxation & Finance Bankruptcy Section |
| REDACTED |
| Nifty Gateway |
| Noom Limited |
| North Carolina, State of, Attorney General |
| North Carolina, State of, Department of Labor |
| North Carolina, State of, Department of Revenue |
| North Dakota, State of, Attorney General |
| North Dakota, State of, Department of Labor |
| North Dakota, State of, Tax Department |
| Oak Hill Capital Management LLC |
| Oaktree |
| Ohio, State of, Attorney General |
| Ohio, State of, Department of Commerce |
| Ohio, State of, Department of Taxation |
| Oklahoma, State of, Attorney General |
| Oklahoma, State of, Department of Labor |
| Oklahoma, State of, Tax Commission |
| Okta Inc. |
| OKX |
| OpenSea |
| Oregon, State of, Attorney General |
| Oregon, State of, Bureau of Labor & Industries |
| Oregon, State of, Department of Revenue |

| |
|---|
| Osler Hoskin & Harcourt LLP |
| Pacific Asset Group Inc |
| Papaya Global Inc. |
| Paradigm |
| Paradigm Fund L.P. |
| Parafi Capital |
| ParaFi Private Opportunities LLC – Series F |
| Paxos |
| Payward, Inc. |
| Pennsylvania, Commonwealth of, Attorney General |
| Pennsylvania, Commonwealth of, Department of Labor & Industry |
| Pennsylvania, Commonwealth of, Department of Revenue, Office of Chief Counsel |
| Pensionmark Financial Group |
| Perkins Coie LLP |
| Persona Inc. |
| REDACTED |
| PJC |
| PJC Blockfi SPV, LLC |
| REDACTED |
| Puerto Rico, Commonwealth of, Attn: Bankruptcy Department |
| Puerto Rico, Commonwealth of, Department of The Treasury |
| Pulumi Corp. |
| Quadriga |
| Quench USA Inc. |
| Quinn Emanuel Urquhart & Sullivan LLP |
| Recruit Strategic Partners |
| Redwood capital Management LLC |
| Reed Smith LLP |
| Regus plc |
| Relm Insurance Ltd. |
| Rhode Island, State of, Attorney General |
| Rhode Island, State of, Department of Labor & Training |
| Rhode Island, State of, Department of Revenue |
| REDACTED |
| Robinhood |

| |
|---|
| SCB 10X Co., Ltd. |
| Scottsdale Insurance Company |
| Securities and Exchange Commission (SEC) |
| Signature Bank |
| Silicon Valley Bank |
| Silver Point Capital LP |
| Silvergate Bank |
| Simmons & Simmons LLP |
| Sixth Street |
| SkyBridge Capital |
| Slack Technologies LLC |
| SLV BlockFi Holding, LLC |
| Social Finance, Inc. |
| SoFi |
| South Carolina, State of, Attorney General |
| South Carolina, State of, Department of Labor, Licensing & Regulations |
| South Carolina, State of, Department of Revenue |
| South Dakota, State of, Attorney General |
| South Dakota, State of, Department of Labor & Regulation |
| South Dakota, State of, Department of Revenue |
| Splunk Inc. |
| Stikeman Elliott LLP |
| Stripe Inc. |
| Sullivan & Cromwell LLP |
| TaxBit Inc. |
| Temasek |
| Tennessee, State of, Attorney General |
| Tennessee, State of, Department of Labor & Workforce Development |
| Tennessee, State of, Department of Revenue |
| Terra |
| Texas, State of, Attorney General |
| Texas, State of, Department of Revenue |
| Texas, State of, Workforce Commission |
| The Princeton Excess and Surplus Lines Insurance Co. (Munich Re) |
| The Trustees of Columbia University in the City of New York |
| The Vanderbilt University |

| |
|---|
| Thoma Bravo LP |
| Thomas H. Lee Partners LP |
| REDACTED |
| Thomson Reuters - West |
| Tiger Global Management LLC |
| Tiger Global PIP 14-7 LLC |
| Tokio Marine HCC |
| TriNet Group Inc. |
| Troutman Pepper Hamilton Sanders LLP |
| United States Postal Service |
| United States, Government of the, Attorney General |
| United States, Government of the, Commodities Futures Trading Commission |
| United States, Government of the, Department of Justice |
| United States, Government of the, Department of Labor, Division of Labor Standards Enforcement |
| United States, Government of the, Department of the Treasury, Internal Revenue Service |
| United States, Government of the, Department of Treasury |
| United States, Government of the, Department of Treasury, Office of Comptroller of Currency |
| United States, Government of the, Employment Services |
| United States, Government of the, Environmental Protection Agency Region 1 (CT, MA, ME, NH, RI, VT) |
| United States, Government of the, Environmental Protection Agency Region 10 (AK, ID, OR, WA) |
| United States, Government of the, Environmental Protection Agency Region 2 (NJ, NY, PR, VI) |
| United States, Government of the, Environmental Protection Agency Region 3 (DC, DE, MD, PA, VA, WV) |

| |
|---|
| United States, Government of the, Environmental Protection Agency Region 4 (AL, FL, GA, KY, MS, NC, SC, TN) |
| United States, Government of the, Environmental Protection Agency Region 5 (IL, IN, MI, MN, OH, WI) |
| United States, Government of the, Environmental Protection Agency Region 6 (AR, LA, NM, OK, TX) |
| United States, Government of the, Environmental Protection Agency Region 7 (IA, KS, MO, NE) |
| United States, Government of the, Environmental Protection Agency Region 8 (CO, MT, ND, SD, UT, WY) |
| United States, Government of the, Environmental Protection Agency Region 9 (AZ, CA, HI, NV) |
| United States, Government of the, Pension Benefit Guaranty Corp. |
| United States, Government of the, Securities and Exchange Commission |
| Unqork Inc. |
| UPS Store Inc., The |
| Utah, State of, Attorney General |
| Utah, State of, Labor Commission |
| Utah, State of, Department of Revenue |
| Venable LLP |
| Vermont, State of, Attorney General |
| Vermont, State of, Department of Labor |
| Vermont, State of, Department of Taxes |
| Virginia, Commonwealth of, Attorney General |
| Virginia, Commonwealth of, Department of Labor & Industry |
| Virginia, Commonwealth of, Department of Revenue |
| Virtu Financial Singapore PTE, Ltd. |
| Visa Inc. |
| Visa USA Inc. |
| Vistra Group |
| Voyager Digital |
| Washington, D.C., Attorney General |

| |
|---|
| Washington, D.C., Department of Employment Services |
| Washington, D.C., Office of Tax & Revenue |
| Washington, State of, Attorney General |
| Washington, State of, Department of Labor & Industries |
| Washington, State of, Department of Revenue, Taxpayer Account Administration |
| West Virginia, State of, Attorney General |
| West Virginia, State of, Division of Labor |
| West Virginia, State of, Department of Revenue |
| Westchester Surplus Lines Insurance Company |
| WeWork Nashville |
| White & Case LLP |
| Willis Towers Watson PLC |
| Winklevoss Capital |
| Winklevoss Capital Fund, LLC |
| Winklevoss Capital Management LLC |
| Wisconsin, State of, Attorney General |
| Wisconsin, State of, Department of Workforce Development |
| Wisconsin, State of, Department of Revenue, Customer Service Bureau |
| Wyoming, State of, Attorney General |
| Wyoming, State of, Department of Workforce Service |
| Wyoming, State of, Department of Revenue |
| Zapier Inc. |
| Zendesk Inc. |
| Cumberland DRW LLC |
| First Citizens Bank |
| Peapack-Gladstone Bank |
| Talos Trading, Inc. |
| Webster Bank |
| Wisdom Tree |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| REDACTED |
| --- |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |

| REDACTED |
| --- |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |
| REDACTED |