**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO THE "EMERGENCY MOTION OF THE OFFICIAL CREDITORS COMMITTEE REQUESTING AN ORDER REMEDYING THE DEBTORS' IMPROPER PLAN SOLICITATION IN VIOLATION OF BANKRUPTCY CODE SECTION 1125(B)"**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (this "Objection") to the "*Emergency Motion of the Official Creditors Committee Requesting an Order Remedying the Debtors' Improper Plan Solicitation in Violation of Bankruptcy Code Section 1125(b)*" [Docket No. 895] (the "Motion")[2] filed by the official

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

committee of unsecured creditors appointed in the Debtors' Chapter 11 Cases (the "Committee"). In support of this Objection, the Debtors state the following:

**Objection**

1. The Debtors have a Disclosure Statement hearing in 34 days, at which point they will seek approval of their Solicitation Materials. To the extent the Court approves the Disclosure Statement, the Debtors will distribute a letter urging voting creditors to accept their proposed Plan. A form of this letter was included as an exhibit to the filed version of the Disclosure Statement Motion. The Committee will have an opportunity to ask the Court if it is proper to submit its own letter laying out its views on the Plan. Edits to the Disclosure Statement will be made between now and the hearing, and the Debtors will consider comments any constituent offers.

2. Instead of following this standard process, the Committee seized on straightforward, factual statements the Debtors disseminated to clients to launch an all-out assault on the Debtors' management team and advisors. The communications issued here were a continuation of the Debtors' past process, as the Debtors consistently released information to their clients to ensure that they received concise, accurate, and understandable information after a material document was filed to bring clarity to a process that can be complex and confusing. The Committee leads the public to believe it did not see this coming. But this was always coming ahead of the exclusivity deadline of May 15, 2023.

3. Separate from its Motion, the Committee filed a "Statement" in which it tries to explain its refusal to support the Debtors' proposed Plan. The existence of this "Statement" has itself likely destroyed value for the Committee's constituency, and the arguments that it contains are both completely divorced from the facts and frankly stunning things for an estate fiduciary to put in a pleading. None of the allegations contained in the Statement will maximize value for clients, especially as the Debtors engage in litigation to recover up to $1 billion against entities

2

that have themselves asserted $5 billion of claims against the Debtors. The filing of this "Statement" was clearly driven by emotion rather than commercial considerations. And though the narrative in the "Statement" is both factually and legally incorrect, this is not the time to go tit-for-tat; the reality is that the arguments in the "Statement" are either seeking to re-litigate the exclusivity order or are extremely premature Plan objections that the Debtors will be prepared to address in connection with approval of the Disclosure Statement and confirmation of the Plan.

4. Focusing on the narrow relief at issue in the Committee's Motion, the communications that the Debtors distributed in conjunction with the filing of the Disclosure Statement were not Solicitation Materials, nor were they attempts to solicit acceptances on a plan.[3] In fact, most of the communications contained explicit disclaimers, in bold and capital letters, explaining that voting has not yet commenced, and that the Disclosure Statement was subject to court approval.

5. The Debtors were not soliciting votes on their proposed plan,[4] nor could they solicit votes given that no ballots have been distributed to clients.[5] The Debtors' intent was to merely educate clients on the Disclosure Statement and Plan process in plain English, in a clear, concise

---

[3] In the Third Circuit, solicitation is construed narrowly, and section 1125(b) is understood as a floor on the information transmitted to creditors, not a ceiling. *See Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 294 (Bankr. D. Del. 2013).

[4] Solicitations are limited to specific requests for an official vote on a particular plan. *Century Glove*, 860 F.2d at 97.

[5] Courts have found that a solicitation does not occur until a plan, disclosure statement, and ballot are delivered to creditors. *See In re Kellogg Square P'Ship*, 160 B.R. 336, 340 (Bankr. D. Minn. 1993); *Indianapolis Downs*, 486 B.R. at 294 (citing *Kellogg*, 160 B.R. at 340).

3

way, a goal that this Court has repeatedly[6] emphasized[7] is important to mitigate confusion amongst the Debtors' widely disbursed client base. A disclosure statement is a voluminous document with extensive, detailed information on scores of subjects. Indeed, much of the Committee's Motion is dedicated to complaining about statements *in the proposed Disclosure Statement* (Motion at ¶ 5), which of course cannot form the basis of any improper solicitation claim.

6. For people who have not been through a chapter 11 case before, the information in a disclosure statement is overwhelming and difficult to digest. In an effort to remedy this, the Debtors prepared an email to customers (see **Exhibit A**), a single tweet thread on Twitter (see **Exhibit B**, as each tweet is limited to 280 characters), and FAQs posted on the Debtors' blog page. These are the ways that the Debtors typically communicate with their clients, and the information presented attempted to explain the process. The FAQs included, among others, "What is a Chapter 11 Disclosure Statement?" "What will happen now that Disclosure Statement has been filed?" and "What are the features of this Plan?" None of this should be controversial.[8]

7. The content that the Committee specifically questions is "Why should I vote to accept this plan?" The Debtors made clear in the same FAQs that "[t]he next step in the process

---

[6] THE COURT: And so, my thoughts are, as far as notice, I want to make sure that we go beyond the Times -- I do see CoinDesk, but what outreach is contemplated?

MR PETRIE: Well, we regularly do communicate with our clients via our Twitter platforms, and put banners on the user interface on the app and website as well. We could communicate -- I hear you loud and clear, Your Honor, that you'd like to see some things along those lines, so we will certainly be doing one, if not many of those, to make sure that there's proper outreach to clients. […]

THE COURT: Great. Jan. 30, 2023 Hr'g Tr. 17:9–18:2.

[7] THE COURT: I did want to express my appreciation to the debtor and both the Official and Ad Hoc Committees on putting together a joint correspondence to stakeholders trying their best in these trying times to update the parties on where matters stand to try to lessen the confusion that's out there. And I think it was a great step in that direction. Mar. 13, 2023 Hr'g Tr. 3:11–16.

[8] In any event, the Debtors have implemented additional safeguards for its external communications, including requiring additional approval from the Debtors' counsel and the Joint Provisional Liquidators appointed in the Bermuda proceedings.

is for our disclosure statement to be approved by the Court as containing adequate information… Upon approval of our disclosure statement, we will begin soliciting votes on our plan." The communications were activated at approximately 8 p.m. ET on Friday, May 12, 2023. On Monday morning, ***more than 6 hours <u>before</u> the Committee filed its Motion and Statement***, the Debtors noticed the Q/A at issue and had it removed.[9] This certainly should not give rise to an evidentiary hearing. And the Debtors do not run from this FAQ and take full responsibility for it.

8. But these statements, and all of the Debtors' statements, were descriptive in nature and repeatedly made reference to how creditors should read the entirety of the Disclosure Statement, which itself has a disclaimer about the proper time to vote in bold, capital letters on the first page. The Committee's Motion and other pleadings are simply a transparent attempt to find an early vessel to tout their false narrative. And it was not surprising to see this from the Debtors' perspective, since it comes after attempts by the Committee and its counsel to take over this case were thwarted, including most recently at the hearing where the Court extended the Debtors' exclusivity deadline.

9. The Debtors do not intend to front-run the solicitation process and will not do so. They will seek approval of their Disclosure Statement on June 20, 2023. They intend to solicit votes on their Plan in good faith and in compliance with all applicable law, and only after they obtain the approval of the Court, as was clear in all of the Debtors' communications. Rather than making accusations about the Debtors' motives and conduct, both the Debtors and the Committee should focus on the task at hand: moving forward in these cases and maximizing the value that

---

[9] The Committee also challenges the fact that the Debtors "strongly recommended that you accept the Plan." That complaint is puzzling. That the Debtors strongly recommend acceptance of the Plan should be painfully obvious, as the Debtors filed the Plan and want to see it confirmed.

5

can be returned to clients as expeditiously as possible. The Committee's recent filings do the exact opposite.

10. The actions at issue here simply do not line up with the charged language and tone of the Committee's Motion. And the cases the Committee points to as supporting its requested relief bear this out. The Committee refers to the *Boy Scouts of America* case as supposedly including "similarly wrongful conduct." (Motion at ¶ 26.) But the facts of *Boy Scouts* bear no resemblance to what is happening here. In *Boy Scouts*, as reflected in the pleading the Committee attached to its Motion (*see* Exhibit 4.1 to Decl. of T. Axelrod), the communication at issue was directly and personally attacking other lawyers in the case, while endorsing an individual's prior statements that included disparaging (and threatening) comments about other lawyers in the case and the court. *Id*. at 4–7 (recounting statements, including among others, referring to presiding judge as a "jellyfish" who "decides nothing"; saying that counsel for claimants should be "put . . . down"; and publicly posting pictures of another lawyer in the case and his family). For the Committee to ask for similar relief here, based on basic supportive statements made by the Debtors (*i.e.*, the obvious fact that the Debtors strongly encourage support for the Plan that they filed), is absurd, and demonstrates the extent of the Committee's overreach.

11. The Committee has issues with the Debtors' Plan. The Debtors knew that when the Plan and Disclosure Statement were filed. Though the Committee seeks to characterize the Debtors' efforts as being improper, the Committee's true motive is to quash the Debtors' ability to advocate for their Plan by any means necessary. This is evident in the remedy that the Committee seeks—which includes having every piece of future communication vetted and, likely, gutted, through 48 hours of counsel's review, and to instead have the Debtors advocate on behalf of the Committee. That is not how the process works. The Debtors' communications contained

6

obvious and apparent disclaimers and the substance was all readily available in public documents. There is nearly nothing the Debtors would have been able to file or post that the Committee would not have objected to.

12. The Debtors would like to work with the Committee to resolve its Plan issues and ultimately solicit votes on a consensual Plan. But a consistent cadence of motion practice and contested hearings, where the Committee objects to literally everything the Debtors seek to do and demands "emergency" relief, at massive expense to the constituents they are duty-bound to serve, will not get us there. The explanatory letter and communications issued by the Debtors to their client base, with the intention of describing in plain English what is a complex process and a series of lengthy documents, is not a wrongful act that merits the full attention of the Court and all parties. It distracts both the Debtors and Committee from making any progress by forcing everyone into yet another contested hearing.

13. For these reasons, the Court should deny the Motion.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors submit that the Court should deny the relief requested in the Motion.

Dated: May 17, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**Exhibit A**
**Email Communication**

**From:** BlockFi blockfi@e.blockfi.com
**Subject:** BlockFi - Chapter 11 Disclosure Statement
**Date:** May 14, 2023 at 12:06 AM
**To:**



Dear ▮▮▮▮,

Earlier today, BlockFi filed our Disclosure Statement with the Court. We encourage all creditors to read the Disclosure Statement in full, which can be found [here](#).

This is an important step forward in our Chapter 11 cases toward our goal of maximizing recoveries for our clients and all creditors. The Disclosure Statement outlines our financial operations and information, and also our proposed Chapter 11 Plan. The purpose of the Disclosure Statement is to provide clients with the information you need to make an informed decision about whether to vote for the Plan. You can expect more information about the voting process to follow in the coming weeks.

**We believe that the Plan is the fastest way for clients to receive the highest recovery of digital assets and**

**conclude the Chapter 11 cases as quickly as possible.**

The disclosure statement provides information about a "self-liquidation transaction" through which we will directly distribute assets to creditors. The disclosure statement describes the following key features of the plan, among others:

- **Projected Recoveries:** The disclosure statement provides a table of projected recoveries categorized by type of claim. While recoveries will be based on a number of factors, the largest driver of higher recoveries are BlockFi's claims against Alameda and FTX.
- **Timing of Distributions:** After the initial distribution of assets, BlockFi will continue pursuing claims and causes of action against Alameda and FTX, among other commercial counterparties, to maximize recoveries for clients.
- **Wallet Clients:** The plan provides for the return of those non-estate digital assets held in client wallet accounts in connection with the wallet program in full, subject to applicable set offs.
- **Client Releases:** Clients will receive a release from BlockFi for any clawback claims that could be brought against them, including for transfers made prior to the platform pause on November 10, 2022.

platform pause on November 10, 2022.

Our disclosure statement follows months of work to determine the value maximizing path forward embodied in the plan that we believe will be best for our clients. We prioritized putting forward a plan that emphasized client recoveries, speed of distribution, and asset safety and security. We decided that utilizing our existing platform to distribute funds was aligned with that goal.

As a next step in the process, we will be presenting our disclosure statement to the Court on June 20, 2023, for approval. Upon approval of our disclosure statement, the solicitation process will commence. During this period, the disclosure statement will be sent to certain BlockFi clients and other creditors asking them to vote to accept the plan. Additional information will be shared about the voting process upon approval of our Disclosure Statement by the Court.

You can find additional information about our disclosure statement on the FAQ blog. Information regarding our cases, including Court documents and claim information, can be found by visiting BlockFi's claims agent, Kroll, at https://restructuring.ra.kroll.com/blockfi.

Thank you

BlockFi

   

Rates for BlockFi products are subject to change. Digital currency is not legal tender, is not backed by the government, and crypto interest accounts are not subject to FDIC or SIPC protections.

Privacy Policy | Licenses & Disclosures | Unsubscribe

Help Center | Our Blog

## Exhibit B
**Twitter Thread**

← **Thread**

**BlockFi**
@BlockFi

Earlier today, we filed our disclosure statement with the Court. This is an important step forward in our chapter 11 cases toward our goal of maximizing recoveries for our clients: restructuring.ra.kroll.com/blockfi/Home-D…

8:07 PM · May 12, 2023 · **41K** Views

**17** Retweets   **12** Quotes   **80** Likes   **21** Bookmarks

**@    Who can reply?**
People @BlockFi mentioned can reply

---

**BlockFi** @BlockFi · May 12
The purpose of the disclosure statement is to provide clients with the information that they need to make an informed decision about whether to vote to accept our plan.

1    ⟲ 1    ♡ 8    📊 4,992

**BlockFi** @BlockFi · May 12
We believe that our Plan is the fastest way for clients to receive the highest recovery of digital assets and conclude the chapter 11 cases as quickly as possible.

1    ⟲    ♡ 7    📊 4,806

**BlockFi** @BlockFi · May 12
While we encourage clients to read the full disclosure statement, here are a few important features:

1    ⟲    ♡ 5    📊 7,637

**BlockFi** @BlockFi · May 12

Projected Recoveries: The disclosure statement contains a table of projected recoveries for each class of claims. While recoveries will be based on a number of factors, the largest driver of higher recoveries are our claims against Alameda and FTX.

1      ⟲ 1      ♡ 7      ᴵᴸᴵ 8,049      ⬆

**BlockFi** @BlockFi · May 12

Timing of Distributions: After the initial distribution of assets, BlockFi will continue pursuing claims and causes of action against Alameda and FTX, among other commercial counterparties.

1      ⟲      ♡ 7      ᴵᴸᴵ 4,969      ⬆

**BlockFi** @BlockFi · May 12

Wallet Clients: The plan provides for the return of non-estate digital assets held in client wallet accounts in connection with the Wallet Program in full, subject to applicable set offs.

1      ⟲ 2      ♡ 16      ᴵᴸᴵ 5,745      ⬆

**BlockFi** @BlockFi · May 12

Client Releases: Clients will receive a release from BlockFi for any clawback claims that could be brought against them, including for transfers made prior to the Platform Pause on November 10, 2022.

1      ⟲ 2      ♡ 10      ᴵᴸᴵ 5,508      ⬆

**BlockFi** @BlockFi · May 12

As a next step in our process, we will be presenting our disclosure statement to the Court on June 20, 2023, for approval. We will have additional information to share about the voting process upon approval of our disclosure statement by the Court.

1      ⟲ 1      ♡ 8      ᴵᴸᴵ 5,133      ⬆



**BlockFi** @BlockFi · May 12

You can find additional information on our blog: blockfi.com/disclosure-sta…

1       8       8,666

**BlockFi** @BlockFi · May 12

Information regarding our cases, including Court documents and claim information, can be found by visiting BlockFi's claims agent, Kroll, at restructuring.ra.kroll.com/blockfi.

1      2      12      13.7K

**BlockFi** @BlockFi · May 13



blockfi.com
Chapter 11 Disclosure Statement FAQs
BlockFi is trusted by over 1 million customers to build and manage their crypto portfolio.

3      8      8,009