| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| BROWN RUDNICK LLP <br> Robert J. Stark, Esq. <br> Kenneth J. Aulet, Esq. <br> Bennett S. Silverberg, Esq. <br> Seven Times Square <br> New York, NY  10036 <br> Telephone: (212) 209-4800 <br> Fax: (212) 209-4801 <br> Email: rstark@brownrudnick.com <br>       kaulet@brownrudnick.com <br>       bsilverberg@brownrudnick.com <br> *Counsel for the Official Committee of Unsecured Creditors* <br>   -and- <br> GENOVA BURNS LLC. <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> Gregory S. Kinoian, Esq. <br> 110 Allen Rd., Suite 304 <br> Basking Ridge, NJ 07920 <br> Telephone: (973) 230-2095 <br> Fax: (973) 533-1112 <br> Email: DStolz@genovaburns.com <br>       DClarke@genovaburns.com <br>       GKinoian@genovaburns.com <br> *Local Counsel for the Official Committee of Unsecured Creditors* | BROWN RUDNICK LLP <br> Stephen D. Palley, Esq. <br> 601 Thirteenth Street, NW <br> Washington, DC  20005 <br> Telephone: (202) 536-1700 <br> Fax: (202) 536-1701 <br> Email: spalley@brownrudnick.com <br><br> BROWN RUDNICK LLP <br> One Financial Center <br> Boston, MA  02111 <br> Tristan Axelrod, Esq. <br> Sharon I. Dwoskin, Esq. <br> Telephone: (617) 856-8200 <br> Fax:  (617) 856-8201 <br> Email: taxelrod@brownrudnick.com <br>       sdwoskin@brownrudnick.com |
| In re: <br><br> BLOCKFI INC., *et al.*, <br><br>            Debtors.[1] | Chapter 11 <br><br> Case No. 22-19361 (MBK) <br><br> Jointly Administered |

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ  07302.

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br><br>Plaintiff,<br><br>v.<br><br>BLOCKFI, INC., *et al.*, and<br>UNITED STATES OF AMERICA,<br><br>Defendants. | Adv. Pro. No. 23-_____ |

## VERIFIED ADVERSARY COMPLAINT

Plaintiff, the Official Committee of Unsecured Creditors (the "**Committee**" or "**Plaintiff**"), duly appointed in the Chapter 11 cases of BlockFi, Inc. and its affiliates (collectively, "**BlockFi**," or the "**Debtors**"), respectfully submits this Complaint in its own capacity and on behalf of the Debtors' estates against the above-captioned Defendants.

## NATURE OF THE CASE

1. On October 27, 2022, two individuals (together, the "**Criminal Defendants**") were indicted in the United States District Court for the Western District of Washington (the "**Washington District Court**") for conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering.[2] Approximately three weeks later, the United States Department of Justice (the "**Government**") served seizure warrants (the "**Seizure Warrants**") on BlockFi, authorizing the seizure of "All funds—including virtual currencies—" from specified accounts at Debtor BlockFi International Ltd. (the "**Subject Accounts**" and the funds specified in the Seizure Warrants, the "**Subject Assets**").

---

[2]  *See United States v. Sergei Potapenko, et al.*, 2:22-CR-00185-RSL (W.D. Wa. Oct. 27, 2022).

2

2. The Government has demanded, allegedly under its police powers, that the Debtors comply with the Seizure Warrants by providing payment in full in kind of the balances of the Subject Accounts, net of setoff. This transfer of value will amount to close to $40 million (at today's prices). The Debtors have agreed, subject to entry of a stipulation (the "**Stipulation**") by the Washington District Court.

3. As set forth at length in the Committee's *Application in Support of the Committee's Request for Temporary, Preliminary, and Permanent Injunctive Relief* (the "**Application**") filed contemporaneously herewith, the Subject Accounts contain only an unsecured right to payment. No funds were set aside or segregated for the Subject Accounts. The funds originally contributed by the Criminal Defendants to the Subject Accounts are no longer in the Debtors' estates, at least not in full, because they were rehypothecated pursuant to the terms of use governing the Subject Accounts.

4. The present assets of BlockFi International are insufficient to pay all creditors of BlockFi International (including the Criminal Defendants) in full, and the same is true of the Debtors collectively. The balances in the Subject Accounts merely entitle the Criminal Defendants to an unsecured claim (subject to the terms of the Subject Accounts). The Committee has no quarrel with the Government's seizure of this claim. But, the transfer contemplated under the Stipulation (the "**Transfer**") will provide payment in full, in kind (and before confirmation) to the Government at the expense of BlockFi International's – and the other Debtors' – creditors. The net result will be a meaningful impairment to the recoveries of all other creditors, who will recover even less on their accounts as a result of the Government seizing funds that would otherwise go to increase their recoveries to give the Subject Accounts a (greater than, under the Bankruptcy Code) 100% recovery.

5.      This Court should extend the automatic stay pursuant to Section 362 or issue an injunction pursuant to Bankruptcy Code Section 105(a), to enjoin the Transfer, which threatens equality of treatment among all similarly situated creditors. This Court has stated that, where exercise of police power "seriously conflicts with the policies underlying the Bankruptcy Code," the Section 362(b)(4) exception to the automatic stay "does not bar this Court from imposing or extending the stay under Section 362(a), or otherwise restrict this Court's ability to issue injunctive relief under Section 105(a)." *LTL Mgmt., LLC v. New Mexico (In re LTL Mgmt., LLC)*, 645 B.R. 59, 81 (Bankr. D.N.J. 2022); *see also Penn Terra Ltd. v. Dep't. of Env. Res.*, 733 F.2d 267, 273 (3d Cir. 1984) ("The effect of an exception is not to make the action immune from injunction.").

6.      For these reasons, the Committee requests that the Court issue an injunction pursuant to Section 105(a) to enjoin (i) entry into the Stipulation and (ii) the Transfer of property of the estate as contemplated under the Stipulation. In the alternative, if such Transfer has already occurred as of the date hereof, the Committee seeks the avoidance and recovery of the Transfer pursuant to Sections 549(a) and 550.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. Section 1334 because this is a civil proceeding arising in or related to the Debtors' Chapter 11 cases. The matters set forth herein are core proceedings pursuant to 28 U.S.C. Section 157(b)(2).

8.      Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

## PROCEDURAL BACKGROUND

9.      On November 28, 2022, the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the Bankruptcy Code in the District of New Jersey. Since the Petition

4

Date, the Debtors have continued to operate and manage its business pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code as debtors-in-possession.

10. On December 21, 2022, the United States Trustee for the District of New Jersey (the "**United States Trustee**") filed the *Notice of Appointment of Official Committee of Unsecured Creditors* (the "**Notice of Appointment**") [Docket No. 130].[3] Following the Committee's appointment, the Committee, subject to Court approval,[4] selected: (i) Brown Rudnick LLP to serve as counsel, (ii) Genova Burns LLC to serve as local counsel, (iii) McCarter & English, LLP to serve as efficiency counsel, (iv) M3 Advisory Partners, LP to serve as financial advisor, and (v) Elementus Inc. to serve as blockchain forensics advisor.

## PARTIES

### I. The Plaintiff.

11. The Committee.

### II. Defendants.

12. The Debtors.

13. The United States of America.

## FACTUAL ALLEGATIONS

### I. The Debtors' Operations.

14. BlockFi is a cryptocurrency financial services company. It offered three products relevant to this Complaint:

   a. A wallet account ("**Wallet**") for cryptocurrency storage, by which clients retain full legal title to cryptocurrency held therein;

---

[3] An Amended *Notice of Appointment of Official Committee of Unsecured Creditors* was filed on December 22, 2022 to reflect certain non-substantive additions. [Docket. No. 131].

[4] The Court approved the retention of each of the Committee's selected professionals. [Docket Nos. 544, 543, 588, 625, 637].

5

  b. A BlockFi Interest Account ("**BIA**"), which is a deposit account by which clients were promised high interest rates in exchange for an agreement to transfer title to deposited cryptocurrency to BlockFi for redeployment; and

  c. Cryptocurrency lending services, allowing loan clients to deposit digital asset collateral in an account (a "**Collateral Account**") and borrow funds with a value of up to 50% of their deposited collateral.

15. At all times, assets held in Wallet accounts remained property of depositor clients. The terms of service governing the Wallets provide that "title to the cryptocurrency held in your BlockFi Wallet shall at all times remain with you and shall not transfer to BlockFi. . . . BlockFi shall not sell, transfer, loan, hypothecate or otherwise alienate cryptocurrency held in your BlockFi Wallet unless specifically instructed by you."[5] The Debtors represent that assets in Wallets were not commingled with assets used in other BlockFi programs.[6]

16. By contrast, the terms of service governing BIAs provided that "Except where prohibited or limited by applicable law, BlockFi has the right, without further notice to you, to pledge, repledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, invest or use any amount of such cryptocurrency, separately or together with other property, with all attendant rights of ownership . . . . You acknowledge that, with respect to the assets used by BlockFi pursuant to this paragraph: (i) you will not be able to exercise rights of ownership . . . ."[7]

17. Similar to the BIAs, the provisions governing collateral posted for Collateral Accounts allowed BlockFi, without notice to the retail loan client to "pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer, invest, or use any retail client loan

---

[5] *See Debtors' Motion For Entry Of An Order (I) Authorizing The Debtors To (A) Honor Withdrawals From Wallet Accounts, (B) Update The User Interface To Properly Reflect Transactions And Assets As Of The Platform Pause, And (C) Conduct Ordinary Course Reconciliation Of Accounts, And (II) Granting Related Relief* [Docket No. 121] (the "**Wallet Motion**"), at ¶ 19.

[6] *Id.* at ¶ 17.

[7] https://blockfi.com/interest-account-terms-existing-us.

6

collateral, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining in BlockFi's possession and/or control a like amount of assets"[8] (these provisions governing the BIAs and the retail loan accounts, the "**Terms of Use**").

18. The Debtors did in fact rehypothecate, loan, and/or sell both loan collateral deposited in Collateral Accounts and assets deposited in BIAs. BlockFi lent at least $680 million to FTX-associated hedge fund Alameda Research, and held another $350 million on the FTX exchange for (presumably) trading purposes.[9] BlockFi previously also lost substantial sums of money ▮▮▮▮▮▮▮▮▮▮▮▮ on the Grayscale Bitcoin Trust "arbitrage" prior to the summer of 2022. BlockFi also sold approximately $238.6 million of cryptocurrency in preparation for its Chapter 11 cases.[10]

19. On November 10, 2022, in response to revelations regarding FTX's insolvency, BlockFi announced a freeze of account withdrawals from its platform (the "**Platform Pause**"). FTX's failures to meet their obligations to BlockFi caused a liquidity shortage, whereby BlockFi no longer had access to sufficient assets to satisfy all account withdrawals.[11]

## II.  The Seizure Warrants.

20. On ▮▮▮▮▮▮▮▮▮▮ the Criminal Defendants were indicted in the United States District Court for the Western District of Washington for conspiracy to commit wire fraud, wire

---

[8] *Declaration Of Mark A. Renzi In Support Of Debtors' Chapter 11 Petitions And First-Day Motions* [Docket No. 17] (the "**First Day Declaration**") at ¶ 45. BlockFi also had a private client loan program ("**BPC**"), with terms negotiated on an individual basis. The terms governing BlockFi's rights regarding assets borrowed under BPC loans were in all relevant respects identical to the retail loan terms. *See id.* at ¶ 41.

[9] *See* First Day Decl. at ¶ 96; 11/29/2022 Hr'g. Tr. at 32:19-25.

[10] First Day Decl. at ¶ 99.

[11] *See id.* at ¶ 97.

fraud, and conspiracy to commit money laundering. *See United States v* ███████████ ███████████ (W.D. Wa. ███████).

21. On November 16, 2022 – days after BlockFi effectively admitted it was insolvent through its Platform Pause, and the Chapter 11 filings of the FTX entities confirmed it – the Government served the Seizure Warrants on BlockFi. BlockFi did not comply with the Seizure Warrants prior to the Petition Date, and the Government has not executed the Seizure Warrants. A copy of the Seizure Warrants is attached hereto as Exhibit A.

22. The Seizure Warrants permit the Government to seize "[a]ll funds – including virtual currencies" from four Subject Accounts at BlockFi International, including one BIA and two Collateral Accounts (the assets named in the Seizure Warrants, the "**Subject Assets**").[12] The Debtors' schedules show that the balance in the BIA was ███████. The two Collateral Accounts had a total balance of ███████████ in collateral, offset by an outstanding loan of ███████████. The Subject Accounts have at all times held only claims denominated in digital assets.

23. Notwithstanding these balances, at the time the Seizure Warrants were served, the digital assets that had been deposited in each of the Subject Accounts (and in other customer accounts at BlockFi) were, in full or in principal part, no longer at BlockFi. They were either trapped on FTX's platform, where they had been custodied, or sold in accordance with the Debtors' ownership of such assets pursuant to the Terms of Service. Each "balance" evidences an obligation

---

[12] Upon information and belief, the fourth account was a Wallet, and the Debtors have already transferred any funds from that Wallet to the Government. As the funds in the Wallet at all times remained property of the Criminal Defendants and were not commingled with other assets, the Committee has no objection to this transfer.

8

of the Debtors to the account holders, rather than a measure of funds or digital assets actually located in a particular account.

**III.    The Bankruptcy Case.**

24. On November 28, 2022 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for Chapter 11 relief in the Bankruptcy Court in the District of New Jersey. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. The Chapter 11 cases have not been substantively consolidated.

25. On November 30, 2022, the Court entered the *Order (I) Restating And Enforcing The Worldwide Automatic Stay, Anti-Discrimination Provisions, And Ipso Facto Protections Of The Bankruptcy Code And (II) Granting Related Relief* [Docket No. 56] (the "**Stay Order**"). A copy of the Stay Order was served on the Government. *See Affidavit Of Service* [Docket No. 120] at Ex. A.

26. Notwithstanding variable rates of exchange, the Debtors' present assets are insufficient to satisfy BIAs in full as well as to return "excess" loan collateral in full (or, following repayment of the loan, return all loan collateral) – either in the original currency or in dollars based on the exchange rate as of the Petition Date.

27. On January 1, 2023, the Government sent a letter to the Debtors, a copy of which is attached hereto as Exhibit B (the "**Government Letter**"). The Government Letter requests that the Debtors release all "unencumbered funds"[13] in the Subject Accounts to wallets controlled by

---

[13] The Government Letter further states that "The United States is aware of loans associated with these accounts, but does not have current balances." Government Letter at fn. 1. The Committee takes this comment, together with the request for the release of "unencumbered funds," to mean that the Government only requested the release of the excess collateral in the Collateral Accounts (minus the outstanding loan amount), plus the BIA amount. The Government has reserved the right to seek to obtain the "gross" proceeds.

9

the United States. The Committee understands that in subsequent discussions the Government demanded – and the Debtors acquiesced to – payment in full of the "net" account balance (*i.e.*, the collateral value of the collateral account, minus the outstanding loan amount), though the Government has reserved the right to seek the "gross" collateral amount. Upon being informed of these discussions, the Committee promptly notified the Debtors that such actions would, in the Committee's view, violate the automatic stay. Upon being informed that the Debtors and the Government intended to file the Stipulation in the Washington District Court (and not seek approval in this Court), the Committee further notified the Debtors that, in its view, such action was in violation of the exclusive jurisdiction of this Court.

28. Subsequent to the Government Letter, the Committee understands that the Debtors and the Government have been negotiating the Stipulation. The Committee understands the general terms of the Stipulation – that the Debtors will, subject only to the order of the Washington District Court – turn over the net balance of the Subject Accounts in full, in kind, with the Government reserving the right to seek the "gross" balance (*i.e.* the full collateral value, not reduced by the loan it secured) of the applicable Collateral Accounts.

29. The Stipulation seriously conflicts with the equal treatment policy of the Bankruptcy Code in that it would grant the claims of certain unsecured creditors – the Criminal Defendants – priority in both timing and seniority over the claims of other unsecured creditors. An injunction under Section 105(a) and 362(a) would protect the policies of the Bankruptcy Code by ensuring that creditors (including the Criminal Defendants, to whose claim the Government is successor in interest) receive equal treatment.

30. If the Debtors are permitted to pay the Government in full, in kind, for the Subject Accounts, the creditors of BlockFi will be further victimized: recoveries will drop from (already

too low) anticipated amounts. Further, these funds will not be going to innocent creditors: they will be going to *the Government*, which asserts greater rights to recover than any other creditor because of (alleged) criminal activity by the account holder. Moreover, entry into the Stipulation itself will irreparably harm the estates and their creditors: the Government will argue that neither the Committee nor any of the Debtors' creditors have standing to challenge the Seizure Warrants in the Washington District Court, and the Debtors, by entering into the Stipulation, may waive rights that the Committee would seek standing to bring on the Debtors' behalf.

31. There is no harm to the Government. The effect of the injunction will be to place the Government in the position contemplated by the Seizure Warrants and the criminal forfeiture statutes. That is, they can take the "assets" in the Subject Accounts at the time the Seizure Warrants were served, *i.e.*, the Criminal Defendants' rights against the Debtors in these Chapter 11 cases. Preventing the Government from seizing the assets of innocent bystanders, which it is not permitted to do, does not constitute harm to the Government.

32. There is no sense in which payment in full, in kind, of the Subject Accounts furthers the Government's interest in enforcing the laws of the United States. A greater recovery from the Subject Accounts does not meaningfully alter the potential consequences to the Criminal Defendants: such Criminal Defendants (if the accounts are ultimately forfeited) face precisely the same loss (all of the account) regardless of whether *the Government* recovers more.

33. Accordingly, the Debtors should be enjoined from entering into the Stipulation and making the Transfer, and the Government should be enjoined from seizing more from the BlockFi Estate than the Subject Accounts would be entitled to under any confirmed plan of reorganization (or liquidation under Chapter 7 of the Bankruptcy Code).

34. In the alternative, if the Government is successful in obtaining these funds, such payments are a post-petition transfer that is not authorized under the Bankruptcy Code or by this Court. Such funds must be recovered for the benefit of the estate, and the transfers avoided, for the reasons set forth above.

## COUNT I

## INJUNCTIVE RELIEF

## (11 U.S.C. SECTIONS 105(A) AND 362(A))

### (Against the Debtors and the United States of America)

35. The Committee restates and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

36. The Committee seeks an injunction pursuant to Section 105(a) of the Bankruptcy Code enjoining (i) entry into the Stipulation and (ii) the Transfer.

37. Section 105(a) authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. Section 105(a). Bankruptcy Courts have routinely found Section 105(a) provides authority to issue preliminary injunctions.

38. Section 362(a) provides that the filing of a bankruptcy petition "operates as a stay of [among other things] … any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate…." 11 U.S.C. Section 362(a)(3).

39. Relief under Section 105 is particularly appropriate in a Chapter 11 case when necessary to preserve estate property.

40. For the reasons stated herein, and in the Application, this Court should exercise its authority under Section 105 to enjoin entry into the Stipulation and the Transfer and enforce the automatic stay.

41. Absent the injunctive relief requested by the Committee, BlockFi International will suffer irreparable harm and its ongoing restructuring efforts will be threatened as its assets will be depleted. The other Debtors' estates will also be irreparably harmed, as a significant amount of the digital assets available to administer these bankruptcy cases and pay unsecured creditors will have been depleted.

42. The Government would suffer little, if at all, if the Court were to issue the injunctive relief requested. The Government could succeed to the Criminal Defendants' rights under the Subject Accounts, and would be entitled to the Criminal Defendants' *pro rata* share of any distributions to similarly situated creditors on account of their claims related to the Subject Accounts. Alternately, the Government could exercise its powers to seize the Subject Assets from the party or parties currently in possession of such assets. The likelihood of irreparable harm to the estates in the absence of injunctive relief far outweighs any potential harm to the Government.

43. The issuance of the injunction is in accordance with the public interest in uniform and equitable resolution of claims, which is a core tenet of the Bankruptcy Code.

## COUNT II

**AVOIDANCE AND RECOVERY OF POSTPETITION TRANSFERS OF PROPERTY OF THE ESTATE**

**(11 U.S.C. SECTION 549(A))**

(**Against the United States of America**)

44. The Committee restates and realleges each of the preceding paragraphs, which are incorporated by reference as if set forth fully herein.

45. If, as of the date hereof, the Transfer has already been made, the Committee requests that, in the alternative, the Court avoid and recover the Transfer pursuant to Section 549(a) and 550 of the Bankruptcy Code.

46. To the extent that any Transfer has been made to the Government pursuant to the Stipulation, such Transfer was (i) of property of the estate, (ii) made postpetition, and (iii) not authorized under the Bankruptcy Code or by this Court.

## ATTORNEYS FEES AND COSTS

47. To the extent allowable by applicable law, the Committee requests that the Court award reasonable attorney's fees and costs.

## RESERVATION OF RIGHTS

48. The Committee demands a jury trial on all issues so triable.

49. The Committee reserves the right to bring additional claims, including, without limitation, additional claims that the Committee discerns from its ongoing investigation.

50. The Committee reserves the right to bring the claims asserted herein, and any additional claims in any appropriate forum, including, without limitation, any state or U.S. District Court, notwithstanding the caption for this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, the Committee requests that the Court grant the following relief, and any other and further relief as is just:

**A.    On Count I:**

1. entering an injunction against the Debtors and the Government preventing entry into the Stipulation and the Transfer to the Government pursuant to Sections 105(a) and 362(a).

**B.    On Count II:**

2. In the alternative, if the Transfer has occurred as of the date hereof, entering an order avoiding and recovering such Transfer for the benefit of the Debtors' estates pursuant to Sections 549(a) and 550.

Dated: May 22, 2023
       New York, New York

Respectfully submitted,

By: */s/  Daniel M. Stolz*
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Fax:          (973) 533-1112
Email:      DStolz@genovaburns.com
               DClarke@genovaburns.com
               GKinoian@genovaburns.com

*Local Counsel for the Official*
*Committee of Unsecured Creditors*

By: */s/   Kenneth J. Aulet*
**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Fax:          (212) 209-4801
Email:      rstark@brownrudnick.com
               kaulet@brownrudnick.com
               bsilverberg@brownrudnick.com

Stephen D. Palley, Esq.
601 Thirteenth Street, NW
Washington, DC  20005
Telephone: (202) 536-1700
Fax:          (202) 536-1701
Email:      spalley@brownrudnick.com

Tristan G. Axelrod, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111

Telephone: (617) 856-8200
Fax:       (617) 856-8201
Email:     taxelrod@brownrudnick.com
           sdwoskin@brownrudnick.com

*Counsel for the Official*
*Committee of Unsecured Creditors*

## VERIFICATION

I, Matthew Manning, hereby certify and verify under penalty of perjury that:

1. I am a Managing Director at M3 Partners. M3 Partners has been retained by the Committee to serve as its financial advisor in this case.

2. I have read the factual allegations contained in the Verified Complaint and affirm such allegations are true and accurate to the best of my knowledge, information, and belief.

3. I am aware that if any of the allegations contained in the foregoing Verified Complaint are willfully false, that I am subject to punishment.

By: */s/ Matthew Manning*

DATED: May 22, 2023                 Matthew Manning

16