IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:                  .     Case No. 22-19361-MBK
                        .     (Jointly Administered)
BLOCKFI INC., et al.,   .
                        .
        Debtors.        .
                        .     May 25, 2023
. . . . . . . . . . . . .     2:00 p.m.

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:            Haynes and Boone, LLP
                            BY:  RICHARD KANOWITZ, ESQ.
                            30 Rockefeller Plaza
                            26th Floor
                            New York, NY 10112

For the Official            Brown Rudnick, LLP
Committee of Unsecured      By:  KENNETH AULET, ESQ.
Creditors:                  7 Times Square
                            New York, NY 10036

For the Department          U.S. Department of Justice
of Justice:                 By:  SETH SHAPIRO, ESQ.
                                 JAMES CURT BOHLING, ESQ.
                            950 Pennsylvania Avenue NW
                            Washington, DC  20530



Audio Operator:             Kiya Martin



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

2

1         THE COURT:  Okay, good afternoon, everyone.  This is

2  Judge Kaplan.  Thank you for appearing remotely on shortened

3  time.  This is the BlockFi Inc., et al. matter, the application

4  for TRO filed by the Committee.  And today's hearing is

5  essentially, at least from my perspective, simply a status

6  conference so we can talk about scheduling and how best to

7  address what I will refer to as interesting and novel issues,

8  maybe not unexpected but certainly interesting and novel.

9         So, we have I think about 20 participants remote.

10  I'm not going to go through appearances.  I'll just ask that

11  for those who wish to speak, just introduce themselves so I get

12  a sense of whose interest you're representing.  I debated about

13  having an informal conference.  I thought better if we put this

14  on the record just in case we want to pick some dates and

15  deadlines.

16         But let me turn to -- I guess first we'll start with

17  Committee counsel who wishes to be heard on how best to move

18  this matter forward.

19         MR. AULET:  Good afternoon, Your Honor.  This is

20  Kenneth Aulet of Brown Rudnick for the Committee.  So from our

21  perspective there's two scheduling issues.  The first is when a

22  hearing on the preliminary injunction should occur.  There's a

23  couple of timing issues there.  First, it's my understanding

24  that that date does not work for Mr. Shapiro from the

25  Department of Justice.

1                THE COURT:  Okay.

2                MR. AULET:  And June 5th and 6th are the dates in

3   which the Committee and the debtors are going to be mediating

4   the plan process.  The second timing issue is that the

5   Department of Justice has filed a motion to compel in the

6   Washington State District Court which the date for an

7   opposition would be May 30th if that is not postponed and we

8   have some concerns about the timing of that and have requested,

9   though I don't believe that the Department of Justice has been

10  able to get a response yet, that that be postponed so that we

11  can have an orderly litigation process rather than having to

12  bounce between courts or seek further emergency relief.

13                THE COURT:  All right, so we have the DOJ's pending

14  motion before the District Court in Washington, State of

15  Washington, and also, obviously, the return date on the

16  preliminary injunction.  The Court's calendar is somewhat tight

17  in June for a variety of reasons, I guess all good from

18  attorneys' perspectives but difficult for the Court.  We have a

19  lot of activity.

20                Mr. Shapiro, do you want to be heard or give me your

21  thoughts?

22                MR. SHAPIRO:  There you go.

23                THE COURT:  There you go.

24                MR. SHAPIRO:  I do, Your Honor.  There's actually a

25  third scheduling issue.  This might just be a correction on the

4

1  docket.  As Your Honor may know, under the Federal Rules of

2  Bankruptcy Procedure which incorporates the Federal Rules of

3  Civil Procedure, the United States gets 35 days versus 30 days

4  to respond to a summons and complaint once it's served.  And

5  although the Committee counsel did send me a copy of the

6  summons that appears to be correct, I did want to note for the

7  Court that there's a docket entry in the adversary proceeding

8  that says that the return date for the United States is only 30

9  days.  I don't think that's a big deal but I thought I should

10 note it for the Court because it should be a different date

11 than the date for the other defendants.

12        THE COURT:  That's helpful.  I think that's more of a

13 clerk's office process that we need addressed but I appreciate

14 the heads up.

15        MR. SHAPIRO:  Oh, no problem.

16        And then as far as hearing back from the Criminal

17 Division, I just heard a short time ago that there is a

18 procedural problem.  Apparently, under the Rules of Criminal

19 Procedure out in Washington where this matter has been assigned

20 to, a senior District Judge Robert Lasnik where apparently,

21 they do things differently in the criminal world than we do

22 here in the bankruptcy world and in their world they have

23 what's called a noting date.  It's not a hearing date.

24        In other words, a motion is filed, any objections

25 have to be given by I think within about a week which I think

1  on this calendar would be Memorial Day.  With the federal

2  holiday, that probably bumps it to Tuesday.  And then, of

3  course, there's a reply date which I think is right on the day

4  of the noting date or right before the day of noting date which

5  is Friday, June the 2nd.

6         The noting date is not necessarily a hearing date, I

7  understand, under the Rules of Criminal Procedure.  I have Mr.

8  Curt Bohling on the phone from the DOJ Criminal Division in

9  Washington.  He can address that if you'd like.  But my

10 understanding of the way it works is once all the papers are

11 submitted -- well, no ruling will be entered until all the

12 papers are submitted and those likely will not all be submitted

13 until either June 1st or 2nd and no ruling will be entered

14 before the noting date is what I've been told by the Criminal

15 Division.

16        Now, on the noting date it's possible the judge could

17 schedule a hearing or call for a hearing or he could rule on

18 the papers or he might just take it under advisement and we

19 might not hear anything for, you know, a week or two or longer.

20 There's no way to know.

21        Mr. Bohling, are you on the line?  Did you want to

22 provide any clarification to Judge Kaplan?

23        MR. BOHLING:  Yes, I am.  Thank you, Seth.

24        Your Honor, I believe Mr. Shapiro has accurately

25 stated our understanding.  This is actually a local rule in the

1  Western District of Washington.  It's not universal to all

2  districts but that is my understanding of the procedure in that

3  district and my understanding of the fact that it's not on a

4  tight schedule in the same way that some civil proceedings are

5  in bankruptcy.  It is very much up to the judge about how this

6  will unfold there in terms of time.

7           THE COURT:  All right.  I guess it lends itself to

8  the bigger picture issue.  How do we reconcile these two

9  processes going forward where -- I mean I certainly want the

10  opportunity for all parties to brief the issues so that the

11  Court can make an informed decision.  But there's not a lot of

12  ways to read 28 U.S.C. 1334(e) as far as which Court has

13  exclusive jurisdiction over property of the estate.

14          MR. SHAPIRO:  Well, the problem, Your Honor, if I

15  might, is that we don't believe there is property in the estate

16  that's at issue here and that the criminal laws actually give

17  original and exclusive jurisdiction to the District Court with

18  respect to assets that were seized prior to the petition date.

19          THE COURT:  And we're getting into the merits, but

20  can you identify a particular asset that is sought subject to

21  the warrant that is actually -- I don't want to get too far

22  afield.

23          MR. SHAPIRO:  Right, right, of course.

24          THE COURT:  But there are policy consequences and we

25  have two statutes that certainly speak of exclusive and

1 original jurisdiction.

2        MR. SHAPIRO:  That's correct.  Very interesting.

3        THE COURT:  I'm sure this is fodder for great Law

4 Review articles and law school classes.  I don't know if we

5 need to or we want to start down that pathway.  I'm open to

6 suggestions on how to give everyone, both courts, frankly, the

7 fairest opportunity to view the applicable law and the

8 positions of the parties without prejudicing any party's

9 rights.  So does anyone have any suggestions?  Timing-wise, I

10 mean I don't want it to be a race between two courthouses.  I

11 think that's offensive to everybody involved including the

12 Courts, you know?  We went through that a bit with the Bahamian

13 courts.

14        UNIDENTIFIED ATTORNEY:  Right.

15        THE COURT:  It's bad enough when we're dealing across

16 the Atlantic.  I hate to see us have to go through that

17 exercise 3,000 miles across our country.

18        MR. SHAPIRO:  Of course, Your Honor.

19        THE COURT:  I'm open to suggestions on how to

20 accommodate including having a conference with both Courts, you

21 know, with judges of both courts having feedback.

22        MR. KANOWITZ:  Your Honor, may I be heard?  It's

23 Richard Kanowitz, Haynes Boone, on behalf of the debtor?

24        THE COURT:  Yes.

25        MR. KANOWITZ:  Yes.  Hi.  Thank you for scheduling

8

1 | the conference.  I think it's appropriate for us to have this
2 | type of discussion.  For months we've been working on this
3 | issue with the DOJ and one of the issues was should we come
4 | before Your Honor so this call plays out, you know, timely and
5 | appropriate fashion or should we do something else and clearly,
6 | we went with the -- we're going to go with the stipulation in
7 | front of the District Court and whoever has rights to appear
8 | there, can appear there.  But we are, you know, in sort of a
9 | procedural quagmire here.
10 |         My reading of the motion sought by the DOJ is to
11 | abide by the deal that the debtors have worked out which is
12 | that not all of the assets or collateral, however you want to
13 | phrase it, no prejudice using any of the terms today, gets put
14 | over to the Washington State Court, right?  We're talking about
15 | -- and I know the criminal indictment is under seal, but we're
16 | talking about a magnitude potentially of $50 million leaving
17 | the estate as opposed to 24 or $28 million leaving the estate.
18 | That's the difference between us being able to utilize the
19 | setoff rights or not.
20 |         And, you know, we could talk about what happened vis-
21 | a-vis the Robinhood shares and the FTX disputes and the
22 | emergent disputes and why the debtors have taken the approach
23 | they have taken, but the bottom line as I read the motion that
24 | was filed in Washington and it is clear they're seeking the
25 | transfer of the assets and we are obligated now to hire local

9

counsel and put in papers by June 2nd, sorry, the 30th what the

position of the debtors will be which will clearly be to comply

with the law and to also provide notice of Your Honor's TRO

which prohibits the transfer of the subject assets.

So while the District Court may very well rule or not

rule come June 2nd on directing the debtor to do that, transfer

the assets, Your Honor has prohibited the transfer.  So we are

stuck here where you may have competing orders or you may have

to undo certain orders entered.  So I don't think it behooves

anybody to move forward on any of these motions until we could

get a concrete plan because all that we're doing is spending

estate assets to figure out the situation.

You are right.  There are a lot of novel complex

issues here.  The debtors have been down this road for six

months and we look forward to working with the Committee if we

can and the DOJ as we always have been to try to see if we

could bridge the gap, but if we can't, we'll present our

position to Your Honor in the appropriate fashion.  But I don't

think we should rush this.  I don't see an emergency here.  The

assets are not leaving the estate one way or another and I

think the professionals should be able to work with the Courts

to try to get a comity between both the Bankruptcy Court and

the District Court.  That's our view and we stand willing,

ready and able to listen to Your Honor or the District Court as

appropriate.

10

1          THE COURT:  Thank you, Mr. Kanowitz.  And I

2  appreciate the debtors' difficult position.  Certainly the

3  debtor wants to reduce the prejudice, mitigate the prejudice to

4  the estate in any turnover of assets but I have to appreciate

5  the Committee's concern that what's being requested is a

6  release of non-criminal funds or assets that are attributable

7  to non-criminals, third parties, other victims in this

8  bankruptcy.

9          I agree with Mr. Kanowitz that I don't see the

10  urgency in having to have either of these motions resolved

11  without proper briefing and opportunity.

12          MR. SHAPIRO:  Could I address that, Your Honor?

13          THE COURT:  Yes.  I was going to say there's no

14  danger in the funds being lost.

15          MR. SHAPIRO:  Well, there could be and I would like

16  to address it.

17          THE COURT:  Well, let me hear.  Go ahead.

18          MR. SHAPIRO:  Okay.  You know, I mean first of all,

19  Your Honor, BlockFi is six months late and responding to four

20  court orders requiring them to turn over this money.  We've

21  been negotiating but, you know, it quite honestly has just

22  dragged on way too long.  The assets are not property of the

23  estate and we, you know, we're concerned that as you head

24  towards confirmation of a plan, if we were to get some kind of

25  ruling in the Bankruptcy Court turn over the money that the

1 Committee or the debtors, the money could get distributed and

2 now you would have authorized a distribution of money in a

3 bankruptcy case in violation of federal criminal law and we

4 just can't allow that.  Seizure is permitted --

5 THE COURT:  There are a lot of assumptions you just

6 made, respectfully.  There's the ipse dixit as to what is

7 property of the estate but the process -- I don't know what

8 you've witnessed in this bankruptcy unfortunately that suggests

9 anything is going so quickly that can't be stopped.

10 MR. SHAPIRO:  No, I understand, Your Honor.  All I'm

11 trying to say is while Your Honor does have jurisdiction to

12 determine, you know, whether the automatic stay applies, that

13 jurisdiction is concurrent with the District Court in

14 Washington State and so seizure is permitted by the criminal

15 forfeiture laws in order to ensure that the property is

16 available for forfeiture at the conclusion of the criminal case

17 that it's given to victims.

18 Here, none of the creditors in this bankruptcy case

19 have been identified as victims of the crime.  These are

20 individuals.  It's a case against individuals who committed

21 wire fraud and conspiracy to commit money laundering.  The

22 creditors committee nowhere in their papers identifies a single

23 creditor that was a victim of that crime.  They are simply a

24 creditor of this estate if they have an allowed claim but they

25 are not a victim of the crime and we cannot let the bankruptcy

1  courts interfere with criminal cases and criminal forfeiture

2  proceedings.  That's the reason 362(b)(4) was created in this

3  situation.  It's the reason why the Criminal Code and statutes

4  give the District Courts original and exclusive jurisdiction

5  over criminal forfeiture proceedings.

6        I mean, Mr. Bohling, you're on the line.  If there's

7  anything you'd like to add, I think that's the position of the

8  Justice Department.

9        THE COURT:  Well, that's understood.

10        Well, Mr. Bohling, let me hear from you if you want

11 to.

12        MR. BOHLING:  Mr. Shapiro has eloquently stated the

13 position of the United States here.  I agree.

14        MR. AULET:  Can I respond on behalf of the Committee?

15        THE COURT:  That's fine.  Let me hear from the

16 Committee.  Let me reiterate, this is not the underlying

17 hearing on the preliminary injunction.  We can turn it into

18 that but then I'm not sure we're advancing the process.

19        Mr. Aulet?

20        MR. AULET:  Yes.  So I'll just avoid going into the

21 merits besides saying that, you know, we disagree with much of

22 what the debtors said except for the scheduling issue and we

23 disagree with the DOJ on their legal contentions.

24        But I agree with the Department of Justice that this

25 should be resolved prior to a plan being confirmed if at all

possible but it is not something that needs to be resolved by,

for example, June 2nd.  And the Department of Justice has

asserted that the Committee is essentially only a creditor.

One of the issues that we've raised is that we believe that we

should be representing the estate if there are any proceedings

that should be occurring in the Washington District Court

which, of course, we dispute.

         But that said, what we're here for today is a

scheduling issue and I think that the appropriate thing to do

would be to put off the May 30th deadline for the debtors

and/or the Committee to file any response to the motion to

compel either by having that withdrawn without prejudice or by

having the, I'm not sure what exactly the procedure would be

under the local rule, but to move that June 2nd date that sets

the response deadline while all the parties can confer on what

an appropriate schedule is to brief these issues so that

they're resolved on the merits rather than on, you know, who

got to the courthouse first and who has or does not have

standing at any particular time so that we can get this

resolved by, you know, mid-July or end of July so that if

there's a plan that's confirmed, we know what's being

distributed under that plan.

         MR. SHAPIRO:  Your Honor, the question of standing is

also disputed because in a criminal proceeding the Committee --

neither BlockFi nor the Committee would have standing to be

1 heard.  They simply would be dismissed away by the District

2 Court judge because they're not representing a victim of the

3 crime and they're not asserting some kind of, you know,

4 interest in the property that gives them the right to be heard

5 at the District Court level.

6         Mr. Bohling, did you want to provide any

7 clarification on that?

8         MR. BOHLING:  I agree with that.  That would be our

9 position.  The seizure warrant has already been entered by the

10 Magistrate Judge in Washington.

11         MR. SHAPIRO:  And that makes it a court order.

12 Right.

13         MR. BOHLING:  Yeah, that really ends the matter.  And

14 certainly our position would be that it is primarily with the

15 District Court now to decide the motion to compel which we

16 believe should be done expeditiously.

17         THE COURT:  All right, then I'm at a loss to

18 understand how you would expect any third party that takes an

19 interest in these assets that are being sought to be turned

20 over to argue and to protect their rights if you're eliminating

21 both the debtor and the Committee from taking a position out in

22 Washington.

23         MR. SHAPIRO:  Oh, they would have a right, Your

24 Honor, down the road.  After the criminal conviction there

25 would be a criminal forfeiture proceeding and in that

1   forfeiture proceeding, whether it be an ancillary proceeding or

2   a mission proceeding, they could attempt to try to be heard.

3   But even in those proceedings if they don't comply with

4   criminal law and can establish that they have standing to be

5   heard, you know, they might not get heard.  They possibly could

6   get heard if they're able to satisfy the criminal law statute

7   but that's a different standard than a creditor trying to be

8   heard in a bankruptcy case to be fair to Your Honor.  It is a

9   different legal standard under the criminal laws about whether

10   you have standing.

11         MR. AULET:  And, Your Honor, we'd respectfully

12   disagree with that point.  We believe that the estate and if

13   it's the debtors or the Committee or both have the right to

14   represent the estate have the authority to challenge the motion

15   to quash on the grounds that the assets are sought to be

16   obtained by the seizure warrant were turned over and it's our

17   position that those are an unsecured right to payment which is

18   why it's an issue for this Court and to move to quash the

19   warrant because it seeks property that is property of other

20   people and not what was described in the warrant and that's the

21   sort of thing that we would believe that if Your Honor believes

22   that this should be in Washington, then we disagree with that

23   and believe that 28 U.S.C. 1334 is clear that even if there's a

24   dispute over if something is property of the estate or not,

25   that is an issue for Your Honor to decide.

16

1          MR. SHAPIRO:  May I, Your Honor?  Let me give you a

2 cite, Your Honor.  There's a criminal statute that basically

3 stands for the proposition that once the United States has

4 commenced the forfeiture of property in a criminal case, third

5 parties cannot seek release of the property seized or

6 restrained for criminal forfeiture until the conclusion of the

7 criminal case.  That's 21 U.S.C. Section 853(k).  There's

8 actually a Third Circuit case on point, United States v.

9 Nicoll, 711 F. App'x 108, 110, 111 (3rd Cir. 2017) and United

10 States v. Lavin, 942 F.2d 177, 182 (3rd Cir. '91).

11          So, I don't want to get too much into the merits but

12 there are really only two grounds, Your Honor, for a party to

13 be heard under Title 21, Section 853(n).  It's where the third

14 party had an interest superior to the defendant's, which in

15 this case we don't believe the Committee could assert that but

16 if they have it, they'll have a right to be heard on that one

17 day, and the other is where the third party was a bona fide

18 purchaser for value who is reasonably without cause to believe

19 the property was subject to forfeiture and that's all laid out

20 in 21 U.S.C. Section 853(n)(6)(a) and (6)(b).

21          So, I just want the Court to note because I don't

22 know how often the Court has had criminal cases that, you know,

23 interfere with the Bankruptcy Court's notion of jurisdiction

24 but this is a completely different type of case, one where the

25 criminal court has already exercised jurisdiction over the

17

1    asset and under the Princess Lida Doctrine, the Bankruptcy

2    Court should simply defer to the Criminal Court and let the

3    Criminal Court make the decision.

4           THE COURT:  Well, I understand the DOJ's position and

5    I'll ignore what I view as disrespectful as far as notions of

6    jurisdiction.  I tend to make decisions based on more than

7    simply notions.  In fact, what I think is appropriate is to

8    afford this Court the same respect that you would afford any

9    Court and the ability to make a decision based on a proper

10   presentation.  And I'm not denigrating what you're doing.  I

11   understand the position but you cannot expect the Court to make

12   a decision based on citations discussed in a status conference

13   and what I'm trying --

14          MR. SHAPIRO:  We're not, Your Honor.

15          THE COURT:  What I'm trying to do is secure a fair

16   and balanced opportunity for both the District Court and this

17   Court to make an educated and informed decision knowing that

18   there really is no prejudice and to have additional time taken.

19   Notwithstanding your concerns, I can give you this Court's

20   commitment.  There is never going to be a plan confirmed that

21   distributes these assets before a proper resolution of this

22   issue.  It's not going to happen.

23          MR. SHAPIRO:  Thank you, Your Honor.

24          THE COURT:  That's not how I operate and it's not how

25   I think any Court would treat it.  I detest races to the

1   courthouse in any fashion.

2        MR. SHAPIRO:  And we're not trying to be

3   disrespectful in any way, Your Honor, but understand that

4   what's happening here is itself a violation of federal criminal

5   law.  The Committee had no authority to bring that lawsuit and

6   they violated criminal law by doing it.  They are now

7   interfering with a criminal forfeiture case and there are

8   consequences for that.  So, you know, we don't want to push too

9   hard on that but that's effectively what it is and that's why

10   we're saying like this can easily be dispensed with by, you

11   know, at some point just letting the District Court make its

12   decision and let the Bankruptcy Court abide by it.

13        THE COURT:  So the position of the DOJ is they will

14   not honor any order of this Court, is that what you're telling

15   me?

16        MR. SHAPIRO:  No, I did not say that, Your Honor.  I

17   just said we were asking if you would defer under, you know,

18   the Princess Lida Doctrine, or otherwise, to the fact that the

19   District Court in a criminal forfeiture case has exclusive

20   jurisdiction over assets that have been seized before the

21   Bankruptcy Court.

22        THE COURT:  I am happy to so defer once I've been

23   convinced that it's proper to do so and I'm trying to secure

24   the opportunity to make an informed decision.  I say a lot of

25   things tongue in cheek.  I respect what the DOJ is doing and

1  its obligations but I have an obligation as well.  The

2  obligation is to the bankruptcy estate and all the stakeholders

3  and it's not to make a rash decision as to, especially when

4  we're talking about a lot of zeroes at issue and the dollars

5  that are being transferred and a significant portion.

6       MR. SHAPIRO:  Absolutely, and I respect Your Honor

7  and I respect this Court, I respect -- but, you know, I'll

8  defer to Mr. Bohling.

9       Mr. Bohling, is there any flexibility on the Criminal

10  Division's end here?

11       MR. BOHLING:  Let me talk to my colleagues.  I'm in

12  the airport today, you know, on travel.  But, certainly, I

13  think Mr. Shapiro has outlined the basics of our position which

14  is very strongly that we believe that this is the District

15  Court's decision, that the District Court has jurisdiction over

16  these assets because of the issuance of the seizure warrant.

17  So I mean that is our position and obviously, I certainly

18  respect the Court and understand the competing interest here

19  but, you know, that certainly is our legal position.  I think

20  Mr. Shapiro has stated it quite well.

21       THE COURT:  Can we secure the time to have that

22  issue, the proper jurisdiction of the Court briefed

23  understanding that the funds are not going anywhere?

24       MR. BOHLING:  I think one of the outgrowths of our

25  position, Your Honor, is that the District Court should be able

1  to decide in the first instance the motion to compel.  That is

2  the essence of our position.

3         MR. KANOWITZ:  Your Honor, may I be heard on that?

4         THE COURT:  Yes, please.

5         MR. KANOWITZ:  I mean, clearly what's going to end up

6  happening is we're going to have local counsel file papers

7  where we alert the District Court of Your Honor's order so that

8  unless the District Court changes its order, that order is

9  going to be stayed by virtue of the terms and conditions,

10  right, because you'll have two competing orders on one

11  directing transfer and one prohibiting transfer so then we'll

12  have to either reach out to the District Court after that

13  motion to compel is granted and then have further hearings in

14  Your Honor's court to determine some of the key issues.

15         You know, these are issues that we've discussed with

16  the DOJ all along in our relationship and have come to certain

17  conclusions and today is not the day to explain what the

18  debtors' view is the law and the process that plays out.  But

19  the expense to go through multiple, multiple hearings instead

20  of just simply two to get Your Honor's approval, direction for

21  the estate as well as then having the District Court make

22  decisions however it sees fit vis-a-vis the criminal process.

23         What I'm hearing is, unfortunately, the debtor has to

24  put in papers, hire counsel, abide by the District Court

25  subject to whatever Your Honor rules at a future preliminary

21

1 injunction hearing which will be also putting in papers on.  I

2 mean that's where we're at which is exactly where we started a

3 half hour ago.

4 　　　　THE COURT:  I agree, Mr. Kanowitz, we haven't made

5 much progress and as little to do today other than set a date

6 for the preliminary injunction hearing.  I have an order that's

7 out there.  The District Court will do -- I certainly can't

8 dictate to the District Court what it can and cannot do.  I

9 have an order that directs parties to refrain from certain

10 actions.  The parties will do what they deem appropriate.  So

11 at this juncture other than fixing the time frame for a return

12 date on the preliminary injunction, I'm open to other issues

13 but I think that's paramount.

14 　　　　MR. SHAPIRO:  Mr. Bohling, didn't you say that you

15 needed to talk to DOJ Management to see whether or not you had

16 anything else to add to help the judge figure out this

17 procedural quagmire that we're in?

18 　　　　MR. BOHLING:  I'm happy to do that.  I don't think

19 our legal position is going to change.

20 　　　　MR. SHAPIRO:  Okay.

21 　　　　MR. BOHLING:  And I certainly -- I understand it's

22 not necessarily popular but I believe it's correct and that's

23 the essence of our position is that this is something that the

24 District Court should get to decide and I think for many of the

25 reasons that Mr. Shapiro explained that this is overdue.

1          THE COURT:  Well then let's discuss a date for the

2  return date of the preliminary injunction.

3          Mr. Aulet?

4          MR. KANOWITZ:  Your Honor?

5          THE COURT:  Yes.

6          MR. KANOWITZ:  Sorry.  I was going to say the

7  parties met and conferred on that --

8          THE COURT:  Yes.

9          MR. KANOWITZ:  -- and subject to Your Honor's

10  availability.  Does June 15th work for a hearing?  We see this

11  and we spoke really as something that's going to be oral

12  argument on a fact pattern that I think everyone has agreed to.

13  I mean most of these issues are legal.  Maybe it's some mixed

14  question of fact and law but I don't think anybody is going to

15  want witnesses or those things.  I mean we've discussed this

16  but I'll let the Committee and the DOJ talk through those

17  issues.  So, I see this as, you know, a hearing that we could

18  either do in person or by Zoom, a 90-minute type of hearing.

19  If Your Honor is prepared to do that, the 15th works for us,

20  again, subject to Your Honor's approval.

21          THE COURT:  Mr. Shapiro, how does that work on your

22  end?

23          MR. SHAPIRO:  If we could get a stipulated fact

24  record, Your Honor, with the indictment, the four seizure

25  warrants/orders and I believe there was one other document, a

23

1  bill of particulars into the record without any kind of

2  objection, I ask the Court respectfully to take judicial notice

3  of those, we may be able to do this without a witness, Your

4  Honor.  So it's a question of getting those exhibits into the

5  record.

6          THE COURT:  I would think you all could.  It doesn't

7  seem to be, at least anything that I've read or heard to date

8  suggests that there's factual issues at play other than

9  possibly the disposition of funds is deposited by these

10  defendants and how they made their way through BlockFi's

11  various accounts and activity but even that should be --

12          MR. KANOWITZ:  And can I touch on that, Judge --

13          THE COURT:  Yes, please.

14          MR. KANOWITZ:  -- because that's a key issue, right?

15  You know, one of the issues we talked about earlier with the

16  DOJ is you're looking to seize assets.  What if they don't

17  exist?  What if we can't identify them?  And, you know, the

18  Committee put it out there in their papers and I don't know if

19  anybody is going to have a witness to be able to give you that

20  says these assets that were actually given by the defendants,

21  you know, the criminal defendants still exist.  It's going to

22  be unknown and there's just going to have to be certain

23  assumptions made that like assets exist as opposed to specific

24  assets and does that matter because that issue is not going to

25  be able to determined at the preliminary injunctive hearing.  I

1   could tell everybody that now.

2           THE COURT:  Well, I will certainly be --

3           MR. SHAPIRO:  What could be determined, Your Honor,

4   and if I might, I mean what could be determined is that the

5   debtor was prepared to stipulate of what the amounts were in

6   those accounts on the day that the seizure warrants were served

7   and what they were able to turn over.  So, the asset of it

8   being some unknown amount.  The debtors have agreed as to what

9   the amounts actually are.

10          MR. KANOWITZ:  We have the coin count exactly down.

11  We have the values down on multiple different times, so the

12  stipulation that we have is the exact coin count and the exact

13  values as of November 16th, less the loan amounts due plus

14  interest, and then the excess goes to the Government.  That's

15  the way the stipulation reads.  That's what we'd be able to put

16  into the record as a stipulated fact.

17          MR. AULET:  And, Your Honor, I don't think that the

18  Committee would object about what the, you know, the Notional

19  account balance was on those accounts.  We would object to any,

20  you know, attempted entry of the stipulation as an admission

21  that the specific assets that the accused criminals deposited

22  at BlockFi remain at BlockFi.  I think we put in our papers

23  that we can see some of them are not present anywhere at the

24  debtors.

25          But I think that, like Mr. Kanowitz says, we're not

25

1  going to object or put the Government on to prove their

2  indictment or anything like that.  You know, that is not facts

3  that we're contesting.  We're contesting what the legal effect

4  was of the seizure warrant given the structure of how BlockFi

5  set up its accounts and if delivering the seizure warrant

6  actually gave the Government title to, you know, bitcoins or if

7  it gave the Government title to a note that essentially read

8  IOU one bitcoin, signed Zac Prince.

9         And so assuming that the Government is not looking to

10 prove that the specific bitcoins deposited remain at BlockFi, I

11 think that we're going to have undisputed facts.  If the

12 Government wants to attempt to trace the bitcoins, I think

13 we're all going to need a little more time but I suspect that

14 we're going to find that those went to Alameda Research.

15        And the only other thing I would note is, you know,

16 the Committee was appointed by the Department of Justice and

17 what has given fiduciary obligations by the Bankruptcy Code and

18 we don't appreciate the veiled threat that the Committee is

19 committing a crime here by seeking to discharge its fiduciary

20 duties.

21        THE COURT:  Fair enough.

22        MR. SHAPIRO:  On the other hand, Your Honor, in the

23 Third Circuit the Committee doesn't have standing yet to pursue

24 any claims and it doesn't have standing to pursue anything in

25 the Washington District Court so I mean we reserve our right to

1  object to that and the motion papers as well and we'd be glad

2  to try to work out a stipulated record and if we can, then I

3  think Mr. Kanowitz is correct, it will be a relatively short

4  hearing, probably no longer than two hours.  But if we can on

5  particular fact that the Criminal Division feels has to be

6  presented, then we may have to subpoena somebody from the

7  debtor to take the stand or maybe even bring in someone, you

8  know, who works for the Government.

9         THE COURT:  Well, for planning purposes I will

10 accommodate.  I am out traveling on the 14th but I'll make sure

11 I'm back for the 15th but we'll schedule this for the afternoon

12 on the 15th.

13        MR. SHAPIRO:  Okay, thank you, Your Honor.  Thank

14 you.

15        THE COURT:  Assuming it's legal argument, the rule I

16 have is attorneys are always welcome to come into court.  In

17 fact, I always favor appearances but I understand traveling

18 issues.  I'm happy to undertake this by Zoom unless we are

19 having an evidentiary hearing.  If we're going to have a

20 witness, then I'm going to require that it be done live and in

21 person.  I don't foresee that as being required.  I'm sure you

22 can come up with stipulated facts and then argue off those

23 facts.  If we have to spill in, God forbid, spill into the

24 Friday, the following day, we can, but we'll set it for one

25 o'clock on the 15th as a return date.  Ah, I'm getting a note

1 from people who know better.

2                    (Court/clerk discussion)

3         THE COURT:  If you don't mind, let's try to do this

4 at two o'clock.

5         MR. SHAPIRO:  Thank you, Your Honor.

6         THE COURT:  I've already moved things to one o'clock.

7 Maybe we'll move them up a little bit and so I'll give you

8 enough time.  I understand lawyers, two hours is usually at

9 least three to four hours but we'll get it done that afternoon.

10 If there can be further discussions, and I know the debtor has

11 undertaken this with DOJ and they've done well at it to date,

12 if you can accommodate and get yourselves more time and get the

13 Court more time, the Court will endeavor to accommodate as far

14 as calendaring if you want to push this a little further on.

15         MR. AULET:  And, Your Honor, the only other thing I'd

16 note, we'll continue discussions with the DOJ but we may need

17 to seek emergency relief if the hearing on the motion to compel

18 continues to go forward on the current schedule.  I just wanted

19 to make sure that that was noted for Your Honor.

20         THE COURT:  I'm a phone call away.  I think you've

21 all discovered that.

22         MR. SHAPIRO:  Thank you, Your Honor.  I also would

23 like to just note that the Government is not consenting to

24 jurisdiction here and we reserve our right to argue in our

25 motion to dismiss or answer if it comes to that, that the Court

1  does not have jurisdiction over these particular assets.

2          THE COURT:  By all means and I don't take offense.

3  Bear with me one second.

4          COURT CLERK:  You have one hearing scheduled for

5  today.  It's a motion to seal that we understood was going to

6  be adjourned.  Do we have a new date for that?

7          MR. KANOWITZ:  And just one other issue, Judge?

8          THE COURT:  It may be the same, but my clerk is

9  right.  We got a motion to seal on for today.  I don't know --

10          MR. KANOWITZ:  That was --

11          THE COURT:  -- if that was going to be adjourned.  Do

12  you know how much time you need for that?

13          MR. AULET:  Your Honor, I believe that we, the

14  debtors, and the U.S. Trustee had agreed that the motion to

15  seal which is the motion to seal the Committee's report --

16          THE COURT:  Right.

17          MR. AULET:  -- would be best heard some time after

18  the mediation so a date after June 6th.

19          THE COURT:  All right.  We have a BlockFi disclosure

20  statement here whatever that's worth at this juncture on for

21  June 20th.  Why don't we just put it on for that date and we

22  can move it as needed?

23          MR. AULET:  That works for the Committee, Your Honor.

24          THE COURT:  All right, thank you.

25          Mr. Kanowitz, you had another issue?

29

1          MR. KANOWITZ:  Well, Your Honor's order directed an

2    opposition to the motion by June 2nd so now that we're moving

3    the, you know, hearing date, I hate to be, you know, in

4    contempt of yet another order on this issue so I'd like to

5    request that we have an extension of time to answer.

6    Obviously, and I'm sure the Government wants the same, if we're

7    going to do a stipulated fact pattern which would be beneficial

8    to all, I think, it may take some time.  You had us responding

9    within three days of the hearing.  I'm happy to respond within

10   three days of the hearing.  If the Committee thinks they need a

11   little bit more time to digest our papers, you know, I'm okay

12   too.  But I think we should agree on a date so that we don't

13   have another --

14          THE COURT:  I think that makes sense.  I can put out

15   there June 12th which is a Monday, that way hopefully not

16   ruining anybody's holiday weekend as well.

17          MR. KANOWITZ:  Close of business by June 12th is fine

18   for us.

19          THE COURT:  Mr. Aulet, that works?

20          MR. SHAPIRO:  That is fine for the Government, Your

21   Honor.  Thank you.

22          THE COURT:  Mr. Shapiro, thank you.

23          Mr. Aulet?

24          MR. AULET:  Their papers being filed by close of

25   business on June 12th works for the Committee, Your Honor.

1        THE COURT:  That's fine.  I'll expect something on

2   the evening of June 14th in response, I have no doubt.

3        All right, I do appreciate everybody's candor and

4   professionalism.  I understand the competing positions.  And as

5   we started out, these are interesting and challenging issues

6   and will continue to be so, so I look forward to we'll call it

7   further education.  Take care, folks.

8        UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

9        UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

10               * * * * *

12          **C E R T I F I C A T I O N**

13        I, MARY POLITO, court approved transcriber, certify

14   that the foregoing is a correct transcript from the official

15   electronic sound recording of the proceedings in the above-

16   entitled matter and to the best of my ability.

17

18

19   /s/ Mary Polito

20   MARY POLITO

21   J&J COURT TRANSCRIBERS, INC.      DATE:  May 26, 2023

22

23

24

25