**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al.*,<br>　　　　　　　　　Debtors.[1] | Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>Adv. Pro. No. 23-_____ (MBK) |
| BLOCKFI LENDING LLC,<br>　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>DIGISTAR NORWAY AS;<br>NESSIM-SARIEL GAON; and<br>FIORENZO MANGANIELLO;<br><br>　　　　　　　Defendants. | |

**<u>BLOCKFI LENDING, LLC'S COMPLAINT AGAINST DIGISTAR NORWAY AS,
NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO</u>**

---

[1] The Debtors in these chapter 11 cases (the "<u>Debtors</u>"), along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A)); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

BlockFi Lending LLC ("BlockFi Lending"), as a debtor and debtor in possession in the above-captioned chapter 11 cases and as plaintiff in the above-captioned adversary proceeding, brings this complaint (this "Complaint") against Digistar Norway AS ("Digistar"), Nessim-Sariel Gaon ("Gaon"), and Fiorenzo Manganiello ("Manganiello," and together with Digistar and Gaon, the "Defendants").  In support, BlockFi Lending alleges as follows:

## NATURE OF THE CASE

1.       Digistar is in the business of mining cryptocurrency.  To finance its operations and purchase mining equipment, Digistar borrowed over $37 million from BlockFi Lending.  To secure it obligations to BlockFi Lending, Digistar granted BlockFi Lending a security interest in a significant amount of Collateral (as defined herein).  In addition, BlockFi Lending protected itself by obtaining a wide-ranging set of written guaranties from two of Digistar's "parents"—Gaon and Manganiello.  Unfortunately, Digistar has defaulted on its contractual obligations to BlockFi Lending and failed to repay any of the amounts Digistar borrowed.  Likewise, Gaon and Manganiello have entirely refused to honor their guarantee obligations to BlockFi Lending.  Left with no alternative, BlockFi Lending brings this adversary proceeding to enforce its contractual rights and recover the substantial amounts Defendants owe to BlockFi Lending for the benefit of BlockFi Lending's bankruptcy estate.

2.       Specifically, BlockFi Lending seeks to enforce the terms of—and BlockFi Lending's rights under and pursuant to—an August 6, 2021 Facility and Security Agreement between Digistar, as Borrower, and BlockFi Lending, as Lender (the "Loan Agreement").[2]  In connection with the Loan Agreement, BlockFi Lending and Digistar entered into a number of

---

[2] A true and correct copy of the Loan Agreement is attached to this Complaint as **Exhibit A**. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

additional "<u>Transaction Documents</u>," as that term is defined in the Loan Agreement (together with the Loan Agreement, the "<u>Loan Documents</u>").  Digistar has defaulted on its obligations under the Loan Documents and has failed to satisfy its obligations under the Loan Documents despite BlockFi Lending's delivery to Digistar of written notice of default and demand for payment of all obligations due and payable under the Loan Agreement.

3.      BlockFi Lending also seeks to enforce the terms of—and BlockFi Lending's rights under and pursuant to—a corresponding August 6, 2021 Parent Representation Letter among Gaon and Manganiello, on the one hand, and BlockFi Lending, on the other hand (the "<u>Parent Guarantee</u>").[3]  Gaon and Manganiello, as guarantors under the Parent Guarantee, have defaulted on their obligations under the Parent Guarantee, despite BlockFi Lending's delivery of written notice to Gaon and Manganiello of default and demand for payment of all obligations due and payable under the Parent Guarantee.

4.      In addition to their respective defaults under the Parent Guarantee and the Loan Documents, as applicable, Defendants have failed and refused to turnover property of BlockFi Lending's bankruptcy estate that, upon information and belief, is within one or more of Defendants' possession, custody, or control.  Accordingly, BlockFi Lending is also seeking turnover of property of its bankruptcy estate pursuant to 11 U.S.C. § 542 and to enforce the automatic stay pursuant to 11 U.S.C. § 362(a)(3) as a result of Digistar's continued possession of, and exercise of control over, property of BlockFi Lending's bankruptcy estate.

## <u>JURISDICTION AND VENUE</u>

5.      This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") because, *inter alia*, this matter is a

---

[3] A true and correct copy of the Parent Guarantee is attached to this Complaint as **Exhibit B**.

proceeding to (a) recover money or property belonging to the Debtors' estates, (b) obtain an injunction seeking to enforce the automatic stay pursuant to sections 362(a)(3) and (k) of the Bankruptcy Code,  and (c) obtain a declaratory judgment relating to the foregoing.  FED. R. BANKR. P. 7001(1), (2) and (9).

6.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 and *In the matter of: Standing Order of Reference to Bankruptcy Court under Title 11,* Standing Order of Reference 12-1, dated September 18, 2012.

7.     BlockFi Lending brings this adversary proceeding in connection with the above-captioned chapter 11 cases, which are pending in the United States Bankruptcy Court for the District of New Jersey, Trenton Division.

8.     This is a core proceeding under 28 U.S.C. §157(b).  This Complaint asserts claims concerning the administration of BlockFi Lending's bankruptcy estate and commences a proceeding affecting the liquidation of the assets of BlockFi Lending's bankruptcy estate.  *See* 28 U.S.C. § 157(b)(2)(A) and (O).  Furthermore, through this Complaint, BlockFi Lending is seeking entry of an order and/or judgment (a) enforcing the automatic stay pursuant to section 362(a)(3) of the Bankruptcy Code and (b) for the turnover of property of the Debtors' estates pursuant to sections 541 and 542 of the Bankruptcy Code.  *See* 28 U.S.C. § 157(b)(2)(E) and (G).

9.     BlockFi Lending consents to the entry of final orders or judgments by this Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10.     Venue for this adversary proceeding is proper before this Court under 28 U. S. C. § 1409.  This proceeding arises in or relates to the chapter 11 cases.

11.    This Court has personal jurisdiction over Digistar because Digistar has the minimum contacts with the United States and this judicial district necessary for the Bankruptcy Court to exercise personal jurisdiction over Digistar, both generally and as specifically related to the Loan Agreement.  For example, in entering into the Loan Agreement, Digistar knowingly and purposefully contracted with BlockFi Lending, which Digistar acknowledged in the Loan Agreement is a "Delaware limited liability company" with a principal place of business located in Jersey City, New Jersey, which is within this judicial district.  Further, Digistar submitted to the personal jurisdiction of courts within the United States for the resolution of all disputes concerning the Loan Agreement and waived challenges to personal jurisdiction in such courts.  Thus, Digistar cannot argue that no court of the United States has personal jurisdiction over Digistar or that it is somehow unfair to litigate this matter within the United States.  Maintaining venue of this adversary proceeding in this Court also comports with the traditional notions of fair play and substantial justice.  While the Loan Agreement provides for the resolution of claims related to the Loan Agreement in the state or federal courts within the State of Delaware, BlockFi Lending's chapter 11 case is pending in this Court, this is a core proceeding, and BlockFi Lending submits that venue for the resolution of this matter is proper in this Court.  *See, e.g., Kurz v. EMAK Worldwide, Inc.*, 464 B.R 635, 641 (Bankr. D. Del. 2011) (analyzing precedent and concluding that forum selection clauses are unenforceable in core proceedings).  Moreover, this Court has personal jurisdiction over Digistar pursuant to New Jersey's long-arm-statute and/or Federal Rule of Civil Procedure 4(k)(2).

12.    Similarly, this Court has personal jurisdiction over Gaon and Manganiello because both individuals have the minimum contacts with the United States and this judicial district necessary for the Bankruptcy Court to exercise personal jurisdiction over Gaon and Manganiello,

both generally and as specifically related to the Parent Guarantee.  For example, by entering into

the Parent Guarantee, both Gaon and Manganiello knowingly and purposefully contracted with

BlockFi Lending, which they acknowledged in the Parent Guarantee is a "Delaware limited

liability company."  Further, both Gaon and Manganiello submitted to the personal jurisdiction of

courts within the United States for the resolution of all disputes concerning the Parent Guarantee

and waived challenges to personal jurisdiction in such courts.  Thus, Gaon and Manganiello cannot

argue that no court of the United States has personal jurisdiction over either Gaon or Manganiello

or that it is somehow unfair to litigate this matter within the United States.  Maintaining venue of

this adversary proceeding in this Court also comports with the traditional notions of fair play and

substantial justice.  While the Parent Guarantee provides for the resolution of claims related to the

Loan Agreement in the state or federal courts within the State of Delaware, BlockFi Lending's

chapter 11 case is pending in this Court, this is a core proceeding, and BlockFi Lending submits

that venue for the resolution of this matter is proper in this Court.  *See, e.g., EMAK Worldwide*,

464 B.R at 641.  Moreover, this Court has personal jurisdiction over both Gaon and Manganiello

pursuant to New Jersey's long-arm-statute and/or Federal Rule of Civil Procedure 4(k)(2).

## THE PARTIES

13.    BlockFi Lending is a company organized under the laws of the State of Delaware.

14.    Digistar is a Norwegian limited liability company.  In the Loan Agreement, Digistar

agreed that it "irrevocably waives personal service of process and consents to process being served

in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or

overnight delivery (with evidence of delivery) to such party at the address in effect for notices to

it under this Agreement and agrees that such service shall constitute good and sufficient service of

process."  Digistar's address for notices under the Loan Agreement is: Digistar Norway AS, c/o

Simonsen Vogt Wigg, Filipstad Brygge 1, 0252 Oslo Norway, Attn: Christine Tan Lauten.

Accordingly, and by its agreement, Digistar may be served with process by mailing a copy of this Complaint and the related summons to Digistar via overnight delivery, with evidence of delivery, at the foregoing address, or as otherwise provided by law.

15.     Gaon is an individual residing at 3A Linhope Street NW16ED London, United Kingdom.  In the Parent Guarantee, Gaon agreed that he "irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process."  Accordingly, and by his agreement, Gaon may be served with process by mailing a copy of this Complaint and the related summons to him via overnight delivery, with evidence of delivery, at 3A Linhope Street NW16ED, London, United Kingdom, or as otherwise provided by law.

16.     Manganiello is an individual residing at Avenue Krieg 13 1208 Geneva, Switzerland.  In the Parent Guarantee, Manganiello agreed that he "irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process."  Accordingly, and by his agreement, Manganiello may be served with process by mailing a copy of this Complaint and the related summons to him via overnight delivery, with evidence of delivery, at Avenue Krieg 13 1208 Geneva, Switzerland, or as otherwise provided by law.

## **FACTUAL BACKGROUND**

17.     In the ordinary course of BlockFi Lending's business, BlockFi Lending enters into loan agreements with certain parties pursuant to which BlockFi Lending lends funds to those parties.

### **A.  The Digistar Loan Agreement**

18.     On or about August 6, 2021, BlockFi Lending and Digistar entered into the Loan Agreement.  The Loan Agreement is a valid and enforceable written contract governed by the laws of the State of Delaware.

19.     Under the Loan Agreement, BlockFi Lending loaned Digistar a principal amount of not less than $37,242,011.13 (the "Principal Amount").  On information and belief, Digistar used the Principal Amount to, *inter alia*, finance Digistar's purchase of the "Purchased Mining Equipment," as that term is defined in the Loan Agreement.  The Purchased Mining Equipment includes, without limitation, miners used in the extraction of digital currency such as Bitcoin ("BTC").

20.     Under the Loan Agreement, and in consideration for BlockFi Lending providing the Loan to Digistar, Digistar granted BlockFi Lending a security interest in the "Collateral," as that term is defined in the Loan Agreement.  The Collateral included, without limitation, the Purchased Mining Equipment and "all of [Digistar's] right, title and interest in . . . (ii) Hash Rate Fees and Deposit Account."  Loan Agreement § 4.4(a)(ii).[4]

---

[4] "Hash Rate Fees" are defined in the Loan Agreement as "any and all fees generated by, or in connection with, the selling of, or providing the use of, the hashing power service with the Purchased Mining Equipment from time to time."  Loan Agreement § 1.1.  "Deposit Account" is defined in the Loan Agreement as "those certain accounts of [Digistar] at DNB Bank ASA, Norway."  *Id.*

21.     Under section 4.2 of the Loan Agreement, Digistar agreed to certain reporting

obligations, including, *inter alia*, the obligation to provide the following reporting to BlockFi

Lending (collectively, the "Reporting Obligations"):

(a) audited financial statements of Borrower within 90 calendar days following the end of
Borrower's fiscal year;

(b) quarterly unaudited financial statements of Borrower within 30 calendar days following
the end of each of Borrower's fiscal quarters (including a profit and loss account, balance
sheet, and cash flow statement);

(c) . …a list of any serial numbers and the purchase price associated with the Purchased
Mining Equipment;

(d) monthly operating and performance reports of the Purchased Mining
Equipment…within 20 calendar days following the end of each month;

(e) upon not less than five (5) days advance written notice by Lender…access to any
reporting and/or monitoring platform made available by Host or used in connection with
the Purchased Mining Equipment…

(f) upon written request by Lender, which shall be no more than once per calendar month:
(i) evidence of any payments required to be made under any agreements with Host(s) of
the Designated Location; and (ii) …evidence of the payment of such Critical Services due
and payable without delinquency in the month preceding such request by Lender;

…

(h) upon written request by Lender, which shall be no more than once per calendar quarter,
information, in form and substance, reasonably satisfactory to Lender regarding the
performance of the Purchased Mining Equipment, including but not limited to the version
of firmware and/or software running on the Purchased Mining Equipment.

Loan Agreement § 4.2.

22.     Pursuant to section 4.9(l) of the Loan Agreement, Digistar agreed that, subject to

certain exceptions not relevant here, "[Digistar] shall . . . (l) not sell, lease or otherwise dispose of,

any Collateral, or relinquish possession of any Collateral . . . ."  Section 4.9(l) also provides for

the following exception to the Loan Agreement's prohibition of Digistar's sale or other disposition

of Collateral:

> *so long as no Event of Default has occurred* and is continuing or would result therefrom, Borrower may dispose of and use the Hash Rate Fees and any assets in the Deposit Account and any other assets not pledged as Collateral in the ordinary course of business.

Loan Agreement § 4.9(l)(ii) (emphasis added).

23.    As expressly provided in the above-quoted section 4.9(l)(ii) of the Loan Agreement,

the exception contained therein is only applicable "so long as no Event of Default has occurred."

The Loan Agreement is clear that, upon the occurrence of an event of default by Digistar, Digistar

shall not sell, lease, or otherwise dispose of any Collateral.

24.    Furthermore, section 4.13(b) of the Loan Agreement provides that "[i]f an Event of

Default has occurred, the Hash Power Agreement shall terminate and Lender shall be entitled to

use the hash power from the Purchased Mining Equipment in accordance with the Springing Hash

Power Agreement." Loan Agreement § 4.13(b).

**B.  The Parent Guarantee**

25.    On or about August 6, 2021, Gaon and Manganiello, on the one hand, and BlockFi

Lending, on the other hand, entered into the Parent Guarantee.  The Parent Guarantee is a valid

and enforceable written contract governed by the laws of the State of Delaware.  Gaon and

Manganiello are jointly and severally liable for their obligations under the Parent Guarantee.  On

information and belief, at all times relevant to the transactions described in this Complaint, Gaon

and Manganiello collectively owned one hundred percent of the equity interests in Digistar.

26.    In the Parent Guarantee, Gaon and Manganiello "represent[ed] and warrant[ed] and

covenant[ed] that they shall not take any action, individually or together, to … (ii) cause Borrower

to breach § 4.9(g) or § 4.9(l) of the [Loan Agreement]." Parent Guarantee ¶ 3.  The Parent

Guarantee provides that Gaon and Manganiello are jointly and severally liable to BlockFi Lending for the "actual losses, costs or expenses suffered by [BlockFi Lending], whether direct or indirect," resulting from breaches of the obligations of Digistar, Gaon and Manganiello listed in the Parent Guarantee.

27.     Further, in the Parent Guarantee, Gaon and Manganiello agreed that their liability under the Parent Guarantee would terminate only upon "payment in full of the Secured Obligations" under the Loan Agreement.  In turn, the Loan Agreement defined "Secured Obligations" as "all of [Digistar's] obligations (including any nonmonetary obligations) under this [Loan] Agreement."  Loan Agreement § 1.1.

28.     Accordingly, upon any breach of the obligations set forth in the Parent Guarantee, Gaon and Manganiello are jointly and severally obligated to repay to BlockFi Lending all amounts Digistar owes to BlockFi Lending under the Loan Agreement.

**C. Defaults Under the Loan Agreement and Parent Guarantee**

29.     On or about June 8, 2022, Digistar defaulted on its obligations to make payments of principal and interest to BlockFi Lending under sections 2.2 and 2.3 of the Loan Agreement (the "Payment Default").  On July 12, 2022, BlockFi Lending gave Digistar written notice of the occurrence of the Payment Default.

30.     Digistar has not cured the Payment Default.  As a result of Digistar's failure to cure, BlockFi Lending accelerated Digistar's indebtedness under the Loan Agreement, and all of Digistar's obligations under the Loan Documents are now due and payable in full.

31.     Prior to the occurrence of the Payment Default, Digistar was in default of certain of its Reporting Obligations.  For example, leading up to the Payment Default, Digistar failed to comply with its Reporting Obligations under sections 4.2(b), (c), and (d) of the Loan Agreement

by failing to provide the required (i) quarterly unaudited financial statements, (ii) serial numbers for the Purchased Mining Equipment, and (iii) monthly operating and performance reports for the Purchased Mining Equipment.

32.    Since the Payment Default, Digistar has continued to breach its Reporting Obligations and has failed to provide the information required under, without limitation, sections 4.2(a)-(g) of the Loan Agreement that have come due since the occurrence of the Payment Default, despite multiple written requests for such information by BlockFi Lending delivered to, at various instances, each of Digistar, Gaon and Manganiello.  Specifically, by letter dated August 31, 2022 to Digistar, with a copy to Gaon and Manganiello, BlockFi Lending made written requests for reporting under sections 4.2(a)-(c), (g) and (h) of the Loan Agreement.  Subsequently, on February 13, 2023, BlockFi Lending made a request via email to Digistar, via Manganiello, requesting that Digistar comply with its ongoing Reporting Obligations and that it specifically provide the information required under sections 4.2(f) and (h) of the Loan Agreement.  Similarly, on March 23, 2023, BlockFi Lending made a request via email to Digistar requesting that Digistar comply with its ongoing Reporting Obligations and that it specifically provide the information required under sections 4.2(a), (f), and (h) of the Loan Agreement.  Despite BlockFi Lending's repeated requests, the only reporting that Digistar has provided to BlockFi Lending to date are 2021 year-end financial statements and an ad hoc cash flow model.  Thus, Digistar has breached, and continues to breach, its Reporting Obligations through the date of the filing of this Complaint. Upon information and belief, Gaon and Manganiello have knowledge of such breaches of Digistar's Reporting Obligations. BlockFi Lending has suffered, and continues to suffer, damages due to Digistar's failure to comply with its Reporting Obligations.

33.    As of May 25, 2023, Digistar owed the principal amount of not less than $31,408,870.74, plus all interest, costs, fees and expenses payable to BlockFi Lending under the Loan Documents, including but not limited to BlockFi Lending's out of pocket expenses (including legal fees) incurred in enforcing and preserving BlockFi Lending's security interest in the Collateral and rights under the Loan Documents, the exact amount of which is to be determined at trial (collectively, the "Indebtedness").  Digistar ignored BlockFi Lending's written notice of the Payment Default and has not responded.  Digistar has not paid BlockFi Lending any of the Indebtedness Digistar owes to BlockFi Lending under the Loan Agreement.

34.    Effective as of the date of the Payment Default, the Hash Power Agreement (as defined in the Loan Agreement) was terminated and BlockFi Lending was entitled to use the hash power[5] from the Purchased Mining Equipment in accordance with the Springing Hash Power Agreement (as defined in the Loan Agreement).  Loan Agreement § 4.13(b).  As a result, BlockFi Lending has a legal and/or equitable interest in the hash power generated, and continuing to be generated, from the operation of the Purchased Mining Equipment since the date of the Payment Default.

35.    Upon information and belief, Hash Rate Fees received by Digistar since the date of the Payment Default constitute proceeds of the hash power in which BlockFi Lending held or holds a legal and/or equitable interest. BlockFi Lending has a legal and/or equitable interest in all Hash Rate Fees paid, earned, or received, or being paid, earned, or received, resulting from hash power from the operation of the Purchased Mining Equipment since the date of the Payment Default.

---

[5] "Hash power" is essentially the computing power of the mining equipment used to mine digital currency, including BTC.  A digital currency miner receives digital currency rewards (e.g., BTC) in proportion to the hash power it contributes to mining operations. Thus, from and after the Payment Default, BlockFi Lending, not Digistar, was entitled to and should have received the BTC allocable to the hash power contributed by the Purchased Mining Equipment.

36.    Digistar has breached its obligations under section 4.13 of the Loan Agreement and has not permitted BlockFi Lending to use and control the hash power from the Purchased Mining Equipment as required by the Loan Agreement.

37.    From and after the date of the Payment Default, Digistar was prohibited from selling, leasing, or otherwise disposing of any Collateral in its possession, including (i) any Hash Rate Fees that have been generated by operation of the Purchased Mining Equipment since the Payment Default and (ii) funds held in or disbursed from the Deposit Account since the Payment Default.

38.    On information and belief, Digistar breached its obligations under section 4.9(l) of the Loan Agreement by (i) selling, leasing, or otherwise disposing of the Hash Rate Fees in its possession after Digistar was in default of its obligations under the Loan Agreement and/or (ii) transferring or otherwise disbursing funds from the Deposit Account after Digistar defaulted on its obligations under the Loan Agreement.

39.    Digistar's breaches of its obligations under § 4.9(l) of the Loan Agreement constitute a breach of Gaon's and Manganiello's obligations under the Parent Guarantee.  Thus, under the Parent Guarantee, Gaon and Manganiello are now liable to BlockFi Lending for the full amount of the Indebtedness, including but not limited to BlockFi Lending's out of pocket expenses (including legal fees) incurred in enforcing and preserving BlockFi Lending's security interest in the Collateral and rights under the Loan Agreement.

40.    On March 28, 2023, BlockFi Lending demanded in writing that Gaon and Manganiello satisfy their obligations under the Parent Guarantee and pay BlockFi Lending $30,370,845.34 in full in cash or cash equivalents not later than April 7, 2023.  BlockFi Lending renewed its demand on May 23, 2023.  Gaon and Manganiello ignored BlockFi Lending's

demands and have not responded, and they have not paid BlockFi Lending the amounts they owe

BlockFi Lending under the Parent Guarantee.

41.     All conditions precedent, if any, to BlockFi Lending's rights to (i) exercise and

enforce its rights under the Loan Documents and the Parent Guarantee, and (ii) recover from

Digistar, Gaon, and Manganiello under the Loan Documents and/or the Parent Guarantee have

been satisfied or waived.

## CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment Regarding the Loan Agreement

42.     BlockFi Lending restates and realleges all foregoing and subsequent factual

allegations as if fully set forth herein and incorporates them herein by reference.

43.     Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within

its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. §2201(a).  Bankruptcy Courts, as units of the district court, have the authority to issue

declaratory judgments.

44.     Courts may issue declaratory relief when "the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

45.     Valid and justiciable controversies regarding the interpretation of the Loan

Agreement have arisen that are properly presented for judicial relief under Bankruptcy Rules

7001(1), (2), and (9) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

46.     BlockFi Lending and Digistar entered into a valid and enforceable written contract in the form of the Loan Agreement and related Transaction Documents.

47.     BlockFi Lending has complied with all of its obligations under the Loan Agreement.

48.     BlockFi Lending has made a written demand to Digistar that Digistar comply with its obligations under the Loan Agreement, including without limitation Digistar's obligation to make payments to BlockFi Lending as required under the Loan Agreement.

49.     Digistar breached its obligations under the Loan Agreement by, *inter alia*, (i) failing to pay the amounts due and owing to BlockFi Lending under the Loan Agreement, despite BlockFi Lending's written demand for payment, (ii) on information and belief, by (a) selling, leasing, or otherwise disposing of the Hash Rate Fees in its possession after Digistar was in default of its obligations under the Loan Agreement and/or (b) transferring or otherwise disbursing funds from the Deposit Account after Digistar defaulted on its obligations under the Loan Agreement; (iii) by failing to comply with its Reporting Obligations under section 4.2 of the Loan Agreement; and/or (iv) by failing to allow BlockFi Lending to use the hash power from the Purchased Mining Equipment in accordance with the Springing Hash Power Agreement.

50.     Digistar's obligation to pay BlockFi Lending under the Loan Documents is a current obligation due and owing by Digistar to BlockFi Lending.

51.     BlockFi Lending requests the entry of an order and judgment pursuant to Bankruptcy Rules 7001(2) and 7009(9) and 28 U.S.C. §§ 2201-2202, the Declaratory Judgment Act declaring that:

    a.  The Loan Agreement is a valid and binding contract between BlockFi Lending and Digistar.

    b.  BlockFi Lending has complied with all of its obligations under the Loan Agreement.

c.  Digistar owes BlockFi Lending at least the Indebtedness under the Loan Agreement, the exact amount of which is to be determined at trial.

d.  BlockFi Lending has a valid claim against Digistar for an amount not less than the Indebtedness, the exact amount of which is to be determined at trial.

e.  BlockFi Lending has made demand to Digistar requesting payment of all amounts due and owing under the Loan Agreement.

f.  Digistar has failed to pay the Indebtedness to BlockFi Lending as the Loan Documents require.

g.  Digistar has failed to comply with its Reporting Obligations under section 4.2 of the Loan Agreement.

h.  Digistar is in default under the terms of the Loan Agreement.

i.  Digistar has failed to allow BlockFi Lending to use and control the hash power from the Purchased Mining Equipment in accordance with the Springing Hash Power Agreement and other Loan Documents.

j.  BlockFi Lending has a legal and/or equitable interest in the hash power generated by, and being generated by, the Purchased Mining Equipment since the date of the Payment Default.

k.  BlockFi Lending has a legal and/or equitable interest in the Hash Rate Fees that have been paid, earned, or received, or that are being paid, earned, or received, resulting from hash power from the Purchased Mining Equipment since the date of the Payment Default.

l.  The hash power generated by the Purchased Mining Equipment from the date of the Payment Default through the Petition Date constitutes property of BlockFi Lending and its bankruptcy estate.

m.  The hash power generated by the Mining Equipment from the Petition Date until such time as BlockFi Lending has received payment in full of the Indebtedness and all amounts owed pursuant to the Loan Document and the Parent Guarantee constitute property of BlockFi Lending and its bankruptcy estate.

n.  All Hash Rate Fees paid, earned, or received in connection with hash power generated by the Mining Equipment from the date of the Payment Default through the Petition Date constitute property of BlockFi Lending and its bankruptcy estate.

o.  All Hash Rate Fees paid, earned, or received in connection with hash power generated by the Mining Equipment from the Petition Date until such time as BlockFi Lending has received payment in full of the Indebtedness and all amounts owed pursuant to the Loan Documents and the Parent Guarantee constitute property of BlockFi Lending and its bankruptcy estate.

p.  Any use by Digistar of the hash power generated by the Mining Equipment since the Petition Date constitutes a violation of the automatic stay under 11 U.S.C. § 362(3).

q.   Any use by Digistar of any Hash Rate Fees paid, earned, or received in connection with hash power generated by the Mining Equipment since the Petition Date constitutes a violation of the automatic stay under 11 U.S.C. § 362(a)(3).

r.  Any use by Digistar of the cash collateral proceeds of (i) the hash power generated by the Mining Equipment since the Petition Date or (ii) the hash Rate Fees that have been paid, earned, or received in connection with hash power generated by the Mining Equipment since the Petition Date constitutes a violation of the automatic stay under 11 U.S.C. § 362(a)(3).

s.  Digistar is not entitled to any right of offset, recoupment, or other similar right against BlockFi Lending of the amounts due and owing from Digistar to BlockFi Lending under the Loan Documents.

## COUNT TWO
### Declaratory Judgment Regarding the Parent Guarantee

52.    BlockFi Lending restates and realleges all foregoing and subsequent factual allegations as if fully set forth herein and incorporates them herein by reference.

53.    Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).  Bankruptcy Courts, as units of the district court, have the authority to issue declaratory judgments.

54.    Courts possess jurisdiction to issue declaratory relief when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

55.    Valid and justiciable controversies regarding the interpretation of the Parent Guarantee have arisen that are properly presented for judicial relief under Bankruptcy Rules 7001(1), (2), and (9) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

56.    BlockFi Lending, on the one hand, and Gaon and Manganiello, on the other hand, entered into a valid and enforceable written contract in the form of the Parent Guarantee.  Gaon and Manganiello are jointly and severally liable to BlockFi Lending for their obligations under the Parent Guarantee.

57.    BlockFi Lending has complied with all of its obligations under the Parent Guarantee.

58.    BlockFi Lending has made a written demand to Gaon and Manganiello that they comply with their obligations under the Parent Guarantee, including without limitation Gaon's and Manganiello's obligations to make payments to BlockFi Lending as required under the Parent Guarantee.

59.    Gaon and Manganiello have breached their obligations under the Parent Guarantee by, *inter alia*, failing to pay the amounts due and owing to BlockFi Lending under the Parent Guarantee, despite BlockFi Lending's written demand for payment.

60.    Gaon's and Manganiello's joint and several obligations to pay BlockFi Lending under the Parent Guarantee is a current obligation due and owing by Gaon and Manganiello to BlockFi Lending.

61.    BlockFi Lending requests the entry of an order and judgment pursuant to Bankruptcy Rules 7001(2) and 7009(9) and 28 U.S.C. §§ 2201-2202, the Declaratory Judgment Act declaring that:

    a.  The Parent Guarantee is a valid and binding contract between BlockFi Lending, on the one hand, and each of Gaon and Manganiello, on the other hand.

b. BlockFi Lending has complied with all of its obligations under the Parent Guarantee.

c. Gaon and Manganiello each, jointly and severally, owe BlockFi Lending at least the Indebtedness under the Parent Guarantee, the exact amount of which is to be determined at trial.

d. BlockFi Lending has a valid claim against each of Gaon and Manganiello, jointly and severally, for an amount not less than the Indebtedness under the Parent Guarantee, the exact amount of which is to be determined at trial.

e. BlockFi Lending has made demand to Gaon and Manganiello requesting payment of all amounts due and owing under the Parent Guarantee.

f. Gaon and Manganiello each failed to pay the Indebtedness to BlockFi Lending as the Parent Guarantee requires.

g. Gaon and Manganiello are each in default under the terms of the Parent Guarantee.

h. Neither Gaon nor Manganiello are entitled to any right of offset, recoupment, or other similar right against BlockFi Lending of the amounts due and owing from Gaon and Manganiello, jointly and severally, to BlockFi Lending under the Parent Guarantee.

## COUNT THREE
### Breach of Contract Against Digistar Regarding the Loan Agreement

62. BlockFi Lending restates and realleges all foregoing and subsequent factual allegations as if fully set forth herein and incorporates them herein by reference.

63. BlockFi Lending and Digistar entered into a written valid and enforceable contract in the form of the Loan Agreement. BlockFi Lending has fully performed its contractual obligations under the Loan Agreement.

64. Under the Loan Agreement, BlockFi Lending loaned Digistar not less than $37,242,011.13, which Digistar accepted.

65. Under the Loan Agreement, Digistar agreed to repay to BlockFi Lending the amounts Digistar borrowed under the Loan Agreement.

66. Under section 4.2 of the Loan Agreement Digistar was required to comply with its Reporting Obligations.

67.    Under Section 4.13(b) of the Loan Agreement, upon the occurrence of the Payment Default, Digistar was obligated to allow BlockFi Lending to use and control the hash power from the Purchased Mining Equipment in accordance with the Springing Hash Power Agreement.

68.    BlockFi Lending has demanded that Digistar repay all outstanding amounts it owes to BlockFi Lending under the Loan Agreement.  Digistar has refused those demands.

69.    The amount due and owing to BlockFi Lending from Digistar under the Loan Agreement is not less than the Indebtedness, the exact amount of which is to be determined at trial.

70.    Digistar breached its obligations under the Loan Agreement by failing to repay to BlockFi Lending all amounts owed under the Loan Agreement.  In light of Digistar's failure to repay, Digistar is in default of its obligations under the Loan Agreement.

71.    On information and belief, Digistar further breached the Loan Agreement by (i) selling, leasing, or otherwise disposing of the Hash Rate Fees in its possession after Digistar was in default of its obligations under the Loan Agreement; (ii) transferring or otherwise disbursing funds from the Deposit Account after Digistar defaulted on its obligations under the Loan Agreement; (iii) by failing to comply with its Reporting Obligations under section 4.2 of the Loan Agreement; and/or (iv) by failing to allow BlockFi Lending to use the hash power from the Purchased Mining Equipment in accordance with the Springing Hash Power Agreement.

72.    Digistar's breaches of its obligations under the Loan Agreement have caused, and continue to cause, damage to BlockFi Lending in at least the amount of the Indebtedness, the exact amount of which is to be determined at trial.

73.    Digistar's breaches of its obligations under the Loan Agreement have also caused, and continue to cause, damage to BlockFi Lending in an amount to be determined at trial resulting

from Digistar's failure to allow BlockFi Lending to use the hash power from the Purchased Mining

Equipment in accordance with the Springing Hash Power Agreement.

74.     Digistar's breaches of its Reporting Obligations under the Loan Agreement have

also caused, and continue to cause, damage to BlockFi Lending in an amount to be determined at

trial resulting from Digistar's failure to provide BlockFi Lending with the information required by

section 4.2 of the Loan Agreement.

75.     BlockFi Lending is entitled to recover at least the Indebtedness from Digistar under

the Loan Agreement, the exact amount of which is to be determined at trial.

**COUNT FOUR**
**Breach of Contract Against Gaon and Manganiello Regarding the Parent Guarantee**

76.     BlockFi Lending restates and realleges all foregoing and subsequent factual

allegations as if fully set forth herein and incorporates them herein by reference.

77.     BlockFi Lending, on the one hand, and Gaon and Manganiello, on the other hand,

entered into a written valid and enforceable contract in the form of the Parent Guarantee.  Gaon

and Manganiello are jointly and severally liable to BlockFi Lending for their obligations under the

Parent Guarantee.

78.     BlockFi Lending has fully performed its contractual obligations under the Parent

Guarantee.

79.     Under the Parent Guarantee, Gaon and Manganiello jointly and severally

guaranteed many of Digistar's obligations under the Loan Agreement, including Digistar's

obligations set forth in section 4.9(l) of the Loan Agreement.

80.     As described above, on information and belief, Digistar breached its obligations

under section 4.9(l) of the Loan Agreement by (i) selling, leasing, or otherwise disposing of the

Hash Rate Fees in its possession after Digistar was in default of its obligations under the Loan

Agreement and/or (ii) transferring or otherwise disbursing funds from the Deposit Account after

Digistar defaulted on its obligations under the Loan Agreement.  Digistar's breaches of its

obligations under § 4.9(l) of the Loan Agreement constitute breaches of Gaon's and Manganiello's

joint and several obligations under the Parent Guarantee.

81.    Gaon and Manganiello further breached their obligations under the Parent

Guarantee by, *inter alia*, failing to pay the amounts due and owing to BlockFi Lending under the

Parent Guarantee.

82.    BlockFi Lending has made two written demands to Gaon and Manganiello that they

comply with their obligations under the Parent Guarantee, including without limitation Gaon's and

Manganiello's joint and several obligations to make the payments BlockFi Lending required under

the Parent Guarantee.

83.    The principal amount due and owing to BlockFi Lending from Gaon and

Manganiello, jointly and severally, is at least the Indebtedness, the exact amount of which is to be

determined at trial.

84.    Gaon's and Manganiello's breaches of their obligations under the Parent Guarantee

have caused, and continue to cause, damage to BlockFi Lending.

85.    BlockFi Lending is entitled to recover at least the Indebtedness from Gaon and

Manganiello, jointly and severally, under the Parent Guarantee, the exact amount of which is to be

determined at trial.

**COUNT FIVE**
**Turnover of Property of the Estate Under Section 542(a) of the Bankruptcy Code Against**
**All Defendants**

86.    BlockFi Lending restates and realleges all foregoing and subsequent factual

allegations as if fully set forth herein and incorporates them herein by reference.

87.    Bankruptcy Code section 542(a) provides, in pertinent part, that "an entity, . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

88.    Bankruptcy Code section 541(a) provides, in pertinent part, that the bankruptcy estate is comprised, among other things, of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).

89.    BlockFi Lending's interests in and to (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each, from the date of the Payment Default through the Petition Date, constitute property of BlockFi Lending's bankruptcy estate pursuant to section 541(a) of the Bankruptcy Code.

90.    Despite their obligation to do so, Defendants have failed to turn over to BlockFi Lending (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing from the date of the Payment Default through the Petition Date.

91.    BlockFi Lending's interests in (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing, from the Petition Date until such date as BlockFi Lending has received payment in full of the Indebtedness and all other amounts owed pursuant to the Loan Documents and the Parent

Guarantee constitute property of BlockFi Lending's bankruptcy estate pursuant to section 541(a) of the Bankruptcy Code.

92.     Despite their obligation to do so, Defendants have failed to turn over to BlockFi Lending (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing from the Petition Date until such date as BlockFi Lending has received payment in full of the Indebtedness and all other amounts owed pursuant to the Loan Documents and the Parent Guarantee.

93.     Defendants' actions refusing and preventing turnover of (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing since the date of the Payment Default have caused, and continue to cause, significant and irreparable harm to BlockFi Lending and its bankruptcy estate.

94.     On information and belief, (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing are in the possession, custody, or control of one or more of Defendants.

95.     Moreover, (i) the hash power generated from the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing are estate property that BlockFi Lending could use to pay ongoing operating expenses and other obligations and are not of inconsequential value to BlockFi Lending and its bankruptcy estate.

96.     As a result, pursuant to section 542(a) of the Bankruptcy Code, BlockFi Lending requests that the Court enter an order compelling Defendants to turn over (i) use and control of the hash rate power being generated by the Purchased Mining Equipment, (ii) the Hash Rate Fees paid, earned, or received resulting from hash power from the Purchased Mining Equipment, and (iii) the cash collateral proceeds of each of the foregoing to BlockFi Lending now and in the future as collected.

## COUNT SIX
**Violation of the Automatic Stay Pursuant to Bankruptcy Code Section 362(a)(3) Against Digistar**

97.     BlockFi Lending restates and realleges all foregoing and subsequent factual allegations as if fully set forth herein and incorporates them herein by reference.

98.     Bankruptcy Code section 362(a) operates as an automatic stay that protects BlockFi Lending and its estate.  11 U.S.C. § 362(a).

99.     Section 362(a)(3) provides:

[A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a)(3).

100.     Pursuant to the terms of the Loan Documents, upon Digistar's default, BlockFi Lending was entitled to use and control the hash power generated by the Purchased Mining Equipment.  Upon Digistar's default, BlockFi Lending was also entitled to the proceeds of the hash power, including without limitation Hash Rate Fees generated or earned from hash power generated by the Purchased Mining Equipment.  BlockFi Lending is similarly entitled to any cash collateral proceeds of each of the foregoing.

101.     Prior to the Petition Date, BlockFi Lending gave Digistar notice of the Payment Default that, pursuant to the Loan Documents, BlockFi Lending was entitled to the use, ownership,

and control of (i) the hash power generated by the Purchased Mining Equipment, (ii) all related Hash Rate Fees, and (iii) any cash collateral proceeds of each of the foregoing.

102.    Since the date of the Payment Default, Digistar has refused to comply with its obligations to grant BlockFi Lending the use and control of (i) the hash power generated by the Purchased Mining Equipment, (ii) all related Hash Rate Fees, and (iii) any cash collateral proceeds of each of the foregoing.

103.    Digistar was provided with notice of BlockFi Lending's bankruptcy filing.

104.    Since the Petition Date, and since receiving notice of the bankruptcy filing, Digistar has continued to refuse to comply with its obligations to grant BlockFi Lending the right to use and control (i) the hash power generated by the Purchased Mining Equipment, (ii) all related Hash Rate Fees, and (iii) any cash collateral proceeds of each of the foregoing.

105.    Digistar's continued and continuing refusal to deliver BlockFi Lending's rights to use and control (i) the hash power generated by the Purchased Mining Equipment, (ii) all related Hash Rate Fees, and (iii) any cash collateral proceeds of each of the foregoing, constitute acts "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

106.    Digistar has willfully violated the automatic stay by continuing to refuse to deliver BlockFi Lending's rights to use and control (i) the hash power generated by the Purchased Mining Equipment, (ii) all related Hash Rate Fees, and (iii) any cash collateral proceeds of each of the foregoing after the occurrence of the Petition Date.

107.    Section 362(k) of the Bankruptcy Code provides that a party "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and

attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §
362(k).

108.    Digistar's willful violations of the automatic stay under section 362(3) of the
Bankruptcy Code have damaged and injured BlockFi Lending.

109.    BlockFi Lending requests that the Court enter a judgment against Digistar and in
favor of BlockFi Lending awarding actual damages, including costs and attorneys' fees in
accordance with Section 362(k) of the Bankruptcy Code, in an amount to be proven at trial.

### COUNT SEVEN
### Promissory Estoppel Against All Defendants

110.    BlockFi Lending restates and realleges all foregoing and subsequent factual
allegations as if fully set forth herein and incorporates them herein by reference.

111.    In the alternative, Digistar promised to repay at least the Indebtedness, the exact
amount of which is to be determined at trial, to BlockFi Lending under the Loan Agreement.
Similarly, Gaon and Manganiello each agreed to be jointly and severally liable to BlockFi Lending
for at least the Indebtedness, the exact amount of which is to be determined at trial, under the
Parent Guarantee.

112.    Based on Defendants' promises of repayment (either via the Loan Agreement or
the Parent Guarantee) and the parties' prior course of dealing, BlockFi Lending reasonably relied
upon Defendants' affirmations that Defendants would repay the amounts BlockFi Lending loaned
to Digistar.

113.    BlockFi Lending relied on Defendants' promises in loaning Digistar at least the
principal amount of not less than $37,242,011.13.

114.    BlockFi Lending's reliance on Defendants' promises of repayment was both
reasonable and substantial.  BlockFi Lending would not have loaned any funds to Digistar if

Defendants did not agree to repay the amounts loaned under the Loan Agreement and the Parent Guarantee, as applicable.

115.    Defendants knew, or reasonably should have known, that BlockFi Lending was relying on Defendants' promises of repayment in the Loan Agreement and the Parent Guarantee, as applicable, when BlockFi Lending loaned funds to Digistar under the Loan Agreement.

116.    Defendants have failed to repay the amounts that Defendants owed to BlockFi Lending under the Loan Agreement and the Parent Guarantee, which is not less than the Indebtedness, the exact amount of which is to be determined at trial.  Injustice can only be avoided if Defendants' promises of repayment are enforced.

117.    BlockFi Lending's reliance on Defendants' promises of repayment resulted in injury to BlockFi Lending, which has caused reliance damages in the amount of not less than the Indebtedness.

## COUNT EIGHT
### Unjust Enrichment Against All Defendants

118.    BlockFi Lending restates and realleges all foregoing and subsequent factual allegations as if fully set forth herein and incorporates them herein by reference.

119.    Defendants have been unjustly enriched and obtained benefits as a result of the improper conduct alleged in this Complaint.

120.    As a result, BlockFi Lending seeks recovery of money damages for the benefits Defendants received at BlockFi Lending's expense and without justification.

## COUNT NINE
### Quantum Meruit Against All Defendants

121.    BlockFi Lending restates and realleges all foregoing factual allegations as if fully set forth herein and incorporates them herein by reference.

122.    BlockFi Lending loaned money to Digistar with the expectation that Digistar and/or Gaon and Manganiello would repay in full the loaned amounts to BlockFi Lending.

123.    Defendant knew, or should have known, that BlockFi Lending expected to be repaid in full for the money BlockFi Lending loan to Digistar.

124.    Defendants have failed to repay the amounts they owe to BlockFi Lending, as alleged in this Complaint.

125.    Defendants' failure to repay the amounts they owe to BlockFi Lending has damaged BlockFi Lending, as alleged in this Complaint.

126.    As a result, BlockFi Lending seeks recovery of money damages for the benefits Defendants received at BlockFi Lending's expense and without justification.

## COUNT TEN
### Attorneys' Fees and Costs Against All Defendants

127.    BlockFi Lending restates and realleges all foregoing and subsequent factual allegations as if fully set forth herein and incorporates them herein by reference.

128.    The actions and omissions of Defendants as set forth in this Complaint—including Defendants' failure to comply with their Reporting Obligations and to make payments to BlockFi Lending as required under the Loan Agreement and the Parent Guarantee, as applicable—required BlockFi Lending to retain (i) the undersigned legal counsel to represent it in this adversary proceeding and related collection actions to recover the amounts BlockFi Lending is owed from Defendants and (ii) Schjødt, a law firm in Norway, to represent it in connection with Digistar's defaults under the Loan Agreement including collateral recovery actions in Norway.  BlockFi Lending is obligated to pay its legal counsel their reasonable hourly fees for their services (the "Attorneys' Fees").

129.    BlockFi Lending is entitled to recover its reasonable Attorneys' Fees and costs incurred in connection with the Complaint from Defendants under, *inter alia*, the express terms of the Loan Agreement and the Parent Guarantee (as applicable) and applicable law.

130.    As a result of the foregoing, BlockFi Lending is entitled to a judgment against Defendants in the amount of its reasonable Attorneys' Fees and costs with such amounts to be determined at trial.

## RESERVATION OF RIGHTS

131.    BlockFi Lending reserves all rights and remedies available with respect to its interests and rights under the Loan Agreement, the Parent Guarantee, and applicable law.  BlockFi Lending further reserves the right to amend this Complaint to add or remove parties, allegations, and causes of action to the extent necessary and in light of the information that becomes available, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, or other applicable law.  The filing of this Complaint does not constitute a waiver of any rights or claims available to BlockFi Lending.

## PRAYER FOR RELIEF

**WHEREFORE** BlockFi Lending respectfully prays that this Court award it the following relief in its favor against all Defendants:

A.      Entry of an order and judgment pursuant to Bankruptcy Rules 7001(1), 7001(2), and 7009(9), 11 U.S.C. §§ 362(a)(3), 362(k), 541(a), 542(a), 28 U.S.C. §§ 2201-2202, and the Declaratory Judgment Act making the declarations identified and requested in this Complaint and ordering such other relief as requested in this Complaint;

B.      Compensatory damages, including actual damages of not less than the

Indebtedness;

   C.  Prejudgment and post-judgment interest at the default rate identified in the Loan

Agreement;

   D.  Court costs;

   E.  All reasonable and necessary Attorneys' Fees, expenses, and costs, including

Attorneys' Fees for all appeals to other courts;

   F.  Actual and Exemplary damages pursuant to 11 U.S.C. § 362(k); and

   G.  All such other relief to which BlockFi Lending may be entitled.

Dated: May 26, 2023                                  /s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

## **EXHIBIT A**

Loan Agreement

[FILED UNDER SEAL]

# **EXHIBIT B**

Parent Guarantee

[FILED UNDER SEAL]