Adam S. Ravin

Adam J. Goldberg (*pro hac vice* pending)

Christopher Harris (*pro hac vice* pending)

Brett M. Neve (*pro hac vice* pending)

Nacif Taousse (*pro hac vice* pending)

**LATHAM & WATKINS LLP**

1271 Avenue of the Americas

New York, NY 10020

Telephone: (212) 906-1200

Facsimile: (212) 751-4864

Email:  adam.ravin@lw.com
          adam.goldberg@lw.com
          christopher.harris@lw.com
          brett.neve@lw.com
          nacif.taousse@lw.com

Nima H. Mohebbi (*pro hac vice* pending)

Tiffany M. Ikeda (*pro hac vice* pending)

**LATHAM & WATKINS LLP**

355 South Grand Avenue, Suite 100

Los Angeles, CA 90071

Telephone: (213) 485-1234

Facsimile: (213) 891-8763

Email:  nima.mohebbi@lw.com
          tiffany.ikeda@lw.com

*Counsel to the Foreign Representatives*
*of Three Arrows Capital, Ltd. (in liquidation)*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------ x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| BLOCKFI INC., *et al.*,[1] | : Case No. 22-19361 (MBK) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : **Re: ECF No. 876** |

------------------------------------------------------------ x

**OBJECTION OF THE FOREIGN REPRESENTATIVES OF THREE ARROWS
CAPITAL, LTD. (IN LIQUIDATION) TO (A) THE DISCLOSURE STATEMENT
RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN AND (B) THE
DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE ADEQUACY
OF THE DISCLOSURE STATEMENT, (II) THE SOLICITATION
AND NOTICE PROCEDURES, (III) THE FORMS OF BALLOTS AND
NOTICES IN CONNECTION THEREWITH, AND
(IV) CERTAIN DATES WITH RESPECT THERETO**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

Russell Crumpler and Christopher Farmer, in their joint capacities as the duly authorized joint liquidators (collectively, the "**Joint Liquidators**") appointed in the British Virgin Islands ("**BVI**") liquidation of Three Arrows Capital, Ltd. (in liquidation) ("**3AC**") and foreign representatives of 3AC, as recognized pursuant to chapter 15 of the Bankruptcy Code in the case captioned *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022), respectfully file this objection (the "**Objection**") to (a) the *Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (ECF No. 1133) (as amended, the "**Disclosure Statement**") (cited as "**DS** at __") and (b) the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (ECF No. 876) (the "**Disclosure Statement Motion**") (cited as "**DS Mot. at __**").  In support of this Objection, the Joint Liquidators respectfully submit as follows:

## PRELIMINARY STATEMENT

1.      The Joint Liquidators filed proofs of claim against the Debtors asserting, *inter alia*, preference claims under BVI and other applicable law arising from transfers by 3AC to the Debtors and loans extended by 3AC to the Debtors.[2]  Based on presently available information, the Joint Liquidators believe their claims against the Debtors exceed $220 million, making 3AC among the Debtors' most significant creditors.  The Debtors propose to equitably subordinate 3AC's claims through the Plan, and if their equitable subordination gambit fails, 3AC would be treated *pari*

---

[2]    The Joint Liquidators' proofs of claim are attached hereto as **Exhibits A-I**.  As more fully set forth in the proofs of claim, all rights are reserved as to such claims as more fully set forth therein.

*passu* with Account Holder Claims, General Unsecured Claims, and Intercompany Claims.[3]

2. The Disclosure Statement Motion should be denied for multiple reasons. First, the proposed confirmation procedures violate the automatic stay applicable in 3AC's chapter 15 case. The Debtors are stayed from pursuing equitable subordination of 3AC's claims by the automatic stay imposed in 3AC's chapter 15 case, and the Debtors have not sought, let alone been granted, relief from the stay. The Joint Liquidators will file a motion to enforce the automatic stay in 3AC's chapter 15 case, not only because the stay applies to the Debtors' equitable subordination attempt but also because 3AC faces equitable subordination based on identical allegations in the chapter 11 cases of Genesis Global Holdco, LLC and certain of its affiliates (Bankr. S.D.N.Y. Case No. 23-10062 (SHL), Docket No. 429). If the Debtors are permitted to litigate equitable subordination of 3AC's claims in these chapter 11 cases, 3AC will face multiple equitable subordination litigations running in parallel and adjudicating the same facts and issues before different bankruptcy courts, which would introduce the potential that 3AC is subject to conflicting equitable subordination rulings. Notably, equitable subordination depends principally on the debtor's conduct – *i.e.*, 3AC – and so the issues are largely 3AC's issues and thus the same for each creditor. The applicability of the stay to the Debtors' equitable subordination attempt (and the same tactics by the Genesis debtors) should be decided by the bankruptcy court overseeing 3AC's chapter 15 case before the equitable subordination litigation may proceed (if relief is granted at all). In light of this threshold obstacle to litigating equitable subordination on the timeline the Debtors propose, equitable subordination litigation should not be adjudicated in connection with confirmation. Moreover, there is no reason that the equitable subordination

---

[3] *Second Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (ECF No. 1132), at art. III.C.20 (as amended, the "__Plan__") (cited as "__Plan__ __").

litigation must be decided in connection with confirmation, as the Plan provides for a reserve for

distributions on account of disputed claims that are subsequently allowed after the effective date.[4]

3.       Second, even if the automatic stay were lifted, the Debtors' proposed confirmation

procedures would deprive the Joint Liquidators of due process.  The Disclosure Statement includes

only two sentences describing the factual and legal bases for equitably subordinating 3AC's

claims.  DS at 46.  These disclosures are devoid of specificity and instead rely on conclusory

statements that "3AC is alleged to have been a fraud from inception" and 3AC's founders "have

taken steps to undermine the asset recovery efforts" of the Joint Liquidators.  *Id.*  The Disclosure

Statement also fails to identify how the Debtors' creditors were harmed by 3AC's alleged

inequitable conduct.   The Debtors' meager statements do not afford the Joint Liquidators

reasonable notice of the claims against them or sufficient information to prepare an objection to

the Plan.  If the Debtors are granted relief from the stay (which the Joint Liquidators will dispute),

the Court should establish a schedule to litigate equitable subordination that gives due

consideration to the complex factual and legal issues that equitable subordination presents, which

at a minimum begins with the Debtors filing a complaint stating with particularity the substantive

basis for subordination combined with sufficient time for a motion to dismiss followed by

discovery to investigate and then try the merits of those bases (whatever they may be).

4.       In contrast, under the Debtors' proposed procedures, the Debtors do not propose to

supplement the Disclosure Statement with a pleading setting forth the factual and legal bases for

equitable subordination until they file their confirmation brief and reply to objections on August

13, 2023—only four days before the confirmation trial is proposed to commence—leaving the

---

[4]    *See* Plan Art.VII.A.  An appropriate reserve must be established for 3AC's claims pending resolution of the
equitable subordination litigation.  The Joint Liquidators reserve all rights to object to the Plan on the basis on
any grounds, including that the Debtors have not proposed an adequate reserve for 3AC's claims.

Joint Liquidators inadequate time to prepare a defense. *See* DS Mot. at 3-4.5 And worse still, the

Debtors propose July 28, 2023 as the deadline to object to confirmation, which means that the

Joint Liquidators would be required to object to the subordination of their claims with nothing

more to rely on than the two sentences in the Disclosure Statement. *Id.* Such a procedure turns

due process on its head and would require the Joint Liquidators to respond to claims of equitable

subordination before they have even seen the allegations that are the basis for such claims, and

then have no informed opportunity to conduct discovery of those allegations in a targeted and

efficient manner, much less adequately prepare for trial, once those allegations are revealed.

Considering that the Plan proposes procedures for reserving against disputed claims pending

adjudication following the effective date, it is clear that tying the equitable subordination litigation

to confirmation is designed to deprive the Joint Liquidators of reasonable notice and opportunity

to present a defense to subordination. Accordingly, the Disclosure Statement Motion should not

be approved absent additional protections to ensure that the Joint Liquidators are afforded due

process.

5. Finally, the statements in the Disclosure Statement regarding the Debtors' proposed

litigation with respect to significant disputed claims, including 3AC's claims, fail to provide

creditors adequate information to make their own judgment on the viability of the Debtors'

strategy. The Debtors acknowledge that litigation regarding these disputed claims "will make a

positive or negative difference to Client recoveries of over $1 billion, orders of magnitude larger

than any other issue facing BlockFi and its Clients" and consequently, failure to prevail in litigation

---

5   While the Debtors' latest Disclosure Statement suggests (via bracketed dates) that the Debtors may be intending
    on further extending their Plan objection and confirmation deadlines (*e.g.*, the Disclosure Statement states that
    "Objections to Confirmation of the Plan must be filed and served on the Debtors, and certain other parties, by
    [August 21], 2023, at 4:00 p.m. (prevailing Eastern Time)" DS at 53 (brackets in original)), nothing therein, or in
    any other filing by the Debtors, suggests any contemplated change to the Debtors' proposed equitable
    subordination procedure.

"could be catastrophic for the Estates and Clients." DS at 14-15. And yet, the Disclosure Statement fails to explain the factual or legal basis for the Debtors' claims with the level of specificity needed for creditors to make an informed judgment about the Debtors' litigation position—for example, it does not disclose the basis for equitable subordination against non-insiders such as 3AC and the harm that unsecured creditors allegedly suffered as a result of 3AC's actions. Considering that the disputed claims litigation is the largest driver of creditor recoveries (according to the Debtors), the Disclosure Statement is inadequate and should not be approved absent more fulsome disclosure regarding the substantive basis for disputing the claims.

6.     The Joint Liquidators have attempted to engage the Debtors in settlement discussions to explore whether a consensual resolution may be achievable without the need for costly, time-consuming litigation, and to that end have requested to participate in the ongoing mediation. The Debtors have rejected the Joint Liquidators' request to participate in mediation and have not otherwise meaningfully engaged with the Joint Liquidators on the merits and treatment of their claims.

7.     For each of the reasons set forth herein, the Court should deny the Disclosure Statement Motion and, to the extent the Disclosure Statement is approved, establish a schedule and process for litigating equitable subordination as set forth herein.

## OBJECTION

### I.     The Debtors' Attempt to Equitably Subordinate 3AC's Claims Violates the Automatic Stay in the 3AC Chapter 15 Case

8.     The Debtors should not be permitted to proceed with their attempt to equitably subordinate 3AC's claims because their proposed procedure to equitably subordinate 3AC's claims violates the automatic stay. 3AC is a debtor in its own chapter 15 case pending before the U.S. Bankruptcy Court for the Southern District of New York and is protected by the automatic stay

imposed in that case. *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. July 28, 2022), Dkt. No. 47 ("[S]ection 362 of the Bankruptcy Code shall apply in its entirety to the Debtor and its property located in the territorial jurisdiction of the United States."). The Debtors have not sought, let alone obtained, relief from the stay in the chapter 15 case to pursue equitable subordination of 3AC's claims.

9.      Any act by the Debtors to equitably subordinate 3AC's claims violates the automatic stay. *See Palmdale Hills Prop., LLC v. Lehman Comm. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 875-76 (9th Cir. 2011) (affirming BAP decision that the debtors' prosecution of equitable subordination claims against a creditor that was a debtor in its own case violated the automatic stay in the creditor's bankruptcy case); *In re Enron Corp.*, 2003 Bankr. LEXIS 2261, *25, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 13, 2003) (finding that an equitable subordination claim against a creditor is stayed by imposition of the automatic stay in the creditor's own bankruptcy case); *In the Matter of Lehman Brothers Holdings Inc., et al.,* Nos. 08–13555(JMP); 08–01420 (JMP), Docket No. 9351 (June 1, 2010 Hr'g Tr.) at 75:19-24 (Bankr. S.D.N.Y. May 12, 2010) ("[T]he law in the Southern District of New York, as stated by Judge Gonzalez in the *Enron* Case, and I choose to follow his reasoning, is that litigation brought by a party against a debtor seeking to equitably subordinate claims of that debtor constitutes a violation of the automatic stay"); *but see In re Metiom, Inc.*, 301 B.R. 634 (Bankr. S.D.N.Y. 2003) (finding that claims for equitable subordination were defensive, as opposed to offensive, and therefore not subject to the automatic stay). Indeed, the Joint Liquidators will file a motion to enforce the automatic stay against the Debtors.

10.      The reasons for application of the stay benefiting 3AC's estate to the Debtors' litigation are compounded by the existence of identical claims brought by the Genesis debtors.

Indeed, both the Debtors and the Genesis debtors provide the same conclusory rationale to justify the equitable subordination of 3AC's claims against them, and use exactly the same language in doing so, as shown in the language comparison copied below.[6]

> Among other things, 3AC is alleged to have been a fraud from inception, and 3AC's founders Kyle Livingstone ~~Davies~~Davis and Su Zhu have fled the jurisdiction, failed to cooperate with 3AC's foreign representatives, and have taken steps to undermine asset recovery efforts by the foreign representatives in favor of creditors, such as ~~Genesis~~BlockFi, including by failing to provide information necessary for the foreign representatives to take control of certain of 3AC's assets and accounts.

11.     If the Debtors are permitted to litigate equitable subordination of 3AC's claims, 3AC will face multiple litigations running in parallel and  adjudicating the same facts and issues before different bankruptcy courts, introducing the potential for conflicting equitable subordination decisions.  Equitable subordination depends principally on the debtor's conduct – *i.e.*, 3AC – and so the issues are largely 3AC's issues and thus the same for each creditor, especially based on the identical allegations to date from the Debtors and the Genesis debtors.  3AC's bankruptcy court should determine whether the stay applies and whether relief should be granted before litigation commences in multiple different bankruptcy courts.

12.     Because the Debtors cannot pursue equitable subordination of 3AC's claims unless the automatic stay is first lifted, the Debtors cannot (presently at least) litigate equitable subordination in connection with confirmation as contemplated in the Disclosure Statement Motion.  In consideration of this threshold impediment to litigating equitable subordination, and the time and efforts that will be required to resolve issues regarding the applicability of the stay before the merits of equitable subordination are reached (if at all), equitable subordination cannot be litigated (if relief from the stay is granted) on the schedule proposed in the Disclosure Statement

---

[6]     *See* DS at 46 and *Disclosure Statement with Respect to the Amended Joint Plan of Genesis Global Holdco, LLC et al., under Chapter 11 of the Bankruptcy Code*, Case No.: 23-10063 (SHL), Docket No. 429, at 25.

Motion and should instead proceed on a separate track that is not tied to confirmation.

13. There is no reason that equitable subordination must be decided in connection with confirmation. The Plan provides for an alternative treatment of 3AC's claims if equitable subordination fails—*i.e.*, 3AC would be treated *pari passu* with Account Holder Claims, General Unsecured Claims, and Intercompany Claims.[7] Further, the Plan would establish a reserve for distributions on account of disputed claims that are subsequently allowed after the effective date. the equitable subordination litigation must be decided in connection with confirmation as the Plan provides for a reserve for distributions on account of disputed claims that are subsequently allowed after the effective date.[8]

## II. The Confirmation Procedures Are Inadequate and Deny The Joint Liquidators of Due Process

14. Even if the Debtors had obtained relief from the stay to pursue equitable subordination of 3AC's claims, the Debtors' proposed confirmation procedures would be inadequate because they fail to afford the Joint Liquidators due process. 3AC, like all creditors, is entitled to fundamental due process protections whenever the debtor proposes to affect their claims. *See, e.g., In re Mansaray-Ruffin*, 530 F.3d 230, 242 (3d Cir. 2008) (holding that a creditor had a "due process right" to adequate notice before its property right could be affected by confirmation of a plan); *In re Hanson*, 397 F.3d 482, 486-87 (7th Cir. 2005) (stating that due process requires notice "appris[ing] [creditors] that their property rights may be affected"). At minimum, due process requires that a creditor be provided notice of the basis for affecting its claim that "reasonably conveys all the required information, and permits a reasonable time for response."

---

[7]    Plan at art. III.C.20.

[8]    *See* Plan Art.VII.A.  An appropriate reserve must be established for 3AC's claims pending resolution of the equitable subordination litigation.  The Joint Liquidators reserve all rights to object to the Plan on the basis on any grounds, including that the Debtors have not proposed an adequate reserve for 3AC's claims.

See, e.g., Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Greyhound Lines,*

*Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735 (5th Cir. 1995)) (internal quotations

omitted).

15.    These due process considerations inform the requirement under Bankruptcy Rule

7001(8) that subordination of a claim ordinarily occur through an adversary proceeding.  Many of

the procedures applicable to adversary proceedings derive from the Federal Rules of Civil

Procedure, "giving an adversary proceeding all the trappings of traditional civil litigation." *Id.* at

234.  Specifically, as relevant here, the Bankruptcy Rules provide that (a) a complaint be filed to

commence an adversary proceeding, (b) the complaint and a summons be served on the defendant,

(c) the defendant has 30 days to file an answer after issuance of the summons, and (d) the parties

have "the same opportunity for discovery as traditional litigation." *Id.* (citing Fed. R. Bankr. P.

7003, 7004, 7012, 7026-37, 7041, 7055-56).  Further, Rule 9(b) of the Federal Rules of Civil

Procedure, which is made applicable to adversary proceedings by Bankruptcy Rule 7009, requires

that a plaintiff "[i]n alleging fraud" must "state with particularity the circumstances constituting

fraud."  Fed. R. Civ. P. 9(b).

16.    Bankruptcy Rule 7001(8) includes an exception to the adversary proceeding

requirement where a chapter 11 plan provides for subordination.  That exception, however, does

not permit a debtor to circumvent the basic requirements of due process.  *See In re Zumbrun*, 88

B.R. 250, 252 (9th Cir. BAP 1988) (stating that Bankruptcy Rule 9014 clearly requires that "the

fundamental requisites of due process must be satisfied in a contested matter in the same manner

as in an adversary proceeding"); *In re Analytical Systems, Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga.

1987) ("The underlying purpose of incorporating Federal Rules of Procedure into contested

matters is to provide due process protections to all parties of a dispute.").  An objection to a chapter

11 plan initiates a contested matter under Bankruptcy Rule 9014.  Fed. R. Bankr. P. 3020(b)(1)

("An objection to confirmation is governed by Rule 9014.").  Consistent with the requirements for

due process, Bankruptcy Rule 9014(a) provides that a "reasonable notice and opportunity for

hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a); *see*

*In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010) ("Consistent with due process, Bankruptcy Rule

9014 requires that 'reasonable notice' be given to the party against whom relief is sought.").

Likewise, while a contested matter ordinarily may be initiated by motion, rather than a complaint

and summons, Bankruptcy Rule 9014(c) provides that certain fundamental procedural protections

applicable to adversary proceedings apply in contested matters as well.  *See Barrientos v. Wells*

*Fargo Bank, NA*, 633 F.3d 1186 (9th Cir. 2011) (stating that Bankruptcy Rule 9014 "provides for

service of the motion, application of certain rules governing the resolution of adversary

proceedings, and testimony of witnesses taken in the same manner as in an adversary proceeding").

These Part VII rules that apply to contested matters include, *inter alia*, Bankruptcy Rules 7009

(incorporating the special pleading requirements of Rule 9(b)), 7026 (incorporating Rule 26's

general provisions governing discovery), and 7052 (incorporate Rule 52's requirement for findings

of fact and conclusions of law).  Fed. R. Bankr. P. 9014(c).  Bankruptcy Rule 9014(c) also grants

the court discretion to apply other rules applicable to adversary proceedings to a contested matter

as the circumstances may warrant.  *See In re WT Grant Co.*, 24 B.R. 421, 423 (Bankr. S.D.N.Y.

1982) ("[W]hen litigation of a contested matter becomes 'sufficiently serious and complicated,'

the Court, may, under Bankruptcy Rule 9014, apply any of the Part VII Rules . . . to ensure that

the 'elemental requisites of due process [are] afforded all parties.'") (citing Advisor Committee

Not, 1976 Collier Pamphlet Ed. Pt. 2 at 276).  Thus, where, as here, a contested matter presents

complicated issues of disputed fact and law, it is necessary and appropriate in the interest of due

process to afford the parties many of the same procedural protections available under Part VII of the Bankruptcy Rules.

17.     The Debtors, however, have proposed confirmation procedures designed to steamroll opposition to the Plan and deprive the Joint Liquidators, and other similarly situated creditors, a meaningful opportunity to object to subordination.   The Plan "provides for the equitable subordination of the 3AC Claims."   DS at 46.   The Debtors have not commenced an adversary proceeding to equitably subordinate 3AC's claims and appear poised to litigate equitable subordination as part of a confirmation hearing beginning on August 17, 2023.   Yet, the Debtors have not provided any—much less adequate—notice of the substantive bases for equitable subordination.   The Disclosure Statement includes only two conclusory sentences regarding equitable subordination of 3AC's claims:

> The Debtors believe that the 3AC Claims, to the extent Allowed, should be equitably subordinated due to 3AC and its founders' conduct both before and during its liquidation and chapter 15 proceedings.   Among other things, 3AC is alleged to have been a fraud from inception, and 3AC's founders Kyle Livingstone Davis [sic] and Su Zhu have fled the jurisdiction, failed to cooperate with 3AC's foreign representatives, and have taken steps to undermine asset recovery efforts by the foreign representatives in favor of creditors, such as BlockFi, including by failure to provide information necessary for the foreign representative to take control of certain of 3AC's assets and accounts.

*Id.*

18.     These two sentences do not include adequate information to provide the Joint Liquidators with effective notice of the claims against them and are insufficient to enable 3AC to respond.   Equitable subordination of 3AC's non-insider claims requires that the Debtors allege "egregious conduct such as fraud, spoilation or overreaching and *prove it with particularity*."   *In re N & D Prop., Inc.*, 799 F.2d 726, 731 (11th Cir. 1986) (emphasis added); *see In re Granite Partners, LP*, 210 B.R. 508, 517 (Bankr. S.D.N.Y. 1997) (finding that "conclusory allegations" of

inequitable conduct are "insufficient" to survive motion to dismiss). The Debtors appear to rely on a fraud-based theory of equitable subordination. DS at 46 ("3AC is alleged to have been a fraud from inception"). The Plan and Disclosure Statement, however, fall well short of stating the circumstances constituting the alleged fraud, or any other egregious conduct, with the required level of particularity. Fed. R. Bankr. P. 9014(c) (incorporating the heightened pleading standard of Rule 9(b) to contested matters);[9] *see In re MCK Millennium Centre Parking, LLC*, 532 B.R. 716, 731 (Bankr. N.D. Ill. 2015) ("A plaintiff alleging actual fraudulent transfer . . . must state with particularity the circumstances constituting fraud. The plaintiff must plead the 'who, what, when, where, and how.") (internal citations and quotations omitted). Put differently, if the allegations in the Disclosure Statement were a complaint, it would be summarily dismissed for violating Rules 8(a) and 9(b), and Bankruptcy Rules 7008 and 7009, and even in the context of a contested matter before application of other Part VII rules at the Court's discretion, the Debtors' attempt to apply equitable subordination through Plan and Disclosure Statement should similarly be denied for failure to satisfy Rule 9(b) made applicable by Bankruptcy Rule 9014(c).

19.    Even if the fraud (to the extent it is discernible) is described with particularity in an amended Disclosure Statement or other pleading, it seems to be an alleged fraud on 3AC and its investors, not the Debtors. The Debtors fail to state any facts demonstrating how the alleged misconduct of 3AC's founders injured the Debtors' creditors or conferred an unfair advantage to 3AC. *See In re SubMicron Systems Corp.*, 432 F.3d 448, 462 (3d Cir. 2006) (stating that the proponent of equitable subordination must establish that the alleged misconduct "resulted in injury to the creditors or conferred an unfair advantage to the claimant").

---

[9]    "In alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake." Fed. R. Bankr. P. 7009(b).

20.     Moreover, the Disclosure Statement hints that there may be other supposed bases besides fraud by preceding the scanty fraud argument with the clause "Among other things." DS at 46. And yet it leaves 3AC utterly in the dark and provides no notice whatsoever on what these "other things" may be.

21.     Exacerbating these flaws, the Debtors do not propose to supplement the patently inadequate Disclosure Statement with a more fulsome pleading stating the factual and legal bases for equitable subordination until *after* the deadline to object to the Plan, and only *four* days before the proposed confirmation trial. Specifically, the Debtors propose to establish July 28, 2023 as the deadline to object to the Plan, August 13, 2023 as the deadline to file the confirmation brief and reply to objections, and August 17, 2023 as the confirmation hearing. DS Mot. at 3-4. The Debtors' proposal would deprive the Joint Liquidators of reasonable notice and opportunity to respond by requiring that they object to the Plan before the Debtors are required to provide notice of their equitable subordination case beyond the two sentences in the Disclosure Statement. Further, the proposed procedures would not afford the Joint Liquidators a meaningful opportunity to conduct discovery of the Debtors' specific allegations (whatever they may ultimately be) in a targeted and efficient manner, much less present a defense at the confirmation trial, considering that the Debtors would wait until four days before the trial to disclose the factual and legal bases for equitable subordination. By placing the onus on the Joint Liquidators to prepare a defense with nothing more to rely on than negligible statements in the Disclosure Statement, the Debtors would impermissibly shift the burden to the Joint Liquidators. *See, e.g., In re Mid-American Waste Systems, Inc.*, 284 B.R. 53, 70-71 (Bankr. D. Del. 2002) (finding that the party seeking to subordinate a claim bears the burden on the issue); *In re Friedman*, 126 B.R. 63, 71 (9th Cir. BAP 1991) ("The burden of establishing all the elements of subordination by a preponderance of the

evidence is on the objecting party").

22.      For these reasons, the proposed confirmation procedures violate minimum standards of due process required by the U.S. Constitution, the Bankruptcy Rules, and basic notions of fairness.  The Disclosure Statement Motion should not be approved absent additional protections to ensure that the Joint Liquidators are afforded due process and a fair opportunity to take discovery and object to equitable subordination and that the confirmation process complies with the Bankruptcy Rules.

23.      If the Debtors are granted relief from stay, the Court should establish a litigation schedule that gives appropriate consideration to the complicated factual and legal issues equitable subordination presents and, at minimum, exercise its discretion under Bankruptcy Rule 9014(c) to require that the Debtors file a complaint setting forth their equitable subordination allegations against 3AC, followed by sufficient time for a motion to dismiss, discovery, and then preparation for trial.  Notwithstanding the exception to the adversary proceeding requirement in Bankruptcy Rule 7001(8) for subordination through a plan, requiring the Debtors to file a complaint is appropriate here given the heightened pleading standard for fraud under Rule 9(b) and case law requiring that the Debtor establish the elements of equitable subordination with particularity. Indeed, the only fair basis upon which to determine whether the Debtors satisfy the heightened pleading standard with respect to their sweeping allegations that 3AC was "a fraud from inception" should be through review of a complaint.  Moreover, given the nature of the Debtors' allegations, the litigation would in all likelihood require extensive discovery and a multi-day trial involving the examination of multiple witnesses that could not reasonably be accommodated within the proposed confirmation timeline.

**III.    The Disclosure Statement Fails to Provide Adequate Information as Required by Section 1125 of the Bankruptcy Code**

24.     The purpose of a disclosure statement is "to inform equity holders and claimants, as fully as possible, about the probable financial results of acceptance or rejection of a particular plan." *See In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988).  The Third Circuit has emphasized the importance of adequate disclosure, given the reliance creditors and bankruptcy courts place on disclosure statements. *See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 417 (3d Cir. 1988) ("[W]e cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'").

25.     "[A]dequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Whether a disclosure statement provides "adequate information will be determined by the facts and circumstances of each case." *Oneida Motor Freight*, 848 F.2d at 417.

26.     The Disclosure Statement fails to disclose sufficient information regarding the proposed treatment of 3AC's and certain similarly situated creditors' claims.  The Debtors concede that these claims are hugely material—they state that litigation regarding 3AC's claims against BlockFi and resolution of BlockFi's claims against 3AC, among other anticipated litigation, "will make a positive or negative difference to Client recoveries of over $1 billion, orders of magnitude larger than any other issue facing BlockFi and its Clients." DS at 15.  The Debtors further represent that failure to prevail in litigation with 3AC, and other creditors holding disputed claims, "could be catastrophic for the Estates and Clients." *Id.* at 14.  In short, the Debtors acknowledge that litigation of these disputed claims is the lifeblood of the Plan.  Yet, the Disclosure Statement fails

to provide adequate information about the factual or legal bases for the Debtors' proposed litigation. Absent more fulsome disclosure, creditors cannot be expected to make an informed judgment about the Debtors' litigation position, which, according to the Debtors, is the most significant issue affecting creditor recoveries under the Plan. DS at 15; *see, e.g., In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 171 (Bankr. S.D. Oh. 1988) (requiring disclosure of "[t]he existence, likelihood and possible success of non-bankruptcy litigation"); *In re Ashley River Consulting, LLC,* Nos. 14-13406 (MG), 2015 Bankr. LEXIS 3819, at *27 (Bankr. S.D.N.Y. Nov. 6, 2015) (same).

27.    With respect to 3AC's claims against the Debtors, the Disclosure Statement states in conclusory fashion that "[t]he Debtors believe they have valid defenses to 3AC's [preference] claims" and that the Debtors intend to equitably subordinate 3AC's claims. DS at 46. As noted above, the Disclosure Statement includes only two sentences regarding the merits of the Debtors' case for equitable subordination.[10]

28.    These statements fall short of the type of fulsome allegations necessary to assess the merits of the Debtors' equitable subordination theory. While the merits of such claims are not before the Court at the disclosure statement stage, even these minimal disclosures betray fundamental flaws in the Debtors' equitable subordination theory. First, as discussed above, the Debtors cannot pursue equitable subordination against 3AC without violating the stay in the chapter 15 case or first obtaining relief from stay. *See In re Palmdale Hills*, 654 F.3d at 875-76;

---

[10]    *Id.* ("The Debtors believe that the 3AC Claims, to the extent Allowed, should be equitably subordinated due to 3AC and its founders' conduct both before and during its liquidation and chapter 15 proceedings. Among other things, 3AC is alleged to have been a fraud from inception, and 3AC's founders Kyle Livingstone Davis [sic] and Su Zhu have fled the jurisdiction, failed to cooperate with 3AC's foreign representatives, and have taken steps to undermine asset recovery efforts by the foreign representatives in favor of creditors, such as BlockFi, including by failure to provide information necessary for the foreign representative to take control of certain of 3AC's assets and accounts.").

*In re Enron Corp.*, 2003 Bankr. LEXIS 2261, *25.  The Debtors make no disclosure about this threshold impediment to pursuing equitable subordination of 3AC's claims.

29.     Second, the Disclosure Statement fails to explain how the alleged inequitable conduct should be attributed to 3AC.  The only alleged inequitable conduct that the Debtors describe with any specificity are the actions of 3AC's founders that have frustrated the Joint Liquidators' efforts to control and recover 3AC's assets for the benefit of its creditors.  But these actions by 3AC's founders necessarily occurred *after* the BVI liquidation proceeding was commenced and the Joint Liquidators were appointed by the BVI court.  Upon their appointment, the Joint Liquidators assumed ultimate corporate authority with respect to 3AC and act as fiduciaries of 3AC's creditors under supervision of the BVI court.  By contrast, following the commencement of the BVI liquidation proceeding and the Joint Liquidators' appointment, 3AC's founders no longer have authority to act on behalf of 3AC.  As a result, 3AC's founders' conduct in frustrating the Joint Liquidators' efforts in respect of the 3AC liquidation proceeding cannot be imputed to 3AC for purposes of equitably subordinating 3AC's claims.

30.     Third, the Debtors fail to provide sufficient information about how their creditors have been harmed by 3AC's founders' conduct.  Based on the limited disclosure available, the Debtors' theory appears to be that 3AC's founders' actions to frustrate the Joint Liquidators' efforts have harmed BlockFi, in its capacity as a 3AC creditor, which in turn has harmed BlockFi's creditors.  Even assuming the Debtors were able to carry their burden of proof on this theory, it would be inequitable, and defy basic common sense, to subordinate 3AC's claims on the basis that 3AC's founders' conduct has harmed 3AC's creditors, as such subordination would only further harm 3AC's creditors.  3AC is subject to an ongoing liquidation proceeding and, consequently, 3AC's creditors—not 3AC's founders—are the ultimate economic beneficiaries of 3AC's claims.

Likewise, the Joint Liquidators are the proper party to address redress for the 3AC founders' misconduct – in fact, they have already sought relief to bring claims against 3AC's founders in the BVI and have filed a motion for contempt in 3AC's chapter 15 case that included seeking monetary damages while the contempt continues, which will benefit all of 3AC's creditors.  *See* Jonathan Randles, *Three Arrows Liquidators Seek $1.3 Billion From Fund's Founders*, Bloomberg (June 27, 2023, 10:07 AM), https://www.bloomberg.com/news/articles/2023-06-27/three-arrows-liquidators-seek-1-3-billion-from-fund-s-founders#xj4y7vzkg; *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. 2022), Docket No. 98.  And the Joint Liquidators are pursuing claims in these chapter 11 cases, again for the benefit of *all* of 3AC's creditors.  In contrast, equitable subordination would have the inequitable (and illogical) result of harming 3AC's creditors on the basis that 3AC's founders previously harmed 3AC's creditors.  Moreover, in light of the ongoing 3AC liquidation proceeding, subordinating 3AC's claims in these Chapter 11 Cases would have the effect of impermissibly favoring one of 3AC's creditors over others who are equally affected by 3AC's founders' conduct.

31.     The Debtors make no disclosure about these flaws in their equitable subordination theories and, critically, do not give creditors sufficient information to make their own judgment as to the viability of the Debtors' strategy.  Likewise, the Debtors' disclosures regarding litigation of other disputed claims held by FTX and Alameda are conclusory and devoid of the specificity needed for creditors to make an informed decision about the Plan.  DS at 44-46.

32.     Because the Debtors' disclosure regarding the disputed claims litigation, which they state is the most significant issue affecting creditor recoveries, is inadequate, the Disclosure Statement cannot be approved.

## <u>RESERVATION OF RIGHTS</u>

33.     The Joint Liquidators reserve all rights, claims, defenses, and remedies, including

without limitation, to supplement and amend this Objection, to raise further and other objections,

to introduce evidence prior to or at any hearing regarding the Disclosure Statement in the event

the Joint Liquidators' objections are not resolved prior to such hearing, to seek to introduce

documents or other relevant information in support of the positions set forth in this Objection, and

to raise any all objections to confirmation of the Plan.

## <u>CONCLUSION</u>

34.     For the reasons stated herein, the Court should reject the Disclosure Statement;

deny the Disclosure Statement Motion; to the extent the Disclosure Statement is approved,

establish a schedule and process for litigating equitable subordination as set forth herein; and grant

such other relief as may be just and proper.

*[Remainder of page intentionally left blank.]*

Dated: July 5, 2023
New York, New York

Respectfully submitted,

*/s/ Adam S. Ravin*

Adam S. Ravin (No. 047591995)
Adam J. Goldberg (*pro hac vice* pending)
Christopher Harris (*pro hac vice* pending)
Brett M. Neve (*pro hac vice* pending)
Nacif Taousse (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.goldberg@lw.com
christopher.harris@lw.com
brett.neve@lw.com
nacif.taousse@lw.com

– and –

Nima H. Mohebbi (*pro hac vice* pending)
Tiffany M. Ikeda (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
tiffany.ikeda@lw.com

*Counsel to the Foreign Representatives of Three Arrows Capital, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this <u>5</u><sup>th</sup> day of July, 2023, a true and correct copy of the

foreground Objection was furnished to all ECF Participants via the CM/ECF system, and further,

served by email upon the following:

**<u>Debtors' Counsel</u>**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
**COLE SCHOTZ P.C.**
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Tel: (201) 489-3000
Email: msirota@coleschotz.com
      wusatine@coleschotz.com

Joshua A. Sussberg, P.C.
Christine A. Okike, P.C.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Email: jsussberg@kirkland.com
      christine.okike@kirkland.com

Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Tel: (212) 659-7300
Email: richard.kanowitz@haynesboone.com
      kenric.kattner@haynesboone.com

**<u>Counsel to the Official Committee of Unsecured Creditors</u>**
GENOVA BURNS LLC
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Tel: (973) 230-2095
Fax: (973) 533-1112

Email: DStolz@genovaburns.com
DClarke@genovaburns.com
GKinoian@genovaburns.com

BROWN RUDNICK LLP
Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Fax: (212) 209-4801
Email: rstark@brownrudnick.com
kaulet@brownrudnick.com
bsilverberg@brownrudnick.com

Stephen D. Palley, Esq.
601 Thirteenth Street, NW
Washington, DC 20005
Tel: (202) 536-1700
Fax: (202) 536-1701
Email: spalley@brownrudnick.com

Tristan G. Axelrod, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201
Email: taxelrod@brownrudnick.com
sdwoskin@brownrudnick.com

**Office of the U.S. Trustee**
UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF THE UNITED
STATES TRUSTEE ANDREW R. VARA UNITED STATES TRUSTEE,
REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Email: jeffrey.m.sponder@usdoj.gov
lauren.bielskie@usdoj.gov

/s/  Adam S. Ravin
Adam S. Ravin