**SULLIVAN & CROMWELL LLP**
James L. Bromley (NJ Bar No. 1551996)
Andrew G. Dietderich (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Benjamin S. Beller (*pro hac vice* to be filed)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
E-mail:  bromleyj@sullcrom.com
           dietdericha@sullcrom.com
           gluecksteinb@sullcrom.com
           bellerb@sullcrom.com

*Counsel for the FTX Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*,[1] | Case No. 22-19361 (MBK) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE FTX DEBTORS TO BLOCKFI DEBTORS' MOTION
FOR APPROVAL OF DISCLOSURE STATEMENT, SOLICITATION
PROCEDURES AND FORMS, AND CONFIRMATION SCHEDULE**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors")[2] hereby submit this objection (the "Objection") to the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the BlockFi Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2] The last four digits of FTX Trading Ltd.'s tax identification number is 3288. Due to the large number of debtor entities in the FTX Debtors' chapter 11 cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

*(II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto*, Docket No. 876 (the "Motion" and the amended disclosure statement filed on June 28, 2023, the "Disclosure Statement"),[3] filed by the debtors and debtors-in-possession (collectively, the "BlockFi Debtors") in the above-captioned chapter 11 cases (the "BlockFi Chapter 11 Cases"). In support of their Objection, the FTX Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The FTX Debtors' relationship with the BlockFi Debtors is multifaceted, but each piece of that relationship can and will be addressed at the appropriate time. The BlockFi Debtors may be a creditor of certain FTX Debtors and have now filed claims against the FTX Debtors in their proceedings in Delaware. The FTX Debtors will review the newly filed claims, but currently expect to object in due course. The BlockFi Debtors and the FTX Debtors each claim property currently held by the United States pending the criminal trial of Samuel Bankman-Fried. The FTX Debtors believe the proceeds of that property should go to the general creditors and victims of the FTX Debtors, one way or another. However, this dispute will need to wait on the United States and related forfeiture proceedings.

2. That leaves the claims of the FTX Debtors against the BlockFi Debtors, detailed below. The most significant are avoidance claims arising on the FTX Debtors' petition date by operation of law. Other claims arise from undisputed new money loans advanced to the BlockFi

---

[3] Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Docket No. 1133. Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Disclosure Statement.

Debtors. All are important claims, the proceeds of which will go to customers, creditors and victims of the FTX Debtors.

3. Yet the BlockFi Debtors believe some bankruptcy wand can be waived to make the FTX Debtors' claims disappear incident to their recently amended liquidating chapter 11 plan dated June 28, 2023 (the "Liquidating Plan"),[4] and that they can do so without satisfying basic procedural fairness and due process requirements. This is abuse of the plan process. A motion to equitably subordinate or recharacterize the claims of the FTX Debtors should not be embedded in the Liquidating Plan and jammed into an otherwise existing plan confirmation schedule. If the BlockFi Debtors are serious about attempting to recharacterize or equitably subordinate each and every claim of the FTX Debtors, that litigation should either have its own ordinary process for resolution by adversary proceeding or be subject to an appropriate schedule in connection with plan confirmation. This is particularly important in light of the novel issues that would be raised in that litigation. The FTX Debtors intend to contest any attempt to recharacterize or equitably subordinate their claims, and will argue (among other points of law) that pre-petition actions by Samuel Bankman-Fried cannot be grounds to equitably subordinate a bankruptcy *trustee*'s avoidance actions for the benefit of customers, creditors and victims of the FTX Debtors. Avoidance actions came into existence only upon the FTX Debtors' chapter 11 filing and no customer, creditor or victim of the FTX Debtors can be imputed with Mr. Bankman-Fried's actions or would be unjustly enriched by the FTX Debtors' recoveries, if any, against the BlockFi Debtors.

4. Beyond that, the merits of equitable subordination would require discovery, briefing and trial. There are also important procedural issues for the Court to consider if the BlockFi Debtors fail to equitably subordinate and recharacterize the FTX Debtors' claims,

---

[4] Second Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Docket No. 1132.

-3-

including issues with respect to the most appropriate venue for liquidation of the preference amount and the relationship between the FTX Debtors' out-bound preference claims and any section 502(d) defense. The FTX Debtors accordingly object to the confirmation schedule proposed by the Motion to the extent the BlockFi Debtors seek to squeeze that litigation into the Liquidating Plan's proposed confirmation schedule.

5.      In addition, the FTX Debtors object to the adequacy of the proposed disclosure statement with respect to (i) the factual and legal basis for the equitable subordination and recharacterization of the FTX Debtors' claims and (ii) the Global Insider Settlement. The nature of claims against insiders (and scope of any proposed release or compromise) is important to the FTX Debtors as an unsecured creditor of the BlockFi Debtors and as a potential direct creditor against any BlockFi insiders who harmed or received avoidable preferences from the FTX Debtors or their customers or creditors. Unlike the FTX Debtors—who terminated all connections with prior leadership before filing their cases, have a new CEO, CFO and directors, are not pursuing plan releases for prepetition management, are working constructively with their creditors committee and governmental authorities, and have never had any pretense that their chapter 11 cases were anything other than a global liquidation—the BlockFi Debtors are pointing fingers at everyone but their prepetition leadership, for whom they now seek releases for prepetition actions and omissions in the Liquidating Plan.

6.      The Disclosure Statement should not be approved as proposed and the BlockFi Debtors must address the scheduling deficiencies with respect to disputes over the FTX Claims and the disclosure deficiencies identified herein.

**FACTUAL BACKGROUND**

7. On November 11 and November 14, 2022, the FTX Debtors filed with the United States Bankruptcy Court for the District of Delaware voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

8. On November 28, 2022, the BlockFi Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

9. On March 31, 2023, the FTX Debtors timely filed Proofs of Claim[5] asserting claims against the BlockFi Debtors (the "FTX Claims"). The FTX Claims are primarily comprised of avoidance claims pursuant to sections 547 and 550 of the Bankruptcy Code. The amounts of these claims are subject on ongoing review and analysis by the FTX Debtors, but are currently expected to be as follows after credit for subsequent new value where appropriate: (i) preferential loan repayments by Alameda (as borrower) to BlockFi Lending LLC in the amount of approximately $123 million (referred to as the "Alameda Claims" in the Disclosure Statement), (ii) preferential withdrawals by the BlockFi Debtors from the FTX.com exchange in the aggregate amount of approximately $90 million, (iii) preferential pledges of collateral by Alameda to the BlockFi Debtors in the aggregate amount of approximately $314 million (together with the claims listed in (ii) above, referred to as the "FTX Avoidable Transfer Claims" in the Disclosure Statement), and (iv) preferential pledges of collateral by Emergent Fidelity Technologies Ltd. and Alameda in the aggregate amount of approximately $1 billion.

10. The FTX Claims also include an unsecured claim in the amount of $275 million for new money loans advanced by the FTX Debtors pursuant to a revolving credit facility (referred to

---

[5] Proofs of Claim Nos. 14607, 14810, 14971, 15184, 15191, 15204, 15025, 15206, 15580, 15595, 15612, 15818, 25986, 26003, 26004, 26005, 26006, 26059, 26060, 26063, 26064, 26066, 26067, 26068, 26070, 26268, 26280, 26313, 26319, 26325, 26342, 26360, 26377, 26386, 26429, 26962.

as the "FTX Facility Claims" in the Disclosure Statement). The FTX Facility Claims are contractually subordinated to "Client Liabilities" as defined in the applicable debt documentation. The FTX Debtors do not dispute this (as opposed to equitable) subordination.

**OBJECTION**

I. **THE PROPOSED CONFIRMATION SCHEDULE DEPRIVES THE FTX DEBTORS OF A FULL AND FAIR OPPORTUNITY TO LITIGATE CHALLENGES TO THEIR CLAIMS.**

9. The proposed confirmation schedule would deny the FTX Debtors a full and fair opportunity to litigate disputes over the treatment of their claims under the Liquidating Plan. While the BlockFi Debtors have an interest in ensuring an expeditious timeframe for confirmation, equally important is the FTX Debtors' interest in a full and fair opportunity to litigate their claims for the benefit of their own creditors. The BlockFi Debtors have made no effort to account for these important interests.

10. Litigation over the issues of equitable subordination and recharacterization will require the Court to assess novel questions of law and potentially a complicated factual record. Having voluntarily chosen to unnecessarily embed this litigation in the plan confirmation process, the BlockFi Debtors should, at the very least, be required to provide an appropriate litigation timeline and process. But as proposed, the confirmation schedule fails to do that.

11. The FTX Claims can be litigated and resolved independent of confirmation of the Liquidating Plan by decoupling them from the plan confirmation timeline. If necessary, a reserve can be established on account of the FTX Claims to permit other general unsecured creditors to receive distributions without undue delay, an approach adopted in the Voyager Chapter 11 Cases. In Voyager, this approach has proven to be efficient and beneficial to the administration of those

cases,[6] and is particularly sensible here where the BlockFi Debtors' proposed plan is also, like Voyager's, a liquidation plan. The FTX Debtors submit that this approach fairly balances the parties' competing interests, permitting the BlockFi Debtors to expeditiously proceed with their plan confirmation and providing the FTX Debtors fair process to litigate their claims.

12. If litigation with respect to the FTX Claims is not separated from the plan confirmation schedule, the Court should require modification of the confirmation schedule to account for a reasonable timeline to litigate the complex and layered disputes over the FTX Claims in the context of confirmation. As of today, the BlockFi Debtors have yet to even articulate any legal or factual basis by which they seek to subordinate or recharacterize the FTX Claims. While the two-month timeline proposed by the BlockFi Debtors may be reasonable for a standard confirmation process, it is unreasonably truncated for litigation over the complex issues of law and fact raised by the BlockFi Debtors' proposed subordination and recharacterization of the FTX Claims, particularly where no basis for such claims have been asserted. If litigation regarding the treatment of the FTX Claims is nonetheless to be included in the plan confirmation schedule, that schedule must be lengthened and modified to provide a specific litigation schedule for the BlockFi/FTX disputes within the broader confirmation schedule. This is necessary to ensure that the Court provides for a fair, appropriate, and reasonable adjudication of the FTX Claims.[7]

---

[6] *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 5, 2022) (the "Voyager Chapter 11 Cases"). The Voyager plan became effective on May 19, 2023 and initial distributions to creditors are scheduled to begin in the month of June. *See* Tom Mitchelhill, *Voyager creditors could start seeing funds in the 'next few weeks,'* COIN TELEGRAPH (May 5, 2023), https://cointelegraph.com/news/voyager-creditors-funds-return-next-few-weeks. Notably, the Voyager debtors were represented not just by the same law firm as the BlockFi Debtors, but by the same lawyers.

[7] Debtors and courts in other large and complex chapter 11 cases often take this approach in recognition of the need for *confirmation* schedules that appropriately account for the complexity of the issues to be litigated in connection with confirmation. *See, e.g.*, *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021), Docket No. 2863 (providing a five-month confirmation timeline and specific timeline for the adjudication of allowance of tort claims for voting purposes); *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. July 30, 2021), Docket No. 3347 (removing litigation over equitable subordination from the confirmation schedule).

13. Accordingly, the FTX Debtors respectfully request that the Court require either the removal of equitable subordination and recharacterization disputes from the confirmation schedule or, alternatively, modification of the confirmation schedule to allow for a full and fair opportunity for the FTX Debtors to litigate disputes with respect to their claims.

## II. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE.

15. Section 1125 of the Bankruptcy Code requires a disclosure statement to contain "adequate information" in order to solicit votes on a proposed chapter 11 plan. "Adequate information" is defined in the Bankruptcy Code as "information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor [typical of the holders of claims or interests] of the relevant class to make an informed judgment about the plan[.]" 11 U.S.C. § 1125(a)(1).

16. The Disclosure Statement as proposed fails to meet the requirements of section 1125 of the Bankruptcy Code because it fails to provide adequate disclosure with respect to, among other things, the BlockFi Debtors' purported basis for recharacterizing and/or equitably subordinating the FTX Facility Claims, FTX Avoidable Transfer Claims, and Alameda Claims. Article V.J. of the Disclosure Statement describes the BlockFi Debtors' intent to seek to recharacterize and/or equitably subordinate the FTX Facility Claims, FTX Avoidable Transfer Claims and Alameda Claims pursuant to the Liquidating Plan. The Disclosure Statement further states that the BlockFi Debtors "believe that the FTX Facility Claims were clearly intended as, and as a practical matter were, equity contributions." The Disclosure Statement further provides that to the extent not recharacterized, the BlockFi Debtors intend to seek equitable subordination of the FTX Facility Claims, FTX Avoidable Transfer Claims, and Alameda Claims "due to FTX's

inequitable and harmful conduct that precipitated the [BlockFi] Debtors' chapter 11 filing" and that the BlockFi Debtors will "further demonstrate the legal and factual bases for subordinating the FTX Facility Claims prior to or at Confirmation." The Disclosure Statement must provide the BlockFi Debtors' legal and factual bases for the plainly conclusory statements asserting recharacterization of the FTX Facility Claims and the equitable subordination of the FTX Facility Claims, FTX Avoidable Transfer Claims and the Alameda Claims.[8] Without such disclosure, creditors are unable to make an informed decision with respect to the potential result of such efforts and subsequent outcomes under the Liquidating Plan.[9]

17. The Disclosure Statement also fails to provide adequate information with respect to the Global Insider Settlement. Articles V.K., X.Q and X.R. of the Disclosure Statement describe the Investigation undertaken by the Special Committee with respect to all potential claims against insiders of the BlockFi Debtors, negotiations of settlement with certain of the BlockFi Debtors' insiders, and the "primary terms of the proposed settlement."[10] The Disclosure Statement further states that the results of the Investigation indicates that the claims against insiders of the BlockFi Debtors are "weak," and that the BlockFi Debtors determine that the Global Insider Settlement is the "best path forward" to resolving the BlockFi Chapter 11 Cases.[11]

18. However, the Disclosure Statement does not provide sufficient information with respect to, among other things, specific findings of the Investigation, specific claims and causes of

---

[8] The Liquidating Plan fails to provide that, to the extent the FTX Claims are entitled to *pari passu* treatment with General Unsecured Claims, the SEC Penalty Claims will also be subordinated to the FTX Claims.

[9] *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (a disclosure statement must "clearly and succinctly inform the average . . . [stakeholder] what it's going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

[10] Disclosure Statement, Article X.Q, pp. 93-96.

[11] *Id.* at Article V.K., pp. 191-93.

action identified by the Special Committee that are being settled, why the Special Committee determines that potential claims against insiders are weak, and why it is in the best interests of the estate for these claims to be settled now—at exactly the time of confirmation by a Special Committee selected by incumbent management—when the Liquidating Plan (as a liquidating plan and no longer a plan of reorganization) fully permits the matters to be investigated and litigated after confirmation. Nor does the Disclosure Statement disclose the risks to the Liquidating Plan arising from the inclusion as a condition precedent to effectiveness of the Liquidating Plan of an order of the Court granting the motion that the Debtors intend to file seeking approval of the Global Insider Settlement,[12] in particular in light of the strenuous opposition to releases of any insiders by the official committee of unsecured creditors of the BlockFi Debtors.[13] The BlockFi Debtors have an obligation to include in the Disclosure Statement the predicates for approval of such releases as required under controlling Third Circuit precedent for the approval of settlements under Rule 9019 of the Federal Rules of Bankruptcy Procedures. *In re Martin*, 91 F.3d 389, 391 (3d Cir. 1996). In the absence of such disclosure, the Disclosure Statement is inadequate pursuant to section 1125 of the Bankruptcy Code.

## RESERVATION OF RIGHTS

The FTX Debtors expressly reserve all rights, claims, arguments, defenses, and remedies with respect to the Objection, the Disclosure Statement or any other issue in the BlockFi Chapter 11 Cases, and to supplement, modify, and amend this Objection, and to raise additional Objections in writing or orally at the hearing on the Motion.

---

[12] Liquidating Plan, Article IX.A.1, p. 146.

[13] *See Objection of the Official Committee of Unsecured Creditors of Debtors' Second Motion to Extend Exclusivity and Cross-Motion of the Official Committee of Unsecured Creditors for an Order (a) Appointing A Chapter 11 Trustee, (b) Terminating the Debtors' Exclusivity Periods or, Alternatively, (c) Converting These Cases to Chapter 7 Proceedings, and (d) for Other Related Relief*, Docket No. 1131-1, ¶¶ 15-24, 32, 35, 42-43.

**CONCLUSION**

The FTX Debtors respectfully request that the Court deny the Motion in its entirety until such time that the BlockFi Debtors address the deficiencies in the confirmation schedule and disclosure described herein.

Dated: July 5, 2023
New York, New York

*/s/ James L. Bromley*
James L. Bromley (NJ Bar No. 1551996)
Andrew G. Dietderich (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Benjamin S. Beller (*pro hac vice* to be filed)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: bromleyj@sullcrom.com
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
bellerb@sullcrom.com

*Counsel for the FTX Debtors*