**REED SMITH LLP**
Kurt F. Gwynne, Esq. (NJ Bar No. 02351992)
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com

*Counsel to the Ad Hoc Group of*
*Actual Wallet Holders*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,[1]<br><br>                    Debtors. | Chapter 11<br><br>22-19361 (MBK)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 1143**<br>**Objection Deadline: July 6, 2023** |

### AD HOC GROUP OF ACTUAL WALLET HOLDERS' OBJECTION CONCERNING THE DEBTORS' APPLICATION IN LIEU OF MOTION (I) ESTABLISHING THAT ALL WITHDRAWALS OF WALLET ASSETS ARE FINAL AND (II) GRANTING RELATED RELIEF

The Ad Hoc Group of Actual Wallet Holders[2] (the "Actual Wallet Holders"), by and through its undersigned counsel, files this *Objection to the Debtors' Application in Lieu of a Motion in Support of Entry of an Order (I) Establishing that all Withdrawals of Wallet Assets are*

---

[1] The "Debtors" in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015);.BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2] The following entities and individuals constitute the Ad Hoc Group of Actual Wallet Holders: (i) BCF 2020 Investments, LLC; (ii) BMB 2020 Investments, LLC; (iii) Brent Pratt; (iv) Bryant Foulger; (v) Clayton Foulger; (vi) FP Equity Investments, LLC; and (vii) Scott Foulger.

*Final and (II) Granting Related Relief* [D.I. 1143] (the "Application") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors incorrectly filed the Application pursuant to pursuant to D.N.J. LBR 9021-1(b). That rule sets forth a procedure for presenting a consent order by application, in lieu of a motion. The Application, however, does not state that any party consents to entry of the Proposed Order. The Actual Wallet Holders are among those directly affected by the proposed order attached to the Application (the "Proposed Order"). The Actual Wallet Holders object to the Application and the Proposed Order.

2. By the Application, the Debtors seek to (i) rewrite the BlockFi General Terms of Service (the "General Terms") and the BlockFi Wallet Terms (the "Wallet Terms" and, together with the General Terms, the "Terms of Service"), both of which govern almost all of the subject matter addressed in the Proposed Order and (ii) obtain an advisory opinion concerning the validity and effectiveness of the rewritten Terms of Service included in the Proposed Order. The Terms of Service are attached as Exhibit A.

3. For the foregoing reasons, as discussed more fully below, the Court should deny the Application.

## BACKGROUND

4. On November 28, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[3]

### A. The Wallet Order

5. On May 17, 2023, the Court entered the *Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* [D.I. 923] (the "Wallet Order").

6. Pursuant to the Wallet Order, the Debtors are authorized to transact withdrawals of Wallet Assets[4] that were in Custodial Omnibus Wallet Accounts as of the Platform Pause Time Stamp. The Debtors state that they anticipate processing Wallet Withdrawals of assets not subject to alleged preference claims before the end of the summer of 2023.

### B. Wallet Withdrawals Are Already Governed by BlockFi's Terms of Service.

7. Use of the Debtors' online platform, generally, and Wallet Withdrawals, specifically, are governed by the detailed Terms of Service,[5] which include multiple provisions in which the Debtors disclaim liability. *See* Wallet Terms at ¶¶ D.4, D.5, H.2, I.2., R.1; General Terms at pp. 6-7, 11.

8. The Terms of Service also incorporate a list of ordinary transaction fees that will be deducted from the amount of digital assets a user withdraws from such user's BlockFi Wallet.

---

[3] 11 U.S.C. § 101 *et seq*.
[4] Capitalized terms not defined herein have the meanings given to them in the Application.

[5] The Actual Wallet Holders' recitation of the Terms of Service are not and should not be construed as an admission as to the validity or effectiveness of any such terms.

*See* General Terms at p. 7; Wallet Terms at ¶ D.6.  The Wallet Order confirms that such ordinary fees charged in connection with Wallet Withdrawals are those set forth in the Terms of Service:

> . . . all complete or partial withdrawals or distributions from the Client Wallet Accounts shall be subject to the ordinary withdrawal fees provided for under the [Wallet Terms] and the cost of facilitating the withdrawals shall be mitigated insofar as reasonably practicable by the Debtors.

Wallet Order at ¶ 5.

### C.    The Proposed Order

9.    The Proposed Order provides that the Debtors will not be liable for *any* user error, third-party error, or "other unforeseeable operational or technical difficulties that may arise in the Wallet Withdrawal Process, including without limitation, if any digital assets become irretrievable or unrecoverable due to" among other things, hacked or compromised passwords.  Proposed Order ¶ 4.  The Terms of Service addressing this issue provide that the Debtors' release from liability is "subject to applicable law."  General Terms at pp. 3-4.  The Proposed Order expands the release in the Terms of Service by omitting the words "subject to applicable law."  *Id.*

10.    Notably, the Proposed Order does not carve out from "unforeseeable operational or technical difficulties" those caused by *the Debtors'* acts or omissions.

11.    The Proposed Order further provides that, "all withdrawals of digital assets pursuant to the Wallet Withdrawal Process shall be net of any applicable third-party transaction fees and/or blockchain-related fees, *including* those described in the BlockFi Wallet Terms of Service." Proposed Order ¶ 3 (emphasis added).

## OBJECTION

### A.    The Application Does Not Comply with D.N.J. LBR 9021-1(b) and the Actual Wallet Holders Do Not Consent to It.

12. The Proposed Order was presented via application in lieu of a motion pursuant to D.N.J. LBR 9021-1(b), which provides as follows:

> **(b) Consent order in lieu of motion.** A proposed consent order submitted in lieu of a motion may be presented by application. The application must include the facts and law supporting entry of the proposed consent order.

13. The Application does not state that any party has consented to entry of the Proposed Order. Indeed, the Actual Wallet Holders – who would be directly affected by the relief sought in the Application – were not consulted about nor have they consented to entry of the Proposed Order. The Actual Wallet Holders oppose the relief requested in the Proposed Order.

### B. The Bankruptcy Code Does Not Authorize the Debtors to Rewrite the Terms of Service.

14. No provision of the Bankruptcy Code authorizes the Debtors (or the Court) to expand the Terms of Service. Not even section 105(a) of the Bankruptcy Code can justify the relief requested by the Debtors. In reversing a district court's determination that it could expand contractual obligations, the Third Circuit held that the district court "believed . . . that section 105(a) empowered it to expand contractual obligations of the parties, if the balance of the equities favored such an expansion. Such a proposition runs afoul of the principal that section 105(a) is not a substantive source of rights." *In re Morristown & Erie R.R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989); *see generally Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("'it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement he chose to enter'") (quoting *Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1181 (3d Cir. 1979)); *MFS Telecom, Inc. v. Motorola, Inc.* (*In re Conxus Communs., Inc.*), 262 B.R. 893, 899 (D. Del. 2001) (noting that Third Circuit reversed the

bankruptcy court in *Morristown & Erie* because it "expanded contractual obligation of non-debtor party").

15. The Application should be denied because the Proposed Order seeks to rewrite (*i.e.,* expand) the Terms of Service with respect to (a) the Debtors' release of liability and (b) the third-party transaction fees for which Wallet Holders are liable. Both of these issues are already governed by the Terms of Service and, in the case of transaction fees, also by the Wallet Order.

16. As indicated above, the Terms of Service already contain provisions addressing the Debtors' release from liability for (i) compromised or hacked accounts, user ID's and passwords and (ii) irretrievable or permanently lost digital assets due to a user's provision of incorrect information, attempts to transfer digital assets to unsupported accounts or via unsupported networks, and third-party operational error. Wallet Terms at ¶¶ D.4, D.5, H.2, I.2., R.1; General Terms at pp. 6-7, 11. The Proposed Order would expand these provisions by removing the qualifying language "subject to applicable law." Thus, the Proposed Order provides for the potential release of the Debtors from liability for "unforeseeable or operational or technical difficulties" that were caused by *the Debtors'* acts or omissions, such as a hack of *the Debtors'* systems that compromises users' passwords or accounts.[6]

17. The Terms of Service incorporate a list of transaction fees chargeable by the Debtors in connection with Wallet Withdrawals. General Terms at p. 7; Wallet Terms at ¶ D.6. The Wallet Order confirmed that Wallet Withdrawals are subject to the "*ordinary* withdrawal fees

---

[6] The Debtors have the right to change their Terms and Conditions from time to time and the continued use of the platform constitutes consent to such changes. *See* General Terms, p. 1. Here, however, the Debtors have prohibited the Actual Wallet Holders from withdrawing their assets while the platform is being worked on to add functionality to deal with the preference issue. Nothing in the Terms of Service authorizes the Debtors to refuse to permit withdrawal of assets and then impose new terms and conditions on such withdrawals.

provided for under the [Wallet Terms]." Wallet Order at ¶ 5. The Proposed Order, however, would allow the Debtors to charge or subject users to an additional, unknown universe of "third-party transaction fees" or "blockchain related fees" not provided for in the Terms of Service. *See* Proposed Order ¶ 3.

### C. The Application is a Request for an Advisory Opinion Concerning the Validity and Enforceability of the Terms of Service.

18. "'The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.'" *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 853 (3d Cir. 1996) (quoting 12 Wright, Miller, Cooper, FEDERAL PRACTICE AND PROCEDURE § 3529.1, p. 293 (2d ed. 1984)). The Application is an attempt to convert certain of the Terms of Service, set forth in a private contract, into an order of the Court. As shown above, the Terms of Service already govern almost all the terms in the Proposed Order related to Wallet Withdrawals. There is presently no case or controversy before the Court concerning the validity and enforceability of the Terms of Service. If granted, the Proposed Order would, in essence, constitute an advisory opinion that certain of the Terms of Service are valid and enforceable by a Court. The Application should be denied.

### CONCLUSION

19. The Application was not properly filed pursuant to D.N.J. LBR 9021-1(b). The Application does not state the consent of any party and should not have been filed without the Actual Wallet Holders' consent. In addition, the Application (i) seeks to expand the Terms of Service and supplement the Wallet Order and (ii) constitutes an advisory opinion concerning the validity and effectiveness of the Terms of Service.

WHEREFORE, for the reasons set forth herein, the Actual Wallet Holders respectfully request that the Court enter an order (i) denying the Application and (ii) granting to the Actual Wallet Holders such other relief as is appropriate.

Respectfully submitted,

Dated: July 6, 2023

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne (NJ Bar No. 02351992)
REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, NJ 08540
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com

Counsel for the Ad Hoc Group of
Actual Wallet Holders