**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

|  |  |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' PARTIAL OPPOSITION TO THE COMMITTEE'S MOTION "TO FILE UNREDACTED COPIES OF THE COMMITTEE'S PRELIMINARY REPORT AND PLAN STATEMENT AND OBJECTION TO THE MOTION TO SEAL THE REPORT"**

The Official Committee of Unsecured Creditors ("Committee") asks the Court to publicize and broadly disseminate a hit piece its counsel drafted against the Debtors' management team, which the Committee admits is a premature effort to poison a future vote on the proposed Plan. While the Debtors welcome transparency in the context of actual formal motion practice, the Committee's smear campaign was clearly unauthorized and improper when it began, and its most recent publicity stunt is similarly flawed. The Court should only permit disclosure of *appropriate* information to creditors in the context of an *actual substantive motion*.

---

[1] The Debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A)); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

Thus, in partial opposition to the *Motion of the Official Committee of Unsecured Creditors to File Unredacted Copies of the Committee's Preliminary Report and Plan Statement and Objection to the Motion to Seal the Report* [Docket No. 1136] (the "Motion"), the Debtors state as follows:

1. On November 28, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2] On December 21, 2022, the Office of the United States Trustee appointed the Committee [Docket No. 130, as amended by Docket No. 131].

2. Shortly after the Committee's appointment, three sets of Committee advisors began deluging the Debtors with incredibly broad demands for information. And the Debtors and their advisors worked hard to provide the Committee with information on an extremely expedited basis. To facilitate that process, the Debtors set up an Intralinks datasite where documents (including substantial confidential information of the Debtors and third parties) were posted for review by Committee professionals, and the Debtors also made separate productions to Committee counsel. Separately, BlockFi provided the Committee's advisors with access to their internal TORCH and related accounting systems, so the Committee could, as it had requested, attempt to audit every single crypto transaction in the history of BlockFi. The Debtors made this information available to Committee advisors voluntarily on the premise that it would not be abused. And the Debtors would not have so agreed but for the Committee's agreement to, and the Court's entry of, a

---

[2] As described in the Debtors' *Reply in Support of their Second Exclusivity Motion*, filed contemporaneously herewith, certain of the Debtors' business operations remain ongoing, and the Debtors continue to actively prepare to make distributions through the BlockFi platform—which they anticipate being able to complete unless the Committee's obstruction makes that impossible.

standard, straightforward Protective Order governing the review and use of the information produced and protecting the estates from misuse. *See Confidential Stipulation and Protective Order* [Docket No. 498].

3. To move the case forward promptly, the Debtors filed a proposed chapter 11 plan on the first day of the case [Docket No. 22] providing the possibility of a third party sale or, if there was no better alternative, a toggle to a standalone plan. After delays at the request of the Committee, bidding procedures were approved on January 30, 2023 [Docket No. 441] and the bidding deadline for customer platform assets was set for April 4, 2023 at 12:00 p.m. [Docket No. 638]

4. After the bid deadline for customer platform assets passed, the Debtors and their advisors met with the Committee's advisors for over five hours on April 10, 2023, to discuss a case confirmation schedule and considerations underlying the proposed timeline, including the time needed to evaluate whether to proceed with a self-liquidating plan or a transaction in a highly challenging regulatory environment, the time needed to solicit parties, and statutory notice periods. The Debtors believed they had reached agreement with the Committee on the needed timeline at the conclusion of that meeting, but the Committee reneged the next day, so the parties proceeded to a hearing on the initial exclusivity motion. The Court entered an order on April 19, 2023, extending the Debtors' filing exclusivity period through May 15, 2023 [Docket No. 755].

5. The Debtors attempted to work further with the Committee on an amended plan prior to the May 15 deadline, providing the Committee with a draft of a proposed amended plan and soliciting comments. But the parties were not able to reach agreement and the May 15 deadline was imminent. To meet the deadline, the Debtors filed an amended standalone plan [Docket

3

No. 875] (the "Plan") and disclosure statement [Docket No. 874] (the "Disclosure Statement") on Friday, May 12, 2023.

6. The Committee responded to the filing of the amended Plan with a flurry of activity. The Committee's activities included a single motion seeking relief from the Court, which the Court addressed and resolved in full. [*See* Docket Nos. 895, 933]. But the Committee did not stop there.

7. The next business day, the Committee filed a "*Statement of the Official Committee of Unsecured Creditors Respecting the Debtors' Amended Chapter 11 Plan*" [Docket No. 899] (the "Statement"). Two days later, at 1:12 AM ET (in the middle of the night prior to a court hearing), the Committee filed a document titled "*Preliminary Report Addressing Question Posed by the Official Committee of Unsecured Creditors: Why Did BlockFi Fail?*" [Docket No. 928] (the "Report").

8. **No one** had asked the Committee to draft or file either the Statement or the Report. Nor was either filing authorized by the applicable rules. *E.g.*, Federal Rule of Civil Procedure 7, Federal Rules of Bankruptcy Procedure 7001-02, 7007, 9013-14; Local Bankruptcy Rule 9013-1. Neither document was a "Motion" or a "Response" and neither sought relief from the Court.

9. Instead, the Statement and Report were the lynchpin of a highly inflammatory, value-destructive smear campaign. Both contain a series of potshots from the Committee directed at BlockFi's management team, ignoring what was actually happening on the ground and citing many confidential materials out of context, for one purpose: to inflame the masses and color public opinion against the Debtors. Indeed, it appears the Committee does not care about maximizing recoveries in these cases; it cares only about attacking BlockFi's management team. Both

4

documents affirmatively hurt the interests of the estates generally, and the Committee filed them to express Committee fury while trying to prematurely influence voting on the just-filed plan.[3]

10. Following the filing of the Statement and Report, the Court directed the parties to mediation. When mediation failed, the Committee promptly filed the Motion, asking that the Court direct the public docketing of both the Statement and Report in full and that the Committee be free to "publish and disseminate" both "by any means and in any forum."[4]

11. The Committee's request as filed is without merit. To be clear, however, the Debtors welcome transparency by the *appropriate* submission of *appropriate* information to creditors in connection with an approved disclosure statement, in a way that does not harm creditor recoveries or these chapter 11 estates.

12. ***First***, there was no legal basis for filing the Statement or the Report on the docket in the first place. What are these documents? Neither is a motion or an opposition thereto. Instead, the Committee dumped a 90-page hit piece onto the docket along with some of the cited materials. That is improper. Federal Rule 7(a) says that "only these pleadings are allowed," and the Statement and Report are pleadings that do not qualify. The rules provide for striking unauthorized filings,[5]

---

[3] Ironically, the Committee has argued strenuously that it is improper to advocate in favor of a plan before the Court approves a disclosure statement. Yet it now asks to trash the Debtors (and through them their proposed Plan) in publicly filed pleadings before the Court approves the Disclosure Statement. Both cannot be right.

[4] *See* Motion, Ex. A ¶¶ 3-4.

[5] *See Mason v. Therics, Inc.*, 2010 WL 147882, at *2 (D.N.J. Jan. 12, 2010) (striking reply brief filed without leave and in violation of local rules); *see also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."); *United States v. Neal*, 2008 WL 11337561, at *2 (W.D. Ark. Sept. 29, 2008) (striking docket entries "as immaterial, impertinent, and scandalous"); *see also Blake v. Batmasian*, 2017 WL 10059251, at *4 (S.D. Fla. Oct. 5, 2017) (report and recommendation adopted) ("[C]ourts are clearly permitted to strike filings other than pleadings. [cites] It is crystal clear that courts have the ability to control their dockets and court filings."); *see also Baytops v. Slominski*, 2021 WL 2139093, at *7 (E.D. Mich. May 26, 2021) (report and recommendation adopted) (denying judicial notice of improperly filed discovery materials and warning that future attempts to file the same will be stricken) ("Records may not simply be plowed into the Court's docket as freestanding exhibits; they must normally be attached to a pleading, motion or brief, in support of the same, and explain how they support it.")

but asking for that relief here would only compound the waste the Committee has created. The documents should not be re-filed in unsealed form merely because the Committee wants to make them public, and they should remain on the docket redacted as-is.

13. **Second,** there is little doubt that some of the documents quoted (largely out of context) in the Statement and the Report are subject to protection. Section 105 of the Bankruptcy Code generally permits the Court to enter any Order to protect the estates so long as it is not inconsistent with the Bankruptcy Code. And section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders that will protect people and entities from potential harm:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (i) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (ii) protect a person with respect to scandalous or defamatory mater contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). Bankruptcy Rule 9018 further provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.

Fed. R. Bankr. P. 9018.

12. Contrary to the statements in the Motion, moreover, the Court does not need "good cause" to maintain a seal on these matters. To the contrary, if material sought to be protected falls within any one of the enumerated categories (commercial information, defamatory matter, or

6

governmental matters), "the court is *required* to protect a requesting interested party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original).

13. Moreover, "[c]ourts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005). Courts must provide such protections "generally where open inspection may be used as a vehicle for improper purposes." *Orion Pictures*, 21 F.3d at 27. Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003).

14. There is no question that the Statement and Report both contain: (1) confidential information of the debtors and third parties *and* (2) highly defamatory assertions that will be used affirmatively by the Debtors' adversaries.[6] Indeed, the Committee admits that is why it is trying to make them public—to poison BlockFi's well. Under the applicable law, however, that is the very reason to protect the documents and these chapter 11 estates.

15. All that said, as stated above, the Debtors welcome transparency in the context of an objection to a motion that creates an actual contested matter specifically requiring the disclosure of relevant information, so long as that disclosure does not harm the estates. Thus, the Debtors have no objection to the transmission of an appropriate amount of information to creditors about the Committee's position on the Plan in connection with the approval of the Disclosure Statement;

---

[6] In fact, reviewing the time entries that are publicly available for certain of the Debtors' adversaries, we know that they are reviewing the Committee's filings with interests and preparing to use them in an effort to harm BlockFi and its creditors' interests. It is shocking that any estate fiduciary would intentionally harm creditor recoveries in this way.

7

that is what the parties will presumably discuss at the Disclosure Statement hearing on August 16.[7] Moreover, based on its positioning to date, the Debtors anticipate litigation with the Committee concerning the 9019 Settlement Motion.[8] *In that context*, the Debtors will provide the Committee a proposed redacted version of the Report and Statement that the Committee can utilize in its anticipated Objection to the 9019 Settlement Motion. But there is no legal basis for the Committee to simply dump a 90-page slanderous smear campaign laden with the confidential information of the Debtors and third parties (along with selected discovery materials) on the docket, merely because the Committee believes ad hominem attacks on the Debtors management team will advance its litigation strategy.

[*Remainder of page intentionally left blank*]

---

[7] Notably, no BlockFi client objected to the Disclosure Statement, and the deadline for doing so has passed, so there is no reason to provide additional information except in connection with the approval of a Disclosure Statement.

[8] *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement and Release of Claims and Causes of Action By and Among the Debtors and Certain of the Debtors' Insiders and (II) Granting Related Relief* [Docket No. 1173].

WHEREFORE, the Debtors object in part to the Motion and ask that it be denied outright or, in the alternative, limited to the provision of appropriately-redacted content on the docket in connection with an actual Adversary Proceeding or Contested Matter.

Respectfully Submitted,

Dated: July 10, 2023

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*