| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| BROWN RUDNICK LLP<br>Robert J. Stark, Esq.<br>Kenneth J. Aulet, Esq.<br>Bennett S. Silverberg, Esq.<br>Seven Times Square<br>New York, NY  10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: rstark@brownrudnick.com<br>         kaulet@brownrudnick.com<br>         bsilverberg@brownrudnick.com<br>*Counsel for the Official Committee of Unsecured Creditors*<br> -and-<br>GENOVA BURNS LLC.<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Telephone: (973) 230-2095<br>Fax: (973) 533-1112<br>Email: DStolz@genovaburns.com<br>         DClarke@genovaburns.com<br>         GKinoian@genovaburns.com<br>*Local Counsel for the Official Committee of Unsecured Creditors* | BROWN RUDNICK LLP<br>Stephen D. Palley, Esq.<br>601 Thirteenth Street, NW<br>Washington, DC  20005<br>Telephone: (202) 536-1700<br>Fax: (202) 536-1701<br>Email:  spalley@brownrudnick.com<br><br>BROWN RUDNICK LLP<br>One Financial Center<br>Boston, MA  02111<br>Tristan Axelrod, Esq.<br>Sharon I. Dwoskin, Esq.<br>Telephone: (617) 856-8200<br>Fax:  (617) 856-8201<br>Email: taxelrod@brownrudnick.com<br>         sdwoskin@brownrudnick.com |
| In re:<br><br>BLOCKFI INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>Jointly Administered |

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ  08691.

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' SUPPLEMENTAL OBJECTION TO THE DEBTORS'
SECOND MOTION TO EXTEND EXCLUSIVITY PERIODS**

The Official Committee of Unsecured Creditors (the "**Committee**") duly appointed in the above-captioned Chapter 11 cases of BlockFi, Inc. and its affiliated debtors (collectively, the "**Debtors**" or "**BlockFi**"), by and through its undersigned counsel, hereby submits this supplemental objection (the "**Supplemental Objection**") to the *Debtors' Second Motion for Entry of an Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No 886] (the "**Debtors' Exclusivity Extension Motion**").[2,3] In support of this Supplemental Objection, the Committee respectfully states as follows:

**POINTS ON SUPPLEMENTAL OBJECTION**

1. By now, the Court may find it laborious (perhaps even eye-rolling) sifting through all the rhetoric and vitriol, trying to get to substance. The Debtors' "reply" brief [Docket No. 1175] (the "**Reply**") really lays it on thick. Hopefully, this will be more helpful.

2. This bankruptcy is, in actuality, quite simple. The business is dead and the case will end as a liquidation, one way or another. No one disputes that. For all this fighting, there

---

[2] The Committee recognizes the rather strange procedural posture at this current juncture. As it stands, the Debtors' Exclusivity Extension Motion is set for hearing on July 13, 2023, while the Committee's cross-motion requesting, as one of several alternatives, termination of exclusivity, is set for hearing on August 16, 2023. *See* Minute Order entered July 11, 2023. As the factual and legal issues in the pleadings overlap, out of an abundance of caution, the Committee files this Supplemental Objection solely in connection with the parties' exclusivity briefings.

[3] The Committee incorporates by reference its *Objection of the Official Committee of Unsecured Creditors to Debtors' Second Motion to Extend Exclusivity and Cross-Motion of the Official Committee of Unsecured Creditors for an Order (A) Appointing a Chapter 11 Trustee, (B) Terminating the Debtors' Exclusivity Periods or, Alternatively, (C) Converting These Cases to Chapter 7 Proceedings, and (D) For Other Related Relief* [Docket No. 1131] (the "**Exclusivity Extension Objection**") and its *Reply in Support of Motion of the Official Committee of Unsecured Creditors to File Unredacted Copies of the Committee's Preliminary Report and Plan Statement and Objection to Motion to Seal the Report* (filed contemporaneously herewith, the "**Committee's Unsealing Reply**").

2

really is only one issue (one!) standing in the way of case resolution. That question is this: Do the estates possess claims against insiders that: (1) ought to be preserved for post-confirmation prosecution/settlement; or (2) released or settled pre-confirmation for a few million dollars? The Committee believes the answer is (1) and the Debtors believe the answer is (2). Both sides have conviction in their beliefs.

3.  The bitter cross-advocacy does not help the Court answer the overarching question. And, in certain respects, it sort of misses the point, focusing instead on motivations/tactics. The Committee, on the one hand, contends that the Debtors are hiding the truth, intentionally driving up costs, and creating obstacles to compel releases. The Debtors, on the other hand, contend that the Committee is the one driving the costs and compounding the litigation by refusing to yield.

4.  One would think, with professionals like those at work here, the parties would be able to reach an accommodation. The parties dedicated weeks trying to negotiate a solution, but they could not get there. After the Court ordered the Debtors to remediate an improper solicitation, the parties were sent to mediation. The mediation was led by a widely respected Bankruptcy Judge (retired), and lasted weeks. This too did not work out. Almost immediately after the mediation ended, the Debtors announced they had settled the insider claims for a few million dollars. The Committee filed its Cross-Motion.

5.  The boxers are in their respective corners. They both are well conditioned and trained to hit really, really hard. This bout might go the distance. It will be costly, in various ways. The bell is about to ring.

6.  At this precise moment, the case faces a pressing question: What can the Court do to stop the fight before it has begun? No one disputes that stopping the fight is best. The parties just seem to have difficulty finding a path to peace. But, what can the Court do that private

negotiation and an eminent mediator could not? The Committee proposes the following two steps for the Court's consideration.

7.  **The First Step.**  This one should be easy and non-controversial (but, we are in litigation so, of course, everything is difficult).  The Debtors have repeatedly publicized their case narrative: (i) in their "first day" pleadings; (ii) in nearly eight months of motion practice; (iii) in their improper solicitation that the Court ordered be remediated; (iv) in their draft disclosure statements; (iv) in their Reply; and, most recently, (v) in an extended "analysis" drafted by Kirkland & Ellis and attached to their recently filed Rule 9019 settlement motion [Docket No. 1173].

8.  The Committee, by contrast, has not yet been authorized to make public its counter-narrative (i.e., its Investigative Report remains under seal, even though the Kirkland "analysis" discusses it at length).  That is not how bankruptcy's adversary process is supposed to work.  But, more to the point, creditors today have little visibility into what all the fuss is about.  The parties are not going to make any progress until the facts are in the open.  No disclosure statement can be approved.  No plan vote can be solicited.  No case dispositive motion practice can be adjudicated.

9.  One would think unsealing shouldn't be controversial given that it all will come out in the upcoming (August 16th) litigation.  It is even harder to see any reason for dispute when the Debtors say -- over and over and over again -- they do not fear the facts and they do not believe that the Committee's Investigative Report presents a meaningful obstacle to plan releases or settlement approval.  *See* Reply at ¶ 5 (describing the Committee's investigative work as, among other things, "lacking in merit").

10.  So, then, let's get on with it.  Let's quickly get everything finally out and in the open.  Then, the case will – for the first time – facilitate open, knowledgeable engagement with

4

creditors. That will, among other things, allow the Committee (and the Court) to hear directly from the 650,000+ creditors as to how they think – once they are aware of both sides of the story – the Committee (and the Court) should go about trying to end the case.

11.     **The Second Step**.  This gets a bit more tricky.  At the July 3d scheduling conference, the Court determined to "stage" litigation over the Debtors' Plan and the Committee's Cross-Motion.  The hearing on July 13th will be non-evidentiary and only consider: (1) the Debtors' Exclusivity Extension Motion; and (2) the Committee's request to unseal its Investigative Report. The hearing on August 16th will be the "big show," where evidence will be adduced regarding the Debtors' proposed Disclosure Statement and the Committee's Cross-Motion. It was a Solomonic ruling, perhaps intended to promote settlement discussions.

12.     Here's the problem.  Exclusivity is not a small thing in the eyes of the law and, just as important, this is the third time the Committee has sought to introduce – and the Court has declined to allow – evidence at a very meaningful hearing.[4]  This was not lost on the Debtors, who now must believe they are "winning the war of attrition."  Some proof.  The Debtors committed, at the July 3d scheduling conference, to engage with the Committee this past week on cost-cutting initiatives.  They did not honor that commitment.  There were a few oblique conversations between financial advisors, but nothing meaningful or concrete ever emerged.  The Debtors concede as much.  *See* Reply at note 20.  So, while we wait around for the "big show" on August 16th, the estates burn another $16 million, and that suits the Debtors' strategy just fine.

---

[4] *See* Apr. 19, 2023 Hr'g Tr. at 21:12-17; May 18, 2023 Hr'g Tr. at 7:6-14. *See also* 2002 Advisory Comm'ee Note to Rule 9014 ("Subdivision (d) is added to clarify that if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held…"); *Cregar v. Barclay (In re Cregar)*, 2010 WL 6452905, at *5 (9th Cir. B.A.P. Nov. 19, 2010) (vacating and remanding bankruptcy court order where bankruptcy court refused to hold an evidentiary hearing on disputed material factual issues.).

13. The second step to peace requires the Court to disable both sides of the dispute from "weaponizing" administrative expense any further. The answer to the case's overarching question should not, under any circumstance, be determined by delay and artificial administrative cost. It should be determined by (i) admissible evidence and the Court's legal analysis **or** (ii) by creditor vote. That is how bankruptcy law says it should be revolved.

14. The tricky part is figuring out how the Court can "de-weaponize" administrative cost. One idea is to suspend all professional fee allowances, and the Committee volunteered that suggestion at the July 3d scheduling conference. Unsurprisingly, that idea was not warmly embraced on the Debtors' side and, regardless, it only goes so far.

15. Opening exclusivity may seem, at first blush, a weird way to establish balance, but it is worth deeper consideration. Again, today, this is a simple bankruptcy estate, with a simple capital structure, and there is only one issue dividing the parties. In a matter of hours, two nearly identical plans can be on the case docket, one preserving litigation claims against insiders (the Committee's plan) and one releasing/settling such claims (the Debtors' plan). Both plans would be accompanied by a unified disclosure statement, where the Committee and the Debtors can each be allowed to deliver their respective viewpoints, as well as (perhaps) the Committee's Investigative Report and the Kirkland "analysis" report. The August 16th hearing would then become largely moot. The sole issue at that hearing would be getting disclosure right.

16. The creditors (now fully informed) would be the ones to decide which is the best way to proceed out of bankruptcy, releases or no releases. No more pre-confirmation litigation. No more administrative burn. The Court would avoid the massive trial. The outcome would – either way (Committee plan or Debtor plan) – be principled, democratic, fair, and efficient. And, interestingly enough, it fully accepts the Debtors' line of advocacy, given the Debtors' prediction

that "any rational creditor would vote 'yes' on the proposed Plan." Reply at ¶ 6. If there is **any** conviction behind that statement, then the Debtors would readily agree to put it to a fair vote.

17. All in all, what this does is evenly balance the risks on both sides of the "v". That is, in our experience, the surest – and here perhaps only – way to get this case finally settled, once and for all. And, a way to settlement is something that this case sorely needs.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court enter an order: (i) sustaining the Committee's Exclusivity Objection; (ii) denying the relief requested in the Debtors' Exclusivity Extension Motion; and (iii) granting the Committee such other and further relief as is just and proper.

Respectfully submitted,

By: */s/ Donald W. Clarke*
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Fax:           (973) 533-1112
Email:     DStolz@genovaburns.com
                DClarke@genovaburns.com
                GKinoian@genovaburns.com

*Local Counsel for the Official Committee of Unsecured Creditors*

New York, New York
Dated: July 12, 2023

By: */s/     Robert J. Stark*
**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square

7

New York, New York 10036
Telephone: (212) 209-4800
Fax:         (212) 209-4801
Email:      rstark@brownrudnick.com

Stephen D. Palley, Esq.
601 Thirteenth Street, NW
Washington, DC  20005
Telephone: (202) 536-1700
Fax:         (202) 536-1701
Email:      spalley@brownrudnick.com

Tristan G. Axelrod, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Fax:         (617) 856-8201
Email:      taxelrod@brownrudnick.com

*Counsel for the Official
Committee of Unsecured Creditors*