UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**GORSKI & KNOWLTON PC**
Carol L. Knowlton (NJ Bar No. 017501981)
311 Whitehorse Avenue, Suite A
Hamilton, New Jersey 08610

*Counsel for Creditor George J. Gerro*

| | |
|---|---|
| In Re:<br><br>BLOCKFI INC., *et al.*,[1]<br><br>　　　　　　Debtors. | Case No.:  22-19361 (MBK)<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date: July 20, 2023<br><br>Judge:  The Honorable Michael B. Kaplan |

**RESPONSE OF GEORGE J. GERRO TO DEBTORS' FOURTH OMNIBUS
OBJECTION TO CERTAIN CLAIMS; <u>AND</u>**

**CROSS-MOTION OF GEORGE J. GERRO
FOR AN ORDER TEMPORARILY ALLOWING CLAIM NO. 12386
PURSUANT TO F.R.B.P. RULE 3018(a) FOR THE SOLE PURPOSE OF
VOTING ON A CHAPTER 11 PLAN**

Creditor George J. Gerro's ("Gerro") hereby responds to *Debtors' Fourth Omnibus*

*Objection to Certain Claims (duplicates, books and records, debtor not liable)* [Docket No.

1069] ("Objection").  Gerro respectfully requests that BlockFi's Objection be overruled, and that

Proof of Claim Number 12386 be allowed in the amount of 426 bitcoin..

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC
(5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A);
BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC
(0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors,
Hamilton, NJ 08691.

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.     Concise Statement** | | **3** |
| A.  BlockFi Willfully violated its California Finance Lender License by declaring a forfeiture of Gerro's bitcoin collateral. | | 4 |
| B.  BlockFi's concealed and converted all proceeds from Gerro's collateral. | | 5 |
| C.  BlockFi agreed to "reverse" the liquidations and reinstate Gerro's loan. | | 6 |
| **II.    Jurisdiction and Venue** | | **7** |
| **III.   Standard of Review** | | **7** |
| **IV.   Procedural Posture** | | **8** |
| **V.    Factual Background** | | **9** |
| **VI.   Choice of Law: The California Financing Law Applies to Gerro's Claim** | | **11** |
| A. Restatement § 187 Test Overrides BlockFi's Delaware Choice of Law Clause | | 11 |
| B. The California Financing Law Constitutes the Fundamental Policy of California | | 13 |
| C. California Has a Materially Greater Interest in the Application of its Laws | | 14 |
| D. California Law Otherwise Applies in the Absence of a Choice of Law Clause | | 15 |
| E. To the extent that the Uniform Commercial Code applies, the Choice of Law provision is Irrelevant because there is no Conflict of Law. | | 16 |
| **VII.   Discussion** | | **17** |
| A.     BlockFi willfully violated its California Finance Lender's License and the Financing Law by Using, Possessing, *and* Liquidating Gerro's Bitcoin Collateral. | | 17 |
| i.     *BlockFi had Actual Notice of California Financial Code Section 22009.* | | 18 |
| ii.    *BlockFi's Violation of California Financial Code section 22009 was Willful.* | | 18 |
| B.     BlockFi Willfully Received Unauthorized Consideration from Gerro by Concealing and Converting all Proceeds from Gerro's Bitcoin Collateral to BlockFi's Own Use | | 20 |
| C.     BlockFi Offered to Redeem Gerro's Loan and Breached its Contract. | | 21 |
| D.     Anticipating and Addressing BlockFi's Counter Arguments. | | 23 |
| a.   *BlockFi Cannot Reasonably Interpret California Law as Allowing its Use and Possession of Gerro's Bitcoin Collateral.* | | 23 |
| b.   *Gerro and BlockFi's Prior California Litigation Has No Preclusive Effect.* | | 25 |
| **VIII.  Cross-Motion for an Order Temporarily Allowing Gerro's Claim for Purposes of Voting on a Chapter 11 Plan** | | **27** |

Gerro respectfully requests that Proof of Claim Number 12386 ("Proof of Claim") be allowed in the amount of 426 bitcoin (BTC).  This Response to BlockFi's Objection to Claim No. 12386 is supported by the concurrently filed Certification of George J. Gerro, Exhibit "1" ("Cert.").

Claimant George J. Gerro has the "authority to reconcile, settle, or otherwise resolve the Objection."  *See* Objection, p. 10, ¶ 22(d)(ii).   He may be contacted at 530 S. Glenoaks Blvd., Suite 200, Burbank, California 91502, tel: (818)840-0000, email:  George@GerroLaw.com.

## I.      Concise Statement

The Proof of Claim No. 12386 represents Gerro's 426 bitcoin (BTC) pledged to BlockFi to secure his loan of money from BlockFi.  BlockFi objects to Gerro's Claim, on the basis that BlockFi accelerated Gerro's loan due to a decline in the price of bitcoin and liquidated Gerro's bitcoin collateral to repay BlockFi's loan.  *See* Objection, p. 8, ¶ 17.  BlockFi's objection should be overruled for the reasons set forth in the Proof of Claim:

> BlockFi Lending LLC willfully violated the California Financing Law (Cal. Fin. Code, § 22750(a-b)) by using and possessing Gerro's bitcoin securing his loan, in violation of its California Finance Lender License (*see* Cal. Fin. Code, § 22009) converting the proceeds from Gerro's bitcoin to BlockFi's own use (Cal. Com. Code, § 9207(c)), and breaching its contract with Gerro to redeem the loan.

Cert. Ex. "1," p. 3, ¶ 8 (Proof of Claim) (incorporating 31 attachments).

The California Financing Law [Cal. Fin. Code § 22000 *et seq.*] applies to Gerro's Claim, notwithstanding BlockFi's Delaware choice of law clause, for three reasons.  First, the California Financing Law constitutes the fundamental policy of California.  Second, California has a materially greater interest in the transaction than Delaware, a state which has no substantive connection to the transaction.  Third, California law would otherwise apply in the absence of a

contractual choice of law clause.  In sum, BlockFi's loans were made to a California resident, in his capacity as a consumer, and pursuant to BlockFi's California Finance Lender's license.

**A.      BlockFi Willfully violated its California Finance Lender License by declaring a forfeiture of Gerro's bitcoin collateral.**

BlockFi's Finance Lender's License (60DBO-81955) permits BlockFi to "engage in the business of 'finance lender'… as defined in [California's Financing Law]."  *See* Cert. Gerro, Ex. 1, Att. 14, p. 058.  In turn, the California Financing Law statutorily defines a " 'Finance lender' " as one making loans secured by "personal property, the **use and possession** of which property is **retained by *other than* the** mortgagee or **lender**."  Cal. Fin. Code § 22009 (emphasis added).

BlockFi received actual and written notice, on multiple occasions, that it could not retain possession of bitcoin securing its loans.  For example, by a letter dated April 10, 2018, the State of California admonished BlockFi that it "**cannot hold the borrower's digital assets as collateral**…. **[BlockFi] is conducting or will be conducting activities not authorized under the CFL [California Financing Law]**."  Ex. 1, Att. 9, p. 033.  After acknowledging receipt in writing (*see id*., Att. 11, p. 044) BlockFi violated the California Financing Law by using, possessing, *and* liquidating Gerro's bitcoin collateral.

BlockFi's forfeiture of Gerro's bitcoin collateral was *ultra vires*.  Due to BlockFi's willful violation of the California Financing Law, BlockFi's "contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction."  Cal. Fin. Code § 22750(b).  The statutory remedy requires that BlockFi return Gerro's bitcoin collateral.

In addition to his statutory rights, Gerro's Claim should also be allowed pursuant to the common law.  California defines a pawnbroker as "Every person engaged in the business of

receiving goods … in pledge as security for a loan." Cal. Fin. Code § 21000.  As an unlicensed

pawnbroker, BlockFi cannot refuse to return Gerro's bitcoin collateral.  *See Levinson v. Boas*,

150 Cal. 185, 193-194, 88 P. 825, 828 (1907).


### B.  <u>BlockFi's concealed and converted all proceeds from Gerro's collateral.</u>

The California Financing Law prohibits BlockFi from retaining "use" of Gerro's bitcoin

collateral.  Cal. Fin. Code § 22009.  Furthermore, as a California finance lender, BlockFi cannot

"indirectly charge, contract for, or receive any … consideration greater than the lender would be

permitted by law to charge if he or she were not a licensee."  Cal. Fin. Code § 22326.  In other

words, BlockFi cannot receive any consideration not otherwise allowed under the Uniform

Commercial Code.

Under the Uniform Commercial Code, the proceeds of Gerro's bitcoin belong to Gerro.

U. Com. Code § 9-207(c).  Upon receipt of proceeds belonging to Gerro, BlockFi was required

to hold them as additional security, or remit/credit the proceeds, for Gerro's benefit.  U. Com.

Code § 9-207(c).  Instead, BlockFi concealed and converted the proceeds to BlockFi's own use.

BlockFi's knowing concealment amounts to another independent violation of the California

Financing Law.  Cal. Fin. Code § 22161(a)(6).

Although the rule set forth in the Uniform Commercial Code is waivable, BlockFi's loan

contract did not waive that requirement.  The contract does not authorize BlockFi to lend or lease

Gerro's bitcoin.  Cert. ¶ 34.  The contract does not authorize BlockFi to charge Gerro for the

proceeds from his bitcoin.  *See* Ex. 1, Att. 15, p. 063, ¶ 4(c); Cert. ¶ 34.  Although the contract

authorizes BlockFi to hold Gerro's proceeds as additional security for his loan, BlockFi did not

hold the proceeds for Gerro's benefit.  *See* Ex. 1, Att. 15, p. 063, ¶ 5(a)(vi).

BlockFi willfully leased Gerro's bitcoin to third-parties and willfully concealed and
converted the proceeds to BlockFi's own use.  Accordingly, BlockFi "willfully charged,
contracted for, or received" an amount in violation of Uniform Commercial Code section 9-207,
subsection (c), so the "contract of loan is void, and no person has any right to collect or receive
any principal, charges, or recompense in connection with the transaction."  Cal. Fin. Code
§ 22750(a).  BlockFi's objection should be overruled upon the foregoing grounds too.

### C. **BlockFi agreed to "reverse" the liquidations and reinstate Gerro's loan.**

Within days of BlockFi's forfeiture of Gerro's bitcoin, BlockFi offered to "reverse" its
liquidations for more money.  Cert., Ex. 1, Att. 16, pp. 084-89; Cert. ¶¶ 44, 47, 50, 52.  After one
month, Gerro accepted BlockFi's offer to reinstate his loan.  Cert. ¶ 53.  BlockFi refused to
perform.  Cert., Ex. 1, Att. 16, pp. 084-89, Cert. ¶¶ 54-55.  Then, BlockFi denied the existence of
its offer to reverse the liquidations.  Cert., Ex. 1, Att. 25, p. 117 ("At no time did BlockFi offer
to… reverse the sale of his Collateral, or reinstate the principal balance of his prior Loan").

BlockFi's offer to reverse the liquidations, coupled with its public promotions of bitcoin,
(Cert. Ex. 1, Att. 19-21) demonstrate that BlockFi lacked "good faith" in accelerating Gerro's
loan.  U. Com. Code § 1-309.

In retrospect, BlockFi was incentivized to extract more capital from Gerro for BlockFi's
own use and benefit.  BlockFi's post-liquidation attempt to extract more bitcoin from Gerro
amounts to "dishonest dealings," yet another of BlockFi's violation of the California Financing
Law.  Cal. Fin. Code § 22161(a)(7).  Under the objective theory of contracts, BlockFi breached
its agreement to reinstate Gerro's loan.  Thus, this Bankruptcy Court may also allow the claim on
this alternative basis.

## II.    Jurisdiction and Venue

The United States District Court for the District of New Jersey has original subject matter jurisdiction over this core matter pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(B) (conferring core jurisdiction over "allowance or disallowance of claims against the estate").  The District Court's jurisdiction has been referred to this Court pursuant to the United States Court for the District of New Jersey's Standing Order 12-1, *Standing Order of Reference to the Bankruptcy Court Under Title 11*, originally issued on July 23, 1984, as amended September 18, 2012. Gerro consents to this Court's entry of an order in this matter.

Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 502 and 1126 of the Bankruptcy Code, and Bankruptcy Rules 3001 and 3018(a).

## III.    Standard of Review

A valid proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." F.R.B.P. R. 3001(f).  Since state law governs the enforceability of claims, bankruptcy courts "generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Travelers Cas. And Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450 (2007).  Gerro's valid proof of claim was properly executed, filed, and served before the bar date.  Accordingly, BlockFi must present enough evidence to rebut the *prima facie* proof of claim.

The Bankruptcy Code states that: "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United

States as of the date of the filing of the petition, and shall allow such claim in such amount,

[unless an enumerated exception applies]."  11 U.S.C. § 502(b).  BlockFi must refute at least one

element of Gerro's underlying claim.  Thereafter, Gerro has an opportunity to present evidence

to prove his claim.

If a pending objection has the practical effect of temporarily disenfranchising a creditor

from voting to accept or reject a plan, then bankruptcy courts may "temporarily allow" the claim

for the mere purpose of allowing the creditor to vote pending the outcome of a ruling on the

claim.  Thus, Federal Rules of Bankruptcy Procedure, Rule 3018(a) states that "Notwithstanding

objection to a claim or interest, the court after notice and hearing may temporarily allow the

claim or interest in an amount which the court deems proper for the purpose of accepting or

rejecting a plan."  In practice, this Court can allow Gerro to vote pending a final ruling on

Gerro's Claim.

## IV.    **Procedural Posture**

On May 24, 2023, BlockFi's claims processing agent received Gerro's proof of claim via

Fed Ex (Proof of Claim No. 12386).  The claim was made on the approved Loan Account Holder

Proof of Claim Form (Modified Official Form 410).  Proof of Claim Number 12386 set forth the

basis for Gerro's claim and attached 31 documents incorporated by reference.  Ex. "1," p. 3, ¶ 8.

With the bar date of May 30, 2023 impending, Gerro was awaiting proof of receipt from

the processing agent.  Gerro had no proof of timely compliance other than a Fed Ex tracking

number.  Thus, Gerro submitted the same proof of claim by an online portal (Proof of Claim No.

15248) and expressly indicated: "Already submitted… Hard copy hand delivered by Fed Ex."

See Cert., Ex. "2," p.2, ¶ 5.  Proof of Claim No. 15248 attached Proof of Claim 12386 in its

entirety. Gerro concedes that only Proof of Claim Number 12368 should be allowed.

The Proof of Claim requests 426 bitcoin belonging to Gerro.  Gerro's claim excludes all

interest, damages, fees, costs, and proceeds from Gerro's bitcoin collateral.

BlockFi's objection to Gerro's claim only states, in relevant part, that "the Claimant had a

loan with BlockFi Lending LLC that was paid in full in March 2020 and all remaining bitcoin in

the Claimant's Wallet was withdrawn by the Claimant that same month.  The Claimant has not

made any deposits or transacted any business with any of the Debtors since March 2020 and has

no remaining amounts of digital currency in any accounts with Debtors."  Debtors' Fourth

Omnibus Objection to Certain Claims, p. 8, ¶ 17 [Docket No. 1069] ("Objection").  The

Objection completely fails to address the merits of the claim as set forth in the Proof of Claim

and attached documents.  BlockFi's Objection does not meet BlockFi's burden of proof.


## V.     Factual Background

In 2018, BlockFi Lending LLC ("BlockFi") applied for a California Finance Lender's

license. Cert. ¶¶ 18.  During BlockFi's application process, the State of California expressly

prohibited BlockFi from taking possession of bitcoin securing its loans.  Cert. ¶¶ 21, 24, 25.

BlockFi "Updated [its] Business Plan" to making loans secured by "consumer applicants'

holdings of cryptocurrencies, *which they* [the consumers] *possess*."  Cert. Ex. 1, Att. 10, p. 035

(italics added).

BlockFi, including its Vice President Flori Marquez, received actual notice of the

proscriptions against possessing California collateral.  Cert. ¶¶ 22, 26-27.  Nevertheless,

BlockFi's counsel confidentially requested an interpretive opinion to enable possession of

collateral.  Cert. ¶ 27.  BlockFi "request[ed] that, if the Department reaches a preliminary

conclusion in its review of this request that a finance lender may not hold collateral… [that

BlockFi] be permitted to withdraw this request."  Cert. Ex. 1, Att. 11, p. 047.  Tellingly, the

Department later informed Gerro in writing that "no opinion was ever issued by the

[Department] due to the opinion request being withdrawn by BlockFi."  Cert. Ex. 1, Att. 13, p.

051.

        In 2019, BlockFi took actual possession of Gerro's bitcoin collateral.  Cert. ¶ 34.

BlockFi leased Gerro's bitcoin and concealed the proceeds from Gerro.  *Ibid.*  The *Declaration*

*of Mark Renzi in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket. No.

17] similarly confirms that "loan collateral for Retail Client Loans … were going to be used for

lending to generate the yields provided to [BIA] clients."  *Id.* at  ¶¶ 26, 45.  Gerro was one such

"retail loan client," i.e. consumer borrower.  Cert. ¶ 31.

        On March 12, 2020, a bitcoin price drop startled BlockFi into declaring that Gerro

forfeited almost all of his bitcoin collateral.  Cert. ¶ 35.  BlockFi said that it liquidated Gerro's

bitcoin "when there was v*ery little liquidity in the market*."  Cert. ¶ 43 (italics added).  In other

words, BlockFi liquidated Gerro's bitcoin in a commercially unreasonable manner.  Cert. ¶ 45.

BlockFi provided no details regarding its liquidations.  Cert. ¶ 42.  BlockFi reduced the amount

realized on Gerro's first liquidation without any explanation.  Cert. ¶ 39.  BlockFi sent a third

liquidation notice which supposedly occurred before the second liquidation notice.  Cert. ¶ 42.

At the time of the third notification, the bitcoin price was "one thousand dollars higher" than

BlockFi's liquidation price.  Cert. ¶ 42.

        Meanwhile, while BlockFi was liquidating Gerro's bitcoin collateral, BlockFi's

executives were purchasing bitcoin for their own accounts and publicizing their own purchases.

Cert. Att. 19-21.  The BlockFi Twitter Account referred to the bitcoin price decline as a "dip" to

be "bought," with 68.9% of its participating followers voting "Yes."  Cert. Att. 21.

Almost immediately after BlockFi's liquidations, BlockFi offered to "reverse" the

liquidations if Gerro would send BlockFi more capital.  Cert. ¶ 44.  In retrospect, BlockFi was

using Gerro to obtain more capital to use in BlockFi's business.  Cert. ¶ 45.  Thus, when Gerro

accepted BlockFi's offer one month later, using BlockFi's own formula, BlockFi refused to

honor its agreement because "the offer expired in March after your loan defaulted."  Cert. ¶ 54.


## VI.      Choice of Law: The California Financing Law Applies to Gerro's Claim

"[T]he ' " 'basic federal rule' " in bankruptcy is that state law governs the substance of

claims."  *Travelers Cas. And Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443,

450 (2007).  Here, notwithstanding a Delaware choice of law clause, the California Financing

Law applies to Gerro's claim for the following reasons.  First, California's Financing Law

constitutes California's fundamental policy.  Second, California has a materially greater interest

than Delaware in governing the loan between Gerro and a California Finance Lender.  Third,

California law would otherwise apply in the absence of a choice of law clause.  Delaware has no

substantive connection to the transactions between Gerro and BlockFi.


## A.      Restatement § 187 Test Overrides BlockFi's Delaware Choice of Law Clause

Restatement (Second) Conflict of Laws, Section 187, subsection (2) ("Restatement

§ 187") constitutes the majority rule, governing in Delaware, California, New Jersey, and the

Third Circuit.  *See Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 957 (Del. Ch. Ct.

2020); *North Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys.*, 158 N.J. 561,

568, 730 A.2d 843, 847 (N.J. 1999), *Pitzer Coll. v. Indian Harbor Ins. Co.,* 8 Cal. 5th 93, 100,

447 P.3d 669, 673 (Cal. 2019).  Under Restatement § 187, a contractual choice of law cannot be

"contrary to a *fundamental policy* of a state which has a *materially greater interest* than the

chosen state in the determination of the particular issue and which, under the rule of § 188,

would be the state of the applicable law in the absence of an effective choice of law by the

parties." *Ibid*. (italics added).

BlockFi's choice of law clause states that Delaware law applies "without regard to its

conflicts of law provisions."  Cert. Ex. 1, Att. 15, p. 070.  Nevertheless, this Court should

conduct a Restatement § 187 analysis.  A Delaware choice of law clause "does not, and indeed

could not, require a court to presume no other forum has a significant and more material interest

in its laws being applied." *Cabela's LLC v. Highby*, 801 Fed.Appx. 48, 49 (3rd Cir. 2020) affm.

*Cabela's LLC v. Highby*, 362 F.Supp.3d 208 (D. Del. 2019); *see* Fed. R. App. Proc. R. 32.1

(unpublished federal opinions published from 2007 to the present may be properly cited).  In the

Third Circuit, district courts apply a Restatement § 187 analysis, even where the underlying

choice-of-law clause supposedly applies "without regard for the conflicts of laws rules." *E.g.*

2018 WL 8755729, Docket No. 6, *Cabela's LLC v. Highby*, Case No. 1:18-cv-012223-RGA (D.

Del.).  Delaware courts also "follows the *Restatement (Second) Conflict of Laws* when

determining what law governs a contract." *Focus Financial Partners, LLC v. Holsopple*, 250

A.3d 939, 957 (Del. Ch. Ct. 2020) (italics original).  The Delaware Chancery Court will not

honor a contractual waiver of a choice of law analysis. *E.g.* 2020 WL 4219743, Docket, *Focus

Financial Partners, LLC v. Holsopple*, (Del. Ch. Ct.) Plaintiff's Answering Brief in Opposition

to Defendants' Motion to Dismiss or, in the Alternative, Stay (filed July 20, 2020) (quoting

choice of law clause).

**B.**     **The California Financing Law Constitutes the Fundamental Policy of California**

The California Court of Appeal has expressly held, in a case applying Restatement § 187, that the California Financing Law constitutes the "fundamental policy" of California.  *Brack v. Omni Loan Co., Ltd.*, 164 Cal.App.4th 1312, 1328-1329, 80 Cal.Rptr.3d 275, 286-287 (Cal. Ct. App. 2008).  In *Brack*, the California Court of Appeal held that a Nevada-based lender could not enforce a Nevada choice-of-law clause while lending to California residents.  *Ibid*.  The *Brack* Court reasoned that its "conclusion that the provisions of the Finance Lenders Law are fundamental, unwaivable and integrated is buttressed by considering the licensing requirements of the law and the role licensing plays in enforcing the substantive provisions of the law." *Brack*, *supra*, 164 Cal.App.4th at p. 1326.  Here, similarly, Gerro alleges that BlockFi violated California's licensing requirements.

BlockFi cannot evade or avoid the California Financing Law with a Delaware choice of law clause.  The California Financing Law states that "Any person who contracts for or negotiates in this state a loan to be made outside the state for the purpose of evading or avoiding the provisions of [the California Financing Law] is subject to the provisions of this division." Cal. Fin. Code § 22324.  The *Brack* Court said that the foregoing statute "strongly suggests the Finance Lenders Law *may not be circumvented by a contractual choice-of-law provision*." *Brack*, *supra*, 164 Cal.App.4th at p. 1326 (italics added).

Gerro also invokes a statutory remedy relied upon by the *Brack* Court: "The fundamental and unwaivable character of the Finance Lenders Law is also suggested in [California Financial Code section] 22750. Under section 22750 contracts made in willful violation of the Finance Lenders Law, including in particular violation of the requirement that a lender have a license

issued by the commissioner, are void." *Brack*, *supra*, 164 Cal.App.4th at p. 1326. Gerro invokes

that statutory remedy as the primary basis for his Claim.

BlockFi cannot require or permit Gerro to waive the California Financing Law by

contract. "A finance company shall not require or permit a borrower to waive any statutory

provision of the Law for his/her benefit … nor shall a finance company require or permit a

borrower to waive any mandatory provision of these rules and regulations." Cal. Code Regs. tit.

10, § 1408. BlockFi's Delaware choice of law clause operates as prohibited waiver of the

California Financing Law.

In the prior litigation relating to Gerro's claim, one trial court specifically held that Gerro

invokes "*unwaivable* rights and *fundamental California public policy*" including "California

Commercial Code Section 9626(b)(1); California Financial Code Sections 22161(a)(5-7),

22750(b) and 22752(a)." Cert. Gerro, Ex. 1, Att. 31, p. 203 (italics added).

Finally, application of Delaware's law would contravene California's fundamental

policy. The California's Legislature enacted a comprehensive statutory and licensing scheme to

protect California's borrowers, including Gerro. "There would be little, if any, utility in

establishing [California's] thorough licensing scheme… if the licensing requirements of the law

… could be waived by simple agreement between lender and borrower." *Brack*, *supra*, 164

Cal.App.4th at p. 1327, 80 Cal.Rprt.3d at p. 285.


## C.    California Has a Materially Greater Interest in the Application of its Laws

California has a "materially greater interest than the chosen state," Delaware, because

Delaware has no substantive relationship to the underlying transactions at issue. Here, the

relationship involved a California consumer, secured by California collateral, and made pursuant

to BlockFi's California Finance Lender's License, No. 80DBO-81955.  Delaware is uninterested:

> application of [Delaware] law would deprive a substantial segment of the
> borrowing public in [California] of the substantive and regulatory protection
> California affords all of its other consumers. [Delaware] on the other hand has no
> policy which prevents its lenders from subjecting themselves to the regulatory
> authority of other states. That is to say, nothing in [Delaware] law prevented
> [BlockFi] from fully complying with California law. Rather, [Delaware's] interest
> in applying its law is limited to its more general interest in enforcing the
> provisions of contracts made by one of its citizens. Given these circumstances,
> application of [Delaware] law would impair California's regulatory interests to a
> far greater extent than application of California law would impair [Delaware's]
> interests.

*Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1328–29, 80 Cal. Rptr. 3d 275, 286–87

(Cal. Ct. App. 2008).


**D.      California Law Otherwise Applies in the Absence of a Choice of Law Clause**

California law would otherwise govern Gerro's loan in the absence of a choice of law

clause.  California has the "most significant relationship to the transaction" within the meaning

of Restatement (Second) Conflicts of Law, section 188(2) ("Restatement § 188"), a test which

considers the following factors:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of
> business of the parties.

For the claim at bar, it is clear that California law would otherwise apply in the absence

of a choice of law clause, since: (a) the "last act necessary" to create each contract was Gerro's

acceptance of BlockFi's offers in California (Restatement § 188, official comment (e); Cert.

¶¶ 33, 47); (b) the contract was negotiated between Gerro in California and BlockFi in New

Jersey; (c) the funding of the loan and pledging of the collateral were performed in California;

(d) the loan was made to a California resident pursuant to a California Finance Lender's License;

(e) Gerro is a California domiciliary, resident, with a place of business in California, while

BlockFi is organized under Delaware law, with headquarters in New Jersey, and doing business

in California.  Also, BlockFi expressly "agree[d] to comply with the requirements of the

California Finance Lenders Law."  Cert., Ex. 1, Att. 1, p. 004, ¶ 2.

**E.      To the extent that the Uniform Commercial Code applies, the Choice of Law
provision is Irrelevant because there is no Conflict of Law.**

Regarding the Uniform Commercial Code, there is no "true conflict" between Delaware

and California law with respect to most of their provisions.[2] *Focus Fin. Partners, LLC v.*

*Holsopple*, 250 A.3d 939, 958 (Del. Ch. 2020).  However, California law states that BlockFi "has

the burden of proving compliance with the provisions of this chapter relating to collection,

enforcement, disposition, and acceptance whether or not the debtor or a secondary obligor places

the secured party's compliance in issue."  Cal. Com. Code § 9626(b)(1)(A).  Although Delaware

law allows the common law to fill the gap (Del. C. tit. 6, § 9-207(b),) the Delaware Supreme

Court would likely allocate the burden of proof onto the secured party too.  *Hicklin v. Onyx*

*Acceptance Corp.*, 970 A.2d 244, 253 (Del. 2009).

---

[2] California's Uniform Commercial Code has no hyphen in its section's numeration.  *Compare* Cal. Com. Code
§ 9207(c) *with* Del. Code, Tit. 6, § 9-207(c).  Also note, California's statutory subsections are referred to as
"subdivisions."

California's burden shifting statute, in any event, would constitute the fundamental policy

of California.  Under California law, "rules have been found to be fundamental public policies

when (1) they cannot be contractually waived; (2) they protect against otherwise inequitable

results; and (3) they promote the public interest."  *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal.

5th 93, 103, 447 P.3d 669, 675 (Cal. 2019).  Under this test, the burden shifting mechanism

constitutes the fundamental policy of California.  First, California Commercial Code section

9696(b) cannot be waived.  Cal. Com. Code § 9602(13).  Second, the rule protects against

otherwise inequitable results since BlockFi possesses an asymmetry of information.  Cert. ¶ 42.

Third, a rule protecting *consumers* promotes the public interest.  *Rheinhart v. Nissan N. Am.,*

*Inc.*, No. D079940, 2023 WL 4195050, at *8 (Cal. Ct. App. June 27, 2023) ("Such antiwaiver

provisions in consumer protection laws are "[o]ne of the most important protections California

offers its ... citizens ....").  Therefore, BlockFi bears the burden of persuasion regarding its

compliance with UCC, Article 9, Division 6 with respect to a consumer transaction.  *Raleigh v.*

*Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) (When adjudicating claims, bankruptcy courts

borrow the burden of persuasion as a matter of substantive state law).

## VII.    Discussion

## A.    BlockFi willfully violated its California Finance Lender's License and the Financing Law by Using, Possessing, *and* Liquidating Gerro's Bitcoin Collateral.

BlockFi had "actual possession" of Gerro's bitcoin collateral.  Cert. ¶ 34.  BlockFi leased

Gerro's bitcoin to third-parties and converted the proceeds to BlockFi's own use.  *See* First Day

Declaration of Mark A. Renzi Docket No. 17, p. 9, ¶ 26.  Therefore, BlockFi violated a

"provision" of the California Financing Law (Cal. Fin. Code § 22009) in the "making or

collection" of Gerro's loan (Cal. Fin. Code § 22750(b)) by "taking in the name of the lender, or

in any other name, in whole or in part, as security for a loan, any contract or obligation involving

the forfeiture of rights in or to" Gerro's bitcoin.  Cal. Fin. Code § 22009.

> i.      _BlockFi had Actual Notice of California Financial Code Section 22009._

BlockFi received actual notice by letters dated February 14, 2018, March 8, 2018, March

28, 2018, April 6, 2018, and April 10, 2018, that its possession of bitcoin collateral would violate

the California Financing Law.  Cert. ¶¶ 18-27.  BlockFi's own attorney summarized the

extensive scope of BlockFi's actual notice:

> In a letter from Daniel Balian of the Department to [BlockFi's agent] dated April
> 10, 2018, a copy of which is enclosed, Mr. Balian quoted a portion of wording
> included in the definition of a "finance lender" in Section 22009 of the California
> Financial Code discussed below and then stated that "under the California
> Financial Code, the Applicant is not allowed to hold possession of the borrower's
> collateral."  Other communications from Department representatives to BlockFi
> have similarly stated that a finance lender may "never hold the assets of the
> California borrowers it makes loans to under the CFL license," "assets/collateral
> may not be held by BlockFi or any other third party," "the collateral has to remain
> with the borrower" and "the CFL license does not permit you to take possession
> of the collateral."

Cert. Ex. 1, Att. 11, p. 044.  BlockFi's attorney demonstrates the extent of actual notice that

BlockFi received.

> ii.     _BlockFi's Violation of California Financial Code section 22009 was Willful._

BlockFi's violation of the California Financing Law was willful, since BlockFi was

repeatedly notified that BlockFi cannot possess bitcoin securing its California Finance Lender

loans.  BlockFi's Vice President, Ms. Flori Marquez, personally knew that BlockFi was not

allowed to possess collateral (Cert. Ex. 1, Att. 5 & 10).  On February 11, 2020, Marquez signed

Gerro's loan.  Cert. Att. 15, p. 057.  On February 20, 2020, Ms. Marquez joked that "**I don't**

**hear 'no'** " as she bragged about her ability to obtain BlockFi's California Finance Lender's

license notwithstanding its possession of collateral.  Youtube, BlockFi, John Kim and Flori

Marquez - Crypto Regulations, Security, and Saving Crypto From Pawn Shops!

https://youtu.be/KPW7KsRzcy0?t=340.  Soon thereafter, on March 12-13, 2020, Ms. Marquez

participated in BlockFi's liquidations of Gerro's collateral.  Cert. at Att. 16, p. 082.

BlockFi's violations were willful because BlockFi's acts were intentional, knowing, and

reckless.  "[W]here willfulness is a statutory condition of *civil* liability, we have generally taken

it to cover not only *knowing* violations of a standard, but *reckless ones as well*."  *Safeco Ins. Co.*

*of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2208, 167 L. Ed. 2d 1045 (2007) (italics

added). "The common law has generally understood 'recklessness' in the civil liability sphere as

conduct violating an *objective* standard."  *Id.* p. 49 (italics added).  Accordingly, BlockFi's

*subjective* intent cannot serve as an affirmative defense.  BlockFi's conduct was willful since

BlockFi had actual notice of the prohibition, intentionally engaged in conduct in violation of

California Financial Code section 22009, and objectively violated the law.

Accordingly, Gerro invokes the statutory remedies set forth in California Financial Code

section 22750, subdivision (b), which states:

> If any provision of this division [i.e. the California Financing Law] is willfully
> violated in the making or collection of a loan … *the contract of loan is void, and*
> *no person has any right to collect or receive any principal, charges, or*
> *recompense in connection with the transaction*.

Since BlockFi's loan to Gerro is void, BlockFi has no right to retain Gerro's bitcoin.

Gerro is entitled to relief even if BlockFi liquidated his bitcoin.  "In an action to recover the

possession of personal property, judgment for the plaintiff may be for the possession or the value

thereof, in case a delivery cannot be had, and damages for the detention."  Cal. Civ. Proc. § 667.

BlockFi cannot defend on the grounds that it "wrongfully disposed of the property, and,

therefore, [is] not in possession of it." *Faulkner v. First National Bank of Santa Barbara*, 130

Cal. 258, 264-265 (Cal. 1900).

Since BlockFi retained use and possession of Gerro's bitcoin, BlockFi cannot claim a

valid forfeiture interest in Gerro's property. BlockFi's purported forfeitures were *ultra vires*.

**B.     BlockFi Willfully Received Unauthorized Consideration from Gerro by Concealing
and Converting all Proceeds from Gerro's Bitcoin Collateral to BlockFi's Own Use**

BlockFi unlawfully used Gerro's bitcoin collateral. Under the Uniform Commercial

Code, BlockFi was not allowed to use Gerro's bitcoin collateral, except to prevent waste or as

otherwise authorized by a court order. Del. C., tit. 6, §§ 9-207(b)(4)(C), 9-601(1). Also,

BlockFi's loan documents did not authorize BlockFi to lease Gerro's bitcoin collateral. *E.g.*

Cert. Ex. 1, Att. 15, p. 063. But even if the loan documents did, then the authorization was

ineffectual "in the case of consumer goods." Del. C., tit. 6, §§ 9-207(b)(4)(C), 9-601(1).

BlockFi leased Gerro's bitcoin without accounting to Gerro for the proceeds therefrom,

in violation of Uniform Commercial Code section 9-207, subsection (c) (italics added), which

states that:

> a secured party having *possession of collateral* or control of collateral … (1) may
> hold *as additional security* any proceeds, except money or funds, received from
> the collateral; (2) *shall apply money or funds received from the collateral to
> reduce the secured obligation, unless remitted to the debtor …*

As statutorily defined, " 'Proceeds'… means the following property:  (A) whatever is

acquired upon the sale, *lease*, license, exchange, *or other disposition of collateral*;  (B) *whatever*

*is collected on, or distributed on account of, collateral*;  (C) *rights arising out of collateral*;" etc.

*See* Del. C., tit. 6, § 9-102(a)(64). BlockFi did not remit or credit any monetary proceeds to

Gerro.  Also, BlockFi did not hold any non-monetary proceeds as additional security for Gerro's

benefit.

The California Financing Law states that "No person… shall directly or indirectly charge

contract for, or receive any interest, discount, or consideration greater than the lender would be

permitted by law to charge if he or she were not a licensee hereunder."  Cal. Fin. Code § 22326

(italics added).  In other words, BlockFi's conversion of Gerro's proceeds to its own use

constitute an independent violation of the California Financing Law.  Since BlockFi's violations

were willful, Gerro invokes the statutory remedy set forth in California Financial Code section

22750, subdivision (a), which states that:

> If any amount other than, or in excess of, the charges permitted by this division is
> willfully charged, contracted for, or received, the contract of loan is void, and no
> person has any right to collect or receive any principal, charges, or recompense in
> connection with the transaction.

BlockFi "willfully … received" an "amount other than … charges permitted," so

BlockFi's loan is void and BlockFi cannot obtain any financial benefit from Gerro.


**C.      BlockFi Offered to Redeem Gerro's Loan and Breached its Contract.**

BlockFi's purportedly liquidated Gerro's bitcoin on March 12, 2020 and March 13, 2020.

Gerro received three separate liquidation notices.  Three days later, on March 16, 2020, Flori

Marquez told Gerro that BlockFi can "reverse sales if there is enough collateral on the loan to

maintain a healthy LTV after the trade reversal," which she defined as a 60% loan to value ratio.

Cert. Ex. 1, Att. 16, p. 084.  BlockFi's stated purpose was that "We can absolutely work to

reverse trades, but only if it leaves the client with a healthy loan."  Cert. Ex. 1, Att. 16, p. 086.

From March 16, 2020 to March 24, 2020, BlockFi and Gerro negotiated a "formula" to determine the amount required to "reinstate" Gerro's loan.  Cert. Ex. 1, Att. 16, p. 089.  On March 24, 2020, the day that BlockFi provided Gerro with the formula, the price of bitcoin was as high as "$6,860."  Cert. Ex. 1, Att. 16, p. 090.  That same day, Gerro informed BlockFi that he was "in the due diligence phase with a traditional source of capital."  *Ibid*.  On April 27, 2020, one month later, at a bitcoin price of $7,700, Gerro accepted BlockFi's offer by tendering almost 40 bitcoin, or $300,000 at that time, according to BlockFi's own formula.  BlockFi did not impose any other conditions on its offer, and Gerro unconditionally accepted BlockFi's offer.  Gerro relied upon BlockFi's offer by borrowing more money and going further into debt.

BlockFi refused to perform, claiming that "the offer expired in March after your loan defaulted."  Cert. Att. 16, p. 090.  Yet, BlockFi's offer was clearly made after BlockFi's liquidations.  BlockFi even went so far as to deny that ever BlockFi made any offer.  Ex. 1, Att. 25, p. 117.  The elevated bitcoin price did not invalidate BlockFi's offer, since Gerro expressly proposed reinstating at $7,500 per bitcoin and BlockFi did not indicate any contrary intentions.  Ex. 1, Att. 16, p. 087.  Furthermore, BlockFi anticipated an increase in the price of bitcoin.  On March 19, 2020, five days before BlockFi sent the last offer to Gerro, Flori Marquez tweeted that she believed the price of bitcoin would continue to increase.  Cert. Ex. 1, Att. 20, p. 099.

In retrospect, perhaps BlockFi was opportunistically asking Gerro for more capital to use BlockFi's business.  However, the secret, subjective intentions of a party are irrelevant for purposes of finding an offer and acceptance.  Contracts are made and enforced by reference to an objective test.

### D.    Anticipating and Addressing BlockFi's Counter Arguments.

 *a.* *BlockFi Cannot Reasonably Interpret California Law as Allowing its Use and Possession of Gerro's Bitcoin Collateral.*

 BlockFi may claim that it was *orally* authorized to possess bitcoin securing its loans. But oral communications are "not entitled to any deference." *See Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 563, 577 (Cal. 1996). Our legal system operates on the basis of written laws, enacted by the Legislature and construed by the Judiciary. S*ee Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal.4th 1, 8 (Cal. 1998) ("a quintessential judicial duty"). No administrative agency can contravene a statute.

 The California Financing Law only provides a safe harbor for actions in "good faith… conformity with any **written** general *rule*, *regulation*, or specific *ruling* of the commissioner." Cal. Fin. Code § 22754 (emphasis added). Here, however, the official writings reveal that BlockFi was expressly prohibited from possessing bitcoin collateral. BlockFi "modified" its business plan to say that BlockFi would make loans secured by the borrowers' bitcoin "which they possess." Cert. Gerro, Ex. 1, Att. 10, p. 035. BlockFi asked to "withdraw" its request for a written opinion "if the Department reaches a preliminary conclusion … that a finance lender may not hold collateral." Cert. Att. 11, p. 047. Then, the request was "withdrawn by BlockFi" and "no opinion was ever issued." Cert. Att. 13, p. 051.

 BlockFi may try to argue that § 22009 lacks an express prohibition. But California Civil Code section 1667 specifically states: "That is not lawful which is: 1. Contrary to an express provision of law; [or] 2. Contrary to the policy of express law, *though not expressly prohibited*." (Italics added.) As applied here, BlockFi's conduct was both contrary to § 22009's express provision and policy. An implied prohibition is sufficient "where a statute, designed for the

protection of the public, prescribes a penalty, that penalty is the equivalent of an express

prohibition…" *Levinson v. Boas*, 150 Cal. 185, 193-194 (Cal. 1907).

BlockFi may argue that Gerro is sophisticated; however, the California Financing Law

does not distinguish between sophisticated and unsophisticated borrowers.  The California

Financing Law only distinguishes between consumer and commercial loans.  On one hand, a

" 'Consumer loan' " exists where the "*proceeds of which are intended by the borrower for use

primarily for personal, family, or household purposes*."  Cal. Fin. Code, § 22203.  Gerro

borrowed from BlockFi for personal purposes only.  Cert. ¶ 31.  Similarly, the Uniform

Commercial Code similarly defines a " 'Consumer transaction' " as an "obligation primarily for

personal… purposes," secured by collateral "held or acquired primarily for personal…

purposes."  Com. Code, § 9-102(a)(26).

Lawyers are not *per se* commercial borrowers.  Since the Legislature did not "create a

sophisticated parties exemption" to the California Financing Law, "courts are not well-equipped

to craft such limitations in case-by-case adjudication."  *See Rincon EV Realty LLC v. CP III

Rincon Towers, Inc.*, 8 Cal.App.5th 1, 14-15 (Cal. Ct. App. 2017).

BlockFi may argue that it does not resemble a pawnbroker.  The legal test, however, is

whether BlockFi was "engaged in the business of receiving goods … in pledge as security for a

loan is a pawnbroker."  Cal. Fin. Code § 21000.  Bitcoin constitutes a "good" within the meaning

of the California pawnbroker law, since it is a chose in possession capable of *actual receipt*.  *See*

Memorandum of Law, pp. 9-16.  Under California law, a lender routinely receiving possession of

personal property must be licensed as a pawnbroker.  *Levinson v. Boas*, 150 Cal. 185, 190 (Cal.

1907).  *The Levinson* Borrower was in "business as diamond and jewelry merchant."  *Id.*, at p.

186.  The *Levinson* Lender routinely took possession of jewelry securing its loans.  *Id.*, at p. 186.

There, the Court held that the lender constituted a pawnbroker, for routinely receiving possession

of jewelry securing its loans, with reliance upon its possession. *Id.*, p. 189. The lender was a

pawnbroker even though the lender "limited his operations to certain classes of goods." *Ibid*.

The *Levinson* Court held that the loan was wholly void for illegality. *Id.*, p. 194. The illegality

cannot be severed from the remainder of the contract. *Ibid*. Consequently, "Where the contract

is void, the right of the pledgee to hold the property, which right depends upon a valid contract,

is of course lost." *Id.*, pp. 193-94.


        b.   *Gerro and BlockFi's Prior California Litigation Has No Preclusive Effect.*

BlockFi refused to arbitrate with Gerro on the basis that Gerro was not a "business"

within the meaning of the arbitration clause. Cert. Att. 25, p. 117. Gerro brought suit in

California Superior Court for the County of Los Angeles—where Gerro lives, works, and

accepted the loan contracts. Cert. ¶¶ 1, 33, 53. BlockFi moved to dismiss for *forum non*

*conveniens*. The trial court held that Gerro asserts "unwaivable rights and fundamental

California public policy (California Commercial Code Section 9626(b)(1); California Financial

Code Sections 22161(a)(5-7), 22750(b) and 22752(a).)" Ex. 1, Att. 31, p. 203. The trial court

further ruled that "BlockFi… cites a number of decisions and rules that make clear that the stated

policies of the courts in Delaware will apply California law when fundamental California public

policy is at issue, as it is here." *Ibid*. In other words, BlockFi represented to the California

courts that Delaware courts would uphold Gerro's unwaivable and fundamental California rights.

*Ibid*. The California Court of Appeal reversed the trial court's order staying the action in its

entirety. BlockFi petitioned for review of the California Supreme Court, which granted review.

The automatic stay stopped the California Supreme Court proceedings.

Gerro commenced another action to protect the public of California, by public injunctive relief only. The action was stayed for constituting the same cause of action as Gerro's cause of action for private relief. The Court of Appeal affirmed that ruling, which is now pending review before the California Supreme Court.

Gerro also sought relief against BlockFi's California regulator. Gerro alleged that the California regulator improperly licensed BlockFi, and incorrectly interpreted the California Financing Law. That action was dismissed on a procedural ground, for Gerro's lack of standing only. That case is currently pending appeal, but stayed due to the automatic stay. Although a judgment was issued in two of the three California cases, no judgment has attained finality, and no judgment has been rendered on the underlying merits.

The underlying merits of Gerro's claim have never been finally adjudicated by the California courts. So far, the California courts have only held that: 1) Gerro's personal cause of action should proceed in California to protect Gerro's constitutional right to a jury trial; 2) Gerro cannot seek public injunctive relief separately from his cause of action for private relief; and 3) Gerro does not have standing to seek judicial review of California's issuance of BlockFi's finance lender license.

The California cases have no preclusive effect at all. Preliminarily, the preclusive effect of a judgment is determined by reference to the "law or usage in the courts of such State… from which they are taken." 28 U.S.C.A. § 1738. Therefore, California law determines the preclusive effect of a California ruling.

"In California, a judgment is not final for purposes of res judicata or collateral estoppel if an appeal is pending." *Riverside County Transportation Com. v. Southern California Gas Co.*, 54 Cal. App. 5th 823, 838, 268 Cal. Rptr. 3d 196, 208. All California litigation relating to this

claim is pending appeal.  Also, a California judgment is only preclusive upon the grounds ruled

upon on appeal, if any.  *Samara v. Matar*, 5 Cal.5th 322, 332-38 (Cal. 2018).

More fundamentally, however, the merits of Gerro's claim have never been adjudicated.

Gerro previously moved for relief from the automatic stay, which was denied without prejudice

to conserve estate resources.  [Docket Nos. 117 & 238].  Gerro's claim must now be determined

in accordance with Congress' statutory scheme for adjudicating objections to claims.  This Court

possesses the appropriate jurisdiction, and jurisprudence, to determine the validity of Gerro's

claim.

**VIII.**   **Cross-Motion for an Order Temporarily Allowing Gerro's Claim for Purposes**
        **of Voting on a Chapter 11 Plan**

By this Cross-Motion, Gerro seeks entry of an order temporarily allowing the Claim in an

amount equal to 426 bitcoin (BTC) for purposes of voting to accept or reject the Plan, pursuant

to Bankruptcy Rule 3018(a).

Only holders of allowed claims or interests are permitted to vote to accept or reject a

chapter 11 plan. 11 U.S.C. Section 1126. A claim represented by a timely and properly filed

proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

Thus, once a party in interest objects to a filed claim, the holder of that claim is not entitled to

vote on a chapter 11 plan while the objection is pending. See 11 U.S.C. § 1126.

Where a claim is not yet allowed (due a pending objection or otherwise), Bankruptcy

Courts nevertheless "may temporarily allow the claim or interest in an amount which the court

deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018. The

policy behind Bankruptcy Rule 3018(a) is "to prevent possible abuse by plan proponents" who

attempt to ensure acceptance of a plan by strategically objecting to the claims of dissenting

creditors. *In re Armstrong*, 292 B.R. 678, 686 (10th Cir. B.A.P. 2003). Claims litigation can also

be lengthy and does not have to be resolved before voting on a plan. Bankruptcy Rule 3018(a)

"was designed to give all creditors, *even those holding disputed claims*, the opportunity to vote."

*In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988) (emphasis added).

Rule 3018(a) contemplates only a summary proceeding, not a full trial on the merits of

the claim. *See, e.g.*, *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr.

E.D.N.Y. 1994); *In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994).  Calculation of a claim

under Bankruptcy Rule 3018(a) is not determinative of or preclusive upon the ultimate validity

or amount of the claim or any causes of action. *See Quigley*, 346 B.R. at 654.

Under the circumstances present here, the Court should exercise its discretion to

temporarily allow the Claim for purposes of voting on the Plan. Allowing Gerro to vote the full

value of his Claim comports with the spirit of the Bankruptcy Code, which encourages creditor

voting and participation in the reorganization process. *In re Amarex Inc.*, 61 B.R. 301, 303

(Bankr. W.D. Okla. 1985) ("[T]o allow [the disputed claims] to vote on the plans, even though

some may be eventually disallowed for purposes of distribution, is more in keeping with the

spirit of Chapter 11 which encourages creditor vote and participation in the reorganization

process"). Moreover, the Claim is represented by a duly and timely filed proof of claim. The

Claim[s] are entitled to temporary allowance for purposes of voting on the Plan because: (i) the

filing of proofs of claim constitutes prima facie evidence of the validity of the Claim; (ii) the

Debtor has acknowledged the claim in its schedules, albeit as disputed; and (iii) BlockFi's

Objection does not challenge that Gerro pledged 426 bitcoin of his bitcoin to BlockFi.

**Absent temporary allowance, Gerro will be disenfranchised in the Chapter 11 Case, having no opportunity to vote on the Plan. This disenfranchisement is due to the timing of BlockFi's objection on the eve of voting.**  Accordingly, the Court should temporarily allow the Claim for purposes of voting on the Plan in such amount as the Court determines, in its sound discretion, is appropriate to ensure that the Movant's voting power is commensurate with their economic interests in the case. *See Quigley*, 346 B.R. at 654

The liquidation of the Claim in the amount of 426 bitcoin is only for voting on the Plan and shall not constitute or be construed as an admission by the Cross-Movant of any limitation on the ultimate allowed amount of the Claim or the classification of such Claim. Cross-Movant does not waive, and expressly reserves, all rights, arguments, counterarguments, and defenses, including, without limitation, the right to contest in any court of competent jurisdiction any objection to the basis and/or validity of the ultimate amounts of the Claims.

Cross-Movant will provide notice of this Cross-Motion to: (a) the debtors; (b) United States Trustee; (c) counsel for the Official Committee of Unsecured Creditors; and (d) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Cross-Movant submits that no other or further notice is necessary.

No prior written request for the relief sought herein has been made to this Court or any other court.

For the reasons set forth herein, Claimant and Cross-Movant Gerro respectfully requests that this Court enter an order overruling BlockFi's objection to Proof of Claim Number 12386 and allowing that claim in an amount of 426 bitcoin; and additionally, temporarily allowing Gerro's claim for the sole purpose of voting on any Plan(s) in these Chapter 11 cases, and granting such other and further relief as the Court deems just and proper.

Dated: July 13, 2023

/s/ Carol L. Knowlton

GORSKI & KNOWLTON PC
Carol L. Knowlton (NJ Bar No. 017501981)
311 Whitehorse Avenue, Suite A
Hamilton, New Jersey 08610
Phone: (609)964-4000
Email: cknowlton@gorskiknowlton.com

*Attorneys for Creditor George J. Gerro*