UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**GORSKI & KNOWLTON PC**
Carol L. Knowlton (NJ Bar No. 017501981)
311 Whitehorse Avenue, Suite A
Hamilton, New Jersey 08610

*Counsel for Creditor George J. Gerro*

| | |
|---|---|
| In Re: | Case No.:   22-19361 (MBK)<br>(Jointly Administered) |
| BLOCKFI INC., *et al.*,[1] | Chapter 11 |
| Debtors. | Hearing Date: July 20, 2023 |
| | Judge:  The Honorable Michael B. Kaplan |

**CERTIFICATION OF GEORGE J. GERRO IN  RESPONSE TO DEBTORS' FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS <u>AND</u> IN SUPPORT OF CROSS-MOTION OF GEORGE J. GERRO FOR AN ORDER TEMPORARILY ALLOWING CLAIM NO. 12386 PURSUANT TO F.R.B.P. RULE 3018(a) FOR THE SOLE PURPOSE OF VOTING ON A PLAN**

George J. Gerro submits this Certification as a creditor in the above-captioned case, in support of his concurrently filed *Response of George J. Gerro to Debtors' Fourth Omnibus Objection to Claim No. 12386; and Cross-Motion of George J. Gerro for an Order Temporarily Allowing Claim Pursuant to F.R.B.P. 3018(a)* (respectively, "Response" and "Cross-Motion").

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

1.      My name is George J. Gerro.  I am a natural person residing in Burbank,

California.  There, I practice law with my father, John M. Gerro, and have been licensed in good

standing by the State Bar of California since March 4, 2019 (State Bar License No. 325168).  I

am familiar with the facts set forth herein.

### **Gerro's Proof of Claim Only Requests that BlockFi Return Gerro's Bitcoin.**

2.      My Proof of Claim Number 12386 simply requests the return of 426 bitcoin

belonging to me.  My claim does not request any other damages, costs, interest, legal fees, or

proceeds.  I respectfully request that this Court overrule BlockFi's objection, and allow my

claim.

3.      In 2018, BlockFi received actual notice, in writing, on multiple occasions, that it

could not possess bitcoin securing its loans as a California " 'Finance Lender.' "  Specifically,

California Financial Code section 22009 statutorily defines a Finance lender as follows:

> "Finance lender" includes any person who is engaged in the business of making
> consumer loans or making commercial loans. The business of making consumer
> loans or commercial loans may include lending money and taking, in the name of
> the lender, or in any other name, in whole or in part, as security for a loan, any
> contract or obligation involving the forfeiture of rights in or to personal property,
> *the use and possession of which property is retained by **other than** the mortgagee
> or lender*. . . .
>
> *Ibid*.  (italics and emphasis added).  The text of California Financial Code section 22009

can be found by searching https://leginfo.legislature.ca.gov.  I attached the statute to the proof of

claim for BlockFi's reference and for convenience of this Court.  Ex. 1, Att. 14, p. 054.

4.      Notwithstanding its actual notice, BlockFi took actual possession of my bitcoin in

2019.  After taking possession, BlockFi used my bitcoin for its own benefit.  BlockFi concealed

and converted all proceeds from my bitcoin collateral to its own use.  In 2020, while BlockFi

executives were personally buying bitcoin, they accelerated my loan in bad faith and declared a

forfeiture of my rights to my bitcoin due to a mere decline in the price of bitcoin.  According to

BlockFi, they sold my bitcoin when there was "very little liquidity in the market."  Ex. 1, Att. 16,

p. 082.

5.      Almost immediately after the liquidations, BlockFi offered to "reverse" my

liquidations if I would send them more money.  BlockFi provided a formula to calculate the

additional sum required.  One month later, I accepted BlockFi's offer using BlockFi's formula.

However, BlockFi refused to honor its agreement to reinstate my loan.

6.      Under California law, BlockFi is not entitled to any recompense in connection

with my loan, and BlockFi cannot refuse to return my bitcoin.  I respectfully request that this

court overrule BlockFi's objection to the return of my bitcoin, upon each of the following

independent, alternative, and sufficient grounds.

7.      First, BlockFi willfully violated its California Finance Lender's License by using,

possessing, and declaring a forfeiture of my bitcoin collateral.  BlockFi violated its California

Finance Lender license—and California Financial Code section 22009, incorporated by

reference—by using, possessing, and foreclosing upon my bitcoin collateral.  In other words, a

California Finance Lender may either have a security interest in personal property, or use and

possession thereof, but not both.  BlockFi's attempt to do so was a willful violation of the

California Financing Law, invoking the California Financing Law's statutory disgorgement

remedy.  Alternatively, since BlockFi routinely received and relied upon possession of personal

property securing its loans, BlockFi also constitutes an unlicensed pawnbroker under California

law.

8.      Second, BlockFi willfully violated the California Financing Law by converting

the proceeds from my bitcoin collateral to its own use.  BlockFi was not entitled to lease my

bitcoin collateral.  The loan documents did not allow BlockFi to lease my collateral and I did not authorize it.

9.      Third, BlockFi offered to reinstate my loan and redeem my bitcoin collateral. After I accepted, BlockFi breached its agreement.

### **Gerro Submitted the Same Proof of Claim by FedEx and Online Portal.**

10.      A true and correct copy of my proof of claim is attached hereto as Exhibit "1" ("Proof of Claim").  I filed Proof of Claim No. 12386, by FedEx overnight delivery to the claims processing agent for Debtor BlockFi Lending LLC ("BlockFi").  Along with my hard copy proof of claim, I included an Express Mail return envelope (tracking no. EL601762977US).  By the bar date, I still received no confirmation of receipt, so I electronically submitted the same proof of claim online out of an abundance of caution (Claim No. 15248).  The electronic Proof of Claim (attached hereto as Exhibit "2") conspicuously discloses that it is an electronic copy of a hand-delivered proof of claim.  Ex. 2, p. 2, ¶ 5.  And although I submitted the same proof of claim twice, I only seek the allowance of Proof of Claim No. 12386.

11.      The Proof of Claim has Thirty-One (31) attachments ("Attachment(s)" or "Att."), each constituting true and correct copies of documents, with the following exceptions.  First, I only attached relevant pages from each document.  Second, I highlighted the relevant portions of the Attachments.  (All highlights appear on the original Proof of Claim, but may be less visible on the scanned and electronically submitted Proof of Claim in order to satisfy the online portal's maximum upload file size.)  To the extent that the documents contain handwriting, I received the documents with the handwriting already on them.  Third, I added bates stamps.

## A Brief Explanation of the Source of Each Attachment

12.      I received Attachments "1" through "10," and "14" directly from the California

Department of Financial Protection and Innovation (formerly known as the California

Department of Business Oversight) (hereinafter, "Department") on May 13, 2020, in response to

my California Public Records Act request (then-codified at California Government Code section

6250, *et seq*.).  I received Attachments "11" and "12" from the Department on July 8, 2020,

pursuant to the Department's Acting Commissioner direct authorization of their disclosure.

13.      Attachments "15," "27," and "31" were each filed in *Gerro v. BlockFi Lending

LLC* (Los Angeles Superior Court Case No. 20BBCV00308; California Court of Appeal, Second

District, Division One, Case No. B307156; California Supreme Court Case No. S275530;

("hereinafter, *Gerro I*").)

14.      Attachment "30" was filed in the case of *Gerro v. Shultz, et al.* (Los Angeles

Superior Court Case No. 21STCP02023; California Court of Appeal, Second District, Division

One, Case No. B321113 [stayed pursuant to an automatic bankruptcy stay] ("*Gerro III*").)

15.      Attachments "13," "16" through "18," and "23 through "26" are communications

to or from myself, which I obtained from my computer or my iPhone.

16.      Attachments "19" to "21" I obtained directly from the Twitter accounts of to Zac

Prince, Flori Marquez, and BlockFi, respectively.

17.      Attachment "28" and "29" are excerpts of some, not all, relevant California

statutes, attached for BlockFi's reference and this Court's convenience.

**BlockFi's Actual Notice it was Prohibited from Possessing Bitcoin Securing its Loans to**

**California Borrowers.**

18.    Attachment "1" shows that, on or about February 1, 2018, BlockFi applied to the

California Department of Business Oversight (now known as the Department of Financial

Protection and Innovation) [hereinafter "Department"] for a California " 'Finance lender' "

license (*see* Fin. Code, § 22009) to make loans pursuant to the California Finance Lenders Law,

(now known as the California Financing Law) [California Financial Code section 22000 et

seq.]).  Ex. "1," Att. "1," p. 002.  In BlockFi's application, BlockFi states it will lend to

California borrowers who "put[] up their digital assets as collateral."  Ex. "1," Att. 1, p. 003.

BlockFi represented, under penalty of perjury, that it read the California Financing Law and

would abide by it.  *Id*., at p. 004.  Flori Marquez signed the application in her capacity as

BlockFi's "Vice President."  *Id*. at p. 007.

19.    Attachment "2" shows a letter dated February 14, 2018 from the Department to

BlockFi.  Ex. "1," Att. "2," p. 009.  There, the Department expressly informs BlockFi that "A

finance lender is defined by California Financial Code Section 22009."  *Id*. at p. 010.

20.    Attachment "3" shows a letter dated March 5, 2018 from BlockFi to the

Department, whereby BlockFi responds to the Department's February 14, 2018 letter.  Ex. "1,"

Att. 3, p. 012.  There, BlockFi states that it "requires that its clients store the assets posted as

collateral with BlockFi Lending's Licensed custodian, Gemini Trust Company, LLC . . .

throughout the life of the loan."  *Ibid*.  BlockFi further states that "BlockFi holds each borrower's

digital assets in escrow as collateral . . . [and] reserves the right to liquidate some or all those

digital assets in order to recoup the outstanding loan balance."  *Id*., at p. 013.

21.    Attachment "4" shows a letter dated March 8, 2018 from the Department to

BlockFi.  Ex. "1," Att. "4," p. 015.  There, the Department notifies BlockFi that:

> Lastly, the collateral must remain with the borrower.  Your response indicated
> that the clients store the assets posted as collateral with the Applicant's licensed
> custodian, Gemini Trust Company, throughout the life of the loan.  This is not
> allowed.  The Collateral must remain with the borrower.  Moreover, the Applicant
> cannot hold the borrower's digital assets in escrow as collateral.
>
> Based on the business plan and explanation provided, the Applicant is conducting
> or will be conducting activities not authorized under the CFL [California
> Financing Law].

Ex. "1," Att. "4," p. 016.

22.    Attachment "5" shows a letter dated March 23, 2018 from BlockFi's Vice

President, Flori Marquez, to the Department, which first acknowledges receipt of the

Department's March 8, 2018 letter.  Ex. "1," Att. "5," p. 018.  There, BlockFi reveals its intent to

take exclusive control over collateral securing California loans, stating that:

> The way Applicant will exercise this control to protect itself is by having the
> crypto currency held by a third party custodian pursuant to an agreement between
> the Applicant, the borrower and the custodian, which agreement among other
> things will provide that the borrower cannot sell or transfer the crypto currency
> until the loan that it secures is paid in full.

Ex. "1," Att. "5," p. 020.

In my situation, BlockFi's actual practice deviated from the process set forth above in the

following manner.  For me, I was never presented with any declaration of trust, depository

agreement, or any other credentials for accessing my bitcoin collateral.  Instead, BlockFi's

custodian, Gemini Trust Company LLC (doing business in California as Gemini Exchange LLC)

("Gemini") acted as BlockFi's agent only.  As far as I can tell, BlockFi did not segregate my

collateral.  Neither BlockFi nor its agents accounted to me for any proceeds received on account

of my collateral.  BlockFi held my collateral in its own accounts, and Gemini acted solely on

behalf of BlockFi.  In other words, BlockFi usurped all possession, legal title, and beneficial

ownership of my collateral (i.e. use and possession.)

23.    Attachment "6" shows a letter dated March 26, 2018 from BlockFi to the

Department.  Ex. "1," Att. 6, p. 022.  There, BlockFi states that:

> In accordance with California Financial Code section 2209 [*sic*, section 22009],
> BlockFi will take, in the name of the lender, in part, as security for the loan,
> possession of each borrower's assets.

Ex. "1," Att. "6," p. 024.

Contrary to BlockFi's interpretation, the statutory definition does not allow BlockFi to

"take… possession of each borrower's assets."  *Ibid*.  Rather, BlockFi in its capacity as a

" 'Finance lender,' " can only take a security interest in personal property if "the use and

possession of which property is retained by ***other than*** the mortgagee or lender."  Cal. Fin. Code

§ 22009 (emphasis and italics added).

24.    Attachments "7" and "8" show letters dated March 28, 2018 and April 6, 2018

from the Department to BlockFi.  Ex. "1," Att. "7," p. 026; Ex. 1, Att. "8," p. 029.  There, the

Department informs BlockFi that:

> The collateral must remain with the borrower.  Your response indicated that,
> "BlockFi will take, in the name of the lender, in part, as security for the loan,
> possession of each borrower's assets.  The Assets that BlockFi Lending LLC will
> take possession of as collateral are cryptocurrencies."
>
> This is not allowed under the CFL [California Financing Law.]  The Collateral
> must remain with the borrower.  Moreover, the Applicant cannot hold the
> borrower's digital assets as collateral.
>
> Based on the business plan and explanation provided, the Applicant is conducting
> or will be conducting activities not authorized under the CFL.

Ex. 1, Att. 7, pp. 026-027.

25.      Attachment "9" shows a letter from the Department to BlockFi dated April 10,

2018.  Ex. "1," Att. "9," p. 032.  The letter appears to be in response to an email and phone call

on April 10, 2018 between BlockFi and the Department.  See Ex. "1," Att. 10, p. 035 (referring

to a phone call on April 10, 2018).  The Department quotes Financial Code section 22009, then

clarifies that the Department "obtained legal counsel and the laws under the California

Commercial Code do not apply or trump the laws under the California Financial Code."  (Ex. 1,

Att. 9, p. 033.)  The Department advised that "Applicant cannot hold the borrower's digital

assets as collateral.  Based on the business plan and explanation provided, the Applicant is

conducting or will be conducting activities not authorized under the CFL."  Ex. 1, Att. 9, p. 033.

26.      Attachment "10" shows an email from BlockFi's Flori Marquez to the

Department whereby BlockFi represents that it has "Updated [its] Business Plan."  Ex. 1, Att. 10,

p. 035.  There, BlockFi represents that it will secure loans with "consumer applicants' holdings

of cryptocurrencies, *which they possess*."  Ex. 1, Att. 10, p. 035 (italics added).  Thus, BlockFi

modified its representation in an attempt to obtain a California finance lender's license.


**BlockFi Withdraws its Request for an Interpretation that it Can Possess Collateral.**

27.      Attachment "11" shows BlockFi's Request for Interpretive Opinion dated May

14, 2018, sent from BlockFi's attorney, Manatt, Phelps & Phillips, LLP, to the Department.  Ex.

"1," Att. 11, p. 043.  There, BlockFi's attorney clarifies that "**We understand that the crypto

currency securing a loan made by BlockFi is held in its name with a third party**."  *Ibid*.

Then, BlockFi's attorney acknowledges BlockFi's actual receipt of the Department's numerous

admonitions:

9

> In a letter from Daniel Balian of the Department to [BlockFi's agent] dated April
> 10, 2018, a copy of which is enclosed, Mr. Balian quoted a portion of wording
> included in the definition of a "finance lender" in Section 22009 of the California
> Financial Code discussed below and then stated that "under the California
> Financial Code, the Applicant is not allowed to hold possession of the borrower's
> collateral."  Other communications from Department representatives to BlockFi
> have similarly stated that a finance lender may "never hold the assets of the
> California borrowers it makes loans to under the CFL license," "assets/collateral
> may not be held by BlockFi or any other third party," "the collateral has to remain
> with the borrower" and "the CFL license does not permit you to take possession
> of the collateral."

Ex. 1, Att. 11, p. 044.  As such, BlockFi's attorney confirmed that BlockFi received actual notice

of the foregoing admonitions.

Then, BlockFi requested an interpretation that "a 'finance lender' under the California

Financing Law . . . may possess such collateral."  Ex. 1, Att. 11, p. 043.  At the end of its letter,

BlockFi **"request[ed] that, if the Department reaches a preliminary conclusion in its review**

**of this request that a finance lender may not hold collateral… [that BlockFi] be permitted**

**to withdraw this request**."  Ex. 1, Att. 11, p. 047 (emphasis added).  Tellingly, the Department

later informed me in writing that "no opinion was ever issued by the [Department] **due to the**

**opinion request being withdrawn by BlockFi**."  Ex. 1, Att. 13, p. 051 (emphasis added).

28.     BlockFi requested confidential treatment of its request for an interpretive opinion.

Attachment "12" shows a cover letter dated June 7, 2018 from the Department to BlockFi.  Ex.

1, Att. 12, p. 049.  There, the Department grants BlockFi's request to keep its letter confidential

for two years, from June 7, 2018 until June 7, 2020.  On July 8, 2020, I received a copy of the

letter after expiration of the confidentiality.

29.     Attachment "13" shows an email dated June 12, 2020 from the Department to myself. Ex. 1, Att. 13, p. 051.  There, the Department confirms that I have received all relevant documents subject to public disclosure.  *Ibid.*

30.     Attachment "14" shows BlockFi's Finance Lender License issued on August 16, 2018. Ex. 1, Att. 14, p. 053.  Said license, issued "pursuant to, and in compliance with, the California Financing Law" only authorizes BlockFi "**to engage in the business of 'Finance lender' . . . as defined in said law**, [i.e. Financial Code section 22009.]"  *Ibid.* (emphasis added and capitalization omitted.)  Thus, BlockFi's license incorporates by reference the statutory definition set forth in California Financial Code section 22009.

### BlockFi Willfully Retained Use and Possession of Gerro's Bitcoin Collateral.

31.     I owned my bitcoin collateral for personal purposes, and borrowed money from BlockFi personal purposes.  I acted at all relevant times in my capacity as a consumer.

32.     On or about 2019, I heard BlockFi's advertisements from my home and inquired about borrowing money.  As part of its KYC ("Know Your Customer") process, BlockFi asked for a copy of my address and driver's license.  My California driver's license reveals my address in Burbank, California.

33.     In September 2019, I took out two loans from BlockFi.  On February 11, 2020, I refinanced both loans into one loan for $2.275 million secured by BlockFi's possession of 441.85 of my bitcoins with a then market value of $4.55 million. For each loan, BlockFi sent loan documents that were pre-signed by Flori Marquez, as VP of Operations at BlockFi.  I accepted each and every of BlockFi's offers in Los Angeles, California.

34.    Attachment "15" is a Declaration by Flori Marquez, signed under penalty of perjury, and filed by BlockFi on June 10, 2020 in *Gerro I*.  There, Flori Marquez declares that "[Gerro] **transferred virtual currency (bitcoin) to BlockFi** as collateral for a loan."  Ex. 1, Att. 15, p. 057.  Marquez further declares that BlockFi "initiated liquidations of [Gerro's] collateral." Ex. 1, Att. 15, p. 058.

Marquez's declaration attaches copies of my loan agreements and declares that they are true and correct copies.  Ex. 1, Att. 15, p. 057, lines 22-23 (hereinafter, "Contract for Pledge"). The Contract for Pledge states that "Lender shall have **actual possession of**, and a first priority security interest in, **the Collateral**."  Ex. 1, Att. 15, p. 063, ¶ 4(d) (emphasis added).  The Contract for Pledge confirms that my bitcoin was "**transferred** . . . **into Lender's digital asset depository account at Gemini** Trust Company, LLC."  *Id.* at ¶ 4(c) (emphasis added).

The Contract for Pledge confirms that I pledged to BlockFi 441.85 bitcoin to BlockFi. Ex. 1, Att. 15, p. 063.  Of my 441.85 bitcoin, BlockFi has not returned 426 bitcoin.  Accordingly, my BlockFi Loan Account Holder Proof of Claim Form only requests the return of 426 bitcoin.

The Contract for Pledge did not authorize BlockFi to lease my bitcoin collateral to third-parties.  *See* Ex. 1, Att. 15, p. 063, ¶ 4(c).  The Contract for Pledge authorizes BlockFi to hold the proceeds from my collateral, but only as additional security for my loan.  *Id*. at ¶ 5(a)(vi). BlockFi never remitted, credited, accounted for, or held as security the proceeds of my collateral.

The Contract for Pledge does *not* authorize BlockFi to convert the proceeds from my collateral to BlockFi's own use and benefit.  The Contract for Pledge does *not* disclose that BlockFi will indirectly charge me all net proceeds that BlockFi receives from my bitcoin collateral.  BlockFi's indirect interest expense was in addition to a direct interest expense of 9.75% APR.  *See* Ex. 1, Att. 15, p. 062, ¶ (3a).  I timely paid all interest payments.

## **BlockFi Accelerated Gerro's Loan in Bad Faith, and Liquidated Gerro's Bitcoin in a Very Illiquid Market.**

35.     On March 12, 2020, the price of bitcoin significantly declined.  The price decline was not caused by any of bitcoin's fundamentals.  Rather, the price decline was caused by psychological factors, such as fear.

36.     Attachment "19" shows a true and correct copy of a tweet from the morning of March 12, 2020 at 4:24 a.m. Pacific Time by Zac Prince, BlockFi's CEO.  Ex. 1, Att. 19, p. 097.  I obtained the tweet directly from https://twitter.com/BlockFiZac/status/1238063279274106880.  The morning of BlockFi's liquidations, BlockFi's CEO tweeted a picture of him purchasing 1 bitcoin for $6,336.52, stating "stay calm and carry on." *Ibid.*

37.     Although I was not otherwise in default on my loan, BlockFi claims that it liquidated my collateral due to the bitcoin "price drop."  Ex. 1, Att. 18, p. 095.

38.     Attachment "17" shows a true and correct text message dated March 12, 2020 3:26 p.m. Pacific Time, sent from Jake Gargiulo, BlockFi's Head of Client Services, to my personal cell phone.  Ex. 1, Att. 17, p. 093.  In that text message, BlockFi claims that it sold 258.2723 of my bitcoin for $1,484,290.87.

39.     Attachment "18," shows a true and correct email dated March 12, 2020 at 4:47 p.m., also from Jake Gargiulo.  Ex. 1, Att. 18, p. 095.  Gargiulo's email, like his text message one hour earlier, pertains to the first liquidation.  However, between the first and second notifications, BlockFi reduced my amount realized to $1,472,643.00, decreasing the amount realized by $11,647.87 without any explanation.

40.     Attachment "16" is a true and correct copy of an email chain between myself,

GeorgeJGerro@Gmail.com, Flori Marquez, or Flori@BlockFi.com, (BlockFi's Vice President)

and Jake Gargiulo, or Jake@BlockFi.com, (BlockFi's head of client services).  Ex. 1, Att. 16, p.

081.  The email dated March 13, 2020 at 12:04 p.m. Pacific Time from Jake@BlockFi.com

states that "the price at the time of the automated sale yesterday is slightly different than the

current price at this moment.  This difference is a result of our loan portfolio as a whole and

liquidity at the time of the sale when the market dropped last night."  There, BlockFi claims to

have engaged in a second, additional liquidation of 81.16 bitcoin of my collateral.  Since it

appeared to be BlockFi's final liquidation notice, and the bitcoin price had already bottomed, I

responded that I was grateful to remain a client of BlockFi.  Ex. 1, Att. 16, p. 081.

41.     In an email dated March 13, 2020 at 6:10 p.m. Pacific Time, BlockFi sent a third

liquidation notice for another 59.1995 bitcoin.  Ex. 1, Att. 16, p. 082.  BlockFi claimed that "this

liquidation was triggered late Thursday March 12th evening."  Ex. 1, Att. 16, p. 082.  In other

words, BlockFi claimed that the third liquidation took place the evening before the second notice

was sent.

42.     I responded to BlockFi's third liquidation notice with the following questions:

"Please let me know the UTC time, exchanges or brokers, types of orders and its price, and how

the bitcoins sold were attributable to my collateral specifically." Ex. 1, Att. 16, p. 082.  I asked

BlockFi to explain why the bitcoin price was "one thousand dollars higher" at the time of the

notice than the amount of BlockFi's purported liquidation price.  Ex. 1, Att. 16, p. 082.  BlockFi

never provided any further information.

43.     Flori Marquez responded in an email dated March 14, 2020.  Ex. 1, Att. 16, p.
082.  There, Marquez admitted that BlockFi sold "when there was *very little liquidity in the
market*."  *Ibid*. (italics added).

44.     In an email dated March 16, 2020, Marquez told me that BlockFi can "reverse
sales if there is enough collateral on the loan to maintain a healthy LTV after the trade reversal."
Ex. 1, Att. 16, p. 084.  After I asked for details, Marquez said "You need to post enough
collateral to bring the loan's LTV below 60% after the trade is reversed.  I'm adding Jake who
can help with the math on this."  *Ibid*.  After a few more emails, on March 16, 2020, I asked
"Why do we need to reverse the trades, rather than buy at today's lower market prices?"  I never
received any answer to my question.

45.     In my opinion, BlockFi did not accelerate my loan in good faith.  BlockFi's
executives were simultaneously purchasing bitcoin and expressed that the bitcoin price decline
was not reflective of the fair value of bitcoin.  BlockFi even admitted that it liquidated my
bitcoin into a very illiquid market.  Thus, BlockFi's liquidations were commercially
unreasonable.  Then, BlockFi sought to capitalize off of me in an attempt to extract more capital
to make a greater profit from its unlawful use of further bitcoin collateral.

46.     For example, in a podcast recorded on April 8, 2020, Zac Prince, accompanied by
Flori Marquez, stated that "We are more bullish on crypto than we ever have been. I mean, could
there be a better macroeconomic backdrop for Bitcoin right now? I don't think so."  Zac Prince
& Flori Marquez, What Bitcoin Did, Bitcoin Finance in a Black Swan Event, recorded April 8,
2020, published April 12, 2020 https://www.whatbitcoindid.com/podcast/bitcoin-finance-in-a-
black-swan-event-with-zac-prince-flori-marquez, t: 14:40-16:30.  During that podcast, they
admit that BlockFi itself owns bitcoin.

**BlockFi Offers to "Reverse" the Liquidations to Obtain More Bitcoin from Gerro.**

47.     On March 16, 2020, Marquez said that "We can absolutely work to reverse trades, but only if it leaves the client with a healthy loan." Ex. 1, Att. 16, p. 086.

48.     On March 17, 2020, I asked BlockFi to "send the remaining bitcoin to me." *Ibid*. Soon thereafter, BlockFi refunded less than 16 bitcoin.

49.     Attachment "20" shows a true and correct copy of a tweet dated March 19, 2020 from Flori Marquez, BlockFi's VP. Ex. 1, Att. 20, p. 099. I obtained the tweet directly from https://twitter.com/FounderFlori/status/1240632513170718720. In Marquez's tweet, she says "I don't usually talk about my portfolio, but I just bought some BTC. It's up 11% the last 24 hours and seems to have broken with equity markets. If you missed the boat in other downturns, don't do it again now [rocket-ship emoji] 🚀."

50.     On March 19, 2020, I sent an email to BlockFi stating, "At $7,500 per BTC, I will be able to bring the LTV to 60% for 63.7 btc additional collateral." Ex. 1, Att. 16, p. 087. BlockFi did not indicate that its offer to reinstate the loan would be unavailable at a bitcoin price of $7,500. Indeed, the price of bitcoin was $7,700 when I accepted BlockFi's offer.

51.     Attachment "21" shows a true and correct copy of a tweet dated March 19, 2020 from BlockFi's official account. Ex. 1, Att. 20, p. 101. I obtained the tweet directly from https://twitter.com/BlockFi/status/1240753400695926785. In BlockFi's tweet, the company asks, "Have you bought the dip yet? There's still time [upward arrow emoji] ↗."

52.     In response, Gargiulo said in an email dated March 19, 2020, BlockFi could "reinstate some of your loan/collateral," "providing a breakdown of what would be needed to

reverse all trades that occurred." Ex. 1, Att. 16, p. 088.  On March 24, 2020, I thanked him and

asked "What is the formula for calculating the USD principal pay-down?"  *Id*. at p. 089.  On

March 24, 2020, Gargiulo responded that "*Formula is: Reinstated Principal Balance minus Loan*

*Available at 60% (based on reinstated collateral + price of BTC)*" and provided an example.

*Id*., at p. 089.  I told BlockFi that I was "in the due diligence phase with a traditional source of

capital." *Ibid*.

53.    By April 27, 2020, I obtained the financing and accepted BlockFi's offer using

BlockFi's formula.  I tendered 40 bitcoin worth $7,700 each, about $300,000 total, to reinstate

my loan at a 60% loan to value ratio.  *Ibid*.  I accepted BlockFi's offer from Los Angeles,

California.

54.    Gargiulo refused by stating that "the offer expired in March after your Loan

defaulted." *Id*. at p. 090.

55.    Marquez refused by stating that "we've concluded our accounting for the

quarter." *Id*. at p. 091.


**BlockFi Refused to Arbitrate With Gerro, Refused to Participate in Discovery, and**

**Stonewalled Any Attempt to Reach the Merits of Gerro's Claims in California.**

56.    Attachment "22" shows a true and correct copy of my demand letter to BlockFi

dated April 27, 2020, asking them to honor their offer to reverse the liquidations.  Ex. 1, Att. 22,

p. 103.  Attachment "23" shows an email dated April 30, 2020 whereby I demanded arbitration

with the American Arbitration Association.  Attachment "24" shows a letter from the American

Arbitration Association to BlockFi, stating that arbitration must be held in a "Reasonably

Convenient Location," i.e. Los Angeles, California.  Ex. 1, Att. 24, p. 107.

57.    Attachment "25" shows a true and correct copy of a letter dated May 7, 2020,

containing BlockFi's response by and through its counsel, Haynes and Boone.  Ex. 1, Att. 25, p.

111.  There, BlockFi's counsel states that my "441.85 BTC [was] **held in BlockFi's depository**

**account at Gemini** … as Collateral for the Loan."  *Ibid.*  BlockFi's letter refuses to arbitrate

because Gerro is not a "business," within the meaning of BlockFi's arbitration clause.  Ex. 1, Att.

25, p. 117.  Then, BlockFi makes the extraordinary claim that "BlockFi never offered to

'reverse' Mr. Gerro's collateral sales" and claims that "BlockFi had no ability… to reverse the

sale of Mr. Gerro's Collateral.  Ex. 1, Att. 25, p. 117.

58.    Attachment "26" shows a true and correct letter that I sent to the American

Arbitration Association, withdrawing my demand to arbitrate since BlockFi refused to arbitrate.

59.    Attachment "27" shows a true and correct copy of my First Amended Complaint

filed on March 13, 2020 in *Gerro v. BlockFi Lending LLC, et al.* (Los Angeles Superior Court

Case No. 20BBCV00308) (California Court of Appeal Case No. B307156) (California Supreme

Court Case No. S275530) ("*Gerro I*").  *Gerro I* requested the return of my bitcoin, the proceeds

from my bitcoin, damages for BlockFi's breach of contract to redeem the collateral, and the

return of my interest payments.  Ex. 1, Att. 27, p. 135.  *Gerro I* also named BlockFi's loan

servicer, Scratch Services LLC, as a defendant.  Gerro and Scratch have since settled.

60.    In *Gerro I*, BlockFi moved to dismiss the action on the grounds of its Delaware

forum selection clause.  Attachment "31" is a true and correct copy of the *Gerro I* trial court's

ruling on that motion.  The trial court held that Gerro asserts "unwaivable rights and fundamental

California public policy (California Commercial Code Section 9626(b)(1); California Financial

Code Sections 22161(a)(5-7), 22750(b) and 22752(a).)" Ex. 1, Att. 31, p. 203. The trial court

ruled that "BlockFi… cites a number of decisions and rules that make clear that the stated

policies of the courts in Delaware will apply California law when fundamental California public

policy is at issue, as it is here." *Ibid*. In other words, BlockFi represented that Delaware courts

would uphold Gerro's unwaivable and fundamental California rights. *Ibid*.

61.     I successfully appealed the *Gerro I* trial court's ruling. The California Court of

Appeal, Second District, Division One, ruled in my favor, by reversing the trial court's stay for

*forum non conveniens* by a 3-0 vote. Haynes and Boone acted as BlockFi's counsel at all stages

of our California litigation.

62.     BlockFi petitioned for discretionary review from the California Supreme Court, of

the forum selection issue. BlockFi filed an opening brief before filing bankruptcy. I moved this

Court for relief from the automatic stay, but the motion was denied without prejudice.

63.     While *Gerro I* was stayed on the basis of the Delaware forum selection clause,

Gerro commenced a separate action requesting public injunctive relief, to protect his fellow

California residents. *Gerro v. BlockFi Lending LLC*, et al. (Los Angeles Superior Court, Case

No. 20STCV31493; California Court of Appeal, Case No. B312647; California Supreme Court

Case No. S275530) ("*Gerro II*"). Under California law, public injunctive relief has the primary

purpose of protecting the public. *McGill v. Citibank, N.A*., 2 Cal.5th 945, 955, 216 Cal.Rptr.3d

627, 393 P.3d 85 (Cal. 2017). In other words, I sought to protect others from the significant

financial harms that BlockFi inflicted upon myself. *Gerro II* was heard by the same trial court

judge who heard *Gerro I*. Again, BlockFi moved to stay the action for *forum non conveniens*.

The *Gerro II* trial court denied the motion for forum non conveniens on many grounds, but

stayed *Gerro II* on the basis that it constituted the same cause of action as *Gerro I*. The Court of

Appeal eventually consolidated *Gerro I* and *Gerro II* for all purposes, affirmed the stay of

*Gerro II*, and both appeals are now pending before the California Supreme Court.

64.      The last case to mention is *Gerro v. Shultz, et al.* (Los Angeles Superior Court

Case No. 21STCP02023) (California Court of Appeal Case Nos. B321113 and B322706)

("*Gerro III*").  There, I originally sought to obtain a writ of mandate to force the Department to

enforce California law against BlockFi.  The operative complaint only seeks declaratory relief,

which is non-preclusive under to Code of Civil Procedure section 1062.  As against the

Department, *Gerro III* seeks declaratory relief that the Department adopted a policy of issuing

finance lender licenses to possessory crypto-lenders in violation of the California Administrative

Procedures Act.  As against BlockFi, *Gerro III* sought a declaration to construe and interpret

BlockFi's finance lender's license.  The *Gerro III* trial court held that I did not have "standing"

to obtain the requested relief.  That decision is now pending appeal.  The Court of Appeal has not

proceeded in deciding the appeals due to this bankruptcy court's automatic stay.


### Conclusion

65.      First, BlockFi willfully violated the California Financing Law by using,

possessing, and declaring a forfeiture of my rights to my bitcoin.

66.      Second, BlockFi acted as an unlicensed pawnbroker under California law.

67.      Third, BlockFi willfully received, concealed, and converted the proceeds of my

bitcoin collateral to its own use.

68.      Fourth, BlockFi accelerated my loan in bad faith, purportedly sold my bitcoin in a

very illiquid market, and breached my contractual right of redemption.

69.     I respectfully request that this Court overrule BlockFi's objection to my proof of claim, number 12386, for the return of my 426 bitcoin.

70.     Additionally, since BlockFi's objection was filed on the eve of voting in these Chapter 11 cases, BlockFi's objection will have the practical effect of denying my right to vote. Thus, in the event that this Court cannot rule upon the objection by the scheduled hearing date of July 20, 2023, I respectfully request that this court temporarily allow my claim under Federal Rules of Bankruptcy Procedure rule 3018, for the sole purpose of voting on a Chapter 11 plan. Even though BlockFi may see me as a disfavored creditor, I am a creditor nonetheless.


I certify under penalty of perjury that the foregoing is true and correct. Executed in Burbank, California on July 13, 2023.

By: /s/ George Gerro
George J. Gerro
Creditor and Moving Party