**United States Bankruptcy Court, District of New Jersey (Trenton)**

| If you have one or more Loan Collateral accounts, fill in this information to identify the case: | | |
|---|---|---|
| If you are a U.S. client: | ☒ | BlockFi Lending LLC (Case No. 22-19365) |
| If you are a non-U.S. client: | ☐ | BlockFi International Ltd. (Case No. 22-19368) |
| Other: | ☐ | (Debtor Name) _____ |
| | | (Case Number) _____ |

<u>Modified Official Form 410</u>

# Loan Account Holder Proof of Claim Form

04/22

Read the instructions before filling out this form. This form is for making a claim based on assets held in account of the Debtors. **Do not** use this form to assert any other pre-petition claims. **Do not** use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (November 28, 2022).**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | George J. Gerro <br> Name of the current creditor (the person or entity to be paid for this claim) <br> Other names the creditor used with the debtor: George John Gerro; George Gerro <br> Customer Identification Number(s): _____ <br> Email Address Used to Sign Up for your BlockFi Account(s): GeorgeJGerro@gmail.com |
| 2. | Has this claim been acquired from someone else? | ☒ No <br> ☐ Yes. From whom? _____ |
| 3. | Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br> George Gerro <br> Name <br> 530 S. Glenoaks Blvd., Suite 200. <br> Number Street <br> Burbank California 91502 <br> City State ZIP Code <br> Country (if outside of the US) _____ <br> Contact phone (818) 840-0000 <br> Contact email George@GerroLaw.com <br><br> **Where should payments to the creditor be sent? (if different)** <br> Name _____ <br> Number Street _____ <br> City State ZIP Code _____ <br> Country (if outside of the US) _____ <br> Contact phone _____ <br> Contact email _____ |
| 4. | Does this claim amend one already filed? | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ |

**Part 2:**    **Give Information About the Claim as of November 28, 2022**

6. Do you have any number you
use to identify the debtor?
   ☒ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7a. To the extent that you assert a
claim that is denominated in US
Dollars, list the value of the claim in
US Dollars as of the date the case was
filed (November 28, 2022)
   $ _____

7b. List the number of each type of coin held in your Loan account(s) as of the date the case was filed (November 28, 2022) (i.e., list the IN KIND COIN BALANCE in your Loan account(s) as of the date the case was filed).

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Bitcoin (BTC) | $16,206.3000 | 426 (Four-Hundred Twenty-Six Bitcoin) |
| Ethereum (ETH) | $1,167.2400 | |
| Binance Coin (BNB) | $292.7865 | |
| Binance USD (BUSD) | $1.0000 | |
| Litecoin (LTC) | $73.8500 | |
| Multi Collateral Dai (DAI) | $0.9997 | |
| PAX Gold (PAXG) | $1,740.6400 | |
| Polkadot (DOT) | $5.1340 | |
| US Dollar Fiat (USD) | N/A | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |
| Other (Please Specify) | | |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Client Account, goods sold, money loaned, lease, services performed, or personal injury/wrongful death.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>**BlockFi Lending LLC willfully violated the California Financing Law (Cal. Fin. Code, § 22750(a-b)) by using and possessing Gerro's bitcoin securing his loan, in violation of its California Finance Lender License (*see* Cal. Fin. Code, § 22009) converting the proceeds from Gerro's bitcoin to BlockFi's own use (Cal. Com. Code, § 9207)(c), and breaching its contract with Gerro to redeem the loan. See attachments 1 through 31, hereby incorporated by reference.** |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>    **Nature of property:**<br>    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:** _____<br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**     $_____<br><br>    **Amount of the claim that is secured:**     $_____<br><br>    **Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:**   $_____<br><br>    **Annual Interest Rate (when case was filed)** _____%<br>    ☐ Fixed<br>    ☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, | ☒ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

**Part 3:**    **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   03/17/2023  (mm/dd/yyyy)

*George Gerro*

Signature

Name of the person who is completing and signing this claim:

| Name | George | John | Gerro |
|---|---|---|---|
| | First name | Middle name | Last name |

Title    Attorney at Law (California State Bar Number 325168)

Company

Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    530 S. Glenoaks Blvd., Suite 200

Number    Street

Burbank                                    California    91502

City                                    State    ZIP Code

Contact phone    (818) 840-0000                    Email    George@GerroLaw.com

Index of Attachments to Proof of Claim of Creditor, George J. Gerro
United States Bankruptcy Court for the District of New Jersey, Trenton Vicinage
*In re BlockFi Inc., et al.*, Case No. Case No. 22-19361

| No. | Attachment Name | (mm/dd/yy) | Page |
|-----|-----------------|------------|------|
| 1 | BlockFi Lending LLC ("BlockFi") Application to the California Department of Business Oversight ("Department") for a License under the California Finance Lenders Law | 02/01/18 | 001 |
| 2 | Letter from Department to BlockFi | 02/14/18 | 008 |
| 3 | Letter from BlockFi to Department | 03/05/18 | 011 |
| 4 | Letter from Department to BlockFi | 03/08/18 | 014 |
| 5 | Letter from BlockFi to Department | 03/23/18 | 017 |
| 6 | Letter from BlockFi to Department | 03/26/18 | 021 |
| 7 | Letter from Department to BlockFi | 03/28/18 | 025 |
| 8 | Letter from Department to BlockFi | 04/06/18 | 028 |
| 9 | Letter from Department to BlockFi | 04/10/18 | 031 |
| 10 | Letter from BlockFi to Department | 04/11/18 | 034 |
| 11 | Letter from BlockFi to Department | 05/14/18 | 042 |
| 12 | Letter from Department to BlockFi | 06/07/18 | 048 |
| 13 | Letter from Department to Gerro | 06/12/18 | 050 |
| 14 | BlockFi's Finance Lender License; Cal. Financial Code § 22009 | 08/16/18 | 052 |
| 15 | Declaration of Flori Marquez, Vice President of BlockFi ("Marquez") | 06/10/20 | 055 |
| 16 | Emails between BlockFi and Gerro | 03/13/20-05/01/20 | 080 |
| 17 | Text messages between Gerro and Jake Gargiulo, Director of Client Services at BlockFi ("Gargiulo") | 03/12/20 | 092 |
| 18 | Email from Gargiulo to Gerro | 03/12/20 | 094 |
| 19 | Tweet by Zac Prince, CEO of BlockFi | 03/12/20 | 096 |
| 20 | Tweet by Marquez | 03/19/20 | 098 |
| 21 | Tweet by BlockFi | 03/19/20 | 100 |
| 22 | Letter from Gerro to BlockFi | 04/27/20 | 102 |
| 23 | Email from Gerro to BlockFi demanding arbitration | 04/30/20 | 104 |
| 24 | Letter from American Arbitration Association ("AAA") | 05/04/20 | 106 |
| 25 | Letter from BlockFi to Gerro | 05/07/20 | 110 |
| 26 | Letter from Gerro to AAA | 05/09/20 | 119 |
| 27 | Gerro's First Amended Complaint against BlockFi in California | 05/13/20 | 121 |
| 28 | California Financial Code § 22750; Commercial Code § 9201 | N/A | 137 |
| 29 | Commercial Code § 9207; California Financial Code § 22326 | N/A | 140 |
| 30 | Verified Answer of BlockFi | 09/09/22 | 143 |

# ATTACHMENT "1"

# ATTACHMENT "1"

# ATTACHMENT "1"

001

(Department of Business Oversight Use Only)

Fee Paid $ _SS8_

Receipt No. _CF147-02_

FEB 0 2 2018

DEPARTMENT OF BUSINESS OVERSIGHT

File No. _____

## STATE OF CALIFORNIA
## DEPARTMENT OF BUSINESS OVERSIGHT

### APPLICATION FOR A LICENSE UNDER THE
### CALIFORNIA FINANCE LENDERS LAW

Received
LA Mailroom

FEB 0 1 2018

Department of
Business Oversight

*APPLICATION FOR A LICENSE AS A:*    [ ] LENDER    [ ] BROKER    [☑] BOTH

The application must be accompanied by a non-refundable application fee of $200, a non-refundable investigation fee of $100, and non-refundable fingerprint processing fees (Departments of Business Oversight and Justice). The application (together with the fees payable to the Department of Business Oversight) must be filed in the Los Angeles office of the Department of Business Oversight, located at 320 West 4ᵗʰ Street, Suite 750, Los Angeles, CA 90013.

1.  a. Name of Applicant: BlockFi Lending LLC

    b. Fictitious Business Name: NA

    c. Fictitious Business Name filed in the County of: NA

2.  Applicant is organized and will do business as (check as applicable):

    [ ] an individual (a sole proprietor)

    [ ] a general partnership

    [ ] a limited partnership

    [ ] a corporation

    [☑] a limited liability company

    [ ] other (please specify such as joint venture, association, joint stock company, trust, unincorporated organization, government, or political subdivision of a government):

3.  Applicant's proposed licensed place of business:

| 86 Chambers Street, Suite 205 | New York. | New York, NY | 10007 |
|---|---|---|---|
| (Number and Street) | (City) | (County)  (State) | (Zip) |

*1422 – CFLL Application Long Form (Rev.5/16)*    1

b.   Provide a short description of the applicant's business plan that includes any information necessary for the Commissioner of Business Oversight to have an understanding of the type of business that the applicant plans to conduct under this license.

BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the needs of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our first product is secured loans collateralized by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up their digital assets as collateral. Leveraging a sophisticated infrastructure that integrates with multiple blockchains, we plan to expand our product set based on our retail and institutional client's needs.

11.   Has the applicant's offer and sale of securities been qualified in California?

☐ Yes      ☑ No

If no, check as applicable:
☐ Applicant is exempt from qualification, and has filed any applicable notice of exemption with the Department.
☑ Applicant has never offered or sold its securities in California or to a California resident.

## REQUIRED EXHIBITS:

**EXHIBIT A.** Provide a balance sheet of the applicant prepared in accordance with generally accepted accounting principles and dated no more than 90 days prior to the date this application is filed. Label the balance sheet as Exhibit A.

**EXHIBIT B.** Provide the original surety bond, including riders and endorsements in the amount of $25,000. The instructions and bond form are enclosed.

**EXHIBIT C.** Provide for each individual (natural person) named in Items 4, 5, and 6, a Statement of Identity and Questionnaire, along with fingerprint information and the cost of fingerprint processing. The Statement of Identity and Questionnaire form is enclosed.

**EXHIBIT D.** SOLE PROPRIETOR ONLY: Complete the enclosed form entitled "Statement of Citizenship, Alienage, and Immigration Status for Application of Department of Business Oversight License or Certificate."

**EXHIBIT E.** Complete the enclosed form entitled "Customer Authorization for Disclosure of Financial Records."

**EXHIBIT F.** Provide a copy of the current Fictitious Business Name Statement filed with the county clerk. Label the document as Exhibit F.

## EXECUTION SECTION

In the matter of the Application for a License under the California Finance Lenders Law, I, the undersigned, authorized to act on behalf of the applicant, declare that the following statements are true and correct:

1.  That the applicant has obtained and read copies of the California Finance Lenders Law (Division 9 of the California Financial Code) and the Finance Company Rules (Chapter 3, Title 10, California Code of Regulations) and is familiar with their content.

2.  That the applicant agrees to comply with the requirements of the California Finance Lenders Law, the rules adopted, and the orders issued by the Commissioner of Business Oversight.

3.  That in the event of any change of its officers, directors, or any other persons named in this application, the applicant will file an amendment to the application containing the same information in relation to the new person(s) as is required in the application, within thirty days from the date of the change, with the Commissioner of Business Oversight.

4.  That the applicant will file with the Commissioner of Business Oversight an amendment to this application prior to any material change in the information contained in the application for licensure, including, without limitation, the plan of operation.

5.  That the applicant agrees to report any change of business location at least 10 days prior to the change.

6.  That the applicant for a brokers license agrees that a license issued pursuant to the California Finance Lenders Law does not provide the authority to broker loans to lenders that are not licensed as finance lenders as defined in Financial Code Section 22009, that loans will only be brokered to lenders licensed pursuant to the California Finance Lenders Law, and that finance lenders may not pay compensation for brokerage services (i.e., brokerage commission, finder's fee, referral fees, etc.) to anyone not licensed as a broker under this Division, except for those exempt persons as provided for in Section 1451 of the Rules (10 C.C.R. § 1451).

7.  For purposes of Financial Code Sections 22340 and 22600, when selling loans secured by real property to institutional investors, the applicant agrees that the source of any funding advances from an institutional investor committed to purchasing the note. The practice commonly known as "table funding" is not permitted under the California Finance Lenders Law.

8.  That the applicant agrees that a license issued pursuant to the California Finance Lenders Law permits only employees to work under the license. Persons engaged in lending that are not employees may need to obtain a license under the California Finance Lenders Law.

9.  That the applicant agrees that a license issued pursuant to the California Finance Lenders Law does not permit a licensee to authorize locations operated by persons other than employees of the licensee under some form of franchise or license agreement (e.g., net branching).

10. That the applicant agrees to obtain a new license issued pursuant to the California Finance Lenders Law for each additional location.

11. That the applicant agrees to comply with limitations on rates and charges for loans under the California Finance Lenders Law.

12. That the applicant agrees to obtain the Commissioner of Business Oversight's approval prior to engaging in other business at a licensed location, unless that other business is providing products or services of an affiliated supervised financial institution.

13. That the applicant agrees that real estate may not be taken as security for a consumer loan of less than $5,000.

14. That the applicant agrees that commercial loans of less than $5,000 are treated as consumer loans under the law.

15. For high interest rate loans secured by real estate, the applicant agrees to comply with the additional disclosure and consumer protection requirements of the Covered Loan Law and higher-price mortgage loans (Financial Code Section 4970 et seq., Financial Code Section 4995 and Part 226 of Title 12 of the Code of Federal Regulations).

16. That the applicant agrees to not share borrower information with third parties without obtaining the express written consent of the borrower, as required by the California Financial Information Privacy Act (Financial Code Section 4050 et seq.).

17. That the applicant agrees to not charge interest on a consumer loan secured by real estate for more than one day prior to the date the loan proceeds are disbursed from escrow in accordance with Civil Code Section 2948.5.

18. That the applicant will maintain adequate staff to meet the requirements of the California Finance Lenders Law, as prescribed by rule or order of the Commissioner of Business Oversight.

19. That the applicant agrees to maintain accounting records that meet generally accepted accounting principles and demonstrate a net worth of at least $25,000 at all times.

20. That the applicant will file with the Commissioner of Business Oversight any report required by the Commissioner.

21. That the applicant agrees to maintain books and records sufficient to document compliance with the California Finance Lenders Law.

22. That the applicant will keep and maintain for 36 months from the date of final entry on any loan the business records and other information required by law or rules of the Commissioner of Business Oversight.

23. That the applicant will maintain a register of all loans made or brokered under this license that will be updated at least monthly, and that the information maintained in the register will include the name and address of the borrower, account number, amount of loan, date of loan, terms, total of payments and the annual percentage rate, and that the register will also show the account number, name of borrower and payoff date of all loans paid in full.

24. That the applicant will submit to periodic examinations by the Commissioner of Business Oversight as required by the California Finance Lenders Law.

25. That the applicant agrees to pay for the costs of each examination.

26. That the applicant, if located outside of the State of California, agrees to make available to the Commissioner of Business Oversight or the Commissioner's representatives, at a location in this state designated by the Commissioner of Business Oversight, or the Commissioner's representatives, the books, accounts, papers, records and files within 10 calendar days of any request from the Commissioner; or to pay the reasonable expenses for travel, meals, and lodging of the Commissioner of Business Oversight or the Commissioner's representatives incurred during any investigation or examination made at the licensee's location outside this state.

27. That the applicant agrees to pay an annual assessment each year of a minimum of $250 per location.

28. That the applicant agrees to file an annual report by March 15 of each year.

29. That the applicant agrees to maintain a surety bond of $25,000 at all times.

30. That the applicant hereby attests that the applicant (including officers, directors, general partners, persons responsible for the applicant's lending activities in California and persons owning or controlling directly or indirectly, 10% or more of the applicant) has not engaged in conduct that would be cause for denial of a license. (Only one declaration required for each applicant.)

31. That, if applicable, the applicant will comply with the rules governing the filing of a fictitious business name as set forth in the Business and Professions Code, beginning at Section 17900.

32. That the applicant will comply with the examination requirements concerning advertising pursuant to California Code of Regulations Section 1550.

33. By signing the application, the applicant hereby irrevocably appoints the Commissioner of Business Oversight of the State of California, or the Commissioner's successor in office, to be the undersigned's attorney to receive service of any lawful process in any noncriminal suit, action or proceeding against the undersigned, or the undersigned's successor, executor, or administrator which arises under the California Finance Lenders Law or any rule or order thereunder after this consent has been filed, with the same force and validity as if served personally on the undersigned. For the purpose of compliance with the California Finance Lenders Law of the State of California, notice of the service and a copy of process must be sent by registered or certified mail to the undersigned at the following address:

Florencia Maria Marquez
_____
                    (Name)

86 Chambers Street, Suite 205        New York         NY         10007
_____
(Number and Street)                  (City)          (State)    (Zip Code)

Indicate the name, title, address, telephone number, and e-mail address of the person who should be contacted for information regarding this application. The license will also be mailed to this person *unless otherwise instructed.*

| Attention: Stacey Batzair, Regulatory Counsel Group, Inc. | Preparer | | 678-393-1925 |
|---|---|---|---|
| (Name) | (Title) | | (Telephone Number) |
| 219 Roswell Street, Suite 200 | Alpharetta, | GA | 30009 |
| (Number and Street) | (City) | (State) | (Zip Code) |
| sbbatzar@rcgteam.com | | | |
| | | (Email Address) | |

WHEREFORE, applicant requests that a license be issued by the Commissioner of Business Oversight authorizing applicant to engage in business under the California Finance Lenders Law within the State of California.

The applicant has duly caused this application to be signed on its behalf by the undersigned, thereunto duly authorized.

The undersigned, on behalf of the applicant, acknowledges that this application and all exhibits thereto which are not designated as confidential are subject to public inspection pursuant to Section 250.9.1, Chapter 3, Title 10, California Code of Regulations. A request for confidentiality of certain documents may be requested pursuant to Section 250.10. If a request for confidential treatment is granted (or denied), the person making such request will be notified in writing.

The undersigned also acknowledges on behalf of the applicant that the State Board of Equalization and the Franchise Tax Board are authorized to share taxpayer information with the Department of Business Oversight, and in the event the state tax obligation is not paid by licensee after a license is issued, the Department of Business Oversight may be required to suspend the license (Business and Professions Code Sections 31 and 494.5).

I declare under penalty of perjury under the laws of the State of California that I have read the foregoing application, including all Exhibits attached thereto, or filed therewith, and know the contents thereof, and that the statements therein are true and correct. **The signor of this declaration must be named in either Section 4, 5, or 6 of this application.**

Executed at New York, New York, NY
(City, County, and State)

Date 1/25/18

BlockFi Lending LLC
(Applicant)

(Signature of Declarant)

Florencia Maria Marquez
(Typed Name of Declarant)

Vice President
(Title)

# ATTACHMENT "2"

# ATTACHMENT "2"

# ATTACHMENT "2"

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY      EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*



**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

February 14, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE:  CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.)  A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.    Item #6e of the Application was left blank. Please resubmit Item #6e (and all other items included on the same page as 6e) without any blanks; if necessary, indicate ("N/A") but do not leave blanks.

2.    Item #8 of the application indicated that there are no other business activities taking place at the Applicant's proposed place of business. However, BlockFi Inc. is also noted to be operating out of the same business address as the Applicant. Please revise and resubmit Item #8 of the Application so that it indicates the other business (BlockFi Inc.) and provides a description of its activities.

3.    Item #10b of the application did not describe any lending and/or brokering activities that fall under the purview of the California Financing Law ("CFL"). The business plan also

---

*1515 K Street, Suite 200*    *One Sansome Street, Suite 600*    *320 West 4th Street, Suite 750*    *1350 Front Street, Room 2034*
*Sacramento, CA 95814-4052*    *San Francisco, CA 94104-4428*    *Los Angeles, CA 90013-2344*    *San Diego, CA 92101-3697*
*(916) 445-2705*    *(415) 972-8565*    *(213) 576-7500*    *(619) 525-4233*

*45 Fremont Street, Suite 1700*    *300 S. Spring Street, Suite 15513*    *7575 Metropolitan Drive, Suite 108*
*San Francisco, CA 94105*    *Los Angeles, CA 90013*    *San Diego, CA 92108*
*(415) 263-8500*    *(213) 897-2085*    *(619) 682-7227*

www.dbo.ca.gov • 1-866-275-2677

indicated that, "BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the need of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our product is secured loans collateralized by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up digital assets as collateral." What are fiat currencies? How are these assets securing any loans made by the Applicant? It is unclear what lending activities will be conducted by the Applicant. In addition, no brokering activities were described. Based on the description of the Applicant's planned lending and brokering activities, it does not appear that the Applicant is making or brokering any loans. A finance lender is defined by California Financial Code Section 22009 as any person who is engaged in the business of making consumer or commercial loans. Based on the description of your planned business activities, it is not clear how this falls within the definition of a lender.

Also, a licensed broker under the CFL may only broker loans to licensed CFL lenders.

Please revise and respond accordingly.

4.    A business plan was also submitted under ("Exhibit L"), however, it was indicated to be Exhibit N on the cover letter submitted with the Application. The business plan submitted was indicated as ("Confidential Business Plan"). The business plan is a public document and not confidential. Please remove any reference to confidentiality and resubmit this section.

5.    The Statement of Identity and Questionnaire (SIQ) submitted for Kavita Gupta was not an original SIQ, and the signature page did not include an original, wet-ink signature. Please resubmit Kavita Gupta's SIQ and make sure the verification page includes an original, wet-ink, signature.

6.    Exhibit A: The balance sheet, statement of cash flows and all other financials submitted indicated, ("Draft"). Please remove ("Draft") from the financials and resubmit. The balance sheet should be prepared in accordance with generally accepted accounting principles, with no indications of ("Draft") or any other statements that may give the impression that the information presented may be incorrect.

7.    Exhibit J: The Certificate of Good Standing submitted from the Secretary of State from Delaware did not indicate the date of formation. Please resubmit Exhibit J and ensure that it states the date of formation, state of organization and a statement that the entity is in good standing.

8.    Exhibit K: A certificate of Good Standing from the California Secretary of State was not submitted. Please submit Exhibit K.

9.    Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s) are/is. The organizational chart of the CFL application requires the submission of an organizational chart of the Applicant as follows:

# ATTACHMENT "3"

# ATTACHMENT "3"

# ATTACHMENT "3"

011

**RCG**

**Regulatory Counsel Group, Inc.**
*Mortgage Licensing & Compliance Advisors*

March 5, 2018

Received
LA Mailroom

MAR 07 2018

Department of
Business Oversight

Department of Business Oversight

320 West 4th Street

Suite 750

Los Angeles, CA 90013

1-866-275-2677

RE:    BlockFi Lending LLC/CA CFL License Application/60DBO 81955

Dear Mr. Balian:

Per your request, this provides you with the responses to your inquiries in relation to BlockFi Lending LLC's submission for a CFL License.  Regulatory Counsel Group, Inc. is submitting this on behalf of our client.

1.  Please see enclosed page 4, 6e which we discussed.

2.  BlockFi Inc., as the parent company of BlockFi Lending LLC, employs the full time employees that work on BlockFi Inc. and BlockFi Lending LLC and holds material contracts that relate to the non-lending side of the business, such as office leases, marketing contracts and contracts with other vendors.

3.  *What are fiat currencies?*

    A fiat currency is a currency that is backed by a government. In the case of BlockFi Lending LLC, the term fiat currency is used to describe the U.S. Dollar.

    *b. How are these assets securing any loans made by the Applicant?*

    The assets are secured two ways. First, BlockFi Lending LLC requires that its clients store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust Company, LLC ("Gemini") (NMLS #1518126), throughout the life of the loan. Gemini is a New York trust company licensed by the New York State Department of Financial Services. Gemini is a fiduciary under §100 of the New York Banking Law and held to specific capital reserve requirements and banking compliance standards.

    Second, BlockFi Lending LLC files a UCC-1 with the secretary of state of the primary state of operation or residence of each borrower. The language utilized in our UCCs to describe the collateral is below:

1

*All of Debtor's right, title and interest in the [AMOUNT OF CRYPTOCURRENCY] [TYPE OF CRYPTOCURRENCY] at [GEMINI DEPOSIT ADDRESS], and all [TYPE OF CRYPTOCURRENCY] that is thereafter deposited by Debtor to such address pursuant to the terms of that certain Loan and Security Agreement, dated as of [DATE OF AGREEMENT], by and between Debtor and Secured Party.*

c.     **Please explain how BlockFi Lending LLC is engaged in the business of making consumer and commercial loans.**

BlockFi issues consumer and commercial loans to cryptocurrency holders who require liquidity but do not wish to sell their digital assets. BlockFi holds each borrower's digital assets in escrow as collateral, and provides interest-only, U.S. Dollar-denominated loans borrowers. The product is an installment loan with a 12% interest rate on consumer loans and a 13.5% interest rate on commercial loans. Currently, both types of loans are paid back over a period of 12 months. In the event that the value of the borrower's digital assets falls below a prescribed threshold, BlockFi reserves the right to liquidate some or all those digital assets in order to recoup the outstanding loan balance.

4.  Please see attached business plan without the reference to "confidential".

5.  Kavita Gupta's SIQ with a wet-ink signature is being sent directly to your attention.

6.  Please see the non-draft financials enclosed (BlockFi Inc. and BlockFi Lending LLC).

7.  Please see the attached, Certificate of Good Standing with formation date, state of organization and good standing of entity (Exhibit J).

8.  Please see the attached, Certificate of Good Standing from the Secretary of State of California (Exhibit K).

9.  Per our discussion, please see the enclosed updated organizational chart clarifying the ultimate owner.

10. Who is involved with the Applicant's CFL lending and brokering activities?  Please list the names of the individuals and their duties and responsibilities.

Currently, Flori Marquez and Zac Prince are involved in CFL lending activities. Zac Prince is involved in customer outreach efforts. His responsibilities include handling inbound customer questions, developing materials to explain our loan products to prospective clients, and managing our marketing efforts to help initiate applications through marketing efforts.

Flori Marquez is involved in the underwriting, approval and funding of loans. From time to time, Flori Marquez also assists in answering inbound questions from prospective clients.

b.  **Who makes the CFL loan decisions for the Applicant?**
All decisions are approved by Flori Marquez in accordance with BlockFi's underwriting policy. All applicants are evaluated on a pass / fail basis.

2

# ATTACHMENT "4"

# ATTACHMENT "4"

# ATTACHMENT "4"

STATE OF CALIFORNIA – BUSINESS, CONSUMER ... VICES AND HOUSING AGENCY                                              EDMUND G. BROWN JR., Governor

**DEPARTMENT OF BUSINESS OVERSIGHT**
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

March 8, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

### RE: CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE RESPONSE DUE ON MAY 21, 2018

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.)  A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.  Item #8 of the application indicated that there are no other business activities taking place at the Applicant's proposed place of business. However, BlockFi Inc. is also noted to be operating out of the same business address as the Applicant. Please revise and resubmit Item #8 of the Application so that it indicates the other business (BlockFi Inc.) and provides a description of its activities.

2.  Item #10b of the application did not describe any lending and/or brokering activities that fall under the purview of the California Financing Law ("CFL"). The business plan also indicated that, "BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the need of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our product is secured loans collateralized

| | | | |
|---|---|---|---|
| *1515 K Street, Suite 200*<br>*Sacramento, CA 95814-4052*<br>*(916) 445-2705* | *One Sansome Street, Suite 600*<br>*San Francisco, CA 94104-4428*<br>*(415) 972-8565* | *320 West 4th Street, Suite 750*<br>*Los Angeles, CA 90013-2344*<br>*(213) 576-7500* | *1350 Front Street, Room 2034*<br>*San Diego, CA 92101-3697*<br>*(619) 525-4233* |
| *45 Fremont Street, Suite 1700*<br>*San Francisco, CA 94105*<br>*(415) 263-8500* | *390 S. Spring Street, Suite 15513*<br>*Los Angeles, CA 90013*<br>*(213) 897-2085* | | *7575 Metropolitan Drive, Suite 108*<br>*San Diego, CA 92108*<br>*(619) 682-7227* |

www.dbo.ca.gov • 1-866-275-2677

015

by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up digital assets as collateral."

The business plan provided does not indicate any lending and/or brokering activities that fall under the purview of the CFL. It is unclear what lending activities will be conducted by the Applicant. In addition, no brokering activities were described. Based on the description of the Applicant's planned lending and brokering activities, it does not appear that the Applicant is making or brokering any loans. A finance lender is defined by California Financial Code Section 22009 as any person who is engaged in the business of making consumer or commercial loans. Based on the description of your planned business activities, it is not clear how this falls within the definition of a lender. In addition, a licensed broker under the CFL may only broker loans to licensed CFL lenders. Also, the CFL license is for lending and brokering within the State of California and is not a license to conduct lending and/or brokering activities across the globe.

Please revise your business plan and submit a business plan that falls under the purview of the CFL. Also, please indicate the lending and brokering activities that will be conducted by the Applicant under the CFL in the State of California with California commercial and consumer borrowers. The business plan does not indicate whether the Applicant will be involved with commercial and/or consumer borrowers within the State of California.

Lastly, the collateral must remain with the borrower. Your response indicated that the clients store the assets posted as collateral with the Applicant's licensed custodian, Gemini Trust Company, throughout the life of the loan. This is not allowed. The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets in escrow as collateral.

Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

3.   *The Statement of Identity and Questionnaire (SIQ) submitted for Kavita Gupta was not an original SIQ, and the signature page did not include an original, wet-ink signature. Please resubmit Kavita Gupta's SIQ and make sure the verification page includes an original, wet-ink, signature.*

No

Your response to the above item indicated that the SIQ is attached; however, an SIQ was not included with the mail received by the Department.

4.   Exhibit A: The balance sheet submitted indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.

No

The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.

No

Is the balance sheet prepared under the cash basis or accrual basis?

Please respond accordingly.

# ATTACHMENT "5"

# ATTACHMENT "5"

# ATTACHMENT "5"

**Fiori Marquez**
**Co-Founder, VP of Operations**

March 23, 2018

VIA OVERNIGHT COURIER

Daniel Balian

Corporation Examiner
California Financing Law
Department of Business Oversight
320 West 4th Street, Suite 750
Los Angeles, California 90013-2344

RE: California Financing Law License Application 60DBO 81955

Dear Mr. Balian,

This letter is in reference to the letter sent by the Department on March 8, 2018 to BlockFi
Lending LLC (Applicant) in regards to our application for a license under the California
Financing Law (CFL).

We have set forth below each item in your letter for ease of reference, followed by our
responses:

1. **Item #8 of the application indicated that there are no other business activities taking
   place at the Applicant's proposed place of business. However, BlockFi Inc. is also
   noted to be operating out of the same business address as the Applicant. Please
   revise and resubmit Item #8 of the Application so that it indicates the other business
   (BlockFi Inc.) and provides a description of its activities.**

   Applicant has updated Item #8 of the attached application by checking the "yes" box and
   providing the following description of BlockFi Inc.'s activities:

   Applicant shares its office with BlockFi Inc., the parent company and sole owner of
   Applicant. BlockFi Inc. does not conduct any lending-related activities, and customers
   generally never visit the space, so the shared space should not cause any customer
   confusion. As a parent company, BlockFi Inc. employs the employees that work for
   BlockFi Inc. and Applicant and holds material contracts that relate to the non-lending
   side of the business, such as office leases, marketing contracts and contracts with other
   vendors.

2. **Item #10b of the application did not describe any lending and/or brokering activities
   that fall under the purview of the California Financing Law ("CFL"). The business**

plan also indicated that, "BlockFi Lending LLC's mission is to provide liquidity, transparency and efficiency to digital financial markets by creating products that meet the need of consumers and corporations across the globe. We build bridges between traditional finance and digital markets that enable growth for all participants. Our product is secured loans collateralized by digital assets (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting up digital assets as collateral."

The business plan provided does not indicate any lending and/or brokering activities that fall under the purview of the CFL. It is unclear what lending activities will be conducted by the Applicant. In addition, no brokering activities were described. Based on the description of the Applicant's planned lending and brokering activities, it does not appear that the Applicant is making or brokering any loans. A finance lender is defined by California Financial Code Section 22009 as any person who is engaged in the business of making consumer or commercial loans. Based on the description of your planned business activities, it is not clear how this falls within the definition of a lender. In addition, a licensed broker under the CFL may only broker loans to licensed CFL lenders.

Also, the CFL license is for lending and brokering within the State of California and is not a license to conduct lending and/or brokering activities across the globe. Please revise your business plan and submit a business plan that falls under the purview of the CFL. Also, please indicate the lending and brokering activities that will be conducted by the Applicant under the CFL in the State of California with California commercial and consumer borrowers. The business plan does not indicate whether the Applicant will be involved with commercial and/or consumer borrowers within the State of California.

As you note above, Item #10b did state that "our product is secured loans," indicating that we intend to engage in the business of lending. Nevertheless, we are revising Item #10b in the attached application to distill and clarify our business plan as follows:

Applicant plans to make one-year, fixed interest rate, consumer and commercial loans. The loans will be secured by security interests in crypto currencies owned by the borrower.

In the event that Applicant determines that it will not make a loan, Applicant may refer the applicant or otherwise broker the loan under the authority of its CFL license to other CFL licensed lenders in the State of California.

Lastly, the collateral must remain with the borrower. Your response indicated that the clients store the assets posted as collateral with the Applicant's licensed custodian, Gemini Trust Company, throughout the life of the loan. This is not allowed. The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets in escrow as collateral. Based on the

business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

Responding to the foregoing comment, we note that a crypto currency is not a tangible asset like an automobile or house that a borrower will possess and use while a loan is outstanding, subject to the lender's security interest. Instead, as its name suggests, a crypto currency is more like money or a deposit account, and a lender that takes a security interest in such an asset must exercise control over the asset to protect itself. For example, if a lender takes a security interest in cash, it cannot allow the borrower to have possession of the cash to spend, of course. The way Applicant will exercise this control to protect itself is by having the crypto currency held by a third party custodian pursuant to an agreement between the Applicant, the borrower and the custodian, which agreement among other things will provide that the borrower cannot sell or transfer the crypto currency until the loan that it secures is paid in full.

3. **Your response to the above item indicated that the SIQ is attached; however, an SIQ was not included with the mail received by the Department.**

   Kavita Gupta is sending her SIQ to the Department separately.

4. **Exhibit A: The balance sheet submitted indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.**

   **Please find the Operating Agreement attached as Exhibit A.**

   **The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.**

   Please find updated financials attached as Exhibit B1 and B2. The Fixed Assets are owned by BlockFi Lending LLC. Please find a current breakdown of all loans owned by BlockFi Lending LLC in exhibit B3. These loans were made in states outside of California in accordance with each state's licensing regulations.

   **Is the balance sheet prepared under the cash basis or accrual basis?**

   The balance sheet is prepared under an accrual basis.

5. **Exhibit J: The Certificate of Good Standing submitted from the Secretary of State from Delaware did not indicate the date of formation. Please resubmit Exhibit J and ensure that it states the date of formation, state of organization and a statement that the entity is in good standing.**

   Please find an updated Certificate of Good Standing attached as Exhibit C.

# ATTACHMENT "6"

# ATTACHMENT "6"

# ATTACHMENT "6"

**PCG**

**Regulatory Counsel Group, Inc.**
*Mortgage Licensing & Compliance Advisors*

March 26, 2018

Daniel Balian

Department of Business Oversight

320 West 4th Street

Suite 750

Los Angeles, CA 90013

1-866-275-2677

Received
LA...

MAR 27 2018

Department f
Business Oversight

RE:    BlockFi Lending LLC/CA CFL License Application/60DBO 81955

Dear Mr. Balian:

Per your request, this provides you with the responses to your inquiries in relation to BlockFi Lending LLC's submission for a CFL License. Regulatory Counsel Group, Inc. is submitting this on behalf of our client.

1. Please see attached, page5, #8 of the application.
2. Please see attached, page 6, #10b of the application.
3. Per your request, please see Z. Prince's and F. Marquez's page 1, SIQs with full social security numbers.
4. Please note that the designated email was set up with legal@blockfi.com.

If you should have any questions or need any information expeditiously, please do not hesitate to contact me at 678-393-1925 by phone or at sbbatzar@rcgteam.com via email.

Thank you in advance for your attention to the enclosed.

Regards,

Stacey B. Batzar

219 Roswell Street, Suite 200, Alpharetta, GA 30009

Phone: 678-393-1925/Fax: 678-393-1908

1

022

If yes, provide copies of all pertinent court documents relating to the action and complete the following:

Type of Action:    ☐ Administrative    ☐ Criminal    ☐ Civil

Name of Regulator, Agency or Plaintiff: _____

Nature of Charges: _____

Type of Resolution: _____

Date of Resolution or Settlement: _____

8.    Does the applicant conduct or intend to conduct any other business at the applicant's proposed licensed place of business (Item Number 3 above)?                    ☐ Yes  ☑ No

If yes, describe any business being conducted or planned to be conducted on the applicant's premises. If the Commissioner of Business Oversight's authorization is not required because the products or services are of a supervised financial institution affiliated with the applicant, so indicate.

BlockFi Inc., as the parent company of BlockFi Lending LLC, employs the full time employees that work on BlockFi Inc. and BlockFi Lending LLC and holds material contracts that relate to the non-lending side of the business, such as office leases, marketing contracts and contracts with other vendors.

9.    Provide the name, address, and telephone number of the bonding agent to whom the Department can direct questions regarding the surety bond required in Exhibit B below.

| The Bond Exchange | | 501-224-8895 | |
|---|---|---|---|
| (Name of Bonding Agent) | | (Telephone Number) | |
| PO Box 55570 | Little Rock | AR | 72215 |
| (Number and Street) | (City) | (State) | (Zip) |

10.    Complete the following as it applies to your proposed operations:

a.    In the table below, mark the type of collateral and enter the corresponding minimum loan amount for commercial and consumer loans applicable to your proposed method of operation.

| COMMERCIAL LOANS | | CONSUMER LOANS | |
|---|---|---|---|
| Collateral Type (check ☑ all that apply) | Minimum Loan Amount | Collateral Type (check ☑ all that apply) | Minimum Loan Amount |
| ☐ Real Property | $ | ☐ Real Property | $ |
| ☑ Personal Property | $ 10,000 | ☑ Personal Property | $ 10,000 |
| ☐ Unsecured | $ | ☐ Unsecured | $ |

*Note: The minimum loan amount for a commercial purpose loan is $5,000.00. A commercial purpose loan less than $5,000 is treated statutorily as a consumer purpose loan. A consumer purpose loan collateralized by real property must be $5,000.00 or more.*

023

b.   Provide a short description of the applicant's business plan that includes any information necessary for the Commissioner of Business Oversight to have an understanding of the type of business that the applicant plans to conduct under this license.

BlockFi Lending LLC plans to make one-year, fixed interest rate, consumer and commercial loans.  In accordance with California Financial Code Section 2209, BlockFi

will take, in the name of the lender, in part, as security for the loan, possession of each borrowers' assets.

The assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

11.   Has the applicant's offer and sale of securities been qualified in California?

☐ Yes    ☑ No

If no, check as applicable:
☐ Applicant is exempt from qualification, and has filed any applicable notice of exemption with the Department.
☑ Applicant has never offered or sold its securities in California or to a California resident.

## REQUIRED EXHIBITS:

**EXHIBIT A.**  Provide a balance sheet of the applicant prepared in accordance with generally accepted accounting principles and dated no more than 90 days prior to the date this application is filed.  Label the balance sheet as Exhibit A.

**EXHIBIT B.**  Provide the original surety bond, including riders and endorsements in the amount of $25,000. The instructions and bond form are enclosed.

**EXHIBIT C.**  Provide for each individual (natural person) named in Items 4, 5, and 6, a Statement of Identity and Questionnaire, along with fingerprint information and the cost of fingerprint processing.  The Statement of Identity and Questionnaire form is enclosed.

**EXHIBIT D.**  SOLE PROPRIETOR ONLY: Complete the enclosed form entitled "Statement of Citizenship, Alienage, and Immigration Status for Application of Department of Business Oversight License or Certificate."

**EXHIBIT E.**  Complete the enclosed form entitled "Customer Authorization for Disclosure of Financial Records."

**EXHIBIT F.**  Provide a copy of the current Fictitious Business Name Statement filed with the county clerk. Label the document as Exhibit F.

# ATTACHMENT "7"

# ATTACHMENT "7"

# ATTACHMENT "7"

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                               EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

Jan Lynn Owen
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

March 28, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE: CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.) A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.   Item #2 of the SIQ for Kavita Gupta did not indicate her employment with BlockFi Inc. Please revise and resubmit Item #2 of her SIQ so that BlockFi Inc. is indicated.

2.   Item #10b of the application did not describe any brokering activities that fall under the purview of the California Financing Law ("CFL").

     The collateral must remain with the borrower. Your response indicated that, "Blockfi will take, in the name of the lender, in part, as security for the loan, possession of each borrower's assets. The Assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

---

*1515 K Street, Suite 200*
*Sacramento, CA 95814-4052*
*(916) 445-2705*

*One Sansome Street, Suite 600*
*San Francisco, CA 94104-4428*
*(415) 972-8565*

*320 West 4th Street, Suite 750*
*Los Angeles, CA 90013-2344*
*(213) 576-7500*

*1350 Front Street, Room 2034*
*San Diego, CA 92101-2597*
*(619) 525-4233*

*45 Fremont Street, Suite 1700*
*San Francisco, CA 94105*
*(415) 263-8500*

*300 S. Spring Street, Suite 15512*
*Los Angeles, CA 90013*
*(213) 897-2085*

*7575 Metropolitan Drive, Suite 108*
*San Diego, CA 92108*
*(619) 682-7227*

*www.dbo.ca.gov • 1-866-275-2677*

026

This is not allowed under the CFL. The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets as collateral.

Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

3.      Exhibit A: The balance sheet submitted, dated January 31, 2018, indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.

The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.

Please respond accordingly.

4.      Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s) are/is. The organizational chart of the CFL application requires the submission of an organizational chart of the Applicant as follows:

   a.   This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

   b.   Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

   c.   Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

   d.   Please submit the limited partnership agreement for ConsenSys Fund I, L.P. The agreement submitted did not indicate a date and any signatures; it was a draft and not the original agreement.

Please submit an organization chart that clearly indicates the information requested above.

Please send your response to Daniel Balian at 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

Jan Lynn Owen
Commissioner
Department of Business Oversight

# ATTACHMENT "8"

# ATTACHMENT "8"

# ATTACHMENT "8"

028

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                        EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**

IN REPLY REFER TO:
FILE NO: 60DBO 81955

April 6, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

RE:   CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.)  A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.    Item #10b of the application did not describe any brokering activities that fall under the purview of the California Financing Law ("CFL").



The collateral must remain with the borrower. Your response indicated that, "Blockfi will take, in the name of the lender, in part, as security for the loan, possession of each borrower's assets. The Assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

This is not allowed under the CFL The Collateral must remain with the borrower. Moreover, the Applicant cannot hold the borrower's digital assets as collateral.

1515 K Street, Suite 200          One Sansome Street, Suite 600          320 West 4th Street, Suite 750          1350 Front Street, Room 2034
Sacramento, CA 95814-4052          San Francisco, CA 94104-4428          Los Angeles, CA 90013-2344          San Diego, CA 92101-3697
(916) 445-2705                    (415) 972-8565                      (213) 576-7500                    (619) 525-4233

45 Fremont Street, Suite 1700                          300 S. Spring Street, Suite 15513                          7575 Metropolitan Drive, Suite 108
San Francisco, CA 94105                          Los Angeles, CA 90013                          San Diego, CA 92108
(415) 263-8500                          (213) 897-2085                          (619) 682-7227

www.dbo.ca.gov • 1-866-275-2677

029

Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

2.  Exhibit A: The balance sheet submitted, dated January 31, 2018, indicated $500,000 due from affiliate. Please provide supporting documents for this receivable; such as a loan agreement or any other supporting document to substantiate the $500,000 indicated on the balance sheet.

The balance sheet also indicated Fixed Assets of $66,302. Please provide supporting documents to substantiate the Fixed Assets indicated on the balance sheet.

Please respond accordingly.

3.  Exhibit M: The organizational chart submitted was unclear as to who the ultimate owner(s) are/is. The organizational chart of the CFL application requires the submission of an organizational chart of the Applicant as follows:

a.  This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

b.  Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

c.  Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

d.  Please submit the limited partnership agreement for ConsenSys Fund I, L.P. The agreement submitted did not indicate a date and any signatures; it was a draft and not the original agreement.

Please submit an organization chart that clearly indicates the information requested above.

Please send your response to Daniel Balian at 320 W. 4th Street, Suite 750, Los Angeles, CA 90013.

Jan Lynn Owen
Commissioner
Department of Business Oversight

By _____
     Daniel Balian

# ATTACHMENT "9"

# ATTACHMENT "9"

# ATTACHMENT "9"

031

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                      EDMUND G. BROWN JR., Governor

## DEPARTMENT OF BUSINESS OVERSIGHT
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

**Jan Lynn Owen**
**Commissioner of Business Oversight**



IN REPLY REFER TO:
FILE NO: 60DBO 81955

April 10, 2018

Stacey B. Batzar
RE: BlockFi Lending LLC
219 Rosewell Street, Suite 200
Alpharetta, GA 30009

**RE:    CALIFORNIA FINANCING LAW LICENSE APPLICATION COMPLETE
RESPONSE DUE ON MAY 21, 2018**

Dear Ms. Batzar:

This letter is in reference to the application submitted for BlockFi Lending LLC for a license under the California Financing Law (CFL).

*\*Effective October 4, 2017, the name of the "California Finance Lenders Law" changed to the "California Financing Law." (Assem. Bill No. 1284 (2017-2018 Reg. Sess.) § 4.)   A reference to the California Financing Law means the California Finance Lenders Law before October 4, 2017 and the California Financing Law on and after that date. (Cal. Fin. Code, § 22000.)*

**Your complete response to the following deficiency items listed in this letter, as well as any additional deficiency items identified during the review process, is due on May 21, 2018. Failure to meet this deadline will result in your pending application being ABANDONED WITHOUT FURTHER NOTICE. Incomplete responses and missing items are not acceptable and will result in the application being abandoned.**

1.    Item #10b of the application did not describe any brokering activities that fall under the purview of the California Financing Law ("CFL"). The business plan provided indicates that the Applicant plans to make one-year consumer and commercial loans. I do not see a description in the business plan regarding any brokering activities. Your response indicated that you are confused and that the business plan has clearly indicated brokering activities. Please let me know where it indicates brokering activities. Also, a licensed CFL broker is only allowed to broker California commercial and/or consumer loans to CFL licensed lenders

In addition, under California Financial Code Section 22009, states that, "The business of making consumer loans or commercial loans may include lending money and taking, in the name of the lender, or any other name, in whole or in part, as security for a loan, any

---

*1515 K Street, Suite 200        One Sansome Street, Suite 600        320 West 4th Street, Suite 750        1350 Front Street, Room 2034
Sacramento, CA 95814-4052        San Francisco, CA 94104-4428        Los Angeles, CA 90013-2344        San Diego, CA 92101-3697
(916) 445-2705                    (415) 972-8565                    (213) 576-7500                    (619) 525-4233*

*45 Fremont Street, Suite 1700        300 S. Spring Street, Suite 15513        7575 Metropolitan Drive, Suite 108
San Francisco, CA 94105            Los Angeles, CA 90013                San Diego, CA 92108
(415) 263-8500                    (213) 897-2085                    (619) 682-7227*

www.dbo.ca.gov • 1-866-275-2677

032

contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender....". Under the California Financial Code, the Applicant is not allowed to hold possession of the borrower's collateral.

Your emailed dated April 10, 2018, indicated references to a different law, and not the California Financial Code. I do understand your confusion; however, we have obtained legal counsel and the laws under the California Commercial Code do not apply or trump the laws under the California Financial Code.

Therefore, the business plan and method of operation are not allowed under the CFL. The collateral must remain with the borrower. Applicant cannot hold the borrower's digital assets as collateral. Based on the business plan and explanation provided, the Applicant is conducting or will be conducting activities not authorized under the CFL.

Please address all the issues and respond accordingly.

2.    Please indicate whether any of the receivable noted on the balance sheet are from California borrowers.

3.    Please submit an organizational chart. You have not submitted an organizational chart depicting the ownership structure of the Applicant. A table was submitted; however, please submit an organization chart as follows:

   a.   This chart should depict the ownership structure of the Applicant with the percentages included until the ultimate owner of the Applicant is reached.

   b.   Please list the officers, directors, members, partners, managing members, general partners, trustees, etc., of each entity in the ownership chain from the Applicant to the ultimate owners. They are subject to the submission of their SIQs, fingerprints, and applicable fingerprint processing fees as required.

   c.   Any individuals who own or control, directly or indirectly, 10% or more outstanding interests of the listed entities in the ownership chain have to submit their SIQs, fingerprints, and applicable fingerprint processing fees as required by Exhibit C of the application.

   d.   Please submit the limited partnership agreement for ConsenSys Fund I, L.P. The agreement submitted did not indicate a date and any signatures; it was a draft and not the original agreement. The limited partnership agreement you have submitted does not appear to be the original limited partnership agreement. Please submit a copy of the limited partnership agreement that includes the signatures of the partners and limited partners and general partners, and all other signers.

Please submit an organization chart that clearly indicates the information requested above.

033

# ATTACHMENT "10"

# ATTACHMENT "10"

# ATTACHMENT "10"

034

**Balian, Daniel@DBO**

| | |
|---|---|
| **From:** | Flori Marquez <flori@blockfi.com> |
| **Sent:** | Wednesday, April 11, 2018 12:41 PM |
| **To:** | Balian, Daniel@DBO |
| **Cc:** | Washburn, Charles; Stacey Batzar; Zac Prince |
| **Subject:** | Re: BlockFi Lending LLC (File Number 60DBO-81955) |
| **Attachments:** | Organizational Chart.pdf; BlockFi Capitalization Table - For California.xlsx |

Dear Mr. Balian,

Thank you for continued attention and responsiveness to our application. We appreciate your mindfulness of our deadline for application expiration on May 21, 2018. The phone call we had yesterday was extremely useful in helping us understand your outstanding questions. Please find our answers below. I have included the details as discussed in our conversation.

1. **Question 1**

Brokering Loans

BlockFi Lending LLC will engage in the business of brokering loans under the purview of the California Financing Law ("CFL").

In the event that BlockFi Lending LLC cannot work with a consumer or commercial applicant for a loan, BlockFi Lending LLC will refer the denied consumer or commercial applicant to other CFL licensed lenders. At each customer's request, BlockFi Lending LLC will refer the customer by sending their contact information and loan application request details to other CFL licensed lenders.

Updated Business Plan

Because of regulations in California Financing Law, BlockFi Lending LLC has revised its business plan. Please find its updated business plan for operations in the state of California below:

BlockFi Lending LLC will make one-year, fixed rate, consumer and commercial loans. As part of our underwriting, we will prescribe value to commercial and consumer applicants' holdings of cryptocurrencies, which they possess.

2. **Question 2**

The receivables noted on the balance sheet submitted with our previous response are not from California borrowers. Each borrower is either from New York, New Jersey or Florida. BlockFi Lending LLC has not made any loans to California consumer or commercial borrowers.

3. **Question 3**

Please find the following documents attached:

1

a.  We have revised our organizational chart to depict the ownership structure of BlockFi Lending LLC with all percentages until the ultimate owner is reached. Please see the attached ownership chart "BlockFi Organizational Chart.pdf"

b.  The officers and directors for each entity in the ownership chain are below. The only people that are subject to the submission of SIQs based on these titles are Florencia Marquez, Zachary Lee Prince and Kavita Gupta. We confirm that SIQs, fingerprints and applicable fingerprint processing fees have been submitted for each of these individuals, as required.

<u>Officers of BlockFi Lending LLC</u>
Zachary Prince – President
Florencia Marquez – Vice President

<u>Board of Directors for BlockFi Inc.</u>
Zachary Prince
Kavita Gupta

<u>Officers of BlockFi Inc.</u>
Zachary Prince – CEO
Florencia Marquez – VP of Operations

There are no other directors, members, partners, managing members, general partners or trustees for either BlockFi Lending LLC or BlockFi Inc. All officers and directors are listed here.

c.  There are three individuals that control, directly or indirectly, 10% or more of the outstanding interests of the listed entities in the ownership chain: Florencia Marquez and Zachary Prince each own more than 10% of BlockFi Inc. Kavita Gupta does not own any percentage of BlockFi Lending LLC or BlockFi Inc. individually. Kavita Gupta, as an individual, serves as a member of BlockFi Inc.'s Board of Directors.

Each of these three individuals have submitted their SIQs, fingerprints and applicable fingerprint processing fees as required by Exhibit C of the application.

d.  As discussed over our phone call on April 10, 2018 and as illustrated in the attached "Organizational Chart.pdf" ConsenSys Fund 1, L.P. does not own 10% or more of BlockFi Inc. Furthermore, the entity is not involved in the day-to-day operations of BlockFi Lending LLC or BlockFi Inc. The entity also does not control directly or indirectly 10% or more of the outstanding interests of any of the listed entities. As such, it is not under purview of BlockFi Lending LLC's application to the CFL.

Please let me know if you have any further questions or comments. Thank you again for your time and attention.

Best,

Flori

2



**Flori Marquez**
Co-Founder & VP of Operations
646.779.9688

**blockfi.com**
86 Chambers Street, Suite 205, New York, NY 10007

On Tue, Apr 10, 2018 at 4:16 PM, Flori Marquez <flori@blockfi.com> wrote:
Hi Daniel,

Thank you for getting back to us so quickly. We appreciate your careful review.

Would it be helpful for us to schedule a call? I am available now and later this week.

Best,

Flori

**Flori Marquez**
Co-Founder & VP of Operations
646.779.9688

**blockfi.com**
86 Chambers Street, Suite 205, New York, NY 10007

On Tue, Apr 10, 2018 at 3:56 PM, Balian, Daniel@DBO <daniel.balian@dbo.ca.gov> wrote:

Hello,


Please see attached.



Thank you,

Daniel Balian

213-576-7687


**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Tuesday, April 10, 2018 11:41 AM
**To:** Balian, Daniel@DBO <daniel.balian@dbo.ca.gov>
**Cc:** Flori Marquez <flori@blockfi.com>; Zac Prince <zac@blockfi.com>

3

**Subject:** BlockFi Lending LLC (File Number 60DBO-81955)
**Importance:** High

Dear Mr. Balian,

BlockFi Lending LLC, file number 60DBO-81955 ("Applicant"), has asked this law firm to assist them in resolving the last remaining items with respect to their application for licenses under the California Financing Law ("CFL") set forth in your March 28 letter, in order that their application can be approved and CFL licenses can promptly issue. After you have reviewed this message, I would be happy to discuss with you and other Department representatives any of these items with respect to which the Department might still have questions, so all of the items can be quickly and finally resolved.

The responses below follow the numbering in your March 28 letter, a copy of which is attached for ease of reference.

1. I understand that the Applicant has sent to you by overnight courier an updated page of the SIQ for Ms. Gupta, so this item should be resolved. Please let me know if it is not.

2. The Applicant believes that its March 23 response addressed the matters discussed in Item 2 of your letter, and we hope the following additional response clarifies and resolves this item.

As discussed in the Applicant's March 23 response, the Applicant has revised and replaced in its entirety its business plan for Item 10(b) of the application to read as follows:

> Applicant plans to make one-year, fixed interest rate, consumer and commercial loans. The loans will be secured by security interests in crypto currencies owned by the borrower.

> In the event that Applicant determines that it will not make a loan, Applicant may refer the loan applicant or otherwise broker the loan under the authority of its CFL license to other CFL licensed lenders in the State of California.

We are confused by the statements in your March 28 letter that the foregoing business plan is outside of the purview or authority of the CFL. The business plan states that the Applicant will be engaged in the business of making consumer and commercial loans, which business is clearly within the definition of "finance lender" set forth in the first sentence of Section 22009 of the CFL. The business plan also states that, under the authority of a CFL license, the

4

038

Applicant will broker to other CFL lenders applications for loans that the Applicant chooses not to make. This activity likewise is clearly within the scope of the definition of "broker" in Section 22004 of the CFL. Please explain to us why these activities are not covered by the CFL, and also please let us know if your letter is therefore advising the Applicant that the Applicant can engage in the activities described in the revised business plan above in California without obtaining a CFL license.

We did note that your letter states that "the collateral must remain with the borrower" and a lender "is not allowed under the CFL" to take possession of collateral. Subject to the next paragraph, we are not aware of the basis in the CFL for these statements. Also and as we trust the Department is aware, the California Commercial Code provides that a creditor may perfect a security interest in several types of collateral, including "tangible negotiable documents, goods, instruments, money, or tangible chattel paper" as well as "certificated securities," by taking "possession" of the collateral. See Section 9313 of the California Commercial Code, attached. Indeed, in the case of a security interest in "money" a creditor can only perfect its security interest in collateral by taking possession. See Section 9312(a) and (b)(3) of the California Commercial Code, attached. We are sure that the Department does not mean to forbid finance lenders from perfecting security interests as authorized and, in the case of "money," required by California law. Also, a crypto currency of course functions much like "money" in terms of a secured creditor wishing to control it to protect the creditor from the collateral being spent by the borrower.

We do note that the second sentence of Section 22009 states that the business of making consumer and commercial loans "may" (emphasis added) include lending money and entering into a contract with the borrower pursuant to which the borrower agrees that it may forfeit rights in personal property, "the use and possession of which property is retained by other than the mortgagee or lender." Although this is only a guess, perhaps the statements in your letter are based on this clause. If so, we respectfully believe this is a misreading of that second sentence. As the Department is also aware, the CFL has its origins in the Personal Property Brokers' Act of 1909, which included language substantially similar to the second sentence to define a "personal property broker." That definition among other things prevented a personal property broker from making unsecured loans, or loans secured by real estate, which loans of course are permissible today for a finance lender. See in this regard Robert E Stone, *Small Loans in California*, 29 California Law Review 332–365 at 342-343 (1941). Accordingly, the second sentence apparently has been retained over the years by the Legislature as a vestige of the 1909 law, but based on the separate first sentence and the use of the word "may" in the second sentence, a "finance lender" under the CFL is simply "any person who is engaged in the business of making consumer loans or making commercial loans," period, and a finance lender is not prohibited from entering into a security agreement pursuant to which the borrower agrees that the lender may possess the collateral in order to protect the lender and in some cases (not including crypto currency) perfect the security interest.

We would also like to point out that we understand from the Department's web site that the Department recently issued a CFL license to Unchained Capital, Inc., license number 60DBO-78867 ("Unchained"). Unchained is also engaged in the business of lending on the security of crypto currency, and likewise through a different method takes control of the crypto currency securing their loans. See this page on the Unchained web site, stating that collateral is sent from the borrower's crypto currency wallet "to your new loan's vault address," and upon repayment of the loan "we [(i.e., Unchained)] will return your collateral to an address of your choosing": https://www.unchained-capital.com/how_it_works/ Accordingly, if Unchained's practices with respect to control of crypto currency collateral are acceptable to the Department, the Applicant's practices should be equally acceptable.

5

3. Attached please find a balance sheet as of March 2018 provided by the Applicant that shows a net worth well in excess of $25,000. Assets supporting that net worth include cash of over $388,000, and I have enclosed a screenshot of the Applicant's bank balance provided by the Applicant confirming an amount of over $389,000 as of April 5. Additional supporting documents include a breakdown of the loans payable assets. We trust these materials confirm for the Department that the Applicant has a net worth far in excess of regulatory requirements.

4. The last item in your letter reiterates requests for information that were in your March 8 letter regarding ownership of the Applicant. We similarly are confused by this item, as the response sent by the Applicant on March 23 addressed each of the matters in this item. Specifically:

    a. The capitalization tables included in the Applicant's March 23 letter show that the Applicant's 100% owner is BlockFi Inc. ("Parent"), and then discloses the owners of Parent. In the interests of supervisory cooperation, I have attached an expanded cap table for Parent provided by the Applicant that shows the percentage ownership interest in Parent of every individual and entity. I note that Applicant has redacted the names of employees and private individual investors and advisors with interests of less than 10% to protect their privacy. Many of these interests are less than 1%, and none are over 8%.

    b. The March 23 response included the Applicant's statement regarding all officers, directors and managing members of each entity in the ownership chain that owns or controls, directly or indirectly, 10% or more of the Applicant. In this regard, and pursuant to Section 22105 of the CFL, the list requirement should only apply to entities having such a 10% or more interest in an applicant, and not entities above the applicant in the chain with smaller interests.

    c. As stated in the March 23 response, the Applicant listed all qualifying individuals, and SIQs and fingerprints were previously submitted by the Applicant for these individuals.

    d. The limited partnership agreement for ConsenSys Fund I, L.P. was submitted with the Applicant's March 23 response.

We trust that the foregoing resolves all outstanding items, but again I would be happy to discuss any remaining questions with you and other Department representatives at your earliest convenience.

Respectfully submitted,

Chuck

6

040

Charles Washburn

Partner

_____

Manatt, Phelps & Phillips, LLP

11355 W. Olympic Blvd

Los Angeles, CA  90064

D (310) 312-4372   F (310) 914-5761

cwashburn@manatt.com

manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

7

# ATTACHMENT "11"

# ATTACHMENT "11"

# ATTACHMENT "11"

# manatt

Charles E. Washburn, Jr.
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4372
E-mail: cwashburn@manatt.com

CONFIDENTIAL TREATMENT REQUESTED

May 14, 2018                                            Client-Matter: 63758-030

VIA OVERNIGHT COURIER

Jan Lynn Owen
Commissioner of Business Oversight
in care of the Legal Division
Department of Business Oversight
1515 K Street, Suite 200
Sacramento, California 95814

     Re:   Request for Interpretive Opinion

Dear Commissioner Owen:

### Request for Opinion and Legal Question Presented

    This letter is a request for an interpretive opinion with respect to the specific legal question of whether a "finance lender" under the California Financing Law (the "CFL")[1] that takes a security interest in collateral to secure a loan made by the finance lender may possess such collateral. As discussed in more detail below, we believe a finance lender may do so, including in order to perfect a security interest in certain categories of collateral in accordance with the California Commercial Code or otherwise to protect the finance lender.[2]

### Principal Party and Relevant Facts and Circumstances

    The principal party interested in this matter is our client, BlockFi Lending LLC ("BlockFi"). BlockFi has submitted an application to the Department to obtain a license as a "finance lender" under the CFL. (The file number of its application is 60DBO 81955.) As discussed in the business plan included in its application, BlockFi makes loans denominated in U.S. dollars. The loans are secured by crypto currency assets of the borrower. We understand that the crypto currency securing a loan made by BlockFi is held in its name with a third party

---

[1]    As you know, the CFL is codified at Section 22000 et seq. of the California Financial Code.

[2]    We note that much of the substance of this letter was included in prior e-mail communications to certain Department representatives, but these representatives advised us that a request for an interpretive opinion must be submitted in order to obtain a response to this question.

11355 West Olympic Boulevard, Los Angeles, California 90064-1614  Telephone: 310.312.4000  Fax: 310.312.4224
Albany | Chicago | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.

# manatt

Jan Lynn Owen
May 14, 2018
Page 2

depository. Crypto currency of course can be spent or transferred like money, and therefore the depository arrangement protects BlockFi as a secured creditor by preventing the borrower from spending or transferring the crypto currency collateral until the loan is repaid.

BlockFi currently extends loans in other states, including holding collateral with the depository. BlockFi desires to make such loans to California residents, and so it has applied for a finance lender license under the CFL.

In a letter from Daniel Balian of the Department to Stacey Batzar dated April 10, 2018, a copy of which is enclosed, Mr. Balian quoted a portion of wording included in the definition of "finance lender" in Section 22009 of the California Financial Code discussed below and then stated that, "[u]nder the California Financial Code, the Applicant is not allowed to hold possession of the borrower's collateral." Other communications from Department representatives to BlockFi have similarly stated that a finance lender may "never hold the assets of the California borrowers it makes loans to under the CFL license," "assets/collateral [may] not be held by BlockFi or any other third party," "the collateral ha[s] to remain with the borrower" and "the CFL license does not permit you to take possession of the collateral."

It is important to note that this Department position prevents any lender that needs to obtain a license under the CFL in order to lend in California, and that because of the nature of the collateral either must or desires to hold the collateral, from doing business in California.

<u>Legal Analysis and Reasoned Conclusion</u>

Based on Mr. Balian's letter and other communications with the Department, we understand that the Department's position that a finance lender may not take possession of collateral is based on certain wording in the definition of "finance lender" in Section 22009. Section 22009 reads as follows for ease of reference, with certain key words and punctuation highlighted:

"Finance lender" includes any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans <u>may</u> include lending money <u>and</u> taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to personal property, <u>the use and possession of which property is retained by other than the mortgagee or lender</u>, or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission. (Emphasis added.)

044

# manatt

Jan Lynn Owen
May 14, 2018
Page 3

It is the intent of the Legislature that the definition of finance lender shall be interpreted to <u>include</u> a personal property broker as referenced in Section 1 of Article XV of the California Constitution.

We understand that the statements from Mr. Balian and other Department representatives quoted above are based solely on the phrase "the use and possession of which property is retained by other than the mortgagee or lender" included in the second sentence of Section 22009. We respectfully believe this is a misinterpretation of Section 22009.

Specifically, the first sentence of the definition simply defines a finance lender as "<u>any</u> person who is engaged in the business of making consumer loans or making commercial loans." (Emphasis added.) That is a standalone definition of a finance lender, without any limits as to how collateral is held or if collateral is even required in order to be a finance lender.

The second sentence that follows and that includes the phrase at issue begins by saying that "[t]he business of making consumer loans or commercial loans <u>may</u> include" certain activities described in that sentence (emphasis added). The second sentence therefore is not an exclusive definition of what is the business of making consumer or commercial loans, and so that business could include taking possession of collateral, pursuant to the broad definition in the first sentence.

Also, that second sentence continues by providing that such activities may include lending money "<u>and</u>" taking collateral for the loan. Based on that conjunction and applying the Department's reasoning to the entire sentence, it would follow that a finance lender must take security for a loan, and finance lenders may not make unsecured loans. That of course is not the case, as Item 10.a. in the application for a license under the CFL set forth in Section 1422 of the Commissioner's regulations includes "unsecured" lending as an option for finance lenders.

In this regard, and as discussed in a message sent to Mr. Balian on April 10, the CFL as the Department is aware has its origins in the Personal Property Brokers' Act of 1909, which included language substantially similar to the second sentence in Section 22009 to define a "personal property broker." That definition among other things prevented a personal property broker from making unsecured loans, or loans secured by real estate, which loans of course are permissible today for a "finance lender" under the CFL. See in this regard Robert E Stone, *Small Loans in California*, 29 California Law Review 332–365 at 342-343 (1941), a copy of which excerpt is also enclosed. Accordingly, it appears that the second sentence, including that phrase, has been retained over the years by the California Legislature only as a vestige of the 1909 law, and based on the separate first sentence and the use of the word "may" in the second sentence, a "finance lender" under the CFL is simply "any person who is engaged in the business of making consumer loans or making commercial loans," period, and a finance lender is not prohibited from

# manatt

Jan Lynn Owen
May 14, 2018
Page 4

entering into a security agreement pursuant to which the borrower agrees that the lender may possess the collateral in order to protect the lender and in some cases perfect the security interest. See in this regard the second paragraph of Section 22009, which states that it was the Legislature's intent that the term finance lender "include" (i.e., not be limited only to) a "personal property broker."

It also is important to bear in mind that possession of collateral is expressly authorized by the California Commercial Code, and in fact is the only way that a creditor may perfect a security interest in certain collateral. Specifically, Section 9313(a) of the California Commercial Code provides that a creditor may perfect a security interest in several types of collateral, including "tangible negotiable documents, goods, instruments, money, or tangible chattel paper" by taking "<u>possession</u>" of the collateral (emphasis added). In fact, in the case of a security interest in "money" a creditor can only perfect its security interest in collateral by taking possession. See Section 9312(a) and (b)(3) of the California Commercial Code. Although not "money" as defined in Section 1201(b)(24) of the California Commercial Code, a crypto currency of course functions much like money in terms of a secured creditor wishing to control it to protect the creditor from the collateral being spent or transferred by the borrower. In any event, the Department's position would appear to prevent lenders from doing business in California in accordance with permitted ways of perfecting security interests under the Commercial Code, and indeed we suspect that a significant number of lenders licensed under CFL lend on the security of collateral such as money, securities and negotiable instruments and are in fact taking possession of collateral today.

We also point out that the pawnbroker license is not an alternative to a lender making loans on the security of crypto currency assets, because Section 21000 of the California Financial Code defines a "pawnbroker" as a person receiving "goods," which term would not include intangible property like crypto currency.

<u>Requests for Confidential and Expedited Treatments</u>

This letter discusses BlockFi's operations and is being submitted in the context of the Department's review of BlockFi's application for a license under the CFL, including disclosing a deficiency item raised by the Department during that review, and as indicated by the legend above we are requesting confidential treatment of this request for an interpretive opinion. A separate request for confidential treatment is enclosed. If the Department declines to provide confidential treatment of this letter, please contact the undersigned promptly.

# manatt

Jan Lynn Owen
May 14, 2018
Page 5

We understand that resolution of this issue is the only obstacle to approval of the application for a CFL license submitted by BlockFi.[3] We also understand based on press reports and the Department's web site that a competitor of BlockFi that is holding crypto currency collateral has been granted a CFL license and is currently operating in California. Accordingly, this Department's position, which for the reasons discussed above we believe is incorrect, is causing significant, daily harm to BlockFi. We therefore respectfully request expedited review of this request for an interpretive opinion.

We also request that, if the Department reaches a preliminary conclusion in its review of this request that a finance lender may not hold collateral, the Department contact the undersigned and at our option we be permitted to withdraw this request for the interpretive opinion.

Thank you in advance for your consideration. We would be happy to discuss with you any of the matters set forth in this letter, or provide additional information regarding BlockFi and its operations.

Respectfully submitted,

Charles E. Washburn, Jr.
Manatt, Phelps & Phillips, LLP

CEW
Enclosures

204499933.2

---

[3]    We note that the Department has established a deadline of May 21, 2018, for resolution of all outstanding issues with respect to BlockFi's application, but we also understand that the Department will not deny the application while this request for a legal opinion is pending, and we assume that a reasonable opportunity to respond to any such opinion will be provided to BlockFi by the Department.

# ATTACHMENT "12"

# ATTACHMENT "12"

# ATTACHMENT "12"

STATE OF CALIFORNIA – BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY                                    EDMUND G. BROWN JR., Governor

**DEPARTMENT OF BUSINESS OVERSIGHT**
*Ensuring a Fair and Secure Financial Services Marketplace for all Californians*

Jan Lynn Owen
Commissioner of Business Oversight



IN REPLY REFER TO:
FILE NO: OP 7612

June 7, 2018

Charles E. Washburn, Jr.
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064

Re:      Request for Confidential Treatment

Dear Mr. Washburn:

The Department of Business Oversight ("Department") has received the letter you submitted on behalf of BlockFi Lending, LLC ("BlockFi") dated May 14, 2018, requesting confidential treatment of your request for an interpretive opinion under the California Financing Law, formerly the California Finance Lenders Law.

Your letter states that information supplied to the Department as part of the interpretive opinion request, such as its business plan and the status of its license, are confidential. You assert that disclosure of information provided by BlockFi to the Department would be damaging and prejudicial to the interests of BlockFi. You also note that confidentiality is necessary to protect information related to BlockFi's pending application for a CFL license. You request confidential treatment of the request for an interpretive opinion on a "continuing basis."

Section 250.10, subsection (a), of title 10, California Code of Regulations provides that the Commissioner of Business Oversight will withhold from public inspection for such time as in the Commissioner's judgment is necessary information received concerning requests for interpretive opinions.  Based on the information provided in your correspondence and the authority provided in Section 250.10, subsection (a)(1) and (2), the Commissioner hereby grants your request for confidential treatment. The Department will withhold the request for interpretive opinion dated May 14, 2018 from public inspection for <u>two years</u> from the date of this letter.

If you have any questions, please contact the undersigned at (415) 263-8503.

# ATTACHMENT "13"

# ATTACHMENT "13"

# ATTACHMENT "13"



**From:** LeKander, Miranda@DBO Miranda.LeKander@dbo.ca.gov
**Subject:** PRA 3157
**Date:** June 12, 2020 at 2:09 PM
**To:** John Gerro john@gerrolaw.com

Mr. Gerro,

By letter dated June 1, 2020, you requested a copy of any interpretive opinion that the DBO issued per the letter from the DBO to Charles Washburn, Esq. dated June 7, 2018. You also requested BlockFi's application made on 5/14/18 and "any other communications which were previously withheld."

In response to your request for the interpretive opinion, I write to inform that no opinion was issued in response to the request from BlockFi referenced in the DBO's 6/7/18 letter. That letter grants BlockFi's request for confidential treatment of its opinion request. However, no opinion was ever issued by the DBO due to the opinion request being withdrawn by BlockFi.

You also requested a copy of the application made on 5/14/18. This record was previously provided to you by Albert Mercado via email on 5/20/20.

In response to your request for "any other communications which were previously withheld," I again reviewed the DBO licensing file to ascertain the existence of any public records responsive to your request that were not previously provided. I did, in fact, locate a Limited Partnership Agreement that was submitted in connection with BlockFi's application but erroneously designated as confidential and, thus, not previously provided. As no PRA exemption applies to this document, it is being provided to you at this time.

This completes the DBO's response to PRA 3157. Should you have any questions, please feel free to contact the undersigned.

Sincerely,

Miranda LeKander
Deputy Commissioner
Department of Business Oversight
Legal Division
916-322-6567
CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.



60DBO 81955
BLOCK...NT.pdf

# ATTACHMENT "14"

# ATTACHMENT "14"

# ATTACHMENT "14"

THIS LICENSE MUST BE CONSPICUOUSLY POSTED AT LOCATION HEREIN PROVIDED.

## Department of Business Oversight

### State of California

# License

### FINANCE LENDER AND BROKER

File No: 60DBO 81955

BLOCKFI LENDING LLC

PURSUANT TO, AND IN COMPLIANCE WITH, THE CALIFORNIA FINANCING LAW:

I, THE UNDERSIGNED, AS COMMISSIONER OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, DO HEREBY ISSUE THIS LICENSE TO THE ABOVE NAMED LIMITED LIABILITY COMPANY.

ORGANIZED JANUARY 11, 2018, IN THE STATE OF DELAWARE TO ENGAGE IN THE BUSINESS OF "FINANCE LENDER" AND "BROKER" AS DEFINED IN SAID LAW, AT THE FOLLOWING LOCATION:

86 CHAMBERS STREET, SUITE 205
NEW YORK, NEW YORK 10007

TO CONTINUE IN EFFECT UNTIL SURRENDERED, SUSPENDED, OR REVOKED AS PROVIDED BY LAW.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL ON THE DATE APPEARING BELOW.

Date:  August 16, 2018

JAN LYNN OWEN
Commissioner of Business Oversight

By _____

CHARLES AGBONKPOLOR
Special Administrator
California Financing Law

THIS LICENSE IS NOT TRANSFERABLE OR ASSIGNABLE

053

# *California* LEGISLATIVE INFORMATION

Code: [FIN]   Section: 22750   Search  ⓘ

Up^   << Previous   Next >>   cross-reference chaptered bills   PDF |  Add To My Favorites

Search Phrase: _____  Highlight

**FINANCIAL CODE - FIN**

　**DIVISION 9. CALIFORNIA FINANCING LAW [22000 - 22780.1]**  *( Heading of Division 9 amended by Stats. 2017, Ch. 475, Sec. 3. )*

　　**CHAPTER 1. General Provisions [22000 - 22172]**  *( Chapter 1 added by Stats. 1994, Ch. 1115, Sec. 2. )*

　**ARTICLE 1. Definitions [22000 - 22020]**  *( Article 1 added by Stats. 1994, Ch. 1115, Sec. 2. )*

22009.  "Finance lender" includes any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans may include lending money and taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is retained by other than the mortgagee or lender, or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission.

It is the intent of the Legislature that the definition of finance lender shall be interpreted to include a personal property broker as referenced in Section 1 of Article XV of the California Constitution.

*(Repealed and added by Stats. 1994, Ch. 1115, Sec. 2. Effective January 1, 1995. Operative July 1, 1995, by Sec. 5 of Ch. 1115.)*

# ATTACHMENT "15"

# ATTACHMENT "15"

# ATTACHMENT "15"

Electronically FILED by Superior Court of California, County of Los Angeles on 06/10/2020 03:26 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Scott, Deputy Clerk

1    HAYNES AND BOONE, LLP
     David Clark/Bar No. 275204
2      david.clark@haynesboone.com
     600 Anton Boulevard, Suite 700
3    Costa Mesa, CA 92626
     Telephone:    (949) 202-3000
4    Facsimile:    (949) 202-3001

5    Attorneys for Defendant
     BLOCKFI LENDING, LLC
6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 COUNTY OF LOS ANGELES, BURBANK COURTHOUSE

10

11   GEORGE GERRO, an individual,        )  CASE NO.: 20BBCV00308
                                         )
12                Plaintiff,             )  ASSIGNED FOR ALL PURPOSES TO:
                                         )      Honorable William D. Stewart
13        vs.                            )      Department A
                                         )
14   BLOCKFI LENDING LLC, a Delaware     )
     limited liability company; SCRATCH  )  DECLARATION OF FLORI MARQUEZ
15   SERVICES, LLC, a Delaware limited   )  IN SUPPORT OF MOTION OF
     liability company; and DOES 1 through )  BLOCKFI TO STAY (OR IN THE
16   100,                                )  ALTERNATIVE TO DISMISS) ON
                                         )  GROUND OF *FORUM NON*
17                Defendants.            )  *CONVENIENS*
                                         )
18   ─────────────────────────────────  )
                                         )  Hearing Date:    July 7, 2020
19                                          Time:            8:30 a.m.
                                            Department:      A
20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────
        DECLARATION OF FLORI MARQUEZ IN SUPPORT OF MOTION OF BLOCKFI
            TO STAY ON GROUND OF *FORUM NON CONVENIENS*

## DECLARATION OF FLORI MARQUEZ

I, Flori Marquez, declare as follows:

1.      I am the Co-Founder and Senior Vice President of Operations at BlockFi Lending LLC and have been employed with BlockFi since its founding in August 2017.  I have personal knowledge of the matters set forth herein and, if called upon to testify, I could and would testify competently thereto.

2.      By virtue of my position with BlockFi, I am familiar with BlockFi's business model and business operations.  I am also familiar with BlockFi's dealings and communications with the plaintiff in this matter, George Gerro ("Plaintiff").

3.      BlockFi is a limited liability company organized and existing under the laws of the State of Delaware and headquartered in Jersey City, New Jersey.  BlockFi is a company that, like a typical lender making secured loans, lends currency to trusted institutional and corporate borrowers.  The primary distinction between BlockFi and many other lenders is that instead of working with traditional currencies such as U.S. dollars, BlockFi works with virtual currencies (bitcoin).  But putting that distinction aside, BlockFi's operations closely match those of typical lenders.  For example, a customer can borrow U.S. dollars after transferring digital currency that is used as collateral to secure a loan, with the customer thereafter required to maintain a loan to value ratio ("LTV") agreed to by the customer and BlockFi.

4.      Plaintiff was one of BlockFi's customers, and the terms governing Plaintiff's account are set forth in an agreement titled "Loan and Security Agreement" executed by Plaintiff and BlockFi dated February 11, 2020 (the "Loan Agreement").  I acted as BlockFi's signatory for the Loan Agreement.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."  The Loan Agreement followed two similar agreements that were later consolidated and refinanced into the Loan Agreement, dated September 5 and September 23, 2019, respectively.  I acted as BlockFi's signatory for those agreements as well.  True and correct copies of those earlier agreements are attached hereto as Exhibit "B."

5.      Pursuant to the Agreements, Plaintiff transferred virtual currency (bitcoin) to BlockFi as collateral for a loan (the "Collateral").  On March 9, 2020, after a decline in the value

1

---

DECLARATION OF FLORI MARQUEZ IN SUPPORT OF MOTION OF BLOCKFI<br/>TO STAY ON GROUND OF <em>FORUM NON CONVENIENS</em>

1   of bitcoin, BlockFi sent a written alert to Plaintiff advising that the price of the collateral for his

2   BlockFi Loan has dropped and providing him with the option to post additional collateral to

3   bring his loan's LTV down (the "LTV Alert"). BlockFi sent additional alerts in the following

4   days, including an alert that, in accordance with the terms of his Loan, BlockFi would be

5   immediately initiating a sale of collateral to bring the loan back down to required LTV ratios.

6   BlockFi's systems send out automated alerts to customers when certain triggering events

7   (including, for example, margin events and other LTV events) take place. I am familiar with

8   BlockFi's systems and the information provided in the alerts, and I personally reviewed

9   BlockFi's records and confirmed that alerts were sent on March 9, 2020 and the days following

10  to Plaintiff. After failing to hear back from Plaintiff in response to the alerts described, and

11  pursuant to the terms of the Loan Agreement, on March 12, 2020 BlockFi initiated liquidations

12  of Plaintiff's Collateral.

13      6.     Plaintiff failed to respond to the LTV Alert or take any action to address the

14  decrease in the value of his Collateral and deterioration of his LTV ratio. On March 13, 2020,

15  following the liquidations from March 12, 2020, Plaintiff finally contacted BlockFi via email.

16  Plaintiff emailed Jake Gargiulo, BlockFi's head of client services, as well as BlockFi distribution

17  lists on which I am included, and therefore I received the email directly. Rather than take issue

18  with the liquidations, Plaintiff thanked BlockFi for the update, asked that BlockFi disregard "any

19  previous request for a return of remaining collateral," and stated "I appreciate that I have an

20  opportunity to remain a client of Blockfi." A true and correct copy of the March 13, 2020 email

21  exchange is attached hereto as **Exhibit "C."**

22      7.     A few days later, Plaintiff contacted BlockFi by email (including myself directly

23  through BlockFi distribution lists) to request that a portion of his Collateral be sold in order to

24  repay his Loan in full. BlockFi complied with Plaintiff's request and applied the proceeds from

25  such sale against the remaining balance of his Loan. Following the repayment of his Loan in full

26  and per Plaintiff's request, BlockFi returned Plaintiff's remaining bitcoin Collateral to his

27  control.

28      8.     On March 19, 2020, Mr. Gargiulo contacted Plaintiff to discuss options available

2

DECLARATION OF FLORI MARQUEZ IN SUPPORT OF MOTION OF BLOCKFI
TO STAY ON GROUND OF *FORUM NON CONVENIENS*

1  to reinstate some of Plaintiff's loan. Mr. Gargiulo (responding to an email from Plaintiff)

2  thereafter provided additional information in an email dated March 24, 2020. However, Plaintiff

3  never responded to that email and failed to communicate with BlockFi or take any action for

4  more than a month. Meanwhile, over the course of that month, the bitcoin's value increased.

5  And on April 27, 2020 (after that increase, more than a month since BlockFi last received

6  correspondence from Plaintiff, and a month and a half since the Collateral liquidation) Plaintiff

7  emailed me and Mr. Gargiulo seeking to "reverse" the liquidation. Mr. Gargiulo responded in an

8  email to Plaintiff (ccing me) that BlockFi could not reverse the liquidation, particularly given

9  that it had been almost two months since the liquidation and that the value of bitcoin was much

10  higher than at the time when Plaintiff's Collateral was liquidated.

11

12      I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct and that this Declaration was executed this 8th day of June, 2020, at

14  Jersey City, New Jersey.

15

16                    FLORI MARQUEZ

17

18

19

20

21

22

23

24

25

26

27

28

3

DECLARATION OF FLORI MARQUEZ IN SUPPORT OF MOTION OF BLOCKFI
TO STAY ON GROUND OF *FORUM NON CONVENIENS*

# EXHIBIT "A"

060

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

## LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (this "**Agreement**") is made on ____2/11/2020_____, by and between
George Gerro
an individual, residing at _____,
530 S. Glenoaks Blvd., Suite 200
Burbank, CA 91502 - United States of America
("**Borrower**") and BlockFi Lending LLC, with its principal place of business located at **150 Broadway, 19ᵗʰ Floor,
New York, NY 10038** ("**Lender**").

1.     **The Loan.** Upon the terms and subject to the conditions set forth in this Agreement, Lender agrees
to make a single loan to Borrower in the principal;
_two million, two hundred and seventy five thousand dollars_____
dollars ($ 2275000.00_____ ) (the "**Loan**") on the date all of the terms and conditions to making such Loan have
been satisfied in Lender's sole discretion (the "**Closing Date**"). Upon disbursement of the Loan proceeds, Lender
shall collect an origination fee equal to ____0.00%___ % of the principal sum of the Loan (the "**Loan Origination
Fee**"), which is fully earned by Lender on the date it is collected.  Lender shall deduct the Loan Origination Fee from
the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. This is a closed-
end loan. Amounts repaid in respect of the Loan may not be reborrowed.  The indebtedness of Borrower to Lender
on account of the Loan ("**Indebtedness**") includes the Loan, the Loan Origination Fee, advances, debts, expense
reimbursement, fees, liabilities, and obligations (whether or not such amounts are then required or contingent, or are
liquidated or determinable) at any time owing by Borrower to Lender, of any kind or nature, present or future, whether
or not evidenced by any note, agreement or other instrument including, without limitation, all principal, interest
(including interest accruing at the then applicable rate provided herein after the Maturity Date (as defined below) and
interest accruing at the then applicable rate provided herein after the filing of any petition in bankruptcy, or the
commencement of any insolvency, reorganization or like proceeding, whether or not a claim for post-filing or post-
petition interest is allowed in such proceeding), fees, charges, expenses, attorneys' fees and any other sum chargeable
to Borrower under any of the Related Documents (as defined below) to the extent permitted by applicable law.
Capitalized terms not otherwise defined in this Agreement shall have the meanings provided by the Uniform
Commercial Code as in effect in the State of Delaware ("**UCC**") to the extent such terms are defined therein.

2.     **Related Documents.** This Agreement and such other agreements, certificates, instruments,
guaranties, authorizations or other documents executed to further, permit, effect or promote any purpose set forth in
this Agreement, as such may be amended, restated, supplemented or otherwise modified from time to time
(collectively with this Agreement, the "**Related Documents**"), including, without limitation, any UCC-1 financing
statements naming Borrower as debtor and Lender as the secured party (the "**UCC-1 Financing Statement**"), and
any other security agreement relating to the Collateral, memorialize the terms and conditions pursuant to which
Lender is willing to provide the Loan. Borrower understands and agrees that this Agreement and the other Related
Documents shall apply to the Loan and the Indebtedness, including, without limitation, the granting, renewing or
extending of the Loan as provided herein.

3.     **Repayment Terms.** Borrower agrees to repay the Loan in installments as set forth below, provided
that any principal balance and any unpaid accrued interest thereon shall be due and payable not later than
_2021-02-12___ (the "**Maturity Date**"). All payments of principal and interest and other sums due hereunder shall
be made in immediately available funds to the Lender at such account or place as the Lender may specify for such
purpose by written notice to Borrower from time to time. Borrower agrees that Lender's internal records shall, absent
manifest error, serve for all purposes as conclusive evidence of the outstanding principal balance of loans, as well as
the amount of interest, fees and charges that may be owed to Lender at any time.  Lender may apply Borrower's
payments in any manner permitted by applicable law, but generally shall apply payments first to interest then due,
then to any outstanding fees, charges or other expenses, and then to principal.

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

**BlockFi Loan No.** <u>41725c18</u>

(a)    **Interest.** The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be <u>9.75%</u> %. All interest accrued hereunder shall be calculated on a simple interest basis. Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable with such interest upon demand by Lender and absent such demand, as otherwise provided herein.[1]

(b)    **Interest Only Payments.** Until the Maturity Date, Borrower agrees to make payments of interest accrued on the outstanding principal balance of the Loan. The first payment will be due one month after the date of this agreement and every month thereafter (for example, if the agreement is signed on January 5th, the first payment will be due on February 5th, and subsequent payments will be due on the 5th of each month). Borrower's first payment may be higher depending on the actual funding date of the loan, and the amount of interest payable may vary in certain instances such as a payment due date change.[2]

(c)    **Final Maturity Date Payment.** Borrower agrees to pay the entire principal amount (which is inclusive of the Loan Origination Fee) and all accrued and unpaid interest at the rate expressed herein on the Maturity Date, unless earlier accelerated pursuant to the terms and conditions of this Agreement, or the other Related Documents.

(d)    **Prepayments.** Borrower may prepay the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.[3]

(e)    **Late Payments.** To the extent permitted under applicable law, Borrower agrees that if any payment pursuant to <u>Section 3(b)</u> or <u>Section 3(c)</u> is not made within ten (10) days of the due date, (i) Borrower will be charged a late charge of fifteen dollars ($15.00) or five percent 5.00% of the amount of the past due payment, whichever is greater; and (ii) Lender may liquidate a portion of the Collateral in an amount equal to any late payment and corresponding late charge.

4.    **Conditions to Lender's Obligations.** Lender's obligation to advance funds under this Agreement shall be subject to the satisfaction of all of the conditions set forth in this Agreement and the Related Documents, including, without limitation, the following specific conditions precedent:

(a)    **Related Documents.** Borrower shall electronically execute all Related Documents, in form and substance acceptable to Lender.

(b)    **Representations and Warranties.** The representations and warranties set forth in this Agreement and the other Related Documents are true and correct in all material respects; provided, however, that those representations and warranties expressly referring to another specific date shall be true and correct in all material respects as of such date.

(c)    **No Event of Default.** There shall not exist at the time of the advance, and after giving effect thereto, a condition which would constitute an Event of Default under this Agreement.

---

[1] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your interest rate definition.

[2] Unless you are a resident of the state of Illinois, in which case, payments will be fully-amortizing. Please see, "Appendix B: Loan Disclosures," at the end of this agreement for more details. If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please disregard this section.

[3] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your Prepayments definition.

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

**BlockFi Loan No.** 41725c18

**Collateral.** Borrower shall have transferred the Collateral into Lender's digital asset depository account at Gemini Trust    Company,    LLC    ("**Gemini**"    or    the    "**Depository**"),    deposit    address ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ (such account or any other account at the Depository to which Lender may transfer the Collateral, the "**Depository Account**"). If Borrower has a cryptocurrency account with Lender, Borrower authorizes Lender to initiate a transfer of collateral to the above deposit address. Lender may change the location of the Depository Account without notice to Borrower. Borrower agrees that Lender may, for its own account, pledge and repledge from time to time, without notice to the Borrower, either separately or in common with other such cryptocurrency, any or all of the Collateral and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral. The parties agree that the holding of cryptocurrencies through the Depository constitutes the use of reasonable care with respect to the custody and preservation of the Collateral.

        (d)     **Priority.** Lender shall have actual possession of, and a first priority security interest in, the Collateral.

Notwithstanding the above, Borrower's failure to meet any of the conditions set forth in this <u>Section 4</u> shall not provide any basis for Borrower to contest the enforceability of the Loan.

     5.     **Grant of Security Interest in Collateral**. For valuable consideration, the adequacy and receipt of which is hereby acknowledged, Borrower hereby:

        (a)     pledges, assigns, transfers and delivers to Lender, and grants to Lender a continuing and unconditional first priority security interest in all of Borrower's present and future rights, title and interest in the following (collectively referred to as the "**Collateral**") as security for the payment and performance of the Indebtedness:

        (i)     the Depository Account;

        (ii)     all cryptocurrency now or in the future held in, on deposit in or otherwise allocated to the Depository Account (including, without limitation, any cryptocurrency transferred to the Depository Account after the date hereof by the Borrower pursuant to <u>Section 7</u> or otherwise);

        (iii)     any other cryptocurrency now or in the future issued with respect to any of the foregoing cryptocurrency as a result of a fork or other event that results in the holders of cryptocurrency receiving additional or replacement cryptocurrency (whether or not such other cryptocurrency is held in, on deposit in or otherwise allocated to the Depository Account);

        (iv)     ~~441,750        BTC~~ ; 441.85 BTC

        (v)     all rights to receive delivery of or withdraw any of the foregoing cryptocurrency from the Depository and all rights against the Depository with respect to the Depository Account, any of the foregoing cryptocurrency, and the proceeds thereof; and

        (vi)     all proceeds of the foregoing.

        (b)     agrees that such security interest granted by Borrower to Lender constitutes a valid, first priority security interest in the Collateral, and will constitute a valid, first priority security interest in later-acquired Collateral. Notwithstanding any termination of this Agreement, Lender's security interest in the Collateral shall remain in effect for so long as any Indebtedness remains outstanding under this Agreement or any of the Related Documents.

        (c)     agrees that Lender has the rights stated in this Agreement with respect to the Collateral, in

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

addition to all other rights which Lender may have by law.

(d)    authorizes Lender at any time and from time to time, at Borrower's expense, to file in any jurisdiction any financing statements and amendments that: (i) name the Collateral as collateral thereunder, regardless of whether any particular Collateral falls within the scope of the UCC; (ii) contain any other information required by the UCC for sufficiency or filing office acceptance, including organization identification numbers; and (iii) contain such language as Lender determines helpful in protecting or preserving rights against third parties. Borrower ratifies any such filings made prior to the date hereof.

(e)    acknowledges and agrees that the obligations of Borrower under this Agreement shall be full recourse obligations of Borrower and that Borrower is and shall remain personally liable to Lender for the payment in full of all Indebtedness and performance of all obligations hereunder.

6.    **Borrower's Representations, Warranties and Covenants**. To induce Lender to enter into this Agreement and to make the Loan, Borrower hereby makes the following representations, warranties and covenants to Lender:

(a)    With respect to the Collateral, Borrower will, at all times, maintain a loan to value ratio where the outstanding principal balance of the Loan is less than or equal to seventy percent (70.0%) of the market value of the Collateral in the Depository Account calculated as either (i) the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (ii) the market value determined by Lender in its reasonable discretion (the "**Required Loan to Value Ratio**").

(b)    Except for the security interest in the Collateral granted by Borrower to Lender under this Agreement, Borrower is the sole, legal and equitable owner of the Collateral and no other security agreement, financing statement, or other security instrument covering the Collateral exists.

(c)    Borrower has rights in or the power to transfer the Collateral, and its title to the Collateral is free and clear of liens, adverse claims, and restrictions on transfer or pledge, other than those created by this Agreement or the Related Documents.

(d)    There are no actions, suits, litigation or proceedings, at law or in equity, pending by or against Borrower before any court, administrative agency, or arbitrator.

(e)    Borrower is, and at all times prior to the Maturity Date will be, in compliance with all applicable federal and state laws, regulations and ordinances.

(f)    Borrower will not sell, dispose or otherwise transfer the Collateral or any interest in the Collateral without the prior written consent from Lender.

(g)    Borrower will not create or allow any other security interest or lien on the Collateral, other than those created by this Agreement or the Related Documents.

(h)    Upon Lender's request, Borrower will execute any financing statement or other document necessary to perfect or otherwise record Lender's security interest in the Collateral.

(i)    Borrower will notify Lender in writing prior to making any change in Borrower's: (i) residence, if such Borrower is an individual or sole proprietorship, (ii) principal place of business, if such Borrower is a business entity that is created without any state filings, or (iii) state of organization, if such Borrower is a business entity that is created by state filings.

(j)    Borrower will promptly pay all taxes and assessments due on the Collateral.

204543107.1                                     4

064

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

**BlockFi Loan No. 41725c18**

(k)     Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock, and no proceeds of the Loan will be used to extend credit to others for the purpose of purchasing or carrying any margin stock.

(l)     Borrower is not, and is not required to be, registered as an "investment company" under the Investment Company Act of 1940, as amended. Borrower is not subject to regulation under any law that limits the ability to incur debt or which may otherwise render all or any portion of the obligations hereunder unenforceable.

(m)     Neither Borrower nor any of its affiliates or officers, directors, brokers or agents of Borrower or its affiliates (i) has violated any anti-terrorism laws, (ii) has engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering, (iii) is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC") or resides, is organized or chartered, or has a place of business in a country or territory subject to OFAC sanctions or embargo programs, (iv) is publicly identified as prohibited from doing business with the United States under the International Emergency Economic Powers Act, the Trading With the Enemy Act, or any other law, (v) conducts any business or engages in making or receiving any contribution of goods, services or money to or for the benefit of any person described in clauses (iii) or (iv) above, (vi) deals in, or otherwise engages in any transaction related to, any property or interests in property blocked pursuant to any anti-terrorism law or (vii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any anti-terrorism law.

(n)     Borrower will use the proceeds of the Loan solely for lawful purposes and all representations and warranties set forth in Borrower's credit application are true, correct and complete as of the date of such credit application and the date of this Agreement.

Each representation, warranty and covenant shall be made by Borrower as of the date of this Agreement and as of the date of any renewal, extension or modification of the Loan.

7.     **Valuation; Additional Collateral.** At any time, the market value of the Collateral in the Depository Account shall be either (a) the product of amount of Collateral times the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (b) the market value determined by Lender in its reasonable discretion (the "**Collateral Market Value**"). Borrower agrees that for purposes of calculating the Collateral Market Value Lender may take into account or disregard, at its sole discretion, the value of any new cryptocurrency held in the Depository Account created as the result of a forking or similar event that occurs after the date of this Agreement.

(a)     Upon notice by Lender to Borrower of the occurrence of a Trigger Event (hereinafter defined), Borrower shall promptly, and in no case later than seventy-two (72) hours after notice is provided, deposit additional Collateral into the Depository Account in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than fifty percent (50.0%) of the Collateral Market Value, provided that if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty percent (80.0%) of the Collateral Market Value (the "**Accelerated Maximum Loan to Value Ratio**"), Lender has the right to immediately liquidate Collateral in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than seventy percent (70.0%) of the Collateral Market Value. Any Collateral liquidated by Lender is subject to a 3% processing fee. Any additional Collateral posted by Borrower pursuant to this Section 7 must be based in the same kind of cryptocurrency as the original Collateral.

For purposes of this Section 7, (i) a "**Trigger Event**" means an event where Lender becomes aware that Borrower has failed to maintain the Required Loan to Value Ratio and the outstanding principal balance of the Loan is greater than seventy percent (70.0%) of the Collateral Market Value (the "**Maximum Loan to Value Ratio**"), and (ii) "notice

DocuSign Envelope ID: 0B303250-D96E-49DA-AAE1-CAE0DE090D23

**BlockFi Loan No. 41725c18**

is provided" at the earliest of (x) the time Lender transmits an electronic communication to the Borrower of such Trigger Event, (y) the following day if sent by UPS, FedEx or other express mail overnight delivery, or (z) four (4) days from the date posted if sent by U.S. Mail, all in accordance with the Notices provisions of Section 25 hereof.

8.    **Default.** Borrower shall be in default under this Agreement upon the occurrence of, and continuation of any of the following events, after giving effect to any applicable cure period (each, an **"Event of Default"**):

(a)    Borrower's failure to timely pay any payment when due, including any payments owed pursuant to Section 3(b) and Section 7(a);

(b)    A Trigger Event occurs and is continuing and Borrower fails to deposit additional Collateral as required pursuant to Section 7;

(c)    The Accelerated Maximum Loan to Value Ratio is then in effect and has not been cured pursuant to Section 7;

(d)    If Borrower is an entity, the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any levy, garnishment, attachment or similar proceeding is instituted against any property of Borrower held by Lender;

(e)    Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any Collateral securing the Loan. However, the Event of Default specified in this Section 8(e) shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute;

(f)    If Borrower is an individual, Borrower dies or becomes incompetent;

(g)    Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, any Related Document or any other agreement between Borrower and Lender;

(h)    Any warranty, representation or statement made or furnished to Lender by Borrower, or on Borrower's behalf, under this Agreement or any Related Document is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter;

(i)    A material adverse change occurs in the financial condition of Borrower, or the ability of Borrower to repay the Loan or perform under this Agreement or any other Related Document is impaired;

(j)    A change or material development in applicable law (including case law) or regulation makes the Loan unlawful, unless grandfathered; or

(k)    A general suspension in buying, selling or owning Bitcoin or Ethereum by U.S. federal governmental authorities or a suspension in buying, selling or owning digital assets or cryptocurrencies on at least three (3) major exchanges (including Gemini, GDAX / Coinbase, Kraken, or Bitstamp), with such disruption lasting at least five (5) days.

Borrower agrees to promptly notify Lender in writing upon the occurrence of any of the events described in this Section 8, in no case later than two (2) business days after the occurrence of such event.

204543107.1                                                                6

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

**BlockFi Loan No.** <u>41725c18</u>

9.    **Remedies.**

(a)    Upon an Event of Default and at any time thereafter, Lender may declare all amounts due under this Agreement immediately due and payable and shall have all the rights and remedies of a Lender under the UCC or as otherwise provided under applicable law. Without limiting the generality of the foregoing, Borrower expressly agrees that in any such default Lender may take immediate and exclusive possession of the Collateral and that Lender may liquidate the Collateral in whole or in part, at its sole discretion.

(b)    The proceeds of any sale or disposition of any part of the Collateral shall be distributed by Lender in the following order of priorities:

(i)    to Lender for any reasonable costs, fees, or expenses incurred in connection with the sale or disposition of the Collateral, including any legal, accounting or other fees incurred;

(ii)    to Lender in an amount equal to any outstanding and unpaid Indebtedness under this Agreement and the Related Documents; and

(iii)    any remaining surplus to Borrower, in accordance with the UCC or as a court of competent jurisdiction may direct.

10.    **Arbitration Provision.** If this contract is made to a business domiciled in the U.S. or Canada, please see Appendix A for the applicable Arbitration Provision.

11.    **Payment Failure.** Borrower agrees that Lender may assess a fee (a "**Payment Failure Fee**") of fifteen dollars (US$15.00) if any attempted payment by Borrower to Lender is not collected by Lender for any reason, including if wire transfers or checks are returned or fail due to insufficient funds in any account from which a payment is to be made to Lender. The amount of any Payment Failure Fee will be added to the balance due and payable on the relevant payment due date. Each business processing day in which a new non-payment occurs shall be deemed an "occurrence," with a maximum of one occurrence per day per deposit account, including single or multiple checks or drafts submitted or wire transfers attempted for payment on any payment due date.

12.    **Lender Appointed Attorney-In-Fact.** Borrower hereby appoints Lender Borrower's attorney-in-fact, with full authority in the place and stead of Borrower and in the name of Borrower or otherwise, from time to time during the continuance of an Event of Default to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement (but Lender shall not be obligated to and shall have no liability to Borrower or any third party for failure to do so or take action). This appointment, being coupled with an interest, shall be irrevocable. Borrower hereby ratifies all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof.

13.    **Security Interest Absolute.** To the extent permitted by law, Borrower hereby waives demand, notice, protest, notice of acceptance of this Agreement, Collateral received or delivered and all other demands and notices of any description. To the extent permitted by law, all rights of Lender and liens and security interests hereunder, and all Indebtedness of Borrower hereunder, shall be absolute and unconditional irrespective of:

(a)    any illegality or lack of validity or enforceability of any Indebtedness or any related agreement or instrument;

(b)    any change in the time, place or manner of payment of, or in any other term of, the Indebtedness, or any amendment or other modification of this Agreement or any other agreement, including any increase in the Indebtedness resulting from any extension of additional credit or otherwise;

(c)    any taking, exchange, substitution, release, impairment or non-perfection of any Collateral

204543107.1                                7

067

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. <u>41725c18</u>

or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Indebtedness;

      (d)    any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Indebtedness;

      (e)    any default, failure or delay, willful or otherwise, in the payment of the Indebtedness;

      (f)    any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, Borrower against Lender; or

      (g)    any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Loan or any existence of or reliance on any representation by Lender that might vary the risk of Borrower or otherwise operate as a defense available to, or a legal or equitable discharge of, Borrower or any guarantor or surety.

      14.    **Survival of Representations and Warranties.** Borrower understands and agrees that in making this Loan, Lender is relying on all representations, warranties and covenants made by Borrower in this Agreement, the Related Documents and in any certificate or other instrument delivered by Borrower to Lender under this Agreement. Such Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the execution of this Agreement and the funding of the advance, shall be continuing in nature, and shall remain in full force and effect until such time as all of Borrower's obligations under this Agreement shall be fully satisfied, or until this Agreement shall be terminated in the manner provided herein, whichever is the last to occur.

      15.    **Account Authorization.** In order to satisfy Borrower's obligations under this Agreement, Borrower expressly authorizes Lender to initiate an electronic funds transfer ("**EFT**") debit from Borrower's designated bank account (including any subsequent designated account identified to Lender by the Borrower) in accordance with the Authorization Agreement for Electronic Funds Transfer (EFT) Payments attached as <u>Exhibit A</u> (the "**EFT Authorization**") for all amounts due and owing by Borrower to Lender under this Agreement, including, without limitation, all payments to be made by Borrower pursuant to <u>Section 3</u> of this Agreement. In connection with such payments, Borrower further agrees to complete the EFT Authorization. Borrower authorizes Lender to resubmit any EFT debit authorized by Borrower that is returned for insufficient or uncollected funds, except as otherwise provided by NACHA – The Electronic Payment Association's EFT rules or applicable law.

      16.    **Cost of Collection.** To the extent permitted by law, Borrower agrees to pay all costs and expenses, including collection expenses, court costs, and reasonable attorneys' fees, incurred by Lender in the collection or enforcement of this Agreement. Borrower also agrees to pay any and all withholding taxes applicable to the Collateral, including any withholding taxes on any amounts so paid and, upon written request by Lender, shall furnish Lender with evidence of payment thereof.

      17.    **Termination.** This Agreement shall terminate upon the payment in full of all Indebtedness and performance of all obligations hereunder. At such time, Lender's sole obligations shall be to direct the Depository to transfer the remaining Collateral in the Depository Account to Borrower, at a wallet address provided by Borrower to Lender, and to authorize Borrower to terminate any UCC financing statements filed by Lender against Borrower with respect to the Collateral.

      18.    **Binding Effect.** All representations, warranties, covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender. Any such assignment in violation of this Section 18 shall be null and void.

204543107.1        8

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE080D23

**BlockFi Loan No. 41725c18**

19.    **Caption Headings.** Caption headings in this Agreement and the Related Documents are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement or the Related Documents.

20.    **Cumulative Rights; Non-Exercise.** Lender's rights under this Agreement are cumulative, and shall not be construed as exclusive of each other unless otherwise required by law. The non-exercise by Lender of any rights or remedies under this Agreement shall not constitute a waiver thereof in that or any subsequent instance.

21.    **Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower shall constitute a waiver of any of Lender's rights or of the Borrower's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

22.    **Entire Agreement; Integration.** This Agreement and the other Related Documents constitute the entire agreement among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. Each Related Document, and any exhibit, schedule or similar addition to this Agreement or any Related Document, is hereby incorporated into this Agreement by this reference as though fully set forth herein.

23.    **Severability.** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

24.    **Usury Savings Clause.** Lender and Borrower intend to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof, Lender and Borrower stipulate and agree that none of the terms and provisions contained in the Loan Documents shall ever be construed to create a contract to pay for the use, forbearance or detention of money or interest in excess of the maximum amount of interest (including all charges and fees) permitted to be charged by applicable law, from time to time.

25.    **Notices.** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, delivered by overnight delivery service, or via electronic mail, addressed as follows:

If to Lender:

BlockFi Lending LLC
150 Broadway, 19th Floor
New York, NY 10038
support@blockfi.com

If to Borrower:
George Gerro
530 S. Glenoaks Blvd., Suite 200
Burbank, CA 91502 - United States of America
georgejgerro@gmail.com

204543107.1                              9

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18 ____

Either party may change such addresses from time to time by providing notice as set forth above.

26.     **USA Patriot Act Notice.** Lender hereby notifies Borrower that, pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

27.     **Credit Report and Other Authorizations.** Borrower authorizes Lender, its agents and representatives and any credit reporting agency engaged by Lender, to (a) investigate any references given or any other statements or data obtained from or about Borrower or any guarantor for the purpose of this Loan Agreement, (b) obtain consumer and business credit reports on Borrower and any guarantor, (c) contact personal and business references provided by Borrower, at any time now or for so long as any Indebtedness remains unpaid, and (d) share information regarding Borrower's performance under this Agreement with affiliates and unaffiliated third parties.

28.     **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days and not business days.

29.     **Amendment.** This Agreement and the Related Documents constitute the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration, amendment, modification, termination, discharge or waiver of any provision of this Agreement or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration, amendment, modification, termination, discharge or waiver. Any such alteration, amendment, modification, termination, discharge or waiver shall be effective only for the specific purpose for which given.

30.     **Bankruptcy.** The rights and priorities set forth in this Agreement shall remain binding irrespective of the terms of any plan of reorganization in any proceeding commenced by or against Borrower under any provision of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended, and any successor statute (the "**Bankruptcy Code**") or under any other federal or state bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other similar relief, and all converted or succeeding cases in respect thereof or other provisions of the Bankruptcy Code or any similar federal or state statute.

31.     **Governing Law; Acceptable Forums; Waiver of Jury Trial.** EXCEPT     FOR     THE ARBITRATION PROVISION, WHERE APPLICABLE, WHICH SHALL BE GOVERNED BY FEDERAL LAW, THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS. BORROWER UNDERSTANDS THAT BORROWER'S AGREEING TO THE APPLICABILITY OF DELAWARE LAW AND VENUE ARE A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THIS AGREEMENT. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Lender so elects, be instituted in any court sitting in New Castle County, Delaware, (the "**Acceptable Forums**"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum. Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement or any Related Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).

32.     **Facsimile Acceptance.** This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. The exchange of copies of this Agreement and of signature

204543107.1                                                10

DocuSign Envelope ID: 0B303260-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

pages by facsimile transmission (whether directly from one facsimile device to another by means of a dial-up connection or whether mediated by the worldwide web), by e-mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

33.     **Military Lending Act.** The Military Lending Act provides protections for certain members of the Armed Forces and their dependents ("**Covered Borrowers**"). The provisions of this section apply to Covered Borrowers. Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36%. This rate must include, as applicable to the credit transaction or account: (a) the costs associated with credit insurance premiums; (b) fees for ancillary products sold in connection with the credit transaction; (c) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (d) any participation fee charged (other than certain participation fees for a credit card account). Before signing this Agreement, in order to hear important disclosures and payment information about this Agreement, you may call 1-646-779-9688.

34.     **Transferable Record.** Borrower expressly agrees that this Agreement is a "transferable record" as defined in applicable law relating to electronic transactions and that it may be created, authenticated, stored, transmitted and transferred in a manner consistent with and permitted by such applicable law.

35.     **Loan Transferability.** Borrower expressly agrees and acknowledges that Lender may assign this Agreement and the Related Documents, or any of Lender's rights under this Agreement or the Related Documents, in whole or in part at any time. Borrower further understands, acknowledges and agrees that Lender or another third party may further sell, assign or transfer this Agreement, the Related Documents and all associated documents and information related to this Agreement and the Related Documents without Borrower's consent or notice to Borrower.

**[The remainder of this page intentionally left blank.]**

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first written above.

**BORROWER**

DocuSigned by:

By: *George Gerro*
Name:  George Gerro

**LENDER**

BlockFi Lending LLC, a Delaware limited liability company

By: _____
Name: Flori Marquez
Title: VP of Operations

Signature Page to Loan and Security Agreement

204543107.1                           12

072

DocuSign Envelope ID: 0B303260-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

Please review and confirm the information below. Pay close attention and ensure the "Funding Currency" is accurate. Note that if funding your loan in Stablecoin, funds must be sent to a wallet that supports the specified currency or funds may be permanently lost. BlockFi will not be responsible for any errors arising from an incorrectly specified Stablecoin currency or Destination Wallet Address.

## Funding Currency

Your loan will be funded in               USD Wire
*(If you would like to be funded in Stablecoin, please skip to the "Stablecoin" selection below)*

## Bank Wires

Beneficiary Name                          George Gerro

Beneficiary Address                       530 S. Glenoaks Blvd., Suite 200

                                          Burbank, CA 91502 - United States of America
*(Please ensure the Name and Address match that associated with your Bank, otherwise funds may be delayed)*

## US Bank Information

Bank Account # (USA)                      ██████████

Wire Capable Routing # (USA)              █████████

## Non-US Bank Information

IBAN (only required for Non-USA Wires)

SWIFT / BIC (only required for Non-USA Wires)

## Stablecoin

Destination Wallet Address
*(Please ensure that the Destination Wallet Address and Stablecoin Currency above are correct. Funds sent to an incorrect address may be permanently lost. BlockFi will not be responsible for any errors arising from an incorrectly specified Stablecoin currency or Destination Wallet Address)*

073

DocuSign Envelope ID: 0B303950-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

**Lender**

BlockFi Lending LLC
150 Broadway
19th Floor
New York, NY 10038

**Borrower**

George Gerro
530 S. Glenoaks Blvd., Suite 200
Burbank, CA 91502 - United States of America
georgejgerro@gmail.com

## TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate | FINANCE CHARGE<br><br>The dollar amount the credit will cost you | Amount Financed<br><br>The amount of credit provided to you or on your behalf | Total of Payments<br><br>The amount you will have paid when you have made all scheduled payments |
|---|---|---|---|
| 9.75% | 221812.50 | 2275000.00 | 2496812.56 |

Your payment schedule will be as follows:

| Number of payments | Amount | When payments are due |
|---|---|---|
| 12 | 18484.38 | First payment is due on 2020-03-12, and each subsequent payment is due monthly thereafter on the same day of each month |
| 1 | 2275000.00 | Last payment is due on 2021-02-12 |

**Security:** You are giving a security interest in the following collateral:

| ~~441.750        BTC~~   441.85 BTC |
|---|

**Late charges:** If your payment arrives more than 10 days after the date on it is due, you may be charged a late fee equal to the greater of 5.00% of the past due payment or $8.

**Prepayment policy:** Borrower may prepay the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.

**See your Loan and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, collateral and termination matters.**

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

**BlockFi Loan No.** 41725c18

Itemization of Amount Financed of $ 2275000.00

| Amount given to you directly | Amount paid to others on your behalf: |
|---|---|
| ~~2275000.00~~  $141,731.12 | Loan ID: 105f77a0 -  $651,391.21 Loan ID: f202e284 - $1,481,877.67 |
| Amount paid on your account | Prepaid finance charge to BlockFi Lending LLC |
| 0.00 | 0.00 |

The payment amounts disclosed in the payment schedule are calculated on the assumption that you will make all payments on the applicable payment due date and assume, for purposes of this disclosure, that all months have 30 days.  Please note that monthly loan payments are made on an "interest-only" basis until the final payment is due. This means that the actual amount of a monthly loan payment may increase when you make a payment after the payment due date or decrease when you make a payment before the payment due date. The payment amount will also vary based on the actual days in any given month.

204543107.1                           15

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

Rev. Aug. 2018

| FACTS | WHAT DOES BLOCKFI DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Social Security number and income <br> • account balances and payment history <br> • credit history and credit scores <br> When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons BlockFi chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does BlockFi share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

076

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D29

BlockFi Loan No. 41725c18

| Questions? | 646-779-9688 |
|---|---|

| **Who we are** | |
|---|---|
| Who is providing this notice? | BlockFi |

| **What we do** | |
|---|---|
| How does BlockFi protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does BlockFi collect my personal information? | We collect your personal information, for example, when you<br>• apply for a loan or give us your contact information<br>• pay your bills or give us your income information<br>• provide employment information<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes—information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| **Definitions** | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *BlockFi does not share with our affiliates* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *BlockFi does not share with nonaffiliates so they can market to you* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *BlockFi doesn't jointly market* |

077

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090023

BlockFi Loan No. 41725c18

## APPENDIX A: BULLET LOANS

**Interest.** The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be the rate stated above in section 3(a) and in your loan offer on your client dashboard. All interest accrued hereunder shall be calculated on a front-loaded basis. Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each. Upon disbursement of the Loan proceeds, Lender shall collect an interest payment equal to the aforementioned rate times the principal sum of the Loan, prorated for the loan's term. All interest due is fully earned by Lender on the date it is collected. Lender shall deduct all the interest due from the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable with such interest upon demand by Lender and absent such demand, as otherwise provided herein.

**Prepayments.** Borrower may prepay the outstanding principal at any time, subject to an adjustment to include an origination fee in lieu of prepaid interest. There is no additional charge for prepaying principal ahead of the Maturity Date. Prior to prepayment, the Borrower must give the Lender 5 business day notice. Interest payments made at origination will not be reimbursed.

**Arbitration Provision.**

(a)    In the event that any Dispute (as hereinafter defined) cannot be resolved through a discussion between Borrower and Lender (individually "party" and collectively "parties"), either party may demand that such Dispute be submitted to arbitration, which (if demanded) shall be the exclusive, final, and binding means for resolving such Dispute; provided, this arbitration provision shall not prevent the parties from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations of this agreement for which either party may obtain provisional relief pending a decision on the merits by the arbitrator. A "Dispute" is a claim or controversy of every kind and nature between Borrower and Lender, including, but not limited to: (i) all claims or controversies arising out of or relating to any aspect of the relationship between the parties hereto, regardless of legal basis or theory; (ii) all claims or controversies involving the interpretation, construction, performance or nonperformance, enforcement, or breach of this agreement; and (iii) all claims or controversies that may arise after the termination of this agreement. This arbitration provision is intended to be broadly interpreted, and the term "Dispute" shall have the broadest meaning possible. Any party may demand arbitration in writing by notice to the other party.

(b)    Any such arbitration shall be conducted under the Commercial Dispute Resolution Rules of the American Arbitration Association ("AAA"), except as modified herein. Alternatively, upon both parties' consent, another arbitration association and its rules may be used. The arbitration proceedings shall be before a single neutral arbitrator who shall be an attorney, retired judge, or arbitrator experienced in commercial finance. The arbitrator shall be registered and in good standing with an arbitration association. The arbitrators shall apply applicable statutes of limitation and rules of privilege. Except as otherwise provided herein, the arbitrator shall have authority to award any remedy or relief that a court of the State of Delaware or federal court located in the State of Delaware could grant in conformity to applicable law on the basis of claims actually made in the arbitration. Any arbitration will be held in New York County, NY, which the parties agree is a convenient location. Any arbitration award shall be accompanied by a written statement containing a summary of the issues in controversy, a description of the award, and an explanation of the reasons for the award. The non-prevailing party shall pay to the prevailing party, to the extent not prohibited by law, all of the prevailing party's arbitration costs and expenses, including reasonable attorneys' fees, and the arbitrator shall award such in its decision. The arbitrator's award shall be final, and judgment may be entered upon such award by any court. All arbitration proceedings shall be confidential, and neither party shall disclose any information about the evidence produced by either party in the arbitration proceeding except as necessary in the course of a judicial, regulatory or arbitration proceeding, or as may be demanded by government authority; provided, before making any such disclosure the disclosing party shall give the other party reasonable advance written notice and an opportunity to prevent the disclosure.

204543107.1                                        18

DocuSign Envelope ID: 0B303250-D95E-49DA-AAE1-CAE0DE090D23

BlockFi Loan No. 41725c18

(c)      No class action arbitration may be ordered under this arbitration provision (this is referred to in the next sentence as the "class waiver"). If any part of this arbitration provision is found to be unenforceable, except for the class waiver, the rest shall be enforceable; but if the class waiver is found to be unenforceable, then this entire arbitration provision shall be unenforceable.

(d)      Because the parties hereto operate in interstate commerce, this Arbitration Provision shall be governed by the Federal Arbitration Act, as will any actions to compel, enforce, vacate, or confirm proceedings, awards, or orders of the arbitrator. This arbitration provision shall, with respect to such dispute, survive the termination or expiration of this agreement. Except for the enforceability of the arbitration provision discussed above, nothing in this arbitration provision shall be deemed to give the arbitrators any authority, power, or right to alter, change, amend, modify, add to, or subtract from any of the provisions of this agreement.

## APPENDIX B: LOAN DISCLOSURES

BlockFi Lending LLC is required to comply with the following state-specific lending disclosures

(a) IF YOU ARE A RESIDENT OF OHIO:

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

(b) IF YOU ARE A RESIDENT OF MICHIGAN:

In accordance with the Michigan Regulatory Loan Act, Michigan residents' origination fee will not exceed the lesser of 5% of the principal loan amount or $300.

(c) IF YOU ARE A RESIDENT OF ILLINOIS:

In accordance with the Illinois Consumer Installment Loan Act, the repayment of this loan, at issuance, is scheduled to be in equal monthly installments with no balloon of principal at maturity. BlockFi does note that there will be no late fees applied as long as the customer pays the interest portion of their monthly payment.

(d) IF YOU ARE A RESIDENT OF OREGON:

This agreement is governed by Oregon Law.

# ATTACHMENT "16"

# ATTACHMENT "16"

# ATTACHMENT "16"

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                          5/1/20, 3:53 PM

## M Gmail

George Gerro <georgejgerro@gmail.com>

**BlockFi Loan ID 41725c18 - Margin Liquidation**
36 messages

Jake Gargiulo <jake@blockfi.com>                                              Fri, Mar 13, 2020 at 12:04 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

I hope this message finds you well. Given the recent market activity and your Loan being in Default, a liquidation was triggered on your Loan to cure your margin.

Please see transaction details below:

Crypto Sold: -81.1955 BTC
USD Raised: 386900.1962

| Loan IDs | Collateral | Pre-Liquidation | | Post Liquidation | | |
|----------|-----------|-----------------|------------|------------------|--------------|------------|
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | 802357.2062 | 183.57771 | -81.1955 | 416057.01 | 102.4222026 |

Our backend and Risk Management systems have been updated and reflect this information. If your frontend dashboard does not reflect this information, it should be updated shortly.

You may notice that the price at the time of the automated sale yesterday is slightly different than the current price at this moment. This difference is a result of your loan portfolio as a whole and liquidity at the time of sale when the market dropped last night.

For BlockFi's view on current market conditions, please read this Blog Post written by our CEO Zac Prince.

Please email support@blockfi.com if you have any questions, and thank you for choosing BlockFi.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302

## ❖ BlockFi

Unless specifically indicated, this e-mail is not an offer or a solicitation of any investment product or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and other confidential information belonging to the sender, or material which is protected by the attorney-client privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

George Gerro <georgejgerro@gmail.com>                                         Fri, Mar 13, 2020 at 1:06 PM
To: Jake Gargiulo <jake@blockfi.com>, support@blockfi.com
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello BlockFi,

Thank you for this update. Please disregard any previous requests for a return of remaining collateral. I was under the mistaken impression that the loan was fully paid off.

I appreciate that I have an opportunity to remain a client of BlockFi.

- George Gerro
[Quoted text hidden]

Jake Gargiulo <jake@blockfi.com>                                              Fri, Mar 13, 2020 at 1:20 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Support <support@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Absolutely George. It's been a tough ~36 hours for us all.

Please let us know if you have any questions, we'll try to respond as quickly as possible given the higher volume of inquiries.

Best,

Jake Gargiulo

Gmail – BlockFi Loan ID 41725c16 – Margin Liquidation                                    5/1/20, 3:53 PM

Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302

### ● BlockFi

[Quoted text hidden]
[Quoted text hidden]

---

Jake Gargiulo <jake@blockfi.com>                                        Fri, Mar 13, 2020 at 5:10 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

I hope this message finds you well. Given the recent market activity and your Loan being in Default, a liquidation was triggered on your Loan to cure your margin. Please note this liquidation was triggered late Thursday March 12th evening when LTV was above 80% and quickly deteriorating.

Please see transaction details below.

Crypto Sold: -59.1995 BTC
USD Raised: $275,336.57

| Loan IDs | Collateral | Pre-Liquidation | | Post Liquidation | | |
|---|---|---|---|---|---|---|
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c16 | BTC | $416,057.01 | 102.4222 | -59.1995 | $140,720.14 | 43.2227 |

Our backend and Risk Management systems have been updated and reflect this information. If your frontend dashboard does not reflect this information, it should be updated shortly. If you have any questions about your loan in the interim please email support@blockfi.com.

You may notice that the price at the time of this automated sale yesterday is slightly different than the current price at this moment. This difference is a result of our loan portfolio as a whole and liquidity at the time of sale when the market dropped last night.

For BlockFi's view on current market conditions, please read this Blog Post written by our CEO Zac Prince.

Please email support@blockfi.com if you have any questions, and thank you for choosing BlockFi.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302

### ● BlockFi

[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>                                  Fri, Mar 13, 2020 at 7:27 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Jake,

Please let me know the UTC time, exchanges or brokers, types of orders and its price, and how the bitcoins sold were attributable to my collateral specifically.  I am mainly concerned because price is one thousand dollars higher at this time.

Thank you. - George Gerro
[Quoted text hidden]

---

Flori Marquez <flori@blockfi.com>                                       Sat, Mar 14, 2020 at 7:03 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi George,

Our trading team was placing orders Thursday night when there was very little liquidity in the market, which affects the trading price available to us, especially when placing larger trades, such as yours.

We'll be reviewing these trades next week and seeing if there's anything we can do to ameliorate the negative experience you've had with us of having your collateral liquidated.

Best,

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                    5/1/20, 3:53 PM

Flori

Flori Marquez
Co-Founder, VP of Operations
646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

◆ BlockFi  [icons]

[Quoted text hidden]
[Quoted text hidden]

George Gerro <georgejgerro@gmail.com>                                    Sat, Mar 14, 2020 at 11:20 AM
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Flori,

Thank you. I am appreciative of you and your team (especially Jake). All of my experiences with BlockFi have been positive and meaningful.

I am open to any ideas.
- George
[Quoted text hidden]

George Gerro <georgejgerro@gmail.com>                                    Sun, Mar 15, 2020 at 3:24 PM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

I have an idea, and I would like to hear your's too. Since solutions are time sensitive, please call me at your convenience.

Sincerely,

George Gerro
(818) 568-6380

    On Mar 14, 2020, at 7:03 AM, Flori Marquez <flori@blockfi.com> wrote:


        [Quoted text hidden]

Flori Marquez <flori@blockfi.com>                                    Sun, Mar 15, 2020 at 5:15 PM
To: George Gerro <georgejgerro@gmail.com>

Hey George -

Please share over email if okay. Currently working on some internal projects with engineering so a call is not possible until tomorrow.

Best,

Flori

Flori Marquez
Co-Founder, VP of Operations
646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

◆ BlockFi  [icons]

[Quoted text hidden]
[Quoted text hidden]

George Gerro <georgejgerro@gmail.com>                                    Sun, Mar 15, 2020 at 5:48 PM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

Thank you for responding on a Sunday.

https://mail.google.com/mail/u/1?ik=17b0873405&view=pt&search=...g-a%3Ar-3748960746082620334&simpl=msg-f%3A1665157234723730729      Page 3 of 11

083

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                                    5/1/20, 3:53 PM

My idea is to redeem the loan, since the average sale price for the collateral was approximately the same market price as BTC now. BlockFi would extend total credit of $2.275M to buy the approx. 400 BTC of sold collateral back off the open market. Then, I can possibly add more collateral to return the LTV ratio to 80%. Let me know if this works, or if you have any different ideas.

- George
[Quoted text hidden]

---

**Flori Marquez <flori@blockfi.com>**                                                              Mon, Mar 16, 2020 at 7:59 AM
To: George Gerro <georgelgerro@gmail.com>

Hi George -

Unfortunately we cannot extend uncollateralized loans. We can reverse sales if there is enough collateral on the loan to maintain a healthy LTV after the trade reversal.

Let me know if I'm misunderstanding you.

Best,

Flori
Flori Marquez
Co-Founder, VP of Operations

646.779.9888
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

◆ BlockFi  🔲 🔲 🔲 🔲

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro <georgelgerro@gmail.com>**                                                          Mon, Mar 16, 2020 at 8:24 AM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

I think we are both referring to the same intuition. Can you provide details of how this can work?

Sincerely,

George Gerro
(818) 568-6380

    On Mar 16, 2020, at 7:59 AM, Flori Marquez <flori@blockfi.com> wrote:

    [Quoted text hidden]

---

**Flori Marquez <flori@blockfi.com>**                                                              Mon, Mar 16, 2020 at 8:44 AM
To: George Gerro <georgelgerro@gmail.com>
Cc: Jake Gaiguio <jake@blockfi.com>

Hi George,

You need to post enough collateral to bring the loan's LTV below 80% after the trade is reversed. I'm adding Jake who can help with the math on this.

Best,

Flori
Flori Marquez
Co-Founder, VP of Operations

646.779.9888
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

◆ BlockFi  🔲 🔲 🔲 🔲

[Quoted text hidden]
[Quoted text hidden]

---

George Gerro <georgelgerro@gmail.com>                                                              Mon, Mar 16, 2020 at 8:52 AM

084

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                      6/1/20, 3:53 PM

**To:** Flori Marquez <flori@blockfi.com>
**Cc:** Jake Gargiulo <jake@blockfi.com>

Hi Flori and Jake,

A 60% LTV is too high for me to comply. I need another option.

Sincerely,

George Gerro
**(818) 568-6390**
[Quoted text hidden]

---

Jake Gargiulo <jake@blockfi.com>                                          Mon, Mar 16, 2020 at 9:29 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hey George,

Kindly noted. The implied LTV if we reversed the trades would bring you to ~103% LTV at current levels, which is why we cannot do that.

In order to reverse trades, we would need you to bring LTV down to at least 60% which would require an additional ~317 BTC to be posted as collateral. The situation we're trying to avoid is reversing the trades, then you being right back in margin/liquidation again, and then you get liquidated again at an even lower price.

Again we appreciate all of your patience and understanding throughout these trying times, it's certainly been difficult for all. I hope you are staying safe.

Please let us know if you have any questions.

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302

**◆ BlockFi**
[Quoted text hidden]
[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>                                     Mon, Mar 16, 2020 at 10:36 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hello Jake,

I appreciate your explanation.  And yes, I am safe, but find the closure of restaurants to be inconvenient

Regarding LTV, since the price has already fallen tremendously, less collateral is necessary (especially since we just sold into capitulation).  If the price continues to fall, additional margin could be required on a graduated basis.  Thus, I recommend additional collateral of $500k or 59 BTC at this time.  Otherwise, please propose other alternatives such as a personal guarantee.

- George
[Quoted text hidden]

---

Jake Gargiulo <jake@blockfi.com>                                          Mon, Mar 16, 2020 at 10:54 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Agreed, it's the same in NYC.

Unfortunately that would put you at a ~84% LTV, which would be subject to immediate liquidation (the scenario we're trying to avoid). Unfortunately the best we can do is a 60% LTV at this time given all the volatility in the market. It would be rather pointless to reverse the trades just to get liquidated again.

Again we know these are difficult times and apologize for any inconvenience.

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302

**◆ BlockFi**
[Quoted text hidden]
[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>                                     Mon, Mar 16, 2020 at 11:11 AM
To: Jake Gargiulo <jake@blockfi.com>

085

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation

6/1/20, 3:53 PM

Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

Why do we need to reverse the trades, rather than buy at today's lower market prices?

Sincerely,

George Gero
(818) 568-6380

On Mar 16, 2020, at 10:54 AM, Jake Gargiulo <jake@blockfi.com> wrote:

[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Mon, Mar 16, 2020 at 12:30 PM

Hello Flori,

You mentioned that you potentially have some ideas to ameliorate this situation.  Can you opine at this time?

- George
[Quoted text hidden]

---

Flori Marquez <flori@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>

Mon, Mar 16, 2020 at 12:37 PM

Hi George,

Everything Jake said is accurate (and what I asked him to share with you, as I cannot respond as quickly). If you cannot post additional collateral as required, and we reverse the trades, we will end up liquidating more crypto at a lower price.

We can absolutely work to reverse trades, but only if it leaves the client with a healthy loan.

Let me know if that makes sense.

Best,

Flori
Flori Marquez
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

● BlockFi

[Quoted text hidden]
[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>, Flori Marquez <flori@blockfi.com>

Tue, Mar 17, 2020 at 12:47 PM

Hello all,

This market crash has caused me to reevaluate my situation.  In the bitcoin ethos, I would like to once again hold my own UTXO's.

As such, please calculate the payoff amount for my loan.  Let the payoff reflect the fact that interest has only accrued for about one week, and that the loan balance has been substantially lower for the past few days.  Go ahead and payoff the loan with proceeds from the remaining collateral, send the remaining bitcoin to me, and confirm my bitcoin address telephonically.

Thank you - George Gerro
[Quoted text hidden]

---

Flori Marquez <flori@blockfi.com>
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Tue, Mar 17, 2020 at 1:16 PM

Thanks, George. In order for BlockFi to proceed with liquidating collateral to payoff your loan, please complete the form attached here.

Flori Marquez
Co-Founder, VP of Operations

---

https://mail.google.com/mail/u/1?ik=17b0673405&view=pt&search=...g-a%3Ar-3748960746082520334&simpl=msg-f%3A1665157234723730729

Page 6 of 11

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                                       5/1/20, 3:53 PM

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

◆ BlockFi  [illegible icons]

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro <georgejgerro@gmail.com>**                                                  Tue, Mar 17, 2020 at 1:54 PM
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi All,

The form did not request a withdrawal address.

Sincerely,

George Gerro
(818) 568-6380

On Mar 17, 2020, at 1:16 PM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

**Jake Gargiulo <jake@blockfi.com>**                                                        Tue, Mar 17, 2020 at 1:59 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi George,

Once the payoff is processed, remaining collateral will automatically sweep to your Interest Account. From there you can submit a withdrawal request to an external wallet

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302

◆ BlockFi
[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro <georgejgerro@gmail.com>**                                                  Tue, Mar 17, 2020 at 2:04 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Since the price is fluctuating, please send me confirmation immediately after the trade.

Sincerely,

George Gerro
(818) 568-6380

On Mar 17, 2020, at 1:59 PM, Jake Gargiulo <jake@blockfi.com> wrote:

[Quoted text hidden]

---

**George Gerro <georgejgerro@gmail.com>**                                                  Thu, Mar 19, 2020 at 11:45 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hello Jake,

At $7500 per BTC, I will be able to bring the LTV to 60% for 53.7 btc additional collateral. Please confirm the math. Thank you.

Sincerely,

https://mail.google.com/mail/u/1?ik=17b06734058&view=pt&search=...g-a%3Ar-3748960746082520334&simpl=msg-f%3A1665157234723730729          Page 7 of 11

087

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                    5/1/20, 3:53 PM

George Gerro
(818) 568-6380
[Quoted text hidden]

Jake Gargiulo <jake@blockfi.com>                                          Thu, Mar 19, 2020 at 2:50 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hey George,

Thank you so much for your patience and my apologies for this delay in getting this over to you. Flori caught me up to speed, and I wanted to provide the full breakdowns for you in terms of options available to reinstate some of your loan/collateral. In providing a breakdown of what would be needed to reverse all trades that occurred, as well as what is needed to reverse the final trade that occurred to fully payoff the loan. If there are any other iterations you would like to review, please let me know and I can calculate.

As it stands now, the loan is fully paid off backed by 0 collateral. As I'm sure you can imagine, the situation we must avoid is reversing any trades and then you being right back in Margin/Default territory which would trigger another liquidation, so we would require the reinstated balance be brought to a 60% LTV by either paying USD, or posting additional collateral.

| Trades | | | | |
|---|---|---|---|---|
| | Loan ID | USD Raised | Crypto Sold | Asset |
| All Trades | 41725c18 | $2,275,000.00 | 426.0741673 | BTC |
| Final Trade | 41725c18 | $140,720.14 | 27.4469 | BTC |

| Reinstate - Post Reversal | | | | |
|---|---|---|---|---|
| | Loan ID | Principal Balance | Collateral Type | Collateral After Reversal | Implied LTV |
| Reverse All Trades | 41725c18 | $2,275,000.00 | BTC | 426.07418732 | 90.65% |
| Reverse Final Trade | 41725c18 | $140,720.14 | BTC | 27.44687732 | 87.05% |

| Option 1. Additional Collateral Required | | | | |
|---|---|---|---|---|
| | Loan ID | Principal Balance | Collateral Type | Collateral for 60% LTV | Need to Post |
| Reverse All Trades | 41725c18 | $2,275,000.00 | BTC | 643.746 | 217.672 |
| Reverse Final Trade | 41725c18 | $140,720.14 | BTC | 39.819 | 12.372 |

| Option 2. USD Payment Required | | | | |
|---|---|---|---|---|
| | Loan ID | Principal Balance | Reinstated Collateral | Loan Available at 60% | Payment Needed |
| Reverse All Trades | 41725c18 | $2,275,000.00 | 426.07416732 | $1,505,746.11 | $769,253.89 |
| Reverse Final Trade | 41725c18 | $140,720.14 | 27.447 | $96,997.26 | $43,722.88 |

Please feel free to read through this and let myself and/or Flori know if you have any questions. Long story short, a payment of $769,253.89 would reinstate your loan to ~$1.5M backed by the full 426 BTC.

I hope you're staying safe out there in LA! My brother is down in San Diego and has been keeping me updated. The last week (feels like much longer) been wild to say the least.

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9668
201 Montgomery Street, 263, Jersey City, NJ 07302

◆ BlockFi
[Quoted text hidden]

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9668
201 Montgomery St, 263, Jersey City NJ 07302

◆ BlockFi
[Quoted text hidden]

George Gerro <georgejgerro@gmail.com>                                     Tue, Mar 24, 2020 at 2:16 AM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello Jake,

088

Gmail - BlockFi Loan ID 41726c18 - Margin Liquidation                                              5/1/20, 3:53 PM

Thank you very much for running the numbers. I am in the due diligence phase with a traditional source of capital.

The multiple options you provided are helpful and appreciated. What is the formula for calculating the USD principal pay-down?

- George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                              Tue, Mar 24, 2020 at 6:25 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

That's great news.

Formula is: Reinstated Principal Balance minus Loan Available at 60% (based on reinstated collateral + price of BTC).

Example 1.
Reinstated Principal Balance: $2,275,000.00
Reinstated Collateral: 426.07416732 BTC
Loan Available at 60% (subject to fluctuate slightly based on BTC, assuming 426 BTC collateral at 60% LTV): $1,505,746.11
Payment Needed: $2,275,000.00 - $1,505,746.11 = $769,253.89

That payment would bring new principal balance to $1,505,746.11 backed by 426 BTC.

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302

 **BlockFi**

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                              Mon, Apr 27, 2020 at 6:41 AM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello Jake and Flori,

I accept BlockFi's offer to reverse my collateral sales.

Reinstated Principal Balance ($2275000) - Loan Available at 60% ($1,968,120 i.e. (426 BTC * $7700 * 0.6)) = $306,880 loan pay down / $7700 per BTC = 39.854545 BTC

New principal balance of $1,968,120 backed by 426 BTC collateral, with a post-reversal LTV of 60%.

I will send the BTC today. Please confirm BlockFi's bitcoin address.

Thank you, George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                              Mon, Apr 27, 2020 at 7:36 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi George,

Followed up via text but wanted to follow up here as well. Reviewing with the Team and will revert back. To be transparent and manage your expectations, given that it's been well over a month since the liquidation (almost two) and BTC is much higher now, my outlook is doubtful. On initial review, there would be very steep losses (BlockFi sold over 400 BTC at ~$5k, so we would have to buy back BTC at current prices, incurring a loss of at least ~$1M, if not more) and those losses would very likely need to be added to your outstanding principal balance.

Again, just want to maintain full transparency. I will revert back to you as soon as possible.

◆ **BlockFi**      Jake Gargiulo
                   Head of Client Service

                   jake@blockfi.com
                   646.779.9688

[Quoted text hidden]

[Quoted text hidden]
For more information, please see BlockFi's Terms of Service.

---

**George Gerro** <georgejgerro@gmail.com>                                              Mon, Apr 27, 2020 at 7:52 AM
To: Jake Gargiulo <jake@blockfi.com>

089

Gmail - BlockFi Loan ID 41725c16 - Margin Liquidation            5/1/20, 3:53 PM

Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

This is the first time I have heard anything about increasing the loan amount. Please note the offer was affirmed on March 24th when the price of bitcoin was between $6400 and $6860 per coin.

I might be open to an increase in the loan, but only if the additional amount is non-recourse, excluded for purposes of calculating margin, and calculated using the difference between today's price and the March 24th price.

- George
[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>            Mon, Apr 27, 2020 at 8:17 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

I respectfully request Blockfi to honor the terms of the deal as agreed. The $1M in losses are my losses, not Blockfi's.

The past month has been depressing for me. Now, I can be made whole again.

- George
[Quoted text hidden]

---

Jake Gargiulo <jake@blockfi.com>            Mon, Apr 27, 2020 at 12:25 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi George,

Thanks for your patience. I've spoken with our two founders and our Finance team to see if there is anything we can do, but unfortunately the offer expired in March after your Loan defaulted and cannot be extended.

If you'd like to originate a new loan, we can certainly work with you on that and can offer a discount from standard rack terms.

Please let me know if you have any questions.

Best,
Jake

◆ BlockFi  |  Jake Gargiulo
            Head of Client Service
            jake@blockfi.com
            646.779.9688

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

Unless specifically included, this email is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its affiliated entities. This e-mail's message is for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client privilege and/or work product doctrine. It is unlawful for unauthorized to use, review, use, copy, disclose, or disseminate confidential legal information. If you have received this e-mail in error, please notify the sender immediately by telephone at (848) 775-9688 or by return email and promptly delete this message from your system.

For more information, please see BlockFi's Terms of Service.

[Quoted text hidden]

---

George Gerro <georgejgerro@gmail.com>            Mon, Apr 27, 2020 at 12:49 PM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Jake,

With all due respect, that is a ridiculous argument. I recommend that you and the team take time to think it over. I would prefer a constructive, cooperative, mutually beneficial solution.

Please do not force me to demand arbitration in this matter. As you calculated earlier today, my damages are in excess of $1 million.

Respectfully, George
[Quoted text hidden]

---

Flori Marquez <flori@blockfi.com>            Mon, Apr 27, 2020 at 1:01 PM

https://mail.google.com/mail/u/1?ik=17b0673405&view=pt&search...g-a%3Ar-3748960746082520334&simpl=msg-f%3A1665157234723730729        Page 10 of 11

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                                          5/1/20, 3:53 PM

**To:** George Garro <georgejgarro@gmail.com>
**Cc:** Jake Gargiulo <jake@blockfi.com>, Zac Prince <zac@blockfi.com>

Hi George,

Unfortunately what Jake said was accurate. We had a window of time in which we were able to reverse trades, but as the original liquidations due to your loan's default happened over 45 days ago, and we've concluded our accounting for the quarter, there's not much more we can do here. As you know, even the original offer to reverse the trade is outside of the limitations of your loan agreement and something that I do not think any other lender does.

You're welcome to seek arbitration if you wish, but I would caution that as your loan defaulted, I'm not certain that it would lead to any other conclusion. What we can do is ensure you have favorable terms on any of our products going forward, although I understand that's not the same as having your position be reinstated. I am very sorry that we don't have another answer for you here. I've cc'd my cofounder, Zac, so that he's in the loop as well.

Sincerely,

Flori

 **BlockFi**    Flori Marquez
Founder, SVP Operations

flori@blockfi.com
Twitter @founderflori

C | 646.389.0709
O | 646.779.9688

[Quoted text hidden]
[Quoted text hidden]

091

# ATTACHMENT "17"

# ATTACHMENT "17"

# ATTACHMENT "17"



**BJ**

Blockfi >



> Hi Jake, please provide an update today.  I need to know before the price fluctuates too much

3:01 PM

Thanks for your patience George. It looks like -258.2723 BTC was sold to raise $1,484,290.87 (Price ~$5747). This leaves 183.5777 BTC against remaining balance of  $790,709, LTV ~73%

3:26 PM

Should have more details available shortly

3:26 PM

> Thank you for your response tonight. May we hop on a call?

3:31 PM

Mar 13, 2020, 1:08 PM

  iMessage 

# ATTACHMENT "18"

# ATTACHMENT "18"

# ATTACHMENT "18"

 Gmail

George Gerro <georgejgerro@gmail.com>

### BlockFi Loan ID 41725c18 - Margin Liquidation

Jake Gargiulo <jake@blockfi.com>                                          Thu, Mar 12, 2020 at 4:47 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

As mentioned in our previous emails, due to the further price drop to and no action being taken, we had to sell your collateral against your loan as your loan was in Default.

Please see transaction details below:

Crypto Sold: -258.27229 BTC
Price: 5701.98
USD Raised: $1,472,643.00

| Loan IDs | Collateral | Pre-Liquidation Balance | | Post Liquidation | | |
|---|---|---|---|---|---|---|
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | $2,275,000.21 | 441.85 | -258.27229 | $802,357.21 | 183.577706 |

Let me know if you have any questions moving forward.

Best,

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302



Unless specifically indicated, this e-mail is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

# ATTACHMENT "19"

# ATTACHMENT "19"

# ATTACHMENT "19"

**Zac Prince**  ✓
@BlockFiZac

Stay calm and carry on.

7:23                                    ⚫ LTE 🔋

🔒 app.blockfi.com

×

# Trade Completed

The trade has been submitted, a
confirmation email will be sent.

## Receive ◇ 1.00000000 BTC

## Pay with 6,336.52500000 GUSD

| | |
|---|---|
| TRADE SUBMISSION ID | f59f1527-2410-4956-a34a-fc391b523c86 |
| DATE | Mar 12, 2020 11:23:42 UTC |
| PAYMENT METHOD | GUSD INTEREST ACCOUNT |
| CONVERSION RATE | 1 BTC = 6,336.52500000 GUSD |

Close

097

4:24 AM · Mar 12, 2020

# ATTACHMENT "20"

# ATTACHMENT "20"

# ATTACHMENT "20"

098



**Flori Marquez** ✅
@FounderFlori

···

I don't usually talk about my portfolio, but I just bought some BTC. It's up 11% the last 24 hours and seems to have broken with equity markets. If you missed the boat in other downturns, don't do it again now 🚀

6:33 AM · Mar 19, 2020

**7** Retweets    **1** Quote    **140** Likes    **1** Bookmark

099

# ATTACHMENT "21"

# ATTACHMENT "21"

# ATTACHMENT "21"

← **Tweet**

◆ **BlockFi** ☑
  @BlockFi

...

Have you bought the dip yet? There's still time 📷

**Yes**                                 **68.9%**

No                                  31.1%

437 votes · Final results

2:33 PM · Mar 19, 2020

**5** Retweets    **1** Quote    **15** Likes

101

# ATTACHMENT "22"

# ATTACHMENT "22"

# ATTACHMENT "22"

**John M. Gerro**
*Attorney at Law*
530 South Glenoaks Boulevard, Suite 200
Burbank, California 91502
Telephone: (818) 840-0000
Facsimile: (818) 840-8111

April 27th 2020

*Via email to Flori@Blockfi.com*
*Zac@Blockfi.com*
*Jake@Blockfi.com*
*Support@Blockfi.com*

Flori Marquez, Founder, SVP Operations
Zac Prince, Founder
Jake Gargiulo, Head of Client Services
Blockfi Lending LLC
150 Broadway, 19th Floor
New York, NY 10038

Re:    Contract with George J. Gerro dated April 27, 2020

This Law Office represents George J. Gerro. We have reviewed all pertinent agreements, including electronic writings which ensued from March 12th to the present. We conclude that our client has properly accepted your offers dated March 19th and March 24th to transact 426 bitcoin at the so-called "reversal" price of approximately $5,150 per bitcoin, in exchange for $306,880 USD with $1,968,120 of indebtedness.

On April 27, 2020, George J. Gerro tendered the requisite funds to achieve a 60% loan to value ratio, using the formula which you provided. As the *quid pro quo* has been tendered, your refusal to abide by this binding agreement constitutes a bad faith material breach of contract.

We intend to pursue this matter through arbitration and exhaust all remedies in law and equity, including damages, attorney fees, and costs. We are optimistic that upon concluding the requisite discovery in this matter that it will be apparent that your company will not have sustained a loss.

We are yielding an opportunity for your company to ethically honor your offer which is now contractually and legally binding. Moreover, it is the right thing to do for a reputable company.

Your affirmative response to acknowledge this binding acceptance is required by Wednesday, April 29th, 2020, 5pm EST.

Please govern yourselves accordingly.

John M. Gerro

103

# ATTACHMENT "23"

# ATTACHMENT "23"

# ATTACHMENT "23"

**M Gmail**

George Gerro <georgejgerro@gmail.com>

## Breach of Contract

George Gerro <georgejgerro@gmail.com>                                    Thu, Apr 30, 2020 at 4:52 PM
To: John Gerro <john@gerrolaw.com>
Cc: Flori Marquez <flori@blockfi.com>, Zac@blockfi.com, Jake Gargiulo <jake@blockfi.com>, Support@blockfi.com

Hello all,

We have not received any response from Blockfi.  Accordingly, we have Demanded
Arbitration.  American Arbitration Association Case no: 01-20-0005-1173.  Find
attached the Demand for Arbitration.

On Mon, Apr 27, 2020 at 8:11 PM John Gerro <john@gerrolaw.com> wrote:


**JOHN M. GERRO**
ATTORNEY AT LAW

_____

530 S. Glenoaks Blvd., Suite 200
Burbank, California 91502

Email: John@GerroLaw.com
Office: (818)840-0000
Fax: (818)840-8111

**CONFIDENTIALITY NOTICE:** This e-mail transmission, and any documents, files or previous e-mail messages
attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or if
you are not responsible for delivering it to the intended recipient, you are notified that any disclosure, copying,
distribution or use of any of the information contained in or attached to this transmission is strictly prohibited.


📄 Commercial_Demand_for_Arbitration Gerro v. Blockfi Lending et al..pdf
235K

ATTACHMENT "24"

ATTACHMENT "24"

ATTACHMENT "24"



AMERICAN
ARBITRATION
ASSOCIATION˙

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION˙

1101 Laurel Oak Road
Voorhees, NJ 08043

May 4, 2020

Matthew Young
Blockfi
150 Broadway 19th Floor
New York, NY 10038
Via Email to: matthew@blockfi.com

**Case Number: 01-20-0005-1173**

George Gerro
-vs-
Blockfi Lending LLC; Blockfi Trading LLC;
Blockfi, Inc.

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has
determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules
("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

We note that the contract references the Commercial Arbitration Rules. According to R-1* of the Commercial
Arbitration Rules, the AAA applies the Consumer Arbitration Rules to disputes arising out of consumer
arbitration agreements.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are
obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the
Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due
process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's
review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the
contract is legally enforceable.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will
review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250,
payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry**
at https://www.adr.org/Consumer at which time the business will also incur a $500 Registry fee. Once the
business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each
consumer case filed.

We note that the arbitration provision has a material or substantial deviation from the Consumer Rules and/or
Protocol. Specifically, the provision states:

> *Any arbitration shall be held in New York County, NY.*

The above provision violates Principle 7: Reasonably Convenient Location. If a party believes that there are
additional conflicts with the Protocol and/or Consumer Rules, those issues may be brought before the arbitrator
once one has been appointed.

107

However, so that we may commence administration of this matter, **we are requesting that the business waive the above provision(s) and agree to have this matter and any future consumer arbitrations filed under this agreement administered under the Consumer Rules and in compliance with the Protocol.** Please confirm your agreement to waive the above-quoted provision by signing and dating below and returning a copy of this letter. Absent receipt of the requested waiver, the AAA will decline to administer this dispute and possibly any future consumer arbitrations involving this business. Please note that pursuant to the R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. In addition, Rule R-9 states either party may choose to take the claim to small claims court if the claim is within the jurisdiction of that court.

_____          _____
Business (authorized representative)                      Date

Under California law (the Ethics Standards for Neutral Arbitrators in Contractual Arbitration), upon the appointment of an arbitrator in consumer arbitrations, the AAA is required to disclose certain information regarding cases we have administered. Also, pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, consumer arbitrations.

The AAA relies on the information provided by the parties to fulfill its obligations under California law. Therefore, we ask that you take the time to review party names in the case caption (located under the case number at the top of this letter) and immediately advise me if any changes need to be made.

Pursuant to section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs. This waiver of fees does not include arbitrator fees and compensation. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. A consumer meeting these requirements must submit to the AAA a declaration under of oath regarding monthly income and the number of persons in the consumer's household. Please email me if you have any questions regarding the waiver of administrative fees.

California law (Code of Civil Procedure section 1284.3(a)) prohibits the AAA from administering consumer-related arbitrations if the agreement requires that the consumer party pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $300. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, the **business is requested to submit filing fees of $300, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500, totaling $3,050.**

**Please note payment should be submitted by credit card or electronic check. Please confirm the email address AAA may send a secured paylink with instructions to submit payment via either method.** In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

**Payment is due on May 18, 2020. As this arbitration is subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received by June 17, 2020 or the AAA will close the parties' case. The AAA will not grant any extensions to this payment deadline.**

The requested payment and waiver should be received no later than May 18, 2020 and the AAA may decline

to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Thank you for your attention to this matter. If you have any questions please feel free to contact us.

Sincerely,
Consumer Filing
Direct Dial: (877)495-4185
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

cc:    John M. Gerro, Esq.
       Law Offices of John M. Gerro
       530 South Glenoaks Boulevard
       Suite 200
       Burbank, CA 91502
       Via Email to: john@gerrolaw.com

# ATTACHMENT "25"

# ATTACHMENT "25"

# ATTACHMENT "25"

# haynes*boone*

Jonathan D. Pressment, Esq.
Direct Phone Number: 212-918-8961
Direct Fax Number: 212-884-9561
*jonathan.pressment@haynesboone.com*

May 7, 2020

*By Electronic Mail* (John@GerroLaw.com)

John M. Gerro, Esq.
530 South Glenoaks Boulevard
Suite 200
Burbank, California 91502

*Re:* **George J. Gerro Demand For Arbitration Dated April 30, 2020**

Dear Mr. Gerro,

This firm represents BlockFi Lending LLC ("BlockFi") in connection with the above-referenced matter. I write to respond to your April 27, 2020 letter to members of BlockFi's senior management regarding your client, George J. Gerro's ("Mr. Gerro"), claims that BlockFi breached an alleged contract in connection with its liquidation of Mr. Gerro's BlockFi account on or about March 12, 2020 (the "Dispute"). For the reasons set forth below, Mr. Gerro's claims are entirely without merit.

## A.   The Relevant Terms Of The Loan Agreement.

### 1.   *The Loan.*

The terms governing Mr. Gerro's BlockFi account are set forth in a Loan and Security Agreement, No. 41725c18, dated February 11, 2020 (the "Loan Agreement") executed by and between Mr. Gerro and BlockFi. Pursuant to the terms of the Loan Agreement, BlockFi agreed to lend Mr. Gerro a total of $2,275,000.00 at an annual interest rate of 9.75% (the "Loan") and Mr. Gerro agreed to repay the principal balance of the Loan and any unpaid accrued interest thereon by February 12, 2021. (*See* Loan Agreement, §§ 1, 3-3(a).) Although your April 27 letter makes no mention of the Loan Agreement, a review of its relevant terms demonstrates that they are fatal to your client's claims.

### 2.   *BlockFi's Rights To The Collateral.*

Under Section 5 of the Loan Agreement, Mr. Gerro pledged, assigned, transferred and delivered to BlockFi "a continuing and unconditional first priority security interest in all of [Mr. Gerro's] present and future rights, title and interest" in 441.85 BTC held in BlockFi's depository account at Gemini Trust Company (the "Depository Account") as Collateral for the Loan as well as, among other things, "all cryptocurrency now or in the future held in, on deposit in or otherwise allocated

Haynes and Boone, LLP
Attorneys and Counselors
30 Rockefeller Plaza
26th Floor
New York, New York 10112
T (212) 659-7300
F (212) 918-8989
www.haynesboone.com

111

*haynesboone*

to the Depository Account after the date [of the Loan Agreement]" (collectively, the "Collateral"). (Loan Agreement, §§5(a)(i)-(ii); 5(a)(iii).).  Importantly, under Section 5(c) of the Loan Agreement, Mr. Gerro agreed "that [BlockFi] has the rights stated in this [Loan Agreement] with respect to the Collateral, in addition to all other rights which [BlockFi] may have by law." (Loan Agreement, § 5(c).)

**3.** *The Required Loan To Value Ratio.*

Pursuant to Section 6 of the Loan Agreement, Mr. Gerro represented, warranted and covenanted that the principal balance of the Loan would never exceed 70% of the market value of the Loan as follows:

> 6.  **Borrower's Representations, Warranties and Covenants.** To induce Lender to enter into this Agreement and to make the Loan, Borrower hereby makes the following representations, warranties and covenants to Lender:
>
> (a)  With respect to the Collateral, Borrower, will, at all times, maintain a loan to value ratio where the outstanding principal balance of the Loan is less than or equal to seventy percent (70%) of the market value of the Collateral in the Depository Account calculated as either (i) the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (ii) the market value determined by Lender in its reasonable discretion (the "Required Loan to Value Ratio").

(Loan Agreement, § 6-6(a).)

Section 7 of the Loan Agreement defines the market value of the Collateral as follows:

> 7.  **Valuation; Additional Collateral.** At any time, the market value of the Collateral in the Depository Account shall be either (a) the product of amount of Collateral times the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (b) the market value determined by Lender in its reasonable discretion (the **"Collateral Market Value"**).  Borrower agrees that for purposes of calculating the Collateral Market Value Lender may take into account or disregard, at its sole discretion, the value of any new cryptocurrency held in the Depository Account created as the result of a forking or similar event that occurs after the date of this Agreement.

(Loan Agreement, § 7.)

2

112

# haynes*boone*

**4.    *BlockFi's Right To Liquidate Collateral***

The Loan Agreement contemplates the possibility that the value of the Collateral might fall below the Required Loan to Value Ratio and defines such potential occurrence as a Trigger Event as follows:

> For purposes of this <u>Section 7</u>, (i) a "Trigger Event" means an event where Lender becomes aware that Borrower has failed to maintain the Required Loan to Value Ratio and the outstanding principal balance of the Loan is greater than seventy percent (70%) of the Collateral Market Value (the "**Maximum Loan to Value Ratio**"), and (ii) "**notice is provided**" at the earliest of (x) the time Lender transits an electronic communication to the Borrower of such Trigger Event, (y) the following day if sent by UPS, FedEx or other express mail overnight delivery, or (z) four (4) days from the date posted if sent by U.S. Mail, all in accordance with the Notices provisions of <u>Section 25</u> hereof.

(Loan Agreement, § 7(a).)

Importantly, Section 7(a) of the Loan Agreement permits BlockFi to immediately liquidate Mr. Gerro's Collateral "if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty percent (80%) of the Collateral Market Value" as follows:

> (a) Upon notice by Lender to Borrower of the occurrence of a Trigger Event . . . Borrower shall promptly, and in no case later than seventy-two (72) hours after notice is provided, deposit additional Collateral into the Depository Account in such amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than fifty percent (50.0%) of the Collateral Market Value, *provided that if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty percent (80.0%) of the Collateral Market Value (the "Accelerated Maximum Loan to Value Ratio"), Lender has the right to immediately liquidate Collateral in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than seventy percent (70.0%) of the Collateral Market Value.* Any Collateral liquidated by Lender is subject to a 3% processing fee. Any additional Collateral posted by Borrower pursuant to this Section 7 must be based in the same kind of cryptocurrency as the original Collateral.

(Loan Agreement, § 7(a)) (emphasis added.)

3

**113**

# haynesboone

*5.    Additional Relevant Provisions.*

The Loan Agreement makes clear that the security interest in the Collateral granted to BlockFi is absolute and unconditional as follows:

> 13. **Security Interest Absolute.**  To the extent permitted by law, Borrower hereby waives demand, notice protest, notice of acceptance of this Agreement, Collateral received or delivered and all other demands and notices of any description.  To the extent permitted by law, all rights of Lender and liens and security interests hereunder, and all Indebtedness of Borrower hereunder, shall be absolute and unconditional irrespective of:
>
> \*                          \*                          \*
>
> (c)  any taking, exchange, substitution, release, impairment or non-perfection of any Collateral or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty for all or any of the Indebtedness;
>
> (d)  any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Indebtedness;
>
> \*                          \*                          \*
>
> (f)  any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, Borrower against Lender; or

(Loan Agreement, § 13.)

The Loan Agreement contains a binding merger and integration provision as well as a "no oral modification" clause which demonstrate that the Loan Agreement and its Related Documents[1] "constitute the entire agreement among the parties relating to the subject matter" of the Loan Agreement and confirm that "[n]o alteration, amendment, modification, termination, discharge or waiver of any provision of the [Loan Agreement] or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by the party or parties sought to be charged or bound . . . ." (*See* Loan Agreement, §§ 22, 29.)  Finally, the terms of the Loan Agreement are governed by Delaware Law. (*Id.*, § 31.)

---

[1]    The Loan Agreement defines the term "Related Documents" to mean "This [Loan] Agreement and such other agreements, certificates, instruments, guaranties, authorizations or other documents executed to further, permit, effect or promote any purpose set forth in this [Loan] Agreement, as such may be amended, restated, supplemented or otherwise modified from time to time..." (Loan Agreement, § 2.)

4

haynes*boone*

**B.**    **The Facts Underlying The Dispute At Issue.**

*1.*    *The Value Of Mr. Gerro's Collateral Dropped Below The Required Levels.*

The facts underlying the Dispute are well-documented. Pursuant to Section 5 of his Loan Agreement, Mr. Gerro pledged, assigned, transferred and delivered to BlockFi "a continuing and unconditional first priority security interest in all of [Mr. Gerro's] present and future rights, title and interest" in 441.85 BTC held in BlockFi's depository account at Gemini Trust Company" as Collateral for the Loan. (Loan Agreement, §§5(a)(i)-(ii); 5(a)(iii))

The Collateral was subject to all of BlockFi's relevant rights under the Loan Agreement including, but not limited to, BlockFi's right to "immediately liquidate [the] Collateral" if the outstanding principal balance of the Loan becomes equal to or greater than eighty percent (80.0%) of the Collateral Market Value in which case BlockFi could liquidate the Collateral in such an amount as is necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than seventy percent (70.0%) of the Collateral Market Value. (Loan Agreement, § 7(a).)

On March 9, 2020, BlockFi sent a written alert (the "LTV Alert") to Mr. Gerro advising that "the price of the collateral for [his] BlockFi Loan has dropped" and providing him with "the option to post additional collateral to bring [his] loan's LTV down." Mr. Gerro failed to respond to the LTV Alert or take any action to address the decrease in the value of his Collateral and deterioration of his LTV ratio.

Subsequently, on March 12, 2020, BlockFi sent a written trigger alert (the "Trigger Alert") to Mr. Gerro advising that "the price of [his] collateral has dropped more since we last notified you and has now activated [his] first trigger." Mr. Gerro was expressly advised that he had "72 hours to post additional collateral and bring [his] LTV back to a healthy ratio." Mr. Gerro was further advised that if BlockFi did not hear from him or receive additional collateral within 72 hours, it would "sell enough of [his] collateral to bring [him] back down to a 50% LTV." Finally, and perhaps most importantly, Mr. Gerro was advised that "[i]f during the 72 hour window, the price of the collateral continues to fall to $6,437 [he] will reach the Accelerated Maximum Loan to Value Ratio. BlockFi will then automatically sell a portion of [his] collateral to bring [his] loan back to a 70% LTV." In response to the Trigger Alert, Mr. Gerro once again took no action.

*2.*    *BlockFi Properly Exercised Its Rights To Immediately Liquidate Mr. Gerro's Collateral.*

Absent any action by Mr. Gerro and with the price of his Collateral continuing to drop, BlockFi sent a second alert to Mr. Gerro on March 12, 2020 (the "LTV Max Alert") advising him that "the price of [his] collateral has dropped more since we last notified you and has now activated the second trigger" and that, in accordance with the terms of his Loan, BlockFi was "immediately initiating a sale of collateral to bring [his] loan back down to a 70% LTV ratio." Mr. Gerro was also put on notice of his ability to bring the LTV of his Loan back down to the permitted 50% LTV

5

haynes*boone*

rate through either the posting of additional collateral or by paying down the balance of the principal amount of his Loan.

Once again, Mr. Gerro failed to communicate with BlockFi or provide any timely response to BlockFi's LTV Max Alert. Accordingly, pursuant to the terms of the Loan Agreement and just as BlockFi advised Mr. Gerro it would do in the LTV Max Alert, on March 12, 2020 BlockFi initiated sales of Mr. Gerro's Collateral in the aggregate amount of 398.6273 BTC for a sum of $2,134,280.07 in order to bring the Loan back down to a 70% LTV ratio. BlockFi's action in this regard was in full compliance with the terms of Mr. Gerro's Loan Agreement and, specifically, Section 7(a) of the Loan Agreement.

Following the sale of his Collateral on March 12, 2020, Mr. Gerro *finally* contacted BlockFi by email on March 13, 2020. Rather than take issue with the liquidation, Mr. Gerro thanked BlockFi for the update, asked that it disregard "any previous request for a return of remaining collateral" and stated that he "appreciate[d] that I have an opportunity to remain a client of BlockFi."

*3.    Mr. Gerro's Belated -- And Unavailing -- Attempt To Address The Collateral Deficit.*

Mr. Gerro contacted BlockFi for a second time by email on the night of March 13, 2020 to inquire about the specifics of BlockFi's sale of his Collateral. BlockFi responded to Mr. Gerro the very next morning and offered to see if it could assist Mr. Gerro (the "March 14 Email"). At no time did BlockFi commit to taking any additional action with respect to Mr. Gerro's Collateral in response to Mr. Gerro's inquiry -- nor was BlockFi required to do so under the terms of the Loan Agreement.

In response to the March 14 Email, Mr. Gerro replied that he was, once again, "appreciative of [BlockFi's Co-Founder, Flori Marquez] and [her] team (especially Jake)" and asserted that "[a]ll of my experiences with Blockfi have been positive and meaningful." Then, on March 15, 2020, Mr. Gerro contacted Ms. Marquez again to advise, absent any detail (or even alluding to the subject matter) that he had "an idea." In response Ms. Marquez asked that Mr. Gerro share any thoughts by email. Over the next few days, the parties traded emails regarding Mr. Gerro's desire to obtain additional credit from BlockFi without any commitment on the part of Mr. Gerro to post sufficient collateral.

In the course of these discussions, on March 17, 2020, Mr. Gerro contacted BlockFi by email to request that a portion of his Collateral be sold in order to repay his Loan in full. BlockFi complied with Mr. Gerro's request by liquidating the aggregate amount of 27.4469 BTC for a sum of $140,720.14 and applied the proceeds from such sale against the remaining balance of his Loan. Following the repayment of his Loan in full pursuant to the liquidation, Mr. Gerro's remaining BTC Collateral was returned to his control.

Thereafter, on March 19, 2020, BlockFi's Head of Client Service, Jake Gargiulo, contacted Mr. Gerro "to provide the full breakdowns for [him] in terms of options available to reinstate some of [his loan/collateral]." Five days later, on March 24, 2020, BlockFi responded to Mr. Gerro's

6

# haynes*boone*

request for "the formula for calculating the USD principal pay-down" by email with an "Example" formula (the "March 24 Email"). At no time did BlockFi offer to extend an additional loan to Mr. Gerro, reverse the sale of his Collateral, or reinstate the principal balance of his prior Loan.

Mr. Gerro never responded to BlockFi's March 24 Email. Instead, he failed to communicate with BlockFi or take any action in connection with his prior Loan or BlockFi's sale of his Collateral for more than a month. In fact, by the time Mr. Gerro finally reached out to BlockFi by email on April 27, 2020, nearly two months had passed since BlockFi liquidated his Collateral in compliance with the Loan Agreement. Despite the passage of time – amazingly – Mr. Gerro advised that he wished to "accept BlockFi's offer to reverse my collateral sales." However, Mr. Gerro's email was wrong on at least two counts. *First*, BlockFi never offered to "reverse" Mr. Gerro's collateral sales or extended any "offer" to Mr. Gerro at all. *Second*, BlockFi had no ability – and certainly no obligation (contractual or otherwise) – to reverse the sale of Mr. Gerro's Collateral.

Mr. Gerro's arguments in subsequent emails sent to BlockFi refuse to acknowledge the terms to which he willingly agreed under his Loan Agreement and the substance of his communications with BlockFi to date.

## C.    Mr. Gerro's Attempt To Arbitrate The Dispute.

Despite the foregoing facts, Mr. Gerro apparently refuses to acknowledge the failings of his position. Instead, he has apparently chosen to pursue arbitration. However, Mr. Gerro's position is both procedurally and substantively flawed.

As an initial matter, Mr. Gerro is not entitled to arbitrate his Dispute. Section 10 of the Loan Agreement clearly states that the arbitration provision of Appendix A only applies if the loan "is made to a business domiciled in the U.S. or Canada[.]" (Loan Agreement, § 10.) Accordingly, Mr. Gerro is not entitled to pursue arbitration at all. Instead, Mr. Gerro's desire to pursue litigation is governed by Section 31 of the Loan Agreement which provides that, "[a]ny suit, action or proceeding arising [under the Loan" be brought "in any court sitting in New Castle County, Delaware." (*Id.*, § 31.)

Moreover, regardless of the forum, Mr. Gerro's claims lack merit. As detailed herein, Mr. Gerro is not entitled to the relief he seeks. BlockFi was fully entitled to liquidate Mr. Gerro's Collateral in accordance with Section 7(a) of the Loan Agreement and Mr. Gerro is not – and never was – entitled to the reversal of that liquidation or any reinstatement of his principal balance. Period – end.

The Loan Agreement is clear – "[n]o alteration, amendment, modification, termination, discharge or waiver of any provision of this Agreement or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration, amendment, modification, termination, discharge or waiver." (Loan Agreement, § 29.) No such amendment was ever agreed to – much less, executed by the parties. Accordingly, Mr. Gerro's claims are doomed to fail.

7

# haynes*boone*

**D.**    **Conclusion**

We hope that this will bring a conclusion to this matter. However, should Mr. Gerro choose to proceed with his frivolous claims, BlockFi reserves any and all rights to respond accordingly -- including the right to assert claims for damages and sanctions including, but not limited to, the costs, expenses and legal fees associated with BlockFi's enforcement of its rights under the Loan Agreement.

Very truly yours,

Jonathan D. Pressment

8

118

# ATTACHMENT "26"

# ATTACHMENT "26"

# ATTACHMENT "26"

**GEORGE J. GERRO**
THE LAW OFFICES OF GERRO & GERRO
ATTORNEYS AT LAW
530 S. GLENOAKS BOULEVARD, SUITE 200
BURBANK, CA 91502
TELEPHONE: (818) 840-0000

May 9, 2020

*Via email only to ConsumerFiling@adr.org*
*Jonathan.Pressment@HaynesBoone.com*
*John@GerroLaw.com*

Consumer Filing
American Arbitration Association
1101 Laurel Oak Road
Voorhees, NJ 08043

Re:    Gerro v. Blockfi Lending LLC, et al., AAA Case No. 01-20-0005-1173

To Consumer Filing:

I appreciate the time and attention that the Association dedicates to the furtherance of justice.

Be advised that Blockfi Lending LLC waived its right to arbitrate on May 7, 2020, by the following language:

> As an initial matter, Mr. Gerro is not entitled to arbitrate his Dispute. Section 10 of the [February 11, 2020] Loan Agreement clearly states that the arbitration provision of Appendix A only applies if the loan "is made to a business domiciled in the U.S. or Canada[.]" (Loan Agreement, § 10.) Accordingly, Mr. Gerro is not entitled to pursue arbitration at all. Instead, Mr. Gerro's desire to pursue litigation is governed by Section 31 of the Loan Agreement which provides that, "[a]ny suit, action or proceeding arising [under the Loan" be brought "in any court sitting in New Castle County, Delaware." (Id., § 31.)

(Letter from from Jonathan Pressment, Esq., Law Firm of Haynes and Boone, LLP, Attorney for Blockfi Lending LLC, to John M. Gerro, Esq., Attorney for Claimant, p.7)

Being fully aware of my rights, I hereby withdraw my Demand for Arbitration without prejudice.

Respectfully,

*George Gerro*

George J. Gerro, Esq., Claimant

Cc:

Jonathan Pressment
Haynes and Boone, LLP
30 Rockerfeller Plaza
26ᵗʰ Floor
New York, NY 10112
Jonathan.Pressment@HaynesBoone.com

120

# ATTACHMENT "27"

# ATTACHMENT "27"

# ATTACHMENT "27"

Electronically FILED by Superior Court of California, County of Los Angeles on 05/13/2020 08:45 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Scott,Deputy Clerk

John M. Gerro (SBN 85900)
George J. Gerro (SBN 325 168)
Law Offices of Gerro & Gerro
530 S. Glenoaks Blvd. Suite 200
Burbank, CA 91502
Telephone: (818) 840-0000

Attorney for Plaintiff
George J. Gerro, Esq.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| GEORGE J. GERRO, an individual<br><br>Plaintiff,<br><br>vs.<br><br>BLOCKFI LENDING LLC,<br>a Delaware Limited Liability Company;<br>SCRATCH SERVICES, LLC,<br>a Delaware Limited Liability Company;<br>and DOES 1-100<br><br>Defendants. | Case No. 20 BBCV00308<br><br>FIRST AMENDED COMPLAINT<br>[Cal. Code Civ. Proc. § 472]<br><br>1) *BILL QUIA TIMET* [CAL. CIV. § 3412]<br>2) DETERMINATION OF ADVERSE<br>   CLAIMS [CAL. CIV. PROC. § 1050]<br>3) NEGLIGENCE<br>4) CAL. COM. CODE § 9207(b)(4)<br>5) CAL. COM. CODE § 9207(c)<br>6) CAL. COM. CODE § 9610(b)<br>7) CAL. COM. CODE § 9620 (a)<br>8) CAL. COM. CODE § 9620 (g)<br>9) CAL. COM. CODE § 1309<br>10) CONVERSION<br>11) TRESPASS TO CHATTELS<br>12) QUANTUM VALEBANT<br>13) MONEY HAD AND RECEIVED<br>14) BREACH OF CONTRACT<br><br>*Assigned to the Hon. Judge William D. Stewart*<br>*Department A, 300 E. Olive, Burbank, CA 91502*<br>*Case Management Conference:*<br>*Dept. A, Sept. 30, 2020, 8:30 am* |

GEORGE J. GERRO, on behalf of himself, and by and through his attorney, alleges as follows:

1

COMPLAINT FOR BREACH OF CONTRACT

**THE PARTIES**

Defendant: Blockfi Lending LLC

1.      Defendant, BLOCKFI LENDING LLC ("Blockfi") is a limited liability company formed under the laws of Delaware, with its principal place of business at 150 Broadway, 19th Floor, New York, NY, 10038. The California Secretary of State granted permission for Defendant to conduct business as a foreign entity within the State of California, as entity number 20 1803110036. Since August 16, 2018, Defendant has been licensed by the California Department of Business Oversight, license number 60DBO-81955. On information and belief, Blockfi holds no other licenses from the State of California, or its political subdivisions thereof.

2      Blockfi's well-defined business consists of lending money for interest. Blockfi routinely receives personal property to secure repayment of its loans. Blockfi, as Pledgee, takes possession of personal property from borrowers, or Pledgors. Pledged property consists primarily of "crypto-currencies" (also known as "digital currencies," or "virtual currencies.")

3.      "Crypto-currencies" are personal property, which may be possessed, transferred, and controlled by anyone who possesses the signatory "private keys." According to Blockfi's website, "By using your crypto[-currency] as collateral, you can unlock up to 50% of the value of your assets in USD [United States Dollars]." (Blockfi.com, accessed on May 13, 2020 )  For example, for every $1 that Blockfi lends, Blockfi takes possession of $2 worth of pledged property.

4.      Blockfi also lends crypto-currencies to institutional investors, who pledge crypto-currencies which are dollar-denominated (known as "stable coins") as collateral. Blockfi accepts possession of the pledgors' crypto-currencies for the entire duration of Blockfi's loan.

5.      From origination, before any defaults, Blockfi takes possession of the pledged property. Blockfi commingles pledged property, and loans out the pledged property. If the pledged property earns interest, Blockfi retains all interest earned from pledged property. Blockfi does not apply proceeds from pledged property to loan balances. Blockfi does not hold the proceeds as additional security. Blockfi does not account for profits from pledged property.

6.    Since Blockfi lends out pledged property, Blockfi uses over-collateralized loans to increase its outstanding loan balances.  Every loan increases Blockfi's potential leverage.

7.    If exchange prices of pledged property temporarily decline, then Blockfi may sell pledged property.  If exchange prices decline fast, then Blockfi forecloses fast.

8.    This lending operation constitutes a well-established aspect of Blockfi's business.  On information and belief, Blockfi does not obtain Pawnbroker licenses as required by statute. (CAL. FIN. CODE § 21000, *et seq.*).

<u>Defendant: Scratch Services, LLC</u>

9.    Defendant, SCRATCH SERVICES, LLC ("Scratch"), is formed under the laws of the State of Delaware, with a principal place of business at 375 Alabama St., Unit 360, San Francisco, California 94110  Scratch provides payment processing services, enabling borrowers to pay lenders.

10    Scratch will accept loan payments through ACH (Automated Clearing House) transfers.  Borrowers pay principal and interest to Scratch, directly.  Scratch provides loan services for many different types of loans.  Blockfi utilizes Scratch as a loan servicer for its loans, and directs borrowers to use the Scratch website's payment portal.

<u>Plaintiff: George J. Gerro</u>

11.    Plaintiff, GEORGE J. GERRO ("Gerro") works and lives in the City of Burbank, in the County of Los Angeles, and State of California.  At all relevant times, Plaintiff was accepting written contracts, transferring pledged property, receiving loan funds, making loan payments, communicating, and suffering injuries from his domicile.  Gerro borrows and invests for personal purposes.

<u>Defendants: Does 1-100</u>

12.    Plaintiff does not know the true names and capacities of defendants sued in this Complaint as Doe 1 through Doe 100, inclusive, and therefore sues these defendants by fictitious names under Section 474 of the California Code of Civil Procedure. Plaintiff will amend this Complaint to allege the true names and capacities of Doe 1 through Doe 100, inclusive, when ascertained. Plaintiff is informed and believes, and on that basis alleges, that

3

COMPLAINT FOR BREACH OF CONTRACT

1  each of the defendants named herein as Doe 1 through Doe 100 , inclusive, is responsible in

2  some manner for the occurrence, injury, and other damages alleged in this Complaint.

3  <u>**JURISDICTION AND VENUE**</u>

4  13.   Jurisdiction is proper in the Los Angeles Superior Court because it has general

5  subject matter jurisdiction and no statutory exceptions to jurisdiction exist.

6  14.   This Court has personal jurisdiction over Defendants since they have consented

7  to jurisdiction in the State of California, solicited business from consumers known to reside in

8  California, purposefully availed themselves of California Law, entered into contracts accepted

9  in California, and have minimum contacts with the State of California. (*See* CAL. CIV. PROC.

10  CODE § 410 10).

11  15.   Venue is proper in this Court pursuant to CAL. CIV. PROC. CODE § 395(a) because

12  the contracts at issue, even if void, were accepted by Plaintiff's "last act" in Los Angeles

13  County, and Plaintiff's obligation was performed in Los Angeles County.  (3 Witkin, Cal. Proc.

14  5th Actions § 835 (2020) (Cal. Civ. Proc. § 395(a) encompasses actions for "restitution after

15  rescission of a contract").  Plaintiff resides in the County of Los Angeles, and Plaintiff has

16  chosen the Los Angeles Superior Court as the presumptively proper venue.

17

18  **FACTUAL ALLEGATIONS**

19

20  16.   On September 6, 2019, Plaintiff and Blockfi's entered into a loan agreement

21  ("First Pawn") whereby Blockfi lent Plaintiff money, and Plaintiff pledged bitcoin to Blockfi.

22  17.   The three Blockfi's electronic Agreements at issue contain similar provisions:

23  (A) Principal due in one (1) year.

24  (B) Interest-only monthly payments

25  (C) Interest rates from 9.75% to 11.25%.

26  (D) No prepayment penalties or lock-in provisions.

27  (E) Borrower pledges property worth 200% of the loan principal amount.

28

4

COMPLAINT FOR BREACH OF CONTRACT

(F)  Delaware choice of law and permissive forum selection clauses.

(G)  Security interest in the pledged property.

(H)  Margin calls if the pledged property declines in value.

(I)  Liquidations of pledged property if prices decline further.

(J)  Blockfi may re-pledge (or "rehypothecate") the pledged property.

(K)  Pre-signed by Blockfi's representative, and "Docusigned" by the pledgor.

18.    On September 24, 2019, Blockfi originated another loan to Plaintiff ("Second Pawn") on substantially similar terms as the first. Plaintiff pledged bitcoin to Blockfi, and commenced paying interest at a rate of 11.25%.

19.    On October 10, 2019, Plaintiff pledged additional collateral for the First Pawn.

20.    On February 12, 2020, Blockfi refinanced both loans, and consolidated them into a third loan to Plaintiff ("Third Pawn").  Plaintiff's pledged property from the First and Second Pawns constituted the pledged property for the Third Pawn.

21.    At all relevant times, Plaintiff made timely interest payments, in full, on all loans to Scratch. Scratch administered all payments for the First, Second, and Third Pawns.

22.    On information and belief, Defendants utilized Plaintiff's pledged property to earn a profit, including but not limited to, by lending out Plaintiff's property for monetary or non-monetary proceeds.

23.    Plaintiff never consented to Defendant's lending out of his pledged property.

24.    Defendants never accounted to Plaintiff for the proceeds.

25.    Defendants never held the proceeds as additional security on behalf of Plaintiff.

26.    Defendants never applied the proceeds to Plaintiff's loan balance.

27.    Defendants never remitted monetary proceeds to Plaintiff.

28.    On March 12, 2020, the Bitcoin price declined significantly for a short period of time. Blockfi claimed that they sold Plaintiff's collateral in three (3) separate sales.

29.    Defendants conducted such sales irregularly, arbitrarily, and unreasonably.

30    Defendants did not accelerate the Third Pawn's loan principal in good faith.

31.    Defendants never obtained Plaintiff's consent to sell Plaintiff's assets.

32.    Defendant's notice was unreasonable.

33.    Blockfi provided Plaintiff with inaccurate, misleading, and untimely information.

34.    On March 17, 2020, Plaintiff directed Blockfi to pay off the remaining loan balance, which was a small fraction of the original loan balance.

35.    On March 19, 2020, Defendants emailed Plaintiff a written offer for Plaintiff to re-purchase the bitcoin which was pledged for the Third Pawn.

36.    On March 24, 2020, Plaintiff informed Defendants that he was interested in accepting Defendant's offer, and was seeking financing in order to perform.

37.    On March 24, 2020, Defendant emailed Plaintiff, renewing the offer to sell bitcoin, and specifying the formula to calculate the proportion of the purchase price to be paid in cash, with the remainder of the purchase price to be seller-financed, secured by a security interest in the bitcoin, to remain in Defendant's possession as collateral until the security interest is extinguished.

38.    On April 27, 2020, Plaintiff unequivocally accepted Defendant's offer in a writing, via email, and tendered the cash portion of the purchase price.

39.    After Defendants attempted to renegotiate the contract price, Defendants repudiated their performance under the contract. Defendant offered conflicting, undisclosed, subjective reasons for breaching the contract, none of which are legally justified.

40    Plaintiff demanded that Defendant perform in accordance with the terms of the contract.

41.    Defendants failed to perform, and Plaintiff was unable to replace the pledged property on the terms offered by Defendants.

6

COMPLAINT FOR BREACH OF CONTRACT

**FIRST CAUSE OF ACTION**

(Against All Defendants)

*BILL QUIA TIMET* [CAL. CIV. § 3412]

42.    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 41 hereof, as if fully set forth herein.

43.    Blockfi is "engaged in the business of receiving goods… in pledge as security for a loan" on a routine basis with borrowers in the State of California.

44.    Blockfi knew or should have known about its violations of California's Pawnbroker Laws, licensing and regulatory regime. (CAL. FIN. CODE § 21000 , *et seq.*).

45.    Unlicensed pawning, conducted on a regular basis, is unlawful and punishable as a misdemeanor. (CAL. FIN. CODE § 21300 1).

46.    As an unlicensed pawnbroker, the First, Second, and Third Pawn agreements are void as against public policy. (*Levison v. Boas* (1907) 150 Cal. 185).

47.    Plaintiff has a reasonable apprehension that Delaware choice-of-law and forum selection clauses in the First, Second, and Third Pawn agreements may still appear to be contained in an enforceable written instrument.

48.    Defendants may attempt to be enforce the Delaware clause, causing serious damage to Plaintiff, California Consumers, and California Public Policy.

49.    Plaintiff requests that the First, Second, and Third Pawn electronic agreements, being void or voidable, are ordered to be delivered up or canceled.

**SECOND CAUSE OF ACTION**

(Against All Defendants)

DETERMINATION OF ADVERSE CLAIMS [CAL. CIV. PROC. § 1050]

50    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 42 through 49 hereof, as if fully set forth herein.

51.    Although Plaintiff transferred possession of the pledged property to Blockfi, Plaintiff retained title to the pledged property. (CAL. FIN. CODE § 21000 2).

COMPLAINT FOR BREACH OF CONTRACT

1    52.    Blockfi failed to satisfy the statutory requirements for title to transfer to it under

2    California Law. (CAL. FIN. CODE § 21201).

3    53.    Blockfi sold Plaintiff's pledged property in violation of California Law,

4    constituting a misdemeanor. (CAL. FIN. CODE § 21201(g)).

5    54.    Blockfi's did not have actual authority of Plaintiff to sell Plaintiff's property.

6    55.    Blockfi was required to provide Plaintiff with a minimum of a four (4) month

7    loan term, during which time the Plaintiff's had a statutory right of redemption. (CAL. FIN. CODE

8    § 21201(a, c)).

9    56.    Plaintiff's title to his pledged property is superior to Blockfi's adverse claim.

10    **THIRD CAUSE OF ACTION**

11    (Against Blockfi Lending LLC)

12    NEGLIGENCE

13    57.    Plaintiff incorporates by this reference each and all of the allegations contained

14    in Paragraphs 50 through 56 hereof, as if fully set forth herein.

15    58.    Blockfi owed a duty to Plaintiff to act as a reasonably prudent person would

16    under similar circumstances.

17    59.    Blockfi violated that standard of care by failing to obtain a pawnbroker license,

18    the statutory scheme of which intends to protect pledgors such as Plaintiff. (CAL. FIN. CODE

19    §§ 21301, 21307).

20    60    Blockfi's failure to act with ordinary care was a significant factor in causing

21    Plaintiff harm.

22    61.    Blockfi's failure to obtain a pawnbroker license and comply with the regulations

23    thereof was willful or grossly negligent.

24    **FOURTH CAUSE OF ACTION**

25    (Against Blockfi Lending LLC)

26    CAL. COM. CODE § 9207(b)(4)

27    62.    Plaintiff incorporates by this reference each and all of the allegations contained

28    in Paragraphs 57 through 61 hereof, as if fully set forth herein.

8

COMPLAINT FOR BREACH OF CONTRACT

63.    To the extent that Blockfi had a security interest, if any, Blockfi was governed by California's Uniform Commercial Code — Secured Transactions. (CAL. COM. CODE § 9101, *et seq.*).

64.    Pursuant to CAL. COM. CODE § 9602(1), CAL. COM. CODE § 9207(b)(4)(c) is unwaivable.

65.    CAL. COM. CODE § 9207(b)(4) provides that Blockfi cannot use consumer goods in any manner except to preserve the collateral or its value, or pursuant to court order.

66.    Blockfi used Plaintiffs collateral in a manner that is disallowed.

67.    Plaintiff's collateral constituted consumer goods within the meaning of California Law.

### FIFTH CAUSE OF ACTION

(Against Blockfi Lending LLC)

CAL. COM. CODE § 9207(c)

68.    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 62 through 67 hereof, as if fully set forth herein.

69.    To the extent that Blockfi had a security interest, if any, Blockfi was governed by California's Uniform Commercial Code — Secured Transactions. (CAL. COM. CODE § 9101, *et seq.*).

70.    CAL. COM. CODE § 9207(c) provides that proceeds from Plaintiff's pledged property must be either: held as additional security in Plaintiff's favor, if non-monetary proceeds; and applied towards Plaintiffs loan balance, or remitted to Plaintiff, if non-monetary.

71.    Blockfi failed to hold any non-monetary proceeds as additional collateral in favor of Plaintiff.

72.    Blockfi failed to reduce the loan principal, or remit to Plaintiff, any monetary proceeds from Plaintiff's collateral.

73.    Plaintiff is entitled to a proportional share of monetary and non-monetary proceeds derived by Blockfi in general, in proportion to the total amount of pledged property held by Blockfi, to the extent that the proceeds cannot be traced to Plaintiff's collateral.

COMPLAINT FOR BREACH OF CONTRACT

1    **SIXTH CAUSE OF ACTION**

2    (Against Blockfi Lending LLC)

3    CAL. COM. CODE § 9610(b)

4    74.    Plaintiff incorporates by this reference each and all of the allegations contained

5    in Paragraphs 68 through 73 hereof, as if fully set forth herein.

6    75.    Pursuant to CAL. COM. CODE § 9602(7), CAL. COM. CODE § 9610(b) is

7    unwaivable.

8    76.    According to CAL. COM. CODE § 9610(b), "Every aspect of a disposition of

9    collateral, including the method, manner, time, place, and other terms, must be commercially

10    reasonable."

11    77.    To the extent that a sale was lawful, Blockfi failed to dispose of Plaintiff's

12    property in a commercially reasonable manner.

13    **SEVENTH CAUSE OF ACTION**

14    (Against Blockfi Lending LLC)

15    CAL. COM. CODE § 9620(a)

16    78.    Plaintiff incorporates by this reference each and all of the allegations contained

17    in Paragraphs 74 through 77 hereof, as if fully set forth herein.

18    79.    Pursuant to CAL. COM. CODE § 9602(10), CAL. COM. CODE § 9620(a) is

19    unwaivable.

20    80    Defendant did not obtain consent of Plaintiff to accept his collateral in partial

21    satisfaction of Plaintiff's debt.

22    81.    Defendant provided no notification that Defendant intended to accept Plaintiff's

23    collateral in satisfaction of his obligation.

24    82.    Defendants accepted Plaintiff's collateral in satisfaction of his debt in violation

25    of California Law.

26    83.    Plaintiff would not have consented if he was aware of Defendant's arraignment.

27    84.    Plaintiff would have objected if he was provided with a notice under CAL. COM.

28    CODE § 9620(a).

10

COMPLAINT FOR BREACH OF CONTRACT

**EIGHTH CAUSE OF ACTION**

(Against Blockfi Lending LLC)

CAL. COM. CODE § 9620(g)

85.    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 78 through 84 hereof, as if fully set forth herein.

86.    Pursuant to CAL. COM. CODE § 9602(10), CAL. COM. CODE § 9620(g) is unwaivable.

87.    Defendant accepted Plaintiff's collateral in a consumer good transaction.

88.    Defendant accepted Plaintiff's collateral in three separate partial satisfactions.

**NINTH CAUSE OF ACTION**

(Against Blockfi Lending LLC)

CAL. COM. CODE § 1309

89.    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 85 through 88 hereof, as if fully set forth herein.

90    Provisions within the First, Second, and Third Pawn were "words of similar import" to an insecurity clause as contemplated by CAL. COM. CODE § 1309.

91.    Defendants did not exercise the acceleration clauses in good faith, since they believed that the price fluctuation was temporary and did not reflect the fair value of bitcoin.

92.    Defendants exercised their rights, if any, in violation of the limitations that they exercise all of their rights in good faith.

**TENTH CAUSE OF ACTION**

(Against Blockfi Lending LLC)

CONVERSION

93.    Plaintiff incorporates by this reference each and all of the allegations contained in Paragraphs 89 through 92 hereof, as if fully set forth herein.

94.    Plaintiff owned and had fee title to the pledged property.

11

COMPLAINT FOR BREACH OF CONTRACT

1     95.    Defendants interfered with Plaintiff's ownership by conveying the pledged

2 property to a third party, in violation of statutory, common law, and contractual protections of

3 Plaintiff's property.

4     96.    Defendant's interference was knowing and intentional, since they intended to

5 disown Plaintiff from his own property, by conveyance to a third party.

6     97.    Plaintiff demanded return of the property upon restoration of benefits to

7 Defendants.

8     98.    Defendant's interference caused Plaintiff injury, damage, loss and harm.

9            **ELEVENTH CAUSE OF ACTION**

10             (Against Blockfi Lending LLC)

11             TRESPASS TO CHATTELS

12     99.    Plaintiff incorporates by this reference each and all of the allegations contained

13 in Paragraphs 93 through 98 hereof, as if fully set forth herein.

14     100.    Plaintiff owned and had fee title to the pledged property.

15     101.    Defendants interfered with Plaintiff's ownership by intermeddling with his

16 property, right to redemption, and Plaintiff has been deprived of the market price appreciation

17 since the time of the intermeddling.

18     102.    Defendant acted while knowing of Plaintiff's statutory right of redemption.

19     103.    Defendant has prevented Plaintiff from access to his property in defiance of his

20 four (4) month right of redemption.

21     104.    Defendant's intermeddling caused Plaintiff injury, damage, loss and harm.

22            **TWELVTH CAUSE OF ACTION**

23             (Against Blockfi Lending LLC)

24             QUANTUM VALEBANT

25     105.    Plaintiff incorporates by this reference each and all of the allegations contained

26 in Paragraphs 99 through 104 hereof, as if fully set forth herein.

27     106.    Defendant continues to hold Plaintiff's property under color of a void contract.

28

1    107.    Plaintiff has suffered a loss, and Defendant has suffered a benefit, to the extent of

2    Plaintiff's property's market value as of trial.

3    108.    Plaintiff acted pursuant to an explicit request by Defendant to send the pledged

4    property to a source which they control.

5    109.    Defendants further benefitted from the interest on Plaintiff's assets, which

6    accrued upon the assets, resulting in net profits to Defendants.

7    110    Plaintiff and Defendant acted pursuant to an implicit understanding, in the

8    absence of a contract, that the property would be restored to Plaintiff eventually.

9    **THIRTEENTH CAUSE OF ACTION**

10    (Against Scratch Services LLC)

11    COMMON COUNT - MONEY HAD AND RECEIVED

12    111.    Plaintiff incorporates by this reference each and all of the allegations contained

13    in Paragraphs 105 through 110 hereof, as if fully set forth herein.

14    112.    Plaintiff sent interest payments to Scratch Services LLC, pursuant to a void

15    contract.

16    113.    All payments should be restored to Plaintiff, because they were sent to Defendant

17    for Plaintiff's benefit.

18    114.    Since Defendant has not returned Plaintiff's money, Defendant owes Plaintiff the

19    amount of all payments made on account of a void loan.

20    **FOURTEENTH CAUSE OF ACTION**

21    (Against All Defendants)

22    BREACH OF CONTRACT

23    115.    Plaintiff incorporates by this reference each and all of the allegations contained

24    in Paragraphs 111 through 114 hereof, as if fully set forth herein.

25    116.    Subsequent to the unlawful sales of Plaintiff's property, Defendant offered to sell

26    Plaintiff's property back to Plaintiff, to "reverse" the transactions.

27    117.    Plaintiff's electronic acceptance created a legally binding contract. (CAL. COM.

28    CODE § 2204).

13

COMPLAINT FOR BREACH OF CONTRACT

118. Plaintiff tendered performance and satisfied all conditions precedent to Defendant's performance.

119. Plaintiff justifiably relied upon Defendant's offer, thereby obtaining financing to complete the deal proposed by Defendant.

120. Plaintiff was excused from having to pay, since Defendant refused Plaintiff's tender, and expressly repudiated their obligation under the contract.

121. Plaintiff's tender would result in a loan to value ratio of no greater than 60% , as specified by Defendant.

122. Defendant failed to deliver the goods as required by the contract, and offered no legally valid excuse for non-performance.

123. Defendant repudiated the contract, and failed to perform upon Plaintiff's demand for performance.

124. Plaintiff was harmed, and was unable to cover upon similar terms.

125. Defendant's breach of contract was a substantial factor in causing Plaintiff's harm.

126. As a result of Defendant's breach of contract, Plaintiff seeks equitable relief in the form of specific performance, or in the alternative, for damages to be calculated at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff George J. Gerro prays for a judgment against Defendant Biockfi Lending LLC, and any other Defendants as follows:

1. For Cancellation of the First, Second, and Third Pawn electronic agreements in their entirety.

2. For a decree of specific delivery of the pledged property to Plaintiff, conditioned upon restoration of the benefit. (CAL. CIV. CODE § 3380).

3. For a return of $121,559.54 of interest payments plus any loan origination fees.

4. For an award of general damages for breach of contract in an amount of $1,000 ,000

14

COMPLAINT FOR BREACH OF CONTRACT

5. For all net proceeds that Defendants have earned upon the pledged property, or the proportional net proceeds from a commingled fund thereof.

6. For an accounting of all profits earned from Plaintiff's pledged property.

7. For pre-judgment interest.

8. For an award of costs and fees; and

9. For any and all other relief the Court deems just and proper.

Dated: May 13, 2020     The Law Offices of Gerro & Gerro

By: _George Gerro_

George J. Gerro
The Law Offices Of Gerro & Gerro

15

COMPLAINT FOR BREACH OF CONTRACT

# ATTACHMENT "28"

# ATTACHMENT "28"

# ATTACHMENT "28"

*California*
LEGISLATIVE INFORMATION

Code: [FIN] Section: 22750.   Search   ⓘ

Up^     << Previous     Next >>     cross-reference chaptered bills     PDF |   Add To My Favorites

Search Phrase: _____   Highlight

**FINANCIAL CODE - FIN**

**DIVISION 9. CALIFORNIA FINANCING LAW [22000 - 22780.1]** *( Heading of Division 9 amended by Stats. 2017, Ch. 475, Sec. 3. )*

**CHAPTER 4. Revocation and Penalties [22700 - 22780.1]** *( Chapter 4 added by Stats. 1994, Ch. 1115, Sec. 2. )*

**ARTICLE 2. Consumer Loan Penalties [22750 - 22758]** *( Article 2 added by Stats. 1994, Ch. 1115, Sec. 2. )*

**22750.** (a) If any amount other than, or in excess of, the charges permitted by this division is willfully charged, contracted for, or received, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction.

(b) If any provision of this division is willfully violated in the making or collection of a loan, whether by a licensee or by an unlicensed person subject to this division, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction.

*(Amended by Stats. 2013, Ch. 467, Sec. 3. (SB 318) Effective January 1, 2014.)*

 

*California*
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

Code: [COM] Section: 9201. Search ⓘ

Up^    << Previous    Next >>    cross-reference chaptered bills    PDF | Add To My Favorites

Search Phrase: _____ Highlight

**COMMERCIAL CODE - COM**

DIVISION 9. SECURED TRANSACTIONS [9101 - 9907]  *( Division 9 repealed and added by Stats. 1999, Ch. 991, Sec. 35. )*

**CHAPTER 2. Effectiveness of Security Agreement: Attachment of Security Interest: Rights of Parties to Security Agreement [9201 - 9210]**  *( Chapter 2 added by Stats. 1999, Ch. 991, Sec. 35. )*

**9201.**  (a) Except as otherwise provided in this code, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors.

(b) A transaction subject to this division is subject to any applicable rule of law which establishes a different rule for consumers; to Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code; Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code; the Retail Installment Sales Act, Chapter 1 (commencing with Section 1801) of Title 2 of Part 4 of Division 3 of the Civil Code; the Automobile Sales Finance Act, Chapter 2b (commencing with Section 2981) of Title 14 of Part 4 of Division 3 of the Civil Code; Part 4 (commencing with Section 1738) of Division 3 of the Civil Code, with respect to the applicable provisions of Titles 1 (commencing with Section 1738), 1.3 (commencing with Section 1747), 1.3A (commencing with Section 1748.10), 1.3B (commencing with Section 1748.20), 1.4 (commencing with Section 1749), 1.5 (commencing with Section 1750), 1.6 (commencing with Section 1785.1), 1.61 (commencing with Section 1785.41), 1.6A (commencing with Section 1786), 1.6B (commencing with Section 1787.1), 1.6C (commencing with Section 1788), 1.6D (commencing with Section 1789), 1.6E (commencing with Section 1789.10), 1.6F (commencing with Section 1789.30), 1.7 (commencing with Section 1790), 1.8 (commencing with Section 1798), 1.83 (commencing with Section 1799.5), 1.84 (commencing with Section 1799.8), 1.85 (commencing with Section 1799.90), 1.86 (commencing with Section 1799.200), 2 (commencing with Section 1801), 2.4 (commencing with Section 1812.50), 2.5 (commencing with Section 1812.80), 2.6 (commencing with Section 1812.100), 2.7 (commencing with Section 1812.200), 2.8 (commencing with Section 1812.300), 2.9 (commencing with Section 1812.400), 2.95 (commencing with Section 1812.600), 2.96 (commencing with Section 1812.620), 3 (commencing with Section 1813), 4 (commencing with Section 1884), and 14 (commencing with Section 2872); the Industrial Loan Law, Division 7 (commencing with Section 18000) of the Financial Code; the Pawnbroker Law, Division 8 (commencing with Section 21000) of the Financial Code; the California Financing Law, Division 9 (commencing with Section 22000) of the Financial Code; and the Mobilehomes-Manufactured Housing Act of 1980, Part 2 (commencing with Section 18000) of Division 13 of the Health and Safety Code; and to any applicable consumer protection statute, regulation, or law.

(c) In case of conflict between this division and a rule of law, statute, or regulation described in subdivision (b), the rule of law, statute, or regulation controls. Failure to comply with a statute or regulation described in subdivision (b) has only the effect the statute or regulation specifies.

(d) This division does not do either of the following:

(1) Validate any rate, charge, agreement, or practice that violates a rule of law, statute, or regulation described in subdivision (b).

(2) Extend the application of the rule of law, statute, or regulation to a transaction not otherwise subject to it.

*(Amended by Stats. 2019, Ch. 143, Sec. 20. (SB 251) Effective January 1, 2020.)*

# ATTACHMENT "29"

# ATTACHMENT "29"

# ATTACHMENT "29"

 

## California
### LEGISLATIVE INFORMATION

**COMMERCIAL CODE - COM**
   **DIVISION 9. SECURED TRANSACTIONS [9101 - 9907]** *( Division 9 repealed and added by Stats. 1999, Ch. 991, Sec. 35. )*

**CHAPTER 2. Effectiveness of Security Agreement: Attachment of Security Interest: Rights of Parties to Security Agreement [9201 - 9210]** *( Chapter 2 added by Stats. 1999, Ch. 991, Sec. 35. )*

**9207.** (a) Except as otherwise provided in subdivision (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession. In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

(b) Except as otherwise provided in subdivision (d), if a secured party has possession of collateral, all of the following apply:

(1) Reasonable expenses, including the cost of insurance and payment of taxes or other charges, incurred in the custody, preservation, use, or operation of the collateral are chargeable to the debtor and are secured by the collateral.

(2) The risk of accidental loss or damage is on the debtor to the extent of a deficiency in any effective insurance coverage.

(3) The secured party shall keep the collateral identifiable, but fungible collateral may be commingled.

(4) The secured party may use or operate the collateral for any of the following purposes:

(A) For the purpose of preserving the collateral or its value.

(B) As permitted by an order of a court having competent jurisdiction.

(C) Except in the case of consumer goods, in the manner and to the extent agreed by the debtor.

(c) Except as otherwise provided in subdivision (d), a secured party having possession of collateral or control of collateral under Section 7106, 9104, 9105, 9106, or 9107 may or shall, as the case may be, do all of the following:

(1) May hold as additional security any proceeds, except money or funds, received from the collateral.

(2) Shall apply money or funds received from the collateral to reduce the secured obligation, unless remitted to the debtor.

(3) May create a security interest in the collateral.

(d) If the secured party is a buyer of accounts, chattel paper, payment intangibles, or promissory notes or a consignor, both of the following apply:

(1) Subdivision (a) does not apply unless the secured party is entitled under an agreement to either of the following:

(A) To charge back uncollected collateral.

# *California* LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

Code: [FIN ▾]  Section: 22342.   Search  ⓘ

Up^   << Previous   Next >>   cross-reference chaptered bills   PDF | Add To My Favorites

Search Phrase: _____   Highlight

**FINANCIAL CODE - FIN**

DIVISION 9. CALIFORNIA FINANCING LAW [22000 - 22780.1]  *( Heading of Division 9 amended by Stats. 2017, Ch. 475, Sec. 3. )*

CHAPTER 2. Consumer Loans [22200 - 22470]  *( Chapter 2 added by Stats. 1994, Ch. 1115, Sec. 2. )*

ARTICLE 3. Loan Regulations [22300 - 22347]  *( Article 3 added by Stats. 1994, Ch. 1115, Sec. 2. )*

22326. No person, except as authorized by this division, shall directly or indirectly charge, contract for, or receive any interest, discount, or consideration greater than the lender would be permitted by law to charge if he or she were not a licensee hereunder, upon the loan, use, or forbearance of money, goods, or things in action, or upon the loan, use, or sale of credit. This section applies to any person, who by any device, subterfuge, or pretense charges, contracts for, or receives greater interest, consideration, or charges than is authorized by this division for any loan, use, or forbearance of money, goods, or things in action or for any loan, use, or sale of credit.

*(Added by Stats. 1994, Ch. 1115, Sec. 2. Effective January 1, 1995. Operative July 1, 1995, by Sec. 5 of Ch. 1115.)*

142

# ATTACHMENT "30"

# ATTACHMENT "30"

# ATTACHMENT "30"

Electronically FILED by Superior Court of California, County of Los Angeles on 09/09/2021 12:18 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Yanez,Deputy Clerk

1  HAYNES AND BOONE, LLP
   David Clark/Bar No. 275204
2    david.clark@haynesboone.com
   Marco Pulido/Bar No. 308074
3    marco.pulido@haynesboone.com
   600 Anton Boulevard, Suite 700
4  Costa Mesa, CA 92626
   Telephone:    (949) 202-3000
5  Facsimile:    (949) 202-3001

6  Attorneys for Real Parties in Interest
   BLOCKFI LENDING LLC, BLOCKFI
7  TRADING LLC, and BLOCKFI, INC.

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF LOS ANGELES

11

| 12 | GEORGE GERRO, | ) | CASE NO.: 21STCP02023 |
|---|---|---|---|
| 13 | Petitioner, | ) | ASSIGNED FOR ALL PURPOSES TO: |
| 14 | vs. | ) | Honorable Mary H. Strobel Department 82 |
| 15 | Cristopher S. Schultz, as Commissioner of Financial Protection and Innovation of the | ) | VERIFIED ANSWER OF REAL |
| 16 | State of California, | ) | PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING |
| 17 | Respondent. | ) | LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED |
| 18 | | ) | VERIFIED PETITION FOR WRIT OF MANDATE |
| 19 | BLOCKFI LENDING LLC, a Delaware limited liability company; BLOCKFI | ) | |
| 20 | TRADING LLC, a Delaware Limited Liability Company; and BLOCKFI, INC., a | ) | |
| 21 | Delaware Corporation | ) | Petition Filed:          6/25/21 |
| 22 | Real Party in Interest. | ) | Amended Petition Filed:  8/10/21 |

23

24

25

26

27

28

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

144

1      Real Parties in Interest BlockFi Lending LLC ("BlockFi Lending"), BlockFi Trading LLC

2    ("BlockFi Trading"), and BlockFi, Inc. (collectively, the "BlockFi Responding Parties") hereby

3    answer the First Amended Verified Petition for Writ of Mandate of Petitioner George Gerro

4    ("Gerro") as follows. The BlockFi Responding Parties answer collectively through the imputed

5    knowledge of its joint officers and employees. The BlockFi Responding Parties submit this answer

6    concurrently with the filing of a demurrer to Gerro's petition.

7                      **PARTIES**

8        1.    As to paragraph 1, the BlockFi Responding Parties are without sufficient

9    information to admit or deny whether Gerro resides (and has resided) in Los Angeles County or

10   whether Gerro is an attorney at law and on that basis denies the allegation.

11       2.    As to paragraph 2, the BlockFi Responding Parties do not dispute that Christopher

12   S. Schultz is the Acting Commissioner at the Department of Financial Protection and Innovation

13   ("DFPI"). Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny

14   the allegations in this paragraph.

15       3.    As to paragraph 3, the BlockFi Responding Parties admit that BlockFi Lending is

16   a finance lender and broker that is properly licensed by the DFPI (license number 60DBO-

17   81955) and that conducts business with California clients. The BlockFi Responding Parties

18   admit that BlockFi Lending's retail clients (including California clients) pledge cryptocurrency

19   including bitcoin to secure loans from BlockFi Lending. Except as expressly admitted or alleged

20   herein, the BlockFi Responding Parties deny denies the allegations in this paragraph.

21       4.    As to paragraph 4, the BlockFi Responding Parties admit that BlockFi, Inc.

22   wholly owns and is the sole member of BlockFi Lending. The BlockFi Responding Parties deny

23   that BlockFi, Inc. is the "alter ego" of BlockFi Lending. Except as expressly admitted or alleged

24   herein, the BlockFi Responding Parties deny the allegations in this paragraph.

25       5.    As to paragraph 5, the BlockFi Responding Parties admit that BlockFi Trading

26   LLC ("BlockFi Trading") is a wholly owned subsidiary of BlockFi, Inc. Except as expressly

27   admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

28   paragraph.

1

---

1       6.    As to paragraph 6, the BlockFi Responding Parties admit that BlockFi Lending,

2   BlockFi, Inc., and BlockFi Trading LLC have registered addresses at 155 2nd St, Suite 112,

3   Jersey City, NJ 07302 as of 5/31/2021.

4                       **GENERAL ALLEGATIONS**

5       7.    As to paragraph 7, the BlockFi Responding Parties admit that bitcoin is a fungible

6   asset that can be possessed.  Gerro's allegation regarding "actual, constructive, or exclusive"

7   possession is vague, and the BlockFi Lending parties do not have sufficient information to admit

8   or deny the allegation and on that basis deny the allegation. The BlockFi Responding Parties allege

9   that bitcoin is intangible. Except as expressly admitted or alleged herein, the BlockFi Responding

10   Parties deny the allegations in this paragraph.

11       8.    As to paragraph 8, Gerro's allegation that "[o]n the Bitcoin Network, no entity is

12   able to unilaterally reverse a Bitcoin transaction" includes an undefined term, is vague, and is

13   incomprehensible, and on that basis the BlockFi Responding Parties deny the allegation. Except

14   as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

15   this paragraph.

16       9.    As to paragraph 9, Gerro's allegation that "[i]f the private key (i.e. password) to

17   Bitcoin is lost, copied, or stolen, then the corresponding Bitcoin may be permanently lost,

18   transferred, or stolen" lacks context, is incomprehensible, and consists of an incomplete

19   hypothetical, and on that basis the BlockFi Responding Parties deny the allegation. Except as

20   expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

21   paragraph.

22       10.    As to paragraph 10, Gerro's allegation that "By March 31, 2021, BlockFi had taken

23   possession of Bitcoin, and other digital goods, belonging to others, including California residents,

24   businesses, and entities, with a market value of about $15 billion" lacks context and is

25   incomprehensible, and on that basis the BlockFi Responding Parties deny the allegation. Except

26   as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

27   this paragraph.

28       11.    As to paragraph 11, the BlockFi Responding Parties admit that bitcoin can be

2

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1  purchased or sold on various platforms and that said platforms are typically open and available for

2  purchases and sales. The BlockFi Responding Parties allege that at any time bitcoin can be

3  purchased on various platforms. The BlockFi Responding Parties allege that at any time bitcoin

4  can be sold on various platforms. Except as expressly admitted or alleged herein, the BlockFi

5  Responding Parties deny the allegations in this paragraph.

6       12.    As to paragraph 12, the BlockFi Responding Parties admit that, like various other

7  markets including but not limited to the stock market, the market for bitcoin has periods of

8  volatility. The BlockFi Responding Parties allege that bitcoin has a given market price or prices

9  at any point in time. The BlockFi Responding Parties allege that individuals can purchase and sell

10  bitcoin on various platforms at a market price at a given point in time. The BlockFi Responding

11  Parties allege that Gerro has on at least one past occasion purchased bitcoin. The BlockFi

12  Responding Parties allege that Gerro has on at least one past occasion sold bitcoin. The BlockFi

13  Responding Parties allege that it discloses risks and volatility associated with bitcoin to its clients.

14  The BlockFi Responding Parties allege that on BlockFi.com, it is specifically stated that "the

15  volatility and unpredictability of the price of cryptocurrency relative to government-issued

16  currency may result in significant loss over a short period of time." Except as expressly admitted

17  or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

18       13.    As to paragraph 13, Gerro's allegation that "[t]here is evidence that Bitcoin prices

19  are manipulated" is vague and incomprehensible and on that basis the BlockFi Responding Parties

20  deny the allegation. Except as expressly admitted or alleged herein, the BlockFi Responding

21  Parties deny the allegations in this paragraph.

22       14.    As to paragraph 14, the BlockFi Responding Parties admit that they are unaware of

23  mechanisms to "temporarily pause" the general trading of bitcoin in the case of declines or spikes

24  in market price. The BlockFi Responding Parties allege that when Gerro purchased bitcoin in the

25  past, he was aware that trading of bitcoin does not temporarily pause based on sudden spikes or

26  declines in the market price of bitcoin. The BlockFi Responding Parties allege that while Gerro

27  has held bitcoin, he has been aware that trading of bitcoin does not temporarily pause based on

28  sudden spikes or declines in the market price of bitcoin. Except as expressly admitted or alleged

3

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

147

1   herein, the BlockFi Responding Parties deny the allegations in this paragraph.

2       15.    As to paragraph 15, the BlockFi Responding Parties are without sufficient
3   information to admit or deny the allegation and on that basis deny the allegation.    However, the
4   BlockFi Responding Parties admit the BlockFi Responding Parties admit that the market price of
5   bitcoin is affected by many factors.    Except as expressly admitted or alleged herein, the BlockFi
6   Responding Parties deny the allegations in this paragraph.

7       16.    As to paragraph 16, the BlockFi Responding Parties are without sufficient
8   information to admit or deny the allegation and on that basis deny the allegation.    Except as
9   expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this
10  paragraph.

11      17.    As to paragraph 17, the BlockFi Responding Parties are without sufficient
12  information to admit or deny the allegation and on that basis deny the allegation.    However, the
13  BlockFi Responding Parties admit that the market price of bitcoin is affected by many factors.
14  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the
15  allegations in this paragraph.

16      18.    As to paragraph 18, the BlockFi Responding Parties admit that its retail clients
17  (including California clients) pledge cryptocurrency as collateral to secure loans from BlockFi
18  Lending. The BlockFi Responding Parties allege that Gerro was previously a client of BlockFi
19  Lending. BlockFi alleges that Gerro is no longer a client of BlockFi Lending. Except as expressly
20  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

21      19.    As to paragraph 19, the BlockFi Responding Parties admit that some of BlockFi
22  Lending's retail clients (including California clients) pledge cryptocurrency as collateral to secure
23  loans from BlockFi Lending and that BlockFi Lending receives revenue in connection with those
24  loans.    Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the
25  allegations in this paragraph.

26      20.    As to paragraph 20, the BlockFi Responding Parties admit that information about
27  available products is provided on the website BlockFi.com.    Except as expressly admitted or
28  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

4

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

148

1      21.    As to paragraph 21, the BlockFi Responding Parties admit that BlockFi Lending's

2    retail clients (including California clients) pledge cryptocurrency as collateral to secure loans from

3    BlockFi Lending.  The BlockFi Responding Parties admit that cryptocurrency pledged as collateral

4    in connection with loans is held by a third party, Gemini Trust Company, LLC ("Gemini").

5    BlockFi Lending denies that Exhibit 18 is a true and correct copy of any of the three contracts with

6    BlockFi Lending that Gerro voluntarily executed in connection with finance lending activities, and

7    BlockFi Lending objects to Gerro's failure to provide a complete and accurate record due to (in

8    part) Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending.  BlockFi

9    Lending alleges that on or about February 11, 2020, Gerro executed a "Loan and Security

10    Agreement" (the "Loan Agreement") with BlockFi Lending.  The BlockFi Responding Parties

11    allege that the Loan Agreement was the third in a series of three Loan and Security Agreements

12    with BlockFi that Gerro executed.  The BlockFi Responding Parties allege that the Loan

13    Agreement reflected a consolidation and refinancing of the first two loan agreements with BlockFi

14    Lending executed by Gerro.   Except as expressly admitted or alleged herein, the BlockFi

15    Responding Parties deny the allegations in this paragraph.

16      22.    As to paragraph 22, the BlockFi Responding Parties admit that in the event that the

17    value of a borrower's pledged collateral falls below a prescribed threshold in connection with

18    agreed upon loan-to-value requirements, BlockFi Lending reserves the contractually agreed upon

19    right to liquidate some or all of that collateral in order to recoup the outstanding loan balance.

20    BlockFi Lending denies that Exhibit 18 is a true and correct copy of any of the three contracts with

21    BlockFi Lending that Gerro voluntarily executed in connection with finance lending activities, and

22    BlockFi Lending objects to Gerro's failure to provide a complete and accurate record due to (in

23    part) Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending.  The

24    BlockFi Responding Parties allege that Gerro agreed to pledge bitcoin as collateral to secure a loan

25    from BlockFi Lending.  The BlockFi Responding Parties allege that Gerro agreed in writing that

26    if Gerro did not maintain loan-to-value ratios for his loan with BlockFi Lending, then BlockFi

27    Lending was allowed to liquidate the collateral pledged by Gerro. The BlockFi Responding Parties

28    allege that in March 2020, Gerro failed to maintain loan-to-value ratios to which he agreed to in

5

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

149

1   writing in connection with his loan with BlockFi Lending. Except as expressly admitted or alleged

2   herein, the BlockFi Responding Parties deny the allegations in this paragraph.

3     23.   As to paragraph 23, the BlockFi Responding Parties admit that BlockFi Lending's

4   retail clients (including California clients) pledge cryptocurrency as collateral to secure loans from

5   BlockFi Lending. The BlockFi Responding Parties admit that cryptocurrency pledged as collateral

6   in connection with loans is held by a third party, Gemini Trust Company, LLC ("Gemini").

7   BlockFi Lending denies that Exhibit 18 is a true and correct copy of any of the three contracts with

8   BlockFi Lending that Gerro voluntarily executed in connection with finance lending activities, and

9   BlockFi Lending objects to Gerro's failure to provide a complete and accurate record due to (in

10  part) Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending. Except

11  as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

12  this paragraph.

13    24.   As to paragraph 24, the BlockFi Responding Parties admit that BlockFi Lending's

14  retail clients (including California clients) pledge cryptocurrency as collateral to secure loans from

15  BlockFi Lending. Except as expressly admitted or alleged herein, the BlockFi Responding Parties

16  deny the allegations in this paragraph.

17    25.   As to paragraph 25, the BlockFi Responding Parties admit that as is typical for

18  lenders, in order to obtain a loan BlockFi Lending requires its clients to pledge collateral worth

19  more than the principal amount of the loan provided to its clients. The loan-to-value ratio is not

20  identical between various loans provided by BlockFi Lending to its clients. BlockFi Lending

21  denies that Exhibit 18 is a true and correct copy of any of the three contracts with BlockFi Lending

22  that Gerro voluntarily executed in connection with finance lending activities, and BlockFi Lending

23  objects to Gerro's failure to provide a complete and accurate record due to (in part) Gerro's

24  apparent refusal to attach the contracts he executed with BlockFi Lending. Except as expressly

25  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

26    26.   As to paragraph 26, the BlockFi Responding Parties admit that BlockFi Lending's

27  retail clients (including California clients) pledge cryptocurrency as collateral to secure loans from

28  BlockFi Lending. The BlockFi Responding Parties deny that BlockFi Lending "possesses" clients'

6

1    collateral. The BlockFi Responding Parties admit that BlockFi Lending acts pursuant to its rights

2    and obligations under applicable contracts, including at times the right to rehypothecate pledged

3    collateral or cause pledged collateral to be transferred. The BlockFi Responding Parties object to

4    Gerro's inclusion of and citation to an order from another state that is irrelevant to Gerro's prior

5    business dealings with BlockFi Lending or this matter generally. Except as expressly admitted or

6    alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

7        27.    As to paragraph 27, the BlockFi Responding Parties admit that BlockFi Lending's

8    retail clients (including California clients) pledge cryptocurrency as collateral to secure loans from

9    BlockFi Lending. BlockFi Lending admits that, like all licensed lenders, it acts pursuant to its

10   rights and obligations under applicable contracts with its clients, including rights and obligations

11   concerning reporting profits associated with or details of any use of pledged collateral. BlockFi

12   Lending denies that Exhibit 18 is a true and correct copy of any of the three contracts with BlockFi

13   Lending that Gerro voluntarily executed in connection with finance lending activities, and BlockFi

14   Lending objects to Gerro's failure to provide a complete and accurate record due to (in part)

15   Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending. The BlockFi

16   Responding Parties allege that under the Loan Agreement, Gerro authorized BlockFi Lending to

17   pledge and repledge from time to time, without notice to Gerro, either separately or in common

18   with other such cryptocurrency, any or all of the collateral pledged by Gerro in connection with

19   his loan with BlockFi Lending. The BlockFi Responding Parties allege that Gerro authorized

20   BlockFi to pledge and repledge the collateral pledged by Gerro without retaining a like amount of

21   similar collateral in BlockFi Lending's possession or control for delivery. The BlockFi

22   Responding Parties allege that under the Loan Agreement, Gerro agreed to have his pledged

23   collateral transferred into BlockFi Lending's digital asset depository account at Gemini. The

24   BlockFi Responding Parties allege that under the Loan Agreement, Gerro agreed that the holding

25   of cryptocurrencies through Gemini constituted the use of reasonable care with respect to the

26   custody and preservation of Gerro's pledged collateral. The BlockFi Responding Parties allege

27   that no requirement exists under the Loan Agreement for BlockFi Lending to account to Gerro for

28   any profits or details of any use of Gerro's collateral. Except as expressly admitted or alleged

7

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

151

1  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

2      28.    As to paragraph 28, the BlockFi Responding Parties admit that BlockFi Lending's

3  retail clients (including California clients) pledge cryptocurrency as collateral to secure loans from

4  BlockFi Lending. BlockFi Lending admits that it acts pursuant to its rights and obligations under

5  applicable contracts. BlockFi Lending that collateral is typically pledged by clients pursuant to a

6  title transfer. BlockFi Lending denies that Exhibit 18 is a true and correct copy of any of the three

7  contracts with BlockFi Lending that Gerro voluntarily executed in connection with finance lending

8  activities, and BlockFi Lending objects to Gerro's failure to provide a complete and accurate

9  record due to (in part) Gerro's apparent refusal to attach the contracts he executed with BlockFi

10  Lending. The BlockFi Responding Parties allege that Gerro's collateral was pledged pursuant to

11  a title transfer. The BlockFi Responding Parties allege that under the Loan Agreement, Gerro

12  agreed to pledge his collateral pursuant to a title transfer. Except as expressly admitted or alleged

13  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

14      29.    As to paragraph 29, the BlockFi Responding Parties admit BlockFi Lending does

15  not act as an agent of its clients, including its former client Gerro. Except as expressly admitted

16  or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

17      30.    Denied.

18      31.    As to paragraph 31, the BlockFi Responding Parties admit that its retail clients

19  (including California clients) pledge cryptocurrency as collateral to secure loans from BlockFi

20  Lending. BlockFi Lending admits that, like all licensed lenders, it acts pursuant to its rights and

21  obligations under applicable contracts with its clients, including rights and obligations concerning

22  reporting of, for example, profits associated with or details of any use of pledged collateral. The

23  BlockFi Responding Parties allege that no requirement exists under the Loan Agreement for

24  BlockFi Lending to account to Gerro for any profits or details of any use of Gerro's collateral.

25  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

26  allegations in this paragraph.

27      32.    As to paragraph 32, the BlockFi Responding Parties admit that Gemini holds

28  collateral pledged by clients in connection with loans. Denied that Gemini, Bitgo, Inc., or BlockFi

8

1  Trading LLC are BlockFi Lending's agents. Except as expressly admitted or alleged herein, the

2  BlockFi Responding Parties deny the allegations in this paragraph.

3      33.   As to paragraph 33, the BlockFi Responding Parties admit that Gemini holds

4  collateral pledged by clients in connection with loans provided by BlockFi Lending. Gerro's

5  allegation concerning "for the benefit of BlockFi" is vague and incomprehensible and on that basis

6  BlockFi Lending denies the allegation. Denied that Gemini Trust Company LLC, Bitgo, Inc., or

7  BlockFi Trading LLC are BlockFi Lending's agents. Except as expressly admitted or alleged

8  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

9      34.   As to paragraph 34, Gerro's allegation that "BlockFi's Agents hold the Collateral

10  in BlockFi's name" lacks context and is incomprehensible and on that basis the BlockFi

11  Responding Parties deny the allegation. Denied that Gemini, Bitgo, Inc., or BlockFi Trading LLC

12  are BlockFi Lending's agents. Except as expressly admitted or alleged herein, the BlockFi

13  Responding Parties deny the allegations in this paragraph.

14      35.   As to paragraph 35, Gerro's allegation that "BlockFi's Agents do not segregate the

15  Bitcoin in a separate account for each Consumer" lacks context and is incomprehensible and on

16  that basis the BlockFi Responding Parties deny the allegation. Denied that Gemini, Bitgo, Inc., or

17  BlockFi Trading LLC are BlockFi Lending's agents. Except as expressly admitted or alleged

18  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

19      36.   As to paragraph 36, Gerro's allegation that "BlockFi's Agents do not take orders,

20  relating to the Collateral, from California Consumers" is vague and incomprehensible and on that

21  basis the BlockFi Responding Parties deny the allegation. Denied that Gemini, Bitgo, Inc., or

22  BlockFi Trading LLC are BlockFi Lending's agents. Except as expressly admitted or alleged

23  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

24      37.   As to paragraph 37, Gerro's allegation that "BlockFi's Agents do not hold the

25  Collateral pursuant to a trust for the benefit of Consumers" lacks context and is incomprehensible,

26  and on that basis the BlockFi Responding Parties deny the allegation. Denied that Gemini, Bitgo,

27  Inc., or BlockFi Trading LLC are BlockFi Lending's agents. Except as expressly admitted or

28  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

9

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

153

1        38.    As to Paragraph 38, Gerro's allegation that "BlockFi treats the Collateral as an asset

2  on its balance sheet" lacks context and is incomprehensible, and on that basis the BlockFi

3  Responding Parties deny the allegation. BlockFi admits that it treats collateral on its balance sheet

4  according to applicable accounting standards. Except as expressly admitted or alleged herein, the

5  BlockFi Responding Parties deny the allegations in this paragraph.

6        39.    As to Paragraph 39, Gerro's allegation that "BlockFi treats its obligation to return

7  the Collateral as BlockFi's unsecured liability" lacks context and is incomprehensible, and on that

8  basis the BlockFi Responding Parties deny the allegation. BlockFi admits that it treats collateral

9  according to applicable accounting standards. Except as expressly admitted or alleged herein, the

10  BlockFi Responding Parties deny the allegations in this paragraph.

11        40.    As to Paragraph 40, Gerro's allegation that "BlockFi Inc. does not guarantee

12  BlockFi's said unsecured liability to Consumers" is vague and incomprehensible and on that basis

13  the BlockFi Responding Parties deny the allegation. BlockFi Responding Parties admit that

14  BlockFi acts as permitted by contractual rights with its clients. Except as expressly admitted or

15  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

16        41.    As to Paragraph 41, Gerro's allegation that "BlockFi does not insure against

17  potential losses of the Consumers' Collateral by purchasing cyber-security insurance or similar

18  insurance" lacks context, is incomprehensible and consists of an incomplete hypothetical, and on

19  that basis the BlockFi Responding Parties deny the allegation. Except as expressly admitted or

20  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

21        42.    As to paragraph 42, Gerro's allegation that "[u]pon receipt of Collateral, BlockFi

22  commingles the Collateral with other Bitcoin that BlockFi obtains through its sale of unregistered

23  securities" lacks context, is incomprehensible and consists of an incomplete hypothetical, and on

24  that basis the BlockFi Responding Parties deny the allegation. Except as expressly admitted or

25  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

26        43.    As to Paragraph 43, Gerro's allegation that "[p]eriodically, and for BlockFi's own

27  benefit, BlockFi leases portions of the Collateral to third-parties" lacks context and is

28  incomprehensible, and on that basis the BlockFi Responding Parties deny the allegation. BlockFi

10

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

154

1  Responding Parties admit that in order to pay clients crypto interest on a monthly basis and to meet

2  withdrawal requests on a timely basis, they engage in a number of activities, including purchasing,

3  as principal, SEC-regulated equities and predominately CFTC-regulated futures.  Except as

4  expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

5  paragraph.

6        44.    As to Paragraph 44, Gerro's allegation that "[p]eriodically, and for BlockFi's own

7  benefit, BlockFi uses portions of the Collateral to 'purchase 6 equities, options, and futures for its

8  own account'" lacks context and is incomprehensible, and on that basis the BlockFi Responding

9  Parties deny the allegation.  BlockFi Responding Parties admit that in order to pay clients crypto

10  interest on a monthly basis and to meet withdrawal requests on a timely basis, they engage in a

11  number of activities, including purchasing, as principal, SEC-regulated equities and predominately

12  CFTC-regulated futures.  Except as expressly admitted or alleged herein, the BlockFi Responding

13  Parties deny the allegations in this paragraph.

14        45.    As to paragraph 45, the BlockFi Responding Parties deny that BlockFi Lending

15  deals in "investments in unregistered activities."  The BlockFi Responding Parties admit that

16  BlockFi Lending, like all licensed finance lenders, acts pursuant to its rights and obligations under

17  applicable contracts with its clients, including rights and obligations concerning reporting of, for

18  example, profits associated with or details of any use of pledged collateral.  Except as expressly

19  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

20        46.    Denied.

21        47.    Denied.

22        48.    Denied.

23        49.    As to paragraph 49, admitted that Exhibit 24 includes excerpts of an order from the

24  Department of Financial Institutions of the State of Kentucky.  The BlockFi Responding Parties

25  deny that the Exhibit is in any way relevant to the current action or Gerro's prior business dealings

26  with BlockFi Lending.  The BlockFi Responding Parties further deny that the Exhibit reflects any

27  final action or determination by the state department at issue.  Except as expressly admitted or

28  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

11

50.   As to paragraph 50, admitted that Exhibit 25 includes excerpts of an order from the Bureau of Securities of the State of New Jersey. The BlockFi Responding Parties deny that the Exhibit is in any way relevant to the current action or Gerro's prior business dealings with BlockFi Lending. The BlockFi Responding Parties further deny that the Exhibit reflects any final action or determination by the state department at issue. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

51.   As to paragraph 51, admitted that Exhibit 26 includes excerpts of an order from the Alabama Securities Commission. The BlockFi Responding Parties deny that the Exhibit is in any way relevant to the current action or Gerro's prior business dealings with BlockFi Lending. The BlockFi Responding Parties further deny that the Exhibit reflects any final action or determination by the state department at issue. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

52.   As to paragraph 52, admitted that Exhibit 27 includes excerpts of a Notice of Hearing from the Texas State Securities Board. The BlockFi Responding Parties deny that the Exhibit is in any way relevant to the current action or Gerro's prior business dealings with BlockFi Lending. The BlockFi Responding Parties further deny that the Exhibit reflects any final action or determination by the state department at issue. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

53.   As to paragraph 53, admitted that Exhibit 28 includes excerpts of an order from the Vermont Department of Financial Regulation of the State of Vermont. The BlockFi Responding Parties deny that the Exhibit is in any way relevant to the current action or Gerro's prior business dealings with BlockFi Lending. The BlockFi Responding Parties further deny that the Exhibit reflects any final action or determination by the state department at issue. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

54.   As to paragraph 54, the BlockFi Responding Parties deny it sells unregistered securities. Gerro's allegation concerning use and possession of collateral "in the same way as the Bitcoin that BlockFi receives through its sale of unregistered securities" is vague, assumes facts, and is incomprehensible and on that basis the BlockFi Responding Parties deny the allegation.

12

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

156

1  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

2  allegations in this paragraph.

3      55.    As to paragraph 55, the BlockFi Responding Parties admit that in the event that the

4  value of a borrower's pledged collateral falls below a prescribed threshold in connection with

5  agreed upon loan-to-value requirements, BlockFi Lending reserves the contractually agreed upon

6  right to liquidate some or all of that collateral in order to recoup the outstanding loan balance.

7  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

8  allegations in this paragraph.

9      56.    As to paragraph 56, the BlockFi Responding Parties deny that Exhibit 18 is a true

10  and correct copy of any of the three executed contracts with BlockFi Lending that Gerro

11  voluntarily executed in connection with finance lending activities and object to Gerro's failure to

12  provide a complete and accurate record due to (in part) Gerro's apparent refusal to attach the

13  contracts he executed with BlockFi Lending. The BlockFi Responding Parties admit that Exhibit

14  18 has similarities to contracts executed with BlockFi Lending's clients, including the contracts

15  executed with Gerro. Except as expressly admitted or alleged herein, the BlockFi Responding

16  Parties deny the allegations in this paragraph.

17      57.    Denied. The BlockFi Responding Parties allege that on three separate occasions,

18  Gerro voluntarily executed loan agreements (including the Loan Agreement) that include a

19  Delaware forum selection clause. The BlockFi Responding Parties allege that by executing the

20  Loan Agreement, Gerro voluntarily agreed to litigate any claims arising out of the Loan Agreement

21  in Delaware. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny

22  the allegations in this paragraph.

23      58.    As to paragraph 58, to the extent that the allegations of this paragraph seek to

24  paraphrase or characterize the contents of documents referenced, the documents speak for

25  themselves. To the extent a response is required BlockFi Lending admits that Exhibit 18 states:

26          Upon notice by Lender to Borrower of the occurrence of a Trigger
            Event (hereinafter defined), Borrower shall promptly, and in no case
27          later than seventy-two (72) hours after notice is provided, deposit
            additional Collateral into the Depository Account in such an amount
28          as necessary to establish a loan to value ratio where the total of the

13

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

157

outstanding principal balance of the Loan plus all other amounts due is equal to or less than fifty percent (50.0%) of the Collateral Market Value, provided that if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty percent (80.0%) of the Collateral Market Value (the "Accelerated Maximum Loan to Value Ratio"), Lender has the right to immediately liquidate Collateral in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than seventy percent (70.0%) of the Collateral Market Value. Any Collateral liquidated by Lender is subject to a 3% processing fee. Any additional Collateral posted by Borrower pursuant to this Section 7 must be based in the same kind of cryptocurrency as the original Collateral.

For purposes of this Section 7, (i) a "Trigger Event" means an event where Lender becomes aware that Borrower has failed to maintain the Required Loan to Value Ratio and the outstanding principal balance of the Loan is greater than seventy percent (70.0%) of the Collateral Market Value (the "Maximum Loan to Value Ratio"), and (ii) "notice is provided" at the earliest of (x) the time Lender transmits an electronic communication to the Borrower of such Trigger Event, (y) the following day if sent by UPS, FedEx or other express mail overnight delivery, or (z) four (4) days from the date posted if sent by U.S. Mail, all in accordance with the Notices provisions of Section 25 hereof.

BlockFi Lending denies that Exhibit 18 is a true and correct copy of any of the three executed contracts with BlockFi Lending that Gerro voluntarily executed in connection with finance lending activities, and BlockFi Lending objects to Gerro's failure to provide a complete and accurate record due to (in part) Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending. BlockFi alleges that under the Loan Agreement, Gerro agreed that any failure by Gerro to maintain a loan-to-value ratio of Seventy Percent (70%) for more than Seventy-Two (72) hours subjected him to default under the terms of the Loan Agreement. BlockFi alleges that in March 2020, Gerro ultimately failed to maintain a loan-to-value ratio of Seventy Percent (70%) for more than Seventy-Two (72) hours under the Loan Agreement. BlockFi alleges that in March 2020, Gerro was in ultimately in default under the terms of the Loan Agreement. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

59. As to paragraph 59, the BlockFi Responding Parties admit that in the event that the value of a borrower's pledged collateral falls below a prescribed threshold in connection with agreed upon loan-to-value requirements, BlockFi Lending reserves the contractually agreed upon right to liquidate some or all of that collateral in order to recoup the outstanding loan balance.

14

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

158

1    Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

2    allegations in this paragraph.

3         60.    As to paragraph 60, BlockFi Lending incorporates by reference its responses and

4    allegations set forth in paragraph 59 as though fully set forth herein. BlockFi alleges that in March

5    2020, Gerro failed to maintain a loan to value ratio of 80 percent on his loan with BlockFi Lending

6    under the Loan Agreement.    Except as expressly admitted or alleged herein, the BlockFi

7    Responding Parties deny the allegations in this paragraph.

8         61.    As to paragraph 61, to the extent that the allegations of this paragraph seek to

9    paraphrase or characterize the contents of documents referenced, the documents speak for

10    themselves. To the extent a response is required BlockFi Lending admits that Exhibit 18 states:

11                    Upon an Event of Default and at any time thereafter, Lender may

12                    declare all amounts due under this Agreement immediately due and
payable and shall have all the rights and remedies of a Lender under

13                    the UCC or as otherwise provided under applicable law. Without
limiting the generality of the foregoing, Borrower expressly agrees

14                    that in any such default Lender may take immediate and exclusive
possession of the Collateral and that Lender may liquidate the

15                    Collateral in whole or in part, at its sole discretion.

16    BlockFi Lending denies that Exhibit 18 is a true and correct copy of any of the three executed

17    contracts with BlockFi Lending that Gerro voluntarily executed in connection with finance lending

18    activities, and BlockFi Lending objects to Gerro's failure to provide a complete and accurate

19    record due to (in part) Gerro's apparent refusal to attach the contracts he executed with BlockFi

20    Lending. The BlockFi Responding Parties allege that Gerro agreed under the Loan Agreement

21    that in the event of Gerro's default under the Loan Agreement, BlockFi Lending had the right to

22    liquidate the collateral pledged by Gerro, in whole or in part, at BlockFi's sole discretion. Except

23    as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

24    this paragraph.

25         62.    Denied.

26         63.    Gerro's allegations in paragraph 63 and its subparagraphs include an improper and

27    incomplete hypothetical, and on that basis BlockFi Lending denies the allegation. The BlockFi

28    Responding Parties allege that in March 2020, BlockFi Lending notified Gerro that he was no

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1   longer maintaining required loan-to-value ratios under the Loan Agreement. The BlockFi

2   Responding Parties allege that in March 2020 BlockFi Lending notified Gerro multiple times that

3   he was no longer maintaining loan-to-value ratios required under the Loan Agreement. The

4   BlockFi Responding Parties allege that Gerro never transferred additional collateral in connection

5   with Gerro's loan with BlockFi after being informed that he was not maintaining loan-to-value

6   ratios required under the Loan Agreement. Except as expressly admitted or alleged herein, the

7   BlockFi Responding Parties deny the allegations in this paragraph.

8       64.    As to paragraph 64, Gerro's allegation is vague and incomprehensible, and on that

9   basis BlockFi Lending denies the allegation. Except as expressly admitted or alleged herein, the

10  BlockFi Responding Parties deny the allegations in this paragraph.

11      65.    Denied.

12      66.    As to paragraph 66, BlockFi admits that on or about March 12, 2020 it caused

13  approximately nine-tenths of the collateral pledged by Gerro to be liquidated due to Gerro's failure

14  to meet contractually required loan to value ratios. BlockFi alleges that Gerro received the

15  communications attached to Gerro's Amended Petition as Exhibit 21 and sent by BlockFi Lending.

16  The BlockFi Responding Parties allege that on March 12, 2020, BlockFi Lending informed Gerro

17  that the loan-to-value ratio on his loan with BlockFi Lending had risen to or above 80%. The

18  BlockFi Responding Parties allege that on March 12, 2020, BlockFi Lending informed Gerro that

19  loans above an 80% loan-to-value ratio would be liquidated before 5 p.m. Eastern time, March 12,

20  2020. The BlockFi Responding Parties allege that on March 12, 2020, it informed Gerro that "any

21  loans above 80% LTV are at immediate risk of auto liquidation. The best and quickest way to cure

22  your margin is to send crypto to your unique loan wallet address. We recommend curing your

23  margin to 50% LTV as soon as possible." The BlockFi Responding Parties allege that Gerro did

24  not send crypto to his unique wallet address after Gerro was so informed. The BlockFi Responding

25  Parties allege that Gerro did not pledge or otherwise transfer additional collateral in connection

26  with his loan with BlockFi Lending after Gerro was so informed. Except as expressly admitted or

27  alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

28      67.    Denied.

16

68.    As to paragraph 68, BlockFi does not have sufficient information regarding what Gerro was able to verify regarding the liquidation of collateral pledged by Gerro and on that basis denies the allegation. However, as admitted in paragraph 65, BlockFi admits that on or about March 12, 2020 it caused approximately nine-tenths of the collateral pledged by Gerro to be liquidated due to Gerro's failure to meet contractually required loan to value ratios. The BlockFi Responding Parties allege that on March 17, 2020, Gerro sent an email to BlockFi Lending requesting that BlockFi Lending payoff the remaining balance of his loan with proceeds from remaining collateral pledged by Gerro. (Exhibit 21 to Amended Petition, Page 115.) BlockFi alleges that the remaining balance of Gerro's loan with BlockFi was paid off with proceeds from the liquidation of remaining collateral requested by Gerro. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

69.    Denied.

70.    Denied.

71.    As to paragraph 71, BlockFi admits that it had discussions with Gerro in a good-faith attempt to reinstate Gerro's loan with BlockFi Lending or to otherwise determine a way to continue doing business with Gerro. The BlockFi Responding Parties allege that following a March 24, 2020 email from BlockFi Lending to Gerro, Gerro did not respond to or otherwise communicate with BlockFi Lending in any way until April 27, 2020. The BlockFi Responding Parties allege that the market price of bitcoin rose by approximately $1,000 per bitcoin between March 24, 2020 and April 27, 2020. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

72.    As to paragraph 72, the BlockFi Responding Parties admit that Exhibit 21 to Gerro's Amended Petition includes portions of correspondence between BlockFi Lending and Gerro. The BlockFi Responding Parties deny that it is a complete compilation of said correspondence and communications and further denies that the Exhibit reflects all communications that are "relevant" to Gerro's business dealings with BlockFi Lending. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

17

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

161

73.    As to paragraph 73, BlockFi admits that Gerro defaulted under the Loan Agreement. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

74.    Denied.

75.    As to paragraph 75, the BlockFi Responding Parties admit that the DFPI, among other things, properly reviews license applications and issues licenses to finance lenders operating in California. BlockFi Lending is without sufficient information or context to admit or deny Gerro's vague allegation that the DFPI "is responsible for regulating . . . 'finance lenders'" and on that basis denies the allegation. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

76.    As to paragraph 76, the BlockFi Responding Parties admit that the DFPI issued BlockFi Lending's finance lender and broker license on or about August 16, 2018 (license number 60DBO-81955). BlockFi Lending is without sufficient information regarding the complete basis for the DFPI's decision to grant BlockFi Lending's license and on that basis denies the allegation.

77.    As to paragraph 77, the BlockFi Responding Parties admit that BlockFi Lending is a limited liability company that, on or about January 11, 2018, was organized under the laws of Delaware. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

78.    As to paragraph 78, the BlockFi Responding Parties admit that on or about February 1, 2018, BlockFi Lending applied to the DFPI (then the Department of Business Oversight ("DBO"), for simplicity this answer will refer to the agency solely as the DFPI) for a finance lender and broker license. The BlockFi Responding Parties admit that Exhibit 1 to Gerro's Petition includes portions of BlockFi Lending's finance lender and broker application to the DFPI. The BlockFi Responding Parties deny that it is a complete compilation of BlockFi Lending's application materials and associated correspondence and further deny that the Exhibit reflects all materials that are "relevant" to BlockFi Lending's license application. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

79.    As to paragraph 79, the BlockFi Responding Parties admit that BlockFi Lending's

18

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

162

1   retail clients (including California clients) pledge cryptocurrency to secure loans from BlockFi

2   Lending. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny

3   the allegations in this paragraph.

4       80.    As to paragraph 80, to the extent that the allegations of this paragraph seek to

5   paraphrase or characterize the contents of documents referenced, the documents speak for

6   themselves. To the extent a response is required, the BlockFi Responding Parties admit that the

7   application form asked BlockFi Lending to "[p]rovide a short description of the applicant's

8   business plan that includes any information necessary for the Commissioner of Business Oversight

9   to have an understanding of the type of business that the applicant plans to conduct under this

10  license." Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

11  allegations in this paragraph.

12      81.    As to paragraph 81, to the extent that the allegations of this paragraph seek to

13  paraphrase or characterize the contents of documents referenced, the documents speak for

14  themselves. To the extent a response is required, the BlockFi Responding Parties admit that

15  BlockFi Lending wrote that "[o]ur first product is secured loans collateralized by digital assets

16  (Bitcoin and Ether). Clients can access liquidity in the form of a loan in fiat currency by putting

17  up their digital assets as collateral." Except as expressly admitted or alleged herein, the BlockFi

18  Responding Parties deny the allegations in this paragraph.

19      82.    As to paragraph 82, the BlockFi Responding Parties admit that BlockFi Lending

20  received a letter from the DFPI dated February 14, 2018. The BlockFi Lending Parties are without

21  sufficient information to admit or deny the allegation as to when the DFPI wrote the letter and on

22  that basis deny the allegation. The BlockFi Responding Parties admit that Exhibit 2 is a true and

23  correct copy of the letter dated February 14, 2018 that BlockFi Lending received from the DFPI

24  that appears to include additional handwritten notes. Except as expressly admitted or alleged

25  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

26      83.    As to paragraph 83, to the extent that the allegations of this paragraph seek to

27  paraphrase or characterize the contents of documents referenced, the documents speak for

28  themselves. To the extent a response is required, the BlockFi Responding Parties admit that the

19

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

163

1    DFPI requested clarification of BlockFi Lending's planned business operations. Except as

2    expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

3    paragraph.

4         84.    As to paragraph 84, the BlockFi Responding Parties admit that on or about March

5    5, 2018, BlockFi Lending sent a letter to the DFPI. BlockFi Lending is without sufficient

6    information to admit or deny Gerro's allegation as to when the DFPI received BlockFi Lending's

7    letter and on that basis denies the allegation. The BlockFi Responding Parties admit that Exhibit

8    3 is a true and correct copy of a letter from BlockFi Lending to the DFPI dated March 5, 2018.

9    Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

10   allegations in this paragraph.

11        85.    As to paragraph 85, to the extent that the allegations of this paragraph seek to

12   paraphrase or characterize the contents of documents referenced, the documents speak for

13   themselves. To the extent a response is required, the BlockFi Responding Parties admit that

14   BlockFi Lending wrote in the March 5th letter that "BlockFi Lending LLC requires that its clients

15   store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust

16   Company, LLC ("Gemini") (NMLS #1518126), throughout the life of the loan. Gemini is a New

17   York trust company licensed by the New York State Department of Financial Services. Gemini is

18   a fiduciary under §100 of the New York Banking Law and held to specific capital reserve

19   requirements and banking compliance standards." The BlockFi Responding Parties admit that

20   BlockFi Lending also wrote that "BlockFi issues consumer and commercial loans to

21   cryptocurrency holders who require liquidity but do not wish to sell their digital assets. BlockFi

22   Lending holds each borrower's digital assets in escrow as collateral, and provides interest-only,

23   U.S. Dollar-denominated loans [to] borrowers." The BlockFi Responding Parties admit that

24   BlockFi Lending also wrote that in connection with the securing of a loan that "BlockFi Lending

25   LLC files a UCC-1 with the secretary of state of the primary state of operation or residence of each

26   borrower." The BlockFi Responding Parties admit that BlockFi Lending also wrote that "[i]n the

27   event that the value of the borrower's digital assets falls below a prescribed threshold, BlockFi

28   reserves the right to liquidate some or all those digital assets in order to recoup the outstanding

20

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1   loan balance." Except as expressly admitted or alleged herein, the BlockFi Responding Parties

2   deny the allegations in this paragraph.

3        86.    As to paragraph 86, to the extent that the allegations of this paragraph seek to

4   paraphrase or characterize the contents of documents referenced, the documents speak for

5   themselves.  To the extent a response is required, the BlockFi Responding Parties admit that

6   BlockFi Lending wrote in the March 5th letter that "BlockFi Lending LLC requires that its clients

7   store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust

8   Company, LLC ("Gemini") (NMLS #1518126), throughout the life of the loan. Gemini is a New

9   York trust company licensed by the New York State Department of Financial Services. Gemini is

10   a fiduciary under §100 of the New York Banking Law and held to specific capital reserve

11   requirements and banking compliance standards."  The BlockFi Responding Parties allege that

12   BlockFi Lending also wrote that "BlockFi issues consumer and commercial loans to

13   cryptocurrency holders who require liquidity but do not wish to sell their digital assets. BlockFi

14   Lending holds each borrower's digital assets in escrow as collateral, and provides interest-only,

15   U.S. Dollar-denominated loans [to] borrowers."  The BlockFi Responding Parties admit that

16   BlockFi Lending also wrote that in connection with the securing of a loan that "BlockFi Lending

17   LLC files a UCC-1 with the secretary of state of the primary state of operation or residence of each

18   borrower." The BlockFi Responding Parties admit that BlockFi Lending also wrote that "[i]n the

19   event that the value of the borrower's digital assets falls below a prescribed threshold, BlockFi

20   reserves the right to liquidate some or all those digital assets in order to recoup the outstanding

21   loan balance." Except as expressly admitted or alleged herein, the BlockFi Responding Parties

22   deny the allegations in this paragraph.

23        87.    As to paragraph 87, to the extent that the allegations of this paragraph seek to

24   paraphrase or characterize the contents of documents referenced, the documents speak for

25   themselves.  To the extent a response is required, the BlockFi Responding Parties admit that

26   BlockFi Lending wrote in the March 5th letter that "BlockFi Lending LLC requires that its clients

27   store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust

28   Company, LLC ("Gemini") (NMLS #1518126), throughout the life of the loan. Gemini is a New

21

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

165

1    York trust company licensed by the New York State Department of Financial Services. Gemini is
2    a fiduciary under §100 of the New York Banking Law and held to specific capital reserve
3    requirements and banking compliance standards." The BlockFi Responding Parties admit that
4    BlockFi Lending also wrote that "BlockFi issues consumer and commercial loans to
5    cryptocurrency holders who require liquidity but do not wish to sell their digital assets. BlockFi
6    holds each borrower's digital assets in escrow as collateral, and provides interest-only, U.S. Dollar-
7    denominated loans [to] borrowers." The BlockFi Responding Parties admit that BlockFi Lending
8    also wrote that in connection with the securing of a loan that "BlockFi Lending LLC files a UCC-
9    1 with the secretary of state of the primary state of operation or residence of each borrower." The
10   BlockFi Responding Parties admit that BlockFi Lending also wrote that "[i]n the event that the
11   value of the borrower's digital assets falls below a prescribed threshold, BlockFi reserves the right
12   to liquidate some or all those digital assets in order to recoup the outstanding loan balance."
13   Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the
14   allegations in this paragraph.

15          88.    As to paragraph 88, to the extent that the allegations of this paragraph seek to
16   paraphrase or characterize the contents of documents referenced, the documents speak for
17   themselves. To the extent a response is required, the BlockFi Responding Parties admit that
18   BlockFi Lending wrote in the March 5th letter that "BlockFi Lending LLC requires that its clients
19   store the assets posted as collateral with BlockFi Lending's Licensed custodian, Gemini Trust
20   Company, LLC ("Gemini") (NMLS #1518126), throughout the life of the loan. Gemini is a New
21   York trust company licensed by the New York State Department of Financial Services. Gemini is
22   a fiduciary under §100 of the New York Banking Law and held to specific capital reserve
23   requirements and banking compliance standards." The BlockFi Responding Parties admit that
24   BlockFi Lending also wrote that "BlockFi issues consumer and commercial loans to
25   cryptocurrency holders who require liquidity but do not wish to sell their digital assets. BlockFi
26   holds each borrower's digital assets in escrow as collateral, and provides interest-only, U.S. Dollar-
27   denominated loans [to] borrowers." The BlockFi Responding Parties admit that BlockFi Lending
28   also wrote that in connection with the securing of a loan that "BlockFi Lending LLC files a UCC-

22

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1 with the secretary of state of the primary state of operation or residence of each borrower." The

BlockFi Responding Parties admit that BlockFi Lending also wrote that "[i]n the event that the

value of the borrower's digital assets falls below a prescribed threshold, BlockFi reserves the right

to liquidate some or all those digital assets in order to recoup the outstanding loan balance."

Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

allegations in this paragraph.

89.    As to paragraph 89, the BlockFi Responding Parties admit that BlockFi Lending

received a letter from the DFPI dated March 8, 2018.  BlockFi Lending is without sufficient

information to admit or deny the allegation as to when the DFPI wrote the letter and on that basis

denies the allegation. BlockFi Lending admits that Exhibit 4 is a true and correct copy of a letter

dated March 8, 2018 from the DFPI to BlockFi Lending that appears to include additional

handwritten notes. Except as expressly admitted or alleged herein, the BlockFi Responding Parties

deny the allegations in this paragraph.

90.    As to paragraph 90, to the extent that the allegations of this paragraph seek to

paraphrase or characterize the contents of documents referenced, the documents speak for

themselves.  To the extent a response is required, the BlockFi Responding Parties admit that in

preliminary correspondence before the DFPI's determination that granting a finance lender and

broker license to BlockFi Lending was appropriate, an initial view was stated by an individual at

the DFPI that "collateral must remain with the borrower" and that BlockFi Lending "cannot hold

the borrower's digital assets in escrow as collateral." The BlockFi Responding Parties allege that

after further review and consideration by the DFPI, this view was determined by the DFPI to be

incorrect and inconsistent with general finance lending practices. The BlockFi Responding Parties

allege that the DFPI, with knowledge of BlockFi Lending's business plans, including its plan for

its clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as

collateral whether directly or through a third party, granted BlockFi Lending its finance lender and

broker license.  Except as expressly admitted or alleged herein, the BlockFi Responding Parties

deny the allegations in this paragraph.

91.    As to paragraph 91, to the extent that the allegations of this paragraph seek to

23

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

167

1  paraphrase or characterize the contents of documents referenced, the documents speak for

2  themselves. To the extent a response is required, the BlockFi Responding Parties admit that in

3  preliminary correspondence before the DFPI's determination that granting a finance lender and

4  broker license to BlockFi Lending was appropriate, an initial view was stated by an individual at

5  the DFPI that "collateral must remain with the borrower" and that BlockFi Lending "cannot hold

6  the borrower's digital assets in escrow as collateral." The BlockFi Responding Parties allege that

7  after further review and consideration by the DFPI, this view was determined by the DFPI to be

8  incorrect and inconsistent with general finance lending practices. The BlockFi Responding Parties

9  allege that the DFPI, with knowledge of BlockFi Lending's business plans, including its plan for

10  its clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as

11  collateral whether directly or through a third party, granted BlockFi Lending its finance lender and

12  broker license. Except as expressly admitted or alleged herein, the BlockFi Responding Parties

13  deny the allegations in this paragraph.

14      92.    As to paragraph 92, the BlockFi Responding Parties admit that it sent a letter to the

15  DFPI dated February 14, 2018. The BlockFi Responding Parties are without sufficient information

16  to admit or deny Gerro's allegation as to when the DFPI received BlockFi Lending's letter and on

17  that basis deny the allegation. The BlockFi Responding Parties admit that Exhibit 5 to Gerro's

18  Petition includes portions of BlockFi Lending's March 23, 2018, letter to the DFPI. The BlockFi

19  Responding Parties deny that Exhibit 5 is the complete letter and further dent that it includes all

20  "relevant" portions of the letter. Except as expressly admitted or alleged herein, the BlockFi

21  Responding Parties deny the allegations in this paragraph.

22      93.    As to paragraph 93, to the extent that the allegations of this paragraph seek to

23  paraphrase or characterize the contents of documents referenced, the documents speak for

24  themselves. To the extent a response is required, the BlockFi Responding Parties allege that

25  BlockFi Lending wrote in the March 23rd letter that

26          a crypto currency is not a tangible asset like an automobile or house
            that a borrower will possess and use while a loan is outstanding,
27          subject to the lender's security interest. Instead, as its name suggests,
            a crypto currency is more like money or a deposit account, and a
28          lender that takes a security interest in such an asset must exercise

24

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

> control over the asset to protect itself. For example, if a lender takes a security interest in cash, it cannot allow the borrower to have possession of the cash to spend, of course. The way Applicant will exercise this control to protect itself is by having the crypto currency held by a third party custodian pursuant to an agreement between the Applicant, the borrower and the custodian, which agreement among other things will provide that the borrower cannot sell or transfer the crypto currency until the loan that it secures is paid in full.

Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

94.    As to paragraph 94, the BlockFi Responding Parties admit that on or about March 26, 2018, BlockFi Lending sent a letter to the DFPI. The BlockFi Responding Parties are without sufficient information to admit or deny Gerro's allegation as to when the DFPI received BlockFi Lending's letter and on that basis deny the allegation. The BlockFi Responding Parties admits that Exhibit 6 to Gerro's Petition includes portions of BlockFi Lending's letter to the DFPI dated March 26, 2018. The BlockFi Responding Parties deny that it is the complete letter and further deny that the Exhibit includes all "relevant" portions of the letter. Gerro appears to have included only a single page of the letter in Exhibit 6. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

95.    As to paragraph 95, to the extent that the allegations of this paragraph seek to paraphrase or characterize the contents of documents referenced, the documents speak for themselves. To the extent that a response is required, the BlockFi Responding Parties allege that it wrote in attachments to the March 26th letter that

> BlockFi Lending LLC plans to make one-year fixed interest rate consumer and commercial loans. In accordance with California Financial Code Section 22009, BlockFi will take, in the name of the lender, in part, as security for the loan, possession of each borrower's assets. The assets that BlockFi Lending LLC will take possession of as collateral are cryptocurrencies.

The BlockFi Responding Parties deny that Gerro has included the complete letter as Exhibit 6 and further deny that the Exhibit includes all "relevant" portions of the letter. Gerro appears to have included only a single page of the letter in Exhibit 6. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

25

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

169

96.     As to paragraph 96, the BlockFi Responding Parties admit that BlockFi Lending received a letter from the DFPI dated March 28, 2018.  The BlockFi Responding Parties are without sufficient information to admit or deny the allegation as to when the DFPI wrote the letter and on that basis deny the allegation. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

97.     As to paragraph 97, the BlockFi Responding Parties admit that Exhibit 7 to Gerro's Petition includes portions of the DFPI's letter to BlockFi Lending dated March 28, 2018.  The BlockFi Responding Parties deny that it is the complete letter and further deny that the Exhibit includes all "relevant" portions of the letter. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

98.     As to paragraph 98, to the extent that the allegations of this paragraph seek to paraphrase or characterize the contents of documents referenced, the documents speak for themselves.  To the extent a response is required, the BlockFi Responding Parties admit that in preliminary correspondence before the DFPI's determination that granting a finance lender and broker license to BlockFi Lending based on BlockFi Lending's stated business plan was appropriate, an initial view was stated by an individual at the DFPI that BlockFi Lending "cannot hold the borrower's digital assets as collateral" and that the activities were "not authorized under the CFL."  The BlockFi Responding Parties allege that after further review and consideration by the DFPI, this initial view was determined by the DFPI to be incorrect and inconsistent with general finance lending practices. The BlockFi Responding Parties further allege that the DFPI, with knowledge of BlockFi Lending's business plans, including its plan for its clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether directly or through a third party, granted BlockFi Lending its finance lender and broker license. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

99.     As to paragraph 99, the BlockFi Responding Parties admit that BlockFi Lending received a letter from the DFPI dated April 6, 2018. The BlockFi Responding Parties are without sufficient information to admit or deny the allegation as to when the DFPI wrote the letter and on

26

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

170

1    that basis deny the allegation. The BlockFi Responding Parties admit that Exhibit 8 to Gerro's

2    Petition includes portions of the DFPI's letter to BlockFi Lending dated April 6, 2018. The

3    BlockFi Responding Parties deny that it is the complete letter and further deny that the Exhibit

4    includes all "relevant" portions of the letter. Except as expressly admitted or alleged herein, the

5    BlockFi Responding Parties deny the allegations in this paragraph.

6        100.    As to paragraph 100, to the extent that the allegations of this paragraph seek to

7    paraphrase or characterize the contents of documents referenced, the documents speak for

8    themselves. To the extent a response is required, the BlockFi Responding Parties admit that in

9    preliminary correspondence before the DFPI's determination that granting a finance lender and

10   broker license to BlockFi Lending based on BlockFi Lending's stated business plan was

11   appropriate, an initial view was stated by an individual at the DFPI that BlockFi Lending "cannot

12   hold the borrower's digital assets as collateral" and that the activities were "not authorized under

13   the CFL." The BlockFi Responding Parties allege that after further review and consideration by

14   the DFPI, this initial view was determined by the DFPI to be incorrect and inconsistent with

15   general finance lending practices. The BlockFi Responding Parties allege that the DFPI, with

16   knowledge of BlockFi Lending's business plans, including its plan for its clients to pledge

17   cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether directly

18   or through a third party, granted BlockFi Lending its finance lender and broker license. Except as

19   expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

20   paragraph.

21       101.    As to paragraph 101, the BlockFi Responding Parties admit that on or about April

22   10, 2018, BlockFi Lending sent an email to the DFPI. The BlockFi Responding Parties are without

23   sufficient information to admit or deny Gerro's allegation as to when the DFPI received BlockFi

24   Lending's email and on that basis denies the allegation. Except as expressly admitted or alleged

25   herein, the BlockFi Responding Parties deny the allegations in this paragraph.

26       102.    As to paragraph 102, the BlockFi Responding Parties admit that Exhibit 9 is a true

27   and correct copy of an email from BlockFi Lending to the DFPI dated April 10, 2018.

28       103.    As to paragraph 103, to the extent that the allegations of this paragraph seek to

27

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1  paraphrase or characterize the contents of documents referenced, the documents speak for

2  themselves. To the extent that a response is required, the BlockFi Responding Parties admit that

3  in the April 10th letter, BlockFi Lending explained why its business model was proper under the

4  CFL and why cryptocurrency collateral pledged by a borrower did not need to remain with the

5  borrower. The BlockFi Responding Parties allege it explained in its April 10th letter that:

6          We are confused by the statements in your March 28 letter that the
           foregoing business plan is outside of the purview or authority of the
7          CFL. The business plan states that the Applicant will be engaged in
           the business of making consumer and commercial loans, which
8          business is clearly within the definition of "finance lender" set forth
           in the first sentence of Section 22009 of the CFL. . . . Please explain
9          to us why these activities are not covered by the CFL, and also
           please let us know if your letter is therefore advising the Applicant
10         that the Applicant can engage in the activities described in the
           revised business plan above in California without obtaining a CFL
11         license.

12  The BlockFi Responding Parties allege that BlockFi Lending specifically addressed the DFPI's

13  position on possession of collateral in its April 10th letter, writing that

14         We did note that your letter states that "the collateral must remain
           with the borrower" and a lender "is not allowed under the CFL" to
15         take possession of collateral. Subject to the next paragraph, we are
           not aware of the basis in the CFL for these statements. Also and as
16         we trust the Department is aware, the California Commercial Code
           provides that a creditor may perfect a security interest in several
17         types of collateral, including "tangible negotiable documents,
           goods, instruments, money, or tangible chattel paper" as well as
18         "certificated securities," by taking "possession" of the collateral.
           See Section 9313 of the California Commercial Code, attached.
19         Indeed, in the case of a security interest in "money" a creditor can
           only perfect its security interest in collateral by taking possession.
20         See Section 9312(a) and (b)(3) of the California Commercial Code,
           attached. We are sure that the Department does not mean to forbid
21         finance lenders from perfecting security interests as authorized and,
           in the case of "money," required by California law. Also, a crypto
22         currency of course functions much like "money" in terms of a
           secured creditor wishing to control it to protect the creditor from the
23         collateral being spent by the borrower.

24  The BlockFi Responding Parties allege that it in BlockFi Lending's April 10th letter, after further

25  discussing section 22009 of the CFL, BlockFi Lending explained to the DFPI that

26         the [DFPI] had recently issued a CFL license to Unchained Capital,
           Inc., license number 60DBO-78867 ("Unchained"). Unchained is
27         also engaged in the business of lending on the security of crypto
           currency, and likewise through a different method takes control of
28         the crypto currency securing their loans. See this page on the

                                    28

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

172

Unchained web site, stating that collateral is sent from the borrower's crypto currency wallet "to your new loan's vault address," and upon repayment of the loan "we [(i.e., Unchained)] will return your collateral to an address of your choosing": https://www.unchainedcapital.com/how it works/.  Accordingly, if Unchained's practices with respect to control of crypto currency collateral are acceptable to the Department, the Applicant's practices should be equally acceptable.

The BlockFi Responding Parties allege that in addition to the DFPI granting a finance lender license to BlockFi Lending's competitor Unchained Capital, Inc., the DFPI has also granted a finance lender license to at least one other competitor of BlockFi Lending, Salt Lending (via Salt Master Fund II, LLC, license number 60DBO-87584, https://saltlending.com).  The BlockFi Responding Parties allege that Unchained and Salt each take control of cryptocurrency pledged as collateral for loans granted to its borrowers.  The BlockFi Responding Parties allege that Gerro has not initiated any legal proceedings involving Salt or Unchained.  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

104.    As to paragraph 104, the BlockFi Responding Parties admit that BlockFi Lending received a letter from the DFPI dated April 10, 2018. The BlockFi Responding Parties are without sufficient information to admit or deny the allegation as to when the DFPI wrote the letter and on that basis denies the allegation. The BlockFi Responding Parties admit that Exhibit 10 to Gerro's Petition includes portions of a letter dated April 10, 2018 from the DFPI to BlockFi Lending. The BlockFi Responding Parties deny that it is the complete letter and further denies that the Exhibit includes all "relevant" portions of the letter.  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

105.    As to paragraph 105, to the extent that the allegations of this paragraph seek to paraphrase or characterize the contents of documents referenced, the documents speak for themselves.  To the extent a response is required, the BlockFi Responding Parties admit that in preliminary correspondence before the DFPI's determination that granting a finance lender and broker license to BlockFi Lending based on BlockFi Lending's stated business plan was appropriate, an initial view was stated by an individual at the DFPI that BlockFi Lending was "not allowed to hold possession of the borrower's collateral."  The BlockFi Responding Parties allege that after further review and consideration by the DFPI, the initial view stated by the DFPI was

29

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

173

1  determined by the DFPI to be incorrect and inconsistent with general finance lending practices.

2  The BlockFi Responding Parties allege that the DFPI, with knowledge of BlockFi Lending's

3  business plans, including its plan for its clients to pledge cryptocurrency to secure loans and for

4  the cryptocurrency to be held as collateral whether directly or through a third party, granted

5  BlockFi Lending its finance lender and broker license. Except as expressly admitted or alleged

6  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

7      106.  As to paragraph 106, the BlockFi Responding Parties are without sufficient

8  information to admit or deny Gerro's allegation and on that basis denies the allegation. Except as

9  expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

10  paragraph.

11      107.  Admit.

12      108.  As to paragraph 108, the BlockFi Responding Parties admit that on or about April

13  11, 2018, BlockFi Lending sent an email to the DFPI. The BlockFi Responding Parties are without

14  sufficient information to admit or deny Gerro's allegation as to when the DFPI received BlockFi

15  Lending's email and on that basis deny the allegation. BlockFi Lending admits that Exhibit 11 is

16  a true and correct copy of an email from BlockFi Lending to the DFPI dated April 11, 2018. Except

17  as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

18  this paragraph.

19      109.  As to paragraph 109, to the extent that the allegations of this paragraph seek to

20  paraphrase or characterize the contents of documents referenced, the documents speak for

21  themselves. To the extent that a response is required, the BlockFi Responding Parties admit that

22  in its April 11, 2018 email to the DFPI, it included an Updated Business Plan in which BlockFi

23  Lending stated that "BlockFi Lending LLC will make one-year, fixed rate, consumer and

24  commercial loans. As part of our underwriting, we will prescribe value to commercial and

25  consumer applicants' holdings of cryptocurrencies, which they possess." The BlockFi Responding

26  Parties allege that, as alleged by Gerro in his petition, in future correspondence with the DFPI

27  BlockFi Lending continued to explain its planned business operations of clients pledging

28  cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether directly

30

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

174

1    or through a third party.  The BlockFi Responding Parties allege that the DFPI granted BlockFi

2    Lending's finance lender and broker license with knowledge of this business plan.  Except as

3    expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

4    paragraph.

5       110.    As to paragraph 110, the BlockFi Responding Parties admit that on or about May

6    14, 2018, counsel for BlockFi Lending sent a letter to the DFPI.  The BlockFi Responding Parties

7    without sufficient information to admit or deny Gerro's allegation as to when the DFPI received

8    BlockFi Lending's email and on that basis deny the allegation.  To the extent that the allegations

9    of this paragraph seek to paraphrase or characterize the contents of documents referenced, the

10   documents speak for themselves.  To the extent a response is required, the BlockFi Responding

11   Parties admit that counsel for BlockFi Lending submitted a request for an interpretive opinion

12   concerning BlockFi Lending's planned business operations in the May 14th letter.  To the extent

13   that "predecessor-in-interest" specifically refers to former Commissioner of the DFPI Jan Owen,

14   BlockFi Lending is without sufficient information to admit or deny whether Ms. Owen specifically

15   received the referenced letter.  The BlockFi Responding Parties admit that Exhibit 12 to Gerro's

16   Petition includes portions of a letter dated May 14, 2018 from BlockFi Lending to the DFPI.  The

17   BlockFi Responding Parties deny that it is the complete letter since it does not include the attached

18   exhibits) and therefore deny that the Exhibit includes all "relevant" portions of the letter.  Except

19   as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

20   this paragraph.

21       111.    As to paragraph 111, to the extent that the allegations of this paragraph seek to

22   paraphrase or characterize the contents of documents referenced, the documents speak for

23   themselves.  To the extent that a response is required, the BlockFi Responding Parties admit that

24   BlockFi Lending requested confidential treatment of its May 14th letter.  Except as expressly

25   admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

26       112.    As to paragraph 112, to the extent that the allegations of this paragraph seek to

27   paraphrase or characterize the contents of documents referenced, the documents speak for

28   themselves.  To the extent that a response is required, the BlockFi Responding Parties admit that

31

1    the DFPI agreed to provide confidential treatment "for two years from the date of [the May 14th

2    letter]." Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

3    allegations in this paragraph.

4        113.    As to paragraph 113, to the extent that the allegations of this paragraph seek to

5    paraphrase or characterize the contents of documents referenced, the documents speak for

6    themselves. To the extent that a response is required, the BlockFi Responding Parties admit that

7    in its May 14th letter it requested an interpretive opinion confirming that a finance letter can

8    possess collateral held in the borrower's name with a third party depository—in other words, that

9    pledged collateral need not remain with the borrower. Except as expressly admitted or alleged

10   herein, the BlockFi Responding Parties deny the allegations in this paragraph.

11       114.    As to paragraph 114, to the extent that the allegations of this paragraph seek to

12   paraphrase or characterize the contents of documents referenced, the documents speak for

13   themselves. To the extent that a response is required, the BlockFi Responding Parties admit that

14   BlockFi Lending acknowledged and discussed its prior correspondence with the DFPI in its May

15   14th letter. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny

16   the allegations in this paragraph.

17       115.    As to paragraph 115, to the extent that the allegations of this paragraph seek to

18   paraphrase or characterize the contents of documents referenced, the documents speak for

19   themselves. To the extent that a response is required, the BlockFi Responding Parties admit that

20   in its May 14th letter to the DFPI, in prior correspondence with the DFPI, and in subsequent

21   correspondence with the DFPI, BlockFi Lending explained its business plan for its clients to pledge

22   cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether directly

23   or through a third party. The BlockFi Responding Parties allege that the DFPI granted BlockFi

24   Lending its finance lender and broker license with knowledge and understanding of this business

25   plan. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

26   allegations in this paragraph.

27       116.    Denied.

28       117.    Denied.

32

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,<br>AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1        118.   As to paragraph 118, to the extent that the allegations of this paragraph seek to

2   paraphrase or characterize the contents of documents referenced, the documents speak for

3   themselves. To the extent a response is required, the BlockFi Responding Parties admit that in

4   BlockFi Lending's May 14th letter it wrote that "[w]e understand that resolution of this issue is

5   the only obstacle to approval of the application for a CFL license submitted by BlockFi." Except

6   as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

7   this paragraph.

8        119.   As to paragraph 119, to the extent that the allegations of this paragraph seek to

9   paraphrase or characterize the contents of documents referenced, the documents speak for

10   themselves. To the extent a response is required, the BlockFi Responding Parties admit that

11   BlockFi Lending wrote in its May 14th letter that "[w]e also request that, if the Department reaches

12   a preliminary conclusion in its review of this request that a finance lender may not hold collateral,

13   the Department contact the undersigned and at our option we be permitted to withdraw this request

14   for the interpretive opinion." Except as expressly admitted or alleged herein, the BlockFi

15   Responding Parties deny the allegations in this paragraph.

16        120.   Denied. The BlockFi Responding Parties allege that, as explained in the sworn

17   declaration of Charles Washburn (counsel for BlockFi Lending in connection with its license

18   application), Mr. Washburn communicated with Alexander Nourafshan, Counsel, Financial

19   Institutions Division, DFPI about BlockFi Lending's license application. Mr. Washburn

20   specifically addressed the flaws in the DFPI's preliminary position regarding the possession of

21   cryptocurrency as collateral for loans. In Mr. Nourafshan's communications with Mr. Washburn,

22   Mr. Nourafshan did not express any issues with BlockFi Lending's intended business operations,

23   including BlockFi Lending's intent to hold cryptocurrency as collateral, in response to Mr.

24   Washburn's emails and opinion request. Mr. Nourafshan also never expressed any possible

25   distinction between BlockFi Lending's operations and those of Unchained, for which the DFPI had

26   already granted a Finance Lender license. And on August 20, 2018, Mr. Nourafshan stated that

27   BlockFi Lending's opinion request "hit all the right notes" and explained that the DFPI agreed with

28   BlockFi Lending's analysis of CFL Section 22009 and BlockFi Lending's right under Section

33

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

177

1   22009 and the CFL to hold cryptocurrency as collateral for loans. Mr. Nourafshan also apologized

2   for the delay in responding to the opinion request and granting the licenses and stated that BlockFi

3   Lending would receive the licenses in the mail in 7 to 10 days. Mr. Nourafshan also explained to

4   Mr. Washburn in an August 20th call that the DFPI would not be issuing a formal opinion in

5   response to our request, and that instead the DFPI's agreement with BlockFi Lending's position on

6   CFL Section 22009 and its ability to hold cryptocurrency as collateral for loans would simply be

7   evidenced by the granting of BlockFi Lending's licenses.  Neither BlockFi Lending nor its

8   representatives withdrew BlockFi Lending's request for an interpretive opinion. Instead, the DFPI

9   elected not to issue an opinion because it had decided to approve BlockFi Lending's finance lender

10  and broker license application. Mr. Naourafshan explained that the DFPI's agreement with

11  BlockFi Lending's position would be evidenced by the granting of BlockFi Lending's license.

12  (Ex. 19 to Petition.)  Except as expressly admitted or alleged herein, the BlockFi Responding

13  Parties deny the allegations in this paragraph.

14          121.    As to paragraph 121, the BlockFi Responding Parties are without sufficient

15  information regarding DFPI intra-agency communications and on that basis denies the allegation.

16          122.    As to paragraph 122, the BlockFi Responding Parties admit that Charles Washburn

17  acted as counsel for BlockFi Lending in connection with correspondence with the DFPI regarding

18  BlockFi Lending's application for a finance lender and broker license.  Except as expressly

19  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

20          123.    As to paragraph 123, to the extent that the allegations of this paragraph seek to

21  paraphrase or characterize the contents of documents referenced, the documents speak for

22  themselves.  To the extent a response is required, the BlockFi Responding Parties admit Gerro's

23  allegation that by the time the DFPI granted BlockFi Lending's finance lender and broker license,

24  the DFPI was well aware of BlockFi Lending's planned business operations for BlockFi Lending's

25  clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral

26  whether directly or through a third party. The BlockFi Responding Parties further allege that the

27  DFPI's grant of BlockFi Lending's license was consistent with applicable law (and BlockFi

28  Lending's position on applicable law) including but not limited to the California Finance Law, and

34

1  that the grant reflected the DFPI's determination that BlockFi Lending's planned business

2  operations were proper and consistent with applicable law.  The BlockFi Responding Parties

3  further admit that the DFPI, with knowledge of BlockFi Lending's business plans, including its

4  business plan for its clients to pledge cryptocurrency to secure loans and for the cryptocurrency to

5  be held as collateral whether directly or through a third party, granted BlockFi Lending its finance

6  lender and broker license. Except as expressly admitted or alleged herein, the BlockFi Responding

7  Parties deny the allegations in this paragraph.

8        124.    As to paragraph 124, the BlockFi Responding Parties admit Gerro's allegation that

9  by the time the DFPI granted BlockFi Lending's finance lender and broker license, the DFPI was

10  well aware of BlockFi Lending's planned business operations for BlockFi Lending's clients to

11  pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether

12  directly or through a third party. The BlockFi Responding Parties further allege that the DFPI's

13  grant of BlockFi Lending's license was consistent with applicable law (and BlockFi Lending's

14  position on applicable law) including but not limited to the California Finance Law, and that the

15  grant reflected the DFPI's determination that BlockFi Lending's planned business operations were

16  proper and consistent with applicable law.  The BlockFi Responding Parties further admit that the

17  DFPI, with knowledge of BlockFi Lending's business plans, including its business plan for its

18  clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral

19  whether directly or through a third party, granted BlockFi Lending its finance lender and broker

20  license. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

21  allegations in this paragraph.

22        125.    As to paragraph 125, the BlockFi Responding Parties admit Gerro's allegation that

23  by the time the DFPI granted BlockFi Lending's finance lender and broker license, the DFPI was

24  well aware of BlockFi Lending's planned business operations for BlockFi Lending's clients to

25  pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether

26  directly or through a third party. The BlockFi Responding Parties further allege that the DFPI's

27  grant of BlockFi Lending's license was consistent with applicable law (and BlockFi Lending's

28  position on applicable law) including but not limited to the California Finance Law, and that the

35

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

179

1   grant reflected the DFPI's determination that BlockFi Lending's planned business operations were

2   proper and consistent with applicable law. The BlockFi Responding Parties further admit that the

3   DFPI, with knowledge of BlockFi Lending's business plans, including its business plan for its

4   clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral

5   whether directly or through a third party, granted BlockFi Lending its finance lender and broker

6   license. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

7   allegations in this paragraph.

8       126.   As to paragraph 126, the BlockFi Responding Parties are without sufficient

9   information regarding the complete basis for the DFPI's decision to grant BlockFi Lending's

10  license and on that basis denies the allegation. However, the BlockFi Responding Parties admit

11  Gerro's allegation that by the time the DFPI granted BlockFi Lending's finance lender and broker

12  license, the DFPI was well aware of BlockFi Lending's planned business operations for BlockFi

13  Lending's clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held

14  as collateral whether directly or through a third party. The BlockFi Responding Parties further

15  allege that the DFPI's grant of BlockFi Lending's license was consistent with applicable law (and

16  BlockFi Lending's position on applicable law) including but not limited to the California Finance

17  Law, and that the grant reflected the DFPI's determination that BlockFi Lending's planned

18  business operations were proper and consistent with applicable law. The BlockFi Responding

19  Parties further admit that the DFPI, with knowledge of BlockFi Lending's business plans,

20  including its business plan for its clients to pledge cryptocurrency to secure loans and for the

21  cryptocurrency to be held as collateral whether directly or through a third party, granted BlockFi

22  Lending its finance lender and broker license. The BlockFi Responding Parties also incorporate

23  their allegations stated in paragraph 120 as though fully set forth herein. Except as expressly

24  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

25      127.   As to paragraph 127, the BlockFi Responding Parties are without sufficient

26  information regarding the complete basis for the DFPI's decision to grant BlockFi Lending's

27  license and on that basis denies the allegation. However, the BlockFi Responding Parties admit

28  Gerro's allegation that by the time the DFPI granted BlockFi Lending's finance lender and broker

36

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

180

1  license, the DFPI was well aware of BlockFi Lending's planned business operations for BlockFi

2  Lending's clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held

3  as collateral whether directly or through a third party. The BlockFi Responding Parties further

4  allege that the DFPI's grant of BlockFi Lending's license was consistent with applicable law (and

5  BlockFi Lending's position on applicable law) including but not limited to the California Finance

6  Law, and that the grant reflected the DFPI's determination that BlockFi Lending's planned

7  business operations were proper and consistent with applicable law. The BlockFi Responding

8  Parties further admit that the DFPI, with knowledge of BlockFi Lending's business plans,

9  including its business plan for its clients to pledge cryptocurrency to secure loans and for the

10  cryptocurrency to be held as collateral whether directly or through a third party, granted BlockFi

11  Lending its finance lender and broker license. The BlockFi Responding Parties also incorporate

12  their allegations stated in paragraph 120 as though fully set forth herein. Except as expressly

13  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

14  128.  As to paragraph 128, the BlockFi Responding Parties admit that the DFPI issued

15  BlockFi Lending's finance lender and broker license on or about August 16, 2018 (license number

16  60DBO-81955). Except as expressly admitted or alleged herein, the BlockFi Responding Parties

17  deny the allegations in this paragraph.

18  129.  As to paragraph 129, the BlockFi Responding Parties are without sufficient

19  information regarding the complete basis for the DFPI's decision to grant BlockFi Lending's

20  license and on that basis denies the allegation. However, the BlockFi Responding Parties admit

21  Gerro's allegation that by the time the DFPI granted BlockFi Lending's finance lender and broker

22  license, the DFPI was well aware of BlockFi Lending's planned business operations for BlockFi

23  Lending's clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held

24  as collateral whether directly or through a third party. The BlockFi Responding Parties further

25  allege that the DFPI's grant of BlockFi Lending's license was consistent with applicable law (and

26  BlockFi Lending's position on applicable law) including but not limited to the California Finance

27  Law, and that the grant reflected the DFPI's determination that BlockFi Lending's planned

28  business operations were proper and consistent with applicable law. The BlockFi Responding

37

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

181

1   Parties further admit that the DFPI, with knowledge of BlockFi Lending's business plans,
2   including its business plan for its clients to pledge cryptocurrency to secure loans and for the
3   cryptocurrency to be held as collateral whether directly or through a third party, granted BlockFi
4   Lending its finance lender and broker license. The BlockFi Responding Parties also incorporate
5   their allegations stated in paragraph 120 as though fully set forth herein. Except as expressly
6   admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

7       130.  As to paragraph 130, the BlockFi Responding Parties are without sufficient
8   information regarding the complete basis for the DFPI's decision to grant BlockFi Lending's
9   license and on that basis denies the allegation. However, the BlockFi Responding Parties admit
10  Gerro's allegation that by the time the DFPI granted BlockFi Lending's finance lender and broker
11  license, the DFPI was well aware of BlockFi Lending's planned business operations for BlockFi
12  Lending's clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held
13  as collateral whether directly or through a third party. The BlockFi Responding Parties further
14  allege that the DFPI's grant of BlockFi Lending's license was consistent with applicable law (and
15  BlockFi Lending's position on applicable law) including but not limited to the California Finance
16  Law, and that the grant reflected the DFPI's determination that BlockFi Lending's planned
17  business operations were proper and consistent with applicable law. The BlockFi Responding
18  Parties further admit that the DFPI, with knowledge of BlockFi Lending's business plans,
19  including its business plan for its clients to pledge cryptocurrency to secure loans and for the
20  cryptocurrency to be held as collateral whether directly or through a third party, granted BlockFi
21  Lending its finance lender and broker license. The BlockFi Responding Parties also incorporate
22  their allegations stated in paragraph 120 as though fully set forth herein. Except as expressly
23  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

24      131.  As to paragraph 131, the BlockFi Responding Parties admit that before BlockFi
25  Lending was properly licensed by the DFPI as a finance lender and broker, at least on one occasion
26  the possibility was stated by a third party (ultimately determined to be incorrect by the DFPI) that
27  BlockFi Lending required a pawnbroker license to operate in California. The BlockFi Responding
28  Parties allege that BlockFi Lending does not require a pawnbroker license to operate in California

38

1  and that is evidenced by, among other things, the DFPI's decision to issue BlockFi Lending a

2  finance lender and broker license.  The BlockFi Responding Parties further allege that no state,

3  territory, or agency has ever made a determination or other finding that BlockFi Lending requires

4  a pawnbroker license to perform its business operations.

5      132.  Denied.

6      133.  As to paragraph 133, the BlockFi Responding Parties are without sufficient

7  information regarding the complete basis for the DFPI's decision to grant BlockFi Lending's

8  license and on that basis denies the allegation.  However, the BlockFi Responding Parties admit

9  Gerro's allegation that by the time the DFPI granted BlockFi Lending's finance lender and broker

10  license, the DFPI was well aware of BlockFi Lending's planned business operations for BlockFi

11  Lending's clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held

12  as collateral whether directly or through a third party.  The BlockFi Responding Parties further

13  allege that the DFPI's grant of BlockFi Lending's license was consistent with applicable law (and

14  BlockFi Lending's position on applicable law) including but not limited to the California Finance

15  Law, and that the grant reflected the DFPI's determination that BlockFi Lending's planned

16  business operations were proper and consistent with applicable law.  The BlockFi Responding

17  Parties further admit that the DFPI, with knowledge of BlockFi Lending's business plans,

18  including its business plan for its clients to pledge cryptocurrency to secure loans and for the

19  cryptocurrency to be held as collateral whether directly or through a third party, granted BlockFi

20  Lending its finance lender and broker license.  The BlockFi Responding Parties also incorporate

21  their allegations stated in paragraph 120 as though fully set forth herein.  Except as expressly

22  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

23      134.  As to paragraph 134, the BlockFi Responding Parties do not have sufficient

24  information regarding a possible DFPI "policy" for issuing finance lender licenses in connection

25  with digital or intangible assets and on that basis denies the allegation.  However, the BlockFi

26  Responding Parties admit Gerro's allegation that by the time the DFPI granted BlockFi Lending's

27  finance lender and broker license, the DFPI had been consistently made aware by BlockFi Lending

28  and Mr. Washburn of BlockFi Lending's planned business operations for BlockFi Lending's

39

1    clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral

2    whether directly or through a third party. The BlockFi Responding Parties further allege that the

3    DFPI's grant of BlockFi Lending's license was consistent with applicable law (and BlockFi

4    Lending's position on applicable law) including but not limited to the California Finance Law, and

5    that the grant reflected the DFPI's determination that BlockFi Lending's planned business

6    operations were proper and consistent with applicable law. The BlockFi Responding Parties

7    further admit that the DFPI, with knowledge of BlockFi Lending's business plans, including its

8    business plan for its clients to pledge cryptocurrency to secure loans and for the cryptocurrency to

9    be held as collateral whether directly or through a third party, granted BlockFi Lending its finance

10   lender and broker license. The BlockFi Responding Parties also incorporate its allegations stated

11   in paragraph 120 of this Answer as though fully set forth herein. Except as expressly admitted or

12   alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

13       135.    As to paragraph 135, the BlockFi Responding Parties do not have sufficient

14   information regarding a possible DFPI "policy" for issuing finance lender licenses in connection

15   with digital or intangible assets and on that basis denies the allegation. However, the BlockFi

16   Responding Parties admit Gerro's allegation that by the time the DFPI granted BlockFi Lending's

17   finance lender and broker license, the DFPI had been consistently made aware by BlockFi Lending

18   and Mr. Washburn of BlockFi Lending's planned business operations for BlockFi Lending's

19   clients to pledge cryptocurrency to secure loans and for the cryptocurrency to be held as collateral

20   whether directly or through a third party. The BlockFi Responding Parties further allege that the

21   DFPI's grant of BlockFi Lending's license was consistent with applicable law (and BlockFi

22   Lending's position on applicable law) including but not limited to the California Finance Law, and

23   that the grant reflected the DFPI's determination that BlockFi Lending's planned business

24   operations were proper and consistent with applicable law. The BlockFi Responding Parties

25   further admit that the DFPI, with knowledge of BlockFi Lending's business plans, including its

26   business plan for its clients to pledge cryptocurrency to secure loans and for the cryptocurrency to

27   be held as collateral whether directly or through a third party, granted BlockFi Lending its finance

28   lender and broker license. The BlockFi Responding Parties also incorporate its allegations stated

40

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

184

1    in paragraph 120 of this Answer as though fully set forth herein. Except as expressly admitted or

2    alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

3        136.    As to paragraph 136, the BlockFi Responding Parties admit that Jan Lynn Owen is

4    the former Commissioner of the DFPI (then the DBO). The BlockFi Responding Parties admit

5    that Ms. Owen is currently a senior advisor at the law firm of Manatt, Phelps, & Phillips, LLP.

6    The BlockFi Responding Parties admit that Charles Washburn represented BlockFi Lending in

7    connection with BlockFi Lending's efforts to obtain a finance lender and broker license from the

8    DFPI. The BlockFi Responding Parties admit that Charles Washburn is an attorney employed by

9    Manatt, Phelps, & Phillips, LLP. Except as expressly admitted or alleged herein, the BlockFi

10   Responding Parties deny the allegations in this paragraph.

11       137.    Admit. For the convenience of the Court, the BlockFi Responding Parties attach a

12   true and correct copy of a clearer, more readable copy of Ms. Owen's declaration hereto as

13   Exhibit 1.

14       138.    As to paragraph 138, the BlockFi Responding Parties admit that as a finance lender,

15   BlockFi Lending is permitted to hold or use cryptocurrency or other collateral as security for the

16   loans that it gives to borrowers and that Ms. Owen accurately declared that the DFPI approved of

17   those operations. Except as expressly admitted or alleged herein, the BlockFi Responding Parties

18   deny the allegations in this paragraph.

19       139.    As to paragraph 139, the BlockFi Responding Parties do not have sufficient

20   information regarding the DFPI's granting of other licenses generally and on that basis deny the

21   allegation. However, the BlockFi Responding Parties allege that the DFPI has granted a finance

22   lender license to BlockFi Lending's competitors Unchained Capital, Inc. (license number 60DBO-

23   78867) and Salt Lending (via Salt Master Fund II, LLC, license number 60DBO-87584,

24   https://saltlending.com), which has a similar business operation model. Except as expressly

25   admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

26       140.    As to paragraph 140, BlockFi Lending does not have sufficient information

27   regarding a possible DFPI "policy" for issuing finance lender licenses in connection with digital

28   or intangible assets and on that basis denies the allegation. However, the BlockFi Responding

41

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1  Parties admit Gerro's allegation that by the time the DFPI granted BlockFi Lending's finance

2  lender and broker license, the DFPI was well aware of BlockFi Lending's planned business

3  operations for BlockFi Lending's clients to pledge cryptocurrency to secure loans and for the

4  cryptocurrency to be held as collateral whether directly or through a third party.  The BlockFi

5  Responding Parties allege that the DFPI's grant of BlockFi Lending's license was consistent with

6  applicable law including but not limited to the California Finance Law, and that the grant reflected

7  the DFPI's determination that BlockFi Lending's planned business operations were proper and

8  consistent with applicable law.  The BlockFi Responding Parties admit that the DFPI, with

9  knowledge of BlockFi Lending's business plans, including its business plan for its clients to pledge

10  cryptocurrency to secure loans and for the cryptocurrency to be held as collateral whether directly

11  or through a third party, granted BlockFi Lending its finance lender and broker license.  The

12  BlockFi Responding Parties also incorporate their allegations stated in paragraph 120 as though

13  fully set forth herein.  Except as expressly admitted or alleged herein, the BlockFi Responding

14  Parties deny the allegations in this paragraph.

15    141.    As to paragraph 141, the BlockFi Responding Parties admit that Gerro borrowed

16  money from BlockFi Lending and voluntarily pledged collateral to secure the loan.  The BlockFi

17  Responding Parties are without sufficient information to admit or deny the remaining allegations

18  and on that basis deny the allegations.

19    142.    As to paragraph 142, the BlockFi Responding Parties admit that under the Loan

20  Agreement and in its capacity as a properly licensed finance lender, BlockFi Lending lent money

21  to Gerro.  Gerro's allegation concerning "under color of authority of Commissioner's License" is

22  vague and on that basis BlockFi denies the allegation.  Except as expressly admitted or alleged

23  herein, the BlockFi Responding Parties deny the allegations in this paragraph.

24    143.    As to paragraph 143, the BlockFi Responding Parties admit that after Gerro

25  defaulted under the Loan Agreement, BlockFi Lending caused collateral pledged by Gerro to be

26  liquidated pursuant to the terms of the Loan Agreement.  The BlockFi Responding Parties admit

27  that Gerro has filed two separate lawsuits against BlockFi Lending and its affiliates and has named

28  BlockFi Lending a Real Party in Interest in this matter.  Except as expressly admitted or alleged

42

1    herein, the BlockFi Responding Parties deny the allegations in this paragraph.

2      144.    As to paragraph 144, the BlockFi Responding Parties admit that Gerro ignored a

3 Delaware forum selection clause to which he agreed in writing three times and filed Case no.

4 20BBCV00308 (*Gerro I*) in California. The BlockFi Responding Parties admit that the court in

5 that matter correctly enforced the Delaware forum selection clause and stayed that matter. Except

6 as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

7 this paragraph.

8      145.    As to paragraph 145, the BlockFi Responding Parties admit that approximately one

9 week after appealing the court's order in *Gerro I*, Gerro filed a second lawsuit (Case No.

10 20STCV31493, "*Gerro II*") against BlockFi Lending based on the same allegations and same

11 primary right as the first action, this time requesting injunctive relief. The BlockFi Responding

12 Parties deny that Gerro sought "public" injunctive relief in *Gerro II* or that the relief sought or the

13 filing of the case generally was otherwise proper. Except as expressly admitted or alleged herein,

14 the BlockFi Responding Parties deny the allegations in this paragraph.

15      146.    As to paragraph 146, the BlockFi Responding Parties admit that the court in *Gerro*

16 *II* correctly determined that *Gerro II* involved the same primary right and constituted the same

17 cause of action as *Gerro I* and was therefore an improper duplicative lawsuit by Gerro. Except as

18 expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this

19 paragraph.

20      147.    Denied.

21      148.    Denied.

22      149.    As to paragraph 149, the BlockFi Responding Parties admit that the Real Parties in

23 Interest in this matter are not chartered banks.

24      150.    As to paragraph 150, the BlockFi Responding Parties admit that the Real Parties in

25 Interest in this matter are not regulated by the SEC as brokers or dealers.

26      151.    As to paragraph 151, the BlockFi Responding Parties admit that the Real Parties in

27 Interest in this matter are not licensed pawnbrokers.

28      152.    As to paragraph 152, the BlockFi Responding Parties admit that the Real Parties in

43

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1    Interest in this matter are not licensed pawnbrokers.

2        153.    As to paragraph 153, the BlockFi Responding Parties admit that the Real Parties in

3    Interest in this matter are not insured by the FDIC.

4        154.    As to paragraph 154, the BlockFi Responding Parties admit that the Real Parties in

5    Interest in this matter are not protected by the Securities Investor Protection Corporation.

6                            **FIRST CAUSE OF ACTION**

7                        "WRIT OF MANDATE (CIV. PROC. § 1085)"

8        155.    As to paragraph 154, the BlockFi Responding Parties reallege and repeat each and

9    every response set forth in its responses to the preceding paragraphs, inclusive, and incorporates

10   them by reference as if fully set forth herein.

11       156.    Denied.

12       157.    As to paragraph 156, the BlockFi Responding Parties do not have sufficient

13   information concerning purported communications between Gerro and the DFPI and on that basis

14   deny the allegations of this paragraph. In addition, to the extent that the allegations of this

15   paragraph seek to paraphrase or characterize the contents of documents referenced, the documents

16   speak for themselves. Except as expressly admitted or alleged herein, the BlockFi Responding

17   Parties deny the allegations in this paragraph.

18       158.    As to paragraph 157, the BlockFi Responding Parties do not have sufficient

19   information concerning purported communications between Gerro and the DFPI and on that basis

20   denies the allegations of this paragraph. In addition, to the extent that the allegations of this

21   paragraph seek to paraphrase or characterize the contents of documents referenced, the documents

22   speak for themselves. Except as expressly admitted or alleged herein, the BlockFi Responding

23   Parties deny the allegations in this paragraph.

24       159.    As to paragraph 159, the BlockFi Responding Parties do not have sufficient

25   information concerning Gerro's correspondence with the DFPI and on that basis denies the

26   allegations of this paragraph. The BlockFi Responding Parties further deny the allegations of this

27   paragraph or that Gerro is entitled to Gerro's requested relief. Except as expressly admitted or

28   alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

                                        44

160.    As to paragraph 160, the BlockFi Responding Parties do not have sufficient information concerning purported "administrative action" taken by the DFPI or "Gerro's numerous consumer complaints" from Gerro and on that basis deny the allegations of this paragraph. The BlockFi Responding Parties further deny the allegations of this paragraph or that Gerro is entitled to Gerro's requested relief. The BlockFi Responding Parties further allege that the DFPI's refusal to take the action requested by Gerro confirms the impropriety of Gerro's request. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

161.    As to paragraph 161, the BlockFi Responding Parties admit that BlockFi Lending continues its lawful operations as a finance lender in California and enters into contracts with its clients. The BlockFi Responding Parties admit that Exhibit 18 has similarities to contracts executed with BlockFi Lending's clients, including the contracts executed with Gerro. In addition, the BlockFi Responding Parties allege that Gerro entered into loan agreements with BlockFi Lending on three separate occasions. The BlockFi Responding Parties allege that Gerro did so voluntarily, understood the terms of those contracts, and agreed to those terms. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

162.    As to paragraph 162, the BlockFi Responding Parties deny that Exhibit 18 is a true and correct copy of any of the three executed contracts with BlockFi Lending that Gerro voluntarily executed in connection with finance lending activities, and BlockFi Lending objects to Gerro's failure to provide a complete and accurate record due to (in part) Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending. Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

163.    Denied.

164.    Denied.

165.    Denied.

166.    As to paragraph 166, the BlockFi Responding Parties admit that BlockFi Lending's clients pledge cryptocurrency to secure loans provided by BlockFi Lending. The BlockFi Responding Parties deny that Exhibit 18 is a true and correct copy of any of the three executed

45

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

189

1  contracts Gerro voluntarily entered into with BlockFi Lending in connection with finance lending

2  activities, or that it is an executed contract with any of BlockFi Lending's California clients. The

3  BlockFi Responding Parties object to Gerro's failure to provide a complete and accurate record

4  due to (in part) Gerro's apparent refusal to attach the contracts he executed with BlockFi Lending.

5  Except as expressly admitted or alleged herein, the BlockFi Responding Parties deny the

6  allegations in this paragraph.

7       167.       As to paragraph 167, the BlockFi Responding Parties admit that BlockFi Lending's

8  clients pledge cryptocurrency to secure loans provided by BlockFi Lending. Except as expressly

9  admitted or alleged herein, the BlockFi Responding Parties deny the allegations in this paragraph.

10      168.       As to paragraph 168, the BlockFi Responding Parties admit that BlockFi Lending

11  neither acts as a custodian of collateral nor "receives" or "possesses" a client's pledged collateral.

12  The BlockFi Responding Parties admit that collateral is held by a third party custodian such as

13  Gemini. The BlockFi Responding Parties deny that Gemini is BlockFi Lending's agent. Except

14  as expressly admitted or alleged herein, the BlockFi Responding Parties deny the allegations in

15  this paragraph.

16      169.       Denied. The BlockFi Responding Parties allege that Gerro does not have standing

17  to challenge the issuance of BlockFi Lending's properly issued California finance lender and

18  broker license or to seek is revocation. The BlockFi Responding Parties further allege that any

19  such challenge or revocation is without merit and not appropriate regardless of standing. The

20  BlockFi Responding Parties further allege that Gerro has adequate legal remedies for any

21  purported complaints about his prior dealings with BlockFi Lending, as is evidenced in part by

22  two pending actions previously filed by Gerro. Except as expressly admitted or alleged herein,

23  the BlockFi Responding Parties deny the allegations in this paragraph.

24      170.       Denied. The BlockFi Responding Parties allege that Gerro does not have standing

25  to challenge the issuance of BlockFi Lending's properly issued California finance lender and

26  broker license or to seek is revocation. The BlockFi Responding Parties further allege that any

27  such challenge or revocation is without merit and not appropriate regardless of standing. The

28  BlockFi Responding Parties further allege that Gerro has adequate legal remedies for any

46

1  purported complaints about his prior dealings with BlockFi Lending, as is evidenced in part by

2  two pending actions previously filed by Gerro.  Except as expressly admitted or alleged herein,

3  the BlockFi Responding Parties deny the allegations in this paragraph.

4       171.    Paragraph 171 includes Gerro's legal theories and requests for relief to which no

5  response is required.  To the extent that a response is required, the Petition in this matter speaks

6  for itself with respect to the relief sought and the allegations of this paragraph or that Gerro is

7  entitled to his requested relief is denied.  Except as expressly admitted or alleged herein, the

8  BlockFi Responding Parties deny the allegations in this paragraph.

9       172.    Denied.

10      173.    Denied.

11      174.    Denied.

12      175.    Denied.

13  ### AFFIRMATIVE DEFENSES

14      As separate affirmative defenses to each of the claims in Gerro's Petition, The BlockFi

15  Responding Parties allege as follows:

16  ### First Affirmative Defense

17  #### (Lack of Standing)

18      1.    Gerro lacks standing to bring the claims asserted in the Petition.

19  ### Second Affirmative Defense

20  #### (Failure to State a Claim)

21      2.    Gerro's Petition, in whole or in part, fails to state a claim upon which relief may

22  be granted.

23  ### Third Affirmative Defense

24  #### (Unclean Hands)

25      3.    Gerro is barred from claiming or recovering any relief under the doctrine of

26  unclean hands.

27  ///

28  ///

47

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

**Fourth Affirmative Defense**

(Estoppel)

4.    Through his actions, inaction, conduct, and representations, Gerro explicitly or tacitly approved of the conduct about which Gerro complains in its Petition, barring the relief sought in the Petition.

**Fifth Affirmative Defense**

(Waiver)

5.    By reason of its conduct, action and inaction, Gerro has knowingly and voluntarily waived the right to assert any of the claims alleged in the Complaint.

**Sixth Affirmative Defense**

(No Harm or Damages)

6.    Gerro's claims are barred in whole or in part because he has not suffered any cognizable harm or damage.

**Seventh Affirmative Defense**

(Adequate Remedy at Law/Extraordinary Writ Relief Unnecessary)

7.    Gerro's request for extraordinary writ relief is barred because, as is evidenced by the two prior actions Gerro filed against BlockFi Lending, Gerro has an adequate remedy at law for any purported harm suffered or any complaints about his prior business dealings with BlockFi Lending.

**Eighth Affirmative Defense**

(Judicial Abstention)

8.    The Court lacks jurisdiction over the subject matter of Gerro's action, as the relief Gerro seeks improperly asks the Court to assume and interfere with the regulatory powers exclusively entrusted in the first instance to the Commissioner.

**Ninth Affirmative Defense**

(Laches)

9.    The request for writ relief is unreasonably delayed given that BlockFi Lending LLC has been duly licensed as a finance lender in California since August 16, 2018.

48

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

1       The BlockFi Responding Parties reserve the right to assert additional defenses upon

2  further particularization of Gerro's claims, upon examination of certain additional documents,

3  upon discovery of further information concerning the alleged claims, and upon the development

4  of other pertinent information.

5       WHEREFORE, the BlockFi Responding Parties pray for judgment as follows:

6           1.    That the Petition be dismissed with prejudice and that Gerro

7  take nothing by way of his Petition;

8           2.    That the BlockFi Responding Parties recover their costs of suit and

9  attorney's fees; and

10          3.    For such other and further relief as the Court may deem just and proper.

11

12  DATED:  September 8, 2021        HAYNES AND BOONE, LLP

13

14                          By: _____

                                David Clark, Attorney for Real Party in

15                                 Interest BLOCKFI LENDING LLC,
                                 BLOCKFI TRADING LLC, and

16                                 BLOCKFI, INC.

17  4837-5668-0698 v.1

18

19

20

21

22

23

24

25

26

27

28

49

VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC, BLOCKFI TRADING LLC,
AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE

# EXHIBIT "1"



1    HAYNES AND BOONE, LLP
     David Clark/Bar No. 275204
2      david.clark@haynesboone.com
     Andrea Levenson/Bar No. 323926
3      andrea.levenson@haynesboone.com
     600 Anton Boulevard, Suite 700
4    Costa Mesa, CA  92626
     Telephone:    (949) 202-3000
5    Facsimile:    (949) 202-3001

6    Attorneys for Defendants
     BLOCKFI LENDING LLC
7    BLOCKFI INC.

8

                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
              COUNTY OF LOS ANGELES, BURBANK COURTHOUSE
10

11
     GEORGE GERRO, an individual,        )    CASE NO.: 20STCV31493
12                                       )
                  Plaintiff,             )    ASSIGNED FOR ALL PURPOSES TO:
13                                       )        Honorable William D. Stewart
            vs.                          )        Department A
14                                       )
     BLOCKFI LENDING LLC, a Delaware     )
15   limited liability company; SCRATCH  )
     SERVICES, LLC, a Delaware limited   )DECLARATION TO JAN LYNN OWEN
16   liability company; and DOES 1 through )
     100,                                )
17                                       )
                  Defendants.            )
18                                       )
19                                       )

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────
              DECLARATION OF JAN LYNN OWEN

                                                               195

## DECLARATION OF JAN LYNN OWEN

I, JAN LYNN OWEN, declare as follows:

1. I am the former Commissioner of the Department of Business Oversight, and I am currently a senior advisor in the Financial Services Group at Manatt, Phelps & Phillips, LLP. I have personal knowledge of the matters set forth herein and, if called upon to testify, I could and would testify competently thereto.

2. In December 2011, I was appointed by Governor Edmund G. Brown Jr. to be the Commissioner of the California Department of Corporations. In July 2013, the Department of Corporations combined with the California Department of Financial Institutions to form the Department of Business Oversight (the "DBO," now called the Department of Financial Protection and Innovation, or "DFPI"). I therefore became the first Commissioner of the DBO when those two entities combined in 2013, and I remained Commissioner of the DBO until I left on May 31, 2019. I was therefore Commissioner of the DBO when BlockFi Lending, LLC ("BlockFi") applied for and was granted its Finance Lender and Broker License application in 2018, although I do not recall personally working on BlockFi's application.

3. As Governor Brown's appointment as Commissioner of the DBO, my responsibilities at the DBO included supervision of the entirety of the DBO's operations, including supervision of the DBO's processing and consideration of license applications in approximately 22 different areas of California law, including, without limitation, the California Financing Law ("CFL") (Division 9 of the California Financial Code. Specifically as to license applications, at times I would review those applications in order to monitor the DBO's application process generally and evaluate the performance of our agency as a whole and its individual employees. At other times, I would personally review individual applications and have the authority to make ultimate determinations on whether the DBO should grant or deny certain licenses.

1

DECLARATION OF JAN LYNN OWEN

4.  Particularly given the size of California's economy and its significant influence well outside California, my responsibilities as Commissioner included critical issues such as ensuring that the DBO correctly applied the law when evaluating license applications as well as considering the public policy issues when reviewing the practical impact of DBO decisions inside California as well as nationwide. During my tenure as Commissioner of the DBO, our agency licensed and chartered approximately 368,000 licensees, including many thousands of finance lender licensees alone.

5.  I have read the contention in plaintiff George Gerro's March 19, 2021 brief that as a finance lender, BlockFi is somehow not permitted to hold or use cryptocurrency (or other collateral) as security for the loans it gives to its borrowers. I have also read Mr. Gerro's contention that by doing so, BlockFi is somehow acting as a pawnbroker rather than a finance lender and should be licensed and regulated accordingly.  Each of these contentions is incorrect.

6.  As for Mr. Gerro's first contention, during my tenure as Commissioner the DBO granted many licenses to finance lenders whose planned business operations included the holding and/or use of collateral that was being used to secure loans. The business practice of holding and using collateral—including the rehypothecation of that collateral—is common both in California and throughout the United States in connection with secured lending. As Commissioner, I was required to become intimately familiar with California law including, but not limited to, the CFL (including section 22009) as well as the Uniform/California Commercial Code, and the argument that the holding or use of collateral by a finance lender is somehow inconsistent with either of these laws is incorrect. Indeed, a rule to the contrary —that finance lenders were somehow not permitted to hold or use collateral securing loans— would not only be contrary to established California law, it would significantly and detrimentally hamper lending activities and related business operations throughout the State. Accordingly, during my tenure as Commissioner, the DBO granted finance lender licenses to businesses planning to hold and/or use collateral securing loans, including but not limited to licenses which I approved as DBO Commissioner.

2

DECLARATION OF JAN LYNN OWEN

7. Mr. Gerro's pawnbroker assertions are likewise incorrect. BlockFi's stated business operations—holding and/or using collateral in the form of cryptocurrency for secured loans, falls squarely under the umbrella of business activities performed by a finance lender licensed by the DBO. Depending on the business model of any particular entity, finance lenders use a wide variety of collateral to secure loans, including traditional U.S. dollars, physical precious metals (which are typically vaulted with the lender or a third party custodian), stocks and other securities, and (more recently) cryptocurrency such as Bitcoin, Ethereum and Litecoin. Among other instances, licensees may reasonably conclude that holding collateral is appropriate in situations where traditional collateral controls such as Uniform Commercial Code filings are insufficient to provide effective restrictions on permanent alienation and disposal of the collateral, for example with digital assets and cryptocurrency. A finance lender license is the appropriate license in California for such operations, and the holding and use of these various types of collateral is not only consistent with California finance lender laws, but is also the standard commercial lending practice for finance lending on easily transferrable collateral. A pawnbroker license is neither appropriate nor required.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 23rd day of March, 2021, at _West Sacramento_, California.

_JAN LYNN OWEN_

3

DECLARATION OF JAN LYNN OWEN

1

<u>**VERIFICATION**</u>

2    I, DAVID SPACK, declare:

3    I am the Chief Compliance Officer at BlockFi Lending LLC, BlockFi Inc., and BlockFi

4    Trading LLC (collectively, "BlockFi") and am authorized to make this Verification on their

5    behalf.

6    I have reviewed the *VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI*

7    *LENDING LLC, BLOCKFI INC., AND BLOCKFI TRADING LLC TO PETITIONER'S FIRST*

8    *AMENDED VERIFIED PETITION FOR WRIT OF MANDATE* (the "Answer"). The Answer is

9    based on and is therefore limited by the records and information presently collected and thus far

10    discovered in the course of this litigation. Subject to the foregoing, I am informed and believe,

11    and on that ground allege, that the matters stated in the Answer are true.

12    I declare under penalty of perjury under the laws of the State of California that the

13    foregoing is true and correct.

14    Executed on September 8, 2021, at New York, New York.

15

16    *David Spack*

17    DAVID SPACK

18

19

20

21

22

23

24

25

26

27

28

199

1

<u>PROOF OF SERVICE</u>

2     STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3         I am employed in the County of Orange, State of California.  I am over the age of 18 and
4 am not a party to the within action; my business address is 600 Anton Boulevard, Suite 700, Costa
Mesa, California 92626.

5         On *September 9, 2021*, I served a true and correct copy of the document entitled:
*VERIFIED ANSWER OF REAL PARTIES IN INTEREST BLOCKFI LENDING LLC,*
6 *BLOCKFI TRADING LLC, AND BLOCKFI, INC. TO PETITIONER'S FIRST AMENDED*
*VERIFIED PETITION FOR WRIT OF MANDATE* on the interested parties in this action by
7 placing true copies thereof, enclosed in sealed envelopes, as indicated below and addressed as
follows:

8

9 | John M. Gerro, Esq. | TJ Fox, Esq. |
|---|---|
| George J. Gerro, Esq. | California Department of Justice |
| Law Offices of Gerro & Gerro | 600 W. Broadway, Suite 1800 |
| 530 S. Glenoaks Boulevard, Suite 200 | San Diego, CA 92101-3375 |
| Burbank, CA  91502 | Telephone: (619) 738-9000 |
| Telephone: (818) 840-0000 | E-Mail:      tjfox@doj.ca.gov |
| E-Mail:      john@gerrolaw.com | *[Attorneys for Defendant CRISTOPHER S.* |
|              george@gerrolaw.com | *SCHULTZ, as Commissioner of Financial* |
| *[Attorneys for Petitioner GEORGE* | *Protection and Innovation of the State of* |
| *GERRO]* | *California]* |

14

15     ☒    **(By U.S. Mail)** I am readily familiar with my employer's business practice for
16 collection and processing of correspondence for mailing with the United States Postal Service.  I
am aware that on motion of the party served, service is presumed invalid if postal cancellation date
17 or postage meter is more than one day after date of deposit for mailing in affidavit.  I caused such
envelope, with postage thereon fully prepaid, to be placed in the United States Mail at Costa Mesa,
18 California as indicated above.

19     ☐    **(By Electronic Delivery)** Pursuant to C.C.P. § 1010.6, I served true and correct
copies of the foregoing document by electronic delivery to the interested parties in this action as
20 indicated above.

21     ☐    **(By Express Delivery)** I served a true and correct copy, enclosed in sealed Fedex
envelopes, for collection and for delivery marked for next day delivery in the ordinary course of
22 business, addressed to the office of the addressees as indicated above.

23         I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed on *September 9, 2021*, at Costa Mesa, California.

24

25                   *Kelley L. Saunders*

26                  Kelley L. Saunders

27

28

# ATTACHMENT "31"

# ATTACHMENT "31"

# ATTACHMENT "31"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
North Central District, Burbank Courthouse, Department A

| | |
|---|---|
| 20BBCV00308 | August 10, 2020 |
| **GEORGE GERRO vs BLOCKFI LENDING LLC, A** | 2:52 PM |
| **DELAWARE LIMITED LIABILITY COMPANY** | |

Judge: Honorable William D. Stewart          CSR: None
Judicial Assistant: R. Hernandez          ERM: None
Courtroom Assistant: None          Deputy Sheriff: None

---

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

Other Appearance Notes: **NON-APPEARANCE**

---

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 08/06/2020, now rules as follows: (see below)

The Court, having taken the matter under submission on 08/06/2020, now rules as follows: (see below)

The Court, having taken the matter under submission on 08/06/2020, now rules as follows: (see below)

The Court, having taken the matter under submission on 08/06/2020, now rules as follows: (see below)

On the instant matters heretofore taken under submission on August 06, 2020, the Court makes its ruling as follows:

In accordance with Verdugo v Alliantgroup, L.P., (2015) 237 Cal.App.4th 141, the court finds that plaintiff has unwaivable rights under California law. These are: California Commercial Code Section 9626(b)(1); California Financial Code Sections 22161(a)(5-7), 22750(b) and 22752(a). Accordingly the burden shifts to moving party to show that litigation in the selected forum, in this case the courts of the State of Delaware, will not impinge or diminish in any way the plaintiff's unwaivable rights.

Moving party contends that "Delaware Courts Apply California Law When Fundamental California Public Policy is at Issue." In its SUPPLEMENTAL BRIEF OF DEFENDANT BLOCKFI LENDING LLC IN SUPPORT OF MOTION TO STAY, OR IN THE ALTERNATIVE TO DISMISS, THE ACTION ON THE GROUND OF FORUM NON

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### North Central District, Burbank Courthouse, Department A

**20BBCV00308**                                              August 10, 2020
**GEORGE GERRO vs BLOCKFI LENDING LLC, A**                        2:52 PM
**DELAWARE LIMITED LIABILITY COMPANY**

Judge: Honorable William D. Stewart          CSR: None
Judicial Assistant: R. Hernandez             ERM: None
Courtroom Assistant: None                    Deputy Sheriff: None

CONVENIENS filed July 31, 2020, defendant Blockfi Lending, LLC ( and joined in by the co-defendant Scratch Services, LLC) cites a number of decisions and rules that make clear that the stated policies of the courts in Delaware will apply California law when fundamental California public policy is at issue, as it is here. The court finds that defendants have met their burden and established that the courts of the State of Delaware will not impinge or diminish in any way the plaintiff's unwaivable rights.

The cited unwaivable rights and fundamental California public policy (California Commercial Code Section 9626(b)(1); California Financial Code Sections 22161(a)(5-7), 22750(b) and 22752(a).) are considered by this court to constitute the basis for the exercise of due process of law. (Plaintiff did not freely give up his unwaivable and fundamental rights when agreeing to the forum selection clause.) Accordingly, the court will not dismiss the action herein, but will grant a stay pending the resolution of the matter in the forum state selected in the agreement of the parties. When such litigation is concluded, any party may utilize this action to domesticate the sister-state judgment, subject to the requirements set forth herein, i.e., that the sister-state court has afforded the plaintiff his unwaivable rights in accordance with fundamental California public policy. The California court has the power to refuse to enforce a sister-state judgment which violates due process. See Commercial National Bank of Peoria v Kermeen (1990) 225 Cal.App.3rd 396.

Accordingly the court will grant the motion forum non conveniens and stay the within action, pending resolution of the dispute in accordance with the forum selection clause in the agreement at issue in the litigation. The court sets the date of April 7, 2021 at 9:30 AM in Dept. A for an OSC re status of sister-state litigation.

Since the issues raised in the demurrer should be considered by the court which will hear the merits of the controversy as a matter of comity, the court orders the demurrer off calendar.

Moving party is ordered to give notice of these orders and findings.

A copy of this minute order is mailed to counsel for appearing parties.

The Motion to Stay Execution or in the Alternative to Dismiss, the Action on the Grounds of Forum Non-Conveniens filed by Blockfi Lending LLC, a Delaware Limited Liability Company on 06/10/2020 is Granted.

The Motion for Stay of Proceedings or in the Alternative Dismiss filed by Scratch Services,

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**

North Central District, Burbank Courthouse, Department A

**20BBCV00308**                                                     August 10, 2020
**GEORGE GERRO vs BLOCKFI LENDING LLC, A**                          2:52 PM
**DELAWARE LIMITED LIABILITY COMPANY**

Judge: Honorable William D. Stewart          CSR: None
Judicial Assistant: R. Hernandez             ERM: None
Courtroom Assistant: None                    Deputy Sheriff: None

LLC, a Delaware Limited Liability Company on 06/15/2020 is Granted.

The Court hereby stays the case in its entirety.

Order to Show Cause Re: re Status of Sister-State Litigation is scheduled for 04/07/2021 at 09:30 AM in Department A at Burbank Courthouse.

Certificate of Mailing is attached.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

George J. Gerro, Esq.
530 S. Glenoaks Blvd., Suite 200
Burbank, CA 91502

Self-Represented Creditor

| | |
|---|---|
| Case No.: | 22-19361 (MBK) |
| Chapter: | 11 |

In Re:

BLOCKFI, INC., et al.

Debtors

| | |
|---|---|
| Adv. No.: | |
| Hearing Date: | |
| Judge: | Michael Kaplan |

## CERTIFICATION OF SERVICE

1. I, _____ Ethan Poytress _____ :

   ☐ represent _____ in this matter.

   ☒ am the secretary/paralegal for _____ George J. Gerro _____, who represents
   _____ himself _____ in this matter.

   ☐ am the _____ in this case and am representing myself.

2. On _____ March 22, 2023 _____, I sent a copy of the following pleadings and/or documents
   to the parties listed in the chart below.
   PROOF OF CLAIM OF GEORGE J. GERRO; AND ATTACHMENTS "1" THROUGH "31"
   INCLUSIVE

3. I certify under penalty of perjury that the above documents were sent using the mode of service
   indicated.

Date: _____ March 22, 2023 _____          /s/ Ethan Poytress
                                               Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| BlockFi Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC 850 Third Avenue, Suite 412 Brooklyn, NY 11232 | Claims Processing Agent | ☒ Hand-delivered ☐ Regular mail ☐ Certified mail/RR ☐ Other _____ (As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered ☐ Regular mail ☐ Certified mail/RR ☐ Other _____ (As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered ☐ Regular mail ☐ Certified mail/RR ☐ Other _____ (As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered ☐ Regular mail ☐ Certified mail/RR ☐ Other _____ (As authorized by the Court or by rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered ☐ Regular mail ☐ Certified mail/RR ☐ Other _____ (As authorized by the Court or by rule. Cite the rule if applicable.) |

2