| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **GORSKI & KNOWLTON PC**<br>Carol L. Knowlton (NJ Bar No. 017501981)<br>311 Whitehorse Avenue, Suite A<br>Hamilton, New Jersey 08610<br><br>*Local Counsel for Creditor<br>George J. Gerro* | |
| In Re:<br><br>BLOCKFI INC., *et al.*,[1]<br><br>Debtors. | Case No.:   22-19361 (MBK)<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date: July 20, 2023<br><br>Judge:  The Honorable Michael B. Kaplan |

**MEMORANDUM OF LAW IN SUPPORT OF THE RESPONSE OF GEORGE J. GERRO TO DEBTORS' FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS AND CROSS-MOTION OF GEORGE J. GERRO FOR AN ORDER TEMPORARILY ALLOWING CLAIM NO. 12386 PURSUANT TO F.R.B.P. RULE 3018(a) FOR THE SOLE PURPOSE OF VOTING ON A CHAPTER 11 PLAN**

I.   **Introduction**

     This Memorandum of Law provides the statutory construction and legislative history of California Financial Code section 22009, which defines " 'Finance lender' " under the California Financing Law, and California Financial Code section 21000, which defines a "pawnbroker."

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

1

BlockFi's California Finance Lender License, No. XXXXX-X1955 permits BlockFi to "engage in the business of 'finance lender' . . . as defined in said law," i.e. "the California Financing Law [Fin. Code, § 22000 et seq.]." See Certification of George J. Gerro, Ex. 1, Att. 14, p. 053. In turn, the Financing Law statutorily defines a "Finance lender," in part, as a lender that takes security of "personal property, the **use and possession of which property is retained by other than the mortgagee or lender**." Cal. Fin. Code, § 22009 (emphasis added).

The question presented is whether BlockFi can retain use or possession of bitcoin securing its loans made pursuant to its California Finance Lender License.

**A. Statutory Construction Precludes a Finance Lender from Retaining Pre-Default Use and Possession of Bitcoin.**

California Financial Code section 22009 (§ 22009), as incorporated by reference into BlockFi's Finance Lender License, contains clear language of exclusion.[2] Under California law, a finance lender may secure its loan with personal property as long as the "**use and possession thereof is not to be in the lender**." (*Ex Parte Stephan* (1915) 170 Cal. 48, 50 (emphasis added);

---

[2] The statutory definition of a " 'Finance lender' " states, in full:

> " 'Finance lender' includes any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans may include lending money and taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to **personal property, the use and possession of which property is retained by other than the mortgagee or lender**, or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission. [¶] It is the intent of the Legislature that the definition of finance lender shall be interpreted to include a personal property broker as referenced in Section 1 of Article XV of the California Constitution."

Cal. Fin. Code, § 22009, emphasis added.

2

see *West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 615; *Carter v. Seaboard Finance Co.* (1949) 33 Cal.2d 564, 576.)

The fact that the statute contains an implied prohibition, yet "no express prohibition," is not dispositive. (*Levinson v. Boas*, 150 Cal. 185, 192-193.) When conduct is "Contrary to an express provision of law," or "Contrary to the policy of express law, *though not expressly prohibited*," the conduct is unlawful. Cal. Civ. Proc., § 1667 (italics added).

When conducting statutory construction, courts do not "omit what has been inserted" into the statute. Cal. Civ. Proc., § 1858. Statutory construction must, "if possible, . . . give effect to all" provisions of the statute. *Ibid*. Moreover, § 22009's "particular provision" qualifying a finance lender's authority to lend against personal property must be deemed "paramount" to the more "general" provision, allowing security interests in general. (Civ. Proc., § 1859.)

Treating the "other than" statutory language of exclusion as surplusage would undermine our Legislature's entire statutory scheme. Thousands of statutes prohibit conduct by use of the phrase "other than." *See* California Legislative Information, search for "other than," <https://leginfo.legislature.ca.gov/faces/codesTextSearch.xhtml> [as of July 13, 2023].)

For example, imagine that the Legislature enacted a statute for licensing drug stores. This hypothetical statute could say that "the business of drug stores includes selling groceries and medications other than narcotics." Clearly, under this hypothetical, the Legislature would have intended to prohibit drug stores from selling narcotics.

### B. The Legislative History of the California Financing Law is in Accord.

The legislative history of Financial Code section 22009 demonstrates that "finance lenders" now—formerly referred to as California "personal property brokers"—were always

3

limited to *non-possessory* security interests. Personal property brokers, like pawnbrokers, lent money too. On one hand, Pawnbrokers made loans secured by collateral in their possession. On the other hand, Personal property brokers made loans secured by collateral in the borrower's possession.

In 1909, the California Legislature enacted "An act to define personal property brokers and regulate their . . . business." Cal. Stats. 1909, ch. 634, § 1, p. 969 (hereinafter referred to, as amended, the "Personal Property Broker Act"). The Personal Property Broker Act "declared and defined to be a personal property broker" any lender taking security in "**personal property, the use or possession of which is retained by other than the mortgagee or lender**." Cal. Stats. 1909, ch. 634, § 1, p. 969, emphasis added.[3] In 1915, the California Supreme Court characterized personal property brokers as those that take security interests in "personal property . . . **the use and possession thereof is not to be in the lender**." *Ex parte Stephan*, *supra*, 170 Cal. at p. 50 (emphasis added).

In 1948, the California Attorney General categorized the statute's "other than" language as an "element," "requirement," and "condition" of a loan within the Personal Property Broker's Act. 12 Cal. Ops. Atty. Gen. 68, 69-70, Op. no. 48-153 (1948). In its opinion, the Attorney

---

[3] In 1909, the statutory definition of a personal property broker provided, in full:

> That every person or corporation engaged in the business of loaning or advancing money or other thing and taking in whole or in part as security for such loan or advance any chattel mortgage, bill of sale or other obligation or contract involving the forfeiture of rights in or to personal property, the use or possession of which is retained by other than the mortgagee or lender, or engaged in the business of loaning or advancing money or other thing, and taking either in whole or in part as security therefore any lien on, assignment of or power of attorney relative to wages, salary, earnings, income or commissions, shall be held, and, for the use and purposes of this act, is hereby declared and defined to be a personal property broker.

(Stats. 1909, ch. 634, § 1, p. 969.)

4

General expressly opined that lenders retaining use and possession of personal property fell outside the scope of the Personal Property Broker's Law. *Ibid*.

In 1949, the California Supreme Court, reviewed the legislative history and stated, in part, that the "statute defined a personal property broker as one engaged in the business of loaning money on the security of personal property **the possession of which is retained by the borrower**." *Carter*, supra, 33 Cal.2d 564, 576 (emphasis added).

In 1951, the statutory definition of "personal property broker" was relocated to the newly established Financial Code section 22009. Cal. Stats. 1951, ch. 364, § 22009, pp. 1132.[4] No substantive change was intended by establishing the California Financial Code. Cal. Fin. Code § 2.

In 1962, an Attorney General opined that "to be engaged in the business of being a personal property broker a person must be 'lending money' and in so doing must take security of the type specified in the statute." 40 Cal. Ops. Attny. Gen. 152, 153, Op. No. 62-41 (1962). In 1966, the Attorney General observed again that the "use and possession of which is retained by someone other than the finance company." 48 Cal. Ops. Attny. Gen. 93, 96, Op. No. 66-122.

In 1970, the California Supreme Court considered whether, under the facts of its case, the "use and possession was retained by other than the lender **as required by section 22009**." *West Pico Furniture Co.*, supra, 2 Cal.3d at p. 615 (emphasis added). There, the *West Pico* Court specifically held that "the *personal property* covered by the contract . . . *was* retained by other than" the lender. *Ibid.* (italics original).

---

[4] In 1951, the statutory definition stated, in full, " 'Personal property broker' includes all who are engaged in the business of lending money and taking in the name of the lender, or in any other name, in whole or in part, as security for such loan, any contract or obligation involving the forfeiture of rights in or to **personal property, the use and possession of which property is retained by other than the mortgagee or lender,** or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission.."

5

In 1973, the legislature created a temporary statutory test for "determining under Section 22009 whether a loan secured by a security interest in a security as defined in the Uniform Commercial Code is secured by personal property, the use and possession of which property is retained by other than the . . . lender." Cal. Stats. 1973, Ch. 713, § 3, p. 1288-1289, repealed by Cal. Stats. 1983, Ch. 859, § 5, p. 3146 [hereinafter referred to as the "1973-1983 Exception"].) The 1973-1983 Exception created a limited exception to the "requirement under the Personal Property Loan Law that the property which is used as collateral for the loan **must be retained by other than the lender.** Cf. Financial Code, sec 22009." Cal. Sen. Com. on Insurance and Financial Institutions, Analysis of Assem. Bill No. 2199 (1973-1974 Reg. Sess.) as amended Aug. 31, 1973 (emphasis added).

The 1973-1983 Exception applied only to equity and debt. (Stats. 1973, Ch. 713, § 3, p. 1288-1289.) For equity, the lender did not retain use or possession as long as the borrower retained the right to vote and the right to receive dividends (i.e. proceeds) from their stock. *Ibid*. For debt, the borrower must retain the right to receive interest payments (i.e. proceeds) from their bonds. *Ibid*. If the borrower retained beneficial ownership, then the lender could "have custody of the certificate evidencing the shares or bond." *Ibid*. The 1973-1983 Exception no longer exists.

In 1981, the Legislature enacted the "Consumer Finance Lenders Law." Cal. Stats. 1981, ch. 724, § 24000 *et seq*., p. 2841 (Consumer Finance Lenders Law). In 1982, the Legislature enacted the "Commercial Finance Lenders Law." Cal. Stats. 1982, ch. 1082, § 26000 et seq., p. 3932 (Commercial Finance Lenders Law). Those statutory schemes bear no indication that their licensees were ever allowed to retain use or possession of collateral securing their loans. Instead, they were viewed as sub-categories of personal property brokers, to eventually be issued finance

6

lender licenses upon payment of a small fee.  Deering's Ann. Cal. Fin. Code, § 22000, (2007 ed.) pp. 253-256.

In 1994, the Legislature passed the California Finance Lenders Law (Stats. 1994, ch. 1115) to "consolidate[] the Personal Property Brokers Law, the Consumer Finance Lenders Law, and the Commercial Finance Lenders Law," (Assem. Bill No. 2885, 3d reading August 19, 1994,) "by repealing the latter 2, [the Consumer and Commercial Finance Lenders Laws,] and **regulating consumer and commercial loans under the Personal Property Brokers Law**." Cal. Legis. Counsel's Dig., Assem. Bill No. 2885 (1993-1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., pp. 453-454 (italics added).

The 1994 California Finance Lenders Law did "not make any substantive changes" to existing law.  Cal. Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2885 (1993-1994 Reg. Sess.) as amended August 18, 1994, par. 6.  The California Financing Law then, as now, states that "The business of making consumer loans or making commercial loans may include lending money and taking [security interests in] . . . personal property, the use and possession of which property is retained by other than the mortgagee or lender."  Cal. Fin. Code, § 22009.

**C. The Statutory Scheme of the California Commercial Code is in Accord.**

A finance lender's pre-default use and possession of collateral contravenes the California Uniform Commercial Code—Secured Transactions.  Cal. Com. Code, § 9101 *et seq*. [hereinafter referred to as Article 9].  Article 9 applies regardless of whether the lender or borrower holds legal title to the collateral.  Cal. Com. Code, § 9202.

7

Article 9 sets forth the general rule: "**After default**, a secured party may . . . Take possession of the collateral." Cal. Com. Code, § 9609, subd. (a)(1) (emphasis added). Article 9 also allows perfection of security interests in "goods . . . by taking possession of the collateral" (Com. Code, § 9313, subd. (a),) but according to the official comments to the UCC, that section "**does not create a right to take possession**." U. Com. Code com. 7, 23B pt. 2, West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 9313, pp. 312-313 (emphasis added).

Under Article 9, "a secured party having possession of collateral" must remit, credit, or hold for the borrower all "proceeds . . . received from the collateral." Cal. Com. Code, § 9207, subd. (c); *id*., at § 9102, subd. (a)(64) [broadly defining proceeds]. In other words, the borrower is entitled to the beneficial use of the collateral. That requirement also applies "**before or after default**." U. Com. Code com. 4, 23B pt. 2, West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 9207, p. 200, emphasis added; Com. Code, § 9601, subd. (b).

Before default, a finance lender may only "use" a consumer's collateral to prevent waste, or in accordance with a court order. Cal. Com. Code, § 9207, subd. (b)(4). Article 9 contemplates other uses, but only "**After default**." Cal. Com. Code, § 9610, subd. (a) (emphasis added).

Article 9 further states that a "secured party may use or operate the collateral . . . . **Except in the case of consumer goods,** in the manner and to the extent agreed by the debtor." Cal. Com. Code, § 9207, subd. (b)(4)(C) (emphasis added). Article 9's restriction upon the use of consumer goods is unwaivable.[5] Cal. Com. Code, § 9602, subd. (1). " 'Goods' means all things that are movable when a security interest attaches." Cal. Com. Code, § 9102(a)(44). " 'Consumer goods' means goods that are used or bought for use primarily for personal . . .

---

[5] Gerro alleges that he "purchased and held his Bitcoin for personal purposes" (AA 54 [¶ 234],) so they constitute consumer goods

8

purposes." Cal. Com. Code, § 9102(a)(23). The only four categories of goods are mutually exclusive: equipment, inventory, and farm products, and consumer goods. Cal. Com. Code § 9102, (a)(23, 33, 34, 48). In other words, if goods securing a loan are neither equipment, inventory, nor farm products, then they constitute consumer goods.

Importantly, Article 9 contains a reverse preemption statute, clarifying that it is subject to the California Financing Law. Cal. Com. Code, § 9201. "In case of a conflict," the Financing Law "controls." *Id*. at subd. (c). Article 9 "does not . . . Validate any . . . agreement, or practice that violates" the Financing Law. *Id*. at subd. (d)(1). Moreover, Article 9 "does not . . . Extend the application of [the Financing Law] to a transaction not otherwise subject to it." *Id*. at subd. (d)(2).

## 2. BlockFi is an Unlicensed Pawnbroker, Receiving Bitcoin in Pledge as Security for its Loans.

The California Legislature intended for California Finance Lenders to retain neither use nor possession of personal property securing their loans. Thus, the Financing Law lacks important statutory safeguards to protect borrowers that relinquish use and possession of their property to their moneylender.

The California Legislature intended to subject possessory security interests to heightened borrowers' rights and lenders' duties. For example, the California Pawnbroker law contains important statutory protections, of which the Financing Law has no corresponding provisions. Pawnbrokers: 1) cannot take title to pledged property (Cal. Fin. Code, § 21002, subd. (a);) 2) cannot lease, sell, or dispossess themselves of pledged property (*id*., at § 21201, subd. (c);) 3) cannot accelerate the loan before its due date (*see ibid*.;) 4) bear the risk of a decline in the

9

value of the pledged property (*see id*., at subd. (f);) and 5) **must honor a statutory right of redemption for the entire loan term** (*id*., at subd. (c), [emphasis added].)

In *Levinson*, *supra*, 150 Cal. at page 187, the California Supreme Court interpreted a nearly identical pawnbroker law as currently governs: "Every person engaged in the business of receiving goods . . . in pledge as security for a loan is a pawnbroker . . ." Cal. Fin. Code, § 21000. *Levinson* remains good law. *See Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 993 (approvingly citing *Levinson*); *also Alexander v. Superior Court* (2003) 114 Cal.App.4th 723, 732 (following California Supreme Court precedent, reasoning that it "has survived this 74-year gap in the law and we are bound to follow it").

The *Levinson* Court held that no "particular class of goods" is exempt from the pawnbroker law. (*Levinson*, supra, 150 Cal. at p. 189.) The *Levinson* Court held that the form of the transaction was irrelevant:

> Nor was respondent the less a pawnbroker because he required the pledgor or pawnor to execute a promissory note or chattel mortgage in connection with the transaction. First, because it is admitted that reliance was placed upon the pledge, and, second, because the transactions, no matter what force the respondent may have thought attached to his notes and chattel mortgages, were, under our law, pledges, and nothing else.

*Levinson*, supra, 150 Cal. at p. 190, italics added. The *Levinson* held that the form of the pawnbroker was irrelevant:

> When making such contracts of pledge of pawn becomes, in whole or in substance, part of the business of a man, his trade, his occupation, his means of obtaining a livelihood, or of making or adding to his fortune, he becomes a pawnbroker within the meaning of the law.

*Levinson*, supra, 150 Cal. at p. 190. The *Levinson* Court implicitly held that the form of the borrower was also irrelevant, since the unlawful loans there were made to a commercial borrower. *Id.*, at p. 188.

10

Bitcoin falls within the legislative intent of the Pawnbroker Law. There is no substantive reason to exclude Bitcoin from the province of a pawnbroker law, or the restrictions of the California Financing Law. Whether bitcoin constitutes a "good" within the meaning of the pawnbroker law (Cal. Fin. Code, § 21000,) should be resolved by referencing the legislative intent, as evidenced by the statutory language and scheme. In addition, the background common law also sheds light upon legislature's intent.

**A.    California's Legislative History Illustrates that Bitcoin is Protected by the Pawnbroker Law.**

Under the common law, BlockFi's loans would be known as a "pledge, or pawn . . . the same idea," namely "a bailment of personal property, as security for some debt." *See* Joseph Story, Commentaries on the Law of Bailments, et cet. (Cambridge 1832) § 286 (Story on Bailments). In 1861, the California Legislature chose to regulate "Every person . . . carrying on the business of a **pawnbroker, or pledgee**, in this State." Cal. Stats. 1861, Ch. 192, § 1, p. 184, (emphasis added). When codified in the 1872 Penal Code, no substantive change was intended. *Id*. at § 5.

The current pawnbroker test was introduced into California by section 338 of the 1872 Penal Code,[6] intended to be "construed according to the fair import of their terms, with a view to effect is object and promote justice" (*id*., at § 4.)

---

[6] The language, however, has roots in English law. For example, an Act of Parliament from 1785 required, in part:

> That all persons who shall receive or take, by way of pawn, pledge, or exchange, of or from any person or persons whomsoever, any goods or chattels for the repayment of money lent thereon, shall respectively be deemed pawnbrokers within the intent and meaning of this act, and shall take out a license for the same accordingly.

11

The California Civil Code codifies the test of a "pledge:" "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except **when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge**." Cal. Civ. Code, § 2924(a), (emphasis added).

A pawnbroker is simply a pledgee that routinely receives pledged property as security for repayments of its loans. Under the common law, "delivery is of the essence of an English pawn." *Ryall v. Rolle* (K.B. 1749) 1 Atk. 165, 167. Bitcoin is capable of actual delivery. *See* 85 Fed. Register 122 (June 24, 2020) 37734, 37742.

The statutory definition of property uses the old-term "thing," which is a translation of the French word: *chose*. Cal. Civ. Code, § 654. "Thing," or *chose*, includes "The subject matter of a right, whether it is a material object or not." Black's Law Dict. (11th Ed. 2019) (defining "thing").

The common law understood personal property as being comprised of two mutually exclusive classes: *choses* in possession and *choses* in action. *See* Holdsworth, The History of the Treatment of Choses in Action by the Common Law, 33 Har. L. Rev. 997 (June 1920). Choses in action "can only be claimed or enforced by action, and not by taking physical possession." (*Ibid.*) On the other hand, a *chose in possession* is capable of actual possession. 2 Blackstone Commentaries on the Laws of England, ch. 25, p. 389, (hereinafter referred to as "Blackstone").

A thing in action, such as stocks, bonds, and debts (Black's Legal Dict. (11th Ed. 2019), chose in action,) depend upon legal rights for their creation and existence (2 Blackstone, p. 397)

---

25 Geo. III c. 48, § V [modernized].

and judicial process for their enforcement. Cal. Civ. Code, § 953. On the other hand, a chose in possession is capable of delivery and receipt.

Goods include, but are not necessarily limited to, choses in possession. Justice Story—the author of Story on Bailments, and subsequently, a United States Supreme Court Justice—once wrote on behalf of the First Circuit Court of Appeal:

> In the strict sense of the common law, 'personal goods' are movables belonging to, and the property of, some person, which have an intrinsic value. . . . In a more large and liberal sense, the term 'goods' may embrace movables not having any intrinsic value, such as choses in action. . . . The common law did not deem the latter the subject of larceny, because they were not of any intrinsic value, and did not import any property *in possession* of the person, from whom they are taken.

*United States v. Moulton*, 5 Mason 537, 544 (1st Cir. 1830) (holding that coins and bank notes are "goods" within the meaning of a statute); *see People v. Reed* (1886) 70 Cal. 529, 533 ("At common law, the only description of property which could be the subject of larceny was personal *goods*; that is, mere movables having an intrinsic value").

"Choses in possession are movable goods." Darlington, A Treatise on the Law of Personal Property (T. & J. W. Johnson & Company, 1891) p. 7. Choses in action, however, were "at the common law held not to be such goods . . . being of no intrinsic value, and not importing any property in the possession of the person from whom they are taken." 4 Blackstone, Commentaries, p. 234.

Therefore, the term "Goods" includes choses in possession, and depending upon the legislative intent, might include choses in action too:

> The word "goods" in the phrase has been defined as "movable property" [citation]; "every species of property which was not real estate or freehold." [citations]; "any personal property of which larceny may be committed" [citation]; "personal property" [citation.] It has been held to include money [citations]; shares of stock [citations]; a newspaper [citation]; a promissory note [citations]; and a lottery ticket [citation].

13

*In re Dees*, 50 Cal.App. 11, 15 (Cal. Ct. App. 1920) (holding that theater tickets constitute goods); *see also Ford and Sheldon's Case*, 12 Co.Rep. 1 (K.B. 1606) (Edward Coke, Lord) (holding that "personal actions are as well included within this word, goods, in an Act of Parliament, as goods in possession").

The pawnbroker statutes were intended to regulate security that "may be actually delivered over to the possession and custody of the person who advances money on such security, with the exception of stocks, bonds, notes or mortgages, or any chose in action or evidences of debt." *See* Levine, A Treatise on the Law of Pawnbroking, etc., (1st ed. 1911), § 14, p. 23. A lender that receives "personal property as might be **actually delivered** over to the possession and custody of the person who advanced the money" must be licensed and regulated as a pawnbroker. *City of Chicago v. Hulbert*, 118 Ill. 632, 637 (Ill. 1886) (emphasis added). This limitation was enacted, because a lender receiving "stocks, bonds, notes or mortgages, or choses in action, or evidences of debt" must be licensed and regulated as banks. *Ibid*. While a pawnbroker lends against choses in possession, a bank lends against choses in action. Even though a "*chose in action*" can be pledged (*Gay v. Moss*, 34 Cal. 125, 132 (Cal. 1867) (italics original),) its pledgees are generally licensed as banks. (Fin. Code, §§ 109, 1005.)

**B.    Bitcoin, as a Chose in Possession, Constitutes a Good within the Meaning of the Pawnbroker Law.**

Bitcoin is not a chose in action, because it is neither created by contract nor enforced by action. Bitcoin's value does not depend upon the liability of a third-party. The pawnbroker law's use of the term "goods" indicates a clear legislative intent to regulate choses in possession, including Bitcoin. Bitcoin, as a chose in possession, constitutes a good. And, at least one court

14

has squarely held that "Virtual currencies [including bitcoin] are '**goods**' exchanged in a market for a uniform quality and value." *Commodity Futures Trading Commission v. McDonnell*, 287 F.Supp.3d 213, 228 (E.D.N.Y. 2018) (italics added). Similarly, "electricity" is also a "good." *Mancuso v. Southern California Edison Co.*, 232 Cal.App.3d 88, 100 (Cal. Ct. App. 1991) ("Electricity, like other goods, can be manufactured, transported and sold").

Goods are usually tangible,[7] but not always.[8] Defining "goods" as tangible personal property would be under-inclusive in some regard, excluding some 21st-century choses in possession. Also, defining "goods" as tangible personal property would be over-inclusive in a different regard, by including tangible evidences of choses in action.

### C. The Statutory Scheme of the Uniform Commercial Code is in Accord.

The Uniform Commercial Code generally codifies the common law understanding that **goods include all personal property, except for choses in action**. *See* Cal. Com. Code, § 9102, subd. (a)(42, 44). The Commercial Code defines Goods by reference to movability,

---

[7] To be sure, the California Legislature may statutorily limit the definition of " 'goods' " to "tangible chattels" for purposes of specific statutory schemes. (e.g. Cal. Civ. Code, § 1761, subd. (a); *Fairbanks v. Superior Court* (Cal. 2009) 46 Cal.4th 56, 65 ["to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels' "].) In contrast, the Commercial Code defines "goods" without reference to tangibility. Cal. Com. Code, §§ 2105, subd. (1), 7102, subd. (a)(7), 9102, subd. (a)(44), 10103, subd.(a)(8). And, in at least one statutory scheme, the Legislature has expressly defined goods to include "intangible personal property." Cal. Civ. Code, § 1799.201, subd. (f).

[8] In a survey of five English dictionaries, only one dictionary defined "goods" with reference to tangibility. (Webster's 3d New International Dict. (2002) p. 978, col. 2, ["tangible movable personal property having intrinsic value usu. excluding money and other choses in action but sometimes including all personal property"]; cf. Webster's Encyclopedic Unabridged Dict. (1989) p. 609, col. 2 ["possessions, esp. moveable effects or personal chattels"]; Random House Webster's Unabridged Dict. (2d ed. 2001) p. 822, col. 1, ["possessions, esp. movable effects or personal property"]; American Heritage Dict. (5th ed. 2020) p. 757, ["Portable personal property"]; Merriam-Webster's Collegiate Dict. (11th ed. 2014) p. 539 ["personal property having intrinsic value but usu. excluding money, securities, and negotiable instruments"];.)

15

subject only to enumerated exceptions. Cal. Com. Code, § 9201; *id*., at § 2105, subd. (1). All personal property is, by definition, movable. Cal. Civ. Code, § 657. Therefore, being personal property, Bitcoin is deemed movable.[9] Moreover, Bitcoin can literally be "moved." *See In re Marriage of DeSouza*, 54 Cal.App.5th 25 (Cal. Ct. App. 2020).

The Commercial Code created "general intangible" as a catch-all category "including things in action," and specifically excluding "goods." Cal. Com. Code, § 9102, subd. (a)(42) (" 'General intangible' means any personal property, including things in action, other than . . . goods"). If bitcoin were categorized as general intangible under the Commercial Code[10] that conclusion would still would not resolve the issue of whether bitcoin constitutes a "good" within the meaning of the pawnbroker law. Cal. Fin. Code, § 21000.

---

[9] By definition, "Property is either: 1. Real or immovable; or 2. Personal or movable." (Civ. Code, § 657.) All property that "is not real is personal." (Civ. Code, § 663.) Since bitcoin is not real property, it is personal property.

Anything capable of ownership constitutes property (Civ. Code, § 654.) "The definition of property in California is broad, encompassing nearly every 'thing' over which a person can exercise ownership." (*Holistic Supplements, L.L.C. v. Stark* (2021) 61 Cal.App.5th 530, 548 ["The type of property that can be subject to conversion is similarly broad. It includes not only tangible things, but ' " ' "every intangible benefit and prerogative susceptible of possession or disposition." ' " ']; see *Yuba River Power Co. v. Nevada Irrigation District* (1929) 207 Cal. 521, 523-524.) Property includes, but is not limited to, "all inanimate things which are capable of appropriation or of manual delivery." (Civ. Code, § 655.)

[10] Unless bitcoin constitutes a good, it may no longer be governed by the well-accepted law of sales, Uniform Commercial Code—Sales, which only applies to "goods" (See Com. Code, § 9201; *id*., at § 2105, subd. (1) [" 'Goods' means all things . . . movable . . . other than the money in which the price is to be paid, investment securities (Division 8) and things in action"].) Furthermore, one author that has uncritically called bitcoin a "general intangible" recognizes that unintended consequences may result:

> unlike virtually every other category of personal property recognized by Article 9, once a general intangible becomes encumbered by a security interest, it can never become unencumbered even by transfer to a bona fide purchaser for value. This could greatly impinge on bitcoin's liquidity.

(Jeanne L. Schroeder, Bitcoin and the Uniform Commercial Code (2016) 24 U. Miami Bus. L. Rev. 1, 8.)

16

**D.      BlockFi Engages in the Commercial Banking Business Without a Banking License.**

Compare the unlimited lending authority vested in banks (Cal. Fin. Code, § 109) with the limited lending authority vested in finance lenders.  Cal. Fin. Code, § 22009.  The banking laws were created to regulate lenders that retain use and possession of choses in action.  Finance lenders cannot retain use or possession of any personal property, whether in possession or in action.

A licensed (Cal. Fin. Code, § 1005) commercial bank (*id*. at § 107) may engage in the " 'commercial banking business,' " which includes taking deposits of "money or its equivalent" and "lend[ing] money on the security of real or personal property."  (Fin. Code, § 109.)  Of course, BlockFi is neither organized, licensed, nor regulated as a bank.  Thus, it is "unlawful" for BlockFi "to engage in or transact commercial banking business."  (Fin. Code, § 1005.)

In 1909, the same year that the Personal Property Broker's Act was initially enacted, the Legislature also enacted "An act to define and regulate the business of banking."  Cal. Stats. 1909, Ch. 76, p. 87 (hereinafter referred to as the "Bank Act of 1909").  The Bank Act of 1909 statutorily authorized a " 'commercial bank' " to "lend money on . . . personal property," without limitation.  Bank Act of 1909 § 5.  The Bank Act of 1909 also authorized "savings banks" to "hold . . . personal property . . . as may have been mortgaged, *pledged*, or conveyed to it in trust for its benefit in good faith, for money loaned in pursuance of the regular business of the corporation."  Bank Act of 1909 § 61, subd. (2), p. 99, italics added.  According to the New York Times:

> BlockFi acts like a bank, but without complying with statutory duties governing banks: BlockFi's business is not dissimilar to that of a regular bank. . . . And because BlockFi is not officially a bank, it does not have the large costs associated with maintaining required capital reserves and following other banking regulations.

17

Lipton and Livni, New York Times, Crypto's Rapid Move into Banking Elicits Alarm in Washington, Sept. 5, 2021, <https://www.nytimes.com/2021/09/05/us/politics/cryptocurrency-banking-regulation.html> (accessed Jan. 6, 2022).  The different statutory authorizations—a limited one for finance lenders and unlimited one for commercial banks—is a distinction that still exists today.  *Compare* Cal. Fin. Code, § 109 *with id*., at § 22009.

Dated: July 13, 2023

/s/ Carol L. Knowlton

GORSKI & KNOWLTON PC
Carol L. Knowlton
311 Whitehorse Avenue, Suite A
Hamilton, New Jersey 08610
Phone: (609)964-4000
Email: cknowlton@gorskiknowlton.com

*Attorneys for Creditor George J. Gerro*