IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-19361-MBK |
| | . | (Jointly Administered) |
| BLOCKFI INC., et al., | . | |
| | . | |
| Debtors. | . | |
| | . | August 1, 2023 |
| . . . . . . . . . . . . . | . | 10:30 a.m. |

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:          Kirkland & Ellis LLP
                          By:  CHRISTINE OKIKE, ESQ.
                               FRANCIS PETRIE, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022

                          Haynes and Boone, LLP
                          BY:  RICHARD KANOWITZ, ESQ.
                          30 Rockefeller Plaza, 26th Floor
                          New York, NY 10112

                          Cole Schotz PC
                          By:  FELICE YUDKIN, ESQ.
                               MICHAEL SIROTA, ESQ.
                          1325 Avenue of the Americas
                          19th Floor
                          New York, NY 10019



Audio Operator:           Kiya Martin



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):
```
For the U.S. Trustee:      Office of the U.S. Trustee
                           By:  JEFFREY M. SPONDER, ESQ.
                                LAUREN E. BIELSKIE, ESQ.
                           One Newark Center, Suite 2100
                           Newark, NJ 07102

For the Official          Brown Rudnick, LLP
Committee of Unsecured    By:  KENNETH AULET, ESQ.
Creditors:                7 Times Square
                          New York, NY 10036

                          McCarter & English, LLP
                          By:  LISA S. BONSALL, ESQ.
                          Four Gateway Center, 100 Mulberry St.
                          Newark, NJ 07102

                          Brown Rudnick LLP
                          By:  BENNETT S. SILVERBERG, ESQ.
                          7 Times Square
                          New York, NY 10036

                          Genova Burns LLC
                          By:  GREGORY S. KINOIAN, ESQ.
                               DANIEL M. STOLZ, ESQ.
                          110 Allen Road, Suite 304
                          Basking Ridge, NJ 07920

For FTX Trading LTD       Sullivan & Cromwell LLP
and Affiliated Debtors:   By:  BRIAN D. GLUECKSTEIN, ESQ.
                          125 Broad Street
                          New York, NY 10004

For the Foreign           Latham & Watkins LLP
Representatives of        By:  ADAM GOLDBERG, ESQ.
Three Arrows Capital:     1271 Avenue of the Americas
                          New York, NY 10020

For the SEC:              U.S. Securities and Exchange
                            Commission
                          By:  ALAN S. MAZA, ESQ.
                          43 Cliff Court
                          Highland Park, NJ 08904

For New Jersey Bureau     McElroy, Deutsch, Mulvaney &
of Securities:              Carpenter, LLP
                          By:  JEFFREY BERNSTEIN, ESQ.
                          225 Liberty Street, 36th Floor
                          New York, NY 10281
```

1          THE COURT:  Okay.  We'll start off in a moment,

2   everyone.  Good morning.  This is Judge Kaplan.  We will start

3   the BlockFi Inc. matters.

4          As usual, with remote appearances should you wish to

5   be heard, please make use of the raise hand function, and I

6   will do my best to call upon you.

7          You beat me almost to punch, Ms. Okike.  So why don't

8   we turn to -- I have the amended agenda.  Let me hear from

9   debtors' counsel.

10         MS. OKIKE:  Thank you, Your Honor.  Good morning.

11   Christine Okike of Kirkland Ellis on behalf of the debtors.

12         Your Honor, we are pleased to be before you today to

13   announce that the debtors and the Committee reached a global

14   settlement, which has been incorporated into the plan and

15   disclosure statement that we filed at Docket Numbers 1300 and

16   1301 respectively, and that the debtors and the Committee are

17   working hand in hand to bring these Chapter 11 cases to

18   conclusion as quickly as possible and return value to BlockFi's

19   customers.

20         Thank you to Your Honor for helping the parties reach

21   this global settlement, which we believe maximizes value for

22   creditors, best positions the debtors to prevail in significant

23   litigation with FTX, Alameda, 3AC, and other parties, and

24   allows the debtors to make distributions in kind which we know

25   is of critical importance to our clients.

1          Some key terms of the global settlement include the

2  Committee's settlement parties, which include all persons who

3  served as officers and/or directors of the debtors during these

4  cases, will participate and assist the wind down trustee with

5  any ongoing litigation including prosecuting claims against and

6  by 3AC, FTX, Alameda, Core Scientific, and any other

7  counterparties, and also assisting the wind down trustee in

8  making in-kind distributions to creditors.

9          All preference claims held by the debtors against

10  their clients will be released except for preference claims

11  against any client that in total aggregate over $250,000

12  arising out of withdrawals from BlockFi interest accounts or

13  BlockFi private accounts, other than the release of loan

14  collateral upon the repayment of loans on and after November

15  2nd, 2022 that are held by any debtor other than BlockFi

16  International.

17          The Committee settlement party shall contribute a

18  total of 2.25 million in cash to the estates and waive

19  approximately seven million in claims against the debtors,

20  which will increase recoveries for other creditors.

21          The Committee settlement parties will collectively

22  contribute over 1500 hours in assisting the wind down trustee

23  following the effective date of the plan, and in exchange for

24  these contributions, all claims and causes of action by the

25  debtors against the Committee settlement parties will be

1  released under the plan.

2         The plan contains an opt-out structure for third-

3  party releases.  Creditors who do not opt out will be deemed to

4  have consensually released their direct claims against third

5  parties and will receive a release from the debtors all of

6  claim other than the retained preference claims.

7         We've included language clarifying that nothing in

8  the plan settles, releases or discharges direct claims held by

9  creditors who opt out of the third-party release, other than

10  claims against the debtors which are going to be compromised

11  under the plan.

12         In support of the debtor release, before filing any

13  claim against any of the Committee settlement parties, any

14  creditor must, first, have opted out of the third-party release

15  and, second, obtained a ruling from Your Honor that all such

16  claims fall outside the scope of the debtor release, including

17  that they are not derivative claims.

18         The release of the Committee settlement parties is

19  conditioned upon their cooperation and payment along the terms

20  that I've outlined, and in the event that the wind down trustee

21  does not believe that a Committee settlement party is honoring

22  its cooperation or payment obligation, they will provide notice

23  to that party.  And if there continues to be a dispute over

24  cooperation or payment following a ten-day notice period, the

25  wind down trustee may ask the Court to void the debtor release

6

1  for lack of compliance with such settlement obligations.

2          And if the Court were to determine that any Committee

3  settlement party has violated an obligation under the

4  settlement and has not cured that violation, the debtor release

5  would be void as to that individual.

6          The global settlement also provides that the

7  insurance providers will not be released parties or releasing

8  parties under the plan, and the Committee settlement parties

9  will reserve all claims and causes of action against them.

10          Your Honor, we filed the original disclosure

11  statement back on May 12th at Docket Number 876 and the

12  supplemental motion on July 30th at Docket Number 1294.  We

13  also filed a motion to shorten notice with respect to the

14  supplemental motion at Docket Number 1297, which Your Honor

15  granted at Docket Number 1298, and we appreciate Your Honor

16  hearing us on shortened notice.

17          Your Honor, we are seeking approval of the disclosure

18  statement on a conditional basis so that we can begin

19  soliciting votes on the plan and accelerate the plan

20  confirmation process all with the goal of returning value to

21  our stakeholders as quickly as possible.

22          We believe the disclosure statement contains adequate

23  information, including with respect to among other things the

24  debtors' corporate history, business operations, assets,

25  organizational structure, and capital structure, the events

1  leading to the commencement of these Chapter 11 cases, the key

2  events in the debtors' Chapter 11 cases, including the Special

3  Committee's investigation and conclusions and the terms of the

4  Committee settlement, the proposed debtor release, third-party

5  release, exculpation and injunction provisions of the plan, a

6  description of the material litigation claims against FTX,

7  Alameda, 3AC, and other parties, a liquidation analysis, which

8  shows that anticipated recoveries under the plan exceed

9  recoveries under a hypothetical Chapter 7 liquidation, a

10 description of certain risks associated with the plan, a

11 description of certain U.S. federal income tax consequences of

12 the plan, the procedures for soliciting votes to accept or

13 reject the plan, the statutory requirements for confirmation

14 and consummation of the plan, and a recommendation by the

15 debtors that holders of claims in the voting classes vote to

16 accept the plan.

17      Your Honor, while we believe the disclosure statement

18 contains adequate information to allow a hypothetical creditor

19 to determine how to vote, we're not seeking final approval of

20 the disclosure statement today.  We're only seeking approval on

21 a conditional basis, an approval of the solicitation and voting

22 procedures, and solicitation materials, including the ballots,

23 notices, and letters, and related confirmation dates and

24 deadlines.

25      Approval of the disclosure statement on a conditional

1  basis will allow us to begin the solicitation process now so

2  that we can accelerate the timeline of these Chapter 11 cases.

3        Your Honor, we received three objections to the

4  disclosure statement filed from the FTX debtors, 3AC, and the

5  SEC.  Importantly, Your Honor, not a single client, and the

6  debtors have over 600,000 clients, filed an objection to the

7  disclosure statement prior to or following the July 5th

8  objection deadline, and the disclosure statement now includes a

9  global settlement with the Committee.

10       We believe the objections from the FTX debtors, 3AC,

11 and the SEC are moot for purposes of the limited relief we're

12 seeking today, but I will briefly address each in turn.

13       The SEC filed a limited objection to the releases,

14 which we believe has been addressed by revisions to the

15 disclosure statement.  There is significant disclosure about

16 the debtor release, including the Special Committee

17 investigation, conclusions, and recommendations, as well as the

18 global settlement reached with the Committee, including the

19 parties to be released and the contributions that they are

20 making in exchange for the release.

21       There is a disclosure regarding the third-party

22 release, including the opt-out mechanism, and the implications

23 and considerations to be taken into account in deciding whether

24 to exercise that election.

25       Your Honor, the FTX debtors and 3AC both filed

1  objections to the confirmation schedule, arguing that the

2  timeline does not provide them with due process.  We have made

3  clear in the amended disclosure statement that the debtors

4  dispute the claims filed by the FTX -- by FTX, Alameda, and

5  3AC, and we intend to file objections to their claims in the

6  near term, as well as motions seeking to estimate their claims.

7         While the debtors believe that the FTX, Alameda, and

8  3AC claims should be disallowed, those parties will have a full

9  and fair opportunity, like all other creditors, to have their

10  claims adjudicated in accordance with due process requirements.

11         And to be clear, we're not asking the Court for

12  approval of the disclosure statement to set a timeline for

13  adjudicating their claims.  We will do that outside of the plan

14  process, and if FTX, Alameda or 3AC have an issue, they can

15  object at the appropriate time.

16         Your Honor, we've also provided for flexibility in

17  the treatment of the FTX, Alameda, and 3AC claims under the

18  plan.  While we believe their claim should be disallowed, and

19  if not disallowed, recharacterized and/or subordinated, the

20  treatment section provides that to the extent this Court

21  determines otherwise, they will receive the same treatment as

22  other creditors of the same priority at the relevant debtor

23  entity.

24         So, FTX, 3AC, and Alameda we submit are not

25  prejudiced by the plan, and, in fact, this is the same

1 structure we incorporated into Voyager's confirmed plan to deal

2 with the dispute with the FTX debtor's asserted preference

3 claims in that case, and which allowed the plan to be confirmed

4 and distributions to be made to creditors.

5 　　　　　Your Honor, it's critically important that BlockFi's

6 Chapter 11 cases are not held hostage to FTX, Alameda, and

7 3AC's own cases which are moving at a much slower pace.  We

8 want short term value to creditors on as quick a timeline as

9 possible.

10 　　　　　Your Honor, the FTX debtors and 3AC also argue that

11 the disclosure statement does not provide a basis for

12 recharterizing and/or subordinating their claims.  Your Honor,

13 we have disclosed the claims asserted by FTX, Alameda, and 3AC,

14 the counterclaims the debtors believe they have against them,

15 and the reasons why the debtors believe their claim should be

16 disallowed, recharacterized and/or subordinated.

17 　　　　　We've also included high and low end projected

18 recoveries for creditors which take into account the potential

19 litigation outcomes with FTX, Alameda, and 3AC, and noted that

20 this litigation will have a material impact on creditor

21 recoveries.

22 　　　　　Your Honor, we mention FTX 263 times in the

23 disclosure statement, Alameda 122 times and 3AC 93 times, so

24 the idea that we have not provided adequate disclosure for

25 creditors to determine how to vote should be rejected outright.

1          The FTX debtors and 3AC feign objections to the

2   disclosure statement in an effort to have the debtors reveal

3   their litigation strategy to the litigation counterparties

4   themselves, and, Your Honor, we submit this is inappropriate.

5          We have spoken to counsel to 3AC and agreed to make a

6   change to their treatment under the plan, which clarifies that

7   if the 3AC claims are allowed the debtors will seek to

8   equitably subordinate them as opposed to the prior language

9   which said they shall be equitably subordinated.  I will let,

10  you know, counsel for 3AC speak as to whether that resolves

11  their disclosure statement objection.

12         Your Honor, again, while we believe we've provided

13  adequate disclosure to creditors to determine how to vote,

14  we're only seeking conditional approval at this time, and any

15  objections to approval of the disclosure statement on a final

16  basis can be made at the combined hearing.  So we would

17  respectfully request that Your Honor approve the disclosure

18  statement on a conditional basis, as well as the solicitation

19  procedures and materials, and related dates and deadlines.

20         Your Honor, I'm happy to answer any questions,

21  otherwise I will cede the podium to any of the objectors.

22         THE COURT:  All right.  Thank you, Ms. Okike.  Let me

23  first turn to Committee counsel to see -- to have counsel

24  advise the Court of their position.

25         MR. AULET:  Thank you, Your Honor.  Kenneth Aulet of

1 Brown Rudnick for the Committee.

2          Your Honor, the Committee supports this plan.  I

3 think it's important to step back a minute and remember that

4 this is -- this is a very hard case.  This is not a case where

5 we ultimately had a business that could be saved and

6 reorganized.  This is a case where what we're doing here is

7 we're trying to return the life savings of over 650,000

8 individuals.  It's not about allocating value between

9 sophisticated commercial entities.  It's not about trying to

10 rebuild something.  It's just about trying to get as much money

11 back to the people who lost money as possible.

12          And, you know, we have all had to do that without the

13 benefit of sort of the specialized laws that have been created

14 to deal with companies that have such large numbers, the

15 individual depositors or, you know, operate similar businesses.

16          And on that note, I also have to talk about the job

17 that the Committee has been asked to do.  The Committee are

18 unpaid volunteers in this case.  Each of them are significant

19 creditors of BlockFi, who have devoted hours each week and

20 sometimes days each week for free to working on this case and

21 trying to do the best that they can do for each of the

22 creditors that they represent.

23          You know, they've been asked to make very, very hard

24 choices, choices that, you know, the professionals in this case

25 who do this day in and day out struggle with, but to do those

1 without having had years of expertise in this and having to

2 make decisions that not only affect their pocketbook, but

3 realize that they're affecting the pocketbook of every single

4 one of these 650,000 people, and that's a tremendous

5 responsibility to put on to individual creditors who are

6 volunteers in this case.

7       And, you know, they have executed the job that

8 they've been asked to do better than anybody could have

9 expected them to do.  They've spent more time on this case than

10 any other committee that I've ever seen day in and day out.

11 They've asked more questions and been more involved and

12 demanded to know why everything is happening, why every dollar

13 that's being spent is being spent because ultimately every

14 dollar that's been spent on these cases comes out of their and

15 other creditors' pockets.

16       And, ultimately, again, this is not a case where

17 we're going to have a win.  This is a case where everybody is

18 trying to get to the least bad result.  Even if we ultimately

19 get 100 percent distributions to creditors, many of those

20 creditors were invested in Bitcoin, Ethereum, and maybe missing

21 out on the value ramp up that happened between the petition

22 date and today.  And all of these choices were put on nine

23 individuals who were asked to volunteer their time and did so.

24       And that brings us to where we are today.  It's time

25 to end this case, and we are pleased that we have a plan and

1  disclosure statement that the Committee can support.  The

2  settlement reached paves the way for these cases to end, you

3  know, not only on the timeline the debtors proposed, but to

4  accelerate emergence, and to deliver several valuable benefits

5  to these creditors that we represent.

6       You know, the first is that this settlement finally

7  puts creditors back in control of their own destiny following

8  emergence date.  The Committee on behalf of creditors will

9  select a trustee.  That trustee will answer to an oversight

10 board composed of creditors, and the Bermuda JPLs, and

11 creditors will ultimately get to make every decision going

12 forward after that date on what money to spend, what should be

13 done with the cause of action and finally have control of their

14 own destiny.

15      We discussed a number of times the cost of these

16 cases.  We're pleased that we and the debtors were able to

17 reach agreement on a budget which will in addition to ending

18 the litigation between us and the debtors cut costs going

19 forward to allow for greater distributions to customers by

20 reducing the costs of these cases going forward through the

21 emergence date.

22      We preserved valuable claims, including the claims

23 against the D&O insurance carriers that we believe provide a

24 avenue for additional recovery of creditors, and we've provided

25 certainty to the vast majority of creditors that, you know,

1  preference claims before November 2nd are going to be waived

2  entirely.  It doesn't depend on how you vote.  It doesn't

3  depend on if you give a release or not.  Those claims are gone

4  and nobody needs to worry about them.  Even for claims arising

5  after November 2nd, only the largest of those claims will be

6  preserved on claims over 250,000.

7          We believe that this provides a great deal of

8  certainty for creditors that the preference claims that the

9  Bankruptcy Code creates and imposes an obligation on the

10 estates to preserve are maximized for the benefit of creditors,

11 but also do not impose costs on the individual retail creditors

12 in this case.

13         There's other structural changes.  The convenience

14 class will allow a large number of creditors to receive greater

15 initial distributions, so that the estates don't have to bear

16 the cost of providing future distributions, giving those

17 creditors certainty and giving other creditors additional

18 recoveries by cutting the costs of the post-emergence debtors.

19         We've expanded the authority of the wind down

20 trustee, too.  If they determine it's appropriate, make in kind

21 of distributions beyond six months.  That's going to be a

22 decision that will have to be made by the wind down trustee

23 under the circumstances, but we thought that it was important

24 to if there's a cost effective way to do that to maintain that

25 authority.

1    And, finally, again, we can end these cases, and we

2 can begin the process of moving on, distributing all the value

3 that's on BlockFi's books back to customers and begin dealing

4 with the FTX claims, both the five billion of claims that

5 they've asserted against BlockFi, which, you know, the

6 Committee is entirely unamused by, and to recover the amounts

7 that FTX and Alameda owe the creditors of BlockFi.

8    And with that, Your Honor, we'd ask that the Court

9 approve the disclosure statement on a conditional basis.

10    THE COURT:  Thank you, Mr. Aulet.  Let me turn to the

11 Office of the U.S. Trustee.  Ms. Bielskie or Mr. Sponder, do

12 you wish to be heard?

13    MR. SPONDER:  Thank you, Your Honor.  Good morning.

14 This is Jeff Sponder from the Office of the United States

15 Trustee.

16    Your Honor, prior to the debtor filing the amended

17 plan and disclosure statement yesterday and seeking the

18 conditional approval of such disclosure statement, it was my

19 understanding that the U.S. Trustee and the Committee had until

20 August 7th of this year to object to the prior disclosure

21 statement and the solicitation procedures.

22    Instead of having until August 7th, 2023, with a

23 hearing to be held on August 16th, 2023, the debtors are now

24 seeking the conditional approval of the disclosure statement

25 and the approval of the solicitation and notice procedures

1  today.  As such, the U.S. Trustee's deadline to object to the

2  solicitation and notice procedures has been decreased from

3  August 7th, 2023 to today.

4          Your Honor, despite such reduction, the U.S. Trustee

5  has quickly reviewed the solicitation and notice procedures

6  even though more time is needed and provides the following

7  comments.

8          Section (b), Your Honor, the ballots can only be

9  submitted through the debtors' online balloting portal.  The

10 debtor should also be required to accept hard copies of ballots

11 and provide an address to send such ballots.

12         Section (c)(3)(C) and (D), a resolution event means

13 the occurrence of such event no later than two business days

14 prior to the voting deadline.  If a resolution event occurs and

15 no later two business days after, the debtors must serve the

16 solicitation package.  So there is a chance that creditors will

17 receive a solicitation package on the voting deadline.

18         Section (c)(5) requires objections to executory

19 contracts to be served on parties in interest, which is not

20 defined, via CD-ROM and PDF format.  It's our belief a hard

21 copy should suffice.  There's no requirement that a CD-ROM

22 should be provided.

23         Section (d)(3)(L), (M) and (N), the debtors may waive

24 any ballot defect or irregularity, the debtors are under no

25 duty to notify creditors of a defective vote or irregular

1  ballot, and the debtors may count and opt out for releases even

2  if a ballot is deemed defective or irregular.  As such, it

3  appears that the debtors may pick and choose which ballots to

4  keep even if defective or irregular, do not have to advise

5  creditors of such invalidity, and can effectuate and opt out on

6  a creditor that is deemed not allowed to vote on the plan.

7         Section (d)(3)(U), the debtors can enter into

8  stipulations with creditors agreeing to amounts for voting

9  purposes.  However, will any such agreements be noticed to

10 other parties in interest, and will they have a right to

11 object?

12        Section (e), Your Honor, sets forth that the debtors

13 reserve their rights to make changes to all these pleadings

14 including the disclosure statement plan and solicitation

15 package without further court order.  The U.S. Trustee just

16 wants to confirm that these changes without court order will

17 only be typographical or grammatical changes.

18        Moving on, Your Honor, to the attachments.  The

19 notice of non-voting status as to unimpaired creditors, again,

20 requires objections to be filed and served on parties in

21 interest, that's not defined, by sending it via CD-ROM and PDF

22 format.  We think that parties in interest should be defined,

23 and that a hard copy would suffice and not in a CD-ROM format.

24        It requires creditors to e-mail Kroll to receive a

25 copy of the pleadings, or by requiring creditors to go to the

1 Kroll website or to the bankruptcy court website.  As they are

2 creditors, they should receive a copy of the pleadings just

3 like all other -- all the creditors that are allowed to vote.

4         Then they'll receive an opt-out form and must submit

5 it only via the online portal.  Again, as stated earlier in the

6 solicitation procedures, creditors should be allowed to submit

7 an opt-out form via hard copy as well as the online portal.

8         Similarly, Your Honor, the notice of non-voting

9 status as to impaired creditors and as well as to disputed

10 claim holders have similar issues to them.

11         Moving on to the disclosure statement -- well, the

12 confirmation hearing and the voting deadline and the objection

13 deadline, it appears the debtors seek to establish September

14 8th, 2023 as the voting deadline and the objection deadline, as

15 well as having the combined confirmation adequacy hearing to be

16 held 19 days later on September 27th of 2023.

17         Pursuant to the solicitation and notice procedures,

18 the debtors will have 10 days after the order is entered to

19 serve the solicitation notice packages.  As such, if the order

20 were entered today, and the debtors waited the 10 days, the

21 service of the solicitation package, disclosure statement and

22 plan would be 28 days prior to the objection voting deadline.

23 If the order is entered tomorrow, then it would be less than 28

24 days.

25         As the debtor has a 19-day buffer between the

1  objection/voting deadline and a confirmation adequacy hearing,

2  the U.S. Trustee proposes that the objection voting deadline be

3  moved to September 13th, 2023 and that confirmation remain on

4  for September 27th, 2023.  The debtors' reply brief to any

5  objections can be due on September 20th, 2023.

6        Also, Your Honor, as it appears that the Committee

7  and debtors have reached a resolution, which is incorporated in

8  the plan, a question exists as to whether or not the debtor

9  intends to pursue the insider 9019 motion that is pending which

10 has objections due tomorrow.  So we want to find out whether or

11 not that will proceed or if that is basically being withdrawn,

12 and that the settlement which includes what -- some of that

13 information is already included in now the amended plan.  Thank

14 you, Your Honor.

15       THE COURT:  Thank you, Mr. Sponder.  Let me hear from

16 others and then of course we'll go back.  At this point does

17 anyone else wish to be heard?  Mr. Glueckstein?

18       MR. GLUECKSTEIN:  Yes, good morning, Your Honor.

19 Brian Glueckstein, Sullivan & Cromwell on behalf of the FTX

20 debtors.

21       Your Honor, as represented by Ms. Okike, we did file

22 an objection to the disclosure statement that was on file on

23 behalf of the FTX debtors.  The FTX debtors including Alameda

24 have significant claims into these estates that have been filed

25 that are being pursued on behalf of our creditors and the

1  victims of the FTX events.

2      We are pleased by the changes that were made to the

3  disclosure statement that was filed only yesterday, that, as

4  confirmed by counsel this morning, that any litigation that's

5  forthcoming with respect to our claims has been removed as we

6  understand it from the plan process and will be addressed

7  separately in an objection to the claims for which we will have

8  an opportunity to work with the debtors to schedule on an

9  appropriate litigation timeline.

10     There are references made with respect to potential

11  estimation of claims for distribution purposes.  We have

12  concerns about that.  We obviously haven't seen a motion yet,

13  and of course we'll respond to that and engage with the debtors

14  if and when such a motion is filed.

15     But for purposes of today and the limited relief

16  being requested today, Your Honor, with respect to the

17  conditional approval of the disclosure statement, the changes

18  that have been made with respect to the process as it pertains

19  to the FTX debtors claims resolve our objection for purposes of

20  today only and reserve all rights with respect to those claims

21  in a future proceeding.

22     THE COURT:  All right.  Thank you, Mr. Glueckstein,

23  appreciate it.  Mr. Goldberg?

24     MR. GOLDBERG:  Thank you, Your Honor.  Adam Goldberg

25  of Latham & Watkins on behalf of the Foreign Representatives of

1  the Three Arrows Capital estate.

2         Very briefly, Your Honor, that is -- Three Arrows

3  Capital is in a liquidation proceeding in the British Virgin

4  Islands, and we've been recognized as a foreign main proceeding

5  in the Southern District of New York before Judge Glenn.

6         As Ms. Okike represented, we did object to the

7  disclosure statement, and like FTX, we take the debtors'

8  assurances both in discussions as well as on the record here

9  that the plan will not seek to adjudicate our claims or

10 subordinate them, and we were appreciative of the debtors'

11 efforts in working with us on clarifying the treatment section

12 to make clear that the plan does not equitably subordinate

13 Three Arrows' claims, and instead those issues will be reserved

14 for another day.

15        So, just to be brief, Your Honor, like FTX, our

16 issues are resolved today.  We're not here to hold up anything.

17 We're here to assert the valid claims that Three Arrows has

18 against these debtors for the benefit of the Three Arrows

19 substantial creditors as well, and we look forward to working

20 with the debtors towards a resolution of those, if that is

21 possible, or being before Your Honor where necessary.  Thank

22 you.

23        THE COURT:  Thank you, Mr. Goldberg.  Does anyone

24 else wish to be heard?

25        MR. MAZA:  Yes, Your Honor.  Alan Maza from the SEC.

1            THE COURT:  Yes, please.

2            MR. MAZA:  Okay.  Thank you, Your Honor.  In terms of

3    our limited objection, so basically we have the -- a very

4    pragmatic objection to just broad releases, which fail to

5    really identify claims or, you know, parties, the consideration

6    of particular parties, particularly when you have a broad

7    related persons definition of former officers, directors.

8            And while we definitely understand in this unique

9    case that there are a lot of parties that are giving

10   consideration, which may be valid and justify the broad

11   releases, it's not clear that every individual or entity that

12   has been set forth in the released parties definition justifies

13   this kind of broad release.

14           So, essentially, we would like to see the debtors

15   really go through the paces and be specific or limit the

16   particular release to those that could be justifiably entitled

17   to this extraordinary relief.  That's a general objection that

18   we set forth in our limited objection.

19           In terms of one other issue we found a little

20   concerning, and we brought this to debtors' counsel's

21   attention, which could be resolved at any point, is that on

22   Page 58 of the disclosure statement or 68 of the plan we

23   identified language with particularly with respect to the

24   release, which requires people, creditors who have already

25   opted out of the release provision to go through an additional

1  hurdle of coming before the bankruptcy court to bless the

2  release one more -- bless the exception to the release an

3  additional time.  We don't typically see that in many cases.

4       Plus, we feel that in a sense that could actually

5  deter those who already went the extra step to opt out of the

6  release to be able to preserve their direct claims to all of a

7  sudden now go through this other additional step, which is not

8  a simple step for, you know, many people.  It's actually now

9  hire a lawyer or (indiscernible) pro se come before Your Honor.

10

11       And if there is that burden, I think it should be

12  actually be put on those parties that are getting the benefit

13  of this release, that if they are sued in the state court,

14  perhaps they could, you know, cross move or -- you know, not to

15  advise how they should proceed, but make them come up with this

16  additional hurdle to say, excuse me, that this release was not

17  actually contemplated under the plan, but to push this burden

18  onto the released creditor or the creditor that's opted out is

19  -- we find that unfair.

20       So that's where we stand on those two issues.

21       THE COURT:  All right.  Thank you, Mr. Maza.  I guess

22  at first blush, it sounds like the burden is more on me.  I'm

23  going to have to hear these.  So --

24       MR. MAZA:  You know what, I should have taken that

25  into consideration, but the -- yeah, certainly.

1        THE COURT:  But I believe that issue and the others

2   raised can obviously be addressed as part of the whole

3   confirmation combined hearing.

4        Let me hear -- is there anyone else who wishes to

5   weigh in?

6                    (No audible response)

7        THE COURT:  All right.  Let me first express the

8   Court's appreciation and gratitude and actual recognition to

9   the efforts of the Committee, the Committee members, and its

10  professionals, as well as the debtors' management and their

11  professionals in reaching the accord and which will allow the

12  case to move forward or at least the plan process to move

13  forward and thereby avoid substantial additional administrative

14  burdens.

15       It's important to this Court, and I think it's shared

16  by the professionals, that the end game be recognized as trying

17  to return value to the customer base and those that have placed

18  at times their life savings and other significant sums at risk

19  in the most expeditious and least costly fashion.

20       It has been pointed out that the burn rates of these

21  crypto currency cases is extensive.  Unfortunately, it's

22  somewhat unavoidable given the plethora of issues, complex

23  issues that are there.  They are facing the receivers in

24  foreign liquidation proceedings.  They're facing the trustee's

25  and those appointed to look after the interests, such as in

1 FTX, 3AC.

2        So, everyone is facing hurdles in these types of

3 cases resulting from a lack of clarity with respect to the law

4 as it applies to the tokens and the vast interrelationship of

5 the claims among these entities.

6        These are difficult cases.  The Committee in this

7 case has faced difficult pragmatic decision-making choices

8 about how to move forward and best protect the interest of

9 creditors, somewhat distasteful at times in trying to reach an

10 accord, but in the end I think we're moving in the most

11 efficient and least costly path.

12        And both the debtors' professionals and the

13 Committee's professionals have recognized the budgetary

14 restraints, the significant run rates that we've -- and burn

15 rates that we've been seeing, and I think the path chosen in

16 proceeding towards a conditional approval makes the upmost

17 sense.

18        I want to also express my appreciation to the Office

19 of the U.S. Trustee in trying to review this hundred-page

20 document with amendments and changes in what amounts to hours.

21 I think they've undertaken a yeoman's work, and I recognize the

22 difficulties.

23        And let me also express the Court's appreciation to

24 both counsel for FTX and 3AC in recognizing the bigger picture

25 and that they can protect their interests of their respective

1  clients and not impede the process here as in other cases as

2  well.

3       My suggestion for the debtors' counsel and the U.S.

4  Trustee with respect to those issues that have been raised

5  would be to see if they can meet and confer either the rest of

6  today or tomorrow.

7       I can schedule just a follow up call, and it's my

8  intent to approve a conditional -- the disclosure statement on

9  a conditional basis and set down this matter for confirmation

10 hearing along the timeline with one adjustment that I'll talk

11 about.

12      I think it would make sense rather than try to pick

13 off these issues that have been raised by Mr. Sponder right now

14 to allow counsel and the U.S. Trustee to try to see if they can

15 pare down any issues, see what they can agree on.

16      I am available tomorrow afternoon for a follow up

17 call, just among the parties in interest on these issues,

18 meaning maybe the debtor and Committee and the U.S. Trustee,

19 and if there can't be an agreement on any particular issue,

20 I'll make the call then, so we can get the process started

21 without delay.

22      I could do it tomorrow afternoon or I could do it on

23 Thursday.  I'll ask Ms. Okike to weigh in on how best to

24 schedule it.  I'm anticipating just a short follow up call,

25 unless the parties can actually agree on all the issues that

1 have been raised.  Also --

2          MS. OKIKE:  Yes, Your Honor.

3          THE COURT:  Yes.

4          MS. OKIKE:  Oh, apologies.

5          THE COURT:  Ms. Okike, if you could also discuss

6 what's intended going forward with the 9019 and the like.

7          MS. OKIKE:  Yes, Your Honor.  We are happy to meet

8 and confer with the trustee.

9          I would just raise I think one point which I think

10 the debtors and the Committee are not going to amendable to

11 that was raised was the idea of doing hard copy ballots.  That

12 is going to be astronomical cost for these estates, and we've

13 worked very diligently with Kroll to set up this online

14 balloting portal for submission of ballots and opt-out forms.

15          And if we were to undergo the hard copy ballot

16 solicitation process, we're talking about increasing the cost

17 here probably by, you know, millions and millions of dollars,

18 which no one on the debtors' side or the Committee's side

19 thinks is a good use of estate resources.  So that's just one

20 point that I know we will not reach agreement with the trustee

21 on.

22          We're happy to work through the other issues.

23 Unfortunately, we didn't receive the list of issues prior to

24 this call, so it's hard for me to follow all of the things that

25 he was referring to, but we're happy to work with the Committee

1  and the U.S. Trustee following this hearing to try to narrow

2  the issues.

3          THE COURT:  Would it make sense, and I'll -- I see

4  Mr. Sponder's hand.  I'll let him weigh in.  Would it make

5  sense to have a follow up Zoom call tomorrow afternoon?

6          MS. OKIKE:  Yes, Your Honor.  That works for the

7  debtors.

8          THE COURT:  Mr. Sponder, your thoughts on a 2:00 call

9  tomorrow?

10         MR. SPONDER:  Thank you, Your Honor.  That is fine.

11 I will note, and I know I was just reading through our issues,

12 what we are asking for is that they can -- that the debtors can

13 provide the ballots, and as long as they can be printed, that

14 creditors can send it back via hard copy, not for the debtors

15 to send it out via hard copy.  We didn't go into that.  So

16 that's that issue.

17         Also, one of debtors' attorneys had asked me to send

18 over the information that I just set forth on the record, which

19 I already did, so that they have that information, and

20 hopefully we can resolve most of the issues without having to

21 have that call, even though I would love to have that call with

22 you, Your Honor.

23         THE COURT:  Well, who wouldn't?  So I'll leave the

24 call at -- we'll schedule it at 2:00 on a as needed basis.

25 You'll contact chambers.

1              Otherwise, as I've indicated, I -- it makes sense to

2    pursue this route.  I'm prepared to set up approval on a

3    conditional basis.  The only tweak in the dates, the

4    confirmation hearing date as requested is September 27th.  It's

5    unfortunately a Chapter 13 day for me I believe.  I could

6    either do the 26th, which is a Tuesday, or the 29th, which is a

7    Friday.  Is there a preference?

8              MS. OKIKE:  Either of those is fine the debtors, Your

9    Honor.

10             THE COURT:  Well, then we always stay away from a

11   Friday, so why don't we go with the -- we'll go with the 26th,

12   and that gives us also room if we have to kick it a day or a

13   couple of days.  And --

14             MS. OKIKE:  Thank you, Your Honor, and just to circle

15   back on --

16             THE COURT:  Yes.

17             MS. OKIKE:  -- your question with regard to the 9019.

18   So we will not be moving forward with the 9019 motion given

19   that the settlement with the Committee has been incorporated

20   into the plan.  So we would -- we'd probably just adjourn that

21   motion until we get to the confirmation hearing.

22             THE COURT:  We'll carry it to the 26th then.  We'll

23   put down confirmation for 10:00 a.m.  We'll carry the 9019

24   that's scheduled now for the 16th.  I'm sure my chambers will

25   be reaching out for debtors' counsel just to review the matters

 1  that are on for the 16th, which actually can be kicked to the

 2  confirmation date.  We have the exclusivity motion --

 3            MS. OKIKE:  Yes, Your Honor.  So I believe --

 4            THE COURT:  -- also --

 5            MS. OKIKE:  I believe we are cancelling the August

 6  16th hearing and keeping the 17th, which we also had.

 7            THE COURT:  All right.

 8            MS. OKIKE:  And so, as Your Honor knows, we have a

 9  bridge order on exclusivity that expires on August 16th, and so

10  we're seeking approval of the proposed order that we filed

11  along with the debtors' second motion for an extension, which

12  was at Docket Number 886.  That would extend our filing

13  deadline to August 23rd and our solicitation deadline to

14  September 30th.

15            We've obviously made substantial progress towards

16  bringing these cases to conclusion, including reaching a global

17  settlement with the Committee, and we're just seeking an

18  extension to give the debtors the opportunity to prosecute the

19  plan on file.  So we'd respectfully request that you would

20  enter that order.

21            THE COURT:  All right.  Mr. Sponder, your hand is

22  raised again.

23            MR. SPONDER:  Thank you, Your Honor.  The United

24  States Trustee doesn't have any issues with respect to the

25  exclusivity.

1          I wanted to go back to the 9019, and our

2   understanding was that this was going to be withdrawn, not

3   adjourned, so it still requires objections to be filed.  We do

4   have an objection to that settlement.  If the settlement is not

5   going to be pursued, we don't think we should have to file an

6   objection to it, if it's been incorporated in the plan, which

7   was one of our objections to the prior -- to that settlement.

8          So right now as it stands we'd have to file an

9   objection even though that might not -- it doesn't look like

10  that that settlement would be going through.

11          THE COURT:  Ms. Okike?

12          MS. OKIKE:  Yes, Your Honor, we would just put the

13  motion on a suspense docket, and we'd -- you know, if -- to the

14  extent we were to go forward with it, if the global settlement

15  were to fall apart for some reason, we would then, you know,

16  renotice the objection deadline and give people an opportunity.

17          THE COURT:  Okay.  Why don't I do this, I think it

18  would make the most sense, I'm going to mark it, that 9019

19  motion withdrawn without prejudice.  It could be reinstated by

20  correspondence.  So that if there is -- if there is a need,

21  debtors' counsel will just contact chambers, and we'll

22  recalendar it and that will trigger the new dates.

23          MS. OKIKE:  Great.  Thank you, Your Honor.

24          THE COURT:  All right.

25          MR. SPONDER:  Thank you, Your Honor.

33

 1          THE COURT:  Anyone else wish to be heard?

 2                     (No audible response)

 3          THE COURT:  So, the second matter on for today was

 4  Docket Number 886, the debtors' motion extending exclusivity.

 5  We're going to mark it granted if -- do we have a form of order

 6  already that was -- or does it have to be changed?

 7          MS. OKIKE:  Yes, Your Honor, we can resubmit it

 8  though.

 9          THE COURT:  Resubmit it just to make sure we have the

10  right version, and otherwise, once again, I appreciate

11  everybody's time and efforts.  I think we're on a positive --

12  we're pursuing a positive direction here.  Thank you.

13          MS. OKIKE:  Thank you, Your Honor.

14          THE COURT:  You're welcome.

15                         *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

34

# C E R T I F I C A T I O N

I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.      DATE:  August 3, 2023