**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br>**Hearing Date: August 30, 2023 @ 10:00 a.m. (ET)**<br>**Response Deadline:** August 23, 2023<br>**Oral Argument Waived Unless Objections Timely Filed** |

### NOTICE OF BLOCKFI INTERNATIONAL LTD.'S
### MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE
### AUTOMATIC STAY, (II) HOLDING VRAI NOM IN CONTEMPT
### AND IMPOSING SANCTIONS FOR WILLFUL VIOLATIONS OF
### THE AUTOMATIC STAY AND (III) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

**PLEASE TAKE NOTICE** that on August 30, 2023 at 10:00 a.m. (ET), or as soon thereafter as counsel may be heard, BlockFi International Ltd. ("BlockFi International"), by and through its undersigned counsel, shall move (the "Motion") before the Honorable Michael B. Kaplan, Chief United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), 402 East State Street, Trenton, New Jersey 08608, or such other physical or virtual location as may be determined by the Court, for entry of an order (i) enforcing the automatic stay, (ii) holding Vrai Nom Investment Limited ("Vrai Nom") in contempt and imposing sanctions for its willful violations of the automatic stay, (iii) awarding damages to BlockFi International for Vrai Nom's actions in contravention of the automatic stay, and (iv) granting any such other relief as the Court deems appropriate. A proposed Order is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall: (i) be in writing, (ii) state with particularity the basis of the objection; (iii) conform with the Bankruptcy Court's *Order Granting Debtors' Motion to Establish Certain Notice, Case Management, and Administrative Procedures* [Docket No. 54], and (iv) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the

Supplemental Commentary, so as to be received no later than seven (7) days before the hearing date set forth above.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d), and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that the undersigned requests oral argument on the return date of the Motion if objections are timely filed.

*[Remainder of page intentionally left blank.]*

Dated: August 8, 2023        /s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>          Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## BLOCKFI INTERNATIONAL LTD.'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) HOLDING VRAI NOM IN CONTEMPT AND IMPOSING SANCTIONS FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND (III) GRANTING RELATED RELIEF

BlockFi International Ltd. ("BlockFi International") moves the Court under sections 105(a)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

and 362 of title 11 of the Bankruptcy Code[2] for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), enforcing the automatic stay, holding Vrai Nom Investment Limited ("Vrai Nom") in contempt and imposing sanctions for its willful stay violations, awarding damages to BlockFi International and granting related relief. In support, BlockFi International represents as follows:

## SUMMARY

1.    In the ordinary course of BlockFi International's business, prior to the Petition Date BlockFi International entered into loan agreements with certain institutional clients pursuant to which BlockFi International borrowed digital currency, fiat currency, and related funds. On June 7, 2022, BlockFi International and Vrai Nom entered into one such loan agreement, pursuant to which Vrai Nom loaned BlockFi International 21,670,000 USDC. As discussed in further detail below, BlockFi International pledged certain ETH and ETHW tokens to secure the loan.

2.    In March 2023, Vrai Nom filed proof of claim number 14777 (the "Proof of Claim"),[3] in which it asserted a $1.95 million claim against BlockFi International's estate representing the balance allegedly owed by BlockFi International following Vrai Nom's exercise of remedies against certain of the collateral securing its loan to BlockFi International. However, the Proof of Claim includes a schedule of support and trade confirmation that each demonstrate and confirm that Vrai Nom exercised remedies against certain collateral *after* BlockFi International had filed its bankruptcy petition, in violation of the automatic stay.

3.    Specifically, on November 30, 2022, Vrai Nom transferred 12,254.6305 ETH tokens (the "Transferred Collateral") that BlockFi International had posted as collateral without

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the *Complaint Against Vrai Nom Investment Limited* [Docket No. 1179] (the "Complaint").

[3] A true and correct copy of the Proof of Claim is attached hereto as **Exhibit B**.

first moving this Court for relief from the automatic stay or otherwise obtaining such relief. At

current prices,[4] the Transferred Collateral alone exceeds the Loan balance set forth in the Proof of

Claim by over $1 million. After reducing the Loan balance by $4.3 million, which Vrai Nom

collected from a separate, prepetition transaction against other collateral, and after accounting for

5,631 ETHW tokens worth over $9,500 at current prices that Vrai Nom continues to hold and

refuses to return to BlockFi International,[5] Vrai Nom's actions deprived the BlockFi International

estate of property worth nearly $5.2 million in the aggregate, as set forth below.

| Date | Loan/Collateral Event | Amount | Legal Effect |
|---|---|---|---|
| | Loan Balance[6] | $21,752,035.75 | |
| 11/24/2022 | Huobi Transaction | ($4,381,743.11) | |
| 11/30/2022 | Post-Petition Transfer | ($22,556,853.27) | *Stay Violation* |
| | ETHW Tokens | ($9,594.44) | |
| | Loan Balance | ($5,196,155.07) | *Damages to BlockFi* |

4.      BlockFi International sent a demand letter (the "Letter")[7] to Vrai Nom on May 31,

2023, and thereafter attempted to engage Vrai Nom, through counsel, in settlement discussions

regarding BlockFi International's claims against Vrai Nom. To date, Vrai Nom has failed and

refused to substantively respond to the Letter or otherwise address its continuing stay violation.

5.      BlockFi International filed the Complaint against Vrai Nom on July 10, 2023.

6.      By this motion, BlockFi International seeks entry of an order, substantially in the

form of the Proposed Order attached hereto, (i) enforcing the automatic stay, (ii) holding Vrai Nom

---

[4] August 8, 2023 ETH prices sourced from Binance: https://www.binance.com/en/price/ethereum.

[5] August 8, 2023 ETHW prices sourced from Binance: https://www.binance.com/en/price/ethereum-pow.

[6] Vrai Nom asserts a total outstanding Loan balance of $21,871,666.02. Proof of Claim at 6. But Vrai Nom's calculation fails to account for a $119,630.27 payment BlockFi International made on November 1, 2022. Thus, the actual outstanding balance as of the Petition Date was $21,752,035.75, inclusive of accrued interest.

[7] A true and correct copy of the Letter is attached hereto as **Exhibit C**.

in contempt and sanctioning it for willful stay violations, (iii) awarding damages to BlockFi International for Vrai Nom's willful stay violations and (iv) granting related relief.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). BlockFi International consents to this Court's entry of final orders or judgment in connection with this contested matter if the Court determines that, absent consent of the parties, the Court cannot enter final orders or judgments on certain of the matters in this contested matter consistent with Article III of the United States Constitution. By filing the Proof of Claim, Vrai Nom has submitted to the equitable jurisdiction of this Court and consented to this Court's adjudication of its claims. *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (per curiam); *In re Tarragon Corp.*, 2009 WL 2244598, at *6 (Bankr. D.N.J. July 27, 2009) ("[T]he filing of a proof of claim brings a creditor within the equitable jurisdiction of the Bankruptcy Court removing the creditor's right to a jury trial.") (citing *Shubert v. Lucent Techs., Inc.* (*In re Winstar Communications, Inc.*), 554 F.3d 382, 406–07 (3d Cir. 2009) (citing *Langenkamp*, 498 U.S. at 44–45) (other citations omitted)); *Shared Network Users Group, Inc. v. WorldCom Techs., Inc.*, 309 B.R. 446, 451 (E.D. Pa. 2004).

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The bases for the relief requested herein are sections 105(a) and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## BACKGROUND

10.    Pursuant to the Master Digital Currency Loan Agreement dated June 7, 2022, between BlockFi International, as borrower, and Vrai Nom, as lender (the "Loan Agreement"), Vrai Nom loaned BlockFi International 21,670,000 USDC[8] (the "Loan"). To secure its obligations under the Loan Agreement, BlockFi International pledged to Vrai Nom a total of 15,920.63 ETH tokens and 5,631 ETHW tokens as collateral for the Loan (collectively, the "Collateral").

11.    As of August 8, 2023, the value of the Collateral, inclusive of the proceeds of the Huobi Transaction (defined below), was approximately $26,948,190.82.[9] The outstanding balance of the Loan (principal and interest included) was $21,752,035.75 on August 8, 2023. Accordingly, the value of the Collateral exceeded the outstanding balance of the Loan by approximately $5,196,155.07 as of August 8, 2023.

12.    On November 24, 2022, Vrai Nom exercised remedies against a portion of the Collateral and liquidated 3,665.9995 of pledged ETH with a trade partner called Huobi in exchange for 4,381,743.109 USDT (the "Huobi Transaction"). *See* Proof of Claim, Schedule at 1–2.

13.    On November 28, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for chapter 11 relief in this Court, thereby commencing these Chapter 11 Cases. On the same day, Kroll Restructuring Administration ("Kroll") served the *Letter Regarding First Day Hearing* (the "First Day Hearing Letter"), a copy of which is attached as Exhibit B to the *Affidavit of Service* [Docket No. 36] (the "Nov. Affidavit of Service") filed on November 29, 2022, to all parties-in-interest listed on the service list attached as Exhibit A to the Nov. Affidavit of Service. The Nov.

---

[8] Unless otherwise specified herein: (a) amounts represented with the "$" sign reflect amounts in U.S. Dollars; (b) "USDC" represents the digital currency USD Coin, which has the equivalent value of U.S. Dollars; and (c) "USDT" represents the digital currency Tether, which has the equivalent value of U.S. Dollars.

[9] The Transferred Collateral and ETHW token values are subject to change as digital asset prices continue to fluctuate. For purposes of this Motion, BlockFi International uses August 8, 2023, as a date for measuring current prices.

Affidavit of Service reflects that Vrai Nom received service of the First Day Hearing Letter. BlockFi also widely publicized its Chapter 11 filings on social media and news outlets alike on the Petition Date and on November 29, 2022.[10] BlockFi also launched a claims agent website through Kroll Restructuring LLC (the "Kroll Website"), which has, since its launch on the Petition Date, provided free access to notices, other documents and deadlines.[11] The First Day Hearing Letter included links to the Kroll Website and the Court's website to attend the first-day hearing by Zoom. *See* Docket No. 36 at Ex. B. Such notice of the commencement of these Chapter 11 Cases provided Vrai Nom due and sufficient notice of the automatic stay in these Chapter 11 Cases.

14.    In addition to the First Day Hearing Letter, Kroll served the *Debtors' Motion Seeking Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, and (II) Granting Related Relief* [Docket No. 12] (the "Worldwide Stay Motion") and the proposed form of order on Vrai Nom on November 28, 2022. Nov. Affidavit of Service at 2. At the first day hearing, this Court stated the following regarding its entry of the Worldwide Stay Order:

> The Court has entered these orders in the past, recognizing it's a comfort order. The only proviso that I like to make sure all parties are aware of, the value of having an order, as you're aware, is that it allows for the enforcement through contempt as opposed to -- because it's essentially just regurgitating the code in the order. Before I would hold the party in contempt I would need to be assured

---

[10]    *See, e.g.*, BLOCKFI, *Important Client Update – November 28, 2022* (Nov. 28, 2022), https://blockfi.com/November28-ClientUpdate;    BLOCKFI,    *Chapter    11    FAQ*    (Nov.    28,    2022), https://blockfi.com/November28-ClientFAQ;  C Street Advisory Group, *BlockFi Commences Restructuring Proceeding to Stabilize Business and Maximize Value for all Clients and Stakeholders*, BUSINESSWIRE (Nov. 28, 2022, 10:17  AM),  https://www.businesswire.com/news/home/20221128005451/en/BlockFi-Commences-Restructuring-Proceeding-to-Stabilize-Business-and-Maximize-Value-for-all-Clients-and-Stakeholders; @BlockFi, TWITTER (Nov 28, 2022, 9:37 AM), https://twitter.com/BlockFi/status/1597253469374910466 ("Today, BlockFi filed voluntary cases under Chapter 11 of the U.S. Bankruptcy Code."); BLOCKFI, *Client Update – First Day Hearing* (Nov. 29, 2022),  https://blockfi.com/client-update-first-day-hearing;  @BlockFi,  TWITTER  (Nov. 29, 2022, 4:59 PM), https://twitter.com/BlockFi/status/1597726965251072000 ("Earlier today, BlockFi's First Day Chapter 11 Hearing was held. We reiterated our singular focus: maximizing value for all clients and other stakeholders.").

[11] https://restructuring.ra.kroll.com/blockfi/.

> by separate motion that they've been served and had notice of the
> order.

Nov. 29, 2022 Transcript of Proceedings, at 74:6–14. On November 30, 2022, the Court entered

its *Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination*

*Provisions, and Ipso Facto Protections of the Bankruptcy Code, and (II) Granting Related Relief*

[Docket No. 56] (the "Worldwide Stay Order"), restating and enforcing the worldwide automatic

stay. On December 1, 2022, Kroll served the Worldwide Stay Order on Vrai Nom. *See Affidavit*

*of Service* [Docket No. 120].

15.    On November 30, 2022, without first obtaining modification of or relief from the

worldwide automatic stay, Vrai Nom liquidated additional Collateral consisting of 12,254.6305

ETH (i.e., the Transferred Collateral) with a trade partner called Blockchain Trading International

Limited in exchange for 15,519,044.391 USDC:

---

**X001528 - Trade Confirmation - 30/11/2022**
1 message

OTC BLOCKCHAINTRADING <otc.BLOCKCHAINTRADING@outlook.com>                         Wed, Nov 30, 2022 at 1:55 PM
To: "matrixvrainom@gmail.com" <matrixvrainom@gmail.com>

Hello Vrai Nom Investment Team,

Thank you for choosing to trade with Blockchain trading international, we are pleased to present the following trade details;

| Trade Execution Number | X001528 |
|---|---|
| Trade Date | 30-Nov-22 |
| Currency Pair | ETHUSDC |
| Bought Currency | USDC |
| Bought Amount | 15,519,044.391 |
| Rate (Inverse Rate) | 1,266.382 |
| Sold Currency | ETH |
| Sold Amount | 12,254.6305 |

---

*Image Excerpted from Proof of Claim, at 45*

16.     On March 31, 2023, Vrai Nom filed the Proof of Claim and attached the trade confirmation pictured above, which confirms the date, amount, and other details of Vrai Nom's post-petition liquidation of property of BlockFi International's estate. *See* Proof of Claim at 45 (attaching email regarding trade execution number X001528 dated November 30, 2022). Vrai Nom also attached an addendum labeled Schedule of Support of Proof of Claim in which Vrai Nom represented that it continues to hold Collateral consisting of 5,631 ETHW tokens.

## ARGUMENT

17.     The Transferred Collateral constituted property of BlockFi International's estate. By transferring the Transferred Collateral, Vrai Nom exercised control over and enforced a lien against property of BlockFi International's estate on a post-petition basis to collect on a prepetition claim and setoff a prepetition debt in violation of the automatic stay. Vrai Nom continues to exercise control over property of BlockFi International's estate consisting of 5,631 ETHW tokens.

**A.      The Transferred Collateral and ETHW Tokens are Property of BlockFi International's Estate Within the Scope of, and Protected by, the Automatic Stay**

18.     The automatic stay prohibits creditors and other parties from, among other things, engaging in "***any act*** to obtain possession of property of the estate or of property from the estate or to exercise control over property of [the Debtor's] estate," "***any act*** to . . . enforce any lien against property of the estate," "***any act*** to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" and "the setoff of any debt owing to the debtor that arose before the commencement of the [Chapter 11 Cases]." 11 U.S.C. § 362(a)(3), (4), (6) and (7) (emphasis added). The automatic stay is not limited to property for which the debtor holds title, but rather includes any property "in which the debtor has a legal, equitable or possessory interest," including "beneficial rights and interest that the debtor may have in property [possessed by] another." *See In re Ramirez*, 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995)

(citation omitted); *see also In re VanZant*, 210 B.R. 1011, 1016 (Bankr. S.D. Ill. 1997) (A debtor

"has an 'interest in property' even if the property is fully encumbered by liens and the debtor has

only an equitable or possessory interest"); *In re Brody*, 297 B.R. 5, 8 (Bankr. S.D.N.Y. 2003)

(same); 11 U.S.C. § 541(a)(1) (the estate includes "all legal or equitable interests of the debtor in

property as of the commencement of the case").

19.     The automatic stay applies even to property "to which the debtor has only an

arguable claim of right." *See In re Glob. Outreach, S.A.*, 2009 WL 1606769 at *7 (Bankr. D.N.J.

June 8, 2009) (quoting *Brown v. Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005)); *see also Denby-*

*Peterson v. Nu2u Auto World*, 595 B.R. 184, 194 (D.N.J. 2018), *aff'd sub nom. In re Denby-*

*Peterson*, 941 F.3d 115 (3d Cir. 2019) ("property [that is] only arguably a part of the estate is

subject to the automatic stay"). The purpose of this rule is to prevent "particular creditors from

acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other

creditors." *Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). It does

this by "centraliz[ing] all prebankruptcy civil claims against a debtor in the bankruptcy court,"

*McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 511 (3d Cir. 1997), thus allowing the court to

make a final determination of the ownership and disposition of assets, which would be impossible

if creditors used self-help to raid assets of the estate. *See Mar. Elec. Co.*, 959 F.2d at 1204 ("[T]he

stay protects the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of

property before the trustee has had a chance to marshal the estate's assets and distribute them

equitably among the creditors."). Accordingly, the "relevant inquiry is whether the Debtors have

arguable claims of right to the [Collateral], or a colorable basis for asserting an interest in the

[Collateral]." *In re ABC Learning Ctrs. Ltd.*, 2011 WL 4899789, at *2 (Bankr. D. Del. Oct. 13,

2011) (citation omitted). BlockFi International's property interests in the Transferred Collateral and ETHW tokens easily clear this low bar.

20.    Further, the stay "prevents secured creditors from liquidating the assets of the debtor before the bankruptcy court has had an opportunity to review the matter. As Congress intended, the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors." *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 696 (3d Cir. 1989) (citations omitted); *see also* 3 COLLIER ON BANKRUPTCY § 362.03 (16th ed. 2023) ("[E]ven if property has been repossessed pursuant to a security interest, sale of that property is stayed."); *In re Mann*, 907 F.2d 923, 926–27 (9th Cir. 1990) ("Generally, the filing of bankruptcy will stay all proceedings relating to a foreclosure sale.").

21.    As of the Petition Date, BlockFi International retained at least an equitable interest in the Transferred Collateral and ETHW tokens notwithstanding the existence of any liens or security interests in favor of Vrai Nom encumbering such property. Thus, the Transferred Collateral and ETHW tokens constituted property of BlockFi International's estate as of the Petition Date and are protected by the automatic stay.

**B.    Vrai Nom's Post-Petition Transfer of the Transferred Collateral Constituted a Willful Violation of the Stay that is Void *ab Initio* and Vrai Nom Should be Held in Contempt, Sanctioned and Ordered to Pay Damages to BlockFi International**

22.    Under Third Circuit law, a creditor willfully violates the automatic stay when it violates the stay with knowledge that the bankruptcy petition has been filed. *See In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *Id.* Vrai Nom intentionally transferred the Transferred Collateral after the Petition

10

Date with knowledge of BlockFi International's bankruptcy petition and without prior approval from the Bankruptcy Court. Thus, Vrai Nom willfully violated the automatic stay, and it continues to do so by holding the 5,631 ETHW tokens. Vrai Nom's stay violation also rendered the transfer of the Transferred Collateral void *ab initio*. *See, e.g.*, *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) ("[A]ny creditor action taken in violation of an automatic stay is void *ab initio*. . . .") (citing *Mar. Electric Co.*, 959 F.2d at 1206).

23.    Willful violations of the automatic stay may result in a finding of contempt, sanctions, an award of attorneys' fees, and/or punitive damages, among other things. *See* 11 U.S.C. §§ 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."), 362(k)(1) ("[A]ny willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."); *see also Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 203 (3d Cir. 2000) (affirming bankruptcy court's award of punitive damages under predecessor to section 362(k)); *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) ("[Section 362(k)(1)] has uniformly been held to be applicable to a corporate debtor.").

24.    Most courts will impose contempt sanctions for a knowing and willful violation of a court order, and the automatic stay is considered as equivalent to a court order. *See Fid. Mortg. Inv'rs v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976); 3 COLLIER ON BANKRUPTCY § 362.12 (16th ed. 2023). In addition to the automatic stay, Vrai Nom's actions also violated the Bankruptcy Court's Worldwide Stay Order. *See Matter of Skyport Glob. Comms., Inc.*, 661 F. App'x. 835, 841 (5th Cir. 2016) (affirming bankruptcy court's award of fees and expenses debtor incurred attempting to compel compliance with bankruptcy court's order).

11

## WAIVER OF MEMORANDUM OF LAW

25.     BlockFi International respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which BlockFi International relies is set forth herein and the Motion does not raise any novel issues of law.

## CONCLUSION & PRAYER FOR RELIEF

26.     Vrai Nom is a sophisticated, international financier based in Hong Kong, one of the epicenters of global finance.[12] Vrai Nom received notice of BlockFi International's bankruptcy and the automatic stay through, among other things, delivery of the First Day Hearing Letter and Worldwide Stay Motion on the Petition Date at the physical address and email address for notices listed in the Loan Agreement. Loan Agreement at 21 § XVI. There is no excuse for Vrai Nom's actions. Vrai Nom caused over $5.1 million in damages to BlockFi International's estate, which were exacerbated by the cost (and delay) that BlockFi International's estate has had to incur attempting to compel compliance with the automatic stay and this Court's Worldwide Stay Order. Before filing this Motion, BlockFi International gave Vrai Nom ample opportunity to comply with the law and to take affirmative steps to ameliorate its actions in violation of the stay, but Vrai Nom decided instead to flout BlockFi International's demand and the Worldwide Stay Order. For these reasons, Vrai Nom's actions warrant not only compensatory damages, but also sanctions, attorneys' fees, pre- and post-judgment interest, and any other relief the Court deems appropriate.

**WHEREFORE** BlockFi International respectfully prays that this Court enter an order:

A.     Holding Vrai Nom in civil contempt and sanctioning Vrai Nom for its willful

---

[12]     *See, e.g.*,     https://www.hkma.gov.hk/eng/key-functions/international-financial-centre/hong-kong-as-an-international-financial-centre/.

violations of the automatic stay;

B.      Awarding compensatory damages to BlockFi International, including without
limitation actual damages of not less than $5,196,155.07;

C.      Awarding pre-judgment and post-judgment interest to BlockFi International at the
highest rate allowed by contract or as is otherwise appropriate under applicable law;

D.      Awarding all reasonable and necessary attorneys' fees, expenses, and costs,
including court costs and attorneys' fees for all post-verdict proceedings and appeals; and

E.      Granting all such other relief to which BlockFi International may be entitled.


Dated: August 8, 2023                    /s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
(201) 489-1536 Facsimile
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

# <u>EXHIBIT A</u>

# PROPOSED ORDER

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq. (NJ Bar No. 014321986)<br>Warren A. Usatine, Esq. (NJ Bar No. 025881995)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>(201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (admitted *pro hac vice*)<br>Christine A. Okike, P.C. (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 446-4800<br>jsussberg@kirkland.com<br>christine.okike@kirkland.com<br><br>**HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Kenric D. Kattner, Esq. (admitted *pro hac vice*)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>kenric.kattner@haynesboone.com<br><br>*Attorneys for Debtors and Debtors in Possession* | |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>       Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>**Hearing Date and Time:**<br>**August 30, 2023 at 10:00 a.m. (ET)** |

## ORDER GRANTING BLOCKFI INTERNATIONAL LTD.'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) HOLDING VRAI NOM IN CONTEMPT AND IMPOSING SANCTIONS FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND (III) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

(Page 2)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING BLOCKFI INTERNATIONAL LTD.'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) HOLDING VRAI NOM IN CONTEMPT AND IMPOSING SANCTIONS FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND (III) GRANTING RELATED RELIEF |

The relief set forth on the following pages, numbered three (3) through four (4) is

**ORDERED**.

| | |
|---|---|
| (Page 3) | |
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING BLOCKFI INTERNATIONAL LTD.'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) HOLDING VRAI NOM IN CONTEMPT AND IMPOSING SANCTIONS FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND (III) GRANTING RELATED RELIEF |

BlockFi International filed *BlockFi International Ltd.'s Motion for Entry of an Order (I) Enforcing the Automatic Stay, (II) Holding Vrai Nom in Contempt and Imposing Sanctions for Willful Violations of the Automatic Stay, (III) Granting Related Relief* (the "Motion")[1] seeking an order of this Court enforcing the automatic stay, holding Vrai Nom in contempt and imposing sanctions, and awarding damages to BlockFi International for Vrai Nom's actions in contravention of the stay; due notice hereof having been given; a hearing thereon having been held; the Court having considered BlockFi International's request, and opposition thereto, if any; and the Court finding good and sufficient cause for ordering the relief requested in the Motion:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      Vrai Nom is hereby held in **CONTEMPT** and **SANCTIONED** for willfully violating the automatic stay under section 362(a)(3), (4), (6) and (7) of the Bankruptcy Code and this Court's Worldwide Stay Order. Pursuant to Bankruptcy Code sections 105(a) and 362, this Court enforces the automatic stay and orders Vrai Nom to pay damages of $5,196,155.07 to BlockFi International for Vrai Nom's willful violation of the automatic stay, plus pre- and post-judgment interest at a rate of [●]% from November 30, 2022 through the date of payment. Vrai Nom shall remit such payment to BlockFi International within seven (7) days of the entry of this Order.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING BLOCKFI INTERNATIONAL LTD.'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) HOLDING VRAI NOM IN CONTEMPT AND IMPOSING SANCTIONS FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND (III) GRANTING RELATED RELIEF |

3.      Vrai Nom shall also reimburse BlockFi International for the costs and attorneys' fees BlockFi International incurred obtaining this Order. Within thirty (30) days of the entry of this Order, BlockFi International shall file a supplement to the Motion (the "Supplement") itemizing the attorneys' fees, costs, and other expenses incurred as a result of Vrai Nom's violation of the automatic stay and this Court's Worldwide Stay Order. The Court will set a hearing on the Supplement on a date not less than thirty (30) days from the filing of the Supplement.

4.      BlockFi International is authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

5.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

6.      This Order shall be immediately effective and enforceable upon its entry.

7.      The entry of this Order is without prejudice to BlockFi International's rights to seek further relief from the Court regarding Vrai Nom's violations of the automatic stay or this Court's orders and the attorneys' fees, costs and other expenses BlockFi International has incurred as a result of such violations, including without limitation any attorneys' fees, costs and other expenses BlockFi International incurs as a result of any post-verdict proceedings and appeals.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# <u>EXHIBIT B</u>

# PROOF OF CLAIM

**United States Bankruptcy Court, District of New Jersey (Trenton)**

| Fill in this information to identify the case (Select only one Debtor per claim form): | | |
|---|---|---|
| ☐ BlockFi Inc. (Case No. 22-19361) | ☐ BlockFi Wallet LLC (Case No. 22-19366) | ☐ BlockFi Investment Products LLC (Case No. 22-19370) |
| ☐ BlockFi Trading LLC (Case No. 22-19363) | ☐ BlockFi Ventures LLC (Case No. 22-19367) | ☐ BlockFi Services Inc. (Case No. 22-19371) |
| ☐ BlockFi Lending LLC (Case No. 22-19365) | ☒ BlockFi International Ltd. (Case No. 22-19368) | ☐ BlockFi Lending II LLC (Case No. 22-19374) |

## Modified Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Vrainom Investment Limited

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Address1: C/- Gosai Law | Address1: |
| Address2: Level 2, 194 Varsity Parade | Address2: |
| Address3: | Address3: |
| Address4: | Address4: |
| City: Varsity Lakes | City: |
| State: Queensland | State: |
| Postal Code: 4227 | Postal Code: |
| Country: Australia | Country: |
| Contact phone +61423425362 | Contact phone _____ |
| Contact email krish@gosailaw.com.au | Contact email _____ |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)_____  Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __4__ __4__ __6__ __7__ |

| | |
|---|---|
| **7. How much is the claim?** | $ 1,970,878.5186<br><br>**Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Balance of unpaid Loan Amount pursuant to Master Digital Currency Loan Agreement dated 7 June 2022, between the parties. |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☑ Other. Describe: Ethereum Proof of Work tokens<br><br>**Basis for perfection:** Control - Vrainom currently holds these tokens in a multisig wallet<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 20,834.70<br><br>**Amount of the claim that is secured:** $ 20,834.70<br><br>**Amount of the claim that is unsecured:** $ 1,950,043.819 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ 1,950,043.819<br><br>**Annual Interest Rate** (when case was filed) 8.5% %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☐ No<br>☑ Yes. Identify the property: Ethereum Proof of Work tokens |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(     ) that applies.

$_____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☑ No

☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**

$_____

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

_____          03/31/2023
Electronic Signature                                      Date

**Name of the person who is completing and signing this claim**

| | | |
|---|---|---|
| Name | Krish | Gosai |
| | First name          Middle name | Last name |
| Title | Managing Partner | |
| Company | Gosai Law | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | Level 2, 194 Varsity Parade | |
| | Number        Street | |
| | Varsity Lakes      Queensland      4227      Australia | |
| | City                State         ZIP Code    Country | |
| Contact phone | +61423425362 | Email   krish@gosailaw.com.au |

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

_____

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

-------------------------------------------------------------------------------------------------------------

Attachment Filename:

230331 Schedule of Support - Proof of Claim - Vrai.pdf

**KROLL**

## Schedule of Support of Proof of Claim – Vrainom Investment Limited

On around 7 June 2022, Vrainom Investment Limited (**Vrai**) and BlockFi International Ltd (**BlockFi**) entered into a Master Digital Currency Loan Agreement (**Agreement**), whereby BlockFi would, from time to time, borrow Digital Currency, Dollars or Alternative Currency from Vrai.

Between the period of 8 June 2022 to 31 August 2022, BlockFi borrowed the sum of 21,670,000 from Vrai. The 21,670,000 USDC borrowed is equivalent to US$21,670,000.

BlockFi provided Vrai Ethereum (**ETH**) as Collateral for the loans. During the Ethereum blockchain shift from Proof of Work to Proof of Stake, Ethereum Proof of Work (**ETHW**) tokens were created and held by Vrai.

On 12 November 2022, Vrai recalled the total loan amount pursuant to section II(c)(i). As the recall notice was provided on a Saturday, it has been accepted by the parties that the notice was taken to be effective as given at 9:00 am on 14 November 2022.

BlockFi was obligated to return the total loan amount within 24 hours of the notice, being 9:00 am on 15 November 2022 (**Delivery Time**). BlockFi failed to deliver the total loan amount by the required Delivery Time and therefore, BlockFi was in breach of the Agreement.

The breach committed by BlockFi continued for 5 business days, which subsequently led to BlockFi committing an Event of Default under the Agreement. As such, on around 22 November 2022, Vrai declared the total loan amount immediately due and payable, and immediately owing. Furthermore, Vrai placed BlockFi on notice of its intention to foreclose on, liquidate or exercise any other rights or remedies with respect to the Collateral and our intention to liquidate or dispose of the Collateral. Vrai sought notice from BlockFi and no response was received.

Given BlockFi's breach of the Agreement and conduct amounting to an Event of Default, along with the lack of communication from BlockFi regarding the repayment of the total loan amount, Vrai sought to mitigate its losses by liquidating the Collateral, which it had previously put BlockFi on notice of.

Between 24 November 2022 and 30 November 2022, Vrai liquidated a total of 15,920.63 ETH at Huobi and Blockchain Trading International. A detail of the trade confirmations is **attached** to this submission, and a summary is below:

- 3665.9995 ETH was sold at Huobi at an average price of US$1195.23833, resulting in a return of 4,381,743.109 USDT; and

- 12,254.6305 ETH was sold at Blockchain Trading International at an average price of $1,266.38, resulting in a return of 15,519,044.391 USDC.

The total sum received from the ETH liquidation was 19,900,787.50 which was received in USDT/USDC and equivalent to $19,900,787.50.

In relation to the substantiation of the proof of claim, we note that BlockFi failed to pay Vrai interest for the month of October 2022 and for 23 days in the month of November 2022, resulting in a total interest owning of $201,666.02.

We do however note that Vrai holds 5,631 ETHW tokens as collateral, which at an average price of $3.70 is worth approximately, $20,834.70. These ETHW are held in a multisig wallet and are unable to be accessed at this time.

Therefore, the breakdown of the proof of claim is as follows (in USD):

| BlockFi Liabilities | | |
|---|---|---|
| Outstanding Loan | | 21,670,000 |
| October Interest | | 115,771.23 |
| November Interest | | 85,894.79 |
| | Total | 21,871,666.0186 |

| Vrai Liquidation | | |
|---|---|---|
| ETH Liquidation | | 19,900,787.50 |
| | Total | 19,900,787.50 |

| Proof of Claim | Total | 1,970,878.5186 |
|---|---|---|
| Claim Security: | | |
| Secured by ETHW | | 20,834.70 |
| Unsecured Claim | | 1,950,043.82 |

We **attach** a copy of the Agreement, Loan Confirmation, Historical Chats and the ETH liquidation trade confirmations in support of the Proof of Claim.  Once adjudicated, Vrai would be grateful to receive the settlement sum in USDC to its nominated digital wallet address.

*Strictly Private & Confidential*
*Execution Version*

# MASTER DIGITAL CURRENCY LOAN AGREEMENT

Dated as of 7th of June_____, 2022, between **BlockFi International Ltd.,** an exempted company organized and existing under Bermuda law ("Borrower") and **Vrai Nom Investment Limited**, a company organized and existing under Hong Kong law ("Lender", and Borrower and Lender, each a "party" and together, the "parties").

R E C I T A L S:

**WHEREAS**, subject to the terms and conditions of this Master Digital Currency Loan Agreement (this "Agreement"), Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend certain Digital Currency, Dollars or Alternative Currency (each as defined herein) to Borrower and Borrower will return such Digital Currency or repay such Dollars or Alternative Currency to Lender upon the termination of the Loan pursuant to the terms and conditions in this Agreement or as otherwise set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing, the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower and Lender hereby agree as follows:

I.    **Definitions.**  For purposes of this Agreement, the following terms shall have the respective meanings set forth in this Section I.  References to any agreements or documents herein shall mean such agreements or documents as amended, restated, amended and restated, modified and/or otherwise supplemented from time to time in accordance with the terms hereof.

"*Account Control Agreement (Digital Currency)*" means any Account Control Agreement, dated on or after the date hereof, by and among Borrower, Lender and a custodian to be mutually agreed between Borrower and Lender (the "Custodian"), that provides for Lender to have control of the applicable Digital Currency.".

"*Accrued Borrowed Amount*" means, at any time, for a Loan, the Borrowed Amount, together with accrued and unpaid interest thereon and accrued and unpaid fees thereon, to such time.

"*Additional Collateral*" has the meaning set forth in Section V(b).

"*Airdrop*" means a distribution of a new token or tokens resulting from the ownership of a preexisting token.

"*Alternative Currency*" means fiat currency other than Dollars.

"*Applicable Law*" means (regardless of jurisdiction) any applicable (i) federal, national, state and local laws (including common law), ordinances, regulations, orders, statutory instrument, rules, treaties, codes of practice, decrees, injunctions, or judgments and (ii) ruling, declaration, regulation, requirement, or interpretation issued by any regulatory, judicial, administrative or governmental body or person that, in either case, are applicable to or binding on any person or

entity or any of its property or assets or to which such entity or person or any of its property or assets is subject.

"*Authorized Agent*" has the meaning set forth in Exhibit A.

"*Borrow Rate*" has the meaning set forth in the Loan Term Sheet.

"*Borrowed Amount*" has the meaning set forth in Section II(b).

"*Borrower*" has the meaning set forth in the introductory paragraph of this Agreement.

"*Business Day*" means any day other than a Saturday or Sunday on which commercial banks are open for business in New York City, United States.

"*Calculation Agent*" means BlockFi International, Ltd., an exempted company organized and existing under Bermuda law.

"*Callable Option*" means the option of Lender to recall a portion or the entirety of the Borrowed Amounts during the term of the Loan, subject to the terms of this Agreement.

"*Change in Law*" means that, on or after the Effective Date (a) due to the adoption of or change in any Applicable Law or any regulation or (b) due to the promulgation or announcement of or any change in the interpretation by any Governmental Authority, Calculation Agent determines in good faith that (X) (i) it has become illegal to maintain or extend a Loan, receive repayment or delivery of Borrowed Amounts or hold and remain secured by Collateral or (ii) the ability to Transfer any Borrowed Amounts or Collateral has become materially impaired or (Y) there is an increased risk that it will become subject to regulations to which it is not already subject, whether due to Digital Currency being classified or interpreted as "securities" under the Securities Act or Exchange Act, or otherwise.

"*Code*" means the Internal Revenue Code of 1986 as amended.

"*Coinbase*" means the Coinbase Pro platform, or any successor platform thereto (acceptable to the parties), that acts as an exchange for professional trading of digital currencies operated by Coinbase Inc. (or an affiliate) or any successor thereto.

"*Collateral*" has the meaning set forth in Section V(a).

"*Custodian*" has the meaning set forth in the definition of "Account Control Agreement".

"*Default Rate*" has the meaning set forth in Section III(b).

"*Digital Currency*" means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether Classic (ETC), or Litecoin (LTC), any New Currency and any digital currency that the Borrower and Lender agree upon.

"*Digital Currency Address*" means an identifier of 26-34 alphanumeric characters (or such other market-standard identifier) that represents a possible destination for a Transfer of Digital Currency.

"*Digital Currency Collateral Account*" means the account subject to the Account Control Agreement (Digital Currency).

"*Dollars*" and "*$*" mean lawful currency of the United States of America.

"*Effective Date*" has the meaning set forth in <u>Section X</u>.

"*Eligible Compatibility*" means a New Currency that is transferable by the parties and supported by recognized custodians that regularly custody digital assets for customers within 30 days of the applicable Hard Fork, as determined by Calculation Agent.

"*Eligible Hash Power*" means the average hash power mining the New Currency equals or exceeds 5% of the hash power mining the relevant Digital Currency on the 30th day following the applicable Hard Fork, as determined by Calculation Agent.

"*Eligible Market Capitalization*" means a New Currency that has a market capitalization that equals or exceeds 5% of the market capitalization of the relevant Digital Currency on the 30th day following the applicable Hard Fork, as determined by Calculation Agent.

"*Eligible New Currency*" means a New Currency that (a) has (i) Eligible Hash Power, (ii) Eligible Market Capitalization, (iii) Eligible Volume and (iv) Eligible Compatibility or (b) that Lender and Borrower agree in writing is an Eligible New Currency.

"*Eligible Volume*" means a New Currency that has an average 24-hour volume that equals or exceeds 1% of the 24-hour volume of the relevant Digital Currency on the 30th day following the applicable Hard Fork, as determined by Calculation Agent.

"*Event of Default*" has the meaning set forth in <u>Section XI</u>.

"*Exchange Act*" means the United States Securities Exchange Act of 1934, as amended.

"*Excluded Taxes*" means, with respect to the Lender or any other recipient of any payment to be made by or on account of any obligation of Borrower under this Agreement, any of the following Taxes imposed on or measured by or required to be withheld or deducted from a payment to the Lender or any other recipient (a) Taxes imposed on or measured by its overall net income, overall gross income or overall gross receipts (however denominated), branch profits Taxes, franchise taxes imposed on it (in lieu of net income taxes) or capital taxes, in each case, by the applicable jurisdiction (or any political subdivision thereof) under the laws of which such recipient is organized, in which it is resident for tax purposes or in which its principal office is located or imposed as a result of a present or former connection between the Lender or such recipient and the jurisdiction imposing such Tax (other than connections arising from the Lender or such recipient having executed, delivered, become a party to, performed its obligations under, received payments under, received or perfected a security interest under, engaged in any other transaction pursuant to or enforced any Loan Document), (b) withholding Taxes imposed on amounts payable to or for the account of the Lender or any

other recipient with respect to an applicable interest in a Loan pursuant to a law in effect on the date on which the Lender or such recipient acquires such interest in the Loan, (c) Taxes attributable to the Lender or such recipient's failure to comply with Section IV(d) and (d) any withholding Taxes imposed under FATCA.

"***FATCA***" means Sections 1471 through 1474 of the Code, as of the date of this Agreement (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Code and any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among Governmental Authorities and implementing such Sections of the Code.

"***Gemini***" means the Gemini platform that acts as an exchange for trading digital currencies operated by Gemini Trust Company, LLC (or an affiliate) or any successor thereto.

"***Governmental Authority***" means the government of any nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"***Hard Fork***" means a permanent divergence in the relevant Digital Currency blockchain, that for example commonly occurs when non-upgraded nodes cannot validate blocks created by upgraded nodes that follow newer consensus rules or an Airdrop or any other event which results in the creation of a new token.

"***Indemnified Taxes***" means Taxes other than Excluded Taxes.

"***Information***" has the meaning set forth in Section XXV.

"***Initial Margin Level***" has the meaning set forth in Section V(a).

"***Initial Margin Percentage***" has the meaning set forth in the Loan Term Sheet.

"***Invoice Due Date***" has the meaning set forth in Section III(c).

"***Lender***" has the meaning set forth in the introductory paragraph of this Agreement.

"***Lending Request***" has the meaning set forth in Section II(b).

"***Liquidity Exchange***" means Coinbase, but if for any reason Coinbase is not readily available (whether due to technical maintenance or otherwise), "Liquidity Exchange" shall mean Gemini or any other exchange as may be mutually agreed in writing between Borrower and Lender.

"***Loan***" means a loan of Digital Currency, Dollars or an Alternative Currency made pursuant to and subject to this Agreement.

"***Loan Documents***" shall collectively mean this Agreement, all Loan Term Sheets, all exhibits and schedules hereto and thereto, the Account Control Agreement (Digital Currency), and any other document jointly identified by the Lender and Borrower as a "Loan Document."

DocuSign Envelope ID: 250BFF89-162E-4A6D-BACB-0B9085390741

"*Loan Term Sheet*" has the meaning set forth in Section II(b).

"*Margin Call Threshold Amount*" means, with respect to any Loan as of any date, the amount obtained by multiplying the Margin Requirement Percentage by the Accrued Borrowed Amount for such Loan as of such date.

"*Margin Notification*" has the meaning set forth in Section V(b).

"*Margin Release Threshold Amount*" means, with respect to any Loan as of any date the amount obtained by multiplying the Release Margin Percentage by the Accrued Borrowed Amount for such Loan as of such date.

"*Margin Requirement Percentage*" has the meaning set forth in the Loan Term Sheet.

"*Material Adverse Effect*" means a material adverse effect on (a) the business, assets, liabilities, prospects or financial condition of a party, (b) the ability of a party to perform any of its Obligations under the Loan Documents, (c) the Lender's liens on the Collateral or the priority of such liens (including the resignation or notice of resignation of any applicable securities intermediary), or (d) the rights of or benefits available to a party under the Loan Documents.

"*Maturity Date*" means, with respect to a Loan, the pre-determined specified maturity date in the relevant Loan Term Sheet, if any, upon which such Loan will terminate and the Loan becomes due in full (as may be extended as agreed to by the parties), unless such Loan is terminated prior to such maturity date pursuant to Section II(d).

"*Minimum Transfer Amount*" means $100,000.

"*New Currency*" means, any incremental tokens generated as a result of any Hard Forks in the relevant Digital Currency protocol with respect to the Digital Currency; *provided* that, when applicable, the determination of whether a Hard Fork has occurred may be made by Calculation Agent by reference to the CME CF Cryptocurrency Indices Hard Fork Policy (Version 4) as published by the CME Group in May 2020, as amended from time to time.

"*Obligations*" means all debts, liabilities, obligations, covenants, indemnifications, interest and fees, including the Total Accrued Loaned Amount, created hereunder or under the other Loan Documents, whether arising before or after the commencement of any bankruptcy or insolvency proceeding.

"*party*" and "*parties*" have the meaning set forth in the introductory paragraph of this Agreement.

"*Prepayment Option*" means the option of Borrower to redeliver or repay to Lender prior to the applicable Maturity Date the Digital Currency, Dollars or Alternative Currency, as applicable, subject to the terms of this Agreement.

"*Proceeds*" has the meaning assigned to such term in the UCC.

"*Recall Delivery Time*" has the meaning set forth in Section II(c).

"*Redelivery Day*" has the meaning set forth in <u>Section II(c)</u>.

"*Release Margin Percentage*" has the meaning set forth in the Loan Term Sheet.

"*Required Collateral Amount*" means, with respect to any Loan as of any date, the amount obtained by multiplying the Initial Margin Percentage by the Accrued Borrowed Amount for such Loan as of such date.

"*Returned Collateral*" has the meaning set forth in <u>Section V(d)</u>.

"*Sanctions*" has the meaning set forth in <u>Section VII(a)</u>.

"*Securities Act*" means the United States Securities Act of 1933, as amended.

"*Stablecoin*" means any cryptocurrency pegged to the US Dollar, including, but not limited to the Gemini Dollar (GUSD), USD Coin (USDC) and Paxos Standard (PAX).

"*Taxes*" means all present or future taxes, levies, imposts, duties, deductions, withholdings, assessments, fees, including stamp taxes, registration fees, documentation or other excise or property taxes, or similar taxes, or other charges imposed by any Governmental Authority, including any interest, additions to Tax or penalties applicable thereto.

"*Term*" has the meaning set forth in <u>Section XXIII</u>.

"*Total Accrued Loaned Amount*" means, at any time, the Total Loaned Amount, together with accrued and unpaid interest thereon and accrued and unpaid fees thereon, to such time.

"*Total Loaned Amount*" means, at any time, the aggregate outstanding Borrowed Amount for all Loans.

"*Transfer*" means the delivery of Digital Currency, Dollars or Alternative Currency by Lender to the Borrower or the redelivery of Digital Currency, Dollars or Alternative Currency by Borrower to Lender hereunder.  With respect to Digital Currency, a Transfer shall be deemed to occur once such Digital Currency is transferred to the applicable Digital Currency Address by (i) recording such transaction in a block and five (5) consecutive subsequent blocks referring back to such block (meaning, for the avoidance of doubt, six (6) blocks in total) and has been added to the applicable blockchain; or (ii) the transaction has met a different protocol for a specific Digital Currency agreed to by the parties in writing.  With respect to Dollars or an Alternative Currency, it shall mean when such funds have been deposited in the applicable bank account.

"*UCC*" shall mean the Uniform Commercial Code as from time to time in effect in the State of Delaware.

"*U.S. Person*" means any Person that is a "*United States Person*" as defined in Section 7701(a)(30) of the Code.

"*Value*" means, with respect to (i) Dollars, the actual Dollar amount thereof and (ii) Digital Currency, Alternative Currency or Stablecoins, the value of such Digital Currency, Alternative

Currency or Stablecoin, as applicable, as determined by Calculation Agent in good faith and in its sole discretion by reference to the Liquidity Exchange, if applicable, or to other generally recognized pricing sources for the Digital Currency, Alternative Currency or Stablecoin, as applicable.

II.    <u>**General Operation**</u>.

(a)    <u>Loans of Digital Currency, Dollars or Alternative Currency</u>.  Subject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request Lender to Loan to Borrower a specified amount of Digital Currency, Dollars or Alternative Currency, and Lender may, in its sole and absolute discretion, extend, or decline to extend, such Loan in accordance with the terms of this Agreement.

(b)    <u>Loan Procedure</u>.  During the Term of this Agreement, on a Business Day an Authorized Agent of Borrower may request from Lender (by email directed to the email address indicated in <u>Section XVI</u>, or by any other means acceptable to Lender) a Loan of a specific amount of Digital Currency, Dollars or Alternative Currency in accordance with the terms of this <u>Section II(b)</u> (a "<u>Lending Request</u>").

Each Lending Request submitted by Borrower shall provide relevant information for the Loan request, which may include the following information:

(i)    The type of Loan (either Digital Currency, Dollars or an Alternative Currency) requested, and, if Digital Currency or an Alternative Currency, specifying the Digital Currency or Alternative Currency, as applicable;

(ii)    the amount of Digital Currency, Dollars or Alternative Currency requested;

(iii)    whether the Loan shall have a Callable Option and/or Prepayment Option;

(iv)    the proposed Borrow Rate for such Loan;

(v)    the Maturity Date;

(vi)    the type or types of Collateral and amounts thereof, as applicable, proposed to be pledged; and

(vii)    the proposed Initial Margin Percentage, Margin Requirement Percentage and Release Margin Percentage, as applicable.

If Lender agrees to make a Loan on the terms set forth in the Lending Request or as otherwise agreed in writing between Borrower and Lender, the Lender and Borrower shall execute a term sheet using the form of Loan Term Sheet attached hereto as <u>Exhibit B</u> (with respect to a particular Loan, such term sheet, the "<u>Loan Term Sheet</u>").  Following delivery of such Loan Term Sheet, if Borrower does not execute the applicable Loan Term Sheet by 5:00 p.m. New York City time on the day on which the relevant Loan Term Sheet was delivered, Borrower shall be deemed

to have rejected the terms in the Loan Term Sheet. Promptly after execution of the applicable Loan Term Sheet, the Lender shall commence transmission to the Borrower's Digital Currency Address or bank account, as applicable, the amount of Digital Currency, Dollars or Alternative Currency, as applicable, set forth in the Loan Term Sheet (such amount of Digital Currency, Dollars or Alternative Currency, the "Borrowed Amount") subject to the terms and conditions set forth herein.

Until the parties have agreed (or have been deemed to agree) to the terms in a Loan Term Sheet, neither party shall have any obligations to the other with respect to such particular Loan. In the event of a conflict of terms between this Agreement and a Loan Term Sheet, the terms in the Loan Term Sheet shall govern.

If Borrower and Lender agree in writing, with respect to any Borrowed Amount in Dollars, Borrower may satisfy any repayment or redelivery obligations via delivery of the agreed type and quantity of Stablecoins in lieu of Dollars.

(c)    Callable Option/Prepayment Option.

(i)    Applicable solely to Loans with a Callable Option, Lender may at any time from 9:00 a.m. until 5:00 p.m. New York City time on a Business Day (the "Recall Request Time") exercise the Callable Option and recall all or any portion of the Borrowed Amount (the "Recall Amount"). Borrower will then deliver the Recall Amount (i) with respect to any Borrowed Amount that is a Digital Currency, within twenty-four (24) hours from the Recall Request Time and (ii) with respect to any Borrowed Amount that is Dollars or an Alternative Currency, within one (1) Business Day from the Recall Request Time (such time in (i) or (ii), the "Recall Delivery Time") .

(ii)    Applicable solely to Loans with a Prepayment Option, Borrower may at any time from 9:00 a.m. until 5:00 p.m. New York City time on a Business Day (the "Redelivery Day") exercise the Prepayment Option and deliver or prepay all or any portion of the Borrowed Amount (the "Prepaid Amount"). Upon receipt of such Prepaid Amount, Lender will promptly notify Borrower of any interest that has accrued on the Prepaid Amount through such Redelivery Day, and Borrower shall have up to five (5) Business Days to pay such accrued amounts after the Redelivery Day (which due date will be deemed to be an "Invoice Due Date" for purposes of Section III(c)).

(d)    Termination of a Loan. A Loan will terminate upon the earliest of:

(i)    The Maturity Date applicable to such Loan;

(ii)    With respect to a Loan with a Prepayment Option or Callable Option, upon redelivery or prepayment by Borrower of all Borrowed Amounts such that no such Borrowed Amount in respect thereof remains undelivered;

(iii)    At the end of the Term as set forth in Section XXIII; and

(iv)    Upon the exercise of remedies pursuant to Section XI.

8

(e)    <u>Redelivery of Borrowed Amounts</u>.  In connection with any termination of a Loan pursuant to the terms of this Agreement, Borrower shall effect redelivery or repayment of the relevant Borrowed Amount at or before 5:00 p.m. New York City time on the applicable Business Day when due (i.e., the Maturity Date, the Business Day on which the Recall Delivery Time falls, the Redelivery Day, or any other date of termination).

(f)    <u>Return of Collateral</u>.  In connection with any termination of a Loan pursuant to the terms of this Agreement, Lender shall either return the Collateral or request that the Custodian return the Collateral, as applicable, at or before 5:00 p.m. New York City time on the applicable Business Day when due (i.e. the Maturity Date, the Business Day on which the Recall Delivery Time falls, the Redelivery Day, or any other date of termination).

(g)    <u>Acts by Governmental Authorities and Changes in Applicable Laws</u>.  If a Change in Law occurs, (i) Lender may recall all or any portion of the Borrowed Amount and Borrower shall redeliver or repay such Borrowed Amount (including any accrued but unpaid interest and fees with respect to such amount) within ten (10) Business Days following notice of such recall by Lender, and (ii) Borrower may notify Lender and redeliver or repay the Borrowed Amount (including any accrued but unpaid interest and fees with respect to such amount) and Lender shall return the Collateral on the Business Day following notice of such repayment by Borrower; *provided that*, in each case, if it is not legally permissible and/or possible after such Change in Law to redeliver or repay the Borrowed Amount in the applicable Digital Currency or return the Collateral, the Borrower shall repay, or the Lender shall return, as the case may be, an equivalent amount in Dollars, as determined by Calculation Agent in good faith.

## III.    <u>Interest</u>.

(a)    <u>Calculation</u>.  When a Loan is executed, the Borrowed Amount shall accrue interest at a rate per annum equal to the Borrow Rate, and such interest will be payable in accordance with subsection (c) below.  The total amount of interest due on the dates set forth in subsection (c) shall be computed by the Lender, calculated daily on the basis of actual days elapsed and a year of 365 days.  The Borrow Rate is subject to change only if agreed to in writing (email sufficient) by Borrower and Lender.

Interest shall be computed and payable in the Digital Currency, Dollars or Alternative Currency applicable to the Borrowed Amount for such Loan; *provided* that, Borrower and Lender may agree in writing (email sufficient) that interest may be paid in another Digital Currency, Dollars or Alternative Currency, or in lieu of Dollars, Stablecoin.

Lender shall promptly provide Borrower with the calculation of interest upon request. Except as Borrower and Lender may otherwise agree, interest shall accrue from and include the date on which the relevant Digital Currency, Dollars or Alternative Currency is Transferred to Borrower to, but excluding, the date on which such Digital Currency, Dollars or Alternative Currency is redelivered or repaid and Transferred to Lender.

(b)    <u>Default Rate; Breakage Costs</u>.  If any amount is not paid or delivered by Borrower when due, whether at the Maturity Date, the Recall Delivery Time, or otherwise, such amount shall thereafter bear interest at the rate per annum equal to the Borrow Rate plus two

percent (2%) (the "<u>Default Rate</u>") from the date that such amount was due to but excluding the date that such amount is paid or delivered in full and be payable on demand (and in any event on the date such amount shall be paid or delivered in full); *provided, however* in no event shall the Default Rate be higher than the highest rate of interest permitted to be charged under Applicable Law.

(c)    <u>Payment of Interest</u>.    Interest shall be payable monthly in arrears.    An invoice for such interest shall be sent out on the first (1st) Business Day of each month prior to the Maturity Date and shall include the amount of interest incurred from the previous month. Borrower shall remit payment in full satisfaction of such invoice within five (5) Business Days after such invoice is sent to Borrower by Lender (such due date, the "<u>Invoice Due Date</u>").

(d)    <u>Application of Payments</u>.    Borrower shall, at the time of making each payment under this Agreement, specify to Lender the Loan to which such payment is to be applied. If an Event of Default has occurred and is continuing and the Borrower is the defaulting party, Lender may apply the payment in such manner as it may determine to be appropriate in its sole, reasonable discretion.

(e)    <u>Non-Business Days</u>.    If the due date of any payment or delivery or the Maturity Date of any Loan under this Agreement would otherwise fall on a day that is not a Business Day, such date shall be extended to the next succeeding Business Day, and the Borrow Rate shall accrue for the period of such extension.

IV.    <u>Taxes</u>.

(a)    <u>Payments Free of Taxes</u>.    Any and all payments by or on account of any obligation of Borrower hereunder shall be made free and clear of and without reduction or withholding for any Taxes, except as required by Applicable Law; *provided* that if Borrower shall be required by Applicable Law to deduct any Indemnified Taxes from such payments, then (i) the sum payable shall be increased as necessary so that after making all required deductions for Indemnified Taxes (including deductions for Indemnified Taxes applicable to additional sums payable under this Section) the Lender shall receive an amount equal to the sum it would have received had no such deductions for Indemnified Taxes been made, (ii) Borrower shall make such deductions, and (iii) Borrower shall timely pay the full amount deducted to the relevant Governmental Authority in accordance with Applicable Law.

(b)    <u>Payment of Taxes by Borrower</u>.    Without limiting the provisions of subsection (a) above, Borrower shall timely pay any stamp, court or documentary, intangible, recording, filing or similar Taxes that arise from any payment made under, from the execution of or otherwise with respect to, any Loan Document, except any such Taxes that are imposed with respect to an assignment, if required and in accordance with Applicable Law.

(c)    <u>Indemnification by Borrower</u>.    Borrower shall indemnify the Lender for the full amount of any Indemnified Taxes (including Indemnified Taxes imposed or asserted on or attributable to amounts payable under this <u>Section IV(c)</u>) attributable to Borrower under this Agreement and paid by the Lender, whether or not such Indemnified Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority against Lender. A certificate

delivered to Borrower by Lender as to the amount of such payment or liability actually paid by Lender to the relevant Governmental Authority shall be conclusive and binding absent manifest error.

(d)    <u>Indemnification by Lender</u>.    Lender shall indemnify Borrower, within 10 days after demand therefor, for (i) any Taxes attributable to such Lender's failure to comply with the provisions of Section XIX relating to the maintenance of a Register and (ii) any Excluded Taxes attributable to Lender, in each case, that are payable or paid by Borrower in connection with any Loan Document, and any reasonable expenses arising therefrom or with respect thereto, whether or not such Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority.    A certificate as to the amount of such payment or liability delivered to Borrower by Lender shall be conclusive absent manifest error.

(e)    <u>Status of Lender</u>.

(i)    If Lender is entitled to an exemption from or reduction of withholding Tax with respect to payments made under any Loan Document, it shall deliver to Borrower, at the time or times reasonably requested by Borrower, such properly completed and executed documentation reasonably requested by Borrower as will permit such payments to be made without withholding or at a reduced rate of withholding.    In addition, Lender, if reasonably requested by Borrower, shall deliver such other documentation prescribed by Applicable Law or reasonably requested by Borrower as will enable Borrower to determine whether or not Lender is subject to backup withholding or information reporting requirements.

(ii)    Without limiting the generality of the foregoing,

(1)    if Lender is a U.S. Person, it shall deliver to Borrower on or about the Effective Date (or on the date of any assignment pursuant to which it becomes the Lender) (and from time to time thereafter upon the reasonable request of Borrower), executed copies of IRS Form W-9 certifying that such Lender is exempt from U.S. federal backup withholding tax;

(2)    to the extent such Lender is not the beneficial owner, executed copies of IRS Form W-8IMY, accompanied by IRS Form W-8ECI, IRS Form W-8BEN, IRS Form W-8BEN-E, a U.S. Tax Compliance Certificate in form and substance acceptable to Borrower, IRS Form W-9, and/or other certification documents from each beneficial owner, as applicable;

(3)    if Lender is not a U.S. Person it shall, to the extent it is legally entitled to do so, deliver to Borrower on or about the Effective Date (or on the date of any assignment pursuant to which it becomes the Lender) (and from time to time thereafter upon the reasonable request of Borrower), executed copies of any form prescribed by Applicable Law (including, as applicable, an IRS Form W-8BEN, Form W-8ECI, Form W-8IMY, or in

the case of such Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Code appropriate compliance certificates reasonably acceptable to Borrower) as a basis for claiming exemption from or a reduction in U.S. federal withholding Tax, duly completed, together with such supplementary documentation as may be prescribed by Applicable Law to permit Borrower to determine the withholding or deduction required to be made; and

(4)    if a payment made to Lender under any Loan Document would be subject to U.S. federal withholding Tax imposed by FATCA if Lender were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Code, as applicable), Lender shall deliver to Borrower at the time or times prescribed by law and at such time or times reasonably requested by Borrower such documentation prescribed by Applicable Law (including as prescribed by Section 1471(b)(3)(C)(i) of the Code) and such additional documentation reasonably requested by Borrower as may be necessary for Borrower to comply with its obligations under FATCA and to determine that Lender has complied with Lender's obligations under FATCA or to determine the amount, if any, to deduct and withhold from such payment. Solely for purposes of this clause (4), "FATCA" shall include any amendments made to FATCA after the date of this Agreement.

Lender agrees that if any form or certification it previously delivered expires or becomes obsolete or inaccurate in any respect, it shall update such form or certification or promptly notify Borrower in writing of its legal inability to do so.

(f)    Treatment of Certain Refunds. If any party determines, in its sole discretion exercised in good faith, that it has received a refund of any Taxes as to which it has been indemnified pursuant to this Section (including by the payment of additional amounts pursuant to this Section), it shall pay to the indemnifying party an amount equal to such refund (but only to the extent of indemnity payments made under this Section with respect to the Taxes giving rise to such refund), net of all out-of-pocket expenses (including Taxes) of such indemnified party and without interest (other than any interest paid by the relevant Governmental Authority with respect to such refund). Such indemnifying party, upon the request of such indemnified party, shall repay to such indemnified party the amount paid over pursuant to this paragraph (f) (plus any penalties, interest or other charges imposed by the relevant Governmental Authority) in the event that such indemnified party is required to repay such refund to such Governmental Authority. Notwithstanding anything to the contrary in this paragraph (f), in no event will the indemnified party be required to pay any amount to an indemnifying party pursuant to this paragraph (f) the payment of which would place the indemnified party in a less favorable net after-Tax position than the indemnified party would have been in if the Tax subject to indemnification and giving rise to such refund had not been deducted, withheld or otherwise imposed and the indemnification payments or additional amounts with respect to such Tax had never been paid. This paragraph shall not be construed to require any indemnified party to make available its Tax returns (or any other information relating to its Taxes that it deems confidential) to the indemnifying party or any other Person.

12

(g)    <u>Tax Reporting</u>.  Borrower and Lender shall file all returns and tax reports, if and/or as required under Applicable Law.

**V.    <u>Collateral; Margin</u>.**

(a)    <u>Collateral</u>.

(i)    Borrower shall provide as collateral an amount of Digital Currency, Dollars or Alternative Currency to be determined (the "<u>Collateral</u>", which shall include any Additional Collateral and excluding any Returned Collateral as defined below) in accordance with the terms of this <u>Section V</u> and any other such terms as agreed upon by the Borrower and Lender and memorialized in a Loan Term Sheet.  Initially, the amount of Collateral required for each Loan will be greater than or equal to the product of (i) the Initial Margin Percentage as agreed upon in the Loan Term Sheet and (ii) the Borrowed Amount (such level, the "<u>Initial Margin Level</u>").  The Value of Collateral shall be calculated in Dollars by the Calculation Agent acting in good faith.

(ii)    The Collateral transferred by Borrower to Lender shall be security for all of Borrower's Obligations hereunder and under the other Loan Documents. Borrower hereby pledges, collaterally assigns to, and grants Lender a continuing first priority security interest in, and a lien upon, and right of setoff against, all of Borrower's right, title and interest in the Collateral and any Proceeds of any of the Collateral, whether now owned by or owing to, or hereafter acquired by or arising in favor of, Borrower, or in which Borrower has, or at any time in the future may acquire, any right, title, or interest, which shall attach upon the Transfer of the Borrowed Amount by Lender to Borrower.

(iii)    The pledge, assignment and security interest created by this paragraph shall constitute a continuing agreement and shall continue in effect until the Obligations (other than contingent indemnification obligations for which no claim has been asserted or accrued) have been paid and satisfied in full, at which time the Collateral shall automatically be released from the liens created hereunder and shall revert to the Borrower. Upon any such payment and satisfaction, the Lender will, at its own expense and without any representations, warranties or recourse of any kind whatsoever, execute and deliver to Borrower such documents as Borrower shall reasonably request to evidence such release.

(iv)    In addition to the rights and remedies given to Lender hereunder and the other Loan Documents, Lender shall have all the rights and remedies of a secured party under Applicable Law (including the UCC).  Lender shall be free to pledge, rehypothecate, assign, use, commingle or otherwise dispose of or use the Collateral, unless otherwise specified on the applicable Loan Term Sheet.

(b)    <u>Margin Calls</u>.

(i)    If, at any time, the Value of the Collateral subject to all Loans is less than the aggregate Margin Call Threshold Amount, Lender shall have the right, subject to the Minimum Transfer Amount, to require Borrower to (x) pledge and deliver Dollars or Stablecoins, or additional Digital Currencies ("<u>Additional Collateral</u>") or (y) at Borrower's option, repay a sufficient Borrowed Amount so that the Value of the Collateral subject to

13

all Loans (including the Additional Collateral) will thereupon equal or exceed the aggregate Required Collateral Amount. If Borrower is required to pledge and deliver Additional Collateral, Borrower shall provide Lender with calculations related thereto.

(ii)    If Lender requires Borrower to contribute Additional Collateral, it shall send notification (the "Margin Notification") to the Borrower in accordance with Section XVI that sets forth the amount of Additional Collateral required.  Borrower shall deliver the Additional Collateral to Lender in accordance with subsection (c) below (i) with respect to Additional Collateral that is a Digital Currency, within twenty-four (24) hours of receipt of the Margin Notification or (ii) with respect to Additional Collateral that is in Dollars or an Alternative Currency, within one (1) Business Day of receipt of the Margin Notification, or as otherwise agreed by the parties. Notwithstanding the foregoing, Borrower shall have twelve (12) hours after the receipt of Margin Notification to provide its own calculations to Lender to support a determination that the Value of the Collateral subject to all Loans is not less than the aggregate Margin Call Threshold Amount.  If (x) Lender agrees in writing with Borrower's calculations pursuant to the prior sentence, the relevant Margin Notification shall be deemed withdrawn and (y) if Lender disagrees in writing with Borrower's calculations pursuant to the prior sentence, such Margin Notification shall remain in effect.

(c)    Delivery of Additional Collateral.  Delivery of Additional Collateral shall be made (i) in the case of Dollars or Alternative Currency, by bank wire to the account specified in the Loan Term Sheet and (ii) in the case of Stablecoins or Digital Currency, by Transfer to the Digital Currency Address associated with the Digital Currency Collateral Account, as specified in the Loan Term Sheet or as otherwise specified by Lender.

(d)    Return of Collateral.

(i)    If, at any time, the Value of the Collateral subject to all Loans exceeds the aggregate Margin Release Threshold Amount, Borrower shall have the right, subject to the Minimum Transfer Amount, to require that Lender return an amount of Collateral, so that the Value of the Collateral subject to all Loans (after deduction of any such Collateral so returned, such Collateral, the "Returned Collateral") will thereupon not exceed the aggregate Required Collateral Amount.

(ii)    If Borrower requires Lender to return any Returned Collateral, it shall send an email notification (the "Return Notification") to the Lender at the email address indicated in Section XVI that sets forth the amount of Returned Collateral. Lender shall return the Returned Collateral to Borrower in accordance with subsection (e) below (i) with respect to Returned Collateral that is a Digital Currency, within twenty-four hours of receipt of the Return Notification or (ii) with respect to Returned Collateral that is in Dollars or an Alternative Currency, within one (1) Business Day of receipt of the Return Notification, or  as otherwise agreed by the parties.

(e)    Delivery of Returned Collateral.  Delivery of the Returned Collateral shall be made (i) in the case of Dollars or Alternative Currency, by bank wire to the account specified

DocuSign Envelope ID: 250BF5B9-162B-4A6D-BACB-0B99B5399711

in the Return Notification and (ii) in the case of Stablecoins or Digital Currency, by Transfer to the Digital Currency Address specified in the Return Notification.

(f)     Return of Collateral.    After all the Obligations (other than contingent indemnification obligations for which no claim has been asserted or accrued) have been paid and satisfied in full, Lender shall return the Collateral to Borrower (i) in the case of Dollars or Alternative Currency, by bank wire to the account specified by Borrower and (ii) in the case of Stablecoins or Digital Currency, by Transfer to the Digital Currency Address specified by Borrower.

## VI.    New Currency.

(a)     Notification.   Lender shall be required to provide notification to Borrower of an upcoming Hard Fork in the Digital Currency of any Borrowed Amounts.

(b)     No Immediate Termination of Loans Due to Hard Fork.   In the event of a Hard Fork, the terms set forth on a Loan Term Sheet for any outstanding Loans will not be affected and the Loans will not be immediately terminated as a result of the Hard Fork.

(c)     Obligation to Deliver Eligible New Currency.   On the Maturity Date or other date of termination of a Loan pursuant to the terms of this Agreement, notwithstanding anything to the contrary in the Agreement, (i) Borrower will deliver to Lender any Eligible New Currency in respect of any Borrowed Amounts during the term of such Loan, and (ii) Lender will deliver to Borrower any Eligible New Currency in respect of any Collateral (subject to the obligation to return Collateral set forth in Section V) not yet returned to Borrower during the term of such Loan.  The amount of such Eligible New Currency will be the amount of such Eligible New Currency to which a holder of the applicable Digital Currency would be entitled in connection with such Hard Fork based on the Borrowed Amount or Collateral not yet returned, as applicable, in connection with such Hard Fork, as determined by Calculation Agent in good faith.

## VII.    Representations and Warranties.

(a)     Each party represents and warrants on the date hereof (which representation and warranties will be deemed repeated on the date of execution of each Loan Term Sheet) that:

(i)     It is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation and, if relevant to such laws, in good standing.

(ii)     It has the power to execute this Agreement, and to the extent required to be executed, each other Loan Document, to deliver this Agreement and each other Loan Document that is required to be delivered and to perform its Obligations hereunder and under each other Loan Document.

(iii)     The execution, delivery and performance of this Agreement and, if applicable, each other Loan Document does not contravene (1) its constituent documents,

(2) any Applicable Law, (3) any judgment, award, injunction or similar legal restriction binding on it or its property, or (4) any material agreement to which such party is a party.

(iv)    This Agreement and each other Loan Document have been duly and validly authorized, and, to the extent required to be executed, executed and delivered on behalf of each party and constitutes the legal, valid and binding obligations of such party enforceable against the party in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

(v)    No license, consent, authorization or approval or other action by, or notice to or filing or registration with, any Governmental Authority (including any foreign exchange approval), and no other third-party consent or approval, is necessary for the due execution, delivery and performance by such party of this Agreement and, if applicable, each other Loan Document.

(vi)    It has not relied on the other for any tax or accounting advice concerning this Agreement or any Loan Document and it has made its own determination as to the tax and accounting treatment of any Loan or any Digital Currency or funds received or to be received hereunder.

(vii)    It is a sophisticated party and fully familiar with the inherent risks involved in the transactions contemplated in this Agreement and each Loan Document, including, without limitation, risk of new financial regulatory requirements, potential loss of money and risks due to volatility of the price of the Borrowed Amount, and voluntarily takes full responsibility for any risk to that effect.

(viii)    Neither it, nor any of its subsidiaries or any director, officer, employee, agent, or affiliate of it or any of its subsidiaries is an individual or entity that is, or is owned or controlled by persons that are: (i) the subject of any sanctions administered or enforced by the U.S. Department of the Treasury's Office of Foreign Assets Control, the U.S. Department of State, the United Nations Security Council, the European Union, Her Majesty's Treasury, or other relevant sanctions authority (collectively, "Sanctions"), or (ii) located, organized or resident in a country or territory that is, or whose government is, the subject of Sanctions (including Crimea, Cuba, Iran, North Korea and Syria) (a "Sanctioned Country").

(ix)    It and its subsidiaries and their respective directors, officers and employees and, to its knowledge, its agents and their subsidiaries, are in compliance with all applicable Sanctions and with the Foreign Corrupt Practices Act of 1977, as amended, and the rules and regulations thereunder and any other applicable anti-corruption law.

(x)    No Event of Default has occurred and is continuing.

(xi)    It is not insolvent and is not subject to any bankruptcy or insolvency laws.

16

(b)    Borrower represents and warrants on the date hereof (which representation and warranties will be deemed repeated on the date of execution of each Loan Term Sheet) that:

(i)    It has the right to transfer Digital Currency, Dollars or Alternative Currency, in accordance with the terms and conditions hereof, free and clear of all liens and encumbrances other than those arising under this Agreement.

(ii)    At the time of transfer of any Collateral, it has the right to grant a first priority security interest therein and the right to transfer such Collateral in accordance with the terms and conditions hereof, free and clear of all liens and encumbrances other than those arising under this Agreement or the other Loan Documents.

(iii)    There are no liens or encumbrances on the Collateral except in favor of Lender pursuant to the Loan Documents.

## VIII.    **Agreements**.

(a)    Each party agrees that, so long as it has any Obligations outstanding under this Agreement or any other Loan Document to which it is a party:

(i)    It will not knowingly fail to comply in any material respect with all Applicable Laws and orders binding on it.

(ii)    It shall pay and discharge all Taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits, or upon any properties belonging to it, prior to the date on which the penalties attach thereto, and all lawful claims in respect of any Taxes imposed, assessed or levied that, if unpaid, could reasonably be expected to become a lien or encumbrance upon any properties of such party, *provided* that such party shall not be required to pay any such tax, assessment, charge, levy or claim with respect to which the failure to pay would not reasonably be expected to have a Material Adverse Effect on its abilities to repay the Loans and perform all other Obligations hereunder and under the other Loan Documents, and such party has set aside on its books adequate reserves in accordance with generally accepted accounting principles (or other applicable accounting rules).

(iii)    It will maintain in full force and effect all consents and approvals of, and registrations and filings with, any Governmental Authority or otherwise that are required to be obtained by it with respect to this Agreement or any Loan Document or which are necessary to the operation of its business.

(b)    Lender shall furnish to Borrower, as promptly as reasonably practicable after the end of each month, a statement in form and substance reasonably satisfactory to Borrower that describes the type and balance of Collateral as of the end of each month then ended.

(c)    If requested and required by Lender, in connection with a pledge of (or maintenance of an existing pledge of) Collateral consisting of Digital Currency, Dollars or Alternative Currency, Borrower shall enter into an Account Control Agreement (Digital Currency).

17

(d)    Borrower authorizes Lender at any time and from time to time to file, transmit, or communicate, as applicable, financing statements and amendments thereto that contain any information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance.

IX.    **Negative Agreements**. So long as any Obligations remain outstanding under this Agreement or any other Loan Document:

(a)    Borrower shall not create, incur, assume or suffer to exist any lien upon the Collateral, except for the liens created hereunder or under the other Loan Documents.

(b)    Borrower shall not request any Loan, and Borrower shall not use the proceeds of any Loan (i) in violation of any anti-corruption laws, (ii) for the purpose of funding, financing or facilitating any activities, business or transaction of or with any person subject to Sanctions, or in any Sanctioned Country or (iii) in violation of any applicable Sanctions.

X.    **Conditions Precedent**.  This Agreement and the Obligations set forth hereunder shall not become effective until the Business Day on which the following conditions are satisfied in a manner satisfactory to, or waived in writing by, the Lender (such date, the "Effective Date"):

(a)    The Lender's receipt of executed counterparts of this Agreement and each other applicable Loan Document, dated prior to, or as of the Effective Date or a date otherwise agreed by the parties;

(b)    The Lender's receipt of such documentation and other information reasonably requested by the Lender in connection with regulatory requirements under the applicable "know-your-customer" and anti-money-laundering rules and regulations, including, without limitation, the PATRIOT Act; and

(c)    The Lender shall have received all such other information with respect to the Borrower and its business as it shall have reasonably requested prior to the Effective Date.

XI.    **Default.**  If any of the following events shall occur (each such occurrence, an "Event of Default"):

(a)    the failure of the Borrower to (i) repay or return any Borrowed Amount when and as the same shall become due and payable, whether at the due date thereof, a date fixed for prepayment thereof, upon acceleration or otherwise or (ii) pay any interest, fee or any other payment required under the Loan Documents when and as the same shall become due and payable, and such failure shall continue unremedied for a period of five (5) Business Days;

(b)    the failure of the Lender to return any Collateral when and as the same shall become due to be returned under Section II(f), whether at the due date thereof, upon acceleration or otherwise;

(c)    the failure of the Borrower to (i) Transfer any required amount of Collateral or Additional Collateral by the time and/or in the manner required under Section V(b) or Section V(c), or (ii) make any payment or reimbursement specified in Section VI(c) in the event of a Hard

18

Fork, in each such case when due and/or required to do so by the time required under this Agreement and such failure shall continue unremedied for the period of one (1) Business Day;

(d)    the failure of the Lender to return any required amount of Collateral by the time and/or in the manner required under Section V(d), and such failure shall continue unremedied for a period of one (1) Business Day;

(e)    any representation or warranty made by a party in any of the Loan Documents or in or pursuant to any certificate, document or other information provided pursuant to the terms hereof or thereof proves to be untrue in any material respect as of the date of making or deemed making (or repeating) thereof and such failure shall continue unremedied for the period of five (5) business days;

(f)    the failure of Borrower to perform or observe any term, condition, covenant, provision, or agreement (A) contained in Section VIII or IX herein or (B) under this Agreement or any of the Loan Documents (other than those described in Clause (A) or subsections (a), (b) and (c) above) and such default remains outstanding for five (5) Business Day following receipt of written notice thereof from the Lender;

(g)    any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings shall be instituted by or against a party, and (solely in the case of proceedings instituted against such party) shall not be dismissed within forty-five (45) days or the applicable statutory time limit of their initiation;

(h)    a party notifies the other party of its inability to or its intention not to perform any of its Obligations hereunder or otherwise disaffirms, rejects or repudiates any of its Obligations hereunder;

(i)    if one or more judgments, orders, or awards for the payment of money, or the issuance of any requirement to pay by a Governmental Authority, which would reasonably be expected to have a Material Adverse Effect, is entered or filed against a party or with respect to any of its assets, and either (i) there is a period of forty-five (45) consecutive days at any time after the entry of any such judgment, order, or award during which (A) the same is not discharged, satisfied, vacated, or bonded pending appeal, or (B) a stay of enforcement thereof is not in effect, or (ii) enforcement proceedings are commenced upon such judgment, order, or award;

then (1) if the defaulting party is the Borrower, the Lender may, at its option (a) declare the Total Accrued Loaned Amount to be immediately due and payable, whereupon such amounts shall become and be forthwith due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Borrower; *provided*, that upon any Event of Default described in Section XI(f) above, the Total Accrued Loaned Amount shall automatically become and be immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Borrower and (b) terminate this Agreement, the other Loan Documents and any other agreement or transaction between Borrower and Lender or any affiliate of Lender upon written notice to Borrower; or (2) if the defaulting party is the Lender, the Borrower may, at its option, terminate this Agreement, the other Loan Documents and

DocuSign Envelope ID: 250BF5B9-162B-4A6D-BACB-0B9085390741

any other agreement or transaction between Borrower and Lender and set off the Value of any unreturned Collateral against any amounts owed by Borrower to Lender.

Upon the occurrence of an Event of Default of the type set forth in <u>Section XI(f)</u> or an Event of Default in respect of which the Total Accrued Loaned Amount has been declared to be forthwith due and payable, the non-defaulting party may exercise all rights and remedies available to such party hereunder or under any other Loan Document, under Applicable Law (including the UCC), or in equity; provided, however, .notwithstanding anything to the contrary in any Loan Document, upon the occurrence of an Event of Default, Lender's exercise of any rights or remedies with respect to the Collateral shall be subject to the following conditions: (i) Lender shall have delivered prior written notice to the Calculation Agent of its intention to foreclose on, liquidate or exercise any other rights or remedies with respect to the Collateral; (ii) the Calculation Agent shall have delivered written notice to the Lender and the Borrower setting forth (x) the Calculation Agent's determination of the amount of Obligations then owing to Lender and (y) the Calculation Agent's identification of the portion of the Collateral having a Value equal to such amount of Obligations then owing to Lender (as determined the Calculation Agent), such notice to be delivered to Lender and Borrower promptly, but in any event within one (1) Business Day following, the Calculation Agent's receipt of a notice from Lender pursuant to clause (i) above; and (iii) Lender shall exercise such rights or remedies with respect to the Collateral only by instructing the Custodian to transfer, liquidate or otherwise dispose of the portion of the Collateral identified by the Calculation Agent pursuant to clause (ii)(y) above.

**XII.    <u>Rights and Remedies Cumulative</u>.**  No delay or omission by Lender in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder.  All rights of each party stated herein are cumulative and in addition to all other rights provided by law, in equity.

**XIII.    <u>Costs</u>.**  The defaulting party shall promptly pay to the non-defaulting party, upon demand, all costs, expenses, commissions or other fees, including without limitation, attorneys' fees and court costs, incurred by the non-defaulting party in connection with the enforcement of its rights hereunder and the other Loan Documents after an Event of Default.

**XIV.    <u>Passwords and Security</u>.**  Each party is responsible for maintaining adequate security and control of any and all passwords, private keys, and any other codes that it uses to Transfer or receive Digital Currencies hereunder.  Each party will be solely responsible for the private keys that it uses to make the Transfers and maintaining secure back-ups.  Each party will promptly notify the other party of any security breach of its accounts, systems or networks as soon as possible.  Each party will reasonably cooperate with the other party in the investigation of any suspected unauthorized Transfers or attempted Transfers using a party's account credentials or private keys, and any security breach of a party's accounts, systems, or networks, and provide the other party with the results of any third-party forensic investigation that it may undertake.  Each party will be responsible for any unauthorized Transfers made utilizing its passwords, private keys, and any other codes it uses to make or receive Transfers, except to the extent caused by the other party's gross negligence or willful misconduct.

**XV.    <u>Governing Law; Dispute Resolution</u>.**  This Agreement is governed by, and shall be construed and enforced under, the laws of the State of Delaware applicable to contracts made

and to be performed wholly within such State, without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New Castle, State of Delaware by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

**XVI.** **Notices.** Except for Margin Notifications or as otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be sent by electronic mail (at such email addresses set forth below or as the parties may designate in accordance herewith), by Bloomberg or an internet chatroom, or otherwise posting to an Internet site (as the parties may designate in accordance herewith) or sent by express or certified mail (postage prepaid, return receipt requested), overnight courier or personally delivered to the respective address set forth below:

> Borrower:
> BlockFi International Ltd.
> Walkers Corporate (Bermuda) Limited
> Park Place, 3rd Floor
> 55 Par La Ville Road
> Hamilton HM 11
> Bermuda
> Attn: Zac Prince
> Email: institutions@blockfi.com

> Lender:
> Vrai Nom Investment Limited
> RM4, 16/F, HO KING COMM CTR, 2-16 FAYUEN ST, MONGKOK
> KOWLOON Hong Kong
> Attn: Michael Zhang
> Email: matrixvrainom@gmail.com
> Tel: +85267677055

Either party may change its address or other notice information by giving the other party written notice of its new address or other notice information as herein provided.

Margin Notifications may be provided by any of (i) telephone, (ii) written electronic communication, such as electronic mail (at such email addresses set forth above or as the parties may designate in accordance herewith), Bloomberg or an internet chatroom, or otherwise posting to an internet site (as the parties may designate in accordance herewith) or (iii) express or certified mail (postage prepaid, return receipt requested), overnight courier or personally delivered to the address set forth above. If a Margin Notification is provided via telephone, written confirmation will be provided pursuant to (ii) or (iii) above.

Notices and other communications sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received. Notices and other communications sent to an e-mail address shall be deemed received when sent absent receipt of a failure to deliver notice within 30 minutes of such notice or communication being sent (it being understood that an "out of office" reply does not constitute a failure to deliver notice for this purpose). Notices or communications posted to Bloomberg, an internet chatroom or an internet site shall be deemed received upon the posting thereof.

      **XVII.**   <u>**Modifications**</u>.  All modifications or amendments to this Agreement and the other Loan Documents shall be effective only when reduced to writing and signed by both parties hereto or thereto.

      **XVIII.** <u>**Entire Agreement**</u>.  This Agreement and each exhibit referenced herein constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

      **XIX.**   <u>**Successors and Assigns**</u>.  This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; *provided*, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party.  No person (other than the parties) shall have any right, benefit, priority or interest under, or because of the existence of this Agreement.  The Lender, acting solely for this purpose as an agent of the Borrower, shall maintain a copy of each assignment and assumption delivered to it and a register for the recordation of the names and addresses of the Lenders, and principal amounts (and stated interest) of the Loans owing to, each Lender pursuant to the terms hereof from time to time (the "<u>Register</u>").  The entries in the Register shall be conclusive absent manifest error, and the Borrower and the Lenders shall treat each Person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement.  The Register shall be available for inspection by the Borrower and any Lender, at any reasonable time and from time to time upon reasonable prior notice.

      **XX.**   <u>**Severability of Provisions**</u>.  Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

      **XXI.**   <u>**Counterpart Execution**</u>.  This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission such as DocuSign shall be equally as effective as delivery of an original executed counterpart of this Agreement.

      **XXII.**  <u>**Relationship of Parties**</u>.  Nothing contained in this Agreement shall be deemed or construed by the parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

**XXIII. <u>Term and Termination</u>.**  The term of this Agreement shall commence on the Effective Date for a period of one year and shall automatically renew for successive one-year terms annually, unless either party provides written notice (email sufficient) of a desire to terminate the contract no less than ten (10) days prior to the end of such one-year period (the "<u>Term</u>").  The foregoing notwithstanding, this Agreement may be terminated (i) as set forth in <u>Section XI</u> or (ii) upon 30 days' written notice (email sufficient) by either party to the other.  Notwithstanding the foregoing, if there are any Loans outstanding at the time either party sends a notice of termination pursuant to this <u>Section XXIII</u> (other than a termination pursuant to <u>Section XI</u>), such termination of this Agreement will not be effective until all Loans are terminated on the relevant Maturity Date or pursuant to <u>Section II(d)</u>.

**XXIV. <u>Miscellaneous</u>.**

(a)    If an error is made hereunder in connection with a payment under any Loan Document, and such payment is an overpayment or a payment not anticipated thereunder, the party receiving the payment in error shall refund the mistaken amount to the paying party as promptly as is commercially practicable; *provided* that the paying party may, in its sole discretion and upon written notice of the amount and basis for such offset, elect to set-off such amounts against future payments hereunder.

(b)    Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders. The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement. The parties acknowledge and agree that this Agreement and the other Loan Documents are the result of negotiation between the parties which are represented by sophisticated counsel and shall be construed as though all parties participated equally in the drafting thereof.  Therefore, none of the provisions of this Agreement or any other Loan Document will be construed against the drafter hereof or thereof.

**XXV. <u>Remedy Sales</u>.**  At any time Lender sells Collateral as part of the exercise of remedies pursuant to <u>Section XI</u>, it shall simultaneously (or as promptly as practicable and in any event within 24 hours) provide Borrower with notice of any sales of Collateral in connection therewith, together with an appropriate trade confirmation or other evidence that shows in reasonable detail the prices at which such sales are conducted.

**XXVI. <u>Confidentiality</u>.**  Each party agrees to maintain the confidentiality of all information received from the other party relating to such other party or its business hereunder or pursuant hereto, including the existence and terms of this Agreement (the "<u>Information</u>"), except that Information may be disclosed (a) to its and its affiliates' directors, officers, employees and agents, including accountants, legal counsel and other advisors (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (b) to the extent requested by any regulatory authority having jurisdiction over such party (in which case the disclosing party agrees to inform the other party promptly of such disclosure, unless such notice is prohibited by Applicable Law and except in connection with any request as part of a regulatory examination), (c) to the extent required by the Applicable Law or regulations or by any subpoena or similar legal process (in which case the disclosing party agrees to inform the other party promptly of such

23

DocuSign Envelope ID: 450BEF89-162E-4A6D-BACB-0B9985390741

disclosure to the extent permitted by law and except in connection with a regulatory examination of an audit or examination conducted by accountants), (d) in connection with the exercise of any remedies hereunder or any other Loan Documents, (e) subject to an agreement containing provisions substantially the same as those of this Section, to (i) any assignee of or participant in, or any prospective assignee of or participant in, any of its rights or obligations under this Agreement, or (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative or hedging transaction relating to Borrower and its obligations, (f) with the consent of the other party or (g) to the extent such Information (i) becomes publicly available other than as a result of a breach of this Section by such party or (ii) becomes available to such party on a non-confidential basis from a source other than the other party or its affiliates or (iii) is independently developed by such party without use of the Information.  Any person required to maintain the confidentiality of the existence of this Agreement and Information as provided in this Section shall be considered to have complied with its obligation to do so if such person has exercised the same degree of care to maintain the confidentiality of such Information as such person would accord to its own confidential information.  The provisions of this Section are continuing obligations of the parties, their respective successors and assigns, and shall survive termination of this Agreement.

[Signature Pages Follow]

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed and delivered as of the date first above written.

**BLOCKFI INTERNATIONAL LTD.**

By: _David Olsson_____

Name: __David Olsson_____

Title: __senior Vice President_____

**VRAI NOM INVESTMENT LIMITED**

By: _ZHENG ZHANG_____

Name: ZHENG ZHANG

Title: Manager

## **EXHIBIT A**

Authorized Agents.  The following are authorized to deliver Lending Requests on behalf of Borrower in accordance with Section II hereof:

Name: Zac Prince
Email: zac@blockfi.com

Name: Chris Yeung
Email: chris@blockfi.com

Name: Jason Wilkinson
Email: jason@blockfi.com

Name: Joe Hickey
Email: joe.hickey@blockfi.com

Name: Jon Heng
Email: jon.heng@blockfi.com

Name: Brian Oliver
Email: brian.oliver@blockfi.com

Borrower may change its Authorized Agents by notice given to Lender as provided in Section XVI.

## EXHIBIT B

## Loan Term Sheet

The following Loan Term Sheet dated [*insert date*] incorporates all of the terms of the Master Digital Currency Loan Agreement entered into by Vrai Nom Investment Limited and BlockFi International Ltd. on <u>7th of june</u>, 2022 and the following specific terms:

| | |
|---|---|
| **Borrower:** | BLOCKFI INTERNATIONAL LTD. |
| **Lender** | VRAI NOM INVESTMENT LIMITED |
| **Digital Currency / Dollars / Alternative Currency** | [ ] |
| **Borrowed Amount** | $[ ] |
| **Borrow Rate** | [ ] |
| **Callable Option** | Yes/ No |
| **Prepayment Option** | Yes/ No |
| **Maturity Date** | [Insert date][None] |
| **Collateral** | [ ] |
| **Initial Margin Percentage** | [ ]% |
| **Margin Requirement Percentage** | [ ]% |
| **Release Margin Percentage** | [ ]% |
| **Allowable Stablecoin Collateral** | [GUSD][USDC][PAX][N/A] |
| **Digital Currency Payment to Borrower** | [insert Borrower's Digital Currency Address] |
| **Dollar Payment to Borrower** | [insert Borrower's Bank Details and stable coin blockchain address] |
| **Digital Currency Payment to Lender** | [insert Lender's Digital Currency Address] |
| **Dollar Payment to Lender** | [insert Lender's Bank Details and stable coin blockchain address] |

BLOCKFI INTERNATIONAL LTD.            VRAI NOM INVESTMENT LIMITED

By: _____             By: _____
Name:                                 Name:
Title:                                Title:

First 10m Loan



2022-06-07 20:26:28

The following loan term sheet dated **2022-06-08** incorporates all of the terms of the **Master Digital Currency Loan Agreement** entered into by **Vrainom Investment Limited** and **BlockFi International Ltd** on **2022-06-07**. This loan term sheet incorporates the following specific terms:

TERMS

| | |
|---|---|
| Transaction ID | a6acc369-1608-4a62-ac1f-465c11646df0 |
| Legal Entity ID | 3163ccal-7d92-4983-85ad-4ce70dd40213 |
| Borrower | BlockFi International Ltd |
| Lender | Vrainom Investment Limited |
| Loan Currency | USDC |
| Amount | 10,000,000.0000 |
| Interest Rate | 6.500% |
| Interest Payment Currency | USDC |
| Maturity Date | Not applicable |
| Callable | Yes |
| Prepayable | Yes |

COLLATERAL

| | |
|---|---|
| Margin Currency | ETH |
| Initial Margin Amount | 3,850.0000 |
| Initial Margin Percentage | 70.000% |
| Margin Requirement Percentage | 60.000% |
| Release Requirement Percentage | 80.000% |

This term sheet is provided by BlockFi as a courtesy. Please carefully review this term sheet for accuracy. BlockFi will consider your failure to immediately dispute any information on this term sheet as your acknowledgment and acceptance of its accuracy. Any errors on this term sheet should be communicated immediately to BlockFi via email to institutions@blockfi.com.

## Thank you.

First 10 loan, margin call 1.5m





First 10 loan, margin call 1.17m





Second Loan 9M







# BlockFi | Institutional Services

**BlockFi International Ltd**
Walkers Corporate (Bermuda) Limited
Park Place, 3rd Floor, 55 Par La Ville Rd
Hamilton, Bermuda HM 11
1.646.593.7301

MONTHLY INVOICE - September 2022

## CUSTOMER

Vrainom Investment Limited

## INVOICE SUMMARY

Billing Currency                                          Amount Due

USDC                                                      (115,771.2329)

## INVOICE DETAILS

| Trade Reference | Agreement Type | Start Date | Maturity Date | Closed Date | Type | Asset | Amount | Interest Rate | Accrued Interest |
|---|---|---|---|---|---|---|---|---|---|
| BLOCKFI_3 | MDCLA | 2022-08-09 | | | borrower | USDC | 12,670,000 | 6.50% | 67,689.0411 |
| BLOCKFI_4 | MDCLA | 2022-08-31 | | | borrower | USDC | 9,000,000 | 6.50% | 48,082.1918 |

*This statement is provided by BlockFi as a courtesy. Please carefully review this statement for accuracy.*
*BlockFi will consider your failure to immediately dispute any information on this statement as your acknowledgment and acceptance of its accuracy.*
*Any errors on this statement should be communicated immediately to BlockFi via email to reportingops@blockfi.com.*

1 / 1





Huobi

Buy Crypto ⌄   Markets ⌄   Trade ⌄   Derivatives ⌄   Earn ⌄   Finance ⌄   Content ⌄   Activity 🪙 ⌄   Web3.0 ⌄

Order History

| Limit | TP/SL | Trigger Order |

| Time | Pair | Type | Side | Price(USDT) | Amount | Filled(ETH) | Average Price |
|------|------|------|------|-------------|--------|-------------|---------------|
| 11-24 23:08:43 | ETH/USDT | Limit | SELL | 1194.78 | 87.5022 | 87.5022 | 1194.78 |
| 11-24 23:05:49 | ETH/USDT | Limit | SELL | 1195.50 | 89.6136 | 2.1114 | 1195.50 |
| 11-24 23:03:58 | ETH/USDT | Limit | SELL | 1195.00 | 166.7434 | 77.1298 | 1195.00 |
| 11-24 23:02:55 | ETH/USDT | Limit | SELL | 1194.50 | 293.6080 | 126.8646 | 1194.51 |
| 11-24 23:01:10 | ETH/USDT | Limit | SELL | 1194.00 | 312.2695 | 312.2695 | 1194.01 |
| 11-24 22:57:59 | ETH/USDT | Limit | SELL | 1194.00 | 296.4538 | 296.4538 | 1194.00 |
| 11-24 22:56:59 | ETH/USDT | Limit | SELL | 1194.30 | 339.9232 | 27.6833 | 1194.35 |
| 11-24 22:49:42 | ETH/USDT | Limit | SELL | 1193.00 | 450.8302 | 450.8302 | 1193.00 |
| 11-24 22:49:26 | ETH/USDT | Limit | SELL | 1192.30 | 387.3800 | 128.3877 | 1192.31 |
| 11-24 22:48:16 | ETH/USDT | Limit | SELL | 1194.00 | 378.2353 | 3.7087 | 1194.08 |



## Order History

Limit | TP/SL | Trigger Order

| Time | Pair | Type | Side | Price(USDT) | Amount | Filled(ETH) | Average P |
|------|------|------|------|-------------|--------|-------------|-----------|
| 11-24 22:46:01 | ETH/USDT | Limit | SELL | 1196.32 | 403.0722 | 32.6982 | 1196 |
| 11-24 22:42:44 | ETH/USDT | Limit | SELL | 1195.50 | 445.7002 | 445.7002 | 1195 |
| 11-24 22:41:49 | ETH/USDT | Limit | SELL | 1196.00 | 500.4432 | 10.4332 | 1196 |
| 11-24 22:40:55 | ETH/USDT | Limit | SELL | 1197.00 | 501.1103 | 2.6684 | 1197 |
| 11-24 22:37:37 | ETH/USDT | Limit | SELL | 1196.65 | 382.2650 | 382.2650 | 1196 |
| 11-24 22:33:22 | ETH/USDT | Limit | SELL | 1197.50 | 500.0000 | 370.0173 | 1197 |
| 11-24 22:29:57 | ETH/USDT | Limit | SELL | 1196.70 | 500.0000 | 52.8881 | 1196 |
| 11-24 22:24:53 | ETH/USDT | Limit | SELL | 1195.81 | 400.0000 | 332.2682 | 1195 |
| 11-24 22:21:01 | ETH/USDT | Limit | SELL | 1196.50 | 500.0000 | 143.9951 | 1196 |
| 11-24 22:19:44 | ETH/USDT | Limit | SELL | 1196.00 | 500.0000 | 377.4115 | 1196 |

Huobi

Buy Crypto ⌄ | Markets ⌄ | Trade ⌄ | Derivatives ⌄ | Earn ⌄ | Finance ⌄ | Content ⌄ | Activity ⌄ | Web3.0 ⌄



Order History

| Time | Pair | Type | Side | Price(USDT) | Amount | Filled(ETH) | Average Price |
|------|------|------|------|-------------|--------|-------------|---------------|
| 11-24 22:18:28 | ETH/USDT | Limit | SELL | 1195.53 | 2.5000 | 2.5000 | 1196.04 |
| 11-24 22:18:10 | ETH/USDT | Limit | SELL | 1196.41 | 3.0000 | 0.2131 | 1196.41 |

| Pair | Type | Side | Price(USDT) | Amount | Filled(ETH) | Average Price | Total(USDT) | Status | Action |
|------|------|------|-------------|--------|-------------|---------------|-------------|--------|--------|
| ETH/USDT | Limit | SELL | 1194.78 | 87.5022 | 87.5022 | 1194.78 | 104545.892 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1195.5 | 89.6136 | 2.1114 | 1195.5 | 2524.1787 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1195 | 166.7434 | 77.1298 | 1195 | 92170.608 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1194.5 | 293.608 | 126.8646 | 1194.51 | 151542.1826 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1194 | 312.2695 | 312.2695 | 1194.01 | 372854.3782 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1194 | 296.4538 | 296.4538 | 1194 | 353966.8476 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1194.3 | 339.9232 | 27.6833 | 1194.35 | 33063.62872 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1193 | 450.8302 | 450.8302 | 1193 | 537842.7671 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1192.3 | 387.38 | 128.3877 | 1192.31 | 153077.9783 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1194 | 378.2353 | 3.7087 | 1194.08 | 4428.4918 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1196.32 | 403.0722 | 32.6982 | 1196.39 | 39120.06621 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1195.5 | 445.7002 | 445.7002 | 1195.5 | 532836.9252 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1196 | 500.4432 | 10.4432 | 1196 | 12478.11085 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1197 | 501.1103 | 2.6684 | 1197.01 | 3194.105136 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1196.65 | 382.265 | 382.265 | 1196.65 | 457440.3231 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1197.5 | 500 | 370.0173 | 1197.5 | 443097.2768 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1196.7 | 500 | 52.8881 | 1196.7 | 63291.54601 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1195.81 | 400 | 332.2682 | 1195.8 | 397329.7074 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1196.5 | 500 | 143.9951 | 1196.5 | 172290.19 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1196 | 500 | 377.4115 | 1196.04 | 451402.8399 | Partially Filled | Detail |
| ETH/USDT | Limit | SELL | 1195.53 | 2.5 | 2.5 | 1196.04 | 2990.111053 | Filled | Detail |
| ETH/USDT | Limit | SELL | 1196.41 | 3 | 0.2131 | 1196.41 | 254.954971 | Partially Filled | Detail |
| | | | | total eth | 3665.9995 | total usdt | 4381743.109 | | |
| | | | | | | Average price | 1195.23833 | | |

 Gmail

vrai matrix <matrixvrainom@gmail.com>

**X001528 - Trade Confirmation - 30/11/2022**
1 message

**OTC BLOCKCHAINTRADING** <otc.BLOCKCHAINTRADING@outlook.com>                    Wed, Nov 30, 2022 at 1:55 PM
To: "matrixvrainom@gmail.com" <matrixvrainom@gmail.com>

Hello Vrai Nom Investment Team,

Thank you for choosing to trade with Blockchain trading international, we are pleased to present the following trade details;

| Trade Execution Number | X001528 |
|---|---|
| Trade Date | 30-Nov-22 |
| Currency Pair | ETHUSDC |
| Bought Currency | USDC |
| Bought Amount | 15,519,044.391 |
| Rate (Inverse Rate) | 1,266.382 |
| Sold Currency | ETH |
| Sold Amount | 12,254.6305 |

**Please confirm this affirmation by replying with *"Done"* or *"Confirmed"*.**

Should there be any discrepancies with the details on this confirmation, please notify us as soon as possible, otc.blockchaintrading@outlook.
com or by replying to this email.

Kind Regards,
BLOCKCHAIN TRADING INTERNATIONAL LIMITED

A: UNIT 1521, 15/F, STAR HOUSE 3 SALISBURY ROAD TSIMSHATSUI, HONG KONG
E: otc.blockchaintrading@outlook.com

*The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this*

*message with any third party, without a written consent from the sender. If you received this message by mistake, please reply to this message*

*and inform us, and remove any record from your devise immediately. Thank you.*

Electronic Proof of Claim Confirmation:  3275-1-RLBWA-383890635

Claim Electronically Submitted on (UTC) :  2023-03-31T01:18:47.649Z

Submitted by:  Vrainom Investment Limited
               matrixvrainom@gmail.com

KROLL

# EXHIBIT C

# DEMAND LETTER

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

Phone: +1 (214) 651-6955
*Matt.Ferris@haynesboone.com*

May 31, 2023

*Via Email*

Vrai Nom Investment Limited
RM4, 16/F, HO KING COMM CTR,
2-16 FAYUEN ST, MONGKOK
KOWLOON Hong Kong
Attn: Michael Zhang
Email: matrixvrainom@gmail.com
Phone: +85267677055

Re:     *In re BlockFi Inc., et al.*, Case No. 22-19361 (MBK) (the "Chapter 11 Cases") pending before the Honorable Judge Michael Kaplan in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"); Demand for return of collateral to BlockFi International Ltd.

Ladies and Gentlemen:

Our law firm represents BlockFi Inc. and its debtor affiliates, including BlockFi International Ltd. ("BlockFi International"), as debtors and debtors-in-possession (collectively, the "Debtors") in the Chapter 11 Cases. On November 28, 2022 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and the Chapter 11 Cases remain pending before the Bankruptcy Court. Accordingly, the Debtors are protected from certain activities by the automatic stay imposed by section 362 of the Bankruptcy Code. The automatic stay prevents creditors and other parties from, among other things, engaging in "***any act*** to obtain possession of property of the estate or of property from the estate or to exercise control over property of [the Debtors'] estate," "***any act*** to . . . enforce any lien against property of the estate," "***any act*** to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" and "the setoff of any debt owing to the debtor that arose before the commencement of the [Chapter 11 Cases]." 11 U.S.C. §§ 362(a)(3), (4), (6) and (7) (emphasis supplied).

We write to demand that Vrai Nom Investment Limited ("Vrai Nom") deliver its written agreement to return to BlockFi International 12,254.6305 Ethereum ("ETH") tokens and 5,631 Ethereum Proof of Work ("ETHW") tokens, less the amount of ETH and/or ETHW tokens necessary to satisfy all of BlockFi International's outstanding Obligations (defined below) owing under the Loan Agreement (defined below) (such excess amount of ETH and/or ETHW tokens, the "Excess Collateral") in full and final satisfaction of Vrai Nom's claims (collectively, the "Vrai Nom Claims") described in proof of claim

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

14777 (the "Proof of Claim")[1] filed by Vrai Nom in the Chapter 11 Cases, or, in the alternative, its written agreement to pay BlockFi International the amount of $5,869,152.60 as damages (the "Damages") for Vrai Nom's exercise of remedies against property of BlockFi International's estate in violation of the automatic stay, in each case by no later than **6:00 P.M. (HKT) on Tuesday, June 6, 2023** (the "Response Deadline"). Upon Vrai Nom's acceptance, in writing, of the terms set forth herein on or before the Response Deadline, BlockFi International will seek court approval of a settlement agreement to fully and finally resolve the Vrai Nom Claims and BlockFi International's counterclaims described herein.[2]

Under and pursuant to that certain Master Digital Currency Loan Agreement dated June 7, 2022 (the "Loan Agreement"), between BlockFi International Ltd., as borrower, and Vrai Nom Investment Limited, as lender, BlockFi International borrowed an aggregate total amount of 21,670,000 USDC (with a nominal value of $21,670,000) from Vrai Nom. In accordance with the Loan Agreement, BlockFi International pledged an amount of ETH and ETHW (as more particularly described in the Loan Agreement, the "Collateral") to secure BlockFi International's Obligations (as such term is defined in the Loan Agreement) under the Loan Agreement.

Attached to the Proof of Claim are (1) a Schedule of Support of Proof of Claim and (2) a trade confirmation from Blockchain Trading International Ltd., each of which demonstrate and confirm that, on November 30, 2022, *after* the Petition Date, Vrai Nom liquidated Collateral consisting of 12,254.6305 ETH tokens (the "Transferred Collateral"). Vrai Nom did not obtain relief from the automatic stay applicable in the Chapter 11 Cases prior to its exercise of remedies against the Transferred Collateral. Thus, by Vrai Nom's own admission in the Proof of Claim, Vrai Nom sold or otherwise liquidated the Transferred Collateral in violation of the automatic stay in these Chapter 11 Cases.

## I.    The Liquidation of Collateral on November 30, 2022 Violated the Automatic Stay

Under the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprised of all of the legal *or equitable* interest of a debtor in property as of the commencement of the case. *See* 11 U.S.C. § 541 (emphasis supplied). A debtor "has an 'interest in property' even if the property is fully encumbered by liens and the debtor has only an equitable or possessory interest." *In re VanZant*, 210 B.R. 1011, 1016 (Bankr. S.D. Ill. 1997); *see also In re Brody*, 297 B.R. 5, 8 (Bankr. S.D.N.Y. 2003) (same). As of the Petition Date, BlockFi retained at least an equitable interest in the Transferred Collateral and the pledged ETHW notwithstanding the existence of any liens or security interests in favor

---

[1] BlockFi International reserves all rights with respect to the Vrai Nom Claims and the Proof of Claim.

[2] The effectiveness of any settlement is subject to BlockFi International obtaining the requisite approvals including, without limitation, such order(s) or approval(s) as may be required authorizing such activity in the parallel Bermuda JPL Proceedings currently pending in the Supreme Court of Bermuda.

AUSTIN  |  CHARLOTTE  |  CHICAGO  |  DALLAS  |  DALLAS - NORTH  |  DENVER  |  FORT WORTH  |  HOUSTON  |  LONDON  |  MEXICO CITY  |  NEW YORK
ORANGE COUNTY  |  PALO ALTO  |  SAN ANTONIO  |  SAN FRANCISCO  |  SHANGHAI  |  THE WOODLANDS  |  WASHINGTON, D.C.

2

# HAYNES BOONE 

**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

of Vrai Nom encumbering such property. Thus, the Transferred Collateral and the ETHW constituted property of BlockFi International's estate as of the Petition Date.

Additionally, upon the filing of a bankruptcy petition, an automatic stay arises pursuant to section 362 of the Bankruptcy Code. The automatic stay prevents creditors and other parties from, among other things, engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," "any act to create, perfect, or enforce any lien against property of the estate," "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" and "the setoff of any debt owing to the debtor that arose before the commencement of the [Chapter 11 Cases]." 11 U.S.C. §§ 362(a)(3), (4), (6) and (7). The stay "prevents secured creditors from liquidating the assets of the debtor before the bankruptcy court has had an opportunity to review the matter. As Congress intended, the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors." *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 696 (3d Cir. 1989) (citations omitted); *see also* 3 Collier on Bankruptcy P 362.03 (16th ed. 2023) ("[E]ven if property has been repossessed pursuant to a security interest, sale of that property is stayed."); *In re Mann*, 907 F.2d 923, 926–27 (9th Cir. 1990) ("Generally, the filing of bankruptcy will stay all proceedings relating to a foreclosure sale.").

Vrai Nom's liquidation of the Transferred Collateral after the Petition Date without prior approval from the Bankruptcy Court constituted a violation of the automatic stay and was, therefore, void *ab initio*. *See, e.g.*, *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) (". . . any creditor action taken in violation of an automatic stay is void *ab initio*. . . .") (citing *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991)). Willful violations of the automatic stay may result in a finding of contempt, sanctions, an award of attorneys' fees, and/or punitive damages, among other things. *See* 11 U.S.C. §§ 105(a); 362(k)(1) ("any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."); *see also Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 203 (3d Cir. 2000) (affirming bankruptcy court's award of punitive damages under predecessor to section 362(k)); *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) ("[Section 362(k)(1)] has uniformly been held to be applicable to a corporate debtor."). In addition to the automatic stay, Vrai Nom's actions also violated the Bankruptcy Court's Worldwide Stay Order, a copy of which is attached to this email as <u>Exhibit A</u> for your reference.

**II.**   <u>**BlockFi International is Entitled to (A) Return of the Transferred Collateral or, Alternatively, Payment of Damages, and (B) Disallowance of the Proof of Claim**</u>

Under the Bankruptcy Code, acts against property of the estate are stayed until such property is no longer property of the estate. 11 U.S.C. § 362(c). The Bankruptcy Code also provides that property of the estate vests in the debtor at such time as a plan of reorganization is confirmed. 11 U.S.C. § 1141(b). Thus, property of the Debtors' estates remains protected by the automatic stay for so long as the Debtors continue to administer their Chapter 11 Cases, until plan confirmation. As of the date hereof, the Chapter

AUSTIN | CHARLOTTE | CHICAGO | DALLAS | DALLAS - NORTH | DENVER | FORT WORTH | HOUSTON | LONDON | MEXICO CITY | NEW YORK
ORANGE COUNTY | PALO ALTO | SAN ANTONIO | SAN FRANCISCO | SHANGHAI | THE WOODLANDS | WASHINGTON, D.C.

3

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

11 Cases remain pending. Accordingly, the automatic stay applicable in these Chapter 11 Cases remains in effect as to all property of the Debtors' estates.

The Bankruptcy Court has exclusive jurisdiction to grant relief from the stay. Section 362(d) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001 set forth the procedures for creditors, such as Vrai Nom, to seek relief from the automatic stay, which include providing notice to the Debtors and other parties in interest, and an opportunity for each to respond. *See* 11 U.S.C. § 362(d); Fed. R. Bankr. P. 4001. Vrai Nom failed to seek relief from the automatic stay pursuant to applicable law and procedures before exercising remedies against the Transferred Collateral. Thus, by exercising remedies against the Transferred Collateral on a postpetition basis without prior authorization from the Bankruptcy Court, Vrai Nom transferred property of the estate to itself in violation of the automatic stay. *See, e.g.*, *In re Kilroy*, 354 B.R. 476, 497 (Bankr. S.D. Tex. 2006), *aff'd sub nom. Kilroy v. Guerriero*, Case No. 06-3320, 2007 WL 1456006 (S.D. Tex. May 15, 2007) ("Under the Code, a 'transfer' of property includes . . . a foreclosure."); *see also In re Ehring*, 900 F.2d 184, 187 (9th Cir. 1990) ("When the creditor records its security interest, its interest in the debtor's property is not complete. The debtor still has a right to possession, equitable title, and the right of redemption. When the foreclosure sale is completed, those interests are either transferred or extinguished. That Congress amended the definition of 'transfer' to explicitly include the 'foreclosure of the debtor's equity of redemption' supports this analysis."); 11 U.S.C. § 101(54) ("The term 'transfer' means . . . (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property.").

Section 549(a) of the Bankruptcy Code authorizes the Debtors to avoid postpetition transfers of property of the estate not authorized under the Bankruptcy Code, including the transfer of the Transferred Collateral in violation of the automatic stay. *See* 11 U.S.C. § 549(a). Section 550(a) of the Bankruptcy Code provides further, in relevant part:

> . . . to the extent that a transfer is avoided under section . . . 549 . . . of this title, ***the trustee may recover***, for the benefit of the estate, ***the property transferred, or, if the court so orders, the value of such property***, from—

> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

> > (2) any immediate or mediate transferee of such initial transferee.

*Id.* § 550(a) (emphasis supplied). "Section 550(a) does not define 'value,' nor indicate at what time 'value' is to be determined." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004) (internal quotations omitted). Nonetheless, by authorizing debtors to recover the transferred property itself, Congress intended for any appreciation in the value of such property to accrue to the benefit of the estate, rather than the transferee:

AUSTIN  |  CHARLOTTE  |  CHICAGO  |  DALLAS  |  DALLAS - NORTH  |  DENVER  |  FORT WORTH  |  HOUSTON  |  LONDON  |  MEXICO CITY  |  NEW YORK
ORANGE COUNTY  |  PALO ALTO  |  SAN ANTONIO  |  SAN FRANCISCO  |  SHANGHAI  |  THE WOODLANDS  |  WASHINGTON, D.C.

4

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

> *[C]ourts have held that the trustee should be entitled to recover the greater of the value of the transferred property at the transfer date or the value at the time of the recovery*, although they acknowledged that the recovery should be reduced by the value of the improvements made by the transferee. This result is consistent with the section's goal of "restoration"—putting the estate back where it would have been but for the transfer. It also serves the equitable underpinnings of restorative justice by discouraging a "wait and see" approach by transferee defendants holding property, such as stock, that may be subject to wide, rapid swings in value on account of volatile markets. Likewise, as noted in the legislative record, "a transferee has an opportunity to benefit by delay, and there are possibilities for abuse where the transferred property is appreciating substantially in value."

5 Collier on Bankruptcy P 550.02 (16th 2023) (quoting Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, House of Representatives, 94th Cong., 2d Sess., ser. no. 27, pt. 3, at 1844) (emphasis supplied); *see also In re Am. Way Serv. Corp.*, 229 B.R. 496, 531 (Bankr. S.D. Fla. 1999) ("If the value of the property has declined following the fraudulent transfer, returning the devalued property itself would not make the estate whole. In such instances, the courts have awarded a money judgment. . . . **On the other hand, when the property has appreciated, the trustee is entitled to recover the property itself, or the value of the property at the time of judgment**. . . . The statute, in prescribing alternatives, is purposefully flexible to accomplish its remedial goal.") (emphasis supplied); *accord In re Zohar III, Corp.*, 631 B.R. 133, 185 (Bankr. D. Del. 2021) (citing *In re Am. Way Serv. Corp.*, 229 B.R. 531–32). Thus, BlockFi International is entitled to recover for the benefit of its estate the Transferred Collateral itself or the value of the Transferred Collateral as of the date of the judgment avoiding Vrai Nom's transfer of the Transferred Collateral, in addition to the ETHW tokens that Vrai Nom continues to hold.

Notwithstanding BlockFi International's right to demand return of the value of the Transferred Collateral as of the date of judgment, in the interest of promptly resolving this matter, BlockFi International is willing to stipulate to a valuation date of May 30, 2023 (the "Valuation Date") for purposes of valuing the Transferred Collateral and limit its demand to the Excess Collateral rather than the entirety of the Transferred Collateral.[3] The price of ETH as of the Valuation Date was $1,905.21,[4] which means the Transferred Collateral would have a nominal value as of such date of $23,347,644.57. Adding the $4,381,743.11 of proceeds from the liquidation at Huobi on November 24, 2022 and the value of the 5,631 ETHW tokens that Vrai Nom still holds as of May 30, 2023[5] brings the total Collateral

---

[3] BlockFi International's offer to establish a valuation date for the Converted Collateral is conditioned on Vrai Nom's written acceptance of and agreement in full to the settlement terms set forth herein. Otherwise, BlockFi International reserves all rights with respect to the valuation of and its claims for return of the Transferred Collateral.

[4] https://www.binance.com/en/price/ethereum

[5] https://www.binance.com/en/price/ethereum-pow

AUSTIN | CHARLOTTE | CHICAGO | DALLAS | DALLAS - NORTH | DENVER | FORT WORTH | HOUSTON | LONDON | MEXICO CITY | NEW YORK
ORANGE COUNTY | PALO ALTO | SAN ANTONIO | SAN FRANCISCO | SHANGHAI | THE WOODLANDS | WASHINGTON, D.C.

5

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

liquidation value to $27,740,818.61—which exceeds the Vrai Nom Claims by $5,869,152.60 and is, therefore, the excess amount  payable to BlockFi International under the Loan Agreement and applicable law. Thus, to avoid litigation for Vrai Nom's violations of the automatic stay, Vrai Nom must deliver written acceptance of the following terms by the Response Deadline: Vrai Nom agrees to (1) return the Excess Collateral or pay $5,869,152.60 to BlockFi International as damages, (2) promptly withdraw the Proof of Claim, and (3) otherwise comply with any other terms of this letter (collectively, the "Proposed Settlement"). Should Vrai Nom reject the Proposed Settlement or fail to deliver written acceptance of such terms by 6:00 P.M. (HKT) on the Response Deadline, BlockFi International will have no choice but to seek relief from the Bankruptcy Court for disallowance[6] of Vrai Nom's Proof of Claim in full and sanctions for willful violations of the automatic stay; including, *inter alia*, commencing an adversary proceeding against Vrai Nom in connection with the Chapter 11 Cases to pursue, among others, recovery of the Transferred Collateral and the other claims described herein. BlockFi International is offering the Proposed Settlement because they wish to resolve this matter amicably without litigating but BlockFi International also has a duty to protect and preserve the value of its estate, and BlockFi International intends to prosecute its rights against Vrai Nom to the fullest extent of the law.

Nothing in this letter shall be deemed a waiver of any rights, claims, remedies, or defenses to which BlockFi International may be entitled at law or in equity, all of which are expressly reserved.

Please direct all future correspondence regarding this matter to our office. If you have any questions regarding the above, please do not hesitate to contact us.

*[Signature page follows.]*

---

[6] *See* 11 U.S.C. § 502(d) (". . . the court **shall** disallow any claim of any entity from which property is recoverable under section 542 [turnover] . . . or that is a transferee of a transfer avoidable under section . . . 549 [postpetition transfers] . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable . . . .") (emphasis supplied).

AUSTIN | CHARLOTTE | CHICAGO | DALLAS | DALLAS - NORTH | DENVER | FORT WORTH | HOUSTON | LONDON | MEXICO CITY | NEW YORK
ORANGE COUNTY | PALO ALTO | SAN ANTONIO | SAN FRANCISCO | SHANGHAI | THE WOODLANDS | WASHINGTON, D.C.

6

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

Sincerely,

*/s/ Matthew T. Ferris*
Matthew T. Ferris

Enclosures:    Exhibit A         Worldwide Stay Order

CC:            Richard Kanowitz    richard.kanowitz@haynesboone.com
               Matt Ferris         matt.ferris@haynesboone.com
               Matt Frankle        matthew.frankle@haynesboone.com
               Charlie Jones       charlie.jones@haynesboone.com
               Jordan Chavez       jordan.chavez@haynesboone.com
               Tom Zavala          tom.zavala@haynesboone.com
               Usec Rho            usec.rho@blockfi.com
               Tina Wong           tina.wong@blockfi.com
               Aman Assefa         aman.assefa@blockfi.com
               Brian Oliver        brian.oliver@blockfi.com
               Joe Hickey          joe.hickey@blockfi.com
               Amy Disbrow         amy.disbrow@blockfi.com
               Kit Spicer          kit.spicer@blockfi.com
               Krish Gosai         krish@gosailaw.com.au
               Mike Penrose        Mike.Penrose@parthenon.ey.com
               Joel Edwards        Joel.Edwards@parthenon.ey.com
               Eleanor Fisher      Eleanor.Fisher@parthenon.ey.com

AUSTIN | CHARLOTTE | CHICAGO | DALLAS | DALLAS - NORTH | DENVER | FORT WORTH | HOUSTON | LONDON | MEXICO CITY | NEW YORK
ORANGE COUNTY | PALO ALTO | SAN ANTONIO | SAN FRANCISCO | SHANGHAI | THE WOODLANDS | WASHINGTON, D.C.

7

# HAYNES BOONE



**Privileged & Confidential Attorney Work Product**
**Settlement/Compromise Communication Pursuant to Fed. R. Evid. 408 and Similar State Statutes**
**For Compromise Discussion Purposes Only / Without Prejudice / Subject to Change**

## <u>Exhibit A</u>

Worldwide Stay Order

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq. (NJ Bar No. 014321986)<br>Warren A. Usatine, Esq. (NJ Bar No. 025881995)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>(201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (*pro hac vice* pending)<br>Christine A. Okike, P.C. (*pro hac vice* pending)<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 446-4800<br>jsussberg@kirkland.com<br>christine.okike@kirkland.com<br><br>**HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Kenric D. Kattner, Esq. (*pro hac vice* pending)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>kenric.kattner@haynesboone.com<br><br>*Proposed Attorneys for Debtors and Debtors in Possession* | **Order Filed on November 30, 2022**<br>**by Clerk**<br>**U.S. Bankruptcy Court**<br>**District of New Jersey** |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>       Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Joint Administration Requested)<br>**Hearing Date and Time:** |

**ORDER (I) RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, ANTI-DISCRIMINATION PROVISIONS, AND *IPSO FACTO* PROTECTIONS OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

---

The relief set forth on the following pages, numbered two (2) through seven (7) and the exhibits hereto, is hereby ORDERED.

**DATED: November 30, 2022**

*Honorable Michael B. Kaplan*
United States Bankruptcy Judge

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

Page | 2)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR SEEKING ENTRY OF AN ORDER (I) RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, ANTI-DISCRIMINATION PROVISIONS, AND IPSO FACTO PROTECTIONS OF THE BANKRUPTCY CODE, AND (II) GRANTING RELATED RELIEF |

Upon the *Debtors' Motion Seeking Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, and (II) Granting Related Relief* (the "Motion")[1]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing (the "Hearing") on the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is **GRANTED** as set forth herein.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR SEEKING ENTRY OF AN ORDER (I) RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, ANTI-DISCRIMINATION PROVISIONS, AND IPSO FACTO PROTECTIONS OF THE BANKRUPTCY CODE, AND (II) GRANTING RELATED RELIEF |

2.  Subject to the exceptions to the automatic stay contained in Bankruptcy Code section 362(b)[2] and the right of any party in interest to seek relief from the automatic stay in accordance with Bankruptcy Code section 362(d), all persons (including individuals, partnerships, corporations, and other entities and all those acting on their behalf) and governmental units, whether of the United States, any state or locality therein or any territory or possession thereof, or any non-U.S. jurisdiction (including any division, department, agency, instrumentality or service thereof, and all those acting on their behalf), are hereby stayed, restrained and enjoined from:

a.  commencing or continuing (including the issuance or employment of process) any judicial, administrative, or other action or proceeding against the Debtors that was or could have been commenced before the commencement of the Debtors' Chapter 11 Cases or recovering a claim against the Debtors that arose before the commencement of the Debtors' Chapter 11 Cases;

b.  enforcing, against the Debtors or against property of their estates, a judgment or order obtained before the commencement of the Debtors' Chapter 11 Cases;

c.  taking any action, whether inside or outside the United States, to obtain possession of property of the Debtors' estates, wherever located or to exercise control over property of the estates or interfere in any way with the conduct by the Debtors of their business, including, without limitation, attempts to arrest, seize or reclaim any assets in which the Debtors have legal or equitable interests;

d.  taking any action to create, perfect, or enforce any lien against the property of the Debtors' estates;

e.  taking any action to create, perfect, or enforce against property of the Debtors any lien to the extent that such lien secures a claim that arose prior to the commencement of the Debtors' Chapter 11 Cases;

f.  taking any action to collect, assess, or recover a claim against the Debtors that

---

[2] The text of Bankruptcy Code section 362 is attached hereto as <u>Exhibit 1</u>.

Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR SEEKING ENTRY OF AN ORDER (I) RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, ANTI-DISCRIMINATION PROVISIONS, AND IPSO FACTO PROTECTIONS OF THE BANKRUPTCY CODE, AND (II) GRANTING RELATED RELIEF |

arose prior to the commencement of the Debtors' Chapter 11 Cases;

g. offsetting any debt owing to the Debtors that arose before the commencement of the Debtors' Chapter 11 Cases against any claim against the Debtors; and

h. commencing or continuing any proceeding before the United States Tax Court concerning the Debtors, subject to the exceptions set forth in provisions of 11 U.S.C. § 362(b).

i. precluding custodians of property of the Debtors' estates, including but not limited to common stock, the Debtors' interests in such property, and other collateral, from transferring estate assets from their existing locations or otherwise taking any action that in any way affects those assets or alienates them from the Debtors or their estates.

3.     Pursuant to sections 362 and 365[3] of the Bankruptcy Code, notwithstanding a provision in a contract or lease or any applicable law, all persons are hereby stayed, restrained, and enjoined from terminating or modifying any and all contracts and leases to which the Debtors are party or signatory, at any time after the commencement of these Chapter 11 Cases, because of a provision in such contract or lease that is conditioned on the (a) insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases or (b) commencement of these Chapter 11 Cases under the Bankruptcy Code. Accordingly, all such persons are required to continue to perform their obligations under such leases and contracts during the postpetition period.

4.     Pursuant to section 525[4] of the Bankruptcy Code, all foreign or domestic governmental units and other regulatory authorities and all those acting on their behalf are stayed,

---

[3] The text of Bankruptcy Code section 365 is attached hereto as <u>Exhibit 2</u>.
[4] The text of Bankruptcy Code section 525 is attached hereto as <u>Exhibit 3</u>.

Debtors:            BLOCKFI, INC., *et al.*
Case No.            22-
Caption of Order:   ORDER GRANTING DEBTORS' MOTION FOR SEEKING
                    ENTRY OF AN ORDER (I) RESTATING AND ENFORCING
                    THE   WORLDWIDE   AUTOMATIC   STAY,   ANTI-
                    DISCRIMINATION   PROVISIONS,   AND   IPSO   FACTO
                    PROTECTIONS OF THE BANKRUPTCY CODE, AND
                    (II) GRANTING RELATED RELIEF

restrained, prohibited, and enjoined from: (a) denying, revoking, suspending, or refusing to renew

any license, permit, charter, franchise, or other similar grant to the Debtors or the Debtors'

affiliates on account of (i) the commencement of the Debtors' Chapter 11 Cases, (ii) the Debtors'

insolvency, or (iii) the fact that the Debtors have not paid a debt that is dischargeable in the Chapter

11 Cases; (b) placing conditions upon such a grant to the Debtors or the Debtors' affiliates on

account of (i) the commencement of the Debtors' Chapter 11 Cases, (ii) the Debtors' insolvency,

or (iii) the fact that the Debtors have not paid a debt that is dischargeable in the Chapter 11 Cases;

(c) discriminating against the Debtors or the Debtors' affiliates on account of (i) the

commencement of the Debtors' Chapter 11 Cases, (ii) the Debtors' insolvency, or (iii) the fact that

the Debtors have not paid a debt that is dischargeable in the Chapter 11 Cases; or (d) interfering

in any way with any and all property of the Debtors' estates wherever located.

5.      Pursuant to section 541[5] of the Bankruptcy Code, all interests of the Debtors in

property are property of the estate notwithstanding any provision in any agreement, transfer

instrument or applicable non-bankruptcy law that (a) restricts or conditions transfer of such interest

by the Debtors, or (b) is conditioned on the insolvency or financial condition of the Debtors, on

the commencement of a case under the Bankruptcy Code, or on the appointment of or taking

possession by a trustee in a case under the Bankruptcy Code or a custodian before such

commencement, and that effects or gives an option to effect a forfeiture, modification, or

termination of the Debtors' interest in property.

---

[5] The text of Bankruptcy Code section 541 is attached hereto as <u>Exhibit 4</u>.

Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI, INC., *et al.* |
| Case No. | 22- |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR SEEKING ENTRY OF AN ORDER (I) RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, ANTI-DISCRIMINATION PROVISIONS, AND IPSO FACTO PROTECTIONS OF THE BANKRUPTCY CODE, AND (II) GRANTING RELATED RELIEF |

6.  Courts of competent jurisdiction shall take all appropriate measures required to enforce and recognize these Chapter 11 Cases, including without limitation the application of the worldwide automatic stay and all other orders entered in these Chapter 11 Cases in the relevant jurisdictions.

7.  The Debtors are authorized to serve the Order upon creditors, governmental units or other regulatory authorities, and/or interested parties wherever located. The Debtors may use reasonable methods of serving upon any persons (including individuals, partnerships, corporations, other entities and all those acting on their behalf) or governmental units, whether of the United States, any state or locality therein, or any territory or possession thereof, or any foreign country (including any division, department, agency, instrumentality or service thereof, and all those acting on their behalf), that intends to, is, or may violate the worldwide automatic stay. Such reasonable methods may include, without limitation, publication, certified and non-certified mail, service upon the person's or governmental unit's attorney, facsimile, email, posting on the Debtors' website, hand delivery and courier. Further, a true copy of this Order shall be served on all required parties pursuant to D.N.J.LBR 9013-5(f).

8.  Nothing in this Order or the Motion shall constitute a rejection or assumption by the Debtors, as debtors in possession, of any executory contract or unexpired lease.

9.  The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

10. Nothing in this Order alters, or is intended to alter, the effect of any provisions of the Bankruptcy Code.

Page | 7)
Debtors:                BLOCKFI, INC., *et al*.
Case No.                22-
Caption of Order:       ORDER GRANTING DEBTORS' MOTION FOR SEEKING
                        ENTRY OF AN ORDER (I) RESTATING AND ENFORCING
                        THE    WORLDWIDE    AUTOMATIC    STAY,    ANTI-
                        DISCRIMINATION   PROVISIONS,   AND   IPSO   FACTO
                        PROTECTIONS   OF   THE   BANKRUPTCY   CODE,   AND
                        (II) GRANTING RELATED RELIEF

11.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

12.     This Court shall retain exclusive jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, and/or enforcement of this Order.

# <u>Exhibit 1</u>

**Bankruptcy Code Section 362**

## § 362. Automatic Stay

**(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

**(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** any act to create, perfect, or enforce any lien against property of the estate;

**(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

**(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

**(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

**(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

**(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

**(1)** under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

**(2)** under subsection (a)—

**(A)** of the commencement or continuation of a civil action or proceeding—

**(i)** for the establishment of paternity;

**(ii)** for the establishment or modification of an order for domestic support obligations;

**(iii)** concerning child custody or visitation;

**(iv)** for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or

**(v)** regarding domestic violence;

**(B)** of the collection of a domestic support obligation from property that is not property of the estate;

**(C)** with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;

**(D)** of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

**(E)** of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

**(F)** of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

**(G)** of the enforcement of a medical obligation, as specified under title IV of the Social Security Act;

**(3)** under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

**(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such

governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

**[(5) Repealed.** Pub.L. 105-277, Div. I, Title VI, § 603(1), Oct. 21, 1998, 112 Stat. 2681-886]

**(6)** under subsection (a) of this section, of the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any commodity contract, forward contract or securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts;

**(7)** under subsection (a) of this section, of the exercise by a repo participant or financial participant of any contractual right (as defined in section 559) under any security agreement or arrangement or other credit enhancement forming a part of or related to any repurchase agreement, or of any contractual right (as defined in section 559) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

**(8)** under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

**(9)** under subsection (a), of—

    **(A)** an audit by a governmental unit to determine tax liability;

    **(B)** the issuance to the debtor by a governmental unit of a notice of tax deficiency;

    **(C)** a demand for tax returns; or

    **(D)** the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

**(10)** under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

**(11)** under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

**(12)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construction, held by the Secretary of Transportation under chapter 537 of title 46 or section 109(h) of title 49, or under applicable State law;

**(13)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under chapter 537 of title 46;

**(14)** under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

**(15)** under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

**(16)** under subsection (a) of this section, of any action by a guaranty agency, as defined in section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

**(17)** under subsection (a) of this section, of the exercise by a swap participant or financial participant of any contractual right (as defined in section 560) under any security agreement or arrangement or other credit

2

enhancement forming a part of or related to any swap agreement, or of any contractual right (as defined in section 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

**(18)** under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition;

**(19)** under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer—

    **(A)** to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or

    **(B)** a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

    but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title;

**(20)** under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

**(21)** under subsection (a), of any act to enforce any lien against or security interest in real property—

    **(A)** if the debtor is ineligible under section 109(g) to be a debtor in a case under this title; or

    **(B)** if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title;

**(22)** subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

**(23)** subject to subsection (m), under subsection (a)(3), of an eviction action that seeks possession of the residential property in which the debtor resides as a tenant under a lease or rental agreement based on endangerment of such property or the illegal use of controlled substances on such property, but only if the lessor files with the court, and serves upon the debtor, a certification under penalty of perjury that such an eviction action has been filed, or that the debtor, during the 30-day period preceding the date of the filing of the certification, has endangered property or illegally used or allowed to be used a controlled substance on the property;

**(24)** under subsection (a), of any transfer that is not avoidable under section 544 and that is not avoidable under section 549;

**(25)** under subsection (a), of—

    **(A)** the commencement or continuation of an investigation or action by a securities self regulatory organization to enforce such organization's regulatory power;

    **(B)** the enforcement of an order or decision, other than for monetary sanctions, obtained in an action by such securities self regulatory organization to enforce such organization's regulatory power; or

    **(C)** any act taken by such securities self regulatory organization to delist, delete, or refuse to permit quotation of any stock that does not meet applicable regulatory requirements;

**(26)** under subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on the motion of the trustee and

3

after notice and a hearing, grants the taxing authority adequate protection (within the meaning of section 361) for the secured claim of such authority in the setoff under section 506(a);

**(27)** under subsection (a) of this section, of the exercise by a master netting agreement participant of any contractual right (as defined in section 555, 556, 559, or 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any master netting agreement, or of any contractual right (as defined in section 555, 556, 559, or 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such master netting agreements to the extent that such participant is eligible to exercise such rights under paragraph (6), (7), or (17) for each individual contract covered by the master netting agreement in issue;

**(28)** under subsection (a), of the exclusion by the Secretary of Health and Human Services of the debtor from participation in the medicare program or any other Federal health care program (as defined in section 1128B(f) of the Social Security Act pursuant to title XI or XVIII of such Act); and

**(29)** under subsection (a)(1) of this section, of any action by—

    **(A)** an amateur sports organization, as defined in section 220501(b) of title 36, to replace a national governing body, as defined in that section, under section 220528 of that title; or

    **(B)** the corporation, as defined in section 220501(b) of title 36, to revoke the certification of a national governing body, as defined in that section, under section 220521 of that title.

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

**(c)** Except as provided in subsections (d), (e), (f), and (h) of this section—

    **(1)** the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

    **(2)** the stay of any other act under subsection (a) of this section continues until the earliest of—

        **(A)** the time the case is closed;

        **(B)** the time the case is dismissed; or

        **(C)** if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

    **(3)** if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

        **(A)** the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

        **(B)** on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

        **(C)** for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

            **(i)** as to all creditors, if—

                **(I)** more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

                **(II)** a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—

                    **(aa)** file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

                    **(bb)** provide adequate protection as ordered by the court; or

                    **(cc)** perform the terms of a plan confirmed by the court; or

                **(III)** there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—

                    **(aa)** if a case under chapter 7, with a discharge; or

    (**bb**) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

    (**ii**) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor; and

(**4**)

    (**A**)

        (**i**) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and

        (**ii**) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;

    (**B**) if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;

    (**C**) a stay imposed under subparagraph (B) shall be effective on the date of the entry of the order allowing the stay to go into effect; and

    (**D**) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

        (**i**) as to all creditors if—

            (**I**) 2 or more previous cases under this title in which the individual was a debtor were pending within the 1-year period;

            (**II**) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

            (**III**) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or

        (**ii**) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

(**d**) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

    (**1**) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (**2**) with respect to a stay of an act against property under subsection (a) of this section, if—

        (**A**) the debtor does not have an equity in such property; and

        (**B**) such property is not necessary to an effective reorganization;

    (**3**) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

        (**A**) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

        (**B**) the debtor has commenced monthly payments that—

5

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

(e)

(1) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

(2) Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless—

(A) a final decision is rendered by the court during the 60-day period beginning on the date of the request; or

(B) such 60-day period is extended—

(i) by agreement of all parties in interest; or

(ii) by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

(f) Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

(h)

(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such

personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

**(B)** to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

**(2)** Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

**(i)** If a case commenced under chapter 7, 11, or 13 is dismissed due to the creation of a debt repayment plan, for purposes of subsection (c)(3), any subsequent case commenced by the debtor under any such chapter shall not be presumed to be filed not in good faith.

**(j)** On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

**(k)**

**(1)** Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**(2)** If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

**(l)**

**(1)** Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that—

**(A)** under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and

**(B)** the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

**(2)** If, within the 30-day period after the filing of the bankruptcy petition, the debtor (or an adult dependent of the debtor) complies with paragraph (1) and files with the court and serves upon the lessor a further certification under penalty of perjury that the debtor (or an adult dependent of the debtor) has cured, under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor, subsection (b)(22) shall not apply, unless ordered to apply by the court under paragraph (3).

**(3)**

**(A)** If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

**(B)** If the court upholds the objection of the lessor filed under subparagraph (A)—

**(i)** subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(ii)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's objection.

**(4)** If a debtor, in accordance with paragraph (5), indicates on the petition that there was a judgment for possession of the residential rental property in which the debtor resides and does not file a certification under paragraph (1) or (2)—

**(A)** subsection (b)(22) shall apply immediately upon failure to file such certification, and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(B)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating the absence of a filed certification and the applicability of the exception to the stay under subsection (b)(22).

**(5)**

**(A)** Where a judgment for possession of residential property in which the debtor resides as a tenant under a lease or rental agreement has been obtained by the lessor, the debtor shall so indicate on the bankruptcy petition and shall provide the name and address of the lessor that obtained that pre-petition judgment on the petition and on any certification filed under this subsection.

**(B)** The form of certification filed with the petition, as specified in this subsection, shall provide for the debtor to certify, and the debtor shall certify—

**(i)** whether a judgment for possession of residential rental housing in which the debtor resides has been obtained against the debtor before the date of the filing of the petition; and

**(ii)** whether the debtor is claiming under paragraph (1) that under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment of possession was entered, and has made the appropriate deposit with the court.

**(C)** The standard forms (electronic and otherwise) used in a bankruptcy proceeding shall be amended to reflect the requirements of this subsection.

**(D)** The clerk of the court shall arrange for the prompt transmittal of the rent deposited in accordance with paragraph (1)(B) to the lessor.

**(m)**

**(1)** Except as otherwise provided in this subsection, subsection (b)(23) shall apply on the date that is 15 days after the date on which the lessor files and serves a certification described in subsection (b)(23).

**(2)**

**(A)** If the debtor files with the court an objection to the truth or legal sufficiency of the certification described in subsection (b)(23) and serves such objection upon the lessor, subsection (b)(23) shall not apply, unless ordered to apply by the court under this subsection.

**(B)** If the debtor files and serves the objection under subparagraph (A), the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the situation giving rise to the lessor's certification under paragraph (1) existed or has been remedied.

**(C)** If the debtor can demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied, the stay provided under subsection (a)(3) shall remain in effect until the termination of the stay under this section.

**(D)** If the debtor cannot demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied—

**(i)** relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to proceed with the eviction; and

**(ii)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's certification.

**(3)** If the debtor fails to file, within 15 days, an objection under paragraph (2)(A)—

**(A)** subsection (b)(23) shall apply immediately upon such failure and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(B)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating such failure.

**(n)**

**(1)** Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor—

**(A)** is a debtor in a small business case pending at the time the petition is filed;

**(B)** was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition;

8

Case 2:21-bk-09961-MBK Doc 1580 Filed 10/30/23 Entered 10/30/23 16:40:38 Desc Main Document Page 95 of 108

(**C**) was a debtor in a small business case in which a plan was confirmed in the 2-year period ending on the date of the order for relief entered with respect to the petition; or

(**D**) is an entity that has acquired substantially all of the assets or business of a small business debtor described in subparagraph (A), (B), or (C), unless such entity establishes by a preponderance of the evidence that such entity acquired substantially all of the assets or business of such small business debtor in good faith and not for the purpose of evading this paragraph.

(**2**) Paragraph (1) does not apply—

(**A**) to an involuntary case involving no collusion by the debtor with creditors; or

(**B**) to the filing of a petition if—

(**i**) the debtor proves by a preponderance of the evidence that the filing of the petition resulted from circumstances beyond the control of the debtor not foreseeable at the time the case then pending was filed; and

(**ii**) it is more likely than not that the court will confirm a feasible plan, but not a liquidating plan, within a reasonable period of time.

(**o**) The exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph (6), (7), (17), or (27) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under this title.

9

## **Exhibit 2**

**Bankruptcy Code Section 365**

## § 365. Executory Contracts and Unexpired Leases

**(a)** Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

**(b)**

    **(1)** If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

        **(A)** cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

        **(B)** compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

        **(C)** provides adequate assurance of future performance under such contract or lease.

    **(2)** Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

        **(A)** the insolvency or financial condition of the debtor at any time before the closing of the case;

        **(B)** the commencement of a case under this title;

        **(C)** the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement; or

        **(D)** the satisfaction of any penalty rate or penalty provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.

    **(3)** For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

        **(A)** of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

        **(B)** that any percentage rent due under such lease will not decline substantially;

        **(C)** that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

        **(D)** that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

    **(4)** Notwithstanding any other provision of this section, if there has been a default in an unexpired lease of the debtor, other than a default of a kind specified in paragraph (2) of this subsection, the trustee may not require a lessor to provide services or supplies incidental to such lease before assumption of such lease unless the lessor is compensated under the terms of such lease for any services and supplies provided under such lease before assumption of such lease.

**(c)** The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

    **(1)**

        **(A)** applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

        **(B)** such party does not consent to such assumption or assignment; or

    **(2)** such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor; or

1

**(3)** such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

**(d)**

**(1)** In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

**(2)** In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

**(3)**

**(A)** The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period, except as provided in subparagraph (B). This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

**(B)** In a case under subchapter V of chapter 11, the time for performance of an obligation described in subparagraph (A) arising under any unexpired lease of nonresidential real property may be extended by the court if the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic until the earlier of—

**(i)** the date that is 60 days after the date of the order for relief, which may be extended by the court for an additional period of 60 days if the court determines that the debtor is continuing to experience a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic; or

**(ii)** the date on which the lease is assumed or rejected under this section.

**(C)** An obligation described in subparagraph (A) for which an extension is granted under subparagraph (B) shall be treated as an administrative expense described in section 507(a)(2) for the purpose of section 1191(e).

**(4)**

**(A)** Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—

**(i)** the date that is 210 days after the date of the order for relief; or

**(ii)** the date of the entry of an order confirming a plan.

**(B)**

**(i)** The court may extend the period determined under subparagraph (A), prior to the expiration of the 210-day period, for 90 days on the motion of the trustee or lessor for cause.

**(ii)** If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

**(5)** The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

2

**(e)**

    **(1)** Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

        **(A)** the insolvency or financial condition of the debtor at any time before the closing of the case;

        **(B)** the commencement of a case under this title; or

        **(C)** the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

    **(2)** Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

        **(A)**

            **(i)** applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

            **(ii)** such party does not consent to such assumption or assignment; or

        **(B)** such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

**(f)**

    **(1)** Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

    **(2)** The trustee may assign an executory contract or unexpired lease of the debtor only if—

        **(A)** the trustee assumes such contract or lease in accordance with the provisions of this section; and

        **(B)** adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

    **(3)** Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

**(g)** Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

    **(1)** if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition; or

    **(2)** if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

        **(A)** if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, at the time of such rejection; or

        **(B)** if before such rejection the case has been converted under section 1112, 1208, or 1307 of this title—

            **(i)** immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

            **(ii)** at the time of such rejection, if such contract or lease was assumed after such conversion.

**(h)**

    **(1)**

        **(A)** If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—

            **(i)** if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

3

**(ii)** if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

**(B)** If the lessee retains its rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

**(C)** The rejection of a lease of real property in a shopping center with respect to which the lessee elects to retain its rights under subparagraph (A)(ii) does not affect the enforceability under applicable nonbankruptcy law of any provision in the lease pertaining to radius, location, use, exclusivity, or tenant mix or balance.

**(D)** In this paragraph, "lessee" includes any successor, assign, or mortgagee permitted under the terms of such lease.

**(2)**

**(A)** If the trustee rejects a timeshare interest under a timeshare plan under which the debtor is the timeshare interest seller and—

**(i)** if the rejection amounts to such a breach as would entitle the timeshare interest purchaser to treat the timeshare plan as terminated under its terms, applicable nonbankruptcy law, or any agreement made by timeshare interest purchaser, the timeshare interest purchaser under the timeshare plan may treat the timeshare plan as terminated by such rejection; or

**(ii)** if the term of such timeshare interest has commenced, then the timeshare interest purchaser may retain its rights in such timeshare interest for the balance of such term and for any term of renewal or extension of such timeshare interest to the extent that such rights are enforceable under applicable nonbankruptcy law.

**(B)** If the timeshare interest purchaser retains its rights under subparagraph (A), such timeshare interest purchaser may offset against the moneys due for such timeshare interest for the balance of the term after the date of the rejection of such timeshare interest, and the term of any renewal or extension of such timeshare interest, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such timeshare plan, but the timeshare interest purchaser shall not have any right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

**(i)**

**(1)** If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.

**(2)** If such purchaser remains in possession—

**(A)** such purchaser shall continue to make all payments due under such contract, but may,[1] offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

**(B)** the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

**(j)** A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

**(k)** Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

4

**(l)** If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

**(m)** For purposes of this section 365 and sections 541(b)(2) and 362(b)(10), leases of real property shall include any rental agreement to use real property.

**(n)**

    **(1)** If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect—

        **(A)** to treat such contract as terminated by such rejection if such rejection by the trustee amounts to such a breach as would entitle the licensee to treat such contract as terminated by virtue of its own terms, applicable nonbankruptcy law, or an agreement made by the licensee with another entity; or

        **(B)** to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced, for—

            **(i)** the duration of such contract; and

            **(ii)** any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

    **(2)** If the licensee elects to retain its rights, as described in paragraph (1)(B) of this subsection, under such contract—

        **(A)** the trustee shall allow the licensee to exercise such rights;

        **(B)** the licensee shall make all royalty payments due under such contract for the duration of such contract and for any period described in paragraph (1)(B) of this subsection for which the licensee extends such contract; and

        **(C)** the licensee shall be deemed to waive—

            **(i)** any right of setoff it may have with respect to such contract under this title or applicable nonbankruptcy law; and

            **(ii)** any claim allowable under section 503(b) of this title arising from the performance of such contract.

    **(3)** If the licensee elects to retain its rights, as described in paragraph (1)(B) of this subsection, then on the written request of the licensee the trustee shall—

        **(A)** to the extent provided in such contract, or any agreement supplementary to such contract, provide to the licensee any intellectual property (including such embodiment) held by the trustee; and

        **(B)** not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment) including any right to obtain such intellectual property (or such embodiment) from another entity.

    **(4)** Unless and until the trustee rejects such contract, on the written request of the licensee the trustee shall—

        **(A)** to the extent provided in such contract or any agreement supplementary to such contract—

            **(i)** perform such contract; or

            **(ii)** provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by the trustee; and

        **(B)** not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

**(o)** In a case under chapter 11 of this title, the trustee shall be deemed to have assumed (consistent with the debtor's other obligations under section 507), and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution, and any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507. This subsection shall not extend any commitment that would otherwise be terminated by any act of such an agency.

**(p)**

5

**(1)** If a lease of personal property is rejected or not timely assumed by the trustee under subsection (d), the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated.

**(2)**

> **(A)** If the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract.
>
> **(B)** If, not later than 30 days after notice is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate.
>
> **(C)** The stay under section 362 and the injunction under section 524(a)(2) shall not be violated by notification of the debtor and negotiation of cure under this subsection.

**(3)** In a case under chapter 11 in which the debtor is an individual and in a case under chapter 13, if the debtor is the lessee with respect to personal property and the lease is not assumed in the plan confirmed by the court, the lease is deemed rejected as of the conclusion of the hearing on confirmation. If the lease is rejected, the stay under section 362 and any stay under section 1301 is automatically terminated with respect to the property subject to the lease.

6

## Exhibit 3

**Bankruptcy Code Section 525**

### § 525. Protection Against Discriminatory Treatment

**(a)** Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

**(b)** No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

> **(1)** is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
>
> **(2)** has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
>
> **(3)** has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

**(c)**

> **(1)** A governmental unit that operates a student grant or loan program and a person engaged in a business that includes the making of loans guaranteed or insured under a student loan program may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, or another person with whom the debtor or bankrupt has been associated, because the debtor or bankrupt is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of a case under this title or during the pendency of the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
>
> **(2)** In this section, "student loan program" means any program operated under title IV of the Higher Education Act of 1965 or a similar program operated under State or local law.

**[(d) Repealed.** Pub.L. 116-260, Div. FF, Title X, § 1001(c)(2), Dec. 27, 2020, 134 Stat. 3217]

1

## Exhibit 4

**Bankruptcy Code Section 541**

## § 541. Property of the Estate

**(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

**(1)** Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**(2)** All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

**(A)** under the sole, equal, or joint management and control of the debtor; or

**(B)** liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

**(3)** Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

**(4)** Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

**(5)** Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

**(A)** by bequest, devise, or inheritance;

**(B)** as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

**(C)** as a beneficiary of a life insurance policy or of a death benefit plan.

**(6)** Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

**(7)** Any interest in property that the estate acquires after the commencement of the case.

**(b)** Property of the estate does not include—

**(1)** any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

**(2)** any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

**(3)** any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;

**(4)** any interest of the debtor in liquid or gaseous hydrocarbons to the extent that—

**(A)**

**(i)** the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

**(ii)** but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

**(B)**

**(i)** the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

**(ii)** but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 542 of this title;

**(5)** funds placed in an education individual retirement account (as defined in section 530(b)(1) of the Internal Revenue Code of 1986) not later than 365 days before the date of the filing of the petition in a case under this title, but—

**(A)** only if the designated beneficiary of such account was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were placed in such account;

**(B)** only to the extent that such funds—

**(i)** are not pledged or promised to any entity in connection with any extension of credit; and

**(ii)** are not excess contributions (as described in section 4973(e) of the Internal Revenue Code of 1986); and

(C) in the case of funds placed in all such accounts having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $7,575 [originally "$5,000", adjusted effective April 1, 2022][1];

(6) funds used to purchase a tuition credit or certificate or contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program (as defined in section 529(b)(1) of such Code) not later than 365 days before the date of the filing of the petition in a case under this title, but—

(A) only if the designated beneficiary of the amounts paid or contributed to such tuition program was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were paid or contributed;

(B) with respect to the aggregate amount paid or contributed to such program having the same designated beneficiary, only so much of such amount as does not exceed the total contributions permitted under section 529(b)(6) of such Code with respect to such beneficiary, as adjusted beginning on the date of the filing of the petition in a case under this title by the annual increase or decrease (rounded to the nearest tenth of 1 percent) in the education expenditure category of the Consumer Price Index prepared by the Department of Labor; and

(C) in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $7,575 [originally "$5,000", adjusted effective April 1, 2022][1];

(7) any amount—

(A) withheld by an employer from the wages of employees for payment as contributions—

(i) to—

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title; or

(B) received by an employer from employees for payment as contributions—

(i) to—

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;

except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2); or

(ii) to a health insurance plan regulated by State law whether or not subject to such title;

(8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where—

(A) the tangible personal property is in the possession of the pledgee or transferee;

(B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and

(C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b);

(9) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made—

(A) on or after the date that is 14 days prior to the date on which the petition is filed; and

      (**B**) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor),

      unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the prohibition; or

(**10**) funds placed in an account of a qualified ABLE program (as defined in section 529A(b) of the Internal Revenue Code of 1986) not later than 365 days before the date of the filing of the petition in a case under this title, but—

      (**A**) only if the designated beneficiary of such account was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were placed in such account;

      (**B**) only to the extent that such funds—

           (**i**) are not pledged or promised to any entity in connection with any extension of credit; and

           (**ii**) are not excess contributions (as described in section 4973(h) of the Internal Revenue Code of 1986); and

      (**C**) in the case of funds placed in all such accounts having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $7,575 [originally "$6,225", adjusted effective April 1, 2022].

[(**11**) **Repealed.** Pub.L. 116-260, Div. FF, Title X, § 1001(a)(2)(C), Dec. 27, 2020, 134 Stat. 3217]

Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

(**c**)

(**1**) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

      (**A**) that restricts or conditions transfer of such interest by the debtor; or

      (**B**) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(**2**) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(**d**) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

(**e**) In determining whether any of the relationships specified in paragraph (5)(A) or (6)(A) of subsection (b) exists, a legally adopted child of an individual (and a child who is a member of an individual's household, if placed with such individual by an authorized placement agency for legal adoption by such individual), or a foster child of an individual (if such child has as the child's principal place of abode the home of the debtor and is a member of the debtor's household) shall be treated as a child of such individual by blood.

(**f**) Notwithstanding any other provision of this title, property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case under this title.