

The New York Times
Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

August 7, 2023

I, Tami Bacon, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

8/7/2023, NY & NATL, pg B5

Tami Bacon

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2023.08.07 16:21:59 -04'00'

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

| In re: BLOCKFI INC., *et al.*, Debtors. | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered) |
|---|---|

**NOTICE OF HEARING TO CONSIDER (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) CONFIRMATION OF THE CHAPTER 11 PLAN FILED BY THE DEBTORS, AND (III) RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on August 2, 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. 1306] (the "Conditional Disclosure Statement Order") (a) authorizing BlockFi Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1300] (as modified, amended, or supplemented from time to time, the "Plan"); (b) conditionally approving the *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1301] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing") will commence on **September 26, 2023 at 1:00 p.m. (prevailing Eastern Time)** or such other time that the Bankruptcy Court determines, before the Honorable Chief Judge Michael B. Kaplan, in the United States Bankruptcy Court for the District of New Jersey, located at Courtroom #8, 402 East State Street, Trenton, New Jersey 08608.

**PLEASE BE ADVISED**: THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

**CRITICAL INFORMATION REGARDING VOTING ON THE PLAN**

**Voting Record Date.** The voting record date is **July 26, 2023** (the "Voting Record Date"), which is the date for determining which Holders of Claims are entitled to vote on the Plan.

**Voting Deadline.** The deadline for voting on the Plan is **September 11, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' claims, noticing, and solicitation agent Kroll Restructuring Administration LLC, (the "Claims, Noticing, and Solicitation Agent") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**Objection Deadline.** The deadline for filing objections to the Plan is **September 11, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). All objections to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by (i) attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, (ii) by all other parties-in-interest, if not otherwise filed with the Clerk of the Bankruptcy Court electronically, via hard copy, and shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline: (i) ***Debtors:* BlockFi, Inc.**, 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691; (ii) ***Counsel for the Debtors:* Kirkland & Ellis LLP**, 601 Lexington Avenue, New York, New York 10022, Attention: Joshua A. Sussberg; Christine A. Okike; Francis Petrie; (iii) ***Counsel for the Debtors:* Haynes and Boone, LLP**, Rockefeller Plaza, 26th Floor, New York, NY 10112, Attention: Richard S. Kanowitz; Jordan Chavez; (iv) ***Counsel for the Committee:* Brown Rudnick LLP**, 7 Times Square, New York, NY 10036, Attention: Robert J. Stark; Kenneth J. Aulet; Bennett S. Silverberg; and (v) ***United States Trustee:* Office of the United States Trustee, United States Trustee, Regions 3 & 9**, One Newark Center, Suite 2100, Newark, NJ 07102, Attention: Jeffrey M. Sponder; Lauren Bielskie.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.B CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**YOU MAY ELECT NOT TO GRANT AND RECEIVE THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN ONLY IF YOU RETURN A BALLOT CHECKING THE BOX TO "OPT OUT" FROM THE THIRD-PARTY RELEASE. SUBJECT TO ANY FINAL ORDER OF THE BANKRUPTCY COURT TO THE CONTRARY, REGARDLESS OF WHETHER THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE A RIGHT TO OPT OUT OF THE RELEASE, IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN, OR (D) VOTE TO REJECT THE PLAN AND, IN EACH CASE, FAIL TO CHECK THE BOX TO "OPT OUT" FROM THE THIRD PARTY RELEASE, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.B OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE THE DEBTORS WILL RELEASE ANY CLAIMS AND CAUSES OF ACTION THE DEBTORS HAVE AGAINST YOU, EXCEPT FOR RETAINED PREFERENCE CLAIMS, IF APPLICABLE. IF YOU OPT OUT OF THE THIRD-PARTY RELEASE THE WIND-DOWN TRUSTEE MAY PURSUE ANY CLAIMS AND CAUSES OF ACTION THE DEBTORS HAVE AGAINST YOU. IF YOU VOTE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO GRANT THE THIRD-PARTY RELEASE IN ARTICLE VIII.B OF THE PLAN.**

**ADDITIONAL INFORMATION**

**Obtaining Solicitation Materials.** The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received the materials in electronic format), please feel free to contact the Debtors' Claims, Noticing, and Solicitation Agent, by emailing the Claims, Noticing, and Solicitation Agent at blockfiinfo@ra.kroll.com with a reference to "In re: BlockFi - Solicitation Inquiry" in the subject line. You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/blockfi, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein. Please be advised that the Claims, Noticing, and Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Filing the Plan Supplement.** The Debtors will file the Plan Supplement (as defined in the Plan) on or before **September 4, 2023** and will serve notice on all Holders of Claims entitled to vote on the Plan, which will: (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

**BINDING NATURE OF THE PLAN. IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

**ECONOMY | LABOR**

# Nevada Is an Outlier in the Recovery. Can the State Change Its Luck?

FROM FIRST BUSINESS PAGE

highest rates in the country — Nevada was in a deeper hole than other states.

"This leads to a bit of a paradox," said David Schmidt, the chief economist for the Nevada Department of Employment, Training and Rehabilitation. "We are seeing rapid job gains, but have unemployment that is higher than other states."

Nearly a quarter of jobs in Nevada are in leisure and hospitality, and international travel to Las Vegas is down by about 40 percent since 2019, including drops in visits from China, where the economy is slowing, and the United Kingdom, according to an estimate from the Las Vegas Convention and Visitors Authority.

Union officials say there are about 20 percent fewer hospitality workers in the city than before the pandemic.

Gov. Joe Lombardo acknowledged the state's high unemployment in a statement, saying that "many of our businesses and much of our work force are still recovering from the turmoil of the pandemic."

"The long-term economic solution to Nevada's employment and work force challenges begins with diversifying our economy, investing in work force development and training," said Mr. Lombardo, a Republican, who unseated a Democrat last year in a tight race in which he attacked his opponent and President Biden over the economy.

The state is making progress toward those diversification goals, Mr. Lombardo said, citing Elon Musk's announcement in January that Tesla would invest $3.6 billion in the company's Gigafactory outside Reno to produce electric semi trucks and advanced battery cells, vowing to add 3,000 jobs.

Major League Baseball is preparing for the relocation of the Oakland Athletics to Las Vegas, where a stadium to be built adjacent to the Strip will, by some projections, create 14,000 construction jobs. The Las Vegas Grand Prix — signifying Formula 1 racing's return to the city for the first time since the 1980s — is expected to draw huge crowds this fall, as is the Super Bowl in 2024.

Despite the state's unemployment rate, the fact that the economy is trending in the right direction, both locally and nationally, bodes well for Mr. Biden's chances in the state as the 2024 campaign begins, said Dan Lee, a professor of political science at the University of Nevada, Las Vegas.

"Should it remain on the right track," Mr. Lee said, "that's clearly good for the incumbent."

But a potential complication lies ahead.

The Culinary Workers Union Local 226, which represents 60,000 hotel workers, has been in talks since April on a new contract to replace the five-year agreement that expired in June.

The union could take a strike authorization vote this fall in an attempt to pressure major hotels, including MGM Resorts International, Caesars Entertainment and other casino companies, to give pay raises and bring back more full-time jobs.

More than a potential strike, the union, which estimates it has 10,000 members who remain out of work since the pandemic started, is a critical bloc of Mr. Biden's Democratic base in Nevada. In 2020, Mr. Biden won the state by roughly two percentage points in part because of a huge ground operation by the culinary union. Those members could be difficult to organize should a shaky economic climate in the state persist.

"Companies cut workers during the pandemic, and now these same companies are making record profits but don't want to bring back enough workers to do the work," said Ted Pappageorge, the head of the local, which is affiliated with the union UNITE HERE. "Workload issues are impacting all departments."

For Juanita Miles, landing a stable, full-time job has been challenging.

For much of the past decade, she worked as a security guard, patching together gigs at several hotels and restaurants. But when the pandemic hit and businesses closed, she realized she would need to pivot.

"I'm now looking anywhere, for anything," Ms. Miles, 49, recalled.

In late 2020, she took a $19-an-hour job as a part-time dishwasher at the Wynn Las Vegas, Ms. Miles said, but the hotel soon reduced its staff and she lost her job. She returned, for a time, to working security at hotel pools, nightclubs and apartment complexes.

But Ms. Miles started to feel increasingly unsafe on the job during her night shifts, she said, recounting the time a man who appeared to be high on drugs followed her onto her bus home early one morning after a shift.

"I was no longer willing to risk my life," Ms. Miles said inside an air-conditioned casino along the Strip where she had stopped for a respite from the 110-degree heat outside.

As slot machines clanged in the background and people packed around craps tables, Ms. Miles reflected on the job interview she had just come from at a nearby Walgreens.

She thought it had gone well, she said, and she hoped it would pan out. The $15-an-hour pay would help cover her $1,400 rent, as well as the other monthly bills — cellphone, $103; utilities, $200; groceries, $300 — that she splits with her husband, who works at a call center.

"Things are going to be tight no matter what," Ms. Miles said, adding that if offered the job, she still hoped to eventually find something with higher pay.

Her dream, she said, is to open a day care center — a fulfilling job that would allow her to alleviate some of the pressure she knows rests on many parents.

For Mr. Alvarez, the longtime Tropicana employee, any hope of returning to the job he long enjoyed is increasingly fleeting. The hotel, which opened in 1957, is on track to be demolished to make space for the new Athletics baseball stadium.

"The city and the state seem to be on the rise," he said. "But workers cannot be left behind."

After he lost his job at the Tropicana, Mr. Alvarez started working at Allegiant Stadium when it opened to fans in fall 2020.

He helped set up platters of food in the stadium's suites during football games, but the work, which was part time, ended when the season was over.

"I was putting together two and sometimes three jobs, just to make enough to live," he said.

Several times during the pandemic, he said, he has feared he might lose his home in North Las Vegas, which he bought in 2008. (Eviction filings in the Las Vegas area in April were up 49 percent from before the pandemic, according to a report from The Eviction Lab at Princeton University.)

He filed for unemployment benefits and eventually found part-time work at the Park MGM as a doorman. On a recent morning, Mr. Alvarez put on his gray vest and tie and prepared to begin his midday shift there.

In June, the Vegas Golden Knights won the Stanley Cup finals at the T-Mobile Arena next door to the Park MGM. Witnessing the joy and celebration that swept through the hotel reminded him of why he had stayed in the industry.

"Helping people and bringing them joy is what this city is all about," he said. "I just hope I can keep doing this work."

PHOTOGRAPHS BY GABRIELLA ANGOTTI-JONES FOR THE NEW YORK TIMES

**Tourists on the Las Vegas Strip. Nearly a quarter of Nevada's jobs are in leisure and hospitality. For much of the past decade, Juanita Miles, right, has patched together gigs at hotels and restaurants.**

## 'Workers cannot be left behind.'

Pedro Alvarez, who says it has been an uphill climb to find full-time work in Las Vegas.

# *Automakers Are Facing a Union Fight Amid Concerns of a Looming E.V. Era*

FROM FIRST BUSINESS PAGE

have to be a lot more aggressive to negotiate better agreements, to set a standard that raises people up to a middle-class life."

In addition to higher pay, the demands include regular cost-of-living wage increases, pension plans for a greater number of workers and a job security plan for workers when plants are shuttered. The U.A.W. also hopes to push Stellantis to reopen a plant in Belvidere, Ill., that was idled this year, putting 1,350 people out of work.

And it wants a workweek comprising four eight-hour days on the assembly line and a fifth day with eight hours of paid time off — essentially a 32-hour week. Mr. Fain said many workers typically worked 50 or 60 hours a week, leaving little time for family activities or rest.

In a statement, G.M. said that it expected a new contract to provide increased wages, and that it was "important to protect U.S. manufacturing and jobs in an industry that is dominated by nonunionized competition." But the U.A.W.'s demands, the company added, "would threaten our ability to do what's right for the long-term benefit of the team."

Ford said it aimed to work with the U.A.W. on "creative solutions," without elaborating. Stellantis said it intended to "fairly reward" its workers but warned that any agreement must not "jeopardize our ability to continue investing" in new vehicles and technologies.

The automakers are investing tens of billions of dollars in electric vehicles but have yet to see significant sales or profits from them. The union is concerned that the move to E.V.s could cost thousands of jobs because electric vehicles generally require fewer workers to produce than traditional gasoline-powered cars and trucks.

Erik Gordon, a University of Michigan business professor who follows the auto industry, said he expected that the union would score some gains — up to a point. "I think there will be substantial wage increases, and I think the companies can afford higher wages," he said.

But he said the automakers were likely to resist other union demands, like the shorter workweek, company-paid health care for retirees or the ability to strike over plant closings. "The companies can't afford anything that puts them in a straitjacket," Mr. Gordon said. "With the E.V. transition, they are going to need flexibility to adjust plants and maybe even close plants."

Mr. Fain, an insurgent who upset the incumbent president in an election this year on a vow to bring a tougher approach to negotiations, shrugged off the notion that the union's demands would put the companies at a cost disadvantage against rivals like Toyota, Honda and Tesla, which operate nonunion plants in the United States.

"These companies are very competitive," he said of the Detroit manufacturers, noting that each had reported substantial profits over the past 10 years, and that most of their profits come from North America. In the first half of the year, Stellantis made a record 10.9 billion euros, about $12 billion. G.M. generated $5 billion in profit in the same period.

Union officials frequently note that for many years before the companies' renaissance, the U.A.W. agreed to lower pay, less costly retirement provisions for new hires and other concessions that helped the automakers regain their competitive edge after falling into dire straits and even — for G.M. and for Stellantis's predecessor, Chrysler — bankruptcy.

The companies' bottom lines, along with their leaders' pay, have become a rallying cry for the U.A.W. The union estimates that the chief executives — Mary T. Barra of G.M., Jim Farley of Ford and Carlos Tavares of Stellantis — collectively saw about a 40 percent rise in total compensation in the past four years.

In 2022, Ms. Barra received a compensation package, including salary, stock awards and bonuses, worth $29 million, according to financial filings. Mr. Farley's package was worth $21 million, and Mr. Tavares's €23.5 million.

"I think they should apply the same compensation principles to the workers that the C.E.O.s apply to themselves," Mr. Fain said. (Stock awards and bonuses, unlike wages and salaries, can vary and even decline depending on share price and company performance.)

The current agreements, which lapse Sept. 14, were reached in 2019 only after a six-week strike at G.M. — the company that the union designated in that cycle as its negotiating target. This time, Mr. Fain says all three companies are targets.

His supporters say it may be difficult to achieve some of the union's main goals without walking out again, especially the demand that workers at electric vehicle battery plants are entitled to the same pay, benefits and safety standards as U.A.W. members at other factories.

Several battery plants are joint ventures between the Big Three and foreign battery manufacturers. A provision making it relatively easy to unionize plants owned entirely by the automakers does not apply to workers at jointly operated plants, nor would those plants automatically come under the autoworkers' national contracts if they did unionize. The battery plants are often in lightly unionized states where organizing can be difficult.

Auto company officials have said they rely on joint ventures to gain access to the expertise of other manufacturers and to help raise the enormous sums of capital such projects require.

Under President Biden's Inflation Reduction Act, the federal government is providing loans to ease the cost of building the battery plants, as well as tax credits to lower the cost of the battery packs they will make.

Mr. Fain said the government should require recipients of these loans and credits to provide middle-class wages for workers. At $16.50 an hour, some workers at an E.V. battery plant operated by G.M. in Ohio "are scraping by and working two jobs," he said. (The plant's starting wage is $16.50, rising to about $20 after seven years. Under G.M.'s national contract, the wage is $17 for new hires and increases to $32 after eight years.)

Union officials argue that failing to bring battery workers up to the standards of the national agreements will eventually undermine the U.A.W. by allowing automakers to circumvent the union.

"I think it's existential — it's a demand that we can't bend on," said Scott Houldieson, chairperson of Unite All Workers for Democracy, a reform group within the union that assembled the slate of candidates that Mr. Fain and other new leaders ran on.

When asked whether the union could strike the automakers over the issue, Mr. Houldieson, a worker at a Ford assembly plant in Chicago, added: "Are they going to take it to the wall? We will. We'll take it to the wall because it's our existence."

## *Guarantees sought to protect workers hired at battery plants.*

BRITTANY GREESON FOR THE NEW YORK TIMES

**Shawn Fain, the president of the United Auto Workers union, left, said that 150,000 members are set to strike to achieve the union's goals, including a 40 percent pay increase.**

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: LUCIRA HEALTH, INC.,[1] Debtor. | Chapter 11<br>Case No. 23-10242 (MFW)<br>**Docket Ref. No. 359, 360, 361, 487, 488, 489, 506, 511 & 516** |
|---|---|

**NOTICE OF:**

**(I) APPROVAL OF DISCLOSURE STATEMENT ON AN INTERIM BASIS; AND**

**(II) THE HEARING TO CONSIDER (A) FINAL APPROVAL OF THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION AND (B) CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

***Conditional Approval of Disclosure Statement***. On July 21, 2023, the above-captioned debtor (the "Debtor") filed the *Disclosure Statement for Chapter 11 Plan of Liquidation for Lucira Health, Inc.* [Docket No. 488] (as may be amended, modified, or supplemented, the "Disclosure Statement") and the *Chapter 11 Plan of Liquidation for Lucira Health, Inc.* [Docket No. 487] (as may be amended, modified, or supplemented, the "Plan").[2] On July 28, 2023, the United States Bankruptcy Court for the District of Delaware entered an order approving the Disclosure Statement on a conditional basis (the "Solicitation Procedures Order").

***Combined Hearing***. A hearing to consider final approval of the Disclosure Statement and confirmation of the Plan and any objections thereto (the "Combined Hearing") has been scheduled before the Honorable Mary F. Walrath, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom 4, Wilmington, Delaware 19801, on **September 19, 2023 at 10:30 a.m. (Prevailing Eastern Time)**. The Combined Hearing may be continued from time to time without further notice other than by (a) announcing any adjourned date at the Combined Hearing (or any continued hearing) or (b) filing a notice on the docket of the Chapter 11 Case. The Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing.

***Voting Deadline.*** All votes to accept or reject the Plan must be **actually received** by the Debtor's claims and voting agent, Donlin, Recano & Company, Inc. (the "Voting Agent") by no later than **September 8, 2023 at 4:00 p.m. (Prevailing Eastern Time)**. Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

***Releases***. **Please be advised that the Plan contains various releases, exculpation, and injunction provisions that may affect your rights.**

**A COPY OF THE PLAN CAN BE FOUND AT WWW.DONLINRECANO.COM/LUCIRA.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE INJUNCTION, RELEASE AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

***Objections***. The deadline to object or respond to final approval of the Disclosure Statement and confirmation of the Plan (including objections to the releases, injunctions, and exculpation provisions provided therein) is **September 12, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

Objections and responses must (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) comply with the Bankruptcy Rules and the Local Rules; and (iv) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, with a copy served upon the following: (a) counsel to the Debtor, (1) Cooley LLP, 3 Embarcadero Center, 20th Floor, San Francisco, CA 94111-4004, Attn: Robert L. Eisenbach III (reisenbach@cooley.com), and 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004-2400, Attn: Cullen Drescher Speckhart (cspeckhart@cooley.com) and Olya Antle (oantle@cooley.com), and (2) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Sean M. Beach (sbeach@ycst.com), Ashley E. Jacobs, Esq. (ajacobs@ycst.com) and Timothy R. Powell, Esq. (tpowell@ycst.com); and (b) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Joseph Cudia, Esq. (Joseph.Cudia@usdoj.gov) so that they are received no later than the Objection Deadline.

**IF OBJECTIONS ARE NOT FILED AND SERVED AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE COMBINED HEARING.**

***Additional Information***. Copies of the Disclosure Statement, the Plan, the Solicitation Procedures Order, and all other documents filed in the Chapter 11 Case may be obtained and reviewed without charge at www.donlinrecano.com/lucira, or upon request to the Voting Agent by (i) telephone at 1 (877) 534-8310 (toll free) or (ii) email at lhinfo@drc.equiniti.com.

Dated: Wilmington, Delaware, August 2, 2023, YOUNG CONAWAY STARGATT & TAYLOR, LLP, /s/ Timothy R. Powell , Sean M. Beach (No. 4070), Ashley E. Jacobs (No. 5635), Joshua B. Brooks (No. 6765), Timothy R. Powell (No. 6894), Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Telephone: (302) 571-6600, Emails: sbeach@ycst.com, ajacobs@ycst.com, jbrooks@ycst.com, tpowell@ycst.com -and- COOLEY LLP, Robert L. Eisenbach III (admitted *pro hac vice*), 3 Embarcadero Center, 20th Floor, San Francisco, CA, 94111-4004, Telephone: (415) 693-2000, Email: reisenbach@cooley.com -and- Cullen D. Speckhart (admitted *pro hac vice*), Olya Antle (admitted *pro hac vice*), 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004-2400, Telephone: (202) 842-7800, Email: cspeckhart@cooley.com, oantle@cooley.com, *Counsel for the Debtor and Debtor in Possession*

[1] The Debtor and the last four digits of its taxpayer identification number are: Lucira Health, Inc. (1037). The Debtor's mailing address is 1315 63rd St., Emeryville, CA 94608.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY**

| In re: BLOCKFI INC., *et al.*,[1] Debtors. | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered) |
|---|---|

**NOTICE OF HEARING TO CONSIDER (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) CONFIRMATION OF THE CHAPTER 11 PLAN FILED BY THE DEBTORS, AND (III) RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on August 2, 2023, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. 1306] (the "Conditional Disclosure Statement Order") (a) authorizing BlockFi Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1300] (as modified, amended, or supplemented from time to time, the "Plan"); (b) conditionally approving the *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1301] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing") will commence on **September 26, 2023 at 1:00 p.m. (prevailing Eastern Time)**, or such other time that the Bankruptcy Court determines, before the Honorable Chief Judge Michael B. Kaplan, in the United States Bankruptcy Court for the District of New Jersey, located at Courtroom #8, 402 East State Street, Trenton, New Jersey 08608.

**PLEASE BE ADVISED**: THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

**CRITICAL INFORMATION REGARDING VOTING ON THE PLAN**

**Voting Record Date.** The voting record date is **July 26, 2023** (the "Voting Record Date"), which is the date for determining which Holders of Claims are entitled to vote on the Plan.

**Voting Deadline.** The deadline for voting on the Plan is **September 11, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you **must**: (a) follow the instructions carefully; (b) complete **all** of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' claims, noticing, and solicitation agent Kroll Restructuring Administration LLC (the "Claims, Noticing, and Solicitation Agent") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**Objection Deadline.** The deadline for filing objections to the Plan is **September 11, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). All objections to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by (i) attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, (ii) by all other parties-in-interest, if not otherwise filed with the Clerk of the Bankruptcy Court electronically, via hard copy, and shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline: (i) ***Debtors:*** **BlockFi, Inc.**, 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691; (ii) ***Counsel for the Debtors:*** **Kirkland & Ellis LLP**, 601 Lexington Avenue, New York, New York 10022, Attention: Joshua A. Sussberg; Christine A. Okike; Francis Petrie; (iii) ***Counsel for the Debtors:*** **Haynes and Boone, LLP**, Rockefeller Plaza, 26th Floor, New York, NY 10112, Attention: Richard S. Kanowitz; Jordan Chavez; (iv) ***Counsel for the Committee:*** **Brown Rudnick LLP**, 7 Times Square, New York, NY 10036, Attention: Robert J. Stark; Kenneth J. Aulet; Bennett S. Silverberg; and (v) ***United States Trustee:*** **Office of the United States Trustee, United States Trustee, Regions 3 & 9**, One Newark Center, Suite 2100, Newark, NJ 07102, Attention: Jeffrey M. Sponder; Lauren Bielskie.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.B CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**YOU MAY ELECT NOT TO GRANT AND RECEIVE THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN ONLY IF YOU RETURN A BALLOT CHECKING THE BOX TO "OPT OUT" FROM THE THIRD-PARTY RELEASE. SUBJECT TO ANY FINAL ORDER OF THE BANKRUPTCY COURT TO THE CONTRARY, REGARDLESS OF WHETHER THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE A RIGHT TO OPT OUT OF THE RELEASE, IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN, OR (D) VOTE TO REJECT THE PLAN AND, IN EACH CASE, FAIL TO CHECK THE BOX TO "OPT OUT" FROM THE THIRD PARTY RELEASE, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.B OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE THE DEBTORS WILL RELEASE ANY CLAIMS AND CAUSES OF ACTION THE DEBTORS HAVE AGAINST YOU, EXCEPT FOR RETAINED PREFERENCE CLAIMS, IF APPLICABLE. IF YOU OPT OUT OF THE THIRD-PARTY RELEASE THE WIND-DOWN TRUSTEE MAY PURSUE ANY CLAIMS AND CAUSES OF ACTION THE DEBTORS HAVE AGAINST YOU. IF YOU VOTE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO GRANT THE THIRD-PARTY RELEASE IN ARTICLE VIII.B OF THE PLAN.**

**ADDITIONAL INFORMATION**

**Obtaining Solicitation Materials.** The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received the materials in electronic format), please feel free to contact the Debtors' Claims, Noticing, and Solicitation Agent, by emailing the Claims, Noticing, and Solicitation Agent at blockfiinfo@ra.kroll.com with a reference to "In re: BlockFi - Solicitation Inquiry" in the subject line. You may also obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://restructuring.ra.kroll.com/blockfi, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein. Please be advised that the Claims, Noticing, and Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

**Filing the Plan Supplement.** The Debtors will file the Plan Supplement (as defined in the Plan) on or before **September 4, 2023** and will serve notice on all Holders of Claims entitled to vote on the Plan, which will: (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

**BINDING NATURE OF THE PLAN. IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**