**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' REPLY TO GEORGE J. GERRO'S RESPONSE TO DEBTORS' FOURTH OMNIBUS OBJECTION TO CERTAIN CLAIMS
### (duplicates, books and records, debtor not liable)

TO:    THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED
        STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "<u>BlockFi</u>" or the "<u>Debtors</u>"), as debtors

and debtors-in-possession in the above-referenced Chapter 11 cases (the "<u>Chapter 11 Cases</u>"),

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

hereby file this *Debtors' Reply to George J. Gerro's Response to Debtors' Fourth Omnibus Objection to Certain Claims* (the "Reply") in response to George Gerro's ("Gerro") *Response Of George J. Gerro To Debtors' Fourth Omnibus Objection To Certain Claims; And Cross-Motion Of George J. Gerro For An Order Temporarily Allowing Claim No. 12386 Pursuant To F.R.B.P. Rule 3018(A) For The Sole Purpose Of Voting On A Chapter 11 Plan* (the "Gerro Response" and "Cross-Motion") in connection with the *Debtors' Fourth Omnibus Objection To Certain Claims* (the "Gerro Claim Objection"). In support of the Reply, the Debtors respectfully represent as follows:

## **Preliminary Statement**

1.      Despite the tortured history surrounding the Gerro Claims,[2] the path to disallowance is straightforward. BlockFi and Gerro had a prepetition lending relationship through which BlockFi issued a Loan to Gerro. The Loan was secured by Collateral in the form of BTC. The Loan Agreement contained a specific LTV Ratio requirement, which Gerro failed to maintain. BlockFi, with notice to Gerro and fully within its rights under the Loan Agreement, liquidated the Collateral to pay down Gerro's Loan and satisfy the LTV Ratio requirement. Gerro understood, and even acquiesced, to the liquidation at the time. Gerro, however, had second thoughts following an upward swing in cryptocurrency value 46 days after the Collateral liquidation and turned to gamesmanship. Gerro filed lawsuit after lawsuit against BlockFi, asserting baseless causes of action. Now, in these Chapter 11 Cases, Gerro has filed the Gerro Claims, seeking to recover 426 BTC from the Debtors' estates. But Gerro is not a creditor and is not entitled to a distribution. As such, this Court should disallow the Gerro Claims in their entirety.

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings provided in the remainder of this Reply.

**Factual Background**

I.     **The Loan Agreements Between Gerro and BlockFi**

2.      George J. Gerro ("<u>Gerro</u>") is a former borrower of BlockFi who entered into a series

of loan agreements (each a "<u>Loan</u>" and collectively, the "<u>Loans</u>") with BlockFi Lending LLC that

required him to pledge bitcoin ("<u>BTC</u>") as collateral and granted BlockFi a security interest in,

among other things, the BTC and proceeds thereof (the "<u>Collateral</u>"). Two Loans were originated

in September 2019, for the amounts of $1,479,000.00 USD and $647,700.00 USD, respectively

(the "<u>September 2019 Loans</u>"). The operative Loan at the time of the liquidation was that certain

Loan and Security Agreement executed by the Parties on February 11, 2020 (the "<u>Loan</u>

<u>Agreement</u>"), which consolidated the September 2019 Loans. A true and correct copy of the Loan

Agreement is attached hereto as **<u>Exhibit A</u>**.

3.      In exchange for a one-time loan of $2,275,000.00 USD, the Loan Agreement

provides, *inter alia*, that Gerro "pledges, assigns, transfers and delivers to Lender, and grants to

Lender a continuing and unconditional first priority security interest in all of Borrower's present

and future rights, title and interest in 441.85 BTC." Ex. A at ¶ 5. The Loan Agreement also

authorizes BlockFi to liquidate Collateral with 3 days' notice if the loan-to-value ratio (the "<u>LTV</u>

<u>Ratio</u>") rises above 70%, and immediately if it rises above 80%. *Id.* at ¶ 7.

II.     **The Liquidation of Gerro's Collateral**

4.      In March of 2020 the price of BTC dropped, and BlockFi notified Gerro that the

terms of the Loan Agreement required him to post additional BTC Collateral to avoid liquidation.

Gerro did not respond to BlockFi's margin call, and on March 12, 2020, BlockFi liquidated

approximately 399 BTC[3] to bring the loan into compliance with the required LTV Ratio. BlockFi communicated details of the liquidation to Gerro. A true and correct copy of the email communications from BlockFi to Gerro regarding the margin call and liquidation are attached hereto as **Exhibit B**.

5.      In stark contrast to his current position that BlockFi was not authorized to possess or liquidate his BTC, on March 13, 2020, Gerro thanked BlockFi for the update and stated: "I appreciate that I have an opportunity to remain a client of BlockFi." Ex. B at p.1. On March 15, 2020, Gerro emailed BlockFi that he "ha[d] an idea," and asked for a phone call "[s]ince solutions are time sensitive." *Id.* at p. 3. When BlockFi asked him to instead respond by email, he replied:

> My idea is to redeem the loan, since the average sale price for the collateral was approximately the same market price as BTC now. Blockfi would extend total credit of $2.275M to buy the approx. 400 BTC of sold collateral back off the open market. Then, I can possibly add more collateral to return the LTV ratio to 80%. Let me know if this works, or if you have any different ideas.

*Id.* at p. 3–4.

6.      BlockFi responded that the transaction could not be reversed unless additional collateral was pledged to ensure the LTV Ratio would be below 60% after a reversal. *Id.* at p. 4. BlockFi repeatedly emphasized the LTV Ratio requirement under the Loan Agreement and explained that "given all the volatility in the market" Gerro's request to pledge less collateral than required to bring the LTV Ratio below 60% would only result in collateral being "liquidated again." *Id.* at p. 5.

---

[3] The Gerro Claims assert that Gerro is entitled to 426 BTC, which appears to include not only the approximately 399 BTC BlockFi liquidated per the Agreement, but also the approximately 27 BTC that Gerro himself asked BlockFi to sell to pay of his Loan balance.

7.      Gerro requested a further liquidation to pay off his remaining Loan balance and asked that whatever Collateral remained after the payoff be transferred to his external wallet. Recognizing again that the price of BTC was constantly fluctuating, he asked for immediate confirmation after the trade. *Id.* at p. 6–7. On March 19, 2020, two days after BlockFi accommodated his own liquidation request, and the same day that Gerro removed his remaining BTC from BlockFi's platform to an external wallet, BlockFi provided a breakdown of several different "options available to reinstate some of [the] loan/collateral." *Id* at p.8. Gerro responded by indicating he was "in the due diligence phase with a traditional source of capital" and inquired about the formula BlockFi was using to determine the amount Gerro would need to pay in order to reinstate his loan. *Id.* at p. 9.

8.      On March 24, 2020, BlockFi provided the formula: "Reinstated Principal Balance minus Loan Available at 60% (based on reinstated collateral + price of BTC)." BlockFi also included an example. The example stated that BTC was subject to fluctuation and that BlockFi was "assuming" 426 BTC collateral at 60% LTV Ratio. *Id*. On April 27, 2020, 34 days *after* this communication, and 46 days *after* his Collateral had been liquidated, Gerro emailed BlockFi that he was "accept[ing] BlockFi's offer to reverse [his] collateral sales" and included his own calculations of the amount of BTC he was offering to pledge at the current BTC price. *Id*. BlockFi immediately responded that Gerro's proposed transaction would cause steep losses for BlockFi as the price of BTC was significantly higher than when the Collateral was sold. *Id*. BlockFi ended the email chain by explaining that BlockFi could work with Gerro on a new loan, but given the time elapsed, reversing prior liquidation and trades was not an option. *Id*. at p. 11.

### III.    Proceedings in California State Court and the Bankruptcy Court

9.      Gerro subsequently filed a series of frivolous lawsuits in California state court (*Gerro I*, *II*, and *III*, collectively, the "State Court Litigation")[4] alleging a variety of violations of California Financing Law (the "CFL"). The State Court Litigation was stayed at varying stages by the filing of these Chapter 11 Cases.[5]

10.     Early in these Chapter 11 Cases, Gerro filed a *Motion for Entry of an Order (i) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) with Respect to Certain Non-Core Proceedings; And (ii) Extending Time to File A Proof Of Claim (F.R.B.P. 3003(c)(3))* (the "Stay Relief Motion") [Docket No. 117] seeking to continue to litigate *Gerro I* in California state court. This Court denied the Stay Relief Motion on January 9, 2023.[6]

---

[4] *Gerro v. BlockFi*, Case No. 20BBCV00308 "*Gerro I*", *Gerro v. BlockFi*, Case No. 20STCV31493 "*Gerro II*", *Gerro v. Shultz*, Case No. 21STCP02023 "*Gerro III.*"

[5] For a summary of the State Court Litigation, *see Debtors' Response and Objection to Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (i) Granting Partial Relief From The Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) with Respect to Certain Non-Core Proceedings; And (ii) Extending Time To File A Proof Of Claim (F.R.B.P. 3003(c)(3))* (the "Response to Stay Relief Motion") [Docket No. 173, ¶¶ 13–17].

For the relevant pleadings filed in the State Court Litigation, *see Declaration of Richard Kanowitz in Support of Debtors' Response and Objection to Motion and Memorandum of Law in Support of Motion of George J. Gerro for Entry of an Order (i) Granting Partial Relief From The Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) with Respect to Certain Non-Core Proceedings; And (ii) Extending Time To File A Proof Of Claim (F.R.B.P. 3003(c)(3))* (the "Kanowitz Declaration"), [Docket No. 204, Exhibits A–K].

[6] *See Order Denying Motion of George J. Gerro for Entry of an Order (i) Granting Partial Relief from the Automatic Stay (11 U.S.C. §§ 362(d)(1)) and Discharge Injunction (11 U.S.C. § 524(a)) with Respect to Certain Non-Core Proceedings; And (ii) Extending Time to File A Proof Of Claim (F.R.B.P. 3003(c)(3))* (the "Order Denying Stay Relief Motion") [Docket No. 238].

11.     Gerro filed Claim Nos. 12386 and 15248 (the "Gerro Claims")[7] on March 24, 2023,

and March 29, 2023, respectively, asserting duplicative claims for the return of 426 BTC pledged

as Collateral pursuant to the Loan agreement.

12.     On June 14, 2023, the Debtors filed the Gerro Claim Objection [Docket No. 1069]

seeking disallowance of the Gerro Claims because they (i) are inconsistent with the Debtor's books

and records; (ii) the Debtors are not liable for the Gerro Claims; and (iii) the Gerro Claims are

duplicative.

13.     Gerro filed the Gerro Response on July 13, 2023—a sprawling 284 pages consisting

of: (i) a memorandum of law in response to the Gerro Claim Objection; (ii) a Cross-Motion to

estimate the Gerro Claims for voting purposes; (iii) a "Certification" by Gerro that repeatedly

expresses his opinions and conclusions of law (despite D.N.J. LBR 7007–1, which states that

certifications "must contain only statements of facts"); (iv) Gerro's 200+ page proof of claim; and

(v) a second memorandum of law which purports to "provide[] the statutory construction and

legislative history" of the definition of "finance lender" and "pawnbroker" under the CFL.

## IV.    Gerro's Arguments

14.     First, Gerro argues extensively that California state law applies to the analysis of

the Gerro Claims, notwithstanding that the Loan Agreement is governed by Delaware law. While

not conceding unenforceability of the governing law clause in the Loan Agreement, Gerro does

not have any colorable claims under the law of Delaware, California, or the Uniform Commercial

Code ("UCC") as adopted by either state. The result is the same regardless of choice of law, and

---

[7] Gerro concedes that he filed Claim #15248 as a duplicative claim because he was awaiting proof of receipt from the claims agent for Claim #12386 and was concerned about the impending bar date. He asserts that only Claim #12386 should be allowed. Gerro Response, p.8–9.

BlockFi accordingly takes no issue with the application of California law to the extent this Court

finds such application necessary in dispensing with Gerro's arguments.

15.      Second, Gerro asserts that BlockFi Lending LLC willfully violated the CFL (CAL.

FIN. CODE § 22750(a-b)) by using and possessing the BTC Collateral, in violation of its California

Finance Lender License (*see* CAL. FIN. CODE, § 22009) converting the proceeds of the BTC

Collateral to BlockFi's own use (CAL. COM. CODE § 9207(c)) and breaching its contract with Gerro

to redeem the loan. Gerro Response, p. 3, 56. Gerro devotes dozens of pages in his Response to

documenting correspondence between BlockFi and various employees of the Department of

Business Oversight (the "Department") that occurred *prior to* the Department's issuance of a

Finance Lender and Broker license to BlockFi (the "License"). Ignoring the ultimate response from

the Department, Gerro asserts that, because the Department's employees that initially responded

to BlockFi's License request appeared to be asserting that a finance lender may never take

possession of collateral, this means that BlockFi was on notice that it could not retain possession

of a borrower's digital assets. *Id.* at p. 4.

16.      Third, Gerro asserts that, in practice, BlockFi is an unlicensed pawnbroker who

received BTC as pledged property to secure the Loan repayment. He again reaches back into the

annals of history, citing to a section of California's Penal Code from 1872, a First Circuit case

from 1830, and an English case from 1606 to assert that BlockFi is actually a pawnbroker and

BTC is a good. Gerro Response, at p. 276–78.

17.      Fourth, and for the first time in this Court or in the State Court Litigation, Gerro

raises an additional argument that BlockFi is acting as an unlicensed commercial bank because

banks receive money as deposits and lend money secured by personal or real property. *Id.* at p.

281. His only authority for this assertion is an article from the New York Times. *Id.*

## Reply

Knowing BlockFi's liquidation was legally proper, Gerro made various strained,

tangential, and often contradictory arguments to try and cobble together a claim that he is somehow

entitled to 426 BTC. As detailed below, these arguments fail, and the Debtors respectfully request

the Court exercise its authority to disallow the Gerro Claims.

## I.     This Court Has Authority to Disallow the Gerro Claims in Their Entirety

18.    As an initial matter, by filing the Gerro Claims, Gerro has submitted to the

jurisdiction of this Court to adjudicate his prepetition claims against BlockFi. "Filing a

claim…triggers the process of 'allowance and disallowance of claims,' thereby subjecting [the

claimant] to the bankruptcy's courts equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44,

(1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 & n. 14 (1989)). Moreover,

when a proof of claim raises the same issues as a pre-petition state law claim, the filing of that

claim transforms a non-core proceeding into a core-proceeding. *Katchen v. Landy*, 382 U.S. 323

(1966) ("[A] creditor who offers a proof of claim and demands its allowance is bound by what is

judicially determined."); *In re Simpson*, No. 14-16173 (JNP), 2015 WL 6124004, at *5 (Bankr.

D.N.J. Oct. 16, 2015) (explaining when a claimant attaches his state court complaints to his proof

of claim, he raises the same issues as in the state court action); *see also*, *First Fid. Bank v. Hooker*

*Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833 (2d Cir. 1991) (creditors can be forced to choose

between filing a proof of claim and thereby losing its right to a jury trial, or forgoing filing a proof

of claim and preserving right to jury but risking loss of any distribution from estate).

19.     Gerro concedes this Court's jurisdiction in his Response, acknowledging that the allowance and disallowance of claims is a core proceeding and consenting to "this Court's entry of an order in this matter." Gerro Response, at p. 7. While the Gerro Claims seek the return of 426 BTC, the Gerro Response expressly states that the claims "exclude all interest, damages, fees, costs, and proceeds from Gerro's bitcoin collateral." Gerro Response, at p. 9. This Court's determination of the Gerro Claims, however, shall serve as a binding resolution of Gerro's prepetition claims against the Debtors as he reasserts his claims from the State Law Litigation and attaches the complaints. Any claim for amounts not asserted in a timely filed proof of claim are barred.

## II.     The Gerro Claims Lack Merit and Should be Disallowed.

20.     The Gerro Claims should be disallowed in their entirety. The various arguments advanced by Gerro are factually incorrect and without legal merit. Despite the myriad of issues raised in the Gerro Response, the Gerro Claims simply assert an invalid interest in the 426 BTC Collateral. BlockFi had a perfected security interest in the 426 BTC as Loan Collateral and properly exercised its right to hold the Collateral. BlockFi exercised its right to liquidate the BTC Collateral when Gerro failed to meet his margin call. Afterwards, Gerro even requested an additional liquidation to pay off the balance of his loan. The initial post-Collateral liquidation discussions between BlockFi and Gerro were just that—discussions. Gerro, a sophisticated party licensed to practice law, knows as well as this Court that no legally binding post-liquidation agreement to reinstate the Loan or reverse the liquidation was entered into between the parties.[8]

---

[8] "The existence of a contract under California law requires four essential elements: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration." *Fleming v. Oliphant Fin., LLC*, 88 Cal. App. 5th 13, 21 (Cal. Ct. App. 1st Dist. 2023). Moreover, California law concerning contracts parallels Delaware law, both placing an emphasis on the party's intent to be bound to any contract. *Id.* at 22. All the required elements were met

### A.    BlockFi's Liquidation of Gerro's Loan Collateral Was Proper

21.    Gerro, on three separate occasions, knowingly entered into agreements with BlockFi that explicitly detailed BlockFi's rights to the BTC Collateral pledged by Gerro, as well as the conditions under which BlockFi could liquidate the Collateral. BlockFi did not control the price of BTC, and Gerro himself repeatedly recognized that the price fluctuated, sometimes drastically. Market conditions, combined with Gerro's failure to meet the margin call, placed Gerro's Loan into default and led BlockFi to enforce the terms of the Loan Agreement. Gerro recognized the liquidation was proper, and his litigious steps taken afterward have amounted to nothing more than baseless allegations, forcing BlockFi to incur unnecessary legal and administrative expenses pre- and post-bankruptcy. Gerro cannot now seek a windfall in the form of the 426 BTC, currently worth over $12 million USD[9], when he is not a creditor of these estates.

### B.    BlockFi Was Properly Licensed by the State of California.

22.    Gerro's other arguments attached to the Gerro Claims can easily be dismissed. Gerro's assertion that § 22009 of the CFL prohibits a finance lender to take possession of collateral requires an interpretation that the phrase "may include" actually means "shall only include." His pleadings in the State Court litigation and the Gerro Response repeatedly include citations to the same set of cases, despite the fact that these cases lack any analysis of what a finance lender may

---

with respect to the formation of the Loan Agreement. In contrast, none of the required elements were met with respect to Gerro's reversal request, nor was there any intent on BlockFi's part to be bound to these preliminary negotiations. The negotiations died, and any potential for reversal died with them. "When two parties, under no compulsion to do so, engage in negotiations to form or modify a contract, neither party has any obligation to continue negotiating or to do so in good faith." *Copeland v. Baskin Robins U.S.A.*, 96 Cal. App. 4th 1251, 1260 (Cal. App. 2d Dist. 2002).

[9]  The price of BTC when the market opened on August 9, 2023 was $29,790.96 USD. *See* https://finance.yahoo.com/quote/BTC-USD/history/.

do under the CFL, both because they predate the CFL and because the entities in question were personal property brokers, not finance lenders.[10]

23.     Despite his lengthy focus on the initial, pre-license communications between the Department and BlockFi, Gerro neglects to address that BlockFi responded to the Department through counsel retained to advise the company on CFL, both in a letter to the Department and in a request for an interpretive opinion from the Commissioner of Business Oversight (the "<u>Commissioner</u>"), seeking clarification on the employee's statements. BlockFi sought this additional clarification as the broad assertion that a finance lender may never hold assets of California borrowers as collateral for loans is absurd on its face to anyone with even a rudimentary knowledge of finance and lending practices.

24.     BlockFi's counsel, Charles Washburn ("<u>Washburn</u>"), submitted a declaration under penalty of perjury (the "<u>Washburn Declaration</u>") in *Gerro II* in which he explained that, contrary to Gerro's accusations BlockFi "modified its representation [about what it would do with borrower's collateral] in an attempt to obtain" the License [Gerro Response, p. 41], the Department was aware at all times of BlockFi's intention to hold cryptocurrency as security for loans.[11] Washburn Declaration, ¶¶ 4–9. A true and correct copy of the Washburn Declaration is attached hereto as **<u>Exhibit C</u>**. The Washburn Declaration also clarifies that the Department advised Washburn that (i) it agreed with BlockFi's analysis of CFL § 22009, (ii) made no requests that BlockFi change its' business plan, and (iii) declined to issue a formal interpretive opinion as the

---

[10] *See Ex parte Stephan*, 170 Cal. 48, 148 P. 196 (1915); *W. Pico Furniture Co. v. Pac. Fin. Loans*, 2 Cal. 3d 594, 469 P.2d 665 (1970); *Carter v. Seaboard Fin. Co.*, 33 Cal. 2d 564, 570, 203 P.2d 758 (1949).

[11] *See Declaration of Charles E. Washburn, Jr. Re: Supplemental Reply Brief of Brief Defendants BlockFi Lending, LLC and Blockfi, Inc. In Support of Forum Non Conveniens Motion and Demurrer, Gerro II*, March 23, 2021.

issuance of the License to BlockFi would be evidence of the Department's approval of BlockFi's business plan. Ex. C at ¶¶ 7–10.

25.    Jan Lynn Owen ("<u>Owen</u>"), the Commissioner of the Department during the time that BlockFi's License was issued, also submitted a declaration under penalty of perjury (the "<u>Owen Declaration</u>") in *Gerro II*.[12] A true and correct copy of the declaration is attached as **<u>Exhibit D</u>**. Owen confirms that:

> The business practice of holding and using collateral-including the rehypothecation of that collateral- is common both in California and throughout the United States in connection with secured lendings. As Commissioner, I was required to become intimately familiar with…the CFL (including section 22009) as well as the Uniform/California Commercial Code, and the argument that the holding or use of collateral by a finance lender is somehow inconsistent with either of these laws is incorrect. Indeed, a rule to the contrary-that finance lenders were somehow not permitted to hold or use collateral securing loans-would not only be contrary to established California law, it would significantly and detrimentally hamper lending activities…throughout the State. Accordingly, during my tenure as Commissioner, the [Department] granted finance lender licenses to businesses planning to hold and/or use collateral securing loans, including but not limited to licenses which I approved as…Commissioner.

Ex. D at ¶ 6.

26.    Finally, in its Tentative Decision on Demurrers to Petition for Writ of Mandate in *Gerro III* (the "<u>*Gerro III* Notice of Ruling</u>," later adopted by the court as its final order), the Superior Court of California, County of Los Angeles, states the following regarding Gerro's analysis of the statutory construction of § 22009:

> Petitioner contends that, as defined by section 22009, "a finance lender does not retain use or possession of personal property securing its loans." (Oppo. 7-8.) However, the statutory language upon which Petitioner relies is **not mandatory in nature** (i.e., "shall include"), but rather permissive ("may include"). Section 22009 **does not clearly or explicitly prohibit a finance lender from using or possessing collateral.** Petitioner has not developed an argument based on the

---

[12] *See Declaration of Jan Lynn Owen Re: Supplemental Reply Brief of Brief Defendants BlockFi Lending, LLC and Blockfi, Inc. In Support of Forum Non Conveniens Motion and Demurrer, Gerro II*, March 23, 2021.

statutory scheme as a whole that a finance lender cannot, in any circumstance, use or possess the personal property that secures its loan. Petitioner does not submit or request judicial notice of any legislative history that supports his interpretation of section 22009. Thus, even if there was some ambiguity in section 22009 (which Petitioner does not identify), Petitioner has not provided the court extrinsic aids that could suggest Respondent illegally issued a license to BlockFi. Respondent [the Department], which has authority for issuing finance lender licenses, may also be entitled to deference in his interpretation of section 22009.

*Gerro III* Notice of Ruling, p. 11–12 (emphasis added). A true and correct copy of the *Gerro III*

Notice of Ruling is attached hereto as **Exhibit E**.

### C.      BlockFi is Not an Unlicensed Pawnbroker, or A Pawnbroker at All.

27.      To be classified as a pawnbroker, an entity must actually receive "goods, including motor vehicles." CAL. FIN. CODE. § 21000. While this section does not specifically define "goods," the California Commercial Code states that "'[g]oods means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale…" CAL. COMM. CODE § 2105.

28.      BTC is not a "good," but rather "a form of digital currency based on mathematical algorithms that is not controlled by any country, bank, or individual." *United States v. Costanzo*, 956 F.3d 1088, 1089 (9th Cir. 2020). Virtual currency is therefore appropriately classified under the UCC as a "general intangible," defined as "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. **The term includes payment intangibles** and software." CAL. COMM. CODE § 9102(a)(42) (emphasis added).

14

#### D. BlockFi is Not an Unlicensed Commercial Bank

29.     Like the flawed pawnbroker assertion, BlockFi is not an unlicensed commercial bank. Gerro cites to no case law to support the idea that a lender that takes collateral as security for a loan is a commercial bank and must seek to obtain a license as such.

30.     Despite Gerro's myriad attempts to mischaracterize BlockFi and misconstrue the statutory scheme of California regulatory laws, Gerro fails to articulate how his arguments result in any valid claim to 426 BTC. The Department issued a License to BlockFi as a finance lender, fully aware of its intention to hold and use collateral pledged by borrowers. BlockFi acted properly within the confines of the Loan Agreement, and Gerro's assertions neither entitle him to rewind the clock nor receive a distribution from the BlockFi estate.

### III.    The Cross-Motion to Estimate Gerro's Claims is Unnecessary

31.     Gerro's Cross-Motion to estimate is currently scheduled to be heard simultaneously with the Gerro Claim Objection, the adjudication of which will determine whether Gerro has an allowed claim for all purposes. As such, the Cross-Motion will be mooted by this Court's decision on the Gerro Claim Objection.

32.     In the event the hearing on the Gerro Claim Objection is adjourned to a later date, BlockFi requests that the Court estimate the Gerro Claims at $0 pending the outcome of the Gerro Claim Objection. Congress has given the bankruptcy courts broad discretion to estimate claims, and the Court may do so "using whatever method is best suited to the particular contingencies at issue." *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135, 137 n. 9 (3d Cir. 1982). Based on the facts and circumstances at issue here, Gerro has no claim and therefore the Gerro Claims should be estimated at $0.00.

## **Conclusion**

**WHEREFORE**, the Debtors respectfully request entry of an order disallowing the Gerro

Claims and denying and/or mooting the Cross Motion to estimate.

Respectfully Submitted,

Dated: August 10, 2023                                    /s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

16

# EXHIBIT A

BlockFi Loan No. 41725c18

# LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (this "**Agreement**") is made on _2/11/2020_, by and between George Gerro
_____,
an individual, residing at _____,
█████████████████████ _____
_____
("**Borrower**") and **BlockFi Lending LLC**, with its principal place of business located at **150 Broadway, 19th Floor, New York, NY 10038** ("**Lender**").

1.    **The Loan.** Upon the terms and subject to the conditions set forth in this Agreement, Lender agrees to make a single loan to Borrower in the principal;

two million, two hundred and seventy five thousand dollars

dollars ($ 2275000.00 ) (the "**Loan**") on the date all of the terms and conditions to making such Loan have been satisfied in Lender's sole discretion (the "**Closing Date**"). Upon disbursement of the Loan proceeds, Lender shall collect an origination fee equal to _0.00%_ % of the principal sum of the Loan (the "**Loan Origination Fee**"), which is fully earned by Lender on the date it is collected. Lender shall deduct the Loan Origination Fee from the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. This is a closed-end loan. Amounts repaid in respect of the Loan may not be reborrowed. The indebtedness of Borrower to Lender on account of the Loan (**"Indebtedness"**) includes the Loan, the Loan Origination Fee, advances, debts, expense reimbursement, fees, liabilities, and obligations (whether or not such amounts are then required or contingent, or are liquidated or determinable) at any time owing by Borrower to Lender, of any kind or nature, present or future, whether or not evidenced by any note, agreement or other instrument including, without limitation, all principal, interest (including interest accruing at the then applicable rate provided herein after the Maturity Date (as defined below) and interest accruing at the then applicable rate provided herein after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), fees, charges, expenses, attorneys' fees and any other sum chargeable to Borrower under any of the Related Documents (as defined below) to the extent permitted by applicable law. Capitalized terms not otherwise defined in this Agreement shall have the meanings provided by the Uniform Commercial Code as in effect in the State of Delaware ("**UCC**") to the extent such terms are defined therein.

2.    **Related Documents**. This Agreement and such other agreements, certificates, instruments, guaranties, authorizations or other documents executed to further, permit, effect or promote any purpose set forth in this Agreement, as such may be amended, restated, supplemented or otherwise modified from time to time (collectively with this Agreement, the "**Related Documents**"), including, without limitation, any UCC-1 financing statements naming Borrower as debtor and Lender as the secured party (the "**UCC-1 Financing Statement**"), and any other security agreement relating to the Collateral, memorialize the terms and conditions pursuant to which Lender is willing to provide the Loan. Borrower understands and agrees that this Agreement and the other Related Documents shall apply to the Loan and the Indebtedness, including, without limitation, the granting, renewing or extending of the Loan as provided herein.

3.    **Repayment Terms**. Borrower agrees to repay the Loan in installments as set forth below, provided that any principal balance and any unpaid accrued interest thereon shall be due and payable not later than _2021-02-12_ (the "**Maturity Date**"). All payments of principal and interest and other sums due hereunder shall be made in immediately available funds to the Lender at such account or place as the Lender may specify for such purpose by written notice to Borrower from time to time. Borrower agrees that Lender's internal records shall, absent manifest error, serve for all purposes as conclusive evidence of the outstanding principal balance of loans, as well as the amount of interest, fees and charges that may be owed to Lender at any time. Lender may apply Borrower's payments in any manner permitted by applicable law, but generally shall apply payments first to interest then due, then to any outstanding fees, charges or other expenses, and then to principal.

DocuSign Envelope ID: 2BB02350-D85E-42DA-AA54-9A5A9E09BD23

BlockFi Loan No. _41725c18_

(a)     **Interest.**  The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be _9.75%_ %.  All interest accrued hereunder shall be calculated on a simple interest basis.  Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each.  If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable with such interest upon demand by Lender and absent such demand, as otherwise provided herein.[1]

(b)     **Interest Only Payments**. Until the Maturity Date, Borrower agrees to make payments of interest accrued on the outstanding principal balance of the Loan. The first payment will be due one month after the date of this agreement and every month thereafter (for example, if the agreement is signed on January 5th, the first payment will be due on February 5th, and subsequent payments will be due on the 5th of each month).  Borrower's first payment may be higher depending on the actual funding date of the loan, and the amount of interest payable may vary in certain instances such as a payment due date change.[2]

(c)     **Final Maturity Date Payment**. Borrower agrees to pay the entire principal amount (which is inclusive of the Loan Origination Fee) and all accrued and unpaid interest at the rate expressed herein on the Maturity Date, unless earlier accelerated pursuant to the terms and conditions of this Agreement, or the other Related Documents.

(d)     **Prepayments**. Borrower may prepay the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.[3]

(e)     **Late Payments**. To the extent permitted under applicable law, Borrower agrees that if any payment pursuant to Section 3(b) or Section 3(c) is not made within ten (10) days of the due date, (i) Borrower will be charged a late charge of fifteen dollars ($15.00) or five percent 5.00% of the amount of the past due payment, whichever is greater; and (ii) Lender may liquidate a portion of the Collateral in an amount equal to any late payment and corresponding late charge.

4.     **Conditions to Lender's Obligations**.  Lender's obligation to advance funds under this Agreement shall be subject to the satisfaction of all of the conditions set forth in this Agreement and the Related Documents, including, without limitation, the following specific conditions precedent:

(a)     **Related Documents.** Borrower shall electronically execute all Related Documents, in form and substance acceptable to Lender.

(b)     **Representations and Warranties.** The representations and warranties set forth in this Agreement and the other Related Documents are true and correct in all material respects; provided, however, that those representations and warranties expressly referring to another specific date shall be true and correct in all material respects as of such date.

(c)     **No Event of Default.** There shall not exist at the time of the advance, and after giving effect thereto, a condition which would constitute an Event of Default under this Agreement.

---

[1] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your interest rate definition.

[2] Unless you are a resident of the state of Illinois, in which case, payments will be fully-amortizing. Please see, "Appendix B: Loan Disclosures," at the end of this agreement for more details. If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please disregard this section.

[3] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your Prepayments definition.

BlockFi Loan No. <u>41725c18</u>

**Collateral.** Borrower shall have transferred the Collateral into Lender's digital asset depository account at Gemini Trust Company, LLC ("**Gemini**" or the "**Depository**"), deposit address ███████████ (such account or any other account at the Depository to which Lender may transfer the Collateral, the "**Depository Account**"). If Borrower has a cryptocurrency account with Lender, Borrower authorizes Lender to initiate a transfer of collateral to the above deposit address. Lender may change the location of the Depository Account without notice to Borrower. Borrower agrees that Lender may, for its own account, pledge and repledge from time to time, without notice to the Borrower, either separately or in common with other such cryptocurrency, any or all of the Collateral and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral. The parties agree that the holding of cryptocurrencies through the Depository constitutes the use of reasonable care with respect to the custody and preservation of the Collateral.

(d)    **Priority.** Lender shall have actual possession of, and a first priority security interest in, the Collateral.

Notwithstanding the above, Borrower's failure to meet any of the conditions set forth in this <u>Section 4</u> shall not provide any basis for Borrower to contest the enforceability of the Loan.

5.    **Grant of Security Interest in Collateral**. For valuable consideration, the adequacy and receipt of which is hereby acknowledged, Borrower hereby:

(a)    pledges, assigns, transfers and delivers to Lender, and grants to Lender a continuing and unconditional first priority security interest in all of Borrower's present and future rights, title and interest in the following (collectively referred to as the "**Collateral**") as security for the payment and performance of the Indebtedness:

(i)    the Depository Account;

(ii)    all cryptocurrency now or in the future held in, on deposit in or otherwise allocated to the Depository Account (including, without limitation, any cryptocurrency transferred to the Depository Account after the date hereof by the Borrower pursuant to <u>Section 7</u> or otherwise);

(iii)    any other cryptocurrency now or in the future issued with respect to any of the foregoing cryptocurrency as a result of a fork or other event that results in the holders of cryptocurrency receiving additional or replacement cryptocurrency (whether or not such other cryptocurrency is held in, on deposit in or otherwise allocated to the Depository Account);

(iv)    ~~441.750        BTC~~; 441.85 BTC

(v)    all rights to receive delivery of or withdraw any of the foregoing cryptocurrency from the Depository and all rights against the Depository with respect to the Depository Account, any of the foregoing cryptocurrency, and the proceeds thereof; and

(vi)    all proceeds of the foregoing.

(b)    agrees that such security interest granted by Borrower to Lender constitutes a valid, first priority security interest in the Collateral, and will constitute a valid, first priority security interest in later-acquired Collateral. Notwithstanding any termination of this Agreement, Lender's security interest in the Collateral shall remain in effect for so long as any Indebtedness remains outstanding under this Agreement or any of the Related Documents.

(c)    agrees that Lender has the rights stated in this Agreement with respect to the Collateral, in

DocuSign Envelope ID: 2BB03350-DB5E-42DA-AA5A-9A59BE09BB23

addition to all other rights which Lender may have by law.

(d)     authorizes Lender at any time and from time to time, at Borrower's expense, to file in any jurisdiction any financing statements and amendments that: (i) name the Collateral as collateral thereunder, regardless of whether any particular Collateral falls within the scope of the UCC; (ii) contain any other information required by the UCC for sufficiency or filing office acceptance, including organization identification numbers; and (iii) contain such language as Lender determines helpful in protecting or preserving rights against third parties. Borrower ratifies any such filings made prior to the date hereof.

(e)     acknowledges and agrees that the obligations of Borrower under this Agreement shall be full recourse obligations of Borrower and that Borrower is and shall remain personally liable to Lender for the payment in full of all Indebtedness and performance of all obligations hereunder.

6.     **Borrower's Representations, Warranties and Covenants**. To induce Lender to enter into this Agreement and to make the Loan, Borrower hereby makes the following representations, warranties and covenants to Lender:

(a)     With respect to the Collateral, Borrower will, at all times, maintain a loan to value ratio where the outstanding principal balance of the Loan is less than or equal to seventy percent (70.0%) of the market value of the Collateral in the Depository Account calculated as either (i) the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (ii) the market value determined by Lender in its reasonable discretion (the "**Required Loan to Value Ratio**").

(b)     Except for the security interest in the Collateral granted by Borrower to Lender under this Agreement, Borrower is the sole, legal and equitable owner of the Collateral and no other security agreement, financing statement, or other security instrument covering the Collateral exists.

(c)     Borrower has rights in or the power to transfer the Collateral, and its title to the Collateral is free and clear of liens, adverse claims, and restrictions on transfer or pledge, other than those created by this Agreement or the Related Documents.

(d)     There are no actions, suits, litigation or proceedings, at law or in equity, pending by or against Borrower before any court, administrative agency, or arbitrator.

(e)     Borrower is, and at all times prior to the Maturity Date will be, in compliance with all applicable federal and state laws, regulations and ordinances.

(f)     Borrower will not sell, dispose or otherwise transfer the Collateral or any interest in the Collateral without the prior written consent from Lender.

(g)     Borrower will not create or allow any other security interest or lien on the Collateral, other than those created by this Agreement or the Related Documents.

(h)     Upon Lender's request, Borrower will execute any financing statement or other document necessary to perfect or otherwise record Lender's security interest in the Collateral.

(i)     Borrower will notify Lender in writing prior to making any change in Borrower's: (i) residence, if such Borrower is an individual or sole proprietorship, (ii) principal place of business, if such Borrower is a business entity that is created without any state filings, or (iii) state of organization, if such Borrower is a business entity that is created by state filings.

(j)     Borrower will promptly pay all taxes and assessments due on the Collateral.

BlockFi Loan No. 41725c18

(k)    Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock, and no proceeds of the Loan will be used to extend credit to others for the purpose of purchasing or carrying any margin stock.

(l)    Borrower is not, and is not required to be, registered as an "investment company" under the Investment Company Act of 1940, as amended. Borrower is not subject to regulation under any law that limits the ability to incur debt or which may otherwise render all or any portion of the obligations hereunder unenforceable.

(m)    Neither Borrower nor any of its affiliates or officers, directors, brokers or agents of Borrower or its affiliates (i) has violated any anti-terrorism laws, (ii) has engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering, (iii) is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("**OFAC**") or resides, is organized or chartered, or has a place of business in a country or territory subject to OFAC sanctions or embargo programs, (iv) is publicly identified as prohibited from doing business with the United States under the International Emergency Economic Powers Act, the Trading With the Enemy Act, or any other law, (v) conducts any business or engages in making or receiving any contribution of goods, services or money to or for the benefit of any person described in clauses (iii) or (iv) above, (vi) deals in, or otherwise engages in any transaction related to, any property or interests in property blocked pursuant to any anti-terrorism law or (vii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any anti-terrorism law.

(n)    Borrower will use the proceeds of the Loan solely for lawful purposes and all representations and warranties set forth in Borrower's credit application are true, correct and complete as of the date of such credit application and the date of this Agreement.

Each representation, warranty and covenant shall be made by Borrower as of the date of this Agreement and as of the date of any renewal, extension or modification of the Loan.

7.    **Valuation; Additional Collateral**. At any time, the market value of the Collateral in the Depository Account shall be either (a) the product of amount of Collateral times the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (b) the market value determined by Lender in its reasonable discretion (the "**Collateral Market Value**").  Borrower agrees that for purposes of calculating the Collateral Market Value Lender may take into account or disregard, at its sole discretion, the value of any new cryptocurrency held in the Depository Account created as the result of a forking or similar event that occurs after the date of this Agreement.

(a)    Upon notice by Lender to Borrower of the occurrence of a Trigger Event (hereinafter defined), Borrower shall promptly, and in no case later than seventy-two (72) hours after notice is provided, deposit additional Collateral into the Depository Account in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than fifty percent (50.0%) of the Collateral Market Value, provided that if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty percent (80.0%) of the Collateral Market Value (the "**Accelerated Maximum Loan to Value Ratio**"), Lender has the right to immediately liquidate Collateral in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than seventy percent (70.0%) of the Collateral Market Value.  Any Collateral liquidated by Lender is subject to a 3% processing fee.  Any additional Collateral posted by Borrower pursuant to this Section 7 must be based in the same kind of cryptocurrency as the original Collateral.

For purposes of this Section 7, (i) a "**Trigger Event**" means an event where Lender becomes aware that Borrower has failed to maintain the Required Loan to Value Ratio and the outstanding principal balance of the Loan is greater than seventy percent (70.0%) of the Collateral Market Value (the "**Maximum Loan to Value Ratio**"), and (ii) "**notice**

is provided" at the earliest of (x) the time Lender transmits an electronic communication to the Borrower of such Trigger Event, (y) the following day if sent by UPS, FedEx or other express mail overnight delivery, or (z) four (4) days from the date posted if sent by U.S. Mail, all in accordance with the Notices provisions of Section 25 hereof.

8.    **Default**. Borrower shall be in default under this Agreement upon the occurrence of, and continuation of any of the following events, after giving effect to any applicable cure period (each, an "**Event of Default**"):

(a)    Borrower's failure to timely pay any payment when due, including any payments owed pursuant to Section 3(b) and Section 7(a);

(b)    A Trigger Event occurs and is continuing and Borrower fails to deposit additional Collateral as required pursuant to Section 7;

(c)    The Accelerated Maximum Loan to Value Ratio is then in effect and has not been cured pursuant to Section 7;

(d)    If Borrower is an entity, the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any levy, garnishment, attachment or similar proceeding is instituted against any property of Borrower held by Lender;

(e)    Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any Collateral securing the Loan. However, the Event of Default specified in this Section 8(e) shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute;

(f)    If Borrower is an individual, Borrower dies or becomes incompetent;

(g)    Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, any Related Document or any other agreement between Borrower and Lender;

(h)    Any warranty, representation or statement made or furnished to Lender by Borrower, or on Borrower's behalf, under this Agreement or any Related Document is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter;

(i)    A material adverse change occurs in the financial condition of Borrower, or the ability of Borrower to repay the Loan or perform under this Agreement or any other Related Document is impaired;

(j)    A change or material development in applicable law (including case law) or regulation makes the Loan unlawful, unless grandfathered; or

(k)    A general suspension in buying, selling or owning Bitcoin or Ethereum by U.S. federal governmental authorities or a suspension in buying, selling or owning digital assets or cryptocurrencies on at least three (3) major exchanges (including Gemini, GDAX / Coinbase, Kraken, or Bitstamp), with such disruption lasting at least five (5) days.

Borrower agrees to promptly notify Lender in writing upon the occurrence of any of the events described in this Section 8, in no case later than two (2) business days after the occurrence of such event.

DocuSign Envelope ID: 2BB03350-DB7E-42DA-AA54-9A5A9E09FBD3

BlockFi Loan No. <u>41725c18</u>

9.     **Remedies**.

(a)     Upon an Event of Default and at any time thereafter, Lender may declare all amounts due under this Agreement immediately due and payable and shall have all the rights and remedies of a Lender under the UCC or as otherwise provided under applicable law. Without limiting the generality of the foregoing, Borrower expressly agrees that in any such default Lender may take immediate and exclusive possession of the Collateral and that Lender may liquidate the Collateral in whole or in part, at its sole discretion.

(b)     The proceeds of any sale or disposition of any part of the Collateral shall be distributed by Lender in the following order of priorities:

(i)     to Lender for any reasonable costs, fees, or expenses incurred in connection with the sale or disposition of the Collateral, including any legal, accounting or other fees incurred;

(ii)     to Lender in an amount equal to any outstanding and unpaid Indebtedness under this Agreement and the Related Documents; and

(iii)     any remaining surplus to Borrower, in accordance with the UCC or as a court of competent jurisdiction may direct.

10.     **Arbitration Provision.** If this contract is made to a business domiciled in the U.S. or Canada, please see Appendix A for the applicable Arbitration Provision.

11.     **Payment Failure**. Borrower agrees that Lender may assess a fee (a "**Payment Failure Fee**") of fifteen dollars (US$15.00) if any attempted payment by Borrower to Lender is not collected by Lender for any reason, including if wire transfers or checks are returned or fail due to insufficient funds in any account from which a payment is to be made to Lender. The amount of any Payment Failure Fee will be added to the balance due and payable on the relevant payment due date. Each business processing day in which a new non-payment occurs shall be deemed an "occurrence," with a maximum of one occurrence per day per deposit account, including single or multiple checks or drafts submitted or wire transfers attempted for payment on any payment due date.

12.     **Lender Appointed Attorney-In-Fact**. Borrower hereby appoints Lender Borrower's attorney-in-fact, with full authority in the place and stead of Borrower and in the name of Borrower or otherwise, from time to time during the continuance of an Event of Default to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement (but Lender shall not be obligated to and shall have no liability to Borrower or any third party for failure to do so or take action). This appointment, being coupled with an interest, shall be irrevocable. Borrower hereby ratifies all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof.

13.     **Security Interest Absolute**. To the extent permitted by law, Borrower hereby waives demand, notice, protest, notice of acceptance of this Agreement, Collateral received or delivered and all other demands and notices of any description. To the extent permitted by law, all rights of Lender and liens and security interests hereunder, and all Indebtedness of Borrower hereunder, shall be absolute and unconditional irrespective of:

(a)     any illegality or lack of validity or enforceability of any Indebtedness or any related agreement or instrument;

(b)     any change in the time, place or manner of payment of, or in any other term of, the Indebtedness, or any amendment or other modification of this Agreement or any other agreement, including any increase in the Indebtedness resulting from any extension of additional credit or otherwise;

(c)     any taking, exchange, substitution, release, impairment or non-perfection of any Collateral

DocuSign Envelope ID: 2BB03350-DB5E-42DA-AA54-9A5A9E09F023

or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Indebtedness;

   (d) any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Indebtedness;

   (e) any default, failure or delay, willful or otherwise, in the payment of the Indebtedness;

   (f) any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, Borrower against Lender; or

   (g) any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Loan or any existence of or reliance on any representation by Lender that might vary the risk of Borrower or otherwise operate as a defense available to, or a legal or equitable discharge of, Borrower or any guarantor or surety.

  14. **Survival of Representations and Warranties**. Borrower understands and agrees that in making this Loan, Lender is relying on all representations, warranties and covenants made by Borrower in this Agreement, the Related Documents and in any certificate or other instrument delivered by Borrower to Lender under this Agreement. Such Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the execution of this Agreement and the funding of the advance, shall be continuing in nature, and shall remain in full force and effect until such time as all of Borrower's obligations under this Agreement shall be fully satisfied, or until this Agreement shall be terminated in the manner provided herein, whichever is the last to occur.

  15. **Account Authorization**. In order to satisfy Borrower's obligations under this Agreement, Borrower expressly authorizes Lender to initiate an electronic funds transfer ("**EFT**") debit from Borrower's designated bank account (including any subsequent designated account identified to Lender by the Borrower) in accordance with the Authorization Agreement for Electronic Funds Transfer (EFT) Payments attached as <u>Exhibit A</u> (the "**EFT Authorization**") for all amounts due and owing by Borrower to Lender under this Agreement, including, without limitation, all payments to be made by Borrower pursuant to <u>Section 3</u> of this Agreement. In connection with such payments, Borrower further agrees to complete the EFT Authorization. Borrower authorizes Lender to resubmit any EFT debit authorized by Borrower that is returned for insufficient or uncollected funds, except as otherwise provided by NACHA – The Electronic Payment Association's EFT rules or applicable law.

  16. **Cost of Collection**. To the extent permitted by law, Borrower agrees to pay all costs and expenses, including collection expenses, court costs, and reasonable attorneys' fees, incurred by Lender in the collection or enforcement of this Agreement. Borrower also agrees to pay any and all withholding taxes applicable to the Collateral, including any withholding taxes on any amounts so paid and, upon written request by Lender, shall furnish Lender with evidence of payment thereof.

  17. **Termination**. This Agreement shall terminate upon the payment in full of all Indebtedness and performance of all obligations hereunder. At such time, Lender's sole obligations shall be to direct the Depository to transfer the remaining Collateral in the Depository Account to Borrower, at a wallet address provided by Borrower to Lender, and to authorize Borrower to terminate any UCC financing statements filed by Lender against Borrower with respect to the Collateral.

  18. **Binding Effect**. All representations, warranties, covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender. Any such assignment in violation of this Section 18 shall be null and void.

DocuSign Envelope ID: 2B803350-D85E-42DA-AA54-9A58DE09C923

BlockFi Loan No. 41725c18

19.    **Caption Headings**. Caption headings in this Agreement and the Related Documents are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement or the Related Documents.

20.    **Cumulative Rights; Non-Exercise**. Lender's rights under this Agreement are cumulative, and shall not be construed as exclusive of each other unless otherwise required by law. The non-exercise by Lender of any rights or remedies under this Agreement shall not constitute a waiver thereof in that or any subsequent instance.

21.    **Waiver**. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower shall constitute a waiver of any of Lender's rights or of the Borrower's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

22.    **Entire Agreement; Integration**. This Agreement and the other Related Documents constitute the entire agreement among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. Each Related Document, and any exhibit, schedule or similar addition to this Agreement or any Related Document, is hereby incorporated into this Agreement by this reference as though fully set forth herein.

23.    **Severability**. If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

24.    **Usury Savings Clause**. Lender and Borrower intend to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof, Lender and Borrower stipulate and agree that none of the terms and provisions contained in the Loan Documents shall ever be construed to create a contract to pay for the use, forbearance or detention of money or interest in excess of the maximum amount of interest (including all charges and fees) permitted to be charged by applicable law, from time to time.

25.    **Notices**. Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, delivered by overnight delivery service, or via electronic mail, addressed as follows:

If to Lender:

BlockFi Lending LLC
150 Broadway, 19th Floor
New York, NY 10038
support@blockfi.com

If to Borrower:
George Gerro

BlockFi Loan No. <u>41725c18</u>

Either party may change such addresses from time to time by providing notice as set forth above.

26.    **USA Patriot Act Notice**. Lender hereby notifies Borrower that, pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

27.    **Credit Report and Other Authorizations**. Borrower authorizes Lender, its agents and representatives and any credit reporting agency engaged by Lender, to (a) investigate any references given or any other statements or data obtained from or about Borrower or any guarantor for the purpose of this Loan Agreement, (b) obtain consumer and business credit reports on Borrower and any guarantor, (c) contact personal and business references provided by Borrower, at any time now or for so long as any Indebtedness remains unpaid, and (d) share information regarding Borrower's performance under this Agreement with affiliates and unaffiliated third parties.

28.    **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days and not business days.

29.    **Amendment**. This Agreement and the Related Documents constitute the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration, amendment, modification, termination, discharge or waiver of any provision of this Agreement or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration, amendment, modification, termination, discharge or waiver. Any such alteration, amendment, modification, termination, discharge or waiver shall be effective only for the specific purpose for which given.

30.    **Bankruptcy**. The rights and priorities set forth in this Agreement shall remain binding irrespective of the terms of any plan of reorganization in any proceeding commenced by or against Borrower under any provision of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended, and any successor statute (the "**Bankruptcy Code**") or under any other federal or state bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other similar relief, and all converted or succeeding cases in respect thereof or other provisions of the Bankruptcy Code or any similar federal or state statute.

31.    **Governing Law; Acceptable Forums; Waiver of Jury Trial**.  EXCEPT     FOR     THE ARBITRATION PROVISION, WHERE APPLICABLE, WHICH SHALL BE GOVERNED BY FEDERAL LAW, THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS. BORROWER UNDERSTANDS THAT BORROWER'S AGREEING TO THE APPLICABILITY OF DELAWARE LAW AND VENUE ARE A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THIS AGREEMENT. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Lender so elects, be instituted in any court sitting in New Castle County, Delaware, (the "**Acceptable Forums**").  Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum. Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement or any Related Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).

32.    **Facsimile Acceptance**. This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. The exchange of copies of this Agreement and of signature

DocuSign Envelope ID: 2BB03350-DB5E-42DA-AA54-9AE29E09BD23

BlockFi Loan No. <u>41725c18</u>

pages by facsimile transmission (whether directly from one facsimile device to another by means of a dial-up connection or whether mediated by the worldwide web), by e-mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

33.     **Military Lending Act.** The Military Lending Act provides protections for certain members of the Armed Forces and their dependents ("**Covered Borrowers**"). The provisions of this section apply to Covered Borrowers. Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36%. This rate must include, as applicable to the credit transaction or account: (a) the costs associated with credit insurance premiums; (b) fees for ancillary products sold in connection with the credit transaction; (c) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (d) any participation fee charged (other than certain participation fees for a credit card account). Before signing this Agreement, in order to hear important disclosures and payment information about this Agreement, you may call 1-646-779-9688.

34.     **Transferable Record.** Borrower expressly agrees that this Agreement is a "transferable record" as defined in applicable law relating to electronic transactions and that it may be created, authenticated, stored, transmitted and transferred in a manner consistent with and permitted by such applicable law.

35.     **Loan Transferability**. Borrower expressly agrees and acknowledges that Lender may assign this Agreement and the Related Documents, or any of Lender's rights under this Agreement or the Related Documents, in whole or in part at any time. Borrower further understands, acknowledges and agrees that Lender or another third party may further sell, assign or transfer this Agreement, the Related Documents and all associated documents and information related to this Agreement and the Related Documents without Borrower's consent or notice to Borrower.

**[The remainder of this page intentionally left blank.]**

DocuSign Envelope ID: 2B803250-D95E-42DA-AA54-9A5A9E09B023

**BlockFi Loan No.** <u>41725c18</u>

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first written above.

**BORROWER**

By: *George Gerro*
Name: George Gerro

**LENDER**

BlockFi Lending LLC, a Delaware limited liability company

By: _____
Name: Flori Marquez
Title: VP of Operations

Signature Page to Loan and Security Agreement

BlockFi Loan No. <u>41725c18</u>

**Please review and confirm the information below. Pay close attention and ensure the "Funding Currency" is accurate. Note that if funding your loan in Stablecoin, funds must be sent to a wallet that supports the specified currency or funds may be permanently lost. BlockFi will not be responsible for any errors arising from an incorrectly specified Stablecoin currency or Destination Wallet Address.**

## Funding Currency

Your loan will be funded in                USD Wire
*(If you would like to be funded in Stablecoin, please skip to the "Stablecoin" selection below)*

## Bank Wires

Beneficiary Name                George Gerro

Beneficiary Address             ███████████████████████

                                ███████████████████████████████

*(Please ensure the Name and Address match that associated with your Bank, otherwise funds may be delayed)*

## US Bank Information

Bank Account # (USA)            ██████████

Wire Capable Routing # (USA)    ██████████

## Non-US Bank Information

IBAN (only required for Non-USA Wires)

SWIFT / BIC (only required for Non-USA Wires)

## Stablecoin

Destination Wallet Address
*(Please ensure that the Destination Wallet Address and Stablecoin Currency above are correct. Funds sent to an incorrect address may be permanently lost. BlockFi will not be responsible for any errors arising from an incorrectly specified Stablecoin currency or Destination Wallet Address)*

BlockFi Loan No. <u>41725c18</u>

**Lender**

BlockFi Lending LLC
150 Broadway
19th Floor
New York, NY 10038

**Borrower**

George Gerro



United States of America

---

### TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid when you have made all scheduled payments |
| 9.75% | 221812.50 | 2275000.00 | 2496812.56 |

Your payment schedule will be as follows:

| Number of payments | Amount | When payments are due |
|---|---|---|
| 12 | 18484.38 | First payment is due on 2020-03-12 , and each subsequent payment is due monthly thereafter on the same day of each month |
| 1 | 2275000.00 | Last payment is due on 2021-02-12 |

**Security**: You are giving a security interest in the following collateral:

 441.85 BTC

**Late charges:** If your payment arrives more than 10 days after the date on it is due, you may be charged a late fee equal to the greater of 5.00% of the past due payment or $8.

**Prepayment policy:** Borrower may prepay the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.

**See your Loan and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, collateral and termination matters.**

**BlockFi Loan No.** 41725c18

Itemization of Amount Financed of $ 2275000.00

| Amount given to you directly | Amount paid to others on your behalf: |
|---|---|
| ~~2275000.00~~  $141,731.12 | Loan ID: 105f77a0 -  $651,391.21 |
|  | Loan ID: f202e284 - $1,481,877.67 |
| Amount paid on your account | Prepaid finance charge to BlockFi Lending LLC |
| 0.00 | 0.00 |

The payment amounts disclosed in the payment schedule are calculated on the assumption that you will make all payments on the applicable payment due date and assume, for purposes of this disclosure, that all months have 30 days.  Please note that monthly loan payments are made on an "interest-only" basis until the final payment is due. This means that the actual amount of a monthly loan payment may increase when you make a payment after the payment due date or decrease when you make a payment before the payment due date. The payment amount will also vary based on the actual days in any given month.

DocuSign Envelope ID: 2B803350-D85E-42DA-AA54-9A5A9E09BB23

BlockFi Loan No. <u>41725c18</u>

Rev. Aug. 2018

| **FACTS** | **WHAT DOES BLOCKFI DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information.  Federal law gives consumers the right to limit some but not all sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br>▪ Social Security number and income<br>▪ account balances and payment history<br>▪ credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| **How?** | All financial companies need to share customers' personal information to run their everyday business.  In the section below, we list the reasons financial companies can share their customers' personal information; the reasons BlockFi chooses to share; and whether you can limit this sharing. |
|---|---|

| **Reasons we can share your personal information** | **Does BlockFi share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

DocuSign Envelope ID: 2B809350-D85E-42DA-AA54-9A549E09E023

**BlockFi Loan No.** <u>41725c18</u>

| Questions? | 646-779-9688 |
|---|---|

| **Who we are** | |
|---|---|
| **Who is providing this notice?** | BlockFi |

| **What we do** | |
|---|---|
| **How does BlockFi protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does BlockFi collect my personal information?** | We collect your personal information, for example, when you<br>■ apply for a loan or give us your contact information<br>■ pay your bills or give us your income information<br>■ provide employment information<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes— information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| **Definitions** | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *BlockFi does not share with our affiliates* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *BlockFi does not share with nonaffiliates so they can market to you* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *BlockFi doesn't jointly market* |

DocuSign Envelope ID: 2BB0936D-D85E-42DA-AA5A-9A5A9E09BD23

BlockFi Loan No. <u>41725c18</u>

## APPENDIX A: BULLET LOANS

**Interest.** The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be the rate stated above in section 3(a) and in your loan offer on your client dashboard. All interest accrued hereunder shall be calculated on a front-loaded basis. Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each. Upon disbursement of the Loan proceeds, Lender shall collect an interest payment equal to the aforementioned rate times the principal sum of the Loan, prorated for the loan's term. All interest due is fully earned by Lender on the date it is collected. Lender shall deduct the all interest due from the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable with such interest upon demand by Lender and absent such demand, as otherwise provided herein.

**Prepayments.** Borrower may prepay the outstanding principal at any time, subject to an adjustment to include an origination fee in lieu of prepaid interest. There is no additional charge for prepaying principal ahead of the Maturity Date. Prior to prepayment, the Borrower must give the Lender 5 business day notice. Interest payments made at origination will not be reimbursed.

**Arbitration Provision.**

(a)       In the event that any Dispute (as hereinafter defined) cannot be resolved through a discussion between Borrower and Lender (individually "party" and collectively "parties"), either party may demand that such Dispute be submitted to arbitration, which (if demanded) shall be the exclusive, final, and binding means for resolving such Dispute; provided, this arbitration provision shall not prevent the parties from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations of this agreement for which either party may obtain provisional relief pending a decision on the merits by the arbitrator. A "Dispute" is a claim or controversy of every kind and nature between Borrower and Lender, including, but not limited to: (i) all claims or controversies arising out of or relating to any aspect of the relationship between the parties hereto, regardless of legal basis or theory; (ii) all claims or controversies involving the interpretation, construction, performance or nonperformance, enforcement, or breach of this agreement; and (iii) all claims or controversies that may arise after the termination of this agreement. This arbitration provision is intended to be broadly interpreted, and the term "Dispute" shall have the broadest meaning possible. Any party may demand arbitration in writing by notice to the other party.

(b)       Any such arbitration shall be conducted under the Commercial Dispute Resolution Rules of the American Arbitration Association ("AAA"), except as modified herein. Alternatively, upon both parties' consent, another arbitration association and its rules may be used. The arbitration proceedings shall be before a single neutral arbitrator who shall be an attorney, retired judge, or arbitrator experienced in commercial finance. The arbitrator shall be registered and in good standing with an arbitration association. The arbitrators shall apply applicable statutes of limitation and rules of privilege. Except as otherwise provided herein, the arbitrator shall have authority to award any remedy or relief that a court of the State of Delaware or federal court located in the State of Delaware could grant in conformity to applicable law on the basis of claims actually made in the arbitration. . Any arbitration will be held in New York County, NY, which the parties agree is a convenient location. Any arbitration award shall be accompanied by a written statement containing a summary of the issues in controversy, a description of the award, and an explanation of the reasons for the award. The non-prevailing party shall pay to the prevailing party, to the extent not prohibited by law, all of the prevailing party's arbitration costs and expenses, including reasonable attorneys' fees, and the arbitrator shall award such in its decision. The arbitrator's award shall be final, and judgment may be entered upon such award by any court. All arbitration proceedings shall be confidential, and neither party shall disclose any information about the evidence produced by either party in the arbitration proceeding except as necessary in the course of a judicial, regulatory or arbitration proceeding, or as may be demanded by government authority; provided, before making any such disclosure the disclosing party shall give the other party reasonable advance written notice and an opportunity to prevent the disclosure.

DocuSign Envelope ID: 2B609360-D85E-42DA-AA5A-9A5A9E09FD23

(c)      No class action arbitration may be ordered under this arbitration provision (this is referred to in the next sentence as the "class waiver").  If any part of this arbitration provision is found to be unenforceable, except for the class waiver, the rest shall be enforceable; but if the class waiver is found to be unenforceable, then this entire arbitration provision shall be unenforceable.

(d)      Because the parties hereto operate in interstate commerce, this Arbitration Provision shall be governed by the Federal Arbitration Act, as will any actions to compel, enforce, vacate, or confirm proceedings, awards, or orders of the arbitrator.  This arbitration provision shall, with respect to such dispute, survive the termination or expiration of this agreement.  Except for the enforceability of the arbitration provision discussed above, nothing in this arbitration provision shall be deemed to give the arbitrators any authority, power, or right to alter, change, amend, modify, add to, or subtract from any of the provisions of this agreement.

## <u>APPENDIX B: LOAN DISCLOSURES</u>

BlockFi Lending LLC is required to comply with the following state-specific lending disclosures

(a)  IF YOU ARE A RESIDENT OF OHIO:

The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

(b)  IF YOU ARE A RESIDENT OF MICHIGAN:

In accordance with the Michigan Regulatory Loan Act, Michigan residents' origination fee will not exceed the lesser of 5% of the principal loan amount or $300.

(c)  IF YOU ARE A RESIDENT OF ILLINOIS:

In accordance with the Illinois Consumer Installment Loan Act, the repayment of this loan, at issuance, is scheduled to be in equal monthly installments with no balloon of principal at maturity. BlockFi does note that there will be no late fees applied as long as the customer pays the interest portion of their monthly payment.

(d)  IF YOU ARE A RESIDENT OF OREGON:

This agreement is governed by Oregon Law.

# EXHIBIT B



Jake Gargiulo <jake@blockfi.com>

## BlockFi Loan ID 41725c18 - Margin Liquidation

2 messages

---

**Jake Gargiulo** <jake@blockfi.com>                                          Thu, Mar 12, 2020 at 7:47 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>
Bcc: 5542880@bcc.hubspot.com

Hi,

As mentioned in our previous emails, due to the further price drop to and no action being taken, we had to sell your collateral against your loan as your loan was in Default.

Please see transaction details below:

Crypto Sold: -258.27229 BTC
Price: 5701.98
USD Raised: $1,472,643.00

| Loan IDs | Collateral | Pre-Liquidation Balance | | Post Liquidation | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | $2,275,000.21 | 441.85 | -258.27229 | $802,357.21 | 183.577706 |

Let me know if you have any questions moving forward.

Best,

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302



---

**George Gerro** <georgejgerro@gmail.com>                                          Fri, Mar 13, 2020 at 4:2
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Jake,

Thank you for the accounting below. Please provide another updated one. Excess collateral should be sent to 37BrJ1eYTebFadLbTQYMeiwxKcpDR6bp5q

Yesterday was a terrible day for me, but I will always believe in bitcoin.

Sincerely,

George Gerro
(818) 568-6380

On Mar 12, 2020, at 4:47 PM, Jake Gargiulo <jake@blockfi.com> wrote:

[Quoted text hidden]

Unless specifically indicated, this e-mail is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

Gmail - BlockFi Loan ID 41725c18 - Margin Liquidation                                                                                    8/1/20, 3:53 PM



George Gerro <georgejgerro@gmail.com>

## BlockFi Loan ID 41725c18 - Margin Liquidation
36 messages

---

**Jake Gargiulo** <jake@blockfi.com>                                                                    Fri, Mar 13, 2020 at 12:04 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

I hope this message finds you well. Given the recent market activity and your Loan being in Default, a liquidation was triggered on your Loan to cure your margin.

Please see transaction details below:

Crypto Sold: -81.1555 BTC
USD Raised: 386300.1962

| Loan IDs | Collateral | Pre-Liquidation | | Post Liquidation | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | 802357.2062 | 183.57771 | -81.1555 | 416057.01 | 102.4222026 |

Our backend and Risk Management systems have been updated and reflect this information. If your frontend dashboard does not reflect this information, it should be updated shortly.

You may notice that the price at the time of the automated sale yesterday is slightly different than the current price at this moment. This difference is a result of our loan portfolio as a whole and liquidity at the time of sale when the market dropped last night.

For BlockFi's view on current market conditions, please read this Blog Post written by our CEO Zac Prince.

Please email support@blockfi.com if you have any questions, and thank you for choosing BlockFi.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302



Unless specifically indicated, this e-mail is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

---

**George Gerro** <georgejgerro@gmail.com>                                                               Fri, Mar 13, 2020 at 1:06 PM
To: Jake Gargiulo <jake@blockfi.com>, support@blockfi.com
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Blockfi,

Thank you for this update.  Please disregard any previous requests for a return of remaining collateral.  I was under the mistaken impression that the loan was fully paid off.

I appreciate that I have an opportunity to remain a client of Blockfi.

- George Gerro
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                                    Fri, Mar 13, 2020 at 1:20 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Support <support@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Absolutely George. It's been a tough ~36 hours for us all.

Please let us know if you have any questions, we'll try to respond as quickly as possible given the higher volume of inquiries.

Best,

Jake Gargiulo

Gmail - BlockFi Loan #241725c18 - Margin Liquidation                                    ...20, 3:53 PM

Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                    Fri, Mar 13, 2020 at 6:10 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi,

I hope this message finds you well. Given the recent market activity and your Loan being in Default, a liquidation was triggered on your Loan to cure your margin. Please note this liquidation was triggered late Thursday March 12th evening when LTV was above 80% and quickly deteriorating.

Please see transaction details below:

Crypto Sold: -59.1995 BTC
USD Raised: $275,336.87

|  |  | Pre-Liquidation | | Post Liquidation | | |
|---|---|---|---|---|---|---|
| Loan IDs | Collateral | Loan Balance | Collateral | Collateral Sold | Loan Balance | Collateral |
| 41725c18 | BTC | $416,057.01 | 102.4222 | -59.1995 | $140,720.14 | 43.2227 |

Our backend and Risk Management systems have been updated and reflect this information. If your frontend dashboard does not reflect this information, it should be updated shortly. If you have any questions about your loan in the interim please email support@blockfi.com.

You may notice that the price at the time of the automated sale yesterday is slightly different than the current price at this moment. This difference is a result of our loan portfolio as a whole and liquidity at the time of sale when the market dropped last night.

For BlockFi's view on current market conditions, please read this Blog Post written by our CEO Zac Prince.

Please email support@blockfi.com if you have any questions, and thank you for choosing BlockFi.

Best,

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
Mobile: 315.992.8551
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                    Fri, Mar 13, 2020 at 7:27 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Jake,

Please let me know the UTC time, exchanges or brokers, types of orders and its price, and how the bitcoins sold were attributable to my collateral specifically.  I am mainly concerned because price is one thousand dollars higher at this time.

Thank you. - George Gerro

[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                    Sat, Mar 14, 2020 at 7:03 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi George,

Our trading team was placing orders Thursday night when there was very little liquidity in the market, which affects the trading price available to us, especially when placing larger trades, such as yours.

We'll be reviewing these trades next week and seeing if there's anything we can do to ameliorate the negative experience you've had with us of having your collateral liquidated.

Best,

Gmail - BlockFi Admin #2 - 1.25.6/8 - Margin Liquidation                                                                      3/1/20, 3:53 PM

Flori

**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

   

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                            Sat, Mar 14, 2020 at 11:20 AM
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hello Flori,

Thank you.  I am appreciative of you and your team (especially Jake).  All of my experiences with Blockfi have been positive and meaningful.

I am open to any ideas.
- George
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                             Sun, Mar 15, 2020 at 3:24 PM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

I have an idea, and I would like to hear your's too. Since solutions are time sensitive, please call me at your convenience.

Sincerely,

George Gerro

(818) 568-6380

> On Mar 14, 2020, at 7:03 AM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                                                 Sun, Mar 15, 2020 at 5:15 PM
To: George Gerro <georgejgerro@gmail.com>

Hey George -

Please share over email if okay. Currently working on some internal projects with engineering so a call is not possible until tomorrow.

Best,

Flori

**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

    

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                             Sun, Mar 15, 2020 at 5:48 PM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

Thank you for responding on a Sunday.

My idea is to redeem the loan, since the average sale price for the collateral was approximately the same market price as BTC now.  Blockfi would extend total credit of $2.275M to buy the approx. 400 BTC of sold collateral back off the open market.  Then, I can possibly add more collateral to return the LTV ratio to 80%.  Let me know if this works, or if you have any different ideas.

- George
[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                                    Mon, Mar 16, 2020 at 7:59 AM
To: George Gerro <georgejgerro@gmail.com>

Hi George -

Unfortunately we cannot extend uncollateralized loans. We can reverse sales if there is enough collateral on the loan to maintain a healthy LTV after the trade reversal.

Let me know if I'm misunderstanding you.

Best,

Flori
**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

    

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                Mon, Mar 16, 2020 at 8:24 AM
To: Flori Marquez <flori@blockfi.com>

Hello Flori,

I think we are both referring to the same intuition.  Can you provide details of how this can work?

Sincerely,

George Gerro
(818) 568-6380

> On Mar 16, 2020, at 7:59 AM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                                    Mon, Mar 16, 2020 at 8:44 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>

Hi George,

You need to post enough collateral to bring the loan's LTV below 60% after the trade is reversed. I'm adding Jake who can help with the math on this.

Best,

Flori
**Flori Marquez**
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

    

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                Mon, Mar 16, 2020 at 8:52 AM

To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>

Hi Flori and Jake,

A 60% LTV is too high for me to comply. I need another option.

Sincerely,

George Gerro
(818) 568-6380
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                     Mon, Mar 16, 2020 at 9:29 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hey George,

Kindly noted. The Implied LTV if we reversed the trades would bring you to ~103% LTV at current levels, which is why we cannot do that.

In order to reverse trades, we would need you to bring LTV down to at least 60% which would require an additional ~317 BTC to be posted as collateral. The situation we're trying to avoid is reversing the trades, then you being right back in margin/liquidation again, and then you get liquidated again at an even lower price.

Again we appreciate all of your patience and understanding throughout these trying times, it's certainly been difficult for all. I hope you are staying safe.

Please let us know if you have any questions.

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                Mon, Mar 16, 2020 at 10:36 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hello Jake,

I appreciate your explanation. And yes, I am safe, but find the closure of restaurants to be inconvenient!

Regarding LTV, since the price has already fallen tremendously, less collateral is necessary (especially since we just sold into capitulation). If the price continues to fall, additional margin could be required on a graduated basis. Thus, I recommend additional collateral of $500k or 99 BTC at this time. Otherwise, please propose other alternatives such as a personal guarantee.

- George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                     Mon, Mar 16, 2020 at 10:54 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Agreed, it's the same in NYC.

Unfortunately that would put you at a ~84% LTV, which would be subject to immediate liquidation (the scenario we're trying to avoid). Unfortunately the best we can do is a 60% LTV at this time given all the volatility in the market. It would be rather pointless to reverse the trades just to get liquidated again.

Again we know these are difficult times and apologize for any inconvenience.

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                Mon, Mar 16, 2020 at 11:11 AM
To: Jake Gargiulo <jake@blockfi.com>

Gmail - BlockFi Loan #2-41426910 - Margin Liquidation                                              8/11/20, 3:53 PM

Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

Why do we need to reverse the trades, rather than buy at today's lower market prices?

Sincerely,

George Gerro
(818) 568-6380

> On Mar 16, 2020, at 10:54 AM, Jake Gargiulo <jake@blockfi.com> wrote:

[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                          Mon, Mar 16, 2020 at 12:30 PM
Cc: Flori Marquez <flori@blockfi.com>

Hello Flori,

You mentioned that you potentially have some ideas to ameliorate this situation.  Can you opine at this time?

- George
[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                              Mon, Mar 16, 2020 at 12:37 PM
To: George Gerro <georgejgerro@gmail.com>

Hi George,

Everything Jake said is accurate (and what I asked him to share with you, as I cannot respond as quickly). If you cannot post additional collateral as required, and we reverse the trades, we will end up liquidating more crypto at a lower price.

We can absolutely work to reverse trades, but only if it leaves the client with a healthy loan.

Let me know if that makes sense.

Best,

Flori
Flori Marquez
Co-Founder, VP of Operations

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

    

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                          Tue, Mar 17, 2020 at 12:47 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Sales <sales@blockfi.com>, Finance <finance@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello all,

This market crash has caused me to reevaluate my situation.  In the bitcoin ethos, I would like to once again hold my own UTXO's.

As such, please calculate the payoff amount for my loan.  Let the payoff reflect the fact that interest has only accrued for about one week, and that the loan balance has been substantially lower for the past few days.  Go ahead and payoff the loan with proceeds from the remaining collateral, send the remaining bitcoin to me, and confirm my bitcoin address telephonically.

Thank you - George Gerro
[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                              Tue, Mar 17, 2020 at 1:16 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Thanks, George. In order for BlockFi to proceed with liquidating collateral to payoff your loan, please complete the form attached here.

Flori Marquez
Co-Founder, VP of Operations

Gmail - BlockFi Loan #3471250 - Margin Liquidation                                                                                        8/10/20, 3:53 PM

646.779.9688
flori@blockfi.com
201 Montgomery Street, Suite 263
Jersey City, New Jersey 07302

    

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                Tue, Mar 17, 2020 at 1:54 PM
To: Flori Marquez <flori@blockfi.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi All,

The form did not request a withdrawal address.

Sincerely,

George Gerro
(818) 568-6380

> On Mar 17, 2020, at 1:16 PM, Flori Marquez <flori@blockfi.com> wrote:

[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                     Tue, Mar 17, 2020 at 1:59 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Hi George,

Once the payoff is processed, remaining collateral will automatically sweep to your Interest Account. From there you can submit a withdrawal request to an external wallet!

Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                Tue, Mar 17, 2020 at 2:04 PM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>, Sales <sales@blockfi.com>, Finance <finance@blockfi.com>

Since the price is fluctuating, please send me confirmation immediately after the trade.

Sincerely,

George Gerro
(818) 568-6380

> On Mar 17, 2020, at 1:59 PM, Jake Gargiulo <jake@blockfi.com> wrote:

[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                                Thu, Mar 19, 2020 at 11:45 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hello Jake,

At $7500 per BTC, I will be able to bring the LTV to 60% for 63.7 btc additional collateral. Please confirm the math. Thank you.

Sincerely,

George Gerro
(818) 568-6380
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                  Thu, Mar 19, 2020 at 2:50 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hey George,

Thank you so much for your patience and my apologies for the delay in getting this over to you. Flori caught me up to speed, and I wanted to provide the full breakdowns for you in terms of options available to reinstate some of your loan/collateral. I'm providing a breakdown of what would be needed to reverse all trades that occurred, as well as what is needed to reverse the final trade that occurred to fully payoff the loan. If there are any other iterations you would like to review, please let me know and I can calculate.

As it stands now, the loan is fully paid off backed by 0 collateral. As I'm sure you can imagine, the situation we must avoid is reversing any trades and then you being right back in Margin/Default territory which would trigger another liquidation, so we would require the reinstated balance be brought to a 60% LTV by either paying USD, or posting additional collateral.

| | Trades | | | |
|---|---|---|---|---|
| | **Loan ID** | **USD Raised** | **Crypto Sold** | **Asset** |
| All Trades | 41725c18 | $2,275,000.00 | 426.0741673 | BTC |
| Final Trade | 41725c18 | $140,720.14 | 27.4469 | BTC |

| | Reinstate - Post Reversal | | | |
|---|---|---|---|---|
| | **Loan ID** | **Principal Balance** | **Collateral Type** | **Collateral After Reversal** | **Implied LTV** |
| Reverse All Trades | 41725c18 | $2,275,000.00 | BTC | 426.07416732 | 90.65% |
| Reverse Final Trade | 41725c18 | $140,720.14 | BTC | 27.44687732 | 87.05% |

| | Option 1. Additional Collateral Required | | | |
|---|---|---|---|---|
| | **Loan ID** | **Principal Balance** | **Collateral Type** | **Collateral for 60% LTV** | **Need to Post** |
| Reverse All Trades | 41725c18 | $2,275,000.00 | BTC | 643.746 | 217.672 |
| Reverse Final Trade | 41725c18 | $140,720.14 | BTC | 39.819 | 12.372 |

| | Option 2. USD Payment Required | | | |
|---|---|---|---|---|
| | **Loan ID** | **Principal Balance** | **Reinstated Collateral** | **Loan Available at 60%** | **Payment Needed** |
| Reverse All Trades | 41725c18 | $2,275,000.00 | 426.07416732 | $1,505,746.11 | $769,253.89 |
| Reverse Final Trade | 41725c18 | $140,720.14 | 27.447 | $96,997.26 | $43,722.88 |

Please feel free to read through this and let myself and/or Flori know if you have any questions. Long story short, a payment of $769,253.89 would reinstate your loan to ~$1.5M backed by the full 426 BTC.

I hope you're staying safe out there in LA! My brother is down in San Diego and has been keeping me updated. The last week (feels like much longer) been wild to say the least.

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302



[Quoted text hidden]

--

**Jake Gargiulo**
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery St, 263, Jersey City NJ 07302



[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                             Tue, Mar 24, 2020 at 2:16 AM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello Jake,

Thank you very much for running the numbers.  I am in the due diligence phase with a traditional source of capital.

The multiple options you provided are helpful and appreciated.  What is the formula for calculating the USD principal pay-down?

- George

[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                    Tue, Mar 24, 2020 at 6:25 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

That's great news.

Formula is: Reinstated Principal Balance minus Loan Available at 60% (based on reinstated collateral + price of BTC).

Example 1.
Reinstated Principal Balance: $2,275,000.00
Reinstated Collateral: 426.07416732 BTC
Loan Available at 60% (subject to fluctuate slightly based on BTC, assuming 426 BTC collateral at 60% LTV): $1,505,746.11
Payment Needed: $2,275,000.00 - $1,505,746.11 = $769,253.89

That payment would bring new principal balance to $1,505,746.11 backed by 426 BTC.



Jake Gargiulo
Head of Client Service

jake@blockfi.com
Office: 646.779.9688
201 Montgomery Street, 263, Jersey City, NJ 07302

BlockFi

[Quoted text hidden]
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                              Mon, Apr 27, 2020 at 6:41 AM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Hello Jake and Flori,

I accept Blockfi's offer to reverse my collateral sales.

Reinstated Principal Balance ($2275000) - Loan Available at 60% ($1,968,120 i.e. (426 BTC * $7700 * 0.6)) = $306,880 loan pay down / $7700 per BTC = 39.854545 BTC

New principal balance of $1,968,120 backed by 426 BTC collateral, with a post-reversal LTV of 60%.

I will send the BTC today.  Please confirm Blockfi's bitcoin address.

Thank you, George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                                    Mon, Apr 27, 2020 at 7:36 AM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi George,

Followed up via text but wanted to follow up here as well. Reviewing with the Team and will revert back. To be transparent and manage your expectations, given that it's been well over a month since the liquidation (almost two) and BTC is much higher now, my outlook is doubtful. On initial review, there would be very steep losses (BlockFi sold over 400 BTC at ~$5k, so we would have to buy back BTC at current prices, incurring a loss of at least ~$1M, if not more) and those losses would very likely need to be added to your outstanding principal balance.

Again, just want to maintain full transparency. I will revert back to you as soon as possible.

                        Jake Gargiulo
                                           Head of Client Service

                                           jake@blockfi.com
                                           646.779.9688

[Quoted text hidden]

[Quoted text hidden]
For more information, please see BlockFi's Terms of Service.

---

**George Gerro** <georgejgerro@gmail.com>                                              Mon, Apr 27, 2020 at 7:52 AM
To: Jake Gargiulo <jake@blockfi.com>

Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

This is the first time I have heard anything about increasing the loan amount.  Please note the offer was affirmed on March 24th when the price of bitcoin was between $6400 and $6860 per coin.

I might be open to an increase in the loan, but only if the additional amount is non-recourse, excluded for purposes of calculating margin, and calculated using the difference between today's price and the March 24th price.

- George
[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                      Mon, Apr 27, 2020 at 8:17 AM
To: Jake Gargiulo <jake@blockfi.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi Jake,

I respectfully request Blockfi to honor the terms of the deal as agreed.  The $1M in losses are my losses, not Blockfi's.

The past month has been depressing for me.  Now, I can be made whole again.

- George
[Quoted text hidden]

---

**Jake Gargiulo** <jake@blockfi.com>                                           Mon, Apr 27, 2020 at 12:25 PM
To: George Gerro <georgejgerro@gmail.com>
Cc: Flori Marquez <flori@blockfi.com>

Hi George,

Thanks for your patience. I've spoken with our two founders and our Finance team to see if there is anything we can do, but unfortunately the offer expired in March after your Loan defaulted and cannot be extended.

If you'd like to originate a new loan, we can certainly work with you on that and can offer a discount from standard rack terms.

Please let me know if you have any questions.

Best,
Jake



Jake Gargiulo
Head of Client Service

jake@blockfi.com
646.779.9688

[Quoted text hidden]
  [Quoted text hidden]
    [Quoted text hidden]
      [Quoted text hidden]
        [Quoted text hidden]

Unless specifically indicated, this e-mail is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of BlockFi Inc or its

affiliated entities. This e-mail is meant only for the intended recipient of this transmission, and may contain trade secrets and strictly confidential information belonging to the sender, or material which is protected by the attorney-client

privilege and/or work product doctrine. It is unlawful for unauthorized individuals to review, use, copy, disclose, or disseminate confidential information. If you have received this e-mail in error, please notify the sender immediately by

telephone at (646) 779-9688 or by return email and promptly delete this message from your system.

For more information, please see BlockFi's Terms of Service.

[Quoted text hidden]

---

**George Gerro** <georgejgerro@gmail.com>                                      Mon, Apr 27, 2020 at 12:49 PM
To: Jake Gargiulo <jake@blockfi.com>, Flori Marquez <flori@blockfi.com>

Jake,

With all due respect, that is a ridiculous argument.  I recommend that you and the team take time to think it over.  I would prefer a constructive, cooperative, mutually beneficial solution.

Please do not force me to demand arbitration in this matter.  As you calculated earlier today, my damages are in excess of $1 million.

Respectfully, George
[Quoted text hidden]

---

**Flori Marquez** <flori@blockfi.com>                                          Mon, Apr 27, 2020 at 1:01 PM

To: George Gerro <georgejgerro@gmail.com>
Cc: Jake Gargiulo <jake@blockfi.com>, Zac Prince <zac@blockfi.com>

Hi George,

Unfortunately what Jake said was accurate. We had a window of time in which we were able to reverse trades, but as the original liquidations due to your loan's default happened over 45 days ago, and we've concluded our accounting for the quarter, there's not much more we can do here. As you know, even the original offer to reverse the trade is outside of the limitations of your loan agreement and something that I do not think any other lender does.

You're welcome to seek arbitration if you wish, but I would caution that as your loan defaulted, I'm not certain that it would lead to any other conclusion. What we can do is ensure you have favorable terms on any of our products going forward, although I understand that's not the same as having your position be reinstated. I am very sorry that we don't have another answer for you here. I've cc'd my cofounder, Zac, so that he's in the loop as well.

Sincerely,

Flori



**Flori Marquez**
Founder, SVP Operations

flori@blockfi.com
Twitter @founderflori

C | 646.389.0709
O | 646.779.9688

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT C

Electronically FILED by Superior Court of California, County of Los Angeles on 03/23/2021 02:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Hankins,Deputy Clerk

1  HAYNES AND BOONE, LLP
   David Clark/Bar No. 275204
2    david.clark@haynesboone.com
   Andrea Levenson/Bar No. 323926
3    andrea.levenson@haynesboone.com
   600 Anton Boulevard, Suite 700
4  Costa Mesa, CA  92626
   Telephone:    (949) 202-3000
5  Facsimile:    (949) 202-3001

6  Attorneys for Defendants
   BLOCKFI LENDING, LLC
7  BLOCKFI INC.

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10             **COUNTY OF LOS ANGELES, BURBANK COURTHOUSE**

11

12  GEORGE GERRO, an individual,          )   **CASE NO.: 20STCV31493**
                                          )
13             Plaintiff,                 )   **ASSIGNED FOR ALL PURPOSES TO:**
                                          )      **Honorable William D. Stewart**
14        vs.                             )      **Department A**
                                          )
15  BLOCKFI LENDING LLC, a Delaware       )   **DECLARATION OF CHARLES E.**
    limited liability company; SCRATCH    )   **WASHBURN, JR. RE: SUPPLEMENTAL**
16  SERVICES, LLC, a Delaware limited     )   **REPLY BRIEF OF BRIEF**
    liability company; and DOES 1 through )   **DEFENDANTS BLOCKFI LENDING,**
17  100,                                  )   **LLC AND BLOCKFI, INC. IN SUPPORT**
                                          )   **OF FORUM NON CONVENIENS**
18             Defendants.                )   **MOTION AND DEMURRER**
    _____ )

19

20

21                                            Hearing Date: April 8, 2021
                                              Time:          9:30 a.m.
22                                            Department:    A

23                                            *First Amended*
                                              *Complaint Filed: May 13, 2020*
24

25

26

27

28

───────────────────────────────────────────────────────

                **DECLARATION OF CHARLES E. WASHBURN JR.**

## DECLARATION OF CHARLES E. WASHBURN, JR.

I, CHARLES E. WASHBURN, JR., declare as follows:

1.   I am an attorney at law duly admitted to practice in the State of California and am a partner with the law firm of Manatt, Phelps & Phillips, LLP.  I have personal knowledge of the matters set forth herein and, if called upon to testify, I could and would testify competently thereto.

2.   I have practiced law in California for over 40 years, and the primary focus of my practice during my career has been the regulation of financial services.  A significant part of that practice has been advising clients regarding the California Financing Law (the "CFL"), including with respect to applying for licenses under that law.  That work has included interfacing with the application review staff as well as the legal staff of the California Department of Business Oversight (the "DBO") (which agency is now called the Department of Financial Protection and Innovation or "DFPI") when issues have arisen in connection with license applications.

3.   On or about March 15, 2018, BlockFi Lending LLC ("BlockFi") retained me to assist BlockFi in responding to a letter received by BlockFi from the DBO with respect to BlockFi's then pending application for Finance Lender and Broker licenses under the CFL.  My duties included corresponding and otherwise communicating directly with the DBO in connection with that letter in an effort to correct DBO application review staff's misunderstanding of the CFL so that the licenses would issue in accordance with the business plan disclosed in the original application.  .  Specifically, the letter sent by DBO staff included an incorrect preliminary statement that BlockFi was prohibited by the CFL from holding collateral for loans, including cryptocurrency as discussed in BlockFi's business plan included in its application.

4.   I have read the contention in plaintiff George Gerro's March 19, 2021 brief that the DBO was somehow unaware of BlockFi's  disclosed intention to hold (whether directly or through a third-party custodian) cryptocurrency as collateral for loans extended to California borrowers when the DBO issued BlockFi's Finance Lender and Broker licenses.  Mr. Gerro's assertion is incorrect.

5.  I personally communicated with the DBO on BlockFi's behalf with respect to the letter

BlockFi received from the DBO regarding its license application, including specifically the issue

raised by the DBO regarding the holding of collateral.  Those communications included e-mail

messages sent to application review staff and, when such staff advised that the issue would need

to be resolved with DBO legal staff, the submission to legal staff of the opinion request.

Throughout this process, I consistently made clear to the DBO that BlockFi intended to hold

cryptocurrency as collateral for the loans it issued, and indeed the DBO was well aware of that

business plan based on the issue being raised by the DBO itself in its letter to BlockFi.  For

example, on July 24, 2018, I sent an email to Alexander Nourafshan, Counsel, Financial

Institutions Division, DBO raising those exact issues.  A true and correct copy of the email chain

between myself and Mr. Nourafshan is attached hereto as **Exhibit A**.  At the time of that

correspondence, a lower-level application review staff member at the DBO had expressed the

view in the original deficiency letter (which, as I explain below, more senior personnel at the

DBO legal department later corrected) that BlockFi could not hold cryptocurrency as collateral

for loans.  Accordingly, in that email I specifically addressed the flaws in the DBO's preliminary

position, BlockFi's intent to hold cryptocurrency as collateral for loans, and CFL Section 22009.

I stated:

> As discussed in more detail in the opinion request, the position taken by the
> Department to-date that a licensee under the California Financing Law ("CFL")
> cannot hold collateral I respectfully believe is based on a clear misreading of
> vestigial language in Section 22009 of the CFL defining the term "finance
> lender," which hopefully you see as well.

I similarly informed the DBO in my July 24th email that the DBO had already granted a Finance

Lender license to BlockFi's competitor, Unchained Capital, Inc. ("Unchained"), and that

Unchained was performing "lending business in California and *is still holding crypto currency*

*as collateral in connection with those loans.*" (emphasis added).  In other words, I also informed

Mr. Nourafshan that BlockFi's competitor had already been licensed to perform the exact

business operations for which BlockFi was asking to be approved, including holding

cryptocurrency as collateral.

2

**DECLARATION OF CHARLES E. WASHBURN JR.**

6. In my correspondence and discussions with him, Mr. Nourafshan did not express any issues with BlockFi's intended business operations, including BlockFi's intent to hold cryptocurrency as collateral, in response to my emails and opinion request. Mr. Nourafshan also never expressed any possible distinction between BlockFi's operations and those of Unchained, for which the DBO had already granted a Finance Lender license.

7. On August 20, 2018 (after a few brief emails checking on the status of BlockFi's request for an opinion), Mr. Nourafshan called me and advised that BlockFi's Finance Lender and Broker license application had been approved. Mr. Nourafshan stated that BlockFi's opinion request "hit all the right notes" and explained that the DBO agreed with BlockFi's analysis of CFL Section 22009 and BlockFi's right under Section 22009 and the CFL to hold cryptocurrency as collateral for loans. Mr. Nourafshan also apologized for the delay in responding to the opinion request and granting the licenses and stated that BlockFi would receive the licenses in the mail in 7 to 10 days.

8. In particular, Mr. Nourafshan did not state that the disclosed business plan of BlockFi must change to eliminate holding of collateral as a condition to the licenses issuing. In my experience the DBO would not issue licenses to BlockFi if BlockFi's business plan as clearly disclosed to the DBO, including the holding of collateral, would violate the CFL.

9. Mr. Nourafshan also explained to me in our August 20th call that the DBO would not be issuing a formal opinion in response to our request, and that instead the DBO's agreement with BlockFi's position on CFL Section 22009 and its ability to hold cryptocurrency as collateral for loans would simply be evidenced by the granting of BlockFi's licenses. Thus, while I did not withdraw BlockFi's request for an interpretive opinion, the DBO elected not to issue one because it had decided to approve BlockFi's Finance Lender and Broker license application.

10. In this regard, I have reviewed the e-mail message from Miranda LeKander to Mr. Gerro attached as Exhibit 7 to his submission in which she states that in August 2018 I verbally withdrew my request for an opinion, which statement by Ms. LeKander should be clarified. As stated in the request for the opinion included in Exhibit 6 to Mr. Gerro's submission, as a routine matter I ask that the DBO legal staff contact me if it reaches a "preliminary" conclusion that it

3

will issue an adverse opinion and, in such event, extend to me the courtesy of allowing me to withdraw the opinion request. The DBO legal staff never reached a negative opinion with respect to the ability of a licensee to hold collateral, "preliminary" or otherwise, with respect to my request. Instead, DBO legal staff agreed that a licensee may hold collateral, a determination that was evidenced by the issuance of licenses to BlockFi when BlockFi had disclosed it would hold collateral. Because the goal of the request was for the licenses to issue, and with that goal achieved no formal opinion was then needed, I acquiesced in Mr. Nourafshan's desire to avoid DBO having to go to the trouble of issuing a formal opinion. My acceptance is likely what Ms. LeKander referred to as a withdrawal. But again, my agreement with the DBO's view that an opinion was no longer needed does not reflect any adverse determination made by DBO legal staff regarding the permissibility of holding collateral under the CFL.

11. To be clear, never in my correspondence or discussions with the DBO did I indicate that BlockFi somehow did not plan to hold cryptocurrency as collateral for loans it issued. To the contrary, I consistently made the DBO aware that BlockFi intended, as a licensed finance lender, to hold cryptocurrency as collateral (whether directly or through a third party), and that it was entitled to do so under any applicable statutes. (*See, e.g.*, Exhibit A, July 24th and July 26th emails to the DBO.) This, among other reasons, is why during my August 20th phone call with the DBO, Mr. Nourafshan expressly stated that the DBO agreed with BlockFi's position on CFL Section 22009 and BlockFi's right to hold cryptocurrency as collateral for loans.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 22rd day of March, 2021, at Manhattan Beach, California.

_____
CHARLES E. WASHBURN JR.

4

# EXHIBIT "A"

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Monday, August 20, 2018 2:15 PM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi


Hi Charles,


I will call in a few minutes.


Best,


Alex



Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e* alexander.nourafshan@dbo.ca.gov


**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Monday, August 20, 2018 2:12 PM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi


Thank you, Alex, and I am available any time this afternoon until 6:30 p.m., including now.


**Charles Washburn**

Partner

_____


**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Monday, August 20, 2018 1:20 PM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi

Hi Charles,

Sincere apologies for my delayed reply. Are you available this afternoon or anytime tomorrow to chat for a few minutes? Please let me know your availability for a brief phone call. Thanks!

Best,

Alex

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e*  alexander.nourafshan@dbo.ca.gov

---

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Thursday, August 16, 2018 2:24 PM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi

Alex,

Broker Manatt Confidential Financial Information

I thought I would check in on the status of management review of the opinion request, and also my question regarding whether you could share your view on the issue.  Thank you.

**Charles Washburn**

Partner

---

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Washburn, Charles
**Sent:** Thursday, July 26, 2018 5:05 PM
**To:** 'Nourafshan, Alexander@DBO'
**Subject:** RE: Confidential Treatment Re: BlockFi

I appreciate your prompt review of the request, and I also appreciate your conveying to management the urgency here.  Would you be able to share your view with me, which I would of course recognize is subject to management review and so is not binding on the Department?

**Charles Washburn**

Partner

---

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential
information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby
notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you
have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading
them or saving them to disk. Thank you.

---

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, July 26, 2018 4:35 PM
**To:** Washburn, Charles
**Subject:** Re: Confidential Treatment Re: BlockFi


Hi Charles,


I have completed my review and sent my analysis to management for approval. I am not sure when management review will
be completed, but I will send a note along requesting expedited review. Hopefully that will help speed the process along,
though I cannot provide any more specific timeline.


Best,


Alex


Alexander M. Nourafshan
Counsel, Financial Institutions Division
Department of Business Oversight

---

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Thursday, July 26, 2018 4:07:35 PM
**To:** Nourafshan, Alexander@DBO
**Subject:** RE: Confidential Treatment Re: BlockFi


I appreciate the quick response, Alex.  Again, due to the urgency of the request from the client's perspective,
can you give me a feel for when the review will be completed, and whether there is anything that can be done
to expedite the review?


**Charles Washburn**

Partner

---

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, July 26, 2018 4:07 PM
**To:** Washburn, Charles
**Subject:** Re: Confidential Treatment Re: BlockFi

Dear Charles,

Thank you for your email. We are still reviewing your request. I will let you know if we have any questions or can provide a more detailed update. Thank you for your patience.

Best,

Alex

Alexander M. Nourafshan
Counsel, Financial Institutions Division
Department of Business Oversight

---

**From:** Washburn, Charles <cwashburn@manatt.com>
**Sent:** Thursday, July 26, 2018 3:42:53 PM
**To:** Nourafshan, Alexander@DBO
**Subject:** FW: Confidential Treatment Re: BlockFi

Alex,

Sorry to bother you (and I got a bounce back to my message on Tuesday), but again I want to check in on the status of this request.  As noted below, the client has been placed at a severe disadvantage due to a competitor with a similar business that apparently is being allowed to operate under the CFL by the Department.  If the Department sees a distinction between the two operations, please let me know as soon as possible.

Chuck

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

_____

**From:** Washburn, Charles
**Sent:** Tuesday, July 24, 2018 10:57 AM
**To:** 'Nourafshan, Alexander@DBO'
**Subject:** RE: Confidential Treatment Re: BlockFi
**Importance:** High

CONFIDENTIAL

Alex,

I hope this message finds you well.

I am following up to check on the status of our request for an interpretive opinion, a copy of which request I have attached for ease of reference.  As you know, it was received by the Department on May 15.

As discussed in more detail in the opinion request, the position  taken by the Department to-date that a licensee under the California Financing Law ("CFL") cannot hold collateral I respectfully believe is based on a clear misreading of vestigial language in Section 22009 of the CFL defining the term "finance lender," which hopefully you see as well.

As also discussed in the request, this incorrect Department position is causing substantial harm to our client BlockFi Lending LLC.  In particular and as noted in the request for expedited treatment, I understand from the client that a competitor, Unchained Capital, Inc., was granted a CFL license by the Department (60DBO-78867) and based on the Department's web site that license is still active.  The client further advises that Unchained Capital is still doing a lending business in California and is still holding crypto currency as collateral in connection

with those loans, while at the same time BlockFi Lendingis unable to lend in California on similar terms with respect to holding collateral based on this Department position.

Thank you in advance for your assistance, and I would again be happy to discuss any questions you may have regarding the analysis.

Best regards,

Chuck

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, June 28, 2018 1:44 PM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi

Interpretive opinion requests generally take at least 60-90 days. I will do my best to provide any updates that I can.

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

_t_ (415) 263-8503 | _e_  alexander.nourafshan@dbo.ca.gov

**From:** Washburn, Charles [mailto:cwashburn@manatt.com]
**Sent:** Thursday, June 28, 2018 11:47 AM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi

Thank you, Alex.  Is it possible to give me an idea when the initial review may be completed?

**Charles Washburn**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Thursday, June 28, 2018 11:24 AM
**To:** Washburn, Charles
**Subject:** RE: Confidential Treatment Re: BlockFi

Hi Mr. Washburn,

Thank you for your email. Your request is currently under review. I will let you know if we have any further questions or need additional information.

Best,

Alex

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e*  alexander.nourafshan@dbo.ca.gov

---

**From:** Washburn, Charles [mailto:cwashburn@manatt.com]
**Sent:** Thursday, June 28, 2018 11:08 AM
**To:** Nourafshan, Alexander@DBO <alexander.nourafshan@dbo.ca.gov>
**Subject:** RE: Confidential Treatment Re: BlockFi

Alex,

I thought I would take the liberty of checking on the status of our request for an interpretive opinion, and reiterate my offer to discuss any questions you may have regarding our analysis.  Please let me know, and thank you.

Best regards,

Chuck

**Charles Washburn**

Partner

---

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372   **F** (310) 914-5761

cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Washburn, Charles
**Sent:** Friday, June 15, 2018 3:25 PM
**To:** 'Nourafshan, Alexander@DBO'
**Subject:** RE: Confidential Treatment Re: BlockFi


Thank you very much, Alex.  (I have yet to receive the letter sent by USPS, so I appreciate the PDF.)  Also, I would be happy to discuss with you the request for an interpretive opinion, including any questions you may have regarding the legal analysis.  Again, thank you, and have a good weekend.


**Charles Washburn**

Partner

───────────────────────

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA  90064

**D** (310) 312-4372  **F** (310) 914-5761


cwashburn@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** Nourafshan, Alexander@DBO [mailto:alexander.nourafshan@dbo.ca.gov]
**Sent:** Friday, June 15, 2018 3:20 PM
**To:** Washburn, Charles
**Subject:** Confidential Treatment Re: BlockFi


Dear Mr. Washburn,


A letter granting confidential treatment of your request regarding BlockFi Lending LLC was sent in the mail on Monday, June 11, 2018. Please find a copy of this letter attached. I will let you know if any additional information is needed in connection with this request.


Best regards,


Alex

Alexander M. Nourafshan

Counsel, Legal Division

Department of Business Oversight

*t* (415) 263-8503 | *e*  alexander.nourafshan@dbo.ca.gov

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Orange, State of California.  I am over the age of 18 and am not a party to the within action; my business address is 600 Anton Boulevard, Suite 700, Costa Mesa, California 92626.

On *March 23, 2021*, I served a true and correct copy of the document entitled: ***DECLARATION OF CHARLES E. WASHBURN, JR. RE SUPPLEMENTAL BRIEF RE MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY, THE ACTION ON THE GROUND OF FORUM NON CONVENIENS*** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, as indicated below and addressed as follows:

| | |
|---|---|
| John M. Gerro, Esq.<br>George J. Gerro, Esq.<br>Law Offices of Gerro & Gerro<br>530 S. Glenoaks Boulevard, Suite 200<br>Burbank, CA  91502<br>Telephone:  (818) 840-0000<br>E-Mail:      john@gerrolaw.com<br>              george@gerrolaw.com<br>*[Attorneys for Plaintiff]* | Scott J. Hyman, Esq.<br>Katherine Figueroa, Esq.<br>Severson & Werson<br>The Atrium, 19100 Von Karman Avenue<br>Suite 700<br>Irvine, CA 92612<br>Telephone: (949) 442-7110<br>E-Mail:      sjh@severson.com<br>              kf@severson.com<br>*[Attorneys for Defendant Scratch Services, LLC]* |

☐  **(By U.S. Mail)** I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit.  I caused such envelope, with postage thereon fully prepaid, to be placed in the United States Mail at Costa Mesa, California as indicated above.

☐  **(By Electronic Delivery)** Pursuant to C.C.P. § 1010.6, I served true and correct copies of the foregoing document by electronic delivery to the interested parties in this action as indicated above.

☒  **(By Express Delivery)** I served a true and correct copy, enclosed in sealed Fedex envelopes, for collection and for delivery marked for next day delivery in the ordinary course of business, addressed to the office of the addressees as indicated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on *March 23, 2021*, at Costa Mesa, California.

*Kelley L. Saunders*

_____
Kelley L. Saunders

# EXHIBIT D

Electronically FILED by Superior Court of California, County of Los Angeles on 03/29/2021 02:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Hankins,Deputy Clerk

HAYNES AND BOONE, LLP
David Clark/Bar No. 275204
  david.clark@haynesboone.com
Andrea Levenson/Bar No. 323926
  andrea.levenson@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, CA  92626
Telephone:     (949) 202-3000
Facsimile:      (949) 202-3001

Attorneys for Defendants
BLOCKFI LENDING LLC
BLOCKFI INC.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, BURBANK COURTHOUSE

| | |
|---|---|
| GEORGE GERRO, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>BLOCKFI LENDING LLC, a Delaware limited liability company; SCRATCH SERVICES, LLC, a Delaware limited liability company; and DOES 1 through 100,<br><br>        Defendants. | **CASE NO.: 20STCV31493**<br><br>**ASSIGNED FOR ALL PURPOSES TO:**<br>   **Honorable William D. Stewart**<br>   **Department A**<br><br>**DECLARATION OF JAN LYNN OWEN RE: SUPPLEMENTAL REPLY BRIEF OF BRIEF DEFENDANTS BLOCKFI LENDING, LLC AND BLOCKFI, INC. IN SUPPORT OF FORUM NON CONVENIENS MOTION AND DEMURRER** |

Hearing Date: April 8, 2021
Time:                9:30 a.m.
Department:    A

*First Amended*
*Complaint Filed: May 13, 2020*

---

DECLARATION OF CHARLES E. WASHBURN JR.

## DECLARATION OF JAN LYNN OWEN

I, JAN LYNN OWEN, declare as follows:

1. I am the former Commissioner of the Department of Business Oversight, and I am currently a senior advisor in the Financial Services Group at Manatt, Phelps & Phillips, LLP. I have personal knowledge of the matters set forth herein and, if called upon to testify, I could and would testify competently thereto.

2. In December 2011, I was appointed by Governor Edmund G. Brown Jr. to be the Commissioner of the California Department of Corporations. In July 2013, the Department of Corporations combined with the California Department of Financial Institutions to form the Department of Business Oversight (the "DBO," now called the Department of Financial Protection and Innovation, or "DFPI"). I therefore became the first Commissioner of the DBO when those two entities combined in 2013, and I remained Commissioner of the DBO until I left on May 31, 2019. I was therefore Commissioner of the DBO when BlockFi Lending, LLC ("BlockFi") applied for and was granted its Finance Lender and Broker License application in 2018, although I do not recall personally working on BlockFi's application.

3. As Governor Brown's appointment as Commissioner of the DBO, my responsibilities at the DBO included supervision of the entirety of the DBO's operations, including supervision of the DBO's processing and consideration of license applications in approximately 22 different areas of California law, including, without limitation, the California Financing Law ("CFL") (Division 9 of the California Financial Code. Specifically as to license applications, at times I would review those applications in order to monitor the DBO's application process generally and evaluate the performance of our agency as a whole and its individual employees. At other times, I would personally review individual applications and have the authority to make ultimate determinations on whether the DBO should grant or deny certain licenses.

1

1  4. Particularly given the size of California's economy and its significant influence well

2  outside California, my responsibilities as Commissioner included critical issues such as

3  ensuring that the DBO correctly applied the law when evaluating license applications as well

4  as considering the public policy issues when reviewing the practical impact of DBO

5  decisions inside California as well as nationwide. During my tenure as Commissioner of the

6  DBO, our agency licensed and chartered approximately 368,000 licensees, including many

7  thousands of finance lender licensees alone.

8  5. I have read the contention in plaintiff George Gerro's March 19, 2021 brief that as a

9  finance lender, BlockFi is somehow not permitted to hold or use cryptocurrency (or other

10  collateral) as security for the loans it gives to its borrowers. I have also read Mr. Gerro's

11  contention that by doing so, BlockFi is somehow acting as a pawnbroker rather than a

12  finance lender and should be licensed and regulated accordingly. Each of these contentions

13  is incorrect.

14  6. As for Mr. Gerro's first contention, during my tenure as Commissioner the DBO granted

15  many licenses to finance lenders whose planned business operations included the holding

16  and/or use of collateral that was being used to secure loans. The business practice of holding

17  and using collateral—including the rehypothecation of that collateral—is common both in

18  California and throughout the United States in connection with secured lending. As

19  Commissioner, I was required to become intimately familiar with California law including,

20  but not limited to, the CFL (including section 22009) as well as the Uniform/California

21  Commercial Code, and the argument that the holding or use of collateral by a finance lender

22  is somehow inconsistent with either of these laws is incorrect. Indeed, a rule to the contrary

23  —that finance lenders were somehow not permitted to hold or use collateral securing loans—

24  would not only be contrary to established California law, it would significantly and

25  detrimentally hamper lending activities and related business operations throughout the State.

26  Accordingly, during my tenure as Commissioner, the DBO granted finance lender licenses to

27  businesses planning to hold and/or use collateral securing loans, including but not limited to

28  licenses which I approved as DBO Commissioner.

2

**DECLARATION OF JAN LYNN OWEN**

7.  Mr. Gerro's pawnbroker assertions are likewise incorrect.  BlockFi's stated business operations—holding and/or using collateral in the form of cryptocurrency for secured loans, falls squarely under the umbrella of business activities performed by a finance lender licensed by the DBO.  Depending on the business model of any particular entity, finance lenders use a wide variety of collateral to secure loans, including traditional U.S. dollars, physical precious metals (which are typically vaulted with the lender or a third party custodian), stocks and other securities, and (more recently) cryptocurrency such as Bitcoin, Ethereum and Litecoin.  Among other instances, licensees may reasonably conclude that holding collateral is appropriate in situations where traditional collateral controls such as Uniform Commercial Code filings are insufficient to provide effective restrictions on permanent alienation and disposal of the collateral, for example with digital assets and cryptocurrency.  A finance lender license is the appropriate license in California for such operations, and the holding and use of these various types of collateral is not only consistent with California finance lender laws, but is also the standard commercial lending practice for finance lending on easily transferrable collateral.  A pawnbroker license is neither appropriate nor required.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 23rd day of March, 2021, at _Well St Sacramento_, California.

_Jan Lynn Owen_
JAN LYNN OWEN

3

DECLARATION OF JAN LYNN OWEN

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

     I am employed in the County of Orange, State of California.  I am over the age of 18 and

4

am not a party to the within action; my business address is 600 Anton Boulevard, Suite 700, Costa Mesa, California 92626.

5

     On ***March 23, 2021***, I served a true and correct copy of the document

6

entitled*: **DECLARATION OF JAN LYNN OWEN RE SUPPLEMENTAL BRIEF RE MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY, THE ACTION ON THE**

7

**GROUND OF FORUM NON CONVENIENS** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, as indicated below and addressed as

8

follows:

9

| John M. Gerro, Esq. | Scott J. Hyman, Esq. |
|---|---|
| George J. Gerro, Esq. | Katherine Figueroa, Esq. |
| Law Offices of Gerro & Gerro | Severson & Werson |
| 530 S. Glenoaks Boulevard, Suite 200 | The Atrium, 19100 Von Karman Avenue |
| Burbank, CA  91502 | Suite 700 |
| Telephone:  (818) 840-0000 | Irvine, CA 92612 |
| E-Mail:     john@gerrolaw.com | Telephone: (949) 442-7110 |
|      george@gerrolaw.com | E-Mail:     sjh@severson.com |
| *[Attorneys for Plaintiff]* |      kf@severson.com |
| | *[Attorneys for Defendant Scratch Services, LLC]* |

10

11

12

13

14

15

     ☐   **(By U.S. Mail)** I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I

16

am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit.  I caused such

17

envelope, with postage thereon fully prepaid, to be placed in the United States Mail at Costa Mesa, California as indicated above.

18

     ☐   **(By Electronic Delivery)** Pursuant to C.C.P. § 1010.6, I served true and correct copies of the foregoing document by electronic delivery to the interested parties in this action as

19

indicated above.

20

     ☒   **(By Express Delivery)** I served a true and correct copy, enclosed in sealed Fedex envelopes, for collection and for delivery marked for next day delivery in the ordinary course of

21

business, addressed to the office of the addressees as indicated above.

22

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on ***March 23, 2021***, at Costa Mesa, California.

23

24

*Kelley L. Saunders*

25

_____

Kelley L. Saunders

26

27

28

# EXHIBIT E

Electronically FILED by Superior Court of California, County of Los Angeles on 11/16/2021 12:34 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Panganiban,Deputy Clerk

1    HAYNES AND BOONE, LLP
     David Clark/Bar No. 275204
2      david.clark@haynesboone.com
     Marco A. Pulido/Bar No. 308074
3      marco.pulido@haynesboone.com
     600 Anton Boulevard, Suite 700
4    Costa Mesa, CA  92626
     Telephone:    (949) 202-3000
5    Facsimile:    (949) 202-3001

6    Attorneys for Real Parties in Interest
     BLOCKFI LENDING LLC; BLOCKFI
7    TRADING LLC and BLOCKFI INC.

8
                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
                 **COUNTY OF LOS ANGELES, STANLEY MOSK COURTHOUSE**
10

11
     GEORGE GERRO,                              )   **CASE NO.: 21STCP02023**
12                                              )
                    Petitioner,                 )
13                                              )   **ASSIGNED FOR ALL PURPOSES TO:**
             vs.                                )        **Honorable Mary H. Strobel**
14                                              )        **Department 82**
     Cristopher S. Shultz, as Commissioner of   )
15   Financial Protection and Innovation of the )   **NOTICE OF RULING ON DEMURRERS**
     State of California,                       )   **OF RESPONDENT CHRISTOPHER S.**
16                                              )   **SHULTZ AND REAL PARTIES IN**
                    Respondent.                 )   **INTEREST TO PETITIONER'S FIRST**
17   _____        )   **AMENDED PETITION FOR WRIT**
                                                )
18   BLOCKFI LENDING LLC, a Delaware            )
     limited liability company; BLOCKFI        )   Hearing Date:    November 16, 2021
19   TRADING LLC, a Delaware Limited           )   Time:            9:30 a.m.
     Liability Company; and BLOCKFI, INC., a   )   Department:      82
20   Delaware Corporation                       )
                                                )   *Amended Writ Petition Filed August 6, 2021*
21                  Real Parties in Interest.   )
                                                )
22   _____        )

23

24           **TO PETITIONER GEORGE GERRO AND TO HIS ATTORNEYS OF RECORD**

25   **HEREIN:**

26           **PLEASE TAKE NOTICE** that, on November 16, 2021, the hearing on the demurrers to

27   Petitioner George Gerro's ("Gerro") First Amended Petition for Writ (the "Petition") of

28   Respondent Christopher S. Shultz ("Shultz") and Real Parties in Interest BlockFi Lending LLC,

                                                1

1  BlockFi trading LLC, and BlockFi Inc. (collectively, "BlockFi") came on regularly for hearing

2  before the Honorable Mary H. Strobel in Department 82 of the above-entitled Court.  Mark D.

3  Erickson and David B. Clark appeared via LA Connect for BlockFi, Leanna C. Costantini

4  appeared via LA Connect for Shultz, and John Gerro and George Gerro appeared via LA

5  Connect for Gerro.

6          Following the oral argument of counsel, the Court adopted its Tentative Ruling as its

7  Final Ruling, sustaining the demurrers and granting Petitioner 20 days' leave to amend from the

8  date of this Notice.  A true and correct copy of the Court's Tentative Ruling is attached hereto as

9  Exhibit "A".

10

11  DATED:  November 16, 2021              HAYNES AND BOONE, LLP

12

13  By:_____
                                          David Clark
14                                        Attorneys for Real Parties in Interest
                                          BLOCKFI LENDING LLC; BLOCKFI
15                                        TRADING LLC and BLOCKFI INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          2

# EXHIBIT A

Español    Tiếng Việt    한국어    中文    հայերեն

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Search

| Home | Online Services | Forms, Filings & Files | Self-Help | Divisions | Jury | General Info |
|---|---|---|---|---|---|---|
| | Pay Fines, Search Records... | Forms, Filing Fees... | Self-Rep, Info, FAQs... | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA ... |

ONLINE SERVICES

# Tentative Rulings

## DEPARTMENT 82 LAW AND MOTION RULINGS
Hon. Mary H. Strobel

The clerk for Department 82 may be reached at (213) 893-0530.

## Case Number: 21STCP02023    Hearing Date: November 16, 2021    Dept: 82

*George J. Gerro,*

*v.*

*Christopher S. Shultz, as Commissioner of*

*Financial Protection and Innovation of the State*

*of California,*

Judge Mary Strobel

Hearing: November 16, 2021

21STCP02023

Tentative Decision on Demurrers to Petition for

Writ of Mandate: Sustained

Christopher S. Shultz, as Commissioner of the California Department of Financial Protection and Innovation ("Respondent" or "Commissioner") and Real Parties in Interest BlockFi Lending LLC, BlockFi Trading LLC, and BlockFi, Inc. (collectively, "Real Parties" or "BlockFi") generally demur to the petition for writ of mandate filed by Petitioner George J. Gerro ("Petitioner") for failure to state a cause of action.

**Judicial Notice**

-

Real Parties' RJN Exhibits A-E – Granted.

Petitioner's RJN Exhibits A-B – Granted.

-

<u>Background</u>

For purposes of demurrer, the following factual allegations from the petition are taken as true.  (See *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal. App. 4th 531, 538.)

Real Party BlockFi Lending, LLC ("BlockFi") "is a California Finance Lender and Broker (license no. 60DBO-81955, issued on Aug. 16, 2018) making loans, secured by its possession of Bitcoin, pursuant to the Commissioner's license."  (First Amended Petition ("FAP") ¶ 3.)

Petitioner "is a California resident who borrowed money from BlockFi for non-commercial purposes."  (Id. ¶ 141.)  BlockFi held Bitcoin purchased by Petitioner as collateral.  (See Id. ¶¶ 65-73 and Exh. 21.)

"Bitcoin is personal property that is capable of actual, constructive, or exclusive possession.  On the Bitcoin Network, no entity is able to unilaterally reverse a Bitcoin transaction.  If the private key (i.e. password) to Bitcoin is lost, copied, or stolen, then the corresponding Bitcoin may be permanently lost, transferred, or stolen.... Online Bitcoin markets never close.  Bitcoin has a very volatile market price.  There is evidence that Bitcoin prices are manipulated.  Unlike the stock market, Bitcoin markets do not temporarily pause to temper sudden declines.  Bitcoin's price is affected by highly leveraged (up to 125x leverage) Bitcoin-derivative markets.  The majority of Bitcoin-derivative trading volumes occur on websites, without domestic headquarters, that are subject to little or no oversight by United States regulators.  Due to the leverage and nascence of Bitcoin markets, the price of Bitcoin may significantly decline in the short-term as some Bitcoin traders are forced to sell during a Bitcoin price crash."  (Id. ¶¶ 7-17.)

Respondent "is responsible for regulating and issuing licenses to 'finance lenders,' as defined in Financial Code section 22009." (Id. ¶ 75.)  In February 2018, BlockFi applied to the Department of Financial Protection and Innovation ("Department") for a Finance Lender License.  (Id. ¶ 78.)  On August 16, 2018, Department licensed BlockFi as a finance lender pursuant to section 22009.  (Id. ¶ 128.)

"BlockFi secures its loans to Consumers by exercising dominion and control over the Consumers' Bitcoin as collateral securing BlockFi's loan (Collateral)."  (Id. ¶ 21; see generally Id. ¶¶ 19-73.)

"On March 12, 2020, the price of Bitcoin declined by more than Fifty Percent (50%) in one day. On or about that day, BlockFi claims that it liquidated about Nine-Tenths (9/10th's) of Petitioner's Collateral.  Petitioner is informed and believes, and on that basis alleges that, BlockFi liquidated many Consumers on or about March 12, 2020 in a mass foreclosure event."  (Id. ¶¶ 65-67.)

In this writ action, Petitioner seeks *inter alia* a writ of ordinary mandate directing Respondent to revoke or suspend the Finance Lender and Broker License No. 60DBO-81955 (License) issued on August 16, 2018, to BlockFi.  Petitioner alleges that Department's issuance of the license violated the Financial Code for reasons set forth at length in the petition and discussed below. (See Id. ¶¶ 74-140.)

Procedural History

On June 25, 2021, Petitioner filed the original petition for writ of mandate.  On August 6, 2021, Petitioner filed the first amended petition ("FAP").

On September 8 and 9, 2021, Respondent and Real Parties filed their demurrers and meet and confer declarations.  The court has received Petitioner's opposition to the demurrers, Respondent's reply, and Real Parties' reply.

Analysis

-

A demurrer tests the sufficiency of a pleading, and the grounds for a demurrer must appear on the face of the pleading or from judicially noticeable matters.  The demurrer admits all material facts properly pleaded.  (CCP 430.30(a); *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "A demurrer tests the pleadings alone and not the evidence or other extrinsic matters."  (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 747.)  The allegations in the petition must be liberally construed in favor of Petitioner on demurrer.  (*Mobil Oil Corp. v Exxon Corp.* (1986) 177 Cal.App.3d 942, 947.)  A demurrer accepts as true "all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact." (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal. App. 4th 531, 538.)

-

Judicial Review of Respondent's Official Acts Under CCP Section 1085

As Respondent acknowledges, "the California Financial Code provides limited judicial review" of his official acts.  (Resp. Dem.

14.)  Financial Code section 22718  states: "Every order, decision, license, or other official act of the commissioner is subject to judicial

review in accordance with law."[1]

Petitioner seeks judicial review of Respondent's issuance of a license in this action for ordinary mandate pursuant to CCP

section 1085.  There are two essential requirements to the issuance of an ordinary writ of mandate: (1) a clear, present and

ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the

performance of that duty.  (*California Assn. for Health Services at Home v. Department of Health Services* (2007) 148 Cal.App.4th 696,

704.)

Respondent contends that the petition "should be dismissed without leave to amend because it seeks to control the

Commissioner's discretion rather than enforce a clear, ministerial duty."  (Resp. Dem. 12.)  According to Respondent, the issuance of a

license to BlockFi was "wholly discretionary" and Petitioner has not alleged facts showing an unreasonable or arbitrary exercise of

such discretion.  (Id. at 12-13.)  Real Parties make a similar argument.  (RP Dem. 9-11.)

"Normally, mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a

particular manner. However, it will lie to correct abuses of discretion. In determining whether a public agency has abused its

discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom

of the agency's action, its determination must be upheld. A court must ask whether the public agency's action was arbitrary,

capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law

requires."  (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 654.)

"'On questions of law arising in mandate proceedings, [the court] exercise[s] independent judgment.' …. Interpretation of a

statute or regulation is a question of law." (*Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1251.)

As discussed further below, Petitioner contends that Respondent's issuance of a license to BlockFi was illegal and void because

BlockFi does not meet the definition of "finance lender" under section 22009.  If Respondent issued a license in a manner that violated

the law, as Petitioner contends, such official act could be subject to writ of ordinary mandate as an illegal and void act.  "An action in

ordinary mandamus is proper where … the claim is that an agency has failed to act as required by law." (*California Assn. for Health

Services at Home v. Department of Health Services* (2007) 148 Cal.App.4th 696, 705.)  In addition, if Respondent issued a license in a

manner that violated the law, such official act could be an arbitrary and capricious abuse of discretion.  In either case, judicial review

could be available under CCP section 1085.

Respondent and Real Parties cite Financial Code sections 22109 and 22714, which set forth Respondent's general authority to issue licenses and also to suspend or revoke licenses.  However, those statutes do not constrain a court in equity from issuing a writ of mandate should it be shown that Respondent issued a license that is illegal and void.[2] (See *Board of Trustees of Leland Stanford Junior University v. State Bd. of Equalization* (1934) 1 Cal.2d 784, 787 [Board of Equalization had legal duty to set aside liquor license that was prohibited by law and therefore "illegal and void"; court issued writ].)

The court does not sustain the demurers on the theory that the FAP improperly seeks to control Respondent's discretion.  However, judicial review under section 1085 is limited.   To allege a claim for writ of ordinary mandate, Petitioner must allege standing and also a ministerial duty owed by Respondent or an abuse of discretion by Respondent.  The court analyzes those issues below.

Standing

Respondent and Real Parties contend that Petitioner lacks standing to bring this writ action against BlockFi's license because "Petitioner's purported harm—the loss of his Bitcoin—will not be remedied even if BlockFi's finance lending license is suspended or revoked."  (Resp. Dem. 11.)

To have standing to seek a writ of mandate, a party must be "beneficially interested."  (CCP § 1086.) "A petitioner is beneficially interested if he or she has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large."  (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal. App. 4th 899, 913; accord *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796-97.) "This standard ... is equivalent to the federal 'injury in fact' test, which requires a party to prove by a preponderance of the evidence that it has suffered 'an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  (*Associated Builders and Contractors, Inc. v. San Francisco* (1999) 21 Cal.4th 352, 361-362.)  "One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable."  (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.)

As relevant to standing, the FAP alleges that Petitioner "is a California resident who borrowed money from BlockFi for non-commercial purposes."  (Pet. ¶ 141.)  BlockFi held Bitcoin purchased by Petitioner as collateral.  (See Id. ¶¶ 65-73 and Exh. 21.) "BlockFi's Contract states that a failure to maintain a loan-to-value ratio of Seventy Percent (70%) for more than Seventy-Two (72) hours subjects the California borrower to default under the terms of BlockFi's Contract…. After an alleged default, BlockFi may immediately foreclose upon the Collateral…. Furthermore, BlockFi's Contract states that a failure to maintain a loan-to-value ratio of Eighty Percent (80%) gives BlockFi the right to immediately sell, liquidate, or foreclose upon enough collateral to restore the loan-to-value ratio to Seventy Percent (70%)."  (Id. ¶¶ 58-60.)

"On March 12, 2020, the price of Bitcoin declined by more than Fifty Percent (50%) in one day. On or about that day, BlockFi

claims that it liquidated about Nine-Tenths (9/10th's) of Petitioner's Collateral."  (Id. ¶¶ 65-67.)  "After purportedly foreclosing upon

Petitioner, BlockFi offered to 'reverse' the foreclosure sales, but only if Petitioner would agree to send more money or Bitcoin to

BlockFi."  (Id. ¶ 71.)


In the prayer, Petitioner seeks the following writ relief:


1. That a Peremptory Writ of Mandate be issued commanding Respondent to revoke, cancel, or annul BlockFi's Finance Lender

and Broker License No. 60DBO 81955 (License);

2. That a Peremptory Writ of Mandate be issued commanding Respondent to suspend said License until BlockFi no longer

retains any use and possession of collateral securing its loans to California borrowers.  (FAP p. 17.)


Petitioner does not allege how he would benefit if the court issued the requested writs in paragraphs 1 and 2 of the Prayer, or

how he would be harmed if the court declined to issue such writs.  Petitioner does not allege factually, or cite legal authority, that the

liquidation and foreclosure of his Bitcoin by BlockFi would be reversed if Respondent suspended or revoked BlockFi's license.

Petitioner does not allege that he presently has a loan with BlockFi or that BlockFi presently holds his Bitcoin or other assets as

collateral.  "A writ of mandate is granted 'only where necessary to protect a substantial right and only when it is shown that  some

substantial damage will be *suffered by the petitioner* if said writ is denied.' "  (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703,

707-708.)


In paragraph 3 of the Prayer, Petitioner also seeks a writ "commanding Respondent to suspend said License until BlockFi

unwinds all of its prior forfeitures of California Collateral and restores possession to Consumers."  (FAP p. 17.)  If granted, such writ

could benefit Petitioner, as he alleges BlockFi foreclosed on his Bitcoin.  However, Petitioner does not cite any statute or other law

under which the court would have authority to issue a writ compelling Respondent to cause the suspension of a license until the

licensed party unwinds certain transactions or returns collateral.  The gravamen of the FAP is that Respondent invalidly issued

BlockFi's license and has a mandatory duty to revoke or suspend the license.  Inclusion of Paragraph 3 of the Prayer is not sufficient to

confer standing on Petitioner for that writ claim.  Moreover, to the extent the petition seeks money damages or return of Bitcoin

liquidated or foreclosed by BlockFi pursuant to the parties' contract, Petitioner has an adequate remedy at law, as discussed *infra*.


In opposition, Petitioner contends that he has standing because "BlockFi acted under authority of its invalid License to deprive

Gerro of his bitcoin" and "BlockFi continues to deprive Gerro of his personal property under color of authority of the License."  (Oppo.

10.)  Petitioner does not cite allegations of the petition that support these statements.  The court's ruling on demurrer is limited to the

four corners of the pleading.  As discussed, Petitioner does not allege that suspension or revocation of BlockFi's license would result

in a return of his Bitcoin.  Nor does Petitioner allege that BlockFi presently holds any of his assets as collateral, such that suspension

of BlockFi's license might directly impact Petitioner as a customer.  Accordingly, Petitioner has not alleged a beneficial interest in the

requested writ.

Public-Interest Exception to Standing Requirement; and Petitioner's Contentions that Respondent Violated Section 22009 By Issuing a
License to BlockFi

Petitioner contends that he has alleged public-interest standing because "Respondent continues to violate its public duty to

issue licenses in accordance with law" and BlockFi's "current borrowers" are being harmed, but lack sufficient incentive to challenge

BlockFi's license.  (Oppo. 11-12.)

"A petitioner who is not beneficially interested in a writ may nevertheless have 'citizen standing' or 'public interest standing' to

bring the writ petition under the 'public interest exception' to the beneficial interest requirement. [Citations.] The public interest

exception 'applies where the question is one of public right and the object of the action is to enforce a public duty—in which case it is

sufficient that the plaintiff be interested as a citizen in having the laws executed and the public duty enforced.'"  (*Rialto Citizens for*

*Responsible Growth v. City of Rialto* (2012) 208 Cal. App. 4th 899, 913-914.)  In a citizen standing analysis, "[t]he courts balance the

applicant's need for relief (i.e., his beneficial interest) against the public need for enforcement of the official duty. When the duty is

sharp and the public need weighty, the courts will grant a mandamus at the behest of an applicant who shows no greater personal

interest than that of a citizen who wants the law enforced."  (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.

5th 1159, 1174.)

"Judicial recognition of citizen standing is an exception to, rather than repudiation of, the usual requirement of a beneficial

interest."  (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 873-874.)  "[E]ven if a plaintiff otherwise meets the requirements

of the public right/public duty exception in a mandamus proceeding, he is not entitled to proceed 'as a matter of right.'"  (Id. at 874.)

"When the public need is less pointed, the courts hold the petitioner to a sharper showing of personal need."  (*Reynolds, supra* at

875.)

-

The court must assess whether Petitioner has sufficiently alleged that Respondent's duty to revoke RPI's license is "sharp" and

that there is a "weighty" public need for issuance of the writ.

Here, Petitioner alleges that "[t]he Department issued BlockFi's finance lender license upon the erroneous legal conclusion

that a finance lender may retain use and possession of personal property collateral."  (Id. ¶ 133.)  Petitioner alleges that "BlockFi

secures its loans to Consumers by exercising dominion and control over the Consumers' Bitcoin as collateral securing BlockFi's loan

(Collateral)." (Id. ¶ 21; see generally Id. ¶¶ 19-73.) In these circumstances, Petitioner contends that Respondent's issuance of a license

to BlockFi violated section 22009. (See Oppo. 1.)

Section 22100(a) states that "[n]o person shall engage in the business of a finance lender or broker without obtaining a license

from the commissioner." Section 22009 defines "finance lender" as "any person who is engaged in the business of making consumer

loans or making commercial loans." Section 22009 further states that "[t]he business of making consumer loans or commercial loans

*may include lending money and taking*, in the name of the lender, or in any other name, in whole or in part, *as security* for a loan, *any*

*contract or obligation involving the forfeiture of rights in or to personal property, the use and possession of which property is*

*retained by other than the mortgagee or lender*, or any lien on, assignment of, or power of attorney relative to wages, salary,

earnings, income, or commission." (emphasis added.)

Petitioner raises a question of statutory construction. "The rules governing statutory construction are well settled. We begin

with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.]

To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.]

When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one

reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be

remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the

statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.)

When interpreting a statute, the court must construe the statute, if possible to achieve harmony among its parts. (*People v.*

*Hall* (1991) 1 Cal. 4th 266, 272; *Legacy Group v. City of Wasco* (2003) 106 Cal.App. 4th 1305, 1313). "When the legislature has carefully

employed a term in one place and has excluded it in another, it should not be implied where excluded." (*Wasatch Property*

*Management v. Degrate* (2005) 35 Cal.4th 1111.) "When interpreting statutory language, we may neither insert language which has

been omitted nor ignore language which has been inserted." (See *People v. National Auto. and Cas. Ins. Co.* (2002) 98 Cal.App.4th

277, 282.)

Petitioner contends that, as defined by section 22009, "a finance lender does not retain use or possession of personal

property securing its loans." (Oppo. 7-8.) However, the statutory language upon which Petitioner relies is not mandatory in nature

(i.e., "shall include"), but rather permissive ("may include"). Section 22009 does not clearly or explicitly prohibit a finance lender from

using or possessing collateral. Petitioner has not developed an argument based on the statutory scheme as a whole that a finance

lender cannot, in any circumstance, use or possess the personal property that secures its loan.

Petitioner does not submit or request judicial notice of any legislative history that supports his interpretation of section 22009.  Thus, even if there was some ambiguity in section 22009 (which Petitioner does not identify), Petitioner has not provided the court extrinsic aids that could suggest Respondent illegally issued a license to BlockFi.

Respondent, which has authority for issuing finance lender licenses, may also be entitled to deference in his interpretation of section 22009.  Petitioner attaches to the petition a declaration of the former Commissioner, who was at the helm of Department when BlockFi's license was issued in 2018.  (FAP ¶ 137, Exh. 20.)  In her declaration, the former Commissioner concludes, among other things, that (1) Petitioner's argument about section 22009 "is incorrect"; (2) the "business practice of holding and using collateral—including the rehypothecation of that collateral—is common both in California and throughout the United States in connection with secured lending"; (3) during her tenure, the Commissioner issued "many licenses to finance lenders whose planned business operations included the holding and/or use of collateral that was being used to secure loans"; (4) BlockFi's business model does not somehow make it a "pawnbroker"; and (5) "holding and/or using collateral in the form of cryptocurrency for secured loans[ ] falls squarely under the umbrella of business activities performance by a finance lender licensed by [Department]."  (FAP Exh. 20.)

To the extent "purely legal issues involve the interpretation of a statute an administrative agency is responsible for enforcing, [the court] exercise[s] [its] independent judgment, 'taking into account and respecting the agency's interpretation of its meaning.'" (*Housing Partners I, Inc. v. Duncan* (2012) 206 Cal.App.4th 1335, 1343; see also *Yamaha Corp. of America v. State Bd. Of Equalization* (1998) 19 Cal.4th 1, 11.)  How much weight to accord an agency's construction is "situational," and depends on the circumstances. (See *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 461-462.)  If Petitioner contends that Respondent is not entitled to deference in his interpretation of section 22009, Petitioner has not sufficiently developed such argument in the petition or opposition.  The petition implies that Department has taken inconsistent positions in its interpretation of section 22009, but Petitioner does not discuss any factors that would suggest Respondent or his predecessor commissioners are not entitled to deference in their interpretation of section 22009. (See FAP ¶¶ 74-140.) Thus, on this record and briefing, it appears Respondent may be owed substantial deference in his interpretation of section 22009.

Petitioner's reliance on *W. Pico Furniture Co. v. Pac. Fin. Loans* (1970) 2 Cal. 3d 594 is misplaced.  (Oppo. 8.)  That case did not address the question presented here of whether section 22009 *requires*, in all circumstances, that use and possession of collateral be retained by other than a finance lender.  "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.'"  (*People v. Knoller* (2007) 41 Cal.4th 139, 154-55.)  For that same reason, Petitioner's discussion of a 1948 Attorney General opinion is not persuasive.  (Oppo. 8.)

Petitioner contends that "[u]nder California law, lenders that usurp possession of collateral must be licensed as pawnbrokers.... BlockFi is not a licensed pawnbroker ..., and Respondent does not have any authority to issue pawnbroker licenses."  (Oppo. 9.)  In his

arguments about the pawnbroker laws, Petitioner begs the question – he assumes the truth of his underlying premise that

Respondent lacked authority to issue a finance lender license to BlockFi.  Since Petitioner does not adequately support that

underlying premise, the court need not analyze Petitioner's contention that BlockFi should be considered an unlicensed pawnbroker.

The court stresses that, for purposes of this demurrer, the court does not make a final determination regarding Petitioner's

statutory arguments related to section 22009.  Based on this record and briefing, the court preliminarily finds Petitioner's statutory

interpretation unpersuasive.  However, the court has not been presented with all relevant legal argument, legislative history, and

extrinsic aids.  For purposes of this demurrer, the court concludes only that Petitioner has not shown a "sharp" duty owed by

Respondent to suspend or revoke BlockFi's license, nor a "weighty" public need for the requested writ.  As discussed, Petitioner has

alleged no personal interest in the writ relief that he seeks.  Balancing the interests, the court presently finds no grounds to apply the

public-interest exception to Petitioner's writ claim.

Petitioner has not alleged sufficient facts to satisfy the public-interest exception to the standing requirement.

-

Judicial Abstention

-

Respondent and Real Parties contend that the doctrine of judicial abstention requires dismissal because Respondent has

"exclusive regulatory authority" over the subject matter of the petition.  (Resp. Dem. 13-15; RP Dem. 7-9.)

"Under the abstention doctrine, 'a trial court may abstain from adjudicating a suit that seeks equitable remedies if 'granting

the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions

of an administrative agency.' [Citation.] Abstention may also be appropriate if 'the lawsuit involves determining complex economic

policy, which is best handled by the Legislature or an administrative agency,' or if 'granting injunctive relief would be unnecessarily

burdensome for the trial court to monitor and enforce given the availability of more effective means of redress.'"  (*Hambrick v.*

*Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 147-148.)

Significantly here, however, "abstention is not appropriate where resolution of the issues involves solely the judicial function of

resolving questions of law based on facts before the court."  (*Hambrick, supra* at 152.)  "To 'abstain' in situations where the

Legislature said [the court] should act would be impermissible shirking."  (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 989-990.)

In the petition, Petitioner raises a pure question of law concerning Respondent's authority under the California Financing Law,

specifically section 22009, to issue a finance lender license to a lender that uses or possesses personal property collateral, and

specifically Bitcoin, given by the borrower.  Based on the current allegations, the court finds no reason to apply judicial abstention to this narrow question of statutory interpretation.

<u>Does Petitioner Have an Adequate Legal Remedy?</u>

-

Respondent and Real Parties contend that Petitioner has an adequate remedy at law in two pending actions for breach of contract and injunctive relief.  (Resp. Dem. 15-16; RP Dem. 11-12.)

"The extraordinary remedy of mandate is not available when other remedies at law are adequate." (See *Agosto v. Board of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 336.)

Petitioner has filed two other cases against BlockFi in the Los Angeles Superior Court.  (See FAP ¶¶ 143, 145.)

In *Gerro I* (Case No. 20BBCV00308), Petitioner sued BlockFi and his loan servicer "to recover possession of his personal property," specifically Bitcoin that BlockFi liquidated after Petitioner failed to maintain loan-to-value ratios specified in his contract with BlockFi.  (See FAP ¶ 143; RP RJN Exh. B.)  The complaint alleged multiple claims against BlockFi, including breach of contract, conversion, and violation of several Commercial Code sections.  In opposition to a demurrer, Petitioner asserted that his contract with BlockFi was illegal based on his statutory interpretation of the definition of finance lender in section 22009.  (RP RJN Exh. C at 7.)  The trial court enforced a Delaware forum selection clause and stayed the action.  (RP RJN Exh. A.)  Petitioner appealed, and his appeal is presently pending.  (FAP ¶ 144.)

In *Gerro II* (Case No. 20STCV31493), Petitioner sued BlockFi for injunctive relief based on claims of unfair competition, false advertising, and civil conspiracy.  Petitioner alleged, as he does in this writ action, that BlockFi is illegally engaging in the business of an unlicensed pawnbroker and activity that falls outside the scope of a finance lender license pursuant to section 22009.  (RP RJN Exh. E.)  The trial court stayed *Gerro II* based on the pending action in *Gerro I*, concluding that *Gerro II* constituted the same cause of action as *Gerro I.*  (FAP ¶¶ 145-146.)  Contrary to Real Parties' assertion, the judicially noticed record does not prove that the trial court ruled on the merits of Petitioner's claims in *Gerro II.*  (See RP Dem. 3-4, citing RJN Exh. E.)  Petitioner appealed the stay in *Gerro II,* and that appeal is pending.  (FAP ¶ 146.)

-

In paragraph 3 of the Prayer, Petitioner seeks a writ "commanding Respondent to suspend said License until BlockFi unwinds all of its prior forfeitures of California Collateral and restores possession to Consumers."  (FAP p. 17.)  In this requested writ, Petitioner

effectively seeks return of Bitcoin liquidated or foreclosed by BlockFi.  Petitioner has an adequate remedy at law in *Gerro I* and *Gerro II* to obtain return of his Bitcoin or a corresponding amount of money damages.


Petitioner also seeks a writ commanding Respondent to revoke, cancel, or annul BlockFi's Finance Lender and Broker License No. 60DBO 81955 (License).  Petitioner could not obtain that exact relief in *Gerro I* or *Gerro II*.  Nonetheless, *Gerro II* alleges that BlockFi is "engaging in the unlawful business practice of accepting and obtaining forfeiture interests in collateral which it uses and possesses, in violation of California Financial Code Section 21009 [sic]" and "knowingly and negligently violating the pawnbroker laws." (RP RJN Exh. D, ¶¶ 244-245.)  Petitioner seeks to enjoin this alleged unlawful conduct pursuant to Business and Professions Code section 17200.  If Petitioner proved his claims in *Gerro II* and the court enjoined conduct of BlockFi that he contends violates section 22009, that would provide him an adequate remedy for the harm alleged in the instant petition.


Petitioner has not made a persuasive argument to the contrary.  (See Oppo. 6.)  Petitioner's reliance on *Covert v. State Bd. of Equalization* (1946) 29 Cal.2d 125 is misplaced.  (Ibid.)  In *Covert*, a statute specifically authorized the petitioner, a citizen, to file a complaint with the board against a liquor licensee.  In those circumstances, the Court held that abatement proceedings were not an adequate remedy.  The Court did not hold that actions for contract damages or injunctive relief can never provide an adequate, alternative remedy for a petition for writ of mandate.  "An opinion is not authority for propositions not considered." (*People v. Knoller* (2007) 41 Cal.4th 139, 154-55.)


Even if it could be concluded that Petitioner had standing or public-interest standing, this writ action is barred because Petitioner has other, adequate remedies at law.

-

<u>Leave to Amend</u>


A demurrer may be sustained without leave to amend when there is no reasonable possibility that the defect can be cured by amendment.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Courts generally allow at least one time to amend a complaint after sustaining a demurrer.  (*McDonald v. Superior Court* (1986) 180 Cal.App.3d 297, 303.)  In assessing whether leave to amend should be granted, the burden is on the complainant to show the court that a pleading can be amended successfully.  (*Goodman v.  Kennedy* (1976) 18 Cal.3d 335, 348-349.)


This is the court's first ruling on the demurrer.  However, Petitioner has not requested leave to amend or made an offer of proof of amendments that could address the pleading defects analyzed above.  Counsel should address at the hearing whether leave to amend should be permitted.

-

<u>Conclusion</u>

-

The demurrers are SUSTAINED.  Counsel should address at the hearing whether leave to amend should be permitted.

[1] Unless otherwise stated, all statutory references as to the Financial Code.

[2]  Section 22109 sets forth the Respondent's duty to deny an application for a finance lender license in specified circumstances, none of which appear directly relevant here.  Section 22714 states in relevant part: "(a) The commissioner shall suspend or revoke any license, upon notice and reasonable opportunity to be heard, if the commissioner finds any of the following: … (3) A fact or condition exists that, if it had existed at the time of the original application for the license, reasonably would have warranted the commissioner in refusing to issue the license originally."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Orange, State of California.  I am over the age of 18 and am not a party to the within action; my business address is 600 Anton Boulevard, Suite 700, Costa Mesa, California 92626.

On ***November 16, 2021***, I served a true and correct copy of the document entitled*: **NOTICE OF RULING ON DEMURRERS OF RESPONDENT CHRISTOPHER S. SHULTZ AND REAL PARTIES IN INTEREST TO PETITIONER'S FIRST AMENDED PETITION FOR WRIT** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, as indicated below and addressed as follows:

| | |
|---|---|
| John M. Gerro, Esq.<br>George J. Gerro, Esq.<br>Law Offices of Gerro & Gerro<br>530 S. Glenoaks Boulevard, Suite 200<br>Burbank, CA  91502<br>Telephone:      (818) 840-0000<br>E-Mail:        john@gerrolaw.com<br>                george@gerrolaw.com<br><br>*[Attorneys for Petitioner GEORGE GERRO]* | Rob Bonta, Esq., Attorney General of California<br>Leanna C. Costantini, Esq., Dep. Atty. General<br>California Department of Justice<br>300 South Spring Street<br>Suite 1702<br>Los Angeles, CA 90013<br>Telephone:      (213) 269-6231<br>Facsimile:      (619) 738-9000<br>E-Mail:        rob.bonta@doj.ca.gov<br>                leanna.costantini@doj.ca.gov<br><br>*[Attorneys for Respondent CHRISTOPHER S. SHULTZ, as Commissioner of Financial Protection and Innovation of the State of California]* |

☒ **(By Personal Delivery)** I served true and correct copies of the foregoing document by personal delivery through First Legal Network to the offices of the interested parties as indicated above.

☐ **(By U.S. Mail)** I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit.  I caused such envelope, with postage thereon fully prepaid, to be placed in the United States Mail at Costa Mesa, California as indicated above.

☐ **(By Electronic Delivery)** Pursuant to C.C.P. § 1010.6, I served true and correct copies of the foregoing document by electronic delivery to the interested parties in this action as indicated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on ***November 16, 2021***, at Costa Mesa, California.

*Kelley L. Saunders*

_____
Kelley L. Saunders