**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br>**Hearing Date: September 20, 2023 @ 10:00 a.m. ET**<br>**Obj. Deadline: September 13, 2023**<br>**Oral Argument Waived Unless Objections Timely Filed** |

## NOTICE OF DEBTORS' MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS AGAINST THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that on **September 20, 2023 at 10:00 a.m.** (ET), or as soon

thereafter as counsel may be heard, the above-captioned debtors and debtors in possession

(collectively, the "Debtors"), by and through their undersigned counsel, shall move (the "Motion")

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

before the Honorable Michael B. Kaplan, Chief United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), 402 East State Street, Trenton, New Jersey 08608, or such other physical or virtual location as may be determined by the Court, for entry of an order, substantially in the form submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that in support of the Motion, the Debtors shall rely upon the *Declaration of Mark A. Renzi in Support of Debtors' Motion to Estimate the Amount of the FTX Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of The Bankruptcy Code* which sets forth the relevant factual bases upon which the relief requested should be granted.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall: (i) be in writing, (ii) state with particularity the basis of the objection; (iii) conform with the Bankruptcy Court's *Order Granting Debtors' Motion to Establish Certain Notice, Case Management, and Administrative Procedures* [Docket No. 54], and (iv) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received no later than seven (7) days before the hearing date set forth above.

**PLEASE TAKE FURTHER NOTICE** that unless responses are timely filed and served,

the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d), and the relief

requested may be granted without further notice or hearing.

Dated: August 11, 2023                    /s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice* g)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS AGAINST THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "<u>BlockFi</u>" or the "<u>Debtors</u>"), as debtors

and debtors-in-possession in the above-referenced Chapter 11 cases (the "<u>Chapter 11 Cases</u>"),

hereby file this *Debtors' Motion to Estimate the Amount of the FTX Claims Against the Debtors*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

1

*Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (the "<u>Motion</u>"). In support of the Motion, BlockFi respectfully represents as follows:

<u>**Jurisdiction and Venue**</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). This Court has exclusive jurisdiction to direct the manner and time in which claims are to be estimated. *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 136 n. 3 (3d Cir. 1982).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 502(c) of the Bankruptcy Code and the Bankruptcy Rules.

<u>**Relief Requested**</u>

4.      BlockFi seeks entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"): (a) estimating the FTX Claims (defined below) for distribution purposes and (b) granting related relief.

<u>**Background**</u>

**A.      The BlockFi Chapter 11 Cases**

5.      On November 28, 2022 (the "<u>Petition Date</u>"), each BlockFi Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The same day, BlockFi commenced Adv. Proc. 22-01382 (MBK) against Emergent Fidelity Technologies Ltd. ("<u>Emergent</u>") and Marex (f/k/a ED&F Man Capital Markets, Inc.) (the "<u>BlockFi Adversary Proceeding</u>") seeking to enforce the terms of the Emergent Pledge (defined below) and to recover collateral that is property of the BlockFi estates.

2

6.     The BlockFi Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On April 21, 2023, this Court entered an order approving a stipulation between BlockFi, FTX and Emergent at docket number 64 in the BlockFi Adversary Proceeding (the "FTX Stipulation"). Among other things, the FTX Stipulation (i) stayed the BlockFi Adversary Proceeding and (ii) documented the parties' agreement to refrain from commencing or prosecuting any other litigation over the Robinhood Shares pending resolution of the criminal proceeding against Samuel Bankman-Fried ("Bankman-Fried"), Zixiao (Gary) Wang, Caroline Ellison, and Nishad Singh styled *United States of America v. Samuel Bankman-Fried a/k/a "SBF," et al.*, 22 Cr. 673 (as modified, amended or supplemented from time-to-time, the "SBF Criminal Proceeding").

8.     On May 9, 2023, this Court entered its *Order Approving the Stipulation Staying Litigation and Related Discovery Concerning the Robinhood Assets* [Adv. Proc. Docket No. 67] (the "Marex Stipulation," and together with the FTX Stipulation, the "Standstill Stipulations") in the BlockFi Adversary Proceeding, staying BlockFi's prosecution of it claims against Marex regarding the Robinhood Shares and the commencement of any other litigation against Marex.

9.     On May 12, 2023, BlockFi filed its *First Amended Joint Chapter 11 Plan* [Docket No. 875], as amended on June 28, 2023 [Docket No. 1132] and July 31, 2023 [Docket No. 1300] (collectively, and as may be further amended from time to time, the "Plan"), and the accompanying Disclosure Statement [Docket No. 874], as amended on June 28, 2023 [Docket No. 1133] and July 31, 2023 [Docket No. 1301] (collectively, and as may be further amended from time to time, the "Disclosure Statement"). Article III.C of the Plan sets forth the proposed treatment of claims against BlockFi, including the FTX Claims, which BlockFi assigned to Classes 5 through 7.

3

10.     At a hearing before this Court on August 1, 2023, FTX stated that it did not oppose conditional approval of the Disclosure Statement, which the Court granted [Docket No. 1306].

**B.     The FTX Chapter 11 Cases and FTX's Unreliable Records**

11.     On November 11 and 14, 2022, as applicable (together, the "FTX Petition Date"),[2] FTX Trading, Ltd. and 101 affiliated entities (together, the "FTX Debtors") filed voluntary Petitions for Relief, commencing bankruptcy cases under chapter 11 in the District of Delaware (the "FTX Chapter 11 Cases").

12.     On July 31, 2023, FTX filed its *Joint Chapter 11 Plan of Reorganization of FTX Trading LTD. and its Debtor Affiliates* [FTX Docket No. 2100] (the "FTX Plan"). The FTX Plan provides for, among other things: (i) the extinguishment of claims based on FTT, the primary form of collateral that FTX pledged to secure BlockFi with respect to BlockFi's loan to Alameda;[3] and (ii) valuation of all claims in U.S. dollars, which would significantly reduce the value of BlockFi's claims for return of the digital assets that BlockFi loaned to Alameda. *See* FTX Plan Art. 4 §§ 4.3.14; 4.4 n. 13.

13.     Since the outset of its bankruptcy filings, FTX has publicly denounced the integrity of its own internal controls and recordkeeping and the accuracy of its books and records. For example, the FTX Debtors' CEO, John J. Ray III, testified before Congress that he does not "trust a single piece of paper in this organization"—

> BARR: In your declaration, you stated that you did not believe that [the FTX Debtors'] audited financial statements were reliable. Can you elaborate on why you believe that to be the case?

---

[2] November 11, 2022 is the petition date for each of the FTX Debtors except for West Realm Shires Inc., which filed its voluntary Petition for Relief on November 14, 2022. Emergent Fidelity Technologies Ltd. ("Emergent") filed its voluntary Petition for Relief on February 3, 2023 (the "Emergent Petition Date").

[3] Specifically, FTX pledged 103,113,570.45 FTT tokens worth $267,064,147.47 as of the FTX Petition Date. Thus, FTX's proposal under the FTX Plan to extinguish all FTT claims would eliminate $267,064,147.47 of BlockFi's security at the expense of BlockFi's bankruptcy estates.

RAY: Well, ***we've lost $8 billion of customer money***, so, by definition, ***I don't trust a single piece of paper in this organization***.

*Investigating the Collapse of FTX, Part I: Hearing Before the U.S. House Fin. Svcs. Comm.*, 117th Cong. (Dec. 13, 2022), BLOOMBERG GOV'T., Tr. at. 30 (emphasis added).[4]

## C.     The FTX Claims

14.     On March 31, 2023, four FTX debtor entities, including Alameda Research Ltd. ("Alameda"), FTX Trading Ltd. ("FTX Trading"), West Realm Shires Inc. ("West Realm") and West Realm Shires Services Inc. ("WRSS"), filed thirty-six (36) duplicate proofs of claim (the "FTX Proofs of Claim") on behalf of all 102 FTX debtors (collectively, "FTX") and Emergent against all nine BlockFi debtors. FTX attached to each FTX Proof of Claim an identical,

---

[4] *See also, e.g.*, *Joint Omnibus Motion of the Debtors and the Official Committee of Unsecured Creditors Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery from Silicon Valley Accountants, Silvergate Bank, and Evolve Bank & Trust* [FTX Docket No. 1874], ¶ 9 ("[T]he Debtors' pre-filing operations were characterized by a complete failure of corporate controls and a total absence of trustworthy financial information.") and ¶ 13 ("Given the incomplete state of the Debtors' financial records and the interrelated web of accounts and transactions through which the pre-petition Debtors transferred customer deposits and other assets, the Movants sought fulsome document productions from each of the Debtors' pre-petition professionals involved in developing, operating, consulting on, or auditing the Debtors' accounting systems and financial reporting. . . ."); *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [FTX Docket No. 24], ¶ 5 ("Never in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced, unsophisticated and potentially compromised individuals, this situation is unprecedented."), ¶ 28 ("[N]one of these financial statements have been audited. . . . I do not have confidence in them."), ¶ 65 ("The FTX Group did not keep appropriate books and records, or security controls, with respect to its digital assets. Mr. Bankman-Fried and Mr. Wang controlled access to digital assets of the main businesses in the FTX Group. . . . Unacceptable management practices included the use of an unsecured group email account as the root user to access confidential private keys and critically sensitive data for the FTX Group companies around the world, the absence of daily reconciliation of positions on the blockchain, the use of software to conceal the misuse of customer funds, the secret exemption of Alameda from certain aspects of FTX.com's auto-liquidation protocol, and the absence of independent governance as between Alameda and the Dotcom Silo."); Testimony of Mr. John J. Ray III, CEO, FTX Debtors before the House Financial Services Committee (December 13, 2022) ("[T]he FTX Group's collapse appears to stem from the absolute concentration of control in the hands of a very small group of grossly inexperienced and unsophisticated individuals who failed to implement virtually any of the systems or controls that are necessary for a company that is entrusted with other people's money or assets."); *Debtors' Motion to Enforce the Automatic Stay or, in the Alternative, Extend the Automatic Stay* [FTX Docket No. 291], ¶ 51 ("[B]lurring of ownership interests appears to be par for the course for Mr. Bankman-Fried's companies, based on evidence developed to date suggesting that Mr. Bankman-Fried, who controlled both Alameda and Emergent, treated assets of his different companies interchangeably. For example, in a public interview, Mr. Bankman-Fried appeared to admit that he may have allowed FTX Trading and Alameda funds to be commingled. . . .").

unsubstantiated, five-page addendum (the "FTX Addendum") describing its claims (collectively, the "FTX Claims"). A representative of the FTX Proofs of Claim, including the FTX Addendum, is attached hereto as **Exhibit B**. The FTX Addendum is the only evidence FTX has submitted in support of the FTX Claims, which include (i) the FTX Facility Claims, (ii) the FTX Avoidable Transfer Claims, and (iii) the Alameda Claims. Each of the FTX Claims is described in more detail below.

      i.      **The FTX Facility Claims**

15.     The FTX Facility Claims arise from (i) that certain Loan Agreement dated June 30, 2022, by and between West Realm and BlockFi Inc. (the "FTX Agreement"), and (ii) that certain Option Agreement dated June 30, 2022, by and between West Realm, FTX Trading,[5] BlockFi Inc., and the parties listed on Annex I attached thereto (the "Option Agreement"). Pursuant to the FTX Agreement and the Option Agreement, West Realm purchased an option to acquire the equity in BlockFi Inc. in exchange for a $400 million revolving loan facility. The FTX Agreement expressly subordinated BlockFi's obligation to repay loaned funds to BlockFi's obligations to its customers. FTX Agreement § 2.5 ("All Loans made hereunder shall . . . be junior to the repayment in full of all Customer Liabilities."). Pursuant to Schedule B of the FTX Agreement, "Customer Liabilities" to which any FTX loans were junior includes BlockFi's obligations to clients in connection with (x) the BlockFi Interest Account, BlockFi Yield, BlockFi Personalized Yield or BlockFi Wallet products, (y) custody arrangements and collateral arrangements relating to loans made to clients and (z) any other similar products or services provided to clients by BlockFi.

---

[5] FTX Trading is party to the Option Agreement solely for purposes of Section 2.5, Section 2.8, Article IV and Section 5.5 of the Option Agreement.

16.     More generally, BlockFi treated all funds disbursed pursuant to the FTX Agreement as an equity contribution, as all parties expected FTX to exercise its option to acquire BlockFi as early as 2023. Between July and October of 2022, BlockFi Inc. received draws on the facility totaling $275 million. On November 8, 2022, BlockFi Inc. requested the remaining $125 million, which West Realm refused to fund. The FTX Facility Claim seeks a refund of the $275 million plus accrued interest of approximately $4.6 million, for a total of $279.6 million. BlockFi refutes that FTX is entitled to such a refund.

17.     The Plan assigns the FTX Facility Claims to Class 5. BlockFi intends to object to the validity and seek disallowance of the FTX Facility Claims in full. To the extent the Court Allows[6] any portion of the FTX Facility Claims, under the Plan, such portion of the FTX Facility Claims shall be recharacterized as equity contributions and canceled, released and extinguished, and entitled to no distributions. In the event the Court finds recharacterization improper, the Plan provides that the FTX Facility Claims will be contractually subordinated to Account Holder Claims and, pursuant to section 510(c) of the Bankruptcy Code, equitably subordinated to General Unsecured Claims and Intercompany Claims at the applicable BlockFi Debtor entity. In the event the Court finds equitable subordination improper, the Plan treats the FTX Facility Claims *pari passu* with General Unsecured Claims and Intercompany Claims.

**ii.      The FTX Avoidable Transfer Claims**

18.     BlockFi Lending LLC ("BlockFi Lending") held an account on the FTX.US exchange (the "BlockFi Lending Account"), which is governed by that certain FTX.US User Agreement (last updated September 16, 2022) (the "FTX.US Terms of Service"). BlockFi International Ltd. ("BlockFi International") held an account on the FTX.com exchange (the

---

[6] As such term is defined in Plan Art. 1 § A.16.

"BlockFi International Account," and together with the BlockFi Lending Account, the "BlockFi Accounts"), which is governed by that certain FTX Terms of Service dated May 13, 2022 (the "FTX Terms of Service").

19.    Pursuant to the applicable terms of service, property deposited into the BlockFi Accounts remained property of BlockFi. *See* FTX Terms of Service § 8.2.6 ("Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading . . . None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading . . . . You control the Digital Assets held in your Account. At any time . . . you may withdraw your Digital Assets by sending them to a different blockchain address controlled by you or a third party."); *see also* FTX.US Terms of Service § 6 ("Title to cryptocurrency represented in your FTX.US Account shall at all times remain with you and shall not transfer to FTX.US.").

20.    The FTX Avoidable Transfer Claims are based on the allegation that during the ninety-day period before the applicable FTX Petition Date (each a "Preference Period"), BlockFi Lending withdrew assets with an aggregate value of $25,000,366.58 and BlockFi International Ltd. withdrew assets with an aggregate value of $3,605,712,812.48 from the FTX Exchanges (together, the "Exchange Withdrawals"). FTX asserts that the Exchange Withdrawals constitute preferential transfers subject to avoidance and recovery under sections 547 and 550(a) of the Bankruptcy Code.

21.    The FTX Avoidable Transfer Claims are frivolous for a variety of reasons.  Perhaps most obviously, during the Preference Period, BlockFi Lending and BlockFi International deposited digital assets into the BlockFi Accounts, which deposits FTX failed to account for in

asserting the FTX Avoidable Transfer Claims. These deposits exceeded the value of the Exchange

Withdrawals, as follows:[7]

| Transaction | BlockFi Lending | BlockFi International |
|---|---|---|
| Total Deposits | $25,000,366.95 | $4,347,945,646.83 |
| (Total Withdrawals) | ($25,000,366.58) | ($3,605,712,812.48) |
| Net Balance | $0.37 | $742,232,834.35 |

22.    The FTX Avoidable Transfer Claims also include a component related to a pledge

on November 9, 2022 (the "Emergent Pledge") of approximately 56 million shares of Robinhood

Markets, Inc.'s Class A Common Stock (the "Robinhood Shares") by Emergent that was given to

BlockFi in connection with BlockFi's agreement to extend and forbear from exercising its rights

under Alameda Loan Agreements (defined below). Like the Exchange Withdrawals, FTX asserts

that the Emergent Pledge constitutes a preferential transfer subject to avoidance and recovery

under sections 547 and 550(a) of the Bankruptcy Code. FTX further asserts that the Emergent

Pledge also constitutes a fraudulent transfer subject to avoidance and recovery under sections 548

and 550(a) of the Bankruptcy Code. BlockFi refutes the FTX Avoidable Transfer Claims, which

are subject to affirmative defenses and counterclaims.

23.    The Plan assigns the FTX Avoidable Transfer Claims, including all claims related

to the Exchange Withdrawals and the Emergent Pledge, to Class 6. Under the Plan, the FTX

Avoidable Transfer Claims, if Allowed, shall be, pursuant to section 510(c) of the Bankruptcy

Code, equitably subordinated to Account Holder Claims, General Unsecured Claims and

Intercompany Claims at the applicable BlockFi Debtor entity. In the event the Court does not grant

---

[7] The amounts in this table reflect end-of-day pricing for the applicable digital assets as set forth in BlockFi's books and records. BlockFi calculated the net deposit using the difference between each day's deposits and withdrawals at that day's price. BlockFi presents the amounts in this table in aggregate dollar values for comparison purposes only. BlockFi presents this information without prejudice to BlockFi's right to assert claims against FTX for return of its assets in-kind, which right is expressly reserved.

equitable subordination, the Plan proposes to treat the FTX Avoidable Transfer Claims *pari passu* with Account Holder Claims, General Unsecured Claims and Intercompany Claims. Plan, at Art. III.C.

### iii.    The Alameda Claims

24.    BlockFi International and BlockFi Lending each loaned digital assets to Alameda (the "Alameda Loan") pursuant to (i) that certain Master Digital Currency Loan Agreement dated July 15, 2019, by and between Alameda and BlockFi Lending (the "U.S. Loan Agreement"), and (ii) that certain Amended and Restated Master Loan Agreement dated January 26, 2022, by and between Alameda and BlockFi International (as amended and restated, the "International Loan Agreement," and together with the U.S. Loan Agreement, the "Alameda Loan Agreements"). The assets BlockFi loaned to Alameda under the Alameda Loan Agreements included 25,466 Bitcoin, 133,960 Ethereum and 90,000,000 USDC (collectively, the "Alameda Loan Assets"). Based on current pricing, the value of the Alameda Loan Assets exceeds $1.104 billion. As of the date hereof, Alameda has not returned any of the Alameda Loan Assets to BlockFi. The Alameda Loan was secured by pledges of certain assets that were later seized by the DOJ, including the Robinhood Shares, and by 103,113,570.45 FTT, the native token to FTX, which exceeded $1.8 billion of value on November 7, 2022.

25.    FTX claims that, during the Preference Period, Alameda allegedly (i) paid $124,423,552 to BlockFi Lending and $7,825,017 to BlockFi International pursuant to the terms of the Alameda Loan Agreements and (ii) made certain pledges of collateral that constitute preferential transfers subject to avoidance and recovery under the Bankruptcy Code. Alameda asserts that the aggregate value of the pledges was $147,755,170. Alameda made these pledges in the ordinary course of business consistent with its contractual obligations as BlockFi exercised its

right to secure itself through margin calls under the Alameda Loan Agreements while the price of FTT, Alameda's primary form of collateral, plummeted.

26.    On November 9, 2022, Alameda pledged securities and other assets to secure its obligations under the Alameda Loan Agreements (the "Alameda Pledge") and in consideration for BlockFi forbearing from exercising its rights under the loan agreements as a result of certain events of default. FTX alleges that the combined value of the Alameda Pledge and Emergent Pledge exceeds $1 billion and that the facts and circumstances surrounding the Alameda Pledge and Emergent Pledge render them avoidable as a preferences and fraudulent transfers under sections 547 and 548 of the Bankruptcy Code and, thus, recoverable under section 550(a).

27.    BlockFi refutes the Alameda Claims, which are subject to both affirmative defenses and counterclaims. The Plan assigns the Alameda Claims, which include any claim based on or arising from the Alameda Loan Agreements, any avoidance claims related to transfers from Alameda to BlockFi, and any other claim Alameda asserts against BlockFi, to Class 7. Under the Plan, the Alameda Claims, if Allowed, shall be equitably subordinated to Account Holder Claims, General Unsecured Claims and Intercompany Claims at the applicable BlockFi Debtor entity. If the Court determines that the Alameda Claims should not be equitably subordinated, the Plan treats them *pari passu* with Account Holder Claims, General Unsecured Claims and Intercompany Claims. Plan, at Art. III.C.

### Basis for Relief Requested

28.    The FTX Claims are all contingent and unliquidated, and, therefore, subject to estimation. BlockFi has diligently progressed these Chapter 11 Cases toward confirmation and has started the solicitation process. Liquidation of the FTX Claims at this time would unduly delay the

administration of the Chapter 11 Cases. Thus, BlockFi seeks to estimate the FTX Claims at $0 for purposes of distribution.

29.      Pursuant to section 502(c) of the Bankruptcy Code, a court is required to estimate for purpose of allowance:

> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).

30.      Estimation helps the court avoid the need to await the resolution of lawsuits to determine issues of liability or amounts owed by means of anticipating and estimating the likely outcome of these actions. *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) (quotations omitted). Thus, Congress has given the bankruptcy courts broad discretion to estimate a claim, and estimation can be used for the purpose of allowing timely distributions under a chapter 11 plan. *See Bittner*, 691 F.2d at 137 n.9. The essence of section 502(c) is that all claims against the debtor be converted into dollar amounts. *In re Sneijder*, 407 B.R. 46, 55–56 (Bankr. S.D.N.Y. 2009). Congress intended "that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case[.]" *Plant Entm't, LLC v. TCI 2 Holdings, LLC*, Case No. CIV. 09-4766RMB, 2010 WL 398639, at *3 (D.N.J. Jan. 28, 2010) (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 309, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6266).

## A.      The FTX Claims are Contingent and Unliquidated

31.      The terms "contingent" and "unliquidated" are not defined in the Bankruptcy Code. *In re E. Orange Gen. Hosp., Inc.*, 587 B.R. 53, 60 n. 10 (D.N.J. 2018). Third Circuit courts have

found that a contingent claim is one "which becomes due only on the occurrence of a future event." *Power Plant Entm't*, 2010 WL 398639, at \*3 (citing A*vellino & Biene s v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 337 n.7 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985), *overruled on other grounds by JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010)); *see also In re Graber*, 319 B.R. 374, 377 (Bankr. E.D. Pa. 2004) ("A liability is contingent if the debtor's legal duty to pay does not come into existence until the occurrence of a future event and the future occurrence was within the contemplation of the parties when the obligation was created."). This is consistent with Black's Law Dictionary, which defines "contingent claim" as "[a] claim that has not yet accrued and is dependent on some future event that may never happen." CLAIM, Black's Law Dictionary (11th ed. 2019). Moreover, it defines "unliquidated claim" as "[a] claim in which the amount owed has not been determined." *Id.*

32.     As set forth in more detail below, all of the FTX Claims are contingent because FTX has not formally brought any causes of action related to its claims nor has any court found BlockFi liable for any threatened claims. *See In re W.R. Grace & Co.*, 446 B.R. 96, 130 n. 58 (Bankr. D. Del. 2011) (finding claim contingent where it was dependent on a finding of liability). Further, most of the FTX Claims are unliquidated and are described as such in the FTX Proofs of Claim.

> **i.     The FTX Facility Claims are Contingent and Unliquidated**

33.     The FTX Facility Claims are contingent. Setting aside that West Realm agreed to subordinate its claims to BlockFi client claims, FTX Agreement § 2.5, the viability of the FTX Facility Claims depends entirely upon future findings that (i) the FTX Agreement was in reality a loan and not an equity transaction and (ii) BlockFi made misrepresentations or improper disclosures inducing West Realm and FTX Trading to enter into the FTX Agreement and the

Option Agreement. Under Third Circuit precedent, the intent of the parties regarding the debt or equity nature of a transaction may be inferred from (i) what the parties say in their contracts, (ii) what the parties do through their actions, and (iii) the economic reality of the surrounding circumstances. *See In re SubMicron Sys. Corp.*, 432 F.3d 448, 456 (3d Cir. 2006). At least two of these factors favor a finding that the FTX Agreement and Option Agreement reflect an equity, not a debt, transaction. Until a court rules on this question, the FTX Facility Claims remain contingent.

34.     Further, the FTX Proofs of Claim themselves characterize the FTX Facility Claims as "presently unliquidated." FTX Addendum at 2. With respect to the Option Agreement, FTX asserts a vague claim for "damages arising from any Debtors' misrepresentations and improper disclosures." FTX Addendum at 4. FTX fails to identify any alleged misrepresentations, omissions, or specific amount of suffered damages.

### ii.     The FTX Avoidable Transfer Claims are Contingent and Unliquidated

35.     The FTX Avoidable Transfer Claims are also contingent. To establish an allowed claim based on preference or fraudulent transfer liability, FTX would have to obtain relief from the automatic stay in these Chapter 11 Cases and file an adversary proceeding against BlockFi to recover preferential or fraudulent transfers. *See* 11 U.S.C. § 362(a)(1); Fed. R. Bankr. P. 4001, 7001(1).[8] Apart from describing the FTX Avoidable Transfer claims in the FTX Addendum, FTX has not taken any steps to bring or prosecute these claims.

---

[8] Just as the Delaware bankruptcy court asserted exclusive *in rem* jurisdiction over FTX's U.S. assets, this Court has asserted exclusive in rem jurisdiction over BlockFi's interests in U.S. property. *See* Jan. 9, 2023 Transcript of BlockFi Proceedings, at 66:15–20 ("And it would seem that this Court has, under 1334, certainly jurisdiction over [BlockFi's] interest in the collateral which is at issue here. And I understand FTX takes a different position. But it seems to be that FTX – their interest in the collateral is bottomed on – potential litigation. I understand that.") and 67:4–8 ("But with this Court clearly having authority and jurisdiction under 28 U.S.C. 1334 and the debtor having a property interest . . . how are these actions pending in other fora, is my question."); *see also* Jan. 9, 2023 Transcript of FTX Proceedings, at 163:16–23 ("Where are the assets located? Are they located in the U.S., which gives me in rem jurisdiction over them? . . . As I said yesterday, I'm not going to defer to, and I would not defer to any other court the question of: What constitutes assets of the debtors in the cases before me?"). Should FTX seek to challenge any of BlockFi's liens against

36.    Even assuming FTX moves for and obtains stay relief, and then commences an adversary proceeding to assert the FTX Avoidable Transfer Claims, any such action would be baseless. For instance, the Exchange Withdrawals cannot possibly give rise to preference liability because BlockFi withdrew its own assets from the BlockFi Accounts. *See* 11 U.S.C. § 547(b) (limiting preference actions to "any transfer of an interest *of the debtor* in property . . . ."); *see also* FTX Terms of Service § 8.2.6; FTX.US Terms of Service § 6. Moreover, the purported preferences based on the Exchange Withdrawals are subject to BlockFi's affirmative defenses, including setoff and the fact that BlockFi's contemporaneous deposits into the very same BlockFi Accounts exceeded the value of the Exchange Withdrawals by over $742 million using a daily end-of-day pricing model. *See* 11 U.S.C. § 547(c)(2); *see also id.* § 558; *In re Vizstara, LLC*, Case No. 10-49434 DHS, 2011 WL 4433593, at *4 (Bankr. D.N.J. Sept. 21, 2011) (acknowledging debtor is entitled to right of setoff to the extent it is available under state law).

37.    With respect to the Emergent Pledge, BlockFi exercised its irrevocable power of attorney within the Emergent Pledge Agreement prior to the Emergent Petition Date. BlockFi is therefore the sole owner of the Robinhood Shares. As a result, FTX lacks standing to bring preference and fraudulent transfer claims related to the Robinhood Shares. *See* 11 U.S.C. §§ 547(b) (limiting preference actions to "any transfer of an interest *of the debtor* in property . . . ."); 548(a)(1) ("The trustee may avoid any transfer . . . *of an interest of the debtor in property*, or any obligation . . . *incurred by the debtor* . . . ."). Further, FTX cannot prove an essential element of a preference because the Emergent Pledge did not put BlockFi in a better position than it would have been under a Chapter 7 liquidation of the Emergent bankruptcy estate given that the DOJ seized

---

FTX, the Bankruptcy Code and Rules would similarly require them to seek and obtain stay relief and then file an adversary proceeding. *See* 11 U.S.C. § 362(a)(1); Fed. R. Bankr. P. 4001, 7001(2).

the Robinhood Shares. *See id.* § 547(b)(5). To the extent FTX or Emergent asserts that the Emergent Pledge constituted a fraudulent transfer, it cannot be established that Emergent received less than reasonably equivalent value for the Emergent Pledge because, to date, BlockFi has received *zero* value due to the DOJ seizure. *See id.* § 548(a)(1)(B)(i).

38.     Moreover, FTX's claims to the Robinhood Shares are contingent upon the outcomes of both the SBF Criminal Proceeding and the BlockFi Adversary Proceeding. Should Bankman-Fried be convicted in the SBF Criminal Proceeding, BlockFi's ownership of the Robinhood Shares can only be challenged in a subsequent government forfeiture proceeding. *See* Standstill Stipulations at 4. If Bankman-Fried is not convicted, then ownership of the Robinhood Shares must be litigated in this Court alone because the BlockFi Adversary Proceeding, which remains pending, was the first and only lawsuit commenced before the DOJ's seizure of the Robinhood Shares and before the parties entered into the Standstill Stipulations.

39.     The claims that constitute the FTX Avoidable Transfer Claims are, by FTX's own admission, "presently unliquidated." FTX Addendum at 3. Even if the Court finds the FTX Avoidable Transfer Claims are liquidated, for the reasons stated above, the claims should be valued at $0.

### iii.    All Alameda Claims are Contingent, and the Alameda Claims Based on the Alameda Pledge Agreement are Unliquidated

40.     The Alameda Claims are entirely contingent. At the outset, to the extent any of the Alameda Claims assert preferences or fraudulent transfers, they suffer from the same procedural defects as the FTX Avoidable Transfer Claims. Alameda has yet to bring a formal claim, much less establish any right to recover on the Alameda Claims. Alameda can neither carry its burden of proving each element of a preference or fraudulent transfer nor overcome BlockFi's defenses to such claims.

41.    Like the Emergent Pledge, the Alameda Pledge did not improve BlockFi's position with respect to distributions under a hypothetical Chapter 7 liquidation of the Alameda estate because all of the assets that Alameda Pledged are outside of BlockFi's control with no guarantee of return to BlockFi.[9] *See id.* § 547(b)(5). Also like the Emergent Pledge, the Alameda Pledge did not constitute a fraudulent transfer. Alameda cannot prove that it received less than reasonably equivalent value for the Alameda Pledge because BlockFi received *zero* value from any of the corresponding assets, which were seized by the DOJ. *See id.* § 548(a)(1)(B)(i).

42.    Alameda similarly cannot carry its burden to prove a preference with respect to any repayments on the Alameda Loan because Alameda cannot prove that BlockFi improved its position as a result of the repayments. *See id.* § 547(b)(5). As of the FTX Petition Date, BlockFi was over-secured by a first-priority lien in collateral that exceeded the value of any repayments. *See, e.g.*, *In re GGI Properties, LLC*, 568 B.R. 231, 255 (Bankr. D.N.J. 2017) ("Section 547(b)(5)'s requirement that the creditor not receive more by a prepetition transfer than it would under chapter 7 simply carries out the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off vis-à-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate.") (internal quotations and citations omitted); *see also* 5 Collier on Bankruptcy P 547.03 (16th Ed. 2023) ("Generally, payments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a chapter 7 liquidation.").

---

[9] *See, e.g.*, Disclosure Statement at 6 ("The Alameda Pledge Agreement is secured by Alameda's rights, titles, and interests in, among other things, Alameda's shares of Grayscale Bitcoin Trust (GBTC), Grayscale Ethereum Trust (ETHE) and shares of the Bitwise 10 Crypto Index Fund (BITW). Pursuing this collateral will be difficult and will require significant institutional knowledge and expertise. In a liquidation, [BlockFi] do[es] not believe that a trustee would be successful in recovering this collateral and balances have been assumed to be recoverable at 0%.").

43.    Resolution of Alameda's preference claims is also contingent upon a valuation of FTT, which served as Alameda's primary form of collateral. Complex factual questions will need to be resolved by a court to determine the value of FTT and, in turn, whether BlockFi's security interest exceeded the value of Alameda's alleged preferential transfers.[10] To the extent BlockFi was rendered unsecured by Alameda's fraud, this Court should equitably subordinate the Alameda Claims pursuant to section 510(c) of the Bankruptcy Code.[11]

44.    FTX's own infamous and pervasive fraud ultimately caused FTX's bankruptcy filing, the DOJ seizure of Robinhood Shares, and the many other adverse events that rendered BlockFi effectively unsecured with respect to the Alameda Loan. Accordingly, if this Court concludes BlockFi is unsecured, BlockFi is unsecured solely as a result of FTX's fraud or inequitable conduct. Such acts constitute sufficient grounds for equitably subordinating the Alameda Claims, thus rendering them contingent. *See* 11 U.S.C. § 510(c); *Citicorp Venture Capital v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986–87 (3d Cir. 1998) (establishing three elements for equitable subordination, including (1) claimant engaged in inequitable conduct, (2) misconduct resulted in injury to other creditors, and (3) equitable subordination is not inconsistent with the Bankruptcy Code); *In re NJ Affordable Homes Corp.*, Case No. 05-60442 (DHS), 2013 WL 6048836, at *45 (Bankr. D.N.J. Nov. 8, 2013) (defining

---

[10] For example, counsel to FTX stated on the record in the Genesis Global bankruptcy cases that—

> The price of FTT is not simple to calculate because there have been allegations the price was subject to manipulation by Sam Bankman-Fried and the other founders of FTX. So the spot price may not be indicative of value. Expert evidence will be required. This question of the value of FTT is generally applicable to all holders of the FTT token and all other stakeholders of FTX that might not hold the token but object to the valuation.

June 15, 2023 Transcript of Genesis Global Proceedings, at 16:14–22.

[11] *See, e.g.*, *Complaint* [FTX Docket No. 1881], at 12 ("[T]he Insiders routinely, and secretly, used Alameda to loot 'several billion dollars' from FTX.com using the 'special privileges,' thereby defrauding FTX.com's creditors.").

inequitable conduct to include fraud, illegality, and breach of fiduciary duties, among other things).
Alternatively, this Court has other grounds to disallow Alameda's preference claims under other
provisions of the Bankruptcy Code or applicable state law, which likewise render the claims
contingent. *See In re Philip Services (Delaware), Inc.*, 267 B.R. 62, 70–71 (Bankr. D. Del. 2001)
(observing that section 547(c) does not provide the exclusive defenses to a preference action). The
innocent creditors of BlockFi's estates should not suffer additional harm beyond the harm FTX
has already caused to BlockFi's estates.[12]

45.      Finally, FTX's thumb-in-the-wind estimate that the "total amount of avoidable
pledges combined between the Emergent Pledge and the Alameda Pledge exceeds $1 billion as of
the time of the transfers" fails to state a liquidated claim. With respect to both the Alameda and
Emergent Pledges, BlockFi has received no benefit from either pledge and will have to expend
estate resources attempting to recover the pledged collateral with no guarantee of success. To the
extent Alameda seeks to avoid the Alameda Pledge as a preference or fraudulent transfer, its claims
must fail because BlockFi cannot turn over assets it does not control or possess. Accordingly, the
Alameda Claims related to the Alameda Pledge constitute contingent and unliquidated claims that
should be estimated at $0.

**B.      Estimation of the FTX Claims is Necessary Because Liquidation of the FTX Claims
Would Unduly Delay the Administration of these Chapter 11 Cases**

46.      "Estimation by the Court is mandatory, provided that the movant establishes that
fixing or liquidation of the claim would unduly delay the administration of the case." *In re RNI*

---

[12] *See, e.g.*, *id.* at 10 ("The Insiders used their control over the FTX Group's systems to perpetrate a massive fraud—
squandering the FTX Group's assets on, among other things, luxury homes, political and 'charitable' contributions,
and various investments that would inure to the benefit of the Insiders rather than the corporate entities that had paid
for them. The Insiders funded much of this spending through Alameda, which, at the Insiders' direction, unlawfully
diverted assets belonging to FTX.com, the principal international cryptocurrency exchange operated by the FTX
Group, to the Insiders' pet projects. In doing so, the Insiders defrauded FTX.com's customers, creditors, and
shareholders, and violated their fiduciary duties and numerous laws.").

*Wind Down Corp.,* 369 B.R. 174, 191 (Bankr. D. Del. 2007) (noting that the purpose of section 502(c) is to prevent the debtor's estate from "being held hostage by the fixing or liquidation of an unliquidated or contingent claim"); *see also In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005) ("Section 502(c) of the Bankruptcy Code is drafted in mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so long as the [fixing or liquidation] of the particular claim would 'unduly delay the administration of the case.'"). Estimation becomes necessary when liquidation of a contingent and/or unliquidated claim would unduly delay administration of the bankruptcy case. *See Fed.-Mogul Glob., Inc.*, 330 B.R. at 154. The purpose of an estimation proceeding is to avoid delays that may arise from waiting to fix the value of contingent claims. *In re Stone & Webster, Inc.*, 279 B.R. 748, 810 (Bankr. D. Del. 2002); *see also In re Chemtura Corp.*, 448 B.R. 635, 649–50 (Bankr. S.D.N.Y. 2011) ("[Estimation] provides a means for a bankruptcy court to achieve . . . distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine.").

47.     Further, estimation at $0 is consistent with the underlying purposes of the code. *See Bittner*, 691 F.2d at 137 (observing that by estimating claims at $0, the "bankruptcy court avoided the possibility of a protracted and inequitable reorganization proceeding," which "is consistent with the Chapter 11 concerns of speed and simplicity" but does not deprive the claimant of its right to recover on contingent claims).

48.     Estimation of the FTX Claims is necessary to avoid undue delay in the administration of these Chapter 11 Cases. Declining to estimate the FTX Claims would undoubtedly delay the timing of distributions to creditors. As noted, FTX has not moved this Court to lift the stay to initiate an adversary proceeding to recover on its preference or fraudulent transfer claims, improperly asserting such claims in the FTX Proofs of Claim instead of commencing

litigation as required under the Bankruptcy Rules. *See* FED. R. BANKR. P. 7001(1). Indeed, FTX's professionals have already spent approximately 1,200 hours and incurred over $1.3 million in fees, collectively, on BlockFi matters,[13] without actively pursuing any purported claims against BlockFi.

49.    Similarly, this Court must determine the true nature of the transaction underlying the FTX Facility Claims, considering evidence and briefing in the context of a lawsuit, before BlockFi can be found liable for any of the FTX Facility Claims. Should FTX ever initiate a proceeding to recover on any of the FTX Claims, BlockFi is prepared to assert numerous affirmative defenses to, and dispute the validity and allowance of, such claims. The litigation required to adjudicate the FTX Claims will likely take many months if not years to complete given the unreliability of FTX's records, and it will likely result in a finding of no liability given the myriad evidentiary deficiencies undermining the FTX Claims. Awaiting the outcome of significant discovery, a multi-week trial, the necessary post-trial motions, and any appeal to follow would unduly delay the administration of BlockFi's estates. The Third Circuit has held that trials "usually will run counter to the efficient administration of the bankrupt's estate and where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value." *Bittner*, 691 F.2d at 135.

50.    BlockFi has worked diligently to prepare and file the proposed Plan, which maximizes recovery with a carefully designed confirmation timeline that aims to reach the distribution phase as quickly as possible. BlockFi and its creditors should not be prejudiced by

---

[13] These amounts represent estimates which BlockFi calculated based on time entries containing the word "BlockFi" or time entries that were otherwise clearly related to BlockFi matters as set forth in the FTX professionals' monthly fee statements through and including June 30, 2023, which are all available at the FTX claims agent's website: https://restructuring.ra.kroll.com/FTX/Home-DocketInfo. The estimates are conservative in that they are based on the blended rates set forth in each fee statement and do not include, for example, certain time entries related to proofs of claim "against relevant third party" which may have been related to the FTX Proofs of Claims.

FTX's procedurally defective, unsubstantiated claims, which are based on FTX's wholly unreliable books and records.

51.    FTX has asserted contingent and unliquidated claims subject to affirmative defenses under both state law and the Bankruptcy Code, including claims for and against property it does not own (such as the Emergent Pledge and Exchange Withdrawals). With respect to its purportedly liquidated claims, FTX has asserted unsubstantiated dollar values notwithstanding that FTX and BlockFi transacted primarily in cryptocurrency and other assets of fluctuating values. To liquidate claims against assets of fluctuating value, this Court must make determinations as to the appropriate valuation dates, which will require evidence, briefing, and likely result in different valuation dates depending on, among other things, (i) the type of asset and (ii) the timing and nature of the underlying transactions. FTX has provided no evidence to support the dollar amounts asserted in the FTX Proofs of Claim, which are based on its unreliable books and records.

52.    Moreover, the FTX estates owe the BlockFi estates more than the aggregate value of the FTX Claims. The bulk of the FTX Claims, which are comprised of Exchange Withdrawals valued at $3.6 billion, are completely offset by contemporaneous deposits BlockFi made during the Preference Period, valued at over $4.3 billion. The FTX Claims also include a $560 million avoidance action regarding the Emergent Pledge, which, as noted, FTX has no standing to assert given that it lacks an ownership interest in the Robinhood Shares. Accordingly, after appropriately discounting the FTX Claims by $4.2 billion in connection with the Exchange Withdrawals and the Robinhood Shares, FTX has asserted approximately $1 billion of claims against the BlockFi estates. On the other hand, BlockFi has legitimate claims for (i) turnover of its digital assets frozen on the FTX Exchanges and (ii) return of the Alameda Loan Assets. Using current pricing, the value of the Alameda Loan Assets alone exceeds $1.1 billion. Thus, any Allowed claim that the FTX

estates could potentially have against BlockFi is subject to setoff pursuant to applicable law and the terms of the agreements between the parties. *See* 11 U.S.C. § 558. Such claims are also subject to temporary disallowance until FTX returns any and all digital assets that constitute property of BlockFi's estates. *See id.* § 502(d) (". . . the court **shall** disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title . . . unless such entity . . . has paid the amount, or turned over any such property, for which such entity . . . is liable . . . .") (emphasis added).

53.     Finally, FTX attaches no evidence or documentation supporting the FTX Claims. FTX has repeatedly admitted that their books and records lack any credibility or integrity whatsoever.[14] Based on these unreliable books and records, FTX now asserts entirely contingent and unliquidated claims. These Chapter 11 Cases should not be delayed so that FTX can (1) re-create evidence that it has continuously mismanaged; (2) analyze whether it has any legitimate claims against BlockFi; and then (3) potentially, at some unknown time, try to lift the stay to pursue unsubstantiated preference and fraudulent transfer claims, among others. Based on the contingent, unliquidated, disputed nature of the FTX Claims, the FTX Claims should be estimated at $0 to prevent any undue delay in these Chapter 11 Cases.

## C.     The Court May Use Any Method Best Suited to the Circumstances to Estimate the FTX Claims

54.     There is no requirement that a particular kind of procedure be employed in estimating the value of a claim. *See Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 356 (3d Cir. 2002). Congress intended estimation to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the contingencies at issue. *See Bittner*, 691 F.2d at 135 ("Despite

---

[14] *See supra* ¶ 10, note 3.

the lack of express direction on the matter, we are persuaded that Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue."). Accordingly, this Court has broad discretion to choose whatever method it deems best-suited to the particular circumstances to estimate the FTX Claims. *See In re Innovasystems, Inc.*, Case No. 11-36228-ABA, 2014 WL 7235527, at *7 (Bankr. D.N.J. Dec. 18, 2014) ("There is no particular method to be employed in estimating a claim. Estimation decisions therefore fall within the discretion of the trial judge.") (citations omitted); *G-I Holdings*, 323 B.R. at 599. Estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim." *Bittner*, 691 F.2d at 135. There are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Bankruptcy Code. *G-I Holdings*, 323 B.R. at 599 (citing *Bittner*, 691 F.2d at 136).

55.     An estimation, by definition, is an approximation and necessarily involves comparing a known or established quantum of data to the thing being estimated. *Fed.-Mogul Glob., Inc.*, 330 B.R. at 155. Courts recognize they are dealing with uncertainties and are attempting to make predictions which are themselves based upon predictions and assumptions. *Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719, 721 (D. Del. 2005). Thus, courts consider all factors and circumstances surrounding the claims, but do not seek to estimate claims with mathematical precision. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 124 (D. Del. 2006) ("[T]he Court will not seek to analyze the estimations before it for mathematical precision, nor will it attempt to reach its own exact number."). The only requirement is that the value of the claim be determined in accordance with the legal rules that will govern the final amount of the claim. *See id.* at 123.

56.     The FTX Proofs of Claim are replete with conclusory allegations and unsubstantiated claims. Each of the FTX Claims is subject to contingencies that must be resolved through litigation before they can be liquidated. Such litigation is currently stayed by both the automatic stay in these Chapter 11 Cases and the Standstill Stipulations. FTX must overcome too many factual and legal barriers to justify a reserve that will delay distributions at the expense of BlockFi's clients. Thus, no matter the method this Court chooses to use, the circumstances of these Chapter 11 Cases and the contingencies surrounding the FTX Claims warrant estimation of all the FTX Claims at $0.

## Reservation of Rights

57.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against BlockFi, (b) a waiver of BlockFi's rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of BlockFi's rights under the Bankruptcy Code or any other applicable law.

## Separate Contested Matter

58.     Each of the FTX Claims constitutes a separate contested matter pursuant to Bankruptcy Rule 9014. BlockFi respectfully requests that any order entered by the Court with respect to an FTX Claim described in this Motion be deemed a separate order with respect to each of the FTX Claims.

25

**Waiver of Memorandum of Law**

59.     BlockFi respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which BlockFi relies is set forth herein and the Motion does not raise any novel issues of law.

**No Prior Request**

60.     BlockFi has made no prior request for the relief sought in this Motion to this Court or any other court.

**Notice**

61.     BlockFi will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) FTX; (b) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (c) BlockFi's 50 largest unsecured creditors (on a consolidated basis); (d) the United States Attorney's Office for the District of New Jersey; (e) the Internal Revenue Service; (f) the attorneys general in the states where BlockFi conducts their business operations; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). BlockFi submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**WHEREFORE**, BlockFi respectfully requests entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

Respectfully Submitted,

Dated: August 11, 2023                    /s/ *Michael D. Sirota*
                                          _____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq. (NJ Bar No. 014321986)<br>Warren A. Usatine, Esq. (NJ Bar No. 025881995)<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>(201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (admitted *pro hac vice*)<br>Christine A. Okike, P.C. (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 446-4800<br>jsussberg@kirkland.com<br>christine.okike@kirkland.com<br><br>**HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Kenric D. Kattner, Esq. (admitted *pro hac vice*)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>kenric.kattner@haynesboone.com<br><br>*Attorneys for Debtors and Debtors in Possession* | |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>    Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>**Hearing Date and Time:**<br>**September 20, 2023 @ 10:00 a.m. ET** |

## ORDER GRANTING DEBTORS' MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS AGAINST THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

1

(Page 2)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS AGAINST THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE |

The relief set forth on the following pages, numbered three (3) through five (5) is

**ORDERED**.

(Page 3)

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS AGAINST THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE |

Upon consideration of the *Debtors' Motion to Estimate the Amount of the FTX Claims Against the Debtors Pursuant to Section 105(a) and 502(c) of the Bankruptcy Code* (the "Motion")[1]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice of the Motion need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their respective estates and creditors, and all parties-in-interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record of the Hearing, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The FTX Claims shall be estimated at $0.00 for distribution purposes.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS AGAINST THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE |

3.      Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

4.      The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

5.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

6.      Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

7.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**<u>EXHIBIT B</u>**

**ALAMEDA'S PROOF OF CLAIM
AGAINST BLOCKFI INTERNATIONAL
(A representative of all 36 duplicative claims filed by FTX)**

United States Bankruptcy Court, District of New Jersey (Trenton)

| Fill in this information to identify the case (Select only one Debtor per claim form): | | |
|---|---|---|
| ☒ BlockFi Inc. (Case No. 22-19361) | ☐ BlockFi Wallet LLC (Case No. 22-19366) | ☐ BlockFi Investment Products LLC (Case No. 22-19370) |
| ☐ BlockFi Trading LLC (Case No. 22-19363) | ☐ BlockFi Ventures LLC (Case No. 22-19367) | ☐ BlockFi Services Inc. (Case No. 22-19371) |
| ☐ BlockFi Lending LLC (Case No. 22-19365) | ☐ BlockFi International Ltd. (Case No. 22-19368) | ☐ BlockFi Lending II LLC (Case No. 22-19374) |

## Modified Official Form 410

# Proof of Claim
04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Alameda Research Ltd. on behalf of all FTX Debtors (as defined in the Attachment)

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

| | |
|---|---|
| Address1: | Brian Glueckstein |
| Address2: | C/O Sullivan & Cromwell LLP |
| Address3: | 125 Broad Street |
| Address4: | |
| City: | New York |
| State: | NY |
| Postal Code: | 10004 |
| Country: | |
| Contact phone | 2125584000 |
| Contact email | gluecksteinb@sullcrom.com |

Where should payments to the creditor be sent? (if different)

| | |
|---|---|
| Address1: | |
| Address2: | |
| Address3: | |
| Address4: | |
| City: | |
| State: | |
| Postal Code: | |
| Country: | |
| Contact phone | |
| Contact email | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.   Claim number on court claims registry (if known) _____     Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7. How much is the claim?**

$ __See attached Addendum.__   **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached Addendum.

_____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* |

| Amount entitled to priority |
|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).      $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).      $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).      $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).      $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).      $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(    ) that applies.      $ _____ |
| * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. |

| | |
|---|---|
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**    $ _____ |

---

### Part 3:   Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>*BG/AT*       03/31/2023<br>_____    _____<br>Electronic Signature        Date<br><br>**Name of the person who is completing and signing this claim** |

| | | | |
|---|---|---|---|
| Name | Brian | D. | Glueckstein |
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Sullivan & Cromwell LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 125 Broad Street | | |
| | Number     Street | | |
| | New York | NY | 10004 |
| | City | State | ZIP Code    Country |
| Contact phone | 2125584000 | Email | gluecksteinb@sullcrom.com |

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:

City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No
-----------------------------------------------------------------------------------------------------------

Attachment Filename:

BlockFi POC Addendum (FILING VERSION) (4856-5426-1594.2).pdf

**KROLL**

**<u>Addendum</u>**

**ADDENDUM TO PROOF OF CLAIM OF FTX TRADING LTD., ALAMEDA
RESEARCH LTD., WEST REALM SHIRES INC., WEST REALM SHIRES SERVICES
INC. AND THEIR AFFILIATED DEBTORS-IN-POSSESSION AGAINST BLOCKFI,
INC., BLOCKFI TRADING LLC, BLOCKFI LENDING LLC, BLOCKFI WALLET
LLC, BLOCKFI VENTURES LLC, BLOCKFI INTERNATIONAL LTD., BLOCKFI
INVESTMENT PRODUCTS LLC, BLOCKFI SERVICES, INC. AND BLOCKFI
LENDING II LLC**

        FTX Trading Ltd., Alameda Research Ltd. ("Alameda"), West Realm Shires Inc.
("WRS"), West Realm Shires Services Inc. ("WRSS") and their affiliated debtors-in-possession
as set forth in Exhibit A (collectively, the "FTX Debtors") hereby submit this proof of claim (this
"Proof of Claim") against Debtors BlockFi, Inc., BlockFi Trading LLC, BlockFi Lending LLC,
BlockFi Wallet LLC, BlockFi Ventures LLC, BlockFi International Ltd., BlockFi Investment
Products LLC, BlockFi Services, Inc. and BlockFi Lending II LLC (collectively, the "Debtors")
in the jointly administered chapter 11 case captioned *In re BlockFi Inc., et al.*, Case No. 22-
19361 (MBK) pending in the United States Bankruptcy Court for the District of New Jersey (the
"Bankruptcy Court") in accordance with the *Order (I) Setting Bar Dates for Submitting Proofs of
Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice
Thereof, and (IV) Granting Related Relief* [Dkt. No. 440].

        On November 9 and November 11, 2022, as applicable, each of the FTX Debtors
filed voluntary petitions for relief under title 11 of the United States Bankruptcy Code (the
"Bankruptcy Code").[1]  Those chapter 11 cases are being jointly administered in the case of *In re
FTX Trading Ltd.*, Case No. 22-11068 (JTD) pending in the United States Bankruptcy Court for
the District of Delaware (the "FTX Chapter 11 Cases").  No trustee has been appointed for the
FTX Debtors in the FTX Chapter 11 Cases, and the FTX Debtors continue to operate their
businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a)
and 1108 of the Bankruptcy Code.  The FTX Debtors' claims (the "Claims") against the Debtors,
as applicable and as set forth below, arise out of the following facts and circumstances.[2]

**I.**      **CLAIMS**

      **A.  Claim for Outstanding Amounts Due Under Loan Agreement**

        On June 30, 2022, Debtor BlockFi Inc., as borrower, entered into that certain
Loan Agreement (the "Loan Agreement"), with WRS, as lender, pursuant to which WRS agreed
to provide Debtor BlockFi Inc. with a revolving credit facility of up to $400 million (the
"Loans").  BlockFi Inc.'s obligations under the Loan Agreement were guaranteed by Debtor
BlockFi Trading LLC and Debtor BlockFi Lending LLC (the "BlockFi Guarantors").

        As of November 28, 2022, which is the date on which the Debtors filed their
petitions for relief under the Bankruptcy Code, WRS was owed $275 million outstanding under
the Loan Agreement, plus amounts presently unliquidated consisting of, among other amounts,

---

[1]    November 9 is the petition date for each of the FTX Debtors, except for West Realm Shires, Inc.

[2]    For the avoidance of doubt, this Proof of Claim and each of the Claims herein are asserted against the specified
    Debtors on behalf of each of the FTX Debtors, and each of the FTX Debtors expressly reserves all rights with
    respect to all claims, defenses, setoff and other causes of action against the Debtors.

Case 22-19361-MBK   Doc 1347   Filed 08/11/23   Entered 08/11/23 18:57:52   Desc Main
Document      Page 43 of 56

accrued and unpaid interest of not less than $4.6 million under the Loan Agreement[3] and all other amounts due or to become due to WRS under the terms of the Loan Agreement (collectively, the "Loan Claim"). Accordingly, WRS and any other relevant FTX Debtors assert the presently unliquidated Loan Claim against each of Debtor BlockFi Inc., as borrower, Debtor BlockFi Trading LLC, as guarantor, and Debtor BlockFi Lending LLC, as guarantor.

## B. Claims for Avoidance of Payments Under Loan Agreements

On June 15, 2019, Alameda and Debtor BlockFi Lending LLC entered into that certain Master Digital Currency Loan Agreement ("MDLA") pursuant to which Debtor BlockFi Lending LLC agreed to lend Alameda certain digital currency. On August 14, 2020, Alameda and Debtor BlockFi International LLC entered into that certain Master Loan Agreement ("BlockFi Intl. MLA") pursuant to which Debtor BlockFi International LLC agreed to lend Alameda certain digital currency, US dollars or other currencies. On January 26, 2022, Alameda and Debtor BlockFi International Ltd. entered into that certain Amended and Restated Master Loan Agreement (the "Amended MLA", together with the MDLA and the BlockFi Intl. MLA, the "Alameda MLAs"), pursuant to which Debtor BlockFi International Ltd agreed to lend Alameda certain digital currency, US dollars or other currencies.

During the 90-day period prior to the commencement of the FTX Chapter 11 Cases, Alameda made certain payments under the Alameda MLAs to Debtor BlockFi Lending in the aggregate amount of $124,423,552 and to Debtor BlockFi International LLC in the aggregate amount of $7,825,017 (the "Alameda Repayments"). The Alameda Repayments constitute preferential transfers under Section 547 of the Bankruptcy Code and are subject to avoidance by Alameda under Section 550(a) of the Bankruptcy Code (the "Repayment Avoidance Claim").

Alameda and any other relevant FTX Debtors accordingly assert the Repayment Avoidance Claim against each of Debtor BlockFi Lending LLC and Debtor BlockFi International Ltd, and any other Debtor that is an immediate or mediate transferee of the Alameda Repayments.

## C. Claims for Avoidance Relating to Pledges of Certain Collateral under the Alameda MLAs

During the 90-day period prior to the commencement of the FTX Chapter 11 Cases, Alameda made certain pledges of collateral under the Alameda MLAs to Debtor BlockFi Lending in the aggregate amount of $147,755,170; to Debtor BlockFi International LLC in the aggregate amount of $24,687,432 and to Debtors whose identities remain unconfirmed in the aggregate amount of $141,625,004 (the "MLA Collateral Pledges"). The Alameda Collateral Pledges constitute preferential transfers under Section 547 of the Bankruptcy Code and are

---

[3]   Under the terms of the Loan Agreement, the outstanding principal balance under the Loan Agreement accrues interest at a rate equal to five percent (5.0%) per annum, payable at maturity.

-2-

4895-8609-2120 v.5

subject to avoidance by Alameda under Section 550(a) of the Bankruptcy Code (the "MLA Collateral Pledge Avoidance Claim").[4]

Alameda and any other relevant FTX Debtors accordingly assert the MLA Collateral Pledge Avoidance Claim against each of Debtor BlockFi Lending LLC and Debtor BlockFi International Ltd, and any other Debtor that is an immediate or mediate transferee of the MLA Collateral Pledges.

### D. Claims Relating to Pledges of Certain Collateral Pursuant to Pledge Agreements

On November 9, 2022, Emergent Fidelity Technologies Ltd. ("Emergent"), an affiliate of the FTX Debtors, Debtor BlockFi Lending LLC and Debtor BlockFi International purportedly entered into a Pledge Agreement pursuant to which Emergent purported to pledge approximately 56 million shares of Robinhood Markets, Inc. Class A common stock and proceeds related thereto (the "Emergent Pledge"), contained in an brokerage account at ED&F Man Capital Markets, Inc. (n/k/a Marex Capital Markets Inc.) ("EDFM").  The Emergent Pledge was made to secure loans owed by FTX Debtor Alameda, and consists of assets either owned by Alameda or purchased with funds belonging to Alameda.  The Emergent Pledge is avoidable pursuant to sections 547 and 548 of the Bankruptcy Code, and subject to recovery by the FTX Debtors pursuant to section 550 of the Bankruptcy Code.

Also on November 9, 2022, Alameda purported to enter into a Pledge Agreement pursuant to which Alameda purported to pledge securities and other assets in an Alameda account held in an account at EDFM (the "Alameda Pledge").  The facts and circumstances concerning the Alameda Pledge, made at the direction of Samuel Bankman-Fried, establish that the Alameda Pledge is avoidable pursuant to section 547 and 548 of the Bankruptcy Code, and subject to recovery by the FTX Debtors pursuant to section 550 of the Bankruptcy Code.

The total amount of avoidable pledges combined between the Emergent Pledge and the Alameda Pledge exceeds $1 billion as of the time of the transfers.

Alameda and any other relevant FTX Debtors assert all presently unliquidated claims relating to the Emergent Pledge and the Alameda Pledge.

### E.  Claims Relating to Withdrawals of FTX.com Exchange Assets

Prior to the commencement of the FTX Chapter 11 Cases, Debtors BlockFi Lending LLC and BlockFi International Ltd. held certain assets on the digital exchanges operated by the FTX Debtors (the "Exchange Assets").  During the 90-day period prior to the commencement of the FTX Chapter 11 Cases, Debtor BlockFi Lending LLC withdrew Exchange Assets in the aggregate amount of $25,000,362 and Debtor BlockFi International Ltd. withdrew Exchange Assets in the aggregate amount of $3,585,787,270 (the "Exchange Withdrawals"). The Exchange Withdrawals constitute preferential transfers under Section 547 of the Bankruptcy Code and are subject to avoidance by the FTX Debtors under 550(a) of the Bankruptcy Code (the "Exchange Withdrawal Claim").

---

[4]     In addition to the MLA Collateral Pledges, all collateral held by the Debtors under the Alameda MLAs as of the commencement of the FTX Chapter 11 Cases is set forth in Exhibit B.

FTX Trading Limited and WRSS, along with any other relevant FTX Debtors, accordingly assert the Exchange Withdrawal Claim against each of Debtor BlockFi Lending LLC and Debtor BlockFi International Ltd, and any other Debtor that is an immediate or mediate transferee of the Exchange Withdrawals.

### F.  Claim for Damages Relating to Option Agreement

On June 30, 2022, WRS, FTX Trading Ltd., Debtor BlockFi Inc. and certain equity holders of Debtor BlockFi Inc. entered into that certain Option Agreement (the "Option Agreement"), pursuant to which WRS acquired an exclusive option to acquire equity securities of Debtor BlockFi Inc.  The FTX Debtors, including, for the avoidance of doubt, WRS and FTX Trading Ltd., assert presently unliquidated claims against each of the Debtors including, without limitation, for damages arising from any Debtors' misrepresentations and improper disclosures in connection with, and inducing WRS and FTX Trading Ltd. to enter into, the Loan Agreement and the Option Agreement.

## II.    ADMINISTRATIVE EXPENSE CLAIMS

This Proof of Claim is without prejudice to claims, if any, that the FTX Debtors have or may have for payment of any administrative expenses allowable under section 503(b) of the Bankruptcy Code or otherwise, whether or not such amounts are included in this Proof of Claim, and the FTX Debtors' rights to file such claims or any similar claims at an appropriate time are expressly reserved.

## III.    ADDITIONAL OR SUPPLEMENTAL PROOFS OF CLAIM

This Proof of Claim is filed without prejudice to the filing by, or on behalf of, the FTX Debtors or its affiliates, of additional or supplemental claims or proofs of claim with respect to these claims or any other liability or indebtedness of the Debtors as more information becomes available.

## IV.    NO WAIVER

The filing of this Proof of Claim is not and should not be construed to be: (a) a waiver or release any of the FTX Debtors' rights against any of the Debtors or any other entity or person liable for all or part of any of the claims described herein, including, but not limited to, those owned by or affiliated with any of the Debtors; (b) a submission of jurisdiction to the Bankruptcy Court for adjudication of any of the claims set forth herein; (c) a waiver of the right to seek to have the reference withdrawn with respect to (i) the subject matter of this Proof of Claim, (ii) any objection or other proceedings commenced with respect thereto, or (iii) any other proceedings commenced in these bankruptcy cases against or otherwise involving any of the FTX Debtors; (d) a waiver of any right to the subordination, in favor of the FTX Debtors, of indebtedness or liens held by creditors of any of the Debtors; (e) a waiver or release of rights to setoff or recoupment; or (f) to elect remedies or choice of law.  The FTX Debtors expressly reserve all rights and remedies to satisfy the Claims.

## V.        RESERVATION OF RIGHTS

This Proof of Claim is filed with full reservation of rights, including the right to assert a claim for additional amounts, the right to file additional or other pleadings to assert any of the amounts set forth in the Claims, the right to pursue the Claims based upon additional or alternative legal theories, and the right to assert additional, supplementary, and/or amended proofs of claim and requests for administrative expense reimbursements based on events, information, and/or documents obtained from the Debtors or others through discovery or otherwise.  Without in any way limiting the foregoing, the FTX Debtors' rights to assert any claims that it may have against the Debtors, or against any other party or property other than the Debtors and their estates, are expressly reserved.  To the extent that any of the Debtors or any other party takes any action that would give rise to a counterclaim or other rights or claims that the FTX Debtors may have against any of the Debtors, the FTX Debtors reserve all of their rights.  By filing this Proof of Claim, the FTX Debtors do not waive, and specifically reserve, their respective procedural and substantive defenses to any claim that may be asserted against the FTX Debtors by any of the Debtors, by any trustee of their estates, by any official committee, or by any other party.  This Proof of Claim is not intended, nor should it be construed, as the FTX Debtors' consent to jurisdiction in the Bankruptcy Court for any purpose other than with respect to this Proof of Claim, or as a waiver of the FTX Debtors' right to a trial by jury in any action or proceeding.

The FTX Debtors reserve the right to attach, produce and/or rely upon additional documentation that supports the Claims and any additional documents that may become available after further investigation or discovery, or upon request of any of the Debtors.  Nothing contained in this Proof of Claim shall limit the rights of the FTX Debtors to file papers or pleadings, or commence any proceedings, or take any actions concerning the Claims.

## VI.      NOTICE

All matters concerning this Proof of Claim, including any request for information concerning this Proof of Claim, should be addressed as follows:

> FTX Trading Ltd. and its affiliated Debtors
> c/o Sullivan & Cromwell LLP
> Attn:   Andrew G. Dietderich
>          Brian D. Glueckstein
>          Benjamin S. Beller
> 125 Broad Street
> New York, New York 10004
> Phone: (212) 558-4000
> Fax: (212) 558-3588
> E-mail: dietdericha@sullcrom.com
>          gluecksteinb@sullcrom.com
>          bellerb@sullcrom.com

**<u>Exhibit A</u>**

**FTX Debtors**

1.      Alameda Aus Pty Ltd, a company organized under the laws of Australia.

2.      Alameda Global Services Ltd., a company organized under the laws of the British Virgin
Islands.

3.      Alameda Research (Bahamas) Ltd, a company organized under the laws of the Bahamas.

4.      Alameda Research Holdings Inc., a corporation organized under the laws of the state of
Delaware.

5.      Alameda Research KK, a company organized under the laws of Japan.

6.      Alameda Research LLC, a limited liability company organized under the laws of the state
of Delaware.

7.      Alameda Research Ltd, a company organized under the laws of the British Virgin
Islands.

8.      Alameda Research Pte Ltd, a company organized under the laws of Singapore.

9.      Alameda Research Yankari Ltd, a company organized under the laws of Nigeria.

10.     Alameda TR Ltd, a company organized under the laws of Antigua and Barbuda.

11.     Alameda TR Systems S. de R. L., a company organized under the laws of Panama.

12.     Allston Way Ltd, a company organized under the laws of Antigua and Barbuda.

13.     Analisya Pte Ltd, a company organized under the laws of Singapore.

14.     Atlantis Technology Ltd., a company organized under the laws of Antigua and Barbuda.

15.     Bancroft Way Ltd, a company organized under the laws of Antigua and Barbuda.

16.     Blockfolio, Inc., a corporation organized under the laws of the state of Delaware.

17.     Blue Ridge Ltd, a company organized under the laws of Antigua and Barbuda.

18.     Cardinal Ventures Ltd, a company organized under the laws of Antigua and Barbuda.

19.     Cedar Bay Ltd, a company organized under the laws of Antigua and Barbuda.

20.     Cedar Grove Technology Services, Ltd, a company organized under the laws of Antigua and Barbuda.

21.     Clifton Bay Investments LLC, a limited liability company organized under the laws of the state of Delaware.

22.     Clifton Bay Investments Ltd, a company organized under the laws of the British Virgin Islands.

23.     Cottonwood Grove Ltd, a company organized under the laws of Hong Kong.

24.     Cottonwood Technologies Ltd., a company organized under the laws of Antigua and Barbuda.

25.     Crypto Bahamas LLC, a limited liability company organized under the laws of the state of Delaware.

-2-

26.    DAAG Trading, DMCC, a company organized under the laws of UAE.

27.    Deck Technologies Holdings LLC, a limited liability company organized under the laws
       of the state of Delaware.

28.    Deck Technologies Inc., a corporation organized under the laws of the state of Delaware.

29.    Deep Creek Ltd, a company organized under the laws of Antigua and Barbuda.

30.    Digital Custody Inc., a corporation organized under the laws of the state of Delaware.

31.    Euclid Way Ltd, a company organized under the laws of Antigua and Barbuda.

32.    FTX (Gibraltar) Ltd, a company organized under the laws of Gibraltar.

33.    FTX Canada Inc, a company organized under the laws of Canada.

34.    FTX Certificates GmbH, a company organized under the laws of Switzerland.

35.    FTX Crypto Services Ltd., a company organized under the laws of Cyprus.

36.    FTX Digital Assets LLC, a limited liability company organized under the laws of the
       state of Delaware.

37.    FTX Digital Holdings (Singapore) Pte Ltd, a company organized under the laws of
       Singapore.

38.    FTX EMEA Ltd., a company organized under the laws of Cyprus.

39.    FTX Equity Record Holdings Ltd, a company organized under the laws of Seychelles.

-3-

40.  FTX EU Ltd., a company organized under the laws of Cyprus.

41.  FTX Europe AG, a company organized under the laws of Switzerland.

42.  FTX Exchange FZE, a company organized under the laws of UAE.

43.  FTX Hong Kong Ltd, a company organized under the laws of Hong Kong.

44.  FTX Japan Holdings K.K., a company organized under the laws of Japan.

45.  FTX Japan K.K., a company organized under the laws of Japan.

46.  FTX Japan Services KK, a company organized under the laws of Japan.

47.  FTX Lend Inc., a corporation organized under the laws of the state of Delaware.

48.  FTX Marketplace, Inc., a corporation organized under the laws of the state of Delaware.

49.  FTX Products (Singapore) Pte Ltd, a company organized under the laws of Singapore.

50.  FTX Property Holdings Ltd, a company organized under the laws of the Bahamas.

51.  FTX Services Solutions Ltd., a company organized under the laws of the British Virgin Islands.

52.  FTX Structured Products AG, a company organized under the laws of Liechtenstein.

53.  FTX Switzerland GmbH, a company organized under the laws of Switzerland.

54.  FTX Trading GmbH, a company organized under the laws of Germany.

55.  FTX Trading Ltd, a company organized under the laws of Antigua and Barbuda.

-4-

56.   FTX US Services, Inc., a corporation organized under the laws of the state of Delaware.

57.   FTX US Trading, Inc., a corporation organized under the laws of the state of Delaware.

58.   FTX Ventures Ltd, a company organized under the laws of the British Virgin Islands.

59.   FTX Zuma Ltd, a company organized under the laws of Nigeria.

60.   GG Trading Terminal Ltd, a company organized under the laws of Ireland.

61.   Global Compass Dynamics Ltd., a company organized under the laws of Antigua and Barbuda.

62.   Good Luck Games, LLC, a limited liability company organized under the laws of the state of Washington.

63.   Goodman Investments Ltd., a company organized under the laws of the British Virgin Islands.

64.   Hannam Group Inc, a company organized under the laws of Korea.

65.   Hawaii Digital Assets Inc., a corporation organized under the laws of the state of Delaware.

66.   Hilltop Technology Services LLC, a limited liability company organized under the laws of the state of Delaware.

67.   Hive Empire Trading Pty Ltd, a company organized under the laws of Australia.

68.   Innovatia Ltd, a company organized under the laws of Cyprus.

-5-

69.     Island Bay Ventures Inc, a corporation organized under the laws of the state of Delaware.

70.     Killarney Lake Investments Ltd, a company organized under the laws of the British

        Virgin Islands.

71.     Ledger Holdings Inc., a corporation organized under the laws of the state of Delaware.

72.     LedgerPrime Bitcoin Yield Enhancement Fund, LLC, a limited liability company

        organized under the laws of the state of Delaware.

73.     LedgerPrime Bitcoin Yield Enhancement Master Fund LP, a company organized under

        the laws of the Cayman Islands.

74.     LedgerPrime Digital Asset Opportunities Fund, LLC, a limited liability company

        organized under the laws of the state of Delaware.

75.     LedgerPrime Ventures, LP, a company organized under the laws of the Cayman Islands.

76.     Ledger Prime LLC, a limited liability company organized under the laws of the state of

        Delaware.

77.     LedgerPrime Digital Asset Opportunities Master Fund LP, a company organized under

        the laws of the Cayman Islands.

78.     Liquid Financial USA Inc, a company organized under the laws of the state of Delaware.

79.     LiquidEX LLC, a limited liability company organized under the laws of the state of New

        York.

80.     Liquid Securities Singapore Pte Ltd, a company organized under the laws of Singapore.

4895-8609-2120 v.5

81.    LT Baskets Ltd., a company organized under the laws of Antigua and Barbuda.

82.    Maclaurin Investments Ltd., a company organized under the laws of Seychelles.

83.    Mangrove Cay Ltd, a company organized under the laws of Antigua and Barbuda.

84.    North Dimension Inc, a corporation organized under the laws of the state of Delaware.

85.    North Dimension Ltd, a company organized under the laws of the British Virgin Islands.

86.    North Wireless Dimension Inc, a corporation organized under the laws of the state of Delaware.

87.    Paper Bird Inc, a corporation organized under the laws of the state of Delaware.

88.    Pioneer Street Inc., a corporation organized under the laws of the state of Delaware.

89.    Quoine India Pte Ltd, a company organized under the laws of India.

90.    Quoine Pte Ltd, a company organized under the laws of Singapore.

91.    Quoine Vietnam Co. Ltd, a company organized under the laws of Vietnam.

92.    Strategy Ark Collective Ltd., a company organized under the laws of Antigua and Barbuda.

93.    Technology Services Bahamas Limited, a company organized under the laws of the Bahamas.

94.    Verdant Canyon Capital LLC, a limited liability company organized under the laws of the state of Delaware.

-7-

95.    West Innovative Barista Ltd., a company organized under the laws of Antigua and
Barbuda.

96.    West Realm Shires Financial Services Inc., a corporation organized under the laws of the
state of Delaware.

97.    West Realm Shires Inc., a corporation organized under the laws of the state of Delaware.

98.    West Realm Shires Services Inc., a corporation organized under the laws of the state of
Delaware.

99.    Western Concord Enterprises Ltd., a company organized under the laws of Antigua and
Barbuda.

100.    Zubr Exchange Ltd, a company organized under the laws of Gibraltar.

4895-8609-2120 v.5

## Exhibit B

### Alameda MLAs Collateral

| Collateral | BlockFi International | BlockFi Lending |
|---|---|---|
| FTT | 74,212,285.170 | 29,216,912.283 |
| SOL | 1,000,000 | |
| SRM | 38,910,505 | |

Electronic Proof of Claim Confirmation:   3275-1-WMRHB-783473490

Claim Electronically Submitted on (UTC) :   2023-03-31T19:26:50.982Z

Submitted by:   Alameda Research Ltd. on behalf of all FTX Debtors
                gluecksteinb@sullcrom.com

KROLL