**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin, Esq. (wjmartin@pbnlaw.com)
Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)
David E. Sklar, Esq. (desklar@pbnlaw.com)
*Attorneys for Zachary Prince and Flori Marquez*

**SHEARMAN & STERLING LLP**
R. Thaddeus Behrens, Esq. (*pro hac vice* )
Daniel H. Gold, Esq. (*pro hac vice*)
2601 Olive Street, 17th Floor
Dallas, TX 75201
(214) 271-5812
thad.behrens@shearman.com
dan.gold@shearman.com
*Attorneys for Zachary Prince*

**ZUKERMAN GORE
BRANDEIS & CROSSMAN, LLP**
John K. Crossman, Esq. (*pro hac vice*)
Karen S. Park, Esq. (*pro hac vice*)
Jeffrey L. Friesen, Esq. (*pro hac vice*)
Eleven Times Square, 15th Floor
New York, NY 10036
(212)223-6700
jcrossman@zukermangore.com
kpark@zukermangore.com
jfriesen@zukermangore.com
*Attorneys for Flori Marquez*

| In re:<br><br>BLOCKFI INC., *et al*.,<br>    Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>**Hearing Date and Time:**<br>**September 21, 2023 at 10:00 a.m. (ET)** |
|---|---|

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422);

7432365

**MOTION OF ZACHARY PRINCE AND FLORI MARQUEZ FOR AN ORDER LIFTING THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW INSURED PERSONS TO ACCESS PRIMARY DIRECTORS AND OFFICERS INSURANCE POLICY FOR DEFENSE COSTS**

TO:    THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

Zachary Prince and Flori Marquez (collectively, the "Movants") hereby file this *Motion of Zachary Prince and Flori Marquez for an Order Lifting the Automatic Stay, to the Extent Applicable, to Allow Insured Persons to Access Primary Directors and Officers Insurance Policy for Defense Costs* (the "Motion"). In support of the Motion, the Movants respectfully represent as follows:

**Preliminary Statement**

1.    Certain of the Debtors' officers, directors, and former employees, including current CEO and director Mr. Prince and current COO and director Ms. Marquez, have been named in two class actions lawsuits. Further, both the Official Committee of Unsecured Creditors (the "UCC") and a special committee of the Board of Directors of BlockFi Inc. investigated potential estate claims against some or all of those individuals in connection with the events leading to the filing of the Debtors' Chapter 11 Cases, resulting in discovery and mediation-related activity.[2] These proceedings have required, and will continue to require, the Movants and the other defendants and putative defendants to incur legal fees and related expenses (together, the "Defense Costs"). Due

---

BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2] As the Court is aware, Movants have reached a settlement with Debtors and the UCC. *See, e.g.* Docket No. 1306 (order conditionally approving disclosure statement describing settlement). To be clear, "Defense Costs" for which Movants are seeking insurance coverage hereunder does not include the consideration payable as part of that proposed settlement, which is consistent with the terms of the proposed settlement.

2

7432365

to this bankruptcy, the Debtors are at this time unable to advance and reimburse, and have not advanced or reimbursed, such Defense Costs to these individuals.[3] Accordingly, Movants and the other individual insureds need to access proceeds under a certain directors' and officers' liability insurance policy to fund their respective defenses. The primary insurance policy at issue in this Motion, issued by Relm Insurance, Ltd. ("Relm," and the insurance policy, the "Relm D&O Policy") exists for this very purpose.

2. The Movants have provided proper notice of the pending claims against them to Relm pursuant to the terms of the policy. The Movants have been informed that Relm requires an order from this Court authorizing Relm to advance Defense Costs or otherwise access the policy prior to making payments under the policy. Accordingly, the Movants bring this Motion for entry of an order lifting the automatic stay, to the extent it applies, to permit Movants and the other Executives (as defined in the Relm D&O Policy) to access the proceeds of such policy for Defense Costs in accordance with its terms.

3. Movants believe that the proceeds of the policy are not property of the estates and not subject to the automatic stay.[4] The Court need not address that issue, however, because even if the stay does apply to any portion of the proceeds of the policy, ample justification exists for lifting the stay to permit Movants (and any other Executives eligible for coverage thereunder) to seek and obtain payment of their Defense Costs from the Relm D&O Policy. Movants (and such other Executives) would be significantly prejudiced if the stay were not lifted. Any uncertainty

---

[3] While Debtor BlockFi Inc. has indemnification obligations to Movants and other directors and officers pursuant to its charter documents, and to Movants pursuant to indemnification agreements, these obligations were undertaken prepetition and, accordingly, Debtors have informed Movants that Debtors are unable to make indemnification payments at this time.

[4] A separate excess D&O policy, consisting of "side A" coverage only, is not the subject of this Motion. However, Movants expressly reserve all rights with respect to such excess policy and proceeds thereunder.

3

7432365

concerning the availability of the policy's proceeds would severely hinder the Movants' (and other Executives') ability to effectively defend against civil litigation that is expressly covered as Claims (as defined in the Relm D&O Policy) thereunder. In contrast, the Debtors' estates are not prejudiced because they are not currently eligible, or do not have a present need, for coverage under such policy. Movants are committed to coordinating with one another and the other defendants, wherever possible, to make the most efficient use of the proceeds of the policy in mounting a defense.

4. Not permitting the Movants and other eligible Executives to access much-needed coverage at this time would undermine one of the core purposes of D&O insurance, eliminate the valid reliance interests held by each Movant, and severely prejudice their ability to set forth a fulsome defense to the claims against them. Accordingly, and for the reasons set forth herein, the Motion should be granted.

5. The Debtors and the UCC have advised that they do not object to the entry of the proposed order by the Court lifting the stay to permit the Movants and other Executives to access proceeds of the Relm D&O Policy to cover their legal fees and related expenses, though the UCC reserves all rights with respect to (and does not join in) the arguments herein.

**Jurisdiction and Venue**

6. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Movants confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested herein are sections 105(a), 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

### I. General Background

9. On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed on the Petition Date and is incorporated by reference herein.

10. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, this Court entered an order [Docket No. 42] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

11. On December 21, 2022, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed the UCC in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 130, as amended by Docket No. 131].

5

7432365

**II.     The Relm D&O Policy**

12.     Prior to the Petition Date, Debtor BlockFi, Inc. procured D&O liability insurance policies to protect its directors and officers from certain claims that may be alleged against them. In particular for purposes of this Motion, BlockFi Inc. maintains the Relm D&O Policy (Relm Insurance Ltd. Policy No. RILPDO4532021), which provides up to $2,000,000 in aggregate coverage for the policy period September 24, 2021 to September 24, 2022, as extended to November 18, 2023 (as extended, the "Relm Coverage Period"), subject to certain "retentions" (*i.e.*, deductibles), as discussed below.  A copy of the Relm D&O Policy is attached to the certification of David E. Sklar (the "Sklar Certification") as Exhibit A.

13.     The Relm D&O Policy is a "claims made" policy that generally covers Loss incurred on account of covered Claims during the applicable policy period.  "Loss" as defined in the Coverage Part of the Relm D&O Policy expressly includes, among other things, Defense Expenses.[5] *See* Sklar Certification, Ex. A, Relm D&O Policy, Executive and Private Company Liability Coverage Part, § II, Subsection G. "Defense Expenses," in turn, is defined in the General Terms and Conditions of the Relm D&O Policy to include, among other things, "reasonable and necessary legal fees and expenses incurred in the defense of a Claim."[6] *See* Sklar Certification, Ex. A, Relm D&O Policy, General Terms and Conditions, § II, Subsection H. Movants are seeking the relief set forth in this Motion to the extent that Defense Costs constitute "Defense Expenses" within the meaning of the Relm D&O Policy.

14.     The Relm D&O Policy provides for, among other things, the payment of Defense Expenses in connection with covered Claims, both to the directors and officers as well as to

---

[5] The "Coverage Part" of the Relm D&O Policy starts on page 17 of 30 of the Sklar Certification, Ex. A.

[6] The "General Terms and Conditions" of the Relm D&O Policy starts on page 2 of 30 of the Sklar Certification, Ex. A.

6

BlockFi Inc. itself (referred to, along with its subsidiaries, as the "Company" in the language of the Relm D&O Policy), as described further below.

15.     More particularly, the Relm D&O Policy provides coverage under four (4) Insuring Agreements or "sides." Under Insuring Agreement A ("Side A"), Relm is required to pay, on behalf of Executives, Loss arising from Claims for any Wrongful Act to the extent the Company has not indemnified such directors and officers (and other Executives). Under Insuring Agreement B ("Side B"), Relm is required to pay, on behalf of the Company, Loss arising from Claims for Wrongful Acts, to the extent the Company has indemnified Insured Persons (which includes, exclusively, any Executive, Employed Lawyer, or Employee). Insuring Agreement C ("Side C") requires Relm to pay, on behalf of the Company, Loss arising from Claims for any Wrongful Act of the Company. Insuring Agreement D ("Side D") requires Relm to pay, on behalf of the Company, certain fees and expenses incurred by the Company while investigating and potentially commencing a shareholder derivative action against a director or officer (other Executive) for a Wrongful Act. *See* Sklar Certification, Ex. A, Relm D&O Policy, Executive and Private Company Liability Coverage Part, § I, Subsections A, B, C and D, respectively.

16.     Each Side has a specific limit of liability and Retention (*i.e.*, deductible) as follows:

| **Side** | **Limit*** | **Retention** |
|---|---|---|
| Side A – Insured Person Liability | $2,000,000 | "Nil" |
| Side B – Company Reimbursement | $2,000,000 | $500,000 |
| Side C – Company Liability | $2,000,000 | $500,000 |
| Side D – Derivative Demand Investigation Cost | $2,000,000 | "Nil" |
| * Subject in each case to a maximum aggregate limit of liability of $2,000,000. | | |

7

7432365

*See* Sklar Certification, Ex. A, Relm D&O Policy, Declarations Page, Item 2, Coverage Parts: Executive and Private Liability Company Liability. [7]

17. As to Retentions, the Relm D&O Policy further provides that if the Company is "unable or refuse[s] to pay an applicable Retention due to bankruptcy or insolvency, the Insurer will then advance Loss within the Retention …; provided, however, that the Insurer shall be entitled to recover such amounts advanced within the retention from the Company." *See* Sklar Certification, Ex. A, Relm D&O Policy, Executive and Private Liability Coverage Part, § IV, Subsection B (amending General Terms and Conditions, Section VI, Subsection A).

18. Finally, the Relm D&O Policy has an "Order of Payments" clause, which provides that when payment is due, Relm is required to pay first all Loss for which coverage is provided under Side A (the "Priority Payment Clause"). *See* Sklar Certification, Ex. A, Relm D&O Policy, Executive and Private Liability Coverage Part, § IV, Subsection D (amending General Terms and Conditions, § XIII by adding, among other provisions, Subsection AA thereto). Then, only after payment of all applicable Loss as set forth in the Priority Payment Clause is made, may Relm pay Loss under Side B, Side C or Side D (provided that Relm is directed to do so in writing by BlockFi Inc.). *Id.*

19. To date, Relm has not paid any proceeds of the Relm D&O Policy (whether directly under Side A or as an advance on the Company's Retention under Side B) to the Movants, or to the Movants' knowledge and belief, any other Executives or other Insured Persons.

20. However, by letters dated May 11, 2023, counsel for Relm notified each Movant that "[w]hen the Bankruptcy Court issues an order terminating the automatic stay with regard to the referenced Policy . . . Relm will make coverage available to the Insureds under the Policy."

---

[7] The "Declarations Page" of the Relm D&O Policy starts on page 1 of 30 of the Sklar Certification, Ex. A.

### III. The Pending and Threatened Claims Against Movants

21. Movants and other of the Debtors' officers, directors, and former employees have been named in two class actions lawsuits (the "Class Actions") filed in the United States District Courts for New Jersey and Massachusetts on February 28, 2023 and March 1, 2023, respectively.[8]

22. The UCC has taken depositions of Movants as well as other Executives in furtherance of its investigation of potential claims, and a special committee of the Board of Directors of BlockFi Inc. has investigated potential estate claims and recommended pursuing a settlement with Movants.

23. The Movants and other Executives have incurred Defense Costs in connection therewith. Movants and other Executives have also incurred Defense Costs in connection with discovery served by the UCC and extensive settlement discussions, including multiple days of mediation.

24. Movants and other Executives will continue to incur Defense Costs during the pendency of the Chapter 11 Cases (and any successor cases) and in connection with civil litigation.

### IV. Debtors' Indemnification Obligations

25. The Debtors have certain indemnification obligations to the Movants. As directors and officers of Debtor BlockFi Inc., the Movants are entitled to indemnification for, and advancement of, expenses—including attorneys' fees and expenses—under BlockFi's bylaws and other applicable law. Each Movant is also entitled to indemnification under a separate indemnification agreement with BlockFi Inc.

---

[8] *Trey Greene v. Zac Prince, Flori Marquez, Tony Laura, Jennifer Hill and Gemini Trading, LLC*, Case No. 2:23-cv-01165-KM-LDW filed in the United States District Court for the District of New Jersey on February 28, 2023; *Antoine Elas v. Zac Prince, Flori Marquez, Amit Cheela, David Olsson, and Samia Bayou*, Case No. 1:23-cv10472-IT filed in the United States District Court for the District of Massachusetts on March 1, 2023.

9

7432365

26.     The Debtors, however, have informed the Movants that, as Debtors are in chapter 11 and the foregoing indemnification obligations are prepetition obligations, they cannot advance Defense Costs to or on behalf of the Movants. Movants, and to Movants' knowledge and belief, the Debtors' other officers and directors, have received no indemnification payments from the Debtors.

### Relief Requested

27.     Through this Motion, the Movants request entry of an order substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order") lifting the automatic stay, to the extent applicable, and authorizing and permitting advancement and payment of Defense Costs in accordance with the terms and conditions of the Relm D&O Policy.

### Basis for Relief Requested

**I.    If the Automatic Stay Applies, Cause Exists to Modify the Stay in this Instance**

28.     To the extent the automatic stay applies,[9] cause exists under Bankruptcy Code section 362(d)(1) to modify the automatic stay to allow for the advancement and/or reimbursement of the Defense Costs as "Loss" under the Relm D&O Policy. Bankruptcy Code section 362(d)(1) provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause." 11 U.S.C. § 362(d)(1); *see also* 11 U.S.C. § 105(a) (authorizing this Court to "issue any order,

---

[9] Movants believe that the proceeds of the Relm Policy are not property of the estate based on, among other things, the scope and language of that policy and the fact that the Debtors have made no indemnification payments to Movants or, to Movants' knowledge and belief, the other Executives. *E.g., see generally, In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010); *In re Allied Digital Techs, Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004); *In re Adelphia Comm'ns Corp.*, 298 B.R. 49 (S.D.N.Y. 2003). However, similar to the approach taken by Judge Glenn in *SVB Financial*, the Court need not make that determination here because, even they are property of the estate such that the automatic stay applies, there is ample cause to lift the stay. *See In re SVB Financial Group*, 2023 WL 3578447, *6 (Bankr. S.D.N.Y. May 22, 2023) (citation omitted).

10

7432365

process, or judgment that is necessary or appropriate to carry out the provisions of this title"). Courts conduct a "fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Downey*, 428 B.R. at 608-9 (citations omitted).

29.     The applicable test is a three-prong test to determine whether to grant relief from the stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (2) whether the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship to the debtor upon lifting of the stay; and (3) the probability of the creditor prevailing on the merits. *Id.* at 609; *see also Eagle One Federal Credit Union v. Campanile*, 2020 WL 416182, *4-5 (D.N.J. Jan. 27, 2020) (using a nearly identical three-consideration test).

30.     First, lifting the stay with respect to the Relm D&O Policy to permit advancement and/or reimbursement of Defense Costs to the Movants (and other Executives entitled thereto) will not result in any prejudice to the Debtors or their estates. Under the terms of the Relm D&O Policy, and in particular the Priority Payment Clause, Loss paid to the applicable insureds (including the Movants) pursuant to Side A is required *before* any proceeds under Side B, Side C or Side D can be paid to the Company. The significance of the Priority Payments Clause cannot be overstated in the evaluation of the effect that lifting the stay to permit the individual insureds to receive proceeds under Side A will have on the Debtors' estates. The Bankruptcy Court for the Southern District of New York recently articulated the weight courts have given to this point:

> Courts have routinely found that where such priority of payments provisions are present, the insureds are entitled to access the proceeds, notwithstanding the fact that the debtor also has an interest in the proceeds of the policy. *See In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the

11

> bankruptcy estate since they are the insureds that are first in line."); *see also In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203–04 (Bankr. S.D.N.Y. 2014) ("Even if [debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision."); *In re World Health Alternatives, Inc.*, 369 B.R. at 810 (insurance proceeds not property of estate where the policy contained a priority of payment provision and the debtor was entitled only to coverage for amounts it was required to indemnify, and no indemnification claims had yet been made).

*In re SVB Financial*, 2023 WL 3578447 at *7. The court thus concluded as follows:

> Thus, even if it is true that the Directors' [sic] and Officers' [sic] will deplete the policy, they are entitled to use the proceeds first. The Directors' and Officers' use of the funds will not interfere with the bankruptcy estate, as even if the Debtor eventually seeks coverage under the ABC Policies, the Debtor is last in line for the insurance proceeds.

*Id.* Thus, the first prong is satisfied.

31. Second, and on the other hand, if the requested stay relief is not granted, the hardship on the Movants (and other Executives who are also defendants in the Class Actions) is likely to be significant and material. The Movants (and such other Executives) will suffer a "very real and easily identifiable hardship" because it is a near-certainty that, absent stay relief, Relm will not advance any proceeds to fund Defense Costs and, as a result, the affected individuals will be required to personally fund (or otherwise finance) such costs. *See In re Downey*, 428 B.R. at 609. Not only will the non-advancement of Defense Costs result in economic hardship on the Movants (and such other Executives), it will result in material prejudice if as a result they cannot mount an adequate defense. This is the very outcome that the Relm D&O Policy, by the terms of Side A coverage, was designed to avoid.

32. Finally, the third prong also militates in favor of Movants. The *Downey* court affirmed that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Downey*, 428 B.R. at 610 (internal citations omitted). Applying the third prong to the facts here, the Movants submit that, if this Court grants

12

the relief sought and permits advancement and/or reimbursement of Defense Costs to Movants (and other Executives entitled thereto), there is a high probability that they will in fact receive payments from the insurer on account of Defense Costs under the Relm D&O Policy in accordance with its terms. Indeed, Relm has already notified Movants that it would make coverage available to them (and other such insureds) should this Court lift the automatic stay with respect to the Relm D&O Policy. *See*, *supra*, ¶ 20. Thus, the probability of success is high and the third prong is therefore satisfied.

33. Analysis under all three prongs weighs in favor of granting the relief requested. Accordingly, Movants submit that, to the extent the automatic stay applies to the Relm D&O Policy, the stay should be lifted for cause pursuant to section 362(d)(1) of the Bankruptcy Code to permit advancement and/or reimbursement of Defense Costs in accordance with the Relm D&O Policy.

## Waiver of Memorandum of Law

34. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## No Prior Request

35. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

36. The Movants will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) counsel for the Debtors; (b) counsel for the Committee; (c) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite

2100, Newark, NJ 07102; (d) counsel for Relm; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Movants submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

**WHEREFORE**, the Movants respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

7432365

                Respectfully Submitted,

Dated: August 22, 2023                */s/ David E. Sklar*

**PORZIO, BROMBERG & NEWMAN, P.C.**
Warren J. Martin, Esq.
Robert M. Schechter, Esq.
David E. Sklar, Esq.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
wjmartin@pbnlaw.com
rmschechter@pbhlaw.com
desklar@pbnlaw.com

-and-

**SHEARMAN & STERLING LLP**
R. Thaddeus Behrens, Esq. (*pro hac vice*)
Daniel H. Gold, Esq. (*pro hac vice*)
2601 Olive Street, 17th Floor
Dallas, TX 75201
(214) 271-5812
thad.behrens@shearman.com
dan.gold@shearman.com

-and-

**ZUKERMAN GORE BRANDEIS & CROSSMAN, LLP**
John K. Crossman, Esq. (*pro hac vice*)
Karen S. Park, Esq. (*pro hac vice*)
Jeffrey L. Friesen, Esq. (*pro hac vice*)
Eleven Times Square, 15th Floor
New York, NY 10036
(212)223-6700
jcrossman@zukermangore.com
kpark@zukermangore.com
jfriesen@zukermangore.com

7432365