IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-19361-MBK |
| | . | (Jointly Administered) |
| BLOCKFI INC., *et al.,* | . | |
| | . | |
| Debtors. | . | |
| | . | |
| . . . . . . . . . . . . . . | . | |
| | . | |
| BLOCKFI INC., *et al.,* | . | Adversary No. 23-01071-MBK |
| | . | |
| Plaintiffs, | . | |
| | . | |
| v. | . | |
| | . | |
| TREY GREENE AND | . | |
| ANTONIE ELAS, | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . | . | |
| | . | |
| OFFICIAL COMMITTEE OF | . | Adversary No. 23-01144-MBK |
| UNSECURED CREDITORS, | . | |
| | . | |
| Plaintiffs, | . | |
| | . | |
| v. | . | |
| | . | |
| BLOCKFI INC., *et al.,* | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . | . | |
| | . | |
| BLOCKFI INTERNATIONAL, LTD., | . | Adversary No. 23-01175-MBK |
| | . | |
| Plaintiff, | . | |
| | . | |
| v. | . | |
| | . | |
| VRAI NOM INVESTMENT LIMITED, | . | |
| | . | |
| Defendant. | . | Wednesday, August 30, 2023 |
| . . . . . . . . . . . . . . | . | 10:02 A.M. |

TRANSCRIPT OF MOTIONS HEARINGS
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

```
APPEARANCES VIA ZOOM VIDEOCONFERENCE:
For the Debtors:                    Haynes and Boone, LLP
                                    BY:  JORDAN CHAVEZ, ESQ.
                                         AIMEE FURNESS, ESQ.
                                    2323 Victory Avenue, Suite 700
                                    Dallas, TX 75219


For the Official Committee          Brown Rudnick LLP
Unsecured Creditors:                BY:  SHARON I. DWOSKIN, ESQ.
                                    One Financial Center
                                    Boston, MA 02111


For Cameron Wyatt:                  Lowenstein Sandler, LLP
                                    BY:  MICHAEL S. ETKIN, ESQ.
                                    One Lowenstein Drive
                                    Roseland, NJ 07068


For the United States               U.S. Department of Justice
of America:                         BY:  SETH BRANDON SHAPIRO, ESQ.
                                    Civil Division
                                    1100 L Street, NW, Room 7208
                                    Washington, DC 20005


For Joint Provisional               Faegre Drinker Biddle & Reath LLP
Liquidators:                        BY:  RICHARD J. BERNARD, ESQ.
                                    1177 Avenue of the Americas
                                    41st Floor
                                    New York, NY 10036


For Proposed Lead                   Pomerantz, LLP
Counsel in Class Action:            BY:  BRIAN CALANDRA, ESQ.
                                    600 3rd Avenue
                                    New York, NY 10016


For Individual Defendants           Shearman & Sterling
in Securities Class Action:         BY:  DAN GOLD, ESQ.
                                    The Link at Uptown
                                    2601 Olive Street, 17th Floor
                                    Dallas, TX 75201
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

1              (Proceedings commenced at 10:05 a.m.)

2              THE COURT:  Okay.  Good morning, everyone.  We will

3    start the BlockFi, I guess BlockFi calendar this morning.

4    Those are the only matters I have on.  We are hearing the

5    matter remotely.  So the usual rules apply.  If you wish to be

6    heard, please raise your hand and I will do my best to spot you

7    and hear from you.

8              My understanding is the pending motion to intervene

9    has been resolved.  The JPL's motion to intervene, I believe an

10   order, a proposed order was sent.  So, Mr. Bernard, I see your

11   hand raised.

12             MR. BERNARD:  Yes, Your Honor.  Richard Bernard with

13   Faegre Drinker on behalf of the Joint Provisional Liquidators.

14   Yes, yesterday afternoon towards the end of the day we came to

15   agreement on the form of order with the U.S. Government.  It's

16   been circulated.  I don't think the Committee has any issue

17   with it.  And I know the debtor signed off on a prior version

18   of that form of order.

19             And we've submitted it informally to Your Honor

20   through your chambers email.  But we understand that there's a

21   more formal process to submit an agreed order.

22             THE COURT:  All right.  Ms. Dwoskin, did you want to

23   be heard?

24             MS. DWOSKIN:  Yes, Your Honor.  Sharon Dwoskin --

25             THE COURT:  Thank you, Mr. Bernard.  I appreciate it.

4

1           MS. DWOSKIN:  Sharon Dwoskin from Brown Rudnick for

2    the Committee.  We have no objection to the JPL intervention,

3    and no comments to the order that was circulated to us, and it

4    will be submitted.

5           THE COURT:  That's fine.  So I'm happy to look at the

6    order.  And if there are any concerns, I assume parties will

7    reach out for the Court.

8           That leaves us with I believe two matters that are

9    contested.  The motion by the lead plaintiff, or proposed lead

10   plaintiff, Cameron Wyatt to revise the prior orders of the

11   Court with respect to the proposed class action matter, and the

12   contested motion to stay the adversary proceeding with the

13   United States pending a determination of the motion to withdraw

14   the reference.

15          Ms. Chavez, let me hear from you.  Thank you.

16          MS. CHAVEZ:  Good morning, Your Honor.

17          Jordan Chavez along with Aimee Furness of Haynes and

18   Boone on behalf of the BlockFi debtors.

19          THE COURT:  Good morning.

20          MS. CHAVEZ:  I agree with you, Your Honor.  Those are

21   the only two remaining matters set on the agenda.  If it's okay

22   with Your Honor, before we take up those matters, I would like

23   to just take a moment to briefly address the data privacy issue

24   that arose over the last few days.

25          THE COURT:  I think that would be appropriate.  Thank

1  you.

2        MS. CHAVEZ:  Thanks, Your Honor.

3        We were notified by Kroll that there was a swapping

4  attack on an employee's mobile phone.  They fell victim to a

5  data breach resulting in a leak of personal information of the

6  BlockFi creditors, including the name, address, and emails and

7  phone numbers, the type of information that BlockFi would have

8  provided to Kroll for the creditor matrix and for servicing

9  purposes.

10        Kroll is still conducting a more thorough

11  investigation.  But BlockFi took immediate action, along with

12  coordinating with the Committee and Kroll to provide the

13  relevant communication to the affected parties, along with

14  discussions with the U.S. Trustee and the relevant regulatory

15  and government authorities.  I did just want to confirm on the

16  record that BlockFi was not the subject of the attack, and that

17  its system is still secure.

18        THE COURT:  All right.  That's good to hear.  It's

19  frightening that this information is so readily available

20  through such what would seem facile ways of accessing through

21  telephone.  It's alarming in so many respects.  But I'm glad

22  that the debtor, and that all the debtors that are involved in

23  these cases, are taking the proper steps.

24        Does anybody else --

25        MS. DWOSKIN:  Thank you, Your Honor.

1            THE COURT:  -- wish to comment on it?  All right.

2            Let me turn to debtors' counsel.  Is there a

3    preference for which matter to be heard first?

4            MS. CHAVEZ:  Yes, Your Honor.  I think we would

5    propose taking up the Green adversary first which will be

6    handled from our end by Ms. Furness.

7            THE COURT:  All right.  Thank you.  Then let me turn

8    to -- let me have appearances on this matter.

9            MR. ETKIN:  Your Honor, Michael Etkin, Lowenstein

10   Sandler, on behalf of the proposed plaintiff, Mr. Wyatt.  And

11   with me is my colleague Michael Papandrea, as well as Brian

12   Calandra who is proposed lead counsel in connection with the

13   class action representing Mr. Wyatt.

14           THE COURT:  All right.  It is your motion.  Why don't

15   you proceed, then.

16           MR. ETKIN:  Thank you, Your Honor.

17           Just a couple of observations at the outset.  First

18   of all, we are requesting extremely narrow relief from the

19   existing injunction that was entered back in April.  We simply

20   want the district court, or courts to be able to rule with

21   respect to the pending lead plaintiff motions and issue an

22   order with respect to those motions.

23           There have been no objections by the counsel on

24   behalf of the plaintiffs that executed the stipulation.  We

25   know that Mr. Green's counsel has advised us that they support

1  the motion that's before Your Honor today.  In addition, we

2  have not seen any objection by the Creditors' Committee.

3        With respect to the individual defendants who are the

4  beneficiaries of the injunction and have been referenced by

5  counsel for the debtors, there's been no objection filed by

6  them.  And in fact, it's worthy of note that there actually was

7  no declaration filed by any of these non-debtor defendants, the

8  individuals regarding the so-called impact on them and whether

9  they even intend to try to take a position with respect to the

10 lead plaintiff motions.  They have not weighed in at all.

11       You would think, Your Honor, that if there is an

12 allegation that they would drop everything with respect to

13 their responsibilities to the debtor and focus their entire

14 attention on lead plaintiff motions where they actually have no

15 standing to weigh in at all.  It's a bit beyond the pale.

16       Another observation that's important, Your Honor, is

17 the claims that are asserted in the class action.  Those claims

18 are claims in connection with the purchase or sale of a

19 security, in this case the BIAs are alleged to be securities

20 covered by the federal securities laws.

21       And as I'm sure the Court is aware, under Section

22 510(b) of the Code, those types of claims are statutorily

23 subordinated.  So those claims would not be entitled to a

24 distribution under the plan, the proposed plan.  And I don't

25 know that whether anyone has even filed a claim against the

1  debtor in the bankruptcy proceeding.  The debtors are obviously

2  not parties to the class actions.  Those class actions were

3  filed after the petition date.

4          So there's no impact on the debtors with respect to

5  the class actions all together.

6          THE COURT:  Of course, doesn't that assume that we're

7  dealing with securities?  I mean, that's just not such a given,

8  given the cases that have come down recently.

9          MR. ETKIN:  No question, Your Honor.  That's an issue

10 that the district court will have to wrestle with down the

11 road.  But in terms of what's before you today, if they're not

12 securities, then there are no federal securities claims and the

13 class actions fail on the merits.

14         So, excuse me.  So, you know, that's not a today

15 issue.  And if there is a resolution of that issue, that the

16 BIAs are not securities, then there are no federal securities

17 claims.  So that's really the bottom line.  And your

18 observation is correct.

19         Your Honor, as I indicated, there's a very limited

20 purpose to our motion.  But debtors have put in front of you a

21 parade of horribles that I'd like to address briefly.  I know

22 they're addressed in the briefing.  But I think it's important

23 to point some of them out.

24         First of all, even dating back to the debtors'

25 opposition to the motion to shorten time, the debtors who again

1 are not parties to the class action and there are no claims

2 certainly asserted by our client.  We don't know whether there

3 are any other claims asserted based upon the violation of the

4 securities laws.

5          But the debtors take the position that somehow the

6 district court's deciding the lead plaintiff's motions would

7 force the debtors to participate in the class action lawsuits

8 and forfeit their due process rights.  Now, those are lofty

9 words, Your Honor.  But there's no explanation as to the basis

10 for that kind of hyperbole.

11          There simply is no impact on the debtor.  And the

12 debtors' due process rights are not put into play by virtue of

13 this Court granting the very limited relief that we're seeking.

14          Second, they take the position back then and in their

15 opposition that we're looking to solve a problem that doesn't

16 exist with respect to representation of putative class members.

17 They claim that the Creditors' Committee is already

18 representing these class members with respect to the claims

19 asserted in the class action.

20          Well, the problem with that, Your Honor, it ignores

21 the distinction between the status of those individuals as

22 holders of BIAs.  And with respect to that status, yes, they

23 are general, unsecured creditors and part of the Creditors

24 Committee's constituency.

25          But with respect to the subordinated claims that are

1  asserted in a class action, which may or may not have even been

2  asserted in the Chapter 11 cases, and even if they were, they

3  would not be entitled to any distribution by virtue of that

4  subordination.  The Creditors' Committee doesn't represent

5  their interests with respect to those claims.  That would be an

6  interest that would be represented by a court-appointed lead

7  plaintiff.

8          And we're just looking to get to that point where

9  there is a court-appointed lead plaintiff who has certain

10  responsibilities and fiduciary obligations to individual class

11  members regardless of whether a class has been certified or not

12  and is empowered to take certain positions with respect to the

13  class, again even in advance of certification.

14          And, Your Honor, what's looming now and why the

15  motion was made is a confirmation objection deadline of

16  September 11th, and a confirmation hearing on September 26th.

17  And to the extent the class is, and their claims in the class

18  action need protection, and to the extent that a position needs

19  to be taken, we believe is critical that a lead plaintiff be

20  appointed.

21          Now, the debtors also harp on the fact that there's

22  no guarantees that the district courts will rule in time.

23  Well, we get that.  That's a risk.  We don't know what the

24  district courts are going to do, and what the orders are going

25  to say, and whether Mr. Wyatt will in fact be appointed by the

1  district court.

2          But one thing is for certain.  If the district court

3  is precluded from even considering the motions, and the relief

4  that we're requesting is not granted, then there will be no

5  court-appointed lead plaintiff who's in a position to take a

6  position with respect to the plan and confirmation, whatever

7  that might be.

8          Simply put, Your Honor, Mr. Wyatt or any lead

9  plaintiff that's appointed would be handcuffed by virtue of not

10 having the imprimatur of an Article III Court in terms of an

11 order appointing him or some other individual to assume the

12 rule of the lead plaintiff, order the appointment of lead

13 plaintiff's chosen counsel, and put them in a position to act

14 in the bankruptcy proceeding.

15         THE COURT:  But let me ask you, Mr. Etkin, if I were

16 to grant the relief to allow the process to go forward, is the

17 logical next motion on shortened time going to be judge, the

18 district court hasn't decided the motion for lead plaintiffs

19 yet.  We need to adjourn the confirmation hearing and this

20 process to allow the lead plaintiff to be appointed and to be

21 in a position to participate at the confirmation hearing?  Is

22 that what's going to follow?

23         MR. ETKIN:  Well, I don't know, Your Honor.  You

24 know, thanks for pointing out an option to me with respect to

25 this.  But --

1          THE COURT:  I doubt I needed to point that out.

2          MR. ETKIN:  But you know, to be frank with the Court,

3 I don't know that that's something that we would entertain.  I

4 think the first thing that we would do if the Court were to

5 sign an order, and hopefully sign it quickly allowing us to go

6 forward is to advise the district courts that they can now

7 decide the lead plaintiff motions, and that -- and point out

8 the schedule with respect to confirmation, and try to get them

9 to issue an order quickly.

10          Your Honor, as you know, you know, I'm somewhat

11 familiar with the fast-moving train of a confirmation process,

12 and the danger of trying to step in front of that train.  So I

13 don't know that we will take that step.

14          I think that our preference would be to advise the

15 district court quickly, advise the district court that timing

16 is an issue and important, and hopefully get a decision out of

17 them in advance of the objection deadline which is obviously

18 why we moved on short notice in the first place, and certainly

19 in advance of the confirmation hearing.  And you know, to the

20 extent that doesn't happen, we would have to weigh our options.

21          THE COURT:  Fair enough.

22          MR. ETKIN:  Your Honor, this is not an attempt to

23 push the class actions forward to anyone's detriment.  There

24 would be no merits determinations here.  The individual

25 defendants obviously don't care by virtue of the fact that they

1  did not weigh in at all on the motion, and that they did not

2  even execute a declaration with respect to the factual

3  allegations in the debtors' opposition.

4         So the issue of whether the individual defendants'

5  hair will be put on fire by virtue of a district court deciding

6  a lead plaintiff motion, I just don't think that there's any

7  substance to that kind of argument.

8         Now, the debtors also argue that, like they previewed

9  in their objection to the motion to shorten time, that the same

10 considerations that would support, excuse me.  The same

11 considerations that would support the injunction in the first

12 place are at play with respect to the limited relief that we're

13 requesting.

14        Well, you know, leaving aside the merits of those

15 arguments from Mr. Wyatt's perspective, as well as the extent

16 to which those arguments support a preliminary injunction

17 regarding all other activity in the class actions which is not

18 the subject of our motion, they certainly have nothing to do

19 with what we're asking the Court to do.  And let me just get

20 into that briefly.

21        Mr. Wyatt inherited a stipulated inunction order.

22 It's not a complaint, Your Honor.  It's just a fact.  And it

23 does contemplate that the district court, and I'm talking about

24 the stipulated order, it contemplates that the district court

25 can enter certain unidentified orders, and it does not

1  expressly prohibit the district court from entering orders with

2  respect to the lead plaintiff motion.

3          But here we are.  We're not taking that position on

4  the merits.  We're in front of Your Honor asking for relief.

5          Let's talk about each of the three issues that the

6  debtors raise, the collateral estoppel evidentiary prejudice.

7  I'm lost with respect to that one, Your Honor.  I don't know

8  what the relief that we're requesting would have to do with

9  respect to any res judicata, collateral estoppel, evidentiary

10 prejudice on a debtor that's not a defendant in the class

11 action where there are no claims against the debtor, and even

12 if there were, those claims would be subordinated and not

13 entitled to a distribution under the current version of the

14 plan.  So I'm at a loss to know where that's coming from.

15         With respect to the impact on the individual

16 defendants who are still at the company, and who are performing

17 services for the company, again I've raised this issue.  The

18 papers deal with the issue.  The idea that they're going to

19 drop everything and focus their attention on the district court

20 deciding these lead plaintiff motions just makes no sense, and

21 there's no evidentiary support for it.  So again, I don't know

22 how that figures in as a reason for the Court to deny the

23 limited relief that we're requesting.

24         And lastly, Your Honor, they focus on their

25 indemnification obligations.  A couple of things to say about

1  that.  And we do raise that in our reply.  Number one, the

2  indemnification with respect to a claim against these

3  individuals that's based upon the purchase or sale of a

4  security is likewise subordinated under 510(b).

5          So those indemnification claims, when you look at the

6  Code, clearly would not be entitled to a distribution.  The

7  debtors may point out, although they didn't in their papers,

8  that the debtors assumed certain indemnification obligations

9  under the terms of the plan.  Well, there's a carve-out with

10 respect to those indemnification obligations, Your Honor, as it

11 relates to gross negligence, fraud, willful misconduct.  Those

12 are the claims that are asserted in the class action.  So to

13 the extent that the class would be successful with respect to

14 the claims, those claims, on their face, would be carved out of

15 any indemnification obligations.

16         And lastly, Your Honor, with respect to the somewhat

17 newly minted settlement with the committee, several of those

18 key defendants have waived their indemnification claims against

19 the debtor, in any event, under the terms of that settlement

20 agreement.  So in terms of indemnification, Your Honor, oh, and

21 of course there is insurance with respect to those claims as

22 well.  So in terms of those arguments, Your Honor, there's

23 really no substance to them, certainly as they relate to the

24 relief that we're requesting in connection with the motion.

25         The debtors also raised in their opposition that the

16

1 selection of lead plaintiff is complex and time consuming.

2 Well, I've had the opportunity over the years to be involved in

3 that process where there's an intervening bankruptcy.  And I

4 haven't seen that.  It's a competitive process.  It may be

5 complex as between those vying for the role with respect to

6 lead plaintiff motions.  But there's nothing before the court

7 that supports the conclusory allegation that the process is

8 complex and time consuming.

9       And frankly, Your Honor, the district court believes

10 that, they'll act accordingly.  But they need to be given the

11 opportunity to make a decision on that in the first instance.

12 And that's why we're here.

13       Finally, Your Honor, the debtors take the position

14 that, well, by virtue of the terms of the stipulated

15 injunction, once the plan goes effective, you can do whatever

16 you want.  So, no big deal.  You know, the problem is that

17 there are issues that the plan creates victims a vie third

18 party releases, an issue that this Court and many courts have

19 been wrestling with for quite some time.  And at the end of the

20 day, if the plan is confirmed without the participation of a

21 court-appointed fiduciary on behalf of class members, 30 days

22 after the effective date will come and those claims that are

23 the subject of the class action could be wiped out or severely

24 eviscerated under the terms of the plan

25       So, you know, while we appreciate the injunction is

1  automatically terminated at that point in time, that's going to

2  be much too late with respect to that issue, as well as other

3  issues that may exist under the plan that may require some

4  involvement by a court-appointed lead plaintiff.  So, Your

5  Honor, the idea that there's no harm in waiting until then,

6  really doesn't provide what's required and avoid the prejudice

7  that would happen without an appointment by the district court.

8       So with that, Your Honor, we would urge the court to

9  grant the motion and allow us the opportunity to advise the

10 district court that they're free to make a decision.  And

11 hopefully they will make it quickly.  And whoever the Court

12 appoints as lead plaintiff and their counsel are would have the

13 opportunity to weigh in with respect to the confirmation

14 process.

15      THE COURT:  All right.  Thank you, Mr. Etkin.  Let me

16 turn to Ms. Furness.

17      MS. FURNESS:  Thank you, Your Honor.  Mr. Etkin

18 glosses over one significant issue here.  There are two cases.

19 We have the Green matter and the Elas matter.  One is in New

20 Jersey, one is in Massachusetts.  Mr. Etkin didn't address it

21 today.  They didn't address it on their reply.

22      But consolidation and whether there are two cases

23 that go forward at the exact same time in two different courts

24 based on more or less the same actions has to be decided first.

25 The PSLRA says that, "If any party has sought to consolidate

1 those actions for pretrial purpose or for trial, that has to be

2 heard before the lead plaintiff process." First.

3        Sometimes Mr. Etkin used district court. Sometimes

4 he used district court. We believe that this entire issue was

5 ignored simply because it goes back to the original issues that

6 we brought before this Court in April of this year.

7        The defendants in the class action, purported class

8 action, have every right to participate and weigh in on that

9 consolidation. The PSLRA says any party, Federal Rule of Civil

10 Procedure allows any party to address consolidation. That must

11 be heard first. To the extent it hasn't been filed, it's

12 because this Court's stipulation allowed the lead plaintiff

13 motions to be filed and said nothing else. That's where we

14 are. That's where it stopped.

15        So the idea that there is absolutely no harm here,

16 and the harm that we identified in April have gone away now, is

17 absurd and without basis. The same concerns that we presented

18 previously, one for indemnification, and two for divided times

19 of our officers and directors still exist today.

20        As far as evidentiary substance on that, we presented

21 that with the original TRO application, Your Honor, and you've

22 got it in the file. And if they have to turn their attention

23 to matters such as these, again, in which defendants have the

24 absolute right to participate, they won't be focused on the

25 debtors during this incredibly crucial time. We have less than

1  a month prior to the confirmation of the plan.

2        Mr. Etkin talked a lot about the indemnification

3  provision and why that doesn't matter as it relates to the

4  debtors' concern with this moving forward.  But, Your Honor,

5  you know this.  Mr. Wyatt's counsel seems to have ignored it.

6  The plan hasn't been confirmed, right?  So to the extent anyone

7  in the officers and directors have waived their right to

8  indemnification in the plan, that's not confirmed yet.  And

9  until that is, it is a concern for the debtors.  And we are

10 entitled to have the full focus of our officers and directors.

11       As far as what the debtors can do on the lead

12 plaintiff, or excuse me, as far as what the defendants can do

13 on the lead plaintiff process, in each of the two district

14 courts again that we're talking about, it's not necessary that

15 this Court make a decision related to that.  Instead, we

16 presented the Court with cases that clearly say defendants can

17 and do participate in both the lead plaintiff process, whether

18 the plaintiff is adequate, and the lead counsel process.

19       Whether these district courts again, two of them in

20 both New Jersey and Massachusetts, actually take the arguments

21 of those defendants or not is not before this Court.  They can

22 participate.  Whether the participation leads the Court to

23 review those things or not, again, it is that participation

24 that deprives the debtors of their officers and directors time

25 during a very, very crucial moment in these bankruptcy cases.

1          Mr. Wyatt and the proposed class have demonstrated

2    absolutely no irreparable harm here.  It is their duty to come

3    here with good cause.  There's no evidentiary basis.  You heard

4    Mr. Etkin argue that repeatedly as far as the debtors.  But

5    again, we presented the evidentiary basis which is for this

6    Court when we came to argue for the TRO, and we got the

7    stipulation, agreed to by Mr. Green's counsel, Mr. Elas's

8    counsel.  There's been absolutely nothing presented, no

9    declaration or anything on behalf of Mr. Wyatt or this

10   purported lead plaintiff.  There's nothing to show irreparable

11   harm.

12         And again, going back and, Your Honor, I'm confident

13   you've read our briefing.  But there is no standing in this

14   bankruptcy for purported class counsel, purported plaintiff in

15   a class action against non-debtors.  We've presented you, Your

16   Honor, with the Dynegy case.  There's another case out of the

17   Eastern District of Virginia that goes to the exact same

18   analysis.

19         Somebody as a lead plaintiff in a securities

20   litigation does not provide any authorization for them to come

21   into the bankruptcy cases.  It doesn't provide them any status

22   to come into the bankruptcy cases.  Being a lead plaintiff in

23   one type of litigation is not, quote, tantamount to a blanket

24   consent to any litigation that class counsel may wish to

25   pursue.

1          So they've admitted they have no claims here.

2    There's no place here for someone who has been designated as

3    lead plaintiff solely in a one of two district courts related

4    to a PSLRA action to come to this Court without further

5    authorization, further moving, asking for this Court to clarify

6    or to classify a class, certify a class.  There's just

7    absolutely no basis.

8          So again, because there's no basis, there's no

9    irreparable harm that they've shown or can show in this case,

10   especially considering again, we're in the last month before

11   confirmation and stipulation by its own terms expires 30 days

12   after confirmation of the plan.

13         As far as Mr. Etkin's argument that certain of the

14   purported class members have, you know, a basis to object to

15   confirmation, they can.  They're more than welcome to.  Mr.

16   Wyatt clearly has counsel.  And each one of them can come to

17   this Court and object to the confirmation in whatever way they

18   feel.  It's just not appropriate here for a class action.

19         In addition, Mr. Etkin said that these folks have

20   claims that, quote, could be wiped out or eviscerated.  That's

21   simply not true, Your Honor.  The plan includes an opt out.

22   These folks received the disclosure statement that discusses

23   and explains the opt out provision of those releases.  So if

24   the individuals want to opt out, they can.  It's possible.  Mr.

25   Wyatt has counsel.  He can do it.

1            I also point the Court again to the delay that Mr.

2  Wyatt has shown.  In April, the stipulation was entered into by

3  Green counsels -- Green's counsel and Elas' counsel.  The lead

4  plaintiff's motions were filed in May.  And these folks waited

5  three months, three months to come to this Court to ask for

6  something else to go forward.  They asked for it on an emergent

7  basis simply one month before confirmation.

8            Again, Your Honor, this is their burden.  They've

9  presented no evidence to you.  There is no irreparable harm

10 here.  These individuals have the same rights that they have

11 with or without Mr. Wyatt being appointed as class counsel.

12 And at the end of the day, this harms the debtors because our

13 officers' and directors' attention will be focused on other

14 matters at a time when we really need to have their attention

15 focused here as we move towards confirmation in less than a

16 month.

17            THE COURT:  Thank you, Ms. --

18            MS. FURNESS:  Thank you.

19            THE COURT:  Thank you, Ms. Furness.

20            Mr. Calandra, I see your hand raised first.

21            MR. CALANDRA:  Thank you, Your Honor.  I just wanted

22 to, as the purported lead, or proposed lead counsel in the

23 class actions, I just wanted to speak to the issues about

24 consolidation that were just raised, which really are

25 meritless.

23

1          It's the same movants in both New Jersey and

2     Massachusetts with the same certifications.  So the same lead

3     plaintiff is going to be selected in each, the one with the

4     greatest losses which we submit is Mr. Wyatt.  And there will

5     be nothing having to do with consolidation that goes forward

6     under the terms of the relief that we're looking for.

7          And it was a nice bit of three-card monte that

8     counsel was trying to play with the nature of how consolidation

9     must be addressed under the PSLRA.  But there's nothing in the

10    PSLRA that says consolidation must happen before a lead

11    plaintiff is selected.

12         It's just that if a party wants consolidation, they

13    need to move forward.  And I can represent that none of the

14    filers, who again are all the same in both actions, are going

15    to be seeking consolidation under the very limited relief that

16    we are seeking.

17         Counsel for the debtors also brought up the cases

18    purporting to allow people like defendants in the current cases

19    to weigh in on the lead plaintiff motion.  As you saw in our

20    papers, Your Honor, those cases are simply not -- they're,

21    number one, a minority of cases, but number two, are not

22    relevant here.

23         There is nothing wrong with notice.  There's nothing

24    wrong with the certifications.  And there certainly is no issue

25    regarding loss causation.  In the case against Twitter, the

1  defendants pointed out that the proposed lead plaintiffs, the

2  movants, could not have experienced any losses because they

3  sold before the corrective disclosure.

4          Here, everyone held through the corrective

5  disclosure, which was BlockFi's decision to file for

6  bankruptcy.  So there is absolutely no role they have to play.

7  And I would suggest if they do try to play a role, it would be

8  specious because there is just nothing that they can do.

9          And finally, Your Honor, I wanted to say that the

10 debtors emphasize again and again that they don't want their

11 officers and directors to be distracted.  Their officers and

12 directors are seeking to release these claims.

13         They are focused, at least in part, on their own

14 personal matters in this bankruptcy.  And allowing this very

15 small step to go forward would require absolutely no further

16 attention on their part, and certainly no greater distraction

17 or focus on themselves that they've already expressed.

18         THE COURT:  Thank you, Mr. Calandra.

19         Mr. Gold, your hand is raised.

20         MR. GOLD:  Good morning, Your Honor.  Dan Gold from

21 Shearman & Sterling.  I represent the individual defendants in

22 this securities class actions.  Thank you for letting us be

23 heard.  We did not file a formal objection simply because the

24 debtors are covering the issues, and duplicative paper did not

25 seem to benefit the Court, and it's a waste of attorneys fees.

1          I did want to address, we do have a role to play in

2    the lead plaintiff process.  Where there are issues, it is

3    appropriate for us to weigh in.  And in particular, the

4    consolidation issue is a key one.  We do have the two faces.

5    The lead plaintiffs may not intend to, or the lead plaintiff

6    movants may not intend to move for consolidation.  That doesn't

7    mean the defendants do not intend to do so at the appropriate

8    time.

9          What we can't have are two different lead plaintiffs

10   appointed on behalf of the same class in two different courts.

11   There needs to be a degree of coordination and consolidation

12   between the two courts.  The defendants have an interest and a

13   role, an important role to play, and making sure that that

14   happens.

15         And what I'm hearing from at least one lead plaintiff

16   movant is that we are now going to be forced to engage with six

17   or seven individual clients to move on an expedited basis to

18   get that coordination and consolidation among the courts,

19   taking away from the role that they'll have to play with the

20   debtors.

21         THE COURT:  All right.  Thank you, Mr. Gold.

22         Mr. Calandra again?

23         MR. CALANDRA:  Your Honor, that's just simply not

24   true.  If they want to move for consolidation, in their papers

25   they suggested that they would resist any consolidation motion.

1   But there is nothing that defendants need to do with regard to

2   a lead plaintiff motion in this case because they could only

3   object to perhaps loss causation, certification, and notice.

4          And none of those, they don't suggest that they are

5   an issue because they are not.  And there won't be any need to

6   wrangle multiple people under the relief, the very narrow

7   relief that we are seeking.  It will be the same lead plaintiff

8   ordered in both cases.  And they will be dealing with exactly

9   one lead plaintiff, hopefully.  Thank you, Your Honor.

10         THE COURT:  All right, thank you.

11         And, finally, Ms. Furness?

12         MS. FURNESS:  Thank you.  Thank you, Your Honor.

13  Briefly, Mr. Calandra, he's awfully confident in what I think

14  are opinions of what a court may or may not do.  While he

15  thinks that no matter what argument Mr. Gold's clients have,

16  they will fail.

17         That's not for this Court to decide.  Mr. Calandra

18  and Mr. Etkin have, you know, come to the Court and said well

19  debtors didn't present anything that shows the notice are wrong

20  or that this is not an adequate plaintiff.  It's not the

21  debtors' job.  The debtors aren't a defendant in that case.

22  We're not required to do that.

23         The point is, Your Honor, Mr. Calandra cannot

24  absolutely say that.  He can't guarantee that the Court won't

25  allow the defendants to do something.  In addition, you also

1  have not heard, and which we do believe is significant, that

2  you pointed out, they have not committed to this being it.

3        This is not it, Your Honor.  Simply doing it is not

4  going to be the end of this.  The reason they've asked for it,

5  the reason they think they have irreparable harm is if they can

6  come in, again, with a month prior to confirmation to ask this

7  Court for further things, for example delay of the confirmation

8  hearing.

9        And again, Your Honor, there is no irreparable harm.

10 Each of these individuals in this purported crime can do what

11 they want to do to protect themselves.  The disclosure

12 statement allows -- gives everyone the information.  The plan

13 allows them to opt out for the releases.

14        There's no irreparable harm here.  And, Your Honor,

15 we would just respectfully request that you deny the relief

16 requested by Mr. Wyatt.

17        THE COURT:  All right.  Thank you all.

18        MR. ETKIN:  Your Honor, can I make one last point?

19 And I apologize for the free-for-all.  But Ms. Furness keeps

20 talking about irreparable harm.  I think the standard is good

21 cause.  And injecting an irreparable harm standard into this is

22 just not correct.

23        We believe the good cause is obvious given the

24 timing.  We've set it out.  If the individual defendants wanted

25 to weigh in about consolidation, they should have filed.

1  Papers.  They didn't.

2         If they want the cases consolidated, they can come in

3  and file a motion tomorrow for limited relief from the

4  injunction.  That's up to them.  But as Mr. Calandra pointed

5  out, consolidation is not the issue before the Court.

6         And none of us can presuppose what the district court

7  will say or do with respect to the lead plaintiff motions.

8  This is all about giving the district courts the opportunity to

9  weigh in.  And what they do, what they say, what orders they

10 entered and when they -- what orders they enter and when they

11 enter them, you know, that's going to be up to them, and we'll

12 have to deal with the consequences of that.

13        THE COURT:  All right.  Thank you.  Thank you, Mr.

14 Etkin.

15        Well-argued.  I appreciate the movant's transparency

16 and candor in coming to the Court.  It's clear the purposes

17 that would be served by the Court modifying the stipulated

18 injunction and order that's already in place.

19        And I agree with Mr. Etkin the standard is cause.  Is

20 there cause to do so.  Where I disagree with it, I don't find

21 cause.  I don't find any change in circumstances from when Mr.

22 Trey Green and Mr. Antonie Elas, if I'm pronouncing it

23 correctly, stipulated and agreed that for, and essentially an

24 exchange, the opportunity to file the motions in advance of a

25 deadline to do so and how important that was, and the

1  acknowledgment that their efforts cannot and should not impair

2  the efforts of this debtor to reorganize.

3          Those efforts included a hotly contested mediation,

4  several hotly contested mediation settlements proceedings in

5  front of mediators, also in which the Court took part in, which

6  has not been completed because there has been no confirmation

7  of any plan yet.

8          The agreement that Mr. Green and Mr. Elas

9  acknowledged, and through their stipulation was to allow the

10  process to go forward, not to restrain or handcuff the

11  necessary participants so that it would impair any insiders,

12  that it would impair the reorganization.

13          And we are on the cusp of a plan.  I don't know if

14  the plan's going to be confirmed.  I don't know what the voting

15  is going to be.  But we are on the cusp of having that.  I

16  believe it's scheduled for September 26th.

17          Certainly, the prospects of a plan that would impact

18  the claims of Mr. Green and Mr. Elas were contemplated when the

19  stipulation was agreed to.  There is no prejudice to either

20  those defendants in this adversary, or the plaintiffs, or Mr.

21  Wyatt in participating further in the Chapter 11 process

22  without a court-appointed fiduciary on their behalf.

23          And that's where I disagree to the language that's

24  been in the brief that class members should have a

25  court-appointed fiduciary for purposes of this Chapter 11.

1  These individuals, these class members, these proposed lead

2  plaintiffs have counsel, and even without counsel, they have

3  the ability to represent their interests and take issue with

4  any aspects of the proposed plan that impacts, impairs their

5  rights.

6       Indeed, and all counsel knows that there are

7  opportunities apart from having a court-designated fiduciary as

8  part of the class.  Creditors often form ad hoc committees and

9  retain counsel to get themselves involved in the case.  And

10 there's no surprise that we're at confirmation.  That's what

11 was contemplated in the three months between the time the

12 stipulation was entered that that was the opportunity.

13      I don't find cause.  I understand that Mr. Elas and

14 Mr. Green may consent to the motion to modify the stipulated

15 injunction.  But that would operate as a back door for them to

16 agree and allow another party to come in to get more relief

17 than they requested in the stipulation.

18      And again, I see no prejudice.  It's not an issue of

19 irreparable harm.  But the plan is an opt-out plan.  But more

20 importantly, these plaintiffs in the class action have an

21 opportunity to engage with this Court with respect to the

22 merits of the plan.  And the process in the class action can

23 proceed along the lines of the stipulated injunction.

24      What I will do to make sure because we don't know

25 what happens on September 26th, if there are other delays.  And

1 I would agree that the class actions can't be delayed

2 interminably.  The debtor was supposed to have an opportunity

3 to confirm a plan.

4        They have that opportunity on September 26.  So I

5 will carry the motion to September 26, and to see if it looks

6 like the plan process is being retarded, if there aren't votes

7 or if there are certainly questions as to whether there is a

8 viable plan, then I think the Court should take another look at

9 letting these plaintiffs proceed in either of the courts or

10 where the class actions are pending.

11        But the agreement in effect, and in the Court's view

12 the proper basis to enter the stipulated injunction, haven't

13 changed, and the circumstances haven't changed.  And the

14 potential impact and the potential impairment of the ability to

15 pursue a reorganization and the mechanics involved in

16 reorganizing warrant denying, well not granting the relief

17 today but simply carrying the motion to September 26th.

18        So I'm not going to enter an order unless plaintiffs

19 wish, well it's movants wish for me to enter an order denying.

20 You know, my inclination is to simply carry the matter to

21 September 26th.  Mr. Etkin, do you prefer a denial?  I'm trying

22 to save you time having to refile in case the circumstances

23 change.

24        MR. ETKIN:  Well, I understand, Your Honor.  And we

25 appreciate that.  And we'll live with carrying the motion to

1  the 26th.

2          THE COURT:  All right.  Thank you, Counsel.

3          MR. ETKIN:  Thank you.

4          THE COURT:  You're welcome to stay on for another

5  interesting argument, or you may be excused.

6          MR. ETKIN:  Thank you, Your Honor.

7          THE COURT:  Thank you.  Thank you all.

8      (Adversary Case 22-19361 concluded at 10:59 a.m.)

9          THE COURT:  All right.  Then, now let's move on to

10  the motion filed on behalf of the United States of America

11  seeking a stay of the pending adversary proceeding, 23-1144,

12  brought by the Committee of Unsecured Creditors pending a

13  determination of the motion to withdraw the reference.

14          Let me have appearances in this matter first on

15  behalf of the United States.

16          MR. SHAPIRO:  Good morning, Your Honor.

17          Seth Shapiro for the United States of America.

18          THE COURT:  Good morning, Mr. Shapiro.

19          MS. DWOSKIN:  Good morning, Your Honor.

20          Sharon Dwoskin from Brown Rudnick on behalf of the

21  Official Committee of Unsecured Creditors.

22          THE COURT:  Good morning, Ms. Dwoskin.

23          Other appearances?

24          MR. BERNARD:  Richard Bernard, Faegre Drinker, on

25  behalf of the JPLs.

33

1          THE COURT:  Good morning again.

2          MR. BERNARD:  Good morning.

3          MS. CHAVEZ:  And Jordan Chavez again, Your Honor, on

4  behalf of the debtors.

5          THE COURT:  All right.  And I guess that takes care

6  of it.

7          All right.  So needless to say, I've read the

8  submissions and the opposition and the replies and the

9  surreplies and all of it.  Interesting issues.

10          Mr. Shapiro, let me turn to you first.  Let's discuss

11  just more process.  We know there's a pending motion to dismiss

12  in a couple of weeks.  There's also I guess one element of the

13  request for a stay is the Court has to make a finding of

14  likelihood of success.  It seems, and I'll be upfront, I

15  haven't read the dismissal papers yet on either side.  It seems

16  almost incongruous for me to make a preliminary decision that

17  I'm going to be asked to make or look at again in two weeks as

18  part of this.

19          But I have a more immediate concern, and I don't like

20  doing this to counsel by surprise, so I certainly will

21  understand anyone who wants to take some time on it and it may

22  not be that it warrants it.  So I think last week I received in

23  another matter, another case, the case is called -- in the

24  Chapter 11 case of Hollister Construction, and I'm going to

25  give you all docket numbers so that you can write it down.

1          The Hollister Construction case, the main case, is

2    19-27439.  And it's an adversary proceeding in that case, BAK

3    Advisors v. SAX.  And that adversary number is 21-1358.

4          Now that action is an accountant's malpractice

5    action.  That doesn't have a bearing on this.  But there was a

6    motion to withdraw the reference.  And Judge Shipp entered an

7    opinion that came down on August 16th.  The opinion is in his

8    civil action, 22-6035.

9          It's a short opinion, but it touches on the process

10   that's used in this district when there are motions to withdraw

11   the reference.  And he reminded the parties, and I'll read from

12   it: "As this court has previously held, it is appropriate to

13   allow the bankruptcy court to make a determination of whether a

14   claim is non-core in the first instance."

15         And he cites to actually a couple of my other cases,

16   In re Princeton Alternative Income Fund and In re Kara Homes,

17   where it says the core or non-core determination is a threshold

18   factor in the withdrawal analysis and should be made in the

19   first instance by the bankruptcy court.  Here, the bankruptcy

20   court has not yet been asked to determine whether the adversary

21   proceeding is a core or non-core matter.

22         So I read this and it struck me, I wasn't sure how

23   relevant it was to this matter, but I will throw it out.  It's

24   been the -- this is just one case.  I can probably cite to you

25   half a dozen other cases of mine where in a motion to withdraw

1  the reference, the district court first looks to see if there's

2  been a determination for other matters, core or non-core.

3  Sometimes the parties consent and they agree in the pleadings.

4      More often they don't because the parties don't agree

5  on anything.  But the motions to withdraw the reference end up

6  being denied and sent back and said go find out from the

7  bankruptcy court first is it core or non-core.  Now I'm pretty

8  confident in reading the pleadings that the Committee believes

9  this is a core matter that's facing us today as part of this

10 adversary proceeding.  I think they've said so.

11     I don't know.  I would guess the United States of

12 America disagrees.

13     MR. SHAPIRO:  That's correct, Your Honor.

14     THE COURT:  I want to clarify.  I don't think I've

15 been asked to make that decision, and I'm not sure as part of

16 the motion to dismiss I've been asked to make that decision or

17 if it's been briefed.  So given this, we can argue this motion

18 for a stay, but I'm wondering where the actual motion to

19 withdraw the reference is going to go if that threshold

20 determination hasn't been addressed.

21     I'm happy to make it not as part of argument today.

22 I'm not asking you all to make those arguments today.  But I'm

23 wondering if the motion to stay is premature or what your

24 respective thoughts are.  And I know I'm throwing this on you,

25 but this is what we do.

1            So I'll turn first to Mr. Shapiro and then to

2   Committee's counsel.  Any thoughts?

3            MR. SHAPIRO:  That's a very fair question, Your

4   Honor.  And, in fact, in the briefing, there's not a lot of

5   discussion of this, but we do take the position in the briefing

6   that the action is essentially a collateral attack on a settled

7   criminal forfeiture proceeding which has been disguised as an

8   action based on the automatic stay.

9            And so we argue that it's non-core in that respect

10  that the Committee is essentially arguing that the action is

11  like a wolf in sheep's clothing, but in reality, we honestly

12  believe that it is -- it's trying to change the substantive

13  nature of what's being challenged here.  And ultimately, we

14  think the matter should be stayed until the district court has

15  a chance to rule on the motion to withdraw the reference.

16           And I believe in the papers we've already submitted

17  we have -- and there wasn't a lot of discussion of this, but

18  there was discussion that the matters were non-core.  And we

19  don't think the Committee can use the automatic stay to either

20  collateral attack or estop a criminal forfeiture because the

21  criminal forfeiture itself is exempted from the automatic stay.

22           There are non-bankruptcy statutes, 18 U.S.C. 3231 and

23  28 U.S.C. 1355 and 21 U.S.C. 853(k) and (n) on top of course

24  the criminal statutes 18 U.S.C. 981 and '82 which deal with

25  forfeiture proceedings which vest jurisdiction exclusively in

1  the district court with respect to forfeiture proceedings in a

2  post-indictment situation such as what we have here vis-a-vis

3  the criminal defendants who have not yet been extradited to the

4  United States.

5  So while the Committee has tried to inject the flavor

6  of core in the sense that they're arguing that the proceeding

7  is a violation of the stay, we would argue that the proceeding

8  is predominantly non-core and we don't consent to the

9  jurisdiction of the bankruptcy court to make the determination

10  with respect to those non-core claims.  Thank you.

11  THE COURT:  So my inquiry, and I appreciate your

12  comments, my inquiry was whether I have enough in this motion

13  or I should be looking to the motion to dismiss to decide

14  whether it's core or non-core which seems to be a finding

15  that's going to be critical before the district court is going

16  to take up the withdrawal of the reference matter.

17  Let me turn to Ms. Dwoskin.  What are your thoughts

18  on what's been briefed and argued to date and where we should

19  go?

20  MS. DWOSKIN:  Your Honor, thank you.  I appreciate

21  the consideration of what the timing is here.  As Mr. Shapiro

22  pointed out, we think that both the DOJ and the Committee

23  briefed this in our papers.  I'm happy to argue the point

24  today, Your Honor.  Not surprisingly, I disagree with

25  everything that Mr. Shapiro just said.  And happy to walk Your

38

1  Honor through all of that.

2         The Committee doesn't have any problem with arguing

3  that issue now and having the Court make that finding now, but

4  I do understand that the DOJ's motion didn't actually ask Your

5  Honor to make that finding.  But for procedural purposes, we're

6  here.  We're before Your Honor.  We've briefed the issues.  And

7  I think, frankly, we would have to cover those issues anyway to

8  resolve the stay motion.

9         So from a procedural perspective and from a judicial

10  economy perspective, Your Honor, I don't have any problem with

11  arguing those issues today.

12         THE COURT:  All right.  Well, then, Mr. Shapiro,

13  you're in agreement, at least not on the substance but as to

14  the process of including in the argument today?

15         MR. SHAPIRO:  Of course, unless Your Honor would

16  prefer that we submit additional briefing as an aid to the

17  Court.  We would accommodate the Court's desires in that

18  respect.

19         THE COURT:  Well, the Court -- I had the luxury of

20  having another motion on this in a few weeks as far as the

21  motion to dismiss.  But let me hear the argument.  I gather no

22  other parties wish to be heard on it.

23         So let me go back to you, Mr. Shapiro, it's your

24  motion.  Anything you wish to add to what's been included in

25  your papers?

1          MR. SHAPIRO:  Well, it seems to us that there is a

2   likelihood of success on the motion to withdraw the reference.

3   I don't want to reiterate all the arguments we've made in the

4   papers.  Your Honor has reviewed those.  But a critical issue

5   here relates to irreparable harm.  And clearly, it's our burden

6   to have to demonstrate that.

7          And we believe that if the Court were not to stay

8   this proceeding and we were forced to go forward with it, that

9   that would cause irreparable harm to the United States because

10  the United States is not acting as a creditor here.  We do not

11  believe we are a creditor.  We are a police power regulator

12  exercising our criminal law rights to seize assets.

13         And so a decision to permit the proceeding to go

14  forward before this Court or the district court as an

15  opportunity to rule on the motion to dismiss would risk

16  undermining the United States' ability to enforce criminal

17  forfeiture laws in bankruptcy cases, notwithstanding Section

18  362(b)(4) which in this case applies because the criminal

19  action is not against the debtor so we had to rely on 362(b)(4)

20  exception rather than the (b)(1).

21         No prior court has ever limited the Government's

22  ability to enforce the criminal forfeiture laws in this type of

23  factual and legal scenario.  And so the Committee's theory, if

24  it were adopted by the Court, would essentially allow criminals

25  to use bankruptcy cases to avoid forfeiture and the proceeds of

1    alleged crimes --

2            THE COURT:  But the criminal --

3            MR. SHAPIRO:  -- would be unjustly distributed to

4    creditors rather than to the federal crime victims.  So we --

5            THE COURT:  But the criminals didn't file this

6    bankruptcy case.  And how are they using it -- I guess I saw

7    that in the brief that --

8            MR. SHAPIRO:  Right.

9            THE COURT:  But this was a case filed by a third

10   party, not -- innocent third party.

11           MR. SHAPIRO:  Right.  But it still is attacking the

12   seizure warrants against the assets of the -- which the debtor

13   argues are assets of the criminals.  And so if the Court were

14   to inquire under 28 U.S.C. 1334(e)(1) that I have to determine

15   as the judge whether or not these assets are property of the

16   estate or not property of the estate and not simply dismiss the

17   action because it should have never been filed in the first

18   place under 21 U.S.C. 853 of the Criminal Code, that would take

19   the cart before the horse.

20           Our view is that 28 U.S.C. 1334(e)(1) doesn't even

21   apply because the action should have never been filed in the

22   first place because there had been an indictment of the

23   criminal defendants and the criminal law is pretty clear on the

24   point that no action shall be filed vis-a-vis those assets in a

25   post-indictment scenario.

1        And arguably, there is a difficult call here for Your

2   Honor to make.  We're trying to reconcile 28 U.S.C. 1334(e)(1)

3   with the Criminal Code which on their faces appear to be

4   somewhat inconsistent with each other in that they both seem to

5   be giving exclusive jurisdiction to the separate courts.  And

6   I'm not saying there's a conflict per se, but it is not an easy

7   call for Your Honor to have to make that decision about which

8   should take priority over the other based on the facts and

9   circumstances of this case.

10          THE COURT:  Well, I appreciate that.

11          MR. SHAPIRO:  We're just worried that --

12          THE COURT:  I appreciate your saying that it's not an

13   easy call because months ago it was an easy call.  At least

14   we've recognized the complexity here.

15          MR. SHAPIRO:  Well, Your Honor, there is not -- if

16   Your Honor has read the cases, you would see there is not a

17   case that is on all fours directly on point in a situation

18   where there is a motion to compel compliance with a seizure

19   warrant and the Government does not have control or possession

20   of the asset.

21          But, nevertheless, it's our view that under the

22   Criminal Code, that this Court can't exercise the jurisdiction

23   under 28 U.S.C. 1334(e)(1) because it is a criminal case and

24   bankruptcy courts under 28 U.S.C. 1334 don't have jurisdiction.

25          So we're worried that even though Your Honor is

42

1 correct that this is -- that criminals are not the debtors

2 here, we're worried that criminals will see this as an

3 opportunity to basically file bankruptcy cases all over the

4 country and then argue that 28 U.S.C. 1334(e)(1) somehow gives

5 the bankruptcy court authority to say that those assets are

6 property of their bankruptcy estate rather than property of the

7 Government in a post-indictment situation.

8    And that's the kind of harm that the Government

9 believes is irreparable.  We also think that the criminal case

10 itself against these particular defendants who have not yet

11 been extradited from a foreign country, if the proceeding were

12 allowed to go forward and discovery were allowed to be taken,

13 it could jeopardize the criminal case against those defendants.

14    And so we're worried that information might be sought

15 by the Committee or by the debtors that could somehow undermine

16 that prosecution and that ultimately stop our ability to be

17 able to obtain the forfeiture for the benefit of the crime

18 victims down the road.

19    So I just wanted to make sure Your Honor understood

20 where we're coming from on the irreparable harm argument.  I

21 mean the motion to withdraw the reference argument is pretty

22 clear on its face that there are substantial material questions

23 of federal criminal law which mandate withdrawal of the

24 reference.  You have the issues of whether the Washington

25 District Court has exclusive jurisdiction over the seizure

43

1  warrants and orders, notwithstanding 1334(e)(1).

2          You have the issue of whether the federal criminal

3  seizure law bars the proceeding and instead establishes an

4  exclusive mechanism for third parties to assert their

5  interests.  You have the issue of whether the criminal law

6  relation-back doctrine applies to the case as to whether or not

7  to remove the assets at issue from becoming property of the

8  estate.

9          And, ultimately, you even have really a bankruptcy

10 law issue, too, which is -- because the proceeding appears to

11 raise the question of whether or not property of the estate as

12 defined in Section 541 of the Bankruptcy Code includes property

13 subject to forfeiture in the criminal case or whether or not

14 that property is property of the estate.

15         So we don't think there's any doubt that -- whether

16 this is a core or non-core proceeding, whether it's a threshold

17 issue or not.  We don't think there's any doubt that the

18 district court is going to withdraw the reference.  The

19 matter's been pending before Judge Kirsch I think for

20 approximately two months now.

21         It could happen any day now.  And with Your Honor's

22 permission, perhaps we could let Judge Kirsch know that we're

23 reaching a critical stage in the bankruptcy and we'd like to

24 know if there's going to be a decision.  I don't know to do

25 that formally or informally, but it might be helpful to just

1  let him know that to see whether or not we can figure out

2  whether or not we're going to get a decision anytime soon from

3  him.

4          So those are those issues.  And then, of course, to

5  turn to the public interest question -- also, well, actually I

6  skipped over the harm to Committee or the movant.  There's a

7  plan coming up for confirmation.  We don't know yet whether or

8  not the plan's going to be confirmed, but we are concerned that

9  there could be a distribution as early as October or November

10  which if we were to end up getting a partial summary judgment

11  or some kind of summary judgment or ultimate judgment entered

12  against the United States before then, that the Committee and

13  the debtor might distribute the money.

14          And if we can't get a stay pending appeal of that

15  confirmation order before the adjudication, we're worried that

16  the Committee and the debtor might argue equitable mootness.

17  And we would like to try to work out some arrangements.  We

18  haven't had a chance to address those with the Committee and

19  the debtor yet.

20          But we'd like to put some provisions in the plan that

21  basically make sure that this money is preserved post-judgment

22  until there is an ultimate decision by an appellate court,

23  because it would seem unfair to permit those monies to be

24  distributed to the creditors over the crime victims when the

25  creditors themselves were essentially investors and took a

1  known risk based on a contract that they might not get all

2  their money back.  Whereas, the crime victims had no idea what

3  was going to happen to them.

4       So that's in that respect.  And then on the last

5  question about the public interests, well, again, that's

6  another tough call for Your Honor to make.  But it's fairly

7  clear that criminal law and criminal proceedings should take

8  precedence over bankruptcy proceedings and that Congress has

9  made a specific mandate, it appears, that the public interest

10 is best served when criminal and forfeiture laws do take

11 precedence over the bankruptcy laws.  They've created a method

12 by which the proceeds should be distributed and anyone with an

13 interest can appear in that post-conviction setting and make an

14 argument as to why it is they should be entitled to that down

15 the road.

16       It doesn't seem that if ultimately the monies get

17 distributed in the criminal forfeiture proceedings, the people

18 are not going to have their day in court.  I mean they will.

19 Ultimately, Your Honor, criminal proceedings are intended to

20 punish the crime victims [sic] and ensure that the victims

21 receive restitution.  Bankruptcy proceedings are civil

22 proceedings and are intended to give creditors an opportunity

23 to recover money that they lost by basically entering into a

24 business transaction.

25       It's not up to us to decide which should take

46

1 priority.  It appears that Congress has already made that

2 decision, and we would ask that Your Honor take that into

3 account in ruling on the issue.  At a minimum, we would ask

4 that Judge Kirsch at least be given a period of time, perhaps

5 up to the time of the hearing on the motion to dismiss, to rule

6 on the motion to withdraw the reference to see whether or not

7 he would want to be the judge to hear that motion rather than

8 Your Honor.  Thank you.

9           THE COURT:  Before I turn to Ms. Dwoskin, Mr.

10 Shapiro, I have further questions, but I want --

11           MR. SHAPIRO:  Okay.

12           THE COURT:  -- to give both sides an opportunity to

13 speak.  But is it the United States' intent if Judge Kirsch

14 were to withdraw the reference to litigate this in New Jersey

15 or is the next step to try to get it back to Washington and to

16 change venue?

17           MR. SHAPIRO:  We do not intend at the present time,

18 Your Honor, to seek a transfer of venue back to Washington.  We

19 believe that the judge in Washington made it clear that he

20 wanted the matters to first be adjudicated here on the East

21 Coast either before Your Honor or before the district court

22 judge.  And unless there is a change of circumstances, which is

23 somewhat significant and which we don't anticipate, we believe

24 that the matter will get adjudicated here in the Third Circuit.

25           THE COURT:  All right.  Thank you.

47

1          Ms. Dwoskin?

2          MS. DWOSKIN:   Thank you, Your Honor.

3          Let me address the question of whether it's a core

4   proceeding first and foremost.  We think the adversary

5   proceeding is core because it asks the Court to enforce the

6   automatic stay against the United States that seeks a turnover

7   of estate property.  That's a core proceeding under

8   157(b)(2)(B).  And as Mr. Shapiro pointed out, this Court has

9   exclusive jurisdiction under 28 U.S.C. 1334(e) as to what is

10  and what is not property of the estate.

11         And, Your Honor, we go through in our papers how

12  there's a strong presumption against withdrawal of the

13  reference for core proceedings and that none of the Pruitt

14  factors support overcoming the presumption against withdrawal.

15  I won't go through those here, Your Honor, mostly because the

16  DOJ doesn't challenge them.

17         But the United States' claims are jurisdictional,

18  right, and they're the same claims raised in their stay motion,

19  in their withdrawal motion, and in their motion to dismiss.

20  And those claims are that they're likely to succeed on the

21  merits of this motion because the adversary proceeding raises

22  criminal law issues, including whether as Mr. Shapiro just

23  pointed out 18 U.S.C. 3231 which gives district courts

24  jurisdiction over offenses against the United States and 21

25  U.S.C. 1355 which gives district courts jurisdiction over

1   criminal forfeiture proceedings a strict view of jurisdiction

2   over this adversary proceeding.

3        I want to take some time, Your Honor, to walk through

4   this because it is a complicated issue.  I want to separate the

5   apples from the oranges here, Your Honor, because I think that

6   while the United States has certainly raised a host of criminal

7   law issues, we don't think that resolution of the adversary

8   proceeding requires Your Honor to resolve any of those issues.

9   And at best, it asks for a straightforward application of

10  settled law.

11       And the reason, Your Honor, is this and I want to be

12  very clear.  We've said this over and over again in our papers.

13  We are not challenging enforcement of the seizure warrants.

14  We're not seeking to enjoin the criminal proceeding.  We're not

15  seeking to enjoin the criminal forfeiture proceeding.  We're

16  seeking to prevent the United States from taking assets that

17  are not subject to forfeiture under Section 853, that are not

18  named in the seizure warrants, that never belonged to the

19  criminal defendants, that were never the criminal defendants'

20  property.

21       We're seeking to prevent them frm obtaining those

22  assets which properly should go to other creditors of the

23  debtors.  All the forfeiture statutes allow the United States

24  to do, which they have admitted in their papers, is stand in

25  the shoes of the criminal defendants who are unsecured

49

1    creditors of BlockFi.  We're just trying to keep them in those

2    shoes, and that doesn't require any challenge of the seizure

3    warrants.  They can have their unsecured claim.  It doesn't

4    require enjoining the forfeiture proceeding.  The forfeiture

5    proceeding can continue.

6           At best, it's a straightforward application of the

7    criminal forfeiture statute.  And I want to walk through that

8    statute first specifically, Your Honor.  As a bankruptcy

9    lawyer, right, criminal forfeiture is not something that I see

10   every day, so I think it would be helpful to just walk through

11   exactly why there's this dispute, Your Honor, between the

12   Committee and the Government, if that's okay.

13          THE COURT:  Absolutely.

14          MS. DWOSKIN:  So, thank you, 853(a) defines property

15   subject to forfeiture as one of four things.  We think there's

16   two that are really relevant here, but just in the interest of

17   completeness, the first of that is property that the criminal

18   defendants obtained as a result of the crime.  The second is

19   proceeds of that property, right, property derived from what

20   they obtained.  And the third is property used to commit the

21   crime, which we don't think is relevant.  And the fourth is, in

22   the case of a criminal enterprise, interest in or claims

23   against that criminal enterprise.  Again, we don't think that's

24   relevant.

25          The seizure warrants are in line with this, Your

50

1   Honor.  The seizure warrants permit the United States to seize

2   from BlockFi all funds including virtual currencies from the

3   subject accounts.  And, again, the criminal forfeiture statute

4   is about what the criminals have to forfeit to the United

5   States, not what BlockFi has to forfeit to the United States,

6   right.  The criminals have to forfeit to the United States the

7   property subject to forfeiture, and the United States can seize

8   from BlockFi what was named in the seizure warrants all funds

9   including virtual currencies from four subject accounts of the

10  criminal defendants.

11          So that could mean, Your Honor, only one of two

12  things, assuming that the seizure warrants in fact comply with

13  853, which we're not suggesting they don't.  It could mean the

14  actual crypto that the criminal defendants deposited at

15  BlockFi.  Now the Committee's alleged that BlockFi no longer

16  has that crypto in full or in principal part.  And the United

17  States hasn't conducted any kind of tracing exercise, and we

18  don't expect that they will.  So it could mean that, right.

19          The other thing that it could mean, we think it does

20  mean, is the property interests of the criminal defendants

21  derived from their deposit and that's their unsecured claim

22  against BlockFi.  We think that's what the seizure warrants

23  permit the United States to take.  And that application I think

24  is a fairly straightforward application of the forfeiture

25  statute.

1          It's supported by case law that we cite in our

2    briefs, including the Ninth Circuit's <u>Lester</u> case, and that's

3    at 85 F.3d 1409.  And that case stands for the proposition that

4    where property subject to forfeiture is not connected to

5    criminal activities, only the property interest of the

6    defendant is subject to forfeiture.  And the Western District

7    of North Carolina <u>Bailey</u> case, and that's 926 F.Supp.2d. 739,

8    whereby in forfeiture proceeding, the Government acquires only

9    the defendants' interest in property.  There's plenty of other

10   case law, Your Honor, that both we and the United States cite

11   in our briefs, but in essence, right, the criminal -- the

12   Government only gets to stand in the criminal defendants'

13   shoes.

14         And by the way, Your Honor, that's also supported by

15   the United States' own filings through the FDIC in the SVB case

16   where they argue that when a person makes a deposit in a bank,

17   all they have is an unsecured claim against that bank, right.

18   And to the extent that the bank is solvent, which they often

19   are, the United States if they conveniently have a seizure

20   warrant against the bank and a forfeiture action against the

21   defendant, they can get paid in full.  But all they have is an

22   unsecured claim.

23         The same is true here.  All of BlockFi's customers

24   including the criminal defendants are unsecured creditors, and

25   all Section 853 allows the United States to do is take the

52

1   crypto that it can trace to the crime, it can trace that -- if

2   it can trace that crypto to Alameda and it can get a seizure

3   warrant against Alameda, it can take it from them.  They can

4   trace it to wherever it is, it can go take that.

5        We have alleged that BlockFi doesn't have it.  Or it

6   can step -- and/or, I suppose, it can step into the criminal

7   defendants' shoes and take their property interest at BlockFi,

8   and that's their unsecured claim.  And that's why, Your Honor,

9   the debtors already turned over the funds that were in the

10  criminal defendants' Wallet accounts.  The Committee had no

11  objection to that, right.  Those funds were never BlockFi's

12  property.  They were always property of the criminal

13  defendants.  It's very clear, right, the seizure warrants

14  permit that to be turned over.

15       So the question that the adversary proceeding is

16  seeking Your Honor to resolve is, in order to enforce the

17  seizure warrants, is what is the criminal defendants' interest

18  in BlockFi's property.  Only this Court has the jurisdiction to

19  decide what the criminal defendants would be entitled to

20  receive from BlockFi on account of the assets that they

21  deposited in the subject accounts.

22       And that's also a core issue under 157(b)(2)(B) which

23  talks about allowances of claims.  And, again, you only need a

24  straightforward application of the criminal forfeiture law to

25  decide that the United States can't get more from BlockFi than

53

1 | what was property of the defendants.

2 |      I want to talk, Your Honor, about the relation-back

3 | doctrine which Mr. Shapiro gestured that earlier and which is

4 | in their papers.  But let me pause because that was a lot and I

5 | want to see if Your Honor has any questions.

6 |      THE COURT:  No, I'm fine.  I'm following.

7 |      MS. DWOSKIN:  Okay, great.

8 |      So, Your Honor, the United States claims that this

9 | relation-back doctrine applies to prevent the criminal

10 | defendants' property from becoming property of the estate and,

11 | therefore, this Court lacks jurisdiction over it.  That

12 | language, Your Honor, comes from cases where the criminal

13 | defendants are debtors, right; only from those cases.  Where a

14 | criminal defendant is a debtor and the crime predates the

15 | bankruptcy filing, the United States's interest in that

16 | property dates back to the commission of the crime and is

17 | senior to the interest of the estates.  It doesn't injure the

18 | estates at all.

19 |      There's no disconnect there between that and what's

20 | going on here.  The relation-back doctrine really doesn't move

21 | the needle at all.  That doctrine only applies to tainted

22 | property, again, the property used in the crime or the proceeds

23 | that the United States can trace to the crime.  And all it does

24 | is it provides that the United States' interest in that

25 | property subject to forfeiture, not property that's not subject

1  to forfeiture dates to the commission of the crime and it's

2  senior to the interests that other creditors of the criminal

3  defendants, not other creditors of the debtor might have.

4       So the relation-back doctrine is really just about

5  whose interests are senior to whose.  It's not a DeLorean,

6  right.  It's not a time machine.  It can't take the United

7  States back to a universe where BlockFi didn't rehypothecate

8  the criminal defendants' crypto, where it didn't put its assets

9  in FTX or Alameda, where FTX and BlockFi didn't fail, where

10 BlockFi didn't file for bankruptcy, right.  We can't go back in

11 time.

12      What it says is if someone else has interests in the

13 criminal defendants' property interest at BlockFi, the United

14 States' interest dates back to the commission of the crime.

15 But here, the Committee's not asserting an interest in the

16 property that belongs to the criminal defendants and neither, I

17 don't think is the defendants, right.  We are trying to prevent

18 the United States from seizing assets that belong to other

19 people that are not subject to forfeiture under a

20 straightforward application of 853(a).

21      And I want to walk Your Honor through a hypothetical

22 because we've been tossing around this issue for months now.

23 But it is fairly complicated.  So let me raise this

24 hypothetical if I can, right.  If a criminal steals a blue

25 Jeep, okay, and gives it to me to hold on to and I sell it and

1  I gamble away the proceeds, that doesn't give the Government

2  the right to take any car or any blue Jeep that happens to be

3  in my possession, right.  If my sister had a blue Jeep that she

4  also gave me to hang on to, the Government can't take my

5  sister's blue Jeep just because it wants one.  That's not

6  property obtained in the crime, and it's not proceeds from the

7  crime.

8         They only have the right to take assets that are

9  subject to forfeiture and I no longer have that asset, okay.

10  They can take the blue Jeep if they can find it from whoever I

11  sold it to, right, or they can take the criminal's claim

12  against me for conversion if they have one.  But they can't

13  take my sister's Jeep.  And we think that, Your Honor, that's

14  what they're trying to do.  The relation-back doctrine doesn't

15  let them do it.  It just gives the United States seniority as

16  to other individuals who might have competing interests in the

17  criminal defendants' property.  That's not what's at issue

18  here.

19         I also want to address, and I'll try to do this

20  briefly, Your Honor, the suggestion that the only way for the

21  estates and the Committee and creditors to assert their

22  interests in the property the United States is seeking to seize

23  is through 21 U.S.C. 853(n) and that they're forbidden from

24  doing so.  This adversary proceeding is somehow forbidden by 21

25  U.S.C. 853(k).  Neither is applicable here and neither is true.

1        There is absolutely no basis for the United States'

2   contention that the debtors, the Committee, and BlockFi's

3   innocent creditors have to go to criminal court in the Western

4   District of Washington to assert their interests in property

5   that never belonged to the criminal defendants, that the United

6   States has not traced to the crime, and that is not named in

7   the seizure warrants.

8        Sections 853(k) and (n) again only apply to property

9   subject to forfeiture, that is the property the criminal

10  defendant obtained from the crime or proceeds of that property.

11  853(k) says that no party claiming an interest in that property

12  subject to forfeiture can commence an action of law or equity

13  against the United States concerning that validity except

14  pursuant to 853(n) which provides the procedures for doing so.

15       But, again, neither the debtors nor the Committee nor

16  any other parties asserting an interest in the property at

17  BlockFi that belongs to the criminal defendants.  The United

18  States can have it.  We're not challenging that.  We're not

19  challenging that the United States can take possession of the

20  criminal defendants' unsecured claim.  I'm sure the debtors

21  would agree to pay that claim over to the United States.

22       Their interests, right, the debtors' and the

23  Committee's interest and the unsecured creditors' interest, is

24  not in funds from the criminal defendants' accounts but rather

25  in funds from their own accounts, right.  The amount that they

1   will not receive if BlockFi pays to the United States the

2   criminal defendants' claim in full in kind.

3          Neither the debtors nor the Committee nor the

4   creditors could use 853(n) because they're not claiming an

5   interest in property, and so 853(k) doesn't apply.  There's no

6   law, Your Honor, that says that the United States can seize

7   whatever it wants from a third party and then bar that third

8   party from challenging the seizure.  That's a clear violation

9   of the Fourth Amendment, and we think the canon of

10  constitutional avoidance dictates that we shouldn't read 21

11  U.S.C. 853 to suggest that, right.

12         No one has shown up with competing interest in the

13  criminal defendants' property.  If that happened, Your Honor,

14  that would be a case in which the bankruptcy court would not

15  have jurisdiction and that dispute should be heard by the

16  criminal court.  But that's not what's happening here.

17         So because there's really only a straightforward

18  application of the criminal forfeiture statute, we think the

19  United States is unlikely to succeed on the merits.  And I'll

20  move on to harms and public interest but, again, I've been

21  talking for a while, Your Honor, so I'll let you -- I'll take a

22  sip of water and see if you have any questions.

23         THE COURT:  Take your sip of water.  I'll save my

24  questions for the end.

25         MS. DWOSKIN:  Okay.  With respect to the harm, the

1  United States suffered no harm if the stay is denied.  There's

2  no duplication of effort or briefing whether this Court or

3  Judge Kirsch ultimately decides the adversary proceeding.  And,

4  again, as Your Honor noted, right, even if the district court

5  did decide to withdraw the reference -- or maybe Your Honor

6  didn't know this -- it's very likely that this Court would be

7  remanded the adversary proceeding to decide pretrial matters or

8  for recommended findings of fact and conclusions of law.

9          And even if the Court or the -- even if this Court

10 ultimately decides the adversary proceeding against the

11 Government and even if, as Mr. Shapiro notes, the estates make

12 a distribution to the Government for something less than the

13 notional balance of the criminal defendants' accounts, the

14 Government is not without remedy, right.  There's no

15 irreparable harm here.

16         The Government is permitted by Section 853(p)(2) to

17 seize substitute property from the criminal defendants, not

18 from the debtors but from the criminal defendants.  So the

19 Government can get what they want.

20         But contrast, the estates and the Committee will

21 suffer harm if we continue to wait.  The assets that are

22 subject to the adversary proceeding are not going to be

23 distributed until there's a ruling.  We already have a

24 stipulation as to that effect by the Government, not with

25 respect to any appeal, right.  We don't think that's fair.  But

1    we've left that issue open for further negotiation with the

2    Government.

3            The Chapter 11 case has progressed to solicitation;

4    confirmation is in a few weeks.  And any stay could delay

5    BlockFi's customers from receiving what they're due.  Frankly,

6    Your Honor, we think the creditors have waited long enough and

7    that there's really no reason for any further delay here.

8            And just with respect to public interest, we agree

9    with the United States that there's a public interest in each

10   court exercising the jurisdiction that's granted to it by

11   Congress.  This Court can decide what is and what isn't

12   property of the estate.  It can decide whether the Government

13   is subject to the automatic stay or whether it's exercising its

14   police power.  We think it's not.

15           And we've briefed that issue: what constitutes funds

16   from the criminal defendants' account to BlockFi and what the

17   value of the criminal defendants' unsecured claim is.  And

18   that's all that's at issue in the adversary proceeding despite

19   the strawman and red herrings that the Government is trying to

20   introduce.

21           So for those reasons, Your Honor, first of all, we

22   think that this is a core proceeding and, secondly, we don't

23   think that the United States has met their burden to show that

24   a stay is warranted.

25           THE COURT:  Thank you, Ms. Dwoskin.  I appreciate the

1    arguments.

2          Mr. Shapiro, before you respond, let me ask a

3    question.  You had raised and referenced public policy,

4    congressional intent.  I think we would agree that absent a

5    criminal prosecution, the two criminal defendants who had

6    deposited with BlockFi as collateral and in interest accounts

7    their digital currency would have now a claim in this

8    bankruptcy.

9          I think you would agree with me that they would be

10   creditors just like any other -- actually, just like a creditor

11   that -- I just pulled one of the hundreds of emails I received,

12   a creditor I'll just use the initials T.S. who is in the UK

13   whose entire retirement account or most of his or her funds

14   were with BlockFi in an interest account.  A creditor, and

15   unfortunately these creditors are not going to get paid in full

16   even under the proposed plan.

17         But absent a criminal prosecution, the two criminal

18   defendants would be creditors entitled to share pro rata with

19   all the other creditors.  Doesn't it seem perverse that -- and

20   that was a term used by the Committee in their briefs, but I

21   think it's applicable -- that because these two defendants

22   actually engaged in criminal activities, they would get more in

23   effect.  And I say they, now it's the United States that steps

24   into their shoes through the forfeiture or is attempting to

25   step into their shoes through the forfeiture.

1          I think it's uncontestable that the law provides that

2    in a forfeiture, the United States does not get greater rights

3    than the criminal defendants, but that's actually what is

4    happening.  If I follow the argument of the United States, and

5    I have to say I mean I'm going to listen to the motion to

6    dismiss and I will probably reserve today, but I am taken aback

7    that following the Government's argument, the Government now

8    actually steps in front of or higher up on the priority scheme

9    than the other general unsecured creditors because the

10   defendants engaged in criminal action.  That seems to be an

11   extraordinary proposition.

12         I looked at 507.  I'm pretty familiar with Section

13   507 of the Code.  I don't see Congress ever giving a priority

14   in distribution to criminal defendants, but that's in effect

15   what we're doing here.  And along the same lines, it would seem

16   that for every dollar in forfeiture that is obtained by the

17   United States is a dollar less going to all the other general

18   unsecured creditors.

19         And when we talk about the policy of forfeiture and

20   restitution and the like, what's happening here is that

21   essentially unless the Government traces the actual digital

22   coins into property of the bankruptcy and to accounts that are

23   held by BlockFi, because that's a different issue and I agree

24   those are subject to forfeiture.

25         But absent that tracing ability, what's really

1  happening is T.S. in Europe and the other several hundred

2  thousand creditors, they're all chipping in to pay the

3  forfeiture obligations of these two criminals.  That can't be

4  public policy that we have innocent creditors of a debtor

5  actually paying the forfeiture obligation.  I think that would

6  be great for the criminals' perspective that somebody else is

7  going to pay their obligations.

8          I mean this is what the challenge is, and it's hard

9  to reconcile.  It also is hard to reconcile that we would make

10 that individual from London or any of the other few hundred

11 thousand all trek to Washington, as gorgeous as it is, on the

12 West Coast to contest the loss of their rights and recovery

13 here.  So with that framework, you can respond to my inquiries

14 and also Ms. Dwoskin's.

15          MR. SHAPIRO:  Okay.  I understand your concerns, Your

16 Honor.  But I think that they're taking the cart before the

17 horse, with all due respect.  If Your Honor looks at the

18 GuildMaster case at 2013 WL 1331392, the Thena case,

19 Diversified Fiber Products v. USA, at 190 B.R. 407.  And even

20 the US v. Pena-Fernandez case we cited at 377 F.Supp.3d. [sic],

21 you'll see that our argument, Your Honor, is that the

22 proceeding shouldn't go forward in this Court because this

23 Court has no jurisdiction.

24          And both in GuildMaster and in the Thena case, and I

25 believe also in Diversified Products, the court -- well, that

1   is the <u>Thena</u> case, <u>Diversified Products</u>, that the court

2   basically found that the property wasn't property of the

3   estate, that the case should be dismissed and the matter should

4   be sent back to the criminal court in this post-indictment

5   situation.

6          So as I indicated earlier, while we don't intend to

7   transfer venue, we of course are still going forward with our

8   motion to dismiss.  And if Your Honor or the district court

9   ends up granting that motion, ultimately, we would be

10  litigating these issues in the criminal court in Washington

11  where we think Congress intended it to be litigated.

12         And while Your Honor makes a point that it seems from

13  Your Honor's perspective unfair to have all these people from

14  all over the world having to go to Seattle, I mean the same

15  could be said about New Jersey.  I mean it doesn't -- there's

16  no difference there.  I mean they have to get litigated in a

17  court that has jurisdiction.

18         Now the other thing I would point out is that under

19  28 U.S.C. 1334(e)(1), which is the statute that the Committee's

20  counsel relies upon, that statute does not indicate that the

21  bankruptcy court shall have jurisdiction, exclusive

22  jurisdiction of all property.  It specifically says literally

23  the district court in which a case under Title 11 is commenced

24  or is pending shall have exclusive jurisdiction.  Now while --

25         THE COURT:  Well, that's because bankruptcy courts

64

1   don't have subject matter jurisdiction.  It's all referred to

2   from the district court.  There is no independent bankruptcy

3   court jurisdiction, and it flows through the order of

4   reference.  We know that.

5          MR. SHAPIRO:  I understand you were going to make

6   that point, Your Honor, and I'm prepared to address it.

7          So our view is that the order of reference does not

8   permit the district court to refer the matter to Your Honor

9   because criminal cases are not within the jurisdiction of the

10  bankruptcy court.  And if Your Honor looks at, for example, 28

11  U.S.C. 1334(b) of that same statute, it talks about civil

12  actions.  Congress conferring exclusive jurisdiction on a court

13  or courts other than the district courts, the courts shall have

14  original but not exclusive jurisdiction of all civil

15  proceedings, not criminal.

16         And in (e), Congress, it answered the question there

17  about whether or not the district court has the authority to

18  refer criminal cases or criminal forfeiture matters to the

19  bankruptcy court.  But we believe that they don't have that

20  authority because there has to be a grant of jurisdiction

21  somewhere with respect to a criminal case.  And it's not in 28

22  U.S.C. 1334(b).

23         THE COURT:  I think I would agree with you.  But

24  isn't the present matter, the present adversary proceeding a

25  civil matter?

1          MR. SHAPIRO:  It's a civil matter, but the action --

2          THE COURT:  That's what's being sought to be stayed.

3    That's what's being sought to be withdrawn.

4          MR. SHAPIRO:  No, but the action in the Washington

5    district court which is what we are arguing that the Creditors'

6    Committee is trying to basically move, magically transform a

7    criminal forfeiture proceeding into a civil action in the

8    bankruptcy court.  This is not -- we're arguing this is not a

9    civil proceeding.

10         This is the Creditors' Committee trying to magically

11   turn a criminal forfeiture proceeding into an action accusing

12   the Government of violating the automatic stay when they've

13   admitted themselves that the automatic stay doesn't apply under

14   Section 362(b)(4).  So if it doesn't apply, how does this Court

15   then have the jurisdiction to determine that we violated?

16         THE COURT:  Aren't they saying go ahead with the --

17         MS. DWOSKIN:  Can I respond to --

18         THE COURT:  Aren't they saying go ahead with the

19   criminal prosecution, just leave the debtors' assets out of it

20   and the assets belonging to the 600,000 people?

21         MR. SHAPIRO:  If these assets were permitted to be

22   seized under the seizure warrants, Your Honor, they would sit

23   in the Washington district court until after the criminal

24   defendants were extradited, there would be a conviction or a

25   guilty plea, there would then be a criminal forfeiture

1 proceeding down the road, and everyone could fight it out down

2 the road in the Washington district court.  So -

3        MS. DWOSKIN:  Can I respond, Your Honor?  I'm sorry.

4        THE COURT:  Well, I'll let you respond because I'm

5 going to keep quiet for now and let Mr. Shapiro finish.

6        MR. SHAPIRO:  Okay.  I wasn't finished with my other

7 arguments, but go ahead.  Ms. Dwoskin, go ahead.

8        MS. DWOSKIN:  Your Honor, no, please Mr. Shapiro,

9 finish and I'll respond.

10        THE COURT:  Mr. Shapiro, finish your arguments.  I'm

11 going to stay out, and then we'll let Ms. Dwoskin continue.

12        MR. SHAPIRO:  Okay.  All right.  Thank you, Your

13 Honor.

14        So Your Honor made the point about there not being a

15 provision in Section 507 of the Bankruptcy Code giving crime

16 victims any kind of priority.  We would argue that that is a

17 reflection that these proceedings were supposed to be

18 determined in the district court in the criminal cases.  And as

19 far as tracing this concern, we have traced, Your Honor, all

20 the way up to the day the seizure warrants were issued.

21        Whether anything happened within the 12 days between that

22 day and the day of the petition date, we're looking at that, as

23 well.  We think we know the answer.  We don't have the answer

24 yet about what happened post-bankruptcy, but there's been some

25 discussion on the record in this Court about what happened

1 | generally with all the assets in BIA accounts.

2 |         But we think the issue of the tracing is a red

3 | herring, Your Honor.  We don't think Your Honor needs to even

4 | get into tracing because that's an issue for the federal

5 | district court in the criminal case.  And all Your Honor would

6 | have to do is dismiss this action and send it back there for

7 | the criminal court judge to decide because, effectively, what

8 | the Committee is asking Your Honor to do with all due respect

9 | is to determine the scope and the enforceability of those

10 | criminal seizure warrants in a bankruptcy court.

11 |         And that's, we argue, the bankruptcy court has no

12 | jurisdiction under 28 U.S.C. 1334(e)(1) or otherwise or 21

13 | U.S.C. 853(k).  This Court just doesn't have that jurisdiction,

14 | and we would therefore respectfully request that Your Honor

15 | ultimately dismiss this action and stay it until after Your

16 | Honor has had an opportunity to review and decide what this

17 | Court would do on the motion to dismiss if the reference is not

18 | withdrawn before September the 21st, at which time perhaps the

19 | district court would rule on the motion to dismiss.  So thank

20 | you.

21 |         THE COURT:  Thank you, Your Honor.

22 |         MR. SHAPIRO:  If Your Honor has any other questions,

23 | please let me know.

24 |         THE COURT:  No, I appreciate it.  Thank you,

25 | Mr. Shapiro.

1          Ms. Dwoskin.

2          MS. DWOSKIN:  Yes, Your Honor.

3          THE COURT:  Last responses.

4          MS. DWOSKIN:  Yes, Your Honor.

5          As to the cases that Mr. Shapiro mentioned, those are

6  all I believe possibly with the exception of the <u>Pena-Fernandez</u>

7  case, but I don't believe so, Your Honor, cases where the

8  defendants were the debtors.  So, of course, if the crime

9  happened before the bankruptcy case, the property doesn't enter

10  the estate.

11          The <u>Pena-Fernandez</u> case involved a counterparty to a

12  franchise agreement, I think it was a Subway franchise

13  agreement, that was held by the criminal defendants in that

14  case.  And the ruling of the court was that the United States

15  steps into the shoes of the defendant but not the whole

16  contract, right.  They don't get the part that belongs to the

17  non-criminal defendants.

18          And, Your Honor, with respect to whether we're using

19  this as a collateral attack on the criminal forfeiture

20  proceeding, we're not.  We don't have any problem with the

21  criminal forfeiture proceeding going ahead.  The question is,

22  and we don't have any problem with the seizure warrants.

23  Again, all we think the seizure warrants allow the Government

24  to take is the assets named in the seizure warrants themselves,

25  right, the funds from the subject accounts.

1          Now the question is what does that mean and who gets

2   to decide it, right.  And I want to just -- let's just play

3   through this thought experiment.  If it were in fact up to the

4   Washington district court to decide what all funds from the

5   subject accounts mean, in other words, what the criminal

6   defendants would be entitled to receive from BlockFi, that

7   would in essence, Your Honor, transpose this entire bankruptcy

8   proceeding to the district court.

9          And we don't think that that's what the criminal

10  statute allows for.  Rather, I think it's very clear on its

11  face that it requires individuals with competing interests in

12  the assets subject to forfeiture to resolve those proceedings

13  in the district court in the manner that Mr. Shapiro described.

14         So whether the -- there is a clear venue statute here

15  also, Your Honor, and debtors can file bankruptcy where the

16  venue statute permits them to.  And the idea is that that takes

17  into account where their creditors are.  But it's not the case

18  that the individual creditors of BlockFi have claims against

19  the criminal defendants.  Vice versa, right.

20         And so with respect to the crime victims, those crime

21  victims need to be compensated from the criminal defendants'

22  property.  The sooner we get this resolved, the sooner the

23  debtors can turn that property over to the Government, which we

24  are not standing in the way of.  They can turn that property

25  over to the Government, and the Government can distribute it as

1   what it is such as it is to the criminal defendants.

2          So there is really no challenge to the adversary

3   proceeding with respect to the scope of the seizure warrants.

4   We think they're clear on their face.  We think that only you

5   have jurisdiction to figure out what that claim is and what the

6   distribution that the criminal defendants through the United

7   States are going to receive on account of their claim.  And

8   that's all I have, Your Honor.

9          THE COURT:  All right.

10          MR. SHAPIRO:  Your Honor, may I just respond to that

11   one point?

12          THE COURT:  Yeah, absolutely.

13          MR. SHAPIRO:  Okay, thank you, Your Honor.

14          I think it would be important, the Court has probably

15   already done this but take a close look at the Pena-Fernandez

16   case.  In that case, the relation-back doctrine in Section 553

17   provided that all the rights, title, and interest in the

18   property subject to forfeiture vested in he United States upon

19   the commission of the act giving rise to the forfeiture, citing

20   21 U.S.C. 853(c) in that case.

21          And Section 853 permits the United States not just to

22   step into the criminal defendants' shoes but to acquire the

23   rights that he possessed at the time of the criminal acts.  And

24   so the criminal acts in this case occurred well before the

25   petition date.  And during that time period, the Government had

1  the right to all the money.

2         See, according to Ms. Dwoskin, we only have the right

3  to be unsecured creditor by subrogation.  We're not a creditor.

4  We're a regulatory police power governmental unit exercising

5  our right to seize an asset in a criminal case, and there is

6  not a single case -- Your Honor, I spent over a week

7  researching it myself -- where the United States Government has

8  been declared a creditor in a criminal case where we've been

9  trying to seize an asset.

10        Your Honor would be the first court to ever make that

11 kind of a determination.  And with all due respect, we think it

12 would be incorrect if the Court were to be allowed to do that.

13 And we certainly would be, if Your Honor made that sort of

14 decision, we certainly would be appealing that to the district

15 court if not beyond.

16        And I do understand Ms. Dwoskin's argument as to her

17 view about her not challenging the warrants, but the truth is

18 that if this Court is asked to determine whether or not a

19 portion of those account, what the Government is trying to

20 seize, is property of the estate, that's a direct interference

21 with the criminal action and forfeiture proceeding.

22        So they do conflict with each other in that respect.

23 And that's why Your Honor's job is very difficult in figuring

24 out which one of these two jurisdictional provisions governs in

25 the situation like this where you have the Criminal Code

1    clearly saying these matters should only be adjudicated in a

2    federal district court in a criminal case and then, of course,

3    under 28 U.S.C. 1334(e)(1) saying the matter should be also

4    decided in a district court but many bankruptcy lawyers believe

5    that's an automatic referral to the bankruptcy judge.

6              We would argue that's not the situation in criminal

7    cases because under 28 U.S.C. 1334(b) and otherwise, the

8    Court's jurisdiction doesn't extend to criminal actions and

9    forfeiture proceedings.  Congress vested the exclusive right to

10   determine the outcome in those criminal forfeiture proceedings

11   and the scope of criminal warrants in federal district courts,

12   not in bankruptcy courts.  Thank you, Your Honor.

13             THE COURT:  Let me just -- thank you, Mr. Shapiro.

14             But let me just address something you said.  So it's

15   the position of the Government that as of the commission of the

16   crime, the United States was entitled to all of the forfeited

17   assets, the monies that the criminal defendants had deposited

18   with BlockFi, which makes sense, and would be entitled to all

19   of their money back.

20             How does that differ from any other creditor up until

21   the date the petition was filed and the moment the petition was

22   filed or one could argue the -- well, the pause went into place

23   -- but as of the date of the petition, all creditors are

24   entitled to all their money that they had deposited and was

25   reflected.  But all that changed on the date of the filing.

1  How does the United States get a leg up over every other

2  creditor on the date of the filing?

3         MR. SHAPIRO:  The answer to that question is that the

4  Government has the benefit of the relation-back doctrine and

5  the right to seize an asset under criminal law, which creditors

6  do not have.  They don't have the right to argue that their

7  right vests back into the time that they were wronged.  They

8  only can argue what their claim was on the petition date.

9         THE COURT:  But you all had the same --

10        MR. SHAPIRO:  We can argue our claim -- we can argue

11 that our right to seize that asset and have the accounts turned

12 over to the Government goes back all the way to the time that

13 crime was committed.

14        THE COURT:  I'll give you that.

15        MR. SHAPIRO:  And we're ready, willing, and able to

16 face that in a district court in the criminal case.

17        THE COURT:  I'll give you that, that on the moment

18 prior to the petition, you're entitled to all of it as was

19 every other creditor.  My problem is once the petition is filed

20 and now when it's clear that there isn't enough money to pay

21 everyone, on what basis has your position changed that you now

22 are ahead in priority of the other creditors?

23        And I would understand if you could actually say that

24 a specific asset and identify it.  But what I'm hearing is that

25 nobody can identify the specific assets at this juncture.  They

74

1  were all BlockFi during the course of its business hypothecated

2  and rehypothecated and pledged these assets.  And certainly

3  prior to the filing, they were all liquidated into cash and

4  that you've already received the Wallet accounts where there

5  was an ability to segregate.

6          So how does the Government get that next step?

7          MR. SHAPIRO:  Maybe I didn't make myself clear, Your

8  Honor.  The point I was trying to make is that the Government

9  has the right to go back in time.  The relation-back doctrine

10  is essentially a time machine.  It lets us basically have a

11  right to seize an asset over creditors in a civil case because

12  the criminal law gives us a right that no one else has.  And so

13  it effectively would give the Government if we're forced to

14  have to plead it a kind of constructive trust over the assets

15  as they existed at the time the crime was committed.

16          But that concept doesn't necessarily -- constructive

17  trusts I understand are not that loved by bankruptcy courts.

18  But that's the theory, right, is that if the relation-back

19  doctrine applies in a case where the wrongdoer is not the

20  debtor, then the Government has the right to go back in time to

21  trace the asset from the time the crime was committed up until

22  -- and at that point in time, if we can trace it where it was,

23  then we have the right to get it.

24          There was also some confusion at the beginning of the

25  case, Your Honor, of course, like with BlockFi representing the

1  money was there but then there were some proceedings later on,

2  some clarifications that they indicated that it wasn't there.

3  What our concern is not what it was on the petition date.  Our

4  concern is under the criminal law what was it when the criminal

5  actions were committed.  What was it when the accounts were

6  opened, which was well before the petition date.

7       And so that's -- it's the tension between the

8  criminal law rights of the Government, and this is what makes

9  this case so interesting, and the bankruptcy law rights of the

10  unsecured creditors that Your Honor is going to have to wrestle

11  with and figure out which tension controls in this situation.

12  And I do not think that's ever been decided before.  Your Honor

13  would be the first to get to decide.

14       THE COURT:  Oh, lucky me.  I think you pegged it

15  right if there's tension and I appreciate it.  I think it's

16  well argued.  My question is what more is going to be argued on

17  the 21st to add to this?

18       MS. DWOSKIN:  Well --

19       THE COURT:  And you might want to supplement.

20  Obviously, the stay only addressed the merits, but it's only

21  one factor.  My inclination is to carry this to the 21st and to

22  have the rest of the argument.  I would make a decision on the

23  stay on the 21st.  I'm not sure how I'll rule on the motion to

24  dismiss.  Is there any concern with the Court approaching it in

25  that fashion?

1          MR. SHAPIRO:  I have no concern, Your Honor, as long

2     as there's not going to be some form of discovery, depositions,

3     various other issues going on between now and then.

4          THE COURT:  There's no money.

5          MR. SHAPIRO:  I would ask if --

6          THE COURT:  There's no money for that.

7          MR. SHAPIRO:  Right.  I would ask Your Honor --

8          THE COURT:  Ms. Dwoskin?

9          MR. SHAPIRO:  -- if Your Honor is willing for us to

10    somehow together let the district court know what stage we are

11    at in the adversary proceeding and respectfully ask the

12    district court whether or not it expects that a decision will

13    be coming out before September the 21st.

14         THE COURT:  Ms. Dwoskin, what's your feeling on that

15    request?

16         MS. DWOSKIN:  Thank you.

17         So with respect, so I don't have any issues with that

18    request, Your Honor.  We're trying to prevent a stay from being

19    granted.  So if a stay isn't granted before the adversary

20    proceeding, that's fine with us.

21         As far as what else is going to be argued, Your

22    Honor, we really haven't addressed the police power issue.  We

23    haven't.  We don't agree.  The United States is exercising its

24    police power by seizing the assets that belong to other

25    creditors.  We think the United States is certainly exercising

1    their police power to seize the defendants' claim but not to

2    get paid on that claim.

3            So that issue I think is up for argument at the

4    motion to dismiss hearing that hasn't been heard yet.  There

5    may be one or two others.

6            And, again, Your Honor, just with respect to Mr.

7    Shapiro's last point about the relation-back doctrine being a

8    time machine, that's true as against other creditors of the

9    criminal defendants, right.  But, again, BlockFi

10   (indiscernible) keep those assets.  If they do and the United

11   States is going to trace them, that's fine.  But we can't go

12   get them back from Alameda, right.  This is my sister's blue

13   Jeep that they're trying to take.

14           And they may have a time machine with respect to the

15   criminal defendants, but not with respect to BlockFi.  And so

16   that's the only point that I wanted to clarify, Your Honor.

17   But, no, we don't have an issue with this Court staying or

18   continuing the motion to stay to the motion to dismiss.

19           THE COURT:  All right, then.  I have no issue with

20   you both jointly reaching out to Judge Kirsch and at least just

21   advising as to the status.  No argument, please, in the

22   correspondence.

23           MR. SHAPIRO:  Sure.  Sure.

24           THE COURT:  Just simply the process where we're at.

25   He's always free to reach out for me if he has a question.  I

1  appreciate.  I think it was very well argued.  I do appreciate

2  both of your passions on this topic.  And I'm going to carry

3  the matter to the 21st, and I'll decide it at that point.

4          MR. SHAPIRO:  Okay.  Thank you, Your Honor.  Did Your

5  Honor want additional briefing?  I thought Ms. Dwoskin had just

6  asked for that on the police-power issue.  And then, of course,

7  if Your Honor were inclined to do that, we would probably want

8  to do it on the core versus non-core issue.  But if no

9  additional briefing is necessary, then that's fine.

10          THE COURT:  I don't need additional briefing.  My law

11  clerk --

12          MS. DWOSKIN:  No --

13          THE COURT:  My law clerks don't want additional

14  briefing.

15          MR. SHAPIRO:  Okay.

16          THE COURT:  And obviously, if there are issues to the

17  motion to dismiss that you want to brief, you're free to do

18  that.  That's -- we still have several weeks.

19          MR. SHAPIRO:  Okay, thank you, Your Honor.

20          MS. DWOSKIN:  My suggestion was only that the --

21          MR. SHAPIRO:  Thank you so much.

22          MS. DWOSKIN:  My suggestion was just in response to

23  Your Honor's question about what else is going to be heard

24  then.

25          THE COURT:  Right.

1              MS. DWOSKIN:  We don't think the police-power issue

2   was at play at all in the motion for a stay, so -- but we don't

3   think any additional briefing on either motion is required.

4              THE COURT:  Great.

5              MR. SHAPIRO:  That's fine, Your Honor.  Thank you so

6   much.

7              THE COURT:  All right.  Thank you.  Thank you both.

8   I think we are done for the day.  Thank you for your time.

9              MR. SHAPIRO:  Thank you.

10             MS. DWOSKIN:  Thank you, Your Honor.

11             THE COURT:  You're welcome.

12                 (Proceedings adjourned at 12:10 p.m.)

13                          *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T I O N**

   I, DIPTI PATEL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Dipti Patel

DIPTI PATEL, CET-997

J&J COURT TRANSCRIBERS, INC.      DATE:  August 31, 2023