**EXHIBIT "A"**

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)
COLE SCHOTZ P.C.
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

HAYNES AND BOONE, LLP
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and Debtors In Possession*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>Hearing Date and Time:<br>August 17, 2023 at 11:00 a.m. (ET) |

**ORDER GRANTING DEBTORS' FOURTH OMNIBUS OBJECTION TO
CERTAIN CLAIMS (duplicates, books and records, debtor not liable) AND
DENYING GERRO'S CROSS-MOTION TO ESTIMATE**

The relief set forth on the following pages, numbered two (2) through five (5) and Schedule
1 is ORDERED.

8/30/23

*MICHAEL B KAPLAN   USBJ*

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC
(3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422);
BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100
Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

(Page 2)
Debtors:          BLOCKFI INC., *et al.*
Case No.         22-19361 (MBK)
Caption of Order:   ORDER GRANTING DEBTORS' FOURTH OMNIBUS OBJECTION
                   TO CERTAIN CLAIMS (duplicates, books and records, debtor not liable)
                   AND DENYING GERRO'S CROSS-MOTION TO ESTIMATE

Upon consideration of the *Debtors' Fourth Omnibus Objection to Certain Claims* (the "Objection")[1] and the *Response of George J. Gerro to Debtors' Fourth Omnibus Objection to Certain Claim and Cross-Motion for an Order Temporarily Allowing Claim No. 12386 Pursuant to F.R.B.P. Rule 3018(a) for the Sole Purpose of Voting on a Chapter 11 Plan* (the "Cross-Motion"); and the Court having jurisdiction to consider the Objection and Cross-Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Objection and the Cross-Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been provided; and it appearing that no other or further notice need be provided; and it appearing that no other or further notice of the Objection need be provided; and all responses, if any, to the Objection having been withdrawn, resolved, or overruled; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Debtors, their respective estates and creditors, and all parties-in-interest; and the Court having determined that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and upon the Certification of Mark A. Renzi attached to the Objection; and the Court having held a hearing to consider the relief requested in the Objection; and upon the record of the Hearing; the record herein, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore,

*for the reasons set forth in the opinion docketed at DKt # 1420*

(MBK)

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

(Page 3)
Debtors:                BLOCKFI INC., *et al.*
Case No.                22-19361 (MBK)
Caption of Order:       ORDER GRANTING DEBTORS' FOURTH OMNIBUS OBJECTION
                        TO CERTAIN CLAIMS (duplicates, books and records, debtor not liable)
                        AND DENYING GERRO'S CROSS-MOTION TO ESTIMATE

**IT IS HEREBY ORDERED THAT:**

1.    The Objection is SUSTAINED as set forth herein.

2.    The Cross-Motion is DENIED as moot.

3.    The Disputed Claims listed on **Schedule 1** attached hereto are hereby deemed disallowed in full.

4.    Kroll Restructuring Administration LLC (the "Claims and Noticing Agent") is hereby authorized and directed to expunge each Disputed Claim from the claims register maintained for the Debtors' Chapter 11 Cases.

5.    The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

6.    The terms, conditions, and provisions of this Order shall be immediately effective and enforceable upon its entry.

7.    Notwithstanding anything to the contrary in the Objection, this Order, or any findings announced at the hearing, nothing in the Objection, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

8.    Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any

(Page 4)
Debtors:              BLOCKFI INC., *et al.*
Case No.              22-19361 (MBK)
Caption of Order:     ORDER GRANTING DEBTORS' FOURTH OMNIBUS OBJECTION
                      TO CERTAIN CLAIMS (duplicates, books and records, debtor not liable)
                      AND DENYING GERRO'S CROSS-MOTION TO ESTIMATE

particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Objection are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any transfer made pursuant to the Court's Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

9.      The objection to each Disputed Claim addressed in the Objection and as set forth on **Schedule 1** attached hereto constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014. This Order shall be deemed a separate order with respect to each claim that is the subject of the Objection and this Order. Any stay of this Order pending appeal by any claimants whose claims are subject to this Order shall only apply to the contested matter that involves such claimant and shall not stay the applicability and/or finality of this Order with respect to any other contested matters addressed in the Objection and this Order.

10.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Objection or is otherwise waived.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related

(Page 5)
Debtors:                BLOCKFI INC., *et al.*
Case No.                22-19361 (MBK)
Caption of Order:    ORDER GRANTING DEBTORS' FOURTH OMNIBUS OBJECTION
                     TO CERTAIN CLAIMS (duplicates, books and records, debtor not liable)
                     AND DENYING GERRO'S CROSS-MOTION TO ESTIMATE

to the implementation, interpretation, or enforcement of this Order.

<u>Schedule 1</u>

**Disputed Claims**

Debtor: BlockFi Inc et al.
Fourth Omnibus Objection

**Legend: Basis for Objection**

| | | | |
|---|---|---|---|
| BR-HI | Claimant is not identifiable as a customer or counterparty of BlockFi | TOU | Claim includes amounts in violation of Terms of Use, including fraud or disabled account |
| BR-A | Inconsistent with Books and Records - Incorrect Crypto Amount, Correct Dollar Amount | IC | Claims are classified incorrectly or improperly |
| BR-B | Inconsistent with Books and Records - Incorrect Dollar Amount, Correct Crypto Amount | ID | Claims fail to specify the basis for claim or provide sufficient documentation |
| BR-C | Inconsistent with Books and Records - Incorrect Dollar and Crypto Amount | NL | Settled recovery for amounts for which the Debtors are not liable |
| UL | Claims fail to specify the asserted claim amount or list Unliquidated | NDF | Non-debtor has satisfied the claim in full |
| AMD | Claim amended by subsequently filed proof of claim | L | Late filed claim after bar date |
| DUP | Duplicative claim | O | Other; see Notes for more information |

| Proof of Claim No. | Claimant Name | Date Filed | Filed Debtor Entity | Asserted Claim Amount | Basis for Objection | Surviving Claim No. | Surviving Debtor Entity | Surviving Claim Amount | Surviving Wallet Crypto | Surviving Claim Amount | Notes | Action [2] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15248 | George Gerro | 3/29/2023 | BlockFi Lending LLC | $5,803,885.80 | BR-C, NL | N/A | N/A | N/A | | | | Expunge |
| 12386 | George Gerro | 3/24/2023 | BlockFi Lending LLC | 428 BTC | DUP, BR-C, NL | N/A | N/A | N/A | | | Claim lists both 428 BTC and a dollar value of that same BTC | Expunge |

[1] Claims that did not assert Wallet as part of their proof of claim may still have Wallet balances but may be listed as "N/A" to this particular claim.

[2] Claims that the Debtors are seeking to modify are subject to future objection.

**EXHIBIT "B"**

5

NOT FOR PUBLICATION

<table>
<tr><td>

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR
9004-2(c)**

In Re:

      BlockFi, Inc.

                  Debtors

</td></tr>
</table>

Case No. 22-19361 (MBK)

Hearing Date: August 17, 2023

Chapter 11

Judge: Michael B. Kaplan

**Carol L. Knowlton, Esq.**
Gorski & Knowlton, PC
311 Whitehorse Ave, Suite A
Hamilton, NJ 08610
*Creditor*

**Richard S. Kanowitz, Esq.**
**Kenric D. Kattner, Esq.**
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
*Counsel for Debtors and Debtors in Possession*

**Michael D. Sirota, Esq.**
**Warran A. Usatine, Esq.**
Cole Schotz, P.C.
Court Plaza North
25 Main St.
Hackensack, NJ 07601
*Counsel for Debtors and Debtors in Possession*

**Joshua A. Sussberg, P.C.**
**Christine A. Okike, P.C.**
601 Lexington Ave.
New York, New York 10022
*Counsel for Debtors and Debtors in Possession*

## MEMORANDUM DECISION

This matter comes before the Court upon George J. Gerro's Response to BlockFi, Inc.'s

Fourth Omnibus Objection to Certain Claims (ECF No. 1192) and Cross-Motion for an Order

Temporarily Allowing Claim No. 12386 (ECF No. 1192-4). In his motion, movant ("Gerro") asks

the Court to overrule BlockFi's objection and allow Proof of Claim No. 12386 in the amount of

426 bitcoin. BlockFi filed a reply to Gerro's objection and opposes Gerro's motion (ECF No.

1342). For reasons discussed, the Court disallows Gerro's claim and, as a result, denies Gerro's

Cross-Motion as moot.

## I.    Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## II.    Background and Procedural History

The Court limits its recitation of the factual and procedural history of this case to information pertinent to the matter presently being decided. BlockFi and Gerro entered into a prepetition lending relationship through which BlockFi Lending LLC issued a series of loans (the "Loans") to Gerro, secured by collateral in the form of bitcoin ("BTC"). The Loan Agreement granted BlockFi a security interest in, among other things, the BTC and proceeds thereof (the "Collateral"). Significantly, the Loan Agreement also contained a specific loan-to-value ("LTV") Ratio requirement that authorized BlockFi to liquidate Collateral with 3 days' notice if the LTV Ratio rose above 70%, and immediately if it rose above 80%.

In March of 2020, BlockFi notified Gerro that—because the price of BTC had dropped— he was required to post additional BTC Collateral to avoid liquidation. Gerro did not respond to BlockFi's margin call, and on March 12, 2020, BlockFi liquidated approximately 399 BTC to bring the loan into compliance with the required LTV Ratio. The parties communicated regarding the liquidation, *see Ex. B to BlockFi's Reply*, ECF No. 1341, and Gerro ultimately requested a further liquidation to pay off his remaining Loan balance and asked that whatever Collateral remained after the payoff be transferred to his external wallet with immediate confirmation after the trade. Upon Gerro's request, BlockFi then provided Gerro with several options to achieve

reinstatement of some or all of the Loans. Gerro responded on March 24, 2020 by indicating he was "in the due diligence phase with a traditional source of capital," *id.* at 47, and inquired about the formula BlockFi was using to determine the amount Gerro would need to pay in order to reinstate his loan. That same day, BlockFi responded with the formula and gave an example that assumed 426 BTC collateral at 60% LTV Ratio. BlockFi further cautioned that the example was subject to fluctuation, given the volatility of BTC and the need to satisfy the LTV Ratio requirement.

On April 27, 2020—more than 30 days after BlockFi provided the reinstatement information—Gerro responded to BlockFi via email, indicating that he "accept[ed] BlockFi's offer to reverse [his] collateral sales[,]" and he provided his own calculations for the terms of the reinstated loan. *Id.* BlockFi promptly responded, explaining that—due to the increase in the value of BTC in the month that had transpired since BlockFi's initial email—BlockFi could not offer to reinstate the loan on those terms. Additional communications on that day clarified that—upon Gerro's default on the Loans over 45 days prior—BlockFi had liquidated BTC at a rate of about $5,000 per coin. At the time of the April 27, 2020 communications, BTC was valued much higher, meaning that BlockFi would incur substantial losses if it were to buy the liquidated Collateral back. In other words, BlockFi could not reverse the prior liquidation of the Collateral.

Gerro filed a series of lawsuits against BlockFi in state court (the "State Court Litigation"), which were stayed upon the filing of BlockFi's chapter 11 bankruptcy filing. He then filed Claim Nos. 12386 and 15248 in the bankruptcy case, asserting duplicative claims for the return of the initial 426 BTC he had pledged as Collateral pursuant to the parties' Loan Agreement. When BlockFi objected to Gerro's claims, Gerro filed the response and Cross-Motion that are the subject of the instant Opinion.

### III.    Discussion

Gerro raises multiple arguments in support of his position under the California Financial Code, the California Commercial Code, California pawnbroker laws, and the Uniform Commercial Code. The Court will address each in turn.

#### A.  California Financial Code

##### 1.  CFC § 22009

Gerro examines the statutory construction and legislative history of § 22009 of the California Financial Code and asserts that BlockFi violated same by using, possessing and liquidating his BTC Collateral. The Court disagrees.[1]

Gerro first asserts that "BlockFi's Finance Lender's License (60DBO-81955) permits BlockFi to 'engage in the business of "finance lender" . . . as defined in [California's Financing Law].' " *Gerro Response* 4, ECF No. 1192 (internal citations omitted). Under the California Financial Code, a "finance lender" is defined as

> any person who is engaged in the business of making consumer loans or making commercial loans. The business of making consumer loans or commercial loans may include lending money and taking, in the name of the lender, or in any other name, in whole or in part, as security for a loan, any contract or obligation involving the forfeiture of rights in or to personal property, **the use and possession of which property is retained by other than the mortgagee or lender,** or any lien on, assignment of, or power of attorney relative to wages, salary, earnings, income, or commission.

Cal. Fin. Code § 22009 (emphasis added).

Gerro points to both the language of California's Financing Law ("CFL") and certain deficiencies in BlockFi's CFL License Application identified by the Department of Business Oversight (the "Department") in an April 18, 2018 letter. *See Attachment 9 to Gerro Response 37,*

---

[1] For purposes of resolving this motion, the Court will assume—without finding—that California law applies.

ECF No. 1192-3.  Specifically, the Department stated at that time that BlockFi "cannot hold the

borrower's digital assets as collateral" and that "[b]ased on the business plan and explanation

provided, the Applicant is conducting or will be conducting activities not authorized under the

CFL." *Id.* at 38.  However, Gerro's argument ignores that BlockFi continued communications and

negotiations with the Department, which ultimately issued the license to BlockFi.  Moreover,

BlockFi obtained a declaration from Jan Lynn Owen, the Commissioner of the Department during

the time BlockFi's license was issued, confirming that:

> The business practice of holding and using collateral—including the
> rehypothecation of that collateral—is common both in California and throughout
> the United States in connection with secured lendings. As Commissioner, I was
> required to become intimately familiar with . . . the CFL (including section 22009)
> as well as the Uniform/California Commercial Code, and the argument that the
> holding or use of collateral by a finance lender is somehow inconsistent with either
> of these laws is incorrect. Indeed, a rule to the contrary-that finance lenders were
> somehow not permitted to hold or use collateral securing loans-would not only be
> contrary to established California law, it would significantly and detrimentally
> hamper lending activities…throughout the State. Accordingly, during my tenure as
> Commissioner, the [Department] granted finance lender licenses to businesses
> planning to hold and/or use collateral securing loans, including but not limited to
> licenses which I approved as . . . Commissioner.

*Ex. D to BlockFi Reply (Owen Decl.)* ¶6, 70, ECF No. 1341.

Ms. Owen went on to state that:

> BlockFi's stated business operations—holding and/or using collateral in the form
> of cryptocurrency for secured loans, falls squarely under the umbrella of business
> activities performed by a finance lender licensed by the [Department]. . . . A finance
> lender license is the appropriate license in California for such operations, and the
> holding and use of these various types of collateral is not only consistent with
> California finance lender laws, but is also the standard commercial lending practice
> for finance lending on easily transferrable collateral.

*Id.* at 73.

Further, BlockFi attaches to its Reply the Declaration of Charles E. Washburn, an attorney retained by BlockFi to assist in responding to the Department's initial response to BlockFi's finance lender and broker license application. *Ex. C to BlockFi Reply (Washburn Decl.)* 52, ECF No. 1341. In this document—which was prepared and submitted in connection with the State Court Litigation—Mr. Washburn certifies:

> The [Department] legal staff never reached a negative opinion with respect to the ability of a licensee to hold collateral, 'preliminary' or otherwise, with respect to my request. Instead, [Department] legal staff agreed that a licensee may hold collateral, a determination that was evidenced by the issuance of licenses to BlockFi when BlockFi had disclosed it would hold collateral.

*Id.* at 55.

Given the Department's own interpretation of the CFL, and given the fact that the Department granted BlockFi a license premised upon an application wherein BlockFi explicitly had held itself out to be a business that intended to hold cryptocurrency as security for loans, this Court cannot conclude—as Gerro urges—that BlockFi willfully violated the California Financial Code. Rather, this Court, consistent with the tentative ruling in the State Court Litigation, will defer to the Department's application and interpretation of the applicable laws and regulations.

### 2.    Pawnbroker

Gerro also contends that BlockFi operated as "an unlicensed pawnbroker" and, as such, was not permitted to refuse Gerro's request for return of his BTC collateral. *See Gerro Response* 4-5, ECF No. 1192; *see also Gerro Memo in Support of Cross-Motion* 9-16, ECF No. 1192-4. In support of this argument, Gerro cites to California Financial Code § 21000, which states that "[e]very person engaged in the business of receiving goods, including motor vehicles, in pledge as security for a loan is a pawnbroker within the meaning of this division." Gerro then asserts that

"Bitcoin constitutes a 'good' within the meaning of the California pawnbroker law[.]" *Gerro Response* 24, ECF No. 1192.

To evaluate this argument, this Court looks to the definitions provided by the California Commercial Code. *See* CAL. COM. CODE § 9102(a). Pursuant to that code, the term "goods" means "all things that are movable when a security interest attaches" and "does **not** include . . . general intangibles." CAL. COM. CODE § 9102(a)(44) (emphasis added). Moreover, the term "general intangibles" is defined as "any personal property, including things in action, **other than** accounts, chattel paper, commercial tort claims, deposit accounts, documents, **goods**, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. **The term includes payment intangibles and software.** CAL. COM. CODE § 9102(a)(42). The Court finds that BTC fits more neatly into the "general intangible" category under the California Commercial Code. BTC is not something that can be held or moved as contemplated by the definition of "goods." Rather, it is "a form of digital currency based on mathematical algorithms that is not controlled by any country, bank, or individual." *United States v. Costanzo*, 956 F.3d 1088, 1089 (9th Cir. 2020); *see also Symphony FS Ltd. v. Thompson*, No. 18-3904, 2018 WL 6715894, at *1 n.1 (E.D. Pa. Dec. 20, 2018) ("Bitcoin is the most prominent example of cryptocurrency, an electronic form of currency with no tangible format."). Because this Court determines that BTC is not a "good," BlockFi is not a pawnbroker, and Gerro's argument fails.

Gerro asserts that—even "[i]f bitcoin were categorized as general intangible under the Commercial Code[—]that conclusion would still would not resolve the issue of whether bitcoin constitutes a 'good' within the meaning of the pawnbroker law." *Gerro Memo in Support of Cross-Motion* 16, ECF No. 1192-4. This argument is not convincing. In interpreting California law—

specifically, an interpretation that turns on the definition of a particular term—this Court finds it appropriate to look to California law that provides the definition.  Gerro offers no persuasive argument to the contrary.

The Court finds additional support for rejection of Gerro's argument in the record and in California's business laws.  First, the Court looks to the professional opinion of Ms. Owen, the Commissioner of the Department during the time BlockFi obtained its license.  In her declaration—submitted under oath in a legal proceeding—she clarifies that a "finance lender license is the appropriate license in California" for BlockFi's operations and adds that "[a] pawnbroker license is neither appropriate nor required." *Owen Decl.* ¶7, ECF No. 1341 at 73.

Next, the Court looks to the California Business and Professions Code, which defines a "secondhand dealer" as "any person, copartnership, firm, or corporation whose business includes buying, selling, trading, taking in pawn, accepting for sale on consignment, accepting for auctioning, or auctioning secondhand **tangible personal property**." CAL. BUS. & PROF. CODE § 21626(a) (emphasis added).  In a publication addressing frequently asked questions regarding secondhand dealer and pawnbroker licenses, the California Department of Justice's Secondhand Dealer & Pawnbroker Unit explains that "[a] pawnbroker is also a secondhand dealer but a secondhand dealer is not a pawnbroker." JUSTICE DATA AND INVESTIGATIVE SERVICES BUREAU, SECONDHAND DEALER/PAWNBROKER LICENSING UNIT – FREQUENTLY ASKED QUESTIONS (FAQ'S) 5, https://oag.ca.gov/sites/all/files/agweb/pdfs/secondhand/faqs-shdpb.pdf?.  Thus, under the Business and Professions Code, a pawnbroker—as a secondhand dealer—must deal with "tangible personal property," which is described under the Code, in part, as "[a]ll tangible personal property, new or used, including motor vehicles, received in pledge as security for a loan by a pawnbroker." CAL. BUS. & PROF. CODE § 21627(b)(1).  For reasons already discussed, this Court concludes that

Page 8 of 13

BTC does not fit the definition of "tangible personal property." *See Costanzo*, 956 F.3d at 1089 (describing bitcoin as "a form of digital currency based on mathematical algorithms"); *Symphony FS Ltd. v. Thompson*, 2018 WL 6715894, at *1 n.1 (stating that bitcoin is "an electronic form of currency with no tangible format"). Because BlockFi is not dealing in "tangible personal property," it cannot be deemed a secondhand dealer and, as a result, cannot be a pawnbroker.

Finally, the Court looks to the California Financial Code. Under this Code, "[e]very person engaged in the business of receiving goods, including motor vehicles, **in pledge as security for a loan is a pawnbroker** within the meaning of this division." CAL. FIN. CODE § 21000 (emphasis added). "Pledged property," in turn, is "property held as security for a loan, **the title to which remains with the pledgor and has not passed to the pawnbroker[.]**" Cal. Fin. Code § 21002(a) (emphasis added). In the present case, all indicia of ownership indicates that BlockFi regularly engaged in the practice of taking title to collateral. Indeed, this Court addressed the issue of title in the context of a different motion. As discussed in pleadings and on the record, it is undisputed that in nearly every BlockFi agreement, BlockFi retained the right to "pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer or use any amount of such Collateral,". *Hrg. Tr. May 8, 2023 — Slade* 9:23-10:4, ECF No. 853; *Stipulated Facts* ¶44, ECF No. 842 ("The digital assets in the Rehypothecateable Wallets are free to be pledged, repledged, hypothecated, rehypothecated, sold, lent, or otherwise transferred, invested, or used."). Moreover, the parties agree that title to collateral passed to BlockFi. *See, e.g., Hrg. Tr. May 8, 2023 — Slade* 9:17-18, ECF No. 853 ("[Y]ou are giving title and control over the tokens to BlockFi for use in BlockFi's revenue-generating activities."); *Ad Hoc Response* ¶ 7, ECF No. 834 ("Balances shown in BIA reflect assets to which the customer has granted title to BlockFi.").

Further, the Loan Agreement between Gerro and BlockFi states that, in the event of
Borrower's default, "Lender may take immediate and exclusive possession of the Collateral[.]"
*Ex. A to BlockFi Reply (Loan Agreement)* 24, ECF No. 1341.  And the declaration submitted by
Ms. Owen indicates that the Department routinely issued finance lender licenses to companies,
like BlockFi, who intended to engage in the "practice of holding and using collateral—including
the rehypothecation of that collateral[.]" *Owen Decl.* ¶6, ECF No. 1341 at 70.  The record, thus,
demonstrates that BlockFi expressed its intention to take title to the Collateral, that all parties—
including Gerro and the Department—understood and acknowledged this intention, and that
BlockFi regularly took title to collateral.  Because, in practice, title to collateral did **not** remain
with the pledgor, the collateral cannot be considered "pledged property" under CAL. FIN. CODE §
21002(a), and BlockFi does not resemble a pawnbroker under CAL. FIN. CODE § 21000.

### B.  Breach of Contract

Gerro also contends that BlockFi breached its contract with him.  Specifically, he refers to
the email communications between the parties from March 16 to March 24, 2020 allegedly
containing BlockFi's offer, and his April 27, 2020 email constituting his "unconditional[]
accept[ance]." *Gerro Response* 22, ECF No. 1192.  Again, the Court is not persuaded.

As an initial matter, the Court questions whether BlockFi's emails contained terms specific
enough to create a valid offer which could be accepted so as to form a binding contract.  *See, e.g.,*
*Apablasa v. Merritt & Co.,* 176 Cal. App. 2d 719, 723, 1 Cal. Rptr. 500, 503 (Ct. App. 1959) ("It
is well settled that if the offer is so indefinite as to make it impossible for a court to decide just
what it means, and to fix exactly the legal liability of the parties, its acceptance cannot result in an
enforceable agreement.").  Here, BlockFi's email explained that the offer was dependent on the
price of BTC.  *See Ex. B to BlockFi Reply (March 24, 2020 email)* 47, ECF No. 1341 (explaining

the formula as "Reinstated Principal Balance minus Loan Available at 60% (based on reinstated collateral + **price of BTC**") (emphasis added). Moreover, the email gave only an **example** of loan terms—not specific loan terms. That example further clarified that it provided the "Loan Available at 60%" term was **"subject to fluctuate slightly based on BTC"** and it assumed "426 BTC collateral at 60% LTV." *Id.* Given that the price of BTC—an essential element of the agreement—was not established, it is unclear whether the March 24 email from BlockFi was definite enough to constitute an offer.

Nevertheless, even assuming—without finding—that BlockFi's March emails constitute a formal "offer," Gerro's responsive email—sent more than one month later—cannot be interpreted as "unconditional acceptance" of that offer. Instead, he supplied a counteroffer. As explained, the record clearly demonstrates that BlockFi's offer was dependent on the value of BTC. Gerro's responsive email inserted a value for BTC ("$7700 per BTC"), a term that was not included in BlockFi's initial email and a price that is not supported by the figures used in BlockFi's formula. Additionally, BlockFi's email referenced a "new principal balance to $1,505,746.11 backed by 426 BTC" whereas Gerro's responsive email suggested a "New principal balance of $1,968,120 backed by 426 BTC collateral." *Id.* "A qualified acceptance is a new proposal." CAL. CIV. CODE § 1585; *see also Roth Grading, Inc. v. Martin Bros. Constr.*, 493 F. Supp. 3d 865, 869 (E.D. Cal. 2020) ("California, as have many other jurisdictions, recognizes the common-law 'mirror image' rule[.]"); *Sung v. Hamilton*, 676 F. Supp. 2d 990, 1002 (D. Haw. 2009) (explaining that "a purported acceptance of an offer which attempts to modify one or more terms of the offer acts as a rejection of the offer and results in a counteroffer.").

In any event, the Court finds that there was no meeting of the minds sufficient to form an enforceable contract. "California law is clear that there is no contract until there has been a meeting

of the minds on all material points." *Banner Ent., Inc. v. Superior Ct. (Alchemy Filmworks, Inc.)*,

62 Cal. App. 4th 348, 358, 72 Cal. Rptr. 2d 598 (1998), as modified (Mar. 30, 1998); *see also*

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215, 45 Cal. Rptr. 3d 692, 704 (2006). "[T]he

failure to reach a meeting of the minds on all material points prevents the formation of a contract

even though the parties have orally agreed upon some of the terms, or have taken some action

related to the contract." *Banner Ent., Inc. v. Superior Ct.*, 62 Cal. App. 4th at 359; *see also*

*Hauswirth v. Shih*, No. D080294, 2023 WL 1790070, at *3 (Cal. Ct. App. Feb. 7, 2023), as

modified on denial of reh'g (Feb. 24, 2023), review denied (May 3, 2023); *Sterling v. Taylor*, 40

Cal. 4th 757, 766, 152 P.3d 420, 425 (2007) (citing RESTATEMENT (SECOND) OF CONTRACTS § 131

(1981) and discussing the statute of frauds and explaining that the essential contract terms must be

stated with reasonable certainty); *Grove v. Grove Valve & Reg. Co.*, 4 Cal. App. 3d 299, 311–12,

84 Cal. Rptr. 300 (1970).

Here, the record demonstrates that material terms remained uncertain; namely, the value of

BTC to be used in the formula calculating the amount required to reinstate Gerro's loan. Gerro

concedes in his pleadings that he "expressly proposed reinstating at $7,500 per bitcoin and BlockFi

did not indicate any contrary intentions." *Gerro Response* 22, ECF No. 1192. Indeed, in a March

19, 2020 email to BlockFi, Gerro proposed that value for BTC. *See Ex. 1 to Gerro Response

(Gerro's March 19, 2020 email)* 92, ECF No. 1192-3. However, BlockFi responded several days

later with its own formula and calculations, which—under California contract law previously

cited—cannot be construed as acceptance of Gerro's proposed BTC price. Moreover, Gerro's

April 27, 2020 email suggests a price of $7,700 per BTC, a value different than what he proposed

more than a month prior. *See Ex. B to BlockFi Reply (March 24, 2020 email)* 47, ECF No. 1341.

Given an email exchange that included shifting figures, varied formulas based on assumptions,

and the fluctuations in the value of BTC over a more-than-a-month period, the Court simply cannot conclude that there was any meeting of the minds between the parties as to the precise terms of an agreement to reinstate Gerro's loan. As such, there was no contract and, thus, no breach by BlockFi.

### C. BlockFi is not an Unlicensed Commercial Bank

Gerro also argues that BlockFi engages in the commercial banking business without a banking license. He does not provide any analysis or evidence of this assertion beyond reference to a New York Times article. *Gerro Memo in Support of Cross-Motion* 17, ECF No. 1192-4. The Court need not address this argument in detail as it lacks merit. The Court finds that it fails for many of the same reasons as Gerro's pawnbroker argument.

### IV.    Conclusion

For the aforementioned reasons, the Court disallows Mr. Gerro's claims and denies the Cross-Motion as moot. Counsel for Debtor is directed to submit a form of order consistent with this opinion.

*Michael B. Kaplan*

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: August 29, 2023

**U.S. DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**OFFICE OF THE CLERK**
*Martin Luther King Building and U.S. Courthouse*
*50 Walnut Street, Room 4015*
*Newark, New Jersey 07101*

CAMDEN OFFICE
Mitchell H. Cohen Building and
U.S. Courthouse
One John F. Gerry Plaza
Fourth & Cooper Streets, Room 1050
Camden, New Jersey 08101

TRENTON OFFICE
Clarkson S. Fisher Building and
U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

**REPLY TO: TRENTON**

September 6, 2023

U.S. Bankruptcy Court

Attn: Nancy Figueroa, Deputy-in-Charge

402 East State Street, 1st Floor

Trenton, NJ 08608

Re:     U.S. Bankruptcy Court Remittance

Dear Nancy,

        Enclosed please find Money Order #28962744164 in the amount of $298.00 made payable to US Bankruptcy Court (from George Gerro). Should you have any questions concerning this matter, please contact me at (609) 989-0468.

                        Sincerely yours,

                        MELIISA E. RHOADS, CLERK

                        By: Ashley Katsikis, Financial Assistant

Enclosure(s)

**UNITED STATES**
**BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
TRENTON DIVISION

# 625795    — PF
* * C O P Y * *
September 07, 2023
10:21:04

DOC ON APP+NOTIC
22-19361-MBK 11

Debtor.: BLOCKFI INC.
Amount.:                        $298.00 CH
Check#.: 28962744164


Total—>    $298.00


FROM: GEORGE GERRO
530 S. GLENOAKS BLVD.,  # 200
BURBANK, CA  91502

