**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Michael Papandrea, Esq.
Erica G. Mannix, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Bankruptcy Counsel to the Proposed Securities*
*Class Action Lead Plaintiff Cameron Wyatt*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BlockFi Inc., *et al.*,[1] | Case No. 22-19361 (MBK) |
| Debtors. | Jointly Administered |
| | **Hearing Date: September 26, 2023 at 1:00 p.m. (ET)**<br>**Obj. Deadline: September 11, 2023 at 4:00 p.m. (ET)** |

**OBJECTION OF CAMERON WYATT, PROPOSED SECURITIES CLASS ACTION
LEAD PLAINTIFF, TO (I) CONFIRMATION OF THE DEBTORS' PROPOSED
CHAPTER 11 PLAN AND (II) FINAL APPROVAL OF THE DISCLOSURE
STATEMENT IN CONNECTION THEREWITH**

Cameron Wyatt (the "Proposed Lead Plaintiff"), in his capacity as proposed lead plaintiff

in the securities class action proceedings pending in the United States District Court for the District

of Massachusetts under the caption, *Antonie Elas, individually and on behalf of all others similarly*

*situated v. Zac Prince, Flori Marquez, Amit Cheela, David Olsson, and Samia Bayou*, Case No.

23-10472 (the "Massachusetts Securities Litigation"), and in the United States District Court for

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

the District of New Jersey under the caption, *Trey Greene, individually and on behalf of all others similarly situated v. Zac Prince, Flori Marquez, Tony Laura, Jennifer Hill, and Gemini Trading, LLC*, Case No. 23-01165 (the "New Jersey Securities Litigation," and collectively with the Massachusetts Securities Litigation, the "Securities Class Action Proceedings"), by and through his undersigned counsel, hereby submits this objection (the "Objection") to (i) confirmation of the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1309] (as may be amended, the "Plan")[2] proposed by the debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and (ii) final approval of the *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1310] (the "Disclosure Statement").  In support of this Objection, the Proposed Lead Plaintiff respectfully states as follows:

## **PRELIMINARY STATEMENT**[3]

1.      The Proposed Lead Plaintiff objects to confirmation of the Plan (and, to the extent applicable, final approval of the Disclosure Statement) to the extent that the Third-Party Release contained therein will potentially eviscerate the securities fraud claims asserted against the non-Debtor D&O Defendants on behalf of the putative Class in the Securities Class Action Proceedings.

2.      This sweeping and virtually unlimited Third-Party Release preys on unwitting Class members who are likely entirely unaware of their securities fraud claims or the pending

---

[2] Capitalized terms used but not defined herein shall have the same meanings as ascribed to them in the Plan.

[3] Capitalized terms used in this Preliminary Statement but not defined above have the meanings ascribed to them below.

Securities Class Action Proceedings in which they are asserted. While Class members may be entitled to a recovery under the Plan on account of their contract claims against the Debtor, it is likely that Class members will forfeit hundreds of millions of dollars in securities law-based claims (beyond the full value of the contract claims provided for under the Plan) – which include damages incurred as a result of an alleged fraud by the non-Debtor D&O Defendants – if the Third-Party Release in the Plan is approved. The Plan provides no consideration to Class members to recoup those damages in connection with these securities claims against the non-Debtor D&O Defendants. *See* ¶¶ 44–45 *infra*.

3.      The Third-Party Release should not be approved with respect to the Class Claims. The Plan, Disclosure Statement, and solicitation materials – particularly, the applicable ballot – fail to adequately notify Class members of the existence of their securities claims against the non-Debtor D&O Defendants or the facts that (i) those claims will be released under the Plan absent affirmative steps taken by each individual Class member and (ii) individual Class members may preserve those particular claims without jeopardizing their recovery in the Chapter 11 Cases by opting out of such release. In short, the opt-out process deprives Class members of due process and does not create actual and informed consent, and the circumstances fall far short of meeting the standards necessary to approve a nonconsensual Third-Party Release. As the presumptive lead plaintiff in the Securities Class Action Proceedings (*see* ¶¶ 11 and 18 *infra*), and despite the Debtors' engineering with respect to the Third-Party Release, the Proposed Lead Plaintiff is compelled to stand up on behalf of Class members whose rights are being stripped away for no consideration.

4.      Further, even if the release of the Class Claims were permissible or appropriate (and it is ***not***), the Third-Party Release includes an outrageous provision requiring claimants that have

opted out of the Third-Party Release to seek declaratory relief from this Court before pursuing their individual claims against non-Debtor third parties that are beyond this Court's jurisdiction. Even under the most deferential of analyses, this Court *clearly* lacks the requisite subject matter jurisdiction or constitutional authority to adjudicate any aspect of the merits of the non-core claims under the federal securities laws.

5.      Relatedly, the Disclosure Statement's passing mention of the pending Securities Class Action Proceedings (solely in the context of disclosing the Adversary Proceeding in which the Debtors successfully "negotiated" a stay of the Securities Class Action Proceedings without the participation of the Proposed Lead Plaintiff), among other provisions, utterly fails to put potential Class members on notice of the claims they may, but should not, be releasing against the D&O Defendants.   Even worse, the terms of the Disclosure Statement and Plan create a burdensome process for any Class member to understand exactly who is being released by the Third-Party Release and Injunction.

6.      Finally, this gratuitous third-party release through engineered consent is particularly egregious given there is no carve out for fraud, intentional misconduct, or gross negligence.  The non-Debtor D&O Defendants – the same individuals who are alleged to have defrauded investors and whose actions drove the Debtors into bankruptcy – are getting a free pass regardless of how egregious their conduct was and the fact that they are paying nothing to Class members for this extraordinary benefit.  If such expansive protection for non-debtors was intended under the Bankruptcy Code, Congress would have expressly provided such protection.  However, chapter 11 affords no such protection to non-debtors – in fact, officers and directors subject to claims under the federal securities laws ***could not obtain a discharge of those claims if they filed their own bankruptcy proceedings***.  *See* 11 U.S.C. § 523(a)(19)(A)(i).

7.      In sum, the Plan should not be confirmed unless the Third-Party Release and Plan Injunction expressly exclude the securities fraud-based claims of the Proposed Lead Plaintiff and the Class against the non-Debtor D&O Defendants and any other non-Debtor subsequently named as a defendant.  Absent such a carve-out and the additional relief set forth in greater detail below, confirmation should be denied.

## RELEVANT BACKGROUND

### A.  The Securities Class Action Proceedings

8.      The New Jersey Securities Litigation and Massachusetts Securities Litigation are securities fraud class action proceedings commenced on February 28, 2023 and March 13, 2023, respectively, on behalf of a proposed class of investors (the "Class") consisting of substantially all individuals and entities who had invested in BlockFi Interest Accounts ("BIAs") and ultimately suffered financial injury as a result thereof.  Through the Securities Class Action Proceedings, collectively, the plaintiffs assert claims against Gemini Trust Company LLC ("Gemini") and certain of the Debtors' founders, directors, and officers (collectively, the "D&O Defendants" and together with Gemini, the "Defendants").  The D&O Defendants are Zac Prince, Flori Marquez, Amit Cheela, David Olsson, Samia Bayou, Tony Laura, and Jennifer Hill.[4]

9.      The plaintiffs in the Securities Class Action Proceedings assert, among other things, that the Defendants violated the Securities Exchange Act of 1934 ("Exchange Act") by making repeated false and misleading statements to promote BIAs, and the Securities Act of 1933 ("Securities Act") because the BIAs themselves were unregistered securities.  Indeed, on February 14, 2022, the SEC instituted a settled an administrative proceeding captioned *In re BlockFi*

---

[4] Because the Securities Class Action Proceedings were commenced post-petition, the Debtors are not named as Defendants.

*Lending LLC*, Admin. Proc. 3-20758, which expressly found that, *inter alia*, **BIAs were unregistered securities**, and the Debtor, which did not admit or deny the SEC's allegations, agreed to pay a $50 million fine to settle the SEC's claims and pay an additional $50 million in fines to 32 states to settle similar claims.[5]

10.    On May 1, 2023, the Proposed Lead Plaintiff filed motions[6] in each of the Securities Class Action Proceedings pursuant to Section 27(a)(3) of the Securities Act, 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order appointing him as lead plaintiff in the Securities Class Action Proceedings and approving the Proposed Lead Plaintiff's selection of counsel.

11.    The Proposed Lead Plaintiff believes he is entitled to a rebuttable presumption in favor of his appointment as lead plaintiff because, by virtue of having had $4,135,900 invested in BIAs, he has the largest financial interest in the relief sought in the Securities Class Action Proceedings, to his knowledge.

## B.  The Adversary Proceeding

12.    On March 13, 2023, the Debtors commenced an adversary proceeding [Adv. Pro. No. 23-01071] (the "Adversary Proceeding") against Antoine[7] Elas ("Elas") and Trey Greene ("Greene") seeking injunctive relief under section 105(a) of the Bankruptcy Code, or an extension

---

[5] *See* Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8a of the Securities Act of 1933 and Section 9(F) of the Investment Company Act of 1940, Making Findings, and Imposing a Cease-and-Desist Order at ¶2 & § IV, *In re BlockFi Lending LLC*, Admin. Proc. 3-20758 (Feb. 14 2022), https://www.sec.gov/files/litigation/admin/2022/33-11029.pdf.

[6] *See* New Jersey Securities Litigation, Docket No. 7; Massachusetts Securities Litigation, Docket No. 13.

[7] Elas is identified as "Antonie" Elas in certain filings, including the Complaint in the Massachusetts Securities Litigation, and "Antoine" in others.

of the automatic stay under section 362 of the Bankruptcy Code, to enjoin the prosecution of the

Securities Class Action Proceedings.

13.     The Debtors did not name the Proposed Lead Plaintiff as a defendant in the

Adversary Proceeding since the Proposed Lead Plaintiff had not filed his Lead Plaintiff Motions

at that time (as noted above, the Proposed Lead Plaintiff filed motions in both Securities Class

Action Proceedings on May 1, 2023 – the deadline for lead plaintiff motions in those cases).  As

such, the Debtors named as defendants Elas and Greene, the individuals that filed the complaints

that initially commenced the Massachusetts Securities Litigation and New Jersey Securities

Litigation, respectively.

14.     Elas and Greene agreed to resolve the Adversary Proceeding pursuant to that certain

*Agreed Stipulation and Order Granting Preliminary Injunction and Related Relief*, entered on

April 6, 2023 (the "Stipulated Injunctive Relief Order") [Adv. Pro. No. 23-01071, Docket No. 16],

which generally enjoins the continued prosecution of the Securities Class Action Proceedings.  The

Proposed Lead Plaintiff was not included in the negotiation or drafting of the Stipulated Injunctive

Relief Order.

15.     While the Stipulated Injunctive Relief Order makes an exception to its injunction

so as to permit plaintiffs to file motions for appointment as lead plaintiff in the respective Securities

Class Action Proceedings, the Stipulated Injunctive Relief Order has been construed as precluding

the applicable District Courts from ruling on such motions.

16.     In an effort to avoid the potential prejudice to the Class that would result from the

lack of a court-appointed lead plaintiff to represent the interests of the Class in connection with

these Chapter 11 Cases, on August 14, 2023, the Proposed Lead Plaintiff filed, in the Adversary

Proceeding, a motion to modify the Stipulated Injunctive Relief Order for the limited purpose of

authorizing the District Courts to rule on the lead plaintiff motions [Adversary Proceeding, Docket No. 20] (the "Motion to Modify").

17.       However, the Debtors opposed the Motion to Modify and, at a hearing held on August 30, 2023, the Court declined to grant the Motion to Modify. Instead, the Court carried the Motion to Modify to September 26, 2023 so that it may be revisited in the event that the Plan is not confirmed or confirmation is delayed.

18.       In light of the foregoing, despite the rebuttable presumption in favor of appointing the Proposed Lead Plaintiff, the lead plaintiff motions have not been decided, and will not be decided before the Combined Hearing (defined below) to consider approval of the Debtors' Disclosure Statement and confirmation of the Debtors' Plan.

**C.  The Solicitation Procedures and Opt-Out Form**

19.       On May 12, 2023, the Debtors filed in the Chapter 11 Cases a motion [Docket No. 876] – and, thereafter, on July 30, 2023, a supplemental motion (collectively, the "Solicitation Procedures Motion") [Docket No. 1924] – seeking, *inter alia*, approval of certain solicitation procedures for the purposes of soliciting votes on the Plan.

20.       On August 2, 2023, this Court entered an order granting the Solicitation Procedures Motion (the "Solicitation Procedures Order") [Docket No. 1306]. The Solicitation Procedures Order established, *inter alia*, the schedule under which the Debtors will pursue confirmation of the solicitation version of the Plan and *conditionally* approved the Disclosure Statement for the purposes of soliciting votes on the Plan. The Solicitation Procedures Order scheduled a combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan for September 26, 2023 (the "Combined Hearing"), with an objection deadline September 11, 2023 at 4:00 p.m. (ET).

21.     In connection with the foregoing, the Solicitation Procedures Order established a deadline to cast a vote with respect to the Plan and/or submit a completed opt out form (the "Opt-Out Form") of September 11, 2023 at 4:00 p.m. (ET) (the "Voting and Opt-Out Deadline").

22.     As holders of impaired contract claims against the Debtors, the Proposed Lead Plaintiff and, presumably,[8] Class members are entitled to vote on the Plan.  *See* Plan, Article III. However, the fact that they also have securities fraud-based claims that are separate and apart from their contract claims and that those claims as against the D&O Defendants will be released under the Plan absent an affirmative act taken to "opt out" of the Third Party Release (described below) would be extremely difficult, if not impossible, for Class members to discern from any of the Debtors' Plan solicitation materials.

23.     By way of example, using the ballot provided to the Proposed Lead Plaintiff – the applicable Ballot for holders of Class 3-b claims, the form of which is attached as Exhibit 3B to the Solicitation Procedures Order [Docket No. 1306, Ex. 3B] (the "Class 3B Ballot"), places an affirmative burden on holders of claims in Class 3-b that purports to require them to complete and return the Opt-Out Form in order to avoid forfeiting any claims that they have against vaguely defined "Released Parties."  This affirmative burden is placed on the Class members despite that they are being given no information about their securities fraud claims against certain non-Debtor Released Parties and are being offered no consideration under the Plan on account of such claims.[9]

---

[8] The Proposed Lead Plaintiff received a Ballot to vote as a Holder of a Class 3-b Claim under the Plan.  While Lead Plaintiff presumes that the other Class members are entitled to vote based on their contract Claims against the Debtors, it is possible that other Class members' contract Claims fall under classes under the Plan other than Class 3-b.  Neither the Solicitation Procedures Order, the Plan, or the Disclosure Statement clearly explains how the claims of BIA holders are classified as a whole.

[9] It should be noted that as to the Debtors, any claims based upon the purchase or sale of a security of the Debtors (which the BIAs are alleged to be) are subordinated under section 510(b) of the Bankruptcy Code and would not be entitled to a distribution under the Plan.

While the Solicitation Procedures Order describes the Opt-Out Form as a separate "release opt out

form", the so-called Opt-Out Form is *buried* in the Class 3B Ballot.  *See* Solicitation Procedures

Order, Ex. 1 p. 2 and Ex. 3B pp. 5-7.

24.     The Class 3B Ballot is tragically flawed in the following ways:[10]

- <u>Failure to Include Necessary Third-Party Release Related Definitions</u>: ***The Class 3B Ballot*** contains some of the relevant Third-Party Release provisions, but ***neglects to include two of the most relevant definitions (i.e., the "Committee Settlement Parties" and "Related Parties"), without which it is entirely impossible for a claimant to identify the beneficiaries of the release the Plan purports to impose on creditors and the Class***.  *See* Class 3B Ballot at pp. 5–7 (Item 5).

- <u>The "Release Opt-Out Form" is Not a Separate Form, But Rather is Buried in the Ballot</u>:  Despite how the Opt-Out Form is characterized in the Solicitation Procedures Order, the Class 3B Ballot does not contain a separate "release opt out form", but rather ***the opt-out checkbox is baked deep into the Ballot, on page 7, four pages after the checkbox for the claimant's vote to accept or reject the Plan***.  Indeed, the words "opt out" and "third-party release" are not even used until page 7, nor is any of the other relief sought in Article VIII of the Plan.  *Id.* at p. 7. While this may be typical of how these forms are structured in cases where Debtors seek this type of engineered consent, it is particularly confusing for those receiving the Ballot in this case (who, of course, are not experienced bankruptcy practitioners) given the Solicitation Procedures Order implies the opt-out is contained in a separate "Opt-Out Form" – not merely tossed into a lengthy Ballot.

- <u>The Informational Section Is Misleading As To The Ballot's Purpose</u>: The opening informational section of the Class 3B Ballot explicitly states that "***[t]his Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.***"  *Id.* at p. 2.

- <u>The Informational Section Fails To Mention The Third-Party Release Or Necessary Opt-Out</u>:  This same section is completely silent as to any proposed releases of third parties, any proposed injunction, any opt-out option, or that the Class 3B Ballot may be and in fact must be used to

---

[10] In addition to the issues with the Ballot set forth above, it is worth noting that the Proposed Lead Plaintiff received an apparently mass form e-mail from the Debtors' claims and noticing agent three days before the Voting and Opt-Out Deadline that set forth FAQs and responses regarding the voting process – *without making any mention of the Third-Party Release or the ability to opt out of such release.*

opt out of the Third-Party Release contained in Article VIII of the Plan.
*Id.*

- <u>The Instructional Section Fails To Mention The Third-Party Release Or
  Necessary Opt-Out</u>:    Likewise, the "INSTRUCTIONS FOR
  COMPLETING THIS BALLOT" section fails to mention the Third-
  Party Release entirely, the requirement to opt-out in the Ballot or
  otherwise be bound by the Third-Party Release, or how regardless of
  whether a claimant abstains from voting, votes to accept, or votes to
  reject the Plan, unless they affirmative opt-out, the claimant will be
  deemed to be a Releasing Party that has consented to the Third Party
  Release. *Id.* at pp. 8–10.

- <u>The Ballot Is Unclear About An Opt-Out Deadline</u>: The Class 3B Ballot
  does not separately define a deadline for opting out, but instead states,
  "**FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST
  BE COMPLETED, EXECUTED, AND RETURNED SO AS TO
  BE ACTUALLY RECEIVED BY THE CLAIMS, NOTICING,
  AND SOLICITATION AGENT BY SEPTEMBER 11, 2023, AT
  4:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>VOTING
  DEADLINE</u>")**". *Id.* at 1.  The only mention of the Voting Deadline
  applying to the opt out is the following:   "**IF YOU (A) VOTE TO
  ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY
  THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT
  ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE
  PLAN, OR (D) VOTE TO REJECT THE PLAN AND, IN EACH
  CASE, FAIL TO CHECK THE BOX TO "OPT OUT" FROM THE
  THIRD PARTY RELEASE, YOU WILL BE DEEMED TO
  CONSENT TO THE RELEASES SET FORTH IN ARTICLE
  VIII.B OF THE PLAN.**" *Id.* at p. 7.

25.    As a result of these various issues with respect to identifying the "Opt-Out Form"

and where it is, and the misstated purpose of the Class 3B Ballot and similar Ballots, claimants –

particularly Class members – cannot be expected to understand that, regardless of whether and

how they wish to vote on the Plan, they must take affirmative steps to preserve a claim that has

already been asserted against the D&O Defendants by opting out of the Third-Party Release

through the submission of an appropriate Ballot that indicates whether the claimant wants to opt

out.

**D.  The Disclosure Statement, Plan, Third-Party Release, and Related Provisions**

26.     On August 3, 2023, the Debtors filed their liquidating Plan and corresponding Disclosure Statement.  The Plan contains no clear reference to BIAs and no reference at all to the Securities Class Action Proceedings or the Class members.  With respect to the Securities Class Action Proceedings, the Disclosure Statement provides only the following limited and inadequate description:

> On March 23, 2023, the Debtors commenced an adversary proceeding against [Greene] and [Elas] seeking to extend the automatic stay or, in the alternative, seeking an injunction enjoining prosecution of two putative class-action lawsuits—one filed in New Jersey and the other in Massachusetts—against certain of the Debtors' officers, directors, and former employees related to BIAs. (Adv. No. 23-01071) [Docket No. 1].

Disclosure Statement, Article X.J.  There is no explanation as to who the members of the Class are or the causes of action being asserted on behalf of such Class members.  Quite simply, the Disclosure Statement does not provide sufficient information for Class members to realize that the Massachusetts Litigation or New Jersey Litigation has anything to do with them or asserts claims on their behalf.

27.     Meanwhile, Article VIII.B of the Plan contains a deemed release (the "Third-Party Release") of numerous non-Debtors' claims against the Debtors and myriad other non-Debtors, as follows:

> **Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf**

**of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Platform Pause, the business or contractual arrangements between any Debtor and any Released Party, the FTX Loan Agreement, the 3BC Master Loan Agreements, the Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the administration and implementation of the Wind Down, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.**

Pursuant to Article VIII.B, holders of claims in Voting Classes would be deemed to grant the Third-Party Release unless they take affirmative steps to opt out of it, as described above. This would effectively leave members of the Class and the Proposed Lead Plaintiff with no remedy for the D&O Defendants' securities fraud, even though covered by insurance.

28.    The "Releasing Parties" deemed to grant the Third-Party Release include, among numerous others:

> (a) the Debtors; (b) the Wind-Down Debtors; (c) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) the Committee Settlement Parties (subject to the terms of the Committee Settlement; and (h) each Related Party of each Entity in clauses (a) through (g).

*See* Plan, Art. I.A.172.

29.     The "Released Parties" receiving the Third-Party Release comprise a sweeping universe that includes, among others: "(a) the Debtors; (b) the Wind-Down Debtors; (c) the Releasing Parties; (d) the Bermuda Provisional Liquidators; (e) the Committee Settlement Parties (subject to the terms of the Committee Settlement); and (f) each Related Party of each Entity in clauses (a) through (e)." *Id.* Art. I.A.171.  Of note, the Committee Settlement that is the basis for including the Committee Settlement Parties among the Released Parties is *not* contingent upon the Debtors obtaining approval of the Third-Party Release.

30.     In turn, the Plan defines "Related Party" to include:

> with respect to any Entity, in each case in its capacity as such with respect to such Entity, **such Entity's current and former directors, managers, officers,** investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

*Id.* Art. I.A.170 (emphasis added).  This convoluted list of categories of parties and related parties appears to include the non-Debtor D&O Defendants (who obviously are contributing nothing to Class members on account of their securities fraud claims) as Released Parties deemed to be released by the Releasing Parties.

31.     To gain any clarity as to the particular individual non-Debtors who are being released, however, one must identify the defined term, "Committee Settlement Parties" in the definition of "Released Parties" and then investigate the definition of "Committee Settlement Parties," which include: "Zac Prince, Flori Marquez, Amit Cheela, Jonathan Mayers, Rob Loban, Tony Lauro, Yuri Mushkin, Andrew Tam, David Spack, and all other Persons who served as

-14-

officers or directors of the Debtors during these Chapter 11 Cases, including Alan Carr, Jill Frizzley, Scott Vogel, Jennifer Hill, Harvey Tepner, and Pamela Corrie." *Id.* Art. I.A.78.  Indeed, most of the D&O Defendants are listed in this definition by name.  While two of the D&O Defendants are not explicitly listed (David Olsson and Samia Bayou), they are potentially captured by the catch-all of "all other Persons who served as officers or directors of the Debtors during these Chapter 11 Cases."  The Plan simply fails to meaningfully disclose whether Olsson and Bayou are Released Parties (though they would presumably argue they are, particularly in light of the sweeping definition of Related Parties).

32.     Despite that each of the seven D&O Defendants may be a beneficiary of the Plan's sweeping Third-Party Release, three of them are providing no consideration for their release – i.e., a contribution to the Plan – at all.  While the Plan indicates that the other four D&O Defendants are providing a contribution, their respective purported contributions pale in comparison to the serious claims against them under the federal securities laws that will be released under the Plan. Specifically, these purported contributions are as follows:

- ***Zac Prince*** – $1,500,000 cash contribution, a waiver of pre and post-petition claims (including indemnification claims) against the Debtors (other than salary and benefits), and 200 hours of assistance with certain matters post-confirmation;

- ***Flori Marquez*** – $500,000 cash contribution, a waiver of pre and post-petition claims (including indemnification claims) against the Debtors (other than salary and benefits), and 200 hours of assistance with certain matters post-confirmation;

- ***Tony Lauro*** – $100,000 cash contribution, a waiver of pre and post-petition claims (including indemnification claims) against the Debtors (other than salary and benefits), and 200 hours of assistance with certain matters post-confirmation.

- ***Amit Cheela*** – no cash contribution, a waiver of pre and post-petition claims (including indemnification claims) against the Debtors (other

than salary and benefits), and 100 hours of assistance with certain
matters post-confirmation (but no more than 10 hours per week); and

Plan, Art. IV.C.5.

33.    Even if a Class member defies the odds by navigating the convoluted web of
relevant Plan provisions, deciding to opt-out of the Third-Party Release (despite that the Plan and
related solicitation materials fail to adequately disclose the existence of the Class members'
securities fraud claims), understanding precisely how to opt-out of the Third-Party Release, and,
in fact, properly submits an Opt-Out form, ***they (or a court-appointed lead plaintiff, on their
behalf) still cannot assert a claim or cause of action against a Released Party unless the claimant
takes even further (and onerous and constitutionally impermissible) affirmative steps***.    In
relevant part, the Plan provides that:

> **[A]ny Entity (i) that opted out of the releases contained in this
> Article VIII.B or (ii) was deemed to reject the Plan may not
> assert any claim or other Cause of Action against any Released
> Party for which it is asserted or implied that such claim or Cause
> of Action is not subject to the releases contained in Article
> VIII.A of the Plan without first obtaining a Final Order from
> the Bankruptcy Court (a) determining, after notice and a
> hearing, that such claim or Cause of Action is not subject to the
> releases contained in Article VIII.A of the Plan and (b)
> specifically authorizing such Person or Entity to bring such
> claim or Cause of Action against any such Released Party.**

*Id.* Art. VIII.B. (the "Post-Release Adjudication Procedure").

34.    The Plan also contains an injunction barring a Releasing Party and/or a claimant
who has held, holds, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or
subject to the releases and exculpations set forth in Articles VIII.A., VIII.B., and VIII.C. of the
Plan from "enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or
Interests, except for the receipt of the payments or Distributions that are contemplated by this
Plan", which may be construed as precluding any action to prosecute the claims presently or

-16-

hereafter   asserted on behalf of the Class in connection with the Securities Class Action

Proceedings (collectively, the "Class Claims") after the Plan is confirmed. *See* Plan, Art. VIII.D.

(the "Plan Injunction").

## OBJECTION

**I.     THE PLAN CANNOT BE CONFIRMED AS PROPOSED.**

**A. The Opt-Out Mechanism Regarding the Third-Party Release Violates the Due Process Rights of the Proposed Lead Plaintiff and the Class.**

35.     The Third-Party Release and its corresponding opt-out mechanism are fatally

flawed, particularly with respect to the Class Claims.

36.     In the first instance, the Plan generally violates the due process rights of the

Proposed Lead Plaintiff and Class members by imposing an obligation on non-Debtors (i.e., the

Proposed Lead Plaintiff and Class members) to affirmatively opt out of a release of federal

securities law claims and causes of action against non-Debtors that are not adequately disclosed in

the Disclosure Statement, Plan, or any Plan solicitation materials.  Indeed, the Plan stands to

deprive parties of their fundamental right to procedural due process, especially in light of the

Adversary Proceeding.  The Debtors cannot explain such a due process failure away given the

inadequate disclosure in the Disclosure Statement.

37.     Regardless of whether Class members were served with a Ballot and purported Opt-

Out-Form, the reality is the Debtors have not truly given Class members actual notice of the impact

of the Third-Party Release on their claims in their capacity as Class members or clear and

appropriate guidance for opting out of the Third-Party Release.  The opt-out mechanism set forth

in the Ballot(s) is contrary to what is described in the Solicitations Procedures Order and is not

sufficiently described as being a part or purpose of submitting a Ballot.  As set forth above, the

Ballot fails to include all of the information necessary to understand the Third-Party Release and

Opt-Out Form – particularly, the Ballot fails to explain all relevant defined terms, makes no mention of the opt-out checkbox until multiple pages after the box to vote on the Plan appears, states that the Ballot "may not be used for any purpose other than for casting votes to accept or reject the Plan", is silent or otherwise fails to mention the Third-Party Release in its instructions, and, ultimately, is unclear as to the deadline to opt-out. The opt-out mechanism inappropriately places all of the onus on unwitting Class members to know of the existence of securities fraud-based claims that are not disclosed in any Plan-related materials and then successfully interpret a maze of convoluted Ballot and Plan provisions to understand the impact of the Third-Party Release and utilize the mechanism for opting out. This simply is not due process.

38.     Thwarting a lawsuit properly filed in an Article III court that does not even name the Debtors as defendants is clearly violative of the Class's due process rights and threatens the integrity of the bankruptcy process if the Plan is confirmed in its present form. This is particularly true here where the D&O Defendants are not Debtors – ***indeed, they would not even be able to discharge claims for securities law violations if they had filed their own bankruptcy proceedings***. *See* 11 U.S.C. § 523(a)(19)(A)(i). And it is even more egregious here given the Third-Party Release does not even provide for a carve out for fraud, willful or malicious misconduct, or gross negligence (a carve-out the Debtors are providing for the Wind-Down Debtors with respect to indemnification claims). *See* Plan, Arts. V.E. and VIII.B; *but see, e.g., In re Modell's Sporting Goods, Inc., et al.*, Case No. 20-14179-VFP (Bankr. D.N.J. Nov. 13, 2020) [Docket No. 827, Ex. A., Art. VIII.D.2.] (confirmed plan including a third-party release provision that states "the foregoing releases shall have no effect on the liability of any person or [e]ntity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct"); *In Tri Harbor Holdings Corp. (f/k/a Aceto Corp.), et al.*, Case No. 19-13448-VFP (Bankr. D.N.J.

Sept. 18, 2019) [Docket No. 996, Ex. A., § 9.05] (confirmed plan including a third-party release

provision with a carve out for gross negligence, willful misconduct, or fraud).

39.     For these reasons, the Plan must not be approved unless all members of the Class

are excluded from the Third-Party Release with respect to their federal securities law claims.

**B.  The Third-Party Release is an Impermissible, Nonconsensual Non-Debtor Release.**

40.     The Third-Party Release is improper and legally impermissible to the extent it

purports to release claims of the Proposed Lead Plaintiff and the Class against the non-Debtor

Defendants in the Securities Class Action Proceedings.

41.     To the extent that the Plan releases prepetition claims and causes of action against

non-debtor third parties, such releases are improper under sections 524(e) and 1141(d)(3) of the

Bankruptcy Code.  In the Third Circuit, third party releases are appropriate only in extraordinary

cases where the debtor is reorganizing (not liquidating), and the third parties receiving the releases

provide substantial consideration to the parties that are enjoined (creditors) for the loss of their

rights against the non-debtors.  *In re Continental Airlines Holdings, Inc.*, 203 F.3d 203, 212 (3d

Cir. 2000); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004); *In re Zenith

Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).  In *Continental*, the Third Circuit indicated

that a nonconsensual third-party release must be (i) fair, (ii) essential to the reorganization, and

(iii) accompanied by specific factual findings supporting its fairness and essential nature.  *In re

Continental Airlines Holdings, Inc.*, 203 F.3d at 214.

42.     Here, there is no better evidence of the fact that the Third-Party Release is

nonconsensual than the burden imposed on Class members to fully comprehend its impact,

decipher the maze of related Plan provisions, and successfully opt out of it.  To do so, each member

of the Class would have to:

- Know of the existence, and relevance to the Class member, of the Securities Class Action Proceedings to begin with (which are not discussed in any meaningful detail in the Disclosure Statement or any other Plan-related documents);

- Understand that the Ballot includes an Opt-Out Form related to the Third-Party Release despite the contradictory and unclear instructions set forth on the Ballot and inconspicuous location of the opt-out check box (as described above);

- Grasp the possibility that the claims asserted against non-Debtors on the Class member's behalf in the Securities Class Action Proceeding are impacted by the Debtors' proposed Third-Party Release, despite that the relevant defined terms – Committee Settlement Parties and Related Parties – are not disclosed on the Ballot;

- Scrupulously comb through and interpret the complex interrelated provisions and defined terms in the Disclosure Statement and/or Plan to ascertain that the Class member's securities claims against the non-Debtor D&O Defendants are potentially released under the Third-Party Release; and

- Affirmatively opt-out of the Third-Party Release.

43.     The notion that Class members would voluntarily consent to a Third-Party Release of claims against the D&O Defendants without being given any specific consideration for that release – other than the mutual release by the Debtors of potentially non-existent claims against the Class member (which release does not even include preference claims) – is specious, at best. *Cf. In re SunEdison, Inc.*, No. 16-10992-SMB, Doc. No. 4253 (Bankr. S.D.N.Y. Nov. 8, 2017) (finding chapter 11 debtors' argument that silence by holders of claims – even those who were entitled to vote but did not vote – should be deemed consent to a third-party release was "not persuasive because the Debtors have not identified the source of their duty to speak"); *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015) (finding that procedures where a party is deemed to consent by failing to opt out of a third-party release "is to some extent a legal fiction"). While Class members may be entitled to distributions under the Plan on account of contract claims

as BIA holders, they will not be fully compensated by such distributions,[11] and such distributions are not contingent on consenting to the Third-Party Release.  In other words, there simply is no reason why a fully informed Class member would voluntarily relinquish its right to damages on account of the Class Claims.

44.     The proposed release of the Class Claims against the non-Debtor D&O Defendants is neither fair nor essential to a reorganization.  Indeed, as noted above, Class members may receive a recovery under the Plan in their capacity as holders of contract claims against the Debtors – but that recovery **_will not_** cover all of the damages that could be asserted in connection with the Securities Class Action Proceedings.  As alleged in the complaints in the Massachusetts Securities Litigation and New Jersey Securities Litigation, the undisclosed risks concealed by the D&O Defendants' misrepresentations began to materialize and the truth underlying those misrepresentations began to emerge as early as November 8, 2022 (and possibly earlier), when it became clear that FTX needed to seek bankruptcy protection. *See, e.g.*, Massachusetts Docket No. 1 ¶ 71; New Jersey Docket No. 1 ¶ 11. As these risks materialized and the truth entered the market, the value of Class members' BIAs collapsed. The Debtors' Plan, however, values the Massachusetts Securities Litigation and New Jersey Securities Litigation Class Members' claims as of on or about the Petition Date (November 28, 2022), and thus does not compensate Class Members for the staggering losses – potentially in the hundreds of millions or billions of dollars – they incurred between at least November 8 and November 28, 2022.[12]

---

[11] While a prepetition contract claim based on the value of the BIAs must be determined as of the Petition Date in connection with the Plan and distributions thereunder, the damages owed to Class members as a result of the D&O Defendants' alleged wrongdoings may have begun to accrue at an earlier point in time (as described in ¶ 45 hereof), when the value of the BIAs was significantly higher than the value as of the Petition Date.

[12] It is likely that Class Members incurred losses beginning earlier than November 8, 2022, but Proposed Lead Plaintiff will not be able to file an amended complaint identifying the precise extent of Plaintiffs' losses until the Stipulated Injunctive Relief Order is modified or lifted.

45.     For example, the Proposed Lead Plaintiff's BIA included 227 Bitcoin.  The value of that Bitcoin on November 7, 2022 – the day before the risks concealed by the non-Debtor D&O Defendants' fraud materialized and the truth about the non-Debtor D&O Defendants' fraud may have begun to emerge – was $20,589 per Bitcoin, and therefore the Bitcoin portion of the Proposed Lead Plaintiff's BIA alone was worth $4,673,703.  By November 28, 2022 – the date at which the Plan apparently values the Proposed Lead Plaintiff's BIA – the price of Bitcoin had declined to $16,211.70 per Bitcoin, and the Bitcoin portion of the Proposed Lead Plaintiff's BIA alone had declined to $3,680,055.90.   In other words, the Proposed Lead Plaintiff incurred ***at least $993,647.10*** in damages as a result of the D&O Defendants' fraud.  The Plan does not provide any consideration to Class members in exchange for the release of claims for these damages asserted against the D&O Defendants on behalf of the Class.

46.     None of the non-Debtor D&O Defendants are providing a meaningful contribution to the Plan.  In fact, three of the D&O Defendants are providing no contribution at all.  While the other four D&O Defendants are providing some contributions, those contributions simply do not move the needle with respect to the distributions being made under the Plan and are not earmarked for Class members in any event.  Further, the indemnity claims they are waiving would be statutorily subordinated under section 510(b) of the Bankruptcy Code with respect to the Class Claims, and they are receiving a release from the Debtor in exchange for the contributions.

47.     Moreover, the Third-Party Release of claims against the D&O Defendants cannot possibly be essential to the Debtors' reorganization because the Debtors are liquidating and not entitled to a discharge under section 1141 of the Bankruptcy Code.   Even the Committee Settlement under which the D&O Defendants are providing their time and contributions (if anything) is not contingent on the D&O Defendants receiving a release in connection with the

-22-

Securities Class Action Proceedings.  Accordingly, the proposed Third-Party Release of claims against the non-Debtor D&O Defendants is impermissible under the Bankruptcy Code and applicable Third Circuit case law.

### C. The Bankruptcy Court Lacks Subject Matter Jurisdiction and Constitutional Authority to Engage in the Post-Release Adjudication Procedure in Connection with the Third-Party Release.

48.    Federal courts are courts of limited jurisdiction.  A federal court may adjudicate a case or controversy "only if there is both Constitutional authority and statutory authority for federal jurisdiction." *In re Midway Gold US, Inc.*, 575 B.R. 475, 517 (Bankr. D. Colo. 2017) (citation omitted).  With respect to the Post-Release Adjudication Procedure, the Bankruptcy Court has neither.

49.    Section 1334(b) of title 28 of the U.S. Code provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  In turn, the United States District Court for the District of New Jersey has entered a *Standing Order of Reference* dated September 18, 2012, which states that "[a]ny or all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 of the United States Code, or arising in or relating to a case under Title 11 of the United States Code shall be referred to the bankruptcy judges for the district."

50.    The terms "arising under," "arising in," and "related to" are terms of art.  *In re Excel Storage Products, L.P.*, 175, 181 (Bankr. M.D. Pa. 2011).  A proceeding "arises under" the Bankruptcy Code "if it asserts a cause of action created by the Code," such as the various causes of action created by chapter 5.  *In re Sunbridge Capital, Inc.*, 454 B.R. 166, 169 (Bankr. D. Kan. 2011) (citation omitted).  Proceedings "arising in" a bankruptcy case are those that could not exist outside of the bankruptcy case but are not causes of action created by the Bankruptcy Code itself.

*Midway Gold US*, 575 B.R. at 517 (citation omitted).   The Class Claims against the D&O

Defendants arise neither under nor in the Chapter 11 Cases.

51.    The third category of proceedings over which bankruptcy courts may have

jurisdiction – proceedings "related to" the bankruptcy case – are proceedings whose outcome

"could conceivably have any effect on the estate being administered in bankruptcy." *Power Plant*

*Entm't Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 295 (Bankr. D. Md. 2012) (citation

omitted).  The party asserting that a bankruptcy court has subject matter jurisdiction over a matter

bears the burden of proving by a preponderance of the evidence that jurisdiction exists.  *In re*

*SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017.

52.    Further, not only must the Court have subject matter jurisdiction over the Class

Claims, but it must also have constitutional authority to determine any aspect of the merits of such

claims and any defenses that the D&O Defendants may have, including whether the claims have

been released.  As Article I courts, bankruptcy courts do not have the authority to enter final orders

on matters "that are not integral to the restructuring of the debtor-creditor relationship." *In re*

*Kirwan Offices S.a.r.l.*, 592 B.R. 489, 510 (Bankr. S.D.N.Y. 2019) (internal quotations omitted).

Practically speaking, "resolving claims *against a debtor* will nearly always be integral to resolving

a bankruptcy process, while claims *against third parties* will be integral only in 'rare cases.'"  *Id.*

at 511 (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005)) (emphasis

added).

53.    Against this backdrop, it is clear the Court lacks the requisite jurisdiction and

constitutional authority to make any determinations regarding claims against third parties once a

claimant has exercised the right to opt-out of the Third-Party Release.  At that point, the applicable

claims, such as the Class Claims, absolutely cannot be said to relate to the Chapter 11 Cases or be

integral to the debtor-creditor relationship.  As such, the Post-Release Adjudication Procedure set forth in Article VIII.B. of the Plan cannot be approved by this Court.

**D.  The Plan Injunction is Impermissibly Overbroad.**

54.    In addition to the improper Third-Party Release, the Plan Injunction provision generally enjoins any entity that may hold any claims against the Debtors or subject to the releases set forth in Article VIII of the Plan (e.g., the Class Claims) from commencing or continuing in *any* way in *any* action or other proceeding of *any* kind on account of such claims at all (whether against the Debtors or non-Debtors).  This provision may be reasonably interpreted (or even, is intended to be interpreted) as prohibiting the pursuit of the Class Claims against the Debtors solely to the extent of any insurance coverage.  *See, e.g., Miller v. McDonald (In re World Health Alternatives, Inc.)*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *Allied Digital Tech. Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004); *In re Louisiana World Exposition, Inc.*, 832 F. 2d 1391 (5th Cir. 1989).  This effectively shields any relevant insurance carrier from covering claims they agreed to insure. There is no need to protect the Debtors from claims for which they would have no economic exposure.

55.    Further, the Plan Injunction may be interpreted (and again, perhaps is intended to be interpreted) as precluding the pursuit of Class Claims against the D&O Defendants.  For the reasons set forth herein and above, this relief is simply not justified.

**II.    THE DISCLOSURE STATEMENT CANNOT BE APPROVED WITH RESPECT TO MATTERS RELATED TO THE THIRD-PARTY RELEASE AND PLAN INJUNCTION AND THEIR IMPACT ON THE CLASS.**

**A. The Disclosure Statement Does Not Contain an Adequate Description of the Securities Class Action Proceedings.**

56.    The Securities Class Action Proceedings involve allegations of substantial wrongdoing by the Defendants, including claims against the D&O Defendants that the Debtors

seek to release via manipulation through the voting process and the proposed Plan itself. Yet, the

Disclosure Statement contains no meaningful description of the Securities Class Action

Proceedings. The Disclosure Statement only mentions the Securities Class Action Proceedings in

the context of the Adversary Proceeding commenced by the Debtors for the purpose of enjoining

the continued prosecution of the Securities Class Action Proceedings – the Disclosure Statement

does not provide any summary of the Class Claims asserted in the Securities Class Action

Proceedings, the D&O Defendants against whom those Class Claims are asserted, or the members

of the proposed Class on behalf of which the Class Claims are asserted. This is not adequate

information under section 1125 of the Bankruptcy Code.

**B. The Disclosure Statement Fails to Provide any Legal or Factual Basis for the Third-Party Release and Plan Injunction, Particularly as They Relate to the Securities Class Action Proceedings, and Violates Bankruptcy Rule 3016(c) by Failing to Clearly Disclose the Scope of the Third-Party Release and Plan Injunction.**

57.    Bankruptcy Rule 3016(c) provides that:

> [i]f a plan provides for an injunction against conduct not otherwise enjoined
> under the [Bankruptcy] Code, the plan and disclosure statement shall
> describe in specific and conspicuous language (bold, italic, or underlined
> text) all acts to be enjoined and identify the entities that would be subject to
> the injunction.

Fed. R. Bankr. P. 3016(c). *See also In re Keys Fitness Prods., L.P.*, No. 08-31790-HDH-11, 2008

Bankr. LEXIS 3309 at *14–15 (Bankr. N.D. Tex. Sept. 11, 2008) (noting disclosure of non-debtor

release satisfies Bankruptcy Rule 3016(c)); *In re Lower Bucks Hosp.*, 471 B.R. 419, 460 (Bankr.

E.D. Pa. 2012). The *Lower Bucks* court noted that although Rule 3016(c) purports to address only

injunctions, "[i]ts purpose is to alert parties in interest that the plan purports to restrict their rights

in ways that ordinarily would not result from confirmation of a plan." 471 B.R. at 460. As here,

"[w]hether 'enjoined' or merely 'released,' in this case, the Plan was designed to deprive [third

parties] of their right to prosecute a claim against a non-debtor." *Id.*   Thus, Bankruptcy Rule

3016(c) applied to the presentation of both the Third-Party Release and Plan Injunction in the Plan

and Disclosure Statement.

58.    The Disclosure Statement might facially comply with Bankruptcy Rule 3016(c) by

presenting the language of the Third-Party Release and Plan Injunction and briefly noting the

existence of the Third-Party Release and opt-out mechanism in the context of summarizing the

Committee Settlement.  *See, e.g.,* Disclosure Statement, at pp. 57–58, and 95.   However, its

compliance with the rule ends there.  As far as identifying the Released Parties and Releasing

Parties that would be subject to the Third-Party Release and Plan Injunction as well as identifying

the claims holders of BIAs would be releasing, the Disclosure Statement stops far short of giving

the information necessary insofar as Class members would be concerned.   The Disclosure

Statement fails to identify the Class, lead plaintiffs, or any of the D&O Defendants other than by

merely parroting the language of the Third-Party Release and setting forth defined terms.  This,

simply, is not effective compliance with Bankruptcy Rule 3016(c).

## III.    ADDITIONAL    MODIFICATIONS    ARE    NECESSARY    BEFORE    ANY CONFIRMATION ORDER IS ENTERED IN THESE CHAPTER 11 CASES.

### A. Any Order Confirming the Plan or Any Other Chapter 11 Plan for the Debtors Should Provide Appropriate Exceptions to the Third-Party Release with Respect to the Claims Asserted in the Securities Class Action Proceedings.

59.    For the foregoing reasons, the Court should not confirm the Plan in its present form

unless the order confirming the Plan (the "<u>Confirmation Order</u>") expressly states as follows:

- **<u>The Securities Class Action Proceedings.</u>** Notwithstanding anything to the contrary in the Plan, Disclosure Statement, solicitation procedures order [Docket No. 1306], Confirmation Order, or any Plan-related documents or solicitation materials in connection therewith, nothing in the Plan, Confirmation Order, or any other document or provision in connection with these Chapter 11 Cases (including, for the avoidance of doubt, Article VIII.B. of the Plan) shall be construed to release, enjoin, or otherwise adversely impact the claims and causes of action asserted on behalf of the Class against any non-Debtor defendant now or

hereafter named in the class action proceedings captioned as (i) *Antonie Elas, individually and on behalf of all others similarly situated v. Zac Prince, Flori Marquez, Amit Cheela, David Olsson, and Samia Bayou*, Case No. 23-10472, pending in the United States District Court for the District of Massachusetts and (ii) *Trey Greene, individually and on behalf of all others similarly situated v. Zac Prince, Flori Marquez, Tony Laura, Jennifer Hill, and Gemini Trading, LLC*, Case No. 23-01165, pending in the United States District Court for the District of New Jersey (collectively, the "<u>Securities Class Action Proceedings</u>"). Each member of the putative class in connection with the Securities Class Action Proceedings (the "<u>Class</u>") is hereby deemed to have opted out of, and shall not be deemed a Releasing Party with respect to, the Third-Party Release contained in Article VIII.B. of the Plan with respect to all claims asserted or to be asserted against any party in the Securities Class Action Proceedings (the "<u>Opt-Out Claims</u>"), and shall not be required to execute, complete, or deliver the any release opt-out forms in respect of the Opt-Out Claims.  Further, anything to the contrary in the Plan, Confirmation Order, or any Plan-related documents or solicitation materials in connection therewith, neither the lead plaintiff(s) nor any other members of the class in connection with the Securities Class Action Proceedings shall be required to seek any determination from the bankruptcy court regarding the applicability of the release set forth in Article VIII.B. of the Plan as a prerequisite or condition to pursuing any claims or causes of action in connection with the Securities Class Action Proceedings.

60.     At the very least, claims of fraud, intentional misconduct, and gross negligence should be carved out of the Third-Party Release.

**B.   The Confirmation Order Should Make Clear that Any Lead Plaintiff in the Securities Class Action Proceedings May Pursue the Class Claims Against the Debtors to the Extent of Available Insurance.**

61.     The Debtors' existing directors' and officers' liability insurance policies (the "<u>D&O Policies</u>") are left intact by the Plan and deemed assumed to the extent they are executory contracts.  <u>See</u> Plan, Art. V.F.  Because the Plan is a plan of liquidation, the Debtors are not entitled to a discharge, *see* 11 U.S.C. § 1141(d)(3)(A).  Thus, the Class Claims should remain unaffected to the extent a recovery is available from existing insurance, which would have no impact

whatsoever on the Debtors' estates and is fully consistent with the treatment that should be afforded to such claims notwithstanding section 510(b).

62.     However, the Plan does not indicate whether a lead plaintiff, individually or on behalf of the Class, will be able to pursue the claims of the Class against the Debtors to the extent of any insurance coverage available under the D&O Policies.  If any insurance coverage and proceeds are available under the D&O Policies in connection with the claims asserted in the Securities Class Action Proceedings, failure to expressly preserve the rights of a lead plaintiff to pursue such coverage on behalf of the Class would unjustifiably provide the relevant insurers with a gratuitous, de facto release and the Debtors with a discharge to which they are not entitled.  To resolve this issue, the Confirmation Order should expressly provide as follows:

- **<u>Availability of Insurance for the Class.</u>**  Nothing in the Plan, any Plan Document, or this Confirmation Order shall prevent any member of the Class (as defined in paragraph [___] of this Order) from pursuing claims against the Debtors solely to the extent of available coverage under any applicable D&O Liability Insurance Policies (as defined in the Plan).

**C.  The Confirmation Order Should Require the Debtors and Their Transferees, Successors, and/or Assigns to Preserve Evidence Potentially Relevant to the Securities Class Action Proceedings Through the Conclusion of the Securities Class Action Proceedings.**

63.     The Plan does not explicitly require the Debtors to preserve evidence potentially relevant to the Securities Class Action Proceedings through the conclusion thereof.

64.     In the event discovery becomes necessary, the loss, destruction, or unavailability of evidence potentially relevant to the Securities Class Action Proceedings would materially prejudice the Proposed Lead Plaintiff and the Class in the prosecution of the Securities Class Action Proceedings and the related claims and causes of action.  Accordingly, the Confirmation Order must require the Debtors and any of their transferees, successors and/or assigns to preserve originals or true copies of the Debtors' books, records, and documents, electronically stored

information, and other evidence potentially relevant to the Securities Class Action Proceedings until the conclusion of the Securities Class Action Proceedings.  In furtherance of the foregoing, the proposed Confirmation Order should provide as follows:

- **Document Preservation.** Until the entry of a final order of judgment or settlement in each of the Securities Class Action Proceedings (as defined in paragraph [__] of this Order), the Debtors and any transferees, successors and/or assigns of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object potentially relevant to the Securities Class Action Proceedings, wherever stored (collectively, the "Potentially Relevant Books and Records") shall preserve and maintain such Potentially Relevant Books and Records, and shall not destroy, abandon, transfer, or otherwise render unavailable such Potentially Relevant Books and Records without providing counsel to the lead plaintiff(s) in the Securities Class Action Proceedings at least sixty (60) days' advance written notice and an opportunity to object and be heard by a court of competent jurisdiction.  In the event the lead plaintiff(s) timely object(s) to any such destruction, abandonment, or transfer, the Potentially Relevant Books and Records shall be preserved until the earlier of (a) a final order of the Bankruptcy Court or other court of competent jurisdiction and (b) the date the party in possession, custody, or control of such Potentially Relevant Books and Records provides originals or true copies thereof to counsel for the lead plaintiff(s).

## STANDING TO OBJECT ON BEHALF OF THE CLASS

65.     Finally, the Debtors have previously questioned whether the Proposed Lead Plaintiff has standing in connection with these Chapter 11 Cases.  *See, e.g., Debtors' Opposition to Motion of Proposed Lead Plaintiff Cameron Wyatt for Entry of an Order Modifying the Stipulated Injunctive Relief Order* [Adversary Proceeding, Docket No. 28], at ¶¶ 10 and 13.  The Proposed Lead Plaintiff respectfully submits that he has standing to appear and object in these proceedings – particularly with respect to confirmation of a Plan that purports to release the claims asserted on behalf of the Class in the Securities Class Action Proceedings currently pending before Article III federal courts.

66.     Standing to object to confirmation of a debtor's chapter 11 plan, including releases

contained therein, is governed by section 1128(b) of the Bankruptcy Code, which provides that

"part[ies] in interest may object to confirmation of a plan." 11 U.S.C. § 1128(b).  Section 1109(b)

provides a non-exclusive list of those "part[ies] in interest [who] . . . may raise and may appear

and be heard on any issue in a case under [chapter 11]." 11 U.S.C. § 1109(b).  As recognized by

the Third Circuit and other courts, section 1109(b) is to be construed broadly.  *See In re Global

Indus. Technologies, Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) ("The list of potential parties in interest

in § 1109(b) is not exclusive.  On the contrary, that section has been construed to create a broad

right of participation in Chapter 11 cases.") (internal quotations omitted); *see also In re Alpha Nat.

Res. Inc.*, 544 B.R. 848, 854 (Bankr. E.D. Va. 2016) (noting section 1109(b) "is to be construed

broadly, in order to allow parties affected by a chapter 11 case to appear and be heard") (citations

omitted).

67.     Here, the Proposed Lead Plaintiff, despite having opted out of the Third-Party

Release, is a party in interest that should be given an opportunity to be heard.  While the Debtors

are not defendants in the Securities Class Action Proceedings, they are seeking approval of a Third-

Party Release through entry of a confirmation order that will effectively serve as a final judgment

in the Securities Class Action Proceedings, resulting in the evisceration of the Class Claims being

asserted by Class members.  This impacts the Proposed Lead Plaintiff in particular, since, as the

presumptive lead plaintiff, the Proposed Lead Plaintiff would be entitled to an incentive award in

the event damages are recovered by the Class in the Securities Class Action Proceedings,

depending on the size of the recovery.  *See, e.g., Rudel Corp. v. Heartland Payment Sys., Inc.*,

2018 WL 3159880, at *5 (D.N.J. Jan. 22, 2018) ("[Incentive] awards are granted to reward the

public service performed by lead plaintiffs."); *In re N.J. Tax Sales Certificates Antitrust Lit.*, 2016

WL 5844319, at *11 (D.N.J. Oct. 3, 2016) (approving incentive award to each of the four class representatives).  The amount of the incentive award bears a direct relationship to the size of the Class and the amount of the Class recovery.  The less the number of Class members, the lower the recovery and the incentive award.

68.     Further, the deemed release of the Class Claims under the Plan clearly prejudices Class members.  Indeed, the individual Class members may have notice of these bankruptcy proceedings in light of their status as holders of contract claims against the Debtors, but they are most likely entirely unaware of their securities law claims against the non-Debtor D&O Defendants and have virtually no reason to suspect any such claims would be implicated, much less impacted or released, by the Plan proposed in these Chapter 11 Cases.  If the Proposed Lead Plaintiff's Objection is not heard by this Court, the Class will have its pecuniary interests against the non-Debtor D&O Defendants in the Securities Class Action Proceedings wiped out by these chapter 11 proceedings without having had any representative to protect their interests in connection therewith.

## **RESERVATION OF RIGHTS**

69.     The Proposed Lead Plaintiff reserves all rights with respect to approval of the Disclosure Statement and confirmation of the Plan or any other chapter 11 plan proposed in these Chapter 11 Cases, including, without limitation, the right to seek certification of the Class under Bankruptcy Rule 7023 or to assert any further or supplemental objections to confirmation of the Plan or any other plan on any and all grounds, whether or not raised in this Objection.

70.     For the avoidance of doubt, this Objection does not, shall not, and shall not be deemed to:

- constitute a submission by the Proposed Lead Plaintiff, either individually or for the Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

- constitute consent by the Proposed Lead Plaintiff, either individually or for the Class or any member thereof, to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter**; or

- waive any substantive or procedural rights of the Proposed Lead Plaintiff or the Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment on any matter, (b) the right to have final orders in non-core matters entered only after de novo review by a District Court judge, (c) the right to trial by jury in any proceedings so triable herein, in the Debtors' Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Class Action Proceedings, or in any other case, controversy, or proceeding related to or arising from the Debtors, their chapter 11 cases, any Related Proceedings, or the Securities Class Action Proceedings, (d) the right to have the reference withdrawn by a United States District Court in any matter subject to mandatory or discretionary withdrawal, or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which the Proposed Lead Plaintiff or the Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

71.     For all of the foregoing reasons, the Proposed Lead Plaintiff respectfully requests

that the Court deny confirmation of the Plan unless the issues raised in this Objection are

appropriately addressed.

Dated: September 11, 2023

**LOWENSTEIN SANDLER LLP**

*/s/ Michael S. Etkin*
Michael S. Etkin, Esq.
Michael Papandrea, Esq.
Erica G. Mannix, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2333
E-mail: metkin@lowenstein.com
E-mail: mpapandrea@lowenstein.com
E-mail: emannix@lowenstein.com

*Bankruptcy Counsel to the Proposed Securities
Class Action Lead Plaintiff Cameron Wyatt*

**ANDREWS DEVALERIO LLP**
Daryl Andrews, Esq.
Glen DeValerio, Esq.
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
E-mail: daryl@andrewsdevalerio.com
E-mail: glen@andrewsdevalerio.com

*Counsel for the Proposed Securities Class
Action Lead Plaintiff Cameron Wyatt*

**POMERANTZ LLP**
Jeremy A. Lieberman, Esq.
J. Alexander Hood II, Esq.
Brian Calandra, Esq.
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: bcalandra@pomlaw.com

*Counsel for the Proposed Securities Class
Action Lead Plaintiff Cameron Wyatt*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein, Esq.
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
E-mail: peretz@bgandg.com

*Counsel for the Proposed Securities Class
Action Lead Plaintiff Cameron Wyatt*