UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren E. Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: jeffrey.m.sponder@usdoj.gov
Email: lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : Case No. 22-19361 (MBK) |
| | : *Jointly Administered* |
| BLOCKFI INC., *et al*,[1] | : Chapter 11 |
| | : |
| Debtors. | : Honorable Michael B. Kaplan, Chief Judge |
| | : |
| | : Hearing Date: September 26, 2023 at 1:00 pm |
| | : |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE THIRD AMENDED
JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The United States Trustee ("U.S. Trustee") by and through counsel, in furtherance of his

duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby submits this objection

("Objection") to confirmation of the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its

Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, identified on the docket as the

"Solicitation Version" ("Third Amended Joint Plan") (Dkt. 1309)[2], and respectfully states as

follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Third Amended Joint Plan.

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to several of the provisions in the Third Amended Joint Plan. The Third Amended Joint Plan provides overbroad exculpation provisions, overbroad release provisions, impermissible third-party release provisions as they are not consensual, and improper injunction provisions.

## JURISDICTION

2.      This Court has jurisdiction to hear the above-referenced Objection.

3.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under section 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor and comment on plans and disclosure statements filed in Chapter 11 cases.

5.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding the above-referenced Objection.

## BACKGROUND

6.      On November 28, 2022 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code").  *See* Case Nos. 22-19361, 22-19363, 22-19365, 22-19366, 22-19367, 22-19368, 22-19370, 22-19371 and 22-19374 at Dkt. 1.

7.    On the same day, the Debtors filed a *Joint Plan of Reorganization of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* ("Original Joint Plan"). *See* Dkt. 22.  The Original Plan was not accompanied by a Disclosure Statement.

8.    On November 29, 2022, the Court entered an Order directing that these cases be jointly administered.  *See* Dkt. 42.

9.    The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

10.    No trustee or examiner has been appointed in these chapter 11 cases.

11.    On December 21, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors.  *See* Dkts. 130 and 131.

12.    On May 12, 2023, the Debtors filed the *First Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* ("First Amended Joint Plan"), and related Disclosure Statement.  *See* Dkts. 874 and 875.

13.    On June 28, 2023, the Debtors filed the *Second Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* ("Second Amended Joint Plan"), and related Disclosure Statement. *See* Dkts. 1132 and 1133.

14.    On July 31, 2023, the Debtors filed *the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* ("Third Amended Joint Plan, Non-Solicitation Version), and related Disclosure Statement.  *See* Dkts. 1300 and 1301.

15.     On August 2, 2023, the Court entered an *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto*.  *See* Dkt. 1306.

16.     Subsequently, on August 3, 2023, the Debtors filed the Third Amended Joint Plan, along with the Solicitation Version of the related Disclosure Statement.  *See* Dkts. 1309 and 1310.

17.     The Third Amended Joint Plan provides for the appointment of a Wind-Down Trustee to manage the Wind-Down Debtors pursuant to a Wind-Down Trust Agreement.  *See* Dkt. 1309 at Article IV.D.

18.     The Third Amended Joint Plan includes Release, Exculpation, and Injunction provisions.  *See id*. at Article VIII.  The releases include Debtor releases and third-party releases. *See id*.

19.     On September 4, 2023, the Debtors filed a Plan Supplement For the Debtors' First Amended Joint Chapter 11 Plan of Reorganization (the "Supplement").  *See* Dkt. 1443.  Pursuant to the Supplement, the Debtors filed certain documents including a Plan Administrator Agreement, identifying members of the Wind-Down Debtors' Oversight Committee, a Wind-Down Budget and a Cross Border Insolvency Protocol.  *See id.*  The Plan Administrator Agreement named Mohsin Meghji as the Plan Administrator and sets forth the members of the Oversight Committee. *See id.*  However, it appears that the Plan Administrator and the Plan Administrator Agreement are being substituted for the Wind-Down Trustee and the Wind-Down Trust Agreement included in the Supplement.

**OBJECTION**

## I.    Confirmation of the Plan

20.    A chapter 11 plan cannot be confirmed unless the Court finds the plan complies with the provisions of 11 U.S.C. § 1129(a).  *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).  Even where there are no objections to a plan, a court must find that the debtor fulfilled the requirements of Section 1129(a).  *In re Friese*, 103 B.R. 90, 91 (Bankr. S.D.N.Y. 1989).  A plan proponent bears the burden of proof with respect to each and every element of section 1129(a).  *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001).

21.    "Release and exculpation clauses have also been found to be subject to review pursuant to section 1129(a)(1)."  *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 133 (Bankr. D.N.J. 2010), *citing In re Whispering Pines Estates, Inc.*, 370 B.R. 452, 459 (1st Cir. BAP 2007). Accordingly, complying with Section 1129(a) requires that a plan not include improper release and exculpation language.

22.    There are numerous ways in which the Release and Exculpation provisions set forth in the Third Amended Joint Plan are contrary to applicable case law, including the standards set forth in *In re Wash. Mut., Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), *In re Tribune Company*, 464 B.R. 126 (Bankr. D. Del. 2011) *and In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000).

### A.  The Exculpation Clause is Impermissibly Broad

23.    The Third Amended Joint Plan defines "**Exculpated Party**" as follows:

> collectively, and in each case solely in its capacity as such: (a) each of the Debtors and the Wind-Down Debtors; (b) the Committee and each of its respective members; and (c) each Related Party of each Entity in clauses (a) and (b).

*See* Dkt. 1309 at Article I.A., ¶ 117.

5

24.     The Third Amended Joint Plan defines "**Related Party**" as follows:

> with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professional advisors.

*See id.* at ¶ 170.

25.     The section of the Third Amended Joint Plan entitled "**Exculpation**" provides, in part, that:

> no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Plan, any Definitive Documents, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

*See id.* at Article VII.C.

26.     The Third Amended Joint Plan's definition of Exculpated Parties is inconsistent

with controlling case law because it is not limited to estate fiduciaries.  In *In re PWS Holding*

*Corp.*, the Third Circuit considered whether an official committee of unsecured creditors could be

exculpated, and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of

immunity to members of the unsecured creditors' committee. 228 F.3d 224, 246 (3d Cir. 2000).

As stated by the Court in *Washington Mutual*, an "exculpation clause must be limited to the

fiduciaries who have served during the chapter 11 proceedings: estate professionals, the

Committees and their members, and the Debtors' directors and officers."  442 B.R. at 350-51

(emphasis added).  The Court in *In re Tribune Company*, 464 B.R. 126 (Bankr. D. Del. 2011),

agreed with the holding in *Washington Mutual* relating to exculpated parties, and held that the

exculpation clause in Tribune, "must exclude non-fiduciaries."  *Id*. at 189, *quoting Wash. Mut.*,

422 B.R. at 350-51; *accord*, *Indianapolis Downs*, 486 B.R. 286 (Bankr. D. Del. 2013); *see also In*

*re Diocese of Camden, New Jersey,* -- B.R. --, 2023 WL 5605156, at *31 (Bankr. D.N.J. Aug. 29,

2023) ("the estate itself cannot be granted immunity, nor can consultative bodies that do not qualify

as 'fiduciaries' under the Bankruptcy Code.").

27.     Contrary to these limits of exculpation, the Third Amended Joint Plan includes as

"Exculpated Parties" – and within that definition "Related Parties" – numerous entities that are not

fiduciaries of the estate. The Exculpated Parties should be limited to estate fiduciaries.  As such,

the Third Amended Joint Plan cannot be confirmed unless its definition of Exculpated Parties is

limited to: **(i)** the Debtors; **(ii)** the directors and officers of the Debtors who served during any

portion of the cases; **(iii)** the Committee; **(iv)** the members of Committee, in their capacity as such;

and **(v)** the professionals retained in these cases by the Debtors and the Committee.  *See Wash.*

*Mut.*, 442 B.R. at 350-51 (an "exculpation clause must be limited to the fiduciaries who have

served during the chapter 11 proceeding: estate professionals, the Committees and their members,

and the Debtors' directors and officers.").

**B. The Release Clauses are Impermissible under Applicable Law**

28. The Third Amended Joint Plan defines "**Released Party**" as follows:

> With respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

*See id*. at Article I.A. ¶ 171.

29. The Third Amended Joint Plan defines "**Releasing Parties**" as follows:

> Collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) the Committee Settlement Parties (subject to the terms of the Committee Settlement); and (h) each Related Party of each Entity in clauses (a) through (g).

*See id*. at ¶ 172.

30. The Third Amended Joint Plan defines "**Third-Party Release**" as follows:

> the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.B. of the Plan.

*See id*. at ¶ 205.

31.     The section of the Third Amended Joint Plan entitled "**Releases by the Debtors**"

provides, in part, that:

> for good and valuable consideration . . . each Released Party is hereby
> conclusively, absolutely, unconditionally, irrevocably, and forever released
> and discharged by each and all of the Debtors, the Wind-Down Debtors,
> and their Estates, in each case on behalf of themselves and their respective
> successors, assigns, and representatives, and any and all other Entities who
> may purport to assert any Cause of Action, directly or derivatively, by,
> through, for, or because of, the foregoing Entities, for any and all Cause of
> Action, including any derivative claims, asserted or assertable on behalf of
> any of the Debtors, whether known or unknown, foreseen or unforeseen,
> matured or unmatured, existing or hereinafter arising, in law, equity,
> contract, tort, or otherwise, that the Debtors would have been legally
> entitled to assert in their own right (whether individually or collectively) or
> on behalf of the Holder of any Claim against, or Interest in, a Debtor, based
> on or relating to, or in any manner arising from, in whole or in part, the
> Debtors (including the management, ownership, or operation thereof), their
> capital structure, the purchase, sale or recission of the purchase or sale or
> any Security of the Debtors, the subject matter of, or the transactions or
> events giving rise to, any Claim or Interest that is treated in the Plan, the
> business or contractual arrangements between any Debtor and any Released
> Party, the Chapter 11 Cases and related adversary proceedings, the Platform
> Pause, the FTX Loan Agreement, the 3AC Master Loan Agreements, the
> Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court
> restructuring efforts, intercompany transactions between or among a Debtor
> and another Debtor, the formulation, preparation, dissemination,
> negotiation, filing, or consummation of the Definitive Documents, or any
> contract, instrument, release, or other agreement or document created or
> entered into in connection with the Definitive Documents, the pursuit of
> Confirmation of the Plan, the administration and implementation of the
> Wind Down, or upon any other act or omission, transaction, agreement,
> event, or other occurrence related to the Debtors taking place on or before
> the Effective Date.
> . . .
>
> For the avoidance of doubt, the releases by the Debtors do not extend to,
> and do not release, any properly pled direct claim against a Released Party
> held by a creditor.  For the purposes of the releases by the Debtors, properly
> pled direct claims against a Released Party are claims where the alleged
> conduct caused direct injury to the plaintiff-creditor distinct from any injury
> to the Debtors.

*See id.* at Article VIII.A.

32.    The section entitled "**Releases by Holders of Claims and Interests**" provides, in

part, that:

each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or recission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Platform Pause, the business or contractual arrangements between any Debtor and any Released Party, the FTX Loan Agreement, the 3AC Master Loan Agreements, the Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the administration and implementation of the Wind Down, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.

*See id*., at Article VIII.B.

33.    The provision further provides, in part:

any Entity (i) that opted out of the releases contained in this Article VIII.B or (ii) was deemed to reject the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.A. of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.A of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. The

> Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

*See id*.

34.     The Solicitation Packages sent to various claimants include opt-out forms or a ballot with a separate opt-out check box.  *See* Dkt. 1302.  As set forth in the definition of "Releasing Parties" in the Third Amended Joint Plan, a claimant that is entitled to vote but abstains from voting and does not affirmatively opt-out – in other words, does not return a ballot – will still be considered a Releasing Party.  *See* Dkt. 1309, ¶ 172(e).  Additionally, a claimant that votes to reject but does not also check the box to opt-out of the releases, will also be considered a Releasing Party.  *See id*., ¶ 172(f).

35.     The Opt-Out Forms provide,

> by opting out of the Third-Party Release set forth in Article VIII.B of the Plan, you will forego the benefit of obtaining the Debtor Release set forth in Article VIII.A of the Plan.  This means that the Wind-Down Trustee may pursue any claims and causes of action the Debtors have against you.
>
> If you do not opt out of the Third-Party Release, you will be released from any and all claims and causes of action the Debtors may have against you, except for Retained Preference Claims, if applicable.

*See* Dkt. 1302 (emphasis omitted).

### i.     Certain of the Debtor Releases are Overly Broad

36.     The Third Amended Joint Plan provides for a release by the Debtors to the Released Parties.  *See* Dkt. 1309, Article VIII.A.

37.     The Third Amended Joint Plan does not establish that each of the proposed Released Parties are providing adequate consideration in exchange for receiving such releases.  In

addition, certain persons included in the Released Party definition do not appear to be entitled to

such releases under applicable case law.

38.     In *In re Zenith Elecs. Corp.*, the Court identified five factors that are relevant to

determine whether a debtor's release of a non-debtor is appropriate:

> (1) an identity of interest between the debtor and non-debtor such that a suit
>     against the non-debtor will deplete the estate's resources;
>
> (2) a substantial contribution to the plan by the non-debtor;
>
> (3) the necessity of the release to the reorganization;
>
> (4) the overwhelming acceptance of the plan and release by creditors and
>     interest holders; and
>
> (5) the payment of all or substantially all of the claims of the creditors and
>     interest holders under the plan.

*See Zenith*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (*citing Master Mortgage Inv. Fund, Inc.*, 168

B.R. 930, 937 (Bankr. W.D. Mo. 1994).   These factors are neither exclusive nor conjunctive

requirements but provide guidance in the Court's determination of fairness.  *See Master Mortgage*,

168 B.R. at 935 (finding there is no "rigid test" to be applied in every circumstance and that the

five factors are neither exclusive, nor conjunctive).

39.     The first *Zenith* factor requires an "identity of interest between the debtor and the

third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will

deplete the assets of the estate."  *See In re Spansion, Inc.*, 426 B.R. 114, n. 47 (Bankr. D. Del.

2010), *citing Zenith*, 241 B.R. at 110.  An identity of interest exists when, among other things, the

debtor has a duty to indemnify the non-debtor receiving the release.  *See Wash. Mut.*, 442 B.R. at

347 (recognizing that indemnification may create an identity of interest thereby satisfying the first

factor of *Zenith*).  Here, it is unclear whether an identity of interest exists between the Debtors and

each of the Released Parties.

40.     The second *Zenith* factor involves whether the non-debtor party benefiting from the release made a substantial contribution of assets to the debtor's reorganization.  *See In re Congoleum Corp*., 362 B.R. 167, 193 (Bankr. D.N.J. 2007).  In considering releases, substantial contribution does not include contributions to the reorganization related to operational restructuring or negotiating for the financial restructuring.  *See In re Genesis Health*, 266 B.R. at 606-7 ("the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization.").  Here, it does not appear that each of the Released Parties provided a substantial contribution of assets.

41.     As to the third *Zenith* factor, there is no information provided to support a contention that all of the releases are necessary to a reorganization, or even an orderly liquidation.

42.     The fourth *Zenith* factor concerning acceptance of the plan cannot be assessed at this time as the Debtors have not filed a certification of ballots.  And the fifth *Zenith* factor is not satisfied as it does not appear that unsecured creditors will receive all or substantially all of their claims.  Accordingly, these factors do not support the Debtor Releases.

   **ii.     The Opt-Out Clause is Insufficient**

43.     The non-debtor third party releases cover those who do not affirmatively opt-out of the releases.[3]  Accordingly, the U.S. Trustee submits that these are not consensual third-party releases and are contrary to applicable case law, including the standards set forth in *Washington Mutual*.

---

[3] Impaired claimants that are deemed to reject are properly excluded from the definition of "Releasing Parties."

44.    In *Washington Mutual*, the Court held that "any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases."  *Wash. Mut.*, 442 B.R. at 355.  The Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place.").  *Id.* (emphasis added).  "*Failing to return a ballot is not a sufficient manifestation of consent to a third party release.*"  *Id.* (emphasis added), *citing In re Zenith Electronics Corp.*, 241 B.R. at 111.

45.    While the Court in *In re Indianapolis Downs*, LLC 486 B.R. 286 (Bankr. D. Del. 2013) reached a different conclusion regarding the need for affirmative consent to third party releases, the Court pointed out that, in that case, unlike the present, "the third party release provision does not apply to any party that is deemed to reject the Plan."  *Id.* at 305.

46.    The Court in *Spansion* also reached a different conclusion than *Washington Mutual* and the other cases cited above with respect to affirmative consent, but only with respect to releases given by unimpaired classes who were "being paid in full."  426 B.R. at 144.  In fact, in *Spansion*, the Court held that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan did not pass muster under applicable law, and therefore, "the proposed nonconsensual Third Party Release does not pass muster under Continental."  *See id.* at 145, *citing Continental Airlines*, 203 F.3d 203.

47.    In *Emerge Energy Services LP*, 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019), the Court rejected the debtor's argument that inferred consent from "silence" should be approved as typical, customary, and routine.  The Court held that failure to return a notice can be due to

"carelessness, inattentiveness, or mistake" rather than constituting the manifestation of intent to agree to a third-party release. *Id.*

48.     Here, claimants who do not return a ballot at all are treated as giving a release and claimants who vote to reject the plan but fail to take the extra step of checking an opt-out box – a step that may appear to be superfluous because they have already rejected the plan in its entirety – are also treated as giving a release.

49.     The Releases should only be granted against those creditors who affirmatively voted in favor of the Third Amended Joint Plan and that did not opt-out.

### iii.    The Non-Debtor Third-Party Releases are Not Fair and Necessary to the Reorganization

50.     Non-consensual third-party releases may only be approved under "special circumstances" if the releases are fair, necessary to the reorganization, and the debtor presents facts sufficient to enable the Court to make those findings. *See In re Continental Airlines*, 203 F.3d at 214.

51.     In *Continental Airlines*, the Third Circuit determined that fairness requires, among other things, a showing that sufficient consideration was given to creditors whose claims were to be released and that such consideration renders the plan feasible. 203 F.3d at 213-14. The Third Circuit further noted that the success of the plan must be based on the releases, and that there is an identity of interest between the debtor and the non-debtor so that the debtor would likely bear the costs of the litigation against the non-debtor. *See id.* at 216.

52.     In *Genesis Health*, the Court evaluated whether a non-consensual release fit the "hallmarks" discussed in *Continental* by considering whether: (i) the nonconsensual release was necessary to the success of the reorganization; (ii) the releasees provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the

plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release. In other words, to establish the necessity of such releases, the court declared that the debtors were required to demonstrate that the success of its reorganization was related to such non-consensual releases and the releasees provided a "critical financial contribution" that was necessary to render the plan feasible. *See id*. at 607.

53.     Here, the Debtors have not established the necessity of the releases.

### iv.    Gatekeeping Provision

54.     In addition, the Third Amended Joint Plan provides that any Entity may not assert any claim or Cause of Action against any Released Party without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.A of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. *See* Dkt. 1309, Article VIII.B (full provision set forth at paragraph 33).

55.     The effect of this language is to create a "gatekeeper" role for this Court. It forces a non-debtor who wishes to pursue a claim against another non-debtor to come to this Court – and only this Court – for a determination of whether such claim is "colorable." Thereafter, this Court would have the "sole and exclusive jurisdiction . . . to adjudicate the underlying claim or Cause of Action." These rules would apply even after these bankruptcy cases have been closed, thereby requiring the non-debtor seeking to pursue a claim against another non-debtor to first move to reopen the bankruptcy cases.

56.     The proposed required procedure, which is akin to that to be followed under *Barton v. Barbour*, 104 U.S. 126 (1881), prior to suing a bankruptcy trustee, should not be permitted. The

defense of "release" is an affirmative defense to a cause of action asserted in a court of law or other

tribunal.  Affirmative defenses cannot be adjudicated prior to the filing of the action to which such

defense relates.  Moreover, as to claims between non-debtors, there is no reason why the court in

which the relevant action has been filed cannot make the determination as to whether the claim

was released under the Plan.

57.    A similar provision was rejected by Judge Owens in the Bankruptcy Court for the

District of Delaware in *In re Gulf Coast Health Care, LLC*, et al, Case No. 21-11336 (JTD), where

she noted "the plan says what it says and other courts should be entitled to exercise their authority

to interpret it."  Further, "imposing such a requirement could also impose an unnecessary

administrative hurdle and cost the parties when these cases are closed."  *See Gulf Coast*, 5/4/22

Tr. at 30:18-23 (attached hereto as **Exhibit A**).

58.    Such provision requiring non-consenting parties to request authorization to bring a

claim or Cause of Action against a Released Party should be stricken from the Third Amended

Joint Plan.

**C.  The Injunction Provisions are Impermissible**

59.    The section of the Third Amended Joint Plan entitled "**Injunction and Bermuda**

**Implementation Mechanism**" provides as follows:

> The assets of the Debtors and the Wind-Down Debtors shall be used for the
> satisfaction of expense obligations and the payment of Claims and Interests
> only in the manner set forth in this Plan and shall not be available for any
> other purpose.  All Persons and Entities who have held, hold, or may hold
> Claims or Interests based on any act, omission, transaction, or other activity
> of any kind or nature related to the Debtors, the Wind-Down Debtors, or the
> Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other
> than as expressly provided in the Plan or the Confirmation Order, shall be
> precluded and permanently enjoined on and after the Effective Date from
> interfering with the use and Distribution of the Debtors' assets in the manner
> contemplated by the Plan.

Further, with effect from the entry of the Confirmation Order, each of the Bermuda Debtor's creditors and Holders of Interests is prohibited from interfering or opposing any Bermuda Implementation Mechanism and will be deemed to have irrevocably appointed the Bermuda Provisional Liquidators as its agent, nominee, proxy and representative with full power and authority and have otherwise instructed the Bermuda Provisional Liquidators in such creditor or Holder of Interests' name and on such creditor or Holder of Interests' behalf, to exercise all rights in relation to its Claim to vote in favor of any Bermuda Scheme of Arrangement at a meeting convened at the direction of the Bermuda Court for the purpose of considering a Bermuda Implementation Mechanism and to otherwise consent to and/or support the Bermuda Implementation Mechanism, and each such creditor or Holder of Interests agrees to and shall be bound by and comply with the Bermuda Implementation Mechanism as and from the time the Bermuda Implementation Mechanism becomes effective in accordance with Bermuda Law.

In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the release and exculpations set forth in Article VIII.A, Article III.B, and Article VIII.C of this Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by this Plan.

*See id*. at Article VIII.D.

60.     Pursuant to Section 524(a)(3), confirmation of a plan does not operate as an injunction.  Only a discharge operates as an injunction.  Instead, pursuant to Section 362(c), the automatic stay remains in effect until such time as a discharge is granted or the case is closed.  Additionally, pursuant to Section 1141(a), the provisions of a confirmed plan bind all parties, including debtors and creditors, to the terms of the plan.

61.     Because the Bankruptcy Code protects the Debtors by continuing the automatic stay until the earlier of entry of a discharge or the case is closed (11 U.S.C. § 362(c)), and by

binding all parties to the terms of the Third Amended Joint Plan (11 U.S.C. § 1141(a)), the U.S.

Trustee submits that Article III.D be removed.

### D. The Plan Cannot be Confirmed Because it is Not a Settlement Subject to Approval Under Bankruptcy Rule 9019

62.    Article IV.A. of the Plan, entitled "General Settlement of Claims and Interests"

provides:

> Except as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article VI of the Plan, all Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

*See* Dkt. 1309 at Article IV(A).

63.    Bankruptcy Rule 9019(a) confers discretion on the bankruptcy court to approve a

compromise or settlement on motion after notice and a hearing. Fed. R. Bankr. P. 9019(a).  "In

making its evaluation, the court must determine whether 'the compromise is fair, reasonable, and

in the best interest of the estate.'" *Wash. Mut.*, 442 B.R. at 328 (*quoting In re Louise's, Inc.*, 211

B.R. 798, 801 (D. Del. 1997)).

64.     Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to propose "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A).

65.     While a plan may incorporate a settlement, a plan and a settlement are not one and the same.  What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" is different than what may be permissible under a plan, which is subject to the requirements of sections 1123 and 1129 of the Bankruptcy Code.  *See, e.g., Tribune*, 464 B.R. at 176 (concluding at confirmation stage that a negotiated settlement could be approved because it was fair, reasonable and in the best interest of the Debtors' estates and making an express finding that the settlement was properly part of the plan pursuant to section 1123(b)(3)(A)).

66.     The language in Article IV.A. suggests that the Third Amended Joint Plan itself is a settlement agreement subject to approval under Bankruptcy Rule 9019.  Sending a plan to impaired creditors for a vote is not the same thing as parties negotiating a settlement among themselves.

67.     Further, Article IV.A. does not appear limited to the settlement of claims belonging to the Debtors or the estates and is therefore not permissible under section 1123(b)(3)(A). For a plan to incorporate a settlement of claims or causes of action of other parties, those parties must have expressly agreed to settle or compromise those items.

68.     Similarly, Article VIII.B, Releases by Holders of Claims and Interests, impermissibly seeks to provide for the settlement of third-party claims (i.e., the releases):

> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.B, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall

> constitute the Bankruptcy Court's finding that each release described in this
> Article VIII.B is: (1) in exchange for the good and valuable consideration
> provided by the Released Parties; (2) a good-faith settlement and
> compromise of such Causes of Action; (3) in the best interests of the
> Debtors and all Holders of Claims and Interests; (4) fair, equitable, and
> reasonable; (5) given and made after due notice and opportunity for hearing;
> (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any
> of the Releasing Parties or the Debtors or the Wind-Down Debtors or their
> respective Estates asserting any Cause of Action related thereto, of any kind,
> against any of the Released Parties or their property.

*See* Dkt. 1309 at Article VIII.B.

69.    The releases described in Article VIII.B of the Third Amended Joint Plan are not

part of any agreement between the Debtors and all parties affected by the Third Amended Joint

Plan.

70.    Moreover, under section 1123(b)(3)(A), the Third Amended Joint Plan may only

provide for the settlement of claims or interests belonging to the Debtors or the estate-not the

settlement of claims held by third parties.

71.    Also, Articles III.C.3(a), 3(b), 3(c), 3(d), 3(e), 4(a), 4(b) and 4(c) purport to treat

the distributive provisions of the Third Amended Joint Plan as if they were a Rule 9019

"settlement." Here, the Debtors have not articulated any justification for the request for additional

relief under Bankruptcy Rule 9019.

**E.  The Wind-Down Provisions**

72.    The Third Amended Joint Plan provides for the establishment of the Wind-Down

Debtors and appointment of a Wind-Down Trustee and the Wind-Down Debtors' Oversight

Committee, which will be the subject of the Wind-Down Trustee Agreement.  *See* Dkt. 1309,

Article IV.D.

73.    The Supplement instead provides for a Plan Administrator, an Oversight

Committee, and a Plan Administrator Agreement.  *See* Dkt. 1443.  As such, it appears that the

references in the Third Amended Joint Plan to Wind-Down Trustee, Wind-Down Debtors'
Oversight Committee and the Wind-Down Trust Agreement have been replaced with Plan
Administrator, Oversight Committee and Plan Administrator Agreement.

74.    Article IV.D. of the Third Amended Joint Plan includes an overbroad
indemnification and limitation of liability provision as it includes entities not in existence until the
Effective Date of the Third Amended Joint Plan. *See id.*, Article IV.D.12.  This provision should
not be included in the Third Amended Joint Plan, but rather in the Plan Administrator Agreement.
In fact, Section 5.2 of the Plan Administrator Agreement provides a limit of liability to the Plan
Administrator, the Oversight Committee, any Committee Settlement Parties that provide services
to the Wind-Down Debtors after the Effective Date, the Bermuda Provisional Liquidators, their
respective members, employees, employers, designees, or professionals, and any of their duly
designated agents or representatives.  *See* Dkt. 1443.  Section 5.9 of the Plan Administrator
Agreement provides the Wind-Down Debtors Parties with an indemnification. *See id.*  As such,
Article IV.D of the Third Amended Joint Plan is superfluous and unnecessary especially in light
of the fact that the Plan Administrator and the Wind-Down Debtors Parties, as defined in Article
IV.D.12 of the Third Amended Joint Plan, do not come into existence until after confirmation and
on the Effective Date.  Thus, there is no need for an indemnification and a limit of liability being
provided to entities not in existence.

### F.  Statutory Fees

75.    In the Third Amended Joint Plan the provision for statutory fees provides:

> [t]he Debtors and the Wind-Down Debtors, as applicable, shall pay all U.S.
> Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus any interest due
> and payable under 31 U.S.C. § 3717 on all disbursements, including Plan
> payments and disbursements in and outside the ordinary course of the
> Debtors' or the Wind-Down Debtors' business (or such amount agreed to
> with the U.S. Trustee or ordered by the Bankruptcy Court), for each quarter

(including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  On and after the Effective Date, the Wind-Down Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

*See* Dkt. 1309, Article II.G.

76.     The provision should be revised to reflect that the Debtors and the Wind-Down Debtors are joint and severally liable for the payment of statutory fees.

77.     The provision should be further revised to strike any qualifying language for the payment of the statutory fees.  Quarterly fees are provided for under 28 U.S.C. § 1930(a)(6) and are not subject to negotiation or court order.

## II.     <u>Reservation of Rights</u>

78.     The U.S. Trustee leaves the Debtors to meet their burden and reserves all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection.

## <u>CONCLUSION</u>

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny confirmation of the Third Amended Joint Plan, and grant such other relief as the Court deems just and proper.

Respectfully submitted,
ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: */s/ Jeffrey M. Sponder*
    Jeffrey M. Sponder
    Trial Attorney

    */s/ Lauren Bielskie*
    Lauren Bielskie
Dated: September 11, 2023    Trial Attorney