| | |
|---|---|
| **GIBBONS P.C.**<br>Robert K. Malone, Esq.<br>Kyle P. McEvilly, Esq.<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: (973) 596-4500<br>Email: rmalone@gibbonslaw.com<br>         kmcevilly@gibbonslaw.com<br><br>*Counsel for Ankura Trust Company, LLC,*<br>*as Indenture Trustee* | **HOGAN LOVELLS US LLP**<br>David P. Simonds, Esq. (*pro hac vice*)<br>Edward J. McNeilly, Esq. (*pro hac vice*)<br>1999 Avenue of the Stars, Suite 1400<br>Los Angeles, California 90067<br>Telephone: (310) 785-4600<br>Email: david.simonds@hoganlovells.com<br>         edward.mcneilly@hoganlovells.com<br><br>Christopher R. Bryant, Esq. (*pro hac vice*)<br>390 Madison Avenue<br>New York, New York 10017<br>Telephone: (212) 918-3000<br>Email: chris.bryant@hoganlovells.com<br><br>*Counsel for Ankura Trust Company, LLC,*<br>*as Indenture Trustee* |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In re:**<br><br>**BLOCKFI INC., *et al*.,**[1]<br><br>                    **Debtors.** | Hon. Michael B. Kaplan<br>Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br><br>**Hrg. Date: Sept. 26, 2023 at 1:00p.m. (ET)**<br>**Obj. Deadline: Sept. 11, 2023 at 4:00p.m. (ET)** |

**LIMITED OBJECTION OF ANKURA TRUST COMPANY, LLC TO THIRD
AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR
AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

1

\\4140-4742-8170 v11

Ankura Trust Company, LLC ("**Ankura**" or the "**Indenture Trustee**"), as indenture trustee under an indenture (as supplemented from time to time, the "**BIA Indenture**"), dated as of April 14, 2022, between BlockFi Inc. ("**BlockFi**") and the Indenture Trustee relating to the BlockFi Interest Accounts that are registered on BlockFi's books and records as owned by Holders (as defined in the BIA Indenture) residing in the United States, hereby submits this limited objection (this "**Objection**") to the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1309] (the "**Plan**"). [2] In support hereof, Ankura relies upon the *Declaration of Robert K. Malone Pursuant to 28 U.S.C. 1746 in Support of the Limited Objection of Ankura Trust Company, LLC to Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* ("**Malone Decl.**"), attached hereto as **Exhibit 1**, and further represents as follows:

## PRELIMINARY STATEMENT

1. In February 2022, faced with multiple federal and state investigations concerning federal and state securities law violations, BlockFi Lending LLC ("**BlockFi Lending**") agreed to a Cease and Desist Order (the "**Consent Decree**") with the Securities and Exchange Commission (the "**SEC**"), and similar settlements with state regulators, to resolve claims that BlockFi Lending had been violating the Securities Act of 1933 (the "**Securities Act**") and operating as an unregistered investment company in violation of the Investment Company Act of 1940 (the "**Investment Company Act**"). The Consent Decree not only subjected the Debtors to a significant fine, but also compelled the Debtors to seek to come into regulatory compliance.

2. An integral component of this regulatory compliance was the transfer of the existing interest accounts of U.S. holders from BlockFi Lending to BlockFi, and the execution of

---

[2] Unless otherwise indicated, capitalized terms used but not defined in this Objection shall have the meanings ascribed to such terms in the Plan.

2

\\4140-4742-8170  v11

an indenture qualified under the Trust Indenture Act of 1939 (the "**Trust Indenture Act**") – the BIA Indenture – to protect the rights of Holders. Ankura was willing to serve as indenture trustee under this novel and highly unusual situation, and thus helped BlockFi seek to meet its regulatory obligations. However, since filing the Chapter 11 Cases, BlockFi appears to consider the BIA Indenture and the Indenture Trustee as inconveniences to be ignored or cast aside selectively rather than as integral parts of the Plan process. Specifically, BlockFi has refused to include in the Plan market-standard provisions, customarily included in chapter 11 plans involving an indenture, (1) providing that the Indenture Trustee serves as, or has the right to appoint, a distribution agent for distributions to be made to its constituents under the Plan (i.e., the U.S. BlockFi Interest Account Holders, which are classified under Class 4-c of the Plan), (2) preserving the Indenture Trustee's charging lien under Section 507 of the BIA Indenture, and (3) allowing the Indenture Trustee to assert its contractual right under the BIA Indenture to apply money, assets or other property that it or certain others receive to pay its fees, expenses and indemnities in priority to payments to Holders (e.g., the Indenture Trustee's contractual right under Section 406 of the BIA Indenture to apply money, digital assets or other property collected by it, BlockFi or any paying agent, registrar, transfer agent or person acting in a similar capacity to payments of its fees, expenses and indemnities in priority to payments to Holders).

3.    The Plan not only violates the Indenture Trustee's vested contractual rights and market standards and norms, if confirmed, it would set a dangerous precedent that a debtor, faced with allegations of serious regulatory misconduct, can execute an indenture to placate the regulator, but then ignore the provisions of that indenture when it suits the debtor. In addition, if the Debtors continue to refuse to allow the Indenture Trustee to assert its priority rights under the BIA Indenture with respect to its fees, expenses and indemnities, this refusal will have a chilling

3

effect on the market and the willingness of qualified fiduciaries and trust institutions to serve as indenture trustee, particularly in specialized situations in which the indenture is being overlaid on digital assets or accounts or other non-traditional structures.

4. Unless modified to preserve the Indenture Trustee's rights as described in this Objection, the Plan should not be confirmed.

## RELEVANT FACTUAL BACKGROUND

### A. BlockFi Enters into a Consent Decree with the SEC and Makes Changes to its Business Model, including Execution of the BIA Indenture

5. BlockFi Lending agreed to the Consent Decree with the SEC to resolve claims brought by the SEC concerning federal securities law violations. To comply with the Consent Decree, and to seek to bring itself into regulatory compliance, on February 14, 2022, BlockFi Lending filed with the SEC an application on Form T-3 and a Form T-1 to qualify an indenture, with Ankura as indenture trustee, for interest accounts called BlockFi Lending Accounts. The BlockFi Lending indenture was executed on February 28, 2022, and supplemented on March 31, 2022.

6. On April 4, 2022, BlockFi filed a Form T-3 with the SEC to apply to qualify an indenture under the Trust Indenture Act, with Ankura as indenture trustee, in relation to the BlockFi Interest Accounts, which were to replace the BlockFi Lending Accounts for U.S. holders, with BlockFi taking over BlockFi Lending's obligations. Paragraph 2 of the April 4, 2022 Form T-3 stated:

> The Company [BlockFi Inc.] will provide an interest-bearing account called the BlockFi Interest Account ("Account"), which allows holders to earn interest on supported digital assets. The Accounts will be governed by the Indenture (as defined below) to be qualified under this Application for Qualification on Form T-3.

4

\\4140-4742-8170 v11

> BlockFi Lending LLC ("BlockFi Lending"), a wholly-owned subsidiary of the Company, currently provides an interest-bearing account ("BlockFi Lending Account") that is identical to the Accounts in all material respects. In accordance with the terms of the BlockFi Lending Accounts, the Company will fully and unconditionally assume BlockFi Lending's obligations thereunder and, subsequent to the qualification of the Indenture under this Application for Qualification on Form T-3, such BlockFi Lending Accounts will be exchanged for a like amount of Accounts, in accordance with their terms.

*See* Malone Decl., Ex. A, 000102.

7. The April 4, 2022 Form T-3 contained a Form of Notice of Exchange that included the following statements:

> ***In connection with BlockFi's previously announced SEC settlement, we are changing the obligor of BlockFi Interest Accounts of U.S. clients from BlockFi Lending LLC to BlockFi Inc***. This means that BlockFi Interest Accounts for U.S. clients will be obligations of the parent entity, BlockFi Inc., instead of BlockFi Lending LLC (a wholly owned subsidiary of BlockFi Inc.).
>
> To implement the change, BlockFi Inc. will initially assume BlockFi Lending's obligations under the BlockFi Interest Accounts of our U.S. clients, effective [ ]. Subsequent to the assumption, we will exchange the BlockFi Interest Accounts of our U.S. clients at BlockFi Lending LLC for BlockFi Interest Accounts at BlockFi Inc. We expect the exchange to be completed on [ ].

April 4, 2022 Form T-3, Ex. T3E-1 (emphasis added); Malone Decl., Ex. A, 000240. On April 12, 2022, BlockFi published this notice in this exact form (with the missing dates completed) to its customers on its website. *See* Malone Decl., Ex. B, 000248-000249.

8. In summary, the following occurred: (a) on April 13, 2022, BlockFi assumed BlockFi Lending's obligations under the BlockFi Lending Accounts; (b) on April 14, 2022, BlockFi created the BlockFi Interest Accounts in exchange for the BlockFi Lending Accounts of U.S. holders; (c) on April 14, 2022, the BIA Indenture was qualified under the Trust Indenture Act; and (d) on April 14, 2022, BlockFi and Ankura executed the BIA Indenture. *See* Malone Decl., Ex. C. Ankura understands that these changes were made to seek to resolve alleged breaches of the Investment Company Act by BlockFi Lending.

### B. The BIA Indenture Governs the BlockFi Interest Accounts

9. The BlockFi Interest Accounts are subject to the BIA Indenture. Therefore, the Debtors must comply with the BIA Indenture's terms. The recitals to the BIA Indenture state that "[t]he Company has duly authorized the execution and delivery of this Indenture with respect to the operation of its BlockFi Interest Account product, which allows Holders to earn interest on supported digital assets (herein called the "Accounts", and each, an "Account")." The terms and conditions of the BlockFi Interest Accounts for U.S. holders on BlockFi's website, which were last modified April 14, 2022, have at all relevant times[3] stated "[t]hese Interest Account Terms are incorporated by reference into the BlockFi Terms of Service and Wallet Terms found here: https://blockfi.com/terms/. Further, the Crypto Interest Accounts are operated by us under an Indenture ("Indenture") with Ankura Trust Company, LLC, as trustee, a form of which can be found here." *See* Malone Decl., Ex. D, 000297. The word "here" contains a hyperlink to the form of indenture that was included as an exhibit to the Form T-3 filed by BlockFi with the SEC on April 4, 2022, which form was substantively similar to the indenture ultimately qualified and executed on April 14, 2022.

10. "In addition, Section Q.2 of the BlockFi Interest Accounts terms and conditions found on BlockFi's website have from April 14, 2022 through to present day, including the Petition Date, stated that "[a]s long as your Crypto Interest Account remain outstanding under the BIA Indenture, electronic access, at any time and from time to time, to records maintained by us will be available to the Trustee…." *See* Malone Decl., Ex. D, 000305.

11. The Debtors have frequently relied on their terms of service, terms and conditions and standard form agreements in contested matters and other disputes in these Chapter 11 Cases.

---

[3] The terms and conditions that currently appear on BlockFi's website state "Interest Account Terms Last Modified: 4/14/2022."

For example, in the Wallet Motion, the Debtors successfully relied on the "BlockFi Wallet Terms" and "BlockFi Terms of Services" to prevail in their argument that attempted transfers from BlockFi Interest Accounts to Wallet Accounts after November 10, 2022 at 8:15 p.m. (Eastern time) were void. Further, the Declaration of Amit Cheela, BlockFi's Chief Financial Officer [Docket No. 804] (the "**Cheela Declaration**"),[4] submitted in support of the Debtors' "Wallet Motion" [Docket No. 121] states:

> The use of BlockFi's platform is governed by a general terms of service (the "BlockFi General Terms of Service"), attached hereto as Exhibit A. The following terms of service for the Debtors' specific products and services are each incorporated by reference into and made a part of the BlockFi General Terms of Service (collectively, the "BlockFi Terms of Service"):…(b) the U.S. Interest Account Terms, attached hereto as **Exhibit C** (the "BlockFi BIA…US Terms of Service")…Under the BlockFi General Terms of Service, by choosing to use the Debtors' products and services, a client agrees to the BlockFi General Terms of Service and any other applicable terms of service."

Cheela Declaration ¶¶ 5-6 (footnotes omitted).

12. In addition, the Debtors' reply in support of the Wallet Motion [Docket No. 805] stated, "No Objecting Party argues that the BlockFi Terms of Service were not binding upon them." Docket No. 805 ¶ 13. Page 19 of the slide presentation the Debtors made to the Court on May 8, 2023 at the hearing on the Wallet Motion provided as follows (*See* Malone Decl., Ex. E, 000327):

---

[4] Mr. Cheela submitted an Amended Declaration at Docket No. 822. None of the paragraphs of the Cheela Declaration referenced in this objection changed in the Amended Declaration.



Page 46 of the May 8, 2023 presentation specifically relied on the BlockFi Interest Account Terms of Service for U.S. Holders: *See* Malone Decl., Ex. E, 000354.



13. The Court accepted the Debtors' argument, granting the Wallet Motion. *See* Order Granting Wallet Motion [Docket No. 923].

### C. The BIA Indenture and the Trust Indenture Act Set Forth Rights for the Indenture Trustee

14. The BIA Indenture is subject to the Trust Indenture Act. The Indenture Trustee has the rights set forth in the BIA Indenture and in the Trust Indenture Act. The Debtors are required to recognize the Indenture Trustee's rights and duties under the BIA Indenture and Trust Indenture Act. These rights include:

- Right to payment by BlockFi of the Indenture Trustee's compensation, reasonable expenses, disbursements and advances, and indemnification against loss, liability and expense. *See* BIA Indenture, Section 507 (Malone Decl. Ex. C, 000281, 000282).

- A charging lien. *See id.* (Malone Decl. Ex. C, 000282) ("To secure the Company's payment and indemnification obligations under this Indenture, the Trustee shall have a lien prior to the Accounts on all, or any right to payment of, money, digital assets or other property held, collected or distributed by or on behalf of the Company, the Trustee, any paying agent, registrar, transfer agent, or any other Person acting in similar capacity.").

- To file proofs of claim against BlockFi. *See* BIA Indenture, Section 404 (Malone Decl. Ex. C, 000273).[5]

- To "collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same." *See* BIA Indenture, Section 404 (Malone Decl. Ex. C, 000273). The claims covered by Section 404 include bankruptcy proceedings.

---

[5] *See also* Trust Indenture Act section 317(a)(2), Bankruptcy Code section 501(a) and Bankruptcy Rule 3003(c)(1). On March 30, 2023, the Indenture Trustee filed a proof of claim (Claim No. 15892).

9

- That "any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents, advisors and counsel, and any indemnification payments and other amounts due the Trustee under Section 507." *See* BIA Indenture, Section 404 (Malone Decl. Ex. C, 000274).

- That any money or other property collected by the Indenture Trustee pursuant to Article Four of the BIA Indenture shall be applied: "FIRST: To the payment of all amounts due the Trustee under Section 507; SECOND: To the payment of the amounts then due and unpaid for principal of and interest on the Accounts in respect of which or for the benefit of which such money has been collected…." BIA Indenture 406 (Malone Decl. Ex. C, 000274-000275).

D. **Events in the Chapter 11 Cases**

15.     The Indenture Trustee has repeatedly requested that the Debtors include in the Plan customary language providing for, among other things and in summary, (a) the payment of the Indenture Trustee's fees, expenses and indemnities, (b) recognition of the Indenture Trustee's charging lien and (c) the Indenture Trustee's right to serve as, or to appoint, a distribution agent under the Plan with respect to the U.S. BlockFi Interest Accounts, such that the Indenture Trustee may make payments in accordance with the contractual priority of payments set forth in the BIA Indenture. However, the Debtors have refused to include any such provisions in the Plan.

16.     While the Debtors agreed to include in the Disclosure Statement an insert from the Indenture Trustee that the Indenture Trustee had the right to serve as distribution agent with respect

\\4140-4742-8170  v11

to the U.S. BlockFi Interest Accounts, the Disclosure Statement explicitly stated that "Debtors disagree with Ankura's assertions that it is entitled to serve as the distribution agent under the Plan." Disclosure Statement, Section VIII.B(1)(b) at 73.

## OBJECTION

17. The Indenture Trustee objects to the Plan, and requests that the Court not confirm the Plan, unless it is modified (a) to provide that the Indenture Trustee serves as, or has the right to appoint, a distribution agent for distributions to be made to Holders under the Plan, (b) to provide that the Indenture Trustee may assert its charging lien and (c) to respect explicitly the Indenture Trustee's contractual right to apply money, digital assets or other property collected by it, BlockFi or any paying agent, registrar, transfer agent or person acting in a similar capacity to payments of its fees, expenses and indemnities in priority to payments to Holders.

### A. The Plan May Not Ignore the Indenture Trustee's Contractual Right to Serve as Distribution Agent and to Exercise its Charging Lien

18. The BIA Indenture is a contract, the provisions of which, including the charging lien, are binding on the Debtors and enforceable in bankruptcy. *See, e.g., Nortel Networks Inc.*, No. 09-10138(KG), 2017 WL 932947, at *9 (Bankr. D. Del. Mar. 8, 2017), which states, in part:

> The contract, i.e., the Indenture, provides for payment of the Indenture Trustees' and its attorneys' fees incurred in the fee dispute. Section 606(b) requires the Debtors, i.e., the Issuers, to indemnify the Indenture Trustee for "costs and expenses of defending itself ...." Section 606(d) entitles the Indenture Trustee to exercise a charging lien against distributions to secure payment...The Indenture Trustee and its lawyers are therefore awarded their fees for the fee dispute.

19. In addition, the Plan purports to cancel all indentures "[o]n the later of the (a) Effective Date and (b) the Distribution Date" (Plan, Article IV.I) and reject all Executory Contracts and Unexpired Leases to the extent not expressly assumed under the Plan (*see* Plan, Article V). To the extent the Court were to find that the BIA Indenture is an executory contract (which the Indenture Trustee does not concede) and authorized the Debtors to reject the BIA

11

Indenture, such rejection would not affect or remove the Indenture Trustee's vested right to serve as or appoint a distribution agent with respect to distributions to Holders, to collect money and receive moneys or other property payable or deliverable on accounts of the claims of the Holders and the Indenture Trustee in the Chapter 11 Cases, and to distribute the same, and to exercise its charging lien. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1666, 203 L. Ed. 2d 876 (2019) ("[W]e hold that under Section 365, a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside bankruptcy. Such an act cannot rescind rights that the contract previously granted."). Moreover, as discussed in Section III.B below, even if rejection of the BIA Indenture could alter the relationship between the Debtors and the Indenture Trustee, rejection would not impact the rights of the Indenture Trustee under the BIA Indenture vis-à-vis the Holders.

20. The Plan in addition represents a departure from provisions typically included in chapter 11 plans involving indentures and indenture trustees. Such chapter 11 plans customarily provide (i) that distributions to holders are made through the indenture trustee or at the indenture trustee's direction, (ii) for the explicit recognition and preservation of the indenture trustee's charging lien, and (iii) that payments to holders are subject to the indenture trustee's contractual right to apply money or property that it receives to pay its fees, expenses and indemnities in priority to payments to holders.[6] The Indenture Trustee and its counsel are not aware of any chapter 11 plan, other than the present Plan, where the debtor has chosen simply to ignore the indenture, the indenture's distribution mechanisms, and the indenture trustee's rights under the indenture.

---

[6] *See, e.g., In re Cineworld Group PLC*, Case No. 22-90168 (MI) (Bankr. S.D. Tex. June 6, 2023), Docket No. 1943, Articles IV.I, VII.D.2; *In re Avaya Inc.*, Case No. 23-90088 (DRJ) (Bankr. S.D. Tex. Mar. 3, 2023), Docket No. 325, Articles IV.H, VI.D(2); *In re Altera Infrastructure L.P.*, Case No. 22-90130 (MI) (Bankr. S.D. Tex. Nov. 3, 2022), Docket No. 516 Articles IV.G, VI.D(5); *In re Intelsat S.A.*, Case No. 20-32299-KLP (Bankr. E.D. Va. Dec. 17, 2021), Docket No. 3891, Articles IV.M, VI.E(2). These chapter 11 plans are voluminous. Copies are available on demand from the Indenture Trustee's counsel.

12

## B. The Terms and Conditions are Binding on Holders and the Debtors are Estopped from Arguing that such Terms are Invalid

21. All Holders of BlockFi Interest Accounts are subject to the General Terms of Service and to the BlockFi Interest Account Terms of Service described in paragraphs 9 through 12 above. In *In re Celsius Network LLC*, 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023), leave to appeal denied, No. 23-CV-523 (JPO), 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023), the bankruptcy court relied on Celsius's "unambiguous Terms of Use" to find that "when the cryptocurrency assets (including stablecoins, discussed in detail below) were deposited in Earn Accounts, the cryptocurrency assets became Celsius's property; and the cryptocurrency assets remaining in the Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates (the "Estates")." The BlockFi Terms of Service are equally clear: ("[T]he Crypto Interest Accounts are operated by us under an Indenture…with Ankura Trust Company, LLC, as trustee, a form of which can be found here.").[7]

22. Moreover, the Debtors are bound by the BlockFi Interest Account Terms of Service and are estopped from arguing otherwise. "The basic principle of judicial estoppel ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). Here, the Debtors are doing precisely that. As evidenced in their prosecution of the Wallet Motion, the Debtors relied heavily on BlockFi's contractual terms of service to argue, successfully, that transfers from BlockFi Interest Accounts to Wallet Accounts attempted after a specified date were invalid. By refusing to include in the Plan the market-standard rights and protections afforded

---

[7] The word "here" contains a hyperlink to the form of indenture that was included as an exhibit to the Form T-3 filed by BlockFi with the SEC on April 4, 2022, which form was substantively similar to the indenture ultimately qualified under the Trust Indenture Act and executed on April 14, 2022.

to the Indenture Trustee by the BIA Indenture, and to which the BlockFi Interest Accounts are expressly subject pursuant to the BlockFi Interest Account Terms of Service, the Debtors are ignoring the BIA Indenture and treating it as void or unenforceable against them, and in doing so are taking an inconsistent position, which this Court should reject.

### C. Permitting the Debtors to Ignore the BIA Indenture Would Set a Dangerous and Undesirable Precedent

23.     If the Debtors are not prevented from ignoring the Trust Indenture Act-qualified BIA Indenture, it would set a dangerous and undesirable precedent that would negatively impact the capital markets. As discussed above, in February 2022, BlockFi Lending accepted the Consent Decree to resolve serious allegations that it was selling unregistered securities in violation of the Securities Act and acting as an unauthorized investment company contrary to the Investment Company Act. As the Debtors unequivocally stated in multiple filings made to the SEC, the qualification and execution of the indentures (first, the indenture with BlockFi Lending and subsequently the BIA Indenture and the exchange of the BlockFi Lending Accounts for the BlockFi Interest Accounts) were undertaken specifically to comply with the terms of the Consent Decree and to come into regulatory compliance. Indeed, the Debtors were at pains to persuade this Court that BlockFi, in contrast to FTX, was a reputable organization. *See* Paragraph 2 of the Declaration of Mark A. Renzi In Support of Debtors' Chapter 11 Petitions and First-Day Motions [Docket No. 17] (the "**First Day Declaration**"). In the First Day Declaration, Mr. Renzi claimed:

> Although the Debtors' exposure to FTX is a major cause of this bankruptcy filing, the Debtors do not face the myriad issues apparently facing FTX. Quite the opposite. Since its founding, BlockFi has been focused on providing best-in-class financial services and offering (sometimes creating) industry-leading protections. BlockFi adopted corporate governance and risk management processes and took several other actions to protect its clients—***including reaching a settlement with the U.S. Securities and Exchange Commission (the "SEC") and working diligently to register potentially relevant products and halt the use of products that the SEC was investigating***—because doing so was in the best interest of its

clients. With extensive financial and regulatory controls in place, the Debtors have worked around the clock with their advisors, including myself, to develop a strategy positioning the Debtors for a successful emergence from these chapter 11 cases.

First Day Declaration, ¶ 2 (emphasis added).

24. Therefore, given the basis upon which the BIA Indenture was entered into, BlockFi should not be permitted now to treat the BIA Indenture as if it did not exist after BlockFi has reaped the substantial benefits of having entered into it.

25. Moreover, if the Indenture Trustee is unable to assert its priority lien, which is provided for under the BIA Indenture with respect to its fees, expenses and indemnities, it will have a chilling effect on the willingness of qualified fiduciaries and trust institutions to serve as indenture trustee, particularly in specialized situations where the indenture is being overlaid on digital assets or accounts or other non-traditional structures to assist and facilitate the implementation of regulatory settlement requirements.

## NOTICE

26. Copies of the within Objection have been provided to: (i) co-counsel to the Debtors, Kirkland & Ellis LLC, Haynes and Boone, LLP, and Cole Schotz P.C.; (ii) co-counsel to the Official Committee of Unsecured Creditors, Brown Rudnick LLP and Genova Burns LLC; and (iii) the Office of the United States Trustee for Region 3 via e-email and electronically, and all other parties having formally requested notice electronically via the Court's CM/ECF system.

## CONCLUSION

27. For the foregoing reasons, the Indenture Trustee respectfully requests that the Court deny confirmation of the Plan unless it is modified (a) to provide that the Indenture Trustee serves as, or has the right to appoint, a distribution agent for distributions to be made to U.S. BIA Account Holders under the Plan, (b) to provide that the Indenture Trustee may assert its charging lien and (c) to allow the Indenture Trustee to assert its contractual right under the BIA Indenture to apply

15

\\4140-4742-8170  v11

money or property that it or certain others receive to pay its fees, expenses and indemnities in priority to payments to Holders.

| | |
|---|---|
| Dated:  September 11, 2023<br>Newark, New Jersey | By: */s/ Robert K. Malone*<br>**GIBBONS P.C.**<br>Robert K. Malone, Esq.<br>Kyle P. McEvilly, Esq.<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: (973) 596-4500<br>Email: rmalone@gibbonslaw.com<br>             kmcevilly@gibbonslaw.com<br><br>**HOGAN LOVELLS US LLP**<br>David P. Simonds, Esq. (*pro hac vice*)<br>Edward J. McNeilly, Esq. (*pro hac vice*)<br>1999 Avenue of the Stars, Suite 1400<br>Los Angeles, California 90067<br>Telephone: (310) 785-4600<br>Email: david.simonds@hoganlovells.com<br>             edward.mcneilly@hoganlovells.com<br><br>Christopher R. Bryant, Esq. (*pro hac vice*)<br>390 Madison Avenue<br>New York, New York 10017<br>Telephone: (212) 918-3000<br>Email: chris.bryant@hoganlovells.com<br><br>*Counsel for Ankura Trust Company, LLC,*<br>*as Indenture Trustee* |

16

\\4140-4742-8170  v11