**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered)<br>**Hearing Date: October 10, 2023, at 11:00 a.m. (ET)**<br>**Response Deadline: October 3, 2023**<br>**Oral Argument Waived Unless Objections Timely Filed** |

**NOTICE OF HEARING ON DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS BY
AND AMONG BLOCKFI LENDING LLC AND US FARMS & MINING
OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order*

*(I) Authorizing and Approving the Settlement and Release of Claims By and Among BlockFi*

---

[1] The Debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

*Lending LLC and US Farms & Mining Opportunity Fund, LLC and (II) Granting Related Relief*
(the "9019 Motion") will be held on **October 10, 2023 at 11:00 a.m. (prevailing Eastern Time)**
or as soon thereafter as counsel may be heard (the "Hearing") before the Honorable Chief Judge
Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second
Floor, Courtroom 8, Trenton, NJ 08608.

**PLEASE TAKE FURTHER NOTICE** that the 9019 Motion and its attachments set forth
the relevant factual bases upon which the relief requested should be granted. The Debtors shall
rely on the *Certification of Mark A. Renzi* filed contemporaneously herewith. A proposed order
granting the relief requested in the 9019 Motion is also attached to the 9019 Motion as Exhibit B.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in
the 9019 Motion shall: (a) be in writing; (b) state with particularity the basis of the objection; and
(c) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who
regularly practice before the Bankruptcy Court in accordance with the General Order Regarding
Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002
(the "General Order") and the Commentary Supplementing Administrative Procedures dated as of
March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental
Commentary and the User's Manual for the Electronic Case Filing System can be found at
www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other
parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in
accordance with the General Order and the Supplemental Commentary, so as to be received on or
before **October 3, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the 9019 Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the 9019 Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Kroll Restructuring Administration, LLC at https://restructuring.ra.kroll.com/blockfi. You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: September 11, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS BY AND AMONG BLOCKFI LENDING LLC AND US FARMS & MINING OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

    The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (the "Motion"):

---

[1] The Debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

## **Preliminary Statement**

1.      The Debtors file this Motion to memorialize and finalize a settlement between US Farms & Mining Opportunity Fund ("US Farms") and BlockFi Lending LLC ("BlockFi Lending," and together with US Farms, the "Parties") with respect to that certain Asset Purchase Agreement (the "Purchase Agreement") between the Parties, including the Parties' mutual release of claims. The terms of such settlement are reflected in that certain Settlement Agreement and Release of Claims dated as of August 30, 2023, by and among BlockFi Lending and US Farms (the "US Farms Settlement"), a copy of which is attached hereto as **Exhibit A**. The Debtors, in consultation with the Committee, believe that the US Farms Settlement represents the best possible resolution of the Parties' dispute regarding the Purchase Agreement. Accordingly, the Debtors respectfully submit that entry of an order approving the US Farms Settlement is in the best interests of the Debtors' estates, creditors, and other stakeholders.

## **Requested Relief**

2.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Proposed Order"), (a) approving BlockFi Lending's entry into the US Farms Settlement, and (b) granting related relief.

## **Jurisdiction and Venue**

3.      The United States Bankruptcy Court for the District of New Jersey (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a), 362(d) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002(a)(3), 6004, 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002, 9019-3, and rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

### I.    The Chapter 11 Cases

6.      On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the First Day Declaration [Docket No. 17] and incorporated by reference herein.

7.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 130].

8.      On May 12, 2023, BlockFi filed its *First Amended Joint Chapter 11 Plan* [Docket No. 875], as amended on June 28, 2023 [Docket No. 1132] and July 31, 2023 [Docket No. 1300] (collectively, and as may be further amended from time to time, the "Plan") and the accompanying Disclosure Statement [Docket No. 874], as amended on June 28, 2023 [Docket No. 1133] and July

31, 2023 [Docket No. 1301] (collectively, and as may be further amended from time to time, the "Disclosure Statement").

**II.    The Sale of Mining Equipment to US Farms**

9.    As set forth in the *Debtors' Motion for Entry of an Order (I) Approving the Sale of Certain of the Debtors' Self-Mining Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, and (III) Granting Related Relief* [Docket No. 571] (the "Sale Motion"), the Debtors' conducted a competitive auction to solicit third-party bids to purchase a total of 6,376 self-mining machines (the "Machine Assets") belonging to BlockFi Lending and originating from either Norway (the "Norwegian Machines") or the United States (the "U.S. Machines"). After US Farms emerged as the successful bidder at auction with a winning bid of $4,675,000 (the "Purchase Price"), the Debtors filed the Sale Motion seeking approval from the Court to enter into the Purchase Agreement, dated as of March 1, 2023, by and between US Farms, as Purchaser, and BlockFi Lending, as Seller.[2] A true and correct copy of the Purchase Agreement was annexed to the proposed order submitted to the Court with the Sale Motion.

10.    On March 23, 2023, the Court entered an order [Docket No. 669] (the "Sale Order") approving the form of Purchase Agreement attached to the Sale Motion and authorizing BlockFi Lending's sale of Machine Assets to US Farms thereunder. The Closing occurred on or about April 4, 2023.

11.    Under the terms of the Purchase Agreement, $627,500 of the Purchase Price is being held in escrow (the "Holdback") pending a joint written instruction by the Parties instructing

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

the escrow agent to release the Holdback. As of the date hereof, the entire amount of the Holdback

remains with the escrow agent.

**III.     The Parties' Dispute and the Key Terms of Settlement**

12.     Under the terms of the Purchase Agreement, US Farms and BlockFi Lending are

each entitled to inspect the Machine Assets delivered to US Farms under the Purchase Agreement.

The Purchase Price is subject to reduction (up to certain caps as set forth in the Purchase

Agreement) based on defects discovered during inspection or non-delivery of any of the

contracted-for Machine Assets.

13.     US Farms and BlockFi Lending both inspected the Machine Assets delivered and

disagree regarding the extent to which the Machines Assets are defective or were otherwise not

properly delivered in accordance with the Purchase Agreement (collectively, the "Non Working

Condition Machines"). Accordingly, US Farms and BlockFi Lending disagree regarding the

appropriate Purchase Price adjustment and resulting credit to US Farms, which will be remitted to

US Farms from the Holdback.

14.     On or about June 27, 2023, US Farms sent a demand letter to BlockFi Lending

asserting various claims and causes of action totaling nearly $1 million (collectively, the "US

Farms Claims"). Since then, the Parties have engaged in good-faith, arms'-length negotiations,

which ultimately resulted in the US Farms Settlement. Through the US Farms Settlement, the

Parties will maximize value by settling all potential issues, claims and causes of action against one

another arising out of the Purchase Agreement and the sale of Machine Assets thereunder in

exchange for a $527,500 reduction of the Holdback (the "Settlement Amount"), which, if the US

Farms Settlement is approved, would be remitted to US Farms (instead of BlockFi Lending) in full

and final satisfaction of the US Farms Claims and in exchange for comprehensive mutual releases

of liability.

## Basis for Relief

**I.    The US Farms Settlement Satisfies the Standards of Bankruptcy Rule 9019 and Should Be Approved.**

15.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Bankruptcy Rule 9019(a).

Moreover, section 105(a) of the Bankruptcy Code provides that that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

16.    Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)); *see also Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (Settlements are considered "a normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly.") (citations omitted) (decided under the Bankruptcy Act)). Furthermore, it is well established that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that "[s]ettlements are favored [in bankruptcy]"); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same). Accordingly, when required, "courts are able to craft flexible

remedies that, while not expressly authorized by the [Bankruptcy] Code, affect the result the [Bankruptcy] Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003).

17.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citations omitted)); *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citations omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."). "Ultimately, the decision whether or not to approve a settlement agreement lies within the sound discretion of the Court." *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).

18.     In *Martin*, the Third Circuit set forth a four-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also In re Nutraquest*, 434 F.3d at 644–45 (applying *Martin's* four-factor test to affirm district court's

order approving settlement); *Nebo Ventures, LLC v. Stanziale (In re Novapro Holdings, LLC)*, No. 18-766-RGA, 2019 U.S. Dist. LEXIS 49047 (D. Del., Mar. 5, 2019) (applying *Martin's* four-factor test to affirm bankruptcy court's order approving settlement); *Key3Media*, 336 B.R. at 93 (holding that, when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

19.     A settlement should be approved if it falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008); s*ee also In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."); *Nortel*, 522 B.R. at 510 (same).

20.     The US Farms Settlement is fair and reasonable and is clearly in the best interests of the Debtors' estates. It should therefore be approved pursuant to Bankruptcy Rule 9019. There is no reason to believe that litigating the US Farms Claims to judgment would produce an outcome that is materially better for creditors, and the outcome could be worse—with many thousands of dollars of estate funds wasted in the interim. The US Farms Settlement represents a satisfactory outcome for the Debtors' estates and easily rises above the lowest point in the range of reasonableness when analyzed under the *Martin* factors.

### A.     Successful Litigation Against US Farms is Unlikely

21.     The Debtors have evaluated the US Farms Claims and concluded that the outcome of any litigation would be far from certain because certain Machine Assets contain defects and BlockFi Lending is contractually obligated to refund a portion of the Purchase Price to US Farms

under the terms of the Purchase Agreement in the event that any of the Machine Assets are determined to be Non Working Condition Machines. The Parties agree that the collective value of the Norwegian Machines which likely qualify as Non Working Condition Machines under the terms of the Purchase Agreement exceeds the applicable cap on the reduction of the Purchase Price and that, therefore, the maximum reduction (up to the cap) should be applied with respect to Non Working Condition Machines from Norway. Further, the Parties agree that at least some of the U.S. Machines likely qualify as Non Working Condition Machines under the Purchase Agreement, notwithstanding that the Parties disagree on the appropriate Purchase Price reduction in connection with the U.S. Machines.

22.     In short, the Parties' disagreement is not material enough to justify the attendant risk and cost of protracted litigation. Accordingly, the uncertainty of BlockFi Lending successfully defending against the US Farms Claims weighs in favor of compromise. *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 518 (Bankr. D. Del. 2010) (finding uncertainty weighs in favor of settlement); *see also Moren v. Ray & Bergman, et al.*, 2007 WL 953115 (9th Cir. Jan. 29, 2007) ("Given the tremendous uncertainty of success at trial, this factor weighs heavily in favor of approval of the compromise").

23.     The likelihood of success of litigating against US Farms is uncertain. What is not uncertain, however, is that the litigation would likely require the expenditure of significant funds and cause substantial, detrimental impact to the Debtors. The US Farms Settlement allows the Parties to reach a just, reasonable, and consensual outcome while avoiding the uncertainty of protracted and expensive litigation that would  deplete the estates' resources. The certainty that the US Farms Settlement provides—at an amount lower than BlockFi Lending's asserted liability under the US Farms Claims—represents a significant benefit to the Debtors and their estates,

whereas litigation represents uncertainty and risk. Accordingly, the first factor weighs in favor of the Court approving the US Farms Settlement.

**B.      Litigating Against US Farms Would be Complex, Expensive, Inconvenient, and Would Delay or Altogether Inhibit the Debtors' Efforts to Maximize Value for Creditors of the Estates**

24.      The US Farms Settlement is the product of good-faith, arms'-length negotiations between BlockFi Lending and US Farms, each of which was represented by counsel who assisted in the determination that the US Farms Settlement is mutually beneficial to both Parties. Subject to the terms of the US Farms Settlement, the Debtors will satisfy the US Farms Claims in their entirety simply by reducing the portion of the Holdback remitted to the Debtors, without utilizing any cash currently held by the Debtors. Taking all factors and costs into account, the Debtors submit that the benefits of the US Farms Settlement exceed the costs of settlement and likely far exceed the costs of litigation.

25.      Accordingly, the second and third *Martin* factors weigh in favor of settlement.

**C.      The Paramount Interests of Creditors Weigh in Favor of Approving the US Farms Settlement**

26.      The US Farms Settlement inures to the benefit of, and is in the paramount interests of, creditors of the BlockFi estates. Settlement with US Farms supports the Debtors' efforts to maximize the value of their estates and will result in greater cash on hand to prosecute and recover on other claims belonging to the Debtors, fund administration of these Chapter 11 Cases, and potentially fund distributions to creditors upon the Debtors' emergence from chapter 11.

27.      As discussed above, the Settlement Amount would be paid out of the Holdback and, thus, would prevent the need for the Debtors to use cash to satisfy the US Farms Claims. Moreover, settling the US Farms Claims obviates the need for protracted litigation and the associated fees and expenses.

28.     Accordingly, approval of the US Farms Settlement is in the paramount interests of the Debtors' estates and all key stakeholders in these Chapter 11 Cases.

## II.     Consummating the US Farms Settlement is a Sound Exercise of the Debtors' Business Judgment Under Section 363(b)(1) of the Bankruptcy Code.

29.     Section 363(b)(1) of the Bankruptcy Code provides that "after notice and a hearing [a debtor] may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999) ("[t]he scope of [11 U.S.C. § 541] is broad. It includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act . . . ." (quoting H.R. Rep. No. 95–595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").

30.     Courts in the Third Circuit have made clear that a debtor may use property of the estate outside of the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Trans World Airlines, Inc.*, Case No. 01-00056 (PJW), 2001 WL 1820326, at *10 (Bankr. D. Del. Apr. 2, 2001).

31.     As a general rule, a debtor's decision to use property of the estate out of the ordinary course of business shields a debtor's decisions from judicial second-guessing and enjoys a strong presumption "that in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res.*, Inc., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted)); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions").

32.     Here, the Debtors' entry into the US Farms Settlement is a reasonable exercise of the Debtors' business judgement and should be approved. If the Court grants this Motion and authorizes BlockFi Lending to enter into the US Farms Settlement, BlockFi Lending's dispute with US Farms will be resolved, the US Farms Claims will be satisfied out of the Holdback, and BlockFi Lending will receive valuable releases of claims and causes of action from US Farms. Accordingly, the Debtors submit that entry into the US Farms Settlement is a reasonable exercise of the Debtors' business judgment and should be approved.

## Conclusion

33.     For the reasons set forth herein, authorizing the Debtors to enter into the US Farms Settlement is in the best interest of the Debtors, their estates, creditors and all parties in interest in these Chapter 11 Cases. Furthermore, the Debtors have demonstrated that the US Farms Settlement

rises well above the lowest point in the range of reasonableness as required under Third Circuit precedent. Accordingly, the Debtors request that the Court approve the Motion and the US Farms Settlement.

## Request of Waiver of Stay

34.    To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

35.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and in the attachments hereto, and the Motion does not raise any novel issues of law.

## Reservtion of Rights

36.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not

intended and should not be construed as an admission as to the validity of any particular claim or
a waiver of the Debtors' rights to subsequently dispute such claim.

## **No Prior Request**

37.     No prior request for the relief sought in this Motion has been made.

## **Notice**

38.     The Debtors will provide notice of this Motion to the following parties and/or their
respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey;
(b) the Committee; (c) the United States Attorney's Office for the District of New Jersey; (d) the
Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys
general in the states where the Debtors conduct their business operations; (g) US Farms and its
counsel; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The
Debtors submit that, in light of the nature of the relief requested, no other or further notice need
be given.

**WHEREFORE**, the Debtors request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: September 11, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

# EXHIBIT A

# SETTLEMENT AGREEMENT

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

```
-----------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
BLOCKFI INC., et al.¹                     :        Case No. 22-19361 (MBK)
                                          :
                Debtors.                  :        (Jointly Administered)
                                          :
-----------------------------------------------------------x
```

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (this "Settlement Agreement") is entered into by and between the following parties (each a "Party," and collectively, the "Parties"): (a) BlockFi Lending LLC, a Delaware limited liability company (in its dual capacities as party to the Purchase Agreement (defined below) and as a chapter 11 debtor in the above-captioned bankruptcy case, "Seller"); and (b) US Farms & Mining Opportunity Fund LLC, a Delaware limited liability company ("Purchaser," together with Seller, each a "Party" and, collectively, the "Parties").

## RECITALS

**WHEREAS**, on or about March 1, 2023, the Parties entered into that certain Asset Purchase Agreement (the "Purchase Agreement")² governing the sale (the "Sale") of certain cryptocurrency mining machines (the "Machine Assets") set forth on Schedule 1.1(a) attached thereto in exchange for, among other things, the Cash Payment; and

**WHEREAS**, the Closing occurred on or about April 4, 2023, and the Parties entered into that certain Closing Agreement dated as of April 4, 2023 (the "Closing Agreement") and that certain Bill of Sale, Assignment and Assumption Agreement dated as of April 4, 2023 (the "Bill of Sale," together with the Purchase agreement, the Closing Agreement and any other documents entered into by the Parties in connection with the Sale, whether or not expressly referenced herein, collectively, the "Sale Contracts"), pursuant to which Purchaser delivered the Cash Payment, *less* the Deposit and *less* the Holdback Amount; and

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

² Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Purchase Agreement, unless otherwise specified.

**Settlement Agreement – Page 1 of 6**

DocuSign Envelope ID: BDF73344-9012-4DA3-8F34-DDB4938875FF

**WHEREAS**, section 2.1(c) of the Purchase Agreement provided Purchaser with a forty-five (45) day Initial Inspection Period to complete an inspection of the Machine Assets and directs the Parties to instruct the Escrow Agent to deliver (A) the Initial Release Amount to Seller and (B) the Initial Inspection Deduct, if any, to Purchaser; and

**WHEREAS**, the Purchase Agreement defines the Initial Inspection Deduct, in relevant part, as "an amount . . . representing the value . . . of any Machine Assets. . . that . . . *were otherwise not delivered to Purchaser at Closing . . . .*" Purchase Agreement § 2.1(d)(ii); and

**WHEREAS**, pursuant to section 2.1(e) of the Purchase Agreement, the Initial Inspection Deduct with respect to (A) Machine Assets located in Norway shall not exceed $307,500 (the "Norway Initial Deduct Cap") and (B) Machine Assets (other than Delayed Assets) located in the United States shall not exceed $100,000 (the "U.S. Initial Deduct Cap," and together with the Norway Initial Deduct Cap, the "Initial Deduct Caps"), capping the aggregate Initial Inspection Deduct at $407,500; and

**WHEREAS**, Purchaser alleges to have inspected certain Machine Assets located in or originating from the United States (the "U.S. Machines") and certain Machine Assets located in or originating from Norway (the "Norway Machines") during the Initial Inspection Period and found that certain of the Machine Assets so inspected contained damaged or broken essential components and, thus, qualified as Non-Working Condition Machine Assets under section 11.1(t) of the Purchase Agreement; and

**WHEREAS**, Purchaser alleges further that certain other Machine Assets, specifically, 373 model S19 Pro 110s, were never delivered to Purchaser, and that, accordingly, Purchaser is entitled to the fair-market value of such machines (the "Non-Performance Compensation"); and

**WHEREAS**, counsel to Purchaser sent that certain demand letter (the "US Farms Demand Letter") dated as of June 27, 2023, asserting, among other things, entitlement to a total refund (the "Refund") in the amount of $920,375 (the "Refund Demand"), consisting of (A) an Initial Inspection Deduct of $116,801.68 with respect to the U.S. Machines and an Initial Inspection Deduct of $669,171.70 with respect to the Norway Machines, for a total Initial Inspection Deduct of $407,500 (after applying the Initial Deduct Caps); and (B) Non-Performance Compensation of $512,875; and

**WHEREAS**, pursuant to the US Farms Demand Letter, Purchaser demanded, among other things, (A) delivery of a joint release instruction (a "Joint Release Instruction") directing the Escrow Agent to release the entire Holdback Amount of $627,500 to Purchaser and (B) a cash payment of $292,875, each in satisfaction of the Refund Demand; and

**WHEREAS**, with respect to the Initial Inspection Deduct, Seller conducted its own inspection of the Machine Assets and calculated an Initial Inspection Deduct of $78,820 with respect to the U.S. Machines and $676,833 for the Norway Machines, for a total Initial Inspection Deduct of $386,320, which is $21,180 less than the total Initial Inspection Deduct of $407,500 calculated by Purchaser; and

**WHEREAS**, Seller asserts that, pursuant to section 2.1(d)(ii) of the Purchase Agreement, Purchaser bears the economic risk of non-delivery of any Asset Machines to the extent the value of any undelivered Asset Machines exceeds the aggregate value of the Initial Deduct Caps; and

**WHEREAS**, the Parties disagree regarding the amount of the Refund to which Purchaser is entitled under the terms of the Purchase Agreement; and

**WHEREAS**, on November 28, 2022, Seller and several debtor-affiliates filed Petitions for Relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>"), commencing the above-captioned cases (the "<u>Chapter 11 Cases</u>"), which are being jointly administered and remain pending as of the date hereof; and

**WHEREAS**, it is in the interest of Seller to resolve claims against its bankruptcy estate as expediently and efficiently as possible in furtherance of the administration of the Chapter 11 Cases; and

**WHEREAS**, after an exchange of information and arm's-length negotiations among the Parties, the Parties have determined that it is in their respective best interests to avoid the cost, expense, and uncertainty of protracted litigation and have determined it to be in the Parties' best interest to resolve such disputes among them on the terms set forth herein; and

**WHEREAS**, any agreement of the Parties resolving of the claims each Party asserts against the other is subject to the approval of the Bankruptcy Court as the court having exclusive jurisdiction over the administration of Seller's bankruptcy estate.

**NOW THEREFORE**, the Parties, intending to be legally bound and for good and valuable consideration, the receipt of which is hereby acknowledged, agree as follows:

1. **Recitals**. The Recitals set forth above are incorporated herein by reference.

2. **Court Approval Required**. This Settlement Agreement shall become effective on the date (the "<u>Effective Date</u>") on which the Bankruptcy Court's order approving this Settlement Agreement becomes a final, non-appealable order.

   a. Within three (3) business days after mutual execution of this Settlement Agreement, Seller shall file a motion (the "<u>Rule 9019 Motion</u>") with the Bankruptcy Court seeking approval of this Settlement Agreement pursuant to FED. R. BANKR. P. 9019.

   b. This Settlement Agreement shall be of no force or effect until it is approved by the Bankruptcy Court through the entry of an order approving the Rule 9019 Motion and Seller's entry into this Settlement Agreement. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors, affiliates, and assigns. In the event this Settlement Agreement is not approved, each of the Parties shall be returned to their position *status quo ante*.

3. **Joint Release Instruction and Settlement Consideration**. Within three (3) business days of the Effective Date, the Parties shall issue a Joint Release Instruction, in writing, to the

Escrow Agent, directing the Escrow Agent to release $527,500 of Holdback Amount to Purchaser and the remaining $100,000 of Holdback Amount, and any other such amounts held by the Escrow Agent, to Seller. For the avoidance of doubt, Purchaser is entitled to no more than $527,500 of total consideration under the terms of this Settlement Agreement.

4. **Confirmation of Receipt**. Within one (1) business day following receipt of its portion of the Holdback Amount, Purchaser shall notify Seller, in writing, of its receipt of the Holdback Amount.

5. **Reasonable Efforts**. The Parties and the Escrow Agent shall make every reasonable effort to comply with the terms and deadlines set forth in this Settlement Agreement.

6. **Mutual Release of Claims**. Following the Effective Date, the Parties, and their affiliated companies, and in the case of all such entities, their current and former insurers, reinsurers, trustees, beneficiaries, receivers, parents, divisions, predecessors, successors, assigns, corporations, shareholders, officers, agents, servants, directors, current and former employees, partners, partnerships, joint ventures, companies, members, attorneys, representatives, and related entities are immediately deemed to have irrevocably and unconditionally released and forever discharged each other from any and all past or present claims or causes of action (including any causes of action, suits, petitions, demands, complaints, proceedings, or other claim in law, equity, or arbitration) and from any and all allegations of liability or damages (including any allegation of duties, debts, dues, liens, fees, expenses, rights of and to indemnification, rights of and to contribution, rights of and to restitution, reckonings, controversies, promises, obligations, damages, responsibilities, covenants, or accounts) of whatever kind, nature or description, direct, indirect or derivative, in law, equity, or arbitration, absolute or contingent, accrued or unaccrued, whether based in tort, contract, statute, common law, or otherwise, whether based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, interest, costs, or disbursements), known or unknown, that are, have been, could have been or might in the future be asserted by, on behalf of, or through the Parties, based on or arising out of any matter, cause, or thing whatsoever, including without limitation any and all claims asserted and those claims that could be asserted in any bankruptcy or non-bankruptcy proceeding, arising out of or related to the Sale or the Sale Contracts; *provided*, however, that nothing contained in this Release constitutes, or is deemed to constitute, a release, discharge, or impairment of the Parties' right to enforce this Settlement Agreement, all of which are expressly reserved.

7. **Confidentiality**. Each of the Parties shall hold, and shall cause each of their respective affiliates, directors, officers, partners, members, managers, trustees, employees, agents and advisers to hold, in confidence all documents and information exchanged as confidential settlement communications in connection with the covenants contemplated by this Settlement Agreement and any of the provisions of this Settlement Agreement. The obligation that such information and documents remain in confidence shall continue in full force and effect until the Effective Date. For the avoidance of doubt, this provision applies only to the underlying business records exchanged during settlement discussions, and not to the Rule 9019 Motion or this Settlement Agreement itself.

8. **Miscellaneous**.

    a. **Entire Agreement**. No promise, inducement, commitment, or other agreement not expressly set forth herein has been made with respect to this Settlement Agreement or the subject matter hereof. This Settlement Agreement contains the entire agreement by and among the Parties with respect to all matters related hereto. All prior agreements and understandings, oral agreements, and writings regarding the matters set forth herein (if any) are expressly superseded hereby and are of no further force or effect.

    b. **Amendments**. This Settlement Agreement may not be altered, amended, or modified in any respect except by a writing duly executed by all of the Parties. For the avoidance of doubt, email signatures shall not constitute a signed writing. Any material alterations, amendments, or modifications entered after Bankruptcy Court approval must be approved by the Bankruptcy Court before going into effect.

    c. **Binding Effect; Third Parties**. This Settlement Agreement shall be binding on and inure to the benefit of each Party and its successors. There is no third-party beneficiary of this Settlement Agreement.

    d. **No Admission of Wrongdoing**. In entering into this Settlement Agreement, no Party is admitting any fault or liability of any kind whatsoever to each other or to any third party, all of which are expressly denied. Nothing in this Settlement Agreement is or shall be construed to be an admission of liability or wrongdoing by any Party.

    e. **Defense**. This Settlement Agreement may be pleaded as a full and complete defense in any subsequent action or other proceeding concerning any and all of the claims, counterclaims, causes of action, assertions, issues, defenses, or other matters released and discharged by this Settlement Agreement, except for claims arising directly from this Settlement Agreement.

    f. **Venue and Jurisdiction**. The Bankruptcy Court shall retain jurisdiction and venue over the subject matter of this Settlement Agreement and the Parties for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the Parties to apply to the Bankruptcy Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

    g. **Applicable Law**. This Settlement Agreement shall be governed, interpreted, construed, and enforced in accordance with the laws of the state of Delaware.

    h. **Assignability**. Neither Party may assign this Settlement Agreement without the prior written consent of each Party, *except* that Seller may assign this Settlement Agreement without Purchaser's consent to any successor or representative party under any plan of reorganization or liquidation confirmed by the Bankruptcy Court, including but not limited to a wind-down trustee.

DocuSign Envelope ID: BDF3344-0012-4DA3-8F34-D9B4B8875177

i.  **Authority**. Each Party represents and warrants that the signatory to this Settlement Agreement on behalf of such Party has the full power and authority to enter into this Settlement Agreement on behalf of such Party and to bind such Party to the terms of this Settlement Agreement.

j.  **Counterparts**. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Signature pages emailed in a portable document format (.PDF) shall be acceptable and deemed binding on all Parties hereto as if they were originals.

*[Remainder intentionally left blank; signature page follows]*

**IN WITNESS HEREOF**, the Parties have each approved and executed this Settlement Agreement.

Dated: August 30, 2023

**US FARMS & MINING OPPORTUNITY FUND, LLC,**
a Delaware limited liability company

By:    *Gavin Qu*
       8C59D4820EA4448...
Name:  Gavin Qu
Title:   Manager

**BLOCKFI LENDING LLC**, a Delaware limited liability company

By:    *Zac Prince*
       FFA30A9A87CD4EC...
Name:  Zachary L. Prince
Title:   CEO

**Signature Page to Settlement Agreement**

# **EXHIBIT B**

# **PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>**Hearing Date and Time:**<br>**October 10, 2023, at 11:00 a.m. (ET)** |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE
OF CLAIMS BY AND AMONG BLOCKFI LENDING LLC AND US FARMS &
MINING OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

(Page 2)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS BY AND AMONG BLOCKFI LENDING LLC AND US FARMS & MINING OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF |

The relief set forth on the following pages, numbered three (3) through five (5) is

**ORDERED**.

| (Page 3) | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS BY AND AMONG BLOCKFI LENDING LLC AND US FARMS & MINING OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF |

The Debtors filed their *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement and Release of Claims By and Among BlockFi Lending LLC and US Farms & Mining Opportunity Fund, LLC and (II) Granting Related Relief* (the "Motion")[2] seeking an order of this Court (i) authorizing the Debtors' entry into and approving the US Farms Settlement and (ii) granting related relief; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; due notice hereof having been given; a hearing thereon having been held; the Court having considered the Debtors' request for relief, and opposition thereto, if any; and the Court finding good and sufficient cause for ordering the relief requested in the Motion; it appearing that the relief requested in the Motion is in the best interest of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The terms of and transactions contemplated in the US Farms Settlement are hereby approved.

3.      The Debtors are authorized and directed to (a) enter into, execute, deliver and perform under the US Farms Settlement and any other documents and instruments in connection

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

| | |
|---|---|
| (Page 4) | |
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS BY AND AMONG BLOCKFI LENDING LLC AND US FARMS & MINING OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF |

therewith, and the transactions contemplated therein; (b) take all actions necessary or appropriate in connection with the US Farms Settlement, including to immediately continue and fully implement the US Farms Settlement and the settlements and transactions embodied therein; (c) take all such other actions, provide all such further assurances, and execute, acknowledge, deliver and perform under, all such other documents and instruments as shall be necessary, appropriate or desirable to fully implement the US Farms Settlement and the settlements and transactions embodied therein; and (d) fully consummate and effect the transactions provided for, and carry out the relief granted, in this Order in accordance with the terms of the US Farms Settlement.

4.      The US Farms Settlement is the product of extensive, good faith, arms-length negotiations between US Farms and the Debtors and their respective representatives.

5.      Effective upon the Effective Date of US Farms Settlement (as defined therein), to the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted solely for purposes of implementing the US Farms Settlement and the settlements and transactions contemplated therein, and/or to permit US Farms to enforce the terms of the US Farms Settlement and exercise its rights and remedies thereunder, subject to the terms of the US Farms Settlement and this Order.

6.      To the extent that there is any inconsistency between the Motion and this Order, the provisions of this Order shall govern.

7.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

| | |
|---|---|
| (Page 5) | |
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS BY AND AMONG BLOCKFI LENDING LLC AND US FARMS & MINING OPPORTUNITY FUND, LLC AND (II) GRANTING RELATED RELIEF |

8.      This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, or enforcement of this Order.