**SULLIVAN & CROMWELL LLP**
James L. Bromley (NJ Bar No. 1551996)
Andrew G. Dietderich (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Benjamin S. Beller (*pro hac vice* to be filed)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
E-mail:  bromleyj@sullcrom.com
    dietdericha@sullcrom.com
    gluecksteinb@sullcrom.com
    bellerb@sullcrom.com

*Counsel for the FTX Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**OBJECTION OF THE FTX DEBTORS TO (I) CONFIRMATION OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES AND (II) FINAL APPROVAL OF THE DEBTORS' <u>DISCLOSURE STATEMENT</u>**

FTX Trading Ltd. ("<u>FTX Trading</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>FTX Debtors</u>")[2] hereby submit this objection (the "<u>Objection</u>") to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the BlockFi Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2] The last four digits of FTX Trading Ltd.'s tax identification number is 3288. Due to the large number of debtor entities in the FTX Debtors' chapter 11 cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

(i) confirmation of the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, Docket No. 1309 (the "Plan" and the amended disclosure statement filed on August 3, 2023, the "Disclosure Statement"),[3] filed by the debtors and debtors-in-possession (collectively, the "BlockFi Debtors") in the above-captioned chapter 11 cases (the "BlockFi Chapter 11 Cases") and (ii) final approval of the Disclosure Statement. In support of their Objection, the FTX Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. Prior to the Court's conditional approval of the Disclosure Statement, the BlockFi Debtors sought to improperly embed litigation with respect to the FTX Debtors' claims against the BlockFi Debtors into the plan confirmation process. The FTX Debtors objected to, among other things, the procedural fairness of the BlockFi Debtors' use of the plan process to eliminate the FTX Claims, and in response the BlockFi Debtors modified the Plan to remove the main disputes with respect to those claims from the Plan.

2. Nevertheless, the Plan still suffers from certain fundamental shortcomings as described below that render the Plan unconfirmable. Specifically, (i) the Committee Settlement embedded in the Plan does not serve the paramount interests of creditors, including the FTX Debtors, and cannot be approved under applicable Third Circuit law; (ii) the Plan would authorize the BlockFi Debtors to manipulate the treatment of Intercompany Claims to benefit certain classes of creditors over others without justification and without any accountability; and (iii) the Plan unfairly discriminates against the FTX Claims in certain respects. Accordingly, the FTX Debtors

---

[3] Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Docket No. 1310. Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

respectfully request that the Court deny confirmation of the Plan, and reserve all their rights with respect to the FTX Claims and any other claims they may have against the BlockFi Debtors and third parties.[4]

3.      Until recently, the FTX Debtors believed that they were working constructively with the BlockFi Debtors on a proposal to fairly and efficiently resolve the complex issues between the parties pending in this Court, including issues arising from the unusual "dueling debtor" context.  Unfortunately, the BlockFi Debtors terminated those discussions, necessitating that the FTX Debtors file this objection and responses to the BlockFi Debtors' motion to estimate the FTX Claims at $0.00 for distribution purposes.  The FTX Debtors do not seek to impede the BlockFi Debtors' efforts to return value to their creditors, but, in the absence of a consensual resolution, must ensure any plan is fair to the FTX Debtors' creditors, who are the beneficiaries of the FTX Claims.  The current Plan is not.

## FACTUAL BACKGROUND

4.      On November 11 and November 14, 2022, the FTX Debtors filed with the United States Bankruptcy Court for the District of Delaware voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      On November 28, 2022, the BlockFi Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

---

[4]   Under the Plan, the FTX Debtors are deemed to reject the Plan, and are therefore not included in the definition of Releasing Parties under the Plan.  Accordingly, all claims, rights, and arguments of the FTX Debtors against the BlockFi Debtors and all other non-debtor parties, including the Released Parties, are retained and preserved under the Plan.  For the avoidance of doubt, to the extent the Plan purports to release any of the FTX Debtors' claims against any party, the FTX Debtors object to the releases included in the Plan and opt-out of such releases.

6. On March 31, 2023, the FTX Debtors timely filed Proofs of Claim[5] asserting claims against the BlockFi Debtors (the "FTX Claims"). The FTX Claims are primarily comprised of avoidance claims pursuant to sections 547 and 550 of the Bankruptcy Code. The FTX Claims also filed an unsecured claim in the amount of $275 million for new money loans advanced by the FTX Debtors pursuant to a revolving credit facility (referred to as the "FTX Facility Claims" in the Disclosure Statement).

7. On August 2, 2023, the Court entered an order conditionally approving the Disclosure Statement and setting a hearing on final approval and confirmation of the Plan (Dkt. No. 1306).

8. On August 21, 2023, the BlockFi Debtors filed *BlockFi's Ninth Omnibus Objection to the FTX Claims (books and records, unliquidated, duplicates, incorrect/improper classification, insufficient documentation, not liable)*, Docket No. 1376 (the "Claim Objection") setting forth miscellaneous objections to the FTX Claims. Also on August 11, 2023, the BlockFi Debtors filed the *Debtors' Motion to Estimate the Amount of the FTX Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code*, Docket No. 1347 (the "Estimation Motion") seeking to estimate the FTX Claims at $0.00 for distribution purposes.

9. Concurrently herewith, the FTX Debtors are filing an objection to the Estimation Motion and an initial response to the Claim Objection.

---

[5] Proofs of Claim Nos. 14607, 14810, 14971, 15184, 15191, 15204, 15025, 15206, 15580, 15595, 15612, 15818, 25986, 26003, 26004, 26005, 26006, 26059, 26060, 26063, 26064, 26066, 26067, 26068, 26070, 26268, 26280, 26313, 26319, 26325, 26342, 26360, 26377, 26386, 26429, 26962.

**OBJECTION**

I.   **The Plan's Proposed Settlement of Claims Against Insiders Is Not Fair and Reasonable**

10. A plan of reorganization "may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. 1123(b)(3)(A). "Where a compromise is part of a plan of reorganization, however, the court has the duty 'to determine that a proposed compromise forming part of a reorganization plan is fair and equitable.' " *In re Coram Healthcare Corp.*, 315 B.R. 321, 334 (Bankr. D. Del. 2004) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968)).

11. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the Martin factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).

12. The Plan's settlement of claims against certain insiders of the BlockFi Debtors fails this test. The Committee previously outlined in an extensive report its preliminary findings with respect to potential fraudulent, manipulative and wrongful prepetition conduct by the BlockFi Debtors' insiders. Despite those serious allegations, the Committee has inexplicably agreed to the Committee Settlement, which provides for complete releases for practically the entire leadership that oversaw the businesses during the relevant period in exchange for little or no consideration. Specifically, of the seven individuals named as Committee Settlement Parties, only four are

required to make any monetary contribution as part of the Committee Settlement. Those cash contributions are paltry, totaling a mere $2,250,000. *See* Plan, pp. 46-48. The purported value of other components of the settlement, including waiver of certain prepetition claims and cooperation with the BlockFi Debtors, is highly uncertain. Critically, the consideration provided by the Committee Settlement Parties pursuant to the Committee Settlement appears to be substantially *less* than the full amount of the D&O Liability Insurance Policies that are expressly preserved by the Plan.[6]

13.     The BlockFi Debtors have offered no evidence and cannot show that the releases serve the paramount interests of creditors and otherwise satisfy the *TMT* test.[7] Accordingly, the Court should deny approval of the Committee Settlement and confirmation of the Plan.

## II.     The Plan Improperly Authorizes the BlockFi Debtors to Manipulate the Treatment of Intercompany Claims to Benefit Certain Classes of Creditors

14.     Section III.C.23 provides the treatment of Class 11 Intercompany Claims under the Plan, and would authorize the BlockFi Debtors to determine whether to reinstate such claims, convert such claims to equity, or provide for any number of other treatment options, including settlement and cancellation. The Blockfi Debtors have disclosed approximately $1.668 billion of Intercompany Claims between the Debtor Entities, and that after netting claims as contemplated by the Plan, there would be approximately $872.2 million of Intercompany Claims.[8] The BlockFi Debtors have not provided any detail with respect the Intercompany Claims, including whether

---

[6] *Debtor's Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(A) and 363(C) Authorizing the Debtors to (I) Continue, Renew, or Supplement Insurance Policies, (II) Pay Insurance Premiums and Related Obligations Thereon, (III) Continue, Renew, Or Supplement the Surety Bond Program, and (IV) Granting Related Relief*, Docket No. 11, Exhibit C (seeking authorization to maintain $32 million in directors' and officers' liability insurance coverage).

[7] The FTX Debtors are pursuing discovery into these matters.

[8] Disclosure Statement, Section III.2.C, page 21.

there are any potential disputes between the BlockFi Debtors that create a conflict between those debtor entities and their (shared) counsel, and should be required to do so.

15. Moreover, such a broad and indefinite grant of authority to the BlockFi Debtors to improperly direct the flow of value between and among the BlockFi Debtors through the exercise of their sole discretion in determining the treatment of Intercompany Claims under the Plan is improper and unjustified, and creates significant risks and uncertainties with respect to the fair treatment of creditors at different debtor entities. Importantly for the FTX Debtors, there may be Intercompany Claims arising from the intercompany transfer of the proceeds of the loans from the FTX Facility, which must be treated *pari passu* with all general unsecured claims at the applicable debtor. The Plan allows the BlockFi Debtors to discriminate unfairly against similarly situated creditors through the treatment of Intercompany Claims post-confirmation in violation of section 1129(b). The BlockFi Debtors should not be granted broad authority under the Plan to manipulate creditor recoveries at different debtor entities.

### III. The Plan is Unconfirmable because It Unfairly Discriminates Against the FTX Claims.

16. The FTX Debtors further object to the Plan because it unfairly discriminates against the FTX Claims. In order to have a plan of reorganization that includes an impaired class of claims confirmed, the BlockFi Debtors must prove by a preponderance of the evidence that, among other things, the Plan does not "discriminate unfairly" and is "fair and equitable," as required by section 1129(b) of the Bankruptcy Code. 11 U.S.C. § 1129(b); *see also Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 442 (1999).

17. First, the Plan impermissibly provides that if the FTX Claims are subordinated or recharacterized as equity, such claims would not be entitled to *any* distribution under the Plan.[9]

---

[9] Disclosure Statement, Section III.A.1, p. 17.

But that proposed treatment ignores that even if subordinated or recharacterized, the FTX Claims may be entitled to distributions pursuant to the applicable waterfall, but after higher priority classes have recovered in full. The Plan must make clear that even if the FTX Claims are subordinated to all other creditor classes or recharacterized as equity, they will be entitled to distributions from value available at their applicable priority.

18. Second, the Plan provides that all claims arising from the FTX Facility are contractually subordinated to Account Holder Claims.[10] While FTX Facility Claims for the principal or other amounts due under the applicable debt documentation are contractually subordinated to "Client Liabilities" (as defined in such debt documentation), other claims arising from the FTX Facility that are *not* claims for repayment of loans (including, for example, the FTX Debtors' claims for (i) fraudulent inducement to lend to BlockFi and (ii) fraudulent transfer under sections 548 and 550 of the Bankruptcy Code against any transferee of the proceeds of the FTX Facility loans on the grounds that the FTX Debtors' pre-petition leadership engineered those loans to facilitate their fraud on investors) are not governed by the FTX Facility agreements and therefore cannot be contractually subordinated. If allowed, those claims must receive distributions *pari passu* with Account Holder Claims, General Unsecured Claims and Intercompany Claims, and the Plan must provide for such treatment in order to comply with section 1129(b) of the Bankruptcy Code.

**IV.    The BlockFi Debtors May Not Distribute or Otherwise Dispose Of Property of the FTX Debtors Purportedly Held As Collateral Until Full and Final Resolution of the BlockFi Debtors' Claims Against the FTX Debtors and the Relative Rights of the Parties**

19. The BlockFi Debtors hold or are in control of certain cryptocurrency property of the FTX Debtors purportedly as collateral pursuant to certain debt agreements between Alameda

---

[10]   *Id.* at Section III.C.17, p. 35.

Research Ltd. as borrower and certain BlockFi Debtors as lender.  The FTX Debtors dispute the BlockFi Debtors' security interest in such property.  The BlockFi Debtors should not be permitted to distribute or otherwise dispose of such property of the FTX Debtors in connection with the Plan until full and final resolution of the BlockFi Debtors' asserted claims against the FTX Debtors and the parties' respective rights with respect to such property.

## **RESERVATION OF RIGHTS**

The FTX Debtors expressly reserve all rights, claims, arguments, defenses, and remedies with respect to the Objection, the Plan or any other issue in the BlockFi Chapter 11 Cases, and to supplement, modify, and amend this Objection, and to raise additional Objections in writing or orally at the hearing on the Motion.  In light of the fact that the BlockFi Debtors do not seek any affirmative relief through the Plan or the accompanying proposed confirmation order with respect to the FTX Claims, the FTX Debtors expressly reserve all rights with respect to the FTX Claims, including rights to be heard by the Court with respect to any claims reserve established or sought to be established by the BlockFi Debtors in connection with the FTX Claims under the Plan or otherwise.

## **CONCLUSION**

The FTX Debtors respectfully request that the Court deny confirmation of the Plan until such time that the BlockFi Debtors address the deficiencies identified herein.

Dated: September 13, 2023
      New York, New York

*/s/ James L. Bromley*
James L. Bromley (NJ Bar No. 1551996)
Andrew G. Dietderich (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Benjamin S. Beller (*pro hac vice* to be filed)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: bromleyj@sullcrom.com
        dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        bellerb@sullcrom.com

*Counsel for the FTX Debtors*