**SULLIVAN & CROMWELL LLP**
James L. Bromley (NJ Bar No. 1551996)
Andrew G. Dietderich (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Benjamin S. Beller (*pro hac vice* to be filed)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
E-mail:  bromleyj@sullcrom.com
                dietdericha@sullcrom.com
                gluecksteinb@sullcrom.com
                bellerb@sullcrom.com

*Counsel for the FTX Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*,[1] | Case No. 22-19361 (MBK) |
| Debtors. | (Jointly Administered) |

**PRELIMINARY OBJECTION OF THE FTX DEBTORS TO BLOCKFI DEBTORS'
MOTION TO ESTIMATE THE AMOUNT OF THE FTX CLAIMS
PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors")[2] hereby submit this preliminary objection (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the BlockFi Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2] The last four digits of FTX Trading Ltd.'s tax identification number is 3288. Due to the large number of debtor entities in the FTX Debtors' chapter 11 cases (the "FTX Cases"), a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

"Preliminary Objection") to the *Debtors' Motion to Estimate the Amount of the FTX Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code*, Docket No. 1347 (the "Estimation Motion"), filed by the debtors and debtors-in-possession (collectively, the "BlockFi Debtors") in the above-captioned chapter 11 cases (the "BlockFi Chapter 11 Cases"). In support of their Preliminary Objection, the FTX Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The FTX Debtors timely asserted proofs of claims against the BlockFi Debtors, primarily consisting of avoidance claims pursuant to section 547 of the Bankruptcy Code for preferential transfers (the "Preference Claims"), as well as the FTX Facility Claims, which are liquidated, non-contingent claims arising from new money loans provided by the FTX Debtors to the BlockFi Debtors from July through August 2022 in the aggregate principal amount of $275 million.

2. As previously noted in the FTX Debtors' objection to conditional approval of the Disclosure Statement,[3] as a result of further analysis since the filing of the proofs of claim, including with respect to the availability of a subsequent new value defense to certain Preference Claims, and application to the FTX Claims of the approach subsequently adopted by the FTX Debtors for all estate preference claims, the FTX Debtors assert their Preference Claims against the BlockFi Debtors in the reduced aggregate amount of approximately $213 million (in addition to avoidance claims concerning certain pledges and transfers of collateral to the BlockFi Debtors).

3. While these claims may be objectively significant in amount, they constitute a relatively small portion of the billions of dollars of total asserted unsecured claims in these cases.

---

[3] Docket No. 1154, ¶ 9.

What's more, the fact that they are disputed claims is not itself a justification to estimate them—instead, the BlockFi Debtors can and should establish reserves for the fully asserted amounts of the Preference Claims (as updated as described above) plus the $275 million FTX Facility Claim[4] under their proposed liquidating plan, such that the parties can move forward with litigation on the merits of the claims on a reasonable and proper timeline. Such a small reserve of $488 million relative to the overall claims pool would impose no cognizable harm or prejudice to the BlockFi Debtors resulting from waiting for the liquidation of the FTX Claims and would preserve both parties' due process rights with respect to the adjudication of the FTX Claims.

4. In any event, the Estimation Motion must be denied because the BlockFi Debtors cannot carry their burden under section 502(c) of the Bankruptcy Code to show that estimation of the FTX Claims is required to avoid "undue delay." *See In re Dow Corning Corp.*, 211 B.R. 545, 573 (Bankr. E.D. Mich. 1997) ("[T]he party moving for estimation must show that the normal mode of liquidating the claim would create undue delay in the bankruptcy process."); *In re LightSquared Inc.*, 2014 WL 5488413, at *5 (Bankr. S.D.N.Y. Oct. 30, 2014) (denying estimation when "[the movant] has failed to demonstrate undue delay . . . as it is required to show pursuant to section 502(c)").

---

[4] Although the FTX Debtors' claim for amounts outstanding under the FTX Facility is contractually subordinated to "Client Liabilities," other claims arising from the FTX Facility that are *not* claims for repayment of loans (including, for example, the FTX Debtors' claims for (i) fraudulent inducement to lend to BlockFi and (ii) fraudulent transfer under sections 548 and 550 of the Bankruptcy Code against any transferee of the proceeds of the FTX Facility loans on the grounds that the FTX Debtors' pre-petition leadership engineered those loans to facilitate their fraud on investors) are not governed by the FTX Facility agreements and therefore cannot be contractually subordinated. If allowed, those claims must receive distributions *pari passu* with Account Holder Claims, General Unsecured Claims and Intercompany Claims, and any reserve on account of such claims must reflect such *pari passu* treatment.

5. The BlockFi Debtors' superficial assertions of "undue delay" in the Estimation Motion are plainly insufficient to meet this requirement.[5] Beyond that, any estimation proceeding itself will be complex, and will take many months given the complexity of the numerous issues in dispute implicated by the BlockFi Debtors' objections to the FTX Claims, which include issues critical to the FTX Debtors, their creditors and their cases, such as: (i) the nature of ordinary course transfers by the FTX Debtors to similarly-situated creditors during the preference period and the application of the fraud exception to the ordinary course of business defense; (ii) the method of valuation of the FTX Debtors' native token, FTT, and the determination of its ranking in the capital structure in connection with a hypothetical chapter 7 liquidation; (iii) the solvency of each applicable FTX Debtor; (iv) the validity and perfection of security interests in the property of the FTX Debtors purportedly held by the BlockFi Debtors; (v) the nature and applicability of the contemporaneous and subsequent new value defense to the transfers; (vi) whether any of the transactions at issue qualify for the protection of the safe harbors under section 546(e) of the Bankruptcy Code; and (vii) the ownership and custody of exchange assets pursuant to the disputed terms of service and whether the FTX Debtors own digital assets in their custody.

6. Such an estimation proceeding would require multiple experts (no fewer than four) and extensive evidence with respect to issues such as corporate separateness of the FTX Debtors and intercompany claims between the FTX Debtors  An estimation of such wide-ranging scope is neither necessary nor practical.[6] Furthermore, the BlockFi Debtors have already filed a substantive claims objection seeking to adjudicate the merits of the FTX Claims, for which a process and

---

[5] Estimation Motion, ¶ 18.

[6] *In re Anderson*, 20123 WL 240748 (Bankr. S.D. Cal. 2013) (declining to estimate claims because estimation would require "pretty much complete resolution" of the claim due to its complexity and would require "a full blown trial.").

schedule must be either agreed or resolved by this Court. In connection with any estimation proceeding, the Court will need to determine in the first instance whether this Court or the Delaware Court overseeing the FTX Debtors' chapter 11 cases should adjudicate each issue and dispute.

7. Whether the BlockFi Debtors like it or not, the FTX Debtors are prepetition creditors in the BlockFi Chapter 11 Cases. Their only aim is to have a fair opportunity to adjudicate their claims for the benefit of their own creditors. The unusual dynamics of the "dueling debtors" circumstances must be taken into account. The FTX Debtors are not merely an average creditor in the Genesis Chapter 11 Cases; instead, they are pursuing estate claims as fiduciaries for their stakeholders in a federal proceeding of equal importance to the Genesis Chapter 11 Cases. And the claims of the FTX Debtors are not merely average claims; instead, the FTX Claims are primarily preference claims that arise by operation of the Bankruptcy Code as a result of the filing of the FTX Chapter 11 Cases, and their resolution depends upon numerous core legal and factual issues central to the FTX Chapter 11 Cases.[7] Having a foreign bankruptcy court adjudicate the merits of preference claims in another bankruptcy court's cases and all of the concomitant issues that would arise in that litigation, including those at the center of the FTX Debtors' cases, would constitute gratuitous prejudice to the FTX Debtors and more importantly, their creditors, for whose

---

[7] Preference actions, a corollary to the automatic stay, exist to prevent a debtor from "preferring" certain creditors at the expense of other creditors in the months leading up to a debtor's bankruptcy filing. *See Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) ("The automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'"). Accordingly, preferences are at root intercreditor claims that directly affect all other creditors of the debtor's estate.

benefit the FTX Debtors have brought these claims.[8] The BlockFi Debtors' assertions of unsubstantiated "undue delay" to the BlockFi Debtors' plan distributions do not provide any basis for such prejudice.

8. At the same time, the FTX Debtors are mindful of the interests of creditors to the BlockFi Debtors and are open to constructive discussions. With that goal in mind, the FTX Debtors have been engaging with the BlockFi Debtors in an effort to reach an agreement that would be beneficial to both sets of creditors. These discussions have been constructive until earlier this week, when the BlockFi Debtors declined further engagement. The FTX Debtors understand the about-face on settlement discussions to be in large part a consequence of ongoing ambiguity with respect to whether the BlockFi Debtors or their Official Committee of Unsecured Creditors will be overseeing the BlockFi Debtors' wind-down contemplated under the Plan. The Estimation Motion is therefore premature and particularly prejudicial when the FTX Debtors have no clarity as to who they should be engaging with in connection with the parties' disputes.

9. The Estimation Motion as presented is a thinly veiled attempt to eliminate all of the FTX Debtors' claims without any basic due process and should be denied. The FTX Debtors reserve the right to supplement this Preliminary Objection after discovery and before any hearing with respect to whether estimation is warranted under section 502(c) or, if applicable, any estimation proceeding on the merits of the claims.

---

[8] As Judge Wiles cautioned in the Voyager Digital Chapter 11 cases, in connection with debtor Celsius Network LLC's motion for leave to file a late proof of claim and lift the automatic stay to commence a preference action against *Voyager* Digital, there is "no way" that a foreign bankruptcy court should be making fundamental determinations about a debtor's case, including determinations about customer property. *See In re Voyager Digital Holdings, Inc.*, No. 22-10943, Docket No. 921, Transcript of Hearing Held on 1/24/2023, 103–04 (MEW) (Bankr. S.D.N.Y. Jan. 24, 2023)

**FACTUAL BACKGROUND**

10. On November 11 and November 14, 2022, the FTX Debtors filed with the United States Bankruptcy Court for the District of Delaware voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

11. On November 28, 2022 (the "BlockFi Petition Date"), the BlockFi Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

12. On March 31, 2023, the FTX Debtors timely filed Proofs of Claim[9] asserting claims against the BlockFi Debtors (the "FTX Claims"). The FTX Claims are primarily comprised of avoidance claims pursuant to sections 547 and 550 of the Bankruptcy Code. The amounts of these claims are subject to ongoing review and analysis by the FTX Debtors, but are currently expected to be as follows after credit for subsequent new value where appropriate: (i) preferential loan repayments by Alameda (as borrower) to BlockFi Lending LLC in the amount of approximately $123 million (referred to as the "Alameda Claims" in the Estimation Motion), (ii) preferential withdrawals by the BlockFi Debtors from the FTX.com exchange in the aggregate amount of approximately $90 million, (iii) preferential pledges of collateral by Alameda to the BlockFi Debtors (together with the claims listed in (ii) above, referred to as the "FTX Avoidable Transfer Claims" in the Estimation Motion), and (iv) preferential pledges of collateral by Emergent Fidelity Technologies Ltd. and Alameda.

13. The FTX Claims also include an unsecured claim in the amount of $275 million for new money loans advanced by the FTX Debtors pursuant to a revolving credit facility (referred to as the "FTX Facility Claims" in the Estimation Motion).

---

[9] Proofs of Claim Nos. 14607, 14810, 14971, 15184, 15191, 15204, 15025, 15206, 15580, 15595, 15612, 15818, 25986, 26003, 26004, 26005, 26006, 26059, 26060, 26063, 26064, 26066, 26067, 26068, 26070, 26268, 26280, 26313, 26319, 26325, 26342, 26360, 26377, 26386, 26429, 26962.

14. On August 11, 2023, the BlockFi Debtors filed the Estimation Motion requesting the entry of an order, pursuant to sections 105(a) and 502(c)(1) of the Bankruptcy Code, estimating the FTX Claims at $0.00 for distribution purposes.

## OBJECTION

### I. THE BLOCKFI DEBTORS HAVE NOT CARRIED THEIR BURDEN UNDER SECTION 502(c) OF THE BANKRUPTCY CODE.

15. The Estimation Motion should be denied because the BlockFi Debtors have failed and are unable to carry their burden under section 502(c) of the Bankruptcy Code to show that estimation of all of the FTX Claims is necessary to avoid undue delay in the administration of their chapter 11 cases. Contrary to the BlockFi Debtors' conclusory assertion that "[t]he FTX Claims are all contingent and unliquidated, and, therefore, subject to estimation,"[10] courts uniformly recognize that a decision to estimate claims under section 502(c)(1) "is within [the court's] sound discretion and not the obligation of [the court]," absent a showing of "undue delay." *In re RNI Wind Down Corp.*, 369 B.R. 174, 192 (Bankr. D. Del. 2007). This is because "[b]ankruptcy law's general rule is to liquidate, not estimate." *Dow Corning*, 211 B.R. at 560–61.

16. In addition, "[b]ecause estimation is a second-best method, [the scope of estimation] should be confined to the extent necessary to accomplish the overarching goal of avoiding undue delay . . . and not expanded beyond that point." *North American Health Care*, 544 B.R. at 689. Therefore, "the party moving for estimation must show that the normal mode of liquidating the claim would create undue delay in the bankruptcy process." *Dow Corning*, 211 B.R. at 573. Importantly, courts have held that "undue delay" must rise to a level more than ordinary delay; instead, it must be "unjustifiable" delay. *Id.* at 563; *In re Teigen*, 228 B.R. 720,

---

[10] Estimation Motion, ¶ 28.

-8-

723 (Bankr. D.S.D. 1998); *see also In re A&B Assocs.*, L.P., 2019 WL 1470892, at *36 (Bankr. S.D. Ga. Mar. 29, 2019) (stating that "undue delay" is an "excessive or unwarranted slowing of the administration of a debtor's case"). Indeed, courts do not simply rubber stamp requests for estimation procedures, but conduct a factual inquiry into the purported delay identified by the movant and the movant's motivation for estimating, and in a number of circumstances have found that estimation under section 502(c) of the Bankruptcy Code is not warranted. *See, e.g.*, *Dow Corning*, 211 B.R. at 562–74; *LightSquared*, 2014 WL 5488413, at *5–6.

17.  Here, the BlockFi Debtors do not have a sufficient basis to carry their burden under section 502(c) of the Bankruptcy Code. The BlockFi Debtors merely assert that litigation over the FTX Claims will take significant time. But that is precisely the type of argument that courts have repeatedly rejected as a basis for estimation. *See, e.g.*, *Dow Corning*, 211 B.R. at 560–61 ("From the plain language of 502(c), it is clear that estimation does not become mandatory merely because liquidation may take longer and thereby delay the administration of the case. Liquidation of a claim, in fact, will almost always be more time consuming than estimation."); *Teigen*, 228 B.R. at 723 ("Although liquidation of a claim may take longer, the delay is only undue if it is unjustifiable.").

18.  The BlockFi Debtors have introduced no facts or evidence with respect to the timing, amount and nature of distributions to creditors in the event their liquidating plan is confirmed, and the size of any reserves that the BlockFi Debtors would need to establish under the liquidating plan, which facts go directly to the heart of what the actual cognizable delay would be from liquidating the FTX Claims.[11] Without demonstrating with particularity the need to estimate

---

[11]  Courts generally find undue delay and estimate claims when the debtor's plan has been confirmed, all conditions to distributions have been satisfied and estimation will allow immediate distributions to creditors to flow. *Compare In re Club Ventures Inv. LLC*, 2012 WL 6139082 (Bankr. S.D.N.Y. 2012) (estimating claims when

-9-

the FTX Claims in order to avoid cognizable delay in distributions, the BlockFi Debtors cannot carry their burden under section 502(c). That is particularly true given the FTX Debtors' confirmation of the reduction in the asserted amount of their preference claims set forth above—the BlockFi Debtors can eliminate any cognizable delay to their plan distributions simply by establishing a claims reserve on those claims and move forward with all other plan distributions.

19. Moreover, as described above, given the large number of complex issues inherent to an adjudication of the FTX Claims (even for estimation purposes), including issues with respect to the proper venue for the adjudication of issues and disputes, any estimation proceeding will be extraordinarily lengthy and complicated in order to provide "a realistic assessment" of the FTX Claims. *Enron*, 2006 WL 544463, at *3; *Dow Corning*, 211 B.R. at 563 ("[R]egardless of the estimation method selected, for the process to have any semblance of fairness it will necessarily involve hearings that would be quite lengthy and protracted."). As a result, the BlockFi Debtors cannot show any actual, cognizable delay resulting from the liquidation of the FTX Claims as compared to the estimation of the claims. In fact, the BlockFi Debtors have a separate motion pending seeking to liquidate the FTX Claims.

---

money was ready to be distributed to creditors but for claims requiring a reserve of 80% of the money in Debtor's escrow); *In re Enron Corp.,* 2006 WL 544463 (Bankr. S.D.N.Y. 2006) (estimating claim at $0 so that periodic distributions required by confirmed plan could continue and when it was clear that claim had no merit because it was already dismissed in district court and had a low probability of success on appeal); *In re AMR Corp.*, 2021 WL 2954824 (Bankr. S.D.N.Y. 2021) (granting estimation when Court had already disallowed the claims multiple times, the bankruptcy case had been ongoing for ten years, the plan had been confirmed almost eight years before, and the unliquidated claim caused an interruption in distributions), *with In re Apex Oil Co.*, 107 B.R. 189 (Bankr. E.D. Miss. 1989) (denying estimation when there was no showing of undue delay and debtor's plan was not yet confirmed); *In re RNI Wind Down Corp.*, 369 B.R. 174 (Bankr. D. Del. 2007) (denying estimation because debtor did not show undue delay and stating that absent a finding of undue delay, the Court is not obligated to estimate a claim).

## II. THE FTX FACILITY CLAIMS ARE NOT CONTINGENT AND ARE NOT SUBJECT TO ESTIMATION.[12]

20. The Estimation Motion should be denied as to the FTX Facility Claims for the additional reason that such claims are not contingent and therefore are not subject to estimation. The BlockFi Debtors seem to argue that the FTX Facility Claims are rendered contingent simply because the BlockFi Debtors intend to dispute the validity of those claims.[13] However, it is black letter law that "[s]imply because a debt is disputed by the debtor does not render it 'contingent.'" *In re Gordon*, 127 B.R. 574, 578 (Bankr. E.D. Pa. 1991); *see also In re Nicholes*, 184 B.R. 82, 89 (B.A.P. 9th Cir. 1995) ("Whatever the debtor believes, even a bona fide dispute over liability for a claim does not make the debt contingent."); *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997) ("We cannot view a debt as contingent merely because the debtor disputes the claim, for that would make the word 'contingent,' in the definition of 'claim,' redundant.").

21. Moreover, even if the "the validity of the FTX Claims" depends on "future findings" by a court,[14] that alone does not make the claim itself contingent, because "the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection 'liability' *does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim*." *Matter of Knight,* 55 F.3d 231, 236 (7th Cir. 1995) (emphasis added). As the BlockFi Debtors themselves acknowledge, the FTX Facility Claims arose from certain loan agreements entered into

---

[12] The FTX Debtors reserve their rights with respect to whether any of the other FTX Claims are in fact contingent as asserted by the BlockFi Debtors.

[13] *See* Estimation Motion ¶ 33.

[14] *Id.*

-11-

between the parties.[15] The BlockFi Debtors' obligations of repayment arose prior to the BlockFi Petition Date and do not depend on the occurrence of any future event. Therefore, the FTX Facility Claims are clearly not contingent.

### III. RESERVATION OF RIGHTS WITH RESPECT TO ANY ESTIMATION PROCEEDING ORDERED BY THE COURT

22.     To the extent that (A) the BlockFi Debtors seek in the future to offer evidence of undue delay to satisfy section 502(c) of the Bankruptcy Code, or (B) the Court determines that an estimation proceeding is warranted, the FTX Debtors reserve all rights to conduct discovery and object to scope of the relief, and any procedures or protocols approved by the Court (which the BlockFi Debtors have not proposed or sought approval for through the Estimation Motion). While the BlockFi Debtors seem to suggest that the Court should estimate the FTX Claims without any proceedings, *see* Estimation Motion ¶ 56 ("Thus, no matter the method this Court chooses to use, the circumstances of these Chapter 11 Cases and the contingencies surrounding the FTX Claims warrant estimation of all the FTX Claims at $0."), any estimation of the FTX Claims requires a full and fair process. *See Dow Corning*, 211 B.R. at 563 ("[R]egardless of the estimation method selected, for the process to have any semblance of fairness it will necessarily involve hearings that would be quite lengthy and protracted."). As the BlockFi Debtors themselves acknowledge, traditional litigation over the FTX Claims would be lengthy.[16] Given the novel nature and complexity of the issues underlying the FTX Claims, estimation-related discovery and litigation will require significant time and process, and any order establishing the protocols and procedures

---

[15]    *See* Estimation Motion ¶¶ 16, 33.

[16]    Estimation Motion, ¶ 49.

-12-

for the estimation proceedings must provide a fair opportunity for the FTX Debtors to prosecute their claims.

## RESERVATION OF RIGHTS

The FTX Debtors expressly reserve all rights, claims, arguments, defenses, and remedies with respect to the Preliminary Objection, the objection to the FTX Claims filed by the BlockFi Debtors, the Estimation Motion or any other issue in the BlockFi Chapter 11 Cases, and to supplement, modify, and amend this Objection, and to raise additional Objections in writing or orally at the hearing on the Estimation Motion.

## CONCLUSION

The FTX Debtors respectfully request that the Court deny the Estimation Motion.

Dated: September 13, 2023
New York, New York

*/s/ James L. Bromley*
James L. Bromley (NJ Bar No. 1551996)
Andrew G. Dietderich (*pro hac vice*)
Brian D. Glueckstein (*pro hac vice*)
Benjamin S. Beller (*pro hac vice* to be filed)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: bromleyj@sullcrom.com
    dietdericha@sullcrom.com
    gluecksteinb@sullcrom.com
    bellerb@sullcrom.com

*Counsel for the FTX Debtors*