Adam S. Ravin

Adam J. Goldberg (admitted *pro hac vice*)

Christopher Harris (admitted *pro hac vice*)

Brett M. Neve (admitted *pro hac vice*)

Nacif Taousse (admitted *pro hac vice*)

**LATHAM & WATKINS LLP**

1271 Avenue of the Americas

New York, NY 10020

Telephone: (212) 906-1200

Facsimile: (212) 751-4864

Email:  adam.ravin@lw.com

adam.goldberg@lw.com

christopher.harris@lw.com

brett.neve@lw.com

nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)

Tiffany M. Ikeda (*pro hac vice* pending)

**LATHAM & WATKINS LLP**

355 South Grand Avenue, Suite 100

Los Angeles, CA 90071

Telephone: (213) 485-1234

Facsimile: (213) 891-8763

Email:  nima.mohebbi@lw.com

tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators of Three
Arrows Capital, Ltd. (in liquidation)*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------- x

In re:                                                            :    Chapter 11

                                                                  :

BLOCKFI INC., *et al.*,[1]                                        :    Case No. 22-19361 (MBK)

                                                                  :

            Debtors.                                              :    (Jointly Administered)

                                                                  :

------------------------------------------------------- x

**NOTICE OF HEARING OF MOTION OF THE JOINT LIQUIDATORS OF THREE
ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I) MODIFYING THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(D)(1) AND BANKRUPTCY RULE
4001 AND (II) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

PLEASE TAKE NOTICE that a hearing on the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(D)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "**Motion**") will be held on **October 10, 2023 at 11:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "**Hearing**") before the Honorable Chief Judge Michael B. Kaplan, Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608.

PLEASE TAKE FURTHER NOTICE that the Motion sets forth the relevant factual bases upon which the relief requested should be granted.  A proposed Order granting the relief requested in the Motion is also submitted herewith.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion shall: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "**General Order**") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "**Supplemental Commentary**") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received on or before **October 3, 2023 at 4:00 p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Kroll Restructuring Administration, LLC at https://restructuring.ra.kroll.com/blockfi.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 13, 2023
New York, New York

Respectfully submitted,

*/s/ Adam S. Ravin*
Adam S. Ravin
Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   adam.ravin@lw.com
            chris.harris@lw.com
            adam.goldberg@lw.com
            brett.neve@lw.com
            nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:   nima.mohebbi@lw.com
            tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators*
*of Three Arrows Capital, Ltd. (in liquidation)*

Adam S. Ravin

Adam J. Goldberg (admitted *pro hac vice*)

Christopher Harris (admitted *pro hac vice*)

Brett M. Neve (admitted *pro hac vice*)

Nacif Taousse (admitted *pro hac vice*)

**LATHAM & WATKINS LLP**

1271 Avenue of the Americas

New York, NY 10020

Telephone: (212) 906-1200

Facsimile: (212) 751-4864

Email:  adam.ravin@lw.com
        adam.goldberg@lw.com
        christopher.harris@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)

Tiffany M. Ikeda (*pro hac vice* pending)

**LATHAM & WATKINS LLP**

355 South Grand Avenue, Suite 100

Los Angeles, CA 90071

Telephone: (213) 485-1234

Facsimile: (213) 891-8763

Email:  nima.mohebbi@lw.com
        tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd. (in liquidation)*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------ x

In re:
                           : Chapter 11

                               :

BLOCKFI INC., *et al.*,[1]
                 : Case No. 22-19361 (MBK)

                               :

       Debtors.
            : (Jointly Administered)

                               :

                               : **Objection Deadline:  October 3, 2023 at 4:00 p.m. EST**

                               : **Hearing Date:  October 10, 2023 at 11:00 a.m. EST**

------------------------------------------------------------ x

**MOTION OF THE JOINT LIQUIDATORS OF
THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER
(I) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)
AND BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

Russell Crumpler and Christopher Farmer, in their capacities as joint liquidators appointed by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**") in the liquidation proceeding of Three Arrows Capital, Ltd. ("**3AC**") in the British Virgin Islands (the "**BVI Proceeding**") and duly authorized foreign representatives (the "**Joint Liquidators**"), by and through the undersigned counsel, hereby submit this motion (the "**Motion**") pursuant to section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order substantially in the form of the order attached hereto as Exhibit A (the "**Order**"): (i) granting relief from the automatic stay to permit the commencement and adjudication of the causes of action set forth in the proofs of claim filed with this Court by the Joint Liquidators (the "**3AC POCs**", and the claims set forth therein, the "**3AC Claims**") before the BVI Court or, in the alternative, before the U.S. Bankruptcy Court for the Southern District of New York in an adversary proceeding related to 3AC's pending Chapter 15 case before Chief Judge Martin Glenn (the "**3AC Court**") and (ii) granting related relief.  In support of this Motion, the Joint Liquidators rely upon (a) the *Declaration of Grant Carroll in Support of Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (cited herein as "**Carroll Decl. ___**") and (b) the *Declaration of Russell Crumpler in Support of (A) The Motion of The Joint Liquidators of Three Arrows Capital, Ltd. For Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief and (B) the Motion of the Joint Liquidators for Authorization to File*

*Stay Relief Motion and Related Declaration Under Seal* (cited herein as "**Crumpler Decl. ___**").

The Joint Liquidators respectfully submit as follows:

## PRELIMINARY STATEMENT

1.      The Debtors participated in a series of transactions with 3AC in the months preceding 3AC's collapse and liquidation.  From May 5, 2022 to the commencement of the BVI Proceeding on June 27, 2022, the Debtors received transfers worth over $800 million from 3AC. Through the 3AC POCs, the Joint Liquidators have asserted claims to avoid, pursuant to BVI law, transfers valued at approximately $273 million as preferential transfers made by 3AC while it was insolvent.  A critical issue in these claims is likely to be when (perhaps even to the exact day) 3AC became insolvent.

2.      But this same issue is also critical to 3AC's global liquidation proceedings and claims against a multitude of parties.  3AC has asserted similar claims against other counterparties who are also debtors in their own chapter 11 proceedings.  Namely, 3AC has filed proofs of claim asserting claims analogous to the 3AC Claims against Genesis Global Holdco, LLC and its debtor affiliates (collectively, "**Genesis**") (in whose chapter 11 cases the Joint Liquidators have sought relief from the automatic stay for substantially the same reasons set forth here), against FTX Trading Ltd. and its debtor affiliates (collectively, "**FTX**"), and against Celsius Network LLC and its debtor affiliates ("**Celsius**").[2]  A critical issue in each of these claims is *when* (to the day) 3AC became insolvent.  In addition to solvency, there are other issues—such as whether intent to prefer is an element of unfair preference under BVI law (as the Debtors incorrectly contend, *see* ECF No.

---

[2]      As stated in the 3AC POCs, the information available to the Joint Liquidators regarding 3AC's assets, business, affairs—including 3AC's relationships with the Debtors and other third parties—has been severely limited by the lack of cooperation from the Founders and its meager books and records.  Accordingly, the Joint Liquidators may uncover additional claims, including claims of a similar nature to the 3AC Claims, against additional parties.

1375, ¶ 28 n. 9) and the meaning of "ordinary course" under BVI law—that will be the same across each of these claims.

3. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

4.      In essence, if the Joint Liquidators are not able to adjudicate the 3AC Claims, along with all other analogous claims 3AC has against other counterparties involving common questions of fact and law, in centralized fashion before the BVI Court, or in the alternative before the 3AC Court, the 3AC estate would be undertaking litigation on multiple fronts on the same issues and thereby risk inconsistent outcomes and judicial decisions across similar claims and common issues of fact and law.  Indeed, the Debtors appear to recognize that such relief is appropriate, as in their estimation motion (ECF No. 1346, ¶¶ 18, 23, 27) and claims objection (ECF No. 1375, ¶¶ 3, 22, 28) they criticize the Joint Liquidators for not yet having obtained a lifting of the automatic stay to prosecute their claims.  At a minimum, limited relief should be granted to allow the BVI Court (or, in the alternative, the 3AC Court) to determine the date upon which 3AC became insolvent because of the commonality of this issue to 3AC's claims against multiple parties.  For this and

other reasons, as discussed below, significant good cause exists to grant relief from the automatic stay in this matter.

## JURISDICTION

5.      This Court has jurisdiction over the Debtors' chapter 11 cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Joint Liquidators consent to this Court's entry of a final order on the Motion.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief sought herein include section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of New Jersey.

## BACKGROUND

**I.      The Relationship Between 3AC and the Debtors**

8.      3AC was an investment firm incorporated in the BVI with a focus on trading cryptocurrency and other digital assets.  3AC was founded in 2013 and initially focused on foreign-exchange arbitrage before shifting to cryptocurrency trading in 2018.  The Debtors were one of 3AC's largest purported lenders.  Between 2019 and 2022, the Debtors extended 3AC billions in loans (the "**Loans**").

9.      In early 2022, the global cryptocurrency market experienced a historic and momentous decline, and 3AC collapsed as a result.  Ultimately, 3AC lost around $2.7 billion in

value between February and May 2022.  3AC's collapse was in part due to the failure of one of

3AC's most significant investments: the "Luna" token.[3]

10.     The Debtors were obviously aware of the decline in the cryptocurrency markets

from 2021 through 3AC's collapse in 2022 and, on information and belief, the Debtors were aware

of 3AC's exposure to certain cryptocurrency and digital assets who value severely deteriorated

(and in some cases, completely collapsed) during the market decline.[4]  Nevertheless, from May 5

through May 27, 2022 alone, *after the Luna collapse*, the Debtors received approximately $273

million in assets from 3AC.

11.     On June 14, 2022, BlockFi Lending accelerated the Loans and purported to

foreclose on assets in which BlockFi Lending asserted a security interest.[5]  The Debtors have

represented that as of June 15, 2022, approximately $1.085 billion of Loans to 3AC remained

outstanding and they still held approximately $1.036 billion of 3AC's assets as collateral.  On

information and belief, between June 15 and 23, 2022, the Debtors purported to foreclose on these

remaining 3AC assets in their possession.

12.     On June 27, 2022, 3AC commenced the BVI Proceeding, and the BVI Court

appointed Russell Crumpler and Christopher Farmer as 3AC's joint liquidators.  On July 28, 2022,

the Joint Liquidators obtained recognition of the BVI Proceeding as a "foreign main proceeding"

---

[3]   "Luna" was the reserve currency for the associated token TerraUSD, which was a "stablecoin" designed to maintain a value of one U.S. dollar.

[4]   *See Preliminary Report Addressing Question Posed by the Official Committee of Unsecured Creditors:* Why Did BlockFi Fail?, ECF No. 1202 at 52 ("BlockFi knew or should have known that UST and LUNA were substantial components of 3AC's investment portfolio and that 3AC was perilously close to collapse" when BlockFi loaned $938 million to 3AC between May 15 and May 27, 2022).

[5]   The Debtors assert that the Loans extended to 3AC pursuant that certain Master Loan Agreement (as amended and restated on April 23, 2020 and amended on February 24, 2021) were secured by Bitcoin (BTC), interests in Grayscale Bitcoin Trust (GBTC), Grayscale Ethereum Trust (ETHE), Grayscale Ethereum Classic Trust (ETCG), Grayscale Digital Large Cap Fund (GLCF), Grayscale Zcash Trust, cash, general intangibles, investment property, and financial assets.  Est. Mot. ¶ 8; Claim Obj. ¶ 15.

6

under Chapter 15 of the Bankruptcy Code before the Honorable Martin Glenn of the U.S. Bankruptcy Court for the Southern District of New York. *In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y. July 28, 2022), ECF No. 47.

13. As discussed in the 3AC POCs, the Joint Liquidators assert claims *inter alia* to avoid, pursuant to BVI law, preferential transfers to the Debtors by 3AC while it was insolvent. In order to preserve these claims, the Joint Liquidators timely filed the 3AC POCs.

14. Now, the Joint Liquidators seek relief from the automatic stay in these chapter 11 cases to commence and adjudicate the 3AC Claims before the BVI Court, or in the alternative before the 3AC Court, to enable the centralized resolution of such claims before the same court along with 3AC's analogous claims against other counterparties, without running the risk of multifront litigation resulting in inconsistent outcomes and judicial determinations of similar questions of law and fact.

## II. Timeliness of this Motion in Light of Developments in these and other Pending Chapter 11 Proceedings

15. The Joint Liquidators face substantial timing pressures in these chapter 11 cases. The Debtors filed an objection to the 3AC Claims and a motion seeking estimation of such claims at $0, with both matters set for at least initial hearings on September 20, 2023. ECF Nos. 1346, 1375. The Debtors seek to neutralize the 3AC Claims on an expedited timetable in parallel with the Debtors' plan process, which includes a confirmation hearing currently scheduled for September 26, 2023.

16. The Genesis Debtors are likewise seeking to prosecute an objection to the Joint Liquidators' claims on an accelerated schedule purportedly designed to prevent delays of distributions under the Genesis Debtors' yet-to-be-filed chapter 11 plan. *See In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 1, 2023), ECF Nos. 658, 659.

7

The Joint Liquidators have likewise opposed those attempts and have sought relief from the stay

in the Genesis chapter 11 cases. *See In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL)

(Bankr. S.D.N.Y. Sept. 6, 2023), ECF No. 678.  Additionally, the Joint Liquidators have filed a

motion to shorten the notice period in the Genesis chapter 11 cases such that the hearing on the lift

stay motion can take place on September 26, 2023.  *See In re Genesis Global Holdco, LLC*, Case

No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 7, 2023), ECF No. 686.  A hearing on the Genesis

Debtors' scheduling motion was held on September 6, 2023, pursuant to which Judge Lane

scheduled a further status conference for October 24, 2023 and instructed the parties to complete

fact discovery by November 6, 2023.

17.     In light of these developments, the filing of this Motion, and a substantially similar

motion in the Genesis chapter 11 cases, is an essential and timely step in the Joint Liquidators'

efforts to preserve and ensure centralized resolution of their claims against their various litigation

counterparties.

### BASIS FOR RELIEF

**I.      The Automatic Stay Should Be Lifted to Permit the Commencement and Adjudication of the 3AC Claims before the BVI Court, or in the Alternative, before the 3AC Court.**

18.     Under the Bankruptcy Code, the filing of a bankruptcy petition automatically stays

"the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor

that was or could have been commenced before the commencement of the [bankruptcy]."

11 U.S.C. § 362(a)(1).  However, stays are not unmovable, as the Code also provides for lifting

them under certain circumstances.  Specifically, section 362(d)(1) states that "[o]n request of a

party in interest . . . the court shall grant relief from the automatic stay . . . by terminating,

annulling, modifying, or conditioning such stay . . . (1) for cause, including the lack of adequate

protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).

8

19.     While the Bankruptcy Code does not define the phrase "for cause," courts recognize it as "a broad and flexible concept that must be determined on a case-by-case basis." *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004) (quoting *In re Merchant*, 256 B.R. 572, 576 (Bankr. W.D.Pa. 2000)); *see also In re Marasek*, Case No. 08-30919 (MBK), 2015 WL 1799743, at *3 (D.N.J. Apr. 16, 2015) (quoting *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 761 (D.N.J. 1996) ("Courts do not apply a rigid test to determine if "good cause" exists but instead employ a 'balancing test in which the interests of the Debtor's estate are weighed against the hardships that will be incurred by the movant.'")).  The movant must make an initial showing of cause, and then the burden of proof shifts to the debtor to rebut that cause exists.  11 U.S.C. § 362(g); *see also In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Ultimately, whether to lift the stay is in the Court's discretion.  *Sonnax*, 907 F.2d. at 1286.

20.     In determining whether to modify or lift the automatic stay to allow litigation against a debtor to proceed in another forum, courts in this Circuit typically consider the twelve factors set forth by the Second Circuit in the *Sonnax* case.  Those factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286; *see In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (applying the same factors).  A court need only apply the factors relevant to the

particular case and does not need to give each factor equal weight.  *In re Project Orange Assocs.,*

*LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010).  Here, the balance of the *Sonnax* factors

supports lifting the automatic stay.

    **A.**    **The *Sonnax* Factors for Granting a Motion to Lift the Automatic Stay Support the Relief Requested Herein**

    (i)    *Sonnax Factor 1: whether relief would result in a partial or complete resolution of the issues*

21.    The BVI Court is fully capable of reaching a complete resolution of 3AC's Claims,

including issues based on U.S. law, as described in the *Declaration of Grant Carroll in Support of*

*Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying*

*the Automatic Stay Pursuant to 11 U.S.C. 362(D)(1) and Bankruptcy Rule 4001 And (II) Granting*

*Related Relief*, which is attached hereto as **Exhibit B**.

22.    In the alternative, the 3AC Court could afford a complete resolution of the 3AC

Claims.

23.    It is possible the Debtors may later seek equitable subordination of the 3AC Claims

after adjudication, but there is no such request for subordination pending that makes this issue

relevant to this Motion.  Even if the Debtors do seek subordination, the legal issues and facts

involved will be different than those necessary to decide the 3AC Claims such that there are not

efficiencies to be gained from deciding the issues together.  For example, equitable subordination

involves claims by the Debtors that the Founders defrauded the Debtors and that the Founders

conduct in frustrating the 3AC liquidation, both of which involve the conduct of the Founders that

is not at issue in the prepetition preference claims asserted by the Joint Liquidators.  *See* ECF No.

1310 at 53.

24.    Further, the Debtors have filed a claim against 3AC in the BVI Proceeding for $1,

which is not before this Court.  Nonetheless, in these chapter 11 cases the Debtors' have disclosed

claims against 3AC arising from repayment of the Loans for approximately $142 million and, consequently, the Joint Liquidators anticipate that the Debtors will assert such claims in the BVI Proceeding.  *See* ECF No. 1310 at 15.  The Debtors have asserted a setoff right as a defense to the 3AC Claims and, likewise, the Joint Liquidators have an analogous setoff right under BVI law with respect to any distributions on account of BlockFi's claims from the 3AC estate.  *See* ECF No. 1375 ¶ 30.  A complete resolution of the dispute among the parties will necessarily involve adjudication of both the 3AC Claims and the BlockFi claims against 3AC, and the most efficient path to resolving the dispute is to have a single court decide both claims.  While both this Court and the BVI Court may be capable of providing a final resolution, the Joint Liquidators respectfully submit that the BVI Court is the more appropriate venue for adjudicating the dispute given the predominance of BVI law issues—$273 million of the $283 million in 3AC Claims are comprised of BVI law preference claims and both the remaining $10 million in 3AC Claims and the Debtors' claims against 3AC are routine contract claims for repayment of loans.

25.    Further, at present, the BVI Court is the only option for a single forum to resolve the claims.  Under the BVI Insolvency Act 2003, the Joint Liquidators will make a determination to admit or reject the Debtors' claim in the first instance.  If the Debtors wish to challenge the Joint Liquidators' determination on the validity of their claims, it would be the BVI Court that hears such dispute.  *See* Carroll Decl. ¶ 24.

26.    Accordingly, the first *Sonnax* factor weighs in favor of the relief requested herein. *See In re Patriot Contracting Corp.*, No. 05-33190 DHS, 2006 WL 4457346, at *1 (Bankr. D.N.J. May 31, 2006) (granting Plaintiff's motion for stay relief and noting that "permitting the third-party action to proceed in the state court will result in the complete resolution of the dispute between [Plaintiff] and the Debtor[]"); *see also In re Mildred Deli Grocery, Inc.*, No. 18-10077

(MG), 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018) (In finding that Sonnax factor 1

supports relief from the stay in that case, the court stated that "[r]elief from the stay would result

in the District Court determining whether the Debtor is liable and the amount of the claim would

be liquidated, thus resolving the Movants' FLSA claims completely.").

> (ii)    *Sonnax Factor 2: whether there is a connection with or interference with the Debtors' bankruptcy case*

27.    Lifting the stay would not interfere with the Debtors' bankruptcy case.  The Debtors

concede that the unliquidated nature of the 3AC Claims does not prevent them from proceeding

with confirmation in their chapter 11 cases, and a reserve may be created for the 3AC Claims

pending adjudication, and so lifting the stay would not impede these processes.  Likewise, lifting

the stay would not impede liquidation of the 3AC Claims; discovery in connection with the 3AC

Claims can continue and lifting the stay would simply result in another court holding the ultimate

trial on the merits of the 3AC Claims.  *See In re Barksdale*, Case No. 13-25477 (VFP), 2015 WL

9700952, at *4 (Bankr. D.N.J. Nov. 10, 2015) ("The [bankruptcy] case is really substantially

complete except for this matter.  So there's going to be no interference at all with the conduct of

this [bankruptcy] case"); *In re Cicale*, No. 05-14462 AJG, 2007 WL 1893301, at *4 (Bankr.

S.D.N.Y. June 29, 2007) ( "[A]lthough the Third–Party Action will delay the prosecution of the

discharge action, any delay will not unnecessarily interfere with the bankruptcy case.  That is

because if [movant] does not commence the Third–Party Action, similar litigation would go

forward in the discharge action, and thus, [Sonnax factor 2] weighs in favor of [movant].").

28.    Accordingly, lifting the stay in this case could not credibly be characterized as

resulting in any meaningful interference with the Debtors' restructuring efforts.  The second

*Sonnax* factor therefore weighs in favor of the relief requested herein.

(iii)  *Sonnax Factor 3: whether the other proceeding involves the debtor as a fiduciary*

29.    The 3AC Claims, as asserted in the 3AC POCs, are not asserted against the Debtors

by virtue of any status they may have as fiduciaries.  Accordingly, this factor is not applicable.

*See In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (stating that "*Sonnax* [factor] 3 . . . [is]

not relevant to this matter as the [underlying litigation] does not involve the Debtor as a fiduciary.

. . .").

(iv)  *Sonnax Factor 4: whether a specialized tribunal with the necessary expertise has been established to hear the cause of action*

30.    One of the most obvious reasons to lift the stay and permit litigation of the 3AC

Claims before the BVI Court is that such litigation would be conducted before the very specialized

tribunal with necessary expertise to adjudicate BVI law issues—the BVI Court.  BVI issues

represent the basis for the great majority of the 3AC Claims—$273 million of the approximately

$283 million in claims asserted by the Joint Liquidators are preference claims under BVI law.[6] ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  As a result, the solvency issue

that is core to the 3AC Claims is already pending before the BVI Court and will be adjudicated by

that court regardless of where the 3AC Claims are litigated.  Further, allowing the BVI Court to

adjudicate the 3AC Claims (or at least the issues of insolvency) would obviate the need for this

Court to resolve certain BVI law issues, which would necessarily involve expending additional

resources on BVI law expert testimony and evidence.  Therefore, the fourth *Sonnax* factor weighs

in favor or the relief requested herein.  *See In re Cortuk*, 2019 WL 2171481 at *5 (affirming the

---

[6]    The remaining approximately $10 million is for repayment of a loan extended by 3AC to BlockFi.

bankruptcy court's finding that relief from the stay is warranted on the basis of the *Sonnax* factors,

including that the underlying litigation "involved foreign law with which foreign courts would be

more familiar.").

(v)    *Sonnax Factor 5: whether the debtor's insurer has assumed full
        responsibility for defending it*

31.    To the Joint Liquidators' knowledge, no insurer has assumed responsibility for

defending the 3AC Claims.  Accordingly, this factor is not applicable.  *See Taub*, 413 B.R. at 62

("*Sonnax* [factor 5] [is] not relevant to this matter as the [underlying litigation] . . . does not involve

insurance . . . .").

(vi)    *Sonnax Factor 6: whether the action primarily involves third parties*

32.    To the Joint Liquidators' knowledge, no third parties are expected to be involved

as parties in the 3AC Claims litigation.  *See Taub*, 413 B.R. at 64-65 (*Sonnax* factor 6 "does not

weigh in favor or against relief from the automatic stay" where third parties are not involved).

(vii)    *Sonnax Factor 7: whether litigation in another forum would prejudice the
         interests of other creditors*

33.    The interests of the Debtors' creditors would not be prejudiced by lifting the stay

in this case.  No other creditor is asserting, like 3AC, that it is entitled to recover the assets

identified in the 3AC Claims on the basis of avoidance powers.  That issue is unique to 3AC and

is purely a dispute among 3AC (as represented by the Joint Liquidators), on the one hand, and the

Debtors, on the other hand.  *See In re Cortuk*, 2019 WL 2171481 at *5 (approving bankruptcy

court's finding that allowing the foreign litigation to proceed "would not prejudice other creditors

because any recovery would return to the estate for the benefit of all creditors"); *Musso v. Hirsch*,

2011 WL 4543225, at *12 (E.D.N.Y. Sept. 29, 2011) ("Should [Plaintiff] prevail in state court [on

her fraudulent conveyance claim], her victory would not give her a superior position over other

creditors. In fact, it would benefit them.  Granting the Trustee's motion would not prejudice the

interests of other creditors."); *In re Rochester Drug Cooperative, Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) (finding that *Sonnax* factors 7, 10, and 12, weigh most heavily in favor of granting stay relief for a party to assert a counterclaim for setoff against the debtor because the alleged setoff claim was "not a claim available to all unsecured creditors.").

34.     Likewise, lifting the stay will not prejudice other creditors or the restructuring process in these chapter 11 cases.  A reserve may be created for the 3AC Claims pending resolution that would allow the plan to be confirmed and enable the wind-down trustee to begin making distributions, as is typical in chapter 11 cases while disputed claims are resolved.  Indeed, in the only cryptocurrency-related chapter 11 case counsel is aware of in which a plan has been confirmed, over 50% of the assets available for distribution were reserved, and 33% of the assets available, or $445 million, were reserved for preference claims by a single creditor.  *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, Case No 22-10943, ECF No. 1374 (Bankr. S.D.N.Y. May 5, 2023), at 4.

35.     Accordingly, this factor weighs in favor of the relief requested herein.

(viii)   *Sonnax Factor 8: whether the judgment claim arising from the other action is subject to equitable subordination*

36.     While equitable subordination is an affirmative defense to a motion for relief from the stay, *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991), it is only relevant where the movant seeks relief from the stay on the basis of its security interest in the property subject to litigation, *id*. at 293.  In that scenario, the creditor moving for relief on the basis of its security interest effectively loses its secured status if it is equitably subordinated, and therefore its basis for relief from the stay.  As discussed, that is not the case here, as 3AC's claims do not hinge on a preexisting security interest asserted by 3AC in the assets that

are subject to such claims.  Rather, the 3AC Claims are in the nature of preference.  Accordingly, this factor weighs in favor of granting the relief requested herein.

> (ix)    *Sonnax Factor 9: whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor*

37.    3AC's success on the 3AC Claims would not result in a judicial lien that is avoidable by the Debtors.  Accordingly, this factor weighs in favor of the relief requested herein. *See In re Cortuk, 2019 WL 2171481 at \*5* (upholding the bankruptcy court's finding that the ninth Sonnax factors favors relief from the stay because the foreign litigation "would not result in a judicial lien avoidable by [Defendant]"); *In re Artisanal 2015, LLC,* No. 17-12319 (JLG), 2017 WL 5125545, at \*12 (Bankr. S.D.N.Y. Nov. 3, 2017) (finding that the ninth *Sonnax* factor weighs in favor of relief from the stay where judgment in the underlying litigation in favor of the movant seeking relief from the stay would not result in a judicial lien avoidable by the debtor).

> (x)    *Sonnax Factor 10: whether lifting the stay serves the interests of judicial economy and the expeditious and economical resolution of litigation*

38.    Most importantly, litigation of the 3AC Claims before the BVI Court, or in the alternative, the 3AC Court, serves the interests of judicial economy and the expeditious and economical resolution of the disputes.  *See e.g., In re Lyondell Chem. Co.*, 402 B.R. 596, 609–10 (Bankr. S.D.N.Y. 2009) ("[T]he interests of judicial economy and expeditious resolution of the litigation normally are amongst the most important factors in any Sonnax analysis."); *In re Patriot Contracting Corp.,* Case No. 05-33190 (DHS), 2006 WL 4457346, at \*3 (Bankr. D.N.J. May 31, 2006) (finding that the tenth *Sonnax* factor weighed in favor of granting relief because "judicial economy will be best served by granting the motion and permitting the action to continue in the state court"); *In re SCO Grp., Inc.*, 395 B.R. 852, 859 (Bankr. D. Del. 2007) (noting the policies underlying *Sonnax* and holding that the relief from stay was appropriate in the "interests of judicial economy and the expeditious and economical resolution of litigation" due to the District Court's

specialized knowledge); *In re Chatkin*, 465 B.R. 54, 62 (Bankr. W.D. Pa. 2012) (finding that

interest of judicial economy favored lifting the stay because it would "eliminate the need for two

litigations of the same issues, it would also prevent the possibility of inconsistent judicial

outcomes, something which is always a concern").  The 3AC Claims are most appropriately and

efficiently litigated before the BVI Court or the 3AC Court (in the alternative), where core legal

and factual issues involved in the 3AC Claims and similar claims against other parties 3AC (*e.g.*,

Genesis, FTX, and potentially among others) can be adjudicated by one court.

39.    First, requiring the Joint Liquidators to litigate substantially similar claims before

multiple courts will lead to a significant and unnecessary expenditure of estate and judicial

resources, ultimately to the detriment of 3AC's creditors, and in contravention of all principals of

judicial economy.

40.    Second, litigating the 3AC Claims before the BVI Court will be most efficient

because it will allow for resolution of BlockFi's ability to assert and recover on its claims against

3AC, which will be before the BVI Court regardless of which court decides the 3AC Claims.

41.    Third, multifront litigation also carries the risk of inconsistent outcomes on various

core issues that are common across 3AC's claims against the aforementioned counterparties.

An example of such a core issue is the date of 3AC's insolvency.  *When* 3AC became insolvent is

determinative of which transfers may be avoided as preferences.  Were the stay not lifted, and the

Joint Liquidators forced to litigate this issue in multiple courts, various courts adjudicating the

issue may reach inconsistent outcomes, resulting in factually analogous transfers being recoverable

against one party but not against another, simply as a result of the court where the particular claims

were tried.  *See In re Davis*, 91 B.R. 470, 471 (Bankr. N.D. Ill. 1988) ("Cause for lifting the stay

exists here, principally because of the risks, if the stay is not lifted, of inconsistent results in two

forums, of a conflict in the interpretation of state law between this court and the state court, and of

duplication of lawyer and judicial effort.").

42.     In the case of 3AC's claims against these Debtors alone, there will be disputes on

insolvency down to the day that could have impacts into the hundreds of millions of dollars.  The

market movements that occurred in this time period will be a focal point of litigation over

insolvency, which will be a decisive element of deciding which preference claims are valid.

Indeed, between the period from November 2021 to May 2022, global crypto markets declined by

over $1.7 trillion from a high of over $3 trillion in November 2021 to a low of $1.3 trillion on May

11, 2022.[7]  And between May 3, 2022 and May 13, 2022, the price of Luna fell to effectively $0.[8]

During this market turmoil, 3AC made various transfers to the Debtors and other counterparties

that the Joint Liquidators assert constitute preferential transfers.  For example, on May 5 and May

9, 2022, 3AC made payments of $29 million and $71 million, respectively, to the Debtors on

account of the Loans, which are subject to preference claims.  On May 12 and 18, 2022, 3AC

transferred 21,025 ETH and 13,200 ETH to the Debtors in response to margin calls on the Loans—

again, transfers that are subject to preference claims.  And on May 27, 2022, 3AC transferred

GBTC, ETHE, and ETCG interest and cash worth approximately $100 million in response to

margin calls on the Loans, which are also subject to preference claims.  Precisely when 3AC

became insolvent is determinative of whether the Joint Liquidators' preference claims can succeed

with respect each of those transfers.  In addition, rulings on the day that 3AC became insolvent or

---

[7]    https://www.coingecko.com/en/global-charts

[8]    https://www.forbes.com/sites/lawrencewintermeyer/2022/05/25/from-hero-to-zero-how-terra-was-toppled-in-cryptos-darkest-hour/?sh=65244847389e.

related issues in one case could impact the 3AC estate and its creditors as it relates to other cases, and in this context, one court should resolve these questions.

43.     Fourth, not only would multifront litigation require the 3AC estate to expend substantial resources litigating the same issues in multiple courts in parallel, and in doing so risk inconsistent outcomes with respect to similarly situated defendants, but any unfavorable outcome in any one court could be used against 3AC in other courts (via the doctrine of equitable estoppel) notwithstanding active litigation on the same issue.  Such an outcome would grant an undue litigation advantage to 3AC's adversaries by providing them with a basis to cherry-pick the outcomes of multiple proceedings and argue that 3AC should be tied to every unfavorable outcome in any one court.

44.     Finally, the BVI Court and the 3AC Court both have a far greater interest in resolving the 3AC Claims.  *See In re Aerovias Nacionales De Colombia S.A. Avianca*, 345 B.R. 120, 124 (Bankr. S.D.N.Y. 2006) (finding that the *Sonnax* factors favored litigation in the foreign court that had a greater interest in resolving the underlying claims).  The 3AC Claims represent one of the largest assets of the 3AC estate, and the ability to recover the on the 3AC Claims would significantly increase the recoveries available to 3AC's creditors.  Furthermore, a decision on the timing of 3AC's insolvency will have broad impacts on 3AC's claims against other parties.  Accordingly, while the issues presented in adjudicating the 3AC Claims are ancillary in these chapter 11 cases, they are central and case-altering from the perspective of the BVI Proceeding and 3AC's Chapter 15 case.

45.     For the reasons set forth above, the tenth *Sonnax* factor weighs heavily in favor of the relief requested herein.

(xi) *Sonnax Factor 11: whether the parties are ready for trial in the other proceeding*

46.    While the parties are not, as of the filing of this Motion, ready for trial on the 3AC Claims in the BVI Proceeding or 3AC's chapter 15 case, they likewise are not ready for trial here. Instead, they have been engaged in ongoing discovery efforts for weeks, which the parties could agree to use in any of these tribunals, and are accordingly advancing towards trial of the issues regardless of where the ultimate trial occurs.  Lifting the stay would only affect the court before which such trial is held.  This factor therefore weighs in favor of relief from the stay or is neutral.

(xii) *Sonnax Factor 12: the impact of the stay on the parties and the balance of harms*

47.    The impact of the stay on the parties and the balance of harms weigh heavily in favor of the relief requested herein.  Maintaining the automatic stay is prejudicial to 3AC and the Joint Liquidators, who would be forced to expend their estate's resources in the pursuit of analogous claims and litigation of many of similar issues before multiple courts, on different timelines and in decentralized, uncoordinated fashion, and at risk of unfair preclusive effects.  This incremental cost and the likely time delay resulting from uncoordinated multi-front litigation are exclusively borne by 3AC and its creditors.

48.    Additionally, maintaining the stay and preventing the adjudication of the 3AC Claims before the BVI Court (or, in the alternative, the 3AC Court) significantly prejudices 3AC's creditors.  3AC's creditors are obviously the economic beneficiaries of the 3AC Claims.  *See In re Sierra Concrete Design, Inc.*, 463 B.R. 302, 307 (Bankr. D. Del. 2012) ("[T]he underlying purpose of the preference law [is] . . . to level the pre-bankruptcy playing field for all creditors.").  Yet, if the 3AC Claims were litigated before this Court, 3AC's creditors may lose the ability to be heard on such issues, despite the fact that they are the main economic stakeholder therein.  Accordingly, the balance of harms on the parties favors lifting the stay.

49.      In contrast, as described above, lifting the stay will not prejudice the Debtors or their restructuring process.  The Debtors may create a reserve for the 3AC Claims pending resolution, as is typical in chapter 11 cases and, indeed, was done in the *Voyager* chapter 11 cases. *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, Case No 22-10943, ECF No. 1374 (Bankr. S.D.N.Y. May 5, 2023), at 4.

50.      In summary, factors 1, 2, 4, 7, 8, 9, 10 and 12 all weigh in favor of lifting the stay under the present facts, factor 11 weighs in favor of relief from the stay or is neutral, while factors 3, 5, and 6 are not applicable.  Accordingly, the balance of the *Sonnax* factors weighs in favor of the relief requested herein.

51.      As further support of the analysis set forth above, at least one court has granted relief from the automatic stay to allow one debtor to pursue in its own bankruptcy case avoidance actions against another debtor.  *See In re Shared Techs. Cellular, Inc.*, 281 B.R. 804 (Bankr. D. Conn. 2002), *aff'd*, 293 B.R. 89 (D. Conn. 2003).  That court's decision was affirmed on appeal. *In re Shared Techs. Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003) (bankruptcy court acted appropriately and within its jurisdiction in its modification of the automatic stay to permit the movant to litigate its preference claims before its own bankruptcy court).

## CONCLUSION

52.      For the foregoing reasons, the balance of the applicable *Sonnax* factors demonstrates that cause exists for the automatic stay to be lifted or modified to permit 3AC to liquidate the 3AC Claims before the BVI Court within the context of the BVI Proceeding (or, in the alternative, before the 3AC Court within the context of 3AC's Chapter 15 case).  Additionally, because the *Sonnax* factors also provide sufficient grounds to waive the requirements of Bankruptcy Rule 4001(a)(3), the Joint Liquidators respectfully request that the order modifying the stay be made effective upon issuance so that 3AC can proceed with its action without delay.

## WAIVER OR MEMORANDUM OF LAW

53.     The Joint Liquidators respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Joint Liquidators rely is set forth herein and the Motion does not raise any novel issues of law.

## NOTICE

54.     Notice of this Motion has been provided to (a) the Chambers of the Honorable Michael B. Kaplan, (b) the Debtors, (c) counsel for the Debtors, (d) the Office of the U.S. Trustee for the District of New Jersey (Trenton), and (e) all other parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Joint Liquidators submit that such notice is sufficient, and no other or further notice need be provided.

## NO PRIOR REQUEST

55.     No prior request for the relief sought in this Motion has been made by the Joint Liquidators to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Joint Liquidators respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 13, 2023         Respectfully submitted,
      New York, New York

<u>/s/ Adam S. Ravin</u>
Adam S. Ravin
Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.ravin@lw.com
       chris.harris@lw.com
       adam.goldberg@lw.com
       brett.neve@lw.com
       nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
       tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators*
*of Three Arrows Capital, Ltd. (in liquidation)*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of September, 2023, a true and correct copy of the foregoing Motoin was furnished to all ECF Participants via the CM/ECF system, and further, served by email upon the following:

**Debtors' Counsel**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
**COLE SCHOTZ P.C.**
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Tel: (201) 489-3000
Email: msirota@coleschotz.com
         wusatine@coleschotz.com

Joshua A. Sussberg, P.C.
Christine A. Okike, P.C.
**Kirkland & Ellis LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Email: jsussberg@kirkland.com
         christine.okike@kirkland.com

Richard S. Kanowitz, Esq.
Kenric D. Kattner, Esq.
**HAYNES AND BOONE, LLP**
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Tel: (212) 659-7300
Email: richard.kanowitz@haynesboone.com
         kenric.kattner@haynesboone.com

**Counsel to the Official Committee of Unsecured Creditors**
GENOVA BURNS LLC
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Tel: (973) 230-2095
Fax: (973) 533-1112

Email: DStolz@genovaburns.com
DClarke@genovaburns.com
GKinoian@genovaburns.com

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Fax: (212) 209-4801
Email: rstark@brownrudnick.com
kaulet@brownrudnick.com
bsilverberg@brownrudnick.com

Stephen D. Palley, Esq.
601 Thirteenth Street, NW
Washington, DC 20005
Tel: (202) 536-1700
Fax: (202) 536-1701
Email: spalley@brownrudnick.com

Tristan G. Axelrod, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201
Email: taxelrod@brownrudnick.com
sdwoskin@brownrudnick.com

**Office of the U.S. Trustee**
UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF THE UNITED
STATES TRUSTEE ANDREW R. VARA UNITED STATES TRUSTEE,
REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Email: jeffrey.m.sponder@usdoj.gov
lauren.bielskie@usdoj.gov

*/s/  Adam S. Ravin*
Adam S. Ravin

**Exhibit A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
----------------------------------------------------------- x
In re:                                       :    Chapter 11
                                             :
BLOCKFI INC., et al.,[1]                      :    Case No. 22-19361 (MBK)
                                             :
                Debtors.                     :    (Jointly Administered)
                                             :    Re: ECF Nos. [ ● ]
----------------------------------------------------------- x
```

**ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT**
**TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001**
**AND (II) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion") filed by the Joint

Liquidators[2] for entry of an Order (a) lifting the automatic stay in the chapter 11 cases to allow the

commencement and adjudication of the 3AC Claims before the BVI Court, or, in the alternative,

before the 3AC Court, and (b) granting related relief; and, after due deliberation, the Court having

concluded that the Joint Liquidators have established sufficient cause for the relief granted herein;

and no additional notice being required, now, therefore, it is hereby ORDERED that:

1.      The Motion is **GRANTED** as set forth herein.

2.      The automatic stay is lifted pursuant to Bankruptcy Code section 362(d) and

Bankruptcy Rule 4001 for the purpose of allowing the Joint Liquidators to commence and

adjudicate the 3AC Claims against the Debtors before the [BVI Court / 3AC Court].

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2]      Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

3.      The rights of the Debtors and 3AC with respect to allowance and distribution of the

3AC Claims in the Debtors' chapter 11 cases are expressly reserved.

4.      This Order is without prejudice to any and all other rights of 3AC with respect to

the 3AC Claims, all of which are hereby reserved.

5.      The parties are authorized, but not directed, to take all actions necessary to

effectuate the relief granted pursuant to this Order.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient.

7.      The relief granted in this Order shall be effective immediately and shall not be

subject to the 14-day stay of enforcement under Federal Rule of Bankruptcy Procedure 4001(a)(3).

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation of this Order.


Dated:          _____, 2023
                Trenton, New Jersey



                                        _____
                                        The Honorable Michael B. Kaplan
                                        United States Bankruptcy Judge