**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------ x
In re:                                              : Chapter 11
                                                    :
BLOCKFI INC., *et al.*,[1]                          : Case No. 22-19361 (MBK)
                                                    :
         Debtors.                       : (Jointly Administered)
                                                    :
                                                    :
------------------------------------------------------------ x

**DECLARATION OF GRANT CARROLL IN SUPPORT OF MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF**

1. I, Grant Carroll, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief.

**Introduction**

2. I am a partner of the law firm Ogier. Ogier is a law firm that advises clients worldwide on the laws of the British Virgin Islands ("**BVI**"), the Cayman Islands, Jersey, Guernsey, Ireland and Luxembourg. I have practiced law in the BVI since 2013 and I advise on the laws of the BVI.

3. I practice in Ogier's BVI Dispute Resolution team as a partner. I have considerable experience advising court-appointed liquidators, banks, multinational corporations and financial services institutions in the restructuring, liquidation and winding-up of BVI companies and funds.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

4. Although I am not an attorney admitted to practice in the United States, I am familiar with various procedural aspects of United States law, and in particular the U.S. bankruptcy proceedings as a consequence of my practice in cross-border matters.

5. I respectfully submit this declaration in support of the Motion of Russell Crumpler and Christopher Farmer, the duly appointed joint liquidators and foreign representatives (together, the "**Joint Liquidators**") of Three Arrows Capital Ltd. ("**3AC**") by the Eastern Caribbean Supreme Court in the BVI High Court of Justice (Commercial Division) ("**BVI Court**"), Claim No. BVIHC (COM) 2022/0117 and BVIHC (COM) 2022/119, pursuant to sections 159(1) and 162(1)(a) and (b) of the BVI Insolvency Act, seeking an order (1) modifying the automatic stay pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (2) granting related relief (the "**Motion**").

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or based upon my review of relevant documents.

7. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of the BVI, in my experience as a practicing BVI attorney.

## Background

8. I have reviewed the Joint Liquidators' Motion and I understand one of the key elements of relief sought in the Motion is an order granting relief from the automatic stay applicable in the Debtors' Chapter 11 cases to permit the commencement and adjudication before the BVI Court, or in the alternative, before the U.S. Bankruptcy Court for the Southern District of New York in an adversary proceeding related to 3AC's pending Chapter 15 case before Chief Judge Martin Glenn (the "**3AC Court**"), of the causes of action set forth in the proofs of claim

filed with this Court by the Joint Liquidators (the "**3AC POCs**", and the claims set forth therein, the "**3AC Claims**").

9. Most of the 3AC Claims arise as a matter of BVI law and will be determined by reference to BVI law. The 3AC Claims which do not arise under BVI law concern claims for recovery of assets subject to purported foreclosure in circumstances where the Debtors had no valid and enforceable security interest over those assets. Equivalent claims arise pursuant to section 274A of the BVI Insolvency Act and will be determined in the BVI in reliance upon that section.

10. For the reasons discussed below, insofar as an issue of US law arises and is relevant for the purpose of determining the 3AC Claims, the BVI Court has jurisdiction, and will be able, to resolve such issues to completion. The BVI Court regularly applies foreign law when relevant to the determination of claims before it. However, the BVI Court will apply its own procedure rather than US law when determining the claims, and will only determine US law issues insofar as they are considered relevant to the BVI claim.

11. Accordingly, insofar as the defendant might seek to assert a procedural defence arising as a matter of US law, or assert a defence as a matter of substantive US law which is not otherwise available under BVI law, those would not be matters which are typically treated as relevant to the determination of the 3AC Claims in the BVI.

### Details about the 3AC Claims

12. The 3AC Claims which arise under BVI law are to recover, and avoid certain transfers of, assets and of purported interests therein that are either the property of the 3AC estate, or subject to avoidance under BVI law.

13. Specifically, the 3AC Claims are in two categories: (1) recovery of assets subject to purported foreclosure where the Debtors had no valid and enforceable security interest over such assets, which claims arise pursuant to section 274A of the BVI Insolvency Act, and (2) avoidance of preferential transfers under BVI law, which claims arise pursuant to section 245 of the BVI Insolvency Act.

14. Section 274A of the BVI Insolvency Act provides, in relevant part, that "[w]here any person has in his or her possession or control any assets or documents to which the company appears to be entitled, the Court may, on the application of the office holder, require that person forthwith, or within such period as the Court may direct, to pay, deliver, convey, surrender or transfer the assets or documents to the office holder." Insolvency Act 2003 (as amended), S.I. 47/2004, § 274A.

15. Section 245 of the BVI Insolvency Act provides for the avoidance of preferential transfers. A transaction is subject to avoidance as an "unfair preference" if the transaction: (a) "is an insolvency transaction;" (b) is "entered into within the vulnerability period;" and (c) "has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into." Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).

16. Section 245 of the BVI Insolvency Act applies to "insolvency transactions." Under section 244(2) of the BVI Insolvency Act, an "insolvency transaction" is a transaction "entered into at a time when [a] company is insolvent" or that "causes a company to become insolvent." Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2).

17. Insofar as the 3AC Claims concern the avoidance of preferential transfers there are several potential statutory defences available to a defendant, including (but not limited to):

(i) Demonstrating that the transaction occurred in the ordinary course of business (Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(2));

(ii) Demonstrating that the transaction was not an 'insolvency transaction' as defined at Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2) (described above); and

(iii) Demonstrating that the transaction was not undertaken by the company for the benefit of a "creditor". Insolvency Act 2003 (as amended), S.I. 47/2004, § 245.

### The BVI Court's Approach to Issues of Foreign Law

18. Insofar as a relevant issue of foreign law arises for determination as part of the 3AC Claims, the BVI Court is one of unlimited jurisdiction,[2] and as such has standing to decide issues of foreign law, <u>as matters of fact</u>. The BVI Court applies well-established common law conflict of law principles and, in order for the BVI Court to make a determination on issues of foreign law, foreign law must be pleaded and proved as a fact to the satisfaction of the judge. In the absence of satisfactory evidence of foreign law, BVI law will apply.

19. In terms of procedure, foreign law must generally be pleaded and proven as a fact by expert evidence. In other words, where a dispute gives rise to questions of foreign law, parties typically rely on expert evidence only. The BVI Court then considers such expert evidence in reaching a finding of fact as to foreign law, and it is only with the assistance of such evidence that the Court can then evaluate or interpret relevant foreign decisions or leading texts on foreign law.[3]

---

[2] Commercial Bank of Dubai v 18 Elvaston Place Ltd (Claim No. BVIHC (COM) 2020/0070), at [5].

[3] Dicey, Morris & Collins on the Conflict of Laws (16th Ed.) ("Dicey & Morris"), at [3-011]. Dicey & Morris is the leading text on the conflict of laws, and is regularly cited by the BVI Court in its decisions.

20. In determining foreign law issues, the BVI Court is therefore generally reluctant to reject expert law evidence, if the evidence of the expert is uncontradicted.[4] If evidence of foreign law is contested, then the Court will determine the dispute as to the content of foreign law including, where appropriate, with the benefit of cross-examination of experts.

21. More generally, and in summary of the above, the BVI Court determines relevant issues of foreign law as matters of fact, having regard to expert evidence filed by litigants and to additional factors and considerations such as:

(iv) The credibility of the expert evidence before it;[5]

(v) Consistency of the expert evidence with foreign law sources (*e.g.,* foreign statutes);[6]

(vi) Whether there is conflicting testimony as between different expert witnesses;[7] and

(vii) Decisions of foreign courts as evidence of foreign law (where such decisions are referred to in expert evidence).[8]

22. However, I note that (notwithstanding the above) there is no provision in the BVI Insolvency Act which enables a defence equivalent to the safe harbor defences available under the US Bankruptcy Code to be asserted in response to an action brought under section 274A or 245 of the BVI Insolvency Act.

---

[4] Dicey & Morris at [3-015].
[5] *Ibid*.
[6] *Ibid*.
[7] Dicey & Morris at [3-016].
[8] Dicey & Morris at [3-019].

23. Based on the framework above, I believe that if issues of US law are relevant to the 3AC Claims, they can be resolved as a matter of fact in the BVI in order to achieve a full resolution of such claims. Additionally, the BVI Court will also adjudicate to completion any statutory defences available as a matter of BVI law that are alleged to be applicable to the 3AC Claims (which defences the Liquidators maintain are not applicable to the 3AC Claims). However, notwithstanding the foregoing, substantive or procedural defences arising as a matter of US law which might be applicable to a US law governed preference claim (such as safe harbor defences) would not be relevant to the determination of the 3AC Claims by the BVI Court in the BVI. This is because the 3AC Claims are statutory insolvency claims brought under the BVI Insolvency Act 2003 and governed by that Act.[9] Consequently, a full resolution of the 3AC Claims by the BVI Court in the BVI will not require or involve any adjudication or determination of US law governed defences applicable to a US law governed preference claim.[10]

**BVI Court as Forum for Resolving the Debtors' Claims Against the 3AC Estate**

24. I understand that another consideration the Court may weigh in determining whether to grant relief from the stay is whether there is a single forum capable of resolving all disputes among the parties. At present, the BVI Court is the only option for a single forum to resolve the claims. Under the BVI Insolvency Act 2003, the Joint Liquidators will make a determination to admit or reject the Debtors' claim in the first instance. If the Debtors wish to challenge the Joint Liquidators' determination on the validity of their claims, it would be the BVI Court that hears such dispute.

---

[9] *See*, for example, Dicey & Morris at 30-127 making the point that the BVI Court will apply BVI law to issues arising in the liquidation. A claim made under the provisions of the BVI Insolvency Act 2003 is necessarily determined as a matter of BVI law.

[10] As the BVI court will apply its own rules of procedure to the exclusion of a foreign rule which is in its view procedural: Dicey & Morris at 4-002; *Avonwick Holdings Ltd v Azitio Holdings Ltd* [2020] EWHC 1844 (Comm), at [547].

## Conclusion

25. I therefore consider that an order granting relief from the automatic stay would allow the BVI Court, from a BVI perspective, to fully and completely resolve the 3AC Claims. Such resolution would not include the determination of any defences arising purely as a matter of US law. I believe that the only such defence identified to date is potentially the safe harbor provisions of the US Bankruptcy Code (which the Liquidators view as entirely inapplicable to the 3AC Claims). I understand from the Liquidators' US attorneys that such defences may only potentially become relevant in the context of this Court's determination, following entry of a judgment by the BVI Court on the 3AC Claims, as to whether such judgment may serve as the basis of an allowed claim against the Debtors in their Chapter 11 cases.

IN WITNESS WHEREOF, I have executed this Declaration under penalty or perjury under the laws of the United States of America this 13th day of September 2023.

Dated: September 13, 2023

_____
Grant Carroll