CONNELL FOLEY LLP
Joao F. Magalhaes, Esq. (NJ Bar No. 004802008)
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, NJ 07102
973-436-5800
*Counsel to Claimant John W. Van Tubergen Jr.,*
  *Creditor of BlockFi Lending LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br><br>**Hearing Date: September 20, 2023**<br>**　　　　　　at 10:00 a.m.**<br><br>**Proof of Claim No. 7233** |

**RESPONSE TO DEBTORS'**
**SEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS**
**ON BEHALF OF CLAIMANT JOHN W. VAN TUBERGEN JR.**

Claimant John W. Van Tubergen Jr. ("Claimant"), creditor of BlockFi Lending LLC ("BlockFi Lending"), respectfully submits his response to the *Debtors' Seventh Omnibus Objection to Certain Claims*[2] (as it pertains to Claimant's proof of claim and related interests, the "Objection") filed by BlockFi Inc. ("BlockFi"), BlockFi Lending, and their related debtors (collectively, the "Debtors") in these jointly administered proceedings. For the reasons set forth herein, as substantiated by Claimant through his proof of claim and accompanying submissions, it is respectfully submitted that the Objection should be overruled, and that the subject Claim

---

[1] Claimant's proof of claim number 7233 is associated with the bankruptcy estate of BlockFi Lending LLC, Bankr. N.J. Case No. 22-19365.
[2] Main Case Docket No. 1311.

10263053-1

(defined below) should be entered against the estate of BlockFi Lending and fixed either in the amount sought, or in another amount as the Court may determine following estimation proceedings under section 502(c) of Title 11 of the United States Code (the "Bankruptcy Code").

**PRELIMINARY STATEMENT**

1. Claimant's Proof of Claim No. 7233 (the "Claim") was filed to seek recovery against the bankruptcy estate of BlockFi Lending on account of cryptocurrency assets that were wrongfully liquidated and/or otherwise converted by BlockFi Lending across a series of thirty-seven (37) transactions. As shown by the accompanying *Certification of Claimant John W. Van Tubergen Jr. In Support of Response to Debtors' Seventh Omnibus Objection to Certain Claim* (the "J.V.T. Cert."), together with the exhibits thereto, Claimant respectfully proffers well-founded and detailed allegations that BlockFi Lending committed negligence and assorted wrongdoing in connection with this series of lending transactions, which effectively deprived Claimant of approximately ten million dollars ($10,000,000.00) in assets.

2. The Claim was timely-filed, stated that it was on account of forced liquidations, and enclosed a Liquidation Summary (defined below) that served to evidence the value of cryptocurrency assets that were taken, lost, or diminished in value. The Objection, however, in addition to invoking due process concerns identified below, does not address the central contention of the Claim pertaining to the wrongful liquidations and/or conversions of Claimant's posted collateral. Since the Objection lacks any probative evidence in rebuttal to the Claim, the Claim's presumptive validity remains unaltered.

3. Alternatively, should the Court determine that the Objection is procedurally and substantively sufficient to shift the evidentiary burden to Claimant, Claimant would nevertheless be entitled to prevail on his Claim given the stark facts and circumstances presented by the

J.T.V. Cert., which asserts, *inter alia,* unwarranted and haphazard liquidations and/or conversions of cryptocurrency assets, a lack of sufficient access and control over accounts, inconsistent standards and protocols in conjunction with manual (non-automated) seizure of collateral, myriad technical system errors, and potentially unlicensed financial and investment advice (including constant pressure to refinance). In light of these facts, as explained below, *infra* at ¶¶ 19-20, Claimant respectfully submits that he is entitled to have the Claim entered against the bankruptcy estate of BlockFi Funding based upon applicable non-bankruptcy law, specifically the law of the State of Michigan.

4. Furthermore in the alternative, as explained in greater detail below, Claimant respectfully submits that the following measures and requests for relief are appropriate, either presently or conditionally:

   a. estimation proceedings pursuant to Bankruptcy Code section 502(c);

   b. allowance of discovery pursuant to Bankruptcy Rule 9014(c);

   c. application of Part VII of the Bankruptcy Rules;

   d. the right to amend the Claim, with relation-back as timely filed;

   e. the retroactive, temporary allowance of the Claim for voting purposes pursuant to Bankruptcy Rule 3018; and

   f. lastly, given that the undersigned counsel was only recently retained, and given the amount of the Claim, the right to file a sur-reply to any response (if any) received in reply to this submission.

*[Space intentionally left blank; please continue to page four (4).]*

10263053-1

# BACKGROUND[3]

### A. Claimant's Relationship with BlockFi Lending

5. Claimant opened an account with BlockFi Lending on April 17, 2019, based on its representations of being a safe management solution for his cryptocurrency portfolio. J.V.T. Cert. ¶ 4. Claimant respectfully submits that he was coerced to enter into thirty-seven (37) separate lending transactions in a continuous loop to refinance and restructure his relationship with BlockFi Lending so as to prevent the forceful taking of his posted collateral, which collateral generally consisted of Bitcoin (at times referred to herein as "BTC") and Ethereum (at times referred to herein as "ETH") cryptocurrencies that had been posted by Claimant in connection with Loan and Security Agreements (each a "LSA," and collectively "LSAs") between Claimant and BlockFi Lending. *Id.* ¶¶ 2, 4.

6. The LSAs that were entered into between Claimant and BlockFi Lending can be generally described as follows:

> a. the amount of each transaction ranged broadly from $25,500.00 to $6,300,300.00, which escalating amounts;
>
> b. the Loans were subject to varying interest rates, usually 9.75% (but under a few LSAs ranging from 9.5% to 12.35%), as well as varying "Loan Origination Fees," which initially consisted of a percentage of the principal amount of each Loan (ranging from 0.00% to 1.96%) but later became a flat fee as stated in an accompanying statement;
>
> c. each Loan featured a right to prepayment in full without penalty under Section 3(d) of each LSA;
>
> d. each Loan called for the posting of Collateral, which was specified under Section 5(a)(iv) as either Bitcoin (ranging from 6.700 BTC to 50.060 BTC) or

---

[3] The factual and legal arguments conveyed herein have been curtailed in accordance with the Debtors' instruction that responses to claim objections contain "a concise statement setting forth the reasons why the Court should not sustain the Objection with respect to the Claim[.]" Objection at 9 ¶ 20b. Relevant facts are set forth in greater detail by the accompanying J.V.T. Cert., and Claimant respectfully reserves the right to present additional facts either in conjunction with the submission of a sur-reply, the continuation of this dispute as a contested matter, or the commencement of an adversary proceeding.

Ethereum (ranging from 207.260 ETH to 4,230.120 ETH), and which under Section 4(d) was transferred to Gemini Trust Company, LLC;

e. under Section 6(a), all but one Loan featured a "Required Loan to Value Ratio" of seventy percent (70%) of the "Collateral Market Value," and Section 7 generally defined a "Trigger Event" as the failure to maintain a Required Loan to Value Ratio of seventy percent (70%) of the Collateral Market Value;[4]

f. pursuant to Section 7(a), within seventy-two (72) hours of notice of a purported Trigger Event, I was purportedly required to deposit additional Collateral so as to establish loan to value ratio range between fifty percent (50%) and eighty percent (80%), defined as the "Accelerated Maximum Loan to Value Ratio," and further provided that "Lender has the right to immediately liquidate Collateral, subject to any required notice, in such an amount as necessary to establish a loan to value ratio . . . equal to or less than seventy percent (70%) of the Collateral Market Value;"[5] and

g. as to governing law, as provided by Sections 1 and 31 of the LSAs, the first eight (8) LSAs invoked the law of the State of Delaware, however beginning with the LSAs made on January 4, 2021 – including, critically, each of the LSAs underlying the Liquidation Summary – the law of the state of residence as stated therein (as to all LSAs, Michigan) – became applicable.

*See, e.g., Id.* Exs. D, E, F, G, H, and I.

7. Unfortunately, as detailed in the J.V.T. Cert., each time that Claimant voluntarily refinanced, or was coerced into doing so, his posted collateral was either wrongfully converted (whether through liquidation or otherwise) or caused to be diminished in value as a result of BlockFi Lending's wrongful conduct, said wrongful conduct including, but not being limited to, the following:

---

[4] The LSA made on July 7, 2021 featured a Required Loan to Value Ratio and Trigger Event of eighty (80%) of Collateral Market Value; such percentages were lowered back to seventy percent (70%) beginning with the LSA made on August 23, 2021.

[5] The LSA made on July 7, 2021 varied the Trigger Event framework, in this instance featuring a post-Trigger Event notice loan to value range between sixty percent (60%) and ninety (90%); such range was lowered back to between fifty percent (50%) and eighty percent (80%) beginning with the LSA made on August 23, 2021.

10263053-1

  a. the premature, manual liquidation of BlockFi Loan No. 558207a5, a consolidation refinance loan that Agent 3[6] had Claimant to obtain, which combined significant portions of Claimant's ETH into one loan (total posted collateral value of $12,600,594.27 at the making of this loan), *see Id.* ¶ 5;

  b. the inconsistent application of standards and manual forced liquidations, as shown by what transpired with BlockFi Loans Nos. 250568f4 and 176fcbc, which made it impossible for Claimant to manage and protect the significant assets he posted with BlockFi Lending, *see Id.* ¶ 6;

  c. the inability of Claimant to effectively prepay and cash-out his loans, together with the constant advice and pressure to continue refinancing, as shown by what transpired with BlockFi Loans Nos. 736435a7 and ce7f64ed, which further impaired his ability to actively manage and protect his accounts, *see Id.* ¶ 7;

  d. predatory lending practices, as shown by what transpired with BlockFi Loan Nos. 1a118e43 and 5be66333, in particular BlockFi Loan Nos. 1a118e43, whereby the need to correct an error in connection with BlockFi Loan No. 558207a5 was utilized by BlockFi Lending as leverage against Claimant by effectively forcing a loan (BlockFi Loan No. 1a118e43) with an oppressive loan-to-value (LTV) ratio upwards of 90%, and with the collateral for said loan having been forcefully liquidated one week after the loan had been initiated, *see Id.* ¶¶ 8-9;

  e. the apparent loss and inability to account-for 895.2818 ETH, *see Id.* ¶ 8; and

  f. systemic errors and abuse involving erroneous margin calls, erroneous liquidations, constant pressure to refinance, the potentially unauthorized conveyance of financial and investment advice, inconstant standards and protocols, and a general lack of access at critical times, and the withholding of key records. *Id.* ¶¶ 11-20.

**B. The Claim**

8. The Claim expressly states that it is based on "collateral that is owed to [Claimant] from my loans due to false force[d] liquidations from Blocki." J.V.T. Cert., Ex. A at 3 ¶ 9. The Claim was timely-filed on March 15, 2023. *Id.*

9. Annexed to the Claim was a liquidation summary based upon the information available to Claimant at the time of filing (the "Liquidation Summary"). See *Id.* As stated by

---

[6] As noted by the J.V.T. Cert., the identities of individuals as they appeared on communications were redacted, with such individuals being designated on the redacted portions as, for example, "Agent 1," "Agent 2," *etc.* J.V.T. Cert. ¶ 1. Unredacted copies of communications will be provided to the parties listed in Paragraph 21 of the Objection.

the Claimant, "the forced sale amounts of cryptocurrency pre- and post-liquidation coordinate with the amount of my Claim, which is based upon the value of the cryptocurrency at the time of forced liquidation." J.V.T. Cert. ¶ 3.

### C. The Objection

10. The Objection objects to the Claim on grounds that (a) it is "[i]nconsistent with Books and Records – Incorrect Dollar and Crypto Amount;" and (b) "[s]eeks recovery for amounts for which the Debtors are not liable." Main Case Docket No. 1311 at 32. In addition, the Objection states that "[s]urviving claim for BIA balance as no loans open at time of bankruptcy." *Id.* The Objection proceeds to seek to fix the Claim at $19.07.

## LEGAL ARGUMENT

### I. The Claim is valid and should be fixed in the stated amount against the estate of BlockFi Lending.

11. A timely-filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f); 11 U.S.C. § 502(a). When an objection is filed, the objecting party bears the initial burden of producing evidence sufficient to rebut this presumption of validity. *Letherland Corp,* 302 B.R. 250, 259 (Bankr. N.D.Ohio 2003). It is only after the objecting party overcomes this presumption that the burden shifts to the creditor. *In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992); *see also Brown v. IRS (In re Brown),* 82 F.3d 801 (8th Cir. 1996) (a claim's presumptive validity is not altered unless the objection is supported by substantial evidence); *In re Fullmer,* 962 F.2d 1463 (10th Cir. 1992) (likewise explaining that *prima facie* validity may only be overcome by an objector through evidence of equally probative value in rebuttal).

### A. The Objection is procedurally deficient.

12. Claimants are afforded certain due process rights by Federal Rule of Bankruptcy

Procedure 3007. As relevant here, Bankruptcy Rule 3007(e) provides, in pertinent part, that an omnibus objection must "state in a conspicuous place that claimants receiving the objection should locate their names and claims in the objection." Fed. R. Bankr. P. 3007(e)(1). In addition, it is required that an omnibus objection "state the grounds of the objection to each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated grounds[.]" *Id.* at (e)(3).

13. The Objection raises concerns due to the short-shrift allotted towards identifying the Claimant, and explaining the basis for objecting. While the Objection provides instruction to locate one's claim number, and does in fact set forth the Claim (no. 7233), nowhere does the Objection identify the Claimant by name as required, instead redacting same. *See Objection* at 2; Main Case Docket No. 1311 at 32. In addition, the portion of the Objection identifying the Claim does not cross-reference the location in the Objection which is relevant to Claimant, instead implement a legend system. *Id.* Claimant respectfully submits that it should been made clearer that the Objection was levied against him, and on what grounds per the unique aspects of his Claim.

14. Although Claimant is mindful of the Court's Claims Procedures Order (as defined in the Objection) [Main Case Docket No. 609], whereby various administrative relief was granted to the Debtors, the text of the Claims Procedures Order provides that "[t]he Debtors may file and prosecute any Omnibus Objection in accordance with the Objection Procedures attached hereto . . . and the other procedural safeguards set forth in Bankruptcy Rule 3007(e) except as stated in the preceding paragraph." Claims Procedure Order at 4 ¶ 4. The preceding paragraph, in turn, had expressly varied the requirement of Bankruptcy Rule 3007(e)(6), and thus permitted the Debtors to object to more than 100 claims, however it did not vary any of the other

8

10263053-1

safeguards of Bankruptcy Rule 4007(e). *See Id.* ¶ 3.

15. In closing as to the points made in this Part I.A, it is recognized that the Debtors have already obtained, and the Court has previously granted, certain rights by way of the Claims Procedure Order insofar as it relates to the Objection. Nevertheless, as to the Claim, the unique aspects of which were known by many agents of the Debtor (as set forth in the J.V.T. Cert. and accompanying proofs), and given the radical reduction sought (downward to $19.07 from $10 million), a challenge to the Claim should require more than what was advanced by the Objection.

### B. The Objection is substantively deficient.

16. The Debtors have not satisfied their own burden of producing evidence sufficient to rebut the Claim's presumption of validity. *See Allegheny Int'l Inc.,* 954 F.2d at 173. In fact, the Objection fundamentally misperceives and/or ignores the Claim. Nowhere does the Objection address either the central contention of the Claim, pertaining to forced liquidations of collateral, or the Liquidation Summary, which evidences same and serves as a clear substantiation of the amount of the Claim. *Compare* Objection *with* Claim. Nor does the *Certification* submitted in support of the Objection serve to offer anything relevant towards negating Claimant's position. *See* Main Case Docket No. 1311 at 20-22.

17. Accordingly, it is respectfully submitted that the Debtors have failed to present substantial evidence of probative value so as to overcome the Claim's *prima facie* validity. To the contrary, the Debtors have not addressed it at all.

### C. Alternatively, Claimant has submitted proofs sufficient to carry a burden of persuasion before triers of law and fact.

18. Should the Court determine that the Objection is sufficient to shift the evidentiary burden to Claimant, in such scenario Claimant would respectfully submit that the facts and circumstances presented by way of the J.V.T. Cert., as summarized above, *supra* at ¶ 6, establish

9

10263053-1

an unconscionable course of conduct whereby many millions of dollars in cryptocurrency assets were at best manually liquidated by BlockFi Lending in a negligent manner, or at worst Claimant was (as Claimant respectfully submits) effectively "railroaded" through a totality of circumstances involving a lack of access and control over his accounts, apparent accounting errors,[7] constant pressure to refinance, inconsistent standards and protocols, oppressive LSA terms, understaffed customer support, and myriad technical system errors. *See, e.g.,* J.V.T. Cert. ¶ 5.-9, 11-17. As stated by Claimant, these circumstances made it impossible for him to manage and protect the significant assets he posted with BlockFi Lending as collateral for the LSAs. *Id.* ¶ 16.

19. Based upon the foregoing, Claimant respectfully submits that he is entitled to have the Claim entered against the bankruptcy estate of BlockFi Funding based upon applicable non-bankruptcy law, specifically the law of the State of Michigan, the State of his residence at the time of the subject LSAs. *See,* Exs. D, E, F, G, H, and I at §§ 1, 31. Under the law of Michigan, Claimant is entitled to the entry of his claim on the basis of, *inter alia,* breach of contract,[8] including an attendant claim under Michigan's statutory covenant of good faith and fair dealing.[9]

20. If BlockFi Lending were to respond to Claimant's factual contentions and legal

---

[7] In particular, *see* J.V.T. Cert. ¶ 8(c) (regarding apparent loss and inability to account-for 895.2818 ETH).

[8] Under Michigan law, "[a] party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Constr., Inc.,* 817 N.W.2d 609, 619 (Mich. Ct. App. 2012), *rev'd in part on other grounds,* 848 N.W.2d 95 (2014).

[9] In Michigan, the covenant of good faith and fair dealing is codified at MCL 440.1201(2)(t) which defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." It is an implied promise contained in every contract "that neither party shall do anything which will have the effect of destroying or inuring the right of the other party to receive the fruits of the contract." *Hammond v. United of Oakland,* 482 N.W.2d 652, 655 (Mich. Ct. App. 1992) (citations omitted).

10263053-1

arguments on the basis of the terms of the LSAs, for example attempting to justify margin calls and eventual forced liquidations of collateral, it is respectfully submitted that such arguments would fail in the face of the doctrines of unconscionability[10] and impossibility; as to the latter, the theory would be one of supervening impossibility on account of the post-formation conduct of BlockFi Lending.[11]

21. Exacerbating these circumstances is the myriad financial and investment advice conveyed by BlockFi Lending, *see e.g., Id.* ¶¶ 5(c), 7(c), 13-14, 16, 20, which supports Claimant's assertion of predatory lending practices, and also ostensibly raises the specter of the *Order Instituting Cease-And-Desist Proceeding Pursuant to Section 8 of the Securities Act of 1933 and Section 9(f) of the Investment Company Act of 1940, Making Findings, and Imposing a Cease-and-Desist Order* issued by the Securities and Exchange Commission, together with the proclamations and orders issued by multiple regulatory authorities of the States. *See, e.g.,* U.S. Securities and Exchange Commission, Release No. 11029 (Feb. 14, 2022) (available at https://www.sec.gov/about/sec-docket.shtml) (last accessed Sep. 13, 2023).

---

[10] In Michigan, the doctrine of unconsionability is codified at MCL 440.2302(1), which provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." "The basic test is whether, in the light of the general commercial background and commercial needs of the particular trade, the clauses involved are so one sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Gianni Sport, Ltd. v. Gantos, Inc.,* 391 N.W.2d 760, 761 (Mich. Ct. App. 1986). Although consideration will be given to the relative bargaining power of the parties, their relative economic strength, and the alternative choices available, the primary consideration to any challenged contract or contract term is whether it is substantively reasonable. *Id.* at 762.

[11] In Michigan, "[i]mpossibility of performance may be classified as original impossibility or supervening impossibility. The former is impossibility of performance existing when the contract was entered into, so that the contract was to do something which from the outset was impossible; whereas *supervening impossibility is that which develops some time after the inception of the contract.*" *Bissell v. L.W. Edison Co.,* 156 N.W.2d 623, 626 (Mich. Ct. App. 1967) (emphasis in original) (citation omitted). "[W]hether a promisor's liability is extinguished in the event his contract promise becomes objectively impossible of performance may depend upon whether the supervening event producing such impossibility was or was not reasonably foreseeable when he entered into the contract." *Id.*

10263053-1

22. For these reasons, the factual and legal merits overwhelming demonstrate that the bankruptcy estate of BlockFi Lending is liable to Claimant for the amount of the Claim.

## II. Alternative Requests for Relief

23. The undersigned is mindful and respectful of size, scope and complexity of these bankruptcy proceedings. In light of same, alternative requests for relief are respectfully sought in the event that the Court is not yet prepared to rule (for whatever reason) on this contested matter in a manner favorable to Claimant. In making these alternative requests for relief, Bankruptcy Code section 105(a)[12] is respectfully invoked, together with the more specific authority which is referenced below as to each.

### A. Estimation Proceedings

24. Bankruptcy Code section 502(c) provides as follows:

> (c)There shall be estimated for purpose of allowance under this section—
>
> > (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
> >
> > (2) any right to payment arising from a right to an equitable remedy for breach of performance.
>
> [11 U.S.C. § 502(c)].

25. Congress has allotted bankruptcy courts broad discretion to estimate a claim pursuant to section 502(c). *In re InnovaSystems, Inc.,* 2015 Bankr. LEXIS 1692 at *9 (Bankr.

---

[12] Bankruptcy Code section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Third Circuit has stated that "[i]t is well settled that the court's power under [section] 105(a) is broad." *In re Nixon,* 404 Fed.Appx. 575, 578 (3d Cir. 2010) (citing *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 236 (3d Cir. 2004)). Under the Third Circuit's view, section 105(a) "is a powerful, versatile tool" that "empowers bankruptcy courts and district courts sitting in bankruptcy to fashion orders in furtherance of Bankruptcy Code provisions." *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert),* 411 F.3d 452, 455 (3d Cir. 2005); *see also In re Kaiser Aluminum Corp.,* 456 F.3d 328 (3d Cir. 2006) (collecting cases).

10263053-1

D.N.J. May 18, 2015) (quoting *Bittner v. Borne Chemical Co.,* 691 F.2d 134, 137 n. 9 (3d Cir. 1982)).

26.  Should this Court have any doubts as to the amount of the Claim, Claimant would respectfully urge the Court to utilize the Liquidation Summary together with the exposition thereof contained in the J.V.T. Cert., in particular the "Summary of Losses/Damages" portion. *See* J.V.T. Cert. ¶ 10.

### B. Allowance of Discovery

27.  Claims allowance disputes are contested matters. *In re Maxus Energy Corp.,* 2023 Bankr. LEXIS 2117 at *16 (Bankr. D. Del. Aug. 28, 2023). As contested matters, once underway, discovery sought in furtherance of the claims allowance process is subject to the Federal Rules of Civil Procedure which are incorporated by reference in Bankruptcy Rule 9014(c). Fed. R. Bankr. P. 9014(c); *see also 435 Plainfield Ave. v. Township of Scotch Plains (In re 2435 Plainfield Ave.),* 223 B.R. 440, 455-456 (Bankr. D.N.J. 1998) (collecting authority).

28.  As noted by the J.V.T. Cert., certain critical records, including "sell books" and payment histories, have been unavailable to Claimant. *See* J.V.T. Cert. ¶ 17. Should this contested matter not be immediately resolved in Claimant's favor, Claimant respectfully requests a scheduling order providing for the taking of discovery in conformance with the Federal Rules, as made applicable hereto by Bankruptcy Rule 9014(c).[13]

### C. Application of Part VII of the Bankruptcy Rules

29.  Under aforementioned Bankruptcy Rule 9014(c), "parties against whom relief is sought in contested matters are entitled to the same due process rights as those in an adversary proceeding." *Morrison v. Office of the United States Tr. (In re Morrison),* 375 B.R. 179, 193 n.

---

[13] In conveying this request for relief, the undersigned notes that the Debtors' bankruptcy professionals, the firms of Haynes and Boone LLP and Cole Schotz P.C., have been gracious in providing documentation to assist the undersigned's review.

28 (W.D.Pa. 2007) (citing 6 Norton Bankr.L.& Prac. 2d § 138:5 (2007)).

30. Accordingly, aforementioned Bankruptcy Rule 9014(c) further provides that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c).

31. Here, Claimant seeks to respectfully reserve his rights – in the event that the Claim is not entered and fixed in his favor – to seek relief under Bankruptcy Rule 7001, including but not limited to the rescission of the LSAs. Given the timeline and stage of these bankruptcy proceedings, allowing Claimant to seek such relief in this contested matter would be more efficient than requiring the commencement of a separate adversary proceeding. *See In re MabVax Therapeutics Holdings, Inc.,* 2023 Bankr. LEXIS 1557, at *3 (Bankr. D.Del. Jun. 15, 2023).

### D. Right to Amend Claim with Relation-Back

32. The United States Court of Appeals for the Third Circuit has explained that the "decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court." *In re Ben Franklin Hotel Assocs.,* 186 F.3d 301, 309 (3d Cir. 1999).

33. As contended elsewhere herein, Claimant asserts that the Claim is valid and should be entered and fixed in his favor. Nevertheless, should the Court determine that the Claim is either not entitled to *prima facie* validity, or that Claimant has not otherwise met an evidentiary burden, then in such instance Claimant respectfully requests the right to seek the amendment of the Claim, together with relation-back under either Federal Rule 15, Bankruptcy Rule 9006(b), or the principles enunciated by the United States Bankruptcy Court for the District of Delaware in *In re Exide Techs.,* 601 B.R. 271 (Bankr. D.Del. 2019). *See In re Maxus Energy Corp.,* 2023 Bankr. LEXIS 2117, at **2-4 (Bankr. D. Del. Aug. 28, 2023) (evaluating varying

standards for leave to amend proof of claim).

34. As explained by Claimant, "[m]y Claim was filed to the best of my ability as a layperson upon reliance upon advisories received on behalf of the Debtors, including from Kroll Restructuring Administration LLC." J.V.T. Cert. ¶ 3.

35. Therefore, it is respectfully submitted that, under the totality of the circumstances, should the Court harbor concerns as to the validity of the Claim, it should invoke its discretion to allow Claimant to amend same, with a right to relation-back as a timely-filed claim.

### E. Retroactive Temporary Allowance of Claim for Voting Purposes

36. Bankruptcy Rule 3018 provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018.

37. As noted, the Objection seeks a radical downward adjustment of the Claim (downward to $19.07 from $10 million).

38. In regards to voting on the Debtors' proposed bankruptcy plan, upon information and belief the deadline for the submission of ballots was this past Monday, September 11, 2023. As stated by Claimant:

> [O]n September 11, 2023, I accessed the Debtors' voting platform via access hyperlinks provided by Kroll. My goal was to preserve my rights in light of how my Claim has been misunderstood by the Debtors as solely a claim for $19.07 in connection with a BlockFi Wallet account. Unfortunately, the only options available to me were to select "accept the plan" or "reject the plan."
> [J.V.T. Cert. ¶ 21.]

39. Here, it is respectfully submitted that the timing of the Objection did not permit Claimant adequate latitude to seek the preservation of his full voting rights, nor did the electronic

15

voting system permit him a means to set forth a reservation of rights in narrative format. Accordingly, Claimant respectfully requests that this Court fashion relief under Bankruptcy Rule 3018 to temporarily allow the full measure of the Claim for voting purposes.

### F. Right to File a Sur-Reply

40. Finally, the undersigned respectfully notes that he was only recently retained in this matter. Specifically, the undersigned was retained on September 4, 2023. In light of the time constraints associated with the making of this submission, it is respectfully requested that, should any papers in reply hereto be filed, Claimant be permitted an opportunity to prepare and file a sur-reply prior to the issuance of a ruling on the Objection.

## III. Conclusion

41. Based upon the foregoing, Claimant respectfully requests that the Court overrule the Objection and enter and fix the Claim against the estate of BlockFi Lending. Alternatively, should the Court be unable to presently enter and fix the Claim, Claimant respectfully requests that the Court grant the relief sought by way of Part II hereof, together with such other and further relief as the Court deems just and equitable, including attachment or other provisional remedies.

    Respectfully submitted,

    CONNELL FOLEY LLP
    *Counsel to Claimant John W. Van Tubergen Jr.,*
      *Creditor of BlockFi Lending LLC*

    */s/ Joao F. Magalhaes*
    Joao F. Magalhaes

Dated: September 13, 2023

10263053-1