<div style="border:1px solid">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DUANE MORRIS LLP**
Wendy M. Simkulak (wmsimkulak@duanemorris.com)
Catherine B. Heitzenrater (cheitzenrater@duanemorris.com)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020

*Attorneys for the Chubb Companies*

</div>

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,[1]<br><br>Debtors | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br><br>Honorable Michael B. Kaplan |

**LIMITED OBJECTION OF THE CHUBB COMPANIES TO THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, Chubb Insurance Company of New Jersey, and each of their respective U.S.-based affiliates and successors (collectively, and solely in their capacities as insurers of one or more of the above-captioned debtors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

of the Bankruptcy Code [Docket No. 1300] (the "Plan"),[2] and in support of the Limited Objection the Chubb Companies respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case

1. On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

2. On the Petition Date, the Debtors filed an initial Joint Chapter 11 Plan [Docket No. 22], which has been amended several times [Docket Nos. 875, 1132].

3. On July 31, 2023, the Debtors filed the current version of the Plan the *Revised Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1301] (the "Disclosure Statement").

4. On August 2, 2023, the Court entered the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 1306], which, among other things, conditionally approved the Disclosure Statement subject to final approval and scheduled a combined hearing on final approval of the Disclosure Statement and confirmation of the Plan.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

5. On September 4, 2023 the Debtors filed their Plan Supplement [Docket No. 1443] (the "Initial Plan Supplement"), and on September 8 the Debtors filed their Amended Plan Supplement [Docket No. 1467] (the "Amended Plan Supplement").

6. While the Initial Plan Supplement purported to attach a schedule of contracts to be assumed, no such schedule was actually filed. *See* Initial Plan Supplement, Ex. A. However, the Amended Plan Supplement does include a schedule of contracts to be assumed, and purports to include "[a]ll policies and all amendments, modifications, schedules, and other attachments thereto, to the extent applicable" with respect to just two of the Chubb Companies, Westchester Surplus Lines Insurance Company and ACE American Insurance Company. *See* Amended Plan Supplement, Ex. A.

**B.    The Chubb Insurance Program**

7. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors, or their affiliates or predecessors, as named insureds.

8. Pursuant to the Policies and any agreements related thereto (collectively, the "Chubb Insurance Program"),[3] the Chubb Companies provide, *inter alia*, certain general liability, commercial liability, special events liability, directors' and officers', and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited

---

[3]    The description of the Chubb Insurance Program set forth herein is not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Chubb Insurance Program. Reference is made to the Chubb Insurance Program for a complete description of their terms and conditions.

3

to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively, the "Obligations").

9. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

C. **The Plan**

10. The Plan provides for the appointment of a Wind-Down Trustee to administer the Wind Down of the Debtors' estates. Following confirmation of the Plan, the Debtors will continue to exist as the "Wind-Down Debtors" under the direction of the Wind-Down Trustee.

11. The Plan provides for general treatment of the Debtors' insurance policies, and contains provisions that contemplate the payment of certain claims by the Debtors' insurers. *See, e.g.*, Plan at Arts. V.F.; VI.G.2-3.

12. Moreover, the Plan contemplates that only the Wind Down Debtors and certain others shall have authority to file and prosecute objections to claims or to settle claims. *See* Plan at Art. VII.B. Specifically, the Plan provides:

> Except as otherwise specifically provided in the Plan, after the Effective Date, the Wind-Down Debtors, shall have the sole authority to: (1) File, withdraw, or litigate to judgment, any objections to Claims; and (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court.

*Id.* (emphasis added).

13. Finally, Article VIII.B of the Plan provides, in relevant part, that, before claimants can bring certain claims against any Released Party, such claimants must, among other things, obtain a final order from the Court specifically authorizing such claimants to bring their claim(s)

and, further, that the Court shall have "sole and exclusive jurisdiction" to determine whether any claim is "colorable":

> … From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.B or (ii) was deemed to reject the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.A of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.A of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Plan at Art. VIII.B; *see also* Art. VII.J.

14. The Plan incorporates a settlement between the Debtors, the Committee Settlement Parties (which include certain of the Debtors' directors and officers), and the Committee, which includes the release of the Committee Settlement Parties by the Debtors, the Committee, and all holders of Claims and Interests that do not opt out of the Third Party Releases under the Plan in exchange for certain monetary payments and agreement to dedicate certain hours of work to the Estates. Plan at Art. IV.C.

## LIMITED OBJECTION

15. The Chubb Companies object to the Plan[4] on the bases that (A) the Plan attempts to improperly alter or otherwise modify the terms of the Chubb Insurance Program in several ways,

---

[4] This Limited Objection focuses on the objections to the Plan. As for the Disclosure Statement, the Chubb Companies assert that Section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited the plan and a disclosure statement containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code, which has been approved by the Bankruptcy Court after notice and a

5

including the purported impermissible release of obligations under the Chubb Insurance Program, and potential restrictions on the handling and administration of insured claims, potentially including claims against the Committee Settlement Parties; and (B) the Plan fails to provide that workers' compensation claims and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course of business, as required by applicable state law.

### A.  The Plan Improperly Alters The Terms Of The Chubb Insurance Program.

16. It is a bedrock principle of bankruptcy law that the Bankruptcy Code is "not intended to expand the debtor's rights against others." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (quoting H.R. Rep. No. 595 (1978)). "Whatever limitation[s] on the debtor's property [apply] outside of bankruptcy," *i.e.*, under state contract or property law, "appl[y] inside of bankruptcy." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) (quotation marks omitted); *see id.* ("The estate cannot possess anything more than the debtor itself did outside bankruptcy."). The Bankruptcy Code provides the debtor "with the same rights and defenses" under a prepetition contract as those held by the debtor before the bankruptcy. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004).

---

hearing. *See* 11 U.S.C. § 1125(b). A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S. C. § 1125(a). Courts consistently refuse to approve disclosure statements that lack the information that a "hypothetical reasonable investor" would require to make an informed decision about the proposed plan. *See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988); *In re Route 202 Corp.*, 37 B.R. 367, 375 76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re E. Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982); *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981). In this case, the Chubb Companies cannot determine with any certainty how the Debtors propose to treat the Chubb Companies' rights and claims under the Chubb Insurance Program and, therefore, object to the Disclosure Statement and final approval thereof on this basis.

Case 22-19361-MBK    Doc 1519    Filed 09/18/23    Entered 09/18/23 15:43:55    Desc Main
Document    Page 7 of 14

17. Neither the Debtors nor this Court can rewrite the Chubb Insurance Program but rather the Chubb Insurance Program must be enforced as written. *See, e.g.*, *In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement"); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation") (quoting, in part, *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007)); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

18. However, the Plan contains multiple provisions that purport to alter or modify the Chubb Insurance Program and the terms and conditions thereof.

    1. **Impermissible release of obligations under the Chubb Insurance Program**.

7
DM3\9898275.1

19. Through the Plan, it appears that the Debtors seek to continue to receive the benefits of the Chubb Insurance Program. *See, e.g.*, Plan at Arts. VI.G, V.F.[5] However, the Plan does not adequately address the continuing obligations of the Debtors or their successors under the Chubb Insurance Program.

20. To the contrary, the Plan contains provisions which provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan at Arts. IV.D.; VIII.

21. The Insurance Program is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

22. Pursuant to the Amended Plan Supplement it appears that the Debtors intend to assume certain of the Policies issued by the Chubb Companies, but not all of them. *See* Amended

---

[5] The Chubb Companies reserve the right to object to the treatment of the Policies and any related insurance agreements as executory if the Debtors seek to reject any such contracts.

Plan Supplement, Ex. A. The Chubb Companies object to the Plan to the extent that this is the Debtors' intent.

23. Additionally, it is well-established that debtors and their successors cannot seek to receive the benefits of a contract without being liable for the obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of

the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re 47 Hops LLC*, 2020 WL 2485808, at *4 (Bankr. E.D. Wash. May 13, 2020) ("[T]he estate representative must address any given contract in its entirety and may not forage among favorable or unfavorable components."); *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

24. Therefore, to the extent that the Debtors or their successors seek to retain the benefits of the Chubb Insurance Program, the rights and benefits under the Chubb Insurance Program cannot be split from the obligations thereunder. The Debtors or any of their successors, including the Wind-Down Debtors and/or the Wind-Down Trustee must also remain liable in full for all of the Debtors' Obligations arising under the Chubb Insurance Program, regardless of when they arise.

**2. Unclear and inconsistent restrictions on handling and administration of insured claims.**

25. The Plan purports to direct that potentially covered claims recover from insurance before the claimant may be eligible to be paid from the estate. The Chubb Companies would have no objection to that provision standing alone, but the Plan also attempts to fundamentally alter how and where claims are resolved, in violation of the Chubb Companies' rights under the Chubb Insurance Program.

26. For example, the Plan provides that the Wind-Down Debtors shall have the "sole authority" to object to or settle claims. Plan at Art. VII.B. Such a provision directly conflicts with

10

the Debtors' obligations under the Chubb Insurance Program which provide the Chubb Companies with the ability to control or associate in the defense and to consent to settlements of insured claims.

27. The Plan also provides that certain claims against certain third parties, which may include claims covered by insurance, can only go forward if, among other things, the claimant first obtains from the Court an order allowing the claim to go forward, and the Court shall have "sole and exclusive jurisdiction" to determine whether any claim is "colorable." *See* Plan at Art. VIII.B.

28. It is well-established, however, that the Plan cannot confer the Court with jurisdiction over any dispute or proceeding. *See, e.g.*, *Combustion Eng'g*, 391 F.3d at 228 ("[J]urisdiction cannot be conferred … in a plan of reorganization"); *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan."). Thus, to the extent the Plan purports to confer on the Court any jurisdiction, including any exclusive jurisdiction, this is contrary to applicable law.[6]

29. Moreover, the provisions in the Plan that potentially purport to confer exclusive jurisdiction on the Court over insured claims and that require claimants to obtain certain determinations from the Court before pursuing their claims appear to be in conflict with the provisions of the Plan that contemplate claims being paid from the available proceeds of any applicable insurance policies. *See* Plan at Art. VI.G. Those provisions also conflict with the terms

---

[6] The Chubb Companies specifically reserve the right to assert that the Plan purports to improperly confer core and/or exclusive jurisdiction on the Court over the liquidation or estimation of contingent or unliquidated personal injury tort claims in contravention of 28 U.S.C. § 157(b)(2)(B), as well as the right to assert that such claims must be tried in district court as opposed to this Court. *See* 28 U.S.C. §157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.").

11

DM3\9898275.1

and conditions of the Chubb Insurance Program that provide the Chubb Companies with control or association rights in the defense of potentially covered claims. The Plan cannot simultaneously channel certain claims to insurers and then attempt to strip the insurers of their rights to defend against or settle those same claims.

30. As an additional example, the Committee Settlement provides for a release of claims against the Committee Settlement Parties, but does not include a standard clause stating that the Committee Settlement is not an admission of liability as to any party to the Committee Settlement. Such language is necessary to ensure that those who opt out of the third party releases, as permitted by the Plan, cannot argue that the existence of the Committee Settlement itself is evidence of any claim that they may bring against the Committee Settlement Parties in an attempt to access insurance proceeds, including under the Debtors' directors and officers insurance policies.

31. Based on each of the foregoing issues, the Chubb Companies are unable to determine based on the Plan what, if anything, will be required before they can handle and administer claims potentially covered by the Chubb Insurance Program or what impediments the Plan may seek to impose on the Chubb Companies' rights to handle and administer claims under the Chubb Insurance Program. The Chubb Companies therefore further object to the Plan to the extent it purports to impede or impair their rights to handle and administer claims under the Chubb Insurance Program.

### B. The Plan Must Provide That Workers' Compensation Claims And Direct Action Claims Must Continue In The Ordinary Course.

32. The Plan does not provide for the handling of workers' compensation claims or direct action claims against the Debtors' insurers.

33. Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

34. Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and, relatedly, that the Chubb Companies may continue to administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Chubb Insurance Program and applicable non-bankruptcy law.

**RESERVATION OF RIGHTS**

35. The Chubb Companies specifically reserve all of their rights with respect to the Chubb Insurance Program and their right to assert additional objections to the Plan.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein; and (b) grant such other relief as the Court deems appropriate.

| | |
|---|---|
| Dated: September 18, 2023 | Respectfully submitted,<br><br>*/s/ Wendy M. Simkulak*<br>**DUANE MORRIS LLP**<br>Wendy M. Simkulak, Esq.<br>Catherine B. Heitzenrater, Esq.<br>30 South 17th Street<br>Philadelphia, PA 19103<br>Phone: (215) 979-1000<br>Fax: (215) 979-1020<br>Email: WMSimkulak@duanemorris.com<br>Email: CHeitzenrater@duanemorris.com<br><br>*Counsel for the Chubb Companies* |