# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY (TRENTON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
**In re** :         **Chapter 11**
:
**BLOCKFI INC.,** *et al.,* :         **Case No. 22-19361 (MBK)**
:
**Debtors.**[1] :         **(Jointly Administered)**
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THIRD AMENDED[2] SCHEDULE OF ASSETS AND LIABILITIES FOR BLOCKFI LENDING LLC (CASE NO. 22-19365)

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

[2]    This amended filing is intended to replace the original Schedule of Assets and Liabilities and Statements of Financial Affairs.

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**GLOBAL NOTES, METHODOLOGY, AND SPECIFIC DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**Introduction**

On November 28, 2022 (the "Petition Date"), BlockFi Inc. and the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The Chapter 11 cases are jointly administered under Case No. 22-19361 (MBK) (the "Chapter 11 Cases").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

With the assistance of their proposed advisors, the Debtors' management prepared the Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (the "Statements" and together with the Schedules, the "Schedules and Statements") pursuant to section 521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure. The Schedules and Statements are unaudited and do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), and they are not intended to be fully reconciled to the financial statements.

Although the Debtors' management has made every reasonable effort to ensure that the Schedules and Statements are accurate and complete based on information that was available to them at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors or omissions may have occurred. The Debtors will not be liable for any loss or injury arising out of or caused in whole or in party by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided*, that the Debtors and their agents and professionals expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by law. In no event will the Debtors or their agents or professionals be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the debtors or their agents or professionals are advised of the possibility of such damages.

These general notes regarding the Debtors' Schedules and Statements (the "Global Notes") comprise an integral part of the Schedules and Statements filed by the Debtors and should be referenced in connection with any review of the Schedules and Statements. If the Schedules and/or Statements differ from these Global Notes, the Global Notes control. Nothing contained in the Schedules and Statement shall constitute a waiver of any rights or claims of the Debtors against any third party, or in or with respect to any aspect of these Chapter 11 Cases.

Mark Renzi, the Debtors' Chief Restructuring Officer, has signed each of the Schedules and Statements. Mr. Renzi is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Renzi has relied upon the efforts, statements, and representations of various personnel employed by the Debtors and their advisors. Mr. Renzi has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

## Global Notes and Overview of Methodology

1. **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to: (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim against a Debtor ("Claim")[2] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated"; or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether of such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated," or a waiver of any right to later object to any claim on any grounds. Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, issues involving or defenses against Claims, substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.

   (a) **No Admission.** Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any Claim against any Debtor, any assertion made therein or herein, or a waiver of any Debtor's rights to dispute any Claim or assert any cause of action or defense against any party.

   (b) **Recharacterization.** The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. Nevertheless, due to the complexity of the Debtors' business, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases

---

[2] For the purposes of these Global Notes, the term Claim shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

(c)     **Classifications.**  Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to object to such claim, recharacterize or reclassify such Claim or contract, or to setoff such Claims.

(d)     **Estimates and Assumptions.**  The preparation of the Schedules and Statements required the Debtors to make commercially reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ from such estimates.

(e)     **Causes of Action.**  Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(f)     **Intellectual Property Rights.**  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

(g) **Cryptocurrency.** Certain of the Debtors' assets are cryptocurrencies, or digital tokens, based on a publicly accessible blockchain. Cryptocurrencies are unique assets. Certain laws and regulations that may be applicable to cryptocurrencies do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, local, and international jurisdictions. The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard. Furthermore, except as otherwise provided in any of the Debtors' pleadings and papers in these Chapter 11 Cases, the Debtors have taken the position that cryptocurrency held on the Debtors' platform is property of the Debtors' estate pursuant to section 541 of the Bankruptcy Code, and the Debtors reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(h) **Insiders.** The Debtors have attempted to include payments made on or within 12 months before the Petition Date to any individual or entity who in the Debtors' good faith belief might be deemed an "insider." As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to unqualifiedly dictate corporate policy and the disposition of corporate assets. Certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the 12-month period before the Petition Date and might not be "insiders" at all, but the Debtors have included them herein out of an abundance of caution.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be, construed as an admission that those parties are insiders for purpose of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity (or the Debtors) could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.

## 2.  Methodology.

(a) **Basis of Presentation.**  Prior to the Petition Date, the Debtors relied on certain key financial personnel as well as their outside accounting firm to maintain the Debtors' books and records.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.  The Schedules and Statements have not, however, been subject to procedures that would typically be applied to financial statements prepared in accordance with GAAP or International Financial Reporting Standards ("IFRS") and are not intended to reconcile fully with any financial statements of each Debtor prepared under GAAP or IFRS.  Therefore, combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that are substantially different from financial information that would be prepared on a consolidated basis under GAAP or IFRS.  For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements on a consolidated basis.  Unlike the consolidated financial statements, the Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor.  Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date.  Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time before the Petition Date.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

(b) **Confidential or Sensitive Information.**  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.,* names and other information), or concerns for the privacy of the Debtors' creditors and clients.  The alterations will be limited to only what is necessary to protect the Debtor or applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.  All such redacted information shall be made available as directed by orders of the Court or to the individual client or creditor scheduled, as applicable.

(c) **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d) **Net Book Value.**  In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values.  Market values may vary, sometimes materially, from net book values.  The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of

certain property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown.

Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values.  Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material.  Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(e) **Property and Equipment.**  The Debtors' office property and equipment leases are set forth on Schedule G.  Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(f) **Allocation of Liabilities.**  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(g) **Undetermined Amounts.**  The description of an amount as "unknown" "undetermined" or "to be determined" is not intended to reflect upon the materiality of such amount.

(h) **Unliquidated Claim Amounts.**  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

(i) **Totals.**  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

(j) **Cryptocurrency.**  Client coin balances reflected in the schedules are as of 1:15 a.m. UTC on November 11, 2022. Cryptocurrency values presented utilize market prices as of 11:59

p.m. UTC on the Petition Date. Changes in valuation relate to conversions, liquidations, collections received in kind and periodic mark to market adjustments. Actual net realizable value may vary significantly. The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

(k) **Paid Claims.** Pursuant to certain orders of the Court entered in the Debtors' Chapter 11 Cases entered shortly after the Petition Date (collectively, the "<u>First Day Orders</u>") as well as other orders of the Court, the Debtors have authority to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. Regardless of whether such claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

(l) **Intercompany Receivables and Payables.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors' regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes.

(m) **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

(n) **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals. In addition, and as set forth

above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court. Additionally, certain immaterial or *de minimis* assets and liabilities may have been excluded.

(o) **Currency.**  Unless otherwise indicated, all amounts are reflected in U.S. dollars.  The Debtors' methodology and assumptions regarding the calculation of the U.S. dollar-value of cryptocurrency holdings is set forth below in greater detail in the Specific Disclosures with Respect to the Debtors' Schedules.

(p) **Setoffs.**  The Debtors may incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, loan transactions, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their customers and/or suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

(q) **BlockFi Client Account Adjustments.**  Any of the Debtors' clients who, as of the Petition Date, had cryptocurrency on the BlockFi platform are listed in redacted form on Schedule E/F, as noted in more detail below.  A BlockFi client's cryptocurrency holdings listed in the Schedules may not properly reflect such client's cryptocurrency holdings as of the Petition Date due to certain reconciliation practices that the Debtors have requested authority to complete pending the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor Withdrawals From Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* [Docket No. 121] (the "Wallet Withdrawal Motion").

Certain client cryptocurrency holdings listed on Schedule E/F also differ from the holdings listed on the user-interface for client accounts on the BlockFi platform on the Petition Date because the user-interface automatically converts to current-day prices for all forms of cryptocurrency.  The Debtors believe that each of the foregoing reconciliatory practices requested in the Wallet Withdrawal Motion is necessary to ensure that client balances properly reflect all trading and transfer activity that took place before the BlockFi platform pause so that client accounts reflect correct and fully reconciled balances.  If the Wallet Withdrawal Motion is granted and the Debtors receive information that additional client claims should be adjusted to reflect a reconciliation in accordance with the order granting the Wallet Withdrawal Motion, the Debtors will, as soon as reasonably practicable, use commercially reasonable efforts to file an amendment to the Schedules. Similarly, if the Wallet Withdrawal Motion is denied, the Debtors will, as soon as reasonably practicable, use commercially reasonable efforts to file an amendment to the Schedules.

(r) **Contingent Assets.**  The Debtors believe that they may possess certain Claims and Causes of Action against various parties.  Additionally, the Debtors may possess contingent claims

in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any Claims, Causes of Action, or avoidance actions they may have, and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such claims. Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

(s) **Executory Contracts.** Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G. The Debtors have excluded nondisclosure agreements entered into in connection with these Chapter 11 Cases to avoid any potential breach of such nondisclosure agreements. Additionally, certain contracts may have expired after the Petition Date, in which case the Debtors have noted such expiration next to the applicable contract in Schedule G.

(t) **Fiscal Year.** Each Debtor's fiscal year ends on or about December 31.

(u) **Claims of Third-Party Related Entities.** While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

(v) **Umbrella or Master Agreements.** Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor that signed the original umbrella or master agreement. The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

(w) **Credits and Adjustments.** The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments

and vendor payments, if applicable.  The Debtors reserve all of their rights with regard to such credits, allowances, or other adjustments, including, but not limited to, the right to modify the Schedules, assert claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a post-petition basis.

**(x)** **<u>Payments</u>.**  The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses, as described in the Cash Management Motion, as defined herein.  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

<u><strong>Specific Schedule Disclosures</strong></u>

1. **Schedule A/B, Questions 1 and 2 – Cash and Cash Equivalents; Cash on Hand.**  Details with respect to the Debtors' cash management system and bank accounts are provided in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* (the "<u>Cash Management Motion</u>") and any orders of the Court granting the relief requested in the Cash Management Motion [Docket Nos. 44 and any final order granting the Cash Management Motion].  Accordingly, cash on hand held as of the Petition Date is disclosed on Schedule A/B, Question 3 in connection with cash held in the Debtors' bank accounts.

2. **Schedule A/B.**

   a. **Question 3 – Checking, Savings, Money Market, or Financial Brokerage Accounts.**  Amounts listed are as of 3:15 p.m. UTC on the Petition Date for the corresponding Debtor and reflect the actual bank balance, not the net book value.  The Debtors have included reserve accounts and certain of the Debtors' bank accounts in response to Question 3.

   b. **Question 4 – Other Cash Equivalents.**  To the extent applicable, other cash equivalents set forth in Schedule A/B, Question 4 are comprised of cash held in unrestricted accounts.

   c. **Question 7 – Deposits.**  The Debtors are required to make deposits from time to time with various vendors and other service providers in the ordinary course of business.  The Debtors have exercised reasonable efforts to report the current value of any deposits.  The Debtors may have inadvertently omitted deposits and conversely may have reported deposits that are no longer outstanding.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if deposits are incorrectly identified.

11

d.  **Question 8 – Prepayments.**  The Debtors are required to make prepayments from time to time on account of executory contracts, leases, insurance policies, taxes, and rent as part of the ordinary course of business.  The Debtors have exercised reasonable efforts to identify any prepayments.  The Debtors may have inadvertently omitted certain prepayments and conversely may have reported prepayments for which services have already been provided.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if prepayments are incorrectly identified.

e.  **Question 11 – Accounts Receivable.** Accounts receivable includes receivables for certain retail client accounts where the balance of the client's BlockFi Wallet is net negative across all their currencies at the time of the Petition Date using market prices as of 11:59 p.m. UTC on the Petition Date.

f.  **Question 15 – Non-Publicly Traded Stock.**  Ownership interests in subsidiaries, partnerships, and joint ventures have been listed in Schedule A/B, Question 15 as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

g.  **Question 55 – Real Property.**  The Debtors do not own any real property.  The Debtors' have specified in this question that such property is leased, and as noted above, the property leases are set forth on Schedule G.

h.  **Question 63 – Client Lists, Mailing Lists, Other Compilations.**  Assets set forth in Schedule A/B, Question 63 include certain items such as the Debtors' client lists and website domain that are part of the Debtors' going concern value but do not have specific dollar amounts associated with them at this time.

i.  **Question 64 – Other Intangibles or Intellectual Property.**  Assets set forth in Schedule A/B, Question 64 include the net book value of the brand and technology of the Debtors and their non-Debtor affiliates.

j.  **Question 71 – Notes Receivable.**  Notes receivable set forth in Schedule A/B, Question 71 include a capital market transaction executed in USD wherein the Debtors purchased a portion of a convertible bond financing for a third-party Bitcoin mining company.  Current values shown are equal to market value in USD as of the Petition Date, as indicated on the conversion chart in Schedule A/B, Question 77.  All figures set forth in Schedule A/B, Question 71 are preliminary, unreviewed, and unaudited and subject to final adjustments following, *inter alia*, completion of quarterly and/or year-end close procedures.

k.  **Question 72 – Tax Refunds and Unused Net Operating Losses (NOLs).**  The Debtors current accounting entries remain subject to completion and review of tax compliance procedures and audit processes.  Completed and audited accounting entries may indicate that net operating losses and general business credit carryforwards are available to offset taxable income or reduce the tax liability for

the Debtors for the year end. The Debtors hereby reserve the right to amend or supplement Schedule A/B, Question 72 upon completion and audit of tax compliance procedures and financial statements. The Debtors may have the ability to claim NOLs for subsequent years, but such amounts may not be quantified at this time.

l. **Question 74 – Causes of Action Against Third Parties.** Certain causes of action belonging to the Debtors may be confidential and have been withheld or redacted as necessary.

m. **Question 75 – Other Contingent and Unliquidated Claims or Causes of Action.** Amounts herein include loans that were in default or loans to which counterparties indicated distress as of the Petition Date. The amount requested is "To be determined" based on, *inter alia*, the outstanding potential for litigation with defaulted borrowers, bankruptcies, fluctuating value of assets, and other unknown circumstances for resolving these claims**.**

n. **Question 77 – Other property of any kind not already listed.**[3] Schedule A/B, Question 77 lists the Debtors' cryptocurrency, or digital tokens, assets based on a publicly accessible blockchain. The current value shown is the market value in USD as of the Petition Date. All figures set forth in Schedule A/B, Question 77 are preliminary, unreviewed, and unaudited and are subject to final adjustments following, *inter alia*, completion of quarterly and year-end close procedures.

In calculating the fair market value as to the Debtors' cryptocurrency assets, the following table sets forth the rate of conversion to U.S. dollars based upon the type of cryptocurrency held as of 11:59 p.m. UTC on the Petition Date.

| Cryptocurrency | | Price |
|---|---|---|
| 1FLR | Flare token | $0 |
| 1INCH | 1inch Network | $0.52 |
| AAVE | Aave | $60.15 |
| ADA | Cardano | $0.31 |
| ADA.S | Cardano (staking) | $0.31 |
| ALGO | Algorand | $0.24 |
| ATOM | Cosmos | $9.86 |
| AVAX | Avalanche | $12.45 |
| AXS | Axie Infinity | $6.56 |
| BAT | Basic Attention Token | $0.22 |
| BCH | Bitcoin Cash | $109.91 |
| BNB | Binance Coin | $292.79 |
| BTC | Bitcoin | $16,206.30 |
| CAKE | PancakeSwap | $3.88 |

---

[3] Because Schedule G lists the executory contracts and unexpired leases, they are not re-listed in Schedule A/B.

| CHZ | Chiliz | $0.16 |
|---|---|---|
| COMP | Compound | $37.16 |
| CRO | Cronos | $0.06 |
| CRV | Curve DAO Token | $0.65 |
| DAI | Multi Collateral Dai | $1.00 |
| DASH | Dash | $39.97 |
| DOGE | DogeCoin | $0.10 |
| DOT | Polkadot | $5.13 |
| DOT.S | Polkadot (Staking) | $5.13 |
| DYDX | dYdX | 1.666 |
| EGLD | Elrond | $42.14 |
| ENJ | Enjin Coin | $0.30 |
| EOS | EOS | $0.90 |
| ETC | Ethereum Classic | $19.33 |
| ETH | Ethereum | $1,167.24 |
| ETH2 | Ethereum 2 | $1,167.24 |
| ETH2.S | Etherium 2 (Staked) | $1,167.24 |
| ETHW | EthereumPoW | $3.21 |
| EUR | Ethereum EUR | $1.03 |
| FIL | Filecoin | $4.25 |
| FLOW | FLOW | $1.09 |
| FTM | Fantom | $0.20 |
| FTT | FTX Token | $1.29 |
| GALA | Gala | $0.02 |
| GBP | Binance GBP Stable Coin | $1.20 |
| GRT | The Graph | $0.06 |
| HBAR | Hedera Hashgraph | $0.05 |
| HNT | Helium | $2.48 |
| HT | Huobi Token | $6.31 |
| ICP | Internet Computer | $3.85 |
| KLAY | Klaytn | $0.18 |
| KSM | Kusama | $25.59 |
| LDO | Lido DAO Token | $1.08 |
| LEO | Leo | $3.80 |
| LINK | Chainlink | $7.19 |
| LRC | Loopring | $0.24 |
| LTC | Litecoin | $73.85 |
| LUNA | Terra 2.0 | $0.00 |
| MANA | Decentraland | $0.39 |
| MATIC | Polygon | $0.82 |
| MKR | Maker | $645.41 |

14

| mSOL | Mariande Staked SOL | $14.40 |
| NEAR | Near | $1.59 |
| OKB | OKB | $20.32 |
| OMG | OMG Network | $1.16 |
| ONE | One Coin | $0.01 |
| PAXG | PAX Gold | $1,740.64 |
| QRDO | Qredo | $0.14 |
| RNDR | Render Token | $0.47 |
| ROSE | Oasis | $0.05 |
| RUNE | THORchain | $1.17 |
| SAND | The Sandbox | $0.55 |
| SBR | Saber | $0.00 |
| SHIB | Shiba Inu coin | $0.00 |
| SNX | Synthetix | $1.66 |
| SOL | Solana | $14.40 |
| SOL.S | SOL (staking) | $14.40 |
| SRM | Serum | $0.23 |
| SRM_LOCKED | Locked Serum | $0.23 |
| STETH | Staked ETH | $1,165.18 |
| STX | Stacks | $0.25 |
| SUSHI | SushiSwap | $1.33 |
| THETA | Theta Network | $0.92 |
| TRX | Tron | $0.05 |
| UNI | Uniswap | $5.28 |
| USDT | Tether | $1.00 |
| UST | Terra Classic | $0.02 |
| VET | VeChain Token | $0.02 |
| WSTETH | ETH (Wrapped Staked) | $1,077.58 |
| XLM | Stellar | $0.09 |
| XMR | Monero | $135.08 |
| XRP | Ripple | $0.39 |
| XTZ | Tezos | $0.98 |
| YFI | Yearn.Finance | $6,266.50 |
| ZEC | Z Cash | $39.54 |

3. **Schedule D – Creditors Holding Secured Claims.** Except as specifically stated herein, real property lessors, utility companies and other parties which may hold deposits have not been listed on Schedule D. The Debtors have not included on Schedule D all parties that may believe their claims are secured through setoff rights, deposits posted by, or on behalf of, the Debtors, or inchoate statutory lien rights. To the extent applicable, while reasonable efforts have been made, determination of the date upon which each claim in Schedule D

was incurred or arose would be unduly burdensome and cost prohibitive, and therefore, the Debtors may not list a date for each claim listed on Schedule D.

4. **Schedule E—Creditors Holding Unsecured Priority Claims.** The listing of any claim on Schedule E does not constitute an admission by the Debtors that such claim is entitled to priority under Section 507 of the Bankruptcy Code. The Debtors reserve the right to dispute the priority status of any claim on any basis. While reasonable efforts have been made, determination of the date upon which each claim in Schedule E was incurred or arose would be unduly burdensome and cost prohibitive, and therefore, the Debtors may not list a date for each claim listed on Schedule E.

Pursuant to certain orders of the Court in the Chapter 11 Cases entered shortly after the Petition Date [Docket Nos. 43-44, 49, 50-52, and 55] (collectively, the "Interim First Day Orders"), the Debtors were granted authority to pay certain outstanding prepetition payables, including payments outlined in the Cash Management, Tax, Utility, Insurance, Critical Vendor, and Wage Motions [Docket Nos. 7, 9-11, 13, and 16, respectively].

The Court granted the Debtors authority to pay, in their sole discretion, certain tax liabilities and penalties and regulatory fees, including certain business licensing fees, that accrued prepetition.  Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid pursuant to the Interim First Day Orders are not listed in Schedule E.

The Court also granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, and other compensation, reimbursable employee expenses, and employee medical and similar benefits, in the ordinary course of business. The Debtors believe that all such Claims have been, or will be, satisfied in the ordinary course during their Chapter 11 Cases pursuant to the authority granted in the Interim First Day Orders and any subsequent final order, and are not listed in Schedule E.

**Schedule F—Creditors Holding Unsecured Nonpriority Claims.**[4] Claims represented in Schedule F are separated by Debtor-entity. Claims based on transactions with international clients pertain to Debtor BlockFi International Ltd. For U.S.-based clients, (a) BlockFi Interest Account claims pertain to Debtor BlockFi Inc., (b) BlockFi Private Client Account claims pertain to BlockFi Lending LLC and (c) claims based on retail loans pertain to BlockFi Lending LLC.

The liabilities identified in Schedule F are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from the represented liabilities. Parties in interest should not accept that the listed liabilities necessarily reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims. Similarly, parties in interest should not anticipate that recoveries in these cases will reflect the relationship of aggregate asset values and aggregate liabilities set forth in the

---

[4] The cryptocurrency conversion rates used to calculate unsecured nonpriority claims for Schedule F are set forth above in the note regarding Schedule A/B, Question 77.

Schedules and Statements. Parties in interest should consult their own professionals or advisors with respect to pursuing a claim. Although the Debtors and their professionals have generated financials the Debtors believe to be reasonable, actual liabilities (and assets) may deviate from the Schedules and Statements due to certain events that occur throughout the duration of these Chapter 11 Cases. The claims listed on Schedule F arose or were incurred on various dates. In certain instances, the date on which a claim arose may be unknown or subject to dispute. Although reasonable efforts have been made to determine the date upon which claims listed in Schedule F was incurred or arose, fixing that date for each claim in Schedule F would be unduly burdensome and cost prohibitive and, therefore, the Debtors may not list a date for each claim listed on Schedule F. Further, the Court granted the Debtors authority to pay certain prepetition obligations for certain critical vendors.  Accordingly, any unsecured claims based on certain obligations owed to critical vendors have been paid pursuant to the Interim First Day Orders are not listed in Schedule F.

5.  **Schedule G—Executory Contracts.** While every effort has been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule, as necessary. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, right of way, subordination, nondisturbance agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such documents are also not set forth in Schedule G. The Debtors reserve all rights to dispute or challenge the characterization of the structure of any transaction or any document or instrument related to a creditor's claim.  The Debtors may be party to certain agreements that have expired by their terms that the Debtors consider expired and have noted so accordingly.  Similarly, some of the agreements set forth in Schedule G may be the subject of a rejection motion filed by the Debtors that was approved in advance of the filing of the Schedules and Statements but are still listed in Schedule G.  Additionally, the Debtors may be party to certain agreements that have expired by their terms, but all parties continue to operate under the agreement. Out of an abundance of caution, the Debtors have listed such agreements on Schedule G. The Debtors' inclusion of such contracts or agreements on Schedule G is not an admission that such contract or agreement is an executory contract or unexpired lease. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission. In some cases, the same supplier or provider may appear multiple times in Schedule G.  Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.  The listing of any contract on Schedule G does not constitute an admission by the Debtors as

17

to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

## Specific Statement Disclosures

1. **Statement Question 1 – Gross Revenue.**  The Debtors have provided gross revenue figures for January 1, 2020, through December 31, 2020; January 1, 2021, through December 31, 2021; and January 1, 2022, through the Petition Date. The Debtors' revenue from international transactions was attributable to the legal entity BlockFi International LLC for calendar years 2020 and 2021, and starting in calendar year 2022 the Debtors' revenue from international transactions was attributable to BlockFi International Ltd. Debtors BlockFi Lending II LLC and BlockFi Ventures LLC have no gross revenue. Additionally, since a primary component of the Debtors' business is generating interest, such interest is considered normal business revenue and is captured by Statement Question 1 rather than separately broken out in Statement Question 2.

2. **Statement Question 2 – Non-Business Revenue**. The Debtors have included other operating income from the balance sheets. While under GAAP, this other operating income may not be considered "revenue", the Debtors have included the non-business revenue under Question 2 for purposes of completeness.

3. **Statement Question 3 – Certain Payments or Transfers Within 90 Days.**[5]  The transactions represented relate solely to transfers from BlockFi Interest Accounts to Wallets and BlockFi Wallets to off-platform accounts. For each transaction, the Debtor listed is the Debtor entity that processed the payment. Platform activity internal to BlockFi reflects payments made into a client's Wallet account. With respect to BlockFi Private Clients, transfers from BlockFi Private Client Accounts to Wallets are funded via BlockFi Lending LLC or BlockFi International Ltd. depending on which debtor entity is counterparty to the client's contract. Transfers from BlockFi Interest Accounts held by U.S.-based clients to their BlockFi Wallets are executed by Debtor BlockFi Inc.

The Debtors' response to Part 2, Statement Question 3 includes certain payments to creditors on account of withdrawals that were requested by such creditors before November 10, 2022 at 8:15 p.m. (prevailing Eastern Time), but where such payments were made on account of such withdrawals after the Platform Pause in the ordinary course of the Wallet Withdrawal Motion. For the avoidance of doubt, the dates listed in the "Date of Payments" column on the chart attached to Statement Question 3 represent the dates that such requested withdrawals were processed and completed in the ordinary course of the Debtors business.  Nothing contained in these Schedules and Statements is intended to be an admission that any requested transfers or withdrawals of assets on the Debtors' platform following the implementation of Platform Pause were actually completed.  For the avoidance of doubt, the time stamp associated with the Debtors' implementation of the

---

[5]     Values in this schedule may differ from other publicly available materials based on the pricing methodology used to convert cryptocurrency to USD value.

Platform Pause shall be determined by the Wallet Withdrawal Motion and the Debtors reserve all rights in connection therewith.

4. **Statement Question 4 – Certain Payments or Transfers Within 1 Year.[6]** The schedule attached reflects salary, bonus, expense reimbursements, other payments, and platform activity in the year before the Petition Date. The Debtors are also disclosing the following supplemental information, which has been vetted by the independent directors of BlockFi Inc.[7]

BlockFi is being fully transparent and publicly displaying all activity for current insiders. In the interest of protecting the privacy of others, the personal transactions of former insiders have been redacted pursuant to the *Interim Order Granting Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Top 50 Unsecured Creditors and Consolidated List of Creditors, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information of Individual Creditors, Clients, Equity Holders, and Current and Former Employees, (III) Authorizing Client Name Redaction, (IV) Waiving the Requirement to File an Equity List and Provide Notices Directly to Equity Security Holders, and (V) Granting Related Relief* [Docket No. 53].

**Platform Activity**

- Certain members of the management team, like many BlockFi clients, opened accounts on BlockFi's platform and used them to buy, sell, trade, and store different cryptocurrencies. Like clients, these employees deposited their own fiat currency, cryptocurrency, or both, onto the BlockFi platform, and used the platform as part of their individual investment portfolios and/or to manage their day-to-day or year-to-year finances over time.

  Below is the balance (in U.S. Dollar equivalent) in cryptocurrency on the BlockFi platform for the members of the BlockFi management team who had BlockFi accounts at the end of each month in 2022 prior to the Petition Date:[8]

|  | 1/31/22 | 2/28/22 | 3/31/22 | 4/30/22 | 5/31/22 | 6/30/22 | 7/31/22 | 8/31/22 | 9/30/22 | 10/31/22 | 11/21/22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **BTC price** | $38480 | $43169 | $45514 | $37640 | $31798 | $19921 | $23302 | $20050 | $19423 | $20496 | $15779 |
| S. Allmon | $143k | $162k | $175k | $153k | $140k | $95k | $110k | $108k | $102k | $110k | $101k |
| A. Cheela | $329k | $338k | $346k | $333k | $303k | $291k | $297k | $294k | $295k | $298k | $292k |

---

[6]     Values in this schedule may differ from other publicly available materials based on the pricing methodology used to convert cryptocurrency to USD value.

[7]     *See* Docket No. 14, *Decl. of Mark Renzi in Support of Chapter 11 Petitions and First Day Motions*, ¶¶ 63-64.

[8]     These figures are rounded and combine balances on BlockFi's retail and institutional platforms (as applicable).

| M. Crowell | $11k | $12k | $13k | $11k | $10k | $9k | $9k | $9k | $9k | $9k | $8k |
| A. Grigoryan | $10k | $10k | $10k | $10k | $10k | $9k | $10k | $10k | $10k | $10k | $9k |
| A. Healy | $254k | $407k | $409k | $410k | $412k | $1k | $1k | $1k | $1k | $1k | $1k |
| T. Lauro | $279k | $309k | $330k | $276k | $227k | $146k | $177k | $157k | $150k | $161k | $125k |
| R. Loban | $245k | $273k | $290k | $241k | $74k | $47k | $60k | $54k | $50k | $55k | $43k |
| F. Marquez | $154k | $165k | $170k | $154k | $142k | $117k | $125k | $118k | $117k | $120k | $109k |
| Z. Prince | $9213k | $12490k | $13151k | $3037k[9] | $2577k | $2124k | $2421k | $1366k | $1704k | $1833k | $1392k |
| A. Tam | $222k | $309k | $323k | $227k | $15k | $13k | $14k | $14k | $14k | $14k | $13k |

No member of the BlockFi management team withdrew any cryptocurrency from BlockFi's platform after October 14, 2022, and no member of BlockFi's management team made a withdrawal greater than 0.2 BTC in value at any time after August 17, 2022.

For context and by way of comparison, in 2022, BlockFi completed $7.7 billion in retail withdrawals, and management team withdrawals represented 0.15% of that total volume:

| Time Period | 1/1/2022-Platform Pause | 6/1/2022-Platform Pause |
|---|---|---|
| Retail Withdrawals[10] | $7.7 billion | $3.3 billion |

Finally, when reviewing the platform activity on the attached schedule, please note that it lists as separate transactions each platform action, inclusive of intra-BlockFi activity such as transfers between BlockFi Interest Accounts ("BIA") and BlockFi Wallets, interest paid, and withdrawals off the BlockFi platform. By way of example, the first material deposit on the schedule was made by Chief Security Officer Adam Healy on January 24, 2022. That deposit is copied in pertinent part below:

| BlockFi platform activity-deposit | 1/24/2022 | $240,000 |
|---|---|---|
| BlockFi platform activity-internal move from Wallet to BIA (into BIA credit) | 1/24/2022 | $240,000 |
| BlockFi platform activity-internal move from Wallet to Bia (from Wallet debit) | 1/24/2022 | -$240,000 |

---

[9]    In addition to a material drop in the price of BTC and other cryptocurrency during 2022, which had an impact on these figures for each member of management, Mr. Prince made a significant withdrawal in April 2022 from deposits he had previously made on the BlockFi platform in order to pay U.S. federal and state taxes.

[10]    Retail client withdrawal volume includes crypto, wire and ACH withdrawals requested by retail clients using the BlockFi application. Prices for each asset were converted to USD on the date of each withdrawal for purposes of this analysis.

The schedule identifies each of the three steps involved in the deposit as three entries. But it reflects a single deposit into Mr. Healy's BlockFi Wallet account, followed by separate book entries to reflect the credit and debit when Mr. Healy transferred the deposit out of his Wallet and into his BIA account.  The same phenomenon will appear on the schedule for withdrawals where individuals transferred cryptocurrency from their BIA accounts to Wallets and then off the BlockFi platform: each action is reflected separately.

**Payments Earned for 2021 Performance**

Certain payments to BlockFi executives on February 11, 2022, identified on the attached chart, are described in shorthand as the "2021 Executive Bonus."  BlockFi is providing additional disclosure below related to these payments.

Specifically, in 2021, BlockFi's board of directors created an opportunity for leaders at the Senior Vice President level and above to earn a cash award if BlockFi achieved objective key performance metrics in targeted areas: revenue, funded clients and credit card product users.  Performance against these objectively measurable goals led to the payments listed, which were made on February 11, 2022.

**"Crypto-winter" and FTX**

- As previously disclosed in the First-Day Declaration,[11] in the summer of 2022, the collapse of Three Arrows Capital and, more generally, "crypto-winter," caused contagion across the sector and led to material withdrawals from platforms industry-wide.  Some companies froze their platforms, prohibiting customers from withdrawing funds.

- BlockFi considered continuing to seek options that may have preserved equity value, a path that would have taken additional time, had significant risks, and may not have succeeded.  Instead, BlockFi acted quickly to protect clients' funds, executing a transaction in which FTX committed to loan $400 million in cryptocurrency on a junior basis to BlockFi's obligations to its clients.[12]  That transaction enabled BlockFi to process billions of dollars in clients' requested withdrawals and other transactions between June and November 2022.

- The FTX transaction thus stabilized BlockFi and protected clients.  But while the structure of the transaction secured liquidity for BlockFi's clients, it led to BlockFi's executives and employees, as reflected in the chart below, losing their own equity value.[13]

- BlockFi also reorganized its workforce, reducing headcount by over 20% to attempt to further protect client balances and chart a course for the return to profitability.

---

[11]    *See* Docket No. 14, *Decl. of Mark Renzi in Support of Chapter 11 Petitions and First Day Motions*, ¶¶ 85-90.

[12]    *Id.* ¶ 89.

[13]    *Id.* ¶ 90.

- At the same time, BlockFi had to create a go-forward compensation structure to retain business-critical capabilities needed to effectuate the FTX transaction. Thus, in July 2022, BlockFi's then-board of directors approved a multi-pronged strategy.

- *First*, several members of BlockFi's management team had paid out of pocket for, or otherwise financed, shares or options rendered worthless by the FTX transaction. BlockFi funded one-time payments to effectively return the funds it had received and make certain employees whole. Those and related transactions, which also had a retention component given the need to retain employees working to effectuate the FTX transaction, are reflected as "Options Exercise Reimbursement" or "Retention" in the attached chart.[14]

- *Second*, the board approved a retention program offering key employees the opportunity to earn cash payments of up to 50% of their base salary if: (a) they stayed at BlockFi through February 2023;[15] and (b) BlockFi met certain company-wide goals. The retention program, however, was discontinued upon BlockFi's chapter 11 filing, and no payments were made (or will be made) to insiders thereunder.

- *Third*, historically, BlockFi timed compensation raises with material capital markets activity and fundraising. The massive impact of the FTX transaction on management equity led BlockFi's board of directors to, among other things, increase base salaries and make retention payments for those that remained in the interest of retaining business-critical knowledge and capabilities.

- A chart summarizing various impacts of the FTX transaction on the BlockFi management team appears below:

| Name | Equity Value Eliminated in FTX Transaction[16] | 2023 Planned Retention Payment That Will Not Be Made | Salary Change Following FTX Transaction | Post-FTX Salary Change For Promotion or Other Reason (if Applicable) |
|---|---|---|---|---|
| S. Allmon | $13.13M | $187.5k | $300k-$375k | N/A |
| A. Cheela | $19.93M | $281k | $282k-$353.1k | $562k |
| M. Crowell | $5.55M | $187.5k | $270k-$337.5k | $375k |
| A. Grigoryan | $11.25M | $250k | $350k-$437.5k | $500k |
| A. Healy | $19.5M | $262.5k | $420k-$525k | N/A |
| R. Loban | $5.25M | $200k | $300k-$375k | $400k |
| F. Marquez | $156.43M | $250k | $225k-$500k | N/A |

---

[14]    For example, in April 2022, Mr. Mayers was asked to repay a loan not otherwise due until 2027 to help bring BlockFi into compliance with Sarbanes Oxley Act requirements in anticipation of the registration of BlockFi's yield product with the SEC. The payment listed under this category includes the retirement of this loan and make-whole costs related thereto.

[15]    Participants were promised 80% of the retention payment (i.e., 80% of 50% of their base salary) simply for remaining at BlockFi through the end of February 2023.

[16]    For the purposes of calculating lost equity value in this chart, BlockFi used total vested and unvested equity at the last preferred share price from the Series E investment round.

| | | | |
|---|---|---|---|
| J. Mayers | $64.5M | $281.25k | $350k-$562.5k | N/A |
| Y. Mushkin | $11.25M | $275k | $440k-$550k | N/A |
| B. Oliver | $18.75M | $250k | $400-$500k | N/A |
| Z. Prince | $412.82M | $600k | $250k-$400k | N/A |
| D. Spack | $34.5M | $171.9k | $275k-$343.8k | N/A |
| A. Tam | $34.5M | $187.5k | $300k-$375k | N/A |

**The Counterparty Settlement**

- Certain payments to BlockFi executives identified on the attached chart are described in shorthand as the result of a "Litigation Settlement." BlockFi is providing additional disclosure below related to these payments. Because the financial terms of the "Litigation Settlement" are confidential, BlockFi is referring to the counterparties to the settlement collectively as "Counterparty A."

- In 2021 and 2022, Counterparty A entered into Private Securities Contracts ("PSCs") with certain current and former BlockFi employees. In the PSCs, Counterparty A promised to make immediate payments to the relevant individuals in exchange for some of their future rights to payment in the event of a BlockFi public offering or sale.

- The PSCs entered into between Counterparty A and BlockFi executives from December 2021 through April 2022 were negotiated when BlockFi was seeking to raise additional capital based, in part, on a major investment bank estimating BlockFi's equity value at between $6 and $8 billion.

- The FTX transaction occurred months later, following the material downturn in the cryptocurrency market described above.

- Counterparty A's recourse against the BlockFi executives was contractually limited to the BlockFi shares themselves. But when the cryptocurrency sector deteriorated, the contagion had an impact on both BlockFi's equity value and Counterparty A's investment. Counterparty A threatened to bring unfounded claims against BlockFi—generally seeking to use expensive, burdensome litigation in an effort to recoup the value of Counterparty A's unsuccessful investment.

- As BlockFi assessed how to address the threats from Counterparty A, as a result of the FTX transaction, FTX had an appointed observer to BlockFi's board of directors. FTX's appointed observer stressed the importance of settling the threatened litigation—funded by FTX—to BlockFi and its clients' long-term best interests.

- Counterparty A's threats were thus resolved in a confidential settlement agreement between Counterparty A, BlockFi, and the executives. The settlement was brought to, and approved by, BlockFi Inc's board of directors.[17]

Due to the structure of the settlement, certain payments from BlockFi were routed *through* the executives and ultimately made to Counterparty A. The payments also created tax liabilities for the executives even though the executives did not keep the funds, and BlockFi made the executives whole for the tax liabilities created by the settlement. The individuals took the payments received from BlockFi and paid them to Counterparty A pursuant to the settlement agreement, appropriate taxing authorities, or both.

5. **Statement Question 7 – Legal Actions.** The Debtors have included certain known state regulatory and civil actions and against the Debtors. The Debtors are not aware of any pending workers' compensation claims. If any workers' compensation claims become known, however, the Debtors maintain that disclosing such claims would violate certain laws, including the Health Insurance Portability and Accountability Act of 1996.

6. **Statement Question 9 – Gifts.** For the avoidance of doubt, Question 9 only includes the Debtors' charitable contribution that exceeds the $1,000 threshold and does not include any amounts below the threshold, whether promotional or charitable.

7. **Statement Question 11 – Payments Made Related to Bankruptcy.** All payments for services of any entities that provided consultation concerning debt restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date were made by Debtor BlockFi Inc. (for the benefit of all Debtors) and are, therefore, listed on Debtor BlockFi Inc.'s Statements. Additional information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications for those professionals and related orders. Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Statement Question 11 may include payments for professional services unrelated to bankruptcy.

8. **Statement Question 18 – Closed, Sold, or Otherwise Transferred Accounts.** With respect to BlockFi International Ltd., the Kraken, Fireblocks, Signature Bank, BCB, and Deribit accounts are listed for completeness and reflect a continuance of the account on the date each provide recognized the entity name change from BlockFi International LLC to BlockFi International Ltd.

9. **Statement Question 20 – Off-Premises Storage.** The Debtors do not have any physical off-premises storage. The Debtors do, however, utilize several cloud storage service providers to house the Debtors' information. These vendor contracts are included in

---

[17]    At the time the members of BlockFi Inc.'s Board of Directors included, in addition to a board observer from FTX, a designee of investor Bain Capital, Stefan Cohen, and independent board members Jennifer Hill and Ellen-Blair Chube.

Schedule G.  The Debtors reserve all rights to amend and/or supplement Schedule G as necessary or appropriate.

10. **Statement Question 21 – Property Held for Another**. Statement Question 21 details certain amounts held in wallet accounts as detailed in the Wallet Withdrawal Motion. As discussed in the Wallet Withdrawal Motion, the Debtors do not have a legal or equitable interest in the digital assets held in the Wallet Accounts; such held assets are owned by the Debtors' clients. As discussed further in the Wallet Withdrawal Motion, amounts are represented as cryptocurrency in-kind as of the Platform Pause, rather than dollar amounts.

11. **Statement Question 25 – Other Business Interests.** The Debtors have listed NB BF JV LLC, previously named BlockFi NB LLC that was a joint venture with Neuberger. The taxpayer EIN number is for Neuberger Berman Group LLC as the entity was taxed as a Disregarded Entity under Neuberger Berman Group LLC at the time of operation. The end date represents the date on which BlockFi bought out Neuberger Berman for 100% control as part of its winddown plan.

12. **Statement Question 26 – Creditors and Other Parties Issued Financial Statements Within 2 Years of the Petition Date.**  The individuals and entities that received financial statements based on the Debtors' books and records are listed in Statement Question 26. While the Debtors made diligent and reasonable efforts to ensure the list is accurate and complete based on information that was available to them at the time of preparation of the response to Question 26, inadvertent errors or omissions may have occurred.

13. **Statement Question 27 – Inventories**. For purposes of completeness, the Debtors have listed the market value of digital asset inventories in Question 27.

14. **Statement Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.**  Distributions by the Debtors to their directors and officers are listed above for Statement Question 4.

15. **Statement Question 32 – Pension Fund Contributions.** The Debtors have no pension plans to which the company has contributed. Refer to Part 9, Question 17 for information regarding the Debtors' 401(k) plans.

*      *      *      *      *

| Debtor | BlockFi Lending LLC | Case number (if known) | **22-19365** |
|---|---|---|---|
| | Name | | |

---

**Fill in this information to identify the case:**

| Debtor name | **BlockFi Lending LLC** |
|---|---|
| United States Bankruptcy Court for the: | **District of New Jersey (Trenton)** |
| Case number (if known) | **22-19365** |

■ Check if this is an amended filing

---

Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals

12/15

| **Part 1:** | **Summary of Assets** |
|---|---|

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from Schedule A/B.................................................................... $             0.00

   1b. **Total personal property:**
   Copy line 91A from Schedule A/B................................................................. $      **$1,148,912,125.64**

   1c. **Total of all property:**
   Copy line 92 from Schedule A/B.................................................................... $      **$1,148,912,125.64**

| **Part 2:** | **Summary of Liabilities** |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D............................ $          0.00

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.................................. $          0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.................................. +$      938,900,241.74

4. **Total liabilities** .........................................................................................
   Lines 2 + 3a + 3b

   $      938,900,241.74

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **BlockFi Lending LLC** |
| United States Bankruptcy Court for the: | **District of New Jersey (Trenton)** |
| Case number (if known) | **22-19365** |

■ Check if this is an
amended filing

Official Form 206A/B

# Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.

■ Yes. Fill in the information below

| 2. | **All cash or cash equivalents owned or controlled by the debtor** | **Current value of debtor's interest** |
|---|---|---|
| 2.1 | | $0.00 |

Debtor    **BlockFi Lending LLC**                                                    Case number (*if known*)  **22-19365**
       Name

---

3.    **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1 | Coinbase | Wallet with USD Balance | N/A | ($0.84) |
| 3.2 | Coinbase | Wallet with USD Balance | N/A | ($0.01) |
| 3.3 | Coinbase | Wallet with USD Balance | N/A | $0.11 |
| 3.4 | Fidelity | Wallet with USD Balance | N/A | $0.00 |
| 3.5 | FTX | Wallet with USD Balance | N/A | $0.00 |
| 3.6 | Gemini | Wallet with USD Balance | N/A | $0.00 |
| 3.7 | Gemini | Wallet with USD Balance | N/A | $0.00 |
| 3.8 | Signature Bank | Money Market | 1447 | $0.00 |
| 3.9 | Signature Bank | Checking | N/A | $0.00 |
| 3.10 | Signature Bank | Checking | 5383 | $18,550.00 |
| 3.11 | Silicon Valley Bank | Checking | 8628 | ($1,157.29) |
| 3.12 | Silvergate Bank | Checking | 4109 | ($0.15) |
| 3.13 | Silvergate Bank | Checking | 9264 | $0.00 |
| 3.14 | Silvergate Bank | Checking | 4091 | $0.44 |
| 3.15 | Tagomi | Wallet with USD Balance | N/A | ($0.29) |

---

4.    **Other cash equivalents** *(Identify all)*

| | | |
|---|---|---|
| 4.1 | | $0.00 |

---

5.    **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.          **$17,391.97**

---

**Part 2:**    **Deposits and Prepayments**

**6. Does the debtor have any deposits or prepayments?**

☐  No. Go to Part 3.

☑  Yes. Fill in the information below

7.    **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| | | | |
|---|---|---|---|
| 7.1 | Blockstream | Security deposit for holding BlockFi miners in Blockstream's Georgia location. | $436,521.94 |

---

Debtor   **BlockFi Lending LLC**                                        Case number (*if known*)   **22-19365**

Name

8.    **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1    _____    _____    $0.00

9.    **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.    **$436,521.94**

| Part 3: | Accounts receivable |
|---------|---------------------|

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

■ Yes. Fill in the information below

Debtor    **BlockFi Lending LLC**                                          Case number (*if known*)  **22-19365**

       Name

11.  **Accounts receivable**

11a. 90 days old or less:

| $1,561,518.10 | $0.00 | $1,561,518.10 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $20,050,759.00 | $0.00 | $20,050,759.00 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $134,981.73 | $0.00 | $134,981.73 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $639,563,532.00 | $0.00 | $639,563,532.00 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $38,783,329.00 | $0.00 | $38,783,329.00 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $138,145,192.00 | $0.00 | $138,145,192.00 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $168,436,362.92 | $0.00 | $168,436,362.92 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $246,838,131.70 | $0.00 | $246,838,131.70 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

11a. 90 days old or less:

| $162.30 | $0.00 | $162.30 |
|---|---|---|
| face amount | doubtful or uncollectible accounts | |

12.  **Total of Part 3.**
     Current value on lines 11a + 11b = line 12. Copy the total to line 82.

     **$1,253,513,968.75**

**Part 4:**    **Investments**

13. **Does the debtor own any investments?**

☐ No. Go to Part 5.

■ Yes. Fill in the information below

| Debtor | **BlockFi Lending LLC** | Case number (*if known*) **22-19365** |
|---|---|---|
| | Name | |

| | | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **14.** | **Mutual funds or publicly traded stocks not included in Part 1**<br>Name of fund or stock: | | |
| 14.1 | Grayscale Trust Shares - Basic Attention Token (GBAT) | Nov 28 share price x quantity of shares | $20,406.80 |
| 14.2 | Grayscale Trust Shares - ChainLink (GLNK) | Nov 28 share price x quantity of shares | $23,420.06 |
| 14.3 | Grayscale Trust Shares - Decentraland (MANA) | Nov 28 share price x quantity of shares | $141,885.12 |
| 14.4 | Grayscale Trust Shares - FileCoin (FILG) | Nov 28 share price x quantity of shares | $17,206.20 |
| 14.5 | Grayscale Trust Shares - Horizon (HZEN) | Nov 28 share price x quantity of shares | $48,136.00 |
| 14.6 | Grayscale Trust Shares - LivePeer (GLIV) | Nov 28 share price x quantity of shares | $31,219.04 |
| 14.7 | Grayscale Trust Shares - Stellar Lumens (GXLM) | Nov 28 share price x quantity of shares | $61,622.60 |
| 14.8 | Grayscale Trust Shares - ZCash (ZCSH) | Nov 28 share price x quantity of shares | $39,137.00 |

**15.** **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

| | Name of entity: | % of ownership | |
|---|---|---|---|
| 15.1 | | | $0.00 |

**16.** **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

| | | | |
|---|---|---|---|
| 16.1 | | | $0.00 |

| **17.** | **Total of Part 4.**<br>Add lines 14 through 16. Copy the total to line 83. | **$383,032.82** |
|---|---|---|

**Part 5:** **Inventory, excluding agriculture asset**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.

☐ Yes. Fill in the information below

Debtor    **BlockFi Lending LLC** _____    Case number (*if known*)  **22-19365**
          Name

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19.**  **Raw materials** | | | | |
| 19.1 | | | | $0.00 |
| **20.**  **Work in progress** | | | | |
| 20.1 | | | | $0.00 |
| **21.**  **Finished goods, including goods held for resale** | | | | |
| 21.1 | | | | $0.00 |
| **22.**  **Other inventory or supplies** | | | | |
| 22.1 | | | | $0.00 |

**23.**    **Total of Part 5.**
Add lines 19 through 22. Copy the total to line 84.

| |
|---|
| **$0.00** |

**24.**    **Is any of the property listed in Part 5 perishable?**

■ No.

☐ Yes.

**25.**    **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

■ No.

☐ Yes. Book value _____  Valuation method _____  Current Value _____

**26.**    **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

■ No.

☐ Yes.

| Debtor | BlockFi Lending LLC | Case number (*if known*) | 22-19365 |
|---|---|---|---|
| | Name | | |

## Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.

☐ Yes. Fill in the information below

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **28.** | **Crops-either planted or harvested** | | | |
| 28.1 | | | | $0.00 |
| **29.** | **Farm animals** *Examples: Livestock, poultry, farm-raised fish* | | | |
| 29.1 | | | | $0.00 |
| **30.** | **Farm machinery and equipment** *(Other than titled motor vehicles)* | | | |
| 30.1 | | | | $0.00 |
| **31.** | **Farm and fishing supplies, chemicals, and feed** | | | |
| 31.1 | | | | $0.00 |
| **32.** | **Other farming and fishing-related property not already listed in Part 6** | | | |
| 32.1 | | | | $0.00 |

| | | |
|---|---|---|
| **33.** | **Total of Part 6.** Add lines 28 through 32. Copy the total to line 85. | $0.00 |

**34.    Is the debtor a member of an agricultural cooperative?**

■ No.

☐ Yes. Is any of the debtor's property stored at the cooperative?

  ■ No.

  ☐ Yes.

| Debtor | **BlockFi Lending LLC** | Case number (*if known*) | **22-19365** |
|---|---|---|---|
| | Name | | |

**35.** **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

■ No.

☐ Yes. Book value _____    Valuation method _____    Current Value _____

**36.** **Is a depreciation schedule available for any of the property listed in Part 6?**

■ No.

☐ Yes.

**37.** **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

■ No.

☐ Yes.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.

☐ Yes. Fill in the information below

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.** **Office furniture** | | | |
| 39.1 _____ | _____ | _____ | $0.00 |
| **40.** **Office fixtures** | | | |
| 40.1 _____ | _____ | _____ | $0.00 |
| **41.** **Office equipment, including all computer quipment and communication systems equipment and software** | | | |
| 41.1 _____ | _____ | _____ | $0.00 |
| **42.** **Collectibles** Examples: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 _____ | _____ | _____ | $0.00 |

Debtor    **BlockFi Lending LLC**
Name

Case number (*if known*)  **22-19365**

43.    **Total of Part 7.**
Add lines 39 through 42. Copy the total to line 86

| $0.00 |

44.    **Is a depreciation schedule available for any of the property listed in Part 7?**

■ No.

☐ Yes.

45.    **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

■ No.

☐ Yes.

| Part 8: | Machinery, equipment, and vehicles |

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

■ Yes. Fill in the information below

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of debtor's<br>interest |
|---|---|---|---|
| **47.** | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | |
| 47.1 | | | $0.00 |
| **48.** | **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers,<br>motors,floating homes, personal watercraft, and fishing vessels | | |
| 48.1 | | | $0.00 |
| **49.** | **Aircraft and accessories** | | |
| 49.1 | | | $0.00 |
| **50.** | **Other machinery, fixtures, and equipment (excluding farm machinery and<br>equipment)** | | |
| 50.1 | Other machinery - Mining rigs (owned) | $13,884,764.40 | Fair Value | $13,884,764.40 |

Debtor    **BlockFi Lending LLC**
_____    Case number (*if known*)  **22-19365**

Name

51.    **Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87.

| | $13,884,764.40 |
|---|---|

52.    **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No.

■ Yes.

53.    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

■ No.

☐ Yes.

**Part 9:    Real property**

54. **Does the debtor own or lease any real property?**

■ No. Go to Part 10.

☐ Yes. Fill in the information below

55.    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 | | | | $0.00 |

56.    **Total of Part 9.**
Add the current value on lines 55.1 through 55.0 and entries from any additional sheets.
Copy the total to line 88

| | $0.00 |
|---|---|

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**

■ No.

☐ Yes.

Debtor    **BlockFi Lending LLC** _____    Case number (*if known*)  **22-19365**
_____
Name

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

█    No.

☐    Yes.

---

| **Part 10:** | Intangibles and intellectual property |

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐    No. Go to Part 11.

█    Yes. Fill in the information below

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60.** **Patents, copyrights, trademarks, and trade secrets** | | | |
| 60.1 | | | $0.00 |
| **61.** **Internet domain names and websites** | | | |
| 61.1 | | | $0.00 |
| **62.** **Licenses, franchises, and royalties** | | | |
| 62.1 | | | $0.00 |
| **63.** **Customer lists, mailing lists, or other compilations** | | | |
| 63.1 Retail customer list | TBD in sale process | Market value of sale | TBD in sale process |
| **64.** **Other intangibles, or intellectual property** | | | |
| 64.1 Other intangibles - institutional client relationships | TBD in sale process | Market value of sale | TBD in sale process |
| 64.2 Other intangibles - institutional client relationships | TBD in sale process | Market value of sale | TBD in sale process |
| **65.** **Goodwill** | | | |
| 65.1 | | | $0.00 |

Debtor  **BlockFi Lending LLC**
_____    Case number (*if known*)  **22-19365**
Name

---

66.  **Total of Part 10.**
     Add lines 60 through 65. Copy the total to line 89.

| | |
|---|---|
| | **$0.00** |

---

67.  **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107?

☐ No.

■ Yes.

---

68.  **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

■ No.

☐ Yes.

---

69.  **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

■ No.

☐ Yes.

---

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.

■ Yes. Fill in the information below

| | | | | Current value of debtor's interest |
|---|---|---|---|---|
| 71. | **Notes receivable**<br>Description (include name of obligor) | | | |
| 71.1 | CORE SCIENTIFIC HOLDING CO. | $5,343,457.00<br>Total face amount | - $0.00<br>doubtful or uncollectible amount | = $5,343,457.00 |
| 72. | **Tax refunds and unused net operating losses (NOLs)**<br>Description (for example, federal, state, local) | | | |
| 72.1 | | | | $0.00 |
| 73. | **Interests in insurance policies or annuities** | | | |
| 73.1 | | | | $0.00 |

---

Official Form 206A/B                Schedule A/B: Assets - Real and Personal Property                **Page 12**

| Debtor | **BlockFi Lending LLC** | Case number (*if known*) **22-19365** |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| **74.** | **Causes of action against third parties (whether or not a lawsuit has been filed)** | |
| 74.1 | Emergent Fidelity Technologies LTD. ("Emergent") and ED&F Man Capital Markets Inc. ("EDFM") - dispute over Robinhood shares | $91,802,337.87 |
| | **Nature of claim**     **Adversarial proceeding** | |
| | Amount requested     Pledged HOOD shares | |

| | | |
|---|---|---|
| **75.** | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
| 75.1 | Alameda Research Ltd | $37,666,293.43* |
| | **Nature of claim**     **Pledged Crypto Collateral** | |
| | Amount requested     To be determined | |
| 75.2 | Alameda Research Ltd | $47,066,965.73 |
| | **Nature of claim**     **Pledged Trust Shares** | |
| | Amount requested     To be determined | |
| 75.3 | Alameda Research Ltd (BlockFi Lending LLC) | $121,001,022.77* |
| | **Nature of claim**     **Defaulted Institutional loan** | |
| | Amount requested     To be determined | |
| 75.4 | Atlas Technology Group LLC | $34,713,124.00* |
| | **Nature of claim**     **Defaulted Mining Loan** | |
| | Amount requested     To be determined | |
| 75.5 | Backbone Mining Solutions LLC | $20,000,000.00* |
| | **Nature of claim**     **Defaulted Mining Loan** | |
| | Amount requested     To be determined | |
| 75.6 | BK Offshore Fund Ltd. | $1,459,013.00* |
| | **Nature of claim**     **Defaulted Institutional loan** | |
| | Amount requested     To be determined | |
| 75.7 | CO LoadCo LLC | $4,442,356.00* |
| | **Nature of claim**     **Defaulted Mining Loan** | |
| | Amount requested     To be determined | |
| 75.8 | CORE SCIENTIFIC HOLDING CO. - Conv. Note | $5,343,457.00* |
| | **Nature of claim**     **Defaulted Mining Loan** | |
| | Amount requested     To be determined | |
| 75.9 | Core Scientific, Inc. | $53,913,044.00* |
| | **Nature of claim**     **Defaulted Mining Loan** | |
| | Amount requested     To be determined | |
| 75.10 | Digistar Norway AS | $26,505,913.00* |
| | **Nature of claim**     **Defaulted Mining Loan** | |
| | Amount requested     To be determined | |

*This value is included in Q12 "Total of Part 3". We have therefore excluded this value from Q78 "Total of Part 11" to avoid overstatement of assets in Part 1 "Summary of Assets."

| Debtor | **BlockFi Lending LLC** | Case number (*if known*) **22-19365** |
|---|---|---|
| | Name | |

| | | | |
|---|---|---|---|
| 75.11 | Gilley Enterprises LLC | | $2,367,095.00* |
| | **Nature of claim** | **Defaulted Mining Loan** | |
| | Amount requested | To be determined | |
| 75.12 | Global X Digital LLC fka Reno East LLC | | $20,050,758.49* |
| | **Nature of claim** | **Defaulted Mining Loan** | |
| | Amount requested | To be determined | |
| 75.13 | Three Arrows Capital Ltd. | | $125,837,109.00* |
| | **Nature of claim** | **Defaulted Institutional loan** | |
| | Amount requested | To be determined | |
| 75.14 | TYMIF Coin Ventures LLC | | $3,563,636.00* |
| | **Nature of claim** | **Defaulted Mining Loan** | |
| | Amount requested | To be determined | |
| 75.15 | VCV Power Beta LLC | | $1,743,687.00* |
| | **Nature of claim** | **Defaulted Mining Loan** | |
| | Amount requested | To be determined | |
| 75.16 | VCV Power Mining Alpha LLC | | $995,958.00* |
| | **Nature of claim** | **Defaulted Mining Loan** | |
| | Amount requested | To be determined | |

| | | |
|---|---|---|
| 76. | **Trusts, equitable or future interests in property** | |
| 76.1 | | $0.00 |

| | | |
|---|---|---|
| 77. | **Other property of any kind not already listed Examples:** Season tickets, country club membership | |
| 77.1 | Digital assets custodied at Coinbase | $9.98 |
| 77.2 | Digital assets custodied at ETH2 Staking Wallet | $230,804.32 |
| 77.3 | Digital assets custodied at Fireblocks | $6,232,710.66 |
| 77.4 | Digital assets custodied at Gemini | $160.20 |

| | | |
|---|---|---|
| 78. | **Total of Part 11.** Add lines 71 through 77. Copy the total to line 90. | **$150,676,445.76** |

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

■ No.

☐ Yes.

*This value is included in Q12 "Total of Part 3".  We have therefore excluded this value from Q78 "Total of Part 11" to avoid overstatement of assets in Part 1 "Summary of Assets."

Debtor  **BlockFi Lending LLC**
_____  Case number (*if known*)  **22-19365**
Name

---

| **Part 12:** | **Summary** |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $17,391.97 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $436,521.94 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $1,253,513,968.75 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $383,032.82 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $13,884,764.40 | |
| 88. **Real property.** *Copy line 56, Part 9*....................................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $150,676,445.76 | |
| 91. **Total. Add lines 80 through 90 for each column** | $1,148,912,125.64 | +91b.  $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $1,148,912,125.64 |

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

Debtor name    **BlockFi Lending LLC**

United States Bankruptcy Court for the:    DISTRICT OF NEW JERSEY (TRENTON)

Case number (if known)    **22-19365**

</td><td>

■ Check if this is an
amended filing

</td></tr>
</table>

<u>Official Form 202</u>
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**Declaration and Signature**

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐  *Schedule H: Codebtors* (Official Form 206H)

■  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

■  Amended Schedule    **Schedule A/B**

☐  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐  Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **September 18, 2023**        X **/s/ Mark Renzi**
                                              Signature of individual signing on behalf of the debtor

                                              **Mark Renzi**
                                              Printed name

                                              **Chief Restructuring Officer**
                                              Position or relationship to debtor

Official Form 202            **Declaration Under Penalty of Perjury for Non-Individual Debtors**