**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DECLARATION OF MARK A. RENZI,**
**CHIEF RESTRUCTURING OFFICER OF BLOCKFI**
**INC., IN SUPPORT OF (I) FINAL APPROVAL OF THE DISCLOSURE**
**STATEMENT AND (II) CONFIRMATION OF THE THIRD**
**AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to 28 U.S.C. § 1746, I, Mark A. Renzi, hereby declare as follows under penalty

of perjury:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

## Background and Qualifications

1.      I am a Managing Director and the Head of the Corporate Finance Financial Institutions Group for Berkeley Research Group, LLC ("BRG"), and the Chief Restructuring Officer of BlockFi Inc., a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors").  BRG has served as a financial advisor to the Debtors since November 12, 2022, and on December 27, 2022, I was appointed as the Debtors' Chief Restructuring Officer.[2]

2.      I am generally familiar with the Debtors' operations, business and financial affairs, and books and records.  Except where specifically noted, the statements in this Declaration are based on:  (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant documents provided to me by other members of the Debtors' management team and the Debtors' professional advisors, (c) information provided to me by, or discussions with, other members of the Debtors' management team or its professional advisors, and/or (d) my opinion based upon my experience.  If called as a witness, I would testify competently to the facts set forth in this Declaration.

3.      I am over the age of 18 and authorized to submit this declaration (this "Declaration") in support of (i) final approval of the *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc., and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1310] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") and (ii) confirmation of the *Third Amended Joint*

---

[2]    Pursuant to the terms of that certain engagement letter between the Debtors and BRG dated November 12, 2022, and that certain engagement letter between the Debtors and BRG dated December 27, 2022, respectively.  On February 9, 2023, the Bankruptcy Court entered an order authorizing the retention of BRG as the Debtors' financial advisor and authorizing my appointment as the Debtors' Chief Restructuring Officer.

*Chapter 11 Plan of BlockFi Inc., and Its Debtor Affiliates Pursuant to Chapter 11 of the*

*Bankruptcy Code (Technical Modifications)* [Docket No. 1564] (as may be amended,

supplemented, or otherwise modified from time to time, the "Plan").[3]  If I were called upon to

testify, I could and would testify competently to the facts set forth herein.

**The Disclosure Statement**

4.      For the reasons detailed below (except where such satisfaction is apparent on the

face of the Disclosure Statement), and based on consultation with the Debtors' advisors, I believe

the Disclosure Statement and the solicitation thereof, satisfies the applicable provisions of the

Bankruptcy Code as required by sections 1125 and 1126 of the Bankruptcy Code.

**I.      All Holders of Claims and Interests Received Sufficient Notice of the Combined
         Hearing and the Plan and Disclosure Statement Objection Deadline.**

5.      On August 2, 2023, the Bankruptcy Court entered the *Order (I) Conditionally*

*Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice*

*Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and*

*(IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 1306] (the "Conditional

Disclosure Statement Order"), which, among other things, conditionally approved the

Disclosure Statement and approved, among other things, the solicitation, notice, and tabulation

procedures with respect to the Plan as set forth in Exhibit 1 to the Conditional Disclosure Statement

Order   (the "Solicitation Procedures"),   and   related   notices,   forms,   and   Ballots

(collectively, the "Solicitation Packages").  On August 11, 2023, the Debtors caused the *Notice of*

*Hearing to Consider (I) the Adequacy of the Disclosure Statement, (II) Confirmation of the*

---

[3]    Capitalized terms used but not defined herein shall have the meanings given to such terms in the Plan or the
       *Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement Relating to the Third
       Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the
       Bankruptcy Code and (II) an Order Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its
       Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Brief"), as applicable.

*Chapter 11 Plan Filed by the Debtors, and (III) Related Voting and Objection Deadlines* (the "Combined Hearing Notice"), which informed parties in interest of the date and time set for the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing"), to be served on Holders of Claims and Interests in accordance with the Solicitation Procedures. The Conditional Disclosure Statement Order established the deadline for all Holders of Claims entitled to vote on the Plan to cast their Ballots (the "Voting Deadline") and the deadline for parties in interest to file objections to the Disclosure Statement and Confirmation of the Plan (the "Objection Deadline") as September 11, 2023, at 4:00 p.m. prevailing Eastern Time.

6.    I believe that all parties affected by the Plan received sufficient notice of the Objection Deadline, the Voting Deadline, and the Combined Hearing. The Bankruptcy Court, through the Conditional Disclosure Statement Order, approved the Objection Deadline, the Voting Deadline, the Solicitation Procedures, the Solicitation Packages, and the Notice of Combined Hearing. I have been advised that the Bankruptcy Rules provide that parties in interest should receive 28-days' notice of the Objection Deadline and the hearing to consider approval of the Disclosure Statement, and under the schedule that the Debtors followed in these cases, all Holders of Claims and Interests received 45-days' notice of the Combined Hearing and 30-days' notice to review and consider the Plan and Disclosure Statement before the Objection Deadline.[4]

**II.    The Disclosure Statement Contains Adequate Information — § 1126(b)(2).**

7.    I understand that a disclosure statement must provide "adequate information," which is information sufficient to allow hypothetical investors to make informed decisions on

---

[4]    On September 7, 2023, the Debtors' Claims, Noticing, and Solicitation Agent sent a supplemental email service to all holders of Claims entitled to vote who had not yet submitted a Ballot, reminding such parties of the deadline and process to submit a Ballot.

whether to vote to accept or reject a chapter 11 plan.  The Disclosure Statement contains, among other things, descriptions and summaries of:  (a) the Debtors' business operations and capital structure;[5] (b) certain events preceding the commencement of these chapter 11 cases;[6] (c) key events in these chapter 11 cases;[7] (d) the Debtors' sale and reorganization efforts;[8] (e) an overview of the Plan;[9] (f) the classification, treatment and projected recoveries of Claims and Interests;[10] (g) a description of the Debtor Release, Third-Party Release, and related opt-out and exculpation provisions in the Plan;[11] (h) risk factors affecting the Plan;[12] (i) the investigation performed and conclusions reached by the Special Committee of the Board of Directors of BlockFi Inc. of potential claims against insiders and the settlement reached between the Debtors, the Committee, and certain insiders that is incorporated into the Plan;[13] (j) the Liquidation Analysis, which sets forth the estimated return that holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation;[14] and (k) federal tax law consequences of the Plan.[15]

---

[5]   *See* Disclosure Statement Art. VIII.

[6]   *See id.* Art. IX.

[7]   *See id.* Art. X.

[8]   *See id.*

[9]   *See* Disclosure Statement, Art. III.

[10]   *See id.* Art. V.D.

[11]   *See id.* Art. V.L.

[12]   *See id.* Art. XI.

[13]   *See id.* Art. X.R.

[14]   *See id.* Exhibit B.

[15]   *See id.* Art. XII.

8.      In addition, prior to solicitation, the Disclosure Statement and the Plan were subject to review and comment by the Committee and its advisors.  For the reasons set forth above, I believe that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code in satisfaction of section 1126(b)(2) of the Bankruptcy Code.

### III.    The Solicitation Procedures Complied with the Bankruptcy Code, the Bankruptcy Rules, and the Conditional Disclosure Statement Order.

9.      I believe that the Solicitation Procedures complied with the Bankruptcy Code, the Bankruptcy Rules, and the Conditional Disclosure Statement Order for the following reasons.

10.      *First*, it is my understanding that the Ballots used in these chapter 11 cases complied with the Bankruptcy Rules and are consistent with Official Form No. 314.  Further, I understand that the Ballots used were approved by the Bankruptcy Court pursuant to the Conditional Disclosure Statement Order, and to my knowledge, no party has objected to the sufficiency of the Ballots.  I have been advised that, pursuant to the Solicitation Procedures, the Debtors only transmitted Ballots to the classes entitled to vote on the Plan.  Based on the foregoing, I believe that the Debtors satisfied the requirements of Bankruptcy Rules 3017(d) and 3018(c).

11.      *Second*, the Disclosure Statement and the Ballots explicitly identify July 26, 2023, as the date for determining which Holders of Claims were entitled to vote to accept or reject the Plan (the "Voting Record Date").  The Bankruptcy Court approved the Voting Record Date in the Conditional Disclosure Statement Order and, to my knowledge, no party in interest has objected to the Voting Record Date.  Accordingly, I believe that the Debtors complied with the Conditional Disclosure Statement Order as it relates to the Voting Record Date and satisfied the requirements of the Bankruptcy Code.

12.      *Third*, I understand that the Solicitation Packages were transmitted to all Holders of Claims in the Voting Classes, in accordance with the requirements of section 1125 of

the Bankruptcy Code.  All Holders of Claims and Interests received 45-days' notice of the Combined Hearing and were provided reasonable time to review and consider the Plan and Disclosure Statement and file any objections thereto prior to the Objection Deadline.  I believe the Objection Deadline and the Voting Deadline were adequate under the facts and circumstances of these chapter 11 cases.  Furthermore, the Bankruptcy Court approved the Objection Deadline, the Voting Deadline, the date of the Combined Hearing, and the Solicitation Procedures through the Conditional Disclosure Statement Order.  To my knowledge, no party has objected to the length of the solicitation period.  Accordingly, I believe that the Debtors complied with the Conditional Disclosure Statement Order and satisfied the requirements of Bankruptcy Rule 3018(b).

13.    **Fourth**, I have been advised that the Debtors' Claims, Noticing, and Solicitation Agent reviewed all Ballots received through the Voting Deadline in accordance with the Solicitation Procedures.  I understand that the Debtors' Claims, Noticing, and Solicitation Agent tabulated the votes in compliance with the Solicitation Procedures approved by the Bankruptcy Court and that the results of voting will be contained in the Voting Report,[16] including all classes that will have voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.

14.    **Fifth**, I have been advised that Bankruptcy Rule 3017(d) requires transmission of a court-approved disclosure statement to, among others, classes of unimpaired creditors and equity security holders unless the court orders otherwise.  I have been further advised that, pursuant to the Conditional Disclosure Statement Order, the Debtors distributed copies of the Disclosure Statement, the Conditional Disclosure Statement Order, and the Plan to the Non-Voting Classes. I also understand that the Debtors served the Combined Hearing Notice and the Non-Voting Status

---

[16]    *Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code.*

7

Notices and opt-out forms on Holders of Claims and Interests in Non-Voting Classes. I believe that such notices were sent in form and substance approved by the Bankruptcy Court in the Conditional Disclosure Statement Order. Accordingly, the Debtors complied with the transmission of materials to the Non-Voting Classes as approved by the Conditional Disclosure Statement Order.

15. **Sixth**, I believe that the solicitation of the Plan complied with the requirements of the Bankruptcy Code, was proposed in good faith, and that the Bankruptcy Court should grant the Debtors and the Exculpated Parties and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, the protections afforded by section 1125(e) of the Bankruptcy Code.

## The Plan Satisfies the Requirements of Confirmation

**I.      Background.**

16. The Plan seeks to effectuate an orderly wind down of the Debtors and their Estates, with the objective of maximizing creditor recoveries, minimizing costs, and distributing property of the Estates in accordance with the priorities established by the Bankruptcy Code. I believe the Plan maximizes the value of the Debtors' Estates and provides as meaningful a recovery to as many of the Debtors' stakeholders as is possible under the circumstances of these chapter 11 cases.

17. As the Chief Restructuring Officer of the Debtors, I was involved in the formulation and negotiation of the key deal terms of the Plan. The Plan is the product of extensive, good faith, arm's-length negotiations between the Debtors and their key stakeholders, including the Committee, and, in my opinion, represents the best and only path available to expeditiously conclude these chapter 11 cases and maximize creditor recoveries.

**II.      The Plan Satisfies Section 1129(a) of the Bankruptcy Code.**

18.      I have been advised of the applicable standards under which a chapter 11 plan may be confirmed.  For the reasons detailed below, and with the consultation and guidance of the Debtors' advisors and legal counsel, I believe, to the best of my knowledge, that the Plan satisfies the applicable Bankruptcy Code requirements for confirmation of a plan.  I have set forth the reasons for such belief below, except where such compliance is apparent on the face of the Plan and related documents.

**A.      The Plan Satisfies the Applicable Provisions of the Bankruptcy Code — Section 1129(a)(1).**

19.      I understand that section 1129(a)(1) of the Bankruptcy Code requires a chapter 11 plan to comply with all applicable provisions of the Bankruptcy Code.  As set forth below, I believe the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

**1.      Proper Classification of Claims and Interests — Section 1122.**

20.      It is my understanding that section 1122 of the Bankruptcy Code requires that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

21.      I believe that valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.

22.    Under Article III of the Plan, Claims and Interests are classified as follows:

| Class 1: | Secured Tax Claims |
|---|---|
| Class 2: | Other Priority Claims |
| Class 3-a: | BlockFi Lending LLC Private Client Account Claims |
| Class 3-b: | BlockFi Lending LLC Loan Collateral Claims |
| Class 3-c: | BlockFi International Ltd. Private Client and Interest Account Claims |
| Class 3-d: | BlockFi International Ltd. Loan Collateral Claims |
| Class 3-e: | BlockFi Inc. Interest Account Claims |
| Class 4-a: | BlockFi Lending LLC General Unsecured Claims |
| Class 4-b: | BlockFi International Ltd. General Unsecured Claims |
| Class 4-c: | BlockFi Inc. General Unsecured Claims |
| Class 4-d: | BlockFi Services, Inc. General Unsecured Claims |
| Class 4-e: | BlockFi Trading LLC General Unsecured Claims |
| Class 4-f: | BlockFi Wallet LLC General Unsecured Claims |
| Class 4-g: | BlockFi Ventures LLC General Unsecured Claims |
| Class 4-h: | BlockFi Investment Products LLC General Unsecured Claims |
| Class 4-i: | BlockFi Lending II LLC General Unsecured Claims |
| Class 5: | FTX Facility Claims |
| Class 6: | FTX Avoidable Transfer Claims |
| Class 7: | Alameda Claims |
| Class 8: | 3AC Claims |
| Class 9: | Government Penalty Claims |
| Class 10: | De Minimis Claims |
| Class 11: | Intercompany Claims |
| Class 12: | Intercompany Interests |
| Class 13: | Existing Preferred Equity Interests |
| Class 14: | Existing Common Equity Interests |
| Class 15: | SEC Penalty Claims |
| Class 16: | Convenience Claims |
| Class 17: | State Governmental Regulatory Claims |

23.    I believe that the Claims and Interests assigned to each Class listed above are substantially similar to the other Claims and Interests in that Class.  In addition, I believe that valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or

10

among Holders of Claims and Interests.    Namely, the Plan separately classifies Claims and Interests because each Holder of such Claims or Interests may hold (or may have held) rights in the Debtors' estates legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience results from such separate classification.

24.      Specifically, I understand that General Unsecured Claims are broken into nine classes to account for the fact that Holders of such claims have legal recourse against only a specific Debtor.  Holders of Class 3 Account Holder Claims are classified separately from Holders of Class 4 General Unsecured Claims due to the unique nature and basis for the Account Holder Claims, which consist of claims held by clients on the BlockFi Platform.    Further, it is my understanding that the Account Holder Claims in Class 3 are sub-classified by legal entity and product type.  For example, Holders of BlockFi Interest Account Claims are classified separately from Holders of BlockFi Loan Collateral Claims.    Convenience Claims are classified separately because the Holders of such Claims, either by amount or election, will be entitled to a one-time payment of no greater than 50% of their Claims to ease the administrative burdens on the Debtors. FTX Facility Claims (Class 5), FTX Avoidable Transfer Claims (Class 6), Alameda Claims (Class 7), and 3AC Claims (Class 8) are properly classified separately as such claims are disputed by the Debtors and relate to alleged loans and/or preference and/or fraudulent transfer claims asserted by such litigation parties.  Governmental Penalty Claims are classified separately because the Debtors believe that such claims are subordinated, pursuant to sections 726(a)(4) and 1129(a)(7) of the Bankruptcy Code, to Account Holder Claims, General Unsecured Claims and Intercompany Claims.  SEC Penalty Claims and State Regulatory Claims are classified separately due to stipulations entered into between the Debtors and such parties which consensually resolves the treatment of their respective Claims.

25.     For the foregoing reasons, I believe that the Plan satisfies section 1122 of the Bankruptcy Code.

**2.     Specification of Classes, Impairment, and Treatment — Section 1123(a)(1)– (3).**

26.     Article III of the Plan specifies in detail the classification of Claims and Interests, whether such Claims and Interests are Impaired or Unimpaired, and the treatment that each Class of Claims and Interests will receive under the Plan.  Accordingly, I believe the Plan fully complies with and satisfies sections 1129(a)(1)– (3) of the Bankruptcy Code.

**3.     Equal Treatment of Similarly Situated Claims and Interests — Section 1123(a)(4).**

27.     It is my understanding that the Plan provides the same treatment for each Claim or Interest of a particular class, except where the Holder of such Claim or Interest has agreed to a less favorable treatment.  Put simply, each Holder of Allowed Claims or Interests will receive the same rights and treatment as all other Holders of Allowed Claims or Interests within such Holder's respective class.  Specifically, I understand that netting the Intercompany Claims between Debtor entities provides the Debtors with an efficient mechanism to respect the Debtors' intercompany balances pursuant to the Debtors' books and records without altering the treatment of the Intercompany Claims or the treatment of other Classes.  For this reason, the remaining Intercompany Claims after such netting will be treated *pari passu* with Account Holder Claims and General Unsecured Claims at the applicable Debtor entity.  This netting treatment does not discriminate unfairly against similarly situated creditors but rather ensures that creditors at each Debtor entity are treated fairly.  Accordingly, I believe that the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

### 4. Means for Implementation — Section 1123(a)(5).

28.     I believe that the Plan provides adequate means for implementation as required under section 1123(a)(5) of the Bankruptcy Code.  Specifically, Article IV of the Plan provides, among other things:

(i)     the general settlement of Claims and Interests;

(ii)    the consummation of the Restructuring Transactions, including the buying and selling of Digital Assets as necessary to make the Digital Assets Allocation;

(iii)   the implementation of the Committee Settlement;

(iv)    the establishment of, and vesting of assets in, the Wind-Down Debtors;

(v)     the execution of the Plan Administrator Agreement and the appointment of the Plan Administrator and the Wind-Down Debtors' Oversight Committee;

(vi)    the effectuation of the Employee Transition Plan;

(vii)   the sources of consideration for the Restructuring Transactions;

(viii)  the cancellation of certain notes, instruments, certificates, and other documents; and

(ix)    the preservation of the Retained Causes of Action.

29.     Accordingly, I understand that the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

### 5. Prohibition of Issuance of Non-Voting Stock — Section 1123(a)(6).

30.     I am advised that section 1123(a)(6) of the Bankruptcy Code requires that a corporate debtor's chapter 11 plan provide for the inclusion in the reorganized debtor's charter (if any) of a prohibition against the issuance of non-voting equity securities.  As the Debtors are winding down, the Plan does not provide for the issuance of any non-voting equity securities. Accordingly, I believe that the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

**6.    Selection of Officers and Directors — Section 1123(a)(7).**

31.    I understand that section 1123(a)(7) of the Bankruptcy Code requires that any provisions in the Plan with respect to the manner of selection of any director, officer, or trustee be consistent with the interests of creditors, equity holders, and public policy.  Article IV.D.5 of the Plan discharges all of the Debtors' officers, directors, and managers from their duties effective as of the Effective Date without any further action.  In addition, Article IV.D.4 of the Plan provides for the appointment of the Plan Administrator as the sole officer, director, and manager of the Wind-Down Debtors[17] in the same fiduciary capacity as applicable to a board of managers and officers, subject to the Wind-Down Debtors' Oversight Committee and provisions of the Plan.[18] The manner for selection of the Plan Administrator and Wind-Down Debtors' Oversight Committee are set forth in the Plan and Plan Supplement.  Accordingly, I believe that the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

**7.    Discretionary Contents of the Plan — § 1123(b).**

32.    I understand that section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  I have been advised that under section 1123(b) of the Bankruptcy Code, among other things, a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases not previously rejected pursuant to section 365 of the Bankruptcy Code; (c) provide for a settlement or adjustment of a claim or interest; and (d) include any other provision not inconsistent with applicable provisions of the Bankruptcy Code.

---

[17]    Except in the case of the Bermuda Debtor where the Plan Administrator shall be authorized by a power of attorney executed by the Bermuda Debtor to take actions consistent with the Cross-Border Insolvency Protocol Agreement to the same extent as if the Plan Administrator were the Bermuda Debtor in the Chapter 11 cases.

[18]    *See* Plan Art. IV.D.

33.    **_First_**, I understand that the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Specifically, under Article III of the Plan, Classes 1, 2, and 4-f are Unimpaired because the Plan leaves unaltered the legal, equitable, and contractual rights of the Holders of Claims within such Classes.[19]  Alternatively, I understand that Classes 3-a, 3-b, 3-c, 3-d, 3-e, 4-a, 4-b, 4-c, 4-d, 4-e, 4-g, 4-h, 4-i, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, and 17 are Impaired since the Plan modifies the rights of the Holders of Claims and Interests within such Classes.  Classes 11 (Intercompany Claims) and 12 (Intercompany Interests) may be Impaired or Unimpaired under the Plan.  Accordingly, I believe that the Plan satisfies section 1123(b)(1) of the Bankruptcy Code.

34.    **_Second_**, I understand that Article V.A of the Plan provides that, on the Effective Date, all Executory Contracts and Unexpired Leases that were not previously rejected, assumed, or assumed and assigned will be deemed automatically rejected unless otherwise stated in the Plan.[20]  Accordingly, I believe that the Plan complies with section 1123(b)(2) of the Bankruptcy Code.

35.    **_Finally_**, I understand that the Plan contains provisions implementing certain releases and exculpations, compromising claims and interests, and enjoining certain causes of action.  These provisions (a) are the product of arm's-length negotiations, (b) have been critical to obtaining the support of the various constituencies for the Plan, (c) are given for valuable consideration, (d) were overwhelmingly accepted by creditors; (e) are fair and equitable and in the best interests of the Debtors, their estates, and these chapter 11 cases, and (f) are consistent with the relevant provisions of the Bankruptcy Code and Third Circuit law.

---

[19]    *See* Plan Art. III.

[20]    *See* Plan Art. V.A.

36.      Given my close involvement with the Committee Settlement as described in more

detail below, I have firsthand knowledge of the importance of such releases and exculpations to

the successful implementation of the Plan and maximizing recoveries for creditors.  Accordingly,

as described in more detail below, and based on consultation and guidance from legal counsel, I

believe that these provisions satisfy section 1123(b)(3) of the Bankruptcy Code.

### i.      The Debtor Release Is Appropriate.

37.      Article VIII.A of the Plan provides for releases of the Debtors' potential claims,

subject to the terms of the Committee Settlement, of their directors, officers, and employees.  For

the avoidance of doubt, these Debtor releases are of potential Debtor or Estate claims, and do not

have any impact on any direct claims that any customer or other third party may have (if any)

against any of the directors, officers, and employees.  The Debtor Release is a vital component of

the Plan, and it is a sound exercise of the Debtors' business judgment and should be approved.

38.      *First*, each Released Party, as a stakeholder and critical participant in the Plan

process, shares a common goal with the Debtors in seeing the Plan succeed.  Like the Debtors,

these parties seek to confirm the Plan and implement the Restructuring Transactions contemplated

thereunder.  Moreover, with respect to certain of the releases—*e.g.*, those releasing the Debtors'

current and former directors, officers, and employees—there is a clear identity of interest

supporting the releases because the Debtors have indemnification obligations to such parties.

Thus, any actions taken by the Debtors (or derivatively on behalf of the Debtors) against such

individuals would effectively be a lawsuit against the Debtors themselves.

39.      *Second*, the Released Parties played an integral role in the development of the Plan

and have expended significant time and resources resolving the complex issues in these chapter 11

cases to enable the Debtors to emerge swiftly from chapter 11 and to maximize in kind recoveries

to creditors as quickly as possible.  Without the Debtor Release, the Debtors and their stakeholders

16

would have been unable to secure the substantial benefits provided by the Plan in the expedited timeframe in which the Debtors propose to exit bankruptcy.  Moreover, losing the participation of the Released Parties on the eve of confirmation would threaten the feasibility of the Plan including eliminating the Debtors' ability to make in-kind Distributions and hindering the Debtors' chances of success in litigation with FTX, Alameda, Emergent and 3AC.  The Committee Settlement Parties insisted (and fairly so) on the release of the Released Parties given the potential interrelationship between theoretical claims against those Released Parties and potential claims against the Committee Settlement Parties.

40.     Furthermore, I understand that as a condition to the Debtor Release, the Committee Settlement Parties have agreed to serve as witnesses and participate in litigation against the bankruptcy estates of, among others, FTX, Alameda, Emergent and 3AC, which will ensure that the Estates are in the best position to prosecute and defend itself.  Success on these causes of action will have a material impact on Client recoveries.

41.     Additionally, I understand that the CEO and COO and other insiders are making additional personal contributions to the Plan pursuant to the Committee Settlement including monetary contributions of $2,250,000 in the aggregate and time commitments of over one thousand hours in the aggregate to facilitate in-kind distributions to customers as soon as possible, and to prosecute and defend the FTX, Alameda, Emergent and 3AC litigation.  Without the contributions of the Released Parties, the Plan and transactions contemplated therein would not be possible.  And again, the success of the Committee Settlement depends on the approval of the Debtor and Third-Party Releases in the Plan given the Committee Settlement Parties insistence that they receive the full benefit of their bargain in the Committee Settlement.

42.     I also know full well the contributions that we will need those individuals to continue to make as we wind-down the Estate and return funds to customers.  Moreover, it would be massively value-destructive and not helpful to the process, and would ultimately lead to less value to creditors, if the Debtors and/or the Wind-Down Debtors were to spend funds pursuing potential claims that are covered by the Debtor Release.  And it is critical to the delicate process envisioned by the Plan for the Debtor Release to go into effect.  Again, this has no impact whatsoever on any direct claims creditors and parties-in-interest may have against Released Parties, but as far as the Debtors' releases go, I believe such releases are appropriate.

43.     For these reasons, I believe that the Debtor Release is justified, is a sound exercise of the Debtors' business judgment, is in the best interests of creditors and all stakeholders, is an integral part of the Plan, and satisfies key factors considered by courts in determining whether a debtor release is proper.

### ii.     The Third-Party Release Is Consensual and Appropriate.

44.     I understand that Article VIII.B of the Plan contains a Third-Party Release provision in which each Releasing Party shall release any and all Causes of Action such parties could assert against the Debtors and other Released Parties if they do not opt out of the Third-Party Release.  This case and other cases in the cryptocurrency sector more generally have received tremendous publicity, and the potential claims at issue are no secret.  The Ballots and the Opt Out Form quoted the entirety of the Third-Party Release provision in the Plan and clearly informed such Holders of the steps they should take if they wanted to opt out of the Third-Party Release. Likewise, the notices distributed to Holders of Claims or Interests that were deemed to accept the Plan informed such Holders of the implications of the Third-Party Release and their ability to opt out of the Third-Party Release by completing the attached Opt Out Form.  Thus, affected parties were on notice of the Third-Party Release and of their ability to opt out and each had the ability to

preserve their personal claims against non-Debtors if they desired to do so.  My understanding is that the Claims, Noticing, and Solicitation Agent did receive a number of Opt Out Forms which further demonstrates that parties understood how to opt out of the Third-Party Release if they chose to do so.  Based on my discussion with the Debtors' advisors, I understand that under the applicable law, the Third-Party Release is thus a consensual release and that all Holders of Claims entitled to vote and Holders of Claims that were deemed to accept the Plan had the opportunity to opt out of the Third-Party Release.

45.      Accordingly, I believe that the Third-Party Release is an integral part of the Plan and should be approved.

### iii.      The Exculpation Provision Is Appropriate.

46.      Based on my experience and discussions with the Debtors' advisors, it is my belief that the exculpation provision described in Article VIII.C of the Plan is appropriate under applicable law because it was proposed in good faith, was formulated following months of extensive good-faith, arm's-length negotiations with key constituents, and, as amended, the provision is appropriately limited in scope to only apply to estate fiduciaries, which is consistent with the case law in this jurisdiction.

47.      The highly uncertain regulatory and political landscape which the Exculpated Parties have navigated throughout these chapter 11 cases demonstrates the need for the exculpation provision.  The Plan would not be feasible without the exculpation provision, which is critical to ensuring that funds can be returned to creditors as promptly as possible through the transactions

that are approved by the Bankruptcy Court and that parties are not subsequently held liable for doing things that the Bankruptcy Court authorized them to do.

48.     Accordingly, under the circumstances, I believe that it is appropriate for the Bankruptcy Court to approve the exculpation provision and to find that the Exculpated Parties have acted in good faith and in compliance with the law.

### iv.     The Gatekeeping Provision Is Appropriate.

49.     I understand that the Plan contains a Gatekeeping Provision which is a key part of the Committee Settlement underlying the Plan.  I understand that the Debtors have hundreds of thousands of clients and that not including such a provision could open the Debtors, their directors and officers, and the Released Parties to numerous frivolous litigation claims after the Plan is confirmed.  Such a result would hinder the Released Parties' ability to assist the Wind-Down Debtors with making in-kind Distributions safely and securely and pursuing valuable litigation claims against other bankruptcy estates that would ultimately increase creditor recoveries.  In addition, based on my discussions with the Debtors' advisors it is my understanding that the Gatekeeping Provision is consistent with applicable law.  Accordingly, I believe that the Gatekeeping Provision is an integral part of the Plan and should be approved.

### 8.     The Debtors Will Cure Monetary Defaults Under Any Assumed Executory Contracts — § 1123(d).

50.     I understand that section 1123(d) of the Bankruptcy Code requires that cure amounts be determined in accordance with the underlying agreement and non-bankruptcy law.

51.     I believe that the Plan complies with section 1123(d) of the Bankruptcy Code.  The Plan provides for the satisfaction of Cure Amounts under each Executory Contract to be assumed under the Plan on the Effective Date or in the ordinary course of business, subject to the limitations described in Article V of the Plan, and that the Wind-Down Debtors shall pay such Cure Amounts.

20

**B.      The Debtors Have Satisfied the Applicable Provisions of the Bankruptcy Code — Section 1129(a)(2).**

52.      I have been advised that section 1129(a)(2) encompasses both the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code, as well as the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.  Based on my review of information provided by the Debtors and their advisors I understand that the Debtors, through their Claims, Noticing, and Solicitation Agent, complied with the content and delivery requirements of the Conditional Disclosure Statement Order, and the Debtors solicited and tabulated votes on the Plan in accordance with the Solicitation Procedures approved by the Bankruptcy Court.

53.      Furthermore, I understand the Debtors solicited votes from the Holders of Claims in Impaired Classes entitled to vote under the Plan.  Holders of Claims and Interests in the Classes listed in the table below are either Unimpaired under the Plan and therefore were deemed to accept the Plan or will not receive any distribution under the Plan and are therefore deemed to reject the Plan.  While the Debtors did not solicit votes from the Holders of Claims and Interests in such classes, the Debtors emailed the Combined Hearing Notice and a Notice of Non-Voting Status to such Holders in accordance with the Conditional Disclosure Statement Order.  The Classes not entitled to vote on the Plan and each Class's respective status are as follows:

| Class | Claim or Interest | Status |
|---|---|---|
| 1 | Secured Tax Claims | Unimpaired (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired (Presumed to Accept) |
| 4-d | BlockFi Services Inc. General Unsecured Claims | Impaired (Deemed to Reject) |
| 4-e | BlockFi Trading LLC General Unsecured Claims | Impaired (Deemed to Reject) |
| 4-f | BlockFi Wallet LLC General Unsecured Claims | Unimpaired (Presumed to Accept) |
| 4-g | BlockFi Ventures LLC General Unsecured Claims | Impaired (Deemed to Reject) |
| 4-h | BlockFi Investment Products LLC General Unsecured Claims | Impaired (Deemed to Reject) |

| Class | Claim or Interest | Status |
|-------|-------------------|--------|
| 4-i | BlockFi Lending II LLC General Unsecured Claims | Impaired (Deemed to Reject) |
| 5 | FTX Facility Claims | Impaired (Deemed to Reject) |
| 6 | FTX Avoidable Transfer Claims | Impaired (Deemed to Reject) |
| 7 | Alameda Claims | Impaired (Deemed to Reject) |
| 8 | 3AC Claims | Impaired (Deemed to Reject) |
| 9 | Government Penalty Claims | Impaired (Deemed to Reject) |
| 10 | *De Minimis* Claims | Impaired (Deemed to Reject) |
| 11 | Intercompany Claims | Unimpaired / Impaired (Presumed to Accept) |
| 12 | Intercompany Interests | Unimpaired / Impaired (Presumed to Accept) |
| 13 | Existing Preferred Equity Interests | Impaired (Deemed to Reject) |
| 14 | Existing Common Equity Interests | Impaired (Deemed to Reject) |
| 15 | SEC Penalty Claims | Impaired (Deemed to Reject) |
| 17 | State Governmental Regulatory Claims | Impaired (Deemed to Reject) |

### C.    The Debtors Proposed the Plan in Good Faith — Section 1129(a)(3).

54.    I believe that the Plan was proposed in good faith, with the legitimate and honest purpose of maximizing value for the Debtors and their estates.

55.    It is my understanding that the Plan is the result of collaborative efforts between the Debtors, their advisors and legal counsel, and their stakeholders, including the Committee.  I believe the Plan maximizes the economic return to creditors in light of the totality of the facts and circumstances of the case.

### D.    Payment of Professional Fees and Expenses Is Subject to Bankruptcy Court Approval — Section 1129(a)(4).

56.    It is my understanding that section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, a debtor, or a person receiving distributions of property under the plan, be approved by the Bankruptcy Court or remain subject to approval by the Bankruptcy Court as reasonable.  The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Bankruptcy Court approval.  Moreover, Article II.B.1

of the Plan provides that all final requests for payment of Professional Fee Claims must be filed no later than forty-five (45) days after the Effective Date for determination by the Bankruptcy Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Court.  Accordingly, I believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

      **E.**       **The Plan Satisfies the Bankruptcy Code's Governance Disclosure Requirements — Section 1129(a)(5).**

57.      It is my understanding that section 1129(a)(5) of the Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan and requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy and to disclose the identity of insiders to be retained by the reorganized debtor and the nature of any compensation for such insider.  The Plan Supplement discloses the identities and affiliations of the Plan Administrator and members of the Wind-Down Debtors' Oversight Committee, which were chosen by the Committee, and their responsibilities. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

      **F.**       **The Plan Does Not Require Government Regulatory Approval of Rate Changes — Section 1129(a)(6).**

58.      It is my understanding that Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and, accordingly, will not require governmental regulatory approval.  As such, I believe that section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

### G. The Plan Is in the Best Interests of Holders of Claims and Interests — Section 1129(a)(7).

59.     I understand that section 1129(a)(7) of the Bankruptcy Code requires that any chapter 11 plan must satisfy the "best interests of creditors" test, which provides that holders of claims or interests in impaired, non-accepting classes must receive under a chapter 11 plan at least as much as they would in a liquidation. As discussed in the Witherell Declaration,[21] BRG prepared the Liquidation Analysis attached to the Disclosure Statement as <u>Exhibit B</u>. The Liquidation Analysis provides that under the Plan all Impaired Classes of Claims and Interests will receive a recovery that is greater than or equal to the recovery contemplated in a hypothetical chapter 7 liquidation. Accordingly, I believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

### H. Voting Requirements — Section 1129(a)(8).

60.     I understand that the Bankruptcy Code generally requires that each class of claims or interests must either accept the plan or be unimpaired under the plan. I further understand that if any class of claims or interests rejects the plan, the plan must satisfy the "cram down" requirements with respect to the claims or interests in that class. I understand that all Voting Classes (Classes 3-a, 3-b, 3-c, 3-d, 3-e, 4-a, 4-b, 4-c and 16) voted to accept the Plan and the voting has been overwhelmingly in favor of the Plan. However, I understand that, because certain Classes are deemed to reject the Plan, the Debtors do not satisfy section 1129(a)(8) of the Bankruptcy Code. However, even though certain Classes are deemed to reject the Plan, I understand that the Debtors still satisfy section 1129(b) of the Bankruptcy Code. I believe that the Plan is confirmable

---

[21]    *Declaration of Brett Witherell, Managing Director of Berkeley Research Group, LLC, in Support of the Debtors' Disclosure Statement for, and Confirmation of, the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously herewith (the "<u>Witherell Declaration</u>").

because the Plan does not discriminate unfairly and is fair and equitable with respect to the deemed

rejecting Classes and, therefore, the Plan satisfies section 1129(b) of the Bankruptcy Code with

respect to such Classes.

I.     **Priority Cash Payments — Section 1129(a)(9).**

61.    I understand that section 1129(a)(9) requires that certain priority claims be paid in

full on the effective date of a plan and that the holders of certain other priority claims receive

deferred cash payments.

62.    I understand that Article II.A of the Plan provides that each Holder of an Allowed

Administrative Claim allowed on or prior to the Effective Date will receive payment in full in Cash

no later than thirty (30) days after the Effective Date or as soon as reasonably practicable

thereafter.  Further, I understand that Article II.C of the Plan satisfies section 1129(a)(9)(C) of the

Bankruptcy Code because it provides that Holders of Allowed Priority Tax Claims will be treated

in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

J.     **At Least One Impaired Class of Claims Accepted the Plan —
       Section 1129(a)(10).**

63.    I understand that section 1129(a)(10) of the Bankruptcy Code requires that if any

class of claims is impaired under the plan, then at least one class of impaired claims must accept

the plan, without including any acceptance of the plan by any insider.  My understanding is that

all of the Voting Classes voted to accept the Plan.  In accordance with the results contained in the

Voting Report, I believe that the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

K.     **The Plan Is Feasible — Section 1129(a)(11).**

64.    I understand that section 1129(a)(11) of the Bankruptcy Code requires a court to

determine that a chapter 11 plan is feasible, and that confirmation of such plan is not likely to be

followed by the liquidation or further financial reorganization of the Debtors (or any successors

thereto) unless such liquidation or reorganization is proposed in the Plan.  The Plan provides for

an orderly wind-down, and liquidation of all the Debtors' assets, and distribution of such assets to

creditors, so no further reorganization would be required after the Plan is consummated.

Accordingly, I understand that the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.      The Plan Provides for Payment of All Statutory Fees — Section 1129(a)(12).**

65.      I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment

of all fees payable under 28 U.S.C. § 1930.  Article II.G of the Plan includes an express provision

requiring payment of all fees in compliance with the Bankruptcy Code.  Accordingly, I believe the

Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**M.      Retiree Benefit Obligations — Section 1129(a)(13).**

66.      Based on my knowledge of the Debtors' businesses and information provided by

the Debtors' advisors, it is my understanding that section 1129(a)(13) of the Bankruptcy Code is

inapplicable because the Debtors do not have any obligations related to retiree benefits.  However,

out of the abundance of caution, it is my understanding that to the extent the Debtors have any

such retiree benefit obligations, they shall continue to be paid in accordance with applicable law.

**N.      Sections 1129(a)(14) through 1129(a)(16) of the Bankruptcy Code Do Not
           Apply to the Plan.**

67.      Based on my knowledge of the Debtors' businesses and information provided by

the Debtors' advisors, I believe that sections 1129(a)(14)-(16) of the Bankruptcy Code do not apply

to the Plan because the Debtors are not subject to domestic support obligations, are not

"individuals," and are not nonprofit corporations.

**III.    The Plan Satisfies the Requirements for Confirmation of the Plan Over
          Nonacceptance of Impaired Classes — Section 1129(b).**

68.      I understand that if all applicable requirements of section 1129(a) of the Bankruptcy

Code are satisfied, other than section 1129(a)(8), a plan may still be confirmed so long as the

requirements set forth in section 1129(b) are satisfied. To the best my knowledge, the Plan distributes value to Holders of Claims and Interests in the priorities set forth in the Bankruptcy Code, there is no Class receiving more than a 100 percent recovery and no junior Class is receiving a Distribution under the Plan until all senior Classes have received a 100 percent recovery or have agreed to receive a different treatment under the Plan. As such, I understand that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**IV.     Only One Plan Is Eligible to Be Confirmed — Section 1129(c).**

69.     I understand that section 1129(c) of the Bankruptcy Code prohibits the confirmation of multiple plans. Section 1129(c) of the Bankruptcy Code is not implicated here because there is only one proposed plan.

**V.     The Principal Purpose of the Plan Is Not the Avoidance of Taxes or Securities Laws — Section 1129(d).**

70.     The Plan has not been filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended. Moreover, no party that is a governmental unit, or any other entity, has requested that the Bankruptcy Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

**VI.     Section 1129(e) of the Bankruptcy Code Is Inapplicable.**

71.     I understand that section 1129(e) of the Bankruptcy Code does not apply to the Plan because none of the Debtors' chapter 11 cases is a "small business case" within the meaning of the Bankruptcy Code.

**VII.    The Plan Modifications Are Reasonable, Do Not Require Resolicitation, and Should Be Approved.**

72.     I understand that section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan

meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  I have also been advised that under section 1125 of the Bankruptcy Code, a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated, unless such affected creditors consent to the treatment.  Here, the Debtors made certain modifications to the Plan after the Solicitation Period ended.  I believe that such modifications are either (a) immaterial or technical clarifications; (b) modifications that resolve objections to the Plan; or (c) modifications that provide flexibility with respect to the treatment of certain claims with the consent of such claimholders. Accordingly, I believe that no additional solicitation or disclosure is required on account of the modifications, and that such modifications should be deemed accepted by all creditors that previously accepted the Plan.

**VIII.   Good Cause Exists to Waive the Stay of the Confirmation Order.**

73.    I understand that certain Bankruptcy Rules provide for the stay of an order confirming a chapter 11 plan, but that such a stay may be waived upon court order after a showing of good cause.

74.    Given that these chapter 11 cases and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information and that each day the Debtors remain in chapter 11 they incur significant administrative and professional costs, the Debtors may take certain steps to effectuate the Plan in anticipation of and to facilitate the occurrence of the Effective Date so that the Effective Date can occur as soon as needed.  Accordingly, I believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

statements are true and correct.

Dated: September 22, 2023
Boston, Massachusetts

*/s/ Mark A. Renzi*
Name: Mark A. Renzi
Title: Chief Restructuring Officer
BlockFi Inc.