John W. Weiss
Joseph C. Barsalona II
**PASHMAN STEIN WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Suite 4202
Holmdel, NJ 07733
Telephone: (732) 852-2481
Facsimile: (732) 852-2482
Email: jweiss@pashmanstein.com
           jbarsalona@pashmanstein.com


Adam J. Goldberg (admitted *pro hac vice*)
Christopher Harris (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: adam.goldberg@lw.com
           christopher.harris@lw.com
           brett.neve@lw.com
           nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: nima.mohebbi@lw.com
           tiffany.ikeda@lw.com


Warren E. Gluck (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email: warren.gluck@hklaw.com


John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email: john.monaghan@hklaw.com

*Counsel to the Joint Liquidators of Three
Arrows Capital, Ltd. (in liquidation)*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

```
--------------------------------------------------------- x
In re:                                                   :   Chapter 11
                                                         :
BLOCKFI INC., et al.,¹                                   :   Case No. 22-19361 (MBK)
                                                         :
          Debtors.                                       :   (Jointly Administered)
                                                         :
--------------------------------------------------------- x
```

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**NOTICE OF MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. FOR COORDINATION AMONG COURTS**

**PLEASE TAKE NOTICE** that as soon as counsel may be heard at the Court's availability, the Joint Liquidators of Three Arrows Capital, Ltd. (the "**3AC Debtor**"), by and through their undersigned counsel, shall seek to be heard with respect to the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts* (the "**Motion**") before the Honorable Chief Judge Michael B. Kaplan, Chief United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), Clarkson S. Fisher United States Courthouse, 402 East State Street, Second Floor, Courtroom 8, Trenton, NJ 08608, or such other physical or virtual location as may be determined by the Court, for entry of an order, substantially in the form submitted herewith. A Proposed Order granting the relief requested in the Motion is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that the 3AC Debtor has contemporaneously with the Motion filed an *Application for Order Shortening Time for Notice of Motion for Coordination Among Courts* (the "**Application to Shorten**"), which requests that notice be shortened such that the Motion can be heard on October 10, 2023 at 11:00 a.m. ET.  A hearing on the Motion and deadline to serve objections to the Motion, if any, shall be at such time as may be ordered by the Court in connection with the Application to Shorten.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall: (i) be in writing, (ii) state with particularity the basis of the objection; (iii) conform with the Bankruptcy Court's *Order Granting Debtors' Motion to Establish Certain Notice, Case Management, and Administrative Procedures* [Docket No. 54], and (iv) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice

before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing Signing, and Verification of Documents dated March 27, 2002 (the "**General Order**") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "**Supplemental Commentary**") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF).

**PLEASE TAKE FURTHER NOTICE** that unless responses are timely filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d), and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d) and the relief requested may be granted without further notice or hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Kroll Restructuring Administration, LLC at https://restructuring.ra.kroll.com/blockfi.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 28, 2023
       Holmdel, New Jersey

Warren E. Gluck (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:
warren.gluck@hklaw.com

– and –

John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:
john.monaghan@hklaw.com

Respectfully submitted,

/s/ John W. Weiss
John W. Weiss
Joseph C. Barsalona II
**PASHMAN STEIN WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Suite 4202
Holmdel, NJ 07733
Telephone: (732) 852-2481
Facsimile: (732) 852-2482
Email: jweiss@pashmanstein.com
       jbarsalona@pashmanstein.com

– and –

Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.ravin@lw.com
        chris.harris@lw.com
        adam.goldberg@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
        tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators*
*of Three Arrows Capital, Ltd. (in liquidation)*

John W. Weiss
Joseph C. Barsalona II
**PASHMAN STEIN WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Suite 4202
Holmdel, NJ 07733
Telephone: (732) 852-2481
Facsimile: (732) 852-2482
Email:  jweiss@pashmanstein.com
          jbarsalona@pashmanstein.com


Adam J. Goldberg (admitted *pro hac vice*)
Christopher Harris (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.goldberg@lw.com
          christopher.harris@lw.com
          brett.neve@lw.com
          nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice* )
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
          tiffany.ikeda@lw.com


Warren E. Gluck (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:  warren.gluck@hklaw.com


John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:  john.monaghan@hklaw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd. (in liquidation)*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------ x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| BLOCKFI INC., *et al.*,[1] | : Case No. 22-19361 (MBK) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
------------------------------------------------------------ x

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154) (the "**BlockFi Debtors**").  The location of the BlockFi Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL,
LTD. FOR COORDINATION AMONG COURTS**

Russell Crumpler and Christopher Farmer, in their capacities as joint liquidators appointed

by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial

Division) (the "**BVI Court**") in the liquidation proceeding of Three Arrows Capital, Ltd. ("**3AC**"

or the "**3AC Debtor**") in the British Virgin Islands (the "**BVI Proceeding**") and duly authorized

foreign representatives (the "**Joint Liquidators**"), by and through the undersigned counsel, hereby

submit this motion (the "**Motion**"), for the entry of an order substantially in the form attached

hereto as Exhibit A (the "**Proposed Order**") requesting consultation among and between this

Court, the BVI Court, the Genesis Court, the FTX Court, the Celsius Court, and the Chapter 15

Court (each as defined herein) to establish procedures to adjudicate the common issues of fact and

law raised by the 3AC Claims (as defined herein) in a centralized forum.  In support of this Motion,

the Joint Liquidators respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The 3AC Debtor faces the extraordinary situation of having preference claims

under the Insolvency Act of 2003 of the British Virgin Islands (the "**3AC Claims**"), in the

approximate aggregate amount of over $1.3 billion, against four separate groups of chapter 11

debtors with bankruptcy cases pending in three different districts: (a) the BlockFi Debtors

(over $273 million), (b) the Genesis Debtors (over $563.2 million), (c) the FTX Debtors (over

$120 million), and (d) the Celsius Debtors (over $65 million) (each as defined herein, and

collectively, the "**Debtor Defendants**").  Adjudication of these claims among the 3AC Debtor and

the Debtor Defendants will require resolution of certain common issues of law and fact, including,

critically, when the 3AC Debtor became insolvent.  The 3AC Debtor's preference claims (together

with certain other claims that implicate the timing of the 3AC Debtor's insolvency) collectively

represent the largest known assets of the 3AC Debtor estate.

2.      The BlockFi Debtors and the Genesis Debtors each seek to force litigation of the

3AC Claims in the courts overseeing their respective chapter 11 cases, and oppose relief from the

automatic stay to permit a centralized and efficient litigation, even of issues that are common

across all 3AC Claims.  Courts addressing "dueling debtor" scenarios have recognized the need

for coordination to avoid redundant parallel litigation and the serious potential for inconsistent

judgments.  That dynamic exists—four times over—here.  If litigation is permitted to proceed in

full in four separate courts, it would result in egregiously duplicative administrative expenses for

the 3AC Debtor's liquidating estate and risk inconsistent outcomes that may harm the 3AC Debtor

and its creditors, and interfere with the administration of its liquidation.  Moreover, the litigation

of common issues in multiple courts simultaneously, as the BlockFi Debtors and the Genesis

Debtors demand, would be a wasteful expenditure of both judicial resources and the administrative

expenses of the Debtor Defendants.[2]

3.      Accordingly, the 3AC Debtor respectfully seeks resolution of the common issues

raised in the 3AC Claims in a centralized forum.  The 3AC Debtor has filed or will soon be filing

motions for relief from the stay in the chapter 11 cases of each of the Debtor Defendants.  A judicial

conference or joint hearing prior to a ruling on these motions for relief from stay would allow this

Court and the other relevant courts to address this extraordinary situation in a coordinated fashion

and craft procedures that would benefit all parties involved (as well as their stakeholders) by

avoiding inconsistent outcomes, minimizing costs, maximizing potential recoveries, and

promoting judicial efficiency.

4.      The 3AC Debtor proposes, upon relief from the automatic stay in the chapter 11

cases of each of the Debtor Defendants, that: (a) the 3AC Debtor would file claims against the

---

[2]      As a creditor of each of the Debtor Defendants, the 3AC Debtor has a bona fide interest in avoiding wasteful
expenditure of administrative expenses by the Debtor Defendants.

Debtor Defendants in the BVI Court, or in the alternative, separate adversary proceedings in the

Chapter 15 Case with respect to the 3AC Debtor's BVI preference claims against the Debtor

Defendants, which, in each case, would be consolidated to the extent necessary; (b) the common

issues of law and fact would be determined together in consolidated proceedings before the BVI

Court or the Chapter 15 Court; and (c) any issues that are not common but rather are specific to

any one Debtor Defendant could be adjudicated by the bankruptcy court presiding over the chapter

11 case of the Debtor Defendant.  Such a procedure would entrust the common issues to one court,

while allowing (if the relevant courts determine appropriate) an adjudication of issues specific to

that Debtor Defendant in its own chapter 11 case.

5.      The 3AC Debtor seeks input from this Court and other courts, and engagement with

the parties and their respective stakeholders, with the goal of developing the procedural approach

to consolidate common issues for adjudication in a manner that enhances efficiency for all of the

courts and parties and promotes consistent outcomes.

## JURISDICTION

6.      This Court has jurisdiction over the BlockFi Debtors' chapter 11 cases and the

Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

*Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012

(Simandle, C.J.).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

under 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105(a),

1509, 1517, and 1525 of the Bankruptcy Code, and Rules 7042 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I.   3AC and the BVI Proceeding.

7.      3AC was an investment firm founded in 2013 and incorporated in the British Virgin Islands (*i.e.,* "BVI").  3AC engaged in the trading of cryptocurrency and other digital assets. 3AC's investment strategy involved making large, leveraged cryptocurrency trades using funding from the Debtors and other investors.

8.      Between 2018 and 2021, as the cryptocurrency market grew, 3AC's strategy was successful.  Beginning in early 2022, however, the global cryptocurrency market experienced a historic and significant decline.  As a result of this crisis, 3AC failed—ultimately loosing approximately $2.7 billion in value between February and May 2022.

9.      On June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the BVI Court.  Under BVI law, the Joint Liquidators are fiduciaries of the 3AC estate, with an obligation to conduct an orderly, fair liquidation of the 3AC Debtor estate, and to maximize the value of its assets for 3AC's creditors.

10.      On July 1, 2022, the Joint Liquidators commenced a proceeding under chapter 15 of the Bankruptcy Code (the "**Chapter 15 Case**") before Chief Judge Martin Glenn of the U.S. Bankruptcy Court for the Southern District of New York (the "**Chapter 15 Court**").  The Chapter 15 Court entered an order (the "**Recognition Order**") recognizing the BVI Proceeding as a "foreign main proceeding" on July 28, 2022.  In accordance with section 1509(c) of the Bankruptcy Code, a certified copy of the Recognition Order is attached hereto as Exhibit B.

### II.   The 3AC Debtor Is Pursuing Analogous Claims Against Debtors in Several Proceedings.

11.      The 3AC Debtor filed proofs of claims in the chapter 11 cases of the above-captioned Debtors (the "**BlockFi Debtors**") in the U.S. Bankruptcy Court for the District of New Jersey before Chief Judge Michael B. Kaplan, (the "**BlockFi Chapter 11 Cases**") (collectively,

the "**BlockFi POCs**", and the claims set forth therein, the "**BlockFi Claims**").[3]  In the BlockFi

Claims, the 3AC Debtor asserts claims (a) to avoid, pursuant to BVI law, preferential transfers to

the BlockFi Debtors by 3AC while it was insolvent in the aggregate amount of approximately $273

million, and (b) for repayment of a loan in the amount of approximately $10 million.   The 3AC

Debtor has filed a motion for relief from the stay in the BlockFi Chapter 11 Cases.[4]

12.    The 3AC Debtor filed proofs of claims in the chapter 11 cases of Genesis Global

Holdco, LLC, and its debtor affiliates (collectively, the "**Genesis Debtors**")[5] in the U.S.

Bankruptcy Court for the Southern District of New York before Judge Sean H. Lane (collectively,

the "**Genesis POCs**", and the claims set forth therein, the "**Genesis Claims**").[6]  Via the Genesis

Claims, the 3AC Debtor seeks to (a) avoid, under BVI law, preferential transfers to the Genesis

Debtors by 3AC while it was insolvent in the aggregate amount of approximately $563.2 million,

and (b) recover approximately $614 million of assets that the Genesis Debtors purported to

foreclose on in the absence of a valid and enforceable security interest pursuant to New York

law, BVI law, and section 542 the Bankruptcy Code.  The 3AC Debtor has filed a motion for relief

from the stay in the Genesis Chapter 11 Cases.[7]

---

[3]    The BlockFi POCs include Claim Nos. 33518, 33519, 33520, 33521, 33522, 33523, 33524, 33525, 33525, which
amend and incorporate by reference for all purposes all previously filed claims including Claim Nos. 25958,
25964, 25953, 25985, 26292, 25923, 25984, 25961, and 15592.

[4]    *See Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the
Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief*
(ECF No. 1492).

[5]    *In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. filed Jan. 19, 2023) (the "**Genesis
Chapter 11 Cases**" and the "**Genesis Court**")

[6]    The Genesis POCs include Claim Nos. 981, 982, 990, which amend and incorporate by reference for all purposes
all previously filed claims including Claim Nos. 523, 526, and 527.

[7]    *See Motion of the Foreign Representatives of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the
Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief*
(Genesis Chapter 11 Cases*, ECF No.678).

13.    The 3AC Debtor filed proofs of claims in the chapter 11 cases of FTX Trading Ltd. and its debtor affiliates (collectively, the "**FTX Debtors**")[8] in the U.S. Bankruptcy Court for the District of Delaware before Judge John T. Dorsey (collectively, the "**FTX POCs**", and the claims set forth therein, the "**FTX Claims**").[9]  In the FTX Claims, 3AC asserts under BVI, New York, Delaware, and other applicable law, claims for preference, conversion, and other avoidance actions, arising from, a purported foreclosure by the FTX Debtors on alleged collateral securing a loan for approximately $120 million.  The 3AC Debtor will be filing a motion seeking relief from the automatic stay in the FTX Chapter 11 Cases in short order.

14.    The 3AC Debtor has sought authority in the chapter 11 cases of Celsius Network LLC and its debtor affiliates (collectively, the "**Celsius Debtors**")[10] in the U.S. Bankruptcy Court for the Southern District of New York before Chief Judge Martin Glenn to assert a setoff right in defense of a claim asserted by Celsius Network in the BVI Proceedings based on Celsius Network's prepetition receipt of an "unfair preference" as that term is defined under BVI law. (collectively, the "**Celsius Setoff Motion**", and the claims set forth therein, the "**Celsius Claims**").[11]  By the Celsius Setoff Motion, the 3AC Debtor seeks to reduce or eliminate the claim of Celsius Network in the BVI Proceedings, pursuant to BVI law which authorizes the reduction of an asserted claim equal to the amount of unfair preferences received by a claimant from 3AC

---

[8]    *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. filed Nov. 11, 2022)  (the "**FTX Chapter 11 Cases**" and the "**FTX Court**").

[9]    The FTX POCs include Claim Nos. 5120, 5121, 5125, 5145, 5147, 5148, 5151, 5152, 5154, 5155, 5156, 5158, 5159, 5160, 5167, 5168, 5169, 5170, 5171, 5172, 5173, 5175, 5176, 5177, 5178, 5179, 5180, 5181, 5182, 5183, 5184, 5185, 5186, 5187, 5188, 5189, 5190, 5191, 5192, 5194, 5195, 5196, 5197, 5198, 5199, 5200, 5201, 5203, 5204, 5238, 5239, 5253, 5262, 5269, 5306, 5308, 5319, 5323, 5324, 5327, 5331, 5333, 5336, 5339, 5345, 5348, 5351, 5355, 5360, 5362, 5368, 5373, 5419, 5444, 5445, 5446, 5448, 5449, 5450, 5451, 5452, 5454, 5455, 5456, 5457, 5459, 5460, 5461, 5462, 5464, 5466, 5470, 5473, 5474, 5476, 5477, 5478, 5580, 5581.

[10]    *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. filed on July 13, 2022) (the "**Celsius Chapter 11 Cases**" and the "**Celsius Court**") (ECF No. 3569).

[11]    The 3AC Debtor is not represented by Latham & Watkins LLP in connection with the Celsius Claims or the Celsius Setoff Motion.  The 3AC Debtor is exclusively represented by Holland & Knight LLP in the Celsius Chapter 11 Cases and in connection with the Celsius Claims, including the filing of this Motion with respect thereto.

while it was insolvent.  The 3AC Debtor claims that the unfair preference recovery received by

Celsius Network is in the amount of approximately $65 million.

15.    On August 21, 2023, the BlockFi Debtors filed (a) an objection to the BlockFi

POCs (the "**BlockFi Objection**"),[12] and (b) a motion to estimate the 3AC Debtor's claims at $0.[13]

A scheduling conference on these matters is currently set for October 10, 2023.

16.    On September 1, 2023, the Genesis Debtors filed an objection to the Genesis POCs

(the "**Genesis Objection**").[14]    The Genesis Debtors seek to prosecute the Genesis Objection

swiftly under the timeline set forth in the Genesis Scheduling Order[15], attached hereto as Exhibit

C, and without regard to ongoing proceedings on common issues for the 3AC Claims in other the

courts.  The 3AC Debtor is and has been actively engaged in discovery with the Genesis Debtors

with respect to the Genesis POCs.

17.    Because the 3AC Claims assert preference claims under BVI law, adjudication of

the Genesis Objection and the BlockFi Objection will raise similar issues of fact and law.  As a

key issue that is core to the 3AC Debtor, both the Genesis Objection and the BlockFi Objection

dispute whether the 3AC Debtor demonstrated that it was insolvent at the time of the relevant

transactions.  *See* Genesis Objection ¶ 4, BlockFi Objection ¶ 27.  To succeed on a preference

claim under BVI law, the plaintiff must demonstrate that it was insolvent at the time of the relevant

transactions.[16]    BVI Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).  Thus, the

---

[12]    *See Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* (ECF No. 1375).

[13]    *See Notice of Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (ECF No. 1346).

[14]    *See* the *Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (Genesis Chapter 11 Cases, ECF No. 658).

[15]    The "**Genesis Scheduling Order**" is the *Order Granting the Debtors' Motion for Entry of a Scheduling Order Concerning the Debtors' Second Omnibus Objection (Substantive) to Claim Nos. 523, 526, 527, 981, 982 and 990 Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* (Genesis Chapter 11 Cases, ECF No. 695).

[16]    Pursuant to section 245 of the BVI Insolvency Act, a transaction is subject to avoidance as an "unfair preference" if the transaction: (a) "is an insolvency transaction;" (b) is "entered into within the vulnerability period;" and

determination of the 3AC Debtor's solvency—down to the precise day—will be necessary for

adjudication of the 3AC Debtor's preference claims against the Genesis Debtors and the BlockFi

Debtors, and other parties.  And this determination will be both fact intensive and critical.  As an

example, some of the transactions whose avoidability may turn on the exact date of the 3AC

Debtor's insolvency include:

- on May 5, 2022, the 3AC Debtor transferred $71 million to the BlockFi Debtors, which is subject to a preference claim in the BlockFi Chapter 11 Cases;

- on May 6, 2022, the 3AC Debtor made a payment to the Genesis Debtors of $115 million, which is subject to a preference claim in the Genesis Chapter 11 Cases;

- on May 9, 2022, the 3AC Debtor made a payment of $71 million to the BlockFi Debtors, which is subject to a preference claim in the BlockFi Chapter 11 Cases;

- on May 11 and 12, 2022, the 3AC Debtor transferred over 13 million shares of the Grayscale Bitcoin Trust and other digital assets to the Genesis Debtors with an aggregate value over $250 million, which is subject to a preference claim in the Genesis Chapter 11 Cases; and

- on May 12 and 18, 2022, the 3AC Debtor transferred 21,025 and 13,200 Ether, respectively, to the BlockFi Debtors, with a value as of the date of the transfers of approximately $41.1 million and $25.2 million, respectively, which are subject to preference claims in the BlockFi Chapter 11 Cases.

And the 3AC Claims challenge other transactions that took place during the preference period,

totaling approximately $1.3 billion in the aggregate against just the four Debtor Defendants,

putting aside preference claims against other parties.

18.    Likewise, the Genesis Objection and the BlockFi Objection raise common defenses

in response to the 3AC Claims.  These include (a) the affirmative defense, under BVI law, that the

transfer is protected from avoidance because it was entered "in the ordinary course of business,"

and (b) that the transfer is protected from avoidance under the safe harbor provision in section

---

(c) "has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into." Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).  And under section 244(2) of the BVI Insolvency Act, an "insolvency transaction" is a transaction "entered into at a time when [a] company is insolvent" or that "causes a company to become insolvent."  BVI Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2).

546(e) of the Bankruptcy Code.  *See* Genesis Objection ¶¶ 133-81; BlockFi Objection ¶ 30. Importantly, the 3AC Debtor expects that the applicability of section 546(e) safe harbor to cryptocurrency lending transactions to be a critical issue in each of the Debtor Defendants' chapter 11 cases, as well as the BVI Proceeding and the Chapter 15 Case, which the Debtor Defendants may argue bars any preference claims by the 3AC Debtor.

19.     Because each 3AC Claim asserts preference claims under BVI law, the 3AC Debtor expects that the other Debtor Defendants will also raise substantially similar arguments and defenses at the appropriate time in connection with the future adjudication of the 3AC Claims. Accordingly, resolution of the 3AC Claims will require rulings on substantially similar core issues of fact and law, including, but not limited to, (a) when exactly 3AC became insolvent, (b) whether the relevant transactions among the parties and the 3AC Debtor took place in the ordinary course of business, and (c) whether the transfers the 3AC Debtor seeks to avoid are subject to the safe harbor provisions of the Bankruptcy Code.

20.     █████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████

## BASIS FOR RELIEF

I.    **The Court Maintains Authority to Control Its Docket in Order to Adjudicate Matters in a Just and Efficient Manner.**

21.    The Bankruptcy Rules and bankruptcy policy provide adequate authority to resolve the common issues of fact and law posited in the 3AC Claims in a centralized forum.

22.    Section 105(a) grants broad authority to a court to issue orders that are necessary or appropriate to carry out the provisions of the Bankruptcy Code.  Specifically, section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[17]  Courts have also described section 105(a) as codifying bankruptcy courts' "general powers of equity."  *See In re SubMicron Sys. Corp.*, 432 F.3d 448, 455 (3d Cir. 2006).  And it is well established that bankruptcy courts have significant discretion in their ability to manage their own dockets pursuant to the powers vested under section 105(a) of the Bankruptcy Code.  *See In re Racing Servs., Inc.*, 635 B.R. 498, 507–08 (B.A.P. 8th Cir. 2022) ("[The court's authority to control its own docket] is also granted in Section 105(a) of the Bankruptcy Code.  That section gives courts the equitable powers necessary to carry out the provisions of the Code, including orders enabling bankruptcy judges to maintain control of the courtroom and administration of dockets in cases before them."); *see also In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 557 (S.D.N.Y. 2015), *aff'd sub nom. In the Matter of: Fletcher Int'l, Ltd.*, 661 F. App'x 124 (2d Cir. 2016) ("Decisions made by bankruptcy courts concerning docket management are reviewed for abuse of discretion.").

---

[17]    11 U.S.C. § 105(a).

23.     Public policy supports granting a court flexibility to resolve its cases fairly and effectively.  *See In re Racing Servs., Inc.*, 635 B.R. at 507 ("The court's authority to control its own docket reflects the public policy underlying Federal Rule of Civil Procedure 1: the just, speedy, and inexpensive determination of every action.") (internal citations and quotations omitted); *see also In re Padilla*, 389 B.R. 409, 429 (Bankr. E.D. Pa. 2008) ("The bankruptcy courts' equitable powers provide broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates, *see In re Kaiser Aluminum Corp.,* 456 F.3d 328, 340 (3d Cir.2006), and include the power to 'craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the Code was designed to obtain.' *Id.* (quoting *In re Official Comm. Of Unsecured Creditors of Cybergenics Corp.,* 330 F.3d 548, 568 (3d Cir. 2003)).").

24.     Chapter 15 of the Bankruptcy Code, which governs the 3AC Debtor's pending U.S. proceeding, provides additional support for the requested relief.  Section 1509 of the Bankruptcy Code states, "If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter . . . (3) *a court in the United States shall grant comity or cooperation to the foreign representative.*"  11 U.S.C. § 1509(b)(3) (emphasis added); *see In re OAS S.A.*, 533 B.R. 83, 99 (Bankr. S.D.N.Y. 2015) (quoting *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012) ("Although use of the word 'comity' connotes recognition of another judicial proceeding, *the word 'cooperation' suggests a much broader meaning*." ) (emphasis added); *see also In re Iida*, 377 B.R. 243, 257 n.20 (B.A.P. 9th Cir. 2007) (quoting H.R.Rep. No. 109–31, at 110–11 (2005), *reprinted* in 2005 U.S.C.C.A.N. 88, 173 (citations omitted)) ("The goal [under section 1509] is to concentrate control of these questions in one court. That goal is important in a Federal system like that of the United States with many different courts, state and federal, that may have pending actions involving the debtor or the debtor's property.").

The Chapter 15 Court has granted recognition of the BVI Proceeding as a "foreign main proceeding" under chapter 15.  *See* Recognition Order, ⁋ 2.  And the Joint Liquidators are the "foreign representatives" of the 3AC Debtor in the Chapter 15 Case.  *Id.* ⁋ I.  Accordingly, the relevant courts have statutory authority cooperate with the Joint Liquidators in the Chapter 15 Case and establish a centralized forum to adjudicate common issues of fact and law raised by the 3AC Claims, which will benefit all parties involved.[18]

25.     Section 1525 of the Bankruptcy Code further provides, "Consistent with section 1501, the court **shall cooperate to the maximum extent possible** with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525(a) (emphasis added).  And the bankruptcy court is "entitled to communicate directly with, or to request information or assistance from, a foreign court or a foreign representative, subject to the rights of a party in interest to notice and participation." 11 U.S.C. § 1525(b).

26.     Furthermore, the express statutory objectives behind chapter 15 support coordination among courts in these circumstances.  Specifically, section 1501 of the Bankruptcy Code provides (in relevant part):

> The purpose of this Chapter is to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of [. . .]
>
> > (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
> >
> > (4) protection and maximization of the value of the debtor's assets[.]

11 U.S.C. § 1501(a); *see also In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 161 (Bankr.C.D.Cal.2005)) ("Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable,

---

[18]    This Motion will be filed in the Chapter 15 Proceeding in short order.

orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion.").

27.    In addition, other Bankruptcy Rules and federal statutes likewise demonstrate why cross-court coordination with respect to the 3AC Claims would be consistent with federal policy. Rule 42 of the Federal Rules of Civil Procedure provides (in relevant part):

> "Consolidation.  If actions before the court involve a common question of law or fact, the court may:
>
>> (1) join for hearing or trial any or all matters at issue in the actions;
>>
>> (2) consolidate the actions; or
>>
>> (3) issue any other orders to avoid unnecessary cost or delay."

Fed. R. Civ. P. 42.[19]  In exercising their discretion under Rule 42, courts are guided by principles of judicial economy.  *See Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) ("[The court must determine] [w]hether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (same); *In re Total Containment, Inc.*, No. 04–13144, 2008 WL 817104, at *3 (Bankr. E.D. Pa. Mar. 25, 2008) (same); *In Matter of High-Top Holdings, Inc.*, No. 16-10022-WHD, 2016 WL 3135790, at *1 (Bankr. N.D. Ga. May 16, 2016) (same).  Thus, courts will weigh the potential benefits of consolidation against the possibility of "delays, expense, benefits, confusion or prejudice" when determining whether to consolidate

---

[19]    Rule 42 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Bankruptcy Rule 7042 and to contested matters, such as this Motion, by Bankruptcy Rule 9014(c).  *See* Fed. R. Bankr. P. 7042 and 9014(c).

matters under Rule 42 (citation omitted).  *See In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998).

28.     Indeed, bankruptcy courts have invoked their authority to consolidate separate avoidance actions pursuant to Bankruptcy Rule 7042 for the purpose of litigating the common issue of the debtor's solvency.  *See, e.g.*, *In re Enron Corp.*, 351 B.R. 305, 307 (Bankr. S.D.N.Y. 2006) (consolidating thirty-two (32) separate avoidance actions filed by a debtor for purposes of litigating insolvency-related issues); *In re Am. Classic Voyages Co.*, 367 B.R. 500, 502 (Bankr. D. Del. 2007), *aff'd sub nom. In re Am. Classic Voyages*, Co., 384 B.R. 62 (D. Del. 2008) (holding a consolidated trial regarding the common issue of whether some or all of the Debtors were solvent on the dates of preferential transfers alleged in three separate adversary proceedings); *In re S. Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992) (stating the bankruptcy court had authority to consolidate several adversary proceedings for the adjudication of certain common issues of fact, including whether the debtor was insolvent throughout the 90 days preceding its bankruptcy).

29.     In addition, the principles and public policy underlying the consolidation of otherwise disparate litigation in multi district litigations ("**MDLs**") are consistent with the relief that the 3AC Debtor seeks in this Motion.  MDLs allow actions that are pending in different districts and share one or more common questions of fact to be transferred to any district for consolidated or coordinated proceedings upon the court's determination that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 USC § 1407.  Although the 3AC Debtor is not asking for the creation of a MDL, the statute expressly recognizes the benefits of judicial economy.  *Id.*; *see also Leo as Tr. of Est. of Grigsby v. Koch Farms of Gadsden, LLC*, No. 4:20-CV-01997-ACA, 2023 WL 3956161, at *3 (N.D. Ala. June 12, 2023) ("The purpose of MDLs is to consolidate

proceedings for the convenience of parties and to "promote the just and efficient conduct of such actions."); *In re Prepared Food Photos, Inc., Copyright Litig.*, No. MDL 3075, 2023 WL 3829245, at *1 (JPML June 5, 2023) ("Centralization places all actions before a single judge and offers an efficient means of resolving all claims brought by plaintiff [] against the common defendant [] and its customers.").

30. Furthermore, bankruptcy courts frequently employ innovative practices which seek to facilitate the orderly administration of complex issues and promote judicial efficiency. Examples of bankruptcy courts doing so include, but are not limited to, the following:

(a) In 3AC's Chapter 15 Case, the Chapter 15 Court approved cross-border court-to-court communication protocols that promote the effective administration of cross-border issues that may arise among the BVI Court, the Chapter 15 Court, and the Court overseeing 3AC's proceedings in Singapore, pursuant to section 105(a) of the Bankruptcy Code.[20]

(b) Several other bankruptcy courts that have presided over multinational restructuring proceedings have authorized similar cross-border protocols to address common issues more effectively.[21]

(c) Bankruptcy courts throughout the United States have held joint trials when they have deemed it necessary to the effective administration of contemporaneous complex cases. For example, citing "notions of justice, efficiency and transparency"[22] the courts presiding over the *SunEdison, Inc.*[23], *Old ANR, LLC*[24], and *Westmoreland Coal Co.*[25] held a joint-

---

[20] *In re Three Arrows Capital, Ltd.*, No. 22-10920 (MG) (Bankr. S.D.N.Y. Dec. 6, 2022) (order approving cross-border court-to-court communications protocol) (ECF No. 72).

[21] *See, e.g.*, *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (Bankr. S.D.N.Y. Sept. 1, 2020) (order granting motion to approve cross-border court-to-court communications protocol) (ECF No. 978); *In re Aralez Pharms. U.S. Inc.*, No. 18-12425 (Bankr. S.D.N.Y. Nov. 1, 2018) (order implementing cross-border insolvency protocol) (ECF No. 237); *In re Ezra Holdings Ltd.*, No. 17-22405 (Bankr. S.D.N.Y. Mar. 27, 2018) (order implementing cross-border insolvency protocol) (ECF No. 343); *In re Toys "R" Us, Inc.*, No. 17-34665 (Bankr. E.D. Va. Oct. 25, 2017) (ECF No. 725); *In re Ocean Rig UDW Inc.*, No. 17-10736 (Bankr. S.D.N.Y. June 29, 2017) (order approving form of protocol) (ECF No. 85).

[22] *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. Mar. 14, 2019) (scheduling order regarding joint evidentiary hearing) (ECF No. 5837).

[23] *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. filed Apr. 21, 2016).

[24] *In re Old ANR LLC*, No. 19-00302 (KRH) (Bankr. E.D. Va. filed Aug. 3, 2015, reopened Jan. 16, 2019).

[25] *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. filed Oct. 9, 2018).

evidentiary hearing with respect to the approval of a settlement agreement that would impact each respective case.

(d)     The courts presiding over the two bankruptcy cases of Chaparral Energy, Inc. and its debtor affiliates—which filed for chapter 11 protection in 2016 and again in 2020—held a joint hearing with respect to a settlement agreement that implicated both estates.[26]

(e)     The local rules of at least one relevant court—the FTX Court—expressly allow for communication among that court and others. Specifically, Part X, to the Local Rules for the United States Bankruptcy Court of District of Delaware, attached hereto as <u>Exhibit D</u>, expressly states that "A court may receive communications from a foreign court and may respond directly to them. Such communications may occur for the purpose of the orderly making of submissions ***and rendering of decisions by the courts***, and to coordinate and resolve any procedural, administrative or preliminary matters relating to any joint hearing[. . .]" (emphasis added).

31.     Rulings on the common issues of law and fact will be central to the resolution of the 3AC Claims. These common issues are also critically important to the outcome of 3AC's BVI Proceeding and Chapter 15 Case. Cooperation and communication among the various courts provides opportunity for these core issues to be more easily resolved in a central forum, while also preserving the ability of each Debtor Defendant to reach a final adjudication of the 3AC Claims in their respective chapter 11 case.

## II.     Requiring the 3AC Debtor to Litigate Common Questions in Separate Venues Undermines Judicial Efficiency.

32.     Maintaining the status quo—that is, redundant adjudication of the common issues of law and fact raised by the 3AC Claims in separate venues—would place substantial strain on the limited resources of the 3AC Debtor's estate. The 3AC Debtor is currently engaging in duplicative litigation with respect to common issues of fact and law in multiple venues.[27] It is burdensome for the 3AC Debtor's estate to continue to coordinate these complex litigation and

---

[26]     *In re Chaparral Energy, Inc.*, No. 20-11947 (MFW) (Bankr. D. Del. Aug. 19, 2020) (scheduling order regarding settlement agreement) (ECF No. 104).

[27]     *See the Genesis Scheduling Order*; *see also Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (ECF No. 1346); *Notice of Amended Agenda for Hearing* (ECF No. 1535).

discovery efforts—including witness depositions and expert testimony—in these separate venues regarding substantially identical issues with respect to 3AC's solvency.

33.    In contrast, if the requested relief is granted, then the common issues raised by the 3AC Claims can be litigated in an effective and streamlined manner that will not prejudice the 3AC Debtor, the Debtor Defendants, or their respective creditors and stakeholders.  Under the proposed process outlined herein (or other agreed upon, coordinated approaches), the common issues of fact and law raised by the 3AC Claims will be litigated in a centralized venue, such as the BVI Court or the Chapter 15 Court, and the decisions with respect to the common issues can be taken back to the Debtor Defendants' chapter 11 courts for the resolution of their respective claims.  This would be an efficient use of precious estate resources and would help maximize recoveries for the 3AC's Debtor's creditors.[28]

34.    Furthermore, a central forum would also provide benefits to the Debtor Defendants. A cost-effective adjudication of the 3AC Claims would generate savings for the Debtor Defendants' estates, which enhance recoveries for the creditors in those cases, or (at a minimum) limit loses on account of possibly duplicative litigation expenses.

---

[28] The process for initiating an adversary proceeding in a chapter 15 proceeding is substantially similar to the process in a chapter 11 case.  Section 1521 of the Bankruptcy Code provides that, following recognition of a foreign proceeding, the chapter 15 court may "at the request of the foreign representative, grant any appropriate relief" that is "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  11 USC § 1521.  Because the Chapter 15 Court has granted the recognition to the BVI Proceeding, the Joint Liquidators may request, and the Chapter 15 Court may hear, adversary proceedings in the Chapter 15 Proceedings just as a chapter 11 court would oversee adversary proceedings.  Examples of adversary proceedings in chapter 15 proceedings include: *In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, No. 23-01165 (MEW) (Bankr. S.D.N.Y. Aug. 31, 2023) (complaint initiating adversary proceeding in chapter 15 proceedings) (ECF No.1); *In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, No. 21-01215 (MEW) (Bankr. S.D.N.Y. Dec. 9, 2021) (same) (ECF No.1); *In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, No. 23-01170 (MEW) (Bankr. S.D.N.Y. Sept. 8, 2023) (same) (ECF No.1); *In re Cryptopia Limited (in Liquidation)*, No. 20-01317 (DSJ) (Bankr. S.D.N.Y. Nov. 12, 2020) (same) (ECF No.1).

**III.     Requiring the 3AC Debtor to Litigate Common Questions in Separate Venues is Highly Prejudicial.**

35.     Determining when the 3AC Debtor became insolvent is the single most important question in the BVI Proceeding, and will impact the treatment of billions of dollars of claims held by and against the 3AC Debtor estate.  As noted herein, the 3AC Claims challenge a large number of transactions that took place during the preference period and that total approximately $1.3 billion in the aggregate against just the four Debtor Defendants, and not considering transactions among the 3AC Debtor and other parties.  Thus, any determination with respect to the 3AC Debtor's solvency will also require the expenditure of significant resources in the form of discovery, depositions, witness examination and preparation, among other things.

36.     Inconsistent decisions with respect to the 3AC Debtor's solvency could be weaponized against the 3AC Debtor by a party litigating 3AC Claims at a later date via arguments based on equitable estoppel, issue preclusion, or similar doctrines.  The disparate litigation schedules will enable Debtor Defendants to argue that a prior adverse decision with respect to the 3AC Debtor on a common issue implicated by the 3AC Claims has a preclusive effect against the 3AC Debtor in a subsequent litigation.

37.     Accordingly, there is ample reason and statutory authority for the presiding courts in these separate cases to avoid the unwanted outcomes created by potentially having four trials on substantially similar issues.  A centralized venue will ensure that these critical matters are decided in an efficient and effective manner, consistent with the overarching goals of bankruptcy policy, including "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3).

## **RESERVATION OF RIGHTS**

38.    The Joint Liquidators do not yet have access to all documentation and records relating to possible claims or the 3AC Debtor's relationship with the BlockFi Debtors, and thus far have been able to identify the claims raised in the 3AC BlockFi POCs via the limited information available to them.  The Joint Liquidators reserve their rights to assert any additional claims they are subsequently able to uncover by amendment of the 3AC BlockFi POCs or otherwise.

## **NOTICE**

39.    Notice of this Motion has been provided to: (a) the Chambers of the Chief Judge Michael B. Kaplan, (b) the BlockFi Debtors, (c) counsel to the BlockFi Debtors, (d) counsel to the Official Committee of Unsecured Creditors, (e) the Office of the U.S. Trustee for the District of New Jersey (Trenton), and (f) all other parties entitled to notice pursuant to Bankruptcy Rule 2002. The Joint Liquidators submit that such notice is sufficient, and no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Joint Liquidators respectfully request entry of an order, substantially in the form attached hereto as Exhibit A , granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 28, 2023
      Holmdel, New Jersey

Respectfully submitted,

/s/ *John W. Weiss*

John W. Weiss
Joseph C. Barsalona II
**PASHMAN STEIN WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Suite 4202
Holmdel, NJ 07733
Telephone: (732) 852-2481
Facsimile: (732) 852-2482
Email:  jweiss@pashmanstein.com
        jbarsalona@pashmanstein.com

Warren E. Gluck (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:  warren.gluck@hklaw.com

and –

John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:  john.monaghan@hklaw.com

Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
        adam.goldberg@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
Emily R. Orman (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
        tiffany.ikeda@lw.com
        emily.orman@lw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd.*