**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF

TO:     THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

BlockFi Inc. and its debtor affiliates (collectively, the "Debtors"), as debtors and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Terms of the Debtors' Settlement with Digistar Norway AS, Nessim-Sariel Gaon, and Fiorenzo Manganiello; (II) Approving Blockfi Lending's Assignment to G75 Capital of All of Blockfi Lending's Rights, Title and Interest in and to the Digistar Norway Transaction Documents Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (III) Authorizing Blockfi Lending to Enter Into the Assignment Agreement; and (IV) Granting Related Relief* (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

### Preliminary Statement

1.      The Debtors file this Motion seeking approval of a settlement between (i) BlockFi Lending LLC ("BlockFi Lending"), in its capacity as a Debtor in these Chapter 11 Cases and plaintiff in the Adversary Proceeding (defined below); and (ii) Digistar Norway AS, a Norwegian limited liability company ("Digistar"); Nessim-Sariel Gaon, an individual residing in the United Arab Emirates ("Gaon"); and Fiorenzo Manganiello, an individual residing in the United Arab Emirates ("Manganiello," and together with Gaon and Digistar, the "Borrower Parties"; and together with BlockFi Lending, the "Parties"), with respect to the claims set forth in the Complaint[2] (defined below) arising out of the Loan Agreement and related Transaction Documents between the Parties, and the assignment by BlockFi Lending to G75 Capital of the Loan Agreement and related Transaction Documents.

2.      The Parties have agreed to a global resolution of their disputes by the assignment of the Digistar Loan and BlockFi Lending's rights under the Loan Agreement and Transaction

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Assignment Agreement.

Documents to the Assignee. Accordingly, the terms of such assignment and settlement are reflected in that certain Assignment and Assumption Agreement and Release of Claims dated as of October 2, 2023 (the "<u>Assignment Agreement</u>"), by and among BlockFi Lending; the Borrower Parties; G75 Capital, a limited liability company organized under the laws of the Cayman Islands (the "<u>Assignee</u>"); and Bricklane AS, a Norwegian limited liability company with registration number 929 456 203 ("<u>Bricklane</u>").[3] A copy of the Assignment Agreement is attached hereto as **<u>Exhibit A</u>**.

3.      The Debtors, in consultation with the Committee (as defined below), believe that the Assignment Agreement represents the best possible resolution of the Parties' dispute regarding the Loan Agreement and related Transaction Documents. Accordingly, the Debtors respectfully submit that entry of an order approving the Assignment Agreement is in the best interests of the Debtors' estates, creditors, and other stakeholders.

**<u>Jurisdiction and Venue</u>**

4.      The United States Bankruptcy Court for the District of New Jersey (this "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] As discussed below, BlockFi Lending entered into a similar assignment transaction with Bricklane on a prepetition basis to resolve its claims against the Borrower Parties, but the Bricklane transaction was never fully consummated. In connection with the global resolution discussed herein, Bricklane is a party to the Assignment Agreement.

6.      The bases for the relief requested herein are sections 105(a), 362(d) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002(a)(3), 6004, 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002, 9019-3, and rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

### I.      The Parties' Prepetition Relationship, the Loan Transaction, and the Bricklane Assignment

7.      The Parties entered into the Loan Agreement and related Transaction Documents, including the Parent Guarantee (collectively, the "Loan Documents") on or about August 6, 2021. Pursuant to the Loan Documents, and as set forth in more detail in the Complaint, BlockFi Lending loaned the principal amount of $37,242,011.13 to Digistar (the "Digistar Loan") and, to secure such loan, Digistar granted BlockFi Lending a security interest in the Collateral. The Collateral includes, among other things, certain digital asset mining equipment currently located and operating in Norway and Hash Rate Fees (as defined in the Loan Agreement). Gaon and Manganiello guaranteed Digistar's obligations under the Loan Documents pursuant to the Parent Guarantee.

8.      The Debtors assert that Digistar is in default on its obligations under the Loan Agreement (the "Payment Default"), as set forth in more detail in the Complaint.

9.      In connection with BlockFi Lending's efforts to collect on the Digistar Loan, on or about October 21, 2022, BlockFi Lending entered into that certain Assignment and Assumption dated as of October 21, 2022, among BlockFi Lending, as Assignor, and Bricklane, as Assignee, and acknowledged and agreed to by Digistar (the "Bricklane Assignment"). Pursuant to the Bricklane Assignment, Digistar agreed to assign its rights and interests under the Loan Documents

to Bricklane and release its claims against the Borrower Parties in exchange for a settlement payment. Bricklane made only a partial payment to BlockFi Lending under the Bricklane Assignment and did not pay the balance of the settlement amount under the Bricklane Assignment. As a result, the Debtors assert that the conditions precedent to the effective date of the Bricklane Assignment were never satisfied.

## II.  The Chapter 11 Cases

10.  On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the First Day Declaration [Docket No. 17] and incorporated by reference herein.

11.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, the Court entered an order [Docket No. 42] authorizing procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

12.  On December 21, 2022, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 130, as amended by Docket No. 131]. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

13.  On January 17, 2023, the Court entered its *Order Granting Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Continue Servicing and Administration Activities in the Ordinary Course of Business with Respect to the Debtors' Institutional Loan Portfolio and*

*Granting Related Relief and (II) Authorizing and Establishing Procedures Regarding the Restructuring, Settlement, or Other Modifications of Institutional Loans and Loan Obligations* [Docket No. 299] (the "<u>Loan Settlement Procedures Order</u>"). The Loan Settlement Procedures Order authorized the Debtors to, among other things, "enter into any Workouts or settlements ('<u>Loan Settlement Agreements</u>') with borrowers that would result in a reduction in the principal amount owed to the Debtors within the BlockFi Institutional Loan Portfolio," subject in each case to the procedures set forth in the Loan Settlement Procedures Order. *See* Loan Settlement Procedures Order ¶ 7. With respect to loans within the BlockFi Institutional Loan Portfolio with an outstanding principal balance of greater than $5 million, the Loan Settlement Procedures Order sets forth the following procedure:

> At least seven (7) calendar days before the effective date of any Loan Settlement Agreement (the "Agreement Effective Date") agreed to by the Debtors and a Defaulting Borrower to settle a Defaulted Loan with an outstanding principal amount of $5 million or more, the Debtors will provide a notice (the "Notice") by email to counsel of record for the Committee, the U.S. Trustee and counsel to the U.S. Securities and Exchange Commission (collectively, the "Notice Parties") of the existence of the Loan Settlement Agreement and the applicable Agreement Effective Date, together with (i) a copy of the applicable Loan Settlement Agreement, (ii) a statement as to why the Debtors are entering into the Loan Settlement Agreement and how the Loan Settlement Agreement is beneficial to the Debtors and the Debtors' estates, and (iii) a form of order to be submitted to the Court authorizing the entry into and performance under the Loan Settlement Agreement, substantially in the form attached to the Motion as Exhibit 1 (the "Proposed Loan Agreement Order"). The Debtors shall also, contemporaneously with providing the Notice file a notice on the bankruptcy docket substantially in the form of notice attached to the Motion as Exhibit 2 (the "Settlement Notice"). Any party-in-interest may request the additional information provided to the Notice Parties subject to entry into a confidentiality agreement with the Debtors. *See id.* ¶ 7.c.

14.    On May 12, 2023, BlockFi filed its *First Amended Joint Chapter 11 Plan* [Docket No. 875], as amended on June 28, 2023 [Docket No. 1132], July 31, 2023 [Docket No. 1300], August 3, 2023 [Docket No. 1309] and September 21, 2023 [Docket No. 1564] (collectively, and as may be further amended from time to time, the "<u>Plan</u>"); and the accompanying Disclosure

Statement [Docket No. 874], as amended on June 28, 2023 [Docket No. 1133], July 31, 2023

[Docket No. 1301] and August 3, 2023 [Docket No. 1310] (collectively, and as may be further

amended from time to time, the "Disclosure Statement"). The Court confirmed the Plan on

September 26, 2023.

### III.    The Norway Proceedings and the Adversary Proceeding

15.    In February 2023, BlockFi Lending initiated an execution lien proceeding in

Norway to obtain a lien (the "Execution Lien") on any assets of Digistar (the "Lien Proceeding").

Also in February 2023, BlockFi Lending filed that certain proceeding to garnish certain bank

accounts of Digistar, pending as "Namsmannen I Oslo Asker og Bærum," T2023-319576 (the

"Oslo Proceeding").

16.    In March of 2023, BlockFi Lending initiated a foreclosure proceeding in Norway

to force the sale of certain Collateral and remit the proceeds thereof to BlockFi Lending in partial

satisfaction of Digistar's secured obligations under Norwegian law (the "Foreclosure Proceeding,"

and together with the Lien Proceeding and the Oslo Proceeding, collectively, the "Norway

Proceedings").

17.    The Execution Officer at the Namsfogden in Nordland granted BlockFi Lending's

official requests (i) for the Execution Lien on or about March 29, 2023, and (ii) to force a sale of

the Collateral on or about July 12, 2023. Digistar has appealed both rulings. As of the date hereof,

the Norway Proceedings are currently paused by agreement of the Parties through October 3,

2023.[4]

---

[4] Contemporaneously with the filing of this Motion, the Parties are requesting an extension of the pause of the Norway Proceeding through October 31, 2023, the anticipated outside date for the Parties to close the Assignment Agreement.

18.     On May 26, 2023, BlockFi Lending filed *BlockFi Lending, LLC's Complaint Against Digistar Norway AS, Nessim-Sariel Gaon, and Fiorenzo Manganiello* [Adv. Proc. Doc. No. 1] (the "Complaint"), commencing that certain adversary proceeding styled *BlockFi Lending, LLC v. Digistar Norway AS; Nessim-Sariel Gaon; and Fiorenzo Manganiello* (Adv. Proc. No. 23-1150) (MBK) (the "Adversary Proceeding").

19.     On June 29, 2023, the Borrower Parties filed their *Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint* [Adv. Proc. Doc. No. 9] (the "Motion to Dismiss").

20.     On September 26, 2023, the Court granted that certain *Adjournment Request* [Adv. Proc. Doc. No. 28], adjourning the joint hearing on the Motion to Dismiss and pretrial conference in the Adversary Proceeding to October 10, 2023.

**The Proposed Sale and Assignment to G75 Capital**

21.     Since the commencement of these Chapter 11 Cases, the Debtors have worked to maximize the value of, and recovery from, the BlockFi Institutional Loan Portfolio (as defined in the  Loan Settlement Procedures Order) for the benefit of the Debtors' estates and creditors. To that end, the Debtors have pursued workouts and settlements of certain of the loans in the BlockFi Institutional Loan Portfolio. The BlockFi Institutional Loan Portfolio includes the Digistar Loan.

22.     The Debtors assert that, as of the Petition Date, the Digistar Loan was in default and had an outstanding principal balance greater than $5 million. BlockFi Lending commenced the Norway Proceedings and the Adversary Proceeding to collect on the Digistar Loan. Since the commencement of these proceedings, BlockFi has engaged in good faith, arms'-length settlement negotiations with the Borrower Parties.

8

23.     The Parties reached the following global resolution in the interest of resolving the costly ongoing litigation and Digistar Loan dispute:[5]

    a.     The Assignee will pay the Assignment Payment (as defined in the Assignment Agreement) to BlockFi Lending;

    b.     Subject to and conditional upon BlockFi Lending's receipt of the Assignment Payment, BlockFi Lending will assign all of its interest in the Digistar Loan and the Loan Agreement and Transaction Documents to the Assignee;

    c.     Each of the Borrower Parties and Bricklane will provide comprehensive releases of all claims against BlockFi Lending to the BlockFi Lending estate; and

    d.     Promptly after the Closing Date (as defined in the Assignment Agreement), the Parties will dismiss the Norway Proceedings and the Adversary Proceeding.

24.     Accordingly, BlockFi requests authorization to enter into the Assignment Agreement and form of assignment, which are attached hereto as **Exhibit A** and provide for the sale and assignment (the "Assignment")[6] of the Digistar Loan and the Loan Agreement and Transaction Documents to the Assignee. The Assignment Agreement will (i) result in tangible value to the BlockFi Lending estate in the form of the Purchase Amount (as defined in the Assignment Agreement) and (ii) resolve both the Adversary Proceeding and the Norway Proceedings, alleviating the need to commit estate resources to the continued prosecution of these proceedings. The Borrower Parties, the Assignee and Bricklane are parties to the Assignment Agreement and consent to the assignment of the Digistar Loan, the Loan Agreement and Transaction Documents to the Assignee under the terms set forth therein.

---

[5] This summary is provided for informational purposes only. In the event of a conflict between this summary or any other provisions of this Motion and the terms of the Assignment Agreement, the Assignment Agreement shall control.

[6] Contemporaneously with the filing of this Motion, BlockFi Lending is filing a separate motion to submit the Assignment Agreement under seal.

## Relief Requested

25.     Through this Motion, the Debtors request entry of an order substantially in the form of the proposed order attached hereto as **Exhibit B** (the "Proposed Order"): (a) authorizing the sale and assignment of the Digistar Loan, the Loan Agreement and Transaction Documents to the Assignee free and clear of all claims, liens, rights, interests and encumbrances, (b) authorizing the Debtors' entry into the Assignment Agreement, and (c) granting related relief.

## Basis for Relief Requested

**I.     The Assignment Agreement Should be Approved as a Use of Property Outside of the Ordinary Course and in the Best Interests of the Debtors' Estates**

26.     The Debtors seek approval of, and authorization to enter into, the Assignment Agreement pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.[7]

27.     The Court has broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes the right to seek Court approval to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under normal circumstances such as these, courts defer to the Debtors' judgment so long as there is a legitimate business justification. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071

---

[7] The Debtors could have sought this Court's approval of the Assignment Agreement under the Loan Settlement Procedures Order, but because the proposed settlement involves an assignment of BlockFi Lending's interests in the Digistar Loan, the Loan Agreement and Transaction Documents, and because of the pending Adversary Proceeding, the Debtors have sought to pursue relief under both section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) out of an abundance of caution.

(2d Cir. 1983) (holding that judicial approval under section 363 of the Bankruptcy Code requires a showing that there is a good business reason); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (same). The Debtors also have the right to seek Court approval of compromises under Bankruptcy Rule 9019. For the reasons discussed herein, the Debtors have a good business justification for executing the Assignment Agreement. The underlying Digistar Loan is not a performing loan and the Assignment Agreement incorporates the terms of a settlement of such loan that is most likely to maximize the estates' recovery on the Digistar Loan, in the Debtors' exercise of their sound business judgment, especially in light of the jurisdictional complexities that BlockFi Lending faces in the Adversary Proceeding and the Norway Proceedings.

28.     Motions to use estate property outside the ordinary course and to approve compromises are subject to certain notice and hearing requirements. *See*, *e.g.*, Bankruptcy Rule 2002(a)(2) & (3). The Court has authority under Bankruptcy Rule 9007 to vary these notice and hearing requirements in appropriate circumstances. *See also* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as is appropriate in the particular circumstances. . . ."). The Debtors respectfully submit that approval of the Assignment Agreement is "appropriate" within the meaning of 11 U.S.C. § 105(a) to carry out the provisions of the Bankruptcy Code and provides "such opportunity for a hearing as is appropriate in the particular circumstances" within the meaning of 11 U.S.C. § 102(1)(A).

29.     Further, because the terms of the Assignment Agreement are confidential, it is appropriate to limit notice of the specific terms of the Assignment Agreement. The financial terms of any particular settlement will be affected by numerous factors and variables that are likely to make each settlement unique and inapplicable in the context of other defaulted loans. The terms

of the Assignment Agreement may differ from the terms of other settlements of defaulted loans

for a wide variety of reasons, and it would be detrimental to the Debtors and their estates if the

terms of the Assignment Agreement are disclosed and used by other borrowers as a basis for

seeking settlement that, in the Debtors' business judgment, would not be in the best interests of

the Debtors and their estates. Accordingly, the Debtors are filing a separate motion to seal the

Assignment Agreement (the "Sealing Motion")[8] contemporaneously with this Motion and will

make unredacted copies available upon request by parties-in-interest who have executed a non-

disclosure agreement.

## II.    The Assignment Agreement Satisfies the Standards of Bankruptcy Rule 9019 and Should Be Approved

30.    Bankruptcy Rule 9019(a) provides, in relevant part:

On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court

Bankruptcy Rule 9019(a).

31.    Moreover, section 105(a) of the Bankruptcy Code provides that that a bankruptcy

court may "issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

32.    Settlements and compromises are "a normal part of the process of reorganization."

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

428 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)); *see also*

---

[8] Contemporaneously herewith, the Debtors are also filing an *Application for Order Shortening Time for Notice of Debtors' Motions for Entry of Orders (I) Approving the Debtors' Assignment Agreement with Digistar Norway AS, Nessim-Sariel Gaon, and Fiorenzo Manganiello and (II) Authorizing the Debtors to File Under Seal Exhibit A to the Motion to Approve the Assignment Agreement* [Docket No. [●]] (the "Motion to Shorten Notice"), pursuant to which the Debtors request that the Court set the Sealing Motion and this Motion for hearing on October 10, 2023, at 11:00 a.m. (ET).

*Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (Settlements are considered "a normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly.") (citations omitted) (decided under the Bankruptcy Act)). Furthermore, it is well established that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that "[s]ettlements are favored [in bankruptcy]"); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same). Accordingly, when required, "courts are able to craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, affect the result the [Bankruptcy] Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003).

33.    Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citations omitted)); *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citations omitted); *In re Key3Media Group,*

*Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."). "Ultimately, the decision whether or not to approve a settlement agreement lies within the sound discretion of the Court." *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).

34.      In *Martin*, the Third Circuit set forth a four-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also In re Nutraquest*, 434 F.3d at 644–45 (applying *Martin's* four-factor test to affirm district court's order approving settlement); *Nebo Ventures, LLC v. Stanziale (In re Novapro Holdings, LLC)*, No. 18-766-RGA, 2019 U.S. Dist. LEXIS 49047 (D. Del., Mar. 5, 2019) (applying *Martin's* four-factor test to affirm bankruptcy court's order approving settlement); *Key3Media*, 336 B.R. at 93 (holding that, when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

35.      A settlement should be approved if it falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008); s*ee also In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."); *Nortel*, 522 B.R. at 510 (same).

36.     The Assignment Agreement is fair and reasonable and is clearly in the best interests

of the Debtors' estates. It should therefore be approved pursuant to Bankruptcy Rule 9019. There

is no reason to believe that litigating the claims set forth in the Complaint to judgment would

produce an outcome that is materially better for creditors, and the outcome could be worse—with

many hundreds of thousands of dollars of estate funds wasted in the interim. The Assignment

Agreement represents a satisfactory outcome for the Debtors' estates and easily rises above the

lowest point in the range of reasonableness when analyzed under the *Martin* factors.

### A.     Successful Litigation Against the Borrower Parties is far from Certain

37.     The Debtors have evaluated BlockFi Lending's claims and concluded that the

outcome of any litigation would be far from certain. The Borrower Parties may succeed in seeking

to transfer some or all of BlockFi Lending's claims to the Delaware bankruptcy court or district

court, which could cause the Debtors to have to litigate in up to three separate fora (*i.e.*, core claims

in New Jersey, non-core claims in Delaware, and foreclosure proceedings in Norway). Such

litigation would be both costly and lengthy. Further, Digistar has raised jurisdictional issues which,

though disputed by BlockFi Lending, causes uncertainty and risk. Given that complex litigation

like this is inherently risky, the Debtors believe there is too much uncertainty to conclude that

successful litigation is likely.

### B.     Collection on Any Judgment May be Difficult

38.     Assuming BlockFi Lending obtains a judgment against the Borrower Parties,

collectability on that judgment is uncertain given that collecting a judgment against foreign

defendants is inherently difficult. Digistar is located in Norway and Gaon and Manganiello are

purportedly living in the United Arab Emirates.

### C.        The Litigation would be Complex and Expensive

39.        For the same reasons that successful litigation is unlikely and collection on a judgment would be difficult, litigation would also be complex and expensive. Specifically, the Debtors would likely have to litigate in multiple fora, including before Delaware and Norwegian Courts that are not as familiar with the Debtors' business operations and transaction history. The Debtors would have to litigate against foreign defendants who may not have assets in the United States.

### D.        The Paramount Interest of Creditors Favors Settlement

40.        The litigation would involve complex issues of personal jurisdiction, minimum contacts with the United States, and core vs. non-core claim assessment, among others. It would undoubtedly require substantial discovery. All of these issues would likely give rise to hundreds of thousands of dollars in legal expenses without any guarantee of a positive return to the estates.

41.        On the other hand, the Assignment Agreement reflects a reasonable settlement with the Borrower Parties that, if approved, would result in a cash payment to the BlockFi Lending estate and consensual, immediate resolution of the Adversary Proceeding and the Norway Proceedings. Accordingly, approval of the Assignment Agreement is in the paramount interests of the Debtors' estates and all key stakeholders in these Chapter 11 Cases.

## III.    The Assignment Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code

42.        Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable

proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f). Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Assignment free and clear of all liens, security interests, pledges, charges, defects, or similar encumbrances (collectively, "Encumbrances"). *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *see also In re Elliot*, 94 B.R. 343, 354 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met).

43.    The Debtors are unaware of, and do not believe there are, any Encumbrances on (i) the Debtors' rights, title, interest and obligations, including, without limitation, any liens, security interests or any property rights (including any contingent rights of possession or acquisition) under any and all Transaction Documents and with respect to the Collateral; and (ii) all claims, suits, causes of action and any other right of BlockFi Lending against any of the Borrower Parties, whether known or unknown, arising under or in connection with the Loan Documents and/or any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, tort claims, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned pursuant to clause (i) above (collectively, the "Proposed Assigned Interest"). Nonetheless, to the extent there are any Encumbrances on the Proposed Assigned Interest, the Assignment should be approved free and clear of such Encumbrances because at least one enumerated criterion of section 363(f) is satisfied. Further, any such Encumbrance will attach to the proceeds of the Assignment, subject to any claims and defenses the Debtors may possess with respect thereto. Therefore, to the extent there

are any Encumbrances on the Proposed Assigned Interest, the beneficiary thereof will be adequately protected by replacement liens on the proceeds of the Assignment.

**IV.    The Assignee Acted in Good Faith and is Entitled to Full Protections Pursuant to Section 363(m) of the Bankruptcy Code**

44.    Because the Assignee acted in good faith, it is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Assignment. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. Purchasers are provided this protection so long as they purchased the assets in "good faith." *Id.* Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, in *In re Abbotts Dairies of Pa., Inc.*, held that:

> [t]he requirement that a Buyer act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see also In re Triangle Transp., Inc.*, 419 B.R. 603, 609 (Bankr. D.N.J. 2009) ("*Abbott Dairies* . . . remains the foundation of § 363(m) law in this Circuit.").

45.    Here, the Debtors engaged in good faith, arms'-length negotiations with the Assignee, Borrower Parties and Bricklane to reach an agreement that would be mutually beneficial

to all Parties. The Parties were each represented by counsel in connection with the negotiation and documentation of the agreement of the Parties. The resulting Assignment Agreement reflects a heavily negotiated, arms'-length transaction in which the Assignee at all times has acted in good faith and otherwise in accordance with such standards. Accordingly, the Assignee is entitled to the protections afforded under section 363(m) of the Bankruptcy Code.

**V.      Relief Under Bankruptcy Rule 6004(h) Is Appropriate**

46.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Debtors request that any Order granting the relief requested in this Motion be effective immediately upon its entry by providing that the fourteen-day stay under Bankruptcy Rule 6004(h) is waived.

47.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy states that "the court should eliminate the 14-day stay period and allow the sale or other transaction to close immediately in all cases where there has been no objection to the procedure." 10 Collier on Bankruptcy ¶ 6004.11 (16th ed. 2022). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

48.    The Assignment Agreement provides that BlockFi Lending shall receive the Purchase Amount within three (3) business days of the Effective Date of the Assignment

Agreement (as defined therein). Accordingly, the Debtors request that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

49.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any transfer made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Waiver of Memorandum of Law**

50.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**No Prior Request**

51.      No prior request for the relief sought in this Motion has been made to this Court

or any other court.

**Notice**

52.      The Debtors will provide notice of this Motion to the following parties and/or their

respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey;

(b) the Committee; (c) the United States Attorney's Office for the District of New Jersey; (d) the

Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the attorneys

general in the states where the Debtors conduct their business operations; (g) the Borrower Parties

and their counsel; (h) the Assignee and its counsel; (i) Bricklane and its counsel; and (j) any party

that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no

other or further notice need be provided.

*[Signature page follows.]*

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

Dated: October 2, 2023

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

# EXHIBIT A

## ASSIGNMENT AGREEMENT

# FILED UNDER SEAL

# EXHIBIT B

# PROPOSED ORDER

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Matthew T. Ferris, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
matt.ferris@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*,<br>                              Debtors.[1] | Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

(Page | 2)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

The Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Terms of the Debtors' Settlement with Digistar Norway AS, Nessim-Sariel Gaon, and Fiorenzo Manganiello; (II) Approving Blockfi Lending's Assignment to G75 Capital of All of Blockfi Lending's Rights, Title and Interest in and to the Digistar Norway Transaction Documents Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (III) Authorizing Blockfi Lending to Enter Into the Assignment Agreement; and (IV) Granting Related Relief* (the "Motion")[1] seeking an order of this Court (i) authorizing the Debtors' entry into and approving the Assignment and Assumption Agreement and Release of Claims dated as of October 2, 2023 (together with all exhibits and all documents to be executed in connection therewith, the "Assignment Agreement") and (ii) granting related relief; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; due notice hereof having been given; a hearing thereon having been held (the "Hearing"); the Court having considered the Debtors' request for relief, and opposition thereto, if any; and the Court finding good and sufficient cause for ordering the relief requested in the Motion; it appearing that the relief requested in the Motion is in the best interest

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing:

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is **GRANTED** as set forth herein.

2.       The Assignment Agreement is hereby **APPROVED** in its entirety and the Debtors are authorized to implement the provisions of the Assignment Agreement and to take any and all actions necessary or appropriate to consummate the transaction evidenced by the Assignment Agreement.

3.       The Assignment Agreement and all documents executed or to be executed in connection therewith are binding upon and inure to the benefit of the parties to the Assignment Agreement, and their respective successors and assigns, any statutory committee appointed in these Chapter 11 Cases, and any trustees, examiners, "responsible persons", or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Assignment Agreement shall not be subject to rejection or avoidance under any circumstances.

4.       Subject to and contingent upon the occurrence of the Closing Date as set forth in the Assignment Agreement, pursuant to sections 105(a), 363(c) and 363(f) of the Bankruptcy Code, all of the Debtors' rights, title, and interests in and to, and possession of, the Assigned

(Page | 5)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

Interest shall be assigned, transferred, conveyed, and set over to the Assignee free and clear of any and all liens, liabilities, claims, rights, security interests, pledges, charges, defects, or similar encumbrances (the "Assignment") in accordance with the terms of the Assignment Agreement, with any such liens, claims, encumbrances, and interests to attach to the proceeds of the Assignment in the order of their priority, with the same force, effect, and validity that they had immediately prior to the entry of this Order, subject to any rights, claims, or defenses the Debtors may have with respect thereto. Such Assignment shall constitute a legal, valid, binding, and effective transfer of the Digistar Loan and the Loan Documents, including all respective rights thereunder, to the Assignee.

5.     The Debtors are authorized to: (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Assignment without further order of the Court, including without limitation, executing the Assignment Agreement; and (b) take all further actions and to execute and deliver the documents to be executed in connection with the Assignment Agreement and any and all additional instruments and documents that may be (i) reasonably requested by the Assignee for the purpose of assigning, transferring, granting, conveying, and conferring the Digistar Loan and the Loan Documents to the Assignee, in accordance with the terms of the Assignment Agreement, or (ii) necessary, appropriate, or desirable to the performance

(Page | 6)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

of the obligations contemplated by the Assignment Agreement, all without further order of the Court.

6.      All objections, statements, or reservation of rights to the Motion or relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed with the Court or as resolved in this Order are hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

7.      This Order is and shall be binding upon all persons and entities that may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or that may be required to report or insure any title or state of title in or to any property; and each of the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to record, document or otherwise consummate the Assignment.

8.      The Assignment Agreement is the product of extensive, good faith, arms-length negotiations between the Parties and their respective representatives, without collusion and from arm's length bargaining positions.

9.      The Assignee is deemed to be a good faith purchaser and assignee of the Digistar Loan and Loan Documents. Pursuant to section 363(m) of the Bankruptcy Code, if this Order is

(Page | 7)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

reversed or modified on appeal, such reversal or modification shall not affect the validity of the Assignment. The consideration provided for the assignment of the Digistar Loan and Loan Documents under the Assignment Agreement is fair and reasonable, and the Assignment is not subject to avoidance under section 363(n) of the Bankruptcy Code or otherwise.

10.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the rights of the United States Securities and Exchange Commission and the Committee to challenge transactions involving crypto tokens on any basis are expressly reserved.

11.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim, interest, or lien against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim, interest, or lien on any grounds; (c) a promise or requirement to pay prepetition claims; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an implication or admission that any particular claim, interest, or lien is of a type specified or defined in the Motion or this Order; (f) an authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or

(Page | 8)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

(g) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

12.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors' rights, title and interests in the Digistar Loan and the Loan Documents or a bill of sale transferring good and marketable title in the Digistar Loan and the Loan Documents to Assignee on the Closing Date pursuant to the Assignment Agreement free and clear of all liens, liabilities, claims, rights, security interests, pledges, charges, defects, or similar encumbrances to the fullest extent permitted by Bankruptcy Code Section 363(f).

13.     Notwithstanding the possible applicability of Rules 6004(h), 7062, and 9014 of the Bankruptcy Rules or otherwise, the terms and conditions of this Order shall be effective immediately upon entry. The Debtors and the Assignee are hereby authorized to close the Assignment following entry of this Order in accordance with the terms of the Assignment Agreement.

14.     The failure to specifically include or make reference to any particular provisions of the Assignment Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Assignment Agreement is authorized and approved in its entirety.

(Page | 9)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No.: | 22-19361(MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING AND APPROVING THE TERMS OF THE DEBTORS' SETTLEMENT WITH DIGISTAR NORWAY AS, NESSIM-SARIEL GAON, AND FIORENZO MANGANIELLO; (II) APPROVING BLOCKFI LENDING'S ASSIGNMENT TO G75 CAPITAL OF ALL OF BLOCKFI LENDING'S RIGHTS, TITLE AND INTEREST IN AND TO THE DIGISTAR NORWAY TRANSACTION DOCUMENTS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING BLOCKFI LENDING TO ENTER INTO THE ASSIGNMENT AGREEMENT; AND (IV) GRANTING RELATED RELIEF |

15.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

16.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     To the extent there are any inconsistencies between the terms of this Order and the Assignment Agreement, the terms of this Order shall control.

18.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements and documents executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Assignee, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Assignment Agreement.