BlockFi Inc. Loan Account Holder Proof of Claim Form

# BlockFi Inc. Loan Account Holder Proof of Claim Form

## Electronic Proof of Claim ID

If you have an EPOC ID please enter it below and select next to proceed with your claim submission.  EPOC IDs can be located on the pre-printed proof of claim forms sent via first-class mail.

EPOC ID

EPOC IDs are not required to submit a claim.  If you cannot locate your EPOC ID or do not have an EPOC ID, please select next to continue with your claim submission.

## Instructions

**Read the instructions before filling out this form. This form is for making a claim based on assets held in account of the Debtors. <u>Do not</u>** use this form to assert any other pre-petition claims. <u>**Do not**</u> use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed (November 28, 2022).**

☐ Check here to see further instructions on completing your claim form:

## Debtor Selection

**If you have one or more Loan Collateral accounts, fill in this information to identify the case:**

◉ U.S. client
◯ Non-U.S. client

☑ BlockFi Lending LLC (Case No. 22-19365)
☐ Other

## Claim Information

**1. Who is the current creditor?**

Matthew Gordon

Other names the creditor used with the debtor

Customer Identification Number(s):

Email Address Used to Sign Up for your BlockFi Account(s):

███████████████

**2. Has this claim been acquired from someone else?**

◉ No
◯ Yes

**3. Where should notices and payments to the creditor be sent?**
[Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)]

BlockFi Inc. Loan Account Holder Proof of Claim Form

**Where should notices to the creditor be sent?**

Name:

Matthew Gordon

Address 1 (Street address, "Care of:", or "Attention To:"):

███████████

Address 2:

Address 3:

Address 4:

City:

██████

State or Province (use 2-letter abbreviation if US or Canada):

██

Zip Code | Postal Code:

████

Is the creditor address outside of the US?

◉ No
○ Yes

Contact phone:

██████████

Contact email:

███████████████

Should payments go to a different address?

◉ No
○ Yes

**Would you like to add any additional noticing addresses?**

◉ No
○ Yes

**4. Does this claim amend one already filed?**

◉ No
○ Yes

**5. Do you know if anyone else has filed a proof of claim for this claim?**

◉ No
○ Yes

**6. Do you have any number you use to identify the debtor?**

◉ No
○ Yes

## Claim Amount

**\* 7a. To the extent that you assert a claim that is denominated in US Dollars, list the value of the claim in US Dollars as of the date the case was filed (November 28, 2022)**

BlockFi Inc. Loan Account Holder Proof of Claim Form

BlockFi Lending LLC (Case No. 22-19365)

$118,321.12

**\* 7b. List the number of each type of coin held in your Loan account(s) as of the date the case was filed (November 28, 2022) (i.e., list the IN KIND COIN BALANCE in your Loan account(s) as of the date the case was filed).**

Use only numerals and decimals in the Loan Collateral field, up to a maximum of 21 digits or 20 digits and 1 decimal.

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Bitcoin (BTC) | $ 16,206.3000 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Ethereum (ETH) | $ 1,167.2400 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Binance Coin (BNB) | $ 292.7865 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Binance USD (BUSD) | $ 1.0000 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Litecoin (LTC) | $ 73.8500 | 1602.18173486 |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Multi Collateral Dai (DAI) | $ 0.9997 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| PAX Gold (PAXG) | $ 1,740.6400 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| Polkadot (DOT) | $ 5.1340 | |

| Coin | Price as of November 28, 2022, at 11:59 p.m. UTC | Loan Collateral |
|---|---|---|
| US Dollar Fiat (USD) | $ N/A | |

Do you hold additional coins in your account not listed above?

⦿ No
◯ Yes

## Additional Claim Information

**8. What is the basis of the claim?** (limited to 100 characters)

Crypto Currency Deposited as Collateral under Loan Agreement Dated March 3, 2022

**9. Is all or part of the claim secured?**

⦿ No
◯ Yes. The claim is secured by a lien on property.

BlockFi Inc. Loan Account Holder Proof of Claim Form

**Nature of property:**

☐ Real estate.

☐ Motor vehicle

☐ Other.

**Basis for perfection:**

**Value of property (all amounts in US $ dollars):**

**Amount of the claim that is secured (all amounts in US $ dollars):**

**Amount of the claim that is unsecured (all amounts in US $ dollars):**

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars):**

**Interest Rate Type:**

○ Fixed
○ Variable

**Annual Interest Rate (when case was filed) %:**

**10. Is this claim based on a lease?**

◉ No
○ Yes

**Amount necessary to cure any default as of the date of the petition (all amounts in US $ dollars).**

**11. Is this claim subject to a right of setoff?**

◉ No
○ Yes

Identify the property:

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

◉ No
○ Yes

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,350 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other

BlockFi Inc. Loan Account Holder Proof of Claim Form

## E-Sign

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

◉ I am the creditor.
○ I am the creditor's attorney or authorized agent.
○ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
○ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date (Calculated in UTC)

| 03/30/2023 |

Signature



I certify that I have completed my Proof of Claim form on the Kroll Restructuring Administration Portal. I hereby agree that my electronic signature herein complies with the ESIGN Act, and accordingly shall have the same legal effect as my original signature.

☑ I agree

**Name of the person who is completing and signing this claim:**

First name

| Matthew |

Middle Name

| |

BlockFi Inc. Loan Account Holder Proof of Claim Form

Last name

Gordon

Title

Company

Address 1:

███████████

Address 2:

Address 3:

Address 4:

City:

████████

State or Province (use 2-letter abbreviation if US or Canada):

██

Zip Code | Postal Code:

█████

Is the address outside of the US?

◉ No
○ Yes

Contact phone:

███████████

Contact email:

██████████████████

## Attachments

**Attach Support Documentation (limited to a single PDF attachment that is less than 5 megabytes in size):**

◉ I have supporting documentation
○ I do not have supporting documentation

**Attach a single PDF attachment that is less than 5 megabytes in size**

| Proof of Claim Loan $76500_Redacted.pdf | 555 KB |
|---|---|

**Attachment Filename**

Proof of Claim Loan $76500_Redacted.pdf

BlockFi Inc. Loan Account Holder Proof of Claim Form

## Confirmation of Submission

**Your Form has been successfully submitted...**

| DOCUMENT ID | Submitted Date Time |
|---|---|
| aaa966ffa384bc74992ed5b19df88a25d00d984a | 2023-03-30T14:05:15.47Z |

| Status | CONFIRMATION ID |
|---|---|
| Submitted | 3275-49-KVKES-621485217 |

Submission Email Address

████████████████

## Submission Information

When you press "Submit" you will receive an email from "noreply.efiling@ra.kroll.com." Please add this email to your allowed senders list. This email will have a PDF copy of your claim filing (with your supporting documents as a separate attachment), as well as your Confirmation ID.

BlockFi Loan No. _____

# LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (this "**Agreement**") is made on _____3/3/2022_____, by and between matthew Gordon _____, an individual, residing at_____

_____

████████████████ – United States of America

("**Borrower**") and BlockFi Lending LLC, with its principal place of business located at **150 Broadway, 19ᵗʰ Floor, New York, NY 10038** ("**Lender**").

1.    **The Loan.** Upon the terms and subject to the conditions set forth in this Agreement, Lender agrees to make a single loan to Borrower in the principal amount of _____ seventy six thousand, five hundred dollars

dollars ($ 76500.00           ) (the "**Loan**") on the date all of the terms and conditions to making such Loan have been satisfied in Lender's sole discretion (the "**Closing Date**").

Upon disbursement of the Loan proceeds, Lender shall collect the fee applicable to the Loan as shown on the Statement of Loan (referred to herein, the **"Fee"**).  The Fee is fully earned and nonrefundable by Lender on the date it is collected, except in California when the Loan is less than $10,000, and in Pennsylvania, and Alabama.  Lender shall deduct the Fee from the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. This is a closed-end loan and is secured by the Collateral defined herein. Amounts repaid in respect of the Loan may not be reborrowed.  The indebtedness of Borrower to Lender on account of the Loan (**"Indebtedness"**) includes the Loan, the Fee (if applicable),  and any other fees due hereunder, and all interest (including interest accruing at the then applicable rate provided herein after the Maturity Date (as defined below) permitted  fees under this Agreement, and any other sum chargeable to Borrower under any of the Related Documents (as defined below), but only to the extent permitted by applicable law.  Capitalized terms not otherwise defined in this Agreement shall have the meanings provided by the Uniform Commercial Code as in effect in the state identified as the Borrower's residence, above, ("UCC") to the extent such terms are defined therein.

The following applies only to a Loan made to a resident of Ohio:

This loan is governed by, and made pursuant to, the provisions of the Ohio Consumer Installment Loan Act under R.C. 1321.62 - 1321.702.

2.    **Related Documents**. This Agreement and such other agreements, certificates, instruments, guaranties, authorizations or other documents executed to further, permit, effect or promote any purpose set forth in this Agreement, as such may be amended, restated, supplemented or otherwise modified from time to time (collectively with this Agreement, the "**Related Documents**"), including, without limitation, any UCC-1 financing statements naming Borrower as debtor and Lender as the secured party (the "**UCC-1 Financing Statement**"), and any other security agreement relating to the Collateral, memorialize the terms and conditions pursuant to which Lender is willing to provide the Loan. Borrower understands and agrees that this Agreement and the other Related Documents shall apply to the Loan and the Indebtedness, including, without limitation, the granting, renewing or extending of the Loan as provided herein.

3.    **Repayment Terms**.  Borrower agrees to repay the Loan in installments as set forth below, provided that any principal balance and any unpaid accrued interest thereon shall be due and payable not later than 2023-03-04       (the "**Maturity Date**").  All payments of principal and interest and other sums due hereunder shall be made in immediately available funds to the Lender at such account or place as the Lender may specify for such purpose by written notice to Borrower from time to time. Borrower agrees that Lender's internal records shall, absent manifest error, serve for all purposes as conclusive evidence of the outstanding principal balance of the Loan, as well

as the amount of interest, fees and charges that may be owed to Lender at any time.  Lender generally shall apply payments first to interest then due, then to any outstanding fees, charges or other expenses, and then to the principal, except as otherwise required  by applicable law, provided, however, if the address of the Borrower as shown on the first page of this Agreement is in Ohio or Washington then payments shall be applied first to any unpaid charges, then to interest, and the remainder to the unpaid principal balance of the Loan.

(a)    **Interest.**  The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be _9.75%_.  All interest accrued hereunder shall be calculated on a simple interest basis.  Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each, except if the address of the Borrower as shown on the first page of this Agreement is in Michigan, then interest shall be calculated on an actual day basis.  If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Except if the address of the Borrower as shown on the first page of this Agreement is in Alabama, Michigan, Ohio, Pennsylvania, or Missouri, any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable as provided herein.[1]

(b)    **Interest Only Payments**. Until the Maturity Date, Borrower agrees to make payments of interest accrued on the outstanding principal balance of the Loan. The first payment will be due one month after the date of this agreement and every month thereafter (for example, if the agreement is signed on January 5th, the first payment will be due on February 5th, and subsequent payments will be due on the 5th of each month).  Borrower's first payment may be higher depending on the actual funding date of the loan, and the amount of interest payable may vary in certain instances such as a payment due date change.[2]  **This section is not applicable** if the address of the Borrower as shown on the first page of this Agreement is **in Illinois, Kansas, Ohio or Pennsylvania, or if the Loan's amount financed is less than $10,000 in California.**   When this Section is not applicable, the Loan shall be payable in equal installments which shall include principal and interest components.

(c)    **Final Maturity Date Payment**. Borrower agrees to pay the entire principal amount (which is inclusive of any applicable Fee) and all accrued and unpaid interest at the rate expressed herein on the Maturity Date, unless earlier accelerated pursuant to the terms and conditions of this Agreement, or the other Related Documents, except if Borrower's address as shown on the first page of this Agreement is:

(i)    in Illinois or Pennsylvania, then Borrower agrees to pay the unpaid amount due under this Agreement. In Colorado, Kansas, Oklahoma and Utah, if this payment is more than twice as large as the average of all other regularly scheduled payments, Borrower has the right to refinance the amount of the payment at the Lender's prevailing consumer loan rates if Borrower meets Lender's normal credit standards.
(ii)   In Alabama, if this payment is more than one and a half times as large as the average of all other regularly scheduled payments, Borrower has the right to refinance the amount of the payment at a rate no less favorable than the terms of this Agreement.
(iii)  In California and the Loan's amount financed is under $10,000.

(d)    **Prepayments**. Borrower may prepay in whole or in part at any time the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.[3]

---

[1] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your interest rate definition.

[2] Please see, "Appendix B: Loan Disclosures," at the end of this Agreement for more details. If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please disregard this section.

[3] If you are not a resident of the U.S. or Canada or you have requested a loan with no monthly interest payments, please see, "Appendix A: Bullet Loans" for your Prepayments definition.

BlockFi Loan No. _____ _____

      (e)    **Late Payments**. To the extent permitted under applicable law, Borrower agrees that if any payment pursuant to Section 3(b) or Section 3(c) is not made within ten (10) days of the due date, (i) Borrower will be charged a late charge of fifteen dollars ($15.00) or five percent 5.00% of the amount of the past due payment, whichever is greater; and (ii) subject to compliance with applicable law, Lender may liquidate a portion of the Collateral in an amount equal to any late payment and corresponding late charge; however, if the address of the Borrower shown on the first page of this Agreement is:

(i)      in Alabama, then the late charge fifteen dollars ($15.00) or five percent (5.00%) of the amount of the payment that is past due, whichever is greater, but not more than one hundred dollars ($100.00);

(ii)    in Colorado, and the Loan amount is $75,000 or less, then the late charge is $15;

(iii)   in Illinois, then the late charge is five percent (5.00%) of the payment for payments in excess of $200, or $10 on payments of $200 or less

(iv)   in Kansas, then the late charge is five percent (5.00%) of the unpaid amount of the payment or $25, whichever is less;

(v)    in Minnesota, then the late charge of eight dollars and eighty-four cents ($8.84) or five percent (5.00%) of the amount of the past due payment, whichever is greater;

(vi)   in Missouri if the payment is not made within fifteen (15) days of the due date, then a late charge of fifteen dollars ($15.00) or five percent (5.00%) of the amount of the past due payment, whichever is greater, not to exceed fifty dollars ($50.00);

(vii)  in Pennsylvania, if the payment is not made within fifteen (15) days of the due date, then the late charge is twenty dollars ($20.00) or ten percent (10.00%) of the amount of the past due payment, whichever is greater;

(viii) In Utah, five percent (5.00%) of the unpaid amount of the payment; and

(ix)   in Washington, then ten percent (10.00%) of the amount of the unpaid amount of the payment.

    4.    **Conditions to Lender's Obligations**.  Lender's obligation to advance funds under this Agreement shall be subject to the satisfaction of all of the conditions set forth in this Agreement and the Related Documents, including, without limitation, the following specific conditions precedent:

      (a)    **Related Documents.** Borrower shall electronically execute all Related Documents, in form and substance acceptable to Lender.

      By signing immediately below, Borrower acknowledges and consents to entering into an electronic transaction with Lender.

�_____
  F5F543DD92E944E...
Borrower

      (b)    **Representations and Warranties.** The representations and warranties set forth in this Agreement and the other Related Documents are true and correct in all material respects; provided, however, that those representations and warranties expressly referring to another specific date shall be true and correct in all material respects as of such date.

      (c)    **No Event of Default.** There shall not exist at the time of the advance, and after giving effect thereto, a condition which would constitute an Event of Default under this Agreement.

      (d)    **Collateral.** Borrower shall have transferred the Collateral into Lender's digital asset depository account at Gemini Trust Company, LLC ("**Gemini**" or such other location as Lender may determine from time to time, the "**Depository**"), deposit address _____ _____ (such account or any other account at the Depository to which Lender may transfer the Collateral, the "**Depository Account**"). Lender may change the location of the Depository and Depository Account without notice to Borrower.

Borrower agrees that Lender may, for its own account, pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer or use any amount of such Collateral, separately or together with other property, with all attendant rights of ownership from time to time, without notice to the Borrower any or all of the Collateral and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral. The parties agree that the holding of Collateral through the Depository constitutes the use of reasonable care with respect to the custody and preservation of the Collateral.

(e)     **Priority.** Lender shall have actual or constructive possession of the Collateral, as applicable, and a first priority security interest in the Collateral.

Notwithstanding the above, Borrower's failure to meet any of the conditions set forth in this <u>Section 4</u> shall not provide any basis for Borrower to contest the enforceability of the Loan.

5.     **Grant of Security Interest in Collateral**.  For valuable consideration, the adequacy and receipt of which is hereby acknowledged, Borrower hereby:

(a)     pledges, assigns, transfers and delivers to Lender, and grants to Lender a continuing and unconditional first priority security interest in all of Borrower's present and future rights, title and interest in the following (collectively referred to as the "**Collateral**") as security for the payment and performance of the Indebtedness:

(i)     the Depository Account;

(ii)    all cryptocurrency now or in the future held in, on deposit in or otherwise allocated to the Depository Account (including, without limitation, any cryptocurrency transferred to the Depository Account after the date hereof by the Borrower pursuant to Section 7 or otherwise);

(iii)   any other cryptocurrency now or in the future issued with respect to any of the foregoing cryptocurrency as a result of a fork or other event that results in the holders of cryptocurrency receiving additional or replacement cryptocurrency (whether or not such other cryptocurrency is held in, on deposit in or otherwise allocated to the Depository Account);

(iv)    <u>1387.880        LTC      </u>;

(v)     all rights to receive delivery of or withdraw any of the foregoing cryptocurrency from the Depository and all rights against the Depository with respect to the Depository Account, any of the foregoing cryptocurrency, and the proceeds thereof; and

(vi)    all proceeds of the foregoing.

(b)     agrees that such security interest granted by Borrower to Lender constitutes a valid, first priority security interest in the Collateral, and will constitute a valid, first priority security interest in later-acquired Collateral.  Notwithstanding any termination of this Agreement, Lender's security interest in the Collateral shall remain in effect for so long as any Indebtedness remains outstanding under this Agreement or any of the Related Documents.

(c)     agrees that Lender has the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

(d)     authorizes Lender at any time and from time to time, at Borrower's expense, to file in any jurisdiction any financing statements and amendments that: (i) name the Collateral as collateral thereunder, regardless

of whether any particular Collateral falls within the scope of the UCC; (ii) contain any other information required by the UCC for sufficiency or filing office acceptance, including organization identification numbers; and (iii) contain such language as Lender determines helpful in protecting or preserving rights against third parties. Borrower ratifies any such filings made prior to the date hereof.

(e)        acknowledges and agrees that the obligations of Borrower under this Agreement shall be full recourse obligations of Borrower and that Borrower is and shall remain personally liable to Lender for the payment in full of all Indebtedness and performance of all obligations hereunder.

(f)        agrees that in addition to this Agreement, all liens, security interests, assignments, suretyship obligations, stock pledges, rights and remedies granted to Lender in this Agreement and any Related Documents secure all obligations, debts and liabilities, plus interest thereon, of Borrower to Lender and any of its affiliates, as well as the claims by Lender and any of its affiliates against Borrower, whether now existing or hereafter arising (such existing or hereafter arising bilateral relationships between Borrower and Lender or any of Lender's affiliates, a "**Contract**") whether related or unrelated to the purpose of this Agreement, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, and whether Borrower may be liable individually or jointly with others., and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

6.        **Borrower's Representations, Warranties and Covenants**. To induce Lender to enter into this Agreement and to make the Loan, Borrower hereby makes the following representations, warranties and covenants to Lender:

(a)        With respect to the Collateral, Borrower will, at all times, maintain a loan to value ratio where the outstanding principal balance of the Loan is less than or equal to <u>seventy</u> percent (<u>70%</u>) of the Collateral Market Value, as defined in Section 7 below (the "**Required Loan to Value Ratio**").

(b)        Except for the security interest in the Collateral granted by Borrower to Lender under this Agreement, Borrower is the sole, legal and equitable owner of the Collateral and no other security agreement, financing statement, or other security instrument covering the Collateral exists.

(c)        Borrower has rights in or the power to transfer the Collateral, and its title to the Collateral is free and clear of liens, adverse claims, and restrictions on transfer or pledge, other than those created by this Agreement or the Related Documents.

(d)        There are no actions, suits, litigation or proceedings, at law or in equity, pending by or against Borrower before any court, administrative agency, or arbitrator.

(e)        Borrower is, and at all times prior to the Maturity Date will be, in compliance with all applicable federal and state laws, regulations and ordinances.

(f)        Borrower will not sell, dispose or otherwise transfer the Collateral or any interest in the Collateral without the prior written consent from Lender.

(g)        Borrower will not create or allow any other security interest or lien on the Collateral, other than those created by this Agreement or the Related Documents.

(h)        Upon Lender's request, Borrower will execute any financing statement or other document necessary to perfect or otherwise record Lender's security interest in the Collateral.

(i)        Borrower will notify Lender in writing prior to making any change in Borrower's: (i) residence, if such Borrower is an individual or sole proprietorship, (ii) principal place of business, if such Borrower is a business entity that is created without any state filings, or (iii) state of organization, if such Borrower is a business entity that is created by state filings.

(j)        Borrower will promptly pay all taxes and assessments due on the Collateral.

(k)        Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock, and no proceeds of the Loan will be used to extend credit to others for the purpose of purchasing or carrying any margin stock.

(l)        Borrower is not, and is not required to be, registered as an "investment company" under the Investment Company Act of 1940, as amended. Borrower is not subject to regulation under any law that limits the ability to incur debt or which may otherwise render all or any portion of the obligations hereunder unenforceable.

(m)        Neither Borrower nor any of its affiliates or officers, directors, brokers or agents of Borrower or its affiliates (i) has violated any anti-terrorism laws, (ii) has engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering, (iii) is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("**OFAC**") or resides, is organized or chartered, or has a place of business in a country or territory subject to OFAC sanctions or embargo programs, (iv) is publicly identified as prohibited from doing business with the United States under the International Emergency Economic Powers Act, the Trading With the Enemy Act, or any other law, (v) conducts any business or engages in making or receiving any contribution of goods, services or money to or for the benefit of any person described in clauses (iii) or (iv) above, (vi) deals in, or otherwise engages in any transaction related to, any property or interests in property blocked pursuant to any anti-terrorism law or (vii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any anti-terrorism law.

(n)        Borrower will use the proceeds of the Loan solely for lawful purposes and all representations and warranties set forth in Borrower's credit application are true, correct and complete as of the date of such credit application and the date of this Agreement.

Each representation, warranty and covenant shall be made by Borrower as of the date of this Agreement and as of the date of any renewal, extension or modification of the Loan.

7.        **Valuation; Additional Collateral**. At any time, the market value of the Collateral in the Depository Account shall be either (a) the product of amount of Collateral times the last trade price for each unit of the Collateral in the Depository Account that is quoted on the Gemini website, or (b) the market value determined by Lender in its reasonable discretion (the "**Collateral Market Value**"). Borrower agrees that for purposes of calculating the Collateral Market Value Lender may take into account or disregard, at its sole discretion, the value of any new cryptocurrency held in the Depository Account created as the result of a forking or similar event that occurs after the date of this Agreement.

(a)        Upon notice by Lender to Borrower of the occurrence of a Trigger Event (hereinafter defined), Borrower shall promptly, and in no case later than seventy-two (72) hours after notice is provided, deposit additional Collateral into the Depository Account in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than fifty_____ percent ( 50%___ ) of the Collateral Market Value, provided that if at any time, the outstanding principal balance of the Loan is equal to or greater than eighty_____ percent ( 80%___ ) of the Collateral Market

Value (the "**Accelerated Maximum Loan to Value Ratio**"), Lender has the right to immediately liquidate Collateral, subject to any required notice, in such an amount as necessary to establish a loan to value ratio where the total of the outstanding principal balance of the Loan plus all other amounts due is equal to or less than <u>seventy</u> percent (<u>70%</u>) of the Collateral Market Value. Any Collateral liquidated by Lender is subject to a three percent (3.00%) processing fee, except if the address of the Borrower shown the first page of this Agreement is Alabama, California, Colorado, Illinois, Kansas, Maryland, Michigan, Minnesota, Missouri, Ohio, Oklahoma, Pennsylvania or Washington in which case there is no processing fee.  Any additional Collateral posted by Borrower pursuant to this <u>Section 7</u> must be based in the same kind of cryptocurrency as the original Collateral.

For purposes of this <u>Section 7</u>, (i) a "**Trigger Event**" means an event where Lender becomes aware that Borrower has failed to maintain the Required Loan to Value Ratio and the outstanding principal balance of the Loan is greater than <u>seventy</u> percent (<u>70%</u>) of the Collateral Market Value (the "**Maximum Loan to Value Ratio**"), and (ii) "**notice is provided**" at the earliest of (x) the time Lender transmits an electronic communication to the Borrower of such Trigger Event, (y) the following day if sent by UPS, FedEx or other express mail overnight delivery, or (z) four (4) days from the date posted if sent by U.S. Mail, all in accordance with the Notices provisions of <u>Section 25</u> hereof.

       8.    **Default**. Borrower shall be in default under this Agreement, if after giving effect to any applicable cure period, (a) Lender does not receive any payment when due, including any payments owed pursuant to Section 3(b) and Section 7(a); or, except in California, (b) Lender's prospect of payment, performance, or realization of collateral is significantly impaired, which may include the following (each, an "**Event of Default**"):

       (a)    Borrower's failure to timely pay any payment when due, including any payments owed pursuant to <u>Section 3(b)</u> and <u>Section 7(a)</u>;

       (b)    A Trigger Event occurs and is continuing and Borrower fails to deposit additional Collateral as required pursuant to <u>Section 7</u>;

       (c)    The Accelerated Maximum Loan to Value Ratio is then in effect;

       (d)    If Borrower is an entity, the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any levy, garnishment, attachment or similar proceeding is instituted against any property of Borrower held by Lender;

       (e)    Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any Collateral securing the Loan. However, the Event of Default specified in this <u>Section 8(e)</u> shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute;

       (f)    If Borrower is an individual, Borrower dies or becomes incompetent;

       (g)    Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, any Related Document or any other agreement between Borrower and Lender;

       (h)    Any warranty, representation or statement made or furnished to Lender by Borrower, or on Borrower's behalf, under this Agreement or any Related Document is false or misleading in any material respect,

**BlockFi Loan No.** ▮▮▮▮▮▮▮ _____

either now or at the time made or furnished or becomes false or misleading at any time thereafter;

(i)        A material adverse change occurs in the financial condition of Borrower, or the ability of Borrower to repay the Loan or perform under this Agreement or any other Related Document is impaired;

(j)        A change or material development in applicable law (including case law) or regulation makes the Loan unlawful, unless grandfathered;

(k)        A general suspension in buying, selling or owning Bitcoin or Ethereum by U.S. federal governmental authorities or a suspension in buying, selling or owning digital assets or cryptocurrencies on at least three (3) major exchanges (including Gemini, GDAX / Coinbase, Kraken, or Bitstamp), with such disruption lasting at least five (5) days; or

(l)        Borrower fails to (i) pay any principal or interest in respect of any indebtedness (including any direct, indirect, actual or contingent obligation to guarantee any debt or other obligation payable or performable by another legal person (a "**Guarantee Obligation**") when due and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such indebtedness, or (ii) perform or observe any other covenant, term, condition or agreement relating to any such indebtedness or contained in any instrument or agreement evidencing or relating thereto, or any other event occurs or condition exists, the effect of which failure or other event or condition is to cause, or permit the holder or beneficiary of such indebtedness to cause, with the giving of notice if required, such indebtedness to become due prior to its stated maturity (or in the case of any Guarantee Obligation to become payable); or any such indebtedness is declared to be due and payable, or required to be prepaid or redeemed (other than by a regularly scheduled required prepayment or redemption or as a mandatory prepayment), purchased or defeased, or an offer to prepay, redeem, purchase or defease such indebtedness shall be required to be made, in each case, prior to the stated maturity thereof.

Borrower agrees to promptly notify Lender in writing upon the occurrence of any of the events described in this Section 8, in no case later than two (2) business days after the occurrence of such event.

Notwithstanding the foregoing, the Events of Default described in paragraphs (b) through (l) above will constitute Events of Default only if the Lender's prospect of payment, performance or ability to realize upon the Collateral is significantly impaired.

Lender bears the burden of establishing significant impairment.

9.        **Remedies**.

(a)        Upon an Event of Default and at any time thereafter, after any required notice and cure period, Lender may declare all amounts due under this Agreement immediately due and payable and shall have all the rights and remedies of a Lender under the UCC or as otherwise provided under applicable law. Without limiting the generality of the foregoing, Borrower expressly agrees that in any such default, subject to any right to cure provided by applicable law, Lender may take immediate and exclusive possession of the Collateral and that Lender may liquidate the Collateral in whole or in part, at its sole discretion. **If Borrower does not meet its obligations under this Agreement, Borrower may lose the Collateral.**

(b)        The proceeds of any sale or disposition of any part of the Collateral shall be distributed by Lender in the following order of priorities:

(i)        to Lender for any reasonable costs, fees, or expenses incurred in connection with the sale or disposition of the Collateral, including any legal, accounting or other fees incurred to the extent permitted by law;

DocuSign Envelope ID: 875CD94E-FDD6-40EE-BB17-55FA281F2BD

**BlockFi Loan No.** ▆▆▆▆▆▆  _____

(ii)     to Lender in an amount equal to any outstanding and unpaid Indebtedness under this Agreement and the Related Documents; and

(iii)     any remaining surplus to Borrower or other secured party, as applicable, in accordance with the UCC or as a court of competent jurisdiction may direct.

(c)     If an Event of Default shall have occurred and be continuing, after any required notice and cure period, Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law and without prior notice to Borrower, any such notice being expressly waived by Borrower, to set off and appropriate and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency or cryptocurrency) at any time held and other obligations (in whatever currency or cryptocurrency) at any time owing by Lender to or for the credit or the account of Borrower against any and all of the obligations of Borrower under this Agreement, any Related Document or any Contract to Lender or any of its affiliates, whether direct or indirect, absolute or contingent, matured or unmatured, and irrespective of whether or not Lender or such affiliate shall have made any demand under this Agreement, any Related Document or Contract and although such obligations of Borrower are owed to an affiliate of Lender different from the affiliate holding such deposit or obligated on such indebtedness.  The rights of Lender and each of its affiliates under this paragraph are in addition to other rights and remedies (including other rights of set-off) that Lender or such affiliate may have.  Lender agrees to notify the Borrower promptly after such set off and appropriation and application; provided that the failure to give such notice shall not affect the validity of such set off and appropriation and application.  Subject to the limitations and other provisions of this Agreement, the provisions of this Section 9(c) will survive the expiration or termination of this Agreement for a period of 12 months after such expiration or termination.

10.     **Arbitration Provision.** If the Loan is made to a Borrower domiciled in the U.S. or Canada, please see Appendix A for the applicable Arbitration Provision.

11.     **Payment Failure**. Except for Borrowers with an address in in the state in Minnesota or Missouri as shown on the first page of this Agreement, Borrower agrees that Lender may assess an insufficient funds fee (a "**Payment Failure Fee**") of fifteen dollars (US$15.00) if any attempted dishonored check, negotiable order of withdrawal or share draft  by Borrower to Lender is not collected by Lender for any reason, including if checks are returned after the second presentment or fail due to insufficient funds in any account from which a payment is to be made to Lender. For Borrowers with an address in Maryland as shown on the first page of this Agreement, Borrower agrees that Lender may assess a Payment Failure Fee of fifteen dollars ($15.00) if any check is dishonored after the second presentment. For Borrowers with an address in Missouri as shown on the first page of this Agreement, the Lender may impose charges assessed by any institution for processing a refused instrument plus the Payment Failure Fee.  For Borrowers with an address in Pennsylvania as shown on the first page of this Agreement, then the Payment Failure Fee will not exceed the actual fees Lender is charged by a financial institution if any check or other instrument taken in payment is not honored on re-presentment for any reason. For Borrowers with an address in Utah as shown on the first page of this Agreement, if Borrower's check is dishonored on first presentment but later honored, then Borrower will not owe a Payment Failure Fee for that check. Only one Payment Failure Fee will be assessed on any dishonored payment. The amount of any Payment Failure Fee will be added to the balance due and payable on the next payment due date.

12.     **Lender Appointed Attorney-In-Fact**. Except for Borrowers with an address in in the state in Minnesota or Illinois as shown on the first page of this Agreement, Borrower hereby appoints Lender Borrower's attorney-in-fact, with full authority in the place and stead of Borrower and in the name of Borrower or otherwise, from time to time during the continuance of an Event of Default to take any action and to execute any instrument that Lender may deem necessary or advisable to accomplish the purposes of this Agreement, except for a confession of judgment (but Lender shall not be obligated to and shall have no liability to Borrower or any third party for failure to do so or take action). This appointment, being coupled with an interest, shall be irrevocable. Borrower hereby ratifies all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof.

BlockFi Loan No. ████ _____

13.     **Security Interest Absolute**. To the extent permitted by law, Borrower hereby waives demand, notice, protest, notice of acceptance of this Agreement, Collateral received or delivered and all other demands and notices of any description. To the extent permitted by law, all rights of Lender and liens and security interests hereunder, and all Indebtedness of Borrower hereunder, shall be absolute and unconditional irrespective of:

        (a)     Except for Borrowers with a residence in Alabama as shown on the first page of this Agreement, any illegality or lack of validity or enforceability of any Indebtedness or any related agreement or instrument;

        (b)     any change in the time, place or manner of payment of, or in any other term of, the Indebtedness, or any amendment or other modification of this Agreement or any other agreement, including any increase in the Indebtedness resulting from any extension of additional credit or otherwise;

        (c)     any taking, exchange, substitution, release, impairment or non-perfection of any Collateral or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Indebtedness;

        (d)     any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Indebtedness;

        (e)     any default, failure or delay, willful or otherwise, in the payment of the Indebtedness;

        (f)     any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, Borrower against Lender; or

        (g)     Except for Borrowers with a residence in in Alabama as shown on the first page of this Agreement, any other circumstance (including, without limitation, any statute of limitations) or manner of administering the Loan or any existence of or reliance on any representation by Lender that might vary the risk of Borrower or otherwise operate as a defense available to, or a legal or equitable discharge of, Borrower or any guarantor or surety.

14.     **Survival of Representations and Warranties**. Borrower understands and agrees that in making this Loan, Lender is relying on all representations, warranties and covenants made by Borrower in this Agreement, the Related Documents and in any certificate or other instrument delivered by Borrower to Lender under this Agreement. Such Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the execution of this Agreement and the funding of the advance, shall be continuing in nature, and shall remain in full force and effect until such time as all of Borrower's obligations under this Agreement shall be fully satisfied, or until this Agreement shall be terminated in the manner provided herein, whichever is the last to occur.

15.     **Account Authorization**. In order to satisfy Borrower's obligations under this Agreement, Borrower expressly authorizes Lender to initiate an electronic funds transfer ("**EFT**") debit from Borrower's designated bank account (including any subsequent designated account identified to Lender by the Borrower) for all amounts due and owing by Borrower to Lender under this Agreement, including, without limitation, all payments to be made by Borrower pursuant to Section 3 of this Agreement. In connection with such payments, Borrower further agrees to complete any documents as may be reasonably requested by Lender to effectuate and/or authorize such EFT. Borrower authorizes Lender to resubmit any EFT debit authorized by Borrower that is returned for insufficient or uncollected funds, except as otherwise provided by NACHA – The Electronic Payment Association's EFT rules or applicable law.

BlockFi Loan No. ██████ _____

16.    **Cost of Collection**. To the extent permitted by law, and except for Borrowers with a residence in Minnesota, Colorado, Ohio, Oklahoma, or Utah as shown on the first page of this Agreement,  Borrower agrees to pay all costs and expenses, including collection expenses, and court costs, plus  reasonable attorneys' fees (except that for Borrowers with a residence in Alabama, Colorado, Kansas, Missouri or Oklahoma as shown on the first page of this Agreement, only after default in connection with referral to an attorney who is not a salaried employee of Lender and up to 15% of the unpaid debt and except also that for Borrowers with a residence in Missouri as shown on the first page of this Agreement, only if it is necessary to bring suit), incurred by Lender in the collection or enforcement of this Agreement. For Borrowers with a residence in Utah as shown on the first page of this Agreement, Borrower will pay any collection cost Lender incurs, including reasonable attorney fees and court costs, as the law allows. If Lender hires an attorney or a third-party collection agency to collect what Borrower owes, Borrower will also pay the lesser of: (a) the actual amount Lender is required to pay to the third-party collection agency or the attorney, regardless of whether that amount is a specific dollar amount or a percentage of the amount owed to Lender; or (b) 40% of the amount owed to Lender. Borrower also agrees to pay any and all withholding taxes applicable to the Collateral, including any withholding taxes on any amounts so paid and, upon written request by Lender, shall furnish Lender with evidence of payment thereof.

17.    **Termination**. This Agreement and the security interests created hereby shall automatically terminate upon the payment in full of all Indebtedness and performance of all obligations hereunder. At such time, and except as otherwise required by applicable law, Lender's sole obligations shall be to, at Borrower's request, (i) direct the Depository to transfer the remaining Collateral in the Depository Account to Borrower, at a wallet address provided by Borrower to Lender, and (ii) to authorize Borrower to terminate any UCC financing statements filed by Lender against Borrower with respect to the Collateral.

18.    **Binding Effect**. All representations, warranties, covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender. Any such assignment in violation of this Section 18 shall be null and void.

19.    **Caption Headings**. Caption headings in this Agreement and the Related Documents are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement or the Related Documents.

20.    **Cumulative Rights; Non-Exercise**. Lender's rights under this Agreement are cumulative, and shall not be construed as exclusive of each other unless otherwise required by law. The non-exercise by Lender of any rights or remedies under this Agreement shall not constitute a waiver thereof in that or any subsequent instance.

21.    **Waiver**. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower shall constitute a waiver of any of Lender's rights or of the Borrower's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

22.    **Entire Agreement; Integration**. This Agreement and the other Related Documents constitute the entire agreement among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof. Each Related Document, and any exhibit, schedule or similar addition to this Agreement or any Related Document, is hereby

BlockFi Loan No. _____ _____

incorporated into this Agreement by this reference as though fully set forth herein.

23.    **Severability**. If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

24.    **Usury Savings Clause**. Lender and Borrower intend to contract in strict compliance with applicable usury law from time to time in effect. In furtherance thereof, Lender and Borrower stipulate and agree that none of the terms and provisions contained in the Loan Documents shall ever be construed to create a contract to pay for the use, forbearance or detention of money or interest in excess of the maximum amount of interest (including all charges and fees) permitted to be charged by applicable law, from time to time.

25.    **Notices**. Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, delivered by overnight delivery service, or via electronic mail, addressed as follows:

If to Lender:

BlockFi Lending LLC
150 Broadway, 19th Floor
New York, NY 10038
support@blockfi.com

If to Borrower:

matthew Gordon

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – United States of America
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Either party may change such addresses from time to time by providing notice as set forth above.

26.    **USA Patriot Act Notice**. Lender hereby notifies Borrower that, pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it may be required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

27.    **Credit Report and Other Authorizations**. Borrower authorizes Lender, its agents and representatives and any credit reporting agency engaged by Lender, to (a) investigate any references given or any other statements or data obtained from or about Borrower or any guarantor for the purpose of this Loan Agreement, (b) obtain consumer and business credit reports on Borrower and any guarantor, (c) contact personal and business references provided by Borrower, at any time now or for so long as any Indebtedness remains unpaid, and (d) share information regarding Borrower's performance under this Agreement with affiliates and unaffiliated third parties. As required by Utah law, Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations.

28.    **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days and not business days.

29.    **Amendment**. This Agreement and the Related Documents constitute the entire understanding and

BlockFi Loan No. ██████ _____

agreement of the parties as to the matters set forth in this Agreement. No alteration, amendment, modification, termination, discharge or waiver of any provision of this Agreement or any other Related Document, or consent to any departure by either party therefrom, shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration, amendment, modification, termination, discharge or waiver. Any such alteration, amendment, modification, termination, discharge or waiver shall be effective only for the specific purpose for which given.

30.    **Bankruptcy**. The rights and priorities set forth in this Agreement shall remain binding irrespective of the terms of any plan of reorganization in any proceeding commenced by or against Borrower under any provision of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended, and any successor statute (the "**Bankruptcy Code**") or under any other federal or state bankruptcy or insolvency law, including assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with its creditors, or proceedings seeking reorganization, arrangement, or other similar relief, and all converted or succeeding cases in respect thereof or other provisions of the Bankruptcy Code or any similar federal or state statute.

31.    **Governing Law; Acceptable Forums; Waiver of Jury Trial**.  EXCEPT    FOR    THE ARBITRATION PROVISION, WHERE APPLICABLE, WHICH SHALL BE GOVERNED BY FEDERAL LAW, THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE LAWS OF THE STATE OF THE RESIDENCE OF THE BORROWER AS SHOWN ON THE FIRST PAGE OF THIS AGREEMENT WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS.  Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Lender so elects, be instituted in any court sitting in New Castle County, Delaware, (the "**Acceptable Forums**").  Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum.  Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Agreement or any Related Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).  BORROWER UNDERSTANDS THAT BORROWER'S AGREEING TO THE APPLICABILITY OF DELAWARE VENUE ARE A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THIS AGREEMENT.

For Borrowers with an address in Ohio as shown on the first page of this Agreement:

**THIS LOAN IS MADE PARTIALLY IN RELIANCE ON THE PROVISIONS OF SECTIONS 1321.62 TO 1321.702 OF THE OHIO REVISED CODE.**

For Borrowers with an address in Maryland as shown on the first page of this Agreement;

**THIS AGREEMNT WILL BE GOVERNED BY THE LAWS OF THE STATE OF MARYLAND, SPECIFICALLY TITLE 12, SUBTITLE 10 OF THE MARYLAND COMMERCIAL LAW ARTICLE.**

32.    **Facsimile Acceptance**.  This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission (whether directly from one facsimile device to another by means of a dial-up connection or whether mediated by the worldwide web), by e-mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

DocuSign Envelope ID: 875CD94F-FDD6-40FE-BB17-55FA2841F3BD

33.    **Military Lending Act.** The Military Lending Act provides protections for certain members of the Armed Forces and their dependents ("**Covered Borrowers**"). The provisions of this section apply to Covered Borrowers. Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36%. This rate must include, as applicable to the credit transaction or account: (a) the costs associated with credit insurance premiums; (b) fees for ancillary products sold in connection with the credit transaction; (c) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (d) any participation fee charged (other than certain participation fees for a credit card account). Before signing this Agreement, in order to hear important disclosures and payment information about this Agreement, you may call 1-646-779-9688.

34.    **Transferable Record.** Borrower expressly agrees that this Agreement is a "transferable record" as defined in applicable law relating to electronic transactions and that it may be created, authenticated, stored, transmitted and transferred in a manner consistent with and permitted by such applicable law.

35.    **Loan Transferability**. Borrower expressly agrees and acknowledges that Lender may assign this Agreement and the Related Documents, or any of Lender's rights under this Agreement or the Related Documents, in whole or in part at any time. Borrower further understands, acknowledges and agrees that Lender or another third party may further sell, assign or transfer this Agreement, the Related Documents and all associated documents and information related to this Agreement and the Related Documents without Borrower's consent or notice to Borrower.

If the proceeds of the Loan will be used for personal, family or household purposes:

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

If the proceeds of the Loan will be used for business or commercial purposes:

**Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**[The remainder of this page intentionally left blank.]**

BlockFi Loan No. ██████ _____

      IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first written above.

**NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it.  2. You are entitled to a copy of this agreement.  3. You may prepay the unpaid balance at any time without penalty.**


**BORROWER**

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT

By: _____
F5F543DD92E944E

    Name:  matthew Gordon


**LENDER**

BlockFi Lending LLC, a Delaware limited liability company


By: _____

Name: Flori Marquez

Title: VP of Operations


Signature Page to Loan and Security Agreement

BlockFi Loan No. _____ _____

**Please review and confirm the information below. Pay close attention and ensure the "Funding Currency" is accurate. Note that if funding your loan in Stablecoin, funds must be sent to a wallet that supports the specified currency or funds may be permanently lost. BlockFi will not be responsible for any errors arising from an incorrectly specified Stablecoin currency or Destination Wallet Address.**

**<u>Funding Currency. This must be US currency if the Borrower resides in California as shown on the first page of this Agreement.</u>**

Your loan will be funded in                         USD Wire _____
*(If you would like to be funded in Stablecoin, please skip to the "Stablecoin" selection below)*

**<u>Bank Wires</u>**

Beneficiary Name                         matthew Gordon _____

Beneficiary Address                         ███████████████— _____

                                        ███████████████ – United States of America
*(Please ensure the Name and Address match that associated with your Bank, otherwise funds may be delayed)*

**<u>US Bank Information</u>**

Bank Account # (USA)                         ██████_____

Wire Capable Routing # (USA)                         █████_____

**<u>Non-US Bank Information</u>**

IBAN (only required for Non-USA Wires)                         _____

SWIFT / BIC (only required for Non-USA Wires)                         _____

**<u>Stablecoin</u>**

Destination Wallet Address                         _____
*(Please ensure that the Destination Wallet Address and Stablecoin Currency above are correct. Funds sent to an incorrect address may be permanently lost. BlockFi will not be responsible for any errors arising from an incorrectly specified Stablecoin currency or Destination Wallet Address)*

BlockFi Loan No. _____

## STATEMENT OF LOAN

**Lender**

BlockFi Lending LLC
150 Broadway
19th Floor
New York, NY 10038

CFL Lic. No.: ████████

**Borrower**

matthew Gordon

████████████ ▆ United States of America

---

### TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid when you have made all scheduled payments |
| 11.84% | 8958.75 | 75000.00 | 83958.72 |

Your payment schedule will be as follows:

| Number of payments | Amount | When payments are due |
|---|---|---|
| 12 | 621.56 | First payment is due on  2022-04-04           , and each subsequent payment is due monthly thereafter on the same day of each month |
| 1 | 76500.00 | Last payment Maturity Date is due on  2023-03-04 |

**Security**: You are giving a security interest in the following collateral (the "Collateral"):

| 1387.880 | LTC |
|---|---|

**Late charges:** If your payment arrives more than 10 days after the date on it is due, you may be charged a late fee equal to the greater of 5.00% of the past due payment or $15.

**Prepayment policy:** Borrower may prepay the outstanding principal and all accrued and unpaid interest thereon at the rate expressed herein without penalty.

**See your Loan and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, collateral and termination matters.**

204543107.1                                            17

**BlockFi Loan No.** ████████  _____

Itemization of Amount Financed of $ _76500.00_____

| Amount given to you directly | Amount paid to others on your behalf: |
|---|---|
| 75000.00 _____ | _____ |
| Amount paid on your account | Prepaid finance charge to BlockFi Lending LLC |
| 1500.00 _____ | 1500.00 _____ |

The payment amounts disclosed in the payment schedule are calculated on the assumption that you will make all payments on the applicable payment due date and assume, for purposes of this disclosure, that all months have 30 days.  If this Loan is made to a Borrower in California (as shown by the address on the first page of this Agreement), then with respect to loans having a bona fide principal amount of $10,000 or more, please note that monthly loan payments are made on an "interest-only" basis until the final payment is due.  This means that the actual amount of a monthly loan payment may increase when you make a payment after the payment due date or decrease when you make a payment before the payment due date. Except if this Loan is made to a Borrower in California, Illinois or Pennsylvania (as shown by the address on the first page of this Agreement), then the payment amount will also vary based on the actual days in any given month.

If this Loan is made to a Borrower in California (as shown by the address on the first page of this Agreement) then the following applies:

This loan is made pursuant to the California Financing Law, Division 9 (commencing with Section 22000) of the Financial Code.

**FOR INFORMATION, CONTACT THE DEPARTMENT OF BUSINESS OVERSIGHT, STATE OF CALIFORNIA.**

Broker. A broker has not performed any act in connection with the making of this loan unless the following box is checked:

[  ]  Broker has participated.

BlockFi Loan No. _____

# APPENDIX A: BULLET LOANS

**THIS APPENDIX A DOES NOT APPLY TO BORROWERS WHERE THE ADDRESS SHOWN ON THE FIRST PAGE OF THIS AGREEMENT IS IN ALABAMA OR KANSAS**

**Interest.** The annual interest rate on the outstanding principal amount of the Loan from the date hereof until payment of the Loan in full shall be the rate stated above in section 3(a) and in your loan offer on your client dashboard. All interest accrued hereunder shall be calculated on a front-loaded basis, except if this Loan is made to a Borrower in Missouri (as shown by the address on the first page of this Agreement). Interest shall be calculated on the basis of a 360-day year consisting of twelve (12) months of thirty (30) days each, except if this Loan is made to a Borrower in Michigan (as shown by the address on the first page of this Agreement) , then the Loan shall be calculated on an actual day basis.  Except if this Loan is made to a Borrower in Michigan, Missouri or Ohio (as shown by the address on the first page of this Agreement), then upon disbursement of the Loan proceeds, Lender shall collect an interest payment equal to the aforementioned rate times the principal sum of the Loan, prorated for the loan's term. All interest due (and for Borrowers with an address in Utah as shown on the first page of this Agreement, not exceeding 5% of the amount financed) is fully earned by Lender on the date it is collected. Except if this Loan is made to a Borrower in Michigan, Missouri or Ohio (as shown by the address on the first page of this Agreement), then Lender shall deduct all interest due from the Loan proceeds and disburse the remaining Loan proceeds to the Borrower on the Closing Date. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Lender to Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law. Any amount added to principal pursuant to this Agreement or any Related Document shall bear interest at the rate specified herein and shall be payable with such interest upon demand by Lender and absent such demand, as otherwise provided herein.  In no event will interest be added to the principal if this Loan is made to a Borrower in Missouri (as shown by the address on the first page of this Agreement).

**Prepayments.** Borrower may prepay the outstanding principal, in whole or in part,  at any time. There is no additional charge for prepaying principal ahead of the Maturity Date. Except if the Borrowers' address as shown on the first page of this Agreement is Missouri or Ohio, prior to prepayment, the Borrower must give the Lender 5 business day notice. Interest payments made at origination (and for Borrowers with an address in Utah as shown on the first page of this Agreement, not exceeding 5% of the amount financed) will not be reimbursed.

**Arbitration Provision.**

       (a)     In the event that any Dispute (as hereinafter defined) cannot be resolved through a discussion between Borrower and Lender (individually "party" and collectively "parties"), either party may demand that such Dispute be submitted to arbitration, which (if demanded) shall be the exclusive, final, and binding means for resolving such Dispute; provided, this arbitration provision shall not prevent the parties from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations of this agreement for which either party may obtain provisional relief pending a decision on the merits by the arbitrator. A "Dispute" is a claim or controversy of every kind and nature between Borrower and Lender, including, but not limited to: (i) all claims or controversies arising out of or relating to any aspect of the relationship between the parties hereto, regardless of legal basis or theory; (ii) all claims or controversies involving the interpretation, construction, performance or nonperformance, enforcement, or breach of this agreement; and (iii) all claims or controversies that may arise after the termination of this agreement. This arbitration provision is intended to be broadly interpreted, and the term "Dispute" shall have the broadest meaning possible.  Any party may demand arbitration in writing by notice to the other party.

       (b)     Any such arbitration shall be conducted under the Commercial Dispute Resolution Rules of the American Arbitration Association ("AAA"), except as modified herein.  Alternatively, upon both parties' consent, another arbitration association and its rules may be used.  The arbitration proceedings shall be before a single neutral

DocuSign Envelope ID: 875CD04F-FDD6-40FE-BD17-55FA2811F2BD

**BlockFi Loan No.** ████████

arbitrator who shall be an attorney, retired judge, or arbitrator experienced in commercial finance. The arbitrator shall be registered and in good standing with an arbitration association. The arbitrators shall apply applicable statutes of limitation and rules of privilege. Except as otherwise provided herein, the arbitrator shall have authority to award any remedy or relief that a court of the State of Delaware or federal court located in the State of Delaware could grant in conformity to applicable law on the basis of claims actually made in the arbitration. Any arbitration will be held in New York County, NY, which the parties agree is a convenient location. Any arbitration award shall be accompanied by a written statement containing a summary of the issues in controversy, a description of the award, and an explanation of the reasons for the award. The non-prevailing party shall pay to the prevailing party, to the extent not prohibited by law, all of the prevailing party's arbitration costs and expenses, including reasonable attorneys' fees, and the arbitrator shall award such in its decision. The arbitrator's award shall be final, and judgment may be entered upon such award by any court. All arbitration proceedings shall be confidential, and neither party shall disclose any information about the evidence produced by either party in the arbitration proceeding except as necessary in the course of a judicial, regulatory or arbitration proceeding, or as may be demanded by government authority; provided, before making any such disclosure the disclosing party shall give the other party reasonable advance written notice and an opportunity to prevent the disclosure.

(c)    **NO CLASS ACTION ARBITRATION MAY BE ORDERED UNDER THIS ARBITRATION PROVISION** (this is referred to in the next sentence as the "class waiver"). If any part of this arbitration provision is found to be unenforceable, except for the class waiver, the rest shall be enforceable; but if the class waiver is found to be unenforceable, then this entire arbitration provision shall be unenforceable.

(d)    Because the parties hereto operate in interstate commerce, this Arbitration Provision shall be governed by the Federal Arbitration Act, as will any actions to compel, enforce, vacate, or confirm proceedings, awards, or orders of the arbitrator. This arbitration provision shall, with respect to such dispute, survive the termination or expiration of this agreement. Except for the enforceability of the arbitration provision discussed above, nothing in this arbitration provision shall be deemed to give the arbitrators any authority, power, or right to alter, change, amend, modify, add to, or subtract from any of the provisions of this agreement.

BlockFi Loan No. ██████████

## <u>APPENDIX B: LOAN DISCLOSURES</u>

BlockFi Lending LLC is required to comply with the following state-specific lending disclosures

(a) IF YOU ARE A RESIDENT OF ILLINOIS OR PENNSYLVANIA:

In accordance with the Illinois Consumer Installment Loan Act and the Pennsylvania Consumer Discount Company Act, as applicable, the repayment of this loan, at issuance, is scheduled to be in equal monthly installments with no balloon of principal at maturity.

(b) IF YOU ARE A RESIDENT OF OREGON:

This agreement is governed by Oregon Law.

◆ **BlockFi**    Dashboard    Accounts ⌄    Fund    Withdraw    Borrow    **Refer a friend**

### Loans ⌃

Funded Loan #▉▉▉▉
**$386,208.58**

Funded Loan #▉▉▉▉
**$76,500.00**

### Loan Applications ⌃

### Archive ⌃

Loan #▉▉▉▉
**$102,000.00**

Loan #▉▉▉▉
**$188,700.00**

Loan #▉▉▉▉
**$71,400.00**

Dashboard  >  Loans Overview  >  Loan #▉▉▉▉

Total Loan Amount ⓘ

# $76,500.00

LTV Health
Healthy

Status
**Funded**

## Collateral and LTV

Starting Collateral
1387.8800000000000000000 LTC

Starting LTV
**50.00%**

Start Date
**March 3, 2022**

Current Collateral
1602.1817348600000000000 LTC

Current LTV ⓘ
**21.90%**

**Add Collateral**

Your loan is in good health. However, if
the price of LTC falls to $28.84 margin
call will be triggered and your