**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## DEBTORS' OBJECTION TO MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF

TO:    THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED
STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Debtors"), as debtors

and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"),

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

hereby file this *Debtors' Objection* (the "Objection") *to Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 And (II) Granting Related Relief* (the "Lift Stay Motion"). In support of the Objection, the Debtors rely upon the *Declaration of Christopher Parker in Support of the Debtors' Objection to the Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 And (II) Granting Related Relief* (hereinafter cited as the "Parker Dec.") filed contemporaneously with this Objection. In further support of the Objection, the Debtors respectfully represent as follows:

### Preliminary Statement[2]

1.      The JLs seek an extraordinary remedy from this Court – an order lifting the stay such that adjudication of the 3AC Claims filed against the Debtors in this Court would take place in the BVI Court, seemingly while litigation on discovery issues, estimation, and the ultimate allowance and potential equitable subordination of the 3AC Claims continues in these Chapter 11 Cases.

2.      The only reason the JLs provide as cause to lift the stay is to coordinate fact and law determinations allegedly common to four separate U.S. debtors in bankruptcy, and "potentially" others.[3]

3.      The Lift Stay Motion makes a variety of unsubstantiated allegations about cost, efficiency, and 3AC creditors' rights, all while waving away the Debtors' valid and demonstrable concerns about due process, discovery, and secrecy of 3AC's pending BVI Proceeding.

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meaning ascribed to such terms elsewhere in the Objection.

[3] Lift Stay Motion ¶ 38.

4. The glacial pace of the 3AC Proceedings in the BVI Court should not be used against the Debtors who have expeditiously obtained confirmation of the Plan in these Chapter 11 Cases with the goal of making distributions to creditors as soon as possible.

5. There is no cause to lift the stay. While the *Sonnax* Factors are not binding on this Court in determining whether cause exists to lift the stay, an analysis of those factors, as well as an analysis of the Third Circuit's Three-Part Test, reveals that none of the issues courts consider when determining whether to lift the stay are in favor of doing so here. Many of the factors strongly favor the stay remaining in place. As such, the Debtors respectfully request that the Court deny the Lift Stay Motion and allow the adjudication of the 3AC Claims to proceed in these Chapter 11 Cases.

**<u>Relevant Background</u>**

6. On November 28, 2022 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>") [Doc. No. 17].

7. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, this Court entered an order [Docket No. 42] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

8. On December 21, 2022, the United States Trustee for the District of New Jersey (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code (the "<u>Committee</u>") [Docket No. 130].

9.      On May 12, 2023, BlockFi filed its *First Amended Joint Chapter 11 Plan* [Docket No. 875], (as most recently amended at Docket No. 1609 and as may be further amended from time to time, the "Plan") and the accompanying Disclosure Statement [Docket No. 874], as most recently amended at Docket No. 1310, the "Disclosure Statement"). On September 26, 2023, the Court confirmed the Plan and approved the Disclosure Statement on a final basis. The entry of the confirmation order is pending as of the filing of this Objection.

### A. BlockFi's Prepetition Relationship with 3AC

10.     BlockFi Lending LLC ("BlockFi Lending") made a series of overcollateralized loans to Three Arrows Capital, Ltd. ("Three Arrows" or "3AC"). [4]  When the relationship ended, the value of the outstanding loans was approximately $1.085 billion (USD equivalent) (the "Loans").  The Loans were secured by certain digital assets, including Bitcoin (BTC), interests in Grayscale Bitcoin Trust (GBTC), Grayscale Ethereum Trust (ETHE), Grayscale Ethereum Classic Trust (ETCG), Grayscale Digital Large Cap Fund (GLCF), Grayscale Zcash Trust, cash, general intangibles, investment property, and financial assets (collectively, the "Collateral").

11.     3AC defaulted on the Loans in June 2022 and BlockFi properly accelerated the Loans and foreclosed on certain Collateral with notice to 3AC. The proceeds of the Collateral were insufficient to repay the obligations under the Loans, so BlockFi initiated arbitration to recover the deficiency amount, including default interest and other fees and costs.

12.     On June 27, 2022, 3AC commenced a liquidation proceeding before the British Virgin Islands ("BVI") Court (the "BVI Proceeding"), which stayed the arbitration. [5] Russell

---

[4] Three Arrows held itself out as a business of investments and short-term opportunities incorporated under the laws of BVI in May 2012.

[5] The Arbitration was initiated by BlockFi to recover on its post-foreclosure deficiency and had nothing to do with any alleged preferences or other avoidance actions by 3AC. As noted above, it was stayed as a result of the 3AC Proceedings.

Crumpler and Christopher Farmer were appointed as joint liquidators and foreign representatives of Three Arrows (the "JLs") and obtained recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code before the U.S. Bankruptcy Court for the Southern District of New York (the "Chapter 15 Court"), Case No. 22-10920 (the "3AC Chapter 15", and together with the BVI Proceeding, the "3AC Proceedings").

13.     Although the 3AC Proceedings have been pending for well over a year, they have progressed very little. While the BVI Proceeding is largely sealed, the 3AC Chapter 15 docket primarily consists of pleadings related to the JLs' attempts to obtain documents and cooperation from Kyle Davies and Su Zhu (the "3AC Founders") with no apparent success to date.[6] The JLs have repeatedly noted that the 3AC Founders have failed to cooperate with the 3AC liquidation and have caused significant delays.[7] The JLs acknowledge that "Davies's failure to provide information and documents has thus made it significantly more difficult for the Foreign Representatives to investigate the Debtor's affairs and the causes of its insolvency…."[8]

---

[6] *See In re Three Arrows Capital, Ltd.*, 647 B.R. 143 (Bankr. S.D.N.Y. 2023) (granting JLs' motion directing Davies to comply with subpoena served via email and social media); *In re Three Arrows Capital, Ltd.*, 647 B.R. 440 (Bankr. S.D.N.Y. 2022) (detailing the JLs' discovery requests and challenges with the 3AC Founders and holding service of subpoena via email and social media on Davies was warranted); *see also Foreign Representatives of Three Arrows Capital, Ltd.'s Motion for an Order (1) Holding Kyle Livingstone Davies to be in Civil Contempt for Failure to Comply with March 30, 2023 Court Order, and (II) Granting Sanctions Against Kyle Livingstone Davies* [3AC Chapter 15 Case, Docket No. 98]. On information and belief, the JLs did not request the same relief for Zhu since he is not a U.S. Citizen.

[7] *See supra*, note 5 (citing opinions and pleadings in the 3AC Chapter 15 regarding the 3AC Founders and the JLs' subpoena attempts).

[8] Reply to Opposition to Davies Contempt Motion at p. 2. Davies took the position that he has renounced his U.S. citizenship. *See Non-Party Kyle Davies': (i) Opposition to Motion for Contempt; and (ii) Cross-Motion to Vacate Orders* [3AC Chapter 15, Docket No. 106]. On August 11, 2023, the Chapter 15 Court entered an order denying the JLs' motion for contempt and sanctions against Davies [Docket No. 112]. Recently, on September 29, 2023, Mr. Zhu was arrested in Singapore following a committal order issued by the Singapore courts for failing to comply with court orders relating to JLs' investigation of 3AC. Perhaps during his four-month prison term Zhu will engage with the JLs, though the extent of his potential cooperation at this time is still unknown. *See Update 1: Joint Liquidators to 'Engage' with 3AC Co-Founder Zhu to Investigate Recovery of Assets, After his Arrest; Co-Founder Davies Remains at Large*, REORG RESEARCH (Sept. 29, 2023, 10:06 AM CDT).

**B.    The 3AC Claims Against BlockFi**

14.    On January 30, 2023, this Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claims (collectively, the "Proofs of Claim") in these Chapter 11 Cases. The Bar Date Order established March 31, 2023, at 5:00 p.m. (prevailing Eastern Time) as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date").

15.    On the General Claims Bar Date, the JLs filed nine duplicative Proofs of Claim with identical addendums against each of the BlockFi Debtors asserting both "Known Claims" and "Unknown Claims" (collectively, the "Initial 3AC Claims").

16.    In the Initial 3AC Claims, the JLs assert that their "Known Claims" include (a) preference claims under BVI and "other applicable law" arising from (i) a payment by 3AC to BlockFi on May 9, 2022, in the amount of $71M, (ii) an interest payment by 3AC on June 3, 2022 of 6,070,123 USDC and (iii) various transfers of cash and digital assets by 3AC, including: 34,225 ETH, 1,905,529 GBTC, 6,150,845 ETHE, 386,477 ETCG, and $1,691,744 and (b) BlockFi's obligations to repay loans made by 3AC in the amount of 2,307.75 BTC (the "BTC Loan"). 3AC asserts BlockFi pledged 31,345 ETH tokens as collateral for the BTC Loan, which "[b]ased on information available" to the JLs, 3AC foreclosed upon prior to the 3AC petition date. For the Unknown Claims, the JLs reserved their rights to assert additional claims, stating they are aware of "multiple other transactions" between and among 3AC and BlockFi, which may include lending transactions and could constitute additional bases for claims by 3AC.

17.    On August 11, 2023, the Debtors filed the *Motion to Estimate the Amount of the 3AC Claims against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (the "Estimation Motion") [Doc. No. 1346] and on August 21, 2023, the Debtors filed the *Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* (the "Claim Objection") [Doc. No. 1375].

18.    On September 13, 2023, the JLs filed their *(A) Objection to Debtors' Motion to Estimate the Amount of the 3AC Claims against the Debtors pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code, and (B) Opposition to Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* [Doc. No. 1484].

19.    Also on September 13, 2023, the JLs filed nine duplicative amended Proofs of Claim against each of the Debtor entities (the "Amended 3AC Claims," and together with the Initial 3AC Claims, the "3AC Claims"), making substantive changes to the Initial 3AC Claims after the Bar Date without leave of Court. The Debtors are analyzing the Amended 3AC Claims and intend to object and seek to disallow the Amended 3AC Claims once the review is complete.

20.    On September 28, 2023, the JLs filed the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts* [Doc. No. 1623] (the "Consolidation Motion") seeking an order from this Court to compel not only itself, but also the foreign BVI Court, 3AC Chapter 15 Court, and the U.S. Bankruptcy Courts presiding over the *Genesis Global Holdco, LLC, et al.* ("Genesis"), *FTX Trading Ltd., et al.* ("FTX"), and *Celsius Network LLC, et al.* ("Celsius") bankruptcies to establish procedures to adjudicate alleged common issues of law and fact in a centralized forum, which the JLs argue should be BVI. *See also* Chapter 15 Case [Docket No. 116] (seeking the same consolidation relief).

21.     Additionally, the JLs filed the Lift Stay Motion and the *Declaration of Grant Carroll* in support of the Lift Stay Motion [Docket No. 1493] (hereinafter cited as the "Carroll Dec."). The JLs assert that cause exists to lift the stay, not only in these Chapter 11 Cases but in at least three others (Genesis, Celsius, and FTX), to allow the BVI Court or 3AC Chapter 15 Court to determine the date 3AC became insolvent, as well as other unidentified alleged common issues of law and fact.[9] The JLs rely on a skewed analysis of the Second Circuit's *Sonnax* Factors, as well as inapplicable and distinguishable caselaw in an effort to establish cause to lift the stay in these Chapter 11 Cases. For the reasons set forth below, the JLs have failed to meet their burden and the Lift Stay Motion should be denied.[10]

## **Objection**

22.     Section 362(a) of the Bankruptcy Code provides that the filing of a petition for relief operates as a stay of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> [and]
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a).

---

[9] The JLs also claim 3AC has preference claims against "other parties" that it has not identified. *See* Consolidation Motion at p. 9.

[10] The JLs seek to speak for the Debtors in paragraph 4 of the Preliminary Statement to the Lift Stay Motion and imply that the Debtors recognize that lifting the stay is appropriate. They based this implication on the fact that the Debtors pointed out in the Estimation Motion and Claim Objection that the JLs had not yet sought to lift the stay. While the Court is fully capable of reading between the lines, the Debtors pointed out the JLs' lack of action in those pleadings to further demonstrate that the 3AC Claims are contingent, unliquidated, disputed, and that the JLs have been completely inactive until now in seeking to prosecute these supposed valuable claims against the Debtors when they have had over a year to do so.

23.    The scope of the automatic stay is broad and stays all proceedings against the

debtors or relating to property of the estate. *In re Gardner,* No. 15-15192 (MBK), 2016 WL

1576700, at *3 (Bankr. D.N.J. Mar. 31, 2016). While Section 362(a) stays a broad range of actions

against a debtor, relief from the automatic stay may be granted for "cause." *See* 11 U.S.C. § 362(f).

24.    A movant for stay relief has the initial burden of establishing that cause exists to

lift the stay. *See, e.g.*, *In re Score Board, Inc.*, 238 B.R. 585, 593 (D.N.J. 1999). "If the movant

fails to make an initial showing of cause…the court should deny relief without requiring any

showing from the debtor that it is entitled to continued protection." *Sonnax Indus., Inc., v. Tri*

*Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990)

("*Sonnax*").

25.    Cause is not defined in the Bankruptcy Code and has been interpreted by courts as

a broad and flexible concept determined based on "the totality of the circumstances in each

particular case." *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic*

*Handling Sys., LLC)*, 304 B.R. 111, 129–30 (Bankr. D.N.J. 2003) (quoting *In re Wilson*, 116 F.3d

87, 90 (3d Cir. 1997)). Courts apply a variety of tests and consider a wide range of factors to assist

in deciding whether cause exists to lift the stay. Courts in the Third Circuit often utilize a three-

part balancing test (the "Three-Part Test") comprised of the following considerations:

(1) [whether] [a]ny 'great prejudice' to either the bankrupt estate or the debtor will
result from continuation of a civil suit;
(2) [whether] the hardship to the [non-bankrupt party] by maintenance of the stay
considerably outweighs the hardship of the debtor; and
(3) [whether] the creditor has a probability of prevailing on the merits of his case.

*See, e.g.*, *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999) (applying the Three-Part

Test to determine whether to lift the automatic stay); *In re Leatherman*, Case No. 18-24818

[Docket No. 27] (Bankr. D.N.J. Apr. 15, 2019) (same); *In re F-Squared Inv. Mgmt. LLC*, 546 B.R.

538, 548 (Bankr. D. Del. 2016) (same); *In re Stone Res., Inc.*, 448 B.R. 361, 371 (Bankr. E.D. Pa.

2011) (applying the Three-Part Test).

26.     Borrowing from the Second Circuit, courts in the Third Circuit may also choose to

consider the following twelve factors outlined in *Sonnax* (the "*Sonnax* Factors") to aid in

determining whether cause exists to lift the stay:

1) whether relief would result in a partial or complete resolution of the issues;
2) lack of any connection with or interference with the bankruptcy case;
3) whether the other proceeding involves the debtor as a fiduciary;
4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5) whether the debtor's insurer has assumed full responsibility for defending it;
6) whether the action primarily involves third parties;
7) whether litigation in another forum would prejudice the interests of other creditors;
8) whether the judgment claim arising from the other action is subject to equitable subordination;
9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;
10) the interests of judicial economy and the expeditious and economical resolution of litigation;
11) whether the parties are ready for trial in the other proceeding; and
12) the impact of the stay on the parties and the balance of the harms.

*See, e.g.*, *In re Mid-Atlantic*, 304 B.R. at 130 (citing *Sonnax*); *Ledgemont Int'l Media Holdings*

*LLC v. Barksdale (In re Barksdale)*, 2015 Bankr. LEXIS 3865 (Bankr. D.N.J. Nov. 10, 2015)

(analyzing *Sonnax* Factors to determine whether stay relief was appropriate to allow litigation to

continue in another forum); *In re Patriot Contr. Corp.*, 2006 Bankr. LEXIS 4133, at *7–8 (Bankr.

D.N.J. May 31, 2006) (same). Notably, "[a]ll twelve factors are not necessarily present in a

particular case, and a court need not rely on any plurality of factors in deciding whether to lift the

automatic stay." *In re Mid-Atlantic*, 304 B.R. at 130.

27.     Regardless of which test a Court applies in a lift stay analysis, courts are typically

reluctant to lift the stay to allow general unsecured creditors to pursue litigation outside the

bankruptcy claims administration process absent "extraordinary circumstances." *See In re Eagle Enters., Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) ("Generally, unsecured creditors are entitled to relief from an automatic stay *only* in extraordinary circumstances.") (emphasis added). As one court noted:

> If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. '[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief.'"

*In re Res. Cap., LLC*, 2012 Bankr. LEXIS 3641, at *16 (Bankr. S.D.N.Y. Aug. 8, 2012) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

28.     There is no dispute that 3AC is an unsecured creditor. The JLs have failed to establish that cause exists to lift the stay, let alone make a showing of the "extraordinary circumstances" required to be shown by an unsecured creditor. Under any test or factors-based analysis this Court conducts, the balance weighs heavily in favor of denying the JLs' Lift Stay Motion.

**A. The Third Circuit's Three-Part Test Supports Denying the Lift Stay Motion.**

29.     The JLs do not address the Three-Part Test in the Lift Stay Motion, but this Court could easily dispose of the Lift Stay Motion with this straightforward analysis. Each of the three parts – (1) prejudice; (2) hardship; and (3) probability of success – weigh decisively in favor of denying the Lift Stay Motion.

**i.     Granting the Lift Stay Motion Would Be Highly Prejudicial to the Debtors.**

30.     The first consideration in the Three-Part Test is whether there will be any great prejudice to the estate or the debtors from *continuation* of a civil suit. It is important to note that, unlike some of the other debtors 3AC has filed claims against, the BlockFi Debtors and 3AC were not parties to a prepetition lawsuit, even though the JLs were appointed in June of 2022 and the

Debtors did not file these Chapter 11 Cases until November 28, 2022. This fact alone makes it easy for this Court to conclude that this prong of the Three-Part Test weighs against lifting the stay.

31.     ***Prejudice in BVI Proceeding***. Lifting the stay to allow the JLs to initiate an action against the Debtors in the BVI Court to adjudicate the 3AC Claims will deprive the Debtors of multiple defenses and discovery methods that, by the JLs' own admissions, are simply not recognized by the BVI Court. Mr. Carroll admits, and Mr. Parker agrees, that "insofar as the defendant might seek to assert a procedural defence arising as a matter of US law, or assert a defence as a matter of substantive US law which is not otherwise available under BVI law, those would not be matters which are typically treated as relevant to the determination of the 3AC Claims in the BVI." Carroll Dec. ¶ 11, *see also* ¶ 23; Parker Dec. ¶ 3. The Debtors, as a matter of BVI law, lose the U.S. Bankruptcy Code's safe harbor defenses and the BVI Court does not consider the remaining issues, such as equitable subordination and issues involving Sections 502(d) and 502(h) of the Bankruptcy Code. This loss can only be defined as "highly prejudicial."

32.     Both the Debtors and their creditors will be forced to conform to whatever timeline the JLs and the BVI Court deem appropriate, putting these Chapter 11 Cases, and distributions to creditors, in a state of limbo that could conceivably last for years. Parker Dec. ¶ 11 (Mr. Parker explains that he "would not expect the s245 application [determination of preferences] to be determined before 2025"). The prejudice to the Debtors and their estates is great, and this prong weighs in favor of denying the Lift Stay Motion.

33.     ***Prejudice in the Chapter 15 Case.*** 3AC's request to lift the stay rests solely on potential consolidation of the alleged common issues of fact and law present between its claims against the Debtors, the Genesis Debtors, the FTX Debtors, and the Celsius Debtors. *See* Lift Stay

Motion ¶ 4; Motion to Consolidate ¶¶ 1–5, 16–17, 21–37. There is, however, a single common

issue of law or fact – the date of 3AC's alleged insolvency.  Every other issue must be examined

on a transaction-by-transaction basis.  *See* Parker Dec. ¶¶ 4–6, 14.

34.    The Debtors would also suffer prejudice if the stay were lifted to allow the 3AC

Claims to proceed in the Chapter 15 Case. Instead of litigating against the JLs alone, the Debtors

would be involved in multi-party litigation and the costs and time that such litigation would entail.

The first prong of the Three-Part Test weighs in favor of denying the Lift Stay Motion.

ii.    **The Hardship Caused to the Debtors Outweighs Any Hardship on the JLs.**

35.    The second prong of the Three-Part Test is whether the hardship to the movant in

maintaining the stay considerably outweighs the hardship to the debtor in lifting the stay. The JLs

cannot point to any significant hardship they would suffer by litigating the issues involving the

3AC Claims in this Court. The JLs voluntarily submitted to this Court's jurisdiction in filing the

3AC Claims and other objections and motions in these Chapter 11 Cases. The JLs also have

retained U.S. counsel, who have either already been admitted to practice in this District or have

obtained admission *pro hac vice* to appear in these Chapter 11 Cases. The JLs have made regular

appearances in these Chapter 11 Cases and cannot establish any hardship in continuing to do so.

Moreover, this Court regularly addresses questions of solvency and whether transactions are in the

ordinary course of business and can do so to decide the contested matters involving the 3AC

Claims.

36.    *Harm in the BVI Proceeding*. In strict contrast, the Debtors would incur significant

costs and inconvenience in having to appear before the BVI Court. Actions in the BVI Court

require two separate sets of counsel – barristers and solicitors. The Debtors and witnesses would

be required to travel to the BVI for hearings and trial or face "adverse inferences" from the failure

to do so. Parker Dec. ¶ 9. Evidence can be excluded in the BVI Court if the "maker of the statement is called as a witness" and does not appear at the hearing. *Id*. While it is possible the BVI Court would allow out-of-court statements to be admitted, the parties would have to request permission to do so.  Only the subpoena power of this Court reaches the Debtors' witnesses.

37.     Any purported inconvenience the asserted by the JLs pales in comparison to forcing multiple U.S. debtors from different cases into one foreign proceeding that severely handicaps the rights and due process of US-based parties. The hardship to the Debtors therefore considerably outweighs any hardship on the JLs.

38.     ***Hardship in the Chapter 15 Case.*** As outlined above, the hardship caused to the Debtors and their estates (as well as the estates of Genesis, FTX, and Celsius) is significant.  Rather than litigating with a single party, each of these estates will be burdened by expense and time while the others litigate against the JLs. For example, a deposition wherein 5 parties ask questions will take considerably more time than a deposition solely between 2 parties. The same will be true related to monitoring pleadings and reviewing discovery responses. There can be no argument that litigation between the JLs, the BlockFi Debtors, the Genesis Debtors, the FTX Debtors, and the Celsius Debtors will take more time, effort, and expense than with the BlockFi Debtors and JLs alone.

iii.     **The JLs' Probability of Success is Low.**

39.     The third prong of the Three-Part Test considers whether the movant has a probability of prevailing on the merits of its case. The JLs, by their own repeated admissions, are operating at a severe information deficit caused by meager books and records and the fraud of the 3AC Founders. The JLs face a substantial uphill battle to substantiate the 3AC Claims. Even assuming the JLs can establish the required elements of the 3AC Claims (which the Debtors submit

they cannot), the Debtors have multiple defenses to the 3AC Claims, many of which would not be considered by the BVI Court.[11] Documents produced to the JLs by the Debtors can only assist with a reconstruction of the transactions between the parties and cannot provide any insight into the internal machinations of 3AC prior to the appointment of the JLs. Further, the JLs are going to have extreme difficulty proving up any facts or documents related to 3AC – there is no personal knowledge and they have repeatedly stated that there are no business records.

40.       The JLs have now made two attempts to legitimize the 3AC Claims they have filed and amended in this Court and have still failed to do so. It is highly unlikely that the JLs will prevail on the merits of the 3AC Claims and this prong therefore also weighs in favor of denying the Lift Stay Motion. In considering the great prejudice and considerable hardship that will befall on the Debtors if the stay is lifted, along with the JLs' unlikely success, the Court should deny the Lift Stay Motion.

**B.  The *Sonnax* Factors Also Weigh Heavily in Favor of Denying the Motion.**

41.       Should the Court analyze the relief requested using the *Sonnax* Factors rather than the Three-Part Test, such an analysis will provide the same result – denial of the Lift Stay Motion. The totality of the *Sonnax* Factors weighs heavily in favor of denying the Lift Stay Motion.

**i.  *Sonnax* Factor 1: Whether relief would result in a partial or complete resolution of the issues**

42.       ***Allowing Litigation to Proceed in the BVI.*** Citing to the *Carroll Declaration*, the JLs assert that "the BVI Court is fully capable of reaching a complete resolution of 3AC's Claims." Lift Stay Motion, ¶ 21. Carroll acknowledges that "the BVI Court…will only determine US law issues insofar as they are *considered relevant* to the BVI claim" and therefore US procedural and

---

[11] *See infra*, at ¶¶ 31–32 (explaining that the BVI courts do not recognize defenses under the Bankruptcy Code or other U.S. law and citing evidentiary support for same).

substantive defenses that are not available under BVI law "would not be matters which are typically treated as relevant…in the BVI." Carroll Dec. ¶¶ 10–11. The Debtors have repeatedly reserved their rights in the Estimation Motion and Claim Objection to assert a variety of defenses under the Bankruptcy Code and US law against the 3AC Claims, including the safe harbor defense under 11 U.S.C. § 546(e), which the Carroll Declaration asserts "would not be relevant to the determination of the 3AC Claims…in the BVI." *Id*. at ¶ 23.

43.     The JLs' argument that adjudicating the 3AC Claims in the BVI Proceeding provides a full resolution of the dispute between the parties ignores defenses that the Debtors might have under the Bankruptcy Code and US law, along with key issues involving Sections 502(d) and 502(h) of the Bankruptcy Code and the Debtors' intent to equitably subordinate any Allowed 3AC Claims. The Lift Stay Motion (while ignoring that 3AC voluntarily consented to this Court's jurisdiction) is essentially asking this Court to put these Chapter 11 Cases on hold and force the Debtors to defend the 3AC Claims filed in these Chapter 11 Cases in BVI while rendering the Debtors defenseless but for the few specifically enumerated defenses found under BVI law.

44.     The Carroll Declaration dismisses this significant impairment of the Debtors' due process rights by stating that "the only [US law defense] identified to date is potentially the safe harbor provisions[12]…" and that according to the JLs' US counsel, the safe harbor "may only potentially become relevant…following entry of a judgment by the BVI Court on the 3AC Claims, as to whether such judgment may serve as the basis of an allowed claim against the Debtors in their Chapter 11 cases." Carroll Dec. at ¶ 25. Regardless of the thoughts or feelings of the JLs' U.S. counsel about what defenses are relevant, the adjudication process occurring in the BVI Proceeding would result in a massive due process violation.

---

[12] The Debtors disagree that the safe harbor defense is the only defense provided by US law available to the Debtors in their defense against the 3AC Claims.

45.     ***Allowing Litigation to Proceed in the Chapter 15 Case.*** The JLs make only the conclusory statement that the Chapter 15 Court could afford a complete resolution of the 3AC Claims. What the JLs fail to recognize is that the Chapter 15 Court's decision on the preference action is still not a complete resolution of the issues between the Debtors and 3AC. The JLs would surely seek to use the Chapter 15 Court's judgment as the basis for an allowed claim against the Debtors. Even if this Court agrees with the JLs and concludes that all or a portion of the 3AC Claims meet the definition of Allowed Claims under the Plan, there is still a remaining contested matter on equitable subordination for this Court and this Court only to decide, along with issues involving Sections 502(d) and 502(h) of the Bankruptcy Code.

46.     The two cases cited by the JLs in favor of their position, *Mildred Deli and Patriot Contracting*, have nothing in common with the issues before the Court. *See In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017 (Bankr. S.D.N.Y. Feb. 28, 2018); *In re Patriot Contracting Corp.*, No. 05-33190 DHS, 2006 WL 4457346 (Bankr. D.N.J. May 31, 2006). *Mildred Deli* involved FLSA litigation against the debtor and other non-debtor defendants that had **commenced pre-petition**. *In re Mildred Deli Grocery, Inc.*, 2018 WL 1136017, at *3–4. In lifting the stay, the court found that multiple factors favored the movants, including the fact that completion of the FLSA litigation in the district court would fully resolve the movants' claims. *Id.* at *4. The debtor in *Mildred Deli* did not assert that it had defenses that would be lost if forced to litigate the FLSA claims, and the prepetition case was on the eve of trial when stayed by the bankruptcy. *Id*.

47.     In *In re Patriot Contracting Corp.*, the stay was lifted to allow an insurance claim involving the debtor and other third parties to go forward in a pre-petition state court action where the debtor's insurance company was defending the action and would likely be covering liability

against the debtor. *In re Patriot Contracting Corp.*, 2006 WL 4457346 at *1–4. Here, if the stay

is lifted, there will be no third party defending the Debtors in the BVI Proceedings or covering any

potential judgment entered against them by the BVI Court.

48.    The JLs have not shown that a proceeding in the BVI Court or the 3AC Chapter 15

Case would result in a complete resolution of the issues. As such, *Sonnax* Factor 1 favors this

Court denying the Lift Stay Motion.

     **ii.**    ***Sonnax* Factor 2: Lack of any connection with or interference with the bankruptcy case**

49.    The JLs assert that lifting the stay would not impede the Chapter 11 Cases because

the 3AC Claims are unliquidated. Lift Stay Motion ¶ 27. In support of this argument, the JLs rely

on opinions from two chapter 7 cases, *Barksdale* and *Cicale*, each of which are inapplicable. *See*

*In re Barksdale*, No. 13-25477 (VFP), 2015 WL 9700952 (Bankr. D.N.J. Nov. 10, 2015); *In re*

*Cicale*, No. 05-14462 AJG, 2007 WL 1893301 (Bankr. S.D.N.Y. June 29, 2007).

50.    *In re Barksdale* concerned a motion for reconsideration of the order lifting the stay

brought by the debtor, who wanted the proceeding against him to go forward as a related adversary

in the bankruptcy court rather than in Delaware state court. *Barksdale*, 2015 WL 9700952 at *1–

2. The court upheld the order lifting the stay, finding that numerous factors favored allowing the

case to proceed in state court, including that there was no interference with the case because either

the adversary or state court proceeding needed to be adjudicated and the state court proceeding

was on the eve of trial at the time of the bankruptcy filing. *Id*. at *5, *9.

51.    Similarly, in *In re Cicale*, the movant sought to lift the stay to proceed in state court.

*Cicale*, 2007 WL 1893301 at *1. In granting the motion, the court held that while the debtor's

discharge would be delayed by the state court action, it would also be delayed by the

dischargeability adversary that the movant had brought in the bankruptcy court, and other factors

favored lifting the stay. *Id.* at *4. Setting aside the substantial procedural differences between cases under Chapter 7 and cases under Chapter 11, the JLs are not seeking to lift the stay to continue a proceeding that was well advanced when it was stayed by the filing of these Chapter 11 Cases. In fact, the opposite is true here – the JLs filed no prepetition action against BlockFi, and these Chapter 11 Cases (including the contested matters involving 3AC) are much further along than anything in the 3AC Proceedings. The Debtors filed their Estimation Motion and Claim Objection, the JLs have filed their responses to same, and discovery is ongoing.

52.     The JLs assert that lifting the stay cannot "credibly be characterized as resulting in any *meaningful* interference" with the bankruptcy. Lift Stay Motion, at ¶ 28 (emphasis added). While the Debtors firmly disagree and have demonstrated meaningful interference, meaningful is *not* the standard. Interference in the bankruptcy case does not need to be severe to merit denial of a motion to lift the stay. *In re Curtis*, 40 B.R. 795, 806 (D. Utah 1984) (holding that the effect on the bankruptcy estate is the most important factor and that "[e]ven slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit.").

53.     Forcing the Debtors, who just successfully confirmed the Plan in these Chapter 11 Cases, to put several pending motions on the 3AC Claims and distributions to creditors on hold to participate in an as-yet commenced proceeding in the BVI Court would be an extreme interference in the Chapter 11 Cases. Mr. Parker estimates that the BVI preference proceeding would not be determined until 2025. Parker Dec. ¶ 11.

54.     The JLs consented to the adjudication of the 3AC Claims by filing the Initial 3AC Claims, and again by filing the Amended 3AC Claims. They have sought and received thousands of pages of documents from the Debtors through the discovery vehicles provided by the Federal Rules. Now, instead of meaningfully participating in the Estimation Motion and Claim Objection

that the Debtors were forced to file in response to the 3AC Claims, the JLs seek to charge to the BVI Court to litigate the 3AC Claims in a friendly forum that would deprive BlockFi of multiple defenses, all on the BVI Court's timeline.

55.    The JLs argue that "a reserve may be created for [their claims]" and "discovery in connection with the 3AC Claims can continue." Lift Stay Motion ¶ 27. This casual assertion that both the Estimation Motion and formal discovery on the Claims Objection can and should proceed completely in this Court contradicts the JLs argument on *Sonnax* Factor 1 that the BVI Court can afford a full resolution of the issues, and certainly raises questions of efficiency and judicial economy, as further discussed below regarding *Sonnax* Factor 10. These inconsistencies outline the JLs' desire to have their cake and eat it too – discovery vehicles in the BVI Court are much more limited than they are in this Court. Parker Dec. ¶¶ 6–10. The JLs want to continue using US procedure all while denying the Debtors of their U.S. due process rights and defenses.

56.    While the Debtors are seeking to have this Court estimate the 3AC Claims so that initial distributions to creditors may begin, the Estimation Motion was followed closely by the Claim Objection for a specific reason. A full and final adjudication of the amount of the 3AC Claims enables the Debtors to begin creditor distributions, particularly given the settlement reached on the treatment of the FTX claims.[13] The Debtors have proposed a scheduling order that allows both the Estimation Motion and Claim Objection to be heard and decided by February 2024. In contrast, the JLs have provided no clarity whatsoever on the timing of the BVI Proceedings, which is anticipated to take years. *See* Parker Dec. ¶ 11.

---

[13] The Settlement Agreement between the BlockFi Debtors and FTX Debtors was filed at Docket No. 1605 and was approved by this Court at Docket No. 1644.

57.     Lifting the stay to allow for the JLs to pursue the 3AC Claims in the BVI Court could force the Debtors to hold a reserve for those claims for an indefinite period, a period which will certainly be longer than the time needed by this Court to hear and decide the Claim Objection. Delaying final distributions to creditors to such an extent represents a substantial and damaging amount of interference with these Chapter 11 Cases.

58.     Even if this Court grants the Estimation Motion in full and estimates the 3AC Claims at $0, mooting the reserve issue, if the Lift Stay Motion is granted the Debtors would still be forced to sit and wait for the JLs to sufficiently overcome their "severe information deficit" regarding every creditor they are seeking to join in these consolidated preference actions. The JLs have argued in the Lift Stay Motion and Consolidation Motion that they seek to consolidate their preference claims against the BlockFi Debtors with the claims against FTX, Genesis, Celsius, and "potentially among others."[14] Lift Stay Motion ¶ 38. While the Debtors in this case have provided fulsome responses to the discovery requests by the JLs and will continue to do so as appropriate, there is no way to know whether the JLs will receive similar cooperation in all cases they seek to "consolidate." If the stay is lifted, the Debtors will be at the mercy of the JLs and the BVI Court to move along the preference proceedings at whatever pace they see fit. The potential years before resolution represents a substantial interference in these Chapter 11 Cases. For these reasons, *Sonnax* Factor 2 weighs in favor of denying the Lift Stay Motion.

---

[14] A further discussion of the JLs argument on consolidating these issues before the BVI Court is found below in *Sonnax* Factor 10. It is not clear if the JLs even intend to actually include such other creditors in the consolidated action it wants to pursue in BVI involving BlockFi, Genesis, Celsius, and FTX.

      iii.      ***Sonnax* Factor 3: Whether the other proceeding involves the debtor as a fiduciary.**

59.      The Debtors agree that the 3AC Claims are not asserted against them in their capacity as fiduciaries, and therefore *Sonnax* Factor 3 is not relevant to the Lift Stay Motion.

      iv.      ***Sonnax* Factor 4: Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action.**

60.      The JLs argue that "one of the most obvious reasons to lift the stay" is that the BVI Court is a specialized tribunal with knowledge of BVI preference law.[15] Lift Stay Motion ¶ 30. While the case cited by the JLs, *In re Cortuk*, No. CV 18-2626 (BRM), 2019 WL 2171481 (D.N.J. May 20, 2019), appears to affirm a bankruptcy court decision that found that a foreign court would be more familiar with foreign law, the bankruptcy court never drafted an opinion addressing the *Sonnax* Factors because the issue was before the court on an objection to a consent order lifting the stay. Rather, the district court reviewed a transcript of the hearing in which Judge Gravelle discussed the factors. Regarding *Sonnax* Factor 4, the court remarked:

> Number four, questions whether a specialized tribunal with necessary expertise has been established to hear the cause of action. I'm not so sure about necessary expertise, but what convinces me here that satisfies this factor is that there are a number of…defendants, **who are foreign entities**, over which this Court has **no jurisdiction**. Those actions…would necessarily have to be brought in foreign jurisdictions.

*Matter of Cortuk,* No. 17-34019 (CMG), (Bankr. D.N.J Feb. 19, 2018) (Doc No. 51) (Hr'g. Tr. 47:4-12). The court in *Cortuk* primarily found *Sonnax* Factor 4 to favor lifting the stay because of a lack of jurisdiction over foreign defendants. Here, the JLs have submitted to the jurisdiction of this Court by filing the 3AC Claims and the Lift Stay Motion does not argue otherwise.

---

[15] The JLs understandably do not make a similar assertion regarding the S.D.N.Y. Bankruptcy Court which oversees the 3AC Chapter 15, as the Chapter 15 Court is just as much a "specialized tribunal" as this Court.

61.    In *In re Curtis*, one of the earliest cases to compile the factors that later became known as the *Sonnax* Factors, the court cited to a number of cases that addressed the concept of specialized tribunals. *Curtis*, 40 B.R. at 800. None of those cases stand for the proposition that a foreign court applying the law of the country where the court is situated amounts to a "specialized tribunal." *See Matter of Gary Aircraft Corp.*, 698 F.2d 775, 784 (5th Cir.1983) (bankruptcy court should defer liquidation of a government contracting dispute to the Board of Contract Appeals); *In re Vogue Instrument Corp.*, 31 B.R. 87 (Bankr. E.D.N.Y. 1983) (court should defer to Armed Services Board of Contract Appeals); *In re Terry*, 12 B.R. 578, 582–83, 7 B.C.D. 1218 (Bankr. E.D. Wis. 1981) (vacating automatic stay to permit state patient compensation panel to adjudicate "wrongful life" malpractice claim against the debtor).

62.    The Carroll Declaration claims that the BVI Court has "unlimited jurisdiction" and may make determinations on issues of foreign law if it is "pleaded and proven as a fact to the satisfaction of the judge." Carroll Dec. ¶ 18. To the extent that it's possible for a court to be both a specialized tribunal and a court of "unlimited" jurisdiction, this Court equally has specialized knowledge of the Bankruptcy Code and jurisdiction over the contested matters between the Debtors and 3AC. This Court is also fully capable of applying foreign law.

63.    To be clear, the BVI law issues are not complex. The JLs assert claims under s245 of the Insolvency Act of 2003. *See* addendums to 3AC Claims. Section 245 states:

Unfair preferences:

§ 245. (1) Subject to subsection (2), a transaction entered into by a company is an
    unfair preference given by the company to a creditor if the transaction—

> (a) is an insolvency transaction;
> (b) is entered into within the vulnerability period; and
> has the effect of putting the creditor into a position which, in the
> event of the company going into insolvent liquidation, will be better
> than the position he or she would have been in if the transaction had

not been entered into.

(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business.

s245 BVI Insolvency Act of 2003; *see also* Parker Dec. ¶ 4–5 (explaining BVI preference claims).

64.    The JLs make clear that the "common issue" under the BVI Insolvency Act is the date of 3AC's insolvency. For the purposes of s245 actions, insolvency occurs when "the company is unable to pay its debts as they fall due." Parker Dec. ¶ 5. U.S. Bankruptcy Courts have the complete ability to apply this straightforward standard to the facts before them and regularly (i) address preference claims, including insolvency issues and ordinary course defenses and (ii) regularly apply state and foreign laws to decide matters before them.

65.    The BVI Court is not a specialized tribunal. While BVI courts apply BVI law, that fact does not amount to cause to lift the stay. *Sonnax* Factor 4 weighs in favor of denying the Lift Stay Motion.

   v.    ***Sonnax* Factor 5: Whether the debtors' insurer has assumed full responsibility for defending it.**

66.    The Debtors agree that no insurer has assumed responsibility for defending the Debtors against the 3AC Claims, and therefore *Sonnax* Factor 5 is not relevant to the Lift Stay Motion.

   vi.    ***Sonnax* Factor 6: Whether the action primarily involves third parties.**

67.    The Debtors agree that the litigation of the 3AC Claims does not involve third parties; therefore, *Sonnax* Factor 6 is not relevant to the Lift Stay Motion.

   vii.    ***Sonnax* Factor 7: Whether litigation in another forum would prejudice the interests of other creditors.**

68.    The JLs argue that BlockFi's creditors would not be prejudiced by lifting the stay because i) no other parties are attempting to recover the same assets through preference actions,

24

and ii) the Debtors can simply create a multimillion-dollar reserve for the 3AC Claims like the Voyager debtors did for an individual creditor. Lift Stay Motion ¶¶ 33–34.

69.     The JLs again cite to completely inapposite cases in support of their argument that *Sonnax* Factor 7 weighs in their favor. *See id.* at ¶ 33 (citing *Musso v. Hirsch*, No. 08-CV-4532 CBA, 2011 WL 4543225 (E.D.N.Y. Sept. 29, 2011) and *In re Rochester Drug Coop., Inc.*, 620 B.R. 699 (Bankr. W.D.N.Y. 2020)). The *Musso* opinion involved a divorce action in which one of the parties became a debtor under Chapter 7. *Musso*, 2011 WL 4543225, at * 1–3. The bankruptcy court lifted the stay to allow the non-debtor ex-spouse to finalize proceedings that would ensure the return of property *to the debtor's estate* by undoing certain fraudulent transfers the debtor had initiated. *Id.* at *12. In *In re Rochester Drug Coop.*, the court lifted the stay because the creditor had a set off right for returned goods arising out of state law that was not a right available to other creditors in the case. *In re Rochester Drug Coop., Inc.*, 620 B.R. at 705–07. Neither the holding in *Musso* nor *Rochester* has any similarity or bearing on the issues presented by the 3AC Claims.

70.     When the Debtors filed these Chapter 11 Cases, their assets became property of the bankruptcy estate for fair and equitable distribution to their creditors. The JLs' argument that there is no prejudice to creditors because no other parties are attempting to recover the same assets is ridiculous. The JLs are seeking a recovery of estate funds. Every dollar that the JLs may recover in the 3AC Claims litigation for distribution to their creditors is a dollar less for the general unsecured creditors of BlockFi.

71.     The JLs assertion that a massive reserve for the 3AC Claims is warranted because a completely different debtor confirmed a Chapter 11 plan that contained a large reserve for a preference claim is equally absurd. The facts and circumstances surrounding the preference claim reserve in a separate bankruptcy case are wholly irrelevant to the Debtors' challenges to the 3AC

Claims. And just as every dollar that goes toward the 3AC Claims means that much less for BlockFi's creditors, every dollar reserved while the Debtors wait for a resolution on the 3AC Claims is a dollar less that can go toward distributions.

72.     Each of these considerations applies equally to a "consolidated" action in the Chapter 15 Court in a litigation that involves the JLs, the Debtors, and the debtors in the Genesis, FTX, and Celsius bankruptcy cases. That, too, would delay resolution of these Chapter 11 Cases. As such, *Sonnax* Factor 7 favors the stay remaining in place.

   **viii.    *Sonnax* Factor 8: Whether the judgment claim arising from the other action is subject to equitable subordination.**

73.     The JLs spend very little time addressing this factor, claiming that it only becomes relevant when the movant has a security interest and citing to *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) for that proposition. While *Poughkeepsie* does discuss equitable subordination of a secured creditor, it does not in any way state or imply that this factor can *only* be considered when a secured creditor moves to lift the stay.

74.     The Debtors recently confirmed the Plan in these Chapter 11 Cases that explicitly provides that they will seek to equitably subordinate the 3AC Claims to the extent any portion is deemed an Allowed Claim[16] by this Court. Should the stay be lifted and the 3AC Claims be adjudicated to judgment in the BVI Proceedings or the Chapter 15 Court, this Court will still have to determine the allowance of the 3AC Claims pursuant to the Plan and decide whether to equitably subordinate any Allowed 3AC Claims under the terms of the Plan. As such, *Sonnax* Factor 8 weighs in favor of this Court denying the Lift Stay Motion.

---

[16] As such terms are defined in the Plan.

      ix.    **_Sonnax_ Factor 9: Whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor.**

75.      The Debtors agree with the JLs that _Sonnax_ Factor 9 is not relevant to the Lift Stay Motion.

      x.    **_Sonnax_ Factor 10: The interests of judicial economy and the expeditious and economical resolution of litigation.**

76.      The JLs argue that the judicial economy factor favors lifting the stay because there are core legal and factual issues involved in the 3AC Claims and the JLs' claims against Genesis, FTX, Celsius and possibly other parties. They contend that forcing the JLs to litigate those claims in different bankruptcy courts is inefficient, costly, and risks inconsistent outcomes. Lift Stay Motion ¶¶ 38–41. Further, the JLs argue that the BVI Court (and the 3AC Chapter 15 Court) have a greater interest in resolving the 3AC Claims than this Court. _Id_. at ¶ 41.

77.      The JLs cite to several cases that, like all the previous cases cited in the Lift Stay Motion, bear no resemblance to this matter.[17] Every single case concerned prepetition litigation or prepetition judgments obtained by the movant such that judicial economy, along with consideration of other factors, weighed in favor of lifting the stay. The JLs have never commenced a lawsuit or other proceeding against the Debtors in the BVI regarding the 3AC Claims, so it cannot possibly be argued that starting anew in the BVI when the Estimation Motion and Claim Objection are already pending and being litigated before this Court will somehow increase judicial economy. Quite the contrary, there has been nothing economic or expedient about the 3AC Proceedings to date.

---

[17] _In re Lyondell Chem. Co._, 402 B.R. 596, 609–10 (Bankr. S.D.N.Y. 2009); _In re Patriot Contracting Corp._, Case No. 05-33190 (DHS), 2006 WL 4457346, at *3 (Bankr. D.N.J. May 31, 2006); _In re SCO Grp., Inc._, 395 B.R. 852, 859 (Bankr. D. Del. 2007); _In re Chatkin_, 465 B.R. 54, 62 (Bankr. W.D. Pa. 2012); _In re Davis_, 91 B.R. 470, 471 (Bankr. N.D. Ill. 1988); and _In re Aerovias Nacionales De Colombia S.A. Avianca_, 345 B.R. 120, 124 (Bankr. S.D.N.Y. 2006).

78.     The JLs' contention that core legal and factual issues on their various preference claims against other debtors somehow requires consolidated proceedings is unsupported. As an initial matter, all preference claims, whether brought under the Bankruptcy Code or BVI law, will have the same core legal elements involved because the Bankruptcy Code and BVI statutory scheme define what elements must be met to clawback a preferential transfer.

79.     There is but one core issue – the date of insolvency. The issue of whether certain payments or transfers are preferences depends solely on the factual background to each individual payment or transfer. Under both BVI and US law, preferences are looked at on an individual, transaction-by-transaction basis. Parker Dec. ¶¶ 4–6, 14.

80.      Each of the parties and the Debtors had different agreements of various types and structures with 3AC and each transfer alleged to be preferential must be independently examined, so there is little to be gained in efficiency by forcing them to be consolidated. In fact, the JLs' unorthodox demand that multiple bankruptcy courts lift the stay—forcing the debtors before those courts to defend against preference litigation in a foreign country, stripped of numerous defenses and discovery vehicles—is a recipe for additional litigation, appeals, and substantial amounts of delay.

81.     Even litigation in the Chapter 15 Case does not promote judicial economy. A court will still need to examine each transaction by each party, and requiring the Chapter 15 Court to do so for at least four different significant debtors absent a familiarity with the cases will also cause additional litigation and substantial amounts of delay.

82.     The JLs are correct that the litigation of their preference claims against multiple debtors in multiple courts may result in different outcomes, but that is neither unusual nor unexpected when the only thing the various litigations will have in common is that 3AC is the

party bringing the claims. The JLs have failed to demonstrate how the potential outcome of one preference action, which would involve a fact-specific inquiry into the transactions and applicable defenses between the two parties, could be used advantageously against the JLs by a different party. Even on the issue of insolvency, 3AC will be given a full and fair opportunity to present its insolvency position on its claims in the U.S. The same cannot be said for the Debtors if forced to litigate in the BVI.

     **xi.**    ***Sonnax* Factor 11: Whether the parties are ready for trial in the other proceeding.**

83.     The JLs gloss over the readiness factor, acknowledging that the 3AC Claims are not ready for trial in the BVI Court or in the 3AC Chapter 15. Nevertheless, the JLs argue that since a trial is not about to begin in this Court, Factor 11 somehow weighs in favor of lifting the stay or is neutral. Lift Stay Motion ¶ 46. As an initial matter, this factor does not call for an analysis of what stage the 3AC Claims are in the bankruptcy proceedings. The Estimation Motion and Claim Objection have been briefed other than the final reply from the Debtors, and the parties are engaged in discovery.

84.     On September 20, 2023, the JLs appeared before this Court at the status conference on the 3AC Contested Matters. Alongside the Debtors, the JLs represented to the Court that the parties would work on a proposed scheduling order for the adjudication of the 3AC Contested Matters. The Debtors have since filed a proposed scheduling order at Docket No. 1614 (attached to this Objection for reference) and sent it to the JLs for feedback. The proposed scheduling order provides for a resolution on the 3AC Claims *in full* by early February 2024. While the Debtors have not yet received a response from the JLs, they stand ready and willing to work out a reasonable *but efficient* timeline for the 3AC Claims and related contested matters.

85.     Not only are the 3AC Claims not ready for trial in the BVI Court, the JLs have not even filed the initial application necessary to have the preference claims heard, nor have the JLs decided to admit or reject the Debtors' placeholder claim that was filed out of an abundance of caution since the BVI system does not appear to provide a bar date for claims. Even if the JLs began the process immediately, a BVI decision is not expected until 2025 absent an order of expedition (which is not likely). *See* Parker Dec. ¶ 11. As such, *Sonnax* Factor 11 strongly favors the stay remaining in place.

**xii.    *Sonnax* Factor 12: Impact of the stay on the parties and the balance of the harms.**

86.     The JLs argue that *Sonnax* Factor 12 weighs in favor of lifting the stay because they would be forced to litigate in multiple forums and that they and their creditors alone would bear the cost, delay, and the risk of preclusive effects. The JLs' position completely ignores that the Debtors, as another entity in bankruptcy with claims against similarly situated debtors, will likely also be required to litigate in courts other than this Court.[18] In these dueling debtor situations, such a result is inevitable.

87.     The important difference here—that the JLs conveniently ignore—is that litigation before the BVI Court strips the Debtors of due process and defenses they would have before this Court. In addition to the detrimental effects of losing certain defenses to the 3AC Claims, the Debtors would not have the benefit of being able to take depositions, and the secretive nature of proceedings before the BVI Court means that the JLs could proceed with applications to the court on matters affecting the Debtors of which they would receive no notice whatsoever. *See* Parker Dec. ¶¶ 12–13.

---

[18] The Debtors Settlement Agreement with FTX specifically contemplates that the Debtors will consensually lift the stay to allow certain matters to be heard by the FTX Bankruptcy Court in Delaware.

88.    While litigating before this Court may present some logistical challenges for foreign entities, the JLs would not lose any substantive rights. In fact, this Court is just as capable as a BVI court in applying BVI preference law, which is similar to Section 547(b) of the Bankruptcy Code. [19] The JLs would continue to benefit from the expansive discovery available under the Federal Rules, a fact they clearly recognize by noting that "discovery in connection with the 3AC Claims can continue" in this Court even if the stay were lifted. Lift Stay Motion ¶ 27. Given the JLs' information deficit, it is unsurprising that they would need to utilize broad discovery to bolster their claims. But they should not be able to have their cake and eat it too by taking advantage of rights available under the Bankruptcy Code while relegating the Debtors to a forum that reduces the Debtors' due process rights and defenses.

## **Conclusion**

89.    An analysis of "cause" to lift the stay, including the Third Circuit's Three-Part Test and the Second Circuit's *Sonnax* Factors, make clear that cause does not exist to grant the JL's Lift Stay Motion.

**WHEREFORE**, the Debtors respectfully request entry of an order denying the Lift Stay Motion and granting the Debtors such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank]*

---

[19] Bankruptcy Courts regularly apply foreign law on preferences, including that of the BVI. *See In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018).

Respectfully Submitted,

Dated: October 3, 2023                    /s/ *Michael D. Sirota*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**Exhibit A**

**Debtors' Proposed Scheduling Order for 3AC Contested Matters**

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

|  |  |
|---|---|
| In re:<br>BLOCKFI INC., *et al*.,<br>Debtors.[1] | **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered)<br><br>Chapter 11 |

## DEBTORS' NOTICE OF PROPOSED SCHEDULING ORDER ON 3AC MATTERS

TO:    THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Debtors"), as debtors

and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"),

hereby file this *Notice of Proposed Scheduling Order on 3AC Matters*.

---

[1] The Debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

**WHEREAS**, on August 11, 2023, the Debtors filed the *Motion to Estimate the Amount of the 3AC Claims against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (the "Estimation Motion") [Doc. No. 1346];

**WHEREAS**, on August 21, 2023, the Debtors' filed the *Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* (the "Claim Objection") [Doc. No. 1375];

**WHEREAS**, on September 13, 2023, the Joint Liquidators of Three Arrows Capital, Ltd. filed their *(A) Objection to Debtors' Motion to Estimate the Amount of the 3AC Claims against the Debtors pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code, and (B) Opposition to Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* [Doc. No. 1484];

**WHEREAS**, on September 13, 2023, the Joint Liquidators of Three Arrows Capital, Ltd. filed amended Proofs of Claim against the Debtors making substantive changes to their original claims after the Bar Date without leave of Court;

**WHEREAS**, on September 13, 2023, the Joint Liquidators of Three Arrows Capital, Ltd. filed their *Motion for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. §362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "Lift Stay Motion") [Doc. No. 1492], and set the Lift Stay Motion for hearing on October 10, 2023; and

**WHEREAS**, on September 20, 2023, the parties appeared before this Court at a status hearing regarding the Estimation Motion and Claim Objection.

**NOW**, **THEREFORE**, the Debtors submit this proposed scheduling order attached hereto as **Exhibit A**.  The Debtors will continue to work with 3AC and other interested parties on an agreed scheduling order but files this notice to inform the Court that the Debtors intend to submit this proposed scheduling order for discussion during the hearing on October 10, 2023 if the parties are unable to reach an agreement on scheduling.

Dated: September 27, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

## **EXHIBIT A**

## **PROPOSED SCHEDULING ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>    Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>**Hearing Date and Time:**<br>**October 10, 2023 at 11:00 a.m. (ET)** |

## <u>SCHEDULING ORDER ON 3AC MATTERS</u>

    The relief set forth on the following pages, numbered two (2) through four (4) is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

(Page 2)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | SCHEDULING ORDER ON 3AC MATTERS |

The hearing on the Estimation Motion[2] for the 3AC Claims against the Debtors pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code, for purposes of judicial economy, will be segregated into two parts. The first will address whether estimation is appropriate for Three Arrows' claims. If the Court determines that estimation is appropriate, then a hearing will be held on the amount at which the 3AC Claims shall be estimated. The hearing on the Debtors' Objection to the 3AC Claims will proceed after the estimation process is complete.

## Process for Each Proceeding

Each party will have 30 minutes for opening and closing at each hearing.

All witnesses' direct testimony will be by declaration. Witnesses will be available for cross-examination at the hearing.

## Discovery Available

Neither party may serve more than 50 total requests on the other party.

Neither party may serve more than 10 total interrogatories on the other party.

Neither party may serve any requests for admission.

## Demonstratives

Any contemplated demonstratives to be exchanged no later than 48 hours prior to the start of the respective hearing.

## Part One:  Is estimation appropriate for Three Arrows' claims?

| Date and Time | Event |
|---|---|
| October 18, 2023, at 5:00 p.m. (prevailing Eastern Time) | Parties must designate experts and exchange expert reports |
| Week of October 23, 2023 | Parties may depose fact and expert witnesses |

---

[2] Capitalized terms used but not defined in this Order shall have the meanings provided in the Debtors' Proposed Notice of Scheduling Order.

(Page 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | SCHEDULING ORDER ON 3AC MATTERS |

| | |
|---|---|
| November 6, 2023, at 5:00 p.m. (prevailing eastern time) | Debtors' Reply brief due |
| November 8, 2023, at 5:00 p.m. (prevailing eastern time) | Parties must exchange witness and exhibit lists<br><br>Parties must file a declaration from each witness it plans to use at the hearing |
| Week of November 13, 2023 | Hearing on Part One |

**Part Two:  Determination of the amount at which the 3AC Claims should be estimated**

| Date and Time | Event |
|---|---|
| November 17, 2023, at 5:00 p.m. (prevailing Eastern Time) | Parties must designate experts and exchange expert reports |
| November 27, 2023 – December 8, 2023 | Parties may depose fact and expert witnesses |
| December 11, 2023, at 5:00 p.m. (prevailing eastern time) | Debtors' Reply brief due |
| December 11, 2023, at 5:00 p.m. (prevailing eastern time) | Parties must exchange witness and exhibit lists<br><br>Parties must file a declaration from each witness it plans to use at the hearing |
| Week of December 18, 2023 | Hearing on Part Two |

**Claim Objection**

| Date and Time | Event |
|---|---|
| December 15, 2023 | Debtors file objection to purported amended 3AC proofs of claim |

(Page 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | SCHEDULING ORDER ON 3AC MATTERS |

| | |
|---|---|
| January 5, 2024, at 5:00 p.m. (prevailing Eastern Time) | Parties must designate experts and exchange expert reports |
| January 8, 2024 – January 19, 2024 | Parties may depose fact and expert witnesses (only those not already deposed in the Estimation phase) |
| January 29, 2024, at 5:00 p.m. (prevailing eastern time) | 3AC Response due |
| January 29, 2024, at 5:00 p.m. (prevailing eastern time) | Parties must exchange witness and exhibit lists. Parties must file a declaration from each witness it plans to use at the hearing Parties must file Proposed Findings of Fact and Conclusions of Law |
| 2 days before hearing per claims procedures order in these Chapter 11 Cases | Debtors' Reply due |
| Week of February 5, 2024 | Hearing on Debtors' Objection to 3AC's proofs of claim |