**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

*Attorneys for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## DECLARATION OF CHRISTOPHER PARKER IN SUPPORT OF THE DEBTORS' OBJECTION TO MOTION OF THE JOINT LIQUIDATORS OF THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

I, Christopher Parker KC, make this declaration pursuant to 28 U.S.C. § 1746 and state as follows:

1.    I am a barrister practising from Maitland Chambers, 7 Stone Buildings, Lincoln's Inn, London WC2A 3SZ.  I am a King's Counsel ("KC").  I was called to the Bar of England and Wales in 1984 and the Bar of the British Virgin Islands ("BVI") in 2006.  I became a Queen's Counsel ("QC") in 2008.

2.    I have over 35 years' experience as a practitioner before the Courts of England and Wales.  The procedural rules applicable in the BVI, the Eastern Caribbean Supreme Court Civil Procedure Rules 2000 (as amended), are modelled on the current English Civil Procedure Rules.  I also have been instructed on many cases in the BVI of an international nature.  I consider myself appropriately qualified to provide this Declaration.

3.    Russel Crumpler and Christopher Farmer have been appointed as Joint Liquidators ("Joint Liquidators") of Three Arrows Capital Ltd. (In Liquidation) ("3AC") and filed an Amended Proofs of Claim ("APOCs") in the Chapter 11 proceedings of the BlockFi Debtors ("the Debtors").  They have applied for an order modifying the automatic stay to permit the commencement and adjudication of the claims set forth in the APOCs before the BVI Court or, in the alternative, before the US Bankruptcy Court for the Southern District of New York. The application is supported by a Declaration of Grant Carroll.  I agree with Mr Carroll that the BVI Court will apply its own procedure rather than US law when determining the claims before it, will only determine US law issues insofar as they are considered relevant to those claims and that, therefore,

*"insofar as the defendant might seek to assert a procedural defence arising as a matter of US law, or assert a defence as a matter of substantive US law which is not otherwise available under BVI law, those would not be matters which are typically treated as relevant to the determination of the 3AC Claims in the BVI".*

4.    The pertinent parts of section 245 of the BVI Insolvency Act provide as follows:

*"(1) Subject to subsection (2), a transaction entered into by a company is an unfair preference given by the company to a creditor if the transaction— (a) is an insolvency transaction; (b) is entered into within the vulnerability period; and (c) has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into.*

*(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business*".

5.    Section 244(2) provides that

*"A transaction is an insolvency transaction if— (a) it is entered into at a time when the company is insolvent; or (b) it causes the company to become insolvent"*.

Whilst s8(1)(c) provides that

*"A company....is insolvent if— ……(c) either— (i) the value of the company's liabilities exceeds its assets; or (ii) the company is unable to pay its debts as they fall due"*,

s244(3) provides that for the purposes of s244(2)

*""insolvent" has the meaning specified in section 8(1) with the deletion of paragraph (c)(i)"*.

Therefore the BVI Court would be concerned with whether 3AC was unable to pay its debts as they fell due.

6.    s245 is not limited to transactions involving assets in the BVI.  However, the fact that the assets are abroad and/or the respondents are foreign is a factor that could lead to the BVI Court declining to exercise its jurisdiction or refusing to make an order.  It will be noted that the discretion under s245 whether to grant relief  *"is wide enough to enable the court, if justice requires, to make no order against the other party to the transaction or the person to whom the preference was given.  In particular, if a foreign element is involved the court will*

*need to be satisfied that, in respect the relief sought against him, the defendant is sufficiently connected with [the [jurisdiction] for it to be just and proper to make the order against him despite the foreign element*": Re Paramount Airways [1993] Ch 223.

7.    Any party against whom relief is sought will of course be entitled to appear at all hearings, present evidence and make submissions in opposition to the application.  They will be entitled to ask for the disclosure of documents and at trial cross-examine any witnesses called by the Joint Liquidators.

8.    The application in the BVI is governed by the BVI Insolvency Rules which provide (IR 4) that, with certain exceptions the Civil Procedure Rules apply to insolvency proceedings. Under those rules each party will be obliged to provide to the other parties a list of all directly relevant documents i.e. a document that (a) the party with control of the document intends to rely on; (b) tends to adversely affect that party's case; or (c) tends to support another party's case.  Those documents are to be made available for inspection, an obligation which is usually discharged by sending copies of such documents.

9.    The evidence at trial from witnesses will be in the form of statements of the evidence that they intend to give the contents of which will be verified at the trial by the witness who can then be cross-examined The BVI Court will not try to compel anyone outside the Territory who does not wish to give evidence to do so, though adverse inferences may be drawn from their failure to do so.  The BVI Court will permit as evidence out of court statements the truth of which is to be relied on upon only if the maker of the statement is called as a witness or if the BVI Court gives permission under the Evidence Act 2006.   The scheme of sections 70(2) and 73 of the Evidence Act requires that a party seeking to use first-hand hearsay in civil proceedings without calling the maker of the statement must base his application on one or more of the grounds that (1) it would not be reasonably practicable to call such a witness, (2) doing so would cause undue expense or (3) would unduly delay the matter.  A party seeking to

rely on a deposition taken in the US without calling the person deposed as a witness would need to apply for permission to do so under the Evidence Act 2006.

10.   There is power to depose a witness in the BVI ahead of trial though that would be an exceptional step.   There is also power, I believe rarely used, under CPR 33.15, to ask a foreign court to depose a witness.   CPR 13.15 provides,

*"(1) If a party wishes to take a deposition from a party outside the jurisdiction, the court may direct the issue of a letter of request to the judicial authorities of the country in which the proposed deponent is.*

*(2) A letter of request is a request to a judicial authority to take the evidence of that person, or arrange for it to be taken.*

*(3) If the government of the country to which the letter of request is sent allows a person appointed by the court to examine a person in that country, the court may make an order appointing an examiner for that purpose.*

*(4) A person may be examined under this rule on oath or affirmation or in accordance with any procedure permitted in the country in which the examination is to take place".*

11.   It will be appreciated that the need to provide disclosure and inspection of documents is a lengthy process and the BVI Court's workload is such that, absent any order for expedition, I would not expect the s245 application to be determined before 2025.

12.   The Joint Liquidators have emphasized that a critical issue for the claims is the day when 3AC became insolvent.   Were that issue to be determined by a foreign court in proceedings to which 3AC and the Debtors were parties then in general the BVI Court would view that determination as binding.    The precise rule is that

*"A foreign judgment can give rise to issue estoppel: Carl Zeiss Stiftung v. Rayner & Keeler Ltd (No. 2) [1967] 1 A.C. 853, 918B, 927G, 967B (Lords Reid, Hodson and Wilberforce). The*

*conditions which must be satisfied in such a case are: (1) the judgment relied on as creating the estoppel must be (a) by a court of competent jurisdiction; (b) final and conclusive; and (c) on the merits; (2) the parties (or their privies) must be the same in both sets of proceedings; (3) there must be a clear determination of the issue by the judgment – it must not be merely collateral or* obiter *comment; (4) the issue in the later action must be the same as the issue decided by the judgment in the earlier proceedings: see The Sennar (No. 2) [1985] 1 W.L.R. 490, 499 (H.L.)"*: <u>Mad Atelier International BV v Manes</u> [2020] 1 QB 971 at [47]

A foreign judgment can only give rise to such an estoppel if it would do so in its own jurisdiction.  However, if the BVI Court had already decided the point as between the parties it would not recognise a contrary foreign decision:   see Vervaeke V. Smith [1983] 1 AC 145.

13.    The BVI Court would not therefore view as binding on any party to the application before it any determination by any other Court in proceedings to which that party had not been party.

14.    The Joint Liquidators have filed Notices of Motion in the Chapter 11 proceedings seeking coordination of their claims in the Chapter 11 proceedings of four groups of Debtor companies ("the Debtor Defendants") of which the BlockFi Debtors are one, asking (at para. 4) that *"[A]t a minimum, limited relief should be granted to allow the BVI Court .....to determine the date upon which 3AC became insolvent because of the commonality of this issue to 3AC's claims against multiple parties"*.  The Joint Liquidators would therefore appear to accept that there is no commonality of issue when considering the question of whether the transaction was in "the ordinary course of business".  That issue requires a consideration of the

particular facts of each business relationship: <u>Countrywide Banking Corporation Ltd v Dean</u>

[1998] BCC 105.[2]

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.


Executed on October 2, 2023                         */s/ C R Parker*

                                                    Christopher Parker KC

                                                    Maitland Chambers

---

[2]      *"The approach for ascertaining what constitutes the ordinary course of business is set out by the Privy
Council in Countrywide Banking Corporation Ltd v Dean"*: <u>Emmerson International Corporation v Vekselberg
and others</u> BVIHCM 2013/0160 29 October 2018 per Wallbank J at 71.