Steven R. Wirth, Esq.
New Jersey Bar No. 040681998
E-Mail:  steven.wirth@akerman.com
AKERMAN LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Tel.: (813) 223-7333
Fax: (813) 223-2837

Joanne Gelfand, Esq.
*Admitted Pro Hac Vice*
E-Mail:  joanne.gelfand@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Direct: (305) 982-5694
Tel.: (305) 374-5600
Fax: (305) 374-5095

*Counsel for John Lymn, Creditor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| BLOCKFI INC., et al.,[1] ) | Case No. 22-19361 (MBK) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

**JOHN LYMN'S RESPONSE TO DEBTORS' AMENDED ELEVENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS**

John Lymn, by and through undersigned counsel and pursuant to sections 105(a) and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 9013-2 of the Local Rules of the United States Bankruptcy Court for the District of New

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products, LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

Jersey (the "Local Rules"), the Case Management Order[2] and Claims Procedure Order, responds to the Debtors' Amended Eleventh Omnibus Objection to Certain Claims **(the "Objection")** (Docket No. 1450). In support hereof Mr. Lymn respectfully states:

## PRELIMINARY STATEMENT

1. The Debtors are estopped from pursuing the Objection as to Mr. Lymn's proof of claim. The Debtors represented during solicitation and voting that their objection to Mr. Lymn's claim would be released if Mr. Lymn accepted the Plan and agreed to release his claims against third parties. Relying on the Debtors' release of any objection to his claim plainly set forth in the Plan, Mr. Lymn accepted the Plan and did not opt out of the third party release. After voting closed, the Debtors refused to recognize the release of the objection to Mr. Lymn's claim and prior to confirmation took steps to attempt to fix their specific release of claims objections.

2. The Debtors, during solicitation and voting, cannot represent that they are releasing their pending objection to Mr. Lymn's claim and then reverse course and continue prosecuting their claim objection after Mr. Lymn accepts the Plan and third party release relying on their representation. The whole idea of solicitation is to convince a creditor to accept and rely on the Plan, and the Debtors did just that. Mr. Lymn was convinced to vote in favor of the Plan and agree to the third party release because of the Debtors' release.

3. The Objection to Mr. Lymn's claim should be overruled and his claim allowed in the full amount.

---

[2] Unless otherwise indicated, all defined terms shall have the same meaning as set forth in the Notice of Debtors' Amended Eleventh Omnibus Objection to Certain Claims.

73026361;1

## RELEVANT BACKGROUND

**Debtors' Release of Claims Objections in the Plan and Mr. Lymn's Reliance on the Debtor's Release.**

4.  Under the terms of the Third Amended Joint Chapter 11 Plan (**the "Plan"**), creditors accepting the Plan and not opting out of the third party release (**"Accepting Creditor[s]"**) are entitled to a release from the Debtors of all "causes of action." The Plan defines causes of action broadly and specifically includes "any right *to object to or otherwise contest Claims* or Interests . . . ." Plan at Plan at Art. VIII A (Releases by the Debtors), Art. I (66) (definition of causes of action) (emphasis supplied).[3]

5.  Mr. Lymn is the holder of a Loan Collateral Claim and is an Accepting Creditor. He relied on the Debtors' release of their objections to his claim when casting his vote to accept the Plan and not opt out of the third party release. *See Declaration of John Lymn* attached hereto as Exhibit A at 3, 4 (**the "Lymn Dec."**). But for the release of the claims objection, Mr. Lymn would not have opted out of the third party release. *Id.* at 5, 6.

**The Debtors, After Voting is Closed, Reverse Course on Their Release.**

6.  On September 6, 2023, the Debtors' objected to the claim of Mr. Lymn. *See* Notice of Amendment of Eleventh Omnibus Objections to Certain Claims (Docket No. 1450).

---

[3] The Debtors' release in favor of the Accepting Creditors reads like a general release and provides for their release of all "Cause of Action" whether "known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors would have been legally entitled to assert in their own right". Plan at Art. VIII A (Releases by the Debtors). The Debtors reassured the Accepting Creditors that the Causes of Action being released included claims objections stating that: "*For the avoidance of doubt*, 'Causes of Action' include . . . any right to object to or otherwise contest Claims or Interests . . . ." Plan at Art. 1A (66) (emphasis supplied). On its face, the definition of "causes of action" is broad including "any action, Claim, cross-claim, third-party claim, damage, judgment, cause of action, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, interest, guaranty . . . ." *Id.* Elsewhere, the Plan states that Accepting Creditors are entitled to "a **release from the Debtors of all claims**" other than Retained Preference Claims. Plan at Art. IV C 2 (emphasis suppled).

7. On September 15, 2023, Mr. Lymn cast his ballot accepting the Plan and not opting out of the third party release, believing he was receiving a release from the Debtors of their objections to his claim. Lymn Dec. at 3, 4.

8. Voting closed at 4:00 p.m. on September 15, 2023.

9. On September 21, 2023, the Debtors filed their "Technical Modifications" to the Plan attempting to prevent the Debtors' release of the claims objections in the Plan. (Docket No. 1564).

10. On September 26, 2023, the Court confirmed the Plan and invited Mr. Lymn to raise the issue of the release at the hearing on the Objection to his claim scheduled for October 10, 2023.

**The Plan is Consistent with the Debtors' Release of the Claims Objections.**

11. Mr. Lymn's reading of the Plan was reasonable and supported by other Articles in the Plan. Indeed, the Plan is replete with provisions excepting from their reach the released claims objections. For example, Article VII dealing with objections to claims after consummation of the Plan begins, "Except as otherwise specifically provided in the Plan." Thus, except for the claims released under the Plan, the Wind-Down Debtors can object to claims. Undeniably, the Wind-Down Debtors will have a robust claims objection process as to, *inter alia,* the 10,000 creditors who opted out of the third party release..[4]

---

[4] Article VII B dealing with claims objections by the Wind-Down Debtors states:
> *Except as otherwise specifically provided in the Plan,* after the Effective Date, the Wind-Down Debtors, shall have the sole authority to: (1) File, withdraw, or litigate to judgment, any objections to Claims; and (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court. Plan at Art. VII B (emphasis supplied).

Plan at Art. VII B (emphasis supplied).

12. The Schedule of Retained Causes of Action is also consistent with the release of the Objection to Mr. Lymn's claim. The Schedule specifically states that released claims are not retained providing that:

> *Wind-Down Debtors shall succeed to all rights to commence and pursue any and all Vested Causes of Action,* whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action *other than Causes of Action released, . . .* under the Plan . . . .

Plan at Schedule B (Docket No. 1467) (emphasis supplied).

13. Article IV H, Provisions for implementation of the Plan, excludes released claims from the property vesting in the Wind Down Debtors and is consistent with the Debtors' release providing:

> H. Vesting of Assets in the Wind-Down Debtors
> *[A]ll property* constituting Wind-Down Debtors' Assets, including all Vested Causes of Action of the Debtors (*unless otherwise released, . . .* shall vest in the Wind-Down Debtors as a successor to the Debtors. . . . "

Plan at Art. IV H (emphasis supplied).

14. Article IV I dealing with Preservation of Causes of Action is likewise consistent with the release stating:

> The Wind-Down Debtors . . . expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan [the Debtors Release provision]. Unless any Cause of Action of the Debtors is expressly . . . released . . . the Wind-Down Debtors . . . expressly reserve all such Causes of Action for later adjudication . . . .

Plan at Art IV I (emphasis supplied).

15. Finally, the definition of "*Allowed*" in the Plan again is consistent with the release stating:  "'*Allowed'" means*, with respect to any Claim or Interest . . . (c) a Claim or Interest *Allowed pursuant to the Plan . . . .* " Plan at Art I (16) (emphasis supplied).

## RESPONSE TO DEBTORS' OBJECTION TO MR. LYMN'S CLAIM

**A.  The Debtors Released the objections to Claims and are Barred from Prosecuting the Objection to Mr. Lymn's Claim.**

The Debtors' specifically released the objection to Mr. Lymn's claim in the Plan and they are now barred from prosecuting the objection to his claim.

**B.  The Debtors are Equitably Estopped From Pursuing the Objection to Mr. Lymn's Claim.**

16.  The Debtors are also equitably estopped from prosecuting the Objection against Mr. Lymn. The applicable doctrine of equitable estoppel is designed to prevent injustice by not allowing a party "to repudiate a course of action" which another party relied upon to his detriment. *Knorr v. Smeal,* 178 N.J. 169, 178 (N.J. 2003). Equitable estoppel is founded on the "fundamental duty of fair dealing imposed by law." *Id.* In *Knorr,* the defendant was precluded from obtaining dismissal after belatedly filing the motion because the plaintiff relied on the failure to do so. *Id.* at 180.[5] The doctrine essentially prevents the inequitable assertion of claims which might have existed, unless prevented by estoppel. *Scibek v. Longette,* 339 N.J. Super. 72, 83 (N.J. App. Div. 2001).

17.  The elements of equitable estoppel are a representation made, intentionally or under such circumstances that it was "both natural and probable that it would induce action." *Miller v. Miller,* 97 N.J. 154, 163 (N.J. 1984) (citations omitted). The conduct must be relied on, and the party relying on the conduct must act so as to change his position to his detriment. *Id.*

18.  Debtors Plan, supported by the Official Committee of Unsecured Creditors (the "Committee") released the pending objection to Mr. Lymn's claim. Mr. Lymn relied on the Debtors' release of the claim objection and changed his position to his detriment. Instead of opting

---

[5] The dismissal would also be unfair because the claim was meritorious. *Knorr,* 178 N.J. at 180.

out of the third party release, Mr. Lymn agreed to release third parties to his detriment. At the confirmation hearing, the Debtors advised that over 10,000 creditors opted out of the third party releases. Because of the third party release, Mr. Lymn will be precluded from bringing claims against third parties or joining in lawsuits and class actions against third parties filed by any of the 10,000 creditors opting out of the release.

19. It is patently unfair for the Debtors' to repudiate their explicit release of claims objections where Mr. Lymn relied on the release to his detriment. It is natural, probable and foreseen, that Mr. Lymn would rely on the Plan language releasing the pending objection to his claim. Obviously, the Debtors had concerns about the release when they backtracked at confirmation and tried to reverse course through modification of the Plan. At confirmation, the Debtors painted Mr. Lymn as a scoundrel attempting to pull a fast one and derail the claims objection process reserved for the Wind Down Debtors. Yet, as foreseen by the Debtors and the Committee, Mr. Lymn relied on the Plan proposed, including the release provided as a carrot to him in exchange for voting in favor of the Plan and not opting out of the third party release.

C. **The Valuation of the Collateral Pledged to the Debtors by Mr. Lymn as of the Petition Date is Unfair and Prejudices Mr. Lymn and Provides a Windfall to the Debtors.**

20. Finally, is seems manifestly unfair that the Bitcoin pledged by Mr. Lymn to secure his loan obligation is being valued as of the Petition Date, instead of at a later date. Notably, in the common circumstance where a debtor is the borrower and the creditor a lender, the debtor would never have valued the collateral as of the Petition Date. Instead, the collateral would likely have been valued at the higher value on confirmation thereby reducing any unsecured claim of the lender and reducing the debtor's burden at confirmation, especially if a cramdown ensued.

21. By valuing the collateral as of the Petition Date, the Debtors are receiving a windfall to the detriment of Mr. Lymn who is being prejudiced by a low valuation at the commencement

of the case and the loss of appreciation of value during the case. If the positions were reversed and one of the Debtors was the borrower, the usual scenario, they would have insisted on a valuation later in the case.

## CONCLUSION

22. Based on the foregoing arguments and authorities, John Lymn respectfully requests entry of an order overruling the Objection to his claim, allowing his claim and granting such further and additional relief as may be just and proper.

Dated: October 5, 2023

Respectfully submitted,

By: /s/ Steve R. Wirth
Steven R. Wirth, Esq.
New Jersey Bar No. 040681998
E-Mail: steven.wirth@akerman.com
AKERMAN LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Tel.: (813) 223-7333
Fax: (813) 223-2837

Joanne Gelfand, Esq.
*Admitted Pro Hac Vice*
E-Mail: joanne.gelfand@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Direct: (305) 982-5694
Tel.: (305) 374-5600
Fax: (305) 374-5095

*Counsel for John Lymn, Creditor*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 5, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: */s/ Steven R. Wirth*
    Steven R. Wirth

73026361;1