**Order Filed on October 3, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>       Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

### REVISED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS)

The relief set forth on the following pages, numbered three (3) through eighty-three (83),

is **ORDERED**.

**DATED: October 3, 2023**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

2

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

BlockFi Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[1] having:

a.     commenced, on November 28, 2022 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.     filed,[2] on the Petition Date, the *Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 17] (the "First Day Declaration");

c.     filed, on the Petition Date, the *Joint Plan of Reorganization of BlockFi Inc. And Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 22];

d.     continued to operate their business and manage their property during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

e.     obtained, on January 30, 2023, the entry of the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order");

f.     filed, on May 12, 2023, (i) the *First Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 875], (ii) the *Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 874] (as amended, modified, or supplemented

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable.  The rules of interpretation set forth in Article I.B. of the Plan apply.

[2]     Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

Debtors:           BLOCKFI INC., *et al*.

Case No.           22-19361 (MBK)

Caption of Order:  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(I) APPROVING THE DISCLOSURE STATEMENT RELATING TO
THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI
INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11
OF THE BANKRUPTCY CODE ON A FINAL BASIS AND
(II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11
PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE
(ADDITIONAL TECHNICAL MODIFICATIONS)

from time to time), and (iii) the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 876];

g.  filed, on June 28, 2023, the *Second Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1132] and the *Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1133];

h.  filed, on July 30, 2023, the *Debtors' Supplemental Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Replying to Objections to the Disclosure Statement* [Docket No. 1294];

i.  obtained, on August 2, 2023, the entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 1306] (the "Conditional Disclosure Statement Order"), conditionally approving the Disclosure Statement and approving the confirmation timeline, the solicitation procedures (the "Solicitation Procedures"), the notices of the (i) combined hearing to be held to consider the adequacy of the Disclosure Statement and Confirmation (the "Combined Hearing," and such notice, the "Combined Hearing Notice") and (ii) non-voting status and opt-out forms, the cover letter, and other related forms and ballots (the foregoing materials, collectively, the "Solicitation Packages");

j.  caused the Solicitation Packages and Combined Hearing Notice and the deadline for objecting to the Disclosure Statement and to confirmation of the Plan ("Confirmation") to be distributed on or before August 18, 2023, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules"), the Conditional Disclosure Statement Order, and the

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1573](the "<u>Affidavit of Solicitation</u>");

k.  filed, on August 3, 2023, the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1309] (as amended, modified, or supplemented from time to time) and the *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. And Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1310] (as amended, modified, or supplemented from time to time, the "<u>Disclosure Statement</u>");

l.  filed, on September 4, 2023, the *Plan Supplement for the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1443] (the "<u>Initial Plan Supplement</u>") and caused notice of the filing of the Initial Plan Supplement to be distributed in accordance with paragraph 23 of the Conditional Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1510];

m.  published the Combined Hearing Notice on August 7, 2023, in *The New York Times* (National Edition), and on August 9, 2023, in the *Financial Times* (International Edition) and in *The Royal Gazette* as evidenced by the *Affidavits of Publication* [Docket Nos. 1333, 1334, and 1335] (the "<u>Publication Affidavits</u>" and, together with the Affidavit of Solicitation, the "<u>Affidavits</u>");

n.  filed, on September 8, 2023, the *Notice of Filing of Amended Plan Supplement* [Docket No. 1467] (the "<u>First Amended Plan Supplement</u>");

o.  filed, on September 21, 2023, the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications)* [Docket No. 1564] (as amended, modified, or supplemented from time to time, the "<u>Plan</u>"), attached hereto as **<u>Exhibit A</u>**;

p.  filed, on September 22, 2023, the *Declaration of Mark A. Renzi, Chief Restructuring Officer of BlockFi Inc., in Support of (I) Approval of the Disclosure Statement and (II) Confirmation of the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy*

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

*Code* [Docket No. 1582] (the "Renzi Declaration"), which was admitted into evidence at the Combined Hearing;

q.    filed, on September 22, 2023, the *Declaration of Brett Witherell, Managing Director of Berkeley Research Group, LLC, in Support of the Debtors' Disclosure Statement for, and Confirmation of, the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1583], which was admitted into evidence at the Combined Hearing;

r.    filed, on September 22, 2023, the *Declaration of Scott D. Vogel, Independent Director and Member of the Special Committee of the Board of Directors of BlockFi Inc., in Support of (I) Approval of the Disclosure Statement and (II) Confirmation of the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1584] (the "Vogel Declaration"), which was admitted into evidence at the Combined Hearing;

s.    filed, on September 22, 2023, the *Notice of Filing of Second Amended Plan Supplement* (the "Second Amended Plan Supplement," and, together with the Initial Plan Supplement and the First Amended Plan Supplement, and as may be modified, amended, or supplemented from time to time, the "Plan Supplement") [Docket No. 1585];

t.    filed, on September 25, 2023, the *Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1607] (the "Voting Report"); and

u.    filed, on September 25, 2023, the *Debtors' Memorandum of Law In Support of (I) Final Approval of the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan Of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (II) an Order Confirming the Third Amended Joint Chapter 11 Plan Of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code]* [Docket No. 1608] (the "Confirmation Brief").

(Page | 7)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

The Bankruptcy Court having:

a.  Entered, on August 2, 2023, the Conditional Disclosure Statement Order, among other things, conditionally approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.  set September 11, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline to object to the Disclosure Statement and the Plan (the "Plan Objection Deadline");

c.  set September 11, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

d.  set September 26, 2023, at 1:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code;

e.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f.  held the Combined Hearing beginning September 26, 2023, at 1:00 p.m., prevailing Eastern Time;

g.  heard the statements and arguments made by counsel with respect to final approval of the Disclosure Statement and Confirmation of the Plan;

h.  considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

i.  overruled any and all objections to final approval of the Disclosure Statement, the Plan and confirmation thereof, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Combined Hearing; and

√ with the limited exception of the
U.S. Trustee, which was overruled in part
and sustained in part, as set forth herein

(MBK)

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

j.     taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     **Findings and Conclusions.**  The findings and conclusions set forth herein and on the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.     **Jurisdiction, Venue, and Core Proceeding.**   The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

1408 and 1409.  Approval of the Disclosure Statement and confirmation of the Plan constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) with the Bankruptcy Court having jurisdiction to enter a final order with respect thereto consistent with Article III of the United States Constitution.

3.      **Eligibility for Relief.**  Each Debtor qualifies as a "debtor" under section 109 of the Bankruptcy Code.  As such, the Debtors are proper proponents of the Plan.

4.      **Commencement of these Chapter 11 Cases.**  On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.   On December 21, 2022, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") [Docket No. 130].

5.      **The Bar Dates.**  On January 30, 2023, the Bankruptcy Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order"), setting (a) March 31, 2023 as the last day for filing Proofs of Claim (including Proofs of Claim for Claims arising under Section 503(b) of the

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Bankruptcy Code) against the Debtors that arose (or was deemed to have arisen) before the Petition Date and (b) May 30, 2023 as the last day for filing Proofs of Claim of Governmental Unit (as defined in the Bar Date Order) (the "Governmental Bar Date").  On May 19, 2023, the Bankruptcy Court entered the *Consent Order Extending the Governmental Bar Date to June 13, 2023 for the United States of America* [Docket No. 942], extending the Governmental Bar Date to June 13, 2023, with respect to the United State of America (the "United States").  On June 16, 2023, the Bankruptcy Court entered the *Consent Order Extending the Governmental Bar Date to August 1, 2023 for the United States of America* [Docket No. 1098], further extending the Governmental Bar Date with respect to the United States to August 1, 2023.  On July 21, 2023, the Bankruptcy Court entered the *Consent Order Extending the Governmental Bar Date to August 15, 2023 for the United States of America* [Docket No. 1246], further extending the Governmental Bar Date with respect to the United States to August 15, 2023.

6.     **Burden of Proof.**  The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Furthermore, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.  Each witness who testified and/or submitted a Declaration on behalf of the

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Debtors in connection with Confirmation was credible, reliable, and qualified to testify and/or submit such Declaration as to the topics addressed in his or her testimony.

7.    **Adequacy of the Disclosure Statement.**   The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. All objections to the contents of the Disclosure Statement are overruled.

8.    **Notice.**  The Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Conditional Disclosure Statement Order, the Plan, the Plan Supplement, the Solicitation Packages, the Combined Hearing Notice, the proposed assumption of Executory Contracts and Unexpired Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan, together with the Plan Objection Deadline, the Voting Deadline, and the Combined Hearing, and any applicable bar dates and hearings described in the Conditional Disclosure Statement Order, in compliance with the Bankruptcy Rules, Local Rules, and the procedures set forth in the Conditional Disclosure Statement Order.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

9.      The Solicitation Packages and the Combined Hearing Notice were transmitted and served in compliance with this Bankruptcy Court's orders, and such transmission and service were timely, adequate, and sufficient.

10.      The Filing and notice of the documents included in the Plan Supplement were adequate and proper and in compliance with this Bankruptcy Court's orders.

11.      **Voting Report.**  Prior to the Combined Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Combined Hearing.  As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures.

12.      **Solicitation.**  The period during which Holders in the Voting Classes were required to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

13.      **Voting.**  Holders of Claims in Class 1 (Secured Tax Claims), Class 2 (Other Priority Claims) and Class 4-f (BlockFi Wallet LLC General Unsecured Claims) are Unimpaired, Holders of Claims in Class 11 (Intercompany Claims) and Class 12 (Intercompany Interests) are either Impaired or Unimpaired, and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of Claims in Class 4-d (BlockFi Services, Inc. General Unsecured Claims), Class 4-e (BlockFi Trading LLC General Unsecured Claims), Class 4-g

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

(BlockFi Ventures LLC General Unsecured Claims), Class 4-h (BlockFi Investment Products LLC General Unsecured Claims), Class 4-i (BlockFi Lending II LLC General Unsecured Claims), Class 5 (FTX Facility Claims), Class 6 (FTX Avoidable Transfer Claims), Class 7 (Alameda Claims), Class 8 (3AC Claims), Class 9 (Government Penalty Claims), Class 10 (*De Minimis* Claims), Class 13 (Existing Preferred Equity Interests), Class 14 (Existing Common Equity Interests), Class 15 (SEC Penalty Claims) and Class 17 (State Regulatory Claims) (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan.

14. As evidenced by the Voting Report, Class 3-a (BlockFi Lending LLC Private Client Account Claims), Class 3-b (BlockFi Lending LLC Loan Collateral Claims), Class 3-c (BlockFi International Ltd. Private Client and Interest Account Claims), Class 3-d (BlockFi International Ltd. Loan Collateral Claims), Class 3-e (BlockFi Inc. Interest Account Claims), Class 4-a (BlockFi Lending LLC General Unsecured Claims), Class 4-b (BlockFi International Ltd. General Unsecured Claims), Class 4-c (BlockFi Inc. General Unsecured Claims), and Class 16 (Convenience Claims) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

15. Based on the foregoing, and as evidenced by the Voting Report, each of the Voting Classes have voted to accept the Plan.

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

16.     **Plan Modifications.**   Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of Solicitation constitute technical changes, changes that improve the treatment of Claims, or changes with respect to particular Claims made pursuant to the agreement of the Holders of such Claims and do not materially and adversely affect the treatment of any Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

17.     **Releases, Exculpation, and Injunction.**   The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

18.     **Gatekeeper Provision.**   Article VIII.B of the Plan contains a provision that requires Entities (a) that opted out of the releases contained in Article VIII.B of the Plan or (b)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

were deemed to reject the Plan before they may assert a claim or Cause of Action against a Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.A of the Plan to first obtain a Final Order of the Bankruptcy Court (x) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.A of the Plan and (y) specifically authorizing such Entity to bring such claim or Cause of Action against the applicable Released Party (the "Gatekeeper Provision"). The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in the Plan, shall have jurisdiction to adjudicate the underlying claim or Cause of Action. The Bankruptcy Court finds that absent the Bankruptcy Court's approval of the Gatekeeper Provision, the Committee Settlement Parties would not have been willing to participate in the Committee Settlement. The Bankruptcy Court admitted the testimony of Scott D. Vogel, independent director and member of the special committee of the board of directors of Debtor BlockFi Inc., regarding his investigation into potential claims and causes of actions against certain of the Debtors' insiders and the settlement reached between the Debtors, the Debtors' insiders and the Committee. Mr. Vogel credibly provided that, were it not for the inclusion of the Gatekeeper Provision in the Plan, the Committee Settlement Parties would not have entered into the Committee Settlement, thereby jeopardizing

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

the global settlement between the Debtors, the Committee Settlement Parties and the Committee. Furthermore, approval of the Gatekeeper Provision will, among other things, prevent frivolous litigation against the Committee Settlement Parties, each of whom will be instrumental in making distributions to the Debtors' stakeholders and in assisting with pursuing claims against certain other bankruptcy estates. Based on the foregoing, the Bankruptcy Court finds that the Gatekeeper Provision is necessary, appropriate, and critical to the effective and efficient administration, implementation, and consummation of the Plan. For the avoidance of doubt, pursuant to the Gatekeeper Provision, the Bankruptcy Court shall determine whether a claim or Cause of Action asserted against a Released Party is (a) a claim or Cause of Action against the Debtors which is compromised under the Plan or (b) a direct or derivative claim with the latter being released under the Plan.

19.    **The Committee Settlement.**  The Committee Settlement constitutes a good-faith compromise and settlement of all Claims, Causes of Action, disputes, and controversies released, settled, compromised, or otherwise resolved between the Debtors, the Committee Settlement Parties, and the Committee. The Committee Settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

20.    **Compliance with the Requirements of Section 1129 of the Bankruptcy Code**. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

(a)    **Proper Classification.**  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into sixteen Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

(b)    **Unimpaired Classes.**  Article III of the Plan specifies that Claims in Class 1 (Secured Tax Claims), Class 2 (Other Priority Claims), and Class 4-f (BlockFi Wallet LLC General Unsecured Claims) are Unimpaired, and Claims in Class 11 (Intercompany Claims) and Class 12 (Intercompany Interests) are either Impaired or Unimpaired under the Plan.  Article II of the Plan specifies that Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and all fees due and payable

(Page | 18)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

pursuant to section 1930 of title 28 of the United States Code before the Effective Date will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(c)     **Specified Treatment of Impaired Classes.** <u>Article III</u> of the Plan specifies that Claims and Interests, as applicable, in the following Classes (collectively, the "<u>Impaired Classes</u>") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes, in compliance with section 1123(a)(3) of the Bankruptcy Code:

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

| Class | Designation |
|---|---|
| 3-a | BlockFi Lending LLC Private Client Account Claims |
| 3-b | BlockFi Lending LLC Loan Collateral Claims |
| 3-c | BlockFi International Ltd. Private Client and Interest Account Claims |
| 3-d | BlockFi International Ltd. Loan Collateral Claims |
| 3-e | BlockFi Inc. Interest Account Claims |
| 4-a | BlockFi Lending LLC General Unsecured Claims |
| 4-b | BlockFi International Ltd. General Unsecured Claims |
| 4-c | BlockFi Inc. General Unsecured Claims |
| 4-d | BlockFi Services, Inc. General Unsecured Claims |
| 4-e | BlockFi Trading LLC General Unsecured Claims |
| 4-g | BlockFi Ventures LLC General Unsecured Claims |
| 4-h | BlockFi Investment Products LLC General Unsecured Claims |
| 4-i | BlockFi Lending II LLC General Unsecured Claims |
| 5 | FTX Facility Claims |
| 6 | FTX Avoidable Transfer Claims |
| 7 | Alameda Claims |
| 8 | 3AC Claims |
| 9 | Government Penalty Claims |
| 10 | *De Minimis* Claims |
| 13 | Existing Preferred Equity Interests |
| 14 | Existing Common Equity Interests |
| 15 | SEC Penalty Claims |
| 16 | Convenience Claims |
| 17 | State Regulatory Claims |

(d)    **No Discrimination.**   The Plan provides for the same treatment by the

Debtors for each Claim or Interest in each respective Class unless the Holder of a particular

Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, and

complies with section 1123(a)(4) of the Bankruptcy Code.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

(e)     **Adequate Means for Plan Implementation.**  The provisions in Article IV and elsewhere in the Plan and the Plan Supplement, and in the exhibits and attachments to the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, in satisfaction of the requirements of section 1123(a)(5) of the Bankruptcy Code.

(f)     **Prohibition of Issuance of Non-Voting Securities.**  On the Effective Date, the Wind-Down Debtors' Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtors.  The Wind-Down Debtors shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtors' Oversight Committee.  On or prior to the Effective Date, the Wind-Down Debtors' organizational documents will be amended to prohibit the issuance of non-voting equity securities.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(g)     **Designation of Officers, Directors, or Trustees.**  Article IV.D.1 of the Plan provides for the formation of the Wind-Down Debtors.  Mohsin Meghji will serve as Plan Administrator.  The Wind-Down Debtors shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtors' Oversight Committee, which will consist of Greg Dingle, Elisabeth Cabaras, Eleanor Fisher and Joel Edwards (jointly as one member),

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

and Brendon Ishikawa.  The selection of the Plan Administrator, and the provisions of the Plan and the Plan Administrator Agreement regarding the potential selection of successors to such persons, is consistent with the interests of Holders of Claims and Interests and public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(h)    **Impairment/Unimpairment of Classes of Claims and Interests.**  Article III of the Plan specifies that some Classes of Claims are Impaired and others are not Impaired, as permitted by section 1123(b)(1) of the Bankruptcy Code.

(i)    **Assumption and Rejection.**  As permitted by section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides that, on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise (all subject to Article IV.O of the Plan), shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) was previously assumed, assumed and assigned, or rejected by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume, assume and assign, or reject Filed on or before the

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Confirmation Date that is pending on the Effective Date; (4) is an Insurance Contract; or (5) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases. The Debtors' decisions to assume or reject certain Executory Contracts and Unexpired Leases, as provided in Article V of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment. The Debtors have demonstrated adequate assurance of future performance of the assumed Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code by the Wind-Down Debtors.

(j) **Settlement/Retention of Claims or Interests.** In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Committee and the Committee Settlement Parties, the settlements and compromises incorporated in the Plan constitute a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

(l)     **Additional Plan Provisions.**   The Plan includes other discretionary provisions that are approved in various parts of this Confirmation Order.  The inclusion of such provisions is consistent with section 1123(b)(6) of the Bankruptcy Code.

21.    **Compliance with the Bankruptcy Code.**  The Debtors have complied with the applicable provisions of the Bankruptcy Code and satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

(a)     is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code; and

(b)     complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule, and regulation, the Conditional Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating votes on the Plan.

22.    **Good Faith.**  The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.

23.    **Payment for Services of Costs and Expenses.**  Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these Chapter 11

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Cases, or in connection with the Plan and incident to these Chapter 11 Cases, shall be subject to the approval of the Bankruptcy Court for reasonableness, in compliance with section 1129(a)(4) of the Bankruptcy Code.

24.     **Directors, Officers, and Successors**.  The Debtors have disclosed the names of the individuals who will serve as Plan Administrator and as members of the Wind-Down Debtors' Oversight Committee, and the appointment of such persons is consistent with the interests of creditors and equityholders and with public policy, in compliance with section 1129(a)(5) of the Bankruptcy Code.

25.     **No Rate Changes.**  Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan does not propose any rate change subject to the jurisdiction of any governmental regulatory commission.

26.     **Best Interest of Creditors.**   The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations or at, prior to, or in connection with the Combined Hearing:  (a) are reasonable; (b) utilize reasonable and appropriate methodologies and assumptions;  (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective

Date, under chapter 7 of the Bankruptcy Code.

27.     **Acceptance by Certain Classes.**  All voting Classes - Class 3-a (BlockFi Lending

LLC Private Client Account Claims), Class 3-b (BlockFi Lending LLC Loan Collateral Claims),

Class 3-c (BlockFi International Ltd. Private Client and Interest Account Claims), Class 3-d

(BlockFi International Ltd. Loan Collateral Claims), Class 3-e (BlockFi Inc. Interest Account

Claims), Class 4-a (BlockFi Lending LLC General Unsecured Claims), Class 4-b (BlockFi

International Ltd. General Unsecured Claims), Class 4-c (BlockFi Inc. General Unsecured Claims)

and Class 16 (Convenience Claims) - voted in favor of the Plan. Nevertheless, Class 4-d (BlockFi

Services, Inc. General Unsecured Claims), Class 4-e (BlockFi Trading LLC General Unsecured

Claims), Class 4-g (BlockFi Ventures LLC General Unsecured Claims), Class 4-h (BlockFi

Investment Products LLC General Unsecured Claims), Class 4-i (BlockFi Lending II LLC General

Unsecured Claims), Class 5 (FTX Facility Claims), Class 6 (FTX Avoidable Transfer Claims),

Class 7 (Alameda Claims), Class 8 (3AC Claims), Class 9 (Government Penalty Claims), Class 10

(*De Minimis* Claims), Class 13 (Existing Preferred Equity Interests), Class 14 (Existing Common

Equity Interests), Class 15 (SEC Penalty Claims) and Class 17 (State Regulatory Claims) are

impaired under the Plan and are deemed to reject the Plan.  Because the Plan has not been accepted

by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), solely

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

28.    **Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims.**  The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Wallet Account Claims, Postpetition Digital Asset and Cash Claims and Post-Effective Date Deposits under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

29.    **Acceptance by at Least One Impaired Class.**  The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

30.    **Feasibility.**  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Hearing is reasonable, persuasive, and credible, has not been controverted by other persuasive evidence, and establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization except as contemplated by the Plan itself.

31.     **Payment of Fees.**  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  <u>Articles II.G</u> and <u>XII.C</u> of the Plan provide for the payment of all fees due and payable under 28 U.S.C. § 1930 by each of the Debtors and/or Wind-Down Debtors (or the Plan Administrator on behalf of the Wind-Down Debtors).

32.     **Retiree Benefits.**  The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

33.     **Domestic Support Obligations, Debtors as Individuals, and Nonprofit Corporations.**  Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

34.     **No Unfair Discrimination; Fair and Equitable.**    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to Class 4-d (BlockFi Services, Inc. General Unsecured Claims), Class 4-e (BlockFi Trading LLC General Unsecured Claims), Class 4-g (BlockFi Ventures LLC General Unsecured Claims), Class 4-h (BlockFi Investment Products LLC General Unsecured Claims), Class 4-i (BlockFi Lending II LLC General Unsecured Claims), Class 5 (FTX Facility Claims), Class 6 (FTX Avoidable Transfer Claims), Class 7 (Alameda Claims), Class 8 (3AC Claims), Class 9 (Government Penalty Claims), Class 10 (*De Minimis* Claims), Class 13 (Existing Preferred Equity Interests), Class 14 (Existing Common Equity Interests), Class 15 (SEC Penalty Claims) and Class 17 (State Regulatory Claims). The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Specifically, to the extent Class 11 (Intercompany Claims) or Class 12 (Intercompany Interests) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting

| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in Declarations filed in connection with, the Combined Hearing regarding the Debtors' classification and treatment of Claims and Interests (x) is reasonable persuasive, credible, and accurate; (y) utilizes reasonable and appropriate methodologies and assumptions; and (z) has not been controverted by other credible evidence. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

35. **Only One Plan.** The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

36. **Principal Purpose of the Plan.** The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

37. **Small Business Cases.** The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

38. **Good Faith.** The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the

(Page | 30)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

39.     **Satisfaction of Confirmation Requirements.**  Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

40.     **Releases.**  The releases provided pursuant to Article VIII of the Plan (i) represent a sound exercise of the Debtor's business judgment; (ii) were negotiated in good faith and at arm's length; and (iii) are (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise of certain claims released thereby, (MBK) (c) in the best interest of the Debtors and their Estates, and (d) fair, equitable, and reasonable under the circumstances of the Debtors' Chapter 11 Cases.

41.     **Statutory Authority for Gatekeeper Provision; Jurisdiction for Gatekeeper Provision.**  This Bankruptcy Court has the statutory authority to approve the Gatekeeper Provision under sections 1123(a)(5), 1123(b)(6), 1141, 1142(b), and 105(a).  The Gatekeeper Provision is also within the spirit of the Supreme Court's "Barton Doctrine."  *Barton v. Barbour*, 104 U.S. 126 (1881).  Furthermore, the Bankruptcy Court finds that it will have jurisdiction after the Effective Date to implement the Gatekeeper Provision pursuant to the Bankruptcy Court's

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

post-Confirmation jurisdiction and the Bankruptcy Court's jurisdiction to act as a gatekeeper does not violate *Stern v. Marshall*, 564 U.S. 462 (2011).

42.     **Exculpation**.  The exculpation provisions set forth in Article VIII.C of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation provision set forth in Article VIII.C of the Plan, which is appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contains appropriate carve outs for actual fraud, willful misconduct, or gross negligence.

43.     **Injunction.**  The injunction provision set forth in Article VIII.D of the Plan is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the exculpation provisions in Article VIII of the Plan.  Such injunction provision is appropriately tailored to achieve those purposes.

44.     **Conditions to Effective Date.**  The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

45.     **Implementation.**  All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the estates, and the Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

46.    **Disclosure:  Agreements and Other Documents.**  The Debtors have disclosed all material facts, to the extent applicable, regarding the following:  (a) the Plan Administrator Agreement, and the identities of the Plan Administrator and members of the Wind-Down Debtors' Oversight Committee; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors or Wind-Down Debtors, as applicable; (d) the exemption under section 1146(a) of the Bankruptcy Code; (e) the Retained Causes of Action; and (f) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

(Page | 33)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

47.    **Vesting of Assets.** Except as otherwise provided in this Confirmation Order, the Plan, or any other agreement, instrument, or other document incorporated therein or in the Plan Supplement, on the Effective Date, all property of the Estates shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and effecting Consummation of the Plan. Such assets shall be held free and clear of all liens, claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or this Confirmation Order. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

48.    **Objections.** All objections, responses, reservations, statements, and comments in opposition to the Plan or the Disclosure Statement, other than those resolved, ~~sustained in part,~~ adjourned, or withdrawn with prejudice prior to, or on the record at, the Combined Hearing are overruled on the merits in all respects. All withdrawn objections, if any, are deemed withdrawn with prejudice. All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan and Disclosure Statement set forth in the Combined Hearing Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

49.    All parties have had a full and fair opportunity to litigate all issues raised or that might have been raised in the objections to Confirmation of the Plan and approval of the Disclosure

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Statement, and the objections have been fully and fairly litigated or resolved, including by agreed upon reservations of rights as set forth in this Confirmation Order.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

50. **Final Approval of the Disclosure Statement.** The Disclosure Statement is approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

51. **Solicitation.** To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

52. **Notice of Combined Hearing.** The Notice of Combined Hearing was appropriate and satisfactory and is approved in all respects.

53. **Confirmation of the Plan.** The Plan (as it has been modified by the parties, including any modifications set forth herein) which, for the avoidance of doubt, incorporates the Committee Settlement, is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.

54. The Debtors, the Wind-Down Debtors, or the Plan Administrator as applicable, shall provide notice of: (a) the Loan Repayment Treatment Deadline to Holders of BlockFi

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Lending LLC Loan Collateral Claims and BlockFi International Ltd. Loan Collateral Claims by the earlier of (i) 5 Business Days after the date on which the Plan Administrator finalizes procedures for the implementation of the Loan Repayment Treatment or (ii) the Effective Date and (b) the deadline by which Holders of Convenience Claims must elect whether to receive the Convenience Claim Recovery via a distribution of Digital Assets, rather than Cash, as described in Article III.C.28 of the Plan.

55.     This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended through and including the Effective Date in accordance with and as permitted by the Plan. The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order.

56.     The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest.

57.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

(Page | 36)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

58.    **Objections.** All objections and all reservations of rights pertaining to Confirmation

of the Plan and approval of the Disclosure Statement that have not been withdrawn, ~~sustained in part,~~ waived, or

consensually resolved are overruled on the merits unless otherwise indicated in this Confirmation

Order.

59.    All objections to Confirmation or approval of the Disclosure Statement not filed

and served prior to the deadline for filing objections to the Plan set forth in the Combined Hearing

Notice, are deemed waived and shall not be considered by the Bankruptcy Court.

60.    **Plan Modifications.** The Plan Modifications do not materially adversely affect the

treatment of any Claim against or Interest in any of the Debtors under the Plan.  Pursuant to

Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125

of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code,

nor do they require that the Holders of Claims or Interests be afforded an opportunity to change

previously cast acceptances or rejections of the Plan.  Accordingly, the Plan Modifications are

hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.

After giving effect to the Plan Modifications, the Plan continues to meet the requirements of

sections 1122 and 1123 of the Bankruptcy Code.

61.    **Post-Confirmation Modification of the Plan.** Subject to the limitations and terms

contained in Article X.A and Article X.B of the Plan, the Debtors are hereby authorized to amend

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of this Bankruptcy Court, subject to the consent rights in the Plan.

62. **Plan Classification Controlling.** The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect the actual classification of Claims and Interests under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

63. **General Settlement of Claims and Interests.** The Plan, which incorporates the Committee Settlement, is approved under section 1129 of the Bankruptcy Code. All distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

64. **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

the Plan Modifications. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

65. **Restructuring Transactions**. On or before the Effective Date, the applicable Debtors or Wind-Down Debtors will take any action as may be necessary or advisable to effectuate the Restructuring Transactions described in the Plan and the Restructuring Transactions Memorandum. This Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code authorize, among other things, all actions as may be necessary or appropriate to affect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

66. **Rebalancing Transactions.** The Debtors may buy and sell Digital Assets as necessary to make the Digital Assets Allocation.

67. **Actions by the Wind-Down Debtors.** As soon as practicable after the Effective Date, the Wind-Down Debtors shall take such actions as the Wind-Down Debtors may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Wind-Down Debtors on behalf of any Wind-Down Debtors without need for any action or approval by the shareholders or board of directors or managers of such Debtor. On and after the Effective Date, the Debtors or the Wind-Down Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal (2) shall be deemed to have cancelled pursuant to the Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Pursuant to the terms of the Plan, any Money Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further action is required to be taken by the Debtors or the Wind-Down Debtors to effectuate such withdrawal; *provided* that, following the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall use commercially reasonable efforts to comply with all state banking department requirements for the surrender of a Money Transmitter License. Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

68.     **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

69.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases and all documents and agreements executed by the Debtors as authorized and directed thereunder as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors or the Wind-Down Debtors, as applicable, and their respective successors and assigns.

70.    **Vesting of Assets.** Except as otherwise provided in the Plan, the Plan Supplement, this Confirmation Order, the Schedule of Retained Causes of Action, or in any agreement, instrument, or other documented incorporated herein or therein, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting Wind-Down Debtors' Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, satisfied, or transferred pursuant to the Plan) shall vest in the Wind-Down Debtors, free and clear of all Liens, Claims, charges, or other encumbrances.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

71. Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date the Wind-Down Debtors' Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtors. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned, or sold pursuant to a prior order or the Plan, the Plan Administrator specifically retains and reserves the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan.

72. On the Effective Date, the Debtors or Plan Administrator, as applicable, may establish one or more accounts or funds to hold and dispose of certain assets, pursue certain litigation (including the Vested Causes of Action), and/or satisfy certain Claims (including Claims that are contingent or have not yet been Allowed).

73. **Plan Administrator.** The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his responsibilities under the Plan and as otherwise provided in this Confirmation Order; *provided, however*, in the case of the Bermuda Debtor, the Plan Administrator is authorized by a power of attorney executed by the directors of the Bermuda Debtor immediately prior to, and effective on, the Effective Date, to take actions with respect to

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

the Bermuda Debtor consistent with the role of a sole officer and director of the Bermuda Debtor and with the Cross-Border Insolvency Protocol Agreement.

74.    The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a president and chief executive officer (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order.  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole officer of the Wind-Down Debtors, and shall succeed to the rights, powers, duties and privileges of the Wind-Down Debtors' officers.    Subject only to the authority delegated to the Wind-Down Debtors' Oversight Committee, the Plan Administrator will replace all officers of each Debtor and will report to the Wind-Down Debtors' Oversight Committee.  Subject to the terms of the Plan, among other duties normal and customary of a director and officer responsible for winding down the affairs of a business, the Plan Administrator shall have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and Wind Down Debtors' Claims and Causes of Action.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

75.    **Effectiveness of All Actions**.  All actions required to implement the Plan, including all actions in connection with the Restructuring Transactions are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Wind-Down Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

76.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.**  On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, this Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Restructuring Transactions, all notes, bonds, indentures, including the BIA Indenture, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

77.    **Distributions.**  The procedures governing distributions contained in <u>Article VI</u> of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Administrator shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, this Confirmation Order, or the Plan Administrator Agreement, as applicable; *provided* that, if a creditor does not timely provide the Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Bankruptcy Court.  Any such forfeited distribution shall be deemed to have reverted back to the Wind-Down Debtors for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the particular Debtor in respect of which the forfeited distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

78.     **Claims Register.**  Any Claim or Interest that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged, as applicable, on the Claims Register at the direction of the Debtors or Wind-Down Debtors without the Debtors or Wind-Down Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

79.     **Preservation of Rights of Action.**   In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtors shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred.  Such rights shall be preserved by the Debtors and Wind-Down Debtors and shall vest in the Wind-Down Debtors, with the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Wind-Down Debtors as of the Effective Date; *provided* that the exculpation provisions and release provisions

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

of Article VIII of the Plan shall not extend to any Cause of Action identified in the Schedule of Retained Causes of Action.

80.     No Entity may rely on the absence of a specific reference in the Schedules of Assets and Liabilities or Statement of Financial Affairs, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors will not pursue any and all available Causes of Action against it.  The Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtors, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan; *provided* that the exculpation and release provisions of Article VIII of the Plan shall not extend to any Cause of Action identified in the Schedule of Retained Causes of Action.  Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, on behalf of the Debtors and Wind-Down Debtors and in accordance with the Plan Administrator Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

81.     **Subordination.**  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

82.     **Release of Liens.**  Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or this Confirmation Order on the Effective Date, and concurrently with the applicable Distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Debtor or Wind-Down Debtor, as applicable, and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as requested by the Debtors or Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such documents evidencing such releases.  The

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

presentation or filing of the Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

83. **Operations After Closing.** On and after the Effective Date, except as otherwise provided in the Plan, the Debtors or the Wind-Down Debtors may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

84. **Assumption and Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) was previously assumed, assumed and assigned, or rejected by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume, assume and assign, or reject Filed on or before the Confirmation Date that is pending on the Effective Date; (d) is an Insurance Contract; or (e) is designated specifically, or by category, as an Executory Contract or Unexpired

(Page | 49)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, if any. Entry of this Confirmation Order constitutes approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the rejection of an Executory Contract or Unexpired Lease under the Plan, if any, are overruled on their merits.

85.     Except with respect to the Executory Contracts and Unexpired Leases discussed in the following paragraph of this Confirmation Order, the amounts set forth in the Plan Supplement are the sole amounts necessary to be paid upon assumption of the associated Executory Contracts and Unexpired Leases under section 365(b)(1)(A) and (B) of the Bankruptcy Code, and the payment of such amounts will effect a cure of all defaults existing under such Executory Contracts and Unexpired Leases and compensate the counterparties to such Executory Contracts and Unexpired Leases for any actual pecuniary loss resulting from all defaults existing under such Executory Contracts and Unexpired Leases as of the Effective Date.

86.     The objections of counterparties to the assumption of their Executory Contracts and Unexpired Leases, to the extent that such objection was timely raised in accordance with Article V.C of the Plan, are preserved and will be considered by the Bankruptcy Court at a date

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

and time to be scheduled.  As provided in the Conditional Disclosure Statement Order and the Solicitation Packages, the Debtors and the Wind-Down Debtors have reserved the right to (a) add any Executory Contract or Unexpired Lease to the Schedule of Assumed Executory Contracts and Unexpired Leases and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, or remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in each case, up until 45 days after the the Effective Date and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

87.    **Insurance Policies and Surety Bonds.**  The Debtors shall continue to satisfy their obligations under their insurance policies in full and continue such programs in the ordinary course of business.   Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan.  Without ruling as to whether the assumption of an insurance policy was required, for the avoidance of doubt, on the Effective Date: (a) the Debtors shall be deemed to have assumed, to the extent necessary, each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto), with the Wind-Down Debtors being authorized to pursue any proceeds thereof on behalf of the Debtors or the Wind-Down Debtors;

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Wind-Down Debtor(s) unaltered.

88.     The Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date, and subject in all respects to the Committee Settlement, any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject to the terms thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors shall retain the ability to supplement such D&O Liability Insurance Policy as the Debtors or Wind-Down Debtors may deem necessary, subject to the prior written consent of the Wind-Down Debtors.

89.     For the avoidance of doubt, the carriers of the Debtors' D&O Liability Insurance Policies shall not be Released Parties or Releasing Parties under the Plan.

(Page | 52)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

90.     **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation as set forth in Article IX of the Plan.

91.     **Professional Compensation.**  All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules.  The Wind-Down Debtors shall pay Professional Fee Claims in Cash to such Professionals in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

92.     No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Wind-Down Debtors. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Wind-Down Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

93.    The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before the anticipated Effective Date and projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

such Professional for purposes of funding the Professional Fee Escrow Amount. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the Wind-Down Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

94.      Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors and/or the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to administration of the Chapter 11 Cases, prosecution of Causes of Action and implementation of the Plan and Consummation incurred by the Debtors or the Wind Down Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Wind-Down Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, the Debtors or the Wind-Down Debtors, as applicable, shall

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

continue to pay the reasonable and documented legal, professional, or other fees and expenses of the Fee Examiner in accordance with the terms of Article II.B.4 of the Plan and at the rates set forth in the Fee Examiner Order.

95.     The Bermuda Liquidation Fund will be used to fund the liquidation and wind down of the Bermuda Debtor under the supervision of the Bermuda Court.  The Bermuda Professionals shall estimate in good faith the Bermuda Provisional Liquidation Fees Amount and other expenses likely to be incurred in rendering services compensable by the Bermuda Debtor including (a) for the period up to and including the Effective Date, and (b) the period post the Effective Date until the dissolution of the Bermuda Debtor and shall deliver such reasonable, good-faith estimate to the Debtors no later than five Business Days prior to the anticipated Effective Date.  If the Bermuda Professionals do not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Bermuda Professional.

96.     No later than the Effective Date, the Debtors shall establish and fund the Bermuda Liquidation Fund with Cash equal to the Bermuda Professionals Liquidation Fees Amount.  The Bermuda Liquidation Fund shall be maintained by the Bermuda Provisional Liquidators in trust solely for the Bermuda Professionals and for no other Entities until all the Bermuda Liquidation Fees approved by a Final Order of the Bermuda Court have been irrevocably paid in full to the Bermuda Professionals.  No Liens, Claims, or Interests shall encumber the Bermuda Liquidation

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Fund or Cash held in the Bermuda Liquidation Fund in any way. Such funds shall not be considered property of the Bermuda Debtor's Estate or of the Debtors' Estates. The amount of the Bermuda Professional Fees Claims shall be paid in Cash by the Bermuda Provisional Liquidators as bills are rendered from the funds held in the Bermuda Liquidation Fund as soon as reasonably practicable and in accordance with a Final Order of the Bermuda Court. When all Bermuda Professional Fee Claims allowed by a Final Order of the Bermuda Court have been irrevocably paid in full to the Bermuda Professionals, any remaining funds held in the Bermuda Liquidation Fund shall be included in the assets to be distributed to the creditors of the Bermuda Debtor without any further notice to, or action, order or approval of the Bankruptcy Court or any other Entity. For the avoidance of doubt, allowed Bermuda Professional Fee Claims shall not be limited nor be deemed to be limited to funds held in the Bermuda Liquidation Fund and the Bermuda Provisional Liquidators may request, and the Plan Administrator shall be obliged to provide, or cause to provide, additional funding to satisfy the Bermuda Professional Fee Claims in full.

97.     **Return of Deposits.** All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Wind-Down Debtors promptly following the occurrence of the Effective Date, if not returned or applied earlier.

| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

98.    **Release, Exculpation, and Injunction Provisions.**  The release and exculpation provisions set forth in the Plan are approved and authorized, and such provisions are effective and binding on all Persons and Entities to the extent provided therein except as otherwise provided in this Confirmation Order.

99.    **Releases by the Debtors.**  Notwithstanding anything contained in the Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, other than with respect to the Retained Preference Claims, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Wind Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their

(Page | 58)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the

Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest

that is treated in the Plan, the business or contractual arrangements between any Debtor and any

Released Party, the Chapter 11 Cases and related adversary proceedings, the Platform Pause, the

FTX Loan Agreement, the 3AC Master Loan Agreements, the Alameda Loan Agreements, the

Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions

between or among a Debtor and another Debtor, the formulation, preparation, dissemination,

negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument,

release, or other agreement or document created or entered into in connection with the Definitive

Documents, the pursuit of Consummation of the Plan, the administration and implementation of

the Wind Down, or upon any other act or omission, transaction, agreement, event, or other

occurrence related to the Debtors taking place on or before the Effective Date.

100.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval,

pursuant to section 1129 of the Bankruptcy Code, of the releases described in Article VIII.A of the

Plan by the Debtors, which includes by reference each of the related provisions and definitions

contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release

described in Article VIII.A of the Plan is: (1) in exchange for the good and valuable consideration

provided by the Released Parties; (2) a good-faith settlement and compromise of ~~such~~ *certain* Causes of

| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Debtors or Wind Down Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

101.    For the avoidance of doubt, the releases by the Debtors do not extend to, and do not release, any properly pled direct claim against a Released Party held by a creditor.  For the purposes of the releases by the Debtors, properly pled direct claims against a Released Party are claims where the alleged conduct caused direct injury to the plaintiff-creditor distinct from any injury to the Debtors.

102.    For the avoidance of doubt, nothing in this Plan shall limit the Debtors' or the Wind Down Debtors' right to object to Claims or Interests (or to assert affirmative defenses, mandatory counterclaims, rights of setoff or other defenses arising in connection with such Claims against or Interests in the Debtors or Wind-Down Debtors) or Retained Preference Claims; provided that such Retained Preference Claims shall remain subject to Article IV.L of the Plan.

103.    For the avoidance of doubt, these releases extend to any Claim by one Debtor against another Debtor, other than an Intercompany Claim that is Allowed or reinstated pursuant to this Plan or the Restructuring Transactions Memorandum.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

104.    **Releases by Holders of Claims and Interests.**  Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Platform Pause, the business or contractual arrangements between any Debtor and any Released Party, the FTX Loan Agreement, the 3AC Master Loan Agreements, the Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions

(Page | 61)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the administration and implementation of the Wind Down, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.

105.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1129 of the Bankruptcy Code, of the releases described in Article VIII.B of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article VIII.B of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such *certain* Causes of Action; (3) in  the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Releasing Parties or the Debtors or the Wind-Down Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.  For the avoidance of doubt, any known Holder of a Claim against the Debtors that did not receive notice of the opportunity to opt

(Page | 62)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

out of the releases contained in the Plan (including if the Debtors were aware that all communications to such Holder were returned or otherwise undeliverable) shall not be a Releasing Party.

106.    Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.B and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.B or (ii) was deemed to reject the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.B of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.B of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action; *provided*, *however*, that this

(Page | 63)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

paragraph shall not apply to claims covered by an Insurance Contract other than any D&O Liability Insurance Policies.  For the avoidance of doubt, pursuant to the Gatekeeper Provision, the Bankruptcy Court shall determine whether a claim or Cause of Action asserted against a Released Party is (a) a claim or Cause of Action against the Debtors which is compromised under the Plan or (b) a direct or derivative claim with the latter being released under the Plan.

107.    Nothing in this Plan settles, releases, or discharges direct claims held by creditors (other than claims against the Debtors) who opted out of the Third-Party Release.  To the extent any creditor who opted out had a direct claim against a non-Debtor under applicable non-bankruptcy law (other than a fraudulent transfer claim) prior to the Petition Date, such claim did not vest in the Debtors on the Petition Date and nothing in this Plan or the Confirmation Order prevents, releases, or obstructs a properly pled direct claim, including any argument under *In re SemCrude L.P.*, 796 F.3d 310 (3d Cir. 2015) or *In re Wilton Armetale, Inc.* 968 F.3d 273 (3d Cir. 2020) that such claim was vested in the Debtors by operation of the Bankruptcy Code.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order modifies the gatekeeper function contained in Article VIII.B of the Plan or the law as to what is a direct or derivative claim, or is a concession that a direct or derivative claim exists.

108.    **Exculpation.**  Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third Party

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Plan, any Definitive Documents, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for (i) any Causes of Action listed in the Schedule of Retained Causes of Action and (ii) any Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

109.    Solely to the extent permitted by applicable law, the Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

110.    **Injunction and Bermuda Implementation Mechanism.**   The assets of the Debtors and of the Wind-Down Debtors shall be used for the satisfaction of expense obligations and the payment of Claims and Interests only in the manner set forth in the Plan and shall not be available for any other purpose.  All Persons and Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or this Confirmation Order, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.

111.    Further, with effect from the entry of this Confirmation Order, each of the Bermuda Debtor's creditors and Holders of Interests who have held, hold, or may hold Claims and Interests

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

based upon any act, omission, transaction or other activity of any kind or nature related to the Bermuda Debtor, or the Bermuda Debtor's Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan, the Cross-Border Insolvency Protocol Agreement or this Confirmation Order is prohibited from interfering or opposing any Bermuda Implementation Mechanism or Bermuda Order, and will be deemed to have irrevocably appointed the Bermuda Provisional Liquidators as its agent, nominee, proxy and representative with full power and authority and have otherwise instructed the Bermuda Provisional Liquidators in such creditor or Holder of Interests' name and on such creditor or Holder of Interests' behalf, to exercise all rights in relation to its Claim to vote in favor of any Bermuda Scheme of Arrangement at a meeting convened at the direction of the Bermuda Court for the purpose of considering a Bermuda Scheme of Arrangement proposed by the Bermuda Provisional Liquidators as a Bermuda Implementation Mechanism and to otherwise consent to and/or support the Bermuda Implementation Mechanism, and each such creditor or Holder of Interests agrees to and shall be bound by and comply with the Bermuda Implementation Mechanism or Bermuda Order as and from the time the Bermuda Implementation Mechanism or Bermuda Order becomes effective in accordance with Bermuda law.

112.    In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in Article VIII.A, Article VIII.B, and Article VIII.C of this Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by the Plan.

113.    **No Discharge.** For the avoidance of doubt, the Debtors are not entitled to a discharge under section 1141(d).

114.    **Disputed Claim Reserve.** Notwithstanding anything in the Plan or this Confirmation Order to the contrary, on or prior to any Distribution Date the Wind-Down Debtors shall establish a Disputed Claims Reserve. The Wind-Down Debtors shall file a notice on the docket of the proposed amount of the Disputed Claims Reserve at least fourteen (14) days prior to such Distribution Date. Parties shall have seven (7) days to object to the proposed amount of the Disputed Claims Reserve (the "Disputed Claims Reserve Objection Deadline"). If an objection is filed prior to the Disputed Claims Reserve Objection Deadline, the Wind-Down Debtors (i) will schedule a hearing with the Bankruptcy Court to determine the amount of an appropriate Disputed Claims Reserve with respect to that Distribution and (ii) shall not make any Distribution in any amount subject to such objection until such time as (a) the amount of an appropriate Disputed Claims Reserve with respect to that Distribution is determined by the Bankruptcy Court or (b) the parties consensually resolve the objection.

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

115.    **Special Provisions Regarding the United States.**  As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, the Definitive Documents, or other related documents shall:

(i)        discharge, release, enjoin, bar, impair or otherwise preclude (a) any obligation or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any claim of the United States arising after the Confirmation Date, (c) any obligation or liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Confirmation Date; (d) any right, defense, claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor;

(ii)       release, nullify, bar, enjoin, or preclude the enforcement of the United States' criminal, police or regulatory powers;

(iii)      authorize the assumption, sale, assignment or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property, data and patents, (v) leases, (vi) participation rights, (vii) agreements, (viii) applications, (ix) licenses, (x) permits, (xi) registrations, (xii) authorizations, (xiii) approvals, or (xiv) other interests of the federal government (collectively, "Federal Interests"), without compliance with all terms of the Federal Interests, as applicable, and with all applicable non-bankruptcy law;

(iv)      be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Federal Interests;

(v)       waive, alter, or otherwise limit the United States' criminal, police, or regulatory powers and other rights and interests solely with respect to the matters that are the subject of the cases captioned

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

(a) *In re Official Committee of Unsecured Creditors v. BlockFi, Inc., et al., & U.S. of Am.*, Adv. Pro. No. 23-01144 (MBK) (Bankr. D.N.J.) and (b) *Official Committee of Unsecured Creditors, et al. v. Blockfi, Inc. et al.*, 3:23-cv-03015 (RK) (D.N.J.) (collectively the "Adversary Proceeding"), and all rights, powers, claims, defenses, causes of action, and interests of the United States with respect to the Adversary Proceeding are fully preserved;

(vi)     confer exclusive jurisdiction to the Bankruptcy Court with respect to the Adversary Proceeding, the Federal Interests, claims, rights, defenses, obligations, liabilities, and causes of action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

(vii)    affect any setoff or recoupment rights and defenses of the United States and such rights and defenses are preserved; or

(viii)   expand the scope of 11 U.S.C. § 525.

116.    Notwithstanding the foregoing or any other provisions of the Plan or the Confirmation Order, upon the Effective Date of the Plan:

(i)      the Adversary Proceeding shall be dismissed as to the Debtors only. Such dismissal is without prejudice to, and does not alter, the positions of the parties to the Adversary Proceeding or the merits of such positions, and such dismissal is for procedural purposes only;

(ii)     all rights, powers, claims, defenses, causes of action, and interests of the Committee in the Adversary Proceeding shall be transferred to the Wind-Down Debtors as successor-in-interest, and such rights, powers, claims, defenses, causes of action, and interests shall otherwise be unaffected by the Plan;

(iii)    the Plan Administrator shall have standing to pursue all such rights, powers, claims, defenses, causes of action, and interests of the Debtors, the Wind-Down Debtors, and the Committee in the Adversary Proceeding; and

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

(iv)     the Wind-Down Debtors shall succeed to all rights, powers, claims, defenses, causes of action, interests, obligations and responsibilities of the Debtors with respect to the Seizure Warrants that are the subject of the Adversary Proceeding and the criminal proceeding in the United States District Court for the Western District of Washington, including, for the avoidance of doubt, all of the Debtors' rights, obligations and responsibilities pursuant to 21 U.S.C. § 853 and any other provisions of federal law.

117.    Notwithstanding anything to the contrary contained in the Plan or this Confirmation Order, as to the United States, nothing in the Plan or this Confirmation Order:  (i) shall grant any relief to any Entity that the Bankruptcy Court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. 2201(a), or the Anti-Injunction Act, 26 U.S.C. 7421(a) or (ii) shall limit or expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code; *provided*, *however*, for the avoidance of doubt, the Debtors shall not be released or discharged of any liabilities arising under subchapter III of chapter 37 of title 31 of the United States Code (the "False Claims Act") or any criminal or federal tax laws.  The exculpation, release and injunction provisions contained in the Plan and this Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to entry of the Confirmation Order, exercising any police and or regulatory powers.

118.    Moreover, subject to the exculpation provision contained in the Plan, nothing in this Confirmation Order or the Plan shall release any non-Debtor parties from any liability to the United States, including, but not limited to, any liabilities arising under the Internal Revenue Code,

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

the environmental laws, the False Claims Act, or any criminal laws, nor shall anything in this Confirmation Order or the Plan enjoin or limit the United States from bringing any such claim, suit, action, or other proceeding against non-Debtor parties.

119.    **Special Provisions Regarding the Securities and Exchange Commission.** Notwithstanding anything to the contrary in this Confirmation Order, or any findings announced at the Combined Hearing, nothing in this Confirmation Order, or announced at the Combined Hearing, constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the SEC to challenge transactions involving crypto tokens on any basis is expressly reserved.

120.    Upon the occurrence of the Effective Date, the Debtors and Wind-Down Debtors, as applicable, shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession.  The Debtors and Wind-Down Debtors shall not destroy or otherwise abandon any such documents or records without seeking further authorization from the Bankruptcy Court.

121.    Notwithstanding any language to the contrary herein, no provision shall (a) preclude the SEC from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

Debtors:           BLOCKFI INC., *et al*.
Case No.           22-19361 (MBK)
Caption of Order:  FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
                   (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO
                   THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI
                   INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11
                   OF THE BANKRUPTCY CODE ON A FINAL BASIS AND
                   (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11
                   PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES
                   PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE
                   (ADDITIONAL TECHNICAL MODIFICATIONS)

122.  **Special Provisions Regarding State Regulators.**  The Debtors, the Wind-Down Debtors and their successors and assigns are permanently restrained and enjoined from transacting business, directly or indirectly, as an issuer, issuer agent, broker-dealer, broker-dealer agent, investment adviser, and/or investment adviser representative or otherwise offering and/or selling securities other than for the purposes of implementing the Plan, including any rebalancing of the Debtors' cryptocurrency portfolio and/or purchasing or selling cryptocurrency for the purpose of making distributions to Holders of Claims in accordance with the Plan. For the avoidance of doubt, the preceding sentence does not apply and shall not be construed to apply to any officers, directors managers or employees of the Debtors in their individual capacity.  Any and all state regulatory actions, orders and judgments issued to or against Debtors prior to or during this Bankruptcy Case are not discharged, released, or otherwise affected by confirmation of the Plan. For the avoidance of doubt, the State Regulatory Claimants opt out of any and all releases provided by the Plan.

123.  Notwithstanding any language to the contrary herein, no provision shall (a) preclude any state from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay any state from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

124.  **Special Provisions Regarding Arch Insurance Company.**  Notwithstanding any provision in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

shall alter, modify, waive, amend, affect, impair, or prejudice any legal, equitable, or contractual rights of Arch Insurance Company (together with its respective subsidiaries, affiliates, and associated companies, "Arch"), the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or Entity, as applicable, under all surety bonds or indemnity agreements issued by Arch, including but not limited to: (i) equitable or contractual rights of subrogation, assignment, and/or coverage rights, obligations, and defenses (including all indemnity and coverage defenses), and (ii) any right of Arch to assert such legal, equitable, or contractual rights and defenses identified in subsection (i) in any proceeding or demand brought or made on account of or related to the Retained Preference Claims.  Further, nothing in the Plan or this Confirmation Order shall be deemed to alter, modify, amend, or affect this Court's holding in the Withdrawal Order[3] that the digital assets held in the Custodial Omnibus Wallets as of the Time Stamp are not property of the Debtors' estate, and such holding is incorporated herein. Arch is deemed to have opted out of the Third-Party Release contained in Article VIII.B of the Plan and shall neither be "Releasing Parties" or "Released Parties" under the Plan.

---

[3] The "Withdrawal Order" refers to the Court's *Order (I) Authorizing the Debtors to (A) Honor Withdrawals From Wallet Accounts, (B) Update the User Interface to Property Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relied* entered on May 17, 2023 [Docket No. 923].

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

125.    **Special Provisions Regarding Emergent**.   Nothing in the Plan or the Confirmation Order shall change the terms and conditions of the *Order Approving the Stipulation Staying Litigation and Related Discovery Concerning the Robinhood Assets* [Docket No. 760], and nothing in the Plan or this Confirmation Order shall release or extinguish any Claims or Causes of Actions held by Emergent against the Debtors.

126.    **Special Provisions Regarding Three Arrows Capital.**   For the avoidance of doubt, Three Arrows Capital, Ltd. ("3AC") is not subject to the Third-Party Release in the Plan. Notwithstanding the limitation of creditors use of setoff under the injunction in Article VIII.D of the Plan or anything in this Confirmation Order to the contrary, any setoff or recoupment rights and defenses of 3AC to the extent they exist under and pursuant to applicable law are preserved.  Prior to exercising any right of setoff or recoupment, 3AC shall seek relief from the automatic stay which remains in effect pursuant to Articles IV.D.2 and VIII.K of the Plan and this Confirmation Order.  The foregoing is without prejudice to the rights of the Debtors and Wind-Down Debtors with respect to any claimed right of setoff or recoupment asserted by 3AC, including but not limited to the right to oppose any motion for relief from the automatic stay filed by 3AC or to assert that any set off or recoupment be conditioned on 3AC establishing a right to payments or Distributions under the Plan, all of which are preserved and none of which are waived.

127.    **Special Provisions Regarding Ankura Trust Company, LLC.**   The Plan Administrator (or such other Person as is appointed by the Debtors or the Plan Administrator to

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

make Distributions to Account Holders that are United States holders of BlockFi Interest Accounts) shall pay to the Indenture Trustee, in United States dollars, any and all amounts due to the Indenture Trustee for the compensation and reasonable expenses, disbursements and advances of the Indenture Trustee, its agents, advisors and counsel, and any indemnification payments and other amounts due the Indenture Trustee under the terms of the BIA Indenture (collectively, "Indenture Trustee Fees/Expenses") promptly following the provision by the Indenture Trustee of the billing statements (which may be redacted to protect attorney-client privilege, work product privilege and the provision of which to the Plan Administrator shall not waive the attorney-client privilege, the work product privilege or any other applicable privileges of the Indenture Trustee, but such statements shall be detailed enough to permit informed review of the reasonableness of the fees sought and the right to redact such statements shall not alter the burdens with respect to establishing reasonableness) seeking such fees and expenses.  If the Plan Administrator objects and the Plan Administrator and Indenture Trustee are unable to reach a resolution, the Bankruptcy Court shall resolve such disputes, and any review for reasonableness shall be as provided in the BIA Indenture (as to which the Bankruptcy Court shall retain jurisdiction).  The Plan Administrator shall establish a reserve (which shall not operate as a cap) of $1,000,000, solely for Indenture Trustee Fees/Expenses, in United States dollars.  The Indenture Trustee shall not be required to file a fee application under Bankruptcy Code section 330, motion seeking allowance of a claim for

| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

"substantial contribution" or other administrative expense claim under Bankruptcy Code section 503 or similar motion or application. The Indenture Trustee shall not serve as distribution agent for Distributions to be made under the Plan to Account Holders that are United States holders of BlockFi Interest Accounts.

128.    **Employee Transition Plan.** The Employee Transition Plan, the terms of which are included in the Plan Supplement as Exhibit G, will be implemented following the Effective Date and is not subject to the Bankruptcy Court's approval.

129.    **Compliance with Tax Requirements.** In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the Plan Administrator, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Wind-Down Debtors, the Plan Administrator, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including winding-down a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms that are reasonable and appropriate;

| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

*provided* that the Wind-Down Debtors and the Plan Administrator, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond. The Debtors, the Wind-Down Debtors, the Plan Administrator, and any other applicable withholding and reporting agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

130. **Exemption from Certain Taxes and Fees.** To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Entity) of property under the Plan and Definitive Documents or pursuant to: (1) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

131.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

132.    **Continued Effect of Stays and Injunction.**  Pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the Debtors' estates will continue until such property is no longer property of the Debtors' estates, and pursuant to 11 U.S.C. §362(c)(2), the

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

stay of any other act described in 11 U.S.C. § 362(a) continues until the earlier of the closure or dismissal of these Chapter 11 Cases. Pursuant to 11 U.S.C. § 1141(b), the Plan and this Confirmation Order shall both provide that all property of the Debtors' estates shall remain in the estates until one (1) business day before such assets are to be distributed to Holders of Allowed Claims pursuant to the Plan and this Confirmation Order, and at that point, shall vest in the Wind-Down Debtors.

133.    **Notice of Subsequent Pleadings.**    Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtors and its counsel; (b) the U.S. Trustee; (c) any party known to be directly affected by the relief sought by such pleadings; and (d) any party that has previously requested notice or who files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Claims, Noticing, and Solicitation Agent shall not be required to file updated service lists.

134.    **Choice of Law.**    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); provided that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Wind-Down Debtor, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Wind-Down Debtor, as applicable.

135. **Protection Against Discriminatory Treatment.** As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Wind-Down Debtors, or any Entity with which a Wind-Down Debtors has been or is associated, solely because such Wind-Down Debtor was a debtor under chapter 11 of the Bankruptcy Code or may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases).

136. **Notices of Confirmation and Effective Date.** The Debtors or the Wind-Down Debtors, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Confirmation") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Combined Hearing Notice seven

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

days after the Effective Date; *provided* that no notice of any kind shall be required to be made upon any Entity to whom the Debtors served notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

137. As soon as reasonably practicable after the Effective Date, the Wind-Down Debtors shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition), *The Royal Gazette*, and the *Financial Times* (International Edition). Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

138. **Dissolution of Statutory Committees.** On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that such committees will remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter 11

| Debtors: | BLOCKFI INC., *et al*. |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

Cases; and (b) filing, objecting, or otherwise participating in, any final fee applications of Professionals.

139.    The Plan Administrator shall hold the equity of BlockFi, to the extent that any new equity is issued, in an agency capacity, for the benefit of and to facilitate the rights of Holders of Interests provided under the Plan; *provided* that such equity, if issued, shall be uncertificated and non-transferable.

140.    Under the Plan, any Digital Assets to be distributed to Holders of Claims at a Debtor will be in the form of BTC, ETH and/or GUSD, USDC, and USDT (GUSD, USDC, and USDT collectively, "Distributable Stablecoin"), as determined by such Debtor, subject to any applicable withdrawal fees incurred in connection with, or arising out of, the Digital Assets distributed to Account Holders pursuant to the Digital Asset Allocation.  To the extent there are any Digital Assets included in the Estate prior to such distributions that are not BTC, ETH and/or Distributable Stablecoin, such Digital Assets shall be sold for cash, BTC, ETH and/or Distributable Stablecoin pursuant to Section 4(a)(7) under the Securities Act of 1933, as amended (the "Securities Act"), Rule 144, if available, under the Securities Act or any other available exemption from registration under the Securities Act. To the extent such Digital Assets are deemed securities and sold pursuant to these exemptions from registration under the Securities Act, such digital assets will be deemed "restricted securities" that may not be sold, exchanged, assigned, or otherwise transferred unless

(Page | 83)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

they are registered, or an exemption from registration applies, under the Securities Act. Holders of any such restricted securities may not be entitled to have their restricted securities registered and will be required to agree not to resell them except in accordance with an available exemption from registration under the Securities Act. This Bankruptcy Court is not making any findings of whether any digital assets are securities or the availability of any exemptions under the securities laws.

141.    **Effect of Non-Occurrence of Conditions to Confirmation.**  If the Effective Date does not occur, then the Plan will be null and void in all respects and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

142.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to have been substantially consummated or shall be anticipated to be substantially consummated concurrent with the occurrence of the Effective Date.

143.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DISCLOSURE STATEMENT RELATING TO THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS AND (II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS) |

144.    **Effect of Conflict.**  This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.

145.    **Final, Appealable Order.**  This Confirmation Order is a final judgment, order, or decree for purposes of 28 U.S.C. § 158(a), and the period in which an appeal must be filed shall commence upon the entry hereof.

146.    **Retention of Jurisdiction.**  The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan and otherwise permitted by applicable law, retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including (i) the matters set forth in Article XI of the Plan and (ii) matters arising under and subject to the Gatekeeper Provision.

**<u>Exhibit A</u>**

**Plan**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**BLOCKFI INC. AND ITS DEBTOR AFFILIATES PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE (ADDITIONAL TECHNICAL MODIFICATIONS)**

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

---

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Kenric D. Kattner, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
kenric.kattner@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154).  The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

**TABLE OF CONTENTS**

Page

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, GOVERNING LAW, AND OTHER REFERENCES ..................................... 1**

    A.     Defined Terms ............................................................. 1
    B.     Rules of Interpretation ..................................................... 22
    C.     Computation of Time ...................................................... 23
    D.     Governing Law ........................................................... 23
    E.     Reference to Monetary Figures ............................................. 23
    F.     Reference to the Debtors or the Wind-Down Debtors ........................... 23
    G.     Nonconsolidated Plan ..................................................... 24

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ........................... 24**

    A.     Administrative Claims ..................................................... 24
    B.     Professional Fee Claims ................................................... 25
    C.     Priority Tax Claims ...................................................... 26
    D.     Wallet Account Claims .................................................... 26
    E.     Postpetition Digital Asset and Cash Claims .................................. 27
    F.     Post-Effective Date Deposits ............................................... 27
    G.     Statutory Fees ........................................................... 27

**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
INTERESTS ........................................................... 27**

    A.     Classification of Claims and Interests ....................................... 27
    B.     Summary of Classification ................................................. 27
    C.     Treatment of Classes of Claims and Interests ................................ 29
    D.     Special Provision Governing Unimpaired Claims .............................. 42
    E.     Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ............. 42
    F.     Subordinated Claims ...................................................... 42
    G.     Intercompany Interests .................................................... 42
    H.     Controversy Concerning Impairment ......................................... 42
    I.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
         Code ................................................................... 43

**ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN ................... 43**

    A.     General Settlement of Claims and Interests ................................... 43
    B.     Restructuring Transactions ................................................. 43
    C.     The Committee Settlement ................................................. 44
    D.     Wind-Down Debtors ...................................................... 48
    E.     Sources of Consideration for Restructuring Transaction ........................ 54
    F.     Corporate Existence and Dissolution ........................................ 54
    G.     Corporate Action ........................................................ 55
    H.     Vesting of Assets in the Wind-Down Debtors ................................. 56
    I.     Cancellation of Notes, Instruments, Certificates, and Other Documents ......... 56
    J.     Effectuating Documents; Further Transactions ................................ 56
    K.     Section 1146(a) Exemption ................................................ 56
    L.     Preservation of Rights of Action ........................................... 57

M.   Closing the Chapter 11 Cases ................................................................. 57
N.   Closing the Bermuda Insolvency Proceedings............................................ 57
O.   Employee Arrangements........................................................................... 58
P.   Employee Transition Plan......................................................................... 58

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ............................................................................................. 58**

A.   Assumption and Rejection of Executory Contracts and Unexpired Leases...................... 58
B.   Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
Leases .................................................................................................... 59
C.   Claims Based on Rejection of Executory Contracts or Unexpired Leases ..................... 59
D.   Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ................... 59
E.   Indemnification Provisions ....................................................................... 60
F.   Insurance Policies and Surety Bonds........................................................... 61
G.   Reservation of Rights............................................................................... 62
H.   Nonoccurrence of Effective Date................................................................ 62
I.   Contracts and Leases Entered into After the Petition Date............................... 62

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ........................................ 62**

A.   Timing and Calculation of Amounts to Be Distributed ................................... 62
B.   Rights and Powers of Plan Administrator ..................................................... 62
C.   Delivery of Distributions, Undeliverable or Unclaimed Distributions and
Unclaimed Property ................................................................................. 63
D.   Compliance Matters................................................................................. 64
E.   Foreign Currency Exchange Rate ................................................................ 65
F.   Dollarization of Account Holder Claims ...................................................... 65
G.   Claims Paid or Payable by Third Parties ...................................................... 65
H.   Setoffs and Recoupment ........................................................................... 66
I.   Allocation between Principal and Accrued Interest......................................... 66

**ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS AND INTERESTS ..................................... 66**

A.   Disputed Claims Process .......................................................................... 66
B.   Objections to Claims................................................................................ 67
C.   Estimation of Claims ............................................................................... 67
D.   No Distributions Pending Allowance .......................................................... 67
E.   Distributions After Allowance ................................................................... 67
F.   No Interest.............................................................................................. 67
G.   Adjustment to Claims and Interests without Objection ................................... 68
H.   Disallowance of Claims............................................................................ 68
I.   Amendments to Proofs of Claim................................................................. 68
J.   Claims Against Settlement Participants........................................................ 68

**ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ................................... 69**

A.   Releases by the Debtors............................................................................ 69
B.   Releases by Holders of Claims and Interests ................................................ 70
C.   Exculpation ............................................................................................ 71
D.   Injunction and Bermuda Implementation Mechanism..................................... 71
E.   Release of Liens...................................................................................... 72

F.   State and SEC ................................................................................................ 72
G.   Silicon Valley Bank ...................................................................................... 72
H.   The Indenture Trustee ................................................................................... 73
I.   Protection against Discriminatory Treatment ............................................... 73
J.   Document Retention ...................................................................................... 73
K.   Term of Injunctions or Stays ........................................................................ 73
L.   Bermuda Releases ......................................................................................... 73
M.   Avoidance Action Releases .......................................................................... 74

**ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ................................... **74**

A.   Conditions Precedent to the Effective Date. ................................................. 74
B.   Waiver of Conditions Precedent ................................................................... 75
C.   Substantial Consummation ........................................................................... 75
D.   Effect of Non-Occurrence of Conditions to Consummation ........................ 75

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ............... **75**

A.   Modification of Plan ..................................................................................... 75
B.   Effect of Confirmation on Modifications ..................................................... 75
C.   Revocation or Withdrawal of Plan ............................................................... 75

**ARTICLE XI. RETENTION OF JURISDICTION** ............................................................. **76**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ........................................................... **77**

A.   Immediate Binding Effect ............................................................................. 77
B.   Additional Documents ................................................................................... 78
C.   Payment of Statutory Fees ............................................................................ 78
D.   Dissolution of Statutory Committees ............................................................ 78
E.   Reservation of Rights .................................................................................... 78
F.   Emergent Pledge ........................................................................................... 78
G.   Successors and Assigns ................................................................................. 79
H.   Service of Documents .................................................................................... 79
I.   Entire Agreement; Controlling Document ..................................................... 80
J.   Plan Supplement ........................................................................................... 80
K.   Non-Severability ........................................................................................... 80
L.   Votes Solicited in Good Faith ....................................................................... 80
M.   Waiver or Estoppel ....................................................................................... 81

**INTRODUCTION**

BlockFi Inc. ("BlockFi") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") propose this joint chapter 11 plan (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. The Plan does not contemplate substantive consolidation of any of the Debtors.[1]

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

**A.    Defined Terms**

Capitalized terms used in this Plan have the meanings ascribed to them below.

1.      "*3AC*" means Three Arrows Capital, Ltd. and any of its Affiliates.

2.      "*3AC Avoidable Transfer Claims*" means those Claims asserted by 3AC against a Debtor on account of alleged preference and/or fraudulent transfer actions, including, without limitation Avoidance Actions under BVI and other applicable law arising from (i) a payment by 3AC to the Debtors on May 9, 2022 in the amount of $71,000,000, (ii) an interest payment by 3AC to the Debtors on June 3, 2022 in the amount of 6,070,123 USDC, and (iii) various transfers of Cash and Digital assets by 3AC to the Debtors.

3.      "*3AC Claims*" means (a) any Claim against any Debtor derived from, based upon, associated with, or arising under the 3AC Master Loan Agreements, the parties thereto, and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the 3AC Master Loan Agreements, (b) the 3AC Avoidable Transfer Claims, and (c) any other claims asserted by 3AC against any Debtor, including on account of any loans made by 3AC to the Debtors.

4.      "*3AC Master Loan Agreements*" means that certain secured loan agreement dated May 2, 2019 between 3AC, as borrower, and BlockFi Lending LLC, as lender, as amended by that certain amended and restated master loan agreement dated April 23, 2020, that certain first amendment to amended and restated master loan agreement dated February 24, 2021, and that certain letter agreement in connection with amended and restated master loan agreement, dated September 1, 2021 (as further amended, restated, supplemented or modified from time to time) under the Loan Program, and any similar agreements between 3AC and the Debtors.

5.      "*Account*" means any active account at a Debtor held by an Account Holder, which contains Digital Assets or Cash as of the Petition Date.

6.      "*Account Holder*" means any Person or Entity who maintains an Account with BlockFi Inc., BlockFi International Ltd., BlockFi Lending LLC, BlockFi Trading LLC, or BlockFi Wallet LLC as of the Petition Date.

7.      "*Account Holder Claims*" means the Claims of Account Holders in Class 3-a - BlockFi Lending LLC Private Client Account Claims, Class 3-b - BlockFi Lending LLC Loan Collateral Claims, Class 3-c - BlockFi

---

[1]      This Plan and the Disclosure Statement remain subject to the review and approval of the Bermuda Provisional Liquidators of BlockFi International Ltd., acting in accordance with their fiduciary responsibilities, and to such further amendment as may be required to ensure compliance with Bermuda law, regulations, the Bermuda Insolvency Proceedings, and the duties of the Bermuda Provisional Liquidators.

International Ltd. Private Client and Interest Account Claims, Class 3-d - BlockFi International Ltd. Loan Collateral Claims, and Class 3-e - BlockFi Inc. Interest Account Claims.

8.      "*Additional Bankruptcy Distribution*" means any Distribution under the Plan that is not a Cash Allocation or a Digital Assets Allocation.

9.      "*Administrative Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or after the Petition Date and prior to the Effective Date pursuant to section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business and (b) Allowed Professional Fee Claims.

10.     "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code), which:  (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five days after the Effective Date.

11.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

12.     "*Alameda*" means Alameda Research Ltd. and its Affiliates.

13.     "*Alameda Avoidable Transfer Claims*" means those Claims asserted by Alameda against a Debtor on account of alleged preference and/or fraudulent transfer actions, including, without limitation, any Avoidance Actions relating to the Alameda Loan Agreements and any pledges made thereto.

14.     "*Alameda Claims*" means (a) any Claim against any Debtor derived from, based upon, associated with, or arising under Alameda Loan Agreements, the parties thereto, and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the Alameda Loan Agreements, (b) the Alameda Avoidable Transfer Claims, and (c) any other Claims asserted by Alameda against any Debtor.

15.     "*Alameda Loan Agreements*" means that (a) certain master digital currency loan agreement dated July 15, 2019 between Alameda Research Ltd., as borrower, and BlockFi Lending LLC, as lender, whereby BlockFi Lending LLC agreed to lend Alameda Research Ltd. certain Digital Assets, (b) certain master loan agreement dated August 14, 2020 between Alameda Research Ltd., as borrower, and BlockFi International LLC, as lender, whereby BlockFi International LLC agreed to lend Alameda Research Ltd. certain Digital Assets, U.S. dollars, or other currency, and (c) certain amended and restated master loan agreement dated January 26, 2022 between Alameda Research Ltd., as borrower, and BlockFi International Ltd., as lender, whereby BlockFi International Ltd. agreed to lend Alameda Research Ltd. certain Digital Assets, U.S. dollars, or other currency.

16.     "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim or Interest Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court, or (d) a Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; *provided* that, with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the

2

Bankruptcy Court, or if such an objection is so interposed, such Claim or Interest shall have been Allowed by a Final Order. Any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. A Proof of Claim Filed after and subject to the Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest. "Allow" and "Allowing" shall have correlative meanings.

17.    "*Ancillary Proceedings*" means, if determined necessary or appropriate by the Bermuda Provisional Liquidators, ancillary proceedings (solely as they relate to the Bermuda Debtor) to any Bermuda Scheme of Arrangement, Bermuda Liquidation, the Chapter 11 Cases, or other proceeding seeking recognition of any aspects of any such Bermuda Scheme of Arrangement, Bermuda Liquidation, the Chapter 11 Cases, or other proceeding under any applicable Law.

18.    "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action or remedies that may be brought by or on behalf of the Debtors or their Estates against third parties or by third parties against the Debtors under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under other similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

19.    "*Ballot*" means the ballot, approved pursuant to the Disclosure Statement Order, distributed to Holders of Impaired Claims entitled to vote on the Plan, on which such Holders desiring to vote shall indicate acceptance or rejection of the Plan and, as applicable, make any additional elections contained in such ballot.

20.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

21.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey, or any other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of New Jersey.

22.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

23.    "*Bar Date*" means the applicable deadline by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

24.    "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

25.    "*Bermuda Claims Adjudication Process*" means the process for the filing of Claims against the Bermuda Debtor in the Bermuda Insolvency Proceedings by a Holder of a Claim who has not submitted to the jurisdiction of the Bankruptcy Court and, where such Claims are to be adjudicated by the Bermuda Provisional Liquidators, the consideration and adjudication of such Claims by the Bermuda Provisional Liquidators in accordance with Bermuda law and in a manner consistent with, and in furtherance of, the Cross-Border Insolvency Protocol Agreement.

3

26.     "*Bermuda Implementation Mechanism*" means any implementation mechanism(s) (which may be more than one) utilized for the purpose of implementing the Restructuring Transactions in a manner that gives effect to, or facilitates, the implementation of the Plan in Bermuda insofar as the Bermuda Debtor is concerned, including but not limited to, a Cross-Border Insolvency Protocol Agreement with the Bermuda Debtor together with (i) a Bermuda Scheme of Arrangement; (ii) a Bermuda Liquidation; (iii) a Bermuda Liquidation Entity; (iv) a Bermuda wind-down of the Bermuda Debtor; and/or (vi) Ancillary Proceedings.

27.     "*Bermuda Court*" means the Supreme Court of Bermuda.

28.     "*Bermuda Debtor*" means BlockFi International Ltd., an exempted company incorporated in Bermuda.

29.     "*Bermuda Insolvency Proceedings*" means the insolvency proceedings commenced on November 28, 2022 by BlockFi International Ltd. in the Bermuda Court.

30.     "*Bermuda Liquidation*" means a liquidation of the Bermuda Debtor, including pursuant to section 161(e) of the Companies Act.

31.     "*Bermuda Liquidation Entity*" means a trust established in Bermuda for the purposes of liquidating the assets of the Bermuda Debtor and making the distributions contemplated under the Plan and/or a corporate entity incorporated for that purpose.

32.     "*Bermuda Liquidation Fees*" means the costs, charges, expenses, and disbursements of the Bermuda Provisional Liquidators and of all persons retained by the Bermuda Provisional Liquidators, and all such other costs and expenses properly incurred during the provisional liquidation or liquidation of the Bermuda Debtor approved by the Bermuda Provisional Liquidators and allowed by an order of the Bermuda Court.

33.     "*Bermuda Liquidation Fund*" means an account established and under the control of the Bermuda Provisional Liquidators and funded by the Bermuda Debtor to meet the necessary costs, expenses, and disbursements incurred by the Bermuda Provisional Liquidators, and their advisers in connection with the provisional liquidation or liquidation of the Bermuda Debtor, whether prior to or after Consummation of the Plan, in an amount equal to the Bermuda Professionals Liquidation Fee Amount.

34.     "*Bermuda Order*" means an order of the Bermuda Court providing assistance to the Bankruptcy Court in giving effect to the Plan in Bermuda, including by giving effect to any Bermuda Implementation Mechanism, whether (i) by entry of an order approving the Cross-Border Insolvency Protocol Agreement with the Bermuda Debtor and acceded to by the Plan Administrator; (ii) sanctioning a Bermuda Scheme of Arrangement between the Bermuda Debtor, its creditors, and Holders of Interests (as applicable) that is materially consistent with the Plan or any part of it; (iii) by entry of a Bermuda Recognition Order giving effect to the Confirmation Order or such parts of the Confirmation Order that are amenable to recognition; (iv) pursuant to section 166 of the Companies Act, validating all transfers of the Bermuda Debtor's assets to the Wind-Down Debtors as set forth in Article IV.D of the Plan, the Confirmation Order, and the Plan Administrator Agreement; (v) by filing an application for entry of a Bermuda Liquidation and all matters related thereto, to dispense with the Companies Act post winding up statutory requirements (as applicable) to the extent approved by the Bermuda Court; (vi) by filing an application for the approval of the creation and discharge of a Bermuda Liquidation Entity; (vii) by way of a Bermuda wind-down of the Bermuda Debtor; and/or (viii) otherwise in accordance with the Laws of Bermuda.

35.     "*Bermuda Professional Fee Claim*" means a claim of a Bermuda Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the liquidation of the Bermuda Debtor.

36.     "*Bermuda Professionals*" means the Bermuda Provisional Liquidators, and their attorneys, and all other agents, managers, accountants, brokers, or other persons they may retain or employ.

37.     "*Bermuda Professionals Liquidation Fee Amount*" means the aggregate amount of Bermuda Professional Fee Claims and other unpaid fees and expenses Bermuda Professionals estimate that they will have incurred or will incur rendering services to the Bermuda Debtor and which may provide for an additional excess allowance of up to twenty-five percent of the total amounts of (a) for the period up to and including the Effective Date, and (b) the period post the Effective Date until the dissolution of the Bermuda Debtor, which estimate the Bermuda Professionals shall deliver to the Debtors as set forth in Article II.B.5 of the Plan.

38.     "*Bermuda Provisional Liquidators*" means Joel Edwards and Eleanor Fisher, as the Bermuda Provisional Liquidators or any such person appointed by the Bermuda Court to act as provisional liquidators or liquidators for the Bermuda Debtor in the Bermuda Insolvency Proceedings.

39.     "*Bermuda Recognition Order*" means the Bermuda Court's Final Order recognizing the Confirmation Order and any ancillary relief granted with respect thereto, including, but not limited to, a permanent stay of all Claims (including, as applicable, any Claim pursuant to Bermuda law) of creditors and Holders of Interests in the Bermuda Debtor affected by the Plan, the Cross-Border Insolvency Protocol Agreement with the Bermuda Debtor, a Bermuda wind-down of the Bermuda Debtor, and/or such other steps as may be required at the discretion of the Bermuda Provisional Liquidators.

40.     "*Bermuda Scheme of Arrangement*" means a scheme of arrangement with respect to the Bermuda Debtor pursuant to Section 99 of the Companies Act, governed by the Laws of Bermuda.

41.     "*BIA Indenture*" means the indenture, dated as of April 14, 2022, between BlockFi, as the Company, and the Indenture Trustee, as Indenture Trustee.

42.     "*BlockFi*" means BlockFi Inc., a Delaware corporation, and its subsidiaries.

43.     "*BlockFi Inc. General Unsecured Claims*" means any Claim against BlockFi Inc. that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi International Ltd. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi Lending II LLC General Unsecured Claim; (k) a BlockFi Services, Inc. General Unsecured Claim; (l) a BlockFi Trading LLC General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation against BlockFi Inc. are BlockFi Inc. General Unsecured Claims.

44.     "*BlockFi Inc. Interest Account Claims*" means any Claim against BlockFi Inc. that is held by an Account Holder on account of such Holder's BlockFi Interest Account.

45.     "*BlockFi Interest Account*" means the prepetition program through which Debtors BlockFi Inc. and/or BlockFi International Ltd., as applicable, allowed Account Holders to earn interest in exchange for transferring their Digital Assets to the Debtors pursuant to the Terms of Service.

46.     "*BlockFi International Ltd. General Unsecured Claims*" means any Claim against BlockFi International Ltd. that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending LLC General

Unsecured Claim; (j) a BlockFi Lending II LLC General Unsecured Claim; (k) a BlockFi Services, Inc. General Unsecured Claim; (l) a BlockFi Trading LLC General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, (ii) Claims that are not Secured resulting from litigation against BlockFi International Ltd., and (iii) any Wallet Account Claims against BlockFi International Ltd are BlockFi International Ltd. General Unsecured Claims.

47.    "*BlockFi International Ltd. License*" means that certain class F Digital Assets business license under the Digital Assets Business Act.

48.    "*BlockFi International Ltd. Loan Collateral Claims*" means any Claim against BlockFi International Ltd. that is held by an Account Holder on account of such Holder's Retail Loan Claim, Institutional Loan Claim, or BlockFi Private Client Account that constitutes a retail or institutional advance under the Loan Program.

49.    "*BlockFi International Ltd. Private Client and Interest Account Claims*" means any Claim against BlockFi International Ltd. that is held by an Account Holder on account of such Holder's BlockFi Interest Account or BlockFi Private Client Account that does not constitute a retail or institutional advance under the Loan Program.

50.    "*BlockFi Investment Products LLC General Unsecured Claims*" means any Claim against BlockFi Investment Products LLC that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Lending II LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Services, Inc. General Unsecured Claim; (l) a BlockFi Trading LLC General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation against BlockFi Investment Products LLC are BlockFi Investment Products LLC General Unsecured Claims.

51.    "*BlockFi Lending II LLC General Unsecured Claims*" means any Claim against BlockFi Lending II LLC that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Services, Inc. General Unsecured Claim; (l) a BlockFi Trading LLC General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation against BlockFi Lending II LLC are BlockFi Lending II LLC General Unsecured Claims.

52.    "*BlockFi Lending LLC General Unsecured Claims*" means any Claim against BlockFi Lending LLC that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court;

(b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending II LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Services, Inc. General Unsecured Claim; (l) a BlockFi Trading LLC General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation against BlockFi Lending LLC are BlockFi Lending LLC General Unsecured Claims.

53.    "*BlockFi Lending LLC Loan Collateral Claims*" means any Claim against BlockFi Lending LLC that is held by an Account Holder on account of such Holder's Retail Loan Claim, Institutional Loan Claim, or BlockFi Private Client Account that constitutes a retail or institutional advance under the Loan Program.

54.    "*BlockFi Lending LLC Private Client Account Claims*" means any Claim against BlockFi Lending LLC that is held by an Account Holder on account of such Holder's BlockFi Private Client Account that does not constitute a retail or institutional advance under the Loan Program.

55.    "*BlockFi Platform*" means the end-to-end Digital Asset platform for both retail and institutional Clients across the U.S. and internationally.

56.    "*BlockFi Private Clients*" means Clients that signed an individually negotiated contract to transition existing or new accounts to BlockFi Private Client Accounts.

57.    "*BlockFi Private Client Account*" means the program whereby, pursuant to the Terms of Service, eligible Clients individually negotiated terms to lend Digital Assets to BlockFi, were paid interest on such products in the form of Digital Assets at a negotiated rate, and may have also negotiated terms on other BlockFi products and services.

58.    "*BlockFi Services, Inc. General Unsecured Claims*" means any Claim against BlockFi Services, Inc. that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending II LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Lending LLC General Unsecured Claim; (l) a BlockFi Trading LLC General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation against BlockFi Services, Inc. are BlockFi Services, Inc. General Unsecured Claims.

59.    "*BlockFi Trading LLC General Unsecured Claims*" means any Claim against BlockFi Trading LLC that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending II LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Lending LLC General Unsecured Claim; (l) a BlockFi

Services, Inc. General Unsecured Claim; (m) a BlockFi Ventures LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, (ii) Claims that are not Secured resulting from litigation against BlockFi Trading LLC, and (iii) any Wallet Account Claims against BlockFi Trading LLC are BlockFi Trading LLC General Unsecured Claims.

60.    "*BlockFi Ventures LLC General Unsecured Claims*" means any Claim against BlockFi Ventures LLC that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending II LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Lending LLC General Unsecured Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC General Unsecured Claim; (n) a BlockFi Wallet LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, and (ii) Claims that are not Secured resulting from litigation against BlockFi Ventures LLC are BlockFi Ventures LLC General Unsecured Claims.

61.    "*BlockFi Wallet LLC General Unsecured Claims*" means any Claim against BlockFi Wallet LLC that is not Secured and is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a BlockFi Inc. Interest Account Claim; (c) a BlockFi International Ltd. Private Client and Interest Account Claim; (d) a BlockFi Inc. General Unsecured Claim; (e) a BlockFi Investment Products LLC General Unsecured Claim; (f) a BlockFi Lending LLC Private Client Account Claim; (g) a BlockFi Lending LLC Loan Collateral Claim; (h) a BlockFi International Ltd. Loan Collateral Claim; (i) a BlockFi Lending II LLC General Unsecured Claim; (j) a BlockFi International Ltd. General Unsecured Claim; (k) a BlockFi Lending LLC General Unsecured Claim; (l) a BlockFi Services, Inc. General Unsecured Claim; (m) a BlockFi Trading LLC General Unsecured Claim; (n) a BlockFi Ventures LLC General Unsecured Claim; (o) a Secured Tax Claim; (p) an Other Priority Claim; (q) a FTX Facility Claim; (r) a FTX Avoidable Transfer Claim; (s) an Alameda Claim; (t) a 3AC Claim; (u) a SEC Penalty Claim; (v) a Government Penalty Claim; (w) a State Regulatory Claim; (x) an Intercompany Claim; (y) an Intercompany Interest; (z) a *De Minimis* Claim; (aa) an Existing Common Equity Interest; (bb) an Existing Preferred Equity Interest; or (cc) a Convenience Claim.  For the avoidance of doubt, all (i) Claims resulting from the rejection of Executory Contracts and Unexpired Leases, (ii) Claims that are not Secured resulting from litigation against BlockFi Wallet LLC, and (iii) any Wallet Account Claims against BlockFi Wallet LLC are BlockFi Wallet LLC General Unsecured Claims.

62.    "*Board*" means the board of directors of BlockFi Inc.

63.    "*BTC*" means bitcoin, a form of Digital Asset introduced in 2009 by an anonymous developer or group of developers using the name Satoshi Nakamoto, transactions in which are recorded on the Bitcoin blockchain.

64.    "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

65.    "*BVI*" means the British Virgin Islands.

66.    "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

67.    "*Cash Allocation*" means all Cash at a Debtor to be distributed to Holders of Claims at such Debtor.

68.     "*Causes of Action*" mean any action, Claim, cross-claim, third-party claim, damage, judgment, cause of action, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, interest, guaranty, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise. For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any right to object to or otherwise contest Claims or Interests; (d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

69.     "*Certificate*" means any instrument evidencing a Claim or an Interest.

70.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated cases filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

71.     "*CID*" means the identification number used by the Debtors to identify a specific Account Holder.

72.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

73.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) (i) with respect to Administrative Claims (other than Professional Fee Claims and Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code), sixty days after the Administrative Claims Bar Date or (ii) with respect to all other Claims (other than Professional Fee Claims), 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Wind-Down Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

74.     "*Claims Register*" means the official register of Claims against, and Interests in, the Debtors maintained by the Clerk of the Bankruptcy Court or the Claims, Noticing, and Solicitation Agent.

75.     "*Claims, Noticing, and Solicitation Agent*" means Kroll Restructuring Administration LLC, in its capacity as the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases pursuant to the *Order Authorizing the Debtors' Employment and Retention of Kroll Restructuring Administration LLC as Administrative Advisor Nunc Pro Tunc to the Petition Date* [Docket No. 486] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

76.     "*Class*" means a class of Claims against, or Interests in, the Debtors as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

77.     "*Clients*" means BlockFi's retail and institutional Account Holders.

78.     "*Committee*" means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code on December 21, 2022 [Docket No. 130].

79.     "*Committee Settlement*" means the comprehensive settlement between the Debtors, the Committee, and the Committee Settlement Parties, as set forth in Article IV.C of the Plan.

80.     "*Committee Settlement Parties*" means Zac Prince, Flori Marquez, Amit Cheela, Jonathan Mayers, Rob Loban, Tony Lauro, Yuri Mushkin, Andrew Tam, David Spack, and all other Persons who served as officers or

directors of the Debtors during these Chapter 11 Cases, including Alan Carr, Jill Frizzley, Scott Vogel, Jennifer Hill, Harvey Tepner, and Pamela Corrie.

81.    "*Companies Act*" means the Bermuda Companies Act of 1981 as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

82.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

83.    "*Confirmation Date*" means the date on which Confirmation occurs.

84.    "*Confirmation Hearing*" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code at which the Debtors will seek Confirmation of the Plan.

85.    "*Confirmation Order*" means the Bankruptcy Court's order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

86.    "*Consummation*" means the occurrence of the Effective Date.

87.    "*Convenience Claim*" means any Allowed Claim in Class 3-a (BlockFi Lending LLC Private Client Account Claims), Class 3-b (BlockFi Lending LLC Loan Collateral Claims), Class 3-c (BlockFi International Ltd. Private Client and Interest Account Claims), Class 3-d (BlockFi International Ltd. Loan Collateral Claims), Class 3-e (BlockFi Inc. Interest Account Claims), Class 4-a (BlockFi Lending LLC General Unsecured Claims), Class 4-b (BlockFi International Ltd. General Unsecured Claims), or Class 4-c (BlockFi Inc. General Unsecured Claims), on a CID-by-CID basis with respect to Class 3, valued greater than the *De Minimis* Claim Threshold ($10.00) but less than or equal to the Convenience Claim Threshold; *provided* that the value of Claims in Class 3-b (BlockFi Lending LLC Loan Collateral Claims) and Class 3-d (BlockFi International Ltd. Loan Collateral Claims) for Convenience Claims purposes shall be determined after application of the Set Off Treatment or Loan Repayment Treatment, as applicable; *provided further* that Holders whose Allowed Claims in such Classes exceed the Convenience Claim Threshold may irrevocably elect to have their Claims reduced to the Convenience Claim Threshold and treated as Convenience Claims.

88.    "*Convenience Claim Election*" means the election through a Ballot, in accordance with the procedures set forth in the Disclosure Statement Order, pursuant to which Account Holders and Holders of General Unsecured Claims of BlockFi Lending LLC, BlockFi International Ltd., and BlockFi Inc. whose Claims exceed the Convenience Claim Threshold, irrevocably elect to have their Claims reduced to the Convenience Claim Threshold and treated as Convenience Claims.

89.    "*Convenience Claim Recovery*" means either (a) a Cash payment of no greater than 50% of such Allowed Convenience Claim or (b) a payment in BTC, ETH, or GUSD (or an equivalent Distributable Stablecoin) of no greater than 50% of such Allowed Convenience Claim; *provided* that such Convenience Claim Recovery shall be in full and final satisfaction of such Allowed General Unsecured Claim and Allowed Account Holder Claim, as applicable.

90.    "*Convenience Claim Threshold*" means $3,000.

91.    "*Cross-Border Insolvency Protocol Agreement*" means the cross-border insolvency protocol proposed to be negotiated and agreed between the Bermuda Debtor and the Bermuda Provisional Liquidators and implemented by the Bermuda Debtor, the Plan Administrator and the Bermuda Provisional Liquidators in substantially the form which shall be included in the Plan Supplement, and as ultimately approved by the Bankruptcy Court and the Bermuda Court that will become effective on or before the Effective Date, which, among other things, will set out (a) processes pursuant to which Claims against the Bermuda Debtor will be adjudicated by the Bermuda Provisional Liquidators in accordance with Bermuda law; (b) the matters requiring the approval of Bermuda Provisional Liquidators, (c) the circumstances in which the Bermuda Provisional Liquidators may make Distributions pursuant to

the Plan; and (d) the roles and responsibilities of the Bermuda Provisional Liquidators and the Plan Administrator in the Chapter 11 Cases and the Bermuda Insolvency Proceedings.

92.    "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

93.    "*D&O Liability Insurance Policies*" means all insurance policies issued or providing coverage to the Debtors, the Wind-Down Debtors, or the Estates for directors', managers', officers', members', and trustees' liability (including any "tail policy") and all agreements, documents, or instruments relating thereto.

94.    "*D&O Insurance Providers*" means any company or other entity that issued or entered into any D&O Liability Insurance Policies, but only in their capacities as such.

95.    "*De Minimis Claim*" means any Claim equal to or less than the *De Minimis* Claim Threshold.

96.    "*De Minimis Claim Threshold*" means $10, after accounting for Standard Withdrawal Fees, determined on a CID-by-CID basis.

97.    "*Debtor Release*" means the releases set forth in <u>Article VIII.A</u> of the Plan.

98.    "*Debtors*" means, collectively, each of the following:  BlockFi Inc.; BlockFi Lending LLC, BlockFi Wallet LLC; BlockFi Ventures LLC; BlockFi International Ltd.; BlockFi Investment Products LLC; BlockFi Services, Inc.; BlockFi Trading LLC; and BlockFi Lending II LLC.

99.    "*Definitive Documents*" means those documents governing the Restructuring Transactions as applicable, including the following:  (a) the Plan (and any and all exhibits, annexes, and schedules thereto); (b) the Confirmation Order; (c) the Disclosure Statement and the other Solicitation Materials; (d) the Disclosure Statement Order; (e) all pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders), including the First Day Filings and all orders sought pursuant thereto; (f) the Plan Supplement; (g) any key employee incentive plan or key employee retention plan; and (h) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably desired or necessary to consummate the Restructuring Transactions (including any exhibits, amendments, modifications, or supplements made from time to time thereto).

100.    "*Digital Asset Business Act*" means the Bermuda Digital Assets Business Act 2018 as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

101.    "*Digital Assets*" means a fungible and transferable digital representation of units in which encryption techniques and a blockchain are used to regulate the generation of digital units and verify the transfer of assets pursuant to a decentralized protocol, operating independently from a central bank.  The value of Digital Assets will be truncated at the 0.00000000 decimal place, consistent with the Debtors' historical practice.

102.    "*Digital Assets Allocation*" means Digital Assets to be distributed to Holders of Claims at a Debtor in the form of BTC, ETH, and/or Distributable Stablecoin, as determined by such Debtor, subject to any applicable withdrawal fees and any administrative costs and expenses incurred in connection with, or arising out of, the Digital Assets distributed to Account Holders pursuant to the Digital Asset Allocation.

103.    "*Digital Assets Conversion Table*" means the conversion table showing Digital Assets values as of the Petition Date, the form of which shall be included in the Plan Supplement.

104.    "*Disallowed*" means, as to a Claim or an Interest, a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan or a Final Order of the Bankruptcy Court, or any other court of competent jurisdiction.

105.     "*Disclosure Statement*" means the *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan.

106.     "*Disclosure Statement Order*" means a Final Order of the Bankruptcy Court approving the Disclosure Statement.

107.     "*Disputed*" means a Claim or an Interest or any portion thereof: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order; and (c) with respect to which a party in interest has Filed a Proof of Claim, a Proof of Interest, or otherwise made a written request to a Debtor for payment.

108.     "*Disputed Claims Reserve*" means an appropriate reserve in an amount to be determined by the Wind-Down Debtors for Distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VII.A hereof.

109.     "*Distributable Stablecoin*" means GUSD, USDC and USDT.

110.     "*Distribution*" means any (a) Cash, (b) property, (c) Digital Assets, or (d) interest in property to be paid or distributed hereunder to the Holders of Allowed Claims on account of such Claims.

111.     "*Distribution Date*" means, except as otherwise set forth herein, subject to the requirements of any Bermuda Implementation Mechanism, the date or dates determined by the Wind-Down Debtors, on or after the Effective Date, upon which the Plan Administrator shall make Distributions to Holders of Allowed Claims entitled to receive Distributions under the Plan.

112.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against the Debtors are eligible to receive Distributions under the Plan, which date shall be the Effective Date, or such other date as is determined by the Debtors or designated by an order of the Bankruptcy Court.

113.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective.

114.     "*Emergent*" means Emergent Fidelity Technologies Ltd.

115.     "*Emergent Pledge*" means that certain pledge agreement entered into on November 9, 2022, by and among BlockFi Lending LLC and BlockFi International Ltd., pursuant to which Emergent pledged approximately 56 million shares of Robinhood Markets, Inc. class A common stock and proceeds related thereto.

116.     "*Employee Transition Plan*" means the transition plan to facilitate the Wind Down, whereby certain of the Debtors' employees in legal, finance, compliance, operations, data, product, engineering, people, and security will assist the Wind-Down Debtors with, among other things: (a) securely maintaining and protecting Client data, including "Know Your Customer" data; (b) updating BlockFi's user interface to reflect proper accounting of Digital Assets as of the Platform Pause; (c) reconciling Client Claims and Accounts; (d) rebalancing the Debtors' Digital Assets portfolio; (e) reopening the BlockFi Platform for a limited period of time to permit Clients to withdraw Digital Assets safely and securely; (f) conducting ordinary course maintenance of the BlockFi Platform; (g) assisting with the Emergent/Marex, and Alameda/FTX litigation; and (h) interacting and responding to state, federal and international regulators.

117.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

118.     "*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2012 & Supp. V 2017), and the regulations promulgated thereunder.

119.    "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through and including the Effective Date.

120.    "*ETH*" means ether, a form of Digital Asset, as defined by https://ethereum.org/en/what-is-ethereum/.

121.    "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and to the extent they are estate fiduciaries: (a) each of the Debtors and the Wind-Down Debtors; (b) the Committee and each of its respective members; and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former control persons, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, officers, directors, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.[2]

122.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

123.    "*Existing Common Equity Interests*" means any Interest in BlockFi existing immediately prior to the occurrence of the Effective Date other than Existing Preferred Equity Interests.

124.    "*Existing Preferred Equity Interests*" means, collectively, the (a) Series Seed Preferred Stock, (b) Series Seed 2 Preferred Stock, (c) Series A-1 Preferred Stock, (d) Series A-2 Preferred Stock, (e) Series A-3 Preferred Stock, (f) Series B Preferred Stock, (g) Series C Preferred Stock, (h) Series D Preferred Stock, (i) Series E Preferred Stock, (j) Series E-1 Preferred Stock, and (k) warrants to purchase any of the foregoing.

125.    "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

126.    "*Fee Examiner*" means Elise S. Frejka, the fee examiner appointed by the Bankruptcy Court pursuant to the Fee Examiner Order.

127.    "*Fee Examiner Order*" means the *Order Appointing an Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals* [Docket No. 925].

128.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing, respectively, in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim or Proof of Interest, file, filed, or filing, respectively, with the Claims, Noticing, and Solicitation Agent.

129.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

130.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal that has been or may be taken or any petition for certiorari or any motion for a new trial, reargument, reconsideration, or rehearing that has been or may be made or filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the motion for a new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order (if any such motion has been or may be granted), or have otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules

---

[2]    The Exculpated Parties and related provision shall not extend to any Cause of Action identified in the Schedule of Retained Causes of Action filed with the Plan Supplement.

of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

131. "*First Day Filings*" means the "first-day" filings that the Debtors made upon or shortly following the commencement of the Chapter 11 Cases.

132. "*FTX*" means FTX Trading Ltd. and its debtor Affiliates.

133. "*FTX Avoidable Transfer Claims*" means those claims asserted by FTX against the Debtors on account of alleged preference and/or fraudulent transfer actions (including but not limited to, loan repayments, exchange withdrawals, collateral pledges/transfers), including, without limitation, any Avoidance Actions relating to (a) the Emergent Pledge or (b) assets withdrawn by the Debtors from the FTX platform.

134. "*FTX Facility*" means that certain unsecured loan facility provided for under the FTX Loan Agreement.

135. "*FTX Facility Claims*" means any Claim against any Debtor derived from, based upon, associated with, or arising under the FTX Loan Agreement or FTX Purchase Option Agreement and the parties thereto and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the FTX Loan Agreement or FTX Purchase Option Agreement.

136. "*FTX Loan Agreement*" means that certain unsecured loan agreement, dated June 30, 2022, between BlockFi Inc., as borrower, and West Realm Shires Inc. (d/b/a FTX US), as lender, and BlockFi Trading LLC and BlockFi Lending LLC, as guarantors, providing for up to $400 million in loans consisting of (a) $300 million for general corporate purposes, including to fund BlockFi's obligations to its Clients and (b) $100 million solely to fund BlockFi Inc.'s obligations to its Clients.

137. "*FTX Purchase Option*" means the option for FTX to purchase the equity of the Debtors pursuant to the FTX Purchase Option Agreement, which option is unenforceable, null, and void.

138. "*FTX Purchase Option Agreement*" means that certain option agreement dated, June 30, 2022, by and among West Realm Shires Inc. (d/b/a FTX.US) and with respect to certain matters, FTX Trading Ltd., and certain other parties thereto.

139. "*FTX Settlement Effective Date*" shall have the meaning ascribed to it in the FTX Settlement.

140. "*FTX Settlement*" means that certain settlement dated September 25, 2023 by and between the Debtors and FTX [Docket No. 1644].

141. "*General Unsecured Claim*" means a BlockFi Wallet LLC General Unsecured Claim, BlockFi Trading LLC General Unsecured Claim, BlockFi Ventures LLC General Unsecured Claim, BlockFi Inc. General Unsecured Claim, BlockFi Lending LLC General Unsecured Claim, BlockFi International Ltd. General Unsecured Claim, BlockFi Investment Products LLC General Unsecured Claim, BlockFi Services, Inc. General Unsecured Claim, or BlockFi Lending II LLC General Unsecured Claim.

142. "*Government Penalty Claims*" means any Claims asserted by Governmental Units for any fine, penalty, forfeiture, or damages to the extent such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss as provided for by section 726(a)(4) of the Bankruptcy Code. For the avoidance of doubt, the SEC Penalty Claims are not Government Penalty Claims under the Plan.

143. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

144. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

145. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

146. "*Indemnification Provisions*" means the provisions in place before or as of the Effective Date, whether in a Debtor's bylaws, certificates of incorporation, limited liability company agreement, partnership agreement, management agreement, other formation or organizational document, board resolution, indemnification agreement, contract, or otherwise providing the basis for any obligation of a Debtor as of the Effective Date to indemnify, defend, reimburse, or limit the liability of, or to advance fees and expenses to, any of the Debtors' current and former directors, equity holders, managers, officers, members, employees, attorneys, accountants, investment bankers, and other professionals, and each such Entity's respective Affiliates, as applicable.

147. "*Indenture Trustee*" means Ankura Trust Company, LLC.

148. "*Indenture Trustee Fees/Expenses*" has the meaning set forth in Article VIII.H of the Plan.

149. "*Institutional Borrowers*" means the Account Holders with outstanding Loan Account Obligations made in connection with the institutional advances made under the Loan Program as of the Petition Date.

150. "*Institutional Loan Claims*" means an Institutional Borrower's Claim against the Debtors on account of the Digital Assets such Institutional Borrower transferred in connection with its Loan Account Obligation(s).

151. "*Insurance Contract*" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto, including, without limitation, all D&O Liability Insurance Policies.

152. "*Insurer*" means any company or other entity that issued or entered into an Insurance Contract (including any third party administrator) and any respective predecessors and/or affiliates thereof, including, for the avoidance of doubt, any D&O Insurance Providers.

153. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

154. "*Intercompany Interest*" means, other than an Interest in BlockFi Inc., an Interest in a Debtor or an Affiliate of a Debtor that is held by another Debtor.

155. "*Interest*" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of an Entity, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in an Entity whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, and including any Claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to the foregoing.

156. "*Invalid Wire Transfer*" means all wire transfers in the Debtors' possession that the Debtors received either before or after the Petition Date and were unable to process due to improper wiring information, including invalid "Know Your Customer" information or other incorrect wiring instructions.

157. "*Invalid Wire Transmitter*" means the Person or Entity responsible for issuing the Invalid Wire Transfer to the Debtors.

158. "*Investment Company Act*" means the U.S. Investment Company Act of 1940, 15 U.S.C. §§ 80a-1-80a-64, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

15

159.     "*IRC*" means the U.S. Internal Revenue Code of 1986, as amended.

160.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001 and the rules and regulations promulgated thereunder, as applicable to the Chapter 11 Cases.

161.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

162.     "*Loan Account Obligations*" means any claim of the Debtors against a Retail Borrower or an Institutional Borrower, as applicable, with respect to advances made by the Debtors in connection with the Loan Program as of the Petition Date.

163.     "*Loan Collateral*" means collateral in the form of Digital Assets provided by Retail Borrowers or Institutional Borrowers, as applicable, to the Debtors in connection with the Loan Program.

164.     "*Loan Program*" means the prepetition program through which Debtors BlockFi Lending LLC and BlockFi International Ltd. made retail or institutional advances, as applicable, to Retail Borrowers, Institutional Borrowers, or BlockFi Private Clients, as applicable, in return for Loan Collateral.

165.     "*Loan Repayment Amount*" means an amount of BTC, ETH, or Stablecoin that is equivalent in value to the amount of the Loan Account Obligations valued as of the Petition Date repaid by the applicable Holder of an Allowed BlockFi Lending LLC Loan Collateral Claim or Allowed BlockFi International Ltd. Loan Collateral Claim pursuant to the Loan Repayment Election.

166.     "*Loan Repayment Election*" means the election after the Effective Date that Holders of Allowed BlockFi Lending LLC Loan Collateral Claims and BlockFi International Ltd. Loan Collateral Claims may make to repay their Loan Account Obligations and receive the Loan Repayment Treatment; *provided* that such Holder shall make the Loan Repayment Election on or before the Loan Repayment Treatment Deadline; *provided further* if such Holder does not make the Loan Repayment Election on or before the Loan Repayment Treatment Deadline, such Holder shall receive the Set Off Treatment.

167.     "*Loan Repayment Treatment*" means the treatment that Holders of Allowed BlockFi Lending LLC Loan Collateral Claims and BlockFi International Ltd. Loan Collateral Claims shall receive instead of the Set Off Treatment if, and only if, the Plan Administrator, in its sole discretion, determines after such Holder makes the Loan Repayment Election that the repayment of such Holder's Loan Account Obligation is feasible such that it will not impose material costs on the Wind-Down Debtors; *provided, however*, if the Plan Administrator makes the determination that such Holder's repayment of their Loan Account Obligation is not feasible, such Holder shall not be eligible to make the Loan Repayment Election and shall receive the Set Off Treatment; *provided further, however*, if the Plan Administrator makes the determination that such Holder's repayment of their Loan Account Obligation is feasible such that it will not impose material costs on the Estates, then such Holder shall be entitled to make the Loan Repayment Amount pursuant to procedures to be provided by the Plan Administrator to such holder after the Effective Date.

168.     "*Loan Repayment Treatment Deadline*" means ten calendar days following the Effective Date.

169.     "*Marex*" means Marex Capital Markets, Inc. (f/k/a ED&F Man Capital Markets, Inc.).

170.     "*Money Transmitter Licenses*" means any license or similar authorization of a Governmental Unit that an Entity is required to obtain to operate as a broker of Digital Assets.

171.     "*Other Priority Claim*" means any Claim against a Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

172.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

173.     "*Petition Date*" means November 28, 2022.

16

174.     "*Plan*" means this joint chapter 11 plan and all exhibits, supplements, appendices, and schedules hereto, as may be altered, amended, supplemented, or otherwise modified from time to time in accordance with Article X.A hereof, including the Plan Supplement (as altered, amended, supplemented, or otherwise modified from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

175.     "*Plan Administrator*" means the person selected by the Committee to administer the Wind Down. All costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Wind-Down Debtors' Assets.

176.     "*Plan Administrator Agreement*" means that certain agreement by and among the Debtors, the Plan Administrator, and the Wind-Down Debtors, which shall be included in the Plan Supplement.

177.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be Filed by the Debtors, as may be amended, supplemented, altered, or modified from time to time, and which includes:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the Restructuring Transactions Memorandum; (d) the Digital Assets Conversion Table; (e) the Plan Administrator Agreement; (f) the Wind-Down Budget; (g) the identification of the member(s) of the Wind-Down Debtors' Oversight Committee; (h) the Employee Transition Plan; (i) the Cross-Border Insolvency Protocol Agreement; and (j) any additional documents necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.

178.     "*Platform Pause*" means November 10, 2022, at 8:15 p.m. (prevailing Eastern Time), the date on which BlockFi paused BlockFi Platform activities, including Account withdrawals.

179.     "*Post-Effective Date Convenience Claim Election*" means the election after the Effective Date that Holders of Allowed Convenience Claims may make to receive the Convenience Claim Recovery in BTC, ETH, or Distributable Stablecoin instead of Cash; *provided* that such Holder shall make the Post-Effective Date Convenience Claim Election on or before the Post-Effective Date Convenience Claim Election Deadline; *provided further* if such Holder does not make the Post-Effective Date Convenience Claim Election on or before the Post-Effective Date Convenience Claim Election Deadline, such Holder shall receive the Convenience Claim Recovery in Cash.

180.     "*Post-Effective Date Convenience Claim Election Deadline*" means ten calendar days following the Effective Date.

181.     "*Priority Tax Claim*" means any Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

182.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in that Class or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interest under the Plan, unless otherwise indicated.

183.     "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been Allowed by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

184.     "*Professional Fee Claim*" means any Administrative Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

185.    "*Professional Fee Escrow Account*" means an escrow account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

186.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, which shall be estimated pursuant to the method set forth in Article II.B.3 of the Plan.

187.    "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

188.    "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

189.    "*Related Party*" means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

190.    "*Released Parties*" means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Releasing Parties; (d) the Bermuda Provisional Liquidators; (e) the Committee Settlement Parties (subject to the terms of the Committee Settlement); (f) the Indenture Trustee; and (g) each Related Party of each Entity in clauses (a) through (f); *provided* that any of (i) FTX; (ii) 3AC; (iii) Alameda; (iv) Emergent; (v) Marex; (vi) Core Scientific; (vii) the D&O Insurance Providers; (viii) any Holder of a Claim against or Interest in the Debtors that is not a Releasing Party; (ix) any known Holder of a Claim against or Interest in the Debtors that did not receive notice of the opportunity to opt out of the releases contained in the Plan; (x) Kroll Restructuring Administration LLC;[3] and (xi) each Related Party of each Entity in clauses (i) through (x) shall not be a "Released Party;" *provided further* that additional Persons, other than the Committee Settlement Parties and their Related Parties, may be included in the Plan Supplement as non-Released Parties.

191.    "*Releasing Parties*" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) the Committee Settlement Parties (subject to the terms of the Committee Settlement); and (h) each Related Party of each Entity in clauses (a) through (g).  For the avoidance of doubt, no Holder of any Claim or Interest that is deemed to reject this Plan shall be a Releasing Party.

192.    "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, reorganizations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors reasonably determine to be necessary to implement the transactions described in this Plan, as described in more detail in Article IV.B herein and the Restructuring Transactions Memorandum.

---

[3]    Exclusively with regard to Claims and Causes of Action (in law or equity) against Kroll Restructuring Administration LLC ("Kroll") arising from or related to the data breach occurring in or around August 2023 or any other data breach at Kroll during these Chapter 11 cases that impacts BlockFi claimants.

18

193.    "*Restructuring Transactions Memorandum*" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Restructuring Transactions, the form of which shall be included in the Plan Supplement.

194.    "*Retail Borrowers*" means the individual Account Holders with outstanding Loan Account Obligations made in connection with the retail advances made under the Loan Program as of the Petition Date.

195.    "*Retail Loan Claims*" means a Retail Borrower's Claim against the Debtors on account of the Digital Assets such Retail Borrower transferred in connection with its Loan Account Obligation(s).

196.    "*Retained Preference Claims*" means claims arising under section 547 and 550 of the Bankruptcy Code held by the Debtors against any Person (other than a Committee Settlement Party or other officer or director of the Debtors) that, in total, aggregate over $250,000, arising out of withdrawals from BlockFi Interest Accounts or BlockFi Private Client Accounts (other than release of loan collateral upon repayment of loans) on or after November 2, 2022[4] held by any Debtor other than BlockFi International.

197.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) by the Debtors or Wind-Down Debtors, as applicable, pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

198.    "*Schedule of Retained Causes of Action*" means the schedule of Vested Causes of Action of the Debtors, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement.

199.    "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by each of the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements may have been or may be amended, modified, or supplemented from time to time.

200.    "*SEC*" means the United States Securities and Exchange Commission.

201.    "*SEC Penalty Claims*" means the civil monetary penalty of $50 million that the Debtors agreed to pay to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury to settle the *Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 9(f) of the Investment Company Act of 1940, Making Findings, and Imposing a Cease-and-Desist Order* that the SEC issued on February 14, 2022, with respect to the Debtors' alleged violations of the Securities Act and the Investment Company Act.  For the avoidance of doubt, the SEC Penalty Claims are not Government Penalty Claims under the Plan.

202.    "*SEC Stipulation*" means the *Stipulation and Agreed Order Between U.S. Securities and Exchange Commission and Debtors to Forego Receiving Distribution from Debtors' Bankruptcy Estates* [Docket No. 1099].

203.    "*Secured*" means, when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a secured Claim.

---

[4]    For the avoidance of doubt, the November 2, 2022 date shall solely be used for purposes of determining Retained Preference Claims.

204.     "*Secured Tax Claim*" means any Secured Claim against a Debtor that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

205.     "*Securities Act*" means the U.S. Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

206.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

207.     "*Series A-1 Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 3,109,745 shares.

208.     "*Series A-2 Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 127,210 shares.

209.     "*Series A-3 Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 7,753,114 shares.

210.     "*Series B Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 9,837,208 shares.

211.     "*Series C Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 7,642,144 shares.

212.     "*Series D Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 9,739,310 shares.

213.     "*Series E Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 2,442,193 shares.

214.     "*Series E-1 Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 660,116 shares.

215.     "*Series Seed Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 2,833,977 shares.

216.     "*Series Seed-2 Preferred Stock*" means shares of Preferred Stock of BlockFi Inc., par value $0.00001 per share, issued and outstanding in an aggregate of 1,167,941 shares.

217.     "*Set Off Treatment*" means, with respect to any Allowed BlockFi Lending LLC Loan Collateral Claims or Allowed BlockFi International Ltd. Loan Collateral Claims, such Claims will be set off or recouped against the applicable Loan Account Obligations outstanding on the Petition Date.

218.     "*Solicitation Letter*" means the letter in support of the Plan filed by the Committee, recommending that the Debtors' creditors vote in favor of the Plan.

219.     "*Solicitation Materials*" means all solicitation materials with respect to the Plan.

220.     "*Special Committee*" means the special committee of Debtor BlockFi Inc. comprised of Jennifer Hill and Scott Vogel.

221.     "*Stablecoin*" means any Digital Asset designed to reduce price volatility through either (i) pegging the value of the Digital Asset to a reserve asset, such as a fiat currency, exchange-traded commodity, or another Digital Asset, or (ii) regulating the supply of the Digital Asset through an algorithm.

222.    "*Standard Withdrawal Fees*" means the transaction costs associated with withdrawing and making any Distributions in accordance with this Plan, and, in the case of any Digital Assets, such Standard Withdrawal Fees will be updated to match gas fees as closely as possible at the time of Distribution and posted on blockfi.com/fees and blockfi.com/bpc-fees in advance of any Distribution.

223.    "*State Governmental Regulatory Stipulation*" means the *Joint Stipulation and Agreed Order Between Certain State Governmental Regulatory Claimants and Debtors to Forego Receiving Distribution from Debtors' Bankruptcy Estates* [Docket No. 1613].

224.    "*State Governmental Regulatory Claims*" means the Claims associated with the Proofs of Claims resolved in connection with the State Governmental Regulatory Stipulation.  For the avoidance of doubt, the State Governmental Regulatory Claims are not Government Penalty Claims under the Plan.

225.    "*Terms of Service*" means the Terms of Service governing each Account Holder's access to, and use of, the Debtors' products and services as well as the Debtors' mobile and web-based application(s), website(s), software, programs, documentation, tools, hardware, internet-based services, components, and any updates (including software maintenance, service information, help content, bug fixes or maintenance releases) provided to Account Holders by the Debtors, directly or indirectly, as amended, modified, or supplemented from time to time in accordance with their terms.

226.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in <u>Article VIII.B</u> of the Plan.

227.    "*Trade-Only Assets*" means the trade-only digital assets held in certain Account Holder's Accounts under the Wallet Program that are only available for buying, selling, and holding, and are not available for withdrawals from the BlockFi Platform.

228.    "*Unclaimed Distribution*" means any Distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that, within six months of outreach, has not:  (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check, (b) given notice to the Wind-Down Debtors of an intent to accept a particular Distribution, (c) responded to the Wind-Down Debtors' requests for information necessary to facilitate a particular Distribution, or (d) taken any other action necessary to facilitate such Distribution.

229.    "*Unclaimed Property*" means all unclaimed property subject to section 347 of the Bankruptcy Code.

230.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

231.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

232.    "*USDC*" means USD Coin, which is a Stablecoin pegged to the United States dollar.

233.    "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

234.    "*Vested Causes of Action*" means the Causes of Action vesting in the Wind-Down Debtors pursuant to <u>Article IV.L</u> of the Plan and enumerated on the Schedule of Retained Causes of Action, which shall be included in the Plan Supplement.  The Vested Causes of Action shall include, without limitation, the Retained Preference Claims and certain Causes of Action (including but not limited to Avoidance Actions) against Insurers in respect of D&O Liability Insurance Policies.

235.    "*Voting Deadline*" means the date and time by which the Claims, Noticing, and Solicitation Agent must actually receive the Ballots, as set forth on the Solicitation Materials.

236.    "*Wallet Account Claims*" means any Account Holder Claim against BlockFi Wallet LLC, BlockFi Trading LLC, or BlockFi International Ltd. on account of Digital Assets transferred into the Wallet Program.

237.    "*Wallet Program*" means the prepetition program through which the Debtors allowed Account Holders to store Digital Assets on the BlockFi Platform pursuant to the Terms of Service.

238.    "*Wind Down*" means the wind down of the Debtors' Estates following the Effective Date as contemplated in Article IV.C hereof.

239.    "*Wind-Down Budget*" means that certain budget governing the fees, expenses, and disbursements required for the Wind Down, which shall be included in the Plan Supplement.

240.    "*Wind-Down Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, and as described in Article IV.D.1 to, among other things, effectuate the Wind Down, commence, litigate and settle the Vested Causes of Action that are not released, waived, settled, compromised, or transferred under the Plan and make Distributions pursuant to the terms of the Plan, the Plan Administrator Agreement, and the Cross-Border Insolvency Protocol Agreement; *provided* that, for the avoidance of doubt, the Wind-Down Debtors shall not conduct any business operations or continue the Debtors' business operations after the Effective Date.

241.    "*Wind-Down Debtors' Assets*" means all of the Debtors' assets, which shall vest in the Wind-Down Debtors not earlier than one (1) business day before such assets are to be distributed to Allowed Claims pursuant to this Plan and the Confirmation Order and as further set forth in the Plan Administrator Agreement.

242.    "*Wind-Down Debtors' Expenses*" means all actual and necessary costs and expenses incurred by the Wind-Down Debtors or Plan Administrator, as applicable, in connection with carrying out the obligations of the Wind-Down Debtors pursuant to the terms of the Plan and the Plan Administrator Agreement.

243.    "*Wind-Down Debtors' Oversight Committee*" means the oversight committee, which is tasked with overseeing the Wind-Down Debtors in accordance with the Plan and the Plan Administrator Agreement, which shall be selected by the Committee and at all relevant times include a member appointed to represent the interests of each of BlockFi Inc., BlockFi International, and BlockFi Lending, and one member appointed by the Bermuda Provisional Liquidators (or such greater amount as agreed to by the Committee and the Bermuda Provisional Liquidators).

244.    "*Wind-Down Reserve*" means the amount set forth in the Wind-Down Budget to fund the Wind-Down Debtors.

**B.    Rules of Interpretation**

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (3) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (4) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter have been or may thereafter be validly amended, amended and restated, supplemented, or otherwise modified; (5) unless otherwise specified, any reference to an Entity as a Holder of a Claim or Interest, includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation

of the Plan; (10) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) unless otherwise specified, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases; (14) any effectuating provisions may be interpreted by the Debtors or the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (15) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (18) the use of "include" or "including" is without limitation unless otherwise stated.

**C.      Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of [New York], without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Wind-Down Debtor, as applicable, matters relating to any Bermuda Implementation Mechanism shall be governed by the Laws of the jurisdiction in which such Bermuda Implementation Mechanism takes place (which, for any Bermuda Scheme of Arrangement, any Bermuda Liquidation, the Cross-Border Insolvency Protocol Agreement, or any Bermuda Liquidating Entity shall be the Laws of Bermuda) and matters relating to any Bermuda Order shall be governed by the Laws of Bermuda.

**E.      Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein. Unless otherwise expressly provided herein, references to Digital Assets denoted with a $ refer to the value of such Digital Assets in Cash as of the Petition Date, utilizing the conversion rates provided in the Digital Assets Conversion Table.

**F.      Reference to the Debtors or the Wind-Down Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Wind-Down Debtors mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.    **Nonconsolidated Plan**

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, Wallet Account Claims, and Post-Petition Digital Asset and Cash Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.    **Administrative Claims**

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), unless previously Filed, requests for payment of Allowed Administrative Claims (other than Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code) must be Filed and served on the Wind-Down Debtors pursuant to the procedures specified in the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Wind-Down Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Objections to such requests, if any, must be Filed and served on the Wind-Down Debtors and the requesting party by the Claims Objection Bar Date for Administrative Claims.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive an amount of Cash equal to the amount of the unpaid or unsatisfied portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than thirty days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Objections to requests for payment of such Administrative Claims, if any, must be Filed with the Bankruptcy Court and served on the Wind-Down Debtors and the requesting Holder no later than the Claims Objection Bar Date for Administrative Claims.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

B.      **Professional Fee Claims**

1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules.  The Wind-Down Debtors shall pay Professional Fee Claims in Cash to such Professionals in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

2.      <u>Professional Fee Escrow Account</u>

No later than the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow Account shall be property of the Debtors' or the Wind-Down Debtors' Estates, as applicable.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Wind-Down Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3.      <u>Professional Fee Escrow Amount</u>

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before the anticipated Effective Date and projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional for purposes of funding the Professional Fee Escrow Amount. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the Wind-Down Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.      <u>Post-Confirmation Fees and Expenses</u>

Except as otherwise specifically provided for in the Plan, from and after the Confirmation Date, the Debtors and/or the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to administration of the Chapter 11 Cases, prosecution of Causes of Action, and implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, the Debtors or the Wind-Down Debtor, as applicable, shall continue to pay the reasonable and

documented legal, professional, or other fees and expenses of the Fee Examiner in accordance with the terms of this Article II.4 of the Plan and at the rates set forth in the Fee Examiner Order.

       5.       Bermuda Fees and Expenses

The Bermuda Liquidation Fund will be used to fund the liquidation and wind down of the Bermuda Debtor under the supervision of the Bermuda Court. The Bermuda Professionals shall estimate in good faith the Bermuda Provisional Liquidation Fees Amount and other expenses likely to be incurred in rendering services compensable by the Bermuda Debtor including (a) for the period up to and including the Effective Date, and (b) the period post the Effective Date until the dissolution of the Bermuda Debtor and shall deliver such reasonable, good-faith estimate to the Debtors no later than five Business Days prior to the anticipated Effective Date. If the Bermuda Professionals do not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Bermuda Professional.

No later than the Effective Date, the Debtors shall establish and fund the Bermuda Liquidation Fund with Cash equal to the Bermuda Professionals Liquidation Fees Amount. The Bermuda Liquidation Fund shall be maintained by the Bermuda Provisional Liquidators in trust solely for the Bermuda Professionals and for no other Entities until all the Bermuda Liquidation Fees approved by a Final Order of the Bermuda Court have been irrevocably paid in full to the Bermuda Professionals. No Liens, Claims, or Interests shall encumber the Bermuda Liquidation Fund or Cash held in the Bermuda Liquidation Fund in any way. Such funds shall not be considered property of the Bermuda Debtor's Estate or of the Debtors' Estates. The amount of the Bermuda Professional Fees Claims shall be paid in Cash by the Bermuda Provisional Liquidators as bills are rendered from the funds held in the Bermuda Liquidation Fund as soon as reasonably practicable and in accordance with a Final Order of the Bermuda Court. When all Bermuda Professional Fee Claims allowed by a Final Order of the Bermuda Court have been irrevocably paid in full to the Bermuda Professionals, any remaining funds held in the Bermuda Liquidation Fund shall be included in the assets to be distributed to the creditors of the Bermuda Debtor without any further notice to, or action, order or approval of the Bankruptcy Court or any other Entity. For the avoidance of doubt, allowed Bermuda Professional Fee Claims shall not be limited nor be deemed to be limited to funds held in the Bermuda Liquidation Fund and the Bermuda Provisional Liquidators may request, and the Plan Administrator shall be obliged to provide, or cause to provide, additional funding to satisfy the Bermuda Professional Fee Claims in full.

**C.**      **Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**D.**      **Wallet Account Claims**

Any Claims against BlockFi Wallet LLC, BlockFi Trading LLC, or BlockFi International Ltd. on account of Wallet Account Claims are entitled to, in full and final satisfaction of such Claims, Distribution in full of the non-Estate assets contained in such Holders' Account in connection with the Wallet Program, subject to set off for (i) any negative Account balances including for any ACH chargeback transactions and (ii) any applicable withdrawal fees.

Trade-Only Assets in the Wallet Program will be converted into USDC or another Stablecoin at the Debtors' election prior to being available for withdrawal by Clients from the Wallet Program. All other assets in the Wallet Program will be available for withdrawal in kind. Account Holders will have sixty (60) days' notice to withdraw their assets in the Wallet Program from the Debtors' platform. Any assets in the Wallet Program not withdrawn in that period will be converted to Cash and any subsequent Distributions of assets in the Wallet Program will be made in Cash.

E.      **Postpetition Digital Asset and Cash Claims**

Any Claim against any of the Debtors on account of Digital Assets or Cash transferred to the Debtors after the Petition Date are entitled to, in full and final satisfaction of such Claims, return in full of the Digital Assets or Cash transferred to the Debtors after the Petition Date.

F.      **Post-Effective Date Deposits**

Any Client that deposits Cash or Digital Assets on the BlockFi Platform on or after the Effective Date shall be deemed to have forfeited such Cash or Digital Assets, as applicable, and such Cash or Digital Assets will not be returned to the Client.

G.      **Statutory Fees**

All fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) plus any interest due and payable under 31 U.S.C. § 3717 (together, the "Quarterly Fees") before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Wind-Down Debtors and/or the Debtors shall pay any and all Quarterly Fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor and Wind-Down Debtor shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  For the avoidance of doubt, the Debtors and the Wind-Down Debtors shall be jointly and severally liable for the payment of any and all Quarterly Fees due and the U.S. Trustee shall not be bound by any agreement or provisions regarding which entity shall pay Quarterly Fees due and payable after the Effective Date.

**ARTICLE III.**
**CLASSIFICATION, TREATMENT,**
**AND VOTING OF CLAIMS AND INTERESTS**

A.      **Classification of Claims and Interests**

Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant to the Plan and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.      **Summary of Classification**

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is summarized in the following chart.  The Plan constitutes a separate chapter 11 plan for each of the Debtors, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims or Interests shall be treated as set forth in Article III.E hereof.  Voting tabulations for recording acceptances or rejections of the Plan will be conducted on a Class-by-Class basis as set forth above.[5]

---

[5]     The Debtors reserve the right to separately classify Claims or Interests to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3-a | BlockFi Lending LLC Private Client Account Claims | Impaired | Entitled to Vote |
| 3-b | BlockFi Lending LLC Loan Collateral Claims | Impaired | Entitled to Vote |
| 3-c | BlockFi International Ltd. Private Client and Interest Account Claims | Impaired | Entitled to Vote |
| 3-d | BlockFi International Ltd. Loan Collateral Claims | Impaired | Entitled to Vote |
| 3-e | BlockFi Inc. Interest Account Claims | Impaired | Entitled to Vote |
| 4-a | BlockFi Lending LLC General Unsecured Claims | Impaired | Entitled to Vote |
| 4-b | BlockFi International Ltd. General Unsecured Claims | Impaired | Entitled to Vote |
| 4-c | BlockFi Inc. General Unsecured Claims | Impaired | Entitled to Vote |
| 4-d | BlockFi Services, Inc. General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 4-e | BlockFi Trading LLC General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 4-f | BlockFi Wallet LLC General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4-g | BlockFi Ventures LLC General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 4-h | BlockFi Investment Products LLC General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 4-i | BlockFi Lending II LLC General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | FTX Facility Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | FTX Avoidable Transfer Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

28

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 7 | Alameda Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | 3AC Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Government Penalty Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | *De Minimis* Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 12 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 13 | Existing Preferred Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 14 | Existing Common Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 15 | SEC Penalty Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 16 | Convenience Claims | Impaired | Entitled to Vote |
| 17 | State Governmental Regulatory Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

**C.    Treatment of Classes of Claims and Interests**

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or Wind-Down Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.

1.    Class 1 —Secured Tax Claims

   (a)    *Classification*: Class 1 consists of all Secured Tax Claims.

   (b)    *Treatment*: Each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction of such Allowed Secured Tax Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Secured Tax Claim or such other treatment rendering such Holder's Allowed Secured Tax Claim Unimpaired.

   (c)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Secured Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 — Other Priority Claims

   (a)    *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, at the option of the applicable Debtor, payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.     <u>Class 3-a — BlockFi Lending LLC Private Client Account Claims</u>

(a)     *Classification*:  Class 3-a consists of all BlockFi Lending LLC Private Client Account Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed BlockFi Lending LLC Private Client Account Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi Lending LLC Private Account Claim, each such Holder shall receive:

(i)     an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim, and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

(ii)     with respect to an Allowed BlockFi Lending LLC Private Client Account Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of:

A.     the Cash Allocation for Holders of Claims at BlockFi Lending LLC; or

B.     the Digital Assets Allocation for Holders of Claims at BlockFi Lending LLC; and

C.     any Additional Bankruptcy Distributions in Cash for Holders of Claims at BlockFi Lending LLC until payment in full of such Allowed BlockFi Lending LLC Private Client Account Claims;

*provided* that Holders of BlockFi Lending LLC Private Client Account Claims that are not Allowed Convenience Claims, either by amount or election, shall receive the Digital Assets Allocation for any Distributions made during the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and the Cash Allocation for any Distributions made following the expiration of the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date; *provided further* that any Distribution made to Holders of Allowed BlockFi Lending LLC Private Client Account Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-b (BlockFi Lending LLC Loan Collateral Claims) and Class 4-a (BlockFi Lending LLC General Unsecured Claims).  For the avoidance of doubt, Holders of Claims in Class 3-b that are not Allowed Convenience Claims, either by amount or election, shall only be treated *pari passu* with Holders of Allowed BlockFi Lending LLC Private Client Account Claims in this Class 3-a to the extent any remaining amount of such Holder's Allowed Claims in Class 3-b, after the Set Off Treatment or Loan Repayment Treatment, as applicable, is accounted for, is still owed to such Holder on account of its Class 3-b Claim.

(c)     *Voting:*  Class 3-a is Impaired under the Plan.  Holders of Allowed BlockFi Lending LLC Private Client Account Claims are entitled to vote to accept or reject the Plan.

4.      <u>Class 3-b — BlockFi Lending LLC Loan Collateral Claims</u>

(a)     *Classification*:  Class 3-b consists of all BlockFi Lending LLC Loan Collateral Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed BlockFi Lending LLC Loan Collateral Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi Lending LLC Loan Collateral Claim, each such Holder shall be subject to the Set Off Treatment unless, if applicable, such Holder, prior to the Loan Repayment Treatment Deadline, voluntarily opts in to the Loan Repayment Treatment by making the Loan Repayment Election via email, which email shall be sent to counsel to the Committee at BlockFiTeam@brownrudnick.com, identify the claimant, the claim number, and the Holder's decision to make the Loan Repayment Election; *provided* if such Holder does not make the Loan Repayment Election on or before the Loan Repayment Treatment Deadline, such Holder shall receive the Set Off Treatment.  After application of the Set Off Treatment or the Loan Repayment Treatment, as applicable, Holders of Allowed BlockFi Lending LLC Loan Collateral Claims will receive on account of any remaining Claims (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table):

(i)     an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table) in an amount not to exceed (i) for Holders subject to the Set Off Treatment (x) such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars pursuant to the Digital Assets Conversion Table) less (y) such Holder's Loan Account Obligations and pursuant to the Convenience Claim Election, the Convenience Claim Recovery or (ii) for Holders subject to the Loan Repayment Treatment, such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table) and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

(ii)    with respect to an Allowed BlockFi Lending LLC Loan Collateral Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of (a) either (i) the Digital Assets Allocation or (ii) the Cash Allocation for Holders of Claims at BlockFi Lending LLC in an amount (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table) not to exceed (i) for Holders subject to the Set Off Treatment (x) such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars pursuant to the Digital Assets Conversion Table) less (y) such Holder's Loan Account Obligations or (ii) for Holders subject to the Loan Repayment Treatment, such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table), <u>and</u> (b) any Additional Bankruptcy Distributions in Cash for Holders of such Claims until payment in full of such Allowed Claims;

*provided* that Holders of BlockFi Lending LLC Loan Collateral Claims that are not Allowed Convenience Claims, either by amount or election, shall receive the Digital Assets Allocation for any Distributions made during the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and the Cash Allocation for any Distributions made following the expiration of the six (6)

month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date; *provided further* that any Distribution made to Holders of Allowed BlockFi Lending LLC Loan Collateral Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-a (BlockFi Lending LLC Private Client Account Claims) and Class 4-a (BlockFi Lending LLC General Unsecured Claims).

(c)     *Voting*:  Class 3-b is Impaired under the Plan.  Holders of Allowed BlockFi Lending LLC Loan Collateral Claims are entitled to vote to accept or reject the Plan.

5.     Class 3-c — BlockFi International Ltd. Private Client and Interest Account Claims

(a)     *Classification*:  Class 3-c consists of all BlockFi International Ltd. Private Client and Interest Account Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed BlockFi International Ltd. Private Client and Interest Account Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi International Ltd. Private Client and Interest Account Claim, each such Holder shall receive:

(i)     an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim, and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

(ii)     with respect to an Allowed BlockFi International Ltd. Private Client and Interest Account Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of:

A.     the Cash Allocation for Holders of Claims at BlockFi International Ltd.; or

B.     the Digital Assets Allocation for Holders of Claims at BlockFi International Ltd.; and

C.     any Additional Bankruptcy Distributions in Cash for Holders of Claims at BlockFi International Ltd. until payment in full of such Allowed BlockFi International Ltd. Private Client and Interest Account Claim;

*provided* that Holders of BlockFi International Ltd. Private Client and Interest Account Claims that are not Allowed Convenience Claims, either by amount or election, shall receive the Digital Assets Allocation for any Distributions made during the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and the Cash Allocation for any Distributions made following the expiration of the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date; *provided further* that any Distribution made to Holders of Allowed BlockFi International Ltd. Private Client and Interest Account Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-d (BlockFi International Ltd. Loan Collateral Claims) and Class 4-b (BlockFi International Ltd. General Unsecured Claims).  For the avoidance of doubt, Holders of Claims in Class 3-d that are not Allowed Convenience Claims, either by amount or election, shall only be treated *pari passu* with Holders of Allowed BlockFi International Ltd. Private Client and Interest Account Claims in this Class 3-c to the extent any remaining amount of such Holder's Allowed Claims in

Class 3-d, after the Set Off Treatment or Loan Repayment Treatment, as applicable, is accounted for, is still owed to such Holder on account of its Class 3-d Claim.

(c)     *Voting:* Class 3-c is Impaired under the Plan. Holders of Allowed BlockFi International Ltd. Private Client and Interest Account Claims are entitled to vote to accept or reject the Plan.

6.     <u>Class 3-d — BlockFi International Ltd. Loan Collateral Claims</u>

(a)     *Classification*: Class 3-d consists of all BlockFi International Ltd. Loan Collateral Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed BlockFi International Ltd. Loan Collateral Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi International Ltd. Loan Collateral Claim, each such Holder shall be subject to the Set Off Treatment unless, if applicable, such Holder, prior to the Loan Repayment Treatment Deadline, voluntarily opts in to the Loan Repayment Treatment by making the Loan Repayment Election via email, which email shall be sent to counsel to the Committee at BlockFiTeam@brownrudnick.com, identify the claimant, the claim number, and the Holder's decision to make the Loan Repayment Election; *provided* if such Holder does not make the Loan Repayment Election on or before the Loan Repayment Treatment Deadline, such Holder shall receive the Set Off Treatment. After application of the Set Off Treatment or the Loan Repayment Treatment, as applicable, Holders of Allowed BlockFi Lending International Ltd. Loan Collateral Claims will receive on account of any remaining Claims (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table):

(i)     an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table) in an amount not to exceed (i) for Holders subject to the Set Off Treatment (x) such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars pursuant to the Digital Assets Conversion Table) less (y) such Holder's Loan Account Obligations and pursuant to the Convenience Claim Election, the Convenience Claim Recovery or (ii) for Holders subject to the Loan Repayment Treatment, such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table) and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

(ii)    with respect to an Allowed BlockFi International Ltd. Loan Collateral Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of (a) either (i) the Digital Assets Allocation or (ii) the Cash Allocation for Holders of Claims at BlockFi International Ltd. in an amount (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table) not to exceed (i) for Holders subject to the Set Off Treatment (x) such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars pursuant to the Digital Assets Conversion Table) less (y) such Holder's Loan Account Obligations or (ii) for Holders subject to the Loan Repayment Treatment, such Holder's Loan Collateral outstanding as of the Petition Date (calculated in United States dollars as of the Petition Date pursuant to the Digital Assets Conversion Table), and (b) any Additional Bankruptcy Distributions in Cash for Holders of such Claims until payment in full of such Allowed Claims;

*provided* that Holders of BlockFi International Ltd. Loan Collateral Claims that are not Allowed Convenience Claims, either by amount or election, shall receive the Digital Assets Allocation for any Distributions made during the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and the Cash Allocation for any Distributions made following the expiration of the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date; *provided further* that any Distribution made to Holders of BlockFi International Ltd. Loan Collateral Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-c (BlockFi International Ltd. Private Client and Interest Account Claims) and Class 4-b (BlockFi International Ltd. General Unsecured Claims).

(c)    *Voting:*  Class 3-d is Impaired under the Plan.  Holders of Allowed BlockFi International Ltd. Loan Collateral Claims are entitled to vote to accept or reject the Plan.

7.    Class 3-e — BlockFi Inc. Interest Account Claims

(a)    *Classification*: Class 3-e consists of all BlockFi Inc. Interest Account Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed BlockFi Inc. Interest Account Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi Inc. Interest Account Claim, each such Holder shall receive:

   (i)    an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim, and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

   (ii)    with respect of an Allowed BlockFi Inc. Interest Account Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of:

      A.    the Cash Allocation for Holders of Claims at BlockFi Inc.; or

      B.    the Digital Assets Allocation for Holders of Claims at BlockFi Inc.; and

      C.    any Additional Bankruptcy Distributions in Cash for Holders of Claims at BlockFi Inc. until payment in full of such Allowed BlockFi Inc. Interest Account Claim;

*provided* that Holders of BlockFi Inc. Interest Account Claims that are not Allowed Convenience Claims, either by amount or election, shall receive the Digital Assets Allocation for any Distributions made during the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and the Cash Allocation for any Distributions made following the expiration of the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date; *provided further* that any Distribution made to Holders of Allowed BlockFi Inc. Interest Account Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 4-c (BlockFi Inc. General Unsecured Claims).

(c)    *Voting:*  Class 3-e is Impaired under the Plan.  Holders of Allowed BlockFi Inc. Interest Account Claims are entitled to vote to accept or reject the Plan.

8.    Class 4-a — BlockFi Lending LLC General Unsecured Claims

34

(a)     *Classification*:  Class 4-a consists of all BlockFi Lending LLC General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed BlockFi Lending LLC General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi Lending LLC General Unsecured Claim, each such Holder shall receive:

     (i)     an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim, and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

     (ii)    with respect of an Allowed BlockFi Lending LLC General Unsecured Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of (a) the Cash Allocation for Holders of Claims at BlockFi Lending LLC and (b) any Additional Bankruptcy Distributions in Cash for Holders of Claims at BlockFi Lending LLC until payment in full of such Allowed BlockFi Lending LLC General Unsecured Claim; *provided* that any Distribution made to Holders of Allowed BlockFi Lending LLC General Unsecured Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-a (BlockFi Lending LLC Private Client Account Claims) and Class 3-b (BlockFi Lending LLC Loan Collateral Claims).

For the avoidance of doubt, Holders of Claims in Class 3-b that are not Allowed Convenience Claims, either by amount or election, shall only be treated *pari passu* with Holders of Allowed BlockFi Lending LLC General Unsecured Claims in this Class 4-a to the extent any remaining amount of such Holder's Allowed Claims in Class 3-b, after the Set Off Treatment or Loan Repayment Treatment, as applicable, is accounted for, is still owed to such Holder on account of its Class 3-b Claim.

(c)     *Voting*:  Class 4-a is Impaired under the Plan.  Holders of Allowed BlockFi Lending LLC General Unsecured Claims are entitled to vote to accept or reject the Plan.

9.      Class 4-b — BlockFi International Ltd. General Unsecured Claims

(a)     *Classification*:  Class 4-b consists of all BlockFi International Ltd. General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed BlockFi International Ltd. General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi International Ltd. General Unsecured Claim, each such Holder shall receive:

     (i)     an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim, and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

     (ii)    with respect of an Allowed BlockFi International Ltd. General Unsecured Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of (a) the Cash Allocation for Holders of Claims at BlockFi International Ltd. and (b) any Additional Bankruptcy Distributions in Cash for Holders of Claims at BlockFi International Ltd. until payment in full of such Allowed BlockFi International Ltd. General Unsecured Claim; *provided* that any Distribution made to Holders of Allowed BlockFi International Ltd. General Unsecured Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-c (BlockFi

35

International Ltd. Private Client and Interest Account Claims) and Class 3-d (BlockFi International Ltd. Loan Collateral Claims).

For the avoidance of doubt, Holders of Claims in Class 3-d that are not Allowed Convenience Claims, either by amount or election, shall only be treated *pari passu* with Holders of Allowed BlockFi International Ltd. General Unsecured Claims in this Class 4-b to the extent any remaining amount of such Holder's Allowed Claims in Class 3-d, after the Set Off Treatment or Loan Repayment Treatment, as applicable, is accounted for, is still owed to such Holder on account of its Class 3-d Claim.

(c)    *Voting*: Class 4-b is Impaired under the Plan. Holders of Allowed BlockFi International Ltd. General Unsecured Claims are entitled to vote to accept or reject the Plan.

10.    <u>Class 4-c — BlockFi Inc. General Unsecured Claims</u>

(a)    *Classification*: Class 4-c consists of all BlockFi Inc. General Unsecured Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed BlockFi Inc. General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed BlockFi Inc. General Unsecured Claim, each such Holder shall receive:

(i)    an Allowed Convenience Claim, either by amount or election, which shall be classified as a Class 16 Convenience Claim, and pursuant to the Convenience Claim Election, the Convenience Claim Recovery; or

(ii)    with respect of an Allowed BlockFi Inc. General Unsecured Claim that is not an Allowed Convenience Claim, either by amount or election, its Pro Rata share of (a) the Cash Allocation for Holders of Claims at BlockFi Inc. and (b) any Additional Bankruptcy Distributions in Cash for Holders of Claims at BlockFi Inc. until payment in full of such Allowed BlockFi Inc. General Unsecured Claim; *provided* that any Distribution made to Holders of Allowed BlockFi Inc. General Unsecured Claims that are not Allowed Convenience Claims, either by amount or election, shall be *pari passu* with Holders of Claims in Class 3-e (BlockFi Inc. Interest Account Claims).

(c)    *Voting*: Class 4-c is Impaired under the Plan. Holders of Allowed BlockFi Inc. General Unsecured Claims are entitled to vote to accept or reject the Plan.

11.    <u>Class 4-d — BlockFi Services, Inc. General Unsecured Claims</u>

(a)    *Classification*: Class 4-d consists of all BlockFi Services, Inc. General Unsecured Claims.

(b)    *Treatment*: On the Effective Date, all BlockFi Services, Inc. General Unsecured Claims shall be canceled, released and extinguished, and will be of no further force or effect, and Holders of BlockFi Services, Inc. General Unsecured Claims will not receive any Distribution on account of such BlockFi Services, Inc. General Unsecured Claims.

(c)    *Voting*: Class 4-d is Impaired under the Plan. Holders of Allowed BlockFi Services, Inc. General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of BlockFi Services, Inc. General Unsecured Claims are not entitled to vote to accept or reject the Plan.

36

12.    <u>Class 4-e — BlockFi Trading LLC General Unsecured Claims</u>

(a)    *Classification*:  Class 4-e consists of all BlockFi Trading LLC General Unsecured Claims.

(b)    *Treatment*:  On the Effective Date, all BlockFi Trading LLC General Unsecured Claims shall be canceled, released and extinguished, and will be of no further force or effect, and Holders of BlockFi Trading LLC General Unsecured Claims will not receive any Distribution on account of such BlockFi Trading LLC General Unsecured Claims.

(c)    *Voting:*  Class 4-e is Impaired under the Plan.  Holders of Allowed BlockFi Trading LLC General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of BlockFi Trading LLC General Unsecured Claims are not entitled to vote to accept or reject the Plan.

13.    <u>Class 4-f — BlockFi Wallet LLC General Unsecured Claims</u>

(a)    *Classification*:  Class 4-f consists of all BlockFi Wallet LLC General Unsecured Claims.

(b)    *Treatment*:  Each Holder of an Allowed BlockFi Wallet LLC General Unsecured Claim will receive, in full and final satisfaction of such Allowed BlockFi Wallet LLC General Unsecured Claim, (i) the Cash Allocation for Holders of Claims at BlockFi Wallet LLC or (ii) such other treatment rendering such Holder's Allowed BlockFi Wallet LLC General Unsecured Claim Unimpaired.

(c)    *Voting*:  Class 4-f is Unimpaired under the Plan.  Holders of Allowed BlockFi Wallet LLC General Unsecured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed BlockFi Wallet LLC General Unsecured Claims are not entitled to vote to accept or reject the Plan.

14.    <u>Class 4-g — BlockFi Ventures LLC General Unsecured Claims</u>

(a)    *Classification*:  Class 4-g consists of all BlockFi Ventures LLC General Unsecured Claims.

(b)    *Treatment*:  On the Effective Date, all BlockFi Ventures LLC General Unsecured Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of BlockFi Ventures LLC General Unsecured Claims will not receive any Distribution on account of such BlockFi Ventures LLC General Unsecured Claims.

(c)    *Voting:*  Class 4-g is Impaired under the Plan.  Holders of BlockFi Ventures LLC General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of BlockFi Ventures LLC General Unsecured Claims are not entitled to vote to accept or reject the Plan.

15.    <u>Class 4-h — BlockFi Investment Products LLC General Unsecured Claims</u>

(a)    *Classification*:  Class 4-h consists of all BlockFi Investment Products LLC General Unsecured Claims.

(b)    *Treatment*:  On the Effective Date, all BlockFi Investment Products LLC General Unsecured Claims will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of BlockFi Investment Products LLC General Unsecured Claims will not receive any Distribution on account of such BlockFi Investment Products LLC General Unsecured Claims.

       (c)     *Voting*: Class 4-h is Impaired under the Plan. Holders of BlockFi Investment Products LLC General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of BlockFi Investment Products LLC General Unsecured Claims are not entitled to vote to accept or reject the Plan.

16.    <u>Class 4-i — BlockFi Lending II LLC General Unsecured Claims</u>

       (a)     *Classification*: Class 4-i consists of all BlockFi Lending II LLC General Unsecured Claims.

       (b)     *Treatment*: On the Effective Date, all BlockFi Lending II LLC General Unsecured Claims will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of BlockFi Lending II LLC General Unsecured Claims will not receive any Distribution on account of such BlockFi Lending II LLC General Unsecured Claims.

       (c)     *Voting*: Class 4-i is Impaired under the Plan. Holders of BlockFi Lending II LLC General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of BlockFi Lending II LLC General Unsecured Claims are not entitled to vote to accept or reject the Plan.

17.    <u>Class 5 — FTX Facility Claims</u>

       (a)     *Classification*: Class 5 consists of all FTX Facility Claims.

       (b)     *Treatment*: Subject to the occurrence of the FTX Settlement Effective Date, the FTX Facility Claims shall be Allowed as general unsecured claims in the amount of $275 million pursuant to the terms of the FTX Settlement. Subject to the occurrence of the FTX Settlement Effective Date, the Allowed FTX Facility Claims shall be subordinated to Allowed Account Holder Claims, Allowed Convenience Claims held by Account Holders and Allowed Intercompany Claims to the extent such Intercompany Claims inure to the benefit of Account Holders, and the Holder of the Allowed FTX Facility Claims will not receive any Distribution on account of such Allowed FTX Facility Claims unless and until all such Claims are paid in full. Subject to the occurrence of the FTX Settlement Effective Date, the Debtors shall not seek to subordinate (other than as provided in this section), recharacterize, or seek disparate or otherwise discriminatory treatment or otherwise seek any alternative treatment for the Allowed FTX Facility Claims.

       (c)     *Voting*: Class 5 is Impaired under the Plan. Holders of FTX Facility Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of FTX Facility Claims are not entitled to vote to accept or reject the Plan.

18.    <u>Class 6 — FTX Avoidable Transfer Claims</u>

       (a)     *Classification*: Class 6 consists of all FTX Avoidable Transfer Claims.

       (b)     *Treatment*: Subject to the occurrence of the FTX Settlement Effective Date, the FTX Avoidable Transfer Claims shall be deemed withdrawn pursuant and subject to the terms and conditions of the FTX Settlement. Pursuant to the terms and conditions of the FTX Settlement, the Holders of the FTX Avoidable Transfer Claims shall not be entitled to any Distribution from the Debtors on account of such FTX Avoidable Transfer Claims.

       (c)     *Voting*: Class 6 is Impaired under the Plan. Holders of FTX Avoidable Transfer Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy

Code. Therefore, Holders of FTX Avoidable Transfer Claims are not entitled to vote to accept or reject the Plan.

19.   Class 7 — Alameda Claims

(a)   *Classification*:  Class 7 consists of all Alameda Claims.

(b)   *Treatment*:  Subject to the occurrence of the FTX Settlement Effective Date, the Alameda Claims shall be deemed withdrawn pursuant and subject to the terms and conditions of the FTX Settlement and the Holders of the Alameda Claims shall not be entitled to any Distribution from the Debtors on account of such Alameda Claims.

(c)   *Voting*:  Class 7 is Impaired under the Plan.  Holders of Alameda Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Alameda Claims are not entitled to vote to accept or reject the Plan.

20.   Class 8 — 3AC Claims

(a)   *Classification*:  Class 8 consists of all 3AC Claims.  The Debtors contest the validity of the 3AC Claims and will file an objection seeking disallowance of the 3AC Claims.  To the extent the Bankruptcy Court Allows any portion of the 3AC Claims, the Allowed 3AC Claims are subject to the treatment outlined in subsection 20(b) below.

(b)   *Treatment*:  To the extent the Bankruptcy Court Allows any portion of the 3AC Claims, the Debtors shall seek to equitably subordinate such Allowed 3AC Claims, pursuant to section 510(c) of the Bankruptcy Code, to Account Holder Claims, General Unsecured Claims, and Intercompany Claims at the applicable Debtor entity; *provided, however*, if the Bankruptcy Court determines that the Allowed 3AC Claims should not be equitably subordinated pursuant to section 510(c) of the Bankruptcy Code, then the Allowed 3AC Claims shall be *pari passu* with Account Holder Claims, General Unsecured Claims, and Intercompany Claims at the applicable Debtor entity.

(c)   *Voting*:  Class 8 is Impaired under the Plan.  Holders of 3AC Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of 3AC Claims are not entitled to vote to accept or reject the Plan.

21.   Class 9 — Government Penalty Claims

(a)   *Classification*:  Class 9 consists of the Government Penalty Claims.

(b)   *Treatment*:  The Government Penalty Claims shall be, pursuant to sections 726(a)(4) and 1129(a)(7) of the Bankruptcy Code, subordinated to Account Holder Claims, General Unsecured Claims, and Intercompany Claims at the applicable Debtor entity, and the Government Entity will not receive any Distribution on account of such Government Penalty Claims until all Account Holder Claims, General Unsecured Claims, and Intercompany Claims at the applicable Debtor entity are paid in full; *provided, however*, if the Bankruptcy Court determines that the Government Penalty Claims should not be subordinated pursuant to sections 726(a)(4) and 1129(a)(7) of the Bankruptcy Code, then the Government Penalty Claims shall be *pari passu* with Account Holder Claims, General Unsecured Claims, and Intercompany Claims at the applicable Debtor entity.

(c)   *Voting*:  Class 9 is Impaired under the Plan.  Holders of the Government Penalty Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of the Government Penalty Claims are not entitled to vote to accept or reject the Plan.

22.    Class 10 — *De Minimis* Claims

    (a)    *Classification*:  Class 10 consists of all *De Minimis* Claims.

    (b)    *Treatment*: On the Effective Date, all *De Minimis* Claims shall be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of *De Minimis* Claims will not receive any Distribution on account of such *De Minimis* Claims.

    (c)    *Voting*:  Class 10 is Impaired under the Plan.  Holders of *De Minimis* Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of *De Minimis* Claims are not entitled to vote to accept or reject the Plan.

23.    Class 11 — Intercompany Claims

    (a)    *Classification*:  Class 11 consists of all Intercompany Claims.

    (b)    *Treatment*:  On the Effective Date, all Intercompany Claims will be, at the option of the Debtors, either (a) reinstated or (b) converted to equity, otherwise set off, settled, distributed, contributed, cancelled, or released, in each case in accordance with the Restructuring Transactions Memorandum; *provided* that the Intercompany Claims (x) between BlockFi International Ltd. and BlockFi Lending LLC, (y) between BlockFi International Ltd. and BlockFi Inc., and (z) between BlockFi Lending LLC and BlockFi Inc., will, in each case, be netted, resulting in three separate Intercompany Claims (one for each pair of Debtors in clauses (x), (y), and (z)), and such remaining Intercompany Claims after such netting will be treated *pari passu* with Account Holder Claims and General Unsecured Claims at the applicable Debtor entity and Allowed in the amount set forth in the Restructuring Transactions Memorandum, and not subject to any further recharacterization, subordination, or objection; *provided further* that, for the avoidance of doubt, in no case shall the treatment of Intercompany Claims set forth in the Restructuring Transactions Memorandum modify or alter the allocation of value among Debtor entities as set forth in the Disclosure Statement.

    (c)    *Voting*:  Holders of Intercompany Claims are either Unimpaired or Impaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

24.    Class 12 — Intercompany Interests

    (a)    *Classification*:  Class 12 consists of all Intercompany Interests.

    (b)    *Treatment*:  On the Effective Date, all Intercompany Interests will be, at the option of the Debtors, either (a) reinstated or (b) set off, settled, addressed, distributed, contributed, merged, or cancelled, in each case in accordance with the Restructuring Transactions Memorandum.

    (c)    *Voting*:  Holders of Intercompany Interests are either Unimpaired or Impaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

25.    Class 13 — Existing Preferred Equity Interests

    (a)    *Classification*:  Class 13 consists of all Existing Preferred Equity Interests.

(b)     *Treatment*:  On the Effective Date, all Existing Preferred Equity Interests will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of Existing Preferred Equity Interests will not receive any Distribution on account of such Existing Preferred Equity Interests.

(c)     *Voting*:  Class 13 is Impaired under the Plan.  Holders of Existing Preferred Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Preferred Equity Interests are not entitled to vote to accept or reject the Plan.

26.     <u>Class 14 — Existing Common Equity Interests</u>

(a)     Classification:  Class 14 consists of all Existing Common Equity Interests.

(b)     *Treatment*:  On the Effective Date, all Existing Common Equity Interests will be cancelled, released, and extinguished, and will be of no further force or effect, and Holders of Existing Common Equity Interests will not receive any Distribution on account of such Existing Common Equity Interests.

(c)     *Voting*:  Class 14 is Impaired under the Plan.  Holders of Existing Common Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Common Equity Interests are not entitled to vote to accept or reject the Plan.

27.     <u>Class 15 – SEC Penalty Claims</u>

(a)     Classification:  Class 15 consists of all SEC Penalty Claims.

(b)     *Treatment*:  Pursuant to the SEC Stipulation, Holders of Allowed SEC Penalty Claims shall not be entitled to receive a Distribution on account of such Allowed SEC Penalty Claims unless all Holders of Allowed Claims in Class 1 (Secured Tax Claims), Class 2 (Other Priority Claims), Class 3 (Account Holder Claims), Class 4 (General Unsecured Claims), Class 11 (Intercompany Claims), and Class 16 (Convenience Claims) are paid in full.

(c)     *Voting*:  Class 15 is Impaired under the Plan.  Holders of SEC Penalty Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of SEC Penalty Claims are not entitled to vote to accept or reject the Plan.

28.     <u>Class 16 – Convenience Claims</u>

(a)     *Classification*:  Class 16 consists of all Convenience Claims.

(b)     *Treatment*:  Holders of Allowed Convenience Claims, either by amount or election, shall receive a one-time (a) Cash payment of no greater than 50% of such Allowed Convenience Claim or (b) payment of BTC, ETH, or GUSD (or an equivalent Distributable Stablecoin) of no greater than 50% of such Allowed Convenience Claim, in each case, in full and final satisfaction of such Allowed Convenience Claim. Holders of Allowed Convenience Claims shall not be entitled to any Additional Bankruptcy Distributions.

(c)     *Voting*:  Class 16 is Impaired under the Plan.  Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan.

41

29.    <u>Class 17 – State Governmental Regulatory Claims</u>

(a)    *Classification*:  Class 17 consists of all State Regulatory Claims.

(b)    *Treatment*:  Pursuant to the State Governmental Regulatory Stipulation, Holders of Allowed State Governmental Regulatory Claims shall not be entitled to receive a Distribution on account of such Allowed State Governmental Regulatory Claims unless all Holders of Allowed Claims in Class 1 (Secured Tax Claims), Class 2 (Other Priority Claims), Class 3 (Account Holder Claims), Class 4 (General Unsecured Claims), Class 11 (Intercompany Claims), and Class 16 (Convenience Claims) are paid in full.

(c)    *Voting*:  Class 17 is Impaired under the Plan.  Holders of State Governmental Regulatory Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of State Governmental Regulatory Claims are not entitled to vote to accept or reject the Plan.

**D.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Wind-Down Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

**E.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed eliminated from the Plan for purposes of determining acceptance or rejection of the Plan by such Class.

**F.    Subordinated Claims**

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**G.    Intercompany Interests**

To the extent reinstated under the Plan, Distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the existing intercompany systems connecting the Debtors and their Affiliates, and in exchange for the Debtors' and Wind-Down Debtors' agreement under the Plan to make certain Distributions to the Holders of Allowed Claims.

**H.    Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall determine such controversy at the Confirmation Hearing.

I.       **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims or Interests.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X.A of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE IV.**
**PROVISIONS FOR IMPLEMENTATION OF THE PLAN**

A.       **General Settlement of Claims and Interests**

To the extent provided for by the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  To the extent provided for by the Bankruptcy Code, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI of the Plan, all Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

B.       **Restructuring Transactions**

On or before the Effective Date, the applicable Debtors or Wind-Down Debtors will take any action as may be necessary or advisable to effectuate the Restructuring Transactions described in the Plan and Restructuring Transactions Memorandum, including:  (1) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation, in each case, containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including the documents comprising the Plan Supplement; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (4) any transactions necessary or appropriate to form or convert into the Wind-Down Debtors; (5) such other transactions that are required to effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations  (including in respect of any Bermuda Scheme of Arrangement, Bermuda Liquidation, Bermuda Liquidating Entity, or any other Bermuda Implementation Mechanism); and (6) all other actions that the Wind-Down Debtors or Plan Administrator determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to affect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

The Debtors may buy and sell Digital Assets as necessary to make the Digital Assets Allocation, if applicable. The Debtors will only buy and sell Digital Assets as needed following a thirty-day period where Account Holders may make a withdrawal request to receive a Distribution in the form of the Digital Assets Allocation.  For the avoidance of doubt, Account Holders with Claims in Class 3-a (BlockFi Lending LLC Private Client Account Claims), Class 3-b (BlockFi Lending LLC Loan Collateral Claims), Class 3-c (BlockFi International Ltd. Private Client and

43

Interest Account Claims), Class 3-d (BlockFi International Ltd. Loan Collateral Claims), and Class 3-e (BlockFi Inc. Interest Account Claims) shall receive the Digital Assets Allocation for any Distributions made during the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and the Cash Allocation for any Distributions made following the expiration of the six (6) month period (or, such later period as may be reasonably determined by the Plan Administrator) after the Effective Date and there is no election for Account Holders in such Classes to choose the Digital Asset Allocation instead of the Cash Allocation nor is there an election for Account Holders in such Classes to choose the Cash Allocation instead of the Digital Asset Allocation.

**C.    The Committee Settlement**

On July 21, 2023, the Debtors, the Committee, and the Committee Settlement Parties agreed to the terms of the Committee Settlement to be implemented through the Plan and to be approved by the Court in connection with confirmation thereof.  The principal terms of the Committee Settlement are reflected below.

1.    <u>Cooperation and Participation</u>

The Committee Settlement Parties will participate and assist the Plan Administrator with any ongoing litigation, including prosecuting claims against and by 3AC, FTX, Alameda, Core Scientific, and any other counterparties (including the United States), and assist in making in-kind distributions to creditors, both of which will have a material impact on Clients.

2.    <u>Releases</u>

The Committee Settlement Parties (and each of their Related Parties) shall each be included as a "Released Party" for purposes of the Plan in which all claims and causes of action by the Debtors against each of the Committee Settlement Parties shall be released.  The Court shall have exclusive jurisdiction to consider issues regarding the scope of the Debtor Release.

The Plan shall contain an "opt-out" structure for Third-Party Releases.  Creditors who do not "opt out" will be deemed to have consensually released their Claims against third parties and will receive a release from the Debtors of all claims other than Retained Preference Claims.

In support of the Debtor Release, before filing any claim against any of the Committee Settlement Parties, any creditor must (i) have opted out of the Third-Party Release and (ii) obtained a ruling upon motion to the Court that, based on a copy of the proposed complaint, all such claims fall outside the scope of the Debtor Release (including that it is not a derivative Claim).  The Plan Administrator will have the option to assert that the claimant's action is barred by the Debtor Release.  In the event that the Plan Administrator does not exercise such option, the Committee Settlement Parties, as applicable, may argue that such claim is barred by the Debtor Release and, if successful, the Wind-Down Debtors will indemnify and reimburse the Committee Settlement Parties, as applicable, for any reasonable and documented fees incurred in asserting that such claim is barred by the Debtor Release.

The D&O Insurance Providers will not be Released Parties or Releasing Parties under the Plan and the Committee Settlement Parties will reserve all claims and causes of action against the D&O Insurance Providers, and the D&O Insurance Providers reserve all of their rights and defenses with respect to such claims and causes of action.

The Plan shall not release, and shall preserve, all other estate causes of action not specifically released or settled pursuant to the Committee Settlement.

Nothing in this Plan settles, releases, or discharges direct claims held by creditors (other than claims against the Debtors) who opted out of the Third-Party Release.  To the extent any creditor who opted out had a direct claim against a non-Debtor under applicable non-bankruptcy law (other than a fraudulent transfer claim) prior to the Petition Date, such claim did not vest in the Debtors on the Petition Date and nothing in this Plan or the Confirmation Order prevents, releases, or obstructs a properly pled direct claim, including any argument under *In re SemCrude L.P.*, 796 F.3d 310 (3d Cir. 2015) or *In re Wilton Armetale, Inc.* 968 F.3d 273 (3d Cir. 2020) that such claim was vested in the

44

Debtors by operation of the Bankruptcy Code.  For the avoidance of doubt, nothing in this Plan or the Confirmation Order modifies the gatekeeper function contained in Article VIII.B of the Plan or the law as to what is a direct or derivative claim, or is a concession that a direct or derivative claim exists.

3.    Work Plan and Budget

The Debtors and Committee will work cooperatively to minimize costs and maximize recovery to the Debtors' Clients (including with respect to the operational budget of the Debtors going forward).  The Debtors and the Committee advisors will jointly prepare a detailed weekly and monthly workplan including a takeover checklist with responsible parties identified to be approved by the Debtors and the Committee.  Such workplan will include (but not be limited to) (i) ensuring the platform is ready for distributions (or negotiate with a third party distributor), (ii) reconciling Claims with the Debtors' books and records, (iii) calculating required holdbacks, (iv) preparing for a potential portfolio rebalancing, (v) confirming policies for safekeeping and storage of key financial, legal, and operational data and transitioning such data to the Wind-Down Debtors, (vi) developing employee transition plans, (vii) finalizing expense allocations among entities, (viii) determining the key tax considerations of initial and future distributions and (ix) pursuing claims against third parties.  The amounts authorized under the *Order (I) Approving the Debtors' Retention Programs and (II) Granting Related Relief* [Docket No. 423] shall be reduced by $800,000.

4.    Exculpation and Indemnification

The Wind-Down Debtors will provide any Committee Settlement Parties who provides services to the Wind-Down Debtors after the Effective Date with reasonable and customary indemnification, exculpation, and insurance coverage with respect to such services.

5.    Cash Payment and Waiver Provisions

In full settlement of all estate causes of action, the Committee Settlement Parties have agreed to provide the following consideration for the Committee Settlement:

| Individual | Claims Waived or Subordinated | Cash Contribution | Cooperation Amount[6] |
|---|---|---|---|
| Zac Prince[7] | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies.<br><br>No reimbursement by the Debtors for amounts incurred pursuant to the Committee Settlement or for legal fees incurred | $1.5 million.<br><br>1/3 of such amount shall be due within two business days of the Confirmation Order becoming a Final Order (the "First Payment Date").<br><br>1/3 of such amount shall be due 120 days after the First Payment Date (the "Second Payment Date").<br><br>1/3 of such amount shall be paid: (i) the day at least two (2) weeks before the date the Debtors are | 200 hours |

---

[6]    This column reflects the agreed amounts of time the insiders have agreed to give to the estate without any further compensation beyond the terms of the Committee Settlement to help prosecute and defend against litigation, to assist with regulatory inquiries, and to assist in making in-kind distributions to clients, *after* the individuals are no longer employed with BlockFi and presumably have other jobs.

[7]    Zac Prince shall also provide, under penalty of perjury, certification that to the best of his belief, his estimated net worth on a confidential basis to be provided to the Debtors, the Bankruptcy Court, and Mohsin Meghji exclusively for in camera review that is consistent with the representations made to the Committee regarding his estimated net worth and relied upon in reaching the Committee Settlement.  An estate professional, including but not limited to an attorney of the Debtors, shall hold the net worth statement under that firm's record-keeping policy for clients for a period of seven years.

| | | scheduled to make a non-wallet distribution to creditors; or (ii) the day five (5) days after the Debtors give Prince written notice that the Debtors intend to commence non-wallet distributions on a date certain (the "Third Payment Date") | |
|---|---|---|---|
| Flori Marquez[8] | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies.<br><br>No reimbursement by the Debtors for amounts incurred pursuant to the Committee Settlement or for legal fees incurred. | $500,000<br><br>1/3 of such amount shall be due on the First Payment Date.<br><br>1/3 of such amount shall be due on the Second Payment Date.<br><br>1/3 of such amount shall be due on the Third Payment Date. | 200 hours |
| Amit Cheela | All pre and/or postpetition claims (other than~$92,000 remaining on the BlockFi Platform, which shall be retained) other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | N/A | 100 hours (but not more than 10 hours per week) |
| Jonathan Mayers | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | N/A | 200 hours (but not more than 2 hours on any day, 10 hours in any week, or 20 in any month) |
| Rob Loban | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | N/A | 100 hours |

---

[8]    Flori Marquez shall also provide, under penalty of perjury, certification that to the best of her belief, her estimated net worth on a confidential basis to be provided to the Debtors, the Bankruptcy Court, and Mohsin Meghji exclusively for in camera review that is consistent with the representations made to the Committee regarding her estimated net worth and relied upon in reaching the Committee Settlement. An estate professional, including but not limited to an attorney of the Debtors, shall hold the net worth statement under that firm's record-keeping policy for clients for a period of seven years.

| Tony Lauro | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | $100,000<br><br>1/3 of such amount shall be due on the First Payment Date.<br><br>1/3 of such amount shall be due on the Second Payment Date.<br><br>1/3 of such amount shall be due on the Third Payment Date. | 200 hours |
|---|---|---|---|
| Yuri Mushkin | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | N/A | 75 hours (but not more than 5 hours in any week, or 15 hours in any one month) |
| Andrew Tam | All pre and/or postpetition claims other than salary and employee benefits against estate waived<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | $100,000<br><br>1/3 of such amount shall be due on the First Payment Date.<br><br>1/3 of such amount shall be due on the Second Payment Date.<br><br>1/3 of such amount shall be due on the Third Payment Date. | 100 hours |
| David Spack | All pre and/or postpetition claims other than salary and employee benefits against estate waived.<br><br>Any indemnity claims waived except to the extent needed to access insurance policies. | $50,000<br><br>1/3 of such amount shall be due on the First Payment Date.<br><br>1/3 of such amount shall be due on the Second Payment Date.<br><br>1/3 of such amount shall be due on the Third Payment Date. | Unlimited through date of first BlockFi Interest Account distribution, 150 hours thereafter |

6.    Snap-Back Release Provision

        The release of certain Committee Settlement Parties as contemplated by the Plan is conditioned upon the cooperation and payment of the total agreed-upon cash payments.  In the event that the Plan Administrator does not believe that the Committee Settlement Parties, as applicable, are honoring their cooperation or payment obligations, the Plan Administrator will provide the applicable party with ten days' written notice to cure such deficiency.  If the dispute over cooperation or payment of cash payments persists following that cure period, the Plan Administrator may ask the Bankruptcy Court (who will serve as "gatekeeper" to ensure compliance with the Committee Settlement) to void the Debtor Release for lack of compliance with such settlement obligations, and if the Bankruptcy Court determines that any Committee Settlement Party, as applicable, has violated that obligation and has not cured such violation(s), the Debtor Release will be null and void as to such individual.  The statute of limitations for any and all estate claims against Prince and Marquez and the other officers and directors shall be tolled so that it does not expire until the earlier of (i) the life of the agreed cooperation obligations; and (ii) four years from the Effective Date.  For the avoidance of doubt, upon a determination by the Court that a director or officer is not complying with the Cooperation Requirement, the Committee Settlement shall be unwound as to that individual, and all consideration provided by that individual in exchange for the Debtor Release shall (within seven (7) days of the unwinding of such Debtor Release) be returned to such individual and the individual shall be relieved of any further cooperation obligation.

47

7.        No Admission of Liability

The Committee Settlement shall not constitute, be introduced, treated, deemed or otherwise interpreted or construed as (a) an admission, waiver, evidence or concession by any of the Committee Settlement Parties of any fact, liability or wrongdoing, or (b) evidence in any judicial or arbitration proceeding, except to enforce or defend the terms thereof.

8.        Access to Documents

The Wind-Down Debtors and the Plan Administrator will provide the Committee Settlement Parties (through their counsel) with reasonable access to the Debtors' documents, consistent with the Committee Settlement Parties' confidentiality obligations to the Debtors, in connection with the defense of any third-party claims, including but not limited to the pending securities litigation.

**D.        Wind-Down Debtors**

Subject at all times to such amendments or deviations as may be required, solely with respect to the Bermuda Debtor, under any Bermuda Implementation Mechanism and/or as required to implement the Plan consistent with Bermuda law or any Bermuda Order:

1.        Establishment of the Wind-Down Debtors

Pursuant to the Plan Administrator Agreement, on the Effective Date, the Wind-Down Debtors shall be identified (including one or more Debtors), established, formed, merged, or converted, as the case may be, consistent with the Restructuring Transactions Memorandum.  The Wind-Down Debtors shall be successors to the Debtors' rights, title, and interests to the Wind-Down Debtors' Assets.  The Wind-Down Debtors will not conduct business operations and will be charged with winding down the Debtors' Estates.  The Wind-Down Debtors shall be managed by the Plan Administrator and shall be subject to the Wind-Down Debtors' Oversight Committee.  The Wind-Down Debtors shall be administered in accordance with the terms of the Plan Administrator Agreement and shall be subject to the Wind-Down Budget.

Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and after the Effective Date the Wind-Down Debtors' Assets shall, subject to the Plan Administrator Agreement, be transferred to (as applicable) and vest in the Wind-Down Debtors one (1) business day before such assets are to be distributed to Holders of Allowed Claims.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-Down Debtors specifically retain and reserve the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtors and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Plan Administrator Agreement, compromise or settle any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors.  On and after the Effective Date, the Wind-Down Debtors and the Plan Administrator may, without further Bankruptcy Court approval, commence, litigate, and settle any Vested Causes of Action or Claims relating to any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided for herein and in the Plan Administrator Agreement.  All of the Wind-Down Debtors' activities shall be subject to the Wind-Down Budget.  The Wind-Down Debtors shall be entitled to enforce all defenses and counterclaims to any and all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

The Wind-Down Debtors shall be deemed to be substituted as plaintiff, defendant, or in any other capacity for the Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or

any other court that relates to a Wind-Down Debtors' Asset without the need for filing any motion for such relief.  On the Effective Date, the Debtors and the Plan Administrator shall execute the Plan Administrator Agreement and shall have established the Wind-Down Debtors pursuant hereto.  In the event of any conflict between the terms of this Article IV.C and the terms of the Plan Administrator Agreement, the terms of the Plan Administrator Agreement shall control.

      2.      <u>Wind-Down Debtors' Assets</u>

Notwithstanding any prohibition on assignability under applicable non-bankruptcy Law, on the Effective Date and thereafter, if additional Wind-Down Debtors' Assets become available, such additional Wind-Down Debtors' Assets, subject to this Plan, the Confirmation Order and the Plan Administrator Agreement, as applicable, shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the Debtors with all of attendant rights, title, and interests in and to all of the Wind-Down Debtors' Assets, in accordance with section 1141 of the Bankruptcy Code.  At such time when any of the Wind-Down Debtors' Assets vest in the Wind-Down Debtors, all such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the Wind-Down Debtors' Expenses as set forth herein and in the Plan Administrator Agreement.

For the avoidance of doubt, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the estate will continue until such property is no longer property of the estate, and pursuant to 11 U.S.C. § 362(c)(2), the stay of any other act described in 11 U.S.C. § 362(a) continues until the earlier of the closure or dismissal of these Chapter 11 Cases. Pursuant to 11 U.S.C. § 1141(b), this Plan and the Confirmation Order shall both provide that all property of the estate shall remain in the estate until one (1) business day before such assets are to be distributed to Holders of Allowed Claims pursuant to this Plan and the Confirmation Order, and at that point, shall vest in the Wind-Down Debtors.

      3.      [Reserved]

      4.      <u>Appointment of Plan Administrator</u>

The Plan Administrator shall be appointed by the Committee.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.  The Plan Administrator shall administer the Distributions to Holders of Allowed Claims or Allowed Interests to the extent provided under the Plan and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of pursuing Vested Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan. The structure of powers between the Plan Administrator and the Wind-Down Debtors' Oversight Committee shall be set by the Committee and disclosed in the Plan Supplement.

As set forth below, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order.  On the Effective Date, the authority, power, and incumbency of the Persons acting as managers, directors, and officers of the Debtors and/or Wind-Down Debtors, as applicable, shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors, and shall succeed to the powers of the Debtors' and/or Wind-Down Debtors', as applicable, managers, directors, and officers, except in the case of the Bermuda Debtor where, upon Confirmation of the Plan, the Bermuda Debtor shall execute a power of attorney, to be effective from the Effective Date, authorizing the Plan Administrator to take actions consistent with the Cross-Border Insolvency Protocol Agreement to the same extent as if the Plan Administrator were the Bermuda Debtor in the Chapter 11 Cases.

In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable

to serve; *provided*, *however*, that, in the event that a Plan Administrator resigns, is terminated, or is otherwise unable to serve, the Wind-Down Debtors' Oversight Committee shall appoint a successor to serve as a Plan Administrator in accordance with the Plan Administrator Agreement.  If the Wind-Down Debtors' Oversight Committee does not appoint a successor within the time periods specified in the Plan Administrator Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Debtors, shall approve a successor to serve as a Plan Administrator.

     5.     <u>Dissolution of Boards of the Debtors</u>

     As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor, except in the case of the Bermuda Debtor where the board of directors shall be dissolved upon the entry of a winding up order by the Bermuda Court.  Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

     As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors and/or the Wind-Down Debtors, as applicable, with respect to its affairs, except in the case of the Bermuda Debtor where the Plan Administrator shall be authorized by a power of attorney executed by the Bermuda Debtor to take actions consistent with the Cross-Border Insolvency Protocol Agreement to the same extent as if the Plan Administrator were the Bermuda Debtor in the Chapter 11 Cases. Subject to the foregoing and in all respects to the terms of this Plan, except to the extent limited by the Bermuda Implementation Mechanism, the Cross-Border Insolvency Protocol Agreement and/or Bermuda law, the Plan Administrator shall have the power and authority to take any action necessary to wind-down and dissolve any of the Debtors and/or the Wind-Down Debtors, as applicable, and shall:  (a) file a certificate of dissolution for any of the Debtors and/or the Wind-Down Debtors, as applicable, together with all other necessary corporate and company documents, to effect the dissolution of any of the Debtors and/or the Wind-Down Debtors, as applicable, under the applicable laws of each applicable Debtor's and/ or Wind-Down Debtor's state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Debtors or the Estates before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

     The filing by the Plan Administrator of any of the Debtors' and/or the Wind-Down Debtors', as applicable, certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of the Debtors and/or the Wind-Down Debtors, as applicable, or any of their Affiliates.

     6.     <u>Responsibilities of Plan Administrator</u>

     Responsibilities of the Plan Administrator shall be identified in the Plan Administrator Agreement, subject to the limitations in respect of the Bermuda Debtor set out in the Cross-Border Insolvency Protocol Agreement and shall include, without limitation:

     (a)     implementing the Wind-Down and making Distributions contemplated by the Plan;

     (b)     marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtors' Assets;

     (c)     overseeing the accounts of the Debtors and the Wind-Down Debtors and the Wind Down and dissolution of the Debtors and the Wind-Down Debtors, including effectuating the transactions described in the Restructuring Transactions Memorandum;

(d)     receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtors to abandon the Wind-Down Debtors' Assets, including causing the Wind-Down Debtors to invest any monies held as Wind-Down Debtors' Assets;

(e)     opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtors, including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors;

(f)     entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or the Plan Administrator Agreement, and performing all obligations thereunder;

(g)     collecting and liquidating all Wind-Down Debtors' Assets, including the sale of any of the Wind-Down Debtors' Assets;

(h)     protecting and enforcing the rights to the Wind-Down Debtors' Assets (including any Vested Causes of Action) vested in the Wind-Down Debtors and Plan Administrator, as applicable, by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(i)     investigating any of the Wind-Down Debtors' Assets and any Vested Causes of Action;

(j)     reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(k)     seeking the examination of any Person or Entity pursuant to Bankruptcy Rule 2004;

(l)     retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan Administrator Agreement and paying the reasonable compensation thereof;

(m)     paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtors' Assets, solely out of Wind-Down Debtors' Assets;

(n)     reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action;

(o)     acquiring litigation and other Claims related to the Debtors and prosecuting such Claims;

(p)     reviewing and compelling turnover of the Debtors or the Wind-Down Debtors' property;

(q)     calculating and making all Distributions to the Holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to Holders of Allowed Interests, as provided for in, or contemplated by, the Plan and the Plan Administrator Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make Distributions from the Wind-Down Debtors' Assets to the Holders of Claims and Interests (if applicable) against that specific Debtor;

(r)     establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve;

51

(s)      withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under any income tax or other laws;

(t)      in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtors;

(u)      making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtors, and filing tax returns for the Debtors or the Wind-Down Debtors pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtors, as applicable; *provided*, *however*, that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be Filed after the Effective Date or for any tax liability related thereto;

(v)      abandoning or donating to a charitable organization qualifying under section 501(c)(3) of the IRC any of the Wind-Down Debtors' Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(w)      seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(x)      establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtors as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtors;

(y)      paying the Wind-Down Debtors' Expenses, and upon request of the Bermuda Provisional Liquidators, the Plan Administrator shall be obliged to provide, or cause to provide, funding to satisfy the Bermuda Professional Fee Claims in full;

(z)      if the Plan Administrator, in its sole discretion, deems it appropriate, to seek to establish a bar date for Filing Proofs of Interest in any Debtor or otherwise determine the Holders and extent of Allowed Interests in any Debtor;

(aa)      purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(bb)      undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtors', or the Plan Administrator's duties under the Plan, as applicable, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(cc)      retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of the Plan Administrator Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

(dd)    exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and the Plan Administrator Agreement;

(ee)    taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtors; and

(ff)    entering into and complying with the terms of the Cross-Border Insolvency Protocol Agreement and any amendments thereto or further protocols with the Bermuda Provisional Liquidators approved by the Bermuda Court and the Bankruptcy Court and taking all steps reasonably required to facilitate a Bermuda Implementation Mechanism and/or as required under Bermuda law and/or to comply with the terms of a Bermuda Order.

7.    The Wind-Down Debtors' Oversight Committee

The Wind-Down Debtors' Oversight Committee shall consist of those parties identified in the Plan Supplement. The Wind-Down Debtors' Oversight Committee shall at all times be selected by the Committee and include at all relevant times a member appointed to represent the interests of each of BlockFi Inc., BlockFi International, and BlockFi Lending, and one member appointed by the Bermuda Provisional Liquidators (or such greater amount as agreed to by the Committee and the Bermuda Provisional Liquidators).

The Wind-Down Debtors' Oversight Committee shall have the responsibility to review and advise the Plan Administrator with respect to the liquidation and Distribution of the Wind-Down Debtors' Assets transferred to the Wind-Down Debtors in accordance herewith and the Plan Administrator Agreement; *provided* that the Bermuda Provisional Liquidators shall have the right to direct the Plan Administrator with respect to any matters relating to compliance with Bermuda law in respect of the Bermuda Debtor and with respect to certain matters set out in the Cross-Border Insolvency Protocol Agreement. For the avoidance of doubt, in advising the Plan Administrator, the Wind-Down Debtors' Oversight Committee shall maintain the same fiduciary responsibilities as the Plan Administrator. Vacancies on the Wind-Down Debtors' Oversight Committee shall be filled by a Person designated by the Plan Administrator, subject to the unanimous consent of the remaining member or members of the Wind-Down Debtors' Oversight Committee. The Plan Administrator shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Wind-Down Debtors' Oversight Committee for cause; *provided* that the removal of the Bermuda Provisional Liquidators as a member of the Wind-Down Debtors' Oversight Committee shall require an order of the Bermuda Court.

8.    Wind-Down Debtors' Expenses

The Wind-Down Debtors' Expenses shall be paid from the Wind-Down Debtors' Assets subject to the Wind-Down Budget.

9.    Insurance; Bond

The Plan Administrator may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Plan Administrator and the Wind-Down Debtors' Oversight Committee under the Plan Administrator Agreement. Unless otherwise agreed to by the Wind-Down Debtors' Oversight Committee, the Plan Administrator shall serve with a bond, the terms of which shall be agreed to by the Wind-Down Debtors' Oversight Committee, and the cost and expense of which shall be paid by the Wind-Down Debtors.

To the extent any directors or officers provide assistance to the Wind-Down Debtors after the Effective Date of the Plan, the Wind-Down Debtors will provide such directors and officers with reasonable and customary indemnification, exculpation, and insurance coverage with respect to such services, including those provided as part of the directors or officers' cooperation requirement under the Committee Settlement, as applicable, consistent with the indemnification, exculpation, and insurance coverage provided to the Plan Administrator.

10.    Fiduciary Duties of the Plan Administrator

Pursuant hereto and the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive Distributions pursuant to Plan.

11.    Termination of the Wind-Down Debtors

The Wind-Down Debtors will terminate on the earlier of: (a) (i) the final liquidation, administration and Distribution of the Wind-Down Debtors' Assets in accordance with the terms of the Plan Administrator Agreement and the Plan, and the full performance of all other duties and functions as set forth herein or in the Plan Administrator Agreement and (ii) the Chapter 11 Cases of the Debtors have been closed; or (b) the Plan Administrator determines in its reasonable judgment that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order and/or the Plan Administrator Agreement subject, with respect to the Bermuda Debtor only, to the Bermuda Implementation Mechanism and Bermuda law. After (x) the final Distributions pursuant hereto, (y) the Filing by or on behalf of the Wind-Down Debtors of a certification of dissolution with the Bankruptcy Court, and (z) any other action deemed appropriate by the Plan Administrator (including such steps as may be required, solely with respect to the Bermuda Debtor, in accordance with the Bermuda Implementation Mechanism, any Bermuda Order and/or Bermuda law), the Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions.

12.    [Reserved]

13.    No Liability of the Wind-Down Debtor

On and after the Effective Date, the Wind-Down Debtors shall have no liability on account of any Claims or Interests except as set forth herein and in the Plan Administrator Agreement. All payments and all Distributions made by the Plan Administrator hereunder shall be in exchange for all Claims or Interests against the Debtors.

**E.    Sources of Consideration for Restructuring Transaction**

The Wind-Down Debtors shall fund Distributions under the Plan with either (a) Cash, (b) Digital Assets, or (c) the Wind-Down Debtors' Assets; *provided*, *however*, that Allowed Professional Fee Claims shall be paid from the Professional Fee Escrow Account in the first instance. The Wind-Down Debtors' Assets shall be used to pay the Wind-Down Debtors' Expenses (including the compensation of the Plan Administrator and any professionals retained by the Wind-Down Debtors), and to satisfy payment of Allowed Claims and Interests as set forth in the Plan.

**F.    Corporate Existence and Dissolution**

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, company, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificates, memorandum of association or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) in effect prior to the Effective Date, except to the extent such certificates, memorandum of association, or articles of incorporation, certificates of formation, certificates of organization, or certificates of limited partnership and bylaws, operating agreements, limited liability company agreements, or limited partnership agreements (or other formation documents) are amended pursuant to the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings under applicable state or federal law).

54

On and after the Effective Date, the Wind-Down Debtors will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Wind-Down Debtors shall have the power and authority to take any action necessary to Wind Down and dissolve the Debtors' Estates.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Distributions having been made and completion of all of its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Debtors or the Wind-Down Debtors, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Debtors or the Wind-Down Debtors, as applicable, in and withdraw the Wind-Down Debtors from applicable states.

As soon as practicable after the Effective Date, the Wind-Down Debtors shall take such actions as the Wind-Down Debtors may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Plan Administrator on behalf of any Wind-Down Debtors without need for any action or approval by the shareholders or board of directors or managers of such Debtor.

On and after the Effective Date, the Debtors or the Wind-Down Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Pursuant to the terms of this Plan, any Money Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further action is required to be taken by the Debtors or the Wind-Down Debtors to effectuate such withdrawal; *provided* that, following the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall use commercially reasonable efforts to comply with all state banking department requirements for the surrender of a Money Transmitter License. Nothing in this Plan shall be construed to limit the rights of creditors, Debtors, the Wind-Down Debtors, or regulators to pursue recoveries against surety bonds maintained by the Debtors in connection with Money Transmitter Licenses. Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

G.      **Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan and the Definitive Documents shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Debtors, the Wind-Down Debtors or any other Entity, including: (1) appointment of the directors, managers, members, and officers for the Wind-Down Debtors as provided herein; (2) the issuances, transfer, and Distribution of the Wind-Down Debtors' Assets; (3) the formation of the Wind-Down Debtors and appointment of the Plan Administrator and Wind-Down Debtors' Oversight Committee; (4) the formation of any entities pursuant to and the implementation of the Plan and performance of all actions and transactions contemplated hereby and thereby; (5) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (6) all other acts or actions contemplated by the Plan and the Definitive Documents or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions, including any Bermuda Implementation Mechanism (including effectuating the Restructuring Transactions Memorandum) (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan and the Definitive Documents involving the corporate structure of the Debtors or the Wind-Down Debtors, as applicable, and any corporate action required by the Debtors or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors, as applicable. On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, Securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors, and any and all other agreements, documents, Securities, and instruments relating to the

55

foregoing.  The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non-bankruptcy law.

**H.        Vesting of Assets in the Wind-Down Debtors**

Except as otherwise provided in Article IV.D.2 of the Plan or in any agreement, instrument, or other document incorporated in the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting Wind-Down Debtors' Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, or transferred pursuant to the Plan), and any property acquired by any of the Debtors under the Plan shall vest in the Wind-Down Debtors as a successor to the Debtors, free and clear of all Liens, Claims, charges, or other encumbrances.

**I.        Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a Distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Restructuring Transactions (including, without limitation, the Definitive Documents), all notes, bonds, indentures, including the BIA Indenture, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

**J.        Effectuating Documents; Further Transactions**

On and after the Effective Date, the Debtors, and their directors, managers, partners, officers, authorized persons, and members thereof, and the Wind-Down Debtors and Plan Administrator are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and Definitive Documents in the name of and on behalf of the Debtors and Wind-Down Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**K.        Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Entity) of property under the Plan and Definitive Documents or pursuant to:  (1) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**L.**     **Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtors shall succeed to all rights to commence and pursue any and all Vested Causes of Action, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred under the Plan or pursuant to a Final Order. Such rights shall be preserved by the Debtors and Wind-Down Debtors and shall vest in the Wind-Down Debtors, with the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to a Final Order, pursuant to the releases and exculpations contained in the Plan, including Article VIII of the Plan, or pursuant to the settlements contained in the Plan, including Article IV of the Plan, which shall be deemed released, waived, and settled by the Debtors and Wind-Down Debtors as of the Effective Date; *provided that* the exculpation provisions and release provisions of Article VIII of the Plan shall not extend to any Cause of Action identified in the Schedule of Retained Causes of Action.

The Wind-Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the beneficiaries of the Wind-Down Debtors and in accordance with the Plan Administrator Agreement and the Plan. **No Entity may rely on the absence of a specific reference in the Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Wind-Down Debtors, on behalf of the Debtors and the Wind-Down Debtors, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan,** *provided that* the exculpation and release provisions of Article VIII of the Plan shall not extend to any Cause of Action identified in the Schedule of Retained Causes of Action. Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, on behalf of the Debtors and Wind-Down Debtors and in accordance with the Plan Administrator Agreement, expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Wind-Down Debtors, on behalf of the Debtors, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors, except as otherwise provided in the Plan, including Article VIII of the Plan. The Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

**M.**     **Closing the Chapter 11 Cases**

On and after the Effective Date, the Debtors or the Wind-Down Debtors shall be permitted to classify all of the Chapter 11 Cases of the Debtors as closed except for the Chapter 11 Case of any one Debtor as having its Chapter 11 Case remain open following the Effective Date and all contested matters relating to any of the Debtors, including objections to Claims and any adversary proceedings, shall be administered and heard in the Chapter 11 Case of that applicable Debtor, irrespective of whether such Claim(s) were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

**N.**     **Closing the Bermuda Insolvency Proceedings**

At any time following the Effective Date, subject to the requirements of any Bermuda Implementation Mechanism, the Bermuda Provisional Liquidators together with the Bermuda Debtor shall be authorized to file an application for entry of a winding up order to wind up the Bermuda Debtor in accordance with Bermuda law and to

dispense with the Companies Act post winding up statutory requirements to the extent approved by the Bermuda Court.

**O.      Employee Arrangements**

To the best of the Debtors' knowledge, section 1129(a)(13) of the Bankruptcy Code is inapplicable; *provided* that, for the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with the Employee Transition Plan and applicable law.

**P.      Employee Transition Plan**

The Debtors shall be authorized to implement the Employee Transition Plan, which shall be included in the Plan Supplement.  The Employee Transition Plan shall help ensure that certain crucial employees are available to consummate the Plan, including (i) prosecuting and defending against the litigation with Alameda, FTX, Emergent, Marex, 3AC, and Core Scientific; (ii) securely maintaining and protecting Client data, including "Know Your Client" data; (iii) updating BlockFi's user interface to reflect proper accounting of Digital Assets as of the Platform Pause; (iv) reconciling Client Claims and Accounts; (v) rebalancing the Debtors' Digital Assets portfolio; (vi) reopening the BlockFi Platform for a limited period of time to permit Clients to withdraw Digital Assets safely and securely; (vii) conducting ordinary course maintenance of the BlockFi Platform; and (viii) interacting and responding to state, federal and international regulators.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases of the Debtors, including any employee benefit plans, severance plans, or other Executory Contracts under which employee obligations arise (all subject to Article IV.O of the Plan), shall be deemed rejected by the Debtors or Wind-Down Debtors, as applicable, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract and Unexpired Lease:  (a) was previously assumed, assumed and assigned, or rejected by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume, assume and assign, or reject Filed on or before the Confirmation Date that is pending on the Effective Date; (d) is an Insurance Contract; or (e) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, if any.  For the avoidance of doubt, any institutional loan made under the Loan Program outstanding on the Confirmation Date will be listed on the Schedule of Assumed Executory Contracts and Unexpired Leases and will automatically vest in the Wind-Down Debtors.  For the avoidance of doubt, upon assumption, no institutional loan made under the Loan Program outstanding on the Confirmation Date will be in administrative forbearance and the written terms of each institutional loan will continue in full force and effect.

Pursuant to sections 365(a) and 1123 of the Bankruptcy Code, entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection, assumption, or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as provided for in the Plan, effective as of the Effective Date unless otherwise specified.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Wind-Down Debtor according to its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment under applicable federal law.  Any motions to assume any Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or as soon as reasonably practicable after the Effective Date by a Final Order.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, shall have the right to alter, amend, modify, or supplement

58

the Schedule of Assumed Executory Contracts and Unexpired Leases identified in this <u>Article V.A</u> of the Plan and in the Plan Supplement at any time through and including forty-five days after the Effective Date.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

**B.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy law to the contrary, the Debtors and Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims, Noticing, and Solicitation Agent and served on the Debtors or Wind-Down Debtors, as applicable, no later than thirty days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed released, and be subject to the permanent injunction set forth in <u>Article VIII.D</u> of the Plan, including any Claims against any Debtor listed on the Debtors' schedules as unliquidated, contingent, or disputed.** All Allowed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims against the applicable Debtor in accordance with <u>Article III.C</u> of the Plan.

**D.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed**

The Debtors or the Wind-Down Debtors, as applicable, shall pay Cures, if any, on account of assumed Executory Contracts and Unexpired Leases. The Debtors shall provide notice of the amount and timing of payment of any such Cure to the parties to the applicable assumed Executory Contracts or Unexpired Leases as part of the Plan Supplement. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the ordinary course amounts paid or proposed to be paid by the Debtors or the Wind-Down Debtors shall be dealt with in the ordinary course of business and, if needed, shall be Filed with the Claims, Noticing, and Solicitation Agent on or before thirty days after the Effective Date. **If any counterparty to an Executory Contract or Unexpired Lease does not receive a notice of assumption and applicable cure amount, such counterparty shall have until on or before thirty days after the Effective Date to bring forth and File a request for payment of Cure.** Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtors or the Wind-Down Debtors, without the need for any objection by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied

and released upon payment by the Debtors or the Wind-Down Debtors of the Cure in the ordinary course of business or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty); *provided, however*, that nothing herein shall prevent the Wind-Down Debtors from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure.  The Wind-Down Debtors may also settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' first scheduled omnibus hearing for which such objection is timely Filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

In the event of a dispute regarding:  (1) the amount of any Cure Claim, (2) the ability of the Debtors or the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (3) any other matter pertaining to assumption or assignment, then any disputed Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors or the Wind-Down Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.D, or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty), shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assumed and assigned in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, in the amount and at the time in the ordinary course of business or upon and in accordance with any resolution of a Cure dispute (whether by order of the Bankruptcy Court or through settlement with the applicable Executory Contract or Unexpired Lease counterparty), shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in the event that any counterparty to an Executory Contract or Unexpired Lease receives a notice of assumption and applicable proposed Cure amount, and disputes the Debtors' proposed Cure amount, such party shall not be required to File a Proof of Claim with respect to such dispute.  Any counterparty to an Executory Contract or Unexpired Lease that does not receive a notice or applicable proposed Cure amount, and believes a Cure amount is owed, shall have thirty days after the Effective Date to File a Proof of Claim with respect to such alleged Cure amount, which Claim shall not be expunged until such Cure dispute is resolved.**

E.    **Indemnification Provisions**

On and as of the Effective Date, the Indemnification Provisions will be assumed by the Debtors, and shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date.  The Wind-Down Debtors' governance documents shall provide for indemnification, defense, reimbursement, and limitation of liability of, and advancement of fees and expenses to, the Wind-Down Debtors' current and former directors, managers, officers, members, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors to the fullest extent permitted by law and at least to the same extent as provided under the Indemnification Provisions against any Cause of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted; *provided* that the Wind-Down Debtors shall not indemnify any Person for any Cause of Action arising out of or related to any act or omission that is a criminal act or constitutes actual fraud, gross negligence, bad faith, or willful misconduct.  None of the Wind-Down Debtors will amend or restate their respective governance documents before, on, or after the Effective Date to

60

terminate or materially adversely affect any of the Wind-Down Debtors' obligations to provide such rights to indemnification, defense, reimbursement, limitation of liability, or advancement of fees and expenses.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Indemnification Provisions.

**F.**        **Insurance Policies and Surety Bonds**

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) each of the Insurance Contracts (including, without limitation, any D&O Liability Insurance Policies) which identify one or more of the Debtors as first named insured or counterparty thereto shall be assumed, in their entirety by the applicable Wind-Down Debtor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 105 and 365 of the Bankruptcy Code, (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Insurance Contracts regardless of when any such obligations arise, and all Insurance Contracts shall revest in the applicable Wind-Down Debtors, unaltered; (c) all Insurance Contracts and all legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or entity, as applicable, under any Insurance Contracts, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, and Insurers shall not be required to file or serve any objection to a proposed Cure Claim or a request, application, claim, Proof of Claim or motion for payment or allowance of any Administrative Claim, and Insurers shall not be subject to any bar date or similar deadline governing Cure Claims, Proofs of Claim or Administrative Claims; (d) the Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy"), and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject in all respects to the terms and conditions thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date; and notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors or the Wind-Down Debtors may deem necessary; and (e) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the  ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Wind-Down Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Wind-Down Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Wind-Down Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine; and (IV) the Insurers to cancel any Insurance Contracts, and take other actions relating to the Insurance Contracts (including effectuating a setoff), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Contracts.  For the avoidance of doubt, the D&O Insurance Providers shall not be Released Parties or Releasing Parties under the Plan.  Notwithstanding the foregoing and notwithstanding any provision of this Plan to the contrary, neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, in any way preclude the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon any Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action; *provided, however*, that nothing in this Article V.F of the Plan shall alter or prejudice any or all of the Insurers' rights and defenses with respect to any such claims, arguments, evidence, and/or causes of action, and all such rights and defenses of the Insurers are fully and expressly reserved and preserved.

G.      **Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement (unless otherwise explicitly provided) shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Wind-Down Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date.

H.      **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      **Contracts and Leases Entered into After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor or Wind-Down Debtor liable thereunder in the ordinary course of its business. Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      **Timing and Calculation of Amounts to Be Distributed**

Except (1) as otherwise provided herein, (2) upon a Final Order, (3) as otherwise provided in the Cross-Border Insolvency Protocol Agreement (in the event the Bermuda Provisional Liquidators after consultation with the Plan Administrator determine that distribution in Bermuda or via a Bermuda Liquidation Entity would be in the best interests of creditors), or (4) as otherwise agreed to by the Debtors or the Wind-Down Debtors, as the case may be, and the Holder of the applicable Claim, on the Distribution Date (or if a Claim is not an Allowed Claim on the Distribution Date, on the next Distribution Date after such Claim becomes, as applicable, an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the applicable Distributions that the Plan provides for Allowed Claims in the applicable Class from the Plan Administrator. In the event that any payment or Distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as specifically provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

B.      **Rights and Powers of Plan Administrator**

1.      <u>Powers of the Plan Administrator</u>

In addition to the responsibilities of the Plan Administrator as set forth in <u>Article IV.D.1</u> of the Plan, the Plan Administrator shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties and exercise its rights under the Plan; (b) make all Distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities and powers; and (d) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

2.    Expenses Incurred on or after the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date and any reasonable compensation and expense reimbursement claims (including reasonable attorney and/or other professional fees and expenses) made by such Plan Administrator shall be paid in Cash by the Wind-Down Debtors.

C.    **Delivery of Distributions, Undeliverable or Unclaimed Distributions and Unclaimed Property**

1.    Distributions Generally

Except as otherwise provided in the Plan (including in Article VI.C.2 below), the Plan Administrator shall make Distributions to Holders of Allowed Claims (other than Distributions of any Digital Assets to Holders of Allowed Account Holder Claims) or Allowed Interests, as appropriate, at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such Distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.  The Plan Administrator shall make any Distributions of Digital Assets to Holders of Allowed Account Holder Claims to the external wallet address designated by such Holder prior to the Distribution Date.  The manner of such Distributions shall be determined at the discretion of the Wind-Down Debtors.

2.    Distributions on Account of Obligations of Multiple Debtors

For all purposes associated with Distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single Distribution under the Plan.  Any such Claims shall be released pursuant to Article VIII of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.

3.    Record Date of Distributions

On the Distribution Record Date, the various transfer registers for each Class of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims.  The Plan Administrator shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Plan Administrator shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

4.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the Wind-Down Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, or as set forth in a Final Order, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all of the Disputed Claim has become an Allowed Claim or has otherwise been resolved by settlement or Final Order; *provided* that, if the Wind-Down Debtors do not dispute a portion of an amount asserted pursuant to an otherwise Disputed Claim, the Plan Administrator may make a partial Distribution on account of that portion of such Claim that is not Disputed at the time and in the manner that the Plan Administrator makes Distributions to similarly situated Holders of Allowed Claims pursuant to the Plan.  Any dividends or other Distributions arising from property distributed to Holders of Allowed Claims, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim, as applicable, in such Class that becomes an Allowed Claim after the date or dates that such dividends or other Distributions were earlier paid to Holders of Allowed Claims in such Class.

5.        De Minimis Distributions; Minimum Distributions

The Plan Administrator shall not make any Distributions in Cash or Digital Assets to any Holder of an Allowed Claim or Interest pursuant to Article III.C of this Plan on account of such Allowed Claim or Interest if such Distribution is valued less than *De Minimis* Claim Threshold, and each Holder of an Allowed Claim or Interest to which this limitation applies shall not be entitled to any Distributions under the Plan.

6.        Undeliverable Distributions as Unclaimed Property

In the event that either (a) a Distribution to any Holder is returned as undeliverable or (b) the Holder of an Allowed Claim does not respond to a request by the Debtors or the Plan Administrator for information necessary to facilitate a particular Distribution, no Distribution shall be made unless and until the Plan Administrator has determined the then-current address of such Holder or received the necessary information to facilitate a particular Distribution, at which time such Distribution shall be made to such Holder without interest, dividends, or other accruals of any kind; *provided* that such Distributions shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code on the date that is six months after the Distribution Date. After such date, all Unclaimed Property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or Unclaimed Property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be released and forever barred.

7.        Invalid Wire Transfers as Unclaimed Property

As of the Effective Date of the Plan, the Wind-Down Debtors or Plan Administrator, as applicable, shall attempt to return all Invalid Wire Transfers to the Invalid Wire Transmitters that initiated them using the most recent wire information provided by the Invalid Wire Transmitter. If, after six months following any attempted return, an Invalid Wire Transmitter either (a) has the Wind-Down Debtors' or Plan Administrator's, as applicable, return of the Invalid Wire Transfer returned as undeliverable or (b) fails to respond to a request by the Wind-Down Debtors or the Plan Administrator, as applicable, for the necessary information to facilitate a return of the Invalid Wires Transfer, the Wind-Down Debtors or Plan Administrator, as applicable, shall make one additional request to such Invalid Wire Transmitter for the necessary information to facilitate a return of the Invalid Wire Transfers. In the event that the Invalid Wire Transmitter does not respond to the Wind-Down Debtors' or the Plan Administrator's, as applicable, second request for the necessary information to facilitate a return, no return shall be made unless and until the Wind-Down Debtors or the Plan Administrator, as applicable, has determined the then-current address of such Invalid Wire Transmitter or received the necessary information to facilitate a proper return, at which time such return shall be made without interest, dividends, or other accruals of any kind; *provided* that such Invalid Wire Transfers shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code on the date that is one year after the Effective Date. After such date, all Unclaimed Property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable local, state, federal, or foreign escheat, abandoned, or Unclaimed Property laws to the contrary), and the claim to such Invalid Wire Transfer shall be released and forever barred.

8.        Manner of Payment Pursuant to the Plan

At the option of the Plan Administrator, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise provided in applicable agreements. Any distribution of Digital Assets may be made in any manner that the Plan Administrator reasonably determines shall be effective and in compliance with applicable law.

**D.      Compliance Matters**

In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the Plan Administrator, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary,

64

the Debtors, the Wind-Down Debtors, the Plan Administrator, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms that are reasonable and appropriate; *provided* that the Wind-Down Debtors and the Plan Administrator, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond.  The Debtors, the Wind-Down Debtors, the Plan Administrator, and any other applicable withholding and reporting agents reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**E.**     **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim, other than any Account Holder Claim, asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Petition Date.

**F.**     **Dollarization of Account Holder Claims**

As is required by section 502(b) of the Bankruptcy Code, each Account Holder's Claim is determined by the fair market value of the Digital Assets (based on United States dollars pursuant to the Digital Assets Conversion Table) held by the Account Holder at the Debtors as of the Petition Date at 11.59 p.m. UTC.  This process is generally referred to as a "dollarization." Dollarization allows the Debtors to put all Account Holders' Claims on equal footing to calculate recoveries in accordance with the requirements of the Bankruptcy Code.

**G.**     **Claims Paid or Payable by Third Parties**

    1.     Claims Paid by Third Parties

The Debtors or the Wind-Down Debtors, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives a payment on account of such Claim from a party that is not a Debtor or Wind-Down Debtor, as applicable.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or a Wind-Down Debtor, as applicable, on account of such Claim, such Holder shall, within ten Business Days of receipt thereof, repay, return, or deliver any Distribution held by or transferred to the Holder to the applicable Wind-Down Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.  The failure of such Holder to timely repay, return, or deliver such Distribution shall result in the Holder owing the applicable Wind-Down Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the ten-Business Day grace period specified above until the amount is repaid.

    2.     Claims Payable by Third Parties

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract. To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such satisfaction, such Claim may be expunged on the Claims Register by the Claims, Noticing, and Solicitation Agent to the extent of any such satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.        Applicability of Insurance Policies

Except as otherwise provided herein, payments to Holders of Claims shall be in accordance with the provisions of any applicable Insurance Contract. Nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any rights, defenses, or Cause of Action that the Debtors or any other Entity may hold against any other Entity, including Insurers, under any Insurance Contracts, or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers under any applicable Insurance Contracts and applicable non-bankruptcy law.

**H.      Setoffs and Recoupment**

Except as otherwise expressly provided for herein, each Debtor, Wind-Down Debtor, or such Entity's designee as instructed by such Debtor or Wind-Down Debtor, as applicable, may, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup from an Allowed Claim and any Distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature whatsoever that the Debtor or Wind-Down Debtor, as applicable, may have against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised, settled, or released on or prior to the Effective Date (whether pursuant to the Plan or otherwise).  Notwithstanding the foregoing, except as expressly stated in Article VIII of this Plan, neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors or the Wind-Down Debtors of any such Claims, rights, or Causes of Action the Debtors or Wind-Down Debtors may possess against such Holder.

**I.      Allocation between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof and as determined for federal income tax purposes) and second, to the extent the consideration exceeds the principal amount of the Allowed Claims, to the remaining portion of such Allowed Claim, if any.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS AND INTERESTS**

Subject to the Bermuda Claims Adjudication Process and the Cross-Border Insolvency Protocol Agreement (as may be applicable):

**A.      Disputed Claims Process**

After the Effective Date, the Debtors, the Wind-Down Debtors, and any party-in-interest, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

Notwithstanding anything in this Plan to the contrary:  (1) all Claims against the Debtors that result from the Debtors' rejection of an Executory Contract or Unexpired Lease; (2) Claims filed to dispute the amount of any proposed Cure pursuant to section 365 of the Bankruptcy Code; and (3) Claims that the Debtors seek to have determined by the Bankruptcy Court, including Claims the Debtors seek to subordinate under the Plan (contractually, equitably, or otherwise), shall in all cases be determined by the Bankruptcy Court, if not otherwise resolved through settlement with the applicable claimant.

**B.**       **Objections to Claims**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Wind-Down Debtors, shall have the sole authority to: (1) File, withdraw, or litigate to judgment, any objections to Claims; and (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Wind-Down Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to <u>Article IV.L</u> of the Plan.

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.  For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims set forth in this paragraph at any time, including before or after the expiration of one hundred eighty days after the Effective Date, in its discretion or upon request by the Debtors or any party in interest.

**C.**       **Estimation of Claims**

Before or after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions) and may be used as evidence in any supplemental proceedings, and the Debtors or the Wind-Down Debtors may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Disputed Claim is estimated.

**D.**       **No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that, if only a portion of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or Distribution shall be made on account of such undisputed amount.

**E.**       **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the Holder of such Allowed Claim the Distribution (if any) to which such Holder is entitled under the Plan, without any interest, dividends, or accruals to be paid on account of such Allowed Claim unless required under applicable bankruptcy law.

**F.**       **No Interest**

Unless otherwise specifically provided for herein or by Final Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.  Additionally, and without limiting the

foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

G.     **Adjustment to Claims and Interests without Objection**

Any Claim or Interest that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged on the Claims Register at the direction of the Wind-Down Debtors without the Wind-Down Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim or Interest against the same Debtor or multiple Debtors may be adjusted or expunged on the Claims Register at the direction of the Wind-Down Debtors without the Wind-Down Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

H.     **Disallowance of Claims**

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Wind-Down Debtors, as applicable. All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**Except as otherwise provided herein or as agreed to by the Debtors or the Wind-Down Debtors, any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

I.     **Amendments to Proofs of Claim**

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Proof of Claim or Proof of Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Wind-Down Debtors, and any such new or amended Proof of Claim or Proof of Interest Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

J.     **Claims Against Settlement Participants**

Before filing a Claim against the Committee Settlement Parties related to BlockFi, any creditor must (i) have opted out of the Third-Party Release and (ii) obtained a ruling upon motion to the Court, based on a copy of the proposed complaint, that all such claims fall outside the scope of the Debtor Release (including that it is not a derivative Claim); *provided*, *however*, that this paragraph shall not apply to claims covered by an Insurance Contract other than any D&O Liability Insurance Policies. The Plan Administrator will have the option to assert that the claimant's action is barred by the Debtor Release. In the event that the Plan Administrator does not exercise such option, the Committee Settlement Parties, as applicable, may argue that such Claim is barred by the Debtor Release and, if successful, the Wind-Down Debtors will indemnify and reimburse the Settlement Participants, as applicable, for any reasonable and documented fees incurred in asserting that such claim is barred by the Debtor Release.

**ARTICLE VIII.**
**EFFECT OF CONFIRMATION OF THE PLAN**

A.    **Releases by the Debtors**

Notwithstanding anything contained in the Plan to the contrary, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, other than with respect to the Retained Preference Claims, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted or assertable on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Chapter 11 Cases and related adversary proceedings, the Platform Pause, the FTX Loan Agreement, the 3AC Master Loan Agreements, the Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the administration and implementation of the Wind Down, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases described in this <u>Article VIII.A</u> by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this <u>Article VIII.A</u> is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

For the avoidance of doubt, the releases by the Debtors do not extend to, and do not release:  (1) any Cause of Action identified in the Schedule of Retained Causes of Action and (2) any properly pled direct claim against a Released Party held by a creditor. For the purposes of the releases by the Debtors, properly pled direct claims against a Released Party are claims where the alleged conduct caused direct injury to the plaintiff-creditor distinct from any injury to the Debtors.

For the avoidance of doubt, nothing in this Plan shall release, waive, or otherwise limit the Debtors' or the Wind-Down Debtors' right to object to Claims or Interests (or to assert affirmative defenses, mandatory counterclaims, rights of setoff or other defenses, arising in connection with such Claims against or Interests in the Debtors or Wind-Down Debtors) or the Retained Preference Claims; *provided* that such Retained Preference Claims shall remain subject to <u>Article IV.L</u> of this Plan.

For the avoidance of doubt, these releases extend to any Claim by one Debtor against another Debtor, *other than* an Intercompany Claim that is Allowed or reinstated pursuant to this Plan or the Restructuring Transactions Memorandum.

**B.    Releases by Holders of Claims and Interests**

Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Platform Pause, the business or contractual arrangements between any Debtor and any Released Party, the FTX Loan Agreement, the 3AC Master Loan Agreements, the Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the administration and implementation of the Wind Down, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date; *provided* that, without limiting the foregoing, the releases described in this **Article VIII.B** shall not extend to any Cause of Action identified in the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this **Article VIII.B**, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this **Article VIII.B** is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to any of the Releasing Parties or the Debtors or the Wind-Down Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this **Article VIII.B** and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity (i) that opted out of the releases contained in this **Article VIII.B** or (ii) was deemed to reject the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in **Article VIII.A** of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in **Article VIII.A** of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in **Article XI** of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action; *provided*, *however*, that this paragraph shall not apply to claims covered by an Insurance Contract other than any D&O Liability Insurance Policies.

Nothing in this Plan settles, releases, or discharges direct claims held by creditors (other than claims against the Debtors) who opted out of the Third-Party Release.  To the extent any creditor who opted out had a direct claim against a non-Debtor under applicable non-bankruptcy law (other than a fraudulent transfer claim) prior to the Petition Date, such claim did not vest in the Debtors on the Petition Date and nothing in this

70

Plan or the Confirmation Order prevents, releases, or obstructs a properly pled direct claim, including any argument under *In re SemCrude L.P.*, 796 F.3d 310 (3d Cir. 2015) or *In re Wilton Armetale, Inc.* 968 F.3d 273 (3d Cir. 2020) that such claim was vested in the Debtors by operation of the Bankruptcy Code. For the avoidance of doubt, nothing in this Plan or the Confirmation Order modifies the gatekeeper function contained in this Article VIII.B of the Plan or the law as to what is a direct or derivative claim, or is a concession that a direct or derivative claim exists.

C.      Exculpation

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any act or omission arising on or after the Petition Date and prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing, or consummation of the Plan, any Definitive Documents, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for: (1) any Causes of Action identified on the Schedule of Retained Causes of Action and (2) any Causes of Action related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

Solely to the extent permitted by applicable law, the Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

D.      Injunction and Bermuda Implementation Mechanism

The assets of the Debtors and the Wind-Down Debtors shall be used for the satisfaction of expense obligations and the payment of Claims and Interests only in the manner set forth in this Plan and shall not be available for any other purpose.  All Persons and Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and Distribution of the Debtors' assets in the manner contemplated by the Plan.

Further, with effect from the entry of the Confirmation Order, each of the Bermuda Debtor's creditors and Holders of Interests is prohibited from interfering or opposing any Bermuda Implementation Mechanism and will be deemed to have irrevocably appointed the Bermuda Provisional Liquidators as its agent, nominee, proxy and representative with full power and authority and have otherwise instructed the Bermuda Provisional Liquidators in such creditor or Holder of Interests' name and on such creditor or Holder of Interests' behalf, to exercise all rights in relation to its Claim to vote in favor of any Bermuda Scheme of Arrangement at a meeting convened at the direction of the Bermuda Court for the purpose of considering a Bermuda Scheme of Arrangement proposed by the Bermuda Provisional Liquidators as a Bermuda Implementation Mechanism and to otherwise consent to and/or support the Bermuda Implementation Mechanism, and each such creditor or Holder of Interests agrees to and shall be bound by and comply with the Bermuda Implementation

**Mechanism as and from the time the Bermuda Implementation Mechanism becomes effective in accordance with Bermuda law.**

**In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in Article VIII.A, Article VIII.B, and Article VIII.C of this Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by this Plan.**

### E.    Release of Liens

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order on the Effective Date, and concurrently with the applicable Distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Debtor or Wind-Down Debtor, as applicable, and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as requested by the Debtors or Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such documents evidencing such releases. The presentation or filing of the Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### F.    State and SEC

Notwithstanding any language to the contrary herein, no provision shall (a) preclude the SEC from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.  Notwithstanding any language to the contrary herein, no provision shall (a) preclude any state from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay any state from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

### G.    Silicon Valley Bank

For the avoidance of doubt, all obligations of the Debtors in connection with the letters of credit and other bank services products issued by Silicon Valley Bank, a division of First-Citizens Bank & Trust Company (successor by purchase to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bridge Bank, N.A. (as successor to Silicon Valley Bank)) ("SVB") are secured by cash in certain segregated blocked accounts at SVB, and such cash is and shall continue to be SVB's collateral notwithstanding any other provision in this Plan.  SVB shall be permitted to pay any obligations owed by the Debtors to SVB from such cash pledged to SVB in certain segregated blocked accounts without further order of the Bankruptcy Court or notice to or consent from the Debtors or any other party, except as may be required under the *Final Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions, (II) Granting Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements* [Docket No. 306].

**H.    The Indenture Trustee**

The Plan Administrator (or such other Person as is appointed by the Debtors or the Plan Administrator to make Distributions to Account Holders that are United States holders of BlockFi Interest Accounts) shall pay to the Indenture Trustee, in United States dollars, any and all amounts due to the Indenture Trustee for the compensation and reasonable expenses, disbursements and advances of the Indenture Trustee, its agents, advisors and counsel, and any indemnification payments and other amounts due the Indenture Trustee under the terms of the BIA Indenture (collectively, "Indenture Trustee Fees/Expenses") promptly following the provision by the Indenture Trustee of the billing statements (which may be redacted to protect attorney-client privilege, work product privilege and the provision of which to the Plan Administrator shall not waive the attorney-client privilege, the work product privilege or any other applicable privileges of the Indenture Trustee, but such statements shall be detailed enough to permit informed review of the reasonableness of the fees sought and the right to redact such statements shall not alter the burdens with respect to establishing reasonableness) seeking such fees and expenses. If the Plan Administrator objects and the Plan Administrator and Indenture Trustee are unable to reach a resolution, the Bankruptcy Court shall resolve such disputes, and any review for reasonableness shall be as provided in the BIA Indenture (as to which the Bankruptcy Court shall retain jurisdiction).  The Plan Administrator shall establish a reserve (which shall not operate as a cap) of $1,000,000, solely for Indenture Trustee Fees/Expenses, in United States dollars.  The Indenture Trustee shall not be required to file a fee application under Bankruptcy Code section 330, motion seeking allowance of a claim for "substantial contribution" or other administrative expense claim under Bankruptcy Code section 503 or similar motion or application.  The Indenture Trustee shall not serve as distribution agent for Distributions to be made under the Plan to Account Holders that are United States holders of BlockFi Interest Accounts.

**I.    Protection against Discriminatory Treatment**

As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Wind-Down Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Wind-Down Debtor, or any Entity with which a Wind-Down Debtor has been or is associated, solely because such Wind-Down Debtor was a debtor under chapter 11 of the Bankruptcy Code or may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge).

**J.    Document Retention**

Upon the occurrence of the Effective Date, the Debtors and Wind-Down Debtors, as applicable, shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession.  The Debtors and Wind-Down Debtors shall not destroy or otherwise abandon any such documents or records without seeking further authorization from the Bankruptcy Court.

**K.    Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  **All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**L.    Bermuda Releases**

On the Effective Date, except to the extent otherwise provided in the Plan and/or Bermuda Order entered by the Bermuda Court, all Claims of creditors and Holders of Interests against the Bermuda Debtor that were affected by the Plan shall be deemed to be satisfied in full, cancelled, and of no force and effect.  By accepting a Distribution pursuant to the Plan, each of the Bermuda Debtor's creditors and Holders of Interests will be deemed to have specifically consented to the injunctions set forth in this Article VIII.L.  The releases described herein shall on the Effective Date have the effect of *res judicata* to the fullest extent permissible under the applicable laws of Bermuda.

**M.**     **Avoidance Action Releases**

All Claims arising under section 547 and 550 of the Bankruptcy Code held by the Debtors against their customers shall be deemed to have been released (and, for the avoidance of doubt, shall not be used as a defense or setoff to any Allowed Claim pursuant to section 502(d) of the Bankruptcy Code or otherwise), *except* Retained Preference Claims.  For the avoidance of doubt, except as to a party released pursuant to the Committee Settlement, no Claims arising under section 548 and 550 of the Bankruptcy Code or analogous state law or any Claim against any party that was not a BlockFi Client or a BlockFi officer or director, shall be released under the Plan.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.**     **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.      the Bankruptcy Court shall have entered the Confirmation Order and such order shall be a Final Order and in full force and effect;

2.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      each Definitive Document and each other document contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications or supplements thereto or other documents contained therein, shall have been executed or Filed, as applicable, in form and substance consistent in all respects with the Plan, and shall not have been modified in a manner inconsistent therewith;

4.      the Professional Fee Escrow Account shall have been established and funded with Cash in accordance with Article II.B of the Plan;

5.      the Wind-Down Reserve shall have been established and funded with Cash in accordance with the Plan;

6.      the Restructuring Transactions shall have been consummated or shall be anticipated to be consummated concurrently with the occurrence of the Effective Date in a manner consistent with the Plan, and the Plan shall have been substantially consummated or shall be anticipated to be substantially consummated concurrently with the occurrence of the Effective Date;

7.      if applicable, the Bermuda Implementation Mechanism(s) are effective in accordance with their terms;

8.      the Debtors have obtained entry of such Bermuda Order(s) as may be required in connection with the Restructuring Transactions (including any Bermuda Implementation Mechanism) as to which time to appeal has expired and no appeal has been timely taken, or as to which any appeal that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order was appealed and shall have been denied or dismissed; and

9.      all required approvals or non-objections from the Bermuda Monetary Authority as required pursuant to the Digital Assets Business Act or directions issued thereunder, in so far as they affect the Bermuda Debtor, shall have been obtained (if any).

**B.**      **Waiver of Conditions Precedent**

The Debtors may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C.**      **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**D.**      **Effect of Non-Occurrence of Conditions to Consummation**

If the Effective Date does not occur, then the Plan will be null and void in all respects and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any Entity in any respect.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.**      **Modification of Plan**

Subject to the limitations and terms contained in the Plan, the Debtors reserve the right to (1) amend or modify the Plan before the entry of the Confirmation Order, in accordance with the Bankruptcy Code and the Bankruptcy Rules and (2) after the entry of the Confirmation Order, the Debtors or the Wind-Down Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**B.**      **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications or amendments to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.**      **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (1) the Plan will be null and void in all respects; (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Classes of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

75

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code (other than those matters administered in any Bermuda Scheme of Arrangement, Bermuda Liquidation, Bermuda Liquidating Trust, or other Bermuda Implementation Mechanism, as applicable, and subject to the Restructuring Transactions Memorandum), including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims or other Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4. ensure that Distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor or the Estates that may be pending on the Effective Date;

6. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

7. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, exculpation, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, exculpation, and other provisions; (c) anything that may arise in connection with

76

the Consummation, interpretation, implementation, or enforcement of the Plan and the Confirmation Order; or (d) related to section 1141 of the Bankruptcy Code;

11.    determine (a) whether a claim or Cause of Action constitutes a direct or derivative claim, (b) whether such claim or Cause of Action is colorable, and (c) solely to the extent legally permissible, adjudicate the underlying claim or Cause of Action;

12.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Entity's rights arising from or obligations incurred in connection with the Plan;

15.    hear and determine matters concerning local, state, federal, and foreign taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

16.    hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

17.    enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.    enforce all orders previously entered by the Bankruptcy Court;

19.    award and/or shift any fees (including attorneys' fees) that may arise in connection with any dispute arising before the Bankruptcy Court; and

20.    hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or the Judicial Code.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the

Debtors, the Wind-Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

**B.        Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Wind-Down Debtors, as applicable, and all Holders of Claims and Interests receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.        Payment of Statutory Fees**

All Quarterly Fees due and payable before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Wind-Down Debtors and/or the Debtors shall pay any and all Quarterly Fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor and Wind-Down Debtor shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  For the avoidance of doubt, the Debtors and the Wind-Down Debtors shall be jointly and severally liable for the payment of any and all Quarterly Fees due and the U.S. Trustee shall not be bound by any agreement or provisions regarding which entity shall pay Quarterly Fees due and payable after the Effective Date.

**D.        Dissolution of Statutory Committees**

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that such committees will remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter 11 Cases; and (b) filing, objecting, or otherwise participating in, any final fee applications of Professionals.

**E.        Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

**F.        Emergent Pledge**

Nothing in the Plan or the Confirmation Order shall change the terms and conditions of the *Order Approving the Stipulation Staying Litigation and Related Discovery Concerning the Robinhood Assets* [Docket No. 760], and nothing in the Plan or the Confirmation Order shall release or extinguish any Claims or Causes of Actions held by Emergent against the Debtors.

G.    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each such Entity.

H.    **Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Wind-Down Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| **BlockFi Inc.**<br>21 Montgomery Street, Suite 263<br>Jersey City, New Jersey 07302 | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Joshua A. Sussberg, P.C., Christine Okike, P.C., and Francis Petrie<br><br>and<br><br>**Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota, Esq. and Warren A. Usatine, Esq.<br><br>and<br><br>**Haynes and Boone, LLP**<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>Attention: Richard S. Kanowitz, Esq. and Kenric D. Kattner, Esq. |
| **United States Trustee** | **Counsel to the Committee** |
| Office of The United States Trustee<br>One Newark Center<br>1085 Raymond Boulevard<br>Suite 2100<br>Newark, NJ 07102 | **Brown Rudnick LLP**<br>Robert J. Stark, Esq.<br>Kenneth J. Aulet, Esq.<br>Bennett S. Silverberg, Esq.<br>Seven Times Square<br>New York, NY  10036<br>Telephone: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: rstark@brownrudnick.com<br>        kaulet@brownrudnick.com<br>        bsilverberg@brownrudnick.com<br>and<br><br>**Genova Burns LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920 |

| | Telephone: (973) 230-2095<br>Fax: (973) 533-1112<br>Email: DStolz@genovaburns.com<br>        DClarke@genovaburns.com<br>        GKinoian@genovaburns.com |
|---|---|

**I.      Entire Agreement; Controlling Document**

Except as otherwise indicated, on the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of the Plan, all of which will have become merged and integrated into the Plan.  Except as set forth in the Plan, in the event that any provision of the Plan Supplement, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.  In no event shall there be any oral agreements or obligations arising out of or related to the Plan or Confirmation Order.

**J.      Plan Supplement**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims, Noticing, and Solicitation Agent at https://restructuring.ra.kroll.com/blockfi or the Bankruptcy Court's website at http://www.njb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**K.      Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

**L.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither such parties nor the Wind-Down Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

**M.**          **Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, or papers Filed prior to the Confirmation Date.

[*Remainder of page intentionally left blank*]

Dated:  September 25, 2023

BLOCKFI INC.
on behalf of itself and all other Debtors

/s/ Mark Renzi

Mark Renzi
Chief Restructuring Officer

United States Bankruptcy Court

District of New Jersey

In re:                                                          Case No. 22-19361-MBK

BlockFi Inc.                                                    Chapter 11

     Debtor

# CERTIFICATE OF NOTICE

| District/off: 0312-3 | User: admin | Page 1 of 8 |
|---|---|---|
| Date Rcvd: Oct 03, 2023 | Form ID: pdf903 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

**Symbol**     **Definition**

+     Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Oct 05, 2023:**

**Recip ID**     **Recipient Name and Address**
db     +  BlockFi Inc., 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691-1910

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).
NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**
NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 05, 2023     Signature:     /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on October 3, 2023 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Aaron Garber | on behalf of Creditor Kristen Vorhees agarber@wgwc-law.com |
| Adam S. Ravin | on behalf of Interested Party The Foreign Representatives of Three Arrows Capital  Ltd. (in liquidation) adam.ravin@lw.com |
| Alan Stuart Maza | on behalf of Creditor Securities and Exchange Commission mazaa@sec.gov  mazaa@sec.gov |
| Allen I Gorski | on behalf of Creditor Nancy Fout agorski@gorskiknowlton.com |
| Allen I Gorski | on behalf of Creditor Estate of Herman Katzenell agorski@gorskiknowlton.com |
| Andrew Marks | on behalf of Creditor Matthew Gordon jcardenas@dorflaw.com |

District/off: 0312-3 | User: admin | Page 2 of 8
Date Rcvd: Oct 03, 2023 | Form ID: pdf903 | Total Noticed: 1

Anna Pia Felix
on behalf of Creditor Yuri Mushkin afelix@lpgmlaw.com

Anthony J D'Artiglio
on behalf of Creditor Kyle Klaus adartiglio@ansell.law  courtfilings@ansell.law;jbauchner@ansell.law

Barbra Rachel Parlin
on behalf of Creditor Silvergate Bank barbra.parlin@hklaw.com
elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com

Brett S. Theisen
on behalf of Unknown Role Type Ankura Trust Company  LLC btheisen@gibbonslaw.com, nmitchell@gibbonslaw.com

Bryan Russell Horton
on behalf of Interested Party Scratch Services LLC rhorton@gbkh.com

Carol L. Knowlton
on behalf of Creditor George J. Gerro cknowlton@gorskiknowlton.com

Carrie J. Boyle
on behalf of Creditor Ge Song cboyle@b-vlaw.com
tking@b-vlaw.com;lgrigley@b-vlaw.com;carrie.boyle@comcast.net;jpryor@b-vlaw.com

Catherine B. Heitzenrater
on behalf of Creditor Chubb Companies cebeideman@duanemorris.com

Daniel Stolz
on behalf of Attorney Brown Rudnick LLP dstolz@genovaburns.com  dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel Stolz
on behalf of Other Prof. Elementus  Inc. dstolz@genovaburns.com, dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel Stolz
on behalf of Other Prof. M3 Partners dstolz@genovaburns.com  dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel Stolz
on behalf of Creditor Committee Official Committee of Unsecured Creditors dstolz@genovaburns.com
dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel Stolz
on behalf of Attorney Genova Burns LLC dstolz@genovaburns.com  dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel Stolz
on behalf of Creditor Committee Official Committee Of Unsecured Creditors dstolz@genovaburns.com
dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel Stolz
on behalf of Plaintiff Official Committee Of Unsecured Creditors dstolz@genovaburns.com
dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

Daniel E. Straffi
on behalf of Creditor Daniel Gusovsky bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Andrew Martinez bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Kole Kottmeier bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Brian Graddon bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Ashton Rincon bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Joseph Borremans bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Martin Mikolajczyk bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi
on behalf of Creditor Damon Andersson bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Steven Lee bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Matthew Hoselton bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Mitchell Eglar bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor William Warburton bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Brendan Pena bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Alberto Olivo bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Bruce Gilling bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Wayne Akey bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Scott Aufenanger bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Ellison Bak bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Michiel Hemminga bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

Daniel E. Straffi

on behalf of Creditor Clayton Bargsten bkclient@straffilaw.com
g25938@notify.cincompass.com;jrdanielsb124806@notify.bestcase.com

David E. Sklar

on behalf of Creditor Zachary Lee Prince desklar@pbnlaw.com
mpdermatis@pbnlaw.com;pnbalala@pbnlaw.com;jmoconnor@pbnlaw.com

David E. Sklar

on behalf of Creditor Flori Marquez desklar@pbnlaw.com
mpdermatis@pbnlaw.com;pnbalala@pbnlaw.com;jmoconnor@pbnlaw.com

David J. Adler

on behalf of Creditor Committee McCarter & English  LLP DAdler@McCarter.com

David J. Adler

on behalf of Attorney McCarter & English DAdler@McCarter.com

David J. Adler

on behalf of Creditor Committee Official Committee of Unsecured Creditors DAdler@McCarter.com

Deborah Kovsky Apap

on behalf of Interested Party Ad Hoc Committee of Wallet Account Holders deborah.kovsky@troutman.com

Donald W Clarke

on behalf of Attorney Brown Rudnick LLP dclarke@genovaburns.com  dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Donald W Clarke

on behalf of Creditor Committee Official Committee of Unsecured Creditors dclarke@genovaburns.com
dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Donald W Clarke

on behalf of Creditor Committee Official Committee Of Unsecured Creditors dclarke@genovaburns.com
dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Donald W Clarke

on behalf of Other Prof. Elementus  Inc. dclarke@genovaburns.com, dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Donald W Clarke

on behalf of Other Prof. M3 Partners dclarke@genovaburns.com  dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

District/off: 0312-3                          User: admin                                    Page 4 of 8
Date Rcvd: Oct 03, 2023                      Form ID: pdf903                              Total Noticed: 1

Donald W Clarke
                    on behalf of Attorney Genova Burns LLC dclarke@genovaburns.com  dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Donald W Clarke
                    on behalf of Plaintiff Official Committee Of Unsecured Creditors dclarke@genovaburns.com
                    dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Douglas J. McGill
                    on behalf of Creditor Ad Hoc Committee of Collaterized Loan Account Holders dmcgill@webbermcgill.com

Douglas J. McGill
                    on behalf of Creditor Gary Ford dmcgill@webbermcgill.com

Douglas T Tabachnik
                    on behalf of Defendant Primeblock Operations LLC dtabachnik@dttlaw.com  rdalba@dttlaw.com

Elisabeth Bruce
                    on behalf of Interested Party Internal Revenue Service elisabeth.m.bruce@usdoj.gov
                    ari.d.kunofsky@usdoj.gov;eastern.taxcivil@usdoj.gov

Felice R. Yudkin
                    on behalf of Debtor BlockFi Inc. fyudkin@coleschotz.com  fpisano@coleschotz.com

Frank F. Velocci
                    on behalf of Interested Party Bermuda Joint Provisional Liquidators of BlockFi International Ltd.
                    frank.velocci@faegredrinker.com  cathy.greer@faegredrinker.com

Gaston P. Loomis, II
                    on behalf of Creditor New Jersey Bureau of Securities gloomis@mdmc-law.com  scarney@mdmc-law.com

Gregory S. Kinoian
                    on behalf of Creditor Committee Official Committee of Unsecured Creditors gkinoian@genovaburns.com

Gregory S. Kinoian
                    on behalf of Creditor Committee Official Committee Of Unsecured Creditors gkinoian@genovaburns.com

Gregory S. Kinoian
                    on behalf of Plaintiff Official Committee Of Unsecured Creditors gkinoian@genovaburns.com

Jack Shrum
                    on behalf of Creditor John M. Von Pischke jshrum@jshrumlaw.com

James L Bromley
                    on behalf of Interested Party FTX Trading Ltd and Affiliated Debtors bromleyj@sullcrom.com

Jason D. Angelo
                    on behalf of Creditor Bryant F. Foulger JAngelo@reedsmith.com  sshidner@mdmc-law.com;smullen@mdmc-law.com

Jason M. Avellino
                    on behalf of Creditor Undisclosed Creditors javellino@gelaw.com
                    7661309420@filings.docketbird.com;gnovod@gelaw.com;cnevers@gelaw.com

Jeffrey Bernstein
                    on behalf of Creditor New Jersey Bureau of Securities jbernstein@mdmc-law.com

Jeffrey M. Sponder
                    on behalf of U.S. Trustee U.S. Trustee jeffrey.m.sponder@usdoj.gov  jeffrey.m.sponder@usdoj.gov

Jeffrey M. Traurig
                    on behalf of Examiner Elise S. Frejka jtraurig@trauriglaw.com

Jessica Cole
                    on behalf of Defendant United States of America jessica.cole@usdoj.gov

Jessica Cole
                    on behalf of Interested Party United States of America jessica.cole@usdoj.gov

Joao Ferreira Magalhaes
                    on behalf of Creditor John William Van Tubergen Jr. jmagalhaes@connellfoley.com

John Piskora
                    on behalf of Creditor Deferred 1031 LLC jpiskora@loeb.com  nydocket@loeb.com,dbesikof@loeb.com

John Piskora
                    on behalf of Creditor Deferred 1031 Series 4 LLC jpiskora@loeb.com  nydocket@loeb.com,dbesikof@loeb.com

John C. Goodchild
                    on behalf of Defendant Emergent Fidelity Technologies Ltd. john.goodchild@morganlewis.com

John C. Goodchild
                    on behalf of Interested Party Emergent Fidelity Technologies Ltd john.goodchild@morganlewis.com

John C. Goodchild

District/off: 0312-3                          User: admin                                    Page 5 of 8
Date Rcvd: Oct 03, 2023                       Form ID: pdf903                            Total Noticed: 1

on behalf of Creditor Emergent Fidelity Technologies Ltd. john.goodchild@morganlewis.com

John C. Kilgannon

    on behalf of Interested Party Towards Equilibrium  LLC john.kilgannon@stevenslee.com

John W. Weiss

    on behalf of Interested Party The Foreign Representatives of Three Arrows Capital  Ltd. (in liquidation)
jweiss@pashmanstein.com

Joseph M. Shapiro

    on behalf of Creditor Wilson Cotrim jshapiro@middlebrooksshapiro.com

Joseph M. Shapiro

    on behalf of Creditor John A. Javes jshapiro@middlebrooksshapiro.com

Joshua S. Bauchner

    on behalf of Creditor Kyle Klaus jb@ansellgrimm.com  courtfilings@ansellgrimm.com;ajd@ansellgrimm.com

Kaitlin R. Walsh

    on behalf of Defendant ED&F Man Capital Markets  Inc. krwalsh@mintz.com, docketing@mintz.com

Kaitlin R. Walsh

    on behalf of Creditor Marex Capital Markets Inc. krwalsh@mintz.com  docketing@mintz.com

Kaitlin R. Walsh

    on behalf of Defendant Marex Capital Markets Inc. f/k/a ED&F Man Capital Markets  Inc. krwalsh@mintz.com,
docketing@mintz.com

Kenneth Aulet

    on behalf of Creditor Committee Official Committee of Unsecured Creditors kaulet@brownrudnick.com
hcohen@brownrudnick.com

Kurt F. Gwynne

    on behalf of Creditor Bryant F. Foulger kgwynne@reedsmith.com

Kurt F. Gwynne

    on behalf of Interested Party Ad Hoc Group of Actual Wallet Holders kgwynne@reedsmith.com

Kurt F. Gwynne

    on behalf of Creditor The Ad Hoc Group of Actual Wallet Holders kgwynne@reedsmith.com

Kurt F. Gwynne

    on behalf of Interested Party The Ad Hoc Group of Actual Wallet Holders kgwynne@reedsmith.com

Kyle McEvilly

    on behalf of Unknown Role Type Ankura Trust Company  LLC kmcevilly@gibbonslaw.com

Lauren Bielskie

    on behalf of U.S. Trustee U.S. Trustee lauren.bielskie@usdoj.gov

Mary E Putnick

    on behalf of Creditor Shaoky Taraman marybeth@putnicklegal.com  hpenrose@awkolaw.com

Mary E Putnick

    on behalf of Creditor Noah Powell marybeth@putnicklegal.com  hpenrose@awkolaw.com

Michael Anthony Guerra

    on behalf of Interested Party Cipher Mining Technologies Inc. maguerra@venable.com  nylitigationdocketing@venable.com

Michael Anthony Guerra

    on behalf of Interested Party Cipher Mining Inc. maguerra@venable.com  nylitigationdocketing@venable.com

Michael D. Sirota

    on behalf of Defendant BlockFi Trading LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz
.com

Michael D. Sirota

    on behalf of Debtor BlockFi Inc. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz
.com

Michael D. Sirota

    on behalf of Defendant BlockFi Lending LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz
.com

Michael D. Sirota

    on behalf of Plaintiff BlockFi Lending LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz
.com

Michael D. Sirota

District/off: 0312-3                                User: admin                                Page 6 of 8
Date Rcvd: Oct 03, 2023                          Form ID: pdf903                          Total Noticed: 1

on behalf of Defendant BlockFi Lending II LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Defendant BlockFi Ventures LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi Trading  LLC msirota@coleschotz.com,
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Debtor BlockFi Investment Products LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi Inc. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Debtor BlockFi Trading LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Attorney Cole Schotz P.C. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Defendant BlockFi International Ltd. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi International Ltd. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi Investment Products LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi Wallet LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi Ventures LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Defendant BlockFi Investment Products LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Plaintiff BlockFi Lending II LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Debtor BlockFi Lending II LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Debtor BlockFi Lending LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota

on behalf of Debtor BlockFi International Ltd. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

District/off: 0312-3                                   User: admin                                   Page 7 of 8
Date Rcvd: Oct 03, 2023                           Form ID: pdf903                           Total Noticed: 1

Michael D. Sirota
on behalf of Plaintiff BlockFi Services Inc. msirota@coleschotz.com,
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota
on behalf of Defendant BlockFi Services Inc. msirota@coleschotz.com,
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota
on behalf of Debtor BlockFi Ventures LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota
on behalf of Defendant BlockFi Wallet LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota
on behalf of Debtor BlockFi Wallet LLC msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota
on behalf of Defendant BlockFi Inc. msirota@coleschotz.com
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael D. Sirota
on behalf of Debtor BlockFi Services Inc. msirota@coleschotz.com,
fpisano@coleschotz.com;ssallie@coleschotz.com;lmorton@coleschotz.com;pratkowiak@coleschotz.com;ddelehanty@coleschotz.com

Michael S. Etkin
on behalf of Interested Party Proposed Lead Plaintiff in Securities Class Action metkin@lowenstein.com

Nicole A. Leonard
on behalf of Creditor New Jersey Bureau of Securities nleonard@mdmc-law.com
gbressler@mdmc-law.com;dprimack@mdmc-law.com;sshidner@mdmc-law.com

Paul J. Winterhalter
on behalf of Creditor Moneeb Waseem pwinterhalter@offitkurman.com cballasy@offitkurman.com

Peter Y. Lee
on behalf of Creditor Renard Ihlenfeld peter.lee@leeadvocates.com

Richard Kanowitz
on behalf of Debtor BlockFi Inc. richard.kanowitz@haynesboone.com

Richard Kanowitz
on behalf of Plaintiff BlockFi Inc. richard.kanowitz@haynesboone.com

Richard Kanowitz
on behalf of Plaintiff BlockFi International Ltd. richard.kanowitz@haynesboone.com

Richard Kanowitz
on behalf of Plaintiff BlockFi Lending LLC richard.kanowitz@haynesboone.com

Richard G. Placey
on behalf of Stockholder Samuel L. Bankman-Fried rplacey@mmwr.com
plorenz@mmwr.com;pat-lorenz-montgomery-mccracken-walker-rhoads-llp-7123@ecf.pacerpro.com

Robert Malone
on behalf of Unknown Role Type Ankura Trust Company LLC rmalone@gibbonslaw.com, nmitchell@gibbonslaw.com

Robert M. Schechter
on behalf of Creditor Flori Marquez rmschechter@pbnlaw.com
mpdermatis@pbnlaw.com;pnbalala@pbnlaw.com;nvfuentes@pbnlaw.com;jmoconnor@pbnlaw.com

Robert M. Schechter
on behalf of Creditor Zachary Lee Prince rmschechter@pbnlaw.com
mpdermatis@pbnlaw.com;pnbalala@pbnlaw.com;nvfuentes@pbnlaw.com;jmoconnor@pbnlaw.com

Sam Della Fera, Jr
on behalf of Defendant Vrai Nom Investment Limited sdellafera@csglaw.com

Sam Della Fera, Jr
on behalf of Creditor Vrai Nom Investment Limited sdellafera@csglaw.com

Scott Fleischer
on behalf of Creditor Rui Pedro Vaz dos Santos Teixeira sfleischer@barclaydamon.com

Sean James Mack
                    on behalf of Defendant Digistar Norway AS smack@pashmanstein.com  smack@pashmanstein.com;Jpadilla@pashmanstein.com

Sean James Mack
                    on behalf of Defendant Nessim-Sariel Gaon smack@pashmanstein.com  smack@pashmanstein.com;Jpadilla@pashmanstein.com

Sean James Mack
                    on behalf of Defendant Fiorenzo Manganiello smack@pashmanstein.com
                    smack@pashmanstein.com;Jpadilla@pashmanstein.com

Seth Brandon Shapiro
                    on behalf of Interested Party United States of America seth.shapiro@usdoj.gov

Seth Brandon Shapiro
                    on behalf of Defendant United States of America seth.shapiro@usdoj.gov

Steven R. Wirth
                    on behalf of Creditor John Lymn steven.wirth@akerman.com  caren.collier@akerman.com;Jennifer.meehan@akerman.com

U.S. Trustee
                    USTPRegion03.NE.ECF@usdoj.gov

Virginia T. Shea
                    on behalf of Creditor New Jersey Bureau of Securities vshea@mdmc-law.com  gbressler@mdmc-law.com

Warren A. Usatine
                    on behalf of Debtor BlockFi Inc. wusatine@coleschotz.com  fpisano@coleschotz.com

Warren J. Martin, Jr.
                    on behalf of Creditor Zachary Lee Prince wjmartin@pbnlaw.com
                    mpdermatis@pbnlaw.com;sakelly@pbnlaw.com;raparisi@pbnlaw.com;jmoconnor@pbnlaw.com

Warren J. Martin, Jr.
                    on behalf of Creditor Flori Marquez wjmartin@pbnlaw.com
                    mpdermatis@pbnlaw.com;sakelly@pbnlaw.com;raparisi@pbnlaw.com;jmoconnor@pbnlaw.com

Wendy M Simkulak
                    on behalf of Creditor Chubb Companies wmsimkulak@duanemorris.com


TOTAL: 153