John W. Weiss
Joseph C. Barsalona II
**PASHMAN STEIN WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Suite 4202
Holmdel, NJ 07733
Telephone: (732) 852-2481
Facsimile: (732) 852-2482
Email:  jweiss@pashmanstein.com
          jbarsalona@pashmanstein.com


Adam J. Goldberg (admitted *pro hac vice*)
Christopher Harris (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  adam.goldberg@lw.com
          christopher.harris@lw.com
          brett.neve@lw.com
          nacif.taousse@lw.com

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
          tiffany.ikeda@lw.com


Warren E. Gluck (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:  warren.gluck@hklaw.com


John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:  john.monaghan@hklaw.com

*Counsel to the Joint Liquidators of Three Arrows Capital, Ltd. (in liquidation)*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------- x
In re:                                          :     Chapter 11
                                                :
BLOCKFI INC., *et al.*,[1]                      :     Case No. 22-19361 (MBK)
                                                :
            Debtors.                            :     (Jointly Administered)
                                                :
---------------------------------------------------------- x

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154) (the "**BlockFi Debtors**").  The location of the BlockFi Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

**REPLY IN SUPPORT OF THE MOTION OF THE JOINT LIQUIDATORS OF THREE
ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER (I) MODIFYING THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) AND BANKRUPTCY RULE
4001 AND (II) GRANTING RELATED RELIEF**

The Joint Liquidators[2] of Three Arrows Capital, Ltd. (the "**3AC Debtor**") hereby submit

this reply (the "**Reply**") in support of the Motion and in response to the objections thereto filed by

the BlockFi Debtors (Dkt. No. 1654) (the "**Objection**") and the Official Committee of Unsecured

Creditors (Dkt. No. 1662).  In support of the Reply, the 3AC Debtor respectfully submits as follows:

**REPLY**

1.      The 3AC Debtor's fundamental goal in filing the Motion is the centralized

resolution of BVI law preference claims that present common questions of fact and law that are

central to the 3AC Debtor's liquidation.[3]  These claims collectively are among the largest assets

of the 3AC Debtor's estate.

2.      The BlockFi Debtors downplay the potential for severe prejudice to the 3AC Debtor

if forced to engage in multi-front litigation of similar claims presenting common issues of fact and

law in separate chapter 11 cases.  Foremost among the common questions presented by the 3AC

Debtor's preference claims is:  *when* did the 3AC Debtor become insolvent?  The solvency

question is perhaps the single most important question in the 3AC Debtor's liquidation, with the

answer—down to the precise day of insolvency—having repercussions for billions of dollars of

---

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Motion of the Joint
Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11
U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* [Dkt. No. 1492] (the "**Motion**").

[3]     On September 28, 2023, the 3AC Debtor filed a motion requesting consultation among and between this Court and
the other courts where the 3AC Debtor is pursuing similar claims, including the Celsius Court.  Dkt. No.
1623.  On September 29, 2023, the 3AC Debtor filed a motion for relief from the automatic stay in the Celsius
chapter 11 cases seeking relief to assert a setoff defenses in the BVI Proceeding with respect to the 3AC Debtor's
claims against the Celsius Debtors.  *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. Sept. 23, 2023),
Dkt. No. 3642.  In light of the relief the limited relief the 3AC Debtor is seeking in the Celsius cases, the 3AC
Debtor is no longer seeking coordination between this Court and the Celsius Court with respect to the 3AC
Debtor's claims against the Celsius Debtors. The 3AC Debtor is exclusively represented by Holland & Knight
LLP in the Celsius chapter 11 cases and in connection with the 3AC Debtor's claims against Celsius.

claims of the 3AC Debtor's estate.  The BlockFi Debtors concede that the 3AC Debtor's solvency presents a common question across each of the preference claims and that an adverse judgment in one litigation could be used against the 3AC Debtor in other cases.  Obj. ¶¶ 33, 82.  The BlockFi Debtors, however, dismiss this concern, asserting that even if litigation on the solvency issue must proceed in multiple parallel forums, the 3AC Debtor will "be given a full and fair opportunity to present its insolvency position."  Obj. ¶ 82.  This is cold comfort considering that, without a centralized forum for adjudicating solvency, any unfavorable outcome in any one court could be weaponized against the 3AC Debtor in other courts notwithstanding active litigation on the same issue elsewhere.  For example, if one court were to rule that the 3AC Debtor was insolvent as of a certain date, each counterparty would then have the option of either (or potentially both) (a) asserting 3AC is bound by the findings of the first court (for example based on issue preclusion or equitable estoppel) or (b) litigating the issue anew itself and attempting to shorten the vulnerability period by securing a finding that the 3AC Debtor was insolvent at a later date.  This asymmetry would grant an undue litigation advantage to the 3AC Debtor's adversaries.

3.    While the BlockFi Debtors acknowledge that solvency presents a common issue, they contend that is the lone commonality.  Obj. ¶ 33.  The BlockFi Debtors ignore that their potential safe harbor and ordinary course defenses also present common issues of fact and law. Indeed, both the BlockFi Debtors and the Genesis Debtors have asserted potential defenses under the Bankruptcy Code's safe harbors, and there is nothing preventing the other debtor-defendants facing BVI preference claims from following suit.  Obj. ¶¶ 31, 42-44; *see In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 1, 2023), Dkt. No. 658 at ¶¶ 133-59 (cited as "**Genesis Claim Obj. ___**").  The safe harbor defenses will present novel questions about whether the challenged cryptocurrency lending transactions were made in connection with forward

contracts or securities contracts and whether the underlying cryptocurrencies and tokens are commodities, securities, or other types of assets under applicable legal standards.[4]  Although the particularities of the challenged transactions may have some effect on the safe harbor analysis, there are threshold questions regarding whether the safe harbors even apply to cryptocurrency lending transactions that are common to each of the debtor-defendants.

4.    Likewise, both the BlockFi Debtors and the Genesis Debtors assert an ordinary course defense under section 245(2) of the BVI Insolvency Act.  Obj. ¶ 64; Genesis Claim Obj. ¶¶ 114-22.  The BlockFi Debtors suggest that the ordinary course defense does not present common questions because "[a] court will still need to examine each transaction by each party."  Obj. ¶ 81. The ordinary course defense, however, is not limited to questions regarding what is ordinary course with respect to the particular transactions at issue.  Instead, the ordinary course defense presents questions regarding what is the ordinary course for the 3AC Debtor's business and what is ordinary course for the cryptocurrency lending industry generally.  Both of these questions will be common across the 3AC Debtor's preference claims against the debtor-defendants.  *See Countrywide Banking Corp. Ltd. v. Dean* [1998] BCC 105 (acknowledging that the "ordinary operational activities of businesses as going concerns" is a key consideration in an ordinary course of business defense).

5.    As with the solvency issue, a ruling by one court on the safe harbor or ordinary course defenses could be used by the other debtor-defendants against the 3AC Debtor in litigation pending in other forums.  Further, absent a centralized forum, adjudication of these common issues before multiple courts would be an inefficient strain on the 3AC Debtor estate's resources.  The

---

[4]    *See In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Sept. 1, 2023), Dkt. No. 658 at ¶¶ 133-59.

3AC Debtor is a co-equal debtor with a fiduciary duty to maximize recoveries for its creditors—which have asserted claims in excess of $3 billion—and concerns for the efficient administration of its estate cannot be simply swept aside. The BlockFi Debtors will be incurring the costs of litigation with the 3AC Debtor—whether in this Court or another forum—and the difference (if any) in the costs to the BlockFi estates of litigating in this Court as compared to the Chapter 15 Court, for example, is incremental. In contrast, for the 3AC Debtor the difference between litigating the issues once in a centralized forum and engaging in litigation of the same claims in parallel in multiple different bankruptcy cases, together with litigation against non-debtor parties in the BVI Court, represents a substantial burden on its estate through multiplication of expense.

6.      Considering the common issues of fact and law that run through each of the preference claims, the 3AC Debtor has a compelling interest in having claims against each debtor-defendant, and especially the core issues for such claims, decided in a centralized forum.

7.      In contrast to the significant prejudice to the 3AC Debtor from maintaining the stay, the BlockFi Debtors will suffer minimal (if any) prejudice by lifting the stay. The BlockFi Debtors' contentions that lifting the stay to allow the 3AC Claims to be liquidated in a centralized forum will result in "interference with these Chapter 11 Cases" is nothing more than unsubstantiated conjecture. Obj. ¶ 57. The BlockFi Debtors do not assert that lifting the stay would affect their ability to consummate the recently confirmed plan. Likewise, the BlockFi Debtors make no assertion—much less provide evidence—when distributions would commence in the absence of disputes on the 3AC Debtor's claims, or demonstrate to what extent such distributions would be delayed by resolving those claims. Nor do they assert that they *cannot* reserve for the 3AC Debtor's claims and have presented no evidence on what effect (if any) a reserve for 3AC Debtor's claims pending liquidation of the 3AC claims would have on the timing

and amount of distributions to creditors.  Indeed, the BlockFi Debtors appear to concede that initial

distributions can commence while the 3AC Debtor's litigation is pending; asserting instead that

lifting the stay to allow litigation in the BVI Court or the Chapter 15 Case could delay "*final*

distributions to creditors."  Obj. ¶ 57 (emphasis added).

8.      The BlockFi Debtors further assert that litigating the 3AC Debtor's claims before

any court but this Court would be inefficient and increase costs.  Obj. ¶¶ 38, 81.  Specifically, the

BlockFi Debtors contend that there are no efficiencies to be gained by lifting the stay because

litigation with respect to the 3AC Debtor's claims has not been commenced in the BVI Court or

the Chapter 15 Case and the parties are already engaging in discovery in connection with these

Chapter 11 Cases.  Obj. ¶ 51.  But this is not a reason why a different court cannot determine the

merits of the 3AC Debtor's claims, which have not been litigated at all before this Court.  The

BlockFi Debtors' Estimation Motion and Claim Objection are devoid of any discussion of the

merits of the claims.  A trial has not yet been set; indeed, activity with respect to the 3AC Debtor's

claims has been limited to issues of process and scheduling.  While discovery is underway in these

Chapter 11 Cases, that discovery can be used equally in the merits hearing whether it takes place

in the Chapter 15 Case, the BVI Court or this Court—a fact the BlockFi Debtors do not dispute.

Service of discovery requests is hardly a reason to maintain the stay considering the potential for

significant prejudice if the 3AC Debtor must pursue litigation of its claims in parallel in multiple

chapter 11 cases.

9.      The BlockFi Debtors further assert that consolidating litigation of the 3AC Debtor's

claims against the BlockFi Debtors with litigation of the similar claims against the other debtor-

defendants would result in delay and "little" in the way of efficiency gains.  Obj. ¶¶ 80-81.  The

BlockFi Debtors' suggestion that the interests of judicial economy would be better served by

having courts in multiple chapter 11 cases and the BVI Court simultaneously adjudicate issues that

the BlockFi Debtors acknowledge are common to all of the 3AC Debtor's claims is not credible.

Consolidating litigation, at least with respect to the common issues, would plainly ease the burden

on judicial resources—as courts in this Circuit and others have recognized in ordering

consolidation in analogous situations where insolvency presented a common issue across a

multitude of similar claims. *See, e.g.*, *In re Enron Corp.*, 351 B.R. 305, 307 (Bankr. S.D.N.Y.

2006) (consolidating thirty-two (32) separate avoidance actions filed by a debtor for purposes of

litigating insolvency-related issues); *In re Am. Classic Voyages Co.*, 367 B.R. 500, 502 (Bankr. D.

Del. 2007), *aff'd sub nom. In re Am. Classic Voyages*, Co., 384 B.R. 62 (D. Del. 2008) (holding a

consolidated trial regarding the common issue of whether some or all of the Debtors were solvent

on the dates of preferential transfers alleged in three separate adversary proceedings); *In re S.

Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992) (stating the bankruptcy court had

authority to consolidate several adversary proceedings for the adjudication of certain common

issues of fact, including whether the debtor was insolvent throughout the 90 days preceding its

bankruptcy).

10.     Moreover, the BlockFi Debtors' complaints that consolidating litigation on the core

common issues in the Chapter 15 Case will cause additional expense and hardship to the BlockFi

Debtors is undermined by their own proposed litigation schedule.  Dkt. No. 1614.  The BlockFi

Debtors propose that the parties engage in document discovery, depose fact and expert witnesses,

submit legal briefing, and hold an evidentiary hearing on estimation the week of December 18,

2023, only to subsequently duplicate that litigation by engaging in discovery, conducting

depositions, and submitting legal briefing again in connection with their Claim Objection, which

they have proposed be scheduled for an evidentiary hearing the week of February 5, 2024—only

seven weeks after their proposed estimation hearing on the merits is scheduled to begin (and even less time from when any such hearing would end). The BlockFi Debtors' proposal would require wasteful and duplicative litigation that would unduly burden the parties, their respective estates, and this Court—in addition to demonstrating that there is no undue delay warranting estimation. In contrast, the 3AC Debtor proposes that the parties dispense with the BlockFi Debtors' multi-stage approach and instead work towards a consolidated merits hearing on the 3AC claims against both the BlockFi Debtors and the other debtor-defendants against whom the 3AC Debtor is pursuing similar claims the week of December 18, 2023 (*i.e.*, the week the BlockFi Debtors propose to hold a merits hearing on estimation).[5] The 3AC Debtor's proposed schedule would save both estates significant time and expense, while also addressing the BlockFi Debtors' unsubstantiated concerns about the effect of the 3AC claims on distributions. The efficiencies and cost savings to be gained by avoiding the duplicative, multi-stage litigation proposed by the BlockFi Debtors would significantly outweigh any incremental costs associated with consolidated litigation of the key common issues.

11.    The BlockFi Debtors also suggest that their agreement to litigate the FTX Debtors' claims in the FTX cases somehow weighs in favor of maintaining the stay here because it is evidence that, in dueling-debtor scenarios, parallel litigation and the risk of inconsistent outcomes is inevitable. Obj. ¶ 86. The exact opposite inference should be drawn from the FTX settlement. The BlockFi Debtors' settlement with the FTX Debtors, by which they have agreed to litigate FTX's preference claims in the FTX Debtors' chapter 11 cases, undermines their argument that they would suffer prejudice from litigating the 3AC Debtor's claims outside of this Court. Whether

---

[5]    In the event that this Court or other relevant courts do not permit consolidation of any aspects of the claims litigation, the 3AC Debtor reserves the right to seek that hearings in these Chapter 11 Cases are rescheduled to avoid conflicts with hearings in other chapter 11 cases.

the 3AC Debtor's claims are litigated in this Court, the Chapter 15 Court, or the BVI Court, the BlockFi Debtors have created a situation where they will necessarily be litigating preference claims simultaneously in multiple forums.

12.     The fact that the BlockFi Debtors have voluntarily embarked on dueling-debtor litigation in multiple forums does not obviate the potential prejudice to the 3AC Debtor from multi-front litigation.  The BlockFi Debtors, as a potential defendant facing claims from the 3AC Debtor and the FTX Debtors, are situated differently than the 3AC Debtor, which is prosecuting preference claims against *multiple debtor-defendants*.  The BlockFi Debtors face little in the way of prejudice from litigating claims in separate forums.  The 3AC Debtor's claims and the FTX Debtors' claims present different factual issues with respect to solvency and ordinary course defenses, and it is difficult to imagine a scenario where the 3AC Debtor could weaponize a ruling as to the FTX Debtors' solvency against the BlockFi Debtors (nor do the BlockFi Debtors articulate any such scenario).  By contrast, the BlockFi Debtors concede they could seek to use a ruling on the 3AC Debtors' solvency in another parallel litigation against the 3AC Debtor.

13.     Additionally, the BlockFi Debtors claim that they will suffer prejudice from delay and the loss of substantive and procedural rights if the 3AC Debtor's claims are liquidated in the BVI Court.  The BlockFi Debtors' arguments about the differences between procedure in the BVI Court as compared to this Court (or the Chapter 15 Court) are overstated and undermined by the declaration of Mr. Parker, the BlockFi Debtors' declarant on BVI law issues.  Mr. Parker acknowledges that the BlockFi Debtors will "be entitled to appear at all hearings, present evidence and make submissions in opposition" to any unfair preference application submitted in the BVI Court and "will be entitled to ask for disclosure of documents and at trial cross-examine any

witnesses called by the Joint Liquidators." Parker Decl. ¶ 7.  These hallmarks of procedural due process will be available to the BlockFi Debtors in the BVI Court.[6]

14.    The BlockFi Debtors' assertion that they will be deprived of substantive rights if the 3AC Debtor's claims are liquidated in the BVI Court likewise misses the mark.  In particular, the BlockFi Debtors complain that they will "*lose*" potential defenses under the Bankruptcy Code, including safe harbor defenses, equitable subordination, and defenses under section 502(d) and (h), if the 3AC Debtor's claims are liquidated in the BVI Court.  Obj. ¶ 31.  This is simply not the case. Litigation before the BVI Court would be an exercise in liquidating the 3AC claims—*i.e.,* determining the extent and amount of the BlockFi Debtors' liability on the BVI preference claims. That is litigation that will need to occur in one venue or another—and regardless of the venue BVI law will control.  The 3AC Debtor respectfully submits that the BVI Court (or the Chapter 15 Court) is best situated to adjudicate those issues.  In any event, the BlockFi Debtors would maintain any defenses under the Bankruptcy Code to the ultimate allowance of the 3AC claims in these Chapter 11 Cases.

15.    Notably, the BlockFi Debtors do not contend (and could not) that litigation in the Chapter 15 Case presents any of the issues raised with respect to the BVI Court.

16.    Moreover, just as the BlockFi Debtors note that the 3AC Debtor has submitted a claim in these Chapter 11 Cases and consented to this court's jurisdiction, the BlockFi Debtors, as

---

[6]    Mr. Parker states that "[t]he BVI Court will not try to compel anyone outside the Territory who does not wish to give evidence to do so, though adverse inferences may be drawn from their failure to do so."  Parker Decl. ¶ 9. The BlockFi Debtors extrapolate from this statement to suggest that "witnesses would be required to travel to the BVI for hearings and trial or face 'adverse inferences' from the failure to do so."  Obj. ¶ 36.  This ignores that the BVI Court "may allow a witness to give evidence without being present in the courtroom, through a video link or by any other means."  Eastern Caribbean Supreme Court Civ. Pro. R. 29.3 (Revised Edition 2023).

they acknowledge, have submitted a claim in the BVI Case, thereby submitting to that court's jurisdiction.  Obj. ¶ 85.[7]

17.    With respect to the timeline for litigation in the BVI, the BlockFi Debtors have again failed to produce any evidence showing when distributions to creditors will commence (with or without the 3AC Debtors' claims), and what effect (if any) a reserve for the 3AC Debtor's claims pending liquidation of the 3AC Debtor's claims will have on the timing and amount of distributions to creditors.  Without any evidence on these points, even assuming the projected timeline for litigation before the BVI Court posited by the BlockFi Debtors is accurate, any claims of prejudice are merely unsubstantiated speculation.

18.    Furthermore, contrary to the BlockFi Debtors' assertions, the 3AC Debtor has established a probability of success on the merits.  In considering the probability of success on the merits, courts in this Circuit have found that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Am. Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 426 (D. Del. 1993); *see also Matter of Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) (stating that the required showing on the probability of success is "very slight"); *Matter of Fernstorm Storage & Van Co.*, 938 F.2d 731, 737 (7th Cir. 1991) (stating that because "suit is not frivolous" this factor weighs in favor of granting relief).  All that is required is that the movant "make more than a 'vague initial showing' that he can establish a prima facie case." *In re 15375 Memorial Corp.*, 382 B.R. 652, 691 (Bankr. D. Del. 2008).

---

[7]    *Stichting Shell Pensioenfonds v Krys* [2014] UKPC 41 (finding that by submitting a claim in a liquidation proceeding "the creditor obtains an immediate benefit consisting in the right to have his claim considered . . . and satisfied according to the rules of distribution if it is admitted" and thus, submits to the court's jurisdiction).

19.     The *15375 Memorial* court found that a merits analysis is only appropriate in cases

where "the movant has sought relief from the stay to pursue a specific remedy not available under

the Bankruptcy Code, or because its security interest is not adequately protected." *Id.*  The Court

further explained that in a case where "the claimant seeks only to liquidate its claims" to "require

a merits analysis would defeat the objective of economizing judicial resources and would frustrate

the effort to resolve relief from stay motions expeditiously." *Id.*  Accordingly, because the 3AC

Debtor seeks relief from the automatic stay only to liquidate its claims against the BlockFi Debtors,

a merits analysis is irrelevant.

20.     Even if a merits analysis were warranted here, the 3AC Debtor's claims would

plainly clear the "slight" probability of success threshold.  The 3AC Debtors' amended proofs of

claim set forth facts to support *prima facie* unfair preference claims under BVI law.  Under section

245 of the BVI Insolvency Act provides that a transaction is avoidable as an "unfair preference"

if the transaction: (a) "is an insolvency transaction," (b) is "entered into within the vulnerability

period," which is "the period commencing six months prior to the onset of insolvency and ending

in the appointment of . . . the liquidator," and (c) "has the effect of putting the creditor into a

position which, in the event of the company going into insolvent liquidation, will be better than

the position he or she would have been in if the transaction had not been entered into."  Insolvency

Act 2003 (as amended), S.I. 47/2004, § 245(1).  Section 244(2) of the BVI Insolvency Act defines

an "insolvency transaction" as one "entered into at a time when [a] company is insolvent" or that

"causes a company to become insolvent."  Insolvency Act 2003 (as amended), S.I. 47/2004, §

244(2).

21.     The 3AC Debtor has alleged facts to show that (a) the 3AC Debtor was insolvent

on or before May 5, 2023, (b) the 3AC Debtor made several transfers of US dollars,

cryptocurrencies and other assets to the BlockFi Debtors between May 5 and June 3, 2022—each

of which occurred within the six-month "vulnerability period" preceding insolvency, and (c) each

transfer put the BlockFi Debtors in a better position than it would have occupied had the transfers

not occurred.  *See, e.g.,* Claim No. 33518.  Because the 3AC Debtor has alleged facts sufficient to

establish a *prima facie* claim for unfair preference under BVI law, the likelihood of success on the

merits weighs in favor of granting relief.

22.    On balance, the facts, law, and equities weigh strongly in favor of granting relief

from the stay to allow the 3AC Debtor to liquidate the claims in the BVI Court or the Chapter 15

Court.  At minimum, the 3AC Debtor submits that it should be granted limited relief to litigate

common issues of fact and law presented by the preference claims—*e.g.,* the solvency, safe harbor,

and ordinary course issues—against the BlockFi Debtors, together with the other debtor-

defendants, in a centralized forum.  This approach fairly balances the competing interests presented

in this extraordinary circumstance in which the 3AC Debtor faces parallel dueling-debtor

litigations that collectively involve billions of dollars of claims that may be the largest assets of

the 3AC Debtor's estate.  The requested relief would allow issues that are core to the 3AC Debtor's

liquidation and common across multiple litigations to be resolved in a centralized forum while also

preserving the ability of the debtor-defendants to reach a final adjudication of the claims in their

"home" chapter 11 cases.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 6, 2023
       New York, New York

Warren E. Gluck (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
31 West 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3200
Email:
warren.gluck@hklaw.com

John J. Monaghan (*pro hac vice* pending)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 573-5834
Email:
john.monaghan@hklaw.com

Respectfully submitted,

*/s/ John W. Weiss*
John W. Weiss
Joseph C. Barsalona II
**PASHMAN STEIN WALDER HAYDEN, P.C.**
101 Crawfords Corner Road, Suite 4202
Holmdel, NJ 07733
Telephone: (732) 852-2481
Facsimile: (732) 852-2482
Email:   jweiss@pashmanstein.com
        jbarsalona@pashmanstein.com

– and –

Christopher Harris (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Brett M. Neve (admitted *pro hac vice*)
Nacif Taousse (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   adam.ravin@lw.com
        chris.harris@lw.com
        adam.goldberg@lw.com
        brett.neve@lw.com
        nacif.taousse@lw.com

– and –

Nima H. Mohebbi (admitted *pro hac vice*)
Tiffany M. Ikeda (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:   nima.mohebbi@lw.com
        tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators*
*of Three Arrows Capital, Ltd. (in liquidation)*