**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

*Attorneys for Debtors and*
*Debtors in Possession*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al.*,<br>                   Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO MOTION OF THE JOINT LIQUIDATORS**
**OF THREE ARROWS CAPITAL, LTD. FOR**
**COORDINATION AMONG COURTS**

TO:    THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED
         STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Debtors"), as debtors

and debtors-in-possession in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"),

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

hereby file this *Debtors' Objection* (the "Objection") *to Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts* (the "Consolidation Motion"). In support of the Objection, the Debtors respectfully represent as follows:

### Preliminary Statement[2]

1. The JLs title their motion as one that seeks "coordination" when they are, in effect, seeking improper consolidation of distinct matters pending in various U.S. Bankruptcy Courts.[3] The JLs' Consolidation Motion seeks an extraordinary and unenforceable remedy – an order from this Court to compel judges presiding over 3 separate Chapter 11 bankruptcies,[4] the 3AC Chapter 15, and a foreign court in the British Virgin Islands to determine procedures by which a foreign creditor adjudicates its preference claims in an unspecified forum.

2. The Debtors have found no case wherein a request like the JLs' was ever made and certainly no case where such a request was ever granted. This is simply because no statutory basis exists to support the relief requested by the JLs. Forcing multiple judges in courts both domestic and abroad to agree on the common legal and factual issues applicable to preference claims will not result in judicial economy or cost savings. The result will be protracted litigation and waste of estate resources.

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meaning ascribed to such terms elsewhere in the Objection.

[3] "The 3AC Debtor proposes, upon relief from the automatic stay" that the 3AC Debtors would file claims against the Preference Defendants in the BVI Court" or in separate adversaries in the 3AC Chapter 15 Case that "in each case, would be consolidated to the extent necessary." Consolidation Motion ¶ 4.

[4] While the Proposed Order submitted by the JLs with the Consolidation Motion does not mention the Celsius Court as an included party to the relief sought, the first paragraph of the Motion does so, and the JLs include the Celsius debtors in their definition of "Debtor Defendants." Consolidation Motion ¶¶ Intro, 1, 14. However, the JLs indicated in their Reply in Support of Lift Stay Motion [Docket No. 1675] filed on October 6, 2023, that "in light of the limited relief the 3AC Debtor is seeking in the Celsius cases" they are no longer seeking to bind the Celsius Court in the Consolidation Motion. Reply in Support of Lift Stay Motion, ¶ 1, n.3.

3. Any potential hardship on the JLs is of their own making and pales in comparison to the hardship and prejudice that the Preference Defendants sought to be pulled into this maelstrom would suffer.

4. Further, while this Court's docket is public, there is nothing to indicate that the JLs gave notice of this application and hearing to the FTX Debtors or the Genesis Debtors. The Consolidation Motion certainly affects their fundamental substantive rights, and they should have the opportunity to be heard. The Consolidation Motion should be denied.

**General Background**

5. On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Doc. No. 17].

6. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On November 29, 2022, this Court entered an order [Docket No. 42] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

7. On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

8. On May 12, 2023, BlockFi filed its *First Amended Joint Chapter 11 Plan* [Docket No. 875] (as most recently amended at Docket No. 1609 and as may be further amended from time to time, the "Plan") and the accompanying Disclosure Statement [Docket No. 874] (as most

recently amended at Docket No. 1310, the "Disclosure Statement"). On September 26, 2023, the Court confirmed the Plan and approved the Disclosure Statement on a final basis [Docket No. 1660].

### Background Specific to this Objection

9.  By now, this Court (and only this Court) has been briefed on the background between BlockFi Lending LLC ("BlockFi Lending") and Three Arrows Capital, Ltd. ("Three Arrows" or "3AC"). [5] On June 27, 2022, 3AC commenced a liquidation proceeding (the "BVI Proceeding") before the British Virgin Islands Court (the "BVI Court"). Russell Crumpler and Christopher Farmer were appointed as joint liquidators and foreign representatives of Three Arrows (the "JLs") and obtained recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code before the U.S. Bankruptcy Court for the Southern District of New York (the "Chapter 15 Court"), Case No. 22-10920 (the "3AC Chapter 15", and together with the BVI Proceeding, the "3AC Proceedings").

10. In these Chapter 11 Cases, the JLs filed nine duplicative Proofs of Claim with identical addendums against each of the BlockFi Debtors asserting both "Known Claims" and "Unknown Claims" (collectively, the "Initial 3AC Claims"). The JLs then filed nine duplicative amended Proofs of Claim against each of the Debtor entities (the "Amended 3AC Claims," and together with the Initial 3AC Claims, the "3AC Claims"), making substantive changes to the Initial 3AC Claims after the Bar Date without leave of Court.

---

[5] Three Arrows held itself out as a business of investments and short-term opportunities incorporated under the laws of BVI in May 2012.

11. The Debtors filed an Estimation Motion and Claim Objection seeking estimation of the 3AC Claims at $0 and disallowance of the 3AC Claims[6] in their entirety.[7] 3AC opposed the Estimation Motion and Claim Objection and subsequently filed the Lift Stay Motion seeking to prosecute preference actions against BlockFi in the BVI Court of the 3AC Chapter 15 Court.[8]

12. The JLs have filed similar motions for relief from the automatic stay in *Genesis Global Holdco, LLC, et al.* ("Genesis")[9] [Doc. No. 678], *FTX Trading Ltd., et al.* ("FTX")[10] [Doc. No. 2755], and *Celsius Network LLC, et al.* ("Celsius") [Doc. No. 3569, amended at Doc. No. 3642]. They also have filed similar motions seeking consolidation in the 3AC Chapter 15 [Doc. No. 116], the FTX Cases [Doc No. 2754], and the Genesis Cases [Doc. No. 754] so that they may adjudicate their preference claims against FTX, Genesis, and the Debtors (collectively, the "Preference Defendants") in one forum.

13. In response to the Lift Stay Motion filed in these Chapter 11 Cases, the Debtors filed an objection (the "Lift Stay Objection") to the Lift Stay Motion and the Declaration of

---

[6] As noted in the Debtors' Objection to 3AC's Lift Stay Motion, they will be similarly objecting to the Amended 3AC Claims.

[7] On August 11, 2023, the Debtors filed the Motion to Estimate the Amount of the 3AC Claims against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code (the "Estimation Motion") [Doc. No. 1346] and on August 21, 2023, the Debtors filed the Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd. (the "Claim Objection") [Doc. No. 1375]. On September 13, 2023, the JLs filed their *(A) Objection to Debtors' Motion to Estimate the Amount of the 3AC Claims against the Debtors pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code, and (B) Opposition to Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* [Doc. No. 1484].

[8] On September 13, 2023, the JLs filed their *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 And (II) Granting Related Relief* (the "Lift Stay Motion") [Docket No. 1492] and the *Declaration of Grant Carroll* in support of the Lift Stay Motion [Docket No. 1493] (the "Carroll Dec.")

[9] *In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. filed Jan. 19, 2023) (the "Genesis Cases" and the "Genesis Court").

[10] *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. filed Nov. 11, 2022) (the "FTX Cases" and the "FTX Court").

Christopher Parker (the "Parker Dec.") in support of the Lift Stay Objection. [Docket Nos. 1654 & 1654-1].

14. After filing the Lift Stay Motion, the JLs filed the Consolidation Motion, asking this Court to order itself, the BVI Court, the Chapter 15 Court, and the courts presiding over Genesis and FTX to coordinate to establish procedures to adjudicate common issues of fact and law raised by the 3AC Claims in a centralized forum. Moreover, "[t]he 3AC Debtor proposes, upon relief from the automatic stay" that the 3AC Debtor would file claims against the Preference Defendants in the BVI Court" or in separate adversaries in the 3AC Chapter 15 Case that "in each case, would be consolidated to the extent necessary." Consolidation Motion ¶ 4. The relief requested in the Consolidation is unprecedented and improper and should be denied.

15. The JLs filed the *Reply in Support of the Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant To 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "Reply in Support of Lift Stay Motion") [Docket No. 1675] and the *Objection to The Blockfi Debtors' Proposed Scheduling Order on 3AC Matters and Notice of Alternative Scheduling Order Proposed by the Joint Liquidators of Three Arrows Capital, Ltd.* (the "3AC Objection to Scheduling Order") [Docket No. 1682].

**Objection**

A. **There is No Statutory Basis to Support the Relief Requested**

16. The JLs do not cite to one case that grants the type and scope of relief sought in the Consolidation Motion, and the Debtors have similarly been unable to locate any cases where a court did so. Nonetheless, the JLs assert that Section 105(a), Chapter 15 of the Bankruptcy Code, and the Federal Rules of Civil Procedure on consolidation all provide authority for this Court to

order other courts to coordinate on 3AC's preference actions against the Preference Defendants. Even the most cursory examination of these statutes and rules demonstrates the JLs' arguments to be wholly without merit.

### I. Section 105(a) Does Not Provide Authority for the Relief Requested

17. Section 105(a) does not operate in a vacuum. The statute provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out *the provisions of this title*." 11 U.S.C. § 105(a) (emphasis added). "The statutory language thus requires that an exercise of Section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." 2 Collier on Bankruptcy ¶ 105.01 (16th 2023). *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (holding that Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."); *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (stating that Section 105(a) provides courts with the "power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.").

18. The JLs cannot rely on Section 105(a) alone to argue that this Court may grant the unprecedented relief they are requesting in the Consolidation Motion. While they refer to the provisions of Chapter 15 (discussed further below) as generally advocating for cooperation between US and foreign courts, the JLs fail to cite to any provision of the Code that would allow this Court to order a foreign court, another US court, or debtors in another bankruptcy case not before it to consolidate preference actions against multiple, unrelated debtors.

19. The JLs further emphasize that Section 105(a) allows bankruptcy courts to "control *[their] own* docket[s]" and "maintain control of the courtroom and administration of…cases *before them*." Consolidation Motion ¶ 22 (emphasis added). The Debtors do not dispute that Section 105(a) is one of many sources of authority that allows bankruptcy courts to manage the cases and litigants that come before it. But the JLs are not asking this Court to manage its docket, or direct parties before it to take or refrain from taking some action—they are asking this Court to order other bankruptcy courts, the BVI Court, the 3AC Chapter 15 Court, and the debtors in the FTX and Genesis Cases to participate in a mass adjudication of 3AC's preference claims in a forum other than the District of New Jersey. That power is simply not within the authority of this Court, or of any court that the Debtors are aware of, and the JLs cannot twist the words of Section 105(a) to make it so. *See In re Jocelyn*, 574 B.R. 771, 772 n. 3 (Bankr. M.D. Fla. 2017) (holding that the jurisdiction of the bankruptcy court does not include "giving directives to any other courts").

II. **Chapter 15 Does Not Provide Authority for the Relief Requested**

20. Chapter 15 governs the recognition of foreign insolvency proceedings such as those in the 3AC BVI Proceeding. The JLs place much emphasis on the concepts of comity and cooperation between US courts and foreign courts and representatives, citing to Section 1509(b)(3) for the proposition that once a foreign proceeding is recognized under Section 1507 "a court in the United States shall grant comity or cooperation to the foreign representative." Consolidation Motion ¶ 24 (citing 11 U.S.C. § 1509(b)(3)). They argue that this gives the "relevant courts…statutory authority [to] cooperate with the JLs." *Id*. But this grant simply requires that courts give "courtesy and respect for the foreign proceeding, it does not mandate relief. The foreign representative must still make a case that the relief it seeks is warranted." 8 Collier on Bankruptcy ¶ 1509.02 (16th 2023); *see also CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re*

*Cozumel Caribe, S.A., de C.V.)*, 482 B.R. 96, 109 (Bankr. S.D.N.Y. 2012) ("[O]ther than providing access to courts in the United States, Section 1509 is not self-executing. Relief to a foreign representative must be based on Sections 1507, 1519, 1520 and 1521, subject to limitations that may be imposed under section 1522."). The JLs do not cite to any of these sections as the basis for the relief they seek.

21. The JLs cite to two other sections of Chapter 15, Sections 1501 and 1525. Both sections simply express the intent of the legislature in drafting the Chapter to "provide effective mechanisms for dealing with cross-border insolvency" and promote communication between US and foreign courts. *See* 11 U.S.C. §§ 1501, 1525. Like Section 1509, these sections do not provide an independent basis for relief. Additionally, the JLs are not seeking to be heard in or recognized by this Court. In fact, the relief sought by the Consolidation Motion would force the Debtors into litigation in a venue foreign to them, either in the 3AC Chapter 15 Court or the BVI Court. Such a result is surely not the type of outcome the drafters of Chapter 15 were hoping to promote when they emphasized the goals of cooperation and comity between US and foreign courts.

### III. The Bankruptcy Court's Power to Consolidate Does Not Extend to Litigation in Other Courts

22. The JLs invoke Rule 42 of the Federal Rules of Civil Procedure[11] to argue that "cross-court coordination with respect to the 3AC Claims would be consistent with federal policy." Consolidation Motion ¶ 27. Rule 42 states, *inter alia*, that "[i]f actions *before the court* involve a common question of law or fact, the court may…consolidate the actions." FED. R. CIV. P. 42 (emphasis added). What the JLs fail to mention, however, is that Rule 42 can only be utilized to consolidate cases before it and over which the court has jurisdiction. "[F]ederal courts have no

---

[11] Rule 42 is made applicable to adversary proceedings and contested matters by Federal Rules of Bankruptcy Procedure 7042 and 9014(c).

authority to consolidate an action of which it has jurisdiction with one it does not." *Mins. Dev. & Supply Co. v. Hunton & Williams, LLP*, No. 10-CV-00488-WMC, 2011 WL 4585321, at *5 (W.D. Wis. Sept. 30, 2011), *aff'd*, 488 F. App'x 153 (7th Cir. 2012) (internal citations omitted); s*ee also New York v. U.S. Army Corps of Engineers*, 896 F. Supp. 2d 180, 188 (E.D.N.Y. 2012) (holding that consolidation is a procedural device and courts must consider the jurisdictional basis of each case); *Washington v. Burley*, No. CIV.A. 3-12-154, 2012 WL 5289682, at *2 (S.D. Tex. Oct. 23, 2012) ("[A] court must have jurisdiction over a case before it can start applying procedural mechanisms like consolidation.").

23.  While this Court certainly has jurisdiction over the BlockFi Debtors, 3AC, and the 3AC Claims,[12] this Court does not have jurisdiction over the other Preference Defendants and the pending contested matters that the JLs seek to pull into the 3AC Chapter 15 Court or the BVI Court.[13] The JLs seek to persuade this Court to order other courts and parties to litigate a preference action in one proceeding en masse, only to then remove such action and the BlockFi Debtors to a different court entirely. The allowance and disallowance of claims is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and this Court should not be stripped of its fundamental right "to adjudicate and conciliate all competing claims to a debtor's property in one forum." *In re Tarragon Corp.*, No. 09-10555 (DHS), 2009 WL 2244598, at *7 (Bankr. D.N.J. July 27, 2009).

---

[12] As the Supreme Court has noted, "[h]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure." *Gardner v. New Jersey*, 329 U.S. 565, 573 (1947). "The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res." *Id*. at 574.

Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate. *See* 28 U.S.C. § 1334(e).

A bankruptcy courts in rem jurisdiction permits it to determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is one against the world.
16 Moore's Federal Practice - Civil § 108.70 (2023)

[13] Aside from FTX but solely with respect to the matters reserved for this Court in the stipulation.

24. The JLs cite to several bankruptcy cases for the proposition that separate avoidance actions are frequently consolidated for the purposes of litigating insolvency issues. Consolidation Motion ¶ 28. *See In re Enron Corp.*, 351 B.R. 305, 307 (Bankr. S.D.N.Y. 2006); *In re Am. Classic Voyages Co.*, 367 B.R. 500, 502 (Bankr. D. Del. 2007), *aff'd sub nom. In re Am. Classic Voyages*, Co., 384 B.R. 62 (D. Del. 2008); *In re S. Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992). Both *Enron* and *Classic Voyages* concerned the consolidation of multiple adversary proceedings filed in the *same* bankruptcy case, and *In re S. Indus. Banking* states, in dicta, that bankruptcy courts may consolidate adversary proceedings.

25. The "consolidation" sought by the JLs is not authorized under Bankruptcy Rule 7042 or 9014. Consolidation seeks to promote judicial economy by aggregating common issues of fact and law in cases **before the court in which they are pending**. The JLs are not asking this Court to consolidate multiple adversary proceedings or contested matters already before it. With respect to the cases mentioned in the Consolidation Motion, this Court presides over the BlockFi Chapter 11 Cases only, and the specter of multiple common issues of law and fact that the JLs have repeatedly evoked have yet to materialize.

26. Further, this Court does not have the authority to order what 3AC seeks. Specifically, 3AC's proposed order states: "this Court, the BVI Court, the Genesis Court, the FTX Court, and the Chapter 15 Court **shall** coordinate…" This Court does not have the authority to order the Southern District of New York or District of Delaware Bankruptcy Courts to do anything, and it goes without saying that this Court also cannot order a sovereign foreign court in the British Virgin Islands to do anything either. And even if this Court did somehow have that power, it is

entirely unclear what the JLs even mean when they say the courts "shall coordinate."[14] The Consolidation Motion and proposed order are extremely vague on the details of this purported coordination effort.

**B.    Judicial Efficiency Will Not Be Promoted by Consolidating 3AC's Preference Actions**

27.    The JLs assert that consolidation will allow for the efficient adjudication of analogous claims against the Preference Defendants. Consolidation Motion ¶¶ 11–20. Despite repeated assertions in the Lift Stay and Consolidation Motions of a plethora of common issues that are supposedly present in the JLs' preference claims against the Preference Defendants, the Debtors have thus far been able to identify only two commonalities that arise: the claims asserted by the JLs are (mostly) preference claims, and 3AC's insolvency is an element the JLs must establish to recover an unfair preference under BVI law in order to make the challenged transfer an "insolvency transaction."[15]

28.    Despite the JLs' hyper-focus on the insolvency date issue, it is conceivable that the adjudication of certain defenses that the Debtors will assert against the 3AC Claims could entirely moot the issue of whether an insolvency date needs to be established at all. But the Debtors will not have any opportunity to assert those defenses and avoid litigation over the insolvency date should they be forced into a proceeding in which only BVI preference defenses are available to them.

29.    To be clear, there is not actually a commonality of claims no matter how many times the JLs assert it. The claims against Debtors include only preference claims on loan

---

[14] This is especially true in light of the JLs request that this Court enter a scheduling order *after* consolidation in another court. See 3AC Objection to Scheduling Order ¶ 3 ("the JLs request that "this Court enter an order establishing a discovery schedule now in the form attached as Exhibit A.")

[15] Parker Dec. ¶¶ 4–5 [Docket No. 1654-1].

payments, a payment of interest, and transfers of collateral. The challenged transactions related to the Genesis debtors include: turnover claims under US and BVI law, conversion claims under NY law, preference claims related to interest, loan repayment, and substitution of collateral, and other "potential" claims under US bankruptcy law. [Genesis Cases, Doc. No. 658]. The Debtors are currently unaware what claims the JLs assert against FTX.

30. Even if there were a commonality of claims asserted by the JLs against the Preference Defendants, it does not necessitate pulling 3 separate debtors from various bankruptcy cases pending in the U.S. into a foreign court or a court overseeing the 3AC Chapter 15 Case. The application of the laws governing preferences to the facts will be done on a debtor-by-debtor and transaction-by-transaction basis, including an analysis of whether 3AC was insolvent at the time of each of those transactions. [16]

31. Despite repeatedly asserting in the Lift Stay Motion that the BVI (or 3AC Chapter 15) Court can provide a full adjudication of the 3AC Claims, the JLs fully contradict themselves in the Consolidation Motion by stating that the "decisions with respect to common issues can be taken back to the [Preference] Defendants' chapter 11 courts for the resolution of their respective claims." Consolidation Motion ¶ 33. This tacit acknowledgement that every one of the Preference Defendants will be forced to adjudicate 3AC's claims against them twice, particularly since BVI law does not allow certain defenses and does not provide the same robust discovery process, discredits the JLs' argument that there is any judicial efficiency to be gained by granting the Consolidation Motion. *See* Carroll Dec. ¶ 25 (stating that the JLs' US attorneys have advised him that "following entry of a judgment by the BVI Court on the 3AC Claims" this Court will determine whether the "judgment may serve as the basis of an allowed claim.").

---

[16] Parker Dec. ¶¶ 4–5, 14. [Docket No. 1654-1].

32. The scheduling proposals in the 3AC Objection to Scheduling Order seek to resolve all the claims involving the Preference Defendants, not just allegedly common issues. 3AC Objection to Scheduling Order, Ex. A, p. 4 ("Hearing on Debtors' Objection to 3AC's ***proofs of claim*** subject to BVI Court's or the Chapter 15 Court's availability, as applicable"). The Consolidation Motion forces each of the Preference Defendants to be inactive participants in the fact-specific proceedings of the other two, in which each party would presumably present their own experts, witnesses, and arguments. There is nothing streamlined or efficient about the process envisioned by the JLs in the Consolidation Motion, and the costs to BlockFi and the other individual bankruptcy estates of the Preference Defendants would be staggering.

C. **The Prejudice to BlockFi and the Other Preference Defendants Far Outweighs Any Prejudice to 3AC.**

33. As stated more fully in the Debtors' Lift Stay Objection, the burden, expense, and hardship of litigating the 3AC Claims against the BlockFi estate in either the BVI Court or 3AC Chapter 15 Court substantially outweigh the JLs' desire to avoid hypothetical issue preclusion and the costs of litigating claims against parties in courts in which the JLs actively asserted claims. The JLs have already spent significant amounts of time (and presumably estate funds) filing claims, amended claims, requests for production of documents, motions to lift stay, and consolidation motions in each of the Preference Defendants' cases—all in the name of pulling the various parties into courts which have no jurisdiction over them to decide the exact date upon which 3AC became insolvent.

34. Further, the JLs' plan is laid bare in the 3AC Objection to Scheduling Order. The JLs now seek, not consolidation of common issues of fact or law, but rather the entirety of the BlockFi Debtors, FTX Debtors, Genesis Debtors, and Celsius Debtors' claims be tried to completion in BVI or the Chapter 15 Court the week of December 18, 2023. 3AC Objection to

Scheduling Order ¶ 3. The JLs seek an order from this Court requiring that to happen: "The 3AC Debtor requests that this Court enter an order establishing a discovery schedule now in the form attached hereto as Exhibit A." *Id.* at ¶ 3. The breadth of the JLs' request is unprecedented and staggering—they request that this Court wrestle jurisdiction from the Genesis Court, FTX Court, Chapter 15 Court, and the BVI Court and enter a scheduling order binding those courts and all of those parties.

## Conclusion

35. The relief sought by the JLs through the Consolidation Motion is unprecedented, unsupported by statute or case law, and wholly self-serving at the expense of the Preference Defendants and their individual creditor bodies.

**WHEREFORE**, the Debtors respectfully request entry of an order denying the Consolidation Motion and granting the Debtors such other and further relief as the Court may deem just and proper.

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated: October 9, 2023 | /s/ *Michael D. Sirota* |

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
(201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jsussberg@kirkland.com
christine.okike@kirkland.com

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Attorneys for Debtors and*
*Debtors in Possession*