**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Jeffrey L. Jonas, Esq. (admitted *pro hac vice*)
Michael S. Winograd, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*Counsel to the Plan Administrator*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

*Counsel to the Plan Administrator*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered) |

## WIND-DOWN DEBTORS' OMNIBUS OBJECTION TO AMENDED CLAIMS OF THREE ARROWS CAPITAL, LTD.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

The Wind-Down Debtors for the estate of BlockFi Inc. and its debtor affiliates (collectively

"BlockFi" or the "Wind-Down Debtors") for the above-referenced Chapter 11 cases (the "Chapter

11 Cases"), hereby files this *Omnibus Objection to Amended Claims of Three Arrows Capital, Ltd.*

(the "Objection") seeking entry of an Order substantially in the form attached hereto (the

"Proposed Order"), pursuant to sections 105(a) and 502 of title 11 of the United States Code, 11

U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2 and 9013-1 of the Local Rules of

the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"). In support

of the Objection, the Wind-Down Debtors respectfully represent as follows:

**Preliminary Statement**[2]

1.      The JLs have improperly attempted to amend the 3AC Initial Claims – bringing

substantively new claims after the Claims Bar Date. The JLs failed to seek leave of Court to file

such amended claims and now seek to gain an advantage over other creditors by bringing new (yet

still unfounded) claims against the BlockFi estate. On those grounds alone, the 3AC Amended

Claims should be disallowed.

2.      Even if this Court decides to treat the 3AC Amended Claims as timely filed, the

3AC Amended Claims suffer from such a complete lack of factual and legal support that they are

not entitled to *prima facie* validity, and the burden remains on the JLs to establish the validity of

their claims rather than shifting the burden to the Wind-Down Debtors. The 3AC Amended Claims

are comprised of two types of claims: (i) the 3AC BVI Preference Claims, asserting preferential

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings provided in
the remainder of this Objection.

transfers under BVI law for which the JLs seek to clawback approximately $273 million from the BlockFi estate, and (ii) an alleged Loan Repayment Claim for which the JLs seek approximately $10.4 million based on the BTC Loan 3AC made to BlockFi Lending.

3.      In any event, the Loan Repayment Claim is easily dispensable. The JLs provide no documentation or other evidence to establish the loan, the "dissipation" of the collateral, or any payments made on the loan. As such, the Loan Repayment Claim is not supported and should be disallowed.

4.      The BVI Preference Claims should also be disallowed. The JLs, despite now having taken two bites at the apple, have still failed to provide any factual or legal basis to meet any of the elements of a BVI preference. The JLs have provided *no evidence* that 3AC was insolvent at the time of any of the complained of transfers, *no evidence* that the transfers occurred outside of the ordinary course of business, and *no evidence* that the transfers left BlockFi Lending in a better position than if the transfers had not been made. The BVI Preference Claims fail on their face. Even if the JLs could somehow convince this Court that they have evidence to establish the required elements, BlockFi Lending has valid defenses to the BVI Preference Claims, including the safe harbor defense under Section 546 of the Bankruptcy Code.

5.      Moreover, if any portion of the 3AC Amended Claims are allowed, the Wind-Down Debtor intends to seek equitable subordination of 3AC's allowed claims based on 3AC's inequitable conduct in its dealings with its creditors, including BlockFi Lending.

6.      The BlockFi creditors have waited long enough for their distributions. The continued drain on estate resources in having to defend 3AC's baseless claims is significant and must stop. The 3AC Claims are wholly unwarranted and unsupported, and the Wind-Down Debtor implores this Court to disallow them in their entirety.

## Jurisdiction and Venue

7.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.).

The Debtors confirm their consent to the Court entering a final order in connection with this

Objection to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

8.      3AC and the JLs, by filing proofs of claim, have submitted to the equitable

jurisdiction of this Court, and consented to this Court's adjudication of the 3AC Claims. *See*

*Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (per curiam); *In re Tarragon Corp.*, 2009 WL

2244598, at *6 (Bankr. D.N.J. July 27, 2009) ("[T]he filing of a proof of claim brings a creditor

within the equitable jurisdiction of the Bankruptcy Court removing the creditor's right to a jury

trial.") (citing *Shubert v. Lucent Techs., Inc.* (*In re Winstar Communications, Inc.*), 554 F.3d 382,

406–07 (3d Cir. 2009) (citing *Langenkamp*, 498 U.S. at 44–45) (other citations omitted)); *Shared*

*Network Users Group, Inc. v. WorldCom Techs., Inc.*, 309 B.R. 446, 451 (E.D. Pa. 2004).

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested herein are sections 105(a) and 502(a) of

Bankruptcy Code, Bankruptcy Rule 3007, and Local Rules 3007-1, 3007-2 and 9013-1.

## Relief Requested

11.     The 3AC Amended Claims are duplicative, filed after the Claims Bar Date, not

supported by sufficient documentation or evidence, filed against the incorrect debtor entity, and

seek amounts for which the Debtors are not liable. Additionally, each of the 3AC Amended Claims

purports to amend one of the 3AC Initial Claims, which are the subject of the Initial Objection at Docket No. 1375. The Wind-Down Debtors respectfully request entry of an order, substantially similar to the Proposed Order attached as <u>Exhibit B</u>: (a) disallowing each of the 3AC Amended Claims and 3AC Initial Claims and (b) directing Kroll Restructuring Administration LLC (the "<u>Claims and Noticing Agent</u>") to expunge the 3AC Initial and Amended Claims filed with assigned claim numbers 15592, 25958, 25961, 25923, 25984, 25985, 26292, 25953, 25964, 33518, 33519, 33520, 33521, 33522, 33523, 33524, 33525, and 33526 from the claims registry.

**<u>Background</u>**

**A.  The Chapter 11 Cases**

12.     On November 28, 2022 (the "<u>Petition Date</u>"), each BlockFi Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), which was filed on the Petition Date and is incorporated by reference herein. These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

13.     On May 12, 2023, BlockFi filed its *First Amended Joint Chapter 11 Plan* [Docket No. 875] (as most recently amended at Docket No. 1609, and as may be further amended from time to time, the "<u>Plan</u>") and the accompanying Disclosure Statement [Docket No. 874] (as most recently amended at Docket No. 1310, the "<u>Disclosure Statement</u>"). On September 26, 2023, the Court confirmed the Plan and approved the Disclosure Statement on a final basis, and on October 3, 2023, the Court entered the *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement  Relating to the Third Amended Joint Chapter 11 Plan of*

*BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II)Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order"). On October 24, 2023, the Plan went effective. [Docket No. 1788].

### B. The Bar Date Order and Claims Process

14.    On January 30, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of Claims (collectively, the "Proofs of Claim") in these Chapter 11 Cases. The Bar Date Order established March 31, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "Claims Bar Date").

15.    On January 12, 2023, the Debtors filed: the Schedules of Assets and Liabilities of: BlockFi Inc. (Case No. 22-19361) [Docket No. 242] (as amended by Docket Nos. 460 and 856), BlockFi International Ltd. (Case No. 22-19368) [Docket No. 247] (as amended by Docket Nos. 462 and 858); BlockFi Investment Products LLC (Case No. 22-19370) [Docket No. 249], BlockFi Lending LLC (Case No. 22-19365) [Docket No. 251] (as amended by Docket Nos. 461 and 857), BlockFi Lending II LLC (Case No. 22-19374) [Docket No. 253], BlockFi Services Inc. (Case No. 22-19371) [Docket No. 255], BlockFi Trading LLC (Case No. 22-19363) [Docket No. 257], BlockFi Ventures LLC (Case No. 22-19367) [Docket No. 259], and BlockFi Wallet LLC (Case No. 22-19366) [Docket No. 261] (collectively and as may be amended from time to time, the

"Schedules") pursuant to Bankruptcy Rule 1007. On February 2, 2023, and February 3, 2023, the

Debtors caused a bar date notice to be published in The New York Times and The Royal Gazette,

respectively, as set forth in the affidavits filed at Docket Nos. 471 and 472. With the assistance of

Kroll Restructuring Administration LLC (the "Claims and Noticing Agent"), the Debtors also

served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance

with the procedures set forth in the *Order Granting Debtors' Motion to Establish Certain Notice,*

*Case Management and Administrative Procedures* [Docket No. 54] (the "Case Management

Order"). The Bar Date Notice and Proof of Claim Forms were also published on the Debtors' case

website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/blockfi.

16.    On March 13, 2023, the Court entered its *Order Granting Debtors' Motion for*

*Entry of an Order (A) Approving the (I) Omnibus Claims Objection Procedures and Form of*

*Notice, (II) Omnibus Substantive Claims Objections, and (III) Satisfaction Procedures and Form*

*of Notice, (B) Waiving Bankruptcy Rule 3007(e), and (C) Granting Related Relief* [Docket No.

609] (the "Claims Procedures Order").

17.    As of the date hereof, over 33,000 Proofs of Claim have been filed against the

Debtors. The Debtors, together with their advisors, have commenced the claims reconciliation

process, reviewed the claims listed on Schedule 1 to the Proposed Order and concluded that each

should be disallowed as detailed in this Objection and on Schedule 1.

**C.  BlockFi Lending and Three Arrows**

18.    BlockFi Lending LLC ("BlockFi Lending") made a series of overcollateralized

loans (the "Loans") to Three Arrows Capital, Ltd. ("Three Arrows" or "3AC"). The Loans were

secured by certain digital assets, including Bitcoin (BTC), interests in Grayscale Bitcoin Trust

(GBTC), Grayscale Ethereum Trust (ETHE), Grayscale Ethereum Classic Trust (ETCG),

Grayscale Digital Large Cap Fund (GLCF), Grayscale Zcash Trust, cash, general intangibles, investment property, and other financial assets (collectively, the "<u>Collateral</u>").

19.    3AC defaulted on the Loans in June 2022, and BlockFi Lending properly accelerated the Loans and foreclosed on the Collateral with notice to 3AC. The proceeds of the Collateral were insufficient to repay the obligations under the Loans, so BlockFi Lending initiated arbitration to recover the deficiency amount, default interest, and other fees and costs, which at that time totaled at least $142 million.

**D.  The 3AC Proceedings**

20.    On June 27, 2022, 3AC commenced a liquidation proceeding before the British Virgin Islands ("<u>BVI</u>") Court (the "<u>BVI Proceeding</u>"), which stayed the arbitration. Russell Crumpler and Christopher Farmer were appointed as joint liquidators and foreign representatives of Three Arrows (the "<u>JLs</u>") and obtained recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code before the U.S. Bankruptcy Court for the Southern District of New York, Case No. 22-1020 (the "<u>3AC Chapter 15</u>", and together with the BVI Proceeding, the "<u>3AC Proceedings</u>").

21.    On May 24, 2023, the JLs applied in the BVI Proceeding for authority to file a Chapter 11 case in the United States on behalf of 3AC, but the application was denied. The JLs have appealed the BVI Court's decision. 3AC Amended Addendum ¶ 6.

**E.  The 3AC Claims**

22.    On the General Claims Bar Date, the JLs filed nine (9) duplicative proofs of claim against each of the BlockFi Debtors purporting to assert both "Known Claims" and "Unknown

Claims" (collectively, the "3AC Initial Claims"). The JLs attached to each proof of claim an

identical addendum as the only support for the 3AC Initial Claims[3] (the "3AC Initial Addendum").

23.     In the 3AC Initial Addendum, the JLs asserted that 3AC's "Known Claims"

included (a) preference claims under BVI and "other applicable law" arising from (i) a payment

by 3AC to BlockFi on May 9, 2022, in the amount of $71M, (ii) an interest payment by 3AC on

June 3, 2022 of 6,070,123 USDC and (iii) various transfers of cash and digital assets by 3AC,

including: 34,225 ETH, 1,905,529 GBTC, 6,150,845 ETHE, 386,477 ETCG, and $1,691,744 and

(b) BlockFi's obligations to repay loans made by 3AC in the amount of 2,307.75 BTC (the "BTC

Loan"). 3AC Initial Addendum ¶ 6. 3AC asserted that BlockFi pledged 31,345 ETH tokens as

collateral for the BTC Loan, which "[b]ased on information available" to the JLs, 3AC foreclosed

upon prior to the 3AC petition date. *Id.* For the Unknown Claims, the JLs reserved rights to assert

additional claims and stated that they are aware of "multiple other transactions" between and

among 3AC and BlockFi, which may include lending transactions that could constitute additional

basis for claims by 3AC. *Id.*

24.     On August 21, 2023, the Debtors filed the *Debtors' Eighth Omnibus Objection to*

*Claims of Three Arrows Capital, Ltd.* (the "Initial Objection") [Docket No. 1375] seeking

disallowance of the 3AC Initial Claims as duplicative, vague, insufficiently pled, and unsupported

by evidence or documentation.

25.     On September 13, 2023, the JLs attempted to amend the 3AC Initial Claims and

again filed nine (9) duplicative proofs of claim (the "3AC Amended Claims")[4] against each of the

---

[3] The 3AC Initial Claims were assigned the following claim numbers: 15592, 25958, 25961, 25923, 25984, 25985, 26292, 25953, 25964.

[4] The 3AC Amended Claims have been assigned the following claim numbers: 33518, 33519, 33520, 33521, 33522 33523, 33524, 33525, 33526.

Debtor entities. Similar to the 3AC Initial Claims, each proof of claim had an identical addendum (the "3AC Amended Addendum" and collectively with the 3AC Initial Claims and 3AC Initial Addendum, the "3AC Claims") attached as the support for the 3AC Amended Claims.

26.    In the 3AC Amended Addendum, the JLs assert preference claims under BVI law for:

> *(i) a payment by 3AC to BlockFi on May 5, 2022, in the amount of $29MM,[5]
> (ii) a payment by 3AC to BlockFi on May 9, 2022, in the amount of $71MM,
> (iii) a transfer by 3AC to BlockFi of 21,025 ETH on May 12, 2022,
> (iv) a transfer by 3AC to BlockFi of 13,200 ETH on May 18, 2022,
> *(v) a securities account control agreement (the "Canaccord Agreement") execute on May 27, 2022, between 3AC, BlockFi, and Canaccord Genuity Group as broker ("Canaccord") granting BlockFi a security interest in various assets contained in a securities account (the "Canaccord Account"), and
> (vi) a payment by 3AC to BlockFi on June 3, 2022, in the amount of 6,070,123 USDC
> (collectively, the "3AC Preference Claims").

3AC Amended Addendum ¶¶ 23–24. The JLs also assert a claim for $10.4MM[6] in relation to the BTC Loan made by 3AC to BlockFi in which BlockFi pledged 31,345 ETH as collateral[7] (the "Loan Repayment Claim"). 3AC Amended Addendum ¶ 35.

27.    The 3AC Amended Addendum also purports to preserve preference claims under Section 547 of the Bankruptcy Code that the JLs suggest they would bring against the Debtors, presumably if they were successful in appealing the denial by the BVI Court of the JLs' application to pursue a Chapter 11 case.

---

[5] As discussed below, claims denoted by an asterisk are newly-asserted and do not relate back to any transactions asserted in the 3AC Initial Claims.

[6] The Debtors contest the alleged balance of the BTC Loan.

[7] The JLs assert "on information and belief" that the ETH collateral was "dissipated" but provide no support for when, or how, the "dissipation" occurred or the price at which the ETH was actually sold (or even if it was sold).

## Objection

28.    The Wind-Down Debtors seek disallowance of the 3AC Claims in their entirety.
Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof
of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . .
objects." 11 U.S.C. § 502(a). The burden of proof for claims brought in the bankruptcy court under
section 502(a) of the Bankruptcy Code is a shifting burden that rests on different parties at different
times. *In re Biolitec, Inc.*, Case No. CIV. 13-5864 FSH, 2013 WL 6795400, at *3 (D.N.J. Dec. 16,
2013) (citing *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)). First, the claimant must
allege facts sufficient to support its claim. *Id.* If the allegations in the filed claim meet this standard,
"it is '*prima facie*' valid." *Id.* "In other words, a claim that alleges facts sufficient to support a legal
liability to the claimant satisfies the claimant's initial obligation." *Id.* A properly filed proof of
claim is generally considered "*prima facie* evidence of the validity and the amount of the claim."
Fed. R. Bankr. P. 3001(f).

29.    The burden then shifts to the objector to produce evidence sufficient to negate the
*prima facie* validity of the filed claim. *Allegheny*, 954 F.2d at 173. In practice, the objector must
produce evidence which, if believed, would refute at least one of the allegations that is essential to
the claim's legal sufficiency. *Id.* at 173–74. If the objector meets this burden, the burden reverts to
the claimant to prove the validity of the claim by a preponderance of the evidence, and the burden
of persuasion is always on the claimant. *Id.* Section 502(b)(1) "is most naturally understood to
provide that, with limited exceptions, any defense to a claim that is available outside of the
bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas
& Elec. Co.*, 549 U.S. 443, 450 (2007).

30.    A claimant's failure to allege facts and to provide sufficient support for a claim deprives the claim of *prima facie* validity in the first place. *See, e.g.*, *In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims). "[I]n certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b) . . . ." *In re Mallinckrodt Plc*, Case No. 20-12522-JTD, 2022 WL 3545583, at *4 (D. Del. Aug. 18, 2022); *see also In re O'Brien*, 440 B.R. 654, 667 (Bankr. E.D. Pa. 2010) (finding that lack of *prima facie* evidence pursuant to Bankruptcy Rule 3001(f) and failure of claimant to provide additional evidence warranted disallowance of claim).

31.    "The debtor… 'has no evidentiary burden to overcome' in objecting to a claim that is not prima facie valid." *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008) (*citing eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 318 (Bankr. S.D. Tex. 2007)) (holding that debtors' objections alone are sufficient to shift the burden back to claimant when proof of claim lacked sufficient documentation).

### A. The 3AC Amended Claims are untimely, were filed without leave of the Court, and assert new claims that do not relate back.

32.    A party seeking to file an amended claim after the bar date must seek leave of the court to do so. *In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993). The 3AC Amended Claims were filed without seeking or obtaining leave of Court, and the JLs do not address the late filing of the 3AC Amended Claims in the 3AC Amended Addendum.

33.    While "the decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court," the Court must scrutinize the amendment to ensure that it's not an attempt to file a new claim. *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999) and *Hatzel & Buehler, Inc. v. Station Plaza Assocs., L.P.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993).

## I. The 3AC Amended Claims are untimely new claims and must be expunged.

34.    The 3AC Amended Claims for (1) the May 5, 2022 transfer of $29M and (2) the grant of the alleged "new security interest" in the Canaccord account are new claims filed by 3AC after the Court's Bar Date.

35.    If a court determines that a party is not seeking to amend a timely filed claim but rather is asserting a *new* claim, the court must consider such motions under the standards for filing a late claim pursuant to Bankruptcy Rule 9006(b)(1), which provides in relevant part: "[w]hen an act is required or allowed to be done at or within a specified period ... the court for cause shown may at any time ... permit the act to be done where the failure to act was the result of excusable neglect." *In re G-I Holdings, Inc.*, 514 B.R. 720, 756 (Bankr. D.N.J. 2014), subsequently a*ff'd sub nom.*, *In re G–I Holdings Inc*, 654 F. App'x 571 (3d Cir. 2016).

36.    The JLs were appointed in July 2022. The Claims Bar Date was March 31, 2023. The JLs had 8 months to collect and review documents to assert a timely claim, and their failure to do so is not "excusable neglect." The JLs expressly stated in the 3AC Initial Addendum in March 2023 that "the Joint Liquidators are aware of multiple other transactions between and among Three Arrows and the Debtors, which may include additional lending transactions between Three Arrows and the Debtors that could constitute the basis for additional claims by Three Arrows and its estate against the Debtors." 3AC Initial Addendum ¶ 6. The JLs' failure to include any of those multiple other transactions by the Claims Bar Date is fatal to now adding those claims six months later to the extreme detriment of the BlockFi estate's creditors.

## II. Even if the Court allows the amendment, the new claims do not relate back.

37.    When an amended claim is filed after the applicable bar date it will only be considered timely if it meets the "relation back" standards under Civil Rule 15(c)(1)(B), which

states that "an amendment…relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B).

38.     "A factual nexus must exist between the conduct or transactions alleged in the amendment and those alleged in the original pleading." *In re Circle Y of Yoakum, Texas*, 354 B.R. 349, 357 (Bankr. D. Del. 2006). Courts have found a factual nexus where a series of payments are made in equal amounts at uniform periodic intervals. *See Brandt v. Gerardo (In re Gerardo Leasing, Inc.),* 173 B.R. 379, 390 (Bankr. N.D. Ill.1994) (concluding that a stream of weekly payments of $1,500 were sufficiently related to permit amendment to relate back to the original complaint). The JLs cannot demonstrate a factual nexus here – these are not periodic uniform payments.

39.     The 3AC Amended Claims assert two new alleged preference transfers: (1) the May 5, 2022 transfer of $29M and (2) the grant of the alleged "new security interest" in the Canaccord account. Neither basis for the alleged preferences were pled in the 3AC Initial Claims. The bases of these two new claims are "different essential facts giving rise to different alleged recoveries." *In re MBC Greenhouse, Co.*, 307 B.R. 787, 793 (Bankr. D. Del. 2004). As the *MBC* Court noted, "[a]side from their characterization as preferential transfers and similar payees there is no commonality between" the originally claimed transactions and these two new transactions. *Id.*

40.     The Debtors had no notice of the JLs' complaint about these transactions prior to filing the 3AC Amended Claims and these new claims increased the total asserted amount of the 3AC claim significantly. The JLs do not make any attempt to connect these events to anything pled in the 3AC Initial Claims or to any of the specific loans or pledges at issue.

41.    If the Court allows the JLs to amend the 3AC Initial Claims, the Court must reject the two newly asserted allegedly preferential transfers included in the 3AC Amended Claims since they do not properly relate back to the 3AC Initial Claims.

**B.    The Potential U.S. Preference Claims and 3AC's Reservation of Rights**

42.    The Claims Bar Date enables parties to a bankruptcy case to identify claims and the dollar amount of those claims.  "It is akin to a statute of limitations and must be strictly observed." *In re Energy Future Holdings Corp.*, 619 B.R. 99, 108 (Bankr. D. Del. 2020).

43.    The JLs attempt to reserve claims for some future time by reserving "their rights to bring any other claims against the Debtors that they may uncover based on ongoing discovery." 3AC Amended Addendum, ¶ 3. The 3AC Amended Addendum contains three full pages of alleged reservations. *See* 3AC Amended Addendum ¶¶ 41–50.

44.    Despite having tried, and failed, to initiate a Chapter 11 proceeding by filing an application with the BVI Court, the JLs nonetheless argue that they should be allowed to preserve potential preference claims based on the U.S. Bankruptcy Code in perpetuity. The JLs' ability to bring such claims, however, is contingent on 3AC becoming a Chapter 11 debtor in the U.S., and all indications are that this is very unlikely to occur any time soon, if at all. The BlockFi Plan has gone effective, and the Wind-Down Debtors are now working to carry out the terms of same. This Court should not permit the JLs to thwart this process with an open-ended ability to assert future avoidance actions or other claims against the BlockFi estate.

45.    The 3AC Amended Addendum refers to various other claims and causes of action that the JLs seek to preserve in their extensive reservation of rights. Their repeated pleas to infinitely extend an already expired Claims Bar Date and hold up distributions under the Plan because they are operating at a severe informational deficit should not continue to prejudice the

BlockFi creditors. The purpose of the Claims Bar Date is finality. That date has come and gone. It would be an extreme hardship to the Wind-Down Debtors' and especially to BlockFi's creditors to allow the reservation of rights for further amendments to the 3AC Claims. Allowing such a reservation would be especially troubling given the JLs' failure to establish any legal right to a distribution from BlockFi. As detailed more fully within, all of the 3AC Claims – both new, old, actual, and potential should be disallowed and the filed claims expunged.

     **C. The 3AC Amended Claims lack any evidentiary support, are not *prima facie* valid, and fail on the merits.**

     46.     The 3AC Amended Claims consist of preference claims under BVI law, a claim for repayment of a loan allegedly made to BlockFi by 3AC, and "potential" preference claims that the JLs could only bring if 3AC successfully appeals the BVI Court's decision and is allowed to become a debtor in a Chapter 11 proceeding (*see supra*, Section B.). The JLs have failed to allege facts or provide any evidentiary support for the 3AC Amended Claims to be prima facie valid, let alone to succeed on the merits.

     **I. The 3AC Preference Claims fail under BVI law.**

     47.     The 3AC Preference Claims fail for several reasons. Section 245 of the BVI Insolvency Act governs unfair preferences. The relevant provisions are as follows:

> (1) Subject to subsection (2), a transaction entered into by a company is an unfair preference given by the company to a creditor if the transaction—
>     (a) is an insolvency transaction;
>     (b) is entered into within the vulnerability period;[8] and
>     (c) has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the

---

[8] Section 244 states that "'vulnerability period' means—  (a) for the purposes of sections 245, 246 and 247— (i) in the case of a transaction entered into with, or a preference given to, a connected person, the period commencing 2 years prior to the onset of insolvency and ending on the appointment of the administrator or, if the company is in liquidation, the liquidator; and  (ii) in the case of a transaction entered into with, or a preference given to, any other person, the period commencing six months prior to the onset of insolvency and ending on the appointment of the administrator or, if the company is in liquidation, the liquidator;"

position he or she would have been in if the transaction had not been entered into.

(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business.

(4) Where a transaction entered into by a company within the vulnerability period has the effect specified in subsection (1)(c) in respect of a creditor who is a connected person, unless the contrary is proved, it is presumed that the transaction was an insolvency transaction and that it did not take place in the ordinary course of business.

48.     Section 244 states that:

(2) [a] transaction is an insolvency transaction if—(a) it is entered into at a time when the company is insolvent; or (b) it causes the company to become insolvent. (3) For the purposes of subsection (2), "insolvent" has the meaning specified in section 8(1) with *the deletion* of paragraph (c)(i). (emphasis added)

49.     Therefore, applying Section 244's express deletion of one of two tests for

insolvency, Section 8(1) states that

A company or a foreign company is insolvent if— (a) it <u>fails to comply with the requirements of a statutory demand</u> that has not been set aside under section 157; (b) <u>execution or other process issued on a judgment</u>, decree or order of a Virgin Islands court in favour of a creditor of the company is returned wholly or partly unsatisfied; or (c) either— (i) ~~the value of the company's liabilities exceeds its assets~~; or (ii) <u>the company is unable to pay its debts as they fall due</u>. (emphasis added and statutorily deleted section struck out).

50.     The JLs fail to plead that 3AC was unable to pay its debts as they fell due at the

time of the alleged preferential transfers to BlockFi. The JLs also fail to allege or provide support

for any date when such inability actually occurred. In fact, the JLs have provided this Court with

no evidence related to 3AC's alleged insolvency. The JLs have had ample time to collect and

review information (the JLs have produced more than 500,000 pages to BlockFi from 3AC's fund

administrator). Their complete lack of evidence aside, even the unfounded allegations in the 3AC

Amended Claim relate only to the very "balance sheet test"—whether a company's liabilities

exceed its assets—that BVI law has expressly and specifically excluded as a method of determining insolvency for the purposes of BVI preference law.

51.    The reason for the JLs' focus on the balance sheet is clear—they cannot meet the actual standard under BVI law by demonstrating that (i) 3AC was unable to pay its debts as they fell due or (ii) the date of such inability is much later than asserted and encompasses far fewer transactions than currently alleged.

52.    A statutory demand (a device outlined in Section 155 of the BVI Insolvency Act that precedes an application for the appointment of a liquidator under BVI law) was filed against 3AC—but not until June 21, 2022. As more fully detailed in the *First Affidavit of Kyle Livingston Davies* (the "Davies Affidavit") in support of 3AC's application for liquidation in the BVI—default letters only began to arrive in mid-June 2022.

53.    To establish that an alleged transfer was preferential under BVI law, the JLs must show that *each* transaction took place at a time when 3AC was insolvent and *each* transaction took place outside of the ordinary course of business. Rather than identifying anything specific, the JLs point vaguely to "the deterioration of market conditions" in the cryptocurrency market in general between November 2021 and May 2022. 3AC Amended Addendum ¶ 16. The JLs provide no specifics about how this decline affected 3AC or caused it to become insolvent prior to May 5, 2022. Most importantly, there are no facts that assert that the "deterioration" caused 3AC to be unable to pay debts as they came due.

54.    Although the relevant test for insolvency is a "cash flow" rather than "balance sheet" test, the only details given regarding 3AC's exposure to the crypto market concern its allegedly "substantial investment" in the Luna token, and the JLs explicitly acknowledge that May

18

6, 2022 was the day of "the most precipitous declines in the price of Luna." 3AC Amended Addendum ¶ 15.

55.     The JLs state that as of May 5, 2022 (coincidentally the same date as the newly asserted $29MM payment from 3AC to BlockFi) 3AC's "liquid assets" were about $183.5MM less than the total amounts owed under six unidentified master loan agreements. 3AC Amended Addendum ¶ 28. No supporting detail is provided. The JLs assert that 3AC had certain loans and agreements outstanding, but it is unclear whether: (i) 3AC defaulted on any of the unidentified agreements; (ii) those agreements were uncollateralized or under-collateralized, and (iii) any default automatically accelerated the loans or simply rendered them callable. Most importantly, the JLs fail to assert that any of the lenders on the other side of these agreements had accelerated or called the loans. Genesis and Voyager, two of 3AC's largest lending counterparties, did not declare a default on their loans with 3AC until June 2022.[9]

56.     The JLs provide no specifics or evidence to back up their insolvency assertion. The mere fact that the value of 3AC's holdings in GBTC or Luna fell, standing alone, means nothing.

57.     The JLs cherry-pick numbers and dates, and make pronouncements of what could have happened (but apparently did not) to turn a haphazard balance sheet analysis into an assertion that 3AC was "in effect insolvent at any point." *Id*. No evidence is presented that 3AC was unable to pay its debts as they came due in early-May of 2022 or on any other date. As such, the JLs have failed to establish a key element of their asserted preference claims.

---

[9] *See In re Voyager Digit. Holdings, Inc.*, No. 22-10943, ECF No. 863 at 61 (Bankr. S.D.N.Y. Jan. 13, 2023) ("[O]n June 24, 2022, Voyager issued a notice of default and acceleration to 3AC."); *In re Genesis Global Holdco, LLC, et al.*, No. 23-10063, ECF. No. 658 at 125 (Bankr. S.D.N.Y. Sept. 1, 2023) ("3AC continued to request extensions of new loans and continued to meet all of its obligations under the MLAs until June 13, 2022.").

58.     Despite continuing to characterize ordinary course as an "affirmative defense," it is clear from a plain reading of the statute that it is an element of the claim itself. Thus, it is the *JLs' burden* to show that the transfers were outside of the ordinary course in order to plead a *prima facie* claim. Only in situations where the transferee is a "connected person" is there a presumption that the transaction was outside the ordinary course of business. *See* BVI Insolvency Act, Section 245(4).

59.     The JLs have neither cited nor presented this Court with anything to demonstrate that the complained-of payments were outside the ordinary course of business.

60.     The JLs ignore the actual relationship between BlockFi Lending and 3AC.  BlockFi Lending issued margin calls that 3AC met frequently, starting in May 2019 and continuing through the three-year prepetition period. 3AC also paid interest on the outstanding loans every month. Collateral was posted, exchanged, and released throughout the three-year relationship. Finally, 3AC entered into more than 200 loans with BlockFi Lending—yet all but a few were fully paid off before the relationship ended. None of the transfers complained of by the JLs were outside the "ordinary course." As such, the JLs have failed to establish yet another element of a preference claim under BVI law.

61.     The JLs point only to a single line in the Official Committee of Unsecured Creditors (the "UCC") report (the "UCC Report") that stated that BlockFi "knew or should have known" that 3AC was "perilously close to collapse" as a result of the collapse of the Luna token. 3AC Amended Addendum ¶ 19, 31. No evidentiary support is offered for this statement nor was a date even suggested as to when the presumed insolvency would occur. The JLs fail to explain why BlockFi Lending should have known that 3AC—a party that continued to meet its obligations by

paying its loans and interest and by meeting margin calls—was purportedly on the verge of collapse.

62.    The UCC opined that BlockFi "knew or should have known that UST and LUNA were substantial components of 3AC's investment portfolio and that 3AC was perilously close to collapse" when BlockFi lent money to 3AC between May 15–May 27, 2022. UCC Report, Docket No. 1202, p. 52. The UCC Report cited only to a ***public news article*** that simply states that 3AC invested in a large amount of Luna token. Neither the article nor the UCC Report (or the 3AC Amended Addendum) quantifies how "substantial" a component the investment was. The UCC Report focused on the risk involved in the loans—not that BlockFi knew about 3AC's financial state.    The JLs fail to connect the dots. Even if BlockFi Lending somehow knew 3AC had significant Luna holdings, nothing supports the conclusion that 3AC was on the brink of insolvency—especially when 3AC continued to pay loans and interest and meet margin calls until June 11, 2022.

63.    Finally, the JLs are required to demonstrate that the alleged payments put BlockFi Lending in a better position than it would have been if the transfers were not made.    While the 3AC Amended Claims summarily make that statement—there are no facts or evidence to support this element.

64.    Despite thousands of pages of documents provided by BlockFi and over 16 months of investigation, the JLs have failed to offer any supporting evidence that the alleged preference payments took place when 3AC was cash flow insolvent, that the transfers in question were outside the ordinary course of the business relationship, or that they put BlockFi Lending into a better position that it would have been in otherwise. The JLs have not and cannot meet the requirements

to prove a preference claim under BVI law; therefore, the 3AC Preference Claims should be disallowed in full.

## II. <u>The 3AC Loan Repayment Claim fails as a matter of law.</u>

65.     The JLs state that "upon information and belief" the Debtors did not repay the BTC Loan and 3AC "dissipated"[10] the ETH collateral backing the loan. *See* 3AC Amended Addendum ¶ 35. The 3AC Loan Repayment Claim is valued at "not less than $10.4MM" and is based on pricing of BTC and ETH on June 27, 2022. *Id.* The price of ETH ranged from approximately $3200 when the loan was issued to approximately $1200 on the date the JLs have decided to value the collateral.[11] The JLs have not provided any evidentiary basis for this claim—nothing establishes the loan, the "dissipation," or any payments made on the loan.  The JLs further fail to acknowledge the fact that if the collateral was "dissipated" without notice to BlockFi Lending, then 3AC breached the parties' agreement.

### D.    The 3AC Initial Claims purport to be amended by the 3AC Amended Claims.  If the Court allows the amendment, the Initial Claims should be disallowed.

66.     Each of the 3AC Amended Claims has been filed as an amendment to the 3AC Initial Claim asserted against the same debtor entity. Article VII, Section G of the confirmed Plan authorizes the Wind-Down Debtors to expunge claims that have been amended or superseded; however, given the litigious relationship between 3AC and BlockFi, coupled with the fact that the JLs' amendments are untimely and raise new substantive claims not identified in the 3AC Initial Claims, the Wind-Down Debtors seek Court approval to direct Kroll to remove all 16 duplicative claims from the claims registry. The 3AC Initial Claims should be expunged as superseded by the

---

[10] To the extent that 3AC "dissipated" the collateral for the BTC Loan, said action was undertaken in breach of the loan agreement and without notice to the Debtors.

[11] COINDESK, *Ethereum Price*, https://www.coindesk.com/price/ethereum/ (last visited Oct. 19, 2023).

3AC Amended Claims. Further, as set forth below, the duplicative claims against the wrong Debtor

entities should similarly be expunged.

**E.  The 3AC Amended Claims are duplicative and asserted against debtor entities with which 3AC had no relationship.**

67.    The 3AC Amended Claims filed against any entity other than BlockFi Lending

LLC should be disallowed and expunged from the claims registry as duplicative and asserted

against the incorrect debtor entity. Despite filing a proof of claim against each debtor entity, the

3AC Amended Addendum makes clear that the Loans and all related agreements and pledges were

between 3AC and BlockFi Lending LLC. No other Debtor entity is mentioned by name in the 3AC

Amended Addendum. As such, the Wind-Down Debtors request that the proofs of claim filed

against the debtor entities other than BlockFi Lending LLC be disallowed and expunged.[12] Again,

the confirmed Plan authorizes the expungement of duplicative and late filed claims without the

need to file an objection or take other action with the Court. See Plan, Art. VII, § G. Out of an

abundance of caution the Wind-Down Debtors seek Court approval to direct Kroll to expunge the

16 duplicative claims from the claims registry.

**F.  The Debtors have multiple defenses to the 3AC Amended Claims.**

68.    The 3AC Amended Claims are insufficiently pled and suffer from a fatal lack of

evidentiary support. Even if the Court were to allow a portion of the 3AC Amended Claims, the

Debtors have multiple substantive defenses to assert against any potential recovery by 3AC,

including the safe harbor defense under Section 546 of the Bankruptcy Code.

69.    The Debtors further assert their rights to seek equitable subordination of any

allowed claims and to setoff any allowed claims by the amount of BlockFi Lending's deficiency

---

[12] The following 3AC Amended Claims are asserted against the other debtor entities: 33518, 33519, 33520, 33521, 33523, 33524, 33525, 33526. Claim number 33522 is asserted against BlockFi Lending LLC.

claim against 3AC.[13] The Debtors reserve all rights to fully address each of these defenses if the Court allows any of the 3AC Amended Claims. See Plan, Art. III, § 20 (specifically providing the Wind-Down Debtors with the right to seek equitable subordination of any "Allowed 3AC Claims pursuant to section 510(c) of the Bankruptcy Code.").

## Conclusion

70.     Despite the amount of time the JLs have had to investigate 3AC's business dealings, the documents received from the Debtors, and the unauthorized opportunity to amend their proofs of claim, the 3AC Amended Claims still lack a factual or evidentiary basis to assert that the Wind-Down Debtors owe anything to the 3AC estate. To prevent any further use of estate resources to defend against these meritless and unsupported allegations, the Wind-Down Debtors respectfully request that this Court disallow all asserted 3AC Claims in their entirety.

## Reservation of Rights

71.     The Wind-Down Debtors reserve their right to object to the 3AC Amended Claims on any other grounds and to amend or supplement this Objection after further investigation and discovery. This Objection does not affect the rights of the Wind-Down Debtors to assert affirmative claims or causes of action against any claimant and nothing herein shall constitute a waiver or release of those rights. Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Wind-Down Debtors, (b) a waiver of the Wind-Down Debtors' rights to dispute any particular claim on any grounds or to

---

[13] Even if the JLs are somehow able to successfully appeal the decision of the BVI Court and initiate a Chapter 11 proceeding in order to bring U.S. Preference Claims under Section 547 of the Bankruptcy Code, the Debtors would assert all defenses provided under Section 547, including, but not limited to, the contemporaneous new value defense and the ordinary course of business defense under Section 547(c)(1) and (2).

assert any affirmative defense(s) against such claim, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Wind-Down Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Wind-Down Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Objection are valid, and the Wind-Down Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any transfer made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Wind-Down Debtors' rights to subsequently dispute such claim.

### Separate Contested Matters

72.     Each of the disputed 3AC Claims constitutes a separate contested matter pursuant to Bankruptcy Rule 9014. The Wind-Down Debtors respectfully request that any order entered by the Court with respect to an objection asserted in this Objection be deemed a separate order with respect to each of the disputed 3AC Claims.

### Waiver of Memorandum of Law

73.     The Wind-Down Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Wind-Down Debtors rely is set forth herein and the Objection does not raise any novel issues of law.

**No Prior Request**

74.    No prior request for the relief sought in this Objection has been made to this Court or any other court.

**Notice**

75.    The Wind-Down Debtors will provide notice of this Objection to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) the attorneys general in the states where the Debtors conduct their business operations; (e) counsel for the Committee; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (g) the JLs for 3AC, which is the claimant listed on Schedule 1 attached to the Proposed Order and their counsel of record (collectively, the "Notice Parties"). The Wind-Down Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

Dated: October 25, 2023

Respectfully Submitted,

/s/ Daniel M. Stolz
_____

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Jeffrey L. Jonas, Esq. (admitted *pro hac vice*)
Michael S. Winograd, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com

*Counsel to the Plan Administrator*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Aimee M. Furness (admitted *pro hac vice*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Jeffrey L. Jonas, Esq. (admitted *pro hac vice*)
Michael S. Winograd, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com

*Counsel to the Plan Administrator*

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al.*,<br>　　　Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br><br>**Hearing Date and Time:**<br>**February 5–6, 2023 @ 10:00 a.m. (ET)** |

## ORDER GRANTING OMNIBUS OBJECTION TO THE 3AC AMENDED CLAIMS

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

(Page 2)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING OMNIBUS OBJECTION TO THE 3AC AMENDED CLAIMS |

The relief set forth on the following pages, numbered two (2) through five (5) and <u>Schedule</u>

<u>1</u> is **ORDERED**.

(Page 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING OMNIBUS OBJECTION TO THE 3AC AMENDED CLAIMS |

Upon consideration of the *Omnibus Objection to Amended Claims of Three Arrows Capital, Ltd.* (the "Objection")[1]; and the Court having jurisdiction to consider the Objection and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been provided; and it appearing that no other or further notice need be provided; and it appearing that no other or further notice of the Objection need be provided; and all responses, if any, to the Objection having been withdrawn, resolved, or overruled; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Debtors, their respective estates and creditors, and all parties-in-interest; and the Court having determined that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and upon the record herein, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The Objection is SUSTAINED as set forth herein.

2.      The 3AC Claims listed on Schedule 1 attached hereto are hereby deemed disallowed.

3.      Kroll Restructuring Administration LLC (the "Claims and Noticing Agent") is hereby authorized and directed to expunge each 3AC Claim on Schedule 1.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

(Page 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING OMNIBUS OBJECTION TO THE 3AC AMENDED CLAIMS |

4.      The Wind-Down Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

5.      The terms, conditions, and provisions of this Order shall be immediately effective and enforceable upon its entry.

6.      Notwithstanding anything to the contrary in the Objection, this Order, or any findings announced at the hearing, nothing in the Objection, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

7.      Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Wind-Down Debtors, (b) a waiver of the Wind-Down Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Wind-Down Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Wind-Down Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Objection are valid, and the Wind-Down Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any transfer made pursuant to the Court's Order is not intended and should

(Page 5)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING OMNIBUS OBJECTION TO THE 3AC AMENDED CLAIMS |

not be construed as an admission as to the validity of any particular claim or a waiver of the Wind-Down Debtors' rights to subsequently dispute such claim.

8.      The objection to each Disputed Claim addressed in the Objection and as set forth on **Schedule 1** attached hereto constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014. This Order shall be deemed a separate order with respect to each claim that is the subject of the Objection and this Order. Any stay of this Order pending appeal by any claimants whose claims are subject to this Order shall only apply to the contested matter that involves such claimant and shall not stay the applicability and/or finality of this Order with respect to any other contested matters addressed in the Objection and this Order.

9.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Objection or is otherwise waived.

10.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.