| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>Wind-Down Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2]) |

# WIND-DOWN DEBTORS' REPLY TO
# GEORGE WYNNS'S OBJECTION AND RESPONSE TO
# DEBTORS' TENTH OMNIBUS OBJECTION TO CERTAIN CLAIMS

---

[1] The Wind-Down Debtors in these Chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is 100 Horizon Center Blvd., 1st and 2nd Floors, Hamilton, NJ 08691.

[2] On October 3, 2023, the Court entered an order confirming the Plan (defined below). Unless otherwise indicated, capitalized terms used but not defined in this Reply shall have the meanings ascribed to them in the Plan.

1

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Wind-Down Debtors' Reply to George Wynns's Objection and Response to Debtors' Tenth Omnibus Objection to Certain Claims* (the "Reply") in response to George S. Wynns's ("Mr. Wynns") *Objection and Response to Debtors' Tenth Omnibus Objection to Certain Claims* (the "Wynns Response") [Docket No. 1633], *Affidavit of Secured Creditor George Wynns in Support of Creditor's Objection to Debtors' Tenth Omnibus Objection to Certain Claims* (the "Wynns Certification") [Docket No. 1652], and *Motion of Secured Creditor George Wynns For Return of His 4.22 Bitcoin in Exchange for Owed Upon Loan* (the "Wynns BTC Motion," together with the Wynns Response and Wynns Certification, collectively, the "Wynns Pleadings") [Docket No. 1741], all filed in connection with the *Debtors' Tenth Omnibus Objection To Certain Claims* (the "Tenth Omnibus Objection"). In support of the Reply, the Wind-Down Debtors respectfully represent as follows:

**Preliminary Statement**[3]

1. Mr. Wynns seeks relief that contradicts the terms of the Plan and Confirmation Order and applicable bankruptcy and state law. Mr. Wynns asks this Court to, in effect, treat him as a secured creditor and afford him priority in repayment over all other creditors with similar claims for return of deposited assets.

2. Not only is the relief sought unlawful and grossly unfair to creditors, it is simply inappropriate as a matter of due process: Mr. Wynns does not materially dispute the terms of his

---

[3] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings provided in the remainder of this Reply.

2

loan agreement with the Debtors or the amount of collateral deposited, he disputes the treatment of his claims as set forth in the Plan.  But Mr. Wynns was afforded ample notice of his right and opportunity to object to the Plan.  He did not file a timely objection to the Plan or appear at the Combined Hearing to object to the Plan. Accordingly, Mr. Wynns waived any objections and cannot seek different or better treatment under the Plan at this time.

3. The Tenth Omnibus Objection proposes to correct the claims register by allowing Wynns Proof of Claim 1324 as a Class 3-e Claim and 3052 as a Class 3-b Claim in accordance with the Plan and expunging the remaining duplicative Wynns Proofs of Claim. The Court should enter an Order sustaining the Tenth Omnibus Objection with respect to the Wynns Claims, overruling the Wynns Response, and denying any relief sought in the Wynns BTC Motion or Wynns Certification.

## Factual Background

I. **The Wynns Proofs of Claim and Tenth Omnibus Objection Thereto**

4. On the dates listed below, Mr. Wynns filed six duplicate proofs of claim (the "Wynns Proofs of Claim") asserting the following claims (collectively, the "Wynns Claims"):

| Claim No. | Amount | Status | Date Filed | Filed Debtor Entity |
|---|---|---|---|---|
| 1324 | $79,180.00 | Secured | 1/10/2023 | BlockFi Inc. |
| 3052 | $79,180.00 | Secured | 2/14/2023 | BlockFi Trading LLC |
| 3061 | $79,180.00 | Secured | 2/14/2023 | BlockFi Ventures LLC |
| 3067 | $79,180.00 | Secured | 2/14/2023 | BlockFi Lending II LLC |
| 3071 | $79,180.00 | Secured | 2/14/2023 | BlockFi Wallet LLC |
| 3072 | $79,180.00 | Secured | 2/14/2023 | BlockFi Services LLC |

5. The Wynns Claims arise from and relate to two Loan and Security Agreements dated April 29, 2022 and May 3, 2022, by and between George Wynns, as Borrower, and BlockFi Lending LLC ("BlockFi Lending"), as Lender (the "Wynns Loan Agreements"). Pursuant to the Wynns Loan Agreements, Mr. Wynns borrowed $42,060.33 of principal from BlockFi Lending

3

and has a total outstanding balance in the same amount as of the date hereof (the "Wynns Loans"). Mr. Wynns pledged 3.04 bitcoin ("BTC") as collateral to secure the Wynns Loans (the "Wynns Collateral").

6. The Wynns Loan Agreements set a loan to value ratio (the "LTV") of less than 70%. In practical terms, the LTV requirement meant that if the value of BTC declined, BlockFi would issue a margin call requiring Mr. Wynns to deposit BTC such that his outstanding principal obligation was less than 70% of the value of deposited BTC. Over the term of the Wynns Loans, BlockFi did issue margin calls, and in response Mr. Wynns did pledge additional BTC to backstop the Wynns loans. As of the Petition Date, Mr. Wynns had pledged 4.209 BTC, with a value at then-prevailing exchange rates of $68,213.10.

7. Section 4(d) of the Wynns Loan Agreements govern BlockFi Lending's rights with respect to the Wynns Collateral and includes the following provision:

> Borrower agrees that Lender may, for its own account, pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer or use any amount of such Collateral, separately or together with other property, with all attendant rights of ownership from time to time, without notice to the Borrower any or all of the Collateral and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral.

Wynns Loan Agreements § 4(d).

8. On September 1, 2023, BlockFi filed the Tenth Omnibus Objection, which sets forth the proposed treatment of the Wynns Proofs of Claim, as follows:[4]

| Claim No. | Proposed Treatment | Estate Debtor Entity |
|---|---|---|
| 1324 | Allowed as $1,999.79 Class 3-e Claim | BlockFi Inc. |
| 3052 | Allowed as $68,213.10 Class 3-b Claim | BlockFi Lending LLC |
| 3061 | Expunged | N/A |
| 3067 | Expunged | N/A |
| 3071 | Expunged | N/A |

---

[4] The following table is provided for summary purposes only. In the event of a conflict between the information presented in this summary and the Tenth Omnibus Objection, the contents of the Tenth Omnibus Objection shall control.

4

| Claim No. | Proposed Treatment | Estate Debtor Entity |
|---|---|---|
| 3072 | Expunged | N/A |

9. The Tenth Omnibus Objection also includes as a basis for objection to the Wynns Proofs of Claim the designation "IC," which stands for incorrect classification, to denote that the Wind-Down Debtors object to the assertion of secured status on the Wynns Proofs of Claim.

10. On September 8 and 11, 2023, the Wind-Down Debtors' claims agent, Kroll Restructuring Administration LLC ("Kroll"), served the Tenth Omnibus Objection on Mr. Wynns via first-class mail and email, respectively. *See Affidavit of Service* [Docket No. 1588].

11. The Wind-Down Debtors' have confirmed with Kroll that the mailing address on record for Mr. Wynns is the same as the mailing address he has indicated on the Wynns Pleadings. The Wind-Down Debtors' have similarly confirmed that the email address on record is the same as the one Mr. Wynns has been using to communicate with counsel.

**II.    Service of the Plan, Disclosure Statement, Combined Hearing Notice and Notice of the Plan Objection Deadline on Mr. Wynns**

12. On August 2, 2023, the Court entered its *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 1306] (the "Conditional Disclosure Statement Order") establishing, among other things, certain solicitation and voting tabulation procedures regarding the Plan and Disclosure Statement (the "Solicitation Procedures").

13. On August 3, 2023, the Wind-Down Debtors filed their (i) *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1309] (as amended, modified, or supplemented from time to time, the "Plan") and (ii) *Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi*

5

*Inc. And Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1310] (as amended, modified, or supplemented from time to time, the "Disclosure Statement").

14. The Plan classifies Claims 1324 and 3052 (the "Wynns Claims"), respectively, into Classes 3-e and 3-b, which are BlockFi Inc. Interest Account Claims and BlockFi Lending LLC Loan Collateral Claims.

15. Moreover, the Plan provides that "[a]s is required by Section 502(b) of the Bankruptcy Code, each Account Holder's Claim is determined by the fair market value of the Digital Assets (based in [USD] pursuant to the Digital Assets Conversion Table) held by the Account Holder at the Debtors as of the Petition Date at 11.59 p.m. UTC." Plan Art. VI § F.

16. The treatment of Class 3-e Claims is set forth in detail in the Plan and states that claimants holding claims in Class 3-e will receive a pro-rata distribution of the dollarized value amount of their claim in either digital assets or cash. Plan Art. III § C.7.

17. The treatment of Class 3-b Claims is set forth in detail in the Plan and states that claimants holding claims in Class 3-b may elect to voluntarily opt into the Loan Repayment Treatment to repay their loan and receive cryptocurrency *in the value of the loan repayment amount*. Those claimants will then receive a pro-rata distribution of the remaining dollarized value of their collateral in either digital assets or cash according to the terms of the confirmed Plan. Claimants who do not elect the Loan Repayment Treatment will have the outstanding loan balance set off against the dollarized value of their claim and they will receive a pro-rata distribution on the remaining claim amount in either digital assets or cash according to the terms of the confirmed Plan. Plan Art. III § C.4.

18. Following the entry of the Conditional Disclosure Statement Order, Kroll distributed Solicitation Packages (including Ballots) to Holders of Claims entitled to vote on the

Plan, including Mr. Wynns. *See Affidavit of Service* [Docket No. 1573]; *Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1607] (the "Solicitation Affidavit") at 2 ¶ 4.

19. On August 7, 2023, Ms. Tami Bacon, a Principal Clerk of the Publisher of The New York Times, published a copy of the Combined Hearing Notice, which provided notice of, among other things, the Plan objection deadline on September 11, 2023 (the "Plan Objection Deadline"), and the combined hearing on final approval of the Disclosure Statement and confirmation of the Plan on September 26, 2023 (the "Combined Hearing"), in the New York and National editions of the New York Times. *See Proof of Publication* [Docket No. 1333].

20. On August 8, 2023, Kroll served a copy of the Combined Hearing Notice on Mr. Wynns via email. *See Affidavit of Service* [Docket No. 1573].

21. On September 11, 2023, the Plan Objection Deadline passed. Mr. Wynns did not file an objection to confirmation of the Plan on the Court's docket or otherwise notify the Wind-Down Debtors or their counsel of any objection to confirmation of the Plan by the Plan Objection Deadline.

22. On September 26, 2023, the Court held the Combined Hearing. Mr. Wynns did not appear at the Combined Hearing or otherwise object to the Plan.

23. On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi*

*Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming the Plan, which went effective on October 24, 2023 [Docket No. 1788]. The Confirmation Order includes the Court's finding that the Debtors provided adequate notice of, among other things, the Plan, Solicitation Packages and Combined Hearing Notice. Confirmation Order at 11 ¶ 8.

### III.     Wynns's Response to the Tenth Omnibus Objection and Other Related Filings

24.     On October 2 and 3, 2023, Mr. Wynns filed the Wynns Response and the Wynns Certification, respectively.

25.     On October 16, 2023, Mr. Wynns filed the Wynns BTC Motion.

26.     The Wynns Pleadings seek the return of the Wynns Collateral in full, in kind, upon his payment of the outstanding balance of the Wynns Loans.

27.     On October 30, 2023, the Wind-Down Debtors filed their *Wind-Down Debtors' Objection to Motion of Secured Creditor George Wynns for Return of his 4.22 Bitcoin in Exchange for Owed Upon Loan* [Docket No. 1811] (the "Objection to Wynns BTC Motion"), in which the Wind-Down Debtors object to the relief sought in the Wynns BTC Motion and note, among other things, that the Wynns BTC Motion does not add any material facts or substantive arguments to those set forth in the Wynns Response and Wynns Certification.

### Reply

28.     The bulk of Mr. Wynns claims are, indisputably, claims against BlockFi Lending LLC in respect of obligations under the Wynns Loan Agreements, which "constitute[] a retail…advance under the Loan Program."  In other words, *by definition* under the Plan, Mr. Wynns has a "BlockFi Lending LLC Loan Collateral Claim" entitled to treatment pursuant to Class

8

3-b and Distribution as otherwise provided therein. *See* Plan Art. I.53. Mr. Wynns should receive exactly his entitlement under the Plan, nothing more or less.[5]

29. Notwithstanding the Plan – to which Mr. Wynns did not object – Mr. Wynns asks to be treated as a secured creditor of BlockFi Lending. But Mr. Wynns is not a secured creditor. Mr. Wynns, and all loan customers, agreed to allow BlockFi Lending to act with all attendant rights of ownership as to their collateral in order to obtain lump sum payments in USD. Under the contract and governing law, upon BlockFi's default such claimants receive an unsecured claim for the return of the collateral. Again, the Plan affords such treatment, and provides the Loan Repayment Treatment as an alternative. That is all Mr. Wynns can receive.

**I.    The Loan Agreements Entitle Wynns to an Unsecured Claim for Return of Deposited Property.**

30. The competing property rights of the Debtors and their creditors are determined by state law; in this instance, by the agreements reached between the Debtors and Mr. Wynn concerning the parties' respective rights in deposited Digital Asset collateral. *See In re Celsius Network LLC*, 647 B.R. 631, 651 (Bankr. S.D.N.Y. 2023), *leave to appeal denied*, No. 23-CV-523 (JPO), 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023); *Secure Leverage Grp., Inc. v. Bodenstein*, 558 B.R. 226, 237 (N.D. Ill. 2016), *aff'd sub nom. In re Peregrine Fin. Grp., Inc.*, 866 F.3d 775 (7th Cir. 2017), *as amended* (Aug. 8, 2017); *see also Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). As discussed below in detail, the Wynns Loan Agreements afford

---

[5] Mr. Wynns also has a "BlockFi Inc. Interest Account Claim" entitled to treatment pursuant to Class 3-E and Distribution as otherwise provided herein. *See* Plan Art. I.44. He does not appear to dispute the Wind-Down Debtors' treatment of this claim.

property rights in the collateral to the Debtors such that, upon default, Mr. Wynns is afforded only an unsecured claim for their return.

31. The language of the Wynns Loan Agreements makes abundantly clear that BlockFi Lending possessed the right to "pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer any amount" of the Wynns Collateral "with all attendant rights of ownership" without notifying Mr. Wynns of such actions and without any requirements to retain the Wynns Collateral or a like amount of the Wynns Collateral in "its possession or control…" Wynns Loan Agreements § 4d.

32. Courts addressing similar issues with respect to rehypothecated collateral deposits have concluded that such posted collateral is property of the estate, and the obligation to return a like amount of cash or property is a monetary debt that entitles the creditor to an unsecured claim against the estate. *See, e.g., FirstBank Puerto Rico v. Barclays Capital Inc. (In re Lehman Brothers Holdings, Inc.)*, 492 B.R. 191, 195 (Bankr. S.D.N.Y. 2013), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 526 B.R. 481 (S.D.N.Y. 2014), as corrected (Dec. 29, 2014), *aff'd sub nom. In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016) (holding the bank could only have pursued a claim for money damages in a breach of contract action, or, in the case of bankruptcy, filed a proof of claim for breach of contract, and that the sales and transfers of the collateral were permissible under the language in the security agreement even if defaults under the swap); *In re MJK Clearing, Inc.*, 286 B.R. 109, 121-23 (Bankr. D. Minn. 2002), *aff'd*, No. 01-4257 RJK, 2003 WL 1824937 (D. Minn. Apr. 7, 2003), *aff'd*, 371 F.3d 397 (8th Cir. 2004) (holding funds held by bankrupt broker were property of the estate and the obligation to return collateral amounted to an unsecured claim for the monetary debt); *Secure Leverage Grp.*, 558 B.R. at 237 (holding that language in a futures contract that granted the merchant the "right to pledge, repledge, hypothecate,

sell or purchase, invest or loan" customer property without notice or a requirement to deliver "identical property" did not create a constructive trust that would allow those customers to seek payment in full outside the normal claims process).

33. Other bankruptcy courts overseeing cryptocurrency cases have held that similar language to that found in the Wynns Loan Agreements supported a finding that the cryptocurrency placed into interest-bearing accounts was estate property, and that account holders were thus entitled to unsecured claims against the estate. *See In re Celsius Network LLC*, 647 B.R. at 651 (holding that language that advised Earn account holders that they were granting Celsius the right to "pledge, re-pledge, hypothecate, rehypothecate [their cryptocurrency] …with all attendant rights of ownership" could be read in harmony with references to loans to find that the account holders were general unsecured creditors).

34. This Court has, likewise, repeatedly ruled upon similar issues concerning the extent of claimants' property interests in deposits. For instance, in its oral ruling on *Debtors' Motion For Entry Of An Order (I) Authorizing The Debtors To (A) Honor Withdrawals From Wallet Accounts, (B) Update The User Interface To Properly Reflect Transactions And Assets As Of The Platform Pause, And (C) Conduct Ordinary Course Reconciliation Of Accounts, And (II) Granting Related Relief* (the "Wallet Motion") [Docket No. 121] the Court explicitly incorporated by reference the following stipulated fact:[6]

---

[6] Transcript of May 11, 2023 Hr'g, Docket No. 871, 3:7–3:10; Order Granting Wallet Motion, Docket No. 923. The BIA Terms of Service contains similar language to the Wynns Loan Agreements in Section E. Utilization of Assets:

> BlockFi has the right, without further notice to you, to pledge, repledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer, invest or use any amount of such cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining in BlockFi's possession and/or control a like amount of cryptocurrency, and to use or invest such cryptocurrency at its own risk.

https://blockfi.com/interest-account-terms-existing-us/.

11

> BlockFi Inc., BlockFi Lending LLC, and BlockFi International Ltd. each separately host and maintain omnibus non-custodial wallets through Fireblocks or other exchanges and custodians for BlockFi's other product offerings, BPC (open and fixed loans) and BIA (the "Rehypothecateable Wallets"). The digital assets in the Rehypothecateable Wallets are free to be pledged, repledged, hypothecated, rehypothecated, sold, lent, or otherwise transferred, invested, or used.

By contrast to this language, participants in the "Wallet Program" entered into an agreement by which title was to remain with the depositor, and rehypothecation, sale or other transfer would not be permitted. The Court has recognized that deposits in the Wallet Program are, with limited exceptions, non-Estate assets to be returned to participants in full. *See id.*; Plan Art. II.D (providing for return of deposits in recognition of "the non-Estate assets contained in such Holders' Account in connection with the Wallet Program").

35. Indeed, the Court has repeatedly recognized both this distinction in contract language and the likely result that collateral depositors such as Mr. Wynns will not see their deposits returned in full. For instance, in its recent order denying a motion to dismiss filed by the Department of Justice in a seizure warrant adversary proceeding commenced by the Committee of Unsecured Creditors, the Court observed that unlike participants in the Wallet Program, "BlockFi customers with BIA or Collateral Accounts will be receiving distributions under the Debtors' confirmed plan representing only a fraction of the amounts actually due and owing." Adv. Pro. No. 23-01144, Docket No. 55 at 17.

36. Consistent with the foregoing, the language of the agreement entitles Mr. Wynns to an unsecured claim for the dollarized value of 4.209 BTC as of the Petition Date, less setoff. Mr. Wynns's contract does not give him any greater or other property right, and as further addressed below, Mr. Wynns' property rights under the contract and applicable law are honored by the confirmed Plan.

**II.    Wynns's Treatment Is Fully Set Forth in the Plan.**

37.    As previously stated, the bulk of Mr. Wynns's claims are, by definition, BlockFi Lending LLC Loan Collateral Claims entitled to treatment pursuant to Class 3-b of the Plan. That treatment comprises, in essence, an unsecured claim for return of deposited Digital Assets as valued on the Petition Date, subject to setoff or the Loan Repayment Election.

38.    The Wind-Down Debtors afforded Mr. Wynns ample opportunity to object to the proposed treatment of his Claims under the Plan. The record of these Chapter 11 Cases, including the affidavits of service and declarations referenced herein, as well as the Court's findings as set forth in the Confirmation Order, show Mr. Wynns received adequate notice of (i) the Plan, (ii) the proposed treatment of his Claims thereunder, (iii) the Plan Objection Deadline, and (iv) the Combined Hearing Notice, among other things.

39.    Mr. Wynns did not object to confirmation of the Plan. As such, Mr. Wynns has waived any objection he may have brought with respect to treatment of his Claims under the Plan. *See* Confirmation Order at 33 ¶ 48 ("All objections to Confirmation not filed and served prior to the deadline for filing objections to the Plan and Disclosure Statement set forth in the Combined Hearing Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.").

40.    Notwithstanding the foregoing, Mr. Wynns now asks the Court to enter an order treating and valuing the Wynns Claims in a manner that differs from the treatment of other Claims of similarly situated creditors. Mr. Wynns insist that unlike every other Holder of a BlockFi Lending LLC Loan Collateral Claim, he should see his deposited Digital Assets returned in full and in kind. Mr. Wynns would thus have this Court contravene not only the Plan and Confirmation Order but multiple provisions of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 502(b) ("the court…shall determine the amount of such claim in lawful currency of the United States as of the

13

date of the filing of the petition"), 1123(a)(4) (requiring equality of treatment of each claim within a particular class).

41. The Tenth Omnibus Objection proposes to correct the claims register by Allowing the two specified Wynns Proofs of Claim in accordance with the terms of the Plan and expunging the remaining duplicative Wynns Proofs of Claim. In his pleadings, Mr. Wynns seeks relief that contradicts the terms of the Plan and Confirmation Order, the Bankruptcy Code and applicable state law. The Wynns Response should be overruled and Mr. Wynns's motion and other claims denied accordingly.

**WHEREFORE**, the Wind-Down Debtors respectfully request entry of an order: (i) disallowing and expunging Claim Nos. 3061, 3067, 3071 and 3072, (ii) modifying Claim Nos. 1324 and 3052 as set forth on Schedule 1 to the Proposed Order attached to the Tenth Omnibus Objection, (iii) denying the Wynns BTC Motion, (iv) denying the Wynns Certification, to the extent it seeks relief, and (v) granting such other relief as is just and proper.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: November 2, 2023 | */s/ Donald W. Clarke* |

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted pro hac vice)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted pro hac vice)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*