| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP** Kenneth J. Aulet, Esq. (admitted *pro hac vice*) Seven Times Square New York, New York 10036 (212) 209-4800 kaulet@brownrudnick.com **BROWN RUDNICK LLP** Tristan Axelrod, Esq. (admitted *pro hac vice*) One Financial Center Boston, MA 02111 (617)856-8300 taxelrod@brownrudnick.com *General Counsel for the Plan Administrator* **GENOVA BURNS LLC** Daniel M. Stolz, Esq. Donald W. Clarke, Esq. 110 Allen Rd., Suite 304 Basking Ridge, NJ 07920 (973) 230-2095 DStolz@genovaburns.com DClarke@genovaburns.com *Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP** Richard S. Kanowitz, Esq. (NJ Bar No. 047911992) Lauren M. Sisson, Esq. (NJ Bar No. 394182022) 30 Rockefeller Plaza, 26th Floor New York, New York 10112 (212) 659-7300 richard.kanowitz@haynesboone.com lauren.sisson@haynesboone.com *Attorneys for the Plan Administrator* |
| In re: BLOCKFI INC., *et al*., Debtors.[1] | Chapter 11 Case No. 22-19361 (MBK) (Jointly Administered under a Confirmed Plan[2]) **Hearing Date: January 25, 2024 @ 10:00 a.m. ET** **Response Deadline: January 18, 2024 @ 4:00 p.m. ET** **Oral Argument Waived Unless Response Timely Filed** |

## WIND-DOWN DEBTORS' OBJECTION TO CLAIM FILED BY THE CONNECTICUT DEPARTMENT OF BANKING

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down

Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the

"Chapter 11 Cases"), hereby file this *Wind-Down Debtors' Objection to Claim Filed by the*

*Connecticut Department of Banking,* (the "Objection") for entry of an Order substantially in the

form attached hereto (the "Proposed Order"), pursuant to sections 105(a), 502, and 525 of title 11

of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 3007 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3007-1, 3007-2 and

9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey

(the "Local Rules"). In support of the Objection, the Wind-Down Debtors respectfully represent

as follows:

**Preliminary Statement**[3]

1.      BlockFi halted all transactions on November 10, 2022, after it became clear that

BlockFi (and its customers) were victims of the massive fraud perpetrated by Sam Bankman-Fried

and FTX, and that as a result of that criminal conduct BlockFi could not meet its obligations to its

customers. Following confirmation of BlockFi's Plan, BlockFi now exists only as a "Wind-Down

Debtor" – an entity with the sole focus of returning as much value to BlockFi's customers as

possible. There are no ongoing operations or residual value for BlockFi equity. Every dollar that

is spent by BlockFi on anything *other than* distributions to its creditors is a dollar less that its

creditors receive, increasing their ultimate losses.

---

[3] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings provided in the remainder of this Objection.

2.    The Department challenges BlockFi's decision to implement the Platform Pause with respect to Wallet Accounts and argues that it gives rise to a pecuniary penalty to be paid to the State of Connecticut, at the expense (directly and indirectly) of BlockFi creditors. The Department is wrong. BlockFi's contracts and terms of service specifically authorized it to pause transactions—and under the circumstances BlockFi faced in November 2022, BlockFi was right to do so. It was unclear what assets BlockFi had at the time and the industry was facing unprecedented panic. It was logistically challenging for BlockFi to implement the Platform Pause fully and immediately: it took several days to fully pause all transactions, during which time numerous customers transferred funds from BlockFi Interest Accounts ("BIAs") to Wallet Accounts on BlockFi's "front-end" systems when no assets were transferred on the "back-end" systems into segregation. As a result, immediately after the Platform Pause, BlockFi's "front-end" systems began to diverge from the actual assets held in Wallet Accounts.

3.    Had BlockFi failed to implement the Platform Pause with respect to Wallet Accounts, the segregated funds held for Wallet Accounts would likely have been drained by those "post-pause" transfers that this Court has already ruled were invalid. There would have been either a resulting multi-hundred-million-dollar shortfall in the Wallet Accounts, and/or the assets of BlockFi held for non-Wallet Accounts would likely have been fully drained. The Platform Pause *preserved* BlockFi's ability to return all funds held in Wallet Accounts **in full, in kind.** The approach that the Department advocates (not implementing the Platform Pause) would likely have led to massive losses by Wallet Account Holders. Instead, as data provided by BlockFi to the Department shows, all Connecticut Wallet account holders are now able to withdraw their funds in in full, in kind.[4]

---

[4]  Three account holders were unable to withdraw, pursuant to this Court's orders, as they have retained preference exposure.  However, as the amounts in the affected Wallet Accounts were *de minimus* and thus provided no benefit to

4.       Moreover, the Department is ignoring the clear language of the Plan by unilaterally moving forward in an Administrative Proceeding seeking to assess civil penalties against BlockFi that would collect from estate assets still under the protection of the automatic stay.

5.       While it is understandable in a vacuum that the Department seeks to investigate potential violations of its money transmitter license laws, it is inexplicable that it seeks to penalize *BlockFi's customers* for this (alleged, non-existent) violation of its laws. There is no recovery the Department can obtain that will not injure BlockFi customers more. The costs of the Administrative Proceeding, and this Objection, do so as well. This is a case that called out for the Department to follow the lead of other state and federal regulators that have agreed that any claims they may hold should be subordinated to the full payment of all customer claims.

6.       But here, there was no violation. BlockFi's actions in implementing the Platform Pause were proper and were critical to preserving the assets of Wallet Account Holders. By filing a proof of claim, the Department has submitted itself to the jurisdiction of this Court. The Connecticut Claim should be disallowed and expunged on the merits, and the Department's efforts to prosecute its invalid regulatory claim outside this Court should cease. The Wind-Down Debtors respectfully request that the Court disallow the Connecticut Claim and put this matter to rest.

## **Jurisdiction and Venue**

7.       The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.).

---

secure a potential judgment on those preference claims.  Accordingly, the Plan Administrator has determined to unlock those accounts, without waiver of the applicable preference claims.  The State of Connecticut was notified of this on December 6, 2023 and was notified that there were no customers with other than *de minimus* accounts frozen on November 7, 2023.

The Wind-Down Debtors confirm their consent to the Court entering a final order in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      By filing a proof of claim, the Connecticut Department of Banking (the "Department") has submitted to the equitable jurisdiction of this Court and consented to this Court's adjudication of its claims. *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (per curiam); *In re Tarragon Corp.*, 2009 WL 2244598, at *6 (Bankr. D.N.J. July 27, 2009) ("[T]he filing of a proof of claim brings a creditor within the equitable jurisdiction of the Bankruptcy Court removing the creditor's right to a jury trial.") (citing *Shubert v. Lucent Techs., Inc.* (*In re Winstar Communications, Inc.*), 554 F.3d 382, 406–07 (3d Cir. 2009) (citing *Langenkamp*, 498 U.S. at 44–45) (other citations omitted)); *Shared Network Users Grp., Inc. v. WorldCom Techs., Inc.*, 309 B.R. 446, 451 (E.D. Pa. 2004).

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The bases for the relief requested herein are sections 105(a), 502(a), and 525 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rules 3007-1, 3007-2 and 9013-1.

## Background

### A.      The Monetary Transmission Licenses and Platform Pause

11.     BlockFi Inc. was founded in 2017 to provide credit services to markets with limited access to simple financial products. A detailed description of BlockFi's business operations, capital and debt structure, and the facts and circumstances leading to these Chapter 11 Cases is set forth in the *Declaration of Mark A. Renzi in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration") [Docket No. 17].

12.     Prior to the commencement of these Chapter 11 Cases, in the ordinary course of the Debtors' business, the Debtors obtained money transmission licenses from various state regulatory agencies. Specifically, as it pertains to this Objection, on April 2, 2020, BlockFi Trading LLC ("BlockFi") obtained a license (the "License") issued by the Department.

13.     On November 8, 2022, FTX Trading Ltd. ("FTX") paused withdrawals from its platform, and BlockFi, Inc. announced on November 10, 2022, that it too was limiting platform activity, including pausing client withdrawals (the "Platform Pause"). On November 11, 2022, FTX and related companies filed petitions for bankruptcy in the United States Bankruptcy Court for the District of Delaware. On November 14, 2022, BlockFi represented on its website that withdrawals would continue to be paused because BlockFi had significant exposure to FTX and FTX's affiliated entities. BlockFi initiated the Platform Pause to protect both BlockFi's assets and the assets in BlockFi's custody in the BlockFi Wallet Accounts (the "Wallet Accounts"), which belonged to the holders of Wallet Accounts (the "Wallet Account Holders").

### B.    The Chapter 11 Cases and Wallet Withdrawal Motion

14.     On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

15.     On November 29, 2022, this Court entered an order [Docket No. 42] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361. On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

16.     Since the Petition Date, BlockFi has taken the position that the assets in the Wallet Accounts were not property of the estate and instead belonged to the Wallet Account Holders. Early in these cases, the BlockFi filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* [Docket No. 121] (the "Wallet Withdrawal Motion"), seeking authority to permit withdrawals from Wallet Accounts.

17.     On May 17, 2023, the Court entered the *Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* [Docket No. 923] (the "Wallet Withdrawal Order"), granting the Wallet Withdrawal Motion subject to certain modifications not relevant here.

18.     In the Court's oral ruling on the Wallet Withdrawal Motion [Docket No. 871] (the "Wallet Oral Ruling") the Court held that "the debtors in their sole discretion had the authority to discontinue, pause and/or refuse all current and future access for customers with respect to all account activity, meaning withdrawals, transfers, or trading without advance notice" and that "advance notice is not required under the terms of the agreement in order to effectuate a pause on the platform." Wallet Oral Ruling, 4:18–4:24.

19.     Pursuant to the Wallet Withdrawal Order and the Court's additional Orders related to the Wallet Withdrawal Motion [Docket Nos. 923, 1207, 1361, and 1451], BlockFi was authorized, among other relief, to (i) update its User Interface to match its books and records, thereby invalidating any transfers or withdrawals attempted by clients after the Platform Pause,

(ii) initiate the wallet withdrawal process, (iii) process certain wallet withdrawal requests on a final basis, and (iv) convert certain trade only assets in Wallet Accounts into withdrawal digital assets. The withdrawal process for U.S. Wallet Account Holders started in late August 2023, following extensive communications and instructions to Wallet Account Holders about the necessary steps and security actions required to initiate the withdrawal process.  A subset of Wallet Withdrawals began taking place, including providing the ability for Wallet Account Holders to request a full withdrawal of their digital assets from their Wallet Accounts into an external wallet so long as their account had no preferential liability exposure. Prior to plan confirmation, withdrawals from Wallet Accounts were limited to Wallet Account Holders with aggregate preference liability exposure of less than $7,575.

20.    Pursuant to the Wallet Withdrawal Order, "[n]otwithstanding the actual or threatened suspension or termination of any transmission licenses by any U.S. state or governmental entity, any transfers or disbursements made pursuant to this Order shall not be deemed an implication, admission, or determination that the Debtors are operating with a suspended or terminated license, nor shall the Debtors or their insurance providers be liable for any associated fines or penalties, including, but not limited to, penalties related to the Arch Insurance Company money transmitter bonds or otherwise." Wallet Withdrawal Order at ¶ 8.

21.    On September 26, 2023, the Court confirmed the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1609] (the "Plan"). On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and*

*(II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming the Plan.  Neither the Plan nor the Confirmation Order abrogated or otherwise modified the provision of the Wallet Withdrawal Order quoted above.

22.    On October 24, 2023, the Plan went effective, and the Plan Administrator and Wind-Down Debtors' Oversight Committee began overseeing the Wind-Down Debtors in accordance with the Plan and Plan Administrator Agreement. Upon confirmation of the Plan and pursuant thereto, withdrawals from Wallet Accounts became authorized for all Wallet Account Holders with aggregate preference liability exposure of less than $250,000. As of December 4, 2023, the total authorized and completed withdrawal requests total over $235 million.

C.    **The Suspension of the License and Threatened Administrative Actions by the Department**

23.    Long prior to the Petition Date, to secure the performance of BlockFi's money transmission obligations, in accordance with applicable law, BlockFi obtained money transmitter bonds issued by Arch Insurance Company ("Arch"). The bonds were put in place to secure certain obligations under the money transmission licenses with the state departments, including the Department that issued BlockFi's Connecticut license. Prior to the Petition Date, but shortly after the Platform Pause, Arch canceled the bonds backing the License, effective December 15, 2022.

24.    On November 28, 2022, the Department sent a letter to BlockFi acknowledging that Arch had canceled the bonds and providing instructions for requesting surrender of the License. On December 14, 2022, BlockFi submitted a request to the Department to surrender the License. The request was not accepted. On December 15, 2022, the Department issued an automatic suspension of the License.

25.    On February 14, 2023, the Department mailed a notice to BlockFi (the "<u>Notice</u>")

which stated, in part:

> FURTHER, notice is hereby given to Respondent that the Commissioner intends to issue an order to REVOKE Respondent's money transmission license in Connecticut, to issue an order requiring Respondent to CEASE AND DESIST from engaging in an unsafe or unsound practice within the meaning of Section 36a-608(a) of the Connecticut General Statutes and to impose a CIVIL PENALTY upon Respondent as set forth herein, subject to Respondent's right to a hearing on the allegations set forth above. A hearing will be granted to Respondent if a written request for a hearing is received by the Department of Banking…within fourteen (14) days following Respondent's receipt of this Notice of Automatic Suspension, Notice of Intent to Revoke Money Transmission License, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing as set forth in Sections 36a-52(a) and 36a-50(a) of the 2022 Supplement to the General Statutes.

Notice, p. 5.

26.    The Notice indicates that the statutory basis for the revocation of the License and

intention to impose civil penalties is based on the Platform Pause and the failure to maintain the

surety bond backing the License. *Id.* at p. 4.

27.    On March 8, 2023, in response to the Notice, counsel for BlockFi submitted an

Appearance and Request for Hearing solely to preserve its rights to be heard in the proceeding to

revoke the License and assess civil penalties (the "<u>Administrative Proceeding</u>"), and without

prejudice to its rights under the Bankruptcy Code.

28.    On March 15, 2023, counsel for BlockFi sent a letter to counsel for the Department,

explaining the Debtors' position vis-à-vis the Debtors' Chapter 11 Cases and the Administrative

Proceeding (the "<u>March 15 Letter</u>").

29.    Throughout the months of March, April, and May 2023, counsel for BlockFi

continued to work toward a resolution of the issues, and the Administrative Proceedings were

adjourned several times. In late May, counsel for the Department indicated the Administrative

Proceedings would be moving forward on July 20, 2023.

### D.  **The Proof of Claim, Adversary Proceeding, and Subsequent Stay**

30.    On May 30, 2023, the Department filed proof of claim no. 31767 (the "Connecticut

Claim") against BlockFi Trading LLC in the asserted amount of "unliquidated, up to $100,000 per

violation." The basis of the claim was "penalty sought for violation of provisions of the

Connecticut General Statutes governing money transmission licenses." The Department attached

the Notice to the Connecticut Claim.

31.    On June 13, 2023, BlockFi filed its *Adversary Complaint against the Connecticut

Department of Banking* [Adv. Doc. 1] (the "Complaint") and *Motion for Entry of an Order

(I) Enforcing the Automatic Stay as to the Connecticut Department of Banking or, in the

Alternative, for Injunctive Relief Enjoining Prosecution of the Administrative Proceeding, and

(ii) Finding that the Connecticut Department of Banking Violated 11 U.S.C. § 525* [Adv. Doc. 2]

(the "Injunction Motion") seeking a) to enjoin the Department from the continuation of the

Administrative Proceedings and b) for a finding that the Department violated section 525 of the

Bankruptcy Code.

32.    After further discussion the parties agreed to stay the Administrative and Adversary

Proceedings and all related deadlines and hearings until the effective date of any plan confirmed

in the Chapter 11 Cases. BlockFi filed its *Motion for Entry of an Order Staying the Adversary

Proceeding* [Adv. Doc. 5] (the "Adversary Stay Motion") and withdrew the Injunction Motion on

July 13, 2023.

33.    This Court entered an Order granting the Adversary Stay Motion [Adv. Doc. 7] on

September 13, 2023.

### E.  **Post-Effective Date Proceedings**

34.    On October 24, 2023, BlockFi filed a *Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) and (II) Occurrence of the Effective Date* [Docket No. 1788] ("Notice of Effective Date").

35.    On the same date, counsel for the Wind-Down Debtors provided a copy of the Notice of Effective Date to counsel for the Department. Counsel for the Department then immediately contacted the hearing officer to resume the Administrative Proceeding. As of the date of the filing of this Objection, a pre-hearing conference is scheduled in the Administrative Proceeding for December 7, 2023.

### Objection

36.    The Debtors object to the Connecticut Claim and ask this Court to disallow the Connecticut Claim in its entirety. The Department submitted to this Court's jurisdiction by filing the Connecticut Claim, and this Court is in the best position to assess whether such claim should be allowed.

### A.  **Legal Standard**

37.    Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The burden of proof for claims brought in the bankruptcy court under section 502(a) of the Bankruptcy Code is a shifting burden that rests on different parties at different times. *In re Biolitec, Inc.*, Case No. CIV. 13-5864 FSH, 2013 WL 6795400, at *3 (D.N.J. Dec. 16, 2013) (citing *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir.

1992)). First, the claimant must allege facts sufficient to support its claim. *Id.* If the allegations in the filed claim meet this standard, "it is '*prima facie*' valid." *Id.* "In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation." *Id.* A properly filed proof of claim is generally considered "*prima facie* evidence of the validity and the amount of the claim." Fed. R. Bankr. P. 3001(f).

38.    The burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *Allegheny*, 954 F.2d at 173. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *Id.* at 173–74. If the objector meets this burden, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence, and the burden of persuasion is always on the claimant. *Id.* Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

39.    A claimant's failure to allege facts and to provide sufficient support for a claim deprives the claim of *prima facie* validity in the first place. *See, e.g.*, *In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims). "[I]n certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b) . . . ." *In re Mallinckrodt Plc*, Case No. 20-12522-JTD, 2022 WL 3545583, at *4 (D. Del. Aug. 18, 2022); *see also In re O'Brien*, 440 B.R. 654, 667 (Bankr. E.D. Pa. 2010) (finding that lack of *prima facie* evidence pursuant to Bankruptcy Rule 3001(f) and failure of claimant to provide additional evidence warranted disallowance of claim).

40.    "The debtor… 'has no evidentiary burden to overcome' in objecting to a claim that is not prima facie valid." *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008) (*citing eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 318 (Bankr. S.D. Tex. 2007)) (holding that debtors' objections alone are sufficient to shift the burden back to claimant when proof of claim had insufficient documentation).

### B.  **Bases for Objection to Connecticut Claim**

41.    The Department is now seeking to adjudicate an unliquidated proof of claim based on alleged violations of Connecticut's statutes governing money transmission licenses in an Administrative Proceeding completely unrelated to these Chapter 11 Cases. As an initial matter, the Plan provides that assets of the estate remain therein until immediately prior to distribution and are protected by the automatic stay, which the Department has not sought to have lifted by this Court. Moreover, BlockFi did not violate Section 36a-608(a) of the Connecticut General Statutes. Additionally, the Department should not be able to assess civil penalties against BlockFi based on its own self-help actions that violated section 525 of the Bankruptcy Code.

42.    The Department was offered, and refused to participate in, a stipulation entered into by numerous other state regulatory agencies that govern the enforcement of money transmission licenses and would allow BlockFi's customers, including citizens of Connecticut, to recover in full prior to the payment of civil fines or penalties. To the extent that the Department asserts that it will recover any civil penalties from Arch as the issuer of the surety bond and not the estate, this argument fails because of BlockFi's contractual obligation to indemnify Arch. Finally, this Court has already held that BlockFi properly paused the platform under the terms of service and has ordered that Wallet funds are not estate property and may be returned to customers, a process which is nearly complete.

i. **The Automatic Stay is Still in Place as to Estate Assets**

43.    The Plan provides that, post-effective date, all of the Debtors' assets shall remain in the estates until they vest in the Wind-Down Debtors one business day prior to any distributions to Holders of Allowed Claims. Plan, Art. IV.D.2. As of the date of the filing of this Objection, no distributions have been made and none are forthcoming such that estate assets have vested in the Wind-Down Debtors. All assets are, and continue to be, protected by the automatic stay. The Department has not filed any motion seeking to lift the stay and proceed outside of this Court to adjudicate their unsupported and unliquidated claim. They should not be allowed to force the Wind-Down Debtors[5] to defend an Administrative Proceeding that seeks estate assets simply because the Plan is effective.

ii. **BlockFi Did Not Violate the Connecticut General Statutes**

44.    The Notice sent to BlockFi by the Department asserts that the Platform Pause was an unsafe or unsound practice which violated Section 36a-608(a) of the Connecticut General Statutes. CONN. GEN. STAT. § 36a-608(a) states, *inter alia*:

> For purposes of this section, "unsafe or unsound practice" means a practice or conduct by a licensee or an authorized delegate that is likely to result in a material loss, insolvency or dissipation of the licensee's assets or otherwise materially prejudice the interests of purchasers.

45.    BlockFi's actions to undertake the Platform Pause were the exact opposite of conduct "likely to result in a material loss." Rather, the Platform Pause prevented a massive withdrawal of assets from the Platform that would have resulted in even more severe diminution of recovery of funds for creditors.

---

[5] The Plan also provides that post-effective date the Wind-Down Debtors are deemed to be substituted for both the Debtors and the Committee as applicable in all actions pending before this Court. Plan, Art. IV.D.1.

46.    Had BlockFi allowed activity to continue unfettered, the panic brought on by FTX's collapse and the plummeting price of bitcoin would have caused certain creditors closely following the market to pull massive amounts of funds from their BlockFi interest accounts ("BIAs") to their BlockFi Wallet Accounts, quickly resulting in a situation where the segregated funds held to cover all BlockFi Wallet Account withdrawals would be insufficient to cover the amounts moving into BlockFi Wallet. These actions would have resulted in vastly diminished estate assets, minimal (or no) creditor distributions, and an inability to allow Wallet Account Holders to recover their funds in full. BlockFi acted to protect creditors, including citizens of Connecticut, and should not be penalized for doing so.

### iii.    **The Department Submitted to the Jurisdiction of this Court to Adjudicate its Proof of Claim**

47.    It is well established that a party that submits a proof of claim in a bankruptcy proceeding has submitted to the Court's jurisdiction to allow or disallow said claim. While the Department is one of many state agencies that submitted proofs of claim in relation to alleged monetary transmission license violations, it has been and remains the only state agency which is aggressively pursuing the adjudication of its unliquidated claim outside of this Court. The Department should not be allowed to do so. "The centralization of all claims in the bankruptcy court also permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion." *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 512 (3d Cir. 1997).

48.    Additionally, the Connecticut Claim lacks *prima facie* validity as it is unsupported by any evidentiary basis for the Department's conclusory assertions that the Platform Pause was an "unsafe and unsound" practice. The Connecticut Claim provides no explanation as to what the

Department's basis is for claiming that the Platform Pause resulted in a loss of assets for its constituents or otherwise harmed them in a way that violated the Connecticut General Statutes.

#### iv.  **The Department's Actions Violated Section 525**

49.    The Department's decision to refuse the voluntary surrender of BlockFi's License and instead seek to assess civil penalties against an entity that was clearly not operating as a money transmitter was punitive and a clear violation of section 525 of the Bankruptcy Code.

50.    A governmental unit violates section 525 when it revokes a debtor's license due to a bankruptcy filing or the debtor's nonpayment of fees—even if the governmental unit had a valid regulatory motive for the license revocation or cancellation. *See, e.g., F.C.C. v. NextWave Personal Comms., Inc.*, 537 U.S. 293 (2003) (holding F.C.C.'s revocation of debtors' license due to nonpayment violated Section 525); *Matter of Bradley*, 989 F.2d 802 (5th Cir. 1993) (holding Section 525 prohibits states from exacting a debt as the price of retaining or receiving a license); *In re Elsinore Shore Assocs.*, 66 B.R. 723 (Bankr. D. N.J. 1986) (explaining that conditioning, suspending, or revoking a debtor's license based on fines violates section 525).

51.    As discussed further below, BlockFi was within its rights to pause platform activity and had no control over Arch's decision to revoke the surety bond. The revocation of the bond became effective post-petition, and occurred after BlockFi, which was no longer acting as a money transmitter, had attempted to surrender the License to the Department in good faith. Rather than accept that surrender, and despite being clearly informed that as an entity in bankruptcy BlockFi could not resume the transmission of funds without seeking leave from the Court to do so, the Department sought to assess penalties against BlockFi outside of the bankruptcy process.

52.    The Department's actions to revoke the License and assess penalties against BlockFi were discriminatory and constitute a violation of section 525. Setting aside the fact that

the stay is still in place as to estate property under the confirmed Plan, the Department should not now be able to pursue estate funds in a venue outside this Court, delaying distributions to creditors and consuming estate resources.

### v. **The Department is the Only State Regulatory Agency Seeking to Assess Civil Penalties Against BlockFi**

53.     BlockFi possessed monetary transmitter licenses (or the comparable equivalent) issued by regulatory agencies in more than 25 states. Upon information and belief, the Department is the *only* state regulator that is pursuing post-petition enforcement actions against BlockFi, forcing the expenditure of estate resources for the Department's pecuniary gain. Many of these state agencies, recognizing that maximizing creditor recoveries would directly affect their constituents, signed onto a stipulation wherein their unliquidated penalty claims would be subordinated to all account holder, general unsecured, and intercompany claims. *See* Docket No. 1613. The Department was informed of this stipulation and offered the opportunity to sign a joinder to same but, to date, has declined . The Department's unwillingness to subordinate any potential penalty claims to the customer claims of the very constituency they aim to protect reveals its pecuniary motives. Additionally, CONN. GEN. STAT. § 36a-60 indicates that "[a]ny fines of civil penalties imposed by the Banking Commissioner…shall be deposited into the General Fund." This provision indicates that any civil penalties the Department assesses and is able to collect will be allocated to "the general operations of the State of Connecticut" and *not* to any BlockFi creditors residing in Connecticut.[6]

---

[6] STATE OF CONNECTICUT OFFICE OF THE STATE COMPTROLLER: FUNDS,
https://osc.ct.gov/stateacct/sam/funds/funds.htm, last accessed Dec. 5, 2023.

### vi.   Any Civil Penalties Assessed in the Administrative Proceeding Will Diminish Creditor Returns

54.    The Department may attempt to argue that its pursuit of civil penalties in the Administrative Proceeding will not be detrimental to creditors of BlockFi as the Department will seek recovery of said penalties from the issuer of the surety bond, Arch. Such an assertion would be incorrect, however, as BlockFi entered into a prepetition indemnification agreement with Arch that provides that BlockFi must indemnify Arch in the event that any party, such as the Department, makes a claim under the bond. BlockFi must also indemnify Arch for all the costs and expenses related to the litigation of such a claim, including attorneys' fees. As such, any attempt by the Department to avoid directly seeking a distribution from the estate by instead making a claim against the surety bond will likely result in the same diminution in distributions to creditors, and could result in an even larger loss should Arch expend resources litigating the payment of the claim.

### vii.   BlockFi Properly Paused the Platform Per the Terms of Service

55.    BlockFi initiated the Platform Pause to mitigate the effects of its exposure to FTX. Early in these Chapter 11 Cases, BlockFi sought relief from the Court to allow Wallet holders to remove the funds in the BlockFi Wallets. This Court undertook a comprehensive review of the relevant terms of service for the various BlockFi accounts and the BlockFi platform generally, and held that those terms allowed the BlockFi entities to institute the Platform Pause "in their sole discretion" and "without advance notice." Wallet Oral Ruling, 4:18, 4:21–4:22.

56.    The Department is now seeking to move forward with an Administrative Proceeding, which, if successful, would result in the opposite ruling as a basis for the assessment of civil penalties. The Wind-Down Debtors respectfully submit that the Department should not be allowed to do so.

**Reservation of Rights**

57.    The Wind-Down Debtors reserve their rights to object to the Connecticut Claim on any other grounds. Nothing contained in this Objection or any actions taken pursuant to any order granting the relief requested by this Objection is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Wind-Down Debtors, (b) a waiver of the Wind-Down Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Wind-Down Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Wind-Down Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Objection are valid, and the Wind-Down Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any transfer made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Wind-Down Debtors' rights to subsequently dispute such claim.

**Waiver of Memorandum of Law**

58.    The Wind-Down Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Wind-Down Debtors rely is set forth herein and the Objection does not raise any novel issues of law.

**No Prior Request**

59.      No prior request for the relief sought in this Objection has been made to this Court or any other court.

### Notice

60.      The Wind-Down Debtors will provide notice of this Objection to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) the attorneys general in the states where the Wind-Down Debtors conduct their business operations; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (f) the claimant listed on Schedule 1 attached to the Proposed Order (collectively, the "Notice Parties"). The Wind-Down Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Wind-Down Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 6, 2023

/s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*