Jeffrey M. Traurig, Esq.
TRAURIG LAW LLC
One University Plaza, Ste. 124
Hackensack, NJ 07601
(646) 974-8650
jtraurig@trauriglaw.com
*Counsel for the Fee Examiner*

-and-

Elise S. Frejka
FREJKA PLLC
415 East 52nd Street | Suite 3
New York, New York 10022
Telephone: (212) 641-0800
*Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No. 22-19361 (MBK) |
| | Judge Michael B. Kaplan |
| BLOCKFI INC., et al.,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**NOTICE OF THE FEE EXAMINER'S**
**CONSOLIDATED FINAL REPORT REGARDING SECOND INTERIM**
**FEE APPLICATIONS OF PROFESSIONALS RETAINED BY THE COMMITTEE**

**PLEASE TAKE NOTICE** that attached hereto is the *Fee Examiner's Consolidated Final*

*Report Regarding Second Interim Fee Applications of Professionals Retained by the Committee*

submitted by Elise S. Frejka, the fee examiner in the above-captioned cases.

Date: December 7, 2023

  _/s/ Jeffrey Traurig_____
Jeffrey Traurig
TRAURIG LAW LLC
One University Plaza, Suite 124
Hackensack, NJ  07601
Tel: (646) 974-8650
E-mail:  jtraurig@trauriglaw.com

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, New York 10019.

Elise S. Frejka
*Fee Examiner*
FREJKA PLLC
415 East 52nd Street | Suite 3
New York, New York 10022
Telephone: (212) 641-0800

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*,[1] | Case No. 22-19361 (MBK) |
| Debtors. | (Jointly Administered) |

## FEE EXAMINER'S CONSOLIDATED FINAL REPORT REGARDING SECOND INTERIM FEE APPLICATIONS OF PROFESSIONALS RETAINED BY THE COMMITTEE

Elise S. Frejka, the fee examiner (the "Fee Examiner") in the above-captioned chapter 11

cases (the "Chapter 11 Cases") submits this final report (the "Final Report") pursuant to the

*Order Appointing Independent Fee Examiner and Establishing Related Procedures for the*

*Review of Fee Applications of Retained Professionals* (the "Fee Examiner Order") [Dkt. No.

925] in connection with the applications for allowance of compensation for professional services

rendered and for reimbursement of actual and necessary expenses (each, a "Fee Application,"

and together, the "Fee Applications") of the following professionals (the "Retained

Professionals") retained by the Official Committee of Unsecured Creditors (the "Committee") of

the above-captioned debtors (the "Debtors"): (I) Brown Rudnick LLP ("Brown Rudnick"),

counsel to the Committee [Dkt. No. 1507]; (II) Genova Burns LLC ("Genova"), local counsel to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, New York 10019.

the Committee [Dkt. No. 1506]; (III) McCarter & English, LLP ("McCarter & English"),

efficiency counsel to the Committee [Dkt. No. 1511]; (IV) M3 Advisory Partners, LP ("M3

Partners"), financial advisor to the Committee [Dkt. No. 1508]; (V) Elementus, Inc.

("Elementus"), blockchain intelligence and forensic expert to the Committee [Dkt. No. 1509];

and (VI) Miller Nash LLP ("Miller Nash"), local Washington State Counsel [Dkt. 1533].

## Case Background

1.    On November 28, 2022 (the "Petition Date"), the Debtors commenced voluntary

cases under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy

Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court").

The Debtors are operating their business and managing their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    The Debtors' Chapter 11 Cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"). As of the date hereof, no trustee or examiner has been appointed in these

Chapter 11 Cases.

3.    On December 21, 2022, the United States Trustee for Region 3 (the "U.S.

Trustee"), appointed an official committee of unsecured creditors (the "Committee") [Dkt. Nos.

130, 131].

4.    On August 3, 2023, the Debtors filed their *Third Amended Joint Chapter 11 Plan*

*of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt.

No. 1309] (the "Plan") and their *Disclosure Statement Relating to the Third Amended Joint*

*Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the*

*Bankruptcy Code* [Dkt. No. 1310] (the "Disclosure Statement").

5.      On October 3, 2023, the Court entered the Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Technical Modifications) [Dkt. No. 1655].

6.      On October 24, 2023, the Debtors filed the Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Third *Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) and (II) Occurrence of the Effective Date* [Dkt. No. 1788].

## Fee Examiner Order

7.      On May 17, 2023, after recognizing the size and complexity of the Chapter 11 Cases, the Court entered the Fee Examiner Order to assist the Court in its determination of whether applications for compensation are compliant with the Bankruptcy Code, all applicable Bankruptcy Rules, the Local Rules, the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, at 28 C.F.R. Part 58, Appendix A, and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013, at 28 C.F.R. Part 58, Appendix B (together, the "UST Guidelines"), and the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* entered on January 17, 2023 (the "Interim Compensation Order") [Dkt. No. 307].

3

8.      Under paragraphs 5 and 10 of the Fee Examiner Order, the Fee Examiner was

charged by the Court with, among other things: (a) reviewing the interim and final fee

applications filed by each applicant in these Chapter 11 Cases, along with the fee detail related

thereto; (b) reviewing any relevant documents filed in these Chapter 11 Cases to be generally

familiar with these cases and the dockets; (c) within sixty (60) days after the filing of the first

interim application (and forty-five (45) days for any subsequent fee application), serving an

initial report on the applicant addressing whether the requested fees, disbursements and expenses

are substantially in compliance with the applicable standards of sections 330 of the Bankruptcy

Code and Local Rule 2016-1, and the U.S. Trustee Fee Guidelines; (d) engaging in written

communication with each applicant, the objective of which is to resolve matters raised in the

initial report and endeavor to reach consensual resolution with each applicant with respect to the

applicant's requested fees and expenses; and (e) following communications between the Fee

Examiner and the applicant, and the Fee Examiner's review of any supplemental information

provided by such applicant in response to the initial report, conclude the information resolution

period by filing with the Court a final report with respect to each application at least ten (10)

days before the hearing date on the relevant application. The final report shall be in a format

designed to quantify and present factual data relevant to whether the requested fees and expenses

of each applicant are substantially in compliance with the applicable standards of sections 330 of

the Bankruptcy Code and Local Rule 2016-1, and whether the applicant has made a reasonable

effort to comply with the UST Guidelines. The final report shall also inform the Court of all

proposed consensual resolutions of the fee and/or expense reimbursement request for each

applicant.

9.      In accordance with the Fee Examiner Order, the Fee Examiner reviewed the Fee

Applications for compliance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, the Interim Compensation Order, and the UST Guidelines. In addition,

the Fee Examiner reviewed the Fee Applications for general compliance with legal precedent

established by the District Court and Bankruptcy Court for the District of New Jersey, the Third

Circuit Court of Appeals, and other applicable precedent. This process consisted of a detailed

substantive review of the time and expense records by the Fee Examiner using her expertise and

judgment to identify noncompliant timekeeping practices and other areas of concern.

10.     Due to the size and complexity of these Chapter 11 Cases, the Fee Examiner

reviewed the time entries supporting the Fee Applications on a monthly basis, to the extent that

LEDES or other electronic files were provided. Areas of general concern to the Fee Examiner

during her review were the role of each attorney attending hearings and meetings so that she

could assess case staffing issues and the benefit to the estate of certain work streams that the Fee

Examiner deemed administrative in nature in addition to general concerns about block billing

and vague entries.

11.     The Fee Examiner issued an informal initial report to each Retained Professional

to the extent she had any issues, questions, or concerns. Each initial report detailed the Fee

Examiner's preliminary recommendations with respect to the specific Fee Application and, to the

extent necessary, identified specific time or expense entries that required further information to

assess compliance with the Bankruptcy Code, the Local Rules, and the UST Guidelines.

### Governing Statutory Sections

12.     Section 330 of the Bankruptcy Code provides:

(a)(1) After notice to the parties in interest and the United States Trustee
and a hearing, and subject to sections 326, 328, and 329, the court may

award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

    (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

    (i) unnecessary duplication of services; or

    (ii) services that were not—

        (I)  reasonably likely to benefit the debtor's estate; or

        (II) necessary to the administration of the case.

6

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

11 U.S.C. § 330.

13.    Section 330 of the Bankruptcy Code allows a bankruptcy court to award "reasonable compensation for actual, necessary services rendered by . . . professional[s]." 11 U.S.C. § 330(a)(1)(A). Reasonable compensation under section 330 is based on the nature, extent and value of the services, taking into account "all relevant factors . . . ." 11 U.S.C. § 330(a)(3).

14.    The statute enumerates six (6) relevant factors that the court must consider to determine whether the fees are reasonable:

- The time spent on such services;
- The rates charged for such services;
- Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of the cases;
- Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed;
- With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
- Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases.

11 U.S.C. § 330(a)(3)(A)-(F).

15.    Although the statute does specifically list factors to review when determining the reasonableness of fees, the list itself is not exhaustive. See 11 U.S.C. § 102(3) (terms "includes"

and "including" are not limiting). Thus, the Court is "itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." <u>See</u> <u>Campbell v. Green</u>, 112 F.2d 143, 144 (5th Cir. 1940).

16.     A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. <u>Zolfo, Cooper & Co. v. Sunbeam-Oster Co.</u>, 50 F.3d 253, 261 (3d Cir. 1995). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the requested compensation. <u>See</u> <u>Brake v. Tavormina (In re Beverly Mfg. Co.)</u>, 841 F.2d 365, 369 (11th Cir. 1988). Where appropriate, section 330 expressly authorizes this Court to award less than the amount requested by the fee applicant. <u>See</u> 11 U.S.C. § 330(a)(2). <u>In re Bennett Funding Grp., Inc.</u>, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("Interim fee applications submitted pursuant to Code § 331 . . . are judged under the same standards as final applications under Code § 330.").

17.     Professional services are considered "actual and necessary" if they benefit the estate. <u>In re APW Enclosure Sys.</u>, No. 06-11378, 2007 WL 3112414, at *3 (Bankr. D. Del. Oct. 23, 2007). Success is not required, but rather the court "must conduct an objective inquiry based upon what services a reasonable professional would have performed in the same circumstances." <u>In re Channel Master Holdings, Inc.</u>, 309 B.R. 855, 861-62 (Bankr. D. Del. 2004) (quoting <u>In re Cenargo Int'l.</u>, PLC 294 B.R. 571 (Bankr. S.D.N.Y. 2003); <u>see also</u> <u>In re Jefsaba, Inc.</u>, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) ("[S]o long as there was a reasonable chance of success which outweighed the cost in pursuing the action, the fees relating thereto are compensable."). The test

of what is necessary cannot be applied in hindsight. If at the time the work is performed, it

reasonably appears that it would benefit the estate, it may be compensated." <u>In re Berg</u>, No. 05-

39380 (DWS), 2008 WL 2857959 at *7 (Bankr. E.D. Pa. July 21, 2008); <u>see</u> <u>also</u> <u>Cenargo</u>, 294

B.R. at 595 (when determining what is necessary, courts do not attempt to "invoke perfect

hindsight.").

    18.    The Fee Examiner focused her review on the following issues:

    a.   Vague time entries that do not include complete activity descriptions that are sufficiently detailed to allow the reviewer to determine whether the time billed is actual, reasonable and necessary (hereinafter, "<u>Vague Time Entries</u>");

    b.   Block billed or "lumped" time entries that do not clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate as required by the UST Guidelines at C.9(d) (hereinafter, "<u>Block Billing Entries</u>");

    c.   Entries that the Fee Examiner identified as more in the nature of overhead or other administrative activities where the benefit to the Debtors' estate was not readily ascertainable from the time entry (hereinafter "<u>Administrative Entries</u>");

    d.   Time entries where the sub-parts of a particular time entry did not equal the amount of time that was actually charged (hereinafter, "<u>Over/Under Billing Entries</u>");

    e.   Duplicate time entries (hereinafter, "<u>Duplicate Entries</u>") where based upon the narrative the Fee Examiner was unable to ascertain if the timekeeper undertook separate tasks or the entry was duplicative;

    f.   Time charges attributable to transitory timekeepers who billed less than five (5) hours per month during the Fee Period (hereinafter, "<u>Transitory Timekeepers</u>"). The Fee Examiner reviewed the nature of the work performed and the expertise the timekeeper brought to the case and made recommendations specific to the Retained Professionals;

    g.   Staffing inefficiencies where the number of professionals participating in conference calls, meetings, depositions, and hearings appeared excessive and the benefit to the estate appeared minimal or where the Retained Professional staffed the case with summer associates or unadmitted attorneys (hereinafter, "<u>Staffing Inefficiency Entries</u>");

  h. Professionals with a disproportionate amount of time billed in rounded (.5 or
   .0) hours (hereinafter, "<u>Rounded Hour Entries</u>");

  i. Mismatched entries where the professionals participating in conference calls,
   meetings, depositions and hearings billed differing amounts to the same
   activity ("<u>Mismatched Time Entries</u>");

  j. Expense reimbursement-related issues (flights, train travel, taxi/ground
   transportation, meals, service/booking fees, tips, photocopies/facsimiles, in-
   flight internet, upgrades, car service, and unknown expenses);

  k. Whether there was a duplication of effort or coordination between the
   professionals retained by the Committee;

  l. Budgeted fees vs. actual fees; and

  m. Compliance with the Interim Compensation Order and the Fee Examiner
   Order; and

19. In undertaking her review, the Fee Examiner considered reductions taken by the
Retained Professionals in an exercise of their billing discretion prior to submission of the
relevant fee application, whether the Retained Professional stayed within budget, and general
staffing considerations.

<u>**Fee Examiner's Recommendations**</u>

20. The Final Report covers the Fee Applications of the Retained Professionals
engaged by the Committee covering the time period from May 1, 2023 through July 31, 2023
(and with respect to McCarter & English, from April 1, 2023 through July 31, 2023, and with
respect to Miller Nash for the period May 26, 2023 through July 31, 2023) (the "<u>Fee Period</u>").
Per the process described above, the Fee Examiner has reached an agreement with all of the
Retained Professionals regarding allowance for the period under review.  The Fee Examiner
makes the following specific recommendations as to the fees to be allowed and expenses to be
reimbursed:

**Brown Rudnick LLP (Counsel for the Committee)**

21.     On January 25, 2023, the Committee filed the *Application for Order Authorizing the Employment and Retention of Brown Rudnick LLP as Counsel for the Official Committee of Unsecured Creditors of Block Inc., et al., Nunc Pro Tunc to December 29, 2022* [Dkt. No. 400].

22.     On February 23, 2023, the Court entered the *Order Authorizing the Employment and Retention of Brown Rudnick as Counsel for the Official Committee of Unsecured Creditors of Block Inc., et al., Nunc Pro Tunc to December 29, 2022* [Dkt. No. 544] (the "Brown Rudnick Retention Order"). Pursuant to the Brown Rudnick Retention Order, the Committee was authorized to employ Brown Rudnick as their counsel to render general legal services to the Committee as needed throughout the course of the Chapter 11 Cases. For its services, Brown Rudnick is compensated on an hourly basis.

23.     Brown Rudnick filed the Brown Rudnick Fee Application for an interim allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses for the Fee Period requesting an interim allowance of compensation for professional services rendered in the amount of $3,352,402.75 and reimbursement of actual and necessary expenses in the amount of $57,658.02 [Dkt. No. 1507]. The Fee Examiner notes and appreciates that Brown Rudnick excluded fees, in an exercise of pre-billing discretion, in the amount of $46,378.00.

24.     During the Fee Period, Brown Rudnick filed three (3) monthly applications for compensation as follows:

| Dated Filed/ Docket No. | Period Covered | Requested | | Paid to Date | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 06/16/2023 Dkt. 1087 | 05/01/2023 – 05/31/2023 | $1,278,613.75 | $22,308.15 | $1,022,891.00 | $22,308.15 |
| 07/12/2023 Dkt. 1189 | 06/01/2023 – 06/30/2023 | $1,159,495.50 | $16,623.99 | $927,596.40 | $16,623.99 |
| 08/11/2023 Dkt. 1345 | 07/01/2023 – 07/31/2023 | $914,293.50 | $18,725.88 | $731,434.80 | $18,725.88 |
| **TOTAL** | | **$3,352,402.75** | **$57,658.02** | **$2,681,922.20** | **$57,658.02** |

25.     The Fee Examiner notes and appreciates that Brown Rudnick's timekeeping was exceptional and substantially in compliance with the UST Guidelines.  The Fee Examiner's initial report regarding the Brown Rudnick Fee Application identified the following issues where further information was required to ascertain compliance with the Guidelines:

  a.   Staffing Inefficiencies;

  b.   Transitory Timekeepers;

  c.   Mismatched Time Entries; and

  d.   Administrative Entries;

26.     Brown Rudnick and the Fee Examiner engaged in a productive dialogue to address and resolve the issues raised by the Fee Examiner's initial report.  Both the Fee Examiner and Brown Rudnick reserve all of their rights with respect to future applications for compensation and recognize that the recommended reduction represents a compromise of the parties' various positions. Accordingly, with regard to the Brown Rudnick Fee Application, the Fee Examiner recommends allowance of fees in the amount of $3,342,210.75 and reimbursement of expenses in the aggregate amount of $57,658.02.

**Genova Burns LLC (Local Counsel for the Committee)**

27.     On January 25, 2023, the Committee filed the *Application for Retention of Professional* seeking entry of an Order authorizing the Committee to retain Genova Burns as its local counsel [Dkt. No. 399].

28.     On February 23, 2023, the Court entered the *Order Authorizing Retention of Genova Burns Effective December 29, 2022* (<u>Genova Burns Retention Order</u>") [Dkt. No. 543]. Pursuant to the Genova Burns Retention Order, the Committee was authorized to employ Genova Burns as its local New Jersey counsel as needed throughout the course of the Chapter 11 Cases. For its services, Genova Burns is compensated on an hourly basis.

29.     Genova Burns filed the Genova Burns Fee Application for an interim allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses for the Fee Period requesting an interim allowance of compensation for professional services rendered in the amount of $359,562.50 and reimbursement of actual and necessary expenses in the amount of $2,161.87 [Dkt. No. 1506].

30.     During the Fee Period, Genova Burns filed three (3) monthly applications for compensation as follows:

| Dated Filed/ Docket No. | Period Covered | Requested | | Paid to Date | |
|---|---|---|---|---|---|
| | | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 06/12/2023 Dkt. 1057 | 05/01/2023 – 05/31/2023 | $127,865.00 | $1,058.55 | $102,292.00 | $1,058.55 |
| 07/14/2023 Dkt. 1204 | 06/01/2023 – 06/30/2023 | $123,787.50 | $191.61 | $99,030.00 | $191.61 |
| 08/24/2023 Dkt. 1401 | 07/01/2023 – 07/31/2023 | $107,910.00 | $911.71 | $86,328.00 | $911.71 |
| **TOTAL** | | **$359,562.50** | **$2,161.87** | **$287,650.00** | **$2,161.87** |

31.     The Fee Examiner's initial report regarding the Genova Burns Fee Application identified the following issues where further information was required to ascertain compliance with the Guidelines:

      a.     Vague Entries;

      b.     Block Billed Entries;

      c.     Staffing Inefficiencies;

      d.     Duplicate Entries;

      e.     Mismatched Time Entries;

       f.       Administrative Entries; and

       g.      Expense-related entries (photocopies)

32.     Genova Burns and the Fee Examiner engaged in multiple productive dialogues to address and resolve the issues raised by the Fee Examiner's initial report.  Both the Fee Examiner and Genova Burns reserve all of their rights with respect to future applications for compensation and recognize that the recommended reduction represents a compromise of the parties' various positions. Accordingly, with regard to the Genova Burns Fee Application, the Fee Examiner recommends allowance of fees in the amount of $344,562.50 and reimbursement of expenses in the aggregate amount of $2,079.67.

**McCarter & English, LLP (Efficiency Counsel for the Committee)**

33.     On February 9, 2023, the Committee filed the *Application for Order Approving and Authorizing the Retention of McCarter & English, LLP as Efficiency Counsel for the Official Committee of Unsecured Creditors of BlockFi Inc., et al., Effective as of December 29, 2022* [Dkt. No. 491].

34.     On March 7, 2023, the Court entered the *Order Authorizing and Approving the Employment and Retention of McCarter & English, LLP as Efficiency Counsel for the Official Committee of Unsecured Creditors of BlockFi Inc., et al., Effective as of December 29, 2022* (McCarter & English Retention Order") [Dkt. No. 588]. Pursuant to the McCarter & English Retention Order, the Committee was authorized to employ McCarter & English as its efficiency counsel as needed throughout the course of the Chapter 11 Cases. For its services, McCarter & English is compensated on an hourly basis.

35.     McCarter & English filed the McCarter & English Fee Application for an interim allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses for the Fee Period requesting an interim allowance of compensation for

professional services rendered in the amount of $866,137.00 and reimbursement of actual and

necessary expenses in the amount of $19,309.77 [Dkt. No. 1511].

36.     During the Fee Period, McCarter & English filed four (4) monthly applications

for compensation as follows:

| Dated Filed/ Docket No. | Period Covered | Requested | | Paid to Date | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 08/14/2023 Dkt. 1349 | 04/01/2023 – 04/30/2023 | $233,856.50 | $11,312.27 | $187,085.20 | $11,312.27 |
| 08/14/2023 Dkt. 1350 | 05/01/2023 – 05/31/2023 | $373,713.50 | $4,764.32 | $298,970.80 | $4,764.32 |
| 08/14/2023 Dkt. 1351 | 06/01/2023 – 06/30/2023 | $224,877.00 | $2,827.28 | $179,901.60 | $2,827.28 |
| 08/18/2023 Dkt. 1370 | 07/01/2023 – 07/31/2023 | $33,690.00 | $405.90 | $26,952.00 | $405.90 |
| TOTAL | | $866,137.00 | $19,309.77 | $692,909.60 | $19,309.77 |

37.     The Fee Examiner notes and appreciates that McCarter & English's timekeeping

was exceptional and substantially in compliance with the UST Guidelines and that the

discussions that occurred during the first period of review were implemented during this fee

period.  The Fee Examiner's initial report regarding the McCarter & English Fee Application

identified the following issues where further information was required to ascertain compliance

with the Guidelines:

        a.      Vague Entries;

        b.      Block Billed Entries;

        c.      Staffing Inefficiencies;

        d.      Transitory Timekeepers;

        e.      Administrative Entries; and

        f.      Expense related issues (photocopying).

38.     McCarter & English and the Fee Examiner engaged in a productive dialogue to

address and resolve the issues raised by the Fee Examiner's initial report. Both the Fee Examiner

and McCarter & English reserve all of their rights with respect to future applications for

compensation and recognize that the recommended reduction represents a compromise of the

parties' various positions. Accordingly, with regard to the McCarter & English Fee Application, the Fee Examiner recommends allowance of fees in the amount of $854,137.00 and reimbursement of expenses in the aggregate amount of $19,309.77.

**M3 Advisory Partners, LP (Financial Advisor to the Committee)**

39.      On January 25, 2023, the Committee filed the *Application for Retention of Professional* seeking entry of an Order authorizing the Committee to retain M3 Partners as its financial advisor [Dkt. No. 402].

40.      On March 20, 2023, the Court entered the *Order Authorizing Retention of M3 Advisory Partners, LP* effective as of January 4, 2023 (the "M3 Retention Order") [Dkt. No. 637]. Pursuant to the M3 Partners Retention Order, the Committee was authorized to employ M3 Partners as its financial advisor. For its services, M3 Partners is compensated on an hourly basis.

41.      M3 Partners filed the M3 Partners Fee Application for an interim allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses for the Fee Period requesting an interim allowance of compensation for professional services rendered in the amount of $1,461,412.50 and reimbursement of actual and necessary expenses in the amount of $3,537.90 [Dkt. No. 1508].

42.      During the Fee Period, M3 Partners filed three (3) monthly applications for compensation as follows:

| Dated Filed/ Docket No. | Period Covered | Requested | | Paid to Date | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 08/09/2023 Dkt. 1332 | 05/01/2023 – 05/31/2023 | $545,397.50 | $262.83 | $436,318.00 | $262.83 |
| 09/12/2023 Dkt. 1480 | 06/01/2023 – 06/30/2023 | $568,735.00 | $2,130.61 | $454,988.00 | $2,130.61 |
| 09/14/2023 Dkt. 1500 | 07/01/2023 – 07/31/2023 | $347,280.00 | $1,144.46 | $277,824.00 | $1,144.46 |
| **TOTAL** | | **$1,461,412.50** | **$3,537.90** | **$1,169,130.00** | **$3,537.90** |

43.     The Fee Examiner notes and appreciates that M3's timekeeping was exceptional and substantially in compliance with the UST Guidelines.  The Fee Examiner's initial report regarding the M3 Partners Fee Application identified potentially duplicative times entries where further information was required to ascertain compliance with the Guidelines and M3 provided an adequate explanation sufficient to allay the Fee Examiner's concerns.  Accordingly, with regard to the M3 Partners Fee Application, the Fee Examiner recommends allowance of fees as requested in the amount of $1,461,412.50 and reimbursement of expenses in the aggregate amount of $3,537.90.

**Elementus Inc. (Blockchain Intelligence and Forensics Expert)**

44.     On January 25, 2023, the Committee filed the *Application for Retention of Professional* seeking entry of an Order authorizing the Committee to retain Elementus as its blockchain intelligence and forensics expert effective as of January 4, 2023 [Dkt. No. 401].

45.     On March 16, 2023, the Court entered the *Order Authorizing Retention of Elementus Effective January 4, 2023* (the "Elementus Retention Order") [Dkt. No. 625]. Pursuant to the Elementus Retention Order, the Committee was authorized to employ Elementus as its financial advisor to provide blockchain intelligence and forensics expertise. Elementus agreed to be compensated on an hourly basis for services.

46.     Elementus filed the Elementus Fee Application for an interim allowance of compensation for professional services rendered and for reimbursement of actual and necessary

expenses for the period from May 1, 2023 through July 31, 2023[2] requesting an interim

allowance of compensation for professional services rendered in the amount of $120,580.00 and

reimbursement of actual and necessary expenses in the amount of $66,509.61 [Dkt. No. 1509].

47.    During the Fee Period, Elementus filed two (2) monthly applications for

compensation as follows:

| Dated Filed/ Docket No. | Period Covered | Requested | | Approved to Date | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 06/27/2023 Dkt. 1127 | 05/01/2023 – 05/31/2023 | $66,690.00 | $31,428.51 | $53,352.00 | $31,428.51 |
| 07/31/2023 Dkt. 1299 | 06/01/2023 – 06/30/2023 | $53,890.00 | $35,081.10 | $43,112.00 | $35,081.10 |
| **TOTAL** | | **$120,580.00** | **$66,509.61** | **$96,464.00** | **$66,509.61** |

48.    The Fee Examiner notes and appreciates that Elementus's timekeeping was

exceptional and substantially in compliance with the UST Guidelines and that the discussions

that occurred during the first period of review were implemented during this fee period.  The Fee

Examiner did not identify any issues or areas of concern regarding the Elementus Fee

Application and recommends allowance of fees in the amount of $120,580.00 and

reimbursement of expenses in the aggregate amount of $66,509.61.

**Miller Nash LLP (Special Local Washington Counsel)**

49.    On June 9, 2023, the Committee filed the *Application for Retention of Miller

Nash LLP as Special Local Washington Counsel to the Official Committee of Unsecured

Creditors* seeking entry of an Order authorizing the Committee to retain Miller Nash as its local

counsel in a matter pending in the United States District Court for the Western District of

Washington effective as of May 26, 2023 [Dkt. No. 1049].

---

[2]  Elementus did not incur any time changes for July or August.

50.     On June 26, 2023, the Court entered the *Order Authorizing Retention of Miller Nash LLP* (the "<u>Miller Nash Retention Order</u>") [Dkt. No. 1120].  Pursuant to the Miller Nash Retention Order, the Committee was authorized to employ Miller Nash as its local counsel to protect the interests of the Committee in a litigation pending in the United States District Court for the Western District of Washington.  Miller Nash agreed to be compensated on an hourly basis for services.

51.     Miller Nash did not file any monthly fee applications but instead filed the Miller Nash Fee Application for an interim allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses for Fee Period requesting an interim allowance of compensation for professional services rendered in the amount of $6,500.00 and reimbursement of actual and necessary expenses in the amount of $0.00 [Dkt. No. 1533].

52.     The Fee Examiner reviewed the Miller Nash Fee Application and did not have any questions, comments, or concerns.  Accordingly, the Fee Examiner recommends allowance of fees in the amount of $6,500.00.

### Conclusion

For the reasons stated above, and in the absence of any objection to the Fee Applications

of the Retained Professionals, the Fee Examiner recommends that the Court enter an Order,

substantially in the form attached hereto as Exhibit A, on an interim basis, granting the interim

fee requests of the Retained Professionals in the amounts recommended, as set forth herein.

Dated: New York, New York
       December 7, 2023

                  Respectfully Submitted,

                  ELISE S. FREJKA

                  415 East 52nd Street | Suite 3
                  New York, New York 10022
                  Phone: 212-641-0800
                  Facsimile: 212-641-0800

                  *Fee Examiner*

**EXHIBIT A**
*(Proposed Order)*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Jeffrey Traurig
**TRAURIG LAW LLC**
One University Plaza, Suite 124
Hackensack, NJ  07601
Tel: (646) 974-8650
E-mail:  jtraurig@trauriglaw.com
*Counsel for the Fee Examiner*

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.*,[1]<br><br>                     Debtors. | Case No. 22-19361 (MBK)<br><br>Judge Michael B. Kaplan<br><br>Chapter 11<br><br>(Jointly Administered) |

### ORDER ALLOWING INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSENT OF EXPENSES OF THE COMMITTEE'S RETAINED PROFESSIONALS

       The relief set forth on the following pages(s), number two (2) through three (3), is hereby **ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, New York 10019.

(Page 2)
BLOCKFI INC., et al.
Chapter 11, Case No.: 22-19361 (MBK) (Jointly Administered)
**Order Allowing Interim Compensation for the Committee's Retained Professionals**

Upon the interim fee applications (the "Interim Applications") of the professionals retained in the above-captioned Debtors' chapter 11 cases by the Official Committee of Unsecured Creditors and listed on **Exhibit A** hereto (collectively, the "Retained Professionals" and each a "Retained Professional"), and this Court having previously authorized the employment of the Retained Professionals in the Debtors' cases; and it appearing that all of the requirements of sections 327, 328, 330, and 331 of title 11 of the United States Code, as well as Rule 2016 of the Federal Rules of Bankruptcy Procedure and the local rules of this Court have been satisfied; and it further appearing that the fees and expenses incurred were reasonable and necessary; and proper and adequate notice of the Interim Applications has been given and that no other or further notice is necessary; and no objections or other responses having been filed with regard to the Interim Applications; and in consideration of the various recommendations of the fee examiner, Elise S. Frejka (the "Fee Examiner") with respect to the Interim Applications as set forth in the *Fee Examiner's Consolidated Final Report Regarding Second Interim Fee Applications of Professionals Retained by the Committee* [Docket No. __] (the "Consolidated Report"); and the Court having considered the Interim Applications of the Retained Professionals and the Consolidated Report, and good and sufficient cause appearing therefore, accordingly,

**IT IS HEREBY ORDERED THAT:**

1.      The Interim Applications are hereby approved in the amounts set forth on **Exhibit A** attached to this Order.

(Page 3)
BLOCKFI INC., et al.
Chapter 11, Case No. : 22-19361 (MBK) (Jointly Administered)
**Order Allowing Interim Compensation for the Committee's Retained Professionals**

2.      The Retained Professionals are hereby granted allowance of compensation and reimbursement of expenses in the amounts set forth on <u>Exhibit A</u> under the columns entitled "Total Amount Allowed per Court Order (Fees)" and "Total Amount Allowed per Court Order (Expenses)" (jointly, the "<u>Allowed Professional Claims</u>").

3.      The Wind-Down Debtors are hereby authorized and directed to remit to each Retained Professional the full amount of the Allowed Professional Claims less any and all amounts previously paid on account of such fees and expenses.  Without limiting the foregoing, any amounts previously held back with respect to the period covered by the Interim Applications may be released in payment of the Allowed Professional Claims.

4.      This Order shall constitute a separate order for each Retained Professional and the appeal of any order with respect to any Retained Professional shall have no effect on the authorized fees and expenses of the other Retained Professionals.

5.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.

**EXHIBIT A**

BLOCKFI INC., et al. Case No.: 22-19361 (MBK)

| Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustment | Total Amount Allowed per Court Order (Fees) | Total Amount Allowed per Court Order (Expenses) |
|---|---|---|---|---|---|---|---|
| Brown Rudnick LLP, *Counsel to the Committee* (Dkt. No. 1507) | 05/1/2023 – 07/31/2023 | $3,352,402.75 | $10,192.00 | $57,658.02 | $0.00 | $3,342,210.00 | $57,658.02 |
| Genova Burns LLC, *Local Counsel to the Committee* (Dkt. No. 1506) | 05/1/2023 – 07/31/2023 | $359,562.50 | $15,000.00 | $2,161.87 | $82.20 | $344,562.50 | $2,079.67 |
| McCarter & English, LLP, *Efficiency Counsel to the Committee* (Dkt. No. 1511) | 04/1/2023 – 07/31/2023 | $866,137.00 | $12,000.00 | $19,309.77 | $0.00 | $854,137.00 | $19,309.77 |
| M3 Advisory Partners, LP, *Financial Advisor to the Committee* (Dkt. No. 1508) | 05/1/2023 – 07/31/2023 | $1,461,412.50 | $0.00 | $3,537.90 | $0.00 | $1,461,412.50 | $3,537.90 |
| Elementus, Inc., *Blockchain Intelligence and Forensic Expert to the Committee* (Dkt. No. 1509) | 05/1/2023 – 07/31/2023 | $120,580.00 | $0.00 | $66,509.61 | $0.00 | $120,580.00 | $66,509.61 |
| Miller Nash LLP, *Special Local Washington Counsel to the Committee* (*Dkt. No. 1533*) | 05/26/2023 – 07/31/2023 | $6,500.00 | $0.00 | $0.00 | $0.00 | $6,500.00 | $0.00 |