| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al*.,<br>　　　　　　　Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: January 16, 2024 at 11:00 A.M. ET**<br>**Response Deadline: January 9, 2024 at 4:00 P.M. ET**<br>**Oral Argument Waived Unless Response Timely Filed** |

## NOTICE OF THE PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION

---

[1]　The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]　On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

> **YOU SHOULD LOCATE YOUR REFERENCE NUMBER OR CLAIM NUMBER AND YOUR CLAIM(S) ON THE SCHEDULES ATTACHED HERETO. PLEASE TAKE NOTICE THAT YOUR CLAIM(S) MAY BE ESTIMATED, CAPPED, OR OTHERWISE AFFECTED AS A RESULT OF THIS MOTION. THEREFORE, PLEASE READ THIS NOTICE AND THE ACCOMPANYING MOTION VERY CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

**PLEASE TAKE NOTICE** that on **January 16, 2024 at 11:00 A.M. (ET)**, or as soon thereafter as counsel may be heard, the above-captioned debtors and debtors in possession (collectively, the "Wind-Down Debtors"), as supervised by Mohsin Meghji as Plan Administrator (the "Plan Administrator"), by and through their undersigned counsel, shall move (the "Motion") before the Honorable Michael B. Kaplan, Chief United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), 402 East State Street, Trenton, New Jersey 08608, or such other physical or virtual location as may be determined by the Court, for entry of an order, substantially in the form submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that in support of the Motion, the Plan Administrator shall rely upon the *Declaration of Amit Cheela in Support of the Plan Administrator's Motion for an Order Capping the Maximum Allowable Amounts and Establishing a Reserve for All Claims to Enable the First Interim Distribution* which sets forth the relevant factual bases upon which the relief requested should be granted.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall: (i) be in writing, (ii) state with particularity the basis of the objection; (iii) conform with the Bankruptcy Court's *Order Granting Debtors' Motion to Establish Certain Notice, Case Management, and Administrative Procedures* [Docket No. 54], and **(iv) be filed with Kroll Restructuring Administration LLC (the "Claims and Noticing Agent"), so as to be received no later than 4:00 pm (ET) seven (7) days before the hearing date set forth above.**

2

**PLEASE TAKE FURTHER NOTICE** that unless responses are timely filed and served,

the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d), and the relief

requested may be granted without further notice or hearing.

Dated: December 20, 2023                    /s/ *Daniel M. Stolz*
                                            _____

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>           Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: January 16, 2024 at 11:00 A.M. ET**<br>**Response Deadline: January 9, 2024 at 4:00 P.M. ET**<br>**Oral Argument Waived Unless Response Timely Filed** |

## THE PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609]. Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Plan.

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as supervised by Mohsin Meghji as Plan Administrator (the "Plan Administrator"), in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Plan Administrator's Motion for an Order Capping the Maximum Allowable Amounts and Establishing a Reserve for All Claims to Enable the First Interim Distribution* (the "Motion"). In support of the Motion, the Plan Administrator respectfully represents as follows:

**Preliminary Statement**

1.     The Plan Administrator and Wind-Down Debtors' overriding goal is to distribute as much value to BlockFi's customers and creditors, as quickly as possible.  BlockFi held many customers' life savings, and the inability of its customers to access their money has caused significant harm.  As a result, the Plan Administrator has been focused on making an interim distribution as quickly as technically and legally possible.  With guidance from the Oversight Board, the Plan Administrator and Wind-Down Debtors are nearly ready to make an interim distribution (the "First Interim Distribution") on all Allowed customer and unsecured claims in this proceeding.

2.     Before a distribution can be made, the Wind-Down Debtors must set appropriate reserves for all disputed or unreconciled claims to ensure that the First Interim Distribution does not prejudice any claimant.  Given the size of the proceeding and number of proofs of claims filed, this is no small task.  But BlockFi's record-keeping has been more than sufficient to identify the assets held in customer accounts that now form the basis of their claims, meaning that the vast majority of customer proofs of claim can be reconciled – or at least estimated for purposes of establishing reserves – in omnibus fashion and at minimal expense. Non-customer claims that

2

assert a dollarized amount can similarly be estimated at their asserted amounts.  Hence this motion:

herein, the Wind-Down Debtors seek to fix the maximum total claims pool at all of the Wind-

Down Debtors to enable distribution.

3.      BlockFi had a wide retail customer base.  Over 34,000 proofs of claim were filed

in this proceeding.  Many filed claims are contingent and/or unliquidated for two reasons:  *First*,

many claimants simply (through no fault of their own) were unfamiliar with how to fill out a proof

of claim and, variously, failed to assert a specific dollar amount they are owed, asserted an amount

clearly inconsistent with their account information, or asserted a claim against the wrong debtor

entity.    *Second*, many claimants took the position that their claims were denominated in

cryptocurrency – not dollars – and expressly refused to assert a specific dollar amount owed.

While understandable, both of these issues mean that the maximum size of the claims pool is

indeterminate.  Without a defined maximum size of the claims pool, no distribution can begin

because the Wind-Down Debtors cannot set appropriate reserves.

4.      The Plan Administrator believes that all claims reconciliation will be complete in

the first quarter of next year, but does not believe that distributions on undisputed claims should

wait on the resolution of all claims.  Accordingly, the Plan Administrator requests that this Court

enter an order that will enable an earlier interim distribution, prior to the conclusion of the claims

reconciliation process.

5.      In sum:

> i.    Attached **<u>Schedule A</u>** sets forth claims the Wind-Down Debtors have
> identified as asserting a specific dollar amount ("<u>Asserted Dollar Claims</u>").
> Asserted Dollar Claims will be estimated at the **higher of** (a) their asserted
> dollar amount or (b) their scheduled amount, if the Wind-Down Debtors
> have linked their claim to a scheduled claim, on an entity-by-entity basis.
> This will ensure that such claims are reserved against in full, but protect the
> Wind-Down Debtors (and other creditors) against assertions that the claim
> amount should be enhanced due to unidentified contingent or unliquidated

claim components, or efforts to amend the claims to assert a higher dollar amount.

    ii.   **Schedule B** sets forth claims the Wind-Down Debtors have identified as asserting no specific dollar amount, but as to which the Wind-Down Debtors have identified a correlating BlockFi account and scheduled claim ("Identified Unliquidated Claims"). Identified Unliquidated Claims will be estimated at their scheduled amount. By estimating these claims at their scheduled amounts, the Wind-Down Debtors ensure that a reserve will be kept for such claims.

   iii.   **Schedule C** sets forth all claims the Wind-Down Debtors have been unable to link to any BlockFi account, and that do not assert any specific dollar amount of liability ("Unidentified Unliquidated Claims," and together with the Asserted Dollar Claims and Identified Unliquidated Claims, the "Capped Claims.") Unidentified Unliquidated Claims will be estimated at zero.

   iv.   To the extent that an Unidentified Unliquidated Claim is later linked with a BlockFi account,[3] or a previously identified linkage to a Capped Claim is corrected, the Plan Administrator requests that Bankruptcy Rule 3003(c)(4) be waived so that such claim's scheduled amount will not be deemed superseded by the filed proof of claims set forth on Schedules A-C (the "Motion Schedules"). In other words, this process should not deprive any claimant of the ability to recover an amount correlating to their pre-petition BlockFi account, as scheduled by the Wind-Down Debtors, solely on the basis that such account information has not yet been properly linked to the claimant's filed proof of claim, or was improperly linked.

    v.   Although the names of individuals on the Motion Schedules are redacted, each claimant appearing on the Motion Schedules will receive individualized notice from Kroll indicating on which Schedule their Capped Claim may be found and the proposed capped amount of such Capped Claim(s).

   vi.   To the extent that any claimant disagrees with the proposed estimated amount of their Capped Claim, the claimant may file an objection to this Motion. The Plan Administrator intends to resolve any objections out of court, and encourages claimants who disagree with the proposed cap to file an Objection indicating their requested cap amount. To the extent that a reasonable fixed capped amount (in dollars) can be agreed upon, the Plan Administrator will be willing to consent to such capped amount for present

---

[3]   BlockFi tracked customers by a customer identification number, or CID. Where a claim has been matched to a CID, BlockFi has determined that claim is associated with the scheduled claim for that CID. However, numerous claims that may be customer claims have not yet been associated with a CID – and, thus, not yet associated with a scheduled claim.

purposes, reserving all rights to address the merits of the claim at a later date. Customers or creditors who wish to file an Objection should review the **Filing and Serving an Objection** information found below.

    vii.   Prior to the hearing, the Plan Administrator will file revised schedules setting forth any revised proposed caps resulting from claimant input, claims settlements, or resolved objections.

6.    If this Motion is approved, promptly thereafter the Plan Administrator will determine an appropriate *pro rata* distribution amount, fund *pro rata* reserves for Capped Claims in each applicable Wind-Down Debtor, and file a notice indicating the anticipated distribution percentage for each entity. The Plan Administrator will then make the First Interim Distribution with respect to (1) all scheduled claims not superseded by a filed claim, and (2) all Allowed Claims[4]. All other claims will receive a catchup distribution upon allowance.

### Jurisdiction and Venue

7.    The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.).

8.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.    The bases for the relief requested herein are sections 105(a) and 502(c) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Relief Requested

10.    The Plan Administrator seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) capping the maximum allowable amounts of all claims on

---

[4] Claim #12020 filed by Visa U.S.A. Inc. has been deemed Allowed and is not subject to further objection or modification.

Schedules A, B, and C, including any contingent and unliquidated unsecured claims; (b) authorizing the Plan Administrator to set reserves based on the maximum allowable amount of the Capped Claims as determined by this Motion; (c) waiving the provisions of Bankruptcy Rule 3003(c)(4) to the extent set forth herein; and (d) establishing January 15, 2024 as the Record Date for the First Interim Distribution.

### **Background**

11.     On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases and the Motion are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed on the Petition Date and is incorporated by reference herein.

12.     On November 29, 2022, this Court entered an order [Docket No. 42] authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

13.     On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

14.     On January 30, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of Claims (collectively, the

6

"Proofs of Claim") in these Chapter 11 cases. The Bar Date Order established (a) March 31, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "Claims Bar Date"), (b) May 30, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"), (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection, and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Debtors' Bankruptcy Schedules (defined below), as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim.

15.     On January 12, 2023, the Debtors filed: the Schedules of Assets and Liabilities of: BlockFi Inc. (Case No. 22-19361) [Docket No. 242] (as amended by Docket Nos. 460 and 856), BlockFi International Ltd. (Case No. 22-19368) [Docket No. 247] (as amended by Docket Nos. 462 and 858); BlockFi Investment Products LLC (Case No. 22-19370) [Docket No. 249], BlockFi Lending LLC (Case No. 22-19365) [Docket No. 251] (as amended by Docket Nos. 461 and 857), BlockFi Lending II LLC (Case No. 22-19374) [Docket No. 253], BlockFi Services Inc. (Case No. 22-19371) [Docket No. 255], BlockFi Trading LLC (Case No. 22-19363) [Docket No. 257], BlockFi Ventures LLC (Case No. 22-19367) [Docket No. 259], and BlockFi Wallet LLC (Case

No. 22-19366) [Docket No. 261] (collectively and as may be amended from time to time, the "Bankruptcy Schedules") pursuant to Bankruptcy Rule 1007.

16.    On February 2, 2023 and February 3, 2023, the Debtors caused a bar date notice to be published in The New York Times and The Royal Gazette, respectively, as set forth in the affidavits filed at Docket Nos. 471 and 472. With the assistance of Kroll Restructuring Administration LLC (the "Claims and Noticing Agent"), the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the *Order Granting Debtors' Motion to Establish Certain Notice, Case Management and Administrative Procedures* [Docket No. 54] (the "Case Management Order") on:

a.    the Master Service List (as defined in the Case Management Order);

b.    all known creditors and other known holders of potential Claims against the Debtors as of the date of entry of the Bar Date Order, including all persons or entities listed in the Bankruptcy Schedules for which the Debtors have mailing addresses or email addresses;

c.    all entities that have filed Proofs of Claim in these Chapter 11 Cases as of the date of entry of the Bar Date Order;

d.    all known non-Debtor equity and interest holders of the Debtors as of the date of entry of the Bar Date Order;

e.    all entities who are party to executory contracts and unexpired leases with the Debtors;

f.    all entities who are party to litigation with the Debtors;

g.    all current and former employees (to the extent that contact information for former employees is available in the Debtors' records);

h.    all regulatory authorities that regulate the Debtors' businesses, including consumer protection, environmental, and permitting authorities; and

i.    all taxing authorities for the jurisdictions in which the Debtors maintain or conduct business.

The Bar Date Notice and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/blockfi.

17.     On March 13, 2023, the Court entered its *Order Granting Debtors' Motion for Entry of an Order (A) Approving the (I) Omnibus Claims Objection Procedures and Form of Notice, (II) Omnibus Substantive Claims Objections, and (III) Satisfaction Procedures and Form of Notice, (B) Waiving Bankruptcy Rule 3007(e), and (C) Granting Related Relief* [Docket No. 609] (the "Claims Procedures Order").

18.     On September 26, the Court confirmed the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1609] (the "Plan"). On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming the Plan, which went effective on October 24, 2023 [Docket No. 1788].

19.     In tandem with the processes described above, Debtor BlockFi International Ltd. has entered judicial liquidation proceedings in Bermuda.  The Bermuda court has recognized and approved the Plan and authorized certain winding-up actions consistent with and contemplated by the Plan.  Among these actions, the Bermuda court authorized an order akin to a bar date, which expired on December 8, 2023.  A small number of claims (approximately 14) have been filed in the Bermuda proceeding, and will be reconciled and may receive distributions through that proceeding.  This Motion and the relief sought herein have no effect on any claims or distributions

through the Bermuda proceeding, other than that the Wind-Down Debtors will seek to set an appropriate reserve to accommodate any actions that may be necessary in the Bermuda proceeding.

20.     The Confirmation Order approved the selection and appointment of the Plan Administrator and members of the Oversight Committee (who include the Joint Liquidators appointed in the Bermuda proceeding).  Since the Effective Date, the Plan Administrator, with the oversight and active involvement of the Oversight Committee, has worked to marshal additional assets, prosecute and defend against litigation, and prepare for the First Interim Distribution.

## Overview of Claims Process

21.     As of the date hereof, over 34,000 Proofs of Claim have been filed against the Wind-Down Debtors.  Approximately 18,000 of those Proofs of Claim have not yet been reconciled by the Wind-Down Debtors.  The vast majority of these claims are customer claims that do not correspond to the books and records of the Wind-Down Debtors – as noted above, they either assert an improper amount, or no amount, assert liability against the wrong Debtor entity, or some combination of the foregoing, or simply do not correlate to any known liability of the Wind-Down Debtors to a customer or other person.

22.     To date, the Wind-Down Debtors have filed 12 omnibus objections, and as of the date of this Motion have expunged and disallowed or otherwise permanently resolved over 3,000 claims, with an additional approximately 12,000 claims pending expungement through the Twelfth Omnibus Objection to Wallet Claims. The Wind-Down Debtors continue to reconcile claims and file new omnibus objections to allow such claims in the amounts owed as reflected on the books and records of BlockFi.  The Wind-Down Debtors plan to continue filing new omnibus objections during the pendency of this motion as well.

23.     Although considerable effort has been devoted to reconciling claims, the Plan Administrator does not believe the claims reconciliation process can be concluded sufficiently in advance of any otherwise feasible First Interim Distribution.  Moreover, because preparing and maintaining the Wind-Down Debtors to make a First Interim Distribution entails significant ongoing overhead and personnel costs, the Plan Administrator believes that a significant cost advantage may be achieved by expediting the First Interim Distribution.  In other words, capping the total claims pool at this time will not only result in customers receiving distributions sooner, but ultimately receiving greater recoveries from this process.

### Relief Requested

24.     By this Motion, the Plan Administrator requests that, pursuant to sections 105(a), 502(a), and 502(c), the Court:

   i.   Cap the maximum allowable amount and priority of the Capped Claims set forth on the Motion Schedules (the "Capped Amount").

   ii.  Specifically, with respect to the Asserted Dollar Claims at Schedule A, establish a Capped Amount that is the **higher of** the scheduled claim or the filed claim (if such filed claim is associated with a scheduled claim),[5] or in the event no scheduled claim has been identified, in the amount asserted.[6]

   iii. With respect to the Identified Unliquidated Claims at Schedule B, establish a Capped Amount that is the amount of the scheduled claim(s) associated with the claimant's BlockFi account.

---

[5]    Schedule A reflects if the claim was associated with a scheduled claim as of the filing of Schedule A.

[6]    There is one exception to the methodology set forth herein: Ankura Trust Company filed a claim (the "Ankura Claim") based on an indenture associated with BIA holders.  The unsecured portion of that claim is entirely duplicative of the claims of BIA holders, and accordingly this Motion seeks to estimate that portion of the Ankura Claim at zero.  This does not affect any rights of Ankura with respect to any claims for reimbursement of fees and expenses pursuant to Paragraph 127 of the *Revised Findings Of Fact, Conclusions Of Law, And Order (I) Approving The Disclosure Statement Relating To The Third Amended Joint Chapter 11 Plan Of Blockfi Inc. And Its Debtor Affiliates Pursuant To Chapter 11 Of The Bankruptcy Code On A Final Basis And (II) Confirming The Third Amended Joint Chapter 11 Plan Of Blockfi Inc. And Its Debtor Affiliates Pursuant To Chapter 11 Of The Bankruptcy Code (Additional Technical Modifications)* (Docket No. 1660, the "Plan Order") (and all rights of the Plan Administrator with respect to such fees and expenses are reserved).  Failure to do so would require that the Plan Administrator reserve twice against all BlockFi Inc BIA accounts, halving potential distributions.

    iv. With respect to the Unidentified Unliquidated Claims at Schedule C, estimate such claims at zero.

    v. Waive the provisions of Bankruptcy Rule 3003(c)(4) to preserve (and not deem superseded) any claim in the Bankruptcy Schedules that is not now, but is hereafter understood to correlate to any claim on the Motion Schedules, such that the claimant listed on the Motion Schedules may receive a distribution upon such claim listed in the Bankruptcy Schedules notwithstanding any Capped Amount. In other words, provide that to the extent the Wind-Down Debtors later identify or correct any link between any claim subject to this Motion and any BlockFi account obligation reflected in the Bankruptcy Schedules, the relevant claimant shall be entitled to recovery based on the accurate account information in the Bankruptcy Schedules and shall not be prejudiced by this Motion or the Court's order hereon.

    vi. Permit the Plan Administrator to set reserves based on all Allowed Claims, and based on the Capped Amount of all other claims not yet Allowed or Disallowed.

    vii. Establish January 15, 2024 as the Record Date for the First Interim Distribution.

25. Each of the Motion Schedules contains columns indicating the Capped Amount of the claims at issue at each priority level ("Capped Admin," "Capped Secured," "Capped Priority," "Capped Unsecured"). Entries within each column are either blank or provide amounts of liability tied to one or more Wind-Down Debtor. For the avoidance of doubt, the Plan Administrator seeks to cap each claim at the amount(s) set forth as to the indicated Wind-Down Debtor(s) at the priority level indicated by the column, and $0 for all other Wind-Down Debtors, including $0 for all Wind-Down Debtors if the space is blank.

26. Nothing set forth in this Motion shall be deemed or construed as an admission by the Plan Administrator or the Wind-Down Debtors with respect to any unresolved claim, or to waive any right to take any action without court approval authorized by the Plan. Further, nothing in this Motion is intended to limit the ability of the holder of any unresolved claim to obtain a

determination of the validity of their claim and received the appropriate capped reserve if and when such claim becomes allowed.

## **Basis for Relief Requested**

27.    The Plan Administrator cannot commence the First Interim Distribution without setting reserves for claims not yet Allowed; setting reserves is impossible in this case without establishing a maximum allowable amount for all claims.  Completing the claims reconciliation process will take additional months (at a minimum).  During those months, Plan Administrator would be forced to maintain, at creditor expense, the expensive infrastructure necessary and contemplated (and required by the Plan) to make an initial distribution of Cash and Digital Assets through BlockFi's platform.  Such extensive and costly delay in the administration of the estate provides cause to estimate and cap outstanding claims to enable prompt distribution.

28.    The Plan Administrator thus seeks an alternative avenue to determine the maximum claims pool, reserve funds, and make a distribution to the vast majority of BlockFi account holders who, by virtue of their account rights reflected on the Bankruptcy Schedules, hold Allowed and undisputed claims.

29.    This Court has authority to establish reserves for unresolved claims in connection with an interim distribution pursuant to sections 502(a) and 502(c) of Bankruptcy Code, in conjunction with section 105(a) of the Bankruptcy Code.  Bankruptcy Code section 105(a) grants this Court broad authority and discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. 105(a). Section 502(c) of the Bankruptcy Code provides that "there shall be estimated for purposes of allowance under this section . . . any contingent or unliquidated claim, the fixing of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(l).

30.     "Estimation by the Court is mandatory, provided that the movant establishes that fixing or liquidation of the claim would unduly delay the administration of the case." *In re RNI Wind Down Corp.,* 369 B.R. 174, 191 (Bankr. D. Del. 2007) (noting that the purpose of section 502(c) is to prevent the debtor's estate from "being held hostage by the fixing or liquidation of an unliquidated or contingent claim"). This Court has broad discretion to estimate claims, and estimation can be used for the purpose of allowing timely distributions under a chapter 11 plan. *See, e.g., Bittner*, 691 F.2d at 137 n.9 (explaining "Congress has given bankruptcy courts broad discretion to estimate a claim pursuant to section 502(c)(1)."); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 279 (Bankr. S.D.N.Y. 2007) (estimating claim for distribution reserves); *In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 544463, at *8 (Bankr. S.D.N.Y. Jan. 17, 2006) (same). *In re C.F. Smith & Assoc.*, 235 B.R. 153, 159 (Bankr. D. Mass. 1999) ("[a] section 502(c) estimation is often employed for purposes other than adjudicating the merits of claim . . . In some cases, courts have estimated the value of a claim for all purposes, including distribution") (internal citations omitted).

31.     In *In re Enron Corp.* — a chapter 11 case where the reorganized debtors emerged from chapter 11 to wind-down and liquidate remaining assets, the debtors, relying on sections 105(a), 502(c) and the debtors' plan of reorganization, sought court approval to establish reserves for certain contingent and unliquidated claims representing the debtors' estimate of the maximum liability that could potentially be asserted by the affected claimants. Fourth Omnibus Motion for Order, Pursuant to 11 U.S.C. §§105(a), 502(c), and 1142, Estimating Certain Contingent or Unliquidated Claims for Purposes of Establishing Reserves, *In re Enron Corp.*, Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. entered Sept. 23, 2005), ECF No. 27555. In overruling an objection by one of the affected claimants, the Court established claim reserve amounts for the affected claims

14

and ordered that each claim reserve amount represented the maximum amount in which the claim could ultimately be allowed. *In re Enron Corp.*, 2006 WL 544463, at *1. Here, the Plan Administrator requests that this Court cap claim amounts for the purpose of establishing the required reserves and unlocking the significant cash and digital assets held by the Wind-Down Debtors to their customers and creditors as soon as practicable.

32.    The Asserted Dollar Claims on Schedule A may contain unidentified unliquidated or contingent claims along with a liquidated claim.  The Identified Unliquidated Claims on Schedule B and Unidentified Unliquidated Claims on Schedule C have been identified as unliquidated or contingent.  Claims are considered unliquidated when "a specific value has not been determined." *Denunzio v. Ivy Holdings, Inc. (In re E. Orange Gen. Hosp., Inc.)*, 587 B.R. 54, 59 n.10 (D.N.J. 2018) (quoting Black's Law Dictionary 282 (10th ed. 2014)); *see also In re RNI Wind Down Corp.*, 369 B.R. at 183 (explaining "[a]n unliquidated claim is a claim in which the amount owed has not been determined.").

**A.  <u>The Capped Amounts Are Appropriate</u>.**

33.    The Asserted Dollar Claims in Schedule A are proposed to be estimated at the <u>**higher**</u> of (a) the asserted amount; or (b) the scheduled amount of the account associated with such claim.  In each case, claims have been estimated against each relevant debtor entity, such that a claimant who has claims against multiple entities (e.g. a claimant who had both a BIA account at BlockFi Inc. and a collateral account at BlockFi Lending LLC) has a separate estimated amount against each entity.  A claimant who asserted a claim against the wrong entity (based on the books and records) will have their asserted claim against the entity they identified, <u>**and**</u> the claim reflected on the Bankruptcy Schedules against the correct entity.

34.     The estimated amounts for Asserted Dollar Claims in Schedule A are appropriate. Where the claimant asserted a dollar amount higher than their scheduled amount, capping their claim at their asserted amount protects the claimant by reserving against the full amount of their asserted liquidated claim, allowing the claimant to litigate their objection to the amount shown on the Wind-Down Debtors' books and records.  Where a claimant filed a claim *lower than* their scheduled amount (or against the wrong debtor), the Wind-Down Debtors believe this was likely in error and will seek to allow the claim in the accurate (increased) amount shown by the Wind-Down Debtors' books and records.

35.     The Identified Unliquidated Claims in Schedule B comprise claims for entirely unliquidated amounts and claims not denominated in US dollars (e.g. amounts denominated in cryptocurrency), that in either case have been linked to specific BlockFi account(s) and as such are reflected (and dollarized) in the Bankruptcy Schedules.  Such claims, pursuant to Section 502(b) of the Bankruptcy Code, the Plan, and previous rulings of this Court, must be fixed at a dollar amount based on prices as of the Petition Date.  Accordingly, the Wind-Down Debtors propose to estimate such claims using the prices as of the Petition Date of the amounts in their respective accounts – i.e., the amount reflected in the Bankruptcy Schedules.

36.     No other estimated amount is workable under the circumstances of this case.  The Wind-Down Debtors cannot reserve against claims denominated in digital assets, given their significantly fluctuating values, and it is infeasible and unfair (and not required, given the Bankruptcy Code, the confirmed Plan, and previous rulings of this Court) to use a date selected by the claimant to value and dollarize any claim.  Thus, the Wind-Down Debtors propose to estimate each such claim as an unsecured claim against the appropriate Wind-Down Debtor shown on the books and records.

37.     The Unidentified Unliquidated Claims on Schedule C are asserted in entirely unliquidated amounts or are not denominated in US dollars (e.g. amounts denominated in cryptocurrency), and have **not** been linked to specific BlockFi account(s).  Again, such claims must be fixed at a dollar amount, but given that such claims cannot be linked to a BlockFi account or other liability of the Wind-Down Debtors, no such dollar amount exists.  To the extent that any claimant on Schedule C asserted an unliquidated claim based on a non-customer claim, the time to provide a liquidated amount is now.  The Plan Administrator submits that any party unable to provide a liquidated claim amount (or a reasonable cap on the potential amount of their claim) at this juncture should not be permitted to delay distributions to allowed claims.

38.      In each case, the Proposed Capped Amount is supported by the Declaration of Amit Cheela, which is attached hereto as **Exhibit B** (the "Cheela Declaration").

39.     The Plan Administrator thus believes that each proposed Capped Amount is appropriate.  However, to the extent that any claimant disagrees with their Capped Amount, they may file an objection to such Capped Amount, and/or respond to the Plan Administrator directly.  The Plan Administrator will attempt to agree with the claimant on an appropriate and reasonable capped dollar amount for such claim, and only if such agreement cannot be reached will seek a ruling from the Court.

**B.  Limited Waiver of Rule 3003(c)(4) Is Appropriate and Necessary.**

40.     Bankruptcy Rule 3003(c)(4) provides that the filing of a proof of claim supersedes any scheduling of that claim or interest.  Strict construction of the rule, without waiver here, would result in various forms of inequity, for example:

> a.     A claimant with a scheduled claim against BlockFi Lending LLC, who files a proof of claim against BlockFi Inc., arguably has no compensable claim against either BlockFi Lending LLC or BlockFi Inc.

b.      A claimant with a scheduled claim of $1,000, who files a proof of claim for $100, has a compensable claim of only $100.

c.      A claimant who files a proof of claim for return of non-dollarized digital assets, that incorrectly states their customer identification number, and would likely be reflected in the Motion Schedules as an Unidentified Unliquidated Claim and capped at zero, notwithstanding that the Debtors' books and records do reflect an obligation to the claimant.

41.      The Plan Administrator seeks herein a waiver of Rule 3003(c)(4) to avoid the inequitable circumstances described above.  BlockFi customers should have the opportunity to receive recoveries that reflect their entitlements as recorded in the Wind-Down Debtors' books and records and Bankruptcy Schedules.  Thus, the Plan Administrator and Wind-Down Debtors expressly preserve all affected claimants' rights as reflected in BlockFi's books and records and Bankruptcy Schedules in the event such errors are identified and corrected later, even if an affected claimants do not respond to this Motion.  Moreover, the Plan Administrator and Wind-Down Debtors will continue to "object" to claims containing errors as described above, so that no BlockFi customer is prejudiced by such formalities.[7]

### C.   <u>The Requested Record Date Is Appropriate and Necessary</u>.

42.      The Plan Administrator requests this Court set January 15, 2024 as the Record Date for the First Interim Distribution and for any subsequent distributions until altered by an order of this Court.  Under the Plan, the Record Date (the date at which no further claims transfers will be recognized for the purposes of a distribution) was set as the Plan Effective Date, unless altered by order of this Court.  Plan at Art. I.A.112. The Plan Administrator submits that January 15, 2024 is an appropriate date that recognizes existing claims transfers, and gives adequate notice of the

---

[7]      For the avoidance of doubt, where a scheduled claim has been associated with a claim on Schedule A or Schedule B and the Capped Amount increased to account for such scheduled claim, the Plan Administrator **<u>does not</u>** request that Bankruptcy Rule 3003(c)(4) be waived, and the Plan Administrator does not intend to reserve against such superseded claims (as such reserves would be duplicative of the proposed Capped Amounts for the filed claim).

deadline to all parties currently contemplating a claims transfer.  The Plan Administrator currently

expects to set a new Record Date for any substantial future distribution, but to the extent additional

distributions are made close to the First Interim Distribution (such as through the release of

reserves through claims objections) the Plan Administrator intends to use the Record Date set

pursuant to this Motion.

## **Reservation of Rights**

43.    Nothing contained in this Motion or any actions taken pursuant to any order

granting the relief requested by this Motion is intended or should be construed as: (a) an admission

as to the validity of any particular claim against the Wind-Down Debtors, (b) a waiver of the Wind-

Down Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement

to pay any particular claim, (d) an implication or admission that any particular claim is of a type

specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a

request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code, or (f) a waiver or limitation of the Wind-Down Debtors' rights under the

Bankruptcy Code or any other applicable law.

## **Waiver of Memorandum of Law**

44.    The Plan Administrator respectfully requests that the Court waive the requirement

to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis

upon which the Plan Administrator relies is set forth herein and the Motion does not raise any

novel issues of law.

## **Filing and Serving an Objection**

45.    <u>Filing and Serving any Objections</u>. **An Objection will be deemed timely only if**

**it is filed with the Claims and Noticing Agent and served upon the U.S. Trustee so as to be**

19

**actually received by or before 4:00 p.m. (prevailing Eastern Time) on the day that is seven**

**(7) calendar days before the Hearing on the Motion** (the "Objection Deadline"), unless the

Plan Administrator consents to an extension in writing:

    a.   Claims and Noticing Agent. Objections should be submitted through the Kroll portal using the unique ID number provided with the Motion. The portal can be accessed by clicking the link in the email serving this Motion on creditors or by navigating to https://restructuring.ra.kroll.com/blockfi/ and selecting the link under Claim Capping Motion.

       If you are unable to submit an Objection through the portal, Objections may be submitted by first class mail, or overnight delivery to the following:

        i.  First Class Mail
           BlockFi Inc. Cap Response Processing Center
           c/o Kroll Restructuring Administration LLC
           Grand Central Station, PO Box 4850
           New York, NY 10163-4850

       ii.  Overnight Mail
           BlockFi Inc. Cap Response Processing Center
           c/o Kroll Restructuring Administration LLC
           850 Third Avenue, Suite 412
           Brooklyn, NY 11232

    b.   U.S. Trustee. Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Jeffrey Sponder, Esq. (Jeffrey.M.Sponder@usdoj.gov) and Lauren Bielskie, Esq. (Lauren.Bielskie@usdoj.gov).

## No Prior Request

46.    No prior request for the relief sought in this Motion has been made to this Court

or any other court.

## Notice

47.    The Plan Administrator will provide notice of this Motion to the following parties

and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the

District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) creditors whose

claims are on Schedules A, B, and C; c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the attorneys general in the states where the Debtors conduct their business operations; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Plan Administrator submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

        **WHEREFORE**, the Plan Administrator respectfully requests entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

[<em>Remainder of page intentionally left blank</em>]

Respectfully Submitted,

Dated: December 20, 2023

/s/ *Daniel M. Stolz*
_____

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

22

**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| In re:<br><br>BLOCKFI INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br><br>Hearing Date: January 16, 2024 @11:00 A.M. ET |

**ORDER GRANTING PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION**

The relief set forth on the following pages, numbered two (2) through four (4) and Schedules A, B, and C is **ORDERED**.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

(Page 2)

| | |
|---|---|
| Debtors: | BlockFi Inc. |
| Case No. | 22-19361(MBK) |
| Caption of Order: | ORDER GRANTING PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION |

| | |
|---|---|
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*Attorneys for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |

Upon consideration of the *Plan Administrator's Motion for an Order Capping the Maximum Allowable Amounts and Establishing a Reserve for All Claims to Enable the First Interim Distribution* (the "Motion")[1]; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 3)

| | |
|---|---|
| Debtors: | BlockFi Inc. |
| Case No. | 22-19361(MBK) |
| Caption of Order: | ORDER GRANTING PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION |

and 1409; and due and proper notice of the Motion having been provided;  and it appearing that

no other or further notice of the Motion need be provided; and the Court having held a hearing to

consider the relief requested in the Motion (the "Hearing"); and all objections, if any, to the Motion

having been withdrawn, resolved, or overruled; and the Court having found and determined that

the relief sought in the Motion is in the best interests of the Wind-Down Debtors, their respective

estates and creditors, and all parties-in-interest; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the

record of the Hearing, and all of the proceedings had before the Court; and after due deliberation

and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The Capped Claims set forth on the Motion Schedules are each capped at the

amounts and priorities listed therein, against the Wind-Down Debtor entities listed therein, for

purposes of setting the maximum allowable amount of such claim, and no claim amendments

increasing those maximum amounts shall be allowed.  The Plan Administrator shall not be required

to reserve on any claim for any asserted amounts above such claims' Capped Amount.

3.      The provisions of Bankruptcy Rule 3003(c)(4) shall not apply to deem superseded

any scheduled claim associated with a claim on the Motion Schedules that was not, as of the date

of the filing of those schedules, known to the Wind-Down Debtors be associated with such claim.

4.      January 15, 2024 shall be the Record Date for the First Interim Distribution and any

subsequent distribution (unless altered by further order of this Court).

(Page 4)

| | |
|---|---|
| Debtors: | BlockFi Inc. |
| Case No. | 22-19361(MBK) |
| Caption of Order: | ORDER GRANTING PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION |

5.      Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Wind-Down Debtors, (b) a waiver of the Wind-Down Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Wind-Down Debtors' rights under the Bankruptcy Code or any other applicable law.

6.      The Plan Administrator and Wind-Down Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

7.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

8.      Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

9.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## Exhibit B

**Declaration of Amit Cheela**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>                 Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: January 16, 2024 @ 11:00 AM ET**<br>**Response Deadline: January 9, 2024 @ 4:00 p.m. ET**<br>**Oral Argument Waived Unless Response Timely Filed** |

## DECLARATION OF AMIT CHEELA IN SUPPORT OF PLAN ADMINISTRATOR'S MOTION FOR AN ORDER CAPPING THE MAXIMUM ALLOWABLE AMOUNTS AND ESTABLISHING A RESERVE FOR ALL CLAIMS TO ENABLE THE FIRST INTERIM DISTRIBUTION

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

I, Amit Cheela, pursuant to 28 U.S.C. § 1746, declare:

1.      My name is Amit Cheela. I am over the age of 21. I am the Chief Financial Officer for the debtors (collectively, "BlockFi" or the "Wind-Down Debtors") in the above-captioned Chapter 11 Cases. Accordingly, I am in all respects competent to make this declaration (the "Declaration").

2.      I submit this Declaration in support of the *Plan Administrator's Motion for an Order Capping the Maximum Allowable Amounts and Establishing a Reserve for All Claims to Enable the First Interim Distribution* (the "Motion") filed contemporaneously herewith.

3.      Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the professionals in this case and/or employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the Wind-Down Debtors' operations. I am authorized to submit this Declaration on the Wind-Down Debtors' behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      The claims reconciliation process is ongoing and is not expected to be completed until several months into 2024.

5.      The claims reconciliation process involves using the data provided by the claimant on their Proof of Claim and the data associated with a customer's BlockFi account to ensure that each filed Proof of Claim is matched to a customer account when possible. This process sometimes involves a manual review of the Proof of Claim to confirm that the matching process is accurate, which can delay claims reconciliation.

6.      I have read and reviewed the Motion, including the information regarding the Asserted Dollar Claims, Identified Unliquidated Claims, and Unidentified Unliquidated Claims[3] set forth on Schedules A, B, and C to the Motion, and I am familiar with the information contained in those documents. In consultation with the Wind-Down Debtors' advisors, I have concluded that the Capped Claims on Schedules A, B, and C should be capped in the amounts and priorities listed therein, and against the Wind-Down Debtor entities listed therein, for purposes of setting the maximum allowable amount of such claim.

7.      Accordingly, to allow for a quicker interim distribution to creditors, I believe that the Proposed Order should be granted and that each such Capped Claim should be capped in the amounts and priorities listed in Schedules A, B, and C.

I hereby declare under the penalty of perjury that the foregoing is true and correct.

Executed on <u>December 20, 2023</u>          By:     <u>/s/ *Amit Cheela*          </u>
                                                                  Amit Cheela
                                                                  Chief Financial Officer to the Wind-
                                                                  Down Debtors

---

[3] Capitalized terms used but not defined in this Declaration shall have the meanings set forth in the Motion.