**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br>                    Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date:** February 6, 2024<br>**Response Deadline:**<br>**Oral Argument Waived Unless Response Timely Filed** |

## THE WIND-DOWN DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AND RELEASE OF CLAIMS AND CAUSES OF ACTION BY AND AMONG THE WIND-DOWN DEBTORS AND 3AC AND (II) GRANTING RELATED RELIEF

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

The estates of BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or, the

"Debtors" or, the "Wind-Down Debtors" as applicable), by and through undersigned counsel,

hereby file this *Wind-Down Debtors' Motion for an Order (I) Authorizing and Approving the*

*Settlement and Release of Claims and Causes of Action By and Among the Wind-Down Debtors*

*and 3AC and (II) Granting Related Relief* (the "Motion"). In support of the Motion, the

Wind-Down Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Wind-Down Debtors file this Motion to approve and effectuate the settlement

and release of the various claims and causes of action asserted by and among Three Arrows Capital

Ltd. (in liquidation) ("3AC"), Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited,

in their respective capacities as the duly authorized joint liquidators of 3AC (the "3AC Joint

Liquidators") and the Wind-Down Debtors (collectively, the "Settlement Parties" and the relevant

underlying settlement, the "3AC Settlement").  The key terms of the 3AC Settlement are reflected

in that certain *Settlement Agreement and Release* by and among the Settlement Parties and dated

January 17, 2024 (the "Settlement Agreement") attached hereto as **Exhibit A**.

2.      From the outset of these chapter 11 cases, BlockFi's restructuring efforts have

focused on returning customer funds as efficiently and quickly as possible.  Upon emergence, the

Wind-Down Debtors are making swift progress towards that goal, having recently moved to

consummate the "First Interim Distribution" to creditors in the near term.[3]  While such

distributions will provide much-needed interim relief, the Wind-Down Debtors recognize that

---

[3]      *See* Docket No. 2006.

pursuing and defending against various third-party claims represents the next pivotal step in returning value to creditors.

3.      3AC is a critical counterparty in this regard.  3AC filed claims against BlockFi with an aggregate value of nearly $283 million. BlockFi contends it is owed approximately $129 million from 3AC (the "BlockFi Claim").[4]  For the past several months, BlockFi and 3AC have been mired in several disputes, not only with respect to the disallowance/estimation of the 3AC Claims (defined below), but also the proper forum in which to litigate such issues.

4.      Given the wide-ranging sources of contention, the Wind-Down Debtors were keenly aware of the magnitude of uncertainty involved, including the risk that protracted litigation would deplete the estates.  After extensive and hard-fought negotiations, the Wind-Down Debtors are pleased to announce an agreement.  The 3AC Settlement has three critical components, as further discussed below.

5.      *First*, 3AC would be entitled to an allowed general unsecured and unsubordinated claim against the estate of BlockFi Lending (the "Allowed 3AC Claim"), ███████████

███████████████████████████████████████████████████████████████████████████

███

---

[4]      *See* Disclosure Statement, Section II(c)(vi).



6. *Second,*



7. *Third*, the "3AC Releasing Parties[5]" and the "BlockFi Releasing Parties[6]" agree to

unconditionally and irrevocably release each other from, among other things, all past and present

---

[5]  The "3AC Releasing Parties" means, collectively, and in each case in its capacity as such: (a) the 3AC Debtor, (b) the Joint Liquidators (in their respective capacities as such), and (c) (x) with respect to each of the foregoing persons or entities in clauses (a)-(b), each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

[6]  The "BlockFi Releasing Parties" means, collectively, and in each case in its capacity as such:  (a) the BlockFi Debtors, (b) the BlockFi Wind-Down Debtors, and (c)(x) with respect to each of the foregoing persons or entities, each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment

claims, counterclaims, liabilities, debts (whether based in contract, tort, law, or equity) and whether

foreseen or unforeseen, fixed or contingent (including any derivative claims held by the BlockFi

Wind-Down Debtors, 3AC and/or the 3AC Joint Liquidators) in connection with the BlockFi

Claims, the 3AC Proofs of Claim, and the Loan Documents (each as defined in the Settlement

Agreement).

8.      In sum, the 3AC Settlement inures several material benefits to the BlockFi estates,

including (i) resolving the 3AC Claims; (ii) avoiding the precarious possibility of a litigated

judgment valuing the 3AC Claims in an amount █████████████████████████;

(iii) saving the Wind-Down Debtors considerable money and time associated with litigating the

novel and complex legal issues raised in these disputes; (iv) ████████████████

████████ and (v) allowing the Wind-Down Debtors to focus their efforts on making and

enhancing distributions to creditors.  Indeed, liquidating and resolving the 3AC claim, together

with certain other relief recently sought by the Wind-Down Debtors, should facilitate a near-term

interim distribution to creditors, with significantly enhanced recoveries for creditors of BlockFi

Lending in particular.

9.      Accordingly, and for all of the reasons set forth herein, the Wind-Down Debtors

submit that entry into the 3AC Settlement is fair and equitable, reasonable, and in the best interests

of the estates. The Wind-Down Debtors respectfully request that the Court grant the relief

requested in this Motion, approve the Settlement Agreement, and enter the Proposed Order.

---

bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with
respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's
respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

## JURISDICTION AND VENUE

10.     The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.).
The Wind-Down Debtors confirm their consent to the Court entering a final order in connection
with this Motion to the extent that it is later determined that the Court, absent consent of the parties,
cannot enter final orders or judgments in connection herewith consistent with Article III of the
United States Constitution.

11.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The bases for the relief requested herein are sections 105(a) and 363(b) of title 11
of the United States Code (the "Bankruptcy Code"), rules 2002(a)(3), 6004, 9019(a) of the Federal
Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002, 9019-3, and rule 9013-1
of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local
Rules").

## BACKGROUND

### A.  BlockFi and 3AC Prepetition Transacting Relationship

13.     BlockFi Lending LLC ("BlockFi Lending") made a series of loans (the "Loans")
to 3AC. The Loans were secured by certain digital assets including Bitcoin (BTC), interests in
Grayscale Bitcoin Trust (GBTC), and other digital assets, securities, cash, general intangibles,
investment property, and other financial assets (collectively, the "Collateral").

14.     As market instability caused its Collateral to deteriorate in value in April and May
2022, BlockFi Lending made margin calls to 3AC pursuant to its loan agreements.  3AC made
certain cash payments and provided new collateral to BlockFi Lending in May and June 2022.

15. In June 2022, 3AC defaulted on the Loans, and BlockFi Lending accelerated the Loans and foreclosed on outstanding Collateral with notice to 3AC. The proceeds of the Collateral were insufficient to repay the Loans.

**B. 3AC Insolvency Proceedings**

16. On June 27, 2022, 3AC commenced a liquidation proceeding before the British Virgin Islands ("BVI") Court (the "BVI Court" and the underlying proceeding, the "BVI Proceeding"). Russell Crumpler and Christopher Farmer were appointed as joint liquidators and foreign representatives of Three Arrows (the "3AC Joint Liquidators") and obtained recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code before the U.S. Bankruptcy Court for the Southern District of New York (the "3AC Chapter 15 Court"), Case No. 22-1020 (the "3AC Chapter 15", and together with the BVI Proceeding, the "3AC Proceedings").

17. On May 24, 2023, the 3AC Joint Liquidators applied in the BVI Proceeding for authority to file a chapter 11 case in the United States on behalf of 3AC, but the application was denied. The 3AC Joint Liquidators have since appealed the BVI Court's decision.[7]

**C. The Chapter 11 Cases**

18. On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases and the Motion are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors'*

---

[7] Certain litigation claims are unavailable to 3AC unless it is authorized to commence a Chapter 11 proceeding. *See* 11 U.S.C. § 1521(a)(7) (restricting Chapter 15 debtor access to certain Bankruptcy Code avoidance powers).

*Chapter 11 Petitions and First Day Motions* [Docket No. 17] (the "First Day Declaration"), which

was filed on the Petition Date and is incorporated by reference herein.

19.     On November 29, 2022, this Court entered an order [Docket No. 42] authorizing

the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to

Bankruptcy Rule 1015(b).  These chapter 11 cases are being jointly administered under lead Case

No. 22-19361.

20.     On December 21, 2022, the United States Trustee for the District of New Jersey

(the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to

section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

### D.   3AC Claims Against BlockFi and BlockFi Claim Objections

21.     On January 30, 2023, this Court entered the *Order (I) Setting Bar Dates for

Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim,

(III) Approving Notice Thereof, and (IV) Granting Related Relief* (the "Bar Date Order") [Docket

No. 440] establishing certain dates and deadlines for filing proofs of claims (collectively, the

"Proofs of Claim") in these chapter 11 cases.  The Bar Date Order established March 31, 2023, at

5:00 p.m. (prevailing Eastern Time) as the last date and time for certain creditors other than

governmental units to file Proofs of Claim based on prepetition claims against any Debtor (the

"General Claims Bar Date").

22.     On the General Claims Bar Date, the 3AC Joint Liquidators filed nine duplicative

proofs of claim against each of the nine entities comprising the BlockFi Debtors purporting to

assert both "Known Claims" and "Unknown Claims" (collectively, the "3AC Initial Claims").  The

3AC Joint Liquidators attached to each proof of claim an identical addendum as the only support for the 3AC Initial Claims[8] (the "3AC Initial Addendum").

23.    In the 3AC Initial Addendum, the 3AC Joint Liquidators asserted that "Known Claims" including (a) preference claims under BVI and "other applicable law" arising from (i) a payment by 3AC to BlockFi on May 9, 2022, in the amount of $71 million, (ii) an interest payment by 3AC on June 3, 2022 of 6,070,123 USDC and (iii) various transfers of cash and digital assets by 3AC, including: 34,225 ETH, 1,905,529 GBTC, 6,150,845 ETHE, 386,477 ETCG, and $1,691,744 USD and (b) BlockFi's obligations to repay loans made by 3AC in the amount of 2,307.75 BTC (the "BTC Loan").[9]  3AC also asserted that BlockFi pledged 31,345 ETH tokens as collateral for the BTC Loan, which "[b]ased on information available" to the 3AC Joint Liquidators, 3AC foreclosed upon prior to the 3AC petition date.[10]  3AC also stated it possessed certain "Unknown Claims," comprising the 3AC Joint Liquidators' reservation of rights in respect of "multiple other transactions between and among Three Arrows and the Debtors that could constitute the basis for additional claims by Three Arrows and its estate against the Debtors[.]"[11]

24.    On August 21, 2023, the Debtors filed the *Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* [Docket No. 1375] (the "Initial 3AC Claim Objection") seeking disallowance of the 3AC Initial Claims as duplicative, vague, insufficiently pled, and unsupported by evidence or documentation.

25.    On September 13, 2023, the 3AC Joint Liquidators attempted to amend the 3AC Initial Claims and again filed nine duplicative proofs of claims (the "3AC Amended Claims" and

---

[8]    The 3AC Initial Claims are numbered: 15592, 25958, 25961, 25923, 25985, 25984, 26292, 25953 and 25964.

[9]    3AC Initial Addendum ¶ 6.

[10]    *Id.*

[11]    *Id.*

together with the 3AC Initial Claims, the "3AC Claims")[12] against each of the nine entities comprising the BlockFi Debtors.  Similar to the 3AC Initial Claims, each amended proof of claim had an identical addendum (the "3AC Amended Addendum") attached as support for the 3AC Amended Claims.

26.     In the 3AC Amended Addendum, the 3AC Joint Liquidators asserted preference claims under BVI law for: (i) a payment by 3AC to BlockFi on May 5, 2022, in the amount of $29 million; (ii) a payment by 3AC to BlockFi on May 9, 2022, in the amount of $71 million; (iii) a transfer by 3AC to BlockFi of 21,025 ETH on May 12, 2022; (iv) a transfer by 3AC to BlockFi of 13,200 ETH on May 18, 2022; (v) a securities account control agreement (the "Canaccord Agreement") executed on May 27, 2022, between 3AC, BlockFi, and Canaccord Genuity Group as broker ("Canaccord") granting BlockFi a security interest in various assets contained in a securities account (the "Canaccord Account"); and (vi) a payment by 3AC to BlockFi on June 3, 2022, in the amount of 6,070,123 USDC (collectively, the "3AC Preference Claims").[13]

27.     The 3AC Joint Liquidators also asserted a claim for $10.4 million in relation to the BTC Loan made by 3AC to BlockFi in which BlockFi pledged 31,345 ETH as collateral (the "Loan Repayment Claim").[14]  The 3AC Amended Addendum also purported to reserve preference claims under section 547 of the Bankruptcy Code, presumably in the event the 3AC Joint Liquidators were successful in appealing the denial by the BVI Court of their application to pursue a chapter 11 case in the United States.

---

[12]   The 3AC Amended Claims are numbered: 33518, 33519, 33520, 33521, 33522 33523, 33524, 33525, 33526.

[13]   3AC Amended Addendum ¶¶ 23–24.

[14]   3AC Amended Addendum ¶ 35.

28.    On October 25, 2023, the Debtors filed the *Wind-Down Debtors' Omnibus Objection to Amended Claims of Three Arrows Capital, Ltd.* [Docket No. 1791] (the "Amended 3AC Claim Objection") seeking disallowance of the 3AC Amended Claims on the grounds that (i) 3AC was attempting to bring substantively new claims after the applicable BlockFi claims bar date, and (ii) regardless, such claims lacked factual and legal support.

### E.    Motion Practice Regarding 3AC Claims

29.    On August 11, 2023, BlockFi filed the *Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* [Docket No. 1346] (the "Estimation Motion").  Through the Estimation Motion, BlockFi sought an order estimating the 3AC Claims at $0 for distribution purposes because, among other things: (i) the 3AC Claims were vague and lacked adequate documentation in support thereof; (ii) any purported claims held by 3AC would be offset by the outstanding deficiency balance owed by the 3AC estates to the Debtors; and (iii) declining to estimate the 3AC claims would unduly delay the administration of these chapter 11 cases.  The 3AC Joint Liquidators objected to the Estimation Motion, citing their inability to access key documents and other difficulties as cause for the Court to adjourn both the claim objection and the estimation motion and order a litigation schedule to afford the parties the opportunity to conduct discovery and present evidence.  Docket No. 1484.  BlockFi thereafter proposed a scheduling order bifurcating the claims objection and estimation processes, to which 3AC also objected.  Docket Nos. 1614, 1682, 1688.

30.    On September 13, 2023, 3AC filed the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* [Docket No. 1492] (the "Stay Relief Motion") seeking to lift the automatic stay to permit the BVI Court or the 3AC

Chapter 15 Court to adjudicate the 3AC Claims in tandem with 3AC's claims against other bankruptcy estates. 3AC argued this was appropriate given the common questions of fact and law underpinning its claims against BlockFi and the estates of *FTX*, *Genesis*, and *Celsius*. BlockFi likewise objected to the Stay Relief Motion.

31.    On September 28, 2023, 3AC filed the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Coordination Among Courts* [Docket No. 1623] (the "3AC Coordination Motion"), requesting consultation among this Court, the BVI Court, the 3AC Chapter 15 Court, and the courts presiding over the pending *FTX*, *Genesis*, and *Celsius* chapter 11 cases to establish procedures to adjudicate the common issues of fact and law raised by 3AC against the various groups of chapter 11 debtors in a centralized forum. BlockFi objected to the 3AC Coordination Motion as well. Docket No. 1687.

32.    At hearings in late September and October, 2023, the Court considered these motions and related scheduling proposals. The Court denied the 3AC Coordination Motion, referred BlockFi and 3AC to mediation and set deadlines for further briefing and hearings on estimation and claims allowance in early 2024.

**F.  Confirmation and Mediation**

33.    On September 26, 2023, the Court held a hearing on the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1609] (the "Plan") and announced its intention to confirm the Plan. On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter*

*11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*

*(Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming

the Plan, which became effective on October 24, 2023 [Docket No. 1788].  Upon the Effective

Date, the Wind-Down Debtors commenced preparations for mediation with 3AC.

34.      On November 14, 2023, the Court's mediation order was entered, with the

Honorable Robert D. Drain (Ret.) to serve as mediator [Docket No. 1876].

35.      On December 4, 2023, the Wind-Down Debtors and the 3AC Joint Liquidators, on

behalf of 3AC, jointly attended a mediation session with the mediator, which resulted in the 3AC

Settlement reflected herein.

## Relief Requested

36.      By this Motion, the Wind-Down Debtors request entry of an Order, substantially in

the form attached hereto: (a) authorizing the Wind-Down Debtors to enter into the 3AC Settlement,

(b) approving the Settlement Agreement as fair, reasonable, and in the best interests of the estates,

and (c) granting related relief.

## Basis for Relief Requested

**I.      The Settlement Agreement Satisfies the Requisite
Standards of Bankruptcy Rule 9019 and Should be Approved.**

37.      Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court
> may approve a compromise or settlement. Notice shall be given to creditors [and]
> the United States trustee . . . as provided in Rule 2002 and to any other entity as the
> court may direct.

Moreover, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

38.     Settlements under Bankruptcy Rule 9019 are favored in bankruptcy because "they avoid the expenses associated with litigating claims that can prove burdensome and expensive for the bankruptcy estate."[15]  As a result, when warranted under the circumstances, "courts are able to craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain."[16]

39.     The authority to approve a settlement or compromise under Bankruptcy Rule 9019 lies within the sound discretion of the bankruptcy court, which must determine whether the settlement is fair, reasonable, and in the best interests of the estate.[17]  The Third Circuit Court of Appeals, in *In re Martin*, set forth a four-factor balancing test under which bankruptcy courts evaluate proposed settlements.  The factors the Court must consider are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[18]

---

[15]   *In re Legarde*, 654 B.R. 74, 85 (Bankr. E.D. Pa. 2023) (citing   *United States v. Alaska Nat'l Bank of the North (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982); *John S. Marandas, P.C. v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993)).

[16]   *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003).

[17]   *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005); s*ee also In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

[18]   *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Nutraquest*, 434 F.3d at 644–45 (applying *Martin's* four-factor test to affirm district court's order approving settlement); *Nebo Ventures, LLC v. Stanziale* (*In re Novapro Holdings, LLC*), No. 18-766-RGA, 2019 U.S. Dist. LEXIS 49047 (D. Del., Mar. 5, 2019) (applying *Martin's* four-factor test to affirm order approving settlement).

40.     The Court need not be convinced the settlement is the best possible compromise; instead, the settlement should be approved if it falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."[19]

41.     The 3AC Settlement falls well within this range and provides material benefits to the estates.  The 3AC Settlement ███████████████ and spares the estates from continued (and substantial) litigation costs.  Moreover, the 3AC Settlement frees the Wind-Down Debtors to focus their efforts on the ongoing litigation with FTX and expediting and enhancing distributions to creditors.  As more fully articulated below, each of the *Martin* factors weigh squarely and heavily in favor of approving the 3AC Settlement.  Accordingly, the 3AC Settlement is fair, reasonable, and in the best interests of the estates.

**A.     <u>Successful Litigation Against 3AC is Uncertain.</u>**

42.     The Wind-Down Debtors have evaluated their prospects of both (a) defending against the 3AC Claims and (b) affirmatively recovering on the BlockFi Claim and concluded that the net benefit of any litigation is uncertain given the risks involved.

43.     As stated above, the 3AC Claims consist of (i) preference claims under BVI law; (ii) a loan repayment claim for funds allegedly advanced to BlockFi; and (iii) "potential" preference claims that could be brought by the 3AC Joint Liquidators if 3AC is permitted to commence chapter 11 proceedings in the US (i.e., the BVI Court's decision is successfully appealed).  Notwithstanding, the largest component of the 3AC Claims (approximately $273 million of the "Known Claims" totaling roughly $283 million) are for "unfair preferences"

---

[19]     *In re Nortel Networks, Inc.*, 522 B.R. 591, 510 (Bankr. D. Del. 2014) (quoting *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008)); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the Martin factors, courts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.").

under BVI law pursuant to Section 245 of the BVI Insolvency Act, roughly analogous to Section 547 of the Bankruptcy Code.

44.    3AC must satisfy several factual predicates of its unfair preference claim, such as that it was insolvent at the time of the alleged voidable transfers and that the transfers allowed BlockFi to recover more than in a liquidation scenario.  BlockFi possesses valuable defenses to the 3AC Claims pertaining to, among other things, the Section 546 safe harbor[20] and transfers made in the ordinary course of business.[21]  But these defenses have differing applicability under BVI law, thus potentially requiring litigation in BVI to recover on the BlockFi Claim even if BlockFi successfully defends against the 3AC Claims before this Court.

45.    The Wind-Down Debtors believe the 3AC Claims have significant vulnerabilities. But the elements of the Claims and BlockFi's defenses would require significant discovery, depositions, expert testimony, and briefing and argument, some of which would involve foreign law, requiring an additional layer of professional expense.  In consultations with their advisors, the Wind-Down Debtors understand that published opinions on relevant BVI law issues do not address the cryptocurrency context and unique facts involved in the 3AC-BlockFi relationship, and BVI claims adjudication and distribution practices create additional uncertainty surrounding BlockFi's affirmative recoveries.  The outcome of litigation on the 3AC Claims and BlockFi Claim is thus uncertain.

---

[20]    Section 546(e) of the Bankruptcy Code provides a "safe harbor" from avoidance of certain types of transactions between sophisticated financial actors.  Section 561(d) of the Bankruptcy Code extends the safe harbor to avoidance claims raised by a foreign representative. *See Fairfield Sentry Ltd.*, 630 F. Supp. 3d 463, 488 (S.D.N.Y. 2022).

[21]    BVI law, like the Bankruptcy Code, provides a defense to avoidance for transactions that take place in the ordinary course of business.  *See* BVI Insolvency Act s. 245(2); *cf.* 11 U.S.C. § 547(c)(2).

**B.  The Wind-Down Debtors Would Likely**
     **<u>Face Difficulties in Collection on the BlockFi Claim</u>.**

46.    As noted above, the Wind-Down Debtors believe the 3AC Claims are vulnerable, and would defend against the claims in this Court if necessary.  But even assuming the most favorable outcome for the Wind-Down Debtors in any matter before this Court, it is not clear that BlockFi could recover upon its own claims against 3AC.  Although it is possible that this Court might make findings of fact with preclusive effect in any BVI proceeding, long-standing principles of comity demand that the nature and amount of the BlockFi claim and timing of distributions be adjudicated in the BVI proceeding.[22]  It is far from clear that the BVI court would accept all of this Court's findings as *res judicata* or award BlockFi a compensable claim in the BVI proceeding in an amount justifying the costs of litigation.

47.    Notwithstanding any successful outcome on the merits, the Wind-Down Debtors view the net financial outcome of litigation against 3AC as highly uncertain.  Litigation could cause significant losses for both 3AC and BlockFi – circumstances supporting the creative global settlement proposed here.

**C.  Litigation Against 3AC Would Be**
     **<u>Exceedingly Complex, Expensive, and Inconvenient</u>.**

48.    For the same reasons that successful litigation against the 3AC is uncertain and affirmative collection on the BlockFi Claim would be difficult, litigation would also be complex, expensive, inconvenient, and protracted.

49.    The 3AC Settlement not only (a)  but also (b) eliminates the

---

[22]    *See In re Atlas Shipping A/S*, 404 B.R. 726 (Bankr. S.D.N.Y. 2009) (quoting *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005)) ("U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding").

possibility that the Wind-Down Debtors would be forced to litigate the 3AC Claims in the BVI

Court (or the 3AC Chapter 15 Court). Litigating in the BVI Court would entail significant

additional expenses, requiring, among other things, local counsel.

50. Notwithstanding, even an adjudication of the 3AC Claims in this Court would be a

costly and time-intensive endeavor. As previously referenced herein, the 3AC Claims present

novel and complex questions of law, particularly when applied in the unchartered crypto context.

Significant estate resources would therefore be diverted to engage in extensive depositions, expert

reports, expert discovery, briefing, and ultimately a full trial on the merits on issues including, but

not limited to, (a) the date 3AC became insolvent, (b) the nature of "ordinary course" conduct in

the cryptocurrency industry and as between the parties, and (c) the applicability of the safe harbor

to cryptocurrency finance businesses and in foreign proceedings.

51. The Wind-Down Debtors estimate the costs of discovery and trial in the many

millions of dollars. This factor also weighs in favor of the 3AC Settlement.

### D. The Paramount Interests of Creditors
### Weighs Heavily in Favor of Approving the 3AC Settlement.

52. The 3AC Settlement inures to the benefit of, and is in the paramount interests of,

creditors of the BlockFi estates. Notably, the 3AC Settlement ████████████████████



53.    Setting aside the immediate value of the allowed claims provided under the Settlement Agreement, the Agreement has the principal virtue of liquidating 3AC's claim ██████ ████████ which allows the Wind-Down Debtors to determine (and reduce) reserves and get money out to creditors.  Any additional delay in returning funds to BlockFi creditors – many of which are retail customers whose life savings have been trapped on the BlockFi platform for over a year – unquestionably imposes significant hardships for customers.  The 3AC Settlement means more money will go to BlockFi customers, faster.

54.    Approval of the Settlement is in the paramount interests of the Debtors' creditors and all key stakeholders in these chapter 11 cases.

## II.    Consummating the 3AC Settlement is a Sound Exercise of the Debtors' Business Judgment Under Section 363(b)(1) of the Bankruptcy Code.

55.    Section 363(b)(1) of the Bankruptcy Code provides that "after notice and a hearing [a debtor] may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

56.    A settlement of claims and causes of action by a debtor constitutes a use of estate property.[23]  Accordingly, if a settlement falls outside the ordinary course of business of the debtor, the settlement requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.[24]

57.    Courts in the Third Circuit have made clear that a debtor may use estate property outside of the ordinary course of business under section 363(b) if there exists a sound business

---

[23]    *See Northview Motors, Inc. v. Chrysler Motors Corp*., 186 F.3d 346, 350–51 (3d Cir. 1999) ("[t]he scope of [11 U.S.C. § 541] is broad. It includes all kinds of property, including tangible or intangible property, *causes of action* . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act . . . ." (quoting H.R.Rep. No. 95–595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323) (emphasis added).

[24]    *See id*.; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").

purpose justifying such action.[25]  Generally speaking, a strong presumption exists "that in making

a business decision the directors . . . acted on an informed basis, in good faith and in the honest

belief that the action taken was in the best interests of the company."[26]  This deference to a debtor's

business judgment in such circumstances shields a debtor's decisions from second-guessing in

ordinary circumstances.[27]

58.    For all the reasons previously stated in connection with the *Martin* factors, the

Debtors' entry into the 3AC Settlement is a reasonable exercise of the Debtors' business judgment

and should be approved.  The 3AC Settlement resolves complex and expensive defensive litigation

███████████████████████████████████████████████████

███████████████████████████████████  The benefits to the Wind-Down Debtors and their

constituents are many and manifest.

### Conclusion

59.    For the reasons set forth herein, authorizing the Wind-Down Debtors to enter into

the 3AC Settlement is in the best interest of the Wind-Down Debtors, their estates, creditors and

all parties in interest in these chapter 11 cases. Furthermore, the Wind-Down Debtors have

demonstrated that the 3AC Settlement satisfies the applicable standard of reasonableness as

---

[25]    *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citing cases); *see also In re Primel*, 629 B.R. 790, 798 (Bankr. W.D. Pa. 2021) ("To obtain court approval of a transaction outside the ordinary course, the debtor must "show that a sound business purpose justifies the debtor's contemplated actions." The standard is deferential, and a court should accept the debtor's justification unless there is evidence of bad faith.").

[26]    *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted)).

[27]    *See In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted)).

required under Third Circuit precedent.  Accordingly, the Wind-Down Debtors request the Court

grant the Motion and approve the 3AC Settlement.

## **Request of Waiver of Stay**

60.     To the extent that the relief sought in the Motion constitutes a use of property under

section 363(b) of the Bankruptcy Code, the Wind-Down Debtors seek a waiver of the

fourteen-day stay under Bankruptcy Rule 6004(h). As explained herein, the relief requested in this

Motion is immediately necessary for the Wind-Down Debtors to be able to continue to preserve

the value of their estates for the benefit of all stakeholders.

## **Waiver of Memorandum of Law**

61.     The Wind-Down Debtors respectfully request that the Court waive the requirement

to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis

upon which the Wind-Down Debtors rely is set forth herein and the Motion does not raise any

novel issues of law.

## **Reservation of Rights**

62.     Nothing contained in this Motion or any actions taken pursuant to any order

granting the relief requested by this Motion is intended or should be construed as (a) an admission

as to the validity of any particular claim, (b) a waiver of the Wind-Down Debtors' rights to dispute

any particular claim on any grounds, (c) a promise or requirement to pay any particular claim,

(d) an implication or admission that any particular claim is of a type specified or defined in this

Motion or any order granting the relief requested by this Motion, (e) a request or authorization to

assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a

waiver or limitation of the Wind-Down Debtors' rights under the Bankruptcy Code or any other

applicable law. If the Court grants the relief sought herein, any payment made pursuant to the

Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Wind-Down Debtors' rights to subsequently dispute such claim.

## **No Prior Request**

63.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## **Notice**

64.     The Wind-Down Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) the attorneys general in the states where the Debtors conduct their business operations; (e) the Settlement Parties; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Wind-Down Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**WHEREFORE**, the Wind-Down Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

Respectfully Submitted,

Dated: January 18, 2024

/s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

EXHIBIT A

FILED UNDER SEAL