| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al*.,<br>         Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2]) |

## PLAN ADMINISTRATOR'S STATUS REPORT TO CREDITORS

    I, Mohsin Y. Meghji, in my capacity as the Plan Administrator (the "Plan Administrator")

for the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

*Chapter 11 of the Bankruptcy Code* [Docket No. 1609] (the "Plan") of BlockFi, Inc., *et al.*

(collectively, the "Wind-Down Debtors"), hereby submit this *Status Report to Creditors* (the

"Report") and respectfully state as follows[3]:

## INTRODUCTION

1.      The Effective Date of the Plan occurred on October 24, 2023.[4] On 10 November

2023, the Bermuda Court issued an order for the compulsory winding up of BlockFi

International Ltd. and appointed the Bermuda Provisional Liquidators as the permanent joint

liquidators ("JLs"). Since the Effective Date the Plan Administrator has worked diligently with

the professionals and remaining BlockFi employees to maximize returns to creditors and wind

down the estates efficiently and effectively. The Plan Administrator and professionals have fielded

thousands of creditor calls and emails regarding a variety of matters, including claims,

distributions, case status, and ongoing litigation. The Plan Administrator intends to file updates

such as this one as and when appropriate to continue communications with BlockFi's large,

global, and diverse creditor constituency. This update is not intended to touch on all matters in

process for the benefit of creditors, but rather to address key matters that may be shared publicly without

adversely impacting the administration of the Wind-Down Debtors.

## INITIAL DISTRIBUTION

2.      The Plan Administrator's overriding goal is to return maximum value to

BlockFi's customers as quickly as possible.  As a result, since the Effective Date one of the top

priorities of the Wind-Down Debtors has been to prepare for initial distributions to creditors as

quickly as possible. The professionals, the Oversight Committee, the JLs and the remaining

---

[3] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

[4] Docket No. 1788.

BlockFi employees have worked collaboratively and tirelessly to ensure that the initial distribution occurs as soon as reasonably practicable and operationally and legally feasible.

3.      The Plan Administrator first focused on facilitating the completion of Wallet withdrawals.  To date, the existing BlockFi platform has allowed Wallet Account holders to withdraw more than $500 million in digital assets. These Wallet withdrawals closed on January 18, 2024 and remaining Wallet balances eligible for immediate withdrawal will be available in cash.

4.      It was vitally important to the Plan Administrator to make an interim distribution to BlockFi creditors on Allowed Claims against estate funds. To begin a first distribution on Allowed creditor claims, a number of steps were required.

A. *First,* Wallet withdrawals had to be completed.  For operational reasons, BlockFi's systems cannot effectively process both Wallet withdrawals and distributions on estate claims.  The successful completion of Wallet withdrawals enables the Plan Administrator to shut down the Wallet product and transition BlockFi's systems to make estate claim distributions.

B. *Second,* reserves for disputed claims needed to be reduced to an acceptable level.  To conduct an interim distribution, the Plan Administrator is required to hold reserves against all asserted claims – even if it is clear those claims are vastly overstated, asserted against the wrong BlockFi entity, or are simply invalid.  The Plan Administrator has, to date, filed 16 Omnibus Objections to Claims and has modified or expunged over 15,000 proofs of claim.

C. *Third*, the Plan Administrator needed to determine the maximum allowable amount of remaining disputed claims.  It is anticipated that completing the claim reconciliation process may take several more months.  Rather than further delay distributions, the Plan Administrator filed a motion to determine the maximum allowable amount of all claims – ensuring that the Plan Administrator could keep the required reserves on disputed claims while allowing creditors with Allowed Claims to receive an initial distribution as quickly as possible.

D. *Fourth*, significant operational issues needed to be solved to ensure that BlockFi's systems could process "in-kind" distributions.

5.      We are pleased to report that after the successful allowance of Wallet withdrawals and significant operational and legal effort the estate is ready to begin initial distributions to holders of Allowed Claims against BlockFi Inc., BlockFi Lending, and BlockFi International. As contemplated by the Plan, initial distributions will come in the form of Digital Assets (BTC, ETH, GUSD, and USDC) or in the form of cash.

6.      We expect to begin initial distributions on certain Allowed Claims on or about January 31, 2024.  The Plan Administrator will open initial distributions on additional tranches of Allowed Claims as quickly as possible, and anticipates opening initial distributions on all Allowed Claims in the month of February 2024.

7.      Initial distributions (recoveries) are expected to be in the range of 21 – 26% for BlockFi Inc., 35 – 41% for BlockFi International and 37 – 43% for BlockFi Lending claimholders, respectively. Such estimated initial distributions consider, among other things, price execution related to rebalancing the portfolio, holdbacks to pay administrative and priority claims and fund the Wind-Down Budget and reserves on account of disputed claims, as well as the impact of the payment of Convenience Claims.

8.      Beginning on or about January 31, 2024, holders of an Allowed Convenience Claim will be able log into BlockFi's updated user interface to view the form and amount of their initial distribution. Those creditors who elected to receive Digital Asset distributions will be able to withdraw tokens directly through the BlockFi platform through March 31, 2024. Those that did not make an election or those that elected to receive cash will be able to access a link redirecting the creditor to a Kroll website to access such payment.

9.      The Plan Administrator will announce additional distributions as they are determined. Creditors will receive communications from the Wind-Down Debtors regarding the

platform reopening, which will include answers to frequently asked questions about distributions.

10.     Customers who submitted a proof of claim will need to have their proof of claim reconciled and Allowed prior to receiving a distribution. The Plan Administrator anticipates filing a Notice of Allowed Claims in February, and additional claims will become Allowed as they are reviewed by the Plan Administrator and/or modified by an order entered by the Bankruptcy Court. Customers who have a scheduled claim against BlockFi Inc., BlockFi Lending, or BlockFi International and did not file a proof of claim will be immediately eligible for initial distributions when they open as to each debtor entity.

11.     Anyone who has questions or requires support related to the initial distribution should first visit the Kroll's support site at https://restructuring.ra.kroll.com/blockfi. In most circumstances, the initial distributions of cryptocurrency will be made to creditors approximately two weeks after a withdrawal request is submitted on the BlockFi platform. Distributions at times can be slower at times of higher volumes. The amount of time between the submission of the withdrawal request and the date on which a creditor receives cryptocurrency will depend on a number of factors, including, among other things, the volume of withdrawal requests then outstanding, security and anti-fraud protocols (which are virtually identical to the protocols that existed prior to the Petition Date), and technical limitations (which vary by blockchain). If a withdrawal request requires identity verification, and this process is not completed, the withdrawal will not be processed.

12.     Initial distributions are based solely on assets currently on hand.  As the Plan Administrator recovers additional assets–or is able to free up existing assets from required reserves–the Plan Administrator will announce further distributions.

## **CONCLUSION**

13.     The top priority for the Wind-Down Debtors has been to facilitate the return of as much value as possible to creditors as quickly and securely as possible. The Plan Administrator, estate professionals, JLs and remaining BlockFi employees will continue to work together to monetize assets for future distribution(s).

14.     This Report touches on only a few of the important issues that the Wind-Down Debtors are working through. The tasks ahead of us include challenges and potential disputes which will inevitably take time to resolve. The Plan Administrator will continue to provide updates to this creditor community as the situation dictates and seek to make future distributions as soon as possible. The Plan Administrator looks forward to continuing to work on behalf of the creditor constituency to return value to the many individuals impacted by this case and the recent turmoil in the broader cryptocurrency market.


Dated: January 31, 2024                              /s/  *Mohsin Y. Meghji*
                                                     Mohsin Y. Meghji, solely in my capacity as
                                                     the Plan Administrator