SUPPLEMENT TO EXHIBIT A


REDACTED SETTLEMENT AGREEMENT

*Execution Version*

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "**Settlement Agreement**") is made and entered into by and among: (i) the BlockFi Wind-Down Debtors;[1] (ii) Three Arrows Capital, Ltd. (in liquidation) (the "**3AC Debtor**"); and (iii) Christopher Farmer and Russell Crumpler of Teneo (BVI) Limited, in their respective capacities as the duly authorized joint liquidators of the 3AC Debtor (the "**Joint Liquidators**" and together with the 3AC Debtor and the BlockFi Wind-Down Debtors, each a "**Party**" and collectively the "**Parties**") appointed in the British Virgin Islands ("**BVI**") liquidation of the 3AC Debtor (the "**BVI Proceeding**");[2]

**WHEREAS**, the 3AC Debtor and BlockFi Lending LLC ("**BlockFi Lending**") are party to that certain Master Loan Agreement dated May 2, 2019 (as amended, amended and restated, supplemented, or modified from time to time, including by that certain Amended and Restated Master Loan Agreement dated April 23, 2020 and that certain first amendment dated September 1, 2021, and together with the other Loan Documents (as defined in the Master Loan Agreement), the "**Loan Documents**");

**WHEREAS**, on June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**"), and the BVI Court appointed Russell Crumpler and Christopher Farmer as the 3AC Debtor's Joint Liquidators;

**WHEREAS**, on July 1, 2022, the Joint Liquidators filed a petition for relief under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Chapter 15 Court**"), commencing a case under the caption *In re Three Arrows Capital Ltd.*, Case No. 22-10920 (Bankr. S.D.N.Y. 2022);

**WHEREAS**, on July 28, 2022, the Chapter 15 Court entered an order recognizing the BVI Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code (ECF No. 47);

**WHEREAS**, on or around July 14, 2022, BlockFi Lending submitted a claim against the 3AC Debtor in the BVI Proceeding (the "**BlockFi Claim**") in the amount of $1.00, under which BlockFi Lending reserved its rights to supplement and amend the BlockFi Claim, and BlockFi Lending asserts that the BlockFi Claim is in the amount of $129,906,796.64;

---

[1]  "**BlockFi Wind-Down Debtors**" shall have the meaning ascribed to the term "Wind-Down Debtors" in the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (ECF No. 1609) (the "**Plan**").

[2]  Capitalized terms used herein shall have the meanings ascribed to such terms in this Settlement Agreement except as expressly provided otherwise.

*Execution Version*

**WHEREAS**, on or around November 11, 2022, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "**FTX Debtors**")[3] filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, commencing the jointly-administered chapter 11 cases under the caption *In re FTX Trading Ltd., et al.*, Case No. 22-11068 (JTD) (the "**FTX Bankruptcy Proceeding**");

**WHEREAS**, on November 28, 2022, the BlockFi Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**BlockFi Debtors**") filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), commencing the jointly-administered chapter 11 cases under the caption *In re BlockFi Inc., et al.*, Case No. 22-19361 (MBK) (the "**BlockFi Bankruptcy Proceeding**");

**WHEREAS**, on or about March 31, 2023, the Joint Liquidators filed proofs of claim on behalf of the 3AC Debtor against the BlockFi Debtors in the BlockFi Bankruptcy Proceeding as set forth in **Exhibit A-1** attached hereto (collectively, the "**Original Proofs of Claim**");

**WHEREAS**, on June 29, 2023, the BlockFi Debtors filed proof of claim nos. 3245, 4091, 4325, 4181, 4214, 4052, 4317, and 4227 in the FTX Bankruptcy Proceeding (as may be supplemented, amended or modified, inclusive of all claims and causes of action of the BlockFi Debtors against the FTX Debtors, the "**FTX Claims**");[4]

**WHEREAS**, on August 11, 2023, the BlockFi Debtors filed the *Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code* (the "**Estimation Motion**") (ECF No. 1346), which sought to estimate the 3AC Debtor's claims at $0;

**WHEREAS**, on August 21, 2023, the BlockFi Debtors filed the *Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.* (the "**Initial 3AC Claims Objection**") (ECF No. 1375), which sought to disallow the Original Proofs of Claim;

**WHEREAS**, on September 13, 2023, the 3AC Debtor filed (i) an omnibus response to the Estimation Motion and Initial 3AC Claims Objection (ECF No. 1484) and (ii) amended proofs of claim on behalf of the 3AC Debtor against the BlockFi Debtors in the BlockFi Bankruptcy Proceeding as set forth in **Exhibit A-2** attached hereto (collectively, the "**Amended Proofs of Claim**" and, together with the Original Proofs of Claim, the "**3AC Proofs of Claim**"), asserting claims in the aggregate amount of at least $283,400,000;

**WHEREAS**, on September 13, 2023, the 3AC Debtor filed the *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. For Entry of an Order (I) Modifying the Automatic Stay*

---

[3]   Certain FTX Debtors filed bankruptcy petitions over the following days. A complete list of the FTX Debtors and relevant petition dates is available on the website of the FTX Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX/Home-Index.

[4]   Except as otherwise expressly provided herein, "**claim**" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

*Execution Version*

*Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (the "**Lift Stay Motion**") (ECF No. 1492), which motion the BlockFi Debtors opposed (ECF No. 1654);

**WHEREAS**, on September 20, 2023, the Bankruptcy Court held a hearing on the Estimation Motion, the Initial 3AC Claims Objection, and the Lift Stay Motion, at the conclusion of which the Bankruptcy Court ordered the BlockFi Debtors to file a renewed objection to the Amended 3AC Proofs of Claim by October 25, 2023, scheduled a merits hearing on the Estimation Motion and claims objection for February 5 and 6, 2024, and carried the Lift Stay Motion to the February 2024 hearing.

**WHEREAS**, the Bankruptcy Court entered an order confirming the Plan, which was docketed on October 3, 2023.

**WHEREAS**, on October 24, 2023, the Effective Date (as defined in the Plan) occurred and the Wind-Down Debtors' Assets (as defined in the Plan) were transferred to and vested in the Wind-Down Debtors and Mohsin Meghji was appointed as Plan Administrator;

**WHEREAS**, on October 25, 2023, the BlockFi Wind-Down Debtors filed the *Wind-Down Debtors' Omnibus Objection to Amended Claims of Three Arrows Capital, Ltd.* (the "**Renewed 3AC Claims Objection**" (ECF No. 1791) and together with the Initial 3AC Claims Objection, the "**3AC Claims Objection**");

**WHEREAS**, on November 14, 2023, the Bankruptcy Court entered an order requiring the Parties to participate in mediation and appointing the Honorable Robert D. Drain as mediator (the "**Mediator**") (ECF No. 1876);

**WHEREAS**, on December 4, 2023, the Parties jointly attended a mediation session with the Mediator;

**WHEREAS**, each Party has an interest in avoiding the cost and expense that would be associated with litigation of the novel and complex issues raised by the litigation between the Parties;

**WHEREAS**, subject to the terms of this Settlement Agreement, the 3AC Debtor and the BlockFi Wind-Down Debtors desire to fully and finally resolve all disputes by and among them, including relating to the BlockFi Claim, the 3AC Proofs of Claim, the Estimation Motion, the 3AC Claims Objection, and the Lift Stay Motion;

**NOW, THEREFORE**, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

## 1.    AGREEMENT OF THE PARTIES

(a)    <u>Allowed 3AC Claim</u>.  On the Settlement Effective Date, the 3AC Debtor shall have an allowed general unsecured claim in the BlockFi Bankruptcy Proceeding against the estate of BlockFi Lending (the "**Allowed 3AC Claim**"), ████████████████████████



*Execution Version*

*Execution Version*



(c)     <u>BlockFi Wind-Down Debtors Cooperation</u>.  The BlockFi Wind-Down Debtors shall use commercially reasonable efforts to cooperate in good faith with the Joint Liquidators by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the Joint Liquidators' use, for purposes of pursuing claims against third parties, of non-privileged documents and information disclosed to the Joint Liquidators, whether such disclosure occurred in connection with the Parties' litigation of the Released 3AC Claims, the Released BlockFi Claims, or otherwise.  Upon the BlockFi Wind-Down Debtors' request, the Joint Liquidators shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding.  The BlockFi Wind-Down Debtors shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the 3AC Debtor with respect to matters relating to the Released 3AC Claims or the Released BlockFi Claims, except as may be required by applicable law.  Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the Joint Liquidator to call as a third party witness or seek third party evidence from the BlockFi Wind-Down Debtors or any of their or the BlockFi Debtors' current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**<u>BlockFi Third Party Targets</u>**") in any litigation relating to the BVI Proceeding, whether in the BVI Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the BlockFi Third Party Targets thereto.

(d)     <u>3AC Debtors and Joint Liquidators Cooperation</u>.  The 3AC Debtors and Joint Liquidators (in their capacity as such) shall use commercially reasonable efforts to cooperate in good faith with the BlockFi Wind-Down Debtors by, subject to applicable confidentiality obligations and with at least five (5) business days' prior written notice, consenting to the BlockFi Wind-Down Debtors' use, for purposes of pursuing or defending against claims, of non-privileged documents and information disclosed to the BlockFi Wind-Down Debtors, whether such disclosure occurred in connection with the Parties' litigation of the Released 3AC Claims,

the Released BlockFi Claims, or otherwise.  Upon the Joint Liquidators' request, the BlockFi Wind-Down Debtors, as applicable, shall seek to have such documents treated confidentially and filed under seal in any applicable litigation or proceeding.  The Joint Liquidators, in their capacity as such, shall not cooperate with or support, directly or indirectly, any party in litigation adverse to the BlockFi Wind-Down Debtors with respect to matters relating to the Released 3AC Claims or the Released BlockFi Claims, except as may be required by applicable law.  Notwithstanding anything to the contrary in this Settlement Agreement, any rights of the BlockFi Wind-Down Debtors to call as a third party witness or seek third party evidence from the Joint Liquidators and the 3AC Debtor or any of its current or former affiliates, officers, directors, principals, equity holders, employees, agents, advisors, consultants, representatives, or other professionals (collectively, the "**3AC Third Party Targets**") in any litigation relating to the BlockFi Bankruptcy Proceeding or other litigation to which the BlockFi Wind-Down Debtors are a party, whether in the Bankruptcy Court or another court of competent jurisdiction, are expressly reserved, as are all of the defenses and objections of the 3AC Third Party Targets thereto.

(e)     Pro Rata Distributions.  The Allowed 3AC Claim shall be entitled to receive pro rata distributions (in the form of cash) with all other allowed Account Holder Claims, General Unsecured Claims, and Intercompany Claims at BlockFi Lending in accordance with the terms of the Plan.

(f)     Transfers.  Effective as of the Settlement Effective Date, the rights to the Allowed 3AC Claim shall be freely transferable (in whole or in part), *provided* that any transferee of any portion of, or interest in, the Allowed 3AC Claim (each, a "**Transferee**") shall, as a condition to such transfer (each, a "**Transfer**"), agree to be bound by the terms of this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim, *mutatis mutandis*, by executing and delivering to the BlockFi Wind-Down Debtors a joinder agreement substantially in the form attached hereto as **Exhibit B** (each, a "**Joinder**").  Upon compliance with the foregoing, the 3AC Debtor and the Joint Liquidators shall be deemed to relinquish their rights under this Settlement Agreement with respect to the acquired portion of the Allowed 3AC Claim and to the extent of such transferred rights.  Notwithstanding anything to the contrary herein, entry into a Joinder shall not affect the releases set forth in section 2 of this Settlement Agreement or require or otherwise cause a Transferee to release any claims against any Party other than the Released 3AC Claims.

(g)     Settlement Motions.  Effective as of the Settlement Execution Date, (i) the BlockFi Wind-Down Debtors agree to promptly file a motion seeking approval of entry into this Settlement Agreement in the BlockFi Bankruptcy Proceeding in form and substance reasonably acceptable to the Joint Liquidators, which shall include a request to seal all confidential commercial information contained in this Settlement Agreement in form and substance reasonably acceptable to the Joint Liquidators, and (ii) the Joint Liquidators agree to seek prompt sanction of this Settlement Agreement by the BVI Court in the BVI Proceeding through an application in form and substance reasonably acceptable to the BlockFi Wind-Down Debtors, which shall include a request to seal this Settlement Agreement.  The Parties otherwise agree to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition is filed in the BlockFi Bankruptcy Proceeding and/or any application seeking the BVI Court's sanction of the Settlement Agreement) to obtain court approval of, and authority to enter into, this Settlement Agreement.  The Joint Liquidators also agree to inform the

BlockFi Wind-Down Debtors, and object to, any direct or indirect, formal or informal, objections or challenges to the Settlement Agreement and/or the Joint Liquidators' decision to enter into the Settlement Agreement and/or the Joint Liquidators' decision to ███████████████████

█████████ The BlockFi Wind-Down Debtors also agree to inform the Joint Liquidators, and object to, any direct or indirect, formal or informal, objections or challenges to the Settlement Agreement and/or the BlockFi Wind-Down Debtors' decision to enter into the Settlement Agreement and/or the BlockFi Wind-Down Debtors' decision to allow the Allowed 3AC Claim in the amount and on the terms set out in this Settlement Agreement ████████████████████
██████

(h)    Withdrawal of Motions and Claims.  No later than three (3) business days after the Settlement Effective Date, the Joint Liquidators and the BlockFi Wind-Down Debtors, as applicable, shall withdraw or dismiss, as applicable, with prejudice (i) the 3AC Proofs of Claim, (ii) the 3AC Claims Objection, (iii) the Estimation Motion, and (iv) the Lift Stay Motion.

2.    **RELEASES**

(a)    3AC Release of the BlockFi Wind-Down Debtors.  Subject to section 2(c) herein, on the Settlement Effective Date, each of the 3AC Releasing Parties,[6] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the BlockFi Releasing Parties (as defined herein) from, against, and in respect of any and all past and present claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the 3AC Debtor and/or the Joint Liquidators that the 3AC Debtor and/or the Joint Liquidators would have been legally entitled to assert in their own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the 3AC Releasing Parties have or may have against the BlockFi Releasing Parties since the beginning of time, under, arising out of, relating to, or in connection with the 3AC Proofs of Claim, the Loan Documents, or any other claim that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in or in connection with any of the foregoing (the "**Released**

---

[6]    "**3AC Releasing Parties**" means, collectively, and in each case in its capacity as such: (a) the 3AC Debtor, (b) the Joint Liquidators (in their respective capacities as such), and (c) (x) with respect to each of the foregoing persons or entities in clauses (a)-(b), each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

*Execution Version*

**3AC Claims**"), in all cases other than the Allowed 3AC Claim and as otherwise provided in this Settlement Agreement.

(b)     <u>BlockFi Release.</u>  Subject to section 2(c) herein, on the Settlement Effective Date, each of the BlockFi Releasing Parties,[7] does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge the 3AC Releasing Parties from, against, and in respect of any and all past and present claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, including any derivative claims asserted or assertable on behalf of the BlockFi Wind-Down Debtors and/or the BlockFi Debtors that any of the BlockFi Wind-Down Debtors and/or the BlockFi Debtors would have been legally entitled to assert in its own right and any claims based on alter ego, vicarious liability, or doctrine of similar import, that the BlockFi Releasing Parties have or may have against the 3AC Releasing Parties since the beginning of time, under, arising out of, relating to, or in connection with the BlockFi Claims, the Loan Documents, or any other claim that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of the foregoing (the "**Released BlockFi Claims**"),

(c)     <u>Exceptions to Mutual Release.</u>

(i)     Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.

(ii)     Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any claims that any BlockFi Wind-Down Debtor may have against any other BlockFi Wind-Down Debtor, which claims are hereby expressly and fully preserved to the same extent as if this Settlement Agreement had not been executed.

(iii)     Notwithstanding any other provision of this Settlement Agreement, for the avoidance of doubt, the 3AC Debtor, the Joint Liquidators, and their subsidiaries and

---

[7]     "**BlockFi Releasing Parties**" means, collectively, and in each case in its capacity as such:  (a) the BlockFi Debtors, (b) the BlockFi Wind-Down Debtors, and (c)(x) with respect to each of the foregoing persons or entities, each such person or entity's predecessors, successors and assigns, parents, subsidiaries, agents, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (y) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x), each such person or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and (z) with respect to each of the foregoing persons or entities in clauses (a), (b), and (c)(x)-(y), such person or entity's respective heirs, executors, conservators, administrators, liquidators, estates, servants, and nominees.

*Execution Version*

affiliates do not release and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any claims or causes of action against the 3AC Debtor or any of the 3AC Debtor's past, present and future agents, heirs, affiliates, employees, founders, executives, officers, directors, equity holders, executors, administrators, liquidators, conservators, attorneys, advisors, successors and assigns.

(d)    <u>Liability of the Joint Liquidators.</u>  The Parties agree that the Joint Liquidators act as agents for the 3AC Debtor.  Neither the Joint Liquidators nor their respective past, present and future agents, affiliates, attorneys, advisors, heirs, executors, administrators, conservators, predecessors, successors and assigns shall incur any personal liability in any circumstances whatsoever, by virtue of this Settlement Agreement, nor in relation to any related matter or claim, nor in respect of any transfer or assignment made or other documents executed pursuant to this Settlement Agreement ███████████████████████████████████████████
███████████████████████████

## 3.    REPRESENTATIONS & WARRANTIES

(a)    <u>Mutual Representations and Warranties of All Parties</u>.  Each Party represents and warrants to each other Party that as of the Settlement Execution Date:

     (i)    subject to the Approval Orders, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

     (ii)    subject to the Approval Orders, this Settlement Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

     (iii)    the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

     (iv)    the execution, delivery, and performance by it of this Settlement Agreement does not violate any provision of law, rule or regulation applicable to it or any of its affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

     (v)    before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

*Execution Version*

4.      **MISCELLANEOUS PROVISIONS**

(a)      <u>No Admission of Liability</u>.  The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any Party regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party for any purpose except as reasonably necessary to enforce its terms.

(b)      <u>Specific Performance</u>.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach of this Settlement Agreement, including an order of the Bankruptcy Court or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy.  For the avoidance of doubt, in the event of a breach of this Settlement Agreement by any Party (as determined by a Final Order), all costs, including reasonable and documented legal fees, relating to enforcement of the Settlement Agreement shall be borne solely by such breaching Party.[8]

(c)      <u>Damages</u>.  Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or such Party's the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)      <u>Further Assurances</u>.  The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby, *provided,* for the avoidance of doubt, that the

---

[8]      "**<u>Final Order</u>**" means, as applicable, an order or judgment of the BVI Court, the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal that has been or may be taken or any petition for certiorari or any motion for a new trial, reargument, reconsideration, or rehearing that has been or may be made or filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the motion for a new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order (if any such motion has been or may be granted), or have otherwise been dismissed with prejudice; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Federal Rules of Bankruptcy Procedure may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

*Execution Version*

(e)     <u>Execution in Counterparts</u>.  This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement.  Delivery of this signed agreement by facsimile transmission or by .pdf, .jpeg, .TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)     <u>Governing Law</u>. This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)     <u>Consent to Venue</u>.  Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the Bankruptcy Court solely for any action, suit or proceeding brought by the BlockFi Wind-Down Debtors arising out of or based upon the 3AC Debtor's or the Joint Liquidators' breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.  Each Party irrevocably and unconditionally submits to and accepts the non-exclusive jurisdiction of the BVI Court solely for any action, suit, or proceeding brought by the 3AC Debtor or the Joint Liquidators arising out of or based upon the BlockFi Wind-Down Debtors' breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.

(h)     <u>Trial by Jury Waived</u>.  EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE).  EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)     <u>Notices</u>.  Any notices required hereunder shall be sent by overnight courier, return receipt requested, and by email, to the following:

*Execution Version*

(i)    If to any BlockFi Wind-Down Debtors:


Mohsin Meghji, Plan Administrator
c/o M3 Partners
1700 Broadway, 19th Fl.
New York, New York 10019
(212) 202-2230
mmeghji@m3-partners.com


with copies to:

**HAYNES & BOONE, LLP**
Richard S. Kanowitz
Aimee M. Furness
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
aimee.furness@haynesboone.com

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq.
Jeffrey L. Jonas, Esq.
Michael S. Winograd, Esq.
Tristan G. Axelrod, Esq.
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
taxelrod@brownrudnick.com

(ii)    If to the 3AC Debtor:

Russell Crumpler
Christopher Farmer
c/o Teneo (BVI) Limited
Banco Popular Building, 3rd Floor
Road Town, Tortola, British Virgin Islands, VG-1110
E-mail: russell.crumpler@teneo.com, Christopher.farmer@teneo.com

*Execution Version*

with copies to:

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas, 32nd Floor
New York, New York 10020
Attn: Adam J. Goldberg, Brett Neve, Nacif Taousse
E-mail: adam.goldberg@lw.com; brett.neve@lw.com;
nacif.taousse@lw.com

(j)     <u>Entire Agreement and Amendments</u>.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings.  This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(k)     <u>Severability</u>.  If any provision in this Settlement Agreement is determined to be invalid, inoperative or unenforceable, the remaining provisions of this Settlement Agreement shall remain in effect if both the economic and legal substance of this Settlement Agreement are not materially affected in any manner adverse to any Party.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

(l)     <u>Assignment</u>.  Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by any Party without the prior written consent of all of the other Parties, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), *provided*, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder, *provided further*, that the Allowed 3AC Claim shall be freely transferable in accordance with Section 1(f) of this Settlement Agreement.  Any Transfer in violation of this Settlement Agreement shall be void and of no force or effect.

(m)     <u>Indemnification</u>.  In the event of the breach of this Settlement Agreement (as determined by a Final Order), the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(n)     <u>Settlement Effective Date</u>. The "**<u>Settlement Effective Date</u>**" shall occur on the first day after the Settlement Execution Date that the Bankruptcy Court and the BVI Court have each entered an order (which order shall have become a Final Order) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement and otherwise reasonably acceptable to each Party (each, an "**<u>Approval Order</u>**").

*Execution Version*

(o)   <u>Confidentiality</u>.  Following the Settlement Execution Date, the BlockFi Wind-Down Debtors, the 3AC Debtor, and the Joint Liquidators, and each of its respective Representatives, shall keep confidential, and shall not, and shall cause their affiliates not to, disclose, directly or indirectly, to any third party any information that such party has been advised in writing is subject to confidentiality restrictions in the BVI Proceeding (collectively, the "**Confidential Information**"), in each case without the other Parties' prior written consent; *provided*, *however*, that each Party may disclose the Confidential Information to such Party's directors, officers, affiliates, partners, employees, agents, advisors, attorneys, accountants, consultants, bankers, financial advisors, and insurers (the foregoing, the "**Representatives**"); *provided, further*, that the BlockFi Wind-Down Debtors may disclose the Confidential Information to the Wind-Down Debtors' Oversight Committee (as defined in the Plan) and the United States Trustee (on a confidential basis).  In the event that any Party or any of its Representatives receives a request from a governmental or regulatory authority, or is required by applicable law, regulation or legal process to disclose any Confidential Information other than as provided above (the foregoing, a "**Legal Requirement**"), such Party shall, to the extent legally permitted, provide the other Parties with prompt notice of such Legal Requirement.  To the extent a Legal Requirement occurs and is continuing, any Party may seek a protective order or other appropriate remedy (the foregoing, a "**Protective Order or Remedy**"), the costs of which shall be borne exclusively by the Party proposing such Protective Order or Remedy.  If, in the absence of a Protective Order or Remedy any Party or any of its Representative is nonetheless, based on the advice of legal counsel, legally compelled to disclose such Confidential Information, such Party shall and shall use commercially reasonable efforts to cause its Representative, as applicable, to furnish only that portion of the Confidential Information which is legally required and shall give the other Parties written notice (unless prohibited by law) of the Confidential Information to be disclosed as far in advance as practicable.

[*The remainder of this page is intentionally left blank.*]

*Execution Version*

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

Date: January 19, 2024

**BLOCKFI, INC.**

BY: /s/

TITLE: Plan Administrator

PRINT NAME:  Mohsin  Meghji

Date: January 19, 2024

**BLOCKFI LENDING, LLC**

BY: /s/

TITLE:  Plan Administrator

PRINT NAME:  Mohsin  Meghji

Date: January 19, 2024

**BLOCKFI TRADING, LLC**

BY: /s/

TITLE:  Plan Administrator

PRINT NAME:  Mohsin  Meghji

Date: January 19, 2024

**BLOCKFI INTERNATIONAL LTD.**

BY: /s/

TITLE:  Plan Administrator

PRINT NAME: Mohsin  Meghji

*Execution Version*

Date: January 19, 2024

**BLOCKFI WALLET, LLC**

BY: */s/*

TITLE:  Plan Administrator

PRINT NAME:  Mohsin  Meghji

Date: January 19, 2024

**BLOCKFI INVESTMENT PRODUCTS, LLC**

BY: */s/*

TITLE:  Plan Administrator

PRINT NAME: Mohsin  Meghji

Date: January 19, 2024

**BLOCKFI LENDING II, LLC**

BY: */s/*

TITLE:  Plan Administrator

PRINT NAME:  Mohsin  Meghji

Date: January 19, 2024

**BLOCKFI SERVICES, INC.**

BY: */s/*

TITLE:  Plan Administrator

PRINT NAME: Mohsin  Meghji

*Execution Version*

Date: January 19, 2024

**BLOCKFI VENTURES, LLC**

BY: */s/*

TITLE:  Plan Administrator

PRINT NAME:  Mohsin  Meghji

Date: January __, 2024

**3AC DEBTOR**

BY: */s/*

TITLE: Solely in his capacity as Joint Liquidator of the 3AC
         Debtor

PRINT NAME: Russell Crumpler

BY: */s/*

TITLE: Solely in his capacity as Joint Liquidator of the 3AC
         Debtor

PRINT NAME: Christopher Farmer

Date: January 17, 2024

**3AC DEBTOR**

BY: /s/

TITLE: Solely in his capacity as Joint Liquidator of the 3AC Debtor

PRINT NAME: Russell Crumpler

BY: /s/

TITLE: Solely in his capacity as Joint Liquidator of the 3AC Debtor

PRINT NAME: Christopher Farmer

Date: January 17, 2024

**JOINT LIQUIDATORS**

BY: /s/ _____

PRINT NAME: Russell Crumpler

BY: /s/ _____

PRINT NAME: Christopher Farmer

*Execution Version*

## Exhibit A-1

**Original Proofs of Claim**

| Claim No. | BlockFi Debtor |
|---|---|
| 15592 | BlockFi Inc. |
| 25923 | BlockFi Trading LLC |
| 25953 | BlockFi International Ltd |
| 25958 | BlockFi Wallet LLC |
| 25961 | BlockFi Investment Products LLC |
| 25964 | BlockFi Lending II LLC |
| 25984 | BlockFi Services, Inc. |
| 25985 | BlockFi Ventures LLC |
| 26292 | BlockFi Lending LLC |

*Execution Version*

## Exhibit A-2

**Amended Proofs of Claim**

| Claim No. | BlockFi Debtor |
|-----------|----------------|
| 33526 | BlockFi Inc. |
| 33523 | BlockFi Trading LLC |
| 33520 | BlockFi International Ltd |
| 33518 | BlockFi Wallet LLC |
| 33525 | BlockFi Investment Products LLC |
| 33519 | BlockFi Lending II LLC |
| 33524 | BlockFi Services, Inc. |
| 33521 | BlockFi Ventures LLC |
| 33522 | BlockFi Lending LLC |

*Execution Version*

**Exhibit B**

**Form of Joinder Agreement**

This Joinder Agreement (the "**Joinder Agreement**") to the Settlement Agreement and Release, dated as of [___], 2024 (the "**Settlement Agreement**"), by and among the BlockFi Wind-Down Debtors and the 3AC Debtor (acting through the Joint Liquidators), is executed and delivered by [___] (the "**Joining Party**") to the BlockFi Wind-Down Debtors as of [___].   Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Settlement Agreement.

1.   <u>Agreement to be Bound</u>.  The Joining Party shall hereafter be deemed to be a "<u>Party</u>" for all purposes under the Settlement Agreement and hereby agrees to be bound by all of the terms and conditions of the Settlement Agreement in such capacity and any representations, warranties, and covenants therein.   Notwithstanding anything to the contrary in the Settlement Agreement, entry into this Joinder Agreement shall not require or otherwise cause a Joining Party to release any Claims against any Party other than any claims related to or arising out of the Released 3AC Claims.

2.   <u>Governing Law</u>. This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

*[Remainder of Page Intentionally Left Blank]*

*Execution Version*

       IN WITNESS WHEREOF, the Joining Party has caused this Joinder Agreement to be executed as of the date first written above.

Name of Joining Party:   _____

By:   _____

Name:   _____

Title:   _____


Notice Address:

_____

_____

_____

Fax:   _____

Attention:   _____


With a copy to:

_____

_____

Fax:   _____

Attention:   _____