| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
|---|---|
| **PULLMAN & COMLEY, LLC** Irve J. Goldman, Esq. (admitted *pro hac vice*) Kristin B. Mayhew, Esq. (NJ Bar No. 021921995) 850 Main Street, 8th Floor PO Box 7006 Bridgeport, CT 06601-7006 (203) 330-2000 igoldman@pullcom.com kmayhew@pullcom.com  *Attorneys for State of Connecticut Department of Banking* | |
| In re:  BLOCKFI INC., *et al*,  Debtors.[1] | Chapter 11  Case No. 22-19361 (MBK) (Jointly Administered)  **Hearing Date: February 27, 2024 @ 10:00 a.m. Response Deadline: February 20, 2024 @ 4:00 p.m.** |

**RESPONSE OF THE STATE OF CONNECTICUT
DEPARTMENT OF BANKING TO THE
<u>WIND-DOWN DEBTORS' OBJECTION TO CLAIM</u>**

TO THE HONORABLE MICHAEL B. KAPLAN, CHIEF UNITED STATES BANKRUPTCY
JUDGE FOR THE DISTRICT OF NEW JERSEY

  Jorge L. Perez, Commissioner of the Connecticut Department of Banking (the

"Commissioner"), by and through his undersigned counsel, hereby files this response to the

Wind-Down Debtors' Objection to Claim Filed by the Connecticut Department of Banking dated

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

December 6, 2023. (Doc. No. 19, the "Objection").  In the Objection, the Wind-Down Debtors

seek an order disallowing Claim No. 31767 filed by the Department on May 30, 2023 (the

"Claim").  The Commissioner objects to any disallowance and respectfully represents as follows:

**Preliminary Statement**

1.      The Department of Banking (the "Department") is an agency of the State of

Connecticut charged with the administration of Part V of Chapter 668, Sections 36a-595 to 36a-

612, inclusive of the Connecticut General Statutes, known as the "Money Transmission Act."

2.      BlockFi Trading, LLC ("BlockFi" or the "Company") is a company licensed as a

money transmitter in Connecticut since April 2, 2020.  Under the license, the Company engaged

in the business of exchanging convertible virtual currency for other convertible virtual currency

and fiat currency, and from at least February 15, 2022 through November 2022, hosting custodial

wallets of virtual currency through various entities and virtual currency platforms.

3.      On November 10, 2022, the Company suspended the ability of its customers,

including Connecticut purchasers, to withdraw monetary value, either virtual or fiat currency,

from its platform with the Company which held at least $2.6 million on behalf of Connecticut

purchasers. This prompted the Department to initiate regulatory action.

4.      On November 28, 2022, the Company and its debtor affiliates (the "Debtors"),

filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United

States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), *In re BlockFi,

Inc.*, Case No. 22-19361 (MBK).

5.      Preliminary reports state the Debtors' financial issues arose because their business

model was flawed, they worked to skirt regulatory compliance, ignored warnings from risk

managers, and unreasonably lent money to FTX Trading/Alameda Research., Ltd.

2

6.      Throughout the bankruptcy proceedings, the Debtors and the Department have disagreed sharply as to the scope of the U.S. Bankruptcy Code's automatic stay and its applicability to the Department's regulatory proceedings concerning the Company's money transmission license in Connecticut. The Department has maintained that the police and regulatory power exception to the automatic stay unequivocally applies to its actions and thus, it was not obligated to obtain relief from the stay before moving forward with regulatory proceedings against the Company, to include assessing penalties for violations of state law as long as it did not seek actual collection of any penalties assessed outside of the bankruptcy case.

7.      The Debtors' position, on the other hand, has been that the police and regulatory power exception does not apply to the Department's actions and have sought to obstruct the progress of the Department's regulatory proceedings at every turn.

8.      On June 13, 2023, approximately one month before an administrative hearing was scheduled to take place, the Debtors initiated an adversary proceeding seeking to enjoin the administrative proceeding as a violation of the automatic stay.  Although the Department continued to maintain that the administrative proceeding could go forward under the police and regulatory power exception to the automatic stay, on July 13, 2023 the Department entered into a standstill agreement with the Debtors whereby the Department agreed to stay its enforcement action pending confirmation of a Chapter 11 Plan.

9.      On October 3, 2023, the Bankruptcy Court entered an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan.  (Doc. No. 1655) (the "Confirmation Order"). On October 24, 2023, the Debtors filed a Notice of Order Confirming the Third Amended Joint Chapter 11 Plan and Occurrence of the Effective Date.  (Doc. No. 1788).  According to the Notice, the Plan became effective on October 24, 2023.

10.     Thereafter, the Department sought to resume its administrative proceedings and scheduled a status conference for December 7, 2023.

11.     On the eve of the scheduled status conference, the Wind-Down Debtors filed an Objection to the Department's unliquidated proof of claim filed with the Debtors' claims agent and assigned Claim No. 31767 (the "Claim").  Although couched as an Objection to Claim, the Objection fails to assert any valid basis for disallowance of the Claim and merely reiterates most of the allegations the Debtors previously raised in their Adversary Complaint and withdrawn stay motion for injunctive and declaratory relief.

12.      In the Objection, the Debtors maintain that the Claim should be disallowed for the following reasons:

    (a)  The automatic stay is still in place to protect estate assets and precludes the Department from moving forward with its regulatory action absent an order from the Bankruptcy Court granting relief from stay.

    (b) The factual basis for a penalty claim is lacking because the Debtors did not engage in unsafe and unsound practices in violation of Conn. Gen. Stat. § 36a-608.

    (c) The Department has submitted to the jurisdiction of the Bankruptcy Court by filing a proof of claim.

    (d) The Department has violated section 525 of the Bankruptcy Code.

    (e) The Commissioner stands alone as the only state regulator seeking to assess civil penalties against Debtor.

    (f) Assessing civil penalties will diminish returns to creditors.

    (g) The platform pause complied with the Debtors terms of service.

13.     As explained more fully below, none of these reasons are valid.  Moreover, the Objection is premature, as the administrative proceedings in which the amount of the Claim will be established have not been concluded. Finally, while the Department does not dispute that the Bankruptcy Court has exclusive jurisdiction over the ultimate allowance and treatment of the

Claim, the proper forum for determining the liability for and *amount* of the Claim is the pending

state administrative proceeding.

**Background and Facts**

14.     On April 2, 2020, the Company obtained a license from the Commissioner to

operate as a money transmitter after meeting various requirements, to include the posting of a

surety bond.  (Declaration of Stacey L. Serrano at ¶ 6 submitted herewith[2]).  The Company

obtained the bonds from Arch Insurance Company ("Arch").  (Id.)  The Company thereafter

engaged in the business of exchanging convertible virtual currency for other convertible virtual

currency and fiat currency by way of a trading platform and hosting custodial wallets of virtual

currency through various other platforms.  (Id.).

15.     On November 10, 2022, the Company suspended the ability of its customers,

including Connecticut purchasers, to withdraw monetary value, either virtual or fiat currency,

from its platform with the Company holding at least $2.6 million on behalf of Connecticut

purchasers. (Id. ¶ 7).  This prompted the Department to initiate regulatory action. (Id.)

16.     On November 14, 2022, the Department received notice from Arch that, effective

December 15, 2022, Arch would be cancelling the surety bond issued to the Company for its

money transmission license in Connecticut.  (Id. ¶ 8).

17.     On November 28, 2022, the Commissioner notified the Company of the surety

bond cancellation and provided the Company with an opportunity to show compliance with the

bond requirement.  (Id. ¶ 9).

18.     On November 28, 2022, the Company filed a petition for relief under Chapter 11

---

[2] References to the Declaration of Stacey L. Serrano will be hereafter referred to as Serrano Decl. at ¶__).

of the United States Bankruptcy Code with the Bankruptcy Court, *In re BlockFi, Inc.*, Case No. 22-19361 (MBK). (Id. ¶ 10).

19.    Preliminary reports state the Company's financial issues arose because its business model was flawed, it worked to skirt regulatory compliance, ignored warnings from risk managers, and unreasonably lent money to FTX Trading/Alameda Research., Ltd. (*In re BlockFi, Inc.*, Case No. 22-19361 (MBK) (Doc. No. 1202, p. 8-9)).

20.    On December 14, 2022, the Company submitted a request to the Commissioner to surrender its money transmission license.  The request was not accepted in accordance with Conn. Gen. Stat. § 36a-602(c) and Conn. Gen. Stat. § 36a-51 (c) (1).  (Id. ¶ 11).  Even if surrender were accepted, it would not alleviate any civil liability arising from acts or omissions occurring prior to surrender, such as the assessment of civil penalties.  Conn. Gen. Stat. § 36a- 599(b).

21.    When the Company failed to comply with the surety requirement, the Commissioner automatically suspended the Company's money transmission license effective December 15, 2022 in accordance with Conn. Gen. Stat. § 36a-602(c). (Id. ¶ 12).

22.    On February 14, 2023, the Commissioner mailed to the Company a Notice of Automatic Suspension, Notice of Intent to Revoke Money Transmission License, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty, and Notice of Right to Hearing.[3]  (Id. ¶ 13). The Commissioner alleged the Company engaged in unsafe and unsound practices in violation of Conn. Gen. Stat. § 36a-608 (a).  (Id.)

23.    On March 15, 2023, the Company advised the Department that the Administrative proceeding should not go forward because of the U.S. Bankruptcy Code's automatic stay.  (Id. ¶ 14).  The Department disagreed that the automatic stay applied.  (Id.)

---

[3] This Notice document was attached to the Commissioner's Claim.

24.     On March 24, 2023, the Commissioner issued a Notification of Hearing and Designation of Hearing Officer setting a hearing date of April 5, 2023 at 10:00 am. (Id. ¶ 15).

25.     The Company requested a hearing concerning the administrative enforcement action and the Commissioner scheduled the hearing for July 20, 2023. (Id. ¶ 16).

26.     On May 30, 2023, the Commissioner filed the Claim against the Company for anticipated civil penalties "up to $100,000 per violation" for alleged violations of state law governing money transmission activities. (Id. ¶ 17).

27.     On June 13, 2023, the Company initiated the Adversary Proceeding with the filing of an Adversary Complaint against the Commissioner in the Bankruptcy Court, claiming the Commissioner's enforcement action violated the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362. (Id. ¶ 18). Adv. Pro. No. 23-01159 (MBK). The Company contemporaneously filed the Motion for Entry of an Order (I) Enforcing the Automatic Stay as to the Connecticut Department of Banking or, In the Alternative, For Injunctive Relief Enjoying Prosecution of the Administrative Proceeding, and (II) Finding that the Connecticut Department of Banking Violated 11 U.S.C. § 525. (Adv. Pro. No. 23-01159 (MBK) (Doc. No. 2). (Id.)

28.     On July 13, 2023, the Department entered into a Standstill Agreement with the Company and agreed to file a motion for a stay of the enforcement action with the Hearing Officer and to move the Bankruptcy Court to stay the adversary proceeding pending Chapter 11 plan confirmation. (Id. ¶ 19).

29.     On July 14, 2023, the Hearing Officer agreed to stay the administrative enforcement action and, on September 13, 2023, the Bankruptcy Court approved the stay of the Adversary Proceeding. (Adv. Pro. No. 23-01159 (MBK) (Doc. No. 7) (Id. ¶ 20).

30.     On October 24, 2023, the Company filed a notice of plan confirmation and

notified the Hearing Officer of the same.  The Hearing Officer thereafter ordered the resumption

of the enforcement proceeding and scheduled a status conference for December 7, 2023. (Id. ¶

21).

31.     On December 6, 2023, the Company filed the present Objection to the Claim and

asked the Bankruptcy Court to disallow it. (Case No. 22-19361 (MBK), Doc. No. 1942) (Id. ¶

22).

## Legal Standard

32.     Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "a proof

of claim executed and filed in accordance with these rules shall constitute prima facie evidence

of the validity and amount of the claim."  A debtor can only overcome the prima facie validity of

a proof of claim by producing sufficient evidence to negate any essential part of the claim. *In re*

*Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3rd Cir. 1992).  Section 502(a) of the Bankruptcy Code

provides that "a claim or interest, proof of which is filed under section 501 of this title, is deemed

allowed, unless a party in interest…objects."  Section 502(b) provides the exclusive grounds for

claims disallowance. *In re Alessi*, No. 11–25686 (MBK), 2012 WL 1072214, at *3 (Bankr. D.

NJ. 2012) (*citing Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 153

(B.A.P. 8th Cir. 2004)). If a creditor's claim does not fall into one of the enumerated statutory

grounds for excluding or reducing that claim in §502(b), then that claim shall be allowed. *Dove-*

*Nation,* 318 B.R. at 153. Being unliquidated is not a valid basis for disallowing a claim, *see In re*

*EP Energy E&P Company*, 646 B.R. 795, 802 (Bankr. S.D. Tex. 2022), and in any event, the

Debtors did not raise this as one of the grounds for disallowance of the Claim in their Objection.

33.     The "basic federal rule in bankruptcy is that state law governs the substance of claims[,]" so that if a claim of a creditor is challenged it will require a determination of whether the creditor's "right to payment," which is the definition of a "claim" under 11 U.S.C. § 101(5)(A), is "recognized under state law." *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec.Co.*, 549 U.S. 443, 450 (2007) (internal quotations and citations omitted).

<u>Argument</u>

1.  <u>The Automatic Stay Is Not Violated by Fixing the Civil Penalty Claim</u>

34.     The Debtors first argue that the Claim should be disallowed because, in accordance with Section IV.D.2 of the Plan, all of the Debtors' assets remain in the bankruptcy estate until one day prior to distribution to holders of allowed claims, and since no distributions have been made, such assets continue to be protected by the automatic stay (Doc. 1942-1, p. 15). However, the Debtors do not articulate what the continued effect of the automatic stay has to do with the validity of the Claim. To the extent the Debtors may be asserting that the Claim should be disallowed because the stay precludes the Commissioner from moving forward to fix the amount of the Claim, a claim objection is not the proper vehicle through which to assert that position.  Foremost, it is not one of the grounds for disallowance of a claim under section 502(b) of the Bankruptcy Code.  But apart from that, the argument that the automatic stay applies to the Commissioner's administrative enforcement proceeding essentially seeks the application of an injunction or a form of declaratory relief that must be raised by adversary proceeding. *See* Fed. R. Bankr. P. 3007(b) ("[a] party interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in any adversary proceeding"); Fed. R. Bankr. P. 7001(7), (9) (adversary proceeding is a "proceeding to obtain an injunction or other equitable relief," or "a proceeding to obtain a declaratory judgment

9

relating to any of the foregoing"). *Cf. LTL Management, LLC v. Those Parties Listed on Appendix a to Complaint* (*In re LTL Management, LLC*), 638 B.R. 291, 296, 299-319 (Bankr. D.N.J. 2022) (court adjudicated motion for an order declaring the automatic stay to apply to certain actions in the context of an adversary proceeding); *Morris v. Crawford* (*In re Zimmer*), 586 B.R. 413, 414 (Bankr. W.D. Pa. 2018) (requiring the filing of an adversary proceeding for determination that automatic stay did not apply, which was a form of declaratory relief).

35.     Even if the stay remains in effect, it does not preclude the Commissioner from moving forward with administrative proceedings to fix the amount of the Claim. The Confirmation Order clearly contemplates the continuation of state regulatory proceedings post-confirmation, expressly stating:

> Any and all state regulatory actions, orders and judgments issued to or against Debtors prior to or during this Bankruptcy Case are not discharged, released, or otherwise affected by confirmation of the Plan. For the avoidance of doubt, the State Regulatory Claimants opt out of any and all releases provided by the Plan.

(Doc. 1655, Special Provisions Regarding State Regulators at p.72, ¶122).  Additionally, both the Plan and the Confirmation Order provide that:

> Notwithstanding any language to the contrary herein, no provision shall (a) preclude any state from enforcing its police or regulatory powers; or (b) enjoin, limit, impair or delay any state from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

(Doc. 1655 at p. 72, ¶123 and p. 161).

36.     It is well-established that the fixing of penalties for violations of state law is a valid exercise of a governmental unit's police and regulatory power under the automatic stay exception at §362(b)(4) of the Bankruptcy Code. *United States v. Nicolet*, 857 F.2d 202, 209 (3rd Cir. 1988) ("that Congress carefully made only enforcement of a money judgment subject to the

automatic stay indicates strongly that mere entry of the judgment was not intended to be

proscribed"); *Penn Terra Ltd. v. Dep't of Env't Res. Com. of Pa,,* 733 F.2d 267 (3d Cir. 1984)

(the mere *entry* of a money judgment by a governmental unit is not affected by the automatic

stay if such proceedings are related to that government's police or regulatory powers); *State of

New Jersey, Department of Environmental Protection v. W.R. Grace & Co.,* (*In re W.R. Grace &

Co.*), 412 B.R. 657, 663 (D. Del. 2009) ("courts throughout this Circuit have determined that

efforts to fix a penalty constitute a valid exception [under] section 362(b)(4)"); *D.M. Barber, Inc.

v. Valverde* (*In re D.M. Barber, Inc.*)*,* 13 B.R. 962, 963 (Bankr. N.D. Tex. 1981*)* (when a

governmental unit is authorized to fix liability for violations, the authority to fix the amount of

penalties is incidental to its police power and, therefore, within section 362(b)(4)).

        37.     In so holding, these courts have relied on House and Senate reports which

describe governmental actions that are excepted from the stay as actions against a debtor "to

prevent or stop violation of fraud, environmental protection, *consumer protection*, safety, or

similar police or regulatory laws, *or attempting to fix damages for violation of such law.*" S. Rep.

No. 989, 95th Cong., 2d Sess. 52, *reprinted* in 1978 U.S. Code Cong. & Ad. News 5787, 5838;

H.R. Rep. No. 595, 95th Cong., 2d Sess. 343, *reprinted* in 1978 U.S. Code Cong. & Ad. News

5963, 6299 (emphasis added).

        38.     In addition, courts have held that a governmental unit is not merely seeking to

protect some pecuniary interest when penalties are levied.  *See In re Hughes*, 879 B.R 49 (Bankr.

S.D. Ohio 1988).  Courts have also held that the police and regulatory power exception includes

actions to fix damages for past conduct regardless of whether the conduct is continuing. *FTC v.

First Alliance Mortgage. Co. (In re First Alliance Mortgage Co.*), 264 B.R. 634, 648 (C.D. Cal.

2001) ("it is inappropriate for it to be determined in the bankruptcy proceeding that

governmental actions will serve no purpose because the offending behavior has allegedly stopped"); *U.S. v. LTV Steel Co., Inc.*, 269 B.R. 576, 586 (W.D. Pa. 2001) (recognizing that "in other areas of the law such as labor, immigration, consumer protection, and attorney discipline courts have repeatedly held that a bankruptcy filing does not stay actions where the imposition of civil penalties for past conduct is being sought"). A State's interest in punishing misconduct and preventing future acts of the same type is a valid police interest and excepted from the automatic stay under § 362(b)(4). *In re Herr*, 26 B.R. 465, 469 (Bankr. D. Maine 1983) (citing *In re Thomassen*, 15 B.R. 907, 909 (Bankr. 9th Cir. 1981)).

39.     As further relevant to this case, courts have consistently held that enforcement actions taken by a state for the failure of a debtor to comply with state law bonding requirements as a condition to maintaining a state license are also excepted from the automatic stay as an exercise of the state's police power under section 362(b)(4) of the Bankruptcy Code. *See Bickford v. Lodestar Energy, Inc.*, 310 B.R. 70, 72, 77-79 (E.D. Ky. 2004) (state's suspension of debtor's authority to do business for failing to maintain reclamation bonding required by state law excepted from the automatic stay under § 362(b)(4)); *In re Synergy Development Corp.*, 140 B.R. 958, 961 (Bankr. S.D.N.Y. 1992) (state's requirement that debtor post a $50,000 bond required by state law in order to continue to do business as a health club was excepted from the automatic stay as an exercise of the state's police power under § 362(b)(4)); *Edwards Mobile Home Sales, Inc. v. Ohio Casualty Ins. Co.* (*In the Matter of Edwards Mobile Home Sales, Inc.*), 119 B.R. 857, 860-61 (Bankr. M.D. Fla. 1990) (state's revocation of debtor's mobile home sales license due to cancellation of its bond required by state law was excepted from the automatic stay under § 362(b)(4)).

40.    Because the Department is seeking merely to fix the amount of damages for

violations of state law, including the failure to maintain a bond, the automatic stay is not

implicated.  Moreover, allegations that the fixing of damages will violate the automatic stay are

insufficient to negate the *prima facie* validity of the Claim.

## II.    Claims of Innocence Should Be Addressed in the Administrative Proceeding

41.    The Debtors next argue that the Commissioner's Claim should be disallowed

because the Company did not engage in unsafe and unsound practices in violation of Conn. Gen.

Stat. § 36a-608(a).  (Doc. No. 1942-1, p. 15).  The Company further argues that the Bankruptcy

Court must determine whether there was a violation of state law and whether penalties should be

imposed.  (Id.)  This is nothing more than argument that is properly presented to the Hearing

Officer in the administrative proceedings and not this Court.

42.    The Company's argument is inconsistent with the express language of the

Confirmation  Order  providing  that  state  regulatory  proceedings  would  not  be  affected  by

confirmation of the Plan.  (See Doc. 1655, p. 72).   It makes no sense that the Bankruptcy Court

would permit the continuation of regulatory proceedings while at the same time limiting the scope

of the issues that may be decided in those proceedings or acting itself as a surrogate for the Hearing

Officer in determining whether the Debtors violated the banking laws of the State of Connecticut

by engaging in unsafe and unsound practices.[4]  The Debtors' claim that BlockFi's actions did not

violate state law are directly related to the pending administrative proceedings.  Accordingly, the

validity of those claims must be determined in the state forum, and this Court should permissively

---

[4] The Commissioner understands that this Court has core jurisdiction to adjudicate objections to claims, even when
they raise questions of state law, but submits that it should not do so when there are pending regulatory proceedings
that raise the precise questions of state law that the Company has raised in its Objection and those proceedings are
excepted from the automatic stay under section 362(b)(4) of the Bankruptcy Code.  In the alternative, the Court should
abstain.  *See infra.* at ¶¶ 47-50.

abstain from adjudicating same as discussed below.   Moreover, preliminary reports directly contradict BlockFi's claims of innocence.   They state that BlockFi's financial issues arose because its business model was flawed, it worked to skirt regulatory compliance, ignored warnings from risk managers, and unreasonably lent money to FTX Trading/Alameda Research., Ltd. (In re BlockFi, Inc., Case No. 22-19361 (MBK) (Doc. No. 1202, p. 8-9).

### III.  The Filing of a Proof of Claim Does Not Require the Bankruptcy Court To Determine the Liquidated Amount of the Claim

#### A.      A Bankruptcy Court Should Yield its Concurrent Jurisdiction to Regulatory Proceedings That are Excepted from the Automatic Stay Under § 362(b)(4)

43.     The Debtors next posit that by filing a proof of claim, the Department consented to the Bankruptcy Court's adjudication of its Claim. (Doc. No. 1942-1, p. 16).  This is inaccurate.

44.     The Commissioner is not attempting to interfere with property of the estate and does not dispute that the claim for civil penalties against the Debtors – if any are determined – must be administered by this Court like any other claim.  Indeed, by filing the proof of claim, the Commissioner correctly recognized that 28 U.S.C. §1334(e)(1) confers on the bankruptcy court exclusive jurisdiction over property of the estate and that the police and regulatory power exception does not extend beyond the fixing of its monetary claim under state law.  However, the filing of a proof of claim does not, as the Debtors' suggest, *require* the Bankruptcy Court to adjudicate the claim.

45.     Even though 28 U.S.C. §157(b) provides that allowance or disallowance of claims against the estate are among the "core proceedings" that Bankruptcy Judges may hear and determine and enter a final judgment, the allowance or disallowance of claims is not one of the issues over which the Bankruptcy Courts have exclusive jurisdiction. *Compare* 28 U.S.C.

§1334(b) ("the district courts shall have original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or relating to cases under title 11") *with* 28

U.S.C. §1334(e)(1) ("district court in which a case under title 11 is commenced or pending shall

have exclusive jurisdiction of all the property, wherever located, of the debtor as of the

commencement of such case, and or property of the estate).

46.      In addition, in *Board of Governors of the Fed. Reserve Sys v. MCorp Financial,*

*Inc.*, 502 U.S. 32, 41-42, 112 S.Ct, 459, 116 L.Ed.2d 358 (1991), the Supreme Court stated that

the time for bankruptcy courts to exercise their "concurrent jurisdiction" under 28 U.S.C.

§1334(b) over matters that are subject to § 362(b)(4) regulatory proceedings is "[i]f and when the

… proceedings culminate in a final order, and if and when judicial proceedings are commenced

to enforce such an order …." *MCorp Financial*, 502 U.S. at 41.

### B.      The Bankruptcy Court Should Exercise Permissive Abstention

47.      Notwithstanding that it has concurrent jurisdiction to allow and disallow claims

against the estate, the Bankruptcy Court has broad discretion to decline to exercise such

jurisdiction. *See generally, G-I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings, Inc.),* Case

No. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered), Civil Action No. 17-0077, 2017

WL 1788656 at *13 (D.N.J. May 5, 2017) (citing *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)).

While the Commissioner maintains that the Connecticut administrative enforcement proceedings

are excepted from the automatic stay under § 362(b)(4) and should proceed on that basis, this

Court may, and should, permissively abstain from hearing the instant claim objection proceeding

under 28 U.S.C. § 1334(c)(1).

48.      28 U.S.C. §1334(c)(1) provides in relevant part that "nothing in this section

prevents a district court in the interest of justice, or in the interest of comity with State courts or

respect for State law, from abstaining from hearing a particular proceeding arising under title 11

or arising in or related to a case under title 11." This statute "manifests federal respect for State

law and policy." *G-I Holdings*, 2017 WL 1788656, at *12 (quoting *In re Pan American Corp.*,

950 F.2d 839, 846 (2d. Cir. 1991)). In addition, it may be properly invoked to abstain from

hearing a claim objection proceeding without the necessity of filing a separate motion. *Tonopah*

*Solar Energy, LLC v. CMB Export, LLC* (*In re Tonopah Solar Energy, LLC*), Case No. 20-11844

(KBO), 2022 WL 958117, at *7, 9-10 (D. Del. Mar. 30, 2022) (holding that a bankruptcy court

may permissively abstain from hearing a claim objection proceeding, *sua sponte*, particularly

when the claims involve purely state law issues).

49.     While courts in the Third Circuit consider a number of factors for permissive

abstention, not all factors necessarily need to be considered and no one factor is necessarily

determinative. *G-I Holdings,* 2017 WL 1788656, at *13. Courts need only apply the factors

flexibly, as their relevance and importance will vary with the particular circumstances of each

case. *Id.* (citations and quotation marks omitted).

50.     In this case, because the issues involved with the Department's Claim are

exclusively issues of state law that arise in the context of pending regulatory proceedings that

will determine the validity and amount of the Claim, it is entirely appropriate for this Court to

permissively abstain from adjudicating the Objection. *See MV Realty, PBC, LLC v. Office of the*

*Attorney General, State of Florida, Dept. of Legal Affairs* (*In re MV Realty PBC, LLC*), 2024

WL 500191, at *9 (Bankr. S.D. Fla. Feb. 7, 2024) (holding that permissive abstention was

warranted with respect to multiple state court enforcement actions out of respect for state law

and stating, "[i]n the various state matters, the defendants [states] pursue relief under statutes

designed to protect their citizens from fraudulent and harmful schemes, and statutes and

regulations designed to ensure that properly qualified entities and individuals provide certain

services to the public.  These are interests historically policed by the states, consistent with the

concepts of federalism embodied in the Constitution.");  *Tonopah Solar Energy, LLC v. CMB*

*Export, LLC* (*In re Tonopah Solar Energy, LLC*)*,* Case No. 20-11844 (KBO), 2022 WL 958117,

at 9-11 (D. Del. Mar. 30, 2022) (analyzing factors for permissive abstention and affirming

bankruptcy court's *sua sponte* decision to permissively abstain from hearing claim objection

proceeding in favor of determination of claim in pending state court proceeding); *Hanson v.*

*HSBC Bank, USA (In re Hanson),* 525 B.R. 791, 796 (Bankr. M.D. Fla. 2015) (court abstained

from hearing count in adversary proceeding that was an objection to a proof of claim as objection

was based entirely on state law that could be resolved in foreclosure action pending when

bankruptcy case was filed); *In re BFW Liquidation, LLC*, 459 B.R. 757, 778-85 (Bankr. N.D.

Ala. 2011) (permissively abstaining from adjudicating debtors' objection to claim for withdrawal

liability in favor of having claim adjudicated by administrative arbitration panel and recognizing

that while the bankruptcy court normally supervises the liquidation of claims, which is a "core"

function, that rule is not "inexorable" and should yield where there is a specialized tribunal or

administrative agency charged with adjudicating the claim at issue).

## IV.    The Department Has Not Violated Section 525 of the Bankruptcy Code

51.    The Debtors next argue that the Commissioner's decision to refuse the voluntary

surrender of its license and instead seek to assess civil penalties against the Company was

discriminatory and violated section 525 of the Bankruptcy Code, (Doc. No. 1942-1, p. 17).  This

argument is not properly raised as part of a claim objection proceeding and in any event is

without merit.

52.     Under Fed. R. Bankr. P. 3007(b), the Debtors are prohibited from including "a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim. . ." A claim by a debtor that a governmental unit has engaged in discrimination prohibited by 11 U.S.C. § 525(a) necessarily seeks injunctive or declaratory relief because the objective of such a claim is to enjoin the government from continuing to engage in the allegedly discriminatory conduct.  *See In re Smith*, 142 B.R. 348, 350 (Bankr. W.D. Mo. 1992); *In re Adams*, 106 B.R. 811, 833 (Bankr. D.N.J. 1989).   Thus, the Debtors may not assert their § 525(a) claim as a ground for disallowance of the Claim.

53.     In any event, there is no merit to the claim.  The U.S. Bankruptcy Code's nondiscrimination provision, 11 U.S.C. § 525, provides in relevant part:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title. . . **solely** because such bankrupt or debtor is or has been a debtor under this title. . .,  has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title. . .

*Id.* (emphasis added).

54.     To be sure, a government unit violates section 525 by revoking a debtor's license *solely* due to a bankruptcy filing or a non-payment of fees.  *See e.g., F.C.C. v. NextWave Personal Comms., Inc.,* 537 U.S. 293 (2003).  This simply did not occur here.

55.     The Commissioner did not revoke the Company's license.  Rather, the Company's license was suspended by operation of law on account of the loss of the surety bond in accordance with Conn. Gen. Stat. § 36a-602(c).  Further, while the Commissioner did reject the Company's request for a voluntary surrender and instead instituted proceedings to revoke the

license in accordance with § 36a-51 (c) (1) — the Company is neither contesting that suspension nor seeking reinstatement.[5]

56.     In any event, the Commissioner's notice dated February 14, 2023, clearly articulates the proximate cause for the license suspension and the commencement of proceedings as: (1) the cancellation by Arch of the surety bond that was required of all entities holding money transmission licenses in Connecticut; and (2) the Debtors alleged violation of state law prohibiting money transmitters from preventing account holders from withdrawing their funds. Conn. Gen. Stat.§36a-608(a).  (Serrano Decl. at ¶ 13, Attachment C).

## V.      The Actions of Other State Regulators Are Not Relevant to the Validity of the Claim

57.     The Debtors next assert that the Claim should be disallowed because "upon information and belief, the Department is the only state regulator that is pursuing post-petition enforcement actions against BlockFi." (Doc. 1942-1, p. 18). This is nothing more than a bald and gratuitous statement that is neither relevant to the validity of the Claim nor a valid basis for its disallowance.

58.     Section 502(b) of the Bankruptcy Code enumerates an exhaustive list of grounds on which an objection to claim may be sustained. *In re Alessi*, No. 11–25686 (MBK), 2012 WL 1072214, at *3 (Bankr. D.N.J. Mar. 29, 2012) (citing *Frontier Ins. Co. v. Westport Ins. Corp. (In re Black)*, 460 B.R. 407, 416 (Bankr. M.D. Pa. 2011). Thus, even when a party in interest objects, the Court shall allow the claim unless one of the nine exceptions enumerated in §502(b) applies. *Id.* (*citing Am. Express Bank FSB v. Askenaizer (In re Plourde)*, 418 B.R. 495, 502-03 (B.A.P. 1st Cir. 2009)).

---

[5] Even if surrender of the license was accepted, the Debtors would still be subject to the same civil penalties the Commissioner is now pursuing in the administrative proceeding.  Conn. Gen. Stat. § 36a-599(b).

59.     The actions of other creditors that may have similar claims is not one of the grounds enumerated in §502(b) and therefore should not be considered by the Court. *See Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147 (B.A.P. 8th Cir. 2004).

60.     If the Claim is enforceable against the Debtors and property of the Debtors under applicable law, then the Claim should be allowed regardless of the positions taken by other state regulators with respect to their specific state statutes and regulatory considerations.[6]

## VI.     The Potential Impact of the Claim on Other Creditors is Not a Valid Reason To Disallow the Claim

61.     The Debtors next contend that allowing the Commissioner to pursue the Claim will diminish creditor returns.  (Doc. 1942-1, p. 19).  The potential impact of an allowed claim on other creditors, however, is not among the grounds on which a claim may be disallowed under §502(b).  If it were, any claim that could impact distributions to other creditors would be disallowable regardless of whether the claim is enforceable against the debtor under state law.

62.     Moreover, on November 10, 2022, when BlockFi instituted the platform pause, it was duly insured by Arch.  If the Commissioner determines that a civil penalty is appropriate in this matter, he is statutorily authorized to seek recovery from Arch pursuant to Conn. Gen. Stat. § 36a-602(b).  This Court should abstain from any determination that could potentially limit the Commissioner's ability to proceed against, and seek recovery from, the third party and non-debtor, Arch.

---

[6] In their Objection, the Debtors suggest that the Commissioner should simply follow the decision of many other state agencies to subordinate their penalty claims to all account holder, general unsecured and intercompany claims (Objection ¶ 53).  The Debtors and apparently these other state agencies fail to recognize, however, that there is no legal basis for the categorical subordination of penalty claims, *see U.S. v. Reorganized CF & I Fabricators of Utah, Inc*, 518 U.S.213, 228-29 (1996); *U.S. v. Noland*, 517 U.S. 535, 540-43 (1996), and that irrespective of whether some misconduct must be found to equitably subordinate a claim, such relief is rarely invoked for non-insider claims. *Congoleum Corporation v. Pergament* (*In re Congoleum Corporation*), Bankruptcy No. 03-51524 (KCF), Adversary No. 05-06245, 2007 WL 4571086, at *12-13 (Bankr. D.N.J. Dec. 28, 2007).

**VII. Whether the Platform Pause Complied with An Agreement Does Not Mean It Was Legal**

63.     The Debtors next argue that, as previously recognized by this Court, the Debtors' terms of service specifically authorize it to institute a platform pause in their sole discretion and without advance notice.  (Doc. No. 1942-1, p. 19).  The Debtors argue that authorizing the Commissioner to move forward with the administrative enforcement action could result in an opposite ruling as a basis for the assessment of civil penalties.  (Id.)

64.     While a company may require account holders to provide it with full authority to manage accounts—  this does not mean that management choices can never violate the law or go unchecked by state regulators.  A successful administrative enforcement action would not conflict with this finding of the Bankruptcy Court.

**WHEREFORE**, the Department of Banking respectfully requests: (1) that the Wind-Down Debtors' Objection to Claim No. 31767 filed by the Connecticut Department of Banking be overruled; and (2) that the Court enter such other relief as the Court deems just and proper.


Dated: February 20, 2024                    Respectfully submitted,


By:     /s/ Kristin B. Mayhew
        Irve J. Goldman (admitted pro hac vice)
        Kristin B. Mayhew
        Pullman & Comley, LLC
        850 Main Street, P.O. Box 7006
        Bridgeport, CT 06601-7006
        Tel: 203-330-2198
        Fax: 203-576-8888
        Igoldman@pullcom.com
        kmayhew@pullcom.com

        *Counsel for State of Connecticut,*
        *Department of Banking*