# ATTACHMENT A




**STATE OF CONNECTICUT**
**DEPARTMENT OF BANKING**
**CONSUMER CREDIT DIVISION**
260 CONSTITUTION PLAZA – HARTFORD, CT 06103

November 28, 2022

VIA EMAIL to licensing@blockfi.com

Mr. David Spack, Chief Compliance Officer
BlockFi Trading LLC DBA BlockFi DBA BlockFi Trading
201 Montgomery St, Suite 263
Jersey City, NJ 07302

Re: **Bond # 1133052 – Notice of Impending Automatic Suspension of License and Administrative Action**

Dear Mr. David Spack:

    BlockFi Trading LLC (NMLS # 1873137) ("you") presently holds and may have requested renewal of the following money transmission license with the Connecticut Department of Banking ("Department"): MT-1873137. Enclosed is a copy of a bond cancellation notice submitted to the Department by the surety company in connection with your license. As you can see, the cancellation will become effective on **December 15, 2022**. As you are aware, under Section 36a-602 of the Connecticut General Statutes, you are required to maintain a surety bond or an investment in lieu of all or part of the surety bond concurrent with the period of your license. No renewal request may be granted in the absence of such bond or investment.

    Your failure to have a bond or an investment in lieu of all or part of the principal sum of the surety bond in effect on **December 15, 2022,** that runs concurrently with your license, will result in the automatic suspension of your license in accordance with Section 36a-602(c) of the Connecticut General Statutes. In order to avoid this outcome, you must submit a letter of reinstatement of the bond from the surety company or a new bond from a surety company providing for an effective date on or prior to the bond cancellation effective date above, and/or provide evidence of investment in lieu of all or part of the bond consistent with the requirements of subsections (c) and (d) of Section 36a-602 of the Connecticut General Statutes.

    If you intend to cease doing business and surrender your license, you must request surrender of your license through the Nationwide Multistate Licensing System and Registry pursuant to Section 36a-599(b) of the Connecticut General Statutes. Such request will be subject to Section 36a-51(c) of the Connecticut General Statutes and is not effective until accepted by the Commissioner. **Certain circumstances may cause your surrender request to NOT be accepted by the Commissioner, including, but not limited to, the pendency of an administrative action, an outstanding records request or unpaid civil penalties or examination fees.**

    In the event of automatic suspension, the Commissioner shall give you notice of the automatic suspension and of the commencement of proceedings for revocation or refusal to renew your license and an opportunity for a hearing on such actions in accordance with subsections (a) and (b) of Section 36a-51 of the Connecticut General Statutes, and require you to take or refrain from taking such action as in the opinion of the Commissioner will effectuate the purposes of Section 36a-602 of the Connecticut General Statutes.

    Section 4-182(c) of the Connecticut General Statutes provides, in pertinent part, that:

TEL: (860) 240-8299 ● FAX: (860) 240-8178
http://www.ct.gov/dob
*An Affirmative Action/Equal Opportunity Employer*

Mr. David Spack
Page 2
November 28, 2022

> No revocation ... of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action and specific provisions of the general statutes or of regulations adopted by the agency that authorize such intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license.

Section 36a-52a of the 2022 Supplement to the General Statutes provides, in pertinent part, that:

> Notwithstanding the provisions of subsection (c) of section 4-182, the commissioner may provide notice pursuant to section 4-182 ... to any person licensed by or registered with the commissioner by personal delivery, as defined in section 4-166.[\*]  For licensed or registered persons who are not natural persons, the electronic mail addresses of the natural persons designated as primary contacts by such licensed or registered persons in the contact employee fields on the system shall constitute an acceptable means of communication for personal delivery, and a notice sent by electronic mail to such primary contacts at such electronic mail addresses shall constitute notice. ... Any notice provided in accordance with this section shall ... in the case of a notice sent by electronic mail ... be deemed received by the person on the earlier of the date of actual receipt by any natural person to whom such notice was sent or seven days after such notice was sent.

Without limiting any other administrative actions the Commissioner may take in accordance with Section 36a-608 of the Connecticut General Statutes, and Sections 36a-50 and 36a-52 of the 2022 Supplement to the General Statutes, if you fail to address this issue, this letter serves as notice to you pursuant to Section 4-182(c) of the Connecticut General Statutes and provides you an opportunity to show compliance with all lawful requirements for the retention of your license.

Your prompt attention to this matter is appreciated. If you have any questions, please contact Allison Bellucci, Associate Financial Examiner, at Allison.Bellucci@ct.gov or (860) 240-8267.

Very truly yours,

JORGE L. PEREZ
BANKING COMMISSIONER

Carmine Costa
Director

CC/ab
Enclosure

---

[\*]Section 4-166(12) of the Connecticut General Statutes provides that "personal delivery" means: "delivery directly to the intended recipient or a recipient's designated representative and includes, but is not limited to, delivery by electronic mail to an electronic mail address identified by the recipient as an acceptable means of communication."

# ATTACHMENT B

12/14/22, 11:19 AM

BlockFi Trading LLC (1873137) Company (MU1) Filing submitted 12/14/2022 by PerdomoP3.

## Business Activities

Item 1 of 1:
  Business Activity: Virtual currency exchanging and trading services
  Industry: Money Services

## License/Registration Information

Item 4 of 29:
  Regulator: Connecticut
  License: Money Transmission License
  Requested Action: Surrender Requested

# ATTACHMENT C

EXHIBIT A



STATE OF CONNECTICUT
**DEPARTMENT OF BANKING**
260 CONSTITUTION PLAZA – HARTFORD, CT 06103-1800



**Jorge L. Perez**
Commissioner

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | |
| IN THE MATTER OF: | NOTICE OF AUTOMATIC SUSPENSION |
| BLOCKFI TRADING LLC | NOTICE OF INTENT TO REVOKE |
| d/b/a BLOCKFI TRADING | MONEY TRANSMISSION LICENSE |
| d/b/a BLOCKFI | |
| NMLS # 1873137 | NOTICE OF INTENT TO ISSUE |
| | ORDER TO CEASE AND DESIST |
| ("BlockFi" or "Respondent") | |
| | NOTICE OF INTENT TO IMPOSE |
| | CIVIL PENALTY |
| | |
| | AND |
| | |
| | NOTICE OF RIGHT TO HEARING |
| * * * * * * * * * * * * * * * * * * * * * * * * * | |

## I. PRELIMINARY STATEMENT

1. The Banking Commissioner ("Commissioner") is charged with the administration of Part V of Chapter 668, Sections 36a-595 to 36a-612, inclusive, of the Connecticut General Statutes, known as the "Money Transmission Act".

2. Pursuant to the authority granted by Section 36a-17 of the 2022 Supplement to the General Statutes, the Commissioner, through the Consumer Credit Division ("Division") of the Department of Banking, has investigated the activities of Respondent to determine if it has violated, is violating or is about to violate the provisions of the Connecticut General Statutes or Regulations within the jurisdiction of the Commissioner ("Investigation").

3. As a result of the Investigation, the Commissioner has reason to believe that Respondent has engaged in an unsafe or unsound practice, which constitutes a basis for the Commissioner to take action pursuant to Section 36a-608(c) of the Connecticut General Statutes.

4. As a result of the Investigation, the Commissioner has reason to believe that conduct alleged by the Commissioner against BlockFi forms the basis to issue an order to cease and desist against BlockFi pursuant to Section 36a-608(c) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, and forms the basis to issue a civil penalty against BlockFi pursuant to Section 36a-608(c) of the Connecticut General Statutes and Section 36a-50(a) of the 2022 Supplement to the General Statutes.

5. The Commissioner also has reason to believe that as of December 15, 2022, Respondent failed to have a bond in place as required by Section 36a-602(a) of the Connecticut General Statutes. As a result, the Commissioner finds that sufficient grounds exist for the automatic suspension of Respondent's money transmission license in Connecticut effective December 15, 2022, and to revoke Respondent's money transmission license in Connecticut pursuant to Section 36a-602(c) and subsections (a) and (b) of Section 36a-51 of the Connecticut General Statutes.

## II. MATTERS ASSERTED

6. BlockFi is a Delaware limited liability company with an address of 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

7. BlockFi has been licensed as a money transmitter in Connecticut since April 2, 2020.

8. At all times relevant hereto, BlockFi engaged in the business of exchanging convertible virtual currency for other convertible virtual currency and fiat currency, and from at least February 15, 2022 through November 2022, hosting custodial wallets of virtual currency through various entities and virtual currency platforms, including BlockFi Wallet LLC ("BlockFi Wallets"). According to BlockFi's business plan submitted to the Nationwide Multistate Licensing System and Registry ("NMLS") on June 2, 2022, "[v]irtual currencies sent to or purchased on the BlockFi platform by customers will be immediately transferred on BlockFi's internal ledgers from BlockFi Trading to BlockFi Wallet LLC. Such customers' virtual currencies will be held and maintained by BlockFi Wallet LLC on behalf of BlockFi Trading's customers".

9. On November 11, 2022, BlockFi provided notice to the Department that on November 10, 2022, at 8:16 pm EST, BlockFi suspended the ability of its customers, including Connecticut purchasers, to withdraw virtual and fiat currency from its platform ("Platform Suspension"). Since the Platform Suspension, Connecticut purchasers have been unable to withdraw monetary value, either virtual or fiat currency, from their BlockFi Wallets.

10. On November 18, 2022, Respondent provided information to state regulators, including the Department, indicating that the value of BlockFi Wallets held for Connecticut purchasers exceeded $6.3 Million.

11. On November 28, 2022, Respondent filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey, Docket Number 22-19361.

### Bond Cancellation

12. On November 14, 2022, the Commissioner received notice via NMLS from the Arch Insurance Company that surety bond number 1133052, issued on behalf of Respondent with respect to its money transmission license in Connecticut, would be cancelled effective December 15, 2022.

13. On November 28, 2022, pursuant to Section 4-182(c) of the Connecticut General Statutes, the Division informed Respondent by e-mail of the notice of cancellation and provided Respondent an opportunity to show compliance with all lawful requirements for the retention of its money transmission license in Connecticut.

14. As of December 15, 2022, Respondent failed to file with the Commissioner a letter of reinstatement of the bond, a new bond, evidence that all of the principal sum of such surety bond had been invested or a request to surrender its license in Connecticut.

15. As a result, the Commissioner automatically suspended Respondent's money transmission license in Connecticut effective December 15, 2022.

### III. STATUTORY BASIS FOR ORDER TO REVOKE MONEY TRANSMISSION LICENSE, ORDER TO CEASE AND DESIST AND IMPOSITION CIVIL PENALTY

16. Respondent's failure to transmit monetary value received from Connecticut purchasers, as more fully described in paragraphs 7 through 10, inclusive, is conduct that is likely to materially prejudice the interests of purchasers, which constitutes an unsafe or unsound practice within the meaning of Section 36a-608(a) of the Connecticut General Statutes. Such conduct forms the basis to issue an order to cease and desist against Respondent pursuant to Section 36a-608(c) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, and to impose a civil penalty against Respondent pursuant to Section 36a-608(c) of the Connecticut General Statutes and Section 36a-50(a) of the of the 2022 Supplement to the General Statutes. Section 36a-50(a) of the 2022 Supplement to the General Statutes authorizes the Commissioner to impose a civil penalty upon Respondent in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

17. Respondent's failure to maintain a surety bond that runs concurrently with the period of its money transmission license, as required pursuant to Section 36a-602(a), as more fully described in paragraphs 12 through 15, inclusive, constitutes sufficient grounds for the Commissioner to revoke Respondent's license to engage in the business of money transmission in Connecticut pursuant to Section 36a-602(c) of the Connecticut General Statutes and subsections (a) and (b) of Section 36a-51 of the Connecticut General Statutes.

### IV. NOTICE OF AUTOMATIC SUSPENSION, NOTICE OF INTENT TO REVOKE MONEY TRANSMISSION LICENSE, NOTICE OF INTENT TO ISSUE ORDER TO CEASE AND DESIST, NOTICE OF INTENT TO IMPOSE CIVIL PENALTY AND NOTICE OF RIGHT TO HEARING

**WHEREAS,** the Commissioner has reason to believe that Respondent has engaged in acts or conduct which forms a basis to issue an order to cease and desist against Respondent pursuant to Section 36a-608(c) of the Connecticut General Statutes and Section 36a-52(a) of the 2022 Supplement to the General Statutes, and to impose a civil penalty upon Respondent pursuant to Section 36a-608(c) of the Connecticut General Statutes and Section 36a-50(a) of the 2022 Supplement to the General Statutes.

**NOW THEREFORE,** pursuant to the authority granted in Section 36a-602(c) of the Connecticut General Statutes, the Commissioner gives **NOTICE** that on December 15, 2022, the license of BlockFi Trading, LLC d/b/a BlockFi Trading d/b/a BlockFi to engage in the business of money transmission in Connecticut was **AUTOMATICALLY SUSPENDED** pending proceedings for revocation.

**FURTHER,** notice is hereby given to Respondent that the Commissioner intends to issue an order to **REVOKE** Respondent's money transmission license in Connecticut, to issue an order requiring Respondent to **CEASE AND DESIST** from engaging in an unsafe or unsound practice within the meaning of Section 36a-608(a) of the Connecticut General Statutes and to impose a **CIVIL PENALTY** upon Respondent as set forth herein, subject to Respondent's right to a hearing on the allegations set forth above.

A hearing will be granted to Respondent if a written request for a hearing is received by the Department of Banking, Consumer Credit Division, 260 Constitution Plaza, Hartford, Connecticut 06103-1800 or submitted by e-mail to DOB.hearingsupport@ct.gov within fourteen (14) days following Respondent's receipt of this Notice of Automatic Suspension, Notice of Intent to Revoke Money Transmission License, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing as set forth in Sections 36a-52(a) and 36a-50(a) of the 2022 Supplement to the General Statutes. This Notice of Automatic Suspension, Notice of Intent to Revoke Money Transmission License, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing shall be deemed received on the earlier of the date of actual receipt, or seven (7) days after mailing or sending. To request a hearing, complete and return the enclosed Appearance and Request for Hearing Form to one of the above-referenced addresses. If Respondent will not be represented by an attorney at the hearing, please complete the Appearance and Request for Hearing Form as "pro se". Once a written request for a hearing is received, the Commissioner may issue a notification of hearing and designation of hearing officer that acknowledges receipt of a request for a hearing, designates a hearing officer and sets the date of the hearing in accordance with Section 4-177 of the Connecticut General Statutes and Section 36a-1-21 of the

Regulations of Connecticut State Agencies. If a hearing is requested, the hearing will be held either in person or remotely via videoconference using Microsoft Teams on April 5, 2023, at 10 a.m.

If a hearing is requested, it will be held in accordance with the provisions of Chapter 54 of the Connecticut General Statutes, unless Respondent fails to appear at the requested hearing. At such hearing, Respondent will have the right to appear and present evidence, rebuttal evidence and argument on all issues of fact and law to be considered by the Commissioner. If the hearing is remote, it will be held in accordance with Section 149 of June Special Session Public Act 21-2, as amended by Section 1 of Public Act 22-3, and the Remote Hearing Guidelines available on the Department's website at https://portal.ct.gov/dob.

If Respondent does not request a hearing within the time period prescribed or fails to appear at any such hearing, the allegations herein will be deemed admitted. Accordingly, the Commissioner will issue an order revoking Respondent's money transmission license in Connecticut, will issue an order that Respondent cease and desist from engaging in an unsafe or unsound practice within the meaning of Section 36a-608(a) of the Connecticut General Statutes, and may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Respondent.

So ordered at Hartford, Connecticut
this 14th day of February 2023.

_Jorge L. Perez_
Jorge L. Perez
Banking Commissioner

## CERTIFICATION

I hereby certify that on this 14th day of February 2023, I caused to be mailed by certified mail, return receipt requested, the foregoing Notice of Automatic Suspension, Notice of Intent to Revoke Money Transmission License, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing to BlockFi Trading, LLC d/b/a BlockFi Trading d/b/a BlockFi, Attention: David Spack, Chief Compliance Officer, 115 Broadway, 11th Floor, New York, NY 10006, Certified Mail No. 70221670000209233064.

Emily B. Bochman
Paralegal

# ATTACHMENT D

**COVINGTON**

BEIJING  BRUSSELS  DUBAI  FRANKFURT  JOHANNESBURG
LONDON  LOS ANGELES  NEW YORK  PALO ALTO
SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**By Federal Express and Electronic Mail**

March 15, 2023

Ms. Stacey Serrano
Staff Attorney
State of Connecticut Department of Banking
Consumer Credit Division
260 Constitution Plaza
Hartford, Connecticut 06103

Dear Ms. Serrano:

We write in reference to the Notice of Automatic Suspension, Notice of Intent to Revoke Money Transmission License, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty, and Notice of Right to Hearing issued by the State of Connecticut Department of Banking ("Department") to BlockFi Trading LLC ("BlockFi Trading") on February 14, 2023 ("Notice").

As you know, on November 28, 2022, BlockFi Trading and its debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under Case No. 22-19361 (collectively, the "Bankruptcy Cases").

The Notice seeks relief that is stayed and enjoined by virtue of the automatic stay applicable in the Bankruptcy Case under section 362 of the Bankruptcy Code and the Bankruptcy Court's *Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 56] (the "Worldwide Stay Order") entered on November 30, 2022. Additionally, the Department's refusal to accept BlockFi Trading's surrender of its money transmission license and to instead revoke the license and assess monetary penalties against BlockFi Trading violates, among other things, the automatic stay applicable in the Bankruptcy Case, Section 525 of the Bankruptcy Code, and the claim allowance and payment process applicable under the Bankruptcy Code. We demand that the Department immediately withdraw the Notice and allow BlockFi Trading to surrender its money transmission license issued by the Department without further action by the Department, just as BlockFi Trading attempted to do on December 14, 2022.

**I.    Background Information**

The Department issued a money transmitter license to BlockFi Trading on April 2, 2020. On November 8, 2022, FTX Trading Ltd. ("FTX") paused withdrawals from its platform, and BlockFi, Inc. ("BlockFi") announced on November 10, 2022, that it too was limiting platform activity, including pausing client withdrawals. On November 11, 2022, FTX and related

Ms. Stacey Serrano
March 15, 2023
Page 2

companies filed petitions for bankruptcy in the United States Bankruptcy Court for the District of Delaware. On November 14, 2022, BlockFi represented on its website that withdrawals would continue to be paused because BlockFi had significant exposure to FTX and FTX's affiliated entities. On November 28, 2022, BlockFi and its affiliates, including BlockFi Trading (but excluding BlockFi Holding UK Limited), commenced the Bankruptcy Cases.

On or around the time that BlockFi and its affiliates filed the Bankruptcy Cases, the insurance companies that issued surety bonds to secure BlockFi Trading's performance, as required under state money transmitter laws, provided notice to BlockFi and the state money transmitter authorities that the insurance companies intended to cancel these bonds. Because these bonds are an important condition for BlockFi Trading's money transmitter licenses, BlockFi Trading thereafter commenced a process to begin surrendering its money transmitter licenses. Specifically, on December 14, 2022, BlockFi Trading submitted a surrender request to the Department. **The Department did not accept the request.** Instead, more than two months later, the Department sent the Notice to BlockFi on February 15, 2023, and indicated in a follow-up conversation that the Department would impose a civil penalty of at least $100,000 if BlockFi Trading exercised its right to a hearing to adjudicate the allegations in the Notice. The Department indicated that it would be willing to proceed with the Notice via consent and without a hearing if BlockFi Trading paid a civil fine of $1,000,000.

## II.   The Department's Intent to Issue a Cease-and-Desist Order and Impose a Civil Penalty is Prohibited by Federal Bankruptcy Law

Immediately upon the filing of BlockFi's Bankruptcy Case, BlockFi Trading received the protection of the automatic stay under Section 362 of the Bankruptcy Code.[1] The scope of the stay is broad,[2] and applies to all entities, including governmental units.[3]

While 11 U.S.C. § 362(b)(4) provides a statutory police power exception, such exception is narrow and does not create a blank check for governmental units to ignore the automatic stay and proceed in normal course against a debtor in bankruptcy. The exception only permits governmental units to pursue actions to protect the public health and safety and does not apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or

---

[1] 11 U.S.C. § 362; *see also* Bankruptcy Court's *Worldwide Stay Order*.

[2] The automatic stay applies to, *inter alia*, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title" as well as "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1), (3), & (6).

[3] *In re THG Holdings LLC*, 604 B.R. 154, 160 (Bankr. D. Del. 2019).

Ms. Stacey Serrano
March 15, 2023
Page 3

property of the estate.[4] Courts, including the Third Circuit, consider two tests to determine if the actions being taken by the governmental unit fall within this narrow construction: the pecuniary purpose and public policy tests.[5] If the purpose is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable.[6]

In addition, Section 525 of the Bankruptcy Code prevents governmental units from, among other things, (a) denying, revoking suspending, or refusing to renew any license, permit, charter, franchise, or other similar grant to the Debtors; (b) placing conditions upon such grant to the Debtors; or (c) discriminating against the Debtors with respect to such a grant, solely because the Debtors are debtors under the Bankruptcy Code, may have been insolvent before filing bankruptcy, or are insolvent during a bankruptcy case.[7] The purpose of Section 525 is to prevent governmental units from frustrating the policies of the Bankruptcy Code[8] and to prevent discrimination based on a bankruptcy filing, insolvency, or the nonpayment of a discharged or dischargeable debt.[9] A governmental unit violates Section 525 when it revokes a debtor's license due to a bankruptcy filing or the debtor's nonpayment of fees – even if the governmental unit had a valid regulatory motive for the license revocation or cancellation.[10]

The Department seeks to impose a state process on BlockFi Trading to thwart the bankruptcy process in violation of Sections 362 and 525 of the Bankruptcy Code. The Department's conduct passes neither test to enable it to take action notwithstanding the automatic stay and only seeks to protect a pecuniary governmental interest. The Department has ignored BlockFi Trading's offer to surrender its license and instead seeks to force BlockFi Trading into a state process to enable the Department to assess significant fines against BlockFi Trading. Assuming such fines are even properly recoverable, the legitimacy of which BlockFi Trading

---

[4] 11 U.S.C. § 362 advisory committee's note.

[5] *In re Nortel Networks, Inc.*, 669 F.3d 128, 139–40 (3d Cir. 2011) (explaining the pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health. The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights).

[6] *Id.*

[7] 11 U.S.C. § 525.

[8] *Henry v. Heyison*, 4 B.R. 437 (E.D. Pa. 1980); *Rose v. Conn. Housing Fin. Auth. (In re Rose)*, 23 B.R. 662 (Bankr. D. Conn. 1982);

[9] 9 H.R. Rep. No. 595, 95th Cong., 1st Sess. 366-67 (1977), reprinted in App. Pt. 4(d)(i) *infra*; S. Rep. No. 989, 95th Cong., 2d Sess. 81 (1978), reprinted in App. Pt. 4(e)(i) *infra*.

[10] *See, e.g., F.C.C. v. NextWave Personal Comms., Inc.*, 537 U.S. 293 (2003) (holding F.C.C.'s revocation of debtors' license due to nonpayment violated Section 525); *Matter of Bradley*, 989 F.2d 802 (5th Cir. 1993) (holding Section 525 prohibits state from exacting a debt as the price of retaining or receiving a license); *In re Elsinore Shore Assocs.*, 66 B.R. 723 (Bankr. D. N.J. 1986) (explaining that conditioning, suspending or revoking a debtor's license based on fines violates section 525).

Ms. Stacey Serrano
March 15, 2023
Page 4

contests, any premature recovery of such fines also runs afoul of the priority scheme in the Bankruptcy Code to the detriment of other creditors, including the citizens of the State of Connecticut that the Department is purporting to protect.

### III. The Department Does Not have a Basis to Issue a Cease-and-Desist Order and Impose a Civil Penalty

The Department's asserted basis for the potential order to cease and desist and issuance of civil penalties against BlockFi Trading is that the Debtors have not yet returned monetary value (i.e., digital assets) transferred by Connecticut customers into their BlockFi Wallets following BlockFi's pause of the platform and commencement of the Bankruptcy Cases.

BlockFi's decision to pause the platform was in response to the severe financial stress imposed on the company by FTX's platform suspension and FTX's commencement of its own bankruptcy case. BlockFi's decision was intended to give the company time to assess its financial resources and identify the best options for preserving value for customers. Following this assessment, BlockFi and its affiliated Debtors commenced the Bankruptcy Cases.

On December 19, 2022, BlockFi filed a motion with the bankruptcy court requesting permission to return all digital assets held in BlockFi Wallets, including Connecticut customers' digital assets (the "Wallet Motion"). If the Wallet Motion is granted, BlockFi clients will have the ability to withdraw the digital assets in their respective wallet accounts.

BlockFi's decision to pause the platform and file the Bankruptcy Cases, and the resultant delay in the return of monetary value to Connecticut clients, was borne out of prudence following the collapse of FTX and seismic consequences for many digital asset companies, including BlockFi. If BlockFi had not paused the platform and filed its Bankruptcy Cases, it is likely that there would have been less value to return to BlockFi's clients. Moreover, all of the digital assets that Connecticut customers have transferred to their BlockFi Wallets will be returned if and when the Wallet Motion filed with the Bankruptcy Court is granted. Until the Wallet Motion is decided, however, BlockFi Trading is wholly unable to take any action with respect to the wallet assets and would be in violation of federal law if it did so. In these circumstances, the so-called "failure" of BlockFi Trading to return digital assets should not be the basis for an order to cease and desist or to pay a civil penalty.

### IV. The Department's Intent to Impose a Civil Penalty May Divert Recoveries Away from BlockFi Customers

The objective of the bankruptcy process is to maximize the value returned to BlockFi's clients and other creditors. Imposition of a civil penalty, even if the Department represents that it would not seek to collect on a penalty, would result in lesser amounts of recovery for such clients and other creditors. Accordingly, such a civil penalty would not serve the interests of Connecticut citizens.

*     *     *

Ms. Stacey Serrano
March 15, 2023
Page 5

    If you have any questions, please do not hesitate to contact me at (202) 662-5727 or mnonaka@cov.com.

Sincerely,

Michael Nonaka

cc:    Jonathan Mayers, General Counsel, BlockFi Trading
       Richard Kanowitz, Haynes and Boone, LLP
       Michael B. Slade, Kirkland & Ellis LLP