**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*,[1] | Case No. 22-19361 (MBK) |
| Debtors. | (Jointly Administered) |

**CLAIMANT JOHN W. VAN TUBERGEN JR.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION PURSUANT TO FED. R. BANKR. P. 3008, 8002(b), 8007(a),
9023 AND 9024 TO (A) ALTER AND AMEND THE DECISION AND ORDER
SUSTAINING THE WIND-DOWN DEBTORS' OBJECTION TO CLAIM NO. 7233;
AND (B) ALTERNATIVELY, SEEK OTHER RELIEF FROM SUCH ORDER**

**CONNELL FOLEY LLP**
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, NJ 07102
973-436-5800
*Counsel to Claimant John W. Van Tubergen Jr.,*
  *Creditor of BlockFi Lending LLC*

Of Counsel and on the Brief:
Joao F. Magalhaes, Esq. (NJ Bar No. 004802008)

---

[1] Claimant's proof of claim number 7233 is associated with the bankruptcy estate of BlockFi Lending LLC, Bankr. D.N.J. Case No. 22-19365.

14828421-1

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF AUTHORITIES ......................................................................................iii

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL POSTURE, RESERVATION OF RIGHTS, AND INVOCATION OF TOLLING OF TIME TO APPEAL UNDER FED R. BANKR. P. 8002(b)………………………3

BACKGROUND ...................................................................................... 4

LEGAL ARGUMENT……………………………………………………………………5

   I.  Governing Rules and Standards………………………………………...……………5

       A. Fed. R. Bankr. P. 8002…………………………………….....……………………....5

       B. Regarding Misuse of "Motion for Reconsideration" ……………………………...6

       C. Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59………………………………………6

       D. Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60…………………………………7

  II. Part III(B) of the Decision is mistaken that BlockFi evidenced an acceptable LTV calculation method prior to liquidating the Collateral, and should instead reflect that only Claimant placed a reasonable calculation method on the record, by way of verifiable market data, so as to determine whether BlockFi complied with the subject LSAs prior to liquidating the Collateral, which this Court could readily verify by taking judicial notice of publicly-available market data……………………………………………………………….8

       A. The Record as to Issue of Cryptocurrency Valuation and LTV Calculations……….8

       B. Ms. Marquez's testimony should not be credited because she lacked personal knowledge……………………………………………………………………......9

       C. Proposed Amended Findings and Conclusions as to LTV Calculation……………11

       D. Potential Supplemental Findings and Judicial Notice of Market Data………..…...12

  III. The Court overlooked the applicability of Michigan law to this matter because even if the liquidations were initially authorized, the ensuing extent of such liquidations should be deemed a violation of good faith and fair dealing, and unconscionable contractual provisions should not be enforced, particularly given Claimant's reasonable reliance on BlockFi Lending's agents…………………………………………………………....13

i

A. Even assuming *arguendo* that BlockFi did not breach the technical terms of the LSAs, this Court should examine good faith obligations under Michigan law together with the common law implied covenant of good faith and fair dealing…………………………………………………………………...…14

B. Even assuming arguendo that BlockFi did not breach the technical terms of the LSAs, this Court should examine whether clauses of the LSAs are unconscionable………………………………………………………………...15

C. Agency law dictates that Claimant reasonably relied on BlockFi Lending's agents…………………………………………………………………………16

D. Proposed Amended Findings and Conclusions according to Michigan Law……..18

IV. Other Proposed Amendments and Alterations to the Decision…………………………...18

A. BlockFi failed to sufficiently evidence the issuance of notices required under the LSAs……………………………………………………………………….…..18

B. BlockFi effectively admitted that collateral posted by Claimant in connection with Loan No. 558207a5 was wrongfully liquidated…………………………………..19

V. Alternative Relief to the Order; Request for Stay of Disallowance and Maintenance of Disputed Claim Reserve…………………………………………………………………….20

A. Fed. R. Bankr. P. 8007…………..............................................................................20

B. Relevant Background……………………………………….………………21

C. The protection of Claimant's right to appeal depends upon a stay of the Order's disallowance of the Claim and the accompanying imposition of a reasonable Disputed Claim Reserve in connection therewith……………………………..……22

GENERAL REQUEST FOR FURTHER PROCEEDINGS AS-NEEDED TO FULFILL CLAIMANT'S PROPOSED AMENDMENTS, ALTERATIONS, AND RELATED REQUESTS FOR RELIEF………………………………………………………………………..25

CONCLUSION.................................................................................................................... 25

14828421-1

# TABLE OF AUTHORITIES

Page No(s).

**Cases**

*Agfa-Gevaert, A.G. v. A.B. Dick Co.,*
      879 F.2d 1518 (7th Cir. 1989)……………………………………………………..10-11

*AKF, Inc. v. Restoration Servs. Holding, LLC,*
      2021 Mich. App. LEXIS 4917 (Mich. Ct. App. Aug. 12, 2021)………………………...17

*Alfaro-Huitron v. Cervantas Agribusiness,*
      982 F.3d 1242 (10th Cir. 2020)…………........................................................................17

*Carballeira v. Bond (In re Rams Assocs., LP),*
      2021 U.S. Dist. LEXIS 96761 (D.N.J. May 21, 2021)………………………………....5-6

*In re Christie,*
      222 B.R. 64, 67 (Bankr. D.N.J. 1998)…………………………………………...…..3, 6

*Database America, Inc. v. Bell South Adver. & Publ'g. Corp.,*
      825 F. Supp. 1216 (D.N.J. 1993)……………………………………………………….6

*In re Enron Corp.,*
      2006 Bankr. LEXIS 4294 (Bankr. S.D.N.Y. Jan. 17, 2006)…………………………….21

*Gianni Sport, Ltd. v. Gantos, Inc.,*
      391 N.W.2d 760 (Mich. Ct. App. 1986)……………………………………….…...16

*Hammond v. United of Oakland,*
      482 N.W.2d 652 (Mich. Ct. App. 1992)……………………………………………....14

*In re Howley,*
      38 B.R. 314 (Bankr. D. Minn. 1984)………………………………………………...20

*Indus. Eng'g & Dev. v. Static Control Components, Inc.,*
      2014 U.S. Dist. LEXIS 141823 (M.D. Fla. Oct. 6, 2014)………………………………11

*In re LATAM Airlines Grp. S.A.,*
      2022 Bankr. LEXIS 1892 (Bankr. S.D.N.Y. Jul. 8, 2022)………………………………24

*Markel v. William Beaumont Hosp.,*
      510 Mich. 1071 (Mich. 2022)…………………………………………………………17

*Meretta v. Peach,*
      195 Mich. App. 695 (Mich. Ct. App. 1992)………………………………………16-17

*S.P. Richard Co. v. Arora*,
    2019 Bankr. LEXIS 2769 (Bankr. D.N.J. Aug. 29, 2019)………………………………...6-7

*In re X-Cel Constructors of Delaware, Inc.*,
    76 B.R. 969 (D.N.J. 1987)…………………………………………………………………20

**Statutes**

11 U.S.C. § 105………………………………………………………....8, 25, 25 n. 27

11 U.S.C. § 502……………………………………………………………..7 n. 12

MCL 440.1201…………………………………………………………………...14

MCL 440.1304…………………………………………………………………...14

MCL 440.2302…………………………………………………………………...15

**Rules**

Fed. R. Bankr. P. 3008………………………………………………………………7

Fed. R. Bankr. P. 8002………………………………………………3, 5, 5 n. 11, 22

Fed. R. Bankr. P. 8007………………………………………………………3, 20, 22

Fed. R. Bankr. P. 8009………………………………………………………………4

Fed. R. Bankr. P. 9023………………………………………………………………6

Fed. R. Bankr. P. 9024………………………………………………………………6

Fed. R. Civ. P. 30…………………………………………………………………...11

Fed. R. Civ. P. 59……………………………………………………………6-7, 25

Fed. R. Civ. P. 60……………………………………………………………3, 20, 25

Fed. R. Evid. 201…………………………………………………………………...12

Fed. R. Evid. 602…………………………………………………………………...1, 10

iv

## PRELIMINARY STATEMENT

Claimant John W. Van Tubergen Jr. ("Claimant"), creditor of BlockFi Lending LLC ("BlockFi Lending," and together with BlockFi Inc., "BlockFi,"[2] or collectively with the other Wind-Down Debtors, the "Debtors") respectfully submits this memorandum of law in support of his *Motion Pursuant to Fed. R. Bankr. P. 3008, 8002(b), 8007(a), 9023 and 9024 to (I) Alter and Amend the Decision and Order Sustaining the Wind-Down Debtors' Objection to Claim No. 7233; and (II) Alternatively, Seek Relief From Such Order,* together with such other and further relief as the Court deems just (the "Motion").    Claimant respectfully contends that the Court's *Memorandum Decision* of February 8, 2024 (the "Decision") should be amended, and that accompanying requisite alterations to the *Order Granting Wind-Down Debtors' Seventh Omnibus Objection to Claim No. 7233 Filed by John W. Van Tubergen Jr.* (the "Order").

In Part II of this memorandum of law, Claimant further clarifies how only he proffered specific, verifiable market data evidence for LTV[3] calculations, and that Ms. Marquez lacked personal knowledge and was essentially serving as a corporate spokesperson, which although potentially acceptable in a deposition setting, was inappropriate at the hearing in light of Federal Rule of Evidence 602.  In these regards Claimant proposes that the Decision be amended to reflect that (a) the Gemini pricing data submitted by Claimant is authoritative in this contested matter; (b) only Claimant proved a valuation method capable of supporting accurate and verifiable findings as to LTV calculations; and (c) alternatively, if upon further consideration the Court finds that BlockFi did sufficiently evidence its valuation method, such method is patently unreasonable and

---

[2] In certain instances, in particular when discussing the Decision, Claimant may generally refer to "BlockFi" given the Court's interchangeable use of "BlockFi" rather than "BlockFi Lending."  *Compare* Decision at 2 (reference to BlockFi Lending) *with Id.* at 3 (reference to same entity as BlockFi).

[3] Any terms that are capitalized but not defined herein shall have the meanings ascribed to such terms by either the Decision or Claimant's prior submissions.

uncertain as a matter of fact.  In addition, in Part II(D) Claimant asks the Court to take judicial

notice of cryptocurrency pricing data, as made available by leading cryptocurrency exchanges, for

the purpose of determining reasonableness and accuracy of LTV calculations.

In Part III hereof, Claimant respectfully contends that insufficient consideration was given

to Michigan law, including the Uniform Commercial Code as codified in Michigan, together with

common law governing the implied covenant of good faith and fear dealing, the doctrine of

unconscionability, and agency law.  As further clarified, in conducting liquidations BlockFi sold-

off such high volume of Collateral that cannot be deemed in good faith and commercially

reasonable, as evidenced by not only previously proffered statements by BlockFi's agents, but also

by the testimony of Ms. Marquez at the hearing.  Accordingly, in these regards Claimant proposes

that the Decision be amended to reflect that (d) BlockFi Lending violated Michigan law,

specifically MCL 440.1304 and the implied covenant of good faith and fair dealing, by engaging

in bad faith, employing unreasonable commercial standards, and exercising unreasonable business

practices; (e) pursuant to Michigan law, specifically MCL 440.2302(1) and common law

safeguards against unconscionable business practices, the Court shall refrain from enforcing

language of the LSAs, including but not limited in Section 7 thereof ("Valuation; Additional

Collateral") which could be read to bestow unilateral power upon BlockFi to determine market

value of collateral; and (f) Claimant reasonably relied on representations made by BlockFi

Lending's agents, including as to Loan No. 558207a5 being safe against liquidation on the morning

of May, 20, 2021, and as to the volume of cryptocurrency to be sold upon the happening of a

liquidation event.

Through Part IV hereof, Claimant proposes that the Decision be amended to reflect that (g)

BlockFi's Exhibit J lacked a proper foundation; (h) BlockFi has not shown that it provided

2

contractually-required notice under the LSAs prior to proceeding with liquidations of the Collateral; (i) BlockFi failed to provide the required 72-hour period prior to liquidating Loan No. 558207a5; and (j) the collateral posted by Claimant in connection with Loan No. 558207a5 was wrongfully liquidated, as admitted by BlockFi through the circumstances surrounding Loan No. 1a118e43.

Alternatively, for reasons explained in detail under Part V hereof, Claimant respectfully invokes Federal Rule 60 in conjunction with Bankruptcy Rule 8007 for the purpose of requesting a stay pending appeal together with a sufficient Disputed Claim Reserve.

For these and other reasons discussed below, the Motion should be granted.  Yet, as explained immediately below, pursuant to Bankruptcy Rule 8002(b) Claimant respectfully reserves his appellate rights pending resolution of the Motion.

## PROCEDURAL POSTURE, RESERVATION OF RIGHTS, AND INVOCATION OF TOLLING OF TIME TO APPEAL UNDER FED R. BANKR. P. 8002(b)

The Motion is made pursuant to Bankruptcy Rule 8002(b)(1), under which Claimant's time to file an appeal of the Decision and Order shall run until fourteen (14) days following the entry of an order disposing of the Motion.  Also, the Motion is made on notice to all parties that – should the Motion be denied – would be entitled to notice under Bankruptcy Rule 8003(c) of Claimant's prospective appeal in this matter.

In advancing the Motion, Claimant does not seek a "second bite at the apple."  *See, e.g., In re Christie,* 222 B.R. 64, 67 (Bankr. D.N.J. 1998).  Rather, Claimant seeks to concisely identify applicable precedent and facts that may have been overlooked, together with raising procedural and evidentiary concerns that are capable of being readily corrected.  Yet concomitantly, should the Motion be denied, Claimant respectfully intends to designate additional points of law and fact for appeal in accordance with Bankruptcy Rule 8009.

3

## BACKGROUND

This contested matter involves Claimant's claim number 7233, as associated with the bankruptcy estate of BlockFi Lending LLC, Bankr. D.N.J. Case No. 22-19365 (the "Claim"), and the Debtors' *Seventh Omnibus Objection* as it pertains to such Claim (the "Objection").[4]

Following briefing and the submission of evidentiary materials on the record, a hearing on the Objection to the Claim was held on January 16, 2024.[5]  On February 8, 2024, this Court entered the *Order Granting Wind-Down Debtors' Seventh Omnibus Objection to Claim No. 7233 Filed by John W. Van Tubergen Jr.* (the "Order").[6]  Through the Order, the Court, *inter alia,* sustained the Objection, modified the Claim as provided-for by Schedule 1 thereto, and the Debtors' claims and noticing agent was authorized to modify the Claim on the claims register.  Order ¶¶ 1-3.

This matter has been briefed by the parties, and the Court set forth its own factual findings in the Decision.  Therefore, for purposes of the Motion, Claimant respectfully incorporates the following by reference:

    a)  Claimant's *Response* to the Objection (the "Response");[7]

    b)  Claimant's *Certification* in support of his Response (the "J.V.T. Cert."), together with Exhibits A to X;[8]

    c)  Claimant's *Sur-Reply* to the *Wind-Down Debtors' Reply to Response to Debtors' Seventh Omnibus Objection to Claim No. 7233 of John W. VanTubergen Jr.* (the "Sur-Reply");[9] and

    d)  Claimant's *Supplemental Certification of Claimant John W. Van Tubergen Jr. In Support of Sur-Reply (etc.)* (the "Supp. J.V.T. Cert."),[10] together with Exhibits Y to NN.

---

[4] Docket No. 1311.  All references to the docket shall be to the "main case," Case No. 22-19361.
[5] A transcript of the hearing (the "Transcript") is annexed as Exhibit OO to the undersigned's *Certification* in support of the Motion (the "J.F.M. Cert.").
[6] Docket No. 2122.
[7] Docket No. 1496.
[8] Docket No. 1496-1.
[9] Docket No. 2039.
[10] Docket No. 2039-1.

14828421-1

For the purposes of brevity and ease of review, elsewhere in this memorandum of law Claimant separately submits additional background relevant to Claimant's requests for relief.

## LEGAL ARGUMENT

### I. Governing Rules and Standards

### A. Fed. R. Bankr. P. 8002

Under Bankruptcy Rule 8002 ("Time for Filing Notice of Appeal"), except as provided in subdivision (b),[11] "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."  Fed. R. Bankr. P. 8002(a)(1).  In turn, Bankruptcy Rule 8002(b) ("Effect of a Motion on the Time to Appeal") provides that:

> If a party files in the bankruptcy court any of the following motions and does so within the time allowed by these rules, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:
> * * * * *
> (B) to alter or amend the judgment under Rule 9023; [or]
> * * * * *
> (D) for relief under Rule 9024 if the motion is filed within 14 days after the judgment is entered.

[Fed. R. Bankr. P. 8002(b)(1).]

Accordingly, a motion pursuant to 8002(b) extends the time to appeal an order by fourteen (14) days from the entry of a subsequent order resolving the 8002(b) motion.  *Id.; see also Carballeira v. Bond (In re Rams Assocs., LP),* 2021 U.S. Dist. LEXIS 96761, at *7 (D.N.J. May 21, 2021) (citing Fed R. Bankr. P. 8002(b)(1) for the proposition that the Bankruptcy Rules modify the time to appeal if a party files certain types of motions in the Bankruptcy Court).

---

[11] With subdivision (c) pertaining to inmates and thus being irrelevant to the present matter.  Fed. R. Bankr. P. 8002(c).

14828421-1

### B.  Regarding Misuse of "Motion for Reconsideration"

Courts have characterized Bankruptcy Rules 9023 and 9024 as governing motions for reconsideration, but as this Court has noted, the phrasing of "motion for reconsideration" is not mentioned by the Federal Rules nor the Local Bankruptcy Rules.  *Compare Id.* at **8-9 (citing *In re Energy Future Holdings Corp.,* 904 F.3d 298, 308, 311 (3d Cir. 2018), and *Christie,* 222 B.R. at 67, for the proposition that Bankruptcy Rules 9023 and 9024 govern motions for reconsideration in bankruptcy proceedings) *with S.P. Richard Co. v. Arora,* 2019 Bankr. LEXIS 2769 at *3 (Bankr. D.N.J. Aug. 29, 2019).  Notwithstanding any disagreement as to appropriate nomenclature, it has been understood that "[u]nder the federal rules of procedure, motions to reconsider are typically treated as motions to alter or amend judgment under F.R.Civ.P. 59(e)[,] .  *Christie,* 222 B.R. at 67. As explained by the District Court in *Database America,* a party moving for such relief must concisely set forth the matters or precedent that it maintains the court overlooked.  *Id.* (citing *Database America, Inc. v. Bell South Adver. & Publ'g. Corp.*, 825 F. Supp. 1216, 1219 (D.N.J. 1993)).  Also, as the Court explained in *S.P. Richard Co.,* litigants must be careful to specifically identify the basis upon which a motion seeks "reconsideration."  *S.P. Richard Co.,* 2019 Bankr. LEXIS 2769 at *4.

### C.  Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59

Bankruptcy Rule 9023 ("New Trials; Amendment of Judgments") provides that Federal Rule 59 generally applies to cases under the Bankruptcy Code "[e]xcept as provided in this rule and Rule 3008."   Federal Rule 59 ("New Trial; Altering or Amending a Judgment") in part provides for the amending of findings of act and conclusions of law, the making of new of new such findings and conclusions, and the entry of new judgments.  *See* Fed R. Civ. P. 59(a)(2) (providing that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment

6

if one has been entered, take additional testimony, amend findings of fact and conclusions of law

or make new ones, and direct the entry of a new judgment."). Federal Rule 59(e) specifically

provides for motions to alter or amend judgments, which also includes final orders. Fed. R. Civ.

P. 59(e); *see also S.P. Richard Co.,* 2019 Bankr. LEXIS 2769 at *3.

In addition, Bankruptcy Rule 3008 provides that "[a] party in interest may move for

reconsideration of an order allowing or disallowing a claim against the estate[,]" and that "[t]he

court after a hearing on notice shall enter an appropriate order."[12] Fed. R. Bankr. P. 3008.

### D.  Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60

Bankruptcy Rule 9024 provides that – excluding certain situations not applicable hereto –

Federal Rule 60 applies to cases under the Bankruptcy Code. Federal Rule 60 in part provides as

follows:

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR
> PROCEEDING. On motion and just terms, the court may relieve a
> party or its legal representative from a final judgment, order, or
> proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;[or]
> * * * * *
> (6) any other reason that justifies relief.
>
> [Fed. R. Civ. P. 60(b)(1), (6).]

Regarding the basis enumerated for relief under Federal Rule 60(b), this Court has

previously cited the proposition that "a trial judge has the discretion to reconsider an issue and

should exercise that discretion whenever it appears that a previous ruling, even if unambiguous,

might lead to an unjust result[,]" which this Court deemed consistent with the flexibility afforded

by Bankruptcy Code section 105(a) to "issue any order, process, or judgment that is necessary or

---

[12] Furthermore, Bankruptcy Code section 502(j) in part provides that "[a] claim that has been allowed or
disallowed may be reconsidered for cause." 11 U.S.C. § 502(j).

7

appropriate to carry out the provisions of this title." *S.P. Richard Co.,* 2019 Bankr. LEXIS 2769 at **7-8 (in part citing *Swietlowich v. Bucks Cty.*, 610 F.2d 1157, 1164 (3d Cir. 1979) and 11 U.S.C. § 105(a)).

II. **Part III(B) of the Decision is mistaken that BlockFi evidenced an acceptable LTV calculation method prior to liquidating the Collateral, and should instead reflect that only Claimant placed a reasonable calculation method on the record, by way of verifiable market data, so as to determine whether BlockFi complied with the subject LSAs prior to liquidating the Collateral, which this Court could readily verify by taking judicial notice of publicly-available market data.**

A. **The Record as to Issue of Cryptocurrency Valuation and LTV Calculations**

Part III(B) of the Decision ("The Correct LTV Calculation") found that "BlockFi applied an acceptable LTV calculation method to the subject loans." Decision at 7. For the reasons briefly set forth below, Claimant respectfully submits that this finding was made in error given that no reasonable valuation method was either identified or shown by BlockFi.

In its written submissions, BlockFi argued that its liquidations of the Collateral had been in accordance with the LSAs, and presented certain charts depicting the LTV calculations that were purportedly utilized to justify same. *See Wind-Down Debtors' Reply to Response to Debtors' Seventh Omnibus Objection to Claim No. 7233 of John W VanTubergen Jr.* (the "Reply")[13] at 13-14, 16-17, 23-25, 27-29. Nowhere, however, did BlockFi explain the basis or benchmark for its valuation of the Collateral. *Id.* Nor did the *Certification of Flori Marquez*[14] appear to provide any foundation for BlockFi's valuation method and ensuing LTV calculations.

---

[13] Docket No. 1963.
[14] Docket No. 1963-10.

Conversely, in his written submissions, Claimant specifically identified and utilized verifiable market data in support of his arguments that BlockFi had conducted unauthorized liquidations. *See, e.g.,* Sur-Reply at 3. In fact, Claimant placed on the record pricing data associated with Gemini Trust Company, LLC ("Gemini"), which served as the "Depository" under each LSA. Supp. J.V.T. Cert. ¶ 5 (annexing as Exhibit DD the Gemini pricing data, which corresponds to the timestamps featured in the Liquidation Summary, with a chain of custody communication); *see also, e.g.,* J.V.T. Cert., Ex. B § 4(d) (appointing Gemini as Depository). This verifiable market data informed and underpinned Claimant's Collateral Loss Breakdown, upon which Claimant in part rested his argument that BlockFi had engaged in unauthorized liquidations. J.V.T. Cert. Ex. AA; *see also* Sur-Reply at 3-5.

### B. Ms. Marquez's testimony should not be credited because she lacked personal knowledge.

During the hearing held on January 16, 2024, oral testimony of Ms. Flori Marquez was taken. With respect to Ms. Marquez, Claimant respectfully submits that her statements were generalized, unverifiable, largely not of specific application to Claimant's matter, and thus should not be credited because Ms. Marquez lacked personal knowledge as required by Federal Rule of Evidence 602.

During her testimony, when asked about pricing metrics and how LTV calculations were performed, Ms. Marquez stated "[w]e used a variety of best-in-class pricing feeds that were fed [into] our institutional team and that was connected to the loan platform, and then LTV values were calculated off of those pricing feed." Transcript[15] at 44:24 to 45:6. When then asked whether Gemini data was utilized, Ms. Marquez responded by noting that "[i]t may have been from Gemini

---

[15] Annexed as Exhibit OO to the J.F.M. Cert.

9

at certain points in time, but over time, we used multiple pricing feeds to ensure the data was accurate." *Id.* at 45:7-10.  When pressed by the Court for specifics, Ms. Marquez stated: "I can't remember off the top of my head[,]" and that "[t]here might have been one called Crypto Facilities, but I can't remember off the top of my head." *Id.* at 47:18-20.

In addition, all of Ms. Marquez's knowledge of the specific data points featured in BlockFi's submissions appears to have been second-hand.  In response to questions asked during cross-examination, Ms. Marquez explained that she relied on separate teams comprised of BlockFi employees, and even non-BlockFi employees such as attorneys and outside advisors. *Id.* at 51:1-18.  Later, in response to questioning regarding the making of the charts that were utilized by BlockFi in its Reply, Ms. Marquez stated that she was "part of the team that helped prepare the charts." *Id.* at 54:7-10; *see also Id.* at 47:1-3 (in response to question about reviewing books and records prior to the hearing, in part stating that "we had our finance team re-review all of the data that was submitted to ensure that it was accurate").

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  As made apparent through her testimony, Ms. Marquez did not have direct or "first-hand" knowledge, but rather was drawing inferences from her role as a top-level executive.  Claimant is mindful that there are instances where executives may be testifying as to overall standards of care such that, in making assessments on the record, they may be able draw the sort of inferences that businesspersons would customarily draw so as to constitute personal knowledge. *See, e.g., Agfa-Gevaert, A.G. v. A.B. Dick Co.,* 879 F.2d 1518, 1523 (7th Cir. 1989) (discussing manner in which business executives make inferential assessments of a product's quality and marketability, as opposed to first-hand assessments).  A second-hand, generalized basis for knowledge may also be

10

appropriate in the context of deposition testimony pursuant to a subpoena directed at an organization pursuant to Rule 30(b)(6) because Rule 30(b)(6) does not require personal knowledge, rather a Rule 30(b)(6) deponent presents the knowledge, opinions, or positions of the corporation, not of the deponent. *Indus. Eng'g & Dev. v. Static Control Components, Inc.,* 2014 U.S. Dist. LEXIS 141823 at **7-8 (M.D. Fla. Oct. 6, 2014).

As to the material issues before the Court, findings made as to the correct LTV calculation(s) should be based on the actual and precise methods and processes employed by BlockFi Lending *as to* Claimant's accounts and Collateral *before* they proceeded to liquidate such Collateral. The Debtors made no such showing, and Ms. Marquez's testimony does not evidence or support the specific pre-liquidation valuation process *in-fact run* by BlockFi Lending as to the Collateral posted by Claimant. Again, while a corporate representatives' deposition testimony may entail knowledge that is general corporate knowledge pursuant to Rule 30(b)(6), Rule 602 limits trial testimony to matters within personal knowledge. *Id.* (citing *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1295 (11th Cir. 2012)).

### C.  Proposed Amended Findings and Conclusions as to LTV Calculation

It is respectfully submitted that the Court should consider the foregoing and amend the Decision to reflect as follows:

    a) the Gemini pricing data presented by Claimant is authoritative in this contested matter;

    b) only Claimant proved a valuation method capable of supporting accurate and verifiable findings as to LTV calculations; and

11

    c)   alternatively, if upon further consideration the Court finds that BlockFi did sufficiently evidence its valuation method, such method is patently unreasonable and uncertain as a matter of fact.

### D. Potential Supplemental Findings and Judicial Notice of Market Data

Federal Rule of Evidence 201 ("Judicial Notice of Adjudicative Facts") provides that this Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Should the Court disagree with the proposed amended findings and conclusions in Part II(C) above, Claimant respectfully implores the Court to take judicial notice of other pricing data, collectively across leading cryptocurrency exchanges, in furtherance of evaluating whose collateral valuations are indeed reasonable and reliable. Claimant is confident that market data from leading sources – readily available, verifiable information within the public domain – will support his contentions that the correct and appropriate LTV calculations in this matter were presented by Claimant through the Collateral Loss Breakdown. J.V.T. Cert. Ex. AA; *see also* Sur-Reply at 3-5.

More specifically, Claimant most respectfully directs the Court to pricing data available from the following industry-leading sources: Gemini,[16] Coinbase Global, Inc. ("Coinbase"),[17] Kraken,[18] and Binance.US ("Binance").[19]  In addition, in the undersigned's supporting certification, internet addresses are provided which, upon information and belief, will direct the

---

[16] *See* https://www.gemini.com/ (last accessed Feb. 19, 2024).

[17] *See* https://www.coinbase.com/ (last accessed Feb. 19, 2024).

[18] *See* https://www.kraken.com/ (last accessed Feb. 19, 2024).

[19] *See* https://www.binance.us/ (last accessed Feb. 19, 2024).

Court to blockchain pricing data for each respective exchange per the timestamps associated with each of the key liquidation events.  *See* J.F.M. Cert. ¶ 3.

Claimant respectfully asserts that reference to such exchanges and data will further demonstrate the appropriateness of the valuation methodology and related conclusions offered by Claimant, as juxtaposed by BlockFi's unknown methods in effectuating the liquidations of the Collateral.

**III.**    **The Court overlooked the applicability of Michigan law to this matter because even if the liquidations were initially authorized, the ensuing extent of such liquidations should be deemed a violation of good faith and fair dealing, and unconscionable contractual provisions should not be enforced, particularly given Claimant's reasonable reliance on BlockFi Lending's agents.**

It is respectfully submitted that the Decision gave insufficient consideration to Michigan law and the manner in which it should dictate a different and more just outcome in this matter. Specifically, Part III(D) of the Decision ("The Alleged Improper Liquidation") only makes a passing reference to Michigan law, and suggests that Claimant's arguments thereunder were premised solely on a "straight" breach of contract analysis, ostensibly whether the collateral liquidations were authorized as a threshold matter.  *See* Decision at 13.  This is not an accurate depiction of Claimant's case-in-chief, however, and warrants further consideration by the Court.

*[Space intentionally left blank; please see following page fourteen (14).]*

14828421-1

**A.** **Even assuming *arguendo* that BlockFi did not breach the technical terms of the LSAs, this Court should examine good faith obligations under Michigan law together with the common law implied covenant of good faith and fair dealing.**

The LSAs at issue are governed by the law of the State of Michigan. *See, e.g.,* J.V.T. Cert., Ex. B § 31; *see also* Response at 5, ¶ 5(g). The Uniform Commercial Code as codified in Michigan provides that "[e]very contract or duty within this act imposes an obligation of good faith in its performance and enforcement." MCL 440.1304. MCL 440.1201(2)(t) defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." In addition to these codified provisions, Michigan also recognizes the common law implied covenant of good faith and fair dealing. *See Hammond v. United of Oakland,* 482 N.W.2d 652, 655 (Mich. Ct. App. 1992) (collecting case-law).

Applying Michigan law, Claimant contends that several of the key liquidation events conducted by BlockFi, even assuming *arguendo* that same were permissible as a threshold matter due to valid LTV assessments, were so aggressively over-the-top in units of Collateral sold so as to be legally unconscionable. As evidenced by the record, specifically looking just at the "Percentage (%) of Collateral Liquidated" column of the Collateral Loss Breakdown, the volume of Collateral effectively strip-mined by BlockFi is as follows: 47.67% (May 19 or 20, 2021, liquidation of Loan No. 558207a5), 53.41% (July 13, 2021, liquidation of Loan No. 1a118e43), 52.68% (July 19, 2021, liquidation of Loan No. 1a118e43), 43.52% (January 21, 2022, liquidation of Loan No. 736435a7), *etc.* *See* J.V.T. Cert. Ex. AA.

As previously explained to the Court, the volume of Collateral liquidated by BlockFi wildly exceeded what Claimant was told to expect by BlockFi Lending's agents. *See* Sur-Reply ¶ 2 (citing Supp. J.V.T. Cert. Exs. EE and FF). Yet it also far exceeded what Ms. Marquez testified to at the

14

hearing on the Objection.  *See* Transcript at 48:18-22 (Ms. Marquez's testimony that "when it came time to liquidate loans, our only goal was to ensure that we always had more collateral than the value of the loan outstanding . . . . [a]nd within that, we preferred to try to do smaller batches of liquidation rather than, let's say, oversell and wipe out much more collateral.").

Tellingly, Ms. Marquez's testimony in this regard and the prior representations by BlockFi Lending's agents comports with Claimant's interpretation of the LSAs as to the extent and volume of appropriate liquidations.  Specifically, upon the occurrence of a Trigger Event that was not successfully negated by Claimant, and upon reaching the "Accelerated Maximum Loan to Value Ratio" of either eighty percent (80%) or ninety percent (90%),[20] then BlockFi Lending was entitled to liquidate collateral so as to re-establish the "Required LTV" of either seventy percent (70%) or eighty percent (80%).  *See* J.V.T. Cert. Exs. B § 7(a), Ex. H § 7(a).  This is also to say, as was noted during the hearing by the undersigned, that the Debtors' construction of a supposed "Reset LTV" to re-establish the original LTV, *see* Reply at 7, is a false construct.  *Compare Id. with* J.V.T. Cert. Ex. B § 7(a).

For these reasons, Claimant respectfully urges the Court to fully consider Michigan law because it cannot be reasonably said that the underlying circumstances demonstrate reasonable commercial standards of good faith and fair dealing.

**B.  Even assuming *arguendo* that BlockFi did not breach the technical terms of the LSAs, this Court should examine whether clauses of the LSAs are unconscionable.**

In Michigan, the doctrine of unconscionability is codified at MCL 440.2302(1), which provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or

---

[20] In the case of Loan No. 1a118e43, the Max LTV was ninety percent (90%).  *Id.*

15

it may enforce the remainder of the contract without the unconscionable clause, or it may so limit

the application of any unconscionable clause as to avoid any unconscionable result."  "The basic

test is whether, in the light of the general commercial background and commercial needs of the

particular trade, the clauses involved are so one sided as to be unconscionable under the

circumstances existing at the time of the making of the contract." *Gianni Sport, Ltd. v. Gantos,*

*Inc.,* 391 N.W.2d 760, 761 (Mich. Ct. App. 1986).  Although consideration will be given to the

relative bargaining power of the parties, their relative economic strength, and the alternative

choices available, the primary consideration to any challenged contract or contract term is whether

it is substantively reasonable. *Id.* at 762.

In Part III(B) of its Decision, the Court cited certain provisions of the LSAs for the

proposition that BlockFi was within its contractual rights as it pertains to the liquidation of the

Collateral.  *See* Decision at 7 (citing the LSAs' definition of market value as either that listed by

Gemini *"or the market value determined by BlockFi in its reasonable discretion,"* and that "for

the purposes of calculating the Collateral Market Value, Lender may take into account or disregard,

*at its sole discretion* the value of any new cryptocurrency[.]") (emphasis in Decision).

For all the reasons placed on the record, Claimant contends that the aforementioned clauses

of the LSAs should be stricken as unconscionable, or simply not applied.  Such clauses are, by

their own express terms, completely one-sided.  They could also, and in this case in fact did, lead

to an unjust result whereby BlockFi was apparently free to disregard the fair market valuation of

the Collateral as established by the very depository (Gemini) appointed by the LSAs.

### C. Agency law dictates that Claimant reasonably relied on BlockFi Lending's agents.

The authority of an agent to bind a principal may be actual or apparent.  *Meretta v. Peach,*

195 Mich. App. 695, 698 (Mich. Ct. App. 1992).  "The test of whether an agency has been created

is whether the principal has a right to control the actions of the agent." *Id.* (citing *Little v Howard Johnson Co*, 183 Mich App. 675 (Mich. Ct. App. 1990)). "An agent has implied authority from his principal to do business in the principal's behalf in accordance with the general custom, usage and procedures in that business." *Id.* (citing 1 Restatement Agency, 2d, § 36, p 124)); *see also Alfaro-Huitron v. Cervantas Agribusiness,* 982 F.3d 1242 (10th Cir. 2020) (reversing judgment and remanding action in finding that workers presented sufficient evidence to support a finding that the contractor was acting as the businesses' agent when it recruited the workers).

Apparent authority may be created by the "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possess authority to enter into a transaction." *AKF, Inc. v. Restoration Servs. Holding, LLC, 2021* Mich. App. LEXIS 4917 at *6 (Mich. Ct. App. Aug. 12, 2021) (quoting *Hallock v. State,* 64 N.Y.2d 224, 231 (N.Y. 1984)). A third party with whom the agent deals may rely on an appearance of authority provided such reliance is reasonable. *Id.*

Michigan also recognizes the theory of ostensible agency, with requires a proponent to show that "[t]he person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence." *Markel v. William Beaumont Hosp.,* 510 Mich. 1071, 1071 (Mich. 2022) (internal citations omitted).

Here, for all the reasons placed on the record, whether on account of actual, apparent, or ostensible agency principles, Claimant should be deemed to have reasonably relied on BlockFi Lending's agents in seeking to safeguard the Collateral from liquidation under the LSAs.

17

### D. Proposed Amended Findings and Conclusions according to Michigan Law

It is respectfully submitted that the Court should consider the foregoing and amend the

Decision to reflect as follows:[21]

> d) BlockFi Lending violated Michigan law, specifically MCL 440.1304 and the implied covenant of good faith and fair dealing, by engaging in bad faith, employing unreasonable commercial standards, and exercising unreasonable business practices;
>
> e) pursuant to Michigan law, specifically MCL 440.2302(1) and common law safeguards against unconscionable business practices, the Court shall refrain from enforcing language of the LSAs, including but not limited to Section 7 thereof ("Valuation; Additional Collateral") which could be read to bestow unilateral power upon BlockFi to determine market value of collateral, and therefore result in unjust outcomes; and
>
> f) Claimant reasonably relied on representations made by BlockFi Lending's agents, including as to Loan No. 558207a5 being safe against liquidation on the morning of May, 20, 2021, and as to the volume of cryptocurrency to be sold upon the happening of a liquidation event.

### IV.    Other Proposed Amendments and Alterations to the Decision

### A. BlockFi failed to sufficiently evidence the issuance of notices required under the LSAs.

As shown, the LSAs required the issuance of certain notices prior to BlockFi Lending being

able to liquidate collateral, however BlockFi did not place the actual notices in evidence.  *See, e.g.,*

Sur-Reply at 7-8 (internal citations omitted).  The substitute evidence offered by BlockFi, its

Exhibit J, *see* Transcript at 37:12-19, is merely data purporting that such notices were issued,

however it is not tantamount to the notices themselves.  Even assuming *arguendo* that BlockFi's

Exhibit J is sufficient in form, for reasons explained in Part II(B) above, Ms. Marquez lacked

personal knowledge as to its contents, and did not know with any certainty as to the present status

---

[21] The proposed findings and conclusions hereunder are labeled (d) through (f) in continuation of the proposed findings and conclusions in Part II(C).

18

or existence of the notices themselves. *See* Transcript at 50:18 to 53:4. Also, as a matter of public

policy, given the sweeping liquidation measures deployed against Claimant's loans, this Court

should require BlockFi's strict conformance with the notice provisions of the LSAs, and that same

have been shown on the record through irrefutable best evidence.

Furthermore, Claimant proffered a sound argument, based on notices actually placed on

the record, that the 72-hour period required by Section 7(a) of the LSAs was not provided. *See*

Supp. J.V.T. Cert. ¶¶ 16-24.

Accordingly, hereunder Claimant proposes the following revisions to the Decision:[22]

g)  BlockFi's <u>Exhibit J</u> is excluded for lack of a proper foundation;

h)  BlockFi has not shown that it provided contractually-required notice under the
    LSAs prior to proceeding with liquidations of the Collateral; and

i)  BlockFi failed to provide the required 72-hour period prior to liquidating Loan No.
    558207a5.

**B. BlockFi effectively admitted that collateral posted by
   Claimant in connection with Loan No. 558207a5 was
   wrongfully liquidated.**

Through engineering "Reinstatement" Loan No. 1a118e43, BlockFi effectively admitted

its breach in connection with the liquidation of collateral posted by Claimant in connection with

Loan No. 558207a5. *See* Reply at 20-21 (BlockFi's own words in describing the "Reinstatement

Proposal"); *see also* Supp. J.V.T. Cert. ¶ 26. Claimant respectfully submits that there is no other

reasonable explanation for what transpired as shown on the record.

---

[22] The proposed findings and conclusions hereunder are labeled (g) through (i) in continuation of the
proposed findings and conclusions in Part III(D).

Accordingly, hereunder Claimant proposes that (j)[23] the Decision be revised to reflect that collateral posted by Claimant in connection with Loan No. 558207a5 was wrongfully liquidated, as admitted by BlockFi through the circumstances surrounding Loan No. 1a118e43.

V.    **Alternative Relief to the Order; Request for Stay of Disallowance and Maintenance of Disputed Claim Reserve**

As noted, Federal Rule 60, made applicable hereto by operation of Bankruptcy Rule 9024, in part permits a litigant to file a motion to relieve that party of a final order for any reason that justifies relief.

A.    **Fed. R. Bankr. P. 8007**

Bankruptcy Rule 8007 ("Suspension of Proceedings") in part provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal[.]"  Fed. R. Bankr. P. 8007(a)(1)(A).  A request for a stay pursuant to Bankruptcy Rule 8007 may be made either before or after a notice of appeal is filed. Fed. R. Bankr. P. 8007(a)(2).

Factors to be considered in determining whether a stay pending appeal should be issued are: (1) likelihood that party seeking stay will prevail on merits of appeal; (2) irreparable injury to moving party unless stay is granted; (3) no substantial harm to other interested persons; and (4) no harm to public interest.  *In re X-Cel Constructors of Delaware, Inc.,* 76 B.R. 969, 970 (D.N.J. 1987) (considering such factors under former Bankruptcy Rule 8005).  "These factors are not to be applied in a vacuum but instead must be viewed in light of the importance of the right of appeal and preservation of the status quo during the appeal."  *In re Howley,* 38 B.R. 314, 315 (Bankr. D. Minn. 1984).

---

[23] Labeled (j) in continuation of the proposed findings and conclusions in Part IV(A).

As to appeals of disallowed claims and preserving the existing state of affairs pending appeal, the United States Bankruptcy Court for the Southern District of New York has explained that an appellant (or as the case is here, a prospective appellant) is free to seek a stay pending appeal of the effectiveness of a disallowance order for the purpose of maintaining fund reserves in connection with such claim. *In re Enron Corp.,* 2006 Bankr. LEXIS 4294 at **13-14 (Bankr. S.D.N.Y. Jan. 17, 2006). Notably, this is true regardless of what terms are provided-for by a confirmed plan as to reserves for disallowed claims. *Id.*

## B. Relevant Background

The Order provides that the Claim is to be modified in the amount of $19.07, and the claims and noticing agent is authorized to modify the Claim on the claims register. Order ¶¶ 2-3.

With regard to the establishment of reserves to account for the Debtors' potential liability in connection with disputed claims, the confirmation order in this matter (as found at Docket No. 1655, the "Confirmation Order") which confirmed the Debtors' *Third Amended Joint Chapter 11 Plan* (the "Plan") provides as follows:

> 114. Disputed Claim Reserve. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, on or prior to any Distribution Date the Wind-Down Debtors shall establish a Disputed Claims Reserve. The Wind-Down Debtors shall file a notice on the docket of the proposed amount of the Disputed Claims Reserve at least fourteen (14) days prior to such Distribution Date. Parties shall have seven (7) days to object to the proposed amount of the Disputed Claims Reserve (the "Disputed Claims Reserve Objection Deadline"). If an objection is filed prior to the Disputed Claims Reserve Objection Deadline, the Wind-Down Debtors (i) will schedule a hearing with the Bankruptcy Court to determine the amount of an appropriate Disputed Claims Reserve with respect to that Distribution and (ii) shall not make any Distribution in any amount subject to such objection until such time as (a) the amount of an appropriate Disputed Claims Reserve with respect to that Distribution is determined by the Bankruptcy Court or (b) the parties consensually resolve the objection.

[Confirmation Order at 67 ¶ 114.]

In addition, the Plan provided that "[n]otwithstanding any provision otherwise in the Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court."  Plan at 67, Art. VII § C.

Claimant is unaware of the status of the Disputed Claim Reserve procedures as set forth in Paragraph 114 of the Confirmation Order.  While Claimant is aware of the *Plan Administrator's Motion for an Order Capping the Maximum Allowable Amounts and Establishing a Reserve for All Claims to Enable the First Interim Distribution,*[24] which was granted by way of the Court's *Order* of January 17, 2024,[25] the schedules annexed in support of such motion did not reflect the inclusion of either Claimant or the Claim.  Accordingly, below Claimant proposes an amount to be held in reserve in conjunction with his request for a stay.

## C. The protection of Claimant's right to appeal depends upon a stay of the Order's disallowance of the Claim and the accompanying imposition of a reasonable Disputed Claim Reserve in connection therewith.

The Order's disallowance of the Claim should be stayed pending the resolution of a potential subsequent appeal.  As permitted by Bankruptcy Rule 8007(a)(2), this request is being made prior to the filing of a notice of appeal in light of Claimant's Motion pursuant to, *inter alia,* Bankruptcy Rule 8002(b).

While Claimant is (of course) mindful of the Decision, he nevertheless respectfully maintains that there exists a high likelihood that Claimant will prevail on appeal given his case-in-chief as presented by way of written briefing, certifications, exhibits on the record, and at the

---

[24] Docket No. 2006.
[25] Docket No. 2053.

hearing held in this matter, together with foregoing contentions made in support of the Motion

(which the undersigned hopes will move the Court so as to prevent the need for appeal).   In

particular, as set forth by his Sur-Reply, the liquidations at issue were either unwarranted, as shown

by the Collateral Loss Breakdown which was based on Gemini data (whereas BlockFi did not

explain the basis for their data), or alternatively, were excessive as shown by irrefutable

calculations not based on disputed market data (*e.g.,* the "Percentage (%) of Collateral Liquidated"

column of the Collateral Loss Breakdown).  *See* Sur-Reply at 2-6.  These and other considerations,

including but not limited to BlockFi's failure to adequately evidence that notice was furnished in

accordance with the LSAs, the profound unfairness in failing to look toward the Surplus 558207a5

Collateral prior to liquidation, Loan No. 1a118e43's express terms regarding the collateral to be

reinstated by BlockFi, and the general – and as a matter of the record, unrebutted – haphazard

manner in which BlockFi failed to implement platform functionality and customer service to

mitigate the precarious situation that Claimant was placed in.  *See, e.g., Id.* at 7-9; *see also* J.V.T.

Cert. ¶¶ 5-9, 11-17.  Furthermore, as contended by Part II(D) above, judicial notice of market data

will support Claimant's position, and in particular the Gemini data underpinning the Collateral

Loss Breakdown, while also evidencing the unreasonableness of whatever pricing metric was

employed by BlockFi.  Therefore, the totality of the circumstances demonstrates a high likelihood

that Claimant will prevail on appeal if the instant Motion is denied.

Second, absent a stay of the Order as requested, Claimant may very well lose the ability to

recover on account of his Claim if sufficient reserves are not maintained pending appeal due to

estate assets potentially being depleted prior to the appellate process running its course.  Although

this type of injury is largely economic (putting aside associated emotional distress and harm to

mental well-being), the Claim, like the overwhelming majority of claims in bankruptcy, is

inherently of an economic nature.  Therefore, "irreparable injury," according to its plain meaning, will likely result but for the requested stay.

Third, Claimant respectfully submits that the grant of a stay in his favor would not substantially harm other interested persons.  In this regard Claimant distinguishes the present matter, pertaining to the Order which solely affects Claimant, from the line of case-law determining whether an appeal of a confirmation order should stay the implementation of a Chapter 11 plan, thereby potentially affecting an entire estate and all creditors and parties-in-interest, and which also involves equitable mootness considerations.  *See, e.g., In re LATAM Airlines Grp. S.A.,* 2022 Bankr. LEXIS 1892 at **10-12 (Bankr. S.D.N.Y. Jul. 8, 2022) (in matter wherein claimholders sought stay of order confirming a Chapter 11 plan pending appeal, in part holding that stay was not warranted given risk that it could cause debtors to lose access to billions of dollars in capital needed to effectuate such plan).  Similarly, Claimant cannot envision a harm to the public interest.

With regard to the maintenance of a Disputed Claim Reserve pending appeal, Claimant respectfully proposes the imposition of a reserve on account of his Claim in the amount of **$8,160,000.00,** such amount representing 81.6% of the face amount of the Claim as-filed ($10 million), with the percentage utilized (81.6%) being taken from the lowest-end projected distributions to members of Class 3-b (BlockFi Lending LLC Loan Collateral Claims).  *See Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*[26] at 31-33.

---

[26] Docket No. 1310.

**GENERAL REQUEST FOR FURTHER PROCEEDINGS
AS-NEEDED TO FULFILL CLAIMANT'S PROPOSED AMENDMENTS,
ALTERATIONS, AND RELATED REQUESTS FOR RELIEF**

Should this Court require further proceedings to accomplish any of the relief requested by the Motion, or as the Court may otherwise deem appropriate, Claimant respectfully requests that such further proceedings be conducted pursuant to Federal Rules 59 and 60, Bankruptcy Rule 3008, and Bankruptcy Code section 105(a).[27]

## CONCLUSION

Based upon the foregoing, Claimant respectfully requests that this Court grant the Motion, and thereby amend the Decision according to Claimant's proposed amended findings and conclusions, and in turn alter the Order as-needed in the interests of justice to effectuate a proper outcome in accordance with Claimant's proposed amended findings and conclusions.

Respectfully submitted,

CONNELL FOLEY LLP
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, NJ 07102
973-436-5800
*Counsel to Claimant John W. Van Tubergen Jr.,
  Creditor of BlockFi Lending LLC*

Dated: February 21, 2024                By:_____*/s/ Joao F. Magalhaes*_____
                                                Joao F. Magalhaes

---

[27] Bankruptcy Code section 105(a) was previously briefed by Claimant.  *See* Response at 12 n. 12.

25