| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| **BROWN RUDNICK LLP** Kenneth J. Aulet, Esq. (admitted *pro hac vice*) Seven Times Square New York, New York 10036 (212) 209-4800 kaulet@brownrudnick.com **BROWN RUDNICK LLP** Tristan Axelrod, Esq. (admitted *pro hac vice*) One Financial Center Boston, MA 02111 (617)856-8300 taxelrod@brownrudnick.com *General Counsel for the Plan Administrator* **GENOVA BURNS LLC** Daniel M. Stolz, Esq. Donald W. Clarke, Esq. 110 Allen Rd., Suite 304 Basking Ridge, NJ 07920 (973) 230-2095 DStolz@genovaburns.com DClarke@genovaburns.com *Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP** Richard S. Kanowitz, Esq. (NJ Bar No. 047911992) Lauren M. Sisson, Esq. (NJ Bar No. 394182022) 30 Rockefeller Plaza, 26th Floor New York, New York 10112 (212) 659-7300 richard.kanowitz@haynesboone.com lauren.sisson@haynesboone.com *Attorneys for the Plan Administrator* |
| In re: BLOCKFI INC., *et al.*, Debtors.[1] | Chapter 11 Case No. 22-19361 (MBK) (Jointly Administered under a Confirmed Plan[2]) **Hearing Date: February 27, 2024 @ 10:00 a.m. ET** |

## WIND-DOWN DEBTORS' REPLY TO RESPONSE OF THE CONNECTICUT DEPARTMENT OF BANKING TO THE WIND-DOWN DEBTORS' OBJECTION TO CLAIM [DOCKET NO. 2138]

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609].

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down

Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the

"Chapter 11 Cases"), hereby file this reply (the "Reply") to the *Response of the State of*

*Connecticut Department of Banking to the Wind-Down Debtors' Objection to Claim* [Docket No.

2138] (the "Response"). In support of the Reply, the Wind-Down Debtors respectfully represent

as follows:

<u>**Preliminary Statement**</u>[3]

1.      The Response fails to establish any basis why money that ought to go to BlockFi

customers and creditors should instead go to the State of Connecticut.  Nor does the Response

justify Connecticut's attempts to waste further money that ought to go to BlockFi customers and

creditors litigating these issues in further proceedings elsewhere, rather than meet their burden to

prove their case after submitting to the jurisdiction of this Court. The Objection should be

sustained.

2.      The Wind-Down Debtors do not make this request lightly. The Wind-Down

Debtors – consistent with successful efforts with nearly every other state and federal regulator –

have made multiple attempts to resolve this dispute with the Department but could not reach an

agreement due to unreasonable requests by the Department that BlockFi customer money should

go to the State of Connecticut, and a complete failure by the Department to provide any evidence

to support the Connecticut Claim. The Wind-Down Debtors have provided the Department, despite

any lack of formal discovery requests, with explanations about the Platform Pause and reporting

---

[3] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings provided in
the remainder of the Reply.

that reflected that the wallet withdrawal process has resulted in a return of all digital assets to Connecticut customers who properly followed the necessary steps to withdraw by the wallet withdrawal deadline. Any remaining digital assets in wallet accounts, including those of Connecticut customers, are in the process of being returned in cash pursuant to the terms of the Plan. In other words, the Connecticut customers have already received the return of their digital assets from their wallet accounts or soon will receive the cash equivalent of same.

3.     The Platform Pause was not an unsafe or unsound practices within the meaning of the Connecticut statute. The Platform Pause was *required* to preserve the assets of wallet customers, and had it not been implemented the Connecticut customers that the Department purports to protect would not have had the full amount of their funds restored to them. The Plan Administrator and the Wind-Down Debtors have explained this point numerous times to the Department, and it is explained in the Objection.

4.     Through its Response, the Department refuses to engage with the merits of its asserted claim. The Department refuses to meet its burden to prove an entitlement to the assets of BlockFi customers. The Department refuses to explain why "public policy" requires customer money be sent to the State of Connecticut instead of returned to the customers of BlockFi – something no other state or federal regulator has sought to do. Instead, the Department focuses on an attempt to force the Wind-Down Debtors to litigate the Connecticut Claim outside of this Court in an unnecessary Administrative Proceeding that could go on for an extended amount of time – despite conceding, as they must, that they have submitted to the jurisdiction of this Court. The Wind-Down Debtors have been working diligently to reconcile pending claims and other matters to bring this case to closure and make distributions. The Wind-Down Debtors implore this Court to deny the Department's abstention request and disallow the Connecticut Claim on the merits,

which, in addition to being the legally correct outcome, will stop the unnecessary fee burn associated with the Connecticut Claim that diminishes the recoveries to Connecticut citizens – and all other BlockFi creditors.

## **Relevant Background**

5.      On May 30, 2023, the Department filed proof of claim no. 31767 (the "Connecticut Claim") against BlockFi Trading LLC in the asserted amount of "unliquidated, up to $100,000 per violation." Connecticut Claim at p. 2. The purported basis of the claim was a "penalty sought for violation of provisions of the Connecticut General Statutes governing money transmission licenses." *Id.* The only support attached to the Connecticut Claim is the Department's February 14, 2023 Notice.[4] *Id.* at p. 5–12. The Notice states that the basis for the imposition of a civil penalty against BlockFi is the Platform Pause. *Id.*[5] BlockFi has, at all times, disputed that the Platform Pause constitutes a basis for the imposition of any civil penalty. Promptly after receipt of the Notice, BlockFi sent the March 15 Letter to the Department explaining why there was no basis to assess a civil penalty. March 15 Letter at p. 4–5. The Department's subsequent refusal to refrain from going forward with the Administrative Proceeding necessitated the Debtors' filing of the Adversary Proceeding. Although the parties agreed to stay the Adversary Proceeding, the Debtors reserved all rights. *Standstill Agreement*, attached as Exhibit B to the *Notice of BlockFi's Motion for Entry of an Order Staying the Adversary Proceeding* [Adv. Docket No. 5]; *see also Order Granting Motion to Stay Adversary Proceeding* [Adv. Docket No. 7] (approving the Standstill Agreement).

---

[4] Capitalized terms used but not otherwise defined in this Reply shall have the meanings provided in the Objection.

[5] *See also* Notice at ¶ 16.

6.      Following the Effective Date of the confirmed Plan, the Department immediately sought to continue the Administrative Proceeding and contacted the hearing officer to the Administrative Proceeding – who is also a staff attorney for the Department.

7.      Following multiple attempts to resolve the Connecticut Claim with the Department to no avail, the Wind-Down Debtors filed the Objection to the Connecticut Claim at Docket No. 1942. The Wind-Down Debtors agreed to provide the Department with an adjournment of the response deadline to February 20, 2024.

8.      The Department filed its Response at Docket No. 2138. In the Response, the Department ignores its burden to establish a valid claim on the merits and instead argues that (i) the automatic stay does not prevent the Department from liquidating the Connecticut Claim in the Administrative Proceeding, and (ii) the Wind-Down Debtors' "claims of innocence" should only be addressed in the Administrative Proceeding.

9.      Crucially, the Department admits that this Court has core jurisdiction over the Connecticut Claim; however, the Department requests that this Court exercise its discretion to permissively abstain from hearing the Objection. For the reasons set forth in the Objection and this Reply, the Connecticut Claim should be disallowed.

## Reply

### A.  **The Department has failed to meet its burden to establish a valid claim.**

10.     As a preliminary matter, the Department wholly ignores the caselaw cited in the Objection regarding the shifting burden in Section 502 and instead assumes that the Connecticut Claim is prima facie valid, citing Bankruptcy Rule 3001. Response at ¶ 32. For a claim to have prima facie validity, however, the claimant must allege facts sufficient to support its claim. *In re*

*Biolitec, Inc.*, Case No. CIV. 13-5864 FSH, 2013 WL 6795400, at *3 (D.N.J. Dec. 16, 2013) (citing *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)).

11.    The Department has failed to allege facts sufficient to support the Connecticut Claim and therefore it is not prima facie valid. To date, the Department has still not articulated any basis for (i) how exactly BlockFi violated the Connecticut statute or (ii) why any such alleged violation gives rise to a monetary penalty. The Department has also failed to articulate the actual total dollar amount the Department is seeking to assess in penalties for such alleged violations. The Notice attached to the Connecticut Claim references penalties "not to exceed One Hundred Thousand Dollars ($100,000) per violation," but the Department has not explained why the Platform Pause constitutes a violation or, assuming it does, why the Department would have a claim for more than one violation. At various times, the Department has thrown around a $1 million proposed penalty amount; however, the only apparent connection between that amount and the alleged violations is that it is, conveniently, the sum of the surety bond. *See Connecticut Money Transmitter Bond* and accompanying detail, attached hereto as **Exhibit A**; *see also Certification of Michael Nonaka in Support of BlockFi's Motion for Entry of an Order (I) Enforcing the Automatic Stay as to the Connecticut Department of Banking or, in the Alternative, for Injunctive Relief Enjoining Prosecution of the Administrative Proceeding, and (II) Finding that the Connecticut Department of Banking Violated 11 U.S.C. § 525* [Adv. Docket No. 2-1], attached hereto for ease of reference as **Exhibit B**.

12.    As set forth in the Objection, courts have disallowed claims that fail to establish prima facie validity. "[I]n certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b) . . . ." *In re Mallinckrodt Plc*, Case No. 20-12522-JTD, 2022 WL

3545583, at *4 (D. Del. Aug. 18, 2022); *see also In re O'Brien*, 440 B.R. 654, 667 (Bankr. E.D.

Pa. 2010) (finding that lack of prima facie evidence pursuant to Bankruptcy Rule 3001(f) and

failure of claimant to provide additional evidence warranted disallowance of claim). The

Connecticut Claim is not prima facie valid, and this Court should disallow it for that reason alone.[6]

13.    If a claim is properly filed, meaning it alleges facts sufficient to support legal

liability, then it is prima facie valid. *In re Biolitec, Inc.*, 2013 WL 6795400, at *3 (D.N.J. Dec. 16,

2013) (citing *In re Allegheny Int'l Inc.*, 954 F.2d at 173). In that instance, the objecting party is

then required to sufficiently negate the prima facie validity of the filed claim by producing

evidence to refute at least one of the allegations essential to the claim. *Allegheny*, 954 F.2d at 173

14.    The Notice contains only a blanket assertion that the Platform Pause was an unsafe

or unsound practice which violated Section 36a-608(a) of the Connecticut General Statutes. CONN.

GEN. STAT. § 36a-608(a) states, *inter alia*:

> For purposes of this section, "unsafe or unsound practice" means a practice or
> conduct by a licensee or an authorized delegate that is likely to result in a material
> loss, insolvency or dissipation of the licensee's assets or otherwise materially
> prejudice the interests of purchasers.

15.    Even assuming this bare and unsubstantiated allegation is sufficient to establish a

prima facie claim, the Wind-Down Debtors refuted this allegation in the Objection and

demonstrated that BlockFi's actions to undertake the Platform Pause prevented a massive

withdrawal of assets from the Platform that would have resulted in substantially more severe

diminution of value available for creditors. *See* Objection at ¶¶ 44–46. In sum, the Wind-Down

Debtors have established that the Platform Pause was a contractually permissible action that was

---

[6] "The debtor… 'has no evidentiary burden to overcome' in objecting to a claim that is not prima facie valid." *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008) (*citing eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 318 (Bankr. S.D. Tex. 2007)) (holding that debtors' objections alone are sufficient to shift the burden back to claimant when proof of claim had insufficient documentation).

7

designed to and *did* protect customer property, and emphatically did not "result in a material loss, insolvency or dissipation of the licensee's assets or otherwise materially prejudice the interests of purchasers."

16.     Upon that refutation of the allegations contained in the Connecticut Claim, the burden reverted to the Department to prove the validity of the Connecticut Claim by a preponderance of evidence, which it has not done. *See Allegheny*, 954 F.2d at 173–74 (explaining the shifting burden of production under Section 502(a)).

17.     The Department has wholly failed to meet its burden.  There has been no production whatsoever, no facts or even argument to support the Connecticut Claim. Rather than respond to the Wind-Down Debtors on this front, the Department submits that these "arguments" should be "properly presented to the Hearing Officer" – a Department employee – instead of this Court. Response at ¶ 41.

18.     Because the Department has failed to carry its burden, this Court should disallow the Connecticut Claim in its entirety. The Department submitted to this Court's jurisdiction and conceded in its Response that this Court has core jurisdiction to adjudicate the Connecticut Claim and Objection. *Id.* at ¶ 42, n.4. Moreover, the Department has neither filed a motion with this Court seeking to lift the automatic stay or for a determination that the police power exception applies. Therefore, there is no need for this Court to entertain the Department's ill-founded automatic stay and abstention arguments. Nevertheless, the Wind-Down Debtors will briefly address each and explain why they should be disregarded.

**B.   <u>This Court is in the best position to decide the merits of the Connecticut Claim.</u>**

19.     Section 1334 of the Bankruptcy Code provides for two types of abstention – mandatory and permissive. Mandatory abstention applies when a proceeding is (1) based on a state

law claim or cause of action; (2) there is a lack of federal jurisdiction; (3) the action is commenced

in a state forum of appropriate jurisdiction; (4) it is capable of timely adjudication; and (5) the

matter is a non-core proceeding. 11 U.S.C. § 1334(c)(2). Because this Court has core jurisdiction

over the matter, mandatory abstention does not apply. *See In re LaRoche Indus., Inc.*, 312 B.R.

249, 253 (Bankr. D. Del. 2004) (explaining core proceedings do not meet the requirements for

mandatory abstention and courts need not consider the other factors).

20.     The Department instead asks this Court to exercise permissive abstention pursuant

to Section 1334(c)(1), since nothing prevents the Court from abstaining to hear a particular

proceeding in the interest of justice or comity with state courts. 11 U.S.C. § 1334(c)(1). The Court

has discretion in deciding whether to exercise permissive abstention. *In re MicroBilt Corp.*, 484

B.R. 56, 66 (Bankr. D.N.J. 20120). A court will look to multiple factors in determining whether

permissive abstention is appropriate, including—

> (1) the court's duty to decide what is before it; (2) the effect on the efficient administration
> of the estate if the court abstains; (3) the possibility of inconsistent results stemming from
> the abstention; (4) the waste of judicial resources; (5) the presence of difficult or unsettled
> areas of state law more properly addressed in a state forum; (6) considerations of comity;
> (7) prejudice to any non-debtor party from proceeding in federal court; (8) the extent to
> which state law issues predominate over bankruptcy issues; (9) the presence of a related
> proceeding commenced in state court; (10) jurisdictional basis other than 28 U.S.C. § 1334;
> (11) how related the case is to the main bankruptcy case; (12) the substance of a "core"
> proceeding; (13) the feasibility of severing state law claims from the bankruptcy case;
> (14) the burdens to the court's docket; (15) the existence of a right to a jury trial; and
> (16) the presence of non-debtor parties in the case.

*In re Strano*, 248 B.R. 493, 504 (Bankr. D. N.J. 2000).

21.     None of the foregoing factors weigh in favor of abstention here, and, in fact,

numerous factors weigh heavily against abstention. Most prominently, the Administrative

Proceeding will result in inefficient administration of the estate, potentially inconsistent results, a

waste of judicial resources, and significant harm to the legitimate BlockFi creditors.

22.     This is not a situation where permissive abstention may be proper because there is a pending state court action that is ready to proceed to trial and will have little to no effect on estate administration. The Administrative Proceeding is not a formal court proceeding and is not likely to prove any more expeditious or efficient than proceeding in this Court. The Department did not initiate the Administrative Proceeding until after the Petition Date. The only "hearings" conducted to date in the Administrative Proceeding have been to inform the hearing officer of the pending issues before this Court, and the only papers submitted to the hearing officer thus far are pleadings filed in this case, such as the Objection to the Connecticut Claim.

23.     Allowing the Administrative Proceeding to continue will result in a waste of judicial and estate resources. The Wind-Down Debtors will be forced to re-brief the issues and use estate resources to defend the baseless penalty claim to the detriment of creditors. The likely outcome of the Administrative Proceeding is also concerning. The Department is not a State Regulatory Claimant as such term is defined in the Plan because those claimants agreed to subordinated treatment in Class 17. Therefore, if the hearing officer, a Department employee, assesses a penalty (likely $1 million)[7] against the Wind-Down Debtors, the penalty, if enforced, would deplete the recovery to other creditors.[8] In contrast, the Department is not prejudiced by this Court deciding the merits of the Connecticut Claim. The Department has submitted to this Court's

---

[7] As noted supra ¶ 6, the Department has repeatedly mentioned seeking $1 million penalty. Moreover, upon information and belief the department initiated a similar action against the FTX Debtor entity West Realm Shires Services Inc. West Realm does not appear to have responded to the Department to dispute the penalty, and the Department assessed a civil penalty of $1 million. *See In the Matter of West Realm Shires Services Inc. d/b/a FTX US NMLS $ 195771, Order Revoking Money Transmission License, Order to Cease and Desist, and Order Imposing Civil Penalty*.

[8] BlockFi would not be protected by the Department seeking to go against the surety bond rather than the assets of BlockFi directly, as then BlockFi would face a claim from Arch Insurance based on such payment, which if allowed would be *pari passu* with customer claims. Either way, the Department takes money from BlockFi customers to give to the State of Connecticut.

jurisdiction and has obtained bankruptcy counsel that has appeared in this case and filed the Response.

24.     Finally, the Connecticut Claim does not involve complicated state law issues that warrant abstention. This Court, and bankruptcy courts nationwide, regularly interpret and apply state statutes and decide state law issues both in connection with claims allowance, disallowance, and otherwise. The issues that will be litigated in the Administrative Proceeding such as BlockFi's decision (and necessity) to implement the Platform Pause to protect the wallet account assets as well as the assets of the estate, are intertwined with these proceedings.

25.     Further, this Court is intimately familiar with the facts and law surrounding the Platform Pause and is best suited to decide the Connecticut Claim.[9]  The extensive litigation in this case over the Wallet Withdrawal Motion means this Court is familiar with the details of the structure of BlockFi's systems, the Platform Pause, and the effects had transactions after the Platform Pause been honored. The hearing officer in the Administrative Proceeding is not.

26.     The continuation of the Administrative Proceeding, which is in its infancy, will result in duplicative efforts, a waste of judicial resources, and potentially inconsistent results with this Court's prior rulings on the Platform Pause and wallet accounts. Allowing this objection to proceed will resolve this matter now, with no further waste of estate funds. While there are certainly situations in which permissive abstention is appropriate, this is not one of them. For these reasons, the Court should deny the Department's request for abstention.

---

[9] The Debtors filed the Wallet Withdrawal Motion at Docket No. 121, which was contested by an ad hoc group of wallet account holders. Following discovery, briefing, and an evidentiary hearing, this Court entered an oral ruling at Docket No. 871 holding that the Debtors had the authority to discontinue, pause and/or refuse all current and future access for customers with respect to all account activity, including withdrawals, transfers, or trading without advance notice. This Court further authorized the Debtors to update the user interface and take the necessary steps to initiate the wallet withdrawal process. [Docket Nos. 923, 1207, 1361, and 1451].

### C. **The Department's arguments that the stay does not apply are invalid.**

27.     The Department does not dispute that the stay is still in place pursuant to the terms of the Plan. Rather, the Department argues that the Wind-Down Debtors are not following proper procedure by using the Objection to enforce the stay. According to the Department, even if the stay is in place, the language in the Plan and the police power exception permit the Department to continue with the Administrative Proceeding. Response at ¶¶ 32–40. The enforcement of the stay does not require an adversary proceeding, and neither the language in the Plan nor the police power exception apply to the Connecticut Claim.

#### i.     *The Department's procedural argument regarding the stay is incorrect.*

28.     Throughout its Response, the Department repeatedly attempts to point out that the Wind-Down Debtors failed to follow proper procedure.[10] With respect to the stay, the Department asserts that seeking to enforce the automatic stay requires an adversary proceeding. *Id.* at ¶ 34. The Department is simply wrong. If debtors were required to file an adversary proceeding each time one needed to enforce the automatic stay against a party, then bankruptcy courts across the nation would be bogged down with adversary proceedings regarding the stay in every case. Such a proceeding is not required, but to the extent the Court concludes that an adversary proceeding is necessary for any of the relief sought in the Objection, the Adversary Proceeding is still pending

---

[10] In addition to the arguments regarding the stay, the Department asserts that some of the Wind-Down Debtors' arguments do not comport with Section 502(b) as the exclusive grounds for claim disallowance. But Section 502(b)(1) does not operate in a vacuum and "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007). Moreover, this Court approved certain procedures for claim objections filed in this case that provide additional grounds for claim objection, including that the claim is unliquidated, fails to sufficiently specify a basis or provide sufficient documentation, and seeks recovery for amounts for which the Debtors are not liable. *See* Docket No. 609. Similarly, there is nothing in Section 525 that prevents its use defensively in claim objections. At least one case has involved a § 525 argument in a claim objection. *See In re Mead*, No. 12-01222-8-JRL, 2013 WL 64758, at *3-4 (Bankr. E.D.N.C. Jan. 4, 2013). In sum, the Wind-Down Debtors have complied with the proper procedure regarding the basis for the Objection to the Connecticut Claim.

against the Department involving these issues, including the Department's violation of the stay, and this Court may decide these issues in that Adversary Proceeding if necessary.

29.    The Department also focuses on procedural language in the Plan that is not applicable to the Department or to this contested matter. In paragraph 35 of the Response, the Department points out that there is no discharge or release of state regulatory actions, orders, or judgments against the Debtors and that the "State Regulatory Claimants" opt out of the releases in the Plan. Response at ¶ 35. The Wind-Down Debtors are not violating this Plan language. The Wind-Down Debtors are not seeking a determination that the Connecticut Claim was discharged or released by the Confirmation Order. Rather, they are seeking disallowance of the Connecticut Claim from the only Court with jurisdiction to do so. Moreover, the term "State Regulatory Claimants" is defined in the Plan to include *only* those state regulatory agencies that are parties to the stipulation, which does not include Connecticut (which is a primary reason the Connecticut Claim is now before the Court). Plan, Art. I, § A, Definition 223–224; *see also Joint Stipulation and Agreed Order Between Certain State Governmental Regulatory Claimants and Debtors to Forego Receiving Distribution from Debtors' Bankruptcy Estates* [Docket No. 1613]. Lastly, the Department is seeking to assess the penalty against the Wind-Down Debtors and to recover from the estate, not a third-party non-debtor. The Department's defunct procedural arguments are nothing more than red herring attempts to distract that Court from the reality that the Department (i) has no legitimate basis for its penalty claim; (ii) is the only state regulatory agency seeking to assess such a penalty, and (iii) is looking for pecuniary gain to the detriment of other legitimate BlockFi creditors, including its own constituents.

13

### *ii.    The Police Power Exception does not apply.*

30.    On the topic of pecuniary gain, the Wind-Down Debtors, in an effort to prevent unnecessary litigation on the police power exception, explained to the Department in their March 15 Letter that the exception does not apply. The exception in Section 362(b)(4) is limited, and only permits governmental units to pursue actions to protect the public health and safety – not to protect a pecuniary interest in property of the estate. Courts, including the Third Circuit, consider two tests to determine if the actions being taken by the governmental unit fall within this narrow construction: the pecuniary purpose and public policy tests. *In re Nortel Networks, Inc.*, 669 F.3d 128,139-40 (3d Cir. 2011). If the purpose is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable. The tests "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors." *Id.*

31.    Here, the police power exception to the automatic stay does not apply. BlockFi has not acted as a money transmitter for well over a year and attempted to surrender its license to the Department, which the Department rejected (and which rejection the Department now acknowledges without explanation, *see* Response ¶ 55).

32.    BlockFi is no longer an operating entity and exists solely to execute the terms of the Plan, including reconciling claims and ultimately making distributions on allowed claims. The Department's purpose in assessing a monetary penalty against the Wind-Down Debtors is for its own pecuniary gain. Any distribution to the Department on account of an allowed claim for an assessed penalty amount will inure to the benefit of the Department – not to any Connecticut

customers or other creditors. The Department has not articulated a legitimate purpose for pursuing the penalty that would fall under the narrow police power exception.

33.     And even if it did, the Department already submitted to this Court's jurisdiction over the Connecticut Claim and thus waived any argument as to the importance of such exception. *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (per curiam); *In re Tarragon Corp.*, 2009 WL 2244598, at *6 (Bankr. D.N.J. July 27, 2009).

34.     Rather than focusing on procedural arguments in its Response, the Department should have articulated a valid basis for the Connecticut Claim.  It did not because it cannot. The Department has failed to carry its burden and this Court should disallow the Connecticut Claim.

## Conclusion

35.     **WHEREFORE**, the Wind-Down Debtors respectfully request that this Court enter an order disallowing the Connecticut Claim and grant any such other and further relief as may be just and proper.

## Notice

36.     The Wind-Down Debtors will provide notice of this Reply to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) the attorneys general in the states where the Wind-Down Debtors conduct their business operations; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (f) the claimant listed on Schedule 1 attached to the Proposed Order for the Objection (collectively, the "Notice Parties").

The Wind-Down Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

Dated: February 23, 2024            /s/ *Daniel M. Stolz*
                                    **GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*