| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Stephen D. Palley, Esq.,<br>(*pro hac vice forthcoming*)<br>Daniel J. Healy, Esq.,<br>(*pro hac vice forthcoming*)<br>John G. Doyle, Esq.,<br>(Attorney ID No.:045872005)<br>601 Thirteenth Street NW Suite 600<br>Washington, D.C. 20005<br>Telephone: (202) 536-1766<br>Facsimile: (617) 289-0766<br>spalley@brownrudnick.com<br>dhealy@brownrudnick.com<br>jdoyle@brownrudnick.com<br><br>*Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>          Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: April 11, 2024, 10:00 a.m.**<br>**Response Deadline: April 4, 2024**<br>**Oral Argument Waived Unless Response Timely Filed** |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

**THE WIND-DOWN DEBTOR BLOCKFI, INC.'S MOTION FOR AN
ORDER REMANDING STATE COURT ACTION**

Plaintiff, BlockFi Inc. as Wind Down Debtor ("**Plaintiff**" or "**BlockFi**" or the "**Company**"), by and through its attorneys, respectfully submits this memorandum of law in response to the Notice of Removal (Doc. No. 2130) filed by Defendants Berkley Insurance Company,[3] and in support of Plaintiff's Motion for Remand of this Proceeding to the Superior Court of New Jersey.

## INTRODUCTION

This proceeding does not belong in Bankruptcy Court. Plaintiff alleged several straightforward state court claims for declaratory judgement, breach of contract, and related New Jersey statutory and common law claims, all of which are cognizable in state, not bankruptcy, court. There are no federal claims at issue in this case and there are no claims asserted under the Bankruptcy Code. This proceeding will have no impact on the Chapter 11 Plan that went into effect on October 24, 2023, or any remaining administration of that Plan, other than to collect funds for distribution to creditors. Plaintiff's causes of action did not "arise in" or "arise under" the BlockFi bankruptcy cases and are – at most – "related to" those cases; even if "related to" the bankruptcy, the claims at issue can obviously be litigated to finality and with greater efficiency in state court (where, among other things, Plaintiff has demanded a jury trial). This case should be remanded.

Plaintiff's action concerns New Jersey law and relates to the Defendants' sale of a Directors and Officers ("D&O") liability insurance policy offering Plaintiff's directors and officers – not Plaintiff itself – potentially $30 million in coverage for the staggering sum of $22.5 million, when Defendants knew BlockFi was suffering losses and knew the Policy would only

---

[3] Each of the Debtors filed for protection under Chapter 11 of Title 11 of the U.S. Code on November 28, 2022, commencing Jointly Administered Lead Case No. 22-19361 (Bankr. D.N.J.). On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "**Confirmation Order**" confirming and attaching the "**Plan**") [Docket No. 1660]. The Plan became effective on October 24, 2023 [Docket No. 1788], after which date the "**Debtors**" became the "**Wind-Down Debtors**" by operation of the Plan and Confirmation Order.

2

provide $15 million in coverage in practice. Defendants' refusal to return the staggering premium payment was unlawful and improper for several reasons. First, the policy includes a *voidability provision drafted by Defendants*, which obligates Defendants to return the $22.5 million *under conditions that have indisputably now taken place*. This breach of contract is a state law claim. The declaratory judgment claim is under New Jersey state statute and concerns the parties' rights under an insurance policy. The fraudulent transfer claims are also based on New Jersey statutes. The claims for rescission, illusory coverage, and unjust enrichment are under New Jersey law. The relief sought is a return of the premium; other money damages, costs and fees; and a declaration of the parties' rights.

That BlockFi was once in bankruptcy does not make the Bankruptcy Court an appropriate forum to litigate all non-bankruptcy disputes. Rather, BlockFi's Plan empowers the Plan Administrator to prosecute Causes of Action (as defined therein, specifically preserving Causes of Action against Defendants) in his discretion. As discussed further herein, mandatory and discretionary abstention principles plainly apply. This Court should remand.

## FACTS AND PROCEDURAL HISTORY

**A. Defendants' Sale of the Substandard and Illusory Policy to BlockFi**

1. Plaintiff's action concerns the sale of an insurance policy by Defendants to BlockFi and Defendants' pre- and post-sale conduct related to that sale.

2. Founded in 2017, BlockFi was a digital asset lender which, among other financial services, received cryptocurrency deposits from customers and loaned the deposited assets to third parties at higher interest rates. Alameda Research ("**Alameda**"), an FTX-affiliated hedge fund, was BlockFi's largest single borrower, and BlockFi tied itself to Alameda and the FTX group in various ways previously documented in these proceedings.

3. Public confidence in Alameda and FTX collapsed in November, 2022, leading to mass liquidations and withdrawals of funds from FTX and BlockFi. FTX froze trading on its platform on November 8, 2022, depriving BlockFi of access to its own cryptocurrency deposits; FTX also refused to fund an outstanding draw on a previously negotiated liquidity facility.

3

BlockFi called in loans to Alameda, but received only fractional recoveries prior to Alameda's collapse. In sum, the freeze and collapse of the FTX group of companies deprived BlockFi of approximately $1.2 billion of liquidity.

4. By November 9, BlockFi was unable to meet the incoming requests and on November 10, 2022, BlockFi "paused" its customer platform, halting withdrawals. The Defendants knew, or should have known, that BlockFi was insolvent, or imminently insolvent, on or before this date.

5. BlockFi's directors, officers, and managers sought the purchase of additional D&O insurance coverage, holding a special meeting of BlockFi's Board on November 11, 2022, wherein the Board discussed obtaining additional D&O coverage and directed BlockFi Company management to discuss the D&O coverage with, and obtain bids through, insurance brokers. The Board expected to receive quotes by the following week. Defendants' quote was among those received.

6. On November 17, 2022, the BlockFi Board decided to purchase the additional Side A D&O insurance in an amount up to $30 million, and closed the purchase shortly thereafter.

B. **The D&O Policy – Policy No. G71101320 001**

7. On November 18, 2022, less than a week after starting to request bids for coverage, BlockFi's additional D&O coverage under the Policy was in place. The issued Policy, Policy No. G71101320 001, ran from November 18, 2022 to November 18, 2023, had a premium of $22.5 million, and is a quota share excess layer split among nine insurance companies, the Defendants.

| Quota Share Insurer | Quota Share Insurer Limit of Liability Proportion Underwritten |
|---|---|
| Axis Insurance Company | $2 Million |
| ACE American Insurance Company | $5 Million |
| National Union Fire Insurance | $5 Million |
| Endurance American Specialty | $5 Million |
| U.S. Special Insurance Company | $5 Million |
| XL Special Insurance Company | $2 Million |

4

| Arch Insurance Company | $2 Million |
| --- | --- |
| Berkshire Hathaway Specialty Ins. Co. | $2 Million |
| Berkley Insurance Company | $2 Million |

8.  The Policy provides Side A-Only coverage for individual directors, officers and managers of BlockFi when BlockFi is unable to indemnify those individuals.

9.  BlockFi is not an "Insured" under the Policy. The Policy defined "Insured" as "natural persons" who were, *inter alia*, directors, managers, trustees, officers, and others, but did not include within that definition BlockFi or any other "company."

10. The Policy contained a Sublimit Endorsement that specifically stated the Policy was void *ab initio* in the event a bankruptcy petition was not filed by the "Insured" by December 9, 2022. Paragraph 3 of the Sublimit Endorsement states:

> It is understood and agreed that, notwithstanding anything to the contrary in this POLICY, and further, pursuant to the INSURED'S request, in the event that the INSURED fails to file a bankruptcy petition by 12/09/2022 (the "Specified Date"), this POLICY shall be void ab initio, in which case any and all premium payments shall be fully refunded; provided however, that, the INSURER, the INSURED, the all of the Quota Share Insurers, as set forth in the Quota Share Endorsement, may, together, mutually agree in writing to amend the Specified Date, by Endorsement to this POLICY.

11. None of the Insureds filed a petition for bankruptcy prior to December 9, 2022 (or, upon information and belief, at any time to date).

**C. BlockFi's Liquidating Plan of Reorganization**

12. On November 28, 2022, ten days after Defendants sold BlockFi the subject Policy, each of the Debtors filed for protection under Chapter 11 of Title 11 of the U.S. Code, commencing Jointly Administered Lead Case No. 22-19361 (Bankr. D.N.J.). On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical*

5

*Modifications)* (the "**Confirmation Order**" confirming and attaching the "**Plan**") [Docket No. 1660].

13. The Plan became effective on October 24, 2023 [Docket No. 1788], after which date the BlockFi "**Debtors**" became the "**Wind-Down Debtors**" by operation of the Plan and Confirmation Order. Pursuant to the Plan, Mohsin Meghji of M3 Partners was appointed as Plan Administrator (the "**Plan Administrator**") and acts as sole director and officer of BlockFi as Wind-Down Debtors.

14. BlockFi's claims in respect of the Policy were expressly preserved under the Plan:

> **For the avoidance of doubt, the D&O Insurance Providers shall not be Released Parties or Releasing Parties under the Plan.** Notwithstanding the foregoing and notwithstanding any provision of this Plan to the contrary, neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, in any way preclude the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon any Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action; provided, however, that nothing in this Article V.F. of the Plan shall alter or prejudice any or all of the Insurers' rights and defenses with respect to any such claims, arguments, evidence, and/or causes of action, and all such rights and defenses of the Insurers are fully and expressly reserved and preserved.

Plan at V.F (emphasis added). Likewise, the Plan Supplement identified claims relating to the Policy as Retained Causes of Action to be Vested on the Effective Date. *See* Dkt. No. 1585 (attaching amended schedule).

15. Abstention by the Bankruptcy Court was also expressly contemplated, even under circumstances where the matters were "arising in," "arising under," or "related to" the bankruptcy cases:

> If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

*Id.* at 77.

6

16. Pursuant to the Confirmation Order, "all property constituting Wind-Down Debtors' Assets, including all Vested Causes of Action of the Debtors" vested with the Wind-Down debtors on the effective date. Id. at 40, ¶70. Consistent therewith, "the Plan Administrator specifically retain[ed] and reserve[ed] the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date[.]" Id. at 41, ¶71. The Plan also contained an express "Preservation of Rights" pursuant to Section 1123(b) of the Bankruptcy Code, permitting the Wind-Down Debtors to commence and pursue the present suit:

> In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtors shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date . . . Such rights shall be preserved by the Debtors and Wind-Down Debtors and shall vest in the Wind-down Debtors, with the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date . . . .

*Id.* at 45, ¶ 79. "The Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtors, expressly reserve[d] all rights to prosecute any and all Causes of Action against any Entity" unless otherwise expressly waived. *Id.* at 46, ¶ 80.

### D. The Plaintiff's State Court Action

17. Plaintiff commenced the instant action on January 3, 2024 in the Superior Court of New Jersey, Law Division, Hudson County, commencing Docket No. HUD-L-00002524 (the "**State Court Action**").

18. The original complaint was submitted to Defendants together with a demand for return of the policy under the express terms of the voidability clause. Defendants rejected and/or did not respond to the demand. Plaintiff thereafter filed its Amended Complaint on February 13, 2024. Plaintiff has demanded a jury trial.

19. Plaintiff's Amended Complaint seeks relief pursuant to the following New Jersey State law claims: (i) a declaratory judgment pursuant to the Declaratory Judgments Act, N.J. Stat. Ann. §§ 2A:16-51 *et seq.* declaring that Defendants are in breach of the Policy and that the Policy is void *ab initio*; (ii) avoidance and recovery of fraudulent transfers pursuant to N.J.S.A. 25:2-

7

27(a)&(b); (iii) avoidance and recovery of fraudulent transfers pursuant to N.J.S.A. 25:2-25(a)&(b); and (iv) breach of contract.

20. In the alternative, Plaintiff seeks a return of the premium due to Defendants' misrepresentations or their unjust enrichment through the sale of illusory insurance coverage.

21. None of Plaintiff's claims are alleged under the Bankruptcy Code or otherwise arise in or arise under these cases. The only connection between the State Court Action and these proceedings is that the Wind-Down Debtors seek to recover funds for distribution to creditors.

## ARGUMENT

22. Mandatory and discretionary abstention principles discourage the exercise of jurisdiction over this dispute. *See Stoe v. Flahaerty*, 436 F.3d 209, 215 (3d Cir. 2006). Defendants' assertion of federal jurisdiction based on (i) bankruptcy "arising in" jurisdiction, and (ii) bankruptcy "related to" jurisdiction is wrong on both the facts and the law, and ignores the abstention principles central to bankruptcy practice.

23. The Defendants bear the burden of demonstrating removal jurisdiction against the backdrop that removal statutes are to be "strictly construed against removal and *all doubts should be resolved in favor of remand.*" *Boyer v. Snap-on Tools Corp.*, 913 F.3d 108, 11 (3d Cir. 1990) (emphasis added). A removing party carries a "heavy burden of persuasion" to show that removal is proper. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *see also Boyer*, 913 F.2d at 111. The Defendants cannot meet that exacting burden here.

24. Here, the State Court Action can and should be easily adjudicated in the state court. Plaintiff alleges state court claims at most "related to" these proceedings, and alleges solely state-law claims of a kind routinely adjudicated by state courts. Plaintiff has a right to litigate in the forum of its choosing, and applicable equitable precepts in this bankruptcy proceeding – indeed, the only bankruptcy precepts that apply where at most "related to" jurisdiction is observed – encourage this Court to honor Plaintiff's choice of forum.

8

I. **28 U.S.C. § 1334(c)(2) Mandates Abstention.**

25. This matter must be remanded because the Court is obligated to abstain from exercising jurisdiction when the requirements of 28 U.S.C. § 1334(c)(2) are met. The statute provides:

> Upon timely motion[4] of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

26. Put simply, the Court must abstain from exercising jurisdiction if: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction. *Stoe*, 436 F.3d at 213.

**1. The proceeding is based wholly upon state law claims.**

As previously noted, Plaintiff's Amended Complaint exclusively asserts state law causes of action, not federal, based on various New Jersey statutory and common law torts, including: The Declaratory Judgments Act, N.J. Stat. Ann. §§ 2A:16-51 *et seq.*; Avoidance and Recovery of Fraudulent Transfers pursuant to N.J.S.A. 25:2-25(a)&(b) and 25:2-27(a)&(b); breach of contract; rescission; and illusory coverage. None of these claims concern the application of federal law. *See Prudential*, 2013 WL 221995, at *2 (finding mandatory abstention where Complaint

---

[4] "Timeliness" for purposes of the statute is not defined. Regardless, Plaintiff's motion for abstention and to remand is timely. See 28 U.S.C. § 1447(c) (motion to remand on basis of any defect other than lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under Section 1446); Prudential, 2013 WL 221995, at *6 (remanding pursuant to mandatory abstention principles where motion to abstain and remand filed within 30 days).

9

contained state law claims for fraud, aiding and abetting fraud, negligent misrepresentation, and violations of New Jersey civil RICO statute).

### 2. The claims do not "arise under" or "arise in" the bankruptcy action.

27. The claims do not "arise under" or "arise in" the BlockFi bankruptcy cases.

28. In *Stoe*, the Third Circuit Court of Appeals discussed the nature of what it means to "arise under" or "arise in" in the Title 11 context:

> The category of cases "under" title 11 "refers merely to the bankruptcy petition itself." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-26 n. 38 (3d Cir. 205 (quotation and citation omitted). A case "arises under" title 11 "if it invokes a substantive right provided by title 11." *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996). . . Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy." *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999). Finally, a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 381 (3d Cir. 2002) (noting that *Pacor* "clearly remains good law in this circuit" in this respect).

*Stoe*, 436 F.3d at 216.

29. Here, Plaintiff is a Wind-Down Debtor and aims to collect funds for distribution to creditors, as contemplated by its confirmed and effective Plan. Some courts have even held that this level of connection to a bankruptcy proceeding does not even support exercise of "related to" jurisdiction;[5] regardless, it cannot be argued that anything other than "related to" jurisdiction may be found here.

---

[5] Some courts have held that the act of confirmation changes the ["related to"] test to mean "significantly affect consummation of the plan as confirmed." *In re Haws*, 158 B.R. 965, 970 (Bankr. S.D. Tex 1993); *see also Warren v. Calania Corp.*, 178 B.R. 279, 282 (M.D. Fla. 1995). In *Haws*, the court found it did not have subject matter jurisdiction for a post-confirmation adversary proceeding based on state law claims because the proceeding did not involve construction or interpretation of the plan and any damages awarded were not necessary to ensure funding of the plan. 178 B.R. at 971. The court found that the mere fact that the trustee brought the proceeding on behalf of a group of creditors did not make the proceeding sufficiently "related to" bankruptcy for the court to exercise jurisdiction. *Id.* Other cases have held that the possibility of recovering damages which could be used to fund a plan is also an inadequate basis to provide jurisdiction. See *Warren*, 178 B.R. at 282; *In re H & L Developers, Inc.*, 178 B.R. 71, 76 (Bankr. E.D.Pa. 1994); *In re TransAmerican Natural Gas Corp.*, 127 B.R. 800 (S.D.Tex 1991).

### i. The claims invoke no substantive Title 11 rights

30. There is no question that here, Plaintiff's state court action is not a petition for relief under the Bankruptcy Code. Likewise, Plaintiff's contractual rights were neither created by the Bankruptcy Code, nor arose in connection with the BlockFi bankruptcy cases. Plaintiff's contractual rights had an independent existence prior to, and outside of, the bankruptcies, and they survived the bankruptcies when the Winddown Debtors assumed each of the Insurance Contracts, including the D&O policy, pursuant to sections 105 and 306 of the Bankruptcy Code.

31. Plaintiff's claims arise primarily from the language of the insurance contract itself and the pre-bankruptcy circumstances surrounding its negotiation and execution. As discussed above, Defendants sold BlockFi a D&O policy that included a provision, drafted by Defendants, whereby if no "Insured" filed a bankruptcy petition by December 9, 2022, that the "POLICY shall be void ab initio, in which case any and all premium payments shall be fully refunded." The term "Insured" was a term of art, specifically defined to only include "natural persons" who were, *inter alia*, directors, managers, trustees, officers, and others. Notably, the definition did not include within it BlockFi or any other "company."

32. Plaintiff's remaining causes of action for fraudulent conveyance, rescission, unjust enrichment, and declaratory judgment are indisputably based on New Jersey statutes.[6] Each claim concerns the terms and conditions of and under which the contract (i.e. the sale of the Policy) was negotiated. These issues do not arise under the Bankruptcy Code or in these proceedings. *See*

---

[6] Defendants appear to argue that Plaintiff's fraudulent conveyance claim implicates federal jurisdiction because section 544 of the Bankruptcy Code empowers Plaintiff to bring the claim. Because the "applicable law" under which Plaintiff is bringing his avoidance claims is that of New Jersey State law, there is no substantial question of federal law. See *National City Bank v. Coopers & Lybrand*, No. 4-85-715, 1985 WL 6424, at *2 (D. Minn. Nov. 1, 1985)(remanding removal despite allegations referencing and relying on 544(a) because the allegations "do[] not involve a substantial question of federal law because the real controversy surrounds state law issues."). New Jersey state courts have held that Section 544 allegations are based on state causes of action under New Jersey statutes. *See, e.g.*, *Motorworld, Inc. v. Benkendorf*, No. A-4350-13T4, 2017 WL 2334257 (N.J. App. Div. 2013) (reviewing New Jersey Superior Court's adjudication of N.J.S.A. 25:2-27(a) claim brought by a trustee and explaining that pursuant to § 544(b) the trustee had a acquired a state cause of action). *See also, e.g.*, *Empery Tax Efficient, LP v. MusclePharm Corp.*, No. 23 CIV. 74 (VM), 2023 WL 2580006, at *8 (S.D.N.Y. Mar. 21, 2023) ("Here, the Court is not persuaded that the New York [state fraudulent conveyance] claim against the Original Defendants is a core proceeding "arising under" bankruptcy as Defendants contend. While "fraudulent conveyance" claims constitute "core proceedings" under 28 U.S.C. Section 157(b)(2), the Court does not construe that term to mean that all fraudulent conveyances categorically arise under the Bankruptcy Code. Instead, this determination requires a more fact-intensive inquiry.").

11

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) ("[I]nterpretation of private contracts is ordinarily a question of state law").

33. As previously noted, the only connection between this proceeding and the above-captioned chapter 11 cases is that the Plaintiff is empowered under its effective Plan to prosecute state law claims to collect funds for distributions to creditors. This is, again at most, "related to" the bankruptcy proceeding.

### ii. Defendants cannot create jurisdiction with frivolous argument

34. In their Removal Notice, Defendants attempt to argue that by filing their Amended Complaint, the Wind-Down Debtors have "acted in violation of the Confirmation Order by seeking to void and/or terminate the D&O Policy" because the D&O Policy has been assumed. Def. Notice at 7, ¶¶ 19-21. Not so.

35. The plain language of the Confirmation Order and Plan states:

> For the avoidance of doubt, the D&O Insurance Providers shall not be Released Parties or Releasing Parties under the Plan. Notwithstanding the foregoing and **notwithstanding any provision of this Plan to the contrary**, **neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, in any way preclude the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon any Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action**; . . . .

Confirmation Order, Exhibit A at V.F.

36. The Debtors likewise expressly preserved claims against Defendants in the Plan Supplement and related documents. Dkt. No. 1585.

37. The Confirmation Order and Plan further clarified that, to the extent there is any confusion as to whether Plaintiff has a right to bring certain claims, such right is deemed preserved and authorized: "[t]he Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtors,

12

expressly reserve[d] all rights to prosecute any and all Causes of Action against any Entity" unless otherwise expressly waived. ¶ 80.

38. Defendants are not permitted to create fictional straw-man arguments in order to implicate "arising in" or "arising under" jurisdiction – they cannot create jurisdiction where it does not exist. Bankruptcy courts have rejected this tactic, noting that state courts are fully capable of addressing plan-related defenses that may apply. *See In Re G-I Holdings, Inc.*, 564 B.R. 217, 253 (Bankr. D.N.J. 2016), *aff'd sub nom*. *In re G-I Holdings Inc.*, 01-30135 (RG), 2017 WL 1788656 (D.N.J. May 5, 2017) ("the Superior Court is fully capable to look to the Plan's discharge provisions to determine whether G-I's affirmative defense applies. Indeed, 'discharge in bankruptcy' is an expressly enumerated affirmative defense under the New Jersey Rules of Court. N.J. Ct. R. 4:5-4.").[7]

### 3. There is no independent federal jurisdiction for this action.

39. As noted above, this case does not arise in or under the Bankruptcy Code. Plaintiff's claims will not affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan.

40. Moreover, there is no diversity jurisdiction because the parties lack complete diversity (Defendant Arch Insurance Company's principal place of business is Jersey City, New Jersey).

41. Likewise, there is no other basis for federal jurisdiction.[8] Plaintiff brings only state law claims.

---

[7] Defendants' similar attempt to rely on *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997), for the proposition that Plaintiff's state law allegations will impact the "integrity of the bankruptcy process" is equally misplaced. *See* Def. Notice at ¶ 21. In *Donaldson*, the Third Circuit affirmed the bankruptcy court's exercise of "related to" jurisdiction because of the close nexus to the bankruptcy case, the fact that the case was reopened and converted to a Chapter 7 case, and further cautioned that its finding of jurisdiction was predicated "on the unusual 'procedural nuances'" present. *Donaldson*, 104 F.3d at 554. The jurisdictional nexus existed there because the Donaldson's had obtained confirmation of their plan under false pretenses. The subsequent claims thus "implicate[d] the integrity of the bankruptcy process, as the Donaldsons' actions impaired [the Debtor's] ability to make the payments required under the [Confirmed] plan." *Id.* at 553. Here, in contrast, Plaintiff's causes of action do not allege any misconduct in the Confirmation Order and Plan.

[8] Moreover, Plaintiff questions whether removal was proper in the first place, given that the Removal Notice was not filed with unanimous consent of all Defendants to the State Court Action. However, the Court need not reach this issue for the time being.

13

42. Defendants attempt to couch Plaintiff's fraudulent transfer claims as sounding in federal, not state law. However, state courts have roundly rejected this jurisdictional approach to section 544's grant of standing. *See Motorworld, Inc. v. Benkendorf*, No. A-4350-13T4, 2017 WL 2334257 (N.J. App. Div. 2013) (reviewing New Jersey Superior Court's adjudication of N.J.S.A. 25:2-27(a) claim brought by a trustee and explaining that pursuant to § 544(b) the trustee had a acquired a state cause of action); *National City Bank v. Coopers & Lybrand*, No. 4-85-715, 1985 WL 6424, at *2 (D. Minn. Nov. 1, 1985)(remanding removal despite allegations referencing and relying on 544(a) because the allegations "do[] not involve a substantial question of federal law because the real controversy surrounds state law issues") *Empery Tax Efficient, LP*, 2023 WL 2580006, at *8 ("the Court does not construe [§ 157(b)(2) fraudulent conveyance] to mean that all fraudulent conveyances categorically arise under the Bankruptcy Code").

### 4. Plaintiff's claims commenced in New Jersey Superior Court.

43. Mandatory abstention is applicable where the proceeding was "commenced in a state forum of appropriate jurisdiction." 28 U.S.C. §1334I(2). It is undisputed that this case was filed in the Superior Court of New Jersey, Hudson County on January 3, 2024, and Plaintiff filed its Amended Complaint in the same court on February 13, 2024. Defendants have conceded as much. Removal Not. at 1.

### 5. The New Jersey Superior Court can timely adjudicate the claims.

44. Defendants cannot present any reason that the Superior Court of New Jersey is unable to timely adjudicate this claim. There is no presumption that a state court is unable to timely adjudicate a case and, in the absence of proof of such fact, "[t]here is no reason to assume that the state court would not proceed with this case in an expeditious way." *Prudential*, 2013 WL 221995, at *7.

45. Because Plaintiff's claims can be timely adjudicated in state court and for each of the factors cited above, this Court must abstain from exercising jurisdiction and should immediately remand the case thereto. *See In re Exide Techs.*, 544 F.3d at 218 n.14 (3rd Cir. 2008) ("Here, the state court action was moving along expeditiously; the judge had made clear his intent

14

to move the case forward; and the action had been placed in the docket of [the Circuit Court], designed to facilitate the adjudication of commercial disputes. Accordingly we believe that this action can be timely adjudicated in the state court."); *see also In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 125 (Bankr. D.N.J. 2003) ("Importantly, notions of comity and judicial economy warrant a conclusion that the state court is the proper forum for adjudicating this dispute."); *Prudential*, 2013 WL 221995, at *7 ("In fact, if anything is delaying the state court from proceeding expeditiously with this case, it is Defendants' ill-fated removal to federal court.").

II. **Alternatively, the Court Should Abstain from Hearing the State Court Action Under § 1334(c)(1).**

46. Assuming *arguendo* that the Court is not required to abstain under Section 1334(c)(2), discretionary abstention is appropriate under 28 U.S.C. §1452(b) and §1334(c)(1). Those statutes both grant this Court wide latitude to abstain from cases when appropriate.[9] The latter statute states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Under this doctrine, the bankruptcy courts "have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *In Re G-I Holdings, Inc.*, 564 B.R. at 249-50.

47. In the Third Circuit, numerous factors "have been developed for the court to consider when determining whether to exercise its discretionary abstention power" with "[s]ome courts rely[ing] on a twelve-part test, while others utilize a seven-part test." *Id.* The two sets of factors are "substantially similar, and courts have stated that not all factors necessarily need to be considered." *Shalom Torah Ctrs. v. Phila. Indem. Ins. Cos.*, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011). In addition, the factors should be applied "flexibly" and the Court should consider

---

[9] "The equitable considerations relevant to determine the appropriateness of equitable remand and permissive abstention under Sections 1452(b) and 1334(c)(1), respectively, are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief." *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.),* 194 B.R. 750, 759-760 (D.N.J. 1996).

15

them "for their relevance and importance" to the circumstances of this case. *See Geruschat*, 331 B.R. at 221 (courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative.").

48. Taken together, the two tests illuminate the following factors for consideration: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; (7) prejudice to the involuntarily removed defendants; (8) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (9) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (10) the substance, rather than form of an asserted "core proceeding; (11) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (12) the burden of the court's docket; (13) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (14) the existence of a right to a jury trial; and (15) the presence of non-debtor parties. *See, e.g.*, *Shalom Torah Ctrs.*, 2011 WL 1322295, at *4 (discussing the seven-part test); *In re Vanhook*, 468 B.R. at 701 (discussing the twelve-part test).

49. The Court does not need to find a certain percentage of factors present to abstain. *Burk*, 194 B.R. at 759-760. Here, however, numerous factors are present that warrant this Court's permissive abstention, not the least of which are Plaintiff's request for a jury trial and the unnecessary burden placing these state-court claims on this Court's already busy calendar will cause.

50. Again, Plaintiff's claims are entirely state law-based. Moreover, none of the claims concerns the administration of the bankruptcy estate – Plaintiff's claims concern breach of contract and other New Jersey common law claims, state statutory fraudulent conveyance claims,

and state statutory declaratory judgment. Each claim concerns the parties' rights and obligations as they relate to an insurance policy.

51. Moreover, Defendants are non-debtor parties and Plaintiff is entitled to a jury trial and has, in fact, demanded trial by jury.

52. For these same reasons, comity and the settled nature of New Jersey law concerning Plaintiff's declaratory judgment, breach of contract, and remaining state law claims weigh heavily in favor of this Court's abstention. This is particularly so here, where there is no complete diversity of the parties and no jurisdictional basis exists. There is no need to burden this Court or to further delay the rapid resolution of Plaintiff's claims.

53. Were the Court to sever the state law claims from the State Court Action, there would be none left to keep in the bankruptcy court. Each one is a state law claim.

54. Last, Plaintiff's claims will "neither significantly hinder nor materially advance the efficient administration of the bankruptcy estate," and abstention is proper. *See Balcor/Morristown Ltd. Pshp. v. Vector Whippany Assocs.*, 181 B.R. 781, 792 (D.N.J. 1995); *In Re G-I Holdings, Inc.*, 564 B.R. at 254 (stating that "the bankruptcy court will not oversee proceedings involving reorganized debtors indefinitely") (citing *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991)("Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval"), *cf.* Plan Art. IV.D.1 ("Wind-Down Debtors and the Plan Administrator shall have the right to pursue or not pursue…compromise or settle any Wind-Down Debtors' Assets…[and] may, without further Bankruptcy Court approval, commence, litigate, and settle any Vested Causes of Action").

## **CONCLUSION**

Accordingly, Plaintiff respectfully submits that this Court should abstain and remand under 28 U.S.C. § 1334(c)(2) and that this Court should grant Plaintiff's Motion to Remand in its entirety.

Dated: March 13, 2024　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　By:　 /s/ Daniel M. Stolz　　　　　　　
　　　　　　　　　　　　　　　　　DANIEL M. STOLZ, ESQ.
　　　　　　　　　　　　　　　　　**GENOVA BURNS LLC**
　　　　　　　　　　　　　　　　　494 Broad Street
　　　　　　　　　　　　　　　　　Newark, New Jersey 07102
　　　　　　　　　　　　　　　　　Telephone: (973) 533-0777
　　　　　　　　　　　　　　　　　Facsimile: (973) 535-7107
　　　　　　　　　　　　　　　　　dstolz@genovaburns.com

　　　　　　　　　　　　　　　　　*Local Counsel for Plaintiff, Plan Administrator of BlockFi, Inc. et al.*

　　　　　　　　　　　　　　　　　**BROWN RUDNICK LLP**
　　　　　　　　　　　　　　　　　STEPHEN D. PALLEY, ESQ.,
　　　　　　　　　　　　　　　　　(pro hac vice forthcoming)
　　　　　　　　　　　　　　　　　DANIEL J. HEALY, ESQ.,
　　　　　　　　　　　　　　　　　(pro hac vice forthcoming)
　　　　　　　　　　　　　　　　　JOHN G. DOYLE, ESQ.,
　　　　　　　　　　　　　　　　　Attorney ID No.:045872005
　　　　　　　　　　　　　　　　　601 Thirteenth Street NW Suite 600
　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　Telephone: (202) 536-1766
　　　　　　　　　　　　　　　　　Facsimile: (617) 289-0766
　　　　　　　　　　　　　　　　　spalley@brownrudnick.com
　　　　　　　　　　　　　　　　　dhealy@brownrudnick.com
　　　　　　　　　　　　　　　　　jdoyle@brownrudnick.com

　　　　　　　　　　　　　　　　　KENNETH J. AULET, ESQ.
　　　　　　　　　　　　　　　　　(pro hac vice forthcoming)
　　　　　　　　　　　　　　　　　BROWN RUDNICK LLP
　　　　　　　　　　　　　　　　　Seven Times Square
　　　　　　　　　　　　　　　　　New York, NY  10036
　　　　　　　　　　　　　　　　　Telephone: (212) 209-4800
　　　　　　　　　　　　　　　　　Facsimile: (212) 209-4801
　　　　　　　　　　　　　　　　　kaulet@brownrudnick.com

　　　　　　　　　　　　　　　　　TRISTAN G. AXELROD, ESQ.
　　　　　　　　　　　　　　　　　(pro hac vice forthcoming)
　　　　　　　　　　　　　　　　　BROWN RUDNICK LLP
　　　　　　　　　　　　　　　　　One Financial Center
　　　　　　　　　　　　　　　　　Boston, MA  02111
　　　　　　　　　　　　　　　　　Telephone: (617) 856-8200
　　　　　　　　　　　　　　　　　Fax: (617) 856-8201
　　　　　　　　　　　　　　　　　taxelrod@brownrudnick.com

　　　　　　　　　　　　　　　　　*Counsel for Plaintiff, Plan Administrator of BlockFi, Inc. et al.*