| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>Warren J. Martin, Esq. (wjmartin@pbnlaw.com)<br>Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)<br><br>*Attorneys for Zachary Prince and Flori Marquez*<br><br>**SHEARMAN & STERLING LLP**<br>R. Thaddeus Behrens, Esq. (*pro hac vice*)<br>Daniel H. Gold, Esq. (*pro hac vice*)<br>2601 Olive Street, 17th Floor<br>Dallas, TX 75201<br>(214) 271-5812<br>thad.behrens@shearman.com<br>dan.gold@shearman.com<br><br>*Attorneys for Zachary Prince* | |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered)<br>**Hearing Date and Time:**<br>**April 25, 2024 at 11:30 a.m. (EST)** |

# MOTION OF ZACHARY PRINCE AND FLORI MARQUEZ FOR AN ORDER TO ALLOW INSURED PERSONS TO ACCESS EXCESS DIRECTORS AND OFFICERS INSURANCE POLICY FOR DEFENSE COSTS

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Debtors' service address is 201 Montgomery Street, Suite 263, Jersey City, NJ 07302.

7672432

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

Zachary Prince and Flori Marquez ("Movants") hereby file this *Motion of Zachary Prince and Flori Marquez for an Order to Allow Insured Persons to Access Excess Directors and Officers Insurance Policy for Defense Costs* (the "Motion"). In support of the Motion, Movants respectfully represent as follows:

**Preliminary Statement**

1. Certain of the Debtors' current or former officers, directors, and employees, including Mr. Prince and Ms. Marquez, are named defendants in a federal securities putative class action lawsuit (the "Securities Lawsuit"). This Securities Lawsuit has required, and will continue to require, Movants to incur legal fees and related expenses ("Defense Costs"). On account of this bankruptcy and the confirmed plan [Docket No. 1660] (the "Plan"), Movants are unable to obtain indemnification from the Debtors and need to access directors' and officers' liability insurance policies to fund their defense. The insurance policies exist for this very purpose.

2. The Court has already twice granted motions permitting Movants and other insureds under the applicable policies to access the primary directors' and officers' insurance policy. [Docket Nos. 1389, 1550, 1849, 1962, 11/28/2023 Minute Order.] The primary policy provided $2 million of coverage, which Movants understand has been or soon will be exhausted. Accordingly, Movants now seek an order authorizing access to an excess policy (the "Excess Policy") to pay Defense Costs, including mediation-related fees and expenses ("Mediation Expenses"). Movants have been informed that the Excess Policy carriers require an order from this Court confirming that the carriers may pay Defense Costs and Mediation Expenses. To be clear, at this time, Movants seek access to the Excess Policy only for Defense Costs and Mediation Expenses.

2

7672432

3. As frequently happens prior to a bankruptcy, the Debtors here obtained additional directors' and officers' insurance coverage shortly before the petition was filed. The Debtors obtained the Excess Policy in November 2022 with the advice of bankruptcy professionals and to ensure that outside independent directors would be willing to continue to serve during the difficult time period in advance of a potential bankruptcy and through a bankruptcy process. The Excess Policy was obtained following a canvas of the market for the best available terms.

4. This Motion should be granted for several reasons. *First*, under the express terms of the Excess Policy, which is a contract the Debtors assumed in the Plan, the Debtors contractually agreed not to oppose any efforts by their directors and officers to seek payment pursuant to the Excess Policy or lift any bankruptcy stay that might apply to policy proceeds. The Court can grant the Motion for this reason alone and need go no further.

5. *Second*, the confirmed Plan, which was entered pursuant to a heavily-negotiated settlement, expressly contemplates that coverage under the Excess Policy will be available to Movants and other insureds for covered claims and that such coverage will not be terminated. Granting this Motion would thus implement and re-confirm what the Plan already provides.

6. *Third*, the proceeds of the Excess Policy are not property of the estates because the Excess Policy provides only Side A coverage to directors and officers. While its purchase benefitted the Debtors, the policy does not provide coverage for the Debtors. Accordingly, the proceeds of the Excess Policy are not property of the estates under well-settled law.

7. *Fourth*, even if the bankruptcy stay were applicable, ample justification exists to permit Movants and additional insureds to obtain payment of Defense Costs and Mediation Expenses. Movants and additional insureds would be significantly prejudiced if any stay is not lifted. The Excess Policy exists for the very purpose of funding Movants' legal defenses, and any

3

uncertainty concerning the availability of the policies' proceeds would severely hinder their ability to effectively defend against the Securities Lawsuit. Movants are committed to coordinating with one another and other insureds, wherever possible, to make the most efficient use of the proceeds of the Excess Policy in mounting a defense.

8. The lawsuit recently brought by the Plan Administrator against the Excess Policy carriers seeking to void the Excess Policy or have the premium payment declared voidable as a purported fraudulent transfer (the "Insurance Lawsuit") has no effect on this Motion, and the Court need not delve into or decide the merits of that case in order to grant this Motion. The existence of the Insurance Lawsuit does not change the Plan Administrator's contractual obligation not to oppose this Motion, and it does not change the Plan's terms providing that coverage would be available under the Excess Policy for covered claims. Moreover, Movants and other insureds are incurring Defense Costs *now* in the Securities Lawsuit. A speculative possibility that the Plan Administrator could eventually prevail in the Insurance Lawsuit does not prevent Movants and other insureds from accessing the Excess Policy to fund their ongoing defense of the Securities Lawsuit.

9. The primary purpose of D&O insurance is to protect a company's directors and officers. Not permitting the Movants and additional insureds to access much-needed coverage at this time would undermine this purpose and severely prejudice their ability to set forth a fulsome defense to the claims against them and/or seek to resolve the claims through mediation. Accordingly, and for the reasons set forth herein, the Motion should be granted.

10. Counsel for Movants has conferred with counsel for the Plan Administrator and an agreement was not reached on the language of a proposed order.

4

**Jurisdiction and Venue**

11. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). Movants confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12. The Court also has jurisdiction under the Confirmation Order, which states that the Court "shall, to the full extent set forth in the Plan and otherwise permitted by applicable law, retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . . ." [Docket No. 1660, ¶ 146.]

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14. The bases for the relief requested herein are sections 105(a), 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

**Background**

**I. The Debtors Obtain the Excess Policy to Ensure Outside Directors Would Continue to Serve and After Conducting a Market Check and Obtaining Advice from Counsel.**

15. Prior to the Debtors filing a voluntary petition for relief under Chapter 11 on November 28, 2022 (the "Petition Date"), Debtor BlockFi, Inc., with the advice and involvement of outside restructuring professionals, procured the Excess Policy to protect its directors and officers from claims that may be alleged against them.

5

7672432

16. During a November 10, 2022 Board meeting, BlockFi's directors discussed insurance coverage for the directors and officers. *See Should Potential Estate Causes of Action Against Insiders Be Litigated, Released, Settled, or Retained?* [Docket No. 1173 Ex. B] (the "Special Committee Report") at 83 & evidence cited therein. The independent directors "expressed a view that the company needed to evaluate their current D&O Insurance and consider obtaining additional coverage, and that need was also discussed by BlockFi's legal and other advisors." *Id.* "The Board and its advisors believed that this additional coverage was necessary both to ensure the continued service of the existing board members, and also to ensure the Board was able to retain additional independent directors that would likely be necessary in the case of a restructuring transaction." *Id.* One independent director "specifically advised that she would not be willing to stay unless the level of D&O Insurance was materially increased." *Id.*

17. BlockFi then worked with an insurance broker to obtain the best available coverage. *See id.* at 83-84. At a November 11, 2022 meeting, "the Board directed BlockFi management 'to discuss with, and receive bids from, insurance brokers on additional D&O insurance coverage.'" *Id.* at 84 (quoting Board minutes). BlockFi "received a number of proposals for additional insurance coverage, including additional coverage of up to $30 million." *Id.* at 85.

18. On November 17, 2022, the Board again met to discuss D&O insurance and was provided an update on the efforts to obtain additional coverage. *Id.* at 86. "[T]he Board then weighed the benefits of an additional D&O insurance policy, including that it would be difficult to find independent directors to join the Board or the boards of the Company's subsidiaries without such coverage in place, against the impact of the premium payment to the Company's liquidity." *Id.* (quoting board minutes). "After additional discussion, the Board approved the additional D&O

6

7672432

insurance in the amount of $30 million." *Id.* The premium for the coverage was $22.5 million. *Id.*

19.  Before moving forward with the purchase of the Excess Policy, BlockFi obtained an analysis from outside counsel "regarding BlockFi obtaining D&O insurance immediately prior to filing for bankruptcy." *Id.* at 85.

**II.  Relevant Terms of the Excess Policy**

20.  The Excess Policy has an aggregate limit of liability of $30 million and is attached to the certification of Warren J. Martin Jr. (the "Martin Certification") as **Exhibit 1**. The Excess Policy provides for Side A D&O liability insurance coverage only and does not provide coverage for any of the Debtors. It contains a $15 million sub-limit for pre-petition claims and a $15 million sub-limit for post-petition claims. *See* Martin Certification, Ex. 1, Endorsement 3.

21.  In Section 22 of the Excess Policy, the Debtors agreed that "[i]n the event a liquidation or reorganization proceeding is commenced" by the Debtors, the Debtors would "(i) waive and release any automatic stay or similar payment prohibition which may apply in such proceeding to this POLICY or its proceeds under such Bankruptcy Code or law; and (ii) agree not to oppose or object to any efforts . . . to obtain relief from any such stay or payment prohibition." *See* Martin Certification, Ex. 1, § 22.

22.  Section 17 of the Excess Policy provides that "[c]overage under this POLICY shall not be rescinded or voided by the INSURER in whole or in part for any reason." *See* Martin Certification, Ex. 1, § 17.

23.  Endorsement 3 provides that "pursuant to the INSURED's request, in the event that the INSURED fails to file a bankruptcy petition by 12/09/2022 (the 'Specified Date'), this POLICY shall be void ab initio, in which case any and all premium payments shall be fully refunded; provided however, that, the INSURER, the INSURED, the all of the [sic] Quota Share

7

Insurers, as set forth in the Quota Share Endorsement, may, together, mutually agree in writing to amend the Specified Date, by endorsement to this POLICY." *See* Martin Certification, Ex. 1, Endorsement 3.

24. That Endorsement 3 identifies BlockFi, Inc. as the "Named Insured" and states that the endorsement "CHANGES THE POLICY." *See* Martin Certification, Ex. 1, Endorsement 3. The Excess Policy's "SIGNATURES" page defines BlockFi, Inc. as the "Named Insured." *See* Martin Certification, Ex. 1. The definitions portion of the Excess Policy does not contain a definition of "INSURED" or "Insured" in the singular. *See* Martin Certification, Ex. 1, § 2. The Excess Policy uses the defined term "INSUREDS" in the plural when referring to certain natural persons, such as the Debtors' directors and officers, who have Side A coverage under the policy. *See* Martin Certification, Ex. 1, § 2(k).

25. The Excess Policy's binders, attached as **Exhibit 2** to the Martin Certification, also identify BlockFi, Inc. as the "insured."

### III. The Treatment of the Excess Policy During the BlockFi Bankruptcy

#### A. The first day motions

26. In one of the Debtors' first-day motions, the Debtors sought authority to maintain the Excess Policy and to continue to honor all obligations thereunder to ensure uninterrupted coverage. [Docket No. 11.] The Court entered interim and final orders granting the Debtors' motion. [Docket Nos. 49, 298.] Before the final order was entered, the Official Committee of Unsecured Creditors (the "UCC")—represented by the Plan Administrator's counsel—indicated on January 10, 2023 that it did not object to the Debtors' motion. [Docket No. 235.]

27. While the UCC purported to reserve its rights, it did not suggest or contend in its filing that the Excess Policy was void *ab initio* because no covered individual had filed for bankruptcy by December 9, 2022.

8

7672432

### B. The investigations and Committee settlement

28. The Special Committee and UCC both investigated whether any potential claims against Movants and other Excess Policy insureds existed and issued comprehensive reports. [*See* Docket Nos. 1173 Ex. B, 1202.]

29. As the Court knows, the Plan's terms reflected a heavily negotiated compromise. Although potential claims against the Excess Policy's carriers were not released, the Debtors released all claims against their directors and officers, including any claims that related to the purchase of the Excess Policy. The UCC's pre-settlement report regarding potential claims did not contend that the Excess Policy was void *ab initio* because no covered individual had filed for bankruptcy by December 9, 2022. [*See* Docket No. 1202 at 84-86.]

### C. The confirmed Plan and the Debtors' assumption of the Excess Policy

30. The Court confirmed the Plan on October 3, 2023. [Docket No. 1660.] The Confirmation Order, with respect to the Excess Policy, provides that: "Without ruling as to whether the assumption of an insurance policy was required, for the avoidance of doubt, on the Effective Date: (a) the Debtors shall be deemed to have assumed, to the extent necessary, each D&O Liability Insurance Policy . . . ." [Docket No. 1660, ¶ 87.]

31. The Confirmation Order provides that "The Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any 'tail policy' and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date." [Docket No. 1660, ¶ 88.]

32. Article V.F of the Plan further specifically contemplates that Movants and other BlockFi officers, directors, and employees would have coverage pursuant to the Excess Policy for covered claims and that no other provision granting an injunction would bar such coverage: "Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan

9

Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases . . . (d) the Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any 'tail policy'), ***and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject in all respects to the terms and conditions thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date***" (emphasis added). [Docket No. 1660, Article V.F.]

**IV.    The Securities Lawsuit**

33.     Movants and other of the Debtors' officers, directors, and former employees have been named in two putative class action lawsuits filed in the United States District Courts for New Jersey and Massachusetts on February 28, 2023 and March 1, 2023, respectively.[2]  The Massachusetts case has been transferred to New Jersey, and the cases are expected to be consolidated in the District of New Jersey as the Securities Lawsuit.  The defendants in the Securities Lawsuit have and will continue to incur Defense Costs in connection with defending the case and Mediation Expenses in connection with efforts to explore settlement through mediation.

---

[2] *Trey Greene v. Zac Prince, Flori Marquez, et al.*, Case No. 2:23-cv-01165-KM-LDW filed in the United States District Court for the District of New Jersey on February 28, 2023; *Antoine Elas v. Zac Prince, Flori Marquez, et al.*, Case No. 1:23-cv10472-IT filed in the United States District Court for the District of Massachusetts on March 1, 2023.

10

### V. The Insurance Lawsuit

34. The Plan Administrator filed the Insurance Lawsuit against the Excess Policy carriers on January 3, 2024 in New Jersey state court and filed an amended complaint on February 13, 2024. [*See* Adv. Pro. 24-01067-MBK, Docket No. 1.] The Insurance Lawsuit contends that the Excess Policy (i) is void *ab initio* because no individual director or officer has filed for bankruptcy, and (ii) the premium paid to obtain the Excess Policy should be avoided as a fraudulent transfer.

35. The Insurance Lawsuit was removed to this Court on February 15, 2024.[3]

### Relief Requested

36. Movants request entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") authorizing and permitting payments for Defense Costs and Mediation Expenses in accordance with the terms and conditions of the Excess Policy.

### Basis for Relief Requested

**I. The Plan Administrator is Contractually Obligated Not to Oppose This Motion.**

37. As detailed above, the Debtors assumed the Excess Policy. *Supra* Background Part III.C. Pursuant to the Excess Policy, the Debtors have contractually agreed not to oppose any effort by Movants or other insured individuals to obtain bankruptcy court approval to access the proceeds of the Excess Policy. *Supra* ¶ 21. The Court should grant the Motion for this reason alone and need go no further.

**II. The Plan and the Confirmation Order Provide for Coverage Under the Excess Policy for Covered Claims.**

38. The Court should also grant this Motion to implement the Plan and the Confirmation Order. As shown above, the Confirmation Order and heavily negotiated Plan

---

[3] Movants reserve the right to intervene in the Insurance Lawsuit.

11

contemplated that coverage would be available to BlockFi's directors and officers under the Excess Policy for covered claims and that the Debtors or Wind-Down Debtors "shall not terminate or otherwise reduce the coverage." *Supra* Background Part III.C.

### III. The Proceeds of the Excess Policy are Not Property of the Debtors' Estates.

39.   While it is well established in this Circuit that insurance *policies* are property of the estate, cases "determining whether the *proceeds* . . . are property of the estate are controlled by the language and scope of the specific policies at issue." *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) (citing, *inter alia*, *In re Allied Digital Techs, Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004)) (internal quotations omitted; italics added); *see also In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (concluding proceeds of D&O policy in that case were not property of the estate after review of the "language and scope of the [policy] at issue") (citing *In re Allied Digital*, 306 B.R. at 509); *In re Allied Digital*, 306 B.R. at 509 ("[T]he cases are controlled by the language and scope of the policy at issue[,] not by broad, general statements.") (citing *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002)); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 17 (Bankr. E.D.N.Y. 1999) ("[T]he question of whether the proceeds [of an insurance policy] are property of the estate must be analyzed in light of the facts of each case.") (citing *In re Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996)).

40.   When a policy only provides direct coverage to the directors and officers, courts find that the proceeds are *not* property of the estate. *See, e.g.*, *In re Allied Digital*, 306 B.R. at 510 ("Generally, when insurance policies provide direct coverage to directors and officers, the proceeds of the insurance policy are not property of the bankruptcy estate because the proceeds are payable to the directors and officers not the estate.").

41.   As noted above, the Excess Policy only provides direct coverage to the directors and officers. Accordingly, consistent with the approach taken by courts addressing this issue, the

12

proceeds of the Excess Policy cannot be, and are not, property of the Debtors' estates. *See*, *e.g.*, *In re Downey*, 428 B.R. at 603; *In re Allied Digital*, 306 B.R. at 510, 512; *In re World Health Alternatives, Inc.*, 369 B.R. at 810; *In re SVB Fin. Grp.*, 650 B.R. 790, 799 n.3 (Bankr. S.D.N.Y. 2023) (stating that the D&O policies in that case that provided coverage solely to directors and officers (i.e. certain so-called "Side A DIC Policies") were "not property of the estate") (citations omitted).

### IV. In Any Event, Cause Exists to Allow Access to the Excess Policy Proceeds for Defense Costs.

42.  Even if the automatic stay was applicable, cause exists under Bankruptcy Code section 362(d)(1) to modify the automatic stay to allow for the advancement and/or reimbursement of Defense Costs and Mediation Expenses. Bankruptcy Code section 362(d)(1) provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause." 11 U.S.C. § 362(d)(1); *see also* 11 U.S.C. § 105(a) (authorizing this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). Courts conduct a "fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Downey*, 428 B.R. at 608-09 (citations omitted).

43.  The applicable test is a three-prong test to determine whether to grant relief from the stay: (i) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (ii) whether the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship to the debtor upon lifting of the stay; and (iii) the probability of the creditor prevailing on the merits. *Id.* at 609; *see also Eagle One Federal Credit Union v.*

13

7672432

*Campanile*, 2020 WL 416182, at *4-5 (D.N.J. Jan. 27, 2020) (using a nearly identical three-consideration test).

44. *First*, lifting the stay with respect to the Excess Policy to permit advancement and/or reimbursement of Defense Costs and Mediation Expenses will not result in any prejudice to the Debtors or their estates. Under the Excess Policy, the Debtors have no rights to proceeds. Lifting the stay will have no impact on the Debtors' estates' rights under that policy because they have none. Thus, the first prong is satisfied.

45. *Second*, if the requested stay relief is not granted, the hardship on Movants (and other individual insureds who are also defendants in the Securities Lawsuit) is likely to be significant and material. Movants (and other individual insureds) will suffer a "very real and easily identifiable hardship" because it is likely that, absent stay relief, the Excess Policy carriers will not advance any proceeds, and, as a result, individuals will be required to personally fund (or otherwise finance) such costs. *See In re Downey*, 428 B.R. at 609.

46. *Third*, the third prong also weighs in favor of Movants. The *Downey* court affirmed that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Downey*, 428 B.R. at 610 (internal citations omitted). Applying the third prong to the facts here, there is no doubt that Movants and other insureds have the right to seek coverage for covered claims pursuant to the terms of the Excess Policy.

47. Analysis under all three prongs weighs in favor of granting the relief requested. Accordingly, to the extent the automatic stay applies to the Excess Policy, the stay should be lifted for cause pursuant to section 362(d)(1) of the Bankruptcy Code to permit advancement and/or reimbursement of Defense Costs and Mediation Expenses in accordance with the Excess Policy.

**V.    The Insurance Lawsuit Has No Bearing on This Motion.**

48. The Plan Administrator's Insurance Lawsuit seeking to have the Excess Policy found void or to recover the premium has no bearing on this Motion.

49. The pendency of the Insurance Lawsuit does not change the Plan Administrator's contractual obligation not to oppose this Motion. Nor does the Insurance Lawsuit change Article V.F of the Plan, which provides that coverage under the Excess Policy is available to the insureds for covered claims.

50. Moreover, the speculative possibility that the Plan Administrator could prevail on the Insurance Lawsuit in the distant future does not prevent the Excess Policy's insureds from funding their defense of the Securities Lawsuit when they are incurring Defense Costs right now.[4]

51. Therefore, the Court need not assess or decide the merits (or lack thereof) of the Insurance Lawsuit in order to grant this Motion.

## Waiver of Memorandum of Law

52. Movants respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which Movants rely is set forth herein, and the Motion does not raise any novel issues of law.

## No Prior Request

53. No prior request for the relief sought in this Motion has been made to this Court or any other court.

---

[4] There is no merit to the Plan Administrator's newfound suggestion that the Excess Policy is void *ab initio*, which is inconsistent with the Plan, the contractual language, the parties' intent and course of dealing under the Excess Policy, and otherwise deficient under New Jersey contract law. Nor is there any merit to the suggestion that a policy obtained with the advice of bankruptcy professionals and after a market canvas was a fraudulent transfer.

7672432

**Notice**

54. Movants will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) counsel for the Plan Administrator; (b) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (c) the carriers for the Excess Policy or their counsel; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Movants submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

**WHEREFORE**, Movants respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: April 4, 2024 | */s/ Warren J. Martin Jr.*<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>Warren J. Martin Jr., Esq.<br>Robert M. Schechter, Esq.<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>wjmartin@pbnlaw.com<br>rmschechter@pbhlaw.com<br><br>- and –<br><br>**SHEARMAN & STERLING LLP**<br>R. Thaddeus Behrens, Esq. (*pro hac vice*)<br>Daniel H. Gold, Esq. (*pro hac vice*)<br>2601 Olive Street, 17th Floor<br>Dallas, TX 75201<br>(214) 271-5812<br>thad.behrens@shearman.com<br>dan.gold@shearman.com |

17

7672432