**EXHIBIT 1**

7672462

**CHUBB**®

**ACE American Insurance Company**

# CODA Premier®
# Directors and Officers
# Liability
## Declarations

**This Policy is issued by the stock insurance company listed above.**

**THIS POLICY IS A CLAIMS MADE POLICY.   EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS.**

**TERMS THAT APPEAR IN CAPITAL LETTERS HAVE SPECIAL MEANING.  PLEASE REFER TO CLAUSE 2, DEFINITIONS.**

| | | |
|---|---|---|
| Policy No. DON G71101320 001 | | |
| Item I. | Company:<br>Principal Address: | BlockFi, Inc<br>201 Montgomery Street, 2nd Floor, Suite 263<br>Jersey City, NJ 07302 |
| Item II. | POLICY PERIOD:<br>From 12:01 a.m.  11/18/2022          To 12:01 a.m.  11/18/2023<br>(Standard time at the address shown in Item I) | |
| Item III. | A. Limit of Liability:          *See Endorsement # 2 (Quota Share Endorsement)*<br><br>Aggregate Limit of Liability for all LOSS paid on behalf of all INSUREDS arising from all CLAIMS first made during the POLICY PERIOD.<br><br>B. FIRST REINSTATED LIMIT OF LIABILITY:     N/A    (in the aggregate)<br><br>C. SECOND REINSTATED LIMIT OF LIABILITY: N/A    (in the aggregate)<br><br>Maximum Limit of Liability under<br>III.A, III.B and III.C combined          *See Endorsement # 2*<br>*(Quota Share Endorsement)*<br><br>The limits of liability in Items III.A, III.B and III.C are separate and independent. Please refer to Clause 4 of this POLICY for the details on how the reinstatements operate. | |

| Item IV. | CODA Access Fund: | $**0** |
| | Public Relations Fund: | $**0** |
| | Enforcement Fund: | $**0** |

The amount stated for the CODA Access Fund is in addition to the Limit of Liability and any applicable reinstatements set forth in Item III above and the maximum amount the INSURER shall pay for such CODA Access Fund.

The Public Relations Fund and Enforcement Fund are sublimits that are part of, and not in addition to, the Limit of Liability and any applicable reinstatements set forth in Item III above.

| Item V. | POLICY Premium: | **$22,500,000, entire premium for all carriers, in the aggregate, as such carriers are reflected in Endorsement #2 (Quota Share Endorsement)** |
| | DISCOVERY PERIOD Premium: | N/A % of POLICY Premium |

| Item VI. | Notice to COMPANY: |

Any notice to the COMPANY or, except in accordance with Clause 16 (Authority) of this POLICY, to the INSUREDS, shall be given or made to the individual listed above, if any, or otherwise to the individual designated in the APPLICATION, if any, or otherwise to the signer of the APPLICATION, and shall be given or made in accordance with Clause 15 (Notice) of this POLICY.

| Item VII. | Notice to INSURER: |

Any notice to be given or payment to be made to the INSURER under this POLICY shall be given or made in accordance with Clause 15 (Notice) of this POLICY to:

A.    Notice of CLAIM or WRONGFUL ACT:

Chubb
P.O. Box 5105
Scranton, PA 18505-0518
Fax: 877-746-4641
Toll Free: 800-433-0385
Email address for submitting Management Liability Claims,
ChubbClaimsFirstNotice@acegroup.com
Email address for all other correspondence,
WorkViewFLChubbIncoming@chubb.com

B.    All payments or other notices:

Chubb, Financial Lines
Attention: Chief Underwriting Officer
1133 Avenue of the Americas, 32nd Floor
New York, NY 10036

ANY EMAIL NOTICE OF CLAIMS TO THE INSURER SHALL BE VALID ONLY IF SENT TO THE EMAIL ADDRESS LISTED ABOVE AND VERIFIED BY A RETURN RECEIPT FROM SUCH EMAIL ADDRESS.

INFORMATION SUBMITTED TO THE INSURER WHICH IS NOT PROPERLY ADDRESSED TO THE CLAIMS DEPARTMENT SHALL NOT CONSTITUTE A VALID NOTICE OF CLAIM.

IN WITNESS WHEREOF, the INSURER has caused this POLICY to be countersigned by a duly authorized representative of the INSURER.

DATE: <u>12/22/2022</u>

JOHN J. LUPICA, President
_____
Authorized Representative

# CODA Premier® Directors and Officers Liability Policy

TABLE OF CONTENTS

| Clause | | Page |
|---|---|---|
| 1. | Insuring Clause | 2 |
| 2. | Definitions | 2 |
| 3. | Conduct Exclusion | 7 |
| 4. | Limits Of Liability | 7 |
| 5. | Alternative Dispute Resolution | 8 |
| 6. | Assistance, Cooperation And Consent | 8 |
| 7. | Renewal | 9 |
| 8. | Cancellation | 9 |
| 9. | Changes And Assignments | 10 |
| 10. | Advancement Of DEFENSE COSTS | 10 |
| 11. | Currency | 10 |
| 12. | Headings | 10 |
| 13. | INSUREDS' Reporting Duties | 10 |
| 14. | Other Insurance | 11 |
| 15. | Notice | 11 |
| 16. | Authority | 12 |
| 17. | Non-Rescission | 12 |
| 18. | Spousal Liability | 12 |
| 19. | Subrogation | 12 |
| 20. | Acquisition, Creation Or Disposition Of A SUBSIDIARY | 13 |
| 21. | DISCOVERY PERIOD | 13 |
| 22. | Bankruptcy | 14 |
| 23. | Appeals | 14 |
| 24. | Territory | 14 |
| 25. | Severability | 14 |
| 26. | Liberalization | 14 |
| 27. | State Amendatory Inconsistency | 15 |



**CODA Premier®
Directors and Officers
Liability
Policy**

Subject to all terms, definitions, conditions, exclusions and limitations of this POLICY, the COMPANY, the INSUREDS, and the INSURER agree as follows:

1.  INSURING CLAUSE

    (a) The INSURER shall pay on behalf of the INSUREDS any and all NON-INDEMNIFIABLE LOSS that the INSUREDS become legally obligated to pay by reason of any CLAIM first made against the INSUREDS during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, for any WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the end of the POLICY PERIOD by the INSUREDS.

    (b) In addition to the Limit of Liability and any applicable reinstatement(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, CODA Access Fund, for reasonable costs, charges, fees and expenses incurred by INSUREDS who are directors of the COMPANY to defend against efforts by other INSUREDS or third parties to seize or attach this POLICY, or otherwise enjoin the INSUREDS who are directors of the COMPANY from gaining access to the limits of liability provided by this POLICY; provided the COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("CODA Access Fund").

    (c) As part of and not in addition to the Limit of Liability and any applicable reinstatements(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, Public Relations Fund, for reasonable costs, charges, fees and expenses incurred by INSUREDS in connection with using a public relations firm to mitigate the adverse effects to the reputation of an INSURED from (i) an EXTRADITION PROCEEDING against such INSURED, if such EXTRADITION PROCEEDING is covered under this POLICY, or (ii) any negative public statement regarding such INSURED by any ENFORCEMENT AUTHORITY relating to or arising out of a CLAIM covered under this POLICY; provided the COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("Public Relations Fund").

    (d) As part of and not in addition to the Limit of Liability and any applicable reinstatements(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, Enforcement Fund, for reasonable costs, charges, fees and expenses (including but not limited to a premium for a bond) incurred by INSUREDS:

        1.  to oppose any efforts by any ENFORCEMENT AUTHORITY to seize or otherwise enjoin the personal assets or real property of an INSURED in connection with a CLAIM covered under this POLICY, or to revoke, overturn or set aside a court order in or relating to a CLAIM covered under this POLICY which in any way impairs the use of such assets or property; or

        2.  to seek the release of an INSURED from any arrest, detainment or incarceration by an ENFORCEMENT AUTHORITY in or relating to a CLAIM covered under this POLICY,

        if such costs, charges, fees and expenses relate to a WRONGFUL ACT by such INSURED and are not otherwise covered under this POLICY; provided the COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("Enforcement Fund").

2.  DEFINITIONS

    (a) "APPLICATION" shall mean:

        1.  All underwriting data submitted by the COMPANY or the INSUREDS to the INSURER during the 12 months preceding inception of this POLICY; and

        2.  all publicly available documents filed by the COMPANY with the U.S. Securities and Exchange

Commission during the 12 months preceding inception of this POLICY.

All such applications and materials are deemed attached to and incorporated into this POLICY.

(b) "CLAIM" shall mean:

1. any written demand, or any civil, criminal, arbitration, judicial, administrative, or regulatory proceeding, for monetary damages or non-monetary or injunctive relief, or any investigation, including a Wells Notice, against any INSURED for a WRONGFUL ACT, including any appeal therefrom;

2. an EXTRADITION PROCEEDING;

3. the arrest, detainment or incarceration for more than 24 hours of any INSURED by an ENFORCEMENT AUTHORITY in connection with a WRONGFUL ACT, if reported to the INSURER at the option of the INSURED(S) pursuant to Clause 13(c) (INSUREDS' Reporting Duties);

4. a written notice, as described in Clause 13(b) (INSUREDS' Reporting Duties), to the INSURER by the INSUREDS and/or the COMPANY describing  circumstances that may reasonably be expected to give rise to a CLAIM, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(b) (INSUREDS' Reporting Duties);

5. a PRELIMINARY INVESTIGATION, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(c) (INSUREDS' Reporting Duties); and

6. any written demand that an INSURED toll or waive a statute of limitations or other defense based on timeliness with respect to a potential or threatened claim against the INSURED for a WRONGFUL ACT, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(c) (INSUREDS' Reporting Duties).

(c) "COMPANY" shall mean:

1. the company named in Item I of the Declarations;

2. any company that, prior to the inception of the POLICY PERIOD, merged into or consolidated with the company named in Item I of the Declarations and was not the surviving entity;

3. any SUBSIDIARY;

4. any SUBSIDIARY if covered in accordance with Clause 20(a) (Acquisition, Creation Or Disposition Of A SUBSIDIARY) below;

5. any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more organizations described in 1 through 4 above; and

6. any organization described in 1 through 5 above as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

(d) "DEFENSE COSTS" shall mean that portion of LOSS consisting of reasonable costs, charges, fees (including but not limited to legal fees and experts' fees) and expenses incurred in the defense, investigation or appeal of a CLAIM, whether or not such CLAIM is ultimately settled or adjudicated, including but not limited to:

1. defending or appealing an EXTRADITION PROCEEDING;

2. the premium for appeal, attachment or similar bonds, including a bail bond if such is available for an EXTRADITION PROCEEDING in the country at issue, but the INSURER shall be under no obligation to provide a bond;

3. reasonable fees and expenses incurred by the INSUREDS to defend or investigate a CLAIM pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules or regulations pursuant to such Sections;

4. reasonable fees and expenses incurred by the INSUREDS at the INSURER'S request to assist the INSURER in investigating the CLAIM; and

 © Chubb. 2016 All rights reserved.

5.  costs assessed against the INSUREDS.

In no event shall DEFENSE COSTS include wages, salaries, fees, benefits or office expenses of INSUREDS or employees of the COMPANY.

(e)  "DISCOVERY PERIOD" shall mean the continuation of the reporting period of this POLICY for the time periods set forth in Clause 21(a)-(c) (Extended Discovery Period, Insolvency Discovery Period and FORMER INSURED Discovery Period) in respect of any CLAIMS first made against an INSURED during such extended reporting period after the end of the POLICY PERIOD, but only if such CLAIMS are based on WRONGFUL ACTS alleged to have been committed prior to the end of the POLICY PERIOD.

(f)  "DOMESTIC PARTNER" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the COMPANY.

(g)  "ENFORCEMENT AUTHORITY" shall mean any law enforcement or other governmental enforcement official or authority, or the enforcement unit of any self-regulatory organization.

(h)  "EXTRADITION PROCEEDING" shall mean any formal process by which an INSURED located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer a WRONGFUL ACT.

(i)  "FORMER INSURED" shall mean a director or officer of the company named in Item I of the Declarations who, prior to the expiration of the POLICY PERIOD, has ceased to hold any position as an INSURED.

(j)  "INDEPENDENT DIRECTORS" shall mean one or more past, present or future directors or MANAGERS of the COMPANY who are not and have never been an officer or employee of any COMPANY.

(k)  "INSUREDS" shall mean one or more of the following:

1.  all natural persons who were, now are, or shall be:

    i.  duly elected or appointed directors (including shadow and de facto directors), trustees, governors, officers, management committee members, MANAGERS, in-house general counsel, or comptrollers of the COMPANY;

    ii.  serving as a representative of an entity that serves as a director of the COMPANY;

    iii.  prospective directors of the COMPANY named as such in any listing particulars, prospectus or similar offering document;

    iv.  directors of investor relations, directors of human resources, risk managers or other managers serving in a functionally equivalent or comparable position with the COMPANY; or

    v.  with respect to any COMPANY chartered outside the United States,  natural person(s) serving in a position with such COMPANY which is functionally equivalent or comparable to any position described in i through iv above;

2.  all other natural persons not described in 1 above who were, now are, or shall be full-time or part-time, seasonal or temporary employees of the COMPANY, provided coverage for such other persons shall apply only if and while:

    i.  the COMPANY agrees to advance DEFENSE COSTS and indemnify such other persons with respect to the CLAIM to the same extent as the COMPANY agrees to advance DEFENSE COSTS for and indemnify the persons described in 1 above; or

    ii.  the CLAIM is:

        (A) by securities holders of the COMPANY in their capacity as such, including without limitation any shareholder derivative or securities class action lawsuit; or

        (B) made and continuously maintained against a person described in 1 above;

3.  all natural persons who were, now are, or shall be serving as directors, officers, trustees, governors, or the equivalent thereof, for any OUTSIDE ENTITY if:

 © Chubb. 2016 All rights reserved.

     i.   such activity is part of their duties regularly assigned by the COMPANY; or

     ii.   such activity is at the specific direction or request of the COMPANY; or

     iii.   such persons are a member of a class of persons so directed to serve by the COMPANY; and

4.   the estates, heirs, legal representatives or assigns of deceased INSUREDS and the legal representatives or assigns of INSUREDS in the event of their incompetency, insolvency or bankruptcy.

(l)   "INSURER" shall mean the insurance company indicated in the Declarations.

(m)   "LOSS" shall mean any and all amounts that the INSUREDS are legally obligated to pay by reason of a CLAIM made against the INSUREDS for any WRONGFUL ACT, and shall include but not be limited to:

1.   compensatory, exemplary, punitive and multiple damages, judgments, settlements, pre-judgment and post-judgment interest;

2.   DEFENSE COSTS;

3.   reasonable costs, charges, fees and expenses (including the premium or origination fee for a loan or bond) solely to facilitate the return of amounts incurred and required to be repaid by the chief executive officer or chief financial officer of the company named in Item I of the Declarations pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, or any INSURED pursuant to Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules or regulations pursuant to such Sections. Such amounts do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such persons pursuant to such Section 304(a) or Sections 210 or 954;

4.   reasonable costs, charges, fees and expenses incurred in connection with the CODA Access Fund, the Public Relations Fund and the Enforcement Fund as set forth in Clause 1(b) – (d) respectively; and

5.   U.K. CORPORATE MANSLAUGHTER ACT DEFENSE COSTS.

Provided, however, LOSS shall not include:

     i.   taxes, other than:

       (A)   taxes imposed upon a COMPANY for which the INSUREDS are legally liable solely by reason of the COMPANY's insolvency, or

       (B)   taxes, including national insurance contributions, imposed upon an INSURED solely by reason of the INSURER's payment of LOSS incurred by such INSURED;

     ii.   fines or penalties imposed by law, other than:

       (A)   punitive, exemplary, or multiple damages. The insurability of punitive, exemplary and multiple damages shall be governed by the law of the applicable jurisdiction that most favors coverage for such punitive, exemplary and multiple damages. If the INSUREDS present to the INSURER a written opinion from legal counsel that such punitive, exemplary or multiple damages are insurable under such applicable law, the INSURER shall not challenge that determination; and

       (B)   civil fines or penalties assessed against an INSURED for a violation of any federal, state, local or foreign law, if such violation is neither intentional nor willful, including without limitation any such violation of the Foreign Corrupt Practices Act at 15 U.S.C. § 78dd-2(g)(2)(B) or 15 U.S.C. § 78ff(c)(2)(B), any similar provisions of the United Kingdom Bribery Act 2010, and the United States Federal Food, Drug and Cosmetic Act.

Subparagraphs (i) and (ii) immediately above shall not apply to DEFENSE COSTS.

     iii.   matters that may be deemed uninsurable under the law pursuant to which this POLICY shall be construed. The INSURER shall not assert that any LOSS incurred by an INSURED is uninsurable due to the INSURED's actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933 or state equivalents thereof, as amended.

(n)  "MANAGERS" shall mean any one or more natural persons who were, now are or shall be:

   1.  managers, members of the board of managers or functionally equivalent or comparable executives of a COMPANY that is a limited liability company; or

   2.  general partners, managing partners or functionally equivalent or comparable executives of a COMPANY that is a partnership;

including without limitation any such natural persons serving in a management position in such limited liability company or partnership in accordance with such organization's operating agreement or partnership agreement.

(o)  "NON-INDEMNIFIABLE LOSS" shall mean LOSS for which the COMPANY or, with respect to INSUREDS described in Clause 2(k)(3) above, the OUTSIDE ENTITY, refuses to indemnify or advance DEFENSE COSTS or other LOSS as required or permitted, or is financially unable to indemnify, or fails to indemnify within 60 days after the INSUREDS request such indemnification; and the INSUREDS comply with Clause 19 (Subrogation) below.

(p)  "OUTSIDE ENTITY" shall mean any not-for-profit or for-profit organization.

(q)  "POLICY" shall mean this insurance policy, including the APPLICATION, the Declarations, and any endorsements hereto issued by the INSURER.

(r)  "POLICY PERIOD" shall mean the period of time stated in Item II of the Declarations. If this POLICY is cancelled in accordance with Clause 8(b) (Cancellation) below, the POLICY PERIOD shall end upon the effective date of such cancellation.

(s)  "PRELIMINARY INVESTIGATION" shall mean a request or demand for an INSURED to appear at a meeting, deposition or interview, or produce documents, relating to the business of the COMPANY, whether or not a WRONGFUL ACT is alleged, where such request or demand is:

   1.  by any ENFORCEMENT AUTHORITY; or

   2.  by or on behalf of the COMPANY, the COMPANY'S board of directors (or similar management body), or any committee of the COMPANY'S board of directors (or similar management body) arising out of a request or demand set forth in 1 immediately above; or which is part of the COMPANY'S investigation and evaluation of a SHAREHOLDER DERIVATIVE DEMAND.  For the purpose of this subparagraph 2, a SHAREHOLDER DERIVATIVE DEMAND means a written demand on the board of directors (or similar management body) by one or more shareholders of the COMPANY to assert a CLAIM on behalf of the COMPANY against one or more INSUREDS for a WRONGFUL ACT.

PRELIMINARY INVESTIGATION shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity conducted in the normal review or compliance process of the COMPANY by an ENFORCEMENT AUTHORITY.

(t)  "SUBSIDIARY" shall mean any entity which the company named in Item I of the Declarations and/or one or more other SUBSIDIARIES, directly or indirectly, in any combination:

   1.  owns interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the board of directors if such entity is a corporation, the management committee members or members of the management board if such entity is a joint venture, limited liability company, or partnership, or functionally equivalent or comparable executives of such entity; or

   2.  has the right, pursuant to written contract or the by-laws, charter, operating agreement, partnership agreement or similar documents of a COMPANY, to elect, appoint or designate a majority of the board of directors if such entity is a corporation, the management committee members or the members of the management board if such entity is a joint venture, limited liability company, or partnership, or functionally equivalent or comparable executives of such entity,

on or before the inception date of the POLICY; provided, however, a partnership shall be a SUBSIDIARY only if such partnership is specifically included as a SUBSIDIARY by an endorsement to this POLICY and

such partnership agrees to indemnify its INSUREDS to the fullest extent permitted by law.

(u)   "U.K. CORPORATE MANSLAUGHTER ACT DEFENSE COSTS" shall mean DEFENSE COSTS incurred by an INSURED that result solely from the investigation, adjustment, defense and/or appeal of a claim against a COMPANY for a violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007, or any similar statute in any jurisdiction.

(v)   "WRONGFUL ACT" shall mean:

1.   any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the INSUREDS while acting, individually or collectively, in their capacities as INSUREDS, or

2.   any other matter claimed against them by reason of their serving in such capacities, provided this subparagraph 2 shall not apply with respect to any INSUREDS of a COMPANY that is a partnership.

All such errors, misstatements, misleading statements, acts, omissions, neglects or breaches of duty actually or allegedly caused, committed, or attempted by or claimed against one or more of the INSUREDS arising out of or relating to the same or series of related facts, circumstances, situations, transactions or events shall be deemed to be a single WRONGFUL ACT.

3.   CONDUCT EXCLUSION

(a)   The INSURER shall not be liable to make any payment for LOSS in connection with that portion of any CLAIM based upon or attributable to the INSUREDS having:

1.   gained any personal financial profit or financial remuneration to which they were not legally entitled, or

2.   committed any deliberate fraud or deliberate criminal act,

if a final and non-appealable adjudication in an underlying proceeding (which shall not include a proceeding brought by or against the INSURER) adverse to such INSUREDS establishes that such INSUREDS gained any such personal financial profit or financial remuneration, or committed such deliberate fraud or deliberate criminal act.  However, this exclusion shall not apply to DEFENSE COSTS, INDEPENDENT DIRECTORS, any employment-related CLAIM or, with respect to subparagraph 1 immediately above, any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

(b)   For purposes of this exclusion, "final and non-appealable adjudication" means when:

1.   the last court, tribunal, executive, legislative or regulatory agency, body or entity with jurisdiction over the CLAIM denies any further appeal, recourse or other relief from any adverse finding, judgment or decree; or

2.   the INSURED has waived or abandoned all rights of appeal from any adverse finding, judgment or decree with respect to the CLAIM; or

3.   the time for filing, asserting or pleading any appeal from any adverse finding, judgment or decree has lapsed or is otherwise exhausted.

(c)   Any fact pertaining to or any act, omission, knowledge, intent or WRONGFUL ACT of any INSURED or the COMPANY shall not be imputed to any other INSURED for the purpose of determining the application of this exclusion.

(d)   For acts or omissions which are deemed to be a criminal violation in a jurisdiction outside of the United States and such acts or omissions would not be deemed to be a criminal violation if such acts or omissions took place in a jurisdiction inside of the United States, the imposition of a criminal sanction or fine in such jurisdiction outside the United States will not, by itself, be conclusive proof that a deliberate fraudulent or deliberate criminal act occurred for purposes of this exclusion.

4.   LIMITS OF LIABILITY

The maximum aggregate liability of the INSURER under this POLICY for all LOSS arising out of each CLAIM and all CLAIMS first made during the POLICY PERIOD and, if elected, the DISCOVERY PERIOD shall be the Limit of Liability set forth in Item III of the Declarations, subject to the following:

 © Chubb. 2016 All rights reserved.

(a) In the event the Limit of Liability of this POLICY is exhausted, this POLICY's Limit of Liability shall be reinstated in the amount set forth in Item III of the Declarations, FIRST REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by INSUREDS as defined in Clause 2(k)(1), Definitions.  Such FIRST REINSTATED LIMIT OF LIABILITY shall not apply to any CLAIM for which there has been any payment of LOSS under the Limit of Liability of this POLICY or any other CLAIM based upon, arising out of or related in any way to such CLAIM, and such FIRST REINSTATED LIMIT OF LIABILITY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY.

(b) In the event the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY is exhausted, this POLICY's Limit of Liability shall be reinstated a second time in the amount set forth in Item III of the Declarations, SECOND REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by duly elected or appointed directors (including shadow and de facto directors) of the company named in Item I of the Declarations. Such SECOND REINSTATED LIMIT OF LIABILITY shall not apply to any CLAIM for which there has been any payment of LOSS under the Limit of Liability of this POLICY or the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY or any other CLAIM based upon, arising out of or related in any way to such CLAIMS, and such SECOND REINSTATED LIMIT OF LIABILITY of this POLICY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY.

(c) Upon exhaustion of the Limit of Liability and, if applicable, the FIRST REINSTATED LIMIT OF LIABILITY, SECOND REINSTATED LIMIT OF LIABILITY, CODA Access Fund, Public Relations Fund and/or Enforcement Fund, for the POLICY PERIOD by reason of payment of LOSS by the INSURER, the INSURER shall have no further obligations or liabilities under this POLICY with respect to such applicable limit (or sublimit) of liability for the POLICY PERIOD.

(d) With respect to exhaustion for purposes of the FIRST REINSTATED LIMIT OF LIABILITY and the SECOND REINSTATED LIMIT OF LIABILITY, the limits of liability under any insurance policies excess of this POLICY shall be reduced or exhausted by payments by an insurer, an INSURED and/or a third party.

(e) DEFENSE COSTS shall be part of and not in addition to the Limit of Liability and, if applicable, the FIRST REINSTATED LIMIT OF LIABILITY, SECOND REINSTATED LIMIT OF LIABILITY, CODA Access Fund, Public Relations Fund and/or Enforcement Fund, as stated in Items III and IV of the Declarations, and payment by the INSURER of DEFENSE COSTS shall reduce such applicable limit of liability for the POLICY PERIOD.

(f) Multiple demands, suits or proceedings arising out of the same WRONGFUL ACT shall be deemed to be a single CLAIM, which shall be treated as a CLAIM first made during the policy period in which the first of such multiple demands, suits or proceedings is made against any INSURED or in which notice of circumstances relating thereto is first given in accordance with Clause 13(b) (INSUREDS' Reporting Duties) below, whichever occurs first.

5.  ALTERNATIVE DISPUTE RESOLUTION

Only if requested by the INSUREDS, the INSURER shall submit any dispute, controversy or claim arising out of or relating to this POLICY or the breach, termination or invalidity thereof to non-binding mediation and/or to non-binding arbitration pursuant to such rules and procedures as the parties may agree.  If the parties cannot agree on the arbitration rules and procedures, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules.  The arbitration panel shall consist of one arbitrator selected by the INSUREDS, one arbitrator selected by the INSURER, and a third independent arbitrator selected by the first two arbitrators.  In any such arbitration, each party will bear its own legal fees and expenses.

In the event that the INSUREDS prevail in an arbitration proceeding, then the INSURER shall pay to such INSUREDS the attorneys' fees, expert fees and other necessary out of pocket costs and expenses reasonably incurred by the such INSUREDS in the arbitration proceeding and shall pay the fees and expenses of the arbitration panel, such payment to be in addition to and not part of any applicable Limit Of Liability under this POLICY. In the event the INSURER prevails in an arbitration proceeding, then such fees and expenses of the INSURER and the arbitration panel shall be paid as may be ordered by the arbitration panel within its sole discretion.

6.  ASSISTANCE, COOPERATION AND CONSENT

 © Chubb. 2016 All rights reserved.

The INSUREDS shall provide to the INSURER all information, assistance and cooperation which the INSURER may reasonably request, and the INSUREDS shall use diligence and prudence in the investigation, defense, negotiation of settlement and settlement of any CLAIM.  In the event of a CLAIM, the INSUREDS shall do nothing that could prejudice the INSURER'S position or its potential or actual rights of recovery with respect to such CLAIM.

The INSURER has no duty to defend any CLAIM and shall not be called upon to assume charge of the investigation, settlement or defense of any CLAIM.  However, the INSURER shall have the right, but not the duty, and shall be given the opportunity to fully and effectively associate with the INSUREDS, and shall be consulted in advance, regarding the control, investigation, defense, negotiation of settlement and settlement of any CLAIM that is reasonably likely to be covered in whole or in part by, or that is reasonably likely to cause liability to attach under, this POLICY.

The INSUREDS shall not offer to settle or settle, assume any obligation, admit any liability or stipulate to any judgment with respect to any CLAIM that is reasonably likely to be covered in whole or in part by, or that is reasonably likely to cause liability to attach under, this POLICY without the INSURER'S prior written consent, which shall not be unreasonably withheld or delayed.  The INSURER shall not be liable for or as a result of any offer to settle, settlement, assumed obligation, admission of liability or stipulated judgment to which it has not given its prior written consent.

The INSURER is entitled to pay LOSS as it becomes due and payable by the INSUREDS, without considering the potential for other future LOSS.

The failure of any INSURED or the COMPANY to comply with his or her obligations under this Clause shall not impair the rights of any other INSURED under this POLICY.

The INSURER shall fulfill its obligations in accordance with the terms and conditions of this POLICY notwithstanding the issuance of any insurance by another member of the ACE Group.

7.    RENEWAL

Except in the event this POLICY is cancelled in whole or in part in accordance with Clause 8 (Cancellation) below, on the expiration date of this POLICY, upon delivery of the renewal application or submission and payment of the premium, this POLICY shall be renewed to a date one year beyond the expiration date of this POLICY, unless written notice is given by the INSURER to the COMPANY, or by the COMPANY to the INSURER, that such POLICY extension is not desired. Such written notice must be given at least 30 days prior to the expiration date of this POLICY.

The premium charged on renewal of this POLICY shall be determined by the underwriting guidelines and rating plan of the INSURER in force at such expiration date. If during the POLICY PERIOD the INSURER announces amendments to this standard policy form, which amendments are generally applicable to all similar policies issued by the INSURER, such amendments shall be applicable to any applicable renewal.

8.    CANCELLATION

This POLICY shall not be subject to cancellation except as follows:

(a)    In the event during the POLICY PERIOD:

    1.    the company named in Item I of the Declarations shall merge into or consolidate with another organization in which the company named in Item I of the Declarations is not the surviving entity, or

    2.    any person or entity or group of persons and/or entities acting in concert shall acquire securities or voting rights which results in ownership or voting control by such person or entity or group of persons or entities of more than 50% of the outstanding securities representing the present right to vote for election of directors or MANAGERS or functionally equivalent or comparable executives of the company named in Item I of the Declarations,

this POLICY shall remain in force until the later of:

    i.    the termination of the POLICY PERIOD, or

    ii.    any subsequent date to which the INSURER may agree by endorsement,

 © Chubb. 2016 All rights reserved.

but only with respect to CLAIMS for WRONGFUL ACTS actually or allegedly taking place before the effective date of said merger, consolidation or acquisition.  If the POLICY remains in force beyond the period of time stated in Item II of the Declarations by reason of this Clause 8(a), the Limit of Liability for such extension is part of and not in addition to the Limit of Liability applicable to the POLICY PERIOD. All premiums paid or due at the time of said merger, consolidation or acquisition shall be fully earned and in no respect refundable.

(b) This POLICY may be cancelled by the INSURER for nonpayment of premium by sending notice, in accordance with Clause 15 (Notice) below, to the company named in Item I of the Declarations stating when, not less than 10 days thereafter, the cancellation shall be effective. The effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. All premiums paid or due for this POLICY shall be fully earned at the time of said end of the POLICY PERIOD.

(c) If this POLICY is terminated by the company identified in Item I of the Declarations, the INSURER shall refund the premium computed at the customary short rate.  If this POLICY is terminated by the INSURER, the INSURER shall refund the unearned premium computed pro rata.  However, this POLICY may be cancelled by the company named in Item I of the Declarations because of a downgrade of the financial strength rating of the INSURER of this POLICY, as established by A.M. Best, below A-, within 30 days of such downgrade.  In such event, the INSURER shall:

1. refund the unearned premium computed pro rata, if the INSUREDS have not, prior to such termination, provided to the INSURER notice of a CLAIM or notice of facts or circumstances which may reasonably give rise to a future CLAIM covered under this POLICY; or

2. refund the unearned premium computed at the customary short rate, if the INSUREDS have, prior to such termination, provided to the INSURER notice of a CLAIM or notice of facts or circumstances which may reasonably give rise to a future CLAIM covered under this POLICY.

9.  CHANGES AND ASSIGNMENTS

The terms and conditions of this POLICY shall not be waived or changed, nor shall an assignment of interest under this POLICY be binding, except by an endorsement to this POLICY issued by the INSURER.

10.  ADVANCEMENT OF DEFENSE COSTS

Except in those instances when the INSURER has denied liability for the CLAIM because of the application of one or more coverage issues, if the COMPANY fails, refuses or is financially or  legally unable to advance DEFENSE COSTS, the INSURER shall, upon request and if proper documentation accompanies the request, advance on behalf of the INSUREDS, or any of them, such DEFENSE COSTS on a current basis, but no later than 60 days after the receipt by the INSURER of such properly documented DEFENSE COSTS invoices.  In the event that the INSURER so advances DEFENSE COSTS and it is finally established that the INSURER has no liability hereunder for such DEFENSE COSTS, the INSUREDS on whose behalf such advances have been made and the COMPANY, to the fullest extent legally permitted, agree to repay to the INSURER, severally according to their respective interests, all such advanced DEFENSE COSTS.

11.  CURRENCY

All premium, limits, retentions, and other amounts referenced in this POLICY are expressed, and all LOSS is payable, in the currency of the United States of America.  If judgment is rendered, settlement is denominated or another element of LOSS is stated in a currency other than United States of America dollars, payment under this POLICY shall be made in United States of America dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of LOSS is due, respectively, or if not published on such date, the next date of publication of *The Wall Street Journal*.

12.  HEADINGS

The descriptions in the headings and sub-headings of this POLICY are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

13.  INSUREDS' REPORTING DUTIES

(a) The INSUREDS and/or the COMPANY shall give written notice to the INSURER of any of the following as

soon as practicable after the in-house general counsel or risk manager of the company named in Item I of the Declarations first learns thereof:

1.  any CLAIM described in Clause 2(b)(1) or (2), Definitions, above; or

2.  any event described in  Clause 8(a) (Cancellation) above.

If the INSUREDS and/or the COMPANY fail to provide notice of any such CLAIM to the INSURER as specified in 1 immediately above, the INSURER shall not be entitled to deny coverage for the CLAIM based solely upon late notice unless the INSURER can demonstrate its interests were materially prejudiced by reason of such late notice.

(b)  If, during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, but in no event later than 60 days after the termination of the POLICY PERIOD, or if elected the DISCOVERY PERIOD, the INSUREDS first become aware of any circumstances that may reasonably be expected to give rise to a CLAIM described in Clause 2(b)(1) or (2) above being made against the INSUREDS, as set forth in Clause 2(b)(4), and if the INSUREDS or the COMPANY give written notice to the INSURER of such circumstances and the reasons for anticipating such a CLAIM, with particulars as to dates and persons involved, the nature of the WRONGFUL ACT, the alleged injury, the names of the claimants, and the manner in which the INSUREDS or the COMPANY first became aware of the circumstances; then such notice of circumstances shall be a CLAIM under this POLICY and any LOSS incurred by an INSURED solely in connection with his or her response to such circumstances shall be covered, subject to the other terms, conditions and limitations of this POLICY.  Any other CLAIM which arises out of such circumstances shall be deemed to have been first made at the time such written notice of circumstances was received by the INSURER. However, if the INSUREDS elect not to report such circumstances, then any subsequent CLAIM which arises out of the circumstances shall be subject to the reporting requirements set forth in 13(a) above, and coverage for such subsequent CLAIM will not be denied because of the INSUREDS' failure to report the circumstances pursuant to this Clause 13(b).

(c)  Any arrest, detainment or incarceration, PRELIMINARY INVESTIGATION, or demand described in subparts 3, 5 or 6 of Clause 2(b), Definitions, shall be a CLAIM under this POLICY only if during the POLICY PERIOD, the COMPANY or the INSUREDS, in their sole option, report such circumstance, PRELIMINARY INVESTIGATION, or demand to the INSURER as a CLAIM.

(d)  No coverage is afforded for any LOSS incurred in connection with any circumstance, PRELIMINARY INVESTIGATION, or demand described in Clause 2(b)(3), (4), (5) or (6), Definitions, prior to the time written notice as described in (b) or (c) above is given to the INSURER.

(e)  The time when a CLAIM shall be made for purposes of determining the application of Clause 1 (Insuring Clause) above shall be (i) with respect to a CLAIM described in Clause 2(b)(1), (2), (3) and (6) above, the date on which the CLAIM is first made against the INSURED, and (ii) with respect to a CLAIM described in Clause 2(b)(4) and (5) above, the date on which notice of such CLAIM is given to the INSURER.

14.  OTHER INSURANCE

If any LOSS covered under this POLICY is covered under any other valid and collectible insurance, then this POLICY shall cover the LOSS, subject to its terms and conditions, only to the extent that the amount of the LOSS is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this POLICY.  Such insurance as is provided by this POLICY shall apply as primary to any personal "umbrella" excess liability insurance purchased by an INSURED.

If LOSS covered under this POLICY is also covered under but not paid by such other valid and collectible insurance, this POLICY will respond on behalf of the INSUREDS without regard to such other insurance, subject to the terms, conditions and limitations of this POLICY and without prejudice to the INSURER's right to recover LOSS paid under this POLICY from the issuers of such other insurance.

15.  NOTICE

All notices under any provision of this POLICY shall be in writing and given by prepaid express courier or email properly addressed to the appropriate party at the respective addresses as shown in Items VI and VII of the Declarations, and notice so given shall be deemed to be received and effective upon actual receipt thereof

by the party or one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal. Notice to the INSURER of any CLAIM shall be directed to the attention of the INSURER's claims department.  All other notices to the INSURER shall be directed to the attention of the INSURER's underwriting department.

16.  AUTHORITY

By acceptance of this POLICY, the company named in Item I of the Declarations and the INSUREDS agree that the INSURER may treat the company named in Item I of the Declarations as the authorized representative of INSUREDS with respect to all matters under this POLICY, including, but not limited to, the giving and receiving of notice of CLAIM or cancellation or desire not to extend the POLICY or election of the DISCOVERY PERIOD, the payment of premiums, the receiving of LOSS payments and any return premiums that may become due under this POLICY, the requesting, receiving, and acceptance of any endorsement to this POLICY, and the submission of a dispute to arbitration.

The INSUREDS agree that said company shall represent them but, for purposes of the investigation, defense, settlement, or appeal of any CLAIM, all similarly situated INSUREDS who are named as defendants in the CLAIM may, upon notice to the INSURER, replace said company with another agent to represent them with respect to the CLAIM, including giving and receiving of notice of CLAIM and other correspondence, the receiving of LOSS payments, and the submission of a dispute to arbitration.

17.  NON-RESCISSION

Coverage under this POLICY shall not be rescinded or voided by the INSURER in whole or in part for any reason.

18.  SPOUSAL LIABILITY

If a CLAIM against an INSURED includes a claim against the INSURED's lawful spouse or DOMESTIC PARTNER solely by reason of (a) such spouse's or DOMESTIC PARTNER's status as a spouse or DOMESTIC PARTNER of the INSURED; or (b) such spouse's or DOMESTIC PARTNER's ownership interest in property which the claimant seeks as recovery for alleged WRONGFUL ACTS of the INSURED, all loss which such spouse or DOMESTIC PARTNER becomes legally obligated to pay by reason of such CLAIM shall be treated for purposes of this POLICY as LOSS which the INSURED becomes legally obligated to pay by reason of the CLAIM made against the INSURED.  Such spousal or DOMESTIC PARTNER loss shall be covered under this POLICY only if and to the extent such loss would be covered if incurred by the INSURED.

The coverage extension afforded by this Clause 18 does not apply to the extent such CLAIM alleges a wrongful act or omission by the INSURED's spouse or DOMESTIC PARTNER.

19.  SUBROGATION

(a)  In the event of any payment under this POLICY, the INSURER shall be subrogated to the extent  of such payment to all the rights or recovery of the INSUREDS.  The INSURER will act in concert with all other interests concerned (including the INSUREDS'), in the exercise of such rights of recovery. The apportioning of any amounts that may be so recovered shall follow the principle that any interest (including the INSUREDS') that has paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by it; the INSURER is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the INSUREDS') of which this coverage is in excess are entitled to claim the residue, if any.  Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned (including the INSUREDS'), in the proportion of their respective recoveries as finally settled. If there should be no recovery in proceedings instituted solely on the initiative of the INSURER, the expenses thereof shall be borne by the INSURER.

(b)  The INSUREDS shall execute all papers reasonably required and shall take all reasonable actions that may be necessary to secure the rights of the INSURER, including the execution of such documents necessary to enable the INSURER effectively to bring suit in the name of the INSUREDS, including but not limited to an action against the COMPANY for nonpayment of indemnity due and owing to the INSUREDS by the COMPANY.

(c)  In no event shall the INSURER exercise its right of subrogation against an INSURED unless and to the extent Clause 3, Conduct Exclusion, applies to such INSURED.

(d) Any recoveries by the INSURER pursuant to this Clause 19 of LOSS paid under this POLICY shall be the sole property of the INSURER, but an amount equal to the amount of such recoveries, minus all costs incurred by the INSURER to obtain such recoveries, shall reinstate, in such amount and as of the date each recovery is received by the INSURER, the limits of liability of this POLICY that were eroded or exhausted by such payment.

20. ACQUISITION, CREATION OR DISPOSITION OF A SUBSIDIARY

(a) If, during the POLICY PERIOD, the company named in Item I of the Declarations acquires voting securities in another organization or creates another organization which as a result of such acquisition or creation becomes a SUBSIDIARY, or acquires any organization by merger into or consolidation with the COMPANY, then, subject to the terms and conditions of this POLICY including the following paragraphs of this Section (a), such organization's INSUREDS shall be covered under this POLICY but only with respect to CLAIMS for WRONGFUL ACTS taking place after such acquisition or creation, unless the INSURER agrees to provide coverage by endorsement for WRONGFUL ACTS taking place prior to such acquisition or creation.

If the total assets of such acquired or created organization, as reflected in the then most recent consolidated financial statements of the organization, exceed 25% of the total assets of the company named in Item I of the Declarations and the SUBSIDIARIES as reflected in the then most recent consolidated financial statements of the company named in Item I of the Declarations, coverage shall be provided for the INSUREDS of such acquired or created organization for a period of 60 days after the effective date of such acquisition or creation, or until the end of the POLICY PERIOD, whichever is earlier, so long as the company named in Item I of the Declarations gives written notice of such acquisition or creation to the INSURER prior to the end of the POLICY PERIOD.  Coverage otherwise afforded under this paragraph for the INSUREDS of such acquired or created organization shall terminate 60 days after the effective date of such acquisition or creation, or at the end of the POLICY PERIOD, whichever is earlier, unless the company named in Item I of the Declarations agrees to and pays any additional premium required by the INSURER, and agrees to any additional terms and conditions of this POLICY as required by the INSURER.

(b) Coverage shall not apply to directors, MANAGERS, officers and employees of any subsidiary, including a SUBSIDIARY as defined in Clause 2 (Definitions) above, for CLAIMS for WRONGFUL ACTS actually or allegedly taking place subsequent to the date that the SUBSIDIARY ceases to be a SUBSIDIARY.

21. DISCOVERY PERIOD

(a) If the INSURER or the company identified in Item I of the Declarations elects not to renew this POLICY, then the company identified in Item I of the Declarations and the INSUREDS shall have the right, upon payment of an additional premium set forth in Item V of the Declarations, to a continuation of the reporting period of this POLICY in respect of any CLAIMS first made against an INSURED during the one-year period after the end of the POLICY PERIOD, but only if the CLAIMS are based on WRONGFUL ACTS alleged to have been committed prior to the end of the POLICY PERIOD ("Extended Discovery Period").  Such CLAIMS shall be deemed to have been made during the POLICY PERIOD, provided that notification of each such CLAIM is in accordance with Clause 13 (INSURED's Reporting Duties) above. The right to elect the Extended Discovery Period shall terminate, however, unless written notice of such election together with the additional premium is received by the INSURER within 60 days after the end of the POLICY PERIOD.  Any premium paid for the Extended Discovery Period is not refundable.

(b) If nonrenewal of this POLICY follows the commencement during the POLICY PERIOD of a liquidation or reorganization proceeding described in Clause 22 below, then any DISCOVERY PERIOD elected by the COMPANY or the INSUREDS shall be six years from the date of such nonrenewal ("Insolvency Discovery Period") for CLAIMS first made during such Insolvency Discovery Period based on WRONGFUL ACTS alleged to have occurred prior to such nonrenewal.  No additional premium shall be required for the Insolvency Discovery Period.

(c) In the event the COMPANY does not renew this POLICY, FORMER INSUREDS shall receive, instead of the DISCOVERY PERIOD set forth in paragraph (a) or (b) above, a discovery period of unlimited duration

from the effective date of such nonrenewal ("FORMER INSURED Discovery Period") for CLAIMS first made against the FORMER INSURED during such FORMER INSURED Discovery Period based on WRONGFUL ACTS alleged to have occurred prior to such nonrenewal. No additional premium shall be required for the FORMER INSURED Discovery Period. The FORMER INSURED Discovery Period shall not apply to any INSURED who ceased to serve as an INSURED on account of an event described in Clause 8(a)1 or Clause 8(a)2.

(d) The offer by the INSURER of renewal at a premium different from the premiums for the expiring POLICY PERIOD shall not constitute an election by the INSURER not to renew this POLICY.

(e) The Limit of Liability provided during any DISCOVERY PERIOD is part of and not in addition to the Limit of Liability provided during the POLICY PERIOD, and there shall be no separate or additional Limit of Liability for the DISCOVERY PERIOD.

## 22. BANKRUPTCY

In the event a liquidation or reorganization proceeding is commenced by or against the COMPANY or any INSURED, pursuant to the United States Bankruptcy Code, as amended, or any similar state, local, or foreign law, such proceeding shall not relieve the INSURER of its obligations nor deprive the INSURER of its rights or defenses under this POLICY. In the event of such liquidation or reorganization proceeding the COMPANY and the INSUREDS hereby: (i) waive and release any automatic stay or similar payment prohibition which may apply in such proceeding to this POLICY or its proceeds under such Bankruptcy Code or law; and (ii) agree not to oppose or object to any efforts by the INSURER, the COMPANY or any INSURED to obtain relief from any such stay or payment prohibition.

In the event the COMPANY becomes a debtor-in-possession or equivalent status under the United States Bankruptcy Code or the law of any other country and the aggregate LOSS due under this POLICY exceeds the remaining available Limit of Liability, the INSURER shall:

(a) first pay such LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the COMPANY becoming a debtor-in–possession or such equivalent status, then

(b) with respect to whatever remaining amount of the Limit of Liability is available after payment under (a) above, pay such LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted after the COMPANY became a debtor-in-possession or equivalent status under the United States Bankruptcy Code or the law of any other country.

## 23. APPEALS

In the event the INSUREDS elect not to appeal a judgment, the INSURER may elect to make such appeal at its own expense, and shall be liable for any increased award, taxable costs and disbursements and any additional interest incidental to such appeal, to the extent such payments are not covered by other valid and collectible insurance.

## 24. TERRITORY

This POLICY shall apply to any WRONGFUL ACT taking place, LOSS incurred or CLAIM made against any INSURED anywhere in the world.

## 25. SEVERABILITY

The APPLICATION for coverage shall be construed as a separate APPLICATION for coverage by each INSURED. With respect to the declarations and statements contained in such APPLICATION for coverage, no statement in the APPLICATION or knowledge possessed by any one INSURED shall be imputed to any other INSURED for the purpose of determining the availability of coverage with respect to CLAIMS made against any other INSURED. Any fact pertaining to, or any act, omission, knowledge, or intent of any INSURED or COMPANY shall not be imputed to any other INSURED with respect to coverage under this POLICY.

## 26. LIBERALIZATION

Where legally permissible, for LOSS from that portion of any CLAIM maintained in a FOREIGN JURISDICTION or to which the law of a FOREIGN JURISDICTION is applied, the INSURER shall apply to such CLAIM those terms and conditions (and related provisions) of the FOREIGN POLICY in such FOREIGN JURISDICTION that are more favorable to such INSURED than the terms and conditions of this POLICY.

However, this paragraph shall not apply to any provision of this POLICY or the FOREIGN POLICY addressing limits of liability (primary, excess or sublimits), other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made coverage provisions, arbitration and any endorsement to this POLICY that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

For the purpose of this Clause:

FOREIGN JURISDICTION means any jurisdiction, other than the United States or any of its territories or possessions.

FOREIGN POLICY means the INSURER'S or any other member company of the Chubb Group of Companies' ("Chubb") standard directors' and officers' liability policy (including all mandatory endorsements, if any) approved by Chubb to be sold within a FOREIGN JURISDICTION that provides difference-in-conditions coverage for non-indemnifiable loss of a natural person insured substantially similar to the coverage afforded under this POLICY.  If more than one such policy exists, then "FOREIGN POLICY" means the standard policy most recently registered in the local language of the FOREIGN JURISDICTION, or if no such policy has been registered, then the policy most recently registered in that FOREIGN JURISDICTION.

27. STATE AMENDATORY INCONSISTENCY

If there is an inconsistency between a state amendatory endorsement attached to this POLICY and any other term or condition of this POLICY, the INSURER shall apply, where permitted by law, those terms and conditions either of such state amendatory endorsement or the POLICY form which are more favorable to the INSURED's coverage.

 © Chubb. 2016 All rights reserved.

CHUBB®

# SIGNATURES

| Named Insured **BlockFi, Inc.** | | | Endorsement Number **1** |
| --- | --- | --- | --- |
| Policy Symbol **DON** | Policy Number **G71101320 001** | Policy Period **11/18/2022 to 11/18/2023** | Effective Date of Endorsement **11/18/2022** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

THE ONLY COMPANY APPLICABLE TO THIS POLICY IS THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

_____
JULIET SCHWEIDEL, Secretary

_____
JOHN J. LUPICA, President

_____
Authorized Representative

CC-1K11j (03/21)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**BlockFi, Inc.** | | | Endorsement Number<br>**2** |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G71101320 001** | Policy Period<br>**11/18/2022 to 11/18/2023** | Effective Date of Endorsement<br>**11/18/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### QUOTA SHARE ENDORSEMENT

It is agreed that the Policy is amended as follows:

1.  Items III. A and D of the Declarations are deleted in their entirety and the following is inserted:

    $30,000,000 Maximum Aggregate Limit of Liability for all Loss paid on behalf of all INSUREDS arising from all CLAIMS first made during the POLICY PERIOD, or applicable DISCOVERY PERIOD, in accordance with the schedule set forth below, and the terms and conditions of this POLICY.

| **Quota Share Insurer** | **Quota Share Insurer Limit of Liability Proportion Underwritten** |
|---|---|
| ACE American Insurance Company (Chubb) | $5,000,000 part of $30,000,000 |
| National Union Fire Insurance Company of Pittsburgh, PA (AIG) | $5,000,000 part of $30,000,000 |
| U.S. Specialty Insurance Company (HCC) | $5,000,000 part of $30,000,000 |
| Endurance American Insurance Company (Sompo) | $5,000,000 part of $30,000,000 |
| Arch Insurance Company (Arch) | $2,000,000 part of $30,000,000 |
| AXIS Insurance Company (Axis) | $2,000,000 part of $30,000,000 |
| Berkley Insurance Company (Berkley) | $2,000,000 part of $30,000,000 |
| Berkshire Hathaway Specialty Insurance Company (Berkshire) | $2,000,000 part of $30,000,000 |
| XL Specialty Insurance Company (XL) | $2,000,000 part of $30,000,000 |

   (hereinafter, each insurer listed above shall be known as a "Quota Share Insurer").

2.  Section 5, **LIMIT OF LIABILITY AND RETENTION**, is amended to add the following:
    *   Each Quota Share Insurer's maximum limit of liability for each LOSS under this POLICY shall be the proportion of covered Loss as set forth in Items III. A and D of the Declarations as the Quota Share Insurer's respective proportion of the aggregate Limit of Liability. Each Quota Share Insurer's maximum aggregate limit of liability for all LOSS under this POLICY shall be the Quota Share Insurer's proportion of covered LOSS as set forth in Items III. A and D of the Declarations as the Quota Share Insurer's Limit of Liability.

3.  The following section is added to the policy:
    *   **Quota Share Insurers Rights and Obligations**

    The obligations of each Quota Share Insurer set forth in Items III. A and D of the Declarations are several and not joint and are limited to the extent of each Quota Share Insurer's respective participation. In addition to and not in limitation of any of the foregoing, each Quota Share Insurer shall be separately responsible for:

    1.  responding to any notice submitted to it, handling and making any payments of LOSS within the amount of its individual participation in connection with any CLAIM, and advancing its portion of any DEFENSE COSTS incurred by any INSURED and requiring any undertakings in connection therewith, as set forth in the POLICY;

2.  enforcing and complying with its rights and obligations in connection with the defense and settlement of CLAIMS, as set forth in the POLICY; provided, that in the event that an agreement cannot be reached between an individual Quota Share Insurer and the INSUREDS as to an allocation of LOSS, then such Quota Share Insurer shall advance that portion of the LOSS for which it is responsible which the INSUREDS and such Quota Share Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this POLICY and applicable law; and,

3.  making any decisions regarding the providing of any additional coverage, including the terms, conditions and limitations thereof and any additional premium therefor.

No Quota Share Insurer shall be bound, nor shall its rights and obligations be waived, altered or amended in any way, by any action or position taken or not taken or any decisions made by any other Quota Share Insurer with respect to any matter for which such other Quota Share Insurer is separately or severally responsible. If any Quota Share Insurer does not, for any reason, satisfy all or any part of its obligations, no other Quota Share Insurer shall be responsible for such Quota Share Insurer's participation; nor shall the duties of any other Quota Share Insurer be increased or in any way waived, altered or amended as a result thereof.

If any Quota Share Insurer shall have paid LOSS, including DEFENSE COSTS, under this POLICY in an aggregate amount equal to its proportion of covered LOSS as set forth in Items III. A and D of the Declarations as its Limit of Liability, any and all obligations of such Quota Share Insurer under this POLICY will be completely fulfilled and extinguished, and such Quota Share Insurer will have no further obligations of any kind or nature whatsoever under this POLICY.

Notice to each Quota Share Insurer shall be given at the address set forth for each Quota Share Insurer below.

All references in the policy to the "INSURER" shall be deemed to refer to the Quota Share Insurers, and it is understood and agreed that a signature by a Quota Share Insurer below sets forth such Quota Share Insurer's agreement to the terms and conditions of this POLICY, including but not limited to, this section.

Notwithstanding anything to the contrary in this POLICY, the INSURED shall provide notice, pursuant to the terms of Clause 13, INSUREDS' REPORTING DUTIES, and Clause 14, NOTICE, of each CLAIM to each Quota Share Insurer at the addresses set forth below.  Item VII, Notice to INSURER, of the Declarations shall be deemed amended to affect the purpose and intent of this paragraph.

In the event this POLICY is modified during the POLICY PERIOD, all Quota Share Insurers shall be deemed to agree to such modification. If a Quota Share Insurer objects to a modification, then such modification shall be of no force or effect.

Subject to the terms, conditions and limitations in this section, each Quota Share Insurer shall retain control of any CLAIM as it applies to its proportion of covered LOSS and its Limit of Liability, in accordance with the terms and conditions of this POLICY.  Each Quota Share Insurer shall be provided by the INSUREDS with any and all particulars of any CLAIM or noticed circumstances, and such information and cooperation as the Quota Share Insurers may reasonably require. The INSUREDS shall provide each Quota Share Insurer with prompt
written notice of any significant changes in the status or development of any CLAIM.

Each Quota Share Insurer is entitled to advance notice of and the right to participate in any settlement negotiations.

The INSUREDS shall not incur any LOSS or settle any CLAIM which is considered binding on behalf of each Quota Share Insurer individually for its proportion of any LOSS, without the prior written consent of each Quota Share Insurer, which consent shall not be unreasonably withheld.

| Carrier/Signature of Authorized Representative | Carrier Address To Which Notices Shall Be Sent |
|---|---|
| ACE American Insurance Company<br><br><br>_____<br>Vin Milano, Senior Vice President<br><br>Date___11/18/2022_____ | ***Send Notice of Claims To:***<br>Chubb<br>P.O. Box 5105<br>Scranton, PA 18505-0518<br>Fax: 877-746-4641<br>Email address for submitting Claims,<br>ChubbClaimsFirstNotice@Chubb.com<br>Email address for all other correspondence,<br>WorkViewFLChubbIncoming@chubb.com |
| National Union Fire Insurance Company of Pittsburgh, PA<br><br><br>_____<br>Emily Sheitelman<br><br>Date___11/18/2022_____ | ***Send Notice of Claims To:***<br>AIG<br>Financial Lines Claims<br>P.O. Box 25947<br>Shawnee Mission, KS 66225<br>Phone: (888) 602-5246<br>Fax: (866) 227-1750<br>Email:  c-Claim@AIG.com |
| U.S. Specialty Insurance Company<br><br><br>_____<br>Stephen Guglielmo<br><br>Date___11/18/2022_____ | ***Send Notice of Claims To:***<br>Tokio Marine HCC-D&O Group<br>8 Forest Park Drive<br>Farmington CT 06032<br>Attn: Claims Manager<br>Facsimile Number: 860-676-1737<br>Email Address: usclaims@tmhcc.com |
| Endurance American Insurance Company<br><br><br>_____<br>Thomas Ruck<br><br>Date___11/18/2022_____ | ***Send Notice of Claims To:***<br>Commercial Management Liability<br>Attn:  Claim Department<br>1221 Avenue of The Americas<br>New York, NY 10020<br>Insuranceclaims@sompo-intl.com<br>1-877-676-7575 |
| Arch Insurance Company<br><br><br>_____<br>Michael Landers, Senior Vice President<br><br>Date___11/18/2022_____ | ***Send Notice of Claims To:***<br>Arch Insurance Company<br>Executive Assurance Claims<br>1299 Farnam Street, Suite 500<br>Omaha, NE 68102<br>P.O. Box 542033<br>Omaha, NE 68154<br>Phone:  877 688-ARCH (2724)<br>Fax:  866 266-3630<br>Email: Claims@ArchInsurance.com |

MS-356257 (12/22)

| Carrier/Signature Of Authorized Representative | Carrier Address To Which Notices Shall Be Sent |
|---|---|
| AXIS Insurance Company<br><br>*Paul O'Donnell*<br>_____<br>Paul O'Donnell, Senior Vice President<br><br>Date___11/18/2022_____ | **Send Notice of Claims To:**<br>AXIS Insurance<br>Claims Department<br>P.O. Box 4470<br>Alpharetta, GA 30023-4470<br><br>Email: USFNOL@axiscapital.com<br>Phone (Toll Free):  (866)259-5435<br>Phone: (678) 746-9000<br>Fax (866) 770-5629 |
| Berkley Insurance Company<br><br>*Tania Chen*<br>_____<br>Tania Chen<br><br>Date___11/18/2022_____ | **Send Notice of Claims To:**<br>Berkley Professional Liability<br>Berkley Professional Liability Claims, c/o Claims Department<br>757 Third Avenue<br>10th Avenue<br>New York, NY 10017<br>Phone: (212) 618-2948<br>Claim Dept. Fax: (212) 618-2948<br>Email:  claims@berkleypro.com |
| Berkshire Hathaway Specialty Insurance Company<br><br>_____<br>Sanjay Godhwani<br><br>Date___11/18/2022_____ | **Send Notice of Claims To:**<br>By 24-hour toll free number:  855-453-9675<br>*By Email:* ClaimsNotice@bhspecialty.com<br>*By Fax:* 617-507-8259<br>*By Mail:* Log on to www.bhspecialty.com/claims-reporting.html for mailing address |
| XL Specialty Insurance Company<br><br>_____<br>Michael Linehan<br><br>Date___11/18/2022_____ | **Send Notice of Claims To:**<br>XL Professional Insurance<br>100 Constitution Plaza, 17th Floor<br>Hartford, CT 06103<br>Toll Free Telephone: 877-953-2636 or<br>proclaimnewnotices@axaxl.com |

All other terms and conditions of this POLICY remain unchanged.

MS-356257 (12/22)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**BlockFi, Inc.** | | | Endorsement Number<br>**3** |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G71101320 001** | Policy Period<br>**11/18/2022 to 11/18/2023** | Effective Date of Endorsement<br>**11/18/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Sublimit Endorsement

It is agreed that:

1.  Subject to paragraph 3 below, Clause 4, LIMITS OF LIABILITY, is amended to include the following:

    MUTUALLY EXCLUSIVE SUBLIMITS

    (i)     Solely with respect to LOSS in connection with any CLAIM based upon, arising out of, related to, or attributable to, any facts, circumstances, situations or WRONGFUL ACTS committed, attempted, or allegedly committed or attempted, in whole or in part, prior to the FILE DATE, the INSURER'S maximum limit of liability shall be $15,000,000, in the aggregate, regardless of the number of CLAIMS thereunder (the "Pre-File Date Sublimit"). Such Pre-File Date Sublimit shall be part of and not in addition to the INSURER'S Aggregate Limit of Liability for all LOSS paid on behalf of all INSUREDS arising from all CLAIMS first made during the POLICY PERIOD, as set forth in Items III (A) and (D) of the Declarations.

    (ii)    Solely with respect to LOSS in connection with any CLAIM based upon, arising out of, related to, or attributable to any facts, circumstances or WRONGFUL ACTS committed, attempted, or allegedly committed or attempted in whole, on or after the FILE DATE, the INSURER'S maximum limit of liability shall be $15,000,000, in the aggregate, regardless of the number of CLAIMS thereunder (the "Post-File Date Sublimit"). Such Post-File Date Sublimit shall be part of and not in addition to the INSURER'S Aggregate Limit of Liability for all LOSS paid on behalf of all INSUREDS arising from all CLAIMS first made during the POLICY PERIOD, as set forth in Items III (A) and (D) of the Declarations.

    (iii)   In the event that any LOSS in connection with any CLAIM involves:

          (a)   any WRONGFUL ACT that could be construed as having been, in part, committed prior to the FILE DATE and, in part, committed on or after the FILE DATE, or

          (b)   any WRONGFUL ACT occurring on or after the FILE DATE, that arises out of or relates to the same or series of related facts, circumstances, situations, transactions, events, or WRONGFUL ACTS occurring before the FILE DATE;

          such CLAIM shall be subject to the Pre-File Date Sublimit; and in no event shall any CLAIM be subject to more than one sublimit.

MS-356255.3 (12/22)

2.  Clause 2, Definitions, is amended to include the following:

    FILE DATE means the date the INSURED files a bankruptcy petition.

3.  It is understood and agreed that, notwithstanding anything to the contrary in this POLICY, and further, pursuant to the INSURED'S request, in the event that the INSURED fails to file a bankruptcy petition by 12/09/2022 (the "Specified Date"), this POLICY  shall be void ab initio, in which case any and all premium payments shall be fully refunded; provided however, that, the INSURER, the INSURED, the all of the Quota Share Insurers, as set forth in the Quota Share Endorsement, may, together, mutually agree in writing to amend the Specified Date, by endorsement to this POLICY.

4.  This POLICY shall be governed and construed in accordance with the laws of New Jersey, excluding that State's choice-of- law principles, and all CLAIMS relating to or arising out of this POLICY, or the breach thereof, whether sounding in policy, tort or otherwise, shall likewise be governed by the laws of New Jersey, excluding that State's choice-of-law principles.


All other terms and conditions of this POLICY remain unchanged.


_____
Authorized Representative

Page 2 of 2

MS-356255.3 (12/22)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**BlockFi, Inc.** | | | Endorsement Number<br>**4** |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G71101320 001** | Policy Period<br>**11/18/2022 to 11/18/2023** | Effective Date of Endorsement<br>**11/18/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

**AMEND OTHER INSURANCE ENDORSEMENT**

It is agreed that Clause 14, OTHER INSURANCE is amended to add the following:

Notwithstanding anything in this Clause to the contrary, this POLICY shall be specifically excess of, pursuant to the terms and conditions of this POLICY, and shall not contribute with, D&O Policy #RILPDO4532021 issued to BlockFi, Inc. by Relm Insurance Ltd., or any renewal or replacement thereof, regardless of whether such policy is stated to be primary, contributory, excess, contingent, or otherwise.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **BlockFi, Inc.** | | | **5** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DON** | **G71101320 001** | **11/18/2022 to 11/18/2023** | **11/18/2022** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

## Runoff Conversion Endorsement

It is agreed that, in consideration of the premium charged, which is fully earned and non-refundable as of November 18, 2022, and effective only as of the RUN-OFF DATE, this POLICY shall be converted into a Run-Off Policy as follows:

1.  The term "POLICY PERIOD" is deleted throughout the POLICY and replaced with the phrase **"RUN-OFF PERIOD."**

2.  Clause 2, DEFINITIONS of this POLICY, COMPANY is amended to add "and its SUCCESSOR COMPANY" at the end thereof.

3.  Clause 2, DEFINITIONS, of this POLICY is amended to add the following:

    - RUN-OFF DATE means the effective date and time of the RUN-OFF EVENT.

    - RUN-OFF EVENT means the earliest of any of the following events occurring during the POLICY PERIOD:

        i.  after the company named in Item I of the Declarations (herein the "PARENT COMPANY") is acquired such that another organization or person or group of organizations and/or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or managers of the surviving entity;

        ii.  the emergence, by the PARENT COMPANY, from Chapter 11 of United States bankruptcy law;

        iii.  the liquidation, by the PARENT COMPANY, pursuant to Chapter 7 of United States bankruptcy law;

        iv.  upon the written request of the majority of the board of directors of the PARENT COMPANY that a RUN-OFF EVENT be recognized; or

        v.  the expiration of the POLICY PERIOD.

    - RUN-OFF PERIOD means the 6-year period commencing as of the RUN-OFF DATE. Coverage under this POLICY shall continue in full force and effect until the termination of the RUN-OFF PERIOD, but only with respect to CLAIMS first made during the RUN-OFF PERIOD and arising from WRONGFUL ACTS occurring:

        i.  Prior to the File Date, as defined in the Sublimit Endorsement ("Pre-File Run-Off"); or

        ii.  Prior to the RUN-OFF date, but on or after the File Date, as defined in the Sublimit Endorsement ("Post-File Run-Off").

        No coverage shall be available under this POLICY for CLAIMS first made during the RUN-OFF PERIOD arising from WRONGFUL ACTS occurring on or after the RUN-OFF DATE.

    - SUCCESSOR COMPANY means the surviving entity after a RUN-OFF EVENT set forth in Paragraphs (i) or (ii) of the definition of RUN-OFF EVENT, but solely in its capacity as a successor to COMPANY.

4.      Clause 20, ACQUISITION, CREATION OR DISPOSITION OF A SUBSIDIARY, and Clause 21, DISCOVERY PERIOD, are deleted in their entirety.

5.      Clause 4, LIMIT OF LIABILITY, is amended to add the following:

The Limit of Liability applicable to the RUN-OFF PERIOD shall be:

i.      solely with respect to Pre-File Run-Off, an amount equal to the Pre-Filing Date Sublimit of $15,000,000, as set forth in the Sublimit Endorsement, minus the amount of any LOSS paid or to be paid in connection with any CLAIMS that are subject to such Pre-Filing Date Sublimit (the "Pre-Filing Date Run-Off Limit"); and

ii.     solely with respect to Post-File Run-Off, an amount equal to the Post-Filing Date Sublimit, of $15,000,000, as set forth in the Sublimit Endorsement, minus the amount of any LOSS paid or to be paid in connection with any CLAIMS that are subject to such Post-Filing Date Sublimit (the "Post-Filing Date Run-Off Limit"); and

both the Pre-Filing Date Run-Off Limit and the Post-Filing Date Run-Off Limit shall be part of and not in addition to the Limit of Liability shown in Item III (D) of the Declarations for the immediately preceding policy period. The RUN-OFF PERIOD shall not operate, nor be construed, to increase or reinstate the Limit of Liability, the Pre-Filing Date Run-Off Limit, the Post-Filing Date Run-Off Limit, the Pre-Filing Date Sublimit, as set forth in the Sublimit Endorsement, or the Post-Filing Date Sublimit, as set forth in the Sublimit Endorsement; and in no event shall the maximum aggregate liability of the INSURER for all LOSS resulting from CLAIMS first made during the immediately preceding policy period and the RUN-OFF PERIOD, combined exceed the Limit of Liability shown in Item III (D).

6.      Clause 13, INSUREDS' REPORTING DUTIES is deleted and replaced with the following:

13. INSUREDS' REPORTING DUTIES
   (a) The INSUREDS and/or COMPANY shall, as a condition precedent to exercising any right to coverage under this POLICY, give to the INSURER written notice of any CLAIM for a WRONGFUL ACT first occurring:
      i.     prior to the RUN-OFF DATE, but on or after the File Date, as respects the Post-File Run-Off; and
      ii.    prior to the File Date, as defined in the Sublimit Endorsement, as respects the Pre-File Run-Off;
      as soon as practicable, but in no event later than 90 days after the INSURED or the COMPANY's Risk Manager or General Counsel, first become aware of the CLAIM.
   (b) The INSUREDS and/or COMPANY shall give to the INSURER in any written notice described in Paragraph 15(a) above a description of the CLAIM, request to toll or waive a statute of limitations, the nature of any alleged WRONGFUL ACTS, the nature of the alleged or damage and the names of all defendants, and the manner in which such INSURED or COMPANY first became aware of the CLAIM.

7.      The obligations of the PARENT COMPANY to the INSURER under this POLICY including but not limited to Clause 13, INSUREDS' REPORTING DUTIES; and 15, Notice, shall be binding upon the SUCCESSOR COMPANY.

8.      The Conversion of this POLICY to a Run-off Policy, pursuant to the terms of this Endorsement, shall not effect a return or additional premium.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured **BlockFi, Inc.** | | | Endorsement Number **6** |
|---|---|---|---|
| Policy Symbol **DON** | Policy Number **G71101320 001** | Policy Period **11/18/2022 to 11/18/2023** | Effective Date of Endorsement **11/18/2022** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

**PREMIUM FULLY EARNED AT INCEPTION ENDORSEMENT**

In consideration of the premium charged, it is agreed that:

(1) As a condition precedent to coverage under this POLICY, it is understood and agreed that: (a) the entire premium for this POLICY shall be deemed fully earned and non-refundable as of the policy inception date set forth in Item II. of the Declarations; (b) this POLICY is subject solely to the terms, conditions, limitations and exclusions bound at the policy inception date set forth in Item II. of the Declarations, including any endorsements issued by the INSURER; and (c) the INSURER shall remain in possession of the full amount of the bound premium due to such INSURER which was negotiated and mutually agreed upon by the INSURER and the INSURED at the inception of the POLICY; accordingly, in the event that the terms of paragraphs (a), (b) and (c) are not met in full, this POLICY shall be void ab initio, in which case any and all premium payments shall be fully refunded and no coverage shall be provided.

(2) Clause 8, CANCELLATION, is deleted and replaced with the following:

8. CANCELATION

This POLICY may not be terminated other than by the INSURER 10 days after receipt by the company named in Item I of the Declarations of a written notice of termination from the INSURER for failure to pay a premium when due, unless the premium is paid within such 10-day period.

All other terms and conditions of this POLICY remain unchanged.

_____
                                    Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **BlockFi, Inc.** | | | **7** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DON** | **G71101320 001** | **11/18/2022 to 11/18/2023** | **11/18/2022** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

## Amendatory Endorsement – New Jersey

IF THERE IS ANY CONFLICT BETWEEN THE POLICY, OTHER ENDORSEMENTS TO THE POLICY AND THIS ENDORSEMENT, THE TERMS PROVIDING THE BROADEST COVERAGE INSURABLE UNDER APPLICABLE LAW SHALL PREVAIL.

Pursuant to New Jersey law, this POLICY cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the COMPANY.  The underwriting reasons or guidelines that an INSURER can use to cancel or nonrenew this POLICY are maintained by the INSURER in writing and will be furnished to the COMPANY and/or the COMPANY'S lawful representative upon written request.

This provision shall not apply to any POLICY which has been in effect for less than 60 days at the time notice of cancellation is mailed, unless the POLICY is a renewal POLICY.

It is agreed that:

1.  Clause 8 (Cancellation) is amended as follows:

    The following is added to subpart (b):

    The INSURER is not required to send notice of cancellation if the COMPANY has replaced coverage elsewhere or has otherwise specifically requested cancellation.

2.  The following clause is added to the POLICY:

    - **NONRENEWAL**

      If the INSURER elects not to renew this POLICY, it will mail written notice of nonrenewal by certified mail to the company named in Item I of the Declarations, and by first-class mail to the agent or broker of record, at the last mailing addresses known to the INSURER.  Notice of nonrenewal will state the reason(s) for nonrenewal and will be mailed at least 30 days, but not more than 120 days, before the end of the POLICY PERIOD.  Proof of mailing will be sufficient proof of notice.

      The INSURER is not required to send notice of nonrenewal if the COMPANY has replaced coverage elsewhere or has otherwise specifically requested termination.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**BlockFi, Inc.** | | | Endorsement Number<br>**8** |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G71101320 001** | Policy Period<br>**11/18/2022 to 11/18/2023** | Effective Date of Endorsement<br>**11/18/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Specific Matter Exclusion Endorsement

It is agreed that the following Clause is added:

- SPECIFIC MATTER EXCLUSION

    The INSURER shall not be liable for LOSS attributable to the following matters:

    o *George A. Popescu v. BlockFI Inc., Flori Marquez, and John Malarney*, or any other matter brought by George A. Popescu, or the estate, heirs, legal representatives, or assigns, of George A. Popescu, against the INSUREDS (herein the "SPECIFIC MATTER").

    Provided however, the INSURER shall not:

    i.   assert that any CLAIMS first made after inception of the POLICY are or will be deemed related to the SPECIFIC MATTER, other than an amendment to or expansion of the pleadings in the SPECIFIC MATTER; nor

    ii.  assert that, other than the SPECIFIC MATTER, any customer and/or client demands received by the INSUREDS for the return of funds, or any future litigation arising from such demands are related to the SPECIFIC MATTER.

    The INSURER further acknowledges that (1) any customer or client demands for the return of funds received by the INSUREDS prior to the inception of the POLICY but not instituted as a formal legal proceeding shall not be deemed CLAIMS, and (2) INSURER will not assert that any CLAIMS first made after inception of the POLICY are related to any such customer or client demands received before inception of the POLICY.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>**BlockFi, Inc.** | | | Endorsement Number<br>**9** |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G71101320 001** | Policy Period<br>**11/18/2022 to 11/18/2023** | Effective Date of Endorsement<br>**11/18/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or similar laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

PF-46422  (07/15)



# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **BlockFi, Inc.** | | | **10** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DON** | **G71101320 001** | **11/18/2022 to 11/18/2023** | **11/18/2022** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

### Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals; 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COVERAGE OF "ACTS OF TERRORISM" AS DEFINED BY THE REAUTHORIZATION ACT WILL BE PROVIDED FOR THE PERIOD FROM THE EFFECTIVE DATE OF YOUR NEW OR RENEWAL POLICY THROUGH THE EARLIER OF THE POLICY EXPIRATION DATE OR DECEMBER 31, 2027.  EFFECTIVE DECEMBER 31, 2027 THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT EXPIRES.

Terrorism Risk Insurance Act premium: $0.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**BlockFi, Inc.** | | | Endorsement Number<br>**11** |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G71101320 001** | Policy Period<br>**11/18/2022 to 11/18/2023** | Effective Date of Endorsement<br>**11/18/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Cap On Losses From Certified Acts Of Terrorism

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**CHUBB**®

# U.S. Treasury Department's Office
# Of Foreign Assets Control ("OFAC")
# Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



### Chubb Producer Compensation
### Practices & Policies

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.