**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. BLR 9004-1(b)**

| | |
|---|---|
| Rachel Ehrlich Albanese (#027542001)<br>**DLA PIPER LLP (US)**<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 335-4500<br>Facsimile: (212) 335-4501<br>Email: rachel.albanese@us.dlapiper.com<br><br>Stephen C. Matthews (#055801994)<br>**DLA PIPER LLP (US)**<br>51 John F. Kennedy Parkway, Suite 120<br>Short Hills, New Jersey 07078<br>Telephone: (973) 520-2550<br>Facsimile: (973) 520-2551<br>Email: stephen.matthews@us.dlapiper.com<br><br>Stuart M. Brown (#026641988)<br>**DLA PIPER LLP (US)**<br>1201 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 397-2336<br>Email: stuart.brown@us.dlapiper.com<br><br>*Attorneys for Movants Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company* | Stacey E. Rufe (admitted *pro hac vice*)<br>**WERNER AHARI MANGEL LLP**<br>2112 Pennsylvania Ave. NW<br>Suite 200<br>Washington, DC 20037<br>Telephone: (202) 599-1013<br>Email: srufe@wam.law |
| In re:<br><br>BLOCKFI INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan)<br>**Hearing Date: April 25, 2024 at 11:30 a.m. (ET)**<br>**Response Deadline: April 18, 2024 at 4:00 p.m. (ET)** |

# MOTION TO ENFORCE PLAN AND CONFIRMATION ORDER

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company (collectively, the "Movants") hereby submit this motion (the "Motion") for an order enforcing the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 1309] (as amended, the "Plan") and the Confirmation Order (defined below), which this Court entered on October 3, 2023.[2]  In support of the Motion, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1. Under the Plan and the Confirmation Order, the Wind-Down Debtors expressly assumed the Insurance Contracts for the benefit of the Debtors, their directors and officers, and their creditors by agreeing that those contracts "shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect." *See* Plan, Article V.F.  Yet the Amended Complaint filed by the Wind-Down Debtors against the D&O Insurers asserts prohibited causes of action for rescission and a declaratory judgment that the Policy is void *ab initio*.  *See* Remand Motion Ex. A, Am. Compl. ¶¶ 66-69, 100-109.  These claims violate the Plan and Confirmation Order, and the Wind-Down Debtors' efforts should be rejected.

2. The Amended Complaint also seeks to avoid and recover the premium payment under the Policy and related damages.  *See id.* ¶¶ 70-99, 110-123.  These claims are similarly barred by the plain language of the Plan and Confirmation Order, as well as the Wind-Down Debtors' assumption of the Policy.  Courts in this and other circuits have consistently held that a

---

[2]  *See Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [ECF No. 1660] (the "Confirmation Order").

[3]  Capitalized terms not defined in the Preliminary Statement are defined below.

2

debtor or trustee, by assuming an executory contract, waives its right to attempt to overturn that assumption by later attacking the contract on fraudulent transfer grounds. The doctrine of judicial estoppel prevents a party from engaging in "cynical gamesmanship" by asserting one position and then reversing that position to "suit the exigencies of the moment," as the Wind-Down Debtors attempt to do here.[4]

3. For these reasons and as further described below, the Wind-Down Debtors' attempts to circumvent the Plan and Confirmation Order should be rejected, and the terms of the Plan and Confirmation Order should be enforced.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Further, the Confirmation Order provides that the Court will "retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including (i) the matters set forth in Article XI of the Plan and (ii) matters arising under and subject to the Gatekeeper Provision." Confirmation Order ¶ 146.

5. It is axiomatic that this Court has jurisdiction to interpret its own orders, including the terms of a confirmed plan." *In re SemCrude, L.P.*, No. 08-11525, 2011 WL 4711891, at *5, *8 (Bankr. D. Del. Oct. 7, 2011).

6. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has jurisdiction to enter a final order on this Motion. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[4] *See, e.g., In re Vision Metals, Inc.*, 325 B.R. 138, 147 (Bankr. D. Del. 2005).

3

## FACTUAL BACKGROUND

**I.    The Chapter 11 Cases and the D&O Insurance Policy**

7.    Prior to the Petition Date (defined below), certain insurers, including Berkley Insurance Company, Arch Insurance Company, U.S. Specialty Insurance Company, XL Specialty Insurance Company, Berkshire Hathaway Specialty Insurance Company, Axis Insurance Company, Ace American Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Endurance American Specialty Insurance Company, and Berkshire Hathaway Specialty Insurance Company (collectively, the "D&O Insurers") issued a CODA Premier Directors & Officers Liability Policy, Policy No. G71101320 001, with a policy period from November 18, 2022 to November 18, 2023 (the "Policy").

8.    On November 28, 2022 (the "Petition Date"), BlockFi Inc. ("BlockFi") and eight of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing their chapter 11 cases, captioned *In re: BlockFi Inc., et al.*, Case No. 22-19361 (MBK) (Bankr. D.N.J.) (the "Bankruptcy Cases"). The Bankruptcy Cases remain pending before the Honorable Michael Kaplan, Chief U.S.B.J., in Trenton, New Jersey (the "Bankruptcy Court").

9.    BlockFi filed the Plan on August 3, 2023, and the Court entered the Confirmation Order on October 3, 2023. The Plan went effective on October 24, 2023.[5]

10.   The Confirmation Order provides that the Bankruptcy Court "shall, to the full extent set forth in the Plan and otherwise permitted by applicable law, retain jurisdiction over all

---

[5]    *See Notice of (I) Entry of the Order (A) Approving the Disclosure Statement on a Final Basis and (B) Confirming the Third Amended Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) and (II) Occurrence of the Effective Date* [ECF No. 1788].

matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . ." Confirmation Order ¶ 146.

## II. Assumption of the Insurance Contracts[6]

11. The Plan includes specific provisions protecting "D&O Liability Insurance Policies," including:

> all insurance policies issued or providing coverage to the Debtors, the Wind-Down Debtors, or the Estates for directors', managers', officers', members', and trustees' liability (including any 'tail policy') and all agreements, documents, or instruments relating thereto.

Plan ¶93. The Policy is one such D&O Liability Insurance Policy.

12. In the section regarding "Treatment of Executory Contracts and Unexpired Leases," the Plan expressly, and in great detail, spells out the protective treatment afforded to Insurance Contracts, including the Policy and other D&O Liability Insurance Policies:

> Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) each of the Insurance Contracts[7] (including, without limitation, any D&O Liability Insurance Policies) which identify one or more of the Debtors as first named insured or counterparty thereto shall be assumed, in their entirety by the applicable Wind-Down Debtor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 105 and 365 of the Bankruptcy Code, (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Insurance Contracts regardless of when any such obligations arise, and all Insurance Contracts shall revest in the applicable Wind-Down Debtors, unaltered; (c) all Insurance Contracts and all legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or entity, as applicable, under any Insurance Contracts, whether arising before or after the

---

[6] Capitalized terms not otherwise defined are defined as in the Plan.
[7] "Insurance Contracts" are defined as "all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto, including, without limitation, all D&O Liability Insurance Policies." Plan, ¶ 151.

5

> Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect . . . ; [and] (d) the Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy"), and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject in all respects to the terms and conditions thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date . . ."

Plan, Article V.F.

13. The Confirmation Order is a final order and has not been stayed or appealed. It provides that "[t]he Debtors shall continue to satisfy their obligations under their insurance policies in full and continue such programs in the ordinary course of business." Confirmation Order, ¶ 87.

14. The Confirmation Order also provides:

> Without ruling as to whether the assumption of an insurance policy was required, for the avoidance of doubt, on the Effective Date: (a) the Debtors shall be deemed to have assumed, to the extent necessary, each D&O Liability Insurance Policy (including, without limitation, any 'tail policy' and all agreements, documents, or instruments related thereto), with the Wind-Down Debtors being authorized to pursue any proceeds thereof on behalf of the Debtors or the Wind-Down Debtors; and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Wind-Down Debtor(s) unaltered.
> . . .
> The Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any 'tail policy' and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date.

Confirmation Order ¶¶ 87-88. These protections apply to the Policy.

15. The Debtors' *Notice of Filing of Third Amended Plan Supplement* [ECF No. 1951] (the "Plan Supplement") includes a "Schedule of Revised Assumed Executory Contracts." The schedule provides for the assumption of "[a]ll policies and all amendments, modifications, schedules, and other attachments thereto, to the extent applicable" with Ace American Insurance

6

Co. and Relm Insurance, Ltd. The Policy was issued by Ace American Insurance Company (as well as additional insurers[8] under a quota share arrangement) and was therefore assumed.

**III.     New Jersey State Court Action and Removal to this Court**

16.     On January 3, 2024, BlockFi as the Wind-Down Debtors filed a complaint (as amended on February 13, 2024, the "Amended Complaint") in the New Jersey Superior Court Law Division: Hudson County (the "New Jersey State Court"), commencing Case No. HUD-L-000025-24 ("New Jersey State Court Action").

17.     The Amended Complaint asserts causes of action for (1) Declaratory Judgment, seeking a declaration that the D&O Policy is void *ab initio* and that the Plaintiff is entitled to a return of the premium; (2) Avoidance and Recovery of Fraudulent Transfers – N.J.S.A. 25:2-27(a)&(b) and 11 U.S.C. § 544; (3) Avoidance and Recovery of Fraudulent Transfers – N.J.S.A. 25:2-25(a)&(b); and (4) Breach of Contract. In the alternative, Plaintiff raises a fifth cause of action for Rescission of the D&O Policy and a sixth cause of action for Illusory Coverage – Unjust Enrichment.

18.     On February 15, 2024, Movant Berkley Insurance Corporation filed a *Notice of Removal Under 28 U.S.C. 1334(b) and 28 U.S.C. 1452(a) of Berkley Insurance Company*, which removed the New Jersey State Court Action to this Court and commenced adversary proceeding no. 24-01067 (MBK) (the "Adversary Proceeding"). On March 13, 2024, the Wind-Down Debtors filed a motion seeking to remand the Adversary Proceeding to the New Jersey State Court [ECF No. 2181] (the "Remand Motion"). A hearing on the Remand Motion is scheduled for April 25, 2024.

---

[8]     The additional insurers include but are not limited to Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company

**ARGUMENT**

**I.  The Court should enforce the Plan and Confirmation Order.**

19. The Amended Complaint seeks relief that is contrary to the plain language of the Plan and Confirmation Order. As set forth above, both the Plan and Confirmation Order contain numerous provisions making clear that the Debtors (or Wind-Down Debtors, as applicable) assumed the Policy under the Plan and the Plan Supplement. The relief the Wind-Down Debtors seek in the Amended Complaint—rescission of the Policy and recovery of the premium as a fraudulent transfer—are incompatible with assumption of a contract under section 365 of the Bankruptcy Code.[9]

**A. Plaintiff cannot seek to avoid payments made under an assumed contract as fraudulent transfers.**

20. The Debtor assumed the Insurance Contracts, including the Policy, consistent with the above-quoted terms of the Plan and Confirmation Order. The Wind-Down Debtors' attempt to clawback the premium payment under the Policy as a fraudulent transfer or under related theories of unjust enrichment and breach of contract violates the Plan provisions expressly providing for the assumption of the Policy.

21. Courts in this and other circuits have found that payments cannot be avoided as fraudulent transfers where the debtor previously assumed the contract. For example, in *In re Network Access Solutions, Corp.*, the unsecured creditors' committee commenced an adversary proceeding seeking to recover compensation paid to the debtor's CEO. 330 B.R. 67, 71-72 (Bankr. D. Del. 2005). The court rejected this argument, ruling that in approving a motion to assume the

---

[9] Under section 365 of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume any executory contract . . . of the debtor." 11 U.S.C. § 365(a). The debtor must also cure any defaults under the contract, compensate (or provide adequate assurance that it will promptly compensate) the counterparty for any actual pecuniary losses resulting from such default, and provide adequate assurance of future performance under the contract. 11 U.S.C. § 365(b).

8

relevant employment agreements, it had found that the debtor "was acting on an informed basis, in good faith, and with the honest belief that the assumption of the employment agreements was in the best interest of [the debtor] and the estate." *Id.* at 75. Having found that the assumption of the agreements was an exercise of the debtor's sound business judgment, the court held that its prior finding was the law of the case. It therefore concluded that the committee's claims for fraudulent transfer—both actual and constructive—were precluded by the debtor's assumption of the prepetition employment agreements, and that assumption would not have been an exercise of sound business judgment if the debtor did not receive reasonably equivalent value for the payments made under the contract. *Id.* at 76. The court found that section 365 of the Bankruptcy Code requires all amounts due under a contract to be paid in order for the contract to be assumed and further noted that "a pre-petition payment cannot be cured if it is to be avoided." *Id.* (citing *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). The court further noted that "if Congress had intended to deprive contracting parties of money they received prepetition, why would Congress require that all defaults be cured prior to assumption?" *Id.* (quoting *In re Superior Toy & Mfg. Co.*, 78 F.3d at 1174). As to actual fraud, the court found that "[a]n agreement cannot be in a debtor's sound business judgment if the transfers under the agreement were made with the actual intent to hinder, delay and defraud creditors." *In re Network Access Solutions, Corp.*, 330 B.R. at 77.

22. Similarly, in *In re Vision Metals, Inc.*, 325 B.R. 138 (Bankr. D. Del. 2005), the court held that when the debtor assumed a construction agreement in its bankruptcy case, its right to pursue fraudulent transfer claims against the counterparty was waived. There, the debtor brought an adversary proceeding to recover pre- and post-petition payments to a creditor that agreed to construct equipment for the debtor's business. The debtor argued that the equipment it

9

paid for ended up being worthless because it did not function as intended. *Id.* at 145. The creditor sought to dismiss the complaint on the grounds that assumption of the agreement precluded the debtor from bringing a fraudulent conveyance action. *Id.* at 145-46. The court rejected the debtor's argument that the underlying agreement was itself a fraudulent transfer, citing the debtor's assertions, which the court relied on, that assumption of the agreement was in the best interests of the debtor and its estate. *Id.* at 147. The debtor could not then seek to overturn the results of the assumption by arguing the contract was of little or no value. *Id.* The court cited the doctrine of judicial estoppel, noting that it "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.* (quoting *Teledyne Indust., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990)).

23.     Here, the Wind-Down Debtors assumed the Policy under the Plan and Confirmation Order. The Confirmation Order found that "[t]he Debtors' decisions to assume or reject certain Executory Contracts and Unexpired Leases . . . are reasonable exercises of the Debtors' business judgment." Conf. Order ¶ 20(i).[10] As in the cases cited above, the Wind-Down Debtors waived

---

[10]     The Plan is a contract and should be interpreted as such. *See In re St. Mary Hosp.*, 155 B.R. 345, 348 (Bankr. E.D. Pa. 1993) ("[A] reorganization plan is and can be analyzed as a contract among the Debtor's creditors, and therefore must be enforced and interpreted under contract law principles."). Further, contract law principles dictate that specific provisions control over general ones with respect to the subject matter of those provisions. *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Apr. 2, 2024) [ECF No. 9084]. Here, among other similar provisions described above, the Plan states specifically that "[n]otwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order . . . or any other order of the Bankruptcy Court . . . (a) each of the Insurance Contracts (including, without limitation, any D&O Liability Insurance Policies) which identify one or more of the Debtors as first named insured or counterparty thereto shall be assumed, in their entirety by the applicable Wind-Down Debtor . . .[and] (d) the Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any 'tail policy'), and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject in all respects to the terms and conditions thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date . . ." *See* Plan, art. V.F. This specific language trumps any potentially conflicting provisions in the Plan and should be enforced according to its terms. *See In re Mallinckrodt plc*, Case No. 20-12522 [ECF No. 9084].

10

the right to seek to avoid premium payments under the Policy when it assumed the Policy in its business judgment. It cannot now seek to overturn the results of that assumption by "arguing the opposite to suit an exigency of the moment." *See id.*; *In re Centrix Fin., LLC*, 434 B.R. 880, 886 (Bankr. D. Colo. 2010) (agreeing with "a majority of courts [that] have recognized the Contract Assumption Defense as a complete bar to the trustee's avoidance powers" and noting that the defense "applies with greater force" to fraudulent conveyance claims than other avoidance claims).

### B. The Wind-Down Debtors cannot seek to rescind the Policy they previously assumed.

24. For the same reason the Wind-Down Debtors cannot seek to recover premium payments under the Policy as fraudulent transfers or under other theories of recovery, they cannot seek to rescind the Policy. As described above, the Wind-Down Debtors assumed the Policy under the plain language of the Plan and Confirmation Order. The Wind-Down Debtors now seek to rescind the Policy in contravention of that plain language. *See In re A. Tarricone, Inc.*, 70 B.R. 464, 466 (Bankr. S.D.N.Y. 1987) ("If the debtor wishes to pursue its cause of action for a rescission of the lease it should obviously not assume it in this court."). In addition, "[a] party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as 'affirmance' and has the effect of ratifying the contract." Restatement (Second) of Contracts § 380 (1981), cmt. a. Upon ratification, "the affirming party is bound as from the outset and the other party continues to be bound." *Id.* Further, "[a]ssumption is in effect a decision to continue performance. It requires the debtor to cure most defaults and continues the parties' rights to future performance under the contract or lease." *In re Penn Traffic Co.*, 524 F.3d 373, 378 (2d Cir. 2008).

25. Here, BlockFi was aware of the Policy terms when it entered into the Policy and paid the premium in November 2022. It then assumed the Policy almost one year later under

11

section 365 of the Bankruptcy Code in accordance with the Plan and Confirmation Order, which provided explicitly that BlockFi would perform its obligations under the Insurance Contracts, including the Policy, and that it would not seek to "terminate or otherwise reduce the coverage" in any way. Now, months after the effective date of the Plan, the Wind-Down Debtors seek rescission of a Policy they explicitly assumed and agreed not to cancel or reduce. This relief is directly in contravention with the Plan and the Confirmation Order and, accordingly, should not be permitted.

## WAIVER OF MEMORANDUM OF LAW

The Movants respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Movants rely is set forth in this Motion and it does not raise any novel issues of law.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Movants respectfully request that this Court (i) enter an order enforcing the Plan and Confirmation Order and (ii) grant such other and further relief as the Court may deem just and proper.

*[remainder of this page intentionally left blank]*

| | |
|---|---|
| Dated: April 4, 2024<br>New York, New York | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>*/s/ Rachel Ehrlich Albanese*<br>Rachel Ehrlich Albanese (#027542001)<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 335-4500<br>Facsimile: (212) 335-4501<br>Email: rachel.albanese@us.dlapiper.com<br><br>Stephen C. Matthews (#055801994)<br>51 John F. Kennedy Parkway, Suite 120<br>Short Hills, New Jersey 07078<br>Telephone: (973) 520-2550<br>Facsimile: (973) 520-2551<br>Email: stephen.matthews@us.dlapiper.com<br><br>Stuart M. Brown (#026641988)<br>1201 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 397-2336<br>Email: stuart.brown@us.dlapiper.com<br><br>- and -<br><br>**WERNER AHARI MANGEL LLP**<br>Stacey E. Rufe (admitted *pro hac vice*)<br>2112 Pennsylvania Ave. NW<br>Suite 200<br>Washington, DC 20037<br>Telephone: (202) 599-1013<br>Email: srufe@wam.law<br><br>*Attorneys for Movants Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company* |