**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1(b)**

| | |
|---|---|
| In re:<br>BLOCKFI INC., *et al.*,<br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered under a Confirmed Plan) |
| BLOCKFI INC. AS THE WIND DOWN DEBTORS,<br>　　　　　　Plaintiff,<br>v.<br>ACE AMERICAN INSURANCE COMPANY, ARCH INSURANCE COMPANY, AXIS INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., U.S. SPECIALTY INSURANCE COMPANY, XL SPECIALTY INSURANCE COMPANY,<br>　　　　　　Defendants. | Adv. Proc. No. 24-01067 (MBK) |

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA OPPOSITION TO
WIND-DOWN DEBTOR BLOCKFI INC'S MOTION
FOR AN ORDER REMANDING TO STATE COURT**

**Table of Contents**

I.   **THE PLAN AND CONFIRMATION ORDER FORBID THE REMEDIES BLOCKFI SEEKS HERE, AND THE INTERPRETATION OF THOSE DOCUMENTS IS CENTRAL TO THE RELIEF SOUGHT**..............................................................................1

II.  **BLOCKFI'S RESCISSION ACTION SEEKS TO TERMINATE THE POLICY, CONTRARY TO THE TERMS OF THE PLAN AND THE CONFIRMATION ORDER** ..............................................................................................................4

III. **THE BANKRUPTCY COURT RETAINED JURISDICTION OVER BLOCKFI'S ATTEMPT TO VIOLATE THE PLAN AND CONFIRMATION ORDER, SO IT IS THE CORRECT FORUM FOR THE RESCISSION ACTION**..........................5

   a.   **The Plan and Confirmation Order Retained Jurisdiction** ...............5

   b.   **The Bankruptcy Court Has Exclusive Jurisdiction**..........................7

IV.  **THE BANKRUPTCY COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION** ..................................................................................................9

   a.   **The Court is Not Required to Abstain From Exercising Jurisdiction**.............9

   b.   **Voluntary Abstention is Not Appropriate** .........................................13

V.   **CONCLUSION** ...............................................................................................14

## Table of Authorities

**Cases**
*Acands, Inc. v. Travelers Cas. and Sur. Co.,* 435 F.3d 252 (3rd Cir. 2006). ......................8, 11
*Allied Mech. and Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co., Inc.*, 62 B.R. 873
   (Bankr. S.D.N.Y. 1986) ...............................................................................................12
B*alcor/Morristown Ltd. Partnership v. Vector Whippany Assoc.*, 181 B.R. 781 (D.N.J. 1995)....14
*Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992)......................................... 9
*Calascibetta v. J.H. Cohn LLP*, 2011 WL 2224179 (D.N.J. June 6, 2011). ...............................12
*Carlton v. Baww, Inc.*, 751 F.2d 781 (5th Cir. 1985) ........................................................10
*Empery Tax Efficient, LP v. MusclePharm Corp.,* 2023 WL 2580006 (S.D.N.Y. Mar. 21, 2023) 10
*Faltas-Fouad v. St. Mary's Hosp., Passaic, N.J.*, 2015 WL 260907 (D.N.J. Jan. 20, 2015) ........ 8
*Donaldson v. Bernstein,* 104 F.3d 547 (3rd Cir. 1997)................................................................11
*In Re G-I Holdings, Inc.*, 564 B.R. 217 (Bankr. D.N.J. 2016) .......................................................13
*In re LTL Mgt., LLC*, 2023 WL 3136666 (Bankr. D.N.J. Apr. 27, 2023) ....................................... 8
*In re Manton*, 585 B.R. 630 (Bankr. N.D. Ga. 2018) ...................................................................10
*In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111 (Bankr. D.N.J. 2003)........................................13
*In re Resorts Intern., Inc.*, 372 F.3d 154 (3rd Cir. 2004). ..........................................................7, 8
I*n re Semcrude, L.P.*, 2010 WL 5140487 (Bankr. D. Del. Dec. 13, 2010). ..................................12
*In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3rd Cir. 2007).................................................... 8
*In re W.R. Grace & Co.*, 900 F.3d 126 (3rd Cir. 2018)............................................................... 7
*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*,
   692 F.3d 283 (3rd Cir. 2012) ...............................................................................................7, 8
*Prudential Ins. Co. of Am. v. RBS Fin. Products, Inc.*, 2013 WL 5913654, at *6 (D.N.J. Oct. 30,
   2013) ...................................................................................................................................12
*Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) ..........................................................................9, 10
*Reynolds v. Behrman Capital IV L.P.*, 592 B.R. 892, 900 (N.D. Al. 2018)...................................11
S*halom Torah Centers v. Phila. Indem. Ins. Companies*, 2011 WL 1322295 (D.N.J. Mar. 31,
   2011) ...................................................................................................................................13
*Stoe v. Flaherty,* 436 F.3d 209 (3d Cir. 2006), as amended (Mar. 17, 2006) ..........................9, 11
*U.S. Tr. v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552 (3rd Cir. 1999)................................. 8

**Statutes**
11 U.S.C. § 105(a) ....................................................................................................... 6
11 U.S.C. § 1142(a) .................................................................................................... 6
28 U.S.C. § 1334(c)(2). ............................................................................................... 9

National Union Fire Insurance Company of Pittsburgh, Pa. ("Nation Union") opposes the wind-down debtor's ("BlockFi") motion to remand this action (the "Rescission Action") through which BlockFi seeks to directly violate the terms of the confirmed Plan, over which this Court has expressly retained jurisdiction. The appropriate – and only – forum to adjudicate BlockFi's attempt to violate the confirmed Plan is this Bankruptcy Court.

The Plan specifically provides that "the Debtors or the Wind-Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy." Yet, this is precisely what BlockFi seeks to do. BlockFi seeks a declaration that the D&O Liability Insurance Policy is void *ab initio*, BlockFi seeks the return of the consideration paid for the D&O Liability Insurance Policy, and BlockFi seeks the rescission of the D&O Liability Insurance Policy. These causes of action precisely seek relief the Plan confirmed by this Court forbids.

This Court's Confirmation Order expressly retains jurisdiction "over all matters arising out of, or related to, the Chapter 11 Cases and the Plan," and BlockFi's motion to remand the Rescission Action to New Jersey State Court must be denied.

I. **THE PLAN AND CONFIRMATION ORDER FORBID THE REMEDIES BLOCKFI SEEKS HERE, AND THE INTERPRETATION OF THOSE DOCUMENTS IS CENTRAL TO THE RELIEF SOUGHT**

1. On November 28, 2022, BlockFi and eight of its affiliates filed voluntary petitions for relief under Chapter 11 in the United States Bankruptcy Court for the District of New Jersey, styled *In re: BlockFi Inc., et al.*, Case No. 22-19361 (the "Bankruptcy Cases"). On August 3, 2023, BlockFi filed its *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"). [ECF Doc. No. 1309]. The Plan, which was confirmed by the Bankruptcy Court on October 3, 2023, expressly protects and preserves BlockFi's D&O Liability Insurance Policies. Article V.F of the Plan, Insurance Policies and Surety Bonds, provides:

>Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court . . . . the Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy"), and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject in all respects to the terms and conditions thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date.

[ECF Doc. No. 1309, Article V.F.].

The Plan defines "D&O Liability Insurance Policies" as:

>all insurance policies issued or providing coverage to the Debtors, the Wind-Down Debtors, or the Estates for directors', managers', officers', members', and trustees' liability (including any "tail policy") and all agreements, documents, or instruments relating thereto.

[ECF Doc. No. 1660, ¶93].

2.     The defendants in the Rescission Action, Berkley Insurance Company, Arch Insurance Company, U.S. Specialty Insurance Company, XL Specialty Insurance Company, Axis Insurance Company, ACE American Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., Endurance American Specialty Insurance Company, and Berkshire Hathaway Specialty Insurance Company (collectively, the "D&O Insurers"), issued a CODA Premier Directors & Officers Liability Policy, Policy No. G71101320 001, with a policy period from November 18, 2022 to November 18, 2023 (the "Policy"). The Policy was issued to "BlockFi, Inc." (the Debtor) and the Policy defines several categories of "Insureds" which include "all natural persons who were, now are, or shall be. . . duly elected or appointed directors . . ., trustees, governors, officers, management committee members, . . ." of the Debtor. Accordingly, the Policy is a "D&O Liability Insurance Policy" as defined under the Plan, and BlockFi must treat it in accordance with the terms, conditions, and obligations of the confirmed Plan.

BlockFi is prohibited from attempting to terminate or otherwise reduce the directors' and officers' insurance coverage.

3. On October 3, 2023, the Bankruptcy Court ordered the confirmation of the Plan (the "Confirmation Order"). [ECF Doc. No. 1660]. In the Confirmation Order, this Court prohibited BlockFi from attempting to terminate or otherwise reduce the directors' and officers' insurance coverage. [ECF Doc. No. 1660]. The Confirmation Order provides that BlockFi "shall continue to satisfy their obligations under their insurance policies in full and continue such programs in the ordinary course of business. Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan." [ECF Doc. No. 1660, ¶ 87]. Like the Plan, the Confirmation Order also expressly provides that BlockFi, "shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy in effect prior to the Effective Date." [ECF Doc. No. 1660, ¶ 88]. The D&O Policy, which incepted on November 18, 2022, was in effect when BlockFi filed the Plan on August 3, 2023, and when this Court issued its Confirmation Order on October 3, 2023. Accordingly, BlockFi was fully aware of the terms and obligations of the D&O Policy well before the Plan was proposed or confirmed. Since the Policy was a D&O Liability Insurance Policy in effect prior to the Effective Date[1], the Plan and this Court's Confirmation Order expressly forbid BlockFi from terminating or otherwise reducing coverage under the Policy.

4. The Confirmation Order prohibits BlockFi from seeking the precise relief demanded in the Rescission Action. Specifically, the Confirmation Order provides that "any current and former directors, officers, managers, and employees of the Debtors, who served in such capacity at any time before or after the Effective Date, shall be entitled to the full benefits of" the Policy. [ECF Doc. No. 1660, ¶ 88]. The

---

[1] According to the Plan, "Effective Date" means the "date that is the first Business Day after the Confirmation Date on which (a) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and(c) the Debtors declare the Plan effective. [ECF Doc. No. 1660, p. 101].

3

Plan and Confirmation Order directly prevent BlockFi from terminating or otherwise reducing coverage under the Policy.

5. The Confirmation Order also provides that, as of the Effective Date, BlockFi "shall be deemed to have assumed, to the extent necessary, each D&O Liability Insurance Policy." [ECF Doc. No. 1660, ¶ 87]. Accordingly, it has already been determined that BlockFi assumed the Policy and any attempted rescission would violate the Confirmation Order. While the Plan and Confirmation Order clearly and unambiguously preclude BlockFi from terminating or otherwise reducing coverage under the Policy, BlockFi directly violated this Court's Confirmation Order by filing the Rescission Action, in state court, requesting *exactly* what this Court's Confirmation Order prohibits – termination or reduction of the coverage under the Policy.

## II.  BLOCKFI'S RESCISSION ACTION SEEKS TO TERMINATE THE POLICY, CONTRARY TO THE TERMS OF THE PLAN AND THE CONFIRMATION ORDER

6. On January 3, 2024, BlockFi filed the Rescission Action in New Jersey Superior Court, Hudson County. On February 13, 2024, BlockFi filed an amended complaint, again in New Jersey State Court (the "Amended Complaint"). The D&O Insurers removed the Rescission Action to this Court on February 15, 2024. [ECF Doc. No. 2130].

7. The Rescission Action is entirely directed at terminating or otherwise reducing coverage under the D&O Policy – relief that is forbidden under the Plan and Confirmation Order.[2] BlockFi seeks to have the Policy declared void *ab initio*. Amended Complaint at ¶ 69 ("Plaintiff seeks a declaration that the Policy is void *ab initio*"). BlockFi seeks to have the premium for the Policy returned, thereby causing the Policy to fail for lack of consideration, under several legal theories. Amended Complaint at ¶ 79 and ¶ 87 (fraudulent transfer), ¶ 98 (breach of contract), and ¶ 123 (unjust enrichment). BlockFi also seeks to have the Policy rescinded. Amended Complaint at ¶ 109 ("Plaintiff is entitled to rescission of the Policy").

---

[2] National Union asserts that the allegations in the Rescission Action are entirely without merit, and does not argue the merits of the allegations in this opposition.

8. The Rescission Action's causes of action seek to void the Policy, thereby "terminat[ing] or otherwise reduc[ing] the coverage under any D&O Liability Insurance Policy" which is a direct violation of the Plan and Confirmation Order.

### III. THE BANKRUPTCY COURT RETAINED JURISDICTION OVER BLOCKFI'S ATTEMPT TO VIOLATE THE PLAN AND CONFIRMATION ORDER, SO IT IS THE CORRECT FORUM FOR THE RESCISSION ACTION

#### a. The Plan and Confirmation Order Retained Jurisdiction

9. The Plan expressly provides that the Bankruptcy Court retains exclusive jurisdiction over all matters arising out of, or related to, the Plan. This broad retention of jurisdiction broadly retains jurisdiction to "hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases: . . . (c) anything that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan and the Confirmation Order; …." Specifically, Article XI of the Plan, Retention of Jurisdiction, provides that:

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code (other than those matters administered in any Bermuda Scheme of Arrangement, Bermuda Liquidation, Bermuda Liquidating Trust, or other Bermuda Implementation Mechanism, as applicable, and subject to the Restructuring Transactions Memorandum), including jurisdiction to:
>
> \*    \*    \*
>
> 10. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, exculpation, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, exculpation, and other provisions; (c) anything that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan and the Confirmation Order; or (d) related to section 1141 of the Bankruptcy Code;
>
> \*    \*    \*

20. hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or the Judicial Code.

[ECF Doc. No. 1309, pp. 73-74].

10.     The Confirmation Order goes on to provide that the Bankruptcy Court "shall, to the full extent set forth in the Plan and otherwise permitted by applicable law, retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . ." [ECF Doc. No. 1660, ¶ 146].

11.     Section 11 U.S.C. § 105(a), which the Confirmation Order references in maintaining the Bankruptcy Court's jurisdiction, provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

12.     The Confirmation Order also cites 11 U.S.C. § 1142(a), in support of the Bankruptcy Court's authority to retain jurisdiction, which provides:

> Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

13.     Pursuant to the Confirmation Order, BlockFi, as the "Wind-Down Debtor", was ordered to carry out the Plan.[3] The Plan specifically provides that "[a]s soon as practicable *the Wind-Down Debtors shall take such action* as the Wind-Down Debtors may determine to be necessary or desirable *to carry out the purposes of the Plan*." [ECF Doc. No. 1600, ¶ 67] (emphasis added).

---

[3] The Rescission Action asserts that after the Plan became effective on October 24, 2023, the BlockFi "Debtors" became the "Wind-Down Debtors," an entity *organized for the purpose of carrying out the Plan*. Amended Complaint at ¶ 11.

14. This Court explicitly and broadly retained jurisdiction over all matters related to enforcement of the Plan and its own Confirmation Order. Additionally, pursuant to Section 105(a), this Court has the jurisdictional authority to enforce or implement the Plan and its own Confirmation Order. Since the Rescission Action conflicts with the implementation of the Plan, and is in direct conflict with BlockFi's obligations under the Plan, this Court retains jurisdiction for this action pursuant to the Plan and Confirmation Order and as a matter of law. The Rescission Action is "related to" the Plan and this Court's Confirmation Order (the Rescission Action seeks to directly violate both the Plan and Confirmation Order). Therefore, the Bankruptcy Court has retained jurisdiction, and the Rescission Action should not be remanded to state court.

### b. The Bankruptcy Court Has Exclusive Jurisdiction

15. In establishing "related to" jurisdiction, bankruptcy courts have been provided "comprehensive jurisdiction" to deal efficiently and expeditiously with matters connected to the bankruptcy estate. *In re Resorts Intern., Inc.*, 372 F.3d 154, 163-64 (3rd Cir. 2004). Binding Third Circuit authority holds that proceedings are "related to" a bankruptcy action when the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3rd Cir. 2012) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), overruled in part by *Things Remembered, Inc. v. Petrarca*, 516 U.S 124, 124-25 (1995)).

16. The Third Circuit has consistently held that a proceeding is "related to" a Chapter 11 proceeding if "the outcome of that proceeding could <u>conceivably</u> have any effect on the estate being administered in bankruptcy." *In re W.R. Grace & Co.*, 900 F.3d 126, 139 (3rd Cir. 2018) (quoting *Pacor*, 743 F.2d at 994) (emphasis added); *see also Nuveen Mun.* 692 at 294. (holding that conceivability is the

7

key inquiry in determining "related to" jurisdiction). Certainty or the likelihood of effect on the bankruptcy estate is not a requirement to establish "related to" jurisdiction. *Nuveen*, 692 F.3d at 294.

17. The Bankruptcy Court for the District of New Jersey has specifically held that actions related to the depletion of the debtor's insurance coverage has a "conceivable effect" on the bankruptcy estate and thus "related to" jurisdiction is proper. *In re LTL Mgt., LLC*, 2023 WL 3136666, at *5 (Bankr. D.N.J. Apr. 27, 2023). Additionally, the Third Circuit treats the debtor's insurance policies as part of the bankruptcy estate's property. *Acands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252, 260 (3rd Cir. 2006).

18. Critically, bankruptcy jurisdiction is not eliminated after a plan has been confirmed. *In re Resorts Intern.*, 372 F.3d at 165. The Third Circuit has held that post-confirmation bankruptcy court jurisdiction is proper when "there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *Id.* at 168-69; *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 258 (3rd Cir. 2007). The Third Circuit also held post-confirmation jurisdiction is proper when the action directly relates to the debtor's liabilities and could impact the handling and administration of the estate. *U.S. Tr. v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 556 (3rd Cir. 1999); *Faltas-Fouad v. St. Mary's Hosp., Passaic, N.J.*, 2015 WL 260907, at *3 (D.N.J. Jan. 20, 2015) (holding that a contract that was rejected during the bankruptcy process is "related to" a post-confirmation case).

19. This Bankruptcy Court is the proper forum to adjudicate the Rescission Action because the Rescission Action exclusively raises issues that are "related to" the interpretation and enforcement of the Plan and this Court's Confirmation Order. The Plan and Confirmation Order prohibit BlockFi from terminating or otherwise reducing insurance coverage for directors and officers. It is indisputable that BlockFi is seeking to do ***exactly*** what the Plan and Confirmation Order prohibits. Since the Rescission

8

Action directly involves the implementation, consummation, execution, interpretation, enforcement or administration of the Plan, there is a "close nexus" to the bankruptcy proceeding. Accordingly, BlockFi's Rescission Action is "related to" BlockFi's bankruptcy proceeding and is within the Bankruptcy Court's jurisdiction.

IV. **THE BANKRUPTCY COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION**

20. "Because district courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them' . . . there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Rahl v. Bande*, 316 B.R. 127, 136 (S.D.N.Y. 2004). In its motion, BlockFi misstates the legal standard by stating that the removing party has a "heavy burden of persuasion" to show that removal is proper. [Motion at ¶ 23]. However, this standard was stated in the context of a removing party having to demonstrate that a non-diverse defendant was fraudulently joined. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). It does not apply here.

   a. <u>**The Court is Not Required to Abstain From Exercising Jurisdiction**</u>

21. BlockFi incorrectly argues that this Court must abstain from jurisdiction pursuant to 28 U.S.C. § 1334(c)(2). A court must abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(2) only if all of the following elements are satisfied:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

This Court is in no way restrained from exercising its jurisdictional authority over this action.

22. The burden of proving each of the five factors above, and the right to mandatory abstention, <u>is on the party seeking remand</u>. *Stoe v. Flaherty*, 436 F.3d 209, n.5 (3d Cir. 2006), as amended (Mar. 17, 2006) (emphasis added). BlockFi has failed to meet this burden.

9

23. BlockFi's Rescission Action fails to meet the first element because it asserts a federal cause of action under § 544(b) (and, implicitly, seeks to recover the premium under 11 U.S.C. § 550). Such claims have been held to involve a federal question. *See Rahl*, 316 B.R. at 136-37 ("The mere fact that federal law incorporates state law does not defeat federal question jurisdiction."). In these situations a court can exercise supplemental jurisdiction over the remaining claims. *Id; see also Carlton v. Baww, Inc.*, 751 F.2d 781, 787 (5th Cir. 1985) ("A proceeding by a trustee to void a fraudulent conveyance clearly 'arises under title 11.'"); *In re Manton*, 585 B.R. 630, 641 (Bankr. N.D. Ga. 2018) ("Here, the Fraudulent Conveyance Action is a core proceeding in bankruptcy because (1) fraudulent conveyance is specifically listed as a core proceeding under 28 U.S.C.S. § 157(b)(2), and (2) it invokes a substantive right created by § 544 of the Bankruptcy Code.").

24. Like in *Rahl*, BlockFi's Rescission Action invokes special powers provided by federal law to bring its second cause of action. The Rescission Action asserts "[p]ursuant to 11 U.S.C. § 544(b) and the Debtor's confirmed plan of reorganization, the Wind-Down Debtor has the rights and powers of creditors whose claims arose before the Transfers to bring, among others, causes of action under New Jersey law for the avoidance of fraudulent transfers." [Rescission Action at ¶ 72]. BlockFi's cases to the contrary are unpersuasive. As explained in one of the cases cited by BlockFi, *Empery Tax Efficient, LP v. MusclePharm Corp.*, a critical distinction in determining whether a 544(b) cause of action arises under title 11 is whether the cause of action is brought by a bankruptcy trustee. No. 23 Civ. 74 VM, 2023 WL 2580006, at *8-9 (S.D.N.Y. Mar. 21, 2023) (citing *Whitney Nat'l Bank v. Lakewood Invs.*, No. 11 Civ. 179, 2011 WL 3267160, at *5 (S.D. Ala. July 28, 2011) (rejecting argument that a fraudulent conveyance action was core but noting it could be considered core if brought by a bankruptcy trustee)). In *Empery*, the court found that the 544(b) claim was not core because it was brought by a noteholder, not a trustee of the estate, prior to the bankruptcy case. *Id.* at *8. Further, the claim was brought under the UVTA and did not invoke any substantive right under the Bankruptcy Code. *Id.* The court therefore found that the

10

claim did not arise under title 11 nor in bankruptcy. Here, BlockFi did not commence the state court action until after the Effective Date. Moreover, the second cause of action explicitly cites section 544(b) of the Bankruptcy Code and the Amended Complaint notes that the debtors became the Wind-Down Debtors "by operation of the Plan and Confirmation Order" and that a plan administrator was appointed to act on behalf of the Wind-Down Debtors. Amended Complaint, ¶ 11. Thus, the second cause of action clearly arises under title 11 as it was not – nor could it have been – asserted prior to the Effective Date, and it asserts causes of action vested in the plaintiff, "BlockFi Inc. as the Wind-Down Debtors" pursuant to the Plan, which was confirmed in accordance with the Bankruptcy Code

25. In addition, the Rescission Action seeks to recover the allegedly avoidable transfer, which implies relief under section 550 of the Bankruptcy Code – another federal statute. *See Reynolds v. Behrman Capital IV L.P.*, 592 B.R. 892, 900 (N.D. Al. 2018) (noting that section 550 creates a substantive right that arises under the Bankruptcy Code).

26. Accordingly, there is a federal question jurisdiction over BlockFi's second cause of action, allowing this Court supplemental jurisdiction over the remaining causes of action. Since BlockFi has not and cannot show its Rescission Action is only based on a state law claim, this Bankruptcy Court need not abstain from presiding over this matter. State law claims can be heard by a bankruptcy court when the post-confirmation action is related to the bankruptcy proceeding. *See generally Donaldson v. Bernstein*, 104 F.3d 547, 551 (3rd Cir. 1997) (the court maintained jurisdiction for post-confirmation action that involved state law claims).

27. BlockFi has failed to establish that its action does not "arise in" the bankruptcy proceeding. A category of proceedings 'arising in' bankruptcy includes orders to turn over property of the estate. *Stoe*, 436 F.3d at 216. The Third Circuit considers the Policy property of the estate. *Acands*, 435 F.3d at 260. Because BlockFi seeks to terminate the Policy and recover the premium, thereby turning over property of the estate, this action "arises in" the bankruptcy proceeding.

11

28. BlockFi has failed to show that the New Jersey Superior Court can timely adjudicate this action. Courts have held that a "naked assertion that the matter can be timely adjudicated in the state court, without more, is insufficient to satisfy" the timely adjudication factor. *Allied Mech. and Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, Inc., 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986); *In re Semcrude, L.P.*, 2010 WL 5140487, at *7 (Bankr. D. Del. Dec. 13, 2010). In determining if a claim can be timely adjudicated for the purposes of abstention, the following factors have been identified:

(1) the backlog of the state court's calendar relative to the federal court's calendar;

(2) the complexity of the issues presented and the respective expertise of each forum;

(3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and

(4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*See Prudential Ins. Co. of Am. v RBS Fin. Products, Inc.*, 2013 WL 5913654, at *6 (D.N.J. Oct. 30, 2013); *Calascibetta v J.H. Cohn LLP*, 2011 WL 2224179, at n.2 (D.N.J. June 6, 2011).

29. BlockFi offers no support for its argument that any of the abstention factors have been satisfied and accordingly has failed to meet its burden. This action cannot timely be adjudicated in state court. While litigation backlogs are ever present across the United States, New Jersey Superior Court has faced significant delays in adjudicating civil cases.[4] In addition, this matter is complex, given it will involve interpretations of the Plan and Confirmation Order – documents with which this Court is intimately familiar and has the "respective expertise" for interpreting its own Confirmation Order. This is not a circumstance where a state court has taken significant steps to move the case forward. In fact, there was

---

[4] Jeff Pillets, *Inside NJ's Festering Judicial Crisis: Divorces and Civil Trials Stalled for Years*, N.J. MONTHLY (Dec. 22, 2023) https://njmonthly.com/articles/news/njs-judicial-crisis-thousands-divorces-civil-trials-stalled-for-years/; *see also New Jersey Trial Courts Backlog: Current*, N.J. CTS., https://www.njcourts.gov/public/pub-rep-stats/trial-courts-backlog (last visited April 10, 2024).

12

no activity in the state court prior to removal. Thus, significant time will be wasted if an overburdened state court needs to first begin to understand the issues and the history of the complex bankruptcy proceeding. On the other hand, this Court has unique expertise to hear this matter, given it presided over the bankruptcy proceeding and issued the disputed Confirmation Order six months ago.

30. BlockFi has failed to meet its burden in arguing that this Court must abstain from exercising its jurisdiction over the Rescission Action. The Rescission Action is not solely based on state law, "arises in" and "arises under" bankruptcy, and cannot be timely adjudicated in a state forum. This Court is not restrained from exercising jurisdiction and should not remand this matter to state court. BlockFi has failed to meet its burden to prove otherwise.

      b.    **Voluntary Abstention is Not Appropriate**

31. A Court's decision to discretionarily abstain pursuant to 28 U.S.C. § 1452(b) and § 1334(c)(1) is a fact driven approach and substantially grounded in equity. *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 126 (Bankr. D.N.J. 2003); *In Re G-I Holdings, Inc.,* 564 B.R. 217, 249 (Bankr. D.N.J. 2016). The proposed tests cited in BlockFi's remand motion have not been adopted by the Third Circuit. *In Re. G-I Holdings*, 564 B.R. 217 at 249. Moreover, the relevant factors in those tests are all substantially similar, and thus a court will determine the factors flexibly, based on their relevance and importance with each case. *Shalom Torah Centers v. Phila. Indem. Ins. Companies*, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011). The factors include: the effect on the efficient administration of the bankruptcy estate; the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; the presence of a related proceeding commenced in state court or other non-bankruptcy court; and prejudice to the involuntarily removed defendants. *See Id*; *In Re. G-I Holdings,* 564 B.R. 217 at 249.

32. Here, the facts and equity dictate that the Bankruptcy Court should not abstain from exercising jurisdiction over the Rescission Action. First, an "overarching" consideration is the time the state court spent on the case. *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assoc.*, 181 B.R.

13

781, 793 (D.N.J. 1995). The state court has not spent any time on this matter, as it was removed immediately after the complaint was filed and before any other case activities had occurred. Thus, there is no added efficiency in remanding the case back to the state court. In fact, the opposite is true. The Rescission Action will involve interpretation and enforcement of the Plan and Confirmation Order, which was issued by this Court six months ago. Therefore, this Court, not the state court, has already invested considerable time into the issues presented by the Rescission Action.

33.    Additionally, the Rescission Action seeks to violate key provisions of the Plan and Confirmation Order by terminating coverage under the Policy. Therefore, it would be prejudicial to National Union, the D&O Insurers, creditors, releasees, and all others affected by BlockFi's bankruptcy if violations of the Plan and Confirmation Order were left to the state court. The court that entered the Confirmation Order should be the court to enforce it.

34.    BlockFi appears to rely most on the fact that the Rescission Action includes a few state law fraudulent transfer claims. However, this alone is insufficient to support voluntary abstention. The counterparts to these state law claims are found in the Bankruptcy Code and are included in the Rescission Action. Additionally, this argument falls flat as the Rescission Action still involves a federal question by invoking section 544 of the Bankruptcy Code. National Union also notes that none of the D&O Insurers was an involuntarily removed defendant.

35.    Taking the facts, law, and equity into consideration, BlockFi's attempt to violate this Court's Confirmation Order does not lead to a situation where this Court should exercise voluntary abstention. Accordingly, this matter does not belong in state court, and BlockFi's motion to remand the Rescission Action to state court should be denied.

V.    **CONCLUSION**

36.    The Rescission Action seeks to void the Policy, in direct violation of the Bankruptcy Court's Confirmation Order. The Rescission Action is indisputably "related to" – and National Union contends

"arises in" and "arises under" – BlockFi's Chapter 11 proceeding, and will require the interpretation and enforcement of the Plan and the Bankruptcy Court's Confirmation Order. BlockFi's remand motion utterly fails to meet its burden in explaining why the Bankruptcy Court must abstain from exercising its retained jurisdiction. Accordingly, BlockFi's attempt to remand this action to New Jersey State Court should be denied.

Dated: April 15, 2024

Robert A. Benjamin
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Drive
Valhalla, New York 10595
Telephone: 914.449.1059
Facsimile: 914.449.1100
rbenjamin@kbrlaw.com

*Attorneys for National Union Fire Insurance Company of Pittsburgh, Pa.*