| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP** Kenneth J. Aulet, Esq. (admitted *pro hac vice*) Seven Times Square New York, New York 10036 (212) 209-4800 kaulet@brownrudnick.com  **BROWN RUDNICK LLP** Tristan Axelrod, Esq. (admitted *pro hac vice*) One Financial Center Boston, MA 02111 (617) 856-8300 taxelrod@brownrudnick.com  **BROWN RUDNICK LLP** Stephen D. Palley, Esq., (*pro hac vice*) Daniel J. Healy, Esq., (*pro hac vice*) 601 Thirteenth Street NW Suite 600 Washington, D.C. 20005 Telephone: (202) 536-1766 Facsimile: (617) 289-0766 spalley@brownrudnick.com dhealy@brownrudnick.com  *Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* | **GENOVA BURNS LLC** Daniel M. Stolz, Esq. Donald W. Clarke, Esq. 110 Allen Rd., Suite 304 Basking Ridge, NJ 07920 (973) 230-2095 DStolz@genovaburns.com DClarke@genovaburns.com  **GENOVA BURNS LLC** Jennifer Borek, Esq. 494 Broad St. (973) 533-0777 JBorek@genovaburns.com  *Local Counsel for Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* |
| In re:  BLOCKFI INC., *et al*.,                         Debtors.[1] | Chapter 11 Case No. 22-19361 (MBK) (Jointly Administered under a Confirmed Plan[2]) |

# THE WIND-DOWN DEBTORS' RESPONSE TO
# THE MOTION TO ENFORCE PLAN AND CONFIRMATION ORDER

---

[1]  The Wind-Down Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]  On October 3, 2023, the Court entered an order (the "Confirmation Order") [Docket No. 1660] confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609].

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors," or referred to in the past tense as the "Debtors"), as managed by the Plan Administrator, in the above-referenced Chapter 11 cases (the "Chapter 11 Cases") hereby submit this response (the "Response") to the D&O Insurers'[3] *Motion to Enforce Plan and Confirmation Order* (the "Motion") [Docket No. 2221].  In support of their Response, the Wind-Down Debtors respectfully submit as follows:

## INTRODUCTION

1.      The Plan and record are abundantly clear: the D&O Insurers are not released, and claims against them relating to, among other things, the D&O Policy,[4] are reserved for the Wind-Down Debtors.  This is true "**notwithstanding any provision of this Plan to the contrary**."  In so many words, "**neither assumption of any Insurance Contracts nor any outstanding obligation…shall, or shall be deemed or construed to, in any way preclude the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon any Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action**."  Plan at V.F.

2.      That Insurers fail to cite this language in their Motion is frankly astounding.  They now ask this Court to "enforce" the Plan, just not the language in the Plan that says the opposite of what they want, "notwithstanding any provision of this Plan to the contrary."

3.      The express language of the Plan protecting the claims now at issue was hotly negotiated.  It was a key component of the Committee Settlement[5] – the cornerstone of the Plan,

---

[3]      "D&O Insurers" or "Insurers" for purposes of this Response shall include Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company.

[4]      The "D&O Policy" or, the "Policy" refers to that certain CODA Premier Directors & Officers Liability Policy, Policy No. G71101320 001.

[5]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Motion, as applicable.

which resolved months of litigation and received overwhelming support from all voting classes and was confirmed by this Court.  Absent such a resolution, these cases might likely still be mired in a value-destructive stalemate.

4.      Given the import of the Committee Settlement, and the tremendous amount of work that went into reaching agreement on the part of each of the parties (as well as the tremendous guidance received from the mediator and this Court), the parties were hyperconscious to ensure that there were no misunderstandings regarding its terms.  In that vein, each aspect of the agreement was thoroughly detailed on the record and in the Plan, and in the Plan Supplement, which, again, specifically references these claims.

5.      It is worth noting, here, that one of the causes of action the Wind-Down Debtors seek to prosecute is an action to enforce the D&O Policy: the Insurers negotiated a provision of the Policy that renders the Policy void, and the premium to be returned, if certain conditions are not met.  Those conditions were inarguably not met, but the Insurers would prefer not to return the money as they agreed.  The Insurers would prefer that the Policy, like the Plan, not be enforced.

6.      Insurance companies must be held to the terms of the documents they negotiate, just like everyone else.  The Insurers cannot eviscerate the Committee Settlement and render inoperable its terms.  The Motion should be denied.

## FACTS AND PROCEDURAL HISTORY

7.      The Wind-Down Debtors incorporate by reference the facts and procedural history as outlined in *The Wind-Down Debtor BlockFi, Inc.'s Motion for an Order Remanding State Court Action* [Docket No. 2181].

I.       **The Committee Settlement Paves The Path To Confirmation.**

8.       Shortly following its appointment, the Creditors' Committee tasked its professionals to investigate why BlockFi failed (the "Committee Investigation").  On July 14, 2023, the Creditors' Committee filed its *Preliminary Report Addressing Question Posed by the Official Committee of Unsecured Creditors: Why Did BlockFi Fail?* (the "Committee Report") [Docket No. 1202].  As detailed in the Committee Report, the Investigation examined a number of issues relating to BlockFi's failure, including the circumstances surrounding BlockFi's purchase of the Policy and attendant diminution of assets otherwise distributable to customers. *See* Committee Report, IV.B.

9.       The record before the Court in these cases is quite clear that for months – approximately January to July 2023 – these cases were in stalemate over a variety of issues raised in the Committee Report, including releases proposed to be granted by the Debtors and other measures that would effectively ratify the Debtors' controversial purchase of the D&O Policy.

10.      On July 21, 2023, the Debtors, the Committee Settlement Parties, and the Creditors' Committee agreed to the terms of the Committee Settlement.

11.      Most notably as to the claims at issue in the Motion, the Plan provides as follows at Article V.F:

> For the avoidance of doubt, the D&O Insurance Providers shall not be Released Parties or Releasing Parties under the Plan. **Notwithstanding the foregoing and notwithstanding any provision of this Plan to the contrary, neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, in any way preclude the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon any Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action**; provided, however, that nothing in this Article V.F. of the Plan shall alter or prejudice any or all of the Insurers' rights and defenses with respect to any such claims, arguments, evidence, and/or causes of action, and all such rights and defenses of the Insurers are fully and expressly reserved and preserved.

12.     There could be no mistake that this language was an integral component of the Committee Settlement.  Language preserving claims against the Insurers is all over the Plan.  Both the definition of "Released Parties" and the Releases section of the Committee Settlement exclude claims and causes of action against the D&O Insurers:

- "[A]ny of… (vii) the D&O Insurance Providers;… and (xi) each Related Party of each Entity in clauses (i) through (x) shall not be a 'Released Party.'"  Plan, ¶ 190.

- "The D&O Insurance Providers will not be Released Parties or Releasing Parties under the Plan and the Committee Settlement Parties will reserve all claims and causes of action against the D&O Insurance Providers, and the D&O Insurance Providers reserve all of their rights and defenses with respect to such claims and causes of action."  Plan, IV.C.2.

13.     The preservation of causes of action against the D&O Insurers as provided in section IV.C.2 of the Plan was also echoed on the record by the Committee Settlement parties:

- "The global settlement also provides that the insurance providers will not be released parties or releasing parties under the plan, and the Committee settlement parties will reserve all claims and causes of action against them." (Hr'g. Tr. Aug. 1, 2023 (Debtors' Counsel) 6:6-9).

- "We preserved valuable claims, including the claims against the D&O insurance carriers that we believe provide a avenue for additional recovery of creditors" (Hr'g. Tr. Aug. 1, 2023 (Committee Counsel) 14:22-24).

14.     The Confirmation Order similarly provides that "[f]or the avoidance of doubt, the carriers of the Debtors' D&O Liability Insurance Policies shall not be Released Parties or Releasing Parties under the Plan."  Confirmation Order ¶ 89.

15.     The Plan further provides that:

i.      "[T]he Wind-Down Debtors shall succeed to all rights to commence and pursue any and all Vested Causes of Action,[6] whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred under the Plan

---

[6]   "*Vested Causes of Action*" means the Causes of Action vesting in the Wind-Down Debtors pursuant to Article IV.L of the Plan and enumerated on the Schedule of Retained Causes of Action, which shall be included in the Plan Supplement. The Vested Causes of Action shall include, without limitation, the Retained Preference Claims and certain Causes of Action (including but not limited to Avoidance Actions) against Insurers in respect of D&O Liability Insurance Policies.  Plan ¶ 234.

or pursuant to a Final Order."

ii.    "No Entity may rely on the absence of a specific reference in the Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Wind-Down Debtors, on behalf of the Debtors and the Wind-Down Debtors, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan."

iii.   "Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, on behalf of the Debtors and Wind-Down Debtors and in accordance with the Plan Administrator Agreement, expressly reserve all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation."  Plan IV.L.[7]

(emphasis added).

16.    And the Schedule of Retained Causes of Action, attached as Exhibit B to the *Second Amended Plan Supplement* [Docket No. 1585] retains "[a]ll Claims and Causes of Action (in law or equity) against ACE American Insurance Co. including but not limited to those arising from or related to BlockFi's prepetition dealings with ACE American Insurance Co."  ACE Insurance Co. is the named issuer under the Policy.

17.    At both the August 1 Disclosure Statement Hearing and the September 26 Confirmation Hearing, the parties remarked generally concerning the importance of the settlement on these cases, and the Court's role in facilitating the Committee Settlement.[8]

---

[7]    The Confirmation Order similarly provides that "[t]he Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtors, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan… Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtors, on behalf of the Debtors and Wind-Down Debtors and in accordance with the Plan Administrator Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation."  Confirmation Order ¶ 80.

[8]    *See, e.g.*, Hr'g. Tr. Aug. 1, 2023 at 106:13-25 ("Never before has a judge changed personal scheduling and court

## **ARGUMENT**

18.     The thrust of the D&O Insurers argument is that because the Policy was assumed under the Plan, the Wind-Down Debtors are foreclosed from bringing the claims and causes of action asserted in the Amended Complaint.  The Insurers' argument fails for two reasons.  First, the Insurers ignore (and ask this Court to eviscerate) specific language in the Plan preserving the very same claims the D&O Insurers now seek to preclude notwithstanding assumption, and more generally the Committee Settlement encompassing these preservational terms.  Second, the Insurers are incorrect insofar as they assert that assumption of the Policy is incompatible with the relief sought in the Amended Complaint.

A.     **The Record Clearly Contemplates,
And The Plan Expressly Provides For The
Preservation Of The Causes Of Action Raised In The Amended Complaint.**

19.     The Committee Settlement was painstakingly negotiated, with "virtually every term [] fought over and negotiated before it was agreed upon."  Hr'g. Tr. Sept. 26, 2023 (Debtors' Counsel) 9:11-12.   Its terms, including preservation of causes of action specifically against the D&O Insurers, and including Avoidance Actions, were exhaustively detailed on the record.

20.     The Debtors drafted the assumption-with-exceptions provisions of the Plan intentionally and with full awareness of the effects of the provision, and how the Court might enforce it.  They did so for three reasons.

21.     First, because the Debtors pre-petition had already paid the premium, rejecting the Policy would have potentially vitiated the Wind-Down Debtors' ability to assert claims for recission, which in turn would have potentially given the Insurers a windfall by permitting them

---

scheduling to focus personally and specifically on the case at hand to avoid the disaster that we knew was going to happen next for all of those people who are listening who are separated from their life savings and then from November when the case filed until it got to a deal, you folks will sit in a room until you figure it out.  And figure it out we did.") (remarks of Committee counsel).

to (a) keep the Policy premium; (b) refuse coverage under the Policy; and (c) claim rejection damages to the extent of the Debtors' ongoing obligations, if any.

22. Second, rejecting the Policy would have complicated efforts to *enforce* the Policy, which again, contains a provision permitting recovery of the policy premium upon certain conditions that have now occurred. The claims the Insurers now wish to expunge by "enforcing" BlockFi's Plan include a claim to enforce this provision of the Policy.

23. Third, the Court permitted the Debtors as part of the Committee Settlement to expressly carve out the D&O Insurers from the releases, and preserve claims and causes of action against the Insurers, again, "notwithstanding any provision of this Plan to the contrary" and expressly including the right to bring an "Avoidance Action" against the D&O Insurers, preserving the Insurers' defenses but not the right to challenge the Plan itself.[9]  The Insurers did not object to the provision, and it was approved and never appealed. Ironically, this gave the Debtors and settlement parties comfort that the Insurers would not do exactly what they are doing now.

24. Likewise, this language in the Plan was carefully crafted to preserve all of the Wind-Down Debtors rights with respect to the Policy, but assumption of the Policy also does not contradict other language in the Plan prohibiting BlockFi from terminating or reducing coverage thereunder. The Plan language at issue was crafted so that (a) if the Wind-Down Debtors causes of action asserted in the Amended Complaint are successful, the estates will be able to recover the premium paid; or (b) if the Wind-Down Debtors claims are unsuccessful, the Insurers can be required to perform.

---

[9]   The Schedule of Retained Causes of Action also retains of all claims and causes of action against the named insurer under the Policy.

25.    Again, this is all clear in the Plan and accompanying Plan documents and was clearly spelled out on the record.  The Insurers had ample opportunity to object but did not object to the Plan.  The Insurers should now be estopped from claiming otherwise.

26.    The Insurers ask this Court to ignore all of that.  The Insurers ask that a general reference to assumption of insurance contracts control over a specific exclusion for preserved claims "notwithstanding" assumption.

27.    This is wrong as a matter of law.  The Plan preserves these claims.  With bankruptcy plans as with statutes, contracts, and any other document requiring interpretation, "the specific governs the general."  *See In re One2One Comms., LLC*, 627 B.R. 273, 282 (Bankr. D.N.J. 2021) (citing *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F.App'x 832, 837 (3d Cir. 2003)); *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 777 (Bankr. D.N.J. 2014).

28.    Insurers seek to "enforce" the Plan against its plain terms.  The Wind-Down Debtors respectfully submit that the Court may deny the Motion on this basis alone, and instead enforce the Plan, including the express preservation of the claims and causes of action against the D&O Insurers, in its entirety.

**B.    The Amended Complaint Is
    Compatible With Assumption Of The Policy.**

29.    The Insurers' assertion that the claims brought under the Amended Complaint are incompatible with assumption of the Policy under the Plan conflates two issues and suggests mutual exclusivity where none exists.

30.    In effect, Insurers here request that the Court contradict the Plan and overwrite a hard-fought settlement, simply because "assumption" prohibits this Court from enforcing its own orders regarding what "assumption" means and cannot mean in this context.  But as this Court recognized when it approved the Committee Settlement, courts routinely determine the effect of a debtor's actions taken or not taken otherwise pursuant to section 365, particularly in approving

agreements and consensual plans of reorganization.  Parties that do not object are estopped from challenging them after the fact – particularly where, as here, they receive a benefit at confirmation.

31.    For instance, in *In re MPF Holding U.S. LLC*,[10] a debtor negotiated a "Novation Agreement" that expressly modified the obligation to cure defaults under section 365 as a condition of assumption.  The bankruptcy court later recognized the agreement as "a means of effectuating *consensual* assumption," and enforced the agreement as modified.

32.    Likewise, in *Carnero G&P, LLC v. SN EF Maverick LLC*,[11] a contract counterparty objected post-confirmation to assumption of their contract on the basis that it was not executory.  But the debtor's plan of reorganization defined the contract as executory.  The district court, upholding the bankruptcy court on appeal, observed that "[t]he most fundamental problem with this argument is that it does not matter; the bankruptcy court determined the contracts to be executory contracts, and Carnero knew that the bankruptcy court thought so and did not object…Carnero had no qualms with the Plan's procedures when it benefitted Carnero."

33.    Here, as in *MPF Holding* and *Carnero*, the Debtors and settlement counterparties effectuated an agreement, approved by this Court, that altered the ordinary operation of section 365.  The Insurers were party to these events and did not object; as in *Carnero*, they "had no qualms" with the Committee Settlement when it benefitted them by forestalling litigation and limiting the exposure of Insureds under the Policy.  That they would now prefer not to be sued is not grounds to un-make the grand bargain underlying these Chapter 11 proceedings.[12]

---

[10]    495 B.R. 303, 320-22 (Bankr. S.D. Tex. 2013); *see also, e.g.*, *In re Hayes Lemmerz Intern., Inc.*, 313 B.R. 189, 194 (Bankr. D. Del. 2004) (enforcing court order precluding reliance on section 365 and permitting avoidance of critical vendor payments).

[11]    657 B.R. 202, 214-16 (Bankr. S.D. Tex. 2024).

[12]    *See also generally* David A. Skeel & George Triantis, *Bankruptcy's Uneasy Shift to a Contract Paradigm*, 166 U. Penn. L. Rev. 1777 (2018) (describing evolving theory of bankruptcy administration by which, among other things, unopposed plan provisions are given deference when accepted by required majorities of creditor classes even when modifying the ordinary effect of Code provisions).

34.    In support of their contention that assumption prohibits the relief requested in the Amended Complaint, the Insurers point to certain authorities easily distinguishable on the facts. First, the Insurers argue that under *In re Network Access Solutions, Corp.*,[13] and *In re Vision Metals, Inc.*,[14] the Wind-Down Debtors waived their right to seek to avoid premium payments under the Policy when it was assumed.  *See* Motion ¶¶ 21-23.  Here, unlike *Network Access Solutions* and *Vision Metals*, assumption of the contract was expressly limited, and reservation of the Wind-Down Debtors rights to later assert causes of action expressly preserved in the Plan, Plan Supplement, and representations on the record.  The Wind-Down Debtors cannot be estopped from enforcing these rights; rather, as noted above, it is the Insurers who are estopped from challenging the Plan.

35.    Second, the Insurers argue that under *In re A. Tarricone, Inc.*,[15] *In re Penn Traffic Co.*,[16] and the Restatement (Second) of Contracts,[17] the Wind-Down Debtors waived their right to seek to rescind the Policy when it was assumed.  *See* Motion ¶¶ 24, 25.  These authorities stand for the general principle only that under ordinary circumstances, assumption of a contract prohibits a rescission remedy.  *A. Tarricone* concerned whether funds deposited into an escrow were sufficient to cure defaults under a contract.  The court held that it was not, and denied a motion to assume the contract; its observation concerning rescission was made in dicta.  Likewise, the Insurers' citation to *Penn Traffic* is also misplaced.  The Insurers cite *Penn Traffic* for the boilerplate proposition that assumption requires the cure of defaults and continued performance. However, the Insurers have not asserted any outstanding performance obligations of BlockFi

---

[13]    330 B.R. 67 (Bankr. D. Del. 2005).

[14]    325 B.R. 138 (Bankr. D. Del. 2005).

[15]    70 B.R. 464 (Bankr. S.D.N.Y. 1987).

[16]    524 F.3d 373 (2d Cir. 2008).

[17]    § 380 (1981), cmt. A.

under the Policy.  Unlike *A. Tarricone* and *Penn Traffic*, the BlockFi Plan stated that the Policy was assumed, and stated the conditions of assumption; the Wind-Down Debtors are now seeking recovery of payments as permitted by the Plan, including by enforcement of the express terms of the Policy that void it upon conditions now met.

36.      Assumption does not, in and of itself, mean that the counterparty to the contract is absolved of all liability for past conduct, or absolved for potential liability for breach of the contract's express terms.  Moreover, the terms of contracts and impacts of assumption are not monolithic constructs that cannot be modified by the parties, approved by the Court, and enforced as modified.  As with any contract, a party to an assumed contract may make claims thereunder. Those claims were expressly preserved here, with clarifying language regarding the effect of assumption in case of any possible doubt.

## **CONCLUSION**

Accordingly, the Wind-Down Debtors respectfully submit that this Court should deny the Insurers' Motion in its entirety and grant other such relief as it deems proper.

[*Remainder of page intentionally left blank.*]

Respectfully Submitted:

Dated: April 18, 2024                        /s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8300
taxelrod@brownrudnick.com

**BROWN RUDNICK LLP**
Stephen D. Palley, Esq. (admitted *pro hac vice*)
Daniel J. Healy, Esq. (admitted *pro hac vice*)
601 13th St. NW Suite 600
Washington, D.C. 20005
(202) 536-1766
spalley@brownrudnick.com
dhealy@brownrudnick.com

*General Counsel to the Plan Administrator*