| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP** <br> Kenneth J. Aulet, Esq. (admitted *pro hac vice*) <br> Seven Times Square <br> New York, New York 10036 <br> (212) 209-4800 <br> kaulet@brownrudnick.com <br><br> **BROWN RUDNICK LLP** <br> Tristan Axelrod, Esq. (admitted *pro hac vice*) <br> One Financial Center <br> Boston, MA 02111 <br> (617)856-8300 <br> taxelrod@brownrudnick.com <br><br> **BROWN RUDNICK LLP** <br> Stephen D. Palley, Esq., <br> (*pro hac vice forthcoming*) <br> Daniel J. Healy, Esq., <br> (*pro hac vice forthcoming*) <br> 601 Thirteenth Street NW Suite 600 <br> Washington, D.C. 20005 <br> Telephone: (202) 536-1766 <br> Facsimile: (617) 289-0766 <br> spalley@brownrudnick.com <br> dhealy@brownrudnick.com <br> jdoyle@brownrudnick.com <br><br> *Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* | **GENOVA BURNS LLC** <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> 110 Allen Rd., Suite 304 <br> Basking Ridge, NJ 07920 <br> (973) 230-2095 <br> DStolz@genovaburns.com <br> DClarke@genovaburns.com <br><br> **GENOVA BURNS LLC** <br> Jennifer Borek, Esq. <br> 494 Broad St. <br> (973) 533-0777 <br> JBorek@genovaburns.com <br><br> *Local Counsel for Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* |
| In re: <br><br> BLOCKFI INC., *et al.*, <br><br> Debtors.[1] | Chapter 11 <br> Case No. 22-19361 (MBK) <br> (Jointly Administered under a Confirmed Plan[2]) <br> 1.     **Hearing Date: April 25, 2024** <br> 2.     **Response Deadline:  April 21, 2024** <br> **Oral Argument Waived Unless Response Timely Filed** |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609].

### THE WIND-DOWN DEBTOR BLOCKFI, INC.'S REPLY IN SUPPORT OF MOTION FOR AN ORDER REMANDING STATE COURT ACTION

Plaintiff, BlockFi Inc. as Wind Down Debtor ("Plaintiff" or "BlockFi" or the "Company"),³ by and through its attorneys, respectfully submits this reply (the "Reply") in support of *The Wind-Down Debtor BlockFi, Inc's Motion for an Order Remanding State Court Action* [Docket No. 2181] (the "Motion")⁴ and in response to *National Union Fire Insurance Company of Pittsburgh, PA Opposition to Wind-Down Debtor BlockFi Inc's Motion for an Order Remanding to State Court* (the "Remand Opposition") [Docket No. 2239] and any joinder thereto (filed by the "Defendants" or "Insurers"),⁵ and respectfully states as follows:

### INTRODUCTION

1. The Remand Opposition conveniently ignores the facts and misconstrues the law. This is a contract-based insurance lawsuit with a jury demand. It should be remanded.

2. *First*, each of the claims asserted in the Amended Complaint – for declaratory judgment, breach of contract, fraudulent transfer, rescission, illusory coverage, and unjust enrichment – arises under New Jersey state law.

3. *Second*, the Plan and Confirmation Order unequivocally preserve these claims and causes of action. The Plan makes clear that (1) "the D&O Insurance Providers shall not be

---

³ Each of the Debtors filed for protection under Chapter 11 of Title 11 of the U.S. Code on November 28, 2022, commencing Jointly Administered Lead Case No. 22-19361 (Bankr. D.N.J.). On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Confirmation Order" confirming and attaching the "Plan") [Docket No. 1660]. The Plan became effective on October 24, 2023 [Docket No. 1788], after which date the "Debtors" became the "Wind-Down Debtors" by operation of the Plan and Confirmation Order.

⁴ Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, Remand Opposition, Plan, or Confirmation Order, as applicable.

⁵ *See Joinder to the Opposition of National Union Fire Insurance Company of Pittsburgh, PA to Wind-Down Debtor BlockFi, Inc.'s Motion for Order Remanding to State Court* (the "Joinder") [Docket No. 2240].

2

Released Parties or Releasing Parties under the Plan," and (2) "***notwithstanding any provision of this Plan to the contrary***, neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, ***in any way preclude*** the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon ***any Causes of Action against any Insurers in respect of any Vested Causes of Action***, including but not limited to any Avoidance Action."[6]

4. *Third*, interpreting the unambiguous language in the Plan does not require the expertise of the Bankruptcy Court – the Superior Court of New Jersey, Law Division, Hudson County (the "State Court") is more than capable of understanding what it means for the Insurers to not be released under the Plan, and for the Plan to otherwise permit the Plaintiff to assert the state law claims in the Amended Complaint. Regardless, the Insurers have already sought a ruling from this Court, contemporaneously with this Motion, on the meaning and effect of the Plan provisions they claim would confuse a state court.[7] The Remand Opposition implies that, should this Court deny the Insurers' motion to enforce their interpretation of the Plan, the Insurers will attempt to re-argue the same provisions of the Plan in the State Court and the State Court will find it confusing. Plaintiff respectfully doubts that any state court would be confused by this Court's orders, despite the Insurers' apparent intentions.

5. Confronted with the obvious and unambiguous, the Insurers remain steadfast in

---

[6] The Schedule of Retained Causes of Action, attached as Exhibit B to the Second Amended Plan Supplement [Docket No. 1585] similarly retains "[a]ll Claims and Causes of Action (in law or equity) against ACE American Insurance Co. including but not limited to those arising from or related to BlockFi's prepetition dealings with ACE American Insurance Co." ACE Insurance Co. is the named issuer under the Policy.

[7] *See Motion to Enforce Plan and Confirmation Order* (the "Enforcement Motion") [Docket No. 2221]; *The Wind-Down Debtors' Response to the Motion to Enforce Plan and Confirmation Order* (the "Enforcement Response") [Docket No. 2244].

3

their willful denial of the facts and distortion of the law. The Insurers (1) incorrectly assert that claims brought under 11 U.S.C. § 544(b) – which merely grants the trustee standing to bring fraudulent transfer claims otherwise avoidable under *state law* – asserts a federal cause of action, (2) inexplicably ignore the plain language of the Plan that preserves these claims, and (3) suggest that the State Court is somehow incapable of understanding the plain language of the Plan and this Court.

6. The Insurers cannot simply place their hands over their ears when they prefer not to hear an inconvenient truth. The inconvenient truth for the Insurers here, is that each of the factors for mandatory abstention under 28 U.S.C. § 1334(c)(2) is met, and that the facts and equity strongly support discretionary abstention under 28 U.S.C. § 1334(c)(1). This is state law insurance litigation that belongs in state court for all the reasons the statute was created: the claims at issue are not bankruptcy claims, they are claims on and about an insurance policy, dealing with the language and nature of the policy, claims of a type most frequently and appropriately adjudicated in state court. Plaintiff has requested a jury trial on these state law claims, which this Court may not preside over.[8] Respectfully, this Court should remand.

**FACTS AND PROCEDURAL HISTORY**

7. Plaintiff incorporates by reference the facts and procedural history as outlined in *The Wind-Down Debtor BlockFi, Inc.'s Motion for an Order Remanding State Court Action* (the "Remand Motion") [Docket No. 2181]. Plaintiff also incorporates *The Wind-Down Debtors'*

---

[8] 28 U.S.C. § 157(e) permits a bankruptcy court to "conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." Neither party has consented to a jury trial in the Bankruptcy Court – indeed, Defendants do not consent to the entry of any final order or judgment by this Court, with or without a jury. *See Notice of Removal Under 28 U.S.C. § 1334(b) And 28 U.S.C. § 1452(a) of Defendant Berkley Insurance Company* [Docket No. 1, ¶ 30, Case No. 24-010067] ("Removing Defendant does not consent to entry of final orders or judgment by the Bankruptcy Court."). Therefore, even if this Court were specially designated by the District Court (which it has not been), this Court is not permitted to conduct a jury trial.

4

*Response to the Motion to Enforce Plan and Confirmation Order* [Docket No. 2244] (the "Enforcement Response"), filed shortly prior to this Reply and in response to the *Motion to Enforce Plan and Confirmation Order* [Docket No. 2221] (the "Enforcement Motion") filed by the Insurers. The Enforcement Response sets forth certain language in the Plan expressly preserving the state law claims at issue and describes the case history surrounding the preservation of such claims as part of the grand bargain effectuating confirmation of these Chapter 11 cases.

8. The Remand Motion was originally set for hearing on April 11, 2024. On March 26, 2024,, and to permit the Insurers additional time to oppose, Plaintiff requested via email to this Court that the hearing on the Remand Motion be adjourned to April 25, 2024 at 11:30 a.m. ET, which request was granted by this Court [Docket No. 2205]. The Plaintiff also informed this Court that the parties agreed that (i) any opposition to the Remand Motion will be filed and served no later than 5:00 p.m. on April 15, 2024, and (ii) any replies by the moving party shall be filed no later than April 21, 2024 at 5:00 p.m.

9. On April 15, 2024 the Insurers filed the Remand Opposition and the Joinder thereto.

## ARGUMENT

### I. The Amended Compliant Is Entirely Consistent With The Unambiguous Plan, Which Does Not Require Bankruptcy Expertise To Interpret.

10. Little progress was made in the bankruptcy cases until the Debtors, Committee Settlement Parties, and Creditors' Committee reached the terms of the Committee Settlement last July. The Committee Settlement embodies a comprehensive agreement among the parties

5

including, among a variety of other things, releases for certain parties, and preservation of claims against others.

11. The parties took care to sufficiently inform the Court of the components of the Committee Settlement in open court,[9] and unambiguously document its terms. In sum, the Plan explicitly carves out from the releases, and preserves claims against the D&O Insurers, notwithstanding anything to the contrary in the Plan:

- "[A]ny of… (vii) **the D&O Insurance Providers**;… and (xi) each Related Party of each Entity in clauses (i) through (x) **shall not be a 'Released Party**.'" Plan, I.A. ¶ 190 (emphasis added).

- "**The D&O Insurance Providers will not be Released Parties or Releasing Parties under the Plan and the Committee Settlement Parties will reserve all claims and causes of action against the D&O Insurance Providers**, and the D&O Insurance Providers reserve all of their rights and defenses with respect to such claims and causes of action." Plan, IV.C.2 (emphasis added).

- "For the avoidance of doubt, the D&O Insurance Providers shall not be Released Parties or Releasing Parties under the Plan. **Notwithstanding the foregoing and notwithstanding any provision of this Plan to the contrary**, neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, **in any way preclude** the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon **any Causes of Action against any Insurers in respect of any Vested Causes of Action**, including but not limited to any Avoidance Action; provided, however, that nothing in this Article V.F. of the Plan shall alter or prejudice any or all of the Insurers' rights and defenses with respect to any such claims, arguments, evidence, and/or causes of action, and all such rights and defenses of the Insurers are fully and expressly reserved and preserved." Plan, V.F. (emphasis added).

12. The Plan is crystal clear: (1) the Insurers are not released, (2) claims against the Insurers are preserved, and (3) such claims are preserved notwithstanding anything else to the

---

[9] *See e.g.*, "The global settlement also provides that the insurance providers will not be released parties or releasing parties under the plan, and the Committee settlement parties will reserve all claims and causes of action against them." (Hr'g. Tr. Aug. 1, 2023 (Debtors' Counsel) 6:6-9); "We preserved valuable claims, including the claims against the D&O insurance carriers that we believe provide a avenue for additional recovery of creditors" (Hr'g. Tr. Aug. 1, 2023 (Committee Counsel) 14:22-24).

6

contrary in the Plan.

13. The parties drafted the Plan in this way – to assume the Policy while providing for the preservation of claims against the Insurers – for three reasons. First, because the Debtors pre-petition had already paid the premium, rejecting the Policy would have potentially vitiated the Plaintiff's ability to assert claims for recission, which in turn would have potentially given the Insurers a windfall by permitting them to (a) keep the Policy premium; (b) refuse coverage under the Policy; and (c) claim rejection damages to the extent of the Debtors' ongoing obligations, if any. Second, rejecting the Policy would have complicated efforts to enforce the Policy (which contains a provision permitting recovery of the premium upon certain conditions that have now occurred as alleged in the Amended Complaint). Third, the Court permitted the Debtors as part of the Committee Settlement to expressly carve out the D&O Insurers from the releases, and preserve claims and causes of action against the Insurers, which the Insurers did not object to.

14. The record and Plan are unambiguous, and the rationale behind the assumption-with-exceptions construct well-reasoned. Nevertheless, the Insurers assert that other language in the Plan – specifically, language that the Policy is assumed, and that the Wind-Down Debtors will not terminate the policy or reduce coverage thereunder – prevents the Plaintiff from bringing the claims in the Amended Complaint.

15. As set forth in the Enforcement Response, this willful blindness should be ignored, and the Plan enforced by its plain terms. Any argument to the contrary is a distraction, particularly in connection with this Motion concerning this Court's exercise of jurisdiction over the state law claims presented in the State Court Action.

16. The Court will rule on the Enforcement Motion. The arguments in that motion are co-extensive with the arguments raised here – if Insurers are correct about the Plan (they are not),

the claims subject to this Motion are barred and this Motion is moot. If Insurers are incorrect about the Plan (they are), they should be bound by this Court's order and there will be no opportunity to confuse the State Court. Insurers' argument suggests their intention to re-litigate the Enforcement Motion in the State Court notwithstanding any ruling thereon by this Court, and should be viewed with appropriate skepticism.

## II.   The Factors For Mandatory Abstention Under 28 U.S.C. § 1334(c)(2) Are Met.

17.   The parties disagree as to whether the Plaintiff movant meets the factors for mandatory abstention under 28 U.S.C. § 1334(c)(2) and as more fully described in *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).[10] The factors are met; the Insurers' suggestions to the contrary misapply the facts and law.

### A.   The Amended Complaint Exclusively Asserts State Law Claims.

18.   The Insurers argue that state law fraudulent transfer claims pursued by a company with standing under sections 544(b) and 550 of the Bankruptcy Code are inherently federal claims. This is wrong.

19.   Each of the claims asserted in the Amended Complaint is a state law cause of action under New Jersey statutory and common law torts. Section 544(b) merely grants standing to bring certain state law claims: "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor **that is voidable under applicable law** by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1) (emphasis added).

---

[10] The factors supporting mandatory abstention are (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is at most "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction. The Insurers do not dispute the fourth factor, that the action was commenced in an appropriate state forum.

20. For this reason, multiple New Jersey courts have found that section 544 supported state law rulings on fraudulent transfer issues. *See e.g., Motorworld, Inc. v. Benkendorf*, 2017 WL 2334257, *2 (N.J. Super. Ct. App. Div., May 30, 2017) (finding trustee may bring state cause of action under 544(b)); *Salzano v. North Jersey Media Group Inc.*, 993 A.2d 778, 782 (N.J. Sup. Ct. 2010) (complaint brought under 544 and New Jersey state law alleging fraudulent transfer); *cf. In re Wettach*, 489 B.R. 496, 504 (Bankr. W.D. Pa. 2013), *aff'd sub nom. Sikirica v. Wettach*, 511 B.R. 760 (W.D. Pa. 2014), *aff'd sub nom. In re Wettach*, 811 F.3d 99 (3d Cir. 2016) (trustee authorized by Bankruptcy Code to pursue state law claims).

21. A federal statute granting standing to bring state law claims does not make the state law claims into federal claims. Insurers offer nothing to suggest that the determinations of the New Jersey courts have been incorrect on this issue. A state law fraudulent conveyance claim is a state law claim.

22. Likewise, the Third Circuit has made clear what it means for claims to "arise under" or "arise in" the bankruptcy context:

> The category of cases "under" title 11 "refers merely to the bankruptcy petition itself." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-26 n. 38 (3d Cir. 205 (quotation and citation omitted). A case "arises under" title 11 "if it invokes a substantive right provided by title 11." *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996). . . Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy." *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999). Finally, a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 381 (3d Cir. 2002) (noting that *Pacor* "clearly remains good law in this circuit" in this respect).

*Stoe*, 436 F.3d at 216.

23. In *Stoe*, the Third Circuit found that an employment-based claim was merely "related to" but did not "arise under" the Bankruptcy Code, and held that "claims that 'arise in' a

9

bankruptcy case are claims that by their nature, not their particular factual circumstance, **could only arise in the context of a bankruptcy case**." *Stoe*, 436 F.3d at 218 (quoting *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (proceeding is "core" "if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case")).

24. The claims raised in the Amended Complaint ordinarily arise in state court under state law, and not under the Bankruptcy Code. The Bankruptcy Code empowers Plaintiff to bring them now, as opposed to Plaintiff's creditors. But these are state law causes of action.

25. Under the guidance of *Stoe*, Insurers' assertion that the 544(b) confer federal question jurisdiction under 28 U.S.C. § 1331 similarly fails. *Stoe* makes clear that "[b]ankruptcy 'arising under' jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts 'of all civil actions arising under the Constitution, laws, or treaties of the United States.'" 436 F.3d at 216 (citing Collier on Bankruptcy § 3.01[4][c][i] at 3–21–22 (15th ed. rev.2005); *Wood v. Wood* (*Matter of Wood*), 825 F.2d 90, 96–97 (5th Cir.1987)). As such, claims under section 544(b) of the Bankruptcy Code had been found not to confer federal question jurisdiction, including in this District. *See Allied Signal Recovery Trust v. Allied Signal, Inc.*, 298 F. 263, 266 (3d Cir. 2002) (District Court found that it did not have § 1331 jurisdiction over claim made under § 544(b)).

### B. The Bankruptcy Court's Retention Of Jurisdiction Does Not Provide It With Independent Jurisdiction.

26. The Insurers wrongly imply that the Court's exclusive jurisdiction to adjudicate disputes related to the Plan implies exclusivity over all disputes related to these Chapter 11 cases. The Plan does not say that. Insurers' interpretation of the Plan would vitiate the federal jurisdiction statute and necessitate conflict with, *e.g.*, the Delaware bankruptcy court given the centrality of the FTX proceedings to matters "related to" the BlockFi Plan.

27. To be clear, the Insurers have indeed placed the language of the Plan directly at issue, in their Enforcement Motion. This Court certainly retains exclusive jurisdiction to adjudicate that motion. For the reasons set forth in the Enforcement Response, that motion should be denied; regardless, this Court's ruling thereon will be the extent of dispute related to the Plan. The State Court Action concerns state law claims, as described above.

### C. The Superior Court Of New Jersey Can Timely Adjudicate The Claims.

28. The Insurers argue that the State Court cannot timely adjudicate these claims because of a purported backlog and (again) the need to re-litigate the bankruptcy Plan even after this Court rules on the Enforcement Motion. Insurers have the burden of persuasion on this factor, and utterly fail. *See Calascibetta v. J.H. Cohn LLP*, 2011 WL 2224179 *2 (Bankr. D.N.J. June 6, 2011) ("Defendant, as the removing party, bears the burden of demonstrating that removal was proper" by an offering of evidence).

29. Insurers do not substantiate any backlog in Hudson County (where the State Court Action was filed), or compare this to any backlog in the federal courts, or offer any evidence as to the ability of either court to timely adjudicate the matters *per se*. In fact, the Insurers' cited materials show the State Court backlog reduced 44% over the last year, suggesting that the court in question is more than capable of adjudicating current filings while clearing its docket of pandemic-delayed proceedings, like most federal and state courts today.

30. Regardless, the State Court's purported backlog is "misguided and irrelevant." *See Prudential Ins. Co. of America v. Barclays Bank PLC*, 2013 WL 221995, *7 (D.N.J. Jan. 22, 2013) (dismissing comparison of state and federal court workloads as factor considered in determining whether state court can timely adjudicate claims). Rather, "[w]hen assessing 'timely adjudication' in this context, '[t]he question is not whether the action would be more quickly adjudicated in the bankruptcy court than in state court, but rather, whether the action can be timely adjudicated in the

11

state court.'" *In re G-I Holdings, Inc.*, 580 B.R. 388, 421 (Bankr. D.N.J. 2018) (quoting *In re Exide Techs.*, 544 F.3d 196 at 218 n. 14 (3d Cir. 2008) (emphasis in original)). The "timely adjudicated" element is liberally construed, and courts have found that it has been satisfied by virtue of the action having been commenced in state court and no indication that it cannot be timely adjudicated there. *See Cityside Archives, Ltd. v. Hudson Hospital Opco, LLC*, 2015 WL 6529903, *5 (D.N.J. Oct. 27, 2015); *Faltas-Fouad v. St. Mary's Hosp., Passaic, N.J.*, 2015 WL 260907, *3 (D.N.J. Jan 20, 2015). There is nothing to suggest that the State Court is incapable of timely adjudicating these claims.

31.    And again, notwithstanding the repeated attempts of the Insurers to re-litigate the Plan, adjudication will not involve significant, substantive interpretation of the Plan or Confirmation Order. The substantive claims in the State Court Action, again, contrary to the Insurers' assertions, do not require bankruptcy expertise or familiarity with the history of the bankruptcy cases. They require familiarity with state law issues – something the State Court unquestionably possesses in abundance. For example, the Insurers' argument about the state court recission claim turns largely on the wording of the Policy, including that the premium is worth more than the coverage benefits. Like the other causes of action, no bankruptcy determinations are involved.

**III.	If The Court Is Not Required To Abstain Under 28 U.S.C. § 1334(c)(2), It Should Exercise Its Discretion To Do So Under 28 U.S.C. § 1334(c)(1).**

32.	Insurers assert that the Bankruptcy Court should not exercise its discretion to abstain because (1) the state court has not spent any time on this matter, (2) adjudication of the claims will involve interpretation and enforcement of the Plan and Confirmation Order, (3) the Amended Complaint violates the Plan, and (4) the claims include federal bankruptcy claims (i.e., those brought under section 544(b)). Each of these purported reasons is either irrelevant or incorrect.

33.	First, while the State Court may not have spent time on this matter, so too would the substance of the claims raised in the Amended Complaint be novel for this Court. This Court has not adjudicated any matters in connection with the Policy. That neither court has interrogated the substance of the claims does not make the Bankruptcy Court more informed.

34.	Second, as discussed exhaustively herein, adjudication of the claims *will not* involve substantial interpretation of the Plan and Confirmation Order; Third, for substantially the same reasons, the State Court Action does not violate the Plan. As repeatedly noted above, this Court will adjudicate the Enforcement Motion, which should bind the parties and resolve the Insurers' spurious Plan-related defenses in either jurisdiction, and regardless, does not bear upon the substance of the state law claims. The State Court is perfectly equipped to adjudicate the merits of the state law claims at issue.

35.	Fourth, as expressed above, the claims do not arise under federal law or implicate Bankruptcy Code issues.

36.	None of the Insurers' purported bases weigh in favor of removal to this Court – rather, they weigh in favor of remand to the State Court. In addition to the foregoing, Plaintiff has

13

requested a jury trial. Plaintiff is entitled to a jury trial, which this Court cannot accommodate.[11] This entitlement further supports remand to the State Court. The State Court is not only an appropriate forum for adjudication of these claims, but, Plaintiff submits, the more appropriate forum.

37. Even if this Court were to rule as a technical matter that the section 544(b) claims arise in or under Title 11 such that it may not abstain under § 1334(c)(2), or that federal question jurisdiction is conferred under § 1331, it may nevertheless (and should) abstain under § 1334(c)(1). *See Shalom Torah Centers v. Philadelphia Indem. Ins. Companies*, 2011 WL 1322295 (D.N.J. Mar. 31, 2011) (finding federal question jurisdiction, but abstaining under § 1334(c)(1)). "Where a civil proceeding sounds in state law and bears limited connection to the debtor's bankruptcy case, abstention is particularly compelling." *Matter of Oliver's Stores, Inc.*, 107 B.R. 40, 42 (D.N.J. 1989) (citing *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir.1988)). Section 544(b) merely conveys jurisdiction – it makes no substantive changes to the applicable law (here, state fraudulent conveyance law based on a pre-petition insurance policy). In other words, the 544(b) claims clearly sound in state law and bear little connection to the bankruptcy case (which are now post-confirmation).

## CONCLUSION

Accordingly, Plaintiff respectfully submits that this Court should abstain and remand under 28 U.S.C. § 1334(c)(2), or, alternatively exercise its discretion to remand under 28 U.S.C. § 1334(c)(1), and grant Plaintiff's Motion to Remand in its entirety.

---

[11] *See supra*, note 8.

Dated: April 21, 2024 /s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8300
taxelrod@brownrudnick.com

**BROWN RUDNICK LLP**
Stephen D. Palley, Esq. (admitted *pro hac vice*)
Daniel J. Healy, Esq. (admitted *pro hac vice*)
601 13th St. NW Suite 600
Washington, D.C. 20005
(202) 536-1766
spalley@brownrudnick.com
dhealy@brownrudnick.com

*General Counsel to the Plan Administrator*