

One Newark Center
1085 Raymond Blvd., 19th Floor
Newark, New Jersey 07102
UNITED STATES OF AMERICA
P 973.436.5800   F 973.436.5801

Joao F. Magalhaes, Esq.
Direct: 973.436.5717
jmagalhaes@connellfoley.com

April 22, 2024

*Via Electronic Filing*

Hon. Michael B. Kaplan, Chief Judge
United States Bankruptcy Court, D. N.J.
402 East State Street
Trenton, N.J. 08608

      Re:    *BlockFi, Inc., et al.,* Bankr. D. N.J. Case No. 22-19361 (MBK)
            Claimant Van Tubergen Jr.'s Reply to BlockFi's Opposition to
            Motion to Alter/Amend Decision/Order Sustaining Objection to Claim No. 7233
            Hearing Date: April 25, 2024 at 11:30 a.m.

Dear Judge Kaplan,

      As Your Honor may recall, this firm represents claimant John W. Van Tubergen Jr. ("Claimant"), creditor of BlockFi Lending LLC ("BlockFi Lending," and together with BlockFi Inc., "BlockFi," or collectively with the other Wind-Down Debtors, the "Debtors").

      We respectfully submit this letter brief in further support of Claimant's *Motion Pursuant to Fed. R. Bankr. P. 3008, 8002(b), 8007(a), 9023 and 9024 to (I) Alter and Amend the Decision and Order Sustaining the Wind-Down Debtors' Objection to Claim No. 7233; and (II) Alternatively, Seek Relief From Such Order,* together with such other and further relief as the Court deems just (the "Motion"),[1] and in lieu of a more formal memorandum in reply to the Debtors' *Response*[2] to such Motion. Claimant limits this reply to three general areas of issues raised by the Motion.

*[Space intentionally left blank; please see following page two (2).]*

---

[1] Docket No. 2142. All references to the docket shall be to the "main case," Case No. 22-19361.
[2] Docket No. 2247.

14800698-1

Hon. Michael B. Kaplan, Chief Judge
April 22, 2024
Page 2

**I.   Regardless of LSA provisions or the internal processes utilized by BlockFi in determining value pre-liquidation, the legal question of whether BlockFi breached the LSAs requires that the actual pricing metric(s) utilized in LTV calculations be identified and made a part of the record, but throughout this contested matter only Claimant placed verifiable market data on the record, which such data is the best evidence in this matter.**

BlockFi's emphasis on contractual language and purported pre-liquidation internal processes obscures the more fundamental issue of what constitutes reliable evidence in this matter. Since only Claimant placed verifiable market data on the record, such data is the best evidence and should control all computations as to LTV calculations and the impact of BlockFi's liquidations upon collateral posted by Claimant. Stated otherwise, while both sides of this contested matter presented competing mathematical calculations, only Claimant's were backed by information that could be independently sourced and verified, and thus only Claimant satisfied an evidentiary burden.

In Part I(A) of its Response, BlockFi emphasizes LSA language for the proposition that BlockFi could determine market value in its reasonable discretion. Response ¶¶ 13-14. In this regard, Claimant momentarily sets aside the separate concern as to whether such language can be enforced in a manner that grants BlockFi unchecked discretion in the discernment of market value.[3] To the present point, BlockFi's actual valuation method(s), ostensibly consisting of publicly-reported benchmark measures of per-unit value utilized to calculate value, were never presented or made available for examination. Therefore, while BlockFi submitted "numbers on a page," as an evidentiary matter, such numbers and computations were supported by nothing more than self-serving narratives as to how BlockFi used "best-in-class" information. *See* Response ¶ 16. Yet ultimately such information – in terms of actual, sourced pricing metrics – were never presented for scrutiny or made a part of the record.

Properly viewed as an evidentiary manner, Claimant encourages the Court to reconsider whether BlockFi breached the LSAs through either unwarranted or excessive liquidations. *See* Sur-Reply at 2-6. As to the latter, Claimant respectfully reminds that when properly triggered the LSAs should be read to permit liquidations for the purpose re-establishing Required LTVs, a reading that comports with the explanations given to Claimant by BlockFi Lending's agents. *See Id.* at 2-3; *see also Memorandum of Law* in support of the Motion at 15 (discussing, *inter alia,* how the "Reset LTV" phraseology espoused by BlockFi was a false construct). Yet as shown, on multiple occasions BlockFi's volume of liquidations well-surpassed what could be deemed reasonably necessary to re-establish Required LTV thresholds.

Therefore, despite whatever pro-lender language may be featured in the LSAs (and putting aside the unconscionability of same), and irrespective of whatever pre-liquidation valuation

---

[3] Indeed, Claimant seeks to have such clause struck as unconscionable pursuant to MCL 440.2302(1).

14800698-1

Hon. Michael B. Kaplan, Chief Judge
April 22, 2024
Page 3

processes may have been engaged in by BlockFi (assuming *arguendo* the crediting of Ms. Marquez's testimony), on a fundamental level only Claimant submitted calculations that were sourced, verifiable, *and thus by definition, reliable.*[4]

Alternatively and as to the present, it is telling that it is Claimant who is urging the Court to look outward to additional market data, which upon information and belief would support Claimant's LTV calculations.

II. **Despite whatever credibility Ms. Marquez may have, and regardless of whatever merits she may have articulated on behalf of BlockFi, her level of knowledge on pertinent matters was plainly akin to a corporate spokesperson.**

Testimony cited by BlockFi in its Response supports the point made by Claimant as to Ms. Marquez that she was effectively serving as a high-level corporate executive rather than someone with personal knowledge of the specific material issues upon which the disposition of the Claim should turn. *See, e.g.,* Response ¶ 16 (in response to being asked what pricing metric was used to determine LTV, answering "[w]e used a variety of best-in-class pricing feeds that were fed in to our institutional team[,]" and upon follow-up when asked for clarification as to whether Gemini pricing data was part of those pricing feeds, in part answering "[i]t may have been . . ."). By any reasonable measure or interpretation, at best Ms. Marquez was advancing her knowledge as a "team leader," and not as someone with first-hand knowledge regarding the decisive LTV computations before the Court.

This is not a matter of whether Ms. Marquez possesses a perfect memory, *see* Response ¶ 19, and clearly that was not Claimant's tact or contention. But precise specifics and sourcing should matter when evaluating whether liquidations were properly conducted under the LSAs. Such should be required under Federal Rule of Evidence 602 for purposes of material issues in this contested matter.

Similarly, Claimant objects to use of the passage featured at Response ¶ 17 for the purpose of explaining away critical differences in LTV calculations. The resolution of such discrepancies should be achieved through the disclosure and sourcing of the actual pricing data, not self-serving conjecture that prices go up-and-down due to market forces or according to volume traded.

*[Space intentionally left blank; please see following page four (4).]*

---

[4] To say nothing of Claimant's submission of pricing exchange data from the very "Depository" (Gemini) named under each LSA.

14800698-1

Hon. Michael B. Kaplan, Chief Judge
April 22, 2024
Page 4

### III. The totality of the circumstances evidences a remarkably one-sided (and thus legally unconscionable) contract clause, surrounding circumstances which impaired Claimant's decision-making ability despite his reasonable reliance, and BlockFi's inability to present required notices, which together with other concerns of record should inform a resolution in Claimant's favor.

Finally, Claimant respectfully urges the Court to view the totality of the circumstances in reconsidering the broader applicability of Michigan statutory and common law, together with an application of equity principles.

In Part I(B)(i) of its Response, BlockFi argues that no violation of good faith and fair dealing can exist given its purported compliance with express contractual terms. Response at 10. Yet as to those express contractual terms (and here setting aside Claimant's case-in-chief that the LSAs were violated by BlockFi), Claimant has argued that the language of *"or the market value determined by BlockFi in its reasonable discretion"* should be stricken pursuant to MCL 440.2302(1). In addressing this aspect of the Response, Claimant is mindful that BlockFi has initially prevailed before this Court, thereby necessitating the instant Motion. Yet as a matter of logic, even BlockFi must acknowledge the problematic nature of such one-sided language, which here cannot be deemed substantively reasonable if it allows for BlockFi to quite literally conjure financial calculations absent sourcing or other means to independently verify same. To be clear: throughout this contested matter, Claimant has been forced to effectively "take BlockFi's word" as to its underlying pricing data, *and has not been given an opportunity to verify the truth or accuracy of same.*

Turning to good faith and fair dealing considerations, BlockFi in part engaged in deceptive practices by, simply put, saying one thing but then doing another. This was made evident on at least two sets of issues, whereunder agency law becomes relevant and militates in favor of Claimant, specifically: (a) the volume of Collateral liquidated by BlockFi greatly exceeded what Claimant was told to expect by BlockFi Lending's agents; and (b) Claimant should be deemed to have reasonably relied on BlockFi Lending's agents in seeking to safeguard the Collateral from liquidation under the LSAs, and believing all was well at critical junctures. *See, e.g.,* Supp. J.V.T. Cert. Exs. EE and FF. As detailed, multiple agents of BlockFi conveyed representations and assurances that were later contradicted by BlockFi's actions. It was never disputed that such agents were in fact agents of BlockFi, and thus such representations and assurances should be accorded evidentiary weight in support of a finding that BlockFi violated the covenant of good faith and fear dealing.

Furthermore, given the aforementioned concerns, it would stand to reason that BlockFi would have all of its required notices under the LSAs in good order for presentment to the Court. That should be deemed to be a burden of BlockFi, as it would be for, *e.g.,* a secured creditor to be compelled to show perfected lien rights if it imposed its will over property impressed with such lien rights.

14800698-1

Hon. Michael B. Kaplan, Chief Judge
April 22, 2024
Page 5

      Yet here, BlockFi not only did not preserve copies of required notices, worse yet, it is now seeking to frame this evidentiary burden – *as to whether BlockFi properly issued notices* – as one that Claimant should be forced to bear.  *See* Response at 13-14.  It is Claimant's position that he carried his own evidentiary burdens as to the nature of the Claim, the actions of BlockFi which render it liable, and the resulting damages occasioned to Claimant.  If for its part BlockFi cannot produce notices which were required under the LSAs, such is its lapse.  Ultimately Claimant is a consumer who should not be expected to prove a negative in terms of whether BlockFi honored its pre-liquidation obligations.  Regardless, as noted in the first instance in support of the instant Motion, based on notices actually placed on the record, it does not appear that the 72-hour period required by Section 7(a) of the LSAs was provided in connection with the seminal liquidation of Loan No. 558207a5.  *See* Supp. J.V.T. Cert. ¶¶ 16-24.

## Conclusion

      For these reasons, Claimant again respectfully requests that the Court grant the Motion, and thereby amend the Decision according to Claimant's proposed amended findings and conclusions.

    Respectfully submitted,

    CONNELL FOLEY LLP
    *Counsel to Claimant John W. Van Tubergen Jr.,*
     *Creditor of BlockFi Lending LLC*

Dated: April 22, 2024    By: */s/ Joao F. Magalhaes*
    Joao F. Magalhaes

14800698-1