| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. BLR 9004-1(b)** | |
| Rachel Ehrlich Albanese (#027542001)<br>**DLA PIPER LLP (US)**<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 335-4500<br>Facsimile: (212) 335-4501<br>Email: rachel.albanese@us.dlapiper.com<br><br>Stephen C. Matthews (#055801994)<br>**DLA PIPER LLP (US)**<br>51 John F. Kennedy Parkway, Suite 120<br>Short Hills, New Jersey 07078<br>Telephone: (973) 520-2550<br>Facsimile: (973) 520-2551<br>Email:  stephen.matthews@us.dlapiper.com<br><br>Stuart M. Brown (#026641988)<br>**DLA PIPER LLP (US**)<br>1201 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 468-5700<br>Facsimile: (302) 397-2336<br>Email:  stuart.brown@us.dlapiper.com<br><br>*Attorneys for Movants Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company* | Stacey E. Rufe (admitted *pro hac vice*)<br>**WERNER AHARI MANGEL LLP**<br>2112 Pennsylvania Ave. NW<br>Suite 200<br>Washington, DC 20037<br>Telephone: (202) 599-1013<br>Email: srufe@wam.law |
| In re:<br><br>BLOCKFI INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan)<br><br>**Hearing Date: April 25, 2024 at 11:30 a.m. (ET)** |

# REPLY IN SUPPORT OF MOTION TO ENFORCE
# PLAN AND CONFIRMATION ORDER

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965); and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company (collectively, the "<u>Movants</u>") hereby submit this reply (the "<u>Reply</u>") in support of their *Motion to Enforce Plan and Confirmation Order* [ECF No. 2221] (the "<u>Motion</u>")[2] and in response to *The Wind-Down Debtors' Response to the Motion to Enforce Plan and Confirmation Order* [ECF No. 2244] (the "<u>Objection</u>"). In support of this Reply, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Wind-Down Debtors claim it is "astounding" that the Motion fails to cite purported carve-out language, even though that language is plainly inapplicable. Obj. ¶ 2. The Confirmation Order and Plan state, repeatedly, that the Debtors or Wind-Down Debtors will not seek to reduce or terminate insurance coverage in any way and that they will remain fully liable for all of their obligations under the assumed Insurance Contracts, including the Policy.[3] The Wind-Down Debtors wax poetic about the Committee Settlement that facilitated confirmation of the Plan, in part by assuring D&Os there would be coverage for claims against them,[4] but they do not even attempt to explain how the Wind-Down Debtors' causes of action for rescission and fraudulent transfer are consistent with that settlement or the Plan's unequivocal language protecting such coverage. In fact, they cannot.

2. Although the Plan preserves certain avoidance action claims against certain insurers, the Movants are not among those insurers. Nor does the Objection explain how a

---

[2] Capitalized terms used but not defined in this Reply are defined as in the Motion or Plan, as applicable.
[3] *See, e.g.*, Confirmation Order ¶¶ 87-88; Plan, art. V.F.
[4] *See* Debtors' Mem. of Law in Support of Confirmation [ECF No. 1608], at 33 n.82 ("For the avoidance of doubt, subject to the express limitations set forth in the Plan, parties who are covered by the D&O Liability Insurance Policy retain their rights to coverage and indemnity as set forth in those policies. *See* Plan, Art. V.F."); Hr'g Tr. 27:6-12, Sept. 26, 2023 [ECF No. 1621] ("Q [to Scott Vogel, Debtors' Independent Director]: In the context of the Committee settlement that you discuss in your declaration, is it your understanding that the individual Committee settlement parties [who are] providing cooperation under the Committee settlement preserve all of their rights to any existing directors and officers liability insurance? A: That's correct.").

rescission action could be maintained against a D&O Insurer in light of the unambiguous Plan and Confirmation Order language assuming the Policy and prohibiting efforts to reduce or terminate coverage.

3. Instead, the Objection advocates what would be a fundamental change to bankruptcy law under section 365 that would allow executory contracts to be provisionally assumed, with debtors retaining benefits while reserving rights to contest or seek to terminate the contract later on. This Court should permit no such change. Rather, it is a fundamental rule of bankruptcy law that a debtor must assume a contract in its entirety, including all of its benefits and burdens, and when it does so, all challenges to the contract and avoidance actions arising from the contract and prior transactions are waived. If the Wind-Down Debtors have their way, they would be permitted to have assumed the Policy in the "reasonable exercises of the Debtors' business judgment,"[5] obtained court approval of that assumption and the benefits of the Policy, and now, recover the premium the Debtor paid under the Policy in order to completely deprive the Movants of the benefit of the bargain.

4. For these reasons and as further discussed below, the plain language of the Plan and Confirmation Order should be enforced and the Motion granted.

## REPLY

**I.    The plain language of the Plan does not permit rescission or fraudulent transfer claims against the Movants.**

5. The Wind-Down Debtors rely on language that purports to maintain their rights to challenge the Policy on the one hand while allowing them to assume the Policy under section 365 and the Confirmation Order on the other hand. However, this purported carve-out from the broad language of assumption in the Plan and Confirmation Order is inapplicable to the Movants. The

---

[5]    Confirmation Order ¶ 20(i).

3

Wind-Down Debtors therefore cannot use this language to circumvent provisions that repeatedly and unequivocally require the Debtors to retain through assumption, and not reduce, their D&O Insurance Liability Policies, including the Policy, and pursue rescission and fraudulent transfer claims against the Movants.

6. As noted in the Motion, section V.F of the Plan states that "[n]otwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order . . . (***including . . . any other provision that purports to be preemptory or supervening***)," the Debtors are required to assume the Insurance Contracts "***in their entirety***," and those contracts "shall not be amended, modified, waived, released, discharged or impaired in any respect" and the Debtors or Wind-Down Debtors "shall not terminate or reduce the coverage under any D&O Liability Insurance Policy." Plan, art. V.F (emphasis added). Simply stated, given the breadth of these commandments, there can be no carve-out. Further, on the Effective Date, the Wind-Down Debtors became "and remain liable in full for all of their and the Debtors' obligations under the Insurance Contracts" and those contracts "revest[ed] in the applicable Wind-Down Debtors, unaltered." *Id.* The language could not be clearer that D&O coverage was to be preserved in every way and the Wind-Down Debtors and Debtors assumed all obligations under the D&O Liability Insurance Policies, including the Policy.

7. The language that the Wind-Down Debtors rely on does not change this conclusion, as it is inapplicable to the Movants. That language provides that assumption of the Insurance Contracts does not preclude the Wind-Down Debtors from prosecuting "Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action." The "Vested Causes of Action" are those "enumerated on the Schedule of Retained Causes of Action" included in the Plan Supplement. Plan, art. A ¶ 234. The Plan Supplement

4

includes a schedule retaining causes of action, but the schedule does not retain causes of action against the Movants. Plan Supp. [ECF No. 1585], Schedule B(i).

8. Nor does the catch-all language providing that the Debtors' failure to list certain causes of action in the Schedule of Retained Causes of action change this conclusion. As the Wind-Down Debtors themselves note, specific terms govern general ones. Obj. ¶ 27; *see also* Mot. ¶ 23 n.10. Thus, the specific language cited above, which states that the Debtors remain fully liable under the Insurance Contracts and cannot seek in any way to reduce coverage under those contracts, trumps boilerplate, catch-all language that seeks to preserve all causes of action. Thus, that catch-all language is rendered meaningless here.[6]

## II. The Debtors may not assume favorable aspects of the Insurance Contracts while rejecting the unfavorable ones.

9. It is axiomatic that where a debtor seeks assumption under section 365 of the Bankruptcy Code, "it must assume the executory contract entirely." *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001). It is also axiomatic that an executory contract may not be assumed unless the debtor cures (or provides adequate assurance that it will promptly cure) all defaults under the contract, compensates the counterparty for any pecuniary loss resulting from any defaults, and provides adequate assurance of future performance under the contract. *In re MicroBilt Corp.*, No. 11-18143 (MBK), 2013 WL 32700997, at *5 (D.N.J. June 26, 2013). The bankruptcy court authorizing assumption "must be sensitive to the rights of the non-debtor contracting party and the policy requiring that the non-debtor receive the full benefit of its bargain." *Id.*

---

[6] Even if the Plan were inconsistent in contemplating both the assumption of Insurance Contracts and reserving causes of action, any inconsistency should be resolved in favor of giving effect to the language of section 365(b), which requires defaults to be cured or promptly cured as a condition to assumption. *See* 11 U.S.C. § 365(b)(1)(A).

5

10. The Wind-Down Debtors violate each of these axioms. Having assumed favorable aspects of the Policy—D&O liability coverage—they now seek to void the Policy and recover the premium, despite unambiguous Plan and Confirmation Order language prohibiting precisely that. As noted above, the Plan and Confirmation Order dictate that the Debtors or Wind-Down Debtors may not seek to reduce or alter coverage in any way. Further, the Debtors were required to provide adequate assurance of future performance under the Policy in order to assume it. *See* 11 U.S.C. § 365(b)(1)(C).[7] The Wind-Down Debtors now seek to deprive the Movants of the benefit of their bargain and their statutory rights under section 365 by disregarding that plain language and hornbook bankruptcy law. These efforts should be rejected.

11. The cases cited in the Objection are inapposite and do not change this straightforward conclusion. In *In re MPF Holdings U.S. LLC*, after the court determined that assumption of the underlying agreement barred the debtor's preference claim, it found that the payment of an agreed cure amount as set forth in a novation agreement was a means of achieving consensual assumption and assignment under section 365 of the Bankruptcy Code. 495 B.R. 303, 318-19 (Bankr. S.D. Tex. 2013). No such agreement as to any cure payment was made here as the premium was prepaid, so there was no monetary cure. Instead, the Plan and Confirmation Order expressly provide that the Wind-Down Debtors would assume the D&O Insurance Liability Policies in their entirety (consistent with section 365) and not seek to reduce coverage or avoid liability in any way. Confirmation Order ¶¶ 87-88; Plan, art. V.F.

---

[7] Moreover, even if, solely for the sake of argument, the Wind-Down Debtors were permitted to avoid the Policy, avoidance gives rise to an unsecured claim that would have to be paid in full for the Policy to be assumed. *See* 11 U.S.C. § 502(h); *In re Horizon Grp. Mgmt., LLC*, 652 B.R. 764, 794 (Bankr. N.D. Ill. 2023) (noting that under section 502(h), when the court avoids a transfer, the target of the transfer returns to the creditor pool with "a claim for the amount returned to the estate").

12. *In re Hayes Lemmerz Int'l, Inc.*, 313 B.R. 189 (Bankr. D. Del. 2004), is even less helpful to the Wind-Down Debtors and in fact supports the relief sought in the Motion. There, a preference defendant that received prepetition payments argued that the payments should be immune from preference attack by analogizing the payments it received to those received under an assumed contract. *Id.* at 194. The court was unpersuaded, noting that payments under section 365 are mandatory and therefore entitled to protection whereas the payments the defendant received were discretionary. *Id.*

13. Nor does *Carnero G&P, LLC v. SN EF Maverick LLC*, 657 B.R. 202 (S.D. Tex. 2024), change this result. There, the court found that a party's failure to timely object in the bankruptcy court forfeited the party's ability to argue that its contract was not executory. *Id.* at 215. This is irrelevant here, where the Plan states unequivocally that the Policy was being assumed and that the Wind-Down Debtors would remain liable in full. Therefore, there was no reason for the Movants to object to assumption during the bankruptcy case and there was no dispute as to whether the Policy was executory. Moreover, unlike in *Carnero*, the Insurers are not challenging the terms of the Plan and Confirmation Order, they are simply seeking to enforce them as written.

**A. As stated in the Motion, assumption of the Policy bars the Wind-Down Debtors' rescission and fraudulent transfer claims.**

14. The Wind-Down Debtors' attempts to distinguish the Movants' cases, which note that a debtor that assumes a contract cannot then attack the contract on rescission or fraudulent transfer grounds, are similarly unavailing. According to the Wind-Down Debtors, these cases are distinguishable because they do not involve a situation similar to what the Wind-Down Debtors attempt to do here—expressly limit assumption by allowing the debtor provisionally to assume the benefits of a contract while reserving all of their rights to sue the counterparty for rescission and fraudulent transfer. *See* Obj. ¶¶ 34-36. However, such an assumption would be absurd and would

7

completely deprive the contract counterparty of the benefit of its bargain. In addition, as the party in control of the Plan, the Debtors could have delayed assumption of the Policy until all these issues were resolved, but the Debtors instead chose, in their business judgment, to proceed with assumption. The duplicity of the Wind-down Debtors should not be ignored or countenanced by the Court.

15. The cited cases are consistent in upholding the general rule that a debtor must assume both the benefits and burdens of a contract. The holding in *In re Network Access Solutions Corp.*, that a payment under an assumed contract cannot be avoided, was based on the straightforward rule that assumption does not allow a debtor to assume certain contract provisions while rejecting others, and noted that debtors may, with the consent of the contract counterparty, modify prepetition contracts *after* assumption. 330 B.R. 67, 74 (Bankr. D. Del. 2005). After noting that rule, the court found that the prepetition agreements could not be attacked as fraudulent transfers once they had been assumed. *Id*. at 76. Here, the Wind-Down Debtors would violate that rule by arguing that "assumption" may be modified such that a debtor may seek to assume a contract beneficial to the estate under the business judgment rule, provide the counterparty with adequate assurance of future performance, obtain court approval of that assumption based on those representations, implement assumption, and then seek to recover its payments under the assumed contract. There is no rule that allows this, nor have the Wind-Down Debtors cited any authority in support of this extraordinary proposition.[8] The Objection should therefore be overruled and the Motion granted.

---

[8] The Wind-Down Debtors' attempt to distinguish *In re Vision Metals, Inc.*, is similarly unavailing. 325 B.R. 138 (Bankr. D. Del. 2005). The court there noted that a debtor undertakes both the benefits and burdens of an assumed contract and therefore prevented the debtor from seeking to avoid its payment under the contract, which is precisely what the Wind-Down Debtors seek to do here. *Id*. at 146-47.

8

## MEET AND CONFER

16. Local Bankruptcy Rule 9013-3(a) requires parties to confer on an opposed motion. The parties will confer prior to the hearing on this Motion, but the Movants also note that there is a global mediation regarding litigation surrounding the Policy and other insurance matters scheduled for late May.

*[Remainder of page intentionally left blank]*

# CONCLUSION

WHEREFORE, for the foregoing reasons, the Movants respectfully request that the Court overrule the Objection and grant the Motion and any further relief it deems just and proper.

Dated: April 22, 2024
New York, New York

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Rachel Ehrlich Albanese*
Rachel Ehrlich Albanese (#027542001)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com

Stephen C. Matthews (#055801994)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Telephone: (973) 520-2550
Facsimile: (973) 520-2551
Email: stephen.matthews@us.dlapiper.com

Stuart M. Brown (#026641988)
1201 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 397-2336
Email: stuart.brown@us.dlapiper.com

- and -

**WERNER AHARI MANGEL LLP**
Stacey E. Rufe (admitted *pro hac vice*)
2112 Pennsylvania Ave. NW
Suite 200
Washington, DC 20037
Telephone: (202) 599-1013
Email: srufe@wam.law

*Attorneys for Movants Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company*