| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP** <br> Kenneth J. Aulet, Esq. (admitted *pro hac vice*) <br> Seven Times Square <br> New York, New York 10036 <br> (212) 209-4800 <br> kaulet@brownrudnick.com <br><br> **BROWN RUDNICK LLP** <br> Tristan Axelrod, Esq. (admitted *pro hac vice*) <br> One Financial Center <br> Boston, MA 02111 <br> (617)856-8300 <br> taxelrod@brownrudnick.com <br><br> *General Counsel for the Plan Administrator* <br><br> **GENOVA BURNS LLC** <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> 110 Allen Rd., Suite 304 <br> Basking Ridge, NJ 07920 <br> (973) 230-2095 <br> DStolz@genovaburns.com <br> DClarke@genovaburns.com <br><br> *Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP** <br> Richard S. Kanowitz, Esq. (NJ Bar No. 047911992) <br> Lauren M. Sisson, Esq. (NJ Bar No. 394182022) <br> 30 Rockefeller Plaza, 26th Floor <br> New York, New York 10112 <br> (212) 659-7300 <br> richard.kanowitz@haynesboone.com <br> lauren.sisson@haynesboone.com <br><br> *Attorneys for the Plan Administrator* |
| In re: <br><br> BLOCKFI INC., *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 22-19361 (MBK) <br> (Jointly Administered under a Confirmed Plan[2]) |

# WIND-DOWN DEBTORS' REPLY IN SUPPORT OF SEVENTEENTH OMNIBUS OBJECTION TO CLAIM NOS. 15063, 15069, 18939, 18969, 18974, 18993, and 26899

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609]. Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Plan.

TO:   THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Wind-Down Debtors' Reply in Support of the Seventeenth Omnibus Objection to Claim Nos. 15063, 15069, 18939, 18969, 18974, 18993, and 26899* (the "Reply") addressing the response filed by creditor Brandon Weiss to the *Wind-Down Debtors' Seventeenth Omnibus Objection to Claims* (the "17th Objection") [Docket No. 2169]. In support of the Reply, the Wind-Down Debtors respectfully represent as follows:

**Factual Background**

1. On March 4, 2024, the Debtors filed the 17th Objection, seeking to disallow and expunge or modify and Allow certain proofs of claim as indicated on Schedule 1. The seven (7) proofs of claim numbered 15063, 15069, 18939, 18969, 18974, 18993, and 26899[3] filed by creditor Brandon Weiss ("Mr. Weiss") were contained on Schedule 1 (the "Weiss Claims"). Creditors whose claims were contained on Schedule 1 to the 17th Objection were directed to file any responses with Kroll Restructuring LLC ("Kroll") by 4:00 pm ET on April 2, 2024.

2. On April 2, 2024, less than 30 minutes prior to the response deadline for creditors, counsel for Mr. Weiss requested an adjournment of the hearing on the 17th Objection as to the Weiss Claims as his firm had just been retained. Counsel for the Plan Administrator advised Mr. Weiss's counsel that the Plan Administrator would consent to the adjournment and asked that the

---

[3] For reasons that are unclear, Mr. Weiss asserts in his response that Claim No. 26899 is a "combined claim, which was filed by Haynes/Boone." This is incorrect. Mr. Weiss filed all 7 claims at issue. The Wind-Down Debtors are seeking to (1) modify one of those claims, No. 26899, to match the books and records amount of Mr. Weiss's retail loan collateral, and (2) expunge the remaining claims.

2

adjournment request be submitted with the updated response deadline of April 18th at 4:00 pm ET.

3. Counsel for Mr. Weiss failed to include the updated response deadline in the adjournment requested but later confirmed his understanding of the deadline. Counsel for the parties discussed the proposed expungements and modification to the Weiss Claims as well as the content of prior creditor responses and the Court's prior rulings on same on April 12th. Specifically, counsel for the Plan Administrator advised Mr. Weiss's counsel of the Court's prior rulings on petition date valuation of claims. Counsel for the Plan Administrator circulated a form stipulation resolving the 17th Objection to the Weiss Claims on April 16th.

4. On April 17th, counsel for Mr. Weiss requested that the stipulation be modified to include specific information as to the amount and cryptocurrency type of the first interim distribution on the Weiss Claims. Counsel for the Plan Administrator advised that no modifications to the stipulation could be made in order to maintain uniformity among all creditors, but provided counsel with the exact distribution amounts and type as well as an explanation of the calculation later that day.

5. Counsel for the Plan Administrator reached out shortly after the response deadline had passed on April 18th seeking to confirm that Mr. Weiss (and another client represented by Mr. Weiss's counsel) would like to enter into the circulated stipulations. Counsel replied with a question seeking clarification about his other client's distribution amount and confirming the stipulation as to her claims, but did not address the Weiss Claims.

6. In the late afternoon on April 19th counsel sought the Plan Administrator's consent to file a reply on Monday, April 22nd. The Plan Administrator declined to consent, citing the

previous consent to an adjournment, repeated reminders as to the deadline, and failure to indicate that Mr. Weiss planned to file a response until more than 24 hours after the deadline.

7. Rather than file a response on Monday without consent as indicated, Mr. Weiss filed a response (the "Weiss Response") on Wednesday, April 24th, less than 24 hours prior to the hearing and after the deadline for the Plan Administrator to file a reply in support of the 17th Objection to the Weiss Claims.

8. The Weiss Response consists of multiple sections copied verbatim from the stipulation drafted by counsel to the Plan Administrator and an argument that the valuation of the Weiss Claims should be undertaken using the "true present value of the currencies maintained in his BlockFi account prior to filing." Weiss Response at 7.

9. The Weiss Response asserts that any fluctuations in the valuation of cryptocurrency should benefit the creditors of BlockFi and attempts to analogize the valuation of cryptocurrency to that of real property held by the debtor between the filing of a petition under Chapter 13 and a conversion to Chapter 7. *Id.* at 3–7. As discussed below, this analogy is inapt for several reasons.

## Reply

**A. The Bankruptcy Code, Chapter 11 Plan, and Multiple Prior Rulings in these Cases Require the Wind-Down Debtors to Value Claims in USD as of the Petition Date.**

10. Both the Bankruptcy Code and the confirmed Plan require that scheduled claim amounts be determined using coin prices as of the petition date. These requirements exist for good reason: the Wind-Down Debtors are insolvent; they simply do not have the money to return creditors' cryptocurrency in full in-kind as Mr. Weiss requests – or even to make full distributions on allowed claims valued as of the Petition Date.  The question is thus how to distribute the assets remaining with the Wind-Down Debtors, most of which are in cash (or cash to be distributed from parties such as FTX), not cryptocurrency.  The Plan resolves that question by requiring distribution

4

of assets *pro rata* based upon the market value of the Debtors' obligation to creditors on the Petition Date, consistent with the requirements of the Bankruptcy Code.

11. Indeed, this Court has ruled on the general issue raised by Mr. Weiss dozens, if not hundreds, of times. Virtually every set of claim objections filed by the Wind-Down Debtors has resulted in creditor responses contesting Petition Date valuation, and the Court has reviewed these responses and sustained the objection each time. The Court has also heard oral argument on the exact issue of returning loan collateral in full, in-kind and held:

> The Court has been guided by the terms of service with respect to all of these accounts. The Court is also guided, of course, by the plan which was consistent with the Code and Section 502(b). If there needs to be changes, the Court is not in a position to make the changes. It has to be congressional changes in how claims are treated taking to account new types of claims that arise. 502(b) calls for the dollarization of claims as of the petition date. And the Court is not in a position to pick and choose among creditors, especially with a confirmed plan that dictates the treatment of all creditors holding all types of claims based on all differing types of tokens and coins.

Transcript of Nov. 6, 2023 hearing, 13:10–13:21.

12. Section 502(b) of the Bankruptcy Code states that "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition."

13. Art.VI.F of the confirmed Plan states:

> As is required by section 502(b) of the Bankruptcy Code, each Account Holder's Claim is determined by the fair market value of the Digital Assets (based in United States dollars pursuant to the Digital Assets Conversion Table) held by the Account Holder at the Debtors as of the Petition Date at 11.59 p.m. UTC. This process is generally referred to as a "dollarization." Dollarization allows the Debtors to put all Account Holders' Claims on equal footing to calculate recoveries in accordance with the requirements of the Bankruptcy Code.

14. Failing to address the applicable law, the Weiss Response also fails to identify exactly when claim valuation should take place. In fact, the average BTC price has dropped several

5

thousand dollars since the filing of the Weiss Response.[4] It is not clear whether Mr. Weiss seeks a valuation of only the Weiss Claims at a date of his choosing, or if he is asking the Court to pick an arbitrary date for all creditors. Either choice is unfeasible, particularly given the substantial completion of the first interim distribution and the reconciliation of virtually all proofs of claim.

15. There is simply no doubt, at this time or at any time since the Plan Effective Date, that all customer claims must be valued as of the Petition Date. Any other outcome on this matter would, to the extent logistically possible, favor Mr. Weiss and prejudice hundreds of thousands of claimants whose claims have already been resolved, and who have already received Distributions as directed by this Court consistent with the Plan.

**B. Mr. Weiss Cites Inapplicable Authority in Support of His Position.**

16. In support of his argument, Mr. Weiss cites case law to the effect that a chapter 7 estate receives the benefit of post-petition appreciate of estate assets. The cited materials are irrelevant to Mr. Weiss's position.

17. *In re Castleman*, 631 B.R. 914 (Bankr. W.D. Wash. 2021) ("*Castleman*"), cited by Mr. Weiss, involved the valuation of real property held by a debtor at the time of filing a Chapter 13 petition that is later converted to a Chapter 7 case. The *Castleman* court held any increase in value during the pendency of the Chapter 13 inures to the benefit of Chapter 7 estate, and therefrom to creditors generally. *Castleman*, 631 B.R. at 918–19.

18. As an initial matter, Ninth Circuit case law regarding section 348 of the Bankruptcy Code does not override the plain language of section 502 and the Plan.

19. But even in the event that the *Castleman* decision was somehow persuasive as to the issue of claim valuation in a Chapter 11 case, it is irrelevant. To the extent the Wind-Down

---

[4] YAHOO! FINANCE, https://finance.yahoo.com/quote/BTC-USD/history?period1=1713916800&period2=1714415091, last accessed April 29, 2024.

6

Debtors have held cryptocurrency since the Petition Date, under *Castleman*, any increase in the value of such assets do indeed inure to the value of the *estates*, to be distributed *pro rata* according to the Plan. In other words, such increase in value to the estates results in increased distributions to *all similarly situated creditors*. Neither *Castleman* nor any other case cited by Mr. Weiss would require the Wind-Down Debtors to modify the face amount of Mr. Weiss's claim or his treatment under the Plan, as he appears to propose.

### C. Mr. Weiss Is Only Entitled to an Unsecured Claim.

20. Nor should Mr. Weiss's claim be construed as a secured claim, as the Weiss Response implies. Again, the Court has addressed this distinction numerous times and determined that parties that pledged collateral to BlockFi were rendered unsecured upon BlockFi's insolvency due to BlockFi's rehypothecation of the collateral and breach of relevant agreements.

21. The Loan and Security Agreement signed by retail loan collateral borrowers such as Mr. Weiss explicitly provided that BlockFi could "pledge, repledge, hypothecate, rehypothecate, sell, lend or otherwise transfer or use any amount of such Collateral, separately or together with other property, with all attendant rights of ownership from time to time, without notice to the Borrower any or all of the Collateral and that Lender may do so without retaining in its possession or control for delivery, a like amount of similar Collateral."[5]

22. BlockFi exercised the right to use the cryptocurrency pledged by borrowers or placed in interest accounts to generate returns that allowed them to make loans and pay interest to customers. The collapse of FTX, along with other events, tanked the cryptocurrency markets and resulted in the loss of significant assets. As a result, BlockFi was unable to return customers' collateral on demand.

---

[5] The terms of service for interest account holders contains virtually identical language as to cryptocurrency placed in an interest-bearing account.

23. Courts have uniformly held, even in the cryptocurrency context, that breach of a pledge agreement of this nature entitles the customer to an unsecured claim for the value of deposited collateral.  *See, e.g.*, *In re Celsius Network LLC*, 647 B.R. 631, 651 (Bankr. S.D.N.Y. 2023); *FirstBank Puerto Rico v. Barclays Capital Inc. (In re Lehman Brothers Holdings, Inc.)*, 492 B.R. 191, 195 (Bankr. S.D.N.Y. 2013), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 526 B.R. 481 (S.D.N.Y. 2014), as corrected (Dec. 29, 2014), *aff'd sub nom. In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016); *In re MJK Clearing, Inc.*, 286 B.R. 109, 121-23 (Bankr. D. Minn. 2002), *aff'd*, No. 01-4257 RJK, 2003 WL 1824937 (D. Minn. Apr. 7, 2003), aff'd, 371 F.3d 397 (8th Cir. 2004); *Secure Leverage Grp., Inc. v. Bodenstein*, 558 B.R. 226, 237 (N.D. Ill. 2016)*, aff'd sub nom. In re Peregrine Fin. Grp., Inc.*, 866 F.3d 775 (7th Cir. 2017), as amended (Aug. 8, 2017).

24. And of course, this Court has reached the same conclusion on this issue in connection with the Wind-Down Debtors' many omnibus objections and responses thereto.  There is simply no doubt that Mr. Weiss holds an unsecured claim for the value of cryptocurrency deposited in his account, with valuation to be conducted as of the Petition Date.

**WHEREFORE**, the Wind-Down Debtors respectfully request entry of the order sustaining the *Wind-Down Debtors' Seventeenth Omnibus Objection to Claim Nos. 15063, 15069, 18939, 18969, 18974, 18993, and 26899.*

*[Remainder of page intentionally left blank.]*

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 1, 2024 | /s/ *Daniel M. Stolz* |

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*