NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

In Re:
    BlockFi, Inc.,
        Debtors

Case No. 22-19361 (MBK)

Hearing Date: April 25, 2024

Chapter 11

Judge: Michael B. Kaplan

**MEMORANDUM DECISION**

This matter comes before the Court upon Mr. Van Tubergen's ("Van Tubergen") Motion for Reconsideration (the "Motion") (ECF No. 2142) of this Court's Opinion (the "Opinion") (ECF No. 2120) and subsequent Order (ECF No. 2121) granting the Wind-Down Debtor's ("BlockFi") Seventh Omnibus Objection to Claim No. 7233 (the "Order"), issued on February 8, 2024. In his submission, Van Tubergen asks this Court to reconsider its Order reducing Van Tubergen's claim from $10 million to $19.07. The Court fully considered the parties' submissions, as well as the arguments presented during the hearing held on April 25, 2024 (the "Hearing"). For the reasons set forth below, the Court declines to alter, amend, or provide relief from this Court's prior Order.

**I.    Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The claims review process is a statutory core proceeding and this Court has constitutional authority to enter a final

order. 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The following constitutes the Court's finding of fact pursuant to FED. R. BANKR. P. 7052.[1]

## II.    Background and Procedural History

The factual background and procedural history of this matter are well known to the parties and the portions relevant to the instant Motion are set forth in this Court's February 8, 2024 Opinion. As such, they will not be repeated in detail here.

In brief, on April 17, 2019, Van Tubergen and BlockFi Lending LLC entered into a prepetition lending relationship and executed Loan Service Agreements ("LSAs"), which functioned as the governing documents for the transactions. *See Wind Down Debtors' Reply to Response to Debtors' Seventh Omnibus Objection to Claim No. 7233 of John V. Van Tubergen Jr.* ("Wind Down Debtors' Reply"), Exhibit I, Flori Marquez Cert., ¶ 5, ECF No. 1963-10. The LSAs featured certain provisions for the liquidation of the collateral used to secure Van Tubergen's loans. *See Wind Down Debtors' Reply* ¶ 1, ECF No. 1963. Specifically, the LSAs required Van Tubergen to maintain a Loan to Value ("LTV") ratio where the outstanding principal balance of the loan was less than or equal to a certain percentage of the market value of the collateral. *Id*. The LSAs established a specific LTV ratio requirement that authorized BlockFi to liquidate the collateral with seventy-two (72) hours' notice if the LTV ratio of the collateral rose above 70% ("Triggering Point").[2] *See JVT Cert.*, Exhibit B ¶ 7(a), ECF No. 1496-3. Once BlockFi gave such notice, the LSAs provided that Van Tubergen could avoid liquidation by depositing additional collateral into his account to re-establish an LTV of fifty (50%) to seventy (70%) percent. *Id*. The LSAs additionally gave BlockFi the right to immediately liquidate the loan, without notice, if the LTV

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[2] With the exception of Loan No. 1a118e43, which had an 80% Triggering Point.

ratio rose above eighty percent (80%). *Id.* Lastly, the LSAs defined market value as either the "product of the amount of the collateral times the last trade price for that type of collateral on the Gemini website *or the market value determined by BlockFi in its reasonable discretion.*" *See JVT Reply*, Exhibit B, Section 7, ECF No. 1496-3 (emphasis added). BlockFi sold Van Tubergen's collateral based on an LTV ratio calculated using BlockFi's methodology. Van Tubergen argued that BlockFi applied the incorrect calculation to his collateral. In its Opinion, the Court found that BlockFi correctly liquidated Van Tubergen's collateral because the LSAs specifically gave BlockFi discretion to choose the calculation method and because BlockFi's calculation method was reasonable. Van Tubergen now seeks reconsideration of those findings.

### III.  Standard of Review

As Van Tubergen points out, the Federal Rules of Bankruptcy Procedure do not recognize a "motion for reconsideration", nor is it provided for in the Local Bankruptcy Rules. However, litigants may seek relief from an order of the bankruptcy court under Federal Rules of Civil Procedure 59 or 60, made applicable to bankruptcy cases through the Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively. Van Tubergen cites to both Rule 59(e) and 60(b) in his brief in support of the Motion.

Under Rule 60(b), there are six (6) enumerated bases for relief from any order of the bankruptcy court—many of which mirror the grounds for relief in a Rule 59(e) motion, including "mistake inadvertence, surprise, or excusable neglect". Fed. R. Civ. P. 60(b)(1). Rule 60(b) includes a "catch-all" basis, which indicates that a court may reconsider a prior order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, a motion for reconsideration "is an extraordinary remedy and is only appropriate in select and narrow instances." *McClees*, 2023 WL 4110656, at *2 (Bankr. D.N.J. June 20, 2023). Further, the moving party holds the heavy

burden of demonstrating more than mere disagreement with a Court's decision. *Id.* Nonetheless, "[i]n exercising its discretion in ruling on a motion for re-argument or reconsideration, the [c]ourt must keep an open mind . . . the [c]ourt should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct clear legal error." *Walzer v. Muriel Siebert & Co., Inc.*, 2010 WL 4366197, at 1 (D.N.J. Oct. 28, 2010), aff'd sub nom. *Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377 (3d Cir. 2011) (citing *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

> A court should only grant a Rule 59(e) motion
>
> > where the moving party shows that at least one of the following grounds is present: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

*In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018) (internal quotations and citations omitted).

This Court recognizes that, "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of, or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." *In re Christie*, 222 B.R. 64, 67–68 (Bankr. D.N.J. 1998). Lastly, this Court notes that reconsideration is an extraordinary remedy, and such motions should be granted sparingly. *See Lonvv. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991).

After reviewing the submissions, the Court finds that Van Tubergen fails to sufficiently establish that reconsideration is appropriate under Rule 59(e) and Rule 60(b).

### IV. Discussion

In support of his Motion, Van Tubergen asserts four (4) main arguments: (1) the Court was mistaken in adopting BlockFi's Loan to Value ("LTV") ratio calculation; (2) the Court overlooked

the applicability of Michigan law; (3) the Court's Opinion should be amended to reflect that BlockFi failed provide sufficient evidence of the issuance of notices required under the LSAs; and (4) the Opinion should be altered to reflect that BlockFi effectively admitted that it wrongfully liquidated Van Tubergen's collateral in connection with Loan No. 558207(a)(5).

In his Motion, Van Tubergen alleges mistake and failure to consider applicable law. Ultimately, the Court is not persuaded by Van Tubergen's arguments. Instead, this Court views Van Tubergen's Motion as an attempt to take a second bite at the apple. Indeed, the arguments raised in the Motion are not new— the parties briefed these arguments in the context of the initial claim objection and, following oral argument the Court issued its decision. The instant Motion offers no basis for reconsideration of the Court's decision.

V.    The Acceptable LTV Calculation Method

In his Motion, Van Tubergen re-asserts his belief, without any additional evidence or information, that BlockFi employed—and that this Court incorrectly accepted—BlockFi's LTV calculation method. As explained in this Court's Opinion, BlockFi adopted the lowest price point for each digital asset for purposes of valuation and liquidation of Van Tubergen's collateral. BlockFi then used that valuation of collateral to calculate the loan's LTV. Van Tubergen argues that BlockFi's LTV methodology was "patently unreasonable and uncertain as a matter of fact." *See Van Tubergen Motion* ¶ 2, ECF No. 2142-1.

However, as noted in this Court's prior decision, the LSAs explicitly define market value for purposes of calculating the LTV as either the "product of the amount of the collateral times the [first] trade price for that type of collateral on the Gemini website *or* the market value determined by BlockFi in its *reasonable discretion*." *See JVT Cert.*, Exhibit B ¶ 7(a), ECF No. 1496-3. (emphasis added). The LSAs clearly afford BlockFi discretion to determine the LTV formula

calculation. This Court previously determined BlockFi's utilized reasonable discretion in adopting its LTV calculation method. Van Tubergen offers no basis for this Court to revisit or amend the Court's prior finding.

In support of his Motion, Van Tubergen advocates for application of his own LTV calculation and asks this Court to take judicial notice of certain market data. However, his position ignores the parties' agreement. The LSAs' language does not require BlockFi to adopt any specific calculation method. Instead, it merely requires that BlockFi use reasonable discretion when determining a market value to apply in the LTV calculation. Thus, in the underlying claims objection, BlockFi was not obligated to establish that its valuation method was the *sole* or *best* available option—it only had to demonstrate that the discretion it used in making the relevant valuations was reasonable. The Court found that BlockFi satisfied that burden. The basis for that conclusion is set forth in the challenged Opinion and will not be repeated here. Even assuming that Van Tubergen's methodology is reasonable, or even *more* reasonable, BlockFi was not obligated to use it. The LSAs—agreements into which Van Tubergen entered voluntarily—gave BlockFi discretion to choose its valuation methodology. The Court found that its methodology was reasonable, and Van Tubergen's present Motion offers no reason for altering that conclusion.

Next, in support of his Motion, Van Tubergen asserts that BlockFi provided an insufficient explanation for its valuation method, and further argues that to the extent this Court finds BlockFi did provide an explanation, this Court should find BlockFi's valuation method "patently unreasonable." *Van Tubergen Brief* at 9, ECF No. 2142-1. In addition, Van Tubergen asks this Court to take judicial notice of certain market data he provided from the Gemini Database. *Van Tubergen Brief* at 14. The Court reiterates that BlockFi adequately explained the basis for its calculations, which used the lowest price point for each digital asset for purposes of collateral

valuation and liquidation. Van Tubergen acknowledges that, among other things, BlockFi "presented certain charts depicting the LTV calculations." *Van Tubergen Brief* at 13 (citing *Wind-Down Debtors' Reply*, ECF No. 1963). In light of BlockFi's explanations and submissions, this Court determined that BlockFi's methodology was reasonable. The basis for that conclusion is set forth in the challenged Opinion and will not be repeated here. To the extent Mr. Van Tubergen disagrees, he may file an appeal; however, his Motion does not warrant reconsideration of the Court's decision.

Van Tubergen also asserts that this Court erred by relying on the testimony of Flori Marquez. At the time of the January 16, 2024 hearing, Van Tubergen did not object to the introduction of Ms. Marquez's testimony and, thus, effectively waived any objections to the entry of her testimony into evidence. Nevertheless, the Court determines that Van Tubergen's arguments regarding Ms. Marquez's testimony are without merit. Van Tubergen focuses on that fact that Ms. Marquez could not remember the name of certain pricing feeds BlockFi had used in prior years, and he alleges that her knowledge is secondhand because she relied on "separate teams comprised of BlockFi employees and even non BlockFi employees such as attorneys and outside advisors." *Van Tubergen Brief* at 9. In sum, Van Tubergen argues that Ms. Marquez lacks the requisite personal knowledge under the Federal Rule of Evidence 602. However, Rule 602's personal knowledge requirement does not require a witness to have a perfect memory; rather, "personal knowledge may consist of what the witness thinks he knows from personal perception." *C.P. v. New Jersey Dep't of Educ.*, 2022 WL 21297115, at *2 (D.N.J. Sept. 7, 2022). Moreover, Ms. Marquez testified that "she looked through the loan's transactions history and [their] books and records" and that she was part of the team that prepared the charts for her certification—all of which suggests personal knowledge. *Van Tubergen Motion, Exhibit OO, January 16, 2024 Hr'g Tr.* 54:2-6. As such, the

Court finds no issue with Ms. Marquez's testimony. Furthermore, the Court notes that it did not rely solely on Ms. Marquez's testimony in reaching its conclusion. Thus, nothing in Van Tubergen's arguments warrant amendment of this Court's prior Order.

VI.     **Applicability of Michigan Law**

Van Tubergen argues that this Court's Opinion gave "insufficient consideration" to the applicability of Michigan law and that the Opinion incorrectly suggested that Van Tubergen's arguments thereunder were premised on solely a "straight breach of contract analysis." *Van Tubergen Brief* at 13. However, Van Tubergen's state law claims for breach of contract and the covenant of good faith and fair dealing are undeniably bottomed on his contention that BlockFi breached the parties' agreement—the controlling LSAs.

At the outset, this Court notes that it already determined that BlockFi did not breach the parties' agreement and that the contract was not unconscionable given that Van Tubergen was a sophisticated investor who knew the risks of his investments. The Court takes this opportunity to clarify that there was no violation under Michigan law for claims of unconscionability or breach of contract. Van Tubergen's arguments are bottomed on alleged breaches of good faith and fair dealing, unconscionability, and common law agency law. Based on the evidence presented, this Court summarily determined that there was no unconscionability or breach of good faith and fair dealing. This Court finds it unnecessary to delve further into the applicability of Michigan law. Simply put, Van Tubergen cannot present a claim under Michigan law and an analysis under Michigan law at this time would be a futile exercise. Nothing in the Motion warrants reconsideration of the Court's original Opinion. Rather, Van Tubergen simply disagrees with this Court's Opinion and, in such a case, Van Tubergen's concerns are more appropriately addressed on appeal.

### VII.    BlockFi Provided Sufficient Notice Under the LSAs

In his Motion, Van Tubergen asserts that BlockFi did not provide him with the required seventy-two (72) hour notice prior to liquidating his loans, and that this Court erred in ruling that BlockFi's notice was sufficient. Van Tubergen argues that reconsideration is proper because the record establishes that BlockFi did not comply with the requisite seventy-two (72) hour notice period. *Van Tubergen Brief* at 24.

In a section labeled "Other Proposed Amendments and Alterations to the Decision", Van Tubergen alleges that BlockFi did not place proof of the notices for liquidation into evidence. *Van Tubergen Brief* at 18. However, Van Tubergen fails to explain how the Court's prior finding on notice was made in error. Rather, he simply argues that the evidence BlockFi offered "[was] merely data purporting that such notices were issued, however it is not tantamount to the notices themselves." *Id.* The Court determined that Van Tubergen did not satisfy his burden at the time of the initial claim objection, and Van Tubergen provides no basis for reconsideration of the Court's decision here.

First, BlockFi *did* produce evidence of notice in the form of multiple emails sent to Van Tubergen.[3] Moreover, the only evidence Van Tubergen presented of notice regarding Loan #3 demonstrates that he did, in fact, receive notice that his loan was in default and that his collateral was "eligible for sale." *Sur-Reply, Exhibit II,* ECF No. 2039-2. The Court made findings regarding the issue of notice in the prior Opinion and Van Tubergen's Motion simply reiterates the arguments previously presented to this Court. To the extent Van Tubergen disagrees with this Court's findings, he may raise those issues on appeal.

---

[3] This document does not appear on the docket and was admitted into evidence at the evidentiary hearing held on January 16, 2024.

**VIII.   BlockFi's Alleged Wrongful Liquidation of Loan No. 558207(a)(5)**

Next, in the same section of his brief, Van Tubergen asks this Court to alter its Opinion to find that BlockFi effectively admitted that it wrongfully liquidated Van Tubergen's collateral for Loan No. 558207(a)(5). This Court finds that Van Tubergen's argument is undeveloped and does not warrant further discussion beyond the basis that this Court set forth in its Opinion. This Court does not view BlockFi as having admitted a breach in its liquidation process. To the extent Van Tubergen is dissatisfied with the Court's Opinion, Van Tubergen can properly raise his arguments in an appeal.

**IX.   Van Tubergen's Alternative Relief to the Order**

Finally, in his Motion Van Tubergen invokes Bankruptcy Rule 8007, which provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . (A) a stay of a judgement, order or decree of the bankruptcy court pending appeal[.]" FED R. BANKR. P. 8007(A)(1)(A). Given that no notice of appeal has been filed in this matter, the Court declines to address this matter further.

[Remainder of page intentionally left blank.]

**X.    Conclusion**

In conclusion, Van Tubergen fails to establish an intervening change in controlling law; the availability of new evidence; the need to correct a clear error of law or fact, or to prevent manifest injustice; or any other grounds that would warrant reconsideration under either Rule 59(e) or 60(b). Rather, Van Tubergen seeks to relitigate matters that were, or could have been, raised at the time of the initial claim objection.

For the aforementioned reasons, this Court denies Van Tubergen's Motion for Reconsideration. The Court will enter an appropriate Order.

Dated: May 16, 2024

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge