| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>          Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered under a Confirmed Plan[2])<br><br>Hearing Date: August 15, 2024 at 11:30 a.m. ET |

## NOTICE OF WIND-DOWN DEBTORS' MOTION TO APPROVE
## KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609]. Capitalized terms not otherwise defined herein shall have the meanings contained in the Plan.

PLEASE TAKE NOTICE that the estates of BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), by and through its undersigned counsel, will move before the Honorable Michael B. Kaplan, Chief United States Bankruptcy Judge for the United States Bankruptcy Court for the District of New Jersey, Trenton Vicinage, pursuant to 11 U.S.C. § 107(b), Fed. R. Bankr. P. 9018 and D.N.J. LBR 9018-1 for entry of an order substantially in the form submitted herewith as Exhibit A granting the *Wind-Down Debtors' Motion to Approve KYC/ALM Protocols for US-Based Accounts* (the "Motion to Approve Protocols").

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion to Approve Protocols will be held on **August 15, 2024 at 11:30 a.m. (ET)** or as soon thereafter as counsel may be heard before Judge Kaplan at the Clarkson S. Fisher U.S. Courthouse, located at 402 East State Street, Trenton, New Jersey 08608, in Courtroom No. 8.

PLEASE TAKE FURTHER NOTICE that the Wind-Down Debtors will be relying on the Motion to Approve Protocols and that no brief is being filed since the legal basis upon which relief should be granted is set forth in the motion.

PLEASE TAKE FURTHER NOTICE that, in accordance with D.N.J. LBR 9013-2(a)(2), any objections must be filed with the Clerk of the United States Bankruptcy Court, 50 Walnut Street, 3rd Floor, Courtroom 3A, Newark, New Jersey 07102, and served upon Genova Burns, LLC, Attn: Daniel M. Stolz, Esq., 110 Allen Road, Ste. 304, Basking Ridge, New Jersey **so they are received no later than August 8, 2024**.

.

**PLEASE TAKE FURTHER NOTICE** that in the absence of any objections, the relief

requested in the Motion to Seal may be granted without further notice.


Respectfully Submitted,

Dated: June 28, 2024                        /s/ *Daniel M. Stolz*
                                            _____

                                            **GENOVA BURNS LLC**
                                            Daniel M. Stolz, Esq.
                                            Donald W. Clarke, Esq.
                                            110 Allen Rd., Suite 304
                                            Basking Ridge, NJ 07920
                                            (973) 230-2095
                                            DStolz@genovaburns.com
                                            DClarke@genovaburns.com

                                            *Local Counsel to the Plan Administrator*

<table>
<tr><td colspan="2">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)
</td></tr>
<tr><td>

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel for the Plan Administrator*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel for the Plan Administrator*
</td><td>

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*
</td></tr>
<tr><td>

In re:

BLOCKFI INC., *et al.*,

Debtors.[1]
</td><td>

Chapter 11

Case No. 22-19361 (MBK)

(Jointly Administered under a Confirmed Plan[2])

Hearing Date: August 15, 2024 at 11:30 a.m. ET
</td></tr>
</table>

## WIND-DOWN DEBTORS' MOTION
## TO APPROVE KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS

TO:    THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED
STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]    On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609]. Capitalized terms not otherwise defined herein shall have the meanings contained in the Plan.

BlockFi Inc., and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby submit this *Motion to Approve KYC/AML Protocols for US-Based Accounts* (the "Motion") requesting entry of an order substantially in the form attached hereto as Exhibit A approving the KYC/AML protocols discussed herein.  In support of this Motion, the Wind-Down Debtors submit the *Declaration of Flori Marquez in Support of Wind-Down Debtors' Motion to Approve KYC/AML Protocols for US-Based Accounts* (the "Marquez Declaration"), attached hereto as Exhibit C, and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      This is not an ordinary bankruptcy case.  In an ordinary bankruptcy case, claims are allowed, and a trustee or other entity makes distributions upon allowed claims.  This case is different because BlockFi is considered a financial institution that must comply with an array of know-your-customer ("KYC") and anti-money laundering ("AML") laws and regulations (collectively, the "KYC/AML Regulations," which include but are not limited to those described below) before customers may open accounts and BlockFi may make payments to customers.

2.      Certain KYC/AML Regulations remain applicable to BlockFi even as it winds down through these proceedings.  Thus, notwithstanding that claims reconciliation is nearly complete, the Wind-Down Debtors must resolve potential KYC/AML compliance concerns before making distributions on account of these claims – and in some cases, such as where claims are potentially tied to terrorist activities, may make no distributions at all.  The Wind-Down Debtors bring the present Motion in an abundance of caution to ensure an appropriate and expeditious process to satisfy their obligations under the various KYC/AML Regulations concerning domestic

account holders.[3]

3.     Prior to the Petition Date, BlockFi, like other crypto and traditional financial institutions, processed enormous numbers of transactions and transfers and maintained a large compliance department (the "Compliance Team").   BlockFi's KYC and AML compliance procedures included leveraging third-party and in-house software programs to flag suspicious activity prior to and after account opening.  BlockFi's KYC procedures included utilizing Persona software to aid in identifying customer identity issues (including identity theft) both in connection with account opening and regularly thereafter, as well as screening customers against certain government watchlists (including PEP and OFAC lists).  BlockFi's AML procedures included utilizing Chainalysis software to identify issues with customer transactions, including potential links to criminal activity.  These procedures aided the Compliance Teams efforts to identify a wide variety of potential issues, ranging from comparatively less serious (*e.g.*, indirect connections to gambling revenue, a potential indication of money-laundering activities), to more serious (*e.g.*, direct connections to financing of terrorist activities).

4.     After a flag was identified, BlockFi's Compliance Team reviewed the flagged account.  BlockFi's Compliance Team then conducted a manual review of the flagged account in accordance with the nature and risk level associated with the flag.  Flagged accounts were frozen pending review and were only unfrozen upon a finding that the flag was either a false positive or sufficiently unlikely to be violative of any applicable KYC or AML laws or regulations.

5.     As of the date hereof, BlockFi had identified approximately 1,700 accounts (listed

---

[3]    For the avoidance of doubt, this Motion pertains only to domestic account holders, and does not pertain to international customers who have accounts with BlockFi International Ltd. ("BlockFi International").  The Wind-Down Debtors anticipate that the different regulatory scheme in Bermuda will likely require a modified or different process.  Therefore, treatment of frozen international account holder accounts will be dealt with separately.

on <u>Schedule 1</u> to <u>Exhibit A</u> attached hereto, the "<u>Flagged Accounts</u>") held by domestic account

holders (*i.e.*, non BlockFi International customers) (i) which were flagged for possible KYC or

AML issues, and (ii) on account of which claimants would have a claim in excess of the $10.00

De Minimis Claim Threshold as defined in the Plan.  As described in greater detail below, the

Flagged Accounts are in various stages of review.

      6.     BlockFi's records available to the Wind-Down Debtors include an index of the

Flagged Accounts with indicators, as to each, of:

      a.     the nature of the flag (*e.g.*, identity theft, gambling, terrorism), with notes on depth
or type of exposure as applicable (*e.g.*, direct versus indirect);[4] and

      b.     prior investigative efforts and clearance recommendations (where applicable).

In sum, certain of these flags – if accurate – militate against distribution of funds based on the

affected accounts.

      7.     The records available to the Wind-Down Debtors indicate that certain of the

Flagged Accounts may have been reviewed by BlockFi's Compliance Team prior to these Chapter

11 Cases.  For certain of these accounts, the records suggest that BlockFi completed its manual

review, and recommended that the account in question be unfrozen (suggesting that the flag raised

by the applicable software program was resolved).  The records available to the Wind-Down

Debtors, however, are limited and do not contain sufficient information regarding the investigative

process undertaken or details concerning the grounds on which the recommendations were made

such that the Wind-Down Debtors may rely solely upon prior recommendations, where available.

Moreover, all but two members of BlockFi's core Compliance Team have left BlockFi since the

---

[4]    Direct exposure refers to customer wallets that have themselves been flagged as possibly violative of AML/KYC
regulations.  Indirect exposure refers to wallets that are in some way associated with other wallets that have been
flagged as possibly violative of AML/KYC regulations but have not themselves been flagged.

Petition Date.[5]    In light of the limited insight as to the nature and bases for these clearance recommendations, the Plan Administrator does not believe that these clearance recommendations, absent additional information, may be relied upon to ensure compliance with the KYC/AML Regulations.

8.      The Wind-Down Debtors submit this Motion requesting entry of an order substantially in the form attached hereto as Exhibit A establishing certain protocols (collectively, the "KYC/AML Protocols," or, the "Protocols") concerning these Flagged Accounts that will enable them to continue the risk-based assessment of the Flagged Accounts in accordance with the attendant circumstances and in compliance with their ongoing KYC and AML obligations.  The requested KYC/AML Protocols are summarized as follows:

    i.    Categorize Flagged Accounts. Given the attendant circumstances, including the volume of Flagged Accounts and comparatively little resources with which to conduct individualized reviews, the Wind-Down Debtors propose to categorize the Flagged Accounts based on risk according to the nature of the flags.  Lower risk accounts will be subject to lower-level review, while higher risk accounts will be subject to more stringent review according to the Protocols detailed herein.

    ii.    Review.  The Flagged Accounts are in various stages of the review process. However, as much of the core Compliance Team tasked with reviewing flagged accounts is no longer with the Company, the Wind-Down Debtors request authority to review any Flagged Accounts, including those that have been subject to any degree of earlier review by BlockFi,[6] in their reasonable discretion.  As part of the review, the Wind-Down Debtors, in their reasonable discretion, may (A) request from holders of Flagged Accounts, information that will aid in their review, including KYC information; and (B) confer with law enforcement authorities to determine whether they have any interest or concern regarding the Flagged Accounts.

    iii.    Withhold Distributions.  The Wind-Down Debtors request authority to withhold

---

[5]    One individual was brought on shortly before the Petition Date and does not have sufficient knowledge of BlockFi's pre-petition compliance practices or specific decisions related thereto to inform the records that the Wind-Down Debtors possess.  The other individual is BlockFi's former Chief Compliance Officer, who has re-joined the Wind-Down Debtors in a consulting and advisory capacity to aid in, among other things, the procedures described herein.

[6]    As described herein, Flagged Accounts previously reviewed and unfrozen based on such review will receive priority.

any and all distributions in their reasonable discretion and as provided in the KYC/AML Protocols.

iv.  <u>Due Process Considerations</u>.  Unless directed or prohibited by law enforcement authorities from doing so, the Wind-Down Debtors request authorization to provide holders of Flagged Accounts with notice[7] and for such holders to timely move this Court for relief.  Any such motion for relief must include fulsome information regarding, among other things, source(s) of the funds in the Flagged Account. Upon any such motion, the Wind-Down Debtors retain their right to (1) request any additional KYC or other information (notwithstanding any prior submission thereof), as the Wind-Down Debtors reasonably deem necessary to determine whether relief is warranted, and (2) oppose any requested relief.

v.  <u>High Risk</u> Accounts. Flagged Accounts based on connections to criminal and other illicit activity, including where the Wind-Down Debtors have substantial concerns that distributions thereon may violate applicable criminal law ("<u>High-Risk Accounts</u>") will not be eligible for distribution unless and until the Holder of such Frozen Account obtains an Order of the Bankruptcy Court, upon motion and notice to affected parties therefore (to include all regulatory and enforcement bodies with jurisdiction concerning the flagged activity), directing the Wind-Down Debtors to make such distribution.

vi.  <u>Distributions</u>.  Subject to the foregoing paragraphs, the Wind-Down Debtors request, without further authorization of this Court, authority to direct the relevant distribution agents to make distributions to the Flagged Accounts to the extent the Wind-Down Debtors and their agents, in their reasonable discretion, determine that such distributions are unlikely to violate applicable KYC/AML Regulations and are otherwise consistent with applicable law, the Bankruptcy Code, and the Plan.[8]

vii.  <u>Liability</u>.  The Wind-Down Debtors seek entry of an order exculpating them and their affiliates, including the Wind-Down Debtors' Oversight Committee, the Plan Administrator, the Wind-Down Debtors' current employees, and the Wind-Down Debtors' professionals, from liability related to making or withholding distributions in accordance with the Plan and the KYC/AML Protocols.

9.  The Wind-Down Debtors remain hyper-focused on making distributions expeditiously and are preparing to do so in the coming weeks.  The Wind-Down Debtors also cannot and will not violate applicable non-bankruptcy law or ethics principles, or knowingly

---

[7]  The Wind-Down Debtors request authorization to provide notice to holders of Flagged Accounts of their status as Frozen Account holders.

[8]  The relevant distribution agents will also ensure their compliance with applicable KYC/AML regulations and any other applicable laws prior to making any distributions.

contribute to criminal activity. The Wind-Down Debtors, therefore, request that this Court

approve the KYC/AML Protocols discussed herein, which will permit the Wind-Down Debtors to

continue to make distributions to customers within lawful bounds.

## FACTUAL BACKGROUND

10.     As a financial institution, BlockFi is subject to certain KYC/AML Regulations

which impact its ability to make payments to customers. These include (but are not necessarily

limited to):

- The Bank Secrecy Act. The purpose of the Bank Secrecy Act is to, among other things, "prevent the laundering of money and the financing of terrorism through the establishment by financial institutions of reasonably designed risk-based programs to combat money laundering and the financing of terrorism." 31 U.S.C. § 5311(2).

- Anti-Terrorism Act. The Anti-Terrorism Act (the "ATA")[9] prohibits "knowingly provid[ing] material support or resources to a foreign terrorist organization, or attempts or conspires to do so." 18 U.S.C. § 2339B(a)(1). The ATA also requires "any financial institution that becomes aware that it has possession of, or control over, any funds in which a foreign terrorist organization, or its agent, has an interest, shall— (A)retain possession of, or maintain control over, such funds; and (B)report to the Secretary the existence of such funds in accordance with regulations issued by the Secretary" and provides civil penalties for any knowing violations thereof. *See* 18 U.S.C. §§ 2339B(a)(2), (b).

- Unlawful Internet Gambling Enforcement Act of 2006. The Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") prohibits any person engaged in the business of gambling from knowingly accepting payments in connection with the participation of another person in unlawful Internet gambling. *See* 31 U.S.C. § 5363. UIGEA also requires payment systems that could be used to facilitate such illegal payments to establish policies and procedures to identify and otherwise prohibit these transactions. *See* 31 U.S.C. § 5364(a).

- Child Abuse. Numerous federal laws protect children against a myriad of abuses. These protections include those related to: (a) child pornography (*See* 18 U.S.C. §§ 2251, *et seq.*); (b) child sex trafficking (18 U.S.C. § 1591); (c) child sex abuse (18 U.S.C. §§ 2241, *et seq.*); (d) extraterritorial sexual exploitation of children (18 U.S.C. §§ 2423(c), (d), 2251(c), 2260(a), 1591, 1596); and (e) obscenity (18 U.S.C. §§ 1466(A), 1470).

---

[9]     The Anti-Terrorism Act is codified at 18 U.S.C. § 2331-2339.

- <u>Rules of Professional Conduct</u>.  The Model Rules of Professional Conduct require, among other things, that counsel exercise independent professional judgment and consider moral, social, and political factors, in advising the client (Rule 2.1); and abstain from conduct prejudicial to the administration of justice (Rule 8.4(d)).

11.     Prior to the Petition Date, in the normal course of its business, BlockFi followed specific procedures to identify KYC and AML issues and remain in compliance with applicable KYC/AML Regulations.  BlockFi's KYC/AML procedures utilized certain software applications, including those developed by Chainalysis Inc. ("<u>Chainalysis</u>"), a leading blockchain forensics firm, and Persona Identities Inc. ("<u>Persona</u>"), a third-party identity verification provider, as well as manual review by BlockFi's Compliance Team.  At its height, BlockFi employed approximately 50 individuals dedicated to reviewing KYC and AML issues. Prior to the Petition Date, BlockFi reduced its Compliance Team to approximately 14, anticipating a decline in usage (and concurrent with a larger reduction in force conducted as a cost-savings measure).  As of the date hereof, only two individuals remain from the Compliance Team.  One individual was brought on shortly before the Petition Date and does not have sufficient knowledge of BlockFi's pre-petition compliance practices or specific decisions related thereto to inform the records that the Wind-Down Debtors possess.  The other individual was formerly BlockFi's Chief Compliance Officer, who has been engaged in a consulting and advisory capacity by the Wind-Down Debtors to, among other things, aid in the procedures described herein.

### A.     **<u>KYC Review</u>.**

12.     BlockFi utilized Persona software to detect possible identity theft issues, among other checks.  Prior to opening an account with BlockFi, potential customers were required to submit certain data through Persona, which Persona compared against lists of politically exposed

persons ("PEP")[10] and sanctioned persons and entities, including but not limited to lists

maintained by the Office of Foreign Assets Control ("OFAC").[11]

13.    If a potential customer was flagged for inclusion on an applicable list, BlockFi's

Compliance Team would manually review the flag to determine whether it was a false positive.[12]

Notably, to the best of the Wind-Down Debtors' knowledge, there has never been a positive

match for an OFAC-listed person at any time in BlockFi's history.

14.    Following the onboarding process, BlockFi's customers were screened by

Persona daily for any subsequent inclusion on sanctions lists.  Additionally, customers were

screened by Persona in connection with any withdrawal requests to, among other things, flag

any potential identity theft issues.[13]

**B.    AML Review.**

15.    BlockFi utilized Chainalysis to monitor the origin and destination of funds

transmitted to and withdrawn from accounts with BlockFi.  The Chainalysis software identifies

the level and type of risk associated with wallet accounts analyzed thereunder.  As described by

Jonathan Levin, the Co-Founder and Chief Strategy Officer of Chainalysis in written testimony

---

[10]    A politically exposed person is, generally, an individual entrusted with a prominent public function.  *See, e.g.*,
https://www.fatf-gafi.org/en/home.html.  A PEP may be an officeholder, close associate thereof, celebrity
ambassador, or any other person arguably associated with state functions.

[11]    OFAC is a division of the U.S. Department of the Treasury tasked with enforcement of economic and trade
sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes,
terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of
mass destruction, and other treats to the national security, foreign policy or economic interest of the United States.
OFAC maintains lists of blocked individuals and companies and provides instructions to determine valid matches
to listed persons and entities.  *See* https://ofac.treasury.gov/.

[12]    *E.g.*, "John Smith" and other common names are likely to be (and frequently are) flagged by Persona for inclusion
on a sanctions list.  BlockFi's Compliance Team would subsequently review the Persona data provided to
determine whether the potential customer, John Smith, is the same John Smith on the sanctions list based on age,
location and other distinguishing information.

[13]    By way of example, if a withdrawal request did not match the information provided at onboarding, Persona would
issue a possible identity theft flag, whereby BlockFi would require current Persona data be submitted.

before the Senate Banking Committee on March 17, 2022:

> "Most cryptocurrency volume travels through services, including legal entities like retail exchanges or illicit entities like darknet markets. To identify and assess the risk of a service, Chainalysis groups the wallet addresses into clusters. Then we attribute the clusters to specific entities and organizations (*e.g.*, a particular exchange, mixing service, or darknet market, etc.). After attributing the clusters to a specific entity, we then categorize them according to the type of real-world service that they belong to. Chainalysis refers to these categories as Service Categories."[14]

The Service Categories, as defined by Chainalysis, include a litany of items ranging from the comparatively benign (*i.e.*, token smart contract) to the more problematic (*i.e.*, child abuse material site and terrorist financing).[15]

16.    Chainalysis identifies material risk by type (*i.e.*, token smart contract vs. terrorist financing) and level of exposure.[16]  Chainalysis then identifies low, medium, high, and severe risk transactions, each of which automatically creates an alert for manual review by BlockFi's employees.

**C.    The Chapter 11 Cases.**

17.    On November 28, 2022 (the "Petition Date"), the Debtors filed these Chapter 11 Cases.  On October 3, 2023, this Court confirmed the Plan, which went effective on October 24, 2023 (the "Effective Date").  Between the Petition Date and the Effective Date, the Debtors operated and managed their businesses as debtors-in-possession under sections 1107 and 1108 of

---

[14]    chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.banking.senate.gov/imo/media/doc/Levin%20Testimony%203-17-223.pdf, Appendix C.

[15]    *See*    chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.banking.senate.gov/imo/media/doc/Levin%20Testimony%203-17-223.pdf, Appendix C.

[16]    Chainalaysis defines "exposure" as the types of addresses and services to which the target address has been exposed and categorizes exposure as "direct" or "indirect." *See* Chainalysis, *Indirect Exposure: Why You Need to Look Beyond Direct Counterparties to Understand Cryptocurrency Address Risk* (Nov. 25, 2020), https://blog.chainalysis.com/reports/cryptocurrency-risk-blockchain-analysis-indirect-exposure/.

the Bankruptcy Code.

18.     Under the Plan, the Plan Administrator is responsible for, among other things,
"implementing the Wind-Down and making distributions contemplated by the Plan."  Plan Art.
IV.D.6.

    **D.**     **The Wind-Down Debtors KYC/AML Review.**

19.     As of the date hereof, there are approximately 1,700 Flagged Accounts.  The Wind-
Down Debtors have access to associated records, including certain Persona and Chainalysis data,
which identify each Flagged Account and the type and nature of any flags.

20.     In addition to prior Persona and Chainanlysis records, the Wind-Down Debtors
continue to have access to, and regularly run, Persona searches. As part of the KYC/AML
Protocols described herein, the Wind-Down Debtors anticipate continuing to leverage Persona to
facilitate their KYC review.  Although much of the core Compliance Team is no longer able to
assist with any ongoing review, employees that remain with the Wind-Down Debtors are well
trained and capable of carrying out Persona and other risk-based review processes described
herein.

21.     As of the Petition Date, certain of the Flagged Accounts have not been manually
reviewed at all, while others are in varying stages of review.  In some cases, BlockFi employees
appear to have recommended unfreezing accounts following manual review.  However, there are
no records of the process undertaken to reach such recommendation, and the Plan Administrator
does not believe such recommendations, standing alone, are sufficient to warrant unfreezing the
Flagged Accounts.

11

## PROPOSED KYC/AML PROTOCOLS

22.     The Wind-Down Debtors respectfully request that the Court authorize and direct

the Wind-Down Debtors to adopt and implement the following KYC/AML Protocols with

respect to the Flagged Accounts:[17]

## I.     Review and Distribution Determinations.

23.     As to each Flagged Account, the Wind-Down Debtors shall categorize accounts

by risk level based on the type and nature of the applicable flag(s), after which the Wind-Down

Debtors will review Persona and Chainalysis outcomes in connection with the following

categories (flags) and render determinations as set forth below.

### A.     Identity Theft Review.

24.     Accounts flagged for insufficient identity information or risk of identity theft

shall be reviewed as follows, consistent with BlockFi's pre-petition compliance practices except

as to sub-paragraph (a).

a.     Accounts flagged solely for insufficient identity information or risk of identity theft for which the claim amount is less than or equal to $2,000 shall be unfrozen and distributions made thereon.  The following procedures set forth in sub-paragraphs (b)-(d) shall apply with respect to accounts with multiple flags and/or claim amounts greater than $2,000.

b.     The Wind-Down Debtors will review the information available to them to determine whether there is a sufficient likelihood that making a distribution as to an account would violate applicable KYC Regulations.   Where the Wind-Down Debtors determine that there is not a sufficient likelihood of a violation, they will make distributions on such accounts.

c.     Where the Wind-Down Debtors either (i) determine that there is a sufficient likelihood of a violation, or (ii) do not possess adequate information to make a determination, they will request additional information from the account holder (including without limitation new or verified copies of information provided to

---

[17]   For the avoidance of doubt, these Protocols shall not, and shall not be interpreted to, prohibit the Wind-Down Debtors from taking any action required by law, including without limitation any reporting or other obligations under applicable law with respect to suspicious account activity.

BlockFi previously).

d.     The Wind-Down Debtors will review and/or use Persona to screen the Flagged Accounts and make any subsequent determination thereafter, including to make distributions or continue to freeze the account. A determination by the Wind-Down Debtors to keep the account frozen will be subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols.

**B.     OFAC/PEP Review.**

25.     Accounts flagged in connection with OFAC or other sanctions list restrictions

shall be reviewed to determine whether the account holder is a valid match for the restricted

individual or entity.

a.     If the Wind-Down Debtors determine that the account holder is not a valid match to the applicable list, the Wind-Down Debtors will clear the account holder to receive distributions.

b.     If the Wind-Down Debtors identify a valid match against OFAC or any other sanctions list, the Wind-Down Debtors will freeze distributions subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols and report the match to OFAC and other appropriate parties consistent with OFAC guidance.

c.     If the Wind-Down Debtors identify a match to a PEP but not linked to any OFAC or other sanctions list, the Wind-Down Debtors will review and make a determination in their discretion based on applicable guidance from OFAC or any comparable organization.  Such determination may include making a distribution or freezing the account subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols.

**C.     Chainalysis Flags: Exposure to Criminal Activity.**

*i.     Low-Risk Accounts*

26.     Low-risk accounts will not be subject to further review, and distributions will be

made on account thereof.

*ii.     Medium-Risk Accounts*

27.     Medium-risk accounts for which the account balance is less than or equal to

$2,000 will not be subject to further review, and distributions will be made on account thereof.

Medium-risk accounts for which the account balance is greater than $2,000 will be subject to

13

further review.  Following this review, the Wind-Down Debtors, in their reasonable discretion, may determine to clear an account and make distributions thereon, or freeze an account whereby such account would be subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols.

    *iii.* *High-Risk Accounts*

28. High-Risk Accounts will be frozen and subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols.

**D.** **Previously Unfrozen Accounts.**

29. As mentioned above, certain of the Flagged Accounts appear to have been reviewed, to some extent, by BlockFi's Compliance Team prior to the Petition Date.  In certain instances, the Compliance Team appear to have issued recommendations to, and in fact did, unfreeze accounts.  Following the Petition Date, BlockFi determined to freeze accounts flagged by Persona for possible identity theft issues, notwithstanding whether the account was reviewed and previously unfrozen.

30. The Wind-Down Debtors are working quickly to re-review each of these accounts utilizing Persona and will prioritize review of these accounts.  The Wind-Down Debtors intend to make distributions on account of each of these accounts following their review and absent any determination to the contrary.

**II.** **Notice and Opportunity for Relief.**

31. If the Wind-Down Debtors determine to freeze distributions pursuant to the preceding Section I of these KYC/AML Protocols (each, a "Frozen Account" held by a "Frozen Account Holder"):

  a. The Wind-Down Debtors shall provide notice to the Frozen Account Holder of such determination (a "Freeze Notice").  In the absence of a lawful order or request from law enforcement authorities, such Freeze Notice shall include:

    1.      information concerning the Claim associated with the Frozen Account; and

    2.      copies of these Protocols and the order of the Bankruptcy Court approving these Protocols.

b.      Such Freeze Notice shall be delivered to the Frozen Account Holder at all addresses provided thereby.  The Wind-Down Debtors may, but need not, make further efforts to locate the Frozen Account Holder and provide the Freeze Notice.  The first attempted issuance of the Freeze Notice shall constitute an attempted distribution pursuant to Article VI of the Plan, such that, pursuant to Article VI.C.6 of the Plan, in the event that (a) such Freeze Notice is returned as undeliverable or (b) the Frozen Account does not respond to such notice and seek relief as set forth below, all present and future distributions in connection with such Frozen Account shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code on the date that is six months after the issuance of the Freeze Notice, without further notice or hearing.

c.      The Frozen Account Holder may, within six months after issuance of the Freeze Notice, request that the Frozen Account be unfrozen by order of this Court.  Such request must be made by motion to this Court, which motion shall assert the reasons for unfreezing the account and be supported by a statement, made under penalty of perjury, indicating the source of funds in the Frozen Account.  Such motion shall be served upon the Wind-Down Debtors, the applicable regulator(s), the United States Trustee, any other known party in interest, and all other parties entitled to notice in these proceedings.

d.      Nothing in these KYC/AML Protocols shall operate to prevent the Wind-Down Debtors from requesting additional information (including any information previously requested and/or received at any time by BlockFi) from any Frozen Account Holder or any other party, at any time, concerning any Frozen Account, or from taking any position with respect to any motion submitted by any Frozen Account Holder.

## III.      <u>Distributions and Withholding</u>.

32.     For all accounts that the Wind-Down Debtors determine to clear for distributions pursuant to the preceding Section I of these KYC/AML Protocols (each a "<u>Clear Account</u>" associated with a "<u>Clear Account Holder</u>"), the Wind-Down Debtors and their agents shall be permitted to direct the relevant distribution agents to make distributions as otherwise set forth in the Plan and consistent with applicable law, without further notice or hearing.  Notwithstanding the foregoing sentence, as to all Clear Accounts pursuant to which the distribution amount is in

excess of $10,000, the Clear Account Holder will be provided notice of the Wind-Down Debtors

determination to make distributions on account of such Clear Account subject to the Clear

Account Holder's execution of a form declaration, attached hereto as <u>Exhibit B</u>, affirming that

the source of the funds in the Clear Account are not, in whole or in part, from any illegal activity

under federal, state, or other applicable law (a "<u>Clear Notice</u>").  Any Clear Account Holder who

fails to ensure receipt by the Wind-Down Debtors of the form declaration within six months

following receipt of a Clear Notice shall forfeit such distributions, and any such distributions

shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code on the date

that is six months after the issuance of the Clear Notice.

33.     For the avoidance of doubt, the Wind-Down Debtors shall be permitted, and are

directed, to withhold distributions to Frozen Account Holders absent further order of this Court.

No provision of the Plan or Confirmation Order or any provision of the Bankruptcy Code or

prior order of this Court shall be construed to require the Wind-Down Debtors to make any

distribution to any Frozen Account Holder.

## **ARGUMENT**

34.     Various laws and regulations, including applicable AML, anti-terrorism, and

anti-child abuse laws impose obligations concerning any potential distributions made by the

Wind-Down Debtors, communications regarding the same, and penalties for failure to comply.[18]

35.     The Wind-Down Debtors' compliance with these laws, absent further order of

the Bankruptcy Court, potentially conflicts with its obligations to make distributions under the

Plan.  Accordingly, the Wind-Down Debtors seek an order approving the KYC/AML Protocols

to ensure compliance with applicable orders of this Court and applicable law, while minimizing

---

[18]   *See* ¶ 10 *supra*.

expense to the Estates and potential liability of professionals and employees.

36.     As described below, the requested relief is necessary and appropriate to carry out the provisions of the Bankruptcy Code, and consistent with the Plan.  Moreover, under the circumstances including the departure of BlockFi's Compliance Team and the paucity of information available to ensure KYC and AML compliance, the KYC/AML Protocols represent an exercise outside the ordinary course of the Wind-Down Debtors' business that will require use of estate assets.  The Court is thus authorized to approve the requested relief, including such use of assets, pursuant to section 363(b) of the Bankruptcy Code.

**I.      The KYC/AML Protocols are Necessary and
         Appropriate to Allow the Wind-Down Debtors to
         Carry Out the Provisions of Title 11 and Their Confirmed Plan.**

37.     Bankruptcy Code section 105(a) permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to afford bankruptcy courts broad equitable power "to carry out provisions of the Bankruptcy Code." *In re Ross*, 858 F.3d 779, 783 (3d Cir. 2017) (internal quotations omitted); *In re Santana*, 2013 WL 1498278, *3 (Bankr. D.N.J. Apr. 10, 2013) (105(a) "provides the bankruptcy court with the broad authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11.") (internal quotations omitted); *McHugh v. Otlowski*, 2011 WL 1833370, *2 (Bankr. D.N.J. May 11, 2011) ("Section 105(a) of the Bankruptcy Code serves as the basis for the Court's broad equitable power to do what is necessary or appropriate to carry out the provisions of the Code.") (internal quotations omitted).

38.     Bankruptcy Code section 1142(a) requires the debtor to carry out the terms of a confirmed plan and to comply with any court orders issued in connection with the confirmation of the plan, and (b) authorizes the court to direct the debtor to furnish any instrument necessary

to effectuate transfer of property dealt with by a confirmed plan or to take any other act necessary for the plan to be consummated.[19]

39.    The Plan that was confirmed by this Court charges the Plan Administrator with, among other things "implementing the Wind-Down and making Distributions contemplated by the Plan."[20]  Plan Art. IV.D.6.  This Court has authority under sections 105(a) and 1142 to issue an order in the form attached hereto as Exhibit A directing the Wind-Down Debtors with respect to the KYC/AML Protocols contemplated herein.[21]  Specifically, this Court has the authority under those two sections to direct distributions according to the KYC/AML Protocols and to exculpate the Wind-Down Debtors and their related parties, including directors, officers, employees, and professionals, from liability related to making distributions as contemplated by the Plan and the KYC/AML Protocols.

40.    BlockFi's pre-petition KYC and AML procedures were designed to identify and prevent use of BlockFi's platform for criminal activity as required by and in compliance with applicable KYC/AML Regulations.  These procedures, like those of other similar financial institutions, are not an exact science.  The software leveraged by BlockFi flagged possible, but not certain, violations.  Flagged accounts were then subject to subsequent manual (*i.e.*, human) review. The review process was not (and could not be) failproof; it involved a proportional and risk-based

---

[19]    *See* 11 U.S.C. § 1142 ("(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court. (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.").

[20]    The Confirmation Order in turn provides that "The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety."  Confirmation Order ¶ 77.

[21]    Implementation of the KYC/AML Protocols will also require use of estate property under section 363(b) of the Bankruptcy Code for, among other things, continued employment of certain employees who are assisting the Wind-Down Debtors in the review process.

exercise in judgment and discretion, including considering the wide variety of possible flags and the varying attendant risks.

41.     The Wind-Down Debtors seek authorization to continue to exercise their judgment and discretion consistent with past practice and applicable law, as described above, subject to certain prescriptions necessitated by the Plan and the Bankruptcy Code.  The Wind-Down Debtors submit that the KYC/AML Protocols allow for the exercise of reasoned judgment under the circumstances, without jeopardizing due process.

**II.     The Requested Relief Is a Reasonable
       Use of Estate Property Outside the Ordinary Course of Business.**

42.     Bankruptcy Code section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate" (subject to certain exceptions not applicable here).  11 U.S.C. § 363(b).  Use, sale, or lease of estate property outside of the ordinary course of business is reviewed under the debtor's business judgment standard.  *See In re Diocese of Camden*, 653 B.R. 722, 741 (Bankr. D.N.J. 2023) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a business judgment test.") (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal quotations omitted); *see also In re Sea Oaks Country Club, LLC*, 2020 WL 6588412 (Bankr. D.N.J. Nov. 10, 2020); *In re Congoleum Corp.*, 2007 WL 1428477 (Bankr. D.N.J. May 11, 2007).

43.     The Wind-Down Debtors are required under the Plan to make distributions in accordance therewith.  The Wind-Down Debtors also remain subject to applicable KYC/AML Regulations, but do not have the benefit of BlockFi's pre-petition Compliance Team.  The Wind-Down Debtors are attempting to satisfy their obligations under both the Plan and applicable law

with limited resources and limited information.  In so doing, the Wind-Down Debtors propose the KYC/AML Protocols described herein, which contemplate use of estate assets outside of the ordinary course of BlockFi's business in multiple ways.  First, the KYC/AML Protocols will require retention of certain of the Wind-Down Debtors employees to undertake the ongoing review, and continuation of licenses in certain programs, including the Persona program.  Second, it is possible that the Wind-Down Debtors may be required to hire and train new employees, and/or to retain and compensate outside professionals and vendors such as software licensors, to comply with the Protocols.  Certain aspects of the KYC/AML Protocols, and the attendant costs to be incurred in connection therewith, may be outside the ordinary course, both with respect to ordinary practices of liquidating entities and based on BlockFi's pre-petition practice, including the employment of a sizable Compliance Team for such purposes.

44.      The Wind-Down Debtors submit that the KYC/AML Protocols contemplated herein are necessary given the attendant circumstances in order to ensure that the Wind-Down Debtors fulfill their obligations under the Plan and applicable law.  As such, the Wind-Down Debtors respectfully submit that (i) the KYC/AML Protocols represent a valid exercise of their business judgment and (ii) the proposed Protocols and all associated costs should be approved.

## NOTICE

45.      The Wind-Down Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey, (b) each holder of a Flagged Account identified on Schedule 1 attached to Exhibit A, (c) the U.S. Department of Justice, (d) the Office of Foreign Assets Control, (e) the U.S. Department of the Treasury, (f) the U.S. Department of Justice, Criminal Division, (g) the U.S. Department of Justice, National Security Division, (h) the U.S. Department of Justice, Civil

Division, (i) the U.S. Department of Justice, Justice Management Division, Asset Forfeiture Management Staff, (j) the U.S. Department of Justice, Executive Office for United States Attorneys, (k) the U.S. Department of Justice, Executive Office for U.S. Trustees, (l) the U.S. Department of Justice, Federal Bureau of Investigation, Office of General Counsel, (m) the U.S. Department of Justice, Drug Enforcement Administration, Office of General Counsel, (n) the U.S. Department of the Treasury, Financial Crimes Enforcement Network, (o) the U.S. Department of the Treasury, Office of Foreign Assets Control, (p) the U.S. Department of Homeland Security, Office of the General Counsel, and (q) the U.S. Department of Homeland Security, Homeland Security Investigations.

## **CONCLUSION**

Wherefore, the Wind-Down Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A approving the KYC/AML Protocols as provided herein.

*[Remainder of page intentionally left blank.]*

21

Respectfully Submitted,

Dated: June 28, 2024                     /s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Susan S. Long, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
Richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

**EXHIBIT A**
**(<u>Proposed Order</u>)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered under a Confirmed Plan[2])<br><br>Hearing Date: August 15, 2024 at 11:30 a.m. ET |
| --- | --- |

## ORDER GRANTING THE WIND-DOWN DEBTORS'
## MOTION TO APPROVE KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS

The relief requested on the following pages is hereby ORDERED.

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609]. Capitalized terms not otherwise defined herein shall have the meanings contained in the Plan.

(Page | 2)

Debtors:                 BLOCKFI INC., *et al*.
Case No.              22-19361 (MBK)
Caption of Order:   ORDER GRANTING WIND-DOWN DEBTORS' MOTION TO APPROVE
                          KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS

| | |
|---|---|
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |

Upon consideration of the *Wind-Down Debtors' Motion to Approve KYC/AML Protocols for US-Based Accounts* (the "Motion")[3] for entry of an order (this "Order") approving the KYC/AML Protocols and granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING WIND-DOWN DEBTORS' MOTION TO APPROVE KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS |

---

of the Motion having been provided; and it appearing that no other or further notice of the Motion

need be provided; and the Court having held a hearing to consider the relief requested in the Motion

(the "Hearing"); and all objections, if any, to the Motion having been withdrawn, resolved, or

overruled; and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Wind-Down Debtors, their respective estates and creditors, and all parties-in-

interest; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and upon the record of the Hearing, and all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The KYC/AML Protocols attached to this Order as Exhibit 1 are adopted and

approved and shall govern distributions under the Plan to the Flagged Accounts.

3.      The Wind-Down Debtors are authorized and directed to take all actions described

in and consistent with the KYC/AML Protocols in accordance therewith and are otherwise

authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

The actions of the Wind-Down Debtors, Plan Administrator, and any director, officer, employee,

retained professional, independent contractor, or other related party thereof or successor or

assignee of the foregoing, in each case to the extent acting within their reasonable business

judgment to facilitate distributions (or not) to Holders of Allowed Claims in connection with the

Flagged Accounts in compliance with the KYC/AML Protocols, does not and shall not violate any

(Page | 4)

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al*. |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING WIND-DOWN DEBTORS' MOTION TO APPROVE KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS |

___

such persons' legal and ethical obligations pursuant to any KYC/AML Regulations, whatever and to whomever such obligations may be.

4.      This Order shall be binding on the Wind-Down Debtors, their estates, all creditors and parties-in-interest including any person authorized to investigate or enforce any KYC/AML Regulations, and any trustee appointed in these cases.

5.      Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

7.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

8.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the hearing, nothing in the Motion, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities or securities transactions, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

(Page | 5)
Debtors:              BLOCKFI INC., *et al.*
Case No.              22-19361 (MBK)
Caption of Order:     ORDER GRANTING WIND-DOWN DEBTORS' MOTION TO APPROVE
                      KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS

_____

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

**PROPOSED ORDER EXHIBIT 1**
(<u>**KYC/AML Protocols**</u>)

### PROPOSED KYC/AML PROTOCOLS

1.      The Wind-Down Debtors respectfully request that the Court authorize and direct

the Wind-Down Debtors to adopt and implement the following KYC/AML Protocols with respect

to the Flagged Accounts:[1]

### I.      Review and Distribution Determinations.

2.      As to each Flagged Account, the Wind-Down Debtors shall categorize accounts

by risk level based on the type and nature of the applicable flag(s), after which the Wind-Down

Debtors will review Persona and Chainalysis outcomes in connection with the following

categories (flags) and render determinations as set forth below.

### A.      Identity Theft Review.

3.      Accounts flagged for insufficient identity information or risk of identity theft

shall be reviewed as follows, consistent with BlockFi's pre-petition compliance practices except

as to sub-paragraph (a).

    a.      Accounts flagged solely for insufficient identity information or risk of identity theft for which the claim amount is less than or equal to $2,000 shall be unfrozen and distributions made thereon.  The following procedures set forth in sub-paragraphs (b)-(d) shall apply with respect to accounts with multiple flags and/or claim amounts greater than $2,000.

    b.      The Wind-Down Debtors will review the information available to them to determine whether there is a sufficient likelihood that making a distribution as to an account would violate applicable KYC Regulations.  Where the Wind-Down Debtors determine that there is not a sufficient likelihood of a violation, they will make distributions on such accounts.

    c.      Where the Wind-Down Debtors either (i) determine that there is a sufficient likelihood of a violation, or (ii) do not possess adequate information to make a determination, they will request additional information from the account holder (including without limitation new or verified copies of information provided to

---

[1]      For the avoidance of doubt, these Protocols shall not, and shall not be interpreted to, prohibit the Wind-Down Debtors from taking any action required by law, including without limitation any reporting or other obligations under applicable law with respect to suspicious account activity.

BlockFi previously).

    d.    The Wind-Down Debtors will review and/or use Persona to screen the Flagged Accounts and make any subsequent determination thereafter, including to make distributions or continue to freeze the account. A determination by the Wind-Down Debtors to keep the account frozen will be subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols.

**B.**    **<u>OFAC/PEP Review.</u>**

4.    Accounts flagged in connection with OFAC or other sanctions list restrictions shall be reviewed to determine whether the account holder is a valid match for the restricted individual or entity.

    a.    If the Wind-Down Debtors determine that the account holder is not a valid match to the applicable list, the Wind-Down Debtors will clear the account holder to receive distributions.

    b.    If the Wind-Down Debtors identify a valid match against OFAC or any other sanctions list, the Wind-Down Debtors will freeze distributions subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols and report the match to OFAC and other appropriate parties consistent with OFAC guidance.

    c.    If the Wind-Down Debtors identify a match to a PEP but not linked to any OFAC or other sanctions list, the Wind-Down Debtors will review and make a determination in their discretion based on applicable guidance from OFAC or any comparable organization.  Such determination may include making a distribution or freezing the account subject to the notice and relief provisions set forth in Section II of these KYC/AML Protocols.

**C.**    **<u>Chainalysis Flags: Exposure to Criminal Activity.</u>**

    *i.*    *Low-Risk Accounts*

5.    Low-risk accounts will not be subject to further review, and distributions will be made on account thereof.

    *ii.*    *Medium-Risk Accounts*

6.    Medium-risk accounts for which the account balance is less than or equal to $2,000 will not be subject to further review, and distributions will be made on account thereof. Medium-risk accounts for which the account balance is greater than $2,000 will be subject to

further review.  Following this review, the Wind-Down Debtors, in their reasonable discretion,
may determine to clear an account and make distributions thereon, or freeze an account whereby
such account would be subject to the notice and relief provisions set forth in Section II of these
KYC/AML Protocols.

> *iii.   High-Risk Accounts*

7.      High-Risk Accounts will be frozen and subject to the notice and relief provisions
set forth in Section II of these KYC/AML Protocols.

**D.      Previously Unfrozen Accounts.**

8.      As mentioned above, certain of the Flagged Accounts appear to have been
reviewed, to some extent, by BlockFi's Compliance Team prior to the Petition Date.  In certain
instances, the Compliance Team appear to have issued recommendations to, and in fact did,
unfreeze accounts.  Following the Petition Date, BlockFi determined to freeze accounts flagged
by Persona for possible identity theft issues, notwithstanding whether the account was reviewed
and previously unfrozen.

9.      The Wind-Down Debtors are working quickly to re-review each of these accounts
utilizing Persona and will prioritize review of these accounts.  The Wind-Down Debtors intend
to make distributions on account of each of these accounts following their review and absent any
determination to the contrary.

**II.      Notice and Opportunity for Relief.**

10.      If the Wind-Down Debtors determine to freeze distributions pursuant to the
preceding Section I of these KYC/AML Protocols (each, a "Frozen Account" held by a "Frozen
Account Holder"):

    a.      The Wind-Down Debtors shall provide notice to the Frozen Account Holder of such
determination (a "Freeze Notice").  In the absence of a lawful order or request from
law enforcement authorities, such Freeze Notice shall include:

1. information concerning the Claim associated with the Frozen Account; and

2. copies of these Protocols and the order of the Bankruptcy Court approving these Protocols.

b. Such Freeze Notice shall be delivered to the Frozen Account Holder at all addresses provided thereby. The Wind-Down Debtors may, but need not, make further efforts to locate the Frozen Account Holder and provide the Freeze Notice. The first attempted issuance of the Freeze Notice shall constitute an attempted distribution pursuant to Article VI of the Plan, such that, pursuant to Article VI.C.6 of the Plan, in the event that (a) such Freeze Notice is returned as undeliverable or (b) the Frozen Account does not respond to such notice and seek relief as set forth below, all present and future distributions in connection with such Frozen Account shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code on the date that is six months after the issuance of the Freeze Notice, without further notice or hearing.

c. The Frozen Account Holder may, within six months after issuance of the Freeze Notice, request that the Frozen Account be unfrozen by order of this Court. Such request must be made by motion to this Court, which motion shall assert the reasons for unfreezing the account and be supported by a statement, made under penalty of perjury, indicating the source of funds in the Frozen Account. Such motion shall be served upon the Wind-Down Debtors, the applicable regulator(s), the United States Trustee, any other known party in interest, and all other parties entitled to notice in these proceedings.

d. Nothing in these KYC/AML Protocols shall operate to prevent the Wind-Down Debtors from requesting additional information (including any information previously requested and/or received at any time by BlockFi) from any Frozen Account Holder or any other party, at any time, concerning any Frozen Account, or from taking any position with respect to any motion submitted by any Frozen Account Holder.

## III.     <u>Distributions and Withholding</u>.

11. For all accounts that the Wind-Down Debtors determine to clear for distributions pursuant to the preceding Section I of these KYC/AML Protocols (each a "<u>Clear Account</u>" associated with a "<u>Clear Account Holder</u>"), the Wind-Down Debtors and their agents shall be permitted to direct the relevant distribution agents to make distributions as otherwise set forth in the Plan and consistent with applicable law, without further notice or hearing. Notwithstanding the foregoing sentence, as to all Clear Accounts pursuant to which the distribution amount is in

excess of $10,000, the Clear Account Holder will be provided notice of the Wind-Down Debtors

determination to make distributions on account of such Clear Account subject to the Clear

Account Holder's execution of a form declaration, attached hereto as <u>Exhibit B</u>, affirming that

the source of the funds in the Clear Account are not, in whole or in part, from any illegal activity

under federal, state, or other applicable law (a "<u>Clear Notice</u>").  Any Clear Account Holder who

fails to ensure receipt by the Wind-Down Debtors of the form declaration within six months

following receipt of a Clear Notice shall forfeit such distributions, and any such distributions

shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code on the date

that is six months after the issuance of the Clear Notice.

12.     For the avoidance of doubt, the Wind-Down Debtors shall be permitted, and are

directed, to withhold distributions to Frozen Account Holders absent further order of this Court.

No provision of the Plan or Confirmation Order or any provision of the Bankruptcy Code or prior

order of this Court shall be construed to require the Wind-Down Debtors to make any distribution

to any Frozen Account Holder.

SCHEDULE 1


REDACTED

**EXHIBIT B**
**(<u>Form Declaration</u>)**

## DECLARATION REGARDING LEGITIMACY OF FUNDS IN CLEAR ACCOUNTS

I [INSERT CLEAR ACCOUNT HOLDER], declare under penalty of perjury:

1.      I am a lawful resident of [INSERT JURISDICTION].

2.      I currently reside at [INSERT ADDRESS].

3.      I am over the age of eighteen (18).

4.      I am the current holder of Claim No(s). [INSERT CLAIM NO(S).], which were filed on account of Clear Account No(s). [INSERT CLEAR ACCOUNT NO(S).], respectively.

5.      I submit this declaration affirming that the sources of funds in each of the aforementioned Clear Accounts were not derived, in whole or in part, from any illegal means or activity under federal, state, or other applicable law, and are otherwise from legitimate sources.

Pursuant to 11 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: [INSERT DATE]

_____
[INSERT    CLEAR    ACCOUNT
HOLDER NAME]

**EXHIBIT C**
**(<u>Marquez Declaration</u>)**

<table>
<tr><td colspan="2">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

</td></tr>
<tr><td>

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel for the Plan Administrator*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel for the Plan Administrator*

</td><td>

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

</td></tr>
<tr><td>

In re:

BLOCKFI INC., *et al*.,

     Debtors.[1]

</td><td>

Chapter 11

Case No. 22-19361 (MBK)

(Jointly Administered under a Confirmed Plan)

Hearing Date: August 15, 2024 at 11:30 a.m. ET

</td></tr>
</table>

## DECLARATION OF FLORI MARQUEZ IN SUPPORT OF WIND-DOWN DEBTORS' MOTION TO APPROVE KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS

       I, Flori Marquez, declare under penalty of perjury:

       1.      My name is Flori Marquez. I am over the age of 21. I am the Chief Operating

Officer for the debtors (collectively, "BlockFi" or the "Wind-Down Debtors") in the above-

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

captioned Chapter 11 Cases. I am familiar with the manner in which BlockFi's books and records

are maintained by virtue of my duties and responsibilities. Accordingly, I am in all respects

competent to make this declaration (the "Declaration") in support of the *Wind-Down Debtors'*

*Motion to Approve KYC/AML Protocols for US-Based Accounts* (the "Motion").[2]

2.      Except as otherwise indicated herein, the facts set forth in this Declaration are based

upon my personal knowledge, my review of relevant documents, information provided to me by

the professionals in this case and/or employees working under my supervision, conversations with

former employees, or my opinion based upon my experience, knowledge, and information

concerning the Wind-Down Debtors' operations.  I am authorized to submit this Declaration on

the Wind-Down Debtors' behalf.  If called upon to testify, I would testify competently to the facts

set forth in this Declaration.

3.      In its normal course of business, BlockFi employed more 50 people dedicated to

ensuring compliance with various KYC and AML regulations (the "Compliance Team").  Just

prior to the Petition Date, BlockFi employed approximately 14 individuals on its Compliance

Team. The Compliance Team was primarily tasked with reviewing flags raised by BlockFi's third-

party KYC and AML software applications, including Persona and Chainalysis.  After a flag was

raised by the applicable software, the Compliance Team would be tasked with reviewing the

account and issues associated therewith, and making a risk-based assessment as to whether the flag

was material.  Accounts where any material flags were found were meant to be frozen pending

investigation.  Where a flag was found immaterial, the freeze was lifted.

4.      The Persona software was leveraged at the time of onboarding, as well as daily

thereafter for each customer, and following certain distribution requests.  Persona's primary uses

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

are to (a) confirm clients' identities by reviewing government issued forms of identity and facial recognition software, (b) cross-reference account holders with applicable sanctions lists (including OFAC and PEP lists), and (c) identify possible account breaches or identity theft issues.

5.      Chainalysis analyzed transactions on the blockchain that were sent to BlockFi.  One of the uses of the Chainalysis software is to identify AML issues.  Chainalysis analyzes and flags wallets for a myriad of possible issues, ranging from suspicion of gambling proceeds to terrorism financing.  It also identifies whether the transaction in question is directly or indirectly linked to the flag.  As with Persona, BlockFi's Compliance Team reviewed accounts where Chainalysis flagged any potential AML issues, freezing accounts where the suspicion was validated and unfreezing those where it was not.

6.      Immediately prior to the Petition Date, the Compliance Team was reduced to approximately 14 people in anticipation of a decline in KYC/AML services needed during the pendency of the bankruptcy and to reduce costs during the pendency of the bankruptcy cases.  As of the date hereof, only two individuals from the Compliance Team remain employed by the Wind-Down Debtors.  One individual was onboarded shortly before the Petition Date, and is not sufficiently familiar with BlockFi's processes to opine as to BlockFi's pre-petition processes or any specific conclusions made pursuant thereto.  The other individual is BlockFi's former Chief Compliance Officer, who has been engaged by the Wind-Down Debtors in a consulting and advisory capacity.

7.      As of the date hereof, there are approximately 1,700 accounts that BlockFi froze due to flags raised by either Persona or Chainalysis in excess of $10.00.  These accounts may include certain accounts that BlockFi's Compliance Team had reviewed pre-petition, and which were cleared and unfrozen following such review.

8.      The Wind-Down Debtors have access to certain of BlockFi's books and records, which identify the applicable accounts and nature of the flag.  These books and records also indicate accounts which were subject to some level of pre-petition review by the Compliance Team, but do not specify the nature of such review, or any basis for a conclusion where one was reached.

9.      The Wind-Down Debtors retain access to Persona, and have continued to run the Flagged Accounts periodically post-petition.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  June 28, 2024                                Respectfully submitted,

                                                              */s/ Flori Marquez*
                                                              Flori Marquez
                                                              Chief Operating Officer
                                                              BlockFi, Inc. and its Debtor affiliates.