CONNELL FOLEY LLP
Joao F. Magalhaes, Esq. (NJ Bar No. 004802008)
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, NJ 07102
973-436-5800
*Counsel to Claimant-Appellant John W. Van Tubergen Jr.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BLOCKFI INC., *et al.*, | Case No. 22-19361 (MBK) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF CLAIMANT-APPELLANT JOHN W. VAN TUBERGEN JR.
TO WIND-DOWN DEBTOR'S NOTICE OF DISPUTED CLAIMS RESERVE**

Claimant-Appellant John W. Van Tubergen Jr. ("Claimant") respectfully submits this objection to the *Notice of Disputed Claims Reserve* (the "Notice")[1] filed by the Wind-Down Debtors in these bankruptcy cases, as facilitated by the Plan Administrator, and in support hereof Claimant respectfully asserts as follows:

**I. Background**

1.  Denial of the Claim.  This Court previously sustained the *Objection*[2] to Claimant's proof of claim number 7233, whereby Claimant asserted that debtor BlockFi Lending LLC committed negligence or worse in connection with liquidations of his cryptocurrency assets, posted as collateral, in the amount of at least ten million dollars ($10,000,000.00) (the "Claim").  *See Order Granting Wind-Down Debtors' Seventh Omnibus Objection to Claim No.*

---

[1] Docket No. 2364.
[2] Specifically, the *Debtors' Seventh Omnibus Objection to Claim No. 7233*.  Docket No. 1311.

14409788-1

*7233 Filed by John W. Van Tubergen Jr.* (the "Order Sustaining Objection").  Docket No. 2122; *see also Order Denying Van Tubergen's Motion for Reconsideration.*  Docket No. 2305.

2. Claimant's appeal.  On May 23, 2024, Claimant filed his *Notice of Appeal* of this Court's prior *Orders* relating to the Claim.  Docket No. 2318.  Such appeal is pending before the United States District Court for District of New Jersey, with Claimant having filed his appellate brief on July 17, 2024.  D.N.J. Civil Case No. 3:24-cv-6404 (ZNQ).

3. Relevant provisions of the Plan and Confirmation Order.  As a claim that was "Disallowed" by Order Sustaining Objection, and which is being appealed (and thus not a "Final Order"), the Claim qualifies under the Plan as a "Disputed" claim.  *Third Amended Joint Chapter 11 Plan* (the "Plan"), Docket No. 1660,[3] at 11, 13-14.  The Confirmation Order's provisions governing the "Disputed Claim Reserve" established a process for the Wind-Down Debtors to provide notice of the proposed amount(s) of the Disputed Claim Reserve prior to a distribution, with recipients having seven (7) days to object thereto, a hearing to be scheduled thereafter, and the subject distribution halted until either the Bankruptcy Cour determines the appropriate reserve amount, or the matter is consensually agreed-upon by the parties.  *See* Docket No. 1660 ¶ 114.

4. The Notice.  The Notice proposes to set aside $19.07 on account of the Claim.  Docket No. 2364 at 7.  The Notice references the Plan Administrator's *Third Status Report to Creditors and Announcement of Planned 100% Distribution on Customer Claims* (the "Third Status Report"),[4] which, among other things, provided an overview of certain proposed distributions to be made.  *Id.* at 2.

---

[3] As annexed to the *Revised Findings of Fact, Conclusions of Law, and Order* [in pertinent part] *Confirming the Third Amended Joint Chapter 11 Plan* (the "Confirmation Order") entered on October 3, 2023.  Docket No. 1660.

[4] Docket No. 2357.

2

## II. Grounds for Objection

### A. The proposed reserve amount, effectively zero, is unreasonable and infringes upon Claimant's appellate rights.

5. The Wind-Down Debtors should be compelled to establish a reserve amount on account of the Claim that bears some reasonable relation to the disputed amount of the Claim, with recognition that the length of time to fully resolve can be lengthy. *See, e.g., In re AMR Corporation,* Bankr. S.D.N.Y. Docket No. 13346 (*Memorandum of Decision* in connection with *Estimation Motion*) at 11 n. 4 (noting ruling of eight (8) years prior that disputed claims reserve proposed by reorganized debtors was not sufficient to protect parties with unresolved claims, and requiring that disputed claims reserve "be established based on an aggregate amount of disputed single-dip general unsecured claims in the amount of $700 million," and noting that most, but not all, claims had been resolved throughout such time).

6. In addition, a claim reserve should have some measure of viability, and should not be "illusory." *In re W.B.S.S., L.P.,* 366 B.R. 629, 633 (Bankr. E.D.Tx. 2007) (in matter wherein the court found that the debtor failed to demonstrate "an actual, genuine intent to address" the claim at issue, explaining that "[w]hile the promulgation of a plan with a disputed claim reserve provision may constitute a legitimate structure by which to address a disputed debt still subject to appellate review, the Debtor was compelled to show that its economic proposal to address the disputed claim was viable in light of its clear intent to continue its ongoing efforts to mine sand during the pendency of the appeal, all to the detriment of the value of the Movants' collateral, and particularly in the light of the substantial monthly compensation being paid to the Debtor's principals from the company's operations.").

3

7. Furthermore, when evaluating the reasonableness of a claim reserve amount, the likelihood of success on appeal should be considered. *JPMorgan Chase Bank v. U.S. Nat'l Bank Ass'n (In re Oakwood Homes Corp.),* 329 B.R. 19, 22 (D. Del. 2005).

8. In this matter, there is simply no claim reserve proposed on account of the Claim. The proposed reserve amount of $19.07 simply reflects the Claim as modified by the Order Sustaining Objection. Docket No. 2122 at 7. Yet, the "Disputed" portion of the Claim, as such Term is governed by the Plan, totals at least $10 million.

9. Accordingly, any proposed distributions detailed by the Third Status Report should be held in abeyance until such time as the Wind-Down Debtors propose a genuine reserve amount on account of the Claim. At such time, in the process of determining the sufficiency of same, Claimant respectfully requests that this Court consider the arguments that Claimant has presented on appeal. *See* Claimant's *Brief in Support of Appeal,* D.N.J. Civil Case No. 3:24-cv-6404 (ZNQ), Docket No. 7.

**B. Even if a genuine reserve amount had been proposed, neither the Notice nor the Third Status Report provide necessary material information to evaluate the reasonableness of same, and do not differentiate between the separate bankruptcy estates.**

10. The Notice does not provide any financial report or fiscal projections on behalf of the Wind-Down Debtors to substantiate or otherwise support the supposed $19.07 reserve amount on account of the Claim. *See* Docket No. 2364. Likewise, the Third Status Report provides no financial data or explanation of, among other things, remaining estate assets. *See* Docket No. 2357.

14409788-1

11. Collectively, the Notice and the Third Status Report fail to present anything that affected parties like Claimant can utilize to evaluate the likelihood of recovery following the full disposition of their due process rights.

12. In addition, absolutely no explanation is given as to how estate resources may vary from debtor-to-debtor. The Plan provides that it never contemplated substantive consolidation, *see* Plan, Docket No. 1660 at 90, and a fundamental aspect of the preceding Disclosure Statement was the very high projected payouts represented to creditors holding not only Class 3-b BlockFi Lending LLC Loan Collateral Claims (ranging from 81.6% to 100%), but even Class 4-a BlockFi Lending LLC General Unsecured Claims (likewise ranging 81.6% to 100%). Disclosure Statement, Docket No. 1310 at 31-33, 38-40.

13. Also critical to note, the Disclosure Statement's projections show that the BlockFi Lending LLC estate was well-positioned before the debtors' reached settlements with the unrelated estates of FTX and Alameda Research, thereby further illustrating that a sufficient claim reserve on account of the Claim should be ordered in this matter.

14. Therefore, it is respectfully submitted that the Wind-Down Debtors should be required to present financial data and analysis in support of any proposed disputed claims reserve.

*[Space intentionally left blank; please continue to page six (6).]*

**III. Conclusion**

15. Claimant respectfully reiterates that any proposed distributions should be held in abeyance until such time as the Wind-Down Debtors propose a reasonable disputed claim reserve on account of the Claim, together with providing sufficient information to evaluate the reasonableness of same.

    Respectfully submitted,

    CONNELL FOLEY LLP
    *Counsel to Claimant-Appellant*
    *John W. Van Tubergen Jr.*

Dated: August 16, 2024    */s/ Joao F. Magalhaes*
    Joao F. Magalhaes