Andrew P. Marks, Esq.
Dorf Nelson & Zauderer LLP
555 Theodore Fremd Avenue
Rye, NY 10580
Tel.: (914) 381-7600
Email: amarks@dorflaw.com

Aaron Weissberg, Esq. (*admitted pro hac vice*)
Dorf Nelson & Zauderer LLP
555 Theodore Fremd Avenue
Rye, NY 10580
Tel.: (914) 381-7600
Email: aweissberg@dorflaw.com

*Attorneys for Matthew Gordon*

ORAL ARGUMENT REQUESTED

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------x

In Re:

BLOCKFI INC., *et al.*,

                           Debtors.
---------------------------------------------------------x

Case No. 22-19361-MBK

Chapter 11

(Jointly Administered under a Confirmed Plan)

Hearing Date: August 27, 2024 at 11:30 a.m. ET

**MATTHEW GORDON'S OBJECTION IN OPPOSITION TO THE WIND-DOWN DEBTORS' MOTION TO APPROVE KYC/AML PROTOCOLS FOR US-BASED ACCOUNTS AND IN SUPPORT OF MATTHEW GORDON'S CROSS-MOTION DIRECTING THE WIND-DOWN DEBTORS TO IMMEDIATLEY PAY MATTHEW GORDON THE AMOUNTS OWED UNDER HIS APPROVED CLAIMS**

I, Andrew P. Marks, Esq., being duly sworn, deposes and says:

1.     I am an attorney with Dorf Nelson & Zauderer LLP, counsel for the creditor Matthew Gordon ("Gordon"), and as such, am familiar with the facts stated herein.

2.     This objection is submitted in opposition to the motion by BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), to Approve KYC/AML ( Know Your Customer ("KYC") and Anti-Money Laundering ("AML")) Protocols for US-Based Accounts (the "Motion") (Docket No. 2349), and in opposition to the Wind-Down Debtors'

1

Supplemental Schedule of KYC/AML Accounts Subject to Motion to Approve KYC/AML Protocols for US-Based Accounts (the "Supplemental Notice") (Docket No. 2359) collectively (the Debtors' "Motions") as more fully explained herein.

3. This affirmation is also submitted in support of Matthew Gordon's cross-motion for an order directing the Wind-Down Debtors to immediately pay Matthew Gordon the amounts owed to him under his approved claims pursuant to the Amended Chapter 11 Plan and Confirmation Order dated October 3, 2023.

**Preliminary Statement**

4. The Wind-Down Debtors' Motion as well as their Supplemental Notice are procedurally defective because they fail to identify what claim numbers or account holders would be affected and therefore do not give proper notice to creditors. By redacting even the claim numbers, there is no way for claimants to know that they are affected by this motion. It appears that the Wind-down debtors did not separately notify creditors and/or their attorneys that these motions impact them since Matthew Gordon never received individual notification until he inquired about it.

5. On the substantive side, the conduct of the Wind-Down Debtors and their Motions are troubling in many respects. BlockFi had no legal authority to freeze or restrain any accounts because of flags under the Bank Secrecy Act. The Wind-Down Debtors' freezing and restraining some 1,700 accounts based on KYC/AML flags clearly was without any legal authority and based upon their lack of understanding of the Bank Secrecy Act.

6. The motion by the Wind-Down Debtors should be denied in its entirety, because their request to continue the unlawful restraint of the subject accounts is completely improper and without any legal authority.

7. The Wind-down Debtors without leave of court, and without seeking a protective order, admittedly failed and refused to make distributions to Matthew Gordon of his "Approved Claims" on the Distribution Date, as well as to some 1,700 claimants in violation of the Amended Chapter 11 Plan and Confirmation Order.

8. Matthew Gordon is a holder of "Approved Claims" who should have been paid **seven (7) months** ago pursuant to the Plan. However, Matthew Gordon's accounts were improperly frozen and restrained by BlockFi without any proper or legal basis.

9. The Amended Chapter 11 Plan, *drafted by the Debtors*, expressly provides for the procedures and timeframes for Debtors to assert objections and to make distributions to holders of approved claims. It is nearly **two years** since the Wind-Down Debtors filed for protection under Chapter 11 of the Bankruptcy Code. Now, nearly two years later, the Debtors belatedly raise, for the first time, their concerns about KYC/AML protocols, more than seven (7) months **after** the distribution deadline has passed to pay holders of approved claims.

10. Once the Wind-Down Debtors approved those claims, they had to immediately be paid on the Distribution Date pursuant to the Amended Chapter 11 Plan. There is no legitimate basis to delay paying "approved claims", and the Debtors' argument to the contrary reflects a lack of oversight in the administration of this bankruptcy. Indeed, the Wind-Down Debtors' proposed KYC/AML protocols themselves violate due process by shifting the burden on the creditors to move the court and to prove that they are not guilty of unspecified crimes. This is the opposite of due process and proposed procedures are clearly improper, constitutes a conversion and is an unconstitutional taking of property.

**Relevant Procedural History**

11. On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

12. On November 28, 2022, all trading on the Debtors' platform was halted and all transactions, trading, selling and buying were stopped, pursuant to the automatic stay and the platform was shut down. Accordingly, all customer transactions at issue, predate November 28, 2022, nearly two years ago.

13. On November 29, 2022, this Court entered an order (Docket No. 42) authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

14. On January 30, 2023, the Court entered the Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief (Docket No. 440) (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of Claims (collectively, the "Proofs of Claim") in these Chapter 11 cases.

15. On March 13, 2023, the Court entered its Order Granting Debtors' Motion for Entry of an Order (A) Approving the (I) Omnibus Claims Objection Procedures and Form Notice, (II) Omnibus Substantive Claims Objections, and (III) Satisfaction Procedures and Form of Notice, (B) Waiving Bankruptcy Rule 3007(e), and (C) Granting Related Relief (Docket No. 609) (the "Claims Procedures Order").

16. On October 3, 2023, the Court issued the Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy

Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi and its Debtor Affiliates (the "Confirmation Order") (Docket No. 1660).

17. The Wind-down Debtors were required to make distributions to Holders of Allowed Claims pursuant to the Third Amended Joint Chapter 11 Plan and this Court's Confirmation Order.

18. Upon information and belief, the Plan was declared effective and there is no stay in effect of the Confirmation Order.

19. Chapter 11 Plan and Confirmation Order required the Debtors to make distributions to each "Holder of an Allowed Claim" on the "Distribution Date", pursuant to various provisions of the Plan including, among others, "Timing and Calcuation of Amounts to be Distributed" under the Plan, on page 62, and is also required in other sections throughout the Plan (Docket No. 1660).

20. Upon information and belief, there was Distribution Date on or about January of 2024 under the Chapter 11 Plan and the Debtors made distributions to some holders of approved claims in or about January of 2024, (the "Distribution Date").

21. Matthew Gordon is a Holder of an "Approved Claim" in the amount of $838,853.20 under Claim No. 15784 and is also a Holder of an "Approved Claim" in the amount of $13,788.59 under Claim No. 23511 as more fully explained below.

22. However, by their own admission, the Wind-down Debtors without leave of court, and without seeking a protective order, failed and refused to make distributions to Matthew Gordon on the Distribution Date.

**Relevant Background of Approval of Matthew Gordon's Claims**

I. **Matthew Gordon's Approved Claim" in the amount of $838,853.20 under Claim No. 15784**

23. On March 30, 2023, Gordon submitted an Electronic Proof of Claim in the amount of $720,532.10, Claim No. 15784, through the website of Kroll's Restructuring Administration

(hereinafter "Kroll"), in connection with crypto currency deposited as collateral under Loan Agreement Dated October 24, 2022 (BlockFi Lending LLC, Case No. 22-19365). A copy of the Proof of Claim, Claim No. 15784, and supporting documentation that was filed is annexed hereto as collective **Exhibit 1.** [1]

24. On March 30, 2023, Gordon submitted an Electronic Proof of Claim in the amount of $118,321.12, Claim No. 26889, through Kroll's website, in connection with crypto currency deposited as collateral under Loan Agreement Dated March 3, 2022 (BlockFi Lending LLC, Case No. 22-19365). A copy of the Proof of Claim, Claim No. 26889, and supporting documentation that was filed is annexed hereto as collective **Exhibit 2.**

25. Debtors filed an Amended Eleventh Omnibus Objection to Certain Claim (Docket No. 1450), that modified his Proof of Claim bearing Claim No. 15784 in the amount of $720,532.10, and his Proof of Claim in the amount of $118,321.12, Claim No. 26889, solely by combining the two aforementioned claims so that the surviving claim is in the aggregate total amount of $838,853.20 under Claim No. 15784. [2]

26. Thereafter, Matthew Gordon's Claim No. 15784, as modified in the combined total amount of $838,853.20 was **approved** as an **"allowed claim"** pursuant to the Second Notice of Allowed Claims Pursuant to the Confirmed Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates (Docket No. 2173). A copy of the Second Notice of Allowed Claims is annexed hereto as **Exhibit 3.**

---

[1] All Exhibits have been redacted as to protected confidential information, and unredacted copies are available should the court so request.

[2] There is a setoff provision under the Amended Chapter 11 Plan for amounts owed under which the Debtors subtract approximately $418,554.81 representing the total amount Matthew Gordon owes under the two loans, leaving a remaining balance of $420,298.39.

27. Claims were not paid when due because of flags raised by Wind-Down Debtors for unspecified reasons. The Wind-Down Debtors have refused to specify what flags were raised in connection with Matthew Gordon's accounts. However, the counsel for the plan administrator did confirm with our office that the flag(s) that were raised in his case, over two years ago, had nothing to do with funding of terrorism.

## II.  Gordon's Approved Claim" in the amount of $13,788.59 under Claim No. 23511

28. On March 30, 2023, Gordon submitted an Electronic Proof of Claim in the amount of $13,788.59, Claim No. 23511, through the Kroll's website, in connection with a BlockFi Interest Account (BlockFi Inc., Case No. 22-19361). A copy of the Proof of Claim, Claim No. 23511, and supporting documentation that was filed is annexed hereto as collective **Exhibit 4.**

29. On March 30, 2023, Gordon submitted a duplicate Electronic Proof of Claim in the amount of $13,788.59, Claim No. 25045, which contains a Notation on the supporting documentation indicating that it is being submitted as a duplicate because he was uncertain which bankruptcy case it should be submitted under, which was submitted through Kroll's website, in connection with a BlockFi Interest Account (BlockFi Lending LLC, Case No. 22-19365). A copy of the Proof of Claim, Claim No. 25045, and supporting documentation that was filed is annexed hereto as collective **Exhibit 5.**

30. The duplicate Proof of Claim No. 25045, was later expunge, pursuant to the Amended Eleventh Omnibus Objection to Certain Claim (Docket No. 1450), and which left intact his surviving claim of $13,788.59 under Proof of Claim No. 23511.

31. Thereafter, Matthew Gordon's Proof of Claim No. 23511 in the amount of $13,788.59 was **approved** as an **"allowed claim"** pursuant to the Third Notice of Allowed Claims Pursuant to the Confirmed Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its

Debtor Affiliates (Docket No. 2238). A copy of the Third Notice of Allowed Claims is annexed hereto as **Exhibit 6.**

### I. Lack of Proper Notice to Claimants

32. Wind-Down Debtors' notice of motion is defective since it does not identify what claim holders would be affected by motion. The Wind-Down Debtors' motion to approve KYC/AML protocols for US Based account dated June 28, 2024, purportedly identifies some 1,700 claimants who would be adversely affected by this motion on Schedule 1, which is "redacted" and completely blank. The same is true for the Supplemental Schedule of KYC/AML Accounts that was filed by the Wind-Down Debtors on July 29, 2024.

33. There was no reason to completely redact Schedule 1, since the Debtors could have simply listed the affected claim numbers (as they have done for all previous motions) which would have preserved any concern for anonymity. However, by redacting even the claim numbers, there is no way for creditors to know that they are affected by this motion. The motion is procedurally defective by not giving adequate notice to creditors who would be affected.

34. When a redacted motion is filed, as is customary, the Wind-Down Debtors are required to notify the claimants and/or their counsel that the motion affects their claims. However, this was not done. We were notified about the motion after our firm inquired, however, there is little doubt that the majority of the 1,700 claims are unaware of this motion or there would be many more objections filed.

### II. The Debtors Do Not Have Legal Authority to Restrain Accounts under the Bank Secrecy Act

35. The Bank Secrecy Act merely requires domestic banks to report any transactions involving more than ten thousand dollars in cash or structured transactions. United States v. $1,399,313.74 in U.S. Currency, 591 F. Supp. 2d 365, 372 (S.D.N.Y. 2008), but does **not** authorize

them to freeze or restrain accounts. Banks and financial institutions clearly do not have authority to obtain a temporary restraining order or injunction and their request to this court to restrain those accounts is clearly improper and without any legal authority.

36. If there are transactions that raise a flag under the Bank Secrecy Act, a bank or financial institution is required to do a preliminary investigation to ensure that it is not a false flag and if there is a suspicion of a violation, the bank or financial institution is required to file a Suspicious Activity Report ("SAR") with the appropriate governmental agency.

37. The Bank Secrecy Act does **not** authorize the bank or financial institution to freeze or restrain any accounts. Pursuant to 31 U.S.C.A. § 5317 and § 5320, when the Secretary of the Treasury believes a person has violated, is violating, or will violate the Bank Secrecy Act, the Secretary of the Treasury can bring a civil action in the appropriate district court of the United States to enjoin the violation or to enforce compliance and can obtain a temporary restraining order and injunction.

38. Moreover, pursuant to 18 U.S.C.A. § 984, there is a **one (1) year statute of limitations time bar** from the date of the disputed transactions for the Secretary of the Treasury to bring such a forfeiture action. Under section 984, the Government may only seize an amount corresponding to "offenses" occurring up to one year before the complaint is filed. United States v. $1,399,313.74 in U.S. Currency, 591 F. Supp. 2d 365, 373 (S.D.N.Y. 2008).

39. Matthew Gordon deposited crypto currency with BlockFi as collateral under Loan Agreement Dated March 3, 2022, **two years and five months ago**.

40. In addition, Matthew Gordon deposited crypto currency as collateral under Loan Agreement Dated October 24, 2022, nearly **two years ago**. Matthew Gordon's claim of

$13,788.59 in connection with his interest account is also in connection with transaction that occurred more than two years ago.

41. The BlockFi Debtors failed to do even a preliminary review to eliminate false flags and have not submitted any evidence of any crime or wrongdoing on the part of Matthew Gordon, nor demonstrated any basis to freeze or restrain his accounts.

42. Our office was advised that the alleged flag(s) with respect to Matthew Gordon's accounts were raised over two years ago and that his accounts were frozen over two years ago, although it was not apparent because of the automatic stay went into affect when Debtors filed their petition for bankruptcy which also had the effect of freezing his accounts.

43. There is no lawful basis to restrain Matthew Gordon's accounts under the Bank Secrecy Act or any other provision of law, and his claims must be paid under the Amended Chapter 11 Plan that was already voted on and approved by creditors and this court. The Debtors improperly seek to change the Amended Chapter 11 Plan, after the fact without any proper basis or authority under the law and has not met their burden of proof on this motion.

44. Moreover, the government has not charged or indicted Matthew Gordon of any crimes and has not brought any forfeiture proceeding against him. At this point, a forfeiture proceeding would be time barred under the 1-year statute of limitations regardless and there is no basis to even bring such a proceeding.

45. An associate from our office, Aaron Weisberg, Esq., communicated with Ken Aulet, Esq., counsel with Brown Rudnick, representing the Plan Administrator, and although he would not identify what the flag was in relation to Matthew Gordon's accounts, he confirmed that it had nothing to do with the Anti-Terrorism Act, which is the only provision that would authorizes a financial institution to restrain funds. Since Matthew Gordon's flag has nothing to

do with Anti-Terrorism, then there is no lawful basis to restrain his accounts which should be immediately released and his claims immediately paid pursuant to the Plan.

### III. The Debtors failed to Make Distributions of "Approved Claims" in Violation of the Amended Chapter 11 Plan

46. The Wind-Down Debtors failure to make distributions on the Distribution Date to approved claims of Matthew Gordon is in violation of the terms of the Amended Chapter 11 Plan and Confirmation Order, is inexcusable and without any proper basis.

47. Debtors start by claiming that this is not an ordinary bankruptcy because BlockFi is considered a financial institution and must comply with Know Your Customer and Anti-Money Laundering regulations. However, that argument is not supported by the law.

48. Secondly, the movants fail to meet their burden of proof by failing to submit any evidence whatsoever to support the motion to demonstrate that (1) that any legitimate flags were raised with respect to Matthew Gordon, or (2) that any particular crimes were in fact committed by Matthew Gordon or anyone else and (3) any proper basis to restrain those account, since the Bank Secrecy Act does not authorize freezing or restraining the accounts. Nor have the Debtor cited any other provision of law other than the Anti-Terrorism Act, that would authorize a financial institution or this court restraint of a customer's account.

49. This Court lacks jurisdiction and the Wind-Down Debtors lack standing to restrain accounts or to bring a forfeiture proceeding which must be brought in a plenary action in the Federal District Court by the U.S. Treasury Secretary or Attorney General acting on behalf of an authorized federal agency within 1 year of the disputed transaction. Those claims are now time barred by the 1 year statute of limitations.

50. The request by the Wind-Down Debtors to unlawfully restrain accounts so they can implement KYC/AML protocols must be denied in its entirety, is illegal and constitutes and unlawful conversion of creditors' property.

## IV. Debtors' Proposed KYC/AML Protocols Violate Due Process, is Unconstitutional, and is a Conversion of Claimants' Property

51. If the Wind-Down Debtors had legitimate concerns about flags being raised with KYC/AML protocols, then those concerns should have been raised nearly two years ago in the Chapter 11 plan *that they drafted* and in the claims' objections process. However, the Wind-Down Debtors never raised those objections and actually approved the claims for Matthew Gordon and countless others.

52. The Wind-Down Debtors acknowledge that in many or even most instances, flags that are raised that turn out to be false and upon review those account holders did nothing wrong. Yet, without any explanation, Wind-Down Debtors have not done any compliance review of these accounts in nearly two years and only have one person left from the Compliance Team who has any knowledge of how to do it. Moreover, the Debtors have not taken any steps whatsoever to hire and train the necessary people to do them.

53. Part of the reason that the Debtors are in bankruptcy in the first place is because they did not comply with various laws and regulations. Now they are asking this court to sanction and approve protocols that are clearly improper and based upon the Debtors' own failures and omissions.

54. Most troubling is that the proposed KYC/AML protocols turn due process on its head, and clearly violates the rights of creditors to due process and the proposed protocols are unconstitutional as they violate the Fifth and Fourteenth Amendments of the United States Constitution and is an illegal conversion of the creditors' property. This is so because the proposed

protocols improperly put the burden on the creditors to make a motion and prove their entitlement to their funds. In effect, they are presumed guilty and it requires creditors to prove that they are innocent of unspecified crimes for which they have not been indicted or charged, in order to get their property back.

55. Moreover, it is the responsibility of the government, Federal and/or State to bring charges and restrain property, **not** BlockFi, which has misinterpreted and misapplied The Bank Secrecy Act and other provisions of law, as they have done throughout their entire history.

56. The Debtors admit in their motion that the entire Compliance Team has left since the Petition date and now only two (2) members of BlockFi's core Compliance Team are left. One member of the compliance team was brought on shortly before and does not have sufficient knowledge to even do the job. This leaves only one person. In nearly two years, the Debtors admit that they have not hired or trained anyone to do Compliance and did not raise these concerns to the court prior to today. This belated afterthought is inexcusable and reflects a lack of competence on the part of the Plan Administrator.

57. The Debtors lack even the resources to implement the protocols they seek to approve and no time frame has been specified in their motion.

### V. Claimants Are be Entitled to Discovery Relating to the Purported Red Flags

58. In the event this court grants the Wind-down Debtors' motions, which is strongly opposed, then creditors are entitled to discovery and an opportunity to have an evidentiary hearing before their property is taken and converted without due process based on unspecified allegations without any evidence whatsoever that a crime has even been committed. Creditors should be provided with detailed information and copies of the red flags and business records

supporting them, including copies of all investigations conducted by BlockFi and copies of all documents supporting any Suspicious Activity Reports ("SARS"),[3] that were filed.

59. Due process requires that creditors be provided with an opportunity to obtain proper written discovery, the ability to subpoena witnesses and to conduct 2004 examinations of the Wind-Down Debtors including depositions if they are allowed to delay payment and retrain funds of creditors.

60. Likewise, the improper request by the Wind-Down Debtors that the Court exculpate themselves of liability for wrongfully withholding funds, should be denied entirely as it is an unlawful conversion of property belonging to creditors that was required to be paid out pursuant to the confirmed Chapter 11 Plan, and the Debtors should not be allowed to keep and convert money and property that belongs to creditors and avoid liability.

## CONCLUSION

61. For all the reasons set forth herein, the Wind-Down Debtors' motion and supplemental notice should be denied in their entirety, and the Wind-Down Debtors should be ordered to immediately comply with the Amended Chapter 11 Plan that was confirmed, as previously ordered by this Court, and to pay Matthew Gordon as a holder of approved claims all amounts owed to him. Failing to do so, the Wind-Down Debtors should be held in contempt of court in order to secure their compliance.

**WHEREFORE**, it is respectfully requested that the Wind-Down Debtors' Motion to Approve KYC/AML Protocols for US-Based Accounts (Docket No. 2349), be **denied** in its entirety, and the Wind-Down Debtors' Supplemental Schedule of KYC/AML Accounts Subject to Motion to Approve KYC/AML Protocols for US-Based Accounts (Docket No. 2359), also be

---

[3] This not requesting the SAR itself, but the underlying documents that support a SAR which are discoverable if a SAR was filed.

**denied** in its entirety, and that the Wind-Down Debtors' be ordered to immediately pay Matthew Gordon his approved claims pursuant to the Amended Chapter 11 Plan , or be held in contempt of court for the Debtors' non-compliance; and that Matthew Gordon be granted such addition and further relief as this Court deems just, proper and equitable.

Dated: Rye, New York
      August 20, 2024

                                    DORF NELSON & ZAUDERER LLP

By: _____
      Andrew P. Marks, Esq.
      555 Theodore Fremd Avenue
      Rye, New York 10580
      Tel.: (914) 381-7600
      Email: amarks@dorflaw.com
      *Attorneys for Matthew Gordon*