| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan G. Axelrod, Esq. (admitted *pro hac vice*)<br>Matthew A. Sawyer, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br>msawyer@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered under a Confirmed Plan[2])<br><br>Docket Nos. 2364, 2367, 2370<br><br>Hearing Date: August 27, 2024, at 11:30 a.m. ET |

## WIND-DOWN DEBTORS' OMNIBUS RESPONSE TO
## OBJECTIONS TO NOTICE OF DISPUTED CLAIMS RESERVE

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order (the "Confirmation Order") [Docket No. 1660] confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609]. Capitalized terms not otherwise defined herein shall have the meanings contained in the Plan.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ......................................................................................................... 4

    A.    The Plan And Confirmation Order. ............................................ 4

    B.    The Objectors' Claims. ............................................................. 6

        i.   The Van Tubergen Claim. .................................................... 7

        ii.  The Gerro Claim. ................................................................ 8

        iii. The Notice Of Disputed Claims Reserve. ............................. 10

OMNIBUS RESPONSE ............................................................................................. 11

I.    The Objections Should Be Overruled Based On The Plain Language Of The Plan......... 11

II.   The Objections Amount To Unsupported And  Untimely Requests For A Stay Pending
Appeal. ........................................................................................................ 13

    A.    The Objectors Have Had Ample Opportunity  To Move For Proper And Timely
Relief, But Failed To Do So. ....................................................... 13

    B.    The Appellate Process Is Not Undermined  By Requiring Litigants To Timely Seek A
Stay.  ........................................................................................ 14

    C.    The Objections Do Not Meet The Heightened Standard For A Stay Pending Appeal. .
............................................................................................. 15

        i.   The Appeals Are Unlikely To Be Meritorious. ......................... 16

        ii.  Any Harm To The Objectors Is Balanced By  Bankruptcy's Routine Use Of
Estimation For These Purposes........................................... 17

        iii. Meanwhile, A Stay Will Harm BlockFi's  Other Creditors With Legitimate Claims. ..
............................................................................................. 18

        iv. The Public Interest Weighs Heavily Against A De Facto Stay. ................................. 18

III.   The Objectors' Other Arguments Are Without Merit. ................................................... 19

    A.    Mr. Gerro Is Not Subject To Disparate Treatment As Compared To Other Similarly
Situated Creditors........................................................................ 20

    B.    Mr. Gerro's Threat Of Appeal Of The Reserve Amount, And The Subsequent
Expenditure Of Judicial And Other Resources, Should Not Be Credited. ......................... 20

C.      Mr. Van Tubergen's Assertion That The Wind-Down Debtors Should Be Required
To Provide Financial Data To Support The Reserve Amount Is Without Basis And
Confuses The Issue. .......................................................................................................... 21

NOTICE ................................................................................................................................... 21

CONCLUSION ........................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 40 Lakeview Drive, LLC*,
   2017 WL 3701215 (Bankr. D.N.J. Aug. 17, 2017) ................................................................. 18

*In re A&B Assocs., L.P.*,
   Case No. 17-40185 (EJC), 2019 WL 1470892 (Bankr. S.D. Ga. Mar. 29,
   2019) ..................................................................................................................................... 12

*In re Adelphia Bus. Solutions, Inc.*,
   341 B.R. 415 (Bankr. S.D.N.Y. 2003) ..................................................................................... 2

*In re Continental Airlines, Inc.*,
   981 F.2d 1450 (5th Cir. 1993) ................................................................................................. 2

*In re Lane*,
   68 B.R. 609 (Bankr. D. Haw. 1986) ...................................................................................... 12

*In re Revel AC, Inc.*,
   802 F.3d 558 (3d Cir. 2015) ................................................................................................... 16

*In re Sabine Oil & Gas Corp.*,
   Case No. 15-11835 (SCC), 2016 WL 11565432 (Bankr. S.D.N.Y. July 27,
   2016) ..................................................................................................................................... 12

*In re Trivascular Sales LLC*,
   Case No. 20-31840 (SGJ), (Bankr. N.D. Tex. Sept. 16, 2020) .............................................. 12

**Statutes**

11 U.S.C. 502(c) ...................................................................................................................... 12

BlockFi Inc., and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby submit this *Omnibus Response to Objections to Notice of Disputed Claims Reserve* (the "Response") requesting that this Court deny the Objections[1] to the Notice of Disputed Claims Reserve (the "Notice") [Docket No. 2364]. In support of this Response, the Wind-Down Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The Objections filed in response to the Notice request that this Court require the Wind-Down Debtors to reserve close to $17 million[2] pending appeal of two Disputed Claims. These requests amount to untimely and procedurally improper requests for stay pending appeal without any attempt to meet the standard for such a stay, would violate the express terms of the Plan, and would significantly prejudice BlockFi's other claimants.

2.     The Objectors' Claims – which request tens of millions from BlockFi's estates on account of pre-petition losses from failed highly-levered bets on cryptocurrency price movements – have been exhaustively litigated before this Court. Following robust briefing and oral argument (twice in the case of Mr. Van Tubergen's Claim), this Court reduced and/or disallowed and expunged the Objectors' Claims.[3] Thereafter, both Objectors appealed, which appeals remain pending.

---

[1]    "Objections" shall refer collectively to the objections to the Notice filed by George J. Gerro (the "Gerro Objection") [Docket No. 2367] concerning Claim No. 15248 (the "Gerro Claim") and John W. Van Tubergen Jr. (the "Van Tubergen Objection") [Docket No. 2370] concerning Claim No. 7233 (the "Van Tubergen Claim" and with the Gerro Claim, the "Objectors' Claims"). "Objectors" shall refer collectively to George J. Gerro and John W. Van Tubergen Jr.

[2]    This amount would significantly increase if the Wind-Down Debtors were required to reserve Gerro's claimed amount of 426 BTC in-kind (or at current prices).

[3]    *See* Docket Nos. 1431, 2122. With respect to the Van Tubergen Claim, the asserted claim amount of $10 million was fixed at $19.07, with the remaining portion expunged.

3.      Article VII of the Plan provides for a fulsome process to resolve Disputed Claims. With respect to this process, the Plan provides, among other things, that "[n]otwithstanding any provision otherwise in the Plan, *a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars*, unless otherwise ordered by the Bankruptcy Court." Plan § VII.C. (emphasis added).  Under the express terms of the Plan, both Objectors' Claims are deemed to be estimated at $0.  The effect and purpose of such estimation is to fix the Claim in connection with the Plan Administrator's obligations to make Distributions and Reserves – indeed, it could hardly be otherwise.[4]

4.      The Objectors request that the full amount of their asserted Claims be reserved pending appeal.  In other words, the relief requested under the Objections is tantamount to a stay pending appeal.  However, the Objectors did not timely seek a stay, nor have they met the Third Circuit's high standard to warrant a stay.  The relief requested in the Objections is simply a procedural runaround of a key component of the appellate process.

5.      Not only is the relief requested procedurally improper and substantively deficient, but both Mr. Gerro and Mr. Van Tubergen had ample opportunity to request different treatment and failed to do so.  Messrs. Gerro and Van Tubergen could have objected to the Plan but did not. Messrs. Gerro and Van Tubergen also could have moved for a stay pending their respective appeals, but again, did not.[5]

---

[4]    *See In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993) (citing purpose of estimation to "promote a fair distribution to creditors through a realistic assessment of uncertain claims"); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 423 (Bankr. S.D.N.Y. 2003) (examining purpose and effect of estimation, including as necessary to establish cash reserves for disputed claims).

[5]    Mr. Van Tubergen at one time requested a stay, which was denied as procedurally improper for failure to file a notice of appeal.  *See Memorandum Decision* (the "Van Tubergen Reconsideration Decision") [Docket No. 2306]. Mr. Van Tubergen did not thereafter lodge a procedurally appropriate request.

6.      And to be clear, these are not unsophisticated litigants requiring special accommodation concerning procedural niceties.  Messrs. Gerro and Van Tubergen are represented by capable counsel (Mr. Gerro is himself an attorney), who have actively litigated their positions in these proceedings.  Both Objectors assert tens of millions in Claims based on their participation in risky financial transactions resulting in prepetition liquidations of their collateral in accordance with binding contractual terms.

7.      Requiring the requested reserves would delay distributions to subordinated creditors holding Allowed Claims until the Objectors have fully exhausted all appeals.  As Mr. Van Tubergen correctly notes, fully resolving his Disputed Claim may be lengthy[6] and Mr. Gerro is a serial litigant who, to this day, has refused to fully and properly dismiss with prejudice his prepetition state court proceedings that duplicate his Claim.  If the Plan is not enforced, these reserves may be required for years, delaying a final distribution to subordinated creditors and the closure of these estates.

8.      Exactly to avoid this problem and fulfill the oft-stated purpose of estimation itself, the Plan provides for Claims disallowed by this Court to be estimated at zero, and thus for no reserve to be required, and for the cases to be administered without undue delay, unless an objecting party receives a stay pending appeal.  Again, such a stay was not obtained by either Objector.  Even if one were deemed properly sought now, the Objections cannot meet the standard to warrant a stay.  The Wind-Down Debtors respectfully submit that no accommodation should avail here, and that this Court should overrule the Objections, enforce the terms of the Plan and permit the Wind-Down Debtors to continue administering these estates in the manner previously contemplated and approved by this Court.

---

6      *See* Van Tubergen Objection, ¶ 5.

3

## BACKGROUND

### A.    The Plan And Confirmation Order.

9.      On September 21, 2023, BlockFi filed the Plan.  On October 3, 2023, this Court issued its Confirmation Order confirming the Plan.  The Plan went effective on October 23, 2024. *See* Docket No. 1788.

10.     Paragraph 114 of the Confirmation Order requires the Wind-Down Debtors to establish a Disputed Claims Reserve and to "file a notice on the docket of the proposed amount of the Disputed Claims Reserve at least fourteen (14) days prior to such Distribution Date [at which point] Parties shall have seven (7) days to object to the proposed amount of the Disputed Claims Reserve."[7]  Confirmation Order, ¶ 114.  Paragraph 114 of the Confirmation Order further provides that "[i]f an objection is filed prior to the Disputed Claims Reserve Objection Deadline, the Wind-Down Debtors (i) will schedule a hearing with the Bankruptcy Court to determine the amount of an appropriate Disputed Claims Reserve with respect to that Distribution and (ii) shall not make any Distribution in any amount subject to such objection until such time as (a) the amount of an appropriate Disputed Claims Reserve with respect to that Distribution is determined by the Bankruptcy Court or (b) the parties consensually resolve the objection."  *Id*.

11.     Article VII of the Plan establishes procedures for resolving disputed, contingent, and unliquidated claims and interests.  Of relevance to the Objections, Article VII.C. provides in relevant part "[n]otwithstanding any provision otherwise in the Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered

---

[7]     "Disputed Claims Reserve" is defined in paragraph 108 of the Plan to mean "an appropriate reserve in an amount to be determined by the Wind-Down Debtors for Distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date, in accordance with Article VII.A hereof."  Plan, ¶ 108.

by the Bankruptcy Court." (emphasis added).  Prior to July 2024, the Wind-Down Debtors issued certain interim Distributions in contemplation of further substantial receipts on assets to be liquidated, effectively reserving sufficient funds for all Disputed Claims at amounts asserted.

12.     On July 22, 2024, the Wind-Down Debtors filed the *Plan Administrator's Third Status Report to Creditors and Announcement of Planned 100% Distribution on Customer Claims* (the "Third Status Report") [Docket No. 2357] announcing that "the Wind-Down Debtors have closed on a transaction that monetizes all claims against FTX at a substantial premium to their face value, which is sufficient to enable a near-term distribution of **100% of the allowed dollar amount of all *allowed* customer claims**." (emphasis added).

13.     The contemplated Distributions upon allowed customer claims, and Distributions to subordinated allowed claims thereafter, will allow the Wind-Down Debtors to complete the administration of the estates. The Wind-Down Debtors are now preparing to close the estates following the completion of such Distributions.  If the Wind-Down Debtors were required to reserve for all Disputed Claims in the amounts asserted by claimants, notwithstanding this Court's orders disallowing such Claims and the requirements of the Plan to estimate such Claims, then Distributions of all residual assets to subordinated claim holders would not be possible and the estates would be required to remain open.

14.     The Wind-Down Debtors anticipate that, even if the Disputed Claims are again rejected on appeal, failure to estimate such Claims as required by the Plan would result in millions of dollars in costs to the estates and significant (to the point – indefinite) delays in Distributions to holders of allowed claims because of the delay caused awaiting a determination by the Third Circuit.

B.    **The Objectors' Claims**.

15.    Prior to the Petition Date, both Messrs. Gerro and Van Tubergen entered into lending relationships with Debtor BlockFi Lending LLC ("BlockFi Lending"), whereby BlockFi Lending agreed to loan money secured by pledges of cryptocurrency as collateral.  In brief,[8] the loans were subject to negotiated terms, including the requirement that each borrower maintain a specified loan-to-value ratio (as applicable, the "LTV").  Where the applicable LTV rose above a certain threshold, BlockFi Lending was permitted to liquidate collateral (subject to certain notice requirements).  As it turned out, the price of cryptocurrency fell such that certain loans outstanding with both Messrs. Gerro and Van Tubergen surpassed the applicable LTV ratios, at which point BlockFi Lending liquidated collateral in accordance with the terms of the applicable contracts.[9]

16.    The Objectors' Claims seek to reverse their pre-petition losses in the cryptocurrency markets.  Mr. Van Tubergen also asserts as a portion of his Claim entitlement to purportedly "missing" ETH, which Mr. Van Tubergen has failed to evidence was ever deposited in the first place.  *See* Van Tubergen Decisions I and II (defined below).  This Court previously expunged the entirety of the Gerro Claims.  *See* Gerro Decision and Order (defined below).  This Court's prior Decisions and Orders concerning the Van Tubergen Claim effectively bifurcated the Claim into an Allowed portion (face amount $19.07[10]) and a Disallowed and expunged remainder.  *See* Van Tubergen Decisions and Orders I and II.

---

[8]    The Wind-Down Debtors are mindful of this Court's familiarity with the situations of both Messrs. Gerro and Van Tubergen.  As such, the Wind-Down Debtors summary of the lending relationships each had with BlockFi is intended to be high-level.

[9]    *See generally* Gerro Decision and Van Tubergen Decisions I and II.

[10]    The $19.07 Allowed portion was unrelated to Mr. Van Tubergen's claims regarding his loans, rather the amount represents the petition date dollarized value of the funds remaining in his BlockFi Interest Account.

i.    **The Van Tubergen Claim.**

17.    On March 15, 2023, Mr. Van Tubergen filed the Van Tubergen Claim, asserting a claim against Debtor, BlockFi Lending LLC, in the amount of $10,000,000.00.

18.    On August 3, 2023, the Debtors filed the *Seventh Omnibus Objection to Certain Claims* (the "Seventh Claims Objection") [Docket No. 1311], seeking, among other things, to modify the Van Tubergen Claim to $19.07.  On September 13, 2023, Mr. Van Tubergen filed his *Response to Debtors' Seventh Omnibus Objection to Certain Claims* (the "Van Tubergen Objection Response") [Docket No. 1496], on December 12, 2023, the Wind-Down Debtors filed their *Reply* thereto (the "Van Tubergen Objection Reply") [Docket No. 1963], and on January 10, 2024, Mr. Van Tubergen filed his *Sur-Reply* (the "Van Tubergen Objection Sur-Reply") [Docket No. 2039].

19.    On January 16, 2024, this Court held a hearing on the Seventh Claims Objection concerning the Van Tubergen Claim and related briefings.  On February 8, 2024, this Court issued its *Memorandum Decision* ("Van Tubergen Decision I") [Docket No. 2120] and accompanying Order ("Van Tubergen Order I") [Docket No. 2122] granting the Seventh Claims Objection as to the Van Tubergen Claim, fixing the Allowed amount of the Claim at $19.07 and expunging the remaining portion of the Claim.

20.    On February 21, 2024, Mr. Van Tubergen filed his *Memorandum of Law in Support of Motion Pursuant to Fed. R. Bankr. P. 3008, 8002(b), 8007(a), 9023 and 9024 to (A) Alter and Amend the Decision and Order Sustaining the Wind-Down Debtors' Objection to Claim No. 7233; and (B) Alternatively, Seek other Relief from such Order* (the "Van Tubergen Reconsideration Motion") [Docket No. 2142] asking this Court to reconsider Van Tubergen Decision I and Order I, and on April 18, 2024, the Wind-Down Debtors filed their *Response* thereto (the "Van Tubergen Reconsideration Response") [Docket No. 2247].

21.     On April 25, 2024, this Court held a hearing on the Van Tubergen Reconsideration

Motion and related briefings.  On May 16, 2024, this Court issued its *Memorandum Decision*

("Van Tubergen Decision II") [Docket No. 2306] and accompanying Order ("Van Tubergen Order

II") [Docket No. 2305] denying Mr. Van Tubergen's request that this Court reconsider Van

Tubergen Decision and Order I.

22.     On May 23, 2024, Mr. Van Tubergen filed his *Notice of Appeal* (the "Van Tubergen

Notice of Appeal") [Docket No. 2318] appealing this Court's Decisions I and II and Orders I and

II.  On July 17, 2024, Mr. Van Tubergen filed his *Brief in Support of Appeal* (the "Van Tubergen

Appeal Brief") [Docket No. 7 in Case No. 3:24-cv-06404-ZNQ].  On August 16, 2024, the Wind-

Down Debtors filed their *Response Brief* (the "Van Tubergen Appeal Response Brief") [Docket

No. 11 in Case No. 3:24-cv-06404-ZNQ].  As of the date hereof, Mr. Van Tubergen's appeal of

this Court's Decisions I and II and Orders I and II are pending.

### ii.      The Gerro Claims.

23.     On March 24 and 29, 2023, Mr. Gerro filed Claim Nos. 12386 and 15248 against

BlockFi Lending in the amount of 426 BTC and $6,903,883.80, respectively (together, the "Gerro

Claims").

24.     On June 14, 2023, the Debtors filed the *Fourth Omnibus Objection to Certain*

*Claims* (the "Fourth Claims Objection") [Docket No. 1069], seeking, among other things, to (i)

expunge the 12386 Claim as duplicative of the Gerro Claim whereupon only the Gerro Claim

would survive, and (ii) modify the Gerro Claim to $0.  On July 13, 2023, Mr. Gerro filed his

*Response to Debtors' Fourth Omnibus Objection to Certain Claims; and Cross-Motion for an*

*Order Temporarily Allowing Claim No. 12386 Pursuant to F.R.B.P. Rule 3018(a) for the Sole*

*Purpose of Voting on a Chapter 11 Plan* (the "Gerro Objection Response and Cross-Motion")

8

[Docket No. 1192], and on August 10, 2023, the Debtors filed their *Reply* thereto (the "Gerro Objection and Cross-Motion Reply") [Docket No. 1341].

25.      On August 17, 2023, this Court held a hearing on the Fourth Claims Objection concerning the Gerro Claim and related briefings.  On August 30, 2023, this Court issued its *Memorandum Decision* (the "Gerro Decision") [Docket No. 1420] and accompanying Order (the "Gerro Order") [Docket No. 1431] granting the Fourth Claims Objection as to the Gerro Claim and denying Mr. Gerro's Cross-Motion.

26.      On September 7, 2023, Mr. Gerro filed his *Notice of Appeal and Statement of Election* (the "Gerro Notice of Appeal") [Docket No. 1453] appealing this Court's Gerro Decision and Order.  On October 26, 2023, Mr. Gerro filed his *Brief of Appellant George J. Gerro* (the "Gerro Appeal Brief") [Docket No. 4 in Case No. 23-18740-ZNQ].  On November 22, 2023, the Wind-Down Debtors filed their *Brief of Appellee BlockFi Inc.* (the "Gerro Appeal Response Brief") [Docket No. 7].  On December 6, 2023, Mr. Gerro filed his *Reply Brief* (the "Gerro Reply Brief") [Docket No. 9].  As of the date hereof, Mr. Gerro's appeal of this Court's Gerro Decision Order are pending.

27.      Prior to the Petition Date, Mr. Gerro filed pro se lawsuits[11] in the Los Angeles Superior Court against BlockFi alleging the same claims as those raised in the 12386 Claim, which were fully litigated and disallowed by this Court.

28.      For obvious reasons of both substance and procedure, Mr. Gerro's prepetition claims against BlockFi in state court cannot survive; BlockFi has repeatedly sought an agreed dismissal with prejudice and warned Mr. Gerro of the penalties it may seek if he continues to refuse to comply with the Confirmation Order.  As of this date, Mr. Gerro has refused to fully and

---

[11]    *Gerro v. BlockFi Lending, LLC, et al.*, Case Nos. 20STCV31493 and 20BBCV00308.

properly voluntarily dismiss the state court litigation.[12]  The Wind-Down Debtors reserve all rights

with respect to that litigation if commenced again, including to seek appropriate remedies before

this Court.

### iii.    The Notice Of Disputed Claims Reserve.

29.    On August 9, 2024, the Wind Down Debtors filed the Notice, setting forth the

amounts to be held in reserve pending the resolution of the Disputed Claims on Schedule 1 attached

thereto.  Among other things, Schedule 1 of the Notice seeks to reserve $0 on account of the Gerro

Claim, and $19.07 on account of the Van Tubergen Claim.  The deadline to object to the Notice

was August 16, 2024, at 4:00 p.m. ET.

30.    On August 15, 2024, Mr. Gerro filed his Objection to the Notice, asserting that (i)

the Notice will undermine the appellate jurisdiction of the District Court concerning Mr. Gerro's

appeal, (ii) similarly situated creditors did not have their claims reserved at $0, (iii) reserving $0

on account of the Gerro Claim prejudices Mr. Gerro, and (iv) establishing a reserve on account of

Mr. Gerro's Claim will conserve judicial resources, professional fees, and estate assets because it

would negate the possibility that Mr. Gerro appeals a $0 reserve.

31.    On August 16, 2024, Mr. Van Tubergen filed his Objection to the Notice, asserting

that (i) the contemplated $19.07 reserve amount infringes upon Mr. Van Tubergen's rights because

his Claim is Disputed and pending appeal, and (ii) the Notice is in some way substantively deficient

because it fails to provide financial reporting or fiscal projections, which Mr. Van Tubergen asserts

---

[12]    On August 21, 2023, Mr. Gerro provided Wind-Down Debtors' counsel with filed copies of dismissal
documentation; however, in Case No. 20STCV31493, BlockFi Inc. and BlockFi Lending LLC are both parties.
Gerro only dismissed as to BlockFi Lending. Additionally, Mr. Gerro did not dismiss either action with prejudice
as the Confirmation Order language requires. Moreover, Gerro named certain "Doe" defendants that he
specifically alleges are agents and employees of the BlockFi defendants. Mr. Gerro did not opt out of the third-
party releases and is bound by the terms of the release provisions in the Plan, as well as the Plan injunction and
Confirmation Order language. The Wind-Down Debtors intend to further discuss these issues with Mr. Gerro in
the hopes to prevent the need to bring a motion to enforce the Confirmation Order before this Court.

is necessary to evaluate the likelihood of recovery following the full disposition of his due process rights.

32.    Mr. Gerro asks this Court to reserve "the face amount of Gerro's Claim No. 15248 pending the final resolution of the appellate process." Gerro Objection, at 4. Mr. Van Tubergen requests that "any proposed distributions [] be held in abeyance until such time as the Wind-Down Debtors propose a reasonable disputed claim reserve on account of the Claim." Van Tubergen Objection, ¶ 15. The face amount of Mr. Gerro's Claim No. 15248 is at least $6.9 million (the face amount of filed proof of claim no. 15248), and as much as approximately $20 million (which would include the $6.9 million cash amount sought under filed claim no. 15248 and the 426 Bitcoin sought under the 12386 Claim). While Mr. Van Tubergen does not assert what constitutes a reasonable Disputed Claim reserve on account of his Claim, the Wind-Down Debtors surmise that Mr. Van Tubergen seeks to have the Wind-Down Debtors reserve at least $10 million.[13] Therefore, in the aggregate, the Objections seek to reserve approximately $17 million (and as much as $30+ million)[14] on account of the Objectors' Claims.

**OMNIBUS RESPONSE**

**I.     The Objections Should Be Overruled Based On The Plain Language Of The Plan.**

33.    The Objectors argue that the Notice improperly reserves for the Objectors' Claims. The Objections fail to address in any way the plain language of the Plan, which is dispositive here.

34.    The Plan that was confirmed by this Court sets forth a fulsome process concerning the treatment of Disputed Claims. Of relevance to the Objections, Article VII.C. provides that,

---

[13]  *See e.g.*, Van Tubergen Objection, ¶ 1 ("Claimant asserted that debtor BlockFi Lending LLC committed negligence or worse in connection with liquidations of his cryptocurrency assets, posted as collateral, in the amount of at least ten million dollars ($10,000,000.00).").

[14]  Mr. Gerro has been inconsistent if his Claim is for approximately $6.9 million, or a claim for 426 BTC. The latter would be significantly greater given current pricing.

"[n]otwithstanding any provision otherwise in the Plan, *a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars*, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim *for all purposes under the Plan (including for purposes of Distributions)*." (emphasis added).  The Wind-Down Debtors note that not only is this provision clear on its face, but it is necessary to avoid, as Mr. Van Tubergen correctly notes, lengthy delays in resolving Disputed Claims issues.[15]

35.     Although neither Objector objected to the Plan, it is worth noting that Article VII.C. is both customary and consistent with Chapter 11 practice and the purpose of estimation under Section 502(c) of the Bankruptcy Code.  Indeed, the exact language of this Plan has been confirmed in many other plans in different jurisdictions, as proposed and agreed by debtors and creditors and their professionals across varied industries.[16]  Section 502(c) provides for estimation where "the fixing or liquidation" of a claim on a final basis "would unduly delay the administration of the case." Courts have broadly and uncontroversially held that the cost to the estates and stakeholders of withholding recoveries pending appeal proceedings constitutes "undue delay" sufficient to not only permit but *require* estimation pursuant to Section 502(c),[17] and confirmed this plan language

---

[15]   *See* Van Tubergen Objection, ¶ 5.

[16]   *See, e.g., In re Sabine Oil & Gas Corp.*, Case No. 15-11835 (SCC), 2016 WL 11565432, at *77 (Bankr. S.D.N.Y. July 27, 2016) (confirming plan with language identical to BlockFi Plan at VII.C); *In re Trivascular Sales LLC*, Case No. 20-31840 (SGJ), at *56 (Bankr. N.D. Tex. Sept. 16, 2020) (nearly identical language).

[17]   *See, e.g., In re A&B Assocs., L.P.*, Case No. 17-40185 (EJC), 2019 WL 1470892, at *36 (Bankr. S.D. Ga. Mar. 29, 2019) (quoting *In re Lionel, L.L.C.*, Case No. 04-17324, 2007 WL 2261539, at *2 (Bankr. S.D.N.Y. Aug. 3, 2007) ("[W]hen the liquidation of a claim is premised on litigation pending in a non-bankruptcy court, and the final outcome of the matter is not forthcoming, the bankruptcy court should estimate the claim."); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) ("[T]he decision on appeal is irrelevant. What is relevant to the instant case is how long it will take before the Richardsons' claim will be liquidated…This court concludes that deferral pending resolution of the matter would unduly delay the administration of this case.").

repeatedly on such basis.  If Disputed Claims were not estimated during pending appeals, an unscrupulous litigant could generate settlement leverage by forcing a debtor to withhold distributions to all other stakeholders during the pendency of spurious appeals – as the Objectors, in fact, attempt here.

36.    The Court has disallowed the Objectors' Claims.  The Court's orders are not stayed. The Plan requires that the Claims be estimated in accordance with those orders, "for all purposes." The Court should uphold the result dictated by the Plan.

## II.    The Objections Amount To Unsupported And Untimely Requests For A Stay Pending Appeal.

37.    The Objectors had multiple opportunities to seek a stay pending appeal, but did not. Now, the relief requested in the Objections is both improper under the terms of the Plan and fails to meet the standard for a stay pending appeal.

38.    The Objectors filed claims premised on their losses on risky leveraged bets on cryptocurrency.  Notably, these losses occurred long prior to the collapse of FTX and losses suffered by BlockFi's more risk-averse customers, whose Distributions could be delayed by these Objectors' conduct.  Moreover, the Objectors are represented by counsel.

39.    In the aggregate, the Objections request that this Court reserve at least $17 million, possibly more than twice that amount, pending multiple appeals.  In essence, the Objectors would have BlockFi's legitimate creditors insure their gambling debts.  In more technical terms, the Objections function as a stay of this Court's Decisions and Orders concerning the Gerro and Van Tubergen Claims while the respective appeals remain pending.   The Objectors have not properly sought or obtained a stay; regardless, no stay would be warranted if sought under the governing standard.

### A.    The Objectors Have Had Ample Opportunity
### To Move For Proper And Timely Relief, But Failed To Do So.

40.    These Objectors had every opportunity to timely seek a stay pending appeal, and did not do so. They deserve no second bite at the apple.

41.    As discussed above, the Plan provides a fulsome process to resolve Disputed Claims, including that expunged Claims pending appeal will be reserved at $0 absent a stay issued by this Court.  Mr. Gerro and Mr. Van Tubergen were each on notice of the Plan.  However, neither timely objected nor otherwise responded to the Plan, including as to the aforementioned language.  As such, neither party can now (ten months post Effective Date) claim in good faith to be prejudiced in any way by the Wind-Down Debtors' compliance therewith.

42.    Moreover, Messrs. Gerro and Van Tubergen could have timely moved for a stay pending their respective appeals.  Again, neither did so.  Mr. Gerro did not at any time move for a stay.  Mr. Van Tubergen in his Reconsideration Motion did request a stay pending appeal, but as the Bankruptcy Court correctly found, such request was procedurally improper "[g]iven that no notice of appeal has been filed in this matter."  *See* Van Tubergen Decision II, at 10.  Mr. Van Tubergen thereafter could have timely moved for a procedurally proper stay, but failed to do so.

43.    The Wind-Down Debtors again note that these are sophisticated parties undeserving of relief from ordinary rules of procedure.  Mr. Gerro is himself, and Mr. Van Tubergen represented by, able counsel.  Both were able and willing to understand and execute complex and risky financial and legal instruments, now the subject of their concerns.  Both Objectors litigated their claims extensively to recover their losses, and this Court rejected their arguments.

44.    In short, both Objectors had opportunities to not be in their current position.  Both should be required to deal with the consequences of their choices.

**B.      The Appellate Process Is Not Undermined
By Requiring Litigants To Timely Seek A Stay.**

45.      The Objectors assert that the appellate process will be undermined unless their
reserve requests are met.  *See* Gerro Objection, ¶ 2; Van Tubergen Objection, ¶¶ 5-9.  These
assertions are incorrect.  Rather, the Objections themselves will undermine the appeal process.  A
court's consideration of the balance of harms caused by issuing (or not issuing) a stay pending
appeal is a key part of the appellate process.  The relief requested in the Objections (which the
Wind-Down Debtors again note are not requests for a stay pending appeal) should be balanced
against the resulting harm to the estate.

46.      And again, the harm that would result from the lock-up of $17+ million of estate
assets (or even a fraction of that amount) is considerable.  The Wind-Down Debtors are driving
towards estate closures and Distribution of funds to residual Claimants (including the FTX estate,
as a representative of its victims), following the completion of 100% distributions to customers.
The Objections would delay that process and force the estates to remain open on account of
meritless Claims, incurring substantial administrative costs and delaying a final distribution to
subordinated claimants.  While Mr. Gerro suggests that a district court decision is "imminent" he
can make no assurance, and fails to note his (and Mr. Van Tubergen's) option to further appeal to
the Third Circuit.  If the Court orders the requested reserves, the Objectors will be able to lock
these funds up without meeting the standard for a stay pending appeal through the filing of a
meritless appeal to the Third Circuit – not just through a decision by the District Court.  This hold-
up value that the Objections seek comes at a significant cost to the estates and their legitimate
creditors.

**C.** **The Objections Do Not Meet**
**The Heightened Standard For A Stay Pending Appeal**.

47.    Even if the Court were to construe the Objections as requests to stay its prior orders

on the Objectors' Claims – as above, it should not – the Objectors cannot possibly meet the four-

part standard required by the Third Circuit for the issuance of a stay pending appeal.

48.    A request for stay pending appeal in the Third Circuit is reviewed under a four-

factor test: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed

on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4)

where the public interest lies." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton*

*v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L.Ed.2d 724 (1987)).    The first two factors

are "the most critical." *In re Revel AC, Inc.*, 802 F.3d at 568 (citing *Nken v. Holder*, 556 U.S. 418,

434, 129 S. Ct. 1749, 1761, 173 L. Ed. 2d 550 (2009)).    The Objections do not attempt to meet this

standard and indeed, even if they were characterized as requests for a stay pending appeal, each of

the aforementioned factors weigh heavily against a stay.

49.    Regardless, as set forth below, the Objectors would fail to meet any part of the

Third Circuit's standard.

      i.    **The Appeals Are Unlikely To Be Meritorious**.

50.    The Wind-Down Debtors submit that the Claims (and appeals) of the Objectors are

frivolous, and success on the merits highly unlikely.

51.    This Court has considered extensive briefing concerning both Objectors' Claims.

Parties have presented oral argument.    This Court (twice in the case of Mr. Van Tubergen's Claim),

rendered thoughtful Decisions following careful consideration of the facts.    Even if the Objections

are to be considered requests for a stay pending appeal, neither has put forth any evidence that

16

such appeal will be meritorious.  Rather, the Court may take notice of its prior orders and the considerable record in these cases supporting disallowance and expungement.

### ii. Any Harm To The Objectors Is Balanced By Bankruptcy's Routine Use Of Estimation For These Purposes.

52.     The Objectors assert or imply that they will be harmed absent full reserve for their asserted claims.  The Wind-Down Debtors concede that the Objectors may be conclusively denied recoveries under the Plan at a later date absent the requested relief, and the Wind-Down Debtors' aim is to issue the greatest Distributions possible to creditors in the shortest possible time, including 100% Distributions to customers within a short time after this matter is resolved.

53.     Regardless, Objectors would suffer no irreparable harm *unless* (i) the Objectors prevail on appeal (again, unlikely), and also (ii) the estates lack sufficient funds to satisfy allowed portions of the Objectors' claims following such appeal.  The former condition is addressed above; the latter is contingent upon the timing of appellate rulings, each party's exercise of further appeals, and the Wind-Down Debtors' liquidation of certain remaining assets and issuance of Distributions.[18]

54.     In light of these uncertainties, the Wind-Down Debtors submit that the Objectors have failed to show a reasonable likelihood that they will be denied an opportunity to obtain a recovery in the event the Wind-Down Debtors' proposed Disputed Claim Reserve is approved.

55.     The Bankruptcy Code endows this Court with a tool, however, to assess and resolve potential harms surrounding uncertain and lengthy appeals by vexatious creditors: estimation, to resolve litigation that would "unduly delay" administration of the estate.  Indeed, such is the case

---

[18]   The Wind-Down Debtors observe, for instance and in brief, that the Plan provides for Distributions to re-vest with the Wind-Down Debtors if Unclaimed after a period of six months.  The amount of Unclaimed Distributions is highly uncertain at this time, but the procedure itself implies that the estates cannot be closed and truly final Distributions are unlikely to made within six months of the date hereof.

here, as addressed above, given that the Plan expressly contemplated that these Disputed Claims shall be estimated for this and other Distribution purposes at $0 (which Plan neither Objector opposed). Therefore, notwithstanding some degree of theoretical harm, this factor should not weigh in the Objectors' favor.

### iii.  Meanwhile, A Stay Will Harm BlockFi's Other Creditors With Legitimate Claims.

56.     A stay on appeal would cause significant harm to other parties interested in this proceeding. *See e.g.*, *In re 40 Lakeview Drive, LLC*, 2017 WL 3701215, at *6 (Bankr. D.N.J. Aug. 17, 2017) (finding significant harm to estates due to "considerable delay in administration and additional expense to the estate to the detriment of all interested parties, including not only the Trustee but also the estate's creditors."). Establishing a reserve sought by the Objectors will harm BlockFi's other creditors, who have been waiting patiently for the return of funds owed to them. Many of BlockFi's creditors entrusted their savings and retirements to BlockFi. These individuals have been without access to the bulk of these funds since November 2022. The amounts that the Objections request be reserved are significant, and, as Mr. Van Tubergen correctly points out, "the length of time to fully resolve [the Disputed Claim] can be lengthy." Van Tubergen Objection, ¶ 5. A lengthy delay based on the appeals of two meritless claims should not serve to delay legitimate creditor recoveries.

### iv.  The Public Interest Weighs Heavily Against A De Facto Stay.

57.     For much the same reasons, public interest weighs heavily against the issuance of a stay of the Court's prior orders.

58.     As a procedural matter, permitting a stay many months after this Court disallowed the Claims would nullify a material component of the Plan and expose the Wind-Down Debtors to theoretically unlimited untimely relief from other creditors. It would be unclear to the parties in

this proceeding how, or when, a request for stay pending might be presented, and possible that other creditors may emerge with requests similar to those presented here.  The Court should honor the terms of the Plan and the procedural requirements inherent to trial and appellate practice in the interest of facilitating administration of these cases.

59.     As to substance, neither public policy nor equity in any general sense encourage deference to these Objectors.  Again, the Objectors entered into high-risk pre-petition lending agreements with BlockFi, their loans went upside down based on the pricing of highly volatile collateral assets, and BlockFi liquidated their collateral as was expressly contemplated under and negotiated as a prerequisite to entry into the respective lending agreements.  Messrs. Gerro and Van Tubergen lost a considerable amount of money because of highly leveraged loans that they could not service.  That is no fault of BlockFi's, and no fault of BlockFi's creditors.

60.     Messrs. Gerro and Van Tubergen have litigated their Claims extensively and have lost before this Court repeatedly.  They remain undeterred.  While it is the Objectors' right to appeal, the public interest weighs heavily against tying up significant estate assets (and creditors' entitlements) while a potentially lengthy appeal over frivolous claims already litigated exhaustively plays out.

## III.     The Objectors' Other Arguments Are Without Merit.

61.     None of the Objectors' other arguments address the process expressly demanded by the Plan (which the Wind-Down Debtors submit is dispositive of this issue), and each are otherwise without merit.

### A.  Mr. Gerro Is Not Subject To Disparate Treatment As Compared To Other Similarly Situated Creditors.

62.     Mr. Gerro argues that because the Wind-Down Debtors are not proposing to reserve $0 for other similarly situated creditors (specifically, Messrs. Wynns and Main), the Wind-Down Debtors are discriminating against him.  This is incorrect.

63.     The Notice sets forth reserve amounts for Messrs. Wynns and Main at $26,152.78 and $11,335.33, respectively.  *See* Notice, Schedule 1.  Mr. Wynns' claim no. 3052 was allowed in the amount $68,213.10.  *See* Docket No. 1846.  Mr. Main's claim no. 5647 was allowed in the amount $21,554.38.  *See* Docket No. 2232.  The reserve amounts set forth in the Notice for these claims are equal to the respective allowed amounts after set-off of the outstanding loan balances. *See* Notice, Schedule 1 n. iii, iv.  The Notice, therefore, establishes a reserve amount for Messrs. Wynns and Main's claims because they have allowed Claims, whereas Mr. Gerro does not (and, based on the applicable language of the Plan, has a Claim deemed to be for $0).

### B.  Mr. Gerro's Threat Of Appeal Of The Reserve Amount, And The Subsequent Expenditure Of Judicial And Other Resources, Should Not Be Credited.

64.     In lieu of meritorious argument, Mr. Gerro indicates that this contested matter will simply yield more appellate litigation.  The Court should not dignify this threat.

65.     Mr. Gerro asserts that "[t]his Court will conserve judicial resources, professional fees, and BlockFi's estate by ordering the establishment of a reserve for the face amount of Gerro's claim.  Otherwise, this issue may be presented, briefed, and argued before the District Court of New Jersey and/or the United States Court of Appeals for the Third Circuit."  Gerro Objection, ¶ 6.  In other words, Mr. Gerro's final argument in favor of reserving the full amount of his Claim is to further emphasize his attempt to hold the estates and other creditors hostage with frivolous appeals.

20

66.    Mr. Gerro is free to appeal an order by this Court on the Notice as it pertains to his Claim.  If Mr. Gerro is to appeal an order on the Notice, he will need to get a stay pending appeal, which for all the reasons set forth herein, and more, would not be merited.  But it is worth noting also that Mr. Gerro has been a serial litigant not only in these proceedings, but in parallel state court proceedings in California that he only recently agreed to dismiss (without prejudice).[19]

67.    Mr. Gerro's pattern of behavior only reinforces the need to resolve these matters as prescribed by the Plan and without issuing additional stays.  Bankruptcy administration demands that estates not be held hostage.

**C.    Mr. Van Tubergen's Assertion That The
Wind-Down Debtors Should Be Required To Provide Financial Data
To Support The Reserve Amount Is Without Basis And Confuses The Issue.**

68.    Section II.B. of Mr. Van Tubergen's Objection asserts, in sum, that the Wind-Down Debtors must put forth financial data to support the proposed reserve amount of Mr. Van Tubergen's Claim.  This assertion lacks any basis in fact or law.  The Plan and Confirmation Order adequately determine the need for any Disputed Claim Reserve.

69.    The Wind-Down Debtors propose to reserve $19.07 for Mr. Van Tubergen's Claim because this Court has determined, and thereafter estimated on a final basis, that such is the maximum amount that Mr. Van Tubergen may recover in these proceedings.

## NOTICE

70.    The Wind-Down Debtors will provide notice of this Response to the following parties and/or their respective counsel, as applicable: (a) the office of the U.S. Trustee for the

---

[19]    The Wind-Down Debtors reserve all rights with respect to action that may be taken against Mr. Gerro in respect thereof.

21

District of New Jersey, (b) George J. Gerro, (c) John W. Van Tubergen Jr., and (d) other parties requesting notice in these proceedings.

## <u>CONCLUSION</u>

Wherefore, the Wind-Down Debtors respectfully request that the Court deny the Objections, approve the reserve amounts set forth in the Notice, and grant such other relief as is just and proper.

[*Remainder of page intentionally left blank.*]

Dated: August 23, 2024

/s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
Dstolz@genovaburns.com
Dclarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
Richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
Matthew A. Sawyer, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com
msawyer@brownrudnick.com

*General Counsel to the Plan Administrator*