| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan G. Axelrod, Esq. (admitted *pro hac vice*)<br>Matthew A. Sawyer, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br>msawyer@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al*.,<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered under a Confirmed Plan[2])<br><br>Docket Nos. 2349, 2374<br><br>Hearing Date: August 27, 2024 at 11:30 a.m. ET |

# WIND-DOWN DEBTORS' RESPONSE TO MATTHEW GORDON'S OBJECTION TO THE WIND-DOWN DEBTORS' KYC/AML PROTOCOLS MOTION AND CROSS-MOTION DIRECTING IMMEDIATE PAYMENT

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order (the "Confirmation Order") [Docket No. 1660] confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609].

BlockFi Inc., and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby submit this Response (the "Response") to *Matthew Gordon's Objection to the Wind-Down Debtors' KYC/AML Protocols Motion and Cross-Motion Directing Immediate Payment* (the "Objection" and "Cross-Motion" filed by the "Objector" and the Wind-Down Debtors' motion, the "Motion")[3] [Docket Nos. 2374 and 2349, respectively]. In support of this Response, the Wind-Down Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Wind-Down Debtors are seeking approval of a process to ensure compliance with applicable U.S. laws in the distribution of funds to customers pursuant to their confirmed Plan under the extraordinary circumstances presented here. While BlockFi may not be the first regulated financial institution to enter Chapter 11, it appears to be among the first to (a) enter Chapter 11 under emergency circumstances requiring the termination of the vast majority of staff, including their compliance team, but (b) thereafter recover sufficient funds to enable 100% recoveries to customers. The consequences of this exceptional fact pattern include that BlockFi has been required to re-build its compliance capabilities outside the ordinary course of business, on a truncated schedule, to ensure against the aiding and abetting of, for instance, money laundering activities.

2.  The Objector raises certain understandable concerns with the aim of recovering his lost funds as swiftly as possible. The Wind-Down Debtors sympathize. They have spoken with the Objector in advance of this filing and believe the concerns raised therein have been or will be substantively resolved, if not withdrawn. Nevertheless, as of this writing, the Objection is

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

outstanding; moreover, the Wind-Down Debtors take this opportunity to address the Objector's concerns in further explication of the requested relief and cause therefor.

3. As stated repeatedly, the Plan Administrator's primary objective is to distribute BlockFi's assets to customers to the maximum extent and as quickly as possible. The Wind-Down Debtors remain, however, subject to certain federal laws and regulations, including the Bank Secrecy Act, Anti-Terrorism Act, Unlawful Internet Gambling Enforcement Act of 2006, and child abuse statutes, that restrict the Wind-Down Debtors' ability to freely distribute assets where there is a suspected KYC or AML issue.[4] Anything less than full and conscientious compliance with these laws and regulations would risk the financial security of the Wind-Down Debtors, and impede the Wind-Down Debtors' ability to make distributions to deserving customers. The Plan Administrator will not take such risks with customer money, to say nothing of the reputations and security of employees and professionals who have enabled extraordinary recoveries for customers to date.

4. Although, again, the Objector's concerns regarding delay are understandable, the Plan Administrator is not starting from scratch. The Wind-Down Debtors managed to retain certain records concerning the Flagged Accounts, sufficient to indicate which accounts had previously been flagged by BlockFi's compliance software, the nature of the flag, and in some cases, information concerning prior review by BlockFi's compliance team. These records are helpful but do not, alone, ensure the Wind-Down Debtors' compliance with applicable federal law. Rather, the Plan Administrator must investigate each flag to determine whether a distribution to

---

[4] To this end, the Plan Administrator does not believe that the Plan ordered the Plan Administrator to disregard applicable federal law in making distributions. *See* Confirmation Order, § 115(ii).

that account violates applicable law (a process that the Plan Administrator has begun while the Motion is pending).

5. The Plan Administrator has proposed a conservative approach to strike an appropriate balance between compliance with federal law and fulfilling his charges to distribute assets to customers. In sum, the Motion provides that the Plan Administrator (in conjunction with BlockFi's remaining qualified team) will review the available information and determine whether to clear each Flagged Account for distribution or provide the relevant Flagged Account holder and/or governmental authority notice and an opportunity to take appropriate action. The Plan Administrator believes the proposed notice procedures for frozen accounts provide adequate and efficient due process for customers and complies with applicable law.

6. The Objection highlights the need for the process set forth in the Motion. The Objector raises argument concerning the Bank Secrecy Act, asserting that it does not permit BlockFi to withhold distributions. The Objector raises a Cross-Motion for immediate payment of the balance of his account. However, as identified herein and in the Motion, the Bank Secrecy Act is not the only federal statute that impacts the Wind-Down Debtors' ability to distribute assets on account of the Flagged Accounts (and, for the avoidance of doubt, nothing in the Plan or otherwise requires the Plan Administrator to make an immediate distribution to the Objector).

7. Following a factual review of BlockFi's records, the Plan Administrator determined that the Objector had, through a series of transfers indicating an intent to obscure the origin of funds, transferred approximately $5,000 in cryptocurrency to their account from an internet gambling site that is prohibited from doing business in the United States. Payment transactions in connection with such restricted gambling activities are governed by the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"). As set forth below, the Plan Administrator

4

interprets the UIGEA to prohibit distribution of unlawful gambling receipts back to customer depositors, as such transactions may be interpreted as aiding and abetting unlawful gambling (and the activities sometimes associated therewith, such as money laundering and tax evasion).

8.  As discussed herein, if this Court approves the Motion, the Wind-Down Debtors would issue a Freeze Notice concerning the portion of the Objector's account believed linked to unlawful gambling. The Objector would have an opportunity to introduce evidence that the Wind-Down Debtors are incorrect in their accounting of the source of funds, or argue for an alternative interpretation of the UIGEA. If the Objector is correct, the Wind-Down Debtors would issue a distribution. The process could be facilitated within the span of several weeks. This prompt resolution exemplifies the balance that the Plan Administrator seeks through the Motion, and is emblematic of the process contemplated for the remainder of the Flagged Accounts.

9.  The Objector also raises concerns regarding service of the Motion on affected customers, apparently because the service information provided to customers was redacted. The Plan Administrator respectfully submits that redaction of the information in Schedule 1 of the Motion was necessary in light of the requirements under the Bank Secrecy Act, and otherwise disagrees with the Objector's conclusions. The Motion identified that the Wind-Down Debtors would serve process on (a) appropriate government authorities and the U.S. Trustee, and (b) interested customers identified on Schedule 1. The Motion was served via first-class mail and email, as applicable, on each of the parties identified on Schedule 1. As such, recipients of the Motion (other than the United States Trustee and the governmental parties) could reasonably assume that they are on Schedule 1.

10. The Wind-Down Debtors respectfully submit that the relief requested in the Motion is appropriate in light of the circumstances and that the Objection should be overruled.

**BACKGROUND**

11. On September 21, 2023, BlockFi filed the Plan. On October 3, 2023, this Court issued its Confirmation Order confirming the Plan. The Plan went effective on October 23, 2024. *See* Docket No. 1788.

12. Section 115 of the Confirmation Order clarifies that the Plan and Confirmation Order do not, among other things, nullify the applicability of federal law or BlockFi's compliance therewith. *See* Confirmation Order, § 115(ii).

13. On June 28, 2024, the Wind-Down Debtors file the Motion. Contemporaneously with the Motion, the Wind-Down Debtors filed the *Motion for Authority to Redact and File Certain Information Under Seal in Connection with the Wind-Down Debtors' Motion to Approve KYC/AML Protocols for US-Based Accounts* (the "Seal Motion") [Docket No. 2350] requesting authority to seal the information contained on Schedule 1 to the Motion. Following continued review of BlockFi's books and records, the Wind-Down Debtors determined that Schedule 1 to the Motion included certain parties and omitted other parties erroneously,[5] and on July 29, 2024, the Wind-Down Debtors filed their *Supplemental Schedule of KYC/AML Accounts Subject to Motion to Approve KYC/AML Protocols for Us-Based Accounts* (the "Supplemental Schedule") [Docket No. 2359] attaching a revised Schedule 1 which corrected the errors and included the complete list of parties subject to the Motion. The Supplemental Schedule was served via first-class mail and email on the parties in revised Schedule 1, including the Objector. See Docket No. 2363. The Motion and Seal Motion are currently set for hearing on August 27, 2024 at 11:30a.m.

---

[5] The Wind-Down Debtors determined that Schedule 1 to the Motion included certain errors caused principally by data aggregation and disparate record keeping practices.

ET, and the deadline to file and serve objections thereto was August 20, 2024. *See* Docket No. 2360.

14. On August 20, 2024, the Objector filed his Objection, containing two arguments. First, the Objection argues that notice of the Motion is deficient because Schedule 1 is redacted. *See* Objection, ¶¶ 32-34. Second, the Objection Argues that the Wind-Down Debtors' failure to make distributions for the reasons given in the Motion violates the Plan, is not permitted under the Bank Secrecy Act, and violates due process. *See* Objection ¶¶ 35-60.

15. In connection with the Objection, the Plan Administrator expedited review of BlockFi's records concerning the Objector's account. BlockFi's records indicate that on May 19, 2022, Chainalysis issued a flag for indirect exposure to gambling in connection with a transfer of 76.77 LTC (valued at $5,112.85 at the time of the transfer; somewhat less as of the Petition Date) (the "Subject Funds") into the Objector's account with BlockFi. BlockFi's records trace the Subject Funds back through a series of intermediary wallets to an originating source, an internet gambling website that forbids use by U.S. residents.[6]

16. In other words: industry-standard KYC/AML compliance software employed by BlockFi traces crypto transfers across blockchains, which are publicly accessible. The software shows that 76.77 LTC originated from an internet gambling site not permitted to do business with U.S. customers on May 19, 2022. Over a very short time, that 76.77 LTC was transferred from one crypto wallet to another several times, until finally it was deposited in the Objector's BlockFi account. The odds of this exact amount of LTC being transferred accidentally or coincidentally, in such exact amount in rapid succession to unrelated persons, are remote. The only reasonable

---

[6] The Wind-Down Debtors take no position as to the conduct of the Objector in connection with any gambling activities. The purpose of the inquiry and exercise described herein is solely to determine the Wind-Down Debtors' obligations in respect of funds received, as they pertain solely to the Wind-Down Debtors and their personnel and professionals.

conclusion BlockFi could make with the information it possesses is that the Objector, a U.S. resident, was not permitted to engage in the relevant gambling activities, but after doing so, moved the 76.77 LTC in proceeds through several wallets so as to obscure its origin before depositing it with BlockFi.

17. As explained below, the UIGEA restricts BlockFi from accepting deposits that are suspected proceeds from unlawful internet gambling, and otherwise regulates transactions in connection with suspected unlawful internet gambling activities. Blockchain technology, however, does not permit BlockFi to accept or reject deposits at the time of transfer (i.e., crypto is simply transferred); moreover, the diligence process described herein is sufficiently time-consuming as to require after-the-fact review. Accordingly, as described below, BlockFi determined following receipt of the deposit that engaging in further transactions with respect to this 76.77 LTC might violate the UIGEA.

## RESPONSE

**I.    The Objector's Objection Illustrates
The Need For The Process Set Forth In The Motion.**

18. The Objection highlights the importance of the relief requested in the Motion. The protocols set forth in the Motion strike the necessary balance between compliance with federal law, maintenance of due process, and maximizing distributions. The Objection and Cross-Motion, meanwhile, are singularly focused on full, immediate payment. The Objector appears not to have considered the Plan Administrator's obligations under the full panoply of applicable federal law, and effectively objects to the freezing of his assets for cause (an issue the Plan Administrator seeks to resolve via the Protocols suggested in the Motion), more than the process proposed via the Motion.

### A. The Protocols Set Forth In The Motion Allow The Plan Administrator To Make Distributions <u>Where Legally Permitted, Without Violating Applicable Law</u>.

19. The purpose of the Motion and Protocols sought to be approved is to provide the Plan Administrator flexibility to investigate potential legal compliance issues and provide parties an opportunity to be heard before the Wind-Down Debtors engage in any further transactions implicating their obligations under various KYC and AML regulations. The factual circumstances of the Objector's claim provide an opportunity to examine the process proposed and its utility to the parties.

20. As noted above, BlockFi's industry-standard compliance software flagged a deposit from the Objector, and the Plan Administrator conducted a factual investigation of the Objector's Flagged Account pursuant to the process set forth in the Motion. BlockFi's records indicate that the Subject Funds originated from a gambling website that the Objector was not permitted to transact with, and that the Objector attempted to conceal the source of funds prior to depositing with BlockFi.

21. Section 5363 of the UIGEA provides in relevant part:

No person engaged in the business of betting or wagering may knowingly accept, in connection with the participation of another person in unlawful Internet gambling—

(1) credit, or the proceeds of credit, extended to or on behalf of such other person (including credit extended through the use of a credit card);

(2) an electronic fund transfer, or funds transmitted by or through a money transmitting business, or the proceeds of an electronic fund transfer or money transmitting service, from or on behalf of such other person;

(3) any check, draft, or similar instrument which is drawn by or on behalf of such other person and is drawn on or payable at or through any financial institution; or

(4) the proceeds of any other form of financial transaction, as the Secretary and the Board of Governors of the Federal Reserve System may jointly prescribe by

9

regulation, which involves a financial institution as a payor or financial intermediary on behalf of or for the benefit of such other person.

22. BlockFi's conduct with respect to such "restricted transactions" may be subject to "policies and procedures" that require any "designated payment system" to both "identify" and "block restricted transactions." *See* 31 U.S.C. § 5364. A "designated payment system" under § 5362(3), is defined at 12 C.F.R. § 233.3 to include, among others, money transmitting systems that, like BlockFi "Permit customers to initiate transmissions of funds transactions remotely from a location other than a physical office of the money transmitting business."

23. In sum, the Wind-Down Debtors interpret the foregoing provisions to mean BlockFi is subject to the UIGEA and has an obligation to identify and block transactions originating with unlawful internet gambling. The Wind-Down Debtors acknowledge, however, that the statute appears insufficiently tailored to the cryptocurrency context, that there is a paucity of case law or other guidance on the subject of its compliance obligations, and that its factual knowledge concerning the Objector's transaction history and fund sourcing is incomplete. Moreover, the Wind-Down Debtors do not believe the UIGEA requires them to freeze any funds deposited by the Objector other than the Subject Funds.

24. Based on the foregoing, were the Motion to be approved, the Plan Administrator would expect to issue a Freeze Notice concerning the Subject Funds, and distribute the remaining funds due the Objector. Following receipt of the Freeze Notice, the Objector could respond as set forth in the Protocols (in a sense renewing his Cross-Motion), and the Plan Administrator would comply with discovery and otherwise provide requested information to the extent legally

10

permitted, reserving all rights to refuse to provide documents or to redact documents as required by applicable law.[7]

25. This process is not unique or specific to the Objector's account. The Plan Administrator proposes to follow, broadly speaking, the same process for any other affected claimant.

### B. The Objector Misunderstands the Plan and Federal Law.

26. In seeking return of his deposited assets, the Objector evidences insufficient understanding of the breadth of the Plan Administrator's obligations and the flexibility (or lack thereof) afforded by the Plan.

27. As set forth above, the Plan Administrator believes the Wind-Down Debtors (and by extension their officers and professionals, etc.) are subject to the strictures of the UIGEA, among other relevant KYC/AML regulations. Accordingly, immediate distribution could violate the UIGEA. The Plan Administrator regards the risk inherent to such action – i.e., penalties that might be imposed on the Wind-Down Debtors and/or responsible persons – as unacceptable to both the Wind-Down Debtors as well as their former customers and their current officers, employees, and professionals.

28. Moreover, the Objector is simply incorrect that the Plan or Confirmation Order permit, much less require, immediate distribution. The Plan simply does not require the Plan Administrator to make distributions by any particular date (though the Plan Administrator is, again, attempting to make distributions as swiftly as possible for all concerned). Moreover, paragraph

---

[7] For example, the Bank Secrecy Act prohibits the disclosure of whether a SAR was or was not filed. *See* 12 CFR § 21.11(k) ("A SAR, and any information that would reveal the existence of a SAR, are confidential, and shall not be disclosed except as authorized in this paragraph (k)").

115 of the Confirmation Order which makes clear that federal (including criminal) law and regulation apply to the Wind-Down Debtors post-confirmation. *See* Confirmation Order, § 115(ii).

29. For the avoidance of doubt: the Plan Administrator will, of course, follow an order of this Court in respect of any required distributions. The Plan Administrator will not, however, interpret an order of this Court to approve or require *sub silencio* an action that would otherwise seem to violate federal law.

## II. The Motion Does Not Turn Due Process On Its Head.

30. The Objector asserts that the Motion violates creditors' rights and turns due process on its head. The Wind-Down Debtors disagree.

31. The Motion sets forth a process whereby Flagged Account holders will (i) receive notice of a determination as to the status of their account, and (ii) be given a full and fair opportunity for relief. As discussed above, the Wind-Down Debtors will provide information and discovery (where permissible) and will comply in full with any order issued by this Court.

32. Due process considerations were of utmost importance in creating the process. These considerations must be balanced against the Plan Administrator's ability to comply with applicable law. Indeed, the Plan Administrator respectfully submits that the Motion seeks in part and in effect a determination of *what due process is* under these circumstances, and suggests a process intended to balance the parties' various rights and obligations. To the extent the Court believes the proposed process is insufficient, the Wind-Down Debtors would welcome an opportunity to revise the proposed Protocols.

## III. Service Of The Motion Was Proper.

33. The Objector takes issue with the service of the Motion insofar as, he asserts, claimants are not on notice that they are affected by the Motion. Again, the Wind-Down Debtors disagree.

34. The notice provision of the Motion made clear that Flagged Account holders listed on Schedule 1 were interested parties that would receive service of the Motion. Indeed, Flagged Account holders were the only recipients other than the United States Trustee and certain governmental parties. Each of the parties on the revised Schedule 1 received a copy of the Motion via first-class mail and email where such information was available. *See* Docket No. 2363.

35. The Objector appears to raise a concern that the Wind-Down Debtors redacted the Schedule. The Wind-Down Debtors did so out of an abundance of caution given the requirements of the Bank Secrecy Act, among other applicable laws. The redaction of the Schedule, however, should not have prevented any service recipient from understanding that they were an interested party for the reasons set forth in the Motion.

36. Regardless, the Wind-Down Debtors have no intention of withholding customer funds on the basis of notice technicalities. If the Court believes notice of the Motion was in any way deficient, the Wind-Down Debtors request permission to cure any such deficiency and would be pleased to adjourn consideration of the Motion pending completion of such additional notice process.

## **NOTICE**

37. The Wind-Down Debtors will provide notice of this Response to the following parties and/or their respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey, (b) the Objector, and (c) other parties requesting notice in these proceedings.

## **CONCLUSION**

Wherefore, the Wind-Down Debtors respectfully request that the Court (i) overrule the Objection, (ii) deny the Cross-Motion, (iii) grant the Motion, and (iv) grant such other relief as is just and proper.

[*Remainder of page intentionally left blank.*]

Dated: August 23, 2024

/s/ *Daniel M. Stolz*
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
Dstolz@genovaburns.com
Dclarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
Richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
Matthew A. Sawyer, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com
msawyer@brownrudnick.com

*General Counsel to the Plan Administrator*