| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>        Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: November 7, 2024 @ 11:30 a.m. ET**<br>**Response Deadline: October 31, 2024 @ 4:00 p.m. ET**<br>**Oral Argument Waived Unless Response Timely Filed** |

# WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY GEORGE GERRO SHOULD NOT BE FOUND IN CONTEMPT AND FOR SANCTIONS AND IN THE ALTERNATIVE, MOTION TO ENFORCE THE CONFIRMATION ORDER

---

[1] The Wind-Down Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications) (the "Plan") [Docket No. 1609]. Unless otherwise indicated, capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the Plan.

1

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors," or referred to in the past tense as the "Debtors"), as managed by the Plan Administrator, in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Wind-Down Debtors' Motion for Entry of an Order to Show Cause Why George Gerro Should Not Be Found in Contempt and for Sanctions and in the Alternative, Motion to Enforce the Confirmation Order* (the "Motion") for entry of an Order substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"). In support of the Motion, the Wind-Down Debtors respectfully represent as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). "Civil contempt proceedings arising out of core matters are themselves core matters." *In re Essar Steel Minn., LLC,* 47 F. 4th 193, 200 (3d Cir. 2022) (quotations omitted). Moreover, bankruptcy courts have jurisdiction to enforce and interpret their own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 140 (2009); *see also* Plan Art XI, § 10 (expressly retaining jurisdiction to enter necessary or appropriate orders to implement the releases, injunctions, exculpation, and other provisions of the Plan and to interpret and enforce the terms of the Plan and Confirmation Order.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

## Background

**A.     The Chapter 11 Cases**

3.      On November 28, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed on the Petition Date and is incorporated by reference herein.

4.      On January 30, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of claim (the "Proofs of Claim") in these Chapter 11 Cases. The Bar Date Order established (a) March 31, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "Claims Bar Date"), (b) May 30, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"), (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection, and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment

3

or supplement to the Schedules (as defined herein), as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim.

5. On January 12, 2023, the Debtors filed: the Schedules of Assets and Liabilities of: BlockFi Inc. (Case No. 22-19361) [Docket No. 242] (as amended by Docket Nos. 460 and 856), BlockFi International Ltd. (Case No. 22-19368) [Docket No. 247] (as amended by Docket Nos. 462 and 858); BlockFi Investment Products LLC (Case No. 22-19370) [Docket No. 249], BlockFi Lending LLC (Case No. 22-19365) [Docket No. 251] (as amended by Docket Nos. 461 and 857), BlockFi Lending II LLC (Case No. 22-19374) [Docket No. 253], BlockFi Services Inc. (Case No. 22-19371) [Docket No. 255], BlockFi Trading LLC (Case No. 22-19363) [Docket No. 257], BlockFi Ventures LLC (Case No. 22-19367) [Docket No. 259], and BlockFi Wallet LLC (Case No. 22-19366) [Docket No. 261] (collectively and as may be amended from time to time, the "Schedules") pursuant to Bankruptcy Rule 1007.

6. On February 2, 2023, and February 3, 2023, the Debtors caused a bar date notice (the "Bar Date Notice") to be published in The New York Times and The Royal Gazette, respectively, as set forth in the affidavits filed at Docket Nos. 471 and 472. With the assistance of Kroll Restructuring Administration LLC (the "Claims and Noticing Agent"), the Debtors also served the Bar Date Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures set forth in the *Order Granting Debtors' Motion to Establish Certain Notice, Case Management and Administrative Procedures* [Docket No. 54] (the "Case Management Order").

7. On March 13, 2023, the Court entered its *Order Granting Debtors' Motion for Entry of an Order (A) Approving the (I) Omnibus Claims Objection Procedures and Form of*

4

*Notice, (II) Omnibus Substantive Claims Objections, and (III) Satisfaction Procedures and Form of Notice, (B) Waiving Bankruptcy Rule 3007(e), and (C) Granting Related Relief* [Docket No. 609] (the "Claims Procedures Order").

8. On September 26, 2023, the Court confirmed the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1609] (the "Plan"). On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming the Plan, which went effective on October 24, 2023 (the "Effective Date") [Docket No. 1788].

9. The confirmed Plan precludes and permanently enjoins all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in Articles VIII.A, VIII.B, and VIII.C of the Plan from "enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by the Plan." Confirmation Order ¶ 112; Plan Art. VIII. Further, holders of Claims and Interests in these Chapter 11 Cases are defined in the Plan as Releasing Parties,[3] which

---

[3] "Releasing Parties" as defined in the Plan means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to

5

"conclusively, absolutely, unconditionally, irrevocably and forever released and discharged" themselves and their respective successors and assigns from asserting any Causes of Action against each Released Party,[4] including the following Causes of Action:

> known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Platform Pause, the business or contractual arrangements between any Debtor and any Released Party, the FTX Loan Agreement, the 3AC Master Loan Agreements, the Alameda Loan Agreements, the Emergent Pledge, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of Consummation of the Plan, the administration and implementation of the Wind Down, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date[.]

Plan Art. VIII.B.

---

reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) the Committee Settlement Parties (subject to the terms of the Committee Settlement); and (h) each Related Party of each Entity in clauses (a) through (g). For the avoidance of doubt, no Holder of any Claim or Interest that is deemed to reject this Plan shall be a Releasing Party.

[4] "Released Parties" as defined in the Plan means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Releasing Parties; (d) the Bermuda Provisional Liquidators; (e) the Committee Settlement Parties (subject to the terms of the Committee Settlement); (f) the Indenture Trustee; and (g) each Related Party of each Entity in clauses (a) through (f); provided that any of (i) FTX; (ii) 3AC; (iii) Alameda; (iv) Emergent; (v) Marex; (vi) Core Scientific; (vii) the D&O Insurance Providers; (viii) any Holder of a Claim against or Interest in the Debtors that is not a Releasing Party; (ix) any known Holder of a Claim against or Interest in the Debtors that did not receive notice of the opportunity to opt out of the releases contained in the Plan; (x) Kroll Restructuring Administration LLC; and (xi) each Related Party of each Entity in clauses (i) through (x) shall not be a "Released Party;" provided further that additional Persons, other than the Committee Settlement Parties and their Related Parties, may be included in the Plan Supplement as non-Released Parties.

6

### B. Gerro's Prepetition Litigation

10. Prior to the Petition Date, George J. Gerro ("Gerro") filed a *pro se* lawsuit styled Case No. 20BBCV00308 in the Superior Court of the State of California for the County of Los Angeles, North Central District (the "State Court") against BlockFi Lending, Scratch Services, LLC, and Does 1-100 alleging claims based on breach of contract, California Commercial Code violations, and other related claims ("Gerro I"), followed by a second *pro se* lawsuit in the State Court styled 20STCV31493 against BlockFi Lending, Scratch Services, LLC, and Does 1-100 raising identical claims and seeking injunctive relief under California Business and Professions Code Section 17200 ("Gerro II" and together with Gerro I, the "Prepetition Litigation"). Gerro I and Gerro II were on appeal on the Petition Date. Gerro also filed a third action seeking a petition for writ of mandate to revoke BlockFi Lending's lending license in California ("Gerro III"), which was subsequently amended to include a complaint for declaratory relief, and, as a result, Gerro III was split into two cases. BlockFi is no longer a party to Gerro III.

11. Early in these Chapter 11 Cases, Gerro filed a motion seeking authority from this Court to lift the automatic stay to proceed with the Prepetition Litigation, which this Court denied [Docket No. 238].

### B. The Gerro Claims

12. Prior to the Claims Bar Date, Gerro filed Claim Nos. 12386 and 15248 in these Chapter 11 Cases against BlockFi Lending in the amount of 426 BTC and $6,903,883.80, respectively, raising the same claims alleged in the Prepetition Litigation (together, the "Gerro Claims"), thereby submitting to the jurisdiction of this Court for adjudication of the Gerro Claims. BlockFi objected to the Gerro Claims and sought their disallowance (the "Gerro Claim Objection") [Docket No. 1069].

7

13.  The Gerro Claim Objection was fully litigated before the Court, and on August 29, 2023, the Court entered its Memorandum Decision (the "Memorandum Decision") disallowing the Gerro Claims [Docket No. 1420]. Gerro appealed the Memorandum Decision to the United States District Court for the District of New Jersey (the "District Court") [Docket No. 1453]. On August 30, 2024, the District Court issued its Letter Order (the "District Court Order") affirming this Court's decision and dismissing Mr. Gerro's appeal [Docket No. 11 in Case No. 3:23-cv-18740-ZNQ]. Gerro has now appealed the District Court decision to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). Gerro filed a motion for stay pending appeal in the Third Circuit, which was denied.[5] As of the date of this Motion, Gerro's appeal of the District Court decision remains pending in the Third Circuit.

**B.    Gerro's Violation of the Plan and Confirmation Order and Its Financial Impact**

14.  On July 26, 2023, the State Court presiding over the Prepetition Litigation held a status conference in the Prepetition Litigation prior to confirmation of the Plan in these Chapter 11 Cases and set another status conference for July 25, 2024 to provide time for these Chapter 11 Cases to proceed. The Wind-Down Debtors and Gerro prepared a status conference report in advance of the July 25, 2024 status conference. *See* Gerro and BlockFi Status Reports attached hereto as **Exhibit B**.  In their status report, the Wind-Down Debtors explained to the State Court that the Prepetition Litigation should be dismissed for the same reasons set forth in this Motion. Gerro took the position that the Prepetition Litigation should not be dismissed and should instead be stayed to "preserve the status quo" of his pending appeal of the disallowed Gerro Claims. Gerro

---

[5] As noted in the Wind-Down Debtors' response to Gerro's request for a stay, it was entirely unclear which order Gerro was seeking to stay since this Court had recently overruled his objection to the Debtors' Disputed Claims Reserve Notice [Docket Nos. 2364 & 2367]. Regardless, Gerro's request was procedurally and substantively improper before the Third Circuit and was denied.

8

indicated that when the time was "appropriate" he would "voluntarily request dismissal of the case without prejudice. However, the Doe Defendants have not yet been dismissed." *Id.*

15. At the State Court status conference on July 25, 2024, the court indicated that it was uncomfortable dismissing the Prepetition Litigation at that time without a motion pending for due process reasons. The State Court instead set a show cause hearing for next year on July 21, 2025 instructing Gerro that if there was no dismissal filed prior to the show cause hearing, Gerro would have to explain why the Prepetition Litigation should remain pending, otherwise the State Court indicated it would dismiss the Prepetition Litigation with prejudice without the need for a hearing.

16. In addition to explaining to Gerro that the Prepetition Litigation should be dismissed in advance of the State Court's status conference, by correspondence dated July 25, 2024 and August 8, 2024, the Wind-Down Debtors (i) informed Gerro of his violation of the Plan and Confirmation Order, (ii) demanded full dismissal of the Prepetition Litigation with prejudice, and (iii) warned Gerro that failure to dismiss the Prepetition Litigation would result in the filing of this Motion. Despite these efforts, as of the date of this Motion, Gerro has failed to fully and properly dismiss the Prepetition Litigation with prejudice. *See* **Exhibits C** and **D** attached hereto.

17. On August 21, 2023, Gerro provided the Wind-Down Debtors with filed copies of dismissal documentation that dismissed the BlockFi defendants without prejudice; however, Gerro did not dismiss either action *with prejudice* as required, nor did he dismiss either action in its entirety. *See* **Exhibit E** attached hereto. Gerro instead continues to name certain "Doe" defendants in his Prepetition Litigation lawsuits that he specifically alleges in his complaints are agents and/or employees of BlockFi and his dismissal of BlockFi without prejudice is improper. Mr. Gerro did not opt out of the Plan's third-party releases, though he had an opportunity to do so, and is bound

9

by the terms of the release provisions in the Plan, as well as the Plan injunction and Confirmation Order language.[6]

18. On September 6, 2024, the Wind-Down Debtors sent additional correspondence explaining these issues to Gerro in an effort to prevent the need to file this Motion. *See* **Exhibit F**. In response, Gerro requested a stipulation to be filed in the State Court reflecting that his dismissal of the BlockFi defendants with prejudice does not constitute res judicata or otherwise undermine the bankruptcy proceedings, jurisdiction, or appeals. *See id.* The Wind Down Debtors responded that they have already explained numerous times that a proper dismissal of the Prepetition Litigation (that is, a full dismissal of the lawsuits in their entirety with prejudice), does not affect Gerro's appeal of the disallowed Gerro Claims currently pending in the Third Circuit and no stipulation is necessary or required.

19. Gerro responded with a draft stipulation to be filed with the State Court that contained irrelevant and unnecessary terms that (1) did not have the effect of dismissing the Prepetition Litigation in its entirety with prejudice and (2) leaves the Prepetition Litigation pending against the BlockFi Doe Defendants with an apparent opportunity for Gerro to potentially refile suits against the BlockFi entities and its agents or representatives. *See* **Exhibit G**. Gerro is enjoined and barred from continuing to prosecute the Prepetition Litigation and from reserving the right to refile his prepetition lawsuits against the Wind-Down Debtors – something that he has effectively done by refusing to dismiss the named BlockFi defendants with prejudice and refusing to dismiss the Prepetition Litigation in its entirety with prejudice.

---

[6] Mr. Gerro was served with a Disputed Claim Notice that gave him an opportunity to opt out of the third-party release, but he did not return the form. Mr. Gerro is likewise bound by the gatekeeping provision in the Plan.

20. Gerro's violation of the Plan and Confirmation Order has also had a negative financial impact on the Wind-Down Debtors. Aside from the added costs of defending Gerro's meritless appeals of the disallowed Gerro Claims, the Wind-Down Debtors have spent estate resources for counsel of record in the Prepetition Litigation preparing for and attending the aforementioned status conferences and otherwise monitoring and managing the Prepetition Litigation docket. When the State Court noted its concern with this issue, Gerro's response was that the estate has plenty of money since it is paying creditors 100 cents, which is, of course, irrelevant and does not justify spending estate resources on barred and frivolous litigation. Additionally, the Wind-Down Debtors have spent estate resources repeatedly urging Gerro to comply with the terms of the Plan and Confirmation Order. The Wind-Down Debtors have made numerous attempts to obtain Gerro's compliance, even as recently as October 4, 2024.[7] Despite these efforts, as of the date of this Motion, Gerro has failed to fully and properly dismiss the Prepetition Litigation with prejudice. Gerro is acting in bad faith and Court intervention is required.

**Relief Requested**

21. By this Motion, the Wind-Down Debtors seek entry of an order (the "Order") finding Gerro in contempt for failing to fully dismiss the Prepetition Litigation with prejudice in violation of the Plan and Confirmation Order, and in the alternative, enforcing this Court's Confirmation Order and sanctioning Gerro should he fail to fully and properly dismiss the Prepetition Litigation with prejudice within 10 days of entry of the Order.

---

[7] The Wind-Down Debtors sent Gerro a copy of this Motion and a proposed stipulation to avoid filing it. Gerro responded asking the Wind-Down Debtors to provide their "goals." The Wind-Down Debtors goals have been communicated to Gerro multiple times and have been the same from the beginning of the discussions – to obtain a complete and full dismissal of the Prepetition Litigation with prejudice as the Confirmation Order requires.

**Basis for Relief Requested**

22. Section 1141(a) of the Bankruptcy Code provides that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). As such, "[a] bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect." *In re G–I Holdings, Inc.*, 514 B.R. 720, 747–48 (Bankr. D.N.J. 2014) *aff'd*, 654 F. App'x 571 (3d Cir. 2016) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170–71 (1938); *Travelers lndem. Co. v. Bailey*, 557 U.S. 137, 138–39 (2009) (holding that once an order becomes final, it is res judicata as to parties and those in privity with them)). Gerro is bound by the terms of the Confirmation Order and is violation of such terms.

**A. This Court Has Civil Contempt Power and Should Exercise It.**

23. It is well established that bankruptcy courts possess civil contempt power. *See, e.g.*, *Taggart v. Lorenzen*, 587 U.S. 554, 560–65 (explaining the history of civil contempt power and that bankruptcy courts possess such power). Section 105(a) of the Bankruptcy Code provides bankruptcy courts broad authority to "take any action that is necessary or appropriate to prevent an abuse of process." 11 U.S.C. § 105; *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (internal quotations omitted). This authority includes "statutory contempt powers to award monetary damages as well as other relief as 'necessary and appropriate' to prevent such abuse." *In re Mondelli*, Civ. No. 12-4659, 2012 WL 1187098 *5 (D. N.J. Mar. 21, 2013*); see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (a federal court may use its "inherent power to impose attorney's fees as a sanction for bad-faith conduct")

24. Civil contempt is appropriate to "compensate another party for the contemnor's violation" of court orders. *In re Reath*, No. 04-49188, 2006 WL 3524458, at *6 (Bankr. D. N.J. Dec. 6, 2006). A contempt order may include compensating "the debtor for damages suffered as a

12

result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, [as] both necessary and appropriate to carry out the provisions of the bankruptcy code." *Placid Refin. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). Although parties generally bear their own litigation costs, "one exception to this rule is for willful disobedience of a court order." *Grossman v. Belridge Grp. (In re Lothian Oil, Inc.)*, 531 F. App'x 428, 446 (5th Cir. 2013) ("Given Anti-Lothian and its attorneys' decision to ignore the injunction order, we have little difficulty in concluding that this exception applies here.").

25. While a showing of bad faith is not required to impose sanctions pursuant to Section 105, the Supreme Court has also held that a court's inherent power permits it to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). The Supreme Court's holding in *Chambers* "allows for sanctions when a party's 'bad-faith conduct,' beyond that occurring in trial, is 'in direct defiance of the sanctioning court.'" *In re Skyport Glob. Commun., Inc.*, 642 F. App'x 301, 303 (5th Cir. 2016).

### B. The Requirements to Hold the Contemnors in Civil Contempt Are Met.

26. Civil contempt can serve two purposes, either coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct. *In re Reath,* 2006 WL 3524458, at *6 (citing *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d at 612). The elements to establish civil contempt are (1) a valid court order existed; (2) the party had knowledge of the order, and (3) the party disobeyed the order. *John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003). An alleged contemnor's behavior "need not be willful in order to contravene the applicable decree," and "good faith is not a defense to civil contempt." *Id.* at 552; *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

13

27. As to the first element requiring a court order be in effect, this Court entered the Confirmation Order on October 3, 2023. Gerro did not seek any relief from the Confirmation Order, nor did he seek an appeal or revocation of the Confirmation Order. Any attempts by Gerro to collaterally attack the Confirmation Order in the Prepetition Litigation Court must fail. *See, e.g., In re RTI Holding Co., LLC*, 2021 WL 4994414, at *6 ("When a bankruptcy court enters a confirmation order, it renders a final judgment.").

28. Second, the Confirmation Order permanently enjoined Gerro from continuing the Prepetition Litigation and released the Wind-Down Debtors and Released Parties. Confirmation Order ¶¶ 68–69, 98; Plan Art. VIII. Further, the subject of the Prepetition Litigation is the basis of the Gerro Claims. Gerro submitted to the jurisdiction of this Court in filing the Gerro Claims in these Chapter 11 Cases, and the Gerro Claims were disallowed in their entirety by this Court in its Memorandum Decision, which was affirmed by the District Court. As such, Gerro's only avenue for relief at this point is his pending appeal of the District Court's affirmance of the Memorandum Decision to the Third Circuit. The full and proper dismissal of the Prepetition Litigation with prejudice will not disturb or effect Gerro's appeal to the Third Circuit.

29. The third and final element for contempt is also met because Gerro has failed to comply with this Court's orders by failing to properly and fully dismiss the Prepetition Litigation with prejudice. Gerro's continued disregard for this Court's authority delays and hinders the Wind-Down Debtors' post-confirmation efforts, which is exactly what the Plan injunction is intended to prevent. Gerro's continuation of the Prepetition Litigation has also caused the Wind-Down Debtors to incur additional, unnecessary fees and expenses as described above. The Wind-Down Debtors have attempted in good faith to convince Gerro to comply with the Plan and Confirmation Order

14

without this Court's involvement, but Gerro has refused the Wind-Down Debtors' requests, thereby necessitating the filing of this Motion.

30. Under these facts, clear and convincing evidence supports issuance of an order for civil contempt and imposition of sanctions. This Court should find Gerro in contempt of the Confirmation Order. The Wind-Down Debtors also request the Court order that:

(a) Gerro shall seek and obtain the immediate dismissal of the entirety of the Prepetition Litigation lawsuits with prejudice promptly upon entry of an order on this Motion;

(b) Gerro is enjoined from filing any additional lawsuits in any jurisdiction against the Wind-Down Debtors or other Released Parties; and

(c) If the Prepetition Litigation is not dismissed within ten (10) days of the entry of an order on this Motion, Gerro may be responsible for the Wind-Down Debtors' reasonable costs and attorneys' fees associated with seeking the full dismissal of the Prepetition Litigation with prejudice and the preparation and prosecution of this Motion. The Wind-Down Debtors shall report Gerro's noncompliance to the Court and request a hearing to determine the appropriate amount of such reasonable costs and attorneys' fees and other sanctions as applicable.

## Notice

31. The Wind-Down Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) the attorneys general in the states where the Wind-Down Debtors conduct their business operations; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Wind-Down Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

## **Conclusion**

**WHEREFORE**, the Wind-Down Debtors respectfully request that the Court (i) enter the proposed Order, a copy of which is attached hereto as **Exhibit A**, granting the relief requested herein on a final basis, and (ii) grant such other and further relief as the Court may deem just and appropriate.

[*remainder of page intentionally left blank*].

Respectfully Submitted,
Dated: October 8, 2024

/s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*