| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617) 856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>                 Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: February 6, 2025 @ 10:00 a.m. ET**<br>**Response Deadline: January 30, 2025 @ 4:00 p.m. ET**<br>**Oral Argument Waived Unless Response Timely Filed** |

## WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING: (I) THE BAR DATE ORDER AND WALLET WITHDRAWAL ORDER AND (II) THE PLAN AND CONFIRMATION ORDER WITH RESPECT TO CLAIMS ASSERTED AGAINST SURETY BONDS

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]    On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609]. Unless otherwise indicated, capitalized terms used but not defined in this Objection shall have the meanings ascribed to them in the Plan.

BlockFi Inc., and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors"), as managed by the Plan Administrator in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, hereby submit this motion (the "Motion") seeking entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") enforcing (a) the Bar Date Order and the Wallet Withdrawal Order and (b) the Plan Injunction provision of the Plan and Confirmation Order for the purpose of prohibiting any claimants from attempting to recover against the Surety Bonds (defined below) because such actions constitute wrongful attempts to impose post-Effective Date liability on the BlockFi estates based upon prepetition conduct.  In support hereof, the Wind-Down Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Wind-Down Debtors have commenced the final distribution process to customers and intend to make distributions to subordinated claimants shortly thereafter and close the BlockFi estates in the coming months.

2.      One of the last remaining issues to be resolved concern certain prepetition surety bonds issued to provide an alternative means of recovery for claims against the prepetition debtors, which bonds BlockFi was required under various state laws and regulations to obtain prepetition to secure the issuance of necessary money transmitter licenses in several jurisdictions (collectively, the "Surety Bonds").[3] The Surety Bonds were issued by several surety bond companies, most notably Arch Insurance Company and Arch Insurance Group (collectively, "Arch Insurance"). The Wind-Down Debtors and the issuers of the Surety Bonds (the "Surety Bond Issuers") require finality on those issues in order to close these cases.

---

[3]      A complete list detailing the Surety Bonds issued by each Surety Bond Issuer is contained in Schedule 1 to the Proposed Order attached hereto as Exhibit A.

3.      The Surety Bonds are all issued under various state laws but generally share certain general characteristics.  In each case, to maintain a claim against the Surety Bond requires a claim against the Wind-Down Debtors: while some states permit a claimant to proceed directly against the Surety Bond rather than proceeding directly against the Wind-Down Debtors (as with insurance), the underlying liability must be a liability of the Wind-Down Debtors.  The Surety Bonds cover only activities related to BlockFi's wallet product, though the Wind-Down Debtors are aware certain claimants have informally argued otherwise.  Further, in all cases, the company issuing the Surety Bond has an indemnification claim against the Wind-Down Debtors, and all companies that issued Surety Bonds have timely filed such proofs of claim.  While all Surety Bonds have been canceled, state laws nonetheless provide various time periods (ranging up to a few years) where a claim may still be filed against a Surety Bond that has been canceled.

4.      As a result, to assert a claim against a Surety Bond, a claimant must have a claim against the Wind-Down Debtors.  Because the Wind-Down Debtors are able to pay 100% of non-subordinated general creditor claims, any claim against a Surety Bond is a "pass through" to the Wind-Down Debtors as long as the Surety Bond Issuers maintain a contingent and unliquidated claim against the Wind-Down Debtors.  Thus, absent enforcement of the orders of this Court discussed below (and the automatic stay provisions of the Bankruptcy Code)[4], claimants will continue to pursue the Surety Bonds and put the Wind-Down Debtors' assets at risk.

---

[4]    The Wind-Down Debtors believe that any attempt to claim against the Surety Bonds is clearly violative of those provisions (the "Automatic Stay") as long as the Automatic Stay remains applicable, and reserve all rights with respect to any claimant that violates the Automatic Stay by filing a claim against the Surety Bonds.  However, the Wind-Down Debtors are at the end stages of this case and intend to close these cases prior to the expiration of all of the Surety Bonds.  Although the Plan and Confirmation Order provide that the Wind-Down Debtors remain protected by the Automatic Stay, the Automatic Stay will dissolve upon the winding up of these cases and dissolution of the Wind-Down Debtors.  Accordingly, an order relying on the Automatic Stay will not provide the necessary finality on this issue (and, may inhibit the Wind-Down Debtors' ability to close these cases).  However, again for the avoidance of doubt, the Wind-Down Debtors reserve all rights with respect to any motion to enforce the automatic stay should any claim against the Surety Bonds be filed.

5.      At this point, however, the bar date to file claims against the Wind-Down Debtors has *long* since passed.  All filed claims have been resolved by final order of this Court, with certain limited exceptions not relevant here.[5]  Claims that are allowable have been (or will be) paid in full, such that the claimants may not maintain a claim against the Surety Bonds.  Claims that are not allowable have been disallowed; there is, thus, no claim that may be maintained against the Surety Bond since such a claim requires a valid claim against the Wind-Down Debtors.  Lastly, any party that did *not* file a claim by the March 31, 2023 General Claims Bar Date (or such later date as provided in the order) is barred from doing so pursuant to this Court's *Order (I) Setting Bar Dates For Submitting Proofs Of Claim, (II) Approving Procedures For Submitting Proofs Of Claim, (III) Approving Notice Thereof, And (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order") and is not entitled to share in the assets of the Wind-Down Debtors.

6.      As a result, any attempt to recover against the Surety Bonds—attempts, in other words, to obtain recoveries from a BlockFi asset based on alleged prepetition conduct by BlockFi—should not be permitted for a multitude of reasons.  *First*, claims at this juncture against the Surety Bonds are inconsistent with multiple orders of this Court.  To trigger liability under the Surety Bonds, claimants must establish liability on the part of BlockFi; however, the Bar Date Order imposed a strict deadline for asserting claims against BlockFi and otherwise barred claims not filed by the applicable General Claims Bar Date of March 31, 2023. Likewise, this Court previously determined with its Wallet Withdrawal Order that BlockFi's prepetition conduct in connection with the Platform Pause was authorized under the applicable terms of service. Claimants received notice of the litigation surrounding that Order and are collaterally estopped

---

[5]      Such exceptions include various claims not associated with customer accounts, and certain claims on appeal that have not obtained a stay pending appeal (some of which have been estimated by operation of the Plan at $0 for all purposes, and, should they obtain a stay pending appeal or otherwise obtain an order setting a reserve, would have access to that reserve to satisfy their claims).

from pursing the Surety Bond Issuers based upon facts inconsistent with the findings of this Court in its merits ruling. It would be unfair and inconsistent with the Orders of this Court and purpose of these proceedings to allow a claim arising from BlockFi's prepetition conduct, that *cannot* proceed against BlockFi and *cannot* be factually proven, to now proceed and receive compensation from a third-party with indemnity rights against BlockFi.

7.      *Second*, the plan injunction provisions set forth in Article VIII of the Plan, as confirmed by paragraphs 110-112 of the Confirmation Order (the "Plan Injunction"), permanently enjoin holders of claims arising from BlockFi's pre-Effective Date conduct from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan. Simply put, given that potential claims implicating the Surety Bonds are in violation of previous Orders of this Court and allowed claims arising from pre-Effective Date conduct have been or will be satisfied in full, continued prosecution of any such claims against any party violates the Plan Injunction. Such an injunction is customary to prevent wrongful attempts by creditors to seek recoveries separate from (and duplicative of) their entitlements under the Plan and serves a central purpose of the Confirmation Order. Here, to the extent a claimant recovers against the Surety Bonds, the Surety Bond Issuer is entitled to a corresponding indemnity claim against BlockFi – in other words, recovering against the Surety Bonds is the exact form of procedural run-around of the Plan and Confirmation Order that the Plan Injunction is designed to prevent.

8.      While no party has formally filed a claim against the Surety Bonds, parties have done so informally (necessitating action by the Wind-Down Debtors) or made inquiries that create uncertainty if they intend to do so.[6]  However, as the Wind-Down Debtors now need to disallow

---

[6]    In these cases it has appeared that the claimants may not realize that by proceeding against the Surety Bonds, they have the actual effect of simply altering the distribution of the Wind-Down Debtors' assets – i.e. that the Surety Bonds are not a source of additional recoveries.

and expunge the remaining contingent and unliquidated claims from the Surety Bond Issuers,[7] this

activity now poses a threat to the full administration of these estates and closure of these cases.

9.      The Wind-Down Debtors respectfully submit that an order clarifying that this

Court's previous Orders prohibit a party from proceeding against the Surety Bonds is consistent

with the Bankruptcy Code and applicable law, and will aid in the efficient and orderly wind-down

of these Chapter 11 Cases.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September

18, 2012 (Simandle, C.J.). The Wind-Down Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

11.      This matter is a core proceeding within the meaning 28 U.S.C. § 157(b)(2).

12.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.      The bases for the relief requested herein are sections 105(a), 362, and 1141 of title

11 of the United States Code (the "Bankruptcy Code"); Rules 1015(c), 3020(d), and 9007 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 9013-1 of the of the

United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

---

[7]      The Wind-Down Debtors have filed objections to these claims contemporaneous with the filing of this Motion.

## RELEVANT FACTUAL BACKGROUND

**A.      Chapter 11 Cases and Confirmed Plan.**

14.      On November 28, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Each Debtor managed its assets as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code throughout these Chapter 11 Cases. The Debtors' cases were jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Granting Joint Administration* [Docket No. 42] entered by the Court on November 29, 2022.

15.      On September 26, 2023, the Court confirmed the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1609] (the "Plan").

16.      On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming the Plan.[8] The Plan went effective on October 24, 2023 [Docket No. 1788].

---

[8]      *See* Docket No. 1655, which was supplemented for technical reasons on October 4, 2023.

### B.    The Claims Process.

17.    On January 30, 2023, the Court entered the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 440] (the "Bar Date Order") establishing certain dates and deadlines for filing proofs of Claims (collectively, the "Proofs of Claim") in these Chapter 11 cases. The Bar Date Order established (a) March 31, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for certain creditors other than governmental units to file Proofs of Claim based on prepetition Claims against any Debtor (the "General Claims Bar Date"), (b) May 30, 2023 at 5:00 p.m. (prevailing Eastern Time) as the last date and time for each governmental unit to file Proofs of Claim against any Debtor (the "Governmental Bar Date"), (c) the later of (i) the General Claims Bar Date and (ii) any date this Court may fix in the applicable order authorizing rejection of any executory contract or unexpired lease of the Debtors and, if no such date is provided, thirty (30) calendar days from the date of entry of such order, as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection, and (d) at least thirty (30) calendar days from the date on which the Debtors provided notice of an amendment or supplement to the Schedules (as defined herein), as the deadline for when claimants holding Claims that the filing, amendment, or supplement affected must file Proofs of Claim with respect to such claim.

18.    On January 12, 2023, the Debtors filed: the Schedules of Assets and Liabilities of: BlockFi Inc. (Case No. 22-19361) [Docket No. 242] (as amended by Docket Nos. 460 and 856), BlockFi International Ltd. (Case No. 22-19368) [Docket No. 247] (as amended by Docket Nos. 462 and 858); BlockFi Investment Products LLC (Case No. 22-19370) [Docket No. 249], BlockFi

8

Lending LLC (Case No. 22-19365) [Docket No. 251] (as amended by Docket Nos. 461 and 857),

BlockFi Lending II LLC (Case No. 22-19374) [Docket No. 253], BlockFi Services Inc. (Case No.

22-19371) [Docket No. 255], BlockFi Trading LLC (Case No. 22-19363) [Docket No. 257],

BlockFi Ventures LLC (Case No. 22-19367) [Docket No. 259], and BlockFi Wallet LLC (Case

No. 22-19366) [Docket No. 261] (collectively and as may be amended from time to time, the

"Schedules") pursuant to Bankruptcy Rule 1007.

19.     On February 2, 2023 and February 3, 2023, the Debtors caused a bar date notice to

be published in The New York Times and The Royal Gazette, respectively, as set forth in the

affidavits filed at Docket Nos. 471 and 472. With the assistance of Kroll Restructuring

Administration LLC (the "Claims and Noticing Agent"), the Debtors also served the Bar Date

Order and a Proof of Claim Form by email and/or first-class mail in accordance with the procedures

set forth in the *Order Granting Debtors' Motion to Establish Certain Notice, Case Management

and Administrative Procedures* [Docket No. 54] (the "Case Management Order") on:

    a.      the Master Service List (as defined in the Case Management Order);

    b.      all known creditors and other known holders of potential Claims against the Debtors as of the date of entry of the Bar Date Order, including all persons or entities listed in the Schedules for which the Debtors have mailing addresses or email addresses;

    c.      all entities that have filed Proofs of Claim in these Chapter 11 Cases as of the date of entry of the Bar Date Order;

    d.      all known non-Debtor equity and interest holders of the Debtors as of the date of entry of the Bar Date Order;

    e.      all entities who are party to executory contracts and unexpired leases with the Debtors;

    f.      all entities who are party to litigation with the Debtors;

    g.      all current and former employees (to the extent that contact information for former employees is available in the Debtors' records);

    h.      all regulatory authorities that regulate the Debtors' businesses, including consumer protection, environmental, and permitting authorities; and

    i.      all taxing authorities for the jurisdictions in which the Debtors maintain or conduct business.

The Bar Date Notice and Proof of Claim Forms were also published on the Debtors' case website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/blockfi.

20.      On March 13, 2023, the Court entered its *Order Granting Debtors' Motion for Entry of an Order (A) Approving the (I) Omnibus Claims Objection Procedures and Form of Notice, (II) Omnibus Substantive Claims Objections, and (III) Satisfaction Procedures and Form of Notice, (B) Waiving Bankruptcy Rule 3007(e), and (C) Granting Related Relief* [Docket No. 609] (the "Claims Procedures Order").

### C.    The Wallet Motion.

21.      Early in these cases, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* [Docket No. 121] (the "Wallet Withdrawal Motion"), seeking authority to permit withdrawals from Client Wallet Accounts on the basis that, under the BlockFi Wallet Terms of Service, "title to the cryptocurrency held in your BlockFi Wallet shall at all times remain with you and shall not transfer to BlockFi[,]"[9] and therefore BlockFi held no legal or equitable interest in the cryptocurrency held in the Wallet Accounts as of the Platform Pause.

22.      Through the Wallet Withdrawal Motion, BlockFi also sought to reconcile and adjust its User Interface to reflect the proper accounting of digital assets in the Wallet Accounts in

---

[9]    *See* BlockFi Wallet Terms of Service, https://blockfi.com/wallet-terms

connection with certain attempted transactions that took place following BlockFi's decision to pause all platform activity in the leadup to these Chapter 11 Cases.

23.    Several objections to the Wallet Withdrawal Motion were filed by various pro se creditors, who, among other things, disputed the sufficiency of notice provided under BlockFi's terms of service and opposed BlockFi's proposed reconciliation of its User Interface. *See* Docket Nos. 137, 143, 144, 145, 146, 147, 148, 149, 188, and 837.

24.    Objections were also filed by several claimants represented by counsel, including by the Ad Hoc Committee of Wallet Account Holders and the Ad Hoc Group of Actual Wallet Holders, who maintained that BlockFi's prepetition actions were in violation of the applicable terms of service and similarly argued against BlockFi's proposed reconciliation of the User Interface. *See* Docket Nos. 179, 182, 184, 201, 720, and 826.

25.    On May 17, 2023, the Court entered the *Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* [Docket No. 923] (the "Wallet Withdrawal Order"), overruling all objections filed and granting the Wallet Withdrawal Motion subject to certain modifications not relevant here.

26.    The Wallet Withdrawal Order concluded, among other things, that funds in the Client Wallet Accounts are not property of the BlockFi estates, and that BlockFi was authorized to update the User Interface to accurately reflect the transactions and related balance of digital assets as of the Platform Pause Time Stamp on November 10, 2022 at 8:15 p.m. ET. Further, in making its oral ruling that BlockFi's Platform Pause was authorized, the Court relied heavily on the applicable terms of service, which was binding on customers with respect to all aspects of the

BlockFi platform. *See* 5/11/23 Hr'g Tr. 04:17-24 ("These terms of service form the Court's analysis and determination that the debtors in their sole discretion had the authority to discontinue, pause and/or refuse all current and future access for customers with respect to all account activity, meaning withdrawals, transfers or trading without advance notice. Currently, advance notice is not required under the terms of agreement in order to effectuate a pause on the platform.")

### D.    Plan Injunction and Claims Against Surety Bond Issuers.

27.    Pursuant to Article VIII.D of the Plan, all holders of claims of any nature arising prior to the Effective Date were permanently enjoined from interfering with the Wind-Down Debtors' post-Effective Date administration of the Plan. More specifically, Article VIII.D of the Plan states in relevant part as follows:

> The assets of the Debtors and the Wind-Down Debtors shall be used for the satisfaction of expense obligations and the payment of Claims and Interests only in the manner set forth in this Plan and shall not be available for any other purpose. **All Persons and Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and Distribution of the Debtors' assets in the manner contemplated by the Plan.**

> […]

> In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, **all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in Article VIII.A, Article VIII.B, and Article VIII.C of this Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests**, except for the receipt of the payments or Distributions that are contemplated by this Plan.

> Plan, Art. VIII.D (emphasis added)

28.     This injunction provision was likewise reflected in the Confirmation Order. *See* Confirmation Order at ¶¶ 110-112.

29.     Despite the Plan Injunction and automatic stay, several Holders of Allowed Claims have tendered claims against certain of the Surety Bond Issuers to recover against the Surety Bonds. To the extent claimants are successful in bringing a claim, the Surety Bond Issuer is entitled to recover against the Wind-Down Debtors for the amounts paid under the bonds. The Wind-Down Debtors have attempted in good faith with all parties to consensually resolve these issues without Court intervention, but such attempts have proven unsuccessful.

30.     On March 28, 2023, Swiss Re Corporate Solutions America Insurance Company f/k/a North American Specialty Insurance Comp ("**Swiss**") timely filed contingent and unliquidated claims against BlockFi Inc. and BlockFi Lending LLC on account of several surety bonds issued prepetition in favor of BlockFi. *See* Claim Nos. 25864 and 25929.

31.     On March 30, 2023, AIG Property Casualty, Inc. ("**AIG**") timely filed Claim No. 26961 against BlockFi Inc., wherein AIG asserted contingent and unliquidated liability in connection with various surety bonds for the account of BlockFi.

32.     On March 31, 2023, Arch Insurance timely filed several contingent and unliquidated claims against BlockFi in connection with the issuance of certain Surety Bonds, including Claim Nos. 15208, 15224, and 15893.[10]

## RELIEF REQUESTED

33.     The Wind-Down Debtors seek entry of the Proposed Order enforcing (a) the Bar Date Order and the Wallet Withdrawal Order and (b) the Plan Injunction provision of the Plan and

---

[10]    Claim No. 15890 filed by Arch Insurance was previously disallowed pursuant to the Wind-Down Debtors' and BlockFi's stipulation in connection with BlockFi's prior objection to the claims filed by Arch Insurance [*see* Docket No. 2113].

Confirmation Order for the purpose of prohibiting any claimants from attempting to recover against the Surety Bonds and the Surety Bond Issuers because such actions constitute wrongful attempts to impose post-Effective Date liability on the BlockFi estates based upon prepetition conduct.

## **LEGAL ARGUMENT**

34.    BlockFi and the Surety Bond Issuers' indemnity arrangement under the Surety Bonds is straightforward: to secure the requisite money transmitter licensing to conduct its prepetition operations, BlockFi obtained certain money transmitter bonds, which would protect the public from financial loss incurred as a result of a license infraction. For amounts paid under the Surety Bonds as a result of any BlockFi misconduct, BlockFi would be required to indemnify the Surety Bond Issuer (as noted above, each Surety Bond Issuer has timely filed contingent and unliquidated claim(s) on account of this liability).

35.    Thus, as a threshold matter, a claim must first exist against BlockFi for claimants to recover against the Surety Bonds. However, all claims at this juncture against the Wind-Down Debtors that could establish the necessary liability under the Surety Bonds are, in essence and in fact, claims against BlockFi property premised upon BlockFi prepetition conduct. Any such claims that could have been presented at a proper time are not allowable today, because they are time-barred under the Bar Date Order and inconsistent with this Court's prior fact-findings in connection with the collateral estoppel effects of the Wallet Withdrawal Order.

With no proper avenue to lodge any such claim, claimants who continue to press for recoveries on the Surety Bonds violate the Plan Injunction (and the automatic stay).

**(i)      The Bar Date Order and Wallet Withdrawal
Order Preclude Attempts to Recover Against the Surety Bonds.**

36.      At this stage of the case, all claims against the Wind-Down Debtors that arguably could implicate the Surety Bonds have been resolved by final order.  The filing of further claims is barred by the Bar Date Order.  Moreover, the core allegation of claims against the Surety Bonds – that BlockFi acted improperly in connection with the Platform Pause – is inconsistent with this Court's rulings in connection with the Wallet Withdrawal Order.  Accordingly, no claim can exist against BlockFi that could form the basis of a claim against the Surety Bonds.

37.      The Court's entry of the Bar Date Order established the General Claims Bar Date.[11] The Bar Date Order expressly states that creditors who failed to timely submit a Proof of Claim would have their claims forever barred, estopped, and enjoined:

> In accordance with Bankruptcy Rule 3003(c)(2) **any holder of a Claim that is not
> excepted from the requirements of the Bar Date Order and fails to timely
> submit a Proof of Claim in the appropriate form shall be forever barred,
> estopped, and enjoined** from (a) voting on any chapter 11 plan filed in these

---

[11]      Under BlockFi's bar date motion [Docket No. 225] the term "claim" has the meaning given to it in section 101(5) of the Bankruptcy Code, which encompasses: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

The Wind-Down Debtors respectfully submit that any and all potential claims implicating the Surety Bonds are "claims" under the Bar Date Order, and are therefore subject to the General Claims Bar Date. *See* Bar Date Order at ¶ 2 ("Except as otherwise provided herein, all persons and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, that assert a Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose before the Petition Date, including Claims pursuant to section 503(b)(9) of the Bankruptcy Code (each, a "503(b)(9) Claim"), shall submit a written proof of such Claim so that it is ***actually received*** by Kroll Restructuring Administration LLC (the "Notice and Claims Agent") on or before **5:00 p.m. prevailing Eastern Time on March 31, 2023** (the "General Claims Bar Date"), in accordance with this Bar Date Order.").

Additionally, the Wind-Down Debtors respectfully submit that, under the present facts, no other bar dates apply, and likewise no exceptions to the General Claims Bar Date are applicable.

Chapter 11 Cases on account of such Claim, (b) participating in any distribution in these Chapter 11 Cases on account of such Claim, and (c) receiving further notices regarding such Claim, provided that, in the event that BlockFi International Ltd. enters into a full liquidation proceeding in Bermuda such that a separate adjudication process becomes necessary, notwithstanding anything contained herein, holders of Claims against BlockFi International Ltd. shall not be automatically barred from asserting such Claims against BlockFi International Ltd. in such liquidation proceedings without further order of the Supreme Court of Bermuda. **Such person or entity shall not be treated as a creditor with respect to such Claim for any purpose in these Chapter 11 Cases**.

Bar Date Order at ¶ 6 (emphasis added).

38.    Accordingly, any claims now filed, after the General Claims Bar Date, are enjoined and/or released under the Plan, which provides that "[e]xcept as otherwise provided herein or as agreed to by the Debtors or the Wind-Down Debtors, **any and all Proofs of Claim Filed after the Bar Date shall be deemed Disallowed and expunged as of the Effective Date** without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order." Plan, Art. III.H (emphasis added).

39.    Likewise, the Court's findings of fact and conclusions of law expressed in the Wallet Withdrawal Order preclude a finding that BlockFi committed a breach of contract through its implementation of the Platform Pause or otherwise committed a wrongful act implicating liability under the Surety Bonds.

40.    The standard formulation of issue preclusion, or collateral estoppel, is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments* § 27 (1982) (Oct. 2022 update); *see also Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016).

16

41.     The Third Circuit has construed this standard to require four elements: ''(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Doe*, 828 F.3d at 171.

42.     *First*, regarding whether the identical issue was decided in a prior adjudication, the Third Circuit has previously stated that "[t]o defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'" *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995). A recent opinion from the Delaware bankruptcy court in *In re Town Sports Int'l, LLC*, No. 20-12168 (CTG), 2023 WL 124860 (Bankr. D. Del. Jan. 6, 2023) is instructive on the application of this element.

43.     In *Town Sports*, the bankruptcy court was dealt with the question of whether a breach of contract claim was precluded by the court's prior orders. 2023 WL 124860 at *1. The gist of the breach of contract claim was that majority lenders and the agent bank had authorized a certain credit bid without the majority lenders giving the appropriate instruction to the bank agent. *Id*. Notwithstanding, the bankruptcy court reasoned that its prior ruling denying the lenders' motion for a preliminary injunction meant it had already concluded upon approving the subject sale that such an instruction *had* indeed been given – despite the fact that neither the prior order nor the transcript of the prior hearing contained those precise words. *Id*. Accordingly, the bankruptcy court, in reliance on the discretion afforded it in interpreting its prior orders, concluded that "the issue that is at the core of the breach of contract action – whether the majority lenders instructed the agent to transfer the loans to the buyer – had been actually litigated in a prior proceeding in a way that precludes the plaintiffs from relitigating the issue." *Id*. at *13.

44.     Here, the Wallet Withdrawal Order could not have been entered if BlockFi's Platform Pause constituted a breach of contract, and BlockFi's related prepetition actions otherwise violated BlockFi's applicable terms of service. *See* 5/11/23 Hr'g Tr. 04:17-24 ("These terms of service form the Court's analysis and determination that the debtors in their sole discretion had the authority to discontinue, pause and/or refuse all current and future access for customers with respect to all account activity, meaning withdrawals, transfers or trading without advance notice. Currently, advance notice is not required under the terms of agreement in order to effectuate a pause on the platform."); Wallet Withdrawal Order ¶¶ 3-4 ("The Debtors are authorized to take any actions to update the User Interface and Company-Facing Interface to accurately reflect the transactions and related balance of digital assets as of the Platform Pause Time Stamp, including those held in the Custodial Omnibus Wallets and represented in the Client Wallet Accounts. […] The Debtors are authorized, but not directed, to distribute the digital assets contained in the Custodial Omnibus Wallets and represented in the Client Wallet Accounts as of the Platform Pause Time Stamp[.]"); *Town Sports*, 2023 WL 124860 at \*14-15 (finding that issue was decided by prior order and noting that bankruptcy court is afforded discretion in construing its own orders).

45.     Indeed, by entering the Wallet Withdrawal Order, this Court specifically overruled an objection asserting that the Platform Pause was a breach of BlockFi's terms of service. *See Preliminary Objection of the Ad Hoc Committee of Wallet Account Holders to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of accounts, and (II) Granting Related Relief* at ¶¶ 40-41.

46.     *Second*, the requirement of a final judgment on the merits is similarly met here, as the Wallet Withdrawal Order is a final order, and the time to appeal the order (which was entered back on May 17, 2023) has lapsed. *See e.g., Adelphia Gateway, LLC v. Pennsylvania Environmental Hearing Board*, 62 F.4th 819, 828 (3d Cir. 2023) ("A judgment is deemed final for purposes of ... collateral estoppel unless or until it is reversed on appeal.") (quoting *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872, 874 (1996)).

47.     *Third and fourth*, the party against whom collateral estoppel is being asserted must have been a party or in privity with a party to the prior adjudication, and had a full and fair opportunity to litigate the issue in question. Those requirements are likewise met here, as objections to the Wallet Motion were filed by a plethora of claimants, many of which were pro se creditors. Moreover, the Court previously held an evidentiary hearing on the Wallet Motion, during which all parties in interest were fully entitled to appear and be heard in connection with the Court's adjudication of the Wallet Motion. In other words, the record is replete with claimants having received notice of the Wallet Motion, and opposing the relief requested therein. Conversely, the record is void of any claimants being denied an opportunity to participate in the Wallet Motion proceedings.

48.     Thus, all issue preclusion requirements are met, and claimants should be collaterally estopped from pursuing claims against the Surety Bonds.

49.     In sum: no claimant has, at this time, any claim arising from BlockFi's prepetition conduct.  No potential claimant can prove the facts alleged and relevant here, underlying claims against a third party, because they are precluded from doing so.  To the debatable extent any claim against the Surety Bonds is not expressly barred by this Court's orders, such a claim is not allowable and has no value beyond extorting recoveries from, indirectly, property of the BlockFi

estates. Permitting any such claim to be prosecuted would be inconsistent with this Court's orders and rulings and the Bankruptcy Code.

      **(ii)**      **The Plan Injunction Precludes**
                     **<u>Claimants from Pursing the Surety Bonds</u>.**

50.      Any attempt to proceed against the Surety Bonds likewise violates the Plan Injunction.

51.      Section 1141(a) of the Bankruptcy Code provides that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). As such, "[a] bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect." *In re G–I Holdings, Inc.*, 514 B.R. 720, 747–48 (Bankr. D.N.J. 2014) *aff'd*, 654 F. App'x 571 (3d Cir. 2016) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170–71 (1938); *Travelers lndem. Co. v. Bailey*, 557 U.S. 137, 138–39 (2009) (holding that once an order becomes final, it is res judicata as to parties and those in privity with them)). Accordingly, all creditors are bound by the terms of the Confirmation Order.

52.      Further, it is uncontroversial that this Court maintains jurisdiction to enforce and interpret its own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 140 (2009); *see also* Plan Art XI, § 10 (expressly retaining jurisdiction to enter necessary or appropriate orders to implement the releases, injunctions, exculpation, and other provisions of the Plan and to interpret and enforce the terms of the Plan and Confirmation Order).

53.      As noted above, under Article VIII.D of the Plan, all holders of claims of any nature arising prior to the Effective Date were permanently enjoined from interfering with the Wind-Down Debtors' post-Effective Date administration of the Plan:

> The assets of the Debtors and the Wind-Down Debtors shall be used for the satisfaction of expense obligations and the payment of Claims and Interests only in the manner set forth in this Plan and shall not be available for any other purpose. **<u>All Persons and Entities who</u>**

**have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and Distribution of the Debtors' assets in the manner contemplated by the Plan**.

[…]

In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, **all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in Article VIII.A, Article VIII.B, and Article VIII.C of this Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests**, except for the receipt of the payments or Distributions that are contemplated by this Plan.

Plan, Art. VIII.D (emphasis added)

54.    The Confirmation Order incorporates this plan injunction and includes an express finding that "[t]he injunction provision set forth in Article VIII.D of the Plan is essential to the Plan and is necessary to implement the Plan[.]" *See* Confirmation Order at ¶ 43.

55.    The Wind-Down Debtors readily acknowledge that, with respect to BlockFi's primary Surety Bond Issuer Arch Insurance, paragraph 124 of the Confirmation Order states that "[n]otwithstanding any provision in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall alter, modify, waive, amend, affect, impair, or prejudice any legal, equitable, or contractual rights of Arch Insurance Company (together with its respective subsidiaries, affiliates, and associated companies, "Arch"), the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or Entity, as applicable, under all surety bonds or indemnity agreements issued by Arch[.]"

56.     However, as articulated above, previous orders of this Court establish that as of the date hereof, no such claims against the Surety Bond Issuers premised on prepetition conduct of BlockFi may be maintained in the first place. That is, while the Plan and Confirmation Order do not expressly curtail such claims, they likewise did not create or enlarge any rights to pursue the Surety Bonds – claimants' rights to pursue the bonds were, in effect, unchanged by entry of the Confirmation Order.

57.     As a result, claimants who held *unresolved* claims against BlockFi at the time of the entry of the Confirmation Order that could implicate the Surety Bonds did not lose that ability merely by virtue of the entry of the Confirmation Order.  To take one example, the Connecticut Department of Banking asserted a claim against the Wind-Down Debtors, Claim No. 31767 (the "CT Claim"), in which the Connecticut Department of Banking sought a penalty for alleged violations of the Connecticut General Statutes governing money transmission licenses. Shortly thereafter, BlockFi initiated an adversary proceeding against the Connecticut Department of Banking, seeking among other things, a declaratory judgment that the Connecticut Department of Banking's continued prosecution of its administrative proceeding—through which the department sought to revoke BlockFi's money transmitter license and assess civil penalties against BlockFi—was in violation of the automatic stay under section 362 of the Bankruptcy Code. *See BlockFi Trading, LLC v. Jorge L. Perez, Solely in his Official Capacity as Commissioner of the Connecticut Department of Banking*, Adv. Pro. No. 23-01159 (MBK) (Bankr. D. N.J. 2023).

58.     Litigation between the parties ensued regarding the CT Claim, which if allowed *subsequent* to the entry of the Confirmation Order, could potentially have formed the basis to assert a claim against the Surety Bonds.  However, following extensive litigation in this Court, the CT Claim was settled with an agreed claim that did not permit pursuit of the Surety Bonds.

59.     Conversely, with all filed claims having been resolved *prior* to the filing of this Motion (other than limited claims that do not implicate the Surety Bonds) and either disallowed or allowed in a specified amount (which amounts have been or will be paid), the Plan Injunction prevents parties from proceeding against the Surety Bonds at this stage. Continued pursuit of any such claims – that are not allowable against the Wind-Down Debtors or which have been or will be satisfied by BlockFi – violate the express injunctive provisions of the Plan and Confirmation Order.  They are barred by law, and for good reason: such claims would divert estate assets away from Holders of Allowed Claims under the Plan (as BlockFi would be required to indemnify the Surety Bond Issuers for the amounts paid) and severely hinder the Wind-Down Debtors' efforts to close these estates.

## NO PRIOR REQUEST

60.     No prior request for the relief sought herein has been made to this Court or any other court.

## NOTICE

61.     The Wind-Down Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey, (b) all known claimants who have previously asserted claims against a Surety Bond Issuer or are otherwise known to a Surety Bond Issuer in connection with the Surety Bonds, and (c) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

**WHEREFORE**, Wind-Down Debtors seek entry of the Proposed Order enforcing (a) the Bar Date Order and the Wallet Withdrawal Order and (b) the Plan Injunction provision of the Plan and Confirmation Order for the purpose of prohibiting any claimants from attempting to recover

against the Surety Bonds and the Surety Bond Issuers because such actions constitute wrongful

attempts to impose post-Effective Date liability on the BlockFi estates based upon prepetition

conduct.

Dated: January 16, 2025

/s/ Daniel M. Stolz
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
Dstolz@genovaburns.com
Dclarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**HAYNES AND BOONE, LLP**
Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)
Lauren M. Sisson, Esq. (NJ Bar No. 394182022)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
lauren.sisson@haynesboone.com

*Attorneys for the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

and

Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

**<u>EXHIBIT A</u>**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>               Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br><br>Hearing Date: February 6, 2025 @ 10:00 a.m. ET |

**ORDER GRANTING WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN
ORDER ENFORCING: (I) THE BAR DATE ORDER AND WALLET
WITHDRAWAL ORDER AND (II) THE PLAN AND CONFIRMATION ORDER
WITH RESPECT TO CLAIMS ASSERTED AGAINST SURETY BONDS**

The relief set forth on the following pages, numbered two (2) through five (5) and

<u>Schedule 1</u> is **ORDERED**.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC. (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); and BlockFi Services, Inc. (5965). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2] On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "<u>Plan</u>") [Docket No. 1609].

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><span style="font-size:smaller">Caption in Compliance with D.N.J. LBR 9004-1(b)</span> | |
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>kaulet@brownrudnick.com<br><br>**BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617)856-8300<br>taxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator*<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com<br><br>*Local Counsel for the Plan Administrator* | **HAYNES AND BOONE, LLP**<br>Richard S. Kanowitz, Esq. (NJ Bar No. 047911992)<br>Lauren M. Sisson, Esq. (NJ Bar No. 394182022)<br>30 Rockefeller Plaza, 26th Floor<br>New York, New York 10112<br>(212) 659-7300<br>richard.kanowitz@haynesboone.com<br>lauren.sisson@haynesboone.com<br><br>*Attorneys for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,<br><br>      Debtors.[1] | Chapter 11<br><br>Case No. 22-19361 (MBK)<br><br>(Jointly Administered under a Confirmed Plan) |

      Upon consideration of the *Wind-Down Debtors' Motion for Entry of an Order Enforcing:*

*(I) the Bar Date Order and Wallet Withdrawal Order and (II) the Plan and Confirmation Order*

*With Respect to Claims Asserted Against Surety Bonds* (the "Motion")[2] for an Order enforcing: (a)

---

[1]    The Debtors in these Chapter 11 cases prior to effectuation of this Final Decree and related relief, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]  Capitalized terms use but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Page 3

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING: (I) THE BAR DATE ORDER AND WALLET WITHDRAWAL ORDER AND (II) THE PLAN AND CONFIRMATION ORDER WITH RESPECT TO CLAIMS ASSERTED AGAINST SURETY BONDS |

the Bar Date Order and the Wallet Withdrawal Order, and (b) the Plan Injunction provision of the Plan and Confirmation Order for the purpose of prohibiting any claimants from attempting to recover against the Surety Bonds and the Surety Bond Issuers because such actions constitute wrongful attempts to impose post-Effective Date liability on the BlockFi estates based upon prepetition conduct, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), *Standing Order of Reference to the Bankruptcy Court Under Title 11*, dated September 18, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice of the Motion need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their respective estates and creditors, and all parties-in-interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record of the Hearing, and all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

Page 4

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING: (I) THE BAR DATE ORDER AND WALLET WITHDRAWAL ORDER AND (II) THE PLAN AND CONFIRMATION ORDER WITH RESPECT TO CLAIMS ASSERTED AGAINST SURETY BONDS |

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein

2.      Each and every Holder, on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action (collectively, a "<u>Surety Bond Claimant</u>") is hereby enjoined from the commencement, prosecution, or other pursuit of any and all Causes of Action, whether unknown or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, arising out of, connected with, or related to the Surety Bonds, as identified on Schedule 1 to this Order, and any action by any Surety Bond Claimant in violation of this paragraph 3 would violate: (i) the *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "<u>Confirmation Order</u>") [Docket No. 1660]; (ii) the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* (the "<u>Bar Date Order</u>") [Docket No. 440]; and (iii) the *Order (I) Authorizing the Debtors to (A) Honor Withdrawals from Wallet Accounts, (B) Update the User Interface to Properly Reflect Transactions and Assets as of the Platform Pause, and (C) Conduct Ordinary Course Reconciliation of Accounts, and (II) Granting Related Relief* (the

Page 5

| Debtors: | BLOCKFI INC., *et al.* |
|---|---|
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING: (I) THE BAR DATE ORDER AND WALLET WITHDRAWAL ORDER AND (II) THE PLAN AND CONFIRMATION ORDER WITH RESPECT TO CLAIMS ASSERTED AGAINST SURETY BONDS |

"Wallet Withdrawal Order") [Docket No. 923].

3.      The Wind-Down Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order, including without limitation, authorization to seek sanctions in the event that a Surety Bond Claimant fails to comply with this Order within fourteen (14) days after entry of this Order.

4.      Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Wind-Down Debtors, (b) a waiver of the Wind-Down Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver or limitation of the Wind-Down Debtors' rights under the Bankruptcy Code or any other applicable law.

5.      Notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations or rights included therein, are overruled on the merits.

Page 6

| | |
|---|---|
| Debtors: | BLOCKFI INC., *et al.* |
| Case No. | 22-19361 (MBK) |
| Caption of Order: | ORDER GRANTING WIND-DOWN DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING: (I) THE BAR DATE ORDER AND WALLET WITHDRAWAL ORDER AND (II) THE PLAN AND CONFIRMATION ORDER WITH RESPECT TO CLAIMS ASSERTED AGAINST SURETY BONDS |

7.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

Schedule 1[1]

| Surety Bond Issuer | Principal | Bond Number | Obligee |
|---|---|---|---|
| Arch Insurance | BlockFi Trading LLC | SU 1133035-0000 | State of Alabama |
| Arch Insurance | BlockFi Trading LLC | SU 1133103-0000 | State of Alaska |
| Arch Insurance | BlockFi Trading LLC | SU 1133101-0000 | Arkansas Securities Department |
| Arch Insurance | BlockFi Trading LLC | SU 1133052-0000 | State of Connecticut |
| Arch Insurance | BlockFi Trading LLC | SU 1133046-0000 | District of Columbia |
| Arch Insurance | BlockFi Trading LLC | SU 1133032-0000 | State of Florida |
| Arch Insurance | BlockFi Trading LLC | SU 1133039-0000 | Georgia Department of Banking & Finance |
| Arch Insurance | BlockFi Trading LLC | SU 1133061-0000 | State of Idaho - Department of Finance - Consumer |
| Arch Insurance | BlockFi Trading LLC | SU 1133034-0000 | State of Illinois, Dept of Financial & Professional |
| Arch Insurance | BlockFi Trading LLC | SU 1133104-0000 | Iowa Superintendent of Banking |
| Arch Insurance | BlockFi Trading LLC | SU 1133044-0000 | Kansas State Bank Commissioner |
| Arch Insurance | BlockFi, Inc. | SU 1185873-0000 | Commonwealth of Kentucky |
| Arch Insurance | BlockFi Trading LLC | SU 1133105-0000 | Louisiana Office of Financial Services |
| Arch Insurance | BlockFi Trading LLC | SU 1133106-0000 | Maine - Superintendent of the |

---

[1]    AIG did not provide specific information pertaining to its Surety Bonds. *See* Claim No. 29691 at p. 8 ("AIG may have provided the Debtors with various surety, fidelity and other bonds for the account of the Debtors.").

| | | | Bureau of Consumer Credit Protection |
|---|---|---|---|
| Arch Insurance | BlockFi Trading LLC | SU 1133031-0000 | State of Maryland, Commissioner of Financial Regulation |
| Arch Insurance | BlockFi Trading LLC | SU 1133040-0000 | Minnesota Department of Commerce |
| Arch Insurance | BlockFi Trading LLC | SU 1185874-0000 | Mississippi Commissioner, Department of Banking and Consumer Finance |
| Arch Insurance | BlockFi Trading LLC | SU 1133047-0000 | Nebraska Department of Banking & Finance |
| Arch Insurance | BlockFi Trading LLC | SU 1133041-0000 | State of Nevada, Financial Institutions Division |
| Arch Insurance | BlockFi Trading LLC | SU 1133050-0000 | State of New Hampshire, Banking Dept. Bank Commissioner |
| Arch Insurance | BlockFi Trading LLC | SU 1133033-0000 | State of New Jersey, Department of Treasury, Divis |
| Arch Insurance | BlockFi Trading LLC | SU 1133060-0000 | State of New Mexico |
| Arch Insurance | BlockFi Trading LLC | SU 1133036-0000 | State of North Carolina, North Carolina Commission |
| Arch Insurance | BlockFi Trading LLC | SU 1133037-0000 | Superintendent of Financial Institutions, Ohio |
| Arch Insurance | BlockFi Trading LLC | SU 1133042-0000 | State of Oregon Department of |

| | | | |
|---|---|---|---|
| | | | Consumer & Business |
| Arch Insurance | BlockFi Trading LLC | SU 1133055-0000 | Commonwealth of Puerto Rico |
| Arch Insurance | BlockFi Trading LLC | SU 1133049-0000 | Rhode Island Banking Division |
| Arch Insurance | BlockFi Trading LLC | SU 1133045-0000 | South Carolina Office of Attorney General - Tobacco |
| Arch Insurance | BlockFi Trading LLC | SU 1133107-0000 | State of South Dakota - Division of Banking |
| Arch Insurance | BlockFi Trading LLC | SU 1133043-0000 | State of Tennessee, Dept. of General Services |
| Arch Insurance | BlockFi Trading LLC | SU 1133057-0000 | Texas Banking Commissioner |
| Arch Insurance | BlockFi Wallet LLC | SU 1133100-0000 | Texas Department of Banking |
| Arch Insurance | BlockFi Trading, LLC | SU 1133108-0000 | State of Vermont - Commissioner of Financial Regulation |
| Arch Insurance | BlockFi Trading, LLC | SU 1133051-0000 | Director of Department of Financial Institutions |
| Arch Insurance | BlockFi, Inc. | SU 1185875-0000 | State of West Virginia |
| Swiss | BlockFi Lending LLC | 2304340 | State of California |
| Swiss | BlockFi Lending LLC | 2277562 | Attorney General of the State of Colorado |
| Swiss | BlockFi Lending LLC | 2277563 | State of Illinois Division of Financial Institutions |

| Swiss | BlockFi Lending LLC | 2277564 | State of Kansas, Office of the State Bank Commissioner |
|---|---|---|---|
| Swiss | BlockFi Lending LLC | 2277565 | Commonwealth of Pennsylvania, Department of Banking and Securities |
| Swiss | BlockFi Lending LLC | 2277566 | State of Tennessee |
| Swiss | BlockFi Lending LLC | 2277567 | State of Washington |