UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

**Honorable Chief Judge Michael B. Kaplan**

In re:
BlockFi Inc., et al.,
Debtors.
Case No. 22-19361 (MBK)

**RESPONSE TO OBJECTION OF ZACHARY PRINCE, FLORENCIA MARQUEZ, AND YURI MUSHKIN TO MOTION FOR LEAVE TO PURSUE CLAIMS AGAINST RELEASED PARTY [ECF No. 2493]**

TO THE HONORABLE COURT:

## INTRODUCTION

Movant respectfully submits this Reply in response to the Objection filed by the Debtors regarding Movant's Motion for Release from the Gatekeeper Provision. The Debtors argue that:

1. An independent investigation conducted by the Debtors' own Independent Director, Scott Vogel, determined that no valuable claims exist against BlockFi's Former Executives.
2. Movant's claims are derivative and were released under the confirmed plan.
3. Movant lacks cognizable damages, as the confirmed plan provided full payment of all customer claims, leaving Movant without a concrete injury under Article III standing or a colorable claim.

However, these arguments fail for the following reasons:

1. The Investigation by Mr. Scott Vogel was Neither Independent Nor Exhaustive.
2. The Gatekeeper Provision Should Not Bar Legitimate Claims and Due Process.
3. Movant's Claims Are Direct, Not Derivative, Are Protected under **11 U.S.C. § 523,** and Were Not Released by the Plan.
4. Movant Has Sustained Concrete Damages Beyond Mere Customer Claims.
5. Movant did not give up his right to pursue claims by releasing the third parties during the bankruptcy proceeding.

# I. THE "INDEPENDENT" INVESTIGATION IS INSUFFICIENT TO BAR CLAIMS

1. **Potential Conflicts of Interest and Limited Scope**
   The Objection relies heavily on the determination of a single Independent Director, Scott Vogel, without presenting detailed, publicly available findings that would allow creditors and interested parties to scrutinize the investigation's methodology, scope, and conclusions. The Investigation was funded by the Debtors themselves, the party being investigated. The scope of the investigation and whether it included all relevant misconduct (including potential fraud, breaches of fiduciary duty, or deceptive trade practices) remains unclear.

2. **The Investigation Does Not Bind Creditors or Individual Claimants**
   Even if the Independent Director concluded that the estate lacks viable claims, that determination does not preclude individual creditors, consumers, or other affected parties from asserting their own claims—especially those based on fraud, unfair trade practices, or personal damages outside the estate's interests. The estate's decision not to pursue litigation does not equate to a legal ruling that no valid claims exist.

3. **The Unsecured Creditors Committee though accepting the plan named believed there was Fraudulent or Deceptive Conduct by the Debtors**

The **Unsecured Creditors' Committee (UCC)**, which represents the interests of unsecured creditors in the bankruptcy proceedings, has itself raised concerns about fraudulent, deceptive, and improper business practices by BlockFi's management prior to the bankruptcy filing. These concerns directly contradict the Debtors' claim that their internal investigation absolved the Former Executives of liability.

- The UCC's public filings and statements indicate that BlockFi engaged in deceptive and misleading representations to customers regarding the safety and security of customer deposits, its exposure to FTX and Alameda Research, and the true financial condition of the company leading up to its collapse.
- The UCC has challenged assertions that BlockFi executives acted in good faith, noting that customers were misled about the nature of their deposits, potential risks, and the company's financial stability, even while executives took actions that disproportionately benefited themselves.
- The UCC has argued that customers and creditors suffered direct harm as a result of these misrepresentations, reinforcing the validity of individual claims that extend beyond the bankruptcy estate's interests.

Given these credible allegations of deceptive practices, the Debtors' claim that an internal investigation "cleared" the Former Executives lacks merit. The Court should not allow the Debtors' internal findings to substitute for proper external judicial review of fraud-based claims.

4. **No Meaningful Judicial Oversight**
   The findings of the Independent Director have not been subject to adversarial testing in court. The gatekeeper provision effectively shields the Former Executives from scrutiny, violating due process rights. Courts have repeatedly rejected overly broad gatekeeper provisions that unduly shield non-debtors from accountability (see, e.g., *Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023)).

## II. MOVANT'S CLAIMS ARE DIRECT, NOT DERIVATIVE, AND WERE NOT RELEASED BY THE PLAN

1. **Movant's Claims Assert Personal, Individualized Harm**
   The Debtors argue that Movant's claims are derivative and thus were released under the confirmed plan. However, this mischaracterizes Movant's claims. A derivative claim is one where the alleged harm is to the corporation or estate as a whole, and creditors suffer only indirect harm. In contrast, direct claims involve specific, personal injuries to an individual creditor that are separate from general harm to the company or estate.

   **Movant's claims involve personalized harm distinct from that suffered by other creditors, as articulated in his original motion including;**

   1) Movant waited for information from the named parties about its lending relationship to FTX, when it failed. Flori Marquez stated specifically regarding FTX failure, "All products are fully operational, Blockfi is an independent business entity, We are operating our business in line with our risk management framework, We hold risk capital reserves to help protect against potential loan defaults". Movant deposited Bitcoin into his account based on that statement, worth at the time of writing $24,395. The next day Blockfi stopped all withdrawals and was unable to operate again stating its exposure to FTX. Please see Exhibits D, E & F in the original motion.

   2) Movant, an individual creditor, is a victim of unfair and deceptive trade practices due to misrepresentations in advertising by Debtors about;

      1) the security of the loan product
      2) a framework of disciplined risk management protocols
      3) the use of an insured depository to preserve his security collateral.

Please see Exhibits B and G in the original motion and page 4 of the Supplemental motion.

   3) During the bankruptcy itself, omissions and misrepresentations were made to the Court, regarding the full contractual relationship between the company and retail loan clients of which Movant was one. The misrepresentations and omissions included but were not limited to being forthright about a Loan to Value provision

in the Movants lending contract, which obligated Movant to keep his loan secured by overcollateralizing his account for the life of the loan.

Debtors stated in Docket 693, *"A primary advantage of rehypothecation is to allow the secured party to finance operations while offering less costly funding to the borrower (i.e., it allows for lending at lower rates of interest because the secured party is generating returns with the subject assets).*

In this case describing the Debtors as "the secured party" is a misnomer because all of the lending risk was secured by the borrower through overcollateralization of their accounts. Further, Movant paid a 9.75% interest rate for the privilege of the loan as well as an origination fee, etc… The Executives named in this case did not "have to rehypothecate" retail loan clients' collateral. The collateral should have been held responsibly in the insured depository as advertised and stated in the lending contract.

Please see pages 10, 11 & 12 in the Movants motion.

4) If a similiar claim may have been suffered by other customers of Blockfi, Movants claims are not derivative because they seek relief for direct damages suffered by Movant. Further, these claims do not affect the Debtor's bankruptcy estate. This is a significant non-frivolous claim requesting direct relief for personal damages Under 11 U.S.C. § 523(a)(2)(A) of the U.S. Bankruptcy Code against a third party and does not seek recovery from estate assets. Movant has not been exhaustive in presenting evidence in an attempt to keep this motion concise for the Court.

2. **The Confirmed Plan Cannot Extinguish Individual Creditors' Direct Claims**
Even if BlockFi's confirmed plan released certain claims belonging to the estate, it cannot release claims belonging to individual creditors unless they have given affirmative consent. Movant did not accept the confirmation plan nor did he opt out of his right to pursue claims against third parties during the bankruptcy.

3. Courts have repeatedly held that a bankruptcy plan cannot bar independent claims that belong to creditors rather than the debtor's estate (see *In re Tronox Inc., 855 F.3d 84, 99 (2d Cir. 2017); In re Seven Seas Petroleum, Inc., 522 F.3d 575, 589 (5th Cir. 2008)*).

## III. MOVANT HAS SUSTAINED COGNIZABLE DAMAGES BEYOND CUSTOMER CLAIMS

1. **Movant Has Suffered Significant Financial Losses and Personal Damages**
The Debtors argue that Movant lacks cognizable damages because he received the full 100% payout under the bankruptcy plan. However, this argument fails to account for the extensive and multifaceted harm Movant has endured beyond the economic value of the settlement payout.

    Movant did not merely lose money in the form of a financial claim. He lost significant property rights to his assets, which at the time of writing are valued at $173,103.37. This is in stark contrast to the $12,524 settlement payout, which reflects a fraction of the damage caused to Movant due to the actions of parties named herein.

2. **Movant's Efforts to Accumulate and Preserve Bitcoin Were Irrevocably Damaged**
   Beyond the value of the lost Bitcoin, Movant's damage extends to 3 years of research and learning about digital assets like Bitcoin. He dedicated considerable time, effort, and intellectual investment into understanding the digital asset space, and his decision to accumulate and hold Bitcoin reflected a careful and long-term investment strategy.

   Additionally, Movant worked long hours across multiple jobs to accumulate these assets, sacrificing time and energy for the goal of building a financial future based on digital assets. The opportunity cost of preserving his Bitcoin—both in terms of lost time and the inability to purchase additional Bitcoin due to the rise in the price of Bitcoin—further exacerbates the magnitude of his injury.

3. **Deep Personal Debt and a Cycle of Adverse Financial Consequences**
   The losses Movant sustained have also created a cycle of financial hardship which he is still fighting to resolve. Prior to losing his assets with BlockFi, Movant had a credit score of over 800 and almost no personal debt. At this time, Movant is submerged in debt, working 7 days a week to just to make his interest payments on time.

4. **The Insufficient Settlement Payout Only Magnifies Movant's Damage**
   The **$12,524 settlement payout**—far less than the **$173,103.37** his Bitcoin would be worth at the time of writing. This highlights the **severe undercompensation** of Movant's loss, which not only diminishes his financial standing but also undermines his ability to **rebuild his assets** and return to the financial position he held prior to BlockFi's failure.

5. **Emotional and Psychological Damage**
   Beyond the financial toll, Movant has suffered severe emotional and psychological harm due to the stress and anxiety caused by the loss of his assets. Movant's personal condition has deteriorated, as evidenced by physical symptoms that have emerged due to the stress caused by this financial loss. Notably, Movant has experienced recurrent skin condition caused by stress, which only occurs once in 97% of people, but has been reoccuring on Movant's body for almost two years. Furthermore, the financial hardship has prevented Movant from being able to help loved ones in a time of need, adding to the emotional burden of his situation. These situations have led to depression and a loss of hope.

6. **Damages Extend Beyond Simple Monetary Losses**
   While Movant's claim for financial damages due to the loss of Bitcoin is substantial, the damages extend far beyond the economic loss of his property. The **cumulative harm Movant has suffered**, including the **loss of time, effort, opportunity**, and **psychological and physical distress**, amounts to a **concrete and particularized injury** that has

significantly impacted his life. The **$12,524 payout** from the settlement is not a full and fair compensation for these ongoing and continuing damages.

7. **Movant's Claims Are Colorable and Supported by Tangible Evidence**
Movant's claims are colorable and have clear and cognizable damages. Movant's Article III standing is not just theoretical; the concrete injuries he has sustained—financial and personal—demonstrate the real-world effects of the described actions on his life. These injuries are not hypothetical; they are specific, measurable, and rooted in actual harm caused by the individuals named in this action.

Movant's claims involve fraudulent misrepresentation or deceptive trade practices; they are not merely economic claims tied to the bankruptcy estate but legal violations that survive a bankruptcy discharge. The satisfaction of a customer claim does not shield wrongdoers from liability for fraudulent or illegal actions taken against individual creditors.

For these reasons, Movant asks for a release from the Gatekeeper Provision.

Submitted, March 21, 2025

Respectfully,

*[signature]*

Dereje Lakew

525 Westward Drive
Miami Springs, Fl 33166
917-371-5370





MIAMI MAR 2 $3
S2322
08608
RDC 07

ER 188 837 235 US

**PRIORITY MAIL EXPRESS®**

PRESS FIRMLY TO SE

**USPS PRIORITY MAIL EXPRESS®**

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

FROM: (PLEASE PRINT)
DEREJE LAKEW
525 WESTWARD DRIVE
MIAMI SPRINGS, FL 33166

PAYMENT BY ACCOUNT (if applicable)

ORIGIN (POSTAL SERVICE USE ONLY)
PO ZIP Code: 33266
Date Accepted: 3/21/25
Time Accepted: 9:23 AM
Scheduled Delivery Date: 3/24/25
Scheduled Delivery Time: 6:00 PM
Postage: $31.40
Total Postage & Fees: $31.40

TO: (PLEASE PRINT)
BANKRUPTCY COURT OF NEW JERSEY
HONORABLE CHIEF JUDGE MICHAEL KAPLAN
CLARKSON FISCHER COURTHOUSE
402 EAST STATE STREET
TRENTON NJ 08608




EP13F May 2020
OD: 12 1/2 x 9 1/2

PS10001000006