| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| **BROWN RUDNICK LLP** Kenneth J. Aulet, Esq. (admitted *pro hac vice*) Seven Times Square New York, New York 10036 (212) 209-4800 KAulet@brownrudnick.com **BROWN RUDNICK LLP** Tristan Axelrod, Esq. (admitted *pro hac vice*) One Financial Center Boston, MA 02111 (617) 856-8300 TAxelrod@brownrudnick.com *General Counsel for the Plan Administrator* | **GENOVA BURNS LLC** Daniel M. Stolz, Esq. Donald W. Clarke, Esq. 110 Allen Rd., Suite 304 Basking Ridge, NJ 07920 (973) 230-2095 DStolz@genovaburns.com DClarke@genovaburns.com *Local Counsel for the Plan Administrator* |
| In re: BLOCKFI INC., *et al.*,                     Debtors.[1] | Chapter 11 Case No. 22-19361 (MBK) (Jointly Administered under a Confirmed Plan[2]) **Hearing Date: May 15, 2025 at 10 am ET** **Response Deadline: May 8, 2025 by 4 pm ET** **Oral Argument: Waived Unless Response Timely Filed** |

## NOTICE OF
## WIND-DOWN DEBTORS' MOTION FOR AN ORDER AUTHORIZING
## ABANDONMENT AND DISPOSAL OF ALL REMAINING DATA AND INVENTORY

---

[1]   The Wind-Down Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609].

1

**PLEASE TAKE NOTICE** that BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors" or the "Debtors" as applicable), by and through its proposed counsel, hereby move before the Honorable Michael B. Kaplan, Chief United States Bankruptcy Judge for the United States Bankruptcy Court for the District of New Jersey, Trenton Vicinage, for entry of an order substantially in the form submitted herewith, granting the *Wind-Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of All Remaining Data and Inventory* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **May 15, 2025 at 10 am ET** or as soon thereafter as counsel may be heard before Judge Kaplan at the Clarkson S. Fisher U.S. Courthouse, located at 402 East State Street, Trenton, New Jersey 08608, in Courtroom No. 8.

**PLEASE TAKE FURTHER NOTICE** that the Wind-Down Debtors will be relying on the Motion and that no brief is being filed since the legal basis upon which relief should be granted is set forth in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with D.N.J. LBR 9013-2(a)(2), any objections must be filed with the Clerk of the United States Bankruptcy Court, 50 Walnut Street, 3rd Floor, Courtroom 3A, Newark, New Jersey 07102, and served upon Genova Burns, LLC, Attn: Daniel M. Stolz, Esq., 110 Allen Road, Ste. 304, Basking Ridge, New Jersey so they are received on or before **May 8, 2025 at 4 pm ET**.

**PLEASE TAKE FURTHER NOTICE** that in the absence of any objections, the relief requested in the Motion may be granted without further notice.

*[Signature Page to Follow]*

Dated: April 23, 2025

           */s/ Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz,
Esq. Donald W.
Clarke, Esq. 110
Allen Rd., Suite
304 Basking
Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*) Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*) One Financial Center
Boston, MA 02111
(617) 856-8300
taxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>KAulet@brownrudnick.com | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com |
| **BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617) 856-8300<br>TAxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator* | *Local Counsel for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,                Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Hearing Date: May 15, 2025 at 10 am ET**<br>**Response Deadline: May 8, 2025 by 4 pm ET**<br>**Oral Argument: Waived Unless Response Timely Filed** |

**WIND-DOWN DEBTORS'**
**MOTION FOR AN ORDER AUTHORIZING**
**ABANDONMENT AND DISPOSAL OF ALL REMAINING DATA AND INVENTORY**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

---

[1]   The Wind-Down Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming *the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609].

BlockFi Inc. and its debtor affiliates (collectively, "BlockFi" or the "Wind-Down Debtors" or the "Debtors" as applicable), in the above-referenced Chapter 11 cases (the "Chapter 11 Cases"), hereby file this *Motion for an Order Authorizing Abandonment and Disposal of All Remaining Data and Inventory* (the "Motion"). In support of the Motion, the Wind-Down Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Wind-Down Debtors file this Motion to ensure the orderly and legally compliant wind-down of the estates by providing for the eventual abandonment and disposal of all remaining data, information, and related inventory held by BlockFi. The Wind-Down Debtors propose to initiate requisite processes following this Court's approval of the Motion, with actual disposal of all remaining data, information, and assets to be accomplished as of and after the closing of these Chapter 11 Cases.

2.      As the wind-down concludes, the Wind-Down Debtors continue to maintain personal and financial information on various BlockFi customers and parties that obtained services from BlockFi, as well as financial, employee, human resources, operational, legal, compliance, and intellectual property data and information (collectively, very generally, the "Data Inventory"), which is substantially compiled and described under **Exhibit A** (the "Disposal List").[3] Following conclusion of the wind-down, it may no longer be necessary for the Wind-Down Debtors to retain the remaining Data Inventory for purposes relevant to the Bankruptcy Code, the Plan, and otherwise. Particularly in light of BlockFi's security and cost concerns, BlockFi thus proposes that it be authorized, but not directed, to destroy the Data Inventory, through authorized persons and

---

[3]     The Disposal List is non-exhaustive and outlines general categorizations and descriptions of the Data Inventory held by BlockFi. For the avoidance of doubt, this Motion seeks authority to abandon and dispose of *all* remaining Data Inventory held by BlockFi (even if not explicitly described in Exhibit A) subject only to the limitations outlined in this Motion, the Exhibits thereto, and any order entered by the Court.

subject to certain exceptions as further described herein.[4]

3.      In fact, the process of disposing sensitive data and hardware has already begun. Earlier this year, the Wind-Down Debtors sought relevant permissions concerning certain Physical Inventory[5] and its New York WeWork Office in filing the *Motion of Wind-Down Debtors for an Order Authorizing Disposal of Certain Data and Inventory* [Docket No. 2841] (the "Preliminary Disposal Motion"). This Court granted such permissions pursuant to the *Order Granting Motion of Wind-Down Debtors for an Order Authorizing Disposal of Certain Data and Inventory* [Docket No. 2492] (the "Preliminary Disposal Order"). The Physical Inventory and WeWork Office subject thereof,[6] unlike the remaining Data Inventory discussed herein, were not used to store sensitive personal identifying, proprietary, privileged, or confidential information.

4.      Specifically, the Wind-Down Debtors propose to initiate requisite processes to facilitate efficient disposal of all remaining Data Inventory upon closure of these Chapter 11 Cases, including, but not limited to, (i) noticing interested parties of this Motion, the Data Disposal Notice under Exhibit B (as defined below), and other applicable orders entered in connection herewith, (ii) engaging a third-party custodian that may aid in the disposal of all remaining Data Inventory, and (iii) establishing and maintaining reserves to fund the disposal of all remaining Data Inventory.

---

[4]   BlockFi International Ltd., the Joint Liquidators, and other professionals may be subject to additional data retention and/or disposal requirements affecting certain Data Inventory. The relief sought herein is without prejudice to BlockFi International Ltd, Joint Liquidators, and other professionals to take action consistent with Bermuda law and regulation, including the right, upon request, to obtain copies of the Data Inventory proposed in the U.S. to be disposed of, prior to its disposal, to ensure that BlockFi International Ltd and the Joint Liquidators retain the Data Inventory for the requisite periods prescribed by Bermuda law and regulation.

[5]   The terms "Physical Inventory" and "WeWork Office" shall have the meaning prescribed to them in the Preliminary Disposal Order.

[6]   While (a) BlockFi's internal information storage policy was to save all sensitive information to the cloud storage system, and (b) the Wind-Down Debtors and its professionals had used reasonable efforts to confirm that the items subject to the Preliminary Disposal Order did not store sole copies of any sensitive or pertinent information, the Wind-Down Debtors and its professionals did not run a full digital fingerprint backup of each hard drive to confirm because this exercise would have been unreasonably costly, time consuming and burdensome.

The Wind-Down Debtors further propose that upon entry of a final decree closing the Chapter 11 Cases, they be authorized to abandon and effectuate disposal of all remaining Data Inventory, information, and assets that are held, maintained, or otherwise stored by BlockFi as of the date of entry of such final decree.

5.      There are four principal causes for the relief requested.

6.      First, although certain laws and regulations exist that may require retention of certain forms of Data Inventory, after further investigation and analysis, the Wind-Down Debtors do not believe at this time that any of those laws or regulations apply here requiring the retention of any Data Inventory following entry of a final decree.  In fact, certain laws, regulations, Bankruptcy Code provisions, case studies, Plan provisions, and BlockFi's own Privacy Policy (as defined below) strongly suggest (if not require), to the contrary, that Data Inventory should be disposed upon case closure.

7.      For instance, BlockFi's own Privacy Policy provides for the retention of data only for its given purposes and requires the disposal of sensitive personal and financial information following fulfillment of its purpose of retention.  BlockFi's wind-down will soon be complete; as such, BlockFi will no longer have a clear need to retain any of its Data Inventory (and in fact, will begin disposing of certain information and hardware in the near term pursuant to the Preliminary Disposal Order).

8.      Second, storage and retention of Data Inventory following the wind-down presents an ongoing security risk.  This Court and BlockFi are familiar with cybersecurity risks as a result of prior events impacting professionals and creditors during these proceedings.

9.      Third, upon reasonable belief and inquiry, save for the Bermuda Monetary

4

Authority's request on January 28, 2025, for information pertaining to BlockFi International Ltd,[7] there are no pending regulatory investigations nor court-ordered requests for information pertaining to BlockFi and its estates, and any material and/or sensitive information that is likely to be requested (if any) will be accessible for the allotted period pursuant to the following proposed notice procedures.  Regardless, BlockFi will be providing notice of this Motion to a broad array of regulators who have previously reviewed its activities and/or made inquiries.  Moreover, the authority sought in this Motion will be subject to a notice and inquiry period that expires on the *later of* (i) thirty (30) days following the date of entry of an order granting this Motion and service of the notice form substantially attached hereto under **Exhibit B** (the "Data Disposal Notice"), or (ii) the filing of a motion seeking entry of a final decree closing these Chapter 11 Cases (together, the "Notice Period").  The Wind-Down Debtors will not seek entry of a final decree until the notice period for this Motion has lapsed.

10.     Fourth, retention and maintenance of the Data Inventory presents unnecessary, ongoing costs.  Since the filing of the Chapter 11 Cases, the Wind-Down Debtors have spent millions of dollars storing and maintaining the remaining Data Inventory notwithstanding that BlockFi is no longer operating as a going concern business.  Upon completion of wind-down, BlockFi will have no reasonably foreseeable reason to maintain such Data Inventory.  Retention of the Data Inventory would require the Wind-Down Debtors to, for instance, hire a data and records custodian, obtain storage space and potential security, and procure significant storage and cyber insurance policies—all actions that will require a reserve of funds otherwise distributable to creditors, and thus, should be undertaken, if at all, for as brief a period as necessary and appropriate by law.

---

[7]     The Bermuda Monetary Authority is the regulator of Bermuda's financial services sector.

11.     Additionally, over the course of BlockFi's business and the Chapter 11 Cases, BlockFi retained and utilized a number of third-party professionals such as law firms, financial advisors, accountants, service providers, developers, and engineers (generally, the "Professionals").  In connection with providing their services, the Professionals obtained information pertaining to BlockFi.  The Wind-Down Debtors seek authority to authorize the Professionals, unless expressly required otherwise, to destroy or retain any data and inventory attributable to BlockFi that the Professionals deem appropriate under applicable bankruptcy and non-bankruptcy law, consistent with the relief sought herein.

12.     For these reasons and the reasons further outlined below, the Wind-Down Debtors respectfully request that the Court find that the relief requested herein is sufficiently conditioned to protect the public from contemplated dangers, and authorize BlockFi to initiate requisite processes and eventually dispose of all remaining Data Inventory pursuant to the terms of this Motion, pursuant to the proposed order attached as **Exhibit D** (the "Proposed Order").

## JURISDICTION AND VENUE

13.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Wind-Down Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

14.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The bases for the relief requested herein are §§ 105(a), 107(c), 1142(b), and

554 of the Bankruptcy Code, and Bankruptcy Rule 6007.

## **BACKGROUND**

16.    On July 8, 2022, BlockFi published its privacy policy on its website, which can be found at https://blockfi.com/privacy/, describing the information that BlockFi collects from customers and persons that engage with, conduct business with, and are customers of BlockFi, as well as what BlockFi does with such information (the "Privacy Policy").  BlockFi's Privacy Policy provides that, among other things:

> We are required under applicable laws and regulatory requirements to retain certain information, including, but not limited to, Personal Information of clients, client profiles, identification verification materials, information we use to satisfy our Know Your Customer (KYC) and Anti-Money Laundering (AML) obligations, account information, account agreements, trade orders, trade confirmations and other agreements, account statements, and other records.

> Such records are generally retained as required by law, rule or regulation, or for the *minimum amount of time necessary to accomplish the purpose for which it was collected*, and thereafter no longer than is permitted under BlockFi's data retention policies.

> Should you decide to close your account, we will mark your account 'Closed', but will retain copies of information about you and any transactions or services in which you may have participated in accordance with applicable law and *for a period of time that is consistent with such law, applicable statute of limitations, or as we believe is reasonably necessary* to comply with applicable law, regulation, legal process, or governmental request, to detect or prevent fraud, to collect fees owed, to resolve disputes, to address problems with our services and products, to assist with investigations, to enforce any of our terms and conditions or other applicable agreements or policies, or to take any other actions consistent with applicable law or in accordance with this Privacy Policy. Your Personal Information will not be used by us for any further purposes, nor shared with third parties, except as stated in this section.

BlockFi's Privacy Policy (emphasis added).

17.    On November 28, 2022 (the "Petition Date"), BlockFi filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of New Jersey.[8]   BlockFi International is currently in liquidation under the laws of Bermuda.

18.    On November 29, 2022, this Court entered an order authorizing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 42].  These Chapter 11 Cases are being jointly administered under lead Case No. 22-19361.

19.    On December 21, 2022, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 130].

20.    On or around August 2023, the Claims, Noticing, and Solicitation Agent for BlockFi, Kroll, suffered a data breach that compromised various data and information pertaining to BlockFi and BlockFi customers (the "Kroll Data Breach").  Following the Kroll Data Breach, BlockFi has notified regulators of numerous jurisdictions of the breach based on the data that was involved, the relevant state breach notification laws, and advice from local counsel.

21.    On September 26, 2023, the Court confirmed the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* [Docket No. 1609] (the "Plan").

22.    On October 3, 2023, the Court entered its *Revised Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement Relating to the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code on a Final Basis and (II) Confirming the Third Amended Joint Chapter 11*

---

[8]    A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Mark Renzi in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which was filed on the Petition Date and is incorporated by reference herein.

*Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*

*(Additional Technical Modifications)* [Docket No. 1660] (the "Confirmation Order") confirming

the Plan, which went effective on October 24, 2023 (the "Effective Date") [Docket No. 1788].

23.     The Plan and the Confirmation both provide that:

> Upon the occurrence of the Effective Date, the Debtors and Wind-Down Debtors,
> as applicable, shall continue to preserve all financial books and records, emails,
> and other financial documents relating to the Debtors' business that are currently
> in the Debtors' possession.  The Debtors and Wind-Down Debtors shall not destroy
> or otherwise abandon any such documents or records without seeking further
> authorization from the Bankruptcy Court.

Plan at 73, Confirmation Order ¶ 120.

24.     Upon reasonable inquiry and belief, save for the Bermuda Monetary Authority's

request on January 28, 2025, for information pertaining to BlockFi International Ltd, there are no

pending information requests for BlockFi or the Wind-Down Debtors from court-authorized third

parties or investigatory agencies.   BlockFi has promptly cooperated with all previous

investigations and requests for information, and following BlockFi's responses, no further

communications have been received by BlockFi.   Out of abundance of caution, BlockFi will

provide notice of this Motion to all regulators and investigatory agencies that have conducted

investigations on BlockFi both in the ordinary and non-ordinary course of business, a list of which

is attached under **Exhibit C** (the "Regulator and Investigator Notice List"), and will not seek entry

of a final decree until at least thirty (30) days after the Data Disposal Notice is furnished, allowing

inquiring parties to request further information and obtain a Subpoena (as defined in the Data

Disposal Notice) to access certain Data Inventory, pursuant to the Data Disposal Notice.

25.     As mentioned, wind-down efforts are already underway.   On February 20, 2025,

this Court entered the Preliminary Disposal Order, thereby authorizing the Wind-Down Debtors

to initiate disposal of certain Data Inventory, specifically, certain inactive Physical Inventory and

closure of the WeWork Office as described on the Disposal List attached thereto.[9]

26.     As this Court is aware, the Wind-Down Debtors have likewise made significant progress toward wind-down of the estates, including reconciling and satisfying customer claims and resolving outstanding disputes with numerous parties.  The Wind-Down Debtors reasonably anticipate substantial completion of such efforts in coming months and intend to file the appropriate motions to close the Chapter 11 Cases (following the expiration of the Notice Period).  For the avoidance of doubt, upon entry of a final decree, the Wind-Down Debtors propose that all remaining Data Inventory, information, and assets that are held, maintained, or otherwise stored thereby will be disposed of pursuant to the terms and procedures in this Motion.

---

[9]     It has recently been brought to the attention of the Wind-Down Debtors and Plan Administrator that the Physical Inventory (i.e., various laptops) located at the India Storage Facility, as contemplated in the Preliminary Data Motion, appears to have been misplaced and is not currently accounted for (generally, the "India Devices").  The Wind-Down Debtors are in the process of investigating the situation and will use [best efforts] to either locate or determine the status of the India Devices, and will take the appropriate measures to mitigate information risks. Nevertheless, it is understood that all but one of the India Devices were cleared of all data prior to the Petition Date.  It is further understood that the one remaining India Device was previously returned to BlockFi and has been locked but has not been cleared of all data, pending the relief sought herein.

## THE DATA INVENTORY

27.     BlockFi maintained a wide variety of Data Inventory in the ordinary course of its pre-petition operations and to facilitate its wind-down under the Plan.  Following the Effective Date, the Wind-Down Debtors conducted an inquiry into the Data Inventory held by BlockFi and consulted with their advisors, including a data privacy expert, with respect to potentially applicable laws and regulations and best practices for data retention and disposal.

28.     What follows herein and in the Exhibits to this Motion is a summary of the Wind-Down Debtors' Data Inventory described to the extent prudent and relevant in context; an analysis of certain relevant provisions, laws, and regulations establishing a basis for the relief sought; and the proposed notice and disposal protocol for the abandonment and permanent deletion of all remaining Data Inventory.

29.     The Disposal List under Exhibit A contains a non-exhaustive list of all remaining Data Inventory held by BlockFi, including (a) customer data and personal information and customer personal identifiable information or PII (as defined below), such as, retail productions lists, promotional materials and campaign data, deposit and withdrawal information, insights, marketing and website analytics, "know your customer" information, client communications, claims communications and distributions, and other relevant and applicable data ("Customer Data and PII"); (b) customer financial information, such as, accounting records, bank statements, tax and financial records, retail trading data, loan information, institutional and historical datasets, and other relevant and applicable data ("Customer Financial Information"); (c) employee and human resource data, such as, payroll, benefits, hiring data, employee communications, and other relevant and applicable data ("Employee and Human Resource Data"); (d) BlockFi financial information, such as, accounting records, tax information, financial records, transaction data, disbursement data, loan data, custodian data, risk department metrics, and other relevant and applicable data ("BlockFi

Financial Information"); (e) intellectual property, such as, source code data and archives, and other relevant and applicable data ("Intellectual Property"); (f) legal and compliance, such as, claims register information, communications and records with regulators and agencies, compliance records, legal communications and records, and other relevant and applicable data ("Legal and Compliance"); (g) operations, such as, security operations data, configuration data, cloud storage system(s), software systems, and other relevant and applicable data ("Operations"); and (h) tangible, physical inventory, such as, devices, laptops, cellphones, office supplies, paper copies, and other relevant and applicable inventory ("Physical Inventory").

## RELIEF REQUESTED

30.     The Wind-Down Debtors request that the Court authorize, but not direct, the Wind-Down Debtors and Plan Administrator to take appropriate actions in connection therewith, including without limitation, initiating requisite processes to facilitate the eventual disposal of all remaining Data Inventory upon entry of a final decree and closure of these Chapter 11 Cases.

## ARGUMENT

31.     Various laws and regulations, including U.S. state and federal laws concerning police powers and data privacy, impose obligations concerning the periods during which BlockFi should retain its Data Inventory.  The Plan and BlockFi's own Privacy Policy also speak to concerns over data security and retention.  All of these systems are intended to protect the public from, generally speaking, known dangers relating to uses of Data Inventory, both proper and improper.

32.     The Wind-Down Debtors must act carefully, and in this instance obtain Court approval, as required under the Plan, for any action concerning retention, destruction, or other disposal (including via abandonment) of Data Inventory.  However, the Wind-Down Debtors' resources and lifespan are not infinite, and it is in the interest of creditors and consistent with the

Plan to provide for the ultimate disposition of Data Inventory promptly in a manner that facilitates final distributions and closure of the Chapter 11 Cases as efficiently as possible.

33.     Accordingly, the Wind-Down Debtors seek an order authorizing, but not directing, abandonment and disposal of all remaining Data Inventory to ensure compliance with applicable orders of this Court and Bankruptcy Code provisions, while minimizing expense and risk to the estates and their professionals and employees.

34.     As described below, the requested relief is consistent with the Bankruptcy Code, and necessary and appropriate to carry out the provisions thereof and of the Plan.

## I.     The Court Should Permit Abandonment Under Section 554 of the Bankruptcy Code.

35.     Section 554(b) of the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to *abandon* any property of the estate that is *burdensome to the estate or that is of inconsequential value and benefit* to the estate."[10]

36.     Generally speaking, courts authorize a debtor to abandon property upon appropriate notice to interested parties and a showing that such property is "(1) burdensome to the estate, or (2) of inconsequential value."[11]

37.     Consistent with the foregoing, section 105(a) of the Bankruptcy Code provides the Court with broad authority to issue "any order, process, or judgment that is necessary or

---

[10]   11 U.S.C. § 554(b) (emphasis added); *see, e.g., In re Am. Tissue, Inc.*, No. CV 01-10370-KG, 2015 WL 1516973 at *4 (D. Del. Mar. 31, 2015) ("The purpose of abandonment under § 554 is to rid the bankruptcy estate of burdensome property, not to increase the estate's burden.").

[11]   *Am. Tissue, Inc.*, 2015 WL 1516973 at *4 (quoting *Pilz Compact Disc, Inc.*, 229 B.R. 630, 639 (Bankr. E.D. Pa. 1999)); *see also In re St. Lawrence Corp.*, 239 B.R. 720, 727 (Bankr. D.N.J. 1999), *aff'd*, 248 B.R. 734 (D.N.J. 2000) (finding that a trustee met their burden for prima facie abandonment by demonstrating that the property was operating at a loss and efforts to sell the property produced no purchase offers, and because the applicable regulatory agency offered no evidence to contradict the trustee's evidence that the property is burdensome or of inconsequential value.).

appropriate to carry out the provisions of this title." Similarly, section 1142(b) provides that the Court "may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a *transfer of property* dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." (Emphasis added).

38.     The Bankruptcy Code is conscious and protective of certain data and information, especially personal information attributable to customers of a debtor.  For example, section 107(c) provides that, upon a showing of "cause," the Court may issue an order to protect personal identifiable information from disclosure that could create undue risk or harm.  The Bankruptcy Code defines "personal identifiable information" (referred to herein as "PII") to mean information that is "provided by an individual to the debtor" that includes (a) first names or initials and last names; (b) addresses of residence; (c) electronic addresses (including emails); (d) phone numbers; (e) social security numbers; (f) credit card numbers; (g) birth dates, the number on a birth certificate or adoption, or place of birth; and (h) "any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically."  11 U.S.C. § 101(41A).

39.     The record in these Chapter 11 Cases amply demonstrates cause to permit abandonment (and/or destruction, variously as proposed) under the provisions of the Bankruptcy Code.  Specifically, the ongoing costs of retaining and securing Data Inventory are significant, and the Wind-Down Debtors have no need to retain such Data Inventory following closure of the Chapter 11 Cases.

II.    **The Proposed Disposal Protects the Public.**

40.    Notwithstanding the foregoing, the Wind-Down Debtors are mindful of potential interests of a variety of parties in the disposal of the Data Inventory.  Accordingly, by this Motion, the Wind-Down Debtors have formulated conditions by which the Data Inventory may be disposed of in a manner sufficient to protect the interests of regulators, former BlockFi customers, and other parties in interest.

41.    There is no clear rule on the obligation to retain estate property after the closure of a case under the Bankruptcy Code.  In fact, section 554(c) provides that, unless ordered otherwise, any property that is scheduled pursuant to section 521(a)(1) and is not otherwise administered by the closing of the case is considered "abandoned" to the Wind-Down Debtors and administered for purposes of 11 U.S.C. § 350.  In other words, any remaining Data Inventory that is not administered by the closure of the Chapter 11 Cases would generally be considered abandoned to the Wind-Down Debtors under the Bankruptcy Code.  *See* 11 U.S.C. § 554(c).

42.    Rather, the jurisprudence restricting abandonment power, and thus necessitating retention, only applies in exceptional circumstances where "imminent and identifiable harm" to the public health and safety exist.[12]  In *Midatlantic*, the Supreme Court weighed in on the trustee's power to abandon certain property in New York that contained toxic, contaminated oil.  *See id*. Ultimately, the Supreme Court held that a bankruptcy court "does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety."  *Id*. at 507.[13]  But notably, the Supreme Court lends that retention is only required

---

[12]    *See Midatlantic Nat'l Bank v. N.J. Dep't of Environmental Prot.*, 474 U.S. 494, 507 n.9 (1986).

[13]    The Court further cited congressional intent regarding the weight of state and local laws over a trustee's bankruptcy power, explaining that a trustee has never been granted "bankruptcy powers that would lend support to a right to abandon property in contravention of state or local laws designed to protect public health or safety." *Id*. at 502.

where the court finds both a genuine threat to public health and safety, and that abandonment would constitute a circumvention of laws designed to protect the public. *See id.* at 507 n.9 (explaining "[t]he abandonment power is *not to be fettered* by laws or regulations *not reasonably calculated* to protect the public health or safety from imminent and identifiable harm.") (emphasis added).[14]   The Supreme Court reasoned that the trustee's abandonment in that case would leave the responsibility of decontamination entirely to the State of New York and put the public's health and safety at risk in violation of state and federal environmental laws. *See id.* at 498.

43.   After *Midlantic*, a number of courts have permitted abandonment notwithstanding environmental contamination on the basis that the public was adequately protected by repeated warning communications,[15] or because a debtor proposed to abandon property to a well-funded party for remediation under applicable law.[16]   For instance, in *In re Purco*, a Pennsylvania bankruptcy court permitted a trustee to abandon certain inventory alleged as hazardous waste, finding limited public danger evidenced by a seeming lack of interest from relevant regulators, and noting that proposed abandonment to a party that previously operated the same business appeared

---

[14]   *See generally In re Purco*, 76 B.R. 523, 533 (Bankr. W.D. Pa. 1987) ("abandonment will be permitted when the conditions are such that abandonment will not render the public health and safety inadequately protected."); *cf. Leavell v. Karnes*, 143 B.R. 212, 219 (S.D. Ill. 1990) (asserting "in order to comply with the mandate of *Midlantic,* the bankruptcy court must first determine whether conditions on the property pose an immediate and identifiable threat to the public health or safety. If that question is answered in the affirmative, the bankruptcy court may allow abandonment only after proper steps are taken to adequately protect public health and safety.") (citing *In re Smith–Douglass, Inc.,* 856 F.2d 12, 16 (4th Cir. 1988)).

[15]   *See, e.g., In re Anthony Ferrante & Sons, Inc.*, 119 B.R. 45, 50 (D.N.J. 1990) ("residents served by the System have been repeatedly warned of the contamination, and operation of the System has ceased, abandonment will not threaten the health of those residents").

[16]   *See In re Purco*, 76 B.R. at 533 (abandoning to landlord); *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 3157567 *2-3 (Bankr. S.D. Tex, June 19, 2013) (abandoning to United States).  A debtor's financial condition may also be relevant to a court's analysis, because an administratively insolvent debtor may be unable to formulate necessary conditions for abandonment and therefore its action will not aggravate a public harm. *See State of N.J. v. N. Am. Prods. Acqu'n Corp.*, 137 B.R. 8, 12-13 (D.N.J. 1992); *In re Smith-Douglass, Inc.*, 856 F.2d at 16-17. This factor is likely not relevant here; the Wind-Down Debtors have the ability to satisfy the financial obligations proposed herein.

to ameliorate concern.[17]

44.      Such retention concerns are inapplicable here.  There are no tangible risks to the public's health and safety as outlined in the environmental cases discussed above.  There is, rather, a risk to BlockFi stakeholders the longer the Data Inventory is retained.  BlockFi is seeking authority to dispose of all remaining Data Inventory, using best practices to ensure permanent deletion and adequate protection of all remaining Data Inventory (especially sensitive information, such as PII).  The record before the Court in these Chapter 11 Cases demonstrates that it is in the best interests of the public to permanently dispose of all remaining Data Inventory to mitigate exposure to breach events and related phishing and hacking attempts against customers and others.

45.      Moreover, applicable non-bankruptcy law generally requires data custodians, such as BlockFi, to dispose of sensitive personal and financial information following satisfaction of the intended purpose of obtaining and using such information.  For instance, BlockFi is required by law to dispose of certain of the Data Inventory pursuant to, among other regulations: Bermuda's Personal Information Protection Act 2016, the General Data Protection Regulation ((EU) 2016/679) (the "GDPR"), the Personal Information Protection and Electronic Documents Act, S.C. 2000, c. 5 (Canada) (the "PIPEDA"); the California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100, *et seq*., as amended by the California Privacy Rights Act of 2020 (with amendments, the "CCPA") serving as the principal topic in an enforcement advisory issued by the California Privacy Protection Agency (No. 2024-01) regarding its enforcement strategy for the CCPA.  Further, data minimization (in terms of collection, usage, and retention) is one of the eight (8) "fair information practice principles" upon which the vast majority of modern data privacy laws are based, including, but not limited to: the Virginia Consumer Data Protection Act, Va. Code

---

[17]      *See* 76 B.R. at 533-34.

Ann. § 59.1-575, *et seq.*; the New Jersey Data Protection Act, NJ Rev. Stat. § 56:8-1667.4, *et seq.*;

the Texas Data Privacy and Security Act, Tex. Bus. & Com. Code Ann. § 541.001, *et seq.*; and the

Minnesota Consumer Data Privacy Act, Minn. Stat. Ann. § 3250.01, *et seq.*

46.    These applicable non-bankruptcy laws and regulations are designed to mitigate

cybersecurity risks associated with private customer information, including PII and financial

information—risks that have come to fruition already in these cases.

47.    Even more, numerous FTC filings *support* general property abandonment–

particularly deletion of data–once the property has served its purpose.  For instance, in *In re*

*Blackbaud, Inc.*, Complaint, FTC Docket No. C-4804 (May 2024), the court found that retaining

consumer data "for years longer than was necessary" constituted an unfair data retention practice

and violated Section 5(a) of the Federal Trade Commission Act.  The complaint came at the heels

of a data breach of Blackbaud's network that allowed a hacker to access the personal data of

millions of consumers, including Social Security and bank account numbers.  The subsequent

decision on the matter mandated that Blackbaud delete its customers' personal information "that

is not being retained in connection with providing products or services" to such customers and

refrain from maintaining any personal information that is not necessary for business purposes.  *In*

*re Blackbaud, Inc.*; *see also In re BJ's Wholesale Club, Inc.*, Complaint, FTC Docket No. C-4148

(Sep. 23, 2005) (asserting that warehouse store business created unnecessary risks to collected

personal information by storing such information for "up to 30 days when it no longer had a

business need to keep the information"); *In re DSW, Inc.*, Complaint, FTC Docket No. C-4157

(March 14, 2006) (asserting that footwear business created unnecessary risks to collected personal

information by storing it in multiple files when it no longer had a business need to keep the

information); *In re Life is good Inc. and Life is good Retail, Inc.*, Complaint, FTC Docket No. C-

4218 (April 18, 2008) (asserting that retail apparel business created unnecessary risks to collected consumer information by storing it indefinitely on its network without a business need); *In re CBR Systems, Inc.*, Complaint, FTC Docket No. C-4400 (May 3, 2013) (asserting that cord blood banking company created unnecessary risks to personal information by failing to destroy consumers' personal information for which it no longer had a business need); *In re InfoTrax Systems, L.C.*, Complaint, FTC Docket No. C-4696 (Jan. 6, 2020) (asserting that technology company's storage of consumers' personal information in clear, readable text constituted an unreasonable data security practice).  These allegations thus inform companies that data disposal, rather than retention and maintenance, is necessary to comply with good business practice and to minimize chances of FTC involvement.

48.    Despite this legal permission to delete its data, however, BlockFi also understands the possibility of regulators or other third parties taking issue with unexpected deletion.  To ameliorate any potential concerns, BlockFi will give notice to all affected parties, including those listed under the Regulator and Investigator Notice List, in advance and offer an opportunity for them to request additional information pursuant to the Data Disposal Notice.

49.    The Department of Justice and other regulators that may have an interest in Data Inventory held by BlockFi have had and will continue to have an opportunity to seek information and access to the Data Inventory before disposal is effectuated.  These needs must be balanced with the fact that former BlockFi customers have an interest in prompt destruction of sensitive personal information that otherwise presents an ongoing security risk, as evidenced by the Kroll Data Breach among other events.

50.    With those considerations in mind, the relief sought herein is designed to (a) comply with the Plan, BlockFi's Privacy Policy, and aforementioned laws and regulations

designed to protect the public, including protecting sensitive information of BlockFi's customers; (b) comply with any ongoing or anticipated investigatory, regulatory, or other court-ordered inquiries within the Notice Period; (c) reduce the exposure of the estates and BlockFi customers to cybersecurity risks; and (d) preserve estate assets.  The Wind-Down Debtors also provide multiple notices to give regulators the opportunity to weigh in on the relief requested herein.

51.    Specifically, upon entry of an order granting this Motion, the Wind-Down Debtors seek authorization to:

a.    serve the Data Inventory Disposal Notice on all Notice Parties (as defined below), thereby commencing the Notice Period within which interested parties may request information on or access to the Data Inventory by filing and serving a Subpoena, as described therein;

b.    select and negotiate terms of engagement of necessary third-party service providers to aid in complete and sufficient disposal and deletion of all Data Inventory, provided that (i) the Plan Administrator may select and engage any such third-party service provider(s), and (ii) following entry of a final decree the Plan Administrator may, as determined in their business judgment, transfer receipt of title, interest, and possession of all remaining Data Inventory to such third-party service provider;

c.    establish and maintain reserves to fund disposal and pay any engaged third-party service provider(s), including prepayment of compensation and anticipated reimbursements of fees as determined in the Plan Administrator's business judgment and in compliance with the Plan; and

d.      upon motion and entry of a final decree closing the Chapter 11 Cases,

abandon and effectuate disposal and permanent deletion of all remaining

Data Inventory, information, and assets that are held, maintained, or

otherwise stored by BlockFi as of the date of entry of such final decree,

in accordance with best market practices.

52.      In the event that the Plan Administrator determines, in their business judgement,

that any Data Inventory should be preserved and retained to comply with a Subpoena (as defined

in the Data Disposal Notice) or otherwise, then the Wind-Down Debtors may (a) retain such Data

Inventory for a specified period to satisfy such determination; (b) engage a third-party data

custodian to preserve such Data Inventory and facilitate compliance with such a Subpoena or a

retention determination by the Plan Administrator; (c) establish and maintain the appropriate

reserves to cover reasonably foreseeable costs associated with such Data Inventory retention and

third-party custodian engagement; and (d) approve and implement any other procedures or

protocols that may be necessary to protect the Data Inventory that is subject to such retention for

a limited period.

53.      The relief sought herein enables the Wind-Down Debtors to conclude these Chapter

11 Cases while complying with the Bankruptcy Code and applicable non-bankruptcy laws and

principles.  The notice and disposal protocols outlined are consistent with laws that protect both

customer security interests and the interest of regulators in exercising police powers, and

adequately protects the public under the circumstances.  Cause is shown herein to grant the

requested relief.

## RESERVATION OF RIGHTS

54.     The Wind-Down Debtors reserve all rights to seek further authority from the Court to (a) retain certain Data Inventory; (b) engage a third-party data custodian to carry out the relief sought and contemplated herein; (c) establish and maintain additional reserves to cover reasonably foreseeable costs associated with carrying out the relief sought and contemplated herein; and (d) approve and implement any other procedures or protocols that may be necessary to carry out the relief sought and contemplated herein.

55.     The Wind-Down Debtors further reserve the right to file additional motions as necessary pertaining to the disposal of all remaining information, assets, or otherwise that are held, maintained, or otherwise stored by BlockFi.

## WAIVER OF MEMORANDUM OF LAW

56.     The Wind-Down Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Wind-Down Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

57.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## NOTICE

58.     The Wind-Down Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) the attorneys

general in the states where the Wind-Down Debtors conduct their business operations; (e) the Commodity Futures Trading Commission; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; (h) all required parties under Bankruptcy Rule 6007; (i) all parties listed on the Regulator and Investigator Notice List under Exhibit C; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Wind-Down Debtors submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

**WHEREFORE**, the Wind-Down Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Signature Page to Follow]*

Respectfully Submitted,

Dated: April 23, 2025

 /s/ *Daniel M. Stolz*

**GENOVA BURNS LLC**
Daniel M. Stolz,
Esq. Donald W.
Clarke, Esq. 110
Allen Rd., Suite
304 Basking
Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro
hac vice*) Seven Times Square
New York, New York 10036
(212) 209-4800
KAulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro
hac vice*) One Financial Center
Boston, MA 02111
(617) 856-8300
TAxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

## EXHIBIT A

**Disposal List**

**<u>EXHIBIT A</u>**

**Disposal List**[1]

| Category | Title/Identifier/Name[2] |
|---|---|
| **(a) Customer Data and PII** | 1.  Claims data |
| | 2.  Client communications |
| | 3.  Client data |
| | 4.  Client ledger |
| | 5.  Client tax data |
| | 6.  Contract management (BPC) |
| | 7.  Fraud data #1 |
| | 8.  Fraud data #2 |
| | 9.  Know-your-customer (KYC) documents |
| | 10. Marketing and website analytics data |
| | 11. Product claim and distribution tracking |
| | 12. Product crypto tickers |
| | 13. Product retail client auth. |
| | 14. Product retail client insights |
| | 15. Product retail compliance data |
| | 16. Product retail credit card rewards |
| | 17. Product retail crypto deposits |

---

[1]    Any terms not defined herein shall have the meaning prescribed to them in the *Wind-Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of All Remaining Data and Inventory* (the "<u>Motion</u>").

[2]    This Disposal List is non-exhaustive and outlines general categorizations and descriptions of the Data Inventory held by BlockFi.  For the avoidance of doubt, the Motion seeks authority to abandon and dispose of *all* remaining Data Inventory held by BlockFi (even if not explicitly described herein) subject only to the limitations outlined in the Motion, the Exhibits thereto, and any order entered by the Court.

| | |
|---|---|
| | 18. Product retail crypto withdrawals |
| | 19. Product retail crypto withdrawals administration |
| | 20. Product retail customer and finance accounts |
| | 21. Product retail customer referrals and promotions |
| | 22. Product retail interest payments |
| | 23. Product retail loans next generation |
| | 24. Product retail notifications |
| | 25. Product/analytics retail data ingest and transformation |
| | 26. Promotion/affiliate/referral/campaign data |
| | 27. Retail production configuration service |
| | 28. Retail production UTXO consolidation service |
| | |
| **(b) Customer Financial Information** | 1.  Accounts payable |
| | 2.  Archive of financial analytics data |
| | 3.  Archived tableau data |
| | 4.  Bank statements |
| | 5.  Datalake datasets |
| | 6.  Fiat transaction data |
| | 7.  Historical data exports |
| | 8.  Institutional data |
| | 9.  Legacy databrick datasets |
| | 10. Loan data |
| | 11. Retail trading data |

| | |
|---|---|
| | 12. Tax & financial records |
| | |
| **(c) Employee and Human Resource Data** | 1.  Employee communications |
| | 2.  Employee data #1 |
| | 3.  Employee data #2 |
| | 4.  Employee data #3 |
| | 5.  Hiring data |
| | 6.  International contractor and payroll data |
| | 7.  International payroll and employee data |
| | 8.  U.S. payroll, benefits, and employee data |
| | |
| **(d) BlockFi Financial Information** | 1.  Accounting records |
| | 2.  Archived alteryx data |
| | 3.  Chain transaction data |
| | 4.  Crypto custodian data #1 |
| | 5.  Crypto custodian data #2 |
| | 6.  Disbursement data |
| | 7.  Loan data |
| | 8.  Metrics |
| | 9.  Pricing data |
| | 10. Risk department metrics |
| | 11. Stalking/mining data |
| | |

| (e) Intellectual Property | 1. Third-Party used for source code repository |
| | 2. Archive of the source code behind all services |
| | |
| (f) Legal and Compliance | 1. Claims register and related information |
| | 2. Communications and records with regulators and agencies – ordinary course of business |
| | 3. Communications and records with regulators and agencies – Blockfi inquiries |
| | 4. Communications and records with regulators and agencies – third-party inquiries |
| | 5. Compliance records |
| | 6. Legal communications and records – ordinary course of business (pre-bankruptcy) |
| | 7. Legal communications and records – ordinary course of business (post-bankruptcy) |
| | 8. Legal communications and records – lawsuits and proceedings (pre-bankruptcy) |
| | 9. Legal communications and records – non-bankruptcy case lawsuits and proceedings (post-bankruptcy) |
| | 10. Legal communications and records – bankruptcy case and wind-down |
| | |
| (g) Operations | 1. Archive of security operations data (including Splunk) |
| | 2. Configuration data for network, infrastructure, environments, and observability |
| | 3. Data lake cloud storage used for staging large datasets |
| | 4. Third-party software development life cycle suite (Jira and Confluence) |
| | 5. Working storage used by the institutional teams |
| | 6. Working storage used by the retail teams |
| | |

| (h) Physical Inventory | 1. All remaining Physical Inventory, including the Physical Inventory contemplated in the Disposal List attached as Exhibit A under the Preliminary Data Motion.[3] |
|---|---|

65582269 v2-WorkSiteUS-040015/0001

---

[3] It has recently been brought to the attention of the Wind-Down Debtors and Plan Administrator that the India Devices located at the India Storage Facility, as defined in the Motion and contemplated in the Preliminary Data Motion, appears to have been misplaced and is not currently accounted for. The Wind-Down Debtors are in the process of investigating the situation and will use best efforts to either locate or determine the status of the India Devices, and will take the appropriate measures to mitigate information risks. Nevertheless, it is understood that all but one of the India Devices were cleared of all data prior to the Petition Date. It is further understood that the one remaining India Device was previously returned to BlockFi and has been locked but has not been cleared of all data, pending the relief sought herein.

## **EXHIBIT B**

**Data Disposal Notice**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **BROWN RUDNICK LLP**<br>Kenneth J. Aulet, Esq. (admitted *pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>(212) 209-4800<br>KAulet@brownrudnick.com | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>DStolz@genovaburns.com<br>DClarke@genovaburns.com |
| **BROWN RUDNICK LLP**<br>Tristan Axelrod, Esq. (admitted *pro hac vice*)<br>One Financial Center<br>Boston, MA 02111<br>(617) 856-8300<br>TAxelrod@brownrudnick.com<br><br>*General Counsel for the Plan Administrator* | *Local Counsel for the Plan Administrator* |
| In re:<br><br>BLOCKFI INC., *et al.*,                    Debtors.[1] | Chapter 11<br>Case No. 22-19361 (MBK)<br>(Jointly Administered under a Confirmed Plan[2])<br>**Information Request Deadline:**<br>_____ |

## DATA DISPOSAL NOTICE

**PLEASE TAKE NOTICE** that, on February 20, 2025, the United States Bankruptcy

Court for the District of New Jersey (the "Court") entered an order granting the *Motion of Wind-*

---

[1]  The Wind-Down Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]  On October 3, 2023, the Court entered an order confirming the *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (the "Plan") [Docket No. 1609].

1

*Down Debtors for an Order Authorizing Disposal of Certain Data and Inventory* [Docket No. 2492] (the "<u>Preliminary Disposal Order</u>").

**PLEASE TAKE NOTICE** that, on _____, the Court entered an order granting the *Wind-Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of All Remaining Data and Inventory* [Docket No. [insert]] (the "<u>Data Disposal Order</u>").[3]

**PLEASE TAKE NOTICE** that, pursuant to Section 554 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 6007(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), BlockFi Inc. and its debtor affiliates (collectively, "<u>BlockFi</u>" or the "<u>Wind-Down Debtors</u>" or the "<u>Debtors</u>" as applicable) in the above-referenced Chapter 11 cases (the "<u>Chapter 11 Cases</u>"), by and through its proposed counsel, hereby give notice of their intention to abandon and dispose of all remaining Data Inventory and information held by BlockFi and its Professionals pursuant to the Data Disposal Order.[4]

**PLEASE TAKE FURTHER NOTICE** that any party seeking information on or access to any remaining Data Inventory or information must file and serve a subpoena (in each instance, a "<u>Subpoena</u>") by the ***later of*** (a) **<u>thirty (30) days</u>** following the date of entry of the Data Disposal Order and service of this notice; or (b) the **<u>filing of a motion seeking entry of a final decree</u>** closing these Chapter 11 Cases, provided however, that the Wind-Down Debtors will not seek entry of a final decree until (a) has lapsed (together, the "<u>Notice Period</u>").  For the avoidance of doubt, any Subpoena filed and served after the Notice Period may not be considered, particularly if the Wind-Down Debtors have already sought and obtained entry of a final decree closing these

---

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Data Disposal Order.

[4] Note, Wind-Down Debtor BlockFi International Ltd. is liquidating in parallel proceedings in Bermuda and may be subject to additional data retention and disposal requirements affecting certain Data Inventory.  The procedures contemplated herein are without prejudice to the rights and obligations of BlockFi International Ltd., its Joint Liquidators, and other professionals.

Chapter 11 Cases.  Subpoenas must be filed with the Clerk of the United States Bankruptcy Court, 50 Walnut Street, 3rd Floor, Courtroom 3A, Newark, New Jersey 07102 and served upon Genova Burns, LLC, Attn: Daniel M. Stolz, Esq., 110 Allen Road, Ste. 304, Basking Ridge, New Jersey no later than _____ on _____.

**PLEASE TAKE FURTHER NOTICE** that the Data Disposal Order, including anticipated immediate disposal of certain Data Inventory, shall effectuate upon entry of a final decree closing the Chapter 11 Cases.  The Wind-Down Debtors will not seek entry of a final decree until expiration of the thirty (30) day Notice Period contemplated herein.

*[Signature Page to Follow]*

Dated: _____                   /s/ Daniel M. Stolz

**GENOVA BURNS LLC**
Daniel M. Stolz,
Esq. Donald W.
Clarke, Esq. 110
Allen Rd., Suite
304 Basking
Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel to the Plan Administrator*

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*) Seven Times Square
New York, New York 10036
(212) 209-4800
KAulet@brownrudnick.com

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*) One Financial Center
Boston, MA 02111
(617) 856-8300
TAxelrod@brownrudnick.com

*General Counsel to the Plan Administrator*

## EXHIBIT C

**Regulator and Investigator Notice List**

## EXHIBIT C

**Regulator and Investigator Notice List**

| NAME | NOTICE NAME | EMAIL/MAILING ADDRESS |
|---|---|---|
| Alabama Securities Commission | Michael Gantt<br>Andrew Schiff<br>Ricky G. Locklar<br>Amanda Senn | michael.gantt@asc.alabama.gov<br>andrew.schiff@asc.alabama.gov<br>ricky.locklar@asc.alabama.gov<br>amanda.senn@asc.alabama.gov<br>asc@asc.alabama.gov |
| Alabama State Banking Department | Scott Corscadden | scott.corscadden@banking.alabama.gov<br>consumer.lending@banking.alabama.gov |
| Alaska Division of Banking and Securities | George Humm<br>Leif Haugen | george.humm@alaska.gov<br>leif.haugen@alaska.gov<br>dbsc@alaska.gov |
| Arizona Corporation Commission Securities Division | Paul Kitchin, Director of Enforcement<br>Matthew Silverman, Assistant Attorney General | pkitchin@azcc.gov<br>matthew.silverman@azag.gov<br>securitiesdiv@azcc.gov |
| Arkansas Securities Department | Campbell McLaurin, Commissioner<br>Karyn Tierney, Attorney | campbell.mclaurin@arkansas.gov<br>karyn.tierney@arkansas.gov<br>asdinfo@arkansas.gov |
| Bermuda Monetary Authority | Moad Fahm<br>Christos Efthymiopoulos<br>Aqsa Zubai<br>Susan Davis-Crockwell<br>Wendell Lodge | mfahmi@bma.bm<br>cefthymiopoulos@bma.bm<br>azubair@bma.bm; sdcrockwell@bma.bm<br>wlodge@bma.bm; fintech@bma.bm |
| Bureau of Securities Regulation New Hampshire Department of State | Eric Forcier, Deputy Secretary<br>Michael Kirwin, Staff Attorney | eric.forcier@sos.nh.gov<br>michael.kirwin@sos.nh.gov<br>securities@sos.nh.gov |

| California Department of Financial Protection and Innovation | Danielle A. Stoumbos, Senior Counsel, Enforcement Division | danielle.stoumbos@dfpi.ca.gov<br>ombuds@dfpi.ca.gov |
|---|---|---|
| Colorado Department of Law | Neal Monaghan<br>Micah Marsh | micah.marsh@coag.gov<br>neal.monaghan@coag.gov<br>uccc@coag.gov |
| Colorado Division of Securities | Janna Fischer, Assistant Attorney General | janna.fischer@coag.gov<br>dora_securitieswebsite@state.co.us |
| Connecticut Department of Banking Securities and Business Investments Division | Kellie Ryan<br>Cynthia Antanaitis, Assistant Director, Securities & Business Investments<br>Stacey Serrano, Staff Attorney | kellie.ryan@ct.gov<br>cynthia.antanaitis@ct.gov<br>stacey.serrano@ct.gov |
| Delaware Department of Finance | Edward Kosmowski, Deputy Attorney General | edward.kosmowski@delaware.gov |
| Delaware Department of Justice Investor Protection Unit | Jillian Lazar, Investor Protection Director | jillian.lazar@delaware.gov<br>investor.protection@delaware.gov |
| District of Columbia Department of Insurance, Securities and Banking | Lilah Blackstone<br>Dereje Belay<br>David O'Brien, Attorney Advisor | lilah.blackstone@dc.gov<br>dereje.belay@dc.gov<br>david.obrien@dc.gov<br>disb@dc.gov |
| Financial Crimes Enforcement Network | Financial Crimes Enforcement Network | bsaefilinghelp@fincen.gov<br>cm.bsaefiling@fincen.gov<br><u>Mailing address</u>:<br>P.O. Box 39<br>Vienna, Virginia 22183 |

2

| | | |
|---|---|---|
| Florida Office of Financial Regulation | Melinda Butler | melinda.butler@flofr.gov<br>agency.clerk@flofr.gov |
| Georgia Department of Banking and Finance | Dominique Williams | dwilliams@dbf.state.ga.us<br>msb@dbf.state.ga.us |
| Georgia Secretary of State, Securities Division | Noula Zahiris, Securities Division Director | nzaharis@sos.ga.gov |
| Hawaii DCCA-Securities Enforcement Branch | Keola Fong, Securities Enforcement Attorney | kfong@dcca.hawaii.gov<br>seb@dcca.hawaii.gov |
| Idaho Department of Finance, Securities Bureau | Kurt Merritt | kurt.merritt@finance.idaho.gov |
| Idaho Office of Attorney General | Stephanie Guyon, Deputy Attorney | stephanie.guyon@ag.idaho.gov<br>aglabrador@ag.idaho.gov |
| Illinois Department of Financial and Professional Regulation | Mila Farbstein | emiliya.farbstein@illinois.gov<br>fpr.consumercredit@illinois.gov |
| Illinois Secretary of State Securities Department | Paula Bouldon<br>John Reding, Assistant Attorney General | pbouldon@ilsos.gov<br>john.reding@ilag.gov |
| Indiana Securities Division | William Brainard<br>Heather Crockett, Deputy Attorney General | wbrainard@sos.in.gov<br>heather.crockett@atg.in.gov<br>securities@sos.in.gov |

3

| Iowa Division of Banking Finance Bureau | Randy Johnson | andy.johnson@idob.state.ia.us<br>fblicensing@iowa.gov |
|---|---|---|
| Iowa Insurance Division Securities and Regulated Industries Bureau | Andrew Hartnett, Assistant Commissioner for Securities and Regulated Industries<br>Amanda Robinson<br>Heather Schaffer<br>Tyler Eason, Assistant Attorney General | andrew.hartnett@iid.iowa.gov<br>amanda.robinson@iid.iowa.gov<br>heather.schaffer@iid.iowa.gov<br>tyler.eason@ag.iowa.gov |
| Internal Revenue Service | George Hellerman, Bankruptcy Specialist<br><br>Internal Revenue Service | george.p.hellerman@irs.gov<br><u>Mailing address(es)</u>:<br>955 S. Springfield Ave, Bldg. A<br>Springfield, NJ 07081<br><br>1111 Constitution Ave, NW<br>Washington, DC 20224 |
| Kansas Office of the State Bank Commissioner | Karla Meyer | karla.meyer@osbckansas.org<br>licensing@osbckansas.org |
| Kansas Securities Commissioner | Jack Clayton Johnson, Assistant General Counsel | clay.johnson@ks.gov<br>kdoi@ks.gov |
| Kentucky Department of Financial Institutions, Securities Division | Marni Gibson<br>Michael Barnett, Staff Attorney | marni.gibson@ky.gov<br>michael.barnett@ky.gov<br>kfi@ky.gov |
| Louisiana Commissioner of Securities Louisiana Office of Financial Institutions | P. Scott Jolly, Deputy Commissioner<br>Susan H. Rouprich, General Counsel | pjolly@ofi.la.gov<br>srouprich@ofi.la.gov<br>ofila@ofi.la.gov |

| Maine, Office of Securities | J. Christopher Parr, General Counsel | j.christopher.parr@maine.gov<br>karla.black@maine.gov |
|---|---|---|
| Maryland Commissioner of Financial Regulation | Shantell Stackhouse | shantell.stackhouse@maryland.gov<br>md-dllr-ocfr@info.maryland.gov |
| Maryland Office of the Attorney General, Securities Division | Max Brauer, Assistant Attorney General | mbrauer@oag.state.md.us<br>securities@oag.state.md.us |
| Massachusetts Department of Higher Education | Christopher Grimaldi, Assistant General Counsel<br>Alex Nally, Deputy General Counsel | cgrimaldi@dhe.mass.edu<br>anally2@dhe.mass.edu |
| Massachusetts Securities Division | Patrick Costello<br>Lucinda Rivera | patrick.costello@state.ma.us<br>lucinda.rivera@state.ma.us<br>securities@sec.state.ma.us |
| Michigan Department of Licensing and Regulatory Affairs - Corporations, Securities & Commercial Licensing, Securities & Audit Division | Stephen Brey<br>Jonathan Comish, Assistant Attorney General | breys@michigan.gov<br>comishj@michigan.gov<br>lara-cscl-securities-audit@michigan.gov |
| Michigan Department of Insurance and Financial Services | Michigan Department of Insurance and Financial Services | difs-fin-info@michigan.gov |
| Minnesota Department of Commerce | Deb Knooihuizen<br>Michael Carter, Audit Director, Enforcement Division | deb.knooihuizen@state.mn.us<br>michael.carter@state.mn.us<br>consumer.protection@state.mn.us |
| Mississippi Department of Banking and Consumer Finance | Susan Cox | susan.cox@dbcf.ms.gov<br>consumer@dbcf.ms.gov |

| | | |
|---|---|---|
| Mississippi Secretary of State | Drew Compton, Legal Director, Securities Division | drew.compton@sos.ms.gov |
| Missouri Division of Finance | Ted Nickel<br>Joe Crider | ted.nickel@dof.mo.gov<br>joe.crider@dof.mo.gov<br>finance@dof.mo.gov |
| Missouri Securities Division | Douglas M. Jacoby, Director of Enforcement<br>Blake Shier, Chief Counsel | douglas.jacoby@sos.mo.gov<br>blake.shier@sos.mo.gov<br>securities@sos.mo.gov |
| Montana Commissioner of Securities and Insurance Office of the Montana State Auditor | Lynne Egan, Deputy Securities Commissioner<br>Chris McConnell, Legal Counsel | legan@mt.gov<br>christopher.mcconnell@mt.gov<br>csi@mt.gov |
| Nebraska Department of Banking & Finance | Michael Cameron, Legal Counsel | mike.cameron@nebraska.gov |
| Nevada Secretary of State | Erin M. Houston, Securities Administrator and Deputy Secretary of State | ehouston@sos.nv.gov<br>sosmail@sos.nv.gov |
| Nevada Department of Business & Industry Financial Institutions | Julie Hanevold | jhanevold@fid.state.nv.us<br>fidcpa@fid.state.nv.us |
| New Hampshire Banking Department | Nancy Burke | nancy.d.burke@banking.nh.gov<br>licensing-nhbd@banking.nh.gov |
| New Jersey Bureau of Securities | Amy Kopleton<br>John Seuberth | kopletona@dca.njoag.gov<br>seuberthj@dca.njoag.gov<br>njbos@dca.lps.state.nj.us |

| New Jersey Department of Banking and Insurance | Howard Wegener | howard.wegener@dobi.nj.gov<br>bliconline@dobi.nj.gov |
|---|---|---|
| New Mexico Financial Institutions Division | Isaac Garcia<br>Eric Valdez | isaac.garcia@state.nm.us<br>eric.valdez@rld.nm.gov |
| New Mexico Regulation and Licensing Department<br>Securities Division | Benjamin R. Schrope, Acting Director, Securities Division | benjamin.schrope@state.nm.us |
| New York State Attorney General | Jesse Devine, Assistant Attorney General<br>Kenneth Haim | jesse.devine@ag.ny.gov<br>kenneth.haim@ag.ny.gov |
| North Carolina Commissioner of Banks | Angela Maynard<br>Kristin Rice | amaynard@nccob.gov<br>krice@nccob.gov<br>moneytransmitters@nccob.gov |
| North Carolina Secretary of State Securities Division | J. Anthony Penry, Deputy Securities Administrator | apenry@sosnc.gov<br>secdiv@sosnc.gov |
| North Dakota Department of Financial Institutions | North Dakota Department of Financial Institutions | dfi@nd.gov |
| North Dakota Securities Department | Michael F. Daley<br>Bailey Doll<br>Carl Karpinski, Enforcement Attorney | mfdaley@nd.gov<br>badoll@nd.gov<br>cmkarpinski@nd.gov<br>ndsecurities@nd.gov |
| Ohio Division of Financial Institutions Money Transmitters | Michael Sabula | michael.sabula@com.ohio.gov<br>web.dfi@com.ohio.gov |

| Ohio Division of Securities | Janice Hitzeman<br>Chad Kohler, Assistsant Attorney General | janice.hitzeman@com.ohio.gov<br>chad.kohler@ohioago.gov<br>securitiesgeneral.questions@com.state.oh.us |
|---|---|---|
| Oklahoma Department of Securities | Laura J. Swingle<br>Rob Fagnant<br>Gerri Kavanaugh, General Counsel | lswingle@securities.ok.gov<br>rfagnant@securities.ok.gov<br>gkavanaugh@securities.ok.gov |
| Oklahoma Office of the Administrator of Consumer Credit | Steven Coates, Assistant Deputy Administrator/General Counsel | scoates@okdocc.ok.gov<br>licensing@okdocc.ok.gov |
| Oregon Department of Consumer and Business Services | Caroline Smith<br>David Venables, Financial Enforcement Officer - Staff Attorney | caroline.l.smith@dcbs.oregon.gov<br>david.w.venables@dcbs.oregon.gov<br>dcbs.info@dcbs.oregon.gov |
| Oregon Division of Financial Regulation | Cesar Sierra | cesar.sierra@dcbs.oregon.gov<br>web.insagent@oregon.gov |
| Pennsylvania Department of Banking and Securities, Bureau of Securities Licensing | Seamus Dubbs, Assistant Counsel | sedubbs@pa.gov<br>ra-bnsecuritiesreg1@pa.gov |
| Puerto Rico Office of the Commissioner of Financial Institutions, Securities Regulation Division | Damaris Mendoza-Román, Assistant Commissioner, Securities Regulation Division | damarism@ocif.pr.gov<br>informa@oig.pr.gov |
| Rhode Island Department of Business Regulation, Securities Division | Donald DeFedele, Associate Director/Chief Securities Examiner | donald.defedele@dbr.ri.gov<br>dbr.secinquiry@dbr.ri.gov |
| South Carolina Attorney General's Office, Securities Division | Blake Kennedy, Assistant Attorney General<br>Jonathan Williams | blakekennedy@scag.gov<br>jwilliams@scag.gov |

| | | |
|---|---|---|
| South Carolina Office of the Attorney General, Money Services Division | The Honorable Alan Wilson | msb@scag.gov |
| South Dakota Department of Labor and Regulation | Brock Jensen | brock.jensen@state.sd.us<br>sdinsurance@state.sd.us |
| South Dakota Division of Insurance | Travis Jordan, Assistant Director<br>Clayton Grueb, Special Assistant Attorney General | travis.jordan@state.sd.us<br>clayton.grueb@state.sd.us<br>sdinsurance@state.sd.us |
| Tennessee Department of Commerce and Insurance | Anthony Glandorf<br>Maliaka Bass<br>Gina Baker Hantel, Senior Assistant Attorney General | anthony.glandorf@tn.gov<br>maliaka.bass@tn.gov<br>gina.hantel@ag.tn.gov |
| Tennessee Department of Financial Institutions | Jack Lay | jack.lay@tn.gov<br>tdfi.licensing@tn.gov |
| Texas Department of Banking | Robert Nichols, General Counsel | robert.nichols@dob.texas.gov<br>txdob.email@dob.texas.gov |
| Texas State Securities Board | Joe Rotunda, Director, Enforcement Division<br>Rachel Anderson Rynders, Attorney, Enforcement Division<br>Tina Lawrence | jrotunda@ssb.texas.gov<br>rrynders@ssb.texas.gov<br>tlawrence@ssb.texas.gov |
| U.S. Commodity Futures Trading Commission | Joseph Platt<br>Nina Ruvinsky<br>Carlin Metzger<br>Elizabeth Pendleton<br>Bryan Hsueh | jplatt@cftc.gov<br>nruvinsky@cftc.gov<br>cmetzger@cftc.gov<br>ependleton@cftc.gov<br>bhsueh@cftc.gov |

| | Benjamin Rankin | brankin@cftc.gov |
| | Andrew Rodgers | arodgers@cftc.gov |
| | James Wheaton | jwheaton@cftc.gov |
| U.S. Department of Justice | Nicolas Roos | nicolas.roos@usdoj.gov |
| | Danielle Sassoon | danielle.sassoon@usdoj.gov |
| U.S. Securities and Exchange Commission | Mary Kay Dunning | dunningm@sec.gov |
| | Ivan Snyder | snyderi@sec.gov |
| | Gwen Licardo | licardoga@sec.gov |
| | Kim Hane | kimha@sec.gov |
| U.S. Virgin Islands Division of Banking Insurance & Financial Regulation, Office of the Lieutenant Governor | Glendina Matthew, Esq., Acting Director<br>Chery Charleswell, Acting Assistant Director/Chief Financial Services Examiner<br>Dolace Mclean | glendina.matthew@lgo.vi.gov<br>cheryl.charleswell@lgo.vi.gov<br>dolace.mclean@lgo.vi.gov |
| Utah Department of Financial Institutions | Cait Curley | cecurley@utah.gov<br>msb.dfi@utah.gov |
| Utah Securities Division | Jason E. Sterzer, Division Director | jsterzer@utah.gov<br>securities@utah.gov |
| Vermont Department of Financial Regulation, Securities Division | Ethan McLaughlin and Beth Sides | ethan.mclaughlin@vermont.gov<br>beth.sides@vermont.gov<br>dfr.securitiesinfo@vermont.gov |
| Virginia State Corporation Commission | Alex Page, Associate General Counsel<br>Keith Cook, Senior Investigator<br>Doug Joyce, Director of Securities and Retail Franchising | alex.page@scc.virginia.gov<br>keith.cook@scc.virginia.gov<br>doug.joyce@scc.virginia.gov<br>sccinfo@scc.virginia.gov |

| Washington Department of Financial Institutions | Amanda Starnes | amanda.starnes@dfi.wa.gov<br>dfi@dfi.wa.gov |
|---|---|---|
| Washington Department of Financial Institutions | Huong Lam | huong.lam@dfi.wa.gov<br>dfi@dfi.wa.gov |
| West Virginia State Auditor's Office Securities Commission | Lisa Hopkins, Deputy Commissioner of Securities<br>Michael Nusbaum, Senior Regulatory Counsel<br>Vincent Smith, General Counsel | lisa.hopkins@wvsao.gov<br>michael.nusbaum@wvsao.gov<br>vincent.smith@wvsao.gov<br>securities@wvsao.gov |
| Wisconsin Department of Financial Institutions, Division of Securities | Kortney L. Anderson, Budget and Policy Manager<br>Robin S. Jacobs, Attorney Supervisor | kortneyl.anderson@dfi.wisconsin.gov<br>robin.jacobs@dfi.wisconsin.gov<br>dficorporations@dfi.wisconsin.gov |
| Wyoming Secretary of State, Compliance Division | Ryan Anderson<br>Kelly Janes<br>Joe Rubino, Chief Policy Officer and General Counsel | ryan.anderson@wyo.gov<br>kelly.janes@wyo.gov<br>joe.rubino1@wyo.gov<br>compliance@wyo.gov |

## **EXHIBIT D**

**Proposed Order**

> **UNITED STATES BANKRUPTCY COURT**
> **DISTRICT OF NEW JERSEY**
> **Caption in Compliance with D.N.J. LBR 9004-1(b)**

| In re: | Chapter 11 |
|---|---|
| BLOCKFI INC., *et al.* | Case No. 22-19361 (MBK) |
| Debtors.[1] | (Jointly Administered under a Confirmed Plan[2]) |
| | Hearing Date: May 15, 2025 |

**ORDER GRANTING**
**WIND-DOWN DEBTORS' MOTION FOR AN ORDER AUTHORIZING**
**ABANDONMENT AND DISPOSAL OF ALL REMAINING DATA AND INVENTORY**

The relief set forth on the following pages, numbered two (2) through four (4), is hereby

**ORDERED.**

---

[1]   The Wind-Down Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: BlockFi Inc. (0015); BlockFi Trading LLC (2487); BlockFi Lending LLC (5017); BlockFi Wallet LLC (3231); BlockFi Ventures LLC (9937); BlockFi International Ltd. (N/A); BlockFi Investment Products LLC (2422); BlockFi Services, Inc. (5965) and BlockFi Lending II LLC (0154). The location of the Wind-Down Debtors' service address is c/o M3 Partners, 1700 Broadway, 19th Floor, New York, NY 10019.

[2]   On October 3, 2023, the Court entered an order confirming the Third Amended Joint Chapter 11 Plan of BlockFi Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications). [Docket No. 1609]

<table>
<tr>
<td>

**BROWN RUDNICK LLP**
Kenneth J. Aulet, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
(212) 209-4800
kaulet@brownrudnick.com


**BROWN RUDNICK LLP**
Tristan Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617)856-8300
taxelrod@brownrudnick.com

*General Counsel for the Plan Administrator*

</td>
<td>

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.

110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
DStolz@genovaburns.com
DClarke@genovaburns.com

*Local Counsel for the Plan Administrator*

</td>
</tr>
</table>

Upon consideration of the *Wind-Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of All Remaining Data and Inventory* (the "Motion")[1] and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and Standing Order 12-1 (Simandle, C.J.), Standing Order of Reference to the Bankruptcy Court Under Title 11, dated September 18, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having found and determined that the relief sought in the Motion is in the best interest of all parties-

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2

(Page 3)

| | |
|---|---|
| Debtor: | BlockFi Inc., et al. |
| Case no.: | 22-19361 (MBK) |
| Caption of Order: | Order Granting Wind-Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of all Remaining Data and Inventory. |

in-interest, including without limitation, that the requested relief adequately protects the public against any danger posed by destruction or abandonment of the Wind-Down Debtors' Data Inventory; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record of the Hearing, and all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Wind-Down Debtors are authorized, but not directed, to (a) initiate requisite processes to carry out the relief granted herein; and (b) upon entry of a final decree closing the Chapter 11 Cases, abandon and effectuate disposal of all remaining Data Inventory, information, and assets that are held, maintained, or otherwise stored by BlockFi as of the date of entry of such final decree.

3.      As applicable, the Wind-Down Debtors may, or may seek further authority from the Court to, (a) retain certain Data Inventory that may be subject to a Subpoena or otherwise, as determined by the Plan Administrator in their business judgment; (b) engage a third-party data custodian to preserve and retain such Data Inventory; (c) establish and maintain appropriate reserves to cover reasonably foreseeable costs associated with such Data Inventory retention and third-party custodian engagement; and (d) approve and implement any other procedures or protocols that may be necessary to protect the Data Inventory that is subject to such retention.

4.      Unless otherwise expressly directed by further order of the Court, all past and

(Page 4)

| | |
|---|---|
| Debtor: | BlockFi Inc., et al. |
| Case no.: | 22-19361 (MBK) |
| Caption of Order: | Order Granting Wind-Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of all Remaining Data and Inventory. |

---

current BlockFi Professionals are hereby authorized to retain or destroy any held data and information pertaining to the Chapter 11 Cases and BlockFi as the respective Professional deems appropriate under applicable bankruptcy and non-bankruptcy law, consistent with the relief granted herein.

5.      Nothing in this Order shall be deemed to limit and/or exclude the rights and obligations of BlockFi International Ltd. and the Joint Liquidators to retain any data in compliance with the laws of Bermuda.

6.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.