

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                              **609-858-9360**
**United States Bankruptcy Court**

July 18, 2025

*All Counsel of Record*

Re: <u>BlockFi Inc., et al.</u>
Case No.: 22-19361

Dear Counsel:

Presently before the Court is a Motion for Reconsideration (ECF No. 2542) and a Motion to

Expand Gatekeeper Provision to Include Claims Against Gemini Trust Company and Related

Parties (ECF No. 2543) ("Supplemental Motion") (collectively, "Motions") filed by Dereje Lakew

("Movant"). Movant seeks reconsideration of this Court's April 30th, 2025, Amended Ruling and

Order Denying Leave to Pursue Claims Against Released Third Parties (ECF No. 2533) and further

seeks an order granting relief from the gatekeeper provision, thereby permitting Movant to assert

claims in state court against Gemini Trust Company ("Gemini") and related parties. Plan

Administrator, On Behalf of the Post-Confirmation Debtor opposes the Motions (ECF No. 2551).

Former Executives likewise oppose the Motions (ECF No. 2554). Additionally, Gemini opposes

the Motions (ECF No. 2555). The Court has considered fully the parties' submissions.  For the

reasons set forth below, Movant's Motions will be **DENIED**.

1

## I.      Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended on September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) & (O). Venue is proper in this Court pursuant to 28 U.S.C. §1408.

## II.     Background

The factual background and procedural history of this matter are well known to the parties and the portions relevant to the instant Motions are set forth in this Court's April 30th, 2025 amended ruling and order. As such, they will not be repeated in detail here. In brief, Movant entered into a loan agreement with BlockFi, Inc. and its debtor affiliates (collectively, "BlockFi" or "Wind-Down Debtors" or "Debtors" as applicable), borrowing $20,190 secured by Bitcoin collateral. Movant alleges he was not informed that his collateral would be used for trading, risky third-party lending, or rehypothecation, and claims the Former Executives breached fiduciary duties by failing to protect assets and making false representations about the company's stability. Movant argues his claims arise from fraud, willful misconduct, post-petition conduct, and thus should not be barred by the releases in the Third Amended Joint Chapter 11 Plan, confirmed by the Court on October 3, 2023 ("Plan"). Movant further states New Jersey law should apply with regard to whether claims are direct or derivative. Former Executives contend the claims are derivative, and therefore barred by the releases under the Plan and likewise subject the Gatekeeper Provision thereunder.[1] Former

---

[1] As represented in the Voting Report (ECF No. 1607, Ex. A), each class of creditors entitled to vote on the Plan overwhelmingly voted to accept the Plan. The Gatekeeper Provision states "before an entity that opted out of the releases, or was deemed to reject the Plan, may assert a claim or cause of action against the Former D&Os (all persons who served as officers or directors of the Debtors during these Chapter 11 Cases), such entity must obtain a final order from the Bankruptcy Court determining that the claim or cause of action is direct (rather than derivative). The Bankruptcy Court retains sole and exclusive jurisdiction to determine whether a claim or cause of action is direct or derivative".

Executives also argue Movant lacks standing because the alleged harm is shared by all creditors, and Delaware law applies. This Court previously determined that Delaware law applies due to the governing law clause in the Loan Security Agreement[2], and found Movant's claims to be derivative, as the harm affects all creditors equally. Therefore, the Court denied Movant's motion for leave to pursue these claims.

In the instant Motion for Reconsideration, Movant advances four arguments in support of his position. First, Movant contends that the Plan's Gatekeeper Provision is inconsistent with binding Supreme Court precedent and controlling law, specifically citing the Supreme Court's decision in *Harrington v. Purdue Pharma* 603 U.S. 204 (2024). Movant argues that he did not consent to any third-party releases. He contends that the Gatekeeper Provision blocks his ability to bring direct claims and violates his constitutional rights, including his Seventh Amendment right to a jury trial.

Second, Movant challenges the enforcement of the governing law clause contained in the Loan and Security Agreement ("LSA"), which designates Delaware as the exclusive forum for related disputes. Movant cites *Wilfred MacDonald, Inc. v. Cushman, Inc.*, 256 N.J. Super. 58 (App. Div. 1992), contending that New Jersey law should apply.

Third, Movant again maintains that his claims are direct rather than derivative in nature. Movant asserts that his injuries stemmed from individualized, intentional misrepresentations and deceptive acts perpetrated by Former Executives, and not from harm to the debtor entity generally. He contends that the Court's prior focus on the economic character of the loss narrows the scope of harm and fails to account for the physical manifestations of distress he has experienced,

---

[2] The Loan and Security Agreement expressly provides that Delaware law governs the terms of the agreement, regardless of any conflicting laws. *See LSA*, ECF No. 1341, at 27 ("Except for the arbitration provision, where applicable, which shall be governed by federal law, this Agreement will be governed by the laws of the State of Delaware without regard to its conflicts of law provisions.").

including the exacerbation of a chronic dermatological condition and accompanying emotional suffering.

Fourth, Movant challenges the Gatekeeper Provision as procedurally inequitable and burdensome. He asserts that the provision imposes a disproportionate burden by requiring claimants to disclose the details of their claims and justify their legal and factual basis as a precondition to initiating suit. Movant argues that such a mechanism creates an asymmetrical procedural landscape that advantages the Plan Administrator and immunizes potentially wrongful conduct. He further asserts that Debtor's counsel has never directly refuted the allegations of fraud, and that the Gatekeeper Provision cannot be wielded to insulate alleged bad actors from judicial scrutiny.

In the contemporaneously filed Motion to Expand the Gatekeeper Provision, Movant asserts that Gemini, having facilitated or permitted the rehypothecation of customer assets, undertook fiduciary obligations and made material misrepresentations concerning the scope and substance of consumer protections. Accordingly, Movant argues that Gemini's conduct should also be subject to judicial inquiry and that the Gatekeeper Provision should not be construed so broadly as to preclude claims against non-debtor third parties who allegedly participated in or contributed to the underlying fraud.

## III.    Discussion[3]

### A.   Standard for a Motion for Reconsideration under Federal Rule of Civil Procedure 59(e)

---

[3] Movant's arguments are multifaceted and at times hard to follow. At the outset, this Court notes that the Federal Rules of Bankruptcy Procedure do not recognize a "motion for reconsideration." A "motion for reconsideration" is not mentioned in the Federal Rules of Bankruptcy Procedure, nor is it provided for in the Local Bankruptcy Rules. However, litigants may seek relief from any order of the bankruptcy court under Federal Rules of Bankruptcy Procedure 9023 and 9024, which incorporate Federal Rules of Civil Procedure 59(e) and 60(b). Therefore, the Court addresses these two alternate bases for reconsideration.

A motion under Federal Rule of Civil Procedure 59(e) is a motion to alter or amend a judgment and is applicable to bankruptcy cases under Rule 9023 of the Federal Rules of Bankruptcy Procedure. A court should only grant a Rule 59(e) motion where the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice. *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018) (internal quotations and citations omitted). This Court recognizes that, "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of, or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." *In re Christie*, 222 B.R. 64, 67–68 (Bankr. D.N.J. 1998).

### B. Standard for a Motion for Reconsideration under Federal Rule of Civil Procedure 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure is applicable to bankruptcy cases under Rule 9024 of the Federal Rules of Bankruptcy Procedure, and provides that a party seeking relief from a judgment or order must satisfy at least one of the six (6) enumerated bases for relief from any order—many of which mirror the grounds for relief in a Rule 59(e) motion, including "mistake, inadvertence, surprise, or excusable neglect". FED. R. CIV. PRO. 60(b)(1). Rule 60(b) also includes a "catchall" basis which allows reconsideration of a prior order for "any other reason that justifies relief". FED. R. CIV. P. 60(b)(6). The Supreme Court has recently reaffirmed that a motion for reconsideration under Rule 60(b) is an extraordinary remedy and is only appropriate in select and narrow instances. *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612 (2025).

### IV. Analysis

After reviewing the submissions, the Court finds that Movant has failed to satisfy the stringent standard required under Rule 59(e) for reconsideration. As will be discussed, Movant identifies no

intervening change in controlling law, no newly discovered evidence previously unavailable, and no clear error of law or fact that would result in manifest injustice.[4] Instead, Movant impermissibly attempts to relitigate issues already decided and to reassert arguments that this Court fully considered and rejected. Such use of a motion for reconsideration as a vehicle to reargue decided matters is improper and insufficient to warrant relief. *See Blystone v. Horn,* 664 F.3d 397, 415 (3d Cir. 2011); *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

The Court further finds that none of the grounds for reconsideration has been sufficiently satisfied under Rule 60(b) so as to warrant relief from the Court's prior decision. Movant points to no mistake, inadvertence, surprise, excusable neglect, fraud, or newly discovered evidence justifying reconsideration. Further, Movant has not identified any circumstance making enforcement of the Court's prior order inequitable. Rather, Movant impermissibly attempts to relitigate issues already decided. *See United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003); *In re G-I Holdings, Inc*., 472 B.R. 263, 279 (Bankr. D.N.J. 2012) ("Rule 60(b) motions cannot serve as an appeal or relitigation of previously contested issues.").

### A.  Movant's argument re: governing law

Movant contends the Court should apply New Jersey law where claims based on individual harm and fraud are recognized as direct, not derivative; this assertion is incorrect. As discussed in this Court's initial ruling, the Court correctly applied Delaware law, which mandates that a plaintiff asserting direct claims must allege particularized facts demonstrating a distinct injury—an injury

---

[4] The Motion for Reconsideration (ECF No. 2542) expresses concern regarding the Gatekeeper Provision and function, including the introduction of arguments not previously asserted. Notwithstanding, the Motion fails to identify and specify any basis for relief (e.g., change in law, new evidence, mistake, fraud, etc.). Indeed, no such basis exists. There is no change in law, new evidence, mistake, fraud, or other grounds to attack the Gatekeeper Provision, particularly at this procedural posture. Moreover, the Gatekeeper Provision is an integral negotiated plan provision to or from which Movant failed to object or take timely appeal.

separate and apart from that suffered by other creditors or stockholders.[5] Further, applying New Jersey law does not change the result. Indeed, New Jersey law mirrors the same requirement as Delaware, demanding a distinct injury to sustain a direct claim. *Compare Onyx Enters. Can., Inc. v. Royzenshteyn*, 2025 WL 62834, at *6 (D.N.J. Jan. 8, 2025) (holding that a plaintiff must allege a special injury—that is, harm unique to the plaintiff and not shared by other shareholders or creditors—to sustain a direct claim); *with Tooley*, 845 A.2d at 1039 (holding that a claim is direct if the plaintiff can show that (1) the alleged harm was suffered by the stockholder and not the corporation, and (2) the recovery would benefit the stockholder and not the corporation).

### B.  Movant's argument re: direct vs. derivative claim

Movant alleges no distinct injury. His attempt to recharacterize derivative claims as direct claims is unsupported by either law or fact. Generalized harm to BlockFi or its estate is insufficient. *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008).His allegations assert harm common to BlockFi's customer base as a whole, not any individualized harm unique to him. Movant explains that he personally lost collateral, but this loss is not unique; every BlockFi customer who deposited funds or collateral suffered the same harm. The mere fact that Movant, like other customers, lost collateral as a result of BlockFi's collapse does not convert his claim into a direct injury.

Movant also asserts that he suffered emotional harm and a chronic skin condition. However, such harm is not the type of particularized economic injury Delaware law recognizes as supporting a direct claim. Claims for personal emotional distress or physical ailments arising from generalized

---

[5] The Court previously ruled that the applicable terms of the agreement selected Delaware law to govern the agreement, and such provisions are enforceable absent a demonstration that such choice of law is unreasonable or contrary to public policy. No such showing has been made. Additionally, Movant cites *Wilfred MacDonald, Inc. v. Cushman, Inc.*, 256 N.J. Super. 58 (App. Div. 1992), contending that New Jersey law should apply.  However, in that case the court held that "such [choice of law] clauses will be enforced unless the party objecting thereto demonstrates (1) the clause is a result of fraud or overweening bargaining power; (2) enforcement in a foreign forum would violate strong public policy of the local forum; or (3) enforcement would be seriously inconvenient for the trial." No such showing has been made here.

harm to the Debtors do not establish the kind of distinct injury required to transform a derivative claim into a direct one. *See, e.g. Tooley* 845 A.2d at 1031 (establishing test for whether a stockholder's claim is derivative or direct). The record is devoid of any factual allegations establishing that Movant sustained a direct injury distinct from the injury allegedly suffered by all BlockFi customers.

Lastly, Movant does not identify how his situation is distinct from the harm faced by other creditors, nor does he point to specific misrepresentations or acts of negligence that directly affected him in a way that was different from others. Movant's failure to plead particularized facts demonstrating a distinct injury undermines his attempt to frame his claims as direct. Given that Movant has not demonstrated any particularized harm beyond what other creditors have suffered, the claims remain derivative and fall within the scope of the releases in the Confirmed Plan. *See, e.g.*, *Cutaia,* 951 A.2d 733 (stating that unless a plaintiff establishes that he "suffered some individualized harm not suffered by all of the stockholders at large [,]" then the claim is not direct) (citing *Tooley*, 845 A.2d at 1039).[6]

### C. Movant's argument re: Gatekeeper Provision is unequitable and burdensome

Even if Movant's claims were direct—which they are not—the Gatekeeper Provision does not bar direct claims. Therefore, Movant's assertion that the Gatekeeper Provision immunizes wrongful conduct is unfounded. The Plan explicitly preserves direct claims for creditors who properly opted out of the releases, as Movant did. The Gatekeeper Provision serves as a procedural

---

[6] The Court notes that Movant acknowledges the generalized nature of the harm—suffered by all retail loan customers—in his surreply (ECF No. 2549) supporting his objection to the Wind Down Debtors' Motion for an Order Authorizing Abandonment and Disposal of All Company Data (ECF No. 2530). Movant states that he raises these issues "with the understanding that it reflects the shared concerns of many retail loan clients he has encountered, both as a member of the Ad Hoc Committee for Retail Loan Clients and the broader community." *Lakew Sur-Reply* 2, ECF No. 2549.

mechanism, not a substantive bar. It requires the Court to determine, in the first instance, whether a proposed claim is direct and not subject to the Plan's releases before a claimant may proceed. This ensures that only colorable direct claims are asserted, while derivative claims—claims that belong to the estate—remain subject to the Plan's release provisions.

Further, the Gatekeeper Provision operates as a procedural safeguard to protect estate resources, avoid excessive litigation, and uphold the finality of the Plan. It does not extinguish preserved direct claims, nor does it infringe upon Movant's substantive rights or his right to a jury trial. As the Supreme Court has made clear, by filing proof of claim and participating in the bankruptcy process, Movant subjected himself to this Court's equitable jurisdiction and procedural requirements. *See In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 406-07 (3d Cir. 2009) (explaining that by filing a proof of claim, a creditor subjects itself to the Court's equitable jurisdiction and procedures); *In re Amtrol Holdings, Inc.*, 384 B.R. 686, 690 (Bankr. D. Del. 2008) (same); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14 (1989) (creditor's submission of a proof of claim subjects it to bankruptcy court's equitable power to determine the claim and related matters). Movant retained the right to assert any direct claims—provided he first demonstrated to this Court that such claims were not derivative and not released by the Plan. He has failed to satisfy that requirement. The procedural gatekeeping function is consistent with Movant's due process rights and ensures that the Court, not the claimant, determines the proper classification of the claims before any litigation proceeds. *See In re Winstar*, 554 F.3d at 406-07; *Amtrol*, 384 B.R. at 690.

### D.  Movant's argument re: Gatekeeper Provision is inconsistent with Purdue

Movant's reliance on *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024) is likewise misplaced. That decision addressed the propriety of nonconsensual third-party releases of direct

claims in the context of a plan of reorganization. The Plan in these cases does not release direct claims for creditors who opted out of the third-party releases, such as Movant has done here. Rather, the Plan releases only derivative claims—claims that belong to the estate—and preserves direct claims, subject to the Gatekeeper Provision's procedural requirements. Nothing in *Purdue* alters this Court's prior determination that Movant's claims are derivative. *Purdue* did not address the legal standard for distinguishing between direct and derivative claims, nor did it alter the well-established requirement under Delaware law that a plaintiff must allege a distinct and particularized injury to assert a direct claim. *See Cutaia*, 951 A.2d 733. The *Purdue* decision therefore has no bearing on the Court's findings in this case.

Last, Movant's argument that Debtor's counsel has not "directly refuted" his fraud allegations misplaces the burden. The Gatekeeper Provision requires Movant to show that he has a colorable direct claim; it does not obligate Released Parties or the Plan Administrator to preemptively refute unsupported allegations.

To the extent the Motions attempt to challenge the inclusion of the Gatekeeper Provision, such challenge is barred under 11 U.S.C. § 1141(a), the doctrine of res judicata, and principles of finality and timeliness.[7] The Court finds that Movant's challenge to the Gatekeeper Provision constitutes an untimely collateral attack on the Confirmation Order and Plan, in violation of 11 U.S.C. § 1141(a). Section 1141(a) of the Bankruptcy Code provides that the provisions of a confirmed plan bind the debtor, creditors, equity security holders, and all other parties in interest. The

---

[7] The elements of res judicata under New Jersey law are satisfied here. *See In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (explaining that res judicata bars claims that were, or could have been, brought where: (1) a final judgment on the merits was entered in a prior suit; (2) involving the same parties or their privies; (3) and the subsequent action is based on the same cause of action) (citations omitted).  Alternatively, the doctrine of collateral estoppel bars relitigation of any issue that was actually decided. *Tarus v. Borough of Pine Hill,* 189 N.J. 497, 916 A.2d 1036, 1050 (2007) (explaining that collateral estoppel "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action"). Here, the issue relative to the Gatekeeper Provision were contested, litigated, and resolved as part of the confirmation process for the Plan confirmed on October 3, 2023.

10

Confirmation Order in these cases, which incorporated the Gatekeeper Provision and the Plan's release provisions, constitutes a final judgment with preclusive effect. Movant failed to raise a timely objection to the Plan at confirmation and elected not to appeal the Confirmation Order. Consequently, Movant cannot now mount a collateral attack on the Confirmation Order or seek to unwind the settled rights and obligations embodied in that Order and Plan. *See In re Szostek*, 886 F.2d 1405, 1408-09 (3d Cir. 1989) (confirmed plan is res judicata as to all issues that could have been raised).

### V.      Supplemental Motion

Gemini qualifies as a Released Party under the Plan because it served as Debtor's agent and custodian in connection with the Debtors' business operations. The Plan's definitions of "Released Party" and "Related Party" expressly encompass agents, professionals, and similar entities. Additionally, Gemini faithfully discharged its obligations to Debtors with respect to assets on the Gemini exchange. Movant's allegations concerning Gemini arise entirely from its conduct as custodian—conduct that, even accepting Movant's characterization, affected all BlockFi customers generally and does not reflect any particularized wrongdoing directed uniquely at Movant. Claims based on generalized conduct are derivative and therefore subject to the Plan's releases. The Supplemental Motion asserts no specific facts or legal theory that would support any colorable claims against Gemini, its owners, or related parties. The allegations regarding these individuals or entities are vague, conclusory, and lack any assertion of individualized harm.

As noted, derivative claims based on generalized harm to Debtors' customers or the Debtors' estate cannot be transformed into direct claims through unsupported allegations against related parties. Additionally, Movant's Supplemental Motion is untimely and procedurally improper. The Confirmation Order, which incorporated the Plan's release provisions and the Gatekeeper

Provision, became effective over a year ago. Movant had full notice of the Plan and the status of Released Parties at confirmation and elected not to object or appeal. Furthermore, Movant failed to submit any proposed complaint or to make the required showing under the Gatekeeper Provision that his claims against Gemini are direct and not subject to the Plan's releases.

## VI.     Conclusion

For the reasons discussed, the Court **DENIES** Movant's Motion for Reconsideration (ECF No. 2542) and Motion to Expand Gatekeeper Provision (ECF No. 2543). The Court will enter Orders consistent with this Opinion.