

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                                                    **609-858-9360**
**Judge, United States Bankruptcy Court**

September 11, 2025

*All Interested Parties*

        Re:    BlockFi Inc.
                  Case No.: 22-19361

Dear Mr. Van Tubergen and Counsel:

Before the Court is the Wind-Down Debtors' (the "Wind-Down Debtors" or "BlockFi") Motion for Entry of an Order Adjudicating the Merits of Claimant John W. Van Tubergen, Jr.'s Claim No. 7233 Related to Purportedly Missing ETH and Fixing the Value of that Claim at $0, or, in the Alternative, Estimating the Claim at $0 for All Purposes (the "Motion"). ECF No. 2573. Mr. Van Tubergen filed a Certification in Opposition and supporting submissions on July 28, 2025. ECF Nos. 2615–16. The Wind-Down Debtors thereafter filed a Supplemental Reply on July 31, 2025. ECF No. 2624. The Court has reviewed the parties' submissions and, for the reasons set forth below, the Motion is **GRANTED**.

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[1]

## II. Background and Procedural History

The factual background and procedural history of the matter are well known to the parties. As such, they will not be repeated in detail here. BlockFi Inc. and its affiliated debtors commenced these Chapter 11 cases on November 28, 2022. ECF No. 1. On October 3, 2023, this Court entered its Confirmation Order approving the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). ECF No. 1655. The Plan became effective on October 24, 2023, and a Plan Administrator was thereafter vested with authority to administer remaining estate assets and reconcile disputed claims. *Id.*

Among the claims filed in this case was Proof of Claim No. 7233, submitted by Mr. Van Tubergen. That claim asserted, among other things, that 895 ETH was "missing" from Loan No. 1a118e43 (the "LSA" or "e43 LSA"), which he argued BlockFi was obligated to reinstate as part of a purported "collateral reinstatement" agreement. ECF No. 2518 at 21. BlockFi filed its Seventh Omnibus Claim Objection (the "Seventh Omnibus Claim Objection") on August 3, 2023, seeking—in relevant part—to modify Mr. Van Tubergen's Claim to reflect BlockFi's books and records. ECF No. 1311. On September 13, 2023, Mr. Van Tubergen filed his Response to the

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact they too are adopted as such.

2

Wind-Down Debtors' Seventh Omnibus Claim Objection, asserting, *inter alia*, that the Original Claim Objection with respect to the claim was procedurally and substantively deficient, and requesting that his claim be fixed in the amount of $10 million. ECF No. 1496. On December 12, 2023, the Wind-Down Debtors filed their Reply to Mr. Van Tubergen's Response to the Seventh Omnibus Claim Objection. ECF No. 1963. On January 10, 2024, Mr. Van Tubergen filed the Sur-Reply to the Wind-Down Debtors' Reply. ECF No. 2039. On January 16, 2024, the Bankruptcy Court held an evidentiary hearing on Mr. Van Tubergen's Claim.

Following the hearing, in February 2024, this Court sustained the Wind-Down Debtors' Seventh Omnibus Objection to the claim, finding that Mr. Van Tubergen had failed to establish that he ever had deposited or transferred the disputed ETH and crediting the Wind-Down Debtors' evidence that the higher collateral figure in the LSA was the result of a scrivener's error. ECF No. 2120. The Court accordingly disallowed the claim except for the nominal amount of $19.07. ECF No. 2122.

Mr. Van Tubergen appealed. On April 14, 2025, the District Court affirmed this Court's rulings in substantial part but remanded for further findings on the narrow issue of the "missing ETH" claim. ECF No. 2518. Specifically, the District Court asked this Court to address which party bore responsibility for providing the collateral under the e43 LSA and to clarify the amount of collateral that was required to be posted. *Id.* In all other respects, the District Court affirmed the disallowance of Mr. Van Tubergen's claim. *Id.* The Wind-Down Debtors now request that this Court, consistent with the remand directive, adjudicate the missing ETH claim at zero or, alternatively, estimate it at zero pursuant to section 502(c) of the Bankruptcy Code and the terms of the confirmed Plan. ECF No. 2573.

III.  **Arguments of the Parties**

The Wind-Down Debtors contend that the missing ETH claim is without merit. They emphasize that the plain text of the e43 LSA requires the borrower, not the lender, to provide collateral. ECF No. 2573 at 6. The Wind-Down Debtors acknowledge that the written LSA referenced 4,230.120 ETH but argue that this figure was the product of a scrivener's error. *Id.* at 6. According to the Wind-Down Debtors, contemporaneous email exchanges between BlockFi and Mr. Van Tubergen in late June 2021 make clear that BlockFi extended a limited accommodation, permitting Mr. Van Tubergen to repurchase certain liquidated ETH by way of a new loan, but never undertook to supply ETH collateral itself. *Id.* at 7–8. The Wind-Down Debtors further argue that any reliance by Mr. Van Tubergen on the contract's integration clause is misplaced because courts routinely admit extrinsic evidence to correct scrivener's errors. *Id.* at 22–23. They also maintain that Mr. Van Tubergen's attempt to introduce a "Client Loan Handbook" is both untimely and irrelevant, and by his own reasoning under the integration clause, should be excluded from consideration. ECF No. 2624 at 5. In the Wind-Down Debtors' view, the District Court's remand is narrow, and Mr. Van Tubergen's expansive attempt to revisit prior liquidation disputes and notice arguments goes well beyond the mandate. *Id.* at 2.

Mr. Van Tubergen contends that he is entitled to approximately 895 ETH, because BlockFi allegedly agreed in a June 29, 2021, email to purchase collateral on his behalf and because the e43 LSA lists total collateral of 4,230 ETH. ECF No. 2615 at 3–4. He maintains that this figure represented the sum of his remaining unliquidated collateral of 2,014 ETH together with additional collateral to be purchased by BlockFi, and because BlockFi only purchased an additional 1,320 ETH, for a total of 3,334 ETH, Mr. Van Tubergen asserts that 895 ETH is missing.[2] *Id.* at 6–7. Mr.

---

[2] The "missing" 895 ETH represents the difference between 4230 ETH figure written in the LSA and the 3334 ETH actually used in the loan as collateral.

Van Tubergen invokes the integration clause of the LSA to argue that pre-contract emails cannot override the express terms of the written agreement. ECF No. 2616 at 8. Additionally, Mr. Van Tubergen contends that BlockFi's "Client Loan Handbook," provided to him at onboarding, limits the scope of BlockFi's liquidation authority and supports his position that the company conducted excessive and unauthorized liquidations. *Id.* at 9. He further submits that BlockFi's failure to reinstate the missing ETH caused cascading harm, including additional liquidations and margin calls that might have been avoided had the full collateral been in place. ECF No. 2615 at 5. Mr. Van Tubergen's submissions describe BlockFi's conduct as predatory and unjust, asserting that he should not be held to strict compliance with the LSA while BlockFi is excused from honoring its terms. *Id.* at 7.

## IV.  Discussion

The Court begins with the text of the e43 LSA, which consistently frames collateral obligations in terms of the borrower's duty. Pursuant to Section 7(a) of the e43 LSA, the borrower must deposit additional collateral upon the occurrence of a "triggering event." Likewise, Section 8 of the e43 LSA references the borrower's responsibility to deposit additional collateral in the event it is required. Notably, nothing in the agreement suggests that BlockFi, as lender, was obligated to supply cryptocurrency collateral for the benefit of the borrower, and Mr. Van Tubergen's position that BlockFi was required to post collateral is not supported by the operative contract.[3] Accordingly, regardless of the collateral amount referenced in the e43 LSA, the obligation to post sufficient collateral rested at all times entirely with Mr. Van Tubergen. Inasmuch as it is undisputed that he failed to satisfy that obligation, the Court need not consider any further

---

[3] The Court is similarly not persuaded by Mr. Van Tubergen's attempt to introduce a "Client Loan Handbook" or other extraneous materials into the evidentiary record. The handbook predates the loan at issue and does not bear on the specific negotiation of the e43 LSA. The Court declines to expand the record in this manner.

argument to conclude that the missing ETH claim is unsupportable, and Mr. Van Tubergen is not to recover additional sums.

Moreover, even if the Court were to credit Mr. Van Tubergen's argument that extrinsic evidence should be considered, that very evidence defeats his claim. The LSA is governed by the laws of the state of Michigan. ECF No. 1496, Exhibit H at 14. "'An unambiguous contract must be enforced according to its terms.'" *Wells Fargo Bank, N.A. as Tr. for Impac CMB Tr. Series 2005-3 v. Banks*, 2024 WL 1826043, at *2 (Mich. Ct. App. Apr. 25, 2024) (quoting *Lueck v Lueck*, 328 Mich. App. 399, 404, 937 N.W.2d 729 (2019)). However, "[a] scrivener's mistake is ground for reformation." *Irwin v. North*, 2000 WL 33419365, at *2 (Mich. Ct. App. May 26, 2000) (citing *Freybler v. Lucas*, 39 Mich. App. 78; 197 N.W.2d 284 (1972)). "'A scrivener's error, or 'clerical error,' is a 'minor mistake or inadvertence,' 'a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading,' for example 'omitting an appendix from a document; **typing an incorrect number**; mistranscribing or omitting an obviously needed word. . . .'" *Mackinac Island Ferry Cap., LLC v. Schappacher*, 2016 WL 7427496, at *3 (Mich. Ct. App. Dec. 20, 2016) (quoting *Black's Law Dictionary* (10th ed)) (emphasis added). "Under the doctrine of scrivener's error, the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has occurred and that the mistake does not reflect the intent of the parties." *American 1 Credit Union v. Puckett*, 2020 WL 2836308 *8 (E.D. Mich. May 31, 2020) (citing *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Eric N. Am., Inc.*, 980 F.2d 889, 907 (3d Cir. 1992); 66 AM. JUR. 2D REFORMATION OF INSTRUMENTS § 19).

In the instant case, the Court observes that the stated collateral amount listed in the LSA represents a scrivener's error. All parties agree that the amount of the underlying loan in the reinstatement transaction was $5,928,830.21; yet, the agreement references a collateral requirement of 4,230.120 ETH, reflecting a loan-to-value ratio that cannot be reconciled with the terms of the loan offered by BlockFi, if such a quantity of ETH were in fact required. Pertinently, the key terms of the reinstatement transaction were set forth in a series of emails on June 29 & 30, 2021, in which it was agreed that BlockFi would repurchase the liquidated ETH and add the purchase price to a refinancing of the remaining a5 Loan. ECF No. 1963, Exhibits B and C. The new loan would be a combination of the dollar value outstanding on the a5 Loan (after the previous liquidation), plus the loan needed to repurchase the liquidated ETH. It would be supported by the repurchased ETH, plus the remaining ETH supporting the a5 Loan. Under BlockFi's proposed terms, Mr. Van Tubergen was required to accept within 24 hours, and the amount of ETH that would be repurchased was 1565.2442 ETH, which would be added to his remaining ETH collateral of 2,014.928 ETH for a total collateral amount of 3,580.172 ETH, and the purchase price was estimated at approximately $3.6 million (and, expressly would be determined by the market price of the repurchased collateral). *Id*.

Under the reinstatement proposal, BlockFi would accept meaningfully higher liquidation thresholds than usual: the new loan would have a margin call of 80% LTV (when Mr. Van Tubergen would be required to post additional collateral within 72 hours), and an immediate liquidation point of 90% (when BlockFi would liquidate collateral without further notice to Mr. Van Tubergen). However, BlockFi was clear that Mr. Van Tubergen was making an extremely risky decision: it expressly noted and required Mr. Van Tubergen to acknowledge that he would be immediately at risk of an additional margin call (*i.e.*, a small decline in ETH prices would cause

another liquidation of his collateral) because the new loan was estimated to be issued at 79% LTV (*i.e.*, one percentage point away from margin call). Mr. Van Tubergen would assume full responsibility for this risky decision and "BlockFi shall not be liable for any damages or any loss caused as a result of this transaction and providing this one time accommodation." *Id*.

Again, BlockFi clearly emphasized the risky nature of the transaction when it had advised Mr. Van Tubergen that "the starting Loan-to-Value (LTV) for this refinanced loan will immediately put the client in risk of margin territory." *Id.* The extraordinary high LTV ratio of the anticipated loan, and its attendant risks of an ensuing default in the event of a price drop in ETH, were understood and confirmed by Mr. Van Tubergen on June 30, 2021. It is obvious, however, that there would be no such risks if the collateral requirement were in fact fixed at 4,230.120. Indeed, this would have reflected an LTV ratio of **60%**, consistent with all traditional BlockFi loans, not the transaction offered and agreed upon by the parties. BlockFi further explains that because the value of ETH rose during the course of negotiations, it did not need to purchase the full 1,565.2442 ETH contemplated in the initial communication and instead purchased only 1,320 ETH. ECF No. 2573 at 13. Thus, the total ETH used as collateral for e43 LSA was approximately 3,334.9292, consisting of 2,014.9292 ETH rolled over from the prior loan, together with the 1,320 ETH purchased by BlockFi. *Id.*[4] This documentary record belies Mr. Van Tubergen's assertion that 895 ETH was ever missing, as it demonstrates that the collateral pledged was precisely that

---

[4] In its opinion, the District Court notes that notwithstanding that the relevant email communications reflected BlockFi's commitment to purchase 1565.2442 ETH, BlockFi proceeded to purchase only 1,320 ETH – a difference of approximately 245 ETH. The District Court noted that this was a more sensible calculation of any "missing ETH" claim. This makes no sense either. The structure of the deal was always that the *full purchase price* of the repurchased ETH would be added to the new loan that became the e43 LSA. Had BlockFi purchased 1,565.2442 ETH instead of 1,320 ETH, Mr. Van Tubergen's resulting loan would have been higher to purchase that net 245 ETH (and, closer to the 80% margin call LTV). BlockFi was not in the business of gifting hundreds of thousands of dollars' worth of cryptocurrency for nothing.

8

which the parties agreed would back the loan, and given the circumstances, the Court is inclined to believe BlockFi's explanation that the discrepancy is due to a scrivener's error, and not the true intent of the parties. Thus, the Court finds that the LSA's facial inconsistency evidences a drafting error that misstates the actual bargain of the parties. To hold otherwise would elevate form over substance and disregard the clear contemporaneous understanding of the parties.

Mr. Van Tubergen's consequential damages theory is likewise not persuasive. He asserts that had the missing ETH been posted, his account would not have suffered subsequent liquidations. But this assertion is premised on hypothetical calculations and ignores the high-risk nature of the transaction, of which BlockFi expressly warned him. The District Court's remand did not invite a re-litigation of every grievance Mr. Van Tubergen has with BlockFi; rather, it directed this Court to make findings regarding responsibility for collateral and the collateral amount required. On both points, the record favors the Wind-Down Debtors.

The Court is mindful that Mr. Van Tubergen feels aggrieved by the course of events. Nevertheless, the role of the Court is to enforce contracts by applying the governing law to the facts. Here, the LSA does not obligate BlockFi to provide collateral. The higher collateral figure was a drafting mistake, confirmed by parol evidence. The claim for missing ETH therefore fails. To the extent there remains any uncertainty, estimation at zero under section 502(c) is appropriate to prevent undue delay in the administration of the estate and to provide finality under the confirmed Plan.

V.    **Conclusion**

For the foregoing reasons, the Court grants the Motion. Claim No. 7233 is adjudicated at zero, or alternatively, estimated at zero for all purposes under the Plan. Mr. Van Tubergen is not

9

entitled to any recovery on account of the missing ETH claim. An appropriate Order will be entered.

*Honorable Michael B. Kaplan*
United States Bankruptcy Judge

Cc: Filed on CM/ECF