

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                    **609-858-9360**
**Judge, United States Bankruptcy Court**

September 25, 2025

*All Interested Parties*

            Re:    BlockFi, Inc.
                    Case No.: 22-19361 (MBK)

Dear L.J. and Counsel:

      Presently before the Court is a motion ("Motion," ECF No. 2644) filed by a BlockFi claimant ("L.J."[1]) seeking an Order unfreezing a portion of his BlockFi claim. Debtors oppose the Motion (ECF No. 2670), and L.J. has filed a Reply (ECF No. 2677). The Court has considered fully the arguments of the parties and the record in this case. For the reasons that follow, the Court will DENY L.J.'s Motion.

---

[1] For privacy reasons, claimant requests that only their initials be used publicly; therefore, the Court will refer to the claimant-movant as "L.J."

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II. Background and Procedural History

The factual background and procedural history of the matter are well known to the parties. As such, they will not be repeated in detail here. Since confirmation, the Wind-Down Debtors' task has been to adjudicate claims and distribute BlockFi's assets to customers as quickly as possible. In doing so, the Wind-Down Debtors remain subject to laws and regulations that restrict or prohibit the Wind-Down Debtors from making certain distributions. Of relevance to the instant Motion, the Wind-Down Debtors are subject to the Unlawful Internet Gambling Enforcement Act of 2006 (the "UIGEA"), which regulates the transfer of funds connected to unlawful internet gambling. *See Wind-Down Debtors' Obj.* ¶ 14, ECF No. 2670. Accordingly, the Wind-Down Debtors interpret the UIGEA to restrict their ability to make distributions to creditors where the Wind-Down Debtors suspect that such creditors' funds are linked to unlawful internet gambling. *Id.* at ¶¶ 13, 18.

In searching for such unlawful funds, BlockFi utilized certain software ("Chainanalysis") prepetition to identify potentially unlawful funds and transfers. The Wind-Down Debtors explain that

> [o]nce a transaction was flagged, the transaction would be manually reviewed by a member of BlockFi's compliance team to determine whether the flag was a false positive and, if legitimate, the relative severity of the hit. Where a flag was believed to be legitimate, a member of the compliance team would generate a report detailing

the findings, including the information obtained by Chainalysis (an "Investigation Report").

*Wind-Down Debtors' Obj.* ¶ 3, ECF No. 2670.

During the bankruptcy, several thousands of suspicious accounts were identified and flagged. This Court entered an Order approving certain protocols ("KYC/AML Protocols") for the review and treatment of flagged accounts. *Order Approving KYC/AML Protocols*, ECF No. 2387. "The KYC/AML Protocols afford the Wind-Down Debtors discretion in assigning a risk profile of flagged accounts, including those flagged for unlawful gambling [and] . . . prescribe certain procedures according to the assigned risk profile." *Wind-Down Debtors' Obj.* at ¶ 5.

### III. Discussion

Chainalysis flagged L.J.'s account as potentially having an unlawful gambling connection. BlockFi's Chief Operating Officer, Flori Marquez, filed a Supplemental Declaration in support of the Wind-Down Debtors' Objection, *see Ex. A to Wind-Down Debtors' Obj.*, ECF No. 2670, and certifies that L.J.'s account was flagged because "[o]n March 12, 2021, Chainalysis alerted BlockFi to a transfer of Bitcoin valued at $57,135.94 as of the time of the transfer into the L.J. Account for indirect exposure to an illegal gambling website, BitcoinVideoCasino.com." *Supp. Marquez Decl.* ¶ 6, ECF No. 2670. A BlockFi compliance team member then generated an Investigation Report, determining that L.J.'s account was "a medium-risk account" and,

> in accordance with the KYC/AML Protocols . . . the Wind-Down Debtors: (a) maintained the freeze on the L.J. Account, (b) issued a Freeze Notice to L.J., and (c) invited L.J. to provide information concerning the L.J. Transaction that would substantiate the legitimacy of the source of funds related thereto and support a decision to unfreeze the funds.

*Wind-Down Debtors' Obj.* at ¶ 7; *see also Supp. Marquez Decl.* at ¶¶ 6-7.

L.J. acknowledges that they "received a Freeze Notice dated March 2025 identifying $16,758.80 of [their] claim as frozen [because it] relate[d] to a deposit made on March 12, 2021, that was flagged for exposure to a gambling-related address." *Motion* ¶ 2-3, ECF No. 2644. L.J. contends that their funds were *not* frozen in 2021 and, instead, they received a simple warning from BlockFi team members after the suspicious transaction, advising L.J. to be more careful with future transfers and mindful of deposit sources. *See id.* at ¶ 4. L.J. asserts that "[t]his language clearly indicated that my account remained open for continued use and that BlockFi did not intend to freeze or restrict it." *Id.* Nevertheless, L.J. states that, post-petition, the Wind-Down Debtors re-reviewed L.J.'s account and—despite mechanisms in the KYC/AML Protocols that allow for unfreezing—determined not to include the frozen portion of L.J.'s claim in distributions. *Id.* at ¶ 6 (citing ¶ 9 of the KYC/AML Protocols).

The Wind-Down Debtors explain that the available information indicates that L.J. engaged in unlawful internet gambling; therefore, any distribution by the Wind-Down Debtors to L.J. would be a violation of the UIGEA. *See Wind-Down Debtors' Obj.* at ¶¶ 20, 21, ECF No. 2670. Based on the record, the Court agrees.

Although BlockFi did not immediately freeze L.J.'s account when the transaction was flagged in 2021, the Wind-Down Debtors were not precluded from subsequently doing so and—in fact—were permitted to do so by the KYC/AML Protocols and this Court's Order approving same. *Order Approving KYC/AML Protocols* ¶ 3, ECF No. 2387. The Wind-Down Debtors maintain—and this Court agrees—that they are "subject to certain laws and regulations, including the UIGEA, notwithstanding any action or inaction by BlockFi pre-petition." *Id.* at ¶ 23. Thus, the freezing of L.J.'s account in 2025 was not improper, and was consistent with KYC/AML Protocols and Orders of this Court.

Further, L.J. cites paragraph 9 of the KYC/AML Protocols to argue that the freeze should have been lifted after the Wind-Down Debtors' re-review of L.J.'s account.  However, paragraph 9 provides merely that "[t]he Wind-Down Debtors *intend* to make distributions on account of each of [the flagged] accounts following their review and *absent any determination to the contrary*." *KYC/AML Protocols* ¶ 9, ECF No. 2387 (emphasis added).  Here, the re-review led the Wind-Down Debtors to conclude that L.J.'s account should remain frozen. *Wind-Down Debtors' Obj.* ¶ 24, ECF No. 2670.  The Wind-Down Debtors contend that "[t]o date, L.J. has not provided the Wind-Down Debtors with any information that would substantiate the legitimacy of the source of funds related to the L.J. Transaction or otherwise support a decision to unfreeze such funds." *Id.* at ¶ 8.  Indeed, L.J.'s Motion does not offer such evidence or otherwise explain the transaction.  Accordingly, the record supports the Wind-Down Debtors' determination to keep the account frozen, and this determination is consistent with the KYC/AML Protocols.

L.J. also suggests that they are entitled to the funds because "a portion of the currently frozen funds consists of interest payments BlockFi credited to my account" for which L.J. received IRS Form 1099 statements and reported as taxable income. *Motion* ¶ 4, ECF No. 2644.  The Wind-Down Debtors do not directly respond to this argument.  Nevertheless, the Court determines that the fact that interest amounts may be included in the frozen claim do not alter the analysis.  The Wind-Down Debtors' concern—and the focus of the inquiry under the KYC/AML Protocols—is the source of the funds, which, if illegal, may render any distribution of those funds a violation of the UIGEA.  Therefore, notwithstanding an IRS Form 1099 and proper reporting of taxable interest, the funds are appropriately frozen.

In the future, should L.J. satisfy the Wind-Down Debtors' request for "a written sworn declaration under penalty of perjury which includes specific, verifiable information concerning the

5

source of funds," then it is likely that unfreezing would be appropriate at that time. Paragraph 10 of the KYC/AML Protocols expressly delineates a mechanism by which claimants can request that their funds be unfrozen. On this record, however, the Court finds no basis supporting L.J.'s request that the funds be unfrozen, and L.J.'s Motion must be denied. In response to concerns raised in L.J.'s Reply submission, the Court notes that this denial is without prejudice to L.J. renewing their request should they certify that provision of the requested information is not possible due to the Wind-Down Debtors' actions and/or that access to the requested information is entirely outside of their control. The Court is hopeful, however, that the parties can communicate and resolve this issue without the need for further Court intervention.

### IV.    Conclusion

For the foregoing reasons, L.J.'s Motion to Unfreeze Account Pursuant to KYC/AML Protocols (ECF No. 2644) is DENIED. The Wind-Down Debtors are directed to submit an appropriate form of Order.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Cc: Filed on CM/ECF